1   GEORGE A. RILEY (Bar No. 118304)
    griley@omm.com
2   MICHAEL F. TUBACH (Bar No. 145955)
    mtubach@omm.com
3   LISA CHEN (Bar No. 234681)
    lisachen@omm.com
4   CHRISTINA J. BROWN (Bar No. 242130)
    cjbrown@omm.com
5   O'MELVENY & MYERS LLP
    Two Embarcadero Center, 28th Floor
6   San Francisco, CA  94111-3823
    Telephone:      (415) 984-8700
7   Facsimile:      (415) 984-8701

8   Attorneys for Defendant
    Apple Inc.
9
    [Additional Parties and Counsel Listed on Signature Page]
10

11                  **UNITED STATES DISTRICT COURT**

12                 **NORTHERN DISTRICT OF CALIFORNIA**

13                         **SAN JOSE DIVISION**

14

15   IN RE HIGH-TECH EMPLOYEE            Master Docket No. 11-CV-2509-LHK
     ANTITRUST LITIGATION
16                                       **DEFENDANTS' NOTICE OF MOTION,**
                                         **JOINT MOTION TO DISMISS THE**
17                                       **CONSOLIDATED AMENDED**
                                         **COMPLAINT, AND MEMORANDUM OF**
18                                       **POINTS AND AUTHORITIES IN**
     THIS DOCUMENT RELATES TO:           **SUPPORT THEREOF**
19                                       **[FED. R. CIV. P. 12(b)(1) & 12(b)(6)]**
     ALL ACTIONS
20                                       **ORAL ARGUMENT REQUESTED**

21                                       DATE:          January 19, 2012
                                         TIME:          1:30 pm
22                                       COURTROOM:   Courtroom 8, 4th Floor
                                         JUDGE:         Honorable Lucy H. Koh
23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

STATEMENT OF ISSUES TO BE DECIDED .................................................................... 1

INTRODUCTION ............................................................................................................... 1

BACKGROUND ................................................................................................................. 5

LEGAL STANDARD .......................................................................................................... 7

ARGUMENT ....................................................................................................................... 9

I.     THE COURT SHOULD DISMISS PLAINTIFFS' ANTITRUST CLAIMS
UNDER *TWOMBLY* .............................................................................................. 9

     A.    The Complaint Does Not Allege Sufficient Evidentiary Facts of an
Overarching, Multilateral Conspiracy ........................................................ 9

          1.    The Court Must Disregard the Complaint's Labels,
Conclusions, and Boilerplate Allegations of an Overarching
Agreement ......................................................................................... 9

          2.    The Alleged Overarching Conspiracy Fails to Satisfy
*Twombly* ....................................................................................... 10

     B.    The Overarching Conspiracy Alleged by Plaintiffs Is Implausible ......... 14

     C.    Plaintiffs Have Failed to Allege Facts to Support a Plausible Claim
of Injury .................................................................................................... 16

II.    PLAINTIFFS' CLAIM UNDER CALIFORNIA BUSINESS AND
PROFESSIONS CODE § 16600 FAILS BECAUSE THAT STATUTE
DOES NOT RESTRICT NON-SOLICITATION AGREEMENTS ..................... 19

III.   PLAINTIFFS FAIL TO STATE A CLAIM UNDER CALIFORNIA
BUSINESS AND PROFESSIONS CODE § 17200 ............................................. 22

     A.    Plaintiffs Have Not Adequately Pleaded Unfair Competition ................. 22

     B.    Plaintiffs Lack Standing Because They Have Not Lost Money or
Property ..................................................................................................... 23

     C.    Plaintiffs Are Not Eligible for Any UCL Remedy ................................... 25

IV.   PLAINTIFFS LACK STANDING TO SEEK INJUNCTIVE OR
DECLARATORY RELIEF BECAUSE THEY ARE FORMER
EMPLOYEES AND THE ALLEGED CONDUCT HAS ALREADY
BEEN ENJOINED BY THE DOJ CONSENT DECREES ................................. 26

CONCLUSION .................................................................................................................. 30

**TABLE OF AUTHORITIES**

**Page**

<u>**CASES**</u>

*Abbott Labs. v. Gardner*,
   387 U.S. 136 (1967), *overruled on other grounds*, *Califano v. Sanders*, 430
   U.S. 99 (1977)...................................................................................................... 30

*Aguilar v. Atl. Richfield Co.*,
   25 Cal. 4th 826 (2001) ........................................................................................ 15

*AICCO, Inc. v. Ins. Co. of N. Am.*,
   90 Cal. App. 4th 579 (2001) ............................................................................... 25

*Am. Ad Mgmt., Inc. v. Gen. Tel. Co. of Cal.*,
   190 F.3d 1051 (9th Cir. 1999)............................................................................. 16

*Arakaki v. Lingle*,
   477 F.3d 1048 (9th Cir. 2007)............................................................................. 27

*Arista Records LLC v. Lime Group LLC*,
   532 F. Supp. 2d 556 (S.D.N.Y. 2007)................................................................. 12

*Armstrong v. Davis*,
   275 F.3d 849 (9th Cir. 2001)............................................................................... 27

*Ashcroft v. Iqbal*,
   129 S. Ct. 1937 (2009).................................................................................. 7, 8, 9

*Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*,
   459 U.S. 519 (1983)...................................................................................... 16, 19

*Atl. Richfield Co. v. USA Petroleum Co.*,
   495 U.S. 328 (1990)............................................................................................ 16

*Aydin Corp. v. Loral Corp.*,
   718 F.2d 897 (9th Cir. 1983)............................................................................... 13

*Bach v. Curry*,
   258 Cal. App. 2d 676 (1968)............................................................................... 22

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007).................................................................................... passim

*Bergh v. State of Wash.*,
   535 F.2d 505 (9th Cir. 1976)............................................................................... 30

*Buskuhl v. Family Life Ins. Co.*,
   271 Cal. App. 2d 514 (1969)............................................................................... 21

*Califano v. Sanders*,
   430 U.S. 99 (1977).............................................................................................. 30

**TABLE OF AUTHORITIES**
(continued)

Page

*Caro v. Procter & Gamble Co.*,
    18 Cal. App. 4th 644 (1993) ................................................. 29

*CBS Cos. v. Equifax, Inc.*,
    561 F.3d 569 (6th Cir. 2009) ............................................... 17

*Cetacean Cmty. v. Bush*,
    386 F.3d 1169 (9th Cir. 2004) .............................................. 9

*Chandler v. State Farm Mut. Auto. Ins. Co.*,
    598 F.3d 1115 (9th Cir. 2010) .............................................. 9

*Chavez v. Whirlpool Corp.*,
    93 Cal. App. 4th 363 (2001) ............................................... 23

*Church & Dwight Co. v. Mayer Labs., Inc.*,
    2011 U.S. Dist. LEXIS 35969 (N.D. Cal. Apr. 1, 2011) .................... 8, 9

*City of Los Angeles v. Lyons*,
    461 U.S. 95 (1983) ....................................................... 27

*City of Pittsburgh v. W. Penn Power Co.*,
    147 F.3d 256 (3d Cir. 1998) .............................................. 17

*Consultants & Designers, Inc. v. Butler Serv. Grp., Inc.*,
    720 F.2d 1553 (11th Cir. 1983) ........................................... 18

*Corley v. Long-Lewis, Inc.*,
    688 F. Supp. 2d 1315 (N.D. Ala. 2010) .................................... 1

*Cortez v. Purolator Air Filtration Prods. Co.*,
    23 Cal. 4th 163 (2000) ................................................... 26

*Ctr. for Sci. in Pub. Interest v. Bayer Corp.*,
    2010 WL 1223232 (N.D. Cal. Mar. 25, 2010) ............................... 30

*Dickson v. Microsoft Corp.*,
    309 F.3d 193 (4th Cir. 2002) ............................................. 14

*Digital Sun v. Toro Co.*,
    2011 WL 1044502 (N.D. Cal. Mar. 22, 2011) ............................... 22

*DM Research, Inc. v. Coll. of Am. Pathologists*,
    170 F.3d 53 (1st Cir. 1999) ............................................... 8

*Doe v. Starbucks, Inc.*,
    2009 WL 5183773 (C.D. Cal. Dec. 18, 2009) ............................... 25

*Drake v. Morgan Stanley & Co.*,
    2010 WL 2175819 (C.D. Cal. Apr. 30, 2010) ............................... 28

iii

**TABLE OF AUTHORITIES**
(continued)

Page

*Eagle v. Star-Kist Foods, Inc.*,
  812 F.2d 538 (9th Cir. 1987)................................................................. 19

*Eichhorn v. AT&T Corp.*,
  248 F.3d 131 (3d Cir. 2001)............................................................. 13, 19

*Facebook, Inc. v. Power Ventures, Inc.*,
  2010 U.S. Dist. LEXIS 93517 (N.D. Cal. July 20, 2010) ..................... 23

*Gest v. Bradbury*,
  443 F.3d 1177 (9th Cir. 2006).............................................................. 27

*Gov't Emps. Ins. Co. v. Dizol*,
  133 F.3d 1220 (9th Cir. 1998).............................................................. 27

*Guthrey v. Cal. Dep't of Corr. & Rehab.*,
  2011 WL 1259835 (E.D. Cal. Mar. 30, 2011) ...................................... 28

*Hangarter v. Provident Life & Accident Ins. Co.*,
  373 F.3d 998 (9th Cir. 2004)................................................................ 29

*Hodgers-Durgin v. de la Vina*,
  199 F.3d 1037 (9th Cir. 1999).............................................................. 29

*Howard Hess Dental Labs. Inc. v. Dentsply Int'l, Inc.*,
  602 F.3d 237 (3d Cir. 2010)................................................................. 14

*In re Citric Acid Litig.*,
  191 F.3d 1090 (9th Cir. 1990).............................................................. 12

*In re Elevator Antitrust Litig.*,
  502 F.3d 47 (2d Cir. 2007).................................................................. 13

*In re Flash Memory Antitrust Litig.*,
  643 F. Supp. 2d 1133 (N.D. Cal. 2009) ......................................... 16, 19

*In re Graphics Processing Units Antitrust Litig.*,
  527 F. Supp. 2d 1011 (N.D. Cal. 2007) .......................... 8, 10, 12, 13

*In re Ins. Brokerage Antitrust Litig.*,
  618 F.3d 300 (3d Cir. 2010)................................................................. 13

*In re Iowa Ready-Mix Concrete Antitrust Litig.*,
  768 F. Supp. 2d 961 (N.D. Iowa 2011)........................................... 12, 16

*In re Late Fee & Over-Limit Fee Litig.*,
  528 F. Supp. 2d 953 (N.D. Cal. 2007) ............................................ 10, 12

*In re Netflix Antitrust Litig.*,
  506 F. Supp. 2d 308 (N.D. Cal. 2007) .................................................. 9

iv

**TABLE OF AUTHORITIES**
(continued)

Page

*In re Static Random Access Memory Antitrust Litig.*,
    580 F. Supp. 2d 896 (N.D. Cal. 2008) ................................................................. 16

*In re Tobacco II Cases*,
    46 Cal. 4th 298 (2009) ....................................................................................... 22

*Jadwin v. Cnty. of Kern*,
    2009 WL 2424565 (E.D. Cal. Aug. 6, 2009) ....................................................... 29

*Jicarilla Apache Tribe v. Supron Energy Corp.*,
    728 F.2d 1555 (10th Cir. 1984) .......................................................................... 12

*Kearns v. Ford Motor Co.*,
    567 F.3d 1120 (9th Cir. 2009) ............................................................................ 22

*Kendall v. Visa U.S.A., Inc.*,
    518 F.3d 1042 (9th Cir. 2008) .................................................................... passim

*Korea Supply Co. v. Lockheed Martin Corp.*,
    29 Cal. 4th 1134 (2003) ................................................................................ 25, 26

*Kwikset Corp. v. Superior Court*,
    51 Cal. 4th 310 (2011) ............................................................... 22, 23, 24, 25

*Loral Corp. v. Moyes*,
    174 Cal. App. 3d 268 (1985) ........................................................................ 20, 22

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992) ........................................................................................... 27

*Madrid v. Perot Sys. Corp.*,
    130 Cal. App. 4th 440 (2005) ............................................................................. 25

*Mayfield v. United States*,
    599 F.3d 964 (9th Cir. 2010) .............................................................................. 27

*Newcal Indus., Inc. v. IKON Office Solution*,
    513 F.3d 1038 (9th Cir. 2009) ............................................................... 16, 17, 19

*NicSand, Inc. v. 3M Co.*,
    507 F.3d 442 (6th Cir. 2007) .............................................................................. 16

*PepsiCo, Inc. v. Coca-Cola Co.*,
    315 F.3d 101 (2d Cir. 2002) ............................................................................... 14

*PSKS, Inc. v. Leegin Creative Leather Prods., Inc.*,
    615 F.3d 412 (5th Cir. 2010) .............................................................................. 14

*SC Manufactured Homes, Inc. v. Liebert*,
    162 Cal. App. 4th 68 (2008) ............................................................................... 22

DEFENDANTS' NOTICE AND JOINT MOTION
TO DISMISS CONSOL. AM. COMPL.
NO. 11-CV-2509-LHK

**TABLE OF AUTHORITIES**
(continued)

Page

*Seven Words LLC v. Network Solutions*,
   260 F.3d 1089 (9th Cir. 2001) ................................................................ 28

*Sprewell v. Golden State Warriors*,
   266 F.3d 979 (9th Cir. 2001) ........................................................... 8, 10

*Swartz v. KPMG LLP*,
   476 F.3d 756 (9th Cir. 2007) ................................................................. 5

*Takhar v. Kessler*,
   76 F.3d 995 (9th Cir. 1996) .................................................................. 9

*Thomas Weisel Partners LLC v. BNP Paribas*,
   2010 WL 546497 (N.D. Cal. Feb. 10, 2010) ................................... 20, 21

*Thompson v. Procter & Gamble Co.*,
   1982 WL 114 (N.D. Cal. Dec. 8, 1982) ............................................... 29

*Todd v. Exxon Corp.*,
   275 F.3d 191 (2d Cir. 2001) ................................................................ 19

*United States v. Hays*,
   515 U.S. 737 (1995) ........................................................................... 27

*United States v. Nat'l Ass'n of Broadcasters*,
   553 F. Supp. 621 (D.D.C. 1982) ............................................................ 5

*W. Gulf Mar. Ass'n v. ILA Deep Sea Local 24*,
   751 F.2d 721 (5th Cir. 1985) ............................................................... 30

*Wal-Mart Stores, Inc. v. Dukes*,
   131 S. Ct. 2541 (2011) ........................................................................ 27

*Walsh v. Nev. Dep't of Human Resources*,
   471 F.3d 1033 (9th Cir. 2006) ............................................................. 28

*Weisfeld v. Sun Chem. Corp.*,
   210 F.R.D. 136 (D.N.J. 2002), *aff'd*, 84 F. App'x 257 (3d Cir. 2004) ................. 17

*William O. Gilley Enters. v. Atl. Richfield Co.*,
   588 F.3d 659 (9th Cir. 2009) ........................................................ passim

*Zanze v. Snelling Servs., LLC*,
   412 F. App'x 994 (9th Cir. 2011) ........................................................ 28

**<u>STATUTES</u>**

15 U.S.C. § 15(a) ................................................................................. 16

15 U.S.C. § 16(a) ................................................................................... 5

vi

**TABLE OF AUTHORITIES**
(continued)

Page

Cal. Bus. & Prof. Code § 16600 ...................................................................... 1, 4, 20, 22

Cal. Bus. & Prof. Code § 17200 ............................................................................ 1, 4, 22

Cal. Bus. & Prof. Code § 17200 *et seq.* ......................................................................... 22

Cal. Bus. & Prof. Code § 17203 ..................................................................................... 25

Cal. Bus. & Prof. Code § 17204 ..................................................................................... 23

**<u>RULES</u>**

Fed. R. Civ. P. 12(b)(1) ................................................................................................. 30

Fed. R. Civ. P. 12(b)(6) ................................................................................................. 30

Fed. R. Civ. P. 23(b)(2) ................................................................................................. 27

**<u>CONSTITUTIONAL PROVISIONS</u>**

U.S. Const. art. III ..................................................................................................... 9, 27

## NOTICE OF MOTION AND MOTION TO DISMISS

TO PLAINTIFFS AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on January 19, 2012, at 1:30 pm, or as soon thereafter as this matter may be heard in Courtroom 8, 4th Floor, of the United States District Court, Northern District of California, located at 280 South 1st Street, San Jose, California, the Honorable Lucy H. Koh presiding, Defendants Adobe Systems Inc., Apple Inc., Google Inc., Intel Corp., Intuit Inc., Lucasfilm Ltd., and Pixar will and hereby do move this Court for an order dismissing the Consolidated Amended Complaint without leave to amend pursuant to Federal Rules of Civil Procedure 12(b)(6) and 12(b)(1), for failure to state a claim upon which relief can be granted and for failure to allege Article III standing.

This motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities in support thereof, any Reply Memorandum, the pleadings and files in this action, and such arguments and authorities as may be presented at or before the hearing.

## MEMORANDUM OF POINTS AND AUTHORITIES

### STATEMENT OF ISSUES TO BE DECIDED

Defendants Adobe Systems Inc., Apple Inc., Google Inc., Intel Corp., Intuit Inc., Lucasfilm Ltd., and Pixar (collectively, "Defendants") move to dismiss the Consolidated Amended Complaint ("Complaint") on the following grounds:

1.       The Complaint fails to state a claim upon which relief may be granted under the Sherman Act or California's Cartwright Act because it fails to allege evidentiary facts supporting the claim of an "overarching conspiracy" among all Defendants to suppress the wages of their employees, such a conspiracy is implausible on its face, and the Complaint fails to allege facts to support a claim of injury.

2.       The Complaint fails to state a claim upon which relief may be granted under California Business and Professions Code § 16600 because it fails to allege that any Defendants restrained employment by agreeing not to hire each others' employees.

3.       The Complaint fails to state a claim upon which relief may be granted under California Business and Professions Code § 17200 because it does not adequately plead unfair competition, Plaintiffs have not lost money or property, and Plaintiffs are ineligible for any of the remedies available under section 17200.

4.       Plaintiffs lack standing to assert claims for injunctive or declaratory relief because they are former employees with no stated intention of working for any Defendant, and the alleged conduct has already been enjoined by the DOJ consent decrees.[1]

### INTRODUCTION

Plaintiffs filed this complaint on the heels of civil settlements that Defendants reached with the United States Department of Justice relating to employee recruiting practices.  As part of

---

[1] In addition, all Defendants other than Lucasfilm join in Lucasfilm's motion to dismiss the state-law claims based on federal enclave jurisdiction (Dkt. No. 77).  As that motion makes clear, the enclave doctrine applies where "some of the events alleged in the Complaint" with respect to some defendants "occurred on a federal enclave."  *Corley v. Long-Lewis, Inc.*, 688 F. Supp. 2d 1315, 1336 (N.D. Ala. 2010).  Plaintiffs allege that all Defendants participated together in one overarching conspiracy, and that some of the events of that purported conspiracy took place at Lucasfilm's offices in the Presidio, a federal enclave.  As such, all Defendants are entitled to dismissal of the state-law claims.

DEFENDANTS' NOTICE AND JOINT MOTION TO
DISMISS CONSOL. AM. COMPL.
NO. 11-CV-2509-LHK

1   those settlements, in which Defendants admitted no wrongdoing, DOJ alleged that various pairs

2   of Defendants entered into six discrete, *bilateral* agreements spread out over a 2 1/2-year period

3   not to "cold call" each others' employees.  In each instance, the DOJ complaint alleged

4   agreements involving only two companies and, with one exception, nothing other than an

5   agreement not to "cold call" each other's employees.  As even DOJ recognized, such non-

6   solicitation agreements can be pro-competitive and lawful to prevent poaching of employees in

7   the context of legitimate collaborative projects, and the civil settlements spell out the

8   circumstances in which DOJ would not object to them.

9       Plaintiffs copy the factual allegations relating to the six bilateral agreements virtually

10   word-for-word from the DOJ complaint, with one critical difference:  Apparently recognizing the

11   implausibility of alleging that those agreements harmed them, much less a class of all of

12   Defendants' employees, Plaintiffs instead claim that Defendants entered into a multilateral

13   "overarching" conspiracy among all of them to suppress wages for all of their employees

14   nationwide over a five-year period.  This claim (and any claim Plaintiffs might make limited to

15   the alleged bilateral agreements) fails for three reasons:

16       First, Plaintiffs have alleged no facts to support any "overarching conspiracy" to "fix and

17   suppress the compensation of their employees."  (Compl. ¶ 1.)  To state an antitrust claim,

18   Plaintiffs must state evidentiary facts—the "who, what, where, and when"—describing the

19   alleged conspiracy.  *Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1046-47 (9th Cir. 2008) (citing

20   *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 564 n.10 (2007)).  Here, Plaintiffs have not even

21   described what the Defendants allegedly agreed to do.  Plaintiffs describe in antitrust boilerplate

22   the purpose of the supposed overarching conspiracy (to "fix and suppress" employee

23   compensation), but they do not allege the terms of the overarching conspiracy or how it

24   functioned.  Was it an agreement among all Defendants not to cold call each others' employees,

25   an agreement to enter into six bilateral agreements, or something else?  The Complaint does not

26   say.  And however the overarching conspiracy is defined, the Complaint provides no facts

27   showing that Defendants communicated with each other about such an agreement, let alone that

28   they reached such an agreement.

2

1    The only facts alleged are that Defendants entered into six bilateral agreements, and that

2    some Defendants had overlapping board members.  But far from supporting a grand conspiracy

3    theory, the alleged bilateral agreements are inconsistent with that claim.  If an overarching

4    conspiracy existed, no bilateral agreements would have been necessary.  Likewise, Plaintiffs'

5    allegation that three of the seven Defendants shared board members adds nothing to Plaintiffs'

6    claim of an overarching conspiracy.  Membership on multiple boards is commonplace and does

7    not give rise to any inference of illegal conduct.  Plaintiffs allege no facts even suggesting that

8    these board members or anyone else joined together to form a conspiracy among all Defendants.

9    In short, Plaintiffs have simply taken the allegations in the DOJ complaint alleging bilateral

10   agreements and labeled them an "overarching conspiracy."  Such labels add nothing to the

11   inadequate factual allegations.  *Kendall*, 518 F.3d at 1046-47.

12   Second, an overarching conspiracy consisting of six bilateral agreements is implausible on

13   its face.  While Plaintiffs allege a conspiracy to suppress the wages of employees among all

14   Defendants, by Plaintiffs' own allegations Defendants could pursue all of the employees of the

15   other Defendants other than by cold calling, and they remained free even to cold call most of the

16   other Defendants' employees.  For example, Intuit is alleged to have had a non-solicitation

17   agreement only with Google.  Even assuming that agreement existed, Intuit remained free to cold

18   call the employees of Intel, Lucasfilm, Pixar, Apple, and Adobe—and any other company in the

19   world; and those companies were free to cold call Intuit's employees.  It makes little sense to say

20   that Intuit and these five companies were part of a conspiracy to suppress their employees' wages

21   when they all could actively to recruit and hire each others' employees.  Plaintiffs' allegation of

22   an "overarching" conspiracy is all the more implausible because they have failed to allege any

23   mechanism by which these Defendants *could* affect employee compensation through this

24   supposed "overarching conspiracy."  Defendants are not alleged to be part of any relevant labor

25   market, or to have power in any such market.  Because Plaintiffs' antitrust claim rests on the

26   allegations of an "overarching conspiracy," Plaintiffs' failure to plead sufficient facts of such a

27   unitary, overarching agreement is fatal and requires the Complaint to be dismissed.

28   Third, Plaintiffs have failed to allege facts establishing injury, either from the bilateral

3

1   agreements or from an "overarching" conspiracy.  Plaintiffs' only claim of injury is that they

2   were impacted in the same way as every other employee of Defendants—by a market-wide

3   suppression of wages.  But to support such an allegation, Plaintiffs would need to allege facts

4   showing how any alleged conspiracy caused them injury.  They have not even made an effort to

5   do so.  Plaintiffs allege *no facts at all* about any relevant labor market or how Defendants have

6   power in any such market.  No doubt they recognize that any relevant labor market would be

7   much broader than these seven Defendants, and it would be impossible to allege that Defendants

8   had power in any such market.  But without such factual allegations, Plaintiffs have not alleged

9   any factual basis for the conclusory allegations of injury.

10       Plaintiffs' claim under section 16600 of the California Business and Professions Code also

11   fails because neither the alleged bilateral agreements nor the "overarching conspiracy" is alleged

12   to have restrained employees from engaging in a lawful profession, trade or business, as required

13   for liability under section 16600.  Courts distinguish between agreements that restrict *solicitation*

14   of employees—like those alleged here—and those that restrict *hiring* employees, and hold that

15   non-solicitation agreements do not violate section 16600.

16       Plaintiffs' claim under California Business and Professions Code section 17200 fails as

17   well.  First, Plaintiffs have failed to allege facts sufficient to plead unfair competition; thus, like

18   their Sherman Act and Cartwright Act claims, the section 17200 claim cannot stand.  Second,

19   Plaintiffs have not lost any money or property, as is required to have standing to assert a section

20   17200 claim.  Third, Plaintiffs are not eligible to seek any of the remedies that are available under

21   section 17200.

22       Finally, Plaintiffs' claim for injunctive and declaratory relief on each of their claims

23   should be dismissed because they lack standing to seek such relief.  All Plaintiffs are former

24   employees of Defendants with no stated intention of returning to their employment.  Their alleged

25   injury is wholly backward-looking, and Plaintiffs stand to gain nothing from the injunctive and

26   declaratory relief they seek.  Moreover, as part of the settlements with the DOJ, the District Court

27   has already enjoined precisely the conduct Plaintiffs seek to have enjoined here.

28       The Court should dismiss all of Plaintiffs' claims with prejudice.

DEFENDANTS' NOTICE AND JOINT MOTION
TO DISMISS CONSOL. AM. COMPL.
NO. 11-CV-2509-LHK

**BACKGROUND**

*The DOJ Consent Decrees*.  In 2009 and 2010, the DOJ conducted a review of alleged "no cold calling" agreements as part of a civil investigation of employment practices of certain companies.  (Compl. ¶ 111.)  Without admitting any wrongdoing or violation of law (Judgments at 2), Defendants entered into stipulated proposed judgments with the DOJ, pursuant to which they agreed not to engage in non-solicitation agreements except under certain circumstances.  (Compl. ¶ 115.[2])  DOJ alleged in its complaint filed as part of the consent decree that its investigation focused on "five *bilateral* no cold call agreements among Adobe, Apple, Google, Intel, Intuit, and Pixar."  (Complaint, *United States v. Adobe Sys. Inc., Apple Inc., Google Inc., Intel Corp., Intuit, Inc. & Pixar*, No. 1:10-cv-01629-RBW (D.D.C. Sept. 24, 2010), ¶ 1 (emphasis added).[3])  Both stipulated judgments recognize that there are many circumstances under which Defendants may legitimately agree not to cold call each others' employees.  (Judgments § V.)  The judgments provide that "[n]othing in Section IV [Prohibited Conduct] shall prohibit a Defendant and any other person from attempting to enter into, entering into, maintaining or enforcing a no direct solicitation provision" provided that such provisions are in writing and meet certain defined standards of reasonable necessity and particularity.  (*Id.*)  These stipulated judgments carry no prima facie effect in related civil litigation.  *See* 15 U.S.C. § 16(a); *United States v. Nat'l Ass'n of Broadcasters*, 553 F. Supp. 621, 623 & n.5 (D.D.C. 1982) (holding that private antitrust actions may not give prima facie effect to government consent decrees entered before oral testimony was taken).

*The Follow-On Civil Complaints*.  Shortly after the Court entered the DOJ consent decrees, Plaintiff Siddharth Hariharan filed the first in a series of complaints against the same

---

[2] *See also* Final Judgment § IV, *United States v. Adobe Sys. Inc., Apple Inc., Google Inc., Intel Corp., Intuit, Inc. & Pixar*, No. 1:10-cv-01629-RBW (D.D.C. Mar. 17, 2011); Proposed Final Judgment § IV, *United States v. Lucasfilm Ltd.*, No. 1:10-cv-02220-RBW (D.D.C. May 9, 2011).  Because Plaintiffs reference the judgments without attaching them to their Complaint (*see* Compl. ¶¶ 114-115), they are attached to the Declaration of Christina J. Brown filed herewith, as Exhibit A and Exhibit B, respectively.  The Court may consider documents referenced but not attached to a complaint without converting a motion to dismiss into one seeking summary judgment.  *See Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007).

[3] DOJ later filed a complaint and entered into a similar consent decree with Lucasfilm regarding its alleged bilateral agreement with Pixar.

DEFENDANTS' NOTICE AND JOINT MOTION
TO DISMISS CONSOL. AM. COMPL.
NO. 11-CV-2509-LHK

seven companies that had settled with DOJ.  Hariharan alleged that he worked for Lucasfilm as a software engineer for approximately seventeen months, from mid-January 2007 through mid-August 2008.  (Compl. ¶ 18.)  Thereafter, Plaintiffs Michael Devine, Brandon Marshall, Mark Fitchner, and Daniel Stover filed similar complaints.  These additional Plaintiffs alleged that they worked as software engineers at various times for three of the seven Defendants (Adobe, Intel, and Intuit) in three different states (California, Arizona, and Washington).  *(Id.* ¶¶ 16-20.)  The complaints were assigned to this Court in August 2011, and Plaintiffs thereafter filed a superseding Consolidated Amended Complaint.

Defendants are seven companies—Adobe, Apple, Google, Intel, Intuit, Lucasfilm, and Pixar—described in the Complaint as belonging to an undefined group of "high technology companies."  (*Id.* ¶ 43.)  Aside from this generic description, the Complaint does not allege that Defendants participate in any particular labor market.  In fact, the Complaint says nothing at all about the types of businesses in which these Defendants engage.  (*Id.* ¶¶ 21-27.)  The omission is apparently tactical, as each Defendant is a well-known company widely covered in mass media and engaged in a wide variety of businesses, including hardware design, various branches of software development, animation, fabrication, film production, gaming, and advertising.

*The Allegations*.  Plaintiffs' factual allegations are taken wholesale, and often verbatim, from the factual allegations in the DOJ complaints.  Defendants allegedly entered into six bilateral agreements over a two-year period "not to cold call each others' employees."  (*Id.* ¶¶ 59, 73, 79, 85, 98, 104.[4])  These agreements allegedly existed between Apple and Adobe, Apple and Google, Apple and Pixar, Google and Intel, Google and Intuit, and Lucasfilm and Pixar.  (*Id.*)  The Complaint alleges no other restrictions on Defendants' hiring practices.  So, for example, the Complaint does not allege that Intuit had an agreement with any Defendant other than Google, or that Adobe had an agreement with any Defendant other than Apple.  In other words, notwithstanding the Complaint's allegation of an "overarching conspiracy," four of the

---

[4] Only one bilateral agreement is alleged to have had the additional terms that the parties would notify each other if an employee of one company applied for a job with the other company, and that if either company made an offer to an employee of the other company, "neither company would counteroffer above the initial offer."  (*Id.* ¶ 61.)

DEFENDANTS' NOTICE AND JOINT MOTION
TO DISMISS CONSOL. AM. COMPL.
NO. 11-CV-2509-LHK

1   Defendants remained free to cold call and pursue the employees of every Defendant except one.

2          The only allegations of an "overarching conspiracy" are that it "consisted of an

3   interconnected web of express agreements, each with the active involvement and participation of

4   a company under the control of Steven P. Jobs ("Steve Jobs") and/or a company that shared at

5   least one member of Apple's board of directors." (*Id.* ¶ 55.)  Stripped of rhetorical flourish, this

6   allegation says only that Mr. Jobs sat on the boards of Pixar and Apple, and Google's Eric

7   Schmidt and Arthur Levinson both sat on the boards of Apple and Google.  The Complaint does

8   not explain how these overlapping board memberships establish any "interconnection" among the

9   alleged bilateral agreements, much less support a broader conspiracy.  That's it—the sum and

10  substance of the allegations of a grand conspiracy.

11         Based on these allegations, the Complaint asserts claims under Section 1 of the Sherman

12  Act, California's Cartwright Act, and sections 16600 and 17200 of the California Business and

13  Professions Code.  (*Id.* ¶ 5.)  Plaintiffs seek to represent a class of all "salaried" employees of

14  Defendants over a five-year period regardless of the positions they held, with exclusions for retail

15  employees and Defendants' corporate officers, board members, and senior executives.  (*Id.* ¶ 30.)

16  By its terms, the class would include not only software engineers like the named plaintiffs, but

17  also secretaries, accounting personnel, janitors, and in-house counsel.

18                                **LEGAL STANDARD**

19         ***Failure to State a Claim.***  To survive a motion to dismiss, a complaint must plead

20  sufficient factual matter, if accepted as true, to state a claim to relief that is plausible on its face.

21  *See Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009); *Twombly*, 550 U.S. at 555.  Plaintiff must

22  plead "factual content [that] allows the court to draw the reasonable inference that the defendant

23  is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949.  This standard incorporates two

24  important, related principles.  First, a complaint cannot rest on conclusory assertions, nor simply

25  allege legal conclusions masquerading as facts.  *See Kendall*, 518 F.3d at 1048.  *Twombly* and the

26  cases following it require that a complaint allege "not just ultimate facts (such as a conspiracy),

27  but *evidentiary facts* which, if true, will prove" the alleged violation.  *Id.* at 1047 (quoting

28  *Twombly*, 550 U.S. at 555) (emphasis added); *see also Iqbal*, 129 S. Ct. at 1950 (courts are "not

DEFENDANTS' NOTICE AND JOINT MOTION
TO DISMISS CONSOL. AM. COMPL.
NO. 11-CV-2509-LHK

1   bound to accept as true a legal conclusion couched as a factual allegation") (internal citation

2   omitted); *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001) (court need not

3   accept "merely conclusory, unwarranted deductions of fact").  In the Ninth Circuit's formulation,

4   the complaint must "answer the basic questions:  who, did what, to whom (or with whom), where,

5   and when?"  *Kendall*, 518 F.3d at 1047.

6        Second, plaintiffs' allegations must state a claim that is plausible.  In other words, it is not

7   enough to allege specific facts unless those facts plausibly add up to a claim for relief.  *See Iqbal*,

8   129 S. Ct. at 1949-50 ("only a complaint that states a plausible claim for relief survives a motion

9   to dismiss"); *see also DM Research, Inc. v. Coll. of Am. Pathologists*, 170 F.3d 53, 56 (1st Cir.

10  1999) (upholding district court's dismissal of antitrust complaint because the alleged conspiracy

11  was "highly implausible") (cited approvingly in *Twombly*, 550 U.S. at 557).  In antitrust cases,

12  the requirement of plausibility means that the facts alleged must be "'plausible' in light of basic

13  economic principles."  *William O. Gilley Enters. v. Atl. Richfield Co.*, 588 F.3d 659, 662 (9th Cir.

14  2009).  When a plaintiff alleges similar conduct by defendants to support a conspiracy claim, the

15  complaint must do more than allege parallel conduct or actions that are consistent with a

16  defendant's independent self interest.  "Allegations of facts that could just as easily suggest

17  rational, legal business behavior by the defendants as they could suggest an illegal conspiracy are

18  insufficient to plead a violation of the antitrust laws."  *Kendall*, 518 F.3d at 1049; *see also*

19  *Twombly*, 550 U.S. at 554.[5]

20        *Twombly* emphasizes that courts in antitrust cases must scrutinize closely the allegations

21  of an "agreement" at the pleading stage because antitrust litigation can be costly and burdensome.

22  550 U.S. at 558-59.  Noting that "[i]t is no answer to say" that meritless claims can be weeded out

23  in the discovery process, the Court cautioned that "it is only by taking care to require allegations

24  that reach the level suggesting conspiracy that we can hope to avoid the potentially enormous

25

26  [5] Federal pleading standards govern claims brought in federal court, including those arising under
    state law.  *In re Graphics Processing Units Antitrust Litig.* ("*GPU*"), 527 F. Supp. 2d 1011, 1025

27  (N.D. Cal. 2007) (applying *Twombly* in dismissing federal and state antitrust claims); *see also*
    *Church & Dwight Co. v. Mayer Labs, Inc.*, 2011 U.S. Dist. LEXIS 35969, at *55-61 (N.D. Cal.

28  Apr. 1, 2011) (applying *Twombly* to Cartwright Act and UCL claims).

DEFENDANTS' NOTICE AND JOINT MOTION
TO DISMISS CONSOL. AM. COMPL.
NO. 11-CV-2509-LHK

1    expense of discovery" in meritless cases.  *Id.* at 559; *see also Kendall*, 518 F.3d at 1047.[6]

2        ***Lack of Standing.***  A plaintiff has the burden of establishing standing under Article III of

3    the U.S. Constitution.  *Takhar v. Kessler*, 76 F.3d 995, 1000 (9th Cir. 1996); *Chandler v. State*

4    *Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1121-22 (9th Cir. 2010).  When a plaintiff lacks Article

5    III standing, the court lacks subject matter jurisdiction, and the case should be dismissed.

6    *Cetacean Cmty. v. Bush*, 386 F.3d 1169, 1174 (9th Cir. 2004).

7                                **ARGUMENT**

8    **I.     THE COURT SHOULD DISMISS PLAINTIFFS' ANTITRUST CLAIMS UNDER**
          ***TWOMBLY.***
9
         **A.     The Complaint Does Not Allege Sufficient Evidentiary Facts of an**
10             **Overarching, Multilateral Conspiracy.**

11        Virtually all of the facts alleged in the Complaint relate to six bilateral agreements among

12   the Defendants.  (Compl. ¶¶ 56-71 (facts regarding alleged Lucasfilm-Pixar agreement); ¶¶ 72-78

13   (Apple-Adobe); ¶¶ 79-84 (Apple-Google); ¶¶ 85-91 (Apple-Pixar); ¶¶ 97-102 (Google-Intel);

14   ¶¶ 103-107 (Google-Intuit).)  From these limited allegations, Plaintiffs leap to their claim of an

15   "overarching" conspiracy among all of the Defendants.  As discussed below, Plaintiffs' claim

16   fails.

17                    **1.     The Court Must Disregard the Complaint's Labels, Conclusions, and**
                         **Boilerplate Allegations of an Overarching Agreement.**
18

19        The Court must ignore "labels and conclusions" and "formulaic recitation[s] of the

20   elements of a cause of action."  *See Iqbal*, 129 S. Ct. at 1949-50 (conclusory allegations are not

21   "entitled to the assumption of truth"); *Gilley*, 588 F.3d at 651.  A bare assertion of the existence

22   of an unlawful agreement is a "legal conclusion" that does not satisfy the pleading standards for

23   an antitrust claim.  *Church & Dwight Co. v. Mayer Labs., Inc.*, 2011 U.S. Dist. LEXIS 35969, at

24   *56-59 (N.D. Cal. Apr. 1, 2011) (citing *In re Netflix Antitrust Litig.*, 506 F. Supp. 2d 308, 320

25   (N.D. Cal. 2007)).

26   _____
     [6] Based in part on *Twombly*'s admonition that courts should be vigilant in ensuring that the
27   governing pleading standards are satisfied in antitrust cases to prevent time-consuming and
     expensive discovery on meritless claims, Defendants are contemporaneously filing a motion to
28   stay discovery temporarily until the Court rules on this motion to dismiss.

DEFENDANTS' NOTICE AND JOINT MOTION
TO DISMISS CONSOL. AM. COMPL.
NO. 11-CV-2509-LHK

1        Here, labels and conclusions are what Plaintiffs use to support their claim of a grand

2   conspiracy.  Plaintiffs repeatedly describe the alleged conspiracy as an "interconnected web of

3   express agreements" (Compl. ¶¶ 1, 55), an "interconnected web of agreements" (*id.* ¶ 108), and

4   an "overarching conspiracy" (*id.* ¶¶ 55, 108).  But such conclusions and labels add nothing to the

5   factual foundation for Plaintiffs' claims and must be disregarded.  *See, e.g.*, *Twombly*, 550 U.S. at

6   555; *Sprewell*, 266 F.3d at 988.

7        Similarly, Plaintiffs' recitations of the elements of the claim are not evidentiary facts

8   under *Twombly*.  For example, Plaintiffs allege that each of them was "injured in his business or

9   property by reason of the violations alleged herein" (Compl. ¶¶ 16-20), they recite the elements of

10  a Sherman Act and Cartwright Act claim (*id.* ¶¶ 119-135), and they allege generically that

11  Defendants "entered into the express agreements and the overarching conspiracy with knowledge

12  of the other Defendants' participation, and with the intent of accomplishing the conspiracy's

13  objective" (*id.* ¶ 108).  These are precisely the kind of rote allegations that the Ninth Circuit has

14  rejected as insufficient.  *Kendall*, 518 F.3d at 1048.

15       In *Kendall*, plaintiffs claimed that the defendant banks and credit card companies

16  conspired to set the amounts of payment card transaction fees.  Plaintiffs alleged that defendants

17  had "knowingly, intentionally and actively participated in an individual capacity in the alleged

18  scheme."  The Ninth Circuit held that this allegation was conclusory and entitled to no weight in

19  the *Twombly* analysis.  *Kendall*, 518 F.3d at 1048; *see In re Late Fee & Over-Limit Fee Litig.*,

20  528 F. Supp. 2d 953, 962 (N.D. Cal. 2007) (rejecting as insufficient "several conclusory

21  allegations that the defendants agreed to increase late fees," which provided "no details as to

22  when, where, or by whom this alleged agreement was reached"); *In re Graphics Processing Units*

23  *Antitrust Litig.* ("*GPU*"), 527 F. Supp. 2d 1011, 1024 (N.D. Cal. 2007) ("Plaintiffs allege in

24  conclusory fashion that defendants fixed prices pursuant to an agreement, but that allegation is

25  simply too conclusory to show a plausible entitlement to relief.").  The Court should similarly

26  disregard Plaintiffs' boilerplate allegations here.

27          **2.**     **The Alleged Overarching Conspiracy Fails to Satisfy *Twombly*.**

28       Apart from conclusions and labels, there is nothing to support Plaintiffs' alleged

10

1   overarching conspiracy.  The Complaint "must show some meeting of the minds," *Gilley*, 588

2   F.3d at 665, to support a conspiracy claim, but the Complaint does not even describe what all the

3   Defendants are alleged to have agreed upon.  The only restrictions on Defendants' recruiting

4   practices alleged in the Complaint are those contained in the six alleged bilateral agreements (and

5   even those are insufficient to support any alleged antitrust violation, as discussed below).  But this

6   reduces Plaintiffs to arguing that Defendants entered into an overarching conspiracy to enter into

7   six bilateral agreements, which is nonsensical.  The six alleged bilateral agreements do not add up

8   to an overarching conspiracy because, by Plaintiffs' own allegations, these bilateral agreements

9   left Defendants free to cold call and otherwise pursue most of the employees who were the

10  supposed target of this alleged conspiracy (not to mention the employees of every other company

11  in the world).  In fact, the bilateral agreements are themselves inconsistent with a claim of a grand

12  conspiracy.  Such an overarching theory would have rendered the alleged bilateral agreements

13  unnecessary.

14          Other than the bilateral agreements, Plaintiffs assert that "every agreement alleged herein

15  directly involved a company either controlled by Steve Jobs, or a company that shared a member

16  of its board of directors with Apple."  (Compl. ¶ 108.)  Plaintiffs characterize Steve Jobs as

17  "controlling" Apple when the agreements were entered, and note that Mr. Jobs was Disney's

18  largest shareholder when Apple and Pixar (then a subsidiary of Disney) entered into their alleged

19  agreement.  (*Id*. ¶ 87.)  Plaintiffs also observe that Arthur Levinson sat on the boards of both

20  Apple and Google at the time of their alleged agreement (*id.* ¶ 79), and that Eric Schmidt, the

21  CEO of Google, sat on Apple's board of directors when Google allegedly entered into agreements

22  with Intel and Intuit.  (*Id.* ¶ 97.)

23          But none of that suggests an overarching conspiracy.  Nowhere does the Complaint allege

24  facts to show that Messrs. Jobs, Levinson, or Schmidt engaged in any conduct that would support

25  the claim that these agreements are in some way "interconnected," or even that they knew of any

26  agreements other than those involving their own companies.  Nor does the Complaint allege that

27  service on Apple's board of directors somehow facilitated these bilateral agreements, let alone

28  transformed them into anything "overarching."  In fact, the Complaint does not allege a single

                                                      11

communication that even suggests an overarching conspiracy, as opposed to discrete bilateral agreements. It contains no description of when the supposed overarching conspiracy was reached, and no allegation of who at each company supposedly joined this grand conspiracy. Plaintiffs have done nothing more than allege that three of the seven Defendants shared common board members.

Service on multiple boards is commonplace and not evidence of a conspiracy. *See, e.g.*, *Jicarilla Apache Tribe v. Supron Energy Corp.*, 728 F.2d 1555, 1561 (10th Cir. 1984) (interlocking board memberships were not a per se violation of the Sherman Act). Such allegations are less meaningful even than common membership in trade associations and joint ventures, which courts have repeatedly found to be insufficient to support a claim of conspiracy. *See, e.g.*, *Twombly*, 550 U.S. at 556 n.12; *Gilley*, 588 F.3d at 669; *GPU*, 527 F. Supp. 2d at 1014-17, 1023; *In re Late Fee*, 528 F. Supp. 2d at 963; *Arista Records LLC v. Lime Group LLC*, 532 F. Supp. 2d 556, 579 n.30 (S.D.N.Y. 2007) ("mere opportunity to conspire" does not support inference of conspiracy); *see also In re Citric Acid Litig.*, 191 F.3d 1090, 1103 (9th Cir. 1990) (rejecting plaintiff's attempt to infer a conspiracy from multiple meetings and telephone conversations, as such meetings "do not tend to exclude the possibility of legitimate activity."). Plaintiffs' allegations of overlapping board membership is particularly empty here given that it is limited to three of the seven Defendants.

The alleged bilateral agreements themselves, even if similar in nature, also do not "tend[] to exclude the possibility of independent action" by the parties to each of the bilateral agreements. *Twombly*, 550 U.S. at 554; *see also In re Late Fee*, 528 F. Supp. 2d at 962 (granting defendants' motion to dismiss plaintiffs' Cartwright Act claim because plaintiffs, having alleged only "parallel conduct" to increase late fees, did not meet the *Twombly* pleading standard); *GPU*, 527 F. Supp. 2d at 1023 (dismissing plaintiffs' complaint in part because plaintiffs' allegations of similar pricing structure and product release schedule were "just as consistent with coincidence as they are with conspiracy").

In *In re Iowa Ready-Mix Concrete Antitrust Litig.*, 768 F. Supp. 2d 961 (N.D. Iowa 2011), the court rejected a strikingly similar attempt by private plaintiffs to convert multiple bilateral

1   agreements into one conspiracy among all defendants.  *Id.* at 972.  The defendants there had

2   pleaded guilty to criminal antitrust violations "as to certain *bilateral* agreements" regarding

3   ready-mix concrete in the state of Iowa, *id.* at 975 (emphasis in original), and the plaintiffs

4   alleged that those bilateral agreements were sufficient to allege an "industry-wide" conspiracy.

5   *Id*. at 972.  The court rejected that argument and dismissed the complaint, holding that "[w]hat is

6   missing . . . is the 'larger picture' from which inferences of a wider conspiracy can be drawn."  *Id*.

7   at 975; *see also In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 348-49 (3d Cir. 2010)

8   (allegations of substantially similar agreements among certain groups of defendants were

9   insufficient to allege a global conspiracy); *In re Elevator Antitrust Litig.*, 502 F.3d 47, 52 (2d Cir.

10  2007) (allegations of agreement among defendants in Europe were insufficient to allege a similar

11  agreement in the United States).  The same is true here.  Plaintiffs have not alleged any "larger

12  picture" to support their claim of an overarching conspiracy.

13       Instead, the alleged bilateral agreements are nothing more than allegations of parallel

14  behavior among pairs of Defendants.  Such allegations of parallel conduct cannot support

15  Plaintiffs' conspiracy claim here because the alleged bilateral agreements are not *inconsistent*

16  with independent action.  *See Twombly*, 550 U.S. at 554; *see also GPU*, 527 F. Supp. 2d at 1024.

17  In fact, such non-solicitation agreements are judged under a rule of reason analysis and widely

18  recognized as pro-competitive and a legitimate way to allow companies to work in collaborative

19  ventures without fear of exposing themselves to "poaching" of their employees.  *See, e.g.*, *Aydin*

20  *Corp. v. Loral Corp.*, 718 F.2d 897, 899-900 (9th Cir. 1983) (finding that agreement not to "raid"

21  a former employer's staff is not an unreasonable restraint); *Eichorn v. AT&T Corp.*, 248 F.3d 131,

22  145-56 (3d Cir. 2001) (holding that agreement not to hire, retain, or solicit employees was

23  reasonable to ensure workforce continuity during sale of subsidiary).  Even the DOJ, whose

24  allegations Plaintiffs copy wholesale, recognized the pro-competitive benefits of non-solicitation

25  agreements.[7]  Given that the alleged bilateral agreements stood on their own and did not depend

26  ───────────────────
    [7] The DOJ consent decrees allow Defendants to enter into and enforce no-direct-solicitation
27  provisions under many different circumstances.  Defendants are free to use such agreements to
    the extent they are reasonably necessary for the functioning of legitimate collaboration
28  agreements, such as joint development, technology integration, joint ventures, teaming
    agreements and other joint projects, and the shared use of facilities (Judgments § V.A.5(iii)); for a

DEFENDANTS' NOTICE AND JOINT MOTION
TO DISMISS CONSOL. AM. COMPL.
NO. 11-CV-2509-LHK

on the existence of any other agreement or the participation of any other company, Plaintiffs cannot allege that the bilateral agreements alone "tend[ed] to exclude the possibility of independent action" by each pair of Defendants. *Twombly*, 550 U.S. at 554.

Finally, if Plaintiffs hope to turn their allegations of an "interconnected web of agreements" into a "hub-and-spoke" conspiracy, there would have to be a hub and spokes—none of which is alleged here. It is well-settled that where parties have not agreed to the overarching conspiracy, "there is no wheel and therefore no hub-and-spoke conspiracy." *PSKS, Inc. v. Leegin Creative Leather Prods., Inc.*, 615 F.3d 412, 420 (5th Cir. 2010); *see also PepsiCo, Inc. v. Coca-Cola Co.*, 315 F.3d 101, 110 (2d Cir. 2002) (holding that plaintiffs failed to offer adequate evidence of a horizontal conspiracy without "direct evidence of communication" or similar indications of a mutual agreement); *Dickson v. Microsoft Corp.*, 309 F.3d 193, 203-04 (4th Cir. 2002) (dismissing a "rimless wheel antitrust conspiracy" supported by "separate agreements with a common defendant" due to lack of mutual agreement). Here, Plaintiffs do not allege any shared communications among all Defendants, or any other evidence suggesting that Defendants as a group had a "meeting of the minds" regarding their hiring practices. *See, e.g.*, *Howard Hess Dental Labs. Inc. v. Dentsply Int'l, Inc.*, 602 F.3d 237, 257 (3d Cir. 2010) (dismissing allegations of conspiracy where "[p]laintiffs have failed to allege any facts plausibly suggesting a unity of purpose, a common design and understanding, or a meeting of the minds between and among" defendants).

The Complaint fails to provide the most basic "who, what, where, and when" of the overarching conspiracy required by *Kendall*, and that failure requires dismissal of the Complaint.

**B.      The Overarching Conspiracy Alleged by Plaintiffs Is Implausible.**

To support an antitrust claim, the alleged conspiracy must be "'plausible' in light of basic economic principles." *Gilley*, 588 F.3d at 662. Plaintiffs' alleged "overarching conspiracy" is not only unsupported by factual allegations, *see supra*, but it is entirely implausible.

---

wide range of business transactions, including mergers, acquisitions, investments, divestitures; in contracts with consultants, auditors, vendors, recruiting agencies, or providers or temporary or contract employees (*id.* §§ V.A.2-3), and in settlement or compromise of legal disputes, and employment or severance agreements with their employees (*id.* §§ V.A.4, V.A.1).

DEFENDANTS' NOTICE AND JOINT MOTION
TO DISMISS CONSOL. AM. COMPL.
NO. 11-CV-2509-LHK

Plaintiffs allege that there were six bilateral agreements among the seven Defendants.  For each bilateral no cold-call agreement, the Complaint alleges only that the two companies to the agreement agreed "not to cold call *each other's* employees."  (Compl. ¶¶ 59, 73, 79, 85, 98, 104 (emphasis added).)  The two parties to each alleged bilateral agreement thus could cold call employees from any of the other Defendants.  For example, the alleged agreement between Adobe and Apple alleges that "Apple and Adobe agreed not to cold call each other's employees." (*Id.* ¶ 73.)  The Complaint does *not* allege, nor could it rationally, that Adobe and Apple agreed to refrain from cold calling the employees of other companies.  Thus, even if the alleged bilateral agreements existed, the Adobe-Apple agreement left Adobe free to cold call and pursue the employees of Intel, Intuit, Google, Lucasfilm, and Pixar—and all the other companies in the world—and those companies were obviously free to cold call and pursue Adobe employees.

Even viewing the six alleged bilateral agreements together, the Defendants remained free to cold call and pursue most of the other Defendants' employees.  By the Complaint's express terms, four Defendants (Adobe, Intel, Intuit, and Lucasfilm) could cold call employees from five of the other Defendants and vice versa, one Defendant (Pixar) could cold call employees from four of the other Defendants and vice versa, and two Defendants (Apple and Google) each could cold call employees from three of the other Defendants and vice versa.  Of the twenty-one possible pairings of Defendants, the alleged bilateral agreements left fifteen pairs free to solicit each other's employees in any manner they chose, including cold calling.

To say that any Defendant was part of an overarching no-cold-calling conspiracy with six other Defendants to suppress wages while it remained free to cold call employees from most of those Defendants—and could likewise have its own employees cold called by other Defendants— makes no sense at all.  The Complaint's own allegations regarding the limited scope of the alleged bilateral agreements belie the existence of any "overarching conspiracy."  *Cf. Gilley*, 588 F.3d at 662-63 (recognizing California Supreme Court's judgment in related *Aguilar* case that allegations of forty-four bilateral exchange agreements among pairs of defendants were not evidence of an overarching conspiracy) (citing *Aguilar v. Atl. Richfield Co.*, 25 Cal. 4th 826, 863 (2001) (disregarding evidence of bilateral exchange agreements, which "does not even imply

15

1   collusive, rather than independent, action")).

2          Plaintiff's theory of an overarching conspiracy is also implausible because they have

3   alleged nothing to suggest that Defendants participate in, let alone individually or collectively

4   control, any particular labor market.  (Compl. ¶¶ 21-27.)  Without any such allegations, Plaintiffs

5   have not alleged any plausible economic basis to believe that Defendants entered into an

6   overarching conspiracy with each other.  *See In re Iowa Ready-Mix*, 768 F. Supp. 2d at 976

7   (rejecting claim of "overall conspiracy" among defendants as "implausible" in light of the nature

8   of ready-mix concrete and plaintiffs' failure to allege a geographical market); *see also Newcal*

9   *Indus., Inc. v. IKON Office Solution*, 513 F.3d 1038, 1044 (9th Cir. 2009) (to state an antitrust

10  claim, a "plaintiff must allege both that a 'relevant market' exists and that the defendant has

11  power within that market").  *Compare, e.g., In re Flash Memory Antitrust Litig.*, 643 F. Supp. 2d

12  1133, 1139 (N.D. Cal. 2009) (denying motion to dismiss where three defendants allegedly

13  controlled 90% of the NAND Flash market); *In re Static Random Access Memory Antitrust Litig.*

14  ("*SRAM*"), 580 F. Supp. 2d 896, 901 (N.D. Cal. 2008) (denying motion to dismiss where

15  defendants allegedly controlled more than 75% of the SRAM market).

16      **C.      Plaintiffs Have Failed to Allege Facts to Support a Plausible Claim of Injury.**

17          An antitrust plaintiff must have suffered antitrust injury, that is, "injury of the type the

18  antitrust laws were intended to prevent and that flows from that which makes defendants' acts

19  unlawful."  *Am. Ad Mgmt., Inc. v. Gen. Tel. Co. of Cal.*, 190 F.3d 1051, 1055 (9th Cir. 1999)

20  (quoting *Atl. Richfield Co. v. USA Petroleum Co.*, 495 U.S. 328, 334 (1990)).  This requirement

21  comes from Section 4 of the Clayton Act, which creates a private right of action under the

22  Sherman Act for a plaintiff who has been "injured in his business or property by reason of

23  anything forbidden in the antitrust laws."  15 U.S.C. § 15(a).

24          "Naked assertions" of antitrust injury do not state a claim.  Instead, an antitrust plaintiff

25  "must put forth factual 'allegations plausibly suggesting (not merely consistent with)' antitrust

26  injury."  *NicSand, Inc. v. 3M Co.*, 507 F.3d 442, 451 (6th Cir. 2007); *see also Associated Gen.*

27  *Contractors of Cal., Inc. v. Cal. State Council of Carpenters* ("*AGC*"), 459 U.S. 519, 538-40

28  (1983) (antitrust standing requires, among other things, a direct causal connection between the

                                    16

1   asserted injury and the alleged restraint of trade); *CBS Cos. v. Equifax, Inc.*, 561 F.3d 569, 572

2   (6th Cir. 2009) (antitrust claim properly dismissed for failure to allege facts supporting alleged

3   reduction in competition); *City of Pittsburgh v. W. Penn Power Co.*, 147 F.3d 256, 267-68 (3d

4   Cir. 1998) (allegations of speculative injury are inadequate to state an antitrust claim).

5           Plaintiffs here have not pleaded any facts showing that they suffered any specific injury,

6   let alone an injury caused by the alleged overarching conspiracy.  Plaintiff Hariharan, for

7   example, states that he worked as a software engineer for Defendant Lucasfilm from January

8   2007 through August 2008 (Compl. ¶ 18), presumably joining Lucasfilm from some other

9   company that was even by his allegations paying a fully competitive salary.  He does not allege

10  that he ever desired to work for another Defendant, that he would have taken a job or considered

11  taking a job with another Defendant, or that the alleged overarching conspiracy affected his

12  employment choices in any way.  The same holds true for the other named Plaintiffs.[8]

13          Instead, Plaintiffs offer the broad and conclusory assertion that they were harmed in the

14  same way as every other employee of Defendants because the overarching conspiracy had the

15  "effect of fixing the compensation of the employees of participating companies at artificially low

16  levels."  (*Id*. ¶ 108.)  This theory of injury suffers from fundamental, incurable problems.  The

17  Complaint contains no description of Defendants' businesses, no discussion of the types of

18  employees they hire, and no allegation that Defendants participate in, let alone individually or

19  collectively control, any particular employment market.  (*Id*. ¶¶ 21-27.)  Plaintiffs have utterly

20  failed to supply these missing allegations—notwithstanding how readily available information is

21  about Defendants' businesses—because there is demonstrably no such market that Plaintiffs

22  could allege.  And that failure is fatal to Plaintiffs' claims.  Without any allegation that

23  Defendants have power in a relevant labor market, Plaintiffs have not alleged any plausible basis

24  for their claim that they were injured by the supposed overarching conspiracy.  *See Newcal*, 513

25  F.3d at 1044 (to state an antitrust claim, a "plaintiff must allege both that a 'relevant market'

26  ─────────────────────
[8] Factors relevant to injury include an employee's salary history, educational and other
27  qualifications, ability and willingness to relocate to a different employer, and ability to seek
    employment in other industries in which her skills could be utilized.  *Weisfeld v. Sun Chem.*
28  *Corp.*, 210 F.R.D. 136, 144 (D.N.J. 2002), *aff'd*, 84 F. App'x 257 (3d Cir. 2004).

DEFENDANTS' NOTICE AND JOINT MOTION
TO DISMISS CONSOL. AM. COMPL.
NO. 11-CV-2509-LHK

1    exists and that the defendant has power within that market").

2         The best that Plaintiffs can do is allege that Defendants are "high technology companies."

3    (Compl. ¶ 43 ("Defendants and other high technology companies . . . .").)  But that is hardly an

4    effort to define a labor market and is, in any event, not helpful.  As the Complaint admits, there

5    are "other high technology companies" besides Defendants.  (*Id.*)  And yet the Complaint does

6    not attempt to explain how the alleged overarching conspiracy could suppress their employees'

7    wages given all the options available to those employees.  *See Consultants & Designers, Inc. v.*

8    *Butler Serv. Grp., Inc.*, 720 F.2d 1553, 1563 (11th Cir. 1983) (noting that employees "had as an

9    alternative all the other means of obtaining employment in their chosen fields" and rejecting

10   notion that restrictive employment covenant violated § 1 of the Sherman Act).

11        It gets worse.  Plaintiffs do not limit their allegations to any specific subset of "high

12   technology" employees, but instead allege that Defendants conspired to suppress the wages of *all*

13   of their salaried employees nationwide—regardless of what type of job they held.  (*Id.* ¶ 108

14   ("Defendants succeeded in lowering the compensation and mobility of their employees below

15   what would have prevailed in a lawful and properly functioning labor market."); *id.* ¶ 29

16   (defining class to include all salaried employees, excluding only retail employees, corporate

17   officers, board of directors, and senior executives who entered into the alleged conspiracy); *id.*

18   ¶ 110 ("Plaintiffs and each member of the Class were harmed by each and every agreement herein

19   alleged.").)  As alleged, this across-the-board conspiracy impacted the full array of Defendants'

20   employees, including secretaries, accountants, marketing personnel, receptionists, software

21   engineers, janitors, and in-house counsel.[9]  These employees plainly are not limited to working

22   for "high technology companies," and, as a result, Defendants would be competing against an

23   even broader array of companies for their employees.

24        Given the many different types of employees that Defendants hire, and no allegations that

25   Defendants comprise a controlling share of any relevant employment market, Plaintiffs have

26   failed to supply any economically rational support for their claim that they were injured by the

27

28   [9] Plaintiffs' conspiracy theory would also bring within its sweep categories of employees that
     only one Defendant hires, such as Intel's fabrication workers at its U.S. manufacturing facilities.

overarching conspiracy they have invented.  *See, e.g.*, *In re Flash Memory*, 643 F. Supp. 2d at 1144-45 (noting that a concentrated market share among alleged conspirators is relevant to the plausibility of a conspiracy); *Todd v. Exxon Corp.*, 275 F.3d 191, 202 (2d Cir. 2001) (relevant labor markets include all jobs that are reasonably good substitutes for employees seeking a job change); *Eichorn*, 248 F.3d at 147-48.

The Complaint appears to allege at times that Plaintiffs were injured by *each* of the bilateral agreements, separate and apart from any "overarching conspiracy."  (*See* Compl. ¶ 110 ("Plaintiffs and each member of the Class were harmed by each and every agreement herein alleged."); *id.* ¶ 71 (alleging that Lucasfilm employees were harmed by alleged bilateral agreements to which Lucasfilm was not a party).)  The Complaint does not provide any factual support for this alleged harm, and it fails for the same reasons that their claim of injury from the alleged overarching conspiracy fails—Plaintiffs have made no effort to allege how they were injured, such as by defining a relevant market and injury arising from Defendants' power in that market.  *See, e.g.*, *Newcal*, 513 F.3d at 1044 (plaintiff must allege that defendant has market power within a relevant market).  In addition, any injury Plaintiffs allege they suffered because of a bilateral agreement between companies other than their own employers—for example, that Lucasfilm employees were injured by the alleged agreement between Google and Intuit not to cold call each other's employees—fails for the further reason that such injury is far too speculative and remote from the alleged cause to support an antitrust claim.  *See AGC*, 459 U.S. at 540-42 (plaintiff whose alleged injuries were indirect and remote lacked standing to assert antitrust claim); *Eagle v. Star-Kist Foods, Inc.*, 812 F.2d 538, 541 (9th Cir. 1987) (in evaluating claim of injury, court must "examine the directness or indirectness of the causal connection between the alleged injury and the alleged violation").

Plaintiffs' antitrust claims should be dismissed.

## II.   PLAINTIFFS' CLAIM UNDER CALIFORNIA BUSINESS AND PROFESSIONS CODE § 16600 FAILS BECAUSE THAT STATUTE DOES NOT RESTRICT NON-SOLICITATION AGREEMENTS.

Plaintiffs have failed to state a claim for relief under California Business and Professions Code § 16600, which declares void contracts that "restrain[] [employees] from engaging in a

19

lawful profession, trade, or business of any kind." Cal. Bus. & Prof. Code § 16600.  When

analyzing potential violations of section 16600, courts draw a clear distinction between no-hire

agreements that may actually restrain employment and non-solicitation agreements that only limit

one means of contact about potential employment.  The law is clear that non-solicitation

agreements do not violate section 16600.  *See, e.g.*, *Thomas Weisel Partners LLC v. BNP

Paribas*, 2010 WL 546497, at *4-6 (N.D. Cal. Feb. 10, 2010).

    Here, Plaintiffs make no allegation that Defendants had any agreement *not to hire* each

others' employees.  Instead, the Complaint alleges restraints in a series of bilateral agreements

related to the method for recruiting employees, whereby one Defendant allegedly agreed with

another *not to solicit* each others' employees through cold calling.  (*See* Compl. ¶¶ 41-54 (general

cold-calling allegations), ¶¶ 72-73 (alleged Apple-Adobe agreement), ¶ 79 (Apple-Google), ¶ 85

(Apple-Pixar), ¶ 98 (Google-Intel), ¶ 104 (Google-Intuit); *see also id.* ¶¶ 58-61 (Pixar-

Lucasfilm).[10])

    The distinction between no-hire agreements and non-solicitation agreements is critical

because § 16600 is directed only at  agreements that restrain an employee from actually

"engaging in" his or her chosen "profession, trade or business."  Cal. Bus. & Prof. Code § 16600.

Non-solicitation agreements, on the other hand, "only slightly affect[] employees . . . [because

employees] are not hampered from seeking employment with [ ] nor from contacting [the

competing employer].  All they lose is the option of being contacted by [that employer] first.  It

does not restrain them from being employed by [the competing employer]."  *Loral Corp. v.

Moyes*, 174 Cal. App. 3d 268, 279-80 (1985) (upholding the validity of a provision that prohibited

a former employee from raiding the company's employees for a competing business); *see also*

---

[10] Though the heart of Plaintiffs' Complaint is the purported agreements not to solicit employees
through cold calling, Plaintiffs also allege that one of the alleged bilateral agreements included
"agreements to notify each other when making an offer to another's employee" and "agreements
that, when offering a position to another company's employee, neither company would
counteroffer above the initial offer."  (Compl. ¶ 61.)  Like the purported non-solicitation
agreements, these alleged terms do not implicate section 16600 because they did not prohibit
those companies from hiring any employees and, therefore, did not involve any "restraint [on]
[employees] from engaging in a lawful profession, trade, or business of any kind."  Cal. Bus. &
Prof. Code § 16600.

1    *Buskuhl v. Family Life Ins. Co.*, 271 Cal. App. 2d 514, 522-23 (1969) (holding that a provision

2    that prohibited a former employee from recruiting other employees away from his former

3    employer was "not such an inhibition upon a former employee's right to engage in trade,

4    business, or profession as to be within the proscription of section 16600").  Therefore, while a no-

5    hire agreement may give rise to liability under § 16600, a non-solicitation agreement "does not

6    violate section 16600."  *Thomas Weisel*, 2010 WL 546497, at *4-6.

7         *Thomas Weisel* is instructive.  There the defendant moved to dismiss claims for breach of

8    an employment agreement and the covenant of good faith and fair dealing on the ground that the

9    agreement in question was void because it violated section 16600.  *Id.* at *1-3.  The defendant had

10   left Thomas Weisel to go to a competitor and then recruited and hired his former team from

11   Thomas Weisel.  That conduct was proscribed by his employment agreement, which prohibited

12   the defendant from "recruit[ing] . . . or attempt[ing] to recruit" Thomas Weisel employees, as well

13   as from "hir[ing] or attempt[ing] to . . . hire" Thomas Weisel employees.  *Id.* at *2.

14        Faced with an agreement that contained both "no hire" and "no solicitation" language, the

15   court found that "it is crucial to distinguish among the differing types of contractual provisions

16   that might implicate a section 16600 violation."  *Id.* at *3.  The court held that while the "no hire"

17   provisions were "unenforceable," the "'no solicitation' language"—to "not recruit . . . or attempt

18   to recruit . . . directly or by assisting others"—"does not violate section 16600."  *Id.* at *3-4.  It

19   held:  "In the instant case, the non-solicitation clause contains permissible confidentiality and 'no

20   solicitation' language alongside the impermissible 'no hire' language.  The 'no hire' language can

21   simply be voided without requiring any rewriting of the agreement by the court."  *Id.* at *7.  The

22   court thus allowed the contractual breach claims to proceed "insofar as they rely upon the

23   confidentiality and non-solicitation provisions" that did not violate section 16600.  *Id.* at *9.

24        The same result follows here.  Because Plaintiffs' section 16600 claim is based on alleged

25   "agreements not to recruit each other's employees," rather than no-hire agreements (Compl. ¶ 1),

26   Plaintiff does not—and cannot—state any claim for relief.  A non-solicitation agreement—"not to

27   recruit"—like Plaintiffs allege here, simply "does not violate section 16600."  *Thomas Weisel*,

28

2010 WL 546497, at *4; *accord Loral*, 174 Cal. App. 3d at 279-80.[11]  Accordingly, the Court

should dismiss Plaintiffs' section 16600 claim as to all Defendants with prejudice.

### III.   PLAINTIFFS FAIL TO STATE A CLAIM UNDER CALIFORNIA BUSINESS AND PROFESSIONS CODE § 17200

Plaintiffs' fourth cause of action, for violation of California's Unfair Competition Law

("UCL"), Cal. Bus. & Prof. Code § 17200 *et seq.*, also must be dismissed.  Plaintiffs have failed

to allege facts sufficient to state a UCL claim, they have not "lost money or property" as required

to pursue a UCL claim, and they are ineligible for any relief under the UCL.

### A.   Plaintiffs Have Not Adequately Pleaded Unfair Competition.

The UCL "prohibits, and provides civil remedies for, unfair competition, which it defines

as 'any unlawful, unfair or fraudulent business act or practice.'"  *Kwikset Corp. v. Superior

Court*, 51 Cal. 4th 310, 320 (2011) (quoting Cal. Bus. & Prof. Code § 17200).  Plaintiffs recite all

three grounds for relief in their Complaint.  (*See* Compl. ¶ 145.)

The Complaint alleges no fraudulent conduct, much less particularized allegations of

"actual reliance on [ ] allegedly deceptive or misleading statements . . . ."  *In re Tobacco II Cases*,

46 Cal. 4th 298, 306 (2009).  S*ee Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009)

("Rule 9(b)'s heightened pleading standards apply to claims for violations of the . . . UCL").

Accordingly, Plaintiffs have failed to allege a "fraudulent business act or practice."

Plaintiffs' claim of "unlawful" and "unfair" conduct likewise fails because Plaintiffs have

failed to allege a violation of the Sherman Act, the Cartwright Act, or section 16600.

*SC Manufactured Homes, Inc. v. Liebert*, 162 Cal. App. 4th 68, 93 (2008); *see also, e.g.*, *Digital

Sun v. Toro Co.*, 2011 WL 1044502, at *5 (N.D. Cal. Mar. 22, 2011) ("Because the Sherman Act

---

[11] Similarly, the alleged agreement requiring notification and no counter-offering does not violate section 16600 because those alleged terms provide no bar or penalty to any of their employees being hired by the other.  They are therefore not the type of activity barred by section 16600.  *See*, *e.g.*, *Loral*, 174 Cal. App. 3d at 279 (holding a "noninterference" restriction in an employment termination agreement did not violate section 16600, as it "[did] not appear to be any more of a significant restraint on [the departed employee's/competing employer's] engaging in his profession, trade or business than a restraint on solicitation of customers"); *Bach v. Curry*, 258 Cal. App. 2d 676, 681 (1968) (holding an employment contract condition was not an invalid restraint on trade under § 16600 since such provision did not restrain the employee from working for a competitor nor in any way overtly limit his freedom to seek other employment).

1    violation is insufficiently pled, it follows that [plaintiff] has also failed to plead any violation of

2    the Unfair Competition Law."); *Facebook, Inc. v. Power Ventures, Inc.*, 2010 U.S. Dist. LEXIS

3    93517, at *44-45 (N.D. Cal. July 20, 2010) (dismissing UCL claim that was "premised on th[e]

4    same conduct" as claim under the Sherman Act, on the ground that the Sherman Act claim was

5    not sufficiently alleged).

6         While Plaintiffs clearly cannot premise a UCL claim for "unlawful" conduct on a failed

7    antitrust claim, their claim of "unfair" conduct similarly fails.  Courts  routinely reject UCL

8    claims of "unfair" conduct where the plaintiff failed to allege a viable antitrust claim based on the

9    same conduct.  *See Chavez v. Whirlpool Corp.*, 93 Cal. App. 4th 363, 375 (2001) ("[W]e hold that

10   conduct alleged to be 'unfair' because it unreasonably restrains competition and harms consumers

11   . . . is not 'unfair' if the conduct is deemed reasonable and condoned under the antitrust laws.").

12   Moreover, a plaintiff cannot circumvent the pleading requirements of the antitrust laws when

13   asserting a UCL claim based on anticompetitive conduct.  To "permit a separate inquiry into

14   essentially the same question under the unfair competition law would only invite conflict and

15   uncertainty and could lead to the enjoining of procompetitive conduct." *Id.* (citation omitted).

16   Plaintiffs have failed to plead a cause of action under the "unlawful," "unfair," or "fraudulent"

17   prongs of the UCL, and their section 17200 claim should be dismissed.

18         **B.      Plaintiffs Lack Standing Because They Have Not Lost Money or Property.**

19         Plaintiffs' claims also fail because they have not "lost money or property" as is required to

20   maintain a UCL claim.  UCL standing extends only to a "'person who has suffered injury in fact

21   and has lost money or property' as a result of unfair competition." *Kwikset*, 51 Cal. 4th at 321

22   (quoting Cal. Bus. & Prof. Code § 17204).  Plaintiffs cannot establish either.  As explained above,

23   Plaintiffs have failed to adequately allege injury in fact, and the UCL claim should be dismissed

24   on that basis.  *See id*. at 322 (holding that "injury in fact" necessary for UCL standing is the same

25   as "injury in fact" necessary for Article III standing).

26         Moreover, Plaintiffs have failed to allege that they suffered the specific type of injury in

27   fact required for UCL standing—"a personal, individualized loss of money or property in any

28   nontrivial amount." *Id*. at 325.  First, Plaintiffs' sweeping assertion that Defendants' agreements

DEFENDANTS' NOTICE AND JOINT MOTION
TO DISMISS CONSOL. AM. COMPL.
NO. 11-CV-2509-LHK

may have influenced the "employee compensation" of "all salaried employees" by "fixing the compensation . . . at artificially low levels" (Compl. ¶¶ 46, 50, 108) does not establish "a personal, individualized loss of money or property" by Plaintiffs that was "caused by[ ] the unfair business practice." *Kwikset*, 51 Cal. 4th at 325, 322.  As discussed above, apart from these vague and conclusory assertions, Plaintiffs fail to allege any facts that would support such a conclusion or explain how Plaintiffs themselves were injured.  Moreover, Plaintiffs' theory would bypass the purpose of the UCL standing requirement "to eliminate standing for those who have not engaged in any business dealings with would-be defendants." *Id*. at 317.  Plaintiffs do not allege how agreements between defendants who neither employed them nor entered into no-cold-call agreements with their employers could have caused them harm.  For example, Hariharan's employer, Lucasfilm, allegedly entered into an agreement with only one other defendant, Pixar.  Plaintiffs do not allege how agreements among the other Defendants would cause Lucasfilm either to refuse to "preemptively increase the compensation of its employees" (Compl. ¶ 49) or to set its "baseline compensation levels" at a lower amount (*id*. ¶ 52).  The same is true for the remaining named Plaintiffs.  And no Plaintiff alleges how this supposed wage suppression affected or foreclosed any compensation transaction, decision, or opportunity within the period that the alleged agreements were in effect.  Nor have Plaintiffs adequately alleged how any purported conspiracy could have had this result.

Second, employee mobility is not "money or property," and thus is not the type of "economic injury" that could provide UCL standing.  *Kwikset*, 51 Cal. 4th at 322.  More importantly, Plaintiffs have failed to plead that their mobility was impaired by Defendants' conduct, much less that this impairment caused them to lose money or property.  No Plaintiff alleges that he would have moved to work for another Defendant absent the Defendants' agreements, or that his ability to move to any of the other Defendants—or the hundreds of other companies in the area—was impaired in a way that caused a loss of money or property.

In sum, Plaintiffs' allegations fail to demonstrate how alleged agreements between a handful of companies—only four of which involved their employers—resulted in their loss of money or property.  Accordingly, their UCL claim should be dismissed.

1          **C.      Plaintiffs Are Not Eligible for Any UCL Remedy.**

2          Plaintiffs seek an injunction, declaratory relief, and restitution for defendants' alleged

3    violation of the UCL—the only remedies available under the UCL.  *See* Cal. Bus. & Prof. Code

4    § 17203 (authorizing injunctive and restitutionary relief); *AICCO, Inc. v. Ins. Co. of N. Am.*, 90

5    Cal. App. 4th 579, 590 (2001) (permitting UCL plaintiff to seek declaratory relief).  But Plaintiffs

6    have not adequately alleged a right to any of these remedies.  Thus, because "the only relief the

7    UCL provides is unavailable here, [Plaintiffs'] UCL claim fails."  *Doe v. Starbucks, Inc.*, 2009

8    WL 5183773, at *15 (C.D. Cal. Dec. 18, 2009).  *See also Madrid v. Perot Sys. Corp.*, 130 Cal.

9    App. 4th 440, 467 (2005) (affirming demurrer because plaintiff "failed to present a viable claim

10   for restitution or injunctive relief (the only remedies available)").

11          As discussed below in Section IV, Plaintiffs lack standing to assert claims for injunctive

12   or declaratory relief because they are former employees of four Defendants with no stated

13   intention of seeking work from any of the Defendants in the future.  The declaratory and

14   injunctive remedies that Plaintiffs seek would do nothing to redress their alleged injuries, and

15   they therefore lack standing to seek such relief.

16          Nor are Plaintiffs eligible for the "ancillary relief" of restitution under the UCL.  *Kwikset*,

17   51 Cal. 4th at 337 (quotation marks and citation omitted).  Plaintiffs request that this Court order

18   "disgorgement and/or impos[e] a constructive trust upon Defendants' ill-gotten gains, freez[e]

19   Defendants' assets, and/or requir[e] Defendants to pay restitution to Plaintiff and to all members

20   of the class of all funds acquired by means of any act or practice declared by this Court to be an

21   unlawful, unfair, or fraudulent [sic]."  (Compl. ¶ 152(c).)  But the UCL cannot support the

22   sweeping remedies Plaintiffs seek.  It is well-established that neither damages nor

23   nonrestitutionary disgorgement can be recovered under the UCL.  *Korea Supply Co. v. Lockheed*

24   *Martin Corp.*, 29 Cal. 4th 1134, 1152 (2003).  As the California Supreme Court consistently has

25   held, "[u]nder the UCL, an individual may recover profits unfairly obtained to the extent that

26   these profits represent monies given to the defendant or benefits in which the plaintiff has an

27   ownership interest."  *Id.* at 1148 (emphasis added).  But the speculative higher compensation

28   Plaintiffs allege all employees would have received cannot be characterized either as "monies

25

1    given to the defendant" or "benefits in which [Plaintiffs have] an ownership interest." *Id.*

2            First, "it is clear that [Plaintiffs are] not seeking the return of money or property that was

3    once in [their] possession." *Id.* at 1149.  Plaintiffs allege only that compensation was "fix[ed] . . .

4    at artificially low levels," not that money was in fact taken from their possession.  (Compl.

5    ¶ 146.)  Second, "the relief sought by [Plaintiffs] is not restitutionary under an alternative theory

6    because [they have] no vested interest in the money [they] seek[] to recover." *Korea Supply*, 29

7    Cal. 4th at 1149.  Plaintiffs are not claiming "earned wages that are due and payable pursuant to

8    . . . the Labor Code." *Cortez v. Purolator Air Filtration Prods. Co.*, 23 Cal. 4th 163, 178 (2000)

9    (holding such wages the proper subject of restitution).  Instead, they are claiming only what they

10   might have negotiated and/or received in compensation absent the defendants' alleged agreement.

11   (Compl. ¶ 32(h).)  This amounts to nothing more than an "attenuated expectancy"—akin to a

12   "lost business opportunity" or "lost revenue—which cannot serve as the basis for restitution."

13   *Korea Supply*, 29 Cal. 4th at 1150-51 (compensation for lost business opportunity is not

14   restitution).  Thus, Plaintiffs are not entitled to any available form of relief under the UCL and

15   their claim must be dismissed with prejudice for this reason as well.

16   **IV.    PLAINTIFFS LACK STANDING TO SEEK INJUNCTIVE OR DECLARATORY
             RELIEF BECAUSE THEY ARE FORMER EMPLOYEES AND THE ALLEGED
17           CONDUCT HAS ALREADY BEEN ENJOINED BY THE DOJ CONSENT
             DECREES.**
18

19           In each of their four claims, Plaintiffs ask the Court to enter a permanent injunction

20   against Defendants.  (Compl. ¶ 126 (seeking "a permanent injunction enjoining Defendants' [sic]

21   from ever again entering into similar agreements in violation of Section 1 of the Sherman Act");

22   ¶ 135 (same for Cartwright Act); ¶ 143 (same for section 16600); ¶ 149 (seeking to have

23   Defendants "permanently enjoined from continuing their violations of Business and Professions

24   Code section 17200").)  Plaintiffs also request declaratory relief as part of their section 16600 and

25   UCL claims.  (*Id.* ¶ 143 (seeking a "judicial declaration that Defendants' agreements and

26   conspiracy are void as a matter of law under Section 16600"); ¶ 152 (requesting that "a judicial

27   determination and declaration be made of the rights of Plaintiffs and Class members, and the

28   corresponding responsibilities of Defendants").)  This Court should dismiss Plaintiffs' claims for

DEFENDANTS' NOTICE AND JOINT MOTION
TO DISMISS CONSOL. AM. COMPL.
NO. 11-CV-2509-LHK

1    injunctive and declaratory remedies because they lack standing to seek such relief.

2         Like any other action brought in federal court, a lawsuit seeking injunctive or declaratory

3    relief cannot proceed without "first present[ing] an actual case or controversy within the meaning

4    of Article III, section 2 of the United States Constitution."  *Gov't Emps. Ins. Co. v. Dizol*, 133

5    F.3d 1220, 1222 (9th Cir. 1998).  "The 'irreducible constitutional minimum' of standing requires

6    that a plaintiff allege that he has suffered concrete injury, that there is a causal connection

7    between his injury and the conduct complained of, and that the injury will likely be redressed by a

8    favorable decision."  *Arakaki v. Lingle*, 477 F.3d 1048, 1059 (9th Cir. 2007) (quoting *United

9    States v. Hays*, 515 U.S. 737, 742-43 (1995)); see also *Lujan v. Defenders of Wildlife*, 504 U.S.

10   555, 560-61 (1992) (announcing above-quoted three-part test for Article III standing).

11   Accordingly, Plaintiffs are "entitled to injunctive relief only if [they] can show that [they] face[] a

12   'real or immediate threat . . . that [they] will again be wronged in a similar way.'"  *Mayfield v.

13   United States*, 599 F.3d 964, 970 (9th Cir. 2010) (quoting *City of Los Angeles v. Lyons*, 461 U.S.

14   95, 111 (1983)).  To be eligible for declaratory relief, Plaintiffs also must "demonstrate that [they

15   are] 'realistically threatened by a repetition of the violation.'"  *Gest v. Bradbury*, 443 F.3d 1177,

16   1181 (9th Cir. 2006) (quoting *Armstrong v. Davis*, 275 F.3d 849, 860-61 (9th Cir. 2001)).

17        Here, Plaintiffs' allegations are insufficient on their face to establish standing to seek

18   injunctive or declaratory relief.  Plaintiffs are former employees of four of the Defendants

19   (Adobe, Intel, Intuit, and Lucasfilm) with no stated intention of seeking work from any of the

20   Defendants in the future.  Their alleged injury is purely backward-looking and monetary—

21   Plaintiffs assert that they would have made more money but for the purported conspiracy.  The

22   declaratory and injunctive relief they seek would do nothing to redress that alleged injury.

23        The United States Supreme Court's recent ruling in *Wal-Mart Stores, Inc. v. Dukes*, 131 S.

24   Ct. 2541 (2011), confirms Plaintiffs' lack of standing.  There, in analyzing the makeup of a

25   putative injunctive class under Federal Rule of Civil Procedure 23(b)(2), the Court explained that

26   class members who were "no longer employed by Wal-Mart lack standing to seek injunctive or

27   declaratory relief against its employment practices."  *Id.* at 2559-60.  Because former employees

28   "have no . . . need for prospective relief," they have "no claim for injunctive or declaratory relief

27

1  at all." *Id.* at 2560.

2         Even before *Dukes*, the Ninth Circuit had held that former employees lack standing to sue

3  for declaratory or injunctive relief.  In *Walsh v. Nevada Department of Human Resources*, 471

4  F.3d 1033 (9th Cir. 2006), plaintiff lost her job with the State of Nevada and sued for

5  discrimination under the Americans with Disabilities Act and sought injunctive relief ordering her

6  employer to alter its employment policies.  *Id.* at 1035.  The court concluded that the plaintiff

7  lacked standing because she had failed to satisfy the doctrine's redressability requirement.  *Id.*

8  Observing that the plaintiff was "no longer an employee of the Department," and that there was

9  "no indication in the complaint that [she] has any interest in returning to work for the State or the

10  Department," the court concluded that "she would not stand to benefit from an injunction

11  requiring the . . . policies she requests at her former place of work."  *Id.* at 1037.  Without an

12  allegation of a continuing employment relationship, a complaint does not adequately allege that a

13  plaintiff is "subject to the activity sought to be enjoined."  *Zanze v. Snelling Servs., LLC*, 412 F.

14  App'x 994, 997 (9th Cir. 2011) (dismissing former employee's claims for declaratory judgment

15  and injunctive relief against previous employer) (citing *Seven Words LLC v. Network Solutions*,

16  260 F.3d 1089, 1098-99 (9th Cir. 2001)).  *See also Drake v. Morgan Stanley & Co.*, 2010 WL

17  2175819, at *6 (C.D. Cal. Apr. 30, 2010) ("[i]n the case of an employment action, a former

18  employee lacks standing to sue for declaratory or injunctive relief because he may realize no

19  benefit upon the successful prosecution of his claim."); *Guthrey v. Cal. Dep't of Corr. & Rehab.*,

20  2011 WL 1259835, at *2 (E.D. Cal. Mar. 30, 2011) ("As Plaintiff is no longer working for the

21  CDCR, he has no standing to seek injunctive relief tailored to benefit current employees.").

22         So too here.  Plaintiffs are no longer employees of the Defendants they previously worked

23  for—or any other Defendants.  (Compl. ¶¶ 16-20.)  Nothing in the Complaint suggests that any of

24  the Plaintiffs have any interest in returning to work at the Defendants they previously worked for

25  or any of the other Defendant companies.  Accordingly, Plaintiffs stand to gain nothing from the

26  injunction and judicial declaration they seek.  As far as the pleadings indicate, these Plaintiffs,

27  who "currently ha[ve] no contractual relationship with Defendants and therefore [are] not

28  personally threatened by their conduct," lack standing to pursue injunctive relief or declaratory

DEFENDANTS' NOTICE AND JOINT MOTION
TO DISMISS CONSOL. AM. COMPL.
NO. 11-CV-2509-LHK

1   relief.  *Hangarter v. Provident Life & Accident Ins. Co.*, 373 F.3d 998, 1021-22 (9th Cir. 2004).

2          It makes no difference that Plaintiffs are suing on behalf of a putative class and not just as

3   individuals.  Again, the Ninth Circuit has settled this issue.  "Unless the named plaintiffs are

4   themselves entitled to seek injunctive relief, they may not represent a class seeking that relief.

5   Any injury unnamed members of this proposed class may have suffered is simply irrelevant to the

6   question whether the named plaintiffs are entitled to the injunctive relief they seek."  *Hodgers-*

7   *Durgin v. de la Vina*, 199 F.3d 1037, 1045 (9th Cir. 1999).  Neither does it matter that Plaintiffs'

8   Cartwright Act, section 16600, and section 17200 claims arise under California state law.  "In

9   federal court, Article III standing requirements are equally applicable to state law claims."

10  *Jadwin v. Cnty. of Kern*, 2009 WL 2424565, at *6 n.2 (E.D. Cal. Aug. 6, 2009); *see also*

11  *Hangarter*, 373 F.3d at 1022 (reversing district court ruling that plaintiff had standing to pursue

12  injunctive relief under state law).

13         The fact that Plaintiffs have suffered no injury that would be redressed by the declaration

14  and injunction they seek is reinforced by the fact that another federal court has already entered,

15  and has retained jurisdiction to supervise, consent decrees granting Plaintiffs the relief they seek

16  in this case.  All Defendants entered into stipulated proposed judgments with DOJ, pursuant to

17  which, subject to enumerated exceptions, they are "enjoined from attempting to enter into,

18  entering into, maintaining or enforcing any agreement with any other person to in any way refrain

19  from, requesting that any person in any way refrain from, or pressuring any person in any way to

20  refrain from soliciting, cold calling, recruiting, or otherwise competing for employees of the other

21  person."  (Judgments § IV; *see also* Compl. ¶ 115.)  This is the exact conduct Plaintiffs describe

22  in their Complaint and ask this Court to prohibit.

23         Accordingly, any grant of injunctive relief in this case would be moot as duplicative of the

24  final judgments.  *Cf. Caro v. Procter & Gamble Co.*, 18 Cal. App. 4th 644, 660 (1993) (affirming

25  denial of class certification for UCL claims where defendant had already complied with an FDA

26  consent decree addressing the alleged misconduct, rendering plaintiff's "prayer for injunction . . .

27  effectively moot"); *Thompson v. Procter & Gamble Co.*, 1982 WL 114, at *2 (N.D. Cal. Dec. 8,

28  1982) (granting summary judgment for defendant on plaintiff's claim for injunctive relief since it

DEFENDANTS' NOTICE AND JOINT MOTION
TO DISMISS CONSOL. AM. COMPL.
NO. 11-CV-2509-LHK

1  was "now moot" given that the defendant had removed the allegedly defective product from the

2  market "and ha[d] entered a consent agreement with the FDA"). And there is no actual "case or

3  controversy" to support a declaratory judgment claim. *Ctr. for Sci. in Pub. Interest v. Bayer*

4  *Corp.*, 2010 WL 1223232, at *4 (N.D. Cal. Mar. 25, 2010). With the injunction in place in the

5  DOJ consent decrees, Plaintiffs are under no present threat that Defendants will resume their

6  alleged bilateral agreements or cause Plaintiffs any injury. There is no ongoing alleged behavior

7  by any of the Defendants for this Court to condemn or restrain.[12]

8                              **CONCLUSION**

9          For all of the above reasons, Plaintiffs' Consolidated Amended Complaint should be

10  dismissed with prejudice pursuant to Federal Rules of Civil Procedure 12(b)(6) and 12(b)(1).

11  Dated: October 13, 2011                O'MELVENY & MYERS LLP

12                                         By: /s/ Michael F. Tubach
                                               Michael F. Tubach

13                                         GEORGE A. RILEY (Bar No. 118304)
                                           griley@omm.com
14                                         MICHAEL F. TUBACH (Bar No. 145955)
                                           mtubach@omm.com
15                                         LISA CHEN (Bar No. 23468)
                                           lisachen@omm.com
16                                         CHRISTINA J. BROWN (Bar No. 242130)
                                           cjbrown@omm.com
17                                         O'MELVENY & MYERS LLP
                                           Two Embarcadero Center, 28th Floor
18                                         San Francisco, CA 94111-3823
                                           Telephone:    (415) 984-8700
19                                         Facsimile:    (415) 984-8701

                                           *Attorneys for Defendant Apple Inc.*

---

[12] Principles of judicial comity also counsel in favor of dismissing Plaintiffs' claims for injunctive and declaratory relief. "The federal courts long have recognized that the principle of comity requires federal district courts—courts of coordinate jurisdiction and equal rank—to exercise care to avoid interference with each other's affairs." *W. Gulf Mar. Ass'n v. ILA Deep Sea Local 24*, 751 F.2d 721, 729 (5th Cir. 1985). Specifically, "[a] court may . . . in its discretion dismiss a declaratory judgment or injunctive suit if the same issue is pending in litigation elsewhere." *Abbott Labs. v. Gardner*, 387 U.S. 136, 155 (1967), *overruled on other grounds*, *Califano v. Sanders*, 430 U.S. 99 (1977). Thus, "[w]hen an injunction sought in one federal proceeding would interfere with another federal proceeding, considerations of comity require more than the usual measure of restraint, and such injunctions should be granted only in the most unusual cases." *Bergh v. State of Wash.*, 535 F.2d 505, 507 (9th Cir. 1976). In this case, the District Court for the District of Columbia has already resolved separate litigation concerning the same issues alleged here. That court has entered injunctions prohibiting the same actions Plaintiffs ask this Court to enjoin, and has retained jurisdiction to enforce its orders. A declaration or injunction by this Court could conflict with the other actions or otherwise interfere with its administration and oversight of the cases.

By: /s/ Donn P. Pickett

DONN P. PICKETT (Bar No. 72257)
donn.pickett@bingham.com
FRANK M. HINMAN (Bar No. 157402)
frank.hinman@bingham.com
ZACHARY J. ALINDER (Bar No. 209009)
zachary.alinder@bingham.com
BINGHAM MCCUTCHEN LLP
Three Embarcadero Center
San Francisco, CA  94111-4067
Telephone:  415.393.2000
Facsimile:  415.393.2286

*Attorneys for Intel Corp.*

By: /s/ Lee H. Rubin

EDWARD D. JOHNSON (Bar No. 189475)
wjohnson@mayerbrown.com
LEE H. RUBIN (Bar No. 141331)
lrubin@mayerbrown.com
MAYER BROWN LLP
Two Palo Alto Square, Suite 300
Palo Alto, CA  94306-2112
Telephone:  (650) 331-2000
Facsimile  (650) 331-2060

KRISTEN A. ROWSE (Bar No. 235294)
krowse@mayerbrown.com
MAYER BROWN LLP
350 South Grand Avenue, 25th Floor
Los Angeles, CA  90071-1503
Telephone:      (213) 229-9500
Facsimile:       (213) 625-0248

*Attorneys for Defendant Google Inc.*

By: /s/ Daniel Purcell

JOHN W. KEKER (Bar No. 49092)
jkeker@kvn.com
DANIEL PURCELL (Bar No. 191424)
dpurcell@kvn.com
EUGENE M. PAIGE (Bar No. 202849)
epaige@kvn.com
PAULA L. BLIZZARD (Bar No. 207920)
pblizzard@kvn.com
KEKER & VAN NEST LLP
633 Battery Street
San Francisco, CA  94111-1704
Telephone:  (415) 391-5400
Facsimile:  (415) 397-7188

*Attorneys for Defendant Lucasfilm Ltd.*

DEFENDANTS' NOTICE AND JOINT MOTION
TO DISMISS CONSOL. AM. COMPL.
NO. 11-CV-2509-LHK

1                                  By:  /s/ David C. Kiernan

ROBERT A. MITTELSTAEDT (Bar No. 60359)
ramittelstaedt@jonesday.com
CRAIG A. WALDMAN (Bar No. 229943)
cwaldman@jonesday.com
DAVID C. KIERNAN (Bar No. 215335)
dkiernan@jonesday.com
JONES DAY
555 California Street, 26th Floor
San Francisco, CA 94104
Telephone: (415) 626-3939
Facsimile: (415) 875-5700

*Attorneys for Defendant Adobe Systems, Inc.*

By:  /s/ Robert A. Mittelstaedt

ROBERT A. MITTELSTAEDT (Bar No. 60359)
ramittelstaedt@JonesDay.com
CRAIG E. STEWART (Bar No. 129530)
cestewart@JonesDay.com
JONES DAY
555 California Street, 26th Floor
San Francisco, CA 94104
Telephone:      (415) 626-3939
Facsimile:      (415) 875-5700

CATHERINE T. BRODERICK (Bar No. 251231)
cbroderick@jonesday.com
JONES DAY
1755 Embarcadero Road
Palo Alto, CA  94303
Telephone:      (650) 739-3939
Facsimile:      (650) 739-3900

*Attorneys for Defendant Intuit Inc.*

By:  /s/ Emily Johnson Henn

ROBERT T. HASLAM (Bar No. 71134)
rhaslam@cov.com
EMILY JOHNSON HENN (Bar No. 269482)
ehenn@cov.com
COVINGTON & BURLING LLP
333 Twin Dolphin Dr., Suite 700
Redwood Shores, CA  94065
Telephone:      (650) 632-4700
Facsimile:      (650) 632-4800

DEBORAH A. GARZA (*pro hac vice*)
dgarza@cov.com
JONATHAN HERCZEG (*pro hac vice*)
jherczeg@cov.com
COVINGTON & BURLING LLP
1201 Pennsylvania Avenue NW
Washington, DC 20004
Telephone:      (202) 662-6000
Facsimile:      (202) 662-6291

*Attorneys for Defendant Pixar*

DEFENDANTS' NOTICE AND JOINT MOTION
TO DISMISS CONSOL. AM. COMPL.
NO. 11-CV-2509-LHK

1

## ATTESTATION OF CONCURRENCE IN FILING

2

Pursuant to General Order No. 45, Section X(B) regarding signatures, I, Michael F.

3 Tubach, hereby attest that concurrence in the filing of this Defendants' Notice of Motion, Joint

4 Motion to Dismiss the Consolidated Amended Complaint, and Memorandum of Points and

5 Authorities has been obtained from Defendants Intel Corp., Google Inc., Lucasfilm Ltd., Adobe

6 Systems Inc., Intuit Inc., and Pixar.

7

Dated:   October 13, 2011          O'MELVENY & MYERS LLP

8

9

By: _/s/ Michael F. Tubach_____
Michael F. Tubach

10

*Attorneys for Defendant Apple Inc.*

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANTS' NOTICE AND JOINT MOTION
TO DISMISS CONSOL. AM. COMPL.
NO. 11-CV-2509-LHK