**EXHIBIT A**

Joseph R. Saveri (State Bar No. 130064)
Eric B. Fastiff (State Bar No. 182260)
Brendan P. Glackin (State Bar No. 199643)
Dean M. Harvey (State Bar No. 250298)
Anne B. Shaver (State Bar No. 255928)
Katherine M. Lehe (State Bar No. 273472)
LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Telephone: (415) 956-1000
Facsimile: (415) 956-1008

*Interim Lead Counsel for Plaintiffs and the Proposed Class*

[Additional counsel listed on signature page]

RECEIVED
OCT 0 4 2011
MAYER BROWN LLP

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| IN RE: HIGH-TECH EMPLOYEE ANTITRUST LITIGATION | Master Docket No. 11-CV-2509-LHK |
| THIS DOCUMENT RELATES TO: | **PLAINTIFFS' FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS** |
| ALL ACTIONS | |

Pursuant to Federal Rules of Civil Procedure 26 and 34, Plaintiffs hereby request that Defendants separately respond to the following requests for production of documents ("Requests"), and produce the documents specified herein at a location agreed upon by counsel within thirty (30) days.

## I.   DEFINITIONS

Throughout these discovery requests, including the Definitions, the words used in the masculine gender include the feminine, and the words used in the singular include the plural. Wherever the word "or" appears herein, the meaning intended is the logical inclusive "or," i.e., "and/or."

The following Definitions apply to these Requests:

1.   "Agreement" means any oral or written contract, arrangement or understanding, whether formal or informal, between two or more persons, together with all modifications and amendments thereto.

2.   "All" should be construed to include the collective as well as the singular, and means "each," "any," and "every."

3.   "Antitrust regulatory authority" means any governmental antitrust regulatory or investigative entity, whether domestic or foreign, including but not limited to the United States Department of Justice, United States Federal Trade Commission, the California Attorney General, or any grand jury investigation.

4.   "Cold-calling" and "cold-call" means communicating directly in any manner (including, without limitation, orally, in writing, telephonically, or electronically) with another company's employee who has not otherwise applied for a job.

5.   "Co-Conspirators" include: Adobe Systems Inc., Apple Inc., Google Inc., Intel Corp., Intuit Inc., Lucasfilm Inc., Pixar, and DOES 1-200 as defined in the Consolidated Amended Complaint.

6.   "Communication" means oral or written communications of any kind, including without limitation, electronic communications, e-mails, facsimiles, telephone communications, correspondence, exchanges of written or recorded information, or face-to-face meetings.

7.   "Document" includes, without limitation, the original (or identical duplicate when the original is not available) and all non-identical copies (whether non-identical because of notes made on copies or attached comments, annotations, marks, transmission notation, or highlighting of any kind) and drafts of all writings, whether handwritten, typed, printed or otherwise produced, and includes, without limitation, letters, correspondence, memoranda, legal pleadings, notes, reports, agreements, calendars, diaries, travel or expense records, summaries, records, messages or logs of telephone calls, conversations or interviews, telegrams, instant messages, text messages (SMS or other), mailgrams, facsimile transmissions (including cover sheets and confirmations), electronic mail, minutes or records of meeting, compilations, notebooks, laboratory notebooks, work papers, books, pamphlets, brochures, circulars, manuals, instructions, sales, advertising or

1  promotional literature or materials, ledgers, graphs, charts, blue prints, drawings, sketches,

2  photographs, film and sound reproductions, tape recordings, or any other tangible materials on

3  which there is any recording or writing of any sort.  The term also includes the file, folder tabs,

4  and/or containers and labels appended to, or associated with, any physical storage device

5  associated with each original and/or copy of all documents requested herein.

6       8.     Electronically Stored Information ("ESI") includes, without limitation, the

7  following:

8            a.     activity listings of electronic mail receipts and/or transmittals;

9            b.     output resulting from the use of any software program, including without

10  limitation word processing documents, spreadsheets, database files, charts, graphs and outlines,

11  electronic mail, AOL Instant Messenger (or similar program) or bulletin board programs,

12  operating systems, source code, PRF files, PRC files, batch files, ASCII files, and all

13  miscellaneous media on which they reside and regardless of whether such electronic data exist in

14  an active file, deleted file, or file fragment;

15            c.     any and all items stored on computer memories, hard disks, floppy disks,

16  CD-ROM, magnetic tape, microfiche, or on any other vehicle for digital data storage and/or

17  transmittal, including without limitation a personal digital assistant, such as an iPhone, Palm

18  Pilot, Blackberry, Treo or other device.

19       9.     "Employee" means, without limitation, any current or former officer, director,

20  executive, manager, secretary, staff member, messenger, agent or other person who is or was

21  employed by a Defendant or Co-Conspirator in a salaried, non-retail capacity.

22       10.     "Including" is used to illustrate a Request with particular types of documents

23  requested, and should not be construed as limiting the Request in any way.

24       11.     "Meeting" means, without limitation, any assembly, encounter, or

25  contemporaneous presence (whether in person or via any electronic computer-assisted, digital,

26  analog, or telephonic method of communication) of two or more persons for any purpose,

27  whether planned, arranged, scheduled or not.

28

12.   "Or" should be construed to require the broadest possible response, and should be read as "and/or."

13.   "Person" includes without limitation any natural person, corporation, partnership, government entity, and any other form of legal or business entity.

14.   "Relating to," "referring to," "regarding," or "with respect to" mean without limitation discussing, describing, reflecting, dealing with, pertaining to, analyzing, evaluating, estimating, constituting, concerning, containing, mentioning, studying, surveying, projecting, assessing, recording, summarizing, criticizing, reporting, commenting or otherwise involving, in whole or in part.

15.   "Subsidiary," "affiliate," and "joint venture" refer to any entity or person in which you have any financial or ownership interest.

16.   "SWOT" means analyses regarding Strengths, Weaknesses, Opportunities, and Threats.

17.   "You," "your," or "your company" means its predecessors, successors, subsidiaries, departments, divisions, affiliates, and/or agents (including, without limitation, any third-party recruiting, hiring, or headhunting firm), together with all present and former directors, officers, employees, agents, representatives, or any persons acting or purporting to act on behalf of you.

## II.   **INSTRUCTIONS**

1.   You are directed to make available for inspection and copying all of the documents requested herein at the offices of Lieff, Cabraser, Heimann & Bernstein, LLP, 275 Battery Street, 29th Floor, San Francisco, CA 94111-3339, within thirty (30) days after service of these requests.

2.   Unless otherwise noted in the body of a request, the relevant time period of these document requests is January 1, 2001 through the present (the "relevant time period" or "relevant period"). These document requests seek all responsive documents created or generated during the relevant time period, as well as responsive documents created or generated outside the relevant time period, but which contain information concerning the relevant time period.

3.      In producing documents, you are to furnish all documents or things in your possession, custody or control, regardless of whether such documents are possessed directly by you or your employees, agents, parent companies, subsidiaries, affiliates, investigators or by your attorneys or their employees, agents or investigators.

4.      All documents shall be produced in the same order as they are kept or maintained by you in the ordinary course of your business.  All documents, other than electronically stored information, shall be produced in the file folder, envelope or other container in which the documents are kept or maintained.  If for any reason the container cannot be produced, you should produce copies of all labels or other identifying marks which may be present on the container.

5.      If a document was prepared in several copies, or if additional copies were thereafter made, and if any such copies were not identical or are no longer identical by reason of subsequent notation or modification of any kind whatsoever, including, without limitation, handwritten notations on the front or back of the document, all such non-identical copies shall be produced.

6.      Documents shall be produced in such fashion as to identify the department, branch or office in whose possession they were located and, where applicable, the natural person in whose possession they were found and the business address of each document's custodian(s).

7.      If a document once existed and subsequently has been lost, destroyed or is otherwise missing, you should provide sufficient information to identify the document and state, in writing, the details, including whether the document:

        a.      is lost or missing;

        b.      has been destroyed and, if so, by whom and at whose request;

        c.      has been transferred or delivered, voluntarily or involuntarily, to another person or entity and at whose request; or

        d.      has been otherwise disposed of.

8.      In each instance in which a document once existed and subsequently is lost, missing, destroyed, or otherwise disposed of, explain the circumstances surrounding the disposition of the document, including, but not limited to:

      a.      the identity of the person or entity who last possessed the document;

      b.      the date or approximate date of the document's disposition; and

      c.      the identity of all persons who have or had knowledge of the document's contents.

9.      If any document responsive to any of these requests is privileged, and the document or any portion of the document requested is withheld based on a claim of privilege, provide a statement of the claim of privilege and all facts relied upon in support of that claim, including the following information:

      a.      the reason for withholding the document;

      b.      the date of such communication;

      c.      the medium of such communication;

      d.      the general subject matter of such communication (such description shall not be considered a waiver of your claimed privilege);

      e.      the identity of any document that was the subject of such communication and the present location of any such document;

      f.      the identity of the persons involved in such communication;

      g.      the identity of any document which records, refers, or relates to such communication and present location of any such document; and

      h.      the number or numbers of these requests for production of documents to which such information is responsive.

10.      Documents attached to one another should not be separated.  Each document requested should be produced in its entirety and without deletion, redaction or excisions, except as qualified by Instruction 8 above, regardless of whether you consider the entire document or only part of it to be relevant or responsive to these document requests.  If you have redacted any portion of a document, stamp the word "REDACTED" beside the redacted information on each

1  page of the document which you have redacted.  Any redactions to documents produced should

2  be identified in accordance with Instruction 9 above.

3        11.    All documents produced in paper form should be numbered sequentially, with a

4  unique number on each page, and with a prefix identifying the party producing the document.

5        12.    All documents produced in electronic form should comply with plaintiffs' ESI

6  Production Specification, attached hereto as Exhibit A.

7  **III.    DOCUMENT REQUESTS**

8        1.    All documents, including correspondence, that were provided to, seized by, or

9  received from, any antitrust regulatory authority in connection with *United States v. Adobe*

10  *Systems, Inc., et al.*, Case No. 10-cv-01629-RBW (D.D.C.) and/or *United States v. Lucasfilm*

11  *LTD., et al.*, Case No. 10-cv-02220-RBW (D.D.C.).

12        2.    All documents, including correspondence, that were provided to, seized by, or

13  received from, any antitrust regulatory authority in connection with cold-calling or any other

14  recruiting practice, or any communications or agreements relating to your recruiting practices.

15        3.    All documents, including correspondence, that were provided to, seized by, or

16  received from, any antitrust regulatory authority in connection with how you determine the

17  compensation of your employees, or any communications or agreements relating to how you

18  determine the compensation of your employees.

19        4.    All documents, including correspondence, that were provided to, seized by, or

20  received from, any antitrust regulatory authority in connection with how you determine the terms

21  of an offer you made, might have made, or might make to any potential employee regarding

22  potential employment with you, or any communications or agreements relating to how you

23  determine the terms of an offer you made, might have made, or might make to any potential

24  employee regarding potential employment with you.

25        5.    All documents, including correspondence, that were provided to, seized by, or

26  received from, any antitrust regulatory authority in connection with how you determine the terms

27  of an offer you made, might have made, or might make to any employee to retain that employee,

28

1  or any communications or agreements relating to how you determine the terms of an offer you

2  made, might have made, or might make to any employee to retain that employee.

3        6.     All documents, including all civil investigative demands, subpoenas, requests for

4  documents, drafts of stipulated final judgments, or other proposed filings, attorney notes, and

5  summaries of witness interviews and proffers (whether or not provided to any antitrust regulatory

6  authority), and any other communications that you have received from or sent to any antitrust

7  regulatory authority, regarding the topics described in Requests 1 through 5, above, including all

8  correspondence with any antitrust regulatory authority discussing, reflecting, or referring to any

9  limitations placed upon the scope of your responses to such demands, subpoenas, or requests.

10        7.     All position papers and prepared remarks (including any drafts of such papers or

11  remarks) given, submitted or presented or intended to be given to any antitrust regulatory

12  authority, and all transcripts of testimony given to any antitrust regulatory authority in connection

13  with or in response to any investigation regarding the topics described in Requests 1 through 5,

14  above, and all transcripts of proceedings relating to any investigation by any antitrust regulatory

15  authority regarding the topics described in Requests 1 through 5, above.

16        8.     All indices and lists that catalogue or describe the documents responsive to

17  Requests 1 through 5, above, including privilege logs.

18        9.     All documents regarding any understanding, agreement, commitment, contract, or

19  proposal between or among you and any Co-Conspirator relating to:

20            a.     cold-calling or any other employee recruiting method;

21            b.     notification to a Co-Conspirator upon making an offer of employment to a

22  Co-Conspirator's employee;

23            c.     restrictions on the manner, timing, or content of the terms of an

24  employment offer, or counteroffer, you made, or could have made, to potential or current

25  employees;

26            d.     limiting competition for labor in any way;

27            e.     restricting employee compensation in any way; or

28

1        f.        enforcement, monitoring, or implementation of any of the above

2  understandings, agreements, commitments, contracts, or proposals.

3        10.        For each of your employees who attended any meetings, or who had any

4  communications, with any employee of any Co-Conspirator relating to any topic described in

5  Request 9, above, produce:

6            a.        the personal and company copy of all diaries, calendars, pocket calendars,

7  personal digital assistants, appointment books, and appointment notes, both electronic and non-

8  electronic;

9            b.        the personal and company copy of all trip and travel logs, records, and

10 supporting documents;

11           c.        the personal and company copy of all telephone number logs, directories,

12 notebooks, card files (such as Rolodex cards or any electronic functional equivalent) and

13 memoranda;

14           d.        all telephone bills, statements, records and supporting documents; and

15           e.        personnel files you created or maintained.

16       11.        All agendas, minutes, notes, or memoranda of any meeting of the Board of

17 Directors or any committee thereof relating to any topic described in Request 9.

18       12.        All communications between Steven P. Jobs and Edward T. Colligan regarding

19 any topic described in Request 9, and any documents regarding same.

20       13.        All documents relating to the termination, retirement, discipline, demotion,

21 discharge, suspension, severance, or change in position of any director, officer or employee with

22 responsibility or input in recruiting, hiring, or retaining of salaried employees, including without

23 limitation the terms of any cooperation, indemnification, or severance agreement between you (or

24 any direct and indirect subsidiary) and each such employee.

25       14.        All business plans, analyses, reports, studies, memoranda, budgets, forecasts, slide

26 presentations, strategic plans, SWOT analyses, or costs or profit projections referring or relating,

27 in whole or in part, to identifying potential employees, recruiting, hiring, or retaining employees.

28

15.    All documents that analyze, evaluate, or summarize market conditions regarding employees, including without limitation, documents regarding competition, market shares, competitive position, employee turnover, compensation levels, and hiring capacity.

16.    All documents that refer or relate to the compensation, hiring, or recruiting of employees by any company other than you.

17.    All documents comparing types or levels of employees with each other, or showing the interchangeability or similarity of salaried employees across different types, levels, or employers.

18.    All documents concerning any analysis, summary, or description of factors affecting: employee productivity, employee morale and/or satisfaction, turnover, employee loss, whether an employee accepts an offer from a rival employer, or whether a potential employee accepts an employment offer.

19.    All documents concerning any analysis, summary, or description of rival employers' recruiting, retention, or compensation practices.

20.    All documents concerning any method, formula, policy, practice, or calculation you, or any Co-Conspirator, used for determining compensation of employees.

21.    All agendas, minutes, notes, or memoranda of any meeting of the Board of Directors or any committee thereof relating to how you determine your employees' compensation.

22.    Documents sufficient to show your participation in, or control of, subsidiaries, affiliates, or joint ventures engaged in the hiring, recruiting, or retention of your employees.

23.    Documents sufficient to identify, for all individuals you employed during the Class Period as defined in the Consolidated Amended Complaint, for each year, or fraction thereof:

    a.    the total number of such employees;

    b.    the location(s) at which each employee worked;

    c.    the total compensation of each employee by form of compensation, including, without limitation, salary, bonuses, and stock options; and

    d.    the title(s) and responsibilities of each employee.

24.     All documents regarding the total amount you spent to compensate your employees (including all forms of compensation, such as stock options), for each quarter of the Relevant Period.

25.     All documents, data, or analyses regarding information you obtained in connection with employee recruiting, hiring, or exit-interviewing, including, without limitation:

      a.     Your employees' previous employers (or educational institution, where applicable); and

      b.     if the employee left to work for another employer, the identity of that employer, and the reasons why the employee accepted an offer to work with that employer.

26.     All documents comparing the effectiveness of different recruiting techniques.

27.     All documents concerning the effects of rival employers' recruiting techniques on your employees' willingness to continue employment with you.

28.     All documents concerning how your employees negotiate pay increases.

29.     All documents regarding the factors you consider in deciding whether to increase employee pay.

30.     All documents concerning your employees' knowledge, or access to, compensation practices of rival employers, including, without limitation: the effect of such knowledge or access on your employees' ability to increase their compensation, and the effect of such knowledge or access on your ability to retain your employees.

31.     All documents regarding how you categorize your employees, including, without limitation, by: type, title, skill, job family, seniority, department, or compensation level.

32.     All documents concerning your monitoring, analysis, or description of your employees' compensation, including, without limitation:

      a.     compensation relationships among employees within the same employment category (e.g., among junior software engineers);

      b.     compensation relationships among employees across different employment categories (e.g., among junior software engineers relative to senior software engineers);

      c.     compensation relationships among employees across different employers (e.g., junior software engineers you employ relative to junior software engineers another Co-Conspirator employees); and

      d.     compensation relationships among employees across different locations (e.g., junior software engineers at one of your office locations relative to junior software engineers at another of your office locations).

33.    All documents concerning your employees' perceptions of compensation relationships, both internal and external.

34.    All documents regarding how you determine, update, monitor, or set baseline compensation levels (as opposed to negotiated compensation levels).

35.    All documents regarding employee salary ranges for particular categories of employees.

36.    All documents regarding the relationship between baseline compensation and negotiated compensation.

37.    All documents comparing potential employees who are actively looking for a different employer versus potential employees who are not actively looking for a different employer.

38.    All documents regarding the costs to you of losing an employee to a rival employer.

39.    All documents regarding the costs to a rival employer of you recruiting and/or hiring an employee from that rival.

40.    All documents regarding competition between or among you and any Co-Conspirator(s) for employees.

41.    Documents sufficient to identify all third parties you have used for:

      a.     identifying potential employees to recruit;

      b.     recruiting employees;

      c.     compensating employees;

      d.     hiring employees;

1          e.       surveying salaries and other terms of employment, for your own employees

2    or employees of others (e.g., Radford surveys);

3          f.       job evaluation studies; and

4          g.       otherwise analyzing any topic responsive to any of these document

5    requests.

6        42.    All documents regarding communications and/or meetings with any of the third

7    parties described in document request 41, including contracts.

8        43.    Documents sufficient to identify all individuals responsible for retaining or

9    managing the third parties described in document request 41.

10       44.    All documents you provided to, or received from, any of the third parties described

11   in document request 41 regarding any of the topics described in document request 41.

12       45.    All documents showing your organizational structure regarding all individuals

13   involved in the hiring, recruiting, retaining, and compensating of your employees, including,

14   without limitation, organization charts, telephone or email directories, personnel bios, and

15   individual job descriptions.

16       46.    Organization charts sufficient to identify:

17          a.       individuals who act as custodians of business records and other information

18   for you, such as all persons responsible for ESI management, organization, retention,

19   preservation, and destruction of ESI;

20          b.       all of your internal information services or information technology

21   departments; and

22          c.       all individuals who are responsible for creating back-ups for archiving

23   email messages.

24       47.    Documents that reflect or describe your policies, procedures, and guidelines for

25   your company's use or retention of email, instant messages, or other forms of electronic

26   communications.

27

28

48.     Documents that reflect or describe your document retention policies and any litigation hold implemented in connection with this litigation, including the date that any litigation hold was implemented.

49.     All documents referring to the concealment, destruction or spoliation of any documents that are responsive to any of these document requests.

50.     All documents relating to your corporate policies or practices regarding compliance with United States or California antitrust laws.

51.     Documents sufficient to show how to operate or run any of the programs maintained on the computer-related equipment or system utilized by you to maintain data responsive to any of these requests, including whether any such data can be produced within an Excel spreadsheet.

52.     Documents sufficient to explain the meaning of the data responsive to any of these requests, including all record layouts, data dictionaries, field codes, and other codes or descriptions.

53.     All documents provided to, transmitted to, received from, or concerning the named Plaintiffs in this action.

54.     All documents you intend to use or rely upon at trial.

Dated:  October 3, 2011                    LIEFF CABRASER HEIMANN & BERNSTEIN, LLP

By: _____
       Joseph R. Saveri

Joseph R. Saveri (State Bar No. 130064)
Eric B. Fastiff (State Bar No. 182260)
Brendan P. Glackin (State Bar No. 199643)
Dean M. Harvey (State Bar No. 250298)
Anne B. Shaver (State Bar No. 255928)
Katherine M. Lehe (State Bar No. 273472)
275 Battery Street, 29th Floor
San Francisco, CA  94111-3339
Telephone:  (415) 956-1000
Facsimile:  (415) 956-1008

*Interim Lead Counsel for Plaintiffs and the Proposed Class*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Eric L. Cramer
Shanon J. Carson
Sarah R. Schalman-Bergen
BERGER & MONTAGUE, P.C.
1622 Locust Street
Philadelphia, PA 19103
Telephone: (800) 424-6690
Facsimile: (215) 875-4604

Linda P. Nussbaum
John D. Radice
GRANT & EISENHOFER P.A.
485 Lexington Avenue, 29th Floor
New York, NY 10017
Telephone: (646) 722-8500
Facsimile: (646) 722-8501

*Counsel for Plaintiffs and the Proposed Class*

# EXHIBIT A

# ESI PRODUCTION SPECIFICATION

1) General Specifications

   a) Produce all documents in native format with corresponding Tiff files (and extracted text and metadata), unless otherwise specified below.

   b) Metadata will include fields described below and contain a complete list of common data fields.

   c) Image cross reference files will function with Opticon viewer.

   d) Media volume names will have the producing party's internal tracking ID.

   e) Provide extracted text, as applicable (.txt) and OCR for documents where no extracted text exists.

2) Output Files

   a) Extracted Text / OCR Index Files: Control List (.lst)

   b) Image Index Files: Opticon (.opt)

   c) Metadata Files: Concordance (.dat)

3) Output Folder Structure

   a) Producing party will manually create the top level directory prior to production.

   b) Tiff and text files for a single document will always be in the same folder.

| Directory Structure | Standard with Padding |
|---|---|
| ___<VFID-Media#>.dat,<VFID-Media#>.lfp | ___XXX01-01.dat, XXX01-01.lfp |
| <VFID-Media#> | XXX01-01 |
| &#124;   &#124;   Folder# (01) | &#124;   &#124;   01 |
| &#124;   &#124;   BatesNumber.tif | &#124;   &#124;   EXAMPLE00000001.tif |
| &#124;   &#124;   BatesNumber.tif | &#124;   &#124;   EXAMPLE00000001.txt |
| &#124;   &#124;   BatesNumber.tif | &#124;   &#124;   EXAMPLE00000002.tif |
| &#124;   &#124;   Folder# (02) | &#124;   &#124;   02 |
| &#124;   &#124;   BatesNumber.tif | &#124;   &#124;   EXAMPLE00000501.tif |
| &#124;   &#124;   BatesNumber.tif | &#124;   &#124;   EXAMPLE00000501.txt |
| &#124;   &#124;   BatesNumber.tif | &#124;   &#124;   EXAMPLE00000502.tif |

4) General Configuration

   a) Documents will not be broken across multiple Tiff or Media folders.

   b) For sets 3.5 GB or smaller, provide on DVD.

   c) For sets larger than 3.5 GB, provide on Hard Drive.

   d) Produce Tiff files in single page format at 300 DPI.

5) Text Files

   a) Produce full text on a per-document basis.

   b) Name Text Files according to the corresponding first Tiff (BegDoc#) of the document.

   c) Do not truncate.

6) Native Files

   a) Produce Excel files in native format, accompanied by Tiff placeholder including Bates number (range), file name, media description, and confidentiality denotation.

      i) If native format of an Excel file is not available, produce Tiff version with the following specifications:

         (1) Unhide columns, rows and sheets (if possible; please denote)

         (2) Expand groupings/outlines

         (3) Print each sheet across (left to right), then down

         (4) Landscape print orientation

         (5) Remove blank pages as possible

   b) Produce PowerPoint files in native format, accompanied by Tiff placeholder including Bates number (range), file name, media description, and confidentiality denotation.

      i) If native format of a PowerPoint file is not available, produce Tiff version with the following specifications:

         (1) Unhide all elements, remove protections

         (2) Covert color to black-and-white and utilize MS PowerPoint print feature

(3) Turn off background so all text is visible

(4) If slide contains speaker note, slides will be presented in "notes view"

(5) If slide contains no speaker note, print slides to Tiff image format in slide show view, one slide per page.

c) Produce Database and CSV files in native format, accompanied by Tiff placeholder including Bates number (range), file name, media description, and confidentiality denotation.

    i) Each Access database data set will be accompanied by database schema (using MS Access Database Documentor feature to include all tables, queries, reports, macros with full features).

    ii) Produce the original .MDB file for each Access database.

    iii) Provide Data Library.

    iv) Produce data schema for ALL databases (applicable for all RDBMS systems).

    v) May use load file for comma delimited contents of CSV or data queries or analysis tools.

d) Produce Media Files in native format, accompanied by Tiff placeholder including Bates number (range), file name, media description, and confidentiality denotation.

    i) Production will include a chart setting forth the certain metadata and MD5 hash signature of each native media file.

    ii) Define metadata with the following data elements identified under Concordance Metadata load file (.dat) section below, where applicable.

7) Family Range Configuration

a) Stand alone files will be Top-Level PST and have a blank Parent ID.

b) The following file types will have the following format entry types:

    i) Stand alone files: either "File" or "Email," as applicable.

    ii) Attachments to emails: "Email Attachment"

8) Family Range Definitions

a) Top level PST files will not include any "children" documents -- consider these files as standalone files.

b) Standalone files will not have a Family Range or Child List.

c) All other files and emails will have a Family Range when the file or email has a Parent or Child (Children).

d) Family range will start with the first page of the top most Parent and go until the last Child's last page.

e) Documents with no Family Range will have their own document range in the Family Range fields.

f) Files and Emails whose direct parent is a Top Level PST will not have a Parent Bates.

9) Family Range Values Examples

| Description: | Top Level PST File | Top most Email | Attachment to Doc 2 | Second Attachment to Doc 2 |
|---|---|---|---|---|
| File Name | Doc No. 1 | Doc No. 2 | Doc No. 3 | Doc No. 4 |
| Prefix | [Blank] | XYZ | XYZ | XYZ |
| Begin Bates | [Blank] | XYZ1 | XYZ2 | XYZ16 |
| End Bates | [Blank] | XYZ1 | XYZ15 | XYZ20 |
| Family Range | [Blank] | XYZ1-XYZ20 | XYZ1-XYZ20 | XYZ2-XYZ20 |
| Parent Bates | [Blank] | [Blank] | XYZ1 | XYZ1 |
| Parent Name | [Blank] | Doc No. 1 | Doc No. 2 | Doc No. 2 |
| Child List | [Blank] | Doc. No. 2-3 | [Blank] | [Blank] |

10) Use Concordance Metadata Load Files (.dat)

a) Load Files will contain one line per document.

b) Load Files will have the field names as the as first row of data.

c) Concordance Metadata Load Files will include the following:

| Field Name | Description | (Comments) | Field Type |
|---|---|---|---|
| DocID | Beginning unique identification number for document | | Limited Text |
| EndProd | Ending unique identification number for document | | Limited Text |

| Field Name | Description | (Comments) | Field Type |
|---|---|---|---|
| StartBates (BegDoc#) | StartBates Production number | | Limited Text |
| EndBates (EndDoc#) | Endbates Production number | Include prefix and padding | Limited Text |
| BegAttach | Beginning unique identification number for any attachment or range of attachments | Include prefix and padding | Limited Text |
| EndAttach | Ending unique identification number for any attachment or range of attachments | Include prefix and padding | Limited Text |
| AttachRange | Beginning and ending unique identification number for any attachment or range of attachments. | | Limited Text |
| ParentID | Production Parent StartBates | Include prefix and padding | Limited Text |
| ParentName | Document's parent's FileName or Subject | | Full Text |
| ChildList | Child document list of Filenames and/or Subjects | Include multivalue | Full Text |
| Source | Custodian or Source of document | | Full Text |
| MediaSource | Document Type | | Limited Text |
| PageCount | Number of Pages | | Limited Text |
| DateSent | Date Email was Sent (MMDDYYYY) | | Date |
| TimeLastModified | Last modified time (HH:MM) of electronic file | | Time |
| DateLastModified | Last modified date (MMDDYYYY) of electronic file. | | Date |
| Sort Date | For Child Files (eg email attachments), document date of parent file | | Date |

| Field Name | Description | (Comments) | Field Type |
|---|---|---|---|
| TimeCreated | Time (HH:MM) Created | | Time |
| DateCreated | Date (MMDDYYYY) Created | | Date |
| DateLastAccessed | Date (MMDDYYYY) File Last Accessed | | Date |
| TimeSent | Time Message Sent | | Date |
| Hash Value | MD5 Hash Value (Specify if SHA-1 used) | | Limited Text |
| FileName | File name of the file (or parent PST for email) | Will be blank for email | Full Text |
| FileSize | File size (as bytes) | | Limited Text |
| Doc Ext | The document extension of the document | Will be blank if 0 | Limited Text |
| Subject | Subject line of Email | Will be blank for Files | Full Text |
| From | Sender | Will be blank for Files | Full Text |
| To | Recipient [Delimited list] | Include multivalue Will be blank for Files | Full Text |
| Cc | Cc [Delimited list] | Include multivalue Will be blank for Files | Full Text |
| Bcc | Bcc [Delimited list] | Include multivalue Will be blank for Files | Full Text |
| Author | Information contained in the author field, if any | | Full Text |
| DocTitle | Information contained in the title field, if any | | Full Text |
| Confidentiality | Confidentiality designation of the document | Include multivalue | Full Text |

| Field Name | Description | (Comments) | Field Type |
|---|---|---|---|
| SourcePath | Data's source path information; where file was stored on custodian's hard drive or network resource | Will be blank for email | Full Text |
| EmailFolder | Email folder path (sample: Inbox\active) [Blank for files] | | Full Text |

11) Metadata Load File Delimiters

    a) If Field Encapsulators or Separators are found in the metadata they will be replaced with another character or space.

| Type | Character/Format | Replace with | Notes |
|---|---|---|---|
| Field Encapsulate | Ctrl Character "þ" (Decimal 254) | Space " "(Decimal 032) | |
| Field Separator | Ctrl Character "□"(Decimal 020) | Space " "(Decimal 032) | |
| Multi-value Delimiter | Semi Colon "; " (Decimal 59 space) | N/A | |
| New Line Indicator | Registered Symbol "®" (Decimal 174) | N/A | Text line separator, used in TextInfo only. |
| Dates are stored | MMDDYYYY | N/A | |

12) OCR Index Files (.lst)

    a) Follow example above for format and delimiters.

    b) **Bold** is constant, *Italics* are variable, and pay attention to the use of commas and semicolons.

    c) Each file will contain one line per Tiff.

    d) Format: *BatesPage*,\*TextPath*\*TextFileName*.**txt**

    e) Example:  ABC00100000,\02501-01\01\ABC00100000.txt

    f) Definition of Components:

| BatesPage | BatesPage value from metadata file. |
|---|---|
| Folder# | The number of the folder containing the Tiff. |
| TextFileName | Text files will be named with a bates number.txt (Bates Padding/Prefix Configuration Section). |
| NewDocIndicator | Determine New Document Indicator Values. |
|  | Y – if the Tiff is the first page of any document. |
|  | BLANK – for all other pages. |
| PageCount | Number of pages in the document. |

13) Opticon Image Index File

    a) Follow example above for format and delimiters.

        i) Format:

        *BatesPage,VolumeName,***TiffPath\****TiffFileName*.**tif**,*NewDocIndicator,,,PageCount*

        ii) Example:

        xxx00100000,VolName002,yyy01-1\1\xxx00100000.tif,Y,,,4

        iii) Definition of Components:

| BatesPage | BatesPage value from metadata file. |
|---|---|
| VolumeName | The volume name of the Media containing the tiffs. |
| TiffPath | VFID#-Media#\Folder# |
| VFID# | The number of the Virtual Folder that the Tiff originated from |
| Media# | The number of the Media containing the Tiff |
| Folder# | The number of the folder containing the Tiff |
| TiffFileName | Tiffs will be named with a bates number.tif (Bates Padding/Prefix Configuration Section) |
| NewDocIndicator | Determine New Document Indicator Values |
|  | Y – if the Tiff is the first page of any document. |
|  | BLANK – for all other pages. |
| PageCount | Number of pages in the document |