# Exhibit D

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br>U.S. Department of Justice<br>Antitrust Division<br>450 Fifth Street, N.W., Suite 7100<br>Washington, DC 20530,<br><br>     *Plaintiff,*<br><br>  v.<br><br>LUCASFILM LTD.<br>1110 Gorgas Avenue<br>San Francisco, CA 94129,<br><br>     *Defendant.* | Case: 1:10-cv-02220<br>Assigned To : Walton, Reggie B.<br>Assign. Date : 12/21/2010<br>Description: Antitrust |

## COMPLAINT

The United States of America, acting under the direction of the Attorney General of the United States, brings this civil antitrust action to obtain equitable relief against Defendant Lucasfilm Ltd. ("Lucasfilm"), alleging as follows:

### NATURE OF THE ACTION

1. This action challenges under Section 1 of the Sherman Act an agreement between Lucasfilm and Pixar that restrained competition between them for highly skilled digital animators.

2. Lucasfilm and Pixar compete for highly skilled digital animators and solicit employees at other digital animation studios to fill employment openings. Lucasfilm and Pixar entered into an agreement not to cold call, not to make counteroffers under certain circumstances, and to provide notification when making employment offers to each other's employees. This

agreement reduced Lucasfilm's and Pixar's ability to compete for employees and disrupted the normal price-setting mechanisms that apply in the labor setting. This agreement is facially anticompetitive. It eliminated significant forms of competition to attract digital animators and, overall, substantially diminished competition to the detriment of the affected employees who likely were deprived of competitively important information and access to better job opportunities.

3. Lucasfilm and Pixar's agreement is a restraint of trade that is per se unlawful under Section 1 of the Sherman Act, 15 U.S.C. § 1. The United States seeks an order prohibiting such an agreement.

## JURISDICTION AND VENUE

4. Lucasfilm hires specialized digital animators throughout the United States, and sells completed digital animation films throughout the United States. Such activities, including the recruitment and hiring activities at issue in this Complaint, are in the flow of and substantially affect interstate commerce. The Court has subject matter jurisdiction under Section 4 of the Sherman Act, 15 U.S.C. § 4, and under 28 U.S.C. §§ 1331 and 1337 to prevent and restrain Lucasfilm from violating Section 1 of the Sherman Act, 15 U.S.C. § 1.

5. Venue is proper in this judicial district under Section 12 of the Clayton Act, 15 U.S.C. § 22, and under 28 U.S.C. § 1391(b)(2), (c). Lucasfilm transacts or has transacted substantial business here.

## DEFENDANT

6. Lucasfilm is a California corporation with its principal place of business in San Francisco, California.

2

## TRADE AND COMMERCE

12. Digital animation labor is characterized by expertise and specialization. Lucasfilm and Pixar compete for digital animators on the basis of salaries, benefits, and career opportunities. In recent years, talented digital animation employees have been in high demand.

13. Although Lucasfilm and Pixar employ a variety of recruiting techniques, cold calling another studio's employees is an effective method of competing for digital animators. Cold calling involves communicating directly in any manner (including orally, in writing, telephonically, or electronically) with another firm's employee who has not otherwise applied for a job opening. Lucasfilm and Pixar frequently recruit employees by cold calling because other studios' employees have the specialized skills necessary for the vacant position and may be unresponsive to other methods of recruiting.

14. Lucasfilm and Pixar also aggressively bid against other digital animation studios for the services of talented employees and prospective employees. When the labor market is functioning without illegal competitive restraints, savvy employees can use these studios' aggressive tactics to extract multiple rounds of bidding, thus increasing their eventual salaries.

15. In a well-functioning labor market, employers compete to attract the most valuable talent for their needs. Lucasfilm's and Pixar's behavior both reduced their ability to compete for employees and disrupted the normal price-setting mechanisms that apply in the labor setting. Lucasfilm's and Pixar's agreement not to cold call, not to make counter offers under certain circumstances, and to provide notification when making employment offers is facially anticompetitive. It eliminated significant forms of competition to attract digital animators and, overall, substantially diminished competition to the detriment of the affected employees who

likely were deprived of competitively important information and access to better job opportunities.

## THE UNLAWFUL AGREEMENT

16.     Beginning no later than January 2005, Lucasfilm and Pixar agreed to a protocol regarding the recruitment of each other's employees. The agreement included three requirements: (1) that the firms not cold call each other's employees; (2) that the firms notify each other when making an offer to an employee of the other firm; and (3) that the firm making an offer to the other firm's employee not counteroffer above its initial offer.

17.     This agreement was not ancillary to any legitimate collaboration between Lucasfilm and Pixar. Senior executives at Lucasfilm and Pixar reached this express agreement through direct and explicit communications. The executives actively managed and enforced the agreement through direct communications.

18.     The agreement between Lucasfilm and Pixar covered all digital animators and other employees and was not limited by geography, job function, product group, or time period. Moreover, employees did not agree to this restriction.

19.     In furtherance of this agreement, Pixar drafted the terms of the agreement with Lucasfilm and communicated those written terms to Lucasfilm. Both firms internally communicated the agreement to management and select employees with hiring or recruiting responsibilities.

20.     Lucasfilm and Pixar, through their senior executives, policed potential breaches of the agreement. For example, twice in 2007, Pixar complained to Lucasfilm about recruiting efforts Lucasfilm had made. Complaints about breaches of the agreement led the parties to

4

modify their conduct going forward to conform to the agreement.

## VIOLATION ALLEGED

### (Violation of Section 1 of the Sherman Act)

21.   The United States hereby incorporates paragraphs 1 through 20.

22.   Lucasfilm is a direct competitor to Pixar for digital animators and other employees covered by the agreement at issue here. Lucasfilm's behavior both reduced its ability to compete for employees and disrupted the normal price-setting mechanisms that apply in the labor setting. This agreement is facially anticompetitive because it eliminated significant forms of competition to attract digital animators and, overall, substantially diminished competition to the detriment of the affected employees who likely were deprived of competitively important information and access to better job opportunities.

23.   Lucasfilm's agreement constitutes an unreasonable restraint of trade that is per se unlawful under Section 1 of the Sherman Act, 15 U.S.C. § 1.

## REQUESTED RELIEF

The United States requests that the Court:

(A)   adjudge and decree that Lucasfilm's agreement not to compete constitutes an illegal restraint of interstate trade and commerce in violation of Section 1 of the Sherman Act;

(B)   enjoin and restrain Lucasfilm from enforcing or adhering to existing agreements that unreasonably restrict competition for employees;

(C)   permanently enjoin and restrain Lucasfilm from establishing any similar agreement unreasonably restricting competition for employees except as

5

     prescribed by the Court;

(D) award the United States such other relief as the Court may deem just and proper to redress and prevent recurrence of the alleged violations and to dissipate the anticompetitive effects of the illegal agreements entered into by Lucasfilm; and

(E) award the United States the costs of this action.

Dated this 21st day of December 2010.

Respectfully submitted,

FOR PLAINTIFF UNITED STATES:

*[signature]*
Christine A. Varney
Assistant Attorney General
D.C. Bar #411654

*[signature]*
Molly S. Boast
Deputy Assistant Attorney General

*[signature]* /PAB
Katherine S. Forrest
Deputy Assistant Attorney General

*[signature]*
Patricia A. Brink
Director of Civil Enforcement

*[signature]*
James J. Tierney, Chief
Networks and Technology Section
D.C. Bar #434610

*[signature]*
Scott A. Scheele, Assistant Chief
Networks and Technology Section
D.C. Bar #429061

*[signature]*
Adam T. Severt
Ryan S. Struve (D.C. Bar #495406)
Jessica N. Butler-Arkow (D.C. Bar #430022)
H. Joseph Pinto III
Anthony D. Scicchitano
Trial Attorneys

U.S. Department of Justice
Antitrust Division
Networks and Technology Section
450 Fifth Street, N.W.
Suite 7100
Washington, DC 20530
Telephone: (202) 307-6200
Facsimile: (202) 616-8544
adam.severt@usdoj.gov

7

## CERTIFICATE OF SERVICE

I, Adam Severt, hereby certify that on December 21, 2010, I caused a copy of the Complaint to be served on Defendant Lucasfilm by mailing the document via email to the duly authorized legal representatives of the defendant, as follows:

FOR DEFENDANT LUCASFILM, LTD.
Claudia R. Higgins, Esq.
Kaye Scholer LLP
901 Fifteenth Street, NW
Washington, D.C. 20005

Adam T. Severt
Trial Attorney
Networks & Technology Section
U.S. Department of Justice
Antitrust Division
450 Fifth Street, N.W.
Suite 7100
Washington, D.C. 20530
Telephone: (202) 307-6200
Fax: (202) 616-8544
Email: adam.severt@usdoj.gov