1          UNITED STATES DISTRICT COURT

2         NORTHERN DISTRICT OF CALIFORNIA

3             SAN JOSE DIVISION

4

5

   IN RE: HIGH-TECH EMPLOYEE   )  C-11-02509 LHK
6  ANTITRUST LITIGATION,       )
                               )  SAN JOSE, CALIFORNIA
7                              )
                               )  OCTOBER 26, 2011
8  _____ )
                               )  PAGES 1-95
9  THIS DOCUMENT RELATES TO:   )
   ALL ACTIONS                 )
10 _____ )

11

12         TRANSCRIPT OF PROCEEDINGS
        BEFORE THE HONORABLE LUCY H. KOH
13        UNITED STATES DISTRICT JUDGE

14

15 A P P E A R A N C E S:

16 FOR THE PLAINTIFFS: LIEFF, CABRASER,
                      HEIMANN & BERNSTEIN
17                    BY:  JOSEPH R. SAVERI,
                           BRENDAN P. GLACKIN,
18                         KATHERINE M. LEHE, AND
                           DEAN M. HARVEY
19                    275 BATTERY STREET, 30TH FLOOR
                      SAN FRANCISCO, CALIFORNIA  94111
20

21

22      APPEARANCES CONTINUED ON NEXT PAGE

23

24 OFFICIAL COURT REPORTER: LEE-ANNE SHORTRIDGE, CSR, CRR
                      CERTIFICATE NUMBER 9595
25

                                                        1

1

2    APPEARANCES (CONTINUED)

3

4    FOR DEFENDANT           O'MELVENY & MYERS
     APPLE:                  BY:  GEORGE A. RILEY,
5                                 MICHAEL F. TUBACH, AND
                                  CHRISTINA BROWN
6                            TWO EMBARCADERO CENTER
                             28TH FLOOR
7                            SAN FRANCISCO, CALIFORNIA  94111

8    FOR DEFENDANT           KEKER & VAN NEST
     LUCASFILM:              BY:  JOHN W. KEKER AND
9                                 DANIEL PURCELL
                             633 BATTERY STREET
10                           SAN FRANCISCO, CALIFORNIA  94111

11   FOR DEFENDANT           MAYER BROWN
     GOOGLE:                 BY:  LEE H. RUBIN
12                           TWO PALO ALTO SQUARE, SUITE 300
                             PALO ALTO, CALIFORNIA  94306

13

14   FOR DEFENDANTS          JONES DAY
     ADOBE AND INTUIT:       BY:  CRAIG E. STEWART
15                           555 CALIFORNIA STREET
                             26TH FLOOR
16                           SAN FRANCISCO, CALIFORNIA  94104

17                           BY:  CATHERINE T. BRODERICK
                             1755 EMBARCADERO ROAD
18                           PALO ALTO, CALIFORNIA  94303

19   FOR DEFENDANT           BINGHAM MCCUTCHEN
     INTEL:                  BY:  FRANK M. HINMAN
20                           1117 S. CALIFORNIA AVENUE
                             PALO ALTO, CALIFORNIA  94304

21                           BY:  ZACHARY J. ALINDER
22                           THREE EMBARCADERO CENTER
                             SAN FRANCISCO, CALIFORNIA  94111

23
     FOR DEFENDANT           COVINGTON & BURLING
24   PIXAR:                  BY:  EMILY J. HENN
                             333 TWIN DOLPHIN DRIVE, SUITE 700
25                           REDWOOD SHORES, CALIFORNIA  94065

```
 1    SAN JOSE, CALIFORNIA              OCTOBER 26, 2011

 2                    P R O C E E D I N G S

 3              (WHEREUPON, COURT CONVENED AND THE

 4    FOLLOWING PROCEEDINGS WERE HELD:)

 5

 6

 7              THE CLERK:  CALLING CASE NUMBER

 8    C-11-02509 LHK, IN RE: HIGH-TECH EMPLOYEE ANTITRUST

 9    LITIGATION.

10              STATE YOUR APPEARANCES, PLEASE.

11              MR. SAVERI:  GOOD AFTERNOON, YOUR HONOR.

12    JOSEPH SAVERI, LIEFF, CABRASER, HEIMANN & BERNSTEIN

13    ON BEHALF OF PLAINTIFFS.

14              THE COURT:  GOOD AFTERNOON.

15              MR. GLACKIN:  BRENDAN GLACKIN OF LIEFF,

16    CABRASER.

17              MS. LEHE:  KATHERINE LEHE FROM LIEFF,

18    CABRASER ON BEHALF OF PLAINTIFFS.

19              MR. HARVEY:  DEAN HARVEY OF LIEFF,

20    CABRASER ON BEHALF OF PLAINTIFFS.

21              THE COURT:  OKAY.  GOOD AFTERNOON.

22              MR. O'RILEY:  GOOD AFTERNOON, YOUR HONOR.

23    GEORGE RILEY OF O'MELVENY & MYERS.  I'M JOINED BY

24    MY COLLEAGUE, MICHAEL TUBACH, AND WE REPRESENT

25    APPLE.
```

1          THE COURT:  OKAY.  GOOD AFTERNOON.

2          MR. KEKER:  GOOD AFTERNOON, YOUR HONOR.

3    JOHN KEKER AND DAN PURCELL OF KEKER & VAN NEST.  WE

4    REPRESENT LUCASFILM.

5          THE COURT:  OKAY.  GOOD AFTERNOON.

6          MR. RUBIN:  GOOD AFTERNOON, YOUR HONOR.

7    LEE RUBIN FROM MAYER BROWN ON BEHALF OF GOOGLE.

8          THE COURT:  OKAY.  GOOD AFTERNOON.

9          MR. STEWART:  GOOD AFTERNOON, YOUR HONOR.

10   CRAIG STEWART OF JONES DAY HERE ON BEHALF OF ADOBE

11   AND INTUIT.

12         THE COURT:  YOU SAID CRAIG STEWART?

13         MR. STEWART:  CORRECT.

14         THE COURT:  OKAY.

15         MR. HINMAN:  GOOD AFTERNOON, YOUR HONOR.

16   FRANK HINMAN AND ZACH ALINDER WITH BINGHAM

17   MCCUTCHEN REPRESENTING INTEL.

18         THE COURT:  OKAY.  GOOD AFTERNOON.

19         ACTUALLY, LET ME ASK MR. STEWART, WHO IS

20   WITH YOU FROM JONES DAY ON BEHALF OF ADOBE?

21         MR. STEWART:  WELL, CATE BRODERICK IS

22   HERE WITH ME TODAY, AND WE ARE JOINTLY REPRESENTING

23   BOTH ADOBE AND INTUIT.

24         THE COURT:  OH, I SEE.  OKAY.  GOT IT.

25         MS. HENN:  GOOD AFTERNOON, YOUR HONOR.

4

1    EMILY HENN BEHIND OF COVINGTON & BURLING

2    REPRESENTING DEFENDANT PIXAR.

3            THE COURT:  OKAY.  GOOD AFTERNOON.

4            I THINK THAT'S IT.  THAT IS THE CAST OF

5    THOUSANDS; CORRECT?  OKAY.

6            ALL RIGHT.  SO I'M GOING TO GO AHEAD AND

7    DECIDE TODAY BOTH THE MOTION TO STAY AND THE

8    DISCOVERY DISPUTE.

9            I'D LIKE TO VACATE THE DECEMBER 8TH

10   HEARING DATE ON THE MOTION FOR TEMPORARY STAY.  I

11   THINK IT'S ALL THE SAME ISSUE, DISCOVERY DISPUTE

12   NUMBER 1, AS WELL AS THE MOTION FOR STAY.

13           DO YOU WANT TO BE HEARD ON THAT?

14           AND I CAN TELL YOU WHAT MY TENTATIVE

15   THOUGHTS ARE IF THAT WOULD HELP.

16           MR. RUBIN:  SURE, THAT WOULD, YOUR HONOR.

17           THE COURT:  OKAY.  I GUESS I DON'T AGREE

18   WITH THE DEFENDANTS THAT TWOMBLY SAYS THAT A STAY

19   OF DISCOVERY IS REQUIRED IN AN ANTITRUST CASE AS IT

20   WOULD BE IF IT WERE UNDER THE PSLRA.

21           AND EVEN THOUGH IT WAS A MOTION TO

22   DISMISS AND DIDN'T REALLY SET A STANDARD FOR STAYS

23   AND ANTITRUST CASES, IT SEEMS LIKE THE TWO THINGS

24   YOU'RE SUPPOSED TO LOOK AT ARE WHETHER A CLAIM, A

25   SURVIVABLE CLAIM TO A MOTION TO DISMISS IS LIKELY

1    TO BE ALLEGED, AND WHAT THE BURDEN AND INTRUSION

2    WOULD BE ON THE DEFENDANTS.

3              AND UNLIKE IN TWOMBLY, IN THIS CASE YOU

4    ALREADY HAVE A D.O.J. INVESTIGATION, YOU ALREADY

5    HAVE A D.O.J. INVESTIGATION FINDING OF PER SE

6    UNLAWFUL AGREEMENTS UNDER SECTION 1 OF THE SHERMAN

7    ACT, AND SO IN MY MIND, THAT SORT OF MINIMIZES THE

8    BURDEN SINCE YOU'VE ALREADY GONE THROUGH THE

9    DOCUMENT REVIEW PROCESS, THE PRIVILEGE LOG

10   CREATION, THE BATES STAMPING, THE PRODUCTION.  I

11   ASSUME YOU HAVE SOMETHING THAT WOULD BE READY TO

12   GO, JUST PHOTOCOPIED AND READY TO GO.

13             I MEAN, YOU CAN CORRECT ME IF I'M WRONG.

14             AND WHILE I AGREE WITH YOU JUST FROM WHAT

15   LITTLE I'VE SEEN SO FAR -- AND I UNDERSTAND THERE

16   HASN'T BEEN FULL BRIEFING -- THE OVERALL SORT OF

17   MOTHER LOAD CONSPIRACY SEEMS PRETTY THIN.

18             BUT ON THE OTHER HAND, THERE'S A LOT OF

19   AIR THERE IN THIS CASE, MAYBE BECAUSE THEY DO HAVE

20   THE BENEFIT OF THE D.O.J. COMPLAINT.

21             AND I'VE TAKEN A LOOK AT THE FINAL

22   JUDGMENTS IN THE DISTRICT OF COLUMBIA, THE D.C.

23   CASE.

24             SO I -- MY CURRENT THINKING IS TO DENY A

25   TEMPORARY STAY, BUT TO LIMIT WHAT DISCOVERY I ALLOW

1    BEFORE -- THE HEARING IS SET FOR, WHAT,

2    JANUARY 26TH FOR THE MOTION TO DISMISS?  WHEN IS

3    THAT?

4              MR. RUBIN:  JANUARY 19TH?

5              THE COURT:  OKAY.  IT'S SET ON

6    JANUARY 19TH?

7              MR. RUBIN:  NO, NO.  I THINK THAT WAS AN

8    EARLIER DATE, YOUR HONOR.

9              MR. KEKER:  26TH, YOUR HONOR.

10             THE COURT:  26TH, YEAH.

11             MR. KEKER:  YOUR HONOR, CAN WE SIT DOWN?

12             THE COURT:  OH, PLEASE.  I CERTAINLY

13   DIDN'T MEAN TO REQUIRE ANYONE TO STAND UP.  AND

14   YOU'RE WELCOME TO SIT AT COUNSEL TABLE IF THAT'S

15   MORE COMFORTABLE FOR YOU AS WELL.

16             MR. RUBIN:  I WOULD LIKE TO ADDRESS A FEW

17   OF THE POINTS.

18             THE COURT:  ALL RIGHT.  SO LET ME TELL

19   YOU WHAT I WOULD ORDER.

20             MR. RUBIN:  OKAY.

21             THE COURT:  I AM -- I'VE ALSO TAKEN A

22   LOOK AT THE REQUESTS THAT THE PLAINTIFFS HAVE MADE,

23   WHICH I THINK ARE OVERBROAD, BUT I THINK THE ONES

24   THAT RELATE TO WHATEVER THE DEFENDANTS HAVE

25   PRODUCED TO THE DEPARTMENT OF JUSTICE SEEM LIKE

1     FAIR GAME AND SHOULD BE MINIMAL BURDEN SINCE YOU'VE

2     ALREADY HAD TO GO THROUGH THAT DOCUMENT REVIEW AND

3     DOCUMENT PRODUCTION PROCESS.

4              SO MY INCLINATION AT THIS POINT WOULD BE

5     TO ORDER YOU TO PRODUCE WHATEVER YOU PRODUCED TO

6     D.O.J.

7              ARE THERE ANY OTHER REGULATORY AGENCIES

8     INVOLVED OTHER THAN D.O.J. AND --

9              MR. SAVERI:  YOUR HONOR, JOSEPH SAVERI ON

10    BEHALF OF PLAINTIFFS.

11             AS FAR AS WE KNOW -- WE'VE ASKED THE

12    DEFENDANTS THIS QUESTION -- BUT AS FAR AS WE KNOW,

13    THE D.O.J. KIND OF PRODUCTION, INVESTIGATION IS THE

14    ONLY ONE WE'RE AWARE OF.

15             THE COURT:  ALL RIGHT.

16             MR. SAVERI:  SO THIS KIND OF CORPUS OF

17    DOCUMENTS THAT'S THE D.O.J. PRODUCTION -- WE'RE

18    USING THAT KIND OF SHORTHAND TO TALK ABOUT IT -- IS

19    THE ONLY SET OF DOCUMENTS THAT HAVE BEEN TURNED

20    OVER TO A REGULATORY OR LAW ENFORCEMENT AGENCY THAT

21    WE'RE AWARE OF.

22             THE COURT:  UM-HUM.  WELL, I'M INCLINED

23    TO ORDER THAT PRODUCTION, BUT TO DENY ALL THE SORT

24    OF MORE OVERBROAD REQUESTS RELATING TO HIRING AND

25    RECRUITING AND THE OTHER REQUESTS UNTIL -- AND WE

1    CAN SORT OF WAIT AND SEE WHAT HAPPENS AT THE

2    JANUARY 26TH MOTION TO DISMISS TO DETERMINE AT THAT

3    POINT WHETHER NOTHING FURTHER BY WAY OF DISCOVERY

4    SHOULD BE PRODUCED UNTIL THE PLAINTIFFS CAN

5    ACTUALLY STATE A CLAIM THAT'S GOING TO SURVIVE A

6    MOTION TO DISMISS, OR AT THAT POINT OPEN THE

7    FLOODGATES, OR JUST WHATEVER, LEAVE THAT FOR A

8    LATER TIME.

9         BUT TO HAVE ONLY THE D.O.J. PRODUCTION

10   THROUGH AT LEAST JANUARY 26TH, AND I'LL HAVE A

11   BETTER IDEA ONCE THE MOTION TO DISMISS IS FULLY

12   BRIEFED WHERE WE GO AFTER JANUARY 26TH.

13        MR. RUBIN:  OKAY.

14        THE COURT:  SO THAT'S THE CURRENT

15   TENTATIVE.

16        GO AHEAD.

17        MR. RUBIN:  OKAY.  MAY I?

18        MR. SAVERI:  I'M PREPARED TO SUBMIT ON

19   THAT, YOUR HONOR.

20        THE COURT:  OKAY.

21        MR. RUBIN:  WELL, JUDGE KOH, THANK YOU

22   FOR SHARING YOUR INITIAL THOUGHTS.  I'D LIKE TO

23   TAKE A FEW MINUTES TO SEE IF I CAN TURN YOU AROUND

24   ON SOME OF YOUR THOUGHTS.

25        THE COURT:  OKAY.  GO AHEAD.

1           MR. RUBIN:  FIRST OF ALL, WE DO AGREE

2      WITH YOU THAT THE COMPLAINT AS TO THE OVERARCHING

3      CONSPIRACY IS THIN.  SO I DID WANT TO POINT OUT

4      THAT'S THE ONE THING THAT WE AGREE ON.

5           I DO THINK THAT'S SIGNIFICANT BECAUSE THE

6      GRAVAMEN OF OUR MOTION IS THAT WHILE IN ANOTHER

7      CASE, AT ANOTHER TIME, THERE COULD BE INDIVIDUAL

8      CLAIMS THAT ONE COULD MAKE AS TO A BILATERAL

9      AGREEMENT BETWEEN TWO COMPANIES, THIS CASE ACTUALLY

10     ALLEGES AN OVERARCHING CONSPIRACY, AND IT MUST

11     BECAUSE THE PLAINTIFF ESSENTIALLY ALLEGES DAMAGES

12     ACROSS THE ENTIRE INDUSTRY.

13          I MEAN, THE ESSENCE OF THEIR CLAIM IS

14     THAT DAMAGES -- IS THAT WAGES WERE SUPPRESSED AND

15     THESE COMPANIES SOMEHOW CREATED THIS ENVIRONMENT

16     WHERE PEOPLE WERE NOT BEING PAID WHAT THEY

17     OTHERWISE WOULD HAVE HAD THESE VERY LIMITED ALLEGED

18     NO COLD CALL ARRANGEMENTS BEEN MADE.

19          THE COURT:  UM-HUM.

20          MR. RUBIN:  SO TO THE EXTENT THE COURT IS

21     SKEPTICAL ABOUT THE -- ABOUT THE BREADTH OR THE

22     DEPTH OF THE ALLEGATIONS AS TO THE OVERARCHING

23     CONSPIRACY, I THINK THAT IS A PRETTY CLEAR

24     INDICATION THAT THIS COMPLAINT, AS CURRENTLY FRAMED

25     AND AS CURRENTLY CONSTRUCTED, COULD NOT SURVIVE

1    BECAUSE THAT IS THEIR CASE.

2            IN OTHER WORDS, VERY DIFFERENT FROM A

3    CASE -- IF THEY WERE TO BRING ONE AGAINST GOOGLE

4    AND, YOU KNOW, NAME YOUR OTHER COMPANY -- I

5    REPRESENT GOOGLE, SO I'M FREE TO SAY GOOGLE -- FOR

6    SOME KIND OF A BILATERAL ARRANGEMENT THAT SOMEHOW

7    HAD SOME IMPACT.  SO --

8            THE COURT:  I'M SORRY TO INTERRUPT YOU.

9            IS GOOGLE GOING TO BE THE LEAD ON THIS

10   CASE, AND WHY IS THAT?

11           MR. RUBIN:  GOOGLE IS JUST FORTUNATE

12   ENOUGH -- MAYER BROWN WAS JUST FORTUNATE ENOUGH TO

13   TAKE THE LEAD ON THE MOTION TO STAY.

14           THE COURT:  I SEE.

15           MR. RUBIN:  SO I DON'T THINK THAT WE'VE

16   ACTUALLY DESIGNATED OR ELECTED ANY PARTICULAR

17   COUNSEL TO BE LEAD.

18           THE COURT:  OKAY.

19           MR. RUBIN:  AND I THINK IT PROBABLY WILL

20   ROTATE AS ISSUES COME UP AND AS PARTICULAR LAW

21   FIRMS TAKE THE LEAD.

22           THE COURT:  OKAY.

23           MR. RUBIN:  BUT I DID WANT TO FOCUS ON

24   THAT BECAUSE I THINK THAT YOUR VIEWS, YOUR INITIAL

25   VIEWS -- AND OBVIOUSLY THEY HAVE NOT HAD AN

1    OPPORTUNITY TO OPPOSE THE MOTION TO DISMISS -- BUT

2    YOUR INITIAL VIEWS I DO THINK -- GOING BACK TO WHAT

3    YOU RAISED ABOUT TWOMBLY, I DO THINK IT'S

4    SIGNIFICANT BECAUSE TWOMBLY I DO THINK DOES STAND

5    FOR THE FUNDAMENTAL PROPOSITION THAT IN ANTITRUST

6    CASES, THE PLAUSIBILITY OF THE CONSPIRACY IS REALLY

7    SIGNIFICANT, AND THE COURT REALLY WOULD HAVE HAD NO

8    REASON TO RULE AS IT DID.

9         IT WAS A RULE 8 RULING ABOUT WHAT THE

10   PLEADING REQUIREMENTS ARE, AND SOME HAVE ARGUED

11   OVER TIME THAT TWOMBLY JUST CLARIFIED WHAT RULE 8

12   MEANT.

13        THE COURT:  UM-HUM.

14        MR. RUBIN:  AND OTHERS HAVE SAID, WELL,

15   IT WAS REALLY A NEW RULING.

16        BUT THE ESSENCE OF THE RULING IS THAT YOU

17   HAVE TO HAVE -- TO MEET THIS PLAUSIBILITY TEST

18   BECAUSE ANTITRUST CASES ARE SO COMPLEX AND ARE SO

19   CUMBERSOME.

20        AND I DO WANT TO TURN TO THE D.O.J.

21   ISSUE, BECAUSE I KNOW THAT'S THE FOREFRONT --

22        THE COURT:  YEAH, WHY DON'T YOU --

23        MR. RUBIN:  AND I'M PREPARED TO ADDRESS

24   IT.

25        THE COURT:  -- TALK ABOUT THE PER SE

1    SHERMAN ACT FINDING.

2              MR. RUBIN:  WELL, AGAIN, NONE OF THE

3    DEFENDANTS ACTUALLY ADMITTED TO ANY VIOLATION --

4              THE COURT:  I UNDERSTAND.

5              MR. RUBIN:  -- OF THE ANTITRUST LAWS.

6              THIS WAS A CONSENT DECREE, AND OF COURSE

7    THE TUNNEY ACT, THE STATUTE SPECIFICALLY SAYS

8    THERE'S NO PRIMA FACIE EFFECT FROM THOSE CONSENT

9    DECREES.

10             AND AS WE NOTED IN OUR MOTION TO DISMISS,

11   DEFENDANTS ARE SPECIFICALLY RESERVING THE RIGHT TO

12   ARGUE, WHICH WE WILL, I THINK QUITE VIGOROUSLY,

13   THAT THIS IS REALLY APPROPRIATELY A RULE OF REASON

14   CASE AS ALL THE FACTS PLAY OUT, THAT IT SHOULD NOT

15   BE JUDGED AS A PER SE CASE.

16             BUT WE'LL GET TO THAT IN DUE COURSE.

17             THE COURT:  OKAY.

18             MR. RUBIN:  BUT IN TERMS OF THE D.O.J.

19   PRODUCTION, I THINK THE COURT IS RIGHT THAT COURTS

20   DO CONSIDER BURDEN IN CONSIDERING WHETHER A MOTION

21   TO STAY OR A TEMPORARY STAY IS APPROPRIATE.

22             AND HERE THERE REALLY IS STILL A BURDEN,

23   AND LET ME TRY TO EXPLAIN IN A FEW MINUTES WHY.

24             THE COURT:  OKAY.

25             MR. RUBIN:  THE D.O.J. PRODUCTION WAS A

1    PRODUCTION THAT IS VERY DIFFERENT IN TIME, OR AT

2    LEAST SOMEWHAT DIFFERENT IN TIME SCOPE.

3          SO THE CIVIL INVESTIGATIVE DEMANDS THAT

4    THE DEFENDANTS RECEIVED ARE BROADER IN SCOPE

5    ACTUALLY EVEN THAN THE, THAN THE REQUESTS ON THEIR

6    FACE THAT HAVE BEEN SERVED BY THE PLAINTIFFS, AND

7    CERTAINLY MUCH BROADER THAN THE CLASS ALLEGATIONS

8    OF A CLASS PERIOD FROM JANUARY 2005 TO 2010.

9          SO IN THE FIRST INSTANCE, YOU HAVE

10   PORTIONS OF THE D.O.J. PRODUCTION THAT GO INTO

11   DOCUMENTS THAT ARE, ARE BROADER IN SCOPE.

12         THE COURT:  AND HOW ARE THEY BROADER IN

13   SCOPE?

14         MR. RUBIN:  WELL, I THINK, FOR EXAMPLE,

15   AGAIN SPEAKING FOR GOOGLE, AND I THINK THIS IS TRUE

16   FOR MOST COMPANIES, I THINK IT GOES BACK TO JANUARY

17   OF 2000, AND I BELIEVE THE CIVIL -- I BELIEVE THE

18   PLAINTIFFS' REQUEST GOES TO 2001.

19         AND ONE OF THE THINGS THAT WE WOULD

20   ARGUE, YOUR HONOR, IS THAT IT SHOULD, AT MOST, AT

21   MOST GO BACK A YEAR BEFORE THE CLASS.

22         I MEAN, IN MY EXPERIENCE IN ANTITRUST

23   LITIGATION, OFTENTIMES THE COURT WILL ALLOW

24   DISCOVERY PERHAPS SIX MONTHS, 12 MONTHS BEFORE THE

25   BEGINNING OF THE ALLEGED CONSPIRACY, BUT CERTAINLY

14

1    NOT BEFORE THAT.

2              SO THAT IS JUST THE FIRST OF MANY ISSUES

3    WHERE WE WOULD ACTUALLY TAKE ISSUE EVEN WITH THE

4    SCOPE OF THE D.O.J. PRODUCTION.

5              AND TO BACK UP, IT IS TRUE THAT --

6              THE COURT:  I'M SORRY TO INTERRUPT YOU,

7    BUT YOUR D.O.J. PRODUCTION WENT FROM JANUARY OF

8    2000 THROUGH WHAT DATE?

9              MR. RUBIN:  I BELIEVE THOSE -- THE CIVIL

10   INVESTIGATIVE DEMAND WAS SERVED IN THE SPRING OF

11   2009, SO TO THE EXTENT DOCUMENTS EXISTED AT THAT

12   TIME.

13             SO THERE IS NO PREDETERMINED RIGHT FOR A

14   PLAINTIFF WHO'S FOLLOWING ON A GOVERNMENT

15   ENFORCEMENT ACTION TO NECESSARILY BE ENTITLED TO

16   ALL THE DOCUMENTS THAT WERE PRODUCED BECAUSE, OF

17   COURSE, THE GOVERNMENT AGENCY MAY BE INVESTIGATING

18   AND LOOKING INTO A NUMBER OF THINGS.

19             THEY MAY HAVE A TIME SCOPE THAT'S VERY

20   DIFFERENT THAN WHAT IS ACTUALLY ALLEGED IN THE

21   COMPLAINT.

22             THEY MAY HAVE, AND IN FACT I BELIEVE --

23   IT'S CERTAINLY TRUE --

24             THE COURT:  CAN WE -- I'M SORRY TO

25   INTERRUPT YOU, BUT I'D LIKE TO BREAK THIS DOWN.

```
 1                    MR. RUBIN:  SURE.

 2                    THE COURT:  LET ME HEAR FROM MR. SAVERI.

 3                    WHY SHOULDN'T I LIMIT IT TO THE D.O.J.

 4       DOCUMENTS PRODUCED FROM -- WHAT DID YOU SAY? -- SIX

 5       MONTHS TO A YEAR BEFORE JUNE 2005?  SO 2004 --

 6                    MR. RUBIN:  THAT WOULD BE WHAT I WOULD

 7       PREFER, BUT THAT'S GENERALLY WHAT I --

 8                    THE COURT:  -- THROUGH 2009.

 9                    MR. SAVERI:  JUDGE, A COUPLE THINGS.

10                    SO I THINK THE -- FIRST OF ALL, THE --

11       THE DEPARTMENT OF JUSTICE -- WE DON'T KNOW WHAT THE

12       DEPARTMENT OF JUSTICE ACTUALLY ASKED FOR BECAUSE WE

13       HAVEN'T SEEN ANY OF THAT.

14                    BUT THE DEPARTMENT OF JUSTICE COULD HAVE

15       INITIALLY, AND LIKELY DID, ASK FOR A BROAD TIME

16       PERIOD.

17                    BUT WE DON'T KNOW, BECAUSE WE'RE NOT PART

18       OF THAT, ACTUALLY WHAT THE DEFENDANTS AGREED WITH

19       THE DEPARTMENT OF JUSTICE TO PRODUCE.

20                    SO I DON'T -- FIRST OF ALL, I DON'T

21       BELIEVE, AND THERE'S NOTHING IN THE RECORD THAT

22       SUGGESTS, THAT THE -- THAT OUR REQUESTS ARE

23       ANYTHING BUT MORE NARROW THAN WHAT THE DEPARTMENT

24       OF JUSTICE EVENTUALLY GOT FROM THE DEFENDANTS.

25                    IT'S ONE THING TO ASK FOR A BROAD
```

1    REQUEST.  THAT COULD HAVE BEEN SUBSTANTIALLY

2    NARROWED BY THE BACK AND FORTH BETWEEN THE

3    DEPARTMENT OF JUSTICE AND THESE COMPANIES.  WE

4    DON'T KNOW ANYTHING ABOUT THAT.

5              BUT EVEN ASSUMING THAT THE DEPARTMENT OF

6    JUSTICE PRODUCTION WAS MORE BROAD, ALL WE'VE HEARD

7    IS THAT IT MAY BE A LITTLE BIT MORE BROAD IN

8    TIMING.

9              MR. RUBIN:  WELL, I HAVEN'T FINISHED,

10   BUT --

11             MR. SAVERI:  EXCUSE ME.

12             AND THE -- IT IS CLEAR, I THINK, THAT THE

13   REQUESTS FROM THE DEPARTMENT OF JUSTICE ASKED FOR

14   DOCUMENTS THAT RELATE TO SOME OF THE VERY SPECIFIC

15   AGREEMENTS AND VIOLATIONS OF THE ANTITRUST LAWS

16   THAT ARE SPECIFICALLY ALLEGED IN OUR COMPLAINT.

17             SO -- AND -- SO ALSO, WITH RESPECT TO

18   BURDEN, IN SOME WAYS I THINK THE BURDEN ARGUMENT IS

19   NOW COMPLETELY INVERTED BECAUSE, IN FACT, IT WOULD

20   BE MORE BURDENSOME TO GO THROUGH THE DEPARTMENT OF

21   JUSTICE DOCUMENTS AND PULL THINGS OUT THAT MIGHT

22   PRECEDE AN ARBITRARY TIME LIMIT.  THAT'S ONE POINT.

23             SECOND, WE WOULD ARGUE THAT EVEN IF THERE

24   WERE SOME DOCUMENTS THAT ACTUALLY DID PRECEDE -- WE

25   TRIED TO BE NARROW IN OUR REQUESTS IN TIME.

1          EVEN IF THERE WERE SOME DOCUMENTS THAT

2     MIGHT HAVE BEEN CREATED BEFORE WHAT WE KNEW, WHAT

3     WE ALLEGED, IT SEEMS TO ME WHAT THAT MEANS IS THAT

4     THE CONSPIRACY THAT WE'VE ALLEGED IS, IS TOO NARROW

5     BECAUSE WE DON'T HAVE ALL THE FACTS.

6          IF THE FACTS IN DISCOVERY SHOW, FOR

7     EXAMPLE, THAT THE AGREEMENTS ACTUALLY STARTED MORE

8     EARLY, I MEAN, OF COURSE THOSE ARE -- THAT'S

9     INFORMATION THAT WE'RE ENTITLED TO KNOW.  YOU KNOW,

10    IF THE CONSPIRACY STARTED EARLIER, WE'RE ENTITLED

11    TO KNOW THAT.

12          SO FROM OUR PERSPECTIVE, THE DATE PERIOD

13    IS KIND OF AN ARBITRARY, KIND OF NOT VERY

14    SIGNIFICANT REASON FOR NOT PRODUCING THE DEPARTMENT

15    OF JUSTICE MATERIALS WHEN I THINK WE CAN AGREE THAT

16    THE DEPARTMENT OF JUSTICE MATERIALS ARE DIRECTLY

17    RELATED TO THE ALLEGATIONS IN THE COMPLAINT.

18          IT WILL SIGNIFICANTLY ADVANCE OUR CASE.

19    IT WILL ALLOW US TO FOCUS AND TAILOR SUBSEQUENT

20    DISCOVERY BY IDENTIFYING WITNESSES, SPECIFIC

21    PARTICIPANTS IN MEETINGS AND CONVERSATIONS.

22          IT WILL HELP US FOCUS WHAT'S GOING

23    FORWARD IN THE CASE.

24          THE COURT:  WELL, LET ME SHARE WHAT I

25    THINK IS SORT OF A BALANCING ISSUE.

1            I MEAN, IN GENERAL I WANT THE CASE TO

2    MOVE BECAUSE MOST LIKELY EVEN IF I GRANT A MOTION

3    TO DISMISS IN JANUARY, WE'RE IN THE NINTH CIRCUIT,

4    I WOULD GIVE LEAVE TO AMEND, AND THEN WE MIGHT BE

5    IN ANOTHER ROUND OF MOTION TO DISMISS SOMETIME IN

6    THE LATE SPRING.

7            THE FIRST CASE WAS FILED IN MAY OF 2011,

8    AND I DON'T WANT US TO HAVE A WHOLE 12 MONTHS GO BY

9    BEFORE DISCOVERY HAS STARTED.

10           SO THAT'S WHY I WANT SOME DISCOVERY TO

11   PROCEED.

12           ON THE OTHER HAND, IF YOU'RE GOING TO

13   HAUL IN ALL THESE COMPANIES AND MAKE THEM PAY ALL

14   OF THIS MONEY FOR THEIR DEFENSE, YOU SHOULD KNOW

15   WHAT YOUR ALLEGATIONS ARE AND NOT HAVE TO GET IT

16   OUT OF DISCOVERY.

17           I DON'T THINK IT'S FAIR, IF YOU CAN'T

18   STATE A CLAIM, TO FISH FOR ONE IN THE DISCOVERY.

19           SO --

20           MR. SAVERI:  AND YOUR HONOR --

21           THE COURT:  THERE'S A CONFLICTING SORT OF

22   BALANCING GOING ON HERE IN THAT I THINK IT'S NOT

23   PROPER IF YOU NEED THE DISCOVERY TO STATE A

24   CLAIM --

25           MR. SAVERI:  BUT THE --

1          MR. RUBIN:  MIGHT I SAY --

2          MR. SAVERI:  EXCUSE ME.

3          THE COURT:  YEAH.

4          MR. SAVERI:  JUST SO WE'RE CLEAR, I MEAN,

5     I'M NOT SAYING THAT WE NEED DISCOVERY TO FIGURE OUT

6     WHAT OUR CLAIM IS.

7          I MEAN, I THINK THAT WHEN YOU -- WHEN YOU

8     LOOK AT OUR COMPLAINT, IF YOU HAVEN'T ALREADY, AND

9     WE HAVE AN OPPORTUNITY TO TALK ABOUT THE ARGUMENTS

10    THAT THE DEFENDANTS RAISE, WE WILL SHOW YOU THAT

11    THAT 35-PAGE COMPLAINT IS MORE THAN SUFFICIENT TO

12    MEET THE STANDARDS OF RULE 12 AND RULE 8.

13         THE COURT:  BUT OTHER THAN --

14         MR. SAVERI:  BUT --

15         THE COURT:  BUT OTHER THAN PIXAR WITH

16    LUCASFILM, APPLE WITH GOOGLE, WHAT DO YOU HAVE THAT

17    SHOWS THAT THERE WAS AN OVERALL CONSPIRACY

18    THROUGHOUT ALL THESE INDUSTRIES NOT TO POACH EACH

19    OTHER'S --

20         MR. SAVERI:  YOUR HONOR, I MEAN, IT'S

21    CLEAR, BECAUSE OF THE WAY ANTITRUST CONSPIRACIES

22    WORK, THAT THE PLAINTIFFS THAT WERE AFFECTED BY

23    THESE AGREEMENTS WERE NOT INVITED TO THE MEETINGS

24    AND WERE NOT PART OF THE -- THEY WEREN'T DIRECT

25    WITNESSES TO THE CONSPIRACY.

1          WE HAVE EVIDENCE WHICH INCLUDES MATERIALS

2     THAT WERE -- THERE'S SOME MATERIALS IN THE POPULAR

3     PRESS.

4          WE'VE GOT THE FACT OF THE AGREEMENTS

5     THEMSELVES, WHICH -- I REALLY CAN'T TELL WHETHER

6     THE DEFENDANTS ARE GOING TO DEFEND THIS CASE SAYING

7     THAT THOSE AGREEMENTS THAT THEY -- THAT THE

8     GOVERNMENT FOUND OUT ABOUT AND THEY ACTUALLY

9     ENTERED CONSENT DECREES ON, I DON'T KNOW IF THIS

10    HAPPENED OR NOT, BUT I'VE GOT --

11          THE COURT:  DO YOU HAVE ALL THE

12    AGREEMENTS?

13          MR. SAVERI:  DO WE -- I DON'T -- WE HAVE

14    WHAT WE HAVE.

15          I MEAN, YOU KNOW, I THINK THAT IN OUR

16    COMPLAINT, WE HAVE A SPECIFIC -- WE HAVE AN

17    AGREEMENT ALLEGED, A VERY SPECIFIC AGREEMENT

18    ALLEGED BETWEEN EACH OF THE DEFENDANTS --

19          THE COURT:  UM-HUM.

20          MR. SAVERI:  -- ONE OR MORE OF THE

21    DEFENDANTS.

22          THERE MAY BE -- FRANKLY, ALL I WANT TO

23    SAY IS THAT THERE MAY BE OTHERS THAT DISCOVERY WILL

24    SHOW.

25          I MEAN, WE HAVEN'T SEEN ANY DOCUMENTS YET

1    AND THIS IS AN ANTITRUST CONSPIRACY CASE.

2            AND ONE OF THE THINGS THAT I THINK THE

3    DEPARTMENT OF JUSTICE PRODUCTION WILL DO IS HELP US

4    BEGIN TO UNDERSTAND THAT.

5            NOW --

6            THE COURT:  HOW DID YOU PICK JANUARY 1 OF

7    2005 AS THE STARTING POINT FOR YOUR CLASS?  WHAT'S

8    THE SIGNIFICANCE OF THAT DATE?

9            MR. SAVERI:  IT'S -- IT'S FOUR YEARS

10   BEFORE JANUARY 1, 2009, AND IT WAS -- IT -- WE

11   DON'T HAVE ANY -- WE DO NOT HAVE A DOCUMENT WHICH

12   SHOWS EXACTLY WHEN THE FIRST CONTACT HAPPENED, WHEN

13   THE CONSPIRACY WAS INITIATED, WHEN THE FIRST PHONE

14   CALL CAME FROM STEVE JOBS OR WHOEVER STARTED IT TO

15   WHOEVER THE FIRST PERSON HE TALKED TO WAS AND SAID

16   "I WANT -- I WANT TO ENTER INTO THIS AGREEMENT TO

17   RESTRICT COMPETITION."

18           THE COURT:  UM-HUM.

19           MR. SAVERI:  IT'S A RARE THING, INDEED,

20   FOR AN ANTITRUST CLAIMANT TO HAVE THAT DOCUMENT.

21           I MEAN, WHAT WE HAVE AN OBLIGATION TO DO

22   UNDER THE FEDERAL RULES IS TO PUT THE PLAINTIFFS --

23   PUT THE DEFENDANTS ON NOTICE OF THE CLAIMS AGAINST

24   THEM, AND DO IT IN A SPECIFIC WAY THAT MEETS THE

25   TWOMBLY REQUIREMENTS, AND I WOULD SUBMIT THAT WE'VE

                                                        22

1    DONE THAT IN OUR COMPLAINT.

2            SO TO ANSWER YOUR QUESTION DIRECTLY, WE

3    DO NOT HAVE THE FIRST MEETING, I DON'T HAVE THE

4    E-MAIL THAT WAS SENT, OR I DON'T HAVE THE NOTES OF

5    THE TELEPHONE CALL WHICH WAS THE FIRST CONTACT.

6            SO IT COULD HAVE HAPPENED EARLIER, BUT WE

7    DO NOT KNOW.

8            THE COURT:  LET ME -- OTHER THAN TYING,

9    WHAT ARE YOUR OTHER -- GO AHEAD.

10           MR. RUBIN:  WELL, LET -- I WANT TO GO

11   THROUGH THIS, BUT I DO WANT TO ADDRESS ONE POINT

12   THAT MR. SAVERI MADE.

13           HE TALKED ABOUT THE BURDEN OF GOING

14   THROUGH THE PRODUCTION THAT WE'VE ALREADY MADE.

15           BUT, FRANKLY, THAT'S OUR RIGHT.  I MEAN,

16   WE'RE ENTITLED TO PRODUCE ONLY THOSE DOCUMENTS THAT

17   ARE RELEVANT WITHIN THE FEDERAL RULES OF CIVIL

18   PROCEDURE.

19           SO IT'S -- THE ISSUE IS NOT, "OH, IT'S

20   MORE OF A BURDEN -- JUST GIVE US EVERYTHING YOU

21   GAVE TO D.O.J.  WHO CARES ABOUT TIME LIMITATIONS?

22   WHO CARES WHETHER IT INVOLVES BUSINESS ARRANGEMENTS

23   THAT HAVE NOT A WHIT TO DO WITH THIS CASE?  JUST

24   PRODUCE IT BECAUSE IT'S EASIER."

25           BUT THOSE AREN'T THE RULES.  THE RULES

1    ARE, EVEN IF WE MADE A PRIOR PRODUCTION, WE'RE

2    ENTITLED TO STATE OBJECTIONS AND HAVE -- AND

3    PRODUCE ONLY THOSE DOCUMENTS THAT ARE RELEVANT TO

4    THIS CASE.

5            AND, YOUR HONOR, I THINK TAKING A STEP

6    BACK IN TERMS OF BURDEN, WHICH I THINK -- BURDEN

7    AND PREJUDICE, WHICH I THINK IS EXACTLY WHAT THE

8    COURT HAS TO CONSIDER, IF YOU ACTUALLY COMPARE THE

9    BURDEN ON THE PLAINTIFFS OF WAITING TWO AND A

10   HALF -- TWO, TWO AND A HALF MONTHS UNTIL THE COURT

11   HAS A FULL AND COMPLETE OPPORTUNITY TO RULE ON THE

12   MOTION, TO CONSIDER WHETHER THIS OVERARCHING

13   CONSPIRACY THEORY ACTUALLY HAS THE UNDERLYING

14   ESSENTIAL SPECIFIC FACTS, NOT CONCLUSORY

15   ALLEGATIONS, BUT SPECIFIC FACTS TO PROCEED, THERE'S

16   NO BURDEN.  THERE'S EFFECTIVELY NO BURDEN.

17           THE ONLY BURDEN ON THEM, AS YOUR HONOR

18   STATED, IS THAT THEY DON'T GET ADDITIONAL FACTS TO

19   AMEND THEIR COMPLAINT.

20           BUT THAT'S NOT A RIGHT UNDER THE FEDERAL

21   RULES OF CIVIL PROCEDURE.  THERE'S A SPECIFIC RULE

22   ABOUT PRE-SUIT DISCOVERY, AND THAT'S NOT THIS CASE.

23           SO THERE IS NO ACTUAL RIGHT TO SAY, "I

24   FILED A COMPLAINT.  BECAUSE OF CNC AND RULE 26

25   RULES, THE TIME FOR DISCOVERY HAS BEGUN AND I'M

1    ENTITLED TO GET DOCUMENTS SO THAT MAYBE I CAN FLESH

2    OUT MY COMPLAINT," THERE IS NO RIGHT TO THAT.

3             SO THERE'S NO BURDEN ON THEM TO WAIT THE

4    COUPLE MONTHS.

5             ON US, IT IS SOME BURDEN.  WE DO HAVE A

6    RIGHT, AND WE WOULD BELIEVE THAT IT IS INCUMBENT ON

7    US TO GO THROUGH OUR D.O.J. PRODUCTION AND LOOK AT

8    THE TIMING OF IT.

9             AS ANOTHER EXAMPLE, THERE ARE BUSINESS

10   ARRANGEMENTS THAT WERE INVOLVING NON-DEFENDANTS

11   THAT WERE PART OF EVERYBODY'S PRODUCTIONS.

12            THOSE WELL MAY HAVE BEEN MUCH MORE

13   NARROWLY TAILORED, THEY COULD HAVE HAD OTHER

14   ASPECTS OF THEM, WHICH IS WHY THEY DIDN'T

15   ULTIMATELY APPEAR IN THE D.O.J. CONSENT DECREE.

16            WE WOULD SAY TO YOU TODAY, PRESUMPTIVELY

17   AT LEAST, THOSE AREN'T RELEVANT.

18            NOW, THEY MAY HAVE AN ARGUMENT WHY THEY

19   ARE.

20            BUT THAT'S ALL PART OF MOTION PRACTICE.

21            SO IT'S NOT JUST SO SIMPLE TO SAY,

22   "HERE'S MY CD IN MY BRIEFCASE, I CAN JUST HAND IT

23   OVER," BECAUSE THESE ARE ALL VERY SIGNIFICANT

24   ISSUES THAT THE DEFENDANTS HAVE -- SHOULD HAVE A

25   FULL RIGHT TO OBJECT TO AND TO TAILOR, EVEN THOUGH

1    IT'S ALREADY BEEN PRODUCED.

2              IN SOME RESPECTS, YOUR HONOR, YOU CAN

3    JUST THINK OF THIS AS PERHAPS A HALF STEP BEYOND

4    WHERE WE MIGHT OTHERWISE BE IF WE RAN SOME SEARCH

5    TERMS AND THEN HAD THIS GROUP OF DOCUMENTS.  THAT'S

6    ESSENTIALLY ALL WE'VE DONE.

7              BUT THERE'S NO PRESUMPTION OF

8    ENTITLEMENT.  THERE'S NOTHING IN THE LAW THAT SAYS

9    BECAUSE YOU PRODUCED --

10             THE COURT:  WELL, I'M NOT GOING TO -- YOU

11   KNOW, THE FIRST PLAINTIFF FILED THEIR COMPLAINT ON

12   MAY 4TH OF 2011.  I'M NOT GOING TO MAKE THAT PERSON

13   WAIT NINE MONTHS UNTIL THEY GET ANY DISCOVERY.

14             THIS IS NOT A SECURITIES CASE, AND I WANT

15   MY CASES TO MOVE, SO I'M NOT GOING TO HAVE NOBODY

16   GOING FORWARD.

17             MR. RUBIN:  I MEAN, IF YOUR HONOR SAID,

18   YOU KNOW, THE SPECIFIC AGREEMENTS, THE SPECIFIC

19   AGREEMENTS THAT ARE -- YOU KNOW, IF THE COURT

20   THINKS THAT SOME LIMITED DISCOVERY SHOULD TAKE

21   PLACE, LIKE DOCUMENTS RELATING TO THE SPECIFIC

22   AGREEMENTS THAT ARE ALLEGED IN THE COMPLAINT, OKAY.

23             I BELIEVE THE COURT IS EXACTLY RIGHT.

24   THEY STATED A CLAIM.  THEY HAVE SPECIFIC AGREEMENTS

25   THAT ARE ALLEGED.  THAT IS THE CASE.

1            THAT IS THE QUESTION NOW BEFORE THE

2     COURT.  DID THEY STATE A VIABLE CAUSE OF ACTION?

3            AND TO THE EXTENT ANY DISCOVERY WERE TO

4     PROCEED, IT REALLY SHOULD BE TAILORED TO THAT.

5            IT'S NOT A QUESTION OF, "OH, YOU'VE

6     ALREADY PRODUCED DOCUMENTS, SO JUST GO AHEAD AND

7     REPLICATE THAT OR COPY IT."

8            THE COURT:  WELL, BUT WHAT YOU'RE CITING

9     TO THE TWOMBLY DICTA IS, WHAT, EXPENSE,

10    INTRUSIVENESS, BURDEN?  ISN'T THAT WHAT THE SUPREME

11    COURT --

12           MR. RUBIN:  CERTAINLY.

13           THE COURT:  -- SAID WAS THE REASON WHY IN

14    THAT PARTICULAR CASE --

15           MR. RUBIN:  BUT -- AND WHAT I'M TRYING TO

16    ARTICULATE IS THAT EVEN WITH THE PRODUCTION THAT WE

17    HAVE, EVEN WITH THIS GROUP OF DOCUMENTS THAT GOOGLE

18    AND OTHERS HAVE PRODUCED, UNDER THE RULES OF

19    DISCOVERY, WE WOULD BE ENTITLED -- AND I THINK WE

20    WOULD BE DERELICT IF WE DIDN'T -- TO TAILOR THOSE

21    DOCUMENTS, FILTER THOSE DOCUMENTS IF YOU WILL, TO

22    ONLY -- TO RESPOND ONLY TO THOSE DOCUMENT REQUESTS

23    THAT WE THINK ARE RELEVANT TO THIS CASE, WHICH

24    REQUIRES WORK, WHICH REQUIRES TIME.

25           I MEAN, MR. SAVERI SAYS, "WELL, YOU CAN

1    JUST IGNORE THAT AND THAT GETS RID OF THE BURDEN,"

2    BUT THAT IS SOMETHING THAT WE HAVE AN ENTITLEMENT

3    TO DO.

4              WE'RE NOT REQUIRED TO JUST DUMP A

5    PREVIOUS PRODUCTION IN TO THE PLAINTIFFS.

6              WE ARE ONLY REQUIRED TO PROVIDE WHAT THE

7    COMPLAINT CALLS FOR THAT WOULD BE RELEVANT FOR THIS

8    CASE AT THIS TIME.

9              SO IT WOULD ACTUALLY TAKE TIME.  I THINK

10   IF YOU MULTIPLIED IT BY THE SIX OR SEVEN

11   DEFENDANTS, THERE'S A PRETTY SUBSTANTIAL BURDEN FOR

12   US TO GO THROUGH OUR D.O.J. PRODUCTION, MAKE THE

13   OBJECTIONS AS TO TIME, AS TO NON-DEFENDANT

14   DOCUMENTS THAT MIGHT HAVE BEEN PART OF THE

15   PRODUCTION, AS TO OTHER ISSUES RELATING TO POLICIES

16   THAT I DON'T THINK NECESSARILY ARE RAISED IN THE

17   COMPLAINT THAT MAY HAVE BEEN ASKED FOR BY D.O.J.,

18   THAT IS A TIME AND BURDEN EXPENSE IN EVERY WAY THAT

19   DISCOVERY WOULD BE.

20             THE ONLY THING THAT'S MISSING IS WE DON'T

21   HAVE TO DO THE SEARCH TERMS.  WE'VE ALREADY DONE

22   THOSE.

23             BUT IN ALL OTHER RESPECTS, WE STILL HAVE

24   TO DO THE SAME FILTERING.

25             SO I UNDERSTAND THE COURT'S CONCERN.

1    JANUARY COMES ALONG AND IT'S NINE MONTHS.

2              BUT FRANKLY, WHEN YOU THINK ABOUT THE

3    HISTORY OF THIS CASE, THEY FILED IN STATE COURT AND

4    IT WAS REMOVED TO FEDERAL COURT.

5              FROM THE TIME THAT THERE HAS BEEN AN

6    AGREEMENT TO HAVE THIS CASE IN FEDERAL COURT AND

7    IT'S BEEN BEFORE YOU, IT REALLY HASN'T BEEN THAT

8    MUCH TIME.  SO --

9              THE COURT:  WELL, THE CONSOLIDATED

10   AMENDED COMPLAINT WAS FILED SEPTEMBER 13TH, SO

11   STILL.

12             MR. RUBIN:  RIGHT.

13             THE COURT:  I'M JUST -- I'M TELLING YOU,

14   I'VE GOT TOO MANY CASES TO LET THEM LANGUISH AND

15   NOT HAVE DISCOVERY FOR NINE MONTHS TO A YEAR.  I'M

16   JUST NOT GOING TO DO THAT.  OKAY?

17             SO UNLESS YOU HAVE ANY OTHER OBJECTION

18   OTHER THAN TIME PERIOD, TIMEFRAME --

19             MR. RUBIN:  WELL, I DID.  I RAISED THE

20   NON-DEFENDANTS.  THERE WERE DOCUMENTS THAT WERE

21   PRODUCED RELATING TO NON-DEFENDANTS IN THIS CASE.

22             THE COURT:  OKAY.

23             MR. RUBIN:  OTHER KINDS OF BUSINESS

24   ARRANGEMENTS THAT RAISED CONFIDENTIALITY ISSUES

25   WITH RESPECT TO THOSE COMPANIES, AND --

1          THE COURT:  NOW, DID YOU ALREADY -- TO

2    MAKE THE PRODUCTION TO D.O.J., I ASSUME YOU HAVE

3    SOME KIND OF CONFIDENTIALITY AGREEMENT WHERE YOU

4    HAVE TO GIVE THEM NOTICE THAT YOU'RE HAVING TO MAKE

5    THIS PRODUCTION AND YOU GIVE THEM A CERTAIN PERIOD

6    TO SEE IF THEY WANT TO FILE A MOTION FOR PROTECTIVE

7    ORDER.

8          DID YOU GET THEIR CONSENT TO MAKE THE

9    PRODUCTION TO D.O.J.?

10          MR. RUBIN:  I DON'T KNOW THE DETAILS OF

11   THAT, YOUR HONOR.  I APOLOGIZE.

12          I DON'T KNOW WHETHER ANYONE ELSE IS AWARE

13   OF THAT OR NOT.

14          MR. SAVERI:  YOUR HONOR --

15          THE COURT:  ALL RIGHT.  BUT I'M ASSUMING

16   THAT IF THERE IS SOME THIRD PARTY CONFIDENTIALITY

17   OBLIGATION, THE PLAINTIFFS UNDERSTAND THAT THE

18   DEFENDANTS HAVE TO HONOR THAT.

19          IF THEY DIDN'T GET A BLANKET CONSENT TO

20   MAKE THEIR D.O.J. PRODUCTION AND NEED TO GO BACK

21   AND SAY "WE NEED TO PRODUCE IT FOR THIS SPECIFIC

22   INSTANCE, CAN WE," THEN --

23          MR. RUBIN:  BUT, YOUR HONOR, I GUESS

24   RECOGNIZING YOUR CONCERN ABOUT MOVING FORWARD, IN

25   MY VIEW, IF THERE IS ANYTHING TO BE PRODUCED,

1    SOMETHING THAT WOULD AT LEAST MINIMIZE THE BURDEN

2    FOR DEFENDANTS TO AT LEAST BALANCE THE EQUATION

3    HERE, TO PROVIDE --

4              THE COURT:  YOU'RE MAKING ME THINK

5    THERE'S SOME REALLY GOOD STUFF HERE.

6              MR. SAVERI:  YEAH, ABSOLUTELY.

7              MR. RUBIN:  NO, NO, NO.  I'M JUST SAYING

8    THE --

9              THE COURT:  THAT'S THE IMPRESSION I'M

10   GETTING IF YOU'RE FIGHTING THIS HARD AND MAKING ALL

11   THESE MOTIONS.

12             MR. RUBIN:  NO, NO.  I'M JUST SAYING IT'S

13   RELATIVELY EASY AND RELATES TO THEIR COMPLAINT TO

14   PROVIDE DOCUMENTS RELATING TO THE BILATERAL

15   AGREEMENTS THAT ARE AT ISSUE.

16             I'M ONLY LOOKING FOR SOMETHING SO THAT WE

17   WOULDN'T HAVE TO DO ALL THE OTHER FILTERING, AND

18   THAT'S SQUARELY ON POINT.  THOSE ARE, I THINK,

19   RELATED TO THIS CASE.

20             THE COURT:  OKAY.

21             MR. RUBIN:  AND DOCUMENTS RELATED TO

22   APPLE AND GOOGLE, PIXAR, LUCASFILM, THOSE DOCUMENTS

23   ARE RELATED TO THE CASE, AND I THINK WITH AT LEAST

24   RELATIVE EASE, NOT, YOU KNOW, COMPLETELY WITHOUT

25   BURDEN, BUT WITH RELATIVE EASE WE COULD SAY "WE

1    WILL START OUR PRODUCTION THAT WILL BE SORT OF A

2    FIRST TRANCHE.  THOSE DOCUMENTS ARE RELATED TO

3    THOSE AGREEMENTS."

4            BUT OTHERWISE WE SHOULD WAIT UNTIL THE

5    COURT RULES BECAUSE THEN YOU START MOVING INTO

6    OTHER AREAS.

7            IT REALLY HAS LITTLE --

8            THE COURT:  WELL, NO.  THAT'S TOO NARROW.

9    I'M NOT GOING TO DO THAT.

10           MR. SAVERI:  IF YOU WANT TO --

11           THE COURT:  LET ME HEAR A SHORT ANSWER ON

12   THE THIRD PARTIES.

13           IF THEY HAVE CONFIDENTIALITY OBLIGATIONS,

14   I'M NOT GOING TO ORDER THEM TO DISREGARD THOSE.

15           MR. SAVERI:  SO, YOUR HONOR, THAT'S FAIR.

16           THE COURT:  YEAH.

17           MR. SAVERI:  AND I HAVE TWO SPECIFIC,

18   MAYBE THREE SPECIFIC THINGS TO SAY ABOUT THAT.

19           FIRST, WE HAVE -- WE WILL AGREE -- WELL,

20   LET ME SAY IT IN THIS WAY:  FIRST OF ALL, WE, SOME

21   TIME AGO IN SEPTEMBER, PROPOSED A PROTECTIVE ORDER

22   TO THE DEFENDANTS THAT WOULD GOVERN CONFIDENTIAL

23   INFORMATION.

24           I THINK IT WOULD BE REALLY USEFUL FOR THE

25   DEFENDANTS TO GET BACK TO US SO WE CAN GET AN ORDER

1    ENTERED IN THIS CASE SO WE WOULDN'T HAVE TO HAVE

2    THIS DISCUSSION NOW, AND THERE'S REALLY NO REASON

3    AND NO EXCUSE FOR THE DEFENDANTS NOT TO HAVE DONE

4    THAT, PARTICULARLY BECAUSE THE ORDER THAT WE USED

5    AND SENT TO THEM WAS ESSENTIALLY MODELED AFTER THE

6    NORTHERN DISTRICT'S ORDER THAT IS ON THEIR WEBSITE.

7    SO THAT'S ONE POINT.

8         SECOND, WITH RESPECT TO THIRD PARTIES WHO

9    HAVE AN ARGUABLE CONFIDENTIALITY CONCERN, IF, IN

10   FACT, THEY PRODUCED THEM TO THE DEPARTMENT OF

11   JUSTICE IN SOME FASHION WHERE THEY SAID "THESE ARE

12   THIRD PARTY DOCUMENTS AND THEY ARE CONFIDENTIAL,"

13   WE WILL, OF COURSE, RESPECT THAT AND GIVE THE THIRD

14   PARTIES WHATEVER PROCESS THAT THEY AGREED TO TO

15   PROTECT THEM.

16        IN THE INTERIM --

17        THE COURT:  NO, NO, NO.  THEY HAVE TO

18   PROBABLY, IN ADVANCE, BEFORE THE PRODUCTION TO YOU,

19   GO BACK TO THOSE THIRD PARTIES, IF THEY DIDN'T GET

20   A BLANKET CONSENT THE LAST TIME, AND SAY "WE ARE

21   NOW MAKING A PRODUCTION TO PLAINTIFF'S COUNSEL."

22        MR. RUBIN:  BUT I --

23        MR. SAVERI:  EXCUSE ME.

24        IF THEY WERE TURNED OVER TO THE

25   DEPARTMENT OF JUSTICE WITHOUT SOME KIND OF

33

1    PROTECTION, I WOULD SAY THAT, YOU KNOW, THAT HORSE

2    HAS LEFT THE BARN.

3              BUT WITH RESPECT TO THE PRODUCTION TO US,

4    WE WILL CERTAINLY AGREE, FOR THESE PURPOSES, TO

5    KEEP THOSE DOCUMENTS WITH THE HIGHEST

6    CONFIDENTIALITY.  WE WILL LIMIT OUR USE OF THEM.

7              I MEAN, JUST SO WE'RE CLEAR --

8              THE COURT:  NO, NO, NO.  THAT'S NOT WHAT

9    I'M TALKING ABOUT.

10             I'M TALKING ABOUT THE CONFIDENTIALITY

11   AGREEMENT THAT THESE COMPANIES MAY HAVE WITH THEIR

12   LICENSEES OR THEIR SUBLICENSEES THAT SAYS THAT IF

13   YOU'RE GOING TO PRODUCE THIS DOCUMENT TO ANYONE

14   ELSE, YOU HAVE TO GO BACK TO THAT THIRD PARTY AND

15   GET THEIR CONSENT FOR THE PRODUCTION, OR AT LEAST

16   GIVE THEM AN OPPORTUNITY TO FILE SOME KIND OF

17   MOTION FOR PROTECTIVE ORDER TO STOP THE PRODUCTION.

18             THAT'S WHAT I'M TALKING ABOUT.

19             MR. SAVERI:  MAYBE I WASN'T CLEAR.

20             THE COURT:  I'M NOT TALKING ABOUT A

21   PROTECTIVE ORDER IN THIS CASE.

22             MR. SAVERI:  OKAY.  MAYBE I WASN'T CLEAR.

23             WHATEVER -- TO THE EXTENT THERE ARE

24   AGREEMENTS THAT GOVERN THOSE DOCUMENTS, THEY

25   SHOULD, OF COURSE, DO WHAT THEY NEED -- THAT ARE IN

1    FORCE, THEY SHOULD DO WHAT THEY NEED TO PROTECT THE

2    RIGHTS OR INTERESTS OF THOSE THIRD PARTIES.

3                FRANKLY, I HAVEN'T HEARD THAT THAT'S

4    ANYTHING BUT A HYPOTHETICAL CONCERN.

5                BUT IF THERE ARE, OF COURSE THEY SHOULD

6    PROTECT THEM.

7                AND ONCE -- AND I JUST WANT TO ASSURE THE

8    COURT THAT WE'RE NOT GOING TO -- WE'LL PROTECT

9    THOSE DOCUMENTS ONCE WE GET THEM, EVEN ABSENT A

10   PROTECTIVE ORDER.

11               SO THAT SHOULD NOT BE AN IMPEDIMENT TO

12   MOVING THIS THING FORWARD.

13               MR. RUBIN:  YOUR HONOR, CAN I JUST MAKE

14   ONE SUGGESTION?

15               MR. SAVERI:  EXCUSE ME.

16               MR. RUBIN:  ONE SUGGESTION, IF I MAY?

17               MR. SAVERI:  EXCUSE ME.

18               I THINK THAT IF -- YOU KNOW, THAT --

19   THOSE MATERIALS CAN AND SHOULD BE TURNED OVER

20   WITHOUT A LOT OF ADDITIONAL BURDEN AND WE SHOULD

21   ADDRESS THAT AND SET A SCHEDULE FOR DOING THAT

22   TODAY.

23               MR. RUBIN:  OKAY.  YOUR HONOR, I -- I

24   THINK -- I THINK WE'VE GONE FROM THE ISSUE OF

25   WHETHER THERE SHOULD BE A TEMPORARY STAY TO,

1    FRANKLY, STRIPPING THE DEFENDANTS OF THEIR RIGHTS

2    TO OBJECT IN THE NORMAL COURSE TO A DOCUMENT

3    REQUEST.

4            SO I HEAR WHAT THE COURT IS SAYING.  IT

5    WANTS DISCOVERY.  IT DOESN'T WANT TO WAIT FOR

6    DISCOVERY TO START UNTIL ITS RULING.

7            I ALSO HEAR WHAT IT'S SAYING, THAT THIS

8    D.O.J. GROUP OF DOCUMENTS SEEMS LIKE SOMETHING THAT

9    WOULD BE RELATIVELY EASY TO BEGIN WITH.

10           BUT PLAINTIFFS FILED A DOCUMENT REQUEST.

11   IN THE NORMAL COURSE WE WOULD RESPOND TO THAT

12   DOCUMENT REQUEST AND WE'D SAY, "WE'RE PREPARED TO

13   PRODUCE THESE DOCUMENTS.  AS TO OTHER DOCUMENTS,

14   IT'S OVERBROAD.  THERE ARE PROBLEMS."

15           I BELIEVE, AT A MINIMUM, WE SHOULD HAVE

16   THE RIGHT TO SAY, EVEN AS TO DOCUMENTS WITHIN THE

17   D.O.J. PRODUCTION, "WE THINK THAT THESE ARE NOT

18   RELEVANT.  WE THINK THAT THESE ARE NOT GERMANE TO

19   THIS CASE.  WE DON'T BELIEVE THAT YOU'RE ENTITLED

20   TO THESE UNDER THE RULES."

21           NOW, ULTIMATELY YOU OR JUDGE LLOYD MAY

22   SAY, "NO, NO.  EVEN THOUGH THEY'RE NOT RAISED

23   SPECIFICALLY IN THE COMPLAINT, THEY MAY BE

24   RELEVANT."

25           WE WOULD HAVE OUR ARGUMENTS BACK.

36

1          BUT I DON'T SEE HOW, TODAY, WE WOULD BE

2     STRIPPED OF THE ABILITY TO RAISE OBJECTIONS TO A

3     SUBCATEGORY.

4          THE COURT:  YOU HAVE REFUSED TO FILE

5     OBJECTIONS TO THE DOCUMENT REQUESTS --

6          MR. RUBIN:  NOT AT ALL.

7          THE COURT:  -- THUS FAR.

8          MR. RUBIN:  NO, NO.

9          THE COURT:  WEREN'T THOSE SERVED IN THE

10    FIRST CASE AND THEY HAVE NEVER BEEN FILED?

11          MR. RUBIN:  NO, YOUR HONOR.

12          JUST TO CLARIFY THAT, THAT'S ABSOLUTELY

13    NOT TRUE.  THEY WERE SERVED AND WE HAD AN AGREEMENT

14    WITH PLAINTIFFS, BECAUSE WE HAD IMMEDIATELY SOUGHT

15    TO REMOVE, THAT THOSE WOULD BE PUT IN ABEYANCE

16    UNTIL THE QUESTION OF WHERE THIS CASE WAS GOING TO

17    BE HEARD.

18          SO THERE'S NEVER BEEN ANY OVERDUE,

19    THERE'S NEVER BEEN ANY MISSED DEADLINE IN THIS

20    CASE.

21          AND WE SPECIFICALLY REPRESENTED TO

22    PLAINTIFFS, AND WE'VE BEEN FAITHFUL TO THIS, THAT

23    WE WOULD MEET EVERY DISCOVERY DEADLINE UNLESS AND

24    UNTIL THE COURT ISSUES A STAY.

25          THEY FILED THEIR DOCUMENT REQUESTS IN

1    THIS CASE ON OCTOBER 3RD, THE DAY THAT WE HAD OUR

2    RULE 26 CONFERENCES, CONFERENCE.  THOSE ARE DUE ON

3    NOVEMBER 7TH.

4          SO WE INTEND, ABSENT A STAY, TO RESPOND

5    TO THOSE DOCUMENT REQUESTS.

6          AND WITH THE COURT -- IF THE COURT SAYS

7    "I'M GOING TO LIMIT DISCOVERY TO WHAT'S WITHIN THE

8    CONFINES OF THE D.O.J. PRODUCTION," WE UNDERSTAND

9    THAT.

10          BUT WE SHOULD STILL GET AN OPPORTUNITY,

11   EVEN AS TO THAT UNIVERSE OF DOCUMENTS, TO RAISE

12   OBJECTIONS AS TO PARTICULAR CATEGORIES THAT MAY BE

13   WITHIN THE PRODUCTION, BUT STILL NOT DISCOVERABLE

14   IN THIS CASE.

15          WE HAVEN'T BRIEFED THAT.  THERE HASN'T

16   BEEN ANY ADJUDICATION OF THAT.

17          SO WE'RE -- WE ARE FULLY TIMELY.  WE

18   FILED OUR INITIAL DISCLOSURES.  WE'VE MET WITH THEM

19   ON ELECTRONIC DISCOVERY.

20          WE ARE -- WE DO NOT -- I DON'T THINK IT

21   WOULD BE FAIR TO DRAW ANY INFERENCE THAT WE HAVE

22   ESSENTIALLY DECIDED NOT TO PARTICIPATE IN THE

23   DISCOVERY PROCESS.  WE HAVE.

24          AND, IN FACT, THAT'S WHY WE FILED THE

25   STAY ON THE SAME DAY AS THE MOTION TO DISMISS.

1              WE'RE JUST SAYING WE WANT THE RIGHTS THAT

2    ARE OTHERWISE ACCORDED TO ANY DEFENDANT, THAT WE

3    GET A CHANCE TO RESPOND TO THE DISCOVERY REQUESTS;

4    IF THE COURT THINKS IT'S APPROPRIATE, WHICH WE

5    AGREE AT A MINIMUM THAT IT SHOULD BE LIMITED TO

6    THIS SUBSUBCATEGORY OF DOCUMENTS, BUT AT LEAST --

7    BUT EVEN WITHIN THAT CONTEXT, TO BE ABLE TO OBJECT

8    TO CERTAIN DOCUMENTS THAT ARE WITHIN THAT CATEGORY

9    BASED ON TIME LIMITATION, BASED ON NON-DEFENDANTS,

10   BASED ON OTHER CATEGORIES THAT WE THINK ARE OUTSIDE

11   THE SCOPE OF THE FOUR CORNERS OF THIS COMPLAINT,

12   THAT WE WOULD STILL HAVE AN OPPORTUNITY TO OBJECT.

13             AND IF THERE'S A DIFFERENCE, WE'LL RAISE

14   IT, IT'LL PROBABLY BE RAISED EVEN BEFORE

15   JANUARY 26TH, AND WE'LL RESOLVE IT.

16             BUT I CAN'T -- IT WOULD BE -- IT WOULD BE

17   UNUSUAL, IN MY VIEW, TO JUST STRIP US OF THAT, FOR

18   THE COURT TO RULE THAT ALL OF THOSE ARE JUST

19   PRESUMPTIVELY DISCOVERABLE BEFORE EVEN HEARING FROM

20   US.

21             MR. SAVERI:  YOUR HONOR --

22             THE COURT:  WHAT'S THAT?

23             MR. SAVERI:  I DON'T KNOW IF YOU WANT TO

24   GO INTO HOW WE ENDED UP IN THE KIND OF DITCH HERE

25   ON CASE MANAGEMENT AND HOW THE DEFENDANTS HAVEN'T

1    RESPONDED AND PARTICIPATED --

2              THE COURT:  NO, I REALLY DON'T WANT TO GO

3    THERE.

4              MR. SAVERI:  OKAY.  SO I'M JUST GOING TO

5    LEAVE THOSE REPRESENTATIONS ALONE, BUT I DON'T

6    THINK THEY'RE TRUE.

7              THE -- WE'VE IDENTIFIED THESE DOCUMENTS

8    AS A CORE SET OF DOCUMENTS AND AS A WAY OF KIND OF

9    STAGING THIS DISCOVERY AND TO START MOVING THIS

10   CASE ALONG SINCE THE EARLY SUMMER, AND WE THINK

11   THAT THE -- IT'S ENTIRELY APPROPRIATE TO START THE

12   DISCOVERY IN THIS CASE, YOU KNOW, SO MANY MONTHS

13   AFTER THE CASE WAS FILED, WITH THE DEPARTMENT OF

14   JUSTICE PRODUCTION.

15             I AM -- I'M A LITTLE BIT CONCERNED THAT

16   EVEN, EVEN NOW I'M HEARING THAT WE ARE GOING TO

17   HAVE AN EXTENSIVE KIND OF LAW AND MOTION PRACTICE

18   ABOUT EVEN THE RELEVANCY OF THE DEPARTMENT OF

19   JUSTICE MATERIALS.

20             I THINK THAT'S UNFORTUNATE, BUT THE --

21   THE ISSUE AT THIS POINT IS, CAN WE GET THIS CASE

22   STARTED?  CAN WE START MOVING AND START DOING THE

23   WORK?

24             AND WITH THE DEPARTMENT OF JUSTICE

25   MATERIALS, I THINK WE HAVE A READY SET OF MATERIALS

1    THAT CAN BE PRODUCED WITHOUT A LOT OF TROUBLE.

2           IF THEY WANT TO WAIT UNTIL NOVEMBER 7TH,

3    OR WHATEVER THE DUE DATE IS UNDER THE PRODUCTION,

4    WHATEVER THE RULE IS, 30 DAYS AFTER WE ORIGINALLY

5    PROPOUNDED THEM, THAT'S FINE.

6           BUT WE NEED TO GET THIS THING GOING, AND

7    THE CASE HAS ALREADY BEEN LANGUISHING TOO LONG.

8           MR. RUBIN:  YOUR HONOR, ALL I'M SAYING IS

9    THAT A PRIOR PRODUCTION DOESN'T WAIVE OUR RIGHTS

10   UNDER THE RULES, HOWEVER MUCH HAS BEEN AGGREGATED

11   ALREADY.

12          THE COURT:  WHAT -- MR. SAVERI, I HAVEN'T

13   HEARD YOU -- I HAVE TO SAY I'M GETTING PERSUADED BY

14   THE DEFENDANTS AS TO LIMITING IT FROM 2004 TO 2009.

15          IS THERE ANYTHING YOU WANT TO SAY ABOUT

16   THAT?

17          MR. SAVERI:  WELL, YOUR HONOR, THE --

18   WELL, YOUR HONOR, THE PRODUCTION OF -- WELL, WE'VE

19   ALLEGED -- OUR ORIGINAL DOCUMENT REQUEST IS MORE

20   BROAD THAN THE CLASS PERIOD, AND WE'RE -- AND WE'RE

21   ENTITLED TO GO BACK, UNDER REGULAR DISCOVERY RULES,

22   AND WE'RE NOT LIMITED IN DISCOVERY BY OUR INITIAL

23   CLASS PERIOD ALLEGED IN THE COMPLAINT.

24          I MEAN, THERE'S SETTLED LAW TO THAT

25   EFFECT.

1              NOW, THE -- THE IDEA THAT THE DEFENDANTS

2    WOULD TAKE THE TIME NECESSARY TO GO BACK AND KIND

3    OF PULL OUT MATERIAL BEFORE THE CLASS PERIOD

4    REALLY, TO ME, IS A MULTIPLICATION OF THE

5    PROCEEDINGS AND HIGHLY INEFFICIENT.

6              THAT SET IS -- CAN BE PRODUCED.

7              AND AS WE'VE SAID TO THE DEFENDANTS, YOU

8    KNOW, THERE ARE WAYS -- IF THERE'S -- IF THEY ARE

9    CONCERNED ABOUT PRODUCING IRRELEVANT MATERIAL,

10   THERE ARE WAYS OF PROTECTING THAT.

11             BUT FOR NOW, YOUR HONOR, WE HAVE AN

12   ENTITLEMENT TO DISCOVERY.  THERE IS NO STAY.

13             WE'VE ACTUALLY STRUGGLED TO FIND THE

14   LEAST BURDENSOME WAY OF GETTING THIS THING GOING

15   WITHOUT FORCING THE DEFENDANTS TO SPEND A LOT OF

16   TIME AND MONEY REVIEWING THE DOCUMENTS.

17             SO WE THINK THEY SHOULD PRODUCE IN THAT

18   FASHION RIGHT AWAY.

19             AND I DO THINK YOUR INSTINCT IS CORRECT,

20   YOUR HONOR, THAT -- THIS IS THE FIRST TIME I CAN

21   REMEMBER WHERE I'VE HAD SUCH A BIG FIGHT ABOUT THIS

22   CORPUS OF DOCUMENTS, AND THERE MUST BE SOMETHING

23   INTERESTING IN THERE THAT HAS A LOT TO DO WITH THIS

24   CASE.

25             MR. RUBIN:  YOUR HONOR, WE REALLY,

1     BELIEVE IT OR NOT, ARE ARGUING ON PRINCIPLE.  WE

2     JUST DON'T THINK WE SHOULD HAVE TO RESPOND TO

3     DOCUMENTS UNTIL THERE'S A COMPLAINT THAT'S BEEN

4     VALIDATED.

5              BUT I KNOW PRINCIPLE HAS GONE OUT THE

6     WINDOW A LONG TIME AGO.

7              MR. SAVERI:  BUT OF COURSE, YOUR HONOR,

8     THAT PRINCIPLE THAT MY COLLEAGUE JUST STATED IS

9     FOUND NOWHERE IN THE FEDERAL RULES.  IT'S

10    INCONSISTENT WITH RULE 8 AND RULE 12.  IT'S

11    INCONSISTENT WITH RULE 26.  IT'S, FRANKLY,

12    INCONSISTENT WITH TWOMBLY.

13             SO THAT MIGHT BE A PRINCIPLE THAT THE

14    DEFENDANTS WOULD LIKE THE COURT TO ADOPT HERE, BUT

15    THAT'S NOT A -- THAT'S THE LAW.

16             MR. RUBIN:  YOUR HONOR, I THINK WE WOULD

17    BE PREPARED TO AGREE -- BASED UPON YOUR COMMENTS

18    AND WHERE THINGS ARE AND KNOWING THAT YOU PROBABLY

19    DON'T WANT TO SPEND ALL DAY LISTENING TO THE TWO OF

20    US, WE WOULD BE PREPARED TO PRODUCE DOCUMENTS BACK

21    TO 2004.

22             I DO -- I WOULD LIKE TO FIND A MECHANISM,

23    AS AFFORDED UNDER THE RULES, TO BE ABLE TO OBJECT

24    TO SOME DISCRETE SUBCATEGORIES OF DOCUMENTS THAT WE

25    GENUINELY DON'T BELIEVE ARE RELEVANT, AT LEAST AT

                                                        43

 1    THIS POINT, TO THIS CASE.

 2              AND I WOULD NOT -- I WOULD HATE TO JUST

 3    HAVE THOSE RELINQUISHED, THOSE RIGHTS RELINQUISHED.

 4              SO -- BUT WE SORT OF RECOGNIZE THAT --

 5    WHERE THE COURT IS.

 6              THE COURT:  I GUESS I DON'T UNDERSTAND

 7    WHY YOU WOULD PRODUCE DOCUMENTS THAT AREN'T

 8    RELEVANT IN THIS CASE TO THE D.O.J.

 9              MR. RUBIN:  YOU MEAN YOU DON'T UNDERSTAND

10    HOW SOMETHING COULD BE -- LET'S TAKE AN EXAMPLE.

11              THE COURT:  YOU'RE THE ONE THAT SAID THAT

12    THEIR WHOLE -- THAT THE PLAINTIFFS' COMPLAINT IS

13    EXACTLY CRIBBED FROM THE D.O.J. COMPLAINT.

14              MR. RUBIN:  RIGHT.  SO I'LL GIVE YOU A

15    CONCRETE EXAMPLE RELATING TO A NON-DEFENDANT.

16              SO IF THERE WAS A BUSINESS PARTNERSHIP,

17    SOME KIND OF A COLLABORATION THAT HAD SOME KIND OF

18    VERY LIMITED AGREEMENT, UNDERSTANDING, OR EXCHANGE

19    ABOUT NOT RECRUITING FROM THE TEN PEOPLE WHO ARE IN

20    A JOINT VENTURE, D.O.J. MAY HAVE LOOKED AT THAT AND

21    SAID, "WELL, THIS IS NOT WHAT WE'RE CONCERNED

22    ABOUT."

23              THAT ARRANGEMENT, THAT BUSINESS

24    ARRANGEMENT, ONE, MAY BE CONFIDENTIAL; AND, TWO,

25    REALLY IS NOT AT ALL RELEVANT TO THIS CASE IN OUR

```
1    VIEW.
2              NOW, PLAINTIFFS COULD DIFFER --
3              THE COURT:  SO YOU'RE SAYING THERE ARE
4    MORE POTENTIAL DEFENDANTS OUT THERE?
5              MR. RUBIN:  NO.  I'M ACTUALLY SAYING --
6              THE COURT:  THAT'S WHAT IT SOUNDS LIKE,
7    RIGHT?  YOU'RE SAYING, "WE HAVE THESE OTHER NO COLD
8    CALLING AGREEMENTS WITH OTHER COMPANIES THAT AREN'T
9    IDENTIFIED IN HERE."
10             MR. RUBIN:  NOT AT ALL.  I'M SAYING
11   EXACTLY THE OPPOSITE.
12             I'M SAYING THERE COULD BE ARRANGEMENTS,
13   VERY LIMITED JOINT VENTURE ARRANGEMENTS.
14             IF YOU LOOK AT THE CONSENT DECREE, THE
15   CONSENT DECREE SAID, "IN OUR VIEW, THESE ARE PER SE
16   VIOLATIONS."
17             BUT THERE ARE LOTS OF OTHER ARRANGEMENTS
18   THAT WOULD -- THAT ARE LESS BROAD THAT COULD WELL
19   BE LEGAL AND PERMISSIBLE.
20             AND I CAN TELL YOU, SITTING HERE TODAY,
21   THERE WERE MORE AGREEMENTS REVIEWED THAN WHAT WERE
22   ULTIMATELY PART OF THE COMPLAINT.
23             THAT IS, THERE WERE -- THERE WERE --
24             THE COURT:  MORE AGREEMENTS BETWEEN THE
25   PARTIES THAT ARE DEFENDANTS IN THIS CASE?
```

1           MR. RUBIN:  NO, NO.  THERE WERE OTHER

2    KINDS OF ARRANGEMENTS THAT WERE CONSIDERED BY THE

3    DEPARTMENT OF JUSTICE, BUT NEVER ACTED ON.

4           IN OTHER WORDS, THEY WERE NOT A SUBJECT

5    OF THE ENFORCEMENT ACTION.

6           SO COMPANY A AND NON-DEFENDANT MAY HAVE

7    HAD A VERY LIMITED BUSINESS ARRANGEMENT.

8           LET'S SAY THAT WE HAD A JOINT VENTURE TO

9    MAKE SOMETHING AND THERE WAS AN AGREEMENT.

10          IT WOULD HAVE BEEN CAPTURED BY THE D.O.J.

11   REQUEST THAT, BECAUSE THERE WAS SOME KIND OF

12   AGREEMENT, DON'T RECRUIT FROM THIS GROUP OF TEN

13   PEOPLE WHO WERE INVOLVED IN THIS NEW PROJECT.

14          D.O.J. MAY HAVE GOTTEN THAT AND SAID,

15   "WELL, THAT'S NOT OUR -- WE'RE NOT CONCERNED ABOUT

16   THAT KIND OF AGREEMENT.  IT'S THE KIND OF AGREEMENT

17   WE DON'T THINK IS A PROBLEM."

18          THE COURT:  WHY?  JUST BECAUSE OF THE

19   NUMBER OF EMPLOYEES INVOLVED?

20          MR. RUBIN:  YEAH, BECAUSE OF ALL THE

21   FEATURES, THE PRINCIPLES.

22          IF YOU LOOK AT THE D.O.J.'S ANALYSIS,

23   THEY HAD A PARTICULAR VIEW ABOUT WHAT WAS AND WHAT

24   WASN'T A PROBLEM.

25          SO THERE WERE A NUMBER OF BUSINESS

1    ARRANGEMENTS THAT JUST WEREN'T A PROBLEM FROM THEIR

2    VANTAGE POINT.

3            SO WE DON'T SEE WHY WE WOULD HAVE TO

4    PRODUCE ANY OF THOSE.

5            THE COURT:  BUT THIS IS SAYING PROHIBITED

6    CONDUCT IN THE FINAL JUDGMENT THOUGH.

7            MR. RUBIN:  THEY'RE DIFFERENT.  I MEAN,

8    IN OTHER WORDS, THERE'S A SPECTRUM OF CONDUCT, AND

9    ALL WE'RE SAYING IS WHY WOULD WE NECESSARILY --

10   MAYBE WE'LL END UP -- YOU KNOW, MAYBE THE COURT

11   WOULD END UP SAYING MUCH OF THAT IS RELEVANT, BUT

12   MAYBE IT WOULDN'T.

13           SO TO JUST SAY TODAY "EVERYTHING THAT YOU

14   PRODUCED TO D.O.J. IS RELEVANT" IS JUST PREMATURE

15   IN OUR VIEW.  THAT'S WHAT WE'RE SAYING.

16           I CAN TELL YOU, THERE IS A SPECTRUM OF

17   CONDUCT.  NOT ALL OF THE CONDUCT WAS ALONG THE

18   LINES OF THE AGREEMENTS THAT ARE AT ISSUE HERE,

19   WHICH BY THE WAY WE DON'T THINK EVEN BILATERALLY

20   WERE NECESSARILY IMPROPER, BUT D.O.J. THOUGHT

21   OTHERWISE.

22           BUT WHAT WE'RE SAYING IS THERE ARE OTHER

23   KINDS OF ARRANGEMENTS --

24           THE COURT:  I DON'T KNOW.  I'M NOT

25   CONVINCED BY THAT.

47

1          YOU'RE SAYING "WE HAD OTHER NO COLD CALL

2    ARRANGEMENTS WITH THIRD PARTIES, BUT D.O.J., IN

3    PROSECUTORIAL DISCRETION, DECIDED NOT TO PROSECUTE

4    US ESSENTIALLY FOR THOSE."

5          MR. RUBIN:  WELL, AND THEY MAY BE

6    PERFECTLY LEGAL IS WHAT I'M SAYING.

7          THEY -- IN FACT, IT'S NOT JUST --

8          THE COURT:  WELL, BUT YOU'RE SAYING IT'S

9    THE EXACT SAME CONDUCT THAT THEY DID FIND TO BE

10   PROBLEMATIC IF IT'S AMONGST YOUR COMPANIES.

11         MR. RUBIN:  IT COULD BE DIFFERENT KIND OF

12   CONDUCT.  IT COULD BE SOME OTHER ARRANGEMENT.

13         THE COURT:  I'M REALLY HOPING THAT YOU

14   ARE NOT GOING TO FILE -- THAT I'M NOT GOING TO SEE

15   MOTIONS TO COMPEL ON THAT BECAUSE I THINK THAT'S

16   RELEVANT AND THAT SHOULD BE PRODUCED.

17         MR. RUBIN:  WELL, OKAY.  YOUR HONOR, I

18   UNDERSTAND YOUR PRELIMINARY DECISION.

19         THE COURT:  I'M NOT SAYING --

20         MR. RUBIN:  I JUST WANT THE RIGHT TO --

21   WE JUST WANT THE RIGHT TO FILE THOSE OBJECTIONS.

22   THAT'S ALL I'M SAYING.

23         MAYBE AT THE END OF THE DAY, ALMOST ALL

24   OF THIS GOES OVER.

25         WE JUST WANT -- WHEN WE RESPOND TO THIS

48

1    DISCOVERY REQUEST, WE WANT TO BE ABLE TO SAY, IN

2    THOSE CATEGORIES WHERE WE GENUINELY THINK WE HAVE A

3    BASIS, "HEY, THAT CATEGORY OF DOCUMENTS IS NOT

4    RELEVANT."

5              THE COURT:  OKAY.  THE LAST EXAMPLE YOU

6    GAVE ME, I WOULD GRANT A MOTION TO COMPEL ON THAT.

7              IF THAT'S THE BEST CASE SCENARIO, THAT,

8    "YES, WE WERE COLLUDING NOT TO COLD CALL WITH THIRD

9    PARTIES, BUT D.O.J. DECIDED NOT TO PROSECUTE US FOR

10   THAT BECAUSE THE NUMBER OF EMPLOYEES WAS TOO SMALL

11   IN NUMBER" --

12             MR. RUBIN:  WELL, THAT'S NOT --

13             THE COURT:  WOW.  I REALLY DON'T WANT TO

14   SEE DISCOVERY DISPUTES ON STUFF LIKE THAT, PLEASE.

15             MR. RUBIN:  OKAY.  I UNDERSTAND.

16             THE COURT:  AND I AM DISTURBED BY WHAT

17   I'M HEARING OF YOUR SAYING, "OH, YOU HAVEN'T SEEN

18   ALL THE DISCOVERY MOTIONS THAT WE'RE GOING TO FILE

19   ON THE D.O.J. DOCUMENTS," I DON'T WANT TO HEAR

20   THAT.

21             MR. RUBIN:  I THINK YOU'VE MISUNDERSTOOD

22   ME.

23             THE COURT:  IF THAT'S YOUR ATTITUDE ABOUT

24   HOW TO STRUCTURE YOUR DOCUMENT PRODUCTION ON THE

25   D.O.J. DOCUMENTS, THEN THAT'S REALLY NOT BODING

1      WELL FOR HOW THIS IS GOING TO GO FORWARD.

2              MR. RUBIN:  NO, NO.  YOUR HONOR, I THINK

3      YOU MISUNDERSTOOD WHAT I'M SAYING.

4              THE COURT:  AND IT WILL MAKE ME START

5      DOING VERY DRACONIAN DISCOVERY ORDERS.

6              I REACT BADLY WHEN I SEE A BUNCH OF

7      FRIVOLOUS, OBSTRUCTIONIST OBJECTIONS AND REQUIRING

8      REALLY UNNECESSARY MOTIONS TO COMPEL.

9              SO PLEASE DON'T GO THAT WAY.

10             MR. RUBIN:  LET ME JUST TRY TO CORRECT --

11             THE COURT:  DON'T GO THAT WAY.

12             MR. RUBIN:  OKAY.  I THINK I WAS

13     MISUNDERSTOOD IN THIS RESPECT.

14             THE COURT:  OKAY.

15             MR. RUBIN:  I'M TALKING ABOUT, AS A

16     THEORETICAL MATTER, IF THERE ARE NARROW

17     CATEGORIES -- I UNDERSTAND YOU'RE NOT PERSUADED BY

18     THE CATEGORY THAT I --

19             THE COURT:  NOT THAT ONE.

20             MR. RUBIN:  I THINK YOU WERE MORE

21     PERSUADED BY THE TIMING.

22             THE COURT:  THE TIMING, OKAY.

23             MR. RUBIN:  AND ALL I'M SAYING IS TODAY,

24     BEFORE WE HAVE AN OPPORTUNITY -- I HEAR EXACTLY

25     WHAT YOU'RE SAYING.  I UNDERSTAND IT.

1          WE WOULD BE VERY CAREFUL IN RAISING ONLY

2     THOSE ISSUES THAT WE GENUINELY BELIEVE THERE'S AN

3     ISSUE ON.

4          ALL I'M SAYING IS TODAY, I DON'T THINK IT

5     WOULD BE APPROPRIATE TO SAY, "WE FOREVER, AS WE

6     WALK OUT OF THE COURTHOUSE TODAY, WAIVE OUR RIGHTS

7     TO ASSERT ANY OBJECTIONS TO ANY PORTION OF THE

8     D.O.J. PRODUCTION."

9          THE COURT:  RIGHT.

10         MR. RUBIN:  THAT'S ALL I'M SAYING.

11         THE COURT:  I WOULD NOT ORDER THAT.

12         MR. RUBIN:  OKAY.  THAT'S ALL I'M SAYING,

13    YOUR HONOR.

14         THE COURT:  BUT I ALSO DON'T WANT TO SEE

15    A LOT OF FRIVOLOUS OBJECTIONS AND A LOT OF HIDING

16    THE BALL WITH DISCOVERY, AND IF I SEE A LOT OF

17    THAT, I WILL ISSUE SANCTIONS BECAUSE --

18         MR. RUBIN:  I UNDERSTAND.

19         THE COURT:  -- YOU KNOW --

20         MR. RUBIN:  I DO THINK WE'VE SORT OF PUT

21    THE CART BEFORE THE HORSE, AND I THINK AS THIS CASE

22    PROCEEDS, IF THIS CASE PROCEEDS -- AND WE DON'T

23    OBVIOUSLY THINK IT HAS A BASIS TO --

24         THE COURT:  YEAH.

25         MR. RUBIN:  -- YOU WILL SEE THAT THERE

```
 1    ARE LOTS OF AGREEMENTS, NOT JUST IN THIS CASE, BUT

 2    WE WILL BE BRINGING TO YOUR ATTENTION OTHER CASES,

 3    THAT CERTAIN KINDS OF LIMITATIONS ON RECRUITING AND

 4    JOINT VENTURE AND COLLABORATIVE CONTEXT HAVE

 5    ACTUALLY BEEN RULED BY THE ANTITRUST AUTHORITIES TO

 6    BE PRO COMPETITIVE; THAT IS, THAT TREATISES AND

 7    CASE LAW SAYS IN CERTAIN CIRCUMSTANCES, AGREEMENTS

 8    NOT TO NECESSARILY RECRUIT PEOPLE WHO ARE WORKING

 9    TOGETHER ON A NEW VENTURE, ON A BUSINESS

10    COLLABORATION, HAVE ACTUALLY NOT JUST BEEN SAID,

11    "OH, WE JUST CHOSE NOT TO PROSECUTE," BUT COURTS

12    HAVE SAID THOSE ARE PRO COMPETITIVE, ANCILLARY

13    AGREEMENTS.

14              THE COURT:  WHAT'S THE OBJECTION?  WHAT'S

15    THE OBJECTION?

16              NOTHING HERE SAYS THAT YOU HAVE TO

17    PRODUCE THE REGULATORY DOCUMENTS ONLY IF IT'S BEEN

18    DEEMED ANTICOMPETITIVE.

19              WHAT'S THE OBJECTION?

20              MR. RUBIN:  I WOULD POINT TO THINGS --

21              THE COURT:  WHAT'S THE OBJECTION?  IS IT

22    GOING TO BE BURDENSOME?  IS IT GOING TO BE -- WHAT?

23              MR. RUBIN:  IT'S JUST MATERIAL THAT'S

24    OUTSIDE THE COMPLAINT.  THAT'S MY ONLY POINT.

25              IT DOESN'T HARM US IN THAT CONTEXT, BUT
```

1    IT'S JUST MATERIAL OUTSIDE THE COMPLAINT AND WE

2    SHOULD HAVE AN OPPORTUNITY TO KEEP IT TO THE

3    CONFINES OF THE COMPLAINT.

4              I DON'T HAVE AN OBJECTION IN THE SENSE

5    OF, "OH, IT'LL BE DEVASTATING TO US.  IT'S SO

6    HARMFUL."

7              LOTS OF ARRANGEMENTS LIKE THIS ARE PRO

8    COMPETITIVE.

9              THE COURT:  I MEAN, THE STANDARD FOR

10   WHAT'S RELEVANT AND WHAT SHOULD BE PRODUCED IS

11   PRETTY LOW.  I GUESS I'M -- I'M GETTING MORE

12   CONCERNED.

13             I THINK I'M GOING TO GO BACK TO 2000,

14   BECAUSE I'M GETTING MORE AND MORE CONCERNED WHEN

15   I'M HEARING ABOUT WHAT YOU'RE GOING TO WITHHOLD.

16             UNDER THE STANDARD FOR WHAT SHOULD BE

17   PRODUCED, IT'S A PRETTY --

18             MR. RUBIN:  I'M NOT SAYING I'M

19   WITHHOLDING --

20             THE COURT:  -- LOW STANDARD, AND YOU'RE

21   SAYING, "NO, NO, NO.  ONLY IF IT'S DIRECTLY

22   RELEVANT TO THE COMPLAINT AS IT CURRENTLY STANDS,"

23   AND I THINK THAT'S NOT THE STANDARD.

24             MR. RUBIN:  I UNDERSTAND, YOUR HONOR.

25             THE COURT:  SO --

1           MR. RUBIN:  AND YOU'VE ESSENTIALLY

2    ALREADY GIVEN A RULING ON IF THERE WERE AGREEMENTS

3    THAT WERE, EVEN FROM OUR PERSPECTIVE, PRO

4    COMPETITIVE, BUT HAVE THE SAME KIND OF CONDUCT.

5           I AM SIMPLY TRYING TO PRESERVE A RIGHT

6    WHICH MAY NOT BE EXERCISED.

7           AND I THINK YOUR HONOR SAID YOU WOULDN'T

8    ORDER THAT.  YOU WOULD NOT -- YOU WOULD NOT REMOVE

9    FROM US THE RIGHT TO, TO MAKE AN OBJECTION TO SOME

10   PORTION OF THE D.O.J. PRODUCTION.

11          AND WITH THAT, I UNDERSTAND WHAT YOU'RE

12   SAYING, THAT THE D.O.J. PRODUCTION IS PRESUMPTIVELY

13   RELEVANT, I THINK THAT IS WHAT THE COURT IS SAYING,

14   AND YOU WOULD HEAR FROM US, BUT YOU'RE TELLING US

15   DON'T PUSH IT AND DON'T, YOU KNOW, RAISE THINGS

16   THAT ARE NOT -- THAT DON'T HAVE ANY BASIS.

17          I DO THINK THE TIME LIMITATION IS, YOU

18   KNOW -- THE 2004 -- GOING BACK A YEAR IS A VERY

19   STANDARD TIME LIMITATION FOR AN ANTITRUST

20   COMPLAINT, TO GO BACK A YEAR BEFORE THE COMPLAINT,

21   BUT NO MORE.

22          MR. SAVERI:  YOUR HONOR --

23          MR. RUBIN:  SO --

24          THE COURT:  YEAH.  I NEED TO START

25   BRINGING THIS TO A CLOSE, BUT GO AHEAD.

1        MR. SAVERI:  YOUR HONOR, LET ME JUST SAY

2   SOMETHING ABOUT THE TIMING AND THEN MAYBE I SHOULD

3   BE QUIET.

4        YOU KNOW, WE DO NOT -- ONE OF THE REASONS

5   WE LOOK BACK BEFORE WE THINK WE WERE AWARE THAT THE

6   FIRST AGREEMENT HAPPENED IS THAT THIS IS A

7   CONSPIRACY CASE.

8        ISSUES LIKE MOTIVE ARE VERY IMPORTANT.

9   WE -- THERE ARE -- ANY COMMUNICATIONS -- WE DO NOT

10  THINK THAT THE AGREEMENTS JUST HAPPENED ONE DAY,

11  THAT PEOPLE CAME TO WORK AND THERE WAS AN AGREEMENT

12  THAT -- IT ONLY MAKES SENSE, YOUR HONOR, IF THERE

13  WERE COMMUNICATIONS AND PLANNING AND CONSIDERATION

14  AND PERHAPS INVITATIONS TO ENTER INTO THESE KIND OF

15  AGREEMENTS.

16        AND AS WE CITED IN THE COMPLAINT, SOME

17  PEOPLE TOLD OTHER PEOPLE WHO PARTICIPATED IN THESE

18  AGREEMENTS, "YOU'RE NUTS.  THIS IS ILLEGAL.  YOU'RE

19  GOING TO GO -- YOU WILL PROBABLY GO TO JAIL."

20        THIS IS THE -- SO THERE'S A GOOD FAITH

21  REASON, AND A LEGITIMATE REASON, CONSISTENT WITH

22  THE PERMISSIBLE SCOPE OF DISCOVERY, TO GO BACK

23  BEFORE WHEN WE THINK THE FIRST AGREEMENT HAPPENED

24  BECAUSE THERE IS EVIDENCE THAT'S GOING TO BE FOUND

25  FOR THAT PRIOR PERIOD WHICH IS DIRECTLY RELEVANT TO

1    PROVING THE AGREEMENTS, PROVING THEIR PURPOSE, AND

2    PROVING THE EFFECT.

3              AND WE -- I HAVE BEEN IN A NUMBER OF

4    CASES WHERE THERE HAVE BEEN PREEXISTING

5    DEPARTMENT -- GOVERNMENTAL ACTIVITY, LIKE THE LCD

6    CASE WHERE WE GOT -- WE RECEIVED MATERIALS PRIOR --

7    ONE YEAR PRIOR TO THE FIRST DATE OF THE FIRST

8    GOVERNMENT SUBPOENA.

9              SO WE HAVEN'T HAD AN OPPORTUNITY TO BRIEF

10   THIS, YOUR HONOR, BUT WE CAN CERTAINLY SHOW YOU THE

11   AUTHORITY THAT, IN CLASS ACTIONS, AND IN PARTICULAR

12   ANTITRUST CLASS ACTIONS, THE COURTS, WHEN THEY HAVE

13   CONSIDERED THIS, REALIZE AND UNDERSTAND THAT THE

14   DISCOVERY PERIOD PREDATES, OR SHOULD PREDATE THE

15   FIRST AGREEMENT ALLEGED IN THE COMPLAINT.  SO

16   THAT'S WHAT I WOULD SAY ABOUT THE TIMING.

17             AND THEN I WOULD ALSO SAY THAT THE IDEA

18   THAT THEY WOULD HAVE TO GO THROUGH THE CORPUS OF

19   DOCUMENTS AND PULL THESE THINGS OUT WHEN THERE IS

20   ARGUABLE RELEVANCE TO OUR CORE ALLEGATIONS SEEMS TO

21   ME A WASTE OF TIME.

22             THE COURT:  ALL RIGHT.  WELL, THIS IS

23   WHAT I'M GOING TO DO:  I THINK DOCUMENT REQUESTS 1

24   THROUGH 7 CAN GO FORWARD, BUT I'M GOING TO GIVE THE

25   DEFENDANTS -- SINCE THERE WAS ALL THIS CONFUSION

1     ABOUT WHO WAS SUPPOSED TO DECIDE THIS, WAS THIS

2     GOING TO BE HEARD ON DECEMBER 8TH OR NOT, I'M GOING

3     TO GIVE YOU 30 DAYS FROM TODAY, WHICH I THINK WOULD

4     THEN BUMP IT OUT TO -- UNFORTUNATELY, THAT'S, LIKE,

5     THANKSGIVING, NOVEMBER 28TH.

6               DO YOU WANT TO BUMP IT OUT TO

7     NOVEMBER 30TH?

8               MR. SAVERI:  YOUR HONOR, I DON'T WANT --

9     IF WE WANT TO PUSH IT, WE DON'T PLAN ON LOOKING AT

10    THE DOCUMENTS OVER THANKSGIVING, SO IF THE

11    DEFENDANTS WANT TO TAKE UNTIL THE FOLLOWING WEEK,

12    THAT'S FINE.

13              MR. RUBIN:  SO, YOUR HONOR, RESPONSE IS

14    DUE BY NOVEMBER 30TH?

15              THE COURT:  BY NOVEMBER 30TH, THAT'S

16    RIGHT.

17              BUT YOU SHOULD INCLUDE -- WHILE YOU'RE

18    GOING TO PRESERVE ALL YOUR OBJECTIONS, I REALLY

19    DON'T WANT ANY GAME PLAYING.

20              I THINK THERE SHOULD BE A PRODUCTION THAT

21    ACCOMPANIES THOSE OBJECTIONS, AND WHAT YOU WITHHOLD

22    BETTER BE DARN WELL JUSTIFIED.

23              NOW, I'M NOT GOING TO DO ANY LIMITATION

24    TO 2004.  IT'LL BE FROM 2000 TO 2009 BECAUSE I

25    THINK HOW ANY COLLUSIVE CONDUCT STARTED, WHAT THOSE

1    CONVERSATIONS WERE, WHO WAS INVOLVED, WHAT

2    GENERATED THOSE AGREEMENTS, I THINK THAT'S RELEVANT

3    TO THE COMPLAINT.

4         NOW, EVERYTHING ELSE IS GOING TO BE

5    STAYED.  NO INTERROGATORIES, NO DEPOSITIONS.

6         ALL THE REST OF YOUR -- I DON'T SEE WHY

7    YOU NEED THESE, NUMBER 8, INDICES AND LISTS.

8         I JUST THINK THAT'S GOING TO INCLUDE A

9    LOT OF WORK PRODUCT AND I DON'T THINK THE

10   DEFENDANTS HAVE ANY OBLIGATION TO NICELY CATEGORIZE

11   THEIR DOCUMENT PRODUCTION FOR YOU ANYWAY.

12        A PRIVILEGE LOG, I THINK THAT'S OKAY.

13        MR. SAVERI:  THAT'S WHAT I WAS GOING TO

14   ASK ABOUT.

15        I MEAN, I ASSUME THAT, WITH THE

16   DEPARTMENT OF JUSTICE, THAT THERE WERE PRIVILEGE

17   LOGS PRODUCED.

18        I MEAN, MAYBE THEY DID NOT WITHHOLD

19   ANYTHING, BUT TO THE EXTENT THAT THOSE ARE IN

20   EXISTENCE, THOSE SHOULD BE TURNED OVER AS WELL.

21        THE COURT:  ALL RIGHT.  SO IT'S JUST

22   GOING TO BE DOCUMENT REQUESTS 1 THROUGH 7.

23        EVERYTHING ELSE IS STAYED, STAYED UNTIL

24   THE HEARING ON JANUARY 26TH OF 2012.

25        IT'S GOING TO BE PRODUCED NOVEMBER 30TH.

1          YOU CAN, OF COURSE, FILE YOUR OBJECTIONS.

2          THERE MAY NEED TO BE SOME MEET AND CONFER

3    SUBSEQUENT TO THAT, BUT I REALLY DON'T WANT TO SEE

4    ANY HIDE THE BALL ON THIS.

5          AND YOU'LL ALSO PRODUCE A PRIVILEGE LOG.

6          DO YOU NEED MORE THAN NOVEMBER 30TH FOR

7    THE PRIVILEGE LOG?

8          MR. RUBIN:  YES, YOUR HONOR, IF WE COULD.

9          THE COURT:  ALL RIGHT.

10          MR. RUBIN:  IF WE COULD HAVE -- I THINK

11    THE PRIVILEGE LOG OBVIOUSLY RELATES TO THE D.O.J.

12    PRODUCTION, SO JUST MAYBE ANOTHER WEEK OR TWO.

13          THE COURT:  I CAN GIVE YOU MORE THAN THAT

14    IF YOU NEED IT.

15          MR. RUBIN:  OKAY.  WELL, I MEAN, SOME

16    TIME BEFORE THE NEW YEAR IS FINE.

17          MR. SAVERI:  BUT, YOUR HONOR, I DON'T

18    UNDERSTAND NOW WHETHER THEY'RE GOING TO DO A NEW

19    PRIVILEGE LOG OR THEY'RE JUST GOING TO WAIT AND

20    PRODUCE IT.  IT DOESN'T TAKE THAT LONG TO PRODUCE

21    THE OLD PRIVILEGE LOG.

22          MR. RUBIN:  I ONLY SAY THAT BECAUSE, AT

23    LEAST IN MY EXPERIENCE WITH JUSTICE DEPARTMENT

24    PRODUCTIONS, I JUST DON'T KNOW FOR ALL DEFENDANTS

25    HOW COMPLETE THE PRIVILEGE LOG WAS WITH RESPECT TO

1    EVERY SINGLE DEFENDANT IN THEIR D.O.J. PRODUCTION.

2    I JUST DON'T KNOW THAT.

3            THE COURT:  I'M NOT SAYING THAT THEY -- I

4    MEAN, THEY HAVE A RIGHT TO MAKE A NEW LOG.

5            MR. SAVERI:  OKAY.

6            THE COURT:  NOW --

7            MR. SAVERI:  IT'S FINE, YOUR HONOR.  IT

8    REALLY IS.

9            THE COURT:  OKAY.  BUT I DON'T WANT A LOT

10   OF GAME PLAYING.  I DON'T WANT THEM WITHHOLDING A

11   LOT OF DOCUMENTS THAT REALLY SHOULD BE PRODUCED.

12           MR. SAVERI:  OKAY.  I'M NOT GOING TO PUSH

13   TOO HARD ON THAT.

14           THANK YOU, YOUR HONOR.

15           THE COURT:  YEAH.  AND I HOPE I'VE

16   CONVEYED THAT STRONGLY, THAT I REALLY DON'T WANT

17   ANY GAME PLAYING ON THE DISCOVERY, PLEASE.

18           MR. RUBIN:  YOUR HONOR, YOU HAVE.

19           THE COURT:  OKAY.

20           MR. RUBIN:  AND I APOLOGIZE.  I WAS

21   REALLY TRYING TO MAKE MORE THEORETICAL POINTS THAN

22   SPECIFIC ONES ABOUT THINGS THAT ARE OUTSIDE THE

23   REALM.

24           BUT WE DON'T HAVE ANY INTENTION OF DOING

25   ANYTHING -- IN FACT, WE THINK THE PRO COMPETITIVE

1    NATURE OF THESE DOCUMENTS IS SOMETHING THAT, IF THE

2    CASE WERE TO PROCEED, SHOULD BE FRONT AND CENTER IN

3    THE CASE.

4             THE COURT:  ALL RIGHT.  WHAT ABOUT

5    DECEMBER 16TH FOR YOUR PRIVILEGE LOG?  I COULD GIVE

6    YOU DECEMBER 19TH.  IT JUST GOES INTO THAT, YOU

7    KNOW, THE WEEK OF CHRISTMAS, NEW YEARS, HANUKKAH.

8             MR. RUBIN:  THAT'S FINE.  DECEMBER 16TH

9    IS FINE.

10            THE COURT:  OKAY.  SO PRIVILEGE LOG IS

11   GOING TO BE DECEMBER 16TH OF 2011.

12            OKAY.  ANYTHING ELSE ON THIS --

13            MR. RUBIN:  YOUR HONOR, WE WILL --

14            THE COURT:  -- ISSUE?

15            MR. RUBIN:  WE HAVE BEEN, AS A GROUP --

16   IT DOES TAKE US A LITTLE MORE TIME TO GET BACK TO

17   PLAINTIFFS AND FOR PLAINTIFFS TO GET BACK TO US

18   BECAUSE IT'S A LARGER GROUP.

19            THE COURT:  COORDINATION, SURE.

20            MR. RUBIN:  BUT WE ARE WORKING ON THE

21   PROTECTIVE ORDER AND I EXPECT WE'LL HAVE SOMETHING

22   BACK TO PLAINTIFFS SOON SO THAT WE GIVE THE COURT

23   AN OPPORTUNITY TO ENTER THAT WELL BEFORE THE

24   DOCUMENT PRODUCTION IS DUE.

25            THE COURT:  ALL RIGHT.  WELL, IF THERE'S

1    NO AGREEMENT BY NOVEMBER 30TH, YOU'RE JUST GOING TO

2    USE THE NORTHERN DISTRICT'S AGREEMENT UNTIL YOU GET

3    ONE IN PLACE.

4             NOT HAVING A PROTECTIVE ORDER CANNOT BE A

5    BASIS FOR WITHHOLDING A PRODUCTION.

6             MR. RUBIN:  WE'LL BE GETTING IT BACK TO

7    THEM SOON.

8             THE COURT:  ALL RIGHT.  I'M NOT GOING TO

9    PUSH ANY DATES ON THAT.  I'M GOING TO ASSUME THAT

10   YOU ALL WILL WORK THAT OUT AMONGST YOURSELVES.

11            OKAY.  ALL RIGHT.  I'D LIKE TO WORK OUT A

12   CASE SCHEDULE, UNDERSTANDING I DON'T KNOW AT THIS

13   POINT IF THE PLAINTIFFS WILL BE ABLE TO SURVIVE A

14   MOTION TO DISMISS, BUT I ANTICIPATE THAT EVEN IF

15   THEY DON'T THIS FIRST ROUND, I'D PROBABLY GIVE THEM

16   LEAVE TO AMEND SO WE'D PROBABLY CONTINUE IN THIS

17   CASE.

18            SO I'D LIKE TO SUGGEST THE FOLLOWING

19   SCHEDULE, AND I'LL GIVE YOU ALL TIME TO SPEAK UP ON

20   IT.

21            SO I WOULD ACTUALLY BE SETTING A TRIAL

22   OUT FOR JUNE 10TH OF 2013, WHICH IS A LOT FURTHER

23   OUT THAN I'D LIKE TO GO, BUT IT'S CONSIDERABLY

24   SHORTER THAN WHAT BOTH PARTIES HAVE ASKED.

25            BUT THAT WOULD STILL BE MORE THAN TWO

1    YEARS FROM WHEN THE FIRST PLAINTIFF FILED HIS

2    COMPLAINT.

3              AND JUST SORT OF WORKING BACK FROM THERE,

4    I WOULD SUGGEST A FURTHER CASE MANAGEMENT

5    CONFERENCE ON JANUARY 26TH, WHICH IS THE SAME DATE

6    AS THE HEARING ON THE MOTION TO DISMISS.

7              MR. SAVERI:  I'M SORRY.  NOW WE'RE

8    STARTING AT THE BEGINNING, SO IT WOULD BE --

9              THE COURT:  YEAH, I JUST WANTED TO GIVE

10   YOU AN IDEA.

11             MR. SAVERI:  I GOT IT.  I THOUGHT WE WERE

12   TALKING ABOUT THE PRETRIAL CONFERENCE.

13             THE COURT:  I CAN WORK BACKWARDS IF YOU

14   WANT.

15             MR. SAVERI:  YOU SHOULD WORK, FROM MY

16   PERSPECTIVE, IN WHATEVER ORDER YOU'RE COMFORTABLE

17   IN.

18             THE COURT:  DEADLINE TO AMEND THE

19   PLEADINGS, I'LL GO AHEAD AND SET THAT FOR MAY 15TH

20   OF 2012; MOTION FOR CLASS CERTIFICATION, JUNE 28TH

21   OF 2012; I WANT THE OPPOSITIONS AND REPLY TO BE

22   DONE PER THE LOCAL RULES; THE HEARING ON CLASS CERT

23   WOULD BE AUGUST 2ND OF 2012 AT 2:00 O'CLOCK; CLOSE

24   OF FACT DISCOVERY WOULD BE NOVEMBER 30TH OF 2012.

25             I DIDN'T UNDERSTAND THIS PRODUCTION OF

1    EXPERT MATERIALS.  I THINK YOU SHOULD PRODUCE

2    WHATEVER YOUR EXPERT RELIED ON WITH HIS REPORT OR

3    HER REPORT.

4              MR. SAVERI:  I'M SORRY.  WITH THE REPORT?

5              THE COURT:  YEAH.

6              MR. SAVERI:  I CAN EXPLAIN THAT IF YOU'RE

7    INTERESTED.

8              THE COURT:  YEAH, WHAT IS THAT?

9              MR. SAVERI:  IN -- WE'RE REALLY TALKING

10   ABOUT EXPERT ECONOMISTS, AND SO THE WAY, JUST AS A

11   PRACTICAL MATTER, IT USUALLY WORKS IS THAT ON THE

12   DAY THAT IT'S DUE, THE ACTUAL PHYSICAL REPORT IS

13   PRODUCED.

14             BUT BECAUSE THE ECONOMISTS HAVE MATERIALS

15   THEY RELY ON, INCLUDING THEIR CALCULATIONS,

16   SOMETIMES WITH THE PRESS OF TIME, IT'S JUST TOO

17   MUCH TO DO THAT DAY.

18             SO I'VE FREQUENTLY ENTERED INTO AN

19   AGREEMENT WITH THE OTHER SIDE TO GIVE US A COUPLE

20   DAYS TO KIND OF GET THE WORK PAPERS OUT, BECAUSE IT

21   JUST MAKES LIFE A LITTLE BIT MORE CIVILIZED AND

22   EASY FOR EVERYBODY BECAUSE THEY HAVE THE REPORT,

23   AND THEN A COUPLE DAYS THEREAFTER, THEY KIND OF GET

24   THE BACK-UP.

25             THAT'S THE IDEA.  I DON'T KNOW IF IT'S A

1    GREAT IDEA.

2              THE COURT:  I'M NOT GOING TO ORDER THAT.

3    IF YOU WORK THAT OUT WITH THE DEFENDANTS, THAT'S UP

4    TO YOU.

5              MR. SAVERI:  FINE.

6              THE COURT:  OKAY.  SO EXCHANGE OF

7    REBUTTAL REPORTS JANUARY 4TH OF 2013.

8              MR. SAVERI:  CAN WE -- THERE WAS A SLIGHT

9    DIFFERENCE BETWEEN THE PLAINTIFFS' AND DEFENDANTS'

10   APPROACH ON THAT, AND AT LEAST I WANT TO MAKE THAT

11   CLEAR.

12             THE COURT:  UM-HUM.

13             MR. SAVERI:  THE WAY WE HAD INTENDED IT,

14   WHAT WE BELIEVE IS CONSISTENT WITH RULE 26 AND

15   ORDINARY PRACTICE, IS THAT THERE WOULD BE A

16   SIMULTANEOUS PRODUCTION INVOLVING EXPERT REPORTS ON

17   A SINGLE DAY, AND THEN THE -- ALL SIDES WOULD HAVE

18   AN OPPORTUNITY TO LOOK AT THAT AND TAKE DISCOVERY

19   AND THEN, IF THEY NEED TO, DO A REAL REBUTTAL

20   REPORT.

21             AS I UNDERSTAND THE DEFENDANTS' PROPOSAL,

22   THEY WOULD LIMIT THE INITIAL PRODUCTION TO ONLY

23   EXPERTS IN SUPPORT OF PARTIES OR ON ISSUES WHERE

24   THE PARTY HAS THE BURDEN OF PROOF, AND THEN THERE

25   WOULD ONLY BE A REBUTTAL REPORT TO THOSE -- TO

1    THOSE.

2              SO, FOR EXAMPLE, IF --

3              THE COURT:  THAT MAKES SENSE TO ME.

4              MR. SAVERI:  WELL, WHAT THAT WOULD MEAN,

5    THOUGH, IS THAT IF I DID NOT BEAR THE BURDEN OF

6    PROOF --

7              THE COURT:  UM-HUM.

8              MR. SAVERI:  NO.  IF I DID BEAR THE

9    BURDEN OF PROOF, THE DEFENDANT -- AND THE

10   DEFENDANTS --

11             THE COURT:  JUST DO A REBUTTAL REPORT.

12             MR. SAVERI:  SO I WOULDN'T -- AND I

13   WOULDN'T HAVE AN OPPORTUNITY TO RESPOND TO THAT.

14             OR -- SO I THINK IT MAKES MORE SENSE IF,

15   FOR EXAMPLE, WE'RE GOING TO HAVE AN EXPERT REPORT

16   ON DAMAGES, OKAY, EACH SIDE IS GOING TO PRODUCE AN

17   EXPERT REPORT ON DAMAGES; PRESUMABLY WE'RE GOING TO

18   SAY THAT THE DAMAGES WERE HIGH AND THERE WERE A

19   LOT; DEFENDANTS ARE GOING TO SAY SOMETHING LIKE,

20   "WHAT DAMAGES?  THERE WEREN'T ANY."

21             AND SO I THINK IT MAKES SENSE FOR THE

22   COURT TO HAVE, AND THE PARTIES, TO HAVE THE BENEFIT

23   OF A RESPONSE TO THAT, AND IT'S NOT CLEAR TO ME,

24   UNDER THE DEFENDANT'S PROPOSAL, WHO GETS TO FILE

25   WHICH REPORT WHEN.

```
 1            SO, I MEAN, THAT -- THAT'S WHY WE'VE
 2   PROPOSED OUR SYSTEM, WHICH I THINK IS, FRANKLY,
 3   TAKEN FROM THE CALIFORNIA, YOU KNOW, STATE
 4   PROCEDURE AND I FOUND THAT THAT WORKS PRETTY WELL.
 5            SO --
 6            THE COURT:  I DON'T LIKE THAT.
 7            MR. SAVERI:  OKAY.
 8            THE COURT:  OKAY?  ALL RIGHT.
 9            I MEAN, I ASSUME DAMAGES IS YOUR BURDEN.
10   YOU DO THE OPENING REPORT, THEY DO THE REBUTTAL,
11   YOU'LL GET TO DO DEPOSITIONS OF EACH OTHER'S
12   EXPERTS.
13            I DON'T WANT TO SEE A WHOLE BUNCH OF
14   REPLY REBUTTAL REPORTS.
15            MR. SAVERI:  OKAY.
16            THE COURT:  YEAH, OKAY.
17            SO THE INITIAL EXPERT REPORT, AS YOU
18   SAID, WHOEVER HAS GOT THE BURDEN IS GOING TO DO THE
19   OPENING EXPERT REPORT, DECEMBER 14TH; THE REBUTTAL
20   EXPERT REPORT, JANUARY 4TH -- NOW, THAT'S KIND OF
21   PAINFUL; CLOSE OF EXPERT DISCOVERY, JANUARY 25TH.
22            NOW, OTHER THAN DAMAGES, WHAT OTHER
23   EXPERTS DO YOU --
24            MR. SAVERI:  I'M SORRY.  YOU GOT AHEAD OF
25   ME.  JANUARY 26?  I'M SORRY, YOUR HONOR.
```

1     THE COURT:  OF 2013.

2     MR. SAVERI:  AND I'M SORRY.  WHAT WAS

3 YOUR QUESTION?

4     THE COURT:  WHAT EXPERTS DO YOU ENVISION?

5     MR. SAVERI:  I THINK, FROM THE

6 PLAINTIFFS' PERSPECTIVE, THAT WE WOULD -- IT IS

7 LIKELY THAT WE WILL HAVE AN EXPERT ON DAMAGES.

8     THE COURT:  UM-HUM.

9     MR. SAVERI:  WE MAY HAVE AN INDUSTRY

10 EXPERT THAT TALKS ABOUT THESE PARTICULAR MARKETS OR

11 LABOR MARKETS.

12     I MEAN, THERE ARE CERTAIN TYPES OF EXPERT

13 TESTIMONY THAT DOESN'T RELATE TO THE ACTUAL DAMAGES

14 THAT WE MIGHT WANT TO OFFER AT TRIAL, THAT TALK

15 ABOUT HOW THESE MARKETS WORK.

16     SO IT WOULD BE ABOUT THE INDUSTRY AND THE

17 SHAPE OF THE MARKET.

18     SO THAT'S GENERALLY WHAT -- IF YOU'RE

19 ASKING ME TO KIND OF LIMIT OR IDENTIFY SOMETHING,

20 THAT IS WHAT I WOULD IDENTIFY NOW BEFORE ANY

21 DISCOVERY HAS BEEN TAKEN.

22     SO I GUESS WHAT I WOULD SAY IS WE WOULD

23 CONTEMPLATE AT LEAST A DAMAGE EXPERT, AND MAYBE ONE

24 OR TWO MORE, BUT WE HAVEN'T FIGURED THAT OUT YET,

25 YOUR HONOR.

1          THE COURT:  OKAY.  WHAT ABOUT FROM THE

2     DEFENSE?  OBVIOUSLY YOU'D DO A REBUTTAL.

3          MR. RUBIN:  RIGHT.  AND I THINK THAT

4     THERE'S AT LEAST SOME CONTEMPLATION, IF THE CASE

5     WERE TO PROCEED, OF A LABOR ECONOMIST.

6          THE COURT:  OKAY.

7          MR. RUBIN:  SOMEBODY WHO COULD SPEAK TO

8     LABOR MARKETS GENERALLY, AND PERHAPS THE MARKET IN

9     PARTICULAR REGIONS OR AREAS IN PARTICULAR, JOB

10    MOBILITY, THOSE KINDS OF ISSUES.

11         THE COURT:  OKAY.  ALL RIGHT.

12         MR. SAVERI:  WE WOULD HOPE, OF COURSE,

13    THAT THE DEFENDANTS WOULD TRY TO GET TOGETHER AND

14    NOT EACH FILE ONE REPORT ON ONE OF THOSE SUBJECTS.

15         MAYBE IT'S TOO MUCH TO ASK FOR, TO TALK

16    ABOUT RIGHT NOW, BUT --

17         MR. RUBIN:  I THINK THAT IS A LITTLE

18    PREMATURE TO GET INTO NOW.

19         THE COURT:  YEAH.

20         MR. SAVERI:  OKAY.

21         THE COURT:  OKAY.  LAST DAY TO FILE

22    DISPOSITIVE MOTIONS, FEBRUARY 7TH OF 2013.

23         OBVIOUSLY IF YOU WANT TO FILE -- IF

24    DEFENSE WANTS TO FILE ONE SOONER, YOU CAN DO IT AT

25    ANY TIME.  OKAY?

1          MR. RUBIN:  OKAY.

2          THE COURT:  THAT'S THE LAST DATE.

3          MR. SAVERI:  FEBRUARY 7TH?

4          THE COURT:  OF 2013.

5          BRIEFING IS PER THE LOCAL RULES; THE

6     HEARING WOULD BE MARCH 14 OF 2013 AT 1:30; PRETRIAL

7     CONFERENCE WOULD BE MAY 15TH, 2013 AT 2:00 O'CLOCK.

8          AND I SET IT TWO MONTHS APART SO THAT I

9     CAN ISSUE YOU ORDERS ON THOSE MOTIONS.

10         AND THEN MY STANDING ORDER ON JURY TRIALS

11    REQUIRES THAT YOU MEET AND CONFER 21 DAYS BEFORE

12    THE PRETRIAL CONFERENCE AND DO ALL THE PRETRIAL

13    FILINGS BEFORE THE PRETRIAL CONFERENCE.

14         SO I WAS TRYING TO BUILD IN A LITTLE

15    TIME.  MAYBE YOU MIGHT WANT TO RESOLVE THE CASE

16    AFTER YOU GET THE SUMMARY JUDGMENT RULING.

17         MR. SAVERI:  WE HAD BUILT A LITTLE BIT

18    MORE IN JUST TO GIVE THE COURT MORE TIME TO DEAL

19    WITH THAT, BUT IF TWO MONTHS IS WHAT YOU'RE

20    COMFORTABLE WITH YOUR HONOR, THAT'S FINE.

21         THE COURT:  THAT'S IT.

22         MR. SAVERI:  I MEAN, JUST ON SUMMARY

23    JUDGMENT, WE MIGHT BE FILING OUR OWN DISPOSITIVE

24    MOTIONS, TOO.

25         THE COURT:  THAT'S FINE.  YOU'LL HAVE TO

1    CALL MS. PARKER-BROWN AND GET THE HEARING DATE.

2              MR. TUBACH:  GOOD AFTERNOON, YOUR HONOR.

3    MICHAEL TUBACH ON BEHALF OF APPLE.

4              I HEARD THE COURT'S SCHEDULE.  THOSE ARE

5    ALL THE DATES THAT THE COURT WAS GOING TO SET?

6              THE COURT:  WELL, THE JURY TRIAL, 15

7    DAYS, WOULD BE JUNE 10TH, 2013 AT 9:00 A.M.

8              SO EVERYTHING IS, YOU KNOW, MORE THAN, I

9    GUESS, WHAT, A YEAR AND EIGHT, NINE MONTHS OUT.

10             MR. TUBACH:  THERE'S ONLY ONE DATE IN

11   THERE, YOUR HONOR, THAT I WANTED TO ASK THE COURT

12   TO TRY TO CHANGE.

13             THE COURT:  OKAY.

14             MR. TUBACH:  AND THAT IS THAT WE -- TO DO

15   THE BRIEFING UNDER THE LOCAL RULES ON A CLASS CERT

16   MOTION IS VERY DIFFICULT.

17             WE HAVE TO WORK -- IT IS AN INTENSELY

18   ANALYTICAL PROCESS.  WE HAVE TO WORK WITH EXPERTS,

19   WE HAVE TO SEE WHAT IT IS THAT THE PLAINTIFFS FILE,

20   AND WE HAVE SEVEN DEFENDANTS HERE WHO ARE ALL GOING

21   TO BE KEENLY INTERESTED IN THAT MOTION.

22             WE HAD ASKED -- THE PLAINTIFFS HAD

23   OFFERED GIVE US A MONTH TO RESPOND.

24             WE HAD -- WE, ROUTINELY IN ANTITRUST

25   CASES, GET 60 DAYS JUST BECAUSE IT'S SUCH INTENSIVE

1     EXPERT WORK THAT DOING SO ON THE LOCAL RULES UNDER

2     NORMAL BRIEFING IS GOING TO BE REALLY DIFFICULT FOR

3     US.

4              THE COURT:  ALL RIGHT.  WELL, I KIND OF

5     WOULD LIKE TO KEEP THIS TRIAL DATE, SO TELL ME IF I

6     CAN SHAVE OFF -- HOW MUCH FACT DISCOVERY DO YOU

7     THINK YOU'LL NEED AFTER THE CLASS CERT ORDER?

8              MR. TUBACH:  WELL, THOSE BOTH CAN BE

9     GOING ON -- THERE WON'T BE A STAY ON DISCOVERY,

10    OBVIOUSLY, WHILE CLASS CERT IS BEING BRIEFED.

11             THE COURT:  RIGHT.

12             MR. TUBACH:  PERHAPS THE PLAINTIFFS COULD

13    FILE THEIR CLASS CERT MOTION EARLIER TO GIVE US

14    THOSE 60 DAYS.

15             MR. SAVERI:  YOUR HONOR, I THINK THAT IF

16    THE DEFENDANTS BELIEVE THAT THEY NEED MORE TIME --

17    AND I WOULD CONCEDE AND AGREE WITH MR. TUBACH THAT

18    IN CASES FREQUENTLY THERE'S MORE TIME GIVEN -- BUT

19    THAT WE DO THAT IN A WAY THAT DOESN'T MOVE UP OUR

20    DATE.

21             BUT ASSUMING THAT CLASS CERTIFICATION IS

22    PROCEEDING WHILE WE'RE DOING OTHER WORK IN THE

23    CASE, THE WAY TO SOLVE THAT PROBLEM WOULD BE TO

24    LEAVE THE JUNE 28TH DATE AND THEN MOVE OUT THE

25    BRIEFING AND THE HEARING.

```
 1                THE COURT:  ALL RIGHT.

 2                MR. TUBACH:  OR A COMBINATION OF THOSE

 3     TWO.

 4                THE COURT:  I'M NOT GOING TO MOVE THE

 5     FACT DISCOVERY CUT OFF.  THAT WILL REMAIN

 6     NOVEMBER 30TH.

 7                IS THAT OKAY?

 8                MR. TUBACH:  THAT WOULD BE FINE.

 9                MR. SAVERI:  THAT'S FINE.

10                THE COURT:  ALL RIGHT.  SO JUNE 28TH.

11                WHAT IF I JUST -- WHAT IF YOU HAD UNTIL

12     JULY 29TH?  A FULL MONTH?

13                MR. TUBACH:  IF I CAN GET MORE, I'LL TAKE

14     IT.  IF THAT'S ALL I CAN GET, I'LL TAKE THAT, TOO.

15                THE COURT:  LET'S SEE.  WELL, HOW MUCH

16     TIME -- THIS IS THE -- MY CONCERN IS THIS IS

17     PROBABLY GOING TO BE A PRETTY COMPLEX CLASS CERT

18     MOTION.  I MAY NEED AT LEAST A MONTH TO ISSUE YOU

19     AN ORDER, AND I THOUGHT THAT YOU MAY WANT SOME MORE

20     FACT DISCOVERY BEFORE -- I MEAN AFTER YOU GET THE

21     CLASS CERT ORDER.

22                SO HOW MUCH TIME DO YOU NEED?  BECAUSE I

23     WANT TO KEEP THIS NOVEMBER 30TH FACT DISCOVERY CUT

24     OFF.

25                MR. TUBACH:  I AM WONDERING IF YOU COULD
```

```
1    MOVE UP, JUST A LITTLE BIT TO MR. SAVERI'S

2    DISADVANTAGE, MAYBE MOVE UP THE FILING DEADLINE

3    JUST TWO OR THREE WEEKS AND THAT WOULD GIVE US A

4    LITTLE ADDITIONAL BREATHING ROOM.

5              I THINK THAT MIGHT BE ACCEPTABLE TO

6    MR. SAVERI.

7              MR. SAVERI:  I PREFER TO PUSH OUT THE

8    OTHER END AND TRY TO KEEP THE, THAT DATE SO THAT

9    WE'VE HAD ENOUGH -- I MEAN, WE'RE TALKING ABOUT A

10   DATE THAT'S, YOU KNOW, ABOUT SEVEN MONTHS FROM NOW

11   AND WE HAVEN'T HAD ANY DISCOVERY RIGHT NOW.

12             SO I WANT TO -- YOU KNOW, PARTICULARLY

13   IF --

14             THE COURT:  MY ONLY OTHER CONCERN -- I'M

15   SORRY TO INTERRUPT YOU --

16             MR. SAVERI:  I'M SORRY, YOUR HONOR.

17             THE COURT:  -- FOR NOT PUSHING THE CLASS

18   CERT DATE TOO MUCH IS LET'S SAY THEY GET LEAVE TO

19   AMEND AND YOU FILE A SECOND MOTION TO DISMISS.

20             MR. TUBACH:  RIGHT.

21             THE COURT:  THEN WE MAY NOT HAVE THE

22   FINAL PLEADINGS UNTIL MAYBE, YOU KNOW, MID TO LATE

23   SPRING, AND SO THAT'S MY ONLY CONCERN ABOUT NOT

24   WANTING TO PUSH CLASS CERT UP TOO MUCH.

25             MR. TUBACH:  IF WE COULD HAVE SEVEN
```

1    WEEKS, YOUR HONOR, OR SIX, WE CAN LIVE WITH THAT.

2              THE COURT:  OKAY.

3              MR. TUBACH:  I'LL TAKE WHAT I CAN GET.

4              MR. SAVERI:  YOU KNOW -- WELL, OKAY.  WE

5    SHOULD TALK ABOUT THE DATES AND THEN, YOU KNOW, I

6    WOULD -- I WOULD PRESUME MR. TUBACH WOULDN'T

7    QUARREL WITH US HAVING SOME MORE TIME TO DEAL WITH

8    HIS OPPOSITION.

9              MR. TUBACH:  NO, WE WOULD NOT.

10             MR. SAVERI:  AND EVEN IN OUR SCHEDULE, WE

11   HAD ASKED FOR ONLY A MONTH, WHICH I THINK IS ON THE

12   LIGHT SIDE, BUT WE'RE PREPARED TO STAND BY THE

13   MONTH AS A TIME TO DO THE REPLY.

14             AND I GUESS IF WE'RE NOT GOING TO DO

15   THAT, THEN I THINK WE SHOULD PROBABLY SHRINK THE

16   TIME TO DO THE OPPOSITION SO WE CAN KEEP THE

17   SCHEDULE.

18             THE COURT:  OKAY.  WHAT IF -- OKAY.  SO

19   OPENING CLASS CERT MOTION IS GOING TO BE FILED

20   JUNE 28TH; THE CLASS CERT OP WOULD BE DUE

21   AUGUST 2ND; THE REPLY WOULD BE DUE AUGUST 30TH.

22             AND THEN LET ME ASK IF MS. PARKER-BROWN

23   WOULD PLEASE FIND ME A NEW HEARING DATE MAYBE

24   MID-SEPTEMBER.  I DON'T KNOW WHAT OUR --

25             THE CLERK:  OF 2012?

1          THE COURT:  OF 2012, PLEASE.  EITHER

2     MAYBE THE 13TH OR 20TH.  THE 20TH MAYBE.

3          THE CLERK:  THE 13TH AND THE 20TH ARE

4     PRETTY WIDE OPEN.

5          MR. TUBACH:  YOU MIGHT WANT TO PICK THE

6     20TH, YOUR HONOR, GIVEN THE AMOUNT OF BRIEFING

7     THAT'S GOING TO BE COMING.

8          THE COURT:  I'M JUST WARNING YOU THAT I

9     MAY NOT ISSUE AN ORDER UNTIL MID-OCTOBER AND YOU

10    HAVE A NOVEMBER 30TH CUT OFF DATE.

11         MR. TUBACH:  THAT'S OKAY FROM OUR POINT

12    OF VIEW.

13         THE COURT:  THAT'S OKAY FOR EVERYBODY?

14         ALL RIGHT.  WE'LL SET IT FOR

15    SEPTEMBER 20TH, THEN.  THAT'LL BE --

16         MR. SAVERI:  THE KEY FROM THE PLAINTIFFS'

17    PERSPECTIVE WOULD BE TO HAVE THAT ORDER OUT AND

18    GIVE CLASS MEMBERS SUFFICIENT TIME TO OPT OUT

19    BEFORE THE TRIAL DATE, AND THAT WOULD -- THAT'S --

20         MR. TUBACH:  THAT'S MONTHS AND MONTHS

21    AWAY.

22         MR. SAVERI:  SO I THINK WE'RE GOOD.

23         THE COURT:  SO THEN IT'LL BE JUNE 28TH

24    AND AUGUST 2ND AND AUGUST 30TH AND SEPTEMBER 20TH

25    AT 1:30.

1           MR. SAVERI:  1:30?

2           THE COURT:  YEAH, NOT 2:00 O'CLOCK.

3           MR. SAVERI:  OKAY.

4           THE COURT:  OKAY.  ANY OTHER DATES THAT

5    YOU WANTED TO CHANGE?

6           MR. TUBACH:  THAT WAS ALL I WANTED TO

7    ADDRESS.

8           THANK YOU, YOUR HONOR.

9           THE COURT:  OKAY.  ANY OTHERS?

10          MR. SAVERI:  I -- JUST WILL YOU GIVE ME A

11   SECOND, YOUR HONOR, TO KIND OF GO THROUGH MY NOTES?

12          THE COURT:  YEAH.

13          NOW, LET ME ASK ONE MORE QUESTION --

14   OKAY, GO AHEAD.

15          MR. SAVERI:  I'M SORRY, YOUR HONOR.

16          WE HAD -- WE HAD BOTH PUT DATES IN OUR

17   SCHEDULE ABOUT THE SUBSTANTIAL COMPLETION OF THE

18   ROLLING PRODUCTION OF DOCUMENTS OTHER THAN THE

19   D.O.J., AND UNLESS I MISSED IT, YOU HAVEN'T SPOKEN

20   ABOUT THAT, AND THAT'S IMPORTANT AS A MILESTONE.

21          YOU KNOW, I THINK IT WOULD BE USEFUL TO

22   SET IT NOW, OR PERHAPS IF WE'RE COMING BACK HERE

23   SOON, WE COULD TALK ABOUT IT THEN.

24          THE COURT:  I WOULD SET IT FOR JUNE 15TH

25   OF 2012.

1            MR. SAVERI:  OKAY.

2            THE COURT:  LET ME ASK, YOU KNOW, IN THE

3    D.C. CASE, THERE ALREADY ARE INJUNCTIONS, SO ISN'T

4    YOUR INJUNCTION REQUEST DUPLICATIVE?  I GUESS I

5    DON'T SEE WHY YOU'RE MAKING AN INJUNCTION REQUEST.

6            IT'S MOSTLY MONEY THAT YOU WANT, RIGHT?

7            MR. SAVERI:  OUR -- WE WOULD SAY, YES,

8    OUR CLAIM IS REALLY ABOUT DAMAGES.

9            THE COURT:  YEAH.

10            MR. SAVERI:  WE DON'T -- IF THE

11    DEPARTMENT OF JUSTICE INJUNCTION AFFECTS THIS AND

12    ENTERS INTO SOME KIND OF INJUNCTIVE RELIEF THAT

13    STOPS THE PRACTICE, THERE'S PROBABLY NOTHING FOR US

14    TO ARGUE ABOUT AND TO GET FROM YOU, AND I -- AND

15    SO --

16            THE COURT:  IS THERE ANYTHING ABOUT THE

17    INJUNCTION IN THE D.C. CASE THAT IS NOT

18    SATISFACTORY TO YOU?  IT SEEMS LIKE IT COVERS WHAT

19    YOU WANT IT TO COVER.

20            MR. SAVERI:  RIGHT NOW I BELIEVE THE

21    ANSWER IS -- I BELIEVE THE ANSWER IS YES, I THINK

22    IT COULD SATISFY -- IS SATISFACTORY.

23            THE COURT:  OKAY.  I'M JUST WONDERING,

24    CAN WE GET A STIPULATION AND AT LEAST ELIMINATE

25    THAT SO I HAVE TO DO LESS WORK IN JANUARY AND

1    CHAMBERS -- WASN'T THAT ONE OF THE ISSUES, WAS THE

2    INJUNCTION DUPLICATIVE?

3              MR. RUBIN:  YES.

4              MR. SAVERI:  YOUR HONOR, WHAT I WOULD SAY

5    ABOUT THAT IS I WOULD LIKE TO LOOK AT THE

6    COMPLAINT, HAVE A CHANCE TO LOOK AT MY NOTES AND

7    LOOK AT THE INJUNCTION, AND I'M PREPARED TO TALK

8    WITH THE DEFENDANTS IN THE NEXT WEEK OR SO AND SEE

9    IF WE CAN DO A LITTLE CLEARING OUT OF THE

10   UNDERBRUSH ON THIS.

11             THE COURT:  OKAY.  I WANT TO SET A

12   DEADLINE THEN, FOR ME, TOO, BECAUSE I'LL TELL YOU

13   RIGHT NOW, IT LOOKS DUPLICATIVE TO ME AND IF I WERE

14   TO RULE NOW, I WOULD SAY STRIKE IT.

15             AND I HOPE -- I WANT THE SAME

16   REASONABLENESS THAT I'VE DEMANDED ON THE

17   DEFENDANTS' SIDE FOR THE PLAINTIFF.  I DON'T WANT

18   YOU TO BE MAKING A LOT OF COURT RESOURCES BE SPENT

19   ON REALLY FRIVOLOUS THINGS THAT THE PARTIES SHOULD

20   BE REASONABLE AND NOT FIGHTING ABOUT.

21             MR. SAVERI:  ABSOLUTELY, YOUR HONOR.

22             THE COURT:  OKAY.  SO WHEN ARE YOU GOING

23   TO GIVE ME THAT STIPULATION STRIKING THOSE

24   INJUNCTIONS?

25             MR. SAVERI:  WELL, I THINK WHAT I'D SAY

1    IS WE CAN TALK ON -- IT'S WEDNESDAY NOW.  WE CAN

2    TALK --

3              THE COURT:  YEAH.

4              MR. SAVERI:  -- EARLY NEXT WEEK AND WE

5    CAN LET YOU KNOW BY THE END OF NEXT WEEK.

6              THE COURT:  OKAY.  SO --

7              MR. SAVERI:  SO THAT SOUNDS LIKE TEN

8    DAYS, OR --

9              THE COURT:  OKAY.  END OF NEXT WEEK WOULD

10   BE NOVEMBER 4TH.

11             MR. TUBACH:  THAT'S FINE.

12             THE COURT:  OKAY.  SO BY NOVEMBER 4TH OF

13   2011, I WANT YOU TO FILE EITHER A STIPULATION

14   DISMISSING THE REQUEST FOR -- THE PRAYER FOR

15   INJUNCTIVE RELIEF; AND IF YOU'RE NOT GOING TO DO

16   THAT, YOU BETTER EXPLAIN WHY YOU NEED ONE AND WHY

17   THE INJUNCTIONS ENTERED IN THE DISTRICT OF COLUMBIA

18   ARE NOT SUFFICIENT.

19             MR. SAVERI:  OKAY.

20             THE COURT:  OKAY?

21             MR. SAVERI:  IF WE WERE TO DO THAT, DO

22   YOU WANT US TO DO IT INFORMALLY BY A LETTER OR --

23             THE COURT:  NO.  JUST FILE A STIPULATION

24   AND E-FILE IT.

25             MR. SAVERI:  OKAY.

```
 1              THE COURT:  BUT, PLEASE, I REALLY DO
 2    NOT --
 3              MR. SAVERI:  I HEAR YOU.
 4              THE COURT:  -- WANT A LOT OF UNNECESSARY
 5    LITIGATION ON THINGS THAT PEOPLE ARE TAKING
 6    UNREASONABLE POSITIONS ON, AND I THINK IT'S
 7    UNREASONABLE FOR YOU TO ASK FOR A DUPLICATIVE
 8    INJUNCTION.
 9              MR. SAVERI:  I HEAR YOU, YOUR HONOR.
10              THE COURT:  OKAY.  SO -- ALL RIGHT.  LET
11    ME SEE WHAT ELSE.
12              ALL RIGHT.  SO LET ME JUST DO MY OWN
13    HOUSEKEEPING HERE.
14              I'M VACATING -- I'M VACATING THE
15    DECEMBER 8TH HEARING, THE HEARING ON THE MOTION FOR
16    TEMPORARY STAY.  OKAY?  IT IS GRANTED IN PART AND
17    DENIED IN PART PER WHAT I'VE ALREADY STATED.  OKAY?
18              AND I'LL ISSUE A CASE MANAGEMENT ORDER
19    THAT SORT OF LAYS THIS OUT.
20              ALL RIGHT.  SO THAT'S OFF.
21              ALL RIGHT.  NOW, YOU HAVE A FOIA REQUEST
22    THAT'S NOW BEFORE JUDGE LLOYD, AND I THINK THAT'S
23    NOW BEEN MOOTED SINCE I'M BASICALLY ORDERING THE
24    PRODUCTION OF THOSE D.O.J. DOCUMENTS.  ALL RIGHT?
25              MR. SAVERI:  I THINK THAT'S RIGHT, YOUR
```

1    HONOR.

2                THE COURT:  SO I WANT YOU TO WITHDRAW

3    THAT MOTION, OR I GUESS DISMISS THAT CASE.

4                IS THAT RIGHT?

5                MR. SAVERI:  YEAH, WE'VE DISMISSED --

6    IT'S A COMPLAINT, SO WE WOULD DO SOME KIND OF

7    VOLUNTARY DISMISSAL OF THE CASE.

8                THE COURT:  OKAY.  AND GIVE ME A DATE

9    WHEN YOU'RE GOING TO DO THAT.

10               MR. SAVERI:  I DON'T KNOW HOW LONG IT'S

11   GOING TO -- HOW ABOUT -- CAN I HAVE JUST A WEEK,

12   MAYBE THE MIDDLE OF NEXT WEEK?

13               THE COURT:  OKAY.  NOVEMBER 4TH THEN.

14   OKAY.

15               ALL RIGHT.  NOW, WHAT ABOUT INITIAL

16   DISCLOSURES?

17               I KNOW THE OTHER THING YOU WANTED WAS

18   PERCIPIENT WITNESSES.

19               I THINK INITIAL DISCLOSURES ARE FAIR GAME

20   AND I'M NOT GOING TO STAY THAT.

21               MR. TUBACH:  YOUR HONOR, WE'VE ALREADY

22   DONE THEM.

23               MR. RUBIN:  WE'VE DONE THEM.

24               THE COURT:  OH, YOU HAVE?

25               MR. SAVERI:  WE GOT THEM, SO THAT SOLVED

                                                      82

1    THAT.

2              THE COURT:  ALL RIGHT.  SO THAT'S

3    RESOLVED.

4              NOW, LET ME ASK, DO YOU ANTICIPATE THERE

5    BEING OTHER SORT OF COPYCAT COMPLAINTS FILED?  LIKE

6    IS THIS GOING TO BE AN MDL AND WHAT --

7              MR. TUBACH:  ONE CAN NEVER GUESS, YOUR

8    HONOR.

9              SO FAR THE ONLY COMPLAINTS THAT HAVE BEEN

10   FILED HAVE BEEN FILED BY MR. SAVERI.  THERE ARE

11   FIVE DIFFERENT COMPLAINTS FILED BY HIM, AT LEAST SO

12   FAR.  WE HAVEN'T SEEN ANY OTHERS.

13             THE COURT:  ALL RIGHT.

14             MR. TUBACH:  THERE'S NO GUARANTEE.

15             IF THAT DOES HAPPEN, WE WOULD -- IT WOULD

16   BE EASIER TO TRY TO CONVINCE THEM TO COME TO THE

17   NORTHERN DISTRICT VOLUNTARILY, BUT IF NOT, WE MIGHT

18   HAVE TO INVOKE THE MDL.

19             THE COURT:  BUT THERE'S NONE IN

20   PUERTO RICO OR NOTHING --

21             MR. TUBACH:  NO.

22             MR. SAVERI:  NO GUAM, NO VIRGIN ISLANDS.

23             FROM MY PERSPECTIVE, THIS IS THE

24   UNIVERSE.

25             THE COURT:  OKAY.

1        MR. SAVERI:  I MEAN, EVERYBODY WHO'S

2    INTERESTED IS HERE NOW.

3        THE COURT:  OKAY.  ALL RIGHT.

4        NOW, THE OTHER QUESTION IS -- AND I WANT

5    YOU ALL TO EDUCATE ME, AND I'M SORRY FOR BEING

6    BLUNT, BUT, I MEAN, I ASSUME THESE CASES NORMALLY

7    SETTLE AND DON'T GO TO TRIAL.

8        AT WHAT POINT DO THEY TEND TO DO THAT?

9    IS IT AFTER -- WOULD YOU BE OPEN TO EXPLORING ADR

10   IF THEY CAN SURVIVE A MOTION TO DISMISS?

11       DO YOU WANT TO WAIT UNTIL CLASS CERT

12   BRIEFING?

13       AT WHAT POINT DOES IT MAKE SENSE TO HAVE

14   AN ATTEMPT AT A RESOLUTION?

15       MR. TUBACH:  YOUR HONOR, I'VE DONE A --

16       MR. SAVERI:  YOUR HONOR, LET ME --

17       THE COURT:  YEAH.

18       MR. SAVERI:  FROM THE PLAINTIFFS

19    PERSPECTIVE, I WOULD SAY A COUPLE THINGS.

20       WE ARE ALWAYS WILLING TO TALK TO THE

21   DEFENDANTS AS A GROUP OR INDIVIDUALLY ABOUT

22   RESOLUTION.

23       WE FREQUENTLY HAVE CASES THAT RESOLVE AT

24   THIS JUNCTURE.

25       WE HAVE SOME THAT LINGER AND GO THROUGH

84

1    SUMMARY JUDGMENT.

2              THE COURT:  YEAH.

3              MR. SAVERI:  I DO NOT THINK IT IS

4    APPROPRIATE YET TO GO TO SOME KIND OF MANDATORY

5    MEETING, JUST WITH SOME MANDATORY ASSIGNMENT,

6    BECAUSE I JUST THINK IT'S TOO EARLY.

7              BUT IF THE DEFENDANTS WANTED TO DO THAT,

8    THAT WOULD BE ANOTHER THING.

9              BUT IT'S ALSO IMPORTANT NOT TO DERAIL

10   ANYTHING AND KEEP THIS THING MARCHING FORWARD IN

11   TERMS OF LITIGATION.

12             THAT WOULD BE MY ANSWER.

13             MR. TUBACH:  YOUR HONOR, I GUESS WHAT I'D

14   ASK THE COURT TO DO IS TO DEFER TO OUR COLLECTIVE

15   EXPERIENCE ON THIS.  WE'VE DONE A LOT OF THESE KIND

16   OF CASES.

17             THE COURT:  YEAH.  THAT'S WHY I'M ASKING

18   YOU.

19             MR. TUBACH:  WE GENERALLY HAVE A SENSE OF

20   WHEN IS THE RIGHT TIME TO TALK.

21             THE COURT:  YEAH, SURE.

22             MR. TUBACH:  I THINK NOW IT'S THE

23   COLLECTIVE JUDGMENT THAT IT'S PREMATURE.

24             THE COURT:  RIGHT.  WHEN -- FROM YOUR

25   COLLECTIVE JUDGMENT, WHEN ARE THE KIND OF PRIMARY

1    KIND OF LEVERAGE POINTS?  IS IT AFTER A MOTION TO

2    DISMISS?  IT IS AFTER YOU SEE THEIR CLASS CERT

3    BRIEFING AND SEE HOW STRONG THEIR CASE IS?

4            MR. TUBACH:  AND SUMMARY JUDGMENT.  THOSE

5    ARE THE THREE.

6            AND IT MAY VERY WELL BE THAT AFTER A

7    MOTION TO DISMISS, IF ANYTHING SURVIVES, WHAT I

8    EXPECT IS THAT MR. SAVERI AND I AND OTHERS WILL

9    TALK AND SEE WHETHER IT MAKES SENSE AT THAT POINT,

10   AND WE'LL MAKE A DECISION THEN ABOUT WHETHER WE

11   THINK IT MAKES SENSE.

12           THE COURT:  OKAY.  WELL, I DO DEFER TO

13   YOUR EXPERIENCE.  THAT'S WHY I'M ASKING WHEN THE

14   PRESSURE POINTS ARE.

15           OKAY.  SO THEN WHAT I WILL --

16           MR. KEKER:  YOUR HONOR, CAN I SAY

17   SOMETHING ABOUT THAT?

18           THE COURT:  YES, PLEASE.

19           MR. KEKER:  BECAUSE WE -- EVERYBODY IS

20   TRYING TO BE NICE AND EVERYBODY IS TRYING TO MAKE

21   THINGS EASY ON THE COURT BY SPEAKING WITH ONE VOICE

22   FROM THE DEFENSE SIDE.

23           THERE ARE SEVEN SEPARATE DEFENDANTS HERE.

24           THE EXPECTATION THAT ALL THE DEFENDANTS

25   ARE GOING TO HAVE THE SAME ATTITUDE ABOUT

1    SETTLEMENT, WHEN TO SETTLE, WHETHER TO SETTLE, IS

2    AT LEAST PREMATURE AND RIGHT NOW YOU MIGHT GET

3    DIFFERENT REACTIONS FROM DIFFERENT PEOPLE.

4             SO I HAVEN'T SAID A WORD BECAUSE WE'RE

5    HAVING ANOTHER CASE MANAGEMENT CONFERENCE.

6             THERE MAY BE MOTIONS TO SEVER.  THERE

7    MAY -- IF WE GET INTO THIS BILATERAL BUSINESS,

8    THERE MAY BE A VERY DIFFERENT SITUATION FOR ONE

9    DEFENDANT THAN SOME OTHER SET OF DEFENDANTS.

10            THE COURT:  UM-HUM.

11            MR. KEKER:  SO I JUST HOPE THAT WE DON'T

12   GET THIS MENTALITY THAT THIS IS ALL GOING TO GO

13   SMOOTHLY WITH ALL THE SEVEN DEFENDANTS MARCHING IN

14   LOCKSTEP LIKE PENGUINS OR CONSPIRATORS, BECAUSE WE

15   SAY WE'RE NOT CONSPIRATORS.

16            THE COURT:  RIGHT.

17            MR. KEKER:  AND SO ANYWAY, THAT'S ALL.

18            THE COURT:  I HAVE THAT --

19            MR. KEKER:  I DON'T HAVE ANYTHING

20   CONSTRUCTIVE TO ADD EXCEPT LET'S KEEP THAT IN MIND.

21            THE COURT:  RIGHT.  I DON'T HAVE ANY

22   EXPECTATION.

23            I WOULD ASSUME THAT PLAINTIFFS WOULD WANT

24   TO PICK OFF ANY LOW HANGING FRUIT AND WORK ON

25   SETTLEMENTS PIECEMEAL, OR -- I DON'T KNOW.

1          MR. SAVERI:  ABSOLUTELY.  I MEAN, I --

2     I'M SORRY, YOUR HONOR.

3          THE COURT:  LET ME ASK YOU, DO YOU AGREE

4     THAT THE PRESSURE POINTS, THOUGH, WOULD BE IF THE

5     PLAINTIFFS CAN SURVIVE A MOTION TO DISMISS; WHEN

6     YOU LOOK AT HOW STRONG THEIR CLASS CASE IS; AND

7     THEN MAYBE AFTER SUMMARY JUDGMENT RULING OR AFTER

8     YOU SEE THEIR BRIEFING ON SUMMARY JUDGMENT?

9          MR. KEKER:  BASED ON MY EXPERIENCE, IT

10    OFTEN DOESN'T REALLY SORT OF CRYSTALIZE UNTIL YOU

11    SEE THE DAMAGES ANALYSIS, AND SOMETIMES UNTIL YOU

12    GET A DAUBERT RULING, BECAUSE SOME OF THE DAMAGE

13    CALCULATIONS --

14         THE COURT:  OKAY.

15         MR. KEKER:  -- IN THESE CASES THAT COME

16    UP ARE MAGICAL THINKING AND ARE EITHER AN

17    IMPEDIMENT TO SETTLEMENT OR MAKE SETTLEMENT

18    IMPOSSIBLE.

19         SO THAT'S ANOTHER -- I MEAN, I'VE SEEN

20    THEM GO RIGHT UP UNTIL THE END.

21         THE COURT:  OKAY.  YOU KNOW WHAT?  THANK

22    YOU FOR RAISING THAT.

23         MR. KEKER:  SURE.

24         THE COURT:  I WANT TO MAKE IT CLEAR THAT

25    THE DAUBERT MOTIONS NEED TO GO AND BE FILED AND

1    BRIEFED WITH THE DISPOSITIVE MOTIONS RATHER THAN AS

2    MOTIONS IN LIMINE.  OKAY?

3              MR. SAVERI:  THAT'S JUST -- OKAY.

4    DAUBERT ON THE EXPERTS THEN?

5              THE COURT:  YES, DAUBERT ON THE EXPERTS,

6    THOSE MOTIONS WILL BE SORT OF BRIEFED AND HEARD

7    WITH THE DISPOSITIVE MOTIONS.

8              MR. SAVERI:  AND ON THE SAME SCHEDULE, I

9    ASSUME.

10             THE COURT:  ON THE SAME SCHEDULE, YEAH.

11             AND THAT WAY I CAN HOPEFULLY GIVE SOME

12   CLARITY ON THAT ISSUE BEFORE THE PRETRIAL

13   CONFERENCE AND BEFORE YOU HAVE TO DO ALL THIS

14   PRETRIAL WORK.

15             MR. KEKER:  GREAT.  THANK YOU.

16             THE COURT:  ANY OTHER DEFENDANTS HAVE A

17   DIFFERENT VIEW, ADDITIONAL THOUGHTS ON -- YOU HAVE

18   MORE EXPERIENCE WITH THESE CASES THAN I DO, SO

19   SHARE YOUR WISDOM AS TO WHAT ARE THE OTHER SORT OF

20   PRESSURE POINTS.

21             I BASICALLY WANT TO KNOW, WHAT DO YOU

22   NEED TO KNOW TO ASSESS YOUR CASE?

23             MR. RUBIN:  I DO ECHO MR. KEKER'S

24   COMMENTS IN THE SENSE THAT I DO THINK THAT THERE

25   CAN BE SOME PRESUMPTUOUS SECURITIES CASES AND

1    ANTITRUST CASES THAT FOLLOW THIS INEXORABLE PATH OF

2    CERTAIN MOTION PRACTICE AND SOME DISCOVERY.

3            THE COURT:  SURE.

4            MR. RUBIN:  AND THEN THERE'S, YOU KNOW,

5    SORT OF INEVITABLY SOME SETTLEMENT DISCUSSION.

6            AND I DO THINK THAT MR. TUBACH IDENTIFIED

7    SORT OF THE POINTS, DAMAGE EXPERTS -- DAMAGES IS

8    ALWAYS VERY IMPORTANT, SUMMARY JUDGMENT FOR CERTAIN

9    DEFENDANTS.

10           BUT I WAS JUST INVOLVED IN A CASE IN

11   FRONT OF JUDGE WILKEN LAST YEAR WHERE THE

12   SETTLEMENT OCCURRED ON THE -- LITERALLY A WEEK

13   BEFORE TRIAL IN A LARGE ANTITRUST CONSPIRACY CASE

14   BECAUSE, YOU KNOW, ONE PARTICULAR DEFENDANT WAS

15   VERY DIFFERENTLY SITUATED, WHICH I THINK GOES TO

16   MR. KEKER'S POINT.  DEFENDANTS ARE DIFFERENTLY

17   SITUATED DEPENDING ON HOW THE CASE PROCEEDS.

18           SO IT IS, I THINK, BECOMING INCREASINGLY

19   DIFFICULT TO SAY "THIS IS WHEN A CLASS ACTION

20   ANTITRUST CASE SETTLES."

21           AND I THINK IN THIS PARTICULAR CASE,

22   GIVEN THE MYRIAD OF ISSUES, I THINK IT'S DIFFICULT

23   TO SAY NOW WHEN THAT MOMENT, IF EVER, IS.

24           THE COURT:  OKAY.

25           MR. SAVERI:  I GUESS I WOULD SAY THAT

```
1      THERE -- THERE'S A RANGE OF EXPERIENCE.  I MEAN,

2      CERTAINLY I'VE HAD LOTS OF CASES THAT SETTLED

3      BEFORE THE PLEADINGS WERE RESOLVED, TOO, AND I'VE

4      HAD CASES THAT SETTLED WHILE -- YOU KNOW, AFTER THE

5      JURY HAS BEEN IMPANELED, AND WE'VE IDENTIFIED SOME

6      OF THE MILESTONES.

7              THE COURT:  YEAH.  I JUST GET THE SENSE

8      THERE'S PROBABLY TOO MUCH AT STAKE FOR THIS ONE TO

9      BE RESOLVED BEFORE THE PLEADINGS ARE RESOLVED.

10             MR. SAVERI:  ONE NEVER KNOWS.

11             THE COURT:  YOU CAN CORRECT ME IF I'M

12     WRONG.

13             MR. RUBIN:  WELL, IN THE CASE THAT I

14     MENTIONED, THERE WAS A LOT AT STAKE, IT WAS A $1.5

15     BILLION CASE AND IT GOT TO THREE DAYS BEFORE TRIAL.

16             SO I JUST THINK IT DEPENDS ON THE

17     WEAKNESSES AND STRENGTHS OF THE CASE AND WHAT THE

18     COMPANY'S POSITION IS.

19             THERE ARE STILL -- AS THE MEDIATOR TOLD

20     US IN THAT CASE, THERE ARE CASES WHERE CORPORATIONS

21     STILL DEFEND ON PRINCIPLE AND THEY JUST THINK THEY

22     DIDN'T DO ANYTHING WRONG.

23             MR. SAVERI:  AND SOME COMPANIES WANT TO

24     GET OUT AND RESOLVE THE CLAIMS AGAINST THEM EARLY

25     AND GET -- AND THE SETTLEMENT VALUE REFLECTS THAT.
```

1           SO THERE'S A RANGE OF EXPERIENCE AND

2     WE'LL SEE AS THIS THING UNFOLDS.  I'M COMFORTABLE

3     WITH THAT.

4           THE COURT:  OKAY.  WELL, I'D LIKE YOU,

5     FOR THE JANUARY CMC, TO -- AT THAT POINT I'M SURE

6     WE'LL HAVE THIS DISCUSSION AGAIN -- IF AT THAT

7     POINT YOU THINK IT MAKES SENSE FOR ME TO SEND YOU

8     OUT FOR A 90 TO 120-DAY, SOME FORM OF ADR AFTER YOU

9     GET THE MOTION TO DISMISS RULING.

10          MR. SAVERI:  OKAY.

11          THE COURT:  OKAY.  ALL RIGHT.

12          ANYTHING MORE?  IS THERE ANYTHING ELSE

13    THAT WE DIDN'T TALK ABOUT TODAY THAT WE NEED TO

14    COVER?

15          I THINK WE COVERED EVERYTHING I WANTED

16    TO.

17          IS THERE ANYTHING ELSE THAT'S SORT OF

18    OUTSTANDING THAT YOU NEED?

19          MR. TUBACH:  THE ONLY HOUSEKEEPING

20    MATTER -- I DON'T KNOW IF THE COURT SPECIFICALLY

21    DISPOSED OF THE JOINT DISCOVERY DISPUTE BEFORE

22    JUDGE LLOYD.

23          THE COURT:  OH.

24          MR. TUBACH:  I THINK THAT'S NOW MOOT IN

25    LIGHT OF WHAT WE'VE DISCUSSED HERE.

1            MR. SAVERI:  I THINK SO.  IT'S JUST -- TO

2     ME, I THOUGHT IT WAS JUST A MATTER OF HOUSEKEEPING

3     HOW WE PROCEED THERE, YOUR HONOR.

4            MR. TUBACH:  I JUST WANTED TO MAKE SURE

5     THAT JUDGE LLOYD DIDN'T THINK HE STILL HAD

6     SOMETHING THAT HE HAD TO RESOLVE.

7            THE COURT:  OH, NO.

8            MR. TUBACH:  OKAY.

9            THE COURT:  I TOLD HIM I WAS GOING TO

10    HANDLE THIS.

11            BUT WHAT I CAN DO IN THE CASE MANAGEMENT

12    ORDER IS TO ALSO SAY THAT DISCOVERY DISPUTE IS -- I

13    GUESS A REQUEST FOR DISCOVERY IS GRANTED IN PART

14    AND DENIED IN PART CONSISTENT WITH --

15            MR. RUBIN:  IT'S THE SAME ISSUE.

16            THE COURT:  DID WE GET RID OF ALL THE

17    OTHER HEARINGS OTHER THAN JANUARY 26TH THAT WAS

18    PENDING?

19            I KNOW JUDGE LLOYD HAD DECEMBER 8TH.

20            MR. SAVERI:  EXCUSE ME, YOUR HONOR.

21            I BELIEVE THERE WERE THE THREE:  LLOYD;

22    STAY; AND THE MOTION TO DISMISS.

23            AND WE TALKED ABOUT THEM ALL AND KIND OF

24    CLEANED THAT UP.

25            THE COURT:  OKAY.

1          MR. SAVERI:  I MEAN, THAT'S WHAT I --

2     WHAT MY NOTES INDICATE.

3          MR. RUBIN:  I THINK THAT'S ALL -- THAT'S

4     ALL THE HEARINGS THAT ARE PENDING, YES.

5          THE COURT:  OKAY.  GREAT.  I WILL SEE YOU

6     THEN ON JANUARY 26TH.

7          MR. RUBIN:  THANK YOU.

8          THE COURT:  OKAY.  THANK YOU VERY MUCH.

9          MR. SAVERI:  THANK YOU, YOUR HONOR.

10         MR. RUBIN:  THANK YOU, YOUR HONOR.

11         MR. KEKER:  THANK YOU, YOUR HONOR.

12         THE COURT:  I APPRECIATE IT.

13         (WHEREUPON, THE PROCEEDINGS IN THIS

14     MATTER WERE CONCLUDED.)

15

16

17

18

19

20

21

22

23

24

25

1

2

3

4                          CERTIFICATE OF REPORTER

5

6

7

8              I, THE UNDERSIGNED OFFICIAL COURT

9    REPORTER OF THE UNITED STATES DISTRICT COURT FOR

10   THE NORTHERN DISTRICT OF CALIFORNIA, 280 SOUTH

11   FIRST STREET, SAN JOSE, CALIFORNIA, DO HEREBY

12   CERTIFY:

13              THAT THE FOREGOING TRANSCRIPT,

14   CERTIFICATE INCLUSIVE, CONSTITUTES A TRUE, FULL AND

15   CORRECT TRANSCRIPT OF MY SHORTHAND NOTES TAKEN AS

16   SUCH OFFICIAL COURT REPORTER OF THE PROCEEDINGS

17   HEREINBEFORE ENTITLED AND REDUCED BY COMPUTER-AIDED

18   TRANSCRIPTION TO THE BEST OF MY ABILITY.

19

20

21

22

23              /S/
                _____
24              LEE-ANNE SHORTRIDGE, CSR, CRR
                CERTIFICATE NUMBER 9595
25