1  GEORGE A. RILEY (Bar No. 118304)
   griley@omm.com
2  MICHAEL F. TUBACH (Bar No. 145955)
   mtubach@omm.com
3  LISA CHEN (Bar No. 234681)
   lisachen@omm.com
4  CHRISTINA J. BROWN (Bar No. 242130)
   cjbrown@omm.com
5  O'MELVENY & MYERS LLP
   Two Embarcadero Center, 28th Floor
6  San Francisco, CA  94111-3823
   Telephone:    (415) 984-8700
7  Facsimile:    (415) 984-8701

8  Attorneys for Defendant
   Apple Inc.
9
   [Additional Parties and Counsel Listed on Signature Page]
10

11              **UNITED STATES DISTRICT COURT**

12             **NORTHERN DISTRICT OF CALIFORNIA**

13                  **SAN JOSE DIVISION**

14

15  IN RE HIGH-TECH EMPLOYEE          Master Docket No. 11-CV-2509-LHK
    ANTITRUST LITIGATION
16                                    **DEFENDANTS' REPLY IN SUPPORT OF**
                                      **JOINT MOTION TO DISMISS THE**
17                                    **CONSOLIDATED AMENDED**
                                      **COMPLAINT**
18
    THIS DOCUMENT RELATES TO:         **ORAL ARGUMENT REQUESTED**
19
    ALL ACTIONS                       DATE:          January 26, 2012
20                                    TIME:          1:30 pm
                                      COURTROOM:     Courtroom 8, 4th Floor
21                                    JUDGE:         Honorable Lucy H. Koh

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

INTRODUCTION ........................................................................................................ 1

ARGUMENT .............................................................................................................. 3

I.      PLAINTIFFS' ANTITRUST CLAIMS SHOULD BE DISMISSED ................... 3

        A.     Plaintiffs' "Notice Pleading" Standard Is Not the Law ............................. 3

        B.     Plaintiffs Have Identified No Evidentiary Facts to Support the Only Claim They Allege—an "Overarching," Multilateral Conspiracy............. 4

        C.     Plaintiffs' Argument That Non-solicitation Agreements Are "Per Se" Antitrust Violations Is Both Irrelevant and Wrong as a Matter of Law ......................................................................................................... 9

        D.     Plaintiffs' Claims of Injury Are Unsupported by the Required Factual Allegations .................................................................................. 14

II.     DEFENDANTS' ALLEGED EMPLOYEE NON-SOLICITATION AGREEMENTS DID NOT VIOLATE § 16600 ................................................ 17

III.    PLAINTIFFS HAVE NOT ADEQUATELY PLEADED A CLAIM UNDER CALIFORNIA BUSINESS AND PROFESSIONS CODE § 17200 .................................................................................................... 19

CONCLUSION ......................................................................................................... 20

DEFENDANTS' REPLY ISO MOTION TO
DISMISS CONSOL. AM. COMPL.
NO. 11-CV-2509-LHK

**TABLE OF AUTHORITIES**

Page

**CASES**

*Am. Ad Mgmt., Inc. v. Gen. Tel. Co. of Cal.*,
190 F.3d 1051 (9th Cir. 1999) ........................................................................................ 15

*Arizona v. Maricopa Cnty. Med. Soc'y*,
457 U.S. 332 (1982) ....................................................................................................... 10

*Ashcroft v. Iqbal*,
556 U.S. 662, 129 S. Ct. 1937 (2009) .............................................................................. 3

*Atl. Richfield Co. v. USA Petroleum Co.*,
495 U.S. 328 (1990) ....................................................................................................... 14

*Aydin Corp. v. Loral Corp.*,
718 F.2d 897 (9th Cir. 1983) ..................................................................................... 11, 12

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ................................................................................................. passim

*Beltz Travel Serv. Inc. v. Int'l Air Transp. Ass'n*,
620 F.2d 1360 (9th Cir. 1980) .......................................................................................... 8

*Bogan v. Hodgkins*,
166 F.3d 509 (2d Cir. 1999) ........................................................................................... 12

*Breakdown Servs., Ltd. v. Now Casting, Inc.*,
550 F. Supp. 2d 1123 (C.D. Cal. 2007) .......................................................................... 19

*Broad. Music, Inc. v. Columbia Broad. Sys., Inc.*,
441 U.S. 1 (1979) ........................................................................................................... 10

*Cal. ex rel. Harris v. Safeway, Inc.*,
651 F.3d 1118 (9th Cir. 2011) ........................................................................................ 10

*CBS Cos. v. Equifax, Inc.*,
561 F.3d 569 (6th Cir. 2009) .......................................................................................... 16

*Cesnik v. Chrysler Corp.*,
490 F. Supp. 859 (M.D. Tenn. 1980) .............................................................................. 12

*Chabner v. United of Omaha Life Ins. Co.*,
225 F.3d 1042 (9th Cir. 2000) ........................................................................................ 20

*Chavez v. Whirlpool Corp.*,
93 Cal. App. 4th 363 (2001) ........................................................................................... 19

*City of Pittsburgh v. W. Penn Power Co.*,
147 F.3d 256 (3d Cir. 1998) ........................................................................................... 14

# TABLE OF AUTHORITIES
### (continued)

Page

*Dickson v. Microsoft Corp.*,
309 F.3d 193 (4th Cir. 2002) .................................................................................. 9

*Digital Sun v. Toro Co.*,
No. 10-CV-4567, 2011 WL 1044502 (N.D. Cal. Mar. 22, 2011) ........................... 19

*Doe v. Ariz. Hosp. & Healthcare Ass'n*,
No. CV 07-1292, 2009 U.S. Dist. LEXIS 42871 (D. Ariz. Mar. 19, 2009) ........................... 16

*Edwards v. Arthur Andersen LLP*,
44 Cal. 4th 937 (2008) .................................................................................. 18, 19

*Eichorn v. AT&T Corp.*,
248 F.3d 131 (3d Cir. 2001) .................................................................................. 11

*Facebook, Inc. v. Power Ventures, Inc.*,
No. C08-05780, 2010 U.S. Dist. LEXIS 93517 (N.D. Cal. July 20, 2010) ........................... 19

*Ferrington v. McAfee, Inc.*,
No. 10-CV-01455, 2010 U.S. Dist. LEXIS 106600 (N.D. Cal. Oct. 5, 2010) ........................... 20

*Fleischman v. Albany Med. Ctr.*,
728 F. Supp. 2d 130 (N.D.N.Y. 2010) .................................................................................. 12

*FTC v. Ind. Fed'n of Dentists*,
476 U.S. 447 (1986) .................................................................................. 10

*Haines v. Verimed Healthcare Network LLC*,
613 F. Supp. 2d 1133 (E.D. Mo. 2009) .................................................................................. 11

*Howard Hess Dental Labs., Inc. v. Dentsply Int'l, Inc.*,
602 F.3d 237 (3d Cir. 2010) .................................................................................. 16

*In re Cipro Cases I & II*,
No. D056361, 2011 WL 5120688 (Cal. Ct. App. Oct. 31, 2011) ........................... 19

*In re Citric Acid Litig.*,
191 F.3d 1090 (9th Cir. 1999) .................................................................................. 7

*In re Elevator Antitrust Litig.*,
No. 04-1178, 2006 WL 1470994 (S.D.N.Y. May 30, 2006) .................................................................................. 7

*In re Graphics Processing Units Antitrust Litig.*,
540 F. Supp. 2d 1085 (N.D. Cal. 2007) .................................................................................. 5

*In re Ins. Brokerage Antitrust Litig.*,
618 F.3d 300 (3d Cir. 2010) .................................................................................. 7

*In re Iowa Ready-Mix Concrete Antitrust Litig.*,
768 F. Supp. 2d 961 (N.D. Iowa 2011) .................................................................................. 5, 7

1

**TABLE OF AUTHORITIES**
(continued)

2

Page

3

*In re Late Fee & Over-Limit Fee Litig.*,
   528 F. Supp. 2d 953 (N.D. Cal. 2007) ..................................................................... 5

4

*In re Online DVD Rental Antitrust Litig.*,
   No. M 09–2029, 2011 WL 5883772 (N.D. Cal. Nov. 23, 2011) ........................... 10

5

6

*In re Rubber Chems. Antitrust Litig.*,
   504 F. Supp. 2d 777 (N.D. Cal. 2007) ..................................................................... 8

7

*In re Text Messaging Antitrust Litig.*,
   630 F.3d 622 (7th Cir. 2010)..................................................................................... 5

8

9

*Kendall v. Visa U.S.A., Inc.*,
   518 F.3d 1042 (9th Cir. 2008)........................................................................... 3, 4, 8

10

*Knevelbaard Dairies v. Kraft Foods, Inc.*,
   232 F.3d 979 (9th Cir. 2000)................................................................................... 14

11

12

*Korea Supply Co. v. Lockheed Martin Corp.*,
   29 Cal. 4th 1134 (2003) ......................................................................................... 20

13

*Loral Corp. v. Moyes*,
   174 Cal. App. 3d 268 (1985).............................................................................. 17, 19

14

15

*New Hampshire v. Maine*,
   532 U.S. 742 (2001) ............................................................................................... 13

16

*Nichols v. Spencer Int'l Press, Inc.*,
   371 F.2d 332 (7th Cir. 1967)................................................................................... 16

17

18

*NicSand, Inc. v. 3M Co.*,
   507 F.3d 442 (6th Cir. 2007)............................................................................. 14, 15

19

*Quinonez v. Nat'l Ass'n of Sec. Dealers, Inc.*,
   540 F.2d 824 (5th Cir. 1976)................................................................................... 16

20

21

*Ret. Grp. v. Galante*,
   176 Cal. App. 4th 1226 (2009) ............................................................................... 18

22

*Richmond Technologies, Inc. v. Aumtech Bus. Solutions*,
   No. 11-CV02460, 2011 WL 2607158 (N.D. Cal. July 1, 2011) ............................ 18

23

24

*Roman v. Cessna Aircraft Co.*,
   55 F.3d 542 (10th Cir. 1995)................................................................................... 16

25

*SC Manufactured Homes, Inc. v. Liebert*,
   162 Cal. App. 4th 68 (2008) ................................................................................... 19

26

*Silguero v. Creteguard, Inc.*,
   187 Cal. App. 4th 60 (2010) ................................................................................... 18

27

28

1

## TABLE OF AUTHORITIES
### (continued)

2

**Page**

3

*Starr v. Sony BMG Music Entm't,*
    592 F.3d 314 (2d Cir. 2010) ............................................................................... 5

4

*State Oil Co. v. Khan,*
    522 U.S. 3 (1997) ............................................................................................. 10

5

6

*Texaco Inc. v. Dagher,*
    547 U.S. 1 (2006) ............................................................................................. 10

7

*Thomas Weisel Partners LLC v. BNP Paribas,*
    2010 WL 546497 (N.D. Cal. Feb. 10, 2010) ............................................... 17, 19

8

9

*UARCO Inc. v. Lam,*
    18 F. Supp. 2d 1116 (D. Haw. 1998) ............................................................... 12

10

*Union Circulation Co. v. FTC,*
    241 F.2d 652 (2d Cir. 1957) ....................................................................... 11, 12

11

12

*United States v. Brown,*
    936 F.2d 1042 (9th Cir. 1991) ......................................................................... 12

13

*United States v. Coop. Theatres of Ohio, Inc.,*
    845 F.2d 1367 (6th Cir. 1988) ......................................................................... 12

14

15

*United States v. Perlaza,*
    439 F.3d 1149 (9th Cir. 2006) ........................................................................... 8

16

*United States v. Reed,*
    575 F.3d 900 (9th Cir. 2009) ............................................................................. 8

17

18

*United States v. Socony-Vacuum Oil Co.,*
    310 U.S. 150 (1940) ........................................................................................ 12

19

*VL Sys., Inc. v. Unisen, Inc.,*
    152 Cal. App. 4th 708 (2007) .......................................................................... 18

20

21

*Weisfeld v. Sun Chem. Corp.,*
    210 F.R.D. 136 (D.N.J. 2002) .......................................................................... 11

22

*William O. Gilley Enters. v. Atl. Richfield Co.,*
    588 F.3d 659 (9th Cir. 2009) ............................................................................. 4

23

24

*Wynn v. Nat'l Broad. Co.,*
    234 F. Supp. 2d 1067 (C.D. Cal. 2002) ............................................................. 9

25

*Yniguez v. Arizona,*
    939 F.2d 727 (9th Cir. 1991) ........................................................................... 13

26

27

**STATUTES**

28

Cal. Bus. & Prof. Code § 16600 ................................................................... 2, 17, 18

**TABLE OF AUTHORITIES**
(continued)

**Page**

Cal. Bus. & Prof. Code § 17200 ..................................................................................... 3

**OTHER AUTHORITIES**

*ABA Model Jury Instructions in Civil Antitrust Cases* (2005 ed.) ................................... 8

Phillip E. Areeda & Herbert Hovenkamp, *Antitrust Law* (1995)................................... 14

U.S. Dep't of Labor, Bureau of Labor Statistics, *The Employment Situation:  June 2007*, http://www.bls.gov/news.release/archives/empsit_07062007.pdf............................... 16

# INTRODUCTION

Plaintiffs' opposition brief essentially concedes that their claim of an overarching conspiracy—what this Court termed the "motherlode conspiracy"—is nothing more than a patchwork of separate alleged bilateral agreements.  Plaintiffs made the strategic decision to try to lump all Defendants together into this "single conspiracy" (Opp. at 12) so that Defendants would each be jointly and severally liable for alleged agreements that have nothing to do with them.  Having decided to pursue a "single conspiracy" claim (Opp. at 12), that is the claim that must be tested under *Twombly*.  Because Plaintiffs allege no evidentiary facts that plausibly suggest a single conspiracy, *Twombly* requires that their antitrust claims be dismissed.

Plaintiffs argue that their overarching conspiracy claim should nonetheless stand because these alleged bilateral agreements were supposedly "identical, interconnected, and operated over the same time period."  (Opp. at 10.)  This is just the kind of conclusory labeling, unsupported by evidentiary facts, that *Twombly* rejected.  Plaintiffs' boilerplate, repetitive description of the alleged agreements is so lacking in detail that no conclusion can be drawn about their actual degree of similarity.  And where Plaintiffs do provide additional detail (as with the alleged Pixar/Lucasfilm agreement), that detail shows that the alleged agreement was very different from any of the others.  Plaintiffs' allegations likewise make clear that, rather than covering the same time period, the alleged agreements were entered at different times and covered different periods.

But Plaintiffs' allegations fail for the more fundamental reason that courts have repeatedly held that allegations of facially similar conduct raise no inference of conspiracy.  Companies in competitive markets frequently engage in broadly similar conduct.  To rely on supposedly similar conduct, Plaintiffs must allege facts showing that the companies would not rationally engage in such conduct absent a conspiracy.  Plaintiffs allege no such facts here.  Nor could they.  There are numerous legitimate reasons why companies would decide to limit their methods of recruiting from other companies, as recognized in the provisions of the DOJ consent decree permitting such agreements in a variety of circumstances.  It therefore makes no difference that the supposedly parallel conduct is a series of alleged bilateral agreements.  Plaintiffs allege nothing to show that the alleged bilateral agreements are connected in any way.  For example, Plaintiffs allege nothing

DEFENDANTS' REPLY ISO MOTION TO
DISMISS CONSOL. AM. COMPL.
NO. 11-CV-2509-LHK

1   to show that Lucasfilm, which allegedly agreed not to cold call employees at Pixar, had any

2   knowledge of or interest in, or even could benefit from, any alleged non-solicitation agreement

3   between Intel and Google.

4       Plaintiffs suggest at times that their Complaint should stand if they have alleged at least

5   some kind of antitrust claim against each Defendant.  (Opp. at 1.)  This argument fundamentally

6   misconstrues *Twombly* and the critical difference between a series of bilateral agreements and an

7   overarching conspiracy.  In the absence of sufficient evidentiary allegations of a single

8   overarching conspiracy, there is no basis to hold Intuit, for example, liable based on an alleged

9   agreement between Adobe and Apple, or to hold Apple liable based on an alleged agreement

10  between Google and Intel.  For tactical reasons alone, Plaintiffs chose to allege that disconnected

11  alleged agreements among the Defendants are part of a single antitrust conspiracy.  That is the

12  antitrust conspiracy claim the Court must evaluate here.

13      Plaintiffs devote a significant portion of their Opposition to arguing that non-solicitation

14  agreements are per se violations.  This argument is both irrelevant and wrong as a matter of law.

15  It is irrelevant because the existence of a conspiracy is a threshold requirement, and the

16  conspiracy that Plaintiffs have alleged—a "single conspiracy" among these seven Defendants—

17  fails for lack of factual allegations regardless of how it is labeled.  It is wrong because every court

18  that has addressed the issue has concluded that non-solicitation agreements are treated under the

19  rule of reason, not as per se violations.

20      Plaintiffs' antitrust claims also fail because they have alleged no plausible facts to show

21  how they could have been injured by the purported "overarching conspiracy" or even the alleged

22  bilateral agreements.  The *Twombly* requirement to allege evidentiary facts applies with equal

23  force to the element of antitrust injury as it does to the element of conspiracy.  Plaintiffs have not

24  alleged any specific injury they suffered caused by any alleged conspiracy.  Nor have they alleged

25  any plausible theory to support a market-wide impact that affected their salaries.  This failure is

26  not accidental; there is no plausible labor market that Defendants collectively control that would

27  give them even the possibility of affecting salaries on a market-wide basis.

28      Plaintiffs' § 16600 claim should be dismissed because § 16600 does not reach non-

2

1    solicitation agreements involving employees. Plaintiffs cite cases to show that § 16600 has been

2    applied to agreements involving non-solicitation of clients and non-hiring of employees, but those

3    cases are irrelevant here because Plaintiffs' allegations involve non-solicitation of employees.

4    The law uniformly holds that such agreements do not violate § 16600.

5        Finally, Plaintiffs' § 17200 claim also should be dismissed. Plaintiffs do not contend that

6    the "fraudulent" prong of § 17200 applies, and they concede that their § 17200 claim premised on

7    "unlawful" conduct fails if their other claims fail. They argue that their "unfair" claim should

8    survive even if their antitrust claims fail, but they ignore the many decisions—including one from

9    this Court—which have held that a plaintiff cannot save a failed antitrust conspiracy claim by

10    alleging that the same conduct was "unfair" under the UCL.

11                                     **ARGUMENT**

12 **I.      PLAINTIFFS' ANTITRUST CLAIMS SHOULD BE DISMISSED.**

13       **A.      Plaintiffs' "Notice Pleading" Standard Is Not the Law.**

14        The Ninth Circuit has held that "[a]t least for the purposes of adequate pleading in

15    antitrust cases, the [Supreme] Court specifically abrogated the usual 'notice pleading' rule, found

16    in Federal Rule of Civil Procedure 8(a)(2)." *Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1047

17    n.5 (9th Cir. 2008) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 561 (2007)). Plaintiffs

18    ignore this precedent. They argue that as long as Defendants have notice of the claim against

19    them, their antitrust allegations should stand because "[t]here are no special pleading standards

20    for antitrust cases." (Opp. at 7.) Plaintiffs cite fifteen cases supposedly relating to pleading

21    standards, but fail even to mention *Kendall*, the leading Ninth Circuit decision. (Opp. at 7-8.)

22    *Kendall* held that an antitrust conspiracy claim requires *evidentiary facts* that support a plausible

23    conspiracy. *Kendall*, 518 F.3d at 1047 (plaintiffs must "plead not just ultimate facts (such as a

24    conspiracy), but evidentiary facts which, if true, will prove" the alleged antitrust violation); *see*

25    *also Twombly*, 550 U.S. at 555 ("[f]actual allegations must be enough to raise a right to relief

26    above the speculative level"); *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009)

27    (plaintiffs must plead "factual content that allows the court to draw the reasonable inference that

28    the defendant is liable for the misconduct alleged").

DEFENDANTS' REPLY ISO MOTION TO
DISMISS CONSOL. AM. COMPL.
NO. 11-CV-2509-LHK

**B.      Plaintiffs Have Identified No Evidentiary Facts to Support the Only Claim They Allege—an "Overarching," Multilateral Conspiracy.**

Plaintiffs allege no facts plausibly supporting an overarching conspiracy.  Nothing in the Complaint suggests that any Defendant had an interest in any alleged agreement other than its own.  Plaintiffs allege no evidence of any coordination of any one pair of companies with any other pair, and no communications that even *hint* at an overarching conspiracy.  Plaintiffs admit that the "single conspiracy" they allege left Defendants free to cold call most of the other Defendants' employees.  (Opp. at 12.)  In other words, Defendants supposedly reached a single agreement to use non-solicitation agreements "to fix and suppress the compensation of their employees," but did so in a way that allowed Defendants to do most of the time exactly what the agreement supposedly prohibited.  The lack of any evidentiary allegations supporting an overarching conspiracy, combined with the incoherence of how Plaintiffs allege it functioned, renders Plaintiffs' effort to turn the alleged bilateral agreements into a single overarching conspiracy "implausible."  *Kendall*, 518 F.3d at 1047; *see also William O. Gilley Enters. v. Atl. Richfield Co.*, 588 F.3d 659, 662 (9th Cir. 2009) ("on a motion to dismiss in an antitrust case, a court must determine whether an antitrust claim is 'plausible' in light of basic economic principles" and common sense).[1]

Plaintiffs' primary argument is that an overall conspiracy may be inferred because the alleged bilateral agreements were supposedly "identical."  (Opp. at 10.)  But this is just the kind of unsupported, conclusory allegation that *Twombly* rejects.  Plaintiffs' assertion fails at the outset based on their concession (Opp. at 12 n.8) that the alleged agreement between Pixar and Lucasfilm is different in significant respects from any of the other agreements.  (*Compare* Compl. ¶¶ 59-61 (Pixar/Lucasfilm) *with, e.g.*, ¶ 73 (Apple/Adobe), ¶ 98 (Google/Intel).)  And the other alleged bilateral agreements are described so generically that it is not possible to draw any meaningful conclusion about whether they are actually similar at all.  (*E.g.*, Compl. ¶ 73 (alleging

---

[1]  Defendants do not concede the existence of the bilateral agreements alleged in the Complaint.  However, the Court need not decide whether the bilateral agreements have been pleaded with sufficient specificity because Plaintiffs' antitrust claims are predicated on a single, overarching conspiracy—not simply a series of bilateral agreements.

DEFENDANTS' REPLY ISO MOTION TO
DISMISS CONSOL. AM. COMPL.
NO. 11-CV-2509-LHK

1  agreement between Apple and Adobe "not to cold call each other's employees"), ¶ 79 (alleging

2  agreement between Google and Intel "not to cold call each other's employees").)

3          But even if Plaintiffs had adequately alleged agreements that were broadly similar, the

4  existence of facially similar agreements between different pairs of companies is not alone

5  sufficient to allege a single agreement among all such companies.  *See In re Iowa Ready-Mix*

6  *Concrete Antitrust Litig.*, 768 F. Supp. 2d 961, 972-75 (N.D. Iowa 2011); *In re Late Fee & Over-*

7  *Limit Fee Litig.*, 528 F. Supp. 2d 953, 961-63 (N.D. Cal. 2007) (parallel actions taken at the same

8  time do not by themselves raise an inference of a conspiracy).  Courts have allowed parallel

9  conduct to support an inference of conspiracy only when such parallel conduct would not be

10  rational in the absence of a conspiracy.  *Twombly*, 550 U.S. at 556 n.4 (holding insufficient

11  allegations that defendants each decided not to enter each other's incumbent territories because

12  plaintiffs alleged no facts showing that those decisions were independently irrational).  For

13  example, in *In re Text Messaging Antitrust Litigation*, 630 F.3d 622 (7th Cir. 2010), the court

14  inferred a conspiracy from parallel pricing behavior based in large part on the allegation that "in

15  the face of steeply falling costs, the defendants increased their prices."  *Id.* at 628.  This kind of

16  "anomalous behavior," along with other factors, supported the inference that the price increases

17  were the result of collusive behavior.  *Id.  See also Starr v. Sony BMG Music Entm't*, 592 F.3d

18  314, 327 (2d Cir. 2010) (upholding antitrust complaint where "plaintiffs have alleged behavior

19  that would plausibly contravene each defendant's self-interest in the absence of similar behavior

20  by rivals"); *In re Graphics Processing Units Antitrust Litig.*, 540 F. Supp. 2d 1085, 1095 (N.D.

21  Cal. 2007) (denying motion to dismiss where alleged behavior was not economically rational on

22  its own or in defendants' independent self-interest).

23          Here, Plaintiffs allege no behavior that is irrational or so contrary to self-interest to raise

24  an inference of a broader conspiracy.  Quite to the contrary.  There are obvious legitimate and

25  procompetitive reasons why individual companies would enter into bilateral non-solicitation

26  agreements without any broader conspiracy.  For example, non-solicitation agreements encourage

27  companies to devote employees to joint ventures because they will not be concerned that those

28  employees will be actively poached by their business partner.  Absent the agreement, companies

DEFENDANTS' REPLY ISO MOTION TO
DISMISS CONSOL. AM. COMPL.
NO. 11-CV-2509-LHK

1   may abandon the collaboration, limit the participation of their employees, or take other measures

2   that may make the collaboration less effective and innovative.  And if a company perceives that

3   its business partner is routinely attempting to lure away its employees, it is less likely to explore

4   joint development projects, which may lead to further reduction in efficiencies and innovation.

5   Given the benefits of non-solicitation agreements for the two parties to those agreements, the

6   alleged bilateral agreements would stand on their own without the need for any broader

7   conspiracy.  Unlike the "parallel conduct" cases relied on by Plaintiffs, there are no allegations

8   here—like parallel price hikes by all Defendants in the face of sharply falling costs—that make

9   the alleged bilateral agreements "anomalous" behavior that flies in the face of expected economic

10  decision-making.  The Complaint lacks factual allegations to show that any Defendant entered

11  into a bilateral agreement for any reason other than that specific alleged bilateral agreement.

12        The description of the alleged bilateral agreements as "interconnected" is not an

13  evidentiary fact, but a label for a conclusion that is also contradicted by other allegations.  Intuit's

14  alleged agreement in June 2007 not to cold call Google's employees is not "interconnected" in

15  any sense with Apple's alleged agreement with Adobe two years earlier.  Plaintiffs' assertion that

16  the agreements operated "over the same time period" is also inconsistent with Plaintiffs' own

17  allegations.  The alleged Pixar/Lucasfilm agreement is alleged to have begun "no later than

18  January 2005" (Compl. ¶ 58), whereas other agreements are not alleged to have begun until more

19  than two years later (*e.g.*, Compl. ¶ 98 (Google/Intel in September 2007).)

20        Likewise insufficient are Plaintiffs' allegations that Jobs and Schmidt were involved in

21  their companies' bilateral non-solicitation agreements.  That Apple's and Google's CEOs were

22  allegedly involved in the agreements involving Apple and Google does not alter the bilateral

23  nature of the alleged agreements.  Nor is the allegation that Jobs and Schmidt both sat on Apple's

24  board of directors evidence of a broader conspiracy.  As Plaintiffs admit, overlapping board

25  membership merely provides "an opportunity to conspire," and "an opportunity for the requisite

26  knowledge and intent regarding the express agreements."  (Opp. at 10.)  The case law is clear that

27  an opportunity to collude is not sufficient to plead a conspiracy, even where defendants are

28  alleged to have participated in recurring industry-wide meetings or associations and have had

1  many opportunities to communicate directly.  *See, e.g.*, *In re Citric Acid Litig.*, 191 F.3d 1090,

2  1103 (9th Cir. 1999) (rejecting plaintiff's attempt to infer a conspiracy from multiple meetings

3  and telephone conversations because such meetings "do not tend to exclude the possibility of

4  legitimate activity"); *In re Elevator Antitrust Litig.*, No. 04-1178, 2006 WL 1470994, at *10-11

5  (S.D.N.Y. May 30, 2006) (explaining that "the allegation that elevator company executives attend

6  trade, industry, or social functions together is clearly insufficient to state a claim").

7           It does not matter, as Plaintiffs claim, that they have labeled the alleged parallel conduct

8  itself a per se violation.  (Opp. at 12-13.)  As demonstrated below, the premise of this argument is

9  wrong; non-solicitation agreements are uniformly judged under the rule of reason.  But even

10  accepting the premise, the argument fails.  In *In re Iowa Ready-Mix Concrete Antitrust Litigation*,

11  the defendants had pleaded guilty to criminal antitrust violations "as to certain *bilateral*

12  agreements" between individual pairs of defendants.  768 F. Supp. 2d at 975 (emphasis in

13  original).  The court rejected plaintiffs' contention that these bilateral agreements were sufficient

14  to allege a broader, "industry-wide" conspiracy involving all of the defendants.  *Id.*  Plaintiffs

15  attempt to distinguish *Iowa Ready-Mix* on its facts,[2] but ignore the case's basic principle—that

16  even criminal guilty pleas to per se unlawful bilateral agreements do not alone support an

17  inference of an "industry-wide" conspiracy.  *Id.* at 975, 978.  This is precisely the problem with

18  Plaintiffs' overarching conspiracy claim here.  Similarly, in *In re Insurance Brokerage Antitrust*

19  *Litigation*, the court held that allegations of similar "hub-and-spoke" conspiracies between

20  brokers and their insurer-partners "fail to plausibly imply" a broader "global conspiracy" among

21  all defendant brokers and insurers.  618 F.3d 300, 348 (3d Cir. 2010).  (*See* Mot. at 13.)  Plaintiffs

22  do not even address *In re Insurance Brokerage*.

23           Plaintiffs repeatedly cite their allegation that Defendants entered into the bilateral

24  agreements "with knowledge of the other Defendants' participation, and with the intent of

25

26  [2] Plaintiffs point to the statement in *Iowa Ready-Mix* that the plaintiffs had "not specifically
alleged that any particular plaintiff purchased ready-mix concrete from any particular defendant
27  during the class period."  768 F. Supp. 2d at 978.  (Opp. at 14.)  This observation only reflected
the court's doubts about plaintiffs' standing.  However, the court did not reach the issue of
28  standing because plaintiffs failed to allege sufficient facts of an overarching conspiracy.

7

1   accomplishing the conspiracy's objective."  (Opp. at 3, 6, 9.)  These are nothing more than

2   conclusory allegations, and *Kendall* requires that they be disregarded.  518 F.3d at 1048 (rejecting

3   similar recitation that defendants had "knowingly, intentionally and actively participated" in the

4   alleged conspiracy).

5         Plaintiffs' reliance on criminal conspiracy cases such as *Perlaza* and *Reed* is misplaced.

6   (*See* Opp. at 11.)  As these cases make clear, before a defendant may be held liable for

7   participation in a conspiracy, the government must establish that a conspiracy existed in the first

8   place.  *United States v. Perlaza*, 439 F.3d 1149, 1177 (9th Cir. 2006) ("*once the existence of a*

9   *conspiracy is established*, a defendant may be convicted of knowing participation therein")

10  (emphasis added); *United States v. Reed*, 575 F.3d 900, 923-24 (9th Cir. 2009) (government must

11  prove "an agreement to accomplish an illegal objective . . . . [*O*]*nce a conspiracy is established*,

12  only a slight connection to the conspiracy is necessary . . . .") (emphasis added).  Plaintiffs'

13  Complaint fails because it does not adequately allege that *an overarching conspiracy existed at*

14  *all.*  Without sufficient evidence of the existence of an overarching conspiracy, it is of no import

15  that conspiracy law requires only evidence of "knowing participation."

16        The civil conspiracy authorities Plaintiffs cite (*see* Opp. at 15-16) likewise make clear that

17  the existence of a conspiracy must be established before any defendant's participation in or

18  liability for the conspiracy is relevant.  *See, e.g.*, *ABA Model Jury Instructions in Civil Antitrust*

19  *Cases*, at B-14 (2005 ed.) ("*If you find that the alleged conspiracy existed*, then the acts and

20  statements of the conspirators are binding on all those whom you find were members of the

21  conspiracy.") (emphasis added); *Beltz Travel Serv. Inc. v. Int'l Air Transp. Ass'n*, 620 F.2d 1360,

22  1367 (9th Cir. 1980) ("*If Beltz can establish the existence of a conspiracy* in violation of the

23  antitrust laws and that appellees were a part of such a conspiracy, appellees will be liable for the

24  acts of all members of the conspiracy in furtherance of the conspiracy") (emphasis added); *In re*

25  *Rubber Chems. Antitrust Litig.*, 504 F. Supp. 2d 777, 779, 789-90 (N.D. Cal. 2007) (defendant

26  challenged only the extent of his own participation in the alleged price-fixing conspiracy, and not

27  the existence of the alleged conspiracy).  Here the Complaint fails to meet this basic

28  prerequisite—alleging sufficient facts to support an overarching conspiracy.

DEFENDANTS' REPLY ISO MOTION TO
DISMISS CONSOL. AM. COMPL.
NO. 11-CV-2509-LHK

1    The distinction between a series of alleged bilateral agreements and an overarching

2  conspiracy is not mere semantics.  The distinction goes to fundamental issues of liability, proof,

3  and fairness.  Unless Plaintiffs can establish an overarching conspiracy, there is no basis to hold

4  Adobe, for example, liable for an alleged agreement between Lucasfilm and Pixar.  *See, e.g.*,

5  *Dickson v. Microsoft Corp.*, 309 F.3d 193, 211 (4th Cir. 2002) (where plaintiff had alleged

6  separate bilateral conspiracies between Microsoft and three OEMs, one OEM could not be held

7  responsible for Microsoft's acts with the other OEMs because "only acts taken in furtherance of

8  *that* alleged conspiracy are appropriately considered in determining the adverse effects of the

9  claimed restraints on trade, not acts of one conspirator taken in furtherance of other possible,

10  distinct conspiracies") (emphasis added).  And trying to bring claims based on separate alleged

11  bilateral agreements in one case also would raise serious evidentiary and joinder questions.  *See,*

12  *e.g.*, *Wynn v. Nat'l Broad. Co.*, 234 F. Supp. 2d 1067, 1078-79 (C.D. Cal. 2002) (allegation that

13  defendants engaged in the same "pattern and practice" of discrimination in hiring employees was

14  not sufficient to satisfy the requirement for joinder that the claims against all defendants "arise[]

15  out of the same transaction or occurrence").  While Plaintiffs no doubt perceive a tactical

16  advantage in the joint and several liability that would attach to an overarching conspiracy, that is

17  not a proper basis for lumping Defendants together into one claim.  There is no "overarching

18  conspiracy," and the Court should dismiss Plaintiffs' antitrust claims on that basis alone.

19    **C.    Plaintiffs' Argument That Non-solicitation Agreements Are "Per Se"**
          **Antitrust Violations Is Both Irrelevant and Wrong as a Matter of Law.**
20

21    Plaintiffs repeatedly assert that non-solicitation agreements are judged under the per se

22  standard rather than the rule of reason.  (Opp. at 2, 13, 22-25.)  To resolve this motion, the Court

23  need not decide which standard applies.  Plaintiffs' claim of an overarching conspiracy fails

24  because they have alleged no evidentiary facts to support such a conspiracy.  Nonetheless,

25  Plaintiffs are simply wrong in their assertion that non-solicitation agreements are per se illegal.

26    Per se treatment is the exception.  Courts have applied such treatment to only a few types

27  of agreements—principally price-fixing, market allocation and bid rigging.  As a matter of law,

28  such conduct is unlawful regardless of its actual impact on the relevant market and any benefits it

DEFENDANTS' REPLY ISO MOTION TO
DISMISS CONSOL. AM. COMPL.
NO. 11-CV-2509-LHK

1    may generate.  By contrast, the rule of reason is the "presumptive form of analysis" used to judge

2    most alleged antitrust violations.  *Texaco Inc. v. Dagher*, 547 U.S. 1, 5 (2006).  The rule of reason

3    requires a balancing of the benefits from the challenged restraint against any alleged

4    anticompetitive impact on the market.

5           Before a court may condemn a category of activity as per se illegal, it must conduct some

6    assessment of whether there is a legitimate business justification for the collaboration.  *Broad.*

7    *Music, Inc. v. Columbia Broad. Sys., Inc.* ("*BMI*"), 441 U.S. 1, 7-8, 19-20 (1979).  In *BMI*, the

8    Court identified two questions central to this assessment.  First, is the practice "plainly

9    anticompetitive" in that it "facially appears to be one that would always or almost always tend to

10   restrict competition or decrease output."  *Id.* at 8, 19-20 (citation omitted).  Second, is the practice

11   "designed to increase economic efficiency and render markets more, rather than less,

12   competitive."  *Id.* at 19-20 (internal quotation omitted).  Put differently:  "Per se treatment is

13   proper only '[o]nce experience with a particular kind of restraint enables the [c]ourt to predict

14   with confidence that the rule of reason will condemn it.'"  *Cal. ex rel. Harris v. Safeway, Inc.*,

15   651 F.3d 1118, 1133 (9th Cir. 2011) (en banc) (quoting *Arizona v. Maricopa Cnty. Med. Soc'y*,

16   457 U.S. 332, 344 (1982)) (rejecting per se treatment and "quick look" analysis for revenue-

17   sharing agreement among grocery stores during union strike); *see also BMI*, 441 U.S. at 20 &

18   n.33 (per se classification reserved for activities that, based on "considerable" judicial and

19   economic experience, have been shown to have "no purpose except stifling of competition")

20   (citation omitted); *State Oil Co. v. Khan*, 522 U.S. 3, 10 (1997) ("*Per se* treatment is appropriate

21   once experience with a  particular kind of restraint enables the Court to predict with confidence

22   that the rule of reason will condemn it.") (internal quotation omitted).  The Supreme Court has

23   cautioned against expanding the per se category to encompass new types of agreements,

24   particularly without a careful inquiry into the procompetitive effects and justifications for those

25   agreements.  *See FTC v. Ind. Fed'n of Dentists*, 476 U.S. 447, 458-59 (1986) (the Court has "been

26   slow to . . . extend per se analysis to restraints imposed in the context of business relationships

27   where the economic impact of certain practices is not immediately obvious"); *In re Online DVD*

28   *Rental Antitrust Litig.*, No. M 09–2029, 2011 WL 5883772, at *10 (N.D. Cal. Nov. 23, 2011)

10

1    (declining to apply per se treatment to a promotion agreement between Netflix and Walmart

2    based in part on "plaintiffs' inability to cite any legal authority otherwise clearly establishing the

3    manifestly anticompetitive nature of joint promotion agreements such as the one in question").

4            Defendants are unaware of a single case applying the per se rule to employee non-

5    solicitation agreements such as those alleged here.  In fact, the Ninth Circuit has specifically

6    refused to apply the per se rule to an agreement prohibiting a former executive from "raiding" his

7    former employer's employees.  *See Aydin Corp. v. Loral Corp.*, 718 F.2d 897, 899-901 (9th Cir.

8    1983).  Noting that such agreements "often serve legitimate business concerns," the court held

9    broadly that "courts have had inadequate experience with noncompetition and noninterference

10   covenants to warrant a per se categorization."  *Id*. at 900.  The non-solicitation agreements

11   alleged here are significantly less restrictive than the no-hire agreement in *Aydin Corp.* because

12   the alleged agreements here do not prohibit the hiring of any employee.

13           The complete absence of support for Plaintiffs' position is unsurprising.  Non-solicitation

14   practices are "dissimilar in several significant respects" from the classic per se offenses.  *Union

15   Circulation Co. v. FTC*, 241 F.2d 652, 656-57 (2d Cir. 1957).  Unlike classic per se offenses,

16   non-solicitation arrangements often serve legitimate and procompetitive business purposes, "such

17   as preserving trade secrets and protecting investments in personnel."  *See Aydin Corp.*, 718 F.2d

18   at 900.  For example, when two companies collaborate on joint venture projects, a non-

19   solicitation agreement allows the companies to participate in the project freely and without fear

20   that the other company is going to hire away their employees.  Absent such an agreement, the

21   procompetitive collaboration might never take place.

22           Given their legitimate, pro-competitive reasons, courts have uniformly held non-

23   solicitation agreements to a rule of reason standard, rather than per se treatment.  Indeed, courts

24   have applied a rule of reason analysis even where the alleged restraint precluded the hiring of

25   employees altogether.  *See Eichorn v. AT&T Corp.*, 248 F.3d 131, 144 (3d Cir. 2001) ("no-hire

26   agreement . . . is more appropriately analyzed under the rule of reason").  *Accord Haines v.

27   Verimed Healthcare Network LLC*, 613 F. Supp. 2d 1133, 1136-37 (E.D. Mo. 2009); *Weisfeld v.

28   Sun Chem. Corp.*, 210 F.R.D. 136, 138, 143 (D.N.J. 2002); *UARCO Inc. v. Lam*, 18 F. Supp. 2d

DEFENDANTS' REPLY ISO MOTION TO
DISMISS CONSOL. AM. COMPL.
NO. 11-CV-2509-LHK

1   1116, 1124 (D. Haw. 1998); *Cesnik v. Chrysler Corp.*, 490 F. Supp. 859, 866-67 (M.D. Tenn.

2   1980).

3        The classification of non-solicitation agreements under the rule of reason is categorical

4   and does not turn on whether the non-solicitation agreements were ancillary to some lawful

5   business collaboration.  *See Aydin Corp.*, 718 F.2d at 901 (rejecting argument that per se

6   treatment of a no-hire agreement is appropriate unless the no-hire agreement was ancillary to a

7   valid agreement).  In *Union Circulation*, for example, the Second Circuit applied the rule of

8   reason to an agreement among several magazine subscription sales agencies not to hire one

9   another's agents for one year after termination.  241 F.2d at 657.  This agreement was a flat ban

10   on hiring, and not ancillary to any business collaboration among the agencies.  *Id.* at 655-56.  The

11   court nevertheless rejected per se treatment "[b]ecause a harmful effect upon competition [was]

12   not clearly apparent."  *Id.*  at 657.  Forty years later, the Second Circuit reaffirmed its decision to

13   apply the rule of reason to such activities in considering an agreement among insurance firms not

14   to recruit and hire each others' agents.  *Bogan v. Hodgkins*, 166 F.3d 509, 515 (2d Cir. 1999)

15   ("Although such agreements fall within the ambit of antitrust law, we have nonetheless denied

16   them *per se* treatment because a harmful effect upon competition was not clearly apparent.")

17   (internal quotation omitted).[3]

18        Lacking support in the law, Plaintiffs rely heavily on the allegation found in DOJ's

19   complaints against Defendants that the alleged bilateral agreements constitute per se violations.

20   These allegations carry no weight.  Contrary to Plaintiffs' characterization (Opp. at 24), DOJ does

21   not make "findings"; DOJ is a plaintiff in litigation and, like any litigant, it makes allegations.

22

23   [3] Plaintiffs' cited cases are inapposite because they uniformly involve the kind of price-fixing and
    market allocation arrangements that have historically been accorded per se treatment; none

24   involved employee non-solicitation agreements.  *See United States v. Socony-Vacuum Oil Co.*,
    310 U.S. 150, 166-67 (1940) (price-fixing conspiracy by oil companies to raise the price of

25   gasoline through a joint program to purchase surplus gasoline on the spot market); *United States
    v. Brown*, 936 F.2d 1042, 1044-45 (9th Cir. 1991) (market allocation agreement by billboard

26   companies that restricted ability to compete for each other's billboard locations); *United States v.
    Coop. Theatres of Ohio, Inc.*, 845 F.2d 1367, 1368-70 (6th Cir. 1988) (customer allocation

27   agreement between booking agents not to compete for each other's customers); *Fleischman v.
    Albany Med. Ctr.*, 728 F. Supp. 2d 130, 137-38 (N.D.N.Y. 2010) (conspiracy among hospitals to

28   fix wages of nurses in Albany area).

1    Defendants strongly disagree with DOJ's characterization of the bilateral agreements as per se

2    violations, and no court ever adopted DOJ's argument.  To the contrary, the judgments entered in

3    the DOJ cases expressly disclaim any admission of wrongdoing or violation of law by

4    Defendants.  (Judgments at 2.)  Defendants admitted only that DOJ had alleged a claim under

5    Section 1 of the Sherman Act, not that DOJ had alleged a valid per se claim.  And, of course, DOJ

6    never alleged the "overarching conspiracy" that Plaintiffs are trying to manufacture here.[4]

7         In any case, Plaintiffs' own conduct in this litigation belies their argument that the alleged

8    non-solicitation agreements constitute per se violations.  Plaintiffs initially sought injunctive

9    relief as part of their antitrust claims (Compl. ¶ 126), but dismissed that request because the DOJ

10   consent decrees already provided the injunctive relief that Plaintiffs could have obtained.  (CMC

11   Tr. at 78:16-22; Docket No. 89.)  By so agreeing, Plaintiffs conceded that the law allows

12   Defendants to enter into non-solicitation agreements in a wide range of circumstances.

13   (Judgments §§ V.A.1.-5.)  Defendants can use non-solicitation agreements (a) as part of

14   collaboration agreements, such as joint development, technology integration, joint ventures, joint

15   projects such as teaming agreements, and the shared use of facilities (Judgments § V.A.5(iii));

16   (b) in connection with a wide range of business transactions, including mergers, acquisitions,

17   investments, and divestitures (*id.* § V.A.2); (c) in contracts with consultants, auditors, vendors,

18   recruiting agencies, or providers of temporary or contract employees (*id.* § V.A.3); (d) in

19   settlement or compromise of legal disputes (*id.* § V.A.4); and (e) in employment or severance

20   agreements with their employees (*id.* § V.A.1).

21        These broad categories of proper non-solicitation agreements—which Plaintiffs do not

22   challenge—necessarily imply that the per se approach cannot be applied to the category of non-

23   _____

24   [4] Plaintiffs' suggestion that judicial estoppel applies to the DOJ consent decrees is nonsense.  (*See*
     Opp. at 6.)  As Plaintiffs' cases make clear, judicial estoppel precludes a party from taking
     inconsistent positions in the same litigation only when the issue was previously litigated and

25   relied upon.  *See, e.g.*, *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001) (judicial estoppel
     "generally prevents a party from prevailing in one phase of a case on an argument and then

26   relying on a contradictory argument to prevail in another phase"); *Yniguez v. Arizona*, 939 F.2d
     727, 738 (9th Cir. 1991) (judicial estoppel warranted because "we will not allow a party to seek

27   an outcome directly contrary to the result he sought and obtained in the district court") (emphasis
     omitted).  This is not the same litigation, nor are Defendants' positions inconsistent because,

28   unlike Plaintiffs here, DOJ never alleged any "overarching conspiracy."

DEFENDANTS' REPLY ISO MOTION TO
DISMISS CONSOL. AM. COMPL.
NO. 11-CV-2509-LHK

1   solicitation agreements.  In other words, the fact that a wide variety of non-solicitation

2   agreements are permissible means that any challenged non-solicitation agreement must be

3   considered based on its pro-competitive benefits and impact on the relevant market.  Such an

4   analysis under the proper rule of reason standard would show that the attack on the alleged

5   bilateral agreements alleged in the Complaint is meritless.  The Court would have to conduct a

6   full analysis of their procompetitive benefits, and consider factors such as the relevant market,

7   market power, and alleged competitive harm—factors Plaintiffs try to avoid by mislabeling their

8   claim a per se violation.  Plaintiffs' claims are properly evaluated under the rule of reason.

9        **D.**    **Plaintiffs' Claims of Injury Are Unsupported by the Required Factual Allegations.**

10

11        Plaintiffs' antitrust claims also fail because they have not alleged facts to plausibly show

12   that they have suffered injury.  An antitrust plaintiff must allege that he suffered injury regardless

13   of whether he alleges a per se or rule of reason case.  *Atl. Richfield Co. v. USA Petroleum Co.*,

14   495 U.S. 328, 341, 344 (1990) (rejecting the "suggestion that no antitrust injury need be shown

15   where a *per se* violation is involved"; in a per se case, "the need for the antitrust injury

16   requirement is underscored"); *Knevelbaard Dairies v. Kraft Foods, Inc.*, 232 F.3d 979, 987 n.5

17   (9th Cir. 2000) (in per se price-fixing case, plaintiffs "still must prove injury in fact and antitrust

18   injury"); *City of Pittsburgh v. W. Penn Power Co.*, 147 F.3d 256, 268 (3d Cir. 1998) (plaintiff

19   "must establish that he actually sustained injury-in-fact to business or property") (internal

20   quotations omitted, citing Phillip E. Areeda & Herbert Hovenkamp, *Antitrust Law* ¶ 360, at 192

21   (1995)).[5]  *Twombly*'s pleading standard applies equally to allegations of injury as to any other

22   element of Plaintiffs' claims:  "[A]n antitrust claimant must put forth factual 'allegations

23   plausibly suggesting (not merely consistent with)' antitrust injury."  *NicSand, Inc. v. 3M Co.*, 507

24   F.3d 442, 451 (6th Cir. 2007) (citing *Twombly*, 550 U.S. at 557).

25   [5] Plaintiffs must plead injury in fact and antitrust injury.  *See Atl. Richfield*, 495 U.S. at 334
26   ("injury, although causally related to an antitrust violation, nevertheless will not qualify as
    'antitrust injury' unless it is attributable to an anti-competitive aspect of the practice under
27   scrutiny").  Plaintiffs' references to Article III standing and damages in their discussion of injury
    muddy the waters. (Opp. at 17, 20.)  Defendants only challenged Plaintiffs' Article III standing
28   to seek injunctive and declaratory relief in light of their status as Defendants' former employees.

DEFENDANTS' REPLY ISO MOTION TO
DISMISS CONSOL. AM. COMPL.
NO. 11-CV-2509-LHK

1     Plaintiffs have alleged no evidentiary facts showing that they were injured by the alleged

2  bilateral agreements, let alone the alleged "overarching conspiracy."  There are no facts to

3  suggest how Plaintiff Hariharan, for example, would have been harmed by Lucasfilm's alleged

4  agreement with Pixar or by any overarching conspiracy among the Defendants.  This is not

5  surprising given that under the Complaint's allegations, every Defendant except Pixar (and every

6  other employer in the world) was free to solicit Hariharan for employment.  (Even Pixar was free

7  to *hire* Hariharan if he applied or was referred by a friend or headhunter; under Plaintiffs'

8  allegations, Pixar was restricted only from cold calling him.)  Nor do any of the named Plaintiffs

9  assert any injury unique to them; rather, they assert that they were harmed in the same way as

10  everyone else who worked for the Defendants.  But such an allegation of injury must be based on

11  evidentiary facts and be plausible.  *See NicSand*, 507 F.3d at 451.

12     Plaintiffs describe generally ways that cold calling *could* have an "impact on employee

13  compensation."  (Opp. at 20-21.)  However, Plaintiffs fail to identify the relevant employment

14  market(s) in which they allege compensation has been suppressed, or to allege facts showing that

15  Defendants have power in those markets.  Absent those allegations, Plaintiffs cannot plausibly

16  allege that they have been harmed by any alleged conduct by Defendants.  *See Am. Ad Mgmt.,*

17  *Inc. v. Gen. Tel. Co. of Cal.*, 190 F.3d 1051, 1057 (9th Cir. 1999) ("Antitrust injury requires the

18  plaintiff to have suffered its injury in the market where competition is being restrained.").  This

19  requirement is distinct from the requirement that a plaintiff allege a relevant market and market

20  power to plead the existence of an antitrust *violation* in a rule of reason case.  Plaintiffs have

21  failed to establish any plausible basis for their claim that they were *injured* by the supposed

22  overarching conspiracy.  To put it another way, Plaintiffs have shown no plausible basis to

23  believe that the seven Defendant companies possessed the ability (i.e., market power) to control

24  and suppress wages and employee mobility as Plaintiffs claim.

25     Plaintiffs' claims of injury are particularly implausible considering the multitude of high-

26  technology companies and other employers that compete against Defendants to hire from the

27  broad set of all salaried, non-retail employees comprising Plaintiffs' alleged class.  Well over 100

28

DEFENDANTS' REPLY ISO MOTION TO
DISMISS CONSOL. AM. COMPL.
NO. 11-CV-2509-LHK

million workers were employed in the United States throughout the purported class period,[6] and Plaintiffs offer no facts to suggest that these seven companies had any ability to control any segment of that enormous labor market.  The Complaint does not even attempt to address this, and Plaintiffs ignore this defect in their Opposition.

Plaintiffs cite a number of cases in which employees successfully established antitrust injury.  (Opp. at 18-19.)  In each case, however, the plaintiffs alleged injury flowing specifically to them as a result of the alleged conspiracy.  *See Roman v. Cessna Aircraft Co.*, 55 F.3d 542, 543 (10th Cir. 1995) (plaintiff had applied to work for defendant and was told that he could expect a firm offer of employment, but was subsequently turned down because defendant had agreed not to hire employees of plaintiff's former employer); *Quinonez v. Nat'l Ass'n of Sec. Dealers, Inc.*, 540 F.2d 824, 827 (5th Cir. 1976) (plaintiff sought out employment with each defendant and was rejected by each); *Nichols v. Spencer Int'l Press, Inc.*, 371 F.2d 332, 333 (7th Cir. 1967) (plaintiff was employed first by one defendant and then another defendant, but was terminated by the second defendant on account of its no-hire agreement with the first); *Doe v. Ariz. Hosp. & Healthcare Ass'n*, No. CV 07-1292, 2009 U.S. Dist. LEXIS 42871, at *8-9 (D. Ariz. Mar. 19, 2009) (plaintiffs were registered nurses who worked for and intended to continue working for defendant hospitals through nursing agencies).  Plaintiffs have alleged nothing of this sort here.  They do not allege that they would have applied or taken a job with another Defendant but for the alleged separate agreements or "overarching" conspiracy, or that the alleged conspiracy affected their particular employment options or choices.  Plaintiffs' failure to plead any plausible injury requires dismissal of their claims.  *See CBS Cos. v. Equifax, Inc.*, 561 F.3d 569, 572-73 (6th Cir. 2009) (antitrust claim properly dismissed for failure to allege facts supporting injury).[7]

---

[6] U.S. Dep't of Labor, Bureau of Labor Statistics, *The Employment Situation:  June 2007*, http://www.bls.gov/news.release/archives/empsit_07062007.pdf (146 million workers in the United States as of June 2007, the midpoint of Plaintiffs' alleged class period).

[7] *See also Howard Hess Dental Labs., Inc. v. Dentsply Int'l, Inc.*, 602 F.3d 237, 256-57 (3d Cir. 2010) (rejecting plaintiffs' attempt to base claim on alleged bilateral agreements because they failed to allege facts to show that such individual agreements caused anticompetitive injury).

DEFENDANTS' REPLY ISO MOTION TO
DISMISS CONSOL. AM. COMPL.
NO. 11-CV-2509-LHK

1   **II.   DEFENDANTS' ALLEGED EMPLOYEE NON-SOLICITATION AGREEMENTS
       DID NOT VIOLATE § 16600.**

2

3          Settled California law holds that an agreement not to solicit employees "does not violate

4   Section 16600."  *See Thomas Weisel Partners LLC v. BNP Paribas*, 2010 WL 546497, at *4-6

5   (N.D. Cal. Feb. 10, 2010), citing *Loral Corp. v. Moyes*, 174 Cal. App. 3d 268, 279-80 (1985).  An

6   employee non-solicitation agreement does "not hamper[] [anyone] from seeking employment

7   . . . . All they lose is the option of being contacted . . . first."  *Loral*, 174 Cal. App. 3d at 279.  As

8   this Court noted in *Thomas Weisel*, "it is crucial to distinguish at the outset among the differing

9   types of contractual provisions that might implicate a section 16600 violation."  *Thomas Weisel*,

10  2010 WL 546497, at *3.  California courts draw a clear distinction between agreements not to

11  solicit *clients*, which in certain circumstances can restrict a person from practicing a profession,

12  and agreements not to solicit *employees*, which cannot.  *Id.* at *4-6.  A prohibition on soliciting

13  former clients can violate Section 16600 because it can inhibit a person from pursuing a lawful

14  career, whereas agreements not to solicit employees place no restrictions on the employees'

15  pursuit of their career.  Thus, while Section 16600 does protect the right to "engag[e] in a lawful

16  profession, trade, or business," nothing in Section 16600 or the cases interpreting it grants or

17  protects any right of an employee to be cold called or otherwise solicited by another employer.

18  Cal. Bus. & Prof. Code § 16600; *Thomas Weisel*, 2010 WL 546497, at *4-6.  No case holds to the

19  contrary.  The Court should therefore dismiss the Section 16600 claim with prejudice.

20         Plaintiffs fail to distinguish this Court's decision in *Thomas Weisel*.  Plaintiffs concede

21  (Opp. at 27) that *Thomas Weisel*, *Loral*, and *Buskuhl* all stand for the proposition that an

22  agreement of the type that Plaintiffs allege here that prohibits "raiding" or soliciting a competing

23  employer's employees "does not violate section 16600."  *Thomas Weisel*, 2010 WL 546497, at

24  *4-6.  Contrary to Plaintiffs' suggestion, those cases do not turn on whether the agreements at

25  issue have a "legitimate purpose" (Opp. at 27).  And if they did depend on some legitimate

26  purpose, the same "anti-raiding" purpose to foster legitimate business relationships exists here.

27         With no response to that settled law, Plaintiffs instead attempt to brand the alleged

28  agreements here as lacking "societal benefit" and without "pro-competitive justification."  As

17

DEFENDANTS' REPLY ISO MOTION TO
DISMISS CONSOL. AM. COMPL.
NO. 11-CV-2509-LHK

support for this argument, however, Plaintiffs focus entirely on cases that involve irrelevant

agreements *not to compete for clients*.  (Opp. at 25-28 (citing *Edwards*, *VL Systems*, and

*Silguero*).)  Plaintiffs' argument is off point.

Plaintiffs rely heavily on *Edwards*—a case they say "makes clear that Defendants' explicit

agreements [not to solicit each other's employees] alone . . . are unlawful per se under section

16600 . . . ."  (Opp. at 26:26-28.)  That reliance is misplaced.  *Edwards* expressly did not

"address" agreements "not to solicit away" *employees* because "Edwards [did] not . . . contend

that the provision of the noncompetition agreement prohibiting him from recruiting Andersen's

employees violated section 16600."  *Edwards v. Arthur Andersen LLP*, 44 Cal. 4th 937, 942, 946

n.4 (2008).  Instead, *Edwards* held that a non-competition agreement that restricted Edwards from

working for or soliciting work from any of defendant's *clients* was "invalid [under 16600]

because it restrained his ability to practice his profession."  *Id.* at 948.

Plaintiffs' attempt to rely on *VL Systems* is similarly misplaced.  (Opp. at 28.)  There, the

court invalidated a contractual provision "covering not only solicitation by Star Trac, *but all

hiring*" of employees.  *VL Sys., Inc. v. Unisen, Inc.*, 152 Cal. App. 4th 708, 718 (2007) (emphasis

added).  *VL Systems* cited and discussed *Loral* in detail, but distinguished it because *Loral*

"ultimately held that the provision at issue was more like a nonsolicitation or nondisclosure

agreement than an invalid noncompete."  *Id.* at 714.  Thus, *VL Systems*, like *Edwards*, is

irrelevant to the line of cases holding that Section 16600 does not reach employee non-solicitation

provisions as a matter of law.[8]

The non-solicitation agreements Plaintiffs allege here are of the type that were held

---

[8] The other cases Plaintiffs cite are similarly inapposite.  *Silguero v. Creteguard, Inc.*, 187 Cal. App. 4th 60 (2010), did not involve an employee non-solicitation agreement, but rather involved a noncompetition agreement, "which prohibited [plaintiff] 'from all sales activities for 18 months following either departure or termination.'"  *Id.* at 64.  *Retirement Group v. Galante*, 176 Cal. App. 4th 1226 (2009), also did not involve an employee non-solicitation agreement, but merely held, as in *Edwards*, that contracts restraining solicitation of customers violated Section 16600.  *Id.* at 1238-42.  Finally, in *Richmond Technologies, Inc. v. Aumtech Business Solutions*, No. 11-CV02460, 2011 WL 2607158 (N.D. Cal. July 1, 2011), the court invalidated an agreement that "broadly prohibit[ed] Aumtech India from 'enter[ing] into any agreement' with ePayware's clients or employees . . . ."  *Id.* at *18.  Thus, the invalid agreement in *Richmond Technologies* not only restricted solicitation of employees, but also restricted *hiring* of employees and solicitation of *clients*, unlike the alleged agreements here.

1  permissible in *Thomas Weisel* and *Loral*, and are clearly distinguishable from those that were

2  alleged in *VL Systems* and *Edwards*. The alleged employee non-solicitation agreements do "not

3  violate Section 16600" as a matter of law. *Thomas Weisel*, 2010 WL 546497, at *4.

4  **III.    PLAINTIFFS HAVE NOT ADEQUATELY PLEADED A CLAIM UNDER
           CALIFORNIA BUSINESS AND PROFESSIONS CODE § 17200.**

5

6  Plaintiffs' Opposition does nothing to save their UCL claim. Defendants detailed in their

7  motion how Plaintiffs had failed to establish either "unlawful, unfair or fraudulent" conduct under

8  the UCL. (Mot. at 22-23.) Plaintiffs' Opposition does not contend that the "fraudulent" prong

9  applies, and concedes that a UCL claim premised on "unlawful" conduct cannot survive if

10 Plaintiffs' antitrust claims or other statutory claims fail. (Opp. at 28.) Instead, Plaintiffs contend

11 that even in the absence of a viable antitrust claim, those same allegations can nevertheless

12 establish a UCL violation predicated on "unfair" conduct. Plaintiffs attempt to distinguish

13 *Chavez v. Whirlpool Corp.*, 93 Cal. App. 4th 363, 375 (2001), by claiming that the *Chavez* court

14 "did not grasp . . . that the UCL has a broader scope than the antitrust statutes." (Opp. at 29.) But

15 countless courts, including this one, have agreed with *Chavez* and refused to allow a plaintiff to

16 save a failed antitrust conspiracy claim by alleging that the same conduct was "unfair" under the

17 UCL. *See Digital Sun v. Toro Co.*, No. 10-CV-4567, 2011 WL 1044502, at *5 (N.D. Cal.

18 Mar. 22, 2011) (Koh, J.) (dismissing UCL claim based on Sherman Act claim) (citing *Breakdown*

19 *Servs., Ltd. v. Now Casting, Inc.*, 550 F. Supp. 2d 1123, 1142 (C.D. Cal. 2007) ("in a case where

20 plaintiff's § 17200 claim is predicated on antitrust violations that fail to withstand summary

21 judgment, the § 17200 claim must also fail")); *see also SC Manufactured Homes, Inc. v. Liebert*,

22 162 Cal. App. 4th 68, 93 (2008) (failure of Cartwright Act claim means plaintiff cannot allege

23 that the same conduct was "unfair" under the UCL) (citing *Chavez*); *In re Cipro Cases I & II*,

24 No. D056361, 2011 WL 5120688, at *23 (Cal. Ct. App. Oct. 31, 2011) ("Our conclusion that

25 defendants are not liable under the Cartwright Act for entering into the Cipro agreements is also

26 dispositive of plaintiffs' causes of action for violation of the UCL and common law

27 monopolization."); *Facebook, Inc. v. Power Ventures, Inc.*, No. C08-05780, 2010 U.S. Dist.

28 LEXIS 93517, at *44-45 (N.D. Cal. July 20, 2010) (dismissing UCL claim that was "premised on

19

1    th[e] same conduct" as claim under the Sherman Act).[9]  Here, Plaintiffs contend that it is *both* an

2    unlawful conspiracy *and* an unfair business practice for "Defendants to conspire, in secret, to

3    deny their own employees the market value of their labor."  (Opp. at 30.)  Because those

4    allegations do not support a viable antitrust conspiracy claim, their UCL claim—whether labeled

5    as unlawful or unfair—must fail along with it.

6         Plaintiffs also completely ignore Defendants' showing that Plaintiffs failed to allege a

7    "loss of money or property" required to establish standing under the UCL.  (Mot. at 23-24.)

8    Plaintiffs point to no allegations suggesting how alleged agreements between a handful of

9    companies—only four of which involved their employers—resulted in their loss of money or

10   property, and their UCL claim must be dismissed for this reason as well.

11        Finally, Plaintiffs claim, in a single conclusory sentence, that they may "seek monetary

12   equitable remedies under the UCL" and imply that they can seek non-restitutionary disgorgement.

13   (Opp. at 30 & n.20.)  Plaintiffs suggest that such relief is not foreclosed by the California

14   Supreme Court's decision in *Korea Supply Co.* "because that case examined only available

15   remedies to an 'individual private plaintiff under the UCL.'"  (*Id.* (quoting *Korea Supply Co. v.*

16   *Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1144 (2003)).)  But Plaintiffs cannot avoid the express

17   language of *Korea Supply* that "disgorgement of money obtained through an unfair business

18   practice is an available remedy in a representative action only to the extent that it constitutes

19   restitution."  *Korea Supply*, 29 Cal. 4th at 1145 .

20                                    **CONCLUSION**

21        For the reasons set forth above and in Defendants' opening brief, the Court should dismiss

22   the Consolidated Amended Complaint.

23   Dated:  December 2, 2011                    O'MELVENY & MYERS LLP

24                                    By:  /s/ Michael F. Tubach
                                         Michael F. Tubach

25

26   _____
     [9] Plaintiffs' citation to cases allowing a UCL claim to proceed where the alleged unfair
27   competition is premised on a statute that does not provide a private right of action are beside the
     point and have no bearing on Plaintiffs' claims here.  *See Chabner v. United of Omaha Life Ins.*
28   *Co.*, 225 F.3d 1042, 1048 (9th Cir. 2000); *Ferrington v. McAfee, Inc.*, No. 10-CV-01455, 2010
     U.S. Dist. LEXIS 106600 (N.D. Cal. Oct. 5, 2010) (Koh, J.).

DEFENDANTS' REPLY ISO MOTION TO
DISMISS CONSOL. AM. COMPL.
NO. 11-CV-2509-LHK

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

GEORGE A. RILEY (Bar No. 118304)
griley@omm.com
MICHAEL F. TUBACH (Bar No. 145955)
mtubach@omm.com
LISA CHEN (Bar No. 234681)
lisachen@omm.com
CHRISTINA J. BROWN (Bar No. 242130)
cjbrown@omm.com
O'MELVENY & MYERS LLP
Two Embarcadero Center, 28th Floor
San Francisco, CA  94111-3823
Telephone:     (415) 984-8700
Facsimile:      (415) 984-8701

*Attorneys for Defendant Apple Inc.*

By: /s/ Donn P. Pickett
DONN P. PICKETT (Bar No. 72257)
donn.pickett@bingham.com
FRANK M. HINMAN (Bar No. 157402)
frank.hinman@bingham.com
ZACHARY J. ALINDER (Bar No. 209009)
zachary.alinder@bingham.com
BINGHAM MCCUTCHEN LLP
Three Embarcadero Center
San Francisco, CA  94111-4067
Telephone:     415.393.2000
Facsimile:      415.393.2286

*Attorneys for Defendant Intel Corp.*

By: /s/ Lee H. Rubin
EDWARD D. JOHNSON (Bar No. 189475)
wjohnson@mayerbrown.com
LEE H. RUBIN (Bar No. 141331)
lrubin@mayerbrown.com
MAYER BROWN LLP
Two Palo Alto Square, Suite 300
Palo Alto, CA  94306-2112
Telephone:     (650) 331-2000
Facsimile:      (650) 331-2060

KRISTEN A. ROWSE (Bar No. 235294)
krowse@mayerbrow.com
MAYER BROWN LLP
350 South Grand Avenue, 25th Floor
Los Angeles, CA  90071-1503
Telephone:     (213) 229-9500
Facsimile:      (213) 625-0248

*Attorneys for Defendant Google Inc.*

21

1

By: /s/ Daniel Purcell
2     JOHN W. KEKER (Bar No. 49092)
    jkeker@kvn.com
3     DANIEL PURCELL (Bar No. 191424)
    dpurcell@kvn.com
    EUGENE M. PAIGE (Bar No. 202849)
4     epaige@kvn.com
    PAULA L. BLIZZARD (Bar No. 207920)
5     pblizzard@kvn.com
    KEKER & VAN NEST LLP
6     633 Battery Street
    San Francisco, CA  94111-1704
7     Telephone:   (415) 391-5400
    Facsimile:   (415) 397-7188
8

9 *Attorneys for Defendant Lucasfilm Ltd.*

10 By: /s/ David C. Kiernan
    ROBERT A. MITTELSTAEDT (Bar No. 60359)
11     ramittelstaedt@jonesday.com
    CRAIG A. WALDMAN (Bar No. 229943)
12     cwaldman@jonesday.com
    DAVID C. KIERNAN (Bar No. 215335)
13     dkiernan@jonesday.com
    JONES DAY
14     555 California Street, 26th Floor
    San Francisco, CA 94104
15     Telephone:   (415) 626-3939
    Facsimile:   (415) 875-5700
16

17 *Attorneys for Defendant Adobe Systems, Inc.*

18 By: /s/ Robert A. Mittelstaedt
    ROBERT A. MITTELSTAEDT (Bar No. 60359)
19     ramittelstaedt@JonesDay.com
    CRAIG E. STEWART (Bar No. 129530)
20     cestewart@JonesDay.com
    JONES DAY
21     555 California Street, 26th Floor
    San Francisco, CA 94104
22     Telephone:   (415) 626-3939
    Facsimile:   (415) 875-5700
23

24     CATHERINE T. BRODERICK (Bar No. 251231)
    cbroderick@jonesday.com
25     JONES DAY
    1755 Embarcadero Road
    Palo Alto, CA  94303
26     Telephone:   (650) 739-3939
    Facsimile:   (650) 739-3900
27

28 *Attorneys for Defendant Intuit Inc.*

22

By: /s/ Emily Johnson Henn

ROBERT T. HASLAM (Bar No. 71134)
rhaslam@cov.com
EMILY JOHNSON HENN (Bar No. 269482)
ehenn@cov.com
COVINGTON & BURLING LLP
333 Twin Dolphin Dr., Suite 700
Redwood Shores, CA  94065
Telephone:      (650) 632-4700
Facsimile:      (650) 632-4800

DEBORAH A. GARZA (*pro hac vice*)
dgarza@cov.com
JONATHAN HERCZEG (*pro hac vice*)
jherczeg@cov.com
COVINGTON & BURLING LLP
1201 Pennsylvania Avenue NW
Washington, DC 20004
Telephone:      (202) 662-6000
Facsimile:      (202) 662-6291

*Attorneys for Defendant Pixar*

## ATTESTATION OF CONCURRENCE IN FILING

Pursuant to General Order No. 45, Section X(B) regarding signatures, I, Michael F. Tubach, hereby attest that concurrence in the filing of this Defendants' Reply in Support of Joint Motion to Dismiss the Consolidated Amended Complaint has been obtained from Defendants Intel Corp., Google Inc., Lucasfilm Ltd., Adobe Systems Inc., Intuit Inc., and Pixar.

Dated:   December 2, 2011                O'MELVENY & MYERS LLP


By: /s/ Michael F. Tubach
Michael F. Tubach

*Attorneys for Defendant Apple Inc.*