1                    UNITED STATES DISTRICT COURT

2                   NORTHERN DISTRICT OF CALIFORNIA

3                          SAN JOSE DIVISION

4

5

6     IN RE: HIGH-TECH EMPLOYEE    )  C-11-02509 LHK
      ANTITRUST LITIGATION,        )
7                                  )  SAN JOSE, CALIFORNIA
                                   )
8                                  )  JANUARY 26, 2012
      _____    )
9                                  )  PAGES 1-69
      THIS DOCUMENT RELATES TO:    )
      ALL ACTIONS                  )
10    _____    )

11

12                    TRANSCRIPT OF PROCEEDINGS
                 BEFORE THE HONORABLE LUCY H. KOH
13                 UNITED STATES DISTRICT JUDGE

14

15    A P P E A R A N C E S:

16    FOR THE PLAINTIFFS: LIEFF, CABRASER,
                          HEIMANN & BERNSTEIN
17                        BY:  JOSEPH R. SAVERI,
                               KATHERINE M. LEHE, AND
18                             DEAN M. HARVEY
                          275 BATTERY STREET, 30TH FLOOR
19                        SAN FRANCISCO, CALIFORNIA  94111

20

21

22              APPEARANCES CONTINUED ON NEXT PAGE

23

24    OFFICIAL COURT REPORTER: LEE-ANNE SHORTRIDGE, CSR, CRR
                               CERTIFICATE NUMBER 9595
25

                                                              1

1

2      APPEARANCES (CONTINUED)

3

4      FOR PLAINTIFF:        BERGER & MONTAGUE
                             BY:  ERIC L. CRAMER
5                            1622 LOCUST STREET
                             PHILADELPHIA, PENNSYLVANIA
6                            19103

7                            GRANT & EISENHOFER
                             BY:  JOHN D. RADICE
8                            485 LEXINGTON AVENUE
                             NEW YORK, NEW YORK  10017

9

10     FOR DEFENDANT         O'MELVENY & MYERS
       APPLE:                BY:  GEORGE A. RILEY,
11                                MICHAEL F. TUBACH, AND
                                  CHRISTINA BROWN
12                           TWO EMBARCADERO CENTER
                             28TH FLOOR
13                           SAN FRANCISCO, CALIFORNIA  94111

14     FOR DEFENDANT         JONES DAY
       ADOBE:                BY:  ROBERT A. MITTELSTAEDT
15                           555 CALIFORNIA STREET
                             26TH FLOOR
16                           SAN FRANCISCO, CALIFORNIA  94104

17     FOR DEFENDANT         KEKER & VAN NEST
       LUCASFILM:            BY:  DANIEL PURCELL
18                           633 BATTERY STREET
                             SAN FRANCISCO, CALIFORNIA  94111
19
                             BY:  EUGENE M. PAIGE
20                           710 SANSOME STREET
                             SAN FRANCISCO, CALIFORNIA  94111
21
       FOR DEFENDANT         MAYER BROWN
22     GOOGLE:               BY:  LEE H. RUBIN
                             TWO PALO ALTO SQUARE, SUITE 300
23                           PALO ALTO, CALIFORNIA  94306

24

25             APPEARANCES CONTINUED ON NEXT PAGE

                                                                2

1

2      APPEARANCES (CONTINUED)

3

4      FOR DEFENDANT          JONES DAY
       INTUIT:                BY:  CRAIG E. STEWART
5                             555 CALIFORNIA STREET
                              26TH FLOOR
6                             SAN FRANCISCO, CALIFORNIA  94104

7      FOR DEFENDANT          BINGHAM MCCUTCHEN
       INTEL:                 BY:  FRANK M. HINMAN
8                             1117 S. CALIFORNIA AVENUE
                              PALO ALTO, CALIFORNIA  94304
9
                              BY:  DONN P. PICKETT
10                            THREE EMBARCADERO CENTER
                              SAN FRANCISCO, CALIFORNIA  94111
11
       FOR DEFENDANT          COVINGTON & BURLING
12     PIXAR:                 BY:  EMILY J. HENN
                              333 TWIN DOLPHIN DRIVE, SUITE 700
13                            REDWOOD SHORES, CALIFORNIA  94065

14                            BY:  DEBORAH A. GARZA
                              1201 PENNSYLVANIA AVENUE NW
15                            WASHINGTON, D.C.  20004

16

17

18

19

20

21

22

23

24

25

                                                              3

```
 1   SAN JOSE, CALIFORNIA                JANUARY 26, 2012
 2                  P R O C E E D I N G S
 3             (WHEREUPON, COURT CONVENED AND THE
 4   FOLLOWING PROCEEDINGS WERE HELD:)
 5             THE CLERK:  CALLING CASE NUMBER
 6   C-11-02509 LHK, IN RE: HIGH-TECH EMPLOYEE ANTITRUST
 7   LITIGATION.
 8             MR. SAVERI:  GOOD AFTERNOON, YOUR HONOR.
 9   JOSEPH SAVERI, LIEFF, CABRASER, HEIMANN & BERNSTEIN
10   ON BEHALF OF THE PLAINTIFFS.
11             THE COURT:  OKAY.  GOOD AFTERNOON.
12             MR. CRAMER:  GOOD AFTERNOON, YOUR HONOR.
13   ERIC CRAMER FROM BERGER & MONTAGUE FOR PLAINTIFFS.
14             THE COURT:  OKAY.  GOOD AFTERNOON.
15             MR. HARVEY:  DEAN HARVEY OF LIEFF
16   CABRASER FOR THE PLAINTIFFS.
17             THE COURT:  OKAY.  GIVE ME JUST ONE
18   SECOND TO MAKE SURE I GET EVERYONE.
19             OKAY.  I'M SORRY.  I DIDN'T CATCH,
20   MR. CRAMER, WHO YOU'RE REPRESENTING.
21             MR. CRAMER:  PLAINTIFFS.
22             THE COURT:  OH, OKAY.  THANK YOU.  OKAY.
23             MR. HARVEY:  THAT WAS DEAN HARVEY OF
24   LIEFF CABRASER FOR THE PLAINTIFFS.
25             THE COURT:  OKAY.  WELCOME.
```

1           MR. RADICE:  JOHN RADICE OF GRANT &

2     EISENHOFER ON BEHALF OF THE PLAINTIFFS.

3           THE COURT:  OKAY.  WELCOME.

4           MS. LEHE:  KATHERINE LEHE, LIEFF

5     CABRASER, FOR PLAINTIFFS.

6           THE COURT:  OKAY.  WELCOME.

7           MR. SAVERI:  AND, YOUR HONOR,

8     MR. MICHAEL DEVINE, ONE OF OUR PLAINTIFFS, IS HERE

9     TODAY, AND I WANTED TO INTRODUCE HIM TO YOU.

10          THE COURT:  OKAY.  WELCOME.

11          ALL RIGHT.

12          MR. RILEY:  GOOD AFTERNOON, YOUR HONOR.

13    GEORGE RILEY OF O'MELVENY & MYERS.  I REPRESENT

14    APPLE.

15          I'M JOINED BY MY COLLEAGUE,

16    MICHAEL TUBACH, FROM O'MELVENY & MYERS.

17          MR. MITTELSTAEDT:  GOOD AFTERNOON, YOUR

18    HONOR.  BOB MITTELSTAEDT FOR ADOBE.

19          THE COURT:  OKAY.  WELCOME.

20          MR. STEWART:  CRAIG STEWART, YOUR HONOR,

21    FOR INTUIT.

22          THE COURT:  OKAY.  ONE SECOND.  WELCOME.

23          MR. RUBIN:  GOOD AFTERNOON, YOUR HONOR.

24    LEE RUBIN FROM MAYER BROWN FOR GOOGLE.

25          THE COURT:  OKAY.  WELCOME.

```
 1            MR. HINMAN:  FRANK HINMAN, YOUR HONOR,
 2    WITH BINGHAM MCCUTCHEN REPRESENTING INTEL.
 3            THE COURT:  OKAY.  WELCOME.
 4            MR. PURCELL:  YOUR HONOR, DAN PURCELL OF
 5    KEKER & VAN NEST REPRESENTING LUCASFILM.
 6            THE COURT:  OKAY.  ONE SECOND.  WELCOME.
 7            MS. HENN:  YOUR HONOR, EMILY HENN OF
 8    COVINGTON & BURLING REPRESENTING PIXAR.
 9            THE COURT:  OKAY.  WELCOME.
10            MS. GARZA:  YOUR HONOR, DEBORAH GARZA,
11    COVINGTON & BURLING, ALSO HERE ON BEHALF OF PIXAR.
12            MR. TUBACH:  I'VE ALREADY BEEN
13    INTRODUCED, YOUR HONOR.  I'M MICHAEL TUBACH.  I'M
14    WITH GEORGE RILEY.
15            THE COURT:  OKAY.  THANK YOU.  THANK YOU
16    FOR YOUR PATIENCE.
17            LET'S -- I HAVE SOME QUESTIONS FOR THE
18    MOTION AND THEN WE'LL HANDLE THE CMC PART.
19            ALL RIGHT.  LET ME ASK MR. SAVERI, I
20    THINK THAT THE BILATERAL AGREEMENTS DO STATE A
21    SHERMAN ACT CLAIM.
22            I'M STILL NOT CONVINCED THAT THERE'S AN
23    OVERARCHING CONSPIRACY THAT THE DIFFERENT
24    PLAYERS -- AND BY THAT I MEAN THE DIFFERENT
25    COMPANIES -- WERE AWARE THAT THIS WAS SORT OF AN
```

1    INDUSTRY-WIDE PRACTICE.

2            AND SO LET ME ASK YOU, WOULD YOU BE

3    OPPOSED TO BREAKING THIS UP INTO SMALLER CHUNKS?

4    AND IF YOU DID, HOW WOULD YOU DO IT?

5            EITHER WAY, EVEN IF I WERE TO GRANT THE

6    MOTION TO DISMISS ON THIS ISSUE, I WOULD GIVE YOU

7    LEAVE TO AMEND SO THEN YOU COULD ADD IN ADDITIONAL

8    FACTUAL ALLEGATIONS IF YOU WANTED TO CONTINUE TO

9    PURSUE THE OVERARCHING CONSPIRACY.

10           WHY DON'T YOU COMMENT ON THAT?

11           MR. SAVERI:  WELL, FIRST -- THANK YOU,

12   YOUR HONOR.

13           FIRST, AT THIS JUNCTURE, ALL OUR BURDEN

14   UNDER RULE 8 AND RULE 12 AND TWOMBLY IS IS TO STATE

15   A CLAIM AGAINST THE DEFENDANTS.

16           THE COURT:  UM-HUM.  OKAY.

17           MR. SAVERI:  IT'S NOT -- AND OUR CLAIM IS

18   FOR A CONSPIRACY TO LIMIT OUR CLASS MEMBERS'

19   MOBILITY WITH RESPECT TO THEIR EMPLOYMENT, AND

20   GENERALLY TO LIMIT AND REDUCE THE WAGES THAT WERE

21   PAID BY THE DEFENDANTS TO OUR CLASS MEMBERS.

22           THE COURT:  SO YOUR POSITION IS, AS LONG

23   AS YOU'VE STATED A CLAIM AS TO THE BILATERAL

24   AGREEMENTS, THAT'S ENOUGH?

25           MR. SAVERI:  UNDER RULE 8 AND RULE 12 FOR

7

1    PLEADING PURPOSES.

2                AT THE -- AT THE END --

3                THE COURT:  WHAT ABOUT NOTICE PURPOSES TO

4    THE DEFENSE?

5                MR. SAVERI:  WELL, CLEARLY I THINK THEY

6    HAVE NOTICE OF WHAT OUR CLAIM IS, AS YOU

7    CHARACTERIZED IT, AN OVERARCHING CONSPIRACY.

8                THERE'S REALLY NO -- THERE'S REALLY NOT

9    GOING TO BE ANY DISPUTE TODAY ABOUT WHETHER WE'VE

10   ALLEGED AN OVERARCHING CONSPIRACY, IF THAT'S THE

11   NOMENCLATURE WE'RE GOING TO USE, AND WHO -- AND

12   WHAT THE MATERIAL TERMS OF THAT ARE.

13               DEFENDANTS HAVE ARGUMENTS ABOUT WHY IT

14   DIDN'T HAPPEN, OR PERHAPS LIMITATIONS TO IT,

15   PERHAPS WHEN ONE PARTY ENTERED IT OR ONE PARTY

16   EXITED, OR PERHAPS THE EFFECT.

17               WE THINK ALL THOSE ARGUMENTS ARE

18   INCORRECT.  WE THINK THEY'RE UNTENABLE UNDER THE

19   LAW AND THE FACTS.

20               BUT WE THINK THOSE ARE ISSUES THAT SHOULD

21   BE RESOLVED ONCE WE'VE HAD AN OPPORTUNITY TO TAKE

22   THE DEPOSITIONS AND LOOK AT THE DOCUMENTS.

23               BUT FOR PURPOSES OF TODAY --

24               THE COURT:  UM-HUM.

25               MR. SAVERI:  -- WHAT WE NEED TO DO IS

1    DETERMINE, UNDER RULE 8, AS INTERPRETED BY TWOMBLY,

2    WHETHER THE PLAINTIFFS HAVE STATED A CLAIM UNDER

3    OUR FOUR CAUSES OF ACTION:  UNDER THE FEDERAL

4    ANTITRUST LAW; UNDER THE STATE ANTITRUST LAW; UNDER

5    THE CALIFORNIA UNFAIR COMPETITION LAW; AND UNDER

6    SECTION 16600, ANOTHER STATE STATUTE.

7              THE COURT:  UM-HUM.

8              MR. SAVERI:  SO, YOUR HONOR, WE HAVE

9    STATED A CLAIM.

10             IN FACT, THE DEFENDANTS HAVE AGREED THAT

11   THESE BASIC ALLEGATIONS, AT LEAST WITH RESPECT TO

12   WHAT WE'RE CALLING THE BILATERAL AGREEMENTS, ARE

13   SUFFICIENT TO STATE A CLAIM, AND THAT'S WHAT THEY

14   AGREED TO WITH THE GOVERNMENT.

15             AND I'M NOT A BIG FAN OF ESTOPPEL

16   ARGUMENTS, BUT HERE I THINK WE ACTUALLY DO HAVE A

17   PRETTY STRONG ONE BECAUSE THE DEFENDANTS, IN FACT,

18   ON ALLEGATIONS -- ON THESE ALLEGATIONS, WHICH THEY

19   SAY WE COPIED FROM THE FEDERAL CASE, THEY'VE AGREED

20   THAT WE STATED A CLAIM UNDER SECTION I OF THE

21   SHERMAN ACT.

22             IN FACT, THE ONLY THING DEFENDANTS SAY IN

23   RESPONSE TO THAT IS THAT THE RULES OF ESTOPPEL

24   DON'T APPLY BECAUSE THIS IS A SEPARATE PIECE OF

25   LITIGATION, AND THEY NEGLECT A NINTH CIRCUIT CASE

1      THAT THEY DON'T CITE.

2                 BUT EVEN, EVEN IF YOU -- YOUR HONOR, EVEN

3      IF YOU TAKE THE ESTOPPEL POINT AWAY, WE SAY THAT WE

4      HAVE SHOWN, UNDER TWOMBLY, A PLAUSIBLE OVERARCHING

5      CLAIM, AND THAT IS -- FIRST I'D LIKE TO MAYBE JUST

6      TOUCH FOR A MINUTE ABOUT WHAT PLAUSIBILITY MEANS IN

7      THIS CONTEXT.

8                 PLAUSIBILITY DOESN'T MEAN WE PROVE OUR

9      CLAIMS HERE, OBVIOUSLY.

10                THE COURT:  WELL, LET ME INTERRUPT YOU

11     FOR A MINUTE.

12                SO IF I LOOK AT PARAGRAPHS 55 AND 108 OF

13     YOUR COMPLAINT, I'M ASSUMING THAT, FROM THOSE

14     PARAGRAPHS, YOU WANT AN INFERENCE TO BE DRAWN THAT

15     THIS WAS A CONSPIRACY, THAT ALL THE COMPANIES THAT

16     ARE ON THE CHART ON PAGE 18 WERE AWARE OF WHAT

17     EVERYONE ELSE WAS DOING.

18                MR. SAVERI:  UM -- I'M SORRY.

19                THE COURT:  AND I'M JUST SAYING, JUST --

20     I THINK THERE ARE PIECES OF THAT CHART THAT I THINK

21     THAT INFERENCE CAN BE DRAWN, BUT I'M NOT CONVINCED

22     THAT LUCASFILM WAS AWARE OF THE INTUIT AGREEMENT,

23     OR ADOBE WAS AWARE OF THE INTEL AGREEMENT.

24                I MEAN, I CAN SEE YOUR POINT THAT PERHAPS

25     ON THE SORT OF APPLE SIDE OF THE EQUATION, THAT

1    THERE PROBABLY WAS MORE KNOWLEDGE THAT OTHER

2    COMPANIES WERE ALSO HAVING THESE BILATERAL

3    AGREEMENTS.

4         BUT TELL ME WHY I CAN DRAW THAT INFERENCE

5    FROM LUCASFILM AND INTUIT OR ADOBE AND INTEL.

6         MR. SAVERI:  THANK YOU, YOUR HONOR.

7         WE -- I WOULD SAY THAT WHEN YOU LOOK AT

8    THE ALLEGATIONS OF OUR COMPLAINT AND WHEN YOU LOOK

9    FOR PLACES WHERE WE ALLEGE FACTS FROM WHICH WE SAY

10   YOU SHOULD DETERMINE THAT OUR ALLEGATIONS ARE

11   PLAUSIBLE, IT IS PARAGRAPH 55, WHICH YOU REFERRED

12   TO, BUT THERE ARE OTHER ALLEGATIONS IN THE

13   COMPLAINT.

14        THE COURT:  OKAY.

15        MR. SAVERI:  LET ME TRY TO WALK YOU

16   THROUGH THEM AND IDENTIFY THEM.

17        THE FIRST OF THEM ARE THE EXTENSIVE

18   ALLEGATIONS REGARDING THE BILATERAL AGREEMENTS

19   THEMSELVES.

20        THE COURT:  UM-HUM.

21        MR. SAVERI:  THOSE AGREEMENTS ARE DIRECT

22   EVIDENCE OF THE CONSPIRACY.  THOSE ARE POWERFUL

23   AND, IN MY EXPERIENCE, REMARKABLE, REMARKABLY

24   SPECIFIC FACTUAL ALLEGATIONS.

25        WHAT'S -- AMONG OTHER THINGS, WHAT'S

1    IMPORTANT ABOUT THOSE ALLEGATIONS IS THE REMARKABLE

2    SIMILARITY IN THEIR BASIC ELEMENTS.

3              THEY ESSENTIALLY COVERED THE SAME TIME

4    PERIOD.  SOME OF THEM STARTED AT DIFFERENT TIMES,

5    OBVIOUSLY.

6              BASED ON WHAT WE KNEW AT THE TIME OF THE

7    COMPLAINT, IT DOES LOOK LIKE THESE AGREEMENTS MAY

8    HAVE -- THE FIRST ONE WE KNOW ABOUT WAS THE

9    LUCAS/PIXAR, BUT WE -- AND WITH THE PASSAGE OF TIME

10   AND, FRANKLY, IT LOOKS LIKE THE INVOLVEMENT OF THE

11   PRINCIPALS AT APPLE, STEVE JOBS, AND GOOGLE, THESE

12   AGREEMENTS BECAME MORE COMMON.

13             THE TWO INDIVIDUALS, JOBS AND SCHMIDT AT

14   GOOGLE, WERE INVOLVED IN ALL SIX AGREEMENTS WE

15   ALLEGE.

16             WE SPECIFICALLY ALLEGE DEFENDANTS'

17   PATTERNED THEIR AGREEMENTS AFTER EACH OTHER'S.

18             WE SAY THAT THE -- AND I HAVE TO BE A

19   LITTLE BIT CAREFUL HERE BECAUSE WE --

20             THE COURT:  OKAY.  HOW WAS STEVE JOBS

21   INVOLVED IN THE GOOGLE/INTEL AGREEMENT OR THE

22   GOOGLE/INTUIT AGREEMENT?

23             MR. SAVERI:  WE -- IT -- WELL, HE IS

24   INVOLVED BECAUSE HE WAS INVOLVED WITH MR. SCHMIDT

25   AND OTHER PEOPLE AT GOOGLE.

1          AND THAT AGREEMENT BETWEEN APPLE AND

2     GOOGLE, WHICH IS SIMILAR TO PRIOR AGREEMENTS WITH

3     LUCASFILM AND PIXAR AND OTHER AGREEMENTS, WE SAY

4     WAS -- WAS COPIED, ADOPTED, AND SPREAD.

5          NOW, THE DEFENDANTS' CLAIM, I GUESS, IS

6     THAT DESPITE THE COMMONALITY OF ALL THESE

7     AGREEMENTS, THEY'RE ASKING YOU TO SUSPEND DISBELIEF

8     AND IGNORE YOUR COMMON SENSE AND TO SAY THAT

9     DESPITE THE FACT THAT ALL THESE AGREEMENTS WERE

10    ESSENTIALLY THE SAME, THEY HAD NOTHING TO DO WITH

11    ONE ANOTHER.

12          AND SO WE SAY THAT OUR ALLEGATIONS THAT

13    THESE AGREEMENTS WERE, WERE COMMON IN THEIR BASIC

14    TERMS AND CONDITIONS AND SPREAD THROUGHOUT THIS

15    INDUSTRY PLAUSIBLY SUGGESTS THAT THESE AGREEMENTS

16    WERE REACHED AS PART OF A COMMON UNDERSTANDING AND

17    A COMMITMENT TO A COMMON PURPOSE, WHICH -- AND THE

18    COMMON PURPOSE IS THE CONSPIRACY TO ELIMINATE

19    MOBILITY AMONGST OUR CLASS MEMBERS AND TO REDUCE

20    AND SUPPRESS WAGES.

21          OF COURSE --

22          THE COURT:  MAY I INTERRUPT YOU A SECOND?

23          LET ME ASK -- LET ME ASK DEFENSE COUNSEL,

24    YOU DID -- YOU DID CONCEDE, WITH THE DEPARTMENT OF

25    JUSTICE, THAT THE BILATERAL AGREEMENTS, THE

1    ALLEGATIONS THAT THE DEPARTMENT OF JUSTICE MADE AS

2    TO THE BILATERAL AGREEMENTS DID STATE A SHERMAN ACT

3    CLAIM; CORRECT?

4              MR. RILEY:  THE GOVERNMENT'S BURDEN WAS

5    DIFFERENT THAN THE PRIVATE PLAINTIFFS' BURDEN.

6              THE PRIVATE PLAINTIFFS MUST ALLEGE AND

7    PROVE ANTITRUST INJURY UNDER SECTION IV OF THE

8    CLAYTON ACT IN ORDER TO HAVE STANDING.

9              THE GOVERNMENT DID NOT HAVE THAT

10   REQUIREMENT.

11             THE COURT:  OKAY.  LET'S ASSUME -- I

12   UNDERSTAND.

13             MR. RILEY:  OKAY.

14             THE COURT:  LET'S ASSUME -- LET'S ASSUME

15   A HYPOTHETICAL.  THERE IS ANTITRUST INJURY HERE.

16             IF THE BILATERAL AGREEMENTS THAT ARE

17   ALLEGED HERE, THERE'S NO COLLABORATION, THESE

18   AGREEMENTS ARE NOT TIED TO A COLLABORATION, THEY

19   ARE NOT LIMITED IN TERMS OF THE SCOPE OF EMPLOYEES

20   WHO ARE COVERED, THEY'RE NOT LIMITED AS TO TIME,

21   THEY'RE NOT LIMITED AS TO GEOGRAPHY, THIS IS NOT

22   PART OF A SALE, THEN YOU WOULD CONCEDE THAT IF IT

23   WERE JUST THESE BILATERAL AGREEMENTS AS ALLEGED IN

24   THIS CONSOLIDATED AMENDED COMPLAINT, AND ASSUMING

25   THERE WAS ANTITRUST INJURY, THEN THAT DOES STATE A

14

1        CLAIM FOR A SHERMAN ACT VIOLATION; CORRECT?

2                  MR. RILEY:  NO.

3                  THE COURT:  WHY?

4                  MR. RILEY:  BECAUSE MR. DEVINE, FOR

5        EXAMPLE, WAS AN EMPLOYEE OF ADOBE DURING THIS

6        PERIOD, ABOUT A YEAR AND A HALF.

7                  MR. DEVINE, UNDER NO CONCEIVABLE SET OF

8        FACTS THAT HAVE BEEN ALLEGED, OR COULD BE ALLEGED,

9        WOULD HAVE ANY STANDING TO SUE WITH REGARD TO AN

10       ALLEGED BILATERAL AGREEMENT BETWEEN INTUIT AND

11       GOOGLE.  IT HAS NOTHING TO DO WITH HIM.  IT'S A

12       COMPLETELY SEPARATE RELATIONSHIP BETWEEN INTUIT AND

13       GOOGLE.

14                  FURTHERMORE, WE WOULD CONTEND THAT THEY

15       HAVE NOT MET THEIR BURDEN TO SHOW PLAUSIBILITY

16       BECAUSE THERE IS AN OBVIOUS EXPLANATION FOR THESE

17       AGREEMENTS THAT HAS NOTHING TO DO WITH

18       ANTICOMPETITIVE BEHAVIOR, AND THAT IS THE

19       COLLABORATION THAT EXISTED BETWEEN THESE FIRMS.

20                  THE COURT:  OKAY.  WHAT ABOUT

21       MR. BRANDON MARSHALL?  DOES HE HAVE STANDING THEN?

22       HE WAS A SOFTWARE ENGINEER AT ADOBE.

23                  WOULD YOU CONCEDE, ASSUMING THERE'S

24       ANTITRUST INJURY, THAT HE HAS STATED A CLAIM FOR A

25       SHERMAN ACT VIOLATION AS TO THE AGREEMENT BETWEEN

1    ADOBE AND APPLE, FOR EXAMPLE?

2              MR. RILEY:  AGAIN, WE WOULD HAVE TO

3    ASSUME, CONTRARY TO WHAT'S IN THIS COMPLAINT,

4    BECAUSE IT'S NOT IN THIS COMPLAINT, THAT HE HAS

5    PROPERLY ALLEGED THAT THERE WAS AN EXISTENCE OF A

6    PLAUSIBLE AGREEMENT, AND THAT THAT AGREEMENT CAUSED

7    HIM ANTITRUST INJURY.

8              IN OTHER WORDS, IF WE MADE ALL OF THOSE

9    ASSUMPTIONS, THEN IF WE ASSUME THAT HE STATED A

10   CLAIM, HE WOULD BE STATING A CLAIM.

11             BUT THAT IS NOT THIS COMPLAINT.  THEY

12   WOULD HAVE TO COMPLETELY REPLEAD THIS COMPLAINT IF

13   THEY WERE GOING TO ALLEGE INJURY CAUSED BY

14   INDIVIDUAL BILATERAL AGREEMENTS.

15             AND THE DIFFERENCE HERE, AND IT IS

16   ABSOLUTELY CRITICAL, IS THAT MR. DEVINE, JUST TO

17   USE HIM AS AN EXAMPLE, WANTS DAMAGES FROM INTUIT

18   AND GOOGLE FOR BEHAVIOR THAT HAD ABSOLUTELY NO

19   IMPACT ON HIM.

20             IN OTHER WORDS, THEY WANT JOINT AND

21   SEVERAL LIABILITY AMONG ALL THE ALLEGED

22   CO-CONSPIRATORS.

23             THE COURT:  WELL, WHY DOES THAT -- I KNOW

24   YOU MAKE -- THE DEFENDANTS MAKE A POINT ABOUT THAT

25   A NUMBER OF TIMES, THAT THIS IS AN OVERARCHING

1     CONSPIRACY JUST FOR JOINT AND SEVERAL LIABILITY.

2            WHY DOES THAT MATTER?  ALL OF THESE

3     COMPANIES HAVE VERY DEEP POCKETS.  IF THE

4     PLAINTIFFS DECIDE, LOOK, WE WANT TO BREAK IT UP,

5     OKAY, FINE, WE'LL JUST GO AFTER THE TWO COMPANIES

6     IN A BILATERAL AGREEMENT AND WE'RE NOT WORRIED THAT

7     ANY OF THESE COMPANIES IS GOING TO BE JUDGMENT

8     PROOF AND WE'LL JUST GO AFTER EACH AGREEMENT AT A

9     TIME, SO WHY DOES IT MATTER WHETHER IT'S JOINT AND

10    SEVERAL LIABILITY OR JUST SEPARATE?

11            MR. RILEY:  IT'S A HUGE DIFFERENCE.

12            THE COURT:  WHY?

13            MR. RILEY:  BECAUSE THIS CASE WILL LOOK

14    COMPLETELY DIFFERENT.  THERE WILL BE DIFFERENT

15    CLASS DEFINITIONS AND THERE WILL BE DIFFERENT

16    DISCOVERY.

17            THEY WANT TO COME IN AND DISCOVER, SAY,

18    FROM APPLE, EVERYTHING ABOUT ALL OF ITS

19    RELATIONSHIPS WITH ALL OF THESE COMPANIES AS

20    OPPOSED TO JUST ITS RELATIONSHIP WITH ADOBE.

21            THE COURT:  BUT IF THEY BREAK IT UP, THEY

22    COULD GET APPLE'S RELATIONSHIP WITH ADOBE, APPLE'S

23    RELATIONSHIP WITH PIXAR, APPLE'S RELATIONSHIP WITH

24    LUCASFILM.

25            I MEAN, EVEN IF IT'S A BROKEN UP CASE,

1    WE'RE ESSENTIALLY TALKING ABOUT THE SAME DISCOVERY.

2    I WOULD PROBABLY CONSOLIDATE ALL THE CASES ANYWAY

3    EVEN IF THEY WERE BROKEN UP.

4          MR. RILEY:  BUT IT'S A VERY DIFFERENT

5    CASE AND IT'S A VERY DIFFERENT CLASS.

6          MR. DEVINE COULD NOT REPRESENT, FOR

7    EXAMPLE, EMPLOYEES OF INTUIT, HE COULDN'T, WHICH IS

8    WHAT HE IS PURPORTING TO TRY TO DO TODAY.

9          THE COURT:  RIGHT.  BUT DON'T YOU THINK

10   THEY COULD EASILY GO OUT AND FIND ONE FORMER

11   EMPLOYEE OF INTUIT TO SERVE AS A LEAD PLAINTIFF?

12         MR. RILEY:  WELL, WITH THEIR ADVERTISING

13   CAPABILITY, THEY MAY BE ABLE TO DO THAT.

14         BUT THAT IS NOT THIS CASE.  THAT'S NOT

15   THE FACTS THAT ARE ALLEGED IN THIS COMPLAINT, WHICH

16   IS THE SUBJECT OF THIS MOTION.

17         THE COURT:  LET ME ASK MR. SAVERI, ARE

18   YOU ARGUING THAT BOTH THE INDIVIDUAL BILATERAL

19   AGREEMENTS THEMSELVES ARE SHERMAN ACT VIOLATIONS,

20   AND THEN YOUR OVERARCHING CONSPIRACY IS A SEPARATE

21   SHERMAN ACT VIOLATION?

22         MR. SAVERI:  I DON'T THINK -- I DON'T

23   KNOW WHAT YOU MEAN BY "SEPARATE."

24         I MEAN, CERTAINLY OUR ALLEGATION IN THE

25   COMPLAINT IS THAT THEY ARE -- THE BILATERAL

1    AGREEMENTS ARE CLEAR.  THE ALLEGATIONS -- THE

2    FACTUAL ALLEGATIONS ARE MORE THAN ENOUGH.

3            WE SAY THEY ARE CONNECTED TO THE BIGGER

4    CONSPIRACY BECAUSE THEY EVIDENCED THE

5    UNDERSTANDING, THEY MEMORIALIZED ASPECTS OF THE

6    UNDERSTANDING, THEY SHOW HOW THE GENERAL CONSPIRACY

7    SPREAD.

8            SO WE CAN'T CHOP THEM UP AND SEPARATE

9    THEM FROM THE BROADER CONSPIRACY WE ALLEGE.

10            I MEAN, WHAT WE JUST HEARD, I THINK, ONE

11    OUR -- I DON'T THINK IT'S AN ACCURATE RENDITION OF

12    THE ALLEGATIONS IN THE COMPLAINT.

13            BUT ULTIMATELY THOSE ARE FACTUAL ISSUES

14    ABOUT WHO -- WHAT -- TO WHAT EXTENT DID THE

15    DEFENDANTS THAT WE NAME SHARE A COMMITMENT TO THE

16    COMMON PURPOSE THAT I DISCUSSED?

17            I MEAN, THE -- WHICH IS THE, THE GENERAL

18    AGREEMENT TO LIMIT THE MOBILITY OF THE -- OF THEIR

19    EMPLOYEES AND TO REDUCE THE WAGES THAT THEY WERE

20    BEING PAID.

21            THE OTHER PROBLEM IS -- I JUST WANT TO

22    NOTE ANOTHER THING.

23            THE OTHER THING THAT'S IN COMMON, AND

24    WHAT I WOULD POINT TO TO SHOW THAT OUR ALLEGATIONS

25    OF THE GENERAL SINGLE CONSPIRACY ARE PLAUSIBLE, WAS

19

1    THE FACT THAT THE DEFENDANTS, IN FACT, CONCEALED

2    THESE AGREEMENTS BECAUSE I BELIEVE THEY KNEW THEY

3    WERE WRONG.

4            THE -- THAT'S ANOTHER FACT WHICH SHOWS

5    THAT THE GENERAL CONSPIRACY IS PLAUSIBLE.

6            I THINK THE OTHER THING WE SHOULD

7    REMEMBER IS THAT THE -- THIS ARGUMENT DEPENDS ON

8    MISUNDERSTANDING OR MISAPPLICATION OF THE GENERAL

9    LAW THAT APPLIES TO CONSPIRACY.

10            I MEAN, WE SHOULD BE CLEAR ABOUT WHAT THE

11    LAW OF CONSPIRACIES IN ANTITRUST CASES DOES AND

12    DOESN'T REQUIRE.

13            WE CITED SOME OF THE AUTHORITIES IN OUR

14    BRIEF, AND I WON'T REALLY GO THROUGH ALL OF THEM --

15            THE COURT:  CAN I INTERRUPT YOU AND MOVE

16    ON?

17            MR. SAVERI:  SURE.

18            THE COURT:  LET'S MOVE ON.

19            MR. SAVERI:  YEP.

20            THE COURT:  SO FIRST OF ALL, I WANT TO

21    THANK YOU FOR WITHDRAWING YOUR PRAYER FOR

22    INJUNCTIVE RELIEF AS WE TALKED ABOUT AT THE LAST

23    CMC.

24            LET ME ASK YOU, WOULD YOU CONSIDER ALSO

25    WITHDRAWING AT LEAST YOUR PRAYER FOR DECLARATORY

```
 1    RELIEF BECAUSE THERE'S NOT -- I DON'T KNOW IF YOU

 2    CAN DEMONSTRATE THAT THE PLAINTIFFS ARE

 3    REALISTICALLY THREATENED BY REPETITION OF THE

 4    VIOLATION IN LIGHT OF THE FACT THAT THERE IS THIS

 5    CONSENT DECREE, THERE IS THIS MONITORING TO THE

 6    DEPARTMENT OF JUSTICE ANNUALLY.

 7              I JUST THINK YOU'RE GOING TO HAVE A

 8    DIFFICULT TIME SHOWING THAT.

 9              SO WHAT'S YOUR VIEW?

10              MR. SAVERI:  SO I TEND TO AGREE WITH YOU,

11    AND I THINK I'M GOING TO SAY TO YOU WHAT I SAID

12    LAST TIME, WHICH IS I TEND TO AGREE WITH YOU, BUT

13    I'D LIKE TO THINK A LITTLE AND CONSULT, AND I

14    THINK, AS WE DID THE LAST TIME, WE CAN REACT PRETTY

15    QUICKLY TO THAT.

16              THE COURT:  SURE.

17              MR. SAVERI:  OFF THE CUFF -- AND I'M

18    RELUCTANT TO DO THAT IN THIS KIND OF FORMAL

19    PROCEEDING --

20              THE COURT:  YEAH.

21              MR. SAVERI:  -- I THINK YOUR INSIGHT IS

22    PROBABLY RIGHT, THAT TO THE EXTENT THERE IS SOME

23    KIND OF PROTECTION FROM WHAT THEY DID WITH RESPECT

24    TO THE GOVERNMENT, I THINK THAT DOES, IN LARGE

25    PART, OBVIATE OR MOOT THE DECLARATORY RELIEF CLAIM.
```

1           THE COURT:  OKAY.  CAN YOU GIVE ME A

2    DATE, LIKE WE DID LAST TIME, BY WHICH YOU'RE EITHER

3    GOING TO SAY, "WE'VE THOUGHT ABOUT IT AND WE ARE

4    NOT DROPPING IT," OR YOU'RE DISMISSING IT?

5           MR. SAVERI:  SURE.  I THINK I WAS

6    PUNISHED BY MY COLLEAGUES FOR AGREEING TO SOMETHING

7    TOO QUICKLY LAST TIME, SO HOW ABOUT -- TODAY IS

8    THURSDAY.  HOW ABOUT MONDAY?

9           THE COURT:  IF YOU WANTED MORE TIME THAN

10   THAT, THAT WOULD BE FINE.  BUT THAT WOULD BE GREAT.

11          MR. SAVERI:  I THINK THE END OF THE DAY

12   MONDAY IS SOMETHING I CAN PROBABLY ACCOMPLISH.

13          THE COURT:  THANK YOU.  ALL RIGHT.

14          ALL RIGHT.  LET ME -- ALL RIGHT.  SO THAT

15   WOULD BE THE 30TH.  OKAY.  AND THAT'S EITHER GOING

16   TO BE A DISMISSAL OR JUST A STATUS REPORT THAT

17   YOU'RE NOT DISMISSING IT.

18          MR. SAVERI:  IT'S SOME VERSION OF A YES

19   OR A NO.

20          THE COURT:  SURE.

21          MR. SAVERI:  PROBABLY MORE LONG THAN THAT

22   BECAUSE IT'S A LAWYER WHO'S WRITING IT.

23          THE COURT:  OKAY.  SO THEN LET ME ASK YOU

24   ANOTHER QUESTION.

25          YOUR 16600 CLAIM --

```
 1                MR. SAVERI:  YES.

 2                THE COURT:  -- ONLY ASKS FOR DEC RELIEF.

 3                SO IF YOU DROP YOUR PRAYER FOR

 4      DECLARATORY RELIEF, IS THAT ONE GONE AS WELL?

 5                MR. SAVERI:  YOU KNOW, YOUR HONOR, THAT

 6      WAS THE -- THAT WAS THE -- THAT WAS THE HATCH THAT

 7      I DIDN'T WANT TO STEP INTO, AND I WAS THINKING IN

 8      THE BACK OF MY MIND --

 9                THE COURT:  YEAH.

10                MR. SAVERI:  -- SO I -- I UNDERSTAND WHAT

11      YOU'RE SAYING.

12                THE COURT:  YEAH.

13                MR. SAVERI:  AND I'D LIKE TO CONSIDER

14      THAT --

15                THE COURT:  SURE.

16                MR. SAVERI:  -- IN THE CONTEXT OF YOUR

17      ORIGINAL REQUEST.

18                THE COURT:  OKAY.  SO CAN YOU LET ME KNOW

19      ON THAT ONE AS WELL IN YOUR FILING?

20                MR. SAVERI:  YES.

21                THE COURT:  ALL RIGHT.  OKAY.  THANK YOU.

22                OKAY.  LET'S MOVE ON TO YOUR CLASS

23      DEFINITION.

24                SO YOUR ACTUAL CLASS MEMBERS ARE ALL

25      SOFTWARE ENGINEERS, OR I SHOULD SAY I GUESS THE
```

1    LEAD, OR THE NAMED PLAINTIFFS.

2              BUT THE DEFINITION IS FAR BROADER.

3              MR. SAVERI:  THAT --

4              THE COURT:  BUT IN YOUR COMPLAINT, YOU

5    KIND OF TALK ABOUT SKILLED EMPLOYEES.

6              SO TELL ME IF YOU ARE GOING TO REFINE THE

7    CLASS.  ARE YOU GOING TO NARROW IT TO EITHER

8    SKILLED EMPLOYEES, SOFTWARE ENGINEERS?  HOW ARE YOU

9    GOING TO DO THAT?

10             MR. SAVERI:  WELL, YOUR HONOR, FIRST

11   PROCEDURALLY, THE TIME TO DO THAT IS IN CONNECTION

12   WITH THE CLASS CERTIFICATION MOTION ITSELF, AND WE

13   INTEND, PURSUANT TO THE COURT'S SCHEDULE, WHEN WE

14   FILE OUR OPENING BRIEF TO HAVE HAD AN OPPORTUNITY

15   TO LOOK AT THE RECORDS, WHICH INCLUDE STATISTICAL

16   AND OTHER RECORDS FROM THE DEFENDANTS --

17             THE COURT:  OKAY.

18             MR. SAVERI:  -- AND TO -- AND TO MAKE

19   THAT DECISION.

20             THE ANSWER TO YOUR QUESTION IS WE ARE

21   CONSIDERING IT.

22             THE COURT:  OKAY.

23             MR. SAVERI:  I DON'T WANT TO SAY RIGHT

24   NOW WHETHER WE WILL NARROW IT OR DEFINE IT IN SOME

25   OTHER FASHION.

1          I THINK IT IS LIKELY, BASED ON WHAT WE

2     LEARN, IF WE HAVE A CHANCE TO LOOK AT THE

3     DOCUMENTS, THAT THE DEFINITION WILL BE TAILORED IN

4     SOME RESPECT.

5          BUT ULTIMATELY THAT, IN PART, WILL

6     REFLECT WHAT THE EVIDENCE SHOWS AND WHAT -- AND

7     THAT EVIDENCE IS IN THE HANDS OF THE DEFENDANTS.

8          SO WE -- WE ARE SENSITIVE TO THE QUESTION

9     YOU'VE RAISED.

10         BUT THE TIME TO RESOLVE THAT IS NOT NOW

11    ON THE PLEADINGS, BUT IN CONNECTION WITH THE CLASS

12    CERTIFICATION MOTION.

13         THE COURT:  OKAY.  WELL, I'LL JUST STATE

14    MY PERSONAL PREFERENCE IS, IF YOU CAN, TO DO IT

15    SOONER THAN CLASS CERT BECAUSE, YOU KNOW, SOMETIME

16    DURING CLASS CERT THERE'S GOING TO BE A DISPOSITIVE

17    MOTION FILED, AND THEN THERE WILL BE THIS WHOLE

18    QUESTION ABOUT, WELL, WE DIDN'T TAKE DISCOVERY AND

19    GET EXPERT DISCOVERY ON THAT CLASS DEFINITION, AND

20    IT'S JUST GOING TO --

21         MR. SAVERI:  YEAH.

22         THE COURT:  -- DELAY THE PROCEEDINGS.

23         AND THEN IT JUST -- IT MAKES IT A MESS,

24    THEN, TO HAVE A SUMMARY JUDGMENT ON THE OLD

25    DEFINITION AND YOU'RE TRYING TO GET IN A NEW

25

1    DEFINITION.

2              IT'S KIND OF HAIRY.

3              SO --

4              MR. SAVERI:  WE'LL TRY TO GET IT NAILED

5    DOWN AS SOON AS POSSIBLE.

6              THE COURT:  OKAY.

7              MR. SAVERI:  AMONG OTHER THINGS, I WOULD

8    SAY THAT WE -- YOU ARE RIGHT THAT OUR CLASS

9    REPRESENTATIVES ARE SOFTWARE ENGINEERS BY TRADE.

10             THE COURT:  UM-HUM.

11             MR. SAVERI:  OR BY VOCATION, AND PERHAPS

12   BY CATEGORIZATION WITHIN THE DEFENDANTS' OWN

13   RECORDS.

14             AND WE DON'T ACTUALLY KNOW HOW THEY

15   CATEGORIZE THEIR EMPLOYEES COMPLETELY, AND THAT'S

16   ONE OF THE PIECES OF INFORMATION THAT'S IMPORTANT.

17             I THINK THE CLASS WILL BE SOMEWHAT

18   BROADER THAN SOFTWARE ENGINEERS, AND I'M KIND OF

19   GROPING FOR THE RIGHT WAY TO DESCRIBE THAT.

20             THE COURT:  OKAY.

21             MR. SAVERI:  AND I DON'T KNOW IF IT'S

22   SOME KIND OF SOFTWARE ENGINEERS PLUS, OR SOME OTHER

23   FORMULATION.

24             THE COURT:  OKAY.

25             MR. SAVERI:  BUT THAT'S THE KIND OF -- WE

1    WANT TO FIND OBJECTIVE, ASCERTAINABLE

2    CHARACTERISTICS THAT THE COURT CAN RELY ON FOR

3    PURPOSES OF NOTICE, AND THAT'S WHAT RULE 23

4    REQUIRES, AND WE NEED SOME MORE INFORMATION IN

5    ORDER TO DO THAT.

6              BUT WE WANT -- WE ARE GOING TO DO THAT.

7              THE COURT:  OKAY.

8              MR. RILEY:  YOUR HONOR, IF I MAY BE HEARD

9    ON THAT?

10             WE THINK IT'S PROFOUNDLY IMPORTANT THAT

11   IN THEIR AMENDED COMPLAINT THEY DO PROPERLY DEFINE

12   WHO THE PLAINTIFFS ARE, BECAUSE THAT IS GOING TO

13   DETERMINE THE CONTOURS OF DISCOVERY.

14             THE DEPARTMENT OF JUSTICE, IN ITS

15   COMPLAINT AND ITS COMPETITIVE IMPACT STATEMENT,

16   TALKED ABOUT ENGINEERS AND SCIENTISTS.

17             THEY'VE SEEN THE DOCUMENTS.  THERE IS NO

18   BASIS AT ALL TO GO BEYOND THAT LIMITED SCOPE.  THEY

19   PROVIDED THE COURT WITH NO BASIS WHATSOEVER TO

20   EXPAND IT.

21             MR. SAVERI:  WELL, WOULD MR. RILEY AGREE

22   TODAY THAT THAT'S THE PROPER CLASS DEFINITION IN

23   THIS CASE?

24             MR. RILEY:  NO, I'M NOT PREPARED TO AGREE

25   TO IT.

1              BUT THAT'S THEIR BURDEN TO HAVE A

2    PROPERLY DEFINED CLASS.

3              MR. SAVERI:  WELL, YOUR HONOR, I THINK

4    THAT ANSWER IS INSTRUCTIVE AND HIGHLIGHTS MY POINT.

5              THE COURT:  ALL RIGHT.  LET ME ASK BOTH

6    OF YOU IF THE CARTWRIGHT ACT AND SHERMAN ACT CLAIMS

7    RISE AND FALL TOGETHER?  YOU AGREE WITH THAT?

8              MR. RILEY:  THEY DO FOR PLEADING

9    PURPOSES.

10             THE COURT:  YOU AGREE WITH THAT, OR NOT?

11             MR. SAVERI:  I WOULD SAY -- NOT, NOT -- I

12   WOULD SAY NOT NECESSARILY, YOUR HONOR.

13             I THINK THAT -- IN THESE RESPECTS:

14   DEPENDING ON -- I DON'T THINK THERE'S ANY DOUBT IN

15   THIS CASE, YOUR HONOR, THAT WE'VE PLED A PER SE

16   CLAIM WITH THE REQUISITE SPECIFICITY, AND THAT

17   CLAIM -- OR THOSE FACTS ARE SUFFICIENT UNDER BOTH

18   THE SHERMAN AND CARTWRIGHT ACT CLAIM.

19             CERTAINLY THERE IS LAW, AND IT IS

20   ESTABLISHED, THAT THE CARTWRIGHT ACT ITSELF IS MORE

21   BROAD, PROHIBITS MORE ANTITRUST ACTIVITY THAN THE

22   SHERMAN ACT DOES.

23             ALTHOUGH IN THIS CASE, YOUR HONOR, WHERE

24   WE HAVE A HORIZONTAL -- WE'RE ALLEGING A HORIZONTAL

25   CONSPIRACY BETWEEN COMPETITORS, AND THIS ALLEGATION

28

1    IS RIGHT IN THE MIDDLE OF THE SWEET SPOT OF BOTH

2    THE SHERMAN ACT AND THE CARTWRIGHT ACT, AND SO I

3    DON'T THINK THAT THE ANSWER DIFFERS AT ALL UNDER

4    THE SHERMAN AND CARTWRIGHT ACT.

5              BUT -- SO AS A TECHNICAL MATTER, AND

6    MAYBE IT'S SOMETHING THAT PEOPLE DEBATE, THE

7    CARTWRIGHT ACT IS MORE BROAD IN A NUMBER OF

8    RESPECTS.

9              I DON'T THINK IT REALLY MATTERS HERE

10   GIVEN THE STRENGTH AND SPECIFICITY OF THE

11   ALLEGATIONS.

12             THE COURT:  OKAY.  NOW, THE DEFENDANTS'

13   POSITION IS THAT THE COURT DOESN'T HAVE TO DECIDE

14   RIGHT NOW IF THE STANDARD IS, YOU KNOW, A PER SE

15   VIOLATION OR RULE OF REASON.

16             DO YOU AGREE WITH THAT, OR NOT?

17             MR. SAVERI:  I GENERALLY AGREE WITH THAT,

18   YOUR HONOR.  I THINK WE'VE PLED A PER SE CLAIM, BUT

19   I ALSO THINK THAT THAT IS SOMETHING THAT SHOULD BE

20   DECIDED AS WE DEVELOP A MORE COMPLETE RECORD.

21             THE COURT:  LET ME ASK, SO FROM THE

22   DEFENDANTS' PERSPECTIVE, YOUR STIPULATION THAT THE

23   DEPARTMENT OF JUSTICE HAD STATED A SHERMAN ACT

24   CLAIM SHOULD BE GIVEN NO WEIGHT AND HAS NO BEARING?

25             MR. RILEY:  THAT IS CORRECT.  UNDER

1    SECTION V OF THE CLAYTON ACT, IT HAS NO BEARING AT

2    ALL IN THESE PROCEEDINGS.

3            THAT IS A DIFFERENT CASE, DIFFERENT

4    ALLEGATIONS, AND SECTION V OF THE CLAYTON ACT SAYS

5    IT HAS ABSOLUTELY NO EFFECT ON A CIVIL PROCEEDING.

6            THEY HAVE A DIFFERENT BURDEN AND THEY'VE

7    ALLEGED A DIFFERENT THEORY OF THE CASE.

8            THE COURT:  WHAT -- ARE YOU ARGUING BOTH

9    ARTICLE III STANDING AND -- ARTICLE III INJURY AND

10   ANTITRUST INJURY, OR BOTH?

11           MR. RILEY:  WE'RE ARGUING ANTITRUST

12   INJURY WITH REGARD TO ALL PLAINTIFFS.  WE'RE

13   ARGUING ARTICLE III STANDING WITH REGARD TO

14   PLAINTIFFS WHO ARE ATTEMPTING TO ALLEGE INJURY FROM

15   MEMBERS OF THE ALLEGED CONSPIRACY WHO ARE NOT IN

16   PRIVITY WITH THE COMPANY THAT THEY WORKED FOR.

17           IN OTHER WORDS, MR. DEVINE HAS NO

18   ARTICLE III STANDING WITH REGARD TO ANYTHING THAT

19   HAD TRANSPIRED, ALLEGEDLY, BETWEEN INTUIT AND

20   GOOGLE.

21           MR. DEVINE HAS NO ANTITRUST INJURY AND,

22   HENCE, NO STANDING UNDER THE ANTITRUST LAWS WITH

23   REGARD TO THE ALLEGED CONSPIRACY.

24           THE COURT:  OKAY.  WELL, LET'S TAKE A

25   LOOK AT PARAGRAPH 108.  IT'S REALLY HARD TO MAKE

1    THE INFERENCE THAT THERE WASN'T A CONSPIRACY

2    BETWEEN ADOBE, APPLE, GOOGLE, PIXAR, AND LUCASFILM.

3            MR. RILEY:  UNDER --

4            THE COURT:  ARE YOU SAYING IT WAS

5    STEVE JOBS AT APPLE AND AT PIXAR, WITH SCHMIDT AND

6    LEVINSON ON THE BOARD OF GOOGLE AND APPLE, THAT --

7    HOW CAN YOU ARGUE THAT THERE WAS NO KNOWLEDGE

8    AMONGST THAT SET OF COMPANIES?

9            MR. RILEY:  VERY EASILY.

10           THE COURT:  UM-HUM.

11           MR. RILEY:  UNDER TWOMBLY, THE SUPREME

12   COURT SAYS YOU MUST CONSIDER WHETHER THERE IS AN

13   OBVIOUS ALTERNATIVE EXPLANATION THAT'S EXPLAINED BY

14   THE SELF-INTERESTED BEHAVIOR OF THE ALLEGED

15   CONSPIRATORS.

16           WE KNOW, AND THIS COURT SHOULD REFER TO

17   IT, BECAUSE IT'S REFERRED TO IN THE COMPLAINT, THE

18   COMPETITIVE IMPACT STATEMENT OF THE DEPARTMENT OF

19   JUSTICE.

20           THEY RELIED ON IT.  PLAINTIFFS QUOTE FROM

21   THE COMPETITIVE IMPACT STATEMENT.

22           THAT COMPETITIVE IMPACT STATEMENT SAYS,

23   AT PAGE 9, THAT THERE WERE COLLABORATIONS AMONG ALL

24   OF THESE DEFENDANTS, COLLABORATIONS THAT HAD

25   PRO-COMPETITIVE EFFECTS.

1             SO THE OBVIOUS EXPLANATION FOR THESE

2    RELATIONSHIPS IS THAT THESE WERE NON-SOLICITATION

3    AGREEMENTS, UNILATERAL IN NATURE BECAUSE THOSE ARE

4    COMMON IN THE INDUSTRY.

5             IN FACT, THE DEPARTMENT OF JUSTICE

6    SAYS --

7             THE COURT:  THE DEPARTMENT OF JUSTICE DID

8    NOT MAKE A FINDING THAT THESE WERE AGREEMENTS OR

9    COLLABORATIONS AND THAT THESE WERE NECESSARY AND

10   REASONABLY NECESSARY FOR COLLABORATIONS AND THAT

11   THESE WERE LIMITED ENOUGH TO BE LEGITIMATE FOR A

12   COLLABORATION CONTEXT.

13            MR. RILEY:  AND WE DISAGREE WITH THE

14   DEPARTMENT OF JUSTICE ON THAT.

15            THE COURT:  UM-HUM.

16            MR. RILEY:  BUT WHAT THE DEPARTMENT OF

17   JUSTICE DID NOT, IN FACT, FIND WAS THAT THERE WAS

18   ANY OVERARCHING CONSPIRACY, EVEN AMONG APPLE,

19   PIXAR, AND LUCASFILM.  THERE WAS NO FINDING OF

20   OVERARCHING CONSPIRACY.

21            THE DEPARTMENT OF JUSTICE SAID THESE WERE

22   SEPARATE BILATERAL AGREEMENTS, SEPARATE BILATERAL

23   AGREEMENTS.

24            AND THEY SPENT TWO YEARS INVESTIGATING

25   THIS AND THEY FOUND NO OVERARCHING CONSPIRACY AMONG

1    ANY OF THE DEFENDANTS AT ALL.

2              AND, IN FACT, THEY FOUND THESE WERE

3    COLLABORATIONS AMONG THESE COMPANIES AND

4    RELATIONSHIPS.

5              STEVE JOBS WAS THE CEO OF PIXAR AND APPLE

6    AT THE SAME TIME.  HE COULDN'T CONSPIRE WITH

7    HIMSELF.

8              SO THE GOVERNMENT CLAIMS THAT THE

9    RESTRAINTS WENT TOO FAR.  WE DISAGREE WITH THAT.

10             BUT, AGAIN, THE OBVIOUS EXPLANATION FOR

11   THE EXISTENCE OF THESE ALLEGED AGREEMENTS WERE THE

12   COLLABORATIONS, NOT AN ANTICOMPETITIVE INTENT.

13             BUT MORE IMPORTANTLY --

14             THE COURT:  I FIND THAT -- BASED ON THE

15   ALLEGATIONS IN THE COMPLAINT, I FIND THAT A BIT

16   HARD TO BELIEVE.

17             THIS WAS TOO -- ANYWAY, GO AHEAD.

18             MR. RILEY:  BUT THE FACT THAT MR. JOBS

19   WAS CEO OF BOTH PIXAR AND APPLE, AND THAT THERE WAS

20   SOME COMMON BOARD MEMBERSHIP, DOES NOT IN ANY WAY

21   SUGGEST AN OVERARCHING CONSPIRACY.  IT DOESN'T.

22             WHAT CAN EXPLAIN THESE BILATERAL

23   AGREEMENTS ARE THE OBJECTIVES OF THESE

24   COLLABORATIONS.

25             IN FACT, GIVEN THE NATURE OF THIS

33

```
 1   CONSPIRACY, IT'S IMPLAUSIBLE THAT IT WAS

 2   OVERARCHING.

 3            IF YOU LOOK AT PARAGRAPH 108, PIXAR IS

 4   FREE --

 5            THE COURT:  IF THE INDUSTRY DOESN'T WANT

 6   A BIDDING WAR, THEN THE INDUSTRY DOESN'T WANT A

 7   BIDDING WAR AND THEY WILL MAKE SURE THAT THERE IS

 8   COMPLIANCE WITHIN THE INDUSTRY TO PREVENT A BIDDING

 9   WAR AND POACHING.

10            I --

11            MR. RILEY:  AND THEY WOULD DO THAT IN A

12   WAY THAT IS FUNDAMENTALLY INCONSISTENT WITH WHAT IS

13   ALLEGED.

14            AND THAT IS BECAUSE -- AND, YOUR HONOR,

15   IF I COULD, I TOOK PARAGRAPH 108 AND I USED IT --

16   IF I CAN PASS THIS UP --

17            MR. SAVERI:  YOUR HONOR --

18            THE COURT:  HAVE YOU SHOWN THIS TO

19   MR. SAVERI?

20            MR. SAVERI:  NO.

21            MR. RILEY:  I'M SHOWING THIS TO

22   MR. SAVERI.  THIS IS FROM HIS REPLY, PARAGRAPH 108.

23   IT'S SLIDE 7.

24            THE COURT:  IF IT'S PARAGRAPH 108, I HAVE

25   IT BEFORE ME AND I DON'T NEED IT.
```

34

1            MR. SAVERI:  WE DON'T -- THAT'S NOT

2     PARAGRAPH 108.

3            MR. RILEY:  IT'S THE -- IT'S THE --

4            MR. SAVERI:  SO --

5            MR. RILEY:  WHAT I'M TRYING TO

6     DEMONSTRATE, YOUR HONOR, IS, USING HIS CHART, WE

7     PLACED MR. DEVINE AT ADOBE DURING THIS PERIOD.

8            NOW, IF, IN FACT, THERE WAS A CONSPIRACY

9     TO STOP COLD CALLING IN THE INDUSTRY, IT WOULDN'T

10    LOOK LIKE THIS BECAUSE EVERY MEMBER OF THIS

11    CONSPIRACY, THE SO-CALLED CONSPIRACY, EXCEPT APPLE

12    IS FREE TO COLD CALL MR. DEVINE, EVERY SINGLE ONE

13    OF THEM.

14           AND WE KNOW FROM THE ALLEGATIONS IN THE

15    COMPLAINT THAT THIS IS AN INDUSTRY THAT DOES

16    NATIONAL RECRUITING AMONG ALL HIGH TECH COMPANIES.

17           MR. SAVERI:  YOUR HONOR, AT THIS POINT

18    I -- IT'S PRETTY -- I DON'T RECOGNIZE THIS.  I'M

19    PRETTY SURE THIS ISN'T IN MY COMPLAINT.

20           MR. RILEY:  NO.  I'M TRYING TO

21    DEMONSTRATE, USING HIS EXHIBIT, WHAT THIS REALLY

22    MEANS, WHICH IS THAT EVERYONE, OTHER THAN APPLE,

23    UNDER THEIR ALLEGATIONS IS FREE TO COLD CALL ADOBE,

24    EVERYONE.

25           SO ANY CONSPIRACY THAT WOULD SUGGEST, AS

1    THE COURT PUT IT, AN EFFORT TO STOP COLD CALLING,

2    TO SUPPRESS WAGES, WOULD NOT LOOK LIKE THIS.

3            IN THIS CONSPIRACY, THIS SO-CALLED

4    CONSPIRACY, EVERY SINGLE MEMBER IS FREE TO CALL

5    MR. DEVINE.

6            IN FACT, IF YOU TAKE THEIR ALLEGATIONS,

7    GOOGLE CAN NOW MAKE MORE CALLS TO ADOBE BECAUSE

8    IT'S ALLEGEDLY CONSTRAINED FROM CALLING INTUIT.

9            AND UNDER THEIR OWN ALLEGATIONS, INTUIT

10   IS FREE TO CALL ANYONE, INCLUDING GOOGLE.

11           SO THIS CAN'T BE A CONSPIRACY.  THIS IS

12   WHY WE'VE MAINTAINED IT IS IMPLAUSIBLE, BASED ON

13   THESE ALLEGATIONS --

14           THE COURT:  WAIT.  HOW CAN INTUIT CALL

15   GOOGLE WHEN THEY HAVE AN AGREEMENT WITH GOOGLE NOT

16   TO DO POACHING?

17           MR. RILEY:  UNDER THE ALLEGATIONS -- AND

18   AGAIN, THIS IS ON PAGE 3 OF THE COMPETITIVE IMPACT

19   STATEMENT, WHICH IS REFERENCED IN THE COMPLAINT --

20   THE AGREEMENT BETWEEN GOOGLE AND INTUIT ONLY WENT

21   ONE WAY.  GOOGLE AGREED NOT TO CALL INTUIT.

22           INTUIT WAS FREE TO CALL GOOGLE.

23           AND THEN INTUIT WAS FREE TO CALL EVERY

24   OTHER MEMBER OF THE CONSPIRACY, THE SO-CALLED

25   CONSPIRACY.

1          THAT'S THE DIFFERENCE IN THE NATURE OF

2     THESE SO-CALLED NON-SOLICITATION AGREEMENTS.  THEY

3     WERE VERY DIFFERENT AT DIFFERENT LEVELS.  THEY'VE

4     JUST ALLEGED THAT THEY WERE THE SAME.

5          THE COURT:  AND GOOGLE WOULDN'T DEMAND

6     RECIPROCITY?

7          MR. RILEY:  NO.

8          THE COURT:  THEY WERE DOING IT OUT OF

9     KINDNESS AND GENEROSITY?

10          MR. RILEY:  THEY DON'T ALLEGE WHY GOOGLE

11     AGREED NOT TO COLD CALL INTUIT.

12          AGAIN, THE OBVIOUS EXPLANATION WAS

13     BECAUSE OF A RELATIONSHIP BETWEEN THOSE TWO

14     COMPANIES.

15          SOMETIMES A COLLABORATION ONLY GOES ONE

16     WAY.  SOMETIMES NON-SOLICITATION ONLY GOES ONE WAY.

17     THE EMPLOYEE WHO LEAVES A COMPANY AND IS UNDER A

18     NON-SOLICITATION ARRANGEMENT, THAT USUALLY JUST

19     GOES ONE WAY.  THE FORMER EMPLOYEE CAN'T SOLICIT

20     THE EMPLOYEES OF THE FORMER EMPLOYER.

21          BUT THIS CONSPIRACY, WHICH IS WHAT

22     THEY'VE ALLEGED, IS INCONSISTENT WITH ANY KIND OF

23     SCHEME TO SUPPRESS WAGES.

24          THE WAGES AT ADOBE COULD NOT POSSIBILITY

25     BE CONSTRAINED UNDER THIS KIND OF ARRANGEMENT.

1    IT'S IMPLAUSIBLE.

2              THE COURT:  ALL RIGHT.  LET ME GO TO THE

3    UCL.

4              MR. SAVERI:  I HAVE A LOT TO SAY ABOUT

5    THAT, AND I DON'T -- IF YOU HAVE -- WELL, FIRST OF

6    ALL, I'D POINT OUT THAT PARAGRAPH 104 OF OUR

7    COMPLAINT SAYS SPECIFICALLY THAT SENIOR EXECUTIVES

8    OF GOOGLE AND INTUIT AGREED, THROUGH DIRECT

9    COMMUNICATIONS, NOT TO COLD CALL EACH OTHER'S

10   EMPLOYEES.

11             SO MR. RILEY MAY BE ABLE -- I DON'T THINK

12   HE'S ABLE TO PROVE IT, BUT THAT IS AN ALLEGATION

13   WHICH IS DIRECTLY CONTRARY TO THE ALLEGATIONS IN

14   OUR COMPLAINT, AND THAT REALLY JUST HIGHLIGHTS THIS

15   ENTIRE ARGUMENT.

16             I MEAN, THIS IS NOT IN OUR COMPLAINT AND

17   IT IS INCONSISTENT WITH THE, THE PLAUSIBLE FACTS

18   WE'VE ALLEGED.

19             YOUR HONOR ASKED A QUESTION ABOUT

20   STANDING, I THOUGHT, AND WE GOT THIS.

21             I THINK I CAN -- I'M PUZZLED BY THAT.  I

22   MEAN, I WANT TO JUST ADDRESS THE STANDING POINT,

23   WHICH IS THE INTENT -- THE PURPOSE AND THE INTENT

24   OF THIS CONSPIRACY WAS TO LIMIT MOBILITY OF OUR

25   CLASS MEMBERS AND TO DEPRESS THEIR WAGES.

1           THE DIRECT TARGET OF THAT CONSPIRACY WAS

2    MR. DEVINE AND THE MEMBERS OF THE CLASS.

3           THAT IS -- THEY WERE PAID TOO LITTLE AND

4    THEIR MOBILITY WAS DECREASED.

5           THAT IS CLEAR ARTICLE III STANDING.  THAT

6    IS THE CLASSIC TYPE OF ANTITRUST INJURY, BECAUSE

7    IT'S EXACTLY THE TYPE OF ANTITRUST INJURY THAT THE

8    LAWS WERE INTENDED TO PREVENT.

9           NOW, WE -- I DON'T KNOW EXACTLY WHAT TO

10   SAY ABOUT THIS.  I THINK MR. RILEY IS SUGGESTING IN

11   SOME WAYS THAT THE CONSPIRACY IS MORE BROAD THAN

12   THE ONE WE ALLEGE, OR THAT UNLESS EVERYBODY IN THE

13   INDUSTRY IS INVOLVED IN A CONSPIRACY, IT'S NOT

14   PLAUSIBLE.

15          BUT THAT NEGLECTS WHAT OUR SPECIFIC

16   ALLEGATIONS ARE.

17          THE COURT:  LET ME ASK, WITH REGARD TO

18   THE UCL, TALKING ABOUT STANDING, YOU ONLY HAVE A

19   FOOTNOTE THAT ADDRESSES THE DEFENDANTS' POINT HERE

20   THAT THERE'S NO RESTITUTION AND HOW COULD ANY

21   POTENTIAL SALARY THAT MR. DEVINE OR ANYONE ELSE

22   COULD HAVE POTENTIALLY MADE, HOW IS THAT ANYTHING

23   OTHER THAN ATTENUATED EXPECTANCY?

24          MR. SAVERI:  YOUR HONOR, WE, FRANKLY,

25   DIDN'T HAVE AS -- WE COULD HAVE TAKEN MORE SPACE,

1     AND I GUESS I APOLOGIZE FOR PUTTING THE ARGUMENT,

2     THE RESPONSE IN A FOOTNOTE.

3              THE COURT:  UM-HUM.

4              MR. SAVERI:  BUT BASICALLY OUR RESPONSE

5     IS THE CRUZ CASE --

6              THE COURT:  YEAH.

7              MR. SAVERI:  -- WHICH HOLDS THAT UNDER

8     THE UCLA -- THE UCL, EXCUSE ME -- THAT AFFECTED

9     PERSONS ARE ENTITLED TO NON-RESTITUTIONARY

10    DISGORGEMENT.

11             WE DIDN'T SPEND A LOT OF TIME BRIEFING

12    THAT OR EXPLAINING WHAT THAT CASE SAYS.  WE REFER

13    YOU TO THAT CASE.

14             THE COURT:  UM-HUM.

15             MR. SAVERI:  I THINK IF YOU WANT US TO

16    EXPLAIN IT MORE, WE CAN.

17             BUT I, FRANKLY, DIDN'T WANT TO SPEND A

18    LOT OF TIME OR PAGES ON THAT ARGUMENT.

19             SO --

20             THE COURT:  WELL, I MEAN, UCL, IT'S

21    EITHER INJUNCTION OR DECLARATORY RELIEF, WHICH

22    WE'VE ALREADY HANDLED, OR IT'S RESTITUTION.

23             MR. SAVERI:  RIGHT.

24             THE COURT:  SO IF THERE'S NO RESTITUTION

25    HERE, THEN THAT CAUSE OF ACTION IS GOING TO BE

1    GONE, RIGHT?

2              MR. SAVERI:  SO LIKE I SAID, YOUR

3    HONOR --

4              THE COURT:  YEAH.

5              MR. SAVERI:  -- OUR CASE IS THE CRUZ CASE

6    WHICH SAYS THAT THERE CAN BE NON-RESTITUTIONARY

7    DISGORGEMENT UNDER 17200.

8              THE COURT:  OKAY.

9              MR. RILEY:  YOUR HONOR, THE CRUZ CASE

10   DOES NOT SAY THAT.

11             THE CRUZ CASE, CITING -- AND IN

12   PARTICULAR KOREA SUPPLY, KOREA SUPPLY SAYS, AS THE

13   COURT HAS SAID, RESTITUTION IS IT.

14             IF IT'S DISGORGEMENT ALONG WITH

15   RESTITUTION, IT CAN BE RESTITUTION.  IT CANNOT BE

16   DISGORGEMENT OF PROFITS.  IT CANNOT BE AN

17   EXPECTATION FORM OF DAMAGES.

18             IT MUST BE SOMETHING THAT THE PLAINTIFFS,

19   THE PLAINTIFF CLASS HAD AN INTEREST IN, MONEY THAT

20   WAS TAKEN FROM THEM OR PROPERTY THAT WAS TAKEN FROM

21   THEM.

22             IF YOU DO IT ON A CLASS BASIS -- AND THIS

23   IS WHAT CRUZ SAYS -- YOU CAN DO IT WITH A RECOVERY,

24   BUT IT MUST BE RESTITUTIONARY DAMAGES.  THAT'S THE

25   ONLY FORM OF MONEY DAMAGE RELIEF.

41

1          THEY HAVEN'T ALLEGED RESTITUTION.  THEY

2     CANNOT ALLEGE RESTITUTION UNDER THESE FACTS.

3          MR. SAVERI:  YOUR HONOR, THE RESTITUTION

4     THAT WE WOULD ASK IS FOR THE MEMBERS OF THE CLASS,

5     THE PEOPLE THAT WERE AFFECTED, THAT THEY WERE PAID

6     LESS THAN THEY OTHERWISE WOULD HAVE BEEN PAID IN AN

7     UNDISTORTED, FREE AND OPEN MARKET.

8          THAT MONEY WAS DENIED THEM AND PUT INTO

9     THE TREASURIES AND COFFERS OF THESE COMPANIES TO BE

10    DISGORGED, AND IT CAN BE DISGORGED DIRECTLY TO THE

11    AFFECTED PERSON OR, AS MR. RILEY SAYS CORRECTLY,

12    THAT CALIFORNIA LAW, UNDER BRUNO AND THOSE CASES

13    WHICH WE DIDN'T CITE, CALIFORNIA COURTS RECOGNIZE

14    THE PRINCIPLE OF FLUID RECOVERY IN THESE -- IN THIS

15    CONTEXT.

16         THE COURT:  IS IT POSSIBLE TO HAVE A

17    RULING UNDER THE UCL THAT THE PLAINTIFFS HAVE LOST

18    MONEY, BUT CAN'T BE REMEDIED THROUGH RESTITUTION?

19         FOR PURPOSES OF STANDING, THEY'VE LOST

20    MONEY, BUT THERE'S NO RESTITUTIONARY DAMAGES?

21         MR. SAVERI:  I'M SORRY, YOUR HONOR.  I

22    ACTUALLY LOST THE QUESTION.  COULD YOU REPEAT IT,

23    PLEASE?

24         THE COURT:  SURE.  WELL, ACTUALLY, IF

25    THERE IS NO RESTITUTIONARY DAMAGE AND THERE'S NO

1    INJUNCTION AND NO DECLARATORY RELIEF, THEN THE UCL

2    CAUSE OF ACTION IS GONE ANYWAY.  FORGET THAT

3    QUESTION.

4         MR. SAVERI:  YEAH.

5         THE COURT:  LET ME ASK, MR. SAVERI, WHERE

6    IN THE CONSOLIDATED AMENDED COMPLAINT THERE ARE

7    ALLEGATIONS OF FRAUD FOR A, YOU KNOW, FRAUDULENT

8    PRONG OF THE UCL.  ARE THERE ANY?

9         MR. SAVERI:  YOUR HONOR, I WOULD SAY THAT

10   THERE IS NO -- THE ONLY -- I DON'T THINK WE'VE

11   ALLEGED FRAUD WITH SPECIFICITY HERE.

12        THE -- WHAT WAS FRAUDULENT WAS THAT

13   THE -- THAT WHAT THE COMPANIES WERE PAYING --

14   REMEMBER, THE COMPANIES CONCEALED THIS PRACTICE, SO

15   WHEN THEY WERE TELLING PEOPLE WHAT THEY -- WHAT THE

16   MARKET WAS AND WHAT THEY WERE WILLING TO PAY, THE

17   FRAUD WAS THEIR FAILURE TO DISCLOSE THAT, IN FACT,

18   WAGES WERE BEING SET PURSUANT TO THIS CONSPIRACY

19   THAT WE ALLEGE AS OPPOSED TO PRICES SET BY A FREE

20   MARKET.

21        WE HAVE NOT -- WE HAVE THE LAST PART IN

22   HERE, BUT WE DON'T INCLUDE THAT SPECIFICALLY IN OUR

23   17200 CLAIM.

24        THE COURT:  ALL RIGHT.  SO THEN WOULD YOU

25   CONCEDE THE FRAUD PRONG AS A BASIS FOR THE UCL?

1    YOU CONCEDE THAT?

2                MR. SAVERI:  YES, YOUR HONOR.

3                THE COURT:  OKAY.  THAT MAKES THAT

4    EASIER.  THANK YOU.

5                OKAY.  WE HAVE SOME CMC ISSUES.

6                MR. RILEY:  YOUR HONOR, BEFORE -- IF I

7    MAY JUST BRIEFLY?

8                THE COURT:  PLEASE.

9                MR. RILEY:  THE REFERENCE TO THE INTUIT

10   ARRANGEMENT IS FOUND IN EXHIBIT B TO THE HARVEY

11   DECLARATION ON PAGE 3.

12               FOR THE RECORD, IT SAYS ASIDE FROM THE

13   GOOGLE AND INTUIT AGREEMENT, WHICH ONLY PROHIBITED

14   GOOGLE FROM COLD CALLING ANY INTUIT EMPLOYEE.

15               THEY SUBMITTED THAT.  THEY RELIED ON

16   THAT.  THAT WAS THE COMPETITIVE IMPACT STATEMENT.

17               BUT EVEN IF INTUIT WAS RESTRAINED FROM

18   CALLING GOOGLE, IT IS CLEAR THAT EVERY MEMBER OF

19   THE ALLEGED CONSPIRACY, OTHER THAN APPLE, COULD

20   COLD CALL MR. DEVINE.  THIS CANNOT HAVE BEEN A

21   CONSPIRACY.

22               AGAIN, THE BEST CASE CITATION ON THAT WAS

23   READY MIX CONCRETE WHERE THERE WAS CRIMINAL

24   ADMISSIONS OF PRICE FIXING, BUT YET THE COURT FOUND

25   NO OVERALL CONSPIRACY BECAUSE THERE WAS NO

1       PLAUSIBLE OVERALL CONSPIRACY.

2               THANK YOU.

3               THE COURT:  ALL RIGHT.  LET'S GO TO THE

4       CMC PORTION.

5               I'M LIFTING THE STAY OF DISCOVERY.

6               AND WITH REGARD TO THE GOOGLE DRAFT

7       E-MAILS, THOSE ARE TO BE PRODUCED, AND YOU ARE TO

8       DESIGNATE WHICH ONES WERE DRAFTS AND WHICH ONES

9       WERE SENT.  OKAY?

10              LET ME JUST ASK, SORT OF GOING FORWARD,

11      BECAUSE EVEN IF I DO GRANT A MOTION TO DISMISS,

12      IT'S GOING TO BE WITH LEAVE TO AMEND AND, AS I

13      SAID, I THINK THERE'S A SUFFICIENT STATEMENT OF A

14      CLAIM AS TO THE BILATERAL AGREEMENTS.

15              I'M DISINCLINED BASED ON THE OVERARCHING

16      CONSPIRACY AT THIS POINT, BUT I'D GIVE THEM LEAVE

17      TO AMEND AND SEE IF THE PLAINTIFFS CAN ADD

18      ADDITIONAL FACTUAL ALLEGATIONS THAT WOULD HAVE THAT

19      SURVIVE ANY SUBSEQUENT MOTION TO DISMISS.

20              BUT HOW IS THIS GOING TO GO FORWARD?  ARE

21      THE DEFENDANTS GOING TO ASK TO SEVER IF THIS GOES

22      TO TRIAL?  I'M NOT SURE IF ALL THESE COMPANIES WANT

23      TO BE IN A BIG BLOCK OF DEFENDANTS.

24              HOW IS THIS CASE GOING TO PROCEED?

25      BECAUSE IT IS GOING TO PROCEED.

1              MR. MITTELSTAEDT:  YOUR HONOR,

2      BOB MITTELSTAEDT.

3              I THINK THE FIRST STEP WOULD BE FOR THE

4      PLAINTIFFS TO FILE THEIR AMENDED COMPLAINT AND

5      DECIDE WHAT THEY WANT TO DO.

6              AND LET'S ASSUME THEY DECIDE NOT TO TRY

7      TO REALLEGE AN OVERARCHING CONSPIRACY AND THEY JUST

8      FOCUS ON THE BILATERAL AGREEMENTS.

9              THEN THEY HAVE SOME DECISIONS TO MAKE.

10     THEY HAVE TO DECIDE WHETHER THEY'RE GOING TO TRY

11     AND DO THAT IN ONE CASE OR IF THEY'RE GOING TO DO

12     IT IN SEPARATE CASES.  THEY NEED TO DECIDE WHETHER

13     THEY WANT TO GO FORWARD.  THEY NEED TO DECIDE --

14             THE COURT:  OH, I THINK THEY'RE GOING

15     FORWARD.  I DON'T THINK THAT'S A QUESTION.

16             MR. MITTELSTAEDT:  WELL, THEY NEED TO

17     DECIDE -- I MEAN, THEY REALLY DO NEED TO THINK

18     ABOUT THIS.

19             THE COURT:  UM-HUM.

20             MR. MITTELSTAEDT:  IF THEY DON'T HAVE

21     JOINT AND SEVERAL LIABILITY, WHAT ARE THEY GOING TO

22     DO?  HOW ARE THEY GOING TO DEFINE THEIR CLASS?  HOW

23     MANY CLASS MEMBERS ARE THEY GOING TO HAVE?  WHAT'S

24     THE SCOPE OF THE CLASS THAT THEY'RE GOING TO

25     ALLEGE?  THAT'S GOING TO HAVE A BIG EFFECT ON

1    DISCOVERY.

2         SO I THINK THE FIRST STEP IS TO TAKE A

3    LOOK AT THEIR AMENDED COMPLAINT.

4         IF THEY DROP THE OVERARCHING CONSPIRACY

5    AND JUST FOCUS ON THE BILATERAL AGREEMENTS, THEN

6    THE DEFENDANTS HAVE SOME DECISIONS TO MAKE, AND ONE

7    OF THEM WOULD BE WHETHER TO MOVE TO DISMISS FOR

8    MISJOINDER, WHETHER TO MOVE TO SEVER, WHEN WOULD BE

9    THE RIGHT TIME TO SEVER?

10        I RECOGNIZE WHAT YOUR HONOR SAYS, THAT IF

11   THIS DOES END UP WITH SIX DIFFERENT CASES, IT MAY

12   WELL -- THE COURT MIGHT WELL COORDINATE FOR

13   DISCOVERY.

14        BUT THOSE ARE THINGS THAT WE NEED TO SORT

15   OUT, I THINK, IN AN ORDERLY WAY AS THEY HAPPEN.

16        I'M GOING TO HASTEN TO ADD THOUGH, YOUR

17   HONOR, I DON'T THINK THIS NEEDS TO NECESSARILY

18   UPSET THE SCHEDULE.

19        THE COURT:  OH, NO.  I'M NOT MOVING THE

20   CASE SCHEDULE.  THE CASE SCHEDULE IS AS WE SET IT

21   WHEN YOU ALL WERE HERE BACK IN OCTOBER.

22        MR. MITTELSTAEDT:  AND WHAT I WAS GOING

23   TO SUGGEST IS --

24        THE COURT:  YEAH.

25        MR. MITTELSTAEDT:  -- I THINK IF WE SET A

1    RELATIVELY SHORT TIME PERIOD FOR AN AMENDED

2    COMPLAINT, WE WILL AGREE TO A SHORT TIME PERIOD TO

3    REVIEW THAT AND TO DECIDE WHETHER WE'RE GOING TO

4    MOVE TO DISMISS AGAIN, AND I THINK BOTH SIDES ARE

5    AGREEABLE TO AN EXPEDITED BRIEFING SCHEDULE ON ANY

6    SUBSEQUENT MOTION TO DISMISS.

7             AND THEN WHAT I WOULD SUGGEST, YOUR

8    HONOR, IS WE SIT DOWN IN THE MEANTIME AND TALK WITH

9    THE PLAINTIFFS ABOUT WHAT DISCOVERY THEY WANT IF

10   THIS CASE IS LIMITED TO BILATERAL AGREEMENTS.

11            THE COURT:  NO, THAT -- THE STAY OF

12   DISCOVERY IS DONE.  IT'S OVER.  THIS CASE IS MOVING

13   FORWARD.  SO DISCOVERY IS OPEN SEASON.

14            MR. MITTELSTAEDT:  WELL, I UNDERSTAND

15   THAT, YOUR HONOR.

16            THE COURT:  YEAH.

17            MR. MITTELSTAEDT:  BUT WHAT WE HAVE

18   PENDING --

19            THE COURT:  UM-HUM.

20            MR. MITTELSTAEDT:  -- IS SOME 50 OR 60

21   REQUESTS FOR PRODUCTION OF DOCUMENTS, WHICH YOUR

22   HONOR SAID LAST TIME WAS OBVIOUSLY OVERBROAD ON ITS

23   FACE.

24            SO WHAT I WAS SUGGESTING, TO MOVE THINGS

25   ALONG, IS WE COULD DO THIS THE TRADITIONAL WAY,

                                                      48

1      WHICH IS WE TAKE 30 DAYS TO RESPOND TO THE -- DO A

2      WRITTEN RESPONSE TO THE RFP'S, BUT WHAT I WOULD

3      LIKE TO SUGGEST IS, IN THE MEANTIME, BEFORE WE DO

4      THAT, WE SIT DOWN WITH THE PLAINTIFFS AND SEE TO

5      WHAT EXTENT THEY'RE GOING TO NARROW THEIR DOCUMENT

6      REQUESTS, EITHER BECAUSE THEY'RE OVERBROAD NO

7      MATTER WHAT THEY'RE ALLEGING, OR BECAUSE THEY'RE

8      OVERBROAD PARTICULARLY IN LIGHT OF WHAT THEY'RE

9      GOING TO AMEND -- ALLEGE IN THEIR AMENDED

10     COMPLAINT.

11              THE COURT:  WELL, I MAY -- YOU KNOW, I

12     MAY NOT GRANT THE MOTION TO DISMISS FOR THE SHERMAN

13     ACT CLAIM.

14              I MIGHT JUST -- YOU KNOW, I THINK THE

15     16600 IS GONE IF DECLARATORY RELIEF IS GONE.

16     THAT'S MOOT AND THAT'S OUT AND THEY MIGHT STIPULATE

17     TO THAT.

18              THE UCL, IF THERE'S NO RESTITUTION, YOU

19     GOT NO RELIEF AND BASICALLY NO STANDING, THAT'S

20     OUT.

21              MR. SAVERI:  I'M NOT GOING TO REARGUE

22     THAT.

23              THE COURT:  BUT THEY STILL HAVE AN

24     ANTITRUST CLAIM THAT'S GOING FORWARD, SO I

25     REALLY -- I DON'T WANT TO SEE -- I DON'T WANT TO

1     SEE ANY OBSTRUCTION ON THE DISCOVERY.

2               MR. MITTELSTAEDT:  YOUR HONOR, I AM --

3     I'M SUGGESTING --

4               THE COURT:  YES.

5               MR. MITTELSTAEDT:  I AM INTENDING TO

6     SUGGEST THE OPPOSITE.

7               THE COURT:  YEAH, OKAY.

8               MR. MITTELSTAEDT:  I MEAN, IT WAS YOUR

9     HONOR WHO SAID -- AND I THINK WE SAID THIS IN OUR

10    CMC STATEMENT LAST TIME -- THAT THEIR DOCUMENT

11    REQUESTS WERE OVERBROAD, AND WHAT I'M SUGGESTING IS

12    WE COULD DO THIS THE OLD-FASHIONED WAY OF THE

13    DEFENDANTS FILING A WRITTEN RESPONSE AND THEN

14    MEETING AND CONFERRING AND TALKING WITH A

15    MAGISTRATE JUDGE.

16              WHAT I'M OFFERING TO DO IS TALK WITH THE

17    PLAINTIFFS NOW --

18              THE COURT:  WHY WOULD THEY HAVE TO GO TO

19    A MAGISTRATE JUDGE?  YOU'RE ALREADY PLANNING TO

20    OBJECT SO THEY HAVE TO FILE A MOTION TO COMPEL?

21              I DON'T -- I MEAN, I REALLY -- WHEN I WAS

22    READING THE CMC STATEMENT, FIRST OF ALL, I WASN'T

23    HAPPY THAT THE PLAINTIFFS AND LUCASFILM BASICALLY

24    FILED A WHOLE OTHER BRIEF ON THE MOTION TO DISMISS.

25              I'M GOING TO STRIKE THAT.  I'M GOING TO

1    DISREGARD IT.  I'M NOT GOING TO CONSIDER IT FOR

2    PURPOSES OF THE MOTION.

3            NEITHER SIDE, PLEASE DON'T EVER DO THAT

4    AGAIN.  THAT'S IMPROPER.

5            BUT I DON'T WANT TO SEE GAMES ON THE

6    DISCOVERY.  IT'S GREEN LIGHT.  GO FORWARD.

7            MR. MITTELSTAEDT:  OKAY.

8            MR. SAVERI:  YOUR HONOR, CAN I JUMP IN?

9            THE COURT:  YEAH.

10           MR. SAVERI:  WE SERVED THOSE DOCUMENT

11   REQUESTS A LONG TIME AGO.

12           THE COURT:  UM-HUM.

13           MR. SAVERI:  I REALLY DON'T WANT TO GET

14   INTO SOMETHING WHERE WE SHOULD ASSUME WE'RE GOING

15   TO HAVE TO WAIT FOR OBJECTIONS AND GO THROUGH THAT

16   KIND OF PROCESS.

17           IF THE DEFENDANTS ARE NOW READY TO MEET

18   AND CONFER ON THOSE REQUESTS, I MEAN, WE'RE HAPPY

19   TO DO THAT.

20           I MEAN, I THINK WE SHOULD HAVE DONE IT A

21   LONG TIME AGO.

22           AND SO LET'S MEET AND CONFER.  THAT'S

23   FINE.  WE SHOULD HAVE DONE IT A LONG TIME AGO.

24           AND IF THAT'S WHAT MR. MITTELSTAEDT IS

25   SUGGESTING, I THINK IT'S A HAPPY DEVELOPMENT AND

1    LET'S GET THIS THING GOING.

2              WE HAVE A VERY AGGRESSIVE SCHEDULE, YOUR

3    HONOR, AND YOU HAVE SET DATES AND WE WANT TO MEET

4    THEM, AND SO IT'S IMPORTANT TO GET THE DISCOVERY

5    GOING.

6              SO I'D LIKE TO GET -- I'D LIKE TO DO

7    THAT.

8              MR. MITTELSTAEDT:  IT SOUNDS LIKE WE'RE

9    IN AGREEMENT.

10             THE COURT:  OKAY.

11             MR. SAVERI:  SO LET'S MEET NEXT WEEK.

12             MR. MITTELSTAEDT:  LET'S MEET TOMORROW.

13             MR. SAVERI:  OKAY.

14             THE COURT:  MEET TOMORROW.  THAT'S GOOD.

15             MR. SAVERI:  THAT'S FINE.

16             THE COURT:  AND I'M GOING TO ASK THAT YOU

17   MEET IN PERSON AND SOMEONE BRING BAGELS AND

18   PASTRIES AND -- OKAY.

19             SO YOU'RE GOING TO MEET AND CONFER ON THE

20   DISCOVERY REQUESTS THAT HAVE ALREADY BEEN SERVED

21   TOMORROW.

22             MR. SAVERI:  YEAH.

23             THE COURT:  ALL RIGHT.  I'M PUTTING THAT

24   IN MY CASE MANAGEMENT ORDER.  OKAY.

25             AND I WOULD LIKE YOU TO MEET IN PERSON.

1          MR. SAVERI:  THAT'S FINE.  WE'RE NOT VERY

2     FAR FROM ONE ANOTHER, AND I'M HAPPY TO HOST.

3          THE COURT:  OKAY.  ALL RIGHT.

4          ALL RIGHT.  SO YOU DON'T WANT ANY FORM OF

5     ALTERNATIVE DISPUTE RESOLUTION NOW, OR DO YOU?

6          UNDERSTANDING THAT THIS CASE IS GOING TO

7     SURVIVE A MOTION TO DISMISS, IS NOW AN APPROPRIATE

8     TIME, OR DO YOU NEED MORE DISCOVERY?  OR WHAT WOULD

9     YOU LIKE IN TERMS OF ADR?

10         MR. SAVERI:  YOUR HONOR, I GUESS I WOULD

11    SAY WE ARE ALWAYS WILLING TO TALK.

12         I WOULDN'T WANT TO DO ANYTHING THAT

13    DERAILS THE SCHEDULE.

14         THE COURT:  UM-HUM.

15         MR. SAVERI:  IF IT'S SOMETHING THAT THE

16    DEFENDANTS FEEL LIKE THEY WANT TO PURSUE OR TO TALK

17    ABOUT, EVEN IN THE MOST PRELIMINARY STAGE, I'M OPEN

18    TO THAT ALWAYS.

19         MR. MITTELSTAEDT:  YOUR HONOR, WHEN WE

20    TALKED WITH THE PLAINTIFFS AND TALKED AMONG

21    OURSELVES, WE AGREED TO PUT IN THE CMC STATEMENT

22    THAT BOTH SIDES THOUGHT IT WAS PREMATURE.

23         THE COURT:  OKAY.

24         MR. MITTELSTAEDT:  SO I'M NOT PREPARED TO

25    TALK ON BEHALF OF EVERYBODY.

1          MR. SAVERI:  AND, YOUR HONOR, THAT'S

2     FAIR.  THAT'S COMPLETELY FAIR.

3          THE COURT:  IS THERE -- I'M NOT ASKING

4     YOU TO COMMIT, BUT WOULD THERE BE A NATURAL POINT

5     WHERE IT WOULD MAKE SENSE TO EXPLORE THAT, AND WHAT

6     WOULD THAT POINT BE?  OR POINTS?

7          MR. MITTELSTAEDT:  I DON'T KNOW, YOUR

8     HONOR.

9          THE COURT:  UM-HUM.

10          MR. MITTELSTAEDT:  I'LL TELL YOU, I THINK

11     OUR VIEW IS THAT THE CLAIM THAT THESE BILATERAL

12     AGREEMENTS CAUSED ANY EFFECT ON COMPENSATION WHEN,

13     AS MR. RILEY WAS ARGUING, EVERYBODY WAS FREE TO

14     RECRUIT FROM EVERYBODY, EVERYBODY WAS FREE TO MAKE

15     COLD CALLS TO EVERYBODY, EXCEPT, UNDER THE

16     ALLEGATIONS OF THE COMPLAINT, WHERE THERE ARE BLACK

17     LINES.

18          AND SO ADOBE AND APPLE ALLEGEDLY HAD AN

19     AGREEMENT WHERE THEY WOULD NOT COLD CALL EACH

20     OTHER.

21          THE COURT:  UM-HUM.

22          MR. MITTELSTAEDT:  BUT IF YOU LOOK AT

23     THEIR CHART, ADOBE AND PIXAR HAD NO AGREEMENT

24     WHATSOEVER.

25          AND -- JUST A SECOND.

1           AND THEN, YOU KNOW, THEIR CLAIM IS, WELL,

2     IF SOMEBODY AT APPLE KNEW ABOUT THE AGREEMENT WITH

3     ADOBE AND KNEW ABOUT APPLE'S AGREEMENT WITH PIXAR,

4     THEREFORE, THAT MAKES FOR AN OVERALL CONSPIRACY

5     THAT ADOBE IS PART OF AND IT'S SOMEHOW NOW TIED TO

6     PIXAR, SOMEHOW NOW TIED TO LUCASFILM, I MEAN, THE

7     WAY WE LOOK AT THAT IS THE EXISTENCE OF THOSE

8     BILATERAL AGREEMENTS AS ALLEGED ARE REALLY GOOD

9     EVIDENCE THAT THERE'S NO OVERARCHING CONSPIRACY.

10          I MEAN, IF THE OVERARCHING CONSPIRACY WAS

11    NOBODY WOULD RECRUIT FROM ANYBODY --

12          THE COURT:  UM-HUM.

13          MR. MITTELSTAEDT:  -- WHY DO YOU HAVE

14    THIS HODGEPODGE OF BILATERAL AGREEMENTS, WHICH IS

15    ALL THAT THE D.O.J. ALLEGED, AND IT'S ALL THAT THE

16    PLAINTIFFS ALLEGE WITH ANY FACTS AT ALL.

17          AND, YOUR HONOR, JUST --

18          THE COURT:  SO YOUR ANSWER IS THERE'S NO

19    TIME RIGHT NOW?

20          MR. MITTELSTAEDT:  ABSOLUTELY.

21          THE COURT:  OKAY.  I GOT IT.

22          MR. MITTELSTAEDT:  ABSOLUTELY.  AND THERE

23    MAY NEVER BE.

24          THE COURT:  ALL RIGHT.

25          MR. MITTELSTAEDT:  AND THERE MAY NEVER

1    BE.

2                    THE COURT:  ALL RIGHT.  I HEAR YOU.

3                    MR. SAVERI:  I TAKE BACK WHAT I SAID.

4                    THE COURT:  ALL RIGHT.  LET ME -- I THINK

5    WE HAVE -- LET'S SET A FURTHER CMC.  I THINK THAT

6    WOULD BE HELPFUL.

7                    ARE YOU ALL AVAILABLE EITHER APRIL 18TH

8    OR APRIL 25TH?

9                    MR. SAVERI:  I HAVE A TRIAL THAT'S

10   SCHEDULED TO START THAT -- THE WEEK OF THE 23RD, I

11   THINK.

12                   THE COURT:  OKAY.  COULD WE DO THE

13   18TH -- OH, DOES THAT MEAN YOU CAN'T COME ON THE

14   18TH?

15                   MR. SAVERI:  NO.  THAT MEANS I CAN COME

16   ON THE 18TH, BUT I THINK I'M OUT OF POCKET ON THE

17   25TH.

18                   THE COURT:  OKAY.  WHAT ABOUT FOR YOU?

19                   MR. MITTELSTAEDT:  THE 18TH IS FINE FOR

20   ME.

21                   OKAY.  THE 18TH IT IS.

22                   THE COURT:  THAT'S OKAY FOR EVERYBODY.

23                   ALL RIGHT.  THAT'S OUR FURTHER CMC.

24   THAT'LL BE APRIL 18TH AT 2:00 O'CLOCK.

25                   ALL RIGHT.  SO WE HAVE THIS ISSUE.  THE

1    DEFENDANTS' DECLARATION IN SUPPORT OF THE MOTION TO

2    FILE UNDER SEAL IS DUE TODAY.

3              MR. SAVERI:  I HAD A CONVERSATION WITH

4    MR. TUBACH BEFORE, BUT --

5              THE COURT:  UH-HUH.  IS THAT GOING TO BE

6    FILED TODAY, OR WHAT?

7              MR. SAVERI:  NO.  I THINK THAT YOUR

8    RULING --

9              MR. MITTELSTAEDT:  YOUR HONOR, IF -- YOUR

10   RULING STRIKING THOSE SECTIONS OF THE CMC REALLY

11   TAKES CARE OF THIS.

12             CORRECT?

13             MR. SAVERI:  THAT'S WHAT I THINK.

14             MR. MITTELSTAEDT:  IF THOSE ARE STRUCK,

15   THERE'S NOTHING TO DISPUTE.

16             THE COURT:  WELL, I THINK THIS ISSUE IS

17   GOING TO COME TO A HEAD BECAUSE YOU'RE PROBABLY

18   GOING TO WANT THAT FOR YOUR AMENDED COMPLAINT, THAT

19   INFORMATION.

20             MR. MITTELSTAEDT:  AND, YOUR HONOR, IF I

21   COULD JUST, I THINK, GET TO THE BOTTOM OF THIS?

22             THE COURT:  YEAH.

23             MR. MITTELSTAEDT:  ALL THE PARTIES ARE

24   MEETING AND TALKING ABOUT THE DOCUMENTS THAT ARE

25   CITED IN THE CMC.

1          SOME OF US HAVE AGREED TO WITHDRAW

2     DESIGNATIONS.

3          OTHERS ARE STILL TALKING.

4          I THINK THIS IS GOING TO WORK OUT.

5          THE COURT:  WHY DON'T WE DO THIS:  I'M

6     NOT GOING TO STRIKE THE JOINT CASE MANAGEMENT

7     STATEMENT BECAUSE THAT SHOULD BE PART OF THE RECORD

8     SINCE IT WAS FILED.

9          I'M NOT CONSIDERING IT.  I'M DISREGARDING

10    IT FOR PURPOSES OF THE PENDING MOTIONS TO DISMISS.

11         BUT I HAVE READ IT.

12         SO I STILL WANT YOU TO GO FORWARD AND DO

13    YOUR DEDESIGNATIONS, AND IF THERE'S ANYTHING THAT

14    YOU MAINTAIN SHOULD BE FILED UNDER SEAL, YOU'RE

15    GOING TO HAVE TO PROVIDE CASE LAW AUTHORITY FOR IT

16    AND A GOOD DECLARATION.

17         THE FACT THAT IT'S EMBARRASSING IS NOT

18    GOING TO BE SUFFICIENT.

19         MR. MITTELSTAEDT:  UNDERSTOOD.

20         THE COURT:  OKAY?  ALL RIGHT.  SO YOUR

21    DECLARATION IS DUE TODAY.

22         MR. MITTELSTAEDT:  YES.  AND I THINK I

23    CAN SAY, YOUR HONOR, THAT NO DEFENDANT IS INTENDING

24    TO FILE A DECLARATION.

25         THE COURT:  OH, OKAY.  SO THEN IT ALL CAN

1    THEN JUST BE FILED UNREDACTED?

2              MR. MITTELSTAEDT:  YES.

3              THE COURT:  OKAY.  ALL RIGHT.  THEN YOU

4    CAN JUST REFILE IT.

5              MR. SAVERI:  YEAH.  WE'LL FIGURE IT OUT.

6              I DON'T KNOW WHETHER THE RULE IS NOW THAT

7    IT AUTOMATICALLY GETS PUT IN THE PUBLIC RECORD OR

8    WE HAVE TO REFILE IT.

9              THE COURT:  OKAY.  WE'LL JUST DEAL WITH

10   IT -- WAIT UNTIL I GUESS --

11             MR. SAVERI:  MIDNIGHT.

12             THE COURT:  THEY HAVE UNTIL THE END OF

13   THE DAY.  IF THEY DON'T DO IT --

14             MR. MITTELSTAEDT:  WE'VE ADVISED HIM.

15             MR. SAVERI:  YEAH, WE'LL FIGURE IT OUT.

16             THE COURT:  ALL RIGHT.

17             IN THE FUTURE, IF YOU ARE GOING TO FILE

18   ANYTHING, THE -- LOOK AT MY STANDING ORDER AS TO

19   YOU HAVE TO FILE PUBLICLY A REDACTED VERSION

20   SIMULTANEOUSLY WITH ANY MOTION TO FILE UNDER SEAL.

21             MR. SAVERI:  OKAY.

22             THE COURT:  DO YOU UNDERSTAND?

23             MR. SAVERI:  YEAH.

24             THE COURT:  OKAY.  SO IN THE FUTURE DO

25   THAT.

1           AND IF YOU ARE GOING TO FILE SOMETHING

2    WITH THE COURT, FOR THE COURT TO REVIEW, IF YOU ARE

3    GOING TO MAKE THAT MOTION, RATHER THAN HAVING IT BE

4    HIGHLIGHTED IN BLACK, HIGHLIGHT IT IN YELLOW, THE

5    VERSION THAT'S LODGED WITH THE COURT.  THAT'S JUST

6    EASIER TO MAKE A DECISION ON THE MOTION.

7           MR. SAVERI:  THAT'S FINE.

8           THE COURT:  OKAY?

9           MR. SAVERI:  THAT'S FINE.

10          THE COURT:  WHAT OTHER ISSUE IS THERE?

11   IS THERE ANYTHING ELSE WITH REGARD TO ELECTRONIC

12   DISCOVERY OR ANYTHING ELSE?

13          MR. SAVERI:  I THINK, FROM MY

14   PERSPECTIVE, WE'VE COVERED EVERYTHING THAT WAS KIND

15   OF ON OUR LIST.

16          THE COURT:  OKAY.

17          MR. SAVERI:  THERE MAY BE OTHER THINGS

18   THAT COME UP ONCE WE START DIGGING IN AND MEETING

19   AND CONFERRING, BUT AS OF TODAY, FROM MY

20   PERSPECTIVE AT LEAST, WE'RE UP-TO-DATE.

21          THE COURT:  OKAY.

22          MR. MITTELSTAEDT:  WE HAVE BEEN MEETING

23   AND CONFERRING ON AN ESI PROTOCOL, AND I THINK

24   PROGRESS IS BEING MADE.

25          THE COURT:  OKAY.  WELL, WE HAVE A TIGHT

```
 1     SCHEDULE.  FACT DISCOVERY CUT OFF -- WELL, WE HAVE

 2     THE MOTION FOR CLASS CERT BEING FILED JUNE 28TH, SO

 3     WE REALLY NEED DISCOVERY TO PROGRESS QUICKLY.

 4          LET ME ASK, IF YOU ARE GIVEN LEAVE TO

 5     AMEND YOUR COMPLAINT, HOW MUCH TIME DO YOU NEED TO

 6     FILE A SECOND AMENDED CONSOLIDATED COMPLAINT?

 7          MR. SAVERI:  YOU KNOW, 30 DAYS SOUNDS

 8     LIKE THE RIGHT AMOUNT OF TIME.

 9          BEFORE WE -- I -- I WANT TO GO BACK TO

10     THE POINT YOU MADE JUST A SECOND BEFORE YOU ASKED

11     ME THAT QUESTION --

12          THE COURT:  YEAH.

13          MR. SAVERI:  -- WHICH IS I AM CONCERNED

14     ABOUT THE SCHEDULE, AND I'M -- I GUESS I'M LOOKING

15     FOR YOUR GUIDANCE, YOUR HONOR, ABOUT HOW WE CAN --

16     TO THE EXTENT THAT WE CAN NARROW AND FRAME ISSUES

17     WHERE THERE ARE DISPUTES THAT ARE HOLDING UP

18     DISCOVERY, I THINK IT WOULD BE GOOD FOR BOTH

19     PARTIES TO FIGURE OUT A WAY OF DOING THIS, GETTING

20     THEM RESOLVED ON AN EXPEDITED BASIS.

21          AND I'M NOT CLEAR, YOUR HONOR, WHETHER

22     THIS IS SOMETHING THAT WE SHOULD BE BRINGING UP

23     WITH THE MAGISTRATE JUDGE DIRECTLY PURSUANT TO HIS

24     RULES, OR IS IT SOMETHING THAT YOU, YOUR HONOR,

25     WOULD LIKE TO GET INVOLVED IN FROM A MANAGEMENT
```

1    PERSPECTIVE OR TO RESOLVE DISPUTES?

2              OR WHAT THE BEST WAY IS -- BECAUSE I

3    DON'T WANT IT TO LANGUISH AND FOR US TO SPEND A LOT

4    OF TIME UNNECESSARILY.

5              SO IF WE HAVE DISPUTES ABOUT THE SCOPE OF

6    DISCOVERY OR ESI, I'D LIKE TO FIGURE OUT A WAY OF

7    GETTING THESE SUBMITTED OR RESOLVED QUICKLY.

8              SO I AM ASKING FOR YOUR GUIDANCE ABOUT

9    WHETHER THIS IS SOMETHING WE SHOULD BE SUBMITTING

10   TO YOU, TO THE MAGISTRATE JUDGE, OR HOW YOU WISH --

11   HOW YOU WOULD LIKE US TO PROCEED.

12             THE COURT:  WELL, I'D LIKE YOU TO HAVE NO

13   DISCOVERY DISPUTES.

14             MR. SAVERI:  I UNDERSTAND THAT.

15             THE COURT:  THAT'S WHAT I'M ORDERING.

16             MR. SAVERI:  OKAY.

17             THE COURT:  I'M ORDERING NO DISCOVERY

18   DISPUTES.

19             (LAUGHTER.)

20             MR. SAVERI:  I'LL DO MY BEST TO FOLLOW

21   THAT.

22             THE COURT:  WELL, I MEAN, WE COULD GO A

23   NUMBER OF WAYS ON THIS.

24             ONE, I CAN JUST HAVE YOU GO TO

25   JUDGE LLOYD --

1          MR. SAVERI:  YOU KNOW, I DON'T KNOW IF

2    THIS IS GOING TO BE A PROBLEM, BUT IF WE HAVE SOME

3    ISSUE ABOUT WHETHER THE DISCOVERY IS DIFFERENT, YOU

4    KNOW, WITH RESPECT TO -- IF OUR CASE IS A BILATERAL

5    CASE OR AN OVERARCHING CONSPIRACY CASE OR ALL OF

6    THOSE SORTS OF THINGS THAT MIGHT HOLD UP THE

7    SCOPE --

8          THE COURT:  YEAH.

9          MR. SAVERI:  -- I'D REALLY LIKE TO GET,

10   IF WE COULD, THAT CLARIFIED QUICKLY AND NOT HOLD UP

11   THE PROCESS.

12         MR. MITTELSTAEDT:  YOUR HONOR, I THINK WE

13   HAVE A COMMON INTEREST IN MOVING THINGS ALONG.

14         I THINK JUDGE LLOYD HAS SET UP A PRETTY

15   EXPEDITED SCHEDULE FOR BRINGING DISCOVERY DISPUTES

16   TO HIS ATTENTION.

17         MY SENSE IS WE OUGHT TO TRY THAT.  IT

18   MIGHT BE FASTER TO GO TO JUDGE LLOYD THAN TO YOU.

19         THE OTHER APPROACH WOULD BE LET'S SEE IF

20   WE HAVE A DISPUTE AND WHAT IT IS AND, RATHER THAN

21   DECIDE THIS IN THE ABSTRACT, TAKE IT ISSUE BY ISSUE

22   IF THERE ARE DISPUTES.

23         MR. SAVERI:  I DON'T WANT TO PREJUDGE

24   WHICH IS THE MOST EFFECTIVE WAY.  I JUST WOULD LIKE

25   TO RAISE IT AND SEE IF WE CAN AGREE ON SOMETHING

1   NOW.

2           I AM CONCERNED, FROM TIME TO TIME, THAT

3   IF WE DO THINGS IN FRONT OF THE MAGISTRATE JUDGE,

4   ALL THAT MEANS IS WE HAVE ANOTHER ROUND OF BRIEFING

5   IN THE TRIAL COURT.

6           AND SO -- I'M WILLING TO TRY WHATEVER YOU

7   THINK OR THE DEFENDANTS THINK MAKE SENSE IN THE

8   FIRST INSTANCE.

9           THE COURT:  WELL, EVEN IF IT DOES GO TO

10  JUDGE LLOYD, I DO MONITOR IT.

11          MR. SAVERI:  OKAY.

12          THE COURT:  AND IF I THINK THAT THERE IS

13  AN ABUSE, I WILL HAVE THAT RAISED BEFORE ME.

14          SO UNDERSTAND EVEN IF IT'S NOT HERE, I DO

15  SEE WHAT'S GOING ON.

16          MR. SAVERI:  ONE THING THAT HAS WORKED

17  FOR ME IN OTHER CASES IS TO HAVE MORE FREQUENT CASE

18  MANAGEMENT CONFERENCES.

19          THE COURT:  THAT'S FINE, TOO.

20          MR. SAVERI:  I MEAN, I THINK, FOR

21  EXAMPLE, GIVEN THE SPEED WITH WHICH WE HAVE TO

22  WORK, IF WE PUT SOMETHING ON THE CALENDAR 30 DAYS

23  FROM NOW WHERE WE COME BACK AND REPORT ON DISCOVERY

24  AND OTHER THINGS, I THINK IT WOULD BE A WAY OF

25  MAKING SURE THIS THING MOVES ALONG.

1          THE COURT:  YOU MEAN HAVING MORE FREQUENT

2     CMC'S?

3          MR. SAVERI:  YES.  AND I REALIZE THAT'S

4     IMPOSING ON YOUR CALENDAR, BUT I HAVE FOUND THAT

5     EFFECTIVE FROM TIME TO TIME.

6          THE COURT:  I WOULD BE OKAY WITH THAT.

7          I'M JUST GOING TO BE DISPLEASED IF THERE

8     ARE A LOT OF DISCOVERY ISSUES ON THE --

9          MR. SAVERI:  YOUR HONOR, MY EXPERIENCE IS

10    THAT IF WE HAVE FREQUENT ONES, THERE ARE -- IT'S

11    REMARKABLE HOW LITTLE IS IN DISPUTE.

12          THAT'S JUST MY SUGGESTION.

13          MR. MITTELSTAEDT:  YOUR HONOR, I WOULD

14    SUGGEST THAT -- I DON'T WANT TO GO INTO THIS

15    THINKING WE'RE GOING TO HAVE DISPUTES, AND I THINK

16    WE OUGHT TO WORK THIS OUT AS BEST WE CAN AMONG

17    OURSELVES.

18          IF THERE IS A DISPUTE, AS I SAY,

19    JUDGE LLOYD HAS AN EXPEDITED PROCEDURE.  WE SHOULD

20    DO THAT.

21          IF, WHEN YOUR HONOR SEES THAT, YOU THINK

22    WE NEED TO COME AND SEE YOU, THAT'S FINE.

23          CMC'S EVERY 30 DAYS SOUNDS A LITTLE

24    FREQUENT AND UNUSUAL TO ME, ALTHOUGH WE'D BE HAPPY

25    TO HAVE YOUR HONOR'S GUIDANCE WHENEVER.

1          THE COURT:  WELL, YOU COULD ALSO JUST

2     TAKE IT OFF CALENDAR IF THERE'S REALLY NOTHING TO

3     TALK ABOUT, AND YOU COULD APPEAR BY PHONE IF YOU

4     WANTED TO AS WELL.

5          MR. SAVERI:  I THINK THAT'S AN EFFECTIVE

6     WAY TO PROCEED.  IT'S WORKED FOR ME IN OTHER CASES.

7          THE COURT:  WHAT DO WE HAVE,

8     MS. PARKER-BROWN, FOR MAYBE MARCH?

9          WE'LL HAVE YOU COME IN SOONER.  I MEAN, I

10    THINK EVERY 30 DAYS IS PROBABLY TOO MUCH, BUT IF

11    YOU WANTED TO DO EVERY OTHER MONTH, THAT WOULD BE

12    OKAY.

13         MR. MITTELSTAEDT:  YOUR HONOR, COULD I

14    SUGGEST THAT IF THEY'RE GOING TO TAKE -- IF YOUR

15    HONOR DOES ORDER AN AMENDED COMPLAINT AND THEY'RE

16    GOING TO TAKE 30 DAYS TO DO THAT, THEN PERHAPS WE

17    SHOULD HAVE THE FIRST CMC 15 OR 30 DAYS AFTER WE

18    GET THEIR AMENDED COMPLAINT.

19         THE COURT:  THAT MAKES SENSE.  THAT MAKES

20    SENSE.

21         THE CLERK:  DO YOU WANT TO KEEP THE

22    MARCH 18TH?  OR IS THAT TOO SOON?  I MEAN

23    APRIL 18TH.

24         THE COURT:  WHY DON'T WE -- YEAH, WE CAN

25    KEEP THE APRIL 18TH DATE.

1          WHY DON'T WE KEEP THE APRIL 18TH DATE AND

2     JUST -- I MEAN, IF -- I WILL JUST TELL YOU, IF IT

3     TURNS OUT THAT THERE ARE A LOT OF DISCOVERY

4     DISPUTES, THEN WHAT I HAVE REQUIRED IN OTHER CASES

5     IS THAT THE LAWYERS COME IN AND MEET IN MY JURY

6     ROOM FOR AN HOUR AND THEN THEY MEET WITH ME AND

7     THEN I JUST, BOOM, BOOM, BOOM, MAKE A DECISION ON

8     ALL THE DISCOVERY MOTIONS.

9          AND I HOPE IT DOESN'T GET TO THAT, BUT I

10    CAN DO THAT IF IT BECOMES JUST, YOU KNOW, TOO MUCH.

11         I ALSO DON'T WANT TO OVERWHELM

12    JUDGE LLOYD WITH TONS AND TONS AND TONS OF

13    DISCOVERY DISPUTES.

14         SO IF THAT BECOMES AN ISSUE, THAT'S WHAT

15    WE'RE GOING TO DO.  I'M GOING TO REQUIRE EVERYONE

16    TO COME IN, YOU'LL MEET IN MY JURY ROOM FOR AN

17    HOUR, AND THEN YOU'LL MEET WITH ME AND I'LL JUST

18    RULE ON WHATEVER IT IS.

19         IT'LL BE TWO PAGES MAXIMUM FOR ANY

20    DISCOVERY MOTION, NO REPLY, OPPOSITION DUE IN SEVEN

21    DAYS.

22         SO LET'S HOPE IT DOESN'T GET TO THAT.

23    THAT'S WHAT I -- I'M NOT GOING TO ORDER THAT AT

24    THIS POINT.

25         BUT IF IT TURNS OUT THAT THERE'S NOT A

1    LOT OF COOPERATION AND THERE'S A LOT OF

2    OBSTRUCTION, THAT'S WHAT'S GOING TO HAPPEN.

3              OKAY?

4              MR. SAVERI:  THAT'S FINE, YOUR HONOR.

5    THANK YOU.

6              THE COURT:  OKAY.  I THINK THAT'S IT

7    THEN.  ALL RIGHT?

8              MR. SAVERI:  YES.

9              MR. MITTELSTAEDT:  THANK YOU, YOUR HONOR.

10             THE COURT:  OKAY.  THANK YOU.

11             MR. SAVERI:  THANK YOU, YOUR HONOR.

12             (WHEREUPON, THE PROCEEDINGS IN THIS

13   MATTER WERE CONCLUDED.)

14

15

16

17

18

19

20

21

22

23

24

25

1

2

3

4                    CERTIFICATE OF REPORTER

5

6

7

8          I, THE UNDERSIGNED OFFICIAL COURT

9    REPORTER OF THE UNITED STATES DISTRICT COURT FOR

10   THE NORTHERN DISTRICT OF CALIFORNIA, 280 SOUTH

11   FIRST STREET, SAN JOSE, CALIFORNIA, DO HEREBY

12   CERTIFY:

13          THAT THE FOREGOING TRANSCRIPT,

14   CERTIFICATE INCLUSIVE, CONSTITUTES A TRUE, FULL AND

15   CORRECT TRANSCRIPT OF MY SHORTHAND NOTES TAKEN AS

16   SUCH OFFICIAL COURT REPORTER OF THE PROCEEDINGS

17   HEREINBEFORE ENTITLED AND REDUCED BY COMPUTER-AIDED

18   TRANSCRIPTION TO THE BEST OF MY ABILITY.

19

20

21

22

23          /S/
            _____
24          LEE-ANNE SHORTRIDGE, CSR, CRR
            CERTIFICATE NUMBER 9595
25

69