# EXHIBIT A

1  Jose R. Garay, Esq.  SBN 200494
2  Briana M. Kim, Esq.  SBN 255966
   **JOSE GARAY, APLC**
3  9900 Irvine Center Drive
   Irvine, CA  92618
4  Telephone:  (949) 208-3400
5  Facsimile:  (949) 713-0432
   jgaray@garaylaw.com
6  bkim@garaylaw.com
7
8  [Additional counsel listed on next page]

**ORIGINAL FILED**

MAR 1 4 2012

Richard W. Wieking
Clerk, U.S. District Court
Northern District of California
San Jose

9              UNITED STATES DISTRICT COURT
10            NORTHERN DISTRICT OF CALIFORNIA

11

HRL

12  OSSIE SANTIAGO, an individual       Case No. **CV12-01262**
    California resident, on behalf of himself
13  and all others similarly situated,     **CLASS ACTION COMPLAINT FOR**

14
                                          1. **FAILURE TO PAY**
15        Plaintiff                          **OVERTIME WAGES**
                                          2. **FAILURE TO PAY WAGES**
16      vs.                                  **ON TERMINATION OF**
                                             **EMPLOYMENT (CAL.**
17  INTUIT, INC. , a Delaware corporation;   **LABOR CODE § 203)**
18  GOOGLE, INC., a Delaware             3. **VIOLATIONS OF THE**
    corporation; and DOES 1 through 100,    **SHERMAN ACT**
19  inclusive,                           4. **VIOLATIONS OF THE**
                                             **CARTWRIGHT ACT**
20                                        5. **VIOLATIONS OF CAL. BUS.**
21        Defendants.                        **& PROF. CODE § 16600**
                                          6. **CIVIL CONSPIRACY**
22                                        7. **UNFAIR COMPETITION IN**
                                             **VIOLATION OF CAL. BUS. &**
23                                           **PROF. CODE§ § 17200, et seq.**
24
25
26                                        **DEMAND FOR JURY TRIAL**
27

CLASS ACTION COMPLAINT                     1

_INTUIT, INC._

1  Christopher J. Hamner, Esq.  SBN 197117
2  Nicole K. Brooks, Esq.  SBN 198225
   **HAMNER LAW OFFICES, APC**
3  555 W. 5th Street, 31st Floor
4  Los Angeles, California 90013
   Telephone:  (213) 533-4160
5  Facsimile:  (213) 533-4167
6  chamner@hamnerlaw.com
7  nbrooks@hamnerlaw.com

8  Glenn C. Nunes, Esq.  SBN 210453
9  **THE NUNES LAW GROUP**
   101 California Street,, Suite 2450
10 San Francisco, California 94111
   Telephone:  (415) 946-8894
11 Facsimile:  (415) 946-8801

12

13 Attorneys for Plaintiff, OSSIE SANTIAGO, on behalf of himself and all other
14 similarly situated

15

16 / / /

17 / / /

18 / / /

19

20 / / /

21 / / /

22

23 / / /

24 / / /

25

26 / / /

27 / / /

CLASS ACTION COMPLAINT                                                          *INTUIT, INC.*

Plaintiff, OSSIE SANTIAGO (hereinafter, "Plaintiff") is informed and believes and thereupon alleges, on behalf of himself and classes of those similarly situated, as follows:

## I.

## INTRODUCTION

1.     Starting in 2003, and continuing until at least 2009 or 2010, Plaintiff is informed and believes that INTUIT had an agreement with GOOGLE, negotiated and ratified by the most senior executives of those companies that GOOGLE would not recruit INTUIT employees and would not hire any INTUIT employees without INTUIT's consent.  Plaintiff believes that there were likely agreements by INTUIT with APPLE and PIXAR.  The U.S. Department of Justice filed a complaint and, that same day, entered into a settlement with INTUIT, GOOGLE, APPLE, and PIXAR, in which each company agreed (without admitting to the actual agreements) to be enjoined from entering any such agreements in the future.   The employees of those companies did not obtain any compensation in the DOJ settlement.  This class action lawsuit is brought in an effort to obtain compensation for the INTUIT employees who were harmed by INTUIT's anti-poaching agreement with GOOGLE, and likely APPLE and PIXAR, as well as to compensate INTUIT employees for unpaid overtime compensation.

2.     In November 2003, senior officers and directors of GOOGLE, INTUIT, and APPLE participated in an email discussing ways to "never get into bidding wars" for talent by imposing restrictions on recruiting.  The individuals in the email exchange included GOOGLE CEO and Chairman of the Board (and, from August 2006-August 2009 APPLE Board member) Eric Schmidt; INTUIT CEO and Chairman of the Board, APPLE board member (as well as former APPLE executive) Bill Campbell; and two Senior GOOGLE vice presidents.

3.     In February 2005, GOOGLE CEO and APPLE Board member Eric Schmidt told INTUIT CEO and APPLE board member Bill Campbell that he (Schmidt) had gotten "directly involved and firmly stopped all efforts to recruit anyone from APPLE."   Campbell relayed this conversation to APPLE CEO/PIXAR CEO Steve Jobs.

4.  On December 23, 2005, an APPLE employee contacted a PIXAR recruiter for a low level programming job.  The PIXAR recruiter responded: "Only problem - we can't poach from Apple."

5.  On April 30, 2007, PIXAR CEO McAdams wrote that she "got off the phone with (APPLE Vice President of Human Resources) Danielle Lambert, and we confirmed that APPLE and PIXAR had 'a Gentleman's agreement'" not to recruit each other's employees.

6.     On March 7, 2007, APPLE CEO and PIXAR CEO Steve Jobs emailed Schmidt (GOOGLE CEO and APPLE board member) stating "I would be very pleased if your recruiting department would stop doing this [a GOOGLE employee had recruited an Apple employee]."  GOOGLE/APPLE's Schmidt forwarded the email to undisclosed recipients, along with a message stating that there existed a no recruiting policy between APPLE and GOOGLE and that this stuff needed to stop. The GOOGLE employee who contacted the employee was promptly terminated, and APPLE/PIXAR's Steve Jobs was told it would not happen again.

7.     On June 6, 2007, GOOGLE's director of staffing, Arnnon Geshuri, sent an email to GOOGLE CEO and APPLE board member Schmidt stating that INTUIT's Chairman of the Board as well as Apple Board member had "requested that INTUIT be added fully to the Do Not Call list.... Please confirm that you are okay with the modification of the policy."  It is not yet known what policy was being modified, because INTUIT, APPLE, GOOGLE, and PIXAR did their best to keep their illegal agreements quiet and, it is believed most of the agreements were oral.

8.     From June 6, 2007 (or possibly earlier), GOOGLE would not recruit employees from INTUIT.  Plaintiff is also informed and believes that if an INTUIT employee sought a job from GOOGLE, that private information was relayed back

to INTUIT pursuant to the illegal agreement, which would then damage the INTUIT employee's reputation.

9.     With approximately 10,000 employees, GOOGLE is the major employer in Mountain View, a city whose population is approximately 74,000. Although in some instances (as the largest employer in the city) GOOGLE would actually hire INTUIT employees, it would only do so if INTUIT consented to having the employee leave.  Hence, the illegal agreement between INTUIT and GOOGLE seriously reduced the ability of INTUIT employees to change jobs both in the software industry, and in the City of Mountain View, and in many instances, the mere act of innocently applying for a job at GOOGLE could have deeply damaged an INTUIT employee's career, due to the transfer of private information between GOOGLE and INTUIT which occurred pursuant to the illegal horizontal agreement between the two companies.

10.     As a result of INTUIT's anti-competitive agreement with GOOGLE and likely with APPLE and PIXAR and possible others, INTUIT decreased the wages of their employees in the marketplace, were able to avoid paying overtime to employees who were entitled to overtime, were able to gain private information when employees attempted to leave, and prevented employees from transferring to other employment.  These practices injured the employees by reducing the amount of their wages, preventing the employees from going to other companies where

6

they could have greater opportunities to be promoted, and preventing them from being paid for all overtime hours worked.

11.     On September 24, 2010, the United States Department of Justice ("DOJ") filed a complaint against INTUIT, GOOGLE, APPLE, PIXAR, and two other companies, alleging that each company had, amongst themselves, entered into five agreements restricting the recruitment of employees of one another, including the agreement that GOOGLE would not "cold call" employees of INTUIT.  The DOJ alleged that all of the agreements were per se violations of Section 1 of the Sherman Act, and it alleged that the agreement covered "all" INTUIT employees, and was not limited by job function, product group, or time period.  In the Competitive Impact Statement filed by the DOJ on that day, the DOJ alleged that the agreements were "facially anticompetitive" and "substantially diminished competition to the detriment of the affected employees. . ."

12.     That same day, on September 24, 2010, all six companies in the complaint signed a stipulated final judgment against themselves, in which they agreed to be enjoined (with limited, enumerated exceptions for lawful agreements in connection with mergers, severances, etc.) from entering into or enforcing any anti-solicitation or anti-recruiting agreements.  The final judgment did not enter any fines against the six companies, and none of the companies were required to compensate the employees in any way.  The final judgment against INTUIT,

GOOGLE, and the other companies was entered by the District Court on March 18, 2011.

## II.

## JURISDICTION AND VENUE

Plaintiff

13.     Plaintiff is a former INTUIT employee whose primary duties were non-exempt and who was misclassified by INTUIT as exempt from the overtime provisions of the applicable state wage and hour laws of California, as described in this complaint.

14.     Plaintiff performed work in the areas of product control, systems specialist, and documentation control.  The majority of the work Plaintiff performed was non-exempt work which did not require discretion or independent judgment.

15.     Plaintiff is a resident of California who worked for INTUIT in the County of Santa Clara, California.

Defendants

16.     INTUIT, INC. is a citizen of the State of California.  Although it is organized as a Delaware corporation, its headquarters and primary place of business is in Mountain View, California, in the County of Santa Clara.  The nerve center of INTUIT, where strategic decisions and major operations occur, is

*INTUIT, INC*

in Mountain View, California.  The primary officers and directors of INTUIT reside in and primarily work in California.  In addition, virtually all important operations and strategies are directed from California, and all members of the CLASS worked in California.  INTUIT, INC. and DOES 1-19 are collectively referred to herein as "INTUIT".

17.    GOOGLE, INC. is a citizen of the State of California.  Although it is organized as a Delaware corporation, its headquarters and primary place of business is in Mountain View, California, in the County of Santa Clara.  The nerve center of GOOGLE, where strategic decisions and major operations occur, is in Mountain View, California.  The primary officers and directors of GOOGLE reside in and primarily work in California.  In addition, virtually all important operations and strategies are directed from California, and all members of the CLASS worked in California. GOOGLE, INC. and DOES 20-30 are collectively referred to herein as "GOOGLE".

18.    The U.S. District Court Northern District has jurisdiction over INTUIT and GOOGLE based on federal question jurisdiction.  Pursuant to 28 U.S.C. 1391, venue is proper as to each defendant because Plaintiff worked for INTUIT in Santa Clara, California, and both INTUIT and GOOGLE are headquartered in Mountain View in the County of Santa Clara, and do business in Santa Clara, California.

9

19.     The true names and capacities, whether individual, corporate, associate, or otherwise, of defendants sued herein as DOES 1 to 100, inclusive, are currently unknown to Plaintiff, who therefore sue Defendants by such fictitious names under California Code of Civil Procedure § 474.  Plaintiff is informed and believes, and based thereon alleges, that each of the defendants designated herein as a DOE is legally responsible in some manner for the unlawful acts referred to herein. Plaintiff will seek leave of court to amend this Complaint to reflect the true names and capacities of the defendants designated hereinafter as DOES when such identities become known.

## III.

## CLASS ALLEGATIONS

20.     Plaintiff incorporates all previous paragraphs of this Complaint as though fully set forth herein.

21.     This action is brought and may properly be maintained as a class action pursuant to the provisions of Federal Rules of Civil Procedure Rule 23.

22.     Plaintiff seeks to certify the following classes:

(a)     "ANTI-POACHING CLASS."  For claims against INTUIT, GOOGLE, and DOES 1-80, Plaintiff seeks to certify a class of:

CLASS ACTION COMPLAINT                                                                    *INTUIT, INC.*

All natural persons who are, have been, or will be
employed by INTUIT and DOES 1-20 in California since
November 3, 2003.

(b)     "OVERTIME CLASS."  For claims against INTUIT and DOES
1-10, Plaintiff seeks to certify a class of:

All natural persons employed by INTUIT and DOES 1-
10 in California since March 9, 2008, in any job whose
title is or was referred to by any of the Defendants as
"test engineer," "software engineer," "computer
programmer," "architect", "developer," and/or "quality
assurance [QA] engineer," "product control," "systems
specialist," "documentation control," or any similar
derivative title that is better defined by a "skill set" that
describes realistic descriptions and expectations of the
duties performed by the CLASS or sub-classes.

Excluded from both Classes above are corporate officers and members of the

boards of directors of INTUIT and GOOGLE who entered into the illicit

agreements described herein.

23.     There is a well-defined community of interest in the litigation and

the classes are ascertainable.

a.     Numerosity: The classes are both so numerous that individual joinder

of all members is impractical under the circumstances of this case. While the exact

number of class members is unknown to Plaintiff at this time, Plaintiff is informed

and believes and thereon alleges that it is several hundred employees or more.

11

b.    <u>Common Questions Predominate</u>:  Common questions of law and fact exist as to the, and predominate over any questions that affect only individual members of the class.

(1)    The common questions of law and fact that predominate regarding the ANTI-POACHING CLASS include, but are not limited to whether the class members were subject to an illegal anti-competitive agreements by and between the Defendants which prevented them from moving employment from Intuit to another employer; whether their wages were depressed for that reason or the employees otherwise suffered and can prove damages from those illegal agreements;

(2)    The common questions of law and fact that predominate regarding the OVERTIME CLASS include, but are not limited to whether the class members were entitled to be paid and were paid for all overtime and double overtime compensation pursuant to California law.

c.    <u>Typicality:</u>

(1)    Plaintiff's claims are typical of the claims of the ANTI-POACHING CLASS.  Said class members sustained losses, injuries and damages arising out of the Defendants' illegal anti-competitive agreements were applied to all members of the class.  Plaintiff seeks recoveries for the same types of losses, injuries, and damages as were suffered by the other class members.

12

(2)     Plaintiff's claims are typical of the claims of the OVERTIME CLASS.  Plaintiff and other class members sustained losses, injuries and damages arising out of the Defendants' common policies and practices in failing to pay all overtime and double overtime wages due.  Plaintiff seeks recoveries for the same types of losses, injuries, and damages as were suffered by the other class members.

d.     Adequacy: Plaintiff and his counsel will fairly and adequately protect the interests of the class members.  Plaintiff has no interest that is adverse to the interests of the other class members.

e.     Superiority:  A class action is superior to other available means for the fair and efficient adjudication of this controversy.  Individual joinder of all class members is impractical.  Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of effort and expense that numerous individual actions engender.  Also, because the losses, injuries and damages suffered by each of the individual class members are small in the sense pertinent to class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual employees to redress the wrongs done to them.  On the other hand, important public interests will be served by addressing the matter as a class action.  The cost to the court system and the public of adjudication of individual litigation and

13

claims would be substantial, and substantially more than if the claims are treated as class action.  Individual litigation and claims would also present the potential for inconsistent or contradictory results.

f.     Public Policy Considerations:

24.    Employers in the software industry, such as INTUIT routinely violate wage and hour laws.  Their employees are often afraid to assert their rights out of fear of direct or indirect retaliation.   In addition, the illegal agreements that all Defendants entered into are felonies under federal law, and not only harm the class members in the ANTI-POACHING CLASS, but cause damage to the market place for all employees in the software industry by depressing wages and preventing free movement of employees.  In addition, INTUIT disrupted the marketplace for employees and decreased the ability of employees to find employment elsewhere, which supported and aided their efforts to reduce employee pay and avoid payment overtime compensation.

**IV.**

**First Cause of Action**

*Failure to Pay Wages at Overtime Wages*
Against Intuit (Including Does 1-19)

25.    Plaintiff, on behalf of himself and all others similarly situated, re-alleges and incorporated herein by reference each of the allegations contained in

14

the preceding paragraphs of this Complaint, and further alleges against Defendants as follows:

26.    Throughout the period applicable to this cause of action, Plaintiff and the proposed OVERTIME CLASS members were properly classified as non-exempt under California and federal law.  The majority of work that Plaintiff and the proposed OVERTIME CLASS members performed was non-exempt duties lacking the requisite discretion and independent judgment in matters of significance, as required by California law.  No exemptions properly apply that would make Plaintiff and the OVERTIME CLASS members exempt for state and federal overtime compensation laws.

27.    Throughout the period applicable to this cause of action, Plaintiff and the proposed OVERTIME CLASS members regularly and typically and worked in excess of forty (40) hours per week and/or in excess of excess of eight (8) hours per day.

28.    INTUIT was actually aware, or reasonably should have been aware, that Plaintiff and the OVERTIME CLASS members were working overtime virtually every week during the entire liability period.

29.    INTUIT failed to compensate Plaintiff and OVERTIME CLASS members for all hours it allowed and suffered them to work, in particular for overtime hours in excess of eight (8) hours per day or forty (40) hours per week.

*INTUIT, INC*

30.   Pursuant to California Labor Code section 1194, Plaintiff and the OVERTIME CLASS members are entitled to recover unpaid overtime compensation, and other unpaid wages, plus interest, plus attorneys' fees and costs.

## Second Cause of Action

*Failure to Pay All Wages Upon Termination of Employment*
(Lab. Code § 203)
Against Intuit and Does 1 – 19

31.   Plaintiff, on behalf of himself and all others similarly situated, re-alleges and incorporated herein by reference each of the allegations contained in the preceding paragraphs of this Complaint, and further alleges against Defendants as follows:

32.   Plaintiff and many of the other OVERTIME CLASS members quit or were discharged from their employment, but INTUIT failed to timely pay all wages within the time period required by Labor Code sections 201, 202, and 203. In particular, INTUIT failed and refused to pay its employees for the overtime compensation they were owed at the end of their employment.

33.   INTUIT's failure to pay said wages within the required time was willful within the meaning of Labor Code section 203.

34.   Therefore, each of OVERTIME CLASS members whose employment ended during the applicable statute of limitations time period is entitled to one

16

day's wages for each day he or she was not timely paid all said wages due, up to a maximum of thirty days' wages for each employee. Because said employees were ever paid the overtime wages to which they were entitled, and each of said employees is entitled to thirty days' wages.

## **Third Cause of Action**

*Violations of Section 1 of the Sherman Act, 15 U.S.C. § 1*
Against Intuit, Google and Does 1 - 100

35.     Plaintiff, on behalf of himself and all others similarly situated, re-alleges and incorporated herein by reference each of the allegations contained in the preceding paragraphs of this Complaint, and further alleges against Defendants as follows:

36.     Defendants entered into and engaged in unlawful agreements in restraint of trade and commerce described above in violation of Section 1 of the Sherman Act,15 U.S.C. § 1, including per se violations of Section 1.

37.     From June 6, 2007 (or possibly earlier), GOOGLE would not recruit employees from INTUIT. Plaintiff is also informed and believes that if an INTUIT employee sought a job from GOOGLE, that private information was relayed back to INTUIT pursuant to the illegal agreement, which would then damage the INTUIT employee's reputation. This is a per se violation of Section 1 of the Sherman Act.

17

38.     Defendants' illegal agreements have included concerted action among each other with the purpose and effect of: (a) fixing the compensation of Plaintiff and the Class at artificially low levels; (b) eliminating, to a substantial degree, competition among Defendants for skilled labor; (c) preventing the employees from moving to other employment, where they could obtain higher wages, obtain greater opportunities for promotion; and obtain overtime compensation for all hours worked.  As a direct and proximate result of Defendants' combinations and contracts to restrain trade and eliminate competition for skilled labor, members of the Class have suffered injury to their property.  The acts done by each Defendant as part of, and in furtherance of, their contracts, combinations or conspiracies were authorized, ordered, or done by their respective officers, directors, agents, employees, or representatives while actively engaged in the management of each Defendant's affairs.

39.     Accordingly, Plaintiff and members of the Class seek three times their damages caused by Defendants' violations of Section 1 of the Sherman Act, the costs of bringing suit, reasonable attorneys' fees, and a permanent injunction enjoining Defendants from ever again entering into similar agreements in violation of Section 1 of the Sherman Act.

CLASS ACTION COMPLAINT

*INTUIT, INC.*

## Fourth Cause of Action

*Violations of the Cartwright Act, Cal. Bus. & Prof. Code §§ 16720, et seq.*
Against Intuit, Google, and Does 1 - 100

40.     Plaintiff, on behalf of himself and all others similarly situated, re-alleges and incorporated herein by reference each of the allegations contained in the preceding paragraphs of this Complaint, and further alleges against Defendants as follows:

41.     Defendants entered into and engaged in an unlawful trust in restraint of the trade and commerce described above in violation of California Business and Professions Code section 16720.  Beginning no later than January 2005 and continuing at least through 2009, Defendants engaged in continuing trusts in restraint of trade and commerce in violation of the Cartwright Act.

42.     Defendants' illegal trusts and agreements have included concerted action with each other with the purpose and effect of: (a) fixing the compensation of Plaintiff and the Class at artificially low levels; (b) eliminating, to a substantial degree, competition among Defendants for skilled labor; (c) preventing the employees from moving to other employment, where they could obtain higher wages, obtain greater opportunities for promotion; and obtain overtime compensation for all hours worked.  As a direct and proximate result of Defendants' combinations and contracts to restrain trade and eliminate competition for skilled labor, members of the Class have suffered injury to their property.

43.    Plaintiff and members of the Class are "persons" within the meaning of the Cartwright Act as defined in section 16702.

44.    The acts done by each Defendant as part of, and in furtherance of, their contracts, combinations or conspiracies were authorized, ordered, or done by their respective officers, directors, agents, employees, or representatives while actively engaged in the management of each Defendant's affairs.

45.    Defendants' contracts, combinations, and/or conspiracies are per se violations of the Cartwright Act.

46.    Accordingly, Plaintiff and members of the Class seek three times their damages caused by Defendants' violations of the Cartwright Act, the costs of bringing suit, reasonable attorneys' fees, and a permanent injunction enjoining Defendants' from ever again entering into similar agreements in violation of the Cartwright Act.

### Fifth Cause of Action

*Violations of Cal. Bus. & Prof. Code § 16600*
Against Intuit, Google, and Does 1 – 100

47.    Plaintiff, on behalf of himself and all others similarly situated, re-alleges and incorporated herein by reference each of the allegations contained in the preceding paragraphs of this Complaint, and further alleges against Defendants as follows:

*INTUIT, INC*

48.     Defendants entered into, implemented, and enforced express agreements that are unlawful and void under Section 16600.  Defendants' agreements and conspiracy have included concerted action among the Defendants' illegal agreements have included concerted action with the purpose and effect of: (a) fixing the compensation of Plaintiff and the Class at artificially low levels; (b) eliminating, to a substantial degree, competition among Defendants for skilled labor; (c) preventing the employees from moving to other employment, where they could obtain higher wages, obtain greater opportunities for promotion; and obtain overtime compensation for all hours worked.  As a direct and proximate result of Defendants' combinations and contracts to restrain trade and eliminate competition for skilled labor, members of the Class have suffered injury to their property. Defendants' agreements and conspiracy were not intended to protect and were not limited to protect any legitimate proprietary interest of Defendants.

49.     Defendants' agreements and conspiracy do not fall within any statutory exception to Section 16600.

50.     The acts done by each Defendant as part of, and in furtherance of, their contracts, combinations or conspiracies were authorized, ordered, or done by their respective officers, directors, agents, employees, or representatives while actively engaged in the management of each Defendant's affairs.

51.     Accordingly, Plaintiff and members of the Class seek a judicial

declaration that Defendants' agreements and conspiracy are void as a matter of law under Section 16600, and a permanent injunction enjoining Defendants' from ever again entering into similar agreements in violation of Section 16600.

### Sixth Cause of Action

*Common Law Conspiracy*
Against Intuit, Google, and Does 1 – 100

52.     Plaintiff, on behalf of himself and all others similarly situated, incorporates herein by reference each of the allegations contained in the preceding paragraphs of this Complaint, and further alleges against Defendants as follows:

53.     Defendants formed and entered into a conspiracy to depress the wages of their employees and to prevent their employees from leaving their employment to go to their competitors by committing the wrongful and illegal act described herein.

54.     Pursuant to the conspiracy, Defendants agreed not to recruit or hire each other's employees, and exchanged private information about the employee of one defendant when an employee independently sought employment with another defendant.  All Defendants were aware of the conspiracy, actively participated in it, and were aware of the objectives of the conspiracy.

55.     Defendants' conspiracy caused resultant damage to their employees in the form of depressed wages, limited mobility in employment, reduced

22

opportunities for promoted and advancement, and inability to obtain payment of all wages due, particularly overtime compensation.

### Seventh Cause of Action

*Unfair Competition in Violation of Cal. Bus. & Prof. Code §§ 17200, et seq.*
Against Intuit, Google, and Does 1 – 100

56.     Plaintiff, on behalf of himself and all others similarly situated, re-allege and incorporates herein by reference each of the allegations contained in the preceding paragraphs of this Complaint, and further alleges against Defendants as follows:

57.     INTUIT's actions to restrain trade and fix the total compensation of their employees, to fail and refuse to pay overtime compensation to non-exempt employees, and their failure to pay employees all wages at the end of employment constitute unfair competition and unlawful, unfair, and fraudulent business acts and practices in violation of California Business and Professional Code sections 17200, et seq.  The conduct of all Defendants includes violation of the UCL by violating, inter alia, each of the following laws:  each of these violations constitutes an independent and separate violation of the UCL:  California applicable Wage Orders; Labor Code sections 201, 202, 203, 204, 226, 510, 1174, and 1194; Section 1 of the Sherman Act; the Cartwright Act; and California Business & Professions Code section 16600.

CLASS ACTION COMPLAINT                                                                                          *INTUIT, INC.*

58.    As a result of Defendants' violations of Business and Professions Code section 17200, Defendants have unjustly enriched themselves at the expense of Plaintiff and the class.

59.    Plaintiff on behalf of himself and the other class members seeks restitution and disgorgement from INTUIT and DOES 1-19 of all overtime wages wrongfully denied to them.   Plaintiff on behalf of himself and the other class members seeks restitution and disgorgement from INTUIT, GOOGLE, and DOES 1-100.

60.    Plaintiff and all class members in both classes are also entitled to permanent injunctive and declaratory relief prohibiting INTUIT, GOOGLE, and DOES 1-100 from engaging in the violations and other misconduct referred to above.

61.    Defendants are also liable to pay attorneys' fees pursuant to California Code of Civil Procedure section 1021.5 and California Labor Code §§ 218, 218.5, and 1194.

## V.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff on behalf of himself and all CLASS MEMBERS, pray for relief as follows:

*INTUIT, INC.*

1.  That the Court determine that this action may be maintained as a class action;

2.  That Plaintiff be appointed the representative of the class members; That the attorneys of record for Plaintiff whose names appear in this Complaint be appointed Class counsel;

3.  For unpaid wages at overtime rates for all overtime work and unpaid wages for all work for which they were not paid;

4.  For such general and special damages as may be appropriate;

5. For waiting time penalties and civil penalties for all class members no longer in Defendants' employ at the time of Judgment;

6.  For pre-judgment interest;

7.  For restitution;

8.  For permanent injunctive and declaratory relief;

9.  A declaratory judgment that the practices complained of herein are unlawful under federal and California state law;

10.  Attorney's fees and costs of suit, including expert fees;

11.  For treble damages;

12.  Such other injunctive and equitable relief as the Court may deem proper.

25

DATED:  March 13, 2012

**JOSE GARAY, APLC**

**&**

**HAMNER LAW OFFICES, APC**

**&**

**THE NUNES LAW GROUP**

By CHRISTOPHER J. HAMNER, ESQ.,
Co-Counsel for Plaintiff, OSSIE
SANTIAGO, on behalf of himself and all
others similarly situated.

26