# EXHIBIT T

# JONES DAY

555 CALIFORNIA STREET • 26TH FLOOR • SAN FRANCISCO, CALIFORNIA 94104.1500
TELEPHONE: 415 626.3939 • FACSIMILE: 415.875.5700

Direct Number: (415) 875-5745
dkiernan@JonesDay.com

JP006236                              April 5, 2012

<u>VIA EMAIL AND U.S. MAIL.</u>

Joseph R. Saveri
Lieff, Cabraser, Heimann & Bernstein LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339


Re:    <u>In re: High-Tech Employee Antitrust Litigation Case No. 11-cv-2509-LHK</u>


Dear Joe:

This letter follows up on our discovery conference held on April 2, 2012.

Although we made some progress, there are still some outstanding issues that we identified that we'd like to get resolved. Please let us know plaintiffs' positions by Monday April 9, 2012.

## A.    **Plaintiffs' Responses To Defendants' Discovery**

### Time Period for Responses To Interrogatories and Document Requests

Plaintiffs' asserted general and specific objections limiting their responses to the time period beginning one job before they worked for a defendant and one job after. (See, e.g., general objections in responses to interrogatories and document requests; see also responses to document request Nos. 1-4, 8, 11-13, and 17.) You agreed to consider providing information and documents before their employment with a defendant without restriction as to time but will not provide any information or documents more than one job after working for the defendant.

We do not agree with this cut off and request that plaintiffs supplement all responses without limiting the time period.

### Defendants' Interrogatory No. 2 – Addresses

Plaintiffs will not provide current and past addresses of the named plaintiffs unless defendants agree to provide home addresses of its former employees. We don't agree with this proposal. Please supplement plaintiffs' responses with their current and past street addresses without a time restriction.

ATLANTA • BEIJING • BRUSSELS • CHICAGO • CLEVELAND • COLUMBUS • DALLAS • DUBAI • FRANKFURT • HONG KONG • HOUSTON
IRVINE • LONDON • LOS ANGELES • MADRID • MEXICO CITY • MILAN • MOSCOW • MUNICH • NEW DELHI • NEW YORK • PARIS
PITTSBURGH • SAN DIEGO • SAN FRANCISCO • SHANGHAI • SILICON VALLEY • SINGAPORE • SYDNEY • TAIPEI • TOKYO • WASHINGTON
SFI-729149v2

**JONES DAY**

Joseph R. Saveri
April 5, 2012
Page 2

<u>Defendants' Interrogatory Nos. 4-6 – Employment History</u>

It appears that most plaintiffs limited their response to listing the jobs just before and just after working for a defendant. And some plaintiffs failed to identify the date range for employment or how they became aware of job openings. For example, Plaintiff Devine states that he worked for Manpower Professional Services without providing a start date, then worked for Adobe starting in October 2006 without providing an end date, then worked for Volt Technical Services without providing any dates or indicating whether Volt is his current employer. Hariharan stated that he worked for Electronic Arts until December 15, 2006, then worked for Lucasfilm from January 8, 2007 – August 15, 2008, then worked for Zynga. He doesn't provide the start date for Electronic Arts and doesn't provide any dates for Zynga. Nor does he indicate whether Zynga is his current employer.

Plaintiffs confirmed that their responses will include information relating to all forms of compensation, including any stocks, options, bonuses, etc.

We request that plaintiffs supplement their responses to respond fully to Interrogatory Nos. 4-6 without any time restrictions.

<u>Defendants' Interrogatory No. 10 – Recruiters</u>

Plaintiffs have not agreed to supplement their response, but will get back to us on whether there are any persons or entities that have acted as a recruiter or intermediary to explore, evaluate, consider or obtain employment, including informal requests to find a job, but excluding references.

<u>Defendants' Interrogatory No. 11 – Persons Who Were Aware</u>

Plaintiffs will supplement their answer to Interrogatory No. 11 identifying all persons who were aware of any aspect of the agreement at any time before the action was filed.

<u>Defendants' Interrogatory No. 12 – Communications Regarding Agreements and Conduct Alleged To Be Unlawful</u>

Plaintiffs will supplement their answer to Interrogatory No. 12 describing plaintiffs' communications relating to the alleged agreements or any conduct alleged to be unlawful with anyone other than counsel.

**JONES DAY**

Joseph R. Saveri
April 5, 2012
Page 3


<u>Defendants' Interrogatory Nos. 13 & 14 – Damages</u>

Defendants request that plaintiffs state all facts currently in their possession that support their contention that they were injured and the amount of damages.  Plaintiffs will not do so.

<u>Defendants' Request for Production No. 2 – Profiles</u>

Plaintiffs agreed to produce documents relating to their profile data, if any, on sites used to explore or search for Job opportunities, including sites like Monster.com and LinkedIn. Please supplement without any time restrictions.

<u>Defendants' Request for Production No. 4 – Salary and Benefits</u>

Plaintiffs confirmed that their response will include documents relating to all forms of compensation, including any stocks, options, bonuses, etc.

<u>Defendants' Request for Production No. 8 – Resumes</u>

Plaintiffs will produce only current resumes and resumes and similar documents that "were communicated" to any defendant or potential employers for the time period beginning one job before they worked for a defendant and one job after.  Plaintiffs refuse to produce draft resumes, resumes that were not sent to any person or entity, and (other than current resumes) resumes created outside of the foregoing time period.

We do not agree with these limitations.  We request that plaintiffs produce all copies of resumes and similar documents, including drafts, whether communicated or not to any entity or person and regardless of time period.

<u>Defendants' Request for Production No. 9 – Personnel Files</u>

Defendants clarified that they seek all documents that would be included in an employee's personnel files, including information related to hiring and recruitment, compensation, performance, performance reviews, complaints, and termination.  Plaintiffs will determine whether they have responsive material and, if so, inform defendants whether they will produce or stand on their objections.

Joseph R. Saveri
April 5, 2012
Page 4

Defendants' Request for Production Nos. 11 & 12 – Communications with Defendants' Employees or Anyone Else Re: Matters in the Consolidated Amended Complaint

Plaintiffs confirmed that they produce documents reflecting or relating to communications regarding the agreements or any conduct alleged to be unlawful with anyone other than counsel.

Defendants' Request for Production Nos. 13 & 17

Plaintiffs confirmed that they are not withholding any documents based on the last sentence in their response ("Additionally, Plaintiffs will search for and produce only documents, if any exist, relating to claims and allegations in Plaintiffs' Consolidated Amended Complaint.") and agree to supplement their responses to remove that sentence.

**B.   Depositions**

Plaintiffs will get available dates for depositions in San Francisco of the named plaintiffs the week of July 9, 2012.

**C.   Defendants Responses To Plaintiffs' Discovery**

Production of Data

The parties agreed that Manager ID or some similar identifier (e.g., perhaps the employee ID of the manager) may be produced in lieu of the name of the manager.  To the extent a defendant is unable to produce either, that defendant will discuss separately with plaintiffs.

Some defendants still disagree with producing gender in light of the sensitivity of that data.  We'll have a final position soon.

In response to the data requests, some defendants will collect snapshots of their respective databases.  They propose taking one snapshot per year during the class period to reduce the burden and amount of data.  Those defendants will confirm whether a snapshot includes all current and former employees (e.g., whether a January 1, 2003 snapshot would include a person who was hired March 1, 2002 and terminated June 30, 2002).

As for timing, Defendants are currently collecting data with the goal of starting rolling production of employee level personnel data (Section 5 of plaintiffs' data requests) the week of April 16, 2012.  We'll let you know if that time frame changes.

**JONES DAY**

Joseph R. Saveri
April 5, 2012
Page 5

Production of Documents

All defendants agree to produce policies and manuals and high-level analyses, studies, and summaries responsive to RFPs 14-20, 25-28, 30, 32-33, 35, 37-40, 42, and 44, to the extent they can be collected from reasonably accessible information sources without the use of search terms, in effect between January 1, 2001 – January 1, 2012, subject to revisiting if it turns out that the effort to collect will be burdensome.

We still disagree over the time period for custodial searches.  Plaintiffs propose that defendants run a narrower set of search terms against several key custodians between September 2010 – January 1, 2012 to reduce the number of false positives.  After discussing this further with the other defendants, we think that it makes sense for each defendant to negotiate separately with you in light of their own circumstances.

We understand other defendants have separately made their own proposals.  For Adobe, Intuit, Apple, Google, and Intel, we think that plaintiffs' proposal will cause more delay: the parties will have to negotiate new search terms, review sample data sets, renegotiate search terms based on the results of the review, etc.  Instead, we want to do discovery once.  To reach a reasonable compromise, we propose searching and producing documents created or sent between January 1, 2004 and December 31, 2010 from all custodians, including custodians collected in connection with the CIDs.

We agreed that the dispute over whether defendants should have to produce "high level communications" in response to RFPs 14-20, 25-28, 30, 32-33, 35, 37-40, 42, and 44 was better addressed in the negotiations regarding the search terms.

**A.      Custodians**

Each defendant is negotiating custodians separately.

**B.      Search terms**

Defendants will send a redline of plaintiffs' proposed search terms this week.  Defendants will then separately test search terms to determine whether they are appropriate and effective. Each defendant reserves the right to modify search terms to eliminate false positive results or address other issues that may be disclosed during testing.

**JONES DAY**

Joseph R. Saveri
April 5, 2012
Page 6

### C.    Privilege Logs

Plaintiffs agreed to consider the following proposal, which makes plain that in-house counsel attorney-client communications and work product need not be logged and provides a specific definition of which witness interviews have to be logged:

> Privilege logs shall identify the documents or information withheld with sufficient specificity to identify the material withheld and the basis for the claimed privilege or protection.
>
> The parties agree that they do not have to log on a privilege log documents: (1) protected by attorney-client privilege or work product doctrine pursuant to Rule 26~~(b)(3)(B)~~; (2) that consist of attorney-client communications <u>sent in connection with</u>~~, with outside counsel~~ or work product ~~authored by outside counsel~~ for the purposes of, this <u>litigation</u> ~~action~~ or the DOJ investigation; (3) were generated after outside counsel for the party was retained in connection with this litigation and the related DOJ investigation; and (4) have not been disclosed to third parties.  However, all ~~documents and communications regarding~~ witness interview~~s~~ <u>memoranda</u> of individuals who <u>are unable to testify because of death, existing physical or mental illness or infirmity, or because their attendance at a deposition could not be procured by process or other reasonable means</u> ~~no longer available~~ must be logged.
>
> Documents for which privileged information has been redacted but the foregoing information has been produced in the form of unredacted email header information need not be logged.
>
> For email strings, the parties are permitted to use only one entry on their respective privilege logs to identify withheld emails that contain a string of emails (provided, however, that in future privilege logs the entry notes the presence of a string, beginning and ending dates, all of the authors and recipients, and a description of all the subject matters discussed).
>
> The Parties agree that privilege logs shall be produced on a rolling basis commencing <u>30</u> ~~21~~ days after the initial production of documents.

**JONES DAY**

Joseph R. Saveri
April 5, 2012
Page 7


Some Defendants are still considering the proposal for logging of witness interviews, but we hope to be able to reach an agreement among all the parties soon.

We're prepared to discuss these outstanding issues at your convenience.

Very truly yours,

David C. Kiernan