1   Richard M. Heimann (State Bar No. 63607)
    Kelly M. Dermody (State Bar No. 171716)
2   Eric B. Fastiff (State Bar No. 182260)
    Brendan Glackin (State Bar No. 199643)
3   Dean Harvey (State Bar No. 250298)
    Anne B. Shaver (State Bar No. 255928)
4   LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
    275 Battery Street, 29th Floor
5   San Francisco, California  94111-3339
    Telephone:  415.956.1000
6   Facsimile:  415.956.1008

7   Joseph R. Saveri (State Bar No. 130064)
    SAVERI LAW FIRM
8   255 California, Suite 450
    San Francisco, California 94111
9   Telephone: 415.500.6800
    Facsimile: 415.500.6803

10
    *Proposed Interim Co-Lead Counsel for Plaintiff Class*
11
    [Additional counsel listed on signature page]
12

13                 IN THE UNITED STATES DISTRICT COURT

14             FOR THE NORTHERN DISTRICT OF CALIFORNIA

15                          SAN JOSE DIVISION

16

17

18   IN RE: HIGH-TECH EMPLOYEE          Master Docket No. 11-CV-2509-LHK
     ANTITRUST LITIGATION
19                                      **JOINT CASE MANAGEMENT
     THIS DOCUMENT RELATES TO:          CONFERENCE STATEMENT**
20
     ALL ACTIONS                        Date:      June 4, 2012
21                                      Time:      2:30 p.m.
                                        Courtroom: 8, 4th Floor
22                                      Judge:     The Honorable Lucy H. Koh

23

24

25

26

27

28

1    The parties submit this joint statement for the June 4, 2012 Case Management Conference.

2  **I.    <u>Case Progress</u>**

3    Since the April 18, 2012 Case Management Conference, the case has progressed as

4  follows.

5    The Court granted in part and denied in part Defendants' Joint Motion to Dismiss and

6  denied Lucasfilm Ltd.'s motion to dismiss.  (Dkt. No. 119.)  The Court denied Defendants' Joint

7  Motion to Dismiss regarding Plaintiffs' claim under Section 1 of the Sherman Act and Plaintiffs'

8  claim under the Cartwright Act.  The Court granted Defendants' Joint Motion to Dismiss

9  regarding Plaintiffs' claim under the Unfair Competition Law.

10    Plaintiffs confirmed they will not amend the Consolidated Amended Complaint.

11    On May 1, 2012, at Defendants' request, Plaintiffs agreed to extend Defendants' deadline

12  to answer the Consolidated Amended Complaint to May 21.  (Dkt. No. 123.)

13    On May 17, 2012, Plaintiffs asked Defendants to agree to extend Plaintiffs' deadline to

14  file their class certification motion by four months, to October 26, 2012.  On May 21, Defendants

15  refused to agree to the extension.

16    On May 21, Defendants filed answers.  (Dkt. Nos. 126-132.)

17    On May 25, 2012, Plaintiffs filed a motion for extension of time to file their class

18  certification motion.  (Dkt. No. 137.)  The Court denied the motion on May 29, 2012.  (Dkt. No.

19  140.)

20

21

22

23

24

25

26

27

28

- 1 -

1

**II.**     **Case Management**

2

    **A.**     **Class Certification Deadline**

3

       **1.**     **Plaintiffs' Position**[1]

4

      On May 25, 2012, Plaintiffs moved the Court to extend the time to file their motion for

5 class certification from June 28, 2012 to October 26, 2012. (Dkt. No. 137.) As of the date, it had

6 become clear that Defendants' production of data from their human resources, recruiting, and

7 other databases was massive, delayed, and incomplete.

8       A continuance is necessary to provide Defendants the opportunity to complete production

9 of data and other discovery and to provide Plaintiffs the ability to analyze Defendants' data,

10 review Defendants' document productions, and take other discovery (such as depositions of data

11 custodians and other knowledgeable witnesses) that Plaintiffs will use to support their motion for

12 class certification. In connection with class certification, additional time will be important to

13 refine the class definition, determine the number of class members, compile necessary common

14 evidence that is capable of showing widespread impact (in the form of artificial suppression of

15 compensation) on members of the class, and build a model capable of computing aggregate

16 damages to the class with predominantly class-wide evidence. *See*, *e.g.*, *In re Dynamic Random*

17 *Access Memory (DRAM) Antitrust Litig.*, No. M 02-1486 PJH, 2006 WL 1530166, at *24-25

18 (N.D. Cal. June 5, 2006) ("Plaintiffs need only advance a plausible methodology to demonstrate

19 that antitrust injury can be proven on a class-wide basis.").

20       On May 29, 2012, the Court denied Plaintiffs' motion, finding that "Plaintiffs have failed

21 to show good cause for a four-month extension on the deadline to file their class certification

22

---

23 [1] Below, Defendants assert that Plaintiffs did not provide them with a draft of this statement until shortly before the filing deadline. This is incorrect. Plaintiffs provided Defendants with a draft

24 of the case management statement on May 21, 2012. Defendants never responded. After the Court moved the case management conference to June 4, the first draft exchanged by the parties

25 was a draft Defendants provided Plaintiffs at 3:19 p.m. on May 31. At the opening of business today, Plaintiffs' counsel called Defendants' counsel to provide an outline and a detailed

26 summary of the additional points Plaintiffs intended to make to the statement, so that Defendants could respond if they chose to. Plaintiffs confirmed their phone call of earlier today with a

27 completed section to Defendants at 11:27 a.m. today. Defendants did not provide any of their responsive sections until 12:50 p.m., despite receiving advance notice of the points Plaintiffs

28 intended to make.

1    motion." (Dkt. No. 140.)  The Court also scheduled a case management conference for June 4,

2    2012 at 2:30 p.m.

3         Plaintiffs respectfully reiterate their request for an extension of the class certification

4    deadline and request argument on the issue at the June 4 case management conference.

5         Since Plaintiffs filed their motion on May 25, Defendants continue to produce data and

6    documents directly relevant to class certification on a rolling basis.[2]  Adobe produced additional

7    documents on May 25 and produced additional data on May 30.  Intel produced additional  May

8    25.  Intuit produced additional documents on May 25 and May 30.  On May 31, Lucasfilm's

9    counsel wrote to say that it will produce additional data that it omitted from earlier productions

10   that include recruiting data covering the years 2001 through 2008.  Plaintiffs received that

11   production this morning.  Also this morning, Intuit's counsel wrote to say that it will produce

12   additional data.

13        When Plaintiffs filed their motion on May 25, Defendants had produced 248 different

14   databases with nearly 20 million separate observations (employment history events).  Now, a

15   week later, Defendants have produced at least another 118 databases with at least another 17

16   million separate observations.[3]  That is, Plaintiffs' expert received more than <u>46%</u> of the total

17   observations after Plaintiffs field their motion to extend time.  Defendants have now produced

18   over 7 gigabytes of data, with more on the way.

19        This is an enormous amount of raw data by any measure.  This data, from several different

20   companies spanning many years and multiple different computer systems, is not self-explanatory.

21   Plaintiffs and their expert must understand this data for their class certification motion in order to

22   evaluate, *inter alia*, the appropriate economic model or models to employ to assess the effect of

23

---

24   [2] In Plaintiffs' motion for an extension of time, Plaintiffs mistakenly stated that Defendants have
     not begun production of "Track Two" documents.  Certain Defendants began producing Track
25   Two documents prior to Plaintiffs' motion for extension of time.  No Defendant has stated that its
     document production is complete, and no Defendant has provided an estimate of when its
26   document production will be complete, except to say that they expect to meet the June 15, 2012
     substantial completion deadline.

27   [3] Plaintiffs' expert has not yet uploaded all of Defendants' recent data productions.  These totals
     therefore understate the size of the recent productions.  Defendants continue to produce data, as
28   recently as another production that Lucasfilm produced today.

JOINT CASE MGMNT CONFERENCE STATEMENT
Master Docket No. 11-CV-2509-LHK

1040826.2

1  Defendants' illegal agreements on compensation generally, the scope of the affected category or

2  categories of employees (in order to appropriately define the class), and a reliable methodology

3  for quantifying the aggregate effects on compensation caused by Defendants' illegal agreements.

4        To that end, at Plaintiffs' initiative, the parties have met and conferred several times

5  regarding data issues, and the parties have exchanged numerous correspondence.  Apple has not

6  responded to Plaintiffs' initial set of questions, and Plaintiffs are waiting for responses from

7  Google, Intel, Intuit, and Pixar regarding important follow-up questions.  There are many

8  outstanding data issues.  Intuit's data is missing hiring and recruiting data for 2007 through 2012,

9  and Lucasfilm produced today data regarding hiring and recruiting for 2001 through 2008.  Other

10  Defendants continue to omit data they have agreed to produce.[4]

11        Plaintiffs asked whether Defendants would provide knowledgeable witnesses to discuss

12  data issues on an informal basis.  All Defendants refused, requiring Plaintiffs to bear the costs and

13  the delay of formal discovery on matters that are routinely handled expeditiously through

14  informal information exchanges.  Plaintiffs then noticed 30(b)(6) depositions regarding data

15  issues, one for each Defendant, on May 24.  Plaintiffs have followed-up to schedule the

16  depositions.  Thus far, only one Defendant has offered a date for a deposition: Pixar for June 14.

17  Other Defendants have not.  Google said it will not be in a position to discuss dates until June 5.

18  Other Defendants have not provided dates.

19        Once Defendants complete their data and document productions on approximately June

20  15, the current schedule requires Plaintiffs to move for class certification less than two weeks

21  later, on June 28.  Plaintiffs seek more time for preparation of the motion and accompanying

22  expert report.

23

24

25  [4] For instance, Apple has failed to produce overtime compensation data; Adobe has failed to
produce stock options data and overtime compensation data; Google has failed to produce stock

26  options data, overtime compensation data, and employee status change data; Intel has failed to
produce overtime compensation data and employee status change data; Lucasfilm's data is

27  inconsistent from 2001 through 2005, and is missing bonus information for 2006 through 2012;
and Pixar has failed to produce overtime compensation data and employee classification

28  information.

1040826.2

Plaintiffs request additional time to perform the following specific tasks. Some of these tasks will be done in parallel, and some will be done in sequence:

- ***Creating a reliable and substantially complete database (approximately 5 weeks).***
  After Defendants produce data, Plaintiffs' expert must clean and vet the data for gaps, reliability, and clarification of data fields. This initial analysis requires approximately four weeks, and has largely been completed for the data already produced. After the initial review, Plaintiffs asked questions of Defendants and asked, as appropriate, for supplemental productions. This process is ongoing, requiring 30(b)(6) depositions after Defendants refused to permit informal conversations with knowledgeable employees. With one exception (Pixar) these depositions have not been scheduled. If the parties act promptly, these depositions and supplemental productions should be completed within the next three weeks. After resolving data questions and completing supplemental productions, Plaintiffs' request an additional two weeks to clean and vet the supplemental data productions.

- ***Reviewing documents and taking depositions (approximately 8 weeks).*** In parallel with preparing the database, Plaintiffs must review Defendants' documents. While the merits are not directly at issue in the class motion, Plaintiffs must evaluate internal company documents regarding the intent and effect of the illegal agreements in order to define the scope of the affected employees (and thus the appropriate class definition or definitions) as well as to assist their economist in putting the enormous amount of compensation and other data in context. The document productions are ongoing and incomplete. In addition to the DOJ productions, Defendants have produced tens of thousands of documents, with more produced daily. These productions indicate that the vast majority of the responsive documents have not been produced, and likely will not be until the Court's June 15 deadline. For example, Apple has only produced approximately 162 documents since its DOJ production. Defendants have not estimated what the size of the eventual production will be, but cases of this kind typically result in hundreds of thousands, if not millions, of documents produced. Thus, Defendants' document productions are likely only a small fraction of the documents Defendants will eventually produce. Once these productions are complete, Plaintiffs request 8 weeks to review the documents and take certain depositions relevant to class certification questions, such as depositions of Defendants' employees responsible for company-wide compensation practices. Plaintiffs also request time for their expert to review documents and deposition testimony.

- ***Data and document analysis (approximately 4 weeks).*** After Plaintiffs' expert constructs a master dataset and understands the meaning of the various data fields, Plaintiffs request an additional four weeks for their expert to analyze the data regarding class certification issues, such as the class definition, the number of class members, and the appropriate means of modeling and proving impact and damages with predominantly class-wide evidence. During this time, Plaintiffs' expert will also review and analyze the documents.

- ***Modeling (approximately 4 weeks).*** After data and document analysis, Plaintiffs request four weeks for their expert to create models for impact analysis. These models are necessary to demonstrate how the expert intends to use class-wide evidence to prove impact and damages—*i.e.*, to show that the Defendants' illegal agreements suppressed compensation and by how much—to members of the class.

- 5 -

- ***Writing the report (approximately 4 weeks).***  After completing models for impact analysis, the results of the expert work must be explained and summarized in a report that Plaintiffs will file with their class certification motion.  The report will include economic and statistical analysis.  Plaintiffs request four weeks for this task.

In sum, in the first two months, Plaintiffs' counsel and Plaintiffs' expert will create a reliable and substantially complete database, review documents, and take depositions.  In the second month, Plaintiffs' counsel and Plaintiffs' expert will analyze the data, documents, and deposition testimony.  In the third month, Plaintiffs' expert will create economic models for impact analysis.  Finally, in the fourth month, Plaintiffs' expert will write a report that will summarize the economic and statistical analysis.

Defendants understand Plaintiffs' burden as well as the incomplete state of data and document discovery.  Defendants appear to be opposing Plaintiffs' request for an extension for strategic reasons.  Defendants' refusal to agree to an extension is out of character with the numerous extensions they have requested of Plaintiffs, and to which Plaintiffs have agreed.  These extensions include three stipulations in which Plaintiffs, at Defendants' request, agreed to provide Defendants over five months (from service of the first complaint on May 4, 2011 to the date of service of motions to dismiss on October 13, 2011) to respond to the complaints.  (Dkt. Nos. 17, 48, 63.)  Plaintiffs have also agreed to extend Defendants' deadline to file answers (Dkt. No. 123), and have agreed to provide Defendants with additional time to respond to Plaintiffs' discovery requests.

Plaintiffs respectfully reiterate their request for an extension to the class certification deadline, running four months from completion of the data and document production.  Plaintiffs respectfully request the opportunity to discuss the matter at the case management conference.

### 1.     Defendants' Position

Defendants received Plaintiffs' Position – essentially an unauthorized motion for reconsideration – including a variety of new claims about supposed discovery issues, 35 minutes

JOINT CASE MGMNT CONFERENCE STATEMENT
Master Docket No. 11-CV-2509-LHK

1040826.2

1  before the deadline for filing this statement.[5]  Defendants request an opportunity to more fully

2  address Plaintiffs' assertions, to the extent necessary, at the conference.

3          Plaintiffs' further request for a four-month continuance to file their class certification

4  motion — particularly after the Court has denied their motion for extension of time — is nothing

5  if not bold.  A month ago, Plaintiffs appeared before this Court and sought no change to the class

6  certification schedule or any other part of the Court's scheduling order, and raised no dispute

7  about the content or timing of Defendants' data and document productions.  At that time,

8  Plaintiffs knew exactly what data and documents Defendants had produced, and would be

9  producing, because the parties had spent significant time hashing out the parameters for those

10 productions.  At Plaintiffs' insistence, in line with their refusal to narrow their class definition,

11 Defendants agreed to produce eleven years' worth of compensation data for every one of their

12 tens of thousands of salaried employees in the U.S., with multiple data fields for each employee,

13 as well as extensive recruiting data.

14         Defendants expended significant time and resources producing that data according to the

15 Court's schedule.  The data productions began almost two months ago and, with minimal

16 exceptions, they are complete.  Since at least early May, Plaintiffs have had voluminous data to

17 undertake the required analysis for class certification.  However, from Plaintiffs' Position it

18 appears that, rather than working with their experts to develop an analytical model and analyze

19 the data, Plaintiffs instead have spent the past weeks trying to find flaws in the data to support

20 their request for an extension.  That effort is misguided.  There has been no delay or meaningful

21 "gaps" in Defendants' production, and there is no good cause to grant plaintiffs' requested

22 extension.

23

24 _____

[5] The Court issued an order on May 29, directing the parties to file a Joint Case Management
25 Conference Statement by noon on June 1, 2012.  Plaintiffs sent no proposed sections to the Case
Management Conference Statement until 35 minutes before the deadline for filing.  Plaintiffs'
26 reference to draft statements exchanged before the previously-scheduled Case Management
Conference set for May 31 is irrelevant, as this version is substantially different.  Defendants did
27 not respond to the earlier draft because the Court originally postponed the May 31 Case
Management Conference to July 25.  Defendants will be prepared to address the issues raised in
28 Plaintiffs' sections in greater detail at the Case Management Conference on June 4.

1040826.2

1      Plaintiffs have also argued that they cannot file for class certification by June 28 because

2   it is too soon after the June 15 deadline the Court set for Defendants to substantially complete

3   production of additional documents.  But the Court set that schedule in October 2011 — seven

4   months ago — and Plaintiffs raised no issues with it between then and filing their motion for

5   extension one week ago.  Plaintiffs also ignore that they received approximately 100,000 pages of

6   documents that Defendants produced to the Department of Justice six months ago, and additional

7   rolling productions since.  Plaintiffs fail to explain what new evidence they hope to find in the

8   "June 15" documents to support their class certification motion, why they need the new

9   documents to take depositions before class certification when they have otherwise indicated no

10  intention to do so, or why, in any event, they waited until now to complain about the schedule the

11  Court set last October.[6]  Plaintiffs have not established the "good cause" necessary to extend the

12  deadline for seeking class certification  set forth in the scheduling order, and their request to do so

13  should again be denied.

14          ***Plaintiffs Cannot Show the Good Cause Required to Modify the Scheduling Order.***

15      A scheduling order may be modified only for good cause.  Fed. R. Civ. P. 16(b)(4).  The

16  focus of the good cause standard is on the diligence of the party seeking amendment.  "If that

17  party was not diligent, the inquiry should end."  *Johnson v. Mammoth Recreations*, 975 F.2d 604,

18  610 (9th Cir. 1992); *Rashdan v. Geissberger*, 2012 U.S. Dist. LEXIS 21595, *6 (N.D. Cal. 2012)

19  (denying request for five-month extension of scheduling order deadlines where plaintiff had

20  failed to act diligently in pursuing discovery).  To demonstrate good cause, Plaintiffs must show

21  that: (1) they were diligent in assisting the Court in creating a workable scheduling order; (2) they

22  are unable to comply with the current schedule because of the development of matters which

23  could not have been reasonably foreseen or anticipated when the schedule was set; and (3) they

24

25

26  [6] It does not seem a coincidence that Plaintiffs' motion comes less than two weeks after the
    Notices of Appearance of two new Lieff Cabraser partners, which followed shortly after Interim
27  Lead Counsel, Mr. Saveri, announced he was leaving Lieff Cabraser to start another firm.  That
    development itself came only two weeks after the last CMC, where Plaintiffs did not raise it as a
28  basis to upset the schedule.  These co-counsel issues are not good cause for this motion.

1    were diligent in seeking to amend the scheduling order once it became apparent that they could

2    not comply with it.  *Jackson v. Laureate, Inc.*, 186 F.R.D. 605, 608 (E.D. Cal. 1999).

3           Plaintiffs' cannot make that showing.  Their claimed inability to comply with the Court's

4    scheduling order has nothing to do with developments that could not have been reasonably

5    foreseen, and even if it did, Plaintiffs have not been diligent in seeking to amend the schedule.

6    Plaintiffs have known about the class certification filing deadline — as well as the trial date and

7    all intermediate dates — for seven months, since the Court entered the scheduling order on

8    October 26, 2011.  As recently as the last case management conference on April 18, Plaintiffs did

9    not claim that they would be unable to meet the schedule generally or that the timing of

10   Defendants' data and document productions would prohibit them from filing for class

11   certification on June 28.  Instead, Plaintiffs agreed to a deadline of May 9 for Apple to produce

12   responsive data and to begin its rolling production of custodian documents.  (Apple met that

13   deadline.)  Plaintiffs also raised no objection to the timing of the other Defendants' data and

14   document productions, which were then ongoing.  Plaintiffs knew at the April 18 case

15   management conference that their experts would need to analyze the data prior to filing their class

16   certification motion.[7]   At no time did Plaintiffs suggest that the timing of the productions would

17   require a change in the class certification motion date, much less an extension of four months.

18           ***Plaintiffs Mischaracterize Defendants' Data Productions, Which Are Substantially***
19           ***Complete and Consist of the Data that Plaintiffs Themselves Requested***

20           Plaintiffs' suggestion that the timing of Defendants' data production justifies an extension

21   of time to file the class certification motion is wrong.  All Defendants have completed, or

22   substantially completed, their data productions; have made (or will make very soon) supplemental

23   productions to address any imperfections that are inevitable with data productions of this

24

25   [7] Now is not the time to address the standards for class certification, but Plaintiffs' statement of
     the standard is incorrect.  Plaintiffs must do more than advance a "plausible methodology."  (Mot.
26   at 1.)  Instead, they must "affirmatively demonstrate" and "be prepared to prove that there are *in
     fact* … common questions of law or fact," *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551
27   (2011), and that those common questions predominate over individual ones.  The Court must, in
     turn, perform a "rigorous analysis" to ensure that the class certification requirements have been
28   met.  *Id.*; *see also Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 980-81 (9th Cir. 2011).

magnitude; and have answered, or are working to answer, the voluminous questions that Plaintiffs recently sent to Defendants regarding the data productions.  Plaintiffs' assertion that Defendants are withholding responsive data is simply inaccurate; Defendants are producing exactly what the parties agreed upon.  And Defendants have met all court-ordered deadlines for producing data:

- *Adobe.*  Adobe believes that its production of data is complete. On April 10, 2012, Adobe produced its compensation data.  On May 5, Plaintiffs informed Adobe that certain stock options data appeared to have been omitted, which Adobe produced on May 25.  Adobe has also produced its recruiting and hiring data.  Plaintiffs sent Adobe lengthy questions regarding its data.  Adobe answered all the questions and met telephonically with plaintiffs' consulting experts about the data.

- *Apple.*  Apple's data production has been complete since May 9.  Apple produced its personnel data, including compensation data, on May 3.  Apple produced data regarding employee stock options, along with recruiting data, from its third party databases on May 9.  Plaintiffs have asked a number of specific questions regarding certain data fields and values in its productions, and Apple is working diligently to respond to Plaintiffs' questions.  Plaintiffs have raised the question of overtime compensation data for the first time in Plaintiffs' Position above.

- *Google.*  Google began producing employee and recruiting data on April 9, before the last case management conference.  Google has continued to produce data, including (1) compensation data, (2) additional information about stock options and bonuses, and (3) details of the results of applications for employment at Google, on May 9 and May 22.  Google has also responded to plaintiffs' questions regarding its data productions and will continue to do so.  Google does not collect the information plaintiffs have requested regarding individual cold calls, but Google has retrieved information from a now-retired database that includes the collection of information reasonably accessible to Google about potential applicants to Google and Google's contacts or lack of contacts with them.  Google produced information from this now-retired database to plaintiffs on May 30.  Google has contacted plaintiffs' counsel regarding their notices of 30(b)(6) deposition and offered to confer about those notices on June 5.  Google has produced the compensation data (including stock option data) that it has agreed to produce pursuant to the previous meet and confers and its discovery responses.

- *Intuit.*  Intuit believes that its production of data is complete.  Intuit began production of its compensation and recruiting data on April 17, 2012.  On May 18, plaintiffs requested certain employee level personnel and compensation data for the years 2010 and 2011 that was inadvertently omitted from Intuit's previous productions.  Intuit produced this additional data on May 21, 2012.  On June 1, Intuit produced the remaining recruiting data that includes candidate information from approximately 2006 to the present.  This data was not produced earlier because it had to be restored by the third-party that maintains the data and some data corruption issues arose in the restoration process.  Plaintiffs have sent several sets of questions regarding Inuit's data.  Intuit has answered many of the questions and is diligently working to respond to the remaining ones.

- *Intel.*  Intel's data production is complete and, with very minor exceptions, has been complete since May 9, 2012.  Most of it was produced in April.  Intel produced all of its responsive recruiting data and nearly all of its responsive personnel data, including

compensation data, on April 16.  Intel produced additional compensation data on April 26.  On May 9, Intel produced one remaining data field, thus completing its production of compensation data.  On May 22, Intel produced data for one field for one year that was inadvertently excluded from its April 16 production.  On May 24, Intel produced replacement data for seven data records out of the hundreds of thousands it had produced in April.  On May 7, Plaintiffs asked a number of questions regarding the data fields and values contained in Intel's data productions.  Intel provided a partial response on May 10, and completed its response on May 23.  Intel has told Plaintiffs that it does not maintain data for the fields that Plaintiffs identified as "missing."  On May 31, Plaintiffs asked additional questions regarding Intel's data production and requested additional data not previously requested, let alone part of the parties' agreement regarding the data to be produced.  Intel is working diligently to review the list and respond to Plaintiffs' questions.  Intel will make one or more witnesses available for deposition or interview by June 15.

- **Lucasfilm.**  Lucasfilm's data production is complete.  Lucasfilm produced responsive data from its active HR database on April 16, 2012, and responsive data from its active recruiting database on May 9, 2012.  On May 21, 2012, Lucasfilm made a further production including compensation data from 2001-2012, as well as HR data from 2001-2005, which had been extracted from an inactive database.  Although Lucasfilm believed this production also included responsive recruiting data from 2001-2008, Lucasfilm discovered on May 30, 2012, that the recruiting data had been unintentionally omitted from the production volume due to a technical error.  On May 31, 2012, Lucasfilm produced the remaining recruiting data from 2001-2008, completing its data production.  On May 7, 2012, Plaintiffs sent Lucasfilm a series of questions about the data that had been thus far produced.  Lucasfilm responded to Plaintiffs' letter on May 12, 2012, attaching an 8-page response to Plaintiffs' specific questions.  On May 17, 2012, Plaintiffs sent a follow-up letter stating that they had additional, unspecified questions about Lucasfilm's data production.  Although Lucasfilm has repeatedly indicated its willingness to answer any additional questions about the data, Plaintiffs have posed none.  Plaintiffs noticed a 30(b)(6) deposition regarding the data productions, and Lucasfilm has begun meeting and conferring with Plaintiffs to set a date for the deposition.

- **Pixar.**  Pixar completed its production of recruiting and compensation data from its human resources databases on April 18, 2012, with the exception of a few inadvertent gaps.  Plaintiffs wrote to Pixar with questions about the data on May 8.  Pixar responded with substantive answers on May 17, and on May 23, Pixar produced data to fill the gaps that had been identified.  On May 30, Plaintiffs requested additional data from Pixar that was not included in the categories of data the parties agreed should be produced.  The parties are continuing to meet and confer about these requests.

Nor can Plaintiffs claim surprise as to the amount or type of data Defendants have produced.  Although the Court has urged Plaintiffs to narrow their class definition, Plaintiffs have refused to do so.  Instead, they have insisted on receiving many fields of compensation-related data for all of the tens of thousands of Defendants' salaried employees nationwide, not just over a their purported five-year class period, but for an additional four years before and two years after that period.  All of this was hashed out over repeated meet-and-confer sessions, and by the time of

- 11 -

1   the case management conference on April 18, the parties had reached agreement on the data to be

2   produced.  Defendants have produced "20 million" data observations because that is what

3   Plaintiffs demanded.  In short, Plaintiffs knew exactly what they would be getting, and they

4   cannot point to any unforeseeable circumstances that would justify the extension they now seek.

5       ***Defendants' Document Productions Are Proceeding as the Parties Have Agreed and the
        Court Ordered, and They Provide No Basis for Plaintiffs' Requested Extension.***

6

7       Plaintiffs' claim that Defendants' non-data document productions somehow justify a four-

8   month extension is also misguided.  Defendants have begun producing documents on the two

9   tracks the parties agreed to, and on the schedule the Court ordered.  Plaintiffs have never claimed

10  otherwise, to this Court or Judge Lloyd.

11      On April 9, 2012, Defendants began their rolling production of documents on the "first

12  track," which depends upon custodian interviews, among other efforts, to identify responsive,

13  high-level documents without the need to run search terms against electronically stored

14  information.  All Defendants have also begun their rolling production of documents on the

15  "second track," which involves using search terms to search electronically stored information

16  from specific custodians.  At Plaintiffs' request, Defendants have agreed both to supplement their

17  Department of Justice document collections by adding custodians and extending the time period

18  and to search the DOJ collections with additional terms.  Defendants began their rolling

19  production of documents pursuant to this second track on or before May 9, 2012.   Both

20  production tracks are ongoing, and Defendants are working hard to meet, and anticipate meeting,

21  the Court's June 15 deadline.

22      That these productions are in progress is unsurprising given that the Court's deadline for

23  substantial completion is still two weeks away.  This deadline was set in the Court's October

24  2011 scheduling order, and yet Plaintiffs waited until their motion for an extension to claim that it

25  "will be impossible to review these documents in time for a class certification motion due less

26  than two weeks later," and that it "will also be impossible to take depositions about these

27  documents in time for the motion."  (Mot. at 4.)  These concerns were entirely foreseeable, and

28

- 12 -

1    Plaintiffs offer no excuse for failing to raise them before now.  In fact, Plaintiffs' motion is the

2    first time they have mentioned wanting to take depositions before moving for class certification,

3    notwithstanding that they received Defendants' DOJ productions six months ago, and additional

4    productions since.  Even now, the only depositions they have sought are the Rule 30(b)(6)

5    depositions relating to Defendants' data productions, which they hurriedly noticed on May 24

6    after it became clear that Defendants would not agree to extend the class certification schedule.

7    Plaintiffs' suggestion that Defendants' document productions are holding up preparation of their

8    class certification motion is nothing more than an excuse for their own lack of diligence.

9                    ***Plaintiffs' Proposed Extension is Unwarranted and Unfair.***

10          Plaintiffs' attempt to blame Defendants for their own lack of diligence is unsupported.

11   Defendants have expended enormous time and resources to meet the deadlines that the Court set,

12   and to produce the voluminous data and numerous documents Plaintiffs have demanded.  A

13   month ago, Plaintiffs were satisfied with receiving the data and documents pursuant to the Court's

14   schedule, and filing their class certification motion on June 28.  There is no legitimate basis for

15   their request now for an additional four months to do the same job.

16          In particular, it would be fundamentally unfair to Defendants to grant a four-month

17   extension (or any extension for that matter) and leave the remainder of the schedule in place.  For

18   example, Plaintiffs' proposal to compress the schedule by collapsing the class and merits phases

19   would prejudice Defendants severely, as the case depends fundamentally on how Plaintiffs define

20   their putative class and how the Court decides class certification.  Under Plaintiffs' alternative

21   proposed schedule, Defendants would not know what class, if any, is certified before having to

22   prepare and file expert reports and dispositive motions.  There is no good cause for Plaintiffs'

23   untimely and prejudicial request.

24

25

26

27

28

- 13 -

1040826.2

1    **III.    Discovery**

2         **A.    Discovery Regarding Plaintiffs**

3              **1.    Plaintiffs' Summary**

4         Following the previous case management conference, the parties met and conferred

5    regarding the scope of Plaintiffs' responses to Defendants' document requests and interrogatories.

6    The parties reached agreement on the scope of those responses on May 8, 2012.  The agreement

7    includes discovery regarding Plaintiffs' employment history from college graduation forward, and

8    for any employment before college graduation that relate to Plaintiffs' qualification in the high-

9    tech industry.  Plaintiffs are accordingly collecting documents and information throughout this

10   period, and are in the process of preparing them for production.  These documents include

11   personal emails, ESI that Defendants have uniformly refused to collect and produce to Plaintiffs,

12   on the justification that no custodian uses personal email for any responsive purpose.[8]  Plaintiffs

13   are also preparing to supplement their interrogatory responses pursuant to the same

14   understanding.

15        Three days after reaching agreement with Plaintiffs regarding the scope of Plaintiffs'

16   responses (in which Plaintiffs agreed to provide nearly everything Defendants requested),

17   Defendants informed Plaintiffs' counsel that Defendants were serving 14 subpoenas seeking

18   largely duplicative—and irrelevant—information from 14 of Plaintiffs' former employers.

19   Plaintiffs learned of this for the first time at 4:15pm on Friday, May 11 via an email from

20   Defendants' counsel.  At no time during any of the parties' numerous in-person and telephonic

21   conferences, pursuant to Rule 26 or otherwise, had Defendants ever raised the issue of subpoenas

22   to Plaintiffs' former or current employers.  Later the following week, Plaintiffs learned that

23   Defendants began serving their subpoenas the same day in which they emailed notification to

24   Plaintiffs' counsel.  This notice was insufficient under Rule 45 and departed substantially from

25   Plaintiffs' practice of providing Defendants with a week's notice prior to service of subpoenas.

26   _____

27   [8] No Defendant has said that it has collected a single personal email from any custodian, even the
     custodians Defendants assert are "key" to this action, such as Eric Schmidt.  Plaintiffs will not be
     able to test the representations of Defendants' counsel in this regard until Plaintiffs' counsel
28   depose the custodians.

1    Plaintiffs' counsel thereafter met and conferred with Defendants' counsel in an attempt to

2    eliminate or minimize the burden on the third parties and to satisfy Defendants' discovery

3    requests without the burden to third parties and without the harassment and harm that would

4    result from serving subpoenas on Plaintiffs' employers.  Defendants' counsel refused to withdraw

5    the subpoenas, and informed Plaintiffs' counsel that Defendants intended to serve additional

6    subpoenas on all of Plaintiffs' former <u>and current</u> employers, regardless of how far removed from

7    employment with a Defendant.

8         The third party subpoenas call for material that is overbroad, duplicative, unnecessary,

9    improper, and harassing.  The subpoenas are the subject of the pending Discovery Dispute Joint

10   Report #2.  (Dkt. No. 141.)

11              **2.    <u>Defendants' Summary</u>**

12        On February 17, 2012, Defendants served discovery on the five named plaintiffs seeking

13   information relating to their employment history, compensation, and related matters.  In response,

14   Plaintiffs produced documents consisting of the public filings in *United States v. Adobe Systems,*

15   *Inc.* and *United States v. Lucasfilm Ltd.* and four articles printed from public websites.  To this

16   date, Plaintiffs have produced no documents relating to their employment history or

17   compensation.

18        At the April 18, 2012 Case Management Conference, the Court ordered Plaintiffs to

19   produce the information that Defendants had sought.  As the Court put it, "Plaintiffs have to be

20   open books on their work history and whatnot." (Tr. 24:13-14.)  The Court specifically ordered

21   Plaintiffs to produce all resumes and performance reviews in their possession.  (Tr. 26: 6-8 ("I

22   don't see any good basis to withhold resumes of these plaintiffs.  That's the order.  Don't waste

23   Judge Lloyd's time."); Tr. 26:23-24 (same regarding performance reviews).)  The parties met and

24   conferred following the April 18 CMC, and plaintiffs agreed to supplement their discovery

25   responses and to aim to provide those responses by May 17, 2012.  Plaintiffs did not produce

26   documents or further discovery responses by May 17, 2012.  On May 22, 2012, plaintiffs

27   indicated that they intended to produce documents by June 15, 2012 and supplemental

28

                                    - 15 -

1  interrogatory responses before that.  To date, Plaintiffs have produced none of the documents that

2  the Court ordered to be produced, nor any supplemental discovery responses.

3      Defendants have served subpoenas on certain current and former employers of the named

4  Plaintiffs, seeking documents related to the named Plaintiffs' hiring, qualifications, employment

5  history, and compensation.  These subpoenas seek information that is highly relevant to Plaintiffs'

6  claims of under-compensation and their ability to represent the putative class, that these third

7  parties are very likely to have documents not in the possession of the Plaintiffs, and that there is

8  nothing harassing about serving current and former employers of named plaintiffs in a class

9  action in which the named plaintiffs allege they were undercompensated in the workplace.

10     Plaintiffs' proposal in the meet-and-confer sessions belies any real concerns about

11 privacy.  In those sessions, Plaintiffs suggested that Defendants withdraw the subpoenas so that

12 Plaintiffs could ask the subpoena recipients to provide the same documents to Plaintiffs

13 voluntarily.  Plaintiffs would then produce the documents to Defendants.  Not only is this

14 proposal unworkable, but it shows that Plaintiffs have no actual privacy concerns.  Under their

15 proposal, Defendants would get the same documents that it has sought by subpoena.  They simply

16 want to insert themselves as a filter or bottleneck between Defendants and Plaintiffs' employers.

17     Plaintiffs are also incorrect that the notice was insufficient under Rule 45.  Defendants'

18 notice to Plaintiffs' counsel complied with the rules for serving subpoenas.  In any event,

19 Plaintiffs have now been on notice of the subpoenas for several weeks.

20     The parties met and conferred and reached an impasse, and subsequently filed a Discovery

21 Dispute Joint Report #2 pursuant to Judge Lloyd's Standing Order on May 29, 2012.  (Dkt. 141.)

22     **B.**    **Discovery of Defendants**

23        **1.**    **Plaintiffs' Summary**

24 Plaintiffs respectfully refer the Court to the summary of discovery above in Part II.A.1.

25        **2.**    **Defendants' Summary**

26     In November 2011, all Defendants produced to Plaintiffs the documents they had

27 produced to the Department of Justice, as well as correspondence with the DOJ and drafts of the

28

JOINT CASE MGMNT CONFERENCE STATEMENT
Master Docket No. 11-CV-2509-LHK

1040826.2

1   civil consent decrees that were eventually entered.  These productions totaled approximately

2   100,000 pages.  At the same time, Defendants responded to seven requests for production of

3   documents (which related to the DOJ investigation).  Aside from the DOJ productions, the Court

4   ordered a stay on discovery until January 26, 2012.

5        After the Court lifted the stay on discovery on January 26, 2012, Defendants responded to

6   the remaining forty-seven document requests that Plaintiffs had served prior to the stay, as well as

7   five additional requests.  Defendants also responded to interrogatories that Plaintiffs served prior

8   to the stay on discovery.

9        Data Productions.  Following meet and confer sessions with Plaintiffs regarding the scope

10  of their data requests, Defendants agreed to produce certain categories of responsive data created

11  between January 1, 2001 and February 1, 2012, relating to employee compensation and

12  recruiting.  At the Case Management Conference on April 18, the Court ordered Apple to produce

13  its data by May 9.  Apple did so.  The other Defendants have produced this data on a rolling basis,

14  and those productions are entirely or substantially complete.  Upon receipt of the data

15  productions, Plaintiffs conducted an initial analysis to identify any gaps and questions.

16  Defendants have addressed, or are in the process of addressing, those issues.  On May 23, 2012,

17  Plaintiffs sent notices for 30(b)(6) depositions of each Defendant related to their data production.

18  The parties are meeting and conferring with respect to those notices.

19       Non-Data Productions.  Consistent with an agreement with Plaintiffs, Defendants have

20  produced and will continue to produce non-data documents pursuant to two tracks.  The first track

21  depends upon custodian interviews, among other efforts, to identify responsive, high-level

22  documents without the need to run search terms against electronically stored information.

23  Defendants began their rolling production of documents pursuant to the first track on April 9,

24  2012, and these productions are ongoing.

25       The second track of document production involves ESI collections from custodians using

26  search terms.  The parties agreed Defendants would supplement their DOJ collections, and would

27  also search the DOJ collections with additional terms.  The supplemental collections consist of

28

- 17 -

collections with a start date of January 1, 2004 and end dates of December 31, 2011 for "key"

custodians and December 31, 2010 for other custodians.  Defendants have begun their rolling

production of documents pursuant to this second track, and these productions are ongoing.

Defendants expect to meet the Court's June 15, 2012 deadline for substantial completion of these

document productions.

**IV.     Status of Interim Lead Counsel**

Plaintiffs' counsel anticipate filing an unopposed administrative motion and proposed

order to amend Pretrial Order No. 1 to appoint jointly Lieff, Cabraser, Heimann & Bernstein, LLP

and Saveri Law Firm as Plaintiffs' interim co-lead counsel.


Dated:  June 1, 2012            LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP


                                By:         */s/ Kelly M. Dermody*
                                            Kelly M. Dermody

                                Richard M. Heimann (State Bar No. 63607)
                                Kelly M. Dermody (State Bar No. 171716)
                                Eric B. Fastiff (State Bar No. 182260)
                                Brendan Glackin (State Bar No. 199643)
                                Dean Harvey (State Bar No. 250298)
                                Anne B. Shaver (State Bar No. 255928)
                                275 Battery Street, 29th Floor
                                San Francisco, California  94111-3339
                                Telephone:  415.956.1000
                                Facsimile:  415.956.1008

                                *Proposed Interim Co-Lead Counsel for Plaintiff Class*

Dated:  June 1, 2012            SAVERI LAW FIRM


                                By:         */s/ Joseph R. Saveri*
                                            Joseph R. Saveri

                                Joseph R. Saveri (State Bar No. 130064)

                                255 California, Suite 450
                                San Francisco, California 94111
                                Telephone: 415.500.6800
                                Facsimile: 415.500.6803

                                *Proposed Interim Co-Lead Counsel for Plaintiff Class*

- 18 -                JOINT CASE MGMNT CONFERENCE STATEMENT
                      Master Docket No. 11-CV-2509-LHK

1040826.2

1    Dated:  June 1, 2012              O'MELVENY & MYERS LLP

2
                                        By:        /s/ Michael F. Tubach
3                                                  Michael F. Tubach

4                                       George Riley
                                        Michael F. Tubach
5                                       Lisa Chen
                                        Christina J. Brown
6                                       Two Embarcadero Center, 28th Floor
                                        San Francisco, CA  94111
7                                       Telephone:  (415) 984-8700
                                        Facsimile:   (415) 984-8701
8
                                        *Attorneys for Defendant APPLE INC.*
9
10   Dated:  June 1, 2012              KEKER & VAN NEST LLP

11
                                        By:        /s/ Daniel Purcell
12                                                 Daniel Purcell

13                                      John W. Keker
                                        Daniel Purcell
14                                      Eugene M. Page
                                        Paula L. Blizzard
15                                      710 Sansome Street
                                        San Francisco, CA  94111
16                                      Telephone:  (415) 381-5400
                                        Facsimile:   (415) 397-7188
17
                                        *Attorneys for Defendant LUCASFILM LTD.*
18
     Dated:  June 1, 2012              JONES DAY
19
                                        By:        /s/ David C. Kiernan
20                                                 David C. Kiernan
21                                      Robert A. Mittelstaedt
                                        Craig A. Waldman
22                                      David C. Kiernan
                                        Catherine T. Broderick
23                                      Craig E. Stewart
                                        555 California Street, 26th Floor
24                                      San Francisco, CA  94104
                                        Telephone:  (415) 626-3939
25                                      Facsimile:   (415) 875-5700

26                                      *Attorneys for Defendant ADOBE SYSTEMS, INC.*

27

28
                                        - 19 -          JOINT CASE MGMNT CONFERENCE STATEMENT
                                                            Master Docket No. 11-CV-2509-LHK

     1040826.2

1    Dated:  June 1, 2012          JONES DAY

2
                                   By:        /s/ Robert A. Mittelstaedt
3                                             Robert A. Mittelstaedt

4                                  Robert A. Mittelstaedt
                                   Craig A. Waldman
5                                  David C. Kiernan
                                   Catherine T. Broderick
6                                  Craig E. Stewart
                                   555 California Street, 26th Floor
7                                  San Francisco, CA  94104
                                   Telephone:  (415) 626-3939
8                                  Facsimile:   (415) 875-5700

9                                  *Attorneys for Defendant INTUIT INC.*

10   Dated:  June 1, 2012          MAYER BROWN LLP

11
                                   By:        /s/ Lee H. Rubin
12                                            Lee H. Rubin

13                                 Lee H. Rubin
                                   Edward D. Johnson
14                                 Donald M. Falk
                                   Two Palo Alto Square
15                                 3000 El Camino Real, Suite 300
                                   Palo Alto, CA  94306-2112
16                                 Telephone:  (650) 331-2057
                                   Facsimile:   (650) 331-4557
17
                                   *Attorneys for Defendant GOOGLE INC.*
18

19   Dated:  June 1, 2012          BINGHAM McCUTCHEN LLP

20
                                   By:        /s/ Frank M. Hinman
21                                            Frank M. Hinman

22                                 Donn P. Pickett
                                   Frank M. Hinman
23                                 Three Embarcadero Center
                                   San Francisco, CA  94111
24                                 Telephone:  (415) 393-2000
                                   Facsimile:   (415) 383-2286
25
                                   *Attorneys for Defendant INTEL CORPORATION*
26

27

28
                                        - 20 -        JOINT CASE MGMNT CONFERENCE STATEMENT
                                                         Master Docket No. 11-CV-2509-LHK

1040826.2

1    Dated:  June 1, 2012              COVINGTON & BURLING LLP

2
                                       By:      /s/ Emily Johnson Henn
3                                                Emily Johnson Henn

4                                      Robert T. Haslam, III
                                       Emily Johnson Henn
5                                      333 Twin Dolphin Drive, Suite 700
                                       Redwood City, CA  94065
6                                      Telephone:  (650) 632-4700

7                                      *Attorneys for Defendant PIXAR*

8
     **ATTESTATION**:  Pursuant to General Order 45, Part X-B, the filer attests that concurrence in
9
     the filing of this document has been obtained from all signatories.
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28
                                          - 21 -        JOINT CASE MGMNT CONFERENCE STATEMENT
                                                        Master Docket No. 11-CV-2509-LHK

1040826.2