1  Richard M. Heimann (State Bar No. 63607)
   Kelly M. Dermody (State Bar No. 171716)
2  Eric B. Fastiff (State Bar No. 182260)
   Brendan Glackin (State Bar No. 199643)
3  Dean Harvey (State Bar No. 250298)
   Anne B. Shaver (State Bar No. 255928)
4  LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
   275 Battery Street, 29th Floor
5  San Francisco, California  94111-3339
   Telephone:  415.956.1000
6  Facsimile:  415.956.1008

7  Joseph R. Saveri (State Bar No. 130064)
   Lisa J. Leebove (State Bar No. 186705)
8  JOSEPH SAVERI LAW FIRM
   255 California, Suite 450
9  San Francisco, California 94111
   Telephone: 415.500.6800
10 Facsimile: 415.500.6803

11 *Interim Co-Lead Counsel for Plaintiffs and the Plaintiff Class*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| IN RE: HIGH-TECH EMPLOYEE ANTITRUST LITIGATION<br><br>THIS DOCUMENT RELATES TO:<br><br>ALL ACTIONS | Master Docket No. 11-CV-2509-LHK<br><br>**PLAINTIFFS' SUPPLEMENTAL CASE MANAGEMENT CONFERENCE STATEMENT**<br><br>Date:      September 12, 2012<br>Time:      2:00 p.m.<br>Courtroom: 8, 4th Floor<br>Judge:     The Honorable Lucy H. Koh |

Plaintiffs hereby supplement the September 5, 2012 Case Management Conference Statement to apprise the Court of further case developments that occurred after the parties' September 5, 2012 filing (Dkt. No. 179). As indicated, Plaintiffs believed that Defendants' document production was "substantially complete." (*Id.* at 2.) Plaintiffs have since learned that Defendants' document productions omitted material evidence directly relevant to class certification, including evidence of the common impact of Defendants' unlawful agreements on the compensation of their employees; that certain Defendants intend to produce numerous new documents this week; and that a number of documents withheld as privileged may have been withheld without a proper basis.

### I.     Defendants' Document Production

Defendants have continued to produce documents and data to Plaintiffs on a daily basis, requiring Plaintiffs and their experts to react to new information as it arrives, less than a week before Plaintiffs' September 17, 2012 deadline for class certification. This is inconsistent with the Court's prior orders which contemplate that Defendants would produce relevant information substantially in advance of the due date of Plaintiffs' motion for class certification.

In addition, Plaintiffs have become aware that at least some Defendants have failed to produce highly relevant documents. For example, on September 6, 2012, Plaintiffs' counsel wrote counsel for Google regarding Google's failure to produce documents concerning Google's decision to raise the base compensation of all of its employees by 10%, along with other compensation changes, which Google apparently referred to as the "Big Bang" proposal. These documents are directly relevant to Plaintiffs' motion for class certification because the "Big Bang" apparently occurred just after Google entered into a stipulated final judgment with the United States Department of Justice ("DOJ") that prohibited Google from entering into the type of agreements at issue in this case. They are also relevant because they show how competitive recruiting has a common impact on all employees of the company being recruited.

Significantly, Plaintiffs did not become aware of these documents through document production or other discovery from Google. Instead, Plaintiffs learned of these documents

because they were apparently provided to, and thus produced by, other Defendants in this case (namely, Intuit and Intel). Further, Intuit and Intel only produced the documents after Plaintiffs challenged their privilege logs listing these documents (among others). Many of the documents were produced from the files of Intuit Chairman Bill Campbell and Intel CEO Paul Otellini. As Plaintiffs will explain in their forthcoming motion for class certification, these individuals participated in the development, implementation, and/or enforcement of the express unlawful agreements at issue in this case. The Google documents produced by Intuit and Intel describe how the "Big Bang" compensation increase was company-wide and systematic, and arose largely in response to competitive recruiting by other companies, following the stipulated final judgments with the DOJ that forbade the agreements in the future. The documents describe Google's company-wide counteroffer strategy, including how the way to implement the strategy was to make systematic compensation changes, rather than individual negotiations with employees who receive competitive offers. The documents include memoranda to Google's high-level "Leadership Development and Compensation Committee."[1]

To date, Plaintiffs have still not received these documents from Google[2], nor have they appeared on Google's privilege logs.

On September 7, 2012, however, Google belatedly produced approximately one thousand pages of new documents from Google from the files of two new custodians. (Google had never informed Plaintiffs that these two custodians had documents responsive to Plaintiffs' document requests in response to Plaintiffs' counsel's specific requests for the names of all potential custodians over five months ago, when the parameters of Google's production was discussed.) Plaintiffs reviewed these new documents over the weekend of September 7-9, 2012, and discovered they contained information directly relevant to Plaintiffs' motion for class certification. These documents include emails sent shortly after the initiation of the DOJ

---

[1] The members of Google's Leadership Development and Compensation Committee are appointed by Google's Board of Directors and include at least two "independent" members of the Board. *See* http://investor.google.com/corporate/board-committees-leadership.html.

[2] Plaintiffs have not submitted these Intel and Intuit documents with this Supplemental Statement, but will provide them to the Court should the Court so request at the Case Management Conference.

investigation in which Google's recruiting organization identified and pursued thousands of strong candidates who were employees at other Defendants that were previously off-limits. The documents reference spreadsheets that identify the thousands of strong candidates. Despite Plaintiffs' request that they produce the spreadsheets, Google has not done so. None of these new documents appeared on Google's privilege logs.

On September 10, 2012, Plaintiffs' counsel met and conferred with Google's counsel to discuss Google's failure to produce responsive documents. Plaintiffs' counsel identified facts suggesting a failure to conduct a reasonably diligent search for responsive documents. Among other things, the Google "Big Bang" documents produced by other Defendants discuss Google's systemic compensation practices thereby making them highly relevant. These documents also include search terms the parties agreed Google would apply, such as "do not call;" search terms Google suggested to Plaintiffs it would apply, such as "compete*" within five words of "talent;" and search terms suggested by Plaintiffs to Defendants, such as "facebook*" within 10 words of "competition." The existence of these terms in these documents means that a computerized search, if done properly, would have identified these documents as potentially responsive months ago. Google's production volume also suggests there may be other documents that have not been produced or logged as privileged. Google's entire Post-DOJ production is less than 3,000 documents.[3] This is substantially less than any other Defendant, including Defendants that are much smaller than Google (such as Lucasfilm, which produced more than twenty times as many documents). Even Plaintiffs' own production of over 8,000 documents from five individual former employees dwarfs Google's entire Post-DOJ production.

Google's counsel informed Plaintiffs yesterday that Google would provide a supplemental document production today (September 11, 2012), and would run additional searches "if

---

[3] During the meet and confer, Google's counsel stated that Google's production to the DOJ was larger than any Defendant, presumably justifying a smaller production of Post-DOJ documents. However, Google's production to the DOJ of less than 11,000 documents was limited to documents created in 2009 and earlier, and limited to searches that focused on Google's misconduct, rather than the common *impact* of that misconduct. The purpose of Defendants' Post-DOJ productions is to augment the DOJ production and fill in these gaps in evidence collected.

Plaintiffs provide Google with additional search terms." Because it appears the search terms previously discussed were not applied properly, or because documents identified by the search were not produced, Plaintiffs expressed concern with this approach. Google's counsel also said, for the first time, that Google did not produce Board meeting agendas and other materials, unless the documents "reflected a final decision" on the matter at issue. In addition, Google's counsel suggested that Google did not produce responsive documents if, in Google's counsel's view, the documents were insufficiently "high level." Plaintiffs asked Google to produce this week all "Big Bang" and other relevant documents, such as those regarding the initiative to recruit previously off-limits candidates or that described relevant topics in Board materials even if not a "final decision," and to review its prior document selection practices to ensure that it has not withheld additional responsive documents. Google has not committed to doing so.

## II.     Defendants' Data Production

Plaintiffs continue to receive additional data from other Defendants relevant to class certification. Yesterday, September 10, 2012, Intuit produced two years' worth of supplemental compensation data (2010-2012), data that had been previously produced in only yearly "snapshots." Moreover, contrary to Apple's representations in the September 5, 2012 Case Management Statement, Apple's recent data productions are clearly responsive to prior discovery requests. In particular, Apple's September 5, 2012 production of "sourcing" data includes candidate lead information, current employer, date the candidates were logged into the system, the steps Apple took to contact those candidates, and a detailed "notes" field that includes entries such as "Cold called but learned that he left Oracle in October 09." This is exactly the type of data Apple agreed to produce months earlier. Unfortunately, Plaintiffs were unaware that Apple possessed, but had failed to produce, this data until Plaintiffs' 30(b)(6) deposition of an Apple data witness, which Apple initially resisted, on July 12, 2012. At this deposition, Apple's witness identified the existence of the data but claimed not to have sufficient knowledge to testify about

it. Apple has not yet completed production from this database and to date has failed to schedule a 30(b)(6) witness knowledgeable about this data.[4]

### III. Defendants' Privilege Logs

On July 16 and 17, 2012, Defendants produced privilege logs to Plaintiffs. Plaintiffs have challenged certain entries on Defendants' privilege logs and continue to meet and confer regarding them. Plaintiffs have objected to the withholding of documents not prepared in anticipation of litigation, documents in which no author or recipient is an attorney or for which the identity of the author or recipient is unknown, draft corporate policies, documents unrelated to legal advice, and redactions made on the basis of "responsiveness." Unfortunately, even with the class certification deadline fast approaching, little progress has been made. Apple has not yet responded to written objections from Plaintiffs, which Plaintiffs served on August 8. Google flatly refuses to amend or supplement its logs, making it impossible for Plaintiffs to determine if many of the documents were properly withheld. Plaintiffs continue to meet and confer with the other Defendants regarding similar issues, including Intuit's refusal on privilege grounds to produce communications between Intuit Chairman Bill Campbell and Apple, and Intel's redactions to a document that is not logged and describes a non-solicit agreement between Intel and another Defendant. Because of Plaintiffs' recent discovery that Defendants Intel and Intuit were improperly logging as privileged communications in their possession about Google's "Big Bang" project, and because of other wholesale inadequacies in privilege log entries across many Defendants, Plaintiffs anticipate needing Court intervention shortly to make progress in this area.

---

[4] Despite repeated requests, Apple has not yet provided a knowledgeable 30(b)(6) witness regarding this data. Plaintiffs 30(b)(6) deposition notice concerning this, and other, forms of data Apple maintains was served nearly four months ago, on May 23, 2012. The data Apple produced last week is responsive to Plaintiffs' document requests and clearly falls within the categories of data the parties agreed would be produced months earlier.

Dated: September 11, 2012

LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP

By:     */s/ Kelly M. Dermody*
        Kelly M. Dermody

Richard M. Heimann (State Bar No. 63607)
Kelly M. Dermody (State Bar No. 171716)
Eric B. Fastiff (State Bar No. 182260)
Brendan Glackin (State Bar No. 199643)
Dean Harvey (State Bar No. 250298)
Anne B. Shaver (State Bar No. 255928)
275 Battery Street, 29th Floor
San Francisco, California 94111-3339
Telephone: 415.956.1000
Facsimile: 415.956.1008

*Proposed Interim Co-Lead Counsel for Plaintiff Class*

Dated: September 11, 2012

JOSEPH SAVERI LAW FIRM

By:     */s/ Joseph R. Saveri*
        Joseph R. Saveri

Joseph R. Saveri (State Bar No. 130064)

255 California, Suite 450
San Francisco, California 94111
Telephone: 415.500.6800
Facsimile: 415.500.6803

*Proposed Interim Co-Lead Counsel for Plaintiff Class*

**ATTESTATION**: Pursuant to General Order 45, Part X-B, the filer attests that concurrence in the filing of this document has been obtained from all signatories.