MAYER BROWN LLP
LEE H. RUBIN (SBN 141331)
lrubin@mayerbrown.com
EDWARD D. JOHNSON (SBN 189475)
wjohnson@mayerbrown.com
DONALD M. FALK (SBN 150256)
dfalk@mayerbrown.com
Two Palo Alto Square, Suite 300
3000 El Camino Real
Palo Alto, CA 94306-2112
Telephone:    (650) 331-2000
Facsimile:    (650) 331-2061

*Attorneys for Defendant*
*Google Inc.*

[Additional counsel listed on signature page]

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| IN RE: HIGH-TECH EMPLOYEE ANTITRUST LITIGATION<br><br>THIS DOCUMENT RELATES TO:<br><br>ALL ACTIONS | Master Docket No. 11-CV-2509-LHK<br><br>**DEFENDANTS' RESPONSE TO PLAINTIFFS' SUPPLEMENTAL CASE MANAGEMENT CONFERENCE STATEMENT**<br><br><br>Date:          September 12, 2012<br>Time:          2:00 p.m.<br>Courtroom:  8, 4th Floor<br>Judge:         The Honorable Lucy H. Koh |

1   Plaintiffs' *ex parte* submission, filed the night before the CMC, raises a series of
2   discovery issues (related to a number of defendants) Plaintiffs chose not to raise in their joint
3   submission.  As this Court has noted, a CMC statement is not the proper vehicle to brief these
4   issues, and a last minute *ex parte* "supplement" to a joint filing is particularly inappropriate.
5   Moreover, all discovery matters have been referred to Magistrate Judge Grewal, and (as noted
6   below) the parties are in the midst of resolving any remaining discovery issues through the meet
7   and confer process.  Although Plaintiffs' filing is obviously improper, Defendants identify
8   several fundamental disagreements with Plaintiffs' characterizations below:

9   **I.    Defendants' Document Productions**

10   Plaintiffs' suggestion that Google has not conducted a "reasonably diligent search" is
11   simply wrong.

12   When Google undertook its efforts to identify responsive documents, it used a broad
13   array of search terms (disclosed to the Plaintiffs) tailored to the claims in the case.  Google
14   reviewed potentially responsive material, applying the limitations *agreed to* by the parties after
15   lengthy negotiations over the scope of Plaintiffs' document requests.  The core agreement arising
16   out of those negotiations, which was incorporated into Google's discovery responses, was that
17   Plaintiffs' broad requests seeking an array of documents related to compensation and recruiting
18   would be limited to "high level analysis, studies or summaries."  This core agreement was based
19   on both parties' recognition that the document requests were substantially overbroad (an
20   observation made by this Court during the early stages of the case) and that, aside from
21   documents related to the alleged agreements, the documents relevant to plaintiffs' claims were
22   most likely to be those that reflected the "high-level" compensation and recruiting practices.
23   Google collected this information by tracking down these materials in various repositories
24   throughout the company and by identifying emails containing such "high-level" summaries or
25   analyses.  In all, Google has produced thousands of pages of such high-level documents.

26   Consistent with this limitation,  in response to Plaintiffs' request for "[a]ll agendas,
27   minutes, notes, or memoranda of any meeting of the Board of Directors or any committee
28   therefore relating to how you determine your employees' compensation," Google agreed to

produce "responsive, non-privileged portions of documents in its possession, custody, or control sufficient to show at a high-level company policies regarding the determination of employee compensation."  Google has produced these documents also.

Thus, Plaintiffs have been aware of Google's (and co-defendants') responses and objections since they were served on March 30, 2012 and have raised no concerns about them. Plaintiffs knew that, like virtually every document production, Google would be utilizing search terms to identify potentially responsive documents and then conducting a further review to determine the universe of nonprivileged, responsive documents consistent with the agreed limitations.   Google in fact produced what was contemplated by the parties' agreement. Specifically, it produced a Board level summary of the very October 2010 compensation increase about which Plaintiffs claim Google produced no documents (the so-called "Big Bang" compensation increase).   Google also produced hundreds of other corporate documents and emails reflecting "high-level" summaries and analyses of the company's compensation and recruiting practices.

After its earlier productions this year, Google inspected its collection and production to ensure that responsive material has been produced, conferred with co-defendants, and subsequently identified a small number of additional documents in its collection set that may contain "high-level reports, analysis or studies" concerning Google's or other company's compensation or recruiting practices.  Google had already slated those documents for production (including the documents contained in Intuit's recent production) before receiving Plaintiffs' discovery letter of September 6.  As promised during the parties' meet and confer, and as Google had previously planned, those documents were produced on Tuesday, September 11, 2012.

As in any complex litigation matter, Plaintiffs have made follow-up requests based on information contained in the parties' productions, and Google has engaged Plaintiffs in an effort to address these follow-up requests.  Indeed, Plaintiffs and Google held a lengthy meet and confer on September 10, 2012 to address Plaintiffs' follow-up requests.  Plaintiffs are just wrong that Google has "not committed to" producing any documents in response to Plaintiffs' requests. Google specifically agreed to produce additional documents and information regarding the salary

-2-

increase, and in response to a particular follow-up request from Plaintiffs based directly on the contents of a document produced by Google, the company has agreed to produce additional material related to a recruiting project launched in late 2009.

Taking into account Google's production of documents to the U.S. Department of Justice, which was over 54,000 pages of core documents, the total size of Google's total production of documents should negate any inference that the size of Google's production suggests a lack of diligence by the company in meeting its discovery obligations.  Plaintiffs' attempt in an *ex parte* filing to try to gain some advantage in the litigation by casting aspersions on Google's entire document collection effort is baseless and improper.

Finally, Google notes that Plaintiffs' description of the documents related to Google's compensation increase were drawn from documents marked "Confidential-Attorneys' Eyes Only."   In its meet and confer letter to Plaintiffs dated September 8, 2012, Google reminded Plaintiffs that these documents were confidential and that they should be treated accordingly pursuant to the protective order.

Plaintiffs' representations relating to Intel are untrue.  They claim that Intel was "improperly logging as privileged communications in their possession about Google's 'Big Bang' project" and that "Intel only produced the documents [relating to that project] after Plaintiffs challenged their privilege logs listing these documents (among others)."  Supp. Stmt. at 5, 2.  That is categorically false, from start to finish.  First, Intel never claimed privilege for any such documents (which arise from Mr. Otellini's Google Board service) or listed them in any of Intel's privilege logs.  Second, Plaintiffs never "challenged" any of Intel's privilege log designations as having anything to do with this issue (and could not, because there were none).  Third, Intel did not produce these documents "after" Plaintiffs challenged anything.  Intel produced them way back on June 25, just as Intel told the Court it would on June 18, and not in response to Plaintiffs' fictional challenge.  Again, Plaintiffs have not challenged anything Intel did or didn't do relating to any Google "Big Bang" documents, on any basis, ever.

Plaintiffs' assertion that Intuit logged the documents as privileged, and produced them only when plaintiffs challenged the privilege, is likewise false.   The documents were not logged

-3-

as privileged, and Intuit produced them based on its own conclusion that they were responsive, separate from any discussions with plaintiffs.

## II.     Defendants' Data Productions.

Plaintiffs complain that Intuit recently supplemented the compensation data that it had originally produced only in "yearly snapshots."  But Intuit's production was merely in response to a recent follow-on request from plaintiffs.   Intuit informed Plaintiffs in April 2012 that it was producing only the snapshot data and plaintiffs have had that data since May 2012.  Plaintiffs did not request that it be supplemented until late July 2012.  Intuit provided most of the supplemental data in August, and completed the remaining portion on September 10.

Contrary to plaintiffs' assertions about Apple, the Avature data does not fall within the agreed scope of  previous data requests.  The Avature data, which is maintained by an outside vendor, contains information about possible sources of job candidates.  Persons who are recruited by Apple are tracked in extensive databases previously and timely produced to plaintiffs.  Moreover, an analysis of Avature data shows that approximately 99 percent of the records were created after the end of the class period.  Although the Avature data has no relevance to this case, Apple agreed to produce it to avoid a discovery dispute.  Apple has already produced three 30(b)(6) deposition witnesses to testify about its electronic data, including a witness who testified about Avature.

## III.     Defendants' Privilege Logs

Plaintiffs assert that they "anticipate needing court intervention" with respect to the defendants' privilege logs.  But plaintiffs only recently asserted their objections, despite having defendants' privilege logs for months, and they admit that the parties are still meeting and conferring over them.  Plaintiffs do not identify any dispute ripe for resolution--let alone any basis for raising this in a supplemental submission the evening before the CMC.  If the parties' meeting and conferring does not resolve the issues plaintiffs have raised, the proper channel for resolving them will be a motion before Magistrate Judge Grewal, as this Court ordered on June 5, 2012  (Dkt. 148).

Moreover, plaintiffs' suggestion that the defendants have acted unreasonably is

unfounded.  With respect to Plaintiffs' complaints about Google's privilege log, Google responded to Plaintiffs several weeks ago concerning the adequacy of its logs and heard nothing from Plaintiffs until they raised the issue during the meet and confer on Monday. September 10.  Google advised Plaintiffs that if they had remaining concerns regarding Google's log they should specify those concerns in writing.  Google received a follow-up letter from Plaintiffs in the late afternoon of September 10 and is the process of reviewing its log and responding.

With respect to the communications between Bill Campbell and Apple listed on Intuit's privilege log, Intuit's assertion of privilege was proper because Campbell received those attorney-client communications in his capacity as a board member of Apple.  Plaintiffs also complain about "Intel's redactions to a document that is not logged."  Supp. Stmt. at 5.  Plaintiffs first raised this issue last Friday.  Intel informed them yesterday afternoon, long before they filed their *ex parte* statement, that an identical document with identical redactions was logged, and provided that document's ID number.  Moreover, the cover letter to DOJ enclosing the document Plaintiffs have cherry-picked makes the basis for the privilege assertion abundantly clear.  Finally, as noted above, plaintiffs are incorrect in asserting that either Intel or Intuit logged as privileged the documents in their possession regarding Google's 2010 salary increase.

Dated: September 12, 2012                    MAYER BROWN LLP


By: /s/ *Lee H. Rubin*
     Lee H. Rubin

Lee H. Rubin
Edward D. Johnson
Donald M. Falk
Two Palo Alto Square
3000 El Camino Real, Suite 300
Palo Alto, CA 94306-2112
Telephone: (650) 331-2057
Facsimile: (650) 331-4557

*Attorneys for Defendant GOOGLE INC.*

| | |
|---|---|
| Dated: September 12, 2012 | O'MELVENY & MYERS LLP |
| | |
| | By: /s/ *Michael F. Tubach* |
| | Michael F. Tubach |
| | |
| | George Riley |
| | Michael F. Tubach |
| | Lisa Chen |
| | Christina J. Brown |
| | Two Embarcadero Center, 28th Floor |
| | San Francisco, CA 94111 |
| | Telephone: (415) 984-8700 |
| | Facsimile: (415) 984-8701 |
| | |
| | *Attorneys for Defendant APPLE INC.* |
| | |
| Dated: September 12, 2012 | KEKER & VAN NEST LLP |
| | |
| | By: /s/ *Daniel Purcell* |
| | Daniel Purcell |
| | |
| | John W. Keker |
| | Daniel Purcell |
| | Eugene M. Page |
| | Paula L. Blizzard |
| | Cody S. Harris |
| | 633 Battery Street |
| | San Francisco, CA 94111 |
| | Telephone: (415) 381-5400 |
| | Facsimile: (415) 397-7188 |
| | |
| | *Attorneys for Defendant LUCASFILM LTD.* |
| Dated: September 12, 2012 | JONES DAY |
| | |
| | By: /s/ *David C. Kiernan* |
| | David C. Kiernan |
| | |
| | Robert A. Mittelstaedt |
| | Craig A. Waldman |
| | David C. Kiernan |
| | 555 California Street, 26th Floor |
| | San Francisco, CA 94104 |
| | Telephone: (415) 626-3939 |
| | Facsimile: (415) 875-5700 |
| | |
| | *Attorneys for Defendant ADOBE SYSTEMS, INC.* |

-6-

Dated: September 12, 2012                     JONES DAY


                                              By: /s/ Robert A. Mittelstaedt
                                                     Robert A. Mittelstaedt

                                              Robert A. Mittelstaedt
                                              Craig E. Stewart
                                              Catherine T. Zeng
                                              555 California Street, 26th Floor
                                              San Francisco, CA 94104
                                              Telephone: (415) 626-3939
                                              Facsimile: (415) 875-5700

                                              *Attorneys for Defendant INTUIT INC.*

Dated: September 12, 2012                     BINGHAM McCUTCHEN LLP


                                              By: /s/ Frank M. Hinman
                                                     Frank M. Hinman

                                              Donn P. Pickett
                                              Frank M. Hinman
                                              Three Embarcadero Center
                                              San Francisco, CA 94111
                                              Telephone: (415) 393-2000
                                              Facsimile: (415) 383-2286

                                              *Attorneys for Defendant INTEL
                                              CORPORATION*

Dated: September 12, 2012                     COVINGTON & BURLING LLP


                                              By: /s/ Emily Johnson Henn
                                                     Emily Johnson Henn

                                              Robert T. Haslam, III
                                              Emily Johnson Henn
                                              333 Twin Dolphin Drive, Suite 700
                                              Redwood City, CA 94065
                                              Telephone: (650) 632-4700

                                              *Attorneys for Defendant PIXAR*


**ATTESTATION**: Pursuant to General Order 45, Part X-B, the filer attests that concurrence in

the filing of this document has been obtained from all signatories

DEFENDANTS' SUPPLEMENTAL CASE MANAGEMENT CONFERENCE STATEMENT
MASTER DOCKET NO. 11-CV-2509-LHK