1
2
3
4
5
6
7
8
9

MAYER BROWN LLP
LEE H. RUBIN (SBN 141331)
lrubin@mayerbrown.com
EDWARD D. JOHNSON (SBN 189475)
wjohnson@mayerbrown.com
DONALD M. FALK (SBN 150256)
dfalk@mayerbrown.com
ERIC B. EVANS (SBN 232476)
eevans@mayerbrown.com
Two Palo Alto Square, Suite 300
3000 El Camino Real
Palo Alto, CA 94306-2112
Telephone:    (650) 331-2000
Facsimile:    (650) 331-2061

*Attorneys for Defendant*
*Google Inc.*

10
11
12
13
14
15
16
17
18
19
20

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN JOSE DIVISION

IN RE: HIGH-TECH EMPLOYEE
ANTITRUST LITIGATION

THIS DOCUMENT RELATES TO:

ALL ACTIONS

Master Docket No. 11-CV-2509-LHK

**DECLARATION OF FRANK WAGNER
IN SUPPORT OF ADMINISTRATIVE
MOTION TO SEAL**

21
22
23
24
25
26
27
28

I, Frank Wagner, declare:

1.     I am Director of Compensation at Google Inc. ("Google").  I have served in that

position since April 2007.  In that capacity, I am familiar with Google's internal decision-making

process and business strategy relating to compensation of Google employees, including Google's

strategic considerations and internal deliberations regarding compensation for individual Google

employees (which includes salary, bonus, equity grants and benefits).  As part of my

responsibilities, I am specifically familiar with Google's internal decision-making process and

business strategy relating to offers of employment as well as counteroffers made to Google employees who have received offers from other firms.  In addition, I am familiar with Google's strategy in evaluating Google's competitive position in the market for employees and in Google's strategic responses over time to increased or diminished competition in the labor market.  I have personal knowledge of the facts set forth in this Declaration and, if called to testify, could and would testify competently thereto.

**Google's Confidential Information In Plaintiffs' Exhibits**

2.      I have read and reviewed certain exhibits attached to the Declaration of Ann B. Shaver ("Shaver Declaration") (Docket No. 188), which I understand was lodged under seal in support of Plaintiffs' Motion for Class Certification ("Motion") (Docket No. 187).  In particular, I have reviewed the exhibits to the Shaver Declaration that Google produced in this litigation or that consist of emails to or from Google employees as well as internal Google memoranda (Shaver Declaration Exhibit Nos. 24, 25, 29, 32, 34, 37, 39, 40, and 42-49, collectively referred to below as "Google Exhibits").

3.      Based on my familiarity with the relevant internal decision making and business strategy at Google described above, the Google Exhibits that I have reviewed contain confidential and highly sensitive commercial information, the disclosure of which would likely cause significant competitive harm to Google by giving third parties (including Google's competitors in the labor market) direct insight into highly confidential and competitively sensitive aspects of Google's internal decision-making processes related to its business operations.

4.      Below, I address three categories of Google Exhibits:  (1) Google Exhibits, the entirety of which reflects confidential and highly sensitive commercial information; (2) Google Exhibits in which a portion of the contents include Google's confidential and highly sensitive

-2-

commercial information; or (3) Google Exhibits that include personal information regarding a particular candidate or potential candidate for employment at Google.

### *Google Exhibits with Google's Confidential Information Reflected in the Entirety of the Documents*

5.   The following Google Exhibits reflect Google's confidential and highly sensitive commercial information.  Each of these documents is closely held within Google and provided only to members of Google's Board of Directors and/or senior management.

(a)   **Exhibits 43 through 49** are documents that reflect confidential and highly sensitive details of Google's internal deliberations and business strategy related to Google's understanding of its competitive position in the market for employees, particularly as it relates to compensation.  Specific details regarding each of these exhibits is described below.

(i)   **Exhibit 43** contains internal evaluations of challenges that Google faced in the market for employees, including Google's understanding of employers' potential compensation programs as well as detailed analyses of alternative equity grant proposals designed to compete with other employers' compensation programs in order to attract and retain talent.  Exhibit 43 also contain estimates of the potential impact that various compensation approaches may have on Google's financial performance.

(ii)   **Exhibit 44** contains a detailed description of an original and revised compensation proposal reflecting a change to Google's compensation philosophy, which includes extensive details of Google's potential changes to its compensation program among and between various components of compensation (i.e., salary, bonus, equity), and a detailed description of the reasons behind the alternative compensation programs.

(iii)     **Exhibit 45** is a report related to retention of highly talented employees in the face of competition from startup companies, which includes a detailed quantitative analysis of the number of employees lost by Google to other employees and the history of offers made by other employers and counteroffers made by Google in order to retain its employees.

(iv)     **Exhibit 46** is a 2011 report related to an update on changes to Google's compensation philosophy and specific changes to the compensation of employees.  It includes an evaluation of Google employees' response to those changes as well as other proposals to attract and retain highly skilled employees. Exhibit 46 also includes an internal assessment of another employer's competitive response to Google's 2011 compensation changes.

(v)     **Exhibits 47 and 48** reflect an email discussion among Google's senior management (and, in Ex. 47, including Google's advisor, Bill Campbell) that contains confidential and highly sensitive details of talking points prepared for a meeting of the Leadership Development and Compensation Committee ("LDCC") in October 2010 (*see also* the accompanying Declaration of Alan Eustace dated October 9, 2012 ("Eustace Declaration") regarding the role of Bill Campbell as Google's long-time senior advisor). The talking points relate to specific and detailed proposals regarding a modified compensation philosophy for Google employees, and includes detailed analyses of Google's head-to-head competition with another employer in their competing efforts to attract and retain employees.

(vi)     **Exhibit 49** is an email discussion among Google's senior management and members of Google's Board of Directors that contains

-4-

confidential and highly sensitive details regarding Google's compensation and retention of executive employees in response to a news article about executive compensation.  The email exchange includes management's specific responses to questions and concerns raised by Google's Board of Directors about management's compensation proposals.

6.     Each of the Exhibits described in Paragraphs 5(a)(i) through 5(a)(vi) above reflect confidential and highly sensitive commercial information, from which Google derives economic benefit by maintaining its confidentiality.  Google does not disclose this information to its competitors, customers or the general public.  Public disclosure of this information would likely cause Google significant competitive harm by giving third parties, including its competitors in the labor market, direct insight into confidential and sensitive aspects of Google's internal decision-making processes and business strategy related to employee compensation and retention, including Google's assessment of its competitive position in the labor market and detailed strategic considerations regarding how Google responds to competitive changes in the labor market.

### Google Exhibits in Which A Portion of the Documents Reflect Google's Confidential Information

7.     Portions of the following Google Exhibits contain Google's confidential and highly sensitive commercial information.  The public disclosure of this information would likely result in competitive harm to Google.

(a)     **Exhibit 25** reflects an email discussion among Google's senior management that includes confidential and highly sensitive details of information gathered by Google personnel regarding particular employees at another company, including details about several employees from the other company who may have expressed interest in working at Google.

-5-

(b)     **Exhibit 34** is an internal memorandum distributed to members of Google's recruiting organization, which contains confidential and highly sensitive details of Google's internally developed database program used to support that organization and of Google's incentive program to encourage employees to refer strong potential candidates for employment at Google.  The internal memorandum also discusses confidential and highly sensitive issues about Google's protocol for interviewing candidates.

(c)     **Exhibit 42** reflects an email message to Google engineering staff that contains confidential and highly sensitive details of Google's interviewing process, as well as internal discussions regarding recruiting strategies for staffing at Google.

8.     The information in each the Google Exhibits described in Paragraphs 7(a) through 7(c) above is confidential and highly sensitive commercial information, from which Google derives economic benefit by maintaining its confidentiality.  Google does not disclose this information to its competitors, customers or the general public.  Public disclosure of this information would likely cause Google significant competitive harm by giving third parties, including its competitors in the labor market, direct insight into confidential and sensitive aspects of Google's internal decision-making processes and business strategy related to employee recruiting.

### Google Exhibits That Reference the Identity of Employee Candidates

9.     In addition, Google Exhibits 24, 29, 32, 37, 39 and 40 contain the identity of applicants and potential applicants for employment at Google, the disclosure of which to the public or third parties is likely to cause annoyance, embarrassment, and potential negative professional consequences to these applicants, whose employers may not be aware that they sought employment at Google.

1    **Google's Confidential Information in Plaintiff's Motion and the Leamer Report**

2          10.     I have also read and reviewed discrete portions of Plaintiffs' Motion and the

3    Expert Report of Edward E. Leamer, Ph.D. ("Leamer Report") (Docket No. 190), that

4    specifically discuss or reference information related to Google.  Based on my familiarity with

5

6    Google's internal decision making and business strategy regarding compensation and Google's

7    competitive position in the labor market, as described above, the following lines of Plaintiffs'

8    Motion and the Leamer Report contain confidential commercial information, the disclosure of

9    which would likely cause competitive harm to Google by giving third parties, including

10   competitors in the labor market, direct insight into highly confidential and competitively

11   sensitive aspects of Google's internal decision-making processes related to its business

12   operations:

13

14                       *Google's Confidential Information in Plaintiffs' Motion*

15           (a)      **Page 18 (lines 8-10)**:  This excerpt quotes and references Exhibit 43,

16   which Google is seeking to seal in its entirety (*see* Paragraph 5(a)(i) above).  The excerpt

17   contains confidential and highly sensitive details of Google's understanding of its

18   competitive position in the labor market compared to another significant employer;

19           (b)      **Page 18 (lines 21) - Page 19 (line 2)**:  This excerpt quotes and references

20   Exhibit 45, which Google is seeking to seal in its entirety (*see* Paragraph 5(a)(iii) above).

21   This excerpt contains confidential and highly sensitive details of Google's quantitative

22   analysis of its competitive position compared to another significant employer, including

23   an estimate of Google employees hired and contacted by this rival employer;

24

25           (c)      **Page 19 (lines 5-8)**:  This excerpt quotes and references Exhibits 46, 48

26   and 49, which Google is seeking to seal in its entirety (*see* Paragraphs 5(1)(a)(iv), (v) and

27

28

(vi) above).  This excerpt contains confidential and highly sensitive details about Google's compensation of its employees and its compensation philosophy.

(d)     **Page 19 (lines 13-14)**:  This excerpt quotes and references Exhibit 47, which Google is seeking to seal in its entirety (*see* Paragraph 5(1)(a)(v) above).  This excerpt includes confidential and highly sensitive references to Google's specific reasons for revising features of its compensation program;

(e)     **Page 20 (line 24) - Page 21 (line 5); Page 21 (lines 13-28); and Page 22, lines 1-3.** These excerpts quote and reference Exhibit 59, which Google is seeking to seal in its entirety (*see* accompanying Eustace Declaration).  These excerpts contain confidential and highly sensitive details of Google's internal discussions regarding the potential impact of making counteroffers on employee morale and on compensation negotiations between employers and employees, and includes a suggested Google strategy to respond to competition from a rival employer in an effort to retain employees.

### *Google's Confidential Information in the Leamer Report*

(f)     **Page 23 (Figures 3 and 4)**: The rows pertaining to Google in Figures 3 and 4 are derived from Google's confidential and highly sensitive data, from which the expert aggregates the number of Google employees during a specified period and the total amount of compensation paid to those employees;

(g)     **Page 26 (second sentence of Paragraph 59)**: The second sentence of Paragraph 59 contains confidential and highly sensitive details of Google's recruiting strategies and its methods for identifying competitors who may have employees that Google may seek to target for recruitment;

(h)     **Page 27 (Footnote 101)**: This footnote contains confidential and highly sensitive analysis comparing and contrasting specific features of Google's compensation

-8-

with competitors in the labor market, including aspects of Google's and other employers' equity and bonus compensation;

(i)        **Page 27 (Footnote 103)**: This footnote contains a confidential and highly sensitive reference to Google's recruiting strategies and its methods for identifying individuals who Google seeks to target for recruitment;

(j)        **Page 45 (first four sentences of Paragraph 107 and Footnote 129)**:  The first four sentences of this paragraph and the footnote include references to Exhibit 45, which Google is seeking to seal in its entirety (*see* Paragraph 5(1)(a)(iii) above), and contain confidential and highly sensitive information from internal reports and studies prepared by Google related to the competition for labor that Google faced from startup companies.  The first four sentences of this paragraph and the footnote include some of the detailed quantitative analysis that Google conducted that calculates the number of employees lost by Google to another employer;

(k)        **Pages 45-46 (last sentence of Footnote 135)**: The last sentence of this footnote contains confidential and highly sensitive data produced by Google reflecting the number of employees Google hired during a specified period;

(l)        **Page 46 (last sentence of Paragraph 108, Paragraph 109, and Footnotes 138 and 139)**: These paragraphs and footnotes contain confidential and highly sensitive details of Google's internal evaluation and assessment of the recruiting and hiring activities of one its competitors for labor, including Google's quantitative assessments of its competitor's hiring activities.  Paragraph 109 and Footnote 139 reference and quote Exhibit 45, which Google has moved to seek in its entirety (*see* Paragraph 5(1)(a)(iii) above);

(m)      **Pages 47-48 (Paragraphs 111, 115-17)**: These paragraphs quote and reference Exhibit 59, which Google is seeking to seal in its entirety (*see* accompanying Eustace Declaration), and contain confidential and highly sensitive details of Google's internal deliberations and strategic discussions regarding Google's approach to making counteroffers to employees who have received offers from other employers, as well as the impact that making counteroffers may have on other employees and the efforts of other employers to recruit Google personnel;

(n)      **Page 49 (Paragraph 119)**: This paragraph contains confidential and highly sensitive details of Google's internal analysis attempting to assess the impact from Google's changes to features to its compensation approach on Google's offer acceptance rate and to evaluate the impact on a particular competitor for labor;

(o)      **Page 49 (Footnote 155)**:  This footnote contains a confidential and highly sensitive internal assessment by Google of the impact from its counteroffer strategy on the number of offers made to Google employees by a particular competitor in the labor market;

(p)      **Page 51 (second sentence of Paragraph 125)**: The second sentence of this paragraph contains confidential and highly sensitive details of the multiple factors that Google considers in setting compensation for its employees;

(q)      **Page 53 (Figure 10)**:  The row pertaining to Google in this chart is based in part on Google's confidential and highly sensitive compensation data, in particular data related to bonus and equity compensation of Google employees;

(r)      **Page 56 (Figure 12), Page 58 (Figure 14), Page 60 (Figure 16), Page 67 (Figure 22), and Page 70 (Figure 24)**:  These charts are based wholly or in part on Google's confidential and highly sensitive compensation data.

-10-

1    11.    The portions of the Motion and the Leamer Report described in Paragraphs

2  10(a)-(r) above reflect confidential and highly sensitive commercial information, from which

3  Google derives economic benefit by maintaining its confidentiality.  Google does not disclose

4  this information to its competitors, customers or the general public.  Public disclosure of this

5  information would cause Google significant economic harm by giving third parties, including its

6  competitors in the labor market, direct insight into confidential and sensitive aspects of the level

7  of compensation of its employees over time, Google's internal decision-making processes and

8  business strategy related to employee compensation and retention, including Google's

9  assessment of its competitive position in the market for labor and detailed strategic

10 considerations regarding how Google might respond to competition for its employees from other

11 employers.

12

13

14    I declare under penalty of perjury under the laws of the United States of America that the

15 foregoing is true and correct.  Executed on October 9, 2012 in Mountain View, California.

16

17

18    Frank Wagner

19

20

21

22

23

24

25

26

27

28