# EXHIBIT B
## [Christina Brown Declaration (35 Pages)]

GEORGE A. RILEY (Bar No. 118304)
griley@omm.com
MICHAEL F. TUBACH (Bar No. 145955)
mtubach@omm.com
CHRISTINA J. BROWN (Bar No. 242130)
cjbrown@omm.com
O'MELVENY & MYERS LLP
Two Embarcadero Center, 28th Floor
San Francisco, CA  94111-3823
Telephone:     (415) 984-8700
Facsimile:      (415) 984-8701

Attorneys for Defendant Apple Inc.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| IN RE HIGH-TECH EMPLOYEE ANTITRUST LITIGATION | Master Docket No. 11-CV-2509-LHK |
| THIS DOCUMENT RELATES TO: | **DECLARATION OF CHRISTINA BROWN IN SUPPORT OF DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION** |
| ALL ACTIONS | Date:          January 17, 2013 |
| | Time:          1:30 pm |
| | Courtroom:    8, 4th Floor |
| | Judge:         The Honorable Lucy H. Koh |

1      I, Christina Brown, declare as follows:

2      1.      I am a member of the Bar of the State of California and a counsel of the law firm

3  of O'Melveny & Myers LLP, attorneys for Defendant Apple Inc.  I submit this declaration in

4  support of Defendants' Opposition to Plaintiffs' Motion for Class Certification.  I make this

5  declaration based on my own personal knowledge.  If called to testify as a witness, I could and

6  would do so competently.

7      **Deposition Testimony**

8      2.      Attached hereto as Exhibit 1 is a true and correct copy of transcript excerpts from

9  the deposition of Dr. Edward Leamer.

10     3.      Attached hereto as Exhibit 2 is a true and correct copy of transcript excerpts from

11 the deposition of named Plaintiff Michael Devine.

12     4.      Attached hereto as Exhibit 3 is a true and correct copy of transcript excerpts from

13 the deposition of named Plaintiff Mark Fichtner.

14     5.      Attached hereto as Exhibit 4 is a true and correct copy of transcript excerpts from

15 the deposition of named Plaintiff Siddharth Hariharan.

16     6.      Attached hereto as Exhibit 5 is a true and correct copy of transcript excerpts from

17 the deposition of named Plaintiff Brandon Marshall.

18     7.      Attached hereto as Exhibit 6 is a true and correct copy of transcript excerpts from

19 the deposition of named Plaintiff Daniel Stover.

20     8.      Attached hereto as Exhibit 7 is a true and correct copy of transcript excerpts from

21 the deposition of Jeff Vijungco.

22     9.      Attached hereto as Exhibit 8 is a true and correct copy of transcript excerpts from

23 the deposition of Mark Bentley.

24     **Interrogatory Responses**

25     10.     Attached hereto as Exhibit 9 is a true and correct copy of Plaintiff Michael

26 Devine's Supplemental Answers and Objections to Defendants' First Set of Interrogatories.

27     11.     Attached hereto as Exhibit 10 is a true and correct copy of Plaintiff Mark

28 Fichtner's Supplemental Answers and Objections to Defendants' First Set of Interrogatories.

12.     Attached hereto as Exhibit 11 is a true and correct copy of Plaintiff Siddharth Hariharan's Supplemental Answers and Objections to Defendants' First Set of Interrogatories.

13.     Attached hereto as Exhibit 12 is a true and correct copy of Plaintiff Brandon Marshall's Supplemental Answers and Objections to Defendants' First Set of Interrogatories.

14.     Attached hereto as Exhibit 13 is a true and correct copy of Plaintiff Daniel Stover's Supplemental Answers and Objections to Defendants' First Set of Interrogatories.

**Declarations**

15.     Attached hereto as Exhibit 14 is a true and correct copy of the Declaration of Donna Morris of Adobe Systems Inc. in Support of Defendants' Opposition to Plaintiffs' Motion for Class Certification.

16.     Attached hereto as Exhibit 15 is a true and correct copy of the Declaration of Jeff Vijungco of Adobe Systems Inc. in Support of Defendants' Opposition to Plaintiffs' Motion for Class Certification.

17.     Attached hereto as Exhibit 16 is a true and correct copy of the Declaration of Steven Burmeister in Support of Defendants' Opposition to Plaintiffs' Motion for Class Certification.

18.     Attached hereto as Exhibit 17 is a true and correct copy of the Declaration of Danny McKell in Support of Defendants' Opposition to Plaintiffs' Motion for Class Certification.

19.     Attached hereto as Exhibit 18 is a true and correct copy of the Declaration of Tina M. Evangelista in Support of Defendants' Opposition to Plaintiffs' Motion for Class Certification.

20.     Attached hereto as Exhibit 19 is a true and correct copy of the Declaration of Mason Stubblefield.

21.     Attached hereto as Exhibit 20 is a true and correct copy of the Declaration of Chris Galy.

22.     Attached hereto as Exhibit 21 is a true and correct copy of the Declaration of Frank Wagner in Support of Defendants' Opposition to Plaintiffs' Motion for Class Certification.

23.     Attached hereto as Exhibit 22 is a true and correct copy of the Declaration of Michelle Maupin in Support of Defendants' Opposition to Plaintiffs' Motion for Class

1  Certification.

2          24.      Attached hereto as Exhibit 23 is a true and correct copy of the Declaration of Lori

3  McAdams in Support of Defendants' Opposition to Plaintiffs' Motion for Class Certification.

4          25.      Attached hereto as Exhibit 24 is a true and correct copy of the Declaration of

5  Rosemary Arriada-Keiper in Support of Defendants' Opposition to Plaintiffs' Motion for Class

6  Certification.

7          **Documents**

8          25.      Attached hereto as Exhibit 25 is a true and correct copy of the document produced

9  by Google with Bates number GOOG-HIGH TECH-00038391.

10          26.      Attached hereto as Exhibit 26 is a true and correct copy of the document produced

11  by Intel with Bates number 76597DOC000068.

12          27.      Attached hereto as Exhibit 27 is a true and correct copy of the document produced

13  by Intel with Bates number 76512DOC000671.

14

15          I declare under penalty of perjury under the laws of the United States that the above is true

16  and correct.  Executed on November 12, 2012, in San Francisco, California.

17

18          By:  /s/ Christina Brown          _____
19                    Christina Brown

20

21

22

23

24

25

26

27

28

# EXHIBITS 1-6

# FILED UNDER SEAL

# EXHIBITS 8-15

# FILED UNDER SEAL

# EXHIBIT 16

1   GEORGE A. RILEY (Bar No. 118304)
    griley@omm.com
2   MICHAEL F. TUBACH (Bar No. 145955)
    mtubach@omm.com
3   CHRISTINA J. BROWN (Bar No. 242130)
    cjbrown@omm.com
4   O'MELVENY & MYERS LLP
    Two Embarcadero Center, 28th Floor
5   San Francisco, CA  94111-3823
    Telephone:    (415) 984-8700
6   Facsimile:    (415) 984-8701

7   Attorneys for Defendant Apple Inc.

8

9               **UNITED STATES DISTRICT COURT**

10             **NORTHERN DISTRICT OF CALIFORNIA**

11                    **SAN JOSE DIVISION**

12

13   IN RE HIGH-TECH EMPLOYEE          Master Docket No. 11-CV-2509-LHK
     ANTITRUST LITIGATION
14                                     **DECLARATION OF STEVEN**
                                       **BURMEISTER IN SUPPORT OF**
15   THIS DOCUMENT RELATES TO:         **DEFENDANTS' OPPOSITION TO**
                                       **PLAINTIFFS' MOTION FOR CLASS**
16   ALL ACTIONS                       **CERTIFICATION**

17                                     Date:        January 17, 2013
                                       Time:        1:30 p.m.
18                                     Courtroom: 8, 4th Floor
                                       Judge:       Honorable Lucy H. Koh
19

20

21

22

23

24

25

26

27

28

# Exhibit A

# EXHIBIT 17
# FILED UNDER SEAL

# EXHIBIT 18

1   BINGHAM MCCUTCHEN LLP
    DONN P. PICKETT (SBN 72257)
2   FRANK M. HINMAN (SBN 157402)
    SUJAL J. SHAH (SBN 215230)
3   FRANK BUSCH (SBN 258288)
    Three Embarcadero Center
4   San Francisco, CA  94111-4067
    Telephone:  415.393.2000
5   Facsimile:  415.393.2286
    donn.pickett@bingham.com
6   frank.hinman@bingham.com
    sujal.shah@bingham.com
7   frank.busch@bingham.com

8   Attorneys for Defendant
    Intel Corporation

9
                    UNITED STATES DISTRICT COURT
10
                  NORTHERN DISTRICT OF CALIFORNIA
11
                         SAN JOSE DIVISION
12

13  IN RE: HIGH-TECH EMPLOYEE            Master Docket No. 11-CV-2509-LHK
    ANTITRUST LITIGATION
14
15  THIS DOCUMENT RELATES TO:           **DECLARATION OF TINA M.**
                                        **EVANGELISTA IN SUPPORT OF**
16  ALL ACTIONS                         **OPPOSITION TO CLASS CERTIFICATION**

17
18                                      Date Consolidated Amended Compl. Filed:
                                        September 13, 2011
19
20

21
22
23
24
25
26
27
28

ATTORNEYS' EYES ONLY                                    Master Docket No. ll-CV-2509-LHK

DECLARATION OF TINA M. EVANGELISTA

A/75213414 2

1      I, Tina M. Evangelista, declare:

2      1.      I am a Staffing Controls and Compliance Manager in the Enterprise Talent

3 Organization at Intel Corporation. I have been employed by Intel for 17 years.  I have personal

4 knowledge of the matters stated in this declaration.  I make this declaration in support of

5 Defendants' Opposition to Motion for Class Certification.  If called and sworn as a witness, I

6 could and would competently testify to the matters stated below.

7      2.      I understand that the Plaintiffs in this case have asserted that Intel's compensation

8 for most of its employees (apart from retail employees, corporate officers, members of the board

9 of directors, and senior executives) was suppressed below competitive levels due to certain

10 bilateral agreements to limit cold-calling during the alleged class period of 2005-09.  In my role

11 as Staffing Controls and Compliance Manager, I am generally familiar with the process by which

12 Intel recruited and hired its employees before, during, and since that time.  The statements below

13 are descriptive of Intel's recruiting practices during the alleged class period, and in most cases

14 extend before and after that period.

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DECLARATION OF TINA M. EVANGELISTA

A/75251149 1

1 

2

3

4

5

6

7

8

9

10      6.      Attached at Exhibits A-E are true and correct copies of the sections of Intel's 10-

11   K filings identifying its industry competitors from 2005 through 2009.  No Defendant in this

12   action was listed as an industry competitor.  To the contrary, Intel identified the following

13   companies as competitors: Advanced Micro Devices, Inc., Applied Micro Circuits Corp., ARM

14   Limited, Atheros Communications, Inc., ATI Technologies, Inc., Broadcom Corp., Freescale

15   Semiconductor, Inc., Hynix Semiconductor Inc., International Business Machines Corp., Marvell

16   Technology Group Ltd., Micron, NMS Communications Corp., Numonyx B.V., NVIDIA Corp.,

17   OpNext, Inc., QUALCOMM Inc., Samsung Electronics Co., Ltd., SanDisk Corp., Silicon

18   Integrated Systems Corporation, Sony Corporation, Spansion Inc., STMicroelectronics NV, Sun

19   Microsystems, Inc., Texas Instruments Incorporated, Toshiba Corporation, Transmeta

20   Corporation, and VIA Technologies, Inc.

21

22

23

24

25

26

27

28

DECLARATION OF TINA M. EVANGELISTA

A/75251149 1



DECLARATION OF TINA M. EVANGELISTA

A/75251149 1

1

2

3

4

5       11.    I declare under penalty of perjury that the foregoing is true and correct.  Executed

6   in Phoenix, Arizona, on November 12, 2012.

7

8

9                                              Tina M. Evangelista

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ATTORNEYS' EYES ONLY

4                          Master Docket No. ll-CV-2509-LHK

DECLARATION OF TINA M. EVANGELISTA

A/75251149.1

# Exhibits F through H filed under seal

# EXHIBIT 19-22

# FILED UNDER SEAL

# EXHIBIT 23

1  ROBERT T. HASLAM (S.B. #71134)
   rhaslam@cov.com
2  EMILY JOHNSON HENN (S.B. #269482)
   ehenn@cov.com
3  COVINGTON & BURLING LLP
   333 Twin Dolphin Dr., Suite 700
4  Redwood Shores, CA  94065
   Telephone:    (650) 632-4700
5  Facsimile:    (650) 632-4800

6  DEBORAH A. GARZA (*pro hac vice*)
   dgarza@cov.com
7  CHINUE T. RICHARDSON (*pro hac vice*)
   crichardson@cov.com
8  COVINGTON & BURLING LLP
   1201 Pennsylvania Avenue, NW
9  Washington, DC 20004
   Telephone:    (202) 662-6000
10 Facsimile:    (202) 662-6291

11 Attorneys for Defendant
   PIXAR
12

13              UNITED STATES DISTRICT COURT

14             NORTHERN DISTRICT OF CALIFORNIA

15                  SAN JOSE DIVISION

16 | IN RE:  HIGH-TECH EMPLOYEE | Case No. 3:11-cv-2509-LHK |
   | ANTITRUST LITIGATION | |

17 | | **DECLARATION OF LORI MCADAMS IN** |
   | | **SUPPORT OF DEFENDANTS'** |
18 | THIS DOCUMENT RELATES TO: | **OPPOSITION TO PLAINTIFFS' MOTION** |
   | | **FOR CLASS CERTIFICATION** |
19 | ALL ACTIONS | |
   | | Date:        January 17, 2013 |
20 | | Time:        1:30 p.m. |
   | | Courtroom: 8, 4th Floor |
21 | | Judge:       Hon. Lucy H. Koh |

22 | | Date Consol. Amended Compl. Filed: |
   | |              May 4, 2011 |
23 | |
   | | Trial Date:  Nov. 12, 2013 |
24

25

26

27

28

1    I, Lori McAdams, state and declare as follows:

2        1.      I am the Vice President of Human Resources and Administration at Pixar

3    Animation Studios (hereinafter "Pixar"), one of the defendants in the above-captioned action.  I

4    make this declaration in support of Defendants' Opposition to Plaintiffs' Motion for Class

5    Certification.  Except where expressly stated, I have knowledge of the facts set forth herein, and if

6    called to testify as a witness thereto, could do so competently under oath.  Except where expressly

7    stated, the statements in this declaration relate only to Pixar's employees in the United States.

8        2.      I have worked at Pixar since April 2004.  In my position as Vice President of

9    Human Resources and Administration at Pixar, I have become familiar and am familiar with

10   Pixar's compensation policies, practices, and procedures.  I participate in the establishment of

11   compensation policies and budgets for Pixar employees.

12   **A.      Pixar's business and workforce**

13       3.      Pixar is an Academy Award-winning film studio with world-renowned technical,

14   creative, and production capabilities in the art of computer-generated animation.  Pixar's primary

15   line of business is making computer-generated animated films.  Pixar also licenses its industry-

16   standard RenderMan computer graphics rendering software for the creation of visual effects.

17       4.      Pixar employs a highly-diverse work force, some with highly specialized skill sets.

18       5.      As of December 31, 2009, Pixar had 439 FLSA-exempt, non-retail employees who

19   fell into 171 separate job titles.  These numbers have varied over the years but were roughly in the

20   same ballpark from 2005-2009, the period during which I understand that the Plaintiffs in this

21   case have asserted Pixar's compensation was suppressed below competitive levels.

22   **B.      Pixar's compensation policies**

23       6.      When I started at Pixar in April 2004, Pixar was a public company.  The elements

24   of compensation for Pixar employees included an equity-based long term incentive program, base

25   salary, film bonuses, and benefits.  In May 2006, Pixar was acquired by The Walt Disney

26   Company ("TWDC") and became a wholly-owned subsidiary of TWDC.  Following Pixar's

27   acquisition by TWDC, in January 2009, Pixar converted its long-term incentive compensation

28   program to a cash-based program.  From January 2009 forward, the common elements of

1

1  employee compensation at Pixar have been base salary, long-term-incentive cash grants, cash

2  film bonuses awarded based on the success of Pixar's films, and benefits.

3              **1.      Base salary and use of market survey data**

4      7.

5

6

7

8

9      8.      Each position at Pixar has a salary range.  Throughout my tenure at Pixar, we have

10  relied primarily on consultant-conducted benchmarking surveys to set base salary ranges.

11     9.

12

13

14

15

16

17

18     10.     For as long as I have worked at Pixar, a particular employee's compensation level

19  within a base salary range has been dependent on that employee's experience and performance

20  level.

21

22

23

24

25     11.     For example, Pixar has employed technical directors ("TDs"), who work with

26  Pixar's proprietary software tools that are used in making Pixar films.

27              Individual TDs may move to higher salary ranges as they become more

28  experienced if they do consistent, high-quality work, or if they take on more responsibility.

12.     During my entire tenure at Pixar, we have relied on two salary surveys for information about salary ranges at other companies for specific jobs for which benchmarking is available (excluding positions like Pixar's kitchen staff and sketch artists).

13.     First, Radford survey data has been Pixar's primary data source for salary ranges for Pixar's RenderMan team of software engineers, for information technology positions, for software engineers working on Pixar's proprietary software, and for business positions, including finance, legal, human resources, administrative employees, and facilities positions. Using the Radford survey, Pixar has benchmarked compensation for these positions against salary data collected from companies that are included in Radford's report. Since 2007, Pixar has benchmarked its compensation against companies in Radford's San Francisco Bay Area report. This year, I understand that this report included salary data from over 350 companies. I understand that the report included data from hundreds of companies in prior years as well.

14.     Second, Pixar has used nationwide data from the Croner Animation and Visual Effects survey to determine compensation ranges in the animation and visual effects industry for production and creative positions. Using the Croner survey, Pixar has benchmarked compensation for these positions against other film studios.

15.     Pixar has evaluated its base salary ranges each year. Salary information obtained by employees who were "cold-called" has not been considered when analyzing market compensation. Instead, the Human Resources Department provided each Pixar manager with survey-related data for relevant positions and a salary increase pool. Managers then recommended salary increases for individual employees within their department, and Pixar's senior management team approved the final salary levels. The pools available for base salary increases have been fixed, so that a raise awarded to one employee necessarily meant that less money was available for other employees.

### 2.     Long-term incentive program

16.     From April 2004 through December 2008, Pixar had an equity-based long-term incentive program. Through that program, employees were awarded stock option grants on a yearly basis. The pool of stock option grants was set once a year at a company-wide level. Each

3

department manager was then given a set amount to allocate among the employees within his or her department.  Managers recommended grants for each employee, and senior management signed off on final stock option grants to each employee.

17.    In January 2009, Pixar converted its long-term incentive program to a cash-based program.  Long-term incentive grants have since been awarded per film (currently annually) out of a pool that is determined based on the profitability of the film. ████████████████ ████████████████████████  For each level, Pixar targets a percentage of base salary that will be available in the form of long-term incentive cash grants.  Managers are provided with a set pool to allocate among employees in their departments and use their discretion within parameters to recommend awards based in part on an employees' performance.  After the managers recommend allocations within their department, Pixar's senior management team reviews and signs off on the final cash grants.

### 3.    Film bonus program

18.    For as long as I have worked at Pixar, we have also had a film bonus program.  After a film was released and the company was able to assess its profitability, if the film was profitable, Pixar paid a film bonus to every employee of the company.  The bonus amount was determined based on the film's success, and for most employees it was set as a percentage of salary, calculated to equal a certain number of weeks of pay.  Film bonuses were typically paid approximately four weeks after the film's DVD release, which occurred about five months after the film's theatrical release.  Since 2006, Pixar has released its feature films in the summer and has paid bonuses before the end of each calendar year.  Once the bonus amount was determined, expressed in a certain number of weeks of pay, almost every employee -- from the president to the receptionist -- received a bonus equivalent to that set number of weeks of pay.  The amount was pro-rated for employees who had worked at Pixar for less than a year, and the newest employees (and temps) received a small, fixed amount.

### C.    How Pixar sets compensation for new hires

19.    During my tenure at Pixar, when Pixar has hired a new employee, Human Resources has worked with the manager of the relevant department to determine what job

4

category and salary range will apply to the new employee.  If the position was a new position, the

manager determined the appropriate salary range based on (a) a comparison with existing

positions and employees; and (b) the relevant external survey data set forth above.  The recruiter

would consult with the manager before making an offer to a specific candidate, after the

candidate had been interviewed and his or her qualifications assessed by the relevant department.

In determining what salary to offer a candidate, the manager and recruiter considered the salary

range for the position and the candidate's skills and experience.

20.     During the time I have worked at Pixar, we have strived to provide what we

believe is an appropriate and best offer to candidates, rather than a lower offer that was subject to

negotiation.  After Pixar made an offer, if a candidate asked for a higher base salary, Pixar usually

declined to raise the offer.  Rather than raise the base salary offered to the candidate, Pixar

worked to educate the candidate about the total compensation and benefits package available at

Pixar, including the long-term incentive program, the film bonus program, and Pixar's other

benefits, including health and life insurance, child care, 401(k) plan, vacation and holiday pay,

and perquisites including parties, screenings, in-house educational opportunities, and campus

facilities such as the gym, pool, basketball court, and soccer field.

**D.     Adjustments to base salary and long-term incentive cash grants**

21.     Since at least the fall of 2004, Pixar has evaluated its base salary ranges in the fall

of each year.  Managers send to my department their recommendations for base salary increases

and long-term incentive grants for the employees in their respective departments before the

December holidays.  Along with senior management, I then review the managers'

recommendations.  We set final base salaries and long-term incentive cash grants for each

employee in January.  We communicate the information to employees in late February or early

March, and the new base salary levels go into effect retroactive to January 1st.

22.     It has been rare for Pixar to award an out-of-cycle base salary raise to an

incumbent employee.  There have been few instances in which an out-of-cycle base salary

increase has been awarded, and in each instance it was awarded to a single employee, within that

employee's base salary range, rather than to all employees who held that position.  It has been

more common, but still unusual, for Pixar to award a performance bonus out-of-cycle.  This has happened when an employee performs a job that is above his or her level; for example, a coordinator steps into a role as a leader of a group because the leader was out on leave.  In these circumstances, Pixar has given the employee a bonus at the end of the period in which she stepped into that role to recognize and thank her for her role.  These out-of-cycle performance bonuses have been paid on average approximately 20 times per year.

23.     Since I have worked at Pixar, we have not had a company-wide policy for responding to current employees who receive offers from other companies.  Any response has been subject to the discretion of each individual employee's manager in consultation with my department and senior management.  If an individual employee received greater compensation in response to an offer from another company, it would not have affected compensation throughout the company, or even within the employee's business unit, job family or salary range.  Rather, total compensation has been determined by analysis of market compensation, individual performance, and the success of our films as described above.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and that this declaration was signed on November 12, 2012 at Emeryville, California.

LORI MCADAMS

DECLARATION OF LORI MCADAMS IN SUPPORT OF DEFENDANTS' OPPOSITION TO
PLAINTIFFS' MOTION FOR CLASS CERTIFICATION
Case No. 3:11-cv-2509-LHK

# EXHIBIT 1





# EXHIBIT 25-27

# FILED UNDER SEAL