1            UNITED STATES DISTRICT COURT

2          NORTHERN DISTRICT OF CALIFORNIA

3              SAN JOSE DIVISION

4

5

6  IN RE: HIGH-TECH EMPLOYEE   )  C-11-02509 LHK
    ANTITRUST LITIGATION,      )

7                       )  SAN JOSE, CALIFORNIA
                       )

8                     )  JUNE 4, 2012
    ————————————————————————  )

9  THIS DOCUMENT RELATES TO:   )  PAGES 1-83
    ALL ACTIONS             )

10  ————————————————————————  )

11

12          TRANSCRIPT OF PROCEEDINGS
        BEFORE THE HONORABLE LUCY H. KOH

13        UNITED STATES DISTRICT JUDGE

14

15  A P P E A R A N C E S:

16  FOR THE PLAINTIFFS: SAVERI LAW FIRM
                    BY:  JOSEPH R. SAVERI

17                    255 CALIFORNIA STREET, SUITE 459
                    SAN FRANCISCO, CALIFORNIA  94111

18

19                    LIEFF, CABRASER,
                    HEIMANN & BERNSTEIN

20                    BY:  KELLY M. DERMODY
                      ANNE B. SHAVER

21                      DEAN M. HARVEY
                    275 BATTERY STREET, 30TH FLOOR

22                    SAN FRANCISCO, CALIFORNIA  94111

23         APPEARANCES CONTINUED ON NEXT PAGE

24

25  OFFICIAL COURT REPORTER: LEE-ANNE SHORTRIDGE, CSR, CRR
                    CERTIFICATE NUMBER 9595

1

APPEARANCES (CONTINUED)

```
FOR DEFENDANT        O'MELVENY & MYERS
APPLE:               BY:  GEORGE A. RILEY
                          MICHAEL F. TUBACH
                     TWO EMBARCADERO CENTER
                     28TH FLOOR
                     SAN FRANCISCO, CALIFORNIA  94111

FOR DEFENDANT        KEKER & VAN NEST
LUCASFILM:           BY:  DANIEL PURCELL
                     633 BATTERY STREET
                     SAN FRANCISCO, CALIFORNIA  94111

FOR DEFENDANT        MAYER BROWN
GOOGLE:              BY:  LEE H. RUBIN
                     TWO PALO ALTO SQUARE, SUITE 300
                     PALO ALTO, CALIFORNIA  94306

FOR DEFENDANTS       JONES DAY
ADOBE AND INTUIT:    BY:  DAVID C. KIERNAN
                     555 CALIFORNIA STREET
                     26TH FLOOR
                     SAN FRANCISCO, CALIFORNIA  94104

FOR DEFENDANT        BINGHAM MCCUTCHEN
INTEL:               BY:  FRANK M. HINMAN
                     1117 S. CALIFORNIA AVENUE
                     PALO ALTO, CALIFORNIA  94304

FOR DEFENDANT        COVINGTON & BURLING
PIXAR:               BY:  EMILY J. HENN
                     333 TWIN DOLPHIN DRIVE, SUITE 700
                     REDWOOD SHORES, CALIFORNIA  94065
```

```
 1    SAN JOSE, CALIFORNIA              JUNE 4, 2012
 2                  P R O C E E D I N G S
 3              (WHEREUPON, COURT CONVENED AND THE
 4    FOLLOWING PROCEEDINGS WERE HELD:)
 5              THE COURT:  OKAY.  SO WE'RE HERE FOR A
 6    CASE MANAGEMENT CONFERENCE.
 7              OH, I'M SORRY.  GO AHEAD AND CALL THE
 8    CASE.  SORRY ABOUT THAT.
 9              THE CLERK:  CALLING CASE NUMBER C-11-2509
10    LHK, IN RE: HIGH TECH EMPLOYEE ANTITRUST
11    LITIGATION.
12              COUNSEL, STATE YOUR APPEARANCES, PLEASE.
13              MR. SAVERI:  GOOD AFTERNOON, YOUR HONOR.
14    JOSEPH SAVERI, SAVERI LAW FIRM, ON BEHALF OF THE
15    PLAINTIFFS.
16              MS. DERMODY:  GOOD AFTERNOON, YOUR HONOR.
17    KELLY DERMODY WITH LEIF CABRASER.  WITH ME FROM MY
18    FIRM ARE DEAN HARVEY AND ANNE SHAVER FOR THE
19    PLAINTIFFS.
20              THE COURT:  OKAY.
21              MR. TUBACH:  GOOD AFTERNOON, YOUR HONOR.
22    MICHAEL TUBACH ON BEHALF OF APPLE.
23              THE COURT:  OKAY.  GOOD AFTERNOON.
24              MR. RILEY:  GOOD AFTERNOON, YOUR HONOR.
25    GEORGE RILEY ON BEHALF OF APPLE.
```

```
1              THE COURT:  GOOD AFTERNOON.

2              MR. KIERNAN:  GOOD AFTERNOON, YOUR HONOR.

3    DAVID KIERNAN ON BEHALF OF ADOBE AND ON BEHALF OF

4    INTUIT.

5              THE COURT:  OKAY.  GOOD AFTERNOON.

6              GIVE ME ONE SECOND TO JUST -- OKAY.

7    THANK YOU.

8              MR. HINMAN:  GOOD AFTERNOON, YOUR HONOR.

9    FRANK HINMAN REPRESENTING INTEL.

10             THE COURT:  OKAY.  GOOD AFTERNOON.

11             MR. PURCELL:  DAN PURCELL FROM

12   KEKER & VAN NEST REPRESENTING LUCASFILM.

13             THE COURT:  OKAY.  THANK YOU.

14             MS. HENN:  GOOD AFTERNOON, YOUR HONOR.

15   EMILY HENN FROM COVINGTON & BURLING REPRESENTING

16   PIXAR.

17             THE COURT:  OKAY.  GOOD AFTERNOON.

18             MR. RUBIN:  AND LEE RUBIN FROM

19   MAYER BROWN REPRESENTING GOOGLE.

20             THE COURT:  OKAY.  GOOD AFTERNOON.

21             MR. RUBIN:  GOOD AFTERNOON.

22             THE COURT:  OKAY.  SO WE'LL BE DOING BOTH

23   THE CASE MANAGEMENT CONFERENCE, AS WELL AS I'M

24   GOING TO RULE ON THE DISCOVERY ISSUE THAT WAS

25   DISCOVERY DISPUTE JOINT REPORT NUMBER 2 FOR
```

1      JUDGE LLOYD.  OKAY?

2                ALL RIGHT.  LET ME FIRST HEAR FROM THE

3      PLAINTIFFS.

4                OF THE PLAINTIFFS' EMPLOYMENT HISTORY AND

5      RECORDS THAT I ORDERED ON APRIL 18TH OF 2012, WHAT

6      HAS BEEN PRODUCED?

7                BECAUSE BASED ON WHAT I'VE READ, NOTHING

8      HAS BEEN PRODUCED THAT I ORDERED ON APRIL 18TH.  IS

9      THAT CORRECT?

10               MS. SHAVER:  YOUR HONOR, THIS MORNING WE

11     PRODUCED TWO OF THE FIVE PLAINTIFFS' SUPPLEMENTAL

12     INTERROGATORY RESPONSES.

13               WE'RE WORKING TO GET THE OTHER THREE OUT

14     AS FAST AS POSSIBLE IN THE NEXT COUPLE OF DAYS.

15               AND WE'VE ALSO BEEN --

16               THE COURT:  WELL, LET ME STOP YOU HERE A

17     SECOND, BECAUSE THIS IS JUNE 4TH.  I ORDERED THAT

18     ON APRIL 18TH.

19               WHY DID YOU WAIT UNTIL I SET A CASE

20     MANAGEMENT CONFERENCE ON SHORT ORDER TO DO THAT?

21               MS. SHAVER:  SURE, YOUR HONOR.

22               WE -- AFTER THE LAST CASE MANAGEMENT

23     CONFERENCE, WE MET AND CONFERRED WITH DEFENDANTS --

24               THE COURT:  WHAT IS THERE TO MEET AND

25     CONFER ABOUT?  I SAID PRODUCE IT.

1          MS. SHAVER:  ABOUT THE SCOPE --

2          THE COURT:  SO WHAT ARE YOU MEETING AND

3     CONFERRING ABOUT?

4          MS. SHAVER:  ABOUT THE SCOPE OF

5     PRODUCTION AND WHAT TIME PERIOD THEY WERE

6     INTERESTED IN.

7          AND WE REACHED AGREEMENT ON --

8          THE COURT:  I ALREADY RULED ON ALL OF

9     THAT ON APRIL 18TH.  I SAID THE TIME PERIOD FROM

10    HIGH SCHOOL ON.  I SAID ANY JOB, DELIVERING

11    NEWSPAPER.

12         I GUESS I DON'T UNDERSTAND.  WHAT ARE YOU

13    MEETING AND CONFERRING ON IF I'VE ALREADY RULED ON

14    THIS?

15         MS. SHAVER:  WE WERE MEETING AND

16    CONFERRING ON THE SCOPE OF OUR RESPONSES TO THEIR

17    INTERROGATORY REQUESTS.

18         THERE WERE A NUMBER OF --

19         THE COURT:  OKAY.  WHY DIDN'T YOU AT

20    LEAST PRODUCE THE RESUMES?  I ALREADY TOLD YOU,

21    WHATEVER YOU HAVE OF THESE PLAINTIFFS' RESUMES,

22    EMPLOYMENT RECORDS, I ORDERED THAT PRODUCED.  OKAY?

23         I'M NOT TALKING ABOUT AN INTERROGATORY

24    RESPONSE.  I SAID THEIR C.V.S, WHATEVER YOU HAVE,

25    PRODUCE IT.

1          AND YOU'RE TELLING ME THAT HAS NOT BEEN

2     PRODUCED YET ON JUNE 4TH, DESPITE MY APRIL 18TH

3     ORDER?

4          IS THAT YES OR NO?

5          MS. SHAVER:  THAT'S CORRECT.

6          THE COURT:  AND THEN YOU COME IN HERE

7     ASKING FOR A FOUR MONTH EXTENSION OF A SCHEDULE

8     THAT I SET BACK ON OCTOBER 26TH, WITH YOUR CONSENT,

9     WHICH YOU REAFFIRMED ON JANUARY 26TH AND ON

10    APRIL 18TH.

11         MR. SAVERI:  YOUR HONOR --

12         THE COURT:  SO TELL ME WHY I SHOULD DO

13    THAT WHEN YOU HAVEN'T EVEN COMPLIED WITH MY ORDER

14    OF APRIL 18TH ON SOME VERY BASIC INFORMATION, THE

15    C.V.S OF THE LEAD PLAINTIFFS IN THIS CASE.

16         MR. SAVERI:  WELL --

17         THE COURT:  I MEAN, WAS THERE ANYTHING

18    UNCLEAR ABOUT WHAT I ORDERED ON APRIL 18TH AS TO

19    THE LEAD PLAINTIFFS?

20         MR. SAVERI:  I --

21         THE COURT:  TELL ME WHAT WAS UNCLEAR THAT

22    YOU NEEDED TO MEET AND CONFER ABOUT AND THAT LED

23    YOU TO BELIEVE THAT I DIDN'T ORDER PRODUCTION OF

24    RESUMES AND C.V.S.

25         MR. SAVERI:  WE CAN TALK ABOUT THE

```
1    INTERROGATORIES.

2              BUT IN TERMS OF THE DOCUMENTS --

3              THE COURT:  NO.  ANSWER MY QUESTION.

4    WHAT WAS UNCLEAR ABOUT WHAT I HAD ORDERED ON

5    APRIL 18TH ABOUT PRODUCING THE C.V.S AND THE

6    RESUMES AND THE EMPLOYMENT HISTORIES OF THE LEAD

7    PLAINTIFFS?

8              MR. SAVERI:  YOUR HONOR, THERE WAS

9    NOTHING UNCLEAR ABOUT THAT.

10             THE COURT:  OKAY.  SO THEN WHY DIDN'T YOU

11   DO IT?

12             MR. SAVERI:  YOUR HONOR, IT'S -- WE --

13   THERE'S NO GOOD REASON FOR OUR DELAY, OTHER THAN

14   WHEN WE WENT TO THE PLAINTIFFS, WE WANTED TO TRY TO

15   GET ALL THE INFORMATION IN ONE, AT ONE TIME, AND IT

16   WAS PROBABLY A MISTAKE NOT TO GET, TO ROLL IT OUT

17   IN BITS AND PIECES AND TO GIVE IT TO THE DEFENDANTS

18   WHEN IT CAME IN.

19             THE COURT:  SO LET ME ASK, IN THIS CASE,

20   WHAT DOCUMENTS -- GIVE ME THE BATES NUMBERS OF HOW

21   MANY DOCUMENTS HAVE THE PLAINTIFFS PRODUCED IN THIS

22   CASE.

23             MR. SAVERI:  I --

24             THE COURT:  IS IT ONE?  WHAT'S THE BATES

25   NUMBER OF THE DOCUMENTS THAT THE PLAINTIFFS HAVE
```

1    PRODUCED IN THIS CASE?

2              MR. HARVEY:  YOUR HONOR, THIS IS

3    DEAN HARVEY.

4              I DON'T HAVE THE PRECISE BATES RANGE WITH

5    ME TODAY.

6              THE COURT:  UM-HUM.

7              MR. HARVEY:  BUT I WOULD GUESS IT'S

8    APPROXIMATELY 40 TO 50 PAGES.

9              THE COURT:  ALL RIGHT.  THIS IS WHAT I

10   WANT YOU TO DO.  I WANT YOU TO STEP OUTSIDE.  I

11   WANT YOU TO CALL YOUR OFFICE.

12             ARE YOU FROM LEIFF CABRASER?

13             MR. HARVEY:  YES.

14             THE COURT:  YOU CALL SOME ATTORNEY THAT'S

15   IN THE OFFICE UP IN SAN FRANCISCO AND YOU TELL ME

16   WHAT THAT BATES IS.  OKAY?  AND THEN YOU CAN REPORT

17   TO ME DURING THIS CMC.

18             MR. HARVEY:  OKAY.

19             THE COURT:  OKAY?  PLEASE STEP OUTSIDE.

20   I WANT THAT NUMBER.

21             DO YOU SEE WHY I'M FRUSTRATED?  YOU FILED

22   SOMETHING THAT GOES ON AND ON ABOUT DEFENDANTS

23   HAVEN'T PRODUCED THIS, DEFENDANTS HAVEN'T PRODUCED

24   THAT, AND YOU'VE PRODUCED 40 PAGES?  YOU HAVEN'T

25   EVEN PRODUCED WHAT I ORDERED YOU TO PRODUCE ON

1    APRIL 18TH.  OKAY?

2             YOU GOT THE D.O.J. DOCUMENTS ON

3    NOVEMBER 30TH, AND I WOULD SUSPECT THAT THE

4    JUICIEST DOCUMENTS ARE GOING TO BE IN THAT D.O.J.

5    PRODUCTION.

6             I LIFTED THE STAY OF DISCOVERY ON

7    JANUARY 26TH, FIVE MONTHS AGO.

8             AND THEN I READ THIS SAYING, "OH, WE

9    NEED, LIKE, YOU KNOW, UNTIL OCTOBER 26TH TO FILE

10   OUR CLASS CERT MOTION," AND THEN YOU CAN'T EVEN

11   PRODUCE WHAT I ORDERED YOU TO PRODUCE ON

12   APRIL 18TH?  THAT'S REALLY DISRESPECTFUL.

13            SO WHAT DO YOU HAVE TO SAY FOR YOURSELF?

14            MS. DERMODY:  YOUR HONOR --

15            THE COURT:  I'M REALLY NOT HAPPY, AT ALL.

16            MS. DERMODY:  I'M SORRY, YOUR HONOR.  IF

17   I MIGHT?  KELLY DERMODY FOR THE PLAINTIFFS.

18            I ADMIT I'M A BIT NEW TO THIS EVENT, THIS

19   CASE, BUT I CAN SAY THAT WE APOLOGIZE TO THE COURT

20   FOR THAT DELAY AND WE WILL MAKE SURE THOSE RESUMES

21   GET OUT THIS WEEK.  WE'LL MAKE THAT PRODUCTION

22   FORTHWITH.

23            THERE'S NOTHING MORE WE CAN SAY TO EXCUSE

24   THAT.

25            BUT I THINK THERE WAS SOME CONFUSION

1      ABOUT THE DEADLINE OF PRODUCTION BEING SOMEWHAT IN

2      ADVANCE OF -- OR FARTHER BACK FROM THIS DATE, AND

3      WE WERE WORKING TOWARDS THAT DATE WITH THE IDEA OF

4      GIVING DEFENDANTS ALL THE DOCUMENTS THEN,

5      RECOGNIZING THAT FOR THE DEFENDANTS --

6                  THE COURT:  BUT YOU EXPECT IT FROM THE

7      DEFENDANTS, TO DO A ROLLING PRODUCTION, AND TO GIVE

8      YOU THINGS IN APRIL AND IN MAY, BUT EVERYTHING OF

9      YOURS COULD WAIT UNTIL JUNE 15TH?

10                 MS. DERMODY:  YOUR HONOR, IF I MIGHT --

11                 THE COURT:  WHY IS THAT?  THAT'S A DOUBLE

12     STANDARD.  WHY IS THAT?

13                 AND THEN YOU'RE GRIPING THAT IT'S

14     JUNE 4TH AND THEY HAVEN'T GIVEN YOU EVERYTHING

15     YOU'RE ENTITLED TO AS OF JUNE 15TH, THAT THEY

16     HAVEN'T GIVEN IT TO YOU BY JUNE 4TH, AND YOU'VE

17     PRODUCED --

18                 TELL ME, WHAT WAS THE BATES NUMBER OF

19     WHAT THE PLAINTIFFS HAVE PRODUCED?  MR. HARVEY,

20     WHAT WAS THE BATES NUMBER?

21                 MR. SAVERI:  IT'S -- THE LAST ONE IS 181.

22                 THE COURT:  OKAY.  AND WHAT'S BEEN

23     PRODUCED SO FAR?

24                 MR. HARVEY:  THE DOCUMENTS DESCRIBED IN

25     DEFENDANTS' SECTION OF THE CASE MANAGEMENT

11

```
 1    CONFERENCE, WHICH ARE LARGELY PUBLIC DOCUMENTS.
 2              THE COURT:  PUBLIC DOCUMENTS OF WHOSE?
 3    THE DEFENDANTS' PUBLIC DOCUMENTS?
 4              MR. HARVEY:  DOCUMENTS THAT WERE FILED --
 5              THE COURT:  10-K'S OR 10-Q'S?  WHAT WAS
 6    IT?
 7              MR. HARVEY:  DOCUMENTS THAT WERE -- THAT
 8    WERE FILED IN THE DISTRICT COURT IN D.C., AS WELL
 9    AS PUBLIC NEWS ARTICLES.
10              THE COURT:  THAT'S THE ONLY THING THAT
11    THE PLAINTIFFS HAVE PRODUCED IN THIS CASE?
12              MR. HARVEY:  THE ONLY DOCUMENTS, CORRECT.
13              MR. SAVERI:  WE'VE ALSO THOUGH, YOUR
14    HONOR, WE HAVE -- THE DEFENDANTS DID -- ALMOST ALL
15    OF THE INFORMATION THAT IS --
16              THE COURT:  WELL, THE FIRST COMPLAINT WAS
17    FILED IN STATE COURT ON MAY 4TH, SO WE'RE GOING ON
18    13 MONTHS FROM NOW, OKAY?  CONSOLIDATED AMENDED
19    COMPLAINT FILED SEPTEMBER 13TH OF 2011.
20              SO YOU'RE TELLING ME, IN A CASE THAT IS
21    13 MONTHS OLD THAT YOU ALL INITIATED AS PLAINTIFFS,
22    THAT YOU HAVE PRODUCED A HUNDRED AND -- WHAT WAS
23    THE NUMBER? -- 181 PAGES OF PUBLIC DOCUMENTS AND
24    PRESS RELEASES?
25              AND THE PUBLIC DOCUMENTS BELONG TO WHOSE
```

1    FILINGS IN THE DISTRICT COURT ACTION?  THE

2    DEFENDANTS'?

3              MR. SAVERI:  NOT COMPLETELY, YOUR HONOR.

4    SOME OF THEM WERE THE DEFENDANTS' FILINGS.

5              SOME OF THE INFORMATION THAT WE PRODUCED

6    WAS MATERIAL THAT WE GATHERED IN CONNECTION WITH

7    THE FILING OF THE CASE, THE INVESTIGATION, AND SO

8    THAT -- SO THAT INFORMATION WAS NOT FROM THE

9    DEFENDANTS.  IT WAS PUBLICLY AVAILABLE INFORMATION.

10             SOME OF --

11             THE COURT:  SO WHAT WAS IT, FROM THE

12   D.O.J. AND FROM PRESS RELEASES?

13             MR. SAVERI:  D.O.J., PRESS RELEASES.

14             THERE'S ALSO SOME INFORMATION, I BELIEVE,

15   THAT WE GOT FROM THE INTERNET OR KIND OF PUBLIC

16   SOURCES LIKE THAT, WHICH WE -- I MEAN, WE DIDN'T --

17   IN TERMS OF THAT FILE, I MEAN, WE PRODUCED THAT

18   RIGHT AWAY.

19             NOW, YOUR HONOR, I MEAN --

20             THE COURT:  YES, BECAUSE IT'S

21   MEANINGLESS.  THEY ALREADY HAVE THOSE DOCUMENTS.

22   THEY WERE LITIGANTS IN THE D.C. COURT ACTION.  YOU

23   DON'T KNOW THEY ALREADY HAVE WHAT'S BEEN FILED IN

24   THE D.C. COURT ACTION?

25             MR. SAVERI:  YOUR HONOR, WE -- LOOK,

```
 1   FIRST, WE WANTED TO MAKE SURE THAT WITH RESPECT TO

 2   ANY MATERIALS THAT WE HAD IN CONNECTION WITH THE

 3   FILING OF THE CASE, WHETHER THEY WERE DEPARTMENT OF

 4   JUSTICE MATERIALS OR OTHER THINGS THAT THE

 5   ATTORNEYS GATHERED, THAT THOSE WERE PRODUCED EARLY

 6   WITHOUT ANY, WITHOUT ANY PROBLEM.

 7            WITH RESPECT TO THE PUBLIC -- THE

 8   INFORMATION REGARDING THE CLIENTS, YOUR HONOR, WE

 9   ANSWERED THE INTERROGATORIES THAT LARGELY PROVIDED

10   INFORMATION REGARDING THEIR EMPLOYMENT HISTORY, A

11   LOT OF INFORMATION THAT WE THINK IS BEYOND THE

12   SCOPE OF THE DISCOVERY IN THE CASE.

13            WE ARE GOING TO MAKE OUR PRODUCTION --

14            THE COURT:  LET ME ASK YOU, LET ME ASK

15   YOU, WHAT DOES ROLLING PRODUCTION MEAN, SUBSTANTIAL

16   COMPLETION OF ROLLING PRODUCTION?  DOES THAT MEAN

17   TO YOU THAT YOU ONLY ROLL ON JUNE 15TH?

18            MR. SAVERI:  NO, ABSOLUTELY --

19            THE COURT:  BECAUSE THAT'S WHAT IT'S

20   SOUNDING LIKE, THAT PLAINTIFFS THOUGHT YOU HAD

21   UNTIL JUNE 15TH TO PRODUCE PAGE 1 OF ANYTHING THAT

22   WASN'T ONE OF THE DEFENDANTS' PUBLIC DOCUMENTS.

23            MR. SAVERI:  ABSOLUTELY NOT, YOUR HONOR.

24            WE BELIEVE THAT WHAT A ROLLING PRODUCTION

25   MEANS IS THINGS -- AS WE CAN GATHER THEM IN
```

14

1    MEANINGFUL CHUNKS, WE WILL TURN THEM OVER TO THE

2    DEFENDANTS.

3            AND, YOUR HONOR, YOU KNOW, JUST FOCUSSING

4    ON THE MATERIAL THAT WE'VE PRODUCED, I THINK WE'RE

5    A LOT CLOSER WITH OUR PRODUCTION RIGHT NOW TO

6    HAVING COMPLETED OUR PRODUCTION OF THE DOCUMENTS

7    THAN THE DEFENDANTS ARE WITH RESPECT TO THEIRS.

8            NOW, WE WILL COMPLETE OUR PRODUCTION

9    BEFORE THE DEFENDANTS PRODUCE THEIRS.

10           AND WHEN YOU ASK ME WHAT A ROLLING

11   PRODUCTION MEANS, I THINK ONE OF THE THINGS IS

12   THAT, THAT WE WILL PRODUCE OUR MATERIAL AND WE WILL

13   COMPLETE THE PRODUCTION OF THAT MATERIAL BEFORE THE

14   DEFENDANTS COMPLETE THEIRS.

15           SO WE PERHAPS HAVE NOT PRODUCED AT THE

16   SAME -- AT EXACTLY THE SAME RATES AS THE

17   DEFENDANTS, BUT IN TERMS OF THE PERCENTAGE OF

18   COMPLETION, TRUST ME, YOUR HONOR, WE WILL HAVE

19   THAT --

20           THE COURT:  YES, BECAUSE YOU'RE GOING TO

21   HAVE, WHAT, 100 DOCUMENTS AT THE MOST?

22           MR. SAVERI:  NO, YOUR HONOR.

23           THE COURT:  MAYBE 100 PAGES AT THE MOST?

24           I MEAN, YOU KNOW, THAT ARGUMENT IS

25   COMPLETELY NOT PERSUASIVE, BECAUSE THE SCALE HERE

                                                      15

1    IS SO DIFFERENT.

2              YOU'RE ASKING FOR, WHAT, 12 YEARS OF DATA

3    ON ALL OF THE DEFENDANTS' EMPLOYEES, WHETHER

4    THEY'RE JANITORS, FACILITIES AND MAINTENANCE

5    WORKERS, WHETHER THEY'RE SECRETARIES, WHETHER

6    THEY'RE ENGINEERS, WHETHER THEY'RE EXECUTIVES.

7    YOU'RE ASKING FOR EVERYTHING.

8              YOU'VE GOT FIVE PLAINTIFFS AND SO FAR

9    YOU'VE ONLY COME UP WITH TWO INTERROGATORY

10   RESPONSES FOR TWO OUT OF THE FIVE AS OF JUNE 4TH,

11   AND I BET YOU IF I DIDN'T HAVE THE CASE MANAGEMENT

12   CONFERENCE TODAY, YOU WOULDN'T HAVE EVEN

13   SUPPLEMENTED THE INTERROGATORIES TODAY.

14             MR. SAVERI:  YOUR HONOR, I DON'T THINK

15   IT'S USEFUL TO -- WE PRODUCED WHAT WE PRODUCED

16   TODAY, AND WE WILL COMPLETE OUR PRODUCTION BEFORE

17   THE DEFENDANTS COMPLETE THEIRS.

18             WE ARE ALSO GOING TO END UP GOING FARTHER

19   BACK IN TIME THAN THE DEFENDANTS BECAUSE, OF

20   COURSE, YOU HAVE SAID -- AND WE HEARD YOU WHEN YOU

21   SAID THAT -- THAT WE WERE GOING TO GO BACK FAR INTO

22   THE EMPLOYMENT HISTORIES, EVEN BEYOND THE 12 --

23             THE COURT:  WELL, THEN, WHY ARE YOU

24   FIGHTING THEM?  WHY ARE YOU FIGHTING THEM AND

25   SAYING, "NO, ONLY COLLEGE AND IT'S ONLY HIGH SCHOOL

1   IF IT'S RELEVANT TO THE CURRENT JOB"?

2            THAT'S NOT WHAT I SAID ON APRIL 18TH.  SO

3   WHY ARE YOU LIMITING MY ORDER OF APRIL 18TH?

4            MR. SAVERI:  YOUR HONOR, WE'RE GOING TO

5   COMPLY WITH YOUR ORDER.  WE'RE GOING TO COMPLY.

6            AND WE HAVE -- WE RESPECTFULLY --

7            THE COURT:  BY WHEN?  BY WHEN?  IT'S

8   JUNE 4TH.  I ORDERED THAT ON APRIL 18TH AND YOU'RE

9   IN HERE WHINING AND CRYING ABOUT THE DEFENDANTS'

10  PRODUCTIONS IN APRIL AND MAY NOT BEING SUFFICIENT

11  AND YOU HAVEN'T EVEN PRODUCED ANYTHING OTHER THAN

12  PUBLIC DOCUMENTS AND DOCUMENTS FROM THE DISTRICT

13  COURT LITIGATION THAT THEY ALREADY HAVE.  THEY WERE

14  ALREADY LITIGANTS IN THAT CASE.

15           MR. SAVERI:  YOUR HONOR, OBVIOUSLY YOU'RE

16  RIGHT.  WE WILL GET THAT PRODUCED AND WE WILL GET

17  IT PRODUCED BEFORE JUNE 15TH.  IN FACT, WE'RE GOING

18  TO GET MOST OF IT PRODUCED IN THE NEXT WEEK OR SO,

19  BUT WE WILL ROLL THAT OUT.

20           AND YOU'RE RIGHT THAT THE PRODUCTION IS

21  GOING TO BE LESS FOR THE PLAINTIFF THAN THE

22  DEFENDANTS.  YOU ARE RIGHT ABOUT THAT.

23           BUT WE WILL COMPLETE THAT PRODUCTION --

24           THE COURT:  YOU'RE COMING IN HERE WITH

25  UNCLEAN HANDS.  DO YOU KNOW THAT?  YOU'RE COMING IN

1   HERE WITH UNCLEAN HANDS AND ASKING FOR THEIR

2   PRODUCTION TO BE EXPEDITED.  IT'S NOT ENOUGH AND

3   YOU HAVEN'T EVEN PRODUCED ANYTHING BEYOND PRESS

4   RELEASES.

5           MR. SAVERI:  YOUR HONOR, IF I MAY?

6           SO, YOUR HONOR, YOU'VE SET A JUNE 15TH

7   DEADLINE FOR THE COMPLETION OF THE PRODUCTION OF

8   DOCUMENTS IN THIS CASE, JUNE 15TH, AND WE'RE GOING

9   TO MEET THAT, AND WE'LL PROBABLY BEAT THAT.

10          THE COURT:  SO WHY DIDN'T YOU TELL ME ON

11  APRIL 18TH, WHEN I MADE THAT ORDER, THAT YOU HAD NO

12  INTENTION OF COMPLYING WITH MY ORDER UNTIL

13  JUNE 15TH?

14          MR. SAVERI:  BECAUSE, YOUR HONOR, THAT'S

15  NOT TRUE, AND IT WOULDN'T HAVE BEEN -- IT WOULD

16  HAVE BEEN UNTRUE IF I WERE TO HAVE SAID THAT

17  BECAUSE WE'RE, WE'RE GOING TO COMPLY WITH THE ORDER

18  AND DO IT IN A TIMELY MANNER.

19          AND WITH, WITH ALL RESPECT --

20          THE COURT:  DO YOU THINK IT'S -- OKAY.

21  SO YOU THINK YOU'VE ALREADY BEEN TIMELY IN

22  COMPLIANCE WITH MY APRIL 18TH ORDER?

23          MR. SAVERI:  NO, YOUR HONOR.  I THINK WE

24  HAVE NOT PRODUCED IT IN AS TIMELY A MANNER AS WE

25  COULD HAVE OR SHOULD HAVE AND WE CERTAINLY COULD

1    HAVE DONE IT FASTER, AND WE WILL PICK UP THE PACE

2    AND WE WILL DO IT SOON.

3            AND IF YOU WANT SOME KIND OF COMMITMENT

4    FROM US, FROM US TO DO IT IN SOME SHORTER PERIOD OF

5    TIME --

6            THE COURT:  WELL, I'M JUST NOT GOING TO

7    GIVE YOU AN EXTENSION ON YOUR CLASS CERT.  EITHER

8    YOU'RE READY OR YOU'RE NOT.

9            YOU HAVE HAD D.O.J. DOCUMENTS SINCE

10   NOVEMBER 30TH.  I LIFTED THE STAY OF DISCOVERY ON

11   JANUARY 26TH.

12           YOU HAVE PRODUCED NO DOCUMENTS BEYOND

13   PRESS RELEASES AND DISTRICT COURT LITIGATION

14   DOCUMENTS.  OKAY?

15           SO I AM NOT PERSUADED BY YOUR CLAIM THAT

16   YOU NOW NEED UNTIL OCTOBER 26TH.

17           NOW, LET ME HEAR, WHAT AMOUNT OF THIS

18   DELAY THAT YOU NEED UNTIL OCTOBER 26TH TO FILE YOUR

19   CLASS CERT MOTION IS BECAUSE YOUR CLASS DEFINITION

20   IS INCLUDING EVERYONE, INCLUDING JANITORS,

21   FACILITIES MAINTENANCE PEOPLE, SECRETARIES,

22   EVERYONE, EVERYONE BEYOND SCIENTISTS AND ENGINEERS?

23           MR. SAVERI:  YOUR HONOR, I THINK THAT

24   THERE'S A VERY LITTLE CONNECTION BETWEEN THOSE TWO

25   ISSUES, AND --

1          THE COURT:  LET ME ASK FROM THE

2     DEFENDANTS, WHAT PERCENTAGE OF YOUR EMPLOYEES --

3     AND I'M SURE THE NUMBER IS GOING TO VARY, BUT GIVE

4     ME A RANGE -- ARE SCIENTISTS AND ENGINEERS VERSUS

5     ALL OF THE OTHER CATEGORIES OF EMPLOYEES?  DO YOU

6     KNOW WHAT THAT RANGE IS?

7          MR. TUBACH:  MICHAEL TUBACH, YOUR HONOR,

8     FOR APPLE.

9          I'M AFRAID I DON'T HAVE A PRECISE ANSWER

10    FOR YOU, BUT THEY'VE ASKED FOR EVERYBODY, SO WE'VE

11    GIVEN THEM EVERYONE.  WE DIDN'T BREAK IT DOWN -- IN

12    THE DATA IT'S OBVIOUSLY BROKEN DOWN BY WHAT

13    EMPLOYMENT THEY HOLD, BUT WE HAVEN'T SEPARATELY

14    GONE BACK AND FIGURED OUT WHO'S AN ENGINEER, WHO'S

15    A SECRETARY, WHO'S A JANITOR.

16          THE COURT:  OKAY.

17          MR. TUBACH:  SORRY ABOUT THAT.

18          THE COURT:  OKAY.  LET ME HEAR FROM THE

19    PLAINTIFFS, WHAT IS YOUR EVIDENCE THAT THESE

20    BILATERAL AGREEMENTS PERTAINED TO ALL EMPLOYEES

21    BEYOND SCIENTISTS AND ENGINEERS?

22          MR. SAVERI:  THE -- THE EVIDENCE THAT WE

23    HAVE, AND WE HAVEN'T COMPLETED -- THE DEFENDANTS

24    HAVE NOT COMPLETED THE PRODUCTION TO DATE, BUT THE

25    EVIDENCE THAT WE HAVE -- THE AGREEMENTS -- THE

                                                      20

1    EVIDENCE THAT WE HAVE SO FAR INCLUDES EVIDENCE THAT

2    THE AGREEMENTS WERE MARKET-WIDE.

3              AND ONE OF THE THINGS THAT WE WANT TO DO

4    WITH THE DATA, YOUR HONOR --

5              THE COURT:  AND HOW DO YOU DEFINE THE

6    MARKET?

7              MR. SAVERI:  THE MARKET -- ONE -- IT'S

8    ALL -- THE WAY WE DEFINED IT IN THE COMPLAINT IS

9    ALL SALARIED EMPLOYEES.  WE DIDN'T -- WE EXCLUDED

10   EXECUTIVES, YOU KNOW, AND PEOPLE AT THE TOP OF THE

11   COMPANY.

12             ONE OF THE THINGS THAT WE NEED TO DO WITH

13   THE DATA IS TO ADD -- IS TO ADDRESS THE VERY

14   QUESTION YOU'RE ASKING, YOUR HONOR.

15             SO ONE OF THE THINGS THAT WE NEED TO DO

16   WITH THE DATA IS TO LOOK AT IT AND TO SEE WHAT

17   IMPACT AND TO SEE WHAT KIND OF MEASURE OF IMPACT ON

18   THE MARKET FOR EMPLOYEES FOR THESE COMPANIES THAT

19   THESE AGREEMENTS HAD.

20             AND THAT'S ONE OF THE THINGS WE'RE GOING

21   TO DO AT TRIAL.  WE NEED TO GET THE DATA TO HELP

22   ADDRESS THE VERY SPECIFIC QUESTION YOU'RE ASKING,

23   WHICH IS, WHAT IS THE CLASS IN THIS CASE?

24             NOW, WHEN WE STARTED THE CASE, YOUR

25   HONOR, WE DIDN'T HAVE ANY ACCESS TO THAT DATA, OF

1    COURSE.  WE BASED IT ON WHAT KIND OF ANECDOTAL AND

2    DESCRIPTIVE EVIDENCE WE HAD AT THE TIME, AND WE

3    KNEW THAT IN CONNECTION WITH CLASS CERTIFICATION,

4    YOU WERE GOING TO ASK THE VERY QUESTION YOU'RE

5    ASKING, WHICH IS, WHO'S THE CLASS?  IS THERE ONE

6    CLASS?  ARE THERE SMALLER CLASSES?

7            AND WE NEED THAT DATA TO HELP ANSWER THAT

8    QUESTION.

9            AND WHAT WE'RE GOING TO DO WITH THE DATA

10   IS COMPARE IT TO THE ANECDOTAL EVIDENCE THAT WE

11   HAVE, WHICH IS THE EVIDENCE FROM THE DEFENDANTS'

12   FILES OF THE AGREEMENTS ABOUT WHO SAID WHAT TO

13   WHOM, AND WE'RE GOING TO LOOK AT THAT WITH THE

14   DATA.

15           AND WHEN WE DO THAT, WE'RE GOING TO MAKE

16   A MOTION FOR CLASS CERTIFICATION THAT IS GOING TO

17   BE AS SPECIFIC AS WE CAN OF WHAT THE CLASS SHOULD

18   BE BASED ON WHAT WE THINK THE DATA SHOWS.

19           AND SO WHEN YOU ASK ME WHAT -- TO WHAT

20   EXTENT ARE THE DATA PROBLEMS RELATED TO THE SCOPE

21   OF THE CLASS, THEY ARE RELATED IN THIS WAY:  WE ARE

22   LOOKING AT THE DATA TO, AMONG OTHER THINGS,

23   DETERMINE THE SCOPE OF THE CLASS, AND WE NEED THE

24   DATA TO DO THAT.

25           AND -- WE NEED THE DATA, AND IT'S NOT

1   JUST DATA FROM ONE OF THE COMPANIES.  WE NEED DATA

2   FROM A NUMBER OF THE COMPANIES BECAUSE THAT HELPS

3   ANSWER THE QUESTION THAT YOU ASKED, WHICH IS A

4   BASIC QUESTION, WHICH WE AGREE WITH, WHAT IS THE

5   RIGHT SCOPE OF THE CLASS IN THIS CASE?

6           THE COURT:  TO WHAT EXTENT ARE THE DELAYS

7   CAUSED BY YOUR LEAVING LIEFF CABRASER AND THERE

8   BEING INTERNAL FIGHTING WITHIN LIEFF CABRASER AS TO

9   WHETHER THIS CASE IS GOING TO YOUR FIRM OR STAYING

10  WITH LIEFF CABRASER?

11          MR. SAVERI:  YOUR HONOR, I DON'T BELIEVE

12  THERE'S REALLY BEEN ANY SIGNIFICANT DELAY IN --

13          THE COURT:  BUT THERE'S BEEN SOME CAUSED

14  BY THAT?

15          MR. SAVERI:  YOUR HONOR, ON THE -- THE --

16  PERHAPS THE DAY I LEFT THERE WERE AN ISSUE ABOUT --

17  WE HAD TO SORT OUT RESPONSIBILITY AT THE

18  LIEFF CABRASER FIRM AFTER THE CHANGE IN FIRM.

19          BUT IN TERMS OF THE -- OF WHAT'S BEEN

20  GOING ON IN THE CASE, I THINK IT'S FAIR TO SAY THAT

21  IT'S BEEN RELATIVELY SEAMLESS.  THERE'S BEEN NO

22  EVIDENCE OF ANY FIGHTING.

23          FOR TRANSITIONS IN THIS BUSINESS, I THINK

24  IT'S BEEN REMARKABLY SEAMLESS AND COLLEGIAL.

25          AND WE ARE FOCUSSED -- AND I THINK MY

1    COLLEAGUE, KELLY DERMODY, CAN ATTEST TO THIS --

2    WE'VE BEEN REALLY FOCUSSED ON PROTECTING THE

3    CLIENTS' INTEREST HERE AND NOT OUR OWN ECONOMIC

4    INTERESTS.

5          SO I THINK GIVEN THE WAY THESE THINGS CAN

6    GO, I THINK IT'S BEEN REMARKABLY SEAMLESS AND

7    COLLEGIAL.

8          AND WE HAVE A LOT OF WORK TO DO IN THE

9    CASE HERE, AND I THINK WE ARE BOTH FOCUSSED ON

10    THAT.

11          AND I -- I'M NOT GOING TO SAY TO YOU,

12    YOUR HONOR, THAT PROBLEMS WITH COMPLIANCE WITH YOUR

13    ORDER, FOR EXAMPLE, HAVE ANYTHING TO DO WITH THE

14    CHANGE IN CIRCUMSTANCE OF THE LEAD COUNSEL.  THAT'S

15    OUR RESPONSIBILITY AND I -- AND I -- AND I'M

16    PREPARED TO ACCEPT RESPONSIBILITY FOR IT.  SO I

17    WANT TO BE VERY CLEAR ABOUT THAT.

18          SO WE HAVE ISSUES THAT HAVE TO DO WITH

19    THE -- WITH WHETHER WE'RE GOING TO SATISFY AND BE

20    ABLE TO MEET THE SCHEDULE THAT HAVE TO DO LARGELY

21    WITH THE PRODUCTION OF DATA IN THE CASE.

22          I THINK THAT WHEN WE WERE HERE IN APRIL

23    IN FRONT OF YOUR HONOR, WE WERE JUST BEGINNING TO

24    GET AND UNDERSTAND --

25          THE COURT:  LET ME ASK YOU SOMETHING.

1    LOOKING AT THIS DISCOVERY DISPUTE NUMBER 2, WHAT

2    ARE YOU SO AFRAID OF?  DO THESE PLAINTIFFS HAVE

3    SOMETHING BAD IN THEIR EMPLOYMENT HISTORY?  THAT'S

4    THE ONLY THING I CAN THINK OF WITH HOW HARD YOU ARE

5    FIGHTING TO GET ANY OF THEIR FORMER DISCIPLINARY

6    RECORDS OR ANYTHING ELSE.

7              I'M THINKING, JUST LIKE I THOUGHT WITH

8    THE D.O.J. WHEN THE DEFENDANTS FOUGHT TO PRODUCE

9    THAT D.O.J., THAT THERE MUST BE SOMETHING JUICY IN

10   THESE FIVE LEAD PLAINTIFFS, BECAUSE ONE OF THE

11   DECISIONS I HAVE TO MAKE TO DETERMINE WHETHER

12   THEY'RE LEAD PLAINTIFFS IS IF THEY HAVE ANY

13   INDIVIDUAL DEFENSES, AND THE ONLY WAY THAT I CAN

14   FIND THAT OUT IS BY KNOWING THEIR FULL EMPLOYMENT

15   HISTORY AND RECORD AND IF THERE WAS ANYTHING ABOUT

16   THESE PARTICULAR INDIVIDUALS THAT WOULD NOT MAKE

17   THEM SATISFACTORY REPRESENTATIVE PLAINTIFFS BECAUSE

18   THEY MAY HAVE THEIR OWN DISCIPLINARY PROBLEMS, THEY

19   MAY HAVE THEIR OWN H.R. PROBLEMS.

20             AND THE DEFENDANTS ARE ENTITLED TO GET

21   THAT INFORMATION FROM SOMEONE OTHER THAN YOUR

22   CLIENTS WHO HAVE PRODUCED ZERO FOR A YEAR THAT'S

23   BEEN FILED, A CASE THAT'S BEEN FILED 13 MONTH AGO.

24             MR. SAVERI:  OKAY.

25             THE COURT:  OKAY?  SO I DON'T UNDERSTAND,

1   WHY ARE YOU FIGHTING THIS AFTER I ISSUED THE ORDER

2   ON APRIL 18TH THAT THE DEFENDANTS HAVE A RIGHT TO

3   LOOK AT THE LEAD PLAINTIFFS' EMPLOYMENT HISTORY,

4   EMPLOYMENT RECORDS?

5            THEY MAY NOT BE ELIGIBLE FOR ANY INCREASE

6   IN THEIR SALARY.  THEY MAY NOT HAVE BEEN ONE OF THE

7   ONES THAT WOULD HAVE BEEN SOLICITED BY A COMPETITOR

8   BECAUSE THEY MAY HAVE HAD PERFORMANCE PROBLEMS.

9   THE DEFENDANTS ARE ENTITLED TO KNOW THAT.

10           SO WHY ARE YOU FIGHTING THIS?  HOW DO YOU

11  WANT ME TO MAKE THE DETERMINATION ABOUT WHETHER

12  THESE POTENTIAL LEAD PLAINTIFFS HAVE INDIVIDUAL

13  DEFENSES THAT WAS MAKE THEM INAPPROPRIATE LEAD

14  PLAINTIFFS IF THEY CAN'T GET THIS INFORMATION?

15           THEY'VE GOTTEN NONE OF THIS INFORMATION

16  FROM YOU, BY THE WAY.

17           BUT ALSO, AN EMPLOYER WILL HAVE MORE

18  INFORMATION.  AN EMPLOYEE WILL HAVE DIFFERENT

19  INFORMATION THAN AN EMPLOYEE HAS, AND I WOULDN'T BE

20  SURPRISED IF AN EMPLOYEE IS SELECTIVE ABOUT WHAT

21  INFORMATION THEY HAND OVER TO THEIR ATTORNEYS AND

22  WANT TO PRODUCE IN THIS CASE, FOR EXACTLY THE

23  REASONS THAT YOU'RE SAYING, PRIVACY, STIGMA OR

24  WHATEVER.

25           BUT AN EMPLOYER IS GOING TO HAVE A MORE

1    COMPLETE RECORD.

2              SO WHY ARE YOU FIGHTING THIS?

3              BECAUSE I'M ACTUALLY GRANTING DEFENDANTS'

4    MOTION.  GO FORWARD WITH THOSE SUBPOENAS TO THIRD

5    PARTIES, ALL THE PRIOR EMPLOYERS OF THESE

6    EMPLOYEES, BECAUSE THAT'S WAY WE'RE GOING TO FIND

7    OUT IF THESE ARE APPROPRIATE LEAD PLAINTIFFS IN

8    THIS CASE.

9              SO TELL ME, WHY ARE YOU FIGHTING THIS?

10             MS. DERMODY:  YOUR HONOR, IF I MIGHT,

11   KELLY DERMODY FOR THE PLAINTIFFS.

12             HAVING SPENT MY ENTIRE CAREER AS AN

13   EMPLOYMENT LAWYER, THIS COMES UP IN MY CASES, MY

14   CLASS ACTIONS ALL THE TIME, AND THE CHALLENGE HERE

15   REALLY IS NOT WHETHER THERE'S SOME SECRET SKELETON

16   IN THE CLOSET FOR THESE PLAINTIFFS.

17             IT'S ABOUT THEIR EMPLOYABILITY WITH THEIR

18   CURRENT EMPLOYER OR FUTURE PROSPECTIVE EMPLOYERS

19   AND IT'S AN INTIMIDATING, HARASSING TACTIC WHEN THE

20   ACTUAL INFORMATION THAT'S BEING SOUGHT HAS ALREADY

21   BEEN AGREED TO BE PRODUCED BY THE PLAINTIFFS.

22             ONE OF THE THINGS THE DEFENDANTS HAVE NOT

23   SAID TO US IS THAT THEY NEED TO GET THIS

24   INFORMATION FROM THIRD PARTIES BECAUSE THEY DON'T

25   HAVE WHAT THEY NEED YET.

1          IT'S ALL STILL UP IN THE AIR AS TO

2     WHETHER THEY'LL HAVE --

3          THE COURT:  THAT'S BECAUSE YOU PRODUCED

4     NOTHING EVEN THOUGH I ORDERED THE PRODUCTION ON

5     APRIL 18TH.  OKAY?  SO YOU'RE KIND OF YOUR OWN --

6     YOU'VE WOUNDED YOURSELF, OKAY?

7          IF YOU HAD MADE A COMPLETE PRODUCTION

8     EARLIER, THEN THEY MAY NOT HAVE HAD TO SEEK THIS

9     INFORMATION FROM THIRD PARTIES.

10          BUT BECAUSE YOU PRODUCED ZILCH IN A CASE

11     THAT WAS FILED 13 MONTHS AGO, THAT'S WHY WE'RE IN

12     THIS PICKLE NOW.

13          MS. DERMODY:  WELL, YOUR HONOR, THAT'S A

14     FAIR OBSERVATION, BUT IT'S NOT WHAT THEY PRESENTED

15     TO US, AND IF THEY'D LET US ACTUALLY PRODUCE THE

16     DOCUMENTS AND SAID TO US "WE'RE NOT COMFORTABLE

17     WITH WHAT YOU'VE PRODUCED, WE THINK THERE'S MORE

18     HERE," WE COULD HAVE HAD A COUPLE OF OPTIONS.

19          WE COULD HAVE HAD THE PLAINTIFFS HAVE A

20     CHANGE TO FIGURE OUT HOW TO GET FROM THEIR CURRENT

21     EMPLOYERS, VOLUNTARILY, INFORMATION TO GIVE TO THEM

22     IF IT WASN'T SUFFICIENT, OR WE COULD HAVE TRIED TO

23     WORK OUT SOME WAY THAT WAS LESS INTIMIDATING AND

24     HARASSING THAN PEOPLE THAT ARE VERY SCARED IN THIS

25     MARKET THAT WHEN THEIR EMPLOYERS GET A SUBPOENA,

1    THAT THAT PUTS A MARK ON THEM TO BE FIRED.

2            THE COURT:  THESE PEOPLE HAVE ALREADY A

3    MARK.  THEY'VE SUED, LIKE, SEVEN DIFFERENT OF THE

4    BIGGEST EMPLOYERS IN THE VALLEY.

5            IF YOU'RE SAYING THEY THOUGHT THEY WERE

6    GOING TO BE ANONYMOUS AND NOBODY WOULD EVER LEARN

7    ANYTHING ABOUT THEM -- THEY'VE ALREADY SAID "I WANT

8    TO BE LEAD PLAINTIFFS IN THIS SUIT."

9            MS. DERMODY:  YEAH, BUT --

10           THE COURT:  SO IT -- I DON'T KNOW.  THIS,

11   "OH MY GOSH, I NOW NEED MY PRIVACY PROTECTED," IF

12   YOU PUT YOURSELF OUT THERE AS A LEAD PLAINTIFF,

13   UNFORTUNATELY, THEN YOU DO HAVE TO GO THROUGH QUITE

14   A BIT OF DISCOVERY INTO YOUR OWN PERSONAL

15   CIRCUMSTANCES.

16           MS. DERMODY:  WHAT WE'VE HEARD FROM SOME

17   OF THE SUBPOENA RECIPIENTS IS THEY HAD NO IDEA

18   THESE PEOPLE WERE IN THE LAWSUIT.

19           THE COURT:  THIS WAS ON THE CBS EVENING

20   NEWS, OKAY?

21           MS. DERMODY:  I UNDERSTAND, YOUR HONOR.

22           THE COURT:  PEOPLE IN CHINA IN TECH ARE

23   TALKING ABOUT THIS CASE.

24           I'M NOT PERSUADED.  OKAY?  IF YOU SIGN UP

25   TO BE A LEAD PLAINTIFF, UNFORTUNATELY, THERE IS

29

1    SOME DISCOVERY YOU'RE GOING TO HAVE TO BE SUBJECT

2    TO.

3              MS. DERMODY:  AND WE'VE AGREED TO PRODUCE

4    EVERYTHING THEY'VE WANTED ABOUT THEIR FORMER

5    EMPLOYERS.

6              I THINK THE ONLY QUESTION, YOUR HONOR,

7    WAS WHETHER THE THIRD PARTY FORMER EMPLOYERS OR

8    CURRENT EMPLOYERS SHOULD BE SUBJECT TO THIS TYPE OF

9    DISCOVERY.

10             AND IF YOUR HONOR IS INCLINED TO ALLOW

11   THE SUBPOENAS TO GO FORWARD --

12             THE COURT:  YES, I AM.  I'M ALLOWING THEM

13   TO GO FORWARD.  THIS MOTION IS GRANTED.

14             MS. DERMODY:  I WOULD JUST ADD, YOUR

15   HONOR, IF THERE'S ANY MOVEMENT THERE AT ALL, IT'S

16   JUST IN THE CURRENT EMPLOYERS.  IF THERE WAS AN

17   OPPORTUNITY FOR US TO AT LEAST LIMIT THE SUBPOENAS

18   TO FORMER EMPLOYERS AND TO HAVE THEM PRODUCE

19   INFORMATION ABOUT THEIR CURRENT EMPLOYMENT

20   THEMSELVES AND TO HOLD IN ABEYANCE THOSE SUBPOENAS

21   PENDING SOME OPPORTUNITY FOR US TO MEET AND CONFER

22   WITH THE DEFENDANTS AFTER THEY'VE SEEN DOCUMENTS TO

23   DETERMINE WHETHER THEY HAVE TO GO THROUGH THE

24   PROCESS OF SERVING CURRENT EMPLOYERS.

25             THAT'S THE ONE AREA THAT'S INCREDIBLY

1    SENSITIVE FOR THE CLIENTS, AND THE CASE LAW WOULD

2    SUGGEST --

3              THE COURT:  BECAUSE YOU'RE SAYING THE

4    CURRENT EMPLOYERS DON'T KNOW ABOUT THIS LAWSUIT?

5              MS. DERMODY:  IN MANY CASES, NO, THEY

6    DON'T KNOW ABOUT IT, AND BECAUSE OF THE POTENTIAL

7    IN A CURRENT EMPLOYMENT RELATIONSHIP, WHICH IS WHAT

8    THE CASE LAW TALKS ABOUT, OF THEM BEING MARKED AS A

9    LITIGANT OR A LITIGIOUS PERSON MEANS THAT THEIR

10   CURRENT EMPLOYER --

11             THE COURT:  OKAY, BUT THAT'S SEPARATE.

12             ONCE YOU SAY "I WANT TO BE LEAD PLAINTIFF

13   IN THIS LAWSUIT AGAINST, WHATEVER, SEVEN OR EIGHT

14   COMPANIES IN THE VALLEY," PEOPLE ARE GOING TO KNOW

15   THAT YOU'RE A LEAD PLAINTIFF IN THIS CASE.

16             I GUESS I JUST -- I STILL DON'T SEE HOW

17   ALL THESE FOLKS ARE GOING TO BE SHROUDED IN

18   ANONYMITY WHEN THERE ARE ONLY FIVE LEAD PLAINTIFFS

19   IN THIS VERY HIGH PROFILE CASE.

20             MR. SAVERI:  YOUR HONOR, WE'VE MADE OUR

21   BEST CASE AS TO WHY THIS MATERIAL SHOULD BE

22   PROTECTED AND WHY WE SHOULD TRY TO TAKE STEPS,

23   WHICH WE BELIEVE IN GOOD FAITH ARE LEGITIMATE BASED

24   ON THE CASE LAW, TO TRY TO PROCEED WITH THIS

25   DISCOVERY IN A NON-DUPLICATIVE, LESS INVASIVE WAY,

1    AND WE HAVE NOTHING ELSE TO ADD.

2              WE WILL COMPLY WITH YOUR ORDER AND WE

3    WILL --

4              THE COURT:  WHEN?

5              MR. SAVERI:  WE WILL DO IT IN A TIMELY --

6              THE COURT:  WHEN?  I NEED A DATE.  FROM

7    NOW ON I UNDERSTAND THE WAY I HAVE TO DEAL WITH

8    YOU.  I HAVE TO GIVE YOU DEADLINES FOR EVERYTHING.

9              WHEN ARE YOU GOING TO DO THAT?

10             MR. SAVERI:  WITH RESPECT TO THE THIRD

11   PARTIES, WE DON'T -- THAT'S NOT IN OUR CONTROL.

12             THE COURT:  WHEN ARE YOU GOING TO PRODUCE

13   THE INFORMATION THAT I ORDERED ON APRIL 18TH FROM

14   YOUR PUTATIVE LEAD PLAINTIFFS?  WHEN IS THAT GOING

15   TO BE PRODUCED?

16             MS. DERMODY:  WE CAN TELL YOUR HONOR, WE

17   CAN PRODUCE THE RESUMES TOMORROW.

18             IN TERMS OF THE OTHER DOCUMENTS, THERE

19   WERE ESI ISSUES, THERE WERE A NUMBER OF DATABASES

20   THAT OUR CLIENTS THEMSELVES ARE ON, SO WE HAD TO

21   ACTUALLY COLLECT ELECTRONIC DATA AND DO BOOLEAN

22   WORD SEARCHES AND THINGS LIKE THAT TO MAKE SURE.

23             WE WERE ACTUALLY GOING THROUGH A

24   RELATIVELY LARGE AMOUNT OF E-MAIL FROM CLIENTS AND

25   WE'RE WORKING THROUGH THAT.  I MEAN, AS WE SPEAK,

1    WE'RE WORKING THROUGH THAT.  THAT PROBABLY IS IN

2    THE NEXT WEEK.

3              THE COURT:  WELL, THE SUBSTANTIAL

4    COMPLETION DATE IS JUNE 15TH, SO THAT'S YOUR DROP

5    DEAD DEADLINE.

6              MR. SAVERI:  ABSOLUTELY, YOUR HONOR.

7              THE COURT:  SO IF YOU'RE SAYING MAYBE IN

8    A WEEK, TOO BAD.  IF IT DOESN'T COME IN BY

9    JUNE 15TH, I MAY DO SOME KIND OF PRECLUSIVE ORDER

10   AND SANCTION.

11             MS. DERMODY:  ABSOLUTELY, YOUR HONOR.

12   BEFORE JUNE 15TH, IT'LL BE PRODUCED.  IT'S A MATTER

13   OF WHETHER IT'LL BE THIS FRIDAY OR NEXT MONDAY

14   REALLY IS WHAT WE'RE TALKING ABOUT.

15             THE COURT:  SO ARE YOU GOING TO WAIT

16   UNTIL THE LAST DATE?  TELL ME WHEN YOU'RE GOING TO

17   PRODUCE YOUR E-MAIL.

18             MR. SAVERI:  WE ARE GOING TO START

19   PRODUCING E-MAIL IN THE --

20             THE COURT:  I WANT A DATE.  YOU'VE LOST

21   MY TRUST.  FROM NOW ON, EVERYTHING YOU DO, YOU'RE

22   GOING TO COMMIT TO ME A DATE.  OKAY?

23             MR. SAVERI:  I'M LOOKING AT --

24             THE COURT:  AND IF YOU DON'T COMPLY WITH

25   THE DATE, I'M GOING TO ASK THE DEFENDANTS TO LET ME

33

1    KNOW AND I MAY SANCTION YOU, OKAY?  BECAUSE I'M NOT

2    GOING TO LITIGATE THIS CASE WITH YOU ALL.

3              MR. SAVERI:  YOUR HONOR, SO WE WILL -- WE

4    CAN START MAKING A ROLLING PRODUCTION OF SOME CHUNK

5    OF THE DATA EITHER BY -- ON FRIDAY, WHICH IS --

6              THE COURT:  JUNE 8TH.

7              MR. SAVERI:  -- THE 8TH, OR THE 11TH.

8              AND WE WILL -- AND WE WILL START ROLLING

9    IT.  AND WE WILL -- WE WILL GIVE THEM CHUNKS OF

10   MATERIAL AS IT IS AVAILABLE.

11             AND I HOPE THAT WE WILL GET IT ALL DONE

12   BEFORE THE 15TH, BUT WE'LL START PRODUCING

13   THINGS -- THIS IS GOING TO -- JUST TO WE'RE CLEAR

14   ABOUT THIS --

15             THE COURT:  ALL RIGHT.  THIS IS WHAT I

16   WANT.  ON JUNE THE 18TH --

17             MR. SAVERI:  THE 18TH, OR THE --

18             THE COURT:  THE 18TH, YOU'RE GOING TO

19   FILE -- JUNE 18TH, YOU'RE GOING TO FILE A

20   DECLARATION THAT YOU DID COMPLETE YOUR PRODUCTION

21   ON JUNE 15TH.

22             MR. SAVERI:  OKAY.  AND YOUR HONOR --

23             THE COURT:  AND THAT YOU MET THE

24   JUNE 5TH DEADLINE FOR THE RESUMES, YOU MADE THE

25   JUNE 8TH DEADLINE FOR STARTING THE PRODUCTION.

1          MR. SAVERI:  OKAY.  ABSOLUTELY, YOUR

2     HONOR.

3          AND -- I TRUST, AND I HOPE, THAT WHEN

4     WE'RE DONE WITH THAT, YOU WILL KNOW THAT WE ARE NOT

5     TAKING THIS LIGHTLY AND WE ARE ACCEPTING -- YOU

6     KNOW, WE'RE TAKING THIS SERIOUSLY.

7          SO I CAN ONLY SAY --

8          THE COURT:  I DON'T GET THAT SENSE.

9          MR. SAVERI:  OKAY.  AND I UNDERSTAND

10    THAT.

11         THE COURT:  YOU'VE HAD VERY LITTLE TO

12    PRODUCE AND YOU HAVEN'T PRODUCED IT AND YOU'VE BEEN

13    BREATHING DOWN THE DEFENDANTS' BACKS TO GIVE YOU

14    MEGABYTES AND TERABYTES OF INFORMATION AND YOU

15    HAVEN'T EVEN RECIPROCATED WITH RESUMES.  I MEAN,

16    HOW LONG COULD FIVE PEOPLE'S RESUMES TAKE TO

17    PRODUCE?

18         MR. SAVERI:  OKAY.

19         MS. DERMODY:  YOUR HONOR, IT MAY HAVE

20    BEEN A MISTAKEN IMPRESSION ABOUT THE IMPACT OF

21    TIMING ON THE RELATIVE PARTIES.

22         FOR US, THE IMPACT OF THE DATA TIMING HAS

23    AN ENORMOUS IMPACT IMMEDIATELY ON OUR ABILITY TO DO

24    OUR CLASS CERT BRIEFING, WHEREAS THE IMPACT OF

25    PRODUCING, AS YOU HAVE IDENTIFIED, A RELATIVELY

1    SMALL UNIVERSE OF PLAINTIFF DOCUMENTS DOESN'T

2    PREJUDICE DEFENDANTS.

3           AND IT DOESN'T EXCUSE NOT PRODUCING MORE

4    RAPIDLY THAN WE HAVE, BUT WE WEREN'T

5    ANTICIPATING --

6           THE COURT:  YOU DON'T THINK THEY WANT TO

7    DO FOLLOW-UP DEPOSITIONS?  IF THEY'VE GOT SOMETHING

8    JUICY ON ONE OF YOUR FIVE, YOU DON'T THINK THEY'RE

9    GOING TO TRY TO FOLLOW UP WITH A DEPOSITION OR

10    FOLLOW UP WITH FURTHER DISCOVERY?

11           MR. SAVERI:  YOUR HONOR, WE'VE ALREADY

12    AGREED TO SCHEDULE THE DEPOSITION DATES.  WE

13    OFFERED THE PLAINTIFFS FOR A DEPOSITIONS EVEN

14    BEFORE THERE WAS ANY FORMAL REQUEST.

15           THE COURT:  NO.  I'M SAYING THEY MAY HAVE

16    OTHER THIRD PARTY DISCOVERY THEY WANT TO DO BASED

17    ON WHAT YOU PRODUCE.

18           MR. SAVERI:  OKAY.

19           THE COURT:  IF THEY FIND OUT THAT ONE OF

20    YOUR FIVE GOT FIRED FROM A PREVIOUS EMPLOYER, YOU

21    DON'T THINK THEY WANT TO FOLLOW UP ON THAT?

22           MR. SAVERI:  I AM SURE THAT THEY WOULD

23    WANT TO FOLLOW UP ON IT, YOUR HONOR.

24           THE COURT:  UM-HUM.

25           MR. SAVERI:  AT SOME POINT IN TIME -- I

1     MEAN, THERE'S NOTHING -- YOU ASKED A QUESTION ABOUT

2     SKELETONS IN THE CLOSET.

3               THE COURT:  THEIR DATE FOR OPPOSITION

4     CURRENTLY IS AUGUST 2ND.

5               MR. SAVERI:  YES.

6               THE COURT:  AND SO YOU'RE SAYING, "WELL,

7     WE COULD JUST PRODUCE ON JUNE 15TH OR A LITTLE BIT

8     LATER AND IT WOULD BE FINE FOR THEM BECAUSE THEY

9     DON'T REALLY HAVE THAT MUCH TO DO AFTER THEY GET

10    OUR DISCOVERY AND IT'S SUCH A SMALL, DISCRETE

11    AMOUNT."

12              THAT'S THE ARGUMENT I JUST HEARD.

13              MS. DERMODY:  YOUR HONOR, I PROBABLY

14    DIDN'T STATE THAT VERY WELL.

15              I THINK IT'S MORE WHEN WE ARE TALKING

16    ABOUT THE CONCERN WE HAD WITH THE SCHEDULE TODAY

17    AND WE COME INTO COURT TO SAY THERE'S BEEN A

18    CHALLENGE FOR US WITH THE DATA THAT IMPACTS OUR

19    CLASS CERTIFICATION READINESS.

20              WE WERE NOT TRYING TO SAY THAT DEFENDANTS

21    THEMSELVES HAVE BEEN TARDY AND NOT DILIGENT IN

22    GETTING THINGS TO US.  IT'S JUST A MATTER OF THE

23    AMOUNT OF DATA AND THE WAY IT HAS ROLLED OUT HAS

24    PUT US IN A POSITION WHERE WE REALIZE THAT IN ORDER

25    FOR US TO IDENTIFY THE PROPER CLASS, DO THE PROPER

1    ANALYSIS AND TO MEET OUR LEGAL STANDARD, WE HAD TO

2    COME FORWARD AND ASK THE COURT FOR MORE TIME.

3            WE HAVE NOT HEARD FROM THE DEFENDANTS

4    THAT OUR SCHEDULE OF PRODUCING DOCUMENTS HAS PUT

5    THEM INTO A SIMILAR POSITION.

6            AND WE REGRET VERY MUCH THE IMPRESSION

7    WE'VE LEFT WITH THE COURT THAT WE DIDN'T TAKE IT

8    SERIOUSLY.

9            WE DID NOT INTEND TO DO ANYTHING TO

10   PREJUDICE DEFENDANTS AND WE THOUGHT BY GOING

11   THROUGH ALL OF THE DOCUMENTS AT ONCE AND GIVING

12   THEM TO THEM BEFORE THE DEADLINE, THAT FOR THEM,

13   THAT TIMING WOULD BE SUFFICIENT.

14           WE CAN SEE YOUR HONOR HAS QUESTIONS ABOUT

15   THAT.  THESE WEREN'T QUESTIONS RAISED BY THE

16   PARTIES IN THE CASE, SO WE HAD NOT ADDRESSED THOSE

17   IN THAT CONTEXT.

18           THE COURT:  WELL, I'M NOT PERSUADED

19   BECAUSE YOU TRIED TO SHUT THEM DOWN WITH THIRD

20   PARTIES AS WELL.  YOU'RE SHUTTING THEM DOWN WITH

21   THIRD PARTIES AND THEN YOU'RE NOT PRODUCING WITH

22   THE PLAINTIFFS, SO I DON'T SEE HOW YOU INTENDED

23   THEM TO MOVE FORWARD WITH THEIR DISCOVERY ON

24   WHETHER THESE PLAINTIFFS CAN ACTUALLY BE

25   REPRESENTATIVE AND APPROPRIATE LEAD PLAINTIFFS.

 1              SO AS FAR AS DISCOVERY DISPUTE JOINT

 2      REPORT NUMBER 2, THE THIRD PARTY SUBPOENAS ARE

 3      ALLOWED TO GO FORWARD AND YOU DON'T NEED TO RAISE

 4      THAT ISSUE WITH JUDGE LLOYD.

 5              I THINK THAT INFORMATION IS HIGHLY

 6      PROBATIVE AND IS RELEVANT AND THE CONCERNS RAISED

 7      BY THE PLAINTIFFS ARE MINIMIZED BY VIRTUE OF THE

 8      FACT THAT THESE ARE ALREADY FIVE INDIVIDUALS WHO

 9      HAVE AGREED TO BE LEAD PLAINTIFFS IN THIS CASE.

10              SO THIRD PARTY SUBPOENAS WILL PROCEED.

11              NOW, OF ALL THE VARIOUS THINGS THAT THE

12      PLAINTIFFS ALLEGE HAVE NOT PRODUCED BY THE

13      DEFENDANTS, LET ME HEAR -- THE DEFENDANTS ARE GOING

14      TO COME UP AND SAY "WE THOUGHT WE HAD UNTIL

15      JUNE 15TH, THAT IS THE SUBSTANTIAL COMPLETION DATE,

16      WE'VE BEEN MAKING ROLLING PRODUCTIONS."

17              WHY IS THAT NOT GOOD ENOUGH?  IT'S GOOD

18      ENOUGH FOR YOU, BUT IT'S NOT GOOD ENOUGH FOR THEM?

19              MR. SAVERI:  WELL, YOUR HONOR, BECAUSE --

20              THE COURT:  YEAH.

21              MR. SAVERI:  I'M SORRY.  I DIDN'T MEAN TO

22      INTERRUPT YOU.

23              THE REASON THAT -- WE KNOW NOW WHAT WE'RE

24      UP AGAINST WITH -- UP AGAINST WITH RESPECT TO THE

25      DATA PRODUCTION.

1          AND WE ARE NOT SAYING THAT THE DEFENDANTS

2     HAVE BEEN DILATORY.

3          WHAT WE ARE SAYING IS THAT IT'S A LOT OF

4     HARD WORK AND WE KNOW, GIVEN WHAT WE NEED TO DO AND

5     TO ANSWER THE QUESTIONS THAT WE BELIEVE ARE

6     LEGITIMATE QUESTIONS, ONE OF WHICH YOU'VE ALREADY

7     ASKED, WHICH IS, WHAT IS THE CLASS, THAT WE NEED

8     TIME TO UNDERSTAND THE DATA AND TO ANALYZE IT AND

9     TO MAKE OUR MOTION.

10          AND WE COME TO YOUR HONOR NOW AS --

11     WITHOUT HAVING HAD THE PRODUCTION OF THE DATA

12     COMPLETE, BUT KNOWING THAT WE DO NEED SOME RELIEF

13     FROM THE SCHEDULE.

14          AND WE -- WE THOUGHT THAT IT WOULD BE

15     MORE PRUDENT TO COME TO YOU, YOUR HONOR, AND RAISE

16     THE ISSUE NOW BEFORE THE DEADLINE HAD EXPIRED

17     BECAUSE THIS -- AND THAT WOULD BE THE BEST WAY TO

18     PROCEED AND WE COULD TRY TO PUT THIS OUT IN THE

19     OPEN, TO DESCRIBE TO YOU AS CLEARLY AS POSSIBLE

20     WHAT LOGISTICAL PROBLEMS WE ARE DEALING WITH AND

21     TRY TO GET SOME GUIDANCE FROM THE COURT ON IT.

22          WE'RE JUST TRYING TO ANTICIPATE THE

23     PROBLEM, ANY POTENTIAL PROBLEMS AND HEAD THEM OFF

24     RATHER THAN TO HAVE TO ADDRESS THEM AFTER THE FACT,

25     AND THAT'S WHY WE NEED THE SCHEDULE EXTENDED.

1          MS. DERMODY:  AND YOUR HONOR, IF I MIGHT

2     JUST ADD, AT THE APRIL 18TH CMC, THE LAST TIME YOU

3     MET WITH THE PARTIES, THE DATA HAD -- WAS JUST

4     STARTING TO BE PRODUCED, HAD NOT EVEN BEEN

5     UPLOADED, THE EXPERTS HADN'T LOOKED AT IT.  WE HAD

6     NO IDEA WHAT THE UNIVERSE WAS OF DATA.

7          SO AS WE STARTED TO LOOK AT THE DATA

8     ITSELF AND UNDERSTAND ALL OF THE QUESTIONS THAT

9     CAME UP, ALL OF THE DATA THAT WAS MISSING -- WHICH

10     IS AN ONGOING PROCESS.  I MEAN, DATA IS STILL BEING

11     PRODUCED RIGHT NOW -- AND REALIZING THAT UNTIL WE

12     HAVE RELIABLE DATA FROM ALL OF THE DEFENDANTS THAT

13     CAN BE ANALYZED TOGETHER, WE AREN'T IN A POSITION

14     TO ACTUALLY PRESENT TO YOUR HONOR AN APPROPRIATE

15     ANALYSIS.

16          AND WE DIDN'T HAVE THAT ABILITY TO TELL

17     THE COURT THAT, OR REALLY TO ANTICIPATE THAT, ON

18     APRIL 18TH BECAUSE, AGAIN, WE DIDN'T KNOW WHAT THE

19     DATABASES LOOKED LIKE.  WE DIDN'T KNOW THE VOLUME

20     OF DATA.  IT HAS BEEN A MASSIVE UNDERTAKING.

21          AND NOW THAT WE'RE REALLY QUITE AWARE AND

22     ALERT TO THE CHALLENGES OF THAT DATA, WE ARE

23     FINALLY IN A POSITION TO COME TO THE COURT WITH A

24     MUCH BETTER UNDERSTANDING OF HOW FAR WE HAVE TO GO

25     TO GET TO THAT PLACE TO GIVE THE COURT A COHERENT

1    ANALYSIS.

2              THE COURT:  THE THINGS THAT YOU STATE

3    THAT YOU NEED TIME FOR CAN CERTAINLY BE OVERLAPPING

4    VERSUS JUST CONSECUTIVELY DONE.

5              MR. SAVERI:  ABSOLUTELY, YOUR HONOR.

6              AND IF YOU LOOK AT THE TASKS THAT WE

7    DESCRIBE, WE'RE NOT ASKING FOR YOU TO ADD ALL THE

8    WEEKS TOGETHER AND GIVE US SOMETHING THAT ADDS UP

9    TO 28 WEEKS.

10             WE BELIEVE THAT A NUMBER OF THESE TASKS

11   ARE OVERLAPPING.

12             BUT AGAIN, YOUR HONOR, WE WANTED TO BE AS

13   CLEAR AS POSSIBLE ABOUT WHAT WE'RE ACTUALLY DOING.

14             THE COURT:  ALL RIGHT.  LET ME HEAR FROM

15   THE DEFENDANTS.

16             I AM INCLINED TO GIVE A LITTLE BIT OF

17   TIME TO THE PLAINTIFFS, BUT NOWHERE NEAR WHAT

18   THEY'VE REQUESTED.  LET ME HEAR WHAT YOUR VIEW IS

19   ON HOW MUCH ADDITIONAL TIME THE PLAINTIFFS SHOULD

20   BE GIVEN.

21             MR. TUBACH:  GOOD AFTERNOON, YOUR HONOR.

22   MICHAEL TUBACH.

23             WE DON'T THINK THE PLAINTIFFS, FRANKLY,

24   SHOULD GET ANY MORE TIME.  AS THE COURT NOTED, THE

25   COURT SET THE SCHEDULE SEVERAL MONTHS AGO, AND

1      THEIR PRIMARILY ARGUMENT NOW SEEMS TO BE THEY HAD

2      NO IDEA HOW MUCH DATA THEY WOULD BE GETTING, WHICH

3      IS -- IT DOESN'T REALLY FLY.

4              WE ARE ALMOST ALL PUBLIC COMPANIES.  A

5      NUMBER OF OUR EMPLOYEES ARE PUBLIC.

6              WE'VE BEEN NEGOTIATING WITH THE

7      PLAINTIFFS FOR WEEKS.  WE NEGOTIATED EXACTLY HOW

8      MUCH DATA THEY WERE INSISTING ON GETTING.  THEY

9      DIDN'T WANT JUST THE FIVE YEAR PERIOD OF THE CLASS

10     AS THEY DEFINED IT.  THEY WANTED FOUR YEARS BEFORE

11     THEN AND TWO YEARS AFTER.

12             AND WE SPENT WEEKS NEGOTIATING HOW MANY

13     FIELDS OF DATA THEY WANTED, AND THEY'VE GOTTEN

14     EXACTLY WHAT THEY ASKED FOR.

15             SO TO COME IN NOW, FRANKLY, AND SAY THAT

16     THE AMOUNT OF DATA IS A SURPRISE IS JUST NOT

17     CREDIBLE.  THEY HAVE KNOWN EXACTLY HOW MUCH DATA

18     THEY WOULD BE GETTING AND THIS IS WHAT THEY'VE

19     GOTTEN.

20             THEY KNEW ON APRIL 18 WHAT THEY HAD

21     GOTTEN.  THEY HAD GOTTEN -- THEY'VE HAD SOME OF OUR

22     EMPLOYMENT DATA FOR TWO MONTHS NOW.  THEY GOT IT

23     BEFORE THE APRIL 18 CMC.

24             AND THEY'VE HAD WELL OVER 90 PERCENT,

25     PROBABLY IN THE HIGH 90 PERCENT OF COMPENSATION

1    DATA SINCE MAY 9TH, SINCE THE COURT ORDERED US,

2    PARTICULARLY APPLE, TO PRODUCE ALL OF OUR

3    COMPENSATION RECRUITING DATA BY MAY 9TH, AND WE MET

4    THAT DEADLINE.

5            AND THE DEFENDANTS PRODUCED VIRTUALLY ALL

6    OF THAT COMPENSATION DATA, WITH THE EXCEPTION OF

7    SOME.  AS THE PLAINTIFFS NOTED, THERE WERE SOME

8    ERRORS AND OMISSIONS THAT HAPPENED AND WE'VE GONE

9    BACK AND FIXED THOSE.

10           AND SO THEY'VE HAD LOTS OF TIME TO LOOK

11   AT WHAT DATA THEY KNEW THEY WOULD BE GETTING.

12           THE PROBLEM WITH MOVING THE SCHEDULE,

13   YOUR HONOR, IS THAT THE COURT ALREADY, IN OCTOBER,

14   SET A VERY TIGHT DEADLINE TO MOVE THIS CASE TO

15   TRIAL IN JUNE OF 2013.

16           I WENT BACK AND LOOKED AT THE SCHEDULE

17   AND IT IS A VERY TIGHT SCHEDULE, AND THE COURT

18   WANTED THAT BECAUSE IT SAID IT WANTED TO MOVE THE

19   CASE FORWARD AND IT WANTED TO MAKE SURE THAT WE

20   MOVE FROM ONE STEP TO THE OTHER AS EXPEDITIOUSLY AS

21   POSSIBLE.

22           SO WHAT WE HAVE AS A RESULT IS A HEARING

23   ON CLASS CERTIFICATION ON SEPTEMBER 20TH, AND THEN

24   EXPERT REPORTS DUE, INITIAL EXPERT REPORTS DUE IN

25   DECEMBER, FACT DISCOVERY CUT OFF IS BEFORE THEN,

1    THEY HAVE THEIR EXPERT REPORTS DUE DECEMBER 14TH,

2    AND OUR REBUTTAL REPORTS ARE GOING TO BE DUE

3    JANUARY 4TH.

4              IF WE MOVE CLASS CERT EVEN, EVEN ONE

5    MONTH, THAT SCHEDULE BECOMES ENTIRELY UNWORKABLE

6    BECAUSE THAT MEANS THE COURT WILL BE HAVING A

7    HEARING ON CLASS CERT ON OCTOBER 20TH, AND THE

8    COURT'S GOING TO NEED SOME TIME TO RULE, AND THAT

9    MEANS WE'RE THEN SOMEWHERE IN NOVEMBER, AND TO BE

10   ABLE -- AND WHERE WE DON'T EVEN KNOW, IS THERE A

11   CLASS?  HOW BIG IS THE CLASS?  WHAT DOES IT CONSIST

12   OF?

13             WE CAN'T POSSIBLY PREPARE OUR EXPERT

14   REPORTS TO BE READY -- THESE ARE EXPERT REPORTS FOR

15   TRIAL -- TO BE READY TO GO TO TRIAL AND SAY THIS IS

16   WHY THE CLASS, IF YOU EVEN CERTIFY ONE, SHOULDN'T

17   GO FORWARD, IT DOESN'T MAKE SENSE, WHY THERE'S NO

18   LIABILITY AND WHY THERE CAN'T POSSIBLY BE DAMAGES.

19             WE CAN'T REALLY UNDERTAKE THAT WORK, AND

20   FRANKLY, SHOULDN'T HAVE TO SPEND THE MONEY TO SORT

21   OF GUESS AT WHERE THE COURT MIGHT BE GOING IN TERMS

22   OF WHAT THE CLASS WILL BE, IF ANY.

23             OF COURSE, WE'RE HOPEFUL AND CONFIDENT WE

24   CAN CONVINCE THE COURT THERE SHOULDN'T BE A CLASS

25   CERTIFIED AT ALL BECAUSE YOU CAN'T PROVE COMMON

1    IMPACT.  YOU CAN'T PROVE IMPACT WITH COMMON

2    EVIDENCE.

3              BUT CERTAINLY ON A SCHEDULE THAT GIVES

4    THEM EVEN A MONTH, IT MAKES THE WHOLE REST OF THE

5    SCHEDULE ENTIRELY UNWORKABLE.

6              THE COURT:  ALL RIGHT.  DO YOU WANT TO

7    RESPOND TO THAT?  BECAUSE I'M NOT MOVING THE TRIAL

8    DATE, SO SOMETHING HAS GOT TO GIVE.

9              MR. SAVERI:  YOUR HONOR, A COUPLE POINTS.

10             FIRST, ON THE DATA, IT'S NOT JUST

11   STRICTLY THE SIZE OF THE DATA, BUT EVEN -- I THINK

12   MR. TUBACH ALERTED TO THE FACT THAT THERE ARE A

13   NUMBER OF QUESTIONS THAT WE HAVE TO ADDRESS WITH

14   RESPECT TO THE QUALITY OF THE DATA, WHAT HE CALLED

15   ERRORS AND OMISSIONS, THAT WE NEED TO FIGURE OUT IN

16   ORDER TO DO THE ANALYSIS.

17             SO WHILE WE MAY HAVE KNOWN WHAT WE'VE

18   ASKED FOR IN TOTO, ACTUALLY ROLLING UP OUR SLEEVES

19   AND WORKING WITH THE DATA IS SOMETHING DIFFERENT,

20   AND THAT'S WHAT WE'VE DONE AND WE'VE BEEN DILIGENT

21   IN THAT, IN TRYING TO ASK QUESTIONS AND TO SORT

22   THAT OUT.

23             AND I HAVE -- AND I'M NOT SAYING THAT THE

24   DEFENDANTS HAVE NOT RESPONDED.  I THINK WE'VE

25   WRITTEN QUESTIONS AND THEY'VE ANSWERED THEM.

1          WITH RESPECT TO THE SCHEDULE, YOUR HONOR,

2     I THINK WE HAVE TWO CHOICES WHICH WE PROPOSED TO

3     YOUR HONOR.  ONE WOULD BE TO KEEP THE TRIAL DATE

4     AND SHIFT THE CLASS CERTIFICATION SCHEDULE WITHIN

5     THE ESTABLISHED SCHEDULE AND TO KEEP THE TRIAL

6     DATE.

7          THE OTHER OPTION WOULD BE TO ESSENTIALLY

8     SLIDE THE KEY DATES AND KEEP THE SEQUENCE OF EVENTS

9     AS WAS SET ORIGINALLY BY THE COURT.

10          THOSE ARE THE TWO OPTIONS.

11          THE COURT:  SO JUST KEEP YOUR DEADLINE

12    JUNE 28TH?

13          MR. SAVERI:  I'M SORRY, YOUR HONOR?

14          THE COURT:  JUST KEEP THE HEARING ON

15    SEPTEMBER 20TH?  JUST KEEP THE DATES AS SET?

16          MR. SAVERI:  NO, YOUR HONOR.  WHAT WE ARE

17    SAYING IS WE WOULD LIKE THE CLASS CERTIFICATION

18    SCHEDULE, ALL THOSE DATES TO SLIP SOME PERIOD OF

19    TIME TO GIVE US AN OPPORTUNITY TO DO THE WORK.

20          THERE ARE TWO OPTIONS.  ONE IS TO KEEP

21    THAT SCHEDULE, TO KEEP THE REST OF THE KEY DATES IN

22    THE SCHEDULE, THAT IS, THE SUMMARY JUDGMENT MOTION,

23    THE TRIAL DATE.

24          ANOTHER WOULD BE TO ESSENTIALLY SHIFT THE

25    SCHEDULE BY WHATEVER TIME YOU THINK IS APPROPRIATE

1    TO GIVE THE PLAINTIFFS THE OPPORTUNITY THEY NEED TO

2    ADDRESS AND TO UNDERSTAND THE DATA THAT HAS LARGELY

3    BEEN PRODUCED, BUT NOT COMPLETELY PRODUCED.

4             THE COURT:  YOU KNOW, YOU REALLY HAVE

5    SHOT YOURSELF IN THE FOOT.  I WOULD HAVE BEEN MUCH

6    MORE AMENABLE TO THIS HAD YOU NOT COME IN WITH

7    UNCLEAN HANDS.  I'M JUST NOT THAT OPEN TO IT.

8             MR. SAVERI:  YOUR HONOR, I APOLOGIZE --

9             THE COURT:  IF YOU HAVEN'T DONE YOUR

10   PART, THEN I'M NOT GOING TO PENALIZE THESE FOLKS

11   FOR PRODUCING TERABYTES AND TERABYTES OF DATA AND

12   YOU HAVEN'T EVEN PRODUCED A C.V. THAT WAS ORDERED

13   ON APRIL 18TH.

14            MR. SAVERI:  YOUR HONOR, ALL I -- I WOULD

15   SAY TWO THINGS.  AGAIN, I APOLOGIZE FOR NOT HAVING

16   DONE THIS IN A MORE PROMPT WAY.

17            BUT I THINK THAT WE CAN -- I MEAN, IN

18   THESE CASES, WHICH ARE COMPLEX CASES, THE SCHEDULES

19   FREQUENTLY SHIFT -- AND WE DON'T WANT TO DO THIS IN

20   A WAY THAT PREJUDICES ANYBODY.

21            WHAT WE'RE TRYING TO DO IS APPROACH THIS

22   IN A WAY THAT GIVES EVERYBODY AN OPPORTUNITY TO BE

23   HEARD AND TO HAVE THE INFORMATION THEY NEED TO

24   RESOLVE THIS CASE ON THE MERITS.

25            AND ALL I CAN SAY IS I REGRET THE FACT

1    THAT THE MATERIAL HASN'T BEEN PRODUCED MORE

2    QUICKLY, AND ALL I CAN DO IS COMMIT TO YOU THAT I

3    WILL MAKE SURE THAT IT DOES IN THE FUTURE.

4              AND I UNDERSTAND THAT YOU'VE SAID THAT IF

5    I DON'T, I'LL PAY THE PRICE FOR IT, AND I'M READY

6    TO DEAL WITH THAT.

7              BUT AT THE END OF THE DAY, YOUR HONOR, I

8    THINK IT'S MORE IMPORTANT FOR US TO KEEP OUR EYE ON

9    THE ULTIMATE ISSUE HERE, WHICH IS THE PARTIES

10   SHOULD HAVE AN OPPORTUNITY TO RESOLVE THIS ON THE

11   MERITS AND EVERYBODY SHOULD HAVE AN OPPORTUNITY TO

12   HAVE THE INFORMATION THEY NEED TO DO THAT.

13             THAT'S ALL I CAN SAY.

14             THE COURT:  WELL, I FIND WHAT MR. TUBACH

15   SAID PERSUASIVE.  IF THE CLASS CERT HEARING, IN ITS

16   BROADEST CASE SCHEDULE, ONLY GAVE BASICALLY TWO

17   MONTHS AND TEN DAYS FOR A FACT DISCOVERY CUT OFF --

18   SO SEPTEMBER 20TH WAS THE HEARING, FACT DISCOVERY

19   CUT OFF WAS NOVEMBER 30TH.

20             THE MORE YOU PUSH THE CLASS CERT HEARING

21   BACK, THEN YOU'RE JUST LIMITING THE TIME FOR FACT

22   DISCOVERY.

23             AND MY GUESS IS THIS IS GOING TO BE A

24   VERY COMPLEX CLASS CERT MOTION, SO I WOULD NEED AT

25   LEAST, AT LEAST PROBABLY A MONTH TO GET THE ORDER

1    OUT.

2              SO THEN IT'S JUST FURTHER CONDENSING AND

3    REDUCING THE TIME BEFORE FACT DISCOVERY CUT OFF.

4              MR. SAVERI:  YOUR HONOR --

5              THE COURT:  I'M NOT PERSUADED BY THAT.

6              MR. SAVERI:  YOUR HONOR, IF I MAY?

7              THE COURT:  YEAH.

8              MR. SAVERI:  THERE ARE PLENTY OF CASES

9    WHERE THE CLASS CERTIFICATION IS DONE AT THE END OF

10   THE DISCOVERY CUT OFF, SO THERE IS -- THERE'S NO

11   NECESSARY LINKAGE BETWEEN THE CLASS CERTIFICATION

12   SCHEDULE ITSELF AND MERITS DISCOVERY.

13             I MEAN, WE HAVE -- I THINK WE'VE

14   CONTEMPLATED ALL THE WAY ALONG IN THIS CASE, YOUR

15   HONOR, THAT THERE WOULD BE MERITS DISCOVERY THAT

16   WOULD BE GOING ON WHILE CLASS CERTIFICATION WAS

17   BEING BRIEFED, AND INDEED, WHILE IT WAS UNDER

18   SUBMISSION WITH THE COURT.

19             SO I DON'T THINK THERE'S ANY NECESSARY

20   REASON WHY THE -- WHY MOVING THE CLASS

21   CERTIFICATION SCHEDULE REALLY WOULD AFFECT THE

22   ABILITY TO --

23             THE COURT:  I'M NOT GOING TO DO IT THAT

24   WAY.  I'M NOT GOING TO DO CLASS CERT AT THE END OF

25   THE CASE.

1            MR. SAVERI:  YOUR HONOR, I WOULD AGREE

2      THAT'S THE MORE TRADITIONAL WAY TO DO IT.  I'M JUST

3      SUGGESTING THAT RECENTLY, THERE ARE OTHER -- COURTS

4      HAVE APPROACHED IT DIFFERENTLY.

5            (PAUSE IN PROCEEDINGS.)

6            THE COURT:  ALL RIGHT.  THIS IS ONE

7      PROPOSAL:  WE KEEP THE SEPTEMBER 20TH HEARING DATE;

8      I'LL GIVE A THREE WEEK EXTENSION TO JULY 19TH; THE

9      DEFENDANTS WOULD HAVE FOUR WEEKS, OR A MONTH, FOR

10     OPPOSITION, AUGUST 16TH; THE PLAINTIFFS WOULD HAVE

11     TWO WEEKS FOR A REPLY, AUGUST 30TH, WHICH IS WHEN

12     THE REPLY BRIEF WAS DUE UNDER THE ORIGINAL SCHEDULE

13     FROM OCTOBER; AND THE HEARING STAYS ON FOR

14     SEPTEMBER 20TH.

15           LET ME HEAR FROM BOTH SIDES AS TO -- NOW,

16     I UNDERSTAND FROM THE DEFENDANTS YOU'RE LOSING ONE

17     WEEK BECAUSE YOU OTHERWISE WOULD HAVE GOTTEN FIVE

18     WEEKS IN THE PREVIOUS SCHEDULE, SO YOU'RE GETTING

19     ONE LESS WEEK; AND THEN THE PLAINTIFFS WOULD HAVE

20     GOTTEN BASICALLY ONE, TWO, THREE, FOUR WEEKS FOR

21     THEIR REPLY, SO THEY'RE GETTING THAT CUT IN HALF.

22           SO LET ME HEAR FROM YOU.

23           MR. TUBACH:  JUDGE, I -- I APPRECIATE THE

24     COURT WANTING TO KEEP THE SCHEDULE AS MUCH AS

25     POSSIBLE.

1      DOING AN OPPOSITION TO CLASS

2   CERTIFICATION IN FOUR WEEKS WITH SEVEN DEFENDANTS

3   IS WELL TO NIGH IMPOSSIBLE, PARTICULARLY OVER THE

4   HOLIDAYS.

5       IT IS A VERY DIFFICULT MOTION TO PUT

6   TOGETHER, BECAUSE WE DON'T HAVE THE FIRST CLUE

7   ABOUT WHAT THAT MOTION IS GOING TO SAY.  WE WILL

8   GET THAT WHENEVER THE PLAINTIFFS FILE THEIR MOTION.

9       THE COURT, OF COURSE, URGED THE

10   PLAINTIFFS TO NARROW THEIR CLASS EARLIER, AND

11   THEY'VE SAID, "NO, WE WANT TO WAIT UNTIL WE FILE

12   OUR CLASS CERT MOTION."

13       IF THE COURT IS INCLINED TO STICK TO

14   SOMETHING LIKE THE SCHEDULE THAT IT HAS, WHAT I

15   URGE THE COURT TO DO IS NOT TAKE A WEEK AWAY FROM

16   US, BUT MOVE THE CLASS CERT HEARING BY ONE WEEK SO

17   WE CAN KEEP OUR FIVE WEEKS.

18       IT IS GOING TO BE COORDINATING AMONG

19   SEVEN DEFENDANTS, ALL OF WHOM HAVE A VERY STRONG

20   INTEREST IN THIS CLASS CERTIFICATION, AND DOING SO

21   IN LESS THAN FIVE WEEKS IS GOING TO BE VERY

22   DIFFICULT.

23       THE COURT:  ARE YOU DOING A JOINT

24   OPPOSITION, OR HOW MUCH COOPERATION DO YOU EXPECT?

25       MR. TUBACH:  WE'RE DOING A JOINT

1    OPPOSITION.  THAT'S PART OF WHAT TAKES SO LONG.

2    EVEN IF WE ALL AGREE, IT TAKES A WHILE FOR US ALL

3    TO SAY SO.

4              AND WE MAY NOT AGREE ON EVERYTHING.

5    EVERY DEFENDANT HERE IS VERY WELL REPRESENTED BY

6    WELL EXPERIENCED COUNSEL AND THEY HAVE STRONG

7    OPINIONS ABOUT WHAT SHOULD HAPPEN.

8              AND TO DO THAT IN FOUR WEEKS, TO COME TO

9    YOU WITH WHAT WE EXPECT IS GOING TO BE ONE

10   OPPOSITION, SPEAKING WITH ONE VOICE, TAKES TIME.

11             (DISCUSSION OFF THE RECORD BETWEEN THE

12   COURT AND THE CLERK.)

13             MR. TUBACH:  YOUR HONOR, IF THE

14   COURT'S --

15             THE COURT:  THAT'S NOT IDEAL, BUT WE

16   COULD --

17             WHAT WERE YOU GOING TO SAY?

18             MR. TUBACH:  SORRY, YOUR HONOR.  I DON'T

19   MEAN TO INTERRUPT.

20             THE COURT:  WHAT WERE YOU GOING TO SAY?

21             MR. TUBACH:  IF THE COURT'S SCHEDULE

22   PERMITS, WE HOPE THE COURT COULD SET ASIDE SOME

23   TIME FOR A SUBSTANTIAL HEARING ON THE CLASS CERT

24   MOTION.  WE DO THINK THAT'S A VERY SIGNIFICANT

25   MOTION WE WANT TO HAVE HEARD.

1          IF THAT NEEDS TO MOVE BY A DAY ONE WAY OR

2     THE OTHER, IF THAT HELPS THE COURT AT ALL IN

3     SCHEDULING -- WE DO THINK IT WOULD BE HELPFUL, FOR

4     INSTANCE, FOR THE COURT TO HEAR LIVE TESTIMONY FROM

5     THE EXPERTS.  IT'S INCREDIBLY HELPFUL IN SORTING

6     THROUGH ALL OF THESE DIFFICULT ISSUES.

7          THE COURT:  I DON'T KNOW IF THAT WOULD BE

8     NECESSARY.  IT CAN'T BE SUFFICIENTLY REPRESENTED IN

9     THEIR DECLARATIONS?

10          MR. TUBACH:  IT CAN.  IT'S JUST --

11     IT'S -- I'VE JUST -- IN MY EXPERIENCE, IT'S VERY

12     HELPFUL TO HAVE THE ECONOMISTS COME IN AND TELL YOU

13     THEMSELVES WHY SOMETHING MAKES SENSE OR DOESN'T

14     MAKE SENSE AND YOU THEN JUDGE -- YOU CAN JUDGE

15     IT -- IT'S MUCH EASIER TO DO FOR THE COURT.

16          EVEN HAVING EXPERT REPORTS, HAVING AN

17     EXPERT UP THERE EXPLAINING LIVE WHY SOMETHING DOES

18     OR DOESN'T MAKE SENSE GIVES THE COURT A REALLY GOOD

19     OPPORTUNITY TO EVALUATE THE CREDIBILITY, WHICH IS,

20     AT THE END OF THE DAY, WHAT THE COURT HAS TO DO.

21          MR. SAVERI:  YOUR HONOR, I HAVE A VIEW ON

22     THAT IF YOU'RE INTERESTED IN HEARING ABOUT THAT.

23          THE COURT:  I AM.  BUT LET ME JUST

24     CHECK --

25          CAN YOU CHECK OCTOBER 4TH, PLEASE?

54

1          THE CLERK:  IT'S THE LAST DAY FOR

2     DISPOSITIVE MOTIONS IN LOWE VERSUS LINKEDIN, BUT

3     THAT'S THE ONLY THING.

4          THE COURT:  OKAY.

5          THE CLERK:  AND I THINK WE'LL BE IN THE

6     MIDDLE OF TRIAL IN ABAXIS AS WELL.

7          THE COURT:  OCTOBER 4TH?

8          THE CLERK:  YES.  I THINK IT STARTS --

9          THE COURT:  I'M SORRY?

10         THE CLERK:  I BELIEVE IT STARTS ON THE

11    24TH, SET TO START ON THE 24TH.

12         THE COURT:  ABAXIS?

13         THE CLERK:  YEAH, AND WE'LL STILL BE

14    GOING.

15         THE COURT:  YEAH, THAT WOULD DEFINITELY

16    BE MORE THAN TWO WEEKS.

17         HM.  SEE, THAT'S WHY IT STARTS BECOMING

18    PROBLEMATIC TO CHANGE THESE, BECAUSE WE HAVE SUCH A

19    HIGH VOLUME THAT EVERYTHING IS KIND OF LINED UP TO

20    FIT WITH MY CHAMBERS STAFF AND EVERYTHING, AND TO

21    MOVE IT IS STARTING TO CAUSE PROBLEMS BECAUSE THEN

22    IT'S RUNNING INTO OTHER THINGS THAT WE'VE ALSO SET.

23         MR. TUBACH:  YOUR HONOR --

24         THE COURT:  WHAT WERE YOU GOING TO SAY

25    ABOUT THE EXPERT TESTIMONY DURING CLASS CERT?

55

1           MR. SAVERI:  YOUR HONOR, MY -- MY

2     EXPERIENCE HAS BEEN THAT THE COURTS DO NOT NEED TO

3     TAKE UP THE TIME WITH THEIR SCHEDULE TO TURN IT

4     INTO AN ALL DAY EVIDENTIARY HEARING WITH -- GIVEN

5     THE SCOPE OF THE COURT'S WORK LOAD.

6           AND THIS IS AKIN TO A BENCH TRIAL AND A

7     LOT OF BENCH TRIALS ARE SUBMITTED JUST BASED ON

8     WRITTEN TESTIMONY.  THERE'S NO NEED FOR

9     CROSS-EXAMINATION.

10          AND SO IT'S REALLY UP TO YOU, YOUR HONOR,

11    BUT MY EXPERIENCE HAS BEEN THAT HAVING WITNESSES

12    DOESN'T REALLY ADD ANYTHING.  IT JUST TAKES MORE

13    TIME.

14          IT'S REALLY UP TO YOU, YOUR HONOR,

15    OBVIOUSLY TO -- ABOUT HOW YOU WANT TO PROCEED, BUT

16    I DON'T THINK THERE'S ANY -- HAVING DONE THIS A

17    NUMBER OF TIMES, I DON'T THINK THERE'S ANY REAL

18    VALUE OTHER THAN TAKING UP EVERYBODY'S TIME AND

19    EXPENSE.

20          THE COURT:  YOU THINK IT'S REALLY GOING

21    TO COME DOWN TO CREDIBILITY?

22          MR. TUBACH:  I THINK IT'S VERY USEFUL FOR

23    THE COURT TO HEAR FROM THE EXPERTS LIVE, BUT I

24    DON'T WANT TO GET SIDETRACKED ON THAT.

25          I HAVE ANOTHER SUGGESTION.

1          THE COURT:  WHAT'S THAT?

2          MR. TUBACH:  THAT THE PLAINTIFFS GET TWO

3    WEEKS AND WE KEEP OUR FIVE WEEKS.

4          THE COURT:  SO THEY GET UNTIL, WHAT?

5          MR. TUBACH:  JULY 12TH.

6          THE COURT:  JULY THE 12TH.

7          MR. TUBACH:  AND THEN WE KEEP OUR FIVE

8    WEEKS AND THEN THE COURT CAN KEEP ITS SEPTEMBER 20

9    HEARING.  WE DON'T HAVE TO TRY TO MESS UP THE

10   COURT'S SCHEDULE.

11         MR. SAVERI:  I'M SORRY.  COULD YOU -- I

12   DIDN'T FOLLOW WHAT YOUR SUGGESTION WAS.

13         MR. TUBACH:  INSTEAD OF GETTING A THREE

14   WEEK EXTENSION ON THE CLASS CERT MOTION, THE

15   PLAINTIFFS GET TWO WEEKS, AND THEN WE KEEP OUR FIVE

16   WEEKS TO RESPOND, AND THEN WE KEEP THE REPLY AS THE

17   COURT INDICATED ON AUGUST 30TH.

18         THAT THEN MOVES THE SCHEDULE AS LITTLE AS

19   POSSIBLE AND KEEPS THE COURT'S SCHEDULE FOR THE

20   HEARING DATE ON THE 20TH OF SEPTEMBER.

21         MR. SAVERI:  I --

22         THE COURT:  I'M SORRY.

23         MR. SAVERI:  I'M SORRY, YOUR HONOR.  I

24   THINK THAT HAVING TWO WEEKS FOR THE REPLY ON THIS

25   IS NOT WHAT WE NEED.

```
 1              THE COURT:  UM-HUM.

 2              MR. SAVERI:  THAT'S THE PROBLEM THAT --

 3    WITH WHAT MR. TUBACH SUGGESTS.  IT TAKES TIME OUT

 4    OF OUR REPLY AND IT JUST KIND OF MOVES TIME IN THE

 5    SCHEDULE FROM OUR OPENING BRIEF AND TAKES IT AWAY

 6    FROM THE REPLY.

 7              MR. TUBACH:  I KEPT THE OPPOSITION AND

 8    REPLY JUST AS THE COURT HAD INDICATED.

 9              MR. SAVERI:  I UNDERSTAND THAT.

10              MR. TUBACH:  IT'S JUST MOVING UP THE --

11              THE COURT:  THE OTHER THING I COULD DO

12    WOULD BE TO SQUEEZE YOU ALL ON EXPERT DISCOVERY.

13    THERE'S MORE ROOM IN THERE TO REDUCE.

14              MR. SAVERI:  I'M SORRY, YOUR HONOR, AFTER

15    THE CLASS CERTIFICATION HEARING?

16              THE COURT:  UM-HUM.  THERE'S SOME -- A

17    LITTLE BIT OF CUSHION IN THERE.

18              MR. TUBACH:  THERE'S NOT REALLY ANY

19    CUSHION FOR US, YOUR HONOR.  WE'RE THREE WEEKS WITH

20    THE CHRISTMAS HOLIDAYS IN THAT TIME PERIOD.  THAT

21    SORT OF DOES US --

22              THE COURT:  I SEE THAT.

23              MR. SAVERI:  AND TO BE FAIR, THAT'S WHY

24    THAT GAP IS IN THERE.

25              BUT I DO THINK THERE IS SOME TIME IN
```

1    THERE, THOUGH, YOUR HONOR, BECAUSE RIGHT NOW

2    THERE'S -- FROM SEPTEMBER 20TH TO JANUARY 25,

3    THAT'S 90 DAYS.  I'M NOT -- I THINK WE CAN COLLAPSE

4    THAT WITHOUT RUINING EVERYBODY'S HOLIDAY.  AND

5    WE'RE ONLY TALKING ABOUT A COUPLE WEEKS RIGHT NOW.

6              (PAUSE IN PROCEEDINGS.)

7              THE COURT:  ALL RIGHT.  HERE'S ONE

8    PROPOSAL.  WHAT IF WE SQUEEZE -- SO THE FACT

9    DISCOVERY CUT OFF WAS DECEMBER 28TH; INITIAL EXPERT

10   REPORTS JANUARY 11TH, WHICH MEANS THE HOLIDAYS ARE

11   NOT GOING TO BE GOOD; JANUARY 25TH FOR REBUTTAL

12   REPORTS; EXPERT DISCOVERY CUT OFF, FEBRUARY 8TH;

13   DISPOSITIVE MOTIONS AND DAUBERT MOTIONS FILED

14   FEBRUARY 21; THE SUMMARY JUDGMENT, DAUBERT HEARING

15   WOULD BE MARCH 28TH; AND WE WOULD KEEP THE PRETRIAL

16   CONFERENCE ON MAY 15TH; AND THE JURY TRIAL ON

17   JUNE 10TH.

18              AND I --

19              MR. SAVERI:  YOUR HONOR, I --

20              THE COURT:  -- WOULD HOPEFULLY BE ABLE TO

21   GIVE YOU AN ORDER ON DAUBERT AND SUMMARY JUDGMENT

22   WITHIN A MONTH OF THAT HEARING, SO YOU WOULD HAVE

23   IT BEFORE THE PRETRIAL CONFERENCE, BUT PERHAPS NOT

24   IN ADVANCE OF -- YOUR MEET AND CONFER DEADLINE IS

25   21 DAYS BEFORE THE PRETRIAL CONFERENCE.

1          MR. SAVERI:  I'M SORRY.  CAN I JUST

2     KEEP -- SO YOU SAID DECEMBER -- FACT DISCOVERY

3     WOULD BE THE END OF DECEMBER, I THINK YOU SAID THE

4     28TH, 2012?

5          THE COURT:  YES.

6          MR. SAVERI:  AND DID YOU MOVE THE INITIAL

7     EXPERT REPORT?

8          THE COURT:  YES, JANUARY 11TH.

9          MR. SAVERI:  AND THEN THE EXPERT --

10         THE COURT:  REBUTTAL JANUARY 25, TWO

11    WEEKS LATER.

12         MR. SAVERI:  FOR THE DISCOVERY CUT OFF,

13    THE EXPERT DISCOVERY CUT OFF?

14         THE COURT:  NO.  EXPERT DISCOVERY CUT OFF

15    WOULD BE FEBRUARY 8TH.

16         MR. SAVERI:  GOT IT.

17         THE COURT:  SO JANUARY 11, JANUARY 25,

18    FEBRUARY 8, FEBRUARY 21, MARCH 28, MAY 15,

19    JUNE 10TH.

20         MR. SAVERI:  AND THEN THE REST STAYS THE

21    SAME?

22         THE COURT:  THE REST STAYS THE SAME.

23         MR. SAVERI:  AND THEN THE CLASS CERT

24    WOULD MOVE TO JULY 19?

25         THE COURT:  OKAY.  SO THEN LET'S MOVE,

1    THEN, THE CLASS CERT --

2            MR. SAVERI:  I'M SORRY, YOUR HONOR.

3            THE COURT:  YEAH, YOU COULD GET --

4            MR. SAVERI:  I JUST DON'T KNOW.

5            THE COURT:  WELL, I HADN'T WORKED IT OUT.

6    THAT'S FINE.

7            MR. TUBACH:  EVEN JULY 12, WHICH IS A TWO

8    WEEK EXTENSION, IS SIX WEEKS FROM TODAY.

9            MS. DERMODY:  AND MOVE THE SCHEDULE OUT

10    FOUR WEEKS.

11            (PAUSE IN PROCEEDINGS.)

12            THE COURT:  WHAT DATES -- I GUESS WE'RE

13    STILL RUNNING INTO THE SAME ISSUE WITH EARLY

14    OCTOBER.

15            WHAT ABOUT OCTOBER 11?

16            MR. SAVERI:  FOR WHAT, YOUR HONOR?

17            THE COURT:  OH, I'M SORRY.  I'M ASKING

18    MS. PARKER BROWN.

19            MR. SAVERI:  I'M SORRY.

20            THE CLERK:  IT'S THE LAST DAY FOR

21    DISPOSITIVE MOTIONS ON SIBULA VERSUS DEPARTMENT OF

22    TREASURY, SIBULA VERSUS --

23            THE COURT:  WHAT'S THE CASE NUMBER?  WHAT

24    DIGIT IS THAT ENDING?  WHAT'S THE LAST DIGIT?

25            THE CLERK:  IT'S A 3.

1          THE COURT:  OH, OKAY, THAT'S FINE.  AND

2   THAT'S THE ONLY THING?

3          THE CLERK:  YEAH.

4          THE COURT:  OH, OKAY.

5          ALL RIGHT.  OKAY.  HERE'S ANOTHER

6   PROPOSAL.  SORRY THIS IS TAKING SO LONG.

7          OKAY.  I'LL GIVE PLAINTIFFS UNTIL

8   JULY 26TH, SO THEY GET A FOUR WEEK EXTENSION;

9   AUGUST 30TH, SO YOU WOULD KEEP YOUR FIVE WEEKS FROM

10  THE DEFENSE SIDE; AND THEN PLAINTIFFS WOULD GET

11  THREE WEEKS UNTIL SEPTEMBER 20TH FOR THE REPLY; THE

12  HEARING WILL BE OCTOBER 11TH.

13         WHEN IS THE ABAXIS TRIAL OVER?  IS IT

14  OVER THAT WEEK OF OCTOBER THE 8TH OR IS IT STILL

15  GOING?

16         THE CLERK:  IT LOOKS LIKE IT'S SCHEDULED

17  TO END ON POSSIBLY THE 9TH.  I DON'T SHOW IT ON THE

18  12TH.

19         THE COURT:  OH, OKAY.  THAT'S GOOD.

20         THE CLERK:  BUT ORACLE MAY START ON THE

21  9TH.

22         THE COURT:  OKAY.

23         THE CLERK:  AND THEN THERE'S A CRIMINAL,

24  CHERYL SAVAGE.

25         THE COURT:  I KNOW.  THAT'S OKAY.  THAT

1    WOULDN'T INVOLVE ANY OF THAT.

2            OKAY.  SO WHAT ABOUT THAT, JULY 26TH,

3    AUGUST 30TH, SEPTEMBER 20TH, OCTOBER 11TH?

4            SO THEN YOU WOULD STILL GET NOT QUITE TWO

5    MONTHS FOR FACT DISCOVERY BEFORE THE CUT OFF.

6            MR. TUBACH:  FACT DISCOVERY WILL BE GOING

7    ON WHILE CLASS CERT IS HAPPENING?

8            THE COURT:  YEAH.

9            MR. TUBACH:  SO THERE'S NO STAY ON

10   DISCOVERY.

11           I GUESS WHAT I WOULD ASK, IF THE COURT IS

12   NOW INCLINED TO GIVE THEM FOUR WEEKS, I WOULD ASK

13   THE COURT IF YOU WOULD GIVE THEM THREE AND GIVE US

14   AN EXTRA WEEK ON THE OPPOSITION.

15           FIVE WEEKS IS TIGHT FOR US.  IF THEY'RE

16   TAKING WHAT WILL NOW BE MANY, MANY MONTHS TO GET

17   THIS CLASS CERT MOTION PULLED TOGETHER, WE COULD

18   SURE USE THE WEEK.

19           THE COURT:  DO YOU WANT TO TAKE IT FROM

20   THEIR MOTION OR THEIR REPLY?

21           MR. TUBACH:  WHEREVER YOU WANT TO TAKE

22   IT, YOUR HONOR.

23           MR. SAVERI:  JUST SO WE'RE CLEAR, YOUR

24   HONOR, I APPRECIATE THAT CLARIFICATION.  I THINK IT

25   WOULD BE -- I WOULD PREFER, IF WE'RE GOING TO LOSE

1      A WEEK, TO LOSE -- TO HAVE OUR OPENING BRIEF BE DUE

2      EARLIER AND GIVE US MORE TIME ON THE REPLY, YOUR

3      HONOR.  IF I WERE FORCED TO CHOOSE, THAT'S THE WAY

4      I WOULD MAKE THAT CHOICE.

5              THE COURT:  OKAY.  ALL RIGHT.  SO THEN

6      YOU WOULD BE FILING ON JULY 19TH, WHICH IS A THREE

7      WEEK EXTENSION.

8              MR. SAVERI:  YEAH.

9              THE COURT:  ALL RIGHT.  SO JULY 19TH IS

10     THE MOTION; AUGUST 30TH IS THE BRIEF CONSOLIDATED

11     OPPOSITION --

12             MR. SAVERI:  DID YOU SAY BRIEF, YOUR

13     HONOR?

14             THE COURT:  I DID.

15             MR. SAVERI:  I JUST WANTED TO UNDERLINE

16     THAT.

17             THE COURT:  I KNOW.  25 PAGE MAX ON THE

18     OPENING AND THE OPPOSITION; AND THEN 15 MAX ON THE

19     REPLY, WHICH WILL BE DUE SEPTEMBER 20TH.  OKAY?

20             SO THAT MEANS YOU'LL KEEP THREE WEEKS ON

21     THE REPLY.

22             MR. TUBACH:  AND THEN ALL OF THE OTHER

23     DATES --

24             THE COURT:  AND THEN EVERYTHING --

25             MR. TUBACH:  EVERYTHING ELSE STAYS?

                                                        64

1          THE COURT:  NO.  IT'LL BE WHAT I MOVED IT

2     TO.  DECEMBER 28TH FOR A FACT DISCOVERY CUT OFF;

3     JANUARY 11TH FOR INITIAL EXPERT REPORTS;

4     JANUARY 25TH FOR REBUTTAL; EXPERT DISCOVERY CUT OFF

5     OF FEBRUARY 8TH; DAUBERT AND SUMMARY JUDGMENT

6     MOTIONS FEBRUARY 21; DAUBERT AND SUMMARY JUDGMENT

7     HEARING ON MARCH 28TH; PRETRIAL CONFERENCE MAY 15TH

8     AT 2:00 O'CLOCK, WHICH IS THE SAME AS BEFORE; AND

9     THEN JUNE 10TH TRIAL, SAME AS BEFORE.

10          ANYONE WANT TO BE HEARD ON THOSE DATES?

11          WE'LL HAVE A CMC HERE ON JULY 25TH AT

12     2:00 O'CLOCK.

13          THE SUBSTANTIAL COMPLETION OF DOCUMENT

14     PRODUCTION WILL REMAIN ON JUNE 15TH.

15          MR. TUBACH:  YOU KNOW, YOUR HONOR, I

16     GUESS I WOULD BE INCLINED TO JUST LEAVE -- IF THE

17     COURT'S MOVING THE SCHEDULE SO WE HAVE THE CLASS

18     CERT HEARING ON OCTOBER 11TH, MY PROPOSAL WOULD BE,

19     SUBJECT TO BEING OVERRULED BY MY BRETHREN AND

20     SISTREN, WOULD BE TO KEEP ALL THE OTHER DATES IN

21     PLACE.  SO WE DON'T MOVE ANYTHING ELSE.

22          WE HAVE THE CLASS CERT HEARING ON

23     OCTOBER 11TH, AND WE'LL SUFFER THE REST OF IT,

24     BECAUSE FRANKLY, IT'S GOING TO BE HARD.

25          WHAT I'M THINKING ABOUT, AMONG OTHER

```
 1     THINGS, IS WE HAVE A --
 2             THE COURT:  I THINK YOU COULD USE SOME
 3     MORE SISTERS OVER THERE, TOO.
 4             (LAUGHTER.)
 5             MR. TUBACH:  THANK YOU, YOUR HONOR.  I DO
 6     APPRECIATE THAT.
 7             THE COURT:  I WAS JUST JOKING.  BUT
 8     SERIOUSLY, TOO.
 9             MR. TUBACH:  AND I TAKE THAT SERIOUSLY.
10             THE COURT:  OKAY.
11             MR. TUBACH:  MARCH 28TH, YOUR HONOR, FOR
12     A HEARING ON DISPOSITIVE MOTIONS WITH A TRIAL DATE
13     ON JUNE 10 -- THE COURT, I KNOW, HAS A VERY FULL
14     DOCKET.  IT'S GOING TO TAKE THE COURT SOME TIME TO
15     GET THOSE RULINGS OUT.
16             THE COURT:  I'M TOTALLY FINE WITH KEEPING
17     THE REST OF THE CALENDAR THE SAME, BUT ARE YOU
18     OKAY, THEN, WITH KEEPING FACT DISCOVERY CUT OFF OF
19     NOVEMBER 30TH?
20             MR. TUBACH:  I'D PREFER TO LIVE WITH THAT
21     THAN TO TRY AND PUSH EVERYTHING BACK TOWARDS THE
22     TRIAL.
23             THE COURT:  ALL RIGHT.  THAT'S FINE, JUST
24     UNDERSTANDING THAT I MAY TAKE SOME TIME TO ISSUE
25     THAT CLASS CERT MOTION.
```

1           MR. TUBACH:  I UNDERSTAND THAT.

2           THE COURT:  BECAUSE THAT'S OCTOBER 11TH,

3      SO THAT'S REALLY SQUEEZING THAT.

4           MR. TUBACH:  I UNDERSTAND.  IF WE'RE

5      GOING TO SQUEEZE, I PREFER TO SQUEEZE THERE THAN AT

6      THE BACK END.

7           MR. SAVERI:  YOUR HONOR, WE'RE FINE

8      EITHER WAY.

9           IT SEEMS TO ME WHAT WE'RE TALKING ABOUT

10     NOW IS HOW IT AFFECTS YOUR SCHEDULE, SO I'LL --

11     HOWEVER YOU WANT TO DO IT, WE'LL DEAL WITH IT.

12          THE COURT:  I'M GOING TO DEFER TO YOU

13     ALL.  I JUST WANT TO --

14          MR. SAVERI:  I'M FINE WITH --

15          THE COURT:  I WANT TO LEAVE THE TRIAL

16     DATE THE SAME.  SO YOU ALL PICK.

17          MR. TUBACH:  IF WE COULD DO THE CLASS

18     CERT SCHEDULE THE WAY THE COURT'S INDICATED AND

19     KEEP ALL OTHER DATES THE WAY THEY ARE, I THINK

20     THAT'S PROBABLY FINE.

21          MR. SAVERI:  YOUR HONOR, I CAN'T BE

22     OVERRULED BY THEM, BUT I THINK IT MAKES SENSE FOR

23     US, TOO, IF IT'S ACCEPTABLE WITH YOU.

24          THE COURT:  OKAY.

25          THE CLERK:  JUDGE, DID YOU MENTION A

67

1    JULY 25TH CMC?  BECAUSE WE HAVE A LOT THAT DAY.

2            THE COURT:  OH, DO WE?

3            THE CLERK:  YES.

4            THE COURT:  OKAY.

5            THE CLERK:  INCLUDING JUAN HAS A LOT.

6            MR. TUBACH:  I'M SORRY, JULY --

7            THE COURT:  OH, I KNOW PROBABLY WHY.

8            MR. TUBACH:  I DON'T THINK THERE'S A

9    JULY --

10           THE COURT:  IT'S ALREADY JUNE --

11           MR. TUBACH:  I DON'T THINK WE HAVE

12   ANYTHING ON IN JULY.

13           THE COURT:  OH, NO, NO.  I WAS GOING TO

14   SET A FURTHER CMC.

15           MR. TUBACH:  OH.

16           MR. SAVERI:  DO YOU WANT TO GIVE US MORE

17   TIME AND PUSH IT INTO -- PUSH IT INTO AUGUST?

18           DO YOU WANT TO DO IT IN JULY?  IT DOESN'T

19   MATTER.

20           MR. TUBACH:  I'M FINE EITHER WAY.  IF THE

21   COURT WANTS TO SET SOMETHING, IT PROBABLY MAKES

22   SENSE TO SET IT AFTER THEY FILE THEIR CLASS CERT

23   MOTION AS THE NEXT EVENT.

24           THE COURT:  THEY'LL FILE ON THE 19TH NOW

25   PER THE NEW SCHEDULE, SO THAT WILL BE SIX DAYS

```
 1    AFTER.
 2              BUT IF YOU WANTED TO COME IN IN AUGUST,
 3    THAT'S OKAY, TOO.
 4              THE CLERK:  AUGUST 29TH MIGHT WORK.
 5              THE COURT:  WHAT WOULD YOU LIKE?
 6              MR. TUBACH:  EARLY AUGUST.  YEAH, SORT OF
 7    EARLY AUGUST SOMETIME, MAYBE THE FIRST COUPLE WEEKS
 8    IN AUGUST IF THE COURT HAS IT.
 9              THE COURT:  ALL RIGHT.  LET ME HEAR.
10              THE CLERK:  ACTUALLY, THE 1ST MIGHT WORK.
11    YOU ONLY WANTED ONE FOR JUAN ON THAT DATE, BUT THE
12    ONLY ONE HE HAD WAS A 0, WHICH IS NOW ASHER'S.
13              THE COURT:  ON WHICH DATE?
14              THE CLERK:  ON AUGUST 1ST.  HE HAS NONE.
15              THE COURT:  THAT WOULD NOT BE A GOOD DATE
16    BECAUSE THAT'S KAREN'S FIRST WEEK.  WHAT DO WE HAVE
17    THE NEXT -- WHAT'S THE NEXT DATE?  AUGUST 8TH OR
18    15TH?  HOW DO THOSE LOOK?
19              THE CLERK:  THE 15TH WE'RE NOT DOING
20    CALENDAR BECAUSE YOU'RE DOING --
21              THE COURT:  THAT'S RIGHT.  WE'RE GOING TO
22    DO THE TRIAL.
23              THE CLERK:  AND I THINK --
24              THE COURT:  HOW DOES THE 22ND OR THE 8TH
25    LOOK?
```

1          THE CLERK:  WE'VE GOT TWO ON THE 8TH.

2          THE COURT:  ALL RIGHT.

3          THE CLERK:  ON THE 1ST, YOU WANTED JUST

4    ONE, AND THERE'S NONE RIGHT NOW.

5          THE COURT:  I THINK WE BETTER DO THE --

6    WHAT ABOUT THE 22ND?

7          THE CLERK:  THE 22ND, IT LOOKS LIKE HE

8    HAS THREE.

9          THE COURT:  I MEAN, IF YOU DON'T FORESEE

10   ANY MORE ISSUES, I WOULD THINK MOST OF THE

11   DISCOVERY ISSUES WILL, BY THAT POINT, HOPEFULLY BE

12   LARGELY SOMEWHAT RESOLVED AND YOU COULD EVEN COME

13   IN IN SEPTEMBER.

14          I MEAN, I NORMALLY HAVE PEOPLE COME IN

15   EVERY 90 DAYS.  IF THERE'S NOT ANYTHING SUPER

16   PRESSING, WE COULD PUSH IT.

17          MR. TUBACH:  THAT'S FINE, YOUR HONOR.

18          THE COURT:  WHAT ABOUT SEPTEMBER 5TH?

19          MR. SAVERI:  SO OUR -- EXCUSE ME, YOUR

20   HONOR.  SO RIGHT NOW OUR DECEMBER -- WE HAVE A

21   DISCOVERY CUT OFF ON DECEMBER 28TH.

22          MR. TUBACH:  NO, NOVEMBER 30TH.

23          THE COURT:  NOVEMBER 30TH.  IT'S GONE

24   BACK.

25          MR. SAVERI:  I JUST WANT TO MAKE SURE WE

1    HAVE A CHANCE TO COME IN SOMETIME TO DEAL WITH ANY

2    OUTSTANDING DISCOVERY ISSUES.

3            THE COURT:  OKAY.

4            MR. SAVERI:  BUT I THINK THAT'S FINE.

5    I'M JUST THINKING OUT LOUD, YOUR HONOR.  I

6    APOLOGIZE.  I THINK SOMETIME IN SEPTEMBER IS FINE.

7            THE CLERK:  THE 12TH, SEPTEMBER 12TH?

8            THE COURT:  WOULD SEPTEMBER 12TH BE

9    ENOUGH TIME?

10           MR. TUBACH:  THAT WOULD BE FINE FOR US.

11           MR. SAVERI:  YEAH.

12           THE COURT:  ALL RIGHT.  SO THEN LET'S DO

13   OUR NEXT CMC SEPTEMBER 12TH OF 2012.

14           NOW, IF THERE ARE A LOT OF DISCOVERY

15   DISPUTES, I'M INCLINED -- I'VE SPOKEN WITH

16   JUDGE LLOYD AND JUDGE GREWAL AND THEY'VE, AMONGST

17   THEMSELVES, AGREED THAT JUDGE GREWAL WILL DO THE

18   DISCOVERY ON THIS.

19           IF IT'S RELATIVELY SMALL, I CAN DO IT

20   MYSELF.

21           BUT IF THIS GETS TO BE VERY, VERY HEAVY

22   AND INTENSE AND EVERYONE IS ASKING FOR EXPEDITED

23   HEARINGS, I'D LIKE TO SEND THIS TO JUDGE GREWAL.

24           MR. SAVERI:  OKAY.

25           MR. TUBACH:  WE'VE ONLY HAD TWO SO FAR

1   THAT HAVE GONE TO JUDGE LLOYD, SO WITH ANY LUCK WE

2   WON'T HAVE ANY MORE.

3            THE COURT:  AND I THINK I'VE RULED ON

4   BOTH OF THEM THAT HAVE GONE TO JUDGE LLOYD ANYWAY.

5            MR. TUBACH:  YOU HAVE.  YOU HAVE.  THESE

6   CMC'S HAVE TENDED TO CLEAR THOSE UP.

7            THE COURT:  WELL, I'M NOT SURE -- WHAT

8   WILL CREATE THE INCENTIVE FOR YOU ALL TO WORK

9   THINGS OUT?  GOING OR STAYING?

10           SO WHATEVER WILL MAKE MORE MEET AND

11  CONFERS BE PRODUCTIVE AND RESOLVE YOUR DISCOVERY

12  DISPUTES, THAT'S WHAT I WANT TO DO.

13           SO --

14           MR. TUBACH:  WELL, I THINK KEEPING IT THE

15  WAY IT IS NOW HAS WORKED REASONABLY WELL.

16           WE'LL BE BACK BEFORE THE COURT ON

17  SEPTEMBER 12TH.  IF THINGS ARE HAPPENING BEFORE

18  THEN THAT NEED FURTHER AIR TIME, I THINK THE COURT

19  CAN ALWAYS MAKE A DECISION THEN ABOUT WHAT TO DO.

20           MR. SAVERI:  I TEND TO AGREE WITH

21  MR. TUBACH.

22           THE COURT:  OKAY.  THAT'S FINE.

23           I GUESS IF THERE BECOMES A PROBLEM YOU

24  CAN ASK FOR AN EARLIER DATE THAN SEPTEMBER TO COME

25  IN.

1           MR. TUBACH:  SURE.

2           MR. SAVERI:  I THINK THAT'S FINE.

3           THE COURT:  BUT IF IT'S LOOKING LIKE IT'S

4    VERY NUMEROUS AND UGLY, THEN I MIGHT REFER IT OUT.

5           MR. SAVERI:  THAT'S FINE.

6           MR. TUBACH:  WHAT TIME ON SEPTEMBER 12TH,

7    YOUR HONOR?

8           THE COURT:  THAT'LL BE AT 2:00 O'CLOCK.

9    THAT'S A WEDNESDAY AT 2:00 O'CLOCK DURING THE CMC

10   CALENDAR.

11          MR. TUBACH:  YEAH, OKAY.

12          THE COURT:  OKAY.

13          MR. TUBACH:  THANK YOU, YOUR HONOR.

14          THE COURT:  ANYTHING ELSE WE NEED TO DO

15   TODAY?

16          MR. TUBACH:  NOT FROM OUR POINT OF VIEW.

17   THANK YOU.

18          MS. DERMODY:  YOUR HONOR, JUST ONE

19   HOUSEKEEPING MATTER.

20          THE COURT:  YES.

21          MS. DERMODY:  THERE'S AN ADMINISTRATIVE

22   MOTION TO AMEND THE PRETRIAL ORDER NUMBER 1 FOR THE

23   APPOINTMENT OF INTERIM CO-LEAD COUNSEL.  THAT'S

24   BEEN SUBMITTED TO YOUR HONOR.  THAT'S UNOPPOSED

25   FROM THE DEFENDANTS.

1          THE COURT:  OH, I WILL SIGN THAT IF I

2    HAVEN'T SIGNED THAT ALREADY.

3          MS. DERMODY:  THANK YOU, YOUR HONOR.

4          THE COURT:  THAT'S FINE.  WHAT ELSE?

5    ANYTHING ELSE?

6          LET ME JUST DOUBLE CHECK MY NOTES HERE.

7    I THINK WE GOT EVERYTHING ELSE.

8          NOW, OBVIOUSLY THE DEFENDANTS, TO THE

9    EXTENT YOU HAVE NOT FINISHED PRODUCING YOUR STOCK

10   OPTIONS DATA, OVERTIME COMPENSATION DATA, EMPLOYEE

11   STATUS CHANGE DATA, THAT NEEDS TO BE DONE, AND IF

12   IT'S NOT DONE BY JUNE 15TH, THEN THERE WILL BE

13   CONSEQUENCES.

14         IDEALLY I WANT EVERYONE TO COMPLETE BY

15   THE 8TH AND THEN DO CLEAN UP THE WEEK OF THE 15TH.

16         MR. TUBACH:  WE'RE WORKING VERY HARD TO

17   MEET THE COURT'S DEADLINES.

18         THE CMC STATEMENT WAS THE FIRST TIME WE

19   HAD HEARD FROM THE PLAINTIFFS THAT THEY WANTED

20   OVERTIME DATA.  THIS IS NOT SOMETHING THAT'S COME

21   UP BEFORE IN THE WEEKS AND WEEKS OF MEET AND

22   CONFERS THAT WE HAD WITH THE PLAINTIFFS.

23         FRANKLY, I HAVEN'T HEARD WHY THE

24   PLAINTIFFS THINK THEY NEED OVERTIME DATA TO, TO GET

25   A MODEL TOGETHER TO SHOW HOW THERE'S COMMON IMPACT

1    THAT THEY ARE GOING TO PROVE ON A CLASS-WIDE BASIS.

2    I'M NOT SURE HOW THOSE TWO INTERSECT AT ALL.

3            WE ARE COMFORTABLE THAT -- WE ARE

4    COMFORTABLE.  WE'RE WORKING HARD TO MEET THAT

5    JUNE 15TH DEADLINE AND WE'RE COMMITTED TO MEETING

6    IT.

7            THE COURT:  AND YOU ARE GOING TO PRODUCE

8    OVERTIME COMPENSATION DATA?

9            MR. TUBACH:  WELL, THIS IS THE FIRST WE

10   EVER HEARD OF THIS.  SO UNTIL THE CMC STATEMENT ON

11   FRIDAY, WE HAD NEVER EVEN HEARD THAT THE PLAINTIFFS

12   EVERYONE WANTED OVERTIME DATA.

13           THE COURT:  SO WHY DO YOU NEED THAT?  HOW

14   IS THAT RELEVANT?

15           MS. DERMODY:  WELL, YOUR HONOR, I

16   THINK -- IF I MAY, I THINK THE EXPERTS WANT TO MAKE

17   SURE THEY HAVE A COMPLETE COMPENSATION PICTURE AND

18   THEY WANT TO MAKE SURE THEY'RE COMPARING APPLES TO

19   APPLES.

20           SO IF THERE'S COMPENSATION DATA THAT IS

21   OVERTIME DATA THAT IS IMPACTING WAGES, THEN WE WANT

22   TO KNOW THAT.

23           THE COURT:  THAT SEEMS RELEVANT.  IF THEY

24   NEED AN ECONOMIST TO FIGURE OUT WHAT THE DIFFERENCE

25   IN COMPENSATION WOULD BE ABSENT ANY ALLEGED

1    CONSPIRACY, I THINK THEY NEED THAT.

2            MR. TUBACH:  YOUR HONOR, THIS IS

3    SOMETHING THEY SHOULD HAVE HAMMERED OUT THREE

4    MONTHS AGO WHEN WE WERE SITTING DOWN TALKING TO

5    THEM ENDLESSLY ABOUT HOW MANY FIELDS OF DATA THEY

6    NEEDED.

7            WE HAVE NOW PRODUCED 12 YEARS -- 11 YEARS

8    WORTH OF DATA FOR ALL OF OUR EMPLOYEES.  THAT'S

9    166,000 EMPLOYEES AMONG ALL SEVEN OF US.

10           TO GO BACK NOW AND GET OVERTIME DATA

11   BECAUSE, BECAUSE THEIR EXPERT SAYS, "YOU KNOW, THAT

12   WOULD BE A GREAT THING TO HAVE," MAYBE IN THE GRAND

13   SCHEME OF THINGS, SURE, IF THEY'D ASKED FOR IT

14   THREE MONTHS AGO, THAT'S SOMETHING WE COULD HAVE

15   DONE.

16           TO COME IN NOW AND SAY, "OH, BY THE WAY,

17   WE'D LIKE TO SEE YOUR OVERTIME DATA," WHERE WAS

18   THAT THREE MONTHS AGO?  THAT'S JUST NOT REASONABLE.

19           THIS IS WHY WE SPENT ALL THIS TIME

20   NEGOTIATING WITH THE PLAINTIFFS OVER EXACTLY WHAT

21   FIELDS WE WOULD PRODUCE.

22           THE COURT:  WAS YOUR STATEMENT THE FIRST

23   TIME YOU REQUESTED THAT ON JUNE 1ST?

24           MS. DERMODY:  I THINK WE ASKED FOR TOTAL

25   COMPENSATION, YOUR HONOR.

1            AND ONCE YOU GET DATA, YOU REALIZE WHAT'S

2    MISSING.  I MEAN, SOMETIMES THE PARTIES THINK

3    THEY'RE ON THE SAME PAGE, BUT WHEN YOU GET DOWN TO

4    A FILE LEVEL ANALYSIS, YOU REALIZE THAT THERE ARE

5    UNANSWERED QUESTIONS.

6            MR. TUBACH:  FIELD BY FIELD BY --

7            THE COURT:  BUT 106,000 EMPLOYEES, THAT'S

8    A LOT OF INFORMATION.  IS THERE ANY WAY YOU CAN

9    NARROW YOUR REQUEST, BECAUSE THIS DOES -- FOR THIS

10   LARGE A GROUP, IT REALLY SEEMS OVERLY BURDENSOME TO

11   BE REQUESTING THIS AMOUNT OF INFORMATION FROM

12   106,000 EMPLOYEES WHEN EVENTUALLY, ON JULY 19TH,

13   YOU MIGHT BE DUMPING THE VAST MAJORITY OF THESE

14   EMPLOYEES FROM YOUR MOTION.

15           MR. SAVERI:  YOUR HONOR, I THINK YOUR

16   SUGGESTION IS WELL TAKEN, AND I'M FINE WITH GOING

17   BACK AND TRYING TO DETERMINE WHETHER THERE IS A

18   LESS VOLUMINOUS SOURCE OF THAT INFORMATION OR

19   ANOTHER WAY OF GETTING TOTAL COMPENSATION.  I'M

20   FINE WITH DOING THAT.

21           MR. TUBACH:  YOUR HONOR, THEY GAVE US

22   FIVE PAGES OF DATA THAT THEY WANTED US TO PULL

23   TOGETHER, AND WHAT THEY ASKED ABOUT FOR

24   COMPENSATION WAS DESCRIPTION OF COMPENSATION

25   PACKAGES FOR EACH EMPLOYEE, FOR EMPLOYEES OF EACH

1    TITLE, REGULAR SALARY, BONUSES, STOCK OPTIONS,

2    BENEFITS, ET CETERA.

3            THEY DIDN'T ASK FOR OVERTIME DATA.  THIS

4    IS WHY IT'S -- WHY WE DID WHAT WE DID, WHICH IS NOT

5    JUST WILLY NILLY PRODUCE OUR STUFF, BUT TO GO TO

6    THE PLAINTIFFS AND REALLY SIT DOWN AND HAMMER OUT

7    WHAT IT WAS THAT WE WERE GOING TO PULL TOGETHER.

8            I CANNOT GO BACK TO MY CLIENT AND SAY, "I

9    KNOW I TOLD YOU IT WAS OVER, BUT IT'S NOT OVER.

10   I'VE GOT TO GO BACK AND GET YOU TO DO EVERYTHING

11   FOR ANOTHER 11 YEARS OF PEOPLE TO SEE IF SOMEBODY

12   GOT PAID OVERTIME."

13           AND REMEMBER, WE'RE TALKING HERE ABOUT

14   SALARIED EMPLOYEES, THE VAST MAJORITY OF WHOM ARE

15   GOING TO BE EXEMPT FROM OVERTIME ANYWAY.

16           WE HAVE TO NOW PICK THROUGH AND FIGURE

17   OUT EXACTLY HOW MUCH EVERYONE WAS COMPENSATED.  WE

18   HAVE NOT PRODUCED COMPENSATION DATA ITSELF.  WE

19   HAVEN'T PRODUCED PAYROLL DATA.  WE'VE PRODUCED

20   SALARIES.  WHAT ARE THEIR SALARIES?

21           IF SOMEONE TOOK THREE MONTHS OFF BECAUSE

22   THEY HAD A CHILD OR THEY'RE ON PATERNITY LEAVE,

23   THAT'S NOT GOING TO BE REFLECTED IN THE DATA.

24           WE PRODUCED COMPENSATION DATA, WHAT IS

25   THEIR, AS THE PLAINTIFFS PUT IT, REGULAR SALARY,

1    BONUSES, STOCK OPTIONS.

2           THAT'S WHAT WE PRODUCED.

3           MR. SAVERI:  YOUR HONOR, I AM FINE WITH

4    TALKING WITH MR. TUBACH ABOUT THIS AND ADDRESSING

5    THAT VERY POINT.

6           I THINK THE SITUATION WE FOUND OURSELVES

7    IN IS THAT AS WE WENT THROUGH THE DATA, IT WAS

8    SOMETHING THAT WE WANTED TO MAKE SURE THAT WE HAD

9    ASKED FOR AND NAILED DOWN, AND MR. TUBACH --

10           THE COURT:  WHY DO YOU NEED IT FOR 11

11    YEARS IF YOUR CLASS PERIOD IS, AT MOST, FIVE?

12           MR. SAVERI:  BECAUSE, I MEAN, WE ASKED --

13           THE COURT:  I MEAN, TALK ABOUT BURDENSOME

14    AND HARASSING.  I ALMOST -- ALL THE ARGUMENTS YOU

15    MADE ABOUT WHY YOU SHOULDN'T GET CURRENT AND FORMER

16    EMPLOYEES OF THE FIVE LEAD PLAINTIFFS, THIS IS

17    BURDENSOME AND HARASSING, 106,000 EMPLOYEES, YOU

18    WANT 11 YEARS OF --

19           MR. TUBACH:  160.

20           THE COURT:  -- INFORMATION, YOU'RE

21    REQUESTING IT NINE DAYS FROM THE SUBSTANTIAL

22    COMPLETION DEADLINE?

23           MR. SAVERI:  YOUR HONOR, WE JUST WANTED

24    TO MAKE SURE THAT WE DID -- THAT WE WERE CAREFUL.

25           AND IF WE DIDN'T ASK FOR IT IN THE

1    BEGINNING, PERHAPS WE SHOULD HAVE.

2          BUT WE LEARNED MORE AS WE WENT ALONG AND

3    WE -- I DON'T HAVE ANY OTHER EXPLANATION OTHER THAN

4    WE WANTED TO GET AS MUCH -- WE WANTED TO MAKE SURE

5    THAT WE HAD ASKED THE RIGHT QUESTIONS.

6          MS. DERMODY:  AND THIS IS, I THINK, THE

7    CHALLENGE WITH BIG DATA CASES, YOUR HONOR, IS IT'S

8    SORT OF AN ITERATIVE PROCESS.  YOU CAN COME UP WITH

9    YOUR BEST GAME PLAN, USE THE BEST VOCABULARY YOU

10   KNOW TO DESCRIBE THE DATABASE, AND THEN YOU GET THE

11   DATABASE AND THEN THE QUESTIONS COME UP BECAUSE

12   SOMETIMES THINGS AREN'T AS YOU THOUGHT THEY WOULD

13   APPEAR.

14         AND SO THAT IS, FRANKLY, ONE OF THE

15   BIGGEST REASONS WHY WE WERE CONCERNED ABOUT THE

16   SCHEDULE IS WE'RE IN THAT ITERATIVE PROCESS OF

17   UNDERSTANDING THE DATA AND HAVING THE QUESTIONS

18   BEING ASKED FOR THE VERY FIRST TIME.

19         AND YES, IT IS LATE RELATIVE TO THE

20   SCHEDULE, BUT IT'S VERY EARLY RELATIVE TO THE

21   PRODUCTION.

22         WE GOT A HUGE DATA PRODUCTION JUST ON

23   FRIDAY.  IT'S STILL ONGOING.

24         SO MORE QUESTIONS MAY COME UP BEFORE THE

25   15TH, AND IF THE PLAINTIFFS --

1            THE COURT:  WELL, YOU'RE NOT GOING TO GET

2     IT BY THE 15TH.  THAT'S UNREASONABLE.

3            MR. TUBACH:  AND EVEN -- TO GO BACK TO

4     OUR CLIENTS NOW AND ASK THEM TO PRODUCE

5     SOMETHING -- ALL I'VE HEARD FROM MR. SAVERI IS,

6     "WELL, WE WANTED TO MAKE SURE WE AT LEAST ASKED FOR

7     STUFF."

8            I CAN'T GO BACK TO APPLE AND TELL THEM,

9     "WELL, MR. SAVERI THOUGHT OF THIS RECENTLY AND SO

10    NOW WE NOW HAVE TO GO BACK THROUGH TO OUR ENTIRE 11

11    YEARS WORTH OF EMPLOYEES FOR 160," -- IT'S

12    160,000 -- AND SAY, "YOU KNOW, WE'RE GOING TO GO DO

13    THIS ALL OVER AGAIN," THAT'S JUST NOT REASONABLE,

14    YOUR HONOR.  IT'S NOT FAIR.

15            (PAUSE IN PROCEEDINGS.)

16            THE COURT:  IF YOUR REQUEST IS ALL

17    160,000 EMPLOYEES, ALL 11 YEARS, ALL OVERTIME

18    COMPENSATION DATA, THEN I'M GOING TO -- IF YOU'RE

19    MAKING A MOTION FOR PROTECTIVE ORDER TO, TO QUASH

20    THAT, I'M GRANTING IT.

21            MR. TUBACH:  YES.

22            THE COURT:  BECAUSE THAT'S TOO MUCH.

23    IT'S TOO BURDENSOME.  IT'S TOO LATE.

24            MR. TUBACH:  IF THEY COME UP WITH

25    SOMETHING -- SORRY, YOUR HONOR.

1           THE COURT:  THE WHOLE --

2           MR. TUBACH:  IF THEY COME UP WITH

3    SOMETHING REASONABLE, WE COULD MEET AND CONFER

4    ABOUT THAT.

5           MR. SAVERI:  AND I'M GLAD YOU SAID THAT

6    BECAUSE I THINK THAT'S WHAT I OFFERED A FEW MINUTES

7    AGO.

8           SO I ACCEPT AND WE SHOULD DO THAT.

9           MR. TUBACH:  WITH THE PROVISO, WE'RE NOT

10   PROMISING TO PRODUCE ANYTHING.

11          UNLESS I HEAR SOME BETTER REASON ABOUT

12   WHY THEY THINK THEY NEED IT, THEY'RE NOT GOING TO

13   GET IT.

14          MR. SAVERI:  TRUST ME.  I HEAR WHAT

15   YOU'RE SAYING.

16          I DIDN'T TRY TO CONSTRUE WHAT MR. TUBACH

17   SAID AS A PROMISE OF ANY SORT.

18          THE COURT:  WELL, I'M REALLY NOT LIKELY

19   TO ORDER IT UNLESS THE DEFENDANTS AGREE TO IT.

20          SO IT'S GOING TO HAVE TO BE VERY NARROWLY

21   TAILORED, BECAUSE 160,000 EMPLOYEES, 11 YEARS,

22   OVERTIME COMPENSATION DATA NOW WHEN THE SUBSTANTIAL

23   COMPLETION PRODUCTION DEADLINE WAS SET BACK IN

24   OCTOBER FOR JUNE 15TH, IT'S STARTING TO BE TOO

25   LATE.

1           MR. SAVERI:  I HEAR YOU, YOUR HONOR.

2           THE COURT:  SO IF THEY COME BACK TO ME

3    AND THEY DON'T AGREE TO IT, I MAY NOT ALLOW IT.

4           MR. SAVERI:  I HEAR YOU.

5           THE COURT:  OKAY.  ANYTHING ELSE THAT WE

6    NEED TO DO?

7           MR. TUBACH:  NOT FROM THE DEFENDANTS,

8    YOUR HONOR.  THANK YOU.

9           THE COURT:  OKAY.  ALL RIGHT.  THANK YOU

10   ALL.

11          MR. SAVERI:  THANK YOU, YOUR HONOR.

12          THE COURT:  I'LL SEE YOU ON

13   SEPTEMBER 12TH.

14          MS. DERMODY:  THANK YOU, YOUR HONOR.

15          MR. TUBACH:  THANK YOU, YOUR HONOR.

16          (WHEREUPON, THE PROCEEDINGS IN THIS

17   MATTER WERE CONCLUDED.)

18

19

20

21

22

23

24

25

1

2

3

4                        CERTIFICATE OF REPORTER

5

6

7

8          I, THE UNDERSIGNED OFFICIAL COURT

9     REPORTER OF THE UNITED STATES DISTRICT COURT FOR

10    THE NORTHERN DISTRICT OF CALIFORNIA, 280 SOUTH

11    FIRST STREET, SAN JOSE, CALIFORNIA, DO HEREBY

12    CERTIFY:

13              THAT THE FOREGOING TRANSCRIPT,

14    CERTIFICATE INCLUSIVE, CONSTITUTES A TRUE, FULL AND

15    CORRECT TRANSCRIPT OF MY SHORTHAND NOTES TAKEN AS

16    SUCH OFFICIAL COURT REPORTER OF THE PROCEEDINGS

17    HEREINBEFORE ENTITLED AND REDUCED BY COMPUTER-AIDED

18    TRANSCRIPTION TO THE BEST OF MY ABILITY.

19

20

21

22

23              /S/
                _____
24              LEE-ANNE SHORTRIDGE, CSR, CRR
                CERTIFICATE NUMBER 9595
25