**Exhibit C**

**(Exhibits to the Declaration of Susan J. Welch:  Plaintiffs' Proposed Redactions)**

# Exhibit B

1                UNITED STATES DISTRICT COURT

2       NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

3

4       --------------------------

5       IN RE: HIGH-TECH EMPLOYEE )

6       ANTITRUST LITIGATION      ) No. 11-CV-2509-LHK

7       --------------------------

8

9

10

11

12          VIDEOTAPED DEPOSITION OF MARK FICHTNER

13               San Francisco, California

14               Monday, October 15, 2012

15                      Volume I

16

17

18

19

20      Reported by:

21      ASHLEY SOEVYN

22      CSR No. 12019

23      Job No. 1541278

24

25      PAGES 1 - 233

                                          Page 1

| 1  | different employees' compensation would go within | 10:47:59 |
| 2  | the budget that you had to work with? | 10:48:05 |
| 3  | A.   A little less input into that.  More input | 10:48:08 |
| 4  | into where they were on the list. | 10:48:11 |
| 5  | Q.   Okay.  So you would rank them as you've | 10:48:13 |
| 6  | been trying to tell me, right? | 10:48:15 |
| 7  | A.   Yes. | 10:48:17 |
| 8  | Q.   Okay.  I got it now.  So you would rank | 10:48:17 |
| 9  | them -- that would go up to the higher level | 10:48:19 |
| 10 | managers, and that ranking would eventually | 10:48:22 |
| 11 | determine how much compensation each person would | 10:48:30 |
| 12 | get, right? | 10:48:34 |
| 13 | A.   It would a major factor. | 10:48:35 |
| 14 | Q.   Yes.  It would be a major factor, and I | 10:48:39 |
| 15 | think as you said before, there would be sort of a | 10:48:42 |
| 16 | total pie that the senior managers had to work with | 10:48:44 |
| 17 | and they would have to figure out how to carve it | 10:48:48 |
| 18 | out, then allocate it out to the different employees | 10:48:50 |
| 19 | in the group based upon the ranking that you | 10:48:52 |
| 20 | provided and perhaps other factors, right? | 10:48:54 |
| 21 | A.   Yes. | 10:48:58 |
| 22 | Q.   You also mentioned, I think that you | 10:49:00 |
| 23 | could -- or that people at Intel sometimes could | 10:49:06 |
| 24 | negotiate salaries -- sorry, negotiate raises at | 10:49:09 |
| 25 | other times of the year.  Is that what you said? | 10:49:13 |

Page 65

| | | |
|---|---|---|
| 1 | MS. SHAVER:  Objection, assumes facts not | 12:22:52 |
| 2 | in evidence. | 12:22:53 |
| 3 | THE WITNESS:  I didn't calculate. | 12:22:55 |
| 4 | BY MR. HINMAN: | 12:22:57 |
| 5 | Q.  Well, you said -- didn't you tell me | 12:22:57 |
| 6 | earlier that that was part of your decision to go to | 12:22:59 |
| 7 | the Lab? | 12:23:01 |
| 8 | A.  Yes, but I didn't do a financial | 12:23:01 |
| 9 | calculation. | 12:23:04 |
| 10 | Q.  You put no value on that whatsoever? | 12:23:04 |
| 11 | MS. SHAVER:  Objection, mischaracterizes | 12:23:06 |
| 12 | testimony. | 12:23:08 |
| 13 | THE WITNESS:  I placed value on it.  I | 12:23:08 |
| 14 | didn't do a financial or a monetary calculation of | 12:23:11 |
| 15 | what that would be worth. | 12:23:14 |
| 16 | BY MR. HINMAN: | 12:23:15 |
| 17 | Q.  So there was greater than zero, but you | 12:23:15 |
| 18 | didn't know or think about how much greater than | 12:23:19 |
| 19 | zero; is that right? | 12:23:22 |
| 20 | A.  I didn't do a numeric calculation. | 12:23:23 |
| 21 | Q.  Okay.  So when you left Marvell, is it | 12:23:31 |
| 22 | right to say -- well, do you know how much you were | 12:23:34 |
| 23 | making all in when you left Marvell? | 12:23:37 |
| 24 | MS. SHAVER:  Objection, vague. | 12:23:44 |
| 25 | THE WITNESS:  Are you referring to salary | 12:23:46 |

Page 118

```
 1              THE WITNESS:  Do I have personal -- or do I    13:43:04

 2   have knowledge of who served on which boards?          13:43:05

 3   BY MR. HINMAN:                                         13:43:12

 4      Q.   Do you have any personal knowledge of the      13:43:12

 5   extent of any supposed agreement beyond the six that   13:43:15

 6   are alleged in the complaint?  Or even of those, for   13:43:21

 7   that matter.  Do you know anything about any of        13:43:24

 8   that, personally?                                      13:43:32

 9      A.   I know of the eight contracts that were        13:43:35

10   list -- or the -- I know of the agreements that have   13:43:40

11   been mentioned in the complaint.  And I know of the    13:43:42

12   relationships of the CEOs with each other.             13:43:46

13      Q.   Is there any agreement alleged that Adobe      13:43:50

14   couldn't cold call Intel?  Yes or no.                  13:43:53

15      A.   Not that I'm aware of.                         13:43:59

16      Q.   Okay.  There is an agreement alleged that      13:44:02

17   Adobe couldn't cold call Apple, correct?               13:44:04

18      A.   Alleged, yes.                                  13:44:06

19      Q.   If Adobe needed to hire a software engineer    13:44:08

20   like yourself and they couldn't cold call into         13:44:10

21   Apple, doesn't that follow as a logical matter that    13:44:16

22   they are more likely to cold call into Intel?          13:44:18

23              MS. SHAVER:  Objection to form.             13:44:23

24              THE WITNESS:  I'm not sure.  Your question   13:46:01

25   is because I have one less company to hire from,       13:46:06
```

Page 143

```
 1    does that increase the chances that I might hire        13:46:10

 2    from any particular company or recruit or cold call?    13:46:13

 3    And I'm not sure.                                       13:46:19

 4    BY MR. HINMAN:                                          13:46:21

 5       Q.   Okay.  Well, let me ask it this way.  If        13:46:21

 6    there is a company that you can't cold call into,       13:46:24

 7    doesn't that make it more likely that you're going      13:46:27

 8    to cold call into any or all of the other companies     13:46:30

 9    that are available to you?                              13:46:38

10           MS. SHAVER:  Same objection.                     13:46:44

11           THE WITNESS:  Again, you're using -- you         13:47:07

12    have one less company that you can hire or you can      13:47:12

13    recruit from.  But that doesn't necessarily increase    13:47:14

14    or decrease the probability that you're going to        13:47:18

15    call any other particular company.                      13:47:21

16       Q.   Well, it's certainly not going to decrease      13:47:24

17    it, is it?                                              13:47:25

18       A.   No.                                             13:47:26

19       Q.   It might not affect it or it might increase     13:47:26

20    it; is that fair?                                       13:47:29

21       A.   Yes.                                            13:47:33

22       Q.   Is there anything about these seven             13:47:40

23    companies that you think that the employees are         13:47:44

24    particularly well-suited to work at the other           13:47:49

25    companies, as opposed to the scores of other            13:47:53
```

Page 144

| | | |
|---|---|---|
| 1 | A.   If they were looking for an experienced | 13:51:23 |
| 2 | candidate. | 13:51:25 |
| 3 | Q.   As opposed to an inexperienced one? | 13:51:25 |
| 4 | A.   An inexperienced candidate, I think you | 13:51:28 |
| 5 | might have a slightly different pool, including the | 13:51:30 |
| 6 | colleges and universities that they go after. | 13:51:34 |
| 7 | Q.   Okay.  But in terms of experienced | 13:51:36 |
| 8 | candidates, I thought what I understood you to be | 13:51:38 |
| 9 | saying is that the employees of these companies are | 13:51:41 |
| 10 | particularly attractive. | 13:51:44 |
| 11 | A.   Yes. | 13:51:48 |
| 12 | Q.   All right.  So if one of the sources of | 13:51:49 |
| 13 | attractive candidates is not available, wouldn't | 13:51:56 |
| 14 | that really tend to increase the incentive to search | 13:52:00 |
| 15 | in the other attractive employee pools? | 13:52:07 |
| 16 | MS. SHAVER:  Objection, asked and | 13:52:11 |
| 17 | answered. | 13:52:15 |
| 18 | THE WITNESS:  From a probability point of | 13:52:16 |
| 19 | view, yes. | 13:52:23 |
| 20 | BY MR. HINMAN: | 13:52:27 |
| 21 | Q.   Now, in terms of your job search in 2008, I | 13:52:27 |
| 22 | take it that you would claim in the case that you | 13:52:40 |
| 23 | didn't have to compete against Google employees for | 13:52:42 |
| 24 | that position at Intel because of the agreement | 13:52:48 |
| 25 | between those two companies; is that correct? | 13:52:52 |

Page 147

```
 1     Q.    ███████████████████████████        15:25:17

 2   ██████████████████████████████             15:25:22

 3         MS. SHAVER:  Objection, calls for     15:25:26

 4   speculation.                                15:25:28

 5         THE WITNESS:  I don't know.           15:25:30

 6   BY MR. HINMAN:                              15:25:31

 7     Q.    ██████████████████████████         15:25:31

 8         MS. SHAVER:  Same objection.          15:25:35

 9         THE WITNESS:  I don't know.           15:25:36

10   BY MR. HINMAN:                              15:25:38

11     Q.    Well, those were alternative choices that   15:25:38

12   you had, right?                             15:25:40

13     A.    I don't agree with the premise.     15:25:53

14     Q.    You told me earlier today that you could   15:25:54

15   work at any company that had software, right?  Yes   15:25:56

16   or no, you told me that?                    15:26:11

17     A.    I can contribute to any company that   15:26:13

18   produces software, right.                   15:26:14

19     Q.    And so at some level, any company that   15:26:16

20   produces software is in competition for, not you   15:26:22

21   personally, but employees like you, right?  15:26:26

22         MS. SHAVER:  Object to form.          15:26:31

23         THE WITNESS:  Again, I am not agreeing with   15:26:43

24   your word "compete."                        15:26:45

25   BY MR. HINMAN:                              15:27:03
```

Page 197

```
 1   STATE OF CALIFORNIA      ) ss:
 2   COUNTY OF MARIN          )
 3
 4       I, ASHLEY SOEVYN, CSR No. 12019, do hereby
 5   certify:
 6       That the foregoing deposition testimony was
 7   taken before me at the time and place therein set
 8   forth and at which time the witness was administered
 9   the oath;
10       That the testimony of the witness and all
11   objections made by counsel at the time of the
12   examination were recorded stenographically by me,
13   and were thereafter transcribed under my direction
14   and supervision, and that the foregoing pages
15   contain a full, true and accurate record of all
16   proceedings and testimony to the best of my skill
17   and ability.
18       I further certify that I am neither counsel for
19   any party to said action, nor am I related to any
20   party to said action, nor am I in any way interested
21   in the outcome thereof.
22       IN THE WITNESS WHEREOF, I have transcribed my
23   name this 22nd day of October, 2012.
24
                          ASHLEY SOEVYN, CSR 12019
25
```

Page 233

# Exhibit C

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

1                 UNITED STATES DISTRICT COURT

2       NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

3

4        -------------------------

5        IN RE: HIGH-TECH EMPLOYEE )

6        ANTITRUST LITIGATION      ) No. 11-CV-2509-LHK

7        -------------------------

8

9

10          HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

11

12

13        VIDEOTAPED DEPOSITION OF SIDDHARTH HARIHARAN

14                 San Francisco, California

15                  Friday, October 12, 2012

16                        Volume I

17

18

19

20      Reported by:

21      ASHLEY SOEVYN

22      CSR No. 12019

23      Job No. 1541277

24

25      PAGES 1 - 310

                                            Page 1

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

| | | |
|---|---|---|
| 1 | explored business opportunities.  I don't know if I | 14:28:36 |
| 2 | ever got a response from them. | 14:28:38 |
| 3 | Q.   So the business partnership possibilities | 14:28:40 |
| 4 | that you explored with Google those happened after | 14:28:43 |
| 5 | you founded InEarth? | 14:28:47 |
| 6 | A.   I think so, yes. | 14:28:52 |
| 7 | Q.   And so far those have not born any fruit? | 14:28:53 |
| 8 | A.   I don't think so. | 14:29:02 |
| 9 | Q.   If you were to work at Google, what | 14:29:03 |
| 10 | position do you think you would be qualified to | 14:29:05 |
| 11 | fill? | 14:29:07 |
| 12 | A.   Well, I'm a software engineer with a ton of | 14:29:07 |
| 13 | experience with graphics, 3D math, talking about all | 14:29:12 |
| 14 | the things that Google does, so -- and I'm a | 14:29:16 |
| 15 | generalist, I probably be able to fill a lot of | 14:29:23 |
| 16 | positions there.  I don't know exact positions, you | 14:29:27 |
| 17 | know, I'm not that strong in back end server work, | 14:29:30 |
| 18 | but I've done a lot of server work as well -- a lot | 14:29:34 |
| 19 | of -- because with Remoto and -- with a lot of | 14:29:39 |
| 20 | things, I've just done a lot of server work.  They | 14:29:42 |
| 21 | do a lot of that as well.  I don't know.  There is | 14:29:45 |
| 22 | ton of positions I could fill. | 14:29:48 |
| 23 | Q.   Would it concern you in applying for a | 14:29:55 |
| 24 | company like Google that they are not a video game | 14:29:57 |
| 25 | company? | 14:30:00 |

Page 179

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
 1        A.    It has nothing to do with it.  As a        14:30:01

 2   software engineer, from the video game world, I can    14:30:04

 3   work pretty much anywhere.  In fact, that was the       14:30:07

 4   case when -- well, it's been the case -- I know many    14:30:11

 5   people that have worked in gaming that have jumped      14:30:15

 6   to Adobe that have worked at Apple, worked at          14:30:17

 7   Google.  I know somebody who worked at NASA who came   14:30:22

 8   to Lucasfilm.                                          14:30:25

 9        So it's software engineering at the end of        14:30:27

10   the day.  It's a lot easier, I think, for a gaming     14:30:30

11   engineer.  A person that's worked on games to go       14:30:33

12   work for any of the large software companies because   14:30:40

13   the level of software engineering that game            14:30:43

14   developers do is very, very computationally            14:30:51

15   critical.  And there's just so much commonality.       14:30:53

16   The only difference is -- do you know the difference   14:30:57

17   between a game and an application?                      14:31:01

18        Q.    Why don't you tell me.                      14:31:07

19        A.    An application is no real different from a  14:31:14

20   game.  A game is just an interactive application.      14:31:17

21   It's a 3D -- it's could be a 3D application.  It's     14:31:21

22   something with graphics, you know.  A game didn't      14:31:24

23   even have graphics in the past.  But there's no        14:31:25

24   difference between an application and a game.           14:31:25

25        How you monetize it -- your audience might        14:31:32
```

Page 180

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
 1    be different.  But there's no difference between an       14:31:37
 2    application and a game.  It's the same thing.  Just       14:31:38
 3    one happens -- you know, there are 3D applications,       14:31:40
 4    too.  You know, 3D Studio Math, Maya, you know,          14:31:44
 5    those are applications with actual 3D geometry, a        14:31:45
 6    lot of 3D math.  You know, you're doing rendering        14:31:53
 7    there.  It has a lot of the same things.  It's just      14:31:56
 8    you're not sitting there playing with a joystick.        14:31:57
 9    That's a completely different thing.  That's a small     14:32:01
10    component at the end.                                     14:32:04
11          But there's no -- as far as computational          14:32:06
12    complexity, the type of coding that you do.  Like,       14:32:07
13    if you put me in front of code that was written          14:32:12
14    by -- for Microsoft Word, I would being able to know     14:32:16
15    what it did with enough time, just like any engineer     14:32:20
16    would.  So it's -- yeah, software engineering at the     14:32:25
17    end of the day.                                           14:32:29
18        Q.   ████████████████████████████                    14:32:30
19        A.   I really enjoyed working at Lucasfilm.           14:32:34
20    I -- it's really tough because it depends on what        14:32:38
21    time period you're talking about, too.                   14:32:43
22        Q.   ████████████████████████████████████            14:32:45
23    ██████████                                               14:32:47
24        A.   ████████████████  ███████████████               14:32:50
25    █████████████████████████████████████████               14:32:53
```

Page 181

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
 1   STATE OF CALIFORNIA       ) ss:
 2   COUNTY OF MARIN           )
 3
 4        I, ASHLEY SOEVYN, CSR No. 12019, do hereby
 5   certify:
 6        That the foregoing deposition testimony was
 7   taken before me at the time and place therein set
 8   forth and at which time the witness was administered
 9   the oath;
10        That the testimony of the witness and all
11   objections made by counsel at the time of the
12   examination were recorded stenographically by me,
13   and were thereafter transcribed under my direction
14   and supervision, and that the foregoing pages
15   contain a full, true and accurate record of all
16   proceedings and testimony to the best of my skill
17   and ability.
18        I further certify that I am neither counsel for
19   any party to said action, nor am I related to any
20   party to said action, nor am I in any way interested
21   in the outcome thereof.
22        IN THE WITNESS WHEREOF, I have transcribed my
23   name this 22nd day of October, 2012.
24
25                              _____
                                ASHLEY SOEVYN, CSR 12019
```

Page 310

# Exhibit D

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

1            UNITED STATES DISTRICT COURT

2     NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

3

4     --------------------------

5     IN RE: HIGH-TECH EMPLOYEE )

6     ANTITRUST LITIGATION      ) No. 11-CV-2509-LHK

7     --------------------------

8

9

10        HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

11

12

13        VIDEOTAPED DEPOSITION OF MICHAEL DEVINE

14              San Francisco, California

15             Wednesday, October 24, 2012

16                   Volume I

17

18

19

20    Reported by:

21    ASHLEY SOEVYN

22    CSR No. 12019

23    JOB No. 1545479

24

25    PAGES 1 - 265

Veritext National Deposition & Litigation Services
866 299-5127

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
 1        A.    I would work in any market domain.        12:03:02

 2        Q.    What about -- what types of companies could  12:03:07

 3   you work for?                                        12:03:12

 4        A.    Any type of company that needed software   12:03:13

 5   engineering expertise.  Or any company that was      12:03:18

 6   interested in my expertise in any of these           12:03:27

 7   particular market domains.  There's this other thing 12:03:31

 8   that some tech people do, which is technical product 12:03:34

 9   management or we call them PMs at Microsoft.          12:03:38

10   Technical background, but they understand the         12:03:45

11   features and functions of the product space.          12:03:47

12          I could kind of work in both those areas.      12:03:55

13   Yeah, actually quite -- very flexible.  So the        12:04:05

14   common threads are not restricting, they're an        12:04:14

15   advantage within that domain, but it's not that I     12:04:17

16   can't jump into anything that's completely foreign    12:04:20

17   to me and do it.                                      12:04:22

18        Q.    You could work for any company that needs   12:04:30

19   software engineering with your skill set?             12:04:33

20        A.    I think so.                                12:04:36

21        Q.    Looking at your resume, it appears that you 12:04:41

22   could work for technology companies and               12:04:46

23   non-technology companies?                             12:04:50

24        A.    Generally making technology for            12:04:57

25   non-technology companies.  That's probably --         12:04:59
```

Page 96

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

| | | |
|---|---|---|
| 1 | depends on whether a company thinks its a technology | 12:05:06 |
| 2 | company or not. | 12:05:10 |
| 3 |     Q.   You worked for Merrill Lynch, for | 12:05:10 |
| 4 | example? | 12:05:13 |
| 5 |     A.   Yes.  Which, depending on who you talk to, | 12:05:14 |
| 6 | is not a technology company.  My boss thought it was | 12:05:19 |
| 7 | a technology company, actually.  It is a matter of | 12:05:22 |
| 8 | perspective -- obviously they are a financial | 12:05:30 |
| 9 | company, but -- | 12:05:33 |
| 10 |     Q.   Could you work for a financial company? | 12:05:33 |
| 11 |     A.   Most, yes. | 12:05:44 |
| 12 |     Q.   Doing the software engineering work that | 12:05:47 |
| 13 | you're qualified to do? | 12:05:48 |
| 14 |     A.   Yes.  I could probably do mathematical | 12:05:50 |
| 15 | modeling work too, simulation.  Actually, when I was | 12:05:53 |
| 16 | at Merrill Lynch, I created a new way of looking at | 12:05:58 |
| 17 | a bond valuation over time -- that wasn't used for a | 12:06:09 |
| 18 | long time.  So that was a bit of an analytical thing | 12:06:14 |
| 19 | that would have been more of an analyst, bond | 12:06:18 |
| 20 | analyst kind of role.  But again, my job title was | 12:06:24 |
| 21 | mathematical programmer, I think at that time. | 12:06:30 |
| 22 |     Q.   ██████████████████ | 12:06:35 |
| 23 | ████████ | 12:06:37 |
| 24 | ██  ████ | 12:06:41 |
| 25 | ██  ██████████████ | 12:06:42 |

Page 97

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

1  STATE OF CALIFORNIA    ) ss:

2  COUNTY OF MARIN        )

3

4      I, ASHLEY SOEVYN, CSR No. 12019, do hereby

5  certify:

6      That the foregoing deposition testimony was

7  taken before me at the time and place therein set

8  forth and at which time the witness was administered

9  the oath;

10      That the testimony of the witness and all

11  objections made by counsel at the time of the

12  examination were recorded stenographically by me,

13  and were thereafter transcribed under my direction

14  and supervision, and that the foregoing pages

15  contain a full, true and accurate record of all

16  proceedings and testimony to the best of my skill

17  and ability.

18      I further certify that I am neither counsel for

19  any party to said action, nor am I related to any

20  party to said action, nor am I in any way interested

21  in the outcome thereof.

       IN THE WITNESS WHEREOF, I have transcribed my

22  name this 31st day of October, 2012.

23

24

                          _____
                          ASHLEY SOEVYN, CSR 12019
25

                                              Page 265