1  Richard M. Heimann (State Bar No. 63607)
   Kelly M. Dermody (State Bar No. 171716)
2  Eric B. Fastiff (State Bar No. 182260)
   Brendan Glackin (State Bar No. 199643)
3  Dean Harvey (State Bar No. 250298)
   Anne B. Shaver (State Bar No. 255928)
4  LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
   275 Battery Street, 29th Floor
5  San Francisco, California  94111-3339
   Telephone:  415.956.1000
6  Facsimile:  415.956.1008

7  Joseph R. Saveri (State Bar No. 130064)
   Lisa J. Leebove (State Bar No. 186705)
8  James G. Dallal (State Bar No.  277826)
   JOSEPH SAVERI LAW FIRM
9  255 California, Suite 450
   San Francisco, CA 94111
10 Telephone:  415. 500.6800
   Facsimile:   415. 500.6803

11

12 *Interim Co-Lead Counsel for Plaintiff Class*

13 [Additional counsel listed on signature page]

14

15          IN THE UNITED STATES DISTRICT COURT

16          FOR THE NORTHERN DISTRICT OF CALIFORNIA

17                    SAN JOSE DIVISION

18

19 IN RE: HIGH-TECH EMPLOYEE          Master Docket No. 11-CV-2509-LHK
   ANTITRUST LITIGATION
20                                    **JOINT CASE MANAGEMENT**
                                      **CONFERENCE STATEMENT**
21 THIS DOCUMENT RELATES TO:

22 ALL ACTIONS                        Date:        December 12, 2012
                                      Time:        2:00 p.m.
23                                    Courtroom: 8, 4th Floor
                                      Judge:       The Honorable Lucy H. Koh

24

25

26

27

28

1   The parties submit this joint statement for the December 12, 2012 Case Management

2   Conference.

3   **I.      Case Progress**

4   Since the September 12, 2012 Case Management Conference, the case has progressed as

5   follows.

6   Plaintiffs filed their Motion for Class Certification and supporting papers on October 1,

7   2012.  (Dkt. No. 187.)

8   Defendants filed their joint Opposition to Plaintiffs' Motion for Class Certification on

9   November 12, 2012.  (Dkt. No. 209.)  Concurrently, Defendants filed a Motion to Strike the

10  report of Plaintiffs' expert, Dr. Edward Leamer (Dkt. No. 210), and moved for an evidentiary

11  hearing on class certification issues.  (Dkt. No. 213.)  Plaintiffs objected to Defendants' Motion to

12  Strike and moved the Court to return the paper to Defendants or, in the alternative, for additional

13  pages in their Reply in support of the Motion for Class Certification.  (Dkt. No. 232.)  Plaintiffs

14  also opposed Defendants' request for an evidentiary hearing.  (Dkt. No. 237.)

15  The Court denied Plaintiffs' request to reject Defendants' Motion to Strike, but allowed

16  Plaintiffs 25 pages in which to respond. (Dkt. No. 242.)  The Court instructed that Defendants

17  would not be permitted a reply.  *Id*.  The Court also denied Defendants' motion for an evidentiary

18  hearing.  *Id*.

19  Therefore, Plaintiffs will file their Reply in support of class certification, including

20  arguments in opposition to Defendants' Motion to Strike, by December 10, 2012.  Plaintiffs' brief

21  will also include an objection to Defendants' submission of certain employee declarations in

22  support of their Opposition.  Defendants oppose the objection.  *See* Section III.A.3, *supra*.  The

23  hearing on Plaintiffs' Motion for Class Certification is set for January 17, 2013.  (Dkt. No. 183.)

24  **II.     Case Management**

25  The Court's September 12, 2012 Case Management Order set forth the major deadlines

26  for the litigation from class certification through trial.  (Dkt. No. 183.)  No party is aware of a

27  case scheduling dispute at this time.

28

JOINT CASE MGMNT CONFERENCE STATEMENT
                                                Master Docket No. 11-CV-2509-LHK

1

### III.    Discovery Progress

2

The fact discovery cutoff is March 29, 2013.  (Dkt. No. 183.)

3

Fact discovery is continuing while the parties brief class certification.  Defendants took

4

the depositions of all five named Plaintiffs between October 12, 2012 and October 29, 2012, and

5

deposed Plaintiffs' expert, Dr. Edward Leamer, on October 26, 2012.  Plaintiffs deposed ten fact

6

witnesses between August 2, 2012 and December 5, 2012, and have scheduled six additional

7

depositions for January and February, 2013.[1]  Plaintiffs have also deposed 30(b)(6) witnesses

8

regarding Defendants' data and deposed Defendants' expert, Professor Kevin Murphy, on

9

December 3, 2012.  Plaintiffs anticipate noticing additional depositions across the seven

10

Defendants in addition to former employees and third parties.

11

Plaintiffs have requested that certain Defendants supplement their document productions

12

with additional custodians and/or search terms, and the parties are meeting and conferring

13

regarding these requests.  Plaintiffs also served a Third Set of Requests for Production of

14

Documents on all Defendants on November 6, 2012.  Defendants' document production is on-

15

going.  For example, since the September 12, 2012 Case Management Conference, Google has

16

produced 133,536 pages, Adobe has produced 9,333 pages, and Intel has produced 4,802 pages.

17

The parties have continued to meet and confer about additional document productions from each

18

Defendant.

19

The parties are meeting and conferring regarding concerns that Plaintiffs have identified

20

with Defendants' privilege logs.  Plaintiffs anticipate that the parties may require Court

21

intervention to resolve certain privilege log disputes.  *See, e.g.*, Section III(A)(4).  There are no

22

discovery matters presently under submission to Magistrate Judge Grewal.

23

24

25

[1] Plaintiffs have deposed the following individuals: Arnnon Geshuri (Google), Sharon Coker (Lucasfilm), Deborah Conrad (Intel), Lori McAdams (Pixar), Jim Morris (Pixar), Pamela

26

Zissimos (Pixar), Donna Morris (Adobe), Jeff Vijungco (Adobe), Danielle Lambert (Apple), and Mark Bentley (Apple).  Plaintiffs have scheduled the depositions of the following individuals:

27

Laszlo Bock (Google), Shona Brown (Google), Paul Otellini (Intel), Bruce Chizen (Adobe), Ed Catmull (Pixar), and Bill Campbell (Intuit).

28

- 2 -

### A.    **Plaintiffs' Statement**

Plaintiffs wish to bring the following four discovery matters to the Court's attention.

#### 1.    **Delay in Deposition Scheduling**

On September 27, 2012 Plaintiffs requested a deposition date for Intel Senior Vice President of Human Resources Patricia Murray.  Despite numerous meet and confer efforts, Intel has not provided dates for Ms. Murray.

Plaintiffs' September 27, 2012 letter asked for deposition dates for Intel employees Patricia Murray, Deborah Conrad, and Paul Otellini.  With respect to Ms. Murray, Plaintiffs sought a deposition date on a convenient date and time during the last two weeks of October and the first two weeks of November.  The parties met and conferred numerous times during the month of October, 2012, and each time Intel was unable to provide a date for Ms. Murray.  Then, on November 16, 2012, Intel unilaterally notified Plaintiffs that Ms. Murray's deposition would take place at an unspecified date in February 2013.  Intel offered no justification for this delay, which is prejudicial and unacceptable to Plaintiffs.  Due to Plaintiffs' accommodations, Plaintiffs have so far deposed only one Intel fact witness, Deborah Conrad, during which time Intel's counsel objected to questions about emails between Ms. Murray and Intel CEO Paul Otellini based on the fact that Plaintiffs had not yet deposed these witnesses, who were purportedly more knowledgeable about the documents than Ms. Conrad.  However, Intel has not offered to produce Mr. Otellini until January 29, 2013, and has not provided a date for Ms. Murray at all.  On November 30, 2012 Plaintiffs issued a deposition notice for Ms. Murray for December 17, 2012.  Intel has not yet confirmed.

#### 2.    **Delay in Custodian Supplementation**

On October 13, 2012, Plaintiffs requested that all Defendants supplement their email custodian lists with specific individuals deemed to possess relevant information, based on Plaintiffs' review of Defendants' prior production and deposition testimony.  Meet and confer efforts with all Defendants have been on-going and supplemental productions are forthcoming

from Adobe, Intuit, and Intel.  Plaintiffs have no outstanding custodian issues with Pixar or Lucasfilm.

Apple and Google, however, have repeatedly delayed in responding to Plaintiffs' requests. Plaintiffs are concerned that this discovery will come too late to be of use in depositions and otherwise within the discovery time period.  Plaintiffs met and conferred with Apple on October 23 and 30, 2012, providing the basis for our request as to each individual.  On November 16, 2012, over a month after Plaintiffs' initial request, Apple agreed to collect and produce documents from just three of the twelve custodians Plaintiffs sought, including Steven Burmeister, an employee who provided a declaration in support of Defendants' opposition to class certification.  *See* Section III.A.3., *supra*.  Although Apple stated that it would begin collection of documents from the three agreed-to custodians, no documents have yet been produced, nor has Apple provided a date by which it will produce such documents.  The parties are continuing to meet and confer on one additional custodian, Tony Fadell.  Plaintiffs identified Mr. Fadell as an Apple executive who corresponded directly with Steve Jobs about whether it was permissible to "poach" from Google, and shared a sample document with Apple that informed our interest in Mr. Fadell as a custodian.  Apple continues to object to searching and producing Mr. Fadell's documents.  In the event that the parties cannot reach agreement on Mr. Fadell by December 10, 2012, Plaintiffs intend to move to compel.

Google has not committed to producing documents from five of the nine additional custodians Plaintiffs requested.[2]  Plaintiffs met and conferred with Google on October 24 and 30, 2012, providing the basis for our request as to each individual.  On November 20, 2012, five weeks after Plaintiffs made their initial request, Google agreed to produce documents from four of the seven initially-requested custodians.  Google objected to the other three on the basis of the

---

[2] Two custodians – Larry Page and Sergey Brin – were requested on November 21, 2012, and Plaintiffs do not take the position that Google has unreasonably delayed collecting and producing documents for these witnesses.  However, given their status as leaders of Google's Executive Management Committee, and the fact that the document productions to date contain some directly relevant email correspondence, Google cannot reasonably object to including them as document custodians.  Plaintiffs seek agreement from Google to search for and produce relevant documents.

cost of loading their documents and running the search terms.  On December 21, 2012, Plaintiffs advised Google that we maintain our request that all seven individuals be added as document custodians, and asked to meet and confer promptly regarding a schedule for producing these documents with due regard to the discovery deadline.[3]  Google has not responded.  In the event that the parties cannot reach agreement by December 10, 2012, Plaintiffs intend to move to compel.

### 3.    Employee Declarations

Defendants submitted eleven employee declarations in support of their opposition to class certification.  Defendants' expert, Kevin Murphy, advised that he relied on these declarations to inform his expert opinion; in fact, he states he personally interviewed nine of the eleven declarants.  *See* Appendix B to Docket No. 212.  Plaintiffs have asked Defendants to withdraw five of these declarations—Rosemary Arriada-Keiper, Steven Burmeister, Michelle Maupin, Danny McKell, and Mason Stubblefield—on the grounds that the Defendants either refused to produce documents for the witness or did not disclose the witnesses' identity (or did not disclose it in a timely fashion), and did not produce documents from the witnesses' files, impairing Plaintiffs' ability to explore whether documentary evidence exists from these witnesses that may contradict what these witnesses stated in their declarations.  Exclusion of evidence is the default remedy for failure to comply with Fed. R. Civ. P. 26(a)(1)(A)(i) discovery obligations.  *See* Fed. R. Civ. P. 37(c)(1).

Michelle Maupin (Lucasfilm): Ms. Maupin's declaration should be withdrawn for Lucasfilm's failure to respond to specific discovery requests about this employee from Plaintiffs. On March 14, 2012, Plaintiffs requested Maupin's documents, but Lucasfilm refused.  *See* March

---

[3] The three custodians at issue are Karine Karpati, Carson Page, and Patrick Flynn.  Ms. Karpati and Mr. Page are Google's Staffings Program Manager and Coordinator, respectively.  They were responsible for maintaining and implementing Google's Do Not Call policy under Arnnon Geshuri.  Mr. Flynn was a Google recruiter who answered questions by other recruiters on how the Do Not Call list should be appropriately implemented; he also engaged in direct communications with Apple executive Mark Bentley regarding poaching.  Google objected to adding these witnesses on the basis that loading their documents into a review system would be too costly.  Plaintiffs were not persuaded.  Google employs hundreds of recruiters; our request is modest and proportional.

JOINT CASE MGMNT CONFERENCE STATEMENT
Master Docket No. 11-CV-2509-LHK

1   14, 2012 Letter to Defense Counsel from Dean Harvey; March 26, 2012 Letter from Cody Harris

2   to Dean Harvey.   Defendants have engaged in litigation by surprise by relying on statements

3   from this employee, after maintaining that she was not a relevant witness and foreclosing

4   discovery.  Kevin Murphy interviewed Ms. Maupin on August 30, 2012.

5        Steven Burmeister (Apple): Likewise, as described above in Section II.A.2., before

6   receiving the declaration of Steven Burmeister, Plaintiffs requested Mr. Burmeister's documents

7   on October 13, 2012.[4]  Although Apple had knowledge that this witness possessed relevant

8   information, Apple did not list this witness on its Rule 26(a) disclosures and did not agree to

9   Plaintiffs' request for his documents until November 16, 2012, which Plaintiffs still lack.  Kevin

10  Murphy interviewed Mr. Burmeister on August 30, 2012.

11       Mason Stubblefield (Intuit):  Mr. Stubblefield was not listed on Intuit's initial Rule 26(a)

12  disclosures, but was added to its supplemental Rule 26(a) disclosures after Plaintiffs' Motion for

13  Class Certification was filed on October 1, 2012.[5]  Significantly, the relevance of this employee's

14  knowledge was known three months earlier, as defense expert Kevin Murphy interviewed Mr.

15  Stubblefield on July 26, 2012.  Mr. Stubblefield was not included as a document custodian, and

16  his documents have not been produced.

17       Rosemary Arriada-Keiper (Adobe):  Ms. Arriada-Keiper likewise did not appear in

18  Adobe's initial Rule 26(a) disclosures, but appeared in its supplemental Rule 26(a) disclosures

19  after Plaintiffs filed their Motion for Class Certification on October 1, 2012.[6]  Ms. Arriada-

20  Keiper was not included as a document custodian, and her documents have not been produced.

21       Danny McKell (Intel):  Mr. McKell was added to Intel's supplemental Rule 26(a)

22  disclosures on July 12, 2012, but Intel did not add him to the document custodians and his

23  documents have not been produced.  Kevin Murphy interviewed Mr. McKell on June 19, 2012.

24  ───────────────
    [4] Apple produced Steven Burmeister as one of three 30(b)(6) witnesses to testify on the discrete
25  topic of Apple's electronically stored information relating to personnel and human resources *data*.
    He was not identified as a witness on Apple's compensation policy, nor did Plaintiffs question
26  him on such.  At the outset, Mr. Burmeister stated that he was prepared to testify only as to stock-
    based compensation and bonus *data*.  *See* Burmeister Dep. at 7:11-21.
27  [5] Intuit served its supplemental disclosures on October 18, 2012.
    [6] Adobe served its supplemental disclosures on October 24, 2012.
28                                          - 6 -        JOINT CASE MGMNT CONFERENCE STATEMENT
                                                         Master Docket No. 11-CV-2509-LHK

1    In addition, during the deposition of Dr. Kevin Murphy on December 2, 2012, Plaintiffs

2    learned for the first time that the declarants supplied information to Dr. Murphy in their

3    interviews that was not disclosed in their declarations.  Dr. Murphy also relied on the interviews

4    to draft his report.  However, Dr. Murphy could not testify to all the details about the interviews.

5    Plaintiffs also learned that Dr. Murphy's colleagues at Navigant apparently have notes or

6    summaries of these interviews that were not produced.  Defendants say that the notes need not be

7    produced because Dr. Murphy never saw them, even if the notes were taken by the very same

8    personnel who assisted Dr. Murphy in writing his report.  There is no other record of what

9    happened in these interviews.

10    The bottom line is that Dr. Murphy is saying that he conducted many interviews that

11    support his "understanding" of the Defendants' hiring and compensation practices, and hence his

12    opinions, but neither he nor the Defendants can or will say what exactly happened in those

13    interviews.  Defendants believe that if people other than Dr. Murphy keep the record of the

14    interviews, that record can be kept secret.  This clever plan appears designed to prevent Plaintiffs

15    from testing what appears to be the primary factual basis for the assertions made by Dr. Murphy.

16    This "plan" violates the Federal Rules.  Rule 26(a)(2)(ii) requires disclosure of "the facts

17    or data considered by the witness in forming" his or her opinions.  Defendants could have

18    accomplished this disclosure in any number of ways, but chose not to.  Their options included

19    recording the interviews and producing the recordings; producing declarations that included the

20    complete contents of the interviews and not just the parts helpful to Dr. Murphy; or by producing

21    contemporaneous written summaries or notes.  Defendants rejected any of these options for

22    complying with Rule 26(a)(2)(ii).

23    Defendants miss the mark by invoking Rule 26(b)(3)(A) governing work product,

24    including that of trial "consultants."  This is a question of the disclosures required of a testifying

25    expert under Rule 26(a)(2); if the required disclosures have not been made, the expert's opinion is

26    not admissible.  The parties' agreement that preliminary or draft work product need not be

27    exchanged is inapposite for the same reason.  It nowhere says a party may avoid disclosing relied-

28

JOINT CASE MGMNT CONFERENCE STATEMENT
                                    Master Docket No. 11-CV-2509-LHK

1   upon facts by simply keeping the only record of those facts in "draft" form.  Defendants' tardy

2   and unsupported insinuation that Plaintiffs have somehow themselves abused the stipulation is

3   false; the draft data work that ultimately became the final regression is just the sort of

4   "preliminary or intermediate calculations, computations or other data runs" that the parties agreed

5   to exempt from discovery (Docket No. 104) rather than the factual basis for an expert opinion as

6   is the case with witness interviews.  If this non-parallel accusation about Plaintiffs' expert were a

7   real issue, Plaintiffs submit that Defendants would have raised it in their opposition, which they

8   did not.

9        Rule 26(b)(3) also does not apply because Dr. Murphy and his staff are not consultants;

10   Dr. Murphy is a testifying witness.

11        The failure to disclose the contents of these interviews is an additional reason that

12   Plaintiffs object to the declarations that Dr. Murphy relied on[7] and also to the report of Dr.

13   Murphy, as will be set forth more fully in their reply papers.

14              **4.**     **Improper Designations on Privilege Logs**

15        For many months Plaintiffs have met and conferred with Defendants on issues with their

16   privilege logs.  Each Defendant has revised its log to address questions by Plaintiffs and/or

17   withdrawn assertions of privilege from certain documents originally listed.  These efforts are on-

18   going.  However, one dispute has reached a final impasse.

19        Specifically, on November 6, 2012, Plaintiffs requested that Google produce six

20   documents which Google withheld or redacted for privilege.  *See* November 6, 2012 Letter to

21   Eric Evans from Joseph Forderer.  These six documents were sent by Google employees to

22   Intuit's Chairman of the Board of Directors, Bill Campbell, at Mr. Campbell's Intuit email

23   address—namely bill_campbell@intuit.com.  The documents do not appear to contain legal

24   advice.  In addition, Google waived any applicable privilege by transmitting these documents to

25   Bill Campbell, who does not have an attorney-client relationship with Google's in-house counsel.

26

27   [7] These declarants are: Steven Burmeister, Chris Galy, Michelle Maupin, Lori McAdams, Danny McKell, Donna Morris, Mason Stubblefield, Jeff Vijungco, and Frank Wagner.

28   - 8 -     

1 Waiver is further confirmed by the fact that Google sent documents to Mr. Campbell via an email

2 address in which Google and Mr. Campbell had no reasonable expectation of privacy.  Google

3 has agreed to produce four of the documents at issue, *but has refused to produce the remaining*

4 *two*.  *See* November 29, 2012 Letter to Joseph Forderer from Eric Evans.  If Google does not

5 withdraw its claim of privilege and produce these two remaining Bill Campbell documents,

6 Plaintiffs intend to move to compel.

   **B.**  **Defendants' Statement**

     **1.**  **Plaintiffs' Further Deposition Requests**

9    Plaintiffs' complaint about Ms. Murray's deposition is much ado about nothing.  Intel is

10 not objecting to Ms. Murray's deposition or refusing to schedule it.  Rather, Intel has been

11 diligently trying to find a workable date for her deposition.  Given her busy schedule as a senior

12 executive at Intel, that date will be in early February.  Plaintiffs have not, and cannot, show any

13 prejudice from Ms. Murray's deposition being conducted in early February given that it will take

14 place, in any event, after plaintiffs file their class certification reply and long before the March 29,

15 2013 fact discovery cut-off.

     **2.**  **Plaintiffs' Requests for Additional Document Custodians**

17    Contrary to Plaintiffs' suggestion, Apple and Plaintiffs have reached agreement on

18 virtually all of the additional Apple document custodians that Plaintiffs have requested.

19 Plaintiffs initially sought documents from fourteen supplemental Apple custodians.  After meet-

20 and-confer sessions on October 23, October 30, and November 16, 2012, Plaintiffs continued to

21 seek documents from six supplemental Apple custodians.  Apple has agreed to collect, review,

22 and produce documents for three of these custodians and has advised Plaintiffs that it is in the

23 process of doing so.  For a fourth proposed custodian, Plaintiffs indicated that they would

24 withdraw their request for his documents if Apple withdrew him as a potential trial witness, and

25 Apple has done so.  Apple has also confirmed that a fifth proposed custodian is no longer an

26 Apple employee, and that it has no documents for her within its possession, custody, or control.

27

28

JOINT CASE MGMNT CONFERENCE STATEMENT
Master Docket No. 11-CV-2509-LHK

1    With respect to the sixth and final proposed custodian, Tony Fadell, Plaintiffs have

2   identified no specific reason for needing his documents, apart from identifying a single document

3   in which he inquired about Apple's "poaching" practices, and Apple has explained that it does not

4   believe adding him as a custodian is warranted.  This is particularly true in light of the massive

5   effort and expense that Apple has already undertaken to collect, review, and produce documents

6   responsive to Plaintiffs' document requests—including from the eighteen Apple document

7   custodians that Plaintiffs previously requested in March and April 2012.  Apple has asked that, if

8   Plaintiffs continue to seek documents from the sixth additional custodian, they explain the basis

9   for their request.  Plaintiffs have yet to respond.  In the event that Apple and Plaintiffs are

10   ultimately unable to reach agreement as to this one remaining custodian, they will bring a motion

11   before Magistrate Judge Grewal, as this Court ordered on June 5, 2012 (*see* Dkt. No. 148).

12    With respect to Google, Plaintiffs' statement is replete with mischaracterizations about the

13   status of the discovery meet and confer process.  First, as Plaintiffs acknowledge, Plaintiffs and

14   Google are still in the middle of the meet and confer process with respect to additional custodians.

15   Second, Google has offered specific reasons why the inclusion of these custodians is not likely to

16   lead to nonduplicative, relevant evidence.[8]  In addition, Google has explained to Plaintiffs the

17   significant costs that would be incurred simply by processing the documents to render them

18   capable of being searched.  Plaintiffs' most recent correspondence on this issue, however, failed

19   to offer any specific grounds or explanation to counter Google's specific points positions or

20   support their continued insistence to include these additional custodians.  The parties have yet to

---

[8] In particular, two of the custodians requested by Plaintiffs (Karine Karpati and Carson Page)  were junior Google employees and had no decision-making authority regarding the scope or execution of Google's recruiting policies. Indeed, the emails that Plaintiffs rely on to support adding Ms. Karpati and Mr. Page as custodians confirm as much, and show that both elevated substantive issues regarding the scope of Google's "do not call" policy to Arnnon Geshuri, the former director of staffing. Google has produced Mr. Geshuri's documents and Plaintiffs have deposed him. As for the third requested custodian (Patrick Flynn), Plaintiffs point to one email that does not relate to the issues in the case at all, but instead reflects Apple's sensitivities that Mr. Flynn, a former Apple recruiter hired by Google, was targeting Apple employees based on the knowledge he  acquired while at Apple.  And the only other email relied on by Plaintiffs to support adding Mr. Flynn as a custodian has nothing to do with the alleged "do not cold call" agreements (and Flynn is simply copied in an email exchange between Geshuri and another employee).

- 10 -

1  reach an impasse on this issue, but if they do, they will submit the dispute to Magistrate Judge
2  Grewal per the Court's June 5, 2012 Order.

3          With respect to Sergey Brin and Larry Page as proposed custodians, the parties have not
4  even begun to meet and confer on this issue, so it is hardly ripe for the Court's consideration.  As
5  Plaintiffs note, Google just received this request and has not had a reasonable opportunity to
6  respond.  Google is already in the process of running analytics (by applying the agreed upon
7  search terms to Brin and Page's custodial files) to determine the likelihood that the searches will
8  yield nonduplicative, relevant material.  Google notes that Plaintiffs have received scores of
9  emails that were sent to the Google Executive Management Group ("EMG") concerning the
10 issues in this case as a result of productions from the files of custodians who were on EMG at the
11 time, including Eric Schmidt (who was CEO during the relevant period).   Google plans to
12 arrange a mutually agreeable time with Plaintiffs to meet and confer after Google has completed
13 its analytics review.

14                     **3.**      **Defendants' Declarations in Support of Opposition to**
                                **Class Certification**
15
16          No legal or factual basis exists for Plaintiffs' demand that Defendants withdraw certain
17 employee declarations in support of the opposition to class certification, which discuss
   Defendants' recruiting and compensation policies and practices.  Plaintiffs' main argument is that
18 they supposedly have been "impaired" in exploring documentary evidence because some of the
19 witnesses were not identified in Defendants' initial disclosures served at the start of the case.  As
20 the notes to the 1993 amendment to Fed. R. Civ. P. 26(e) make clear, however, "there is no
21 obligation to provide supplemental or corrective information that has otherwise been made known
22 to the parties in writing or during the discovery process."  Plaintiffs were well aware of each
23 witness before the declarations were filed, and had been aware of some witnesses for months in
24 advance.  Plaintiffs have had every opportunity to seek discovery from these witnesses directly
25 and on the subjects of their declarations, which include Defendants' recruiting and compensation
26 policies and practices.  And they have done so.  Contrary to Plaintiffs' suggestion, in response to
27

28                                              - 11 -            JOINT CASE MGMNT CONFERENCE STATEMENT
                                                                 Master Docket No. 11-CV-2509-LHK

1   Plaintiffs' discovery requests, Defendants have produced thousands of documents and produced

2   witnesses for deposition on these very subjects.  Plaintiffs have even deposed one of the same

3   witnesses they now claim was not properly disclosed.

4        Their fall back argument—that the witnesses were not included as document custodians—

5   fares no better.  The parties agreed that documents would be produced on two tracks: "Track

6   One" would include targeted searches for specific types of high level documents, summaries, and

7   analyses, and "Track Two" would include the application of search terms to certain custodians'

8   electronically stored information ("ESI"), as agreed to by the parties.  *See* June 1, 2012 Joint Case

9   Management Conference Statement (Dkt. 142) at 12, 17.  For Track One, each Defendant

10  produced from their respective compensation and recruiting departments thousands of documents

11  that reflect, analyze or study the company's compensation and recruiting policies and practices.

12  Plaintiffs have the documents that are the subject of the declarations and opposition to the class

13  motion.

14       Plaintiffs' real complaint is that the declarants were not Track Two custodians, and so

15  search terms were not run against their electronic files.  But Plaintiffs have cited no authority for

16  the proposition that a declarant must also be an ESI custodian.  In addition, Plaintiffs suffered no

17  prejudice from the fact that the declarants were not ESI custodians.  As noted, Plaintiffs have

18  thousands of documents regarding each Defendant's recruiting and compensation policies and

19  practices, which are the subject of the declarations.  They also ignore the fact that the parties

20  agreed to a list of custodians subject to reasonable requests by Plaintiffs for additional custodians

21  based on Plaintiffs' review of Defendants' productions.  The parties understood this would be an

22  iterative process, as it is in every large case.  Indeed, Plaintiffs have asked Defendants to collect

23  emails from additional custodians and to run additional search terms.  However, as noted below,

24  Plaintiffs have not asked that most of the declarants be added as Track Two custodians.  They

25  cannot now complain that they didn't get documents that they never requested.

26       In short, all of the challenged declarations are properly before the Court, and Plaintiffs

27  have no basis to ask Defendants to withdraw them:

28

JOINT CASE MGMNT CONFERENCE STATEMENT
                    Master Docket No. 11-CV-2509-LHK

1    **Michelle Maupin (*Lucasfilm*)**:   Lucasfilm complied with Federal Rule of Civil

2    Procedure 26(a)(1)(A)(i) by disclosing Ms. Maupin in its August 22, 2012 Supplemental Rule 26

3    Initial Disclosures.  Since that date, Plaintiffs have deposed numerous witnesses associated with

4    all Defendants, but took no steps to seek Ms. Maupin's deposition until November 30, when they

5    informed Lucasfilm by letter that they plan to notice her deposition.  Neither did plaintiffs seek to

6    add Ms. Maupin as a document custodian, despite having received Lucasfilm's supplemental

7    disclosures and having seen her name mentioned in documents and depositions.  In fact, when

8    Plaintiffs did write to Lucasfilm on October 13, 2012 seeking additional document custodians—

9    which requests Plaintiffs have since withdrawn—Ms. Maupin was not among the three custodians

10   Plaintiffs requested.  *See* October 13, 2012 Letter from Anne Shaver to Cody Harris.  In short,

11   Plaintiffs had full notice of Ms. Maupin's potential relevance to this case, and ample opportunity

12   to seek her documents or deposition months prior to her submitting her declaration.  Essentially,

13   Plaintiffs argue that Lucasfilm is or should be legally barred from submitting a declaration from a

14   disclosed witness who was not an ESI document custodian.  But Plaintiffs have cited no authority

15   from any court suggesting that this provides a basis for striking evidence, and Defendants are

16   unaware of any authority that would support such draconian relief.

17        Plaintiffs are equally wrong when they accuse Lucasfilm of "refusing" to produce Ms.

18   Maupin's documents or make her a custodian.  On March 14, 2012, Plaintiffs requested that

19   Lucasfilm collect, review, and produce documents from some ***57*** custodians, of which Ms.

20   Maupin was one.  *See* March 14, 2012 Letter to Defense Counsel from Dean Harvey.  During

21   meet and confer negotiations, the parties agreed that Plaintiffs' proposed custodian list would be

22   culled down on a defendant-by-defendant basis.  To that end, on March 26, Lucasfilm suggested a

23   narrower list of 16 ESI custodians.  *See* March 26, 2012 Letter from Cody Harris to Dean Harvey.

24   Far from objecting to Ms. Maupin's exclusion from Lucasfilm's list, Plaintiffs never responded to

25   this letter.  Consequently, Lucasfilm embarked on a massive document collection, review, and

26   production effort using the 16 ESI custodians it had proposed and to which Plaintiffs had agreed.

27

28

JOINT CASE MGMNT CONFERENCE STATEMENT
                                        Master Docket No. 11-CV-2509-LHK

1   Lucasfilm has met its discovery obligations, and Ms. Maupin's declaration is properly before this

2   Court.

3          **Steven Burmeister (Apple):**  Plaintiffs' cannot credibly claim surprise as to Mr.

4   Burmeister's declaration.  On June 27, 2012, plaintiffs deposed Mr. Burmeister pursuant to a

5   30(b)(6) notice with regard to employee bonus and equity compensation.   Mr. Burmeister

6   testified that he is Apple's Senior Director of Compensation, that he is responsible for overseeing

7   Apple's compensation programs, and that he has worked for Apple in similar roles since 2001.

8   Mr. Burmeister also responded to Plaintiffs' questions regarding Apple's compensation practices.

9   *See, e.g.*, Burmeister Transcript, June 27, 2012 at 29:10-25 (explaining how Apple allocates funds

10  for employee bonuses), 30:4-31:18 (describing various bonus programs). Mr. Burmeister's

11  declaration in support of the opposition to class certification likewise addresses Apple's

12  compensation practices.

13         Plaintiffs' assertion that they have been impaired in their ability to seek discovery from

14  Mr. Burmeister regarding the subject of his declaration is unfounded.  Plaintiffs waited three and

15  a half months after deposing Mr. Burmeister, until mid-October 2012, to request that Apple add

16  him as a supplemental document custodian.  Apple has nevertheless agreed to collect, review, and

17  produce responsive, non-privileged documents from Mr. Burmeister, and has informed Plaintiffs

18  that it is in the process of doing so.

19         **Mason Stubblefield (Intuit):**  Intuit produced documents regarding its recruiting and

20  compensation policies and practices from its compensation department, including from the files

21  of Mr. Stubblefield.  And Plaintiffs have long been aware that Mr. Stubblefield is a person with

22  knowledge and a potential witness.  On June 26, 2012, at the 30(b)(6) deposition of Intuit

23  regarding its compensation data, Mr. Stubblefield was disclosed as the person in charge of Intuit's

24  Total Rewards (compensation) team.   See Deposition of Intuit, 30(b)(6) - Michelle Deneau at

25  16:13-15.  Plaintiffs abruptly ended the deposition on the ground that they wanted to take Mr.

26  Stubblefield's deposition instead of Intuit's designated witness. *Id.* at 50:13-51:010.  Despite

27  this, Plaintiffs have never sought to depose Mr. Stubblefield or any other employee in Intuit's

28                              - 14 -        JOINT CASE MGMNT CONFERENCE STATEMENT
                                             Master Docket No. 11-CV-2509-LHK

compensation department.  Nor have they asked that Mr. Stubblefield be added as a Track Two custodian.

*Rosemary Arriada-Keiper (Adobe)*:  Plaintiffs' claim of prejudice has no basis.  In support of Defendants' opposition to Plaintiffs' class certification motion, Adobe submitted a 10-page Declaration of Donna Morris that details Adobe's compensation practices, policies and strategies.  Ms. Morris is Senior Vice President of Global Human Resources at Adobe, responsible for all HR operations including the compensation, benefits, and recruiting teams.  Adobe named her in its initial disclosures and produced documents from her files.  Adobe also produced high-level documents regarding its compensation policies and practices.  On August 21, 2012, Plaintiffs deposed Ms. Morris about Adobe's compensation practices and policies.  In short, Plaintiffs have had a full opportunity to discover Adobe's compensation practices, policies, and strategies.

Ms. Arriada-Keiper reports to Ms. Morris, and has worked in compensation for over ten years.  She filed a one-page declaration that confirms the statements in Ms. Morris's declaration.  Plaintiffs cannot seriously claim surprise about Ms. Arriada-Keiper.  She is identified in Adobe's HR organizational charts that Plaintiffs requested to use for determining who should be included as Track Two custodians.  Her name appears on hundreds of documents produced on or before June 15, 2012, including emails sent by her, compensation presentations by her, and compensation committee minutes disclosing her role as the Manager of Global Compensation during the class period.  Although Plaintiffs have had these documents for months and have asked Adobe to search the files of other custodians in its compensation department, they have never asked that Ms. Arriada-Keiper be added as a Track Two custodian.

*Danny McKell (Intel)*:  As Plaintiffs note, on July 12, 2012, Intel properly disclosed Danny McKell in its Amended Initial Disclosures as an individual who may have discoverable information related to Intel's compensation practices that Intel would use to support its defenses.  Contrary to Plaintiff's claim, however, Intel was under no obligation to affirmatively add Mr. McKell to its list of document custodians, and there was no agreement that it

- 15 -

1   would.  Intel has fully complied with its discovery obligations with regard to Plaintiffs' document

2   requests.  As part of its Track 1 production, Intel produced over 10,000 documents related to its

3   compensation practices – the subject of Mr. McKell's declaration.

4           Moreover, Plaintiffs have been on notice of Mr. McKell's potential relevance to the case

5   for nearly five months and have had ample notice and opportunity to request his addition as a

6   document custodian.  They never did.  Indeed, when Plaintiffs requested additional document

7   custodians in mid-October, Intel specifically directed Plaintiffs to the Amended Initial

8   Disclosures.  Plaintiffs still never asked Intel to add Mr. McKell, despite asking for 11 other

9   custodians to be added.  Intel should not be held responsible for Plaintiffs' failure to seek Mr.

10  McKell's documents.  Accordingly, Intel declines to withdraw Mr. McKell's declaration in

11  support of Defendants' Opposition to Plaintiffs' Class Certification Motion.  Plaintiffs' request

12  that this Court disregard Mr. McKell's declaration has no support.

13          Finally, Plaintiffs' objection to the declarations because "Defendants have notes from

14  these interviews that were not produced, in violation of Fed. R. Civ. Pro. 26(a)(2)(ii)" is

15  unfounded.  Professor Murphy did not take notes and did not review or rely on any notes taken by

16  his staff, in forming his opinions.   The notes are plainly consultant work product.  Fed. R. Civ. P.

17  26(b)(3)(A).  With exceptions not relevant here, "a party may not discover documents and

18  tangible things that are prepared in anticipation of litigation or for trial by or for another party or

19  its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or

20  agent)." *Id.* (emphasis added).  Plaintiffs have not suggested or shown there is "substantial need

21  for the materials to prepare [Plaintiffs'] case and [that they] cannot, without undue hardship,

22  obtain their substantial equivalent by other means."  Fed. R. Civ. P. 26(b)(3)(A)(ii).[9]  To the

23  contrary, Plaintiffs have deposed three of the witnesses Professor Murphy interviewed, and could

24

25

26  [9]  Moreover, "disclosure of the mental impressions, conclusions, opinions, or legal theories of a
    party's attorney or other representative concerning the litigation" is not discoverable in any event.
27  Fed. R. Civ. P. 26(b)(3)(B).  That is what Plaintiffs claim Defendants should have produced,
    almost by definition.

28                                          - 16 -          JOINT CASE MGMNT CONFERENCE STATEMENT
                                                            Master Docket No. 11-CV-2509-LHK

1    have deposed the others, had they chosen to.  Both their declarations and prior interviews were

2    disclosed to Plaintiffs several weeks ago.

3            Not only is there no obligation to produce the consultant notes, the parties' January 23,

4    2012 stipulation relating to expert discovery also expressly excludes them from production.  (Dkt.

5    No. 104.)  Under the stipulation, as Plaintiffs repeatedly interpreted it in Dr. Leamer's deposition,

6    the parties are not required to divulge "notes, drafts, written communications, preliminary or

7    intermediate calculations, computations or other data runs, or other types of preliminary work

8    created by, for, or at the direction of testifying expert witnesses," unless the testifying expert

9    relied on it in forming his opinions as expressed in his report.  Again, Professor Murphy did not

10   rely on the notes.  Thus, "they are draft and preliminary work product that's not relied on for his

11   opinions, [that] he's not to disclose."   Leamer Dep. at 237.  Finally, Plaintiffs' position is very

12   surprising, considering their refusal to produce Dr. Leamer's very analyses that he used to test

13   whether the one he disclosed was too fragile to be considered reliable.  *See* Leamer Dep. at 353

14   ("I am not going to allow the stipulation to be eroded through the back door through, you know,

15   some kind of invitation to consider all draft and preliminary work product in some way the basis

16   for an opinion, if that's what you're getting at.").

17          In short, Professor Murphy produced the documents and data that he relied on for his

18   opinions.  Plaintiffs had a full opportunity to question him about his opinions, the bases for those

19   opinions, and anything he relied on.  If the Plaintiffs wish to challenge the conclusions he drew

20   from the interviews, they can take (and have taken) the depositions of the employees he

21   interviewed.  They have the declarations, documents produced in this case, and Professor

22   Murphy's report and deposition transcript, which gives them all they need to examine

23   Defendants' employees on those subjects.

24          ## 4.    **Privilege Logs**

25          Plaintiffs claim that Google should produce two privileged communications with Google

26   advisor Bill Campbell because (1) "[t]he documents do not appear to contain legal advice" and

27   (2) the communications were sent to Mr. Campbell's at his intuit.com email address and thus

28                                          - 17 -         JOINT CASE MGMNT CONFERENCE STATEMENT
                                                           Master Docket No. 11-CV-2509-LHK

1    Google waived the privilege.  Each of these arguments lacks merit.  First, Plaintiffs cannot

2    credibly assert that the documents "do not appear to contain legal advice" since —by definition—

3    they have never seen the documents.  Second, no waiver has occurred.  As Google explained to

4    Plaintiffs in a letter dated November 29, 2012,  Google has provided sworn testimony that Mr.

5    Campbell is a "senior advisor to Google" and that he has served in that capacity for many years.

6    Declaration of Alan Eustace, Dkt. No. 200 ¶ 4.  Indeed, Mr. Campbell was a Google advisor at

7    the time these privileged communications took place.

8            Moreover, as Mr. Eustace stated in his declaration, Google "understood and expected that

9    Mr. Campbell would maintain the confidentiality of Google's confidential and highly sensitive

10   information and not share that information with anyone other than those who owed a duty of

11   confidentiality to Google."  *Id.* ¶ 5.  Accordingly, those privileged communications are protected

12   from disclosure to the same degree as any other communication seeking or providing legal advice

13   between a company attorney and its employees, agents, directors, or consultants.  *See Gen-Probe*

14   *Inc. v. Becton, Dickinson and Co.*, Case Nos. 09-CV-2319, 10-CV-0602, 2012 WL 1155709 at

15   *3-4 (S.D. Cal. April 6, 2012) (holding that attorney-client privilege applied to communications

16   between outside counsel and an independent contractor, since the contractor displayed a "level of

17   involvement" with the company that "functioned no differently than that of an actual . . .

18   employee").  As the *Gen-Probe* court recognized, not extending the privilege to such outside

19   consultants would "'lead to attorneys not being able to confer confidentially with nonemployees

20   who, due to their relationship with the client, possess the very sort of information that the

21   privilege envisions flowing most freely.'"  *Gen-Probe*, 2012 WL 1155709 at *4 (quoting *In re*

22   *Bieter Co.*, 16 F.3d 929, 938 (8th Cir. 1994); see also *Genentech, Inc. v. Trustees of the Univ. of*

23   *Penn.*, Case No. C 10-2037, 2011 WL 5079531 at *2 (Oct. 24, 2011) (Magistrate Grewal stated:

24   "In the corporate context, communications between an outside consultant and a company's

25   corporate counsel may fall within the scope of the entity's attorney-client privilege where the

26   consultant acts as a 'functional employee' to the company"). The fact that the communications

27   were sent to Mr. Campbell's email address at intuit.com does not in any way vitiate the privilege

28

- 18 -
JOINT CASE MGMNT CONFERENCE STATEMENT
Master Docket No. 11-CV-2509-LHK

1    or constitute a waiver.  Moreover, Plaintiffs have identified no occasion in which the privileged

2    communications involving Mr. Campbell may have been disclosed in a manner that would give

3    rise to a claim of waiver."  *See* November 29, 2012 Letter from Eric Evans to Joseph Forderer.  If

4    Plaintiffs choose to move to compel the production of these documents pursuant to the Court's

5    procedures, Google will respond accordingly.

6

7    Dated:  December 5, 2012          LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP

8                                      By:        */s/ Kelly M. Dermody*
                                                  Kelly M. Dermody
9

10                                     Richard M. Heimann (State Bar No. 63607)
                                       Kelly M. Dermody (State Bar No. 171716)
11                                     Eric B. Fastiff (State Bar No. 182260)
                                       Brendan Glackin (State Bar No. 199643)
12                                     Dean Harvey (State Bar No. 250298)
                                       Anne B. Shaver (State Bar No. 255928)
13                                     275 Battery Street, 29th Floor
                                       San Francisco, California  94111-3339
14                                     Telephone:  415.956.1000
                                       Facsimile:  415.956.1008
15
                                       *Proposed Interim Co-Lead Counsel for Plaintiff Class*
16   Dated:  December 5, 2012          JOSEPH SAVERI LAW FIRM

17

18                                     By:        */s/ Joseph R. Saveri*
                                                  Joseph R. Saveri
19

20                                     Joseph R. Saveri (State Bar No. 130064)
                                       Lisa J. Leebove (State Bar No. 186705)
21                                     James G. Dallal (State Bar No.  277826)
                                       JOSEPH SAVERI LAW FIRM
22                                     255 California, Suite 450
                                       San Francisco, CA 94111
23                                     Telephone:  415. 500.6800
                                       Facsimile:   415. 500.6803
24
                                       *Interim Co-Lead Counsel for Plaintiff Class*
25

26

27

28

1   Dated:  December 5, 2012       O'MELVENY & MYERS LLP

2

3                                  By:        /s/ Michael F. Tubach
                                            Michael F. Tubach

4                                  George Riley
                                   Michael F. Tubach
5                                  Lisa Chen
                                   Christina J. Brown
6                                  Two Embarcadero Center, 28th Floor
                                   San Francisco, CA  94111
7                                  Telephone:  (415) 984-8700
                                   Facsimile:   (415) 984-8701
8
                                   *Attorneys for Defendant APPLE INC.*
9
10  Dated:  December 5, 2012       KEKER & VAN NEST LLP

11                                 By:        /s/ Daniel Purcell
                                            Daniel Purcell
12

13                                 John W. Keker
                                   Daniel Purcell
14                                 Eugene M. Page
                                   Paula L. Blizzard
15                                 710 Sansome Street
                                   San Francisco, CA  94111
16                                 Telephone:  (415) 381-5400
                                   Facsimile:   (415) 397-7188

17                                 *Attorneys for Defendant LUCASFILM LTD.*

18  Dated:  December 5, 2012       JONES DAY

19

20                                 By:        /s/ David C. Kiernan
                                            David C. Kiernan
21

22                                 Robert A. Mittelstaedt
                                   Craig A. Waldman
                                   David C. Kiernan
23                                 555 California Street, 26th Floor
                                   San Francisco, CA  94104
24                                 Telephone:  (415) 626-3939
                                   Facsimile:   (415) 875-5700
25
                                   *Attorneys for Defendant ADOBE SYSTEMS, INC.*
26

27

28                  - 20 -        JOINT CASE MGMNT CONFERENCE STATEMENT
                                   Master Docket No. 11-CV-2509-LHK

| | | |
|---|---|---|
| 1 | Dated:  December 5, 2012 | JONES DAY |
| 2 | | |
| 3 | | By:      /s/ Robert A. Mittelstaedt |
| | | Robert A. Mittelstaedt |
| 4 | | Robert A. Mittelstaedt |
| 5 | | Craig E. Stewart |
| | | 555 California Street, 26th Floor |
| 6 | | San Francisco, CA  94104 |
| | | Telephone:  (415) 626-3939 |
| 7 | | Facsimile:  (415) 875-5700 |
| 8 | | Catherine T. Zeng |
| | | 1755 Embarcadero Road |
| 9 | | Palo Alto, CA 94303 |
| | | Telephone:  (650) 739-3939 |
| 10 | | Facsimile:  (650) 739-3900 |
| 11 | | *Attorneys for Defendant INTUIT INC.* |
| 12 | Dated:  December 5, 2012 | MAYER BROWN LLP |
| 13 | | By:      /s/ Lee H. Rubin |
| 14 | | Lee H. Rubin |
| 15 | | Lee H. Rubin |
| | | Edward D. Johnson |
| 16 | | Donald M. Falk |
| | | Two Palo Alto Square |
| 17 | | 3000 El Camino Real, Suite 300 |
| | | Palo Alto, CA  94306-2112 |
| 18 | | Telephone:  (650) 331-2057 |
| | | Facsimile:  (650) 331-4557 |
| 19 | | *Attorneys for Defendant GOOGLE INC.* |
| 20 | Dated:  December 5, 2012 | BINGHAM McCUTCHEN LLP |
| 21 | | |
| 22 | | By:      /s/ Frank M. Hinman |
| | | Frank M. Hinman |
| 23 | | Donn P. Pickett |
| 24 | | Frank M. Hinman |
| | | Three Embarcadero Center |
| 25 | | San Francisco, CA  94111 |
| | | Telephone:  (415) 393-2000 |
| 26 | | Facsimile:  (415) 383-2286 |
| 27 | | *Attorneys for Defendant INTEL CORPORATION* |
| 28 | | |

JOINT CASE MGMNT CONFERENCE STATEMENT
Master Docket No. 11-CV-2509-LHK

1    Dated:  December 5, 2012          COVINGTON & BURLING LLP

2
                                        By:      _/s/ Emily Johnson Henn_
3                                               Emily Johnson Henn

4                                       Robert T. Haslam, III
                                        Emily Johnson Henn
5                                       333 Twin Dolphin Drive, Suite 700
                                        Redwood City, CA  94065
6                                       Telephone:  (650) 632-4700

7                                       *Attorneys for Defendant PIXAR*

8
     **ATTESTATION**:  Pursuant to General Order 45, Part X-B, the filer attests that concurrence in
9
     the filing of this document has been obtained from all signatories.
10

11   1068817.4

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28
                                        - 22 -