# EXHIBIT 31

Case5:12-cv-05869-PSG Document 1-7 Filed 11/16/12 Page 2 of 13

N. Scott Sacks, Attorney (D.C. Bar No. 913087)
Jessica N. Butler-Arkow, Attorney (D.C. Bar No. 430022)
Adam T. Severt, Attorney (Member, Maryland Bar, Numbers not assigned)
Ryan Struve, Attorney (D.C. Bar No. 495406)
Anna T. Pletcher, Attorney (California State Bar No. 239730)
United States Department of Justice
Antitrust Division
450 Fifth Street NW, Suite 7100
Washington, DC 20530
Telephone: 202-307-6200
Facsimile: 202-616-8544
Email: scott.sacks@usdoj.gov

[Additional counsel listed on signature page]

Attorneys for Plaintiff United States of America

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA
## SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. C |
| Plaintiff, | CV12 5869 |
| v. | |
| EBAY, INC. | |
| Defendant. | |

## COMPLAINT

The United States of America, acting under the direction of the Attorney General of the United States, brings this civil antitrust action to obtain equitable relief against Defendant eBay, Inc. ("eBay"), alleging as follows:

### NATURE OF THE ACTION

1. This action challenges under Section 1 of the Sherman Act a no-solicitation and no-hiring agreement between eBay and Intuit, Inc. ("Intuit"), pursuant to which eBay and Intuit agreed not to recruit each other's employees and eBay agreed

Complaint – Page 1

not to hire Intuit employees, even those that approached eBay for a job. This agreement harmed employees by lowering the salaries and benefits they might otherwise have commanded, and deprived these employees of better job opportunities at the other company. Meg Whitman, then the CEO of eBay, and Scott Cook, Founder and Chairman of the Executive Committee at Intuit, were intimately involved in forming, monitoring, and enforcing this anticompetitive agreement.

2. Senior executives at eBay and Intuit entered into an evolving "handshake" agreement to restrict their ability to recruit and hire employees of the other company. The agreement, which was entered into no later than 2006, prohibited either company from soliciting one another's employees for employment opportunities, and, for over a year, prevented at least eBay from hiring any employees from Intuit at all. The agreement was enforced at the highest levels of each company.

3. The agreement reduced eBay's and Intuit's incentives and ability to compete for employees and restricted employees' mobility. This agreement thus harmed employees by lowering the salaries and benefits they otherwise would have commanded, and deprived these employees of better job opportunities at the other company.

4. This agreement between eBay and Intuit is a naked restraint of trade that is per se unlawful under Section 1 of the Sherman Act, 15 U.S.C. § 1. The United States seeks an order prohibiting any such agreement and other relief.

## JURISDICTION AND VENUE

5. eBay hires specialized computer engineers, scientists, and other employees throughout the United States, and sells products and services throughout the United States. Such activities, including the recruitment and hiring activities at issue in this Complaint, are in the flow of and substantially affect interstate commerce. The Court has subject matter jurisdiction under Section 4 of the Sherman Act, 15 U.S.C. § 4, and under 28 U.S.C. §§ 1331 and 1337 to prevent and restrain the Defendant from violating Section 1 of the Sherman Act, 15 U.S.C. § 1.

Complaint – Page 2

6. Venue is proper in this judicial district under Section 12 of the Clayton Act, 15 U.S.C. § 22, and under 28 U.S.C. § 1391(b)(2), (c). eBay transacts or has transacted business in this district and has its principal place of business here. A substantial part of the events that gave rise to this action occurred here.

## INTRADISTRICT ASSIGNMENT

7. Venue is proper in the San Jose Division because this action arose primarily in Santa Clara County. Civil L.R. 3-2(c), (e). A substantial part of the events that gave rise to the claim occurred in Santa Clara County, and eBay has its principal place of business in Santa Clara County. Judge Koh in the San Jose Division is currently presiding over a case that is similar in certain respects. In addition, the Attorney General of the State of California is filing a Complaint that is related to the United States' Complaint, pursuant to the requirements of Local Rule 3-12(a).

## DEFENDANT

8. eBay is a Delaware corporation with its principal place of business in San Jose, California.

## CO-CONSPIRATORS

9. Various other corporations and persons not made defendants in this Complaint, including Intuit and senior executives at Intuit and eBay, participated as co-conspirators in the violation alleged and performed acts and made statements in furtherance of the violation alleged. Intuit is not named as a defendant in this action because Intuit is subject to a court order in United States v. Adobe Systems, No. 10-01629 (D.D.C. judgment entered Mar. 17, 2011), barring it from entering into or enforcing any agreement that improperly limits competition for employee services.

## TRADE AND COMMERCE

10. Firms in the same or similar industries often compete to hire and retain talented employees. This is particularly true in technology industries in which particular expertise and highly specialized skills sought by one firm can often be found at another firm. Solicitation of skilled employees at other companies is an effective

Complaint – Page 3

method of competing for needed employees. For example, Beth Axelrod, eBay's Senior Vice President for Human Resources at the time the agreement with Intuit was in effect, co-authored a book, "The War for Talent," which emphasizes the importance of "cold-calling" as a recruitment tool: "The recruiting game is changing for yet another reason: It's no longer sufficient to target your efforts to people looking for a job; you have to reach people who aren't looking."

11. eBay's agreement with Intuit eliminated this competition. The agreement harmed employees by reducing the salaries, benefits, and employment opportunities they might otherwise have earned if competition had not been eliminated. The agreement also misallocated labor between eBay and Intuit—companies that drove innovation based in no small measure on the talent of their employees. In a well-functioning labor market, employers compete to attract the most valuable talent for their needs. Competition among employers for skilled employees may benefit employees' salaries and benefits, and facilitates employee mobility. The no-solicitation and no-hiring agreement between Intuit and eBay distorted this competitive process and likely resulted in some of eBay's and Intuit's employees remaining in jobs that did not fully utilize their unique skills. Ms. Axelrod and her co-authors described how the "structural forces fueling the war for talent" have resulted in power "shift[ing] from the corporation to the individual," giving "talented individuals . . . the negotiating leverage to ratchet up their expectation for their careers."

12. Instead of working harder to acquire this critical and scarce talent, eBay and Intuit called a truce in the "war for talent" to protect their own interests at the expense of their employees. eBay initially sought a limited no-solicitation agreement aimed at high-level executives. eBay ultimately agreed to an expansive no-solicitation and no-hire agreement in large part to placate Intuit's Mr. Cook, who was serving as a member of eBay's Board of Directors and who, at the same time, was making several complaints on behalf of Intuit about eBay's hiring practices. eBay elevated the interests of Mr. Cook above the welfare of its own employees. Similarly, Mr. Cook was willing

Complaint – Page 4

to sacrifice the welfare of Intuit's employees in order to advance his own personal interests in serving on eBay's Board.

13. Neither eBay nor Intuit publicly announced their no hire/no solicit agreement or ensured that all potentially affected employees were aware of the agreement. Disclosure of the agreement could have created substantial legal problems for eBay and Intuit under California law and significant embarrassment for the executives and other individuals who entered into, and monitored compliance with, the agreement on behalf of the two firms. Many eBay and Intuit employees reside in California, a state with a strong public policy prohibiting firms from restricting employee movement by, among other things, barring employers from enforcing "no compete" agreements. California law provides that "every contract by which anyone is restrained from engaging in a lawful profession, trade, or business of any kind is to that extent void." California Business & Professions Code § 16600.

## THE UNLAWFUL AGREEMENT

14. Beginning no later than 2006, and lasting at least until 2009, Intuit and eBay maintained an illegal agreement that restricted their ability to actively recruit employees from each other, and for some part of that time, further restricted eBay from hiring any employees from Intuit. As alleged in more detail below, this agreement was entered into and enforced at the most senior levels of these two companies.

15. In November 2005, eBay's Chief Operating Officer, Maynard Webb, wrote to Scott Cook, Intuit's Founder and Chairman of its Executive Committee, to "get [Mr. Cook's] advice on a specific hiring situation and then see if we could establish some guidelines on an ongoing basis." Mr. Webb asked Mr. Cook for "permission to proceed" with hiring an Intuit employee who had contacted eBay regarding a job, and then proposed a "structure" to Mr. Cook for future situations, whereby eBay would "not actively recruit from Intuit." Under Mr. Webb's proposal, for Intuit candidates "below Senior Director level" who contacted eBay regarding employment, eBay would be permitted to hire them and would give Intuit "notice" only after a candidate accepted a

Complaint – Page 5

job offer. For Intuit candidates "at Senior Director level or above," eBay would not make an offer unless Intuit was notified in advance. Mr. Cook rejected this proposal insofar as it allowed hiring of any employees without prior notice to Intuit, saying that "we don't recruit from board companies, period" and "[w]e're passionate on this." In other words, because Mr. Cook served on eBay's board, Intuit employees should be denied any chance to work for eBay. Mr. Cook committed that Intuit would not make an offer to anyone from eBay without first notifying eBay, and said "[w]e would ask the same."

16. A month later, in December 2005, Meg Whitman, the CEO of eBay at the time, and Mr. Cook discussed the competition for two employees with an eye toward eliminating that competition altogether. As Ms. Whitman told Ms. Axelrod, Mr. Cook was "slightly miffed by our recent hire of two Intuit executives."

17. No later than August 2006, the initial agreement between eBay and Intuit restricting the hiring of each other's employees was put into effect. In August 2006, when eBay considered hiring an Intuit employee for an opening at its PayPal subsidiary, Ms. Axelrod said that while she was "happy to have a word with Meg [Whitman] about it," Ms. Axelrod was "quite confident she will say hands off because Scott [Cook] insists on a no-poach policy with Intuit." When the PayPal executive asked Ms. Axelrod to confer with Ms. Whitman, Ms. Axelrod reported back that "I confirmed with Meg [Whitman] that we cannot proceed without notifying Scott Cook first." eBay does not appear to have pursued the potential candidate beyond this point as everyone agreed "that it's to[o] awkward to call Scott [Cook] when we don't even know if the candidate has interest," demonstrating that the non-solicitation agreement had a distinct chilling effect on recruitment and hiring between the two companies.

18. On or about April 2007, eBay's commitment metastasized into a no-hire agreement. The impetus was a complaint from Mr. Cook to Ms. Whitman that he was "quite unhappy" about a potential offer that eBay was going to make to an Intuit employee who had approached eBay. Ms. Axelrod spoke with Ms. Whitman regarding

Complaint – Page 6

Mr. Cook's concerns, and instructed David Knight, then eBay's Vice President, Internal Communications, to hold off on making the offer. Mr. Knight urged Ms. Axelrod to find a way to make the offer happen, as the decision put the applicant "in a tough position and us in a bad place with California law" and left eBay "another 6 months away from getting another candidate" for the position. A week later, Mr. Knight wrote to Ms. Axelrod and Ms. Whitman pleading with them to at least "negotiate" any shift from a "no poaching" agreement to a "no hiring" agreement after this particular applicant was hired, as eBay "desperately need[ed] this position filled."

19. While Ms. Axelrod ultimately authorized Mr. Knight to extend an offer to this Intuit employee, eBay did expand the agreement to prohibit eBay from hiring any employee from Intuit, regardless of how that employee applied for the job. A few months later, for example, an eBay human resources manager alerted Ms. Axelrod to a potential "situation" and wanted to know if eBay "continue[d] to be sensitive to Scott [Cook]'s request" or if there was "any flexibility on hiring from Intuit." The Intuit candidate was "getting a lot of responses from managers directly" before the human resource manager's team was involved as his "education is fantastic." Ms. Axelrod confirmed, however, that even when an Intuit employee was "dying" to work for eBay and had proactively reached out to eBay, hiring managers had "no flexibility" and must keep their "hands off" the potential applicant.

20. Two eBay staffers sought to clarify the situation with Ms. Axelrod shortly thereafter. Ms. Axelrod said: "We have an explicit hands of[f] that we cannot violate with any Intuit employee. There is no flexibility on this." The staff asked for further amplification: "This applies even if the Intuit employee has reached out and specifically asked? If so then I assume that person could NEVER be hired by ebay unless they quit Intuit first." Ms. Axelrod confirmed this was "correct." Ms. Axelrod similarly explained the impact of the agreement to Ms. Whitman: "I keep getting inquiries from our folks to recruit from Intuit and I am firmly holding the line. No exceptions even if the candidate proactively contacts us." In another email exchange,

Complaint – Page 7

Ms. Axelrod explained that she was responding to all inquiries regarding hiring from Intuit by "firmly holding the line and saying absolutely not (including to myself since their comp[ensation] and ben[efits] person is supposed to be excellent!)."

21. Mr. Cook was a driving force behind eBay's no-hire agreement with Intuit. In one 2007 e-mail, an eBay recruiter confirmed to Intuit that the message to Intuit candidates should be that eBay was "not allowed to hire from Intuit per Scott Cook regardless of whether the candidate applies directly or if we reach out." eBay recruiting personnel understood that "Meg [Whitman] and Scott Cook entered into the agreement (handshake style, not written) that eBay would not hire from Intuit, period." Mr. Cook and Intuit, on the other hand, agreed that Intuit would not recruit from eBay. Mr. Cook explained to one applicant who had decided to work for eBay but expressed a future interest in joining Intuit, that "Intuit is precluded from recruiting you" unless eBay has decided it does not need the employee or where the employee informs his management and then proactively contacts Intuit.

22. eBay insisted that Intuit refrain from recruiting its employees in exchange for the limitation on eBay's ability to recruit and hire Intuit employees. On August 27, 2007, Ms. Axelrod wrote Ms. Whitman to complain that while eBay was sticking to its agreement not to hire Intuit employees, "it is hard to do this when Intuit recruits our folks." Ms. Axelrod forwarded Ms. Whitman a recruiting flyer that Intuit had sent to an eBay employee. Ms. Whitman forwarded Ms. Axelrod's e-mail to Mr. Cook the same day asking him to "remind your folks not to send this stuff to eBay people." Mr. Cook responded quickly: "#@!%$#^&!!! Meg my apologies. I'll find out how this slip up occurred again. . . ."

23. Throughout the course of the agreement, eBay repeatedly declined opportunities to hire or interview Intuit employees, even when eBay had open positions for "quite some time," when the potential employee "look[ed] great," or when "the only guy who was good was from [I]ntuit." eBay employees were instructed not to pursue potential hires that came from Intuit and to discard their resumes. When a candidate

Complaint – Page 8

applied for a position and told eBay that she had left Intuit, Ms. Axelrod went so far as to write Mr. Cook to confirm that the applicant had, in fact, left the company.

24. The companies acknowledged that throughout the agreement, they "passed" on "talented" applicants, consistent with their anticompetitive agreement. The repeated requests from lower level employees at both companies to be allowed to recruit employees from the other firm demonstrates that the agreement denied employees the opportunity to compete for better job opportunities.

25. The agreement between eBay and Intuit remained in effect for at least some period of time after a United States Department of Justice investigation of agreements between technology companies that restricted hiring practices became public. One eBay employee asked another in June 2009 if she had been "able to connect with Beth [Axelrod] re our policies around hiring from Intuit with respect to" a former employee at eBay's PayPal division who "wishes to return" and noted press reports of the Department of Justice investigation. The employee responded: "It's a no go . . . . too complicated. We should move to plan b." (Ellipses in original.)

## VIOLATION ALLEGED

### (Violation of Section 1 of the Sherman Act)

26. The United States hereby incorporates paragraphs 1 through 25.

27. eBay and Intuit are direct competitors for employees, including specialized computer engineers and scientists, covered by the agreement at issue here. eBay and Intuit entered into a naked no-solicitation and no-hire agreement, thereby reducing their ability and incentive to compete for employees. This agreement suppressed competition between eBay and Intuit, thereby limiting affected employees' ability to secure better compensation, benefits, and working conditions.

28. eBay's agreement with Intuit is per se unlawful under Section 1 of the Sherman Act, 15 U.S.C. § 1. No elaborate industry analysis is required to demonstrate the anticompetitive character of this agreement.

Complaint – Page 9

29. The no-solicitation and no-hire agreement between eBay and Intuit is also an unreasonable restraint of trade that is unlawful under Section 1 of the Sherman Act, 15 U.S.C. § 1, under an abbreviated or "quick look" rule of reason analysis. The principal tendency of the agreement between eBay and Intuit is to restrain competition, as the nature of the restraint is obvious and the agreement has no legitimate pro-competitive justification. Even an observer with a rudimentary understanding of economics could therefore conclude the agreement would have an anticompetitive effect on employees and harm the competitive process.

## REQUESTED RELIEF

The United States requests that:

(A)  the Court adjudge and decree that the Defendant's agreement with Intuit not to compete constitutes an illegal restraint of interstate trade and commerce in violation of Section 1 of the Sherman Act;

(B)  the Defendant be enjoined and restrained from enforcing or adhering to any existing agreement that unreasonably restricts competition for employees between it and anyone else;

(C)  the Defendant be permanently enjoined and restrained from establishing any similar agreement unreasonably restricting competition for employees except as prescribed by the Court;

(D)  the United States be awarded such other relief as the Court may deem just and proper to redress and prevent recurrence of the alleged violation and to dissipate the anticompetitive effects of the illegal agreement entered into by eBay and Intuit; and

(E)  the United States be awarded the costs of this action.

Complaint – Page 10

Dated: November 15, 2012

FOR PLAINTIFF UNITED STATES
OF AMERICA:

JOSEPH F. WAYLAND
Acting Assistant Attorney General
for Antitrust

TERRELL MCSWEENY
Chief Counsel for Competition Policy
and Intergovernmental Relations

PATRICIA A. BRINK
Director of Civil Enforcement

MARK W. RYAN
Director of Litigation

JAMES J. TIERNEY
Chief
Networks & Technology Enforcement
Section

BRIAN J. STRETCH (CSBN 163973)
Acting United States Attorney
ALEX G. TSE (CSBN 152348)
Chief, Civil Division
Office of the United States Attorney
Northern District of California
150 Almaden Blvd. Suite 900
San Jose, CA 95113
Telephone: 408-535-5061
Facsimile: 408-535-5066
alex.tse@usdoj.gov

N. SCOTT SACKS

JESSICA N. BUTLER-ARKOW

ADAM T. SEVERT

RYAN STRUVE

ANNA T. PLETCHER

Attorneys for the United States
Networks & Technology
Enforcement Section
450 Fifth Street, NW, Suite 7100
Washington, DC 20530
Telephone: (202) 307-6200
Facsimile: (202) 616-8544
scott.sacks@usdoj.gov

Complaint – Page 11

JS 44 CAND (Rev. 12/11) **CIVIL COVER SHEET**

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

### I. (a) PLAINTIFFS
UNITED STATES OF AMERICA

### DEFENDANTS
EBAY, INC.

CV 12 5869 PSG ADR

**(b)** County of Residence of First Listed Plaintiff _____
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant Santa Clara County
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
N. Scott Sacks, Jessica Butler-Arkow, Attorneys, Antitrust Division, U.S. Department of Justice, 450 Fifth Street, NW, Suite 7100, Washington, D.C. 20530. Phone 202-307-6200.

Attorneys *(If Known)*
Thomas Brown, Attorney, Paul Hastings LLP, 55 Second Street, Twenty-Fourth Floor, San Francisco, CA 94105. Phone 415-856-7248.

### II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*
- ☒ 1 U.S. Government Plaintiff
- ☐ 2 U.S. Government Defendant
- ☐ 3 Federal Question *(U.S. Government Not a Party)*
- ☐ 4 Diversity *(Indicate Citizenship of Parties in Item III)*

### III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff)*
*(For Diversity Cases Only) and One Box for Defendant)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

E-filing

### IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 400 State Reapportionment |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | | ☒ 410 Antitrust |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | | | **PROPERTY RIGHTS** | ☐ 430 Banks and Banking |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 820 Copyrights | ☐ 450 Commerce |
| ☐ 151 Medicare Act | ☐ 340 Marine | | | ☐ 830 Patent | ☐ 460 Deportation |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | **LABOR** | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 720 Labor/Mgmt. Relations | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Med. Malpractice | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | ☐ 790 Other Labor Litigation | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| | | | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information Act |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | ☐ 510 Motions to Vacate Sentence | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 896 Arbitration |
| ☐ 220 Foreclosure | ☐ 441 Voting | **Habeas Corpus:** | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 530 General | | | ☐ 950 Constitutionality of State Statutes |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | ☐ 463 Habeas Corpus - Alien Detainee (Prisoner Petition) | | |
| | ☐ 448 Education | ☐ 555 Prison Condition | ☐ 465 Other Immigration Actions | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

### V. ORIGIN *(Place an "X" in One Box Only)*
- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district *(specify)*
- ☐ 6 Multidistrict Litigation

### VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
Section 1 of the Sherman Act, 15 U.S.C. section 1
Brief description of cause:

### VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
DEMAND $
CHECK YES only if demanded in complaint:
JURY DEMAND: ☐ Yes ☐ No

### VIII. RELATED CASE(S) IF ANY
*(See instructions):*
JUDGE _____ DOCKET NUMBER _____

### IX. DIVISIONAL ASSIGNMENT (Civil L.R. 3-2)
*(Place an "X" in One Box Only)*
☐ SAN FRANCISCO/OAKLAND ☒ SAN JOSE ☐ EUREKA

DATE: 11/15/12

SIGNATURE OF ATTORNEY OF RECORD: _____ for N. Scott Sacks, Attorney