# EXHIBIT 32

ORIGINAL
Filed
NOV 16 2012
RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE
ADR
E-filing

KAMALA D. HARRIS
Attorney General of California
MARK J. BRECKLER
Chief Assistant Attorney General
KATHLEEN E. FOOTE
Senior Assistant Attorney General
NICOLE S. GORDON
Deputy Attorney General
State Bar No. 224138
  455 Golden Gate Avenue, Suite 11000
  San Francisco, CA 94102-7004
  Telephone: (415) 703-5702
  Fax: (415) 703-5843
  E-mail: Nicole.Gordon@doj.ca.gov
*Attorneys for Plaintiff*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| THE PEOPLE OF THE STATE OF CALIFORNIA,<br><br>Plaintiff,<br><br>v.<br><br>EBAY, INC.,<br><br>Defendant. | Case No. CV12-5874 PSG<br><br>**COMPLAINT FOR VIOLATIONS OF THE SHERMAN ACT, CARTWRIGHT ACT, AND UNFAIR COMPETITION LAW FOR INJUNCTIVE RELIEF AND CIVIL PENALTIES** |

COMES NOW, Kamala D. Harris, Attorney General for the State of California, and alleges the following:

**INTRODUCTION**

1. Kamala D. Harris, Attorney General, State of California, brings this action in her official capacity as the chief law enforcement officer of the State of California against eBay, Inc. ("eBay") for entering into a no-solicitation and no-hiring agreement in violation of Section 1 of the Sherman Act, the Cartwright Act, and the California Unfair Competition Law. Pursuant to the agreement, eBay and CoconspiratorIntuit, Inc. ("Intuit") agreed not to recruit each other's

1

employees and eBay agreed not to hire any Intuit employees, even those that approached eBay for a job. This agreement harmed employees by lowering the salaries and benefits they might otherwise have commanded, and deprived these employees of better job opportunities at the other company.

2. Senior executives at eBay and Intuit entered into an evolving "handshake" agreement to restrict their ability to recruit and hire employees of the other company. The agreement, which was entered into no later than 2006, prohibited either company from soliciting one another's employees for employment opportunities, and for over a year prevented at least eBay from hiring any employees from Intuit at all. The agreement was enforced at the highest levels of each company.

3. The agreement reduced eBay's and Intuit's incentives and ability to compete for employees and restricted employees' mobility. This agreement thus harmed employees and the public by lowering the salaries and benefits they otherwise would have commanded, and deprived these employees of better job opportunities at the other company.

4. This agreement between eBay and Intuit is a naked restraint of trade that is *per se* unlawful under Section 1 of the Sherman Act, 15 U.S.C. § 1. It also violates the Cartwright Act and California's Unfair Competition Law. The State of California seeks an order prohibiting any such agreement and other relief.

**JURISDICTION AND VENUE**

5. This complaint alleges violations of the Sherman Act, 15 U.S.C. § 1. It is filed under, and jurisdiction is conferred upon this Court by, Sections 4, 4C, 12, and 16 of the Clayton Act, 15 U.S.C. §§ 15, 15c, 22, and 26. The Plaintiff also alleges violations of State antitrust, consumer protection, and/or unfair competition and related laws, and seeks civil penalties, and/or other equitable relief under those State laws. All claims under federal and state law are based upon a common nucleus of operative facts, and the entire action commenced by this Complaint constitutes a single case that would ordinarily be tried in one judicial proceeding.

2

Complaint for Violation of Sherman Act, Cartwright Act, and Unfair Competition Law

6. The Court further has jurisdiction over the federal claims under 28 U.S.C. §§ 1331 and 1337. The Court has jurisdiction over the state claims under 28 U.S.C. § 1367 because those claims are so related to the federal claims that they form part of the same case or controversy.

7. Venue is proper in this District under 15 U.S.C. § 22 and 28 U.S.C. § 1391 because eBay transacts business, committed an illegal or tortious act, and is found in this District, within the meaning and scope of 15 U.S.C. § 22, Cal. Bus. & Prof. Code § 1672 and 28 U.S.C. § 1391(b) and (c), and a substantial part of the events giving rise to the claims arose in this District.

8. The activities of eBay, as described herein, were within the flow of, were intended to, and did have a substantial effect on the foreign and interstate commerce of the United States.

## PLAINTIFF

9. The Attorney General is the state's chief law officer and is charged with enforcing the state's antitrust laws, including the Cartwright Act. Cal. Bus. & Prof. Code §§ 16700 - 16770. The Attorney General has a continuing interest in applications of the Cartwright Act because she "may bring an action on behalf of the state or of any of its political subdivisions or public agencies to recover the damages provided for by this section, or by any comparable provision of federal law," subject to certain notification provisions. Cal. Bus. & Prof. Code § 16750(c). Moreover, under the Cartwright Act, except as provided in the act, "every trust is unlawful, against public policy and void." Cal. Bus. & Prof. Code § 16726.

10. The Attorney General is specifically authorized under the Unfair Competition Law, Business and Professions Code Section 17200 to bring actions in the name of the People of the State of California to obtain injunctive and other equitable relief, restition, and civil penalties to redress unfair, unlawful, and fradulent business practices. *See* Bus. & Prof. Code §§ 17203, 17204, 17206.

## DEFENDANT

11. **EBAY IS A DELAWARE CORPORATION WITH ITS PRINCIPAL PLACE OF BUSINESS IN SAN JOSE, CALIFORNIA. CO-CONSPIRATORS**

3

Complaint for Violation of Sherman Act, Cartwright Act, and Unfair Competition Law

12. Intuit is a Delaware corporation with its principal place of business in Mountain View, California.

13. Various other persons and corporations not made defendants in this complaint, including senior executives at Intuit and eBay, participated as co-conspirators in the violation alleged and performed acts and made statements in furtherance of the violation alleged.

**TRADE AND COMMERCE**

14. Firms in the same or similar industries often compete to hire and retain talented employees. This is especially true in technology industries in which particular expertise and highly specialized skills sought by one firm can often be found at another firm. Solicitation of skilled employees at other companies is an effective method of competing for needed employees. For example, Beth Axelrod, eBay's Senior Vice President for Human Resources at the time the agreement with Intuit was in effect, co-authored a book, "The War for Talent," which emphasizes the importance of "cold-calling" as a recruitment tool: "The recruiting game is changing for yet another reason: It's no longer sufficient to target your efforts to people looking for a job; you have to reach people who aren't looking."

15. eBay's agreement with Intuit eliminated this competition. The agreement harmed employees by reducing the salaries, benefits, and employment opportunities they might otherwise have earned if competition had not been eliminated. This elimination of competition harmed the public by preventing employee mobility. The agreement also misallocated labor between eBay and Intuit — companies that drove innovation based in no small measure on the talent of their employees. In a well-functioning labor market, employers compete to attract the most valuable talent for their needs. Competition among employers for skilled employees may benefit employees' salaries and benefits, and facilitates employee mobility. The no-solicitation and no-hiring agreement between Intuit and eBay distorted this competitive process and likely resulted in some of eBay's and Intuit's employees remaining in jobs that did not fully utilize their unique skills. Ms. Axelrod and her co-authors described how the "structural forces fueling the war for

4

talent" have resulted in power "shift[ing] from the corporation to the individual," giving "talented individuals ... the negotiating leverage to ratchet up their expectation for their careers."

16. Instead of working harder to acquire this "critical and scarce" talent, eBay and Intuit called a truce in the "war for talent" to protect their own interests at the expense of their employees. eBay initially sought a limited no-solicitation agreement aimed at high-level executives, but ultimately agreed to an expansive no-solicitation and no-hire agreement. eBay valued its relationship with Intuit and the benefits eBay gained from restricting its own employees' career mobility above the welfare of its employees.

17. Neither eBay nor Intuit took any steps to ensure that employees affected by the agreement knew of its existence, or how it would impact them. Disclosure of the agreements to their employees could have created substantial legal problems for eBay and Intuit under California law. Many affected employees reside in California, which has a strong public policy prohibiting firms from restricting employee movement by, among other things, prohibiting employers from enforcing "no compete" agreements. California law provides that "every contract by which anyone is restrained from engaging in a lawful profession, trade, or business of any kind is to that extent void." Cal. Bus. & Prof. Code § 16600. As this Court has observed, "California public policy favors employee mobility and freedom." *Bayer Corp. v. Roche Molecular Sys.*, 72 F. Supp.2d 1111, 1119 (N.D. Cal. 1999). The agreement at issue here undermined such mobility.

## THE UNLAWFUL AGREEMENT

18. Beginning no later than 2006, and lasting at least until 2009, eBay and Intuit maintained an illegal agreement that restricted their ability to actively recruit employees from each other, and for some part of that time further restricted at least eBay from hiring any employees from Intuit. As alleged in more detail below, this agreement was entered into and enforced at the most senior levels of these companies.

19. In November 2005, eBay's Chief Operating Officer, Maynard Webb, wrote to Scott Cook, Intuit's Founder and Chairman of the Executive Committee, to "get [Mr. Cook's] advice

5
Complaint for Violation of Sherman Act, Cartwright Act, and Unfair Competition Law

on a specific hiring situation and then see if we could establish some guidelines on an ongoing basis." Mr. Webb asked Mr. Cook for "permission to proceed" with hiring an Intuit employee who contacted eBay regarding a job, and then proposed a "structure" to Mr. Cook for future situations, whereby eBay would "not actively recruit from Intuit." Under Mr. Webb's proposal, for Intuit candidates "below Senior Director level" who contacted eBay regarding employment, eBay would be permitted to hire them and would give Intuit "notice" only after a candidate accepted a job offer. For Intuit candidates "at Senior Director level or above", eBay would not make an offer unless Intuit was notified in advance. Mr. Cook rejected this proposal insofar as it allowed hiring of any employees without prior notice to Intuit, saying that "we don't recruit from board companies, period" and "[w]e're passionate on this." Mr. Cook committed that Intuit would not make an offer to anyone from eBay without first notifying eBay, and said "[w]e would ask the same."

20. A month later, in December 2005, Meg Whitman, the CEO of eBay at the time, and Mr. Cook discussed the competition for two employees with an eye toward eliminating that competition altogether. As Ms. Whitman told Ms. Axelrod, Mr. Cook was "slightly miffed by our recent hire of two Intuit executives."

21. No later than August 2006, the initial agreement between eBay and Intuit restricting the hiring of each other's employees was put into effect. In August 2006, when eBay considered hiring an Intuit employee for an opening at its PayPal subsidiary, Ms. Axelrod said that while she was "happy to have a word with Meg [Whitman] about it," Ms. Axelrod was "quite confident she will say hands off because Scott [Cook] insists on a no poach policy with Intuit." When the PayPal executive asked Ms. Axelrod to confer with Ms. Whitman, Ms. Axelrod reported back that "I confirmed with Meg [Whitman] that we cannot proceed without notifying Scott Cook first." eBay does not appear to have pursued the potential candidate beyond this point as everyone agreed "that it's to[o] awkward to call Scott [Cook] when we don't even know if the candidate has interest," demonstrating that the non-solicitation agreement had a distinct chilling effect on recruitment and hiring between the two companies.

6

Complaint for Violation of Sherman Act, Cartwright Act, and Unfair Competition Law

22. On or about April 2007, eBay's commitment metastasized into a no-hire agreement. The impetus was a complaint from Mr. Cook to Ms. Whitman that he was "quite unhappy" about a potential offer that eBay was going to make to an Intuit employee who had approached eBay. Ms. Axelrod spoke with Ms. Whitman regarding Mr. Cook's concerns, and instructed David Knight, then eBay's Vice President, Internal Communications, to hold off on making the offer. Mr. Knight urged Ms. Axelrod to find a way to make the offer happen, as the decision put the applicant "in a tough position and us in a bad place with California law" and left eBay "another 6 months away from getting another candidate" for the position. A week later, Mr. Knight wrote to Ms. Axelrod and Ms. Whitman pleading with them to at least "negotiate" any shift from a "no poaching" agreement to a "no hiring" agreement after this particular applicant was hired, as eBay "desperately need[ed] this position filled."

23. While Ms. Axelrod ultimately authorized Mr. Knight to extend an offer to this Intuit employee, eBay did expand the agreement to prohibit eBay from hiring any employee from Intuit, regardless of how that employee applied for the job. A few months later, for example, an eBay human resources manager alerted Ms. Axelrod to a potential "situation" and wanted to know if eBay "continue[d] to be sensitive to Scott [Cook]'s request" or if there was "any flexibility on hiring from Intuit." The Intuit candidate was "getting a lot of responses from managers directly" before the human resource manager's team was involved as his "education is fantastic." Ms. Axelrod confirmed, however, that even when an Intuit employee was "dying" to work for eBay and had proactively reached out to eBay, hiring managers had "no flexibility" and must keep their "hands off" the potential applicant.

24. Two eBay staffers sought to clarify the situation with Ms. Axelrod shortly thereafter. Ms. Axelrod said: "We have an explicit hands of[f] that we cannot violate with any Intuit employee. There is no flexibility on this." The staff asked for further clarification: "This applies even if the Intuit employee has reached out and specifically asked? If so then I assume that person could NEVER be hired by ebay unless they quit Intuit first." Ms. Axelrod confirmed this was "correct." Ms. Axelrod similarly explained the impact of the agreement to Ms. Whitman: "I

7

Complaint for Violation of Sherman Act, Cartwright Act, and Unfair Competition Law

keep getting inquiries from our folks to recruit from Intuit and I am firmly holding the line. No exceptions even if the candidate proactively contacts us." In another email exchange, Ms. Axelrod explained that she was responding to all inquiries regarding hiring from Intuit by "firmly holding the line and saying absolutely not (including to myself since their comp[ensation] and ben[efits] person is supposed to be excellent!)."

25. Mr. Cook was a driving force behind eBay's no-hire agreement with Intuit. In one 2007 e-mail, an eBay recruiter confirmed to Intuit that the message to Intuit candidates should be that eBay was "not allowed to hire from Intuit per Scott Cook regardless of whether the candidate applies directly or if we reach out." eBay recruiting personnel understood that "Meg [Whitman] and Scott Cook entered into the agreement (handshake style, not written) that eBay would not hire from Intuit, period." Mr. Cook and Intuit, on the other hand, agreed that Intuit would not recruit from eBay. Mr. Cook explained to one applicant who had decided to work for eBay but expressed a future interest in joining Intuit, that "Intuit is precluded from recruiting you" unless eBay has decided it does not need the employee or where the employee informs his management and then proactively contacts Intuit.

26. eBay insisted that Intuit refrain from recruiting its employees in exchange for the limitation on eBay's ability to recruit and hire Intuit employees. On August 27, 2007, Ms. Axelrod wrote Ms. Whitman to complain that while eBay was sticking to its agreement to not hire Intuit employees, "it is hard to do this when Intuit recruits our folks." Ms. Axelrod forwarded Ms. Whitman a recruiting flyer that Intuit had sent to an eBay employee. Ms. Whitman forwarded Ms. Axelrod's e-mail to Mr. Cook the same day asking him to "remind your folks not to send this stuff to eBay people." Mr. Cook responded quickly: "#@!%$#^&!!! Meg my apologies. I'll find out how this slip up occurred again...."

27. Throughout the course of the agreement, eBay repeatedly declined opportunities to hire or even interview Intuit employees, even when eBay had open positions for "quite some time," when the potential employee "look[ed] great," or when "the only guy who was good was from [I]ntuit." eBay employees were instructed to not pursue potential hires that came from

8

Intuit and to discard their resumes. When a candidate applied for a position and told eBay that she had left Intuit, Ms. Axelrod went so far as to write Mr. Cook to confirm that the applicant had, in fact, left the company.

28. The companies acknowledged that throughout the agreement, they "passed" on "talented" applicants, consistent with their anticompetitive agreement. The repeated requests from lower level employees at both companies to be allowed to recruit employees from the other firm demonstrates that the agreement denied employees the opportunity to compete for better job opportunities.

29. The agreement between eBay and Intuit remained in effect for at least some period of time after a United States Department of Justice investigation of agreements between technology companies that restricted hiring practices became public. One eBay employee asked another in June 2009 if she had been "able to connect with Beth [Axelrod] re our policies around hiring from Intuit with respect to" a former employee at eBay's PayPal division who "wishes to return" and noted press reports of the Department of Justice investigation. The employee responded back: "It's a no go....too complicated. We should move to plan b." (Ellipses in original.)

30. The agreement between eBay and Intuit harmed employees by lowering the salaries and benefits they might otherwise have been offered, and deprived these employees of job opportunities at the other company. Injunctive relief would make clear to eBay that such restraints on the economy of California are not permitted.

## VIOLATIONS ALLEGED

I. (VIOLATION OF SECTION 1 OF THE SHERMAN ACT)

31. The State of California hereby incorporates paragraphs 1 through 31.

32. eBay and Intuit are direct competitors for employees, including specialized computer engineers and scientists, covered by the agreements at issue here. eBay and its coconspirators entered into a naked no-solicitation and no-hire agreement, thereby reducing their ability and incentive to compete for employees. This agreement suppressed competition between eBay and

its coconspirators, thereby limiting affected employees' ability to secure better compensation, benefits, and working conditions.

33. eBay's agreement with Intuit is *per se* unlawful under Section 1 of the Sherman Act, 15 U.S.C. § 1. No elaborate industry analysis is required to demonstrate the anticompetitive character of this agreement.

34. The no-solicitation and no-hire agreement between eBay and Intuit is also an unreasonable restraint of trade that is unlawful under Section 1 of the Sherman Act, 15 U.S.C. § 1 under an abbreviated or "quick look" rule of reason analysis. The principal tendency of the agreement between eBay and Intuit is to restrain competition as the nature of the restraint is obvious and the agreement has no legitimate pro-competitive justification. It is clear that the agreement would have an anticompetitive effect on employees and harm the competitive process.

35. For the purpose of forming and effectuating the alleged agreement, understanding, or conspiracy, eBay and its co-conspirators did those things that they combined and conspired to do, including, but not limited to the acts, practices, and course of conduct set forth above, and the following, among others:

   a. not actively recruit Intuit or eBay employees; and

   b. not hire Intuit employees.

36. The combination and conspiracy has had, among other things, the following effects:

   a. Suppressed competition between eBay, Intuit, and their co-conspirators for employees;

   b. Limited affected employees' ability to secure employment, as well as better compensation, benefits, and working conditions.

37. Natural persons employed in the high tech industry were injured, and will continue to be injured, in their business and property by lower wages and benefits, and fewer opportunities, to which they would have had access, as a direct and indirect result of the actions of eBay and its co-conspirators. This includes the future deprivation of competition arising from the failure of eBay to discontinue its wrongful conduct until the USDOJ investigation.

38. Plaintiff is entitled to an injunction against eBay, preventing and restraining the violations alleged herein, as well as enjoining it from engaging in similar conduct in the future.

## II. (VIOLATION OF THE CARTWRIGHT ACT, BUSINESS & PROFESSIONS CODE SECTION 16720)

39. The State of California hereby incorporates paragraphs 1 through 39.

40. eBay and its co-conspirators' contract, combination, trust, or conspiracy was substantially carried out and effectuated within the State of California, and eBay's conduct within California injured natural persons.

41. Beginning at least in or around January, 2006, and continuing thereafter at least up to and including June, 2009, eBay and its co-conspirators entered into and engaged in a continuing unlawful trust for the purpose of unreasonably restraining trade in violation of Section 16720 of the California Business and Professions Code.

42. These violations of Section 16720 of the California Business and Professions Code, consisted, without limitation, of a continuing unlawful trust and concert of action among eBay and Intuit, the substantial terms of which were to create and carry out restrictions on commerce in the hiring of high tech employees.

43. For the purpose of forming and effectuating the unlawful trust, eBay conspired to:

    a. not actively recruit Intuit or eBay employees.

    b. not hire Intuit employees.

44. The combination and conspiracy has had, among other things, the following effects:

    a. Suppressed competition between eBay and Intuit for employees

    b. Limited affected employees' ability to secure employment, as well as better compensation, benefits, and working conditions.

45. As a direct and proximate result of eBay's violations of Section 16720 of the California Business and Professions Code, natural persons residing in the State of California were injured in their business and property in that they were deprived of competition between

11

companies for employees. The State of California brings this claim pursuant to Section 16760 and injunctive relief and the costs of suit, including reasonable attorneys' fees.

### III. (FOR VIOLATION OF THE UNFAIR COMPETITION LAW BUSINESS & PROFESSIONS CODE SECTION 17200)

46. The State of California hereby incorporates paragraphs 1 through 46.

47. Beginning at least in or around January, 2006, and continuing thereafter at least up to and including June, 2009, Defendants committed acts of unfair competition, as defined by Sections 17200, *et seq.* of the California Business and Professions Code.

48. The acts, omissions, misrepresentations, practices and non-disclosures of eBay, as alleged herein, constituted unfair competition by means of unfair, unlawful and/or fraudulent business acts or practices within the meaning of California Business and Professions Code, Sections 17200, *et seq.*, including, but not limited to, the following:

    a. The violations of Sections 16720, *et seq.*, of the California Business and Professions Code, thus constituting unlawful acts within the meaning of section 17200 of the California Business and Professions Code;

    b. The violation of Section 16600 of the California Business and Professions Code, thus constituting unlawful acts within the meaning of Section 17200 of the California Business and Professions Code.

### PRAYER FOR RELIEF

California requests that:

(A) the Court adjudge and decree that the agreement between eBay and Intuit not to compete constitutes an illegal restraint of interstate trade and commerce in violation of Section 1 of the Sherman Act;

(B) the Court adjudge and decree that eBay 'scontract, conspiracy, or combination constitutes an illegal restraint of trade in violation of the Cartwright Act, Sections 16720, *et seq.*, of the Business & Professions Code;

  (C) the Court adjudge and decree that eBay's contract, conspiracy, or combination violates the Unfair Competition Law, Sections 17200, *et seq*. of the Business & Professions Code;

  (D) that Defendants be permanently enjoined and restrained from establishing any similar agreement unreasonably restricting competition for employees enforcing or adhering to existing agreements that unreasonably restrict competition for employees except as prescribed by the Court;

  (E) that Plaintiff be awarded civil penalties, pursuant to California Business and Professions Code Section 17206 in the dollar amount of two thousand five hundred dollars and zero cents, ($2,500.00) for each violation of the Unfair Competition Law as set forth in this Complaint;

  (F) that Plaintiff be awarded such other relief as the Court may deem just and proper to redress and prevent recurrence of the alleged violation and to dissipate the anticompetitive effects of the illegal agreement entered into by eBay; and

  (G) that Plaintiff be awarded the costs of this action and reasonable attorneys' fees.

## JURY TRIAL DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury for all issues so triable.

Dated: November 14, 2012

Respectfully submitted,

KAMALA D. HARRIS
Attorney General of California

*/s/ Kathleen E. Foote*

KATHLEEN E. FOOTE
Senior Assistant Attorney General
*Attorneys for Plaintiff*

SF2012401678
40612707.doc