1   MAYER BROWN LLP
    LEE H. RUBIN (SBN 141331)
2   lrubin@mayerbrown.com
    EDWARD D. JOHNSON (SBN 189475)
3   wjohnson@mayerbrown.com
    DONALD M. FALK (SBN 150256)
4   dfalk@mayerbrown.com
    ERIC B. EVANS (SBN 232476)
5   eevans@mayerbrown.com
    Two Palo Alto Square, Suite 300
6   3000 El Camino Real
    Palo Alto, CA 94306-2112
7   Telephone:    (650) 331-2000
    Facsimile:    (650) 331-2061
8
    *Attorneys for Defendant*
9   *Google Inc.*

10

11              **UNITED STATES DISTRICT COURT**

12            **NORTHERN DISTRICT OF CALIFORNIA**

13                   **SAN JOSE DIVISION**

14

15   IN RE: HIGH-TECH EMPLOYEE          Master Docket No. 11-CV-2509-LHK
     ANTITRUST LITIGATION
16                                      **DECLARATION OF FRANK WAGNER**
     THIS DOCUMENT RELATES TO:          **IN SUPPORT OF ADMINISTRATIVE**
17                                      **MOTION TO SEAL INFORMATION**
     ALL ACTIONS                        **INCLUDED IN PLAINTIFFS' REPLY**
18                                      **PAPERS**

19

20

21

22   I, Frank Wagner, declare:

23       1.      I am Director of Compensation at Google Inc. ("Google"). I have served in that

     position since April 2007. In that capacity, I am familiar with Google's internal decision-making
24
     process and business strategy relating to compensation of Google employees, including Google's
25
     strategic considerations and internal deliberations regarding compensation for individual
26
     employees (which includes salary, bonus, equity grants, recognition awards and benefits). As
27
     part of my responsibilities, I am specifically familiar with Google's internal decision-making
28

process and business strategy relating to offers of employment as well as counteroffers made to Google employees who have received offers from other firms.  I am also familiar with Google's strategy over time in response to increased or diminished competition in the labor market.  In addition, I am also familiar with the general recruiting strategies and practices employed by Google.  I have personal knowledge of the facts set forth in this Declaration and, if called to testify, could and would competently thereto.

### Google's Confidential Information in Plaintiffs' Reply

2.      I have read and reviewed discrete portions of Plaintiffs' Consolidated Reply in Support of Motion for Class Certification and Opposition to Defendants' Motion to Strike the Report of Dr. Edward E. Leamer ("Plaintiffs' Reply") that specifically discuss or reference, and in some instances mischaracterize, information related to Google.  Based on my familiarity with Google's internal decision making and business strategy regarding compensation and Google's competitive position in the labor market, the following lines of Plaintiffs' Reply contain confidential commercial information, the disclosure of which would likely cause competitive harm to Google by giving third parties (including Google's competitors in the labor market) direct insight into highly confidential and competitively sensitive aspects of Google's internal decision-making processes related to its business operations:

a)      **Page i, Headings III.B.1, III.B.2, III.C, and III.D:**  These headings purport to summarize confidential and highly sensitive aspects of the compensation practices of Defendants, including Google.

b)      **Page 3 (lines 18-25):**  This excerpt purports to summarize confidential and highly sensitive aspects of the compensation practices of Defendants, including Google.

c)      **Page 13 (line 23) to Page 14 (line 12):**  This excerpt provides confidential and highly sensitive references to Google's strategy to respond to competition from a rival employer in an effort to retain employees and

also quotes an email message to senior Google management regarding a potential response to a rival employer.

d) **Page 14 (Footnote 10):** This footnote contains confidential and highly sensitive information about the number of recruiters Google assigned to particular types of candidates.

e) **Page 16 (lines 11-12):** This excerpt quotes from an email message involving senior management at Google that reflects confidential and highly sensitive details of Google's internal deliberations and business strategy related to making counteroffers to Google employees who have received offers from other firms.

f) **Page 16 (lines 18-19):** This excerpt reflects confidential and highly sensitive information related to the factors Google uses in determining compensation.

g) **Page 17 (lines 14-22):** This excerpt reflects confidential and highly sensitive information about Google's compensation philosophy and practices that is derived from my Declaration in Support of Defendants' Opposition to Plaintiffs' Motion for Class Certification, which was lodged under seal on November 13, 2012 and for which I previously submitted a declaration in support to seal (Docket No. 221) ("Wagner Sealed November 13 Declaration").

h) **Page 18 (lines 16-19):** This excerpt reflects confidential and highly sensitive information about Google's compensation practices that is derived from the Wagner Sealed November 13 Declaration.

i) **Page 20 (lines 3-26):** This excerpt reflects confidential and highly sensitive information about Google's compensation program and quotes from email messages involving senior Google management that reflect confidential and highly sensitive details of Google's internal deliberations

and business strategy related to making counteroffers to Google employees who have received offers from other firms and the retention of employees in the face of competition from startup companies.

j)   **Page 21 (lines 5-7)**: This excerpt reflects confidential and highly sensitive information about Google's hiring rates and compensation program.

k)   **Page 22 (lines 5-8)**: This excerpt purports to summarize confidential and highly sensitive aspects of changes to Google's compensation levels.

***Google's Confidential Information in Dr. Leamer's Reply Expert Report***

3.   I have also read and reviewed discrete portions of the Reply Expert Report of Edward E. Leamer, Ph.D. ("Leamer Reply Report") that specifically discuss or reference, and in some instances mischaracterize, information related to Google.  Based on my familiarity with Google's internal decision making and business strategy regarding compensation and Google's competitive position in the labor market, the following excerpts of the Leamer Reply Report contain confidential commercial information, the disclosure of which would likely cause competitive harm to Google by giving third parties (including Google's competitors in the labor market) direct insight into highly confidential and competitively sensitive aspects of Google's internal decision-making processes related to its business operations:

a)   **Page i, Heading III.A.:** This heading purports to summarize confidential and highly sensitive aspects of the compensation policies and practices of Defendants, including Google.

b)   **Page i, Heading III.C.:** This heading purports to summarize confidential and highly sensitive details about Google's compensation proposal in 2010 reflecting a change to its compensation program for its employees in response to competition from a rival employer in an effort to retain employees.

c)   **Paragraph 7 (last clause in second sentence, beginning "in response to …"):** This excerpt provides confidential and highly sensitive details about Google's response to competition from a rival employer in an effort to retain employees.

-4-

d) **Paragraph 14 (last four of six sentences and accompanying footnote 13)**: This excerpt and accompanying footnotes provide confidential and highly sensitive details about Google's recruiting practices and quotes from documents that contain confidential and highly sensitive details about Google's practice in making offers to candidates.

e) **Paragraph 15 (last sentence and accompanying footnote 15)**: This excerpt and accompanying footnote provide confidential and highly sensitive details and quote from confidential and highly sensitive documents about Google's recruiting policies and practices.

f) **Paragraph 16 (first two sentences and accompanying footnote 16)**: This excerpt and accompanying footnote provide confidential and highly sensitive details and quote from confidential and highly sensitive documents about Google's recruiting policies and practices.

g) **Paragraph 32 (and accompanying footnote 34)**: This excerpt and accompanying footnote provide confidential and highly sensitive details and quote from confidential and highly sensitive documents about Google's recruiting policies and practices.

h) **Heading A on Page 18 and Paragraphs 46-47**: This heading and these excerpts purport to summarize confidential and highly sensitive aspects of compensation policies and practices of Defendants, including Google.

i) **Heading C on Page 23 and Paragraphs 50-53 (and accompanying footnotes 66-67 and 69)**: This heading and these excerpts and footnotes provide confidential and highly sensitive details and reference confidential and highly sensitive documents about Google's compensation proposal in 2010 reflecting a change to Google's compensation program for Google employees, and reflect quantitative analysis that Google conducted that calculates the number of employees lost by Google to another employer.

j) **Paragraph 54 (last sentence)**: This excerpt provides confidential and highly sensitive details about Google's hiring and a change to Google's compensation program for Google employees.

k) **Paragraph 56 (first sentence)**: This excerpt provides confidential and highly sensitive details about a change to Google's compensation program for Google employees.

l) **Figure 1 (page 26)**: The chart relating to Google in this figure provides confidential and highly sensitive details, derived from Google's employee compensation data, about the percentage of employees who received a base salary increase during a year.

m) **Paragraph 60 (page 28)**: This excerpt purports to summarize confidential and highly sensitive aspects of the compensation practices and salary settings of Defendants, including Google.

n) **Figure 2 (page 30)**: The columns relating to Google in this figure provide confidential and highly sensitive details, derived from Google's employee compensation data, about variation in total compensation for Google employees.

o) **Figure 3 (page 31)**: The columns relating to Google in this figure provide confidential and highly sensitive details, derived from Google's employee compensation data, about the total compensation for Google employees.

p) **Figure 7 (page 43)**: The chart related to Google in this figure provides confidential and highly sensitive details, derived from Google's employee compensation data, about the frequency of calendar months for equity distributions.

q) **Figure 8 (page 44)**: The column related to Google in this figure contains a confidential and highly sensitive analysis and discussion of Google's employee compensation data.

r)   **Figure 9 (page 44)**:   The column related to Google in this figure contains a confidential and highly sensitive analysis and discussion of Google's employee compensation data.

s)   **Figure 10 (page 45)**:   The column related to Google in this figure contains a confidential and highly sensitive analysis and discussion of Google's employee compensation data.

t)   **Figure 11 (page 45)**:   The column related to Google in this figure contains a confidential and highly sensitive analysis and discussion of Google's employee compensation data.

u)   **Paragraph 108 (page 49)**:   This excerpt purports to summarize confidential and highly sensitive aspects of compensation data of Defendants, including Google.

v)   **Figure 12 (page 50)**:   The rows related to Google in this figure contain a confidential and highly sensitive analysis and discussion of Google's employee compensation data.

w)   **Figure 13 (page 51)**:   The column related to Google in this figure contains a confidential and highly sensitive analysis and discussion of Google's employee compensation data.

x)   **Figure 14 (page 52)**:   The rows related to Google in this figure contain a confidential and highly sensitive analysis and discussion of Google's employee compensation data.

y)   **Figure 15 (page 53)**:   This column in this figure related to Google contains a confidential and highly sensitive analysis and discussion of Google's employee compensation data.

z)   **Figure 16 (page 55)**:   The rows related to Google in this figure contain a confidential and highly sensitive analysis and discussion of Google's employee compensation data.

aa) **Figure 17 (page 56)**:   The rows related to Google in this figure contain a confidential and highly sensitive analysis and discussion of Google's employee compensation data.

bb) **Figure 18 (page 57)**:   The rows related to Google in this figure contain a confidential and highly sensitive analysis and discussion of Google's employee compensation data.

cc) **Figure 19 (page 58)**:   The rows related to Google in this figure contain a confidential and highly sensitive analysis and discussion of Google's employee compensation data.

### *Google's Confidential Information in Plaintiffs' Exhibits*

4.     I have also read and reviewed certain exhibits attached to the Declaration of Dean M. Harvey in Support of Plaintiffs' Consolidated Reply in Support of Motion for Class Certification and Opposition to Defendants' Motion to Strike the Report of Dr. Edward E. Leamer (Docket No. 248) ("Harvey Declaration") that specifically discuss or reference, and in some instances mischaracterize, information related to Google.  Based on my familiarity with Google's internal decision making and business strategy regarding compensation and Google's competitive position in the labor market, the following exhibits to the Harvey Declaration contain confidential commercial information, the disclosure of which would likely cause competitive harm to Google by giving third parties (including Google's competitors in the labor market) direct insight into highly confidential and competitively sensitive aspects of Google's internal decision-making processes related to its business operations:

a)  **Exhibit 4**:  This exhibit contains transcript excerpts from the deposition of Arnon Geshuri, dated August 17, 2012, and reflects confidential and highly sensitive details about Google's recruiting strategies and resources with respect to particular types of candidates.

b)  **Exhibit 10 (transcript pages 327 and 328 only)**:  This exhibit contains transcript excerpts from the deposition of Plaintiff Brandon Marshall, dated October 22,

2012, who I understand was employed with Google as a contractor during a certain period of time.   A portion of the selected excerpts (327:17- 328:25) reflects confidential and highly sensitive information about Google's compensation practices.

c) **Exhibit 13:**   This exhibit contains transcript excerpts from the deposition of Kevin M. Murphy, Ph.D., dated December 3, 2012.   A portion of the selected excerpts (260:11-25, 284:14-20, and 294:15-25) reflects confidential and highly sensitive information about Google's compensation practices.

d) **Exhibit 22:**   This exhibit is a chain of email messages, dated from June 25 to June 26, 2008, involving senior management at Google, including an email I sent to the Senior Vice President of People Operations, that reflects confidential and highly sensitive details of Google's internal deliberations and business strategy related to making counteroffers to Google employees who have received offers from other firms.

e) **Exhibit 23:**   This exhibit is a chain of email messages, dated from August 19 to August 20, 2012, involving senior Google management and an advisor to senior management that reflects confidential and highly sensitive details of Google's internal deliberations and business strategy related to making counteroffers to Google employees who have received offers from other firms and the retention of employees in the face of competition from startup companies.

f) **Exhibit 24:**   This exhibit is a chain of email messages, dated from September 6 to September 14, 2010, involving senior Google management and an advisor to senior management that reflects confidential and highly sensitive details of Google's internal deliberations and business strategy related to its product strategy and overall organizational structure.

g) **Exhibit 25:**   This exhibit is a confidential report dated April 1, 2010 that was submitted to the Department of Justice and which provides a detailed economic

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

analysis of Google's Do Not Cold Call policy and includes confidential and highly sensitive details of Google's hiring and recruiting strategies and processes, as well as confidential and highly sensitive details of Google's collaborations with other firms.

//

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on December 14, 2012 in Mountain View, California.

_____

Frank Wagner