# EXHIBIT 5

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION


IN RE:  HIGH-TECH EMPLOYEE         )

ANTITRUST LITIGATION              )

                                  )    No. 11-CV-2509-LHK

THIS DOCUMENT RELATES TO:         )

ALL ACTIONS.                      )

_____ )


CONFIDENTIAL - ATTORNEYS' EYES ONLY


VIDEO DEPOSITION OF JAMES MORRIS


AUGUST 3, 2012


Reported by:  Rosalie A. Kramm, CSR No. 5469, CRR

13:37:00  1    to 500, something like that.  So we were both struggling

13:37:04  2    with what does it mean to sort of help guide a company

13:37:07  3    when it's going through that growth, how do you keep it

13:37:10  4    good, how do you keep the culture right, how do you do it

13:37:13  5    right?  How do you manage creative people in a way that

13:37:19  6    gives them the flexibility they need, but it's not

13:37:22  7    anarchy; all those types of things.

13:37:24  8            "I came here to produce WALL-E, I met

13:37:27  9    Andrew" --

13:37:27  10           (Video stops.)

13:37:27  11   BY MR. HARVEY:

13:37:28  12       Q.   So if you notice, an interesting thing happened

13:37:30  13   at that point, where the video that ends with "all those

13:37:37  14   types of things" then skips over the discussion of the

13:37:41  15   gentleman's agreement and starts up again in discussing

13:37:47  16   your role with WALL-E.

13:37:51  17           Have you seen this video before?

13:37:55  18       A.   I saw what you showed to me before.

13:37:58  19       Q.   Have you seen this version of it?

13:38:03  20       A.   I have not seen this version of it.

13:38:07  21       Q.   Do you have any idea why the portion that

13:38:08  22   discusses the gentleman's agreement was deleted?

13:38:11  23       A.   I wasn't aware it was deleted until counsel

13:38:14  24   told me --

13:38:14  25           MS. HENN:  Objection.  You should not reveal --

13:38:17  1          THE WITNESS:  I'm sorry.

13:38:17  2          MS. HENN:  -- any communications with lawyers.

13:38:19  3          THE WITNESS:  I wasn't aware.

13:38:20  4  BY MR. HARVEY:

13:38:22  5      Q.  Do you know which version of the video is

13:38:25  6  available to employees if they wanted to look at the

13:38:27  7  video today?

13:38:29  8      A.  I don't know.

13:38:36  9          MR. HARVEY:  And that concludes the video

13:38:39 10  portion of the deposition.

13:38:42 11          THE VIDEOGRAPHER:  Could we go off the record

13:38:43 12  for just a moment?

13:38:44 13          MR. HARVEY:  Yes.

13:38:45 14          THE VIDEOGRAPHER:  We are now off the record at

13:38:46 15  1:38.

13:38:48 16          (Discussion off the record.)

13:40:34 17          THE VIDEOGRAPHER:  We are now on the record at

13:40:35 18  1:40.

13:40:38 19  BY MR. HARVEY:

13:40:43 20      Q.  Were there any time limits on the gentleman's

13:40:46 21  agreement, in the sense of was there a firm expiration

13:40:51 22  date when it would cease to be in effect?

13:40:55 23      A.  The -- the gentleman's agreement was

13:40:59 24  essentially kind of a casual understanding, really.  So

13:41:03 25  in terms of expiration, there was never anything like

13:41:06  1    that discussed, that I can recall.

13:41:09  2        Q.    Okay.    Were there any geographic limits, such

13:41:13  3    as the gentleman's agreement applied in San Francisco,

13:41:17  4    but not San Jose?

13:41:22  5        A.    When the gentleman's agreement -- when I was

13:41:26  6    involved with the Industrial Light & Magic, was in

13:41:30  7    San Rafael, and Pixar was there originally and then moved

13:41:33  8    over to the East Bay, but it didn't -- it was between

13:41:37  9    those two groups.    It wasn't geographically -- there --

13:41:42 10    there was no geographical aspect to it.

13:41:46 11            MR. HARVEY:    Okay.    Please mark this as the

13:42:31 12    next exhibit in order.

13:42:33 13            THE REPORTER:    Exhibit 158.

13:42:31 14            (Exhibit 158 was marked for identification.)

13:42:34 15    BY MR. HARVEY:

13:42:34 16        Q.    Please let me know once you've had a chance to

13:42:37 17    review the document.

13:43:32 18        A.    Okay.

13:43:32 19        Q.    I didn't say it before, but I'll say it now.

13:43:35 20    This document is Bates stamped PIX00009242.

13:43:39 21            Have you seen this document before?

13:43:41 22        A.    Well, my name is on it, but I don't recall it.

13:43:46 23        Q.    In looking at this document, did you receive

13:43:50 24    this document -- I'm sorry -- did you receive -- scratch

13:43:54 25    that.

13:43:55  1          Did you send the first email on the date

13:43:58  2   indicated to Lori McAdams?

13:44:02  3          MS. HENN:  Objection.  Vague.

13:44:06  4          THE WITNESS:  I -- it -- it's -- it's date

13:44:09  5   marked that I sent it, so I presume I did.

13:44:12  6   BY MR. HARVEY:

13:44:13  7      Q.   Okay.  And that first email that's dated

13:44:19  8   August 21st, 2006, at 8:40 a.m., you wrote, "I'm going to

13:44:23  9   go over and have lunch with Mich today, a peace keeping

13:44:27 10   mission."  Who is Mich?

13:44:30 11      A.   That's Mich Chau, who is the president of

13:44:33 12   Lucasfilm.

13:44:36 13      Q.   And what was the peace keeping mission you were

13:44:38 14   on?

13:44:39 15      A.   I can't remember, to tell you the truth.  I

13:44:41 16   must have done something to piss her off.

13:44:45 17      Q.   Okay.  You then say, "Can you remind me who the

13:44:48 18   TD is that they hired away from us about six months ago?"

13:44:52 19          What is a TD?

13:44:54 20      A.   A technical director.

13:44:56 21      Q.   And then you say, "I just want to have," quote,

13:44:58 22   "'quid pro quo,'" end quote, "ammo if I need it."  What

13:45:07 23   did you mean by "quid pro quo ammo"?

13:45:09 24      A.   Well, I don't recall the specific event, but

13:45:11 25   I -- I -- clearly there was some issue with the

16:41:10 1        I, Rosalie A. Kramm, Certified Shorthand

16:41:10 2  Reporter licensed in the State of California, License No.

16:41:10 3  5469, hereby certify that the deponent was by me first

16:41:10 4  duly sworn and the foregoing testimony was reported by me

16:41:10 5  and was thereafter transcribed with computer-aided

16:41:10 6  transcription; that the foregoing is a full, complete,

16:41:10 7  and true record of said proceedings.

16:41:10 8        I further certify that I am not of counsel or

16:41:10 9  attorney for either of any of the parties in the

16:41:10 10  foregoing proceeding and caption named or in any way

16:41:10 11  interested in the outcome of the cause in said caption.

16:41:10 12        The dismantling, unsealing, or unbinding of the

16:41:10 13  original transcript will render the reporter's

16:41:10 14  certificates null and void.

16:41:10 15        In witness whereof, I have hereunto set my hand

16:41:10 16  this day:  August 10, 2012.

16:41:10 17        ___X____ Reading and Signing was requested.

16:41:10 18        _____ Reading and Signing was waived.

16:41:10 19        _____ Reading and signing was not requested.

16:41:10 20

16:41:10 21                _____

16:41:10 22                ROSALIE A. KRAMM

16:41:10 23                CSR 5469, RPR, CRR

16:41:10 24

25