# EXHIBIT 7

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

1               UNITED STATES DISTRICT COURT

2     NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

3

4    --------------------------

5    IN RE: HIGH-TECH EMPLOYEE )

6    ANTITRUST LITIGATION      ) No. 11-CV-2509-LHK

7    --------------------------

8

9

10       HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

11

12

13       VIDEOTAPED DEPOSITION OF MICHAEL DEVINE

14             San Francisco, California

15            Wednesday, October 24, 2012

16                   Volume I

17

18

19

20    Reported by:

21    ASHLEY SOEVYN

22    CSR No. 12019

23    JOB No. 1545479

24

25    PAGES 1 - 265

                                          Page 1

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

| | | |
|---|---|---|
| 1 | A.   As I said before, I was unhappy with the | 10:09:26 |
| 2 | role, basically.  It was considerably less new | 10:09:38 |
| 3 | development than I had thought when I came on | 10:09:42 |
| 4 | board. | 10:09:45 |
| 5 | Q.   What is it that you wanted to do at | 10:09:45 |
| 6 | Dashwire? | 10:09:50 |
| 7 | A.   Develop cutting edge new technology in | 10:09:54 |
| 8 | their market space, which is configuring mobile | 10:09:57 |
| 9 | devices for end users.  And it was considerably less | 10:10:03 |
| 10 | new development and a lot more bug fixing than I had | 10:10:18 |
| 11 | anticipated.  And I think a term -- this might be | 10:10:22 |
| 12 | familiar with -- there's R&D and sustained | 10:10:34 |
| 13 | engineering. | 10:10:43 |
| 14 | This is represented as an R&D job and in a | 10:10:43 |
| 15 | startup, even though we've evolved, we're still a | 10:10:45 |
| 16 | startup and then in practice it was sustained | 10:10:49 |
| 17 | engineering -- of course there's always a portion of | 10:10:53 |
| 18 | that.  Some places there's more than others.  More | 10:10:57 |
| 19 | than half, but a -- | 10:11:15 |
| 20 | Q.   Did you have any expectations, Mr. Devine, | 10:11:15 |
| 21 | with respect to the bonus plan that you've been | 10:11:18 |
| 22 | discussing with Dashwire?  In other words, what did | 10:11:20 |
| 23 | you expect the bonus plan to be? | 10:11:26 |
| 24 | A.   Oh, no details.  I had no expectation of | 10:11:28 |
| 25 | details.  I just knew that they were -- and they | 10:11:30 |

Page 46

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

| | | |
|---|---|---|
| 1 | even said they were going to be putting one | 10:11:33 |
| 2 | together. | 10:11:35 |
| 3 | Q.   The reason I asked is you've mentioned | 10:11:36 |
| 4 | options before -- in stocks.  I want to see if I | 10:11:37 |
| 5 | understand. | 10:11:44 |
| 6 | Were you expecting a bonus plan that | 10:11:45 |
| 7 | included some stock options feature? | 10:11:47 |
| 8 | A.   My understanding was no.  There would be no | 10:11:51 |
| 9 | stock options because HTC does not do that.  My | 10:11:59 |
| 10 | understanding is that's for higher executives.  That | 10:12:07 |
| 11 | may or may not be true, but that's my understanding. | 10:12:10 |
| 12 | So I figured then, okay, then the bonus will be -- | 10:12:13 |
| 13 | appropriately make up for that.  Assuming that it | 10:12:20 |
| 14 | would be appropriate once they got it together. | 10:12:27 |
| 15 | Q.   Is the ability to receive a bonus an | 10:12:41 |
| 16 | important component of compensation for you when are | 10:12:45 |
| 17 | deciding whether or not to accept employment? | 10:12:48 |
| 18 | A.   It's a factor in considering employment. | 10:12:53 |
| 19 | Q.   Whether or not a company offers stock | 10:13:07 |
| 20 | options, is that a factor that you consider? | 10:13:09 |
| 21 | A.   Yes. | 10:13:15 |
| 22 | Q.   What about stock?  Is that another factor | 10:13:20 |
| 23 | that you consider? | 10:13:24 |
| 24 | A.   Yes. | 10:13:25 |
| 25 | Q.   Are there other components of -- or types | 10:13:25 |

Page 47

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

| | | |
|---|---|---|
| 1 | of compensation that you consider when deciding | 10:13:29 |
| 2 | whether or not to take a job with a potential | 10:13:32 |
| 3 | employer? | 10:13:42 |
| 4 | A.   Vague -- or no -- soft forms of | 10:13:48 |
| 5 | compensation such as the sense of work-life balance | 10:13:53 |
| 6 | offered by the company.  And the degree to which the | 10:13:58 |
| 7 | company makes a commitment or seems to be committed | 10:14:09 |
| 8 | to growing the skills for their employees. | 10:14:13 |
| 9 | Like are they investing in their employees, | 10:14:18 |
| 10 | basically.  To -- in looking at the compensation | 10:14:26 |
| 11 | regarding stock and things, it's as much looking at | 10:14:43 |
| 12 | it for me as other employees too because it has to | 10:14:49 |
| 13 | be -- the compensation package would have to be | 10:14:55 |
| 14 | compelling to other employees -- or new employees | 10:14:57 |
| 15 | for them to be able to hire new ones. | 10:15:00 |
| 16 | So it should be appropriate for the market, | 10:15:03 |
| 17 | which is why, when I assume a market is operating, I | 10:15:05 |
| 18 | can go comfortably into a startup that says they're | 10:15:09 |
| 19 | going to put together a bonus package because I know | 10:15:14 |
| 20 | that they will have to put together an appropriate | 10:15:18 |
| 21 | bonus package in order to recruit people. | 10:15:21 |
| 22 | So there's an assumption that a fair market | 10:15:25 |
| 23 | is in operation.  And so that's part of it.  If a | 10:15:27 |
| 24 | company has appropriate compensation packages, then | 10:15:37 |
| 25 | I know they will be able to hire good people.  So | 10:15:39 |

Page 48

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

1    that's a factor.  I guess --                          10:15:45

2        Q.   And -- I'm sorry.                            10:15:46

3        A.    -- I just bring that up because if --       10:15:50

4    because I remember specifically stating that during   10:15:52

5    my negotiations about this bonus with Dashwire.  I    10:15:55

6    basically said, "Look, you know, I'm going in, you    10:15:59

7    know, assuming you guys are going to put together a   10:16:04

8    bonus plan.  And I know you're not going to have      10:16:07

9    much luck hiring other people if you don't have one.  10:16:14

10   So I am assuming you're getting one."  So that was a  10:16:17

11   factor.                                               10:16:20

12       Q.   And is the flip side true that if the        10:16:24

13   employer is not offering what you referred to as      10:16:30

14   competitive packages, that employees may leave those  10:16:34

15   companies?  Not only it can't attract talent, but it  10:16:38

16   would also lose talent?                               10:16:48

17       A.   Yeah, they would have to keep their          10:16:52

18   packages.  Moving with the market, I would assume.    10:16:54

19       Q.   And that's a factor that you consider when   10:17:01

20   exploring job opportunities with potential            10:17:02

21   employers?                                            10:17:10

22       A.   I can't really explore that because I don't  10:17:11

23   have that information.  So I would say, no.  I would   10:17:15

24   just hope that -- I mean, companies -- I assume       10:17:19

25   companies have to do that because I assume that fair  10:17:21

Page 49

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

| | | |
|---|---|---|
| 1 | market is in play.  And if they don't do that, they | 10:17:28 |
| 2 | will lose people to other companies that offer | 10:17:32 |
| 3 | appropriate compensation. | 10:17:43 |
| 4 | Q.   You mentioned that you're currently looking | 10:18:09 |
| 5 | for employment, correct? | 10:18:11 |
| 6 | A.   Yes. | 10:18:15 |
| 7 | Q.   And you've applied to roughly 12 to 24 -- | 10:18:16 |
| 8 | in your words, a dozen to two dozen companies? | 10:18:20 |
| 9 | A.   It was an estimate, yeah. | 10:18:28 |
| 10 | Q.   Yeah.  And can you list for me the | 10:18:30 |
| 11 | companies that you've applied to? | 10:18:32 |
| 12 | A.   I had two or three interactions with a | 10:18:40 |
| 13 | recruiter recruiting for contract jobs with Intel. | 10:18:45 |
| 14 | And I applied for job with the college I went to, | 10:18:54 |
| 15 | Grinnell College. | 10:19:03 |
| 16 | THE REPORTER:  Which college?  I can't hear | 10:19:03 |
| 17 | you. | 10:19:03 |
| 18 | THE WITNESS:  Grinnell College, | 10:19:03 |
| 19 | G-r-i-n-n-e-l-l, College. | 10:19:03 |
| 20 | I would have to look to -- at this very | 10:19:07 |
| 21 | moment, I can't remember the others or -- | 10:19:19 |
| 22 | BY MR. KIERNAN: | 10:19:21 |
| 23 | Q.   What would you look at? | 10:19:22 |
| 24 | A.   My e-mails.  There is almost always an | 10:19:28 |
| 25 | e-mail.  It's always "Send me your resume." | 10:19:33 |

Page 50

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

| | | |
|---|---|---|
| 1 | opportunities at various companies.  Like when you | 14:39:32 |
| 2 | mentioned Boeing, University of Washington, | 14:39:36 |
| 3 | Microsoft, and Amazon.  Have you used Apple in | 14:39:38 |
| 4 | Apple's career site in that way? | 14:39:44 |
| 5 | MR. HARVEY:  Objection, vague. | 14:39:47 |
| 6 | THE WITNESS:  I don't recall, but there's a | 14:39:54 |
| 7 | good chance I did.  And the way my memory works, if | 14:39:55 |
| 8 | I'm shown a specific, I may suddenly remember all | 14:39:59 |
| 9 | kinds of weird, peculiar details about it. | 14:40:08 |
| 10 | BY MR. KIERNAN: | 14:40:15 |
| 11 | Q.   Okay.  Any other ways that you -- between | 14:40:15 |
| 12 | January 1, 2005 and the present that you have looked | 14:40:17 |
| 13 | for job opportunities or received information about | 14:40:23 |
| 14 | job opportunities? | 14:40:27 |
| 15 | MR. HARVEY:  Objection, asked and | 14:40:28 |
| 16 | answered. | 14:40:30 |
| 17 | MR. KIERNAN:  I asked "any other ways." | 14:40:31 |
| 18 | THE WITNESS:  Uh-huh. | 14:40:33 |
| 19 | MR. HARVEY:  Same objection. | 14:40:37 |
| 20 | THE WITNESS:  As far as I can recollect | 14:40:37 |
| 21 | now, I think every method fits into those categories | 14:40:40 |
| 22 | we've discussed. | 14:40:45 |
| 23 | BY MR. KIERNAN: | 14:40:49 |
| 24 | Q.   Focusing on the pre-2005 period, did you | 14:40:49 |
| 25 | use the same sources of information to explore job | 14:40:54 |

Page 142

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

| | | |
|---|---|---|
| 1 | opportunities or receive information about job | 14:41:01 |
| 2 | opportunities? | 14:41:04 |
| 3 | A.   Roughly. | 14:41:10 |
| 4 | Q.   What would be different? | 14:41:12 |
| 5 | A.   Specific company sites would be different | 14:41:14 |
| 6 | specific companies, I would assume.  Different | 14:41:18 |
| 7 | e-mail groups.  In Colorado, there is Rocky Mountain | 14:41:23 |
| 8 | Internet User Group.  That is one.  I think in the | 14:41:31 |
| 9 | Bay Area there is one too, I don't know what it's | 14:41:37 |
| 10 | called.  But the same idea again. | 14:41:39 |
| 11 | Q.   Okay.  Now, I want to put aside the jobs. | 14:42:09 |
| 12 | Now, I want to focus on compensation. | 14:42:12 |
| 13 | A.   Okay. | 14:42:14 |
| 14 | Q.   So going back to interrogatory number 7 -- | 14:42:15 |
| 15 | and I want to focus again like we did on January 1, | 14:42:23 |
| 16 | 2005 to the present time period. | 14:42:26 |
| 17 | Describe every source of information you've | 14:42:28 |
| 18 | obtained or received about compensation for jobs in | 14:42:30 |
| 19 | the market. | 14:42:35 |
| 20 | A.   The difference would be for the time period | 14:42:48 |
| 21 | from 2005, it would be that I don't specifically | 14:42:50 |
| 22 | recall information from co-workers. | 14:42:56 |
| 23 | Q.   Okay.  So you received compensation | 14:43:06 |
| 24 | information from cold calls? | 14:43:07 |
| 25 | A.   Spam calls and cold calls, yeah. | 14:43:12 |

Veritext National Deposition & Litigation Services
866 299-5127

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

| | | |
|---|---|---|
| 1 | Q.   Spam calls and cold calls.  What other | 14:43:23 |
| 2 | sources of information did you obtain or receive | 14:43:26 |
| 3 | compensation information between January 1, 2005 and | 14:43:30 |
| 4 | the present? | 14:43:35 |
| 5 | A.   Any professional contacts that I don't | 14:43:37 |
| 6 | recall specific instances -- Internet resources -- | 14:43:40 |
| 7 | job listings often say, "Here is the range you're | 14:43:44 |
| 8 | looking for."  Of course, usually stated low. | 14:43:47 |
| 9 | And news sites about salary or | 14:43:54 |
| 10 | compensation -- may have looked at like Salary.com | 14:44:05 |
| 11 | or Glass Door or whatever -- Ceiling.com.  But | 14:44:16 |
| 12 | briefly, I recall -- I don't know when, but I recall | 14:44:35 |
| 13 | looking at those and kind of thinking this is -- | 14:44:38 |
| 14 | like reliable information.  So it wasn't anything I | 14:44:50 |
| 15 | based any decisions on. | 14:44:58 |
| 16 | Q.   It looks like in your documents you were | 14:45:00 |
| 17 | signed up with Payscale.com.  Do you recall that? | 14:45:04 |
| 18 | A.   Yeah, maybe. | 14:45:10 |
| 19 | Q.   You don't recall? | 14:45:11 |
| 20 | A.   I vaguely recall, if that's the one -- when | 14:45:13 |
| 21 | does it -- in my documents, when did it say I was | 14:45:18 |
| 22 | signed up with them?  Do you remember? | 14:45:21 |
| 23 | Q.   2007. | 14:45:23 |
| 24 | A.   Okay.  I don't remember that.  I did | 14:45:27 |
| 25 | obviously, but I don't remember it though. | 14:45:41 |

Page 144

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

| | | |
|---|---|---|
| 1 | contacts? | 14:55:02 |
| 2 | A.  Yeah.  I do remember asking my friend | 14:55:07 |
| 3 | Morgan Woodson what are the going contractor rates | 14:55:11 |
| 4 | down in the Bay Area.  That was -- that might have | 14:55:16 |
| 5 | been in connection with the Bay Area contract | 14:55:27 |
| 6 | opportunity with Intel. | 14:55:30 |
| 7 | Q.  What about for non-contracted jobs? | 14:55:36 |
| 8 | A.  I don't recall anything like that. | 14:55:41 |
| 9 | Q.  Are the -- you've -- looking at your | 14:55:48 |
| 10 | resume, you've had a number of jobs that were | 14:55:53 |
| 11 | contractor jobs? | 14:55:55 |
| 12 | A.  Uh-huh. | 14:55:56 |
| 13 | Q.  Were they all hourly? | 14:55:57 |
| 14 | A.  Yeah, usually contractor -- yes, they were | 14:55:58 |
| 15 | all hourly. | 14:56:00 |
| 16 | Q.  Is that typical of most of these | 14:56:02 |
| 17 | contracting jobs for software engineers are | 14:56:05 |
| 18 | hourly? | 14:56:07 |
| 19 | A.  For ones I did, yes.  Some people do | 14:56:08 |
| 20 | project jobs.  I just never -- I never did any of | 14:56:20 |
| 21 | those. | 14:56:22 |
| 22 | Q.  Did you ever apply to any? | 14:56:23 |
| 23 | A.  No. | 14:56:27 |
| 24 | Q.  Why not? | 14:56:29 |
| 25 | A.  They don't list them -- I don't -- | 14:56:30 |

Page 149

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
 1      Q.    You referred to something as a spam call?      14:56:52

 2      A.    Uh-huh.                                         14:56:57

 3      Q.    What is a spam call?                            14:56:57

 4      A.    That would be a call that comes from a call     14:56:59

 5   center, frequently from overseas, with someone          14:57:07

 6   saying there is a position at a global high-tech        14:57:10

 7   major -- in your area or something like that.  And      14:57:23

 8   they are representing any of these temporary            14:57:25

 9   agencies and whenever they see you do an update on      14:57:28

10   your resume to Monster or Dice, you start getting       14:57:34

11   all these calls and they are almost all like that.      14:57:39

12         And they are virtually all of them have not       14:57:43

13   actually read, or looked at the resume and aren't       14:57:53

14   even calling with respect to a specific opportunity.    14:57:57

15   That's what I mean by that.                             14:58:01

16      Q.    Are you limiting -- you use an example of a     14:58:03

17   phone call, but is it limited by the medium in which    14:58:06

18   they contact you?                                       14:58:10

19      A.    No.  They are spamming e-mails as well, I'm     14:58:11

20   sure.  And they produced a lot of those, I am           14:58:15

21   assuming.                                               14:58:19

22      Q.    And whether or not it's a spam e-mail, does     14:58:19

23   that depend on -- that depends on the perception of     14:58:22

24   the receiver of the e-mail?                             14:58:29

25      A.    Well, you can tell usually right away.  If      14:58:30
```

Page 150

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

| | | |
|---|---|---|
| 1 | there are job details and they are complete | 14:58:36 |
| 2 | mismatched, you can tell that they did not read it. | 14:58:39 |
| 3 | Like either from skill level, experience level or -- | 14:58:41 |
| 4 | yeah, that. | 14:58:49 |
| 5 | You can tell when they are bottom fishing | 14:58:49 |
| 6 | for absurdly low pay. | 14:58:52 |
| 7 | Q.   Is that what I've seen -- perhaps colorful | 14:58:54 |
| 8 | e-mails about bottom fishing -- what do you mean by | 14:59:00 |
| 9 | "bottom fishing"? | 14:59:04 |
| 10 | A.   There would be friends that are trying to | 14:59:05 |
| 11 | place people on temporary contracts at companies and | 14:59:07 |
| 12 | working to pay for the field significantly below | 14:59:17 |
| 13 | median wages, even compared to permanent employment. | 14:59:25 |
| 14 | So when you get a job looking for someone | 14:59:32 |
| 15 | with five to seven years of experience in say C++ | 14:59:36 |
| 16 | and they want to pay $32 an hour, it's a lot of | 14:59:40 |
| 17 | things wrong with that.  They are just trying to | 14:59:48 |
| 18 | exploit the ignorant, basically. | 15:00:00 |
| 19 | Q.   And then you mentioned -- did you set up | 15:00:04 |
| 20 | any filters on your e-mail in an attempt to prevent | 15:00:09 |
| 21 | receiving those sorts of spam calls? | 15:00:16 |
| 22 | A.   Not that I can recall.  I don't think you | 15:00:26 |
| 23 | can.  I may have like in one of the worse companies, | 15:00:36 |
| 24 | maybe I might have dumped them into spam | 15:00:42 |
| 25 | automatically. | 15:00:43 |

Page 151

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
 1      Q.    You don't recall --                    15:00:45

 2      A.    It would have been like Aditi.com, which is   15:00:46

 3   an obnoxious one.                                15:00:56

 4          THE REPORTER:   Which one?  I can't hear    15:00:56

 5   you.                                             15:00:56

 6          THE WITNESS:   Aditi.com, A-d-i-t-i.com.  I   15:00:56

 7   think it's one of the call center based companies.   15:00:56

 8   I think -- just as an example, I don't know that I   15:01:05

 9   put them into a spam filter, but I might have dumped   15:01:08

10   one of them, but it would have been on the source of   15:01:12

11   it, not keywords that would have otherwise lost me   15:01:15

12   opportunities that I do want.                    15:01:18

13   BY MR. KIERNAN:                                  15:01:23

14      Q.    So just taking me through it, you would    15:01:23

15   have to determine whether the spam -- sort of on a   15:01:26

16   case-by-case basis?                              15:01:37

17      A.    Yeah.                                    15:01:39

18      Q.    And how would you define a cold call?  You   15:01:39

19   define a spam call and you also referred to cold   15:01:42

20   calls.  How would you define that?               15:01:46

21      A.    That would be someone calling me without me   15:01:47

22   having in at least a reasonable period of time prior   15:01:51

23   to that, contacting me regarding a job opportunity   15:01:54

24   via e-mail, phone, whatever, or -- might not be the   15:01:57

25   best --                                          15:02:02
```

Page 152

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

1  STATE OF CALIFORNIA    ) ss:
2  COUNTY OF MARIN        )

3

4      I, ASHLEY SOEVYN, CSR No. 12019, do hereby
5  certify:
6      That the foregoing deposition testimony was
7  taken before me at the time and place therein set
8  forth and at which time the witness was administered
9  the oath;
10     That the testimony of the witness and all
11 objections made by counsel at the time of the
12 examination were recorded stenographically by me,
13 and were thereafter transcribed under my direction
14 and supervision, and that the foregoing pages
15 contain a full, true and accurate record of all
16 proceedings and testimony to the best of my skill
17 and ability.
18     I further certify that I am neither counsel for
19 any party to said action, nor am I related to any
20 party to said action, nor am I in any way interested
21 in the outcome thereof.
       IN THE WITNESS WHEREOF, I have transcribed my
22 name this 31st day of October, 2012.

23

24

       _____
25     ASHLEY SOEVYN, CSR No. 12019

                                        Page 265