# EXHIBIT 9

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

1          UNITED STATES DISTRICT COURT

2     NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

3

4     --------------------------

5     IN RE: HIGH-TECH EMPLOYEE )

6     ANTITRUST LITIGATION      ) No. 11-CV-2509-LHK

7     --------------------------

8

9

10        HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

11

12

13      VIDEOTAPED DEPOSITION OF SIDDHARTH HARIHARAN

14             San Francisco, California

15              Friday, October 12, 2012

16                    Volume I

17

18

19

20    Reported by:

21    ASHLEY SOEVYN

22    CSR No. 12019

23    Job No. 1541277

24

25    PAGES 1 - 310

                                          Page 1

1   offer with EA?                          11:05:38

2      A.   In what capacity?          11:05:39

3      Q.   Well, let's -- let's back up a sec.  So, do   11:05:41

4   you recall what your salary was at Radical?   11:05:44

5      A.   My salary changed over the course of my   11:05:47

6   working at Radical.  So it depends on --   11:05:50

7      Q.   All right.  Well, let's -- when you started   11:05:52

8   at Radical, what was your salary?   11:05:53

9      A.   I think it was 21,500 a year.  Oh, wait,   11:05:55

10   when I was officially hired at Radical.  So there   11:05:59

11   was a -- there was a period of three months before   11:06:03

12   officially they classified me as an employee --   11:06:09

13   three months or something like that -- where I was   11:06:12

14   getting paid nothing, initially.  Like -- I was like   11:06:14

15   an intern.  That was when they took me.  So then I   11:06:17

16   got paid like a thousand bucks a month.  It was more   11:06:21

17   just like a -- this is -- there you go.  Don't   11:06:26

18   leave.  And then it was 25- -- 21,500 a year.   11:06:28

19      Q.   And when you -- at the time you left   11:06:33

20   Radical, what was your salary at Radical?   11:06:35

21      A.   I think it was 42,500 or -- I can't   11:06:41

22   remember exactly what that number is.   11:06:46

23      Q.   And these numbers we're talking about,   11:06:48

24   21,500 and 42,500, are these Canadian dollars?   11:06:50

25      A.   Yes.                        11:06:54

Page 79

```
 1      Q.   So when you got your job offer with EA,        11:06:56
 2   what was your compensation in that job offer?          11:07:00
 3      A.   It was 60,000 Canadian.                         11:07:06
 4      Q.   And that was the initial offer that EA made     11:07:08
 5   to you?                                                 11:07:10
 6      A.   Yes.                                            11:07:12
 7      Q.   Prior to that, EA making the $60,000 offer,     11:07:13
 8   had you discussed compensation with EA?                11:07:17
 9      A.   No.                                             11:07:21
10      Q.   And when EA made the $60,000 offer to you,      11:07:23
11   was that the offer you took back to Radical?            11:07:26
12      A.   Yes.                                            11:07:29
13      Q.   And what happened when you took it back to      11:07:30
14   Radical?  First off, who did you bring it to?           11:07:33
15      A.   My lead.                                        11:07:37
16      Q.   And what did you say?                           11:07:38
17      A.   I said, "Look, I want to work here.  I          11:07:39
18   don't want to go to EA.  Can you" -- "can you match     11:07:41
19   it?"                                                    11:07:48
20      Q.   And what did he say in response to that?        11:07:50
21      A.   He said, "Let's" -- "let's think about it       11:07:54
22   in six months."                                         11:07:57
23      Q.   And what was your response to that?             11:08:01
24      A.   I think I was like, "Come on, man, I don't      11:08:03
25   want to leave.  Just, you know, meet me halfway just    11:08:06
```

Page 80

1  so I don't feel like I'm really dicked around."  And    11:08:10

2  he said, "Let's discuss it in six months."             11:08:13

3      Q.   Did it ever go any farther than that?          11:08:17

4      A.   I handed him my resignation letter.  He        11:08:22

5  handed it back to me.  He said, "Think about it over    11:08:25

6  the weekend."  I said, "No, I've thought about it.      11:08:28

7  Here it is."  He said, "No, I'm not taking it."  And    11:08:30

8  I thought about it over the weekend.  And Monday        11:08:34

9  handed it back to him and he walked me out.             11:08:38

10     Q.   Do you know if your lead ever made --          11:08:44

11  strike that.                                           11:08:46

12          Do you know if your lead at Radical ever       11:08:46

13  made any effort to bring your request for an           11:08:49

14  increased salary to anyone up the chain above him?     11:08:52

15     A.   It wasn't policy at Radical to do that.  I     11:08:55

16  -- at least as far as I knew, it wasn't policy at      11:08:57

17  Radical.  So I think his hands were tied in that       11:09:03

18  regard.                                                11:09:07

19     Q.   And when you say, "it wasn't policy," what     11:09:08

20  do you mean?  Do you mean that it was the lead's       11:09:10

21  decision and no one else's?                            11:09:11

22     A.   No, I -- I don't think it was -- I think it    11:09:15

23  was understood at the company with the producers and   11:09:19

24  the leads not to entertain counteroffers.  I           11:09:25

25  don't -- I don't think -- I'm not sure.  I -- that's   11:09:29

Page 81

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

| | | |
|---|---|---|
| 1 | what I understood.  Well, maybe they just were | 11:09:32 |
| 2 | cheap, they just didn't want to give more.  I don't | 11:09:38 |
| 3 | know.  (Cross-talking.) | 11:09:41 |
| 4 | Q.    Initially -- okay.  You understood that it | 11:09:41 |
| 5 | was Radical's policy not to -- | 11:09:42 |
| 6 | A.    No, I said it could be. | 11:09:46 |
| 7 | Q.    Was that your understanding, though, that | 11:09:49 |
| 8 | it was their policy not to give pay raises in | 11:09:53 |
| 9 | response to other job offers from competing | 11:09:56 |
| 10 | companies? | 11:09:59 |
| 11 | A.    I didn't say that.  I just said that I | 11:10:00 |
| 12 | think I learned later that it might have been policy | 11:10:06 |
| 13 | at Radical not to entertain someone coming with | 11:10:10 |
| 14 | another job offer and matching that.  I think that's | 11:10:19 |
| 15 | what it was. | 11:10:22 |
| 16 | Q.    And do you recall how you learned that? | 11:10:25 |
| 17 | A.    No. | 11:10:28 |
| 18 | Q.    -- about Radical's policy? | 11:10:28 |
| 19 | A.    I can't remember.  Might have been just | 11:10:28 |
| 20 | through a colleague. | 11:10:31 |
| 21 | Q.    All right.  So you resigned from Radical | 11:10:32 |
| 22 | and then you moved over to EA, correct? | 11:10:36 |
| 23 | A.    Yes, I did. | 11:10:41 |
| 24 | Q.    Was there a lag time in between, though? | 11:10:42 |
| 25 | A.    Yeah, there might have been a lag time. | 11:10:47 |

Page 82

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

1    STATE OF CALIFORNIA       ) ss:

2    COUNTY OF MARIN            )

3

4        I, ASHLEY SOEVYN, CSR No. 12019, do hereby

5    certify:

6        That the foregoing deposition testimony was

7    taken before me at the time and place therein set

8    forth and at which time the witness was administered

9    the oath;

10       That the testimony of the witness and all

11    objections made by counsel at the time of the

12    examination were recorded stenographically by me,

13    and were thereafter transcribed under my direction

14    and supervision, and that the foregoing pages

15    contain a full, true and accurate record of all

16    proceedings and testimony to the best of my skill

17    and ability.

18       I further certify that I am neither counsel for

19    any party to said action, nor am I related to any

20    party to said action, nor am I in any way interested

21    in the outcome thereof.

22       IN THE WITNESS WHEREOF, I have transcribed my

23    name this 22nd day of October, 2012.

24

                         _____

25                      ASHLEY SOEVYN, CSR 12019

                                Page 310