# EXHIBIT 11

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
 1            UNITED STATES DISTRICT COURT
 2    NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION
 3
 4    --------------------------
 5    IN RE: HIGH-TECH EMPLOYEE )
 6    ANTITRUST LITIGATION      ) No. 11-CV-2509-LHK
 7    --------------------------
 8
 9
10       HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY
11
12
13         VIDEOTAPED DEPOSITION OF DANIEL STOVER
14                San Francisco, California
15               Monday, October 29, 2012
16                      Volume I
17
18
19
20    Reported by:
21    ASHLEY SOEVYN
22    CSR No. 12019
23    JOB No. 1541285
24
25    PAGES 1 - 298
```

Page 1

Veritext National Deposition & Litigation Services
866 299-5127

```
 1   compensation?                                          13:27:45
 2       A.   I wouldn't expect kind of the first contact   13:27:48
 3   on a site like LinkedIn that contain specifics of      13:27:52
 4   compensation.                                          13:28:03
 5       Q.   Why weren't you interested in the position    13:28:23
 6   at Adobe?                                              13:28:25
 7       A.   So, since 2010 I decided to focus on wood     13:28:31
 8   working.                                               13:28:54
 9       Q.   Uh-huh.  And so you are not interested in     13:28:54
10   technology-related jobs?                               13:28:57
11            MS. LEEBOVE:  Objection, mistates prior       13:28:58
12   testimony.                                             13:29:00
13   BY MR. KIERNAN:                                        13:29:00
14       Q.   I'm just trying to understand.  I mean, you   13:29:00
15   tell me that you're interested in wood working.        13:29:02
16   Well, that doesn't tell me why you're not interested   13:29:04
17   in a job --                                            13:29:07
18       A.   As a job right now to make money, I'm not     13:29:08
19   interested in technology positions.  I'm still         13:29:11
20   interested in technology and I try to keep abreast     13:29:14
21   with, you know, what is going on.  And at least know   13:29:17
22   what skills I need to develop, if I had to go back     13:29:20
23   into technology.                                       13:29:24
24       Q.   Are you actively looking for software         13:29:26
25   engineer jobs?                                         13:29:31
```

| | | |
|---|---|---|
| 1 | A. I am not. | 13:29:33 |
| 2 | Q. You've mentioned several times "a company | 13:29:35 |
| 3 | like that." What do you mean, when you say that? | 13:29:44 |
| 4 | A. I think, in general, I'm just talking about | 13:29:46 |
| 5 | a company that kind of stands out for me. So a firm | 13:29:49 |
| 6 | like Adobe or Intuit, when you received, you know, a | 13:29:55 |
| 7 | form of somebody trying to recruit you for a | 13:29:58 |
| 8 | position with those -- those firms, in comparison to | 13:30:01 |
| 9 | the kind of random recruiters' who approach you with | 13:30:06 |
| 10 | positions at start ups or, you know, some kind of | 13:30:09 |
| 11 | small unknown companies. A lot of times I may not | 13:30:14 |
| 12 | even read those. I don't pay a lot of attention to | 13:30:25 |
| 13 | those. | 13:30:27 |
| 14 | Q. What are some other companies that fall in | 13:30:28 |
| 15 | the category that you just put Adobe and Intuit | 13:30:30 |
| 16 | in? | 13:30:36 |
| 17 | A. For me, obviously, Google. And, again, I'm | 13:30:44 |
| 18 | specifically talking about firms in Silicon Valley | 13:30:50 |
| 19 | that are kind of there. Google, Intuit, Apple, kind | 13:30:53 |
| 20 | of seminal firms in Silicon Valley. Microsoft. | 13:31:04 |
| 21 | Q. Any others? | 13:31:18 |
| 22 | A. I'm sure there are more. | 13:31:20 |
| 23 | Q. IBM? | 13:31:34 |
| 24 | MS. LEEBOVE: Objection, vague. | 13:31:35 |
| 25 | THE WITNESS: I -- yes, I would put IBM in | 13:31:36 |

Veritext National Deposition & Litigation Services
866 299-5127

| | | |
|---|---|---|
| 1 | that category. | 13:31:40 |
| 2 | BY MR. KIERNAN: | 13:31:46 |
| 3 | Q.   What about Oracle? | 13:31:46 |
| 4 | A.   So this category you're looking for of jobs | 13:31:52 |
| 5 | that I would be interested in or just kind of firms | 13:31:54 |
| 6 | that -- | 13:31:57 |
| 7 | Q.   Firms that you'd be interested in.  That's | 13:31:57 |
| 8 | what I understood the category that you were | 13:31:59 |
| 9 | describing. | 13:32:02 |
| 10 | A.   I didn't describe any.  I think more firms | 13:32:03 |
| 11 | that have, kind of, cultural influence or are large | 13:32:08 |
| 12 | enough.  Whenever you receive, you know, some | 13:32:10 |
| 13 | type -- somebody contacting you about a position at | 13:32:13 |
| 14 | that firm, it kind of jumps out at the page.  So | 13:32:16 |
| 15 | I -- I would distinguish that from I wouldn't apply | 13:32:18 |
| 16 | for a job at IBM or, you know, probably Microsoft, | 13:32:22 |
| 17 | but it would still be something that would kind of | 13:32:25 |
| 18 | stand out for me. | 13:32:28 |
| 19 | Q.   So whether a company would stand out, that | 13:32:52 |
| 20 | would depend on an individual's preference; is that | 13:32:56 |
| 21 | right? | 13:33:00 |
| 22 | A.   I mean, there's a degree of speculation in | 13:33:04 |
| 23 | that, but I think there's some aspects, the size of | 13:33:06 |
| 24 | the company, cultural influence of the company.  So | 13:33:10 |
| 25 | it's not entirely -- it's not entirely on an | 13:33:23 |

Page 132

| | | |
|---|---|---|
| 1 | that you received in LinkedIn or e-mails?  In other | 15:43:21 |
| 2 | words, did you take those more seriously or -- | 15:43:26 |
| 3 | A.   I would -- I would scan them.  90 percent | 15:43:34 |
| 4 | or thereabouts were from organizations I wasn't very | 15:43:37 |
| 5 | interested in or random recruiters.  So | 15:43:44 |
| 6 | occasionally, there may be one from a particular | 15:43:49 |
| 7 | company that would pop up for me and peak my | 15:43:51 |
| 8 | interest, but I wasn't really actively looking for | 15:43:59 |
| 9 | another position while I was working at Intuit, so | 15:44:01 |
| 10 | those ones that did peak my interest I would note | 15:44:04 |
| 11 | and probably write them back thanking them. | 15:44:08 |
| 12 | Q.   As you sit here today, do you recall any | 15:44:17 |
| 13 | that peaked your interest, while you were employed | 15:44:19 |
| 14 | at Intuit? | 15:44:19 |
| 15 | A.   I don't have any specific recollection. | 15:44:23 |
| 16 | Q.   And -- but you think about 90 percent were | 15:44:34 |
| 17 | from companies that you weren't interested in, which | 15:44:42 |
| 18 | would leave about 10 percent of companies that you | 15:44:46 |
| 19 | may be interested in? | 15:44:50 |
| 20 | A.   As an estimate. | 15:44:52 |
| 21 | Q.   Do you recall any of the companies that | 15:44:59 |
| 22 | would fall into the ten percent ones that you would | 15:45:03 |
| 23 | be interested in pursuing a job opportunity? | 15:45:06 |
| 24 | A.   While I was working at Intuit, I would be | 15:45:11 |
| 25 | guessing at this point. | 15:45:22 |

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

| | | |
|---|---|---|
| 1 | Q.   At any time did you use any information | 15:45:24 |
| 2 | that you learned from a cold call to negotiate | 15:45:26 |
| 3 | higher compensation at Intuit? | 15:45:32 |
| 4 | MS. LEEBOVE:  Objection, calls for a legal | 15:45:34 |
| 5 | conclusion. | 15:45:37 |
| 6 | THE WITNESS:  The only time I really | 15:45:44 |
| 7 | negotiated for a salary at Intuit was before | 15:45:46 |
| 8 | leaving. | 15:45:49 |
| 9 | MR. KIERNAN:  Uh-huh. | 15:45:50 |
| 10 | THE WITNESS:  That happened over a period | 15:45:50 |
| 11 | of five months, approximately.  So, receiving these | 15:45:51 |
| 12 | cold calls, and in particular, you know, the ten | 15:45:55 |
| 13 | percent of cold calls that are positions that I was | 15:45:58 |
| 14 | interested in, I mean, it provides some motivation | 15:46:01 |
| 15 | for, you know, being able to negotiate a higher | 15:46:07 |
| 16 | salary. | 15:46:14 |
| 17 | BY MR. KIERNAN: | 15:46:15 |
| 18 | Q.   And you were negotiating that with Ravi? | 15:46:15 |
| 19 | A.   Correct. | 15:46:17 |
| 20 | Q.   And did you state to Ravi that -- what's | 15:46:20 |
| 21 | Ravi's last name? | 15:46:24 |
| 22 | A.   Mohan. | 15:46:26 |
| 23 | Q.   Mohan. | 15:46:27 |
| 24 | Did you state to Mr. Mohan that you | 15:46:27 |
| 25 | received a number of cold calls and you'd like an | 15:46:27 |

| | | |
|---|---|---|
| 1 | increase in your compensation? | 15:46:27 |
| 2 | A.   I don't recall specifically doing so.  It | 15:46:39 |
| 3 | was common knowledge. | 15:46:45 |
| 4 | Q.   Com- -- what was common knowledge? | 15:46:46 |
| 5 | A.   That -- kind of these recruitment efforts | 15:46:47 |
| 6 | were always going on. | 15:46:49 |
| 7 | Q.   While you were employed at Intuit, do you | 15:46:52 |
| 8 | recall the recruitment efforts from other companies | 15:46:57 |
| 9 | increasing, decreasing, remaining the same? | 15:47:02 |
| 10 | MS. LEEBOVE:  Objection, vague and | 15:47:07 |
| 11 | ambiguous, compound. | 15:47:09 |
| 12 | THE WITNESS:  As I stated already, there's, | 15:47:13 |
| 13 | you know, particular settings you can do it with | 15:47:14 |
| 14 | LinkedIn to make your profile as someone who was | 15:47:16 |
| 15 | looking for a job or not looking for a job.  I don't | 15:47:20 |
| 16 | recall exactly when I may have changed those.  It's | 15:47:24 |
| 17 | most definitely a -- quite a bit of change, | 15:47:26 |
| 18 | depending on how I had published myself. | 15:47:30 |
| 19 | BY MR. KIERNAN: | 15:47:35 |
| 20 | Q.   Do you recall while you were working at | 15:47:35 |
| 21 | Intuit, whether you had changed that setting on | 15:47:37 |
| 22 | LinkedIn from actively looking to not actively | 15:47:40 |
| 23 | looking? | 15:47:48 |
| 24 | A.   I have no specific recollections. | 15:47:49 |
| 25 | Q.   With respect to the, approximately, 40 or | 15:47:53 |

Page 205

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
1   State OF CALIFORNIA    ) ss:
2   COUNTY OF MARIN        )
3
4       I, ASHLEY SOEVYN, CSR No. 12019, do hereby
5   certify:
6       That the foregoing deposition testimony was
7   taken before me at the time and place therein set
8   forth and at which time the witness was administered
9   the oath;
10      That the testimony of the witness and all
11  objections made by counsel at the time of the
12  examination were recorded stenographically by me,
13  and were thereafter transcribed under my direction
14  and supervision, and that the foregoing pages
15  contain a full, true and accurate record of all
16  proceedings and testimony to the best of my skill
17  and ability.
18      I further certify that I am neither counsel for
19  any party to said action, nor am I related to any
20  party to said action, nor am I in any way interested
    in the outcome thereof.
21      IN THE WITNESS WHEREOF, I have transcribed my
22  name this 2nd day of November, 2012.
23
24
                                  [signature]
                          ASHLEY SOEVYN, CSR 12019
25
```

Page 298