# EXHIBIT 2
# PUBLIC VERSION

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

1              UNITED STATES DISTRICT COURT

2      NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

3

4      --------------------------

5      IN RE: HIGH-TECH EMPLOYEE )

6      ANTITRUST LITIGATION       ) No. 11-CV-2509-LHK

7      --------------------------

8

9

10

11          Videotaped Deposition of Michael Devine, taken

12     at 275 Battery Street, 29th floor, San Francisco,

13     California, commencing at 9:17 a.m., Wednesday,

14     October 24, 2012, before Ashley Soevyn, CSR 12019.

15

16

17

18

19

20

21

22

23

24

25

                                                Page  2

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

| | | |
|---|---|---|
| 1 | more broad side of that -- Office -- backend Office, | 11:57:20 |
| 2 | ERP, enterprise resource planning.  I don't know. | 11:57:25 |
| 3 | Those are all domains.  That's what I mean by | 11:57:33 |
| 4 | that. | 11:57:36 |
| 5 | Q.   Which market domains do you have | 11:57:48 |
| 6 | qualifications to work in? | 11:57:56 |
| 7 | A.   I can't answer that.  It's tough to answer | 11:58:05 |
| 8 | that because, again, it depends on the perspective | 11:58:08 |
| 9 | of the hiring manager, hiring firm.  I think I can | 11:58:10 |
| 10 | work in any market domain.  And in fact, one thing I | 11:58:15 |
| 11 | point out as an asset is the fact that I quickly | 11:58:22 |
| 12 | adapt to market domains and am generally very | 11:58:25 |
| 13 | interested in learning them. | 11:58:29 |
| 14 | Some technical people like particular | 11:58:36 |
| 15 | languages, or some people like a particular | 11:58:39 |
| 16 | operating system, you know, preferences.  I like to | 11:58:42 |
| 17 | kind of immerse myself a bit and care a lot about | 11:58:45 |
| 18 | the market domain of that product. | 11:58:49 |
| 19 | It gives it meaning, it's context, it's for | 11:58:52 |
| 20 | the work.  It's an advantage if the hiring manager | 11:58:54 |
| 21 | is looking for that.  It's a wash if they are not. | 11:59:01 |
| 22 | It's not like they are not looking at that.  "Oh, | 11:59:03 |
| 23 | great.  You're interested in our product domain." | 11:59:07 |
| 24 | If someone has a good bit of experience in | 11:59:13 |
| 25 | a particular niche, that would make them much more | 11:59:18 |

Page 93

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

| | | |
|---|---|---|
| 1 | A.    I would work in any market domain. | 12:03:02 |
| 2 | Q.    What about -- what types of companies could | 12:03:07 |
| 3 | you work for? | 12:03:12 |
| 4 | A.    Any type of company that needed software | 12:03:13 |
| 5 | engineering expertise.  Or any company that was | 12:03:18 |
| 6 | interested in my expertise in any of these | 12:03:27 |
| 7 | particular market domains.  There's this other thing | 12:03:31 |
| 8 | that some tech people do, which is technical product | 12:03:34 |
| 9 | management or we call them PMs at Microsoft. | 12:03:38 |
| 10 | Technical background, but they understand the | 12:03:45 |
| 11 | features and functions of the product space. | 12:03:47 |
| 12 | I could kind of work in both those areas. | 12:03:55 |
| 13 | Yeah, actually quite -- very flexible.  So the | 12:04:05 |
| 14 | common threads are not restricting, they're an | 12:04:14 |
| 15 | advantage within that domain, but it's not that I | 12:04:17 |
| 16 | can't jump into anything that's completely foreign | 12:04:20 |
| 17 | to me and do it. | 12:04:22 |
| 18 | Q.    You could work for any company that needs | 12:04:30 |
| 19 | software engineering with your skill set? | 12:04:33 |
| 20 | A.    I think so. | 12:04:36 |
| 21 | Q.    Looking at your resume, it appears that you | 12:04:41 |
| 22 | could work for technology companies and | 12:04:46 |
| 23 | non-technology companies? | 12:04:50 |
| 24 | A.    Generally making technology for | 12:04:57 |
| 25 | non-technology companies.  That's probably -- | 12:04:59 |

Page 96

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

| | | |
|---|---|---|
| 1 | depends on whether a company thinks its a technology | 12:05:06 |
| 2 | company or not. | 12:05:10 |
| 3 | Q.   You worked for Merrill Lynch, for | 12:05:10 |
| 4 | example? | 12:05:13 |
| 5 | A.   Yes.  Which, depending on who you talk to, | 12:05:14 |
| 6 | is not a technology company.  My boss thought it was | 12:05:19 |
| 7 | a technology company, actually.  It is a matter of | 12:05:22 |
| 8 | perspective -- obviously they are a financial | 12:05:30 |
| 9 | company, but -- | 12:05:33 |
| 10 | Q.   Could you work for a financial company? | 12:05:33 |
| 11 | A.   Most, yes. | 12:05:44 |
| 12 | Q.   Doing the software engineering work that | 12:05:47 |
| 13 | you're qualified to do? | 12:05:48 |
| 14 | A.   Yes.  I could probably do mathematical | 12:05:50 |
| 15 | modeling work too, simulation.  Actually, when I was | 12:05:53 |
| 16 | at Merrill Lynch, I created a new way of looking at | 12:05:58 |
| 17 | a bond valuation over time -- that wasn't used for a | 12:06:09 |
| 18 | long time.  So that was a bit of an analytical thing | 12:06:14 |
| 19 | that would have been more of an analyst, bond | 12:06:18 |
| 20 | analyst kind of role.  But again, my job title was | 12:06:24 |
| 21 | mathematical programmer, I think at that time. | 12:06:30 |
| 25 | Q.   And Bloomberg, would you put that into the | 12:06:42 |

Page 97

```
1    list with the financial services?                    12:06:44

2        A.   I think of them more as -- way more toward   12:06:47

3    technology, but yeah.  To their end customers they    12:06:50

4    are financial information and analysis, but --        12:06:54

5        Q.   What other types of companies could you      12:07:00

6    work -- you've mentioned financial services,          12:07:05

7    technology broadly speaking, but what other types of  12:07:07

8    companies could you work for with your skill set?     12:07:10

9        A.   Any company can use my skills.  And I        12:07:18

10   can -- I'm a generally smart guy, take on a lot more  12:07:21

11   roles than I have done in the past -- but didn't      12:07:25

12   mean they necessarily take me on, but I don't want    12:07:29

13   to rule out any type of company.  You know, whether   12:07:35

14   it's my specific experience, it's a case-by-case      12:07:38

15   basis as to whether it's an advantage or not.  If     12:07:45

16   that's an answer -- (Cross-talking.)                  12:07:55

17       Q.   Yeah and maybe it's -- since I'm asking      12:07:55

18   type of company, it sounds like you can work across   12:07:56

19   many industries?                                      12:07:59

20       A.   Sure.                                        12:08:02

21       Q.   Could you work at a company that             12:08:22

22   manufactures and distributes microprocessors?         12:08:28

23       A.   Might have been if a recruiter saw my        12:08:45
```

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

| | | |
|---|---|---|
| 1 | It sounded like you got confused between | 14:20:22 |
| 2 | whether we were talking about jobs -- job | 14:20:25 |
| 3 | opportunities or compensation information. | 14:20:28 |
| 4 | A.   Uh-huh. | 14:20:31 |
| 5 | Q.   Okay.  Let's focus on compensation | 14:20:32 |
| 6 | information.  So describe every source of | 14:20:37 |
| 7 | information you have obtained or received about | 14:20:43 |
| 8 | compensation for jobs in the market. | 14:20:46 |
| 9 | A.   Okay.  Cold calls -- sorry, jobs.  Did you | 14:20:54 |
| 10 | say jobs or compensation? | 14:21:00 |
| 11 | Q.   Let's do this.  Let's start with jobs. | 14:21:02 |
| 12 | Let's start with jobs.  I'm going to re-ask the | 14:21:07 |
| 13 | question. | 14:21:10 |
| 14 | A.   Sorry. | 14:21:10 |
| 15 | Q.   That's okay.  That's okay.  Describe every | 14:21:10 |
| 16 | source of information you have obtained or received | 14:21:14 |
| 17 | about jobs. | 14:21:16 |
| 18 | A.   That would be phone calls, co-workers, | 14:21:22 |
| 19 | professional contacts, and Internet resources such | 14:21:26 |
| 20 | as Monster.com, Ice.com, Hotjobs.com, the Washington | 14:21:32 |
| 21 | State unemployment job site.  And assuming Internet | 14:21:46 |
| 22 | resources also means direct company websites. | 14:22:10 |
| 23 | So during that time period, I've used the | 14:22:14 |

Veritext National Deposition & Litigation Services
866 299-5127

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

| | | |
|---|---|---|
| 1 | websites other than that.  Obviously -- | 14:22:39 |
| 2 | Q.   These are the career sites? | 14:22:46 |
| 3 | A.   No, I'm speaking of the page when you go to | 14:22:47 |
| 4 | a company website and click "about" and then "jobs" | 14:22:49 |
| 5 | here -- is such and such company hiring?  That's | 14:22:52 |
| 6 | what I meant when I'm listing those specific | 14:22:55 |
| 7 | companies. | 14:22:58 |
| 8 | Q.   And you said during this time period, you | 14:22:59 |
| 9 | mean January 1, 2005 to present? | 14:23:01 |
| 10 | A.   Yes.  If it's to the present too, that one | 14:23:06 |
| 11 | that I mentioned that I used recently called a -- | 14:23:09 |
| 12 | Simply Hired -- | 14:23:17 |
| 13 | Q.   Simply Hired. | 14:23:17 |
| 14 | A.   -- now I remember it.  Simply Hired.  That | 14:23:17 |
| 15 | one was just I think an indexing that goes into the | 14:23:21 |
| 16 | actual -- wherever the job is actually listed. | 14:23:23 |
| 17 | Q.   Between January 1, 2005 and the present, | 14:23:30 |
| 18 | have you used LinkedIn for job searches? | 14:23:35 |
| 19 | A.   No.  I was on there, but I never used it. | 14:23:41 |
| 20 | I set one up, I got connected to a handful of | 14:23:45 |
| 21 | friends and never used it. | 14:23:49 |
| 22 | Q.   What about Facebook? | 14:23:52 |
| 23 | A.   I take that back.  Let me correct that.  I | 14:23:54 |
| 24 | contacted a former colleague through it because I | 14:23:57 |
| 25 | did not have their e-mail address.  So I used it for | 14:24:01 |

Page 133

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

| | | |
|---|---|---|
| 1 | that, but that wasn't really a -- that wasn't really | 14:24:05 |
| 2 | using it for networking.  That was somebody I | 14:24:08 |
| 3 | already knew.  I didn't have their e-mail address. | 14:24:10 |
| 4 | I just -- a weird little memory just popped into my | 14:24:12 |
| 5 | head. | 14:24:15 |
| 6 | Q.   When you did that, was the purpose to | 14:24:17 |
| 7 | explore potential job opportunities? | 14:24:19 |
| 8 | A.   Might have been that or it might have been | 14:24:24 |
| 9 | to ask for a reference.  I don't remember. | 14:24:26 |
| 10 | Q.   Do you recall if it was in connection with | 14:24:31 |
| 11 | looking for a job? | 14:24:33 |
| 12 | A.   Either of those would be -- I would say, | 14:24:34 |
| 13 | yeah.  It was not personal. | 14:24:39 |
| 14 | Q.   Any other Internet sites or searches that | 14:24:54 |
| 15 | you've done to look for jobs between 2001 -- I mean, | 14:24:59 |
| 16 | January 1, 2005 and the present? | 14:25:05 |
| 17 | A.   There are certainly others.  I am not | 14:25:10 |
| 18 | recalling any specific ones right now. | 14:25:15 |
| 19 | Q.   And I think I've seen your documents -- | 14:25:21 |
| 20 | technology forums that you belong to. | 14:25:25 |
| 21 | A.   Oh, thank you.  Yeah, a group called | 14:25:28 |
| 22 | Seattle Startups.  It's an e-mail forum of people | 14:25:35 |
| 23 | who are looking for or interested in Seattle | 14:25:46 |
| 24 | technology startups or Seattle area technology | 14:25:50 |
| 25 | startups. | 14:25:50 |

Page 134

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

| | | |
|---|---|---|
| 1 | Q.   You've used that as a -- | 14:25:51 |
| 2 | A.   Yes. | 14:25:54 |
| 3 | Q.   -- source of potential jobs | 14:25:54 |
| 4 | opportunities? | 14:26:03 |
| 5 | A.   Yes.  Feel free if you have additional | 14:26:03 |
| 6 | information to remind me at any time.  My memory is | 14:26:13 |
| 7 | that way -- | 14:26:15 |
| 8 | Q.   How about Craigslist?  Have you searched | 14:26:16 |
| 9 | Craigslist for a potential job? | 14:26:19 |
| 10 | A.   Craigslist might be where I found out about | 14:26:23 |
| 11 | the Ratio Interactive job, which would explain why I | 14:26:27 |
| 12 | don't think I ever used Craigslist again to look for | 14:26:33 |
| 13 | a job.  That's why you don't go to Craigslist to | 14:26:35 |
| 14 | look for a massage therapist, for example. | 14:26:38 |
| 15 | Q.   Mr. Devine, have you -- excuse me.  Are you | 14:26:48 |
| 16 | aware that some companies have a career site where | 14:26:52 |
| 17 | you can submit your resume but not for a specific | 14:27:00 |
| 18 | position? | 14:27:03 |
| 19 | A.   Yes. | 14:27:04 |

Page 135

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
13        Q.    Did you use Adobe's career site?        14:28:17

14        A.    I am not sure.  I don't recall if I did.  I    14:28:24

15   may have had to when I was a permanent -- sorry,    14:28:34

16   when I was a contract employee and then was applying    14:28:38

17   to convert to permanent status.  I might have had to    14:28:45

18   go onto the site to actually do that as a formality,    14:28:49

19   instead of just walking over to my boss's office and    14:28:54

20   handing him my resume.    14:29:01

21        A job with Manpower, whichever temp firm it    14:29:04

22   was when I was there, it was for the same role as    14:29:07

23   when I became a permanent -- a permanent -- yeah,    14:29:08

24   employee for Adobe -- for the same manager.  I don't    14:29:15

25   remember.  I probably -- per the rules, had to use    14:29:22
```

Page 136

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

| | | |
|---|---|---|
| 1 | the site.  Once I was an employee, then they have an | 14:29:24 |
| 2 | internal site, I think, if I remember correctly. | 14:29:35 |
| 3 | Q.   And did you submit any applications with | 14:29:38 |
| 4 | the internal site for jobs that were available at | 14:29:42 |
| 5 | Adobe? | 14:29:45 |
| 6 | A.   I'm pretty sure I did.  The -- more than | 14:29:46 |
| 7 | one -- and one specific one I remember is I think | 14:29:50 |
| 8 | applying for a security related job, like security | 14:29:52 |
| 9 | for the secure software team.  I think I did that | 14:29:58 |
| 10 | through the site. | 14:30:07 |
| 11 | Q.   Any other companies that you recall? | 14:30:13 |
| 12 | A.   Not spontaneously. | 14:30:15 |
| 13 | Q.   Did you -- for example, did you use Apple's | 14:30:17 |
| 14 | site? | 14:30:22 |
| 15 | A.   I'm not sure if I did during that time | 14:30:25 |
| 16 | period.  I did apply or submitted my resume through | 14:30:28 |
| 17 | a colleague or a referral.  I don't remember if I | 14:30:36 |
| 18 | used the site for that or not. | 14:30:40 |
| 19 | Q.   And do you recall the name of the | 14:30:45 |
| 20 | colleague? | 14:30:49 |
| ▇ | ▇   ▇▇▇▇▇▇▇▇▇ | ▇▇▇▇ |
| 22 | Q.   About when did you do that?  You submitted | 14:30:58 |
| ▇ | ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ | ▇▇▇▇ |
| ▇ | ▇▇▇▇▇▇ | ▇▇▇▇ |
| 25 | A.   I think it was 2005, I think it was. | 14:31:08 |

Page 137

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

| | | |
|---|---|---|
| 1 | Q.   And did you interview with Apple? | 14:31:18 |
| 2 | A.   Yes. | 14:31:19 |
| 3 | Q.   Do you recall what job you were applying | 14:31:21 |
| 4 | to? | 14:31:24 |
| 5 | A.   No, actually, I don't. | 14:31:25 |
| 6 | Q.   Was this while you were working as a | 14:31:29 |
| 7 | contractor for Microsoft in 2005? | 14:31:35 |
| 8 | A.   Yes, I think it was. | 14:31:42 |
| 9 | Q.   Did you receive an offer from Apple? | 14:31:43 |
| 10 | A.   No. | 14:31:52 |
| 11 | Q.   After the interview, did Apple -- rejected | 14:32:09 |
| 12 | your application?  In other words, they went with | 14:32:12 |
| 13 | another candidate? | 14:32:17 |
| 14 | A.   I guess it was probably -- yeah, it was | 14:32:26 |
| 15 | rejected for the position.  It wasn't that I said in | 14:32:28 |
| 16 | that case -- | 14:32:28 |
| 17 | Q.   You did not withdraw your candidacy for the | 14:32:28 |
| 18 | position that you interviewed for? | 14:32:34 |
| 19 | A.   I don't believe I did. | 14:32:36 |
| 20 | Q.   And having spoken of that one incident, did | 14:32:47 |
| 21 | you otherwise use the career site at Apple at any | 14:32:53 |
| 22 | time between January 1, 2005 and the present? | 14:33:02 |
| 23 | A.   I don't specifically recall doing that, but | 14:33:09 |
| 24 | there's a good chance I did, quite honestly.  I | 14:33:12 |
| 25 | don't know.  You know, I did have an interaction.  I | 14:33:15 |

Page 138

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
 1   recalled when putting together the e-mail stuff in     14:33:21

 2   2008.  And I don't know if that involved interaction   14:33:27

 3   with the site or not.                                  14:33:31

 4       Q.   Do you recall how you were contacted in       14:33:34

 5   2008?                                                  14:33:36

 6            MR. HARVEY:  Objection, vague.  And           14:33:40

 7   objection, misstates prior testimony.                  14:33:43

 8            THE WITNESS:  I don't recall.                 14:33:55

 9   BY MR. KIERNAN:                                        14:33:56

10       Q.   Did you a apply for a job with Apple in       14:33:56

11   2008?                                                  14:34:04

12       A.   I don't recall.                               14:34:08

13       Q.   Do you recall withdrawing your application    14:34:11

14   because the position that was offered by Apple --      14:34:15

15       A.   I remember changing my mind about being       14:34:25

16   interested in a position.  I don't know if I           14:34:27

17   actually applied for the position or if a recruiter    14:34:29

18   contacted me.  I don't remember.                       14:34:45

19       Q.   Have you used career sites -- putting aside   14:34:49

20   Adobe and Apple -- have you used a career site of      14:34:52

21   any other defendant in this lawsuit?                   14:34:55

22       A.   Probably Google.  I use that site.            14:35:02

23       Q.   And do you recall specifically using          14:35:12

24   Google's career site?                                  14:35:15

25       A.   Maybe also in 2005.  Maybe I did not --       14:35:21
```

Veritext National Deposition & Litigation Services
866 299-5127

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

| | | |
|---|---|---|
| 1 | maybe I did, maybe I did not.  If you have | 14:35:32 |
| 2 | information that might help -- you remember -- that | 14:35:37 |
| 3 | might help.  And I do recall also e-mailing to | 14:35:45 |
| 4 | someone I knew who did work there, my resume.  And | 14:35:49 |
| 5 | it was in 2009 maybe. | 14:36:01 |
| 6 | Q.   Who did you send your e-mail -- or your | 14:36:10 |
| 7 | resume to in 2009 at Google? | 14:36:16 |
| 8 | A.   I don't remember his name. | 14:36:29 |
| 9 | Q.   Do you recall why you sent your resume? | 14:36:30 |
| 10 | A.   Yes. | 14:36:33 |
| 11 | Q.   Why? | 14:36:35 |
| 12 | A.   I met him at a coffee shop in Seattle, and | 14:36:37 |
| 13 | I talked to him about my art work, which is | 14:36:46 |
| 14 | technology-based art work.  And he was really | 14:36:49 |
| 15 | impressed with it and said, "You should come work at | 14:36:55 |
| 16 | Google." | 14:37:02 |
| 17 | And I did not follow-up immediately, and | 14:37:03 |
| 18 | then I followed up at some later point.  I don't | 14:37:09 |
| 19 | know what the gap was.  That's how I remember it. | 14:37:12 |
| 20 | Q.   After that, you sent your resume to this | 14:37:20 |
| 21 | individual, did you apply for a job with Google? | 14:37:25 |
| 22 | A.   I don't recall.  I don't think I did. | 14:37:31 |
| 23 | Maybe I did. | 14:37:35 |
| 24 | Q.   Have you ever applied for a job at | 14:37:38 |
| 25 | Google? | 14:37:41 |

Page 140

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

| | | |
|---|---|---|
| 1 | MR. HARVEY:  Objection, asked and | 14:37:42 |
| 2 | answered. | 14:37:43 |
| 3 | THE WITNESS:  I was saying that -- that | 14:37:47 |
| 4 | counts -- sending to a Google employee for referral, | 14:37:49 |
| 5 | if that counts.  And also, I may have applied in | 14:37:53 |
| 6 | 2005, but I'm not sure if I did.  I think I did. | 14:37:57 |
| 7 | BY MR. KIERNAN: | 14:38:02 |
| 8 | Q.   Any other defendants that you used their | 14:38:08 |
| 9 | career site?  And the other defendants are Intuit, | 14:38:14 |
| 10 | Pixar, Lucasfilm, and Intel. | 14:38:27 |
| 11 | A.   Not that I recall.  If you have, again, | 14:38:29 |
| 12 | other information, feel free to remind me. | 14:38:32 |
| 13 | Q.   With respect to Apple's career website, | 14:38:35 |
| 14 | have you ever submitted your resume and your | 14:38:44 |
| 15 | application or used it without prompting from | 14:38:47 |
| 16 | someone else?  In other words, you went there, you | 14:38:58 |
| 17 | know, you decided to go to Apple's website and use | 14:39:03 |
| 18 | the career site. | 14:39:11 |
| 19 | And what I'm trying to distinguish when I | 14:39:13 |
| 20 | re-ask the question is, you can have a circumstance | 14:39:16 |
| 21 | where a recruiter tells you if you're going to | 14:39:19 |
| 22 | submit your application, you got to do it through | 14:39:22 |
| 23 | the career site. | 14:39:25 |
| 24 | I want to focus on you, on your own, you | 14:39:26 |
| 25 | searching for jobs and your exploring job | 14:39:29 |

Page 141

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

| | | |
|---|---|---|
| 1 | opportunities at various companies.  Like when you | 14:39:32 |
| | ██████████████████████████████ | ████████ |
| | ████████████████ ████████████ | ████████ |
| 4 | Apple's career site in that way? | 14:39:44 |
| 5 | MR. HARVEY:  Objection, vague. | 14:39:47 |
| 6 | THE WITNESS:  I don't recall, but there's a | 14:39:54 |
| 7 | good chance I did.  And the way my memory works, if | 14:39:55 |
| 8 | I'm shown a specific, I may suddenly remember all | 14:39:59 |
| 9 | kinds of weird, peculiar details about it. | 14:40:08 |
| 10 | BY MR. KIERNAN: | 14:40:15 |
| 11 | Q.   Okay.  Any other ways that you -- between | 14:40:15 |
| 12 | January 1, 2005 and the present that you have looked | 14:40:17 |
| 13 | for job opportunities or received information about | 14:40:23 |
| 14 | job opportunities? | 14:40:27 |
| 15 | MR. HARVEY:  Objection, asked and | 14:40:28 |
| 16 | answered. | 14:40:30 |
| 17 | MR. KIERNAN:  I asked "any other ways." | 14:40:31 |
| 18 | THE WITNESS:  Uh-huh. | 14:40:33 |
| 19 | MR. HARVEY:  Same objection. | 14:40:37 |
| 20 | THE WITNESS:  As far as I can recollect | 14:40:37 |
| 21 | now, I think every method fits into those categories | 14:40:40 |
| 22 | we've discussed. | 14:40:45 |
| 23 | BY MR. KIERNAN: | 14:40:49 |
| 24 | Q.   Focusing on the pre-2005 period, did you | 14:40:49 |
| 25 | use the same sources of information to explore job | 14:40:54 |

Page 142

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

| | | |
|---|---|---|
| 1 | opportunities or receive information about job | 14:41:01 |
| 2 | opportunities? | 14:41:04 |
| 3 | A.   Roughly. | 14:41:10 |
| 4 | Q.   What would be different? | 14:41:12 |
| 5 | A.   Specific company sites would be different | 14:41:14 |
| 6 | specific companies, I would assume.  Different | 14:41:18 |
| 7 | e-mail groups.  In Colorado, there is Rocky Mountain | 14:41:23 |
| 8 | Internet User Group.  That is one.  I think in the | 14:41:31 |
| 9 | Bay Area there is one too, I don't know what it's | 14:41:37 |
| 10 | called.  But the same idea again. | 14:41:39 |
| 11 | Q.   Okay.  Now, I want to put aside the jobs. | 14:42:09 |
| 12 | Now, I want to focus on compensation. | 14:42:12 |
| 13 | A.   Okay. | 14:42:14 |
| 14 | Q.   So going back to interrogatory number 7 -- | 14:42:15 |
| 15 | and I want to focus again like we did on January 1, | 14:42:23 |
| 16 | 2005 to the present time period. | 14:42:26 |
| 17 | Describe every source of information you've | 14:42:28 |
| 18 | obtained or received about compensation for jobs in | 14:42:30 |
| 19 | the market. | 14:42:35 |
| 20 | A.   The difference would be for the time period | 14:42:48 |
| 21 | from 2005, it would be that I don't specifically | 14:42:50 |
| 22 | recall information from co-workers. | 14:42:56 |
| 23 | Q.   Okay.  So you received compensation | 14:43:06 |
| 24 | information from cold calls? | 14:43:07 |
| 25 | A.   Spam calls and cold calls, yeah. | 14:43:12 |

Page 143

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
 1      Q.   Spam calls and cold calls.  What other        14:43:23

 2   sources of information did you obtain or receive       14:43:26

 3   compensation information between January 1, 2005 and   14:43:30

 4   the present?                                           14:43:35

 5      A.   Any professional contacts that I don't         14:43:37

 6   recall specific instances -- Internet resources --     14:43:40

 7   job listings often say, "Here is the range you're      14:43:44

 8   looking for."  Of course, usually stated low.          14:43:47

 9           And news sites about salary or                 14:43:54

10   compensation -- may have looked at like Salary.com     14:44:05

11   or Glass Door or whatever -- Ceiling.com.  But         14:44:16

12   briefly, I recall -- I don't know when, but I recall   14:44:35

13   looking at those and kind of thinking this is --       14:44:38

14   like reliable information.  So it wasn't anything I    14:44:50

15   based any decisions on.                                14:44:58

16      Q.   It looks like in your documents you were       14:45:00

17   signed up with Payscale.com.  Do you recall that?      14:45:04

18      A.   Yeah, maybe.                                   14:45:10

19      Q.   You don't recall?                              14:45:11

20      A.   I vaguely recall, if that's the one -- when    14:45:13

21   does it -- in my documents, when did it say I was      14:45:18

22   signed up with them?  Do you remember?                 14:45:21

23      Q.   2007.                                          14:45:23

24      A.   Okay.  I don't remember that.  I did           14:45:27

25   obviously, but I don't remember it though.             14:45:41
```

Page 144

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

| | | |
|---|---|---|
| 1 | Q.   Any other Internet sources that you used | 14:45:49 |
| 2 | between January 1, 2005 and the present to obtain or | 14:45:55 |
| 3 | receive information about compensation? | 14:46:00 |
| 4 | A.   Not that I recall, beyond what's already | 14:46:07 |
| 5 | been indicated. | 14:46:10 |
| 6 | Q.   And you mentioned professional contacts.  I | 14:46:11 |
| 7 | want to make sure I understand what you mean by | 14:46:15 |
| 8 | that.  What do you mean when you use that phrase, | 14:46:18 |
| 9 | "professional contacts" as a source for compensation | 14:46:21 |
| 10 | information? | 14:46:23 |
| 11 | A.   I would usually mean people that I don't | 14:46:24 |
| 12 | presently work with who are friends in the same | 14:46:27 |
| 13 | field maybe.  I honestly don't remember specific | 14:46:35 |
| 14 | instances of that kind of information.  And then | 14:46:41 |
| 15 | maybe information in those user groups, technology | 14:46:46 |
| 16 | user groups. | 14:46:51 |
| 17 | Q.   Having gone through a list of sources, any | 14:47:17 |
| 18 | other list -- any other sources that you have not | 14:47:20 |
| 19 | mentioned that you used between January 1, 2005 and | 14:47:23 |
| 20 | the present to obtain or receive compensation | 14:47:26 |
| 21 | information? | 14:47:29 |
| 22 | MR. HARVEY:  Objection, asked and | 14:47:29 |
| 23 | answered. | 14:47:32 |
| 24 | THE WITNESS:  Not that I can specifically | 14:47:32 |
| 25 | recall. | 14:47:39 |

Page 145

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
 1    BY MR. KIERNAN:                                   14:47:41

 2        Q.   I want to focus on the pre-January 1, 2005   14:47:41

 3    period.  What sources did you use to obtain or    14:47:46

 4    receive compensation information about jobs?      14:47:51

 5        A.   Job listings I had.  I don't know.  Same  14:48:09

 6    things.                                            14:48:11

 7        Q.   Same sources?                             14:48:12

 8        A.   Types of sources.  Same types of sources.  14:48:13

 9        Q.   Between January 1, 2005 and the present,  14:48:18

10    were there certain types of sources that you used  14:48:23

11    more than others to obtain compensation information?  14:48:27

12        A.   I honestly did not spend much time at all  14:48:32

13    gathering compensation information.               14:48:37

14        Q.   Why not?                                  14:48:39

15        A.   I don't know.  I just don't necessarily   14:48:56

16    think it was very reliable or relevant.  Or at the  14:48:59

17    end of the day, it was down to specific jobs and  14:49:15

18    what they said they were willing to pay.          14:49:22

19        Q.   So the sources that you just described that  14:50:00

20    you used to obtain or receive compensation        14:50:03

21    information between January 1, 2005 and the present,  14:50:05

22    you felt were unreliable?                          14:50:16

23        A.   Yes.                                      14:50:22

24        Q.   And that's why you did not use them?     14:50:22

25        A.   I think the actual market, rather than   14:50:30
```

Page 146

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

| | | |
|---|---|---|
| 1 | other than Dashwire? | 16:02:33 |
| 2 | A.   There probably be the one that -- | 16:02:36 |
| 3 | Q.   The web services? | 16:02:38 |
| 4 | A.   The Ratio Interactive -- | 16:02:39 |
| 5 | Q.   Okay. | 16:02:42 |
| 6 | A.   As far as I can recall, there is nobody | 16:03:14 |
| 7 | missing. | 16:03:17 |
| 8 | I wrote at one point a bunch of contract | 16:03:27 |
| 9 | jobs into a bundle with various clients.  There is a | 16:03:30 |
| 10 | list in there. | 16:03:37 |
| 11 | I guess my Word, Inc. startup is not listed | 16:03:47 |
| 12 | there.  It isn't really an employer -- of course | 16:03:50 |
| 13 | neither is Exfoliate. | 16:04:02 |
| 14 | Q.   Okay.  So Ratio Interactive, Dashwire, and | 16:04:14 |
| 15 | Word, Inc. are missing from the list of employers? | 16:04:18 |
| 16 | A.   It would appear so.  Unless I mentioned the | 16:04:21 |
| 17 | Word stuff.  Okay.  Quest is there. | 16:04:29 |
| 18 | Q.   And then if you look at Exhibit 60, your | 16:05:14 |
| 19 | education, it states University of Mexico, bachelor | 16:05:17 |
| 20 | of fine arts, electronic art, sculpture, and | 16:05:21 |
| 21 | photography.  Do you see that? | 16:05:26 |
| 22 | A.   Uh-huh. | 16:05:27 |
| 23 | Q.   That's not accurate, right? | 16:05:32 |
| 24 | A.   That would be correct. | 16:05:36 |
| 25 | Q.   In some older resumes, you include a | 16:05:41 |

Page 172

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
 1    Adobe, applying to a job at Google?                18:06:48

 2        A.   Not specifically, unless -- where was the  18:06:52

 3    e-mail?  I don't recall specifically if I did or   18:07:03

 4    not.                                               18:07:06

 5             MR. KIERNAN:  Handing you what's been     18:07:10

 6    marked as Exhibit 75.                              18:07:14

 7             (Exhibit 75 marked for identification.)   18:07:22

 8    BY MR. KIERNAN:                                     18:07:22

 9        Q.   Do you recognize this as a exchange that   18:07:22

10    you had in January of 2008 with Alison Fortunato?  18:07:26

11        A.   Okay.                                      18:07:38

12        Q.   Do you know who Alison Fortunato is?       18:07:40

13        A.   It would be someone recruiting from        18:07:48

14    Google -- for Google.                              18:07:53

15             MR. KIERNAN:  Let me quickly hand you      18:07:56

16    what's been marked as Exhibit 76.  And keep 75     18:07:58

17    handy.                                             18:08:02

18             (Exhibit 76 marked for identification.)   18:08:02

19             THE WITNESS:  Okay.                        18:08:05

20    BY MR. KIERNAN:                                     18:08:05

21        Q.   Do you recognize this as an e-mail dated   18:08:05

22    February 12, 2008 from you to Alison Fortunato at  18:08:06

23    Google.com?                                        18:08:11

24        A.   Yes.                                       18:08:27

25        Q.   Okay.  You see at the bottom it states     18:08:28
```

Page 231

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

| | | |
|---|---|---|
| 1 | Alison Fortunato, technical sourcer, Google, Inc. | 18:08:30 |
| 2 | Do you see that?  Way at the bottom. | 18:08:37 |
| 3 | A.   Yes. | 18:08:38 |
| 4 | Q.   Does that refresh your recollection that | 18:08:38 |
| 5 | she was a sourcer for Google? | 18:08:40 |
| 6 | A.   Whatever a sourcer is.  I'm assuming it's | 18:08:43 |
| 7 | recruiters. | 18:08:55 |
| 8 | Q.   And here she's informing you that they have | 18:08:59 |
| 9 | decided to pass on your candidacy for the position; | 18:09:01 |
| 10 | is that right? | 18:09:10 |
| 11 | A.   Yes. | 18:09:10 |
| 12 | Q.   Were there any other times that you applied | 18:09:17 |
| 13 | to Google? | 18:09:22 |
| 14 | A.   I e-mailed that one contact I had at Google | 18:09:26 |
| 15 | that we previously spoke about.  And I -- I think I | 18:09:29 |
| 16 | applied in '05 sometime, maybe.  That's as much as I | 18:09:38 |
| 17 | remember. | 18:09:54 |
| 18 | Q.   According to your e-mail, your application | 18:09:54 |
| 19 | was rejected after a technical screening; is that | 18:09:56 |
| 20 | right?  Looking at Exhibit 76. | 18:10:03 |
| 21 | A.   No.  It would -- I'm sorry.  The question | 18:10:21 |
| 22 | was, I was rejected because of a technical | 18:10:22 |
| 23 | screening? | 18:10:25 |
| 24 | Q.   After having a technical screening at | 18:10:26 |
| 25 | Google. | 18:10:29 |

Page  232

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

| | | |
|---|---|---|
| 1 | A.   No.  I was indicating that I did not have a | 18:10:30 |
| 2 | technical screening. | 18:10:34 |
| 3 | Q.   Okay.  So did you have any interviews with | 18:10:36 |
| 4 | Google? | 18:10:40 |
| 5 | A.   I don't think I did. | 18:10:47 |
| 6 | Q.   She says at the bottom, "I really enjoyed | 18:10:49 |
| 7 | our chat, however, at this time, after reviewing the | 18:10:52 |
| 8 | feedback, we feel it's not going to be a perfect | 18:10:55 |
| 9 | match." | 18:11:04 |
| 10 | A.   Uh-huh. | 18:11:04 |
| 11 | Q.   Do you recall having any telephone or | 18:11:04 |
| 12 | in-person interviews with people at Google? | 18:11:09 |
| 13 | A.   No.  I think this was a conversation with | 18:11:14 |
| 14 | Alison, and I don't think it was really technically | 18:11:16 |
| 15 | substantive.  So it was not a technical screening. | 18:11:19 |
| 16 | It was -- I don't remember the substance of it, | 18:11:22 |
| 17 | but -- | 18:11:29 |
| 18 | Q.   I got it.  In your response -- you were | 18:11:29 |
| 19 | asking for a technical screening? | 18:11:32 |
| 20 | A.   Pointing out that, yeah, obviously | 18:11:35 |
| 21 | something about my resume, say perhaps that I was | 18:11:37 |
| 22 | currently working at Adobe, but I don't know -- I | 18:11:41 |
| 23 | don't know why -- something I said to her or my | 18:11:49 |
| 24 | resume.  I don't know. | 18:11:54 |
| 25 | Q.   Looking back at Exhibit 75, if you could -- | 18:11:56 |

Page  233

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

1  STATE OF CALIFORNIA      ) ss:

2  COUNTY OF MARIN          )

3

4      I, ASHLEY SOEVYN, CSR No. 12019, do hereby

5  certify:

6      That the foregoing deposition testimony was

7  taken before me at the time and place therein set

8  forth and at which time the witness was administered

9  the oath;

10     That the testimony of the witness and all

11 objections made by counsel at the time of the

12 examination were recorded stenographically by me,

13 and were thereafter transcribed under my direction

14 and supervision, and that the foregoing pages

15 contain a full, true and accurate record of all

16 proceedings and testimony to the best of my skill

17 and ability.

18     I further certify that I am neither counsel for

19 any party to said action, nor am I related to any

20 party to said action, nor am I in any way interested

21 in the outcome thereof.

       IN THE WITNESS WHEREOF, I have transcribed my

22 name this 31st day of October, 2012.

23

24

25         _____
           ASHLEY SOEVYN, CSR 12019

                                    Page 265