# EXHIBIT 6
# PUBLIC VERSION

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

1              UNITED STATES DISTRICT COURT

2     NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

3

4     --------------------------

5     IN RE: HIGH-TECH EMPLOYEE )

6     ANTITRUST LITIGATION      ) No. 11-CV-2509-LHK

7     --------------------------

8

9

10        HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

11

12

13         VIDEOTAPED DEPOSITION OF DANIEL STOVER

14                San Francisco, California

15                Monday, October 29, 2012

16                       Volume I

17

18

19

20    Reported by:

21    ASHLEY SOEVYN

22    CSR No. 12019

23    JOB No. 1541285

24

25    PAGES 1 - 298

                                              Page 1

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

| | | |
|---|---|---|
| 1 | for the plaintiffs. | 09:22:19 |
| 2 | MS. LEEBOVE:  Lisa Leebove, Joseph Saveri | 09:22:20 |
| 3 | Lawfirm for the plaintiffs. | 09:22:21 |
| 4 | MS. ZENG:  Catherine Zeng from Jones Day on | 09:22:23 |
| 5 | behalf of Adobe. | 09:22:25 |
| 6 | | 09:22:41 |
| 7 | Daniel Stover, | 09:22:41 |
| 8 | the witness, after first having been duly sworn, | 09:22:41 |
| 9 | testified as follows: | 09:22:41 |
| 10 | | 09:22:41 |
| 11 | EXAMINATION | 09:22:41 |
| 12 | BY MR. KIERNAN: | 09:22:41 |
| 13 | Q.   Good morning, Mr. Stover.  Can you state | 09:22:41 |
| 14 | your full name for the record, please. | 09:22:49 |
| 15 | A.   Daniel Douglas Stover. | 09:22:51 |
| 16 | Q.   Okay.  And what is your current address? | 09:22:53 |
| 17 | A.   1440 Northwest 64th Street, Apartment 302, | 09:22:54 |
| 18 | Seattle, Washington. | 09:23:00 |
| 19 | Q.   Okay.  How long have you lived in | 09:23:01 |
| 20 | Seattle? | 09:23:02 |
| 21 | A.   Slightly over two years.  I moved there in | 09:23:04 |
| 22 | September of 2010. | 09:23:10 |
| 23 | Q.   And why did you move to Seattle? | 09:23:14 |
| 24 | A.   My wife recently finished graduate school | 09:23:17 |
| 25 | here as a social worker.  I was changing careers at | 09:23:20 |

Page 11

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

| | | |
|---|---|---|
| 1 | the time, it was slightly less expensive there. | 09:23:27 |
| 2 | Q.   Understood. | 09:23:30 |
| 3 | A.   So I attended a program, getting a degree | 09:23:32 |
| 4 | in fine woodworking.  And now I'm doing cabinet | 09:23:36 |
| 5 | making. | 09:23:39 |
| 6 | Q.   Is that what -- you mentioned switching | 09:23:40 |
| 7 | careers.  Is that what you're solely doing now, is | 09:23:42 |
| 8 | cabinet making? | 09:23:45 |
| 9 | A.   Correct. | 09:23:46 |
| 10 | Q.   Okay. | 09:23:47 |
| 11 | A.   I stay apprised of technology changes and | 09:23:47 |
| 12 | different programming languages as something I could | 09:23:52 |
| 13 | fall back to, but I'm currently not practicing | 09:23:56 |
| 14 | that. | 09:23:56 |
| 15 | Q.   When was the last time you were paid for | 09:24:02 |
| 16 | work related to technology? | 09:24:05 |
| 17 | A.   I would estimate December of 2010, shortly | 09:24:07 |
| 18 | after I moved to Seattle. | 09:24:12 |
| 19 | Q.   And that was when you were working as an | 09:24:13 |
| 20 | independent consultant? | 09:24:15 |
| 21 | A.   Correct. | 09:24:16 |
| 22 | Q.   Was that the work for -- who were you doing | 09:24:18 |
| 23 | the work for? | 09:24:18 |
| 24 | A.   It was for myself.  I was working on a | 09:24:20 |
| 25 | project with Bodybuilding.com.  It's a company in | 09:24:23 |

Page 12

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY



Page 105

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

| | | |
|---|---|---|
| 1 | Q.   You have a LinkedIn profile, correct? | 12:55:04 |
| 2 | A.   I do. | 12:55:07 |
| 3 | Q.   And you keep that fairly up-to-date? | 12:55:07 |
| 4 | A.   Relatively. | 12:55:10 |
| 5 | Q.   In fact, you just updated to include your | 12:55:10 |
| 6 | education at the Center for Wood Construction, | 12:55:16 |
| 7 | right? | 12:55:18 |
| 8 | A.   Slightly four months ago, something like | 12:55:18 |
| 9 | that. | 12:55:21 |
| 10 | Q.   So "yes" is the answer? | 12:55:22 |
| 11 | A.   Yes. | 12:55:23 |
| 12 | Q.   And on your LinkedIn account, you have when | 12:55:24 |
| 13 | you stated into it, correct? | 12:55:28 |
| 14 | A.   I believe so. | 12:55:29 |
| 15 | Q.   And there you have July of 2006? | 12:55:33 |
| 16 | MS. LEEBOVE:  Is that a question? | 12:55:35 |
| 17 | MR. KIERNAN:  Isn't that right? | 12:55:38 |
| 18 | THE WITNESS:  I honestly don't know. | 12:55:41 |
| 19 | BY MR. KIERNAN: | 12:55:44 |
| 20 | Q.   I'll represent to you that's what you wrote | 12:55:44 |
| 21 | on the Internet, is that you worked there in July of | 12:55:46 |
| 22 | 2006. | 12:55:51 |
| 23 | A.   Uh-huh. | 12:55:53 |

Page 106

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY



Page 107



Page 108



Page 113

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

| | | |
|---|---|---|
| 1 | testimony, mischaracterizes prior testimony as | 13:04:53 |
| 2 | well. | 13:04:55 |
| 3 | THE WITNESS:  It would be another example | 13:04:56 |
| 4 | of where I was not careful about the dates I was | 13:04:57 |
| 5 | using. | 13:05:00 |
| 6 | BY MR. KIERNAN: | 13:05:00 |
| 7 | Q.   But you were careful in LinkedIn, right? | 13:05:00 |
| 8 | MS. LEEBOVE:  Objection, vague. | 13:05:04 |
| 9 | THE WITNESS:  I can't guarantee everything | 13:05:08 |
| 10 | here is exactly right, but it appears I was more | 13:05:10 |
| 11 | careful. | 13:05:25 |
| 12 | BY MR. KIERNAN: | 13:05:26 |
| 13 | Q.   And what I'd like you to do, Mr. Stover, is | 13:05:26 |
| 14 | look at 92 and 93 side by side, okay?  The resume | 13:05:28 |
| 15 | that you recently sent out for Fulwiler James is | 13:05:35 |
| 16 | dated October 2004 - September 2005, do you see | 13:05:40 |
| 17 | that? | 13:05:44 |
| 18 | A.   Yes. | 13:05:45 |
| 19 | Q.   All right.  And then in your LinkedIn | 13:05:46 |
| 20 | profile, which is Exhibit 93, you've written | 13:05:49 |
| 21 | November 2005 through June 2006, do you see that? | 13:05:56 |
| 22 | A.   Yes. | 13:06:01 |
| 23 | Q.   Which months did you work for Fulwiler | 13:06:03 |
| 24 | James? | 13:06:05 |
| 25 | A.   I don't recall. | 13:06:07 |

Page 114

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

| | | |
|---|---|---|
| 1 | A.    It looks like -- | 14:13:16 |
| 2 | Q.    I'm sorry, let me strike that.  Let me ask | 14:13:18 |
| 3 | it a different way. | 14:13:20 |
| 4 | What months -- what month and year did you | 14:13:21 |
| 5 | work -- start at Intuit and then end at Intuit? | 14:13:24 |
| 6 | A.    So I started in approximately November 2006 | 14:13:29 |
| 7 | as a full-time employee.  Could be off a month or | 14:13:33 |
| 8 | two, but -- and then I'm pretty confident that I | 14:13:38 |
| 9 | ended in December 2009. | 14:13:44 |
| 10 | Q.    After you left Intuit, you worked as an | 14:13:54 |
| 11 | independent consultant; is that correct? | 14:13:57 |
| 12 | A.    Correct. | 14:13:59 |
| 13 | Q.    All right.  And I think we discussed this | 14:13:59 |
| 14 | morning you worked as an independent consultant from | 14:14:01 |
| 15 | approximately December 2009 -- actually, this | 14:14:05 |
| 16 | morning you said January 2010 through approximately | 14:14:08 |
| 17 | December 2010.  But you -- | 14:14:12 |
| 18 | A.    Okay. | 14:14:13 |
| 19 | Q.    Okay.  I want to know what years you think | 14:14:13 |
| 20 | you worked there -- you worked as an independent | 14:14:15 |
| 21 | consultant? | 14:14:15 |
| 22 | A.    What years? | 14:14:17 |
| 23 | Q.    When you worked as an independent | 14:14:18 |
| 24 | consultant. | 14:14:18 |
| 25 | A.    So, I started shortly after leaving Intuit, | 14:14:19 |

Page 146

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
 1    your own."                                      15:04:26

 2          And then you responded, "Plaintiff used the  15:04:28

 3    following sources of information regarding jobs or  15:04:31

 4    compensation other than his own:  Cold calls     15:04:33

 5    received, co-workers, professional contacts, and  15:04:36

 6    Internet researches" -- "resources such as        15:04:41

 7    LinkedIn."                                        15:04:45

 8          Is your response to interrogatory number 7  15:04:47

 9    complete?                                         15:04:49

10       A.   As far as I recall, yes.                 15:05:00

11       Q.   And which of these resources did you use to  15:05:04

12    look for job opportunities or keep abreast of job  15:05:08

13    opportunities?                                    15:05:12

14       A.   Yeah, I think I definitely qualified as  15:05:15

15    staying abreast of job opportunities, so I liked  15:05:17

16    LinkedIn and great kind of interactions there.  I've  15:05:21

17    already spoken about kind of an informal processes  15:05:28

18    that a co-worker can go through.  So cold calls   15:05:32

19    received.  I guess that would include both, you   15:05:38

20    know, e-mails I received from recruiters, whether  15:05:43

21    they are internal or external to a company or actual  15:05:47

22    phone calls which are less common.  And professional  15:05:50

23    contacts I think I already covered.  Discussed the  15:05:58

24    fact that, you know, you work with consultants all  15:06:01

25    the time, which is an exposure to companies outside  15:06:03
```

Page 176

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

| | | |
|---|---|---|
| 1 | you. | 15:06:10 |
| 2 | Q.   While you were employed at Intuit -- excuse | 15:06:11 |
| 3 | me, did you use the sources that you just identified | 15:06:17 |
| 4 | to keep a breast of job opportunities? | 15:06:22 |
| 5 | A.   I did. | 15:06:27 |
| 6 | Q.   All right.  And on the Internet resources | 15:06:29 |
| 7 | you mentioned LinkedIn.  So while you were employed | 15:06:31 |
| 8 | at Intuit, you had a LinkedIn profile? | 15:06:37 |
| 9 | A.   Yes, at some point I would have created | 15:06:40 |
| 10 | one. | 15:06:42 |
| 11 | Q.   And you used LinkedIn to stay abreast of | 15:06:43 |
| 12 | job opportunities, while you were employed at | 15:06:47 |
| 13 | Intuit? | 15:06:49 |
| 14 | MS. LEEBOVE:  Objection, misstates prior | 15:06:53 |
| 15 | testimony. | 15:06:55 |
| 16 | THE WITNESS:  Yes. | 15:06:56 |
| 17 | BY MR. KIERNAN: | 15:06:57 |
| 18 | Q.   And any other Internet resources, like job | 15:06:57 |
| 19 | boards, for example, Monster.com? | 15:07:01 |
| 20 | A.   I'm sure I've looked at various job boards, | 15:07:05 |
| 21 | but I don't recall any specific sites. | 15:07:10 |
| 22 | Q.   Do you recall ever visiting Monster.com? | 15:07:17 |
| 23 | A.   While I was at Intuit, I don't recall | 15:07:22 |
| 24 | visiting it.  I may have.  I know at some point | 15:07:24 |
| 25 | early in my career, you know, I had an account | 15:07:28 |

Page 177

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
1   there.  But I don't specifically remember using        15:07:30

2   that while I was at Intuit.                            15:07:34

3       Q.   What about any other Internet resources,      15:07:46

4   other than LinkedIn that you used while you were       15:07:53

5   employed at Intuit?                                    15:07:55

6       A.   Again, I'm sure there were a bunch.  I        15:08:00

7   guess you could say Craigslist, maybe, although I      15:08:02

8   can't recall specifically if I used that.  You know,   15:08:09

9   LinkedIn was most definitely the main resource that    15:08:11

10  I used and the one that I remember.                    15:08:14

11      Q.   Facebook?  Did you use that to stay abreast    15:08:19

12  of job opportunities?                                  15:08:22

13      A.   No.                                           15:08:24

14      Q.   Dice.com?                                      15:08:26

15      A.   Not that I recall.                            15:08:28

16      Q.   Have you ever used Dice.com?                   15:08:31

17      A.   I can't recall if I have or have not.         15:08:34

18      Q.   Have you ever used Hotjobs?                    15:08:39

19      A.   I don't recall.                               15:08:40

20      Q.   Have you ever used Yahoo jobs?                 15:08:41

21      A.   I don't recall.                               15:08:43

22      Q.   Any industry specific sites -- websites?      15:08:51

23      A.   I don't know how -- why they used LinkedIn    15:09:00

24  is, I mean it seems to be somewhat industry specific   15:09:03

25  to me.  I could be wrong about that.  But nothing      15:09:09
```

Page 178

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

| | | |
|---|---|---|
| 1 | MS. LEEBOVE:  Objection, calls for a legal | 15:40:53 |
| 2 | conclusion. | 15:40:54 |
| 3 | MR. KIERNAN:  I have to know, which legal | 15:40:54 |
| 4 | conclusion, e-mail? | 15:40:57 |
| 5 | MS. LEEBOVE:  You're using the word "cold | 15:40:58 |
| 6 | call," and I'll continue to object to it.  And like | 15:41:02 |
| 7 | you said, my objections don't matter to you so go | 15:41:06 |
| 8 | ahead. | 15:41:06 |
| 9 | MR. KIERNAN:  Okay. Go ahead, Mr. Stover. | 15:41:07 |
| 10 | THE WITNESS:  I have no specific | 15:41:08 |
| 11 | recollection of receiving any recruiting efforts | 15:41:09 |
| 12 | while at Intuit. | 15:41:15 |
| 13 | BY MR. KIERNAN: | 15:41:20 |
| 14 | Q.   As you sit here today, the approximate 40 | 15:41:21 |
| 15 | calls that you received, you don't know what | 15:41:24 |
| 16 | percentage were phone calls versus e-mails or | 15:41:28 |
| 17 | in-mail through LinkedIn; is that accurate? | 15:41:33 |
| 18 | A.   In terms of proportion, I mean, only five | 15:41:36 |
| 19 | percent maybe were phone calls.  As I said, it's | 15:41:41 |
| 20 | kind of a memorable thing to see. | 15:41:45 |
| 21 | Q.   With respect to the phone calls, did you | 15:41:50 |
| 22 | make any efforts to screen the calls so you didn't | 15:41:54 |
| 23 | have to pick it up and -- | 15:41:57 |
| 24 | A.   No desire at all to talk to him. | 15:41:58 |
| 25 | Q.   Why is that? | 15:42:03 |

Page 201

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
1        A.    I mean, it's not really a method that --      15:42:03

2   you know, it probably indicates kind of a lack of,       15:42:05

3   you know, respect and kind of an unprofessional way      15:42:09

4   to go about finding someone.                             15:42:15

5        Q.    The cold phone call?                          15:42:16

6        A.    I mean, particularly, in Silicon Valley now   15:42:19

7   that you have sites like LinkedIn, yeah.  It doesn't     15:42:21

8   really show a lot of effort in terms of myself, it's     15:42:24

9   just kind of a random screening.                         15:42:29

10       Q.    Do you recall ever having a conversation,     15:42:32

11  you know, that was -- that was part of a cold call       15:42:35

12  by telephone?                                            15:42:38

13       A.    I --                                          15:42:39

14       MS. LEEBOVE:  Objection, calls for a legal          15:42:39

15  conclusion, vague and ambiguous.                         15:42:42

16       THE WITNESS:  I don't recall having a               15:42:45

17  specific conversation.  I remember listening to          15:42:47

18  e-mails, but I probably -- or not e-mails, voice         15:42:49

19  mails, but I don't have any specific examples.           15:42:50

20       MR. KIERNAN:  Oh, excuse me.  Am I still            15:43:10

21  connected?                                               15:43:11

22       THE VIDEOGRAPHER:  Yeah.                            15:43:15

23       MR. KIERNAN:  Sorry about that.                     15:43:15

24  BY MR. KIERNAN:                                          15:43:16

25       Q.    What was your feeling about the e-mails       15:43:16
```

Page 202

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
 1    that you received in LinkedIn or e-mails?  In other     15:43:21

 2    words, did you take those more seriously or --          15:43:26

 3         A.   I would -- I would scan them.  90 percent     15:43:34

 4    or thereabouts were from organizations I wasn't very    15:43:37

 5    interested in or random recruiters.  So                 15:43:44

 6    occasionally, there may be one from a particular        15:43:49

 7    company that would pop up for me and peak my            15:43:51

 8    interest, but I wasn't really actively looking for      15:43:59

 9    another position while I was working at Intuit, so      15:44:01

10    those ones that did peak my interest I would note       15:44:04

11    and probably write them back thanking them.             15:44:08

12         Q.   As you sit here today, do you recall any      15:44:17

13    that peaked your interest, while you were employed      15:44:19

14    at Intuit?                                              15:44:19

15         A.   I don't have any specific recollection.       15:44:23

16         Q.   And -- but you think about 90 percent were    15:44:34

17    from companies that you weren't interested in, which   15:44:42

18    would leave about 10 percent of companies that you      15:44:46

19    may be interested in?                                   15:44:50

20         A.   As an estimate.                               15:44:52

21         Q.   Do you recall any of the companies that       15:44:59

22    would fall into the ten percent ones that you would    15:45:03

23    be interested in pursuing a job opportunity?            15:45:06

24         A.   While I was working at Intuit, I would be     15:45:11

25    guessing at this point.                                 15:45:22
```

Page 203

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
 1        A.   I do not.                              15:51:29

 2        Q.   In your experience, is it common for a call  15:51:34

 3   not to include specific numbers with respect to  15:51:37

 4   compensation?                                    15:51:41

 5             MS. LEEBOVE:  Objection, vague.        15:51:43

 6             THE WITNESS:  In terms of my definition of  15:51:47

 7   what a cold call is --                           15:51:50

 8             MR. KIERNAN:  Uh-huh.                   15:51:54

 9             THE WITNESS:  -- I would say initial    15:51:54

10   contact that would be unusual.                    15:51:57

11   BY MR. KIERNAN:                                   15:51:59

12        Q.   In your experience, when is compensation  15:51:59

13   typically -- when is that typically broached in the  15:52:01

14   process for exploring job opportunities?         15:52:06

15             MS. LEEBOVE:  Objection, vague.        15:52:10

16             THE WITNESS:  I can say for myself that it  15:52:12

17   would happen, you know, at the point it's pretty  15:52:14

18   clear the job is going to be offered.            15:52:17

19   BY MR. KIERNAN:                                   15:52:20

20        Q.   So sometime after the interview process?  15:52:20

21             MS. LEEBOVE:  Objection, misstates     15:52:24

22   testimony.                                        15:52:24

23             THE WITNESS:  I mean, it's a hard one to  15:52:38

24   answer.  Interview process, depending on where   15:52:39

25   you're working, may be talking with a person for 15  15:52:42
```

Page 208

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

| | | |
|---|---|---|
| 1 | or to look at as a reference point in determining | 16:30:04 |
| 2 | what you should be paid at Intuit? | 16:30:08 |
| 3 | A.   At times, yes. | 16:30:14 |
| 4 | Q.   At times? | 16:30:15 |
| 5 | A.   Yes. | 16:30:16 |
| 6 | Q.   How often? | 16:30:16 |
| 7 | A.   I really could not say. | 16:30:23 |
| 8 | Q.   Throughout your employment at Intuit? | 16:30:27 |
| 9 | A.   I can't say when I started looking, but | 16:30:30 |
| 10 | yeah.  Sometimes I might look once a month, | 16:30:33 |
| 11 | sometimes I might look once a year. | 16:30:36 |
| 12 | Q.   How many times while you were employed at | 16:30:38 |
| 13 | Intuit did you try to negotiate a higher | 16:30:40 |
| 14 | compensation? | 16:30:43 |
| 15 | A.   Once -- once. | 16:30:44 |
| 16 | Q.   Once.  The time that we've been talking | 16:30:47 |
| 17 | about with Ravi? | 16:30:49 |
| 18 | A.   Five -- four or five-month period. | 16:30:51 |
| 19 | Q.   Before you quit in December of 2009? | 16:30:58 |
| 20 | A.   Correct. | 16:31:03 |
| 21 | Q.   Okay.  You mentioned rates within Intuit | 16:31:04 |
| 22 | that contractors charge.  What contractors did you | 16:31:12 |
| 23 | use as a reference point? | 16:31:20 |
| 24 | A.   There is one specific example I can give | 16:31:40 |

Page 220

| | | |
|---|---|---|
| 1 | that would be in terms of a skill set, I'm quite | 16:58:40 |
| 2 | confident there are particular roles there that I | 16:58:46 |
| 3 | could have filled competently. | 16:58:49 |
| 4 | Q.   What I'm trying to figure out, Mr. Stover, | 16:58:51 |
| 5 | is if you were only qualified to work at Intuit | 16:58:53 |
| 6 | because of their particular needs, or if you were | 16:58:56 |
| 7 | qualified to work at other companies and what types | 16:59:02 |
| 8 | of companies.  I'm not trying to trick you, sir.  If | 16:59:04 |
| 9 | you think you're not qualified, that's -- I'm happy | 16:59:08 |
| 10 | with that testimony too. | 16:59:10 |
| 11 | A.   The one caveat I'm looking at is, you know, | 16:59:11 |
| 12 | I don't have a degree, right, so some companies will | 16:59:15 |
| 13 | filter me out based on that.  But beyond that, if | 16:59:19 |
| 14 | there was a company like a culture like Intuit to | 16:59:26 |
| 15 | where that's not critical and they're more | 16:59:30 |
| 16 | interested in the work you're doing, I'm pretty | 16:59:31 |
| 17 | confident I could work a lot of different places. | 16:59:34 |
| 18 | Q.   Do you know of any other companies that | 16:59:41 |
| 19 | have what you referred to as large scale e-commerce | 16:59:42 |
| 20 | sites? | 16:59:47 |
| 21 | A.   I mentioned Adobe.  I think looking at the | 16:59:48 |
| 22 | consulting positions I had after I left would be | 16:59:54 |
| 23 | useful to kind of -- | 17:00:01 |
| 24 | Q.   So Kodak? | 17:00:02 |
| 25 | A.   Kodak, ATG.  I think I'm going to -- I'll | 17:00:03 |

Page 238

| | | |
|---|---|---|
| 1 | narrow this down specifically, and I'll say people | 17:00:20 |
| 2 | who are using ATG because that is what I specialize | 17:00:23 |
| 3 | in as a consultant. | 17:00:32 |
| 4 | Q.   And is it fair, Mr. Stover, that you were | 17:00:51 |
| 5 | not limited to any particular type of industry with | 17:00:52 |
| 6 | respect to what you were qualified to work on? | 17:00:55 |
| 7 | A.   I could not completely qualify that.  I can | 17:01:12 |
| 8 | say that whether you're selling software, or you | 17:01:16 |
| 9 | know, some kind of product catalog, I mean, I am | 17:01:24 |
| 10 | quite sure there are industries that I would not be | 17:01:27 |
| 11 | qualified to work in. | 17:01:30 |
| 12 | Q.   But if it's a company that uses an | 17:01:34 |
| 13 | e-commerce site, particularly ATG, you would have | 17:01:40 |
| 14 | been qualified to work on the web applications? | 17:01:44 |
| 15 | A.   Again, I prefer to qualify that as a web | 17:01:48 |
| 16 | developer. | 17:01:53 |
| 17 | Q.   As a web developer. | 17:01:53 |
| 18 | A.   Yeah. | 17:01:57 |
| 19 | Q.   But you were only able to name three such | 17:01:57 |
| 20 | companies, correct? | 17:02:00 |
| 21 | MS. LEEBOVE:  Objection, misstates prior | 17:02:01 |
| 22 | testimony. | 17:02:02 |
| 23 | BY MR. KIERNAN: | 17:02:02 |
| 24 | Q.   Well, you can add to it.  I just want to | 17:02:02 |
| 25 | make sure.  You mentioned Adobe, Kodak Gallery, ATG, | 17:02:04 |

Page 239

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

| | | |
|---|---|---|
| 1 | you were working at Intuit, given your | 17:03:05 |
| 2 | qualifications and skill set? | 17:03:15 |
| 3 | A.   I would say relatively broad. | 17:03:16 |
| 4 | Q.   And was it limited to Silicon Valley, | 17:03:18 |
| 5 | California? | 17:03:23 |
| 6 | MS. LEEBOVE:  Objection, vague. | 17:03:23 |
| 7 | THE WITNESS:  I'm sure that it was not. | 17:03:31 |
| 8 | BY MR. KIERNAN: | 17:03:36 |
| 9 | Q.   You think your skill qualifications were | 17:03:36 |
| 10 | portable to companies on the east coast?  Is that | 17:03:39 |
| 11 | your testimony? | 17:03:42 |
| 12 | MS. LEEBOVE:  Objection, misstates his | 17:03:42 |
| 13 | testimony. | 17:03:44 |
| 14 | THE WITNESS:  I'm sure there are companies, | 17:03:45 |
| 15 | yes. | 17:03:47 |
| 16 | BY MR. KIERNAN: | 17:03:48 |
| 17 | Q.   Did you have any restrictions with respect | 17:03:48 |
| 18 | to where you would work geographically? | 17:03:51 |
| 19 | A.   Beyond personal choice, no.  Well, can I | 17:04:01 |
| 20 | qualify that? | 17:04:12 |
| 21 | Q.   You can.  Please. | 17:04:13 |
| 22 | A.   You said "geographically."  That kind of | 17:04:19 |
| 23 | encompasses the whole world, right? | 17:04:22 |
| 24 | Q.   Yeah. | 17:04:23 |
| 25 | A.   So I probably would not get a Visa to work | 17:04:23 |

Page 241

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

1    State OF CALIFORNIA     ) ss:

2    COUNTY OF MARIN         )

3

4        I, ASHLEY SOEVYN, CSR No. 12019, do hereby

5    certify:

6        That the foregoing deposition testimony was

7    taken before me at the time and place therein set

8    forth and at which time the witness was administered

9    the oath;

10       That the testimony of the witness and all

11   objections made by counsel at the time of the

12   examination were recorded stenographically by me,

13   and were thereafter transcribed under my direction

14   and supervision, and that the foregoing pages

15   contain a full, true and accurate record of all

16   proceedings and testimony to the best of my skill

17   and ability.

18       I further certify that I am neither counsel for

19   any party to said action, nor am I related to any

20   party to said action, nor am I in any way interested

     in the outcome thereof.

21       IN THE WITNESS WHEREOF, I have transcribed my

22   name this 2nd day of November, 2012.

23

24

                         ASHLEY SOEVYN, CSR 12019

25

                                              Page 298