# EXHIBIT K-1
# PUBLIC VERSION
(Motion to Strike, Pages 19-20)


| | |
|---|---|
| 1 | BINGHAM MCCUTCHEN LLP |
| | DONN P. PICKETT (SBN 72257) |
| 2 | FRANK M. HINMAN (SBN 157402) |
| | SUJAL J. SHAH (SBN 215230) |
| 3 | SUSAN J. WELCH (SBN 232620) |
| | FRANK BUSCH (SBN 258288) |
| 4 | Three Embarcadero Center |
| | San Francisco, California  94111-4067 |
| 5 | Telephone:  415.393.2000 |
| | Facsimile:  415.393.2286 |
| 6 | donn.pickett@bingham.com |
| | frank.hinman@bingham.com |
| 7 | sujal.shah@bingham.com |
| | susan.welch@bingham.com |
| 8 | frank.busch@bingham.com |
| 9 | Attorneys for Defendant INTEL CORPORATION |
| 10 | |
| 11 | ROBERT T. HASLAM (S.B. #71134) |
| | rhaslam@cov.com |
| 12 | EMILY JOHNSON HENN (S.B. #269482) |
| | ehenn@cov.com |
| 13 | COVINGTON & BURLING LLP |
| | 333 Twin Dolphin Dr., Suite 700 |
| 14 | Redwood Shores, CA  94065 |
| | Telephone:  (650) 632-4700 |
| 15 | Facsimile:  (650) 632-4800 |
| 16 | Attorneys for Defendant PIXAR |

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| IN RE HIGH-TECH EMPLOYEE ANTITRUST LITIGATION<br><br>THIS DOCUMENT RELATES TO:<br><br>ALL ACTIONS. | No. Master Docket No. 11-CV-2509LHK<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION TO STRIKE THE REPORT OF DR. EDWARD E. LEAMER**<br><br>Date:        January 17, 2013<br>Time:       1:30 p.m.<br>Courtroom: 8, 4th Floor<br>Judge:      The Honorable Lucy H. Koh |

1   First, Figures 15-17 are biased in Leamer's favor but still do not support his conclusion.
2   In all three charts, Leamer has averaged all employees within each job title depicted; they do not
3   show actual compensation for anyone. *Id.* 248:22-249:2. This reliance on averages is
4   inappropriate to begin with, because it obscures the key question Leamer identifies of whether
5   "all or nearly all" class members' compensation "moves together over time." *See GPU*, 253
6   F.R.D. at 494 ("Averaging masks the differences and by definition glides over what may be
7   important differences."); *Reed v. Advocate Health Care*, 268 F.R.D. 573, 591 (N.D. Ill. 2009)
8   (expert's reliance on averages was a "fundamental flaw" because variations in pay are central to
9   class certification analysis).[15]

Even so, Leamer's charts still show many examples where the compensation of entire groups of employees (by title) moves in different directions or moves in the same direction but at very different rates, such that the lines cross. This is the *opposite* of his claim that compensation "moves together" and the charts show "smooth movement over time." ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Many other job titles' average compensation lines were also crossing, and certainly not "moving together."[16]

---

[15] Leamer *never* shows the range of pay *within* any job title. Murphy's exhibits show that compensation within job title varies significantly from Leamer's averaged regression results. Murphy Exs. 15A-B, Murphy App'x 7A-D.

[16] ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

Despite these obviously disparate movements over time, Leamer swore "these things behave in … what I would consider a very parallel fashion." *Id.* 267:15-268:6. Similarly, he claimed Figures 15-17 "illustrat[e]" his opinion that the results of his year-by-year regressions "did not vary substantially over time," a necessary predicate for his opinion that "the compensation structures were relatively stable over time." Report ¶ 130; Leamer 235:21-236:2, 245:24-246:9. He admitted, however, that conclusion was his "judgment call" based on "eyeball[ing]" but not testing the results, and that he didn't actually "look at" all the data "carefully" "to evaluate" whether the results did, in fact, "vary substantially." Leamer 219:1-24, 220:20-221:10, 221:20-222:1, 225:2-13. He also admitted that two econometricians "eyeballing a graph, such as this, [could] come to a different conclusion as to the smoothness of the movement over time." *Id.* 292:17-21. Leamer's subjective judgments about the charts he chose to display, which were "not carefully" reached, are untested, untestable, and have an admittedly high "error rate" because two experts could simply disagree about how the charts look. *See Daubert II*, 43 F.3d at 1319 (opinion inadmissible when based on personal opinion, not science);