Exhibit 22

Public Version

1  KEKER & VAN NEST LLP
   JOHN W. KEKER - # 49092
2  jkeker@kvn.com
   DANIEL PURCELL - # 191424
3  dpurcell@kvn.com
   EUGENE M. PAIGE - # 202849
4  epaige@kvn.com

5  633 Battery Street
   San Francisco, CA 94111-1809
6  Telephone:    415 391 5400
   Facsimile:    415 397 7188

7
   Attorneys for Defendant
8  LUCASFILM LTD.

9
                    UNITED STATES DISTRICT COURT
10
                  NORTHERN DISTRICT OF CALIFORNIA
11
                        SAN JOSE DIVISION
12

13 | IN RE: HIGH-TECH EMPLOYEE            | Case No. 3:11-cv-2509-LHK
   | ANTITRUST LITIGATION                 |
14 |                                      | **DECLARATION OF MICHELLE**
   |                                      | **MAUPIN IN SUPPORT OF**
15 | THIS DOCUMENT RELATES TO:            | **DEFENDANTS' OPPOSITION TO**
   |                                      | **PLAINTIFFS' MOTION FOR CLASS**
   | ALL ACTIONS                          | **CERTIFICATION**
16 |                                      |

17                                         Date:      January 17, 2013
                                           Time:      1:30 p.m.
18                                         Courtroom: 8, 4th Floor
                                           Judge:     Hon. Lucy H. Koh
19
                                           Date Consol. Amended Compl. Filed:
20                                              Sept. 13, 2011

21                                         Trial Date: Nov. 12, 2013

22

23

24

25

26

27

28

---

DECLARATION OF MICHELLE MAUPIN IN SUPPORT OF DEFENDANTS' OPPOSITION TO
PLAINTIFFS' MOTION FOR CLASS CERTIFICATION
Case No. 3:11-cv-2509-LHK

I, Michelle Maupin, state and declare as follows:

1.     I am the Senior Manager, Compensation at Lucasfilm Ltd. (hereafter "Lucasfilm" or "the company"), one of the defendants in the above-captioned action.  I make this declaration in support of Defendants' Opposition to Plaintiffs' Motion for Class Certification.  Except where expressly stated, I have knowledge of the facts set forth herein, and if called to testify as a witness thereto, could do so competently under oath.  Except where expressly stated, the statements in this declaration relate only to Lucasfilm's salaried, non-union employees in the United States.

2.     I have been informed that the plaintiffs in this case seek to represent a class of plaintiffs that includes salaried United States employees at Lucasfilm from January 2005 through December 2009 (the "Class Period"), as well as an alternative class that includes technical, creative, and/or research and development employees at Lucasfilm during the Class Period.

3.     I have worked at Lucasfilm since April 2006.  In my position as Lucasfilm's Senior Manager, Compensation, I have become and am familiar with Lucasfilm's compensation policies, practices, and procedures.  I am an advisor to Lucasfilm's Compensation Committee, which sets all compensation policies, budgets, and ranges for Lucasfilm,[1] and I administer the compensation process.

**A.     Lucasfilm's dispersed corporate structure and diverse workforce**

4.     Lucasfilm employs a highly dispersed workforce with a diverse set of specialties and skills, as the company makes a wide variety of products and serves several distinct industries.

5.     The company is divided into five separate divisions, each of which creates distinct products and serves a distinct market:

i)     Lucasfilm ("LFL"), which produces live-action feature films and television programs;

ii)     Industrial Light & Magic, which provides photo-realistic visual effects for live-action films and television programs;

---

[1] Certain compensation policies and budgets are subject to final approval by the President and Board of Directors Compensation Committee.

DECLARATION OF MICHELLE MAUPIN IN SUPPORT OF DEFENDANTS' OPPOSITION TO
PLAINTIFFS' MOTION FOR CLASS CERTIFICATION
Case No. 3:11-cv-2509-LHK

iii)    Skywalker Sound, which provides sound engineering and sound effects;

iv)    LucasArts, which develops and publishes video games; and

v)    Lucasfilm Animation, which produces animated television programming.

6.    I have been informed that the other defendants in this case, apart from Lucasfilm, are Adobe Systems, Inc., Apple Inc., Google Inc., Intel Corp., Intuit Inc., and Pixar. I am generally familiar with the business of the other defendants. To my knowledge, until recently, none of the other defendants named in this case produces significant products in a market served by any Lucasfilm division. To my knowledge, no other defendant named in this case produces live-action feature films, live action television, live-action visual effects, sound engineering and effects, video games, or animated television programming. I understand that Lucasfilm does not consider any of the other defendants to be its competitors in terms of the products Lucasfilm produces. Although Pixar does produce animated feature films, I understand that Lucasfilm considers animated feature films to be a different class of product from animated television programming, distinct both in terms of content and the skills required to produce that content.[2] I understand that Lucasfilm has historically considered Pixar to be a partner, both by virtue of Lucasfilm's reliance on Pixar's RenderMan digital effects software in its visual effects work and the work of Skywalker Sound, Lucasfilm's sound engineering division, on Pixar's animated features.[3]

---

[2] I have been informed that Lucasfilm has provided animation for two full-length animated features. Lucasfilm Animation created The Clone Wars, which was released in 2008. The Clone Wars is a full-length animated feature, but is in the two-dimensional television animation style of Lucasfilm Animation's popular television show of the same name, and is not similar in style to the three-dimensional full-length features that Pixar produces. Additionally, Industrial Light and Magic provided the visual effects animation for Rango, an animated feature in a three-dimensional style that was released by Paramount Pictures and Nickelodeon Movies in 2011.

[3] I have been informed that the RenderMan software was developed by what is now Pixar at a time when Pixar was still a Lucasfilm division. When Pixar spun off from Lucasfilm and became an independent company, it took RenderMan with it, and Pixar now owns the software. Pixar sells the RenderMan software and uses it to create visual effects for animated features, while Lucasfilm's Industrial Light and Magic division uses RenderMan to create visual effects for live-action features. Unlike Pixar, Lucasfilm does not make its visual effects technology commercially available. Instead, Lucasfilm uses its visual effects technology to create visual effects for live-action productions.

2

7.     Although Lucasfilm occasionally uses common job titles across divisions, the nature of the work performed and the skills used for a particular job title at one division may vary significantly from the work performed and skills used for the same job title at another division.

**B.     Lucasfilm's compensation philosophy**

8.     Lucasfilm is a privately-owned company and provides no equity compensation to employees. For most United States salaried employees at Lucasfilm, the elements of cash compensation are base salary and, potentially though not always, an annual bonus.

9.     Lucasfilm has always competed for employees based more on the prestige associated with our brand, products (most obviously including the successful and world-famous *Star Wars* and *Indiana Jones* franchises), and work (which has been recognized with numerous Academy Awards, among other prizes), rather than entirely on salary and compensation. This is partly a consequence of the fact that Lucasfilm is a private company, rather than publicly held, and partly because Lucasfilm is smaller in size, and thus has fewer financial resources, than our competitors. Many of the other production studios, visual effects houses, and video-game developers and publishers with whom we compete for talent are larger (often significantly) than Lucasfilm or are affiliated with a larger corporate parent. Because of constraints imposed by these market factors, we use the approach of hiring entry-level talent where possible. Lucasfilm understands that those employees who are more interested in higher compensation may at some point choose to leave Lucasfilm for higher-paying positions elsewhere. Lucasfilm is willing to accept such turnover, as the company has never had trouble attracting top-notch employees eager to work at Lucasfilm. As a result of all these factors, Lucasfilm has generally paid its employees below market rates for total compensation (i.e. base compensation, bonuses, and long-term incentives such as equity compensation). Lucasfilm's total compensation was below market before the DOJ investigation that gave rise to this lawsuit, and Lucasfilm has continued to pay below market rates for total compensation after the DOJ investigation.

10.     Lucasfilm determines its compensation levels primarily by analyzing the salaries paid for comparable positions in the external market. Although Lucasfilm looks to comparable

3

external positions as a reference when setting compensation, ███████████████████
████████████████████████████████████████████████████
Rather, we use external compensation data as a benchmark from which we set salaries, with the
understanding that ████████████████████████████████████████████
██████████

11.      Because Lucasfilm's different divisions each serve different specific industries, compensation within each Lucasfilm division is determined by analyzing the compensation data particular to the peer companies in that market who are competitors for potential employees. Because each Lucasfilm division competes in different product and labor markets, each division has its own collection of peer companies which are used to help determine compensation for that division. Accordingly, compensation for a particular job title is not necessarily equalized across Lucasfilm divisions; a job title that may be paid at one rate in one industry (*e.g.,* the video-game development and publishing industry served by LucasArts) may be paid at a different (higher or lower) rate than another industry (*e.g.,* the sound-engineering and –effects industry served by Skywalker Sound).

### 1.      Use of survey data by the various Lucasfilm divisions

12.      The various Lucasfilm divisions rely primarily on data from market surveys to set their compensation levels. Market survey data is the only formal research that Lucasfilm uses regarding competitors' compensation.

13.      Lucasfilm uses specific surveys for specific jobs. The relevance of a particular market survey differs depending on the particular industry (or Lucasfilm division) and position type. A summary of the different surveys upon which the different Lucasfilm divisions rely most significantly is set forth below:

i)      Radford survey. Lucasfilm uses Radford survey data for San Francisco Bay Area companies to determine compensation in the local labor market. The Radford survey data is the primary data source for compensation for Lucasfilm's administrative positions—its

DECLARATION OF MICHELLE MAUPIN IN SUPPORT OF DEFENDANTS' OPPOSITION TO
PLAINTIFFS' MOTION FOR CLASS CERTIFICATION
Case No. 3:11-cv-2509-LHK

executives, finance, and business systems employees, as well as its marketing, human resources, information technology, and facilities positions.

        ii)     Croner Animation and Visual Effects ("AVE") survey.  Lucasfilm uses nationwide data from the Croner AVE survey to determine compensation in the animation and visual effects industry.  The Croner AVE survey is the primary data source for determining compensation for artists, production, and technology positions at Lucasfilm Animation and Industrial Light and Magic.

        iii)    Croner Software Games ("Games") survey.  Lucasfilm uses nationwide data from the Croner Games survey to determine compensation in the video game industry.  The Croner Games survey is the primary data source for determining compensation for artists, production, and technology positions at LucasArts.

14.    I have been informed that plaintiff Siddharth Hariharan worked at LucasArts as a software engineer from January 2007 through August 2008.  During this time, Lucasfilm used the Croner Games survey as the primary data source for determining compensation for software engineers at LucasArts.

15.    I have reviewed the participants in the Croner Games surveys from 2005 to 2011. No other defendant named in this lawsuit participated in the Croner Games survey between 2005 and 2011. During each of these years, Lucasfilm considered the list of Croner Games survey participant companies to be relevant peer companies for compensation purposes.

        i)     An excerpt from the 2008 Croner Games survey results is attached as Exhibit A.  The pages bearing Bates numbers LUCAS00018799-LUCAS00018800 contain a list of the participants in the 2008 Croner Games survey.

**2.     How Lucasfilm divisions set their salary ranges**

16.    Prior to 2006, each division of Lucasfilm separately used market survey data to set a unique pay range for every single position.  In other words, each position's pay range was set independent of the salaries of other positions, even those in the same department, and no position's salary depended on or was formally tied to the salary set for any other position.

5

17.     In 2005, in connection with the integration of Lucasfilm divisions, Lucasfilm engaged a compensation consultant to review and improve the company's compensation practices, including streamlining, and making more efficient and less time-consuming, Lucasfilm's practices for determining compensation for each position.

18.     As one result of the compensation practices review, during 2006 Lucasfilm introduced an overarching system of salary grades to be used to guide compensation decisions. At first, the salary structure was used in tandem with the existing process. The full transition to the salary structure system occurred during 2006 and 2007. ███████████████████████ ███████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████ ███████████████████████████

19.     Since 2008, each position at Lucasfilm has been assigned a salary grade. The salary grade dictates the applicable salary range. During 2006 and 2007, salary grades were used in tandem with the prior practice of assigning a salary range for each position.

i)     A true and correct copy of Lucasfilm's 2008 salary structure is attached as Exhibit B. Lucasfilm had similar salary structures for the years 2006 through 2011.

20.     The breadth of the salary range for each grade means that actual salaries can vary significantly for employees of a particular job title within a particular division. ████████████ ███████████████████████████████████████████████████████████ ███████████████

21.     When assessing compensation at each Lucasfilm division's peer companies, that Lucasfilm division considers those companies' base salary and bonuses. Lucasfilm generally does not consider any stock, stock options, or other equity compensation provided by peer companies when setting compensation levels. Lucasfilm has adopted this approach because we are not in a position to offer equity ourselves. As a result, Lucasfilm has always competed for workers on the strength of our brand, products, reputation for quality work, and the work experience we offer rather than entirely on compensation.

6

22. ███████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████ The relevant market is determined using compensation surveys that are relevant to the

specific industry and position, as more fully described in paragraphs 12 to 15 above.  Because

many of Lucasfilm's peer companies do offer stock, stock options, or other equity as part of their

compensation packages, Lucasfilm's decision not to consider the equity offered by peer

companies means that Lucasfilm████████████████████████████████████

████████████████████████████████████████████████

23. ███████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████

4
████████████████████████████████████████████████████████
███████████████████████████████████████████

DECLARATION OF MICHELLE MAUPIN IN SUPPORT OF DEFENDANTS' OPPOSITION TO
PLAINTIFFS' MOTION FOR CLASS CERTIFICATION
Case No. 3:11-cv-2509-LHK

24. ████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████ As discussed above, the relevant "peer companies" for purposes of the compensation comparison are different for each Lucasfilm division. For example, for LucasArts, which develops and publishes video games, peer companies would include other video-game developers and publishers such as Electronic Arts, Activision, Microsoft, and Nintendo.

**C.    How Lucasfilm sets compensation for new hires**

25.    When Lucasfilm creates a new position, the Compensation Committee will determine the appropriate salary grade for the position██████████████████████████████ ████████████████████ based on (a) the relevant external survey data set forth above; and (b) a comparison with existing positions; (c) the particular skills needed for the position.

26.    If Lucasfilm is recruiting for an existing position, the Compensation Committee will use the existing range for the position in determining the salary of the new employee hired to fill that position.

27.    When setting salary ranges for requisitions, the Compensation Committee first tries to match the requisition to a position in the relevant market surveys. If there is no match, the Compensation Committee attempts to obtain information regarding the relevant market pay through other sources, including from recruiters. Recruiters may receive information about market compensation levels from candidates if candidates share their expectations about compensation or the market in general. The Compensation Committee also may receive information about other employers' pay practices from exit interviews, if departing employees choose to share with Lucasfilm information about the compensation at their new positions. Although the Compensation Committee may be aware of this information, the primary

8

consideration when setting a salary range for a requisition is relation to compensation indicated in relevant peer group market surveys.

28.     The recruiter assigned to an open requisition is provided with the minimum and midpoint of the salary ranges for the position.  The salary range for the position is not made publicly available, and the recruiter does not inform a candidate of the full salary range for a position.

29.     ███████████████████████████████████████████████████████
████████████████████████████████████████████

**D.     How and when Lucasfilm adjusts employee compensation**

30.     Lucasfilm adjusts base salaries annually, through what is known as the pay-for-performance process. The overall budget for salary increases for the company as a whole, and for each division, is determined by analyzing external market practices and the overall financial position of the company.  An individual employee's increase is awarded, within the overall budget, based on performance reviews.  Employees receive annual salary adjustments in April.

31.     The salary budget is allocated between two different pools: one for merit increases and one for call-outs.  The call-out budget is used for salary increases related to promotions, equity adjustments or exceptional employee performance.

32.     Lucasfilm occasionally adjusts salaries outside of the April pay-for-performance process.  These are referred to as out-of-cycle increases and are given for promotions and equity adjustments. An equity adjustment is intended to bring an employee's compensation more in line with (but not necessarily equal to) internal peers or the targeted percentile of external peer compensation.  All out-of-cycle increases must come out of the division's call-out budget.

33.     Each division is given a total salary budget for the year.  This budget includes a budget for yearly merit increases (the merit budget) and a budget for call-outs (the call-out budget). Each division's budget is based on the division's total salaries in effect on the last day of the year prior to the year in which the budget will apply.  For example, a typical division salary budget is 4% of the division's salaries in effect on December 31st of the previous year.

9

Lucasfilm's salary budgets are determined prior to April of the year in which the budget will apply.

i)      A true and correct copy of Lucasfilm's 2008 Salary Budget Recommendations is attached as Exhibit C.  This document generally describes Lucasfilm's compensation policy, recommended salary increase budgets, and merit increase guidelines. Lucasfilm created similar documents and guidelines for the years 2006 through 2011.

34.      All salary increases must come out of the division's salary budget.  Therefore, if one employee receives a salary increase, less money is left in the division's salary budget to increase the salaries of all other employees of that division.

35.      All out-of-cycle increases must come out of the call-out budget.  Therefore, if one employee receives an out-of-cycle increase, less money is left in the call-out budget to provide out-of-cycle salary increases to other employees.

36.      All individual pay actions for existing employees, other than pay-for-performance merit increases, must be approved by Lucasfilm's Compensation Committee.

37.      Lucasfilm does not have a company-wide policy regarding making competing offers to current employees who choose to inform the company that he or she has received another job offer.  Instead, all decisions regarding whether to make competing offers, and if so how much to offer, are made individually based on the specifics of the particular case at hand.  If the employee's supervisor is informed of the offer, that supervisor makes a decision whether or not to seek additional compensation for such employee. Lucasfilm has between 150 and 200 employees who would make such decisions. The supervisor's decision must then be approved by the employee's division head, who must consider the division's overall salary budget and call-out budget.  There are five U.S. division heads. Any compensation increase must fit within the division's existing salary budget, and any compensation increase would reduce the remaining available salary budget for the division.

38.      If the division head approves an increase to an existing employee in response to a competing offer, that increase would be proposed to the Compensation Committee for

10

consideration.  When determining whether to approve such an increase, the Compensation Committee considers such factors as (a) the amount of the increase and the applicable salary range; (b) the need for compensation to be fair and for similar employees to be compensated similarly; and (c) the manager and division head's reasons supporting the proposed increase, including how critical and/or difficult to replace the employee in question would be.

39.     As a practical matter, Lucasfilm rarely makes matching or competing offers to employees who have received outside employment offers.  I have reviewed the records of the results of Compensation Committee meetings and requests from May 3, 2006 (the earliest date such information is available) and January 26, 2012.  I am informed that these records were produced to plaintiffs and bear Bates numbers LUCAS00190520—LUCAS00190669.  Of the approximately 1,110 actions and requests that required Compensation Committee approval during this period, approximately six concerned requested approvals of counter-offers.  Of these six, one was for an hourly employee, and one concerned a counter-offer for a potential employee that Lucasfilm was recruiting.  Of the four requests to approve a counter-offer for existing employees, three were approved and one was not.  Of the six total counter-offer approvals that were requested, three took place after January 1, 2010.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and that this declaration was signed on November 12, 2012 at San Francisco, California.

_____
MICHELLE MAUPIN

11

# EXHIBIT A

RESULTS


# 2008
# CRONER SOFTWARE GAMES SURVEY



Conducted by



THE
**CRONER**
COMPANY
Management Consultants

Confidential – Attorneys' Eyes Only

# 2008 CRONER SOFTWARE GAMES SURVEY



Confidential -- Attorneys' Eyes Only

LUCAS00018780

# RESULTS

# 2008

# CRONER SOFTWARE GAMES SURVEY

COPYRIGHT © 2008
The Croner Company

All rights reserved. Printed in the United States of America. This publication of the 2008 *Croner Software Games Survey* may not be reproduced, stored in a retrieval system, or transmitted in whole or in part, in any form or by any means (electronic, mechanical, photocopying, recording or otherwise) without the prior written permission of The Croner Company, 1028 Sir Francis Drake Boulevard, Kentfield, CA 94904.

This material is confidential and is provided for the sole use by the intended recipient(s). By accepting this material, the recipient agrees that it will not be reproduced for or disclosed to others.



II. PARTICIPANT PROFILE

Confidential – Attorneys' Eyes Only

LUCAS00018798

# II. PARTICIPANT PROFILE

This section provides a summary profile of the 38 survey participants based in the United States.

Incumbents employed at studios marked with an asterisk "*" are reported in the "Parent Owned Studio" cut of data in VII. United States Total Direct Compensation by Position.

## PARTICIPANTS

| | Participant /<br>Reporting for | Ownership /<br>Bus Model | Contact /<br>Location | Contact's Phone /<br>Email |
|---|---|---|---|---|
| 1. | Activision Blizzard, Inc. reporting for:<br>Activision Blizzard, Infinity Ward*, Luxoflux*,<br>Neversoft*, Raven*, Shaba*, Toys for Bob*, Treyarch*,<br>Underground Development*, Vicarious Visions* | Independent<br>Publisher | Jesse Meschuk<br>Santa Monica, CA | (310) 255-2077<br>jesse.meschuk@activision.com |
| 2. | Bungie, LLC | Independent<br>Developer | Shauna Sperry<br>Kirkland, WA | (425) 576-7323<br>shauna@bungie.com |
| 3. | Capcom USA, Inc. | Parent Owned<br>Publisher | Maria Vidal<br>San Mateo, CA | (650) 350-6500<br>mariav@capcom.com |
| 4. | CCP North America* | Parent Owned<br>Developer | David Bockman<br>Stone Mountain, GA | (404) 292-1819<br>dbockman@ccpgames.com |
| 5. | D3Publisher of America, Inc. | Parent Owned<br>Publisher | Taka Endo<br>Los Angeles, CA | (310) 231-8880<br>t.endo@d3p.us |
| 6. | Day 1 Studios, LLC | Independent<br>Developer | Laura Crowley<br>Chicago, IL | (312) 258-0500<br>lcrowley@day1studios.com |
| 7. | Digital Consulting Services reporting for:<br>America's Army Public Applications | Independent<br>Developer | Jeff Howell<br>Newbury Park, CA | (805) 498-9344<br>jhowell@webdcs.com |
| 8. | Disney Interactive Media Group* reporting for:<br>Disney Online Studio*, mDisney*, Virtual Reality Studio* | Parent Owned<br>Developer | Beth Raquel<br>Burbank, CA | (818) 623-3806<br>beth.raquel@disney.com |
| 9. | Disney Interactive Studios reporting for:<br>Disney Interactive Studios, Avalanche Software*,<br>Fall Line Studio*, Junction Point Studios* | Parent Owned<br>Publisher | Amy Kilgore<br>Burbank, CA | (818) 544-0366<br>amy.kilgore@disney.com |
| 10. | Eidos Interactive Inc. reporting for:<br>Eidos, Crystal Dynamics* | Parent Owned<br>Publisher | Lisa Dennis<br>Redwood City, CA | (650) 421-7621<br>ldennis@eidos.com |
| 11. | Electronic Arts Inc. reporting for:<br>Electronic Arts, Bioware, Blueprint, EA Mobile,<br>EA Redwood Shores, EA Salt Lake City, EA Tiburon Studio,<br>EALA, Maxis, Mythic, Pandemic, Pogo | Independent<br>Publisher | Christine Maxwell<br>Redwood City, CA | (650) 628-3162<br>cmaxwell@ea.com |
| 12. | Foundation 9 Entertainment reporting for:<br>Foundation 9 Entertainment, Amaze Entertainment,<br>Backbone Entertainment, Double Helix, Fizz Factor,<br>Griptonite, Imagine Engine, Pipeworks | Independent<br>Developer | Essie Green<br>Irvine, CA | (949) 698-1523<br>essieg@backb.com |
| 13. | Glu Mobile Inc. | Independent<br>Publisher | Gina Schneider<br>San Mateo, CA | (650) 532-2427<br>gina.schneider@glu.com |
| 14. | Insomniac Games, Inc. | Independent<br>Developer | Carrie Dieterle<br>Burbank, CA | (818) 729-2401<br>carrie@insomniacgames.com |
| 15. | Kingsisle Entertainment, Inc. | Independent<br>Developer | Darren Dixon<br>Plano, TX | (972) 265-1970<br>ddixon@kingsisle.com |
| 16. | Konami Digital Entertainment | Parent Owned<br>Publisher | Suzanne Cantey<br>El Segundo, CA | (310) 220-8143<br>cs.45067@konami.com |
| 17. | LeapFrog Enterprises, Inc. | Independent<br>Publisher | Cathy Peloquin<br>Emeryville, CA | (510) 596-5405<br>cpeloquin@leapfrog.com |
| 18. | Lucasfilm, Ltd. reporting for:<br>LucasArts* | Parent Owned<br>Developer | Michelle Maupin<br>San Francisco, CA | (415) 746-5254<br>michelle.maupin@lucasfilm.com |

© THE CRONER COMPANY<br>UNAUTHORIZED REPRODUCTION OR DISTRIBUTION PROHIBITED

CRONER SW GAMES 2008 - SECTION II - 1



Confidential – Attorneys' Eyes Only

| | Participant / Reporting for | Ownership / Bus Model | Contact / Location | Contact's Phone / Email |
|---|---|---|---|---|
| 19. | Microsoft Corporation reporting for: Microsoft Corporation Entertainment and Devices Division, ACES, Ensemble, Rave, Turn 10 | Parent Owned Publisher | Nile Nelson Redmond, WA | (425) 707-0573 nile.nelson@microsoft.com |
| 20. | Midway Games Inc. reporting for: Midway Amusement Games, Midway Home Entertainment, Midway Studios - Austin, Midway Studios - Los Angeles*, Surreal Software* | Parent Owned Publisher | Sarah Beck Chicago, IL | (773) 961-2145 sbeck@midway.com |
| 21. | Monolith Productions, Inc. reporting for: WB Games Inc., Monolith Productions* | Parent Owned Publisher | Patti Pudinski Kirkland, WA | (425) 739-1512 patti@lith.com |
| 22. | MTV Networks reporting for: MTV Networks, Addicting Games*, Game Trailers*, Harmonix Music Systems*, MTV Games*, NeoPets*, Nick Games*, Shockwave* | Parent Owned Publisher | Joanne Witmyer New York, NY | (212) 846-5730 joanne.witmyer@mtvstaff.com |
| 23. | NAMCO BANDAI Games America Inc. | Parent Owned Publisher | Anh Nguyen Santa Clara, CA | (408) 235-2035 anguyen@namcobandaigames.com |
| 24. | NCsoft North America reporting for: NCsoft, Carbine*, NCsoft Mountain View* | Parent Owned Publisher | Wendy Jones Austin, TX | (512) 682-4302 wjones@ncsoft.com |
| 25. | Nexon America | Parent Owned Publisher | Terrice Kim Los Angeles, CA | (213) 858-5941 tkim@nexon.net |
| 26. | Nintendo of America Inc. reporting for: Nintendo of America, Nintendo Software Technology Corp.* | Parent Owned Publisher | Sandra Titus Redmond, WA | (425) 861-2157 sandra.titus@noa.nintendo.com |
| 27. | PopCap Games, Inc. | Independent Publisher | Stephanie Jessel Seattle, WA | (206) 256-2404 sjessel@popcap.com |
| 28. | Red 5 Studios Inc. | Independent Developer | Kara Henander Irvine, CA | (949) 754-0919 khenander@red5studios.com |
| 29. | Retro Studios, Inc.* | Parent Owned Developer | Kellie Johnson Austin, TX | (512) 493-4780 kjohnson@retrostudios.com |
| 30. | Sony Computer Entertainment America, Inc. reporting for: Sony Computer Entertainment America, Incognito* | Parent Owned Publisher | Melissa Shefer Foster City, CA | (650) 655-5580 melissa_shefer@playstation.sony.com |
| 31. | Sony Online Entertainment LLC reporting for: Sony Online Entertainment, Austin Studio*, Denver Studio*, Seattle Studio* | Parent Owned Publisher | Louis Corrado San Diego, CA | (858) 577-3146 lcorrado@soe.sony.com |
| 32. | Take-Two Interactive Software, Inc. reporting for: Take-Two Interactive Software, 2K Games, 2K Boston*, 2K Los Angeles*, 2K Marin*, 2K Play New York, 2K West*, Cat Daddy*, Firaxis Games*, Jack of All Games, Rockstar Games, Rockstar New England*, Rock Star San Diego*, Visual Concepts | Independent Publisher | Tiffany Serra New York, NY | (646) 536-2874 tiffany.serra@take2games.com |
| 33. | Terminal Reality, Inc. | Independent Developer | Diana Handler Lewisville, TX | (972) 315-8089 dlanah@terminalreality.com |
| 34. | THQ Inc. reporting for: THQ, Big Huge Games*, Heavy Iron*, Helixe*, Incinerator*, Kaos*, Locomotive Games*, Mass Media*, Paradigm*, Rainbow*, Sandblast Games*, ValuSoft, Vigil*, Volition* | Independent Publisher | Julia Hann Agoura Hills, CA | (818) 871-8694 julia.hann@thq.com |
| 35. | Turbine, Inc. | Independent Publisher | Kerry Mulhern-Beauchamp Westwood, MA | (781) 407-4460 kmulhern@turbine.com |
| 36. | Ubisoft, Inc. reporting for: Ubisoft, Red Storm Entertainment* | Parent Owned Publisher | Jan Coulman San Francisco, CA | (415) 571-2133 jan.coulman@ubisoft.com |
| 37. | Warner Bros. Interactive Entertainment | Parent Owned Publisher | John Simmons Burbank, CA | (818) 977-8752 john.simmons@warnerbros.com |
| 38. | Zipper Interactive* | Parent Owned Developer | Rochelle Kruger Redmond, WA | (425) 861-6561 rkruger@zipperint.com |

© THE CRONER COMPANY
UNAUTHORIZED REPRODUCTION OR DISTRIBUTION PROHIBITED

CRONER SW GAMES 2008 - SECTION II - 2

Confidential – Attorneys' Eyes Only

LUCAS00018800

## OWNERSHIP

### *Independent / Parent Owned / Publisher / Developer*

Participants' ownership and business model characteristics are classified into four major categories: 1.) independent software publishers; 2.) independent third-party software developers; 3.) parent owned software publishers; and 4.) parent owned software developers. The table below reports the definition and prevalence of each ownership and business model category.

### Participant Ownership and Business Model Categories

| Ownership / Business Model Category | Definitions | Prevalence n | Prevalence % |
|---|---|---|---|
| Independent publisher | Publicly-traded or privately-held independent software companies that publish and/or develop software titles. Includes independent companies that create and host massively multiplayer online games. | 8 | 21% |
| Independent developer | Privately-held independent software companies whose business is the creation and development of software titles under contractual agreements with software publishers. Includes independent companies with massively multiplayer online games under development. | 8 | 21% |
| Parent owned publisher | Software publishers that are subsidiaries or divisions of publicly-traded or privately-held parent companies. Includes parent owned companies that create and host massively multiplayer online games. | 17 | 45% |
| Parent owned developer | Software developers that are subsidiaries or divisions of publicly-traded or privately-held parent companies. Includes parent owned companies with massively multiplayer online games under development. | 5 | 13% |

Independent companies use their own stock in their compensation plans. Parent owned companies use the stock of the parent company in their compensation plans.

© THE CRONER COMPANY
UNAUTHORIZED REPRODUCTION OR DISTRIBUTION PROHIBITED

CRONER SW GAMES 2008 - SECTION II - 3



Confidential – Attorneys' Eyes Only

LUCAS00018801

*Public / Private and Location*

Thirteen participants (34%) have stock that is publicly-traded on U.S. markets or are part of a publicly-traded U.S. parent company.  Twenty-five participants (66%) are either privately-held or owned by a parent company based outside of the U.S. whose stock is publicly-traded on a non-U.S. stock market.  The table below summarizes participants' public or private ownership and headquarter location (of parent company, where applicable).

### Public / Private and Location

| Ownership, Business Model Category | In United States | | | | Outside of United States | | | |
| --- | --- | --- | --- | --- | --- | --- | --- | --- |
| | Publicly-traded | | Privately-held | | Publicly-traded | | Privately-held | |
| All participants | 13 | 34% | 11 | 29% | 12 | 32% | 2 | 5% |
| Independent publisher | 6 | 75% | 2 | 25% | 0 | 0% | 0 | 0% |
| Independent developer | 0 | 0% | 8 | 100% | 0 | 0% | 0 | 0% |
| Parent owned publisher[1] | 6 | 35% | 0 | 0% | 10 | 59% | 1 | 6% |
| Parent owned developer[1] | 1 | 20% | 1 | 20% | 2 | 40% | 1 | 20% |

## TYPES OF SOFTWARE

The majority of participants publish or develop entertainment software only.  The table below reports the types of software published or developed by participants.

### Types of Software Published / Developed

| Types of Software | Prevalence | |
| --- | --- | --- |
| Games / entertainment software | 27 | 71% |
| Educational / "edutainment" software | 1 | 3% |
| Games / entertainment + educational / "edutainment" | 8 | 21% |
| Games / entertainment + educational / "edutainment" + business | 1 | 3% |
| Games / entertainment + social networking | 1 | 3% |

---

[1]  Reports parent company location and nature of parent company stock.

© THE CRONER COMPANY
UNAUTHORIZED REPRODUCTION OR DISTRIBUTION PROHIBITED

Confidential -- Attorneys' Eyes Only

## PLATFORMS

Participants primarily publish or develop software for console platforms, handhelds, PC and the Internet. The table below reports the prevalence of platforms for which participants publish or develop products.

### Platforms For Which Software is Published / Developed

| Platforms | Definitions | Prevalence[2] | |
|---|---|---|---|
| | | n | % |
| Console | Television set top consoles made by companies such as Nintendo, Sony and Microsoft. | 28 | 74% |
| Handheld | Handheld gaming devices made by companies such as Nintendo and Sony. | 22 | 58% |
| Personal Computer | Personal computers such as Macintosh or those with operating systems such as Microsoft Windows. | 21 | 55% |
| Mobile | Cellular telephones and other related devices that include a telephone service. | 13 | 34% |
| Online / Internet / MMOG | Internet or online infrastructures that enable simultaneous play by multiple players. | 20 | 53% |
| Arcade Amusement | Coin operated entertainment machines typically installed in businesses such as restaurants, pubs and video arcades. | 1 | 3% |
| Games for Educational Market | Interactive toys that require software for functionality such as LeapFrog toys. | 1 | 3% |

---

[2]  Column totals to more than 100% because most participants publish / develop for more than one type of platform.

© THE CRONER COMPANY
UNAUTHORIZED REPRODUCTION OR DISTRIBUTION PROHIBITED

CRONER SW GAMES 2008 - SECTION II - 5



Confidential – Attorneys' Eyes Only

## GEOGRAPHIC DISTRIBUTION

The majority of participants have offices in the West. The table below summarizes the geographic distribution of employees matched to the survey and the 50th percentile and mean number of matched employees in each region. Listed below the table are the states and cities in which matched employees are located.

### Participant Geographic Distribution

| Region | Participants with Incumbents Matched | | Number of Incumbents Matched | |
|---|---|---|---|---|
| | n | % of Participants | 50 | Mean |
| East | 14 | 37% | 42 | 91 |
| South | 10 | 26% | 10 | 87 |
| Midwest | 15 | 39% | 19 | 63 |
| Mountain | 5 | 13% | 15 | 67 |
| Southwest | 18 | 47% | 37 | 63 |
| West | 33 | 87% | 130 | 343 |

**EAST:** **Connecticut:** New Haven, Wallingford. **District of Columbia:** Washington, D.C. **Massachusetts:** Andover, Ashburnham, Boston, Burlington, Cambridge, Framingham, Holbrook, Stoneham, Waltham, Westwood. **Maryland:** Baltimore, Elkton, Ellicott City, Frederick, Hunt Valley, Kensington, Manchester, Sparks, Temple Hills, Timonium. **Maine:** Winterport. **New Hampshire:** Hudson, Portsmouth. **New Jersey:** Edison, Marlton, Newark, Somerset. **New York:** Albany, Buffalo, Clarence Center, Coram, Freeport, Hoboken, Levittown, Lynbrook, New York, Wallkill. **Pennsylvania:** Audubon, Bangor, Coraopolis, Erie, Harrisburg, Hatboro, Latrobe, Nescopeck, Pittsburgh, Scranton, Springfield, Strausburg. **Rhode Island:** Warwick. **Virginia:** Charlottesville, Fairfax, Virginia Beach, Winchester. **Vermont:** Williston.

**SOUTH:** **Alabama:** Birmingham, Huntsville, Madison, Mobile. **Arkansas:** Benton, Bentonville, Fayetteville, Fort Smith. **Florida:** Cape Coral, Coral Springs, Fort Lauderdale, Jacksonville, Miami, Orlando, Port Saint Lucie, Tallahassee, Tampa, Wesley Chapel. **Georgia:** Alpharetta, Atlanta, Lawrenceville, Peachtree City, Ringgold, Roswell, Savannah. **Kentucky:** Georgetown, Louisville. **Louisiana:** Baton Rouge. **Mississippi:** Southhaven. **North Carolina:** Cameron, Cary, Charlotte, Durham, Huntersville, Morrisville, Pfafftown, Raleigh, Winston Salem. **South Carolina:** Columbia, Duncan, Mount Pleasant. **Tennessee:** Johnson City, Knoxville, Murfreesboro, Nashville, Powell. **West Virginia:** Vienna.

**MIDWEST:** **Iowa:** Altoona, Cedar Rapids. **Illinois:** Bloomington, Champaign, Chicago, Downers Grove, Elmhurst, Franklin, Lindenhurst, Troy. **Indiana:** Indianapolis, Muncie, North Liberty. **Kansas:** Gardner, Kansas City, Lawrence. **Michigan:** Byron Center, Detroit, Grand Rapids, Lansing, Livonia, Saginaw, Shelby Township. **Minnesota:** Bloomington, Brooklyn Center, Carver, Chaska, Cottage Grove, Eagan, Eden Prairie, Lakeville, Maple Grove, Minneapolis, Plymouth, Prior Lake, Saint Paul. **Missouri:** Belton, Fenton, Kansas City, Raymore, Springfield, Saint Louis. **Nebraska:** Omaha. **Ohio:** Canal Winchester, Cincinnati, Cleveland, Columbus, Liberty Township, Powell, Strongsville, Toledo, Troy, Wadsworth, West Chester. **Wisconsin:** Appleton, Greendale, Kenosha, Madison, Middleton.

**MOUNTAIN:** **Colorado:** Aurora, Boulder, Denver, Foxfield, Golden. **Utah:** Riverton, Salt Lake City.

**SOUTHWEST:** **Arizona:** Gilbert, Glendale, Phoenix, Tempe. **New Mexico:** Albuquerque. **Oklahoma:** Broken Arrow, Oklahoma City, **Texas:** Austin, Carrollton, Cedar Park, Converse, Corpus Christi, Corsicana, Dallas, Driftwood, El Paso, Fort Worth, Garland, Grapevine, Holly Lake Ranch, Houston, Irving, Joshua, Leander, Lewisville, McKinney, Mesquite, Plano, Round Rock, Watauga.

**WEST:** **California:** Agoura, Aliso Viejo, Burbank, Canyon Country, Carlsbad, Chino, Citrus Heights, Covina, El Segundo, Emeryville, Encino, Escondido, Foster City, Glendale, Hermosa Beach, Huntington Beach, Irvine, Lafayette, Laguna Niguel, Long Beach, Los Angeles, Marina Del Ray, Montebello, Moorpark, Mountain View, Murrieta, North Hollywood, Northridge, Novato, Orange, Playa Del Rey, Porterville, Redwood City, Sacramento, San Carlos, San Clemente, San Diego, San Francisco, San Jose, San Mateo, Santa Clara, Santa Monica, South El Monte, Stockton, Temecula, Watsonville, Woodland Hills. **Nevada:** Las Vegas. **Oregon:** Bend, Eugene, Portland, Sandy. **Washington:** Bellevue, Bothell, Kirkland, North Bend, Redmond, Seattle, Tacoma.

---

[3] Column totals to more than 100% because some participants have employees in more than one location.

© THE CRONER COMPANY
UNAUTHORIZED REPRODUCTION OR DISTRIBUTION PROHIBITED          CRONER SW GAMES 2008 - SECTION II - 6

Confidential – Attorneys' Eyes Only                                                                 LUCAS00018804