# EXHIBIT 1

Richard M. Heimann (State Bar No. 63607)
Kelly M. Dermody (State Bar No. 171716)
Eric B. Fastiff (State Bar No. 182260)
Brendan Glackin (State Bar No. 199643)
Dean Harvey (State Bar No. 250298)
Anne B. Shaver (State Bar No. 255928)
Lisa J. Cisneros (State Bar No. 251473)
LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA  94111-3339
Telephone:  (415) 956-1000
Facsimile:  (415) 956-1008

Joseph R. Saveri (State Bar No. 130064)
Lisa J. Leebove (State Bar No. 186705)
James G. Dallal (State Bar No. 277826)
JOSEPH SAVERI LAW FIRM
505 Montgomery Street, Suite 625
San Francisco, CA  94111
Telephone:  (415) 500-6800
Facsimile:  (415) 500-6803

*Interim Co-Lead Counsel for Plaintiff Class*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| IN RE: HIGH-TECH EMPLOYEE ANTITRUST LITIGATION<br><br>THIS DOCUMENT RELATES TO:<br><br>ALL ACTIONS | MASTER DOCKET NO. 11-CV-2509-LHK<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION TO COMPEL GOOGLE DOCUMENTS**<br><br>Date: February 26, 2013<br>Time: 10:00 a.m.<br>Courtroom: 5, 4th floor<br>Judge: Honorable Paul S. Grewal |


# NOTICE OF MOTION AND MOTION

**TO THE PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on February 26, 2013, at 10:00 a.m., or earlier pursuant to the accompanying motion to shorten time, before the Honorable Paul S. Grewal, in the above-entitled Court, individual and representative plaintiffs Michael Devine, Mark Fichtner, Siddharth Hariharan, Brandon Marshall, and Daniel Stover ("Plaintiffs") will and hereby do move the Court, pursuant to Federal Rule of Civil Procedure 37(a)(3)(B)(iv), for an order compelling production of 166 documents Defendant Google Inc. communicated to Bill Campbell, Chairman of co-Defendant Intuit Inc. ("Intuit") and Director of co-Defendant Apple Inc. ("Apple"), at Campbell's intuit.com email address.  Each document is a business record at Google, which Google currently maintains.  Specifically, those documents are:

- Documents Google identified in its December 28, 2012 privilege log concerning the documents of HR executive Laszlo Bock, at the following log numbers: 81-82, 161, 185, 192, 198, 206-207, 230-231, 254, 273-274, 309-311, 333, 337-338, 340-342, 356, 393-394, 538, 673, 679-681, 683-684, 686-689, 697-698, 757-758, 803, 807-812, 815-816, 827-828, 880, 898, 915, 917, 933, 1075-1076, 1124, 1217-1218, 1251-1252, 1261, 1281, 1315, 1325-1327, 1329-1330, 1353, 1365, 1366, 1367, 1368, 1399, 1412, 1497, 1498, 1552, 1555, 1630, 1661, 1662, 1667-1668, 1670, 1674, 1681-1682, 1718, 1719, 1729, 1782, 1786-1788, 1815, 1848, 1869, 1878, 2005-2006, 2017-2019, 2026-2027, 2072, 2082, 2120, 2143, and 2200.

- Documents Google identified in its January 7, 2013 privilege log concerning the documents of HR executive Shona Brown, at the following log numbers: 7, 54, 62-63, 65-67, 78-80, 110-113, 152, 185-186, 189-190, 192-193, 217, 222-223, 250-251, 289-290, 330-331, 357-358, 375, 432-434, 523-524, 557-558, and 565-566.

- Documents Google identified in its January 7, 2012 privilege log concerning the documents of CEO Eric Schmidt, at the following log numbers: 3-5, 9-10, 12-13, 29-30, 59, and 60.

This Motion relies on the accompanying memorandum in support, the Declaration of

Dean M. Harvey and attached exhibits, the files and records in this matter, and the testimony of counsel at oral argument if the Court orders that a hearing be scheduled.

## I. INTRODUCTION

Pursuant to Federal Rule of Civil Procedure 37(a)(3)(B)(iv), Plaintiffs move to compel production of 166 responsive documents Defendant Google Inc. communicated to Bill Campbell, Chairman of co-Defendant Intuit Inc. and Director of co-Defendant Apple Inc., at Campbell's intuit.com email address. Campbell was a primary actor and central participant in Defendants' illegal activity.

Google has withheld or redacted these communications on the grounds of the attorney-client privilege and/or attorney work product. These documents are not protected and should be produced in their entirety. First, there is no dispute that these documents are responsive to Plaintiffs' document requests and they are directly relevant to Plaintiffs' claims. Second, these communications do not fall within Google's attorney-client privilege because Campbell was not a Google employee and the communications do not appear to concern the rendering of legal advice. Third, the communications are not privileged because they were not made in confidence. All of the documents were communicated to Campbell at Intuit, separate and apart from Google, at an intuit.com email address, and thus were transmitted over Intuit's computer systems. The communications are not confidential because Intuit itself expressly—and publicly to all employees—reserved the right to inspect and monitor communications made on company email systems at any time, without prior approval, and without the knowledge or consent of its employees. The motion should be granted.

## II. BACKGROUND

Plaintiffs are five former employees of Defendants who seek redress for themselves and a Class of employees injured by an illegal conspiracy among Defendants Adobe Systems Inc.; Apple Inc.; Google Inc.; Intel Inc.; Intuit Inc.; Lucasfilm Ltd.; and Pixar, to eliminate competition for each other's employees. Ongoing discovery has confirmed that Defendants' senior corporate officers personally entered into no-solicitation agreements, sought and obtained the agreement of others to join the conspiracy, kept them hidden from their own employees, supervised implementation throughout their respective companies, and policed each other. *See* Plaintiffs' Mot. for Class Certification ("Class Mot.") at 8-15, Dkt. 187.

1    Intuit Chairman and Apple Director Bill Campbell was an architect and ambassador of the
2    conspiracy.  He negotiated the unlawful agreement between Apple and Google.  Declaration of
3    Dean M. Harvey ("Harvey Decl."), Ex. A [231APPLE002140] (on February 18, 2005, Campbell
4    reported to Apple's Steve Jobs: "Eric told me that he got directly involved and firmly stopped all
5    efforts to recruit anyone from Apple."[1]).  Campbell entered into an identical agreement with
6    Google, on behalf of his employer, Intuit.  *Id.*, Ex. C [GOOG-HIGH TECH-00009764] ("During
7    a brief conversation with Shona [Brown] and Bill Campbell, Bill requested that Intuit be added
8    fully to the Do Not Call list.  Currently, our non-solicit policy only covers 18 Intuit employees . . .
9    The change to our Do Not Call policy will make our hands-off approach to Intuit explicit and
10   ensure clarity.").  Campbell worked to expand the agreement between Google and Intel to
11   eliminate other sources of competition between them.  *Id.*, Ex. D [GOOG-HIGH TECH-
12   00056790] ("Campbell and I already discussed this [talking to Intel before making an offer to an
13   Intel employee] and agreed that either way [whether Intel was treated as a "Do Not Call"
14   company, or a "sensitive" company] I should give a courtesy call to Paul Otellini [Intel's CEO].
15   I'm meeting with [the Intel candidate] tomorrow and I will ask him how he wants to handle
16   communication to Intel management before we even get to the stage of specifically discussing an
17   offer.").  ████████████████████████████████████████
18   ████████████████████████████████████████████████████
19   ████████████████████████████████████████████
20   ████

21       Google has improperly withheld or redacted 166 responsive email communications
22   between senior Google executives and Campbell, sent to and/or from his intuit.com email
23   address.  On December 28, 2012, Google identified 114 of these in a privilege log concerning the
24   documents of HR executive Laszlo Bock ("Bock Log"), a percipient witness Plaintiffs intended to
25   depose on January 10, 2013.[2]  Harvey Decl., Ex. F.  On January 7, 2013, Google identified

---

[1] That same day, Apple's head of HR reported to her staff: "Please add Google to your 'hands-off' list.  We recently agreed not to recruit from one another so if you hear of any recruiting they are doing against us, please be sure to let me know.  Please also be sure to honor our side of the deal."  Harvey Decl., Ex. B [231APPLE073139].

[2] Plaintiffs agreed to postpone Mr. Bock's deposition in an effort to resolve these privilege issues

another 52 such communications on privilege logs concerning the documents of HR executive Shona Brown ("Brown Log"), whose deposition is scheduled to occur on January 30, 2013, and concerning the documents of CEO Eric Schmidt ("Schmidt Log"), whose deposition is scheduled to occur on February 21, 2013. *Id.*, Exs. G and H.

### III.   ARGUMENT

#### A.   Legal Standards

The "party asserting the attorney-client privilege has the burden of establishing the existence of an attorney-client relationship *and* the privileged nature of the communication." *United States v. Graf*, 610 F.3d 1148, 1156 (9th Cir. 2010) (emphasis in original, internal edits omitted) (citing *United States v. Ruehle*, 583 F.3d 600, 607 (9th Cir. 1997)). "Because it impedes the full and free discovery of the truth, the attorney-client privilege is strictly construed." *Id.*

The Ninth Circuit applies the following eight-part test to determine whether information is covered by the attorney-client privilege:

> (1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) unless the protection be waived.

*Graf*, 610 F. 3d at 1156 (quoting *Ruehle*, 583 F.3d at 607). "The party asserting the privilege bears the burden of proving each essential element." *Id.* (quoting *Ruehle*, 583 F.3d at 608).

In five of the entries at issue, Google also lists "attorney work product" as a "privilege asserted."[3] For a document to be protected by the work product doctrine, a party "must show that the document was (1) prepared in anticipation of litigation or for trial, and (2) they must be prepared by or for another party or by or for that other party's representative." *Elan Microelectronics Corp. v. Apple, Inc.*, 2011 U.S. Dist. LEXIS 87989, at *7-*8 (N.D. Cal. Aug. 8, 2011) (citing *United States v. Richey*, 632 F.3d 559, 567 (9th Cir. 2011)) (Grewal, M.J.).[4] "Like

---

in advance.

[3] These are entries 82, 254, and 273-274 of the Laszlo Bock privilege log, and entry 558 of the Shona Brown privilege log.

[4] For the reasons set forth below, Defendants fail to meet the second prong of the work product privilege that the communication must be prepared by or for the party's representative. In addition, the vague privilege log entries fail to provide a sufficient basis to satisfy the first prong that the materials were prepared in anticipation of specific litigation.

1  the attorney-client privilege, work product protection can be waived." *Id.* (citing *Hernandez v.*

2  *Tanninen*, 604 F.3d 1095, 1100 (9th Cir. 2010)).

### B.  The Communications Are Not Privileged Because Campbell Was Not The Functional Equivalent of a Google Employee and the Communications Do Not Concern Legal Advice

5  Google maintains that the privilege exists because Campbell was a "senior advisor" to

6  Google.  Harvey Decl., Ex. I.  In *Graf*, the Ninth Circuit examined the issue of "whether an

7  outside consultant's discussions with corporate counsel even fall within the corporation's

8  attorney-client privilege."  610 F.3d at 1156.  The Ninth Circuit adopted the reasoning of *In re*

9  *Bieter Co.*, 16 F.3d 929 (8th Cir. 1994), and held that the relevant question was whether the

10  outside consultant was the "functional equivalent of an employee."  *Graf*, 610 F.3d at 1159.  In

11  answering this question, the Ninth Circuit examined facts such as whether the consultant acted as

12  the corporation's agent to others, and whether the consultant communicated with the

13  corporation's counsel on the corporation's behalf.  *Id.*  The communications at issue should

14  concern the rendering of legal advice, such that the corporation's attorneys "would wish to confer

15  confidentially" with the consultant "to understand [the corporation's] reasons for seeking" legal

16  advice.  *Bieter*, 16 F.3d at 938.

17  Campbell was not a Google employee.  Nor was he a Google consultant.  Google does not

18  claim that it had a retention agreement with him.  The fact that he was a co-conspirator of Google

19  does not make him Google's agent for purposes of cloaking him in Google's attorney-client

20  privilege.  Google has provided no evidence that Campbell communicated with Google's counsel

21  on behalf of Google, that Campbell owed any fiduciary duty to Google, or that Campbell served

22  any necessary function in the rendering of legal advice.

23  To the contrary, discovery demonstrates that Campbell communicated with Google and

24  others to expand and enforce the no-solicit conspiracy.  When Google's interests conflicted with

25  Intuit's interests, Campbell demonstrated he was acting in his Intuit capacities, not as a functional

26  employee of Google.  When Google recruited Intuit employees, Campbell did not assist Google

27  in the attempt.  Instead, Campbell wrote Google's Jonathan Rosenberg, demanding: "**Are you**

28  **guys nuts?**" Harvey Decl., Ex. J [GOOG-HIGH TECH-00057458] (emphasis added).  Campbell

1   was not the functional equivalent of a Google employee.

2   Except in a few isolated instances, Bill Campbell did not communicate directly with
3   Google's counsel. Out of the 166 documents Google has withheld or redacted, there were only
4   three in which Campbell communicated directly with a Google lawyer (Bock Log 1315, 1329,
5   and 1330). In the other 163 documents, the communications either excluded lawyers altogether,
6   or were communications among lawyers and non-lawyers in which Campbell is simply copied.
7   The non-lawyers in these communications were the senior executives at Google involved in
8   developing and implementing the conspiracy, such as Schmidt, Brown, Bock, and Rosenberg.

9   The only three direct communications with attorneys are instructive. The first was written
10  by Google's Senior Vice President & General Counsel, Kent Walker, to Schmidt, Brown, Bock,
11  and Campbell (at his intuit.com email address). Mr. Walker sent this email on April 24, 2008,
12  and Google has withheld it in its entirety with the oblique explanation: "Email seeking,
13  containing, and reflecting legal advice of Kent Walker* regarding employment matter." The
14  other two documents (Bock 1329 and 1330) are emails written two months later, between June 23
15  and June 25, 2008. The documents are part of the same substantially redacted email string among
16  Google senior executives and Bill Campbell, all with the subject: "Facebook." The first email in
17  the string was written by Brown two days earlier, in which the non-redacted portion showed she
18  wrote: "███████████████

19  ████████████████████████████████

20  ████████████████████████████████ Harvey Decl., Ex.
21  K [GOOG-HIGH-TECH-00210242, at '246] (emphasis added). Google redacted the email
22  written by Rosenberg, a non-lawyer employee of Google (in its entirety), and Campbell's
23  response to Rosenberg (in its entirety). Rosenberg's communication is not an attorney-client
24  communication. Neither is Campbell's response. *Id.*, Exs. K and L [GOOG-HIGH-TECH-
25  00210247].

26  In another redacted document, ████████████████████
27  ████████████████████████████████
28  ████████████████████████████████

1
2
3
4
5 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *Id.*[5]

6  Responsive documents of this kind, shared with a non-employee, at an email address of a
7 major competitor, are not privileged, and should not be hidden from Plaintiffs in this action. Bill
8 Campbell was not acting as a "functional equivalent" of a Google employee, but instead as the
9 Chairman of a competing employer (Intuit), and a Board member of another competing employer
10 (Apple). It appears the purpose of these communications was to eliminate competition for
11 employees, not to render legal advice to Google. At best, they were made so that Campbell could
12 provide business "feedback," based on his business "expertise" and "experience." *Dahl v. Bain*
13 *Capital Partners, LLC*, 714 F.Supp.2d 225, 229 (D. Mass. 2010) (in antitrust case, granting
14 motion to compel documents that were shared with third parties to provide business "feedback").
15 They should be produced.

### C. The Communications Were Not Privileged Because They Were Not Made In Confidence

To qualify as privileged, email communications must be both subjectively and objectively confidential. *See*, *e.g.*, *In re: Asia Global Crossing*, 322 B.R. 247, 256 (Bankr. S.D.N.Y. 2005) (citing *California v. Greenwood*, 486 U.S. 35, 39 (1988)). The subjective beliefs of Google's senior executives and Bill Campbell are insufficient, if using Campbell's intuit.com email address was not also objectively confidential.

Courts judge the objective confidentiality of corporate email accounts by considering four factors: "(1) does the corporation maintain a policy banning personal or other objectionable use, (2) does the company monitor the use of the employee's computer or e-mail, (3) do third parties have a right of access to the computer or e-mails, and (4) did the corporation notify the employee,

---

[5] Walker was later proved correct when Google, with Campbell's input, raised compensation to all employees by 10% across the board, following the DOJ investigation into the "truces" Google had with its major labor competitors. *See* Class Mot. at 19.

1  or was the employee aware, of the use and monitoring policies?" *Id.* at 257 (collecting cases).
2  *See also Pac. Coast Steel v. Leany*, 2012 U.S. Dist. LEXIS 40855, at *4-5 (D. Nev. Mar. 23,
3  2012) (affirming Magistrate Judge's conclusion that employee waived any applicable privilege
4  because he did not have a reasonable expectation of privacy in his emails, applying *Asia Global*
5  *Crossing* factors); *Alamar Ranch, LLC v. County of Boise*, 2009 U.S. Dist. LEXIS 101866, at *11
6  (D. Idaho Nov. 2, 2009) (applying *Asia Global Crossing* factors). California courts applying
7  California law are in accord.[6]

8  Intuit's contemporaneous—and publicly available—corporate policies explain that Intuit's
9  "resources and assets," such as "computers" and "cell phones," "remain the property of Intuit and,
10  as a general rule, should only be used by employees for company business." Harvey Decl. Ex. N
11  at 22 [Integrity Without Compromise: Intuit Code of Conduct and Ethics (Jan. 22, 2008)]. "Intuit
12  may inspect and monitor all company resources, assets and property at any time, without prior
13  approval, knowledge or consent of employees to the extent allowed by law." *Id.* "This includes
14  monitoring and retrieving information that is stored or transmitted on Intuit's electronic devices,
15  computers, and systems." *Id.* "Managers at all levels have a special responsibility to role model
16  ethical behavior and ensure that employees under their supervision understand and comply with
17  Intuit standards and policies." *Id.* at 5. Violations of Intuit's Code of Conduct may result in
18  "[d]isciplinary action," including "termination of employment, in accordance with applicable
19  laws." *Id.* at 30.

20  All of the *Asia Global Crossing* factors show that these email communications were not
21  objectively confidential. Communications with Campbell at his intuit.com email were stored and
22  transmitted on Intuit's electronic systems. Intuit maintained a policy banning the use of these
23  systems for purposes other than Intuit company business. Intuit expressly reserved the right to
24  access these communications "at any time, without prior approval, knowledge or consent . . . ."
25  This right of access was held by a third party to Campbell and Google: Intuit. Finally, Intuit

---

[6] *See, e.g.*, *Holmes v. Petrovich Dev. Co., LLC*, 191 Cal. App. 4th 1047, 1051 (Cal. App. 3d Dist. 2011) (no privilege for communications on company-furnished email account; use of such accounts was "akin to consulting her lawyer in her employer's conference room, in a loud voice, with the door open, so that any reasonable person would expect that their discussion of her complaints about her employer would be overheard by him.").

1  notified Campbell, the Chairman of Intuit's board, of these policies, and indeed made clear that
2  he had a "special responsibility," as a manager at Intuit, "to role model ethical behavior . . . ."
3  Accordingly, it was objectively unreasonable for Campbell and Google's senior executives to
4  believe that emails sent to an intuit.com email address would be kept confidential from Intuit.
5  *Alamar Ranch*, 2009 U.S. Dist. LEXIS 101866, at *11 ("It is unreasonable for any employee in
6  this technological age—and particularly an employee receiving the notice Kirkpatrick received—
7  to believe that her e-mails, sent directly from her company's e-mail address over its computers,
8  would not be stored by the company and made available for retrieval."). The communications are
9  not protected and should be produced.

### IV.   CONCLUSION

For the above-stated reasons, Plaintiffs respectfully request that the Court grant Plaintiffs' motion to compel the responsive documents Google has set forth on its privilege logs that reflect communications with Bill Campbell at his intuit.com email address.

Dated: January 16, 2013        LIEFF CABRASER HEIMANN & BERNSTEIN, LLP

                               By:        */s/ Dean M. Harvey*
                                          Dean M. Harvey

                               Richard M. Heimann (State Bar No. 63607)
                               Kelly M. Dermody (State Bar No. 171716)
                               Eric B. Fastiff (State Bar No. 182260)
                               Brendan Glackin (State Bar No. 199643)
                               Dean Harvey (State Bar No. 250298)
                               Anne B. Shaver (State Bar No. 255928)
                               Lisa J. Cisneros (State Bar No. 251473)
                               275 Battery Street, 29th Floor
                               San Francisco, CA  94111-3339
                               Telephone:  (415) 956.1000
                               Facsimile:   (415) 956.1008

1  Joseph R. Saveri (State Bar No. 130064)
   Lisa J. Leebove (State Bar No. 186705)
2  James G. Dallal (State Bar No. 277826)
   JOSEPH SAVERI LAW FIRM
3  505 Montgomery Street, Suite 625
   San Francisco, CA  94111
4  Telephone:  (415) 500-6800
   Facsimile:   (415) 500-6803
5
   *Interim Co-Lead Counsel for Plaintiff Class*
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28