**EXHIBIT 1**

1   MAYER BROWN LLP
    LEE H. RUBIN (SBN 141331)
2   lrubin@mayerbrown.com
    EDWARD D. JOHNSON (SBN 189475)
3   wjohnson@mayerbrown.com
    DONALD M. FALK (SBN 150256)
4   dfalk@mayerbrown.com
    ERIC B. EVANS (SBN 232476)
5   eevans@mayerbrown.com
    Two Palo Alto Square, Suite 300
6   3000 El Camino Real
    Palo Alto, CA 94306-2112
7   Telephone:     (650) 331-2000
    Facsimile:     (650) 331-2061
8
    *Attorneys for Defendant*
9   *Google Inc.*

10

11                  **UNITED STATES DISTRICT COURT**

12                  **NORTHERN DISTRICT OF CALIFORNIA**

                              **SAN JOSE DIVISION**
13

14   IN RE: HIGH-TECH EMPLOYEE                Master Docket No. 11-CV-2509-LHK
     ANTITRUST LITIGATION
15                                            **GOOGLE INC.'S OPPOSITION TO**
     THIS DOCUMENT RELATES TO:                **PLAINTIFFS' MOTION TO COMPEL**
16                                            **PRODUCTION OF DOCUMENTS**
     ALL ACTIONS
17                                            Date:        February 26, 2013
                                              Time:        10:00 a.m.
18                                            Courtroom:   5, 4th Floor
                                              Judge:       Honorable Paul S. Grewal
19

20

21

22

23

24

25

26

27

28

**INTRODUCTION**

1

2    Plaintiffs' motion to compel production of privileged documents from Google's log is based

3    entirely on two arguments that are demonstrably false:

4    *First*, based on nothing more than their own bald assertion, Plaintiffs argue that Google's

5    communications with Bill Campbell are not privileged because Mr. Campbell was not the

6    "functional equivalent of an employee."  Motion at 4:17-18; *see also id*. 4:3-6:15 (Mr. Campbell

7    "was not a Google employee" or "a Google Consultant.").  But Plaintiffs are flat wrong. ███

8    ████████████████████████████████████████████████████████████████████████████████

9    ████████████████████████████████████████████████████████████████████████████████

10   ████████████████████████████████████████████████████████████████████████████████

11   ████████████████████████████████████████████████████████████████████████████████

12   █████████████████████ These incontrovertible facts are fatal to Plaintiffs' primary argument.

13   *Second*, Plaintiffs argue that Google had no reason to believe that the challenged emails

14   involving Mr. Campbell would be held in confidence because they were addressed to or sent from

15   Mr. Campbell's email account at Intuit, Inc., where he is Chairman of the Board.  Motion 6:16-8:9.

16   ████████████████████████████████████████████████████████████████████████████████

17   ████████████████████████████████████████████████████████████████████████████████

18   █████████████████████████████████████████ Accordingly, Google had every

19   reason to believe that Mr. Campbell would hold these kinds of communications in strict confidence.

20   Moreover, Plaintiffs present no evidence that Google was (or should have been) aware of any Intuit

21   corporate email policy that would undercut Google's expectation ████████████████████

22   ███████████████ to maintain the confidentiality of Google's confidential emails.  Indeed,

23   contrary to Plaintiffs' claims, where a company has a policy of limited personal use of an employer's

24   computer—as Intuit does—that factor weighs in favor of upholding the assertion of privilege.  *U.S.*

25   *v. Hatfield*, 2009 WL 3806300, *9 (E.D.N.Y., Nov. 13, 2009).

26   [1] Google offered to share Mr. Campbell's declaration with Plaintiffs prior to filing its opposition
as part of Google's attempt to further meet and confer (and proposed that the parties stipulate to an
27   extension of one day for Google to file its opposition to allow time for further dialogue).  Plaintiffs
refused and insisted that the parties go forward to present this dispute to the Court.  See
28   Declaration of Lee. H. Rubin, dated January 25, 2013 ¶ 2.

1    In short, Plaintiffs are effectively asking this Court to find that an otherwise privileged and

2    confidential communication ██████████████████ loses its confidential status if the

3    communication is sent to or from another corporate email address.  That is not the law.  Indeed, such

4    a rule would mark a fundamental change in the law of privilege and disrupt settled expectations

5    regarding the protection to be afforded confidential communications between a company and its

6    board of directors (or others) who may use different corporate email addresses from the company

7    they serve.   For all of these reasons, the Court should reject Plaintiffs' invitation to create new law

8    with far-reaching implications and deny Plaintiffs' motion.

9                                        **ARGUMENT**[2]

10   **I.**   ████████████████████████████████████████████

11   ████████████████████████████████████████████

12   Plaintiffs' primary argument in support of their motion to compel is based entirely on their

13   assertions that:

> Campbell was not a Google employee. Nor was he a Google consultant.
> Google does not claim that it had a retention agreement with him.

15   Motion 4:17-18; *see also id.* 4:3-6:15.  ████████████████████

16   ████████████████████████████████████████████

17   ████████

18   ████████████████████████████████████████

19   ████████████████████████████████████████████

20   ████████████████████████████████████████████

21   ████████████████████████████████████████████

22   ████████████████████████████████████████████

23   ████████████████████████████████████████████

24   ████████████████████  Moreover, Google's senior managers regularly communicated with

---

[2] Plaintiffs have not actually contested Google's assertion of work product protection. *See* Motion 3 n.4.   Although Plaintiffs claim that Google waived its attorney-client privilege in communications with Mr. Campbell because he was not a Google employee and communications with him passed through his intuit.com email address, these arguments do not address the work product doctrine, for which "confidentiality" is not a *prima facie* element. *Elan Microelectronics Corp. v. Apple, Inc.*, 2011 WL 3443923, *2 (N.D. Cal. Aug. 8, 2011) (citing *United States v. Richey*, 632 F.3d 559, 567 (9th Cir. 2011)) (Grewal, M.J.).

1   Mr. Campbell, seeking his advice and thoughts on important strategic decisions. *See, e.g.,*

2   Declaration of Alan Eustace (dkt. no. 200 and refiled concurrently), dated Oct. 9, 2012, ¶¶ 4-5.  All

3   of the communications that Plaintiffs now challenge ███████████████████████████████

4   ████████████████████████████████████████████████████████████████████████████

5   ████████████████████████████████████████████████████████████████████████████

6   ████████████████████████████████████████████████████████████████████████████

7   ████████████████████████████████████████████████   *United States v. Graf*, 610 F.3d

8   1156, 1159 (9th Cir. 2010).

## II.   AN *IN CAMERA* REVIEW WILL ALSO BELIE PLAINTIFFS' ARGUMENT THAT THE CONTENT OF THESE COMMUNICATIONS ARE NOT PRIVILEGED.

11          Plaintiffs complain to the Court that "Google has improperly withheld or redacted 166

12  responsive email communications."  Motion at 2:21.  What Plaintiffs fail to say, however, is that the

13  majority of the challenged emails were produced, just in redacted form.[3]  According to Plaintiffs, the

14  unprivileged portions of these redacted but produced documents somehow refute Google's privilege

15  assertions because they suggest that Mr. Campbell was not acting in Google's interests, but rather in

16  the interest and on behalf of Intuit.  *See* Motion 4:23-6:5.  Yet, Plaintiffs' argument merely assumes

17  what Plaintiffs are trying to prove—namely that Mr. Campbell was not an employee or consultant

18  when the challenged communications were made.  ████████████████████████████████

19  ██████████████████

20          An *in camera* review by the Court of a representative set of the challenged communications

21  will further demonstrate that the communications over which Google has asserted privilege are

22  solely confined to matters related to ███████████████████████████and do not pertain to

23  communications where Mr. Campbell is communicating on behalf of Intuit.  Accordingly, in an

24

---

25  [3] In fact, after Plaintiffs questioned Google's 166 privilege log entries, Google re-reviewed each of
26  them and agreed to produce 27 of the communication in full or without the originally proposed redactions.  Accordingly, only 139 log entries remain in dispute.  Of these in dispute, 79 entries reflect redacted but produced documents and 60 entries record documents that were withheld.
27  Moreover, many of the 139 entries relate to emails within the same email "chain."  In the end, Google estimates that there are only 69 entries in dispute that reflect unique documents or emails.
28  *See* Rubin Decl. ¶ 3.

GOOGLE'S OPPOSITION TO MOTION TO COMPEL
MASTER DOCKET NO. 11-CV-2509-LHK

1   effort to further put this issue to rest, Google has submitted for the Court's inspection a sampling of

2   the documents at issue, including the unredacted versions of documents

3   **III.    GOOGLE HAD EVERY REASON TO EXPECT THAT ITS PRIVILEGED
         COMMUNICATIONS WITH MR. CAMPBELL WOULD REMAIN**

4   **     CONFIDENTIAL.**

5          As a secondary argument, Plaintiffs claim that Google's use of an "intuit.com" email address

6   to communicate with Bill Campbell on privileged matters somehow precludes Google from

7   asserting privilege over these communications.  Plaintiffs' argument misses the mark for several

8   reasons.

9          **A.    Google Understood That Its Attorney-Client Communications Involving Mr.
               Campbell Would Be Maintained in Confidence and Had a Reasonable Basis**

10  **          for That Expectation**

11         As Plaintiffs acknowledge, a communication is confidential—and therefore may be treated

12  as privileged—where it was "(1) intended to remain confidential and (2) under the circumstances,

13  was reasonably expected and understood to be confidential." *In re Asia Global Crossing*, 322 B.R.

14  247, 255 (2005) (quoting *United States v. Bell*, 776 F.2d 965, 971 (11th Cir. 1985)); *see also United*

15  *States v. Melvin*, 650 F.2d 641, 645 (5th Cir. 1981) ("A communication is protected by the attorney-

16  client privilege if it intended to remain confidential and was made under circumstances that it was

17  reasonably expected and understood to be confidential").  The evidence shows that (a) Google senior

18  executives subjectively believed that its attorney-client communications with Mr. Campbell would

19  remain confidential and (b) that they had a strong objective basis for that expectation.

20         As to the subjective understanding of Google's management, a Google senior executive has

21  already asserted on the record in this case that he "often included" Mr. Campbell in email

22  discussions of "confidential and highly sensitive matters," regarding "Google's business operations

23  and corporate strategy," and when he was included, it was "understood and expected that Mr.

24  Campbell would maintain the confidentiality of Google's confidential and highly sensitive

25  information and not share that information with anyone other than those owed a duty of

26  confidentiality to Google."  Eustace Decl. (Senior Vice President of Business Operations) at ¶¶ 4-5.

27

28

-4-

1  [redacted]

2  [redacted]

3  [redacted]

4    Further, Google manifestly had reasonable grounds for expecting that Mr. Campbell would

5  hold Google's privileged communications in confidence:  [redacted]

6  [redacted]

7  [redacted]

8  [redacted]

9  [redacted]

10    Under this record, there can be no serious doubt that Google intended and expected attorney-

11  client communications with Campbell to "remain confidential" and that it had a more than

12  reasonable basis for that expectation.  See *Melvin*, 650 F.2d at 645; *see also Hatfield*, 2009 WL

13  3806300, *10 (where employer and employee both acted consistent with the expectation of

14  confidentiality, it would be "fundamentally unfair" not to recognize the reasonableness of their

15  mutual understanding).

16    **B.    The Factors Set Forth in *Asia Global Cros*sing Do Not Support Plaintiffs Claim
17          That the Challenged Documents Are Not Privileged**

18    Plaintiffs cannot cite any actual disclosure of privileged information shared with Mr.

19  Campbell.  [redacted]

20  [redacted]  Campbell Decl. ¶ 6.  Unable to offer any

---

[4] What is more, even had Mr. Campbell not taken adequate steps to closely guard Google
privileged communications—and all available evidence indicates that he did—the failure by Mr.
Campbell to do so does not constitute a waiver of the attorney-client privilege by Google – the
holder of the privilege.  It is well settled that a corporation's privilege belongs to the corporation
and "the power to waive the corporate attorney-client privilege rests with the corporation's
management and is normally exercised by its officers and directors." *U.S. v. Chen*, 99 F.3d 1495,
1502 (9th Cir. 1996) (quoting *Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343,
348 (1985).  Accordingly, mere disclosure of a corporation's privileged communication by an
employee does not waive the corporation's privilege, provided that the corporation takes
reasonable steps to avoid waiver. *Cell Therapeutics*, *Inc. v. Lash*, 2011 WL 1930603, *
irector of Google. [redacted]
Campbell Decl. Exs. A (Ex.
A) and B at 1. [redacted] rendered him the a "holder of [Google's] privilege"
(*Resolution Trust Corp. v. Dean*, 813 F. Supp 1426, 1428 (D. Ariz. 1993)) and as a consequence,
Mr. Campbell had no authority to waive Google's privilege in its communications with him.

-5-

1    specific evidence of disclosure, Plaintiffs instead hang their argument entirely on the multi-factor

2    test articulated in *Asia Global Crossing*.  Under those factors, Plaintiffs argue that Google's had no

3    objective grounds to believe communications sent from or to Mr. Campbell's "intuit.com" address

4    would remain confidential.  In particular, they point to Intuit's Code of Conduct and Ethics (Harvey

5    Decl. Ex. N), which generally discourages its email users from using Intuit's electronic systems for

6    anything other than Intuit business and states that Intuit reserves the right to "inspect and monitor all

7    company resources, property and assets" at any time.  *Id*. at 22.  But this Intuit policy—absent

8    evidence that that Google knew that its privileged communications were being shared with third

9    parties whose access would destroy the privilege—does not vitiate Google's reasonable basis ▮

10   ████████████████████████████████████████████████   Equally important, even on their

11   own terms, none of the *Asia Global Crossing* support plaintiffs' argument.

### 1.    Intuit's Code of Conduct and Ethics Policy does not constitute a blanket prohibition of non-company use of emails

14   The first *Asia Global Crossing* factor is whether the employer has "a policy banning personal

15   or other objectionable use."  322 B.R. at 257.  Here, Intuit's Code of Conduct and Ethics states that

16   "computers" and "cell phones" "remain the property of Intuit and, as a general rule, should only be

17   used by employees for company business."  Plaintiffs claim this policy is such a ban.  Motion 7:8-

18   19.  Courts, however, distinguish between policies that *ban* personal use and policies that merely

19   *discourage* or *limit* personal use.  Outright bans on personal use weigh against a finding of objective

20   confidentiality, but policies permitting *any* personal use, even if limited, weigh in favor of upholding

21   the privilege. *Asia Global Crossing*, 322 B.R. at 261 (holding that court could not find absence of

22   reasonable expectation of confidentiality where evidence did not demonstrate that employer had any

23   computer use policy); *United States v. Nagle*, 2010 WL 3896200, *4-5 (M.D. Pa. Sept. 30, 2010)

24   (sustaining privilege objection where employer "had no policy banning the use of work computers

25   for personal reasons"); *Convertino v. United States Department of Justice*, 674 F. Supp. 2d 97, 110

26   (D.D.C. 2009) (sustaining privilege objection in part based upon employer policy that did not ban

27   personal use of company email).

28

1    Intuit's Code of Conduct and Ethics is plainly not a categorical ban but merely a statement

2    that, "as a general rule," Intuit computer and cell phones "should" only be used for company

3    business.  Harvey Decl. Ex. N; *see also Hatfield*, 2009 WL 3806300, *9 (holding that policy that

4    employees were "expect[ed]" to use their company equipment "solely for business purposes" is not

5    ban and weighs against waiver).  This factor, then, weighs in favor of finding an objective basis that

6    non-company emails can be exchanged in confidence.

7                    **2.      There is no evidence that Intuit monitored Mr. Campbell's emails**

8            The second *Asia Global Crossing* factor is whether "the company monitor[s] the use of the

9    employee's computer or email."   322 B.R. at 257.   This factor concerns whether the company

10   *actually* monitored the employee's computer or email, not whether the company merely reserved the

11   right to conduct such monitoring.  *Hatfield*, 2009 WL 3806300, *9; *Nagle*, 2010 WL 3896200, *4

12   (while company's policy reserved right to monitor computer use, lack of evidence of regular practice

13   of actual monitoring favored finding of reasonable expectation of confidentiality).  Plaintiffs present

14   no evidence that Intuit actually monitored Mr. Campbell's computer and Google is unaware of any

15   such monitoring.  Accordingly, this factor also favors upholding Google's assertion of privilege.

16
17                    **3.      There is no evidence that Intuit routinely exercised its right of access to
                     Mr. Campbell's computer and emails**

18           The third *Asia Global Crossing* factor is whether "third parties have a right of access to the

19   computer or emails."  322 B.R. at 257.  However, when the employer has only a right of access and

20   does not exercise that right or exercises it only intermittently, that factor weighs against waiver.

21   *Curto v. Medical World Communications, Inc*., 2006 WL 1318387, *4-8 (E.D.N.Y. May 15, 2006)

22   (policy allowed employer to "access and review" all computer usage, but company rarely did so, and

23   lack of monitoring was a factor favoring finding of privilege).  Moreover, when personal use is

24   permitted, this factor, even combined with other factors, does not justify a finding that there was a

25   reasonable basis to expect confidentiality.  *Hatfield*, 2009 WL 3806300, *9 (finding no waiver,

26   despite third party right of access, where policy permitted personal use).

27

28

-7-

1

### 4.    Because Intuit implicitly permits personal use, any notice to Mr. Campbell weighs in favor of upholding the privilege

2

The fourth *Asia Global Crossing* factor is whether "the corporation notif[ied] the employee,

3   or [whether] the employee [was] aware, of the use and monitoring policies." 322 B.R. at 257. In

4   this case, because the privilege holder is not the Intuit employee or board member, this factor is

5   almost certainly irrelevant to the question of whether Google had a reasonable basis to believe that

6   its privileged communications would remain confidential. In any event, the record is silent on

7   whether Mr. Campbell was notified of Intuit's access and monitoring policies. But assuming he was

8   aware of Intuit's corporate policy, where personal use is not prohibited, notice of the policy does not

9   undermine an objective belief of confidentiality. *See*, *e.g.*, *Hatfield*, 2009 WL 3806300, *9-10

10   (upholding assertion of privilege despite CEO's constructive notice of company policy permitting

11   personal use).

12

### <u>CONCLUSION</u>

13

For the reasons set forth above, Plaintiffs motion to compel should be denied.

14

15   Dated:  January 25, 2013          MAYER BROWN LLP

By:        */s/ Lee H. Rubin*
16                                            Lee H. Rubin
                                   *Attorneys for Defendant GOOGLE INC.*

17

18   *ATTESTATION: Pursuant to General Order 45, Part X-B, the filer attests that concurrence in the filing of this document has been obtained from the signatory.*

19

20

21

22

23

24

25

26

27

28