UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

|  |  |
|---|---|
| In re HIGH-TECH EMPLOYEE ANTITRUST LITIGATION | Case No.: 11-CV-2509-LHK-PSG<br><br>**ORDER RE: PLAINTIFFS' MOTION TO COMPEL PRODUCTION**<br><br>**(Re: Docket No. 278)** |

Bill Campbell ("Campbell") works for Defendant Google Inc. ("Google"), but he is no mere employee, and perhaps not even that. He earns at best a nominal salary, often without any formal agreement or even understanding. And yet Campbell occupies an elite niche in the technology industry that, with apologies to Robert Redford, is best described as an "executive whisperer." Either as consultant or part-time employee, Cambpell has advised Google's senior-most management even as he did the same for Defendant Apple, Inc. ("Apple") and others, all while serving as Chairman of the Board of Defendant Intuit, Inc. ("Intuit"). Campbell's unique status lies at the heart of the motion to compel now before the court. Citing their disclosure to Campbell, Plaintiffs Michael Devine, Mark Fichtner, Siddharth Hariharan, Brandon Marshall, and Daniel Stover (collectively "Plaintiffs") seek production of emails that Google either redacted or

1

Case No.: 11-2509 LHK (PSG)
ORDER

failed to produce on the grounds that the documents were privileged.[1]  Having considered the parties' papers, supplemental documents, and oral arguments, the court DENIES Plaintiffs' motion to compel but without prejudice to in camera review of certain documents as discussed below.

### I.  BACKGROUND

Plaintiffs are five former employees of the various defendants in this case whom Plaintiffs claim colluded with each other to avoid poaching each other's employees and to stabilize their compensation packages.  At issue in this discovery dispute are various emails among Google counsel, Campbell, and Google executives Shona Brown ("Brown"), Laszlo Bock ("Bock"), and Eric Schmidt ("Schmidt").[2]

Google produced to Plaintiffs a privilege log for each of the three executives identifying 72 of Schmidt's emails,[3] 579 of Brown's emails,[4] and 2,281 of Bock's emails[5] as subject to the attorney-client privilege and/or the work product privilege.  Google produced redacted versions of many of the documents but withheld other documents entirely on the grounds that they were subject to the privileges.[6]

In this motion, Plaintiffs seek production of 166 of those documents Google designated as privileged.[7]  The 166 documents at issue consist of emails on which Campbell was included at his

---

[1] *See* Docket No. 278.

[2] *See* Docket No. 278.

[3] *See* Docket No. 278-1 Ex. H.

[4] *See id.* Ex. G.

[5] *See id.* Ex. F.

[6] The court notes that aside from a description of the legal standard in Plaintiffs' brief and a footnote in Google's brief, the parties have not provided substantive argument regarding the work product immunity claims.  *See* Docket Nos. 278, 319.

[7] *See* Docket No. 278.

2
Case No.: 11-2509 LHK (PSG)
ORDER

intuit.com email address and for which Plaintiffs assert Google waived whatever privilege it claims over the communications.[8] Google objects on the grounds that, despite his roles at Apple and Intuit, Campbell in fact was an employee or essentially the same as an employee at Google and therefore the privilege was maintained. In support of its position, Google submitted to the court for in camera review 17 documents that it either produced with redactions or withheld in full.

## II. LEGAL STANDARDS

"[A] party asserting the attorney-client privilege has the burden of establishing the [existence of an attorney-client] relationship *and* the privileged nature of the communication."[9] Parties seeking to withhold information under the privilege must satisfy an eight-part test: "(1) [w]here legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) unless the protection be waived."[10]

"The work-product doctrine," on the other hand, "protects from discovery documents and tangible things prepared by a party or his representative in anticipation of litigation."[11] "To qualify for work-product protection, documents must: (1) be 'prepared in anticipation of litigation or for trial' and (2) be prepared 'by or for another party or by or for that other party's representative.'"[12]

---

[8] *See id.* Exs. F, G, H.

[9] *See United States v. Graf*, 610 F.3d 1148, 1156 (9th Cir. 2010) (changes in original).

[10] *See id.*

[11] *See United States v. Richey*, 632 F.3d 559, 567 (9th Cir. 2011).

[12] *See id.*

## III.  DISCUSSION

Plaintiffs assert that Google's claims of privilege fail on essentially three grounds: (1) Campbell was not a Google employee or functional equivalent of an employee and therefore not subject to the attorney-client privilege; (2) the communications do not appear to be about legal advice; and (3) because they were sent to Campbell's Intuit email account, the communications were not objectively confidential.[13]  The court addresses each of Plaintiffs' arguments in turn.

### A.  Campbell's Position with Google

Plaintiffs assert that Campbell was at best an outside consultant to Google who was never an official employee nor did he act in a manner that supports an inference that he was the "functional equivalent" of an employee.[14]  Plaintiffs argue that as a result Campbell's inclusion in the communications at issue effected a waiver by Google of the attorney-client privilege because Campbell stood as a third party to the communications between Google and its counsel.  Google responds that Campbell in fact was an employee or the functional equivalent of one and points to an agreement with Campbell supposedly dating from 2002 regarding his consultant position with the company and a subsequent agreement in 2007 that purports to make Campbell a full-fledged employee.[15]

Pursuant to the Supreme Court's holding in *Upjohn Co. v. United States*, employees at all levels of a corporation may communicate with the corporation's counsel for the purposes of seeking or providing legal advice without waiving the corporation's attorney-client privilege.[16]  But as the Ninth Circuit highlighted in *United States v. Graf*, *Upjohn* left unresolved issues

---

[13] *See* Docket No. 278.

[14] *See id.*

[15] *See* Docket No. 319 Ex. 2 (filed under seal).

[16] *See Upjohn Co. v. United States*, 449 U.S. 383, 393-94 (1981); *United States v. Graf*, 610 F.3d 1148, 1158 (9th Cir. 2010).

4

Case No.: 11-2509 LHK (PSG)
ORDER

regarding exactly who speaks for a corporation, exactly who is an employee, and how the privilege applies.[17] A determination of the applicability of the privilege here turns on two distinct issues: (1) whether Campbell is eligible at all for Google's attorney-client privilege; and if he is (2) whether in each given communication in which Campbell is included, the privilege should apply. In this section, the court addresses the first, and more difficult, question.

### 1. Standard for Eligibility Under the Attorney-Client Privilege

In *Upjohn*, the Supreme Court rejected the "control-group" test that limited a corporation's attorney-client privilege to "senior management" who "guid[ed] and integrat[ed] the several operations" and who could "be said to possess an identity analogous to the corporation as a whole."[18] Although the Court refused to adopt any alternative bright line rules regarding application of the privilege, it did counsel that, in applying the privilege, lower courts should keep in mind the privilege's purposes of "protect[ing] not only the giving of professional advice to those who can act on it but also the giving of information to the lawyer to enable him to give sound and informed advice."[19]

Since *Upjohn*, courts have had to determine how far the privilege reaches for corporations. In *In re Bieter*, the Eighth Circuit considered whether the privilege could extend to an outside consultant of a partnership who had communicated with the partnership's counsel.[20] The consultant was an independent contractor of the partnership but had been viewed by the partnership's counsel and by other parties as a representative of the partnership, had attended

---

[17] *See Graf*, 610 F.3d at 1158 (noting that that for the attorney-client privilege, "[i]t can be particularly challenging to determine the identity of the client in the corporate context").

[18] *See Upjohn*, 449 U.S. at 390.

[19] *Id.* at 370.

[20] 16 F.3d 929, 936 (8th Cir. 1994).

5
Case No.: 11-2509 LHK (PSG)
ORDER

numerous meetings with the partnership's counsel, and had participated extensively both in the deal giving rise to the litigation and in the litigation itself.[21]

Noting that "[t]here is no principled basis to distinguish [the consultant's] role from that of an employee" and that "his involvement in the subject of the litigation makes him precisely the sort of person with whom a lawyer would wish to confer confidentially in order to understand [the partnership's] reasons for seeking representation," the court held that the consultant was "in all relevant respects the functional equivalent of an employee."[22] The Eighth Circuit further observed that "it is inappropriate to distinguish between those on the client's payroll and those who are instead, and for whatever reason, employed as independent contractors" and held that extension of the privilege to the consultant was appropriate.[23]

In *Graf*, the Ninth Circuit considered a similar question regarding whether a criminal defendant who was by title an outside consultant to an insurance company nevertheless was covered by the company's attorney-client privilege.[24] To resolve the question, the Ninth Circuit adopted the Eighth Circuit's reasoning in *Bieter* and held that the attorney-client privilege extends to non-employees acting as "functional equivalent[s] of an employee."[25] The Ninth Circuit then looked to the role the defendant played in the insurance company, including consideration of whether he was the primary agent who communicated with counsel and whether he acted as an agent for the corporation in a significant capacity, managed employees, or had substantial input

---

[21] *See id.* at 934.

[22] *Id.* at 938.

[23] *Id.* at 937.

[24] *See*

[25] *See id.*

Case No.: 11-2509 LHK (PSG)
ORDER

into the development of the issue at the heart of the litigation.[26] Having determined that the defendant served a significant role in the company that amounted to the "functional equivalent of an employee," the Ninth Circuit affirmed the district court's determination that the defendant was subject to the company's attorney-client privilege.[27]

The court thus must determine whether Google has met its burden to show that in his role at Google Campbell served as either an employee or the functional equivalent of an employee. If Google has met that burden, Campbell is eligible for the privilege, and the court must then determine whether each communication falls within the privilege. If Google has not met that burden, however, Campbell is not eligible for the privilege and Google may not maintain the privilege over any conversations in which Campbell participated.

### 2. Campbell's Status Before 2007

Prior to 2007, Campbell served as a consultant to Google in a role that Campbell himself described as "informal[]."[28] Google provided a consultant agreement that it asserts memorialized the relationship between Google and Campbell. The court notes, however, that the copy of the 2002 agreement Google attached to its motion was dated sometime in April 2007,[29] and Campbell admitted in his subsequent deposition that he did not sign the agreement until 2007 when he signed a subsequent part-time employment agreement.[30] But Campbell stated in a sworn declaration that from January 2002 until 2007 his role with Google mirrored the duties listed in the subsequent

---

[26] *See id.* at

[27] *See id.* at 1159.

[28] *See* Docket No. 325 Ex. D at 173:24.

[29] *See* Campbell Decl. Ex. A (filed under seal)

[30] *See* Docket No. 325 Ex. D at 175:5-18.

7

Case No.: 11-2509 LHK (PSG)
ORDER

agreement,[31] and so the court looks to the agreement for elucidation of Campbell's status at Google. In the agreement, Campbell's duties include serving as an "advisor to Google's management and Board of Directors with respect to Google's corporate and business strategy" and advising "on issues relating to its organizational development and internal business processes."[32]

Other evidence supports that Campbell played an important advisory role at Google. In a separate declaration, Alan Eustace ("Eustace"), Senior Vice President of Knowledge at Google, stated that Campbell served as a "senior advisor" and that because of that role, Eustace often included Campbell in "emails regarding Google's business operations and internal corporate strategy, including confidential and highly sensitive matters related to Google's compensation practices, policies and strategies."[33] The communications both Plaintiffs and Google submitted further reveal Campbell's importance at Google. Throughout the operative period in this case, he was in ongoing communication with Google's executives and advised them about how to deal with employees leaving Google.

This evidence suffices to show that Campbell's role at Google was that of a functional equivalent of an employee even before an employment agreement was executed. His high-level position and advisory role suggests that a blanket denial of the attorney-client privilege would undermine what *Upjohn* and *Graf* emphasize: the ability of the corporation both to provide information to its counsel and to obtain guidance from its counsel.

To be sure, the evidence before the court more than suggests that in many communications Campbell spoke instead in his role as either an employee of Intuit or an employee of Apple. Google's counsel in fact admitted at the hearing that this record fails to show any instances where

---

[31] *See* Campbell Decl.

[32] *See* Campbell Decl. Ex. A.

[33] *See* Docket No. 200.

8
Case No.: 11-2509 LHK (PSG)
ORDER

Campbell spoke as an agent of Google. Although the fact of his relationship to Google is well-known,[34] the metes and bounds of his role with the company remain largely behind-the-scenes. It is not clear to the court that Campbell even has a google.com email address. The court therefore must highlight the limitation of its findings. Because there is sufficient evidence that Campbell served as an advisor to Google, Google may be eligible to claim the attorney-client privilege for communications involving its counsel and Campbell, but the evidence in no way supports that Google has blanket protection for every communication its counsel had with Campbell prior to 2007.

### 3. Campbell's Status After 2007

In 2007, Campbell signed an agreement with Google that rendered him officially a part-time employee with the company.[35] According to Campbell's declaration and Google's representations, Campbell's role with the company did not significantly change following the change in his status.[36] The change in Campbell's status from an outside consultant to Google's employee further supports that Campbell from 2007 until the end of his relationship with Google is at least eligible for the attorney-client privilege.[37]

At the risk of repetitiveness but in an abundance of caution, the court again notes that as an employee, Campbell may have been eligible for application of the attorney-client privilege, but his status as an employee by itself is not enough to warrant application of the privilege. Having determined that throughout the time of his relationship with Google, Campbell was eligible for the

---

[34] *See, e.g.*, Miguel Helft, "Bill Campbell on Coaching RockMelt and Google vs. Apple," *New York Times*, Nov. 8, 2010 (*available at* http://bits.blogs.nytimes.com/2010/11/08/bill-campbell-on-coaching-rockmelt-and-google-vs-apple/).

[35] *See* Campbell Decl. Ex. B (filed under seal).

[36] *See id.*; *see* Docket No. 318.

[37] *See Upjohn*, 449 U.S. at 390.

9

Case No.: 11-2509 LHK (PSG)
ORDER

attorney-client privilege, the court must now consider whether the other factors for the privilege apply to the communications at issue.

The court turns now to Plaintiffs' other arguments.

**B.     Waiver**

Before addressing the sample communications Google provided the court for in camera review, the court first considers Plaintiffs' argument that even if Campbell was an employee or the functional equivalent of one, the communications were not confidential because they were sent to Campbell's Intuit email account.  For the attorney-client privilege to apply, the communications between attorneys and clients must be confidential; disclosure of the communication dissolves the privilege.[38]  The court therefore must determine as a threshold matter whether Campbell's Intuit email renders the various communications non-confidential.

Plaintiffs argue that Intuit's corporate policy regarding email, including reserving the right to review employees' emails, vitiates any confidentiality Google or Campbell could expect from the communications.[39]  Google responds that regardless of Intuit's policy, it expected that the communications were confidential and that Campbell would keep them confidential.

Plaintiffs urge the court to adopt the four factors identified in *In re Asia Global Crossing, Ltd.*[40]  Faced with a similar issue of the confidentiality of emails sent over an employer's email system, the bankruptcy court in the Southern District of New York looked to the reasonable expectation of privacy in the Fourth Amendment context and propounded four factors that it found most relevant to the question of confidentiality in the attorney-client privilege context.[41]  Several

---

[38] *See Graf*, 610 F.3d at 1156.

[39] *See* Docket No. 278.

[40] 322 B.R. 247 (S.D.N.Y. 2005).

[41] *See id.* at 256-57.

10

Case No.: 11-2509 LHK (PSG)
ORDER

district courts have used the *Asia Global* factors in considering whether an employer's computer and email policies effect a waiver of an employee's privilege.[42]

Google contends that the *Asia Global* factors do not apply because the privilege is Google's, not Campbell's.[43] As Google's argument goes, because Campbell – not Google – was the person subject to the policy, the court should only consider whether Google reasonably believed that Campbell was maintaining the confidentiality of the communications.[44] In other words, regardless of Intuit's policy or Campbell's knowledge of it, Campbell could not waive Google's privilege and so the only inquiry for the court is whether Google reasonably assumed that its communications with Campbell and counsel were confidential and kept that way.

But Google maintains that in communications in which Campbell participated along with Google's employees and Google's counsel Campbell was a Google employee as well and thereby eligible for the privilege.[45] Campbell may not be able on his own to waive Google's privilege but it does not make sense that if Campbell speaks on Google's behalf, Google does not share the knowledge that Campbell possesses regarding the policy of the email system he employed.

The court nevertheless agrees that this is not the typical case in which the *Asia Global* factors are applied. In most situations, an employee spoke with her personal attorney over her employer's email system.[46] Here, in contrast, Campbell spoke with Google's employees and

---

[42] *See, e.g.*, *Aventa Learning, Inc. v. K12, Inc.*, 830 F. Supp. 2d 1083, 1108-09 (W.D. Wash. 2011); *In re Reserve Fund Securities & Derivative Litig*, 275 F.R.D. 154, 159-60 (S.D.N.Y. 2011) (applying the test in the context of the marital privilege); *Curto v. Med. World Comm'ns, Inc.*, Case No. 03CV6327 (DRH)(MLO), 2006 WL 1318387, at *7 (E.D.N.Y. May 15, 2006).

[43] *See* Docket No. 319.

[44] *See id.*

[45] *See id.*

[46] *See, e.g.*, *Aventa Learning*, 830 F. Supp. 2d at 1107; *Convertino v. U.S. Dept. of Justice*, 674 F. Supp. 2d 97, 110 (D.D.C. 2009); *In re Asia Global Crossing, Ltd.*, 322 B.R. at 256.

Case No.: 11-2509 LHK (PSG)
ORDER

Google's counsel over Intuit's email system. But as the court already noted, by Google's own argument, Campbell did so as an employee or functional equivalent of an employee of Google. And Google's other employees appear to have had notice that Campbell was receiving the emails at the external address.[47] Although the facts differ from the typical scenario, the court considers the method for determining whether the communications remained confidential basically the same. To wit, did Campbell and Google have an objectively reasonable expectation of confidentiality in emails sent through Intuit's system?

The court thus finds the *Asia Global* factors useful in determining whether Campbell and thus Google waived the attorney-client privilege by sending emails through Intuit's email system. The court finds that the test neatly articulates the issues the court must resolve to determine whether Campbell and Google had an objectively reasonable expectation that the emails were and would remain confidential. The court therefore will consider: (1) whether Intuit had a policy banning personal use; (2) whether Intuit monitored employees' use of email; (3) whether third parties have a right of access to the computer and the email; and (4) whether the company notified Campbell or Google – or whether Campbell or Google were aware of – the use and monitoring policy.[48]

### 1.     Intuit's Policy

Turning to the first factor, from the copy of the Intuit policy that Plaintiffs submitted, Intuit has a policy that states that "Intuit resources and assets remain the property of Intuit and, as a general rule, should only be used by employees for company business."[49] Google argues that the language of the policy does not reflect an all-out ban of the personal use of Intuit's resources but

---

[47] *See, e.g.*, Docket No. 278 Ex. E (emails sent between Google employees and Campbell at his intuit.com email address).

[48] *See In re Asia Global Crossing*, 322 B.R. at 258.

[49] *See* Docket No. 278 Ex. N.

12

Case No.: 11-2509 LHK (PSG)
ORDER

rather that the policy only strongly discourages the practice.[50] Plaintiffs assert that the language amounts to a "ban."[51]

At least one other court has suggested that "should" in an employer's policy reflects a ban on the personal use of emails.[52] But Intuit's inclusion of the term "as a general rule" does qualify the policy that employees should only use the company's resources for "company business." Intuit perhaps did not expect the type of use that Campbell engaged in when it added that qualification, but the court cannot say that its policy represents an all-out ban on personal use. This factor weighs, albeit not heavily, in Google's favor.

### 2.  Monitoring of Emails

In its Code of Conduct, Intuit reserves the right to "inspect or monitor all company resources, assets and property at any time, without prior approval, knowledge or consent of employees to the extent allowed by law."[53] Intuit explicitly states that "[t]his includes monitoring and retrieving information that is stored or transmitted on Intuit's electronic devices, computers and systems."[54]

At least one court that has applied the *Asia Global* factors held that a company's reservation of the right to inspect is enough to warrant this factor weighing against a finding of a reasonable expectation of confidentiality.[55] But, as other courts have recognized, a company's failure to

---

[50] *See* Docket No. 319.

[51] *See* Docket No. 278.

[52] *See In re Reserve Fund Sec. & Derivative Litig.*, 275 F.R.D. at 161 (rejecting argument that "should" is "precatory or aspirational").

[53] Docket No. 278 Ex. N.

[54] *Id.*

[55] *See In re Reserve Fund Sec. & Derivative Litig.*, 275 F.R.D. at 164 ("Because [the company] expressly reserved the right to access and monitor its employees' emails, the second *Asia Global Crossing* factor weighs against finding a reasonable expectation of privacy.").

13

Case No.: 11-2509 LHK (PSG)
ORDER

actually monitor employees' emails or to have an explicit policy of monitoring the emails may suggest to employees that their emails in fact remain confidential.[56] Nothing in the record before the court suggests that Intuit actually monitored its employees' emails or Campbell's emails in particular. The court finds the second factor thus weighs in favor of Google's expectation of confidentiality in the emails.

### 3. Third Parties' Right of Access

As noted above, Intuit reserves the right to inspect its employees' emails.[57] Intuit, as a third party, has a right of access to Campbell's emails. This factor thus weighs against a finding of a reasonable expectation of privacy.[58]

### 4. Knowledge of Intuit's Policy

Campbell recognized Intuit's policy and indicated he was not exempt from its conditions.[59] During his deposition, he waffled about whether he had read the version of the policy at issue and whether he had actual knowledge of the guidelines.[60] Because he was one of the highest level executives at Intuit at the time and because he admits familiarity with the policies, the court assumes that Campbell at least had constructive knowledge of the policies.[61] Intuit's code of

---

[56] *See, e.g.*, *United States v. Hatfield*, Case No. 06-CR-0550 (JS), 2009 WL 3806300, at *9 (E.D.N.Y. Nov. 13, 2009); *Convertino*, 674 F. Supp. 2d at 110. *See also Aventa Learning*, 830 F. Supp. 2d at 1109 (noting that the company in fact engaged in monitoring of employees' emails, which added to the second factor tipping against a reasonable expectation of confidentiality).

[57] *See* Docket No. 278 Ex. N.

[58] *See Hatfield*, 2009 WL 3806300 at *9.

[59] *See* Docket No. 325 Ex. D at 184:9-185:7.

[60] *See id.* at 184:8-9.

[61] *See Aventa Learning*, 830 F. Supp. 2d at 1107 (ascribing constructive knowledge of company's privacy policies to "senior level manager" who was "expected to know the contents of company policies").

14
Case No.: 11-2509 LHK (PSG)
ORDER

conduct itself asserts that managers must "[u]nderstand the Code of Conduct."[62]  This fourth factor thus weighs against a finding that Campbell had a reasonable expectation of confidentiality in his emails.

Although the court finds that the *Asia Global* factors are evenly split, the court finds that the importance of the attorney-client privilege as well as the lack of evidence that Intuit in fact monitored Campbell's emails supports the preservation of the privilege in this case.[63]  The fact that Campbell sent and received messages from his Intuit email address does not destroy the confidentiality necessary to maintain the privilege.

## C. The Communications

Having determined that Campbell is eligible for the attorney-client privilege and that his use of the Intuit email account did not destroy the communications' confidentiality, the court considers Plaintiffs' final objection.  Plaintiffs assert that the communications do not appear to be for the purposes of seeking or transmitting legal advice.[64]

To maintain the privilege, a client must be seeking or receiving legal advice within the communication.[65]  "If the advice sought is not legal advice, but, for example, accounting advice from an accountant, then the privilege does not exist."[66]

The court has reviewed the samples of communications submitted by Google and concludes that at least as to these communications, Google, through its employees and including Campbell,

---

[62] *See* Docket No. 278 Ex. N.

[63] *See United States v. Mett*, 178 F.3d 1058, 1065 (9th Cir. 1999) (noting "where attorney-client privilege is concerned, hard cases should be resolved in favor of the privilege, not in favor of disclosure").

[64] *See* Docket No. 278.

[65] *See United States v. Richey*, 632 F.3d 559, 566 (9th Cir. 2011).

[66] *Richey*, 632 F.3d at 566.

15
Case No.: 11-2509 LHK (PSG)
ORDER

was either seeking legal advice from Google's attorneys or was receiving advice. But the court cannot and will not speak to whether the privilege applies to other communications that Google has withheld. Because of Campbell's dual role, the court finds that Plaintiffs are entitled to an in camera review of all of the documents Google seeks to withhold if Plaintiffs believe that the other communications are not privileged.[67] No later than 5:00 p.m. on March 4, 2013, Plaintiffs shall provide notice to the court and Google if they want to challenge the remaining privileged documents that include Campbell; Google then will have until March 7, 2012 at 5:00 p.m. to produce the documents for in camera review.

**IT IS SO ORDERED**.

Dated: February 28, 2013

PAUL S. GREWAL
United States Magistrate Judge

---

[67] *See In re Grand Jury Investigation*, 974 F.2d 1068, 1074-75 (9th Cir. 1992) (noting that an in camera review is appropriate when the party challenging the privilege has established a sufficient factual basis for the challenge). The court notes that Plaintiffs failed to provide a factual basis for in camera review of the four remaining documents that Google claims are protected by the work-product doctrine as well as attorney-client privilege. Plaintiffs made little reference to the work-product issue in their moving papers, *see* Docket No. 278, made no reference in their supplemental papers, *see* Docket No. 331 Ex. A., and did not discuss the issue at the hearing. In light of that deficiency, the court will not review those documents to ascertain the applicability of the work-product doctrine in any subsequent in camera review.

16

Case No.: 11-2509 LHK (PSG)
ORDER