```
1                  UNITED STATES DISTRICT COURT

2                NORTHERN DISTRICT OF CALIFORNIA

3                      SAN JOSE DIVISION

4

5

     IN RE: HIGH-TECH EMPLOYEE        )  C-11-02509 LHK
6    ANTITRUST LITIGATION,            )
                                      )  SAN JOSE, CALIFORNIA
7                                     )
                                      )  MARCH 13, 2013
8    _____    )
                                      )  PAGES 1-80
9    THIS DOCUMENT RELATES TO:        )
     ALL ACTIONS                      )
10   _____    )

11

12                 TRANSCRIPT OF PROCEEDINGS
              BEFORE THE HONORABLE LUCY H. KOH
13               UNITED STATES DISTRICT JUDGE

14   A P P E A R A N C E S:

15   FOR THE PLAINTIFFS:   JOSEPH SAVERI LAW FIRM
                           BY:  JOSEPH SAVERI
16                              LISA J. LEEBOVE
                                JAMES G. DALLAL
17                         255 CALIFORNIA STREET, SUITE 450
                           SAN FRANCISCO, CALIFORNIA  94111
18
                           LIEFF, CABRASER,
19                         HEIMANN & BERNSTEIN
                           BY:   KELLY M. DERMODY
20                               BRENDAN P. GLACKIN
                                 ANNE B. SHAVER
21                         275 BATTERY STREET, 30TH FLOOR
                           SAN FRANCISCO, CALIFORNIA  94111
22
                        APPEARANCES CONTINUED ON NEXT PAGE
23
     OFFICIAL COURT REPORTER:    LEE-ANNE SHORTRIDGE, CSR, CRR
24                               CERTIFICATE NUMBER 9595

25           PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY
                 TRANSCRIPT PRODUCED WITH COMPUTER
```

```
1

2        APPEARANCES (CONTINUED)

3

4        FOR DEFENDANT            O'MELVENY & MYERS
         APPLE:                   BY:   GEORGE A. RILEY
5                                       MICHAEL F. TUBACH
                                        CHRISTINA J. BROWN
6                                 TWO EMBARCADERO CENTER
                                  28TH FLOOR
7                                 SAN FRANCISCO, CALIFORNIA  94111

8        FOR DEFENDANT            KEKER & VAN NEST
         LUCASFILM:               BY:   EUGENE M. PAIGE
9                                       CODY S. HARRIS
                                  633 BATTERY STREET
10                                SAN FRANCISCO, CALIFORNIA  94111

11

         FOR DEFENDANT            MAYER BROWN
12       GOOGLE:                  BY:   EDWARD D. JOHNSON
                                        ERIC EVANS
13                                TWO PALO ALTO SQUARE, SUITE 300
                                  PALO ALTO, CALIFORNIA  94306

14

15       FOR DEFENDANTS           JONES DAY
         ADOBE AND INTUIT:        BY:   ROBERT A. MITTELSTAEDT
16                                      CATHERINE ZENG
                                  555 CALIFORNIA STREET
17                                26TH FLOOR
                                  SAN FRANCISCO, CALIFORNIA  94104

18

19       FOR DEFENDANT            BINGHAM MCCUTCHEN
         INTEL:                   BY:   DONN P. PICKETT
20                                1117 S. CALIFORNIA AVENUE
                                  PALO ALTO, CALIFORNIA  94304

21

         FOR DEFENDANT            COVINGTON & BURLING
22       PIXAR:                   BY:   EMILY J. HENN
                                        JOHN NIELDS
23                                333 TWIN DOLPHIN DRIVE, SUITE 700
                                  REDWOOD SHORES, CALIFORNIA  94065

24

25
```

```
1     SAN JOSE, CALIFORNIA                    MARCH 13, 2013

2                       P R O C E E D I N G S

3          (COURT CONVENED AND THE FOLLOWING PROCEEDINGS WERE HELD:)

4              THE CLERK:  CALLING CASE NUMBER C-11-02509 LHK, IN

5     RE: HIGH-TECH EMPLOYEE ANTITRUST LITIGATION.

6              MR. SAVERI:  GOOD AFTERNOON, YOUR HONOR.

7     JOSEPH SAVERI, JOSEPH SAVERI LAW FIRM ON BEHALF OF THE

8     PLAINTIFFS.

9              MS. DERMODY:  GOOD AFTERNOON, YOUR HONOR.

10    KELLY DERMODY, LIEF CABRASER, FOR THE PLAINTIFFS.

11             THE COURT:  OKAY.  GOOD AFTERNOON.

12             MR. MITTELSTAEDT:  YOUR HONOR, BOB MITTELSTAEDT AND

13    CATE ZENG FOR ADOBE AND INTUIT.

14             THE COURT:  AND THAT'S T-S-E-N-G?

15             MS. ZENG:  Z-E-N-G.

16             THE COURT:  OH, Z-E-N-G, OKAY.  ALL RIGHT.  THANK

17    YOU.

18             MS. HENN:  GOOD AFTERNOON, YOUR HONOR.  EMILY HENN

19    FROM COVINGTON & BURLING FOR PIXAR, WITH MY COLLEAGUE,

20    JOHN NIELDS, WHOSE MOTION FOR PRO HAC VICE IS PENDING.

21             THE COURT:  OKAY.  AND I'M SORRY.  CAN YOU STATE THE

22    NAME AGAIN OF THE SECOND ATTORNEY THAT IS --

23             MS. HENN:  JOHN NIELDS, N-I-E-L-D-S.

24             THE COURT:  N-I-E-L-D-S.  ALL RIGHT.  THANK YOU.

25        I'M SORRY.  WE'LL TAKE CARE OF THE PRO HAC VICE.
```

```
 1              MR. NIELDS:  THANK YOU, YOUR HONOR.

 2              MR. PAIGE:  GOOD AFTERNOON YOUR HONOR.  EUGENE PAIGE

 3       ON BEHALF OF KEKER & VAN NEST ON BEHALF OF LUCASFILM.  WITH ME

 4       IS MY COLLEAGUE, CODY HARRIS FROM KEKER & VAN NEST.

 5              MR. PICKETT:  HELLO.  DONN PICKET ON BEHALF OF INTEL.

 6       GOOD AFTERNOON, YOUR HONOR.

 7              THE COURT:  OKAY.  GIVE ME ONE SECOND.

 8          OKAY.  THANK YOU.

 9              MR. JOHNSON:  GOOD AFTERNOON, YOUR HONOR.

10       WARD JOHNSON HERE FOR GOOGLE WITH MY COLLEAGUE, ERIC EVANS.

11              THE COURT:  ERIC EVANS, OKAY, THANK YOU.

12              MR. RILEY:  GOOD AFTERNOON, YOUR HONOR.  GEORGE RILEY

13       FOR APPLE.  I'M JOINED BY MY COLLEAGUES CHRISTINA BROWN AND

14       MICHAEL TUBACH.

15              THE COURT:  OKAY.  GOOD AFTERNOON.

16              MS. DERMODY:  AND YOUR HONOR, THERE ARE MORE

17       APPEARANCES FOR PLAINTIFFS.

18              THE COURT:  OKAY.

19              MS. DERMODY:  SO FROM MY FIRM, BRENDAN GLACKIN AND

20       ANNE SHAVER, AND FROM MR. SAVERI'S FIRM, LISA LEEBOVE AND

21       JAMES DALLAL.

22              THE COURT:  AND THE LAST NAME IS SPELLED?  I'M SORRY,

23       BOTH OF THEM.  LISA?

24              MS. DERMODY:  LEEBOVE, L-E-E-B-O-V-E.

25              THE COURT:  OKAY.  THANK YOU.
```

```
 1            MS. DERMODY:  AND DALLAL, D-A-L-L-A-L.

 2            THE COURT:  AND I'M SORRY.  WHAT IS MR. DALLAL'S

 3   FIRST NAME?

 4            MS. DERMODY:  JAMES.

 5            THE COURT:  JAMES, OKAY.

 6            MS. DERMODY:  THANK YOU, YOUR HONOR.

 7            THE COURT:  ALL RIGHT.  THANK YOU.

 8        ALL RIGHT.  SO WE ARE CURRENTLY SET TO HAVE A CLOSE OF FACT

 9   DISCOVERY ON MARCH 29TH.

10        IS THAT PROCEEDING AS PLANNED?

11            MR. MITTELSTAEDT:  YES, YOUR HONOR.

12            MS. DERMODY:  YES FROM PLAINTIFFS AS WELL, YOUR

13   HONOR.

14            MR. SAVERI:  YES, YOUR HONOR.

15            THE COURT:  OKAY.  ALL RIGHT.

16        WHAT -- HOW -- I APOLOGIZE I HAVEN'T ISSUED MY ORDER YET,

17   BUT I'M HOPING TO DO SO SOON, AND I'M WONDERING IF IT MAKES

18   SENSE FOR US TO HAVE ANOTHER CASE MANAGEMENT CONFERENCE AFTER

19   THAT TO SORT OF TALK ABOUT WHERE WE GO FROM HERE.  I WOULD LIKE

20   TO DO THAT IN EARLY APRIL.

21            MR. SAVERI:  I'M SORRY.  YOU SAID EARLY APRIL?

22            THE COURT:  EARLY APRIL, PLEASE.

23            MR. MITTELSTAEDT:  YOUR HONOR, I'M GOING TO BE GONE

24   FROM APRIL 9TH UNTIL THE END OF THE MONTH.  I'M NOT

25   INDISPENSABLE, BUT IF WE COULD DO THAT BEFORE APRIL 9TH?
```

```
1              THE COURT:  I HAVE THE 1ST, 2ND AND 8TH AVAILABLE.

2        I THINK YOU'RE GOING TO BE IN THE FOG OF WAR THROUGH

3    MARCH 29TH, SO WHEN THINGS KIND OF CLEAR OUT, I DON'T KNOW IF

4    YOU NEED SOME TIME TO DIGEST WHAT HAS HAPPENED.

5        BUT I -- DO ANY OF THOSE DATES WORK, 1ST, 2ND, OR 8TH?

6              MR. MITTELSTAEDT:  THE 1ST WOULD BE PREFERABLE FROM

7    MY STANDPOINT.

8              MR. SAVERI:  THE 1ST IS THE MONDAY AFTER --

9              THE COURT:  IT'S THE MONDAY RIGHT AFTER CLOSE.

10             MR. SAVERI:  -- EASTER, SO THE 2ND WOULD BE BETTER

11   FOR ME.

12             MR. MITTELSTAEDT:  THE 2ND IS FINE.

13             MS. DERMODY:  THE 2ND IS FINE, YOUR HONOR.  YES,

14   THANK YOU.

15             THE COURT:  THAT WORKS FOR EVERYBODY?  OKAY.  THANK

16   YOU.

17             THE CLERK:  WHAT TIME?

18             THE COURT:  AH, OKAY.  WELL, THAT WILL BE SPECIALLY

19   SET, SO IF YOU HAVE A PREFERENCE FOR WHEN YOU WOULD LIKE TO GET

20   TOGETHER -- WHAT WOULD YOU LIKE?

21             MR. SAVERI:  THIS -- THE AFTERNOON IS BETTER --

22             THE COURT:  THAT'S BETTER?

23             MR. SAVERI:  -- TO COME DOWN FROM THE CITY.

24             MR. MITTELSTAEDT:  TRAFFIC-WISE, YES.  2:00 O'CLOCK

25   WOULD BE FINE.
```

1          MS. DERMODY:  2:00 O'CLOCK, YES.

2          THE COURT:  OKAY.  LET'S SAY 2:00 O'CLOCK.

3      AND THEN WHEN -- ASSUMING THAT THE ORDER IS ISSUED IN THE

4   NEXT, SAY, TWO WEEKS AND YOU CLOSE DISCOVERY ON THE 29TH, WHEN

5   SHOULD YOU FILE A -- I MEAN, THERE ARE A COUPLE OF WAYS THAT

6   THIS COULD PROCEED.

7      I HAVE NOT DECIDED WHAT I'M GOING TO DO YET, BUT THERE IS A

8   POSSIBILITY THAT I MAY DENY CLASS CERT BUT GIVE LEAVE TO AMEND,

9   WHICH MEANS WE WOULD NEED TO SCHEDULE ANOTHER HEARING, AND I

10  WOULD WANT TO DO IT ON A FAIRLY EXPEDITED BASIS.

11     SO -- AND THEN WE'D NEED TO GET YOUR INPUT ON WHAT THAT

12  MEANS FOR THE REST OF THE CASE SCHEDULE.

13     WHEN WOULD YOU BE ABLE TO -- I KNOW IT DEPENDS ON WHEN THE

14  ORDER IS ISSUED.  WHEN WOULD YOU BE ABLE TO ASSESS -- I MEAN, I

15  HAVE SOME DATES THAT I'M ALREADY THINKING ABOUT IF, IN FACT,

16  THAT'S WHAT HAPPENS, WHICH I'M NOT COMMITTING TO BECAUSE I

17  DON'T KNOW YET.

18          MR. MITTELSTAEDT:  YOUR HONOR, I WOULD SAY THAT WE

19  COULD PROBABLY CAUCUS AMONG OURSELVES AND RESPOND WITHIN THREE

20  TO FIVE DAYS.  IF YOUR HONOR WOULD LIKE, WE COULD SIT DOWN WITH

21  THE OTHER SIDE AND TRY AND WORK OUT AS MUCH OF A SCHEDULE AS WE

22  COULD BASED ON WHATEVER YOUR ORDER IS.

23          MR. SAVERI:  MY SENSE IS THAT ONCE WE HAVE AN ORDER,

24  WE WOULD BE READY PRETTY QUICKLY TO DIGEST IT AND FIGURE OUT

25  WHAT THE NEXT STEPS ARE.

1        THE COURT:  UM-HUM.

2        MR. SAVERI:  SO I ACTUALLY THINK THAT APRIL 2 IS A

3    GOOD DATE, AND SO WE SHOULD BE PREPARED TO ADDRESS WHATEVER WE

4    NEED TO ADDRESS AT THAT HEARING, INCLUDING THE REST OF THE

5    SCHEDULE FOR THE CASE.

6        THE COURT:  WELL, I'M HOPING THAT YOU COULD FILE

7    SOMETHING IN ADVANCE SO THEN I CAN GO BACK AND LOOK AT, YOU

8    KNOW, ALL THE OTHER CASES THAT ARE SCHEDULED FOR TRIAL AND FOR

9    HEARINGS TO MAKE SURE THAT THE DATES THAT ARE CONVENIENT FOR

10    YOU ALSO WORK JUST FOR WHAT'S ALREADY BEEN SCHEDULED.

11        MR. MITTELSTAEDT:  YOUR HONOR, WOULD IT WORK TO SAY

12    THAT WE WILL FILE SOMETHING, A JOINT PAPER IN ADVANCE OF THE

13    APRIL 2ND HEARING AS FAR IN ADVANCE AS POSSIBLE BASED ON WHEN

14    WE GET THE ORDER --

15        THE COURT:  YEAH.

16        MR. MITTELSTAEDT:  -- AND HOW LONG IT TAKES US TO

17    MEET AND CONFER?  BUT WE'LL MAKE AN EFFORT TO DO IT AS FAR IN

18    ADVANCE AS POSSIBLE.

19        THE COURT:  NOW, I WANTED TO GIVE YOU SOME -- I MEAN,

20    I DON'T KNOW YET, BUT I WANTED TO GIVE YOU JUST SOME ADVANCE

21    NOTICE IN CASE YOU'RE PLANNING, YOU NEED -- I WANT THIS DONE

22    VERY QUICKLY, SO I WANT YOU TO ALREADY START PLANNING FOR THIS.

23        ONE POSSIBILITY THAT I THROW OUT IS THAT THERE BE AN

24    AMENDED REPORT BY THE PLAINTIFFS ON APRIL 19TH; OPENING BRIEF

25    MAY 3RD; REBUTTAL REPORT FROM THE DEFENDANTS MAY 10TH;

```
1    OPPOSITION MAY 24TH; REPLY JUNE 7TH; AND A HEARING ON

2    JUNE 27TH.  WOULD THAT WORK?

3              MS. DERMODY:  YOUR HONOR, COULD YOU REPEAT THAT?  I'M

4    SORRY.

5              MR. MITTELSTAEDT:  YEAH.

6              MR. GLACKIN:  WE TRIED.

7              THE COURT:  AND I'M HESITANT TO EVEN DO THIS BECAUSE,

8    AS I SAID, I HAVE NOT MADE A DECISION.

9         BUT BECAUSE -- IF I DO GO THIS ROUTE, I WANT A FAIRLY QUICK

10   TURN AROUND, SO I THINK I NEED TO GIVE YOU AS MUCH ADVANCED

11   NOTICE AS POSSIBLE FOR EVERYONE.

12        SO IF WE DO DO THIS, IT WOULD BE AN AMENDED REPORT, I

13   ASSUME FROM DR. LEAMER, APRIL 19TH; AN OPENING BRIEF FROM THE

14   PLAINTIFFS MAY 3RD; A REBUTTAL REPORT FROM DR. MURPHY, I

15   ASSUME, MAY 10TH; DEFENDANTS' OPPOSITION MAY 24TH; THE REPLY

16   JUNE 7TH; AND THE HEARING ON JUNE 27TH AT 1:30.

17        DO YOU NEED ME TO REPEAT THAT?

18              MS. DERMODY:  NO.

19              MR. MITTELSTAEDT:  I THINK WE'VE GOT IT NOW.

20              MS. DERMODY:  THANK YOU, YOUR HONOR.

21              THE COURT:  OKAY.  SO IF WE GO THAT ROUTE, THEN I

22   ASSUME YOU'D WANT TO HAVE EXPERT DISCOVERY AFTER AN ORDER;

23   CORRECT?  I'M JUST TRYING TO GET A SENSE OF MANAGING THIS CASE.

24              MR. MITTELSTAEDT:  YES.

25              THE COURT:  AND IT'S SOMEWHAT PREMATURE TO EVEN DO
```

```
 1      THIS SINCE I HAVEN'T MADE A FINAL DECISION ON THE ORDER, BUT I

 2      THINK IT WOULD STILL BE HELPFUL TO GIVE YOU ALL NOTICE --

 3              MR. MITTELSTAEDT:  YES.

 4              THE COURT:  -- TO BE ABLE TO PLAN.  WHAT WOULD YOU

 5      NEED?

 6              MR. MITTELSTAEDT:  I THINK THAT SCHEDULE IS WORKABLE.

 7       AND THEN I THINK WE WOULD WANT TO TAKE THE PLAINTIFFS'

 8      DEPOSITION, AND THEY WOULD WANT TO TAKE OUR DEPOSITION OF

 9      EXPERTS, AND I THINK WE CAN WORK THAT OUT.

10              MS. DERMODY:  AND YOUR HONOR, I WOULD SAY THAT ALL OF

11      THIS IS CONTINGENT ON THE EXPERTS' AVAILABILITY DURING THOSE

12      EXACT TIME PERIODS AND WE WOULD JUST NEED TO CONFIRM THAT,

13      WHICH WE JUST DON'T KNOW RIGHT NOW.

14              THE COURT:  OKAY.  SO WHEN YOU MENTIONED THE EXPERTS'

15      DEPOSITIONS, WOULD IT FIT WITHIN THE SCHEDULE I'VE JUST

16      PROPOSED?  BECAUSE I'M ASSUMING --

17              MR. MITTELSTAEDT:  YES.

18              THE COURT:  OKAY.  ALL RIGHT.  SO YOU WANT TO BE ABLE

19      TO INCORPORATE THAT INTO YOUR BRIEFING?

20              MR. MITTELSTAEDT:  YES.

21              THE COURT:  OKAY.  ALL RIGHT.

22       SO THEN IF -- HOW MUCH TIME WOULD YOU NEED AND WOULD WE

23      EVEN NEED MORE EXPERT DISCOVERY AFTER AN ORDER ON CLASS CERT?

24              MR. SAVERI:  WELL, WE ARE GOING TO HAVE EXPERTS THAT

25      ARE GOING TO BE DISCLOSED TO TESTIFY AT TRIAL.
```

1           MR. GLACKIN:  YEAH.

2           MR. SAVERI:  AND THERE MAY BE ADDITIONAL EXPERTS

3   BEYOND THE ECONOMISTS, SO THERE WILL HAVE TO BE -- AND I THINK

4   THAT'S WHAT WE WERE CONTEMPLATING RIGHT NOW IS ORGANIZING -- IN

5   FACT, WE'D HAD SOME DISCUSSIONS ABOUT GETTING OURSELVES

6   ORGANIZED FOR THAT.

7        FRANKLY, I WOULD NOT WANT TO KNOCK THAT OFF TRACK IN A

8   SUBSTANTIAL WAY BECAUSE WE ACTUALLY HAVE MADE SOME PROGRESS ON

9   AGREEMENT FOR A SCHEDULE FOR KIND OF THE MERITS EXPERTS FOR

10  TRIAL.

11          MS. DERMODY:  THAT WOULDN'T AFFECT THE TRIAL SCHEDULE

12  AT TRIAL UNDER THE CURRENT PROPOSAL.

13          THE COURT:  RIGHT.  BUT I ASSUME IF WE GO THIS ROUTE

14  OF HAVING ANOTHER ROUND, THAT'S GOING TO DELAY EVERYTHING A

15  BIT.

16          MS. DERMODY:  THAT'S GOING TO AFFECT IT.

17          THE COURT:  OKAY.  SO THERE ARE EXPERTS THAT YOU HAVE

18  IN MIND THAT DO NOT IMPLICATE CLASS CERT?

19          MR. SAVERI:  CORRECT, YOUR HONOR.

20          THE COURT:  I SEE.  SO COULD WE KEEP -- RIGHT NOW

21  IT'S ON A SOMEWHAT CONDENSED, WHAT, IT LOOKS LIKE A SIX WEEK

22  SCHEDULE.  COULD WE KEEP THAT?

23          MR. SAVERI:  I THINK SO, YOUR HONOR.

24          THE COURT:  NOW, I KNOW THAT YOU ALL, IN YOUR JOINT

25  CASE MANAGEMENT STATEMENT, REQUESTED A -- YOU REQUESTED A

```
1    REBUTTAL REPORT.  DO YOU STILL NEED THAT IF WE'RE GOING TO
2    HAVE, YOU KNOW, ESSENTIALLY AMENDED REPORTS FOR CLASS CERT?  DO
3    YOU STILL NEED THAT, OR NOT?
4            MS. DERMODY:  YES.
5            MR. SAVERI:  I BELIEVE WE DO, AND WE'VE REACHED -- WE
6    TALKED ABOUT THIS AND I GUESS WE WERE PREPARED TO TELL -- TO
7    ADVISE YOU OF AN AGREEMENT WE HAD ACTUALLY REACHED.
8            THE COURT:  OH, OKAY.  WHAT IS THAT?
9            MR. MITTELSTAEDT:  THE AGREEMENT WE'VE REACHED IS
10   THAT -- AND THIS WAS BASED ON THE EXPERT DISCLOSURE DATES IN
11   THE EXISTING CASE MANAGEMENT ORDER.
12           THE COURT:  OKAY.
13           MR. MITTELSTAEDT:  AND SO WHAT WE'VE AGREED TO IS
14   THAT THE PLAINTIFFS' INITIAL REPORTS, AS IN THE CASE MANAGEMENT
15   ORDER, WOULD BE APRIL 11TH STILL; AND THE DEFENDANTS' REPORTS
16   WOULD BE DUE MAY 2ND.
17           THE COURT:  OKAY.
18           MR. MITTELSTAEDT:  AND THEN THE PLAINTIFFS' -- WE'RE
19   CALLING THEM REPLY, SOME PEOPLE CALL THEM REBUTTAL -- BUT THE
20   PLAINTIFFS' NEXT ROUND WOULD BE MAY 16TH.
21           THE COURT:  OKAY.
22           MR. MITTELSTAEDT:  AND THEN WE WOULD NOT CHANGE THE
23   EXISTING DISCOVERY CUT OFF, EXPERT DISCOVERY CUT OFF OF
24   MAY 23RD.
25           THE COURT:  OKAY.  SO YOU THINK YOU CAN TAKE ALL THE
```

1    DEPOSITIONS IN A WEEK?

2              MR. MITTELSTAEDT:  WELL, THAT WOULD JUST BE THE

3    DEPOSITIONS OF ANY REBUTTAL OR, YOU KNOW, LAST ROUND EXPERTS.

4        AND SO THE IDEA WAS THAT IF WE WERE TO FILE OUR EXPERT

5    REPORTS ON MAY 2ND, THE PLAINTIFFS WOULD BE DEPOSING THOSE

6    EXPERTS IN THE TWO WEEKS FROM MAY 2ND TO MAY 16TH.

7              THE COURT:  I SEE.  SO YOU DON'T ENVISION HAVING

8    REBUTTAL EXPERT REPORTS ON EVERY EXPERT?

9              MR. GLACKIN:  NO.

10             MR. SAVERI:  CORRECT.

11             THE COURT:  I SEE.  HOW MANY EXPERTS ARE THERE GOING

12   TO BE TOTAL?

13             MR. MITTELSTAEDT:  WE ARE WORKING VERY HARD TO KEEP

14   THE NUMBER DOWN --

15             THE COURT:  UM-HUM.

16             MR. MITTELSTAEDT:  -- RECOGNIZING THIS IS A SEVEN

17   DEFENDANT CASE ALLEGING A CONSPIRACY.

18             THE COURT:  UM-HUM.

19             MR. MITTELSTAEDT:  AND PART OF OUR DETERMINATION IS

20   GOING TO BE BASED ON WHAT THE PLAINTIFFS' EXPERTS SAY AND, YOU

21   KNOW, TO WHAT EXTENT THEY IDENTIFY, OR THEIR REPORTS ARE BASED

22   ON -- OR ADDRESSED TO INDIVIDUAL DEFENDANTS.

23       AT THAT POINT DEFENDANTS WILL DECIDE WHETHER WE'LL HAVE A

24   JOINT EXPERT OR SOME SEPARATE EXPERTS.

25             THE COURT:  UM-HUM.

1       MR. MITTELSTAEDT:  I'M HOPING -- IF I CAN SAY THIS,

2   YOUR HONOR, WITHOUT BEING HELD TO IT BECAUSE THERE'S A LOT OF

3   UNCERTAINTY ABOUT WHAT THEIR REPORTS ARE GOING TO BE -- I WOULD

4   HOPE THAT THERE WOULD BE SOMETHING IN THE RANGE OF THREE TO

5   FIVE EXPERTS.

6       THE COURT:  OKAY.  AND WHAT ARE THE TOPICS?

7       MR. MITTELSTAEDT:  THE TOPICS, IN PART, WOULD BE

8   REBUTTAL OR REPLY TO WHATEVER THE PLAINTIFFS' EXPERTS SAY, BUT

9   TYPICALLY IN A CASE LIKE THIS, THERE WOULD BE EXPERTS

10  TESTIFYING ABOUT THE PRO-COMPETITIVE OR ANTICOMPETITIVE EFFECTS

11  OF THE AGREEMENTS THAT ARE ALLEGED, THERE WOULD BE ECONOMIC

12  TESTIMONY ABOUT THAT; THERE WOULD ALSO BE TESTIMONY ABOUT

13  WHETHER THERE WAS ANY IMPACT OF THE ALLEGED VIOLATION ON

14  COMPENSATION; AND THEN THERE WOULD BE TESTIMONY ABOUT THE

15  AMOUNT OF DAMAGES, IF THERE WERE ANY DAMAGES.

16      MR. SAVERI:  SO I WOULD THINK --

17      THE COURT:  OKAY.  NOW, THE IMPACT -- I MEAN,

18  OBVIOUSLY THIS IS AN ISSUE FOR CLASS CERT.  YOU'RE NOT

19  INTENDING TO HAVE ANY OF THAT FOR CLASS CERT?

20      MR. MITTELSTAEDT:  WELL, I THINK THAT WAS REALLY THE

21  HEART OF THE EXPERT REPORTS ON CLASS CERT.

22      THE COURT:  UM-HUM.

23      MR. MITTELSTAEDT:  AND IT MAY WELL BE THAT,

24  ESPECIALLY IF WE HAVE ANOTHER ROUND OF THIS --

25      THE COURT:  UM-HUM.

1          MR. MITTELSTAEDT:  -- THAT THE, LET ME CALL IT MERIT

2    EXPERT CYCLE, WE'LL JUST ADOPT WHAT WAS DONE IN THE ROUND THAT

3    YOUR HONOR IS ENVISIONING.

4        THE COMPLICATION HERE, YOUR HONOR, IF I MAY JUST SUGGEST

5    THIS --

6          THE COURT:  YES.

7          MR. MITTELSTAEDT:  -- IS, YOU KNOW, THE WAY -- I

8    THINK IT MAKES SENSE TO HAVE THE MERITS EXPERTS, THE ONES I'VE

9    DESCRIBED, GO AFTER A DECISION ON THE SCOPE OF THE CLASS IF

10   THERE IS ANY CLASS.

11       IT WOULD BE -- I MEAN, THE MERITS EXPERTS ARE GOING TO

12   ADDRESS ISSUES THAT ARE GOING TO BE DEPENDENT ON THE SIZE OF

13   THE CLASS, IF THERE IS A CLASS.

14         THE COURT:  UM-HUM.

15         MR. MITTELSTAEDT:  THE IMPACT IS GOING TO BE THE SAME

16   THING.

17       CERTAINLY DAMAGES IS GOING TO BE AFFECTED BY THE NATURE OF

18   THE CLASS, IF THERE IS A CLASS.

19       AND SO IT SEEMS -- I THINK THE WAY THAT YOUR HONOR IS

20   ENVISIONING THIS, WITH A -- IF WE GO HERE, THAT THERE'S ANOTHER

21   ROUND OF EXPERT REPORTS, I THINK THAT WILL SPEED UP AND MAYBE

22   REMOVE THE NEED FOR SOME EXPERT REPORTS.  THAT'LL BE TAKEN CARE

23   OF, YOU KNOW, IN THE ROUND THAT YOUR HONOR IS TALKING ABOUT.

24         THE COURT:  UM-HUM.

25         MR. MITTELSTAEDT:  BUT IT SEEMS TO ME THAT THE MERITS

```
 1        ROUND, YOU KNOW, BOTH SIDES I THINK WILL WANT THEIR MERITS

 2        EXPERTS TO BE ADDRESSING WHATEVER THE CLASS IS, IF THERE'S A

 3        CLASS.

 4              THE COURT:  AND YOU DON'T ENVISION ONE ECONOMIST

 5        BEING ABLE TO HANDLE ALL OF THESE DIFFERENT, LIKE, IMPACT OF

 6        THE ALLEGED VIOLATION AND THE AMOUNT OF DAMAGES?  THAT SEEMS

 7        SOMEWHAT INTERRELATED, BUT YOU DON'T ENVISION THE SAME

 8        ECONOMIST BEING ABLE TO DO THAT?

 9              MR. MITTELSTAEDT:  WELL, IT MAY BE.  BUT THE -- THE

10        MERITS REPORT, THE VIOLATION REPORT -- LET ME CALL IT THAT --

11        WILL BE BASED IN PART ON WHAT'S IN THE CASE AND WHAT'S NOT IN

12        THE CASE.

13           THE DAMAGES EXPERT WILL CERTAINLY DEPEND -- I MEAN, THE

14        OPINION BY THE DAMAGES EXPERT, I THINK ON BOTH SIDES, WILL

15        HINGE ON THE SIZE OF THE CLASS, IF THERE'S A CLASS.

16              MR. SAVERI:  YOUR HONOR, I WOULD SAY THAT A LOT OF

17        THE ITEMS THAT MR. MITTELSTAEDT DESCRIBES ARE THINGS THAT WE

18        RECOGNIZE ARE PROPER SUBJECTS OF EXPERT OPINION.

19           WE MAY HAVE ONE ECONOMIST TESTIFY ON THOSE, BUT WE'VE

20        MADE -- I MEAN, AS WE DO IN OTHER CASES, SOMETIMES WE HAVE

21        SOMEONE SEPARATELY BE AN EXPERT TO CALCULATE DAMAGES.

22              THE COURT:  UM-HUM.

23              MR. SAVERI:  THERE IS ALSO THE POSSIBILITY OF

24        OTHER -- YOU KNOW, THERE -- THERE MAY BE MATTERS THAT HAVE TO

25        DO WITH THE COMMERCE OR THE INDUSTRIES THAT HAVE -- THE MARKET
```

1       ITSELF WHICH MAY BE THE PROPER SUBJECT OF EXPERT OPINION.

2           BUT THAT'S GENERALLY WHAT WE, I THINK, WERE THINKING ABOUT.

3           SO I THINK THAT THERE ARE -- AT LEAST FROM MY PERSPECTIVE,

4       THERE'S THE POSSIBILITY, IF NOT THE LIKELIHOOD, THAT THERE WILL

5       BE ONE OR MORE EXPERTS TESTIFYING ON BROADLY DEFINED ECONOMICS

6       ISSUES.

7               THE COURT:  UM-HUM.

8               MR. SAVERI:  AND SO -- BUT NOT REALLY BEYOND THAT.

9           TO ME, YOUR HONOR, I THINK AS I LOOK AT THIS SCHEDULE,

10      THOUGH, IT -- THE ISSUE IS GOING TO BE, WITH THE NOVEMBER 12TH

11      TRIAL DATE, WHEN ARE THE DISPOSITIVE MOTIONS GOING TO BE HEARD?

12      BECAUSE THE EXPERTS -- THE WAY WE HAVE THE CURRENT SCHEDULE,

13      THE EXPERT WORK IS DONE BEFORE THE SUMMARY JUDGMENT MOTIONS ARE

14      GOING TO BE FILED.

15          SO IF THAT CAN MOVE, I THINK THAT CREATES A LITTLE TIME IN

16      THE SCHEDULE.  BUT WE'VE BEEN RELUCTANT TO DO THAT.

17              THE COURT:  LET ME ASK -- MY DREAM IS THAT, AFTER

18      CLASS CERT, THIS CASE RESOLVES ONE WAY OR THE OTHER.

19              MR. SAVERI:  WE ALL GO AWAY LIKE IT WAS A BAD DREAM,

20      YOUR HONOR?

21          (LAUGHTER.)

22              THE COURT:  NO, NO.  I'M JUST SAYING MY DREAM IS

23      RESOLUTION BEFORE THE PAIN OF SUMMARY JUDGMENT AND DAUBERT AND

24      MOTIONS IN LIMINE.  BUT I DON'T KNOW, MAYBE THIS ONE IS -- IT'S

25      TOO BIG FOR THAT TO HAPPEN.

```
 1              MR. SAVERI:  I'M SPEAKING FOR MYSELF.  I'VE HAD A
 2      SIMILAR DREAM.  I DON'T KNOW WHETHER IT'S SOMETHING THAT'S
 3      GOING TO BE SHARED BROADLY IN THIS CROWD.
 4              THE COURT:  I DON'T KNOW.  I'M JUST ASKING.  IS
 5      THIS -- YOU KNOW, A LOT OF -- MOST OF MY OTHER CLASS CASES,
 6      THEY GENERALLY SETTLE AFTER CLASS CERT OR IN THE MIDST OF CLASS
 7      CERT BRIEFING OR RIGHT BEFORE THE FIRST OPENING BRIEF IS DUE.
 8      IS THIS ONE JUST, LIKE, THIS IS A TOO BIG TO FAIL KIND OF
 9      SITUATION, OR WHAT?
10              MR. MITTELSTAEDT:  YOUR HONOR, I'LL TELL YOU, I'M
11      ALWAYS UNCOMFORTABLE TALKING ABOUT SETTLEMENT IN FRONT OF THE
12      TRIAL JUDGE.
13              THE COURT:  OKAY.
14              MR. MITTELSTAEDT:  BUT WHAT I CAN TELL YOU IS, YOU
15      KNOW, IF THERE'S SOME POSSIBILITY -- WE KNOW EACH OTHER WELL
16      ENOUGH.  WE'LL BE TALKING.
17              THE COURT:  UM-HUM.
18              MR. MITTELSTAEDT:  WE'RE NOT GOING TO -- IT MAY BE A
19      CASE THAT IS NOT GOING TO SETTLE, THAT IS IMPOSSIBLE TO SETTLE
20      FOR A WHOLE VARIETY OF REASONS.
21              THE COURT:  OKAY.
22              MR. MITTELSTAEDT:  OR NOT.
23              MS. DERMODY:  I MIGHT SAY, YOUR HONOR, THIS TRIAL
24      MANAGEMENT SCHEDULE DOESN'T HAVE AN ADR DEADLINE IN IT RIGHT
25      NOW, AND IT MIGHT BE USEFUL FOR THE COURT TO SET A TIME FOR THE
```

```
 1        PARTIES TO GET TOGETHER ON SOME SCHEDULE AFTER THE CLASS

 2   CERTIFICATION MOTION HAS BEEN DECIDED.

 3             THE COURT:  AFTER THE ONE I'M GOING TO HOPEFULLY

 4   ISSUE IN A WEEK OR TWO?  OR YOU'RE SAYING --

 5             MS. DERMODY:  UM --

 6             THE COURT:  MAYBE I SHOULD ASK THE DEFENDANTS,

 7   BECAUSE I UNDERSTAND YOU'RE PROBABLY FAIRLY OPEN.

 8        LET ME HEAR FROM THE DEFENDANTS, WOULD YOU BE OPEN AFTER --

 9   ASSUMING -- PARDON ME -- THAT AN ORDER IS ISSUED BEFORE THE END

10   OF THE MONTH, WOULD YOU BE OPEN, AFTER THAT ORDER, TO ATTEMPT

11   AN ADR SESSION?

12             MR. MITTELSTAEDT:  I TRULY WOULD HAVE TO CONFER WITH

13   EVERYBODY ELSE, YOUR HONOR.

14             THE COURT:  CAN I -- I'M GOING TO GIVE YOU SOME TIME.

15   GO AHEAD.

16             MR. MITTELSTAEDT:  OKAY.

17             MR. SAVERI:  COULD WE -- WE'RE GOING TO GO OVER TO

18   OUR SIDE.

19             THE COURT:  DO YOU WANT TO TAKE A -- LET'S JUST

20   TAKE -- WE'VE BEEN GOING, WHAT, ABOUT AN HOUR.  YOU WANT TO

21   TAKE A FIVE OR TEN MINUTE BREAK?

22        I'M JUST TRYING -- THIS IS JUST CASE MANAGEMENT, AND I JUST

23   WANT TO GET SOME SENSE OF WHAT'S GOING TO HAPPEN WITH THIS

24   CASE.  I THINK THIS IS A USEFUL CONVERSATION TO HAVE SO THAT

25   WHEN YOU MEET AND CONFER IN A COUPLE OF WEEKS, YOU'LL HAVE SOME
```

```
1    SENSE OF --

2              MR. SAVERI:  YOUR HONOR, IF IT FITS WITHIN YOUR

3    CALENDAR, MAYBE TAKE A FIVE OR TEN MINUTE RECESS AND THEN WE'LL

4    COME BACK AND THEY'LL HAVE AN OPPORTUNITY TO TALK, OR --

5              MR. MITTELSTAEDT:  YES.

6              THE COURT:  SURE, OKAY.  WHY DON'T WE DO THAT?  LET'S

7    GO AHEAD AND TAKE A TEN MINUTE RECESS.

8         (RECESS FROM 3:06 P.M. UNTIL 3:16 P.M.)

9              THE COURT:  ALL RIGHT.  PLEASE TAKE A SEAT.

10        SO WHAT DID YOU DECIDE?

11             MR. MITTELSTAEDT:  WE ARE IN AGREEMENT, YOUR HONOR,

12   THAT WE WILL, AS SOON AS WE GET YOUR ORDER --

13             THE COURT:  YES.

14             MR. MITTELSTAEDT:  -- MEET AND CONFER ON A SCHEDULE

15   TO -- THAT WILL INCLUDE ADR AS SOON AS POSSIBLE AFTER WE GET

16   YOUR ORDER IN THE NEXT COUPLE OF WEEKS.

17             THE COURT:  OKAY, THANK YOU.

18             MR. MITTELSTAEDT:  AND WE WILL AIM TO DO THE ADR

19   SOMETIME IN APRIL --

20             THE COURT:  THANK YOU.

21             MR. MITTELSTAEDT:  -- TO THE EXTENT POSSIBLE.

22        BUT IN ANY EVENT, BEFORE JUNE 27TH.

23             THE COURT:  OKAY.  THANK YOU.  I APPRECIATE THAT.

24             MR. MITTELSTAEDT:  WE HAVE AGREED THAT THE DATES FOR

25   THE EXPERT -- FOR THE MERITS EXPERT DISCLOSURE --
```

```
 1              THE COURT:  UM-HUM.

 2              MR. MITTELSTAEDT:  -- WILL BE SUBJECT TO NEGOTIATION,

 3     AS WELL AS THE SUBSEQUENT DATES.

 4              THE COURT:  OKAY.

 5              MR. MITTELSTAEDT:  ALTHOUGH THE PLAINTIFFS, AND I

 6     UNDERSTAND THIS, WANT TO LEAVE THE REST OF THOSE DATES IN THE

 7     ORDER NOW SUBJECT TO MEETING AND CONFERRING.

 8              THE COURT:  OKAY.  WELL, LET ME GIVE YOU SOME ROUGH

 9     THOUGHTS ON THE SCHEDULE AND THEN YOU CAN DECIDE SPECIFIC DATES

10     THAT WORK FOR ALL OF YOU.

11         BUT ASSUMING I DO DENY WITH LEAVE TO AMEND WHICH, AGAIN, I

12     HAVE NOT DECIDED, BUT ASSUMING I DO DO THAT AND WE HAVE THE

13     HEARING ON JUNE 27TH, THEN I THINK THAT YOU WOULD GET AN ORDER

14     BY MID-AUGUST, OKAY?

15         SO THEN ASSUMING YOU GET AN ORDER BY MID-AUGUST AND THEN

16     YOU HAVE SIX WEEKS OF EXPERT DISCOVERY, WHICH IS ROUGHLY WHAT

17     YOU HAVE NOW --

18              MR. SAVERI:  RIGHT.

19              THE COURT:  -- THEN IMMEDIATELY AFTER THAT FILE YOUR

20     SUMMARY JUDGMENT MOTIONS.

21         AND I THINK THAT, YOU KNOW, BASED ON THE COMPLEXITY OF THIS

22     CASE, IT MAY MAKE SENSE TO DIVIDE UP AND NOT HAVE DAUBERTS -- I

23     MEAN, ANY SUMMARY JUDGMENT UPON WHICH YOUR -- WHICH IS

24     CONTINGENT UPON A DAUBERT RULING, THEN, YES, IT SHOULD BE

25     DECIDED WITH A SUMMARY JUDGMENT.
```

```
 1          BUT IF THERE ARE OTHERS, THEN I WOULD PREFER TO PUT THAT ON
 2     A -- WE'LL HAVE THAT AT THE PRETRIAL CONFERENCE, JUST BECAUSE I
 3     THINK IN TERMS OF QUANTITY OF WORK, IT WILL BE OVERWHELMING.
 4          MS. DERMODY:  YES, YOUR HONOR.
 5          MR. SAVERI:  SO THE 702'S THAT HAVE SOMETHING TO DO
 6     WITH THE SUMMARY JUDGMENT WOULD BE DEALT WITH AS PART OF THE
 7     SUMMARY JUDGMENT?
 8          THE COURT:  YES.
 9          MR. SAVERI:  AND OTHER ONES WOULD BE TREATED LIKE IN
10     LIMINE MOTIONS?
11          THE COURT:  EXACTLY.
12          MR. SAVERI:  OKAY.
13          THE COURT:  AND THEN I'M GOING TO IMPOSE LIMITS.
14          MR. SAVERI:  LIMITS ON?
15          THE COURT:  EVERYTHING.  PAGE LIMITS, NUMBER OF
16     MOTIONS THAT CAN BE FILED, JUST BECAUSE WE -- YOU KNOW, OUR
17     CHAMBERS CAN'T HANDLE SOMETHING THAT IS, YOU KNOW, TOO VAST.
18          SO I GUESS WE DON'T HAVE TO DECIDE THAT QUESTION NOW, BUT
19     THEN I WOULD ASSUME THAT AFTER EXPERT DISCOVERY, WE'LL HAVE A
20     SUMMARY JUDGMENT AND ANY DAUBERTS UPON WHICH SUMMARY JUDGMENTS
21     ARE CONTINGENT SCHEDULE; AND THEN WE HAVE THE PRETRIAL
22     CONFERENCE TO RULE UPON MOTIONS IN LIMINE AND DAUBERT MOTIONS;
23     AND THEN THE TRIAL DATES.
24          SO MY SENSE IS WE'RE PROBABLY LOOKING AT -- ONCE YOU TACK
25     ALL OF THAT ON, WE'RE MAYBE LOOKING AT, LIKE, APRIL FOR THE
```

1      TRIAL DATE, 2014, OR POSSIBLY EARLIER, BUT -- BUT YOU ALL CAN

2      WORK OUT THE SPECIFIC, THE SPECIFIC DATES.

3              MR. MITTELSTAEDT:  WE WILL DO THAT, YOUR HONOR.

4              THE COURT:  OKAY.  NOW, I WOULD LIKE YOU ALL TO

5      EXPLORE -- I REALLY APPRECIATE THAT YOU'RE WILLING TO DO ADR IN

6      APRIL, BUT IF THAT IS UNSUCCESSFUL, I'M GOING TO ASK THAT YOU

7      DO IT MANY MORE TIMES BEFORE TRIAL, AND I WILL ORDER AT SOME

8      POINT THAT YOUR CEO'S DO IT.

9          NOW, I'M NOT SURE -- FOR THE PLAINTIFFS, I THINK YOU ALL

10     CAN DECIDE BEST WHOM IS MOST APPROPRIATE.

11         BUT IF IT GETS TO THAT POINT, I WILL REQUIRE IT, OKAY?

12             MR. MITTELSTAEDT:  YES.

13             THE COURT:  WHAT ELSE?  WHAT ELSE DO WE NEED TO

14     RESOLVE?

15             MR. MITTELSTAEDT:  I THINK, YOUR HONOR, THIS IS LESS

16     IMPORTANT NOW, BUT WE HAVE ALSO REACHED AGREEMENT ON THE

17     AUTHENTICITY/ADMISSIBILITY ISSUES THAT WERE RAISED IN THE

18     PRETRIAL -- OR IN THE STATUS CONFERENCE STATEMENT.

19         WE'VE AGREED TO A FRAMEWORK TO ADDRESS AND RESOLVE, TO THE

20     EXTENT WE CAN, QUESTIONS ABOUT AUTHENTICITY AND ADMISSIBILITY.

21     SO FOR NOW YOUR HONOR DOES NOT NEED TO WORRY ABOUT THAT.

22             THE COURT:  OKAY.  THANK YOU.

23             MR. SAVERI:  I THINK THAT'S A FAIR AND ACCURATE

24     STATEMENT OF WHERE WE ARE.

25             THE COURT:  OKAY.  NOW, I WILL WANT -- SINCE WE'RE

```
 1      NOW DOWN TO THE LAST THREE WEEKS OF FACT DISCOVERY, I WILL WANT

 2      A JOINT DISCOVERY STATUS REPORT EVERY WEEK.  I THINK THIS JUST

 3      HELPS EVERYONE STAY HONEST AND ON THEIR TOES.

 4              MS. DERMODY:  WOULD THAT BE ON FRIDAY, YOUR HONOR?

 5              THE COURT:  YES, LET'S DO THE DATES RIGHT NOW.

 6          SO I WOULD LIKE ONE, PLEASE, ON MARCH 15TH, MARCH 22, AND

 7      MARCH 29.

 8              MS. DERMODY:  YOUR HONOR, ON BEHALF OF PLAINTIFFS, WE

 9      WANT TO THANK THE COURT FOR THAT CASE MANAGEMENT.  IT HAS

10      REALLY ASSISTED THE PROCESS.

11              THE COURT:  WELL, I MEAN, IF I NEED TO, WE WILL DO

12      THIS EVERY WEEK UNTIL THIS CASE GOES TO TRIAL.  I HOPE THAT'S

13      NOT THE CASE, BUT I WILL DO THAT IF IT'S NECESSARY.

14          I DON'T KNOW IF YOU SAW MY ORDER IN THE, IN THE MDL AGAINST

15      APPLE ON THE PRIVACY, BUT IF THERE'S A LOT OF GAMESMANSHIP, I

16      JUST WANT YOU TO KNOW WHAT I'M GOING TO DO, OKAY?  I DENIED

17      SUMMARY JUDGMENT.  APPLE CANNOT FILE ANOTHER SUMMARY JUDGMENT

18      MOTION UNTIL I'M SATISFIED THAT THEY'VE FULFILLED THEIR

19      DISCOVERY OBLIGATIONS.  OKAY?

20          AND THEN I JUST HAD THE PLAINTIFFS WITHDRAW THEIR MOTION

21      FOR CLASS CERT BECAUSE THE DEFENDANT WAS WITHHOLDING DISCOVERY.

22          SO IF THAT HAPPENS IN THIS CASE, THERE WILL BE SIMILAR

23      CONSEQUENCES.  I'M CONFIDENT IT'S NOT GOING TO HAPPEN IN THIS

24      CASE.

25              BUT IF WE NEED TO, WE ARE GOING TO HAVE WEEKLY STATUS
```

```
 1     REPORTS FOR THE NEXT 14 MONTHS.  I'M HOPING THAT'S NOT THE

 2     CASE.

 3          ALL RIGHT.  LET ME ASK A COUPLE OF QUESTIONS.  OKAY.  NOW,

 4     ONE OF THE ISSUES THAT IS TAKING A LOT OF TIME IN THE ORDER IS

 5     DEALING WITH ALL THESE MOTIONS TO STRIKE THE DECLARATIONS.

 6          NOW, WHAT HAS SINCE HAPPENED WITH MR. BURMEISTER AND

 7     MR. STUBBLEFIELD?  WERE THEY DEPOSED?  WERE THEIR DOCUMENTS

 8     PRODUCED?  WHAT'S THE STATUS ON THAT?  I WOULD LOVE, IF AT ALL

 9     POSSIBLE, IF YOU ALL COULD JUST RESOLVE THIS MOTION TO STRIKE

10     ISSUE.  IS THAT POSSIBLE?

11              MR. RILEY:  YOUR HONOR, GEORGE RILEY FOR APPLE.

12          I BELIEVE IT IS POSSIBLE.  STEVE BURMEISTER'S DEPOSITION IS

13     SET FOR MARCH 15TH, THIS WEEK.  WE HAVE PRODUCED ALL THE

14     DOCUMENTS RESPONSIVE TO THE KEY TERMS SEARCH, SO I THINK WE

15     SHOULD BE ABLE TO RESOLVE THAT.

16              THE COURT:  WHEN WERE THOSE DOCUMENTS PRODUCED?

17              MR. RILEY:  THOSE DOCUMENTS WERE PRODUCED -- THE

18     PRODUCTION WAS COMPLETED ON MARCH THE 8TH.  HE HAD BEEN SUBJECT

19     TO A PRIOR DEPOSITION ON JUNE 27TH, SO THERE HAD BEEN

20     PRODUCTION OF DOCUMENTS RELATED TO THAT FROM HIS FILES BACK IN

21     JUNE OF 2012.

22              THE COURT:  LET ME HEAR FROM THE PLAINTIFFS.  IS

23     THIS -- IS THIS ONE THAT WE CAN TAKE OFF THE TABLE, OR --

24              MR. SAVERI:  YOUR HONOR, WE HAVE MR. -- WE HAVE THE

25     BURMEISTER DEPOSITION SCHEDULED ON THE 15TH, STUBBLEFIELD ON
```

1        THE 18TH.

2            WE DID GET A PRODUCTION OF DOCUMENTS FROM APPLE ON THE 8TH.

3     THERE WERE ABOUT 7200 PAGES OF DOCUMENTS.  I'M -- I TAKE IT

4     FROM WHAT MR. RILEY SAID THAT WITHIN THAT PRODUCTION WE DO HAVE

5     THE DOCUMENTS FROM MR. BURMEISTER NOW, AND THAT FINISHES IT.

6            I DON'T KNOW WHETHER WE'RE GETTING MORE ON STUBBLEFIELD.

7                THE COURT:  LET ME HEAR FROM SOMEONE FROM INTUIT.

8     HAVE MR. STUBBLEFIELD'S DOCUMENTS BEEN PRODUCED OR NOT?

9                MS. ZENG:  THIS IS CATHERINE ZENG.

10           YES, HIS DOCUMENTS WERE PRODUCED I THINK AT LEAST A WEEK

11    AGO.  I CAN'T RECALL THE EXACT DATE.

12           AND WE ALSO PRODUCED THE PRIVILEGE LOG YESTERDAY IN

13    ACCORDANCE WITH THE COURT'S ORDER.

14               MS. DERMODY:  AS FAR AS WE'RE CONCERNED, YOUR HONOR,

15    THINGS HAVE BEEN MOVING ALONG.  I MEAN, IN THE LAST SEVEN DAYS,

16    THERE'S BEEN ABOUT 120,000 PAGES OF PAPER PRODUCED ACROSS, NOT

17    ALL OF THE DEFENDANTS, BUT COLLECTIVELY SEVERAL OF THEM AND

18    WE'RE MOVING ALONG.

19           WE'LL TAKE THOSE DEPOSITIONS AND I THINK YOUR HONOR CAN

20    TAKE THAT ISSUE OFF THE COURT'S PLATE IF THAT WOULD HELP THE

21    COURT BECAUSE WE'RE DOING THE DISCOVERY AND WE'LL UNDERSTAND

22    WHAT THOSE WITNESSES WILL HAVE TO SAY.

23               THE COURT:  OKAY.  WHAT IS EXACTLY COMING OFF THE

24    PLATE, JUST SO I KNOW EXACTLY FOR THE ORDER?  WHAT'S COMING

25    OFF?

```
 1        I MEAN, LET ME ASK, WHY ARE THOSE DOCUMENTS COMING SO LATE?

 2   I MEAN, DISCOVERY IS CLOSING IN 16 DAYS.  WHY ARE THERE THESE

 3   PRODUCTIONS NOW?  AND WHO HAS MORE AND WHY ARE YOU HOLDING OFF

 4   UNTIL NOW?

 5             MR. MITTELSTAEDT:  YOUR HONOR, FOR ADOBE AND INTUIT,

 6   WE HAVE PRODUCED EVERYTHING THAT WE FOUND IN A DILIGENT SEARCH.

 7        WE ARE, TODAY, PRODUCING A COUPLE OF COLLABORATION

 8   AGREEMENTS THAT CAME UP AT A DEPOSITION AND SO WE'VE GONE BACK

 9   AND WE'RE PRODUCING THOSE.

10        AND, YOU KNOW, OTHER THAN THAT, OUR DOCUMENT PRODUCTION IS

11   COMPLETE.

12             THE COURT:  OKAY.  THAT IS FOR ADOBE AND INTUIT?

13             MR. MITTELSTAEDT:  YES.

14             THE COURT:  SO YOU HAVE ONE MORE PRODUCTION, AND WHEN

15   IS THAT GOING TO HAPPEN?

16             MR. MITTELSTAEDT:  I THINK IF NOT TODAY, TOMORROW.

17             THE COURT:  ALL RIGHT.  I'M ORDERING THAT IT HAPPEN

18   TOMORROW, BY TOMORROW, OKAY, MARCH 14TH OF 2013.

19        WHO ELSE HAS MORE DOCUMENTS TO PRODUCE?  LET ME GO DOWN THE

20   LINE.

21        APPLE, WHAT ELSE DO YOU HAVE?

22             MR. RILEY:  YOUR HONOR, WE HAVE TO COMPLETE THE

23   PRODUCTION FROM TWO CUSTODIANS.  WE MET AND CONFERRED WITH

24   PLAINTIFFS AND THEY WANTED ADDITIONAL CUSTODIANS NAMED.  WE

25   NAMED THEM AND WE WILL COMPLETE THAT PRODUCTION BY MARCH 15TH.
```

```
1            THE COURT:  MARCH 15TH, OKAY.  AND THAT'S ALL THAT'S
2       OUTSTANDING?
3            MR. RILEY:  THAT IS ALL THAT IS OUTSTANDING.
4            THE COURT:  OKAY.  ALL RIGHT.  THANK YOU.
5         WHAT ABOUT ANYONE FROM GOOGLE?
6            MR. JOHNSON:  WARD JOHNSON FOR GOOGLE, YOUR HONOR.
7         THERE ARE, I UNDERSTAND, A FEW COLLABORATION AGREEMENTS TO
8       BE PRODUCED.  WE'VE MET WITH PLAINTIFFS PRIOR TO THE CMC
9       HEARING TODAY.  I EXPECT THAT THESE WILL ALL BE PRODUCED BY THE
10      22ND.
11           THE COURT:  WHY SO LATE?
12           MR. JOHNSON:  THERE ARE JUST LOGISTICS, AND THIS IS
13      SOMETHING WE WERE DISCUSSING WITH PLAINTIFFS' COUNSEL.  THERE
14      MAY BE SOME MUTUALLY AGREED UPON REDACTIONS FOR NONRESPONSIVE.
15           THE COURT:  I DON'T UNDERSTAND WHAT THAT MEANS.
16      YOU'RE REDACTING NONRESPONSIVE INFORMATION?
17           MR. JOHNSON:  UM --
18           MS. DERMODY:  WE ARE NOT.  GOOGLE IS, YOUR HONOR.
19           MR. JOHNSON:  WE WOULD BE DOING THAT, YOUR HONOR, FOR
20      ITEMS THAT ARE ESPECIALLY COMMERCIALLY SENSITIVE, HIGHLY
21      NEGOTIATED TERMS OF AN AGREEMENT.  THIS WOULD BE SOMETHING THAT
22      WE WOULD SHOW IN UNREDACTED FORM TO PLAINTIFFS AND COME TO AN
23      AGREEMENT BEFORE PRODUCTION ON HOW IT WOULD BE REDACTED.
24           THE COURT:  AH.  YOU'RE GOING TO PRODUCE THAT
25      EARLIER.
```

1    I GUESS I'M NOT REALLY CLEAR.  YOU HAVE A PROTECTIVE ORDER,

2    SO THE UNREDACTED FORM SHOULD BE PRODUCED.  WHY YOU ARE HOLDING

3    THE UNREDACTED DOCUMENT HOSTAGE UNTIL YOU REACH AGREEMENT ON

4    THE REDACTED FORM?  THAT DOESN'T MAKE SENSE TO ME.

5          MR. JOHNSON:  YOUR HONOR, IT'S NOT A QUESTION OF

6    HOSTAGE, RESPECTFULLY.  IT'S A QUESTION OF ORDERLY PRODUCTION

7    IN WHICH THE INFORMATION IS DISCLOSED PROMPTLY TO THE OTHER

8    SIDE.

9    BUT BEFORE WE PRODUCE THE DOCUMENTS THEMSELVES, YOU KNOW,

10   KIND OF WITH BATES STAMPS, WE'D HAVE AN AGREED UPON REDACTION.

11         THE COURT:  NO, I DON'T AGREE.  DIDN'T YOU READ MY

12   ORDER IN THE IPHONE CASE?  THEY WERE ALSO REDACTING INFORMATION

13   THEY DEEMED IRRELEVANT.  OKAY?  I DON'T THINK THAT'S IN THE

14   POSITION OF THE DEFENDANTS TO MAKE THE ASSESSMENT WORD BY WORD

15   WHAT'S RELEVANT FOR THE PLAINTIFFS' CASE.  SO IT NEEDS TO BE

16   PRODUCED.

17         MR. JOHNSON:  UNDERSTOOD, YOUR HONOR.  WHAT I WAS --

18   AND IF I MAY TRY AND MAKE IT A LITTLE BIT MORE CLEAR?  WHAT

19   WE'RE TALKING ABOUT IS SHOWING THE INFORMATION TO THE

20   PLAINTIFFS IN UNREDACTED FORM.

21         THE COURT:  BUT WHEN IS THAT HAPPENING?  YOU'RE

22   SAYING THAT CANNOT HAPPEN UNTIL MARCH 22ND?  WHY IS THAT?

23         MR. JOHNSON:  WELL, YOUR HONOR, I BELIEVE I SAID

24   COMPLETION BY MARCH 22ND.  I WOULD HOPE THAT THIS CAN BE DONE

25   ON A ROLLING BASIS.  WE'RE TALKING ABOUT MEETING WITH

```
1       MS. DERMODY ON FRIDAY.

2               THE COURT:  I STILL DON'T UNDERSTAND.  PRODUCE IT TO

3       THE PLAINTIFFS AND THEN YOU CAN WORK OUT LATER IF -- I DON'T

4       KNOW WHAT YOU NEED THE REDACTED FORM FOR.  IS THAT IN CASE YOU

5       WANT TO USE IT FOR DEPOSITIONS?  IS THAT IN CASE IT BECOMES A

6       TRIAL EXHIBIT?

7               MR. JOHNSON:  EXACTLY, YOUR HONOR.

8               THE COURT:  OKAY.  THEN WHY NOT HAVE IT PRODUCED IN

9       ITS UNREDACTED FORM TO THE PLAINTIFFS AND THEN YOU CAN ALWAYS

10      AFTER THAT -- I MEAN, WE HAVE DISCOVERY CLOSING IN 16 DAYS.  I

11      DON'T KNOW IF THEY'RE GOING TO NEED THAT DOCUMENT FOR A

12      DEPOSITION THAT MAY BE SCHEDULED.

13          MY UNDERSTANDING WAS, BASED ON EVERYTHING I'VE SEEN, THAT A

14      LOT OF DEPOSITIONS HAVE BEEN SCHEDULED BETWEEN TODAY AND

15      MARCH 29TH.

16              MR. JOHNSON:  YES, YOUR HONOR.

17              THE COURT:  SO --

18              MR. JOHNSON:  AND IF I MAY?  THIS HAS BEEN TAKEN INTO

19      ACCOUNT AND WELL PRIOR TO THE DEPOSITIONS WE WILL SHOW THE

20      DOCUMENTS TO THE PLAINTIFFS, COME TO --

21              THE COURT:  NO, NO.  I'M NOT SATISFIED WITH WHAT I'M

22      HEARING.  YOU'RE GOING TO MAKE A PRODUCTION OF WHATEVER IS

23      OUTSTANDING AND IT NEEDS TO BE DONE BY FRIDAY.  CAN YOU DO

24      THAT?

25              MR. JOHNSON:  YOUR HONOR, IT'S MY --
```

```
 1            THE COURT:  AND AFTER THE FACT, THEN -- I'M SORRY TO
 2   INTERRUPT YOU.  AFTER THE FACT, THEN YOU CAN MEET AND CONFER
 3   AND FIGURE OUT WHAT THE REDACTED FORM IS GOING TO BE FOR
 4   DEPOSITIONS, FOR TRIAL EXHIBITS, FOR WHATEVER.
 5            BUT I DON'T THINK THAT IS THE BASIS, TRYING TO SAY, "I'M
 6   NOT GOING TO PRODUCE THE UNREDACTED FORM TO YOU UNTIL I HAVE A
 7   MEET AND CONFER AND FULL STIPULATION AS TO WHAT THE REDACTED
 8   FORM IS GOING TO LOOK LIKE."
 9            I DON'T THINK THAT'S AN APPROPRIATE BASIS TO WITHHOLD
10   PRODUCTION OF THE DOCUMENT WHEN WE HAVE FACT DISCOVERY CUT OFF
11   IN 16 DAYS.
12            MR. JOHNSON:  YOUR HONOR, I THINK -- I DON'T THINK
13   THAT YOU HAVE HEARD AN OBJECTION FROM THE PLAINTIFF TO THIS, TO
14   DOING THIS.
15            WHAT WE'RE TALKING ABOUT REDACTING ARE THE MOST SENSITIVE
16   KINDS OF INFORMATION, INFORMATION ON MERGERS AND ACQUISITIONS,
17   INFORMATION RELATING TO EXECUTIVE COMP OUTSIDE THE CLASS.
18            I THINK THAT, YOU KNOW -- AND I MADE A SHOWING.  I BROUGHT
19   SOME SAMPLES OF UNREDACTED DOCUMENTS WITH ME, AND THEY ARE
20   HIGHLY SENSITIVE, I BELIEVE MS. DERMODY UNDERSTANDS THAT, AND I
21   THINK WE WERE ON THE SAME PAGE IN WORKING THIS OUT IN A
22   COOPERATIVE WAY.
23            THIS ISN'T SOMETHING WHERE, YOU KNOW, WE'RE WITHHHOLDING OR
24   HOLDING HOSTAGE OR PLAYING GAMES.  WE'RE JUST TRYING TO COME UP
25   WITH AN ORDERLY WAY TO PROTECT, TO THE SATISFACTION OF ALL THE
```

1   PARTIES, SOME OF THE MOST SENSITIVE INFORMATION IN THE CASE.

2           THE COURT:  ALL RIGHT.  I GUESS I'M UNCLEAR.

3       YOU'RE SAYING, "WE ARE GOING TO PRODUCE EVERYTHING IN

4   UNREDACTED FORM TO THE PLAINTIFFS."  CORRECT?

5           MR. JOHNSON:  WE WILL SHOW -- WHAT WE HAD IN MIND WAS

6   A QUICK PEEK, KIND OF WHERE THEY WOULD LOOK AT THE DOCUMENTS,

7   LOOK AT OUR PROPOSED REDACTIONS, AND TO THE EXTENT -- I DON'T

8   ANTICIPATE THERE ARE GOING TO BE ANY DISAGREEMENTS BASED ON OUR

9   CONVERSATION BEFORE THE HEARING TODAY.

10      BUT, YOU KNOW, I THINK THAT --

11          THE COURT:  OH, I SEE.  YOU'RE NOT GOING TO PRODUCE

12  IT.  YOU'RE GOING TO SIT DOWN AND SAY, "TAKE A LOOK AT THIS.  I

13  WANT TO REDACT THIS, THIS, AND THIS.  IS THIS ACCEPTABLE?"

14          MR. JOHNSON:  YES, YOUR HONOR.

15          THE COURT:  AND THEN ONLY AFTER THAT YOU'RE GOING TO

16  PRODUCE IT?

17          MR. JOHNSON:  YES, YOUR HONOR.  BUT WELL IN ADVANCE

18  OF THE DEPOSITIONS.

19          THE COURT:  WHEN ARE THE DEPOSITIONS FOR WHICH THIS

20  COMES UP?

21          MS. DERMODY:  YOUR HONOR, JUST TO MAKE SURE THE

22  RECORD IS CLEAR, THIS ISSUE CAME UP BECAUSE PLAINTIFFS RAISED

23  IT WHEN WE OBSERVED IN THE PRODUCTION, "REDACTION, NOT

24  RESPONSIVE."  THERE WERE A SERIES OF E-MAILS AND MAYBE IN FIVE

25  COLLECTIONS OF THE E-MAILS, THE SAME BOX WOULD BE MISSING, AND

1    THEN IN ONE YOU WOULD SEE WHAT HAD BEEN IN THE BOX AND REALIZE

2    THAT IT WAS RESPONSIVE.

3        SO WE ALERTED GOOGLE THAT THIS WAS A CONCERN OF OURS, THAT

4    THINGS ARE BEING "REDACTED, NOT RESPONSIVE" THAT WERE ACTUALLY

5    QUITE RESPONSIVE.

6        SINCE THAT TIME, GOOGLE HAS SAID TO US, "WE'RE GOING TO GO

7    BACK THROUGH AND REVIEW ALL OF THESE DOCUMENTS."

8        THERE ARE A COUPLE -- I THINK THIS IS WHAT YOU SAID -- VERY

9    FEW THAT ARE VERY CRITICAL, BUSINESS PLANS WITH OTHER COMPANIES

10   NOT IN THE CASE, AND YOU KNOW, WE ARE WILLING, IF IT'S A SMALL

11   NUMBER OF DOCUMENTS, TO HAVE THAT AGREEMENT ON THOSE DOCUMENTS.

12       IF IT'S GOING TO BE A LARGE SCALE NUMBER OF DOCUMENTS AND

13   WE'RE GOING TO BE SPENDING THE NEXT COUPLE OF WEEKS DEALING

14   WITH GOOGLE'S CHOICE TO MARK CERTAIN THINGS NONRESPONSIVE,

15   THAT'LL BE VERY DIFFICULT TO ACCOMMODATE IN A VERY, VERY BUSY

16   SCHEDULE RIGHT NOW.

17       SO WE UNDERSTAND THEIR BUSINESS CONCERN.  WE THINK THAT THE

18   COURT'S PROPOSAL TO PRODUCE IT AND THEN GO BACK AND FIGURE IT

19   OUT WHEN WE ARE DEALING WITH IT IN THE CASE MAKES A LOT OF

20   SENSE GIVEN THE SCHEDULE THAT WE'RE ALL UNDER RIGHT NOW.

21       BUT WE ALSO ARE CONCERNED THAT THERE ARE ACTUALLY OTHER

22   DEFENDANTS IN THE CASE THAT HAVE BEEN MARKING DOCUMENTS

23   "REDACTED, NOT RESPONSIVE."  IT'S NOT JUST GOOGLE -- I DON'T

24   WANT TO SINGLE THEM OUT ALONE HERE IN THAT -- AND THERE MAY BE

25   OTHER ISSUES IN THE PRODUCTION THAT ARE HAPPENING AND WE'LL

```
 1          HAVE TO GO BACK TO DEFENDANTS AND TALK ABOUT THAT.

 2                  THE COURT:  ALL RIGHT.  WHAT'S YOUR EXPLANATION FOR

 3          THE ONE DOCUMENT THAT WAS REDACTED IN FIVE VERSIONS BUT NOT

 4          REDACTED IN THE ONE THAT TURNED OUT TO BE RESPONSIVE?

 5                  MR. JOHNSON:  IT WAS APPARENTLY INCONSISTENT

 6          REDACTIONS BY A REVIEWER, YOUR HONOR, BUT THAT'S WHAT WE'RE

 7          GOING BACK TO LOOK AT.

 8                  THE COURT:  AND YOUR POSITION IS THAT IT WAS STILL

 9          NONRESPONSIVE, EVEN AFTER THE PLAINTIFFS ARE TELLING YOU THEY

10          ACTUALLY COULD USE IT FOR THEIR CASE?

11                  MR. JOHNSON:  NO, YOUR HONOR.  OUR POSITION IS THAT

12          THAT WAS A MISTAKE.  THEY POINTED OUT I THINK ONE OR TWO

13          DOCUMENTS WHERE THEY FELT THAT THERE WAS A MISTAKE AND WE

14          AGREED WITH THEM AND WE AGREED TO GO BACK AND TAKE A LOOK AT

15          ALL THE DOCUMENTS SO DESIGNATED.

16             IT'S ABOUT 700.  THAT'S GOING TO TAKE SOME -- A LITTLE BIT

17          OF TIME TO DO.  THAT'S WHY WE PLANNED ON MEETING INITIALLY ON

18          FRIDAY WHERE WE --

19                  THE COURT:  TO GO OVER 700 DOCUMENTS?

20                  MR. JOHNSON:  NO, YOUR HONOR, TO GO OVER A MUCH

21          SMALLER UNIVERSE, THE VERY FEW -- I DON'T HAVE AN EXACT NUMBER

22          YET, BUT THE VERY FEW MANAGEABLE NUMBER THAT WE WOULD SIT DOWN

23          AND HOPEFULLY SHOW THE OTHER SIDE AND HOPEFULLY ACHIEVE QUICK

24          AGREEMENT ON.

25             I THINK WE HAVE A PROCEDURE IN PLACE AND I WOULD HOPE THE
```

```
 1        COURT WOULD ALLOW US TO CARRY IT OUT.
 2               THE COURT:  SO HOW IS THE PLAINTIFF SUPPOSED TO KNOW
 3        IF THEY SHOULD CHALLENGE YOUR NONRESPONSIVE DESIGNATION?
 4               MR. JOHNSON:  WELL, WHAT I'D ENVISIONED --
 5               THE COURT:  JUST TRUST YOU?
 6               MR. JOHNSON:  NO, YOUR HONOR.  WHAT I'D ENVISIONED
 7        DOING WAS BRINGING A VERSION OF THE DOCUMENT THAT WAS
 8        COMPLETELY UNREDACTED AND A VERSION --
 9               THE COURT:  NO, NO, NO.  YOU SAID YOU'RE GOING TO
10        LOOK OVER YOUR 700 DOCUMENTS FOR WHICH YOU'VE DONE
11        NONRESPONSIVENESS REDACTIONS AND YOU'RE GOING TO MAKE AN
12        ASSESSMENT OF WHICH ONES SHOULD BE PRODUCED TO THE PLAINTIFFS
13        AND THOSE ARE THE ONES YOU'RE GOING TO SHOW THEM AND GET THEIR
14        CONSENT OR AGREEMENT THAT IT SHOULD BE REDACTED.
15               MR. JOHNSON:  RIGHT.  I THINK --
16               THE COURT:  FOR THE VAST MAJORITY OF THE OTHER
17        DOCUMENTS, YOU ARE GOING TO UNILATERALLY MAKE AN ASSESSMENT OF
18        WHETHER IT'S RELEVANT TO THE PLAINTIFFS' CASE OR NOT, AND YOU
19        WANT THE PLAINTIFFS TO JUST TRUST YOU THAT YOUR REDACTION IS
20        APPROPRIATE.
21               MR. JOHNSON:  RESPECTFULLY, YOUR HONOR, NO, THAT'S
22        NOT WHAT I WAS SUGGESTING.
23            WHAT I WAS SUGGESTING IS WE'LL GO BACK THROUGH.  I WOULD
24        EXPECT IN MANY CASES WE WILL SIMPLY PRODUCE, AND PRODUCE IT ON
25        A ROLLING BASIS, UNREDACTED VERSIONS SO THERE'S NO DISPUTE AS
```

```
1    TO THOSE.

2         WITH RESPECT TO THE RELATIVELY FEW THAT WE MAY WISH TO HAVE

3    REDACTED, WE WILL SIT DOWN WITH THOSE RELATIVELY FEW AND SHOW

4    AN UNREDACTED VERSION TO THE PLAINTIFF AND A PROPOSED REDACTED

5    VERSION TO THE PLAINTIFF, AND THEN HOPEFULLY PRODUCE THE

6    REDACTED VERSION.

7         WE'RE NOT TALKING ABOUT, I WOULDN'T EXPECT, VERY MANY

8    DOCUMENTS.  THE PLAINTIFFS AREN'T INTERESTED IN THAT AND

9    NEITHER ARE WE.

10         THE COURT:  IT'S THE SAME POINT.  YOU'RE SAYING,

11    "TRUST ME, PLAINTIFFS, I KNOW WHAT YOU NEED.  I'M LOOKING

12    THROUGH MY DOCUMENTS.  I ONLY THINK THERE ARE A FEW OF MINE

13    THAT YOU NEED.  I WILL SIT DOWN WITH YOU ON THOSE FEW AND GET

14    YOUR AGREEMENT THAT I CAN REDACT THEM.  BUT ON THE OTHER 692,

15    TRUST ME, THEY'RE NOT RESPONSIVE AND MY REDACTIONS ARE

16    APPROPRIATE."

17         MR. JOHNSON:  NO.  NO, YOUR HONOR.  I'M SORRY FOR NOT

18    MAKING MYSELF CLEAR ON THAT POINT.

19         FOR THE, PICK A NUMBER, MAJORITY, AND I WOULD EXPECT IT'S

20    THE VAST MAJORITY, WE'D SIMPLY REMOVE THE REDACTION SO IT'S NOT

21    A QUESTION OF TRUST.

22         FOR THE VERY FEW --

23         THE COURT:  HOW ARE YOU GOING TO IDENTIFY WHICH ONES

24    YOU'RE GOING TO REMOVE THE REDACTIONS?

25         MR. JOHNSON:  BECAUSE THESE DOCUMENTS ARE MARKED
```

```
1      PLAINLY ON THEIR FACE "REDACTED, NOT RESPONSIVE."  IT'S NO

2      SECRET TO ANYBODY IN THIS CASE.  THEY'VE BEEN PRODUCED A YEAR

3      AGO WITH THAT LEGEND ON THEM.  SO THEY'RE AS READILY

4      IDENTIFIABLE TO THE PLAINTIFFS AS THEY ARE TO US.

5          SO IT'S NOT -- THERE'S NO --

6              THE COURT:  NO, NO.  THAT'S NOT MY QUESTION.  YOU'RE

7      SAYING YOU ARE MAKING THE RESPONSIVENESS/RELEVANCE

8      DETERMINATION FOR THE PLAINTIFFS IN THEIR CASE.

9              MR. JOHNSON:  NO, YOUR HONOR.  THAT'S NOT WHAT WE'RE

10     DOING AT ALL.

11         THERE IS A SUBSET OF DOCUMENTS, ROUGHLY 700, IN THIS CASE

12     WHERE THEY WERE PRODUCED WITH A LEGEND ON THE FRONT SAYING

13     "REDACTED, NONRESPONSIVE" OR AN INDICATION OF THAT.

14         AND WE'RE GOING BACK THROUGH THEM --

15             THE COURT:  ALL RIGHT.  FORGET IT.  I'M SORRY.  I --

16     YOU KNOW, I DON'T THINK IT'S APPROPRIATE.  THERE'S NO BASIS FOR

17     THE PLAINTIFFS TO KNOW HOW TO CHALLENGE WHETHER YOUR REDACTION

18     IS REALLY NONRESPONSIVE OR THE INFORMATION IS NONRESPONSIVE.

19     YOU SAID THERE'S ONLY A FEW SET OF DOCUMENTS YOU'RE GOING TO GO

20     AND MEET WITH THEM ON, AND FOR EVERYTHING ELSE, THEY NEED TO

21     TRUST YOUR ASSESSMENT.

22             MR. JOHNSON:  THAT'S THE PART THAT'S NOT CORRECT,

23     YOUR HONOR.  FOR EVERYTHING ELSE, WE'RE JUST GOING TO REMOVE

24     THE REDACTIONS AND GIVE THEM TO THEM.

25             THE COURT:  YOU DIDN'T SAY -- YOU'RE GOING TO DO THAT
```

1    FOR ALL 700 DOCUMENTS?  YOU SAID YOU'RE GOING TO GO THROUGH AND

2    YOU'RE GOING TO MAKE AN ASSESSMENT OF WHAT YOU NOW THINK IS

3    RELEVANT AND WHAT WAS INAPPROPRIATELY REDACTED AND ONLY THOSE

4    ARE YOU GOING TO NOW PRODUCE IN UNREDACTED FORM.

5              MR. JOHNSON:  NO, YOUR HONOR.  WITH RESPECT TO THE

6    DOCUMENTS, THE 700 DOCUMENTS, ROUGHLY 700, WE EXPECT TO GO

7    THROUGH THEM AND REMOVE ALL REDACTIONS WITH RESPECT TO MOST OF

8    THEM, SO THERE'S NO ELEMENT OF TRUST INVOLVED.

9              THE COURT:  BUT YOU'RE NOT SAYING YOU'RE REMOVING ALL

10   THE REDACTIONS.  YOU'RE SAYING MOST.  "TRUST US.  WE'RE GOING

11   TO MAKE THE ASSESSMENT OF WHAT'S RELEVANT OR NOT RELEVANT TO

12   YOUR CASE," AND I THINK THAT'S PROBLEMATIC.

13             MR. JOHNSON:  NO, YOUR HONOR.  RESPECTFULLY --

14             THE COURT:  ALL RIGHT, FINE.  FROM WHAT I'M HEARING

15   NOW, YOU'RE NOT GOING TO DO REDACTING.  YOU'RE GOING TO TURN IT

16   OVER.  SO THAT'S FINE WITH ME.  TURN IT OVER.  ALL 700 SHOULD

17   BE TURNED OVER UNREDACTED.

18      I FIND IT VERY PROBLEMATIC IF THE DEFENDANTS ARE SAYING "WE

19   GET TO DECIDE WHAT IS RELEVANT TO THE PLAINTIFFS' CASE."

20             MR. JOHNSON:  YOUR HONOR, WE WILL NOT BE DOING THAT.

21   WE WILL BE SITTING DOWN WITH THE PLAINTIFF WITH A FEW DOCUMENTS

22   AND SAYING, "WITH RESPECT TO THESE, HERE IS THE UNREDACTED

23   VERSION FOR YOU TO LOOK OVER."

24             THE COURT:  I KNOW.  A FEW OUT OF 700.  SO 692, THE

25   PLAINTIFFS --

```
 1              MR. JOHNSON:  THEY'LL JUST GET PRODUCED.  THERE'S NOT
 2    AN ELEMENT OF TRUST THERE.  THEY'LL GET THE REDACTIONS REMOVED
 3    FOR WHAT I WOULD EXPECT WOULD BE THE VAST MAJORITY.
 4              THE COURT:  ALL RIGHT.  GIVE ME A DATE WHEN YOU'RE
 5    GOING TO PRODUCE UNREDACTED VERSIONS OF THE DOCUMENTS.
 6              MR. JOHNSON:  WE EXPECT TO HAVE THOSE FULLY DONE BY
 7    THE 22ND.
 8              THE COURT:  THAT'S TOO LATE.
 9              MR. JOHNSON:  THAT'S WHAT WE WROTE TO MS. DERMODY
10    LAST NIGHT.
11              THE COURT:  THAT IS TOO LATE.  FACT DISCOVERY CUT OFF
12    IS MARCH 29TH.  I DO NOT WANT THESE PLAINTIFFS COMING BACK AND
13    SAYING, "WE HAVE TO NOW EXTEND FACT DISCOVERY CUT OFF BECAUSE
14    WE JUST GOT ALL THESE DOCUMENTS.  THEY TOOK THE DEPOSITION OF
15    CEO WHATEVER BACK ON MARCH 20TH AND THEREFORE WE'RE GOING TO
16    HAVE A WHOLE OTHER FIGHT THAT CEO NUMBER WHOMEVER HAS TO COME
17    BACK AND GET DEPOSED AGAIN BASED ON THESE DOCUMENTS."
18       DO YOU SEE WHAT I'M SAYING?
19              MR. JOHNSON:  I SEE EXACTLY WHAT YOU'RE SAYING, AND
20    WE'VE TALKED ABOUT THAT VERY THING, WHICH IS WHY -- FOR
21    EXAMPLE, MR. BRIN IS TO BE DEPOSED NEXT WEEK, WHICH IS WHY I
22    WANT TO MEET WITH THE PLAINTIFF ON FRIDAY AND WE'LL SHOW THE,
23    WHATEVER SMALL, YOU KNOW, NUMBER OF DOCUMENTS THAT ARE
24    ESPECIALLY SENSITIVE RELATING TO MR. BRIN SO THAT THEY'VE GOT
25    THOSE IN UNREDACTED FORM AND CAN REVIEW THEM WELL IN ADVANCE OF
```

```
1        THE DEPOSITION.

2              THE COURT:  OKAY.  YOU'RE SAYING THE UNIVERSE IS 700

3    DOCUMENTS.  YOU'RE TELLING ME THAT MAYER BROWN CANNOT PRODUCE

4    700 DOCUMENTS IN THREE DAYS, DOCUMENTS THAT YOU ARE

5    REPRESENTING TO ME THAT YOU'RE GOING TO PRODUCE UNREDACTED?

6              MR. JOHNSON:  YOUR HONOR, I'VE BEEN HEARING FROM OUR

7    VENDOR THAT THIS WILL TAKE SOME TIME.

8        BUT I THINK THAT WE'D LIKE TO HAVE A CHANCE TO GO THROUGH

9    AND MAKE SURE THAT NOTHING IS MISSING AND THAT ALL THE CONCERNS

10   HAVE BEEN ADDRESSED, AND WE THINK WE CAN DO THAT IN AN ORDERLY

11   WAY.  WE WANT TO DO IT ON A ROLLING BASIS, AND WE BELIEVE WE'VE

12   DONE -- WE'VE MADE AN EXPLANATION --

13             THE COURT:  WHAT IS GOING TO BE MISSING?  WHAT IS

14   GOING TO BE MISSING?  YOU SAID YOU NEED TO GO THROUGH THEM AND

15   MAKE SURE NOTHING IS GOING TO BE MISSING.  WHAT'S GOING TO BE

16   MISSING?

17             MR. JOHNSON:  YOUR HONOR, HOPEFULLY NOTHING.  I MEAN,

18   WE HAVEN'T HAD A CHANCE TO GO THROUGH ALL THOSE DOCUMENTS YET.

19        WE JUST REACHED AGREEMENT ON IT AT 11:30 LAST NIGHT.

20             THE COURT:  SO WHAT -- I GUESS I'M NOT CLEAR.  I --

21   WHAT -- OF THE 700 DOCUMENTS THAT YOU HAVE REDACTED INFORMATION

22   BASED ON YOUR VIEW THAT THE INFORMATION IS NOT RELEVANT TO THE

23   PLAINTIFFS' CASE, WHAT IS MISSING?  YOU THINK THERE MIGHT BE

24   PAGES MISSING FROM AN INDIVIDUAL DOCUMENT?

25             MR. JOHNSON:  NO, YOUR HONOR.
```

1           THE COURT:  I'M JUST NOT CLEAR ON WHAT'S THE PROBLEM

2    WITH PRODUCING IT UNREDACTED, WHICH YOU SAY YOU'RE GOING TO DO

3    WITH THE EXCEPTION OF THE SMALL HANDFUL THAT YOU'LL MEET AND

4    CONFER AND GET AGREED UPON REDACTIONS.

5           MR. JOHNSON:  SURE.  THE PROBLEM WITH PRODUCING IT

6    UNREDACTED IS BECAUSE IT HAS DISCUSSION OF THE MOST

7    COMMERCIALLY SENSITIVE INFORMATION, WHAT THE COURT MIGHT THINK

8    OF AS S.E.C. MATERIAL INFORMATION AS AN EXAMPLE, NON-CLASS

9    BOARD COMPENSATION, DISCUSSION OF MERGERS OR ACQUISITIONS,

10   NEWSWORTHY THINGS, YOUR HONOR.

11          AND WITH THE EXCEPTION -- WHAT WE'D LIKE TO DO IS GO

12   THROUGH THE DOCUMENTS AND, IN THE LIMITED CASES WHERE THAT KIND

13   OF INFORMATION APPEARS, REACH -- SHOWING THE UNREDACTED

14   VERSIONS TO THE PLAINTIFF AND REACH AGREEMENT ON REDACTED

15   VERSIONS TO PROTECT THIS MOST SENSITIVE INFORMATION.

16          THE COURT:  SOFTWARE -- SOFTWARE GETS PRODUCED

17   PURSUANT TO THE PROTECTIVE ORDER.  I WOULD THINK THAT MOST OF

18   YOUR COMPANIES THINK THAT'S THE CROWN JEWEL AND THE MOST

19   IMPORTANT INFORMATION TO THE COMPANY.  THAT STILL GETS PRODUCED

20   UNDER THE PROTECTIVE ORDER, SOFTWARE FOR YOUR PRODUCTS.

21          MR. JOHNSON:  RIGHT.  AND TO ACTUALLY WALK AWAY WITH

22   A DISC OR THAT INFORMATION IS DIFFICULT.

23          THESE ARE THE KINDS OF THINGS THAT ONE COULD WHISPER TO

24   SOMEBODY ELSE AND IT WOULD MAKE THE PAPERS.

25          IT WOULDN'T BE, YOU KNOW, MILLIONS AND, YOU KNOW --

```
 1              THE COURT:  WHAT WAS THE RESPONSIVE INFORMATION THAT

 2      HAD BEEN REDACTED AS UNRESPONSIVE?

 3              MS. DERMODY:  THE --

 4              MR. JOHNSON:  YOUR HONOR, I WOULD JUST --

 5              MS. DERMODY:  IT WAS MY DEPOSITION, SO I CAN ANSWER,

 6      UNLESS YOU WANTED TO --

 7              MR. JOHNSON:  NO.  I WOULD JUST ASK COUNSEL TO BE

 8      RESPECTFUL OF THE ATTORNEYS' EYES ONLY DESIGNATION OF THE

 9      MATERIAL WHEN DESCRIBING IT FOR THE COURT.

10              MS. DERMODY:  FAIR ENOUGH.

11              THE COURT:  IN A GENERAL WAY.  I DON'T NEED TO KNOW

12      SPECIFIC DETAILS.

13              MS. DERMODY:  GOOGLE E-MAIL FROM ONE EMPLOYEE TO

14      ANOTHER.  THE RE: LINE IS "COLLABORATIONS WITH OTHER

15      DEFENDANTS," AND THEN CERTAIN PARTS TALKING ABOUT THE

16      COLLABORATION IS, "REDACTED, NOT RESPONSIVE," WHICH SEEMS TO BE

17      AT THE HEART OF MUCH OF WHAT'S GOING ON IN THE CASE RIGHT NOW.

18        DEFENDANTS ARE SAYING THEY HAVE COLLABORATIONS THAT INVOLVE

19      NEEDS ABOUT RECRUITING AND WE'RE SAYING THAT THEY ACTUALLY

20      DIDN'T AND WE NEED TO UNDERSTAND WHAT INTERNAL DOCUMENTS

21      REFLECT ABOUT THOSE THINGS.

22        AND WHEN WE SHOWED THE E-MAIL TO GOOGLE AND SAID, "WHY IS

23      THIS BEING REDACTED?" THERE WAS A DISCUSSION ABOUT WHETHER

24      THERE WERE OTHER REDACTIONS WE WOULDN'T HAVE KNOWN ABOUT AS

25      BEING RESPONSIVE THAT HAD NOT BEEN DISCLOSED, AND THAT'S WHEN
```

1    THIS CONVERSATION STARTED TO ROLL OUT.

2        NOW, UNFORTUNATELY, MOST OF THE DEPOSITIONS INVOLVING

3    GOOGLE HAVE BEEN TAKEN.  THERE ARE A COUPLE MORE OF THE

4    FOUNDERS THAT ARE HAPPENING, BUT A LOT OF THE KEY DECISION

5    MAKERS AND PEOPLE THAT WERE ON E-MAILS, THAT'S ALREADY

6    HAPPENED.

7        TO THE EXTENT THAT WE NEED TO HAVE DEPOSITIONS REOPENED OR

8    CERTAIN QUESTIONS ANSWERED BY INTERROGATORY, I THINK THAT WE

9    CAN WORK THAT OUT WITH GOOGLE.

10       WE DON'T WANT TO INCREASE THE SENSE OF URGENCY AROUND THIS.

11   YOU KNOW, WE WANT TO GET THOSE DOCUMENTS.  WE DON'T WANT TO

12   MAKE THIS A LOT OF MAKEWORK FOR PLAINTIFFS ABOUT

13   RESPONSIVENESS.

14       BUT IF THERE ARE ONLY A COUPLE OF DOCUMENTS THEY WANT US TO

15   REDACT, WE ARE CERTAINLY WILLING TO DO THAT FOR THOSE.

16       IF THERE ARE A LOT OF REDACTIONS AROUND -- AS YOUR HONOR

17   POINTS OUT, GENERAL COMPENSATION INFORMATION OF THE COMPANY,

18   WE'RE UNDER A PROTECTIVE ORDER.  WE'RE NOT GOING TO DISCLOSE

19   THAT TO ANYONE AND WE THINK THAT THAT'S A BURDEN WE SHOULDN'T

20   HAVE TO UNDERTAKE.

21       BUT WE WILL WORK COOPERATIVELY WITH GOOGLE IF IT IS AS

22   LIMITED A BURDEN AS THEY HAVE TOLD US IT WOULD BE.

23            THE COURT:  SO THIS WAS A COLLABORATION ON -- A

24   TECHNICAL COLLABORATION ON, LIKE, A JOINT VENTURE?

25            MS. DERMODY:  LIKE A PROPOSED -- ON A CERTAIN --

1    YEAH, ON A CERTAIN IDEA.

2        AND THE IDEA ITSELF WASN'T DESCRIBED.  IT WAS, "WE'RE GOING

3    TO HAVE A MEETING WITH SO-AND-SO ON SUCH-AND-SUCH DATE" AND A

4    DISCUSSION ABOUT WHETHER THAT COMPANY MIGHT HAVE A CONCERN

5    ABOUT EMPLOYEES INVOLVED IN THE MEETING GETTING TO KNOW EACH

6    OTHER AND BECOMING TOO FRIENDLY ACROSS COMPANIES.

7        I MEAN, IT'S STUFF THAT'S CENTRAL TO THE ISSUES IN THE

8    CASE.  IT WASN'T ABOUT ANY PARTICULAR SENSITIVE PRODUCT.

9        IT WAS -- I MEAN, GOOGLE HAS SAID IT WAS A MISTAKE AND IT

10   SHOULD HAVE BEEN PRODUCED.

11       I DON'T KNOW HOW MANY OF THE "REDACTION, NOT RESPONSIVES"

12   FALL IN THAT CATEGORY.  THEY'RE GOING TO LET US KNOW THAT AFTER

13   THEY DO THEIR REVIEW.

14           MR. JOHNSON:  RIGHT.  BUT I MEAN, THE UNIVERSE THAT

15   WAS POINTED OUT TO US WAS, I THINK, TWO DOCUMENTS.

16           MS. DERMODY:  BECAUSE I HAD THE BENEFIT OF SEEING

17   OTHER E-MAIL STRINGS THAT HAPPENED TO SHOW WHAT IT WAS.

18       IF I HAD ALL OF THE E-MAIL STRINGS, I COULD TELL YOU

19   EXACTLY WHICH ONES.

20           THE COURT:  IT'S JUST BECAUSE YOU INADVERTENTLY

21   PRODUCED IT UNREDACTED.  THAT'S THE ONLY REASON SHE KNEW.

22           MS. DERMODY:  THAT'S RIGHT.

23           MR. JOHNSON:  NO.  IN THE MAJORITY OF CASES, I THINK

24   THE REDACTION HADN'T BEEN MADE.  I THINK THE OUTLIER WAS ONE.

25           THE COURT:  SHE SAID IT WAS THE OTHER WAY.

```
 1              MS. DERMODY:  IT WAS THE OPPOSITE.  I ACTUALLY LOOKED
 2      AT AT LEAST FIVE ITERATIONS OF THE SAME STRING AND I FOUND ONE
 3      JUST BY CHANCE THAT WASN'T REDACTED AND IT ALERTED ME TO THIS
 4      ISSUE.
 5         IF I HAD KNOWN ABOUT IT EARLIER, I WOULD HAVE HAD A
 6      DISCUSSION ABOUT IT EARLIER.  BUT THIS WAS THE FIRST TIME I SAW
 7      IT.
 8              MR. JOHNSON:  THIS ONLY CAME TO OUR ATTENTION OVER
 9      THE WEEKEND.  WE'RE TRYING TO FIX IT AND I THINK WE'VE DONE A
10      GOOD JOB OF WORKING OUT A COOPERATIVE BASIS OF TRYING TO DO
11      THAT, YOUR HONOR.
12              THE COURT:  NO, I'M NOT SATISFIED.  YOU NEED TO
13      PRODUCE --
14         WHO ELSE HAS DONE THEIR OWN UNILATERAL REDACTIONS FOR
15      NONRESPONSIVENESS?  WHICH ONE OF THE DEFENDANTS HAVE DONE THAT?
16              MS. DERMODY:  I THINK IT MIGHT BE EVERYONE, YOUR
17      HONOR.
18              THE COURT:  ALL RIGHT.  LET ME HEAR -- EVERYONE COME
19      ON UP.  HOW MANY DOCUMENTS HAVE YOU -- BECAUSE I DON'T THINK
20      THIS IS APPROPRIATE.  WHO SAYS THAT YOU CAN REDACT INFORMATION
21      BECAUSE YOU UNILATERALLY DECIDE THAT IT'S NOT RELEVANT TO THE
22      PLAINTIFFS' CASE?
23              MR. MITTELSTAEDT:  YOUR HONOR, COULD I --
24              THE COURT:  AND NO BASIS FOR THEM TO CHALLENGE IT?
25      AT LEAST WITH A PRIVILEGE LOG WE HAVE SOME INFORMATION ABOUT
```

```
 1        WHAT IT IS, WHO IT'S FROM.  THEY HAVE SOME BASIS TO CHALLENGE

 2    IT.

 3        BUT JUST SAYING -- TO LOOK AT A BLANK PIECE OF PAPER SAYING

 4    "REDACTED FOR NONRESPONSIVENESS," YOU CHALLENGE THAT BASED ON

 5    WHAT?

 6            MR. MITTELSTAEDT:  YEAH.  YOUR HONOR, WE HAVE GIVEN

 7    THEM A REDACTION LOG, SO THE REDACTION LOG IS LIKE A PRIVILEGE

 8    LOG AND IT SHOWS SUBJECT MATTER OF WHAT'S BEEN REDACTED.

 9        I'M -- IT'S LESS THAN 200 DOCUMENTS.  I'M TOLD THAT THESE

10    WERE PRODUCED, YOU KNOW, MONTHS AGO AND THE PLAINTIFFS HAVE

11    ACCEPTED THAT.

12            THE COURT:  BECAUSE I HAVE JUST NOT HEARD THAT

13    BEFORE.  THIS MUST BE A MORE RECENT THING THAT ALL DEFENDANTS

14    NOW ARE JUST REDACTED FOR IRRELEVANCE.

15            MR. MITTELSTAEDT:  NO, YOUR HONOR.  WE'RE TALKING

16    ABOUT A VERY LIMITED NUMBER OF DOCUMENTS.  WHEN WE'VE GOT, YOU

17    KNOW, AN E-MAIL, LIKE THE E-MAILS YOUR HONOR HAS SEEN --

18            THE COURT:  I DON'T KNOW.  700 DOCUMENTS DOESN'T

19    SOUND LIKE THAT'S A SMALL NUMBER OF DOCUMENTS.

20        THE 200 IS WHO, ADOBE OR INTUIT?

21            MR. MITTELSTAEDT:  INTUIT.  BUT, YOUR HONOR, IT'S

22    NOT -- IT'S NOT -- I DON'T WANT YOU TO HAVE THE WRONG

23    IMPRESSION.  ALL THE E-MAILS YOU'VE SEEN, YOU KNOW, NOBODY HAS

24    GONE THROUGH THOSE, THE BEST I KNOW, AND REDACTED A SENTENCE

25    HERE SAYING "THAT'S IRRELEVANT" AND "THIS ONE IS IRRELEVANT."
```

```
 1          WHAT WE'RE TALKING ABOUT ARE, LIKE, BOARD MINUTES AND THE
 2     BOARD MINUTES HAVE VERY CONFIDENTIAL STUFF THAT HAS NOTHING TO
 3     DO WITH THIS CASE.  WE'RE CONFIDENT IT HAS NOTHING TO DO WITH
 4     THIS CASE.
 5          AND WE'VE GIVEN A LOG IDENTIFYING THE SUBJECT MATTER OF
 6     WHAT'S BEEN REDACTED, BUT IT'S ONLY FOR THE VERY SENSITIVE
 7     STUFF.
 8               THE COURT:  ALL RIGHT.  SO 200 IS WHO, INTUIT?
 9               MR. MITTELSTAEDT:  YES, YOUR HONOR.
10               THE COURT:  HOW MANY IS ADOBE?
11               MR. MITTELSTAEDT:  I DON'T KNOW.  BUT I -- I AM
12     FAIRLY SURE IT'S NO MORE THAN THAT.
13               THE COURT:  LET ME HEAR, WHAT ABOUT APPLE?
14               MR. RILEY:  NONE, YOUR HONOR.
15               THE COURT:  OKAY.  GOOGLE IS 700.
16          WHAT ABOUT INTEL?
17               MR. PICKETT:  DONN PICKET ON BEHALF OF INTEL.
18          YOUR HONOR, I HAVE NO IDEA.
19               THE COURT:  OKAY.  ALL RIGHT.  LET ME ASK, FOR THE
20     200, YOU'VE SAID THAT INTUIT HAS PRODUCED A REDACTION LOG --
21               MR. MITTELSTAEDT:  YOUR HONOR --
22               THE COURT:  -- FOR ALL OF THE DOCUMENTS?
23               MR. MITTELSTAEDT:  YES, YOUR HONOR.
24               MR. SAVERI:  CAN --
25               THE COURT:  AND ADOBE, YOU DON'T KNOW WHAT THE NUMBER
```

```
1    IS?
2              MR. MITTELSTAEDT:  CORRECT.  I CAN GET THAT VERY
3    SHORTLY FOR YOU, YOUR HONOR.
4              MR. SAVERI:  YOUR HONOR, I JUST WANT TO MAKE SURE I
5    UNDERSTAND THIS.  I HAD UNDERSTOOD THAT THE REDACTION LOGS ONLY
6    INCLUDED LOGS, REDACTIONS OF MATERIAL THAT HAD BEEN WITHHELD ON
7    PRIVILEGE OR WORK PRODUCT GROUNDS.
8         I WAS NOT AWARE THAT THE REDACTION LOGS ALSO CATALOGED
9    REDACTIONS ON RELEVANCY GROUNDS.  I MAY HAVE MISSED THAT.
10        BUT JUST SO I -- SO EVERYTHING THAT WAS REDACTED FOR
11   WHATEVER PURPOSE IS ON THE LOG?
12             MR. MITTELSTAEDT:  YES.
13             MR. SAVERI:  OKAY.
14             MR. MITTELSTAEDT:  AND, YOUR HONOR, I DON'T WANT TO
15   GET CAUGHT UP IN THIS OTHER THING.  IT SOUNDS TO ME LIKE THE
16   THING THAT GOOGLE REDACTED BY MISTAKE WAS ACTUALLY BENEFICIAL
17   TO GOOGLE, WHICH SORT OF SUGGESTS IT WAS A MISTAKE, BUT I DON'T
18   WANT TO GET CAUGHT UP IN THAT.
19        I'M WILLING TO SIT DOWN WITH MR. SERVERI, WE'VE WORKED VERY
20   COOPERATIVELY, AND I WILL SHOW HIM THE STUFF WE'VE REDACTED, HE
21   CAN GO BACK AND LOOK AT THE LOG, AND I'M CONFIDENT IT'S STUFF
22   HE DOESN'T WANT.
23        AND NOBODY WANTS IT TO BE OUT IN THE PRESS, OUT IN THE
24   PUBLIC IF THESE DOCUMENTS ARE USED AT A DEPOSITION.
25             AND IT'S -- YOU KNOW, I DON'T THINK THIS IS AN ISSUE.
```

```
 1          AS I SAY, I'M WILLING TO SIT DOWN WITH HIM.  IF THEY THINK

 2     IT'S AN ISSUE, WE'LL RESOLVE IT.

 3          THE COURT:  YOU SEE THE SCENARIO THAT I WANT TO

 4     AVOID, RIGHT?

 5          MR. MITTELSTAEDT:  ABSOLUTELY.

 6          THE COURT:  I DON'T WANT TO COME BACK APRIL 2ND AND

 7     THEN THEM COME BACK AND SAY, "OH, WE SUDDENLY BECAME AWARE OF

 8     ALL THESE DOCUMENTS.  WE NOW NEED TO REDEPOSE ALL THE CEO'S,

 9     ALL THE CHAIRMANS OF THE BOARD," BECAUSE I'M GOING TO GIVE IT

10     TO THEM.  I'M GOING TO GIVE THEM TWO HOURS OR FOUR HOURS, AND I

11     DON'T WANT TO HAVE TO DO THAT, AND I'M SURE YOU DON'T EITHER,

12     AND I'M SURE YOUR CLIENTS DON'T EITHER.

13          MR. MITTELSTAEDT:  ABSOLUTELY.  AND THAT'S WHY, YOUR

14     HONOR, WHEN WE'VE REDACTED SOMETHING, IT'S BEEN FOR VERY GOOD

15     REASON.

16          THE COURT:  ALL RIGHT.

17          MR. SAVERI:  AND I WANT TO BE CLEAR.  I DON'T HAVE

18     ANY REASON TO BELIEVE THAT MR. --

19          MR. MITTELSTAEDT:  MITTELSTAEDT, MY GOOD FRIEND.

20          MR. SAVERI:  WE'VE BEEN WORKING COOPERATIVELY

21     THROUGHOUT THIS ENTIRE PROCESS.

22          THE COURT:  AND I DON'T MEAN TO CAST ASPERSIONS ON

23     ANYONE.  I'M JUST TRYING TO HEAD OFF FUTURE PROBLEMS.

24      I -- YOU KNOW, I DON'T WANT TO INCONVENIENCE YOUR CEO'S ANY

25     MORE THAN NECESSARY, AND I REALLY WANT EVERYONE TO JUST HAVE
```

```
1        ONE AND ONLY ONE DEPOSITION.

2            BUT I CAN AVOID THAT IF AT LEAST THE PLAINTIFFS HAVE ALL

3        THE INFORMATION THAT THEY NEED AND THEY GET ONE AND ONLY ONE

4        SHOT.

5                MR. MITTELSTAEDT:  YOUR HONOR, I --

6                THE COURT:  SO THAT'S MY ONLY CONCERN.

7            SO WHY DON'T, WITH INTUIT AND ADOBE, JUST -- IN YOUR STATUS

8        REPORT ON FRIDAY, JUST LET ME KNOW WHAT THE TOTAL NUMBER IS OF

9        DOCUMENTS THAT HAVE BEEN REDACTED FOR NONRESPONSIVENESS, NOT

10       FOR PRIVILEGE, AND CONFIRM THAT A REDACTION LOG WAS PRODUCED.

11           AND THEN I WOULD LIKE, AT SOME POINT -- AND I KNOW THE

12       SCHEDULE IS VERY CONDENSED -- FOR YOU ALL TO JUST SIT DOWN AND

13       MAKE SURE THERE'S NO ISSUE.  OKAY?

14               MR. SAVERI:  THAT'S FAIR, YOUR HONOR.

15               THE COURT:  ALL RIGHT.  NOW, APPLE HAS NOT REDACTED

16       ANY FOR RESPONSIVENESS?  NOT FOR PRIVILEGE, PRIVILEGE IS

17       TOTALLY SEPARATE.

18               MR. RILEY:  THAT IS CORRECT.

19               THE COURT:  ALL RIGHT.  THANK YOU.

20           NOW, FOR INTEL, I WOULD LIKE TO KNOW, CAN YOU LET ME

21       KNOW -- WHY DON'T -- FOR ADOBE AND INTEL, CAN YOU FILE

22       SOMETHING TOMORROW JUST LETTING ME KNOW WHAT IS THE TOTAL

23       NUMBER, WHAT'S THE UNIVERSE OF DOCUMENTS FOR WHICH -- AND MAYBE

24       INTUIT CAN JUST CONFIRM THE EXACT NUMBER -- WHAT'S THE TOTAL

25       UNIVERSE OF DOCUMENTS FOR WHICH INFORMATION WAS REDACTED FOR
```

```
1        NONRESPONSIVENESS OR LACK OF RELEVANCE?

2               MR. MITTELSTAEDT:  YES.

3               THE COURT:  OKAY?  AND JUST CONFIRM WHETHER A

4    REDACTION LOG HAS BEEN PRODUCED OR NOT.

5               MR. MITTELSTAEDT:  WE WILL DO SO.

6               THE COURT:  OKAY.  ALL RIGHT.  THANK YOU.

7          LET ME GO TO -- SO THAT'S INTUIT, ADOBE, APPLE, INTEL.

8          LET ME GO TO MS. HENN ON --

9               MR. PICKETT:  THERE IS ONE OTHER ISSUE, YOUR HONOR

10   WITH INTEL.

11              THE COURT:  WHAT'S THAT?

12              MR. PICKETT:  I NEED TO EXPLAIN SO YOU'RE FULLY

13   INFORMED.

14         WE WORKED OUT AN ADDITIONAL EXPANDED PRODUCTION OF

15   DOCUMENTS LESS THAN TWO MONTHS AGO THROUGH THE MEET AND CONFER

16   PROCESS.

17              THE COURT:  OKAY.

18              MR. PICKETT:  AND WE PRIORITIZED THOSE IN THREE

19   TRANCHES.

20              THE COURT:  OKAY.

21              MR. PICKETT:  FIRST WE FOCUSSED ON ANYBODY WHO WAS

22   GOING TO BE A DEPONENT SO AS TO AVOID THE PROBLEM THAT YOUR

23   HONOR IDENTIFIED.

24              THE COURT:  RIGHT.

25              MR. PICKETT:  THEN WE TURNED TO THE NON-DEPONENT TYPE
```

```
1    DOCUMENTS AND WE'VE PRODUCED A TRANCHE OF THOSE AS WELL.
2           THE COURT:  OKAY.
3           MR. PICKETT:  THERE'S A REMAINING TRANCHE WHICH NEEDS
4    TO BE REDUCED FOR PRIVILEGE -- NEEDS TO BE REVIEWED FOR
5    PRIVILEGE.
6           THE COURT:  OKAY.
7           MR. PICKETT:  AND WE NEED TO MAKE A PRIVILEGE LOG
8    WITH RESPECT TO THOSE.  THAT'S NOT BEEN DONE YET.  IT WILL BE
9    DONE NEXT WEEK, OR FINISHED NEXT WEEK.
10          THE COURT:  OKAY.  WELL, SO YOU'RE -- LET ME JUST GET
11   MY DATES STRAIGHT SO I DON'T GET CONFUSED HERE.
12       SO MARCH 14, INTUIT, ADOBE, AND INTEL ARE GOING TO FILE
13   JUST ON THE REDACTION ISSUE FOR LACK OF RELEVANCE OR
14   RESPONSIVENESS, JUST CONFIRMING THE NUMBER AND THAT A LOG HAS
15   BEEN PRODUCED.
16       WHAT -- DO YOU KNOW WHETHER A LOG HAS BEEN PRODUCED ON THAT
17   ISSUE?
18          MR. PICKETT:  I DON'T.
19          THE COURT:  OKAY.  THEN JUST LET ME KNOW TOMORROW.
20       THEN YOU'RE SAYING, IN ADDITION -- TELL ME WHEN YOU'RE
21   GOING TO COMPLETE YOUR DOCUMENT PRODUCTION.
22          MR. PICKETT:  NEXT WEEK.
23          THE COURT:  WHEN?
24          MR. PICKETT:  WELL, THEY TELL ME THAT IT'S LIKELY TO
25   TAKE THE WHOLE WEEK TO GET THE PRIVILEGE LOG DONE.
```

```
 1              THE COURT:  OKAY.  NO, NO.  I'M SAYING THE DOCUMENT

 2      PRODUCTION.

 3              MR. PICKETT:  THEY'RE LITERALLY GOING HAND IN HAND,

 4      BUT I CAN COMMIT TO GETTING THE DOCUMENTS ON THE 20TH AND THE

 5      LOG ON THE 22ND IF THAT'S PREFERABLE.  NONE OF THIS SHOULD

 6      IMPACT ANY OF THE DEPOSITIONS.

 7              THE COURT:  OKAY.  THAT'S MY CONCERN.

 8              MR. PICKETT:  I KNOW IT IS, AND THAT'S WHY WE --

 9              THE COURT:  BECAUSE THE PLAINTIFFS NEED TIME TO

10      REVIEW THE DOCUMENTS, AND IF THEY'RE GETTING EVERYTHING --

11              MR. PICKETT:  WELL, THEY ARE FROM CUSTODIANS, THOUGH,

12      WHO ARE NOT GOING TO BE DEPOSED.

13          AND THE DEPOSITION -- THE DEPONENT DOCUMENTS HAVE ALL BEEN

14      PRODUCED.

15              MS. DERMODY:  YOUR HONOR, WE'RE HAPPY TO DO A REPORT

16      TO THE COURT EACH WEEK ON WHERE WE BELIEVE THINGS ARE WITH

17      INTEL, AS WE DO WITH EVERYONE ELSE.

18          I WILL SAY FOR THE RECORD THAT WE REQUESTED THESE DOCUMENTS

19      IN NOVEMBER.  WE DIDN'T HAVE ANY AGREED SCHEDULE TO PRODUCE

20      THEM IN TRANCHES.  WE DIDN'T HAVE ANY KNOWLEDGE THAT THERE HAD

21      BEEN A DECISION ON INTEL'S PART UNILATERALLY TO PRODUCE

22      CUSTODIANS AND WITHHOLD FROM PRODUCTION A LARGE LUMP OF

23      DOCUMENTS NOT ATTACHED TO CUSTODIANS WHICH ARE NOW COMING IN.

24          SINCE MARCH 8TH, THERE'S BEEN ABOUT 90,000 DOCUMENTS

25      PRODUCED JUST FROM INTEL AND I GUESS THERE'S MORE COMING.  SOME
```

```
1    OF THOSE DOCUMENTS MIGHT HAVE BEEN USEFUL TO HAVE AT SOME OF

2    THE DEPOSITIONS THAT HAVE BEEN HAPPENING OF INTEL.

3         WE HAVEN'T REVIEWED THEM, SO WE CAN'T EVEN OPINE ON THAT.

4    THERE MIGHT BE NO PREJUDICE.  HE MIGHT BE CORRECT.  WE DON'T

5    KNOW.

6         BUT WE WILL LET THE KNOW COURT IF WE THINK SOMETHING HAS

7    HAPPENED ALONG THE WAY THAT NEEDS TO BE FIXED.

8              THE COURT:  THIS IS MY CONCERN, BECAUSE I REALLY DO

9    WANT FACT DISCOVERY TO CLOSE ON MARCH 29TH.

10        IF THEY'RE ONLY NOW GETTING THE DOCUMENTS, THEN THEY'RE

11   SUPPOSED TO BE REVIEWING THEM WHILE THEY'RE ALSO PREPPING ALL

12   THESE OTHER DEPOSITIONS, AND IT COULD BE THAT IN THESE

13   DOCUMENTS THERE IS A CUSTODIAN WHO NOW SHOULD BE DEPOSED, YOU

14   KNOW, THAT SOME INDIVIDUAL WILL COME UP WHO NOW THEY REALIZE

15   HAS RELEVANT INFORMATION AND THEN I'M GOING TO HAVE TO REOPEN

16   DISCOVERY, WHICH I WOULD PREFER NOT TO DO.

17             MR. PICKETT:  I DON'T THINK THAT'S GOING TO HAPPEN.

18             THE COURT:  YEAH, I HOPE THAT'S -- I HOPE THAT'S THE

19   CASE.

20             MR. PICKETT:  WE'VE DESIGNED IT SO IT DOESN'T HAPPEN.

21             THE COURT:  YEAH, I HOPE THAT'S THE CASE, BUT I JUST

22   DON'T KNOW.  THAT'S THE PROBLEM.  SO THAT'S WHY --

23             MR. SAVERI:  FROM MY PERSPECTIVE, YOUR HONOR, THE

24   IMPORTANT THING IS FOR US TO GET THE DOCUMENTS AND TO HAVE THE

25   PRODUCTION DONE BECAUSE THEN IT'S IN OUR CONTROL.  WE CAN LOOK
```

1    AT THE DOCUMENTS, WE CAN MAKE OUR DECISIONS AND DO OUR JOB.  TO

2    ME THAT'S WHAT'S IMPORTANT.

3              THE COURT:  I'D LIKE YOU TO PRODUCE THOSE DOCUMENTS

4    ON MONDAY, THE 18TH.

5              MR. PICKETT:  IT --

6              THE COURT:  THAT GIVES YOU FIVE DAYS.

7              MR. PICKETT:  IT IS -- I AM TOLD -- I'M JUST

8    REPORTING WHAT I'M BEING TOLD BY OTHER PEOPLE.  I HAVE NO IDEA.

9    I DON'T DO THIS STUFF ANYMORE -- BUT I'M TOLD THAT TO GET THE

10   PRIVILEGE RIGHT, THAT WILL NOT HAPPEN.

11       NOW, I SUPPOSE WE COULD PRODUCE EVERYTHING AND CLAW BACK

12   THE PRIVILEGED DOCUMENTS IF THAT'S WHAT YOU PREFER.

13             THE COURT:  WHEN WERE THESE --

14             MR. MITTELSTAEDT:  BUT I THINK TWO DAYS, THE 48 HOURS

15   AT ISSUE HERE MAY NOT BE WORTH THE CLAW BACK.

16             THE COURT:  HOW MANY DOCUMENTS ARE WE TALKING ABOUT?

17             MR. PICKETT:  THE BEST ESTIMATES NOW ARE AROUND 9,000

18   DOCUMENTS, OF WHICH THEY BELIEVE ABOUT 7- TO 800 WILL BE

19   ULTIMATELY PRIVILEGED.

20       THESE ARE DOCUMENTS THAT HAVE BEEN GIVEN WHAT'S CALLED

21   LEVEL 2 REVIEW.  THESE ARE BY OUTSIDE COMPANIES.

22       NOW THEY NEED TO BE REVIEWED BY ATTORNEYS BECAUSE THEY'RE

23   IN SORT OF A POTENTIAL PRIVILEGE, SO THEY'RE SORT OF

24   GUESSTIMATING.

25             MR. SAVERI:  YOUR HONOR, FROM MY PERSPECTIVE, THE

```
1     DIFFERENCE BETWEEN MONDAY MORNING AND WEDNESDAY MORNING IS NOT
2     VERY GREAT.
3          IS THAT WHAT -- IF THAT'S WHAT IT TAKES TO DO THAT.
4               MR. PICKETT:  THEY SAID WEDNESDAY, BUT I'LL TAKE
5     WEDNESDAY MORNING.
6               MR. SAVERI:  SO --
7               THE COURT:  ALL RIGHT.  I'M JUST CONCERNED THAT IF
8     THEY'RE GOING TO GET 8,200 DOCUMENTS, YOU KNOW, EIGHT OR NINE
9     DAYS BEFORE DISCOVERY IS GOING TO CLOSE, WE'RE JUST GOING TO
10    END UP HAVING THESE UNFORTUNATE DISCUSSIONS ABOUT HAVING TO
11    REOPEN DISCOVERY, WHICH I WAS HOPING TO AVOID.
12              MR. PICKETT:  I'M HOPING TO AVOID IT AS WELL.  I
13    DON'T THINK IT WILL HAPPEN.
14              THE COURT:  UM-HUM.
15              MR. PICKETT:  WE'VE BEEN ABLE TO WORK OUT THESE
16    THINGS IN THE PAST.
17              THE COURT:  ALL RIGHT.  WELL, YOU'LL FINISH THE
18    PRODUCTION THEN ON THE 20TH AND THE PRIVILEGE -- YOU'LL DO THE
19    LOG ON THE 22ND.
20              MR. PICKETT:  RIGHT.  AND WE'LL HAVE THE INFORMATION
21    FOR YOU TOMORROW ON THE REDACTIONS.
22              THE COURT:  PLEASE.  THANK YOU.
23              MR. SAVERI:  I WILL SAY THAT I'M HAPPY TO DO A CLAW
24    BACK IF THAT HELPS YOU DO YOUR JOB.
25              MR. PICKETT:  IF IT HELPS, WE'LL WORK THAT OUT.  I
```

```
1        DON'T KNOW.  WE'LL FIGURE THAT OUT.

2              MR. SAVERI:  YEAH.

3              MS. DERMODY:  AND YOUR HONOR, I'M SORRY, BEFORE YOU

4    MOVE ON TO THE NEXT DEFENDANT, WE WERE ON GOOGLE AND WE HADN'T

5    QUITE FINISHED WHAT WAS OUTSTANDING.

6         I WANTED TO MAKE SURE IT WAS IN THE RECORD THAT WE HAD BEEN

7    TALKING WITH GOOGLE ABOUT A NUMBER OF BASIC COMPENSATION

8    DOCUMENTS THAT WE BELIEVE HAVEN'T BEEN PRODUCED AND I THINK

9    GOOGLE IS HUNTING FOR THEM NOW.

10        IT WOULD BE IDEAL TO HAVE THOSE AS SOON AS POSSIBLE.

11             THE COURT:  WELL, I JUST WANT TO SEE THE UNIVERSE OF

12   THE PROBLEM FIRST AND THEN I WILL GO BACK TO GOOGLE.  I JUST

13   WANTED TO SEE IF EVERYONE ELSE WAS IN THE SAME BOAT, WHICH IT

14   SOUNDS LIKE THEY'RE NOT.

15             MS. DERMODY:  OH, WITH RESPECT TO THE NONRESPONSIVE?

16             THE COURT:  JUST THE NONRESPONSIVE FIRST AND THEN

17   WE'LL GET TO THAT.

18             MS. DERMODY:  OKAY, YES.

19             THE COURT:  OKAY.  LET ME -- ALL RIGHT.

20        SO ADOBE IS FINISHING ITS DOCUMENT PRODUCTION ON THE 14TH,

21   RIGHT?  IS INTUIT ALSO PRODUCING DOCUMENTS ON THE 14TH?  I JUST

22   HAVE IN MY NOTES THAT --

23             MR. MITTELSTAEDT:  YES, YOUR HONOR.

24             THE COURT:  BOTH, OKAY.  ALL RIGHT.  THANK YOU.

25        AND THEN WHEN ARE YOU GOING TO DO A FINAL PRIVILEGE LOG?
```

```
1              MR. MITTELSTAEDT:  SHORTLY THEREAFTER, YOUR HONOR.

2              THE COURT:  OKAY.  CAN WE SAY IN A WEEK, LIKE BY THE

3         21ST?

4              MR. MITTELSTAEDT:  YES.

5              THE COURT:  OKAY.  ALL RIGHT.

6         OKAY.  APPLE'S COMPLETING ITS DOCUMENT PRODUCTION ON

7    FRIDAY, AND CAN YOU DO YOUR FINAL LOG MAYBE BY THE 22ND?

8              MR. RILEY:  WE HAD INTENDED TO DO IT BY FRIDAY, BUT

9    WE CAN CERTAINLY FINISH IT BY THE 22ND.

10             THE COURT:  OKAY.  IF YOU CAN DO IT BY THE 15TH,

11   THAT'S FINE, TOO.

12             MR. RILEY:  GREAT.

13             THE COURT:  OKAY.  THANK YOU.

14        OKAY.  ALL RIGHT.  NOW, LET'S GO TO -- LET'S GO TO MS. HENN

15   FOR PIXAR.

16        DO YOU HAVE ANY FURTHER DOCUMENT PRODUCTION OUTSTANDING?

17             MS. HENN:  YOUR HONOR, WE HAVE FINISHED OUR DOCUMENT

18   PRODUCTION OF DOCUMENTS THAT HIT THE SEARCH TERMS WE AGREED

19   UPON WITH PLAINTIFFS, WITH THE EXCEPTION OF A 1986 AGREEMENT

20   FROM THE SPIN OFF OF PIXAR FROM LUCAS THAT WE PRODUCED TODAY.

21   THAT'S ALREADY IN THE MAIL.

22        ON THE REDACTION ISSUE, WE DID NOT REDACT FOR RELEVANCE.

23   WE REDACTED FOR PRIVILEGE AND WE REDACTED SOME NAMES AND

24   PERSONAL INFORMATION, LIKE PHONE NUMBERS, OF NON-PIXAR

25   EMPLOYEES, USUALLY APPLICANTS, SO JUST THE NAME OR THE PHONE
```

```
1    NUMBER.

2         WE -- OTHER THAN THAT, WE MAY HAVE ONE OR TWO MORE

3    DOCUMENTS, THINGS THAT NOT -- THAT ARE NOT RESPONSIVE TO

4    PLAINTIFFS' SEARCH TERMS BUT THAT WE'VE BECOME AWARE OF, AND I

5    CAN COMMIT TO GETTING THOSE TO PLAINTIFFS BY TUESDAY.

6              THE COURT:  AND HOW DO I DESCRIBE WHAT IT IS THAT

7    YOU'RE PRODUCING ON THE 19TH?

8              MS. HENN:  E-MAILS RELEVANT TO PIXAR'S DEFENSES.

9              THE COURT:  OKAY.  AND WILL YOU BE UPDATING YOUR

10   PRIVILEGE LOG?

11             MS. HENN:  OUR PRIVILEGE LOG IS DONE.  I DO NOT

12   BELIEVE WE HAVE ANY UPDATES.

13             THE COURT:  OKAY.  ALL RIGHT.

14        ANY ISSUES WITH PIXAR'S PRODUCTION FROM THE PLAINTIFFS'

15   PERSPECTIVE?

16             MR. SAVERI:  WELL, WE'D CERTAINLY LIKE TO SEE ANY OF

17   THE E-MAILS THAT ARE RELEVANT TO PIXAR'S DEFENSES, SO WE'RE

18   HAPPY TO GET THOSE AS SOON AS POSSIBLE.

19        BUT BEYOND THAT, I THINK WE'RE OKAY.

20             THE COURT:  OKAY.

21             MS. DERMODY:  WE'VE HAD A VERY COOPERATIVE

22   RELATIONSHIP WORKING WITH PIXAR.

23             THE COURT:  OKAY.  THANK YOU.

24             MS. HENN:  THANK YOU.

25             THE COURT:  ALL RIGHT.  LET ME GO TO MR. PAIGE FOR
```

```
 1        LUCASFILM.
 2            IS THERE ANY FURTHER DOCUMENT PRODUCTION THAT NEEDS TO
 3        OCCUR?
 4              MR. PAIGE:  YOUR HONOR, I BELIEVE WE MADE OUR LAST
 5        DOCUMENT PRODUCTION ON MARCH THE 4TH.
 6              THE COURT:  OKAY.
 7              MS. DERMODY:  OR THE 8TH.
 8              MR. SAVERI:  WE HAVE THE 8TH, BUT CLOSE ENOUGH.
 9              THE COURT:  OKAY.  YOU DON'T ANTICIPATE PRODUCING
10        ANYTHING ELSE?
11              MR. PAIGE:  NO, YOUR HONOR.
12              THE COURT:  OKAY.  AND WILL YOU BE UPDATING YOUR
13        PRIVILEGE LOG?
14              MR. PAIGE:  YES.  I BELIEVE OUR FINAL PRIVILEGE LOG
15        WENT OUT TODAY.  IT SHOULD HAVE BEEN RECEIVED BY E-MAIL
16        PERHAPS.
17              MR. SAVERI:  I DON'T KNOW.  WE'VE BEEN HERE.
18              MS. DERMODY:  WE'VE BEEN BUSY.
19              THE COURT:  ALL RIGHT.  THANK YOU.
20              MR. PAIGE:  FAIR ENOUGH.
21              THE COURT:  DID YOU DO ANY REDACTIONS FOR LACK OF
22        RELEVANCE OR RESPONSIVENESS?
23              MR. PAIGE:  YOUR HONOR, I BELIEVE THERE HAVE BEEN
24        REDACTIONS MADE FOR THINGS LIKE PRIVACY AND, YOU KNOW, HOME
25        PHONE NUMBERS, THAT SORT OF THING.  I DON'T KNOW THE EXACT
```

```
1    DIMENSIONS OF IT, SO I DON'T WANT TO MAKE ANY MISSTATEMENTS
2    HERE ON THE RECORD.
3              THE COURT:  OKAY.  SO THEN WOULD YOU PLEASE,
4    TOMORROW, WHICH IS MARCH THE 14TH, WOULD YOU PLEASE JUST FILE A
5    STATEMENT AS TO EXACTLY WHAT REDACTIONS HAVE BEEN MADE BY
6    CATEGORY, NOT SPECIFICALLY WHAT YOU'VE REDACTED, BY CATEGORY
7    AND WHETHER YOU'VE PRODUCED A REDACTION LOG?
8              MR. PAIGE:  WE WILL DO THAT, YOUR HONOR.  THANK YOU.
9              THE COURT:  OKAY.  ANY ISSUES FROM THE PLAINTIFFS'
10   PERSPECTIVE WITH LUCASFILM'S PRODUCTION?
11             MS. DERMODY:  NO, YOUR HONOR, NONE.
12             THE COURT:  OKAY.  ALL RIGHT.
13        OKAY.  SO I THINK WE ARE NOW JUST BACK TO GOOGLE.
14             MR. RILEY:  YOUR HONOR, FOR APPLE, WE ALSO REDACTED
15   NOT FOR NONRESPONSIVENESS, BUT FOR NON-APPLE EMPLOYEES'
16   PERSONAL IDENTIFICATION INFORMATION, SUCH AS SOCIAL SECURITY
17   NUMBERS, PHONE NUMBERS, AND WE'VE DISCLOSED THAT TO THE
18   PLAINTIFFS.  THEY HAVE NOT OBJECTED TO THOSE PERSONAL
19   IDENTIFICATION REDACTIONS FOR PRIVACY OF THIRD PARTIES.
20             MR. SAVERI:  YEAH, I THINK THAT'S FAIR.
21             THE COURT:  OKAY.  ALL RIGHT.  THANK YOU.
22             MR. RILEY:  THANK YOU.
23             THE COURT:  ALL RIGHT.  NOW, SO GOOGLE SEEMS TO BE IN
24   A CLASS OF ITS OWN HERE.  700 DOCUMENTS WHICH YOU HAVE REDACTED
25   FOR NONRESPONSIVENESS AND LACK OF RELEVANCE.
```

```
 1                MR. JOHNSON:  YOUR HONOR, I --

 2                THE COURT:  HAVE YOU PRODUCED A REDACTION LOG?

 3                MR. JOHNSON:  NO, YOUR HONOR.  WHAT WE HOPED TO DO

 4      IS -- ALTHOUGH WE'D BE QUITE HAPPY TO DO THAT, I THINK IT'LL BE

 5      A SMALL ONE.

 6           GOOGLE, BY THE WAY, JUST FOR THE RECORD, DID MAKE PRIVACY

 7      REDACTIONS AS WELL, I THINK SIMILAR TO THE ONES THAT YOU'VE

 8      HEARD DESCRIBED ALREADY.

 9           BUT WHAT WE HOPED TO DO IS SHOW, AS I SAID, IN A QUICK PEEK

10      FASHION, THE -- WHAT WE THINK WILL BE A SMALL SET OF DOCUMENTS,

11      PRODUCE UNREDACTED VERSIONS OF ALL THE REST, AND THEN WE CAN

12      FOLLOW ON WITH THE LOG, AND THAT'S SOMETHING THAT WE EXPECT TO

13      COMPLETE WELL IN ADVANCE OF ANY OF THE FINAL DEPOSITIONS.

14                THE COURT:  SO WHAT DEPOSITIONS INVOLVING GOOGLE ARE

15      LEFT?  YOU SAID SERGEY BRIN.  WHEN IS THAT?

16                MS. DERMODY:  I HAVE IT --

17                MR. JOHNSON:  HE'S ON TUESDAY, I BELIEVE, YOUR HONOR.

18                MS. DERMODY:  MARCH 19.

19                THE COURT:  MARCH 19.

20                MS. DERMODY:  AND MR. PAGE ON MARCH 22ND, AND

21      MR. BOCK ON MARCH 27TH.

22           AND THERE'S A MEETING AND CONFERRING ABOUT ONE ADDITIONAL

23      PERSON WHO JUST HASN'T BEEN SCHEDULED YET.

24                THE COURT:  WHO IS THAT?

25                MS. DERMODY:  PATRICK FLYNN.
```

1          THE COURT:  AH, HE WAS FROM JANUARY 17TH.  THAT STILL

2     HASN'T BEEN SCHEDULED?

3          MS. DERMODY:  APPARENTLY IT'S GOING TO BE SCHEDULED

4     SHORTLY, YOUR HONOR.

5          MR. JOHNSON:  WELL --

6          THE COURT:  NO, NO.

7          MR. JOHNSON:  -- IT'S MY UNDERSTANDING, AND CORRECT

8     ME --

9          THE COURT:  WE TALKED ABOUT THAT ON JANUARY 17TH.

10    WHAT IS GOING ON HERE?

11         MR. JOHNSON:  YOUR HONOR, IT'S MY UNDERSTANDING THAT

12    HE'S NOT WITH THE COMPANY AND THAT YOU --

13       IS THAT THE DEPOSITION NOTICE THAT YOU JUST RECENTLY

14    SERVED?

15         MS. DERMODY:  YEAH, AFTER WE HAD A DISCUSSION WHETHER

16    YOU WERE GOING TO REPRESENT HIM.

17         MR. JOHNSON:  BECAUSE WE DON'T KNOW HIS WHEREABOUTS.

18         MS. DERMODY:  THE PROCESS TOOK A WHILE, YOUR HONOR.

19    WE EXPECT IT TO HAPPEN BEFORE THE DISCOVERY PERIOD CLOSES.

20    THAT IS OUR EXPECTATION.

21         THE COURT:  OKAY.  IS MAYER BROWN REPRESENTING

22    MR. FLYNN OR NOT?

23         MR. JOHNSON:  WELL, YOUR HONOR, AS I SAID, IT'S MY

24    UNDERSTANDING THAT GOOGLE DOESN'T KNOW HIS WHEREABOUTS.

25       ONCE HE'S SERVED, IT MAY BE THAT WE WILL.

1          BUT AS OF RIGHT NOW, WE HAVEN'T BEEN IN TOUCH WITH HIM.

2              THE COURT:  WASN'T --

3              MR. SAVERI:  YOUR HONOR, I'M SORRY, BUT --

4              THE COURT:  WASN'T HE PART OF THE WHOLE DISCUSSION ON

5      JANUARY 17TH ABOUT HIS DOCUMENTS?

6              MS. DERMODY:  YES, YOUR HONOR.

7              THE COURT:  SO HOW DID -- HOW DID YOU HAVE HIS

8      DOCUMENTS?  THEY WERE JUST WHAT HE LEFT AT THE COMPANY BEFORE

9      HE LEFT?

10             MR. JOHNSON:  I PRESUME, YOUR HONOR, YEAH.

11             THE COURT:  BEFORE HE DEPARTED?

12             MR. EVANS:  I CAN ANSWER THAT, YOUR HONOR.

13         ERIC EVANS FOR GOOGLE.

14         MR. FLYNN HAD A SUBSTANTIAL VOLUME OF INFORMATION THAT WAS

15     STILL AT GOOGLE AFTER HE DEPARTED AND WE COLLECTED AND PRODUCED

16     THE RESPONSIVE PORTIONS OF THAT.

17             THE COURT:  I SEE.  OKAY.

18             MR. JOHNSON:  SO, YOUR HONOR, IF I MAY, I THINK THAT

19     GOOGLE'S SITUATION IS ONE IN WHICH I WOULD EXPECT THAT WE WOULD

20     HAVE FAR LESS THAN THE 200 THAT HAVE BEEN MENTIONED FOR ANOTHER

21     PARTY REDACTED FOR VERY SENSITIVE, YOU KNOW, BOARD INFORMATION,

22     THE TYPE INFORMATION AS WE DISCUSSED.

23         FOR THOSE FEW DOCUMENTS, WE EXPECT TO BE IN COMPLETE

24     AGREEMENT WITH PLAINTIFFS ABOUT WHAT LITTLE CAN BE REDACTED.

25         WE'RE HAPPY TO PRODUCE A LOG, AND WE'RE HAPPY TO PRODUCE

```
1     DOCUMENTS THAT RELATE TO MR. BRIN WELL IN ADVANCE OF HIS

2     DEPOSITION.

3          SAME FOR MR. PAGE AND SO ON.

4              THE COURT:  AND WHEN IS THAT GOING TO BE?  ON

5     MARCH 18TH AT 5:00 O'CLOCK?

6              MR. JOHNSON:  WELL, NO, YOUR HONOR.  I WAS DISCUSSING

7     WITH MS. DERMODY BEFORE THE HEARING TODAY GETTING TOGETHER ON

8     FRIDAY WITH RESPECT TO THE BRIN DOCUMENTS AND ANOTHER

9     MANAGEMENT GROUP SET OF DOCUMENTS SO THAT WE CAN RESOLVE THOSE

10    WELL IN ADVANCE OF HIS DEPOSITION ON TUESDAY, AND SO ON.

11             THE COURT:  ALL RIGHT.  I'M GOING TO GIVE YOU A

12    CHOICE.  EITHER YOU CAN GO FORWARD AS YOU PLAN, BUT IF THE

13    DEFENDANTS -- IF THE PLAINTIFFS ASK FOR ANOTHER DEPOSITION OF

14    SERGEY BRIN OR LARRY PAGE OR MR. BOCK, I'M GOING TO GIVE IT TO

15    THEM.

16         IF IT TURNS OUT -- BECAUSE I'M GOING TO REQUIRE THAT YOU,

17    YOU PRODUCE THE 700 DOCUMENTS.

18         OR IF NOT -- WELL, THE THING IS WHAT I DON'T LIKE IS I

19    EVEN THINK BASED ON A REDACTION LOG THAT IT IS DIFFICULT TO

20    DETERMINE WHETHER A REDACTION SHOULD BE CHALLENGED OR NOT.

21             MR. JOHNSON:  ABSOLUTELY, YOUR HONOR.  THAT'S WHY WE

22    WILL SHOW THEM THE DOCUMENTS.

23             THE COURT:  NO.  YOU'RE NOT SAYING YOU'RE GOING TO

24    SHOW THEM ALL 700.  YOU'RE SAYING YOU'RE GOING TO GO THROUGH AN

25    ASSESSMENT YOURSELF --
```

1          MR. JOHNSON:  NO, YOUR HONOR.

2          THE COURT:  -- AS TO WHETHER THAT SHOULD HAVE BEEN

3     UNREDACTED.

4          MR. JOHNSON:  AND I APOLOGIZE FOR THIS.  THAT'S WHAT

5     I HAVEN'T BEEN ABLE TO MAKE CLEAR.

6        THE 700 IS GOING TO BE A VASTLY REDUCED NUMBER, SO THEY

7     WILL GET UNREDACTED VERSIONS OF MOST OF THAT SET.

8        WITH RESPECT TO THE FEW REMAINING ONES WHERE THERE'S

9     EXTREMELY SENSITIVE INFORMATION --

10         THE COURT:  WHAT I'M HEARING IS YOU'RE SAYING THEY'RE

11    GOING TO GET THAT ON MARCH 22ND, WHICH IS THREE DAYS AFTER

12    SERGEY BRIN WOULD HAVE BEEN DEPOSED ON MARCH 19TH, AND ON

13    MARCH 22ND AFTER THEY'VE ALREADY DEPOSED LARRY PAGE.

14         MR. JOHNSON:  NO, YOUR HONOR.

15         THE COURT:  SO I'M GOING TO GIVE THEM ANOTHER

16    DEPOSITION AND YOU'RE GOING TO JUST TAKE A CHANCE WITH YOUR

17    FOUNDERS OF MAKING THEM GO THROUGH TWO DEPOSITIONS.

18        BUT IF THAT'S THE WAY YOU WANT TO DO IT, THEN THAT'S YOUR

19    CHOICE.

20         MR. JOHNSON:  RESPECTFULLY, YOUR HONOR, THAT'S NOT

21    WHAT WE WERE SUGGESTING.

22        WHAT I SAID WAS WE WOULD COMPLETE BY THEN.

23        BUT DOCUMENTS RELATING, FOR EXAMPLE, TO MR. BRIN AND TO THE

24    MANAGEMENT GROUP WE PLAN ON DISCUSSING ON FRIDAY.

25        WE'D BE IN ADVANCE -- AND WE'LL DO IT FASTER IF WE CAN.

```
1    THE ONLY HOLDUP IS HOW QUICKLY THE VENDORS CAN REMOVE THESE

2    DESIGNATIONS.

3         BUT IT'S OUR INTENT -- I UNDERSTAND THE COURT'S CONCERN.

4            THE COURT:  I'M GOING TO MAKE A CLEAR RULING HERE.

5    NO REDACTIONS FOR NONRESPONSIVENESS.  NO REDACTIONS.  THAT

6    APPLIES TO INTUIT, THAT APPLIES TO ADOBE, THAT APPLIES TO INTEL

7    IF THEY'VE DONE IT, THAT APPLIES TO GOOGLE.

8         I'M NOT GOING TO HAVE A SITUATION WHERE WE HAVE TO HAVE

9    DOUBLE DEPOSITIONS OF ALL OF YOUR CEO'S AND FOUNDERS.  I DON'T

10   WANT TO HAVE THAT KIND OF SITUATION.  I DON'T THINK IT'S RIGHT

11   TO UNNECESSARILY BURDEN THEM BECAUSE PEOPLE ARE PLAYING IT VERY

12   CLOSE WITH THE DOCUMENT PRODUCTION.

13            MR. JOHNSON:  YOUR HONOR, WE -- RESPECTFULLY, IT'S

14   NOT A QUESTION OF ONES WHERE THERE'S A DISPUTE.

15        IT'S SOMETHING WHERE THE PLAINTIFFS WOULD AGREE THAT THE

16   INFORMATION IS SO SENSITIVE AND SO VOLATILE THAT WE ALL AGREE

17   THAT IT SHOULDN'T BE PRODUCED WITHOUT SOME PROTECTIVE

18   REDACTION.

19        IT'S NOT VERY DIFFERENT IN THAT SENSE THAN THE PRIVACY

20   REDACTIONS WHICH THE COURT HAS ALREADY COUNTENANCED.

21        SO I WOULD RESPECTFULLY REQUEST THAT YOUR HONOR ALLOW THOSE

22   DESIGNATIONS.

23        AND THE PLAINTIFFS HAVE BEEN GOOD ABOUT CALLING THE COURT'S

24   ATTENTION TO WHERE THEY THINK THERE'S A PROBLEM IF THEY DON'T

25   THINK THEY'RE GETTING INFORMATION THEY NEED.
```

```
1              I MEAN, THIS IS SOMETHING THAT --

2              THE COURT:  SOFTWARE IS PRODUCED ON A CD.  THAT'S

3    JUST AS EASY FOR SOMEONE TO TAKE OUT AND WALK AROUND WITH.  I

4    MEAN, IT USUALLY IS PRODUCED ON A CD UNLESS IT'S ON --

5              MR. JOHNSON:  AS I SAID, YOUR HONOR, THIS IS THE KIND

6    OF THING WHERE IT WOULDN'T EVEN INVOLVE TAKING A CD.

7         IT WOULD JUST INVOLVE SOMEBODY WHISPERING SOMETHING TO

8    SOMEBODY AND IT WOULD BE NEWSWORTHY.  THAT'S THE KIND OF THING

9    THAT WE'RE TALKING ABOUT.  THOSE ARE THE KINDS OF DOCUMENTS

10   THAT I WAS SHOWING TO MS. DERMODY THIS MORNING.

11             THE COURT:  WELL, THAT DIDN'T APPLY TO THE

12   COLLABORATION.  THAT DIDN'T APPLY TO THE COLLABORATION.

13             MR. JOHNSON:  WELL, YOUR HONOR, WHAT WE'RE TRYING TO

14   DO IS RESOLVE ANY -- YOU KNOW, I MEAN, THESE WERE BIG, YOU

15   KNOW, DOCUMENT PRODUCTIONS.

16             THE COURT:  THAT'S FINE.  IF YOU WANT TO HAVE

17   SERGEY BRIN AND LARRY PAGE DEPOSED TWICE, MAYBE WE CAN SET A

18   DATE IN APRIL.  THAT'S FINE WITH ME.  THAT'S FINE.  I'LL ORDER

19   A SECOND DEPOSITION.

20        I DON'T WANT THESE GAMES.  SO WE'LL JUST HAVE THEM DEPOSED

21   TWICE.

22             MR. JOHNSON:  YOUR HONOR, RESPECTFULLY, THERE HAVEN'T

23   BEEN ANY GAMES.  YOU'RE GRANTING RELIEF THAT THE PLAINTIFFS

24   HAVEN'T ASKED FOR.

25             THE COURT:  I'M SAYING PRODUCE -- I NEVER PERMITTED
```

1    REDACTIONS BASED ON LACK OF RESPONSIVENESS OR LACK OF

2    RELEVANCE.

3              MR. JOHNSON:  BUT THOSE REDACTIONS HAVE BEEN MADE --

4              THE COURT:  I WASN'T EVEN AWARE THAT THAT HAD BEEN

5    GOING ON IN THIS CASE.  I LEARNED ABOUT IT IN THE OTHER CASE.

6    I DID NOT EVEN KNOW THAT WAS HAPPENING IN THIS CASE.

7              MR. JOHNSON:  SURE.  BUT THE PLAINTIFFS HAVE BEEN

8    AWARE OF IT FOR, I WOULD THINK, ON THE ORDER OF A YEAR OR MORE.

9         YOU KNOW, THESE -- IN GOOGLE'S CASE, THESE ARE DOCUMENTS

10   THAT ARE PLAINLY MARKED ON THEIR FACE THAT WAY, AND THAT'S HOW

11   THE -- YOU KNOW, THAT'S HOW THE QUESTION AROSE OVER THE WEEKEND

12   AND WE BELIEVE WE'RE DEALING WITH IT PROMPTLY.

13        THERE'S NO INTENTION TO ENGAGE IN GAMESMANSHIP AND THERE'S

14   EVERY INTENTION TO AVOID MULTIPLE DEPOSITIONS OF ANY WITNESS.

15             THE COURT:  I'VE RULED.  OKAY?  THERE'S NO REDACTIONS

16   FOR LACK OF RESPONSIVENESS OR LACK OF RELEVANCE.  I DON'T THINK

17   THAT IS A PROPER ASSESSMENT FOR ONE PARTY TO MAKE AS TO THE

18   OTHER PARTY'S CASE.

19        I MEAN, IF THE PLAINTIFFS DID THAT, I THINK ALL OF THE

20   DEFENDANTS WOULD BE UP IN ARMS.  "HOW CAN THE PLAINTIFFS KNOW

21   WHAT OUR DEFENSE IS AND OUR TRIAL STRATEGY IS?  WHY SHOULD THEY

22   BE GIVEN THE AUTHORITY TO DETERMINE WHAT IS RELEVANT TO OUR

23   CASE AND TRIAL STRATEGY?"

24             MR. JOHNSON:  THIS IS A CASE -- AND I'M SPEAKING FOR

25   GOOGLE HERE -- WHERE WE PLAN TO LOOK AT A FEW DOCUMENTS, ONES

```
 1   WHERE THEY SEE THE WHOLE DOCUMENT, AND THEY SAY "WE DON'T NEED
 2   THIS."  THEY SAY "IT'S NOT RELEVANT TO OUR CASE" AND WE REDACT
 3   IT ACCORDINGLY.
 4        THE COURT:  WHAT I'M SAYING IS YOU CAN STILL HAVE
 5   THAT PROCESS.  YOU'RE GOING TO SHOW THEM EVERYTHING, AND THEN
 6   YOU CAN STILL HAVE THE PROCESS WHERE ANY DOCUMENT THAT'S GOING
 7   TO REMAIN IN THE CASE, WHETHER AS AN EXHIBIT OR WHATNOT, IS IN
 8   THE REDACTED FORM THAT'S AGREED UPON BY THE PARTIES.
 9        SO WHEN IS THAT GOING TO BE DONE?  YOU'VE GOT DEPOSITIONS
10   OF FOUNDERS HAPPENING NEXT TUESDAY AND NEXT FRIDAY, SO I NEED
11   ALL OF THE 700 DOCUMENTS TO BE PRODUCED.
12        IF YOU WANT TO -- YOU KNOW, I THINK IT'S UNDULY BURDENSOME
13   TO SAY, "I'M NOT GOING TO PRODUCE IT TO THE PLAINTIFFS UNTIL
14   THEY SIT DOWN WITH ME AND GO THROUGH DOCUMENT BY DOCUMENT AND
15   DETERMINE WHETHER THEY APPROVE OF THE REDACTION OR NOT" WHEN
16   WE'RE LOOKING AT CLOSE OF FACT DISCOVERY ON MARCH 29TH.
17        MR. JOHNSON:  I --
18        THE COURT:  I DON'T THINK THAT'S FAIR.
19        MR. JOHNSON:  UNDERSTOOD, YOUR HONOR.
20   BUT THE PLAINTIFFS, I THINK, DIDN'T FEEL THAT IT WAS
21   UNFAIR.  WHAT WE'RE TALKING ABOUT IS A FEW DOCUMENTS, AND THEY
22   WERE INTERESTED IN WORKING WITH US COOPERATIVELY HERE.
23        SO THAT'S WHY I MENTIONED IT.  I MEAN, I THINK THAT IF THE
24   PLAINTIFFS HAD FOUND THIS UNFAIR, YOU WOULD HAVE HEARD FROM
25   THEM ON THAT POINT.
```

```
 1            THIS WAS SOMETHING WHERE --

 2                 THE COURT:  RIGHT.  BUT YOU'RE ASKING THEM TO GUESS

 3      ON A BLANK SQUARE, ON A BLACKED OUT SQUARE.  THEY'RE SUPPOSED

 4      TO GUESS THAT THAT IS ACTUALLY CONCEALING SOMETHING THAT'S

 5      RELEVANT TO THEIR CASE.

 6                 MR. JOHNSON:  NO, YOUR HONOR.  WE'LL SHOW THEM WHAT'S

 7      IN THE SQUARE.

 8                 THE COURT:  NO.  YOU'RE SAYING THAT'S FOR A HANDFUL

 9      OF DOCUMENTS.

10                 MR. JOHNSON:  AND WITH RESPECT TO ALL THE REST,

11      THEY'RE BEING PRODUCED -- THEY'RE GOING TO BE PRODUCED IN AN

12      UNREDACTED FORM AS SOON AS WE CAN GET THE VENDOR TO CREATE

13      THEM.

14                 THE COURT:  ALL RIGHT.

15                 MR. JOHNSON:  SO THERE'S NO GUESSWORK INVOLVED.

16                 THE COURT:  ALL RIGHT.  SO PRODUCE -- SO YOU'RE

17      SAYING YOU'RE GOING TO PRODUCE THEM WITHOUT REDACTIONS?

18                 MR. JOHNSON:  WE'RE GOING TO PRODUCE WITHOUT

19      REDACTIONS EXCEPT FOR A VERY SMALL MANAGEMENT SUBSET WHICH

20      WE'LL PRODUCE WITH AGREED UPON REDACTIONS WHERE THE PLAINTIFFS

21      SEE THE WHOLE DOCUMENT AND SAY, "HEY, WE DON'T NEED THAT.  WE

22      UNDERSTAND IT'S COMMERCIALLY SENSITIVE.  WE UNDERSTAND IT'S

23      S.E.C. SENSITIVE INFORMATION THAT'S NOT RELEVANT TO OUR CASE"

24      AND --

25                 THE COURT:  ALL RIGHT.  WELL THEN, PRODUCE ALL OF THE
```

1    DOCUMENTS WITHOUT REDACTIONS, WITH THE EXCEPTION OF THE FEW

2    THAT YOU'RE GOING TO MEET ON FRIDAY, RIGHT?  YOU'RE MEETING ON

3    FRIDAY?

4             MR. JOHNSON:  WE'RE MEETING ON FRIDAY WITH RESPECT TO

5    THE ONES THAT RELATE TO MR. BRIN AND WHAT THEY CALL THE EMG

6    GROUP.

7             THE COURT:  THIS IS NOT ACCEPTABLE.  THERE'S 700

8    DOCUMENTS.  THEY ARE TAKING DEPOSITIONS OF FOUNDERS NEXT

9    TUESDAY AND FRIDAY AND YOU'RE GOING TO PIECE IT OUT PIECEMEAL?

10   WHEN WERE YOU GOING TO MEET FOR LARRY PAGE'S DOCUMENTS?  NEXT

11   WEDNESDAY?

12            MR. JOHNSON:  WELL, APPROXIMATELY, YES, YOUR HONOR.

13            THE COURT:  NO.  THAT'S NOT GOOD ENOUGH.  THAT'S NOT

14   GOOD ENOUGH.  THIS IS NOT GOOD ENOUGH, OKAY?

15       YOU ARE GOING TO PRODUCE ALL THE DOCUMENTS AND YOU'RE GOING

16   TO DO BY SATURDAY OR SUNDAY.  WHAT WOULD YOU LIKE?

17            MR. JOHNSON:  WELL, YOUR HONOR, SUNDAY -- IF IT HAS

18   TO BE ON A WEEKEND, THEN SUNDAY IS PREFERABLE TO SATURDAY.

19            THE COURT:  WELL, I THINK IT'S ONLY FAIR.  THEY'RE

20   TAKING THE DEPOSITION ON TUESDAY, MARCH 19TH.  I THINK THEY

21   SHOULD GET AT LEAST ONE DAY TO REVIEW THE DOCUMENTS BEFORE THEY

22   HAVE TO DEPOSE YOUR FOUNDER.  I THINK THAT'S REASONABLE.

23            MR. JOHNSON:  YES, YOUR HONOR.  WE WERE PLANNING ON

24   MEETING WITH THEM ON FRIDAY WITH ANY DOCUMENTS THAT RELATED TO

25   MR. BRIN.

```
 1          THE COURT:  RIGHT.  THAT'S FROM YOUR PERSPECTIVE OF
 2     WHAT YOU THINK IS RELEVANT TO MR. BRIN.  OKAY?
 3          SO YOU'RE GOING TO PRODUCE ALL OF THE DOCUMENTS ON
 4     MARCH 17TH.  SO ANY THAT YOU WANT TO WITHHOLD, NOT JUST
 5     RELATED, NOT LIMITED TO MR. BRIN AND EMG GROUP, YOU'RE GOING TO
 6     DO THAT ON FRIDAY.  OKAY?
 7          MR. JOHNSON:  YES, YOUR HONOR.
 8          THE COURT:  SO FRIDAY FOR ANYTHING ELSE THAT YOU WANT
 9     TO ONLY PRODUCE IN REDACTED FORM, AND THE MEET AND CONFER WILL
10     BE FRIDAY.
11          AND THEN EVERYTHING ELSE WILL GET PRODUCED ON SUNDAY SO
12     THEY HAVE ONE DAY BEFORE THEY HAVE TO DEPOSE MR. BRIN ON
13     TUESDAY.
14          OKAY.  NOW, YOU'RE -- I GUESS YOUR POSITION IS, SINCE
15     YOU'RE GOING TO MAKE THE PRODUCTION OF EVERYTHING ON SUNDAY,
16     THAT YOU DON'T NEED TO DO A REDACTION LOG BECAUSE YOU'RE GOING
17     TO GIVE THEM ALL OF THE REDACTED -- I THINK YOU SHOULD STILL DO
18     A REDACTION LOG.
19          MR. JOHNSON:  WE'D BE HAPPY TO DO A REDACTION LOG,
20     YOUR HONOR.
21          THE COURT:  OKAY.  WHEN DO YOU WANT TO DO THAT BY?
22          MR. JOHNSON:  WE CAN CERTAINLY DO IT BY THE 22ND, AND
23     HOPEFULLY BEFORE.
24          THE COURT:  OKAY.  MARCH 22ND.
25          MR. JOHNSON:  YEAH.
```

```
 1              THE COURT:  NOW, WHAT DEPOSITIONS ARE LEFT OF INTUIT,
 2      ADOBE, AND INTEL?
 3              MS. DERMODY:  SO, YOUR HONOR, FOR INTUIT, WE HAVE
 4      SHERRY WHITELY, WHICH IS TOMORROW, MARCH 14; MASON STUBBLEFIELD
 5      ON MARCH 18; CHRIS GALY ON MARCH 20; SCOTT COOK ON MARCH 22;
 6      ALEX LINTER ON MARCH 28.
 7          AND THEN THERE ARE TWO WITNESSES THAT THE PARTIES HAVE BEEN
 8      MEETING AND CONFERRING ON, ROBERT DEMARTINI AND TRACY WICKS.
 9              THE COURT:  ALL RIGHT.  WHEN ARE THOSE GOING TO BE
10      SCHEDULED?  I MEAN, WE'RE DOWN TO LESS THAN 16 DAYS.  WE HAVE
11      12 DAYS LEFT OF FACT DISCOVERY.  WHEN ARE THOSE GOING TO BE
12      SCHEDULED?
13              MS. DERMODY:  WE'VE BEEN WORKING VERY WELL WITH
14      INTUIT ON SCHEDULING DEPOSITIONS AND WE FULLY EXPECT THAT THOSE
15      WILL BE SCHEDULED.
16          THERE WAS A PREFERENCE IN THE SCHEDULE FOR WHEN THEY WOULD
17      FALL AFTER CERTAIN WITNESSES, AND I THINK THAT WAS PART OF THE
18      PHASING OF THOSE DEPOSITIONS SO THAT -- THEY WEREN'T PROBLEM
19      DEPOSITIONS.  IT WAS MORE THEY WERE BEING SET FOR AFTER SOMEONE
20      HAD BEEN COMPLETED.
21              THE COURT:  WELL, MR. LINTER, WHOMEVER THAT IS,
22      MR. OR MS. LINTER IS MARCH 28TH, SO YOU HAVE ONE DAY LEFT OF
23      FACT DISCOVERY, MARCH 29TH.
24          SO YOU'RE TELLING ME DEMARTINI AND WICKS ARE GOING TO BE
25      AFTER LINTER?
```

```
 1          MS. DERMODY:  IT COULD HAPPEN CONSECUTIVELY WITH
 2   OTHER WITNESSES THAT ARE ALREADY ON THE CALENDAR OR IN BETWEEN
 3   DAYS THAT ARE ALREADY SCHEDULED.  IT DOESN'T HAVE TO BE ON THE
 4   29TH.  IT REALLY WAS THAT THEY WERE GOING TO BE GOING AFTER
 5   OTHER WITNESSES.
 6          MS. ZENG:  I THINK THEY'D REQUESTED THAT THEY GO
 7   AFTER MARCH 15TH, SO WE'RE TRYING TO ACCOMMODATE THAT.
 8          THE COURT:  OKAY.  WELL, I MEAN, WE'RE DOWN TO NOT
 9   VERY MUCH TIME, SO I NEED THOSE DATES TO BE RESOLVED.
10          MS. ZENG:  WE'RE WORKING REALLY HARD TO GET YOU THOSE
11   DATES.
12      THESE WERE JUST RECENTLY REQUESTED, AND BOTH THE WITNESSES
13   HAVE BEEN TRAVELLING OR WILL BE TRAVELLING, SO WE'VE JUST BEEN
14   TRYING TO FIND DATES THAT WORK FOR BOTH OF THOSE WITNESSES.
15          THE COURT:  OKAY.  WELL, GIVE ME A DATE BY WHICH
16   THEY'RE GOING TO BE SCHEDULED.
17      I REALLY WANT FACT DISCOVERY TO CLOSE ON THE 29TH, JUST FOR
18   EVERYBODY TO BE DONE.
19      SO GIVE ME A DATE BY WHEN THIS IS GOING TO GET AT LEAST --
20   NOT THAT IT HAS TO HAPPEN BY, BUT AT LEAST IT'S SCHEDULED BY.
21   WHEN IS THAT GOING TO HAPPEN?
22          MS. DERMODY:  FRIDAY?
23          MS. ZENG:  I THINK WE COULD DO FRIDAY.  WE CAN GET
24   DATES BY FRIDAY.
25          THE COURT:  OKAY.  ALL RIGHT.  THEN INCLUDE THAT IN
```

1          THE UPDATE, PLEASE.

2                 MS. DERMODY:  YES.

3                 THE COURT:  OKAY.  NOW, WHAT ABOUT ADOBE AND INTEL?

4     WHAT OTHER DEPOSITIONS ARE LEFT?

5                 MR. SAVERI:  SO FOR ADOBE, WE HAVE BRUCE CHIZEN ON

6     THE 15TH; WE HAVE NATALIE KESSLER ON THE 22ND; WE HAVE

7     ROSEMARY ARRIADA, I THINK HER LAST NAME IS PRONOUNCED KEIPER,

8     ON THE 26TH; I THINK WE HAVE -- WE'VE GOT TWO DATES WE NEED TO

9     CONFIRM, ONE IS DEBBIE STREETER, WHO WAS SICK, I GUESS, SHE HAD

10    PNEUMONIA AND WE POSTPONED HER AND SO THAT'S AN OPEN ISSUE; AND

11    KIM HOFFMAN.

12        AND THOSE ARE THE -- THAT'S MY LIST FOR ADOBE.

13                THE COURT:  HOFFMAN IS NOT SCHEDULED?

14                MR. SAVERI:  WE WERE TRYING FOR THE 29TH AND SO WE

15    HAVE -- WE DON'T HAVE THAT CONFIRMED YET.

16                THE COURT:  OKAY.  BY FRIDAY, THE 15TH, I REALLY NEED

17    TO HAVE EVERYONE CONFIRMED JUST SO EVERYTHING IS DONE AND WE

18    CLOSE THIS CHAPTER IN THIS CASE ON THE 29TH.

19        WHO IS LEFT FROM INTEL?

20                MR. SAVERI:  I THINK THAT THE OPEN -- SO INTEL, JUST

21    TO GO THROUGH THE LIST, THERE ARE -- RANDALL GOODWIN ON THE --

22    WAIT.  I THINK THERE ARE SOME -- RENEE JAMES IS ON THE 22ND; WE

23    HAVE SOME OPEN ISSUES WITH RESPECT TO, I BELIEVE IT'S

24    RANDALL GOODWIN, DANNY MCKELL, AND TINA EVANGELISTA.

25                MR. PICKETT:  EXCUSE ME.  I THOUGHT THOSE WERE

```
1    SCHEDULED.
2             MR. SAVERI:  THERE WAS SOME -- THERE WAS SOME -- I
3    THOUGHT THERE WAS -- I'M HAPPY TO WORK THIS OUT.
4             MR. PICKETT:  I THOUGHT EACH ONE HAD BEEN SCHEDULED.
5             MR. SAVERI:  I HAVE DIFFERENT INFORMATION, SO I --
6             THE COURT:  ALL RIGHT.  WELL, JUST ON FRIDAY, IF YOU
7    WOULD JUST INCLUDE IT, WHETHER IT'S BEEN SET OR NOT, AND TRY TO
8    HAVE -- SINCE WE'RE REALLY DOWN TO TEN BUSINESS DAYS AS OF
9    FRIDAY WHEN YOU FILE YOUR JOINT STATEMENT, I HOPE THAT
10   EVERYTHING IS SCHEDULED AT THAT POINT.
11            MR. SAVERI:  AND, YOUR HONOR --
12            MR. PICKETT:  I'M SORRY.  GOODWIN, MCKELL, AND
13   EVANGELISTA?
14            MR. SAVERI:  YEAH.  YES.
15       YOUR HONOR, ONE OF THE PROBLEMS WE'RE HAVING, OBVIOUSLY, IS
16   IF YOU LOOK AT THE CALENDAR, THERE'S 26 NAMES WE'RE TRYING TO
17   PILE IN HERE, SO WE'RE TRYING TO DO THE BEST WE CAN BY GETTING
18   EVERYTHING DONE BY THE 29TH.  WE'RE GOING TO GET IT DONE, BUT
19   IT'S --
20            MS. DERMODY:  IT'LL BE DONE.  WE'LL REPORT TO THE
21   COURT ON FRIDAY.  IF THERE ARE ANY OPEN DATES FOR ANY OF THE
22   DEFENDANTS, WE CAN, I'M SURE, SAFELY GIVE THE COURT WHAT THOSE
23   DATES ARE.  WE REALLY HAVEN'T HAD TROUBLE SCHEDULING ONCE WE'VE
24   AGREED ON A WITNESS GOING FORWARD.
25            THE COURT:  OKAY.  WHAT ELSE?  IS THERE ANYTHING ELSE
```

```
1       THAT WE HAVE TO COVER?

2           I REALLY WOULD LIKE FACT DISCOVERY TO BE COMPLETED BY

3       MARCH 29TH AND NOT TO HAVE ANY EXTENSIONS, SO IF AT ALL

4       POSSIBLE, LET'S PLEASE MAKE THAT HAPPEN.

5           WHAT -- YOU WERE GOING TO TELL ME, ARE YOU WITHDRAWING YOUR

6       MOTION TO STRIKE THE DECLARATIONS FOR THE CLASS CERT MOTION, OR

7       NOT?

8               MR. SAVERI:  WELL, YOUR HONOR, MY RECOLLECTION -- AND

9       I DON'T HAVE IT COMMITTED MEMORY -- IS THAT ONE OF THE ISSUES

10      WE HAD, AND WHAT WAS PART OF OUR MOTION TO STRIKE, IS THAT

11      DEFENDANTS' EXPERT, DR. MURPHY, INTERVIEWED SOME OF THE

12      DEFENDANTS' FOLKS AND WE ASKED FOR THE NOTES AND RECORDS OF

13      THOSE INTERVIEWS AND I DON'T BELIEVE THOSE WERE GIVEN TO US.

14          THAT WAS PART OF THE MOTION FOR THE -- THE SUBJECT OF THE

15      MOTION TO STRIKE.

16          FRANKLY, YOUR HONOR, I DO NOT KNOW WHETHER, WITHIN THE

17      PRODUCTION OF MATERIALS THAT WE'VE TALKED ABOUT ALREADY, THAT

18      MATERIAL IS INCLUDED OR IF DEFENDANTS STAND BY THEIR POSITION

19      NOT TO PRODUCE THAT MATERIAL OR WHERE WE STAND ON THAT.

20          THAT'S MY RECOLLECTION OF WHERE WE WERE ON THE MOTION TO

21      STRIKE.

22              THE COURT:  ALL RIGHT.  EITHER WAY, I WOULD ASSUME

23      YOUR POSITION IS EVEN IF YOU GOT THE DISCOVERY AFTER, YOU

24      DIDN'T GET IT IN TIME TO INCLUDE IT IN YOUR CLASS CERT MOVING

25      PAPER OR REPLY?
```

```
1           SO ANYWAY --
2                MR. SAVERI:  YES.
3                THE COURT:  OKAY.  ALL RIGHT.  IS THERE ANYTHING
4     ELSE?  OTHERWISE THEN WE'LL GET TOGETHER ON APRIL 2ND AT 2:00
5     O'CLOCK.
6           I'LL HOPEFULLY ISSUE THE ORDER IN THE NEXT -- YOU KNOW,
7     BEFORE THE END OF THE MONTH.
8           WHEN DO YOU ALL WANT TO FILE -- DO YOU WANT TO SAY BY
9     APRIL 1 YOU CAN FILE A SORT OF JOINT STATEMENT AS TO WHAT NEEDS
10    TO HAPPEN FOR THE REST OF THE CASE IN LIGHT OF WHATEVER
11    HAPPENED ON DISCOVERY AND THE CLASS CERT ORDER?
12               MR. MITTELSTAEDT:  WE'LL DO IT AT LEAST BY APRIL 1,
13    AND IF WE CAN DO IT EARLIER, WE'LL DO THAT.
14               MR. SAVERI:  YES.
15               THE COURT:  THAT'S GREAT.  BUT I KNOW YOU'LL BE VERY,
16    VERY BUSY THROUGH THE 29TH, SO IF YOU WANT TO SAY BY, I DON'T
17    KNOW, NOON ON APRIL 1, OR 2:00 O'CLOCK ON APRIL 1?
18               MS. DERMODY:  THAT'S GREAT, YOUR HONOR.
19               MR. SAVERI:  YES.
20               MR. MITTELSTAEDT:  YES.
21               THE COURT:  OKAY.  SO APRIL 1 AT 2:00 O'CLOCK, PLEASE
22    FILE A JOINT CASE MANAGEMENT STATEMENT WITH ANY ISSUES THAT WE
23    HAVE TO ADDRESS IN THE CASE GOING FORWARD.
24               MR. MITTELSTAEDT:  OKAY.
25               THE COURT:  ALL RIGHT.  THANK YOU.  I REALLY
```

```
1          APPRECIATE YOUR PATIENCE.

2                  MS. DERMODY:  THANK YOU, YOUR HONOR.

3                  MR. SAVERI:  THANK YOU, YOUR HONOR.

4                  MS. HENN:  THANK YOU, YOUR HONOR.

5                  MR. MITTELSTAEDT:  THANK YOU, YOUR HONOR.

6             (THE PROCEEDINGS IN THIS MATTER WERE CONCLUDED.)

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1

2

3                        CERTIFICATE OF REPORTER

4

5

6

7          I, THE UNDERSIGNED OFFICIAL COURT REPORTER OF THE UNITED

8     STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA,

9     280 SOUTH FIRST STREET, SAN JOSE, CALIFORNIA, DO HEREBY

10    CERTIFY:

11         THAT THE FOREGOING TRANSCRIPT, CERTIFICATE INCLUSIVE, IS

12    A CORRECT TRANSCRIPT FROM THE RECORD OF PROCEEDINGS IN THE

13    ABOVE-ENTITLED MATTER.

14

15

16    _____
      LEE-ANNE SHORTRIDGE, CSR, CRR
17    CERTIFICATE NUMBER 9595

18         DATED:  MARCH 26, 2013

19

20

21

22

23

24

25