MAYER BROWN LLP
LEE H. RUBIN (SBN 141331)
lrubin@mayerbrown.com
EDWARD D. JOHNSON (SBN 189475)
wjohnson@mayerbrown.com
DONALD M. FALK (SBN 150256)
dfalk@mayerbrown.com
ERIC B. EVANS (SBN 232476)
eevans@mayerbrown.com
Two Palo Alto Square, Suite 300
3000 El Camino Real
Palo Alto, CA 94306-2112
Telephone:    (650) 331-2000
Facsimile:    (650) 331-2061

*Attorneys for Defendant*
*Google Inc.*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| IN RE: HIGH-TECH EMPLOYEE ANTITRUST LITIGATION<br><br>THIS DOCUMENT RELATES TO:<br><br>ALL ACTIONS | Master Docket No. 11-CV-2509-LHK<br><br>**GOOGLE INC.'S OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL PRODUCTION OF DOCUMENTS**<br><br>Date:          February 26, 2013<br>Time:          10:00 a.m.<br>Courtroom:   5, 4th Floor<br>Judge:          Honorable Paul S. Grewal |

**INTRODUCTION**

Plaintiffs' motion to compel production of privileged documents from Google's log is based entirely on two arguments that are demonstrably false:

*First*, based on nothing more than their own bald assertion, Plaintiffs argue that Google's communications with Bill Campbell are not privileged because Mr. Campbell was not the "functional equivalent of an employee."  Motion at 4:17-18; *see also id*. 4:3-6:15 (Mr. Campbell "was not a Google employee" or "a Google Consultant.").  But Plaintiffs are flat wrong. As the formal Consulting and Employment Agreements attached to the accompanying declaration of Mr. Campbell show, Mr. Campbell was, in fact, a consultant for Google and now is an employee. Specifically, he first worked as a consultant for Google from 2002 through 2007 and has been an employee since 2007.  *See* Campbell Decl., Ex. A ("Consulting Agreement") and Exs. B. and C ("Employment Agreement").[1]  These incontrovertible facts are fatal to Plaintiffs' primary argument.

*Second*, Plaintiffs argue that Google had no reason to believe that the challenged emails involving Mr. Campbell would be held in confidence because they were addressed to or sent from Mr. Campbell's email account at Intuit, Inc., where he is Chairman of the Board.  Motion 6:16-8:9. Yet, Mr. Campbell's Consulting and Employment Agreements with Google explicitly obligated him not to disclose any Google "Confidential Information," which of course includes any communications within Google seeking or providing legal advice.  Accordingly, Google had every reason to believe that Mr. Campbell would hold these kinds of communications in strict confidence. Moreover, Plaintiffs present no evidence that Google was (or should have been) aware of any Intuit corporate email policy that would undercut Google's expectation that Mr. Campbell would honor his contractual commitment to maintain the confidentiality of Google's confidential emails.  Indeed, contrary to Plaintiffs' claims, where a company has a policy of limited personal use of an employer's computer—as Intuit does—that factor weighs in favor of upholding the assertion of privilege.  *U.S. v. Hatfield*, 2009 WL 3806300, *9 (E.D.N.Y., Nov. 13, 2009).

---

[1] Google offered to share Mr. Campbell's declaration with Plaintiffs prior to filing its opposition as part of Google's attempt to further meet and confer (and proposed that the parties stipulate to an extension of one day for Google to file its opposition to allow time for further dialogue).  Plaintiffs refused and insisted that the parties go forward to present this dispute to the Court.  See Declaration of Lee. H. Rubin, dated January 25, 2013 ¶ 2.

In short, Plaintiffs are effectively asking this Court to find that an otherwise privileged and confidential communication to a *bona fide* consultant or employee loses its confidential status if the communication is sent to or from another corporate email address.  That is not the law.  Indeed, such a rule would mark a fundamental change in the law of privilege and disrupt settled expectations regarding the protection to be afforded confidential communications between a company and its board of directors (or others) who may use different corporate email addresses from the company they serve.   For all of these reasons, the Court should reject Plaintiffs' invitation to create new law with far-reaching implications and deny Plaintiffs' motion.

## ARGUMENT[2]

### I.  BILL CAMPBELL'S FORMAL CONSULTING AND EMPLOYMENT AGREEMENTS WITH GOOGLE ESTABLISH THAT MR. CAMPBELL WAS AN EMPLOYEE OR THE "FUNCTIONAL EQUIVALENT OF AN EMPLOYEE."

Plaintiffs' primary argument in support of their motion to compel is based entirely on their assertions that:

> Campbell was not a Google employee. Nor was he a Google consultant. Google does not claim that it had a retention agreement with him.

Motion 4:17-18; *see also id.* 4:3-6:15.  Plaintiffs are simply wrong.  In fact, he was both a consultant for and an employee of Google—as reflected in his formal Consulting and Employment Agreements.

As those Agreements clearly show, Mr. Campbell was a formally retained consultant for Google from 2002 to 2007, and in May 2007, Google officially hired him as an employee with the title of Part-Time Google Advisor.  *See* Campbell Decl., Ex. A (Consulting Agreement) and Ex. B (Employment Agreement).  In his role as a consultant and an employee, Google engaged Mr. Campbell to provide Google advice "with respect to Google's corporate and business strategy" and Google's "organizational development and internal business processes."  *See id.*, Ex. A (Exhibit A, "Services and Compensation").  Moreover, Google's senior managers regularly communicated with

---

[2] Plaintiffs have not actually contested Google's assertion of work product protection. *See* Motion 3 n.4.   Although Plaintiffs claim that Google waived its attorney-client privilege in communications with Mr. Campbell because he was not a Google employee and communications with him passed through his intuit.com email address, these arguments do not address the work product doctrine, for which "confidentiality" is not a *prima facie* element. *Elan Microelectronics Corp. v. Apple, Inc.*, 2011 WL 3443923, *2 (N.D. Cal. Aug. 8, 2011) (citing *United States v. Richey*, 632 F.3d 559, 567 (9th Cir. 2011)) (Grewal, M.J.).

1   Mr. Campbell, seeking his advice and thoughts on important strategic decisions. *See*, *e.g.*,

2   Declaration of Alan Eustace (dkt. no. 200 and refiled concurrently), dated Oct. 9, 2012, ¶¶ 4-5. All

3   of the communications that Plaintiffs now challenge are dated after January 1, 2002, when Mr.

4   Campbell's Consulting Agreement became effective. *Compare* Campbell Decl. Ex. A (preamble)

5   *with* Harvey Decl. Exs. F, G, and H (Google privilege logs). As a consequence, there can be no

6   question that Mr. Campbell was, in fact, an employee or the "the functional equivalent of an

7   employee" when each of the challenged communications occurred. *United States v. Graf*, 610 F.3d

8   1156, 1159 (9th Cir. 2010).

9   **II.    AN *IN CAMERA* REVIEW WILL ALSO BELIE PLAINTIFFS' ARGUMENT
10          THAT THE CONTENT OF THESE COMMUNICATIONS ARE NOT
            PRIVILEGED.**

11          Plaintiffs complain to the Court that "Google has improperly withheld or redacted 166

12   responsive email communications." Motion at 2:21. What Plaintiffs fail to say, however, is that the

13   majority of the challenged emails were produced, just in redacted form.[3] According to Plaintiffs, the

14   unprivileged portions of these redacted but produced documents somehow refute Google's privilege

15   assertions because they suggest that Mr. Campbell was not acting in Google's interests, but rather in

16   the interest and on behalf of Intuit. *See* Motion 4:23-6:5. Yet, Plaintiffs' argument merely assumes

17   what Plaintiffs are trying to prove—namely that Mr. Campbell was not an employee or consultant

18   when the challenged communications were made. The Agreements prove that assumption is

19   demonstrably false.

20          An *in camera* review by the Court of a representative set of the challenged communications

21   will further demonstrate that the communications over which Google has asserted privilege are

22   solely confined to matters related to Google's operations and business strategy, and do not pertain to

23   communications where Mr. Campbell is communicating on behalf of Intuit. Accordingly, in an

24

25   [3] In fact, after Plaintiffs questioned Google's 166 privilege log entries, Google re-reviewed each of
     them and agreed to produce 27 of the communication in full or without the originally proposed
26   redactions. Accordingly, only 139 log entries remain in dispute. Of these in dispute, 79 entries
     reflect redacted but produced documents and 60 entries record documents that were withheld.
27   Moreover, many of the 139 entries relate to emails within the same email "chain." In the end,
     Google estimates that there are only 69 entries in dispute that reflect unique documents or emails.
28   *See* Rubin Decl. ¶ 3.

1   effort to further put this issue to rest, Google has submitted for the Court's inspection a sampling of

2   the documents at issue, including the unredacted versions of documents

3   **III.   GOOGLE HAD EVERY REASON TO EXPECT THAT ITS PRIVILEGED
        COMMUNICATIONS WITH MR. CAMPBELL WOULD REMAIN**

4   **CONFIDENTIAL.**

5       As a secondary argument, Plaintiffs claim that Google's use of an "intuit.com" email address

6   to communicate with Bill Campbell on privileged matters somehow precludes Google from

7   asserting privilege over these communications.   Plaintiffs' argument misses the mark for several

8   reasons.

9       **A.   Google Understood That Its Attorney-Client Communications Involving Mr.
            Campbell Would Be Maintained in Confidence and Had a Reasonable Basis**

10   **for That Expectation**

11      As Plaintiffs acknowledge, a communication is confidential—and therefore may be treated

12   as privileged—where it was "(1) intended to remain confidential and (2) under the circumstances,

13   was reasonably expected and understood to be confidential."  *In re Asia Global Crossing*, 322 B.R.

14   247, 255 (2005) (quoting *United States v. Bell*, 776 F.2d 965, 971 (11th Cir. 1985)); *see also United*

15   *States v. Melvin*, 650 F.2d 641, 645 (5th Cir. 1981) ("A communication is protected by the attorney-

16   client privilege if it intended to remain confidential and was made under circumstances that it was

17   reasonably expected and understood to be confidential").  The evidence shows that (a) Google senior

18   executives subjectively believed that its attorney-client communications with Mr. Campbell would

19   remain confidential and (b) that they had a strong objective basis for that expectation.

20      As to the subjective understanding of Google's management, a Google senior executive has

21   already asserted on the record in this case that he "often included" Mr. Campbell in email

22   discussions of "confidential and highly sensitive matters," regarding "Google's business operations

23   and corporate strategy," and when he was included, it was "understood and expected that Mr.

24   Campbell would maintain the confidentiality of Google's confidential and highly sensitive

25   information and not share that information with anyone other than those owed a duty of

26   confidentiality to Google."  Eustace Decl. (Senior Vice President of Business Operations) at ¶¶ 4-5.

27   Not surprisingly, Mr. Campbell corroborates that understanding as well, and confirms in his

28   declaration that he understood "Confidential Information" within meaning of his Agreements to

-4-

include privileged communications.   Campbell Decl. ¶ 4.   Mr. Campbell also confirms that he "closely guarded Google Confidential Information [he has] received, including communications with Google management and in-house attorneys sent from or to [his] 'intuit.com' email address."[4]

Further, Google manifestly had reasonable grounds for expecting that Mr. Campbell would hold Google's privileged communications in confidence:   His Consulting and Employment Agreements impose an affirmative obligation on him to do so.   Specifically, he committed to Google that he would not "disclose Google's Confidential Information to any third party" (*id.*, Ex. A (Consulting Agreement) at 2) and that he would "hold in the strictest confidence" any "Confidential Information of Google . . ." (*id.*, Ex. B (Employment Agreement), § 2(a).

Under this record, there can be no serious doubt that Google intended and expected attorney-client communications with Campbell to "remain confidential" and that it had a more than reasonable basis for that expectation.   See *Melvin*, 650 F.2d at 645; *see also Hatfield*, 2009 WL 3806300, *10 (where employer and employee both acted consistent with the expectation of confidentiality, it would be "fundamentally unfair" not to recognize the reasonableness of their mutual understanding).

**B.      The Factors Set Forth in *Asia Global Crossing* Do Not Support Plaintiffs Claim That the Challenged Documents Are Not Privileged**

Plaintiffs cannot cite any actual disclosure of privileged information shared with Mr. Campbell.   Indeed, to the best of Google's and Mr. Campbell's knowledge, Mr. Campbell "closely guarded" Google's privileged communications with him.   Campbell Decl. ¶ 6.   Unable to offer any

---

[4]  What is more, even had Mr. Campbell not taken adequate steps to closely guard Google privileged communications—and all available evidence indicates that he did—the failure by Mr. Campbell to do so does not constitute a waiver of the attorney-client privilege by Google – the holder of the privilege.   It is well settled that a corporation's privilege belongs to the corporation and "the power to waive the corporate attorney-client privilege rests with the corporation's management and is normally exercised by its officers and directors."   *U.S. v. Chen*, 99 F.3d 1495, 1502 (9th Cir. 1996) (quoting *Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343, 348 (1985).   Accordingly, mere disclosure of a corporation's privileged communication by an employee does not waive the corporation's privilege, provided that the corporation takes reasonable steps to avoid waiver.   *Cell Therapeutics, Inc. v. Lash*, 2011 WL 1930603, *4 (W.D. Wash. May 18, 2011).   Mr. Campbell was neither an officer nor a director of Google.   He was a "Management Consultant" and, later, a "Part-Time Google Advisor."   Campbell Decl. Exs. A (Ex. A) and B at 1.   Neither of these titles rendered him the a "holder of [Google's] privilege" (*Resolution Trust Corp. v. Dean*, 813 F. Supp 1426, 1428 (D. Ariz. 1993)) and as a consequence, Mr. Campbell had no authority to waive Google's privilege in its communications with him.

specific evidence of disclosure, Plaintiffs instead hang their argument entirely on the multi-factor test articulated in *Asia Global Crossing*.  Under those factors, Plaintiffs argue that Google's had no objective grounds to believe communications sent from or to Mr. Campbell's "intuit.com" address would remain confidential.  In particular, they point to Intuit's Code of Conduct and Ethics (Harvey Decl. Ex. N), which generally discourages its email users from using Intuit's electronic systems for anything other than Intuit business and states that Intuit reserves the right to "inspect and monitor all company resources, property and assets" at any time.  *Id*. at 22.  But this Intuit policy—absent evidence that that Google knew that its privileged communications were being shared with third parties whose access would destroy the privilege—does not vitiate Google's reasonable basis to believe that Mr. Campbell honored his contractual commitments.  Equally important, even on their own terms, none of the *Asia Global Crossing* support plaintiffs' argument.

## 1.   Intuit's Code of Conduct and Ethics Policy does not constitute a blanket prohibition of non-company use of emails

The first *Asia Global Crossing* factor is whether the employer has "a policy banning personal or other objectionable use."  322 B.R. at 257.  Here, Intuit's Code of Conduct and Ethics states that "computers" and "cell phones" "remain the property of Intuit and, as a general rule, should only be used by employees for company business."  Plaintiffs claim this policy is such a ban.  Motion 7:8-19.  Courts, however, distinguish between policies that *ban* personal use and policies that merely *discourage* or *limit* personal use.  Outright bans on personal use weigh against a finding of objective confidentiality, but policies permitting *any* personal use, even if limited, weigh in favor of upholding the privilege. *Asia Global Crossing*, 322 B.R. at 261 (holding that court could not find absence of reasonable expectation of confidentiality where evidence did not demonstrate that employer had any computer use policy); *United States v. Nagle*, 2010 WL 3896200, *4-5 (M.D. Pa. Sept. 30, 2010) (sustaining privilege objection where employer "had no policy banning the use of work computers for personal reasons"); *Convertino v. United States Department of Justice*, 674 F. Supp. 2d 97, 110 (D.D.C. 2009) (sustaining privilege objection in part based upon employer policy that did not ban personal use of company email).

1    Intuit's Code of Conduct and Ethics is plainly not a categorical ban but merely a statement

2    that, "as a general rule," Intuit computer and cell phones "should" only be used for company

3    business.  Harvey Decl. Ex. N; *see also Hatfield*, 2009 WL 3806300, *9 (holding that policy that

4    employees were "expect[ed]" to use their company equipment "solely for business purposes" is not

5    ban and weighs against waiver).  This factor, then, weighs in favor of finding an objective basis that

6    non-company emails can be exchanged in confidence.

7              **2.       There is no evidence that Intuit monitored Mr. Campbell's emails**

8         The second *Asia Global Crossing* factor is whether "the company monitor[s] the use of the

9    employee's computer or email."   322 B.R. at 257.   This factor concerns whether the company

10   *actually* monitored the employee's computer or email, not whether the company merely reserved the

11   right to conduct such monitoring.  *Hatfield*, 2009 WL 3806300, *9; *Nagle*, 2010 WL 3896200, *4

12   (while company's policy reserved right to monitor computer use, lack of evidence of regular practice

13   of actual monitoring favored finding of reasonable expectation of confidentiality).  Plaintiffs present

14   no evidence that Intuit actually monitored Mr. Campbell's computer and Google is unaware of any

15   such monitoring.  Accordingly, this factor also favors upholding Google's assertion of privilege.

16              **3.       There is no evidence that Intuit routinely exercised its right of access to
17                      Mr. Campbell's computer and emails**

18        The third *Asia Global Crossing* factor is whether "third parties have a right of access to the

19   computer or emails."  322 B.R. at 257.  However, when the employer has only a right of access and

20   does not exercise that right or exercises it only intermittently, that factor weighs against waiver.

21   *Curto v. Medical World Communications, Inc*., 2006 WL 1318387, *4-8 (E.D.N.Y. May 15, 2006)

22   (policy allowed employer to "access and review" all computer usage, but company rarely did so, and

23   lack of monitoring was a factor favoring finding of privilege).  Moreover, when personal use is

24   permitted, this factor, even combined with other factors, does not justify a finding that there was a

25   reasonable basis to expect confidentiality.  *Hatfield*, 2009 WL 3806300, *9 (finding no waiver,

26   despite third party right of access, where policy permitted personal use).

27

28

**4.      Because Intuit implicitly permits personal use, any notice to Mr. Campbell weighs in favor of upholding the privilege**

The fourth *Asia Global Crossing* factor is whether "the corporation notif[ied] the employee, or [whether] the employee [was] aware, of the use and monitoring policies."  322 B.R. at 257.  In this case, because the privilege holder is not the Intuit employee or board member, this factor is almost certainly irrelevant to the question of whether Google had a reasonable basis to believe that its privileged communications would remain confidential.  In any event, the record is silent on whether Mr. Campbell was notified of Intuit's access and monitoring policies.  But assuming he was aware of Intuit's corporate policy, where personal use is not prohibited, notice of the policy does not undermine an objective belief of confidentiality.  *See*, *e.g.*, *Hatfield*, 2009 WL 3806300, *9-10 (upholding assertion of privilege despite CEO's constructive notice of company policy permitting personal use).

**CONCLUSION**

For the reasons set forth above, Plaintiffs motion to compel should be denied.

Dated:  January 25, 2013          MAYER BROWN LLP

By:      */s/ Lee H. Rubin*
_____
Lee H. Rubin
*Attorneys for Defendant GOOGLE INC.*

**ATTESTATION**:  *Pursuant to General Order 45, Part X-B, the filer attests that concurrence in the filing of this document has been obtained from the signatory*.