UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION


E:  HIGH-TECH EMPLOYEE     )

TRUST LITIGATION           )

                           )  No. 11-CV-2509-LHK

 DOCUMENT RELATES TO:      )

ACTIONS.                   )

_____


VIDEO DEPOSITION OF WILLIAM CAMPBELL

CONFIDENTIAL - ATTORNEYS' EYES ONLY

February 5, 2013


Reported by:  Anne Torreano, CSR No. 10520

### Page 170

```
 1   recruiting with other companies?
 2       MR. MITTELSTAEDT: You mean with respect to
 3   Google?
 4       MR. HEIMANN: Well, we know from the documents
 5   that there were arrangements between Intuit and other
 6   companies. I understand he says he didn't know about
 7   those.
 8       THE WITNESS: The only one I know of is Intuit
 9   and Google.
10       MR. HEIMANN: All right.
11       THE WITNESS: And the board was not aware of
12   that. Or at least it was never a formal part of any
13   questioning of any sort.
14   BY MR. HEIMANN:
15   Q. Okay. Does Intuit currently have any
16   no-cold-call list itself?
17   A. Not that I'm aware of.
18   Q. How about Apple? Do you know about Apple?
19   A. Well, I guess the documents that you gave me
20   are still current. They've got a new CEO now, so all
21   those things could be gone now. I have no idea.
22   Q. All right.
23   A. This would not reach my level of incompetence.
24       Sorry.
25       MR. MITTELSTAEDT: It's all right.
```

### Page 171

```
 1       THE WITNESS: Frivolous comment. Sorry.
 2   BY MR. HEIMANN:
 3   Q. Were you aware -- let's use it by documents.
 4   298.
 5       So this is an internal Adobe document which I
 6   imagine you have not seen before.
 7   A. What does the URL refer to? What does this
 8   URL refer to?
 9   Q. Where are you reading?
10   A. Well, this must have been an off-limits list.
11   Is there a list?
12   Q. If we had been provided with a list that was
13   associated with this e-mail, we would have included
14   it. So I've got to assume we didn't.
15   A. "Please find attached updated off-limits
16   list," and then up at the top there's "A Day in the
17   Life at Adobe" URL underlined. But we don't have
18   any -- I don't have a computer here, so I can't even
19   look at it.
20       I don't know what this means, "Dude, we are
21   officially at war with Apple."
22   Q. That was going to be my question.
23   A. What the hell does that mean?
24   Q. That's -- that's my question to you.
25       And again, you don't know?
```

### Page 172

```
 1   A. I don't know what Adobe means.
 2   Q. Well, it's referring to Apple, and as a board
 3   member of Apple, I thought it was possible that you
 4   knew about some war between Adobe and Apple.
 5   A. 2010. "Yah, bring it on."
 6       What the hell?
 7       No, I don't know. I have no idea.
 8   Q. All right. Let me ask you to take a look at
 9   Exhibit 677.
10       (DEPOSITION EXHIBIT 677 MARKED.)
11       THE WITNESS: Yes, sir. I read that.
12       Oh, read the agreement itself?
13   BY MR. HEIMANN:
14   Q. I wouldn't encourage you to do it, but you're
15   welcome to if you want.
16   A. No, I don't. Disclosure, et cetera, term and
17   termination.
18       Okay.
19   Q. All right. Do you recognize the declaration?
20   A. Yes.
21   Q. Did you write this yourself?
22   A. Probably not.
23   Q. Somebody else wrote it?
24   A. I think I probably dictated some of it, but I
25   didn't write it.
```

### Page 173

```
 1   Q. All right. Did you read it before you signed
 2   it?
 3   A. I did.
 4   Q. Is it accurate in all respects?
 5   A. As far as I can tell, it is accurate.
 6   Q. All right. Let's talk -- start with the date
 7   of January 1st, 2002 as the date that you were engaged
 8   to serve as a consultant for Google.
 9       The outset of your deposition today, you said
10   that was in September of 2001.
11   A. 2001, right.
12   Q. The correct date is September 2001?
13   A. It is 2001. I mean, I probably -- if they
14   formalized it, you know, in the beginning of the year,
15   probably. But I did a lot of stuff with Eric starting
16   right after 9/11.
17       MR. RUBIN: I'll just interpose an objection
18   that misstates prior testimony about the date he
19   provided.
20       THE WITNESS: This is -- this is what -- yeah.
21       But yes, I first started coming to Google in
22   '01. Whether it was a formal agreement of any sort or
23   not at that time, you know, I just -- I really do
24   things kind of informally with companies.
25   BY MR. HEIMANN:
```

Page 182

```
 1  you.  Just the process is what I'm interested in, not
 2  the substance.
 3     A.  I'm not sure what you want me to say.
 4     Q.  Just --
 5         MR. MITTELSTAEDT:  He's entitled --
 6  BY MR. HEIMANN:
 7     Q.  They asked you some questions during the
 8  course of that meeting, I gather.
 9     A.  Correct.
10     Q.  And you answered to the best of your ability?
11     A.  I did.
12     Q.  All right.  Have you reviewed any of -- strike
13  that.
14         Do you know what a deposition transcript is?
15     A.  No.
16     Q.  It's what the court reporter will end up
17  putting together when she does her work, and it will be
18  the questions and answers that you were asked here
19  today.
20         I'm interested to know, have you reviewed any
21  of the transcripts of the depositions of any of the
22  other witnesses who have testified so far in this case?
23     A.  No.
24     Q.  Have you met and spoken with any of the
25  employees at Google or officers at Google in connection
```

Page 183

```
 1  with your preparation for the deposition?
 2     A.  Absolutely not.
 3     Q.  Same with respect to Intuit?
 4     A.  Absolutely not.  I don't think anybody at
 5  Intuit except these guys know.
 6     Q.  Just the lawyers?
 7     A.  Just the lawyers.
 8     Q.  All right.  And did you do anything else that
 9  you haven't yet told us about to get ready for the
10  deposition?
11     A.  I put on a jacket and a tie.
12     Q.  Got that.
13     A.  Very heavy preparation, by the way, just so
14  you know.
15         MR. HEIMANN:  Okay.  So if we can just take
16  five minutes and let me confer about whether I'm done,
17  I'm probably done.
18         And would you like to see the '84 commercial
19  in the meantime?
20         THE WITNESS:  No.
21         THE VIDEOGRAPHER:  We are now off the record
22  at 3:32.
23         (RECESS TAKEN.)
24         THE VIDEOGRAPHER:  We are now on the record at
25  3:37.
```

Page 184

```
 1  BY MR. HEIMANN:
 2     Q.  All right, Mr. Campbell, let me hand you what
 3  we'll mark as Exhibit 678.
 4         (DEPOSITION EXHIBIT 678 MARKED.)
 5  BY MR. HEIMANN:
 6     Q.  Do you recognize this?
 7     A.  I do.
 8     Q.  What is it?
 9     A.  It's Intuit's operating guidance.  They call
10  it the code of conduct and ethics now.
11         Is that something different?  I don't know.  I
12  think so.
13     Q.  Was it in effect during the time that you were
14  on Intuit's board of directors?
15     A.  Oh, yes.
16     Q.  Was there any aspect of this that did not
17  apply to your -- yourself and your work?
18     A.  You know, we did the first ones.  I don't
19  know.  I didn't -- I'm not sure I read the second.
20         This is phase 2 of these.  I'm not sure I read
21  these in as much detail as I would have in the others,
22  so it could be.  I don't know.
23     Q.  All right.  Could you go to page 22 with me?
24     A.  Sure can.
25         Got it.
```

Page 185

```
 1     Q.  Under the subheading "a," "Use of Intuit
 2  Resources and Assets," was there any aspect of this
 3  that you were exempted from?
 4     A.  I don't think I was exempted from anything.  I
 5  was a -- I had been, for a while, an executive chair,
 6  which made me an employee, and then I am now a
 7  nonexecutive chair but still an employee.
 8         MR. HEIMANN:  Okay.  That's all I have.
 9         THE WITNESS:  Thank you.
10         MR. HEIMANN:  Thank you for your patience with
11  me, sir.
12         THE WITNESS:  Thank you.
13         THE VIDEOGRAPHER:  Okay.  This is the end of
14  video 3 of 3 and concludes today's proceedings.
15         The master videos will be retained by Jordan
16  Media.
17         We are now off the record, and the time is
18  3:39.
19         (DEPOSITION ADJOURNED AT 3:39 p.m.)
20
21               --- oOo ---
22
23
24
25
```

Page 186

rtify under penalty of perjury that the foregoing
rue and correct.

_____ _____
                WILLIAM CAMPBELL

Page 187
REPORTER'S CERTIFICATE

   I, Anne Torreano, Certified Shorthand Reporter
nsed in the State of California, License No. 10520,
by certify that the deponent was by me first duly
n, and the foregoing testimony was reported by me
was thereafter transcribed with computer-aided
scription; that the foregoing is a full, complete,
true record of said proceedings.
   I further certify that I am not of counsel or
rney for either or any of the parties in the
going proceeding and caption named or in any way
rested in the outcome of the cause in said caption.
   The dismantling, unsealing, or unbinding of
original transcript will render the reporter's
ificates null and void.
   In witness whereof, I have subscribed my name
8th day of February, 2013.

    [ ] Reading and Signing was requested.
    [ ] Reading and Signing was waived.
    [X] Reading and Signing was not requested.

         ANNE M. TORREANO, CSR No. 10520