# EXHIBIT 3

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF CALIFORNIA**
**SAN JOSE DIVISION**

**CONFIDENTIAL — TO BE FILED UNDER SEAL**
**SUBJECT TO PROTECTIVE ORDER**

| | |
|---|---|
| IN RE: HIGH-TECH EMPLOYEES ANTITRUST LITIGATION | No. 11-CV-2509-LHK |
| _____ | |
| THIS DOCUMENT RELATES TO: | |
| ALL ACTIONS | |

**SUPPLEMENTAL EXPERT REPORT OF EDWARD E. LEAMER, PH.D.**

**May 10, 2013**

# TABLE OF CONTENTS

**I.    Introduction, Assignment, and Summary of Conclusions** .........1

**II.   Defendants' Use of Compensation Structures** ...........................4

**III.  Empirical Methodologies for Exploring the Somewhat Rigid Salary Structure** .......................................................................6

    A. Choice of Aggregation Level ............................................... 6

    B. Correlation Analysis of Compensation Structure .................... 7

    C. Regression Analysis of Compensation Structure .................... 7

**IV.  Results of Title Based Correlations and Multiple Regressions** ..10

    A. Title-by-Title Correlation Analysis of Compensation Structure ............. 10

    B. Title-by-Title Multiple Regressions ................................... 14

**V.   Decile Based Correlations and Multiple Regressions** ..............18

    A. Decile Based Correlation Analysis .................................... 18

    B. Decile Based Multiple Regression Results .......................... 20

**VI.  Additional Exploration of Adobe Correlations** ..........................22

    1. Adobe Correlation Results ............................................ 22

    2. Headcount Matters for Interpreting Correlations ................. 24

    3. Correlations ............................................................. 25

    4. Outliers .................................................................. 26

**VII. Internal Versus External Forces** .............................................29

CONFIDENTIAL                                                                  5/10/2013

# I.    Introduction, Assignment, and Summary of Conclusions

1.    I have been asked by counsel for Class Plaintiffs in this matter to respond to the following questions regarding my prior analysis and further analysis that can be conducted based on the available data in this case.  I have been asked to focus my response on the employees belonging to the proposed Technical, Creative and R&D Class ("Technical Class") identified in my initial report.

2.    **Question #1:**  Does the total compensation of Technical Class employees in specific job titles move together over time, further confirming the existence of a somewhat rigid pay structure at each Defendant?

3.    **Answer:**  When asked in the deposition (p283) "Could a nonrigid wage structure, as you've defined it, lead to parallel lines?" I responded to what I thought to be a hypothetical with "Yes, it could."  I should have added that this would require highly unusual external labor market conditions which dictated the parallel movements of vast numbers of titles.  Markets typically are not so orderly, and prices of, for example, gold, silver, copper and zinc do not normally move in parallel.  For that reason, I regard the parallel movements of compensation for so many titles not only to be consistent with a "somewhat rigid wage structure" but also evidence specifically in favor of the hypothesis that internal equity played an important role in determining compensation in all these firms.  In this report, I confirm this opinion with two additional empirical studies.  I have estimated regression models that allow me to separate the contributions of internal and external forces, and found that the internal forces are evident but the external forces are not.  I have also compared average compensation for the Technical Class of titles and the non-technical employees for all the defendants. I found that the compensation curves of these two groups within each firm are highly parallel while the compensation curves for the same group from two different firms move in a much more disparate way.  This again is saying that the internal forces are evident but the external forces are more difficult to detect.

4.    In this Report, I present correlations that compare the movement *over time* of the average compensation of each title with the average compensation of the firm's Technical Class.  To accommodate titles that cannot be accessed on a title-by-

CONFIDENTIAL                                                          5/10/2013

title basis due to insufficient data 

5.    **Question #2:**  Do the data show additional evidence that internal factors such
      as internal equity partly drove the Defendants' compensation structures, as
      opposed to only external market forces?

6.    **Answer:**  I have analyzed a model of sharing of compensation effects, title by
      title, within Defendant firms relative to movements of other Technical Class
      employees compensation. Again, to accommodate titles that cannot be accessed
      title-by-title ████████████████████████████████████████████████
      ██████████████████████████████████████ I also analyzed the
      compensation of relatively narrow groups of employees against the
      compensation of the overall Technical Class employees.

7.    Specifically, I report below estimated multiple regression models that explain the
      year-by-year increases in average compensation at the title level in terms of four
      explanatory variables: (1) increases in average Technical Class compensation; (2)
      the previous year's ratio of average Technical Class compensation divided by the
      average title compensation; (3) the previous year's ratio of firm-wide average
      revenue divided by the average title compensation; (4) the percent change in
      software jobs in the San Jose-Sunnyvale-Santa Clara Metropolitan Statistical
      Area (hereafter: San Jose MSA).

Supplemental Expert Report of Edward E. Leamer, Ph.D.

8.     

9.     **Question #3:**  Do the data show the existence of large groups of class
       members who necessarily would not have been harmed by a restriction on cold-
       calling?

10.    **Answer:** No. I have performed the above-mentioned statistical analyses
       separately for distinct subgroups of employees grouped by compensation level. I
       do not find persuasive evidence to suggest that there are sizeable groups whose
       compensation might have been disconnected from Defendants' somewhat rigid
       compensation structure.

11.    **Question # 4:**  Is it possible to identify and exclude from the Technical Class
       job titles based on a lack of these positive correlative relationships?

12.    **Answer:** No. 

Supplemental Expert Report of Edward E. Leamer, Ph.D.

CONFIDENTIAL                                                            5/10/2013

██████████████████████████████████████████████████████

████████████████████████████

13.    In sum, the statistical analysis I conduct here--in conjunction with the economic
       and econometric evidence in my original reports--supports my original finding
       of a somewhat rigid pay structure at each Defendant that would have
       transmitted the effects of the agreements broadly, including throughout the
       Technical Class.

## II.    Defendants' Use of Compensation Structures

14.    ████████████████████████████████████████
       ████████████████████████████████████
       ████████████████████████████████████████
       ████████████████████████████████████████
       ████████████████████████████████████████
       ████████████████████████████████████
       ██████████████████████████████████████
       ████████████████████████████████████████████
       ████

15.    ████████████████████████████████████████████
       ████████████████████████████████████
       ████████████████████████████████████████
       ██████████████████████████████████
       ████████████████████████████████████
       ████████████████████████████████████████
       ██████████████████████████████████████
       ████████████████████████████████████████████
       ████████████████████████████████████████████
       ████████████████████████████████████████████
       ████████████████████████████████████
       ████████████████████████████████████████████
       ████████████████████████████████████████
       ████████████████████████████████████

Supplemental Expert Report of Edward E. Leamer, Ph.D.

CONFIDENTIAL

16.



17.

Supplemental Expert Report of Edward E. Leamer, Ph.D.

## III.  Empirical Methodologies for Exploring the Somewhat Rigid Salary Structure

### A. Choice of Aggregation Level



CONFIDENTIAL



Supplemental Expert Report of Edward E. Leamer, Ph.D.

CONFIDENTIAL                                                                 5/10/2013



Supplemental Expert Report of Edward E. Leamer, Ph.D.



Supplemental Expert Report of Edward E. Leamer, Ph.D.

CONFIDENTIAL



Supplemental Expert Report of Edward E. Leamer, Ph.D.

CONFIDENTIAL                                                           5/10/2013



Supplemental Expert Report of Edward E. Leamer, Ph.D.

CONFIDENTIAL

5/10/2013



Supplemental Expert Report of Edward E. Leamer, Ph.D.

CONFIDENTIAL                                                            5/10/2013



Supplemental Expert Report of Edward E. Leamer, Ph.D.

CONFIDENTIAL



Supplemental Expert Report of Edward E. Leamer, Ph.D.

CONFIDENTIAL



CONFIDENTIAL



Supplemental Expert Report of Edward E. Leamer, Ph.D.

CONFIDENTIAL



Supplemental Expert Report of Edward E. Leamer, Ph.D.

CONFIDENTIAL

5/10/2013



Supplemental Expert Report of Edward E. Leamer, Ph.D.

CONFIDENTIAL

5/10/2013



Supplemental Expert Report of Edward E. Leamer, Ph.D.

CONFIDENTIAL



Supplemental Expert Report of Edward E. Leamer, Ph.D.

CONFIDENTIAL



Supplemental Expert Report of Edward E. Leamer, Ph.D.

CONFIDENTIAL

5/10/2013



Supplemental Expert Report of Edward E. Leamer, Ph.D.

CONFIDENTIAL



Supplemental Expert Report of Edward E. Leamer, Ph.D.



Supplemental Expert Report of Edward E. Leamer, Ph.D.

CONFIDENTIAL

5/10/2013



Supplemental Expert Report of Edward E. Leamer, Ph.D.

CONFIDENTIAL



Supplemental Expert Report of Edward E. Leamer, Ph.D.

CONFIDENTIAL                                                                5/10/2013



Supplemental Expert Report of Edward E. Leamer, Ph.D.

CONFIDENTIAL

5/10/2013



Supplemental Expert Report of Edward E. Leamer, Ph.D.

CONFIDENTIAL

5/10/2013



Supplemental Expert Report of Edward E. Leamer, Ph.D.

CONFIDENTIAL



Supplemental Expert Report of Edward E. Leamer, Ph.D.

CONFIDENTIAL



Supplemental Expert Report of Edward E. Leamer, Ph.D.

CONFIDENTIAL

5/10/2013



Supplemental Expert Report of Edward E. Leamer, Ph.D.

CONFIDENTIAL

5/10/2013



Supplemental Expert Report of Edward E. Leamer, Ph.D.

CONFIDENTIAL

5/10/2013

Edward E. Leamer, Ph.D.









































