1  Richard M. Heimann (State Bar No. 63607)
   Kelly M. Dermody (State Bar No. 171716)
2  Eric B. Fastiff (State Bar No. 182260)
   Brendan P. Glackin (State Bar No. 199643)
3  Dean M. Harvey (State Bar No. 250298)
   Anne B. Shaver (State Bar No. 255928)
4  Lisa J. Cisneros (State Bar No. 251473)
   LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
5  275 Battery Street, 29th Floor
   San Francisco, California  94111-3339
6  Telephone:  (415) 956-1000
   Facsimile:  (415) 956-1008
7
   Joseph R. Saveri (State Bar No. 130064)
8  Lisa J. Leebove (State Bar No. 186705)
   James G. Dallal (State Bar No. 277826)
9  JOSEPH SAVERI LAW FIRM
   505 Montgomery Street, Suite 625
10 San Francisco, California 94111
   Telephone:  (415) 500-6800
11 Facsimile:   (415) 500-6803

12 *Co-Lead Class Counsel*

13 [Additional counsel listed on signature page]

14                  UNITED STATES DISTRICT COURT

15                NORTHERN DISTRICT OF CALIFORNIA

16                      SAN JOSE DIVISION

17

18

19 | | |
|---|---|
| IN RE: HIGH-TECH EMPLOYEE ANTITRUST LITIGATION | Master Docket No. 11-CV-2509-LHK |
| | **PLAINTIFFS' SUPPLEMENTAL MOTION AND BRIEF IN SUPPORT OF CLASS CERTIFICATION** |
| THIS DOCUMENT RELATES TO: | |
| ALL ACTIONS | Date:      August 8, 2013 |
| | Time:      1:30 pm |
| | Courtroom: 8, 4th Floor |
| | Judge:      Honorable Lucy H. Koh |

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

SUPPLEMENTAL MOTION FOR CLASS CERTIFICATION .................................................. III

STATEMENT OF ISSUES TO BE DECIDED ........................................................................ IV

MEMORANDUM OF POINTS AND AUTHORITIES ............................................................. 1

I.   Introduction ..................................................................................................... 1

II.  Legal Standards ............................................................................................... 4

III. Defendants' Conspiracy Commonly Impacted All or Nearly All Class Members, Satisfying Rule 23(b)(3) ............................................................. 5

A.  The Anti-Solicitation Agreements Suppressed Compensation Across the Class Systematically, By Design ............................... 6

B.  While the Conspiracy Prohibited Solicitation Broadly, Defendants Focused On Suppressing the Compensation and Mobility of Their Technical Employees ......................................... 10

C.  Dr. Hallock's Analysis Shows That Defendants' Formalized Pay Structures and Pay Practices Would Have Transmitted Impact to All Or Nearly All Technical Employees ...................................... 13

1.  Adobe ................................................................................. 15

2.  Apple .................................................................................. 16

3.  Google ................................................................................ 17

4.  Intel .................................................................................... 18

5.  Intuit ................................................................................... 19

6.  Lucasfilm ............................................................................ 20

7.  Pixar ................................................................................... 22

D.  Dr. Leamer Addresses the Court's Concerns and Confirms That All or Nearly All Members of the Technical Class Would Have Been Impacted ....................................................................................... 22

IV. The Court Should Appoint the Named Plaintiffs as Class Representatives .......... 25

V.  Superiority ...................................................................................................... 25

VI. Conclusion ...................................................................................................... 25

1

**TABLE OF AUTHORITIES**

2

**Page**

3

**Cases**

4   *Amgen Inc. v. Connecticut Retirement Plans and Trust Funds*,
    ---U.S.---, 133 S. Ct. 1184 (2013) ........................................................................... 4, 6

5   *Blackie v. Barrack*,
    524 F.2d 891 (9th Cir. 1975) ...................................................................................... 5
6

7   *Comcast Corp. v. Behrend*,
    569 U.S.---, 133 S. Ct. 1426 (2013) ........................................................................... 5

8   *Erica P. John Fund, Inc. v. Halliburton Co.*,
    2013 U.S. App. LEXIS 8933
9   (5th Cir. April 30, 2013) ............................................................................................. 5

10  *In re Diamond Foods, Inc.*,
    2013 U.S. Dist. LEXIS 64464
    (May 6, 2013) .............................................................................................................. 5

11  *In re Motor Fuel Temperature Sales Practices Litig.*,
    2013 U.S. Dist. LEXIS 50667
12  (D. Kan. April 5, 2013) ............................................................................................... 5

13  *In re Urethane Antitrust Litig.*,
    251 F.R.D. 629 (D. Kan. July 28, 2008) ..................................................................... 5

14  *Martins v. 3PD, Inc.*,
15  2013 U.S. Dist. LEXIS 45753
    (D. Mass. March 28, 2013) .......................................................................................... 5

16  *Saucedo v. NW Mgmt. & Realty Servs.*,
    2013 U.S. Dist. LEXIS 27858
17  (E.D. Wash. Feb. 27, 2013) ......................................................................................... 5

18

19

20

21

22

23

24

25

26

27

28

1

## SUPPLEMENTAL MOTION FOR CLASS CERTIFICATION

2

Plaintiffs bring this Supplemental Motion for Class Certification to address questions

3

posed by the Court with respect to class certification in the Court's April 5, 2013 Order.

4

(Dkt. 382) (Order).  While Plaintiffs respectfully submit the evidence supports certification of

5

either the class of all-salaried employees or the class of technical, creative, and research and

6

development employees ("Technical Class") previously proposed by Plaintiffs, there is powerful

7

evidence that the no-cold calling agreements at issue in this case were designed substantially to

8

disrupt recruiting of Technical Class employees.  Accordingly, Plaintiffs have focused their

9

supplemental briefing and analysis on demonstrating impact to all or nearly all of the Technical

10

Class.  Plaintiffs hereby adopt and amend their prior request for certification of the Technical

11

Class as set forth originally in Plaintiffs' October 1, 2012 Motion for Class Certification (Dkt.

12

187), and consisting of job titles identified in Appendix B to the Report of Edward Leamer dated

13

October 1, 2012 (Dkt. 190), as follows:

14

15

All natural persons who work in the technical, creative, and/or research and development fields that are employed on a salaried basis in the United States by one or more of the following:  (a) Apple from March 2005 through December 2009; (b) Adobe from May 2005 through December 2009; (c) Google from March 2005 through December 2009; (d) Intel from March 2005 through December 2009; (e) Intuit from June 2007 through December 2009; (f) Lucasfilm from January 2005 through December 2009; or (g) Pixar from January 2005 through December 2009.  Excluded from the Class are: retail employees; corporate officers, members of the boards of directors, and senior executives of all Defendants.

16

17

18

19

20

This amended motion is based on this supplemental memorandum, the Report of Dr. Kevin F.

21

Hallock, the Supplemental Report of Dr. Edward E. Leamer, the Declarations of Dean M. Harvey

22

and Lisa J. Cisneros, all exhibits and appendices to such documents, the pleadings and other

23

documents on file in this consolidated action (including all pleadings and other documents

24

Plaintiffs previously filed in connection with Plaintiffs' October 1, 2012 Motion for Class

25

Certification, and Plaintiffs' December 10, 2012 Consolidated Reply in Support of Class

26

Certification and Opposition to Defendants' Motion to Strike), and any oral argument that has

27

been or may be presented to the Court.

28

1

## **STATEMENT OF ISSUES TO BE DECIDED**

2

The issues to be decided are:

3

    1.  Whether pay suppression resulting from Defendants' anti-solicitation agreements

4

        would have impacted all or nearly all members of the Technical Class;

5

    2.  Whether the Court should appoint Plaintiffs as Class representatives; and

6

    3.  Whether "a class action is superior to other available methods for the fair and

7

        efficient adjudication of the controversy."

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

2

3

████████████████████████████████████████

4

Deposition of Ed Catmull, President of Pixar,
January 24, 2013 (179:17-25)[1]

5

**I.      Introduction**

6

7        The Court previously held that Plaintiffs satisfied Fed. R. Civ. Proc. 23(a) and 23(b)(3) as

8   to conspiracy and damages.  April 5, 2013 Order at 45 (Dkt. 382) (Order).  The remaining open

9   question posed by the Court under Rule 23(b)(3) is whether "the evidence will be able to show

10  that Defendants maintained such rigid compensation structures that a suppression of wages to

11  some employees would have affected all or nearly all Class members."  *Id*.  Discovery taken since

12  the hearing answers this question in the affirmative:  Defendants' own top executives

13  acknowledge the importance of pay structures at their firms and the ability of competition to

14  ratchet them up—and the importance of the no cold-calling agreements ("agreements") in

15  keeping them down.  This purpose was manifest from the beginning, in the Pixar-Lucasfilm

16  agreement that started it all: to suppress their employees' compensation and mobility by

17  eliminating competitive solicitations.  ████████████████

████████████████████████  ████████████████

18  ████████████████████████████████████

19  ████████████████████████████  ████████

20  ████████████████████████████████████

21  ████████████████████████████████████

22  ████████████████████████████████████

23  ████████████████████  ████████████████

24  ████████████████████████████████

25  ████████████████████████████████

26  _____

27  [1] Deposition excerpts and exhibits are attached to the accompanying Declaration of Lisa J.
    Cisneros.  Deposition testimony is cited in the brief by last name of deponent, with exhibits
    referenced as "Ex."  All other business records cited herein are attached to the Declaration of
28  Dean M. Harvey, organized in numerical order by defendant.

1    ████████████

2          Further discovery confirms that while these agreements affected all of Defendants'

3    employees, they particularly targeted their technical and creative talent.   Plaintiffs therefore

4    request certification of a class of salaried technical, creative, and research and development

5    employees ("Technical Class") who worked for a Defendant while that Defendant participated in

6    at least one anti-solicitation agreement with another Defendant.  Plaintiffs bring before the Court

7    a proposed Class comprising those technical employees whose work contributed to Defendants'

8    core business functions, whom the Defendants heavily recruited and jealously guarded, and who

9    appear at the very crux of Defendants' conspiracy and this case.  *See* Part III.B., *infra*.  In

10   addition, the composition of the Technical Class has been reviewed by Professor Kevin F.

11   Hallock of Cornell University.  Dr. Hallock is the Donald C. Opatrny '74 Chair of the Department

12   of Economics, Joseph R. Rich '80 Professor, Professor of Economics, Professor of Human

13   Resource Studies, and Director of the Cornell Institute for Compensation Studies.  He is a leading

14   labor economist and an expert in compensation structure and design.  Dr. Hallock confirms that

15   the titles selected for inclusion in the proposed Class are appropriate based on Defendants' formal

16   and structured compensation systems and Defendants' own job families for their technical

17   workers.  Hallock ¶¶ 241-244.

18         Dr. Hallock investigated whether Defendants used formal administrative pay systems, and

19   whether the anti-solicitation agreements at issue would have suppressed the compensation of all

20   or nearly all members of the Technical Class.  Dr. Hallock reviewed only common evidence:

21   Defendants' testimony, and Defendants' contemporaneous documents and data.

22         Dr. Hallock finds that Defendants all used formalized compensation systems that

23   organized employees into a single pay structure.  ████████████████████████

24   ██████████████████████████████████████████████

25   ███████████████████████████████████████████████████

26   ███████████████████████████████████

27   ██████████████████████████████████████████

28   ████████████████████████████████



Dr. Hallock also examines Defendants' pay structures as they pertain to the Technical Class, and concludes that the same mechanisms that would have transmitted pay suppression throughout the firm apply with even greater force to technical employees.  Thus, if the anti-solicitation agreements suppressed the pay of certain members of the Technical Class, all or nearly all other members would be expected to have also been impacted.  *See* Part III.C., *infra.*

Finally, Plaintiffs have also asked Dr. Leamer to address the Court's questions about his prior analysis.  Dr. Leamer submits a correlation analysis to address the precise question raised by the Court: whether the compensation of all Class members tended to "move together through time" during the period under study.  The correlation analysis,

Plaintiffs respectfully request that the Court find class proceedings to be superior to individual proceedings, appoint Plaintiffs as class representatives, and grant the motion.

- 3 -

1    **II.    Legal Standards**

2          The Supreme Court in *Amgen Inc. v. Connecticut Retirement Plans and Trust Funds*, ---

3    U.S.---, 133 S. Ct. 1184 (2013), clarified the degree to which a district court should address the

4    merits of a case when deciding whether common issues predominate under Rule 23(b)(3).  The

5    Supreme Court rejected the notion that a district court can or should "engage in free-ranging

6    merits inquiries at the certification stage."  *Id.* at 1194-95.  The Court explained that the purpose

7    of examining common evidence is to evaluate the risk that should that evidence fail the court will

8    be inundated with individualized questions.  *Id*. at 1196 ("…there is no risk whatever that a

9    failure of proof on the common question of materiality will result in individual questions

10   predominating.").  In other words, a court should consider under Rule 23 the consequences for the

11   evidence of a failure of the proposed class-wide proof; where a decision on the merits against the

12   class promises to bring the case to an end, then a court need not reach that decision at the class

13   certification stage to find predominance.  *Id.*  Rejecting the contrary view of the dissenters, the

14   Court held expressly:

15
16              Rule 23(b)(3), however, does *not* require a plaintiff seeking class
                certification to prove that each "elemen[t] of [her] claim [is]
                susceptible to classwide proof."  *Post*, at 7.  What the rule does
17              require is that common questions "*predominate* over any questions
                affecting only individual [class] members."  Fed. Rule Civ. Proc.
18              23(b)(3).

19   *Id.* at 1196 (emphasis and alterations in original).[2]

20          *Comcast Corp. v. Behrend*, 569 U.S.---, 133 S. Ct. 1426 (2013) follows *Amgen*'s rule.

21   The *Comcast* plaintiffs alleged that multiple dissimilar monopolistic acts allowed Comcast to

22   raise rates on over 2 million cable subscribers across 16 counties in 3 states.  *Id.* at 1430 or 1435.

23   _____

24   [2] The Ninth Circuit has yet to address *Amgen* and, apart from this Court's prior order regarding
     class certification, no district court decision offers a detailed, substantive analysis of the case.  *See*
     *e.g.*, *Saucedo v. NW Mgmt. & Realty Servs.*, 2013 U.S. Dist. LEXIS 27858 (E.D. Wash. Feb. 27,
25   2013).  The Fifth Circuit, however, closely analyzed *Amgen* and applied its principles in *Erica P.*
     *John Fund, Inc. v. Halliburton Co.*, 2013 U.S. App. LEXIS 8933 (5th Cir. April 30, 2013),
26   affirming class certification.  There, the Fifth Circuit held that, at the class certification stage, it is
     improper to determine the absence of price impact and weigh the defendant's rebuttal evidence
27   because resolving the question in favor of the defendant would preclude plaintiffs from
     establishing an essential element of their securities claim and would effectively end the case.  *Id.*
28   at *25-29.

On the theories of harm articulated in that case, the Supreme Court held that the proposed

damages methodology failed to satisfy Rule 23(b)(3) because "Questions of individual damage

calculations will inevitably overwhelm questions common to the class." *Id.* at 1433.  This case-

specific finding followed from the fact that some theories of harm themselves were susceptible to

class-wide proof while others were individualized.  According to the Court, *Comcast* broke no

new ground.  *Id.* at 1433 ("This case thus turns on the straightforward application of class-

certification principles; it provides no occasion for the dissent's extended discussion, *post*, at 5–

11 (GINSBURG and BREYER, JJ., dissenting), of substantive antitrust law.").[3]

### III.   Defendants' Conspiracy Commonly Impacted All or Nearly All Class Members, Satisfying Rule 23(b)(3)

The only available theory of harm to the Technical Class—that the agreements suppressed

compensation on a company-wide or nearly company-wide basis—is by definition only provable

on a class basis.  Defendants have never identified a specific "individualized" question of impact

that will be raised should this common proof fail.  Plaintiffs meet the standards articulated in

*Amgen* and *Comcast* for the simple reason that if Plaintiffs' proposed proof of class-wide impact

fails, the consequence will be that the case is over.  Or, to borrow from *Amgen*, plaintiffs'

> failure to present sufficient evidence of [class-wide wage
> suppression] to defeat a summary-judgment motion or to prevail at
> trial would not cause individual [impact] questions to overwhelm
> the questions common to the class.  Instead, the failure of proof on

---

[3] No Ninth Circuit opinion has applied *Comcast*, but cases in the Northern District have cited
it.  The most relevant, substantive discussion is found in *In re Diamond Foods, Inc.*, 2013 U.S.
Dist. LEXIS 64464, *34-36 (May 6, 2013) (Alsup, J.), where the court considered *Comcast* prior
to granting class certification in a securities case.  The court recited established law stating that
"[t]he amount of damages is invariably an individual question and does not defeat class action
treatment." *Id.* at *36 (citing *Blackie v. Barrack*, 524 F.2d 891, 905 (9th Cir. 1975)).  The court
then held that the plaintiff "has sufficiently shown that damages [we]re capable of measurement
on a classwide basis such that individual damage calculations d[id] not threaten to overwhelm
questions common to the class." *Id.* at *37.  *See also Martins v. 3PD, Inc.*, 2013 U.S. Dist.
LEXIS 45753, *21 n.3 (D. Mass. March 28, 2013) (noting that in *Comcast* the parties did not
dispute, and the court assumed, certain key issues and, thus, the decision did not overturn existing
case law that common questions of liability can predominate even if some individual damages
issues remain); *In re Motor Fuel Temperature Sales Practices Litig.*, 2013 U.S. Dist. LEXIS
50667 (D. Kan. April 5, 2013) (stating that "[t]he possibility that individual issues may
predominate the issue of damages . . . does not defeat class certification by making [the liability]
aspect of the case unmanageable") (quoting *In re Urethane Antitrust Litig.*, 251 F.R.D. 629, 633,
639 (D. Kan. July 28, 2008)) (alterations in original).

1

> the element of [class-wide wage suppression] would end the case
> for one and for all.

2

3    *Amgen*, 133 S. Ct. at 1196.  Discovery taken since the hearing re-confirms that the impact of the

4    unlawful agreements is a common question that will be proved using common evidence.

5    **A.     The Anti-Solicitation Agreements Suppressed Compensation Across the Class
          Systematically, By Design**

6

7        The Court earlier found that "the adjudication of Defendants' alleged antitrust violation

8    will turn on overwhelmingly common legal and factual issues."  Order at 13.  Subsequent

9    discovery has confirmed that the common evidence regarding Defendants' violation also

10   demonstrates antitrust impact: the purpose and effect of the violation was to suppress

11   systematically the compensation of Defendants' employees.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1 ████████████████████████████████████████████

2 ███████████████████████████████████████████

3 ██████████████████████████████████████████

4 ████████████████████████████████████████

5 ███████████████████████████████████████████

6 ███████████████████████████████████████████

7 ████████████████████████████████████████████

8 ████████████████████████████████████████████

9 ██████████████████████████████████████████

10 ████████████████████

11   ████████████████████████████████████████

12 ██████████████████████████████████████████████

13 ███████████████████████████████████

14 ████████████████████████████████████████

15 ████████████████████████████████████████████

16 ███████████████████████████████████████████

17 ████████████████████████████████████████████

18 ███████████████████████████████████████████

19 ███████████████████████████

20   ████████████████████████████████████████

21 ██████████████████████████████████████

22 ███████████████████████████████████████

23 ████████████████████████████████████████████

24 ████████████████████████████████████████████

25 ███████████████████████████████████████████

26 4 ████████████████████████████████████████████

27 ██████████████████████████████████████████████ In 2006, Disney purchased

28 Pixar for approximately $7.4 billion, making Mr. Jobs Disney's single largest shareholder.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLTFS' SUPPL. MOTION FOR CLASS CERT.
& MEMO OF LAW IN SUPPORT
CASE NO. 11-CV-2509 LHK



**B.**     **While the Conspiracy Prohibited Solicitation Broadly, Defendants Focused On Suppressing the Compensation and Mobility of Their Technical Employees**

While Defendants' agreements expressly prohibited solicitation of all employees, Defendants focused substantial effort on eliminating competition for technical and creative employees, Order 25, 27-28. The proposed Technical Class consists of Defendants' salaried

1   employees during the period of the agreements, who worked in technical, creative, and research

2   and development positions.  The Class includes software engineers, applications developers,

3   digital artists, product developers, and other similar positions, the majority of which fell within

4   technical job families as detailed in Defendants' own compensation data.  Leamer Report

5   (10/1/2012), Appendix B.  It excludes non-technical employees (e.g., clerical, finance, etc.).



PLTFS' SUPPL. MOTION FOR CLASS CERT.
& MEMO OF LAW IN SUPPORT
CASE NO. 11-CV-2509 LHK

1 █████████████████████████████████████████████

2 ████████████████████████████████████████████████

3 ███████████████████████████████████████████

4 ██████████████████████████████████████████████

5 ██████████████████████████████████████████████████

6 █████████████████████████████████████████████████

7 █████████████████████████████████████████████

8 ████████████████████████████████████████

9 ██████████████████████████████████████████████

10 ██████████████████████████████████████████████

11 ███████████████████████████████████████████████████

12 ████████████████████████████████████████████████

13 ██████████████████████████████████████████████

14 █████████████████████████████████████████████████

15 ████████████████████████████████████████████

16 █████████████████████████████████████████████████

17 ████████████████████████████████████████████████

18 ███████████████████████████████████████████████

19 █████████████████████████████████████████████████

20 █████████████████████████████████████████████████

21 ██████████████████████████████████████████████████

22 ██████████████████████████████████████████████████

23 ████████████████████████████████████████████████

24 █████████████████████████████████████████████

25 ████████████████████████████████████████████████

26 ██████████████████████████████████████████

27 █████████████████████████████████████

28

PLTFS' SUPPL. MOTION FOR CLASS CERT.
& MEMO OF LAW IN SUPPORT
CASE NO. 11-CV-2509 LHK

C.   **Dr. Hallock's Analysis Shows That Defendants' Formalized Pay Structures and Pay Practices Would Have Transmitted Impact to All Or Nearly All Technical Employees**

Dr. Kevin Hallock, a leading labor economist and expert on compensation structure and design, answers two questions.  First, he analyzes Defendants' pay systems and compensation practices to determine whether they used formal administrative pay structures, and concludes they do.  Second, he analyzes whether suppressing recruiting of Defendants' workers, including the Technical Class, would have resulted in suppressing their pay, and concludes that it would. "Agreements such as restrictions on cold-calling could be expected to limit and have negative consequences on employee compensation for those workers directly involved and for nearly all employees.  Given the formalized pay structures and compensation design in defendant firms nearly all salaried employees could be expected to have pay that would otherwise be higher." Hallock ¶ 254.  Dr. Hallock also examined the proposed Technical Class, and concludes that "although the restrictions could affect all or nearly all workers, there was more concentration and emphasis on the technical class."  *Id.* ¶ 246.  For both empirical analyses, Dr. Hallock relies on common evidence consisting of witness testimony and Defendants' contemporaneous business records.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1095373.15

PLTFS' SUPPL. MOTION FOR CLASS CERT.
& MEMO OF LAW IN SUPPORT
CASE NO. 11-CV-2509 LHK

1

2

3

4

5

6

7

8

9

10

11

12

13

14          **1.      Adobe**

15          Dr. Hallock finds that Adobe used formal and structured compensation systems, and that

16  Adobe followed principles of internal equity.  Hallock ¶¶ 46-59, 112-119.

17

18

19

20

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16          **2.**     **Apple**

17        Dr. Hallock finds that Apple used formal and structured compensation systems, and that

18 Apple followed principles of internal equity.  Hallock ¶¶ 60-65, 120-128.

19

20

21

22

23

24

25

26

27

28

PLTFS' SUPPL. MOTION FOR CLASS CERT.
& MEMO OF LAW IN SUPPORT
CASE NO. 11-CV-2509 LHK

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22          **3.     <u>Google</u>**

23          Dr. Hallock finds that Google used formal and structured compensation systems, and that

24   Google followed principles of internal equity.  Hallock ¶¶ 66-69, 129-136.

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23        **4.**    **Intel**

24        Dr. Hallock finds that Intel used formal and structured compensation systems, and that

25   Intel followed principles of internal equity.  Hallock ¶¶ 70-84, 137-158.

26

27

28

1  ████████████████████████████████████████████████████████

2  ██████████████████████████████████████████████████████

3  ██████████████████████████████████████████████████████

4  ████████████████████████████████████████████

5  ██████████████████████████████████████████████████████

6  ████████████████████████████████████████████████

7  ████████████████████████████████████████████████████

8  ████████████████████████████████████████████████████████

9  ██████████████████████████████████████████████████

10 ██████████████████████████████████████████████████████

11 ████████████████████████████

12  ████████████████████████████████████████████████████

13 ████████████████████████████████████████████████████

14 ██████████████████████████████████████████████████████

15 ████████████████████████████████████████████████████████

16 █████████████████████████████████████████████████████

17 ██████████████████████████████████████████████████████████

18 ██████████████████████████████████████████████████████████

19 ██████████████████████████████████████████████

20          **5.    Intuit**

21          Dr. Hallock finds that Intuit used formal and structured compensation systems, and that

22  Intuit followed principles of internal equity.  Hallock ¶¶ 85-88, 159-164.  ████████████

23 ████████████████████████████████████████████████████

24 ████████████████████████████████████████████████████

25 ██████████████████████████████████████████████████████

26 ████████████████████████████████████████████████████████

27 ██████████████████████████████████████████████

28 ██████████████████████████████████████████████████████

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

**6.    Lucasfilm**

25

Dr. Hallock finds that Lucasfilm used formal and structured compensation systems, and

26

that Lucasfilm followed principles of internal equity.  Hallock ¶¶ 89-97, 165-179.

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLTFS' SUPPL. MOTION FOR CLASS CERT.
& MEMO OF LAW IN SUPPORT
CASE NO. 11-CV-2509 LHK

████████████████████████████████████████████████

████████████████████████████████████

████████████████████████████████████████████

████████████████████████

### 7.   **Pixar**

Dr. Hallock finds that Pixar used formal and structured compensation systems, and that Pixar followed principles of internal equity.  Hallock ¶¶ 98-109, 180-181.  ███████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████

### D.   **Dr. Leamer Addresses the Court's Concerns and Confirms That All or Nearly All Members of the Technical Class Would Have Been Impacted**

The foregoing evidence alone suffices to certify a class.  However, Plaintiffs also submit additional analysis by Professor Leamer addressing this Court's questions about his prior work:

- Whether employee compensation moves together over time, and, relatedly, whether the pattern of the co-movement charts holds true broadly across Defendants' employees (Order at 35);

1

2

- The Court's concern that the co-movement charts could be consistent with a non-rigid pay structure (Order at 38); and

3

- Whether the proposed Technical Class includes large groups of employees who necessarily were not harmed by the agreements (Order at 45).

4

Dr. Leamer answers each question and reconfirms his "original finding of a somewhat rigid pay

5

structure at each Defendant that would have transmitted the effects of the agreements broadly,

6

including throughout the Technical Class."  Supplemental Report of Edward E. Leamer, Ph.D.

7

(5/10/13) ("Leamer Supp. Rep.") ¶ 13.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

- 24 -

1

2

3

4

5

6   **IV.     The Court Should Appoint the Named Plaintiffs as Class Representatives**

7          The named Plaintiffs and Class members share an interest in proving that Defendants'

8   conduct violated the antitrust laws and suppressed their compensation, and do not have any

9   conflicts of interest with class members.  *See* Shaver Decl. Dkt. 188, Ex. 6 (Decl. of Michael

10  Devine ¶ 1), Ex. 7 (Decl. of Mark Fichtner ¶ 1), Ex. 8 (Decl.of Siddharth Hariharan ¶ 1), Ex. 9

11  (Decl. of Brandon Marshall ¶ 1), and Ex. 10 (Decl. of Daniel Stover ¶ 1).  For the same reasons

12  set forth in Plaintiffs' opening papers, the named Plaintiffs satisfy Fed. R. Civ. P. 23(a)(4) and

13  should be appointed Class Representatives.

14  **V.     Superiority**

15         Plaintiffs renew their request on this finding, which the Court did not reach previously.

16  **VI.    Conclusion**

17         For the foregoing reasons, Plaintiffs respectfully request that the motion be granted.

18   Dated:  May 10, 2013                 LIEFF CABRASER HEIMANN & BERNSTEIN, LLP

19

20                                        By:___*/s/ Kelly M. Dermody*_____
                                          Richard M. Heimann (State Bar No. 63607)
21                                        Kelly M. Dermody (State Bar No. 171716)
                                          Eric B. Fastiff (State Bar No. 182260)
22                                        Brendan P. Glackin (State Bar No. 199643)
                                          Dean M. Harvey (State Bar No. 250298)
23                                        Anne B. Shaver (State Bar No. 255928)
                                          Lisa J. Cisneros (State Bar No. 251473)
24                                        LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
                                          275 Battery Street, 29th Floor
25                                        San Francisco, California  94111-3339
                                          Telephone:  (415) 956-1000
26                                        Facsimile:  (415) 956-1008

27

28

1

2

JOSEPH SAVERI LAW FIRM

3

By: ___/s/ Joseph R. Saveri_____
Joseph R. Saveri (State Bar No. 130064)

4

Lisa J. Leebove (State Bar No. 186705)
James G. Dallal (State Bar No. 277826)

5

JOSEPH SAVERI LAW FIRM
505 Montgomery Street, Suite 625

6

San Francisco, California 94111
Telephone:  (415) 500-6800

7

Facsimile:   (415) 500-6803

8

*Co-Lead Class Counsel*

9

Eric L. Cramer
BERGER & MONTAGUE, P.C.

10

1622 Locust Street
Philadelphia, PA  19103

11

Telephone:  (800) 424-6690
Facsimile:  (215) 875-4604

12

13

Linda P. Nussbaum
Peter A. Barile III

14

GRANT & EISENHOFER P.A.
485 Lexington Avenue, 29th Floor

15

New York, NY  10017
Telephone:  (646) 722-8500

16

Facsimile:  (646) 722-8501

17

*Class Counsel*

18

19

20

21

22

23

24

25

26

27

28

1095373.15