1                  UNITED STATES DISTRICT COURT

2                NORTHERN DISTRICT OF CALIFORNIA

3                      SAN JOSE DIVISION

4

5

6    IN RE:  HIGH-TECH EMPLOYEE      )

7    ANTITRUST LITIGATION            )

8                                    )   No. 11-CV-2509-LHK

9    THIS DOCUMENT RELATES TO:       )

10   ALL ACTIONS.                    )

11   _____)

12

13

14

15            VIDEO DEPOSITION OF SHONA BROWN

16                  January 30, 2013

17

18

19   REPORTED BY:  GINA V. CARBONE, CSR NO. 8249, RPR, CCRR

20

21

22

23

24

25

09:23:47  1    would be a very hands-on corporate strategy group.

09:23:55  2        Q.  And could you elaborate what you mean by People

09:23:57  3    Operations.

09:24:02  4        A.  The People Operations group is a name that I

09:24:06  5    chose because it -- primarily because the group was

09:24:13  6    inclusive of human resources but broader than that.

09:24:17  7    The focus was what you might call administrative G&A

09:24:21  8    pieces so, for example, the chefs all used to work for

09:24:24  9    me.  We had quite a few of them.  But it was inclusive

09:24:28 10    of all of the traditional aspects of human resources,

09:24:32 11    some parts that you might include in facilities, some

09:24:36 12    parts you might include in finance.

09:24:39 13        Q.  And you mentioned GMA.  What does that stand

09:24:44 14    for?

09:24:44 15        A.  G&A, sorry.  Functionally G&A, I guess it's

09:24:49 16    general and administrative.

09:24:52 17        Q.  Oh.

09:24:53 18            MR. RUBIN:  G&A.

09:24:56 19            THE WITNESS:  Yeah.  Sorry.  Ampersand.

09:25:00 20            MR. HARVEY:  Q.  Okay.  In your role as vice

09:25:01 21    president of business operations, you oversaw Google's

09:25:06 22    recruiting, correct?

09:25:10 23        A.  Yes.  Recruiting was a -- was part of my

09:25:13 24    group's mandate, and I would have had somebody -- I

09:25:19 25    would have had somebody running recruiting, though I do

09:25:23  1    not recall at that time who it was to be honest.

09:25:25  2         Q.  Is that the role Mr. Geshuri eventually

09:25:28  3    occupied?

09:25:28  4         A.  At one point in time, Mr. Geshuri was running a

09:25:32  5    good chunk of recruiting.

09:25:42  6         Q.  Was compensation part of your purview?

09:25:44  7         A.  Yes.  Compensation was also part of that People

09:25:47  8    Operations group's purview.

09:25:50  9         Q.  And so you had responsibility to design and

09:25:56 10    supervise a -- pardon me, supervise compensation at

09:26:00 11    Google company wide, correct?

09:26:03 12         A.  I would say that that's a fair description,

09:26:04 13    that the purview included design and monitoring and

09:26:09 14    oversight for compensation programs across the company.

09:26:12 15    Yes.

09:26:16 16         Q.  And these responsibilities -- and these

09:26:23 17    responsibilities, as you've described them, did you keep

09:26:30 18    that -- those responsibilities until you moved to head

09:26:37 19    Google.org?

09:26:41 20         A.  No.  I did not keep the responsibilities for

09:26:44 21    that entire period of time.  At a point, I actually

09:26:50 22    transitioned all of the People Operations group under

09:26:55 23    the responsibility of Laszlo Bock who did report to me.

09:27:00 24    And then at a point in time, I moved Laszlo from

09:27:04 25    reporting to me up to reporting to Eric so that I was no

| | | |
|---|---|---|
| 09:27:07 | 1 | longer operationally responsible for that group.  That |
| 09:27:14 | 2 | happened prior to me moving to my responsibilities with |
| 09:27:17 | 3 | Google.org so I continued on in my responsibilities with |
| 09:27:22 | 4 | business operations while not having any direct |
| 09:27:24 | 5 | oversight over People Operations. |
| 09:27:27 | 6 | Q.  What I'm trying to pinpoint is when those moves |
| 09:27:31 | 7 | happened.  So starting in I believe you said August of |
| 09:27:35 | 8 | 2003, you had this wider set of responsibilities |
| 09:27:37 | 9 | reporting directly to Eric Schmidt. |
| 09:27:41 | 10 | When did you move what you described as People |
| 09:27:46 | 11 | Operations to Laszlo Bock? |
| 09:27:48 | 12 | A.  I don't actually recall specifically when |
| 09:27:53 | 13 | Laszlo moved from reporting to me to reporting to Eric. |
| 09:27:58 | 14 | Q.  But when did Laszlo Bock enter the picture so |
| 09:28:01 | 15 | that he took over some of those responsibilities but |
| 09:28:03 | 16 | reported to you? |
| 09:28:06 | 17 | A.  I don't recall when we hired Laszlo, but I |
| 09:28:09 | 18 | hired Laszlo to come in and work for me.  And I gave him |
| 09:28:13 | 19 | a set of responsibilities in People Operations.  I don't |
| 09:28:17 | 20 | recall if I gave him all of the pieces when he first |
| 09:28:21 | 21 | joined or not, actually. |
| 09:28:24 | 22 | Ultimately, I gave him all of the pieces of |
| 09:28:26 | 23 | People Operations, rolling up to him, reporting to me |
| 09:28:31 | 24 | and then at some point in time, I transitioned him to |
| 09:28:34 | 25 | report directly to Eric Schmidt. |

| | | |
|---|---|---|
| 10:03:18 | 1 | MR. HARVEY:  What kind of break do you want to |
| 10:03:19 | 2 | take? |
| 10:03:20 | 3 | MR. RUBIN:  Ten minutes. |
| 10:03:20 | 4 | MR. HARVEY:  That's fine. |
| 10:03:21 | 5 | THE VIDEOGRAPHER:  The time is 10:03 a.m. |
| 10:03:23 | 6 | We're going off the record.  Sorry.  This is end of |
| 10:03:29 | 7 | video No. 1. |
| 10:03:30 | 8 | Off the record. |
| 10:03:33 | 9 | (Recess taken.) |
| 10:07:30 | 10 | THE VIDEOGRAPHER:  This is the beginning of |
| 10:18:48 | 11 | video No. 2 in the deposition of Shona Brown.  The time |
| 10:18:50 | 12 | is 10:18 a.m. |
| 10:18:52 | 13 | We're back on the record. |
| 10:18:56 | 14 | MR. HARVEY:  Q.  I believe you mentioned |
| 10:18:57 | 15 | earlier that Google recruited people, correct? |
| 10:19:03 | 16 | A.  Yes.  Google recruited people. |
| 10:19:06 | 17 | Q.  And during your time at Google, Google grew at |
| 10:19:10 | 18 | a rapid pace, correct? |
| 10:19:11 | 19 | MR. RUBIN:  Objection.  Vague. |
| 10:19:17 | 20 | THE WITNESS:  Google grew significantly as an |
| 10:19:19 | 21 | organization from the time that I joined through the |
| 10:19:21 | 22 | period in question.  Yes. |
| 10:19:24 | 23 | MR. HARVEY:  Q.  And -- well, why don't I |
| 10:19:28 | 24 | do this with more specificity.  Give me one moment. |
| 10:19:56 | 25 | I'm going to show you what has been marked as |

Deposition of Shona Brown                                    In Re:  HIGH-TECH EMPLOYEE ANTITRUST LITIGATION

| | | |
|---|---|---|
| 10:19:59 | 1 | Plaintiffs' Exhibit 634.  If you could take a look at |
| 10:20:03 | 2 | that and let me know when you're ready. |
| 10:20:07 | 3 | (Whereupon, Exhibit 634 was marked for |
| 10:20:07 | 4 | identification.) |
| 10:20:44 | 5 | THE WITNESS:  Okay.  I'm ready. |

# Redacted

# Redacted

10:21:55  2        Q.  Sure.

10:21:55  3            And Google experienced growth in the different

10:21:58  4    categories of employees described in this document,

10:22:00  5    correct?

10:22:01  6            MR. RUBIN:  Objection.  Vague.

10:22:06  7            THE WITNESS:  We could go through each of the

10:22:08  8    different functions line by line.  And I didn't actually

10:22:14  9    look to look quickly.  But if I take engineering, for

10:22:18 10    example -- well, it's unclear from this data, actually,

10:22:25 11    to be honest, how many employees you're growing and in

10:22:29 12    each of the different, because it's all in percentiles

10:22:34 13    based.  So we would have to debunk that into absolutes

10:22:38 14    to be clear but....

10:22:38 15            MR. HARVEY:  Q.  Sure.

10:22:38 16        A.  I agree with you in the aggregate the

10:22:40 17    organization is getting bigger.  I can't tell you

10:22:42 18    exactly from this precisely which function is growing,

10:22:46 19    quote/unquote, rapidly.

10:22:50 20        Q.  Drawing on your own personal experience, you

10:22:52 21    know --

10:22:53 22        A.  Yes.

10:22:53 23        Q.  -- regardless --

10:22:53 24        A.  Yes.

10:22:53 25        Q.  -- of what this says here --

| | | |
|---|---|---|
| 10:22:55 | 1 | A.   Yes. |
| 10:22:57 | 2 | Q.   -- Google recruited for employees for a variety |
| 10:23:00 | 3 | of different titles and job responsibilities, correct? |
| 10:23:04 | 4 | A.   We had a large -- we were growing a diverse |
| 10:23:09 | 5 | operating company, I would say unlike if you were, for |
| 10:23:12 | 6 | example, hiring into a law firm where you are typically |
| 10:23:16 | 7 | bringing in people in very similar roles and similar |
| 10:23:19 | 8 | levels, so the number of different roles you're |
| 10:23:21 | 9 | recruiting for is quite small. |
| 10:23:22 | 10 | In contrast, in an operating company when |
| 10:23:24 | 11 | you're building it and as you get bigger, that grows. |
| 10:23:28 | 12 | You have a wide variety of roles that you're hiring for. |
| 10:23:32 | 13 | Yes. |
| 10:23:34 | 14 | Q.   Okay.  And why don't we focus on the recruiting |
| 10:23:37 | 15 | part of that hiring for a moment. |
| 10:23:39 | 16 | A.   Sorry, what do you mean by the recruiting part |
| 10:23:40 | 17 | of hiring?  I don't actually know. |
| 10:23:43 | 18 | Q.   Is that because, to you, hiring is part of |
| 10:23:45 | 19 | recruiting? |
| 10:23:47 | 20 | MR. RUBIN:  I think she's just asking you for a |
| 10:23:49 | 21 | clarification. |
| 10:23:50 | 22 | THE WITNESS:  Can you just clarify what you |
| 10:23:51 | 23 | mean by recruiting. |
| 10:23:53 | 24 | MR. RUBIN:  She's just asking you to clarify |
| 10:23:54 | 25 | your question. |

# Redacted

# Redacted

# Redacted

# Redacted

# Redacted

| | |
|---|---|
| 10:48:52 20 | Q.  Are you familiar with the term internal equity? |
| 10:48:57 21 | A.  No.  It's not really a term that I typically |
| 10:48:59 22 | use. |
| 10:48:59 23 | Can you explain what you mean. |
| 10:49:02 24 | Q.  So your testimony is that you've never heard |
| 10:49:04 25 | the term? |

| | | |
|---|---|---|
| 10:49:05 | 1 | MR. RUBIN:  Objection.  Mischaracterizes her |
| 10:49:07 | 2 | testimony. |
| 10:49:09 | 3 | THE WITNESS:  I said that it's not a term that |
| 10:49:11 | 4 | I typically use.  I don't recall its usage in parlance |
| 10:49:17 | 5 | so I'm not exactly sure what -- it could mean a variety |
| 10:49:20 | 6 | of things. |
| 10:49:21 | 7 | MR. HARVEY:  Okay. |
| 10:49:32 | 8 | (Discussion off the record.) |
| 10:49:41 | 9 | MR. HARVEY:  Q.  I'm going to hand you |
| 10:49:45 | 10 | what's been marked Plaintiffs' Exhibit 564. |
| 10:49:48 | 11 | (Whereupon, Exhibit 564 was marked for |
| 10:49:48 | 12 | identification.) |
| 10:50:01 | 13 | MR. HARVEY:  Q.  Just let me know when |
| 10:50:01 | 14 | you're ready. |
| 10:50:02 | 15 | I'll just say that my questions are going to |
| 10:50:04 | 16 | be focused on Sheryl Sandberg's email of April 3rd on |
| 10:50:09 | 17 | the second page and your response. |
| 10:52:31 | 18 | A.  Okay.  I get the gist of it.  Depending on your |
| 10:52:33 | 19 | question, I may have to read more.  It's fairly lengthy. |
| 10:52:38 | 20 | Q.  Sure.  Sure.  I appreciate that. |
| 10:52:38 | 21 | Why don't we start with the bottom of page 1. |
| 10:52:41 | 22 | A.  Bottom of page 1.  Yes. |
| 10:52:48 | 23 | Q.  First, did you, in fact, send this email to |
| 10:52:52 | 24 | Sheryl Sandberg and others on April 3rd, 2004? |
| 10:52:56 | 25 | A.  I have no recollection of this email, but I |

# Redacted

# Redacted

# Redacted

| | |
|---|---|
| 10:59:45 15 | MR. HARVEY:  Q.  It's individual, but it's part |
| 10:59:47 16 | of this company-wide system where you're trying to |
| 10:59:50 17 | maintain fairness in light of what you were discussing, |
| 10:59:53 18 | the external market facts, the internal market facts, |
| 10:59:56 19 | correct? |
| 10:59:56 20 | MR. RUBIN:  Objection.  Mischaracterizes |
| 10:59:58 21 | prior -- |
| 10:59:59 22 | THE WITNESS:  Sorry. |
| 10:59:59 23 | MR. RUBIN:  -- lengthy description. |
| 11:00:01 24 | THE WITNESS:  Could you just clarify your |
| 11:00:02 25 | question in there. |

# Redacted

```
11:00:22  7          MR. RUBIN:  Objection.  Vague.  Ambiguous.

11:00:24  8   Mischaracterizes prior testimony.
```

# Redacted

```
11:00:58 20          MR. HARVEY:  Q.  Okay.  Thanks.

11:01:00 21          Could you explain how those bands of pay, say

11:01:02 22   for any given job ladder, what was their relationship to

11:01:07 23   each other?  So for example, you know, comparing the

11:01:11 24   lower rungs, if I can put it that way, on the job ladder

11:01:14 25   to the higher rungs.
```

| | | |
|---|---|---|
| 11:01:17 | 1 | MR. RUBIN:  Objection.  Ambiguous. |
| 11:01:22 | 2 | THE WITNESS:  If your question is about the |
| 11:01:24 | 3 | size of the, you know, percent changes between the rungs |
| 11:01:30 | 4 | on a ladder or the ratios, I actually -- I'm the wrong |
| 11:01:33 | 5 | person to ask.  I don't remember those level of detail. |
| 11:01:35 | 6 | MR. HARVEY:  Q.  Who would be the right person |
| 11:01:36 | 7 | to ask? |
| 11:01:39 | 8 | A.  I'd have to speculate to decide at which level |
| 11:01:46 | 9 | of the organization individuals would remember that.  So |
| 11:01:52 | 10 | I -- I mean.... |
| 11:01:54 | 11 | Q.  Well -- |
| 11:01:56 | 12 | A.  Of course I was exposed to it over time, but |
| 11:01:58 | 13 | this is some time ago and I don't remember the |
| 11:01:59 | 14 | specifics. |

# Redacted

## Redacted

11:03:18  2      Q.  Did those methods change during your time at

11:03:23  3   Google?

11:03:24  4      A.  Yes.  Over the period of time in question, the

11:03:28  5   methods changed in terms of how we attempted to evaluate

11:03:31  6   our employees.

11:03:32  7      Q.  Why don't we go through it.

11:03:34  8          So starting in 2003, what was Google's method

11:03:40  9   for evaluating performance of its employees?

11:03:43  10         MR. RUBIN:  Objection.  Vague.

11:03:47  11         THE WITNESS:  Is it possible for you to ask me

11:03:49  12   a more specific aspect of evaluation that you're

11:03:53  13   interested in?

11:03:54  14         MR. HARVEY:  Q.  Well, as it relates to

11:03:55  15   making decisions about compensation.

11:04:00  16         MR. RUBIN:  Same objection.

11:04:09  17         THE WITNESS:  I'm struggling to answer your

11:04:10  18   question when we had, you know, such a vast array of

11:04:16  19   relevant elements, it seems to me.

11:04:18  20         Is there some particular part of how we

11:04:21  21   evaluated people that you're interested in that I could

11:04:24  22   address?

11:04:25  23         MR. HARVEY:  Q.  Yeah, why don't we get

11:04:27  24   more specific.

## Redacted

# Redacted

11:06:20  1          MR. RUBIN:  Objection.  Vague.

# Redacted

# Redacted

| | | |
|---|---|---|
| 11:10:03 | 1 | MR. RUBIN:  Ambiguous as to time. |
| 11:10:07 | 2 | MR. HARVEY:  Q.  From when you started |
| 11:10:09 | 3 | until the present time, to your knowledge. |

# Redacted

| | | |
|---|---|---|
| 11:12:08 | 23 | Q.  Maybe I'm not being clear.  I'm not asking |
| 11:12:10 | 24 | about the relationship between budgets and compensation |
| 11:12:14 | 25 | decisions or timing or any of that.  I'm just asking a |

| | | |
|---|---|---|
| 11:24:31 | 1 | Q.  Okay.  Have you ever discussed or thought about |
| 11:24:42 | 2 | whether, you know, Googlers choose to work for Google |
| 11:24:46 | 3 | for reasons other than money or benefits? |
| 11:24:50 | 4 | MR. RUBIN:  Objection.  Overly broad.  Calls |
| 11:24:53 | 5 | for speculation. |

# Redacted

# Redacted

| | | |
|---|---|---|
| 11:26:32 | 5 | MR. HARVEY:  Thank you. |
| 11:27:06 | 6 | Q.  Please take a look at what's been marked |
| 11:27:08 | 7 | Plaintiffs' Exhibit 551. |
| 11:27:09 | 8 | (Whereupon, Exhibit 551 was marked for |
| 11:27:09 | 9 | identification.) |
| 11:28:17 | 10 | THE WITNESS:  Okay. |
| 11:28:18 | 11 | MR. HARVEY:  Q.  I just want to get into |
| 11:28:19 | 12 | some of the vocabulary here and just walk through |
| 11:28:22 | 13 | the email. |
| 11:28:23 | 14 | Well, first I want to ask, who is Jeffrey |
| 11:28:27 | 15 | Donovan? |
| 11:28:31 | 16 | A.  My recollection is that Jeffrey was one of |
| 11:28:38 | 17 | the -- was in our law group somewhere.  I don't recall |
| 11:28:42 | 18 | that he was part of the people ops organization. |
| 11:28:58 | 19 | Q.  Okay.  Did he, in fact, send you this email -- |
| 11:29:00 | 20 | I guess you were cc'd -- on January 19th, 2004? |
| 11:29:05 | 21 | A.  I don't have any recollection of this email, |
| 11:29:07 | 22 | but I have no reason to believe that I wasn't cc'd on it |
| 11:29:11 | 23 | as this exhibit suggests. |

# Redacted

Redacted

```
11:29:49  7        Q.  And just for clarity, I won't ask you to get

11:29:52  8    into Mr. Donovan's mind.  I'm just using this as a way

11:29:55  9    to get your understanding of what different terms mean.

11:30:00 10        So what did -- well, how did Google level its

11:30:07 11    employees?

11:30:07 12        MR. RUBIN:  How did Google -- I'm sorry?

11:30:09 13        MR. HARVEY:  It's not put very artfully.
```

Redacted

# Redacted

# Redacted

# Redacted

| | |
|---|---|
| 11:35:13 11 | MR. RUBIN:  Dean -- |
| 11:35:13 12 | MR. HARVEY:  Yep. |
| 11:35:13 13 | MR. RUBIN:  -- I think it's a good time for a |
| 11:35:15 14 | break and I actually have to go to the restroom. |
| 11:35:17 15 | MR. HARVEY:  Well, I have no objection to that, |
| 11:35:18 16 | so.... |
| 11:35:19 17 | MR. RUBIN:  Okay.  Good. |
| 11:35:19 18 | MR. HARVEY:  All right. |
| 11:35:20 19 | THE VIDEOGRAPHER:  The time is 11:35 a.m. |
| 11:35:25 20 | We're going off the record.  This is the end of video |
| 11:35:29 21 | No. 2. |
| 11:35:35 22 | (Recess taken.) |
| 11:50:12 23 | THE VIDEOGRAPHER:  This is the beginning of |
| 11:50:14 24 | video No. 3 in the deposition of Shona Brown.  The time |
| 11:50:17 25 | is 11:50 a.m. |

# Redacted

Redacted

# Redacted

| | | |
|---|---|---|
| 05:14:51 | 11 | MR. HARVEY:  Q.  If you could please take a |
| 05:14:53 | 12 | look at Exhibit 625. |
| 05:15:00 | 13 | (Whereupon, Exhibit 625 was marked for |
| 05:15:00 | 14 | identification.) |
| 05:15:14 | 15 | MR. HARVEY:  Q.  And I'm only going to ask |
| 05:15:15 | 16 | you about Jonathan Rosenberg's email towards the top |
| 05:15:20 | 17 | and your response. |
| 05:15:24 | 18 | A.  Jonathan Rosenberg's -- oh, wait.  Sorry.  I |
| 05:15:26 | 19 | just want to see what's up. |
| 05:15:34 | 20 | Q.  Sure. |
| 05:16:25 | 21 | A.  Okay. |
| 05:16:27 | 22 | Q.  Did you write this email to the OC -- I'm |
| 05:16:29 | 23 | sorry -- to Jonathan Rosenberg copying the OC and Bill |
| 05:16:33 | 24 | Campbell on October 9th, 2010? |
| 05:16:37 | 25 | A.  Yes.  I don't recall the email, but it looks to |

05:16:39  1 | be an email from me to Jonathan in October 2010.  Yes.

Redacted

# Redacted

In Re:  HIGH-TECH EMPLOYEE ANTITRUST LITIGATION

# Redacted

# Redacted

Deposition of Shona Brown                                    In Re:  HIGH-TECH EMPLOYEE ANTITRUST LITIGATION

# Redacted

# Redacted

| | | |
|---|---|---|
| 06:03:43 | 16 | MR. HARVEY:  I think that's the end of my |
| 06:03:48 | 17 | questions on the current documentary record. |
| 06:03:50 | 18 | Unless you have any questions? |
| 06:03:52 | 19 | MR. RUBIN:  We don't have any questions. |
| 06:03:53 | 20 | So as I said in my letter to you on I think the |
| 06:03:57 | 21 | 25th, either when your questions end or when seven hours |
| 06:04:01 | 22 | end, the deposition's closed, we know that there's a |
| 06:04:03 | 23 | pending motion to compel.  And as we said, although the |
| 06:04:07 | 24 | deposition is closed, if you are successful in that |
| 06:04:09 | 25 | motion and you come to us with particular documents that |

06:04:11  1   you think it's imperative for you to be able to ask

06:04:17  2   Ms. Brown additional questions, we'll take that under

06:04:19  3   advisement.  But we reserve the right to take the

06:04:23  4   position that the deposition continues to be closed.

06:04:24  5          MR. HARVEY:  Well, I disagree that the

06:04:26  6   deposition is closed.  From plaintiffs' perspective, the

06:04:29  7   deposition will remain open pending the result of our

06:04:31  8   motion to compel.

06:04:32  9          I understand you're reserving all your

06:04:34 10   objections, but I want to make that clear for the

06:04:34 11   record.

06:04:35 12          MR. RUBIN:  Right.  And we just are invoking

06:04:37 13   the Federal Rules of Civil Procedure that says seven

06:04:39 14   hours.  You're ending, I think, at 6.54, so....

06:04:41 15          You do have six more minutes, but, otherwise,

06:04:43 16   the deposition is closed if you have no more questions.

06:04:47 17          MR. HARVEY:  Again, I'll just reiterate that

06:04:51 18   our position is that the deposition is not closed.  I

06:04:53 19   disagree with your characterization that a fixed seven

06:04:58 20   hours would be the extent of what we would be entitled

06:05:02 21   to on these facts and on these documents.

06:05:04 22          MR. RUBIN:  Okay.  Well, I think our letter

06:05:06 23   exchanges speak to our respective positions, so....

06:05:09 24          With that, the deposition is closed from

06:05:11 25   Google's perspective and thank you.

1        I, Gina V. Carbone, Certified Shorthand

2  Reporter licensed in the State of California, License

3  No. 8249, hereby certify that the deponent was by me

4  first duly sworn and the foregoing testimony was

5  reported by me and was thereafter transcribed with

6  computer-aided transcription; that the foregoing is a

7  full, complete, and true record of said proceedings.

8        I further certify that I am not of counsel or

9  attorney for either of any of the parties in the

10  foregoing proceeding and caption named or in any way

11  interested in the outcome of the cause in said caption.

12        The dismantling, unsealing, or unbinding of

13  the original transcript will render the reporter's

14  certificates null and void.

15        In witness whereof, I have hereunto set my

16  hand this day:  February 1, 2013.

17       _____ Reading and Signing was requested.

18       _____ Reading and Signing was waived.

19       ___X___ Reading and signing was not requested.

20

21

22       _____

23       GINA  V. CARBONE

24       CSR 8249, RPR, CCRR

25

| Page | Line |
|------|------|
| 58 | 16 |

Change: from "also was running." to "also was running staffing."

Reason: last word of sentence accidentally omitted from transcript

| Page | Line |
|------|------|
| 205 | 19 |

Change: from "adjustn" to "gesture"

Reason: incorrect word in transcript

| Page | Line |
|------|------|
| 207 | 21 |

Change: from "do-not policy" to "do-not call policy"

Reason: word policy accidentally omitted from transcript

Change: _____

Reason: _____

Change: _____

Reason: _____

Change: _____

Reason: _____

Change: _____

Reason: _____

Change: _____

Reason: _____

_SLB_ Subject to the above changes, I certify that the transcript is true and correct.

_____ No changes have been made. I certify that the transcript is true and correct.

_____
(signature)

March 26/2013
(date)