# Exhibit BB

Deposition of Daniel Robert McKell                In Re:  HIGH-TECH EMPLOYEE ANTITRUST LITIGATION

1               IN THE UNITED STATES DISTRICT COURT

2                 NORTHERN DISTRICT OF CALIFORNIA

3                       SAN JOSE DIVISION

4   IN RE:  HIGH-TECH EMPLOYEE ANTITRUST
    LITIGATION
5
    THIS DOCUMENT RELATES TO:      NO:  Master Docket No.
6   11-CV-2509-LHK

7   ALL ACTIONS.

8

9

10          CONFIDENTIAL - ATTORNEYS' EYES ONLY

11

12

13      VIDEOTAPED DEPOSITION OF DANIEL ROBERT McKELL
                    March 20, 2013
14                    10:06 a.m.
                Hyatt Regency Hotel
15              330 Tijeras, Northwest
                Albuquerque, New Mexico
16

17

              PURSUANT TO THE FEDERAL RULES OF CIVIL
18  PROCEDURE, this deposition was:

19  TAKEN BY:  MR. SARAH R. SCHALMAN-BERGEN
                  Attorney for Plaintiffs
20
    REPORTED BY: Mary Abernathy Seal, RDR, CRR, NM CCR 69
21                  Bean & Associates, Inc.
                    Professional Court Reporting Service
22                  201 Third Street, Northwest, Suite 1630
                    Albuquerque, New Mexico 87102
23

24  (6941K) MAS

25

10:30  1    A.   I have been in conference rooms where he's

2    been in attendance.  I don't know him, he doesn't

3    know me, I would say, so...

4    Q.   Do you know who Randall Goodwin is?

10:31  5    A.   No.

6    Q.   Do you know who Deborah Conrad is?

7    A.   Yes.

8    Q.   Who is Ms. Conrad?

9    A.   She's a senior leader at Intel.

10:31  10   Q.   Do you ever have occasion to speak with

11   Ms. Conrad?

12   A.   I don't believe I have ever met her.

13   Q.   You also have not read her deposition

14   transcript; is that fair?

10:31  15   A.   No -- yeah, I haven't read it.

16   Q.   Do you know who Patricia Murray is?

17   A.   Yes.

18   Q.   Who is she?

19   A.   She's a senior leader at Intel.

10:31  20   Q.   Did you ever have occasion to speak with

21   Ms. Murray?

22   A.   Yes.

23   Q.   What occasions are those?

24   A.   It's been a long time.  She used to be the

10:31  25   head of human resources, so I would have more

10:31    1    opportunity to meet with her on work-related

        2    products, things that I was working on, but that's

        3    been several years.

        12        Q.   Have you read any reports that have been

        13    submitted by experts retained by either party or any

        14    of the parties in this case?

10:32    15        MR. SHAH:  Object to form.

        16    A.   No.

        17    Q.   Do you know who Dr. Kevin Murphy is?

        18    A.   No.

        19    Q.   Have you ever spoken with Mr. Murphy?

10:32    20    A.   No, not that I recall.

        21    Q.   Did you ever speak with an expert that was

        22    retained by the defendants in this case?

        23    A.   Not that I recall.

        24    Q.   You don't recall whether you spoke with

10:33    25    Mr. Murphy on June 19, 2012?

| | | |
|---|---|---|
| 10:33 | 1 | A.   I had several phone conversations with |
| | 2 | Intel lawyers.  I don't recall who was on those |
| | 3 | sessions, didn't pay attention, I guess; I was |
| | 4 | answering questions.  I wasn't worried about who was |
| 10:33 | 5 | asking me questions. |
| | 6 | Q.   Were you aware that the individual asking |
| | 7 | questions was not an attorney of Intel's? |
| | 8 | A.   I don't recall.  The name isn't familiar |
| | 9 | to me at all, so... |
| 10:34 | 10 | Q.   Does the name Dr. Edward Leamer mean |
| | 11 | anything to you? |
| | 12 | A.   No. |
| | 13 | Q.   You submitted a declaration in this case; |
| | 14 | is that fair? |
| 10:34 | 15 | A.   Yes. |
| | 16 | Q.   Are you aware that other individuals |
| | 17 | working at the other defendants have also submitted |
| | 18 | declarations? |
| | 19 | A.   Could you repeat the question again? |
| 10:34 | 20 | Q.   Sure.  Are you aware that other |
| | 21 | individuals working for different defendants also |
| | 22 | submitted declarations similar to yours? |
| | 23 | MR. SHAH:  Object to form. |
| | 24 | A.   I would assume they would be taking -- |
| 10:35 | 25 | having the same conversations in other companies. |

| | | |
|---|---|---|
| 10:35 | 1 | Q.   Do you know who Donna Morris is? |
| | 2 | A.   Donna -- |
| | 3 | Q.   Morris. |
| | 4 | A.   Morris?  Can you spell the last name? |
| 10:35 | 5 | Q.   M-O-R-R-I-S. |
| | 6 | A.   No.  No.  Sorry. |
| | 7 | Q.   Have you reviewed any declarations that |
| | 8 | anyone else besides yourself submitted in this case? |
| | 9 | A.   No. |
| 10:35 | 10 | Q.   Do you know who Steve Burmeister is? |
| | 11 | A.   No. |
| | 12 | Q.   Do you know who Frank Wagner is? |
| | 13 | A.   Yes. |
| | 14 | Q.   Who is Frank Wagner? |
| 10:35 | 15 | A.   I believe he's the head of compensation at |
| | 16 | Google. |
| | 17 | Q.   How do you know Mr. Wagner? |
| | 18 | A.   I have exchanged e-mails with Frank. |
| | 19 | Q.   What's the nature of the e-mails that |
| 10:36 | 20 | you're exchanging? |
| | 21 | MR. SHAH:  Object to form. |
| | 22 | A.   Market intelligence. |
| | 23 | Q.   What do you mean by market intelligence? |
| | 24 | A.   Questions about company practices.  We |
| 10:36 | 25 | engage in market intelligence.  Like, I mean, Intel |

10:47   1   compensation stuff.

2       Q.   Do your responsibilities differ in any

3   way?

4       A.   Yeah.  We don't -- she -- her -- we had

10:47   5   the change where I became a manager, and she moved

6   from being a manager to being an individual

7   contributor, just a rotation.  So some of the things

8   I do now, she used to do.  Some of the things I used

9   to do, she now does.  So...

10:47   10      Q.   What do you mean by "individual

11  contributor"?

12      A.   An employee that doesn't have any direct

13  reports.

14      Q.   Do you know who Shilo Kuz is?

10:48   15      A.   Yes.

16      Q.   Who is that?

17      A.   She's a worker at Intel.

18      Q.   What's her job title?

19      A.   I don't know her job title.

10:48   20      Q.   Have you ever had any reason to interact

21  with Ms. Kuz?

22      A.   Yeah.  Shilo -- she's in our -- on more

23  the technical side, focal program office.  That's

24  technically her organization.  So I have worked with

10:48   25  her to get material posted on websites for our

---

| | | |
|---|---|---|
| 10:48 | 1 | managers to help them with their guidelines, pay |
| | 2 | decisions, those types of things. |
| | 3 | Q.   Are you acquainted with any employees who |
| | 4 | work in the compensation offices of any of the other |
| 10:49 | 5 | defendants in this case? |
| | 6 | MR. SHAH:  Object to form. |
| | 7 | A.   Can you repeat the list of defendants? |
| | 8 | Q.   Sure.  So same question, but with respect |
| | 9 | to Apple. |
| 10:49 | 10 | MR. SHAH:  Object to form. |
| | 11 | A.   I used to have a contact with somebody at |
| | 12 | Apple, but it's been five years or so. |
| | 13 | Q.   Who was that person? |
| | 14 | A.   I can't remember the name, off the top of |
| 10:49 | 15 | my head. |
| | 16 | Q.   Was it a man or a woman? |
| | 17 | A.   A woman, I think. |
| | 18 | Q.   How did you become acquainted with that |
| | 19 | person? |
| 10:49 | 20 | A.   We were doing some market intelligence on |
| | 21 | bonus programs, in particular. |
| | 22 | Q.   Were you seeking market intelligence or |
| | 23 | was the person from Apple seeking market |
| | 24 | intelligence? |
| 10:49 | 25 | A.   I was seeking. |

Deposition of Daniel Robert McKell                    In Re:  HIGH-TECH EMPLOYEE ANTITRUST LITIGATION



10:49    1

10:50    10          Q.    Do you know any employees who work in

         11    compensation at Pixar?

         12          A.    No.

         13          Q.    Do you know any employees who work in

         14    compensation at Lucasfilm?

10:50    15          A.    No.

         16          Q.    Do you know any employees who work in

         17    compensation at Intuit?

         18          A.    No.

         19          Q.    Do you know any employees who work in

10:50    20    compensation at Google besides Mr. Wagner?

         21          A.    No.  Oh.  Yeah, there's one guy from Intel

         22    who left.  I don't know if he's still at Google, but

         23    he left Intel to work at Google.

         24          Q.    What's the name of that person?

10:51    25          A.    Now my mind goes blank.  Let me think.

| | | |
|---|---|---|
| 10:51 | 1 | Drawing a blank. |
| | 2 | Q.   If you think of it, or the person at Apple |
| | 3 | throughout today, you can feel free to let me know. |
| | 4 | Okay? |
| 10:51 | 5 | A.   Okay. |
| | 6 | Q.   Do you know anyone, any employees, at eBay |
| | 7 | who work in compensation? |
| | 8 | A.   I don't think so. |
| | 9 | Q.   Do you know any employees at Dell who work |
| 10:52 | 10 | in compensation? |
| | 11 | A.   I don't think so. |
| | 12 | Q.   Do you know any employees at Adobe who |
| | 13 | work in compensation? |
| | 14 | A.   I don't think so. |
| 10:52 | 15 | Q.   Did you have any involvement in the |
| | 16 | Department of Justice's investigation of Intel? |
| | 17 | MR. SHAH:  Object to form. |
| | 18 | A.   Not that I know of. |
| | 19 | Q.   Did you ever speak with anyone in the |
| 10:52 | 20 | Department of Justice? |
| | 21 | A.   No, unless they were on the phone call |
| | 22 | with -- when I was meeting with Intel attorneys. |
| | 23 | Q.   Did you provide any information to anyone |
| | 24 | at Intel with respect to the Department of Justice |
| 10:53 | 25 | investigation? |

11:03  1    the HR business partner, were you the person that

       2    was at the other end of the open door?

       3         A.   I -- yes.

       4         Q.   What is Intel University?

11:04  5         A.   It's our internal learning group, so that

       6    it conducts classes for managers and employees on

       7    anything from cultural things to technical training.

       8    ██   ████████████████████████████

       ██    ██████████████████████████

██████ ██   ██   ███

       ██   ██   █████████████████████████

       ██   ██████████████████████████████

       ██   ████████████████████████

       ██       ████████   ████████

██████ ██   ██   ████████████████████

       ██   ███████████████████████

       ██   █████████████

      18         Q.   When you were an HR business partner, who

      19    did you report to?

11:05 20         A.   I had several managers.

      21         Q.   What were their names?

      22         A.   Cecilia Lodico, Mike Fors.  There's one

      23    more, but I'm forgetting.

      24         Q.   Hopefully you'll be able to spell those

11:05 25    for the court reporter.  We can do it off the

11:05   1    record.

2        A.   Lodico, last name is L-O-D-I-C-O.   Fors is

3    F-O-R-S.   Fors.

4        Q.   When you were an HR business partner, did

11:05   5    you have any direct reports?

6        A.   No.

7        Q.   As an HR business partner, did you get

8    reviewed as part of the focal process?

9        A.   Did I -- did my manager do a performance

11:06   10   review on me?

11       Q.   Yes.

12       A.   Yes.

13       Q.   Are you familiar with the different types

14   of grades that Intel assigns to employees?

11:06   15       A.   Yes.

16       Q.   What -- and when I say grades, I'm

17   speaking of EE, O.

18       A.   Rating?

19       Q.   Rating.

11:06   20       A.   Okay.

21       Q.   What rating did you receive as the HR

22   business partner?

23       A.   One time I was successful faster,

24   successful equal.   I don't remember all of my

11:07   25   performance rating history.

Deposition of Daniel Robert McKell                    In Re: HIGH-TECH EMPLOYEE ANTITRUST LITIGATION

11:08    1    ████████  ████████

         ██   █  ████████████████████████

         ██   ████████████████████████

         ██   █  ███

██████   ██   ████████  ████████████

         ██   █  ██████████████████████

         ██   ████████████████████████████

         ██   ███████████

         ██   ████████  ████████████

██████   ██   █  ████

         ██   █  ██████████████████████

         ██   ████████████████████████████

         ██   ███████

         ██   █  ████████████████████

██████   ██   ████████████████████

         ██   █  ██████████████████████████

         ██   ██████████████

         ██   █  ████████████████████

         ██   ████████████  ████████████████████

11:09   20         Q.    You were the HR business partner from

        21    approximately August 1999 to March 2003; is that

        22    fair?

        23              MR. SHAH:  Object to form.

        24         A.    Yeah, that sounds about right.

11:10   25         Q.    Did your job duties change at all

KRAMM COURT REPORTING          CONFIDENTIAL - ATTORNEYS' EYES ONLY

11:10   1   throughout that time period?

        2        A.   From 1999 to 2003?

        3        Q.   Yes.

        4        A.   Not in material or significant ways.  That

11:10   5   role was largely the same.  And what I might be

        6   doing in any particular month might be different,

        7   but...

Deposition of Daniel Robert McKell                    In Re: HIGH-TECH EMPLOYEE ANTITRUST LITIGATION

11:12    1

         19          Q.    When you were the HR business partner,
11:13   20    what was your grade?
        21          A.    I was a grade -- I was hired as a grade 5.
        22    I was promoted to a grade 6, and I was promoted to a
        23    grade 7.
        24          Q.    When were you promoted to grade 6?
11:14   25          A.    May 2000.

11:14    1        Q.   When were you promoted to grade 7?

         2        A.   April 2001.

         3        Q.   With the promotions to different grades,

         4    did you receive increased total compensation?

11:14    5        A.   Yes.

         6             MR. SHAH:   Object to form.

         7        ███   ████████████████████████████

         ██   ███████████████

         ██   █████   ███████

██████   ██   █████   ██████████████████

         ██   █████   ████████████████████████

         ██   ██████████████████████████████████

         ██   ████████████

        14        Q.   When you were hired into grade 5, in what

11:15   15    quartile of grade 5 were you paid?

        16             MR. SHAH:   Object to form.

        17        A.   I think I was hired to the midpoint, if I

        18    remember right.

        19        Q.   When you were hired, were you aware of the

11:15   20    minimum and maximum in grade 5?

        21             MR. SHAH:   Object to form.

        22        A.   I don't recall if it was on the offer

        23    letter or not.

        24        Q.   How did you know you were paid at the

11:15   25    midpoint of grade 5?

| | | |
|---|---|---|
| 11:16 | 1 | grade 5? |
| | 2 | MR. SHAH:  Object to form. |
| | 3 | A.   No.   I think I was promoted before I had |
| | 4 | the chance to get a raise at grade 5. |
| 11:16 | 5 | Q.   When you were promoted to grade 6, did |
| | 6 | your job title change? |
| | 7 | A.   I don't think so. |
| | 8 | Q.   Did your job responsibilities change? |
| | 9 | A.   I was given more to do.  My scope of my |
| 11:17 | 10 | job increased.  But it was along the same lines of |
| | 11 | work. |
| | 12 | Q.   How did the scope of your job increase |
| | 13 | when you were promoted to grade 6? |
| | 14 | A.   More organizations to support were added |
| 11:17 | 15 | to my job.  I was put in charge of small projects to |
| | 16 | lead, things like that. |
| | 17 | Q.   Which additional organizations to support |
| | 18 | were added to your job when you were promoted to |
| | 19 | grade 6? |
| 11:18 | 20 | A.   I don't remember which specific ones at |
| | 21 | that time. |
| | 22 | Q.   Do you recall which small projects you |
| | 23 | were put in charge of at that time? |
| | 24 | A.   Leading voluntary separation programs for |
| 11:18 | 25 | US HR employees. |

| 11:18 | 1 | Q.   When you say "voluntary separation |
| | 2 | programs," what do you mean? |
| | 3 | A.   Programs where employees could volunteer |
| | 4 | to leave and receive a severance package, versus |
| 11:18 | 5 | nonvoluntary. |
| | 6 | Q.   After approximately one more year, you |
| | 7 | were promoted to grade 7; is that accurate? |
| | 8 | A.   Yes. |
| | 9 | Q.   Within grade 6, which quartile were you |
| 11:19 | 10 | paid within the range? |
| | 11 | MR. SHAH:  Object to form. |
| | 12 | A.   I don't remember.  I assume Q2, Q1.  I |
| | 13 | don't know.  Below the midpoint. |



11:19   1

16       Q.    After one year, you were promoted to grade

17   7; is that accurate?

18       A.    From the 6 to a 7, yes.

19       Q.    Did your job responsibilities change when

11:21   20   you were promoted to grade 7?

21       A.    I picked up additional organizations to

22   support.

23       Q.    Do you recall which organizations?

24       A.    I believe that was comp and benefits, and

11:21   25   I don't remember if Intel University was in 2000 or

11:21  1  2001.

2      Q.   While you were in grade 6, did you receive

3  reviews as part of the focal process?

4      A.   I received a -- so our review cycles are

11:22  5  April to April, or April to March, so I -- I don't

6  know if you would consider getting a review -- I was

7  one year as a 6 and then they moved me to a 7.

8      Q.   During that review cycle, what was your

9  rating?

11:22  10     A.   I don't recall.  Successful faster, I

11  think, but that was 12 years ago.

12     Q.   Do you recall who gave you that rating?

13     A.   Cecilia was still my manager at the time.

14     Q.   Were you aware, when you were in grade 6,

11:22  15  of what the minimum and maximum of the range in

16  grade 6 were?

17     A.   Yes.

18     Q.   How did you become aware of that?

19     A.   It was printed on the focal pay letter.

11:22  20     Q.   When you were in grade 6, did you know

21  what the ranges in any other grades were?

22     A.   I think so.  As somebody supporting HR

23  groups, I had access to more information than most

24  employees, probably.

11:23  25  ███  ████████████████████████████████

11:23    1

11:24     1     ███   ███████████████████████

          ███   ████████████████

          ███   ████   ██████

          ███   ██████████████████

█████     ███   ████   ████████████   ███████████████

          ███   ██████████████████████

          ███   ███████████████████████████

          ███   ███████████████████████████

          ███   ██████   ██████████████████████

████████  ███   ████████████████████████████████

          ███   ███████████████████████   ███████████

          ███   ██████████████████████████████████

          ███   █████████████████████████████████

          ███   ████████████████████████████████

████████  ███   █████████████████████████████

          ███   ██████████████████████

          ███   ████   █████████████████████████████

          ███   ████████████████

          ███   ████   ██████████████   █████████████

████████  ███   █████████████

          ███   ████   █████████████████████

          ███   ████████████████████████████████

          ███   █████████████████████████████████

          ███   █████████████

████████  ███   ████   ████████████████████████

Deposition of Daniel Robert McKell                    In Re:  HIGH-TECH EMPLOYEE ANTITRUST LITIGATION

11:26     1

11:27      1

21          MS. SCHALMAN-BERGEN:  I'm conscious that

22     we have been going for a while, so why don't we take

23     a five-minute break?

24          MR. SHAH:  Okay.

11:29     25          (Recess from 11:29 a.m. to 11:37 a.m.)

11:37    1         Q.    (By Ms. Schalman-Bergen)   Mr. McKell, is

         2    there any reason why you can't continue to give me

         3    your best testimony?

         4         A.    No.

11:37    5         Q.    When you started as HR business partner,

         6    were there other individuals who held the same job

         7    title?

         8         A.    Yes.

         9         Q.    Who were they?

11:37   10         A.    Hundreds of people.

        11         Q.    Were you aware of how those individuals

        12    were paid?

        13              MR. SHAH:  Object to form.

        14         A.    As the business partner over HR, I

11:38   15    actually was, which isn't common.

        16         Q.    And were the other HR business partners --

        17    strike that.  In what grades were the other HR

        18    business partners paid during that time period?

        19              MR. SHAH:  Object to form.

11:38   20         A.    Grade levels -- most jobs span multiple

        21    grade levels, so it could have been grade 3 all the

        22    way to grade 9, for instance, or higher.

        23         Q.    Would each grade level come with different

        24    responsibilities?

11:39   25         A.    Yes.

Deposition of Daniel Robert McKell                    In Re: HIGH-TECH EMPLOYEE ANTITRUST LITIGATION

```
11:39    1        Q.   Approximately how many HR business

         2   partners were paid in grade 5 during the time period

         3   when you were paid in grade 5?

         4             MR. SHAH:  Object to form.

11:39    5        A.   I really don't know.  Less than 100.  I

         6   don't know.
```

Deposition of Daniel Robert McKell                    In Re:  HIGH-TECH EMPLOYEE ANTITRUST LITIGATION

11:40    1

11:42    1

Deposition of Daniel Robert McKell                    In Re:  HIGH-TECH EMPLOYEE ANTITRUST LITIGATION

11:44      1

Deposition of Daniel Robert McKell                    In Re:  HIGH-TECH EMPLOYEE ANTITRUST LITIGATION

11:45    1    ███████████████████████

         2    ██      ██    ██████████████████

         3         Q.    In 2001, you were promoted into range 7?

         4         A.    Grade 7.

11:46    5         Q.    Grade 7.  Excuse me.  Where within the

         6    range in grade 7 were you paid?

         7              MR. SHAH:  Object to form.

         8         A.    Probably Q1.

         9         Q.    Do you recall whether it was Q1?

11:46   10         A.    I don't recall specifically.  Again,

        11    because of the overlap and not having a lot of time

        12    in grade 6, I would have fallen lower and lower in

        13    the range, so most likely Q1, but I'm not 100

        14    percent sure.

11:46   15         Q.    Did you receive an increase in your total

        16    compensation when you were promoted from grade 6 to

        17    grade 7?

        18         A.    Yes.

        19         Q.    Did you receive any other grade promotions

11:46   20    while you were an HR business partner besides the

        21    ones we've discussed?

        22         A.    No.

        23         Q.    In approximately March 2003, you were

        24    promoted to senior compensation analyst; is that

11:47   25    accurate?

11:47    1        A.    I changed jobs.  I wouldn't say promoted.

         2    It was a lateral move, so I moved organizations, but

         3    I was in the same grade.

         4        Q.    What prompted the move in organizations?

11:47    5        A.    I was bored.  I just wanted something

         6    different to do.  I had some project work as an HR

         7    business partner that related to compensation.

         8    There was an opening.  I applied for it.  I got the

         9    job.

11:48   10        Q.    Was this a job as the compensation and

        11    benefits specialist?

        12        A.    Yes.

        13        Q.    And within that, you had some roles that

        14    we've discussed earlier; is that fair?

11:48   15              MR. SHAH:  Object to form.

        16        A.    Yeah, I don't know that we talked much

        17    about the compensation and benefits one.

        18        Q.    Okay.  When you first joined the

        19    compensation and benefits specialist, what grade

11:48   20    were you in?

        21        A.    Grade 7.

        22        Q.    Did you receive an increase in your total

        23    compensation when you moved from the HR business

        24    partner to the compensation and benefits specialist

11:48   25    position?

11:54      1

Deposition of Daniel Robert McKell                    In Re:  HIGH-TECH EMPLOYEE ANTITRUST LITIGATION

11:56     1

Deposition of Daniel Robert McKell

In Re:  HIGH-TECH EMPLOYEE ANTITRUST LITIGATION

11:57    1

12:00    1

12:02    1    ████████████████████

         2        Q.    From business consultant at grade 7, did

         3    you -- strike that.  During your focal -- during the

         4    time period when you were a business consultant at

12:02    5    grade 7, what was your rating?

         6        A.    Successful some years, may have been

         7    outstanding a year or two.  I don't recall which

         8    years and what ratings.

         9    ██  ██████████████████████

██  ██  ████████████████████

    ██  ██  ██

    ██  ██  ██████████████████████

    ██  ████████████████

    ██  ██  ██████████████████████

██  ██  ████████████████████

    ██  ██████████████████████████

    ██  ██████████████████████████

    ██  ████████████████████

    ██  ██████████████████████████

██  ██  ██████████

        21        Q.    Have you ever spoken with your peers about

        22    what their ratings were?

        23        A.    No.

        24        Q.    Never?

12:03   25        A.    No.  I don't want to know.  Better to not

| | | |
|---|---|---|
| 12:03 | 1 | know.  It's personal.  It's between them and their |
| | 2 | manager. |
| | 3 | Q.  Have you ever been made aware that |
| | 4 | employees speak to each other about what their |
| 12:03 | 5 | ratings are? |
| | 6 | MR. SHAH:  Object to form. |
| | 7 | A.  Sure.  That's an individual choice. |
| | 8 | There's nothing that prohibits it.  It's just |
| | 9 | something I'm not personally interested in. |
| 12:04 | 10 | Q.  How did you become aware that employees |
| | 11 | speak to each other about what their ratings are? |
| | 12 | MR. SHAH:  Object to form. |
| | 13 | A.  I don't know that I have witnessed it, but |
| | 14 | people talk, some people more than others.  So I |
| 12:04 | 15 | don't have anything else besides that. |
| | 16 | Q.  At a certain point, were you -- did you |
| | 17 | receive a promotion from business consultant in |
| | 18 | grade 7? |
| | 19 | MR. SHAH:  Object to form. |
| 12:04 | 20 | A.  Yes, I was promoted to a grade 8. |
| | 21 | Q.  When was that? |
| | 22 | A.  End of 2006, I think. |
| | 23 | Q.  Prior to being promoted to grade 8, did |
| | 24 | you receive any increase in compensation or |
| 12:05 | 25 | promotion within grade 7? |

Deposition of Daniel Robert McKell                    In Re:  HIGH-TECH EMPLOYEE ANTITRUST LITIGATION

12:05   1              MR. SHAH:  Object to form.

2         A.   Increase to compensation, not a change to

3    grade.

4         ▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪

▪▪▪▪  ▪▪  ▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪

▪▪  ▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪

▪▪  ▪▪▪▪▪▪▪▪▪  ▪▪▪▪▪▪▪▪▪▪

▪▪  ▪▪▪▪  ▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪  ▪▪▪▪▪▪

▪▪  ▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪

▪▪▪▪  ▪▪  ▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪

▪▪  ▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪

12         Q.   And you were in grade 7 between 2003 and

13    2006; is that accurate?

14         A.   Actually, it may have been 2008.  2004,

12:06   15    2005 -- I could look, if it's important.  It was

16    sometime -- I think it was probably more 2008 than

17    2006.

18         Q.   Fair to say between three to five years

19    that you were in grade 7?

12:06   20         A.   Yeah.  Yeah.

21         Q.   And during that time period, you received

22    compensation increases within grade 7?

23         A.   Yes.

24         ▪▪▪▪  ▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪

▪▪▪▪  ▪▪  ▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪



In Re:  HIGH-TECH EMPLOYEE ANTITRUST LITIGATION

12:06    1

Deposition of Daniel Robert McKell                    In Re: HIGH-TECH EMPLOYEE ANTITRUST LITIGATION

12:08    1    ███████  ███████████████████████

         ██       █████████████████████████████████

         ██       ███████

         4            Q.    When you were promoted from grade 7 to

12:08    5    grade 8, in what quartile was your compensation

         6    within grade 7 prior to your promotion?

         7            MR. SHAH:   Object to form.

         8        A.    I don't recall.  Q2, Q3.  I don't know.

         9        Q.    Were you aware of what the pay range of

12:08   10    grade 7 was at that time?

        11        A.    Yes.

        12        Q.    When you received the promotion to grade

        13    8, did your job responsibilities change?

        14        A.    Not as much.  I think I -- I was

12:09   15    performing, I think, at a grade 8, and since I

        16    transferred jobs, again sort of a proving period

        17    before sort of formalizing it, so once I had sort of

        18    proved myself that I could compete, perform at that

        19    level of scope, then my manager promoted me.

12:09   20         ███  ████████████████████████████

         ██       ███████████

         ██       ███  ██████████████████████

         ██       ██████████████████████████████

         ██       ███████████████████████████

██       ██       ██████████████████████████

KRAMM COURT REPORTING         CONFIDENTIAL - ATTORNEYS' EYES ONLY         Page: 79

Deposition of Daniel Robert McKell                    In Re:  HIGH-TECH EMPLOYEE ANTITRUST LITIGATION

12:10    1    

6        Q.    What job did you move to after the

7    business consultant role?

8        A.    That was the exec comp program manager.  I

9    also did the bonus programs, variable pay for Intel.

12:10   10        Q.    When you say the bonus programs, are you

11    talking about two specific -- two different jobs, or

12    you worked to do bonus within the executive comp

13    program manager?

14            MR. SHAH:  Object to form.

12:11   15        A.    They're two different roles.  I did both

16    roles.

17        Q.    You did both roles simultaneously after

18    the business consultant manager --

19        A.    Yes.

12:11   20        Q.    Was that considered a promotion?

21        A.    When I took the job, no.  It would have

22    been considered a lateral.

23        Q.    When you took that job -- or strike that.

24            Did you have to apply for that job?

12:11   25        A.    Yes.

12:11   1        Q.   So you applied for the job and you

        2   received the job; is that correct?

        3        A.   Yes.

        4        Q.   And when you received the job, did that

12:11   5   result in increase in your total compensation?

        6        A.   No.

        7        Q.   Did it change your direct report?

        8        A.   It changed my manager.

        9        Q.   Who was your manager?

12:11  10        A.   Jodie Hickam.

       11        Q.   And when you changed to the executive

       12   compensation program manager, did you have any

       13   direct reports?

       14        A.   No.

12:12  15        Q.   How did your job responsibilities change?

       16        A.   So I wasn't involved with supporting

       17   business groups anymore.  I was -- my job dealt

       18   with -- the bonus programs are global in nature, so

       19   I was responsible for the analysis and communication

12:12  20   of the bonuses.  And in exec comp I was -- instead

       21   of working on employee compensation things for, you

       22   know, grade 7 and 8s, it was executives.

       23        Q.   What grade are executives, typically?

       24        A.   It depends on how you define "executive."

12:13  25        Q.   How do you define "executive"?

```
12:13    1          A.    For -- we have vice presidents that are

         2    appointed by the board of directors.  Those start at

         3    grade 14.  So those are definitely executives.

         4    Underneath that, there are vice presidents that are

12:13    5    appointed by the business groups, so Intel managers,

         6    not the board of directors.  I would also consider

         7    those executives.  And that would be grade 11, grade

         8    12.

         9
```

12:15    1

12:16     1

12:18      1          Q.    Did you know what the minimum and maximum

           2    of the range in grade 8 were at the time?

           3          A.    I'm sure I did.

           4          Q.    Did you know what the midpoint of grade 8

12:18      5    was at the time?

           6          A.    I'm sure I did.

Deposition of Daniel Robert McKell                    In Re:  HIGH-TECH EMPLOYEE ANTITRUST LITIGATION



12:19   1

6       Q.    Has your manager changed at all since you

7    have been in grade 8?

8       A.    Yes.

9       Q.    How has your manager changed?  Or excuse

12:20   10   me, who are the managers that you have had since you

11   have been in grade 8?

12      A.    Jodie Hickam was the one what promoted me

13   to tactical grade 8, and Claire Gray has been my

14   manager since being a grade 8, after I changed jobs

12:20   15   from the exec comp role into another compensation

16   role.

17      Q.    And when did you change jobs from the exec

18   comp role?  Was that to the compensation manager

19   job?

12:20   20      A.    No.  I -- I was still comp and benefits

21   specialist by the official system.  Internally, I

22   was base pay program manager, and that was in April

23   2008.

24

12:21     1

12:23    1

12:27   1

12:29     1

Deposition of Daniel Robert McKell                    In Re:  HIGH-TECH EMPLOYEE ANTITRUST LITIGATION

12:30    1

Deposition of Daniel Robert McKell                    In Re: HIGH-TECH EMPLOYEE ANTITRUST LITIGATION

12:32        1

12:36     1

CONFIDENTIAL  -  ATTORNEYS' EYES ONLY

12:38  1  [REDACTED]

       [REDACTED]

       [REDACTED]

       [REDACTED]

       [REDACTED]

       [REDACTED]

       [REDACTED]

       [REDACTED]

       [REDACTED]

       [REDACTED]

       [REDACTED]

       [REDACTED]

       [REDACTED]

       [REDACTED]

       [REDACTED]

       [REDACTED]

       [REDACTED]

       [REDACTED]

       [REDACTED]

       [REDACTED]

21     Q.   While you were base pay program manager,

22  you were still in grade 8; yes?

23     A.   Yes.

24     Q.   And at a certain point, did you change

12:39  25  your job title to compensation manager?

Deposition of Daniel Robert McKell                     In Re:  HIGH-TECH EMPLOYEE ANTITRUST LITIGATION

12:40   1          A.   Yes.

        2          Q.   And that was approximately nine months

        3     ago?

        4          A.   Yes.

12:40   5          Q.   Was that a promotion?

        6          A.   No.  By virtue of being the same grade,

        7     it's lateral.  It's a development opportunity for

        8     me.

        9          Q.   Did you apply for the job?

12:40   10         A.   Yes and no.  My manager asked me if I

        11    would be interested in it.  It was more part of a

        12    reorg than the other jobs where I knew the job was

        13    being open.  So I guess -- I didn't formally

        14    interview, but I agreed with my manager that I would

12:40   15    move to the new job.

        16

12:41   20         Q.   Did your job responsibilities change?

        21         A.   Yes.

        22         Q.   Describe what your job responsibilities

        23    are as compensation manager.

        24         A.   I manage the work of four other employees

12:41   25    that work on focal budgets and stock programs and

12:41   1   bonus programs.

2       Q.   What are the names and job titles of those

3   four other employees?

4       A.   They're all considered compensation --

12:41   5   comp and benefits specialists.  Tanya Kako is one

6   we've mentioned before.  Terri DeGroat,

7   D-E-G-R-O-A-T, is one.  Carol Buck, B-U-C-K, is

8   another.  And Yamit Liveneh is the fourth.

9   L-I-V-E-N-E-H, if that helps.

12:42   10      Q.   Do you still report to Ms. Gray?

11      A.   Yes.

12      Q.   Is this the first job position where you

13  have had direct reports?

14      A.   Yes.

12:42   15      Q.   Is part of your job now to provide focal

16  reviews to these direct reports?

17      A.   Yes.

18      Q.   Have you had an opportunity to do that

19  since you have been in your new job as compensation

12:42   20  manager?

21      A.   Yes.

22      Q.   When was that?

23      A.   This month.

24      Q.   What ratings did you give your four

12:42   25  employees, four direct reports?

12:42    1        A.    Our business group is running a pilot of

         2   no ratings, so they didn't get a rating.

         3

Deposition of Daniel Robert McKell

12:44      1

12:46     1

In Re:  HIGH-TECH EMPLOYEE ANTITRUST LITIGATION

12:47   1

Deposition of Daniel Robert McKell                    In Re:  HIGH-TECH EMPLOYEE ANTITRUST LITIGATION

12:49      1

Deposition of Daniel Robert McKell                    In Re:  HIGH-TECH EMPLOYEE ANTITRUST LITIGATION

12:51      1

Deposition of Daniel Robert McKell                    In Re:  HIGH-TECH EMPLOYEE ANTITRUST LITIGATION

12:53        1

Deposition of Daniel Robert McKell                    In Re:  HIGH-TECH EMPLOYEE ANTITRUST LITIGATION

12:54       1

Deposition of Daniel Robert McKell                                    In Re:  HIGH-TECH EMPLOYEE ANTITRUST LITIGATION

12:56      1

Deposition of Daniel Robert McKell                    In Re:  HIGH-TECH EMPLOYEE ANTITRUST LITIGATION

12:58       1

12:59       1

In Re:  HIGH-TECH EMPLOYEE ANTITRUST LITIGATION

02:18     1



02:20   1

02:20   9    Q.   I'd like to go back.  We talked earlier

02:20  10    about an individual named Dr. Kevin Murphy.  Do you

       11    recall that?

       12    A.   I think you mentioned it, and I didn't

       13    recognize the name.

       14    Q.   I'm going to represent to you that he's an

02:20  15    expert that the defendants have hired in this case.

       16    A.   Okay.

       17    Q.   I'm going to represent to you that he has

       18    represented that he had an interview with you on

       19    June 19th, 2012.

02:21  20    A.   Okay.

       21    Q.   Do you have any reason to believe that

       22    that's not the case?

       23    A.   No.  Like I said, I had several conference

       24    calls with people over the phone.  If I went back

02:21  25    and looked at June 19th, his name might have been on

02:21    1    the distribution list, but I couldn't recognize the

         2    voices or describe to you who was asking me

         3    questions or who wasn't.  I was on a call with what

         4    I thought were -- with Intel attorneys and I knew

02:21    5    other people occasionally were there, but I didn't

         6    necessarily get into specifics about -- or remember

         7    who was there and what their position was, so...

         8         Q.    Thinking to those telephone calls, what

         9    was discussed?

02:21   10         A.    Some of the same types of questions you

        11    have been asking me today, just how we -- how we do

        12    compensation at Intel, what our philosophies and

        13    practices are, questions about how we guide

        14    managers, so -- pretty similar, I guess.

02:22   15



02:22   1

02:23   15        Q.   Do you recall how long the telephone

16   conversation -- that telephone conversation was?

17        A.   I don't think any of the conversations

18   extended beyond an hour.  I think they were

19   generally 30 to 60 minutes in length, if my memory

02:24   20   is right.  Sometimes much shorter.  There were some

21   calls where it was, you know, like two clarifying

22   questions, and I think it was in less than a half an

23   hour.  But I think most of them were scheduled for

24   half hour to an hour.

02:24   25        Q.   And I just want to be clear.  I'm not

| | | |
|---|---|---|
| 02:24 | 1 | asking about telephone calls where just the |
| | 2 | attorneys were on the phone.  Do you recall whether |
| | 3 | you had one interview on June 19 with Mr. Murphy and |
| | 4 | then some follow-up calls, or do you know who was on |
| 02:24 | 5 | the phone during those conversations? |
| | 6 | A.   I don't know who was on -- I couldn't tell |
| | 7 | you who was on each of the calls.  I don't -- |
| | 8 | Mr. Murphy?  Is that his name? |
| | 9 | Q.   Dr. Murphy. |
| 02:25 | 10 | A.   Dr. Murphy.  If he was on the call in |
| | 11 | June, then yeah.  But I don't specifically remember |
| | 12 | it.  And I don't remember him on other calls.  But |
| | 13 | it's, you know, four voices on the end of a phone I |
| | 14 | have never met, never seen, and to me it didn't |
| 02:25 | 15 | really matter who was asking the question.  It was |
| | 16 | more -- I was more focused on providing an answer. |
| | 17 | Q.   Did you take any notes in connection with |
| | 18 | those telephone conversations? |
| | 19 | A.   No.  Or if I did, I don't keep them, you |
| 02:25 | 20 | know.  I might, like, doodle while I'm talking, but |
| | 21 | then throw them away. |
| | 22 | Q.   But you don't recall taking any notes? |
| | 23 | A.   No.  Sorry. |
| | 24 | (Exhibit 2030 marked.) |
| 02:26 | 25 | Q.   I'm going to hand you a document that I |

| | | |
|---|---|---|
| 02:26 | 1 | have marked Exhibit 2030.  And this is a copy of the |
| | 2 | declaration of Danny McKell in support of opposition |
| | 3 | to class certification and exhibits.  I'm going to |
| | 4 | assume you're familiar with this document, but if |
| 02:26 | 5 | you want to take some time to review, that's fine. |
| | 6 | A.   Yeah, I'm familiar with this one. |
| | 7 | Q.   Sir, is this a copy of the declaration |
| | 8 | that you signed and submitted in this case? |
| | 9 | A.   Yes. |
| 02:27 | 10 | Q.   If you go to page 5, which is the last |
| | 11 | page of the declaration before the exhibits -- |
| | 12 | A.   Okay. |
| | 13 | Q.   -- paragraph 16 reads, "I declare under |
| | 14 | penalty of perjury that the foregoing is true and |
| 02:27 | 15 | correct." |
| | 16 | Do you see that? |
| | 17 | A.   Yep. |
| | 18 | Q.   And do you agree that everything in your |
| | 19 | declaration is true and correct? |
| 02:27 | 20 | A.   Yes. |
| | 21 | Q.   And did you sign this document in |
| | 22 | Rio Rancho, New Mexico, on November 12, 2012? |
| | 23 | A.   Yes. |
| | 24 | Q.   And that's your signature; right? |
| 02:27 | 25 | A.   Yes. |

In Re:  HIGH-TECH EMPLOYEE ANTITRUST LITIGATION

02:40      1

02:41      1

Deposition of Daniel Robert McKell    In Re: HIGH-TECH EMPLOYEE ANTITRUST LITIGATION

02:42    1

Deposition of Daniel Robert McKell                    In Re:  HIGH-TECH EMPLOYEE ANTITRUST LITIGATION

02:44        1

Deposition of Daniel Robert McKell                    In Re:  HIGH-TECH EMPLOYEE ANTITRUST LITIGATION

02:46    1    ████████████████████████████████

         2    ███████████████████████████████

         3    █████   ████████████████████████████████

         4         ███   ███████████████████████

████     5    ███████████████████████████████

         6    ██████████████████████████████████████

         7    ██████████████████████████████████████

         8    █████████████████████████████████████

         9    ███████████████████████████████

████    10    ████████████

        11              ███████████████

        12         ███   ██████

        13         ███   ████████████████████████

        14         ███   ██████

████    15         ███   ██████████████████████

        16    ██████████████████████

        17         ███   █████████████████████████

        18    ███████████████████████████████

        19    ██████████████████████████████████████

████    20    ██████████████████████████████████████

        21         Q.   Did you draft this document?

        22         A.   No.

        23         Q.   When was the first time you saw this

        24    document?

02:47   25         A.   I probably saw it back in 2007, Linda's --

02:50      1          Q.    Yes.

           2          A.    Could have been Terri DeGroat at the time.

           3     Could have been somebody else.  I'd have to -- more

           4     towards the end of the 2009, more likely to be like

02:51      5     a Terri DeGroat.  2005, it might have been somebody

           6     else.

CONFIDENTIAL  -  ATTORNEYS' EYES ONLY

Deposition of Daniel Robert McKell                    In Re:  HIGH-TECH EMPLOYEE ANTITRUST LITIGATION

02:54       1

02:55     1

02:57     1

Deposition of Daniel Robert McKell

In Re:  HIGH-TECH EMPLOYEE ANTITRUST LITIGATION

02:59      1

03:00      1

Deposition of Daniel Robert McKell

In Re: HIGH-TECH EMPLOYEE ANTITRUST LITIGATION

03:02        1

Deposition of Daniel Robert McKell                    In Re:  HIGH-TECH EMPLOYEE ANTITRUST LITIGATION

03:03    1

Deposition of Daniel Robert McKell                    In Re:  HIGH-TECH EMPLOYEE ANTITRUST LITIGATION

03:05      1

Deposition of Daniel Robert McKell                                    In Re:  HIGH-TECH EMPLOYEE ANTITRUST LITIGATION

03:06        1

Deposition of Daniel Robert McKell                    In Re:  HIGH-TECH EMPLOYEE ANTITRUST LITIGATION

03:39      1

Deposition of Daniel Robert McKell                    In Re:  HIGH-TECH EMPLOYEE ANTITRUST LITIGATION

03:41     1

Deposition of Daniel Robert McKell                    In Re:  HIGH-TECH EMPLOYEE ANTITRUST LITIGATION

03:42        1

03:43    1

03:45     1

Deposition of Daniel Robert McKell          In Re:  HIGH-TECH EMPLOYEE ANTITRUST LITIGATION

03:49      1

Deposition of Daniel Robert McKell                    In Re:  HIGH-TECH EMPLOYEE ANTITRUST LITIGATION

03:51     1

03:52        1

03:54      1

03:55     1

Deposition of Daniel Robert McKell                    In Re:  HIGH-TECH EMPLOYEE ANTITRUST LITIGATION

03:57     1

Deposition of Daniel Robert McKell                    In Re:  HIGH-TECH EMPLOYEE ANTITRUST LITIGATION

03:59      1

Deposition of Daniel Robert McKell                    In Re:  HIGH-TECH EMPLOYEE ANTITRUST LITIGATION

04:00        1

04:02   1

04:03        1

Deposition of Daniel Robert McKell                    In Re:  HIGH-TECH EMPLOYEE ANTITRUST LITIGATION

04:05        1

In Re:  HIGH-TECH EMPLOYEE ANTITRUST LITIGATION

04:13      1

Deposition of Daniel Robert McKell                    In Re:  HIGH-TECH EMPLOYEE ANTITRUST LITIGATION

04:14      1

Deposition of Daniel Robert McKell

In Re:  HIGH-TECH EMPLOYEE ANTITRUST LITIGATION

04:17     1

Deposition of Daniel Robert McKell

In Re:  HIGH-TECH EMPLOYEE ANTITRUST LITIGATION

04:19   1

Deposition of Daniel Robert McKell                    In Re:  HIGH-TECH EMPLOYEE ANTITRUST LITIGATION

04:20      1

04:22     25              MR. SHAH:  Object to form.

Deposition of Daniel Robert McKell                    In Re: HIGH-TECH EMPLOYEE ANTITRUST LITIGATION

Deposition of Daniel Robert McKell                    In Re:  HIGH-TECH EMPLOYEE ANTITRUST LITIGATION

04:24        1

Deposition of Daniel Robert McKell                    In Re:  HIGH-TECH EMPLOYEE ANTITRUST LITIGATION

Deposition of Daniel Robert McKell                    In Re:  HIGH-TECH EMPLOYEE ANTITRUST LITIGATION

04:27      1      ███████████████████████████████████

           ███      █████████████████      █████████████████

           ███      █████████████████████

           4              Q.    You can put this document aside.  Let's go

04:27      5      off the record for five minutes.

           6                    (A discussion was held off the record.)

           7                    (Recess from 4:27 p.m. to 4:40 p.m.)

           8              Q.    Mr. McKell, is there any reason why you

           9      can't continue to give me your best testimony?

04:40     10              A.    No.

          11        ███    ████    █████████████████████████

          ███      ██████████

          ███      ███    ████

          ███      ███    █████████████████

███       ███      █████████    █████████████

          ███      ███    ████████████████

          ███      █████████████████████████████████████

          ███      ████████████████████████████████    ██

          ███      ████████████████████████████████████████

███       ███      ████████████████████████████████████████

          ███      ████████████████████████████████

          ███      ██████████████████    ████████████

          ███      ███████████████████████████████████████

          ███      ████████████████████

███       ███      ███    ██████████████████████████████

04:41    1    been marked Exhibit 398.  And I'm not going to ask

2    you about most of it, but you should feel free to

3    make yourself as comfortable with that document as

4    you want.

04:41    5         (Exhibit 398 previously marked.)

Deposition of Daniel Robert McKell                    In Re: HIGH-TECH EMPLOYEE ANTITRUST LITIGATION

04:42   1              ▮▮▮▮▮   ▮▮▮▮▮

        ▮      ▮▮   ▮▮▮▮▮

        3         Q.   Since you have been at Intel, have you had

        4    any responsibilities with respect to recruiting of

04:43   5    employees?

        6         A.   No.

        7         Q.   Do you have any personal knowledge of

        8    practices of recruiters at Intel?

        9              MR. SHAH:  Object to form.

04:43  10         A.   Can you be more specific?

       11         Q.   Sure.  Do you have any personal knowledge

       12    as to how recruiters at Intel recruit talent?

       13         A.   Yes.

       14         Q.   Okay.  What's your understanding of how

04:43  15    recruiters at Intel recruit talent?

       16         A.   They can go to job fairs, search job

       17    boards, Monster.com, those types of things, to find

       18    candidates who they think might be interested.

       19    There's also employees who submit their resume

04:44  20    straight to Intel that express an interest in

       21    coming.  So they can engage with search firms,

       22    headhunters, to identify, so there's various ways to

       23    do it.

       24         Q.   Do you have any personal knowledge as to

04:44  25    whether recruiters at Intel use cold-calling as one

KRAMM COURT REPORTING          CONFIDENTIAL - ATTORNEYS' EYES ONLY                    Page: 209

04:44   1    means of recruiting?

        2        A.   I don't.

Deposition of Daniel Robert McKell                                    In Re:  HIGH-TECH EMPLOYEE ANTITRUST LITIGATION



Deposition of Daniel Robert McKell                In Re:  HIGH-TECH EMPLOYEE ANTITRUST LITIGATION

04:46        1

Deposition of Daniel Robert McKell                          In Re:  HIGH-TECH EMPLOYEE ANTITRUST LITIGATION

04:48      1

Deposition of Daniel Robert McKell                    In Re:  HIGH-TECH EMPLOYEE ANTITRUST LITIGATION

04:49   1   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮  ▮▮▮▮▮▮▮▮

▮   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮   ▮   ▮▮   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮   ▮▮▮▮▮▮▮▮

▮   ▮▮   ▮▮▮▮▮▮▮

▮   ▮▮   ▮▮▮

▮▮▮   ▮   ▮▮   ▮▮▮▮▮▮▮▮▮

▮   ▮▮   ▮▮▮▮▮▮▮▮▮▮

▮   ▮▮▮▮▮▮▮▮▮▮▮▮

▮   ▮▮   ▮▮

▮   ▮▮   ▮▮▮▮▮▮▮▮▮

04:50   15            (Exhibit 2032 marked.)

16            Q.   I'm handing you a document I have marked

17   as Exhibit 2032.  Why don't you take a moment to

18   review it.  For the record, this is a document

19   Bates-stamped 76657DOC004396 through 98.

04:51   20            MS. SCHALMAN-BERGEN:  While you're

21   reviewing, if people want to go off the record for a

22   second to get coffee, I would be happy to do that.

23            (A discussion was held off the record.)

24            (Recess from 4:52 p.m. to 4:54 p.m.)

04:54   25            Q.   While I got my coffee, is there any reason

Deposition of Daniel Robert McKell                    In Re: HIGH-TECH EMPLOYEE ANTITRUST LITIGATION

04:54  1    that you couldn't continue to give me your best

       2    testimony?

       3         A.   No, I'm good.

       4         Q.   Okay.  Okay.  Have you had a chance to

04:54  5    review this document, Exhibit 2032?

       6         A.   Yes.

       7         Q.   Okay.  What do you recognize it to be?

       8         A.   Sorry, what did you say?

       9         Q.   What do you recognize this document to be?

04:55  10        A.   An e-mail exchange between several

       11   individuals, so -- Tom Galvin at the time was the

       12   VP -- or not VP.  Director of compensation and

       13   benefits at Intel.

       14        Q.   This is an e-mail chain.  The top e-mail

04:55  15   is from you; is that accurate?

       16        A.   Yes.

       17        Q.   Okay.  And do you send and receive e-mail

       18   in the ordinary course of your business?

       19        A.   Yes, all the time.

04:55  20        Q.   More than you want, probably.

       21        A.   Probably.

       22        Q.   What's your e-mail address at Intel?

       23        A.   Danny.McKell@Intel.com.

       24        Q.   Has that been your e-mail address

04:55  25   throughout the time you have been at Intel?

KRAMM COURT REPORTING          CONFIDENTIAL - ATTORNEYS' EYES ONLY                    Page: 215

04:55    1        A.    Yes.  I think it might have changed at the

         2    start, but yeah, for the last...

         3        Q.    And do you recall sending this e-mail, the

         4    top e-mail, that's in Exhibit 2032?

04:56    5        A.    Prior to your showing it to me, I don't,

         6    but I do now.

         7        Q.    Do you have any reason to believe that you

         8    did not send this e-mail?

         9        A.    No.

04:56   10

Deposition of Daniel Robert McKell                    In Re:  HIGH-TECH EMPLOYEE ANTITRUST LITIGATION

04:57    1    ███████████████████████████████

         2    █████████████████████

         3           Q.   I would like to know, but I'm not going

         4    to.  Michael Jordan is not the basketball player;

04:57    5    fair?

         6           A.   No.

         7           Q.   Okay.  An employee at Intel?

         8           A.   He's a white guy.

         9           Q.   All right.  Devra Johnson is in HR; is

04:58   10    that right?

        11           A.   She's an HR manager.

        12           Q.   What was your job title in the time of

        13    this e-mail exchange?

        14           A.   I was a compensation consultant.

04:58   15        ██   █████████████████████

        ██   ███████████████████████████

        ██   ████████████

        ██   ██   █████████████████████████

        ██   ████████████████████

        ██   ██   ██   ███████████████████

        ██   █████████████████

        ██   ██   ████   ████

        ██   ██   ████████████████████████

        ██   ████████████████████

        ██   █████████████████████████

Deposition of Daniel Robert McKell                                    In Re:  HIGH-TECH EMPLOYEE ANTITRUST LITIGATION

04:59      1

In Re:  HIGH-TECH EMPLOYEE ANTITRUST LITIGATION

Deposition of Daniel Robert McKell                    In Re:  HIGH-TECH EMPLOYEE ANTITRUST LITIGATION

05:01     1

05:04    1

Deposition of Daniel Robert McKell                    In Re:  HIGH-TECH EMPLOYEE ANTITRUST LITIGATION

Deposition of Daniel Robert McKell                                    In Re:  HIGH-TECH EMPLOYEE ANTITRUST LITIGATION

05:07        1

Deposition of Daniel Robert McKell                    In Re:  HIGH-TECH EMPLOYEE ANTITRUST LITIGATION

05:08   1      ████████████████████████████████████

        ██     ████████  ███████████████████████████

        ██     █████████████████████████████████████

        ██     ████████████████████████████████

        ████   ██  ██████████████████████████████████

        ██     ██████████████████████████████████

        ██     █████████████████████████████████

        ██     ████████████████████

        ██         ████  ████████  ██████████████████████

05:09   10             I'm going to hand you a document I have

        11     marked as Exhibit 2033.

        12             (Exhibit 2033 marked.)

        13         Q.    For the record, this document is Bates

        14     stamped 76657DOC004599.  This is an e-mail between

05:10   15     Danny McKell and Gary Boyle copying Paula Cooney and

        16     Elizabeth Waterman, dated February 22nd, 2005,

        17     subject:  Feb MSR from McKell.  Ready?

        18         A.    Yep.

        19         Q.    Okay.  Have you seen this document before?

05:10   20         A.    Yes.

        21         Q.    Did you write this document?

        22         A.    I did.

        23             ██  ██████  ██████████████████████

        ██     ██████████████████████████████████████

        ████   ██  ██  ████████████████████████████████

Deposition of Daniel Robert McKell                    In Re:  HIGH-TECH EMPLOYEE ANTITRUST LITIGATION

Deposition of Daniel Robert McKell                         In Re:  HIGH-TECH EMPLOYEE ANTITRUST LITIGATION

05:12     1

Deposition of Daniel Robert McKell                    In Re:  HIGH-TECH EMPLOYEE ANTITRUST LITIGATION

05:13      1

Deposition of Daniel Robert McKell          In Re:  HIGH-TECH EMPLOYEE ANTITRUST LITIGATION

```
05:14   1   ████████████████████████████

        ██      ██   ████████████████████████████

        ██   ████████████████████████████████

        ██   ████████████████████████  ████

████    ██   ██████████████████████████████████

        ██   ██████████████████████████████████

        ██   ████

        8           THE VIDEOGRAPHER:  Counsel, I need to

        9   change tapes real quick.

05:15  10           (Recess from 5:15 p.m. to 5:16 p.m.)

       11           (Exhibit 2034 marked.)

       12      ██   ████████████████████████████

        ██   ██   ████████████████████████████████

        ██   ██████████████████  ██████████████

████    ██   ██████████████████████████

        ██   ██████████████████████████████████

        ██   ████████████████████  ████████

        ██   ████████████████  ████████████████

        ██   ██████████████

████    ██      ██   ████

        ██      ██   ████████  ████████████████

        ██   ████████

        ██      ██   ████

        ██      ██   ████████  ██████████████

████    ██      ██   ██████████████████████████
```

05:18      1

Deposition of Daniel Robert McKell                    In Re: HIGH-TECH EMPLOYEE ANTITRUST LITIGATION

05:41        1

Deposition of Daniel Robert McKell                          In Re:  HIGH-TECH EMPLOYEE ANTITRUST LITIGATION

05:42      1

In Re:  HIGH-TECH EMPLOYEE ANTITRUST LITIGATION

05:44   1

Deposition of Daniel Robert McKell                    In Re:  HIGH-TECH EMPLOYEE ANTITRUST LITIGATION

05:46      1

Deposition of Daniel Robert McKell                    In Re:  HIGH-TECH EMPLOYEE ANTITRUST LITIGATION

05:47      1

Deposition of Daniel Robert McKell

In Re:  HIGH-TECH EMPLOYEE ANTITRUST LITIGATION

Deposition of Daniel Robert McKell                          In Re: HIGH-TECH EMPLOYEE ANTITRUST LITIGATION

05:51        1

Deposition of Daniel Robert McKell                        In Re:  HIGH-TECH EMPLOYEE ANTITRUST LITIGATION

Deposition of Daniel Robert McKell                    In Re:  HIGH-TECH EMPLOYEE ANTITRUST LITIGATION

05:54          1

Deposition of Daniel Robert McKell                    In Re:  HIGH-TECH EMPLOYEE ANTITRUST LITIGATION



05:56   1

05:57   14        Q.   On the second page, the e-mail from Jodie

05:57   15   to you, copy to Sara Holder, do you see that?

        16        A.   Yes.

        17        Q.   It says, "Hi, Danny.  Now that the proxy

        18   is out, I think we might want to draft a WTK

        19   response about Paul's compensation.  I haven't

05:57   20   received any WTKs yet, but I expect it is only a

        21   matter of time before we do.  An article on the

        22   front page of Saturday's business section of the

        23   Arizona Republic read, 'Intel CEO's pay jumps,'" and

        24   then there's something redacted for privacy.

05:57   25   "'Intel Corp raised CEO Paul Otellini's pay,'"

Deposition of Daniel Robert McKell                In Re:  HIGH-TECH EMPLOYEE ANTITRUST LITIGATION

05:57    1    another redaction, "'last year, as the company's

        2    profits rose.'"

        3         Do you see that?

        4      A.    Uh-huh.

05:57    5      Q.    Was the information about Mr. Otellini's

        6    compensation public?

        7      A.    Yeah, the proxy is a publicly available

        8    document, so as soon as it's out, then anybody can

        9    access it.

05:58    10        MS. SCHALMAN-BERGEN:  So we'd request that

      11    you produce this without the privacy redaction.

      12        MR. SHAH:  I agree that some of the

      13    privacy redactions should be taken out.  I don't

      14    know if all of them should, but I agree that some

05:58    15    will, and we can produce --

      16        MS. SCHALMAN-BERGEN:  Okay.

      17        MR. SHAH:  -- an unredacted copy.

      18        MS. SCHALMAN-BERGEN:  All right.

      19

Deposition of Daniel Robert McKell

In Re:  HIGH-TECH EMPLOYEE ANTITRUST LITIGATION

Deposition of Daniel Robert McKell                    In Re:  HIGH-TECH EMPLOYEE ANTITRUST LITIGATION

06:00      1

Deposition of Daniel Robert McKell                    In Re:  HIGH-TECH EMPLOYEE ANTITRUST LITIGATION

06:02     1

Deposition of Daniel Robert McKell

In Re: HIGH-TECH EMPLOYEE ANTITRUST LITIGATION

06:11   1

06:13   1   ██████████████████████████████

       █   ████████████████████

       █   ██  ████████████████████

       █   ████████████████

██    █   ██  ██

     6        (Exhibit 2042 marked.)

     7     Q.   I'm going to hand you a document marked

     8   2042.  This document has a Bates stamp

     9   76657DOC057417.  It's an e-mail from Jeri Karges,

06:14  10   K-A-R-G-E-S, to C&B Org All, sent November 11, 2010.

    11   Subject:  Google announcement to give staff 10

    12   percent raise.  Let me know when you're ready.

    13      A.   Okay.

    14      Q.   Okay.  Do you recognize this document?

06:15  15      A.   I do.

    16      Q.   Are you on the CNB Org All distribution

    17   list?

    18      A.   I am.

    19      Q.   Or were you at least on November 11, 2010?

06:15  20      A.   I am, yeah.

    21      Q.   Okay.  Do you recall Google announcing a

    22   10 percent increase to its employees?

    23      A.   I do.

    24   ██  ████  ████████████████████

██    █   ████████████

06:15      1

Deposition of Daniel Robert McKell      In Re:  HIGH-TECH EMPLOYEE ANTITRUST LITIGATION



06:16   1

        2

        3

        4

        5

        6

        7

        8

        9

       10

       11

12          MS. SCHALMAN-BERGEN:  Okay.  Let's go off

13  the record.

14          (Recess from 6:17 p.m. to 6:23 p.m.)

06:23   15     Q.  Sir, did you just have a brief

16  conversation with Intel's attorney about questions

17  that he might ask you?

18          MR. SHAH:  I'm going to object and

19  instruct you not to answer.  I'll put my mic on.

06:23   20  I'm going to object and ask that -- instruct you not

21  to answer on the grounds that it calls for

22  attorney/client communication.

23     Q.  I'll hand you a document I have marked as

24  Exhibit 2043.

06:23   25          (Exhibit 2043 marked.)

Deposition of Daniel Robert McKell                    In Re:  HIGH-TECH EMPLOYEE ANTITRUST LITIGATION

06:24      1

06:26    1    Intuit.

         2         A.    No.

         3         Q.    Same question with respect to Pixar and

         4    Lucasfilm.

06:26    5         A.    No.

         6              MS. SCHALMAN-BERGEN:   I have no further

         7    questions for you.

         8              MR. SHAH:   Okay.   I just have a handful of

         9    questions.

06:26   10                    EXAMINATION

        11    BY MR. SHAH:

        12

Deposition of Daniel Robert McKell                    In Re:  HIGH-TECH EMPLOYEE ANTITRUST LITIGATION

06:27     1

06:29   1   ████████████████████████████████████

        ████████████████████████████████

        █████████████████████████████████████

        █████████████████████████████████████

██████  ███████████████████████████████████████

        █████████████████████  ███████████████

        ███████████████████████████

        ███████████████████████████████

        ██████████████████████████████████

██████  ████████████████████████████████████████

        █████████████████  █  ████████████████

        ██████████████████████████████████████

        ████████████████████████████████████

        ██████████████████████  ███████████████

██████  █████████████████████████████████████

        ████████████████████████████████████  █

        ████████████████████████████████████

        █████████████████  ███████████████████

        ██████████████████████████████████

██████  ████████████████████████████

21          Q.   I have one final question regarding -- and

22      I don't recall what number the exhibit was, but it

23      was your declaration.  Do you remember what exhibit

24      number that is?

06:31   25          A.   2030.  2030, I think.

Deposition of Daniel Robert McKell                                In Re:  HIGH-TECH EMPLOYEE ANTITRUST LITIGATION

06:31     1

          24              MR. SHAH:   I have no further questions.

          25

Deposition of Daniel Robert McKell        In Re:  HIGH-TECH EMPLOYEE ANTITRUST LITIGATION

06:40    1

06:42   20         MS. SCHALMAN-BERGEN:  I have no more

21    questions for you.

22          MR. SHAH:  Thanks.  No more from me.

23          MS. SCHALMAN-BERGEN:  Thank you very much

24    for your time.

06:42   25         (The deposition concluded at 6:42 p.m.)

```
 1              IN THE UNITED STATES DISTRICT COURT

 2              NORTHERN DISTRICT OF CALIFORNIA

 3                    SAN JOSE DIVISION

 4    IN RE:  HIGH-TECH EMPLOYEE ANTITRUST
      LITIGATION
 5

 6    THIS DOCUMENT RELATES TO:

 7    ALL ACTIONS.

 8

 9         NO:  Master Docket No. 11-CV-2509-LHK

10              REPORTER'S CERTIFICATE

11         I, MARY ABERNATHY SEAL, New Mexico CCR
      #69, DO HEREBY CERTIFY that on March 20, 2013, the
12    Deposition of DANIEL ROBERT McKELL was taken before
      me at the request of, and sealed original thereof
13    retained by:

14              Attorney for the Plaintiffs
                Ms. Sarah R. Schalman-Bergen
15              BERGER & MONTAGUE, P.C.
                1622 Locust Street
16              Philadelphia, Pennsylvania 19103-6365
                (215) 875-3000
17

18         I FURTHER CERTIFY that copies of this
      Certificate have been mailed or delivered to all
      Counsel, and parties to the proceedings not
19    represented by counsel, appearing at the taking of
      the Deposition.
20

21         I FURTHER CERTIFY that examination of this
      transcript and signature of the witness was required
      by the witness and all parties present.
22    On_____ a letter was mailed or delivered to Mr.
      Sujal J. Shah regarding obtaining signature of the
23    witness, and corrections, if any, were appended to
      the original and each copy of the Deposition.

24

25
```

```
 1          I FURTHER CERTIFY that the recoverable
    cost of the original and one copy of the Deposition,
 2  including exhibits, to Mr. Sarah R. Schalman-Bergen
    is $_____.
 3
            I FURTHER CERTIFY that I did administer
 4  the oath to the witness herein prior to the taking
    of this Deposition; that I did thereafter report in
 5  stenographic shorthand the questions and answers set
    forth herein, and the foregoing is a true and
 6  correct transcript of the proceeding had upon the
    taking of this Deposition to the best of my ability.
 7
            I FURTHER CERTIFY that I am neither
 8  employed by nor related to nor contracted with
    (unless excepted by the rules) any of the parties or
 9  attorneys in this case, and that I have no interest
    whatsoever in the final disposition of this case in
10  any court.

11

12
                    _____
13                  Mary Abernathy Seal
                    BEAN & ASSOCIATES, INC.
14                  NM Certified Court Reporter #69
                    License Expires: 12/31/13
15
    (6941K) MAS
16  Date taken:  March 20, 2013
    Proofread by:  JB
17

18

19

20

21

22

23

24

25
```

 1    IN RE: HIGH-TECH EMPLOYEE ANTITRUST LITIGATION

 2          WITNESS SIGNATURE/CORRECTION PAGE

 3          If there are any typographical errors to
      your deposition, indicate them below:

 4

 5    PAGE  LINE

 6    _____  Change to _____

 7    _____  Change to _____

 8    _____  Change to _____

 9    _____  Change to _____

10          Any other changes to your deposition are
      to be listed below with a statement as to the reason
11    for such change.

12    PAGE  LINE  CORRECTION              REASON FOR CHANGE

13    _____

14    _____

15    _____

16    _____

17    _____

18    _____

19          I, DANIEL ROBERT McKELL, do hereby certify
      that I have read the foregoing pages of my testimony
20    as transcribed and that the same is a true and
      correct transcript of the testimony given by me in
21    this deposition on March 20, 2013, except for the
      changes made.

22

23          _____
                  DANIEL ROBERT McKELL

24    (6941K) MAS Proofread by:  JB

25