```
              UNITED STATES DISTRICT COURT

             NORTHERN DISTRICT OF CALIFORNIA

                    SAN JOSE DIVISION
```

| | |
|---|---|
| IN RE: HIGH-TECH EMPLOYEE ) <br> ANTITRUST LITIGATION ) <br> ) Master Docket <br> ) No. 11-CV-2509-LHK <br> THIS DOCUMENT RELATES TO: ) <br> ) <br> ALL ACTIONS ) | |

```
         Videotape Deposition Upon Oral Examination

                             of

                        DANA BATALI


         * * * CONFIDENTIAL - ATTORNEYS' EYES ONLY * * *


            Taken at 705 Second Avenue, Suite 1200

                     Seattle, Washington




DATE:   Tuesday, March 19, 2013

REPORTED BY:   Ronald L. Cook

               CCR, RMR, CRR
```

| | | |
|---|---|---|
| 10:19:24 1 | | And which positions were those? |
| 10:19:36 2 | A. | Well, we had a -- a position in the |
| 10:19:38 3 | | RenderMan group that was open for some period of time |
| 10:19:43 4 | | and that we had trouble filling, and -- so that one |
| 10:19:50 5 | | was certainly one of those. |
| 10:19:52 6 | Q. | What was that position called? |
| 10:19:53 7 | A. | RenderMan engineer. |
| 10:19:59 8 | Q. | Did HR help you fill the position? |
| 10:20:06 9 | A. | They were -- they were attempting to |
| 10:20:08 10 | | help. I don't recall they found anyone that filled |
| 10:20:10 11 | | the position. |
| 10:20:15 12 | Q. | Was the position eventually filled? |
| 10:20:22 13 | A. | Through kind of -- not directly, |
| 10:20:26 14 | | probably. Indirectly, yes. |
| 10:20:30 15 | Q. | Can you explain to me what you mean by |
| 10:20:32 16 | | a -- |
| 10:20:32 17 | A. | In our group we have -- |
| 10:20:32 18 | Q. | -- position is filled indirectly? |
| 10:20:33 19 | A. | -- we have a fluid definition of job |
| 10:20:36 20 | | title and job responsibilities, and folks can fill in |
| 10:20:41 21 | | for others while we might find someone more easily in |
| 10:20:46 22 | | a different position. |
| 10:20:48 23 | Q. | Mm-hmm. |
| 10:20:49 24 | A. | So in that way it's fluid. |
| 10:20:51 25 | Q. | Mm-hmm. |

| | | |
|---|---|---|
| 10:20:53 | 1 | And do you recall any other instances |
| 10:20:55 | 2 | where you reached out to Pixar human resources to help |
| 10:20:59 | 3 | you hire someone for your team? |
| 10:21:08 | 4 | A.   As a matter of practice, it's now part of |
| 10:21:09 | 5 | the process to get a req opened through a formal |
| 10:21:15 | 6 | signoff process, and that goes through HR.  So any new |
| 10:21:20 | 7 | position involves HR in that way. |
| 10:21:26 | 8 | Q.   How long has that been a part of the |
| 10:21:29 | 9 | process? |
| 10:21:36 | 10 | A.   I can only speak to the extent that it |
| 10:21:39 | 11 | affects me.  I don't know the actual official words |
| 10:21:42 | 12 | from the point of view of corporate, which is a |
| 10:21:43 | 13 | separate physical entity than ours.  Two, three, four |
| 10:21:53 | 14 | years. |
| 10:21:54 | 15 | Q.   Mm-hmm. |
| 10:21:56 | 16 | In this time period did you continue to |
| 10:21:59 | 17 | make decisions about what a new hire's salary offer |
| 10:22:02 | 18 | would be? |
| 10:22:03 | 19 | A.   Yeah. |
| 10:22:04 | 20 | Q.   Mm-hmm. |
| 10:22:04 | 21 | And were you required to get approval |
| 10:22:06 | 22 | from anyone for the offer amount? |
| 10:22:11 | 23 | A.   When the req is opened, there's a range |
| 10:22:13 | 24 | of salary that is expected for that position, and |
| 10:22:20 | 25 | that's part of that part of the approval process. |

```
10:22:23  1         Q.    Does that range kind of automatically
10:22:25  2    generate when you open the req?
10:22:28  3         A.    It's -- in my experience, it's part of
10:22:32  4    the specification of the job.  I have a -- I have a
10:22:36  5    sense of market value, I say I need someone with this
10:22:39  6    experience, and I imagine that the cost range could be
10:22:42  7    somewhere in this range.
10:22:43  8         Q.    Mm-hmm.
10:22:44  9               So when you open a req, do you put in the
10:22:46 10    salary range?
10:22:47 11         A.    Mm-hmm.
10:22:47 12         Q.    Mm-hmm.
10:22:56 13               And does that range have to be approved
10:22:58 14    by HR?
10:23:03 15         A.    My sense of the approval process is that
10:23:06 16    it's signed off by senior executives, not by HR.  HR
10:23:11 17    would perhaps be a resource to answering questions on
10:23:16 18    what might be a valid salary range, and I might
10:23:21 19    consult them.
10:23:23 20         Q.    Have you consulted them in the past for
10:23:25 21    what might be a valid salary range?
10:23:30 22         A.    Certainly, once or twice.
10:23:34 23         Q.    In this time period, in coming up with
10:23:38 24    your own sense of what appropriate salary range for a
10:23:41 25    new hire is, do you consult formal market surveys,
```

```
11:20:31  1        Q.    And as a result of that conversation, did
11:20:32  2   you conclude that you needed to increase some of your
11:20:39  3   employees' compensation?
11:20:41  4        A.    Certainly was a factor -- reassuring
11:20:44  5   factor.
11:20:47  6        Q.    Am I understanding correctly that the
11:20:49  7   information you got from Dan indicated that the
11:20:51  8   salaries should be higher?
11:20:55  9        A.    My recollection is that there's a range
11:20:57 10   of salaries, and that if someone falls in the range,
11:21:00 11   there's no strong call to change their salary, and
11:21:04 12   that the reasons would be extenuating as to whether to
11:21:07 13   do so.
11:21:08 14        Q.    Mm-hmm.
11:21:08 15        A.    So the numbers that I had pulled out of
11:21:10 16   my hat as intuitive numbers or had gotten from
11:21:13 17   ████████         as market -- a market number for his
11:21:18 18   friend at Microsoft fit in with the data that ████
11:21:22 19   ████  had at his disposal.  So it was reassuring.
11:21:26 20   Didn't feel like it was too much of a poker game.
11:21:29 21        Q.    I see.
11:21:32 22              Okay, I'd like to look at the next e-mail
11:21:34 23   in time.  It starts on Page 1 at the bottom.  It's
11:21:37 24   from you, September 23rd, 2008.
11:21:49 25              Turning to the next page, in the middle
```

```
11:21:52  1   of the paragraph you write, "Recently I've been
11:21:56  2   surprised by the salary levels for two new hires: ▓▓▓▓
▓▓▓▓▓ ▓   ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
11:22:06  4              Do you see that?
11:22:07  5        A.    Mm-hmm.
11:22:07  6        Q.    Below that you say -- I'm skipping a
11:22:10  7   sentence here.  You say, "As these new folks come in,
11:22:12  8   it's distorting the balance within the team."
11:22:14  9              Do you see that?
11:22:16 10        A.    Mm-hmm.
11:22:17 11        Q.    What did you mean by that?
11:22:21 12        A.    I suppose the sense that I have an actual
11:22:23 13   intuitive value associated with every person.
11:22:27 14        Q.    Mm-hmm.
11:22:29 15        A.    And if someone feels like they're being
11:22:34 16   paid more than someone I know who has more value, it
11:22:37 17   raises a bit of a flag.
11:22:39 18        Q.    Mm-hmm.
11:22:52 19              And what does "the balance within the
11:22:53 20   team" refer to?
11:22:57 21        A.    Just the fact that I have a balance in
11:23:00 22   the sense that the people who are my best performers
11:23:03 23   are probably closer to the higher range of their
11:23:07 24   market value, and those that aren't as high of
11:23:10 25   performers are closer to the medium or lower range of
```

| | | |
|---|---|---|
| 11:23:14 1 | | their market value. |
| 11:23:15 2 | Q. | And is that to do with experience level |
| 11:23:18 3 | | as well? |
| 11:23:19 4 | A. | Yeah. |
| 11:23:20 5 | Q. | So is it -- am I understanding this text |
| 11:23:24 6 | | correctly that you were concerned that new employees |
| 11:23:27 7 | | were coming in and were being paid more than employees |
| 11:23:30 8 | | that had been with Pixar for a while? |
| 11:23:32 9 | A. | These two employees specifically, yes. |
| 11:23:34 10 | | MS. HENN: Object to form. |
| 11:23:35 11 | Q. | BY MS. SHAVER: Mm-hmm. |
| 11:23:36 12 | | And were you concerned that that was |
| 11:23:42 13 | | resulting in unfair balance of pay between the new |
| 11:23:45 14 | | employees and the older employees? |
| 11:23:48 15 | | MS. HENN: Object to form. |
| 11:23:50 16 | | THE WITNESS: It was just part of my |
| 11:23:51 17 | | formulation of concern -- you know, trying to figure |
| 11:23:53 18 | | out what to do about compensation on an annual basis. |
| 11:23:56 19 | Q. | BY MS. SHAVER: Mm-hmm. |
| 11:23:57 20 | | You wanted to make sure that your |
| 11:23:58 21 | | employees were paid fairly; is that fair? |
| 11:24:01 22 | A. | I think any manager ought to be trying to |
| 11:24:04 23 | | do that. |
| 11:24:08 24 | Q. | Okay. |
| 11:24:08 25 | | Towards the bottom of that e-mail, the |

C E R T I F I C A T E

STATE OF WASHINGTON )
                    ) ss.
COUNTY OF KING      )

        I, the undersigned Washington Certified Court Reporter, pursuant to RCW 5.28.010, authorized to administer oaths and affirmations in and for the State of Washington, do hereby certify:
        That the foregoing deposition of the witness named herein was taken stenographically before me and reduced to a typed format under my direction;
        That, according to CR 30(e), the witness was given the opportunity to examine, read and sign the deposition after same was transcribed, unless indicated in the record that the review was waived;
        That all objections made at the time of said examination have been noted by me;
        That I am not a relative or employee of any attorney or counsel or participant and that I am not financially or otherwise interested in the action or the outcome herein;
        That the witness coming before me was duly sworn or did affirm to tell the truth;
        That the deposition as transcribed is a full, true and correct transcript of the testimony, including questions and answers and all objections, motions and exceptions of counsel made at the time of the foregoing examination;
        That as a matter of firm policy, the stenographic notes of this transcript will be destroyed three years from the date appearing on this transcript, unless notice is received otherwise from any party or counsel hereto on or before said date.

                                    _____
                                    RONALD L. COOK, CCR, RMR, CRR
                                    State of Washington CCR #2523

INSTRUCTIONS FOR READING/CORRECTING YOUR DEPOSITION

To assist you in making corrections to your deposition testimony, please follow the directions below. If additional pages are necessary, please furnish them and attach the pages to the back of the errata sheet.

This is the final version of your deposition transcript.

Please read it carefully. If you find any errors or changes you wish to make, insert the corrections on the errata sheet beside the page and line numbers.

Do NOT change any of the questions.

After completing your review, please sign the last page of the errata sheet, above the designated "Signature" line and return the transcript to your attorney.

ERRATA SHEET

Witness:     Dana Batali                    Date of Deposition:     March 19, 2013

| Page | Line | | |
|------|------|----------|---|
| 16 | 4 | Change: | "become" to "begin" |
|    |   | Reason:  | correction |
| 20 | 15 | Change: | insert "when" between "period" and "he" |
|    |   | Reason:  | correction |
| 24 | 1 | Change: | "Lohr" to "Laur" |
|    |   | Reason:  | correction |
| 25 | 13 | Change: | delete "was" |
|    |   | Reason:  | correction |
| 27 | 18 | Change: | delete "my man -- my --" |
|    |   | Reason:  | correction |
| 39 | 25 | Change: | delete "that part of" |
|    |   | Reason:  | correction |
| 51 | 13 | Change: | "in the" to "with" |
|    |   | Reason:  | correction |
| 146 | 25 | Change: | "LeFohn" to "Lefohn" |

|  |  |  |  |
|---|---|---|---|
|  |  | Reason: | correction |
| 147 | 2 | Change: | "LeFohn" to "Lefohn" |
|  |  | Reason: | correction |
| 149 | 1 | Change: | "LeFohn" to "Lefohn" |
|  |  | Reason: | correction |
| 149 | 17 | Change: | "LeFohn" to "Lefohn" |
|  |  | Reason: | correction |
| 150 | 3 | Change: | "LeFohn" to "Lefohn" |
|  |  | Reason: | correction |
| 150 | 6 | Change: | "LeFohn" to "Lefohn" |
|  |  | Reason: | correction |
| 151 | 5 | Change: | "LeFohn" to "Lefohn" |
|  |  | Reason: | correction |
| 165 | 19 | Change: | delete "in the vagueness of the question" and insert "who" between "Kiril" and "was" |
|  |  | Reason: | correction |
| 165 | 20 | Change: | delete "become in" |
|  |  | Reason: | correction |
| 165 | 21 | Change: | delete "having" |
|  |  | Reason: | correction |
| 167 | 7 | Change: | "8" to "2008" |
|  |  | Reason: | correction |

3

_X_____ Subject to the above changes, I certify that the transcript is true and correct.

_____ No changes have been made.  I certify that the transcript is true and correct.

_____*[signature]*_____    _4/30/2013_____
(signature)                                                                          (date)