```
 1                UNITED STATES DISTRICT COURT

 2              NORTHERN DISTRICT OF CALIFORNIA

 3                      SAN JOSE DIVISION

 4

 5

 6   IN RE:  HIGH-TECH EMPLOYEE      )

 7   ANTITRUST LITIGATION            )

 8                                   )   No. 11-CV-2509-LHK

 9   THIS DOCUMENT RELATES TO:       )

10   ALL ACTIONS.                    )

11   _____ )

12

13

14           CONFIDENTIAL - ATTORNEYS' EYES ONLY

15              VIDEO DEPOSITION OF MARK BENTLEY

16                      August 23, 2012

17

18

19

20   REPORTED BY:  GINA V. CARBONE, CSR NO. 8249, RPR, CCRR

21

22

23

24

25
```

```
05:36:48  1   purposes of determining or setting employee
05:36:50  2   compensation?
05:36:51  3            MR. RILEY:  Objection.  Question is overbroad.
05:36:53  4   No foundation.
05:37:01  5            THE WITNESS:  Do we set job levels for the
05:37:04  6   purposes of setting compensation?
05:37:07  7            MR. SAVERI:  Q.  Yes.
05:37:15  8       A.   I believe it is -- it's one vehicle that we use
05:37:19  9   to ultimately determine that.
05:37:24 10       Q.   Now, as a general matter, were changes made for
05:37:31 11   employee compensation through changes in job categories
05:37:35 12   or job classifications?
05:37:40 13       A.   Can you please repeat that question.
05:37:41 14       Q.   As a general matter, were changes made to
05:37:44 15   compensation for Apple employees through changes to job
05:37:47 16   categories or job classifications?
05:37:50 17            MR. RILEY:  Objection.  The question is vague.
05:37:52 18   No foundation.
05:37:55 19            THE WITNESS:  I believe there may be
05:37:56 20   circumstances when that was the case.  But I don't know
05:37:58 21   if that was a general practice.
05:38:01 22            MR. SAVERI:  Q.  Well, is it fair to say
05:38:04 23   that from time to time, persons move from one job
05:38:09 24   classification to another at Apple?
05:38:17 25       A.   I'm not sure I follow your question.
```

| | | |
|---|---|---|
| 05:38:18 | 1 | Q. Well, when an employee came to Apple, were they |
| 05:38:22 | 2 | put in -- were they assigned a job classification or job |
| 05:38:27 | 3 | category? |
| 05:38:29 | 4 | A. I believe that would be the case. |
| 05:38:31 | 5 | Q. And was one way their salary was increased, or |
| 05:38:34 | 6 | the compensation was increased, to be moved from one job |
| 05:38:38 | 7 | level or job classification to another job level or job |
| 05:38:41 | 8 | classification? |
| 05:38:45 | 9 | A. I would -- my understanding is that one |
| 05:38:48 | 10 | would -- my interpretation of that is it's done through |
| 05:38:54 | 11 | promotions and taking on more responsibility. |
| 05:38:58 | 12 | Q. And when someone was promoted, would they be |
| 05:39:01 | 13 | promoted to a higher job classification or job category? |
| 05:39:06 | 14 | A. I believe so. |
| 05:39:08 | 15 | Q. And as a consequence of that, or in connection |
| 05:39:10 | 16 | with that, if they were promoted, they would generally |
| 05:39:14 | 17 | receive more compensation.  Is that fair? |
| 05:39:18 | 18 | A. I believe that would be the case. |
| 05:39:22 | 19 | Q. From time to time, did Apple raise the |
| 05:39:25 | 20 | compensation for a particular job category or job level? |
| 05:39:33 | 21 | MR. RILEY:  Objection.  Question is overbroad |
| 05:39:35 | 22 | and there is no foundation. |
| 05:39:43 | 23 | THE WITNESS:  I believe that that would be |
| 05:39:45 | 24 | taken -- I believe if and when that was done, it was |
| 05:39:48 | 25 | done on an annual basis during compensation planning. |

| | | |
|---|---|---|
| 05:39:53 | 1 | MR. SAVERI:  Q.  So, for example, were |
| 05:39:54 | 2 | there employees at Apple who received increases in |
| 05:39:58 | 3 | salary, although they didn't receive a promotion to |
| 05:40:01 | 4 | a different job category or job classification? |
| 05:40:06 | 5 | MR. RILEY:  Objection.  The question is |
| 05:40:08 | 6 | overbroad and there is no foundation. |
| 05:40:20 | 7 | THE WITNESS:  So I believe that that would |
| 05:40:22 | 8 | occur with what we would call merit -- the merit time, |
| 05:40:28 | 9 | or what other companies call focal period, which is done |
| 05:40:33 | 10 | on an annual basis to keep up with inflationary |
| 05:40:37 | 11 | conditions in the market.  And that's not to say that |
| 05:40:40 | 12 | all employees saw adjustments to their compensation. |
| 05:40:46 | 13 | MR. SAVERI:  Q.  Fair enough. |
| 05:40:53 | 14 | Do you know if the market survey information |
| 05:40:55 | 15 | was used in considering whether or not Apple should make |
| 05:40:58 | 16 | those changes to salary levels for particular job levels |
| 05:41:03 | 17 | or job classifications? |
| 05:41:06 | 18 | MR. RILEY:  Question is overbroad and there is |
| 05:41:08 | 19 | no foundation.  It's vague as to time. |
| 05:41:13 | 20 | THE WITNESS:  Again, I believe it's a vehicle |
| 05:41:15 | 21 | that was considered.  How it was weighted, I can't tell |
| 05:41:21 | 22 | you. |
| 05:41:25 | 23 | MR. SAVERI:  Q.  Going back to Exhibit 268, |
| 05:41:32 | 24 | you, in your email to yourself, attach an email from |
| 05:41:39 | 25 | Gilda Montesino to staffing.  Do you see that? |

```
05:57:59  1        MR. SAVERI:  Q.  Did Apple review the
05:58:04  2   compensation levels or the amount of compensation
05:58:07  3   for particular job titles or classifications on a
05:58:10  4   regular basis?
05:58:13  5        MR. RILEY:  Objection.  The question is vague
05:58:14  6   as to compensation.
05:58:22  7        THE WITNESS:  So as the interim HR head, my
05:58:25  8   specialty was recruiting.  It was never my experience
05:58:28  9   that we had issues with competing in the market with
05:58:35 10   getting great talent because of compensation.
05:58:39 11        MR. SAVERI:  Q.  Well, was there ever a
05:58:41 12   situation that you were aware of where Apple
05:58:44 13   believed it had to increase salaries for particular
05:58:47 14   job categories in order to stop or prevent attrition
05:58:50 15   or departure from Apple?
05:58:54 16        MR. RILEY:  Objection.  The question is
05:58:55 17   overbroad and there is no foundation.
05:59:00 18        THE WITNESS:  [REDACTED]
05:59:02 19   [REDACTED]
05:59:05 20   [REDACTED]
05:59:12 21   [REDACTED]
05:59:18 22        MR. SAVERI:  Q.  Did Apple employees
05:59:21 23   receive merit bonuses?
05:59:27 24        MR. RILEY:  Objection.  The question is vague.
05:59:30 25        THE WITNESS:  I don't understand your question.
```

```
05:59:31  1        MR. SAVERI:  Q.  Well, did -- were Apple
05:59:37  2   employees eligible to receive increased compensation
05:59:41  3   based on merit or performance?
05:59:45  4        MR. RILEY:  Same objection.
05:59:46  5        THE WITNESS:  Again, I think it depended on the
05:59:51  6   organization and the executive that was managing the
05:59:56  7   organization as it related to how he or she used their
06:00:01  8   discretion.
06:00:02  9        MR. SAVERI:  Q.  So is it fair to say that
06:00:03 10   those managers or persons that you identified had
06:00:05 11   discretion to award or provide bonuses or increased
06:00:11 12   compensation for merit or performance?
06:00:13 13        MR. RILEY:  Objection.  The question is overly
06:00:14 14   broad with regard to employee categories.
06:00:21 15        THE WITNESS:  So from my vantage point, as the
06:00:26 16   interim HR, merit -- annual merit eligibility and bonus
06:00:31 17   were two different -- two different conversations, if
06:00:35 18   you will.  And it depended on the executive -- the
06:00:40 19   executive's discretion.
06:00:42 20        MR. SAVERI:  Q.  Okay.  Let's break them
06:00:44 21   into pieces.  With respect to merit, who
06:00:48 22   determine -- well, can you describe the merit
06:00:51 23   process.
06:00:56 24        A.  The merit process is, I think, similar to many
06:01:01 25   companies.
```

| | | |
|---|---|---|
| 06:01:07 | 1 | ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ |
| 06:01:14 | 2 | ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ |
| 06:01:22 | 3 | ▇▇▇    ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ |
| 06:01:28 | 4 | ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. |
| 06:01:34 | 5 | MR. SAVERI:  Q.  How did the bonus portion |
| 06:01:35 | 6 | of compensation work?  What was the process, |
| 06:01:37 | 7 | generally, for determining that? |
| 06:01:39 | 8 | MR. RILEY:  Objection.  The question is overly |
| 06:01:41 | 9 | broad and vague. |
| 06:01:42 | 10 | THE WITNESS:  It's -- it varies greatly. |
| 06:01:45 | 11 | MR. SAVERI:  Q.  Okay.  Who had -- were the |
| 06:01:47 | 12 | particular persons or -- strike that. |
| 06:01:50 | 13 | Was the compensation committee responsible for |
| 06:01:54 | 14 | determining bonuses? |
| 06:01:56 | 15 | MR. RILEY:  Objection.  The question is overly |
| 06:01:57 | 16 | broad and vague. |
| 06:02:01 | 17 | THE WITNESS:  The compensation committee, I |
| 06:02:03 | 18 | believe, was responsible or had discretion over the |
| 06:02:07 | 19 | executive team bonuses.  But I do not know -- I don't |
| 06:02:12 | 20 | think they had -- they weren't -- they were involved in |
| 06:02:16 | 21 | approving a general framework, and that would then -- |
| 06:02:19 | 22 | for the lower levels it was up to the actual individual |
| 06:02:22 | 23 | managers. |
| 06:02:31 | 24 | MR. SAVERI:  Q.  When a new employee is |
| 06:02:33 | 25 | hired by Apple, how is the job title and the level |

| | | |
|---|---|---|
| 06:02:38 | 1 | of compensation for that individual generally |
| 06:02:41 | 2 | determined? |
| 06:02:43 | 3 | MR. RILEY: Objection. The question is overly |
| 06:02:45 | 4 | broad and there is no foundation. |
| 06:02:47 | 5 | THE WITNESS: It depends on -- it depends on |
| 06:02:49 | 6 | the functional discipline. Depends on the leveling, you |
| 06:02:54 | 7 | know, if we're talking about the -- if we're talking |
| 06:02:57 | 8 | about high volume recruiting, say, in retail or in our |
| 06:03:01 | 9 | call centers versus the exec search team. It varied |
| 06:03:03 | 10 | greatly. |
| 06:03:05 | 11 | MR. SAVERI: Q. Was the assignment of |
| 06:03:07 | 12 | particular employees to job categories or job titles |
| 06:03:12 | 13 | something that the HR department did, or the |
| 06:03:16 | 14 | recruiting department? |
| 06:03:17 | 15 | Let me ask a better question. What -- |
| 06:03:20 | 16 | institutionally, who was responsible for assigning |
| 06:03:24 | 17 | particular employees to particular job classifications |
| 06:03:29 | 18 | or job categories? |
| 06:03:31 | 19 | MR. RILEY: Objection. The question is vague. |
| 06:03:32 | 20 | THE WITNESS: I'm not sure I understand your |
| 06:03:34 | 21 | question specifically. I would answer that question by |
| 06:03:38 | 22 | telling you that in many cases a requisition is created |
| 06:03:46 | 23 | by a hiring manager. And it is at that time that that |
| 06:03:52 | 24 | goes through a process, and then that requisition is |
| 06:03:55 | 25 | then recruited against. |

```
 1          I, Gina V. Carbone, Certified Shorthand
 2   Reporter licensed in the State of California, License
 3   No. 8249, hereby certify that the deponent was by me
 4   first duly sworn and the foregoing testimony was
 5   reported by me and was thereafter transcribed with
 6   computer-aided transcription; that the foregoing is a
 7   full, complete, and true record of said proceedings.
 8          I further certify that I am not of counsel or
 9   attorney for either of any of the parties in the
10   foregoing proceeding and caption named or in any way
11   interested in the outcome of the cause in said caption.
12          The dismantling, unsealing, or unbinding of
13   the original transcript will render the reporter's
14   certificates null and void.
15          In witness whereof, I have hereunto set my
16   hand this day:  July 6, 2012.
17          ___X___ Reading and Signing was requested.
18          _____ Reading and Signing was waived.
19          _____ Reading and signing was not requested.
20
21
22                       _____
23                       GINA  V. CARBONE
24                       CSR 8249, RPR, CCRR
25
```