[Counsel listed on signature page]

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| IN RE HIGH-TECH EMPLOYEE ANTITRUST LITIGATION<br><br>THIS DOCUMENT RELATES TO:<br><br>ALL ACTIONS | Master Docket No. 11-CV-2509 LHK<br><br>**DEFENDANTS ADOBE, APPLE, GOOGLE, INTEL, AND INTUIT'S OBJECTIONS TO EVIDENCE IN PLAINTIFFS' REPLY IN SUPPORT OF SUPPLEMENTAL CLASS CERTIFICATION MOTION AND REBUTTAL SUPPLEMENTAL EXPERT REPORT OF EDWARD E. LEAMER, PH.D.**<br><br>Date:         August 8, 2013<br>Time:         1:30 pm<br>Courtroom:  8, 4th Floor<br>Judge:        The Honorable Lucy H. Koh |

1    Pursuant to Civil Local Rule 7-3(d), Defendants Adobe Systems, Inc., Apple Inc., Google

2    Inc., Intel Corp., and Intuit Inc. make the following objections to evidence and arguments

3    presented with Plaintiffs' Reply in Support of Supplemental Class Certification Motion (Dkt.

4    455) and the Rebuttal Supplemental Expert Report of Edward E. Leamer, Ph.D. (Dkt. 457).

**I.     Plaintiffs' Deposition Excerpts Mischaracterize Dr. Murphy's and Dr. Shaw's Testimony, and Defendants Should Be Permitted to Supplement the Record**

7    Throughout their reply, Plaintiffs provide misleading and incomplete citations to Dr.

8    Murphy's and Dr. Shaw's depositions.  Plaintiffs mischaracterize the question posed or quote just

9    the first word or sentence of the answer, omitting essential context.  Defendants object to

10   Plaintiffs' use of this testimony and ask the Court to consider a small number of additional

11   excerpts that provide necessary context, correction and clarification.  "[W]hen one party has made

12   use of a portion of a document, such that misunderstanding or distortion can be averted only

13   through presentation of another portion," the other party may submit the other parts of the

14   document that provide clarification and context.  *United States v. Collicott*, 92 F.3d 973, 983 (9th

15   Cir. 1996) (quoting *Beech Aircraft Corp. v. Rainey*, 488 U.S. 153, 172 (1988)); Fed. R. Evid. 106.

16   Defendants have had no other opportunity to submit the following excerpts because the

17   depositions took place after Defendants submitted their opposition brief.

**A.     Plaintiffs Mischaracterize Dr. Murphy's Testimony**

19   First, Plaintiffs claim Dr. Murphy testified that Defendants' pay structures are not

20   "inconsistent" with classwide proof of impact.  Reply at 2.  Plaintiffs seriously mischaracterize

21   both the question and his response.  Dr. Murphy was asked whether variation in compensation for

22   individuals in the same job is consistent with the idea that *internal equity* has *any effect* on the

23   magnitude of those compensation changes.  Shaver Decl. Ex. N at 438:13-17.  Dr. Murphy

24   responded he was not saying the two are inconsistent, but that we cannot assume that when one

25   employee's compensation is increased, others' compensation is necessarily increased as well.  *Id.*

26   at 438:18-20.  As he explained, "necessary and conceivable seem to me to be distinct words."  *Id.*

27   at 438:25-439:9.  Plaintiffs also quote Dr. Murphy as testifying, "No," that internal equity is not

28   necessarily inconsistent with differentiation of pay.  Reply at 8.  Plaintiffs misleadingly truncate

DEFENDANTS' OBJECTIONS TO
PLAINTIFFS' REPLY EVIDENCE
NO. 11-CV-2509 LHK

1   his response.  As he explained, "No.  I'm not saying internal equity is -- I'm just saying the more

2   -- more methods I have to individualize pay, the easier it is to do."  Shaver Decl. Ex. N at 175:13-

3   15.  Dr. Murphy continued that individualization of pay may serve internal equity insofar as

4   equity is defined "in the sense of paying people based on performance."  *Id.* at 175:16-21.

5          Second, Plaintiffs cite Dr. Murphy's testimony that averaging aggregate data may be

6   appropriate in certain circumstances.  Reply at 2, 5.  But Dr. Murphy was referring to a

7   hypothetical, not to Dr. Leamer's use of averaging here.  Plaintiffs omit Dr. Murphy's other

8   testimony that averaging can also be problematic because it "can induce commonalities that aren't

9   there in the individual data."  Shaver Decl. Ex. N at 565:22-23.  As Dr. Murphy explained,

10  whether averaging is appropriate "depends on what you are trying to do … sometimes averaging

11  tells a story, sometimes averaging eliminates the story."  *Id.* at 564:9-16.

12         Third, Plaintiffs quote Dr. Murphy's testimony that weather has some of the same

13  statistical properties as Defendants' compensation, which they construe as his admission that

14  Defendants paid their employees "randomly."  Reply at 3.  But they omit Dr. Murphy's

15  subsequent explanation that compensation tends to "revert to the mean" due to variable

16  components such as bonuses and equity grants that are by definition not permanent—which is

17  distinct from "randomness" like rolling a dice.  Attached Brown Decl. Ex. A at 508:11-512:3.

18         Fourth, Plaintiffs cite Dr. Murphy's acknowledgement that Dr. Leamer included in his

19  regression variables for firm level success and changes in the general economy.  Reply at 9-10.

20  But Plaintiffs omit Dr. Murphy's critique that Leamer's measure of firm level success "doesn't

21  perform very well" and "doesn't explain the variation year to year in firm level compensation,"

22  while his external variable "works well for some companies, not well for others," so that clearly

23  there are "omitted factors he's not taking account of."  Shaver Decl. Ex. N at 484:10-487:18.

24         Finally, when asked if Professor Manski suggested the reflection problem might be

25  overcome by studying lagged effects, Plaintiffs quote Dr. Murphy as answering "Yes."  Reply at

26  10.  Dr. Murphy's full response was, "Yes.  *If you didn't have other problems with lagged effects.*

27  Lagged effects create their own set of problems as I point out…"  Shaver Decl. Ex. N at 476:24-

28  477:6 (emphasis added).  Dr. Murphy stated he "wouldn't consider what Professor Leamer did in

1    this case a solution to that problem." *Id.* at 478:17-19.

2        **B.    Plaintiffs Mischaracterize Dr. Shaw's Testimony**

3        First, Plaintiffs mischaracterize portions of Dr. Shaw's deposition to argue that she failed

4    to investigate whether Defendants supervised their managers' exercise of discretion in setting pay

5    and whether managerial discretion made any difference to pay, and that she never looked at firm

6    pay guidelines. Reply at 3, 12-14. This is not so. Dr. Shaw testified that she reviewed numerous

7    depositions "that described managerial discretion and the guidelines that were given to managers

8    in making pay determinations." Shaver Decl. Ex. O at 92:19-24, 91:15-19, 186:12-13. Dr. Shaw

9    recognized "[f]irms do provide guidelines in determining pay" and review mechanisms may be

10   used. *Id.* at 91:20-92:5, 94:2-6, 144:23-145:2. Dr. Shaw concluded from the evidence, however,

11   that discretion in setting pay ultimately fell to managers based on their subjective evaluations of

12   employees. *Id.* at 94:15-17 ("in my assessment after reading depositions I found that there was

13   extensive managerial discretion in setting pay"), 98:9-10, 99:11-14, 146:22-25, 147:6-15; Brown

14   Decl. Ex. B at 186:10-188:4 ("managers had ultimate discretion in how they allocate their budget,

15   and could do so to pay some workers very little and some workers a great deal").

16       Second, Plaintiffs claim Dr. Shaw perceives internal equity the same way they do (Reply

17   at 13), but omit her testimony that "what I found was that people were not adjusted and that the

18   standard pay practices of these Defendant firms is that there would not be adjustment across job

19   titles in response to internal equity." Brown Decl. Ex. B at 131:10-14. While Plaintiffs claim Dr.

20   Shaw misrepresented an authority cited in her report regarding internal equity (Reply at 13), the

21   full deposition excerpt reveals the opposite and also confirms that her opinions regarding internal

22   equity are based on her expertise and experience. Brown Decl. Ex. B at 77:8-91:7.

23   **II.    Plaintiffs' New Arguments and Analyses Are Not Proper Rebuttal Evidence and
           Should Be Stricken as Untimely**
24

25       Defendants object to Plaintiffs' reply and Dr. Leamer's rebuttal report because they

26   present new arguments regarding (1) a hypothetical "superadditive" effect of cold call "bursts" as

27   a theory for impact on class members; and (2) an analysis of Defendants' salary data in

28   comparison to salary range targets. Neither is proper rebuttal evidence, and both should be

                                        3

stricken from the reply papers. *Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir 2007); *see also Johnson v. Sky Chefs, Inc.*, 2012 WL 4483225 at *12 n.10 (N.D. Cal. Sept. 27, 2012).

**A.    Dr. Leamer's Conjecture That Cold Call Bursts Have a Superadditive Effect Is Entirely New and Contradicts His Prior Testimony**

Unable to explain how an impact to some employees could possibly propagate to impact all or nearly all class members, Leamer 835:3-836:23, Dr. Leamer offers a new theory in his rebuttal report:  "My opinion is that the information conveyed by each cold call reinforces the information in other cold calls, making the effects "*superadditive*," meaning that the effect of a burst of cold calls is more than the sum of the parts."  Leamer Rebuttal ¶ 3 (emphasis added).  Dr. Leamer has never before claimed that cold calls are "superadditive," meaning the 100th cold call would be more valuable than the 99th, which would be more valuable than the 98th, etc.  Such a theory is sheer speculation, nothing in the record or the named plaintiffs' experience supports it, and it is contrary to common sense.  Dr. Leamer claims in his rebuttal report, "I have never offered the opinion that the effect of a single isolated call would necessarily increase compensation for every employee in the Technical Class."  *Id.* ¶ 3.  But this is inconsistent with his previous testimony regarding a single successful cold call in which he affirmed that "an increase in compensation to a single employee" "[c]ould trigger a higher level of compensation for all employees."  Leamer 124:7-13.  This effect, he previously testified, would spread beyond Defendants to the entire industry, such as Microsoft employees.  *Id.* 147:10-20.  The Court should strike Dr. Leamer's entirely new "superadditive" theory in his rebuttal report.  This is especially warranted as Plaintiffs represented to the Court that any rebuttal report would be a "true rebuttal and not introduc[e] brand new theories that should have been raised in the opening."  April 8, 2013 Hrg. Tr. 19:6-10.

**B.    Plaintiffs' New Analysis of Salary Ranges Is Untimely and Misleading**

Plaintiffs present a new analysis from Dr. Leamer in which he compares Defendants' actual salary data to their recommended salary ranges and concludes that a certain percentage of class member employee-years fell somewhere within these ranges.  Reply at 3, 14; Leamer Rebuttal ¶¶ 31, 67, Figs. 6-9.  Plaintiffs have had Defendants' salary data and salary range

DEFENDANTS' OBJECTIONS TO
PLAINTIFFS' REPLY EVIDENCE
NO. 11-CV-2509 LHK

1   information for months,[1] and they had every opportunity to present this analysis in their opening

2   papers.  On this basis alone, the new analysis is untimely and improper.

3         Plaintiffs also ignore Dr. Shaw's deposition testimony addressing this very scenario and

4   confirming that it would not affect her views.  As Dr. Shaw explained, managers had discretion to

5   determine where individual employees would fall within the broad salary ranges based on their

6   skills, talent, expected contributions, and other factors.  Shaver Decl. Ex. O at 71:25-72:9; Brown

7   Decl. Ex. B at 189:18-193:8; *see also* Opp. at 18-19 (salary ranges were extremely broad and

8   varied by as much as $100,000 for some jobs).  These ranges pertained to base salary only; bonus

9   and equity were also components of employee compensation and varied substantially.  *See* Shaver

10  Decl. Ex. O at 145:17-21.  Should the Court consider Plaintiffs' untimely new analysis,

11  Defendants should be permitted to respond in full.

12  **III.   Plaintiffs' Declaration from Sheryl Sandberg Is Untimely and Should Be Stricken**

13        Plaintiffs identified Ms. Sandberg as a potential witness and served her with a deposition

14  subpoena in late March, more than a month before filing the current motion.  Plaintiffs had ample

15  opportunity to obtain and submit any testimony from Ms. Sandberg with their opening brief.

16  Instead, they waited until their reply to submit her declaration, leaving Defendants with no

17  opportunity to respond.  Although Ms. Sandberg's declaration is entirely irrelevant to class

18  certification, it should thus be stricken as improper.  *See Contratto v. Ethicon, Inc.*, 227 F.R.D.

19  304, 308 n.5 (N.D. Cal. 2005) (striking witness declaration because "attempt to introduce new

20  evidence in connection with their reply papers is improper").

21  **IV.   Conclusion**

22        Defendants' supplemental excerpts from Dr. Murphy's and Dr. Shaw's depositions should

23  be filed and considered in connection with the pending motion.  Plaintiffs' new arguments and

24  analyses set forth above and Ms. Sandberg's declaration should be stricken as untimely.

25  Dated: July 19, 2013              By:  /s/ George A. Riley

26                                         George A. Riley

---

27  [1] Dr. Leamer's statement that "Intuit did not produce adequate [salary range] data" is misleading.
    As Mason Stubblefield testified, "Intuit does not have salary ranges."  Cisneros Decl. Ex. II at

28  130:11-12.  Intuit produced any market-based information on salary ranges that it possessed.

                                                  DEFENDANTS' OBJECTIONS TO
                                                  PLAINTIFFS' REPLY EVIDENCE
                                                  NO. 11-CV-2509 LHK

1    GEORGE A. RILEY (Bar No. 118304)
     griley@omm.com
2    MICHAEL F. TUBACH (Bar No. 145955)
     mtubach@omm.com
3    CHRISTINA J. BROWN (Bar No. 242130)
     cjbrown@omm.com
4    AMANDA R. CONLEY (Bar No. 281270)
     aconley@omm.com
5    O'MELVENY & MYERS LLP
     Two Embarcadero Center, 28th Floor
6    San Francisco, CA  94111-3823
     Telephone:     (415) 984-8700
7    Facsimile:     (415) 984-8701

8    Attorneys for Defendant Apple Inc.

9
              By: /s/ Frank M. Hinman
10                   Frank M. Hinman

11   DONN P. PICKETT (Bar No. 72257)
     donn.pickett@bingham.com
12   FRANK M. HINMAN (Bar No. 157402)
     frank.hinman@bingham.com
13   BINGHAM MCCUTCHEN LLP
     Three Embarcadero Center
14   San Francisco, CA  94111-4067
     Telephone:     (415) 393-2000
15   Facsimile:     (415) 393-2286

16   Attorneys for Defendant Intel Corp.

17
              By: /s/ Lee H. Rubin
18                   Lee H. Rubin

19   EDWARD D. JOHNSON (Bar No. 189475)
     wjohnson@mayerbrown.com
20   LEE H. RUBIN (Bar No. 141331)
     lrubin@mayerbrown.com
21   MAYER BROWN LLP
     Two Palo Alto Square, Suite 300
22   Palo Alto, CA  94306-2112
     Telephone:     (650) 331-2000
23   Facsimile:     (650) 331-2060

24   Attorneys for Defendant Google Inc.

25

26

27

28

DEFENDANTS' OBJECTIONS TO
PLAINTIFFS' REPLY EVIDENCE
NO. 11-CV-2509 LHK

1

By: /s/ David C. Kiernan
David C. Kiernan

2

3     ROBERT A. MITTELSTAEDT (Bar No. 60359)
      ramittelstaedt@jonesday.com
      CRAIG A. WALDMAN (Bar No. 229943)
4     cwaldman@jonesday.com
      DAVID C. KIERNAN (Bar No. 215335)
5     dkiernan@jonesday.com
      JONES DAY
6     555 California Street, 26th Floor
      San Francisco, CA 94104
7     Telephone:     (415) 626-3939
      Facsimile:     (415) 875-5700
8
      Attorneys for Defendant Adobe Systems, Inc.
9

10                By: /s/ Robert A. Mittelstaedt
                     Robert A. Mittelstaedt
11
12    ROBERT A. MITTELSTAEDT (Bar No. 60359)
      ramittelstaedt@JonesDay.com
      CRAIG E. STEWART (Bar No. 129530)
13    cestewart@JonesDay.com
      JONES DAY
14    555 California Street, 26th Floor
      San Francisco, CA 94104
15    Telephone:     (415) 626-3939
      Facsimile:     (415) 875-5700
16
      CATHERINE T. ZENG (Bar No. 251231)
17    czeng@jonesday.com
      JONES DAY
18    1755 Embarcadero Road
      Palo Alto, CA  94303
19    Telephone:     (650) 739-3939
      Facsimile:     (650) 739-3900
20
      Attorneys for Defendant Intuit Inc.
21

22    **ATTESTATION**:  Pursuant to General Order 45, Part X-B, the filer attests that concurrence in

23    the filing of this document has been obtained from all signatories.

24

25

26

27

28

DEFENDANTS' OBJECTIONS TO
PLAINTIFFS' REPLY EVIDENCE
NO. 11-CV-2509 LHK