# EXHIBIT H

```
 1                UNITED STATES DISTRICT COURT

 2              NORTHERN DISTRICT OF CALIFORNIA

 3                     SAN JOSE DIVISION

 4

 5   IN RE:  HIGH-TECH EMPLOYEE    )

 6   ANTITRUST LITIGATION          )

 7                                 )  No. 11-CV-2509-LHK

 8   THIS DOCUMENT RELATES TO:     )

 9   ALL ACTIONS.                  )

10   _____

11

12          VIDEO DEPOSITION OF PATRICIA MURRAY

13                   February 14, 2013

14

15      Reported by:  Anne Torreano, CSR No. 10520

16

17

18

19

20

21

22

23

24

25
```

1   the low end, 2 to 5 below expectations or improvement

2   required.  Those are guidelines to consider so that

3   there is a distribution among employees.

4           We're an engineering company.  We measure

5   everything.

6       Q.  Well, that's why I asked about the

7   quantification of the statistical stuff about the

8   salary.

9           MR. PICKETT:  Is there a question pending?

10          MR. SAVERI:  There is no question pending.  I

11  think that's a fair comment.

12  BY MR. SAVERI:

13      Q.  Did Intel track attrition rates?

14      A.  Yes.

15          You mean people leaving --

16      Q.  Yeah.

17      A.  -- Intel?  Yes, we did.  Yes, we do.

18      Q.  Were or are attrition rates built into the

19  labor compensation budget?

20      A.  I'm not sure I understand what that means.  I

21  understand your words, but I don't understand how to

22  answer the question.

23      Q.  Well, let me -- let me -- let me go at it this

24  way:  As a general matter, did Intel or does Intel

25  understand that its -- that attrition is costly to

1  Intel?

2  A.  Attrition is costly to any company, yes.

3  Q.  In what way?

4  A.  Well, in that --

5  Q.  Let's just talk about Intel. Based on your

6  experience at Intel, how was it costly to Intel?

7  A.  One, you lose people who are valuable to you

8  and you've invested in, who know the company and know

9  its values. You have to spend money hiring to replace

10 them and then training to replace them.

11 Q.  And again, is it fair to say that from time to

12 time people left Intel because they -- at least they

13 believed they had a better job offer somewhere else?

14 A.  I'm certain I could speculate that that's

15 true. HR professional literature will tell you that

16 people cite compensation as a reason to leave because

17 it is an easy thing to say and it doesn't offend their

18 manager. It isn't generally the reason they leave.



```
              16        Q.   I think you used an example of a factory

              17   abroad.  Am I recalling that --

              18        A.   I actually wasn't talking about a factory.

              19   I'd said Costa Rica, but I didn't mean a factory.

02:38:54      20             There are a lot of functions -- job functions

              21   in Costa Rica that might be competitive, for example,

              22   with other back-office facilities.  And my example was

              23   that the labor market changes if another company moves

              24   into that country.  So that changes your external

02:39:11      25   review of circumstances.
```

```
 1     Q.   And so just following along that example, so
 2  in that example you're talking about in Costa Rica, if
 3  another company opened up, it would change the demand
 4  for --
```
02:39:26

[redacted]

```
16     Q.   And in that situation at least, there is the
17  potential that some of -- that that new employer would
18  hire employees away from Intel to go work for them?
19     A.   The potential of people hiring Intel employees
```
02:40:16
```
20  always exists, yes.
```

[redacted]

```
 1                REPORTER'S CERTIFICATE

 2           I, Anne Torreano, Certified Shorthand Reporter

 3   licensed in the State of California, License No. 10520,

 4   hereby certify that the deponent was by me first duly

 5   sworn, and the foregoing testimony was reported by me

 6   and was thereafter transcribed with computer-aided

 7   transcription; that the foregoing is a full, complete,

 8   and true record of said proceedings.

 9           I further certify that I am not of counsel or

10   attorney for either or any of the parties in the

11   foregoing proceeding and caption named or in any way

12   interested in the outcome of the cause in said caption.

13           The dismantling, unsealing, or unbinding of

14   the original transcript will render the reporter's

15   certificates null and void.

16           In witness whereof, I have subscribed my name

17   this 25th day of February, 2013.

18

19              [ ] Reading and Signing was requested.

20              [ ] Reading and Signing was waived.

21              [X] Reading and Signing was not requested.

22

23
                               _____
24                             ANNE M. TORREANO, CSR No. 10520

25
```