# EXHIBIT C

```
 1            UNITED STATES DISTRICT COURT
 2    NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION
 3
 4   ---------------------------
     IN RE: HIGH-TECH EMPLOYEE )
 5   ANTITRUST LITIGATION      ) No. 11-CV-2509-LHK
     ---------------------------
 6
 7                -HIGHLY CONFIDENTIAL-
 8
 9       VIDEOTAPED DEPOSITION OF EDWARD LEAMER
10              San Francisco, California
11               Tuesday, June 11, 2013
12                     Volume II
13
14
15
16
17
18
19
20
21   Reported by:
     ASHLEY SOEVYN
22   CSR No. 12019
23   Job No. 1682449
24
25   Pages  477 - 856
```

Page 477

| | | |
|---|---|---|
| 1 | that these were extremely important. | 17:36:11 |
| 2 |       MR. MITTELSTAEDT:  In each respect -- I | 17:36:13 |
| 3 | move to strike that as nonresponsive.  I've got | 17:36:13 |
| 4 | three questions that I have left and I'm going to | 17:36:15 |
| 5 | stay here and insist that the witness answer them | 17:36:18 |
| 6 | because he's taking up our time.  I'm not going to | 17:36:18 |
| 7 | take up any more time with that.  So I -- | 17:36:18 |
| 8 |       MR. GLACKIN:  If we can just calm | 17:36:18 |
| 9 | everything down and, you know, proceed with a -- | 17:36:18 |
| 10 | some lowered voices in a more measured way, I think | 17:36:18 |
| 11 | that everyone will be happier.  I'm detecting a lot | 17:36:40 |
| 12 | of emotion on the other side of the table. | 17:36:43 |
| 13 |       MR. HINMAN:  Okay.  Well, I don't mean to | 17:36:54 |
| 14 | convey that, then. | 17:36:58 |
| 15 |       So, I lost my place.  Give me a second. | 17:36:58 |
| 16 |       MR. GLACKIN:  You just read the part that | 17:36:58 |
| 17 | he agreed what he said before in this deposition. | 17:36:59 |
| 18 | BY MR. HINMAN: | 17:37:01 |
| 19 |    Q.   Yeah, yeah.  And then also with respect to | 17:37:01 |
| 20 | the agreements themselves, you also understand that | 17:37:04 |
| 21 | those companies could all recruit from each other in | 17:37:08 |
| 22 | every other way except for cold calling; is that -- | 17:37:13 |
| 23 |    A.   I understand that. | 17:37:15 |
| 24 |    Q.   So let me go back to my question, then. | 17:37:19 |
| 25 | There was a lot of rain, to use your analogy, that | 17:37:21 |

```
 1   was falling during the class period, right?          17:37:24
 2           MR. GLACKIN:  Object to the form.             17:37:27
 3           THE WITNESS:  Well, yes.                      17:37:28
 4   BY MR. HINMAN:                                        17:37:30
 5       Q.  And --                                        17:37:30
 6       A.  But it's not the same rain.                   17:37:31
 7       Q.  -- you would agree with me that in            17:37:32
 8   percentage terms at the margin, the additional        17:37:34
 9   number of drops that would have fallen without these  17:37:37
10   agreements was very small, right?                     17:37:40
11       A.  I don't agree with the implication of that.   17:37:43
12   You think these channels were identical in terms of   17:37:46
13   information contact.  Channels that were blocked      17:37:48
14   were identical to these outside channels.  And I see  17:37:52
15   no evidence of that.  I see the opposite evidence,    17:37:54
16   which is these agreements are put in place in order   17:37:57
17   to have an effect on the firms.                       17:38:01
18       Q.  Would you agree that --                       17:38:02
19       A.  Well, I --                                    17:38:05
20       Q.  Are you -- is it your testimony that the      17:38:06
21   incremental amount of rain would have been            17:38:08
22   significant?                                          17:38:13
23       A.  Well, I think through this --                 17:38:13
24           MR. GLACKIN:  Object to form.                 17:38:15
25           THE WITNESS:  -- plenty other times, but      17:38:16
```

Veritext National Deposition & Litigation Services
866 299-5127

| | | |
|---|---|---|
| 1 | there's a quotation that you've seen from Joe | 17:38:16 |
| 2 | Stiglitz that says that things in the competitive | 17:38:20 |
| 3 | market and information market, is that small changes | 17:38:22 |
| 4 | in information flow can have dramatic impacts on the | 17:38:26 |
| 5 | equilibrium.   And so the answer is -- | 17:38:31 |
| 6 | BY MR. HINMAN: | 17:38:31 |
| 7 |     Q.   Sorry. | 17:38:34 |
| 8 |     A.   -- these raindrops that you think of as | 17:38:34 |
| 9 | small in terms of the total number of raindrops, | 17:38:37 |
| 10 | they are potentially important for two reasons.  One | 17:38:37 |
| 11 | is that these firms chose to interfere in these | 17:38:41 |
| 12 | specific channels.  And, secondly, the information | 17:38:45 |
| 13 | economics allows for what seemed like small changes | 17:38:48 |
| 14 | in the informational flow to have large impacts on | 17:38:52 |
| 15 | the equilibrium. | 17:38:56 |
| 16 |     Q.   Again, what evidence have you seen -- | 17:38:59 |
| 17 | textual evidence have you seen of water cooler chat | 17:39:03 |
| 18 | that you've described leading to increased | 17:39:06 |
| 19 | compensation for anyone?  Have you seen any? | 17:39:10 |
| 20 |         MR. GLACKIN:  Object to the form. | 17:39:16 |
| 21 |         THE WITNESS:  I haven't seen that sequence. | 17:39:18 |
| 22 | Are you talking about a specific water cooler chat | 17:39:19 |
| 23 | followed by specific chain of conversation?  I've | 17:39:23 |
| 24 | not seen that in the documents that are | 17:39:26 |
| 25 | referenced. | 17:39:28 |

| | | |
|---|---|---|
| 1 | BY MR. HINMAN: | 17:39:28 |
| 2 | Q.   Have you seen any evidence in the | 17:39:28 |
| 3 | documentary record of the manager to manager | 17:39:30 |
| 4 | propagation that you testified to earlier?  Do you | 17:39:34 |
| 5 | want me to rephrase that? | 17:39:39 |
| 6 | A.   No. | 17:39:43 |
| 7 | Q.   Okay. | 17:39:44 |
| 8 | A.   I'm trying to think if there is that. | 17:39:46 |
| 9 | Q.   Okay. | 17:39:48 |
| 10 | A.   It just seems to me there are so many of | 17:39:51 |
| 11 | the HR documents and so much testifying from the HR | 17:39:53 |
| 12 | personnel that the -- that the manager to manager is | 17:39:58 |
| 13 | not necessarily the main conduit by which this thing | 17:40:02 |
| 14 | is -- has an impact on compensation, although it | 17:40:06 |
| 15 | could be a conduit. | 17:40:09 |
| 16 | Q.   Okay.  Well, okay.  So let's unpack that. | 17:40:11 |
| 17 | You don't cite any evidence of manager to manager | 17:40:15 |
| 18 | propagation in your report, do you? | 17:40:18 |
| 19 | A.   No, I do not. | 17:40:20 |
| 20 | Q.   And now you say it could be significant, | 17:40:23 |
| 21 | but you don't know whether it is or maybe something | 17:40:24 |
| 22 | else is more significant.  What's the most | 17:40:27 |
| 23 | significant -- | 17:40:30 |
| 24 | A.   What's the most significant? | 17:40:31 |
| 25 | Q.   -- mechanism for the propagation of the | 17:40:34 |

HIGHLY CONFIDENTIAL

```
 1  STATE OF CALIFORNIA    ) ss:
 2  COUNTY OF MARIN        )
 3
 4      I, ASHLEY SOEVYN, CSR No. 12019, do hereby
 5  certify:
 6      That the foregoing deposition testimony was
 7  taken before me at the time and place therein set
 8  forth and at which time the witness was administered
 9  the oath;
10      That the testimony of the witness and all
11  objections made by counsel at the time of the
12  examination were recorded stenographically by me,
13  and were thereafter transcribed under my direction
14  and supervision, and that the foregoing pages
15  contain a full, true and accurate record of all
16  proceedings and testimony to the best of my skill
17  and ability.
18      I further certify that I am neither counsel for
19  any party to said action, nor am I related to any
20  party to said action, nor am I in any way interested
21  in the outcome thereof.
22      IN THE WITNESS WHEREOF, I have transcribed my
23  name this 17th day of June, 2013.
24
25                              ASHLEY SOEVYN, CSR 12019
```

Page 856