# EXHIBIT D

```
 1                UNITED STATES DISTRICT COURT

 2              NORTHERN DISTRICT OF CALIFORNIA

 3                      SAN JOSE DIVISION

 4

 5

 6   IN RE:  HIGH-TECH EMPLOYEE        )

 7   ANTITRUST LITIGATION              )

 8                                     )    No. 11-CV-2509-LHK

 9   THIS DOCUMENT RELATES TO:         )

10   ALL ACTIONS.                      )

11   _____ )

12

13

14        VIDEO DEPOSITION OF KEVIN M. MURPHY, Ph.D.

15                         VOLUME II

16                       July 5, 2013

17

18

19   REPORTED BY:  GINA V. CARBONE, CSR NO. 8249, RMR, CCRR

20

21

22

23

24

25
```

```
10:44:52  1   more of them there are, there can be a complementary
10:44:55  2   effect that's created?
10:44:56  3        A.   You know, I don't know if that would be my
10:44:59  4   presumption, because I think a lot of ways you use
10:45:03  5   substitutes.  You would say look, you know, you might
10:45:06  6   not be doing as well on this dimension, but you'll --
10:45:09  7   I'll make it up for you somewhere else, you know.
10:45:12  8        So, you know, there is no need to have to be
10:45:16  9   complementary.  Now, there can be complementarities.
10:45:20 10   But you clearly could see how people can substitute one
10:45:23 11   form of social recognition, for example, for another.
10:45:27 12   You're funny, you know, I'm mean, whatever.  I don't
10:45:31 13   know.
10:45:32 14        Q.   Well, I think you ultimately answered my
10:45:34 15   question.  My question was can they be complementary,
10:45:36 16   and it sounds like we agree they can be, but they don't
10:45:40 17   necessarily have to be.
10:45:41 18        A.   I guess what you meant -- usually when we say
10:45:43 19   something can be, we usually have some presumption that
10:45:45 20   that's the way it would go, and I was just trying to
10:45:47 21   make the point.  Depending on the context, they usually
10:45:52 22   could be substitutes as opposed to complements.
10:45:55 23        Q.   Do you agree that the combined effect of
10:46:07 24   individual social influences or interactions can be
10:46:10 25   greater than their sum?
```

```
10:46:14   1        A.   Yeah.  I think it could go either way again.  I
10:46:17   2   mean, it's kind of related to the complementarity versus
10:46:21   3   substitutability side.  Whether they reinforce each
10:46:23   4   other or offset each other.
10:46:25   5        Q.   So it's possible for them to reinforce one
10:46:28   6   another to create a greater effect than you would have
10:46:31   7   if you simply added them together, right?
10:46:33   8        A.   Yeah.  Again, I think it's much easier to
10:46:36   9   discuss this in context.  But that's true of effects,
10:46:39  10   generally.  Effects can either be super-additive or
10:46:44  11   sub-additive, usually the term that people use.
10:46:47  12        Q.   And this is called the social multiplier
10:46:50  13   effect, right?
10:46:52  14             MR. HINMAN:  Object to the form.
10:46:54  15             THE WITNESS:  No.  That's not really the social
10:46:56  16   multiplier.  The social multiplier, at least the --
10:46:59  17   the -- doesn't really depend on them being super
10:47:05  18   additive, per se, in the sense that the social effects
10:47:08  19   are super-additive.  It's that the existence of social
10:47:13  20   effects can enhance the direct effects, or the
10:47:20  21   individual level effect.
10:47:20  22             So it's not the social effects that are
10:47:22  23   super-additive, it's that the social effects amplify
10:47:26  24   what would have happened anyway at the individual level.
10:47:29  25   That's really the mechanism by which it works.  And I --
```

```
10:47:33   1    you know, the language could go one way or the other.
10:47:35   2            But that's really -- the classic social
10:47:38   3    multiplier one is the sort of Gary Becker demand story.
10:47:43   4    Some people call it -- you know, or it actually goes
10:47:48   5    back to Deblin (phonetic).
10:47:49   6            (Reporter clarification.)
10:47:50   7            THE WITNESS:  Deblin.  It talks about the
10:47:51   8    band-wagon-type effect.  That, you know, the price of
10:47:56   9    something goes down, I want more, but because I have it,
10:47:59  10    you want it, and because you have it, I want it.  We
10:48:03  11    kind of -- that social multiplier causes the impact to
10:48:06  12    be greater than the sum of what each of us would do
10:48:08  13    individually.
10:48:10  14            But you don't need the social effects to
10:48:13  15    multiply each other, you just need them to multiply the
10:48:16  16    baseline effects.
10:48:22  17            MR. GLACKIN:  I'll give you what we I guess
10:48:23  18    marked as Exhibit 1 to this deposition.
10:48:25  19            THE REPORTER:  We're marking this now, so 2857.
10:48:25  20            MR. GLACKIN:  2857.  Yeah, wherever we are.
10:48:50  21            (Whereupon, Exhibit 2857 was marked for
10:48:50  22            identification.)
10:48:54  23            MR. GLACKIN:  Q.  I trust you recognize
10:48:55  24    this.
10:48:56  25         A.  Yes, I do.
```

| | | |
|---|---|---|
| 10:48:57 | 1 | Q.  This is a passage from your book with Professor |
| 10:49:00 | 2 | Becker? |
| 10:49:01 | 3 | A.  Yes. |
| 10:49:01 | 4 | Q.  So directing your attention to the second and |
| 10:49:05 | 5 | third paragraphs, I'm not going to read those out loud, |
| 10:49:06 | 6 | unless it's absolutely necessary, but do you stand by |
| 10:49:09 | 7 | what's written there in the second and third paragraphs |
| 10:49:11 | 8 | of page 15 of Social Economics? |
| 10:49:15 | 9 | A.  Yeah, I do.  It really says what I just said. |
| 10:49:19 | 10 | I mean, it really is that they multiply the baseline |
| 10:49:23 | 11 | effect up.  You don't really require that they multiply |
| 10:49:26 | 12 | each other.  What really matters is that they enhance |
| 10:49:28 | 13 | the baseline effect. |
| 10:49:30 | 14 | Q.  But they can multiply each other, right? |
| 10:49:34 | 15 | A.  They can, but the existence of the social |
| 10:49:36 | 16 | multiplier doesn't depend on that.  That's what I'm |
| 10:49:39 | 17 | saying.  You were making it sound as if because there is |
| 10:49:41 | 18 | a complementarity, that's what generates the social |
| 10:49:45 | 19 | multiplier.  There would be a social multiplier even if |
| 10:49:48 | 20 | there wasn't complementarity in the sense that the |
| 10:49:53 | 21 | social effects are complementary. |
| 10:49:55 | 22 | All you need is that the social effects are |
| 10:49:57 | 23 | there.  That's what generates the multiplier.  You |
| 10:50:00 | 24 | don't -- you don't need them to complement each other. |
| 10:50:02 | 25 | In fact, they could be substitutes for one another and |

| | | |
|---|---|---|
| 10:50:05 | 1 | still get the social multiplier. |
| 10:50:08 | 2 | Q.  Well, do you agree that if there are enough |
| 10:50:12 | 3 | social influences that are complementary, they can reach |
| 10:50:17 | 4 | a tipping point that will actually provoke a major |
| 10:50:20 | 5 | change? |
| 10:50:21 | 6 | A.  Yeah.  You can build those models.  I mean, we |
| 10:50:23 | 7 | have some in the book.  You can build those kind of |
| 10:50:26 | 8 | models for sure. |
| 10:50:27 | 9 | Q.  One example you gave in the book is fertility |
| 10:50:30 | 10 | rates in Europe, right?  That if national fertility |
| 10:50:33 | 11 | rates in neighboring countries go down, at some point if |
| 10:50:37 | 12 | they go down in enough countries, they're very likely to |
| 10:50:40 | 13 | go down in the rest of them. |
| 10:50:42 | 14 | A.  I mean, you can have that happen.  You know, |
| 10:50:46 | 15 | there is -- in that particular context, this is actually |
| 10:50:50 | 16 | a key debate, of whether that dominates or there is some |
| 10:50:55 | 17 | other response, because there are fewer people, wages go |
| 10:50:58 | 18 | up, there is some kind of, like, reverse feedback |
| 10:51:02 | 19 | effect. |
| 10:51:02 | 20 | In fact, if you go back in history, you know, |
| 10:51:05 | 21 | kind of Malthusian story was exactly the reverse story. |
| 10:51:09 | 22 | That population was a stabilizing force.  Because |
| 10:51:12 | 23 | whenever productivity went up, people got richer, they |
| 10:51:14 | 24 | had more kids, that increased population, which reduced |
| 10:51:18 | 25 | wealth and brought us back to a long running |

```
10:51:21   1  equilibrium.
10:51:22   2         So the social feedbacks in a modern economy
10:51:26   3  probably in population work to destabilize things.  In a
10:51:30   4  tradition economy, they've actually worked the other
10:51:31   5  way.
10:51:32   6     Q.  Do you stand by your discussion on national
10:51:36   7  fertility rates and social economics?
10:51:38   8     A.  I'd have to read it again.  I probably do.  I
10:51:40   9  think -- I think it's actually an area that I'm working
10:51:43  10  on currently.  And I'm really interested in this
10:51:48  11  question about whether there are forces that are
10:51:49  12  ultimately going to bring fertility back, which is a
10:51:53  13  critical question for, I think, much of the developed
10:51:56  14  world, which is whether fertility levels will ever come
10:51:59  15  back to where they were.  It's hard to know yet, so I
10:52:03  16  can't tell you there is an answer.
10:52:13  17     Q.  Much as I'd love to talk about this all day,
10:52:15  18  let's move back to cold calling.
10:52:34  19         So let's go back to paragraph 22 again.
10:52:47  20     A.  Okay.
10:52:48  21     Q.  So directing your attention again to the
10:52:52  22  sentence that says, "Economics tells us," I'd like to go
10:52:56  23  now to the conclusion of the sentence which is, "...the
10:52:58  24  extent to which compensation of alternative job titles
10:53:01  25  deviate from one another, not whether they are weakly or
```

```
 1            I, Gina V. Carbone, Certified Shorthand
 2   Reporter licensed in the State of California, License
 3   No. 8249, hereby certify that the deponent was by me
 4   first duly sworn and the foregoing testimony was
 5   reported by me and was thereafter transcribed with
 6   computer-aided transcription; that the foregoing is a
 7   full, complete, and true record of said proceedings.
 8            I further certify that I am not of counsel or
 9   attorney for either of any of the parties in the
10   foregoing proceeding and caption named or in any way
11   interested in the outcome of the cause in said caption.
12            The dismantling, unsealing, or unbinding of
13   the original transcript will render the reporter's
14   certificates null and void.
15            In witness whereof, I have hereunto set my
16   hand this day:  July 6, 2013.
17            _____ Reading and Signing was requested.
18            _____ Reading and Signing was waived.
19            ___X___ Reading and signing was not requested.
20
21
22                        _____
23                        GINA  V. CARBONE
24                        CSR 8249, RMR, CRR, CCRR
25
```