# EXHIBIT 1

1   Richard M. Heimann (State Bar No. 63607)
    Kelly M. Dermody (State Bar No. 171716)
2   Eric B. Fastiff (State Bar No. 182260)
    Brendan Glackin (State Bar No. 199643)
3   Dean Harvey (State Bar No. 250298)
    Anne B. Shaver (State Bar No. 255928)
4   Lisa J. Cisneros (State Bar No. 251473)
    LIEFF CABRASER HEIMANN &
5   BERNSTEIN, LLP
    275 Battery Street, 29th Floor
6   San Francisco, California  94111-3339
    Telephone:  415.956.1000
7   Facsimile:  415.956.1008

8   Joseph R. Saveri (State Bar No. 130064)
    Lisa J. Leebove (State Bar No. 186705)
9   James G. Dallal (State Bar No. 277826)
    JOSEPH SAVERI LAW FIRM, INC.
10  505 Montgomery, Suite 625
    San Francisco, CA 94111
11  Telephone:  415.500.6800
    Facsimile:  415.395.9940
12
    *Co-Lead Class Counsel*
13
    [Additional counsel listed on signature page]
14
15                  UNITED STATES DISTRICT COURT

16              NORTHERN DISTRICT OF CALIFORNIA

17                     SAN JOSE DIVISION

18  IN RE: HIGH-TECH EMPLOYEE          Master Docket No. 11-CV-2509-LHK
19  ANTITRUST LITIGATION
                                       **CLASS ACTION**
20  THIS DOCUMENT RELATES TO:
                                       **PLAINTIFFS' STATEMENT OF**
21  ALL ACTIONS                        **RECENT DECISION**
22
23
24
25
26
27
28

PLAINTIFFS' STATEMENT OF RECENT DECISION;
                                                        CASE NO. 11-CV-2509-LHK

1    Pursuant to Local Civil Rules 7-3(d), attached as <u>Exhibit A</u> is a copy of attention the

2  decision of Judge Samuel Conti in *In re: Cathode Ray Tube (CRT) Antitrust Litigation*, MDL No.

3  1917, Case No. C-07-5944-SC (September 24, 2013).

4
                                    Respectfully submitted,
5
   Dated:  September 25, 2013      LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP
6

7                                  By:      */s/ Kelly M. Dermody*
                                           Kelly M. Dermody
8

9                                  Richard M. Heimann (State Bar No. 63607)
                                   Kelly M. Dermody (State Bar No. 171716)
10                                 Eric B. Fastiff (State Bar No. 182260)
                                   Brendan Glackin (State Bar No. 199643)
11                                 Dean Harvey (State Bar No. 250298)
                                   Anne B. Shaver (State Bar No. 255928)
12                                 Lisa J. Cisneros (State Bar No. 251473)
                                   275 Battery Street, 29th Floor
13                                 San Francisco, California  94111-3339
                                   Telephone:  415.956.1000
14                                 Facsimile:  415.956.1008

15  Dated:  September 25, 2013     JOSEPH SAVERI LAW FIRM, INC.

16
                                   By:      */s/ Joseph R. Saveri*
17                                         Joseph R. Saveri

18                                 Joseph R. Saveri (State Bar No. 130064)
                                   Lisa J. Leebove (State Bar No. 186705)
19                                 James G. Dallal (State Bar No. 277826)
                                   JOSEPH SAVERI LAW FIRM, INC
20                                 255 California, Suite 450
                                   San Francisco, CA 94111
21                                 Telephone:  415. 500.6800
                                   Facsimile:   415. 395.9940
22
                                   *Co-Lead Counsel for Plaintiff Class*
23

24

25

26

27

28

# EXHIBIT A

United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION | ) MDL No. 1917 |
| | ) |
| | ) Case No. C-07-5944-SC |
| _____ | ) |
| | ) ORDER ADOPTING SPECIAL |
| This Order Relates To: | ) MASTER'S REPORTS AND |
| | ) RECOMMENDATIONS ON |
| ALL INDIRECT-PURCHASER ACTIONS | ) DEFENDANTS' MOTION TO |
| | ) EXCLUDE EXPERT TESTIMONY |
| | ) AND INDIRECT-PURCHASER |
| | ) PLAINTIFFS' MOTION FOR |
| | ) CLASS CERTIFICATION |
| | ) |
| | ) |
| | ) |
| _____ | ) |

I.    **INTRODUCTION**

Now before the Court are the parties' objections to and motions to adopt two of the Interim Special Master's ("ISM") Reports and Recommendations ("R&Rs").  One R&R concerns the Indirect-Purchaser Plaintiffs' ("IPPs") Motion for Class Certification.  ECF No. 1742 ("Class R&R").  The other concerns the Defendants' Motion to Strike the Proposed Expert Testimony of Dr. Janet S. Netz.  ECF No. 1743 ("Expert R&R").  The parties' objections to and motions to adopt both R&Rs are fully briefed,[1]

_____

[1] ECF Nos. 1812 ("Class Obj'ns"), 1813 ("Expert Obj'ns"), 1885

1    and the matter is appropriate for decision without oral argument

2    per Civil Local Rule 7-1(b).  As explained below, the Court ADOPTS

3    both R&Rs in full, finding them in all respects well-reasoned,

4    thorough, and correct.

5

6    **II.    BACKGROUND**

7         The parties are familiar with this case's facts.  A very brief

8    summary of these motions' postures follows, but the Court will not

9    catalog all of the parties' contentions from the underlying

10   motions.  Those were well summarized by the ISM's rigorous and

11   thorough analyses, and the Court ADOPTS the ISM's summaries and

12   discussions of the facts and the parties' contentions in full.

13        The IPPs are a putative class that purchased products

14   containing cathode-ray tubes ("CRTs").  The class alleges that it

15   was harmed by Defendants' conspiracy to fix CRT prices.  Years of

16   contentious litigation have led to the two present motions: the

17   IPPs move to certify their class, supported in part by the

18   declaration of their expert Dr. Janet S. Netz; and Defendants move

19   to strike the proposed testimony of Dr. Netz.[2]  The parties briefed

20   both motions and submitted supplemental briefs on the Supreme

21   Court's recent decision in Comcast Corporation v. Behrend, 133 S.

22   Ct. 1426 (2013), an antitrust class action case that concerned

23   issues relevant to the present action.  The ISM held hearings on

24

25   ("Class Reply"), 1887 ("Expert Reply").  Per the Court's July 3,
     2013 Order, ECF No. 1761, Plaintiffs' responsive briefs are deemed
26   motions to adopt.

27   [2] Dr. Netz's declarations -- the original declaration ("Netz
     Decl.") with its errata, and her rebuttal declaration ("Netz
28   Rebuttal Decl."), both in support of the IPPs' motion for class
     certification -- were filed with the Court under seal.

**United States District Court**
For the Northern District of California

1  the parties' motions and submitted his R&Rs to the Court.  He

2  recommends that the Court grant the IPPs' motion for class

3  certification and deny Defendants' motion to strike.  Defendants

4  now object to both R&Rs, and the IPPs move to adopt them.

5

6  **III.   LEGAL STANDARD**

7      **A.   Review of R&Rs**

8      The Court reviews the Special Master's factual findings for

9  clear error, his legal conclusions de novo, and his procedural

10 decisions for abuse of discretion.  Fed. R. Civ. P. 53(f)(3)-(4);

11 ECF No. 302 ("Order Appointing Special Master").

12     **B.   Motion for Class Certification**

13     Rule 23 of the Federal Rules of Civil Procedure governs class

14 actions.  It is the plaintiffs' burden to show that they have met

15 the four requirements of Rule 23(a) and at least one requirement of

16 Rule 23(b).  Rule 23(a) states that a district court may certify a

17 class only if:

18         (1) the class is so numerous that joinder of
           all members is impracticable; (2) there are
19         questions of law or fact common to the
           class; (3) the claims or defenses of the
20         representative parties are typical of the
           claims or defenses of the class; and (4) the
21         representative parties will fairly and
           adequately protect the interests of the
22         class.

23 These four requirements are called (1) numerosity, (2) commonality,

24 (3) typicality, and (4) adequacy of representation.  Mazza v. Am.

25 Honda Motor Co., Inc., 666 F.3d 581, 588 (9th Cir. 2012).  The

26 class definition must also be precise, objective, and presently

27 ascertainable, meaning that it must be administratively feasible

28 for the court to determine whether an individual is a member of the

1    class.  See Mazur v. eBay, Inc., 257 F.R.D. 563, 567 (N.D. Cal.

2    2009); O'Connor v. Boeing N. Am., Inc., 184 F.R.D. 311, 319 (C.D.

3    Cal. 1998).

4        The IPPs claim that their class should be certified under Rule

5    23(b)(3), which requires the district court to find "that the

6    questions of law or fact common to class members predominate over

7    any questions affecting only individual members, and that a class

8    action is superior to other available methods for fairly and

9    efficiently adjudicating the controversy."  This subsection must be

10   satisfied "through evidentiary proof."  Comcast, 133 S. Ct. at

11   1431.  However, proving predominance does not require plaintiffs to

12   prove that every element of a claim is subject to classwide proof:

13   they need only show that common questions predominate over

14   questions affecting only individual class members.  Amgen Inc. v.

15   Ct. Retirement Plans and Trust Funds, 133 S. Ct. 1184, 1196 (2013).

16       Further, the district court's class-certification analysis

17   "must be 'rigorous' and may 'entail some overlap with the merits of

18   the plaintiff's underlying claim.'"  Id. at 1194 (2013) (quoting

19   Wal-Mart Stores, Inc. v. Dukes, 131 S. Ct. 2541, 2551 (2011)).

20   Even so, Rule 23 does not permit the court to "engage in free-

21   ranging merits inquiries at the certification stage."  Id. at 1194-

22   95.  The court may consider merits questions only to the extent

23   that they are relevant to whether the Rule 23 prerequisites are

24   satisfied.  Id. at 1195.

25       If the court finds that the moving party has met its burden of

26   proof, the court has broad discretion to certify the class.  Zinser

27   v. Accufix Research Inst., Inc., 253 F.3d 1180, 1186, amended by

28   273 F.3d 1266 (9th Cir. 2001).

**United States District Court**
For the Northern District of California

### C. **Motion to Strike Expert Testimony**

Federal Rule of Evidence 702 states that expert testimony is admissible if "scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue." This expert testimony must be both relevant and reliable. Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579, 589 (1993). When considering evidence proffered under Rule 702, the district court must act as a gatekeeper by making a preliminary determination that the expert's proposed testimony is reliable. Kumho Tire Co. v. Carmichael, 526 U.S. 137, 141, 150 (1999). The Ninth Circuit's policy on admissibility is liberal, though the district court must focus on the proposed evidence's scientific reliability and relevance instead of its persuasiveness. See Ellis v. Costco Wholesale Corp., 657 F.3d 970, 982 (9th Cir. 2011). The district court has broad latitude in both determining whether an expert's testimony is reliable and deciding how to determine the testimony's reliability. Id.

When an expert's testimony relates to damages calculations in a class certification case, the district court must undertake a rigorous analysis of the expert's opinions in the class certification context, such as whether the opinions are consistent with the liability case and whether they demonstrate that case's proposed damages are measurable on a classwide basis. Comcast, 133 S. Ct. at 1433.

///
///
///
///

1  **IV.   DISCUSSION**

2        **A.   Motion for Class Certification**

3        Defendants do not challenge the ISM's findings on

4  ascertainability, numerosity, commonality, typicality, or adequacy

5  of representation.  They only challenge his conclusions as to Rule

6  23(b)(3): that common questions predominate over individual ones in

7  this case.  In determining whether the predominance requirement is

8  satisfied, the court must identify the case's issues and determine

9  which are subject to common proof and which are subject to

10  individualized proof.  See In re TFT-LCD Antitrust Litig., 267

11  F.R.D. 583, 600 (N.D. Cal. 2010.  Liability in an antitrust case

12  requires (1) a conspiracy to fix prices in violation of the

13  antitrust laws; (2) an antitrust injury -- i.e., the impact of the

14  defendants' unlawful activity; and (3) damages caused by the

15  antitrust violations.  Id.

16        The IPPs presented Dr. Netz's expert report to support their

17  contention that they can prove antitrust impact on a classwide

18  basis.  The ISM thoroughly and correctly summarized Dr. Netz's

19  report in both R&Rs, and the Court ADOPTS those findings here.  A

20  relatively brief summary follows.

21        Dr. Netz found that Defendants' industry is ripe for

22  cartelization and price-fixing because (1) collectively, Defendants

23  had a ninety-percent market share, and alternative CRT sources were

24  essentially unavailable; (2) barriers to entry for the CRT market

25  are high; (3) Defendants met and exchanged price-fixing

26  information, and policed cheating among themselves through

27  checkups, punishments, and most-favored-customers agreements.  Netz

28  Decl. at 36-58.  Dr. Netz also found that Defendants' meeting

**United States District Court**
For the Northern District of California

**United States District Court**
For the Northern District of California

documents state the prices that Defendants wanted to set (the "target prices"), and that based on the available data, Defendants were generally able to charge prices "at least 95 percent as high as the target price 63 percent of the time, and only 13 percent of the sales were more than 15 percent below the cartel's target price." Netz Decl. at 63; Netz Decl. Exs. 14-17; Netz Rebuttal Decl. at 3-4; Expert R&R at 7-8. These facts led Dr. Netz to conclude that the cartel was successful at increasing prices.

Using qualitative and quantitative methods, Dr. Netz also concluded that it is more probable than not that the cartel's price increases impacted all, or nearly all, direct purchasers in a common way. See Netz Decl. at 68-70.

First, to account for the fact that the CRT market is highly differentiated -- that is, factors like CRT and customer characteristics will impact prices -- Dr. Netz found that the CRT cartel broadened its price-fixing impact by fixing the prices of CRT models with different characteristics and then setting fixed price differentials among models. Id. at 66-68. Dr. Netz cited economic theory to support the contention that fixing a target price for one particular model will also increase the prices of non-target-priced models: if the price rises on a price-fixed model, customers will migrate toward alternative models, raising demand for them and therefore raising their prices. Id. Quantitatively, Dr. Netz ran a hedonic regression[3] to analyze the

---

[3] Regression analysis is a common type of economic analysis that is used to estimate the relationships among variables in order to predict how a dependent variable will change when the independent variables are varied. See Netz Decl. at 85. A hedonic regression is a type of regression analysis used to correlate the prices of goods with the goods' varying features or qualities. See Netz Decl. at 68 n.219.

United States District Court
For the Northern District of California

effects of different CRT characteristics on the overall price of
the goods, in which she incorporated documentary proof of
Defendants' target prices and the principal model characteristics
of the CRTs (size, shape, major or minor customer, and whether the
CRT was sold with add-ons or as a bare CRT).  Expert R&R at 9.  Dr.
Netz found that more than 90 percent of the variation in prices for
different CRTs is a function of those common principal
characteristics, and so the prices for different models of CRTs
tended to move in tandem, demonstrating a common pricing structure.
Netz Decl. at 68-70.  In other words, common influences on the
price structure could be estimated using a formula, and by the same
type of regression analysis, a very high percentage of sales prices
could be determined by common variables.  Therefore, Dr. Netz's
declaration shows that proof of harm to direct purchasers could be
proved without individual inquiry.

Second, Dr. Netz evaluated how and whether the direct
purchasers could pass on price increases to indirect purchasers.
She found that they could and did.  Dr. Netz cited economic theory
stating that firms increase prices to cover significant, non-
transitory, industry-wide price increases but may absorb price
increases that are minimal, temporary, or narrow.  Netz Decl. at
72-78.  In a highly competitive industry, pass-through rates
approach 100 percent, meaning that 100 percent of a cost increase
is passed on in the form of a price increase.  Id. at 73, 77.  In a
chain of distribution, pass-through rates for each distribution may
be calculated in the form of a "channel-length" pass-through rate,
which is the product of pass-through rates for each link in a
distribution chain.  Id. at 76-77.

**United States District Court**
For the Northern District of California

1    Dr. Netz cited documentary evidence stating that Defendants

2  anticipated and observed that price increases for CRTs were being

3  incorporated into CRT products.  Netz Decl. at 78-79, Exs. 29-32.

4  Dr. Netz also provided methods for showing common proof of

5  overcharges for both direct and indirect purchasers.

6    For direct purchasers, Dr. Netz offers four methods to

7  estimate the price direct purchasers would have paid had there been

8  no cartel (the "but-for price").  First, the "economic

9  determinants" method uses regression analysis to isolate the impact

10  of the cartel's activities from other price determinants like

11  demand, cost, and market structure, by using data from inside and

12  outside the cartel period.  Netz Decl. at 85-90.  Second, the

13  "benchmark method" identifies an industry that faced similar demand

14  and cost structures to the CRT industry, but that was not

15  cartelized.  Id. at 90-91.  This method evaluates market outcomes

16  for the non-cartelized industry and estimates outcomes in the

17  cartelized CRT industry absent the cartel.  Id.  Third, the

18  "simulation method" creates a model of the CRT industry using

19  demand, cost, and competition data to estimate marginal prices in

20  the absence of a cartel.  Id. at 92-96.  Fourth, the "market power

21  method" quantifies overcharges by using the cartel members' gain in

22  market power, obtained through collusion, as a basis for

23  calculating but-for prices.  Id. at 96.  This method estimates a

24  firm's but-for elasticity of demand and compares it to the

25  cartelized firm's elasticity of demand, in order to measure market

26  power and translate that into a but-for price.  Id. at 96-97.  Dr.

27  Netz provides substantial academic and theoretical support for each

28  of her methods.  She also concludes that sufficient data is

1    available for all of these methods, and each method relies on

2    common data (not individualized evidence).  Id. at 97.

3         For indirect purchasers, Dr. Netz conducted a total of forty-

4    seven regression studies using different common data sets to

5    determine the pass-through of direct-purchaser overcharges to

6    indirect-purchaser price increases.  See Netz Decl. at 99 (noting

7    initial forty studies); Netz Rebuttal Decl. at 74 (adding

8    additional seven studies).  Her regression model for estimating

9    pass-through rates regresses the price of the product at the bottom

10   of the channel (the end-customer's payment amount) on the cost at

11   the top of the distribution channel (how much Defendants charged

12   direct customers).  Id. at 98-99.  Dr. Netz provides two approaches

13   for estimating channel-length pass-through: the "top-and-bottom"

14   approach, which looks at the relationship between costs at the top

15   of the distribution chain and prices at the bottom; and the "top-

16   to-bottom" approach, which estimates the pass-through rate at each

17   level of the distribution chain and then multiplies them.  Id. at

18   102-104.  Her expert declaration and its exhibits describe her data

19   and variables, and her conclusion based on the forty-seven models

20   is that the pass-through rate down the distribution channel is at

21   least 100 percent of the cartel's overcharge, meaning that

22   virtually all class members suffered common harm.  Netz Decl. at

23   97-104; Netz Rebuttal Decl. at 74-75.  Further, Dr. Netz states

24   that this harm can be quantified by common evidence and methods.

25        Having reviewed Dr. Netz's proposed evidence and Defendants'

26   arguments as to why it does not suffice to show predominance under

27   Rule 23(b)(3), the ISM found all of Defendants' arguments lacking

28   and concluded that the IPPs had satisfied the predominance

requirement.  Defendants now make the following arguments as to why
the ISM erred in finding that common issues predominate in this
case:

> (1) The ISM applied the wrong legal standard
> in evaluating the IPPs' burden to establish
> a common method for proving that each class
> member was injured;
> (2) The ISM is wrong as a matter of law that
> a guilty plea by one Defendant for one
> product reduces the IPPs' burden under Rule
> 23(b)(3) to establish impact and injury to
> all class members;
> (3) The ISM used an outdated, pre-Comcast
> legal standard in finding that the IPPs met
> their burden to establish a reliable method
> for assessing classwide damages using common
> proof;
> (4) Because of his legal errors in assessing
> the IPPs' burden of proof, the ISM failed to
> recognize the key substantive failings in
> the IPPs' expert Dr. Netz's analysis;
> (5) The MDL In re TFT-LCD Antitrust
> Litigation, MDL No. 1827, No. M 07-1827 SI,
> is not a basis for certifying an IPP class
> in this case.

Class Obj'ns at 6-24.

     i.     **The Legal Standard in Evaluating the IPPs' Burden to
            Establish a Common Method for Proving Class Injuries**

     Defendants argue that the ISM "bases his analysis on the
erroneous legal proposition that plaintiffs are not required to
establish a reliable common methodology that is capable of proving
that each class member sustained individual injury as a result of
the alleged antitrust violation."  Class Obj'ns at 7.

     Defendants also claim that the ISM misinterpreted the common
evidence requirement as going only to Dr. Netz's damage
methodologies, even though fact of injury and measure of damages
are separate elements of an antitrust claim.  Id. at n.13.
Defendants' argument is based on their contention that Dr. Netz's

1    proposed testimony does not establish that any, let alone all,

2    class members paid a supra-competitive price, since according to

3    Defendants, Dr. Netz's data set does not show how many consumers

4    purchased products at supra-competitive levels.  Id. at 9-10.

5        Further, Defendants argue Dr. Netz's data set also proves that

6    there were uninjured class members.  Id. at 10.  Defendants

7    conclude that all of these contentions prove that Dr. Netz's

8    evidence, on its face, cannot possibly satisfy the legal

9    requirement that a putative class must establish a common method

10   for proving that all, or almost all, of the class members were

11   injured by the alleged antitrust violation.  See id. at 7, 10-11.

12       Defendants' argument on this point is essentially that the

13   IPPs must be able to prove at the class certification stage that

14   every single (or basically every single) class member was injured

15   by Defendants' conduct.  This contention is wrong.  The Court's job

16   at this stage is simple: determine whether the IPPs showed that

17   there is a reasonable method for determining, on a classwide basis,

18   the antitrust impact's effects on the class members.  See In re

19   TFT-LCD, 267 F.R.D. at 601; see also In re Dynamic Random Access

20   Memory (DRAM) Antitrust Litig., No. M 02-1486 PJH, 2006 WL 1530166,

21   at *9 (N.D. Cal. June 5, 2006).  This is a question of methodology,

22   not merit.  See In re DRAM, 2006 WL 1530166, at *9.  Defendants

23   continually argue that the ISM's conclusions were based on a faulty

24   standard or that the standard has somehow changed drastically under

25   Dukes, Comcast, or Amgen, but the Court does not find that this is

26   true.  None of those cases changed the standard that the ISM

27   applied.  It is true that the Court's rigorous analysis overlaps

28   with the merits of the IPPs' claims and requires that the IPPs make

12

1  an evidentiary case for predominance, <u>Comcast</u>, 133 S. Ct. at 1431;

2  <u>Amgen</u>, 133 S. Ct. at 1196; <u>Dukes</u>, 131 S. Ct. at 2551, but

3  Defendants are trying to push the ISM and the Court toward a full-

4  blown merits analysis, which is forbidden and unnecessary at this

5  point, <u>Amgen</u>, 133 S. Ct. at 1194-95

6      Further, Defendants continually mischaracterize Dr. Netz's

7  report and the ISM's R&Rs as acknowledging but ignoring false

8  positives or uninjured class members.  That is not what Dr. Netz or

9  the ISM said at any point.  The Court's analysis of the record does

10 not show, as Defendants argue, that Dr. Netz ever states that her

11 model shows a large but unknown number of uninjured class members.

12 Again, the ISM found, and the Court finds now, that Dr. Netz's

13 analyses show common impact, and the IPPs need not prove, at the

14 class certification stage, that every single class member was in

15 fact injured in a specific way.  Defendants' arguments, which are

16 mostly based on contentions in deposition transcripts and their own

17 expert's testimony, go to the IPPs' claims' merits, not their

18 methods, and that issue is for the jury to decide.

19     Based on Dr. Netz's methodology, described above, and the

20 ISM's thorough R&Rs, the Court is satisfied that for class

21 certification purposes, the IPPs have established a common method

22 for proving that each class member was injured, and that the ISM

23 did not err in his R&R on this point.

24     **ii.    <u>Guilty Pleas</u>**

25     Defendants argue that the ISM applied a "lower than usual

26 burden" for demonstrating common impact in this case because in

27 this case, as in <u>In re TFT-LCD</u>, one defendant has pleaded guilty to

28 antitrust violations.  Class Obj'ns at 11 (citing Class R&R at 20

**United States District Court**
For the Northern District of California

n.5). This argument stretches what the R&R actually says. The ISM
referenced the guilty plea in a footnote in one page of a lengthy,
detailed analysis of classwide impact, which as the Court found
above was undertaken using the proper standard of review. The
Court finds that the ISM did not err in referencing the guilty
plea.

    **iii.**      **The IPPs' Standard for Establishing a Reliable**
                   **Method for Assessing Classwide Damages**

    Defendants argue that the ISM erred in concluding that Dr.
Netz offered a sufficient methodology for assessing classwide
damages using common proof, and that the reliability of her common
damages theories should be adjudicated at trial instead of at class
certification. Class Obj'ns at 13 (citing Class R&R at 36). They
state that the ISM did not follow the Comcast standard, which
requires that alleged damages be measurable on a classwide basis
through reliable common economic evidence. Id. (citing Comcast,
133 S. Ct. at 1433). As Defendants characterize Comcast, the
case's rule does not only apply in cases in which plaintiffs assert
multiple theories of antitrust liability but fail to tie their
proposed damages measurement to the theory on which they ultimately
rely. Id. at 14. Rather, they essentially argue that Comcast
requires plaintiffs to provide proof of, and calculate, damages at
the class certification stage. Id.

    According to Defendants, under Comcast, the IPPs cannot
demonstrate that "the methodology is a just and reasonable
inference" and not merely "speculative." Id. (citing Comcast, 133
S. Ct. at 1431, 1433). Defendants state that because Dr. Netz did
not calculate damages and said during a deposition that "it is

**United States District Court**
For the Northern District of California

1  within the realm of possibility" that one of the methods might not

2  be implementable, the ISM erred in finding her methodology

3  acceptable.

4      Contrary to Defendants' arguments, <u>Comcast</u> does not require

5  the IPPs to prove the merits of their claim at this point.

6  Defendants insist that it requires putative class action plaintiffs

7  to prove and calculate their damages at the class certification

8  phase.  That is not exactly what the case says.  In <u>Comcast</u>, the

9  putative plaintiff class had asserted four theories of antitrust

10 impact against a defendant.  131 S. Ct. at 1430-31.  The district

11 court accepted one of the four theories as capable of classwide

12 proof and rejected the rest.  <u>Id.</u> at 1431.  However, the plaintiff

13 class's expert's model did not isolate damages resulting from that

14 the one acceptable theory.  It provided a more general theory of

15 damages.  The Court of Appeals affirmed the district court's

16 certification of the class, holding that the defendant's argument

17 on the imprecise damages model was a premature attack on the

18 methodology's merits, and stating that the plaintiffs did not need

19 to tie each theory of antitrust impact to an exact calculation of

20 damages.  <u>Id.</u>

21     The Supreme Court reversed.  First, the Court emphasized the

22 necessity of district courts' probing behind the pleadings, to some

23 extent, to make a rigorous analysis of whether Rule 23 has been

24 satisfied.  <u>Id.</u> at 1432.  Second, the Court held that per

25 straightforward application of class certification principles, it

26 is clear that a putative class's model must establish that the

27 theory of damages they invoke be capable of measurement on a

28 classwide basis.  <u>Id.</u> at 1432-33.  Since the <u>Comcast</u> plaintiffs

**United States District Court**
For the Northern District of California

1   advanced one theory of antitrust impact, they were required to

2   provide a model measuring damages attributable to that theory of

3   liability, though they did not need to make an exact calculation.

4   Id. at 1433.  "A method" for measuring damages is therefore not

5   enough -- it needs to be "the method" in relation to the theory of

6   liability the plaintiffs assert.  See id.  The Court effectively

7   illustrated plaintiffs' error in Comcast with an example of the

8   problems inherent in allowing putative classes to assert vague

9   damages for various methodologies.  Across a geographic area,

10  numerous groups of plaintiffs might have been harmed in different

11  ways (e.g., elimination of competition in one county, and a

12  combination of alleged antitrust effects in another), making it

13  impossible to accept the methodology of damages since the whole

14  class had been harmed in various ways.  Id. at 1434-35.  The facts

15  of Comcast presented a situation in which the plaintiffs' theory of

16  damages did not map to their theory of liability, so the plaintiffs

17  failed to show through common evidence that all class members had

18  been harmed by the alleged conspiracy.

19      Such a situation does not exist in this case.  The IPPs assert

20  one theory of antitrust harm: that the cartel overcharged direct

21  purchasers of CRTs, who passed on the overcharge through the

22  distribution chain down to the consumers, who were harmed by the

23  antitrust impact.  See Class Reply at 20.  Defendants do not

24  contend that Dr. Netz's damages analyses are not tied to that

25  single theory.  Instead they argue that Dr. Netz has done nothing

26  more than describe a hoped-for methodology for calculating damages.

27  See Class Obj'ns at 14-15.

28  ///

United States District Court
For the Northern District of California

1    This contention is not accurate, and the cases Defendants use

2    to support their argument do not change the appropriate standard.

3    In <u>Montano v. First Light Federal Credit Union</u>, No. 7-04-17866-TL,

4    2013 WL 2244216, at *7 (Bkrtcy. D.N.M. May 21, 2013), the

5    bankruptcy court rightly rejected a proposed damages calculation

6    because it was merely a five-paragraph suggestion of possible

7    proposals that the court found uncompellingly vague.  Here Dr. Netz

8    has, congruently with the IPPs' theory of antitrust liability,

9    described four economic models for measuring the overcharge,

10   identified the types of data required under each method (and noted

11   that more data could arise), explained how the data was common to

12   the class, and demonstrated that each model has been used

13   effectively in other cases.  <u>See</u> Netz Decl. at 83-104.  Defendants

14   also attempt to distinguish a recent case that the ISM cited, <u>In re</u>

15   <u>High-Tech Employee Antitrust Litigation</u>, 289 F.R.D. 555 (N.D. Cal.

16   2013), in which the plaintiffs' expert performed a proposed

17   classwide damages calculation using a regression analysis that the

18   court held admissible and persuasive, <u>id.</u> at 582-83.  <u>High-Tech</u>

19   <u>Employee</u> does not suggest that the type of precise calculation

20   Defendants desire is required.  Nor does it alter the <u>Comcast</u> rule.

21   <u>Id.</u> at 582-83.

22        The ISM found that <u>Comcast</u> did not preclude Dr. Netz's damages

23   methodology, because the IPPs assert, and Dr. Netz analyzed, just

24   one theory of antitrust liability.  Class R&R at 36-37.  Further,

25   neither <u>Comcast</u> nor any other precedent requires the IPPs to

26   provide exact calculations of their damages at the class

27   certification stage.  <u>See</u> <u>Comcast</u>, 131 S. Ct. at 1433; <u>see also</u> <u>In</u>

28   <u>re TFT-LCD</u>, 267 F.R.D. at 606 ("In price-fixing cases,

'[p]laintiffs are not required to supply a precise damage formula at the certification stage.'") (quoting In re Static Random Access (SRAM) Antitrust Litig., No. C 07-0819 CW, 2008 WL 4447592, at *6 (N.D. Cal. Sept. 29, 2008)). Again, the ISM found that Defendants' arguments misread Comcast and relevant precedent to require proof of the merits of their damages claim -- as opposed its methodology -- at the class certification stage. This finding was correct. The ISM did not err here.

### iv.  Dr. Netz's Analysis

Finally, Defendants argue that due to the ISM's purported legal errors, he missed several key substantive failings in Dr. Netz's analysis of pass-through. Defendants assert three critical errors: (1) Dr. Netz's use of averages obscures the fact that many, if not most, class members did not suffer impact or injury; (2) Dr. Netz used unrepresentative data; and (3) Dr. Netz's false factual assumptions render her common impact and injury opinions unreliable. Class Obj'ns at 18-23.

The ISM did not err in his recommendations on the IPPs' burden of proof. Nor did he "fail to recognize" the purported failings. Defendants raised them then, and the ISM rejected them.

### a.  Averages

First, Defendants argue that Dr. Netz's use of "average data," as opposed to actual prices paid by individual class members, precludes the fact that many or most class members were not injured. Class Obj'ns at 17-18. As discussed above, Dr. Netz's model does not show this, and nowhere do the IPPs admit it (contrary to Defendants' accusations, which are better suited to cross-examination than a class certification argument). It

United States District Court
For the Northern District of California

1  accounts for classwide injury for all or almost all class members,

2  and it incorporates actual transaction-level data when available in

3  usable form.  See Class R&R; see also Netz Decl. at 99-102, Ex. 34.

4  Defendants' contention is basically that variation among purchasers

5  and CRTs renders many or most class members unharmed by the alleged

6  antitrust activity, a fact that averaging hides.  See Class Obj'ns

7  at 18.  But Dr. Netz's model, based on target prices and variant

8  prices, notes that all prices embody a basic overcharge, and that

9  the overcharges can be calculated without individualized inquiry.

10  See Class R&R at 30.  Defendants insist that Dr. Netz used no

11  transactional-level data, citing their own expert's different

12  findings based on the same data for one retailer of CRT products.

13  Class Obj'ns at 19.  This battle of experts indicates that the

14  dispute does not concern methodology alone.  It is a merits

15  question for the jury.

16      Defendants point to two cases in which Dr. Netz's models were

17  rejected as proof of why they should be rejected in this case: In

18  re Flash Memory Antitrust Litigation, No. 07-0086 SBA, 2010 WL

19  2332081 (N.D. Cal. June 9, 2010), and In re Graphics Processing

20  Units (GPU) Antitrust Litigation, 253 F.R.D. 478 (N.D. Cal. 2008).

21  In Flash Memory, the court rejected Dr. Netz's regression analysis

22  for not accounting for variances in price trends based on

23  particular chips, categories of chips, or categories of consumers.

24  2010 WL 2332081, at *10.  In GPU, the court rejected Dr. Netz's

25  analysis for not accounting for variable factors that would impact

26  prices.  Both cases are inapposite here.  The IPPs have submitted

27  evidence that CRTs are not so variable as flash memory or graphics

28  processing units, which were highly customized and not generally

**United States District Court**
For the Northern District of California

1    interchangeable.  Rather, CRT prices, as Dr. Netz found, depend on

2    a small set of variables, for which her model accounts.  The IPPs'

3    case, again, is much more like <u>TFT-LCD</u>, in which Judge Illston

4    considered and rejected an identical argument about averages.

5         Accordingly, the Special Master did not err in his decision on

6    the averages question.[4]  The Court ADOPTS it here.  Finally, the

7    Special Master's note that Defendants' own expert used averages was

8    not error.

9                    **b.    Representative Data**

10        Defendants content that Dr. Netz used "relatively small and

11   admittedly non-random data samples" in analyzing pass-through,

12   thereby rendering her analysis incapable of satisfying Rule

13   23(b)(3)'s requirement that plaintiffs prove a common method for

14   reliably proving classwide injury and impact.  Class Obj'ns at 20-

15   21.  However, Dr. Netz's studies include over forty data sets from

16   twenty-nine different entities, for more than 131 million CRTs, in

17   a data range spanning seven years and more than 100 million price

18   and cost observations.  <u>Id.</u>; Netz Decl. at 97-104, Exs. 34, 36, 40-

19   43; Netz Rebuttal Decl. Section X.A.2, Ex. RR-34.  Defendants'

20   vague accusation of non-representativeness is not convincing.  The

21   ISM did not err in dismissing their arguments on this point.

22                    **c.    Factual Assumptions**

23        Defendants' last argument is that Dr. Netz relies on false

24   factual assumptions, thereby rendering her common impact and injury

25   opinions unreliable.  Specifically, Defendants claim that they have

26   _____

27   [4] Defendants also took issue with the ISM's approving reference to
     <u>TFT-LCD</u>'s citation of <u>Gordon v. Microsoft</u>, No. MC 00-5994, 2003 WL

28   23105550 (D. Minn. Dec. 15, 2003), but this objection is spurious:
     that case was not controlling for either the ISM or Judge Illston.

**United States District Court**
For the Northern District of California

1   forced Dr. Netz to concede the falsity of: (1) the cartel price

2   increase's significance, (2) the permanence of any price increases,

3   (3) the meaning of "permanence" in this case, (4) the effects of

4   price increases on Sony, and (5) the global effects of the alleged

5   cartel.  Class Obj'ns at 21-23.  On review, Defendants' references

6   to most of these "gotchas" are based on vague deposition testimony,

7   not demonstrative falsity in the record.  None of the "assumptions"

8   Dr. Netz is claimed to have made, nor any of the alleged falsity,

9   appear to affect Dr. Netz's analyses in a demonstrable way, and

10  similarly, Defendants' accusations that the ISM makes similarly

11  unsupported contentions are based on misleading characterizations

12  of his recommendations. If Defendants want to cross-examine Dr.

13  Netz, they can do so before a jury.

14          **ii.    TFT-LCD's Applicability to This Case**

15      Defendants also contend that neither the ISM nor the Special

16  Master should use TFT-LCD as a basis for certifying the IPPs'

17  class, Class Obj'ns at 23-25, presumably because TFT-LCD is not a

18  favorable case for Defendants.  But this does not mean the case is

19  inapposite.  In any event, TFT-LCD is not binding, and no one

20  contends that it is.  As noted above, the governing standards here

21  are set by the Supreme Court, the Ninth Circuit, and the Federal

22  Rules of Civil Procedure.

23      **B.    Motion to Strike**

24      For all the reasons discussed above, which were essentially

25  raised in both motions, the Court DENIES Defendants' motion to

26  strike Dr. Netz's proposed expert testimony.  The Court ADOPTS the

27  ISM's R&R on this motion in full.  The Court declines to rehash

28  either its own analysis from the above sections or the ISM's

discussion in his recommendation.  In short, Defendants' arguments
in that motion restate their arguments from their opposition to the
class certification motion, and are denied for the same reasons.
Further, those arguments go more toward the weight of Dr. Netz's
opinions, not their reliability or admissibility.

The only two arguments Defendants did not precisely raise here
are these: (1) Dr. Netz's target price analysis is unreliable
because she improperly assumed that the overseas cartel target
prices applied to CRTs sold in the United States, Expert Obj'ns at
23-24; and (2) Dr. Netz's use of economic theory not linked to the
record evidence as a substitute for actual damages analysis
inadmissible expert _ipse_ _dixit_, _id._ at 24-25.  The Court finds that
the ISM did not err in his recommendations on these points: (1)
Defendants' criticism, mostly reliant on contrary expert evidence,
is an attack on the weight of Dr. Netz's opinions, not her
methodology's scientific reliability; and (2) Dr. Netz did not
ignore relevant individualized data, and her report and responses
accord with economic logic.  Expert R&R at 8-10, 18-19.

///
///
///
///
///
///
///
///
///
///

22

**V.    CONCLUSION**

As explained above, the Court ADOPTS the Interim Special Masters Reports and Recommendations on the Indirect Purchaser Plaintiffs' Motion for Class Certification and the Defendants' Motion to Strike the Proposed Expert Testimony of Dr. Janet S. Netz.  The Court therefore GRANTS the motion for class certification and DENIES the motion to strike.  The classes listed in the ISM's report and recommendation on the motion for class certification are hereby certified.

IT IS SO ORDERED.

Dated: September 19, 2013

_____
UNITED STATES DISTRICT JUDGE