# EXHIBIT 1

1  Richard M. Heimann (State Bar No. 63607)
   Kelly M. Dermody (State Bar No. 171716)
2  Eric B. Fastiff (State Bar No. 182260)
   Brendan Glackin (State Bar No. 199643)
3  Dean Harvey (State Bar No. 250298)
   Anne B. Shaver (State Bar No. 255928)
4  Lisa J. Cisneros (State Bar No. 251473)
   LIEFF CABRASER HEIMANN &
5  BERNSTEIN, LLP
   275 Battery Street, 29th Floor
6  San Francisco, California  94111-3339
   Telephone:  415.956.1000
7  Facsimile:  415.956.1008

8  Joseph R. Saveri (State Bar No. 130064)
   Lisa J. Leebove (State Bar No. 186705)
9  James G. Dallal (State Bar No. 277826)
   JOSEPH SAVERI LAW FIRM, INC.
10 505 Montgomery, Suite 625
   San Francisco, CA 94111
11 Telephone:  415.500.6800
   Facsimile:  415.395.9940

12

13 *Co-Lead Class Counsel*

   [Additional counsel listed on signature page]
14

15                 UNITED STATES DISTRICT COURT

16               NORTHERN DISTRICT OF CALIFORNIA

17                      SAN JOSE DIVISION

18 IN RE: HIGH-TECH EMPLOYEE          Master Docket No. 11-CV-2509-LHK
19 ANTITRUST LITIGATION
                                      **CLASS ACTION**
20 THIS DOCUMENT RELATES TO:
                                      **NOTICE OF MOTION AND MOTION FOR
21 ALL ACTIONS                         PRELIMINARY APPROVAL OF CLASS
                                       ACTION SETTLEMENTS; MEMORANDUM
22                                      OF POINTS AND AUTHORITIES IN
                                       SUPPORT THEREOF**

23                                     Judge:      Hon. Lucy S. Koh
                                       Courtroom:  8, 4th Floor
24                                     Date:       October 3, 2013
                                       Time:       1:30pm
25

26

27

28

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION AND MOTION ............................................................................. 1

MEMORANDUM IN SUPPORT OF MOTION.............................................................. 2

I.    INTRODUCTION ............................................................................................ 2

II.   PROCEDURAL HISTORY .............................................................................. 3

III.  SETTLEMENT NEGOTIATIONS .................................................................. 6

IV.   TERMS OF THE SETTLEMENTS.................................................................. 6

      A.   The Class ........................................................................................ 7

      B.   Settlement Sums and Additional Consideration ......................... 7

      C.   Monetary Relief To Class Members ............................................ 8

      D.   Release of All Claims Against the Settling Defendants and
           Reservation of Rights .................................................................. 8

      E.   Attorneys' Fees and Costs............................................................ 9

      F.   Class Representative Service Payments....................................... 9

      A.   Class Member Privacy ............................................................... 10

V.    LEGAL ARGUMENT ................................................................................... 11

      A.   Class Action Settlement Procedure............................................ 11

      B.   Standards For Preliminary Settlement Approval ...................... 11

      C.   The Proposed Settlements Are Within The Range Of
           Reasonableness .......................................................................... 13

      D.   The Proposed Settlement Class Satisfies Rule 23.................... 13

      E.   Co-Lead Class Counsel Should be Confirmed As Settlement Class
           Counsel........................................................................................ 16

VI.   PROPOSED PLAN OF NOTICE ................................................................. 16

VII.  ALLOCATION AND USE OF SETTLEMENT FUNDS................................. 18

VIII. THE COURT SHOULD SET A FINAL APPROVAL HEARING
      SCHEDULE................................................................................................. 20

IX.   CONCLUSION ............................................................................................. 20

# TABLE OF AUTHORITIES

**Page**

## CASES

*Amchem Prods. Inc. v. Windsor*,
    521 U.S. 591 (1997) ................................................................................ 14, 16

*Churchill Village, LLC v. General Elec.*,
    361 F.3d 566 (9th Cir. 2004) .............................................................................. 12

*Class Plaintiffs v. City of Seattle*,
    955 F.2d 1268 (9th Cir. 1992) ....................................................................... 12, 13

*Glass v. UBS Fin. Servs., Inc.*,
    2007 U.S. Dist. LEXIS 8476 (N.D. Cal. Jan. 26, 2007), *aff'd*, 331 Fed. Appx.
    452 (9th Cir. 2009) ............................................................................................ 10

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1988) ............................................................................ 12

*In re Airline Ticket Comm'n Antitrust Litig.*,
    953 F. Supp. 280 (D. Minn. 1997) ..................................................................... 18

*In re Brand Name Prescription Drugs Antitrust Litig.*,
    Case No. 94 C 897, 1994 U.S Dist. LEXIS 16658 (N.D. Ill. Nov. 18, 1994) ................ 15, 20

*In re Cal. Micro Devices Sec. Litig.*,
    965 F. Supp. 1327 (N.D. Cal. 1997) ................................................................... 19

*In re Citric Acid Antitrust Litig.*,
    145 F. Supp. 2d 1152 (N.D. Cal. 2001) .............................................................. 18

*In re Corrugated Container Antitrust Litig.*,
    Case No. M.D.L. 310, 1981 WL 2093 (S.D. Tex. June 4, 1981) ....................... 9, 13

*In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*,
    No. 02-md-01486, Dkt. No. 1315 (N.D. Cal. Feb. 14, 2007) ............................... 19

*In re High Pressure Laminates Antitrust Litig.*,
    No. 00-MD-1368, Dkt. No. 215 (S.D.N.Y. July 14, 2004) .................................. 19

*In re Mego Fin. Corp. Sec. Litig.*,
    213 F.3d 454 (9th Cir. 2000) ............................................................................... 9

*In re Mid-Atlantic Toyota Antitrust Litig.*,
    564 F. Supp. 1379 (D. Md. 1983) ...................................................................... 13

*In re Oracle Sec. Litig.*,
    1994 U.S. Dist. LEXIS 21593 (N.D. Cal. June 18, 1994) ................................... 18

*In re Pacific Enters. Sec. Litig.*,
    47 F.3d 373 (9th Cir. 1995) ................................................................................ 12

*In re Static Random Access (SRAM) Antitrust Litig., No. C07-01819 CW*,
    2008 U.S. Dist. LEXIS 107523 (N.D. Cal. Sept. 29, 2008) ................................ 15

# TABLE OF AUTHORITIES
## (continued)

Page

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
No. 07-01827, Dkt. No. 2474 (N.D. Cal. Feb. 18, 2011)...................................... 19

*Mendoza v. United States*,
623 F.2d 1338 (9th Cir. 1980)............................................. 18

*Officers for Justice v. Civil Serv. Comm'n*,
688 F.2d 615 (9th Cir. 1982), *cert. denied sub nom. Byrd v. Civil Serv.*
*Comm'n*, 459 U.S. 1217 (1983) ....................................... 12

*Rodriguez v. W. Publ'g Corp.*,
563 F.3d 948 (9th Cir. 2009)............................................. 10

*Staton v. Boeing Co.*,
327 F.3d 938 (9th Cir. 2003)............................................. 10

*Sullivan v. DB Investments, Inc., et al.*,
667 F.3d 273 (3d Cir. 2011) (en banc), *cert. denied, Murray v. Sullivan*, No.
11-1111, 2012 U.S. LEXIS 2656 (Apr. 2, 2012) ...................... 14, 15

*Valentino v. Carter-Wallace, Inc.*,
97 F.3d 1227 (9th Cir. 1996).......................................... 15

*Van Bronkhorst v. Safeco Corp.*,
529 F.2d 943 (9th Cir. 1976).......................................... 12

*Van Vranken v. Atl. Richfield Co.*,
901 F. Supp. 294 (N.D. Cal. 1995) .................................... 10

## STATUTES

Cartwright Act, Cal. Bus. & Prof. Code §§ 16720, *et seq.* ........................ 4

Sherman Act, 15 U.S.C. § 1 ........................................................ 4

## RULES

Fed. R. Civ. P. 23 ........................................................... passim

## TREATISES

4 *Newberg on Class Actions* (4th ed. 2002)................................ 11, 13, 16

Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and*
*Procedure: Civil Procedure* § 1781 at 254-55 (3d ed. 2004) ................. 15

*Manual for Complex Litigation*, Fourth (2004) ........................... 13, 14, 19

## NOTICE OF MOTION AND MOTION

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on October 3, 2013 at 1:30pm, or as soon thereafter as the matter may be heard in Courtroom 8 of the above-entitled court, Plaintiffs Michael Devine, Mark Fichtner, Siddharth Hariharan, Brandon Marshall and Daniel Stover (collectively "Plaintiffs" or "Named Plaintiffs") hereby move, pursuant to Federal Rule of Civil Procedure 23(e), for entry of an Order:

1.      Certifying a settlement class;

2.      Preliminarily approving the settlement agreement reached with: (a) both Lucasfilm Ltd. and Pixar (the "Lucas/Pixar Settlement," attached as Exhibit 1 to the Declaration of Joseph R. Saveri in Support of Plaintiffs' Motion for Preliminary Approval of Class Action Settlements ("Saveri Decl.")); and (b) Intuit Inc. (the "Intuit Settlement," attached as Exhibit 1 to the Declaration of Kelly M. Dermody in Support of Plaintiffs' Motion for Preliminary Approval of Class Action Settlements ("Dermody Decl.")) (collectively, the "Settlements");

3.      Directing distribution of notice of the Settlements to the class;

4.      Appointing Heffler Claims Group as the claims administrator; and

5.      Scheduling a hearing for final approval of the Settlements.

This motion is made on the grounds that the Settlements are the product of arm's-length, good-faith negotiations; are fair, reasonable, and adequate to the Class; and should be preliminarily approved, as discussed in the attached Memorandum.

This motion is based on this Notice of Motion and Unopposed Motion, the supporting Memorandum of Points and Authorities (below), the accompanying Declarations of Joseph R. Saveri and Kelly M. Dermody, and exhibits attached thereto, the argument of counsel, and all papers and records on file in this matter.

## MEMORANDUM IN SUPPORT OF MOTION

### I.   INTRODUCTION

Plaintiffs Michael Devine, Mark Fichtner, Siddharth Hariharan, Brandon Marshall and Daniel Stover (collectively, "Plaintiffs" or "Named Plaintiffs") respectfully seek certification of a settlement class and request that the Court grant preliminary approval of the Settlements reached with: (a) both Lucasfilm Ltd. and Pixar (the "Lucas/Pixar Settlement," attached as Exhibit 1 to the Declaration of Joseph R. Saveri in Support of Plaintiffs' Motion for Preliminary Approval of Class Action Settlements ("Saveri Decl.")); and (b) Intuit Inc. (the "Intuit Settlement," attached as Exhibit 1 to the Declaration of Kelly M. Dermody in Support of Plaintiffs' Motion for Preliminary Approval of Class Action Settlements ("Dermody Decl.")) (collectively, the "Settlements").

The Settlements will resolve all of the claims of the proposed class of technical employees, as that Class has been defined by Plaintiffs in their Supplemental Motion for Class Certification[1] (the "Class" or "Technical Class"), for settlement purposes and only as against Intuit, Pixar, and Lucasfilm (the "Settling Defendants").  In other words, the proposed settlement Class includes the same members as the proposed litigation Class.  Plaintiffs' claims against the other four Defendants—Adobe, Apple, Google, and Intel (the "Non-Settling Defendants")—on behalf of the same Class will proceed.  The Settlements preserve Plaintiffs' right to litigate against the Non-Settling Defendants for the entire amount of Plaintiffs' damages based on joint and several liability under the antitrust laws.  The Lucas/Pixar Settlement creates an all-cash fund of $9,000,000 and the Intuit Settlement creates an all-cash fund of $11,000,000, for a total of $20,000,000 (the "Settlement Fund") for the benefit of the Class.  As a point of reference, Intuit, Lucasfilm, and Pixar together account for less than 8% of Class members, and together account for approximately 5% of total Class compensation.  (Oct. 1, 2012 Leamer Rpt. at p.23; Dkt. 190.)

Plaintiffs and the Settling Defendants reached the Settlements through hard-fought, arm's-

---

[1] *See* Supp. Mot. at iii (Dkt. 418); Oct. 1, 2012 Expert Report of Edward Leamer, App. B (Dkt. 190).

1   length negotiations after more than two years of litigation, including: substantial investigation by

2   Class Counsel; briefing, argument, and denial of Defendants' motions to dismiss (Apr. 18, 2012

3   Order; Dkt. 120); the completion of extensive fact discovery, including the taking of 100

4   depositions, the review of millions of pages of documents, and analysis of over 15 gigabytes of

5   data produced by Defendants; and two rounds of class certification briefing and argument,

6   including the exchange of eight expert reports by four economists.  (Dermody Decl. ¶ 6; Saveri

7   Decl. ¶ 8.)  The proposed notice provides Class members with the best notice practicable under

8   the circumstances and will allow each Class member a full and fair opportunity to evaluate the

9   Settlements and decide whether to participate.  The Settling Defendants do not oppose this motion

10  and will cooperate in the settlement process.

11       By this motion, Plaintiffs request that the Court: (1) certify a Settlement Class; (2)

12  preliminarily approve the Settlements; (3) approve the proposed plan of notice to the Class; (4)

13  appoint Heffler Claims Group as the Claims Administrator; (5) set a schedule for disseminating

14  notice to Class members, as well as deadlines to comment on or object to the Settlements, and

15  schedule a hearing pursuant to Rule 23(e) of the Federal Rules of Civil Procedure to determine

16  whether the proposed Settlements are fair, reasonable, and adequate and should be finally

17  approved.  Prior to final approval, Plaintiffs will also request an order of the Court authorizing

18  payment from the Settlement Fund of incurred litigation costs totaling $3,593,000, and an

19  advancement for trial-related costs in the amount of $1,200,000.

20  **II.    PROCEDURAL HISTORY**

21       The five named Plaintiffs are former technical employees of Defendants.  Like the Class

22  they seek to represent, each worked for a Defendant while that Defendant allegedly participated

23  in at least one express unlawful agreement with another Defendant.  Plaintiffs challenge

24  agreements among Defendants—all horizontal competitors for the services of Plaintiffs and

25  members of the proposed Class—to fix and suppress the compensation of their employees.[2]  The

26  _____

27  [2] The litigation commenced on May 4, 2011 when Plaintiff Hariharan filed his complaint in
    Alameda County Superior Court.  On May 23, 2011, Defendants removed the *Hariharan* case to

28  U.S. District Court for the Northern District of California.  (Dkt. 1.)  Four cases were later filed in
    *Footnote continued on next page*

NOTICE OF MOTION AND
MOTION ISO PRELIMINARY SETTLEMENT
APPROVAL; NO. 11-CV-2509-LHK

1  complaint alleges that Defendants entered into the following types of express agreements:

2  (1) illegal agreements not to recruit each other's employees; (2) illegal agreements to notify each

3  other when making an offer to another's employee; and (3) illegal agreements that, when offering

4  a position to another company's employee, neither company would counteroffer above the initial

5  offer.  (Complaint ¶¶ 55-107.)  Plaintiffs also allege that each Defendant entered into,

6  implemented, and enforced each express agreement with knowledge of the other Defendants'

7  participation, and with the intent of accomplishing the conspiracy's objective: to reduce employee

8  compensation and mobility by eliminating competition for skilled labor.  (*Id.* ¶¶ 55, 108-110.)

9  Plaintiffs seek compensation for violations of Section 1 of the Sherman Act, 15 U.S.C. § 1 and

10  the Cartwright Act, Cal. Bus. & Prof. Code §§ 16720, *et seq.*  (*Id.* ¶¶ 119-164.)

11         After the Court consolidated the Plaintiffs' individual lawsuits, Plaintiffs filed their

12  Consolidated Amended Complaint on September 13, 2011.  (Dkt. 65.)  Defendants challenged the

13  pleadings.  All Defendants jointly and Lucasfilm separately moved to dismiss Plaintiffs' claims.

14  (Dkts. 79 and 83.)  The Court denied both motions, with the exception that Plaintiffs' UCL claim

15  for restitution and disgorgement was dismissed for failure to allege a vested interest.  (Apr. 18,

16  2012 Order; Dkt. 120.)

17         After adjustments to the case management schedule, Plaintiffs filed their first motion for

18  class certification on October 1, 2012.  (Pls.' Mot. For Class Cert.; Dkt. 187.)  Plaintiffs proposed

19  an "All-Employee Class," as well as an alternative class of salaried technical, creative, and

20  research and development employees: the "Technical Class."  (*Id.* at 1.)  After the Court took the

21  motion under submission, Plaintiffs continued discovery, conducting numerous depositions, and

22  collecting voluminous documents.  The Court required the parties to file discovery status reports

23  on an ongoing basis. (Jan. 17, 2013 Case Management Orders; Dkts. 282 and 350.)

24  _____

*Footnote continued from previous page*
25  Santa Clara County Superior Court, each of which Defendants subsequently removed.  On
26  July 27, 2011, all five cases were related before Judge Armstrong.  (Dkt. 52.)  On August 4, 2011,
   Judge Armstrong transferred all five cases to the San Jose Division.  (Dkt. 58.)  Pursuant to
27  Stipulated Pretrial Order No. 1 as Modified, the Court consolidated all five cases on
   September 12, 2011.  (Dkt. 64.)
28

1    The parties completed broad, extensive, and thorough discovery related to both class

2    certification and the merits after the Court lifted a discovery stay in January 2012.  Plaintiffs

3    served 75 document requests, for which Defendants collectively produced over 325,000

4    documents (over 3.2 million pages), and took 91 depositions of Defendant witnesses.  (Dermody

5    Decl. ¶ 6.)  Defendants also propounded document requests, for which Plaintiffs produced over

6    31,000 pages, and took the depositions of all five Plaintiffs.  (*Id.*)  With expert assistance,

7    Plaintiffs' counsel also analyzed vast amounts of computerized employee compensation and

8    recruiting data, including nearly 1,000 files of employment related data exceeding 15 gigabytes.

9    (*Id.*)  The discovery process, which is now complete as to all non-expert discovery, has been

10   thorough, and it required the parties to engage in numerous and extensive meetings and

11   conferences concerning the scope of discovery and the analysis regarding the various electronic

12   data, policy documents, and other files produced.  (*Id.*)

13   On April 5, 2013, the Court issued its Order Granting in Part and Denying in Part

14   Plaintiffs' Motion for Class Certification.  (Dkt. 382.)  The Court found that Plaintiffs satisfied

15   Federal Rule of Civil Procedure 23(a), and satisfied Rule 23(b)(3) as to conspiracy and damages.

16   The Court found that "the adjudication of Defendants' alleged antitrust violation will turn on

17   overwhelmingly common legal and factual issues."  (*Id.* at 13.)  Furthermore, after a detailed

18   inquiry, the Court held that a statistical regression analysis prepared by Plaintiffs' expert

19   "provides a plausible methodology for showing generalized harm to the class as well as

20   estimating class-wide damages."  (*Id.* at 43.)

21   The Court requested further briefing on whether the Rule 23(b)(3) predominance standard

22   was met with respect to the common impact on the proposed class.  (*Id.* at 45.)  Though the Court

23   did not find predominance satisfied as to common impact, the Court acknowledged that the

24   documentary evidence "weighs heavily in favor of finding that common issues predominate over

25   individual ones for the purpose of being able to prove antitrust impact."  (*Id.* at 33.)  The Court

26   requested additional briefing to address this remaining concern: "the Court believes that, with the

27   benefit of discovery that has occurred since the hearing on this motion, Plaintiffs may be able to

28   offer further proof to demonstrate how common evidence will be able to show class-wide impact

to demonstrate why common issues predominate over individual ones." (*Id.* at 45.)

Plaintiffs filed a Supplemental Motion for Class Certification to address the Court's request.  (Dkts. 418, 455.)  Plaintiffs marshaled additional documentary evidence, testimony, and expert analyses.  (Decl. of Dean M. Harvey, Dkt. 418-1; Decl. of Lisa J. Cisneros, Dkt. 418-2; Leamer Supp., Dkt. 418-4; Hallock Rpt., Dkt. 418-3; Decl. of Anne B. Shaver, Dkt. 456; and Leamer Supp. Reply, Dkt. 457.)  While Plaintiffs respectfully submitted that the evidence supported certification of either the class of all-salaried employees or the Technical Class previously proposed, there was powerful evidence that the no-cold calling agreements at issue in this case were designed substantially to disrupt recruiting of Technical Class employees. Accordingly, Plaintiffs focused their supplemental briefing and analysis on demonstrating impact to all or nearly all of the Technical Class.  A hearing on the Supplemental Motion was held on August 8, 2013, and the matter is under submission.

## III.   SETTLEMENT NEGOTIATIONS

Plaintiffs and the Settling Defendants reached the Settlements under the supervision of experienced mediator David A. Rotman.  After informal negotiations did not produce any settlements, Plaintiffs and all Defendants conducted a day-long mediation supervised by Mr. Rotman on June 26, 2013.  (Dermody Decl. ¶ 8; Saveri Decl. ¶ 4.)  After several weeks of follow-up negotiations, Plaintiffs reached a settlement agreement with both Lucasfilm and Pixar on July 12, 2013 (Dkt. 453), and reached another settlement agreement with Intuit on July 30, 2013 (Dkt. 489).  Afterward, Plaintiffs and the Settling Defendants exchanged several drafts of the final Settlements and related settlement documents before the parties came to final agreement as to each.  (Dermody Decl. ¶ 9; Saveri Decl. ¶¶ 4-7.)  At all times during the negotiation process, counsel for Plaintiffs and the Settling Defendants bargained vigorously and at arm's length on behalf of their clients.  (Dermody Decl. ¶ 10; Saveri Decl. ¶ 9.)

## IV.   TERMS OF THE SETTLEMENTS

The Settlements resolve all claims of Plaintiffs and the Class against the Settling Defendants.  The details are contained in the attached Settlements.  (Saveri Decl., Ex. 1

("Lucas/Pixar Settlement"); Dermody Decl., Ex. 1 ("Intuit Settlement").)  The key terms of the Settlements are described below.

## A.      The Class

Both Settlements define the settlement Class in the same way as the proposed Class in Plaintiffs' pending Supplemental Motion for Class Certification.  (*See* Supp. Mot. at iii (Dkt. 418) and Oct. 1, 2012 Expert Report of Edward Leamer, App. B (Dkt. 190).)  That is:

> All natural persons who work in the technical, creative, and/or research and development fields that were employed on a salaried basis in the United States by one or more of the following: (a) Apple from March 2005 through December 2009; (b) Adobe from May 2005 through December 2009; (c) Google from March 2005 through December 2009; (d) Intel from March 2005 through December 2009; (e) Intuit from June 2007 through December 2009; (f) Lucasfilm from January 2005 through December 2009; or (g) Pixar from January 2005 through December 2009.  Excluded from the Class are: retail employees; corporate officers, members of the boards of directors, and senior executives of all Defendants.

(Lucas/Pixar Settlement § I.A; Intuit Settlement § I.A.)  Both Settlements also attach a list of all job titles included in this Class.  (Lucas/Pixar Settlement, Ex. E; Intuit Settlement, Ex. D.)

## B.      Settlement Sums and Additional Consideration

Lucasfilm and Pixar will pay $9,000,000 and Intuit will pay $11,000,000 into an escrow account (the "Settlement Fund"), held and administered by an escrow agent.  Class Counsel have selected Citibank, N.A. to be appointed the escrow agent, with the consent of the Settling Defendants and with approval of the Court.  The Settlement Fund will be utilized in accordance with applicable orders of the Court for potential payments to Class Members, as well as for notice and claims administration costs, Named Plaintiff service awards, and Court-approved attorneys' fees, costs, and litigation expenses.

As additional consideration, the Settling Defendants have agreed to cooperate with Class Counsel in the further prosecution of their claims against the Non-Settling Defendants.  Specifically, the Settling Defendants have agreed, as needed, to authenticate documents and to provide the last known contact information for current or former employees for notice or subpoena purposes to the extent consistent with California law.  (Lucas/Pixar Settlement § III.B;

Intuit Settlement § III.B.)

### C.    <u>Monetary Relief To Class Members</u>

Each Class member who submits a timely and valid claim form is eligible to receive a share of the $20 million Settlement Fund, based upon the following plan of allocation.

Class members who submit a claim form will be eligible to receive a share of the Settlement Fund based on a formula utilizing each claimant's base salary paid while working in a Class position within the Class period as set forth in the Class definition.  (Lucas/Pixar Settlement, Ex. C; Intuit Settlement, Ex. C.)  In other words, each Class member's share of the Settlement Fund is a fraction, with the Claimant's base salary during the Class Period as the numerator and the total base salary during the Class Period of all Claimants as the denominator:

$$\frac{\text{approved claimant's individual total base salary paid in class positions during the Class Period}}{\text{total of base salaries paid to all approved Claimants in class positions during the Class Period}}$$

The Claimant's fractional amount will be multiplied against the Settlement Fund net of all reductions for costs and taxes, including court-approved costs, service awards, and attorneys' fees.  (*Id.*)  Because each claimant's fractional amount will depend in part on how many other Class members file claim forms, fractional amounts will increase if less than 100% of Class members participate as claimants.  There will be no reversion of unclaimed funds to any Settling Defendant.  (*Id.*)

### D.    <u>Release of All Claims Against the Settling Defendants and Reservation of Rights</u>

In exchange for the Settling Defendants' monetary and cooperation consideration, upon entry of a final judgment approving the proposed Settlements, Plaintiffs will release the Settling Defendants of all claims related to the alleged conduct giving rise to this litigation.  (Lucas/Pixar Settlement § V; Intuit Settlement § V.)  The settlements preserve Plaintiffs' right to litigate against the non-settling Defendants for the entire amount of Plaintiffs' damages based on joint

and several liability under the antitrust laws. *See*, *e.g.*, *In re Corrugated Container Antitrust Litig.*, Case No. M.D.L. 310, U.S. Dist. LEXIS 9687, at *49-50 (S.D. Tex. June 4, 1981).  Under the Settlements, the Non-Settling Defendants remain liable for the full amount of Class damages, including damages resulting from conduct by the Settling Defendants.

### E.    Attorneys' Fees and Costs

The Settlements recognize that Class Counsel may seek attorneys' fees and reimbursement of costs and expenses incurred in the prosecution of this action.  (Lucas/Pixar Settlement § VII; Intuit Settlement § VII.)  Pursuant to the Settlements, Class Counsel will look solely to the Settlement Fund for satisfaction of such fees and costs.  (*Id.*)  Class Counsel do not seek attorneys' fees at this time.  Subject to Court approval, Class Counsel will seek an appropriate portion of the Settlement Fund to pay for costs and expenses incurred during the prosecution of the case against the Non-Settling Defendants, discussed more fully in Part VII, below.

### F.    Class Representative Service Payments

Class Counsel will also seek reasonable service award payments for each of the Named Plaintiffs for their services as Class representatives, to be paid from the Settlement Fund at the time when the Fund is distributed and claims are paid.  The Lucas/Pixar Settlement and the Intuit Settlement each provide for a service award of $10,000 for each Named Plaintiff.  (Lucas/Pixar Settlement § VI; Intuit Settlement § VI.)  These proposed service awards will be in addition to any monetary recovery to the Named Plaintiffs pursuant to the plan of allocation.

These payments are intended to recognize: (a) the time and effort the Named Plaintiffs have expended on behalf of the Class in assisting Class Counsel with the prosecution of their and the Class's claims and the consequent value they have conferred to the Class; and (b) the exposure and risk they have incurred by participating and taking a leadership role in this high-profile litigation.  *See*, *e.g.*, *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 463 (9th Cir. 2000) (approving incentive awards to class representatives); *Staton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003) ("[N]amed plaintiffs . . . are eligible for reasonable incentive payments").

Here, the Named Plaintiffs have expended substantial time and effort in assisting Class

1  Counsel with the prosecution of the Class's claims.  They have responded to extensive document

2  requests; produced over 31,000 pages of documents; responded to interrogatories; given full-day

3  depositions; attended hearings and the mediation; and have otherwise devoted many hours

4  consulting with Class Counsel regarding fact development and strategy.  (Dermody Decl. ¶¶ 13-

5  14.)  The Named Plaintiffs—all of whom worked in technical positions for Defendants—have

6  also incurred the risks and costs of taking on leadership roles in this visible litigation against

7  seven of the most powerful technology firms in the world.  Class representative service awards

8  are "intended to compensate class representatives for work done on behalf of the class, to make

9  up for financial or reputational risk undertaken in bringing the action, and, sometimes, to

10  recognize their willingness to act as a private attorney general." *Rodriguez v. W. Publ'g Corp.*,

11  563 F.3d 948, 958-59 (9th Cir. 2009).  The service awards provided here are reasonable and

12  appropriate.  *See*, *e.g.*, *Glass v. UBS Fin. Servs., Inc.*, 2007 U.S. Dist. LEXIS 8476, at *52 (N.D.

13  Cal. Jan. 26, 2007) (approving $25,000 enhancement to each former employee class

14  representative), *aff'd*, 331 Fed. Appx. 452, 455 (9th Cir. 2009); *Van Vranken v. Atl. Richfield Co.*,

15  901 F. Supp. 294, 299 (N.D. Cal. 1995) (approving $50,000 award to plaintiffs).

16      **A.    Class Member Privacy**

17      The Settling Defendants have agreed to maintain confidentiality regarding whether and

18  how Class members respond to the Class notice.  (Lucas/Pixar Settlement § II.A and Ex. B at 10;

19  Intuit Settlement § II.A and Ex. B and 10.)  The settlement checks will be handled by the Heffler

20  Claims Group (the "Claims Administrator"), an independent and experienced Claims

21  Administrator.  (Saveri Decl. ¶ 11.)  Opt-out requests and comments on the Settlements

22  (including objections) will also be sent to the Claims Administrator.  (Lucas/Pixar Settlement §

23  II.D; Intuit Settlement § II.D.)  The Claims Administrator will report to the Settling Defendants'

24  outside counsel and Class Counsel regarding opt-out requests and comments (including

25  objections) submitted.  (*Id.*)

26      The Settling Defendants have agreed not to share this information with the managers of

27  Class members.  (Lucas/Pixar Settlement, Ex. B at 10-11; Intuit Settlement, Ex. B at 10-11.)  The

28  Settling Defendants have also agreed that that no information about Class member submissions

1    (or lack thereof) will be shared within their companies unless there is a need-to-know in order to

2    implement the Settlements.  (*Id.*)  For example, certain information may need to be viewed by a

3    small number of employees in the Settling Defendants' human resources departments who may

4    need to confirm employee data.  The Settlements will protect Class members' privacy.

5    **V.     LEGAL ARGUMENT**

6        **A.     Class Action Settlement Procedure**

7        A class action may not be dismissed, compromised, or settled without the approval of the

8    Court.  Judicial proceedings under Federal Rule of Civil Procedure 23 have led to a defined

9    procedure and specific criteria for approval of class action settlements.  The Rule 23(e) settlement

10   approval procedure describes three distinct steps:

11       1.     Certification of a settlement class and preliminary approval of the proposed

12   settlement;

13       2.     Dissemination of notice of the settlement to all affected class members; and

14       3.     A formal fairness hearing, also called the final approval hearing, at which class

15   members may be heard regarding the settlement, and at which counsel may introduce evidence

16   and present argument concerning the fairness, adequacy, and reasonableness of the settlement.

17       This procedure safeguards class members' procedural due process rights and enables the

18   Court to fulfill its role as the guardian of class interests.  *See* 4 *Newberg on Class Actions*

19   §§ 11.22, *et seq.* (4th ed. 2002) ("*Newberg*") (describing class action settlement procedure).

20       By way of this Motion, the parties request that the Court take the first step in the

21   settlement approval process and certify a settlement class and preliminarily approve the proposed

22   Settlement.  Plaintiffs further request the Court appoint the Named Plaintiffs as Class

23   representatives.

24       **B.     Standards For Preliminary Settlement Approval**

25       Rule 23(e) requires court approval of any settlement of claims brought on a class basis.

26   "[T]here is an overriding public interest in settling and quieting litigation . . . particularly . . . in

27   class action suits[.]"  *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976); *see also*

28   *Churchill Village, LLC v. General Elec.*, 361 F.3d 566, 576 (9th Cir. 2004); *In re Pacific Enters.*

NOTICE OF MOTION AND
MOTION ISO PRELIMINARY SETTLEMENT
APPROVAL; NO. 11-CV-2509-LHK

*Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995); and *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992).

The purpose of the Court's preliminary evaluation of the proposed settlement is to determine whether it is within "the range of reasonableness," and thus whether notice to the Class of the terms and conditions of the settlement, and the scheduling of a formal fairness hearing, are worthwhile. Preliminary approval should be granted where "the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class and falls within the range of possible approval." *In re NASDAQ Market Makers Antitrust Litig.*, 176 F.R.D. 99, 102 (S.D.N.Y. 1997). Application of these factors here support an order granting the motion for preliminary approval.

The approval of a proposed settlement of a class action is a matter of discretion for the trial court. *Churchill Village, L.L.C.*, 361 F.3d at 575. In exercising that discretion, however, courts recognize that as a matter of sound policy, settlements of disputed claims are encouraged and a settlement approval hearing should "not be turned into a trial or rehearsal for trial on the merits." *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982), *cert. denied sub nom. Byrd v. Civil Serv. Comm'n*, 459 U.S. 1217 (1983). Furthermore, courts must give "proper deference" to the settlement agreement, because "the court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1988) (quotations omitted).

To grant preliminary approval of these proposed Settlements, the Court need only find that they fall within "the range of reasonableness." *Newberg* § 11.25. The *Manual for Complex Litigation (Fourth)* (2004) ("*Manual*") characterizes the preliminary approval stage as an "initial evaluation" of the fairness of the proposed settlement made by the court on the basis of written submissions and informal presentation from the settling parties. *Manual* § 21.632. A proposed

- 12 -

1  Settlement may be finally approved by the trial court if it is determined to be "fundamentally fair,

2  adequate, and reasonable." *City of Seattle*, 955 F.2d at 1276.  While consideration of the

3  requirements for *final* approval is unnecessary at this stage, all of the relevant factors weigh in

4  favor of the Settlement proposed here.  As shown below, the proposed Settlements are fair,

5  reasonable and adequate.  Therefore, the Court should allow notice of them to be disseminated to

6  the Class.

7      **C.**    **The Proposed Settlements Are Within The Range Of Reasonableness**

8      Plaintiffs' proposed Settlements meet the standards for preliminary approval.  First, the

9  settlements are entitled to "an initial presumption of fairness" because they are the result of

10  arm's-length negotiations among experienced counsel.  *Newberg* § 11.41.  (Dermody Decl. ¶¶ 10-

11  11; Saveri Decl. ¶¶ 4-10.)  Second, the consideration agreed to—a total of $20 million—is

12  substantial, particularly in light of the fact that the Settling Defendants collectively account for

13  less than 8% of Class members, and together account for approximately 5% of total Class

14  compensation.  (Oct. 1, 2012 Leamer Rpt. at p.23; Dkt. 190.)  Third, because the Non-Settling

15  Defendants remain jointly and severally liable for all damages caused by the conspiracy,

16  including damages from the Settling Defendants' conduct, the Settlements do not reduce the total

17  amount of damages recoverable from the Non-Settling Defendants in this litigation.  *See In re*

18  *Corrugated Container Antitrust Litig.*, Case No. M.D.L. 310, 1981 WL 2093, at *17 (S.D. Tex.

19  June 4, 1981).  Fourth, the Settlements call for the Settling Defendants to cooperate with

20  Plaintiffs in terms of authenticating documents and providing the last known contact information

21  for current or former employee-witnesses for notice or subpoena purposes to the extent consistent

22  with California law.  *See In re Mid-Atlantic Toyota Antitrust Litig.*, 564 F. Supp. 1379, 1386 (D.

23  Md. 1983) (a defendant's agreement to cooperate with plaintiffs "is an appropriate factor for a

24  court to consider in approving a settlement").  The proposed Settlements are fair, reasonable, and

25  adequate.

26      **D.**    **The Proposed Settlement Class Satisfies Rule 23**

27      Before granting preliminary approval of a settlement, the Court must determine that the

28  proposed settlement presents a proper class for settlement purposes.  *See Manual* § 21.632;

1   *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 620 (1997).  Rule 23 governs the issue of class

2   certification, whether the proposed class is a litigated class or, as here, a settlement class.  All

3   criteria for certification of a class for litigation purposes, except manageability, apply to

4   certification for settlement purposes.  *Amchem Prods.*, 521 U.S. at 620.  There is a "strong

5   presumption in favor of voluntary settlement agreements" that is "especially strong in class

6   actions and other complex cases because they promote the amicable resolution of disputes and

7   lighten the increasing load of litigation faced by the federal courts."  *Sullivan v. DB Investments,*

8   *Inc., et al.*, 667 F.3d 273, 311 (3d Cir. 2011) (en banc), *cert. denied*, *Murray v. Sullivan*, No. 11-

9   1111, 2012 U.S. LEXIS 2656 (Apr. 2, 2012) (affirming certification of two nationwide antitrust

10   settlement classes) (quotation and internal edit omitted).

11       Certification is appropriate where the proposed class and the proposed class

12   representatives meet the four prerequisites of Rule 23(a)—numerosity, commonality, typicality,

13   and adequacy of representation.  As the Court has recognized, it is uncontested that Plaintiffs

14   satisfy the requirements of Rule 23(a) with respect to the same proposed Class.  (Apr. 5, 2013

15   Order at 9; Dkt. 382.)  Plaintiffs continue to satisfy these requirements for the reasons stated in

16   Plaintiffs' initial Class Certification Motion.  (Class. Cert. Mot. at 4-14.)

17       In addition, certification of a class action for damages requires a showing that "questions

18   of law and fact common to class members predominate over any questions affecting only

19   individual members, and that a class action is superior to other available methods for fairly and

20   efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  This Court has held that

21   Plaintiffs have satisfied predominance as to conspiracy and damages.  The Court found that "the

22   adjudication of Defendants' alleged antitrust violation will turn on overwhelmingly common legal

23   and factual issues."  (Apr. 5, 2013 Order at 13.)  Furthermore, after a detailed inquiry, the Court

24   held that a conduct regression prepared by Plaintiffs' expert "provides a plausible methodology

25   for showing generalized harm to the class as well as estimating class-wide damages."  (*Id.* at 43.)

26       Plaintiffs have also demonstrated predominance with respect to the common impact of

27   Defendants' alleged misconduct for the reasons set forth in Plaintiffs' Supplemental Class

28   Certification briefs and related documents, testimony, and expert analysis.  These filings "offer

1   further proof to demonstrate how common evidence will be able to show class-wide impact to

2   demonstrate why common issues predominate over individual ones." (Apr. 5, 2013 Order at 45.)

3   In the settlement context, moreover, the "district court need not 'envision the form that a trial'

4   would take, nor consider 'the available evidence and the method or methods by which plaintiffs

5   propose to use the evidence to prove' the disputed element at trial." *Sullivan*, 667 F.3d at 305-06.

6          The superiority prong of Rule 23(b)(3) requires balancing the merits of a class action with

7   available alternate methods of adjudication. *See Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227,

8   1234 (9th Cir. 1996). "[I]f common questions are found to predominate in an antitrust action,

9   then courts generally have ruled that the superiority prerequisite of Rule 23(b)(3) is satisfied."

10  Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure: Civil*

11  *Procedure* § 1781 at 254-55 (3d ed. 2004).

12         This Court has found that "Class members' interests weigh in favor of having this case

13  litigated as a class action. In addition, the nature of Defendants' alleged overarching conspiracy

14  and the desirability of concentrating the litigation in one forum weigh heavily in favor of finding

15  that class treatment is superior to other methods of adjudication of the controversy." (Apr. 5,

16  2013 Order at 45.) Here, a class action is superior to individual litigation because it would be a

17  waste of judicial resources to require numerous separate trials relating to the same legal dispute.

18  *See In re Brand Name Prescription Drugs Antitrust Litig.*, Case No. 94 C 897, 1994 U.S Dist.

19  LEXIS 16658, at *15 (N.D. Ill. Nov. 18, 1994) ("We fail to see the logic in defendants'

20  contention that 50,000 individual actions are less complex than a single action."). The damages

21  alleged by individual members of the class are relatively small, and the expense and burden of

22  individual litigation would make it impracticable for them to seek redress individually. *See In re*

23  *Static Random Access (SRAM) Antitrust Litig., No. C07-01819 CW,* 2008 U.S. Dist. LEXIS

24  107523, at * 34-35 (N.D. Cal. Sept. 29, 2008). Moreover, the interests of class members in

25  individually controlling the prosecution of separate claims are outweighed by the efficiency of the

26  class mechanism. Finally, separate adjudication of claims creates a risk of inconsistent rulings,

27  which further favors class treatment. Therefore, a class action is the superior method of

28  adjudicating the claims raised in this case.

**E.     Co-Lead Class Counsel Should be Confirmed As Settlement Class Counsel**

"An order certifying a class action . . . must appoint class counsel under Rule 23(g)."  Fed. R. Civ. P. 23(c)(1)(B).  On April 5, 2013, the Court appointed Lieff, Cabraser, Heimann & Bernstein, LLP and the Joseph Saveri Law Firm, Inc. as Co-Lead Counsel.  (Apr. 5, 2013 Order at 47.)  The work done by Co-Lead Counsel since their appointment provides a substantial basis for the Court's earlier finding that counsel satisfy each applicable criterion under Rule 23(g), and are well qualified to serve as Class Counsel.  (Dermody Decl. ¶¶ 1-7; Saveri Decl. ¶¶ 1-8.)  Accordingly, Co-Lead Counsel should be confirmed as class counsel for purposes of the settlement.

## VI.     PROPOSED PLAN OF NOTICE

Rule 23(e)(1) states that, "[t]he court must direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise."  Notice of a proposed settlement must inform class members of the following:  (1) the nature of the pending litigation; (2) the general terms of the proposed settlement; (3) that complete information is available from the court files; and (4) that any class member may appear and be heard at the fairness hearing.  *See Newberg* § 8.32.  The notice must also indicate an opportunity to opt-out, that the judgment will bind all class counsel who do not opt-out, and that any member who does not opt-out may appear through counsel. Fed. R. Civ. P. 23(c)(2)(B).  The form of notice is "adequate if it may be understood by the average class member."  *Newberg* § 11.53.  Notice to the class must be "the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."  *Amchem Prods.*, 521 U.S. at 617.

Within twenty days after the Court grants preliminary approval, the Settling Defendants have agreed to deliver to the Claims Administrator in an electronic database format, from the information in their human resources databases, for the Class period, the full legal name, social security number, all known email addresses, last known physical address, dates of employment in that Defendant's Class job titles, and associated base salary by date and relevant Class job title of each Class member who was employed by that Defendant.  (Lucas/Pixar Settlement§ II.B; Intuit

- 16 -

1   Settlement § II.B.)  Plaintiffs seek an Order compelling the Non-Settling Defendants to produce

2   the same data on that timetable, as all of the Defendants' technical employees during the Class

3   Period are members of both Settlement Classes, and all must be given the same notice and

4   opportunity to opt out.

5          Within two weeks thereafter, the Claims Administrator shall cause the Settlement Notice

6   to be mailed by first-class mail, postage prepaid, and/or emailed to Class Members pursuant to the

7   procedures described in the Settlement Agreement, and to any potential Class Member who

8   requests one; and, in conjunction with Class Counsel, shall cause a case-specific internet website

9   to become operational with case information, court documents relating to the Settlements, the

10  Notice, and electronic claim filing capability. (Lucas/Pixar Settlement§ II.B; Intuit Settlement §

11  II.B.)  At least thirty days prior to the Final Approval Hearing, the Claims Administrator will file

12  with the Court an Affidavit of Compliance with Notice Requirements.  (Lucas/Pixar Settlement§

13  II.E; Intuit Settlement § II.E.)

14         Class members will have until forty-five days from the date the Notice period begins

15  (established by the first day upon which the Claims Administrator provides mail and e-mail

16  Notice to Class Members ["Notice date"]) to opt-out (the "Opt-Out Deadline") of the proposed

17  Settlements.  (Lucas/Pixar Settlement § II.D; Intuit Settlement § II.D.)  Any Class member who

18  wishes to be excluded (opt out) from the Settlement Class must send a written Request for

19  Exclusion to the Claims Administrator on or before the close of the Opt-Out Deadline.

20  (Lucas/Pixar Settlement § II.D; Intuit Settlement § II.D.)

21         The content of the Proposed Class Notice fully complies with due process and Rule 23.

22  ((Lucas/Pixar Settlement, Ex. B; Intuit Settlement, Ex. B.)  It provides the definition of the Class,

23  describes the nature of the action, including the class claims, and explains the procedure for

24  making comments and objections.  The Class Notice describes the terms of the Settlements with

25  the Settling Defendants, informs Class members regarding the plan of allocation, and advises

26  Class members that the funds will be distributed at a future time to be determined.  The Class

27  Notice provides specifics regarding the date, time, and place of the final approval hearing, and

28  informs class members that they may enter an appearance through counsel.  The Class Notice also

NOTICE OF MOTION AND
MOTION ISO PRELIMINARY SETTLEMENT
APPROVAL; NO. 11-CV-2509-LHK

1  informs Class members how to exercise their rights and make informed decisions regarding the

2  proposed Settlements, and tells them that if they do not opt out, the judgment will be binding

3  upon them.  The Class Notice further informs the Class about the payment of Plaintiffs'

4  attorneys' fees and costs.  Courts have approved Class Notice even when they have provided only

5  general information about a settlement.  *See, e.g.*, *Mendoza v. United States*, 623 F.2d 1338, 1351

6  (9th Cir. 1980) ("very general description of the proposed settlement" satisfies standards).

7  **VII.   ALLOCATION AND USE OF SETTLEMENT FUNDS**

8          A plan of allocation of class settlement funds is subject to the "fair, reasonable and

9  adequate" standard that applies to approval of class settlements.  *In re Citric Acid Antitrust Litig.*,

10  145 F. Supp. 2d 1152, 1154 (N.D. Cal. 2001).  "A plan of allocation that reimburses class

11  members based on the extent of their injuries is generally reasonable."  *In re Oracle Sec. Litig.*,

12  1994 U.S. Dist. LEXIS 21593, at *3 (N.D. Cal. June 18, 1994).  Here, as explained above,

13  Plaintiffs propose that the Settlement Fund be allocated based upon total base salary received

14  during the conspiracy period.  Such *pro rata* distributions are "cost-effective, simple and

15  fundamentally fair."  *In re Airline Ticket Comm'n Antitrust Litig.*, 953 F. Supp. 280, 285 (D.

16  Minn. 1997).

17          As noted above, the Settlements specify that Class Counsel may seek attorneys' fees,

18  expenses and costs, which are to be paid solely from the Settlement Fund.  (Lucas/Pixar

19  Settlement § VII; Intuit Settlement § VII.)  Plaintiffs propose that distribution of the Settlement

20  Fund to Class members be deferred until the termination of the case, or until additional

21  settlements occur, because piecemeal distribution of each settlement is expensive, time-

22  consuming, and likely to cause confusion among Class members.  Deferring distribution of

23  settlement proceeds to Class members in the case of a partial settlement is common practice,

24  particularly where, as here, certain Defendants settle while other Defendants remain.  *See, e.g.*,

25  *Manual for Complex Litigation,* Fourth § 21.651 (2004) ("Funds from the settlements typically

26  are placed in income-producing trusts established by class counsel for the benefit of the class and

27  held until the case is fully resolved.").  In the meantime, the Settlement Fund will earn interest for

28  the benefit of the Class.

1124282.7                                        - 18 -

At the time of filing of the motion for final approval, Class Counsel intend to move the Court for an order authorizing payment of incurred litigation expenses and costs totaling $3,593,000 million, and anticipated (future) trial-related costs and administrative expenses associated with the Settlement in an amount not to exceed $1,200,000.  (*See* Dermody Decl. ¶ 15.)  At that time, no attorneys' fees will be sought from the Settlement Fund.[3]  Should the Court approve both the Settlement and Class Counsel's request, the residual amount in the Settlement Fund will bear interest and remain for the benefit of the Class, and will be distributed to the Class, less Court-approved attorneys' fees and administrative expenses, at a later time.  No portion of the Settlement Fund will be distributed absent an order of this Court.

A request for reimbursement of incurred and anticipated litigation expenses and costs is routinely granted in many other large, complex class actions involving multiple defendants.  *See Manual* § 13.21 ("Such partial settlements may provide funds needed to pursue the litigation."); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. 07-01827, Dkt. No. 2474 (N.D. Cal. Feb. 18, 2011) (advancing $3 million from settlement fund to be used for future litigation expenses) (Dermody Decl., Ex. 2); *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, No. 02-md-01486, Dkt. No. 1315 (N.D. Cal. Feb. 14, 2007) (authorizing disbursement of $2 million from two settlement funds for advancement of litigation expenses) (Dermody Decl., Ex. 3); *In re High Pressure Laminates Antitrust Litig.*, No. 00-MD-1368, Dkt. No. 215 (S.D.N.Y. July 14, 2004) (granting $4 million distribution from settlement fund to reimburse class counsel for expenses incurred and to be incurred on behalf of the Class) (Dermody Decl., Ex. 4); *In re Cal. Micro Devices Sec. Litig.*, 965 F. Supp. 1327, 1337 (N.D. Cal. 1997) (approving class counsel's request for $1.5 million litigation fund "[b]ecause the remainder of the case appears to have potential value for the class") (Dermody Decl., Ex. 5); *In re Brand Name Prescription Drug Litig.*, No. 94

---

[3] To be clear, Class Counsel do not intend to waive their right to seek attorneys' fees on the two partial Settlements before the Court, but rather to defer their request.  In the meantime, the proposed Notice will inform Settlement Class members that Class Counsel will seek up to a third of the fund in fees.  The payment of attorneys' fees, and the payment of Service Awards to the Class Representatives, will be deferred along with distributions of settlement proceeds to Settlement Class Members.

1  C 897, MDL No. 997 (N.D. Ill. Feb. 18, 1998) (granting $6 million disbursement "for

2  advancement of trial preparation expenses of Class Counsel") (Dermody Decl., Ex. 6).

3  **VIII.   THE COURT SHOULD SET A FINAL APPROVAL HEARING SCHEDULE**

4          The last step in the settlement approval process is the final approval hearing, at which the

5  Court may hear all evidence and argument necessary to evaluate the proposed settlement.  At that

6  hearing, proponents of the Settlements may explain and describe their terms and conditions and

7  offer argument in support of approval and members of the Class, or their counsel, may be heard in

8  support of or in opposition to the Settlements.  Plaintiffs propose the following schedule for final

9  approval of the Settlements:

| Event | Date |
|---|---|
| Notice of Class Action Settlement to Be Mailed and Posted on Internet | Within 14 days of receipt of Class member information from Settling and Non-Settling Defendants |
| Class Counsel Motion for Costs, and Motion for Plaintiffs' Service Awards | To be completed 31 days from Notice Date |
| Opt-Out and Objection Deadline | 45 days from Notice Date |
| Postmark/Filing Deadline for Filing Claims | 120 Days from Notice Date |
| Claims Administrator Affidavit of Compliance with Notice Requirements | To be filed 30 days prior to the Final Approval Hearing |
| Motions for Final Approval | To be filed 21 days prior to Final Approval Hearing |
| Replies in Support of Motions for Final Approval, Attorneys' Fees and Costs, and Service Awards to Be Filed by Class Counsel | To be filed 7 days prior to Final Approval Hearing |
| Final Approval Hearing | _____, 2014 |

**IX.   CONCLUSION**

        Based on the foregoing, plaintiffs respectfully request that the Court:  (1) certify a

Settlement Class; (2) preliminarily approve the Settlements; (3) approve the proposed plan of

1  notice to the Class; (4) appoint Heffler Claims Group as the Claims Administrator; (5) set a

2  schedule for disseminating notice to Class members, as well as deadlines to comment on or object

3  to the Settlements; and (6) schedule a hearing pursuant to Rule 23(e) of the Federal Rules of Civil

4  Procedure to determine whether the proposed Settlements are fair, reasonable, and adequate and

5  should be finally approved.

6                                    Respectfully submitted,

7  Dated:  September 21, 2013       LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP

8

9                                   By:        */s/ Kelly M. Dermody*
                                               Kelly M. Dermody

10                                  Richard M. Heimann (State Bar No. 63607)
                                    Kelly M. Dermody (State Bar No. 171716)
11                                  Eric B. Fastiff (State Bar No. 182260)
                                    Brendan Glackin (State Bar No. 199643)
12                                  Dean Harvey (State Bar No. 250298)
                                    Anne B. Shaver (State Bar No. 255928)
13                                  Lisa J. Cisneros (State Bar No. 251473)
                                    275 Battery Street, 29th Floor
14                                  San Francisco, California  94111-3339
                                    Telephone:  415.956.1000
15                                  Facsimile:  415.956.1008

16                                  JOSEPH SAVERI LAW FIRM, INC.

17

18                                  By:        */s/ Joseph R. Saveri*
                                               Joseph R. Saveri

19                                  Joseph R. Saveri (State Bar No. 130064)
                                    Lisa J. Leebove (State Bar No. 186705)
20                                  James G. Dallal (State Bar No. 277826)
                                    JOSEPH SAVERI LAW FIRM, INC
21                                  255 California, Suite 450
                                    San Francisco, CA 94111
22                                  Telephone:  415. 500.6800
                                    Facsimile:   415. 395.9940
23

24                                  *Co-Lead Counsel for Plaintiff Class*

25

26

27

28