```
 1                    UNITED STATES DISTRICT COURT

 2                   NORTHERN DISTRICT OF CALIFORNIA

 3                          SAN JOSE DIVISION

 4

 5

 6    IN RE: HIGH-TECH EMPLOYEE          )  C-11-02509 LHK
      ANTITRUST LITIGATION,              )
                                         )  SAN JOSE, CALIFORNIA
 7    _____        )
                                         )  OCTOBER 21, 2013
 8    THIS DOCUMENT RELATES TO:          )
      ALL ACTIONS                        )  PAGES 1-76
 9    _____        )

10

                        TRANSCRIPT OF PROCEEDINGS
11               BEFORE THE HONORABLE LUCY H. KOH
                   UNITED STATES DISTRICT JUDGE
12

13    A P P E A R A N C E S:

14    FOR THE PLAINTIFFS:   JOSEPH SAVERI LAW FIRM
                            BY:  JOSEPH SAVERI
15                               JAMES G. DALLAL
                            255 CALIFORNIA STREET, SUITE 450
16                          SAN FRANCISCO, CALIFORNIA  94111

17                          LIEFF, CABRASER,
                            HEIMANN & BERNSTEIN
18                          BY:   KELLY M. DERMODY
                                  BRENDAN P. GLACKIN
19                                DEAN M. HARVEY
                                  ANNE B. SHAVER
20                                LISA J. CISNEROS
                            275 BATTERY STREET, 30TH FLOOR
21                          SAN FRANCISCO, CALIFORNIA  94111

22                 APPEARANCES CONTINUED ON NEXT PAGE

23    OFFICIAL COURT REPORTER:   LEE-ANNE SHORTRIDGE, CSR, CRR
                                 CERTIFICATE NUMBER 9595
24
                 PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY
25                 TRANSCRIPT PRODUCED WITH COMPUTER
```

```
 1      APPEARANCES (CONTINUED)

 2      FOR DEFENDANT          KEKER & VAN NEST
        GOOGLE:                BY:  ROBERT A. VAN NEST
 3                                  DANIEL E. PURCELL
                               633 BATTERY STREET
 4                             SAN FRANCISCO, CALIFORNIA  94111

 5                             MAYER BROWN
                               BY:  LEE H. RUBIN
 6                             TWO PALO ALTO SQUARE, SUITE 300
                               PALO ALTO, CALIFORNIA  94306
 7
        FOR DEFENDANT          O'MELVENY & MYERS
 8      APPLE:                 BY:  GEORGE A. RILEY
                                    CHRISTINA J. BROWN
 9                             TWO EMBARCADERO CENTER
                               28TH FLOOR
10                             SAN FRANCISCO, CALIFORNIA  94111

11      FOR DEFENDANTS         JONES DAY
        ADOBE AND              BY:  DAVID C. KIERNAN
12      INTUIT:                     LIN W. KAHN
                                    CRAIG E. STEWART
13                             555 CALIFORNIA STREET, 26TH FLOOR
                               SAN FRANCISCO, CALIFORNIA  94104
14
        FOR DEFENDANT          MUNGER, TOLLES & OLSEN
15      INTEL:                 BY:  GREGORY P. STONE
                               355 SOUTH GRAND AVENUE, 35TH FLOOR
16                             LOS ANGELES, CALIFORNIA  90071

17

18      FOR DEFENDANT          COVINGTON & BURLING
        PIXAR:                 BY:  EMILY J. HENN
19                             333 TWIN DOLPHIN DRIVE, SUITE 700
                               REDWOOD SHORES, CALIFORNIA  94065
20

21

22

23

24

25
```

```
1      SAN JOSE, CALIFORNIA                    OCTOBER 21, 2013
2                      P R O C E E D I N G S
3          (COURT CONVENED AT 1:57 P.M.)
4              THE CLERK:  CALLING CASE NUMBER C-11-02509 LHK, IN
5      RE: HIGH-TECH EMPLOYEE ANTITRUST LITIGATION.
6          COUNSEL, STATE YOUR APPEARANCES, PLEASE.
7              MR. SAVERI:  GOOD AFTERNOON, YOUR HONOR.
8      JOSEPH SAVERI, JOSEPH SAVERI LAW FIRM ON BEHALF OF THE
9      PLAINTIFFS.  I'M HERE WITH MY COLLEAGUE, JAMES DALLAL.
10             MS. DERMODY:  GOOD AFTERNOON, YOUR HONOR.
11     KELLY DERMODY, LIEFF CABRASER FIRM.  WITH ME ARE MY PARTNERS,
12     BRENDAN GLACKIN AND DEAN HARVEY, AND MY ASSOCIATES, ANNE SHAVER
13     AND LISA CISNEROS.
14             THE COURT:  GOOD AFTERNOON.
15             MR. VAN NEST:  GOOD AFTERNOON, YOUR HONOR.
16     BOB VAN NEST, KEKER & VAN NEST FOR GOOGLE.  I'M HERE WITH MY
17     PARTNER, DAN PURCELL, AND I'VE BEEN ASKED TO SPEAK ON BEHALF OF
18     THE DEFENSE GROUP THIS AFTERNOON.
19             THE COURT:  OKAY.  GOOD AFTERNOON.
20             MR. STONE:  GOOD AFTERNOON, YOUR HONOR.
21     GREGORY STONE OF MUNGER, TOLLES & OLSON ON BEHALF OF INTEL
22     CORPORATION.
23             THE COURT:  OKAY.  GOOD AFTERNOON.
24             MR. KIERNAN:  GOOD AFTERNOON, YOUR HONOR.
25     DAVID KIERNAN, AND WITH ME IS LIN KAHN ON BEHALF OF ADOBE.
```

```
1              MR. RUBIN:  GOOD AFTERNOON, YOUR HONOR.  LEE RUBIN
2      FROM MAYER BROWN, HERE ALSO FOR GOOGLE.
3              THE COURT:  OKAY.  GOOD AFTERNOON.
4              MR. RUBIN:  GOOD AFTERNOON.
5              MR. RILEY:  GOOD AFTERNOON, YOUR HONOR.  GEORGE RILEY
6      OF O'MELVENY & MYERS REPRESENTING APPLE.  I'M JOINED BY MY
7      COLLEAGUE, CHRISTINA BROWN.
8              THE COURT:  OKAY.  GOOD AFTERNOON.
9         OKAY.  SO WE HAVE A CMC TODAY, AND THEN WE ALSO HAVE THE
10     PRELIMINARY APPROVAL.
11        WERE YOU GOING TO SAY SOMETHING?
12             THE CLERK:  THERE WAS SOMEONE ELSE STANDING UP.
13             THE COURT:  OH, I'M SORRY.
14             MR. STEWART:  YOUR HONOR, CRAIG STEWART.  I'M HERE ON
15     BEHALF OF INTUIT.
16             THE COURT:  OKAY.  GOOD AFTERNOON.
17             THE CLERK:  AND MS. HENN IS HERE.
18             THE COURT:  ON BEHALF OF --
19             MS. HENN:  PIXAR AND LUCASFILM.
20             THE COURT:  OKAY.  YOU'RE THE MAIN ATTRACTION TODAY.
21     YOU SHOULD BE SITTING UP FRONT AND MAKE ALL THESE OTHER PEOPLE
22     SIT IN THE BACK.
23        ALL RIGHT.  WELL, I ACTUALLY WANTED TO HANDLE THE
24     PRELIMINARY APPROVAL FIRST, SO IF WE COULD -- SO MR. VAN NEST,
25     ARE YOU SPEAKING FOR THE SETTLING DEFENDANTS OR JUST THE
```

```
 1        NON-SETTLING DEFENDANTS?
 2                  MR. VAN NEST:  NO, YOUR HONOR.  THE NON-SETTLING.
 3                  THE COURT:  OH.  YOU WANT TO CHANGE STATUS TO
 4        SETTLING DEFENDANTS?
 5            (LAUGHTER.)
 6                  MR. VAN NEST:  I DO NOT.
 7                  THE COURT:  OKAY.  ALL RIGHT.
 8            OKAY.  WHY IS THE PERCENTAGE OF CLASS COMPENSATION THAT
 9        THIS SETTLEMENT FUND REPRESENTS, WHY DOES THAT HAVE TO BE
10        SEALED?
11                  MS. DERMODY:  WELL, YOUR HONOR, WE DIDN'T SEAL THE
12        PERCENTAGE OF CLASS MEMBERS EMPLOYED BY SETTLING DEFENDANTS,
13        BUT WE, OUT OF AN ABUNDANCE OF CAUTION, THOUGHT WE SHOULD SEAL
14        THE COMPENSATION AMOUNT, WHICH WAS DERIVED FROM THE
15        CONFIDENTIAL DATA THAT WAS PRODUCED.
16            I THINK IT'S UP TO YOUR HONOR WHETHER THAT SHOULD STAY
17        UNDER SEAL AND FOR THE DEFENDANTS THEMSELVES TO MAKE THE
18        ARGUMENTS ABOUT CONFIDENTIALITY.
19                  THE COURT:  OKAY.  AND THAT IS BASED ON THE DATA OF
20        ALL SEVEN DEFENDANTS?  OR JUST THE THREE SETTLING DEFENDANTS?
21                  MS. DERMODY:  ALL SEVEN, YOUR HONOR.
22                  THE COURT:  OH, I SEE.  OKAY.  LET ME HEAR, THEN,
23        FROM THE DEFENDANTS WHY THAT NEEDS TO BE SEALED.
24                  MR. STEWART:  YOUR HONOR, CRAIG STEWART.
25            I GUESS I'M NOT QUITE CLEAR WHICH PORTION YOUR HONOR IS
```

1        REFERRING TO AS BEING UNDER SEAL.  THERE'S AN ATTACHMENT TO THE

2        SETTLEMENT AGREEMENT THAT IS UNDER SEAL.

3             BUT WITH RESPECT TO THE FORMULA, THE FRACTION THAT'S

4        PROVIDED IN THE SETTLEMENT AGREEMENT THAT THE -- BY WHICH THE

5        COMPENSATION PAID TO CLASS MEMBERS WILL BE PAID, DETERMINED AND

6        PAID, MY UNDERSTANDING IS THAT THAT'S NOT UNDER SEAL.

7             THE COURT:  WELL, WHAT IS REDACTED AND WHAT YOU'RE

8        SEEKING TO SEAL IS THE PERCENTAGE OF THE TOTAL CLASS

9        COMPENSATION THAT THE SETTLEMENT FUND IN THESE TWO

10       SETTLEMENTS -- I GUESS I SHOULD SAY THREE SETTLEMENTS

11       REPRESENTS.  THAT NUMBER HAS BEEN REDACTED.

12             MS. DERMODY:  YOUR HONOR, I'M SORRY, IF I COULD TRY

13       TO BAIL OUT MY COLLEAGUE, BECAUSE THEY WEREN'T RESPONSIBLE FOR

14       PUTTING TOGETHER THE MOTION FOR PRELIMINARY APPROVAL --

15             THE COURT:  OKAY.

16             MS. DERMODY:  -- AND THEY MIGHT NOT BE FULLY AWARE OF

17       WHAT YOUR HONOR IS ASKING ABOUT, WHICH REALLY CAME FROM THAT

18       BRIEF.

19             THAT WAS A BRIEF THAT WE FILED, AND PLAINTIFFS' COUNSEL,

20       AGAIN, OUT OF ABUNDANCE OF CAUTION, REDACTED ONE LINE FROM THAT

21       BRIEF, WHICH BASICALLY WAS -- IN ADDITION TO SPECIFYING THE

22       PERCENTAGE OF CLASS MEMBERS THAT CAME FROM THE SETTLING

23       DEFENDANTS, SPECIFIED THE AMOUNT OF COMPENSATION ATTRIBUTABLE

24       TO THOSE CLASS MEMBERS FROM THE SETTLING DEFENDANTS, SO IT WAS

25       DERIVED FROM ALL OF THE DATA PRODUCED BY ALL SEVEN COMPANIES.

1        IT'S DATA THAT ALL SEVEN DEFENDANTS THEMSELVES HAVE CLAIMED AS

2    CONFIDENTIAL.

3           AND IF YOUR HONOR THINKS THAT IT'S IN THE BEST INTERESTS

4    OF THE CLASS TO REVEAL THAT INFORMATION, WE, OF COURSE, WOULD

5    NOT DISAGREE AT ALL, BUT WE THOUGHT WE BETTER NOT BE ON THE

6    WRONG SIDE OF THAT ARGUMENT IN NOT PUTTING THAT UNDER SEAL IN

7    THE FIRST INSTANCE.

8              THE COURT:  OKAY.  I'M JUST TRYING TO FIGURE OUT WHAT

9    WE CAN TALK ABOUT TODAY.

10          SO WHAT IS THE POINT OF SEALING THAT PERCENTAGE OF CLASS?

11             MR. STEWART:  WELL, I THINK THAT ON THAT, YOUR HONOR,

12   NOW THAT I UNDERSTAND WHAT WE'RE TALKING ABOUT --

13             THE COURT:  SURE, OKAY.

14             MR. STEWART:  -- I WOULD NEED TO CONFER WITH THE

15   OTHER DEFENDANTS, BECAUSE THIS IS ALL -- IN GENERAL, WE'VE HAD

16   THE PROTECTIVE ORDER THAT'S COVERED ALL OF THE SALARY

17   INFORMATION OF THE VARIOUS DEFENDANTS --

18             THE COURT:  OKAY.

19             MR. STEWART:  -- INCLUDING ANY INFORMATION THAT WOULD

20   ALLOW THE PUBLIC TO GET A SENSE OF WHAT EACH OF THESE COMPANIES

21   IS PAYING ITS EMPLOYEES.

22          SO THIS IS AN ISSUE THAT WOULD BE AFFECTING ALL OF THE

23   DEFENDANTS, NOT JUST SIMPLY THE TWO SETTLING DEFENDANTS, BUT

24   ALL OF THE OTHER DEFENDANTS.

25             THE COURT:  SURE.  WELL, EVERYONE IS HERE, SO LET ME

```
1    HEAR FROM -- LET ME HEAR ON THIS.  I JUST WANT TO TAKE CARE OF

2    THE SEALING ISSUE, BECAUSE THEN WE CAN UNDERSTAND THE SCOPE OF

3    WHAT WE CAN DISCUSS TODAY.

4          MR. VAN NEST:  YOUR HONOR, SPEAKING FOR THE

5    NON-SETTLING DEFENDANTS, WE HAVEN'T BEEN CONSULTED OR ADVISED

6    OF WHAT THEY'RE TALKING ABOUT.

7           IF WHAT THEY'RE TALKING ABOUT IS AGGREGATE, AVERAGE

8    SALARY DATA, I DON'T THINK ANYBODY HAS AN OBJECTION TO THAT.

9           IF WHAT THEY'RE TALKING ABOUT IS HOW MUCH OF THE FUND IS

10   PAID OUT TO CLASS MEMBERS, I DON'T THINK -- AS LONG AS IT'S NOT

11   SEPARATED BY DEFENDANT, I DON'T THINK WE HAVE AN OBJECTION TO

12   THAT.

13         I'M NOT REALLY SURE WHAT'S UNDER SEAL.  WE HAVEN'T BEEN

14   CONSULTED AT ALL IN RESPECT TO THIS.

15          THE COURT:  SO WITH REGARD TO THE MOTION, THEY HAVE

16   SAID THAT THESE THREE SETTLING DEFENDANTS' EMPLOYEES

17   REPRESENTING A LITTLE LESS THAN 8 PERCENT OF THE TOTAL PUTATIVE

18   CLASS.

19          MR. VAN NEST:  RIGHT.

20          THE COURT:  OKAY?  AND THEN THEY SAY, "AND THIS

21   SETTLEMENT FUND REPRESENTS X PERCENTAGE OF THE TOTAL CLASS

22   COMPENSATION," AND THAT NUMBER, THE X PERCENTAGE OF TOTAL CLASS

23   COMPENSATION, IS WHAT HAS BEEN REDACTED FROM THE MOTION AND

24   THERE IS A REQUEST TO SEAL IT.

25          AND SO I'M JUST TRYING TO GET A SENSE OF HOW IMPORTANT
```

1    THAT IS TO SEAL IT AND WHETHER WE CAN TALK ABOUT IT OR NOT

2    TODAY.

3              MR. VAN NEST:  I DON'T THINK THERE'S ANY PROBLEM

4    TALKING ABOUT IT.

5              THE COURT:  OKAY.

6              MR. VAN NEST:  I DON'T SEE ANY OBJECTION.

7              THE COURT:  OKAY.

8              MR. VAN NEST:  THIS IS A NUMBER THAT CUTS ACROSS ALL

9    DEFENDANTS, THE WHOLE CLASS.  IT DOESN'T DISCLOSE ANYBODY'S

10   INDIVIDUAL COMPENSATION PRACTICES OR LEVELS, SO WE DON'T HAVE

11   ANY OBJECTION TO THAT, YOUR HONOR.

12             THE COURT:  OKAY.  ALL RIGHT.  SO THEN THAT -- THE

13   REQUEST TO SEAL THAT NUMBER WILL BE DENIED, AND I BELIEVE THAT

14   NUMBER IS 5 PERCENT.  IS THAT CORRECT?

15             MS. DERMODY:  THAT'S CORRECT, YOUR HONOR.

16             THE COURT:  OKAY.  ALL RIGHT.  LET'S JUST TAKE CARE

17   OF THE OTHER SEALING, TOO.

18        YOUR REQUEST TO SEAL ALL THE JOB TITLES, THAT'S FINE.

19        I GUESS MY QUESTION REMAINING THEN IS THIS ATTACHMENT

20   ABOUT, YOU KNOW, UNDER WHAT CONDITIONS, YOU KNOW, THIS

21   AGREEMENT WOULD BE TERMINATED.

22        EXPLAIN TO ME A LITTLE BIT MORE WHY THAT NEEDS TO BE

23   SEALED, BECAUSE I GENERALLY DON'T SEAL THAT IN CLASS ACTION

24   SETTLEMENTS.

25             MS. DERMODY:  SURE, YOUR HONOR.

1        THAT IS, IN OUR PRACTICE, A FAIRLY STANDARD REQUEST ONLY

2    TO DEAL WITH THE POTENTIAL FOR A PROFESSIONAL OBJECTOR OR OTHER

3    GROUP TO TRY TO ORGANIZE LEVERAGE ON A SETTLEMENT BECAUSE THEY

4    KNOW THAT THERE'S A TARGET TO TRY TO HIT.

5        SO SINCE THAT NUMBER IS NOT MATERIAL TO THE CLASS'S

6    DECISION, IT DOESN'T AFFECT THE TERMS FOR THE CLASS, WE THINK

7    THAT'S APPROPRIATE TO KEEP UNDER SEAL.

8        BUT IT IS A CONDITION PRECEDENT TO THE SETTLEMENT BEING

9    FINALIZED THAT THERE NOT BE A CERTAIN NUMBER OF OPT OUTS THAT

10   ARE HIT IN THE SETTLEMENT.

11       WE DON'T THINK THAT NUMBER IS AT RISK AT ANY STRETCH HERE,

12   BUT WE THINK IT'S A BEST PRACTICE AND THERE'S BEEN LAW REVIEWS

13   WRITTEN ABOUT WHY YOU MIGHT HAVE THIS SORT OF PROCEDURE, AND WE

14   THINK IT'S THE BEST WAY TO AVOID DEALING WITH AN OUTSIDE GROUP

15   THAT'S UP TO NO GOOD.

16           THE COURT:  SO YOU THINK THAT THEY WOULD BE ABLE TO

17   MOBILIZE THIS MANY MEMBERS OF THE CLASS, OF THE SETTLING CLASS

18   TO OPT OUT?

19           MS. DERMODY:  I THINK THERE IS ZERO CHANCE IT'LL

20   HAPPEN ACTUALLY, YOUR HONOR, BUT I THINK IT'S A BEST PRACTICE

21   TO KEEP THOSE TYPE OF AGREEMENTS UNDER SEAL, SO WE'VE DONE THAT

22   HERE.

23       IF YOUR HONOR IS NOT INCLINED TO DO THAT, I DON'T THINK

24   IT'S PUTTING THE SETTLEMENT AT RISK, BUT I THINK IT IS A BEST

25   PRACTICE.

1          THE COURT:  HM.  BECAUSE I'VE NEVER SEEN THIS REQUEST

2     BEFORE TO SEAL THESE SORT OF, YOU KNOW, OPT OUT SAFELY VALVE,

3     FOR LACK OF A BETTER WORD, TERMS.

4          IT JUST SEEMS AS IF THE RELEVANT TERMS, WHICH I THINK THIS

5     WOULD BE ONE, SHOULD BE OPEN SO THAT PUTATIVE CLASS MEMBERS CAN

6     DECIDE IF THEY WANT TO BE PART OF THIS SETTLEMENT.

7          MS. DERMODY:  YOUR HONOR, IF IT'S IMPORTANT TO YOUR

8     HONOR, WE'RE FINE WITH THAT BEING UNSEALED.

9          THE COURT:  OKAY.

10         MS. DERMODY:  WE -- IF IT EVER COMES DOWN TO IT AGAIN

11    AND WE'RE IN THIS POSITION WHERE WE WANT TO HAVE SOMETHING

12    UNDER SEAL, WE'LL, NEXT TIME, PROVIDE YOUR HONOR WITH SOME

13    ORDERS TO SHOW YOU HOW IT'S BEEN DONE IN THIS DISTRICT WITH

14    OTHER JUDGES.  BUT WE'RE ABSOLUTELY FINE IF YOU WANT TO UNSEAL

15    IT HERE.

16         THE COURT:  ALL RIGHT.  SO I DON'T THINK I WILL SEAL

17    ATTACHMENT 1.  I THINK IN BOTH -- IN THE CONTEXT OF BOTH

18    SETTLEMENTS THEY ARE ATTACHMENT 1.

19         BUT I WILL SEAL EXHIBIT E TO THE LUCASFILM AND PIXAR

20    AGREEMENT, AND EXHIBIT D TO THE INTUIT AGREEMENT SINCE THAT

21    LAYS OUT ALL OF THE JOB TITLES THAT ARE AFFECTED.

22         I ASSUME THE DEFENDANTS HAVE AN INTEREST -- MAYBE I SHOULD

23    LOOK TO --

24         MR. VAN NEST:  WE DO, YOUR HONOR.

25         THE COURT:  -- IN SEALING WHAT ALL THE VARIOUS JOB

1       TITLES ARE, AND -- IS THAT CORRECT?

2              MR. STEWART:  YES, YOUR HONOR.  YES.

3              MS. HENN:  YOUR HONOR, THE PIXAR AND LUCASFILM TITLES

4       ARE ALREADY PUBLIC.  WE JUST HAD A DIFFERENT POSITION ON THIS

5       ISSUE.

6              THE COURT:  SO YOU DON'T -- ARE YOU REQUESTING THAT

7       EXHIBIT E BE SEALED OR NOT?

8              MS. HENN:  WELL, EXHIBIT E INCLUDES MORE THAN PIXAR

9       AND LUCASFILM TITLES.  I WANT TO BE CLEAR TO THE COURT THAT AS

10      TO THOSE TWO COMPANIES, THAT INFORMATION IS ALREADY IN THE

11      PUBLIC RECORD.

12             THE COURT:  OKAY.  SO THEN I MAY -- I WILL SAY, AS

13      FAR AS THE SEALING, I HAVE REALLY APPRECIATED -- I FELT THAT,

14      OF ALL THE DEFENDANTS, LUCASFILM AND PIXAR HAVE BEEN THE BEST

15      AT NARROWLY TAILORING THEIR SEALING REQUESTS, AND WHEN I ISSUE

16      ALL MY SEALING ORDERS, WHICH I WILL DO SOON, CERTAIN DEFENDANTS

17      HAVE NOT BEEN AS GOOD, AND I WOULD SAY INTEL HAS BEEN THE

18      WORST, SEALING OBJECTIONS AS TO FORM, SEALING INTEL'S LOGO.  I

19      MEAN, IT'S JUST COMPLETELY INDISCRIMINATE.

20           SO I DID WANT TO ASK THAT -- THERE'S WIDE VARIATION IN HOW

21      THE DEFENDANTS ARE HANDLING THEIR SEALING.  BUT, YOU KNOW,

22      SEALING THE LOGO AND INTRODUCTORY PAGES AND OBJECTIONS AS TO

23      FORM WAS JUST REALLY WAY OVERBROAD, SO THAT'S GOING TO HAVE TO

24      BE FIXED.

25             OKAY.  WELL, AT LEAST AS TO EXHIBIT E, AS TO EXHIBIT E TO

1    THE LUCASFILM/PIXAR, I'M GOING TO DENY THE SEALING AS TO PAGES

2    14 AND 15 OF THAT DOCUMENT.

3         OKAY.  SO WHAT IS THE TOTAL AMOUNT OF DAMAGES THAT THE

4    PLAINTIFFS BELIEVE THAT CLASS MEMBERS SHOULD RECOVER AS AN

5    AGGREGATE?

6         MS. DERMODY:  SO YOUR HONOR IS REQUESTING THAT WE

7    PROVIDE YOU WITH OUR EXPERT ANALYSIS?  IS THAT -- I'M JUST A

8    LITTLE --

9         THE COURT:  WELL, I MEAN, IF YOU'RE SAYING IT'S 5

10   PERCENT, DO I JUST MULTIPLY 5 --

11        MS. DERMODY:  AS A SETTLEMENT POSITION, YES, YOUR

12   HONOR, WE THINK THAT WHAT IS RECOVERED HERE FOR THESE CLASS

13   MEMBERS --

14        THE COURT:  UM-HUM.

15        MS. DERMODY:  -- IS A VERY SIGNIFICANT RECOVERY BASED

16   ON THE EXPOSURE, THE TIMING OF THE SETTLEMENTS, ALL OF THOSE

17   THINGS.

18        AND THAT IT'S NOT A ONE-TO-ONE, OBVIOUSLY.  IT'S TAKING

19   INTO ACCOUNT RISK AND TIME IN THE CASE.

20        BUT WE THINK THIS IS CERTAINLY A VERY GOOD SETTLEMENT FOR

21   THE CLASS MEMBERS.  IT MEETS ALL OF THE ELEMENTS OF PRELIMINARY

22   APPROVAL.  IT'S FAIR, REASONABLE, AND ADEQUATE AS A PRELIMINARY

23   MATTER AND SHOULD AT LEAST BE NOTICE TO THE CLASS.

24        THESE ARE THE SMALLEST EMPLOYERS IN THE CLASS AND IT

25   REFLECTS THE SMALLEST PART OF THE CASE BEING SETTLED, SO IT'S

 1     GOING TO BE, IN OUR VIEW, A SMALLER, MUCH SMALLER AMOUNT THAN

 2     WHAT THE VALUE OF THE CASE IS.

 3              THE COURT:  SO WHAT IS THE VALUE OF THE CASE?  WHAT

 4     IS THE TOTAL AMOUNT OF DAMAGES IN AGGREGATE?

 5              MS. DERMODY:  WELL, AGAIN, I THINK YOUR HONOR IS -- I

 6     WANT TO MAKE SURE I'M UNDERSTANDING THE QUESTION.  YOU'RE

 7     ASKING US TO SHARE WITH THE COURT WHAT OUR EXPERT ANALYSIS IS

 8     RIGHT NOW AND RIGHT IN THE, SORT OF IN THE MIDDLE OF DOING THE

 9     EXPERT WORK RIGHT NOW?  BUT I -- CERTAINLY IT'S A MUCH BIGGER

10     MULTIPLE OF THAT.

11          I MEAN, IF YOUR HONOR WANTS US TO SUBMIT SOMETHING TO THE

12     COURT IN CONNECTION WITH FINAL APPROVAL WHICH SETS FORTH WHAT

13     IS THE CALCULATION BASED ON EXPOSURE, WE'D BE HAPPY TO DO THAT.

14          I THINK DOING THAT IN OPEN COURT RIGHT NOW, WITHOUT AN

15     OPPORTUNITY TO CONSIDER WHETHER THAT SHOULD BE UNDER SEAL OR IN

16     CAMERA, IS SOMETHING THAT WE WOULD REQUEST NOT TO HAVE TO DO AT

17     THE PRELIMINARY APPROVAL STAGE.

18              THE COURT:  WELL, I GUESS -- HOW DID YOU FIGURE OUT

19     IF IT WAS 5 PERCENT IF YOU DIDN'T KNOW WHAT THE TOTAL AMOUNT

20     WAS?

21              MS. DERMODY:  OH, I'M SORRY, YOUR HONOR.  I

22     MISUNDERSTOOD YOUR QUESTION.

23              THE COURT:  YEAH, UM-HUM.

24              MS. DERMODY:  SO WE BASICALLY LOOKED AT WHAT THE

25     TOTAL AMOUNT OF SALARY WAS BY ALL THE CLASS MEMBERS IN THE

```
1        CASE --

2              THE COURT:  UM-HUM.

3              MS. DERMODY:  -- AND WHAT AMOUNT OF THAT SALARY WAS

4        WITHIN THESE CLASS MEMBERS EMPLOYED BY THE SETTLING DEFENDANTS.

5              SO WE'RE NOT TALKING NECESSARILY ABOUT WHAT THE EXPOSURES

6        ARE WITH THESE NUMBERS, BUT WHAT THEY REFLECT IN TERMS OF WHAT

7        THE FOOTPRINT IS IN THE CASE, IF YOU UNDERSTAND WHAT I'M

8        SAYING.

9              THE COURT:  SO THIS 5 PERCENT NUMBER DOESN'T HAVE

10       ANYTHING TO DO WITH THE AMOUNT OF MONEY THAT THIS CLASS IS

11       GOING TO GET FROM THESE SETTLEMENT AGREEMENTS?

12             MS. DERMODY:  I THINK IT'S --

13             THE COURT:  THIS IS JUST WHAT YOU THINK THEY WOULD BE

14       OWED OUT OF THE TOTAL AMOUNT THAT YOU THINK ALL PUTATIVE CLASS

15       MEMBERS WOULD BE OUT?

16             MS. DERMODY:  WHAT THE CLASS MEMBERS WILL GET IS THE

17       $20 MILLION, YOUR HONOR, SO THAT GETS DISTRIBUTED ACROSS THE

18       CLASS, AND IF YOU WERE TO CERTIFY THE SETTLEMENT CLASS, THAT'S

19       ROUGHLY SOMETHING LIKE 300 BUCKS A CLASS MEMBER ON A SLIDING

20       SCALE.  SO SOME WOULD GET LESS THAN THAT, SOME WOULD GET MORE

21       THAN THAT DEPENDING WHAT THEIR SALARY WAS AND CLASS POSITION

22       DURING THE CLASS TIME PERIOD.

23             AGAIN, EITHER THE --

24             THE COURT:  I'M SORRY TO INTERRUPT YOU.  HOW DID YOU

25       CALCULATE THE 5 PERCENT?  WHAT DOES THAT MEAN?
```

1          MS. DERMODY:  SO THE -- I'LL START WITH THE 8

2     PERCENT, RIGHT?

3          THE COURT:  OKAY.

4          MS. DERMODY:  SO WE'VE GOT THE -- 8 PERCENT OF THE

5     CLASS WAS EMPLOYED BY THE THREE DEFENDANTS.

6          THE COURT:  OKAY.

7          MS. DERMODY:  THE SEVEN DEFENDANTS PAID ALL THE CLASS

8     MEMBERS A CERTAIN AMOUNT OF COMPENSATION.  THE COMPENSATION IN

9     THE ENTIRE CLASS ATTRIBUTED -- ATTRIBUTABLE TO THESE THREE

10    DEFENDANTS' SALARY IS THE 5 PERCENT.

11         THE COURT:  SAY THAT AGAIN.  THE TOTAL AMOUNT OF

12    MONEY PAID TO THE --

13         MS. DERMODY:  CLASS MEMBERS --

14         THE COURT:  -- CLASS MEMBERS --

15         MS. DERMODY:  -- BY THESE THREE DEFENDANTS --

16         THE COURT:  -- IS 5 PERCENT?

17         MS. DERMODY:  RIGHT.

18         THE COURT:  OH, I SEE.  SO THAT NUMBER HAS NOTHING TO

19    DO WITH THE 20 MILLION THEN?

20         MS. DERMODY:  IT'S JUST TELLING YOU WHAT -- IT'S

21    GIVING YOU A SENSE OF HOW BIG A SLICE OF THE CASE THIS

22    SETTLEMENT IS RELATIVE TO THE REST OF THE CASE.

23         THE COURT:  RIGHT.  BUT IT WOULD BE A 5 PERCENT

24    NUMBER WHETHER THE SETTLEMENT WAS 5 MILLION OR WHETHER THE

25    SETTLEMENT WAS 50 MILLION?

1          MS. DERMODY:  YES.

2          THE COURT:  BECAUSE YOU'RE NOT ACTUALLY TYING --

3          MS. DERMODY:  THAT'S RIGHT, YOUR HONOR.

4          THE COURT:  -- THE SETTLEMENT FUND AMOUNT?

5          MS. DERMODY:  YES.

6          THE COURT:  SO THE 5 PERCENT IS REALLY NOT VERY

7    USEFUL OF A NUMBER, AND YOU'RE SAYING YOU'RE NOT PREPARED TODAY

8    TO SAY WHAT PERCENTAGE OF THE TOTAL RECOVERY IS REPRESENTED BY

9    THE 20 MILLION?

10          MS. DERMODY:  I CAN CAUCUS WITH MY GROUP AND SEE IF

11    THERE IS AN APPROACH THAT WE THINK WE COULD TAKE TO DO THAT,

12    BUT I THINK TO SHARE THE EXPOSURE NUMBER IN OPEN COURT WHEN

13    WE'RE RIGHT IN THE MIDDLE OF OUR MERITS REPORTS MIGHT BE AN

14    AWKWARD PART OF THE CASE TIMING-WISE, YOUR HONOR.

15          THE COURT:  OKAY.  WHEN IS YOUR EXPERT REPORT DUE?

16    IT'S DUE --

17          MS. DERMODY:  NEXT WEEK.

18          THE COURT:  I SEE.  OKAY.  ALL RIGHT.  I WON'T PUSH

19    THIS ANYMORE.

20          LET ME ASK, I'M A LITTLE BIT UNCLEAR ABOUT YOUR ATTORNEYS'

21    FEES.  FROM WHAT I CAN TELL, YOU'RE ASKING FOR 5 MILLION FOR --

22    ALMOST 5 MILLION FOR COSTS, AND THEN ON TOP OF THAT, YOU'RE

23    GOING TO ASK FOR UP TO A THIRD OF THE TOTAL 20 MILLION FOR

24    FEES?

25          MS. DERMODY:  LET ME WALK THROUGH --

```
 1                 THE COURT:  SO WHAT IS THIS CLASS GOING TO GET?

 2                 MS. DERMODY:  LET ME WALK THROUGH THIS, YOUR HONOR.

 3                 THE COURT:  A FIVE BUCK CERTIFICATE?  I MEAN, THIS IS

 4        GETTING REALLY SMALL, ISN'T IT?

 5                 MR. SAVERI:  RIGHT, RIGHT.  SO THE --

 6                 THE COURT:  YOU TELL ME.  SO YOU'RE SAYING YOU'RE

 7        GOING TO GET 5 MILLION FOR COSTS, AND THEN YOU'RE GOING TO SEEK

 8        ANOTHER, WHAT, 7-PLUS MILLION FOR FEES?  SO YOU'RE GOING TO GET

 9        APPROXIMATELY 12 MILLION OUT OF 20 MILLION?

10                 MS. DERMODY:  SO THERE'S A COUPLE DIFFERENT PARTS OF

11        THIS, YOUR HONOR.  WE CONSIDER THESE TO BE PARTIAL SETTLEMENTS,

12        THAT A VERY BIG PART OF THE CASE HASN'T BEEN RESOLVED, EITHER

13        THROUGH TRIAL OR SETTLEMENT.

14             WE, AS CURRENTLY CONSTRUCTED, DON'T INTEND TO SEND OUT

15        CHECKS TO CLASS MEMBERS RIGHT AWAY.  WE WANT TO HOLD THAT

16        MONEY, AND IF WE HOLD THAT MONEY, THERE MAY BE AN OPPORTUNITY

17        FOR ADDITIONAL SETTLEMENTS TO COME IN, OR EVEN A VERDICT IN

18        THIS CASE.

19             AT SOME POINT WE WOULD HOPE THAT THERE WOULD BE A LOT MORE

20        MONEY TO DISTRIBUTE TO THE CLASS.  WE WOULD HOPE NOT TO GO

21        THROUGH A VERY EXPENSIVE CLAIMS PROCESS THAT DEPLETES THE

22        SETTLEMENT FUND IN A SERIAL WAY EACH AND EVERY TIME.  IF WE CAN

23        JUST DO IT ONE TIME FOR THE CLASS MEMBERS, THAT WOULD BE IDEAL.

24             IF THERE WERE A LITIGATION CLASS CERTIFIED IN THE SAME

25        TIME PERIOD, WE WOULD SEND OUT NOTICE ONCE THAT WOULD DESCRIBE
```

1    THE LITIGATION CLASS AND THE SETTLEMENT CLASS, SAVING THE MONEY

2    OF DOING MULTIPLE NOTICES TO THE CLASS.

3        SO THERE ARE LOTS OF REASONS TO SORT OF HOLD THAT MONEY AS

4    KIND OF A TRUST FUND FOR THE CLASS MEMBERS.

5        HOWEVER, THE COSTS THAT HAVE BEEN ASSESSED IN THE CASE,

6    THAT HAVE BEEN COMING OUT OF POCKET, ARE THE COSTS OF THE CASE

7    AND WE THINK THAT THOSE SHOULD BE AT LEAST REPAID NOW AND WE

8    SHOULD DEFER UNTIL A LATER TIME IN THE CASE AN APPLICATION FOR

9    ATTORNEYS' FEES FROM THE FUND, WITH THE IDEA BEING THAT YOUR

10   HONOR WOULD TAKE A LOOK AT THAT POINT TO SEE WHETHER YOUR HONOR

11   THOUGHT, YOU KNOW, WHATEVER THE FEE YOU THOUGHT WAS

12   APPROPRIATE, WHETHER IT WOULD BE A THIRD, SOMETHING LESS THAN A

13   THIRD, PAID ON WHATEVER THE FUND IS AT THAT POINT.

14       BUT WE THOUGHT THE CLASS NEEDS TO BE NOTICED FOR THE

15   HIGHEST POSSIBLE AMOUNT WE MIGHT REQUEST SO THAT THE CLASS

16   KNOWS, RIGHT NOW, IT'S POSSIBLE DOWNSTREAM THAT THE ATTORNEYS

17   IN THIS CASE MIGHT APPLY FOR A ONE-THIRD FEE OFF OF THIS FUND,

18   OR WHATEVER FUND IT GROWS TO BE.

19       THERE COULD BE OTHER WAYS TO DO THIS, BUT WE THOUGHT THAT

20   WAS THE MOST CONSERVATIVE APPROACH AND THE WAY THAT WOULD

21   PROVIDE THE MOST AMOUNT OF TRANSPARENCY TO THE CLASS MEMBERS.

22       WE AGREE WITH YOUR HONOR COMPLETELY THAT WE DON'T WANT TO

23   HAVE A SITUATION, IF WE CAN AT ALL AVOID IT, WHERE MOST OF THE

24   MONEY THAT'S RECOVERED FOR THE CLASS ENDS UP GETTING PAID OUT

25   TO OTHERS, NOT THE CLASS MEMBERS.  WE WANT TO SEE A MAXIMUM

1    RECOVERY TO THE CLASS.

2         BUT BEING WHAT IT IS, WE'RE VERY EARLY IN THE CASE AND

3    THERE'S THE SMALLEST DEFENDANTS THAT HAVE COME IN, SO THAT'S

4    THE AMOUNT OF THE FUND RIGHT NOW.

5         AND RELATIVE TO THE INVESTMENT IN THE CASE, WHICH THE

6    CLASS MEMBERS HAVE NOT HAD TO PAY FOR AT ALL TO DATE, THERE'S

7    SOME, SOME OUTFLOWS WE THINK ARE APPROPRIATE AT THIS STAGE JUST

8    TO REIMBURSE THE COUNSEL FOR THE AMOUNT OF MONEY IT'S COSTING

9    FOR THE EXPERTS AND THE LIKE TO BRING THE CASE HOME.

10         THE COURT:  WHAT, OTHER THAN EXPERTS, ARE TOTALING

11    ALMOST 5 MILLION?

12         MS. DERMODY:  THE EXPERTS ARE A VERY, VERY BIG PART

13    OF THAT, YOUR HONOR.

14         THE COURT:  UM-HUM.

15         MS. DERMODY:  THEY'RE VERY EXPENSIVE, SO THAT'S THE

16    BIG BULK OF THE COSTS OF THOSE -- A BIG BULK OF THOSE COSTS.

17         TO SOME MUCH SMALLER DEGREE, THINGS LIKE DEPOSITION

18    TRANSCRIPTS, COURT REPORTERS, THINGS LIKE THAT.  WE HAD, AS YOU

19    KNOW --

20         THE COURT:  91 DEPOSITIONS.

21         MS. DERMODY:  YES, A LOT OF DEPOSITIONS IN THE CASE.

22    THOSE WERE COSTLY.  BUT MOST OF IT IS EXPERTS, YOUR HONOR,

23    QUITE FRANKLY.

24         THE COURT:  WELL, LET'S TALK ABOUT THE TIMING,

25    BECAUSE I'M NOT -- I'M NOT REALLY CLEAR HOW I'M EXPECTED TO

1    MAKE A DECISION IF I GRANT PRELIMINARY APPROVAL, ON FINAL

2    APPROVAL, WITHOUT KNOWING HOW MUCH ANY CLASS MEMBER IS GOING TO

3    RECEIVE FROM THIS SETTLEMENT, AND WITHOUT KNOWING HOW MUCH

4    MONEY YOU'RE GOING TO SEEK IN ATTORNEYS' FEES.

5         IT'S A REALLY BIG DIFFERENCE WHETHER IT'S -- YOU KNOW, NOT

6    THAT I WOULD -- I'M NOT PREJUDGING IT, BUT, I MEAN, IT'S VERY

7    IMPORTANT, I THINK, TO DETERMINING WHETHER IT'S A FAIR AND

8    REASONABLE SETTLEMENT AND YOU'RE ASKING ME TO MAKE THAT

9    DECISION WITHOUT KNOWING WHAT THE BIGGEST ANSWERS ARE GOING TO

10   BE, WHICH ARE, YOU KNOW, HOW MUCH IS THIS CLASS GOING TO

11   RECEIVE, NUMBER ONE.

12        MS. DERMODY:  OKAY, YOUR HONOR, YES.

13        WELL, SO I THINK THE TIMING IS PROPOSED THIS WAY:  SO

14   THERE'S A NUMBER OF STEPS IN THE APPROVAL PROCESS.

15        THE COURT:  UM-HUM.

16        MS. DERMODY:  THE FIRST IS, IF YOUR HONOR APPROVES

17   THE SETTLEMENT, FOR NOTICE TO GO OUT TO THE CLASS.

18        THERE'S GOING TO BE A STEP THAT INVOLVES GETTING THE

19   CLAIMS ADMINISTRATOR THE IMPORTANT CLASS DATA, AND WE'LL TABLE

20   THAT FOR LATER DISCUSSION IN THIS HEARING, BUT THE DATA ABOUT

21   THE CLASS.  THE CLAIMS ADMINISTRATOR WILL TAKE A COUPLE WEEKS

22   TO PROCESS THAT AND THEN SEND NOTICE OUT TO THE CLASS.

23        THERE WILL BE 45 DAYS FOR OBJECTIONS AND OPT OUTS.

24        THERE WILL BE SOME BRIEFING FOR YOUR HONOR FOR FINAL

25   APPROVAL AND THEN A FINAL APPROVAL HEARING.

```
 1              AT THAT POINT YOUR HONOR CAN CONSIDER THE FEEDBACK FROM

 2      THE CLASS AND HOW MANY OPT OUTS THERE ARE, AND IF YOUR HONOR

 3      THINKS AT THAT TIME THAT THE SETTLEMENT MEETS THE STANDARD FOR

 4      FINAL APPROVAL, WHAT YOUR HONOR WOULD APPROVE IS A SETTLEMENT

 5      FUND THAT'S THE $20 MILLION FROM THE TWO SETTLEMENTS THAT WOULD

 6      GO INTO ESSENTIALLY AN ESCROW AND THE PAYMENT OF COSTS, IN SOME

 7      DEGREE, OUT TO PLAINTIFFS' COUNSEL TO REIMBURSE THEM FOR COSTS,

 8      WITH RESERVATION OF DECISION ON WHETHER THE COURT WOULD

 9      CONSIDER TO APPROVE ANY ATTORNEYS' FEES FOR A LATER POINT IN

10      THE CASE WHERE WE COME BACK TO THE COURT FOR THE ATTORNEYS'

11      FEES ISSUE, WITH THE NOTICE BEING THAT LET'S SAY THIS WAS THE

12      ONLY SETTLEMENT IN THE CASE AND WE HAD LITIGATED THIS CASE ALL

13      THESE YEARS WITH ALL OF THIS DISCOVERY, THAT PRESUMABLY YOUR

14      HONOR WOULD APPROVE COSTS, RECOGNIZING THAT THAT WAS WHAT WAS

15      REQUIRED TO PROSECUTE THE CASE, AND WOULD CONSIDER SOME AMOUNT

16      OF ATTORNEYS' FEES FOR THE RECOVERY, EVEN IF PARTIAL TO THE

17      CLASS.

18              AND YOUR HONOR MIGHT DECIDE, YOU KNOW, THAT A THIRD IS TOO

19      RICH GIVEN THE AMOUNT RECOVERED AND MIGHT CUT THAT BACK.

20              BUT THE IDEA IN THIS PROCESS IS THAT YOUR HONOR -- THAT WE

21      WOULD NOTICE THE CLASS AND GIVE THE CLASS A CHANCE TO TELL THE

22      COURT IF THE COURT -- IF THE CLASS IS CONCERNED ABOUT THAT

23      HYPOTHETICAL REQUEST DOWNSTREAM AND HAVE A CHANCE TO OPT OUT OF

24      THE CASE IF IT WANTED TO OPT OUT OF THE CASE.

25              ALL OF THAT RECORD WOULD HAVE BEEN MADE AT FINAL APPROVAL,
```

1    AND THE ONLY THING THAT WOULD BE DETERRED -- EXCUSE ME --

2    DEFERRED WOULD BE THE DECISION ON ATTORNEYS' FEES AND THE TIME

3    FOR CASHING THE CHECKS FOR THE CLASS MEMBERS, WHICH WOULD COME

4    AT A LATER POINT IN THE CASE, AND AGAIN AT A LATER POINT THAT

5    WE WOULD HOPEFULLY HAVE MORE ACHIEVEMENTS FOR THE CLASS THAT

6    WOULD BENEFIT THE CLASS AND REDUCE THE BURDEN OF THE SETTLEMENT

7    PROCESS ON THE FUND.

8         THE COURT:  SO I DON'T UNDERSTAND.  WHAT IS THE

9    BENEFIT OF GOING THROUGH ALL OF THAT EARLY PHASE AND THEN

10   HOLDING OFF ON DISTRIBUTING MONIES TO THE CLASS AND MAKING THE

11   ATTORNEYS' FEES DECISION AT A LATER POINT?  WHAT'S THE BENEFIT

12   OF DOING ALL OF THAT WORK AND THEN JUST SORT OF PUTTING IT ON

13   HOLD?

14        MS. DERMODY:  WELL, I GUESS IN PART, YOUR HONOR,

15   BECAUSE THE COURT WON'T HAVE A CHANCE TO MAKE A DETERMINATION

16   OF WHAT'S A REASONABLE ATTORNEYS' FEE UNTIL THE COURT HAS SEEN

17   THE WHOLE BODY OF WORK IN THE CASE, THAT THERE MAY BE A GREATER

18   AMOUNT OF MONEY FOR THE CLASS, IN WHICH CASE WE'D LIKE THE

19   CLASS TO HAVE A MUCH BIGGER FUND, BIGGER CHECKS GOING OUT TO

20   THE CLASS RATHER THAN SENDING THE CLASS A CHECK FOR $100 IN

21   THIS SETTLEMENT, AND THEN $1,000 IN THAT SETTLEMENT, AND $5,000

22   IN THIS ONE.  IT'S BASICALLY THREE CLAIMS PROCESSES THAT HAPPEN

23   FOR THE CLASS MEMBERS WHEN YOU DO THAT.

24        SO WE WANTED TO TRY TO MAXIMIZE EFFICIENCY, GET THE MOST

25   OUT THAT WE CAN, AND ALSO TO GIVE YOUR HONOR A FULL RECORD TO

```
 1      MAKE A DETERMINATION, IS THIS A RECORD ON WHICH YOU THINK SOME

 2      FEES SHOULD BE AWARDED?

 3              THE COURT:  WELL THEN, WHY DON'T WE REDUCE THE

 4      ADMINISTRATIVE BURDEN AND JUST HAVE NOTICE GO OUT ONCE IF YOU

 5      WANT TO WAIT AND SEE IF SOMEONE ELSE IS GOING TO SETTLE?  I

 6      GUESS I'M JUST NOT CLEAR ON WHY THERE ARE ALL THESE

 7      EFFICIENCIES TO HOLD OFF ON PAYMENT TO THE CLASS AND TO HOLD

 8      OFF ON ATTORNEYS' FEES DETERMINATION, BUT WE SHOULD GO AHEAD

 9      AND DO ALL THIS WORKUP RIGHT UP UNTIL THAT POINT NOW BECAUSE

10      IT'S NOT -- BECAUSE YOU HAVE CONCERNS IF WE PAY THE CLASS NOW,

11      THEN THERE WOULD BE CONFUSION AMONG THE CLASS MEMBERS.  I GUESS

12      I'M JUST NOT CLEAR WHY YOU'RE DRAWING THAT DISTINCTION.

13              MS. DERMODY:  WELL, I THINK THERE ARE A COUPLE OF

14      REASONS, YOUR HONOR.  I MEAN, ONE, THIS IS A CASE OF VERY HIGH

15      PROFILE.  CLASS MEMBERS ARE VERY INTERESTED TO FIGURE OUT

16      WHAT'S GOING ON.  THERE'S BEEN SOME REPORTING ABOUT THE

17      SETTLEMENT.  THEY'RE EAGER TO HEAR ABOUT IT.  THEY WANT TO

18      KNOW.

19          WE THINK THIS IS ONE WAY TO GET THEM ALL OUT ACCURATE

20      INFORMATION ABOUT THE SETTLEMENT SO THEY UNDERSTAND WHAT'S

21      HAPPENING AND WHAT PART OF THE CASE IS GONE, WHAT PART OF THE

22      CASE IS STILL BEING LITIGATED.

23          WE THINK THAT IT'S, YOU KNOW, KIND OF AN UNNECESSARY DELAY

24      WAITING FOR ALL OF THE CASE TO BE DONE IN ORDER TO GET ALL OF

25      IT OUT.  WE DO THINK --
```

```
 1              THE COURT:  BUT I THINK THAT APPLIES TO PAYMENT TO
 2    THE CLASS AND THAT APPLIES TO ATTORNEYS' FEES.  I MEAN, IT'S
 3    KIND OF OPTIMISTIC, RIGHT?  I MEAN, YOU DON'T -- YOU HAVE NO
 4    IDEA WHETHER ANY OF THESE DEFENDANTS ARE GOING TO SETTLE IN THE
 5    NEXT TWO YEARS, SO I GUESS I'M JUST UNCLEAR ON WHY WE'RE
 6    DELAYING.
 7              MS. DERMODY:  SO IS YOUR HONOR'S PREFERENCE THAT WE
 8    DO ALL OF IT NOW OR DO NONE OF IT NOW?  IS THAT -- IS THAT THE
 9    FORK IN THE ROAD?  BECAUSE I THINK THAT'S HELPFUL FOR US TO
10    KNOW.
11              THE COURT:  I FEEL UNCOMFORTABLE RULING ON FINAL
12    APPROVAL WITHOUT KNOWING HOW MUCH EACH CLASS MEMBER IS GOING TO
13    RECEIVE AND HOW MUCH YOU'RE GOING TO ASK FOR.
14         SO IF YOU CAN PERSUADE ME THAT THERE'S A BENEFIT TO DO
15    EVERYTHING ELSE AND THEN HOLD THAT, BECAUSE I'M NOT LIKELY TO
16    RULE ON FINAL APPROVAL UNLESS I HAVE THAT INFORMATION, BECAUSE
17    I THINK THAT'S A NECESSARY COMPONENT OF DECIDING WHETHER THIS
18    IS A FAIR AND REASONABLE SETTLEMENT.
19              MS. DERMODY:  OKAY, YOUR HONOR.  I MEAN, I THINK
20    THAT'S FAIR.
21         THERE'S LOTS OF WAYS TO DO THIS.  I DON'T THINK THERE'S
22    ANY ONE-SIZE-FITS-ALL WAY.  THERE HAVE BEEN OTHER CASES IN THIS
23    DISTRICT THAT HAVE FOLLOWED THIS APPROACH AND WE WERE JUST
24    TRYING TO DO WHAT WE THOUGHT WAS A CREATIVE APPROACH.
25         IF YOUR HONOR DOESN'T LIKE IT, THERE ARE OTHER WAYS TO DO
```

```
 1        THIS THAT ARE PERFECTLY APPROPRIATE.

 2            WE DO THINK IT'S IMPORTANT FOR THIS SETTLEMENT PROCESS TO

 3    GO THROUGH.  OUR CLIENTS NEED TO KNOW WHAT'S HAPPENING.  THE

 4    DEFENDANTS -- THE SETTLING DEFENDANTS NEED TO HAVE FINALITY.

 5    THEY WANT TO BE DONE WITH THIS CASE.

 6            THE COURT:  UM-HUM.

 7            MS. DERMODY:  SO PEOPLE NEED TO GET ON WITH THEIR

 8    LIVES, AND WE WOULD -- IF YOUR HONOR REALLY WANTS TO DO IT

 9    EITHER ALL NOW OR, YOU KNOW, NONE OF IT NOW, WE WANT TO GO ALL

10    NOW AND JUST FIGURE OUT WHAT'S THE RIGHT WAY TO NOTICE THE

11    CLASS, AND IF YOUR HONOR THINKS THAT THAT FEE ISSUE HAS TO BE

12    TEED UP IN THE NOTICE AND WE NEED TO REQUEST THOSE FEES AT

13    FINAL APPROVAL, THEN THAT IS EXACTLY WHAT WE'LL DO.

14        AGAIN, THERE'S NO JUST ONE WAY TO DO THIS.

15            THE COURT:  UM-HUM.

16            MS. DERMODY:  WE WANT TO MAKE THE COURT COMFORTABLE

17    WITH THE PROCESS.

18            THE COURT:  WHAT IS THIS JUNE 1ST DATE?  I DIDN'T

19    KNOW IF THIS WAS YOUR SAYING THAT YOU WOULD HOLD OFF AND THEN,

20    IF NO ONE ELSE SETTLES AS OF JUNE 1ST, YOU'RE GOING THROUGH

21    WITH THE DISTRIBUTION.  THE WORDING WAS VAGUE.

22        LET ME SEE IF I CAN FIND IT.

23            MS. DERMODY:  I KNOW WHAT YOU'RE TALKING ABOUT, YOUR

24    HONOR.  YOU'RE ACTUALLY HIGHLIGHTING A THEME I WAS JUST

25    SOUNDING, WHICH IS THIS IDEA OF PEOPLE NEEDING TO HAVE
```

1    FINALITY.  THAT REALLY SPEAKS MORE, I THINK, TO THE INTERESTS

2    OF THE SETTLING DEFENDANTS, THAT THEY DON'T WANT THERE TO BE A

3    FOREVER OPEN-ENDED PROCESS.  EVEN IF THERE'S FINALITY IN TERMS

4    OF A FINAL APPROVAL ORDER --

5              THE COURT:  RIGHT.

6              MS. DERMODY:  -- THEY WANT THESE CLAIMS TO BE PAID

7    AND THE DEFENDANTS TO BE TRULY NEVER HAVING TO MONITOR THIS

8    CASE ANYMORE.

9              THE COURT:  UM-HUM.

10             MS. DERMODY:  AND WE RESPECT THAT AND APPRECIATE THAT

11   AND THAT'S A PART OF THE DOCUMENT.

12        IT BUILDS ENOUGH TIME THAT I THINK A LOT OF EVENTS IN THIS

13   CASE, IN TERMS OF LITIGATION WITH THE NON-SETTLING DEFENDANTS,

14   WILL BE HAPPENING.  SO IF THERE IS ANY OPTIMISM ABOUT THE CASE

15   BEING RESOLVED, WE THINK THAT THAT SCHEDULE ALLOWS FOR THAT

16   OPTIMISM.

17        BUT IF IT DOESN'T HAPPEN, THEN THAT'S WHEN -- THAT'S THE

18   END DATE OF WHEN WE'LL FINALLY PAY THOSE CLAIMS.

19             THE COURT:  YOU'RE SAYING NO LATER THAN JUNE 1, OR --

20             MS. DERMODY:  CORRECT.

21             THE COURT:  OKAY.  THE OTHER OPTION IS TO JUST MOVE

22   FINAL APPROVAL TO ROUGHLY THAT TIMEFRAME VERSUS TRYING TO

23   SQUEEZE FINAL APPROVAL IN, YOU KNOW, IN JANUARY, FEBRUARY, OR

24   MARCH WHEN I DON'T KNOW HOW MANY CLASS MEMBERS ARE GOING TO

25   RECEIVE MONEY AND HOW MUCH THEY'RE GOING TO RECEIVE AND HOW

```
 1        MUCH YOU'RE GOING TO REQUEST IN ATTORNEYS' FEES.

 2             WHAT ABOUT JUST DELAYING FINAL APPROVAL UNTIL YOU CAN

 3        EXPLORE IF THERE'S ANY MORE CLOSURE THAT YOU'RE GOING TO REACH

 4        WITH ANYONE ELSE?

 5                  MS. DERMODY:  AGAIN, YOUR HONOR, I THINK THERE ARE

 6        DIFFERENT WAYS TO DO THIS.

 7                  THE COURT:  UM-HUM.

 8                  MS. DERMODY:  I DON'T THINK THAT'S, YOU KNOW, AN

 9        IMPROPER WAY CERTAINLY.

10             I DO THINK THAT IN TERMS OF THE INTERESTS OF THE CLASS

11        MEMBERS AND THE INTERESTS OF THE DEFENDANTS, PEOPLE WANT TO GET

12        TO THE SETTLEMENT CERTIFICATION AND APPROVE SETTLEMENT, AN

13        EFFECTIVE DATE, SO THEY KNOW --

14                  THE COURT:  THE CLASS MEMBERS WANT TO GET THEIR

15        MONEY, OKAY.

16                  MS. DERMODY:  THEY DO.

17                  THE COURT:  YOU'RE SAYING LET'S HOLD OFF ON THAT,

18        LET'S DO ALL THE PAPERWORK AND THEN JUST SIT.

19                  MS. DERMODY:  BUT IT WON'T BE QUITE LIKE THAT, YOUR

20        HONOR, BECAUSE OF THE SCHEDULE WE'RE TALKING ABOUT.  A FINAL

21        APPROVAL HEARING THAT'S GOING TO BE JANUARY OR FEBRUARY AND 30

22        DAYS FOR APPEAL, THAT EFFECTIVE DATE WON'T ACTUALLY RUN UNTIL

23        THE SPRING OF THIS COMING YEAR.

24             WE'RE TALKING ABOUT A VERY SMALL DELAY, BUT A DELAY THAT,

25        DURING THAT TIME, A LOT WILL HAVE HAPPENED AND SO THE CLASS
```

1    MEMBERS' INTERESTS WILL HAVE BEEN MUCH FURTHER ADVANCED BY US

2    AT LEAST SETTING THE SCHEDULE AND MEETING THESE BENCHMARKS THAN

3    IF WE JUST PUT IT OFF UNTIL JUNE AND STARTED THAT SCHEDULE, YOU

4    KNOW, ON A BLANK SLATE.  THEY WOULD THEN NOT GET PAID UNTIL THE

5    END OF NEXT YEAR RATHER THAN THE MIDDLE OF NEXT YEAR.

6          THE COURT:  BUT YOU'RE SAYING I SHOULD JUST APPROVE

7    THIS BLIND IN JANUARY OR FEBRUARY, NOT KNOWING IF WHAT YOUR LAW

8    FIRMS ARE GOING TO GET IS 5 MILLION OR YOU'RE GOING TO ASK FOR

9    12 MILLION.

10        I MEAN, THAT MAKES A REALLY LARGE DIFFERENCE, SO I DON'T

11   THINK I'M GOING TO MAKE THAT DECISION BLIND.  I DON'T THINK

12   IT'S APPROPRIATE FOR ME TO DO SO.  I -- YOU KNOW, YOU'RE

13   TELLING ME OTHER PEOPLE HAVE AND THAT'S FINE, BUT I'M NOT GOING

14   TO DO THAT.

15         MS. DERMODY:  SO, YOUR HONOR, I THINK THERE'S SOME

16   OPTIONS.

17         THE COURT:  THAT'S A BIG DIFFERENCE, WHETHER THERE'S

18   LESS THAN 8 MILLION FOR THE CLASS OR WHETHER THERE'S 15 MILLION

19   FOR THE CLASS.

20         MS. DERMODY:  RIGHT.  BUT YOU'RE RETAINING THE

21   JURISDICTION OVER THAT.  THAT'S THE THING.  THE POWER IS WITH

22   YOUR HONOR.  IF YOU DISAGREE THAT THE AMOUNT OF MONEY THAT'S

23   BEING REQUESTED FOR ATTORNEYS' FEES ISN'T APPROPRIATE TO THE

24   BENEFIT, YOUR HONOR CAN DECIDE TO CUT BACK -- TO DENY THAT

25   REQUEST AND TO CUT BACK THE AMOUNT AWARDED.  THAT'S THE

1    BENEFIT.

2         THE REASON WHY WE'RE TELLING THE CLASS MEMBERS THIS VERY

3    BIG NUMBER IS TO TELL THEM THE WORST POSSIBLE SCENARIO IN TERMS

4    OF HOW THE FUND MIGHT BE DEPLETED.  IT'S GIVING THEM THE MOST

5    TRANSPARENCY AND TRYING NOT TO HIDE THE BALL AT ALL.  MAYBE WE

6    WERE MAKING A MISTAKE, BUT WE WANTED TO TELL THEM THIS IS WHAT

7    COULD HAPPEN SO THAT THEY COULD OBJECT OR COMMENT AND RAISE

8    CONCERNS AND YOUR HONOR WOULD HAVE THE BENEFIT OF THAT.

9         EVEN WITH ALL OF THAT, YOUR HONOR COULD APPROVE THE

10   SETTLEMENT AS BEING AN APPROPRIATE FUND AND WITHHOLDING

11   APPROVAL OF ANY ATTORNEYS' FEES AND DEFERRING THAT TO A LATER,

12   A LATER STAGE.  AND AGAIN, AT THAT LATER STAGE, YOUR HONOR

13   COULD DECIDE, YOU KNOW, IT'S NOT GOING TO BE A THIRD, IT'S

14   GOING TO BE SOMETHING ELSE.

15        THAT'S -- I THINK THAT'S THE BENEFIT OF THAT IS THAT YOU

16   DON'T HAVE TO APPROVE IT WITH AN OPEN-ENDED, UNKNOWN

17   POSSIBILITY THAT THE FUND WILL BE TOO SMALL.  YOU WOULD CONTROL

18   THAT.

19             THE COURT:  WHAT DO YOU EXPECT THE TOTAL

20   ADMINISTRATIVE COSTS TO BE?  I KNOW YOU JUST HAVE THE 100,000

21   IN THE SETTLEMENT AGREEMENT, BUT WHAT DO YOU EXPECT IT TO BE?

22   AND ARE YOU INCLUDING IN THAT COSTS IF ANY OTHER DEFENDANTS

23   ALSO SETTLE, OR IS THAT SOLELY FOR THE SETTLEMENT AGREEMENTS

24   THAT ARE PENDING TODAY?

25             MS. DERMODY:  SOLELY FOR THE SETTLEMENT AGREEMENTS

1        PENDING TODAY.

2                  THE COURT:  UM-HUM.

3                  MS. DERMODY:  AND I THINK IF THERE WERE OTHER

4        SETTLEMENTS, IT WOULD BE AN ECONOMY OF SCALE, THAT IT WOULDN'T

5        REALLY TO ANY DEGREE -- I MEAN, MAYBE AT THE MARGINS --

6        INCREASE THE COSTS OF THE SETTLEMENT, PARTICULARLY IF THERE'S

7        ONE NOTICE THAT GOES OUT.  THE COST OF MAILING ITSELF IS A

8        FAIRLY LARGE NUMBER WITHIN SETTLEMENT ADMINISTRATION, BUT IF

9        YOU HAVE ONE NOTICE GOING OUT, THAT PRETTY MUCH IS THE BIGGEST

10       COST.

11               WE DID RFP'S WITH FIVE OR SIX CLAIMS ADMINISTRATORS, VERY

12       GOOD ONES THAT ARE KNOWN AND DO A VERY GOOD JOB, AND WE PICKED

13       THE ONE THAT HAD THE BEST BENEFIT AT THE LOWEST COST AND I

14       THINK IT WAS A COUPLE HUNDRED THOUSAND DOLLARS FOR

15       ADMINISTRATION, MAYBE A LITTLE BIT MORE.

16                 THE COURT:  SO THAT'S WHAT YOU'RE EXPECTING?

17                 MS. DERMODY:  YES.

18                 THE COURT:  WHAT?  GIVE ME A NUMBER.

19                 MS. DERMODY:  YOUR HONOR, IT'S BETWEEN 2- AND

20       $300,000.  I DON'T HAVE THE RFP NUMBERS COMMITTED TO MEMORY, IT

21       WAS NOW SO MANY MONTHS AGO.  BUT IT'S IN THAT RANGE.

22                 THE COURT:  OKAY.  AND JUST FOR THESE SETTLEMENTS?

23                 MS. DERMODY:  YES.  BUT, AGAIN, BECAUSE THE CLASS IS

24       THE CLASS, IF THERE WERE ADDITIONAL SETTLEMENTS, YOU WOULD

25       HAVE -- IF YOU DIDN'T HAVE THE MAILING ALL AT THE SAME TIME,

1    YOU WOULD HAVE ADDITIONAL MAILINGS THAT WOULD GO OUT.

2         BUT OTHERWISE THERE WOULD BE ONE CHECK ISSUED, FOR

3    INSTANCE, AND THERE'S ONE WEBSITE.  YOU UPLOAD THE DATA TO THE

4    WEBSITE ONCE FOR THE WHOLE CLASS, AND IT'S THE SAME PLAN OF

5    ALLOCATION PRESUMABLY ACROSS DIFFERENT SETTLEMENTS.

6         SO YOU REALLY DO HAVE A LOT OF BENEFIT FROM THE FOOTWORK

7    DONE IN THE FIRST SETTLEMENT.

8         THE COURT:  OKAY.  LET ME HEAR FROM MS. HENN AND

9    MR. STEWART.

10        WHAT BENEFIT IS THERE TO YOUR CLIENTS TO HAVE THE TIMING

11   DONE THIS WAY OF HAVING A FINAL APPROVAL HEARING IN JANUARY OR

12   FEBRUARY, BUT THEN NOT REALLY DECIDING HOW MUCH MONEY CLASS

13   MEMBERS WOULD RECEIVE AND HOW MUCH MONEY THE LAW FIRMS WOULD

14   RECEIVE UNTIL A LATER POINT?

15        MS. HENN:  YOUR HONOR, SPEAKING FOR PIXAR AND

16   LUCASFILM, WE DON'T TAKE A POSITION ON ANY OF THE ISSUES THAT

17   AFFECT THE CLASS MEMBERS.

18        I THINK MS. DERMODY STATED VERY WELL THAT WE DO HAVE AN

19   INTEREST IN FINALITY, AND I THINK THAT INTEREST IS EMBODIED IN

20   THE ALLOCATION PLAN, WHICH WAS THE DATE THAT YOUR HONOR POINTED

21   OUT, THE JUNE 1ST, 2014, DATE.

22        WHAT THAT SOMEWHAT VAGUE SENTENCE MEANT TO CONVEY IS THAT

23   DISTRIBUTION FROM THE EXISTING SETTLEMENTS COULD BE DELAYED TO

24   ACCOMMODATE OTHER SETTLEMENTS, MEANING THAT A DISTRIBUTION

25   COULD HAPPEN AT THE SAME TIME AS OTHER SETTLEMENTS IF THOSE

1  SETTLEMENTS ARE REACHED BEFORE JUNE 1ST, 2014.

2       IT WAS NOT -- MY UNDERSTANDING WAS THAT IT MEANT THE

3  ACTUAL DISTRIBUTION WOULD HAPPEN BY JUNE 1ST, 2014.

4          THE COURT:  OKAY.  I'M SORRY.  YOU'RE GOING TO HAVE

5  TO REPEAT THAT.  SO YOU'RE SAYING IF ANY OTHER DEFENDANTS

6  SETTLE BY JUNE 1ST OF 2014, THEN THE DISTRIBUTIONS CAN BE

7  DELAYED FURTHER UNTIL THEY CAN BE INCORPORATED INTO THE

8  DISTRIBUTIONS?

9          MS. HENN:  THAT'S CORRECT, YOUR HONOR.  THAT WAS THE

10  INTENTION OF THAT LANGUAGE.

11          THE COURT:  SO THEN THE PAYMENTS ARE PROBABLY NOT

12  GOING TO GO OUT UNTIL THE END OF 2014 THEN IF YOU ASSUME THAT

13  SETTLEMENT WOULD ALSO HAVE TO GO THROUGH PRELIMINARY APPROVAL

14  AND THE NOTICE WOULD HAVE TO GO OUT AND CLAIM FORMS WOULD HAVE

15  TO BE SUBMITTED AND CLAIM FORMS WOULD HAVE TO BE EVALUATED TO

16  MAKE SURE THE PAYMENT AMOUNTS WERE CORRECT, ET CETERA.

17          MS. DERMODY:  IF THERE WAS ANOTHER SETTLEMENT, YOUR

18  HONOR.

19       IF THERE WAS NOT ANOTHER SETTLEMENT, THEN ON JUNE 1ST

20  THERE WOULD START TO BE THE PROCESS OF ISSUING THOSE CHECKS.

21       SO IT'S AN OUTER EDGE OF WHEN THAT WOULD HAPPEN BUT FOR

22  OTHER SETTLEMENTS THAT WOULD BENEFIT THE CLASS MEMBERS.

23          THE COURT:  OKAY.  DOES MR. STEWART WANT TO BE HEARD

24  ON BEHALF OF INTUIT?

25          MR. STEWART:  THANK YOU, YOUR HONOR.

1          AS WITH PIXAR AND LUCASFILM, WE'RE NOT TAKING A POSITION

2     ON THE AWARD OF FEES OR COSTS TO THE PLAINTIFFS.  THAT'S A

3     MATTER BETWEEN THE PLAINTIFFS AND THE CLASS UNDER YOUR

4     JURISDICTION, YOUR HONOR, TO ENSURE THAT THE SETTLEMENT IS FAIR

5     AND REASONABLE.

6          AND WITH RESPECT TO TIMING, WE, FRANKLY, DON'T HAVE A

7     STRONG POSITION ON THAT AS WELL.  I THINK THAT'S AN ISSUE OF

8     PRIMARY CONCERN TO THE PLAINTIFFS.

9          THE COURT:  UM-HUM.  OKAY.  ALL RIGHT.  WELL, I HAVE

10    SOME SPECIFIC QUESTIONS ABOUT THE NOTICE AND THE CLAIM FORM,

11    BUT BEFORE I DO THAT, LET'S HANDLE THE DISPUTES WITH THE

12    NON-SETTLING DEFENDANTS.

13         I'M GOING TO REQUIRE THAT JOB TITLES AND SALARY

14    INFORMATION BE PROVIDED BECAUSE OTHERWISE IT'S GOING TO WASTE A

15    LOT OF CLAIMS ADMINISTRATION TIME AND COST TO TRY TO SETTLE ALL

16    THOSE AMOUNTS AND TIMES WITH CLASS MEMBERS WITHOUT THE BENEFIT

17    OF MORE DEFINITIVE DATA FROM THE EMPLOYERS.  SO THAT OBJECTION

18    IS DENIED.

19         I DO WANT TO TALK ABOUT THE SOCIAL SECURITY NUMBERS.

20    FIRST I WANT TO ASK, WHAT SECURITY MEASURES DOES THE CLAIMS

21    ADMINISTRATOR, HEFFLER, HAVE?  BECAUSE I DO NOT WANT TO SEE,

22    YOU KNOW, A NEWSPAPER ARTICLE THAT ALL THIS WAS ON SOMEBODY'S

23    LAPTOP WHICH WAS STOLEN OUT OF HIS CAR OR LEFT AT THE COFFEE

24    SHOP AND STOLEN.  I DON'T WANT THAT TO BE THIS CASE.

25         MS. DERMODY:  YEAH.  YOU AND US BOTH, YOUR HONOR.  WE

```
 1          DON'T WANT THAT, EITHER.

 2              I MEAN, THEY HAVE THEIR OWN COMPANY WITH THEIR OWN DATA

 3    SECURITY MEASURES AND THEY COULD PROVIDE THE COURT WITH A

 4    DECLARATION IF NEED BE.  I'M SURE THEY'D BE HAPPY TO WORK WITH

 5    ALL OF THE DEFENDANTS TO HAVE AN APPROPRIATE SECURITY AGREEMENT

 6    FOR THAT MATERIAL.

 7              I THINK EVERYONE SHARES AN INTEREST IN MAKING SURE THAT

 8    THE CLASS MEMBER FINANCIAL DATA IS SECURE.

 9              SO ALL I CAN SAY IS THAT THIS IS THE KIND OF INFORMATION

10    THAT CLAIMS ADMINISTRATORS, LIKE HEFFLER, ROUTINELY RECEIVE AND

11    ROUTINELY PROTECT, AND WE HAVE NO REASON TO THINK, AND NO ONE

12    HAS RAISED ANY REASON FOR US TO THINK, THAT THERE WILL BE ANY

13    CONCERN HERE.  I'M NOT AWARE OF ANY ISSUE IN THAT REGARD.

14              BUT IF THERE ARE OTHER MEASURES TO GIVE EVERYONE A LEVEL

15    OF CONFIDENCE, WE WOULD WELCOME THAT AS WELL.

16              THE COURT:  WHAT -- I WAS NOT AS PERSUADED BY YOUR

17     REASON FOR NEEDING THE SOCIAL SECURITY NUMBERS, AND PERHAPS

18     WOULD BE MORE PERSUADED IF YOU FELT THAT YOU NEEDED,

19     EFFECTIVELY, A PASSWORD FOR A CLASS MEMBER TO USE TO BE ABLE TO

20     VERIFY THEIR INFORMATION, AND THAT THE LETTER TO THE CLASS

21     MEMBER NOT HAVE TO INCLUDE THAT PASSWORD.

22              I MEAN, I DON'T KNOW.  TELL ME -- TELL ME WHAT YOUR

23     CONCERN IS ABOUT GETTING THE SOCIAL SECURITY NUMBER FROM THE

24     CLAIMANT WHEN HE OR SHE FILLS OUT THE CLAIM FORM, BECAUSE

25     YOU'RE NOT GOING TO HAVE THE TAX CONSIDERATION IF NO CLAIM FORM
```

```
 1        IS SUBMITTED.

 2                 MS. DERMODY:  OKAY, YOUR HONOR.

 3                 THE COURT:  SO WHAT'S YOUR --

 4                 MS. DERMODY:  THERE'S THREE PLACES WHERE SOCIALS COME

 5        INTO PLAY IN THE ADMINISTRATION PROCESS.  ONE IS IN MAILING THE

 6        NOTICE ITSELF.  SO WHEN ENVELOPES ARE RETURNED AND THERE'S NOT

 7        AN APPROPRIATE SKIP TRACING AVAILABLE, HEFFLER AND OTHER CLAIMS

 8        ADMINISTRATORS GO TO THE SOCIAL SECURITY NUMBER TO FIND EXACTLY

 9        WHERE PEOPLE ARE, BECAUSE PEOPLE TEND TO BE RE-EMPLOYED

10        SOMEWHERE AND THEIR SOCIAL IDENTIFIES THEM.

11             SO IT'S A VERY SURE FIRE WAY TO GET NOTICE TO PEOPLE THAT

12        ARE -- TO PEOPLE THAT ARE EMPLOYED, SUCH AS PEOPLE THAT ARE IN

13        THIS CLASS.

14             THE SECOND PART OF THIS -- AND HEFFLER HAS GIVEN US A

15        LITTLE BIT OF A TUTORIAL ON THIS -- IS THAT WHEN YOU HAVE A

16        PLAN OF ALLOCATION WHICH HAS POPULATED DATA FROM THE EMPLOYER,

17        SO HERE --

18                 THE COURT:  YEAH.

19                 MS. DERMODY:  -- YOU HAVE THEIR SALARY AND CLASS

20        POSITION, YOU WANT TO HAVE AN EASY WAY FOR THE CLASS MEMBER TO

21        REVIEW THAT DATA TO SEE IF THERE'S SOME OBVIOUS ERROR.

22             SO LET'S SAY WHEN A CLASS MEMBER GOES ON-LINE AND THEY

23        LOCATE THEIR JOB HISTORY AND THEY SEE THAT THEY'RE MISSING A

24        CLASS POSITION FROM ONE OF THE DEFENDANTS, MAYBE THEY

25        TRANSFERRED JOBS AND ONE OF THE DEFENDANTS JUST DIDN'T CAPTURE
```

1        THEM, THEY CAN THEN TELL THE CLAIMS ADMINISTRATOR, "I WAS

2        EMPLOYED AT THIS COMPANY FROM THESE DATES AND THIS SALARY, IT

3        SHOULD BE THERE," AND THE CLAIMS ADMINISTRATORS CAN GO AND

4        COLLECT THAT WITH THE DEFENDANT.

5             THE ONLY WAY THAT THEY CAN SAFELY GET INTO AN ON-LINE JOB

6        FIELD LIKE THAT IS THROUGH A PASSWORD, AND HAVING THEIR OWN

7        SOCIAL SECURITY NUMBER BE A PASSWORD IS PROBABLY THE BEST WAY

8        TO ENSURE THAT IT IS SECURE, BECAUSE THERE'S NO OTHER PASSWORD

9        THAT'S PRIVATE TO A PERSON THAT'S AS WELL SAFEGUARDED AS ONE'S

10       SOCIAL SECURITY NUMBER.

11            ONE WOULDN'T WANT TO SEND A PASSWORD IN THE MAIL TO

12       SOMEONE BECAUSE THAT WOULD ESSENTIALLY BE GIVING AN OPPORTUNITY

13       FOR MISCHIEF THROUGH THE MAIL IF ANYONE OPENED UP THAT MAIL.

14            SAME IS TRUE FOR E-MAIL.  AN E-MAIL SENDING SOMEONE A

15       PASSWORD COULD BE VIEWED BY SOMEONE ELSE.

16            AND AGAIN, HEFFLER DOESN'T WANT TO BE ON THE WRONG SIDE OF

17       THIS DATA SECURITY ISSUE.  THEY WANT TO TRY TO GIVE PEOPLE A

18       CHANCE TO ACCESS THAT MATERIAL IN A WAY THAT'S SAFE FOR THAT

19       PERSON.

20            THE THIRD WAY, AS YOUR HONOR HAS ALREADY ALLUDED TO, IS IN

21       THE CLAIMS PROCESS.  BECAUSE THESE AREN'T EMPLOYEES, BECAUSE

22       THESE ARE, IN PART, TAXABLE WAGES AND THERE WILL BE WITHHOLDING

23       REQUIRED, THE CLAIMS ADMINISTRATOR HAS TO DO WITHHOLDING WITH

24       EVERYONE'S SOCIAL SECURITY NUMBER AS PART OF THE CLAIMS

25       PROCESS.

```
1          SO RATHER THAN HAVE PEOPLE SUBMIT INDIVIDUAL SOCIALS FOR

2     THESE INDIVIDUAL CLAIMS, WHICH ITSELF SEEMS LIKE MUCH MORE

3     PRONE TO A SECURITY PROBLEM THAN JUST HAVING A DATA DUMP WHERE

4     EVERYTHING IS POPULATED IN ONE DATA FIELD, IT SEEMS LIKE IT'S

5     MUCH BETTER FOR THE CLASS, MUCH MORE EFFICIENT, IT'S ALREADY

6     POSSESSED BY THE DEFENDANTS, AND IT'S SOMETHING WHICH WE

7     THOUGHT WE SHOULD ALERT YOUR HONOR IS SO ROUTINE IN CLASS

8     SETTLEMENTS THAT WE WERE SURPRISED IT CAME UP.

9          WE SHARED A COUPLE OF THE SETTLEMENT PRELIMINARY APPROVAL

10    ORDERS FROM THIS DISTRICT FROM JUDGE WARE, JUDGE WILKEN, FROM

11    YOUR HONOR BASICALLY APPROVING THE ORDER OF A SOCIAL SECURITY

12    NUMBER AND OTHER IDENTIFYING INFORMATION ABOUT CLASS MEMBERS

13    WHO ARE EMPLOYEES TO BE GIVEN TO A CLAIMS ADMINISTRATOR.

14         I THINK ALL THOSE CASES WE GAVE YOU WERE TECH EMPLOYEES,

15    TOO.  MAYBE ONE WASN'T.

16         BUT THIS COMES UP AND WE THINK IT'S THE ONLY WAY THAT

17    MAKES THE MOST -- IT MAKES THE MOST SENSE AND IT'S THE ONLY WAY

18    THAT ENSURES THE MOST DATA SECURITY FOR THE MATERIAL, AND IT

19    WAS THE ONLY WAY WE COULD THINK OF -- AND WE DID TALK TO

20    DEFENDANTS, THE NON-SETTLING DEFENDANTS ABOUT WHETHER THEY

21    COULD COME UP WITH AN ALTERNATIVE WAY WHERE IF SOMEONE CAN

22    ACCESS PRIVATE INFORMATION THAT WAS BETTER THAN THIS WAY,

23    BECAUSE WE FIGURED THESE ARE FOLKS THAT REALLY, REALLY

24    UNDERSTAND THE INFORMATION TECHNOLOGY WORLD, IF ANYONE COULD

25    COME UP WITH AN ALTERNATIVE WAY, IT WOULD BE THE NON-SETTLING
```

```
 1    DEFENDANTS, AND WE WEREN'T ABLE TO COME UP WITH ANYTHING OTHER

 2    THAN WHAT WE PROPOSED.

 3          SO FOR ALL THOSE REASONS, YOUR HONOR, WE THINK THAT IT

 4    MAKES SENSE TO HAVE THE SOCIAL SECURITY NUMBERS BE PART OF THE

 5    DATA DUMP WITH THE OTHER MATERIAL.

 6          THE COURT:  LET ME ASK, I WAS UNCLEAR ON THE

 7    NON-SETTLING DEFENDANTS' POSITION.

 8          MR. VAN NEST:  YOUR HONOR --

 9          THE COURT:  YOU KNOW, IN THE PIONEER ELECTRONICS

10    CASE, THE CALIFORNIA SUPREME COURT ACTUALLY FOUND THE NEED FOR

11    DISCLOSURE TO NOTIFY THE CLASS OUTWEIGHED THE PRIVACY

12    INTERESTS, SO I ACTUALLY THOUGHT THIS CASE WAS NOT IN YOUR

13    FAVOR AND THAT WAS ACTUALLY IN THE PLAINTIFFS' FAVOR FOR

14    DISCLOSURE.

15          MR. VAN NEST:  I THINK PIONEER POINTS OUT HOW

16    SENSITIVE SOCIAL SECURITY NUMBER DATA IS AND THE REASON WHY

17    MANY COURTS HAVE SAID THAT'S NOT GOING TO BE REQUIRED UP FRONT,

18    IT'S GOING TO BE SOMETHING THAT, IF THERE ARE A LOT OF RETURNED

19    ENVELOPES, OR IF THERE'S A PROBLEM FINDING CLASS MEMBERS, WE

20    CAN DEAL WITH THAT ON A BY -- ON A PER EMPLOYEE BASIS.

21          SO THE CASES THAT YOU WERE CITED BY THE PLAINTIFFS, YOUR

22    HONOR, ARE TYPICALLY CASES WHERE THE CLASS, FOR EXAMPLE, ARE

23    ALL FOLKS THAT THE DEFENDANTS HAVE A RELATIONSHIP WITH.

24          HERE YOU'VE GOT, AS THEY'VE ADMITTED, 95 PERCENT OF THE

25    EMPLOYEES, FROM A SALARY STANDPOINT, ARE PEOPLE EMPLOYED BY THE
```

1    NON-SETTLING DEFENDANTS.  SO WE'VE GOT A LARGE GROUP OF PEOPLE

2    TO WHOM WE HAVE SOME PRIVACY OBLIGATIONS.

3         OUR POINT IS SIMPLE.  THE ADMINISTRATOR CAN FIND A WAY TO

4    CREATE A PASSWORD.  WE'VE ALREADY AGREED TO GIVE ADDRESS DATA

5    AND E-MAIL ADDRESS DATA.  THEY'RE GOING TO HAVE NOW THE SALARY

6    DATA.  THEY'RE GOING TO HAVE THE TITLE DATA.

7         LET THE EMPLOYEE DECIDE WHETHER HE OR SHE WANTS TO MAKE A

8    CLAIM.  IF THEY DO, THEY CAN THEN EXPOSE THEIR SOCIAL SECURITY

9    NUMBER AT THAT POINT.

10        IF THERE ARE LARGE NUMBERS OF PEOPLE THAT CAN'T BE FOUND,

11   THEN WE CAN CERTAINLY DEAL WITH THAT WITH A SUPPLEMENTAL ORDER

12   TO TURN OVER THOSE SOCIAL SECURITY NUMBERS.

13        BUT TO DO IT FOR -- WE'RE TALKING ABOUT 60,000 PEOPLE

14   POTENTIALLY HERE, AT LEAST.  THAT WAS THE REQUEST IN THE CLASS

15   CERT PAPERS.  IT'S EXCESSIVE.

16        SO OUR POINT IS SIMPLY, WITH THE ADDRESS DATA WE'RE

17   GIVING, WHICH IS NOT ONLY PHYSICAL ADDRESSES, BUT E-MAIL

18   ADDRESSES, THEY OUGHT TO BE ABLE TO REACH THE VAST MAJORITY OF

19   PEOPLE.

20        IF THERE ARE SOME FOLKS THEY DON'T REACH, SO BE IT.  WE

21   CAN PROVIDE ADDITIONAL INFORMATION THEN.

22        THAT'S A PERFECTLY REASONABLE WAY TO DO IT.  IT PUTS THE

23   EMPLOYEE IN CHARGE, THE CLASS MEMBER IN CHARGE OF DECIDING

24   WHETHER HE OR SHE WANTS THAT INFORMATION MADE PUBLIC.

25        AND WE'RE A LOT MORE COMFORTABLE WITH THAT, PARTICULARLY

1   THE NON-SETTLING DEFENDANTS WHO HAVEN'T AGREED TO ANYTHING AT

2   THIS POINT.

3        THE COURT:  SO ONE OF THE PLAINTIFFS' CONCERNS, WHICH

4   I THINK IS LEGITIMATE, IS THAT, YOU KNOW, CURRENT EMPLOYEES DO

5   NOT IN ANY WAY WANT TO BE RETALIATED AGAINST OR HAVE THE FEAR

6   OF RETALIATION IF THEY DO SUBMIT A CLAIM.

7        IS THAT AT ALL IN ANY WAY WHY YOU WANT THIS INFORMATION UP

8   FRONT?  OR DOES THAT NOT MATTER?

9        MS. DERMODY:  ABSOLUTELY, YOUR HONOR.

10       THE COURT:  WHAT'S THE SITUATION?

11       MS. DERMODY:  THANK YOU, YES.  I MEAN, ONE OF OUR

12  GREATEST CONCERNS IS THAT THE CLAIMS PROCESS BE TOTALLY

13  CONFIDENTIAL, THAT THE CLAIMANTS NOT BE EXPOSED BACK TO THEIR

14  EMPLOYERS, BECAUSE IF THE CLAIMS PROCESSOR HAS TO FOLLOW UP AND

15  ASK QUESTIONS ABOUT TITLE OR ASK FOR SOCIAL OR ANYTHING LIKE

16  THAT, WE'RE WORRIED ABOUT THE IDEA THAT, "OH, WE COULDN'T FIND

17  SOME PEOPLE.  WE'LL JUST TURN OVER THEIR SOCIALS THEN."

18       THAT MAKES THE CLAIMS PROCESS SORT OF HAVE THESE HOLES

19  WHERE PEOPLE WORRY, "WOW, I'M GOING TO BE KNOWN TO MY EMPLOYER

20  FOR BEING PART OF THIS PROCESS."

21       SO WE THINK THAT TO THE EXTENT THERE ARE COMPETING

22  INTERESTS AND THERE'S A BALANCING THAT HAS TO BE UNDERTAKEN

23  HERE, THE FOCUS OF THE BALANCING IS THE CLASS MEMBERS.  IT'S

24  THE FOCUS OF DEFENDANTS' BALANCING AND OURS.  THEY'RE TALKING

25  ABOUT PRIVACY AND WE'RE TALKING ABOUT PRIVACY PLUS EFFICIENCY,

```
 1        CONFIDENTIALITY, SECURITY, ALL OF THESE THINGS, AND WE THINK

 2        THAT THE OVERWHELMING BALANCE IS IN FAVOR OF HAVING THE

 3        DEFENDANTS JUST TURN OVER THE SOCIALS, THAT THAT'S IN THE CLASS

 4        MEMBERS' BEST INTERESTS RATHER THAN PUT IT ON THE CLASS MEMBERS

 5        AND NOW OPEN UP A CLAIMS PROCESS TO HAVE THESE DIFFERENT PARTS

 6        OF IT THAT AREN'T RUNNING EFFICIENTLY AND THAT REQUIRE EITHER

 7        THE DEFENDANTS TO BE INVOLVED IN SOME WAY OR THE CLASS MEMBERS

 8        TO BE SENDING THINGS THAT ARE VERY, VERY CONFIDENTIAL THROUGH

 9        THE MAIL THAT WE DON'T WANT THEM TO BE SENDING.

10            THE COURT:  HOW DO YOU RESPOND TO MR. VAN NEST'S

11        POINT, THAT THE EXAMPLES THAT YOU GAVE, INCLUDING BUCCELLATO,

12        WHICH WAS A CASE BEFORE ME, THAT THOSE DID INVOLVE EMPLOYEES OF

13        THE SETTLING DEFENDANT?

14            MS. DERMODY:  I THINK THIS IS SORT OF MIXING A LOT OF

15        APPLES AND ORANGES, PROBABLY BECAUSE THIS IS SUCH A STRANGE

16        SCENARIO WE HAVE HERE.

17            THE COURT:  UM-HUM.

18            MS. DERMODY:  IN THE TYPICAL EMPLOYMENT CLASS ACTION

19        WHERE YOU'RE DEALING WITH EMPLOYEE COMPENSATION, YOU'VE GOT

20        ADVERSARIES, EMPLOYER AND EMPLOYEE ON BOTH SIDES, AND TYPICALLY

21        BEFORE A CLASS IS CERTIFIED, CERTAIN TYPES OF MATERIAL ARE NOT

22        PRODUCED.  SO SOMETIMES THE NAMES OF PEOPLE OR SOCIAL SECURITY

23        NUMBERS ARE NOT PRODUCED PRIOR TO CERTIFICATION, WHERE ALL THE

24        REST OF THE EMPLOYMENT HISTORY AND ALL OF THAT IS, SO JUST WHAT

25        HAPPENED IN THIS CASE ACTUALLY.
```

1          HERE THEN WE'RE HAVING A CERTIFICATION -- IT'S IN THE

2     SETTLEMENT CONTEXT, BUT IT'S A CERTIFICATION -- AND IN THE

3     LITIGATION CONTEXT WHEN YOU HAVE A CERTIFICATION, NAMES AND

4     CONTACT INFORMATION AND ASSOCIATED DATA ARE TYPICALLY ALWAYS

5     PRODUCED, PRODUCED SO FREQUENTLY THAT IT'S HARD TO FIND A CASE

6     WHERE THAT DISCOVERY DISPUTE IS EVEN, IS EVEN ARGUED BECAUSE

7     IT'S SO EXPECTED.

8          IN THE SETTLEMENT CONTEXT WHEN YOU'RE DEALING WITH

9     SERVICING CLAIMS, IT IS SO RECOGNIZED AS AN EFFICIENCY TO THE

10    SETTLEMENT PROCESS THAT EVERY EMPLOYER TURNS OVER SOCIALS, NO

11    MATTER HOW CONCERNED ABOUT DATA, PRIVACY, OR ANYTHING ELSE,

12    BECAUSE THEY RECOGNIZE, IN THE SETTLEMENT CONTEXT, THE MOST

13    EFFECTIVE WAY TO GET NOTICE TO THE CLASS AND TO MAKE SURE THAT

14    THE TAX OBLIGATIONS ARE MET IS TO HAVE THE SOCIALS PROVIDED TO

15    THE CLAIMS ADMINISTRATOR.

16         WE HAVE SORT OF AN AMALGAM OF ALL OF THOSE SCENARIOS HERE,

17    BUT I DON'T THINK IT IS THE RIGHT COMPARISON TO SAY, "OH, WE

18    DIDN'T SETTLE ON BEHALF OF SOME OF THESE PEOPLE, SO THEREFORE,

19    WE SHOULDN'T HAVE TO PROVIDE THIS INFORMATION."

20         WE HAVE, YOU KNOW, A -- THERE'S GOING TO BE A CERTIFIED

21    SETTLEMENT CLASS WHERE WE ARE ENTITLED TO GET THE INFORMATION

22    ABOUT THE CLASS MEMBERS IN ORDER TO EFFECTUATE THE SETTLEMENT.

23         I THINK THAT'S THE SCENARIO THAT WE'RE IN, AND THE BEST

24    GUIDEPOST FOR WHAT MAKES THE MOST SENSE IN FAVOR OF THE CLASS

25    MEMBERS ARE THE ORDERS THAT WE GAVE TO YOUR HONOR, INCLUDING

1      THE ONE YOU JUST MENTIONED, YOUR OWN ORDER IN BUCCELLATO.

2              MR. VAN NEST:  YOUR HONOR?

3              THE COURT:  YES.

4              MR. VAN NEST:  TWO THINGS.  WE CITED A NUMBER OF

5      CASES THAT TAKE A VERY REASONABLE APPROACH, WHICH IS IF THEY

6      NEED MORE HELP ON PEOPLE THAT DIDN'T RESPOND, THEY CAN GET IT.

7          THERE'S NO ISSUE OF RETALIATION HERE OR INFORMATION.

8          IF THE CLAIMS ADMINISTRATOR NEEDS FOLLOW-UP, THEY FOLLOW

9      UP WITH THE CLAIMANT, NOT WITH US, BECAUSE THE CLAIMANT HAS

10     RESPONDED.

11         THE ONLY CONDITION, OR SITUATION, UNDER WHICH WE WOULD BE

12     CONSULTED IS, "HEY, WE GOT A RETURN ENVELOPE, THE ADDRESS IS

13     WRONG, THE E-MAIL ADDRESS IS WRONG, AND THE PERSONAL E-MAIL

14     ADDRESS IS WRONG.  WE NEED A SOCIAL."

15         SO, FINE, THEY GET A SOCIAL.

16         OTHERWISE WE'RE DUMPING -- AND THEY'RE THE ONES THAT HAVE

17     USED "DUMP," "DATA DUMP" SEVERAL TIMES NOW -- 60,000 SOCIAL

18     SECURITY NUMBERS OUT THERE.  I DON'T CARE WHAT PROMISES ANYBODY

19     MAKES ABOUT CONFIDENTIALITY, THAT'S JUST NOT RIGHT.

20         AND THE CASES WE'VE CITED ARE CASES WHERE THIS ISSUE CAME

21     UP AND COURTS SAID, "LET'S TAKE A MORE PRACTICAL APPROACH.

22     GIVE THEM THE ADDRESSES, GIVE THEM THE E-MAILS, GET IT OUT

23     THERE.  IF THERE'S SOME THAT ARE NOT RETURNED AND NOT RESPONDED

24     TO BECAUSE THE ADDRESS IS WRONG, FINE, GO BACK IN AND WE'LL

25     PROVIDE ADDITIONAL SOCIAL SECURITY NUMBERS FOR THOSE PEOPLE."

1          BUT THAT'S A LOT BETTER AND A MORE TAILORED WAY TO DEAL

2     WITH THIS THAN JUST, QUOTE, "DUMPING," UNQUOTE, 60,000-SOME

3     SOCIAL SECURITY NUMBERS OUT TO THE MARKET WITH THE RISKS WE'RE

4     ALL FAMILIAR WITH THERE.

5          SO I DON'T THINK OUR APPROACH IS ONE BIT UNREASONABLE.  I

6     THINK THEIR APPROACH IS UNREASONABLE.

7          AND I DON'T THINK THERE'S ANY CASE WHERE A DEFENDANT

8     DIDN'T JUST FLAT OUT AGREE TO DO THIS WHERE THE COURT FLAT OUT

9     ORDERED IT WITHOUT AT LEAST GOING THROUGH SOME STEPS FIRST TO

10    TRY TO GET NOTICE TO THE CLASS.

11          THE COURT:  WELL, I DID IT IN BUCCELLATO, SO I DON'T

12    THINK IT'S ACCURATE TO SAY NO COURT HAS DONE IT.

13          MR. VAN NEST:  WELL, YOU HAD AGREEMENT THERE, THOUGH.

14    THAT'S MY POINT.  IN OTHER WORDS, THE DEFENDANT THERE AGREED.

15          BUT WHAT I'M SUGGESTING -- THIS IS UNUSUAL BECAUSE YOU'VE

16    GOT, AS THEY'VE CONCEDED, SOME 95 PERCENT OF THIS GROUP, AT

17    LEAST MEASURED BY COMPENSATION, IS -- ARE PEOPLE EMPLOYED BY

18    NON-SETTLING DEFENDANTS, SO THAT'S THE VAST MAJORITY OF THE

19    CLASS.  IT'S NOT SOMEBODY WHOSE EMPLOYER HAS AGREED TO A

20    SETTLEMENT.

21          ALL WE'RE SAYING IS WE UNDERSTAND WE NEED TO COOPERATE AND

22    WE UNDERSTAND WE NEED TO GIVE NAMES, ADDRESS, E-MAIL ADDRESS,

23    PERSONAL E-MAIL, WHATEVER WE HAVE ADDRESS-WISE.

24          THE COURT:  SO WHAT ARE YOU SUGGESTING BE THE

25    PASSWORD THEN?  YOU WANT THE CLAIMS ADMINISTRATOR TO SEND OUT

1    TWO NOTICES TO EVERY CLASS MEMBER SAYING "HERE'S THE WEBSITE TO

2    ACCESS, HERE'S YOUR CLAIM FORM NUMBER," AND THEN SEND A SECOND

3    LETTER OUT SAYING, "HERE'S YOUR PASSWORD THAT YOU USE IN

4    CONJUNCTION WITH THE CLAIM FORM NUMBER TO ACCESS YOUR

5    INFORMATION"?

6          MR. VAN NEST:  I'M SURE THAT THEY CAN FIGURE THAT

7    OUT.  IN MANY OF THESE INSTANCES THE CLAIMANT CHOOSES A

8    PASSWORD AND SUBMITS THAT TO THE SYSTEM.

9          SO, I MEAN, THE CREATION OF A PASSWORD -- IT CAN'T BE THE

10   CASE IN THIS DAY AND AGE THAT THE ONLY POSSIBLE PASSWORD

11   SOMEONE COULD USE IS THEIR SOCIAL.  WE KNOW THAT'S NOT TRUE.

12         THE CLAIMS ADMINISTRATORS ARE PAID TO FIGURE OUT HOW TO DO

13   THIS IN A SECURE WAY.  THEY CAN HAVE A CLAIMANT ELECT A

14   PASSWORD.  THEY CAN SEND OUT A CODED PASSWORD.  THERE'S A

15   MILLION WAYS TO DO IT THAT DON'T INVOLVE THE SOCIAL.

16         IT CAN'T POSSIBLY BE THAT THAT'S THE ONLY WAY TO DO IT,

17   PARTICULARLY WHERE YOU'RE TALKING ABOUT SO MANY PEOPLE IN THIS

18   GROUP AND SO MANY SOCIALS.

19         THE COURT:  NOW, FOR THE INFORMATION THAT YOU HAVE

20   AGREED TO PROVIDE, ARE YOU STILL INSISTING THAT THE COSTS BE

21   PAID BY THE PLAINTIFFS FOR COMPILING THIS DATA IF YOU DON'T

22   HAVE IT IN A READILY ACCESSIBLE WAY?

23         MR. VAN NEST:  YES.

24         THE COURT:  ALL RIGHT.  THAT'S DENIED.

25         MR. VAN NEST:  I THINK MOST OF IT --

```
1              THE COURT:  THAT'S DENIED.

2              MR. VAN NEST:  I THINK MOST OF IT WE HAVE.

3              THE COURT:  ALL RIGHT.  THAT'S DENIED ANYWAY.  THE

4      DEFENDANT WILL BEAR THE COSTS OF COMPILING ANY DATA.

5              OKAY.  I AM INCLINED TO HAVE THE CLAIMANTS PROVIDE THEIR

6      SOCIAL SECURITY NUMBERS AND THEN HAVE THE CLAIMS ADMINISTRATOR

7      CONTACT THE DEFENDANTS ONLY IF THEY'RE NOT ABLE TO REACH CLASS

8      MEMBERS AND FIND A GOOD ADDRESS BY WHICH TO CONTACT THE CLASS

9      MEMBERS, BUT I'M GOING TO GIVE YOU THE LAST WORD.

10             MS. DERMODY:  YOUR HONOR, I MEAN, I APPRECIATE THE

11     ATTENTION YOU'RE GIVING TO THIS.  I DON'T THINK IT'S AN EASY

12     QUESTION.

13             BUT I DO THINK THAT THE WHOLE REASON WE'RE HAVING THIS

14     DISCUSSION IS FOR THE INTERESTS OF THE CLASS MEMBERS, NOT FOR

15     THE INTERESTS OF THE DEFENDANTS, AND IT'S THEIR SOCIALS, AND IN

16     THIS INSTANCE, HAVING THEIR SOCIALS PROVIDED TO THE CLAIMS

17     ADMINISTRATOR FURTHERS THEIR INTERESTS IN HAVING AN EFFICIENT,

18     EFFECTIVE, CLEAN SETTLEMENT PROCESS.

19             I DON'T THINK THAT THERE'S ANY INTEREST FOR THEM, OTHER

20     THAN THE BURDEN AS TALKED ABOUT BY THE DEFENDANTS, NOT TO

21     PRODUCE THEIR SOCIAL SECURITY NUMBERS.

22             SO IN TERMS OF BALANCE HERE, I THINK IT'S REALLY ALL IN

23     FAVOR OF PRODUCING IT, BUT OF COURSE WE RESPECT YOUR HONOR'S

24     DECISION ON THAT.

25             THE COURT:  BUT IF THE DEFENDANTS ARE GOING TO GIVE
```

1    YOU, AS I'M GOING TO ORDER, THE JOB TITLES, SALARY INFORMATION,

2    THE LENGTH OF EMPLOYMENT IN THE VARIOUS JOB TITLES AND WITH THE

3    VARIOUS BASE SALARIES, ISN'T THAT GOING TO PROVIDE YOU THE

4    INFORMATION THAT YOU NEED?

5         YOU'VE ONLY ARTICULATED A NEED FOR THE SOCIAL FOR EITHER

6    THE PASSWORD ISSUE OR FINDING THE LOCATION IF YOU CAN'T

7    OTHERWISE FIND IT, WHICH THE DEFENDANTS ARE AGREEING TO, OR FOR

8    PURPOSES OF TAXES, WHICH IS ONLY RELEVANT IF A CLASS MEMBER

9    COMPLETES A CLAIMS FORM.

10         MS. DERMODY:  I THINK ALL OF THOSE ARE TERRIFIC

11   REASONS TO HAVE THE SOCIALS PRODUCED, YOUR HONOR.  I DON'T

12   THINK THOSE ARE SMALL THINGS.

13         SO WE JUST MAY NOT BE SEEING IT THE SAME WAY.  SINCE IT'S

14   READILY AVAILABLE IN THE DATA FIELDS THAT THE DEFENDANTS HAVE

15   ON THESE CLASS MEMBERS, TO OUR MIND, IT'S NOT A BURDEN

16   QUESTION.

17         IT'S REALLY JUST A MATTER OF, WILL HEFFLER KEEP THAT

18   MATERIAL CONFIDENTIAL?  AND THERE'S NO REASON TO BELIEVE THAT

19   THEY WON'T TAKE EVERY STEP TO KEEP THAT CONFIDENTIAL.

20         AND THE BENEFITS TO THE CLASS MEMBERS ARE -- WE'VE NOW

21   IDENTIFIED THREE OF THEM THAT WE THINK ARE VERY POSITIVE

22   BENEFITS TO PRODUCING IT.

23         THE COURT:  UM-HUM.  ALL RIGHT.  WELL, I'LL TAKE THIS

24   UNDER SUBMISSION.

25         LET'S GO TO -- OKAY.  I HAVE SOME INDIVIDUAL QUESTIONS

1      ABOUT THE DIFFERENT DOCUMENTS, SO LET'S GO TO THE --

2             MS. DERMODY:  AND YOUR HONOR, IF I CAN JUST SAY ONE

3      MORE THING ABOUT THE DATA?  WHATEVER WE ORDER ON THE DATA, WE

4      WOULD, ON BEHALF OF OUR -- OF THE SETTLING DEFENDANTS, I THINK

5      THAT THE SAME RULES SHOULD APPLY BOTH WAYS.  WE HAVE AGREED TO

6      THAT.

7          SO THE PRELIMINARY APPROVAL ORDER WAS DRAFTED WITH A

8      CERTAIN STRUCTURE IN MIND THAT ASSUMED THAT ALL OF THESE THINGS

9      WOULD BE PRODUCED.  WE DIDN'T WANT TO BE IN A POSITION OF

10     BASICALLY EXTRACTING FROM THE SETTLING DEFENDANTS A HIGHER

11     BURDEN OF DATA PRODUCTION THAN YOUR HONOR MIGHT BE INCLINED TO

12     GIVE THE NON-SETTLING DEFENDANTS.

13         SO WHATEVER YOU DECIDE TO DO, WE WOULD JUST WANT TO MAKE

14     SURE IT'S ONE-SIZE-FITS-ALL AND IT APPLIES TO ALL THE

15     DEFENDANTS.

16            THE COURT:  UM-HUM.  I MAY ORDER THE SOCIAL SECURITY

17     NUMBERS.  I JUST HAVEN'T MADE A FINAL DECISION RIGHT NOW.

18            MS. DERMODY:  OKAY.  THANK YOU.

19            THE COURT:  OKAY.  WITH REGARD TO -- LET'S GO TO THE

20     NEXT -- I HAD A COUPLE OF QUESTIONS ABOUT THE NOTICE.

21         SO IF YOU LOOK AT PAGE 1 WITH THE CHART "SUMMARY OF YOUR

22     LEGAL RIGHTS AND OPTIONS," UNDER "DO NOTHING," WHICH IS THE

23     FIRST ROW, IT SAYS "GET NO PAYMENT," AND IT SAYS "POTENTIALLY

24     GIVE UP YOUR RIGHTS TO EVER RECOVER FROM THE SETTLING

25     DEFENDANTS FOR THE LEGAL CLAIMS IN THIS CASE."

1          BUT MY UNDERSTANDING FROM READING THESE DOCUMENTS IS THAT

2     IF YOU DON'T DO ANYTHING, YOU DO GIVE UP YOUR RIGHTS UNDER THIS

3     SETTLEMENT.

4          SO WHY DOES IT CONDITION THAT, YOU KNOW, WAIVER THE RIGHTS

5     BY SAYING "POTENTIALLY"?

6          MS. DERMODY:  MAYBE -- YES, YOUR HONOR, THAT'S A GOOD

7      CATCH.

8          MAYBE IF IT JUST SAID "GIVE UP YOUR RIGHTS," BUT IT HAD AT

9     THE END A CLAUSE, "IF THIS SETTLEMENT IS FINALLY APPROVED" OR

10    "REACHES THE EFFECTIVE DATE" OR SOMETHING LIKE THAT.  I THINK

11    THE "POTENTIALLY" IS REALLY REFERRING TO THE FACT THAT THE

12    SETTLEMENT ISN'T QUITE ALL THE WAY DONE YET.

13          THE COURT:  OKAY.  WHY DON'T YOU --

14          MS. DERMODY:  CAN I CHECK WITH MY --

15          THE COURT:  CAN I HAVE YOU CLARIFY THAT, PLEASE?

16     (DISCUSSION OFF THE RECORD BETWEEN COUNSEL.)

17          MS. DERMODY:  WE CAN FIX THAT, YOUR HONOR, YES.

18          THE COURT:  AND THEN ON THE NEXT ONE, I ALWAYS HAVE

19     PROBLEMS WITH THE NEXT ONE BECAUSE IT GIVES THE IMPRESSION THAT

20     CLASS MEMBERS WILL GET NOTHING IF THEY OPT OUT.

21          SO WHERE IT -- THIS IS THE ROW THAT SAYS "EXCLUDE

22     YOURSELF, GET NO PAYMENT."  I WOULD LIKE THAT TO CLARIFY, "GET

23     NO PAYMENT FROM THIS SETTLEMENT" OR "FROM THE SETTLING

24     DEFENDANTS PURSUANT TO THE SETTLEMENT AGREEMENT," OR HOWEVER

25     YOU WANT TO WORD IT.

```
1          MS. DERMODY:  OKAY, YOUR HONOR.  YES, WE CAN FIX

2     THAT.

3          THE COURT:  OKAY.  AND THEN I THOUGHT THE LAST TWO

4     ROWS ARE KIND OF MERGING OBJECTING AND COMMENTING, AND ALSO

5     THEN MERGING THE HEARING, AND SINCE YOU HAVE A REQUIREMENT THAT

6     IN ORDER TO VOICE AN OBJECTION AT THE HEARING, YOU HAVE TO FILE

7     AND SERVE YOUR OBJECTION WITHIN 45 DAYS, I THINK THAT SHOULD BE

8     SPELLED OUT IN THIS BOX SO THAT FOLKS KNOW THAT IF THEY FAIL TO

9     MEET THAT DEADLINE, THEY'RE EFFECTIVELY FORFEITING THEIR RIGHT

10    TO OBJECT AT THE HEARING.

11         MS. DERMODY:  THAT MAKES SENSE, YOUR HONOR, YES.

12         THE COURT:  IF YOU COULD CLARIFY THAT IN THOSE LAST

13    TWO ROWS IN THE CHART.

14       IF YOU LOOK AT QUESTION 20 --

15         MR. SAVERI:  I'M SORRY, YOUR HONOR, 20, 2-0?

16         THE COURT:  2-0 ON PAGE 8 OF THE NOTICE --

17         MR. SAVERI:  THANK YOU.

18         THE COURT:  -- WHERE IT GIVES CLASS MEMBERS THE

19    ADVISEMENT THAT THEY CAN OPT OUT FROM JUST ONE OF THE TWO

20    SETTLEMENTS, BUT THE -- THE CLAIM FORM ITSELF DOESN'T GIVE YOU

21    THAT OPTION TO OPT OUT OF ONE OF THE TWO SETTLEMENTS.  YOU'RE

22    EITHER ALL IN OR YOU'RE ALL OUT.

23       SO I THINK THAT YOU NEED TO PROVIDE SOMETHING IN THE

24    CLAIM FORM THAT GIVES THE CLAIMANT AN OPTION TO OPT OUT OF ONE

25    OF THE TWO SETTLEMENTS.
```

1          MS. DERMODY:  SO I THINK THAT THESE ARE --

2          THE COURT:  IS IT IN THERE?

3          MS. DERMODY:  IF I'M UNDERSTANDING YOUR HONOR, THE

4     CLAIM FORM IS ONLY INTENDED TO BE FILED WHEN SOMEONE WANTS TO

5     GET MONEY OUT OF THE SETTLEMENT.  THAT'S ITS ONLY PURPOSE.

6          AND THERE'S ACTUALLY A DIFFERENT CLAIM FORM FOR EACH OF

7     THE SETTLEMENTS.  SO IF, HYPOTHETICALLY, THERE WAS A CLASS

8     MEMBER WHO REALLY LIKED THE PIXAR/LUCAS SETTLEMENT, BUT DIDN'T

9     LIKE THE INTUIT SETTLEMENT, THEY MIGHT APPROACH THEIR DECISIONS

10    DIFFERENTLY AND FILE A CLAIM FORM FOR ONE AND NOT FOR THE OTHER

11    OR OPT OUT OF ONE.

12         IN TERMS OF THE OPT OUTS, THE EXPECTATION UNDER THE

13    SETTLEMENT AND IN THE NOTICE IS THAT A PERSON WILL WRITE A

14    LETTER SAYING "I WANT TO OPT OUT" AND SPECIFY THAT THEY DON'T

15    WANT TO OPT OUT.

16         AND WE INTENTIONALLY DID NOT PROVIDE A STANDARD FORM TO DO

17    THAT BECAUSE OUR EXPERIENCE IN OTHER CASES WHEN THERE HAS BEEN

18    A FORM IS THAT PEOPLE COMPLETED EVERY FORM AND SUBMITTED ALL

19    THE FORMS, WHETHER THEY WERE CLAIM FORMES, OPT OUT FORMS -- I

20    MEAN, ANY FORM THAT WAS AVAILABLE GOT COMPLETED AND THEN THERE

21    WAS A LOT OF UNDOING THE MISTAKES THAT WERE MADE FROM MULTIPLE

22    SUBMISSIONS OF INCONSISTENT FORMS.

23         THE COURT:  I SEE.  FOR WHATEVER REASON, I ONLY HAVE

24    A CLAIM FORM FOR THE PIXAR AND LUCASFILM SETTLEMENT.  YOU'RE

25    SAYING THERE'S A SEPARATE CLAIM FORM FOR THE INTUIT SETTLEMENT?

```
 1        IS THAT RIGHT?  YOU'RE SAYING YOU'RE GOING TO MAIL OUT TWO

 2    DIFFERENT --

 3              MS. DERMODY:  YES.

 4              THE COURT:  THE NOTICE IS GOING TO BE ONE --

 5              MS. DERMODY:  YEAH, RIGHT.

 6              THE COURT:  -- WITH CLAIM FORMS FOR EITHER?

 7              MS. DERMODY:  YES.  AND IF YOUR HONOR WILL LOOK AT

 8    THE CLAIM FORM, IN THE MIDDLE OF PAGE 1 WHERE IT SAYS "NOTE,"

 9    AND ALSO ACTUALLY WHERE IT SAYS "YOUR SHARE OF PARTIAL

10    SETTLEMENTS," WHERE IT SAYS PIXAR AND LUCASFILM --

11              THE COURT:  UM-HUM.

12              MS. DERMODY:  -- THERE IS -- I'M SORRY.

13        IS THIS RIGHT?

14              THE COURT:  SEE, THIS -- IT LOOKS LIKE THE SAME CLAIM

15    FORM FOR BOTH SETTLEMENTS.

16              MS. DERMODY:  I THINK --

17              THE COURT:  I'M LOOKING AT THE "NOTE."  IT SAYS

18    "APPLY FOR PAYMENT FROM BOTH THE PARTIAL SETTLEMENT FROM PIXAR

19    AND LUCASFILM AND PARTIAL SETTLEMENT WITH INTUIT BY USING JUST

20    ONE CLAIM FORM."

21        SO I GUESS YOU'RE SAYING THE CLASS MEMBER IS GOING TO FILL

22    OUT ONE CLAIM FORM --

23              MS. DERMODY:  I'M SORRY.

24              THE COURT:  -- BUT THEN ALSO SEND IN A SEPARATE

25    LETTER THAT SAYS, "OH, BY THE WAY, I'M OPTING OUT OF ONE VERSUS
```

```
 1    THE OTHER."

 2              MS. DERMODY:  IF THEY WANT TO, YES.

 3         AND I CAN UNDERSTAND YOUR CONFUSION.  IT SPEAKS TO MY OWN

 4    CONFUSION A MINUTE AGO.  I'M NOT SURE OF AN EASIER WAY TO DO

 5    THIS, UNLESS WE DID TWO SEPARATE CLAIM FORMS THAT ARE

 6    PIXAR/LUCAS AND INTUIT, AS I ACTUALLY HAD THOUGHT WE HAD DONE.

 7              THE COURT:  WHAT IF YOU JUST HAD A CHECK THE BOX ON

 8    HERE THAT SAYS, YOU KNOW --

 9              MR. SAVERI:  YOUR HONOR?

10              THE COURT:  UM-HUM.

11              MR. SAVERI:  SO YOU WOULD WANT SOMETHING THAT WOULD

12    BE A BOX THEY CHECK THAT SAYS -- ONE WOULD BE INTUIT AND ONE

13    WOULD BE PIXAR/LUCASFILM, OR BOTH, SOMETHING LIKE THAT, SO THAT

14    THEY WOULD AFFIRMATIVELY INDICATE WHAT THEY WERE SIGNING UP

15    FOR?  IS THAT THE IDEA?  BECAUSE WE CAN DO THAT.

16              THE COURT:  I DON'T HAVE A STRONG FEELING ABOUT THE

17    BOTH.  I MEAN, IF YOU HAVE IT ESTABLISHED THAT SOMEONE WRITES

18    IN A LETTER, I JUST -- I JUST THOUGHT IF -- YOU KNOW, THE

19    NOTICE SAYS YOU DON'T HAVE TO DO BOTH SETTLEMENTS AND YOU CAN

20    PICK ONE OR THE OTHER, BUT THEN THE CLAIM FORM DOESN'T REALLY

21    GIVE YOU THAT OPTION.

22              MS. DERMODY:  YEAH.  YOU'RE MAKING A VERY GOOD POINT,

23    YOUR HONOR.  I GUESS -- I GUESS THE WAY WE --

24              THE COURT:  I DON'T THINK THEY'RE GOING TO WANT TO

25    DEAL WITH IT.
```

```
 1              MS. DERMODY:  I GUESS THE WAY WE STRUCTURED THIS IS

 2    WE EXPECT VERY FEW OPT OUTS, AND WE CAN CALL THOSE PEOPLE,

 3    WHICH WE TYPICALLY DO TO MAKE SURE THAT THEY UNDERSTAND THAT

 4    THEY'RE OPTING OUT, WHEREAS THE CLAIM FORM WE EXPECT TO GET

 5    TENS OF THOUSANDS OF THOSE, AND WE MAYBE DIDN'T WANT TO HAVE A

 6    LOT OF MISTAKES POTENTIALLY OF PEOPLE CHECKING OR NOT CHECKING

 7    OR DOING -- JUST MAKING MISTAKES ON THE CLAIM FORM.

 8         SO THE EASIER THE CLAIM FORM, THE LESS LIKELY IT IS FOR A

 9    LOT OF FOLLOW UP.

10              THE COURT:  YEAH.

11              MR. SAVERI:  I MEAN, FRANKLY, YOUR HONOR, I THINK WE

12    ASSUMED THAT IF THEY WERE SIGNING THE CLAIM FORM, THEY WANTED

13    TO SIGN UP FOR BOTH BECAUSE THEY WANTED THE MONEY FROM BOTH.

14              THE COURT:  I MEAN, I WOULD SUSPECT THAT THAT'S MORE

15    LIKELY TO HAPPEN.  BUT --

16              MR. SAVERI:  THERE IS SOME MATHEMATICAL POSSIBILITY,

17    YOUR HONOR, THAT SOMEONE WOULD WANT TO, LIKE, SPLIT THEM UP.  I

18    COMPLETELY AGREE.  AND WHO KNOWS, RIGHT?  THEY MAY WORK FOR ONE

19    COMPANY OR NOT THE OTHER OR LOVE GEORGE LUCAS OR NOT FEEL SO

20    STRONGLY, RIGHT?

21              THE COURT:  I MEAN, WHO KNOWS.  THERE JUST COULD BE

22    SOME REASON WHY -- I MEAN, I AGREE.  IT'S GOING TO BE LIKELY A

23    VERY SMALL NUMBER.

24         BUT IF WE HAVE THAT OPTION IN THE NOTICE --

25              MS. DERMODY:  OKAY.  SO YOUR HONOR, YOU --
```

```
 1              THE COURT:  I'M GOING TO LET YOU THINK ABOUT HOW YOU
 2    WANT TO HANDLE THAT.
 3              MS. DERMODY:  OKAY.  JUST TO MAKE SURE WE UNDERSTAND,
 4    WHAT YOU'RE PROPOSING WOULD JUST BE A BOX CHECK ON THE CLAIM
 5    FORM?  WE COULD ADD THAT.
 6              THE COURT:  IT DOESN'T HAVE TO BE A BOX CHECK.  I
 7    MEAN, YOU ALL DO THIS WAY MORE THAN I DO.  IF YOU THINK THERE'S
 8    ANOTHER WAY THAT MAKES IT CLEAR AND MINIMIZES MISTAKES FOR
 9    PEOPLE TO DO AN ELECTION --
10              MS. DERMODY:  OKAY.  WE'LL THINK ABOUT THAT, YOUR
11    HONOR.  THANK YOU.
12              THE COURT:  OKAY.  ALL RIGHT.  OKAY.  SO ON THE CLAIM
13    FORM, CAN YOU ALSO JUST MAKE IT CLEARER THAT THE DEADLINE FOR
14    DISPUTING INFORMATION ABOUT A CLASS MEMBERS' EMPLOYMENT IS THE
15    SAME AS THE DEADLINE FOR COMPLETING THE CLAIM FORM ON-LINE?
16              MS. DERMODY:  YES, WE CAN DO THAT.
17              THE COURT:  OKAY.  WHY DON'T DO YOU THAT?
18         LET'S GO BACK TO THE NOTICE HERE WHERE -- THIS IS THE
19    "EXCLUDE YOURSELF," SECOND ROW OF THE SUMMARY CHART.
20              MS. DERMODY:  I'M SORRY, YOUR HONOR.  WHICH PAGE ARE
21    YOU ON?
22              THE COURT:  PAGE 1.
23              MS. DERMODY:  OH, OKAY, YES.
24              THE COURT:  I THINK THAT WORDING IS REALLY AWKWARD.
25              MS. DERMODY:  IN --
```

```
1              THE COURT:  UNDER "EXCLUDE YOURSELF," IT SAYS "THIS

2      IS THE ONLY WAY THAT YOU CAN EVER BE PART OF ANY OTHER LAWSUIT

3      AGAINST ANY OF THE SETTLING DEFENDANTS ABOUT THE LEGAL CLAIMS

4      IN THIS CASE."

5              WHY DON'T YOU CHANGE THAT TO "THIS IS THE ONLY WAY YOU CAN

6      FILE YOUR OWN LAWSUIT OR BE PART OF ANY OTHER LAWSUIT ABOUT THE

7      LEGAL CLAIMS IN THIS CASE AGAINST ANY OF THE SETTLING

8      DEFENDANTS."  OKAY?

9              MS. DERMODY:  SO IT WOULD SAY "THIS IS THE ONLY WAY

10     THAT YOU CAN" --

11             THE COURT:  "YOU CAN FILE YOUR OWN LAWSUIT OR BE PART

12     OF ANY OTHER LAWSUIT ABOUT THE LEGAL CLAIMS IN THIS CASE

13     AGAINST ANY OF THE SETTLING DEFENDANTS."

14             MS. DERMODY:  THAT'S FINE WITH PLAINTIFFS.

15     I'M JUST CHECKING WITH MY COLLEAGUES.

16     DO YOU WANT TO DO THAT?

17             MS. HENN:  (NODS HEAD UP AND DOWN.)

18             MS. DERMODY:  OKAY.  YEP.  THANK YOU, YOUR HONOR.

19             THE COURT:  NOW, THIS WILL ONLY DEPEND ON IF I PUSH

20     THE FAIRNESS HEARING BACK, BUT IN QUESTION 15 OF THE NOTICE, IT

21     IMPLIES THAT THE ONLY DELAY TO RECEIVING PAYMENTS WOULD BE IF

22     THERE'S AN APPEAL, BUT IT SOUNDS LIKE YOU ALL ARE CONTEMPLATING

23     A DELAY BEYOND THE FINAL FAIRNESS HEARING, SO I THINK THAT IF I

24     AGREE TO DO THAT, WHICH I HAVEN'T AGREED TO DO, THAT WOULD NEED

25     TO BE CLARIFIED.
```

 1              MS. DERMODY:  OKAY, YOUR HONOR.  THAT -- WITH ALL OF

 2    THESE, WOULD IT BE OKAY IF WE SUBMIT TO YOUR HONOR, IN THE NEXT

 3    24 HOURS, A REVISED NOTICE THAT PICKS UP THESE CHANGES FOR YOUR

 4    HONOR'S CONSIDERATION?

 5              THE COURT:  YEAH.  ALTHOUGH I THINK ON THAT ONE I

 6    NEED TO TELL YOU, I STILL FEEL UNCOMFORTABLE ABOUT GIVING FINAL

 7    APPROVAL IF I JUST DON'T KNOW HOW MUCH MONEY THE CLASS MEMBERS

 8    ARE GETTING.

 9         I COULD PUSH BACK -- YOU KNOW, I COULD GIVE YOU AN EARLY

10    FINAL APPROVAL DATE, BUT I COULD ALSO, YOU KNOW, PUSH IT CLOSER

11    TO -- I GUESS YOUR DEADLINE IS IF ANY OTHER DEFENDANT SETTLES

12    BY JUNE 1, SO WE'RE NOT REALLY EVEN GOING TO KNOW UNTIL JUNE 1,

13    RIGHT?

14         HOW MUCH MORE BURDENSOME WOULD IT BE TO JUST GO AHEAD AND

15    MAKE THE PAY OUT FROM THIS SETTLEMENT?  ARE YOU WORRIED ABOUT

16    CLAIMS ADMINISTRATION FEES AND COSTS?

17              MS. DERMODY:  I MEAN, IT'S SOMEWHAT MORE BURDENSOME,

18    YOUR HONOR, IN TERMS OF EFFICIENCIES IF WE ASSUME THAT THERE'S

19    SOMETHING ELSE COMING DOWN THE ROAD.

20         WE COULD GET IT ALL DONE NOW.  I THINK OUR VIEW, AMONG

21    OTHER THINGS, WAS WE WANT THE CLASS MEMBERS TO GET BIGGER

22    CHECKS THAT REFLECT MORE OF THE CASE IF THAT OPTION WAS OUT

23    THERE.

24         BUT IF YOUR HONOR WANTS TO GET IT DONE AS THEY COME IN, I

25    THINK THAT'S ALSO A WAY TO DO IT.

```
1              THE COURT:  WELL, THIS IS WHAT I'M INCLINED TO DO.

2     I'LL EITHER GIVE YOU A FINAL APPROVAL HEARING OF FEBRUARY 27TH

3     AT 1:30, OR -- AND I'M GOING TO ASSUME THAT THERE'S NOT GOING

4     TO BE A DELAY AND THAT WE'RE GOING TO MOVE FORWARD ON YOUR

5     ATTORNEYS' FEES MOTION AND THE CLASS IS GOING TO GET A PAY OUT

6     SOON THEREAFTER; OR I WILL -- YOU KNOW, I COULD STILL GO AHEAD

7     AND GIVE PRELIMINARY APPROVAL NOW, BUT I WOULD PROBABLY

8     POSTPONE THE FINAL FAIRNESS HEARING UNTIL SOMETIME IN MID-JUNE.

9              SO WHAT DO YOU PREFER OF THOSE TWO CHOICES?

10         (DISCUSSION OFF THE RECORD BETWEEN PLAINTIFFS' COUNSEL.)

11              MS. DERMODY:  I THINK, YOUR HONOR, WE'D LIKE TO GO

12     FORWARD NOW.

13              THE COURT:  OKAY.  ALL RIGHT.  THEN I'M GOING TO GIVE

14     YOU THE TIMELINE ACCORDING TO THE FEBRUARY 27TH DATE.

15         OKAY.  SO THEN WHAT I'M GOING TO ASK IS THAT FOR THESE

16     LITTLE NITS, IF YOU CAN MAKE THE NITS AND THEN IF YOU CAN

17     E-MAIL ME, IN CASE WE WANT TO MAKE ANY MORE, A REVISED NOTICE

18     FORM, CLAIM FORM, AND PROPOSED ORDER.

19         LET ME GO THROUGH THE REST.

20         SO FOR -- I GUESS FOR QUESTION 15, YOU DON'T HAVE TO WORRY

21     ABOUT IT BECAUSE THERE WON'T BE ANY FURTHER DELAYS.

22              MS. DERMODY:  EXCUSE ME, YOUR HONOR.  I'M JUST

23     CONSULTING WITH MY COLLEAGUE.

24              THE COURT:  YEAH, GO AHEAD.  TAKE YOUR TIME.

25         (DISCUSSION OFF THE RECORD BETWEEN PLAINTIFFS' COUNSEL.)
```

```
 1              THE COURT:  HAVE YOU CHANGED YOUR MIND ABOUT WHETHER
 2      YOU WANTED --
 3              MS. DERMODY:  WE HAVE DIVERSITY OF OPINION, YOUR
 4      HONOR, BUT I THINK WE'RE GOING TO STICK WITH WHAT WE'VE
 5      PROPOSED.
 6              THE COURT:  OKAY.  TO DO IT --
 7              MS. DERMODY:  TO DO IT IN FEBRUARY.
 8              THE COURT:  OKAY.  ALL RIGHT.  THAT WILL GIVE THE
 9      DEFENDANTS CLOSURE FASTER FOR THE SETTLING DEFENDANTS.
10          OKAY.  THEN I'M GOING TO ORDER THE SOCIAL SECURITY NUMBERS
11      SO THIS CAN BE DONE EXPEDITIOUSLY.  I DO WANT -- IS IT HEFFLER?
12              MS. DERMODY:  HEFFLER, YES, YOUR HONOR.
13              THE COURT:  -- HEFFLER TO FILE A DECLARATION ABOUT
14      ALL OF THE STEPS THAT THEY'RE GOING TO TAKE TO SECURE THE
15      SOCIAL SECURITY NUMBERS AND OTHER INFORMATION.
16          WHEN CAN THEY FILE THAT?
17              MS. DERMODY:  I THINK ABOUT A WEEK, YOUR HONOR.  I
18      DON'T -- WE DON'T CONTROL THEM IN THAT SENSE, BUT I HAVE TO
19      IMAGINE THAT THEY CAN TURN THAT STUFF OVER VERY, VERY QUICKLY.
20              THE COURT:  WELL, THEY'RE GOING TO HAVE TO DO IT
21      SOONER THAN THAT.  LET'S HAVE THEM DO IT -- BECAUSE THE
22      TIMELINE THAT I CREATED NEEDS THEM TO DO THAT FASTER.
23              MS. DERMODY:  OKAY, YOUR HONOR.  WOULD THIS FRIDAY
24      BE --
25              THE COURT:  YES, THAT'S FINE.
```

```
 1          MS. DERMODY:  OKAY.

 2          THE COURT:  SO 10-25.  I MEAN, I LOOKED AT THE

 3   CALIFORNIA SUPREME COURT'S DECISION IN PIONEER ELECTRONICS

 4   VERSUS SUPERIOR COURT OF LOS ANGELES AND DOING THE BALANCING OF

 5   PRIVACY INTERESTS AGAINST THE NEED FOR DISCLOSURE.

 6          I THINK IN THIS CASE THE NEED FOR DISCLOSURE TO NOTIFY

 7   THE CLASS OUTWEIGHS THE PRIVACY INTERESTS AND WOULD BE AN

 8   INTEREST TO THE CLASS TO MORE EXPEDITIOUSLY PROCESS THEIR

 9   CLAIMS.

10          NOW -- OKAY.  SO QUESTION 15 IS MOOTED.

11          WITH REGARD TO -- OH, QUESTION 22 OF THE NOTICE, THAT'S

12   THE SAME ISSUE AS THE CLAIM FORM.  ON 22, YOU MAY WANT TO MAKE

13   IT CLEARER THAT EVEN IF YOU OPT OUT OF ONE SETTLEMENT, YOU CAN

14   STILL RECOVER COMPENSATION FROM THE OTHER SETTLEMENT.  IT'S NOT

15   REALLY CLEAR.

16          MS. DERMODY:  OKAY.

17          THE COURT:  OKAY.  ALL RIGHT.  QUESTION 27 OF THE

18   NOTICE, ON 27, I DO THINK IT NEEDS TO STATE THAT THE SAME AS

19   THE "EXCLUDE YOURSELF" ROW IN THE SUMMARY CHART ON PAGE 1,

20   THAT -- WELL, DO THEY MAINTAIN THEIR RIGHT TO SUE IF THEY DO

21   NOTHING?  OR THEY JUST GIVE UP THEIR RIGHTS AS CLASS MEMBERS

22   AND DON'T GET ANY COMPENSATION?

23          MS. DERMODY:  THE LATTER, YOUR HONOR.  THEY

24   BASICALLY -- THEY GIVE UP THEIR RIGHT TO HAVE CLAIMS AGAINST

25   THE SETTLING DEFENDANTS FOR THE ISSUES IN THIS CASE.
```

```
1              MR. STEWART:  YOUR HONOR, I BELIEVE IF THEY DON'T OPT

2      OUT, IF THEY DID NOTHING --

3              THE COURT:  YES.

4              MR. STEWART:  -- MEANING THEY DIDN'T OPT OUT --

5              THE COURT:  YES.

6              MR. STEWART:  -- THEN THEY WOULD BE BOUND BY THE

7      RELEASE.

8              MS. DERMODY:  RIGHT.

9              MR. STEWART:  SO THEY WOULD BE GIVING UP THEIR RIGHT

10     TO SUE.

11             THE COURT:  I'M SORRY.  I DIDN'T HEAR THE LAST PART.

12             MR. STEWART:  I'M SORRY.  THEY WOULD BE GIVING UP

13     THEIR RIGHT TO SUE IF THEY DO NOTHING.

14             THE COURT:  OKAY.  I THINK THAT SHOULD PROBABLY BE A

15     LITTLE MORE CLEAR --

16             MS. DERMODY:  OKAY.

17             THE COURT:  -- THAT THAT'S ALSO A CONSEQUENCE OF

18     DOING NOTHING, BECAUSE THEY'RE GIVING UP ALL THEIR CLAIMS.

19     IT'S JUST FOCUSSED ON THE MONEY RIGHT NOW.

20             MS. DERMODY:  RIGHT, YOUR HONOR, YES.

21             THE COURT:  OKAY.  SO IN YOUR VARIOUS AGREEMENTS, YOU

22     HAVE, LIKE, SPECIFIC LANGUAGE THAT THE OPT OUT FOLKS NEED TO

23     USE, BUT THAT'S NOT INCLUDED IN THE NOTICE, THIS "I WANT TO BE

24     EXCLUDED FROM THE HIGH-TECH EMPLOYEE ANTITRUST LITIGATION," ET

25     CETERA.
```

```
 1              MS. DERMODY:  THAT'S A GOOD CATCH, YOUR HONOR.  THAT
 2      IS AN OVERSIGHT.  YES, WE'LL ADD THAT.
 3              THE COURT:  OKAY.  ALL RIGHT.  SO HERE IS THE
 4      SCHEDULE:  I'D LIKE YOU TO SUBMIT THE REVISED NOTICE CLAIM FORM
 5      AND PROPOSED ORDER BY NEXT MONDAY.
 6          CAN YOU DO THAT?
 7              MS. DERMODY:  YES, ABSOLUTELY.
 8              THE COURT:  OR DO YOU WANT TO DO IT SOONER?
 9              MS. DERMODY:  WE CAN DO IT SOONER, YOUR HONOR.
10              THE COURT:  OKAY.  WHEN CAN YOU DO IT?
11              MS. DERMODY:  IT'LL MAYBE TAKE A DAY FOR US TO WORK
12      WITH THE SETTLING DEFENDANTS TO MAKE SURE THAT EVERYONE'S IN
13      AGREEMENT ON THE LANGUAGE, BUT MAYBE IN TWO DAYS.
14              THE COURT:  I MEAN, IF YOU NEED UNTIL THE END OF THE
15      WEEK, THAT'S -- I JUST WANT TO MAKE SURE IT'S RIGHT.
16              MS. DERMODY:  THAT WOULD BE FINE, YOUR HONOR, YES.
17              THE COURT:  OKAY.  THE 25TH.  OKAY.  SO FILE IT BY
18      THE 25TH.
19          THE DEFENDANTS ARE TO PROVIDE THE CLASS MEMBER INFORMATION
20      BY NOVEMBER 25TH; THE NOTICES ARE TO BE MAILED AND POSTED TO
21      THE INTERNET ON DECEMBER 9TH.
22              MR. SAVERI:  I'M JUST CATCHING UP.  DECEMBER 9TH,
23      YOUR HONOR?
24              THE COURT:  YES.  THEN FILE YOUR MOTIONS FOR FINAL
25      APPROVAL, ATTORNEYS' FEES AND COSTS, AND SERVICE AWARDS
```

```
 1    DECEMBER 20TH.  NO, WAIT A MINUTE.

 2         WE HAVE THE OPT OUT DEADLINE AND OBJECTION DEADLINE OF

 3    JANUARY 24TH.  I THINK THAT -- WOULDN'T YOU WANT TO RESPOND TO

 4    ANY OF THOSE OBJECTIONS IN YOUR MOTIONS?

 5              MS. DERMODY:  I THINK, YOUR HONOR, THAT THE CURRENT

 6    BEST PRACTICE ON THE FEE PETITION, FEE AND COST PETITION --

 7              THE COURT:  YEAH.

 8              MS. DERMODY:  -- IS TWO WEEKS BEFORE THE OPT OUT

 9    DEADLINE, OPT OUT AND OBJECTION DEADLINE.  SO WHATEVER WE SET

10    AS THE OPT OUT DEADLINE, WE WOULD FILE OUR FEE AND COST

11    PETITION TWO WEEKS BEFORE THAT; AND THEN WE'D FILE OUR MOTION

12    FOR FINAL APPROVAL AFTER THE OPT OUT OBJECTION DEADLINE FOR THE

13    PURPOSE OF RESPONDING TO ANY OBJECTIONS AND CLARIFYING ISSUES

14    FOR THE COURT.

15              THE COURT:  YOU KNOW WHAT?  WHY DON'T YOU SET THESE

16    DATES, AND I'LL JUST TELL YOU, I WANT EVERYTHING NO LATER THAN

17    TWO WEEKS BEFORE THE FINAL APPROVAL HEARING.  SO THE FINAL

18    APPROVAL HEARING IS GOING TO BE FEBRUARY 20TH -- I'M SORRY --

19    FEBRUARY 27TH, 2014, AT 1:30.

20         AND JUST MAKE SURE THAT I GET EVERYTHING -- WELL, YOU SAID

21    SEVEN DAYS BEFORE?  I GUESS THAT'S ALL RIGHT.  I MEAN, I'D

22    PREFER TWO WEEKS, BUT SEVEN DAYS IS FINE IF THAT GIVES THE

23    CLASS MORE TIME TO FIGURE OUT IF THEY WANT TO PARTICIPATE OR

24    OPT OUT OR OBJECT OR WHATNOT.

25              MS. DERMODY:  I THINK THE ONLY -- MY ONLY POINT, YOUR
```

1    HONOR, WAS JUST ABOUT THE FEE MOTION, THAT THAT SHOULD IDEALLY

2    BE COMPLETED AND FILED WITH YOUR HONOR TWO WEEKS BEFORE THE OPT

3    OUT DEADLINE, SO BACK IN JANUARY; AND THEN THERE WILL BE

4    ACTUALLY A FINAL APPROVAL BRIEF THAT DEALS WITH OTHER MATTERS

5    THAT CAN BE FILED TWO WEEKS BEFORE THE FINAL APPROVAL HEARING,

6    OR LONGER IF YOUR HONOR WOULD PREFER TO HAVE LONGER.

7         THE COURT:  OH, NO.  TWO WEEKS -- I'D LIKE IT TO BE

8    SOONER OR CLOSER TO THE APPROVAL HEARING, BECAUSE WHAT I LIKE

9    TO GET AT THE FINAL APPROVAL HEARING ARE THE LATEST STATISTICS

10   OF HOW MANY PEOPLE HAVE OPTED OUT, HOW MANY PEOPLE HAVE

11   SUBMITTED CLAIM FORMS, I LIKE ALL THE FINAL DATA ON HOW MUCH

12   MONEY PEOPLE ARE GOING TO RECEIVE, AND I THINK YOU GET A MORE

13   COMPLETE ANSWER THE CLOSER THAT IS TO THE HEARING.

14        MS. DERMODY:  OKAY, YOUR HONOR.

15        MR. SAVERI:  SO IF THE HEARING, FINAL APPROVAL

16   HEARING IS ON THE 27TH --

17        THE COURT:  YES.

18        MR. SAVERI:  -- ARE YOU SAYING YOU'D LIKE -- YOU'D BE

19   OKAY WITH A BRIEF ON THE 20TH, FOR EXAMPLE?

20     I THINK WE WANT TO MAKE SURE YOU HAVE ENOUGH TIME --

21        THE COURT:  I PREFER TWO WEEKS.  I'D PREFER THE

22   13TH --

23        MR. SAVERI:  OKAY.

24        THE COURT:  -- TO BE, YOU KNOW, AS COMPLETE AS

25   POSSIBLE AS TO HOW MANY CLAIM FORMS HAVE BEEN RECEIVED, ET

1    CETERA.

2         MR. SAVERI:  THAT'LL WORK.  I JUST WANTED TO MAKE

3    SURE WE HAD ENOUGH TIME TO GET THE INFORMATION AND NOT -- AND

4    WE DIDN'T CROWD YOU.

5         THE COURT:  SO WHY DON'T YOU PUT THE DEADLINES IN IN

6    THE REVISED DOCUMENTS THAT YOU'RE GOING TO SUBMIT.

7         I DON'T KNOW IF YOU WANTED -- 45 DAYS FROM THE NOTICE DATE

8    FOR AN OPT OUT OR OBJECTION IS A LITTLE BIT TIGHT.  IF YOU

9    COULD BUILD IN MORE TIME FOR THAT, I THINK THAT WOULD BE GOOD,

10   BECAUSE THAT MAY NOT -- I DON'T KNOW IF THAT'S POSSIBLE WITH

11   THE FEBRUARY 27TH HEARING DATE.

12        ALTHOUGH I GUESS THAT'S PART OF YOUR SETTLEMENT AGREEMENT

13   IS THE 45 DAYS, SO --

14        (DISCUSSION OFF THE RECORD BETWEEN PLAINTIFFS' COUNSEL.)

15        THE COURT:  CAN YOU ALSO FILE A NEW PROPOSED ORDER,

16   AND IN PARAGRAPH 3 OF YOUR PROPOSED ORDER, PUT IN REASONS WHY

17   THE AGREEMENT FALLS WITHIN THE RANGE OF REASONABLENESS.

18        AND ULTIMATELY WHEN YOU FILE FINAL APPROVAL DOCUMENTS,

19   ESPECIALLY ON ATTORNEYS' FEES, I ACTUALLY LIKE THE SUBSTANTIVE

20   REASONS WHY FEES ARE BEING AWARDED IN THE SPECIFIC AMOUNT.  I

21   WANT A BRIEF, BASICALLY.  THEY TEND TO BE VERY CONCLUSORY

22   BECAUSE AT THAT POINT EVERYONE'S COMING TO COURT HOLDING HANDS

23   AND THERE'S NOT MUCH DISPUTE.

24        BUT I WOULD ACTUALLY LIKE YOUR ORDER TO REALLY LAY OUT THE

25   REASONS WHY YOU THINK YOU'RE ENTITLED TO WHATEVER YOU'RE

 1    REQUESTING.

 2           OKAY.  WHAT ELSE DO WE HAVE TO DO ON PRELIMINARY APPROVAL?

 3    OTHERWISE LET'S GO ON TO THE CMC.

 4           BUT IS THERE ANYTHING MORE ON PRELIMINARY APPROVAL?

 5           MS. DERMODY:  I DON'T THINK SO, YOUR HONOR.

 6           THE COURT:  OKAY.

 7           MS. DERMODY:  NOT FROM OUR PERSPECTIVE.

 8           THE COURT:  ALL RIGHT.  LET'S MOVE ON TO THE CMC.

 9           THANK YOU MS. HENN AND MR. STEWART.

10           MS. HENN:  THANK YOU, YOUR HONOR.

11           THE COURT:  ALL RIGHT.  WELL, FIRST I WANT TO

12    APOLOGIZE THAT MY CLASS CERT ORDER IS NOT OUT YET.  I HAD

13    REALLY INTENDED FOR IT TO BE DONE MORE PROMPTLY, SO I

14    APOLOGIZE.  IT'S TAKING LONGER THAN I HAD EXPECTED.

15           I THINK THAT THAT NOW REQUIRES US TO MOVE YOUR MEDIATION

16    DEADLINE, CORRECT?  BECAUSE YOU WANTED ROUGHLY 60 DAYS FROM

17    WHEN THE ORDER IS OUT?  IS THAT RIGHT?

18           MR. VAN NEST:  WE DID, YOUR HONOR.

19           THE COURT:  OKAY.

20           MR. VAN NEST:  BUT I THINK WE CAN SOLVE THAT PRETTY

21    SIMPLY.  WE HAVE A DATE --

22           THE COURT:  OH, YOU DO?

23           MR. VAN NEST:  -- WITH THE MEDIATOR.

24           THE COURT:  WHAT DATE IS THAT?

25           MR. VAN NEST:  WELL, IT'S NOVEMBER 19TH, SUBJECT TO

1    YOUR APPROVAL.  THE DATE THAT YOU'D GIVEN US WAS A LITTLE

2    EARLIER.  IF YOU COULD BUMP THE DATE TO THE MIDDLE OF DECEMBER,

3    THEN WE HAVE A DATE SCHEDULED NOW.

4         THE COURT:  THAT'S FINE, BECAUSE I AM STILL HOPING TO

5    GIVE YOU AN ORDER WELL BEFORE THAT DATE.

6         MR. VAN NEST:  THAT'S GREAT.

7         THE COURT:  OKAY.

8         MR. VAN NEST:  SO IF YOU COULD JUST MOVE -- THE DATE

9    IS NOW NOVEMBER 15, THE DEADLINE.  IF YOU COULD MOVE IT 30

10   DAYS, WE HAVE SOMETHING SCHEDULED THAT WE'RE GOING TO

11   PARTICIPATE IN ON THE 19TH.

12        THE COURT:  OKAY.  DO YOU WANT ME TO MOVE IT TO

13   DECEMBER 13TH?

14        MR. VAN NEST:  THAT'S GREAT.

15        THE COURT:  ALL RIGHT.  THANK YOU FOR THAT.

16      ALL RIGHT.  LET'S TALK ABOUT THE -- I'D LIKE TO MAKE A

17   PROPOSAL -- AH.  MOTIONS IN LIMINE, THOSE LIMITATIONS SHOULD

18   REMAIN THE SAME.  I'M NOT GOING TO CHANGE THAT.

19      SAME FOR DAUBERTS.  I MEAN, UNLESS -- I THINK THAT'S FINE

20   AS IT IS.

21      BUT I'D LIKE TO MAKE A PROPOSAL ON CHANGES TO THE SUMMARY

22   JUDGMENT SCHEDULE AND LET YOU BE HEARD.

23      I CERTAINLY HEAR WHAT THE DEFENDANTS ARE SAYING, THAT ALL

24   SIDES ARE CLAIMING THAT THE SCOPE OF THE CASE IS UNCHANGED BY

25   PIXAR/LUCASFILM AND INTUIT'S SETTLEMENT.

1        HOWEVER, I'D LIKE TO SUGGEST FOR THE INDIVIDUAL

2    DEFENDANTS' BRIEFS THAT EACH DEFENDANT, INSTEAD OF MY ORIGINAL

3    7 PAGES EACH, WOULD GET 9 PAGES EACH, SO THAT THE TOTAL PAGE

4    LIMIT WOULD BE 36 FOR THE MOVING PAPERS; 36 FOR THE OPPOSITION;

5    AND 25 FOR THE REPLY INSTEAD OF THE 42, 42, 32.

6        AND I'M MOSTLY JUST THINKING IN TERMS OF WHAT WE CAN

7    HANDLE DURING THE HEARINGS ON THESE VARIOUS DATES, YOU KNOW,

8    THE DISPOSITIVE MOTIONS AND DAUBERT MOTIONS ON MARCH 20TH AND

9    27TH.  I JUST HAVE CONCERNS.

10        I MEAN, JUST BECAUSE OF WHAT'S, UNFORTUNATELY, BEEN

11    SCHEDULED IN ALL OF MY OTHER CASES, I'M CONCERNED THAT WE MAY

12    NOT BE ABLE TO HANDLE MUCH MORE THAN THAT.  IT'S JUST OUR OWN

13    LIMITATIONS.

14        SO DO YOU WANT TO BE HEARD ON --

15            MR. VAN NEST:  JUST BRIEFLY, YOUR HONOR.

16            THE COURT:  YES.

17            MR. VAN NEST:  IF WE -- YOUR HONOR GAVE US 15 PAGES

18    ON THE COMMON ISSUES.

19            THE COURT:  THAT'S THE SAME.

20            MR. VAN NEST:  RIGHT.

21            THE COURT:  THAT'S UNCHANGED.

22            MR. VAN NEST:  IF WE'RE -- IF WE'RE GOING TO HAVE TO

23    MOVE FROM 42 --

24            THE COURT:  UM-HUM.

25            MR. VAN NEST:  -- WHICH WE HAD BEFORE, DOWN TO A

```
 1          LOWER NUMBER --
 2                  THE COURT:  36.
 3                  MR. VAN NEST:  -- COULD WE HAVE JUST A FEW MORE PAGES
 4          ON THE COMMON ISSUES?  SAY 20?
 5                  THE COURT:  WELL --
 6                  MR. VAN NEST:  I UNDERSTAND WE CAN ALLOCATE THESE THE
 7          WAY WE WANT.  I'M TRYING HARD TO COORDINATE WITH EVERYONE.
 8                  THE COURT:  SURE.
 9                  MR. VAN NEST:  BUT OBVIOUSLY IF THE PLAINTIFFS ARE
10          SAYING, YOU KNOW, THE SCOPE OF ISSUES IS THE SAME, TO THE
11          EXTENT THAT THERE'S EVIDENCE AFFECTING LUCASFILM AND SO ON,
12          PIXAR, WE STILL HAVE TO ADDRESS IT.
13              SO I WOULD HAVE NO PROBLEM WITH 9 EACH IF WE COULD GET 20
14          ON THE COMMON, AND THEN WHATEVER FLOWS FROM THAT WITH A REPLY.
15                  THE COURT:  WELL, LET ME ASK YOU, OKAY, WHAT IF WE --
16          DO YOU THINK THAT THE COMMON ISSUES WILL BE MORE -- WELL, WHAT
17          DO YOU HAVE --
18                  MR. VAN NEST:  IT COULD BE --
19                  THE COURT:  -- IN MIND -- MY ONLY CONCERN ON THE
20          SUMMARY JUDGMENT AND THE REASON WHY I'M ALSO LIMITING THE
21          BRIEFING, NUMBER ONE, IS THERE ARE GOING TO BE SO MANY
22          DIFFERENT MOTIONS THAT IT'S GOING TO BE DIFFICULT FOR MY
23          CHAMBERS TO HANDLE.
24                  MR. VAN NEST:  RIGHT.
25                  THE COURT:  ALSO, I JUST THINK THAT THE LIKELIHOOD
```

```
 1        THAT THERE WILL BE A SINGLE MATERIAL FACTUAL DISPUTE IS FAIRLY

 2     LIKELY BASED ON WHAT I'VE SEEN SO FAR IN THIS CASE.

 3        SO I DON'T WANT TO INVEST ALL OF MY CHAMBERS RESOURCES ON

 4     MOTIONS THAT I REALLY JUST DON'T -- I MEAN, I'M MORE LIKELY TO

 5     SEE IF THERE'S SOME ISSUE LIKE THE INDIVIDUAL, LIKE THE WHOLE

 6     PRESIDIO ISSUE THAT LUCASFILM BROUGHT IN THE MOTION TO DISMISS

 7     CONTEXT, THAT I CAN UNDERSTAND.

 8             MR. VAN NEST:  SURE.

 9             THE COURT:  BUT OTHERWISE ON THE COMMON ISSUES, I

10     JUST THINK THERE'S GOING TO BE A FACTUAL DISPUTE HERE.

11             MR. VAN NEST:  WELL, I THINK, YOUR HONOR, OBVIOUSLY

12     IT'S AN IMPORTANT CASE AND OBVIOUSLY THERE ARE A LOT OF

13     RESOURCES IN IT.  I'M NOT ASKING FOR MUCH MORE.

14        I DISAGREE WITH THE COURT.  I DO THINK THERE ARE A COUPLE

15     OF REALLY BIG PICTURE ISSUES THAT WE'LL BENEFIT FROM.

16             THE COURT:  OKAY.

17             MR. VAN NEST:  AND IF 15 IS ALL YOU CAN ACCOMMODATE,

18     WE'LL LIVE WITH IT.  BUT IF WE CAN HAVE 20 ON THE COMMON

19     ISSUES, MAYBE WE COULD --

20             THE COURT:  OKAY.  WELL, I WOULD ENTERTAIN INCREASING

21     THE COMMON TO 20, BUT THEN I WOULD WANT TO CUT THE INDIVIDUAL A

22     LITTLE BIT MORE, MAYBE BACK TO 7 PAGES PER DEFENDANT LIKE IT

23     WAS PREVIOUSLY.  WOULD THAT BE BETTER FOR YOU TO HAVE MORE

24     PAGES --

25             MR. VAN NEST:  IT'S A PAGE EITHER WAY.  I MEAN, IT'S
```

1    A PAGE EITHER WAY.  SO -- I MEAN, I UNDERSTAND IF -- MY

2    UNDERSTANDING OF WHAT YOU SAID EARLIER WAS IF WE NEED TO SPEND

3    MORE ON THE COMMON ISSUES, WE'VE GOT TO TAKE IT OUT OF THE

4    INDIVIDUAL ISSUES, AND WE'LL DO THAT.

5         SO IF -- RIGHT NOW IF YOU'RE GIVING US 36, 9 TIMES 4, PLUS

6    15 --

7              THE COURT:  YES.

8              MR. VAN NEST:  -- WE'VE GOT 51 PAGES AND I'M ASKING

9    FOR 56 PAGES.  SO WHAT YOU'RE SUGGESTING IS IN THIS BALLPARK.

10             THE COURT:  IT'S JUST THE ALLOCATION OF PAGES.  I

11   MEAN, I WOULD LIKE -- I'D LIKE TO KEEP -- JUST BECAUSE I DO

12   THINK THERE WILL BE A HUMAN LIMIT TO WHAT WE CAN HANDLE.

13             MR. VAN NEST:  SURE.

14             THE COURT:  I MEAN, ALL OF THE ORDERS IN THIS CASE

15   HAVE BEEN REALLY BIG ENDEAVORS FOR US.

16             MR. VAN NEST:  RIGHT.  YOU'RE BUSY ENOUGH, YOUR

17   HONOR.  YOU DON'T NEED TO SPEND ANY MORE TIME ON IT.

18        WE'LL LIVE WITH THAT, ASSUMING WE CAN ALLOCATE THE PAGES

19   THE WAY WE DEEM APPROPRIATE.  OBVIOUSLY IF WE SPEND A FEW MORE

20   ON COMMON ISSUES, WE'LL TAKE THEM AWAY.

21             THE COURT:  THAT'S FINE.  DO YOU WANT TO DO IT THAT

22   WAY THEN?

23             MR. VAN NEST:  WE'LL DO IT THAT WAY.

24             THE COURT:  OKAY.

25             MR. VAN NEST:  SO WE'VE GOT BASICALLY 51 PAGES

```
1      OPENING FOR EVERYTHING.
2             THE COURT:  YES.  THEN 51 FOR THE REPLY; AND THEN
3      THERE'S -- I'M SORRY, FOR THE OPPOSITION; AND THEN 35 FOR THE
4      REPLY, AND WHY DON'T YOU DISTRIBUTE THAT HOWEVER YOU THINK IS
5      MOST APPROPRIATE FOR THE ISSUES AND FOR YOUR CLIENTS?
6             MR. VAN NEST:  WE'LL DO THAT.
7             THE COURT:  OKAY.  WE'LL DO IT THAT WAY.
8             MR. VAN NEST:  YEAH.
9             THE COURT:  OKAY.  AND THEN FOR THE PLAINTIFFS,
10     YOU'RE STILL STUCK AT 14, 14, 10.
11            MS. DERMODY:  YES, YOUR HONOR.
12            THE COURT:  OKAY.  I MEAN, I DON'T KNOW.  ARE YOU
13     EVEN GOING TO FILE ONE?  OR --
14            MS. DERMODY:  AT THIS POINT IT'S UNDECIDED, YOUR
15     HONOR.  WE HAVEN'T COME UP WITH AN ISSUE YET.
16        (LAUGHTER.)
17            THE COURT:  OKAY.  WELL, I MEAN -- YOU KNOW, YOU'RE
18     CORDIALLY WELCOME TO NOT FILE ONE IF YOU DON'T -- YOU KNOW, IF
19     YOU -- DON'T GO FISHING UNNECESSARILY FOR AN ISSUE.
20            MS. DERMODY:  YES, YOUR HONOR.
21            THE COURT:  OKAY.  WHAT ELSE?
22        OH, I THINK I SHOULD PROBABLY SET A FURTHER CMC.  I THINK
23     THAT WOULD BE HELPFUL AFTER YOU HAVE THE CLASS CERT ORDER,
24     AFTER YOU'VE -- WHAT ABOUT DECEMBER 18TH?  THAT WOULD BE AFTER
25     YOUR MEDIATION DEADLINE AND IT'LL BE RIGHT BEFORE EXPERT
```

```
 1        DISCOVERY CUT OFF, BUT YOU'LL BE DONE WITH EXPERT REPORTS.

 2             I DON'T KNOW IF THAT'S NOT A GOOD DATE FOR TRAVEL

 3        SCHEDULES.  WHAT --

 4             MS. DERMODY:  WORKS FOR PLAINTIFFS, YOUR HONOR.

 5        THANK YOU.

 6             THE COURT:  THAT'S OKAY?  OKAY.

 7             WHAT ABOUT FOR DEFENDANTS?

 8             MR. VAN NEST:  I THINK WE'LL BE ABLE TO STAFF IT ON

 9        THE 18TH, YOUR HONOR.  THANK YOU.

10             THE COURT:  OKAY.  WHY DON'T WE SET, THEN, A FURTHER

11        CMC ON DECEMBER 18TH AT 2:00 O'CLOCK?

12             OKAY.  SO OTHERWISE THE SCHEDULE REMAINS AS SET.  WE'LL

13        HAVE OUR HEARINGS ON THE VARIOUS MOTIONS ON MARCH 20TH AND

14        MARCH 27TH, AND THEN HAVE OUR PRETRIAL CONFERENCE ON MAY 8TH

15        AND THE -- WE'RE KEEPING OUR TRIAL DATE OF MAY 27TH.

16             I UNDERSTAND THAT THE TRIAL LENGTH IS THE SAME REGARDLESS

17        OF THE SETTLEMENT, SO IT'S STILL 17 DAYS, OR --

18             MS. DERMODY:  YES, YOUR HONOR.  FROM OUR PERSPECTIVE,

19        YES.

20             THE COURT:  OKAY.

21             MR. VAN NEST:  I THINK THAT'S RIGHT, YOUR HONOR.

22             THE COURT:  OKAY.  ALL RIGHT.

23             WHAT ELSE DO WE NEED TO HANDLE TODAY?  ANYTHING ELSE?

24        NOTHING ELSE?

25             MR. SAVERI:  I THINK, FROM OUR PERSPECTIVE, WE'VE
```

```
 1        TAKEN CARE OF EVERYTHING.
 2              THE COURT:  OKAY.  ALL RIGHT.  GREAT.
 3              MR. VAN NEST:  NOTHING ELSE, YOUR HONOR.
 4              THE COURT:  OKAY.  LET ME ASK, JUST BECAUSE I WILL BE
 5        CURIOUS AND MAY NOT BE ABLE TO WAIT UNTIL DECEMBER THE 11TH,
 6        WOULD YOU MIND FILING JUST A SETTLEMENT STATUS REPORT AFTER
 7        YOUR -- IS THE NOVEMBER 19TH DATE FOR ALL DEFENDANTS?  ARE YOU
 8        DOING INDIVIDUAL, INDIVIDUAL MEDIATIONS OR YOU'RE DOING GROUP
 9        MEDIATIONS?
10              MR. VAN NEST:  IT'S FOR ALL OF US, YOUR HONOR.
11              THE COURT:  I SEE.
12              MR. VAN NEST:  HOWEVER, WE'LL LET THE MEDIATOR DECIDE
13        HOW HE WANTS TO DIVIDE IT UP.
14           BUT ON THE CHANCE THAT THINGS DRAG ON A DAY OR TWO MORE,
15        I WOULD ASK THAT -- WE CAN FILE SOMETHING BEFORE THE 18TH, BUT
16        I WOULD PUT IT RIGHT UP IN FRONT OF THAT.  IF YOU WANT TO DO IT
17        BY THE 11TH OR -- A WEEK AHEAD.
18              THE COURT:  WELL, ON THE DECEMBER 11TH DATE YOU'LL
19        HAVE TO FILE A JOINT SUPPLEMENTAL CASE MANAGEMENT STATEMENT
20        ANYWAY TO REPORT ON ANYTHING NEW.
21              MR. VAN NEST:  SURE.
22              THE COURT:  SO I SUSPECT THAT AT THAT POINT YOU WOULD
23        INCLUDE ANY SETTLEMENT STATUS REPORT.
24              MR. VAN NEST:  OF COURSE.
25              THE COURT:  BUT I'M BEING PERHAPS PATHOLOGICALLY
```

1      OPTIMISTIC THAT THERE MIGHT BE SOME INFORMATION THAT YOU'D WANT

2      TO SHARE BEFORE THAT DATE, AND IF YOU DID, I WOULD -- I GUESS

3      IT DOESN'T MATTER.  I CAN WAIT UNTIL DECEMBER 11TH.  I WAS

4      GOING TO ASK MAYBE IF YOU COULD FILE SOMETHING IN THE INTERIM,

5      MAYBE THE WEEK OF THANKSGIVING, THE FIRST WEEK OF DECEMBER.

6      BUT YOU KNOW WHAT, IT'S OKAY.  YOU'LL BE FILING SOMETHING

7      ANYWAY ON DECEMBER 11TH.

8              MR. VAN NEST:  WE WILL.

9              THE COURT:  SO THAT'S FINE.

10         OKAY.  ANYTHING ELSE FOR TODAY?

11             MR. VAN NEST:  NOTHING FOR DEFENDANTS, YOUR HONOR.

12             MS. DERMODY:  AND YOUR HONOR, IF WE HAVE A SETTLEMENT

13     IN PRINCIPAL, WE'LL LET THE COURT KNOW AS WE HAVE WITH OTHER

14     CASES.

15             THE COURT:  OKAY.

16             MS. DERMODY:  SO YOU'LL GET AN UPDATE IF IT'S

17     POSSIBLE.

18             THE COURT:  OKAY.  THANK YOU.  AND THANK YOU EVERYONE

19     FOR YOUR PATIENCE.

20             MS. DERMODY:  THANK YOU, YOUR HONOR.

21             MR. STONE:  THANK YOU, YOUR HONOR.

22             MR. VAN NEST:  THANK YOU, YOUR HONOR.

23         (THE PROCEEDINGS WERE CONCLUDED AT 3:47 P.M.)

24

25

1

2

3                    CERTIFICATE OF REPORTER

4

5

6

7        I, THE UNDERSIGNED OFFICIAL COURT REPORTER OF THE UNITED

8   STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA,

9   280 SOUTH FIRST STREET, SAN JOSE, CALIFORNIA, DO HEREBY

10  CERTIFY:

11       THAT THE FOREGOING TRANSCRIPT, CERTIFICATE INCLUSIVE, IS

12  A CORRECT TRANSCRIPT FROM THE RECORD OF PROCEEDINGS IN THE

13  ABOVE-ENTITLED MATTER.

14

15

16  _____

17  LEE-ANNE SHORTRIDGE, CSR, CRR
    CERTIFICATE NUMBER 9595

18       DATED:  OCTOBER 30, 2013

19

20

21

22

23

24

25