# EXHIBIT 2

# WEATHERFORD DECLARATION IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

1  GEORGE A. RILEY (Bar No. 118304)
   griley@omm.com
2  MICHAEL F. TUBACH (Bar No. 145955)
   mtubach@omm.com
3  CHRISTINA J. BROWN (Bar No. 242130)
   cjbrown@omm.com
4  AMANDA R. CONLEY (Bar. No. 281270)
   aconley@omm.com
5  O'MELVENY & MYERS LLP
   Two Embarcadero Center, 28th Floor
6  San Francisco, CA  94111-3823
   Telephone:    (415) 984-8700
7  Facsimile:    (415) 984-8701

8  Attorneys for Defendant
   Apple Inc.
9

10              UNITED STATES DISTRICT COURT

11           NORTHERN DISTRICT OF CALIFORNIA

12                 SAN JOSE DIVISION

13

14  | IN RE HIGH-TECH EMPLOYEE | Master Docket No. 11-CV-2509-LHK |
    | ANTITRUST LITIGATION | |
15  | | **DEFENDANT APPLE INC.'S AMENDED** |
    | | **RESPONSES TO PLAINTIFFS' SECOND** |
16  | | **SET OF INTERROGATORIES** |
    | THIS DOCUMENT RELATES TO: | |
17  | | **CONFIDENTIAL –** |
    | ALL ACTIONS | **ATTORNEYS' EYES ONLY** |
18
19

20  PROPOUNDING PARTY:    PLAINTIFFS

21  RESPONDING PARTY:     DEFENDANT APPLE INC.

22  SET NUMBER:           SET TWO, INTERROGATORY NOS. 15-20

23
24
25
26
27
28

CONFIDENTIAL –                                    APPLE INC.'S AMENDED RESPONSES TO
ATTORNEYS' EYES ONLY                              SECOND SET OF INTERROGATORIES
                                                  NO. 11-CV-2509-LHK

1    Pursuant to Federal Rules of Civil Procedure 26 and 33, Defendant Apple Inc. ("Apple")

2    amends and supplements its responses to Plaintiffs' Second Set of Interrogatories as follows.

3    **GENERAL OBJECTIONS**

4        Apple makes the following general objections whether or not separately set forth in

5    response to each interrogatory and each and every instruction and definition by Plaintiffs:

6        1.    Apple's responses to these interrogatories are based on the information presently

7    available to it and upon its investigation to this date.  Discovery is ongoing, and Apple reserves

8    the right to supplement or amend these responses and to present additional or other evidence as

9    the matter proceeds.

10       2.    Apple objects to each interrogatory to the extent it calls for disclosure of material

11   or information that is subject to the attorney-client privilege, the work-product doctrine, the joint-

12   defense privilege, grand jury, or any other applicable privilege and/or immunity recognized by the

13   Federal Rules of Civil Procedure, federal statute, or any other applicable federal or state rule or

14   law.  To the extent that any such privileged or protected information is produced, the production

15   will have been inadvertent and should not be deemed a waiver of any privilege or protection from

16   production.

17       3.    Apple objects to each interrogatory to the extent it calls for disclosure of Apple's

18   confidential or proprietary information, trade secrets, research, development, commercial

19   information, or any other competitively sensitive information.  Apple also objects to each

20   interrogatory to the extent that it seeks confidential or proprietary information, trade secrets,

21   research, development, commercial information, or any other competitively sensitive information

22   belonging to a third party but entrusted to Apple on conditions of confidentiality and non-

23   disclosure, or joint confidential information of Apple and a third party.  To the extent Apple

24   provides or agrees to provide Apple confidential information or other confidential information,

25   Apple does so subject to the terms of the Stipulated Protective Order entered by the Court on

26   January 24, 2012.

27       4.    Apple objects to each interrogatory to the extent that it requires responses that

28   would infringe upon the legitimate privacy rights of current or former employees, officers, or

1  directors of Apple, current or former affiliates, related companies, or subsidiaries, or other

2  individuals, to the extent such privacy rights and expectations are protected by law, contract, or

3  public policy.

4      5.    Apple objects to each interrogatory to the extent it calls for disclosure of material

5  or information beyond the scope of permissible discovery, seeks information that is not relevant

6  to the subject matter of this lawsuit, or is not reasonably calculated to lead to the discovery of

7  admissible evidence.

8      6.    Apple objects to each interrogatory to the extent it is unnecessarily broad or

9  unduly burdensome, and to the extent that it uses vague or ambiguous terms.

10      7.    Apple objects to each interrogatory to the extent it calls for disclosure of material

11  or information not within its possession, custody, or control.

12      8.    Apple objects to each interrogatory to the extent it calls for disclosure of material

13  or information that is already available to Plaintiffs or Plaintiffs' counsel.

14      9.    Apple objects to each interrogatory to the extent that it calls for speculation,

15  opinion, or a legal conclusion.

16      10.    Apple objects to each interrogatory to the extent it is compound and, together with

17  the other interrogatories, may exceed the number limit on interrogatories set by Federal Rule of

18  Civil Procedure 33(a).

19      11.    Apple objects to each interrogatory to the extent it seeks to impose duties or

20  obligations on Apple exceeding the requirements of the Federal Rules of Civil Procedure or Local

21  Rules of the Northern District of California.

22      12.    Apple reserves the right to object to the relevance or admissibility of any responses

23  to these interrogatories.

## OBJECTIONS TO DEFINITIONS AND INSTRUCTIONS

25      1.    Apple objects to Definition No. 2, defining "Agreement," as vague, ambiguous,

26  and overly broad, and to the extent that it calls for a legal conclusion and assumes facts not in

27  evidence.  By responding to these interrogatories, Apple does not concede the existence of any

28  agreement alleged in the Consolidated Amended Complaint or any other bilateral or multilateral

1    agreement.

2        2.       Apple objects to Definition No. 4, defining "Cold-calling" and "cold-call," as

3    vague, ambiguous, and contrary to the common meaning of these terms.  Apple will interpret

4    "cold-calling" and "cold-call" as referring to communicating directly in any manner (including,

5    without limitation, orally, in writing, telephonically, or electronically) with a potential employee

6    who has not applied for a job or otherwise initiated contact with the company making the cold-

7    call.

8        3.       Apple objects to Definition No. 5, defining "Co-conspirators," as vague,

9    ambiguous, and overly broad, and to the extent that it calls for a legal conclusion and assumes

10   facts not in evidence.  Purely for purposes of defining terms and without ascribing any other

11   meaning to it, Apple will interpret "Co-conspirators" to consist of Adobe Systems Inc., Apple

12   Inc., Google Inc., Intel Corp., Intuit Inc., Lucasfilm Inc., and Pixar.

13       4.       Apple objects to Definition No. 8, defining "Employee," as overly broad to the

14   extent it purports to include any "messenger," "agent," or other person who is not or was not an

15   Apple employee, and to the extent it purports to include employees of any "Defendant," "Co-

16   Conspirator," or any entity other than Apple.

17       5.       Apple objects to Definition No. 10, defining "Identify," as vague and ambiguous,

18   overly broad, and unduly burdensome, and to the extent that it seeks information from the period

19   of January 1, 2003 through the present or information that is not in Apple's possession, custody,

20   or control.

21       6.       Apple objects to Definition No. 16, defining "Subsidiary," "affiliate," and "joint

22   venture," and to Definition No. 17, defining "You," "your," or "your company," as overly broad

23   to the extent they include parties and entities outside Apple's exclusive control, such as

24   predecessors, successors, subsidiaries, affiliates, agents, outside professionals (including but not

25   limited to any third-party recruiting, hiring, or headhunting firm), former directors, officers,

26   employees, or representatives, and all persons purporting to act on Apple's behalf.  Apple

27   responds to the interrogatories based on information in its possession, custody, and control.

28

**CONFIDENTIAL –
ATTORNEYS' EYES ONLY**                    - 4 -

1    7.     Apple objects to Instruction No. 3, regarding the withholding of information on

2    claim of privilege, to the extent it seeks to impose obligations on Apple exceeding the

3    requirements of the Federal Rules of Civil Procedure or other applicable requirements.

4    8.     Apple objects to Instruction No. 4 to the extent it seeks information about the time

5    period of January 1, 2003 through the present, as overly broad, unduly burdensome, and not

6    reasonably calculated to lead to the discovery of admissible evidence.  Unless otherwise

7    indicated, Apple responds to these interrogatories for the time period of January 1, 2004 through

8    the present.

9    9.     Apple objects to each definition and instruction to the extent it seeks to impose

10   duties or obligations on Apple exceeding the requirements of the Federal Rules of Civil

11   Procedure or Local Rules of the Northern District of California.

12   Each of the above general objections and objections to definitions and instructions

13   (collectively, "General Objections") is incorporated by reference into Apple's specific responses

14   below.  By setting forth such specific objections, Apple does not limit or restrict the General

15   Objections set forth above.  An objection to all or part of any specific interrogatory, or a

16   statement that Apple will produce responsive information, does not mean that information

17   responsive to that interrogatory or part of the interrogatory exists.

18   **RESPONSES TO INTERROGATORIES**

19   **INTERROGATORY NO. 15**

20   Identify each and every allegedly procompetitive collaboration between you and another

21   company that would not have taken place absent an Agreement between you and any other Co-

22   Conspirator.  For each collaboration identified, state all facts which support your contention that

23   the collaboration would not have taken place absent an Agreement.

24   **RESPONSE TO INTERROGATORY NO. 15**

25   Apple incorporates by reference as if set forth herein the General Objections stated above.

26   Apple further objects to this interrogatory and its request for "each and every" collaboration with

27   "another company" as overly broad, unduly burdensome, and seeking information that is not

28   relevant to the subject matter of this lawsuit or not reasonably calculated to lead to the discovery

1   of admissible evidence.  Apple further objects to the terms "Agreement" and "Co-Conspirator" as

2   vague, ambiguous, and overly broad, and to the extent that they call for a legal conclusion and

3   assume facts not in evidence.  Purely for purposes of defining terms and without ascribing any

4   other meaning to it, Apple will interpret "Co-Conspirators" to consist of Adobe Systems Inc.,

5   Apple Inc., Google Inc., Intel Corp., Intuit Inc., Lucasfilm Inc., and Pixar.  Apple further objects

6   to the request to identify collaborations that "would not have taken place absent" an agreement as

7   misstating the legal standard for analyzing alleged restraints under the antitrust laws, which

8   instead look to whether such a restraint may contribute to the success of a cooperative venture

9   and be reasonably necessary to such collaboration.

10          Subject to and without waiving these specific objections and the above-stated General

11   Objections, Apple responds that it has a history of partnering with other technology firms to share

12   resources and expertise in the development of new products and technologies.  Apple provides

13   consumers with innovative alternative technology platforms, such as the Macintosh operating

14   system ("Mac OS"), the iPod, and the iPhone.  Because customers make decisions to purchase

15   Apple products based in part on the availability of desirable complementary products, Apple must

16   depend on key partners to develop compelling hardware, software, services, and content that can

17   be used on its platforms.  If such software and content — such as Adobe software, Google

18   applications, and Pixar content — is not available, customers will choose other platforms with

19   which they can use these offerings.  Thus, Apple's success depends on collaboration with its key

20   partners.  Consumers benefit significantly from Apple's collaborations with other technology

21   firms.  These collaborations foster innovation, as evidenced by the groundbreaking innovations

22   that Apple has provided to consumers throughout the past twenty years — including the Mac,

23   iPod, iPhone, and iPad.  This innovation would not be possible without these collaborations.

24          Apple's history bears this out.  In the summer of 1997, when Steve Jobs returned to

25   Apple, the company was near death, having lost nearly $2 billion in two years.  At that time, there

26   was widespread concern that application developers were fleeing the Mac platform because

27   Apple's shrinking market share would not justify the costs required to maintain their applications

28   on the Mac.  In turn, customers would purchase PCs if they could not find versions of popular

1    software titles that could run on the Mac.  And if more customers abandoned the Mac platform,

2    additional developers would follow suit, resulting in a self-perpetuating downward spiral of

3    customers and developers abandoning the Mac and Apple.  Apple's ability to break out of this

4    pattern depended in large part on its ability to collaborate with the developers of complementary

5    products.

6          To permit these relationships to work effectively in an environment of trust and to ensure

7    that the parties focus on their common business interests, Apple has at times decided to refrain

8    from cold calling employees of these key partners and/or has had an understanding with its

9    partners that they would refrain from actively recruiting each other's employees unless those

10   employees indicated an interest in changing employment.  This has assured Apple's partners that

11   Apple will not use the knowledge it gains through its collaborations to "cherry-pick" its partners'

12   employees with aggressive solicitations that are uninvited by the targeted employees.  Such

13   solicitations are disruptive to the relationship — at the same time one party is insisting that its

14   partner devote significant resources and its most talented employees to a joint project, that same

15   party is making uninvited solicitations to the partner's employees.  Such behavior is not

16   conducive to collaborative partnerships.

17         Apple's decisions to refrain from cold calling employees of Adobe, Intel, Google, and

18   Pixar were reasonably necessary for the success of Apple's relationships with each company,

19   respectively.

20         ***Adobe:***  Customers who use Apple's Mac for content creation have been an important part

21   of Apple's business for more than twenty-five years.  Because Adobe's software products serve

22   those same customers, it has been critical that Adobe's software products work effectively on

23   Apple's Mac OS operating system.  To achieve this goal, Apple and Adobe have needed to work

24   together closely.  Bruce Chizen, Adobe's former CEO, has described the relationship as a

25   "marriage" where "you're in it for the kids," i.e., customers.  The relationship dates to the early

26   1980s, when both companies were in their infancy.  Together they co-developed PostScript for

27   the Apple LaserWriter, a product that revolutionized the world of printing and ignited the desktop

28   publishing revolution.  Since that time, Apple and Adobe have shared a focus on enhancing

1  computing capabilities for visual expression, and frequently have helped publicly launch each

2  company's new products.  When Apple switched from PowerPC to Intel processors, for example,

3  Adobe was among the most important of the third party software developers to create and support

4  versions of their applications that ran, and performed well, on both types of systems.

5      Many of the heaviest users of Adobe products, particularly creative professionals, rely on

6  Macs.  Adobe considers Apple customers its core customers.  And those creative professionals

7  are among the most demanding of Apple's customers:  they work with large amounts of data,

8  often on tight deadlines, and require cutting edge performance from their computer software and

9  hardware.  When Adobe has developed new software or new versions of its existing software,

10  such as its Creative Suite applications, including Photoshop, After Effects, and InDesign, it has

11  worked with Apple to ensure its users receive the benefit of the software's peak performance on

12  Apple's product lines.  Photoshop, like many other Adobe products, was originally only released

13  and available for Macs.  Adobe has released more applications on the Mac operating system than

14  virtually any company other than Apple.  Similarly, when Apple has introduced a new Mac OS or

15  version of its Mac OS, such as OS X or Snow Leopard, or a new product line, such as the iPod

16  touch, the companies have worked together to enable Adobe's software to take advantage of

17  Apple's advances.  This collaboration has required Apple and Adobe to share prototypes of

18  software and hardware, source code, and other highly proprietary and sensitive information.

19  Adobe has shared some of its most confidential and carefully guarded information with Apple

20  and vice versa.

21      This highly successful collaboration has required a relationship of trust.  Cold calling

22  Adobe's employees would have injected mistrust and fear into the relationship — fear that Apple

23  would use the relationship to "poach" or "raid" Adobe's employees who have shown no interest

24  in leaving their current positions.  It would have detracted greatly from joint activities if Apple —

25  while insisting on the highest level of performance from Adobe — also directed uninvited

26  solicitations to Adobe's employees.

27      Apple further incorporates by reference Adobe's Amended Response to Plaintiffs' Second

28  Set of Interrogatories, Interrogatory No. 15, regarding Adobe's collaborative relationship with

1  Apple.

2  **Intel:**  Intel has also been an important collaboration partner to Apple.  By 2005, Apple

3  had become dependent on a single microprocessor, the Power PC, and a single microprocessor

4  supplier, IBM.  But the Power PC had fallen behind Intel's products in key performance metrics,

5  and Apple concluded that it needed to convert to Intel microprocessors to remain competitive.  In

6  June 2005, Apple announced that it would begin producing Intel-based Macs.  This was a

7  watershed change for Apple because it required reengineering the Mac OS to run on an entirely

8  different architecture.

9  Apple's collaboration with Intel required a high degree of trust on both sides.  Throughout

10  the relationship, Intel has had to share with Apple highly competitive, sensitive details about its

11  microprocessors in advance of their general availability on the market.  Apple has likewise had to

12  provide competitively sensitive information about its operating system to Intel, including

13  unannounced future features.  The trust essential to this relationship would have been

14  significantly undermined if Apple's recruiters had been making cold calls to Intel employees —

15  particularly more senior employees who played a more important role at Intel.  Accordingly,

16  Apple avoided making cold calls to senior level Intel employees throughout its relationship with

17  Intel.

18  Apple further incorporates by reference Intel's Amended and Supplemented Responses to

19  Plaintiffs' Second Set of Interrogatories, Interrogatory No. 15, regarding Intel's collaborative

20  relationship with Apple.

21  **Google:**  Apple and Google together have joined Apple's client side devices (laptops,

22  desktops, phones, and other devices) with Google's back end services such as search and

23  mapping.  The initial collaboration involved integrating Google search into Apple's Safari web

24  browser, with Google search serving as the default search engine and as part of the Safari home

25  page.  As Apple's product lines have grown, this relationship has simultaneously grown to

26  encompass an increasing array of Apple devices.  The collaboration has been hugely successful

27  for both companies.  For example, as of October 2009, Apple's iPhone was responsible for 30 to

28  40 times more mobile search queries on Google than any other source.

1    Over time, the relationship has evolved to include the integration of additional Google

2    applications and user services. This integration has enabled Google Maps and Google "my

3    location" functions, including third party applications using Google's location functions, to be

4    incorporated on Apple's products.  Apple and Google also have collaborated in a variety of other

5    ways:  to enable synchronization of a user's Google contacts into the iPhone; to allow emails

6    from a user's Google Gmail account to be automatically downloaded to the Mail application on

7    the user's iPhone; to incorporate Google's anti-malware and anti-phishing applications on Apple

8    devices; to develop a method by which Apple TV accesses and displays YouTube videos and

9    takes advantage of other YouTube capabilities; and to develop a YouTube application for Apple's

10   iPhone.  Google has also relied on Apple technology for Google products:  Apple's WebKit open

11   source project provides the rendering engine for Google's Chrome browser.  Apple has

12   contributed substantial code and resources to the WebKit project, and engineers from both

13   companies have worked closely on WebKit development projects such as source code

14   modifications and security fixes.  As with Apple's other key collaborations, a relationship of trust

15   and open cooperation has been essential to the success of Apple's and Google's joint efforts.

16   Another important element of the relationship between Apple and Google was the service

17   of Dr. Eric Schmidt, Google's CEO, on Apple's Board of Directors from 2006-2009.  Apple has

18   unilaterally elected not to cold call employees from companies associated with Apple's Board of

19   Directors or from companies where Apple employees serve as directors.  This practice avoids

20   creating an actual or apparent conflict of interest or any appearance of impropriety arising from a

21   Board member's dual roles at different companies.

22   Apple further incorporates by reference any amended or supplemental response by Google

23   to Interrogatory No. 15 regarding Google's collaborative relationship with Apple.

24   ***Pixar:***  Apple's relationship with Pixar is distinctive because Steve Jobs co-founded Pixar.

25   From 1997 until 2006, Mr. Jobs was Chairman, CEO, and majority shareholder of Pixar.  During

26   this same period, he was the CEO and a Board member of Apple.  As CEO of both firms, Mr.

27   Jobs was positioned to identify the key employees of both companies.  Mr. Jobs would have been

28   put in an untenable position were Pixar to solicit Apple's best people and vice versa.  To avoid

1 this conflict, each company individually followed a practice of not soliciting the other's

2 employees without prior approval unless, of course, the employee initiated contact.

3   Following Disney's acquisition of Pixar, Mr. Jobs became a Director of the Walt Disney

4 Company and its largest single shareholder.  Disney identified Mr. Jobs as a "non-independent"

5 outside director because of his involvement in Pixar.  Mr. Jobs was one of the three Pixar

6 members of the Disney-Pixar six-person steering committee, formed after Disney's acquisition of

7 Pixar.  Because of Mr. Jobs' continuing important role with Pixar, Apple decided to continue its

8 practice of not cold calling Pixar employees in order to avoid risking even the appearance of

9 impropriety or interference based on Mr. Jobs' positions and contributions to each company.

10   As an outgrowth of their common ownership and resulting historical symbiotic

11 relationship, Apple engineers have provided to Pixar software and tools, such as the uTest

12 software test tool and the source code for Apple's Shake software.  Pixar has, in turn, provided

13 important feedback and input to Apple on improvements to these products.  This collaboration

14 reflects the integral role that Mr. Jobs played in the leadership and direction of both Apple and

15 Pixar, and provides another reason why Apple's decision not to cold call Pixar employees, and

16 vice versa, fostered the procompetitive aspect of the companies' relationship.

17   Apple further incorporates by reference Pixar's Supplemental Responses to Plaintiffs'

18 Second Set of Interrogatories, Interrogatory No. 15, regarding Pixar's collaborative relationship

19 with Apple.

20   Apple's collaborative relationships with Adobe, Intel, Google, and Pixar exposed Apple to

21 information about the identities and capabilities of each company's key employees and involved

22 access to and interaction with teams of employees at various levels.  The composition and size of

23 these collaborative teams changed as priorities within the companies shifted due to a variety of

24 factors, such as emerging technologies and changes in customer demand, and as a result of

25 employee turnover.  Apple's decisions not to cold call employees of these key partners were vital

26 to Apple's successful collaborations with each of these companies and to these companies'

27 willingness to engage in future collaborations with Apple.

28

**CONFIDENTIAL –**
**ATTORNEYS' EYES ONLY**   - 11 -   

**INTERROGATORY NO. 16**

If the Agreement between you and any other Co-Conspirator permitted you to participate in each and every specific collaborative joint venture project with another co-Conspirator "freely," and eliminated "fear that the other company [would] hire away [your] employees," as you alleged in your Reply Brief, did these collaborative joint ventures occur because the Agreement prevented, hindered, or limited the hiring of one company's employees by the other? If the answer to this question is "yes," please state all facts which support your contention. If the answer to this question is "no," please identify the mechanism or means by which the Agreement allegedly successfully permitted you to participate in each and every specific collaborative joint venture project you allege occurred only because of the Agreement.

**RESPONSE TO INTERROGATORY NO. 16**

Apple incorporates by reference as if set forth herein the General Objections stated above. Apple further objects to this interrogatory as overly broad, unduly burdensome, and seeking information that is not relevant to the subject matter of this lawsuit or not reasonably calculated to lead to the discovery of admissible evidence. Apple further objects to the terms "Agreement" and "Co-Conspirator" as vague, ambiguous, and overly broad, and to the extent that they call for a legal conclusion and assume facts not in evidence. Purely for purposes of defining terms and without ascribing any other meaning to it, Apple will interpret "Co-conspirators" to consist of Adobe Systems Inc., Apple Inc., Google Inc., Intel Corp., Intuit Inc., Lucasfilm Inc., and Pixar. Apple further objects to the request to identify collaborations that occurred "because" of an agreement as misstating the legal standard for analyzing alleged restraints under the antitrust laws, which instead look to whether such a restraint may contribute to the success of a cooperative venture and be reasonably necessary to such collaboration. Apple further objects to the statement that any agreement "prevented, hindered, or limited the hiring" of employees as calling for a legal conclusion and assuming facts not in evidence.

Subject to and without waiving these specific objections and the above-stated General Objections, Apple responds that its decisions to refrain from cold calling employees of Adobe, Intel, Google, and Pixar were reasonably necessary for its collaborations with each company, as

1    described in Apple's response to Interrogatory No. 15.  Apple did not refrain from hiring or

2    recruiting employees of Adobe, Intel, Google, or Pixar.  Instead, Apple decided that it would

3    refrain only from cold calling such employees.  Indeed, Apple actively recruited and hired

4    employees of each company during the alleged class period.  Apple refers to its response to

5    Interrogatory No. 15 for further details regarding its collaborations with Adobe, Intel, Google,

6    and Pixar and the importance of those collaborations to Apple's survival and success.

7    **INTERROGATORY NO. 17**

8        State all facts which support your contention that an Agreement between you and any

9    other Co-Conspirator facilitated collaborations between you and that Co-Conspirator, and

10   describe the specific mechanism by which the Agreement facilitated such collaboration.

11   **RESPONSE TO INTERROGATORY NO. 17**

12       Apple incorporates by reference as if set forth herein the General Objections stated above.

13   Apple further objects to this interrogatory as overly broad, unduly burdensome, and seeking

14   information that is not relevant to the subject matter of this lawsuit or not reasonably calculated to

15   lead to the discovery of admissible evidence.  Apple further objects to the terms "Agreement" and

16   "Co-Conspirator" as vague, ambiguous, and overly broad, and to the extent that they call for a

17   legal conclusion and assume facts not in evidence.  Purely for purposes of defining terms and

18   without ascribing any other meaning to it, Apple will interpret "Co-conspirators" to consist of

19   Adobe Systems Inc., Apple Inc., Google Inc., Intel Corp., Intuit Inc., Lucasfilm Inc., and Pixar.

20       Subject to and without waiving these specific objections and the above-stated General

21   Objections, Apple responds by incorporating its responses to Interrogatory Nos. 15 and 16.

22   **INTERROGATORY NO. 18**

23       Identify and describe and all steps you took to prevent hiring, poaching, raiding, or

24   soliciting of your employees by competitor companies pursuant to any Agreement(s) or to enforce

25   any Agreement(s) between you and any Co-Conspirator or you and anyone else.

26   **RESPONSE TO INTERROGATORY NO. 18**

27       Apple incorporates by reference as if set forth herein the General Objections stated above.

28   Apple further objects to this interrogatory as overly broad, unduly burdensome, and seeking

1  information that is not relevant to the subject matter of this lawsuit or not reasonably calculated to

2  lead to the discovery of admissible evidence.  Apple further objects to the terms "Agreement" and

3  "Co-Conspirator" as vague, ambiguous, and overly broad, and to the extent that they call for a

4  legal conclusion and assume facts not in evidence.  Purely for purposes of defining terms and

5  without ascribing any other meaning to it, Apple will interpret "Co-conspirators" to consist of

6  Adobe Systems Inc., Apple Inc., Google Inc., Intel Corp., Intuit Inc., Lucasfilm Inc., and Pixar.

7         Subject to and without waiving these specific objections and the above-stated General

8  Objections, Apple responds that, based on investigation to date, it is aware of a few instances in

9  which it communicated with its recruiters and hiring staff regarding its decisions to refrain from

10  cold calling employees of certain of its key partners.  Apple is also aware of a few instances in

11  which it communicated with its collaborative partners regarding their understanding that they

12  would refrain from actively recruiting each other's employees unless those employees

13  independently approached the company and indicated an interest in changing employment.

14  **INTERROGATORY NO. 19**

15         Identify your executives, employees, or agents who have substantial knowledge regarding

16  the effect(s) of any Agreement between you and a Co-Conspirator on your alleged ability to

17  engage in procompetitive collaborations or increase output or production.

18  **RESPONSE TO INTERROGATORY NO. 19**

19         Apple incorporates by reference as if set forth herein the General Objections stated above.

20  Apple further objects to this interrogatory as overly broad, unduly burdensome, and seeking

21  information that is not relevant to the subject matter of this lawsuit or not reasonably calculated to

22  lead to the discovery of admissible evidence.  Apple further objects to the terms "Agreement" and

23  "Co-Conspirator" as vague, ambiguous, and overly broad, and to the extent that they call for a

24  legal conclusion and assume facts not in evidence.  Purely for purposes of defining terms and

25  without ascribing any other meaning to it, Apple will interpret "Co-conspirators" to consist of

26  Adobe Systems Inc., Apple Inc., Google Inc., Intel Corp., Intuit Inc., Lucasfilm Inc., and Pixar.

27  Apple further objects to the term "substantial knowledge" as vague and ambiguous.

28

1     Subject to and without waiving these specific objections and the above-stated General

2  Objections, Apple responds that Ron Okamoto, Brian Croll, Bob Mansfield, Danielle Lambert

3  and Tim Cook may have knowledge responsive to this interrogatory.

4  **INTERROGATORY NO. 20**

5     List and identify each and every employee, contractor, agent or agency who were

6  terminated or disciplined for violation of an Agreement.  For each employee, contractor, agent or

7  agency you identified in response to this interrogatory, identify and describe (a) the Agreement at

8  issue, including its terms and counterparties, (b) the nature of the violation, and (c) the

9  disciplinary or termination action taken.

10  **RESPONSE TO INTERROGATORY NO. 20**

11     Apple incorporates by reference as if set forth herein the General Objections stated above.

12  Apple further objects to this interrogatory as overly broad, unduly burdensome, and seeking

13  information that is not relevant to the subject matter of this lawsuit or not reasonably calculated to

14  lead to the discovery of admissible evidence.  Apple further objects to the term "Agreement" as

15  vague, ambiguous, and overly broad, and to the extent that it calls for a legal conclusion and

16  assume facts not in evidence.

17     Subject to and without waiving these specific objections and the above-stated General

18  Objections, Apple responds that it is not presently aware of any such Apple employees,

19  contractors, agents, or agencies.

20

21    Dated:   March 29, 2013         O'MELVENY & MYERS LLP

22

23                By: /s/ Christina J. Brown
                        Christina J. Brown

24                   Attorneys for Defendant
                   Apple Inc.

25

26

27

28

## **CERTIFICATE OF SERVICE**

I hereby certify that on March 29, 2013, I served the foregoing document by email and by

U.S. mail on the following counsel:

RICHARD M. HEIMANN
rheimann@lchb.com
KELLY M. DERMODY
kdermody@lchb.com
ERIC B. FASTIFF
efastiff@lchb.com
BRENDAN P. GLACKIN
bglackin@lchb.com
DEAN M. HARVEY
dharvey@lchb.com
ANNE B. SHAVER
ashaver@lchb.com
Lieff, Cabraser, Heimann & Bernstein LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111
Telephone: (415) 956-1000
Facsimile: (415) 956-1008
*Attorneys for Plaintiffs*

JOSEPH R. SAVERI
jsaveri@saverilawfirm.com
LISA LEEBOVE
lleebove@saverilawfirm.com
JAMES DALLAL
jdallal@saverilawfirm.com
Saveri Law Firm
505 Montgomery Street, Suite 625
San Francisco, CA 94111
Telephone: (415) 500-6800
Facsimile: (415) 500-6803
*Attorneys for Plaintiffs*

LINDA P. NUSSBAUM
lnussbaum@gelaw.com
Grant & Eisenhofer P.A.
485 Lexington Avenue, 29th Floor
New York, NY 10017
Telephone: (646) 722-8500
Facsimile: (646) 722-8501
*Attorneys for Plaintiffs*

ERIC L. CRAMER
ecramer@bm.net
SARAH R. SCHALMAN-BERGEN
sschalman-bergen@bm.net
Berger & Montague, P.C.
1622 Locust Street
Philadelphia, PA 19103
Telephone: (215) 875-3000
Facsimile: (215) 875-4604
*Attorneys for Plaintiffs*

EDWARD D. JOHNSON
wjohnson@mayerbrown.com
LEE H. RUBIN
lrubin@mayerbrown.com
ERIC B. EVANS
eevans@maybrown.com
MAYER BROWN LLP
Two Palo Alto Square, Suite 300
Palo Alto, CA 94306-2112
Telephone: (650) 331-2000
Facsimile (650) 331-2060
*Attorneys for Defendant Google Inc.*

DONN P. PICKETT
donn.pickett@bingham.com
FRANK M. HINMAN
frank.hinman@bingham.com
SUJAL J. SHAH
sujal.shah@bingham.com
BINGHAM MCCUTCHEN LLP
Three Embarcadero Center
San Francisco, CA 94111-4067
Telephone: (415) 393-2000
Facsimile: (415) 393-2286
*Attorneys for Defendant Intel Corp.*

- 1 -

ROBERT A. MITTELSTAEDT
ramittelstaedt@JonesDay.com
CRAIG E. STEWART
cestewart@JonesDay.com
JONES DAY
555 California Street, 26th Floor
San Francisco, CA 94104
Telephone: (415) 626-3939
Facsimile: (415) 875-5700
*Attorneys for Defendant Intuit Inc.*

CATHERINE T. ZENG
czeng@jonesday.com
JONES DAY
1755 Embarcadero Road
Palo Alto, CA 94303
Telephone: (650) 739-3939
Facsimile: (650) 739-3900
*Attorneys for Defendant Intuit Inc.*

ROBERT A. MITTELSTAEDT
ramittelstaedt@jonesday.com
CRAIG A. WALDMAN
cwaldman@jonesday.com
DAVID C. KIERNAN
dkiernan@jonesday.com
JONES DAY
555 California Street, 26th Floor
San Francisco, CA 94104
Telephone: (415) 626-3939
Facsimile: (415) 875-5700
*Attorneys for Defendant Adobe Systems, Inc.*

JOHN W. KEKER
jkeker@kvn.com
DANIEL PURCELL
dpurcell@kvn.com
EUGENE M. PAIGE
epaige@kvn.com
PAULA L. BLIZZARD
pblizzard@kvn.com
KEKER & VAN NEST LLP
633 Battery Street
San Francisco, CA 94111-1704
Telephone: (415) 391-5400
Facsimile: (415) 397-7188
*Attorneys for Defendant Lucasfilm Ltd.*

EMILY JOHNSON HENN
ehenn@cov.com
COVINGTON & BURLING LLP
333 Twin Dolphin Dr., Suite 700
Redwood Shores, CA 94065
Telephone: (650) 632-4700
Facsimile: (650) 632-4800
*Attorneys for Defendant Pixar*

DEBORAH A. GARZA
dgarza@cov.com
CHINUE RICHARDSON
crichardson@cov.com
COVINGTON & BURLING LLP
1201 Pennsylvania Avenue NW
Washington, DC 20004
Telephone: (202) 662-6000
Facsimile: (202) 662-6291
*Attorneys for Defendant Pixar*

I declare under penalty of perjury under the laws of the United States that the above is true and correct.

Date:   March 29, 2013

By: /s/ Christina J. Brown
Christina J. Brown

APPLE INC.'S AMENDED RESPONSES TO
SECOND SET OF INTERROGATORIES
NO. 11-CV-2509-LHK

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## <u>VERIFICATION</u>

I, Mark Bentley, Senior Director of Executive Search at Apple Inc. ("Apple"), am authorized to make this verification for and on behalf of Apple with regard to Apple's Amended Responses to Plaintiffs' Second Set of Interrogatories, as to Interrogatory No. 15 at page 6, line 11 through page 7, line 19 and page 11, lines 20 through 27, and as to Interrogatory Nos. 16 through 20.  I have read the foregoing responses and know the contents thereof.  I am informed and believe that the matters stated therein are true and correct, and on that basis verify these responses on behalf of Apple, reserving the right in the event new, additional, or different information is discovered to amend or supplement the responses as necessary.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed this __4__ day of April, 2013, at Sunnyvale, California.


Signed: _____

VERIFICATION FOR APPLE'S AMENDED
RESPONSES TO SECOND INTERROGATORIES
NO. 11-CV-2509-LHK

1

**VERIFICATION**

2        I, Ron Okamoto, Vice President of Developer Relations at Apple Inc. ("Apple"), am

3   authorized to make this verification for and on behalf of Apple with regard to Apple's Amended

4   Responses to Plaintiffs' Second Set of Interrogatories, as to Interrogatory No. 15 at page 7, line

5   20 through page 9, line 1 and page 10, line 24 through page 11, line 19.  I have read the foregoing

6   responses and know the contents thereof.  I am informed and believe that the matters stated

7   therein are true and correct, and on that basis verify these responses on behalf of Apple, reserving

8   the right in the event new, additional, or different information is discovered to amend or

9   supplement the responses as necessary.

10        I declare under penalty of perjury under the laws of the United States that the foregoing is

11   true and correct.

12        Executed this _____ day of April, 2013, at Cupertino, California.

13

14                          Signed: _____

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**VERIFICATION**

2       I, Bob Mansfield, Senior Vice President of Technologies at Apple Inc. ("Apple"), am

3 authorized to make this verification for and on behalf of Apple, with regard to Apple's Amended

4 Responses to Plaintiffs' Second Set of Interrogatories, as to Interrogatory No. 15 at page 9, lines 2

5 through 20. I have read the foregoing responses and know the contents thereof. I am informed

6 and believe that the matters stated therein are true and correct, and on that basis verify these

7 responses on behalf of Apple, reserving the right in the event new, additional, or different

8 information is discovered to amend or supplement the responses as necessary.

9       I declare under penalty of perjury under the laws of the United States that the foregoing is

10 true and correct.

11       Executed this 4th day of April, 2013, at Cupertino, California.

12

13           Signed: Robert J Mansfield

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## <u>VERIFICATION</u>

2      I, Brian Croll, Vice President of OS X Product Marketing at Apple Inc. ("Apple"), am

3   authorized to make this verification for and on behalf of Apple with regard to Apple's Amended

4   Responses to Plaintiffs' Second Set of Interrogatories, as to Interrogatory No. 15 at page 9, line

5   21 through page 10, line 23.  I have read the foregoing responses and know the contents thereof.

6   I am informed and believe that the matters stated therein are true and correct, and on that basis

7   verify these responses on behalf of Apple, reserving the right in the event new, additional, or

8   different information is discovered to amend or supplement the responses as necessary.

9      I declare under penalty of perjury under the laws of the United States that the foregoing is

10   true and correct.

11      Executed this _____ day of April, 2013, at Cupertino, California.

12                      Signed: _____

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28