# EXHIBIT 3

# WEATHERFORD DECLARATION IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

1  Robert A. Mittelstaedt (State Bar No. 60359)
   ramittelstaedt@jonesday.com
2  Craig A. Waldman (State Bar No. 229943)
   cwaldman@jonesday.com
3  David C. Kiernan (State Bar No. 215335)
   dkiernan@jonesday.com
4  Lin W. Kahn (State Bar No. 261387)
   linkahn@jonesday.com
5  Peter A. Julian (State Bar No. 277673)
   pjulian@jonesday.com
6  JONES DAY
   555 California Street, 26th Floor
7  San Francisco, CA 94104
   Telephone: (415) 626-3939
8  Facsimile: (415) 875-5700

9  Attorneys for Defendant
   Adobe Systems Inc.
10

11                    UNITED STATES DISTRICT COURT

12        NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

13

14  IN RE: HIGH-TECH EMPLOYEE          **Master Docket No. 11-CV-2509-LHK**
    ANTITRUST LITIGATION
15
                                       **DEFENDANT ADOBE SYSTEMS INC.'S**
16      THIS DOCUMENT RELATES TO:      **AMENDED RESPONSE TO**
                                       **PLAINTIFFS' SECOND SET OF**
17      ALL ACTIONS                    **INTERROGATORIES DIRECTED TO**
                                       **DEFENDANT ADOBE SYSTEMS INC.**
18

19

20            **CONFIDENTIAL – ATTORNEYS EYES ONLY**

21

22

23

24

25

26

27

28

Pursuant to Federal Rule of Civil Procedure 33, defendant Adobe Systems Incorporated ("Adobe") hereby amends its response and objections to Plaintiffs' Second Set of Interrogatories Directed to Adobe Systems Inc.

## INITIAL STATEMENT

Adobe's amended responses and objections to Plaintiffs' Second Set of Interrogatories Directed to Adobe Systems Inc. are based on information known to Adobe after a reasonably diligent search. These amended responses and objections are subject to change based on additional information that may come to light as a result of discovery and further investigation. Adobe expressly reserves the right to supplement, further amend, or correct any or all of the responses.

## GENERAL OBJECTIONS

Adobe asserts the following General Objections. Each individual response is subject to, and is limited in accordance with, the following General Objections.

1.      Adobe objects to the "Definitions," "Instructions," and each Interrogatory to the extent that they seek to impose obligations beyond those imposed by the Federal Rules of Civil Procedure, Local Rules of this Court, or any order entered by the Court in this action.

2.      Adobe objects to each Interrogatory to the extent that it calls for information protected by the attorney-client privilege, the attorney work product doctrine, the joint defense privilege, the common interest doctrine, or any other applicable privilege or doctrine. No such information will be produced, and any inadvertent production shall not be deemed a waiver of any privilege or protection. Adobe will refer to this objection as the "Privilege Objection."

3.      Adobe objects to this discovery to the extent it requests information that qualifies for protection under Federal Rule of Civil Procedure 26(c), including without limitation trade secrets, proprietary information, other confidential commercial information or sensitive information or information the disclosure of which is prohibited by federal or state law, rule or regulation. This objection will hereafter be referred to as the "Confidential Information Objection."

4.      Adobe objects to this discovery to the extent that the terms used are so amorphous

1   and overbroad that they either make the request if literally read so overbroad and burdensome as

2   to be unreasonable and beyond the bounds of relevance and/or make it difficult for Adobe to

3   ascertain, with specificity sufficient to allow Adobe to conduct a search, what information

4   Plaintiffs are seeking.  This objection will hereafter be referred to as the "Vague and Ambiguous

5   Objection."

6       5.      Adobe objects to this discovery to the extent the scope of the Interrogatory is

7   overbroad and burdensome.  This occurs when the discovery seeks information that is not

8   reasonably calculated to lead to the discovery of admissible evidence or where the burden of

9   producing the requested information far outweighs their relevance to the claims or defenses or the

10  benefit to plaintiff.  This objection will hereafter be referred to as the "Burden Objection."

11      6.      Adobe objects to the extent that this discovery violates the applicable procedural

12  statutes or rules to the extent that it is compound, conjunctive or disjunctive, resulting in

13  Plaintiffs' disguising the true amount of discovery they are taking and makes the call of the

14  interrogatory impossible to ascertain.  Adobe will treat each subpart as a separately propounded

15  interrogatory.  This objection will hereafter be referred to as the "Compound Objection."

16      7.      By responding to an Interrogatory with a defined term, Adobe is not by

17  implication agreeing with any such definition.

18      8.      Adobe objects to the definition of "agreement" as argumentative, misleading,

19  vague and ambiguous, assuming facts not in evidence, and to the extent it purports to reach a

20  legal conclusion.

21      9.      Adobe interprets "cold-calling" and "cold-call" to mean communicating directly in

22  any manner (including, without limitation, orally, in writing, telephonically, or electronically)

23  with a potential employee who has not applied for a job or otherwise initiated contact with the

24  entity making the cold-call.

25      10.     Adobe objects to the definition of "co-conspirators" as argumentative, assuming

26  facts not in evidence, and to the extent that it purports to reach a legal conclusion regarding the

27  defendants.

28      11.     Adobe objects to the definition of the terms "you," "your," and "your company" in

1    paragraph 17 as overbroad, unduly burdensome, seeking information that is neither relevant nor

2    reasonably calculated to lead to the discovery of admissible evidence, and seeking information

3    not in the possession, custody or control of Adobe.  Adobe further objects to the extent it purports

4    to impose a duty on Adobe to obtain information in the possession, custody or control of others,

5    including third-party entities.  Adobe interprets "you," "your," and "your company" to refer to

6    Adobe Systems Inc.

7          12.      Adobe objects to the definition of "identify" in paragraph 10 as being compound,

8    overbroad, unduly burdensome, requesting information not in the possession of Adobe and as

9    seeking to impose obligations beyond those established by the Federal Rules of Civil Procedure,

10    Local Rules of this Court, or any order entered by the Court in this action.

11         13.      Adobe objects to Instructions 2, 3, and 5 to the extent seeking to impose

12    obligations beyond those established by the Federal Rules of Civil Procedure, Local Rules of this

13    Court or any order entered by the Court in this action.

14         14.      Adobe objects to the relevant time period identified in the Definition No. 10(a) and

15    Instruction No. 4 as overbroad and unduly burdensome.  For the purposes of Adobe's responses,

16    the relevant time period will be January 1, 2004 through March 13, 2009, the date Adobe received

17    the Civil Investigative Demand from the Department of Justice.

18

19               **SPECIFIC RESPONSES AND OBJECTIONS TO REQUESTS**

20    **INTERROGATORY NO. 15:**

21       Identify each and every allegedly procompetitive collaboration between you and another

22    company that would not have taken place absent an Agreement between you and any other Co-

23    Conspirator.  For each collaboration identified, state all facts which support your contention that

24    the collaboration would not have taken place absent an Agreement.

25    **RESPONSE TO INTERROGATORY NO. 15:**

26       Adobe asserts the Privilege, Burden, Vague and Ambiguous, Confidential Information,

27    and Compound Objections.  Adobe objects to this interrogatory to the extent that it calls for a

28    legal conclusion, seeks expert opinion or purports to set forth or be premised on any legal test.

1    Adobe also objects to this interrogatory as argumentative and to the extent that it assumes that

2    there was an agreement between Adobe and any defendant other than Apple.  Adobe further

3    objects to this interrogatory to the extent it calls for speculation, because it asks Adobe to imagine

4    how its extensive and varied collaborations with Apple would have been different if historical

5    facts had been other than they were.

6         Subject to and without waiving these objections and the General Objections, Adobe

7    responds as follows:

8         The non-solicitation policy between Adobe and Apple fostered a close working

9    relationship over the last thirty years, facilitating numerous collaborative endeavors that

10   benefitted consumers with innovation and new and updated products.  The companies'

11   collaboration traces back to the early 1980s, when they were both in the early stages of designing

12   computerized publishing and graphics reproduction tools.  Working together, they launched the

13   desktop publishing revolution that transformed the publishing industry and the creative arts.

14        Their first collaboration involved Adobe's PostScript, a programming language that

15   enhanced communication between computers and printers.  Apple incorporated PostScript into

16   the Apple LaserWriter printer and marketed the combined technology and the Apple-Adobe

17   corporate strategy as the "Macintosh Office."  Developing Macintosh Office required top-to-

18   bottom collaboration and coordination between the two companies.  Indeed, during this period,

19   essentially all of Adobe's revenue came from Apple, and all of its resources were devoted to the

20   companies' shared vision.

21        The combination of Adobe's software and Apple's hardware transformed the publishing

22   industry, expanding output and consumer choice by giving graphic artists and creative

23   professionals control over the design and production of graphic images.  None of this would have

24   been possible without the companies' deep collaboration.

25        After ushering in the desktop publishing revolution, Adobe and Apple continued to

26   collaborate on a series of new and innovative computer technologies.  Adobe produced industry

27   leading Creative Suite applications, including its Illustrator and Photoshop software for the Mac.

28   Photoshop was released as a Mac-only product in 1990 and quickly became a key driver for both

1  companies. Adobe also developed Premiere movie editing software; After Effects motion

2  graphics software; PageMill, GoLive, and Dreamweaver web publishing software; InDesign and

3  Pagemaker page layout software; and Acrobat portable document software for the Apple

4  platform. By combining their hardware and software, the companies invented an entirely new

5  medium for the creative professional. All told, Adobe and Apple have executed over 200

6  cooperative agreements.

7       All of these software launches involved close collaboration between the companies on

8  product design and optimization, education and support, and co-marketing and cross-promotion,

9  among other things. Thus, Adobe's numerous creative arts software releases—and the benefits

10  they have provided to consumers—were a result of its close partnership with Apple.

11       The companies' collaboration on PostScript and the creative arts applications, however,

12  did not end after the products launched. Software, hardware, and operating systems do not and

13  did not remain static. Adobe's software titles and Apple's hardware and operating systems have

14  continued to evolve and to incorporate and adapt to new innovation, requiring extensive and

15  continual co-development, training and support. Each new software version, each new OS

16  version, and each new hardware platform and version, has required significant side-by-side

17  engineering and strategic planning. For example, Adobe worked with Apple to support the

18  launch of Apple's OS X operating system; Adobe was given access to that operating system prior

19  to its release, allowing Adobe to develop and deliver Mac OS X applications. Each successive

20  version of the operating system and platform has required additional collaboration and co-

21  development.

22       Adobe also collaborated with Apple on its migration from the PowerPC model to the Intel

23  architecture in 2005. The two companies worked closely to implement the transition, and Adobe

24  again quickly led the development and delivery of software for the new platform. Adobe and

25  Apple engaged in similar joint development and planning to accomplish the transition of Adobe's

26  creative arts desktop software to "apps" for the iPhone and iPod. To support these initiatives,

27  Adobe has shared its key intellectual property with Apple, including the source code of its core

28  products Flash and Photoshop.

- 6 -

ADOBE'S AMENDED RESPONSE TO 2nd ROGS
**CONFIDENTIAL ATTORNEYS EYES ONLY**
Case No. 11-CV-2509-LHK

1       This partnership and extensive series of collaborations required mutual trust.  Soliciting

2   talent is a provocative and disruptive maneuver, particularly soliciting an employee participating

3   in a collaborative endeavor.  The companies collaborative efforts, which involved working side-

4   by-side at the highest levels of productivity and innovation, and exposure to each other's most

5   closely-held technologies, confidential roadmaps and key talent, would have been undermined if

6   they felt the need to constantly shield their employees or keep an eye out for ulterior motives.  To

7   foster the stability and success of their partnership, Adobe and Apple decided that they would not

8   affirmatively solicit each other's employees.  Hiring was never prohibited; only cold calls were

9   restricted.  This policy permitted the parties to work closely together while reassuring each

10  company that the other would not use the collaboration as an opportunity to identify and recruit

11  talent.

12      A more limited arrangement or series of arrangements would have been costly and

13  impossible to administer.  The Adobe and Apple collaborations have involved broad swathes of

14  both companies, including Adobe's creative design applications, Adobe's Postscript technology,

15  Apple's operating systems, and Apple's hardware.  The companies' joint work would often stop

16  and then restart, and expand into unanticipated areas.  The extensive, shifting, and long-lived

17  nature of Adobe and Apple's collaborations would have made attempts to limit the scope of their

18  non-solicitation policies complex and administratively costly, if not impossible.

19      It is impossible to say, as a factual matter, what would have happened absent the Adobe-

20  Apple non-solicitation policy.  Adobe believes, however, that if the collaboration had happened at

21  all absent the policy, it would not have lasted as long, would not have worked as well or have

22  been as successful if one company or the other had actively solicited the other company's

23  employees.  The companies may not have worked as openly and closely together, sharing their

24  most essential technologies and prized innovators, without assurance against active solicitation.

25      Without the collaboration described above, Adobe's products would not have had the

26  same quality or reached as wide of an audience as they did.  Adobe depended on Apple's

27  partnership and on its success in the marketplace.  The companies had a shared vision for the

28  evolution of visual computing and the intersection of art and technology.  Apple computers were

1    originally the only—and are still widely viewed as the optimal—platform for Adobe's creative

2    products.  Consequently, without the policy and the partnership it enabled, considerable

3    innovation and product improvement may have been lost or delayed.

4    **INTERROGATORY NO. 16:**

5        If the Agreement between you and any other Co-Conspirator permitted you to participate

6    in any collaborative joint venture project(s) with another co-Conspirator "freely," and eliminated

7    "fear that the other company [would] hire away [your] employees," as you alleged in your Reply

8    Brief, would any of these collaborative joint ventures not have occurred unless the Agreement

9    prevented, hindered, or limited the hiring of one company's employees by the other?  If the

10   answer to this question is "yes," please state all facts which support your contention.  If the

11   answer to this question is "no," please identify the mechanism or means by which the Agreement

12   allegedly successfully permitted you to participate in each and every specific collaborative joint

13   venture project that you allege would not have occurred absent the Agreement.

14   **RESPONSE TO INTERROGATORY NO. 16:**

15       Adobe asserts the Privilege, Burden, Vague and Ambiguous, Confidential Information,

16   and Compound Objections.  Adobe objects to this interrogatory to the extent that it calls for a

17   legal conclusion, seeks expert opinion, or purports to set forth or be premised on any legal test.

18   Adobe also objects to this interrogatory as argumentative and to the extent that it assumes that

19   there was an agreement between Adobe and any defendant other than Apple.  Adobe further

20   objects to this interrogatory the extent it calls for speculation, because it asks Adobe to imagine

21   how its extensive and varied collaborations with Apple would have been different if historical

22   facts had been other than they were.

23       Subject to and without waiving these objections and the General Objections, Adobe

24   responds as follows:

25       Adobe and Apple decided that they would not affirmatively solicit each other's

26   employees.  Hiring was never prohibited; only cold calls were restricted.  The companies were

27   free to pursue each other's employees if contacted by those employees directly or indirectly.

28   Indeed, a number of Apple employees left their jobs to join Adobe and vice-versa.

1    Interrogatory No. 15 sets forth how the policy facilitated Adobe's collaboration with

2    Apple.

3    **INTERROGATORY NO. 17:**

4    State all facts which support your contention that an Agreement between you and any

5    other Co-Conspirator facilitated collaborations between you and that Co-Conspirator, and

6    describe the specific mechanism by which the Agreement facilitated such collaboration.

7    **RESPONSE TO INTERROGATORY NO. 17:**

8    Adobe asserts the Privilege, Burden, Vague and Ambiguous, Confidential Information,

9    and Compound Objections.  Adobe objects to this interrogatory to the extent that it calls for a

10   legal conclusion, seeks expert opinion, or purports to set forth or be premised on any legal test.

11   Adobe also objects to this interrogatory as argumentative and to the extent that it assumes that

12   there was an agreement between Adobe and any defendant other than Apple.  Adobe further

13   objects to this interrogatory to the extent it calls for speculation, because it asks Adobe to imagine

14   how its extensive and varied collaborations with Apple would have been different if historical

15   facts had been other than they were.

16   Subject to and without waiving these objections and the General Objections, Adobe

17   responds as follows:

18   The response to Interrogatory No. 15 sets forth how the policy facilitated Adobe's

19   collaboration with Apple.

20   **INTERROGATORY NO. 18:**

21   Identify and describe any and all steps you took to prevent hiring, poaching, raiding, or

22   soliciting of your employees by competitor companies pursuant to any Agreement(s) or to enforce

23   any Agreement(s) between you and any Co-Conspirator or you and anyone else.

24   **RESPONSE TO INTERROGATORY NO. 18:**

25   Adobe asserts the Burden, Vague and Ambiguous, Confidential Information, and

26   Compound Objections.  Adobe further objects to the phrase "hiring, poaching, raiding, or

27   soliciting of your employees by competitor companies pursuant to any Agreement(s)" as vague,

28   ambiguous, and unduly burdensome.  Adobe interprets this to request steps taken to enforce the

ADOBE'S AMENDED RESPONSE TO 2nd ROGS
**CONFIDENTIAL ATTORNEYS EYES ONLY**
Case No. 11-CV-2509-LHK

1   non-solicit policy involving Adobe and Apple.  Adobe further objects to this interrogatory as

2   argumentative and to the extent that it assumes that there was an agreement between Adobe and

3   any defendant other than Apple.

4        Subject to and without waiving these objections and the General Objections, Adobe

5   responds as follows:

6        As described above, Adobe and Apple decided not to affirmatively solicit each other's

7   employees.  Hiring was never prohibited; only cold calls were restricted.  Periodically, Adobe

8   asked its employee recruiters not to cold call Apple employees and distributed a "do not call" list

9   to recruiters that included Apple.  The "do not call" list has been produced to Plaintiffs.  On at

10  least one occasion, Adobe sent Apple an email about soliciting Adobe employees.

11  **INTERROGATORY NO. 19:**

12       Identify your executives, employees, or agents who have substantial knowledge regarding

13  the effect(s) of any Agreement between you and a Co-Conspirator on your alleged ability to

14  engage in procompetitive collaborations or increase output or production.

15  **RESPONSE TO INTERROGATORY NO. 19:**

16       Adobe asserts the Privilege, Burden, Vague and Ambiguous, Confidential Information,

17  and Compound Objections.  Adobe objects to this interrogatory to the extent that it calls for a

18  legal conclusion, seeks expert opinion, or purports to set forth or be premised on any legal test.

19  Adobe also objects to this interrogatory as argumentative and to the extent that it assumes that

20  there was an agreement between Adobe and any defendant other than Apple.  Adobe further

21  objects to this interrogatory to the extent it calls for speculation, because it asks Adobe to imagine

22  how its extensive and varied collaborations with Apple would have been different if historical

23  facts had been other than they were.

24       Subject to and without waiving these objections and the General Objections, Adobe

25  responds that the following executives or employees have substantial knowledge regarding the

26  effects of the nonsolicit agreement between Adobe and Apple between January 1, 2003 through

27  the termination of the agreement:

28       Bruce Chizen

1    Shantanu Narayen

2    Digby Horner

3    **INTERROGATORY NO. 20:**

4    List and identify each and every employee, contractor, agent or agency who were

5    terminated or disciplined for violation of an Agreement.  For each employee, contractor, agent or

6    agency you identified in response to this interrogatory, identify and describe (a) the Agreement at

7    issue, including its terms and counterparties, (b) the nature of the violation, and (c) the

8    disciplinary or termination action taken.

9    **RESPONSE TO INTERROGATORY NO. 20:**

10   Adobe asserts the Privilege, Burden, Vague and Ambiguous, Confidential Information,

11   and Compound Objections.  Adobe objects to this interrogatory to the extent that it assumes that

12   there was an agreement between Adobe and any defendant other than Apple.

13   Subject to and without waiving these objections and the General Objections, Adobe

14   responds as follows:

15   Adobe is unaware of any Adobe employee, contractor, agent or agency who was

16   terminated or disciplined for violation of a non-solicitation policy with Apple.

17   **INTERROGATORY NO. 21:**

18   If the Agreement between you and Apple "facilitated the companies' numerous

19   production collaborations," and/or "advanced the development of a number of game-changing

20   innovations and highly productive joint activities," as you allege in your White Paper, did these

21   allegedly procompetitive effects occur because the Agreement prevented, hindered, or limited the

22   hiring of one company's employees by the other?  If the answer to this question is "yes," please

23   state all facts which support your contention.  If the answer to this question is "no," please

24   identify the mechanism or means by which the Agreement allegedly "facilitated the companies'

25   numerous production collaborations," and/or "advanced the development of a number of

26   gamechanging innovations and highly productive joint activities."

27   **RESPONSE TO INTERROGATORY NO. 21:**

28   Adobe asserts the Privilege, Burden, Vague and Ambiguous, Confidential Information,

1   and Compound Objections.  Adobe objects to this interrogatory to the extent that it calls for a

2   legal conclusion, seeks expert opinion, or purports to set forth or be premised on any legal test.

3   Adobe also objects to this interrogatory as argumentative and to the extent that it assumes that

4   there was an agreement between Adobe and any defendant other than Apple.  Adobe further

5   objects to this interrogatory to the extent it calls for speculation, because it asks Adobe to imagine

6   how its extensive and varied collaborations with Apple would have been different if historical

7   facts had been other than they were.

8           Subject to and without waiving these objections and the General Objections, Adobe

9   responds as follows:

10          Adobe and Apple decided that they would not affirmatively solicit each other's

11   employees.  Hiring was never prohibited; only cold calls were restricted.  The companies were

12   free to pursue each other's employees if contacted by those employees directly or indirectly.

13   Indeed, a number of Apple employees left their jobs to join Adobe and vice-versa.

14          Response to Interrogatory No. 15 explains how the Adobe-Apple non-solicitation policy

15   facilitated Adobe's collaboration with Apple and/or advanced the development of a number of

16   innovations and productive joint activities.

17   **INTERROGATORY NO. 22:**

18          If the Agreement between you and Apple increased or expanded output or "served the

19   interests of consumers," as you allege in your White Paper, did these allegedly procompetitive

20   effects occur because the Agreement prevented, hindered, or limited the hiring of one company's

21   employees by the other?  If the answer to this question is "yes," state all facts which support your

22   contention. If the answer to this question is "no," please identify the mechanism or means by

23   which the Agreement allegedly "increased or expanded output or "served the interests of

24   consumers."

25   **RESPONSE TO INTERROGATORY NO. 22:**

26          Adobe asserts the Privilege, Burden, Vague and Ambiguous, Confidential Information,

27   and Compound Objections.  Adobe objects to this interrogatory to the extent that it calls for a

28   legal conclusion, seeks expert opinion, or purports to set forth or be premised on any legal test.

1   Adobe also objects to this interrogatory as argumentative and to the extent that it assumes that

2   there was an agreement between Adobe and any defendant other than Apple.  Adobe further

3   objects to this interrogatory to the extent it calls for speculation, because it asks Adobe to imagine

4   how its extensive and varied collaborations with Apple would have been different if historical

5   facts had been other than they were.

6        Subject to and without waiving these objections and the General Objections, Adobe

7   responds as follows:

8        Adobe and Apple decided that they would not affirmatively solicit each other's

9   employees.  Hiring was never prohibited; only cold calls were restricted.  The companies were

10  free to pursue each other's employees if contacted by those employees directly or indirectly.

11  Indeed, a number of Apple employees left their jobs to join Adobe and vice-versa.

12       Response to Interrogatory No. 15 explains how the Adobe-Apple non-solicitation policy

13  facilitated Adobe's collaboration with Apple and/or advanced the development of a number of

14  innovations and productive joint activities.

18  Dated: March 19, 2012                    JONES DAY

20                                           By: _____

21                                               Peter Julian

22                                           Attorneys for Adobe Systems Incorporated

ADOBE'S AMENDED RESPONSE TO 2nd ROGS

1
## VERIFICATION

2       I, Digby Horner, declare that I am authorized to execute this verification on behalf of

3   defendant Adobe Systems Incorporated  I have read the foregoing DEFENDANT ADOBE

4   SYSTEMS INC.'S AMENDED RESPONSE TO PLAINTIFFS' SECOND SET OF

5   INTERROGATORIES DIRECTED TO DEFENDANT ADOBE SYSTEMS INC.  Reserving the

6   right to correct or amend the responses if errors or additional information is subsequently

7   discovered, based on my own personal knowledge, information that I obtained from others with

8   personal knowledge, and/or a review of records, I verify that the foregoing responses are true and

9   correct to the best of my knowledge and belief.

10       I declare under penalty of perjury under the laws of the United States of America that the

11   foregoing is true and correct.

12       Executed this _____day of March 2013 in San Jose, California.

13

14   **Digby Horner** Digitally signed by Digby Horner
DN: cn=Digby Horner, o, ou=Engineering,
email=horner@adobe.com, c=US
Date: 2013.03.20 11:57:25 -07'00'

15   Digby Horner

16

17   SFI-818910v2

18

19

20

21

22

23

24

25

26

27

28

ADOBE'S AMENDED RESPONSE TO 2nd ROGS
**CONFIDENTIAL ATTORNEYS EYES ONLY**
Case No. 11-CV-2509-LHK

## PROOF OF SERVICE

I, Pamela Walter, declare:

I am a citizen of the United States and employed in San Francisco County, California.  I am over the age of eighteen years and not a party to the within-entitled action.  My business address is 555 California Street, 26th Floor, San Francisco, California  94104.  On March 21, 2013, I served a copy of the within document(s):

**DEFENDANT ADOBE SYSTEMS INC'S AMENDED RESPONSE TO PLAINTIFFS' SECOND SET OF INTERROGATORIES DIRECTED TO DEFENDANT ADOBE SYSTEMS INC.**

☐      by transmitting via facsimile the document(s) listed above to the fax number(s) set forth below on this date before 5:00 p.m.

☒      by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in the United States mail at San Francisco, California addressed as set forth below.

☐      by placing the document(s) listed above in a sealed envelope and affixing a pre-paid air bill, and causing the envelope to be delivered to a agent for delivery.

☐      by personally delivering the document(s) listed above to the person(s) at the address(es) set forth below.

☐      by transmitting via e-mail or electronic transmission the document(s) listed above to the person(s) at the e-mail address(es) set forth below.

## SEE ATTACHED SERVICE LIST

I am readily familiar with the firm's practice of collection and processing correspondence for mailing.  Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid in the ordinary course of business.  I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Executed on March 21, 2013, at San Francisco, California.

Pamela Walter

1

**SERVICE LIST**

| | |
|---|---|
| 2<br><br>3<br><br>4<br><br>5<br><br>6<br><br>7<br><br>8<br><br>9<br><br>10<br><br>11<br><br>12<br><br>13<br><br>14<br><br>15<br><br>16 | Richard M. Heimann<br>Kelly M. Dermody<br>Eric B. Fastiff<br>Brendan P. Glackin<br>Joseph P. Forderer<br>Dean M. Harvey<br>Anne B. Shaver<br>Lieff, Cabraser, Heiman & Bernstein, LLP<br>275 Battery Street, 29th Floor<br>San Francisco, CA 94111-3339<br>Telephone: (415) 956-1000<br>Facsimile: (415) 956-1008<br>rheimann@lchb.com<br>kdermody@lchb.com<br>efastiff@lchb.com<br>bglackin@lchb.com<br>dharvey@lchb.com<br>ashaver@lchb.com<br><br>Attorneys for Plaintiffs<br><br>Joshua P. Davis<br>University of San Francisco School of Law<br>2130 Fulton Street<br>San Francisco, CA 94117-1080<br>Telephone: (415) 422-6223<br>Facsimile: (415) 422-6433<br>davisj@usfca.edu | Eric L. Cramer<br>Shanon J. Carson<br>Sarah R. Schalman-Bergen<br>BERGER & MONTAGUE, P.C.<br>1622 Locust Street<br>Philadelphia, PA 19103<br>Telephone: (800) 424-6690<br>Facsimile: (215) 875-4604<br>ecramer@bm.net<br>scarson@bm.net<br>sschalman-bergen@bm.net<br><br>Attorneys for Plaintiffs |
| 17<br><br>18<br><br>19<br><br>20<br><br>21<br><br>22 | Linda P. Nussbaum<br>GRANT & EISENHOFER, P.A.<br>485 Lexington Avenue, 29th Floor<br>New York, NY 10017<br>Telephone: (646) 722-8500<br>Facsimile: (646) 722-8501<br>lnussbaum@gelaw.com<br><br>Attorneys for Plaintiffs | Craig Stewart<br>Catherine Zeng<br>JONES DAY<br>555 California Street, 26th Floor<br>San Francisco, CA 94104<br>Telephone: (415) 626-3939<br>Facsimile: (415) 875-5700<br>cestewart@jonesday.com<br>czeng@jonesday.com<br><br>Attorneys for Defendant INTUIT |
| 23<br><br>24<br><br>25<br><br>26<br><br>27<br><br>28 | George Riley<br>Michael F. Tubach<br>Flora F. Vigo<br>Amanda R. Conley<br>O'Melveny & Meyers LLP<br>Two Embarcadero Center, 28th Floor<br>San Francisco, CA 94111<br>Telephone: (415) 984-8701<br>Facsimile: (415) 984-8701<br>griley@omm.com<br>mtubach@omm.com<br>fvigo@omm.com | Donald M. Falk<br>Lee H. Rubin<br>Edward D. Johnson<br>Mayer Brown LLP<br>Two Palo Alto Square, Suite 300<br>Palo Alto, CA 94306-2112<br>Telephone: (650) 331-2030<br>Facsimile: (650) 331-2060<br>dfalk@mayerbrown.com<br>lrubin@mayerbrown.com<br>wjohnson@mayerbrown.com<br>Attorneys for Defendant GOOGLE INC. |

SFI-733362v1

PROOF OF SERVICE
Case No. 11-CV-2509-LHK

| Attorneys for Defendant APPLE INC. | |
|---|---|
| Donn P. Pickett<br>Frank M. Hinman<br>Sujal J. Shah<br>Frank Busch<br>Bingham McCutchen LLP<br>Three Embarcadero Center<br>San Francisco, CA 94111-4067<br>Telephone: (415) 393-2000<br>Facsimile: (415) 393-2286<br>donn.pickett@bingham.com<br>frank.hinman@bingham.com<br>sujal.shah@bingham.com<br>frank.busch@bingham.com<br><br>Attorneys for Defendant INTEL CORP. | John W. Keker<br>Daniel E. Purcell<br>Paula L. Blizzard<br>Eugene M. Paige<br>Keker & Van Nest LLP<br>633 Battery Street<br>San Francisco, Ca 94111-1704<br>Telephone: (415) 391-5400<br>Facsimile: (415) 397-7188<br>jwk@kvn.com<br>dpurcell@kvn.com<br>plb@kvn.com<br>EMP@kvn.com<br><br>Attorneys for Defendant LUCASFILM LTD. |
| Robert T. Haslam, III<br>Emily J. Henn<br>Covington & Burling LLP<br>333 Twin Dolphin Drive, Suite 700<br>Redwood Shores, CA 94065<br>Telephone: (650) 632-4702<br>Facsimile: (650) 632-4800<br>rhaslam@cov.com<br>ehenn@cov.com<br><br>Deborah A. Garza<br>Chinue T. Richardson<br>Thomas A. Isaacson<br>Covington & Burling LLP<br>1201 Pennsylvania Avenue, NW<br>Washington, DC 20004<br>Telephone: (202) 662-5052<br>dgarza@cov.com<br>crichardson@cov.com<br>tisaacson@cov.com<br><br>Attorneys for Defendant PIXAR | Joseph R. Saveri<br>Lisa J. Leebove<br>Kevin E. Rayhill<br>James Dallal<br>SAVERI LAW FIRM<br>505 Montgomery Street, Suite 625<br>San Francisco, CA  94111<br>Telephone: (415) 500-6800<br>Facsimile: (415) 500-6803<br>jsaveri@saverilawfirm.com<br>lleebove@saverilawfirm.com<br>krayhill@saverilawfirm.com<br>jdallal@saverilawfirm.com<br><br>Attorneys for Individual and Representative<br>Plaintiffs Michael Devine, Mark Fichtner,<br>Siddharth Hariharan, Brandon Marshall, and<br>Daniel Stover |