# EXHIBIT 6

# WEATHERFORD DECLARATION IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

1   Richard M. Heimann (State Bar No. 63607)
    Kelly M. Dermody (State Bar No. 171716)
2   Eric B. Fastiff (State Bar No. 182260)
    Brendan P. Glackin (State Bar No. 199643)
3   Dean M. Harvey (State Bar No. 250298)
    Anne B. Shaver (State Bar No. 255928)
4   LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
    275 Battery Street, 29th Floor
5   San Francisco, California 94111-3339
    Telephone: (415) 956-1000
6   Facsimile: (415) 956-1008

7   Joseph R. Saveri (State Bar No. 130064)
    Lisa J. Leebove (State Bar No. 186705)
8   James G. Dallal (State Bar No. 277826)
    JOSEPH SAVERI LAW FIRM
9   505 Montgomery Street, Suite 625
    San Francisco, California 94111
10  Telephone: (415) 500-6800
    Facsimile: (415) 500-6803

11

12  *Co-Lead Counsel for Plaintiff Class*

13  [Additional counsel listed on signature page]

14                 UNITED STATES DISTRICT COURT

15               NORTHERN DISTRICT OF CALIFORNIA

16                      SAN JOSE DIVISION

17

18  IN RE: HIGH-TECH EMPLOYEE          Master Docket No. 11-CV-2509-LHK
    ANTITRUST LITIGATION
    THIS DOCUMENT RELATES TO:          **PLAINTIFFS' SUPPLEMENTAL**
19  ALL ACTIONS,                       **ANSWERS AND OBJECTIONS TO**
                                       **DEFENDANTS' SECOND SET OF**
20                                     **INTERROGATORIES**

21

22  **PROPOUNDING PARTY:**       Defendants

23  **RESPONDING PARTY:**        Plaintiffs

24  **SET NUMBER:**              Second

25          Pursuant to Rule 33 of the Federal Rules of Civil Procedure and the Local Rules of the

26  United States District Court for the Northern District of California, Plaintiffs respond to

27  Defendants' Second Set Interrogatories, served on February 28, 2013, as follows:

28

## PRELIMINARY STATEMENT

The Answers set forth below are limited by agreement between Plaintiffs' Counsel and Defendants' Counsel.  In consideration of the fact that substantial discovery (including depositions and production of documents by Defendants) has taken place recently, and in light of the procedural posture of this case, the parties through their counsel have agreed that Plaintiffs at this time shall identify the alleged agreements at issue and certain information about them.  The parties agreed Plaintiffs would supplement their initial response to Interrogatory No. 15 on May 24, 2013, and that Plaintiffs' response to Interrogatory No. 16 shall be provided to Defendants on June 7, 2013.  Plaintiffs continue to reserve all of their rights to object and respond to any Interrogatories or portions of Interrogatories not addressed herein.  Plaintiffs' investigation and discovery in this matter is not complete.  Plaintiffs reserve the right to amend, alter, supplement, modify, or otherwise revise these Answers and Objections.

Plaintiffs further state that these Answers contain references to material that certain Defendants have designated as "CONFIDENTIAL - ATTORNEYS' EYES ONLY" under the Protective Order governing this case.  Without conceding the validity of any such designations and reserving all rights to challenge them, Plaintiffs accordingly designate these Answers and Objections as "CONFIDENTIAL – ATTORNEYS' EYES ONLY."

## GENERAL OBJECTIONS

The following General Objections apply to each and every applicable Interrogatory, and are incorporated by reference into each and every applicable Answer as if set forth in full in each Response.

1.    Plaintiffs object to the Interrogatories to the extent they call for information protected by the attorney-client privilege, the work product doctrine, or any other common law privilege or protection that may attach to information requested by the interrogatory.

2.    In responding to the Interrogatories, Plaintiffs do not adopt, embrace, or accept any term or definition employed by Defendants.  These responses are made based upon Plaintiffs' interpretation of words contained in the Interrogatory, unless a specific definition or instruction has been agreed upon.

1    3.    Plaintiffs object to the Interrogatories to the extent they are premature contention

2  interrogatories.

3    Subject to, and without waiving, any of the foregoing objections, Plaintiffs respond as

4  follows:

5  ## ANSWERS AND SPECIFIC OBJECTIONS

6  **INTERROGATORY NO. 15:**

7    Separately for each agreement (whether bilateral, multilateral or otherwise) that You

8  contend any Defendant entered into and for which You seek damages in this case, describe in as

9  much detail as possible the circumstances of the agreement including without limitation the time

10  periods during which it was in effect, the names of the Persons who entered into it, the Persons

11  who were parties to it, and its terms.

12  **ANSWER TO INTERROGATORY NO. 15:**

13    Plaintiffs object to Interrogatory No. 15 to the extent that it impermissibly seeks the

14  premature disclosure of information that will be the subject of expert reports and testimony.  Such

15  expert opinion will be disclosed in accordance with the Orders of the Court and the applicable

16  Rules of Civil Procedure.  Plaintiffs further object that this is a premature contention

17  interrogatory.  Plaintiffs continue to reserve all rights to amend or supplement the answer

18  accordingly as they analyze subsequently obtained evidence.

19    Subject to and without waiving any of the general or specific objections, Plaintiffs

20  respond to Interrogatory No. 15 as follows:

21    Defendants Adobe Systems, Inc., Apple Inc., Google Inc., Intel Corp., Intuit Inc.,

22  Lucasfilm Ltd., and Pixar participated in a conscious scheme designed to achieve an unlawful

23  objective (the "conspiracy").  This included, but is not limited to, a web of interconnected

24  understandings, agreements, and mutual assurances between and among Defendants Adobe,

25  Apple, Google, Intel, Intuit, Lucasfilm, and Pixar over a number of years, including 2005-2009,

26  with the purpose and effect of restricting employee recruiting and hiring practices; reducing

27  competition for employees and labor; diminishing employment opportunities and interfering in

28  the price-setting mechanism that otherwise would have prevailed; and reducing, suppressing and

1109391.3

1    stabilizing wages and other compensation to the members of the Class.

2          Defendants' understandings, agreements, and mutual assurances included express

3    agreements not to compete for each other's employees ("anti-solicitation agreements"). The anti-

4    solicitation agreements prohibited recruitment of employees unless the employee first

5    affirmatively requested consideration. The anti-solicitation agreements often went substantially

6    further and became effectively no-hire agreements, or no-hire without permission. The

7    Defendants' understandings, agreements, and mutual assurances to restrict the recruitment and

8    hiring of each other's employees are evidenced by a series of explicit communications between

9    and among Defendants, had common (if not identical) material terms and features, and together

10   had a common economic impact to the detriment of Defendants' employees.

11         All of Defendants' employees were subject to Defendants' scheme, as the understandings,

12   agreements, and mutual assurances were unlimited in scope by geography, job, function, or time

13   period. The prohibitions also applied to all subsidiaries of Defendants. Defendants' agreements

14   were naked restraints of trade that were not tailored, necessary, or ancillary to any legitimate

15   cooperation or collaboration between or among the Defendants, and were without legitimate

16   procompetitive justification.

17         After entering into anti-solicitation agreements, Defendants' senior executives

18   implemented them throughout their respective companies (and third party recruiters working on

19   Defendants' behalf), and policed each other's adherence to them. Violations and suspected

20   violations were reported by Defendants' senior executives, who then took immediate steps to

21   address the violations or suspected violations and ensure that the violations would not be

22   repeated.

23         Further, the Defendant co-conspirators agreed to conceal the existence, nature, and scope

24   of their scheme and took affirmative steps to do so. The agreements continued at least until

25   Defendants received Civil Investigative Demands from the United States Department of Justice,

26   and continued no later than September 24, 2010, the date of the consent decree.

27   **Beginning of the Conspiracy: Lucasfilm and Pixar.**

28         The conspiracy began in the mid 1980's, shortly after Steve Jobs purchased the entity

1  from Lucasfilm that became Pixar.  George Lucas and Ed Catmull agreed that Lucasfilm and

2  Pixar would not compete for each other's employees.  Mr. Lucas and Mr. Catmull agreed that:

3  neither company would solicit the other's employees; the companies would take affirmative steps

4  to avoid bidding wars for employees that would result in increasing each other's pay structure

5  (this would later be formalized into an express agreement not to counter-offer above the other

6  companies' original offer); and the companies would notify the other in cases when an employee

7  actively sought to work for the other.  With respect to the notification provision, a candidate of

8  one company applying to the other company would be instructed to inform his or her current

9  manager that he or she was seeking employment with the other company.  The company

10  considering the other's employee as a job candidate was to call the candidate's present company

11  upon receipt of the candidate's application, and again in the event that it chose to extend a job

12  offer, even if the candidate applied for a job on his or her own initiative.  Mr. Lucas and Mr.

13  Catmull directed their respective and relevant senior executives to implement and enforce the

14  anti-solicitation agreement, including Lori McAdams, Sharon Coker, Jim Morris, and Micheline

15  Chau.

16  **Steve Jobs and Apple.**

17      The best evidence available shows that, no later than January 2004, the conspiracy

18  expanded to include Apple.  Pixar and Apple agreed not to solicit employees of the other

19  company, and, in any case, Pixar could not hire any Apple employee without Steve Jobs'

20  approval.  The agreement was subsequently re-affirmed by Lori McAdams and Danielle Lambert,

21  among others.  The anti-solicitation agreement between Pixar and Apple was expressly designed

22  to mimic the anti-solicitation agreement between Pixar and Lucasfilm.

23  **Conspiracy Expands to Include Google and Intel.**

24      In February 2005, an "irate" Steve Jobs called Sergey Brin of Google to demand that

25  Google and Apple agree not to compete for each other's employees, and to demand that Google

26  immediately withdraw pending offers of employment to Apple employees.  Steve Jobs threatened

27  that, if Google did not agree, there would be "war" between the companies.  Google agreed to

28  Steve Jobs' demands.  The individuals who participated in forming and approving the agreement

1  between Google and Apple included: Steve Jobs, members of Google's Executive Management

2  Group (including Sergey Brin, Larry Page, Eric Schmidt, and others), and Bill Campbell.

3  Members of Google's Board of Directors, including Intel's CEO Paul Otellini, were

4  informed of and approved Google's decision to enter into an anti-solicitation agreement with

5  Apple.  At the same time (February 2005), Google placed Intel on its Do Not Call List.  In an

6  email to Eric Schmidt in May 2006, Paul Otellini confirmed that a "no recruiting agreement"

7  existed between Intel and Google, and sought to ensure that Google was enforcing it.  In June 07,

8  Eric Schmidt confirmed in an email to Paul Otellini that Intel had been on Google's "Do Not Call

9  List since the policy was created" (February 2005).  In September 2007, Paul Otellini referred to

10 the agreement between the companies as a "handshake 'no recruit' between Eric [Schmidt] and

11 myself.  I would not like this broadly known." The individuals who participated in forming and

12 approving the agreement between Google and Intel included Eric Schmidt and Paul Otellini.

13 **Adobe.**

14 Three months after Steve Jobs succeeded in reaching an anti-solicitation agreement with

15 Google, he applied similar tactics with Adobe to induce it into entering into an identical

16 agreement with Apple.  By no later than May 27, 2005, Adobe and Apple agreed not to solicit any

17 employees of the other.  As implemented, the agreement also prevented the hiring of each other's

18 employees.  The agreement was made between Steve Jobs and Bruce Chizen, and was

19 implemented by Shantanu Narayen, Danielle Lambert, Theresa Townsley, and Donna Morris,

20 among others.

21 **Intuit.**

22 After participating in the formation and implementation of the anti-solicitation agreements

23 among Apple, Google, and Intel, Bill Campbell insisted that Google and Intuit agree to an

24 identical agreement.  No later than June 2007, Google and Intuit agreed to an anti-solicitation

25 agreement.  The agreement was made among Bill Campbell, Eric Schmidt, and Shona Brown.

26 **INTERROGATORY NO. 16:**

27 Separately for each agreement identified in response to Interrogatory No. 15, state all facts

28 that support Your contention that the agreement existed and was unlawful, including, without

1    limitation, identifying supporting Documents.

2    **ANSWER TO INTERROGATORY NO. 16:**

3          Plaintiffs object to Interrogatory No. 16 as a premature contention interrogatory.

4          Plaintiffs also object to this Interrogatory to the extent that it calls for information

5    protected by the attorney-client privilege and/or the work-product doctrine.  Plaintiff further

6    objects to the extent the information requested will be the subject of expert reports and testimony.

7    Such expert opinion will be disclosed in accordance with the Orders of the Court and the

8    applicable Rules of Civil Procedure.  Plaintiffs further object to the extent that such "facts" are in

9    Defendants' possession and have not yet been produced or otherwise discovered in this case.

10          Pursuant to discussions between Plaintiffs' counsel and Defendants' counsel, Plaintiffs

11   shall provide a response to this Interrogatory to Defendants by June 7, 2013.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

| | |
|---|---|
| 1 | Dated: May 24, 2013 |
| 2 | |
| 3 | |
| 4 | |
| 5 | |
| 6 | |
| 7 | |
| 8 | |
| 9 | |
| 10 | |
| 11 | |
| 12 | |
| 13 | |
| 14 | |
| 15 | |
| 16 | |
| 17 | |
| 18 | |
| 19 | |
| 20 | |
| 21 | |
| 22 | |
| 23 | |
| 24 | |
| 25 | |
| 26 | |
| 27 | |
| 28 | |

JOSEPH SAVERI LAW FIRM


By:  /s/ Joseph R. Saveri


Joseph R. Saveri (State Bar No. 130064)
Lisa J. Leebove (State Bar No. 186705)
James G. Dallal (State Bar No. 277826)
JOSEPH SAVERI LAW FIRM
505 Montgomery Street, Suite 625
San Francisco, California 94111
Telephone: (415) 500-6800
Facsimile: (415) 500-6803

Richard M. Heimann (State Bar No. 63607)
Kelly M. Dermody (State Bar No. 171716)
Eric B. Fastiff (State Bar No. 182260)
Brendan P. Glackin (State Bar No. 199643)
Dean M. Harvey (State Bar No. 250298)
Anne B. Shaver (State Bar No. 255928)
LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Telephone: (415) 956-1000
Facsimile: (415) 956-1008

*Co-Lead Counsel for Plaintiff Class*

Eric L. Cramer
Sarah R. Schalman-Bergen
BERGER & MONTAGUE, P.C.
22 Locust Street
Philadelphia, PA 19103
Telephone: (800) 424-6690
Facsimile: (215) 875-4604

Linda P. Nussbaum (pro hac vice)
Peter A. Barile III (pro hac vice)
GRANT & EISENHOFER P.A.
5 Lexington Avenue, 29th Floor
New York, NY 10017
Telephone: (646) 722-8500
Facsimile: (646) 722-8501


*Class Counsel*

## VERIFICATION

I have reviewed the answers to the interrogatories set Plaintiffs' Supplemental Answers and Objections to Defendants' Second Set of Interrogatories, Numbers 15 and 16. I declare under penalty of perjury of the laws of the United States that these answers are true and correct to the best of my knowledge.

Dated: June __, 2013

Brandon Marshall

1057031.1

CASE NO. 11-CV-2509 LHK

<u>VERIFICATION</u>

I have reviewed the answers to the interrogatories set Plaintiffs' Supplemental Answers and Objections to Defendants' Second Set of Interrogatories, Numbers 15 and 16. I declare under penalty of perjury of the laws of the United States that these answers are true and correct to the best of my knowledge.

Dated: June 17, 2013

Daniel Stover

1057031.1

CASE NO. 11-CV-2509 LHK

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

<u>VERIFICATION</u>

     I have reviewed the answers to the interrogatories set Plaintiffs' Supplemental Answers and Objections to Defendants' Second Set of Interrogatories, Numbers 15 and 16.  I declare under penalty of perjury of the laws of the United States that these answers are true and correct to the best of my knowledge.

Dated: June 19, 2013

_____

Mark Fichtner

1057031.1

CASE NO. 11-CV-2509 LHK

1

<u>VERIFICATION</u>

2      I have reviewed the answers to the interrogatories set Plaintiffs' Supplemental

3  Answers and Objections to Defendants' Second Set of Interrogatories, Numbers 15 and 16.  I

4  declare under penalty of perjury of the laws of the United States that these answers are true and

5  correct to the best of my knowledge.

6

7  Dated: June 22, 2013

8                                             Michael Devine

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## VERIFICATION

2          I have reviewed the answers to the interrogatories set Plaintiffs' Supplemental

3   Answers and Objections to Defendants' Second Set of Interrogatories, Numbers 15 and 16.  I

4   declare under penalty of perjury of the laws of the United States that these answers are true and

5   correct to the best of my knowledge.

6

7   Dated: June 25, 2013

8                                                                              Siddharth Hariharan

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28