# EXHIBIT 11

# WEATHERFORD DECLARATION IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

```
                    UNITED STATES DISTRICT COURT

                  NORTHERN DISTRICT OF CALIFORNIA

                        SAN JOSE DIVISION



     E:  HIGH-TECH EMPLOYEE        )

     TRUST LITIGATION              )

                                   )  No. 11-CV-2509-LHK

      DOCUMENT RELATES TO:         )

     ACTIONS.                      )

     _____



              VIDEO DEPOSITION OF WILLIAM CAMPBELL

               CONFIDENTIAL - ATTORNEYS' EYES ONLY

                       February 5, 2013


        Reported by:  Anne Torreano, CSR No. 10520
```

```
 1         I -- you know, you look at the second two
 2   bullets, we accept internal, external references,
 3   referrals I think they mean, accept direct solicitation
 4   from a candidate, but ...
 5   BY MR. HEIMANN:
 6       Q.   I think the real question is -- I don't mean
 7   to interrupt you.
 8       A.   I'm just trying -- I'm trying to piece
 9   together what you want me to look at here, so they --
10            MR. MITTELSTAEDT:  Why don't we let him ask.
11   BY MR. HEIMANN:
12       Q.   Yeah, I'm focusing on your best recollection.
13   That's all.
14       A.   Yeah.
15       Q.   And obviously I'm putting these documents in
16   front of you in the hope or -- that they'll help you.
17   If they don't, they don't, and, you know, that's the
18   answer.
19            So the question is -- the question is, do you
20   recall being aware of the agreement that the EMG made
21   with respect to the cold-calling into these companies?
22            MR. MITTELSTAEDT:  As reflected in Exhibit
23   561?
24            MR. HEIMANN:  Yes.
25            MR. MITTELSTAEDT:  And I object to the first
```

Timestamps: 11:08:45 (line 10), 11:08:50 (line 15), 11:09:05 (line 20), 11:09:17 (line 25)

```
 1  part as argumentative.
 2           MR. RUBIN:  And lacks foundation.
 3           MR. HEIMANN:  Okay.  I don't understand that.
 4  BY MR. HEIMANN:
 5      Q.   But as long as you understand the question.
 6           You got the question?
 7      A.   I was aware that Apple and -- that Google had
 8  a formal agreement -- a formal agreement -- a formal --
 9  "informal" and "agreement" is a contradiction in
10  terms.  So that there was an agreement made to this
11  end, it seems like.  That's what it says there from
12  Shona.  And I was aware of that.
13           So yes, I was aware of that.
14           And so now, what is the follow-on?
15      Q.   No, no.  You're good.  That's the answer to
16  the question I was interested in.
17           Did you understand that the agreement with
18  Apple was reciprocal, that Apple had agreed in turn
19  that it wouldn't do that with Google?
20      A.   No, I've not been -- I'm not aware of that at
21  all.  I mean, I don't know -- I don't know that it was
22  or wasn't.  You know, whether there was a reciprocal --
23  you know, what I read here and what I knew then was
24  that Google made an agreement.
25      Q.   Well, who did it make the agreement with?
```

Timestamps: 11:09:46 (line 10), 11:10:08 (line 15), 11:10:20 (line 20), 11:10:40 (line 25)

```
 1    A.    Sounds like -- sounds like Google made an
 2  agreement among themselves that this is what they would
 3  do.  This is their procedure.
 4    Q.    That's your interpretation of what's in the
 5  document?
 6    A.    That is correct.  Because I was not in the
 7  meeting where they discussed this.
 8    Q.    How do you know that?
 9    A.    I don't remember that, so I'm -- you know.  I
10  don't know.  I could have been in the meeting.  I might
11  have been, but I doubt it.  If I had, I would remember
12  something about that.
13    Q.    Let's go to 563.
14    A.    Should I keep these other ones available
15  here?  No?
16    Q.    You might want to keep them handy.  We'll give
17  them back to you if we need them.
18    A.    Okay.
19    Q.    All right, sir.
20          So this is an e-mail, "Subject:  Google," from
21  Danielle Lambert or "Lambert."  I'm not sure how to
22  pronounce that.
23          Do you know who that person is?
24    A.    I do.
25    Q.    Who was it?
```

Timestamps: 11:11:10, 11:11:55, 11:12:23, 11:12:36

```
 1    A.   She at that time was the VP of recruiting at
 2  Apple.
 3    Q.   And how did you know that?
 4    A.   I was on the Apple board.
 5    Q.   How senior a position was that at Apple?
 6    A.   Not on Steve's staff.
 7    Q.   Not on Steve's staff?
 8    A.   Not on Steve's staff.
 9    Q.   One step below?
10    A.   One step below.
11    Q.   Okay.  And she's writing to
12  usrecruitingall@group.apple.
13         Do you know what that is?
14    A.   No.  You can make the same assumption that I
15  could.
16    Q.   Which is the recruiters at Apple?
17    A.   Correct.
18    Q.   All right.  She says in this e-mail -- and by
19  the way, the e-mail is dated February 26th, 2005.
20         Do you see that?
21    A.   Yes.
22    Q.   So just a week or two after the exchange we're
23  looking at a moment ago that was internal at Google;
24  right?
25    A.   Yes.
```

Timestamps: 11:12:55, 11:13:09, 11:13:17, 11:13:27

```
 1  on them, but nonetheless, do you recognize any of the
 2  names on this -- I'm sorry, 669.  It's an e-mail from
 3  Patrick Burke to a host of people here.  "Subject:
 4  Do-Not-Call List."
 5          Any of those folks you recognize?
 6          MR. MITTELSTAEDT:  Recognize what?
 7          MR. HEIMANN:  The names.
 8          THE WITNESS:  Recognize the names in the
 9  header.
10          MR. MITTELSTAEDT:  Oh, oh.
11          THE WITNESS:  No.
12  BY MR. HEIMANN:
13      Q.  And in part, the e-mail reads -- there's a
14  number of companies identified:  Adobe, Garmin, Google,
15  Intuit.  "If they approach us, then it's okay, so this
16  says.  Don't stretch this rule.  Have something
17  documented that they came to us."
18          And then dropping down a bit, there's a line
19  that reads, "History updated November 24, 2008.
20  Do-Not-Call List" in big, bold letters.  And then, "For
21  any company on this list," and there are several bullet
22  points here, and then there are a list of companies,
23  beginning with Adobe, and then going on down the second
24  page, they include, among others, Google, Intel at
25  executive level, Intuit, Pixar, et cetera.
```

```
           1        Do you see all that?
           2    A.  I do.
           3        Sorry, Bob.  Don't nod.  Okay.  Got it.
           4    Q.  Were you aware at this time, at or about this
           5  time, that Apple had a do-not-call list that included
           6  all of these companies?
           7    A.  I did not, no.
           8    Q.  Did you know whether Apple had
           9  do-not-call -- strike that.
01:23:23  10        Did you know whether Apple had a do-not-call
          11  list at all?
          12    A.  Did not know until today.
          13    Q.  You did not see this getting ready for my
          14  deposition?
01:23:34  15    A.  I did not see this getting ready for my
          16  deposition.
          17        THE WITNESS:  You're slipping.
          18  BY MR. HEIMANN:
          19    Q.  Well, Intuit's on here.  That's a surprise?
01:23:46  20    A.  Yeah, actually.  But all -- every board member
          21  is represented, company is represented there.
          22    Q.  I'm sorry.  Explain that.
          23    A.  Apple's board companies are represented
          24  there.  Board members' companies are represented on
01:24:06  25  this list.
```

1    Q.   So -- I'm sorry.  I want to make sure I
2  understand what you're saying.
3         You're saying that every one of these
4  companies had somebody from their company on Apple's
5  board?
6    A.   No, I said that there are companies on here,
7  like Genentech.  Art Levinson's on Apple's board.
8    Q.   Okay.
9    A.   Google.  Eric Schmidt was on Apple's board.
10  Intuit.  Bill Campbell's on Apple's board.  J. Crew.
11  Mickey Drexler's on Apple's board.
12         So there's some of them just because they're
13  board members.
14    Q.   I didn't understand Intuit.
15    A.   I'm on Apple's board.
16    Q.   Gotcha.  Okay.
17         So are you suggesting that's the reason that
18  those companies are on the list?
19         MR. TUBACH:  Calls for speculation.
20         THE WITNESS:  It does call for speculation.
21  It was just my assumption.
22         MR. HEIMANN:  Okay.
23         THE WITNESS:  I mean, I'm not trying to be
24  expansive, believe me.  I have no idea.  I never saw
25  this list before, ever.

BY MR. HEIMANN:

Q. I understand you never saw the list, but I just want to be clear that we -- setting aside the actual list itself, you just didn't know that Apple had a list?

A. I did not know, no.

Q. Now I want to avoid using the word "list."

Did you know Apple had any understanding or agreements with any of the companies that you see on this list not to solicit their employees?

A. No.

Q. Does it surprise you, as a member of the board, that you were not aware of that?

MR. MITTELSTAEDT: Object. Argumentative.

THE WITNESS: No, it doesn't surprise me at all.

BY MR. HEIMANN:

Q. And why is that?

MR. MITTELSTAEDT: Same objection.

THE WITNESS: Board members don't get down into this level of detail.

BY MR. HEIMANN:

Q. So if we go to Exhibit 243 -- and I ask because this is a little bit later in time. Now we're looking at a document that apparently was generated in

```
            1   July of 2009.  The earlier one was from December of
            2   2008.
            3           And I see -- I haven't actually compared them
            4   one for one, but I see Palm on this Exhibit 243 and I
            5   don't believe it's on Exhibit 669.  There may be
            6   others.  I'm not sure.
            7           But in any event, would your answers about
            8   this list be the same as you gave me about the other
            9   one?
01:26:48   10   A.   I'm not sure I gave you an answer, but I've
           11   never seen any of these before, no.
           12   Q.   Never seen the document and -- right?
           13   A.   The names of the companies, or didn't even
           14   know there was such a list.
01:27:02   15           But it does reinforce my view of the common
           16   board members, the board member thing.
           17   Q.   With respect to which companies?
           18   A.   Genentech, Intuit, J. Crew.
           19   Q.   How do you explain all the others?
01:27:32   20   A.   I don't know.  I mean, I don't know how the
           21   lists get made up.  There must be some competitive
           22   reason they put some in parens on the back page here.
           23           MR. MITTELSTAEDT:  Move to strike the answer,
           24   only to interpose the objection that the question is
01:27:48   25   argumentative.
```

REPORTER'S CERTIFICATE

I, Anne Torreano, Certified Shorthand Reporter nsed in the State of California, License No. 10520, by certify that the deponent was by me first duly n, and the foregoing testimony was reported by me was thereafter transcribed with computer-aided scription; that the foregoing is a full, complete, true record of said proceedings.

I further certify that I am not of counsel or rney for either or any of the parties in the going proceeding and caption named or in any way rested in the outcome of the cause in said caption.

The dismantling, unsealing, or unbinding of original transcript will render the reporter's ificates null and void.

In witness whereof, I have subscribed my name 8th day of February, 2013.

[ ] Reading and Signing was requested.

[ ] Reading and Signing was waived.

[X] Reading and Signing was not requested.

_____
ANNE M. TORREANO, CSR No. 10520