# EXHIBIT 14

# WEATHERFORD DECLARATION IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

ROBERT T. HASLAM (S.B. #71134)
rhaslam@cov.com
EMILY JOHNSON HENN (S.B. #269482)
ehenn@cov.com
COVINGTON & BURLING LLP
333 Twin Dolphin Dr., Suite 700
Redwood Shores, CA 94065
Telephone: (650) 632-4700
Facsimile: (650) 632-4800

DEBORAH A. GARZA (*pro hac vice*)
dgarza@cov.com
JOHN W. NIELDS JR. (*pro hac vice*)
jnields@cov.com
THOMAS A. ISAACSON (*pro hac vice*)
tisaacson@cov.com
CHINUE RICHARDSON (*pro hac vice*)
crichardson@cov.com
COVINGTON & BURLING LLP
1201 Pennsylvania Avenue NW
Washington, DC 20004
Telephone: (202) 662-6000
Facsimile: (202) 662-6291

Attorneys for Defendant
PIXAR

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

**CONFIDENTIAL -- ATTORNEYS' EYES ONLY**

| | |
|---|---|
| IN RE: HIGH-TECH EMPLOYEE ANTITRUST LITIGATION<br><br>THIS DOCUMENT RELATES TO:<br><br>ALL ACTIONS | Master Docket No. 11-CV-2509-LHK<br><br>**DEFENDANT PIXAR'S SUPPLEMENTAL OBJECTIONS AND RESPONSES TO PLAINTIFFS' SECOND SET OF <u>INTERROGATORIES</u>** |

**PROPOUNDING PARTY:**     **PLAINTIFFS AND THE PROPOSED CLASS**

**RESPONDING PARTY:**     **DEFENDANT PIXAR**

**SET NUMBER:**     **TWO**

DEFENDANT PIXAR'S SUPPLEMENTAL OBJECTIONS AND RESPONSES TO PLAINTIFFS' SECOND SET OF INTERROGATORIES
Master Docket No. 11-CV-2509-LHK

**CONFIDENTIAL -- ATTORNEYS' EYES ONLY**

1       Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure and Local
2  Rule 33, Defendant Pixar serves its Supplemental Objections and Responses to Plaintiffs'
3  Second Set of Interrogatories.

4  **I.      GENERAL OBJECTIONS**

5       1.      Pixar's supplemental responses to these interrogatories are based only on facts
6  known at this time. Discovery in this matter is ongoing, and during the course of subsequent
7  discovery, Pixar may become aware of supplemental, additional, or other responsive
8  information. Pixar reserves the right to update, amend, or supplement these supplemental
9  responses. In addition, Pixar's supplemental responses are made without prejudice to Pixar's
10 right to present further additional or other evidence or contentions in a motion for summary
11 judgment, at trial, or otherwise, based upon information hereafter identified, obtained, or
12 developed.

13      2.      Pixar objects to the Definitions, Instructions, and Interrogatories to the extent
14 they are vague, ambiguous, overly broad, and/or unduly burdensome.

15      3.      Pixar objects to the Definitions, Instructions, and Interrogatories to the extent
16 they seek to impose any requirements in addition to or different from those required by the
17 Federal Rules of Civil Procedure, Local Rules, or any order of the Court.

18      4.      Pixar objects to the Definitions, Instructions, and Interrogatories to the extent
19 they purport to seek information protected from disclosure under the attorney-client privilege,
20 the work product doctrine, or any other applicable privilege or doctrine. Pixar does not intend
21 to waive, and shall not be deemed to have waived, any privilege or protection, including but not
22 limited to under the attorney-client privilege and the work product doctrine, or any other
23 applicable privilege or doctrine. Any inadvertent disclosure of privileged or protected material
24 shall not be deemed a waiver of this objection or the applicable privilege or protection.

25      5.      Pixar objects to the Definitions, Instructions, and Interrogatories to the extent
26 they seek information that is not relevant to the claims or defenses in this action, nor reasonably
27 calculated to lead to the discovery of admissible evidence.

28

DEFENDANT PIXAR'S SUPPLEMENTAL OBJECTIONS AND RESPONSES TO PLAINTIFFS' SECOND SET OF INTERROGATORIES
Master Docket No. 11-CV-2509-LHK

2        **CONFIDENTIAL -- ATTORNEYS' EYES ONLY**

1    6.    Pixar objects to Plaintiffs' "Definitions" and to each Interrogatory to the extent
2 they purport to give meaning or legal significance to a document, fact, or purported fact, the
3 meaning or significance of which is disputed between the parties.  By responding to an
4 Interrogatory with a defined term, Pixar is not by implication agreeing with any such definition.
5 Pixar's responses to these Interrogatories shall not constitute an admission or concession to
6 these Definitions.

7    7.    Pixar objects to Definition #2, and to the use of the terms "agreement," "contract,
8 "arrangement," "understanding," and "Co-Conspirator(s)," on the grounds that the definition is
9 argumentative, assumes facts not in evidence, calls for a legal conclusion, and to the extent the
10 term refers to anything other than bilateral agreements with a Defendant involving Pixar.  Any
11 responses to Interrogatories using this term are expressly limited to bilateral agreements with a
12 Defendant involving Pixar.  By responding to Interrogatories using this term, Pixar does not
13 concede the existence of bilateral agreements alleged in Plaintiffs' Complaint.

14    8.    Pixar objects to Definition #5, and to the use of the terms "Co-Conspirators" and
15 "DOES 1-200," to the extent it calls for information regarding agreements with entities not
16 named as defendants.  Pixar further objects to this definition on the grounds that the definition is
17 argumentative, assumes facts not in evidence, is unreasonably prejudicial, and to the extent that
18 it calls for a legal conclusion regarding the defendants.

19    9.    Pixar objects to Definition #7, and to the use of the terms "comprehensive,"
20 "complete," "accurate" and "detailed," on the grounds that it is vague, ambiguous, over broad
21 and unduly burdensome.

22    10.   Pixar objects to Definition #8 on the grounds that the definition is overly broad,
23 in particular to the extent it purports to include "agents," "messengers" and "directors."  Pixar
24 will respond to Interrogatories calling for identification of its "employees" as to "any current or
25 former officers, executives, managers, secretaries, staff members, or other persons who were or
26 are employed by Pixar during the relevant time period in a salaried, non-retail capacity" and
27 separately as to directors.  With respect to other defendants, Pixar will respond as to any
28 individual employed by a Defendant to the best of Pixar's knowledge.

| DEFENDANT PIXAR'S SUPPLEMENTAL OBJECTIONS AND RESPONSES TO PLAINTIFFS' SECOND SET OF INTERROGATORIES<br>Master Docket No. 11-CV-2509-LHK | 3 | **CONFIDENTIAL -- ATTORNEYS' EYES ONLY** |
|---|---|---|

1       11.     Pixar objects to Definition #10 to the extent it requests information with respect to "natural persons" from January 1, 2003, to the present on the grounds that the request is overly broad, unduly burdensome, and seeks information not relevant to the claims or defenses of any party nor reasonably calculated to lead to the discovery of admissible evidence. Pixar will respond for the time period from January 1, 2004, to the present. Pixar further objects to the extent this definition requests information with respect to documents that is not within Pixar's possession, custody, or control. Pixar further objects to this definition with respect to "collaborations," and to the use of the phrases "objective of the collaboration" and "result of the collaboration" as vague and ambiguous.

        12.     Pixar objects to Definition #14 and to the use of the terms "relating to," "referring to," "regarding," or "with respect to" and the grounds that the definition, and its numerous subparts, are unduly burdensome and overbroad.

        13.     Pixar objects to Definition #15, and to the phrase "any entity or person in which you have a financial or ownership interest," on the grounds that it is vague, ambiguous, overly broad and unduly burdensome. Pixar further objects to the extent this definition seeks information that is not in Pixar's possession, custody or control. Pixar will respond on behalf of Pixar only.

        14.     Pixar objects to Definition #17, and the use of the terms "subsidiaries," "affiliates," "agents" and "third-party" on the grounds that it is vague, ambiguous, over broad and unduly burdensome. Pixar further objects to the extent this definition seeks information that is not in Pixar's possession, custody or control. Pixar will respond on behalf of Pixar only.

        15.     Pixar objects to Instruction #3 to the extent it exceeds the scope of the requirements set forth in Rule 26 of the Federal Rules of Civil Procedure, to the extent it requests the provision of information beyond that necessary to establish Pixar's claim of privilege, and to the extent it requests the provision of information that is protected by the attorney-client privilege, the work product doctrine, or any other applicable privilege or doctrine.

DEFENDANT PIXAR'S SUPPLEMENTAL OBJECTIONS AND RESPONSES TO PLAINTIFFS' SECOND SET OF INTERROGATORIES
Master Docket No. 11-CV-2509-LHK

4

CONFIDENTIAL -- ATTORNEYS' EYES ONLY

16. Pixar objects to Instruction #4 to the extent it requests information from January 1, 2003, to the present on the grounds that the request is overly broad, unduly burdensome, and seeks information not relevant to the claims or defenses of any party nor reasonably calculated to lead to the discovery of admissible evidence. Pixar will respond for the time period from January 1, 2004, to the present.

## II. SPECIFIC OBJECTIONS AND RESPONSES

### INTERROGATORY NO. 15:

*Identify each and every allegedly procompetitive collaboration between you and another company that would not have taken place absent an Agreement between you and any other Co-Conspirator. For each collaboration identified, state all facts which support your contention that the collaboration would not have taken place absent an Agreement.*

<u>Response</u>: In addition to the foregoing General Objections, Pixar objects to this request on the grounds that it is vague, ambiguous, overly broad and unduly burdensome. Pixar cannot make sense of the contrasting use of the terms "another company" and "any other Co-Conspirator." Notwithstanding this objection, and without waiver of this objection, Pixar responds that it was not involved in any collaborations with companies other than Defendants that were related to agreements with Defendants.

Pixar further objects to this request to the extent it calls for Pixar to "state all facts," which is not possible at this stage of the case and before discovery has closed. Pixar will respond by providing a description of each relationship it identifies.

Pixar further objects to this interrogatory because its assumption that Pixar has made a "contention that [a] collaboration would not have taken place absent an Agreement" is argumentative, assumes facts not in evidence, and poses a counterfactual question that calls for speculation.

Pixar further objects to this interrogatory to the extent it requests information about collaborations between Pixar and other Defendants on the grounds that it purports to state the appropriate legal standard for assessing an agreement not to solicit employees.

Subject to the foregoing objections and without waiver of any objection, Pixar responds as follows.

**Lucasfilm**:  Pixar was formerly the computer graphics division of Lucasfilm Ltd. ("Lucasfilm").  In 1986, Steven P. Jobs bought the division from Lucasfilm and continued it as an ongoing business, with many of the same employees under the name Pixar.  After the sale, Pixar continued to operate on the Lucasfilm campus, with employees working in close proximity to Lucasfilm employees and sharing other common facilities.  Most of the newly independent Pixar employees joined directly from Lucasfilm, including Edwin Catmull, a Pixar co-founder who had worked at Lucasfilm since 1979.

Since Pixar's inception, Pixar and Lucasfilm have continued to work uniquely closely together in many ways that benefit the operations and performance of both companies by improving the quality of their respective outputs.  After the sale of Pixar to Mr. Jobs, Pixar provided technology support services to Lucasfilm and had access to Lucasfilm's systems.  Skywalker Sound, a Lucasfilm Division, has provided post-production sound services for all of Pixar's animated feature films.  These services include sound design, sound editing, dialogue editing, final dubbing, final dub supervision, sound effects editing, Automated Dialogue Replacement/Additional Dialogue Recording editing, and "Foley" recording and editing.  Pixar records its motion picture scores on Skywalker Sound's scoring stage.

In addition, Pixar and Lucasfilm have shared information about new technologies and digital tools.  Pixar granted Lucasfilm a perpetual, royalty-free license to use its RenderMan software, a leading solution for rendering 3D animation and visual effects, and provides Lucasfilm with access to the source code for the software.  With this access, Lucasfilm developed additional features for RenderMan and collaborated with Pixar so that features could be added to new software releases.  Lucasfilm also supported Pixar by allowing at least one key employee to perform consulting work for Pixar on lighting and shot design for one of Pixar's films.

The foregoing examples illustrate the kind of cooperation and collaboration in which Pixar and Lucasfilm engaged as a result of their close relationship and assisted by the fact that

1  the companies did not engage in cold-calling activity that could be harmful to that close

2  relationship and disruptive to these beneficial collaborations.

3      **Apple**:  By responding to this interrogatory, Pixar does not concede that it entered into

4  an agreement with Apple within the meaning of the Sherman Act, 15 U.S.C. § 1.  Pixar includes

5  Apple in its response to this interrogatory because Plaintiffs have alleged that Pixar and Apple

6  entered into an agreement.  Pixar incorporates into its response information regarding Apple

7  found at PIX00002193-2218 and PIX00002231.

8      Steven P. Jobs acquired Pixar from Lucasfilm in 1986 and continued to personally invest

9  in Pixar's growth, including as the company lost money in its early years.  During the relevant

10  period until May 2006, Jobs was the CEO and Chairman of the Board of Directors of Pixar and

11  CEO and a member of the Board of Directors of Apple.  After the Walt Disney Company

12  ("TWDC") acquired Pixar in May 2006, besides joining TWDC's Board of Directors as a non-

13  independent director, until his death, Mr. Jobs continued to be directly involved in Pixar's

14  operations through a Steering Committee formed at the time of the merger with TWDC for the

15  specific purpose of ensuring in part that Mr. Jobs would remain intimately involved in the

16  business operations of Pixar.  In this role, inter alia, Mr. Jobs participated in bi-monthly

17  meetings with Pixar concerning Pixar's operations and performance and served a crucial role of

18  helping to preserve Pixar's innovative and creative culture generally and within the broader

19  Disney community.  Mr. Jobs thus had a significant role in the oversight of Pixar at the same

20  time that he continued to lead Apple.

21      Apple and Pixar thus had a unique relationship arising out of the fact that Mr. Jobs

22  founded both companies and commonly controlled and influenced their operations throughout

23  the period alleged in the complaint.  The two companies also collaborated and cooperated with

24  each other to the extent possible given their very different focuses, to the benefit of both

25  companies.  For example, Apple granted Pixar early access to its Power Mac machines with G5

26  processors before the product's public release in June 2003.  Although Apple has traditionally

27  been extremely secretive about new hardware releases, it benefited from allowing Pixar early

28  access to generate data about the processor's ability to process Pixar's large computational load

more quickly than pre-existing processors.  Pixar benefitted from testing its RenderMan software on next generation hardware on which its customers would expect RenderMan to perform.  The results of this collaboration were presented in Apple's marketing material.

Apple also worked with Pixar as a high-end content creation facility to ensure Pixar's proprietary software tools would be supported by Apple's operating system.  When Pixar began development of the latest version of its proprietary animation software, MENV30, in the early to mid-2000s, its engineers worked with Apple engineers and received technical feedback regarding the software's design and testing.  Mr. Jobs was personally involved in this collaborative effort.  Pixar's Oscar winning film *Brave* was the first movie to be released that was made using Pixar's proprietary MENV30 animation software, now called "Presto."  Pixar engineers also worked with Apple engineers on video compression technology, helping to develop Apple's Pixlet video compression product.  Pixar engineers further assisted in the design of Apple's QTKit for image capture and recording of audio and video media content.

The foregoing examples illustrate the kind of cooperation and collaboration in which Pixar and Apple engaged as a result of their close relationship and assisted by the fact that the companies did not engage in cold-calling activity that could be harmful to that close relationship and disruptive to these beneficial collaborations.

**Intel:**  By responding to this interrogatory, Pixar does not concede that it entered into an agreement with Intel within the meaning of the Sherman Act, 15 U.S.C. § 1.  Pixar includes Intel in its response to this interrogatory because the documents produced on November 30, 2011, reflect a collaborative relationship between Pixar and co-defendant Intel.  Pixar incorporates into its response information regarding Intel found at PIX00002094-2192 and PIX00002228-PIX00002230.

Pixar further responds that for many years, Pixar and Intel have worked collaboratively on joint development projects relating to the graphics capabilities of Intel's microprocessors and Pixar's graphics rendering software, RenderMan.  One such project involved Intel's Larrabee chip.  That project related to the development by Intel's Advanced Visual Computing group of a

DEFENDANT PIXAR'S SUPPLEMENTAL OBJECTIONS AND RESPONSES TO PLAINTIFFS' SECOND SET OF INTERROGATORIES
Master Docket No. 11-CV-2509-LHK

8

**CONFIDENTIAL -- ATTORNEYS' EYES ONLY**

many-core graphics chip, leveraging Pixar's expertise in advanced computer graphics animation software.

The joint project required close collaboration between Intel and the small team of Pixar personnel responsible for developing the RenderMan software, and it involved the sharing of highly confidential and commercially sensitive Pixar information, including information concerning the architecture of RenderMan software. Pixar has previously produced documents evidencing the collaboration. (*e.g.*, PIX00002100-PIX00002912).

During the course of the Larrabee collaboration, from February to September 2008, Intel made offers to three members of Pixar's small RenderMan team, each of whom had been working with Intel on Larrabee, and two of whom accepted positions with Intel. At around the same time, Pixar became aware that Intel was involved in a collaboration with Dreamworks Animation, SKG, Inc. ("Dreamworks"). These facts caused Pixar to reconsider the benefits of continuing to expose its RenderMan team to Intel through the Larrabee collaboration.

The cooperation and collaboration in which Pixar and Intel engaged would not likely have occurred in the face of cold-calling activity and was assisted by the fact that the companies did not engage in such activity.

**INTERROGATORY NO. 16:**

*If the Agreement between you and any other Co-Conspirator permitted you to participate in each and every specific collaborative joint venture project with another co-Conspirator "freely," and eliminated "fear that the other company [would] hire away [your] employees," as you alleged in your Reply Brief, did these collaborative joint ventures occur because the Agreement prevented, hindered, or limited the hiring of one company's employees by the other? If the answer to this question is "yes," please state all facts which support your contention. If the answer to this question is "no," please identify the mechanism or means by which the Agreement allegedly successfully permitted you to participate in each and every specific collaborative joint venture project you allege occurred only because of the Agreement.*

Response:  In addition to the foregoing General Objections, Pixar objects to this request on the grounds that it is vague, ambiguous, unintelligible, overly broad and unduly burdensome. Pixar cannot make sense of the contrasting use of the terms "any other Co-Conspirator" and "another Co-Conspirator."  Pixar further objects to this interrogatory on the grounds that it is argumentative to the extent it quotes only selected parts of Defendants' Reply Brief and to the extent it purports to describe a legal standard applicable to agreements alleged in this case. Pixar further objects to this interrogatory, and its request for a response of "yes" or "no," on the grounds that it assumes facts not in evidence and poses a counterfactual question that calls for speculation.  Pixar further objects that this request, and its request for a "yes" or "no" response is compound and poses two separate questions.

Pixar further objects to this request to the extent it calls for Pixar to "state all facts," which is not possible at this stage of the case and before discovery has closed.  Pixar further objects to this interrogatory to the extent it is requesting information about "collaborative joint ventures," a term which is undefined.   Pixar understands the term to mean "collaboration."

Subject to the foregoing objections and without waiver of any objection, Pixar responds by incorporating its response to Interrogatory No. 15.

**INTERROGATORY NO. 17:**

*State all facts which support your contention that an Agreement between you and any other co-Conspirator facilitated collaborations between you and that co-Conspirator, and describe the specific mechanism by which the Agreement facilitated such collaboration.*

Response:  In addition to the foregoing General Objections, Pixar objects to this request on the grounds that it is vague, ambiguous, overly broad and unduly burdensome.  Pixar further objects to this request on the grounds that it is duplicative of Interrogatory No. 15.

Pixar further objects to this request to the extent it calls for Pixar to "state all facts," which is not possible at this stage of the case and before discovery has closed.

Subject to the foregoing objections and without waiver of any objection, Pixar responds by incorporating its response to Interrogatory No. 15.

**INTERROGATORY NO. 18:**

*Identify and describe any and all steps you took to prevent hiring, poaching, raiding, or soliciting of your employees by competitor companies pursuant to any Agreement(s) or to enforce any Agreement(s) between you and any co-Conspirator or you and anyone else.*

<u>Response:</u>  In addition to the foregoing General Objections, Pixar objects to the use of the phrase "any and all" as overbroad and unduly burdensome.  Pixar further objects to the use of the terms "competitor companies" and "anyone else" as vague and ambiguous, in particular because Agreement is defined to incorporate the term "Co-Conspirator."  Pixar further objects on the grounds that this interrogatory's request for information regarding steps taken to "prevent hiring, poaching, raiding or soliciting of your employees by competitor companies pursuant to any Agreement(s)" and steps taken "to enforce any Agreement(s) between you and any co-conspirator or you and anyone else" poses a compound question. Pixar further objects to this request to the extent it calls for Pixar to "describe any and all steps," which is not possible at this stage of the case and before discovery has closed.

Subject to the foregoing objections and without waiver of any objection, Pixar responds that its recruiting personnel were aware of Pixar's Agreement with Lucasfilm.  Pixar produced documents on November 30, 2011, that reflect knowledge of the Agreement and communications regarding the Agreement.  In addition, Pixar's Vice-President of Human Resources, Lori McAdams, was aware of Pixar's relationships with Lucasfilm and Apple described above and communicated with personnel at those companies regarding those relationships.

**INTERROGATORY NO. 19:**

*Identify your executives, employees, or agents who have substantial knowledge regarding the effect(s) of any Agreement between you and a co-Conspirator on your alleged ability to engage in procompetitive collaborations or increase output or production.*

<u>Response:</u>  In addition to the foregoing General Objections, Pixar objects to this request on the grounds that it is vague and ambiguous in its reference to "any Agreement . . . on your

alleged ability to engage in procompetitive collaborations or increase output or production." Pixar further objects to the use of the terms "effect(s)," "output" and "production" as vague and ambiguous. Pixar further objects to this request on the grounds that it is argumentative and assumes as true a fact in dispute between the parties. Pixar further objects to this interrogatory as premature to the extent it requests that Pixar identify personnel to provide information regarding topics that are properly the subject of expert testimony.

Subject to the foregoing objections, and without waiver of any objection, Pixar responds that the following employees are knowledgeable about the relationships between Pixar and Lucasfilm, Pixar and Apple, and/or Pixar and Intel:

| Name | Job Title, 2003-present (or last known) | Relationship(s) | State of Primary Residence |
|---|---|---|---|
| Edwin Catmull | President, Pixar, 2003-present | Lucasfilm, Apple | California |
| James Morris | General Manager, Pixar, 2008-present<br><br>Vice President of Production, Pixar, 2006-2008<br><br>Producer, Pixar, 2005-2006 | Lucasfilm | California |
| Greg Brandeau | Former Senior Vice-President, Technology, Pixar, 2004-2009 | Intel | California |
| Dana Batali | Vice-President RenderMan Products, Pixar, 2002-present | Intel, Apple | Washington |
| John Kirkman | Vice-President, Systems, Pixar, 2009-present<br><br>Director, Systems Infrastructure, Pixar, 2004- 2009 | Intel, Apple | California |

DEFENDANT PIXAR'S SUPPLEMENTAL OBJECTIONS AND RESPONSES TO PLAINTIFFS' SECOND SET OF INTERROGATORIES
Master Docket No. 11-CV-2509-LHK

12

**CONFIDENTIAL -- ATTORNEYS' EYES ONLY**

**INTERROGATORY NO. 20:**

*List and identify each and every employee, contractor, agent or agency who were terminated or disciplined for violation of an Agreement. For each employee, contractor, agent or agency you identified in response to this interrogatory, identify and describe (a) the Agreement at issue, including its terms and counterparties, (b) the nature of the violation, and (c) the disciplinary or termination action taken.*

Response:  In addition to the foregoing General Objections, Pixar objects to this request on the grounds that it overly broad and unduly burdensome, and to the extent the term "counterparties" includes companies other than Defendants.  Pixar further objects to this request on the grounds that it is compound because each subpart seeks a different category of information.

Subject to the foregoing objections, and without waiver of any objection, Pixar responds that it has taken not terminated or disciplined any employee, contractor, agent or agency on such a basis.

**INTERROGATORY NO. 21:**

*Identify each and every area (broken down by (a) job title, (b) class or category of job, and (c) corporate division) in which Lucasfilm and Pixar compete or have competed in the same labor market or compete or have competed over the same employee category or group of employees with the same skill set.*

Response:  In addition to the foregoing General Objections, Pixar objects to this interrogatory as overly broad and unduly burdensome.  Pixar further objects to this request to the extent it calls for Pixar to provide information that it does not maintain in the ordinary course of business.  Pixar further objects to this interrogatory on the grounds that it purports to require Pixar to obtain information regarding Lucasfilm personnel policies and practices that are unavailable to it.  Pixar further objects to this interrogatory as premature to the extent it is properly the subject of expert reports and testimony.

Pixar responds that it has produced documents that show job titles available at Pixar. Although Pixar does not have at this time sufficient information to determine areas "in which Lucasfilm and Pixar compete or have competed in the same labor market or compete or have competed over the same employee category or group of employees with the same skill set," it expects that this topic will be the subject of expert reports and testimony.

DATED: March 18 , 2013

COVINGTON & BURLING

By _____

Emily Johnson Henn

ATTORNEYS FOR DEFENDANT PIXAR

DEFENDANT PIXAR'S SUPPLEMENTAL OBJECTIONS AND RESPONSES TO PLAINTIFFS' SECOND SET OF INTERROGATORIES
Master Docket No. 11-CV-2509-LHK

14

CONFIDENTIAL -- ATTORNEYS' EYES ONLY

# CERTIFICATE OF SERVICE

I hereby certify that on March 18, 2013, I served the forgoing document by email and by first-class mail on the following counsel:

| | |
|---|---|
| Richard M. Heimann<br>Kelly M. Dermody<br>Eric B. Fastiff<br>Brendan Patrick Glackin<br>Dean Michael Harvey<br>Anne Brackett Shaver<br>Lieff, Cabraser, Heimann & Bernstein, LLP<br>275 Battery Street, 29th Floor<br>San Francisco, CA 94111-3339<br>Telephone: (415) 956-1000<br>Facsimile: (415) 956-1008<br>rheimann@lchb.com<br>kdermody@lchb.com<br>efastiff@lchb.com<br>bglackin@lchb.com<br>dharvey@lchb.com<br>ashaver@lchb.com<br><br>Attorneys for Plaintiffs | Joseph R. Saveri<br>Lisa J. Leebove<br>James G. Dallal<br>Joseph Saveri Law Firm<br>255 California, Suite 450<br>San Francisco, CA 94111<br>Telephone: (415) 500-6800<br>Facsimile: (415) 500-6803<br>jsaveri@saverilawfirm.com<br>lleebove@saverilawfirm.com<br>jdallal@saverilawfirm.com<br><br>Attorneys for Plaintiffs |
| Donn P. Pickett<br>Frank M. Hinman<br>Sujal J. Shah<br>Frank Busch<br>Three Embarcadero Center<br>Bingham McCutchen<br>San Francisco, CA 94111<br>Telephone: (415) 393-2000<br>Facsimile: (415) 383-2286<br>donn.pickett@bingham.com<br>frank.hinman@bingham.com<br>sujal.shah@bingham.com<br>frank.busch@bingham.com<br><br>Attorneys for Defendant INTEL | Robert A. Mittelstaedt<br>Craig Stewart<br>Catherine Zeng<br>JONES DAY<br>555 California Street, 26th Floor<br>San Francisco, CA 94104<br>Telephone: (415) 626-3939<br>Facsimile: (415) 875-5700<br>ramittelstaedt@jonesday.com<br>cestewart@jonesday.com<br>czeng@jonesday.com<br><br>Attorneys for Defendant INTUIT INC. |
| George Riley<br>Michael F. Tubach<br>Christina J. Brown<br>O'Melveny & Meyers LLP<br>Two Embarcadero Center, 28th Floor<br>San Francisco, CA 94111<br>Telephone: (415) 984-8700 | Donald M. Falk<br>Lee H. Rubin<br>Edward D. Johnson<br>Eric B. Evans<br>Mayer Brown LLP<br>Two Palo Alto Square, Suite 300<br>3000 El Camino Real |

| | |
|---|---|
| Facsimile: (415) 984-8701<br>griley@omm.com<br>mtubach@omm.com<br>cjbrown@omm.com<br><br>Attorneys for Defendant APPLE INC. | Palo Alto, CA 94306-2112<br>Telephone: (650) 331-2000<br>Facsimile: (650) 331-2061<br>dfalk@mayerbrown.com<br>lrubin@mayerbrown.com<br>wjohnson@mayerbrown.com<br>eevans@mayerbrown.com<br><br>Attorneys for Defendant GOOGLE INC. |
| Robert A. Mittelstaedt<br>Craig A. Waldman<br>David C. Kiernan<br>JONES DAY<br>555 California Street, 26th Floor<br>San Francisco, CA 94104<br>Telephone: (415) 626-3939<br>Facsimile: (415) 875-5700<br>ramittelstaedt@jonesday.com<br>cwaldman@jonesday.com<br>dkiernan@jonesday.com<br><br>Attorneys for Defendant ADOBE SYSTEMS, INC. | John W. Keker<br>Daniel Purcell<br>Eugene M. Paige<br>Paula L. Blizzard<br>Keker & Van Nest LLP<br>633 Battery Street<br>San Francisco, CA 94111<br>Telephone: (415) 391-5400<br>jkeker@kvn.com<br>dpurcell@kvn.com<br>epaige@kvn.com<br>pblizzard@kvn.com<br><br>Attorneys for Defendant LUCASFILM LTD. |

DATE: March 18, 2013

COVINGTON & BURLING LLP

By  /s/ Chinue Turner Richardson
Chinue Turner Richardson (*pro hac vice*)

ATTORNEYS FOR DEFENDANT PIXAR

---

DEFENDANT PIXAR'S SUPPLEMENTAL OBJECTIONS AND RESPONSES TO PLAINTIFFS' SECOND SET OF INTERROGATORIES
Master Docket No. 11-CV-2509-LHK

16

CONFIDENTIAL -- ATTORNEYS' EYES ONLY

## VERIFICATION

I, James M. Kennedy, declare that I am the Senior Vice President, Business Strategy and Chief Legal Counsel, for Pixar and I am authorized to execute this verification on behalf of Pixar. I have reviewed the discovery document captioned:

**DEFENDANT PIXAR'S SUPPLEMENTAL OBJECTIONS AND RESPONSES TO PLAINTIFFS' SECOND SET OF INTERROGATORIES**

I affirm that I have personal knowledge that the facts contained therein are true and correct or, as to matters that are not within my personal knowledge, that I have made a reasonable inquiry and I am informed and believe that those facts are true and correct.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct. Executed in Seattle, Washington, on March 18, 2013.

_____
JAMES M. KENNEDY