# EXHIBIT 16

# WEATHERFORD DECLARATION IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

PORTIONS OF THIS DOCUMENT ARE MARKED CONFIDENTIAL – ATTORNEYS'
EYES ONLY PURSUANT TO PROTECTIVE ORDER

MAYER BROWN LLP
Lee H. Rubin (SBN 141331)
  lrubin@mayerbrown.com
Edward D. Johnson (SBN 189475)
  wjohnson@mayerbrown.com
Donald M. Falk (SBN 150256)
  dfalk@mayerbrown.com
Two Palo Alto Square, Suite 300
3000 El Camino Real
Palo Alto, CA  94306-2112
Telephone:   (650) 331-2000
Facsimile:   (650) 331-2060
*Attorneys for Defendant Google Inc.*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN JOSE DIVISION

| | |
|---|---|
| IN RE HIGH-TECH EMPLOYEE ANTITRUST LITIGATION | Master Docket No. 11-CV-2509-LHK |
| THIS DOCUMENT RELATES TO: ALL ACTIONS | **GOOGLE INC.'S RESPONSES TO PLAINTIFFS' SECOND SET OF INTERROGATORIES** |

Pursuant to Federal Rules of Civil Procedure 26 and 33, Defendant Google Inc.

("Google"), by and through its counsel of record, hereby objects and responds to Plaintiffs'

Second Set of Interrogatories ("Interrogatories") as follows.

## GENERAL OBJECTIONS

1.      Google objects to the Instructions, Definitions, and Interrogatories to the extent

that they seek to impose on Google any obligations exceeding or differing from the requirements

of the Federal Rules of Civil Procedure, the Local Rules and any orders of the presiding Court,

or other applicable law.  Google will comply with its obligations under the Rules and the law,

which Plaintiffs have no authority to increase or alter.

2.      Google objects to the Instructions, Definitions, and Interrogatories to the extent

that they seek information that was prepared in anticipation of litigation, constitute attorney work

product, disclose mental impressions, conclusions, opinions or legal theories of any attorney for, or other representative of, Google, contain privileged attorney-client communications, or are otherwise protected from disclosure by any other privileges, laws, or rules.  Google shall not produce such material in response to Plaintiffs' Interrogatories.  Any disclosure of such protected or privileged information is inadvertent and shall not be construed as a waiver of any applicable privileges or protections.  Google reserves the right to correct the record with regard to any such inadvertent disclosure.  Communications between and among Google's in-house counsel and outside attorneys, and between Google and its counsel, related to the instant litigation or any government investigation, are clearly subject to attorney-client privilege and not responsive to discovery regarding the claims at issue, and therefore will not be disclosed on any privilege log.

3.      Google objects to the Instructions, Definitions, and Interrogatories to the extent that they seek information protected from discovery by any right to privacy or any other applicable privilege, including the right to privacy of third parties, or by Google's obligations under applicable law or any agreement to protect such confidential information.

4.      Google objects to the Instructions, Definitions, and Interrogatories to the extent they seek information protected from disclosure by any statute, rule, or regulation.  Google will provide such material in response only to the extent it can do so consistent with its legal obligations.

5.      Google objects to the Instructions, Definitions, and Interrogatories to the extent that they seek information (1) not currently in Google's possession, custody, or control, or (2) that Google cannot locate after a reasonably diligent search.  Google also objects to the Instructions, Definitions, and Interrogatories to the extent they seek in any other way to subject Google to unreasonable and undue annoyance, oppression, burden, and expense; and/or seek to impose upon Google an obligation to investigate or discover information or materials from sources equally accessible to Plaintiffs.

6.      Google objects to the Instructions, Definitions, and Interrogatories as overbroad, unduly burdensome, cumulative, duplicative, vague and ambiguous, and not reasonably

calculated to lead to the discovery of admissible evidence to the extent that they seek the identification of "all" and "any" persons.

7.      Google objects to the Instructions, Definitions, and Interrogatories to the extent that they seek to restrict the facts, witnesses, and evidence on which Google may rely on at trial. By responding and objecting to these Interrogatories, Google does not intend to, and does not, limit the evidence on which it may rely to support its contentions and defenses at trial, or to rebut or impeach contentions, assertions, and evidence presented by Plaintiffs.  Furthermore, Google reserves the right to supplement or amend its responses and objections.

8.      Google objects to each Interrogatory to the extent it calls for a legal conclusion.

9.      Google objects to the Definitions and Instructions to the extent they purport to enlarge, expand, or alter in any way the plain meaning and scope of any specific term or specific Interrogatory on the ground that such enlargement, expansion, or alteration renders the term or Interrogatory vague, ambiguous, unintelligible, overbroad, unduly burdensome, and/or uncertain.

10.     Google objects to Definition #2 and to the terms "agreement," "contract," "arrangement" and "understanding" on the grounds that the definition is overbroad, vague and ambiguous, assumes facts not in evidence, and calls for a legal conclusion.  For purposes of its responses only, Google will interpret that definition to mean Google's "Do Not Cold Call List," as discussed in Google's white paper submitted to the U.S. Department of Justice, with respect to Co-Defendants.

11.     Google objects to Definition #4, and to the terms "cold-calling," "cold-call," and "communicating," on the grounds that the definition is overbroad, vague and ambiguous.  For purposes of its responses, Google will interpret a "cold-call" to mean an unsolicited call regarding employment at Google, made on behalf of Google to an individual who has not expressed any interest in employment at Google or in new employment generally, or any unhappiness with his or her current position, or who does not otherwise appear likely to be interested in new employment.

12.     Google objects to Definition #5, and to the term "Co-Conspirators," on the

grounds that the definition is overbroad, vague, ambiguous, assumes facts not in evidence, and calls for a legal conclusion.  For purposes of its responses, Google interprets that term as limited to Co-Defendants.

13.     Google objects to Definition #6, and to the term "communication," on the grounds that the definition is overbroad, vague and ambiguous.

14.     Google objects to Definition #8, and to the term "employee" on the grounds that the definition is overbroad, vague and ambiguous.  Google also objects to this definition to the extent the definition purports to include "messengers," "agents" or any "other person who is or was employed by a Defendant or Co-Conspirator" because those phrases are vague and overbroad and seek information that is not currently in the possession, custody, or control of Google.  Google's responses are limited to current and former employees of Google, Inc.

15.     Google objects to Definition # 10, including the request for the "person's job title(s) or job descriptions from January 1, 2003 to the present" as vague, overbroad and unduly burdensome, as not reasonably calculated to lead to the discovery of admissible evidence, and as seeking to impose obligations beyond those established by the Federal Rules of Civil Procedure.  Google further objects to this Definition to the extent it expands the scope of discovery by seeking information that is not currently in the possession, custody, or control of Google.  Google further objects to this Definition, including the request for the residence information of former employees, to the extent it seeks information protected from discovery by any right to privacy or any other applicable privilege, including the right to privacy of third parties, or by Google's obligations under applicable law to protect such confidential information.  Google further objects to the request for the "last known place of employment" of former employees, as overbroad and unduly burdensome, to the extent it seeks to impose obligations beyond those established by the Federal Rules of Civil Procedure and/or seeks information that is not currently in the possession, custody, or control of Google.  Google has provided the last job title held at Google for former employees.  Google further objects to the phrase "state its general character" and the term "collaboration" as vague and ambiguous, and to the extent this Definition seeks to

4

impose obligations beyond those established by the Federal Rules of Civil Procedure and/or

seeks information that is not currently in the possession, custody, or control of Google.

16.     Google objects to Definition #11, and to the term "meeting," on the grounds that

the definition is overbroad, vague and ambiguous.

17.     Google objects to Definition # 16 and to the terms "subsidiary," "affiliate," and

"joint venture" on the ground that the definition is overbroad, vague and ambiguous and to the

extent it seeks information that is not currently in the possession, custody, or control of Google

and/or not reasonably calculated to lead to the discovery of admissible evidence.

18.     Google objects to Definition # 17 and to the terms "you," "your," and "your

company" to the extent the definition improperly expands the scope of discovery by seeking

information that is not currently in the possession, custody, or control of Google.  Google

interprets "your company" to mean Google Inc., and responds on behalf of itself and no other

person or entity.  Google also objects to this definition to the extent it purports to include

Google's outside counsel or any third parties, and to the extent the definition purports to include

"agents," "any third party recruiting, hiring or headhunting firm," "representatives," or "any

persons acting or purporting to act," because those terms are vague, ambiguous and overbroad.

Google's responses are limited to current and former employees of Google Inc.

19.     Google objects to Instruction #3 on the grounds that it is unduly burdensome to

the extent it exceeds the scope of the requirements set forth in Rule 26 of the Federal Rules of

Civil Procedure and/or any stipulation negotiated between the parties, to the extent it requests the

provision of information beyond that necessary to establish Google's claim of privilege, and to

the extent it requests the provision of information that is protected by the attorney-client

privilege, the work product doctrine, or any other applicable privilege or doctrine.

20.     Google objects to Instruction #4 and to these Interrogatories to the extent that they

seek information for the "time period" of January 1, 2003 through the present as overbroad as to

time, unduly burdensome and not reasonably calculated to lead to the discovery of admissible

evidence.  Google will limit its responses to the time period of January 1, 2004 to September 30,

5

2010.

21.    Google further objects to these Interrogatories on the grounds that they are overbroad, and seek information that is neither relevant to any party's claim or defense in this litigation, nor reasonably calculated to lead to the discovery of admissible evidence.  To be discoverable, information must be "relevant to any party's claim or defense" and at least "reasonably calculated to lead to the discovery of admissible evidence."  Fed. R. Civ. P. 26(b)(1).

22.    Google further objects to these Interrogatories to the extent they seek information regarding Google's employees, applicants for Google positions, and/or collaborations located outside of the United States as overbroad, unduly burdensome and outside the scope of information reasonably calculated to lead to the discovery of admissible evidence.

23.    Google further objects to the extent the Interrogatories seek a complete and exhaustive response or explanation regarding any issue in this litigation, before discovery has been completed.  Any responses Google makes to any proper discovery requests by Plaintiffs will remain at all times subject to additional or different information that discovery or further investigation, analysis, or recollection may disclose.  Accordingly, Google will at all times reserve the right to amend or supplement its objections and responses.

24.    Google reserves the right to make any use of, or to introduce at any hearing or trial, information that is responsive to these Interrogatories, but reviewed, discovered, or discovered to be relevant subsequent to Google's responses herein.

25.    Google reserves the right to object on any ground at any time to such other or supplemental discovery requests as Plaintiffs may propound involving or relating to the same subject matter of these Interrogatories.

26.    The responses below shall not be construed as an admission as to the relevance or admissibility of any statement or characterization contained in any request.  Google reserves all objections, including without limitation objections as to competency, relevance, materiality, privilege, authenticity, or admissibility.

27.     The responses below shall not be construed as an admission of or agreement with any implication, statement, characterization or conclusions implied or stated in any instruction, definition, or request.

28.     Google reserves all of its rights under the Federal Rules of Civil Procedure, and any other applicable law or court rule.  Google further reserves the right to make future motions and objections relating to the Interrogatories at any subsequent stage of this action, including, but not limited to, the right to object to the use of any responses, or the subject matter thereof, on any ground (including materiality and relevance) in any proceeding in any action.  Google's responses are made based on its understanding and interpretation of each request.  Google reserves the right to supplement or amend its objections and responses should Plaintiffs subsequently put forth an interpretation of any request that differs from that being used by Google for these responses.

29.     Google's written responses are made pursuant to the terms of the Protective Order that has been entered in this matter.  Google's decision, now or in the future, to provide materials in response to the Interrogatories is not and should not be construed as (a) a waiver of Google's general objections or the objections asserted in response to specific Interrogatories, (b) a stipulation that the material is relevant, properly requested, admissible at trial, or that responsive documents exist, or (c) an agreement that requests for similar information will be treated in a similar manner.

30.     Google has not completed (a) its investigation of the facts relating to this case, (b) its discovery in this action, or (c) its preparation for trial.  Thus, the following responses are based upon the information known at this time and are given without prejudice to Google's right to supplement its responses with any subsequently discovered or inadvertently omitted information.  These responses do not preclude Google from later relying on facts or documents discovered or generated pursuant to further investigation or discovery which may be conducted after the date of these responses.

The objections above are incorporated by reference as though fully set forth in each

response below.  Without waiving any of the foregoing objections, Google responds as follows:

**SPECIFIC OBJECTIONS AND RESPONSES TO INTERROGATORIES**

**INTERROGATORY NO. 15:**

Identify each and every allegedly procompetitive collaboration between you and another company that would not have taken place absent an Agreement between you and any other Co-Conspirator.  For each collaboration identified, state all facts which support your contention that the collaboration would not have taken place absent an Agreement.

**RESPONSE TO INTERROGATORY NO. 15:**

**CONFIDENTIAL – ATTORNEYS' EYES ONLY**

Google incorporates by reference its general objections stated above.   Google further objects to the phrase "procompetitive collaboration" and "would not have taken place absent an agreement" as overbroad, vague and ambiguous, and to the extent it seeks information not reasonably calculated to lead to the discovery of admissible evidence.  Google further objects to this Interrogatory to the extent it seeks information protected by the attorney-client privilege and/or work product doctrine, protected as confidential settlement communications, or otherwise protected from disclosure by any other privileges, laws, or rules.  Google further objects to this Interrogatory to the extent it seeks information regarding Google's employees, applicants for Google positions, and or collaborations located outside of the United States as overbroad, unduly burdensome and outside the scope of information reasonably calculated to lead to the discovery of admissible evidence.  Google further objects to this Interrogatory to the extent it assumes the existence of "agreements" between Google and any other defendant [or person] or concludes that any set of factual circumstances is an "agreement" within the meaning of Section 1 of the Sherman Act.  Google further objects to the term "Agreement" as unduly burdensome, overbroad, vague and ambiguous.  Google further objects to the terms "another company" and "Co-Conspirators," on the grounds that the definition is overbroad, vague, ambiguous, assumes facts not in evidence, and calls for a legal conclusion.  For purposes of its responses, Google interprets these terms as limited to Co-Defendants.

**CONFIDENTIAL – ATTORNEYS' EYES ONLY**

Subject to the foregoing objections, and without waiving them, and responding as to collaborations between Google and a Co-Defendant that were facilitated by Google's Do Not Cold Call policy, Google responds as follows:  During the relevant time period, Google had ongoing collaborations and supplier-customer relationships with Apple, Intel, and Intuit.  Google perceived that engaging in cold-calling of these companies' employees could jeopardize the important collaborative and business relationships between Google and those companies. Google also believed that refraining from cold-calling employees of these Co-Defendants would not negatively impact Google's recruiting and hiring activities.

Discovery is ongoing into the full extent of these collaborations, but the collaborations and business relationships include the following:

A. <u>Apple</u>

Google began working with Apple on an iTunes collaboration in 2005.  Google and Apple continued to work together cooperatively on a number of projects, including on a project involving the use of Google as the default search engine on the Safari browser.  The Google and Apple teams communicated regularly about bugs and proposed modifications.  This collaboration extended through the introduction by Apple of the iPhone and then the iPad.  The companies also collaborated on the open-source WebKit project, which develops the rendering engine for the Safari and Chrome browsers, among others.  This project has substantially advanced web standards and allows web applications to become increasingly sophisticated substitutes for traditional desktop applications.

Google and Apple have also collaborated closely on the placement of Google maps and YouTube on Apple products, such as the iPhone.  As a result, Google maps and YouTube are pre-installed mobile apps on iPhones.  They also worked to place Gmail as the default mail application on the iPhone.  Google also collaborated with Apple to incorporate advertising capabilities into Apple's blogging software in the iLife package.

Google and Apple have also worked on a variety of projects to facilitate interconnection

GOOGLE'S RESPONSES TO SECOND SET OF INTERROGATORIES
MASTER DOCKET NO. 11-CV-2509-LHK

**CONFIDENTIAL – ATTORNEYS' EYES ONLY**

between their consumer services on a continuing basis.  In 2007 the companies announced a collaboration to allow YouTube videos to play on AppleTV devices.  The companies have collaborated on an interface for creators of copyrighted content, which has been helpful not only to copyright holders but also to advertisers and consumers who use YouTube and iTunes.

The companies also have an ongoing relationship as users of each others' products, including Google's purchase of Apple computers and products for its workforce and Apple's corporate use of Google software.

In addition to these specific collaborations, Eric Schmidt's service on Apple's Board of Directors (2006 to 2009) allowed Google to identify potential areas for joint collaboration between the companies, such as the collaborations discussed above.

B. <u>Intel</u>

Intel and Google have collaborated in a number of areas such as testing and product development, R&D efforts, and new business and market development.

For example, in 2007, Intel and Google engaged in a joint dedication to energy efficiency, resulting in the Climate Savers Computing Initiative.  This project focused on creating energy-efficient computers and components.  Google and Intel worked closely on this initiative to develop energy-efficient specifications and technology for high-volume server systems, as well as specifications and marketing initiatives for power saving in desktop computers.  The Climate Savers Computing Initiative drew praise for its commitment to dramatically cut greenhouse gas emissions in the technology sector.  Teams of employees from Google and Intel worked on this initiative and met monthly – and sometimes even more frequently – for many years.

Google and Intel also worked together on a wireless network initiative. Through Clearwire, a wireless communications company in which Google, Intel, and other companies invested, the companies worked to develop the first nationwide WiMAX mobile broadband network.  As part of that collaboration, Intel launched a new effort to embed WiMAX-enabled

10

**CONFIDENTIAL – ATTORNEYS' EYES ONLY**

hardware in its laptops and other Intel-based mobile Internet devices.  Google assisted in developing an open mobile Internet business protocol for the network, in providing application services, and in deploying its Android operating system for the company's retail devices. Analysts praised this collaborative effort between Google and Intel for helping roll out 4G wireless technology.  Engineers from the two companies worked closely together on this initiative.

The two companies also worked together on numerous joint projects to integrate software and services.  By way of example, Intel and Google combined forces in 2006 in the video search area, by incorporating Google Video into Intel's Viiv digital media platform, a platform "designed to enhance and manage digital entertainment in the home."  Google and Intel also worked together to create a program that allowed Intel to offer software support for smaller OEMs that distributed Google Toolbar.  Through yet another joint project, Intel provided software and hardware support for Google's Chrome OS, a new browser-centric desktop operating system.

Throughout this time, Google and Intel regularly worked together on chipsets and other hardware that Intel designed and produced for before-market testing and use in Google's data centers.  The companies have also engaged in research and development collaborations for new products and ideas.

Indeed, Intel worked on so many collaborative projects with Google that Google understands Intel created a "Google Program Office" to manage its wide range of collaborative activities with Google.

In addition, Intel is a significant supplier to Google of advanced processing chips.  This supplier-customer relationship, which has been in existence for many years, is extremely valuable and important to both companies.

Finally, the relationship between Intel and Google has been strengthened by Intel's CEO, Paul Otellini's membership on Google's board of directors.  Mr. Otellini's relationship with

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**CONFIDENTIAL – ATTORNEYS' EYES ONLY**

Google has allowed the companies to identify many areas for collaboration, including many of the projects discussed above.

C. Intuit

Google's collaboration with Intuit began in 2005, in connection with Intuit's QuickBooks accounting software program. Google's QuickBooks collaboration with Intuit expanded over time. This collaboration included the integration of Google Desktop Search as well as Google Maps, Google AdWords, and Google Base into the 2007 edition of Intuit's QuickBooks product, requiring close collaboration between teams of employees. This project also involved joint discussions between Google and Intuit regarding marketing and promotion of the results of the collaboration, development of case studies, training of Intuit telesales staff and co-branded landing pages.

Google and Intuit's collaborations extended beyond these projects, as well, through efforts such as the development and hosting of webinars by Google tailored to the needs of Intuit's target customers.

Google and Intuit shared reporting obligations, business reviews, monthly dashboard meetings, and agreed to provide dedicated account managers to manage the collaboration. As a result, the QuickBooks interface now allows small businesses to add their listings to Google Maps or Google Base.

Google has continued to collaborate with Intuit over the years. For example, in 2009, Intuit was the first company to sign up for a new program in which a company's five most recent "tweets" are streamed across Google's AdSense network. Consumers who click on the tweet are redirected to Intuit's TurboTax Twitter feed.

Finally, Bill Campbell has served as an advisor to Google's senior executives on management issues. This is an important partnership that has produced tangible benefits by, among other things, contributing to improvements in Google's organizational structure and helping to structure the company's executive team and product management groups.

GOOGLE'S RESPONSES TO SECOND SET OF INTERROGATORIES
MASTER DOCKET NO. 11-CV-2509-LHK

**INTERROGATORY NO. 16:**

If the Agreement between you and any other Co-Conspirator permitted you to participate in each and every specific collaborative joint venture project with another co-Conspirator "freely," and eliminated "fear that the other company [would] hire away [your] employees," as you alleged in your Reply Brief, did these collaborative joint ventures occur because the Agreement prevented, hindered, or limited the hiring of one company's employees by the other? If the answer to this question is "yes," please state all facts which support your contention. If the answer to this question is "no," please identify the mechanism or means by which the Agreement allegedly successfully permitted you to participate in each and every specific collaborative joint venture project you allege occurred only because of the Agreement.

**RESPONSE TO INTERROGATORY NO. 16:**

Google incorporates by reference its general objections stated above. Google further objects to the phrases "each and every specific collaborative joint venture project," "collaborative joint ventures," and "prevented, hindered, or limited the hiring of one company's employees by the other" as overbroad, vague and ambiguous, compound, and to the extent it seeks information not reasonably calculated to lead to the discovery of admissible evidence. Google further objects to this Interrogatory to the extent it seeks information protected by the attorney-client privilege and/or work product doctrine, protected as confidential settlement communications, or otherwise protected from disclosure by any other privileges, laws, or rules. Google further objects to this Interrogatory to the extent it seeks information regarding Google's employees, applicants for Google positions, and or collaborations located outside of the United States as overbroad, unduly burdensome and outside the scope of information reasonably calculated to lead to the discovery of admissible evidence. Google further objects to this Interrogatory to the extent it assumes the existence of "agreements" between Google and any other defendant [or person] or concludes that any set of factual circumstances is an "agreement" within the meaning of Section 1 of the Sherman Act. Google further objects to the term "Agreement" as unduly burdensome, overbroad, vague and ambiguous. Google further objects

to the terms "one company" and "Co-Conspirators," on the grounds that the definition is overbroad, vague, ambiguous, assumes facts not in evidence, and calls for a legal conclusion. For purposes of its responses, Google interprets these terms as limited to Co-Defendants. Google further objects to the phrase "successfully permitted you to participate in each and every specific collaborative joint venture project you allege occurred only because of the Agreement" as overbroad, vague, ambiguous, and assumes facts not in evidence.

Subject to the foregoing objections, and without waiving them, Google responds as follows: No. See response to Interrogatory No. 15.

**INTERROGATORY NO. 17:**

State all facts which support your contention that an Agreement between you and any other Co-Conspirator facilitated collaborations between you and that Co-Conspirator, and describe the specific mechanism by which the Agreement facilitated such collaboration.

**RESPONSE TO INTERROGATORY NO. 17:**

Google incorporates by reference its general objections stated above. Google further objects to the terms "facilitated," "collaboration," and "mechanism" as overbroad, vague and ambiguous, compound, and to the extent it seeks information not reasonably calculated to lead to the discovery of admissible evidence. Google further objects to this Interrogatory to the extent it seeks information protected by the attorney-client privilege and/or work product doctrine, protected as confidential settlement communications, or otherwise protected from disclosure by any other privileges, laws, or rules. Google further objects to this Interrogatory to the extent it seeks information regarding Google's employees, applicants for Google positions, and or collaborations located outside of the United States as overbroad, unduly burdensome and outside the scope of information reasonably calculated to lead to the discovery of admissible evidence. Google further objects to this Interrogatory to the extent it assumes the existence of "agreements" between Google and any other defendant [or person] or concludes that any set of factual circumstances is an "agreement" within the meaning of Section 1 of the Sherman Act. Google further objects to the term "Agreement" as unduly burdensome, overbroad, vague and

ambiguous.  Google further objects to the term "Co-Conspirators," on the grounds that the definition is overbroad, vague, ambiguous, assumes facts not in evidence, and calls for a legal conclusion.  For purposes of its responses, Google interprets this term as limited to Co-Defendants.

Subject to the foregoing objections, and without waiving them, Google responds as follows:  See response to Interrogatory No. 15.

**INTERROGATORY NO. 18:**

Identify and describe any and all steps you took to prevent hiring, poaching, raiding, or soliciting of your employees by competitor companies pursuant to any Agreement(s) or to enforce any Agreement(s) between you and any Co-Conspirator or you and anyone else.

**RESPONSE TO INTERROGATORY NO. 18:**

Google incorporates by reference its general objections stated above.   In particular, Google objects to the phrases "steps you took to prevent hiring, poaching, raiding, or soliciting of your employees" and "you or anyone else" as overbroad, unduly burdensome, vague and ambiguous, and to the extent this Interrogatory seeks information not reasonably calculated to lead to the discovery of admissible evidence.  Google further objects to this Interrogatory to the extent it seeks information protected by the attorney-client privilege and/or work product doctrine, protected as confidential settlement communications, or otherwise protected from disclosure by any other privileges, laws, or rules.  Google further objects to this Interrogatory as impermissibly compound and relating to multiple subjects, in violation of FRCP 33(a)(1).  Google further objects to this Interrogatory to the extent it seeks information regarding Google's employees and/or applicants for Google positions located outside of the United States as overbroad, unduly burdensome and outside the scope of information reasonably calculated to lead to the discovery of admissible evidence.  Google further objects to this Interrogatory to the extent it assumes the existence of "agreements" between Google and any other defendant or concludes that any set of factual circumstances is an "agreement" within the meaning of Section 1 of the Sherman Act.  Google further objects to the terms "competitor companies," "Co-

Conspirator," and "anyone else" on the grounds that the definition is overbroad, vague, ambiguous, assumes facts not in evidence, and calls for a legal conclusion.  For purposes of its responses, Google interprets these terms as limited to Co-Defendants.

Subject to the foregoing objections, and without waiving them, Google responds as follows: Google identified some Co-Defendants (among a short list) as companies to which Google's recruiters would not make cold calls (as qualified by the circumstances described in paragraph 11).  Google's Do Not Cold Call list appeared in the "Legal Compliance" section of Google's hiring manual, which was broadly disseminated within Google's recruiting organization, including to hundreds of temporary workers and to recruiters.  On occasion, if Google received information about a potential violation, Google inquired whether any of its recruiters had acted contrary to Google's policy.  These inquiries usually resulted in a determination that the applicants at issue had not been cold called, but rather had approached Google, had expressed interest to a employee who then referred them, or had otherwise indicated interest in new employment.  If, on occasion, Google determined that a recruiter had acted contrary to policy, Google would consider whether adverse action, including termination of its relationship with that recruiter, was warranted.  On at least one occasion (see Response to Interrogatory No. 20 below), Google did terminate its relationship with the recruiter.

**INTERROGATORY NO. 19:**

Identify your executives, employees, or agents who have substantial knowledge regarding the effect(s) of any Agreement between you and a Co-Conspirator on your alleged ability to engage in procompetitive collaborations or increase output or production.

**RESPONSE TO INTERROGATORY NO. 19:**

Google incorporates by reference its general objections stated above.   Google further objects to the term "substantial knowledge" as overbroad, unduly burdensome, vague and ambiguous.  Google further objects to the phrases "effect(s) of any Agreement," "ability to engage in procompetitive collaborations" and "increase output or production" as overbroad, vague and ambiguous, and to the extent this Interrogatory seeks information not reasonably

calculated to lead to the discovery of admissible evidence.  Google further objects to this Interrogatory to the extent it seeks information protected by the attorney-client privilege and/or work product doctrine, protected as confidential settlement communications, or otherwise protected from disclosure by any other privileges, laws, or rules.  Google further objects to this Interrogatory as impermissibly compound and relating to multiple subjects, in violation of FRCP 33(a)(1).  Google further objects to this Interrogatory to the extent it assumes the existence of "agreements" between Google and any other defendant or concludes that any set of factual circumstances is an "agreement" within the meaning of Section 1 of the Sherman Act.  Google further objects to the term "agreements" as unduly burdensome, overbroad, vague and ambiguous.  Google further objects to the term "agents" as vague and overbroad and to the extent it seeks information that is not currently in the possession, custody, or control of Google. Google further objects to the term "Co-Conspirator" as overbroad, vague, ambiguous, assumes facts not in evidence, and calls for a legal conclusion.  Google interprets that term to mean Co-Defendants.  Google further objects to this Interrogatory to the extent it seeks information regarding Google's employees located outside of the United States as overbroad, unduly burdensome and outside the scope of information reasonably calculated to lead to the discovery of admissible evidence.

Subject to the foregoing objections, and without waiving them, Google responds as follows:  Alan Eustace, Shona Brown.

**INTERROGATORY NO. 20:**

List and identify each and every employee, contractor, agent or agency who were terminated or disciplined for violation of an Agreement.  For each employee, contractor, agent or agency you identified in response to this interrogatory, identify and describe (a) the Agreement at issue, including its terms and counterparties, (b) the nature of the violation, and (c) the disciplinary or termination action taken.

/ / /

/ / /

**RESPONSE TO INTERROGATORY NO. 20:**

Google incorporates by reference its general objections stated above. Google further objects to this Interrogatory to the extent it seeks information protected by the attorney-client privilege and/or work product doctrine, protected as confidential settlement communications, or otherwise protected from disclosure by any other privileges, laws, or rules. Google further objects to this Interrogatory as impermissibly compound and relating to multiple subjects, in violation of FRCP 33(a)(1). Google further objects to this Interrogatory to the extent it assumes the existence of "agreements" between Google and any other defendant or concludes that any set of factual circumstances is an "agreement" within the meaning of Section 1 of the Sherman Act. Google further objects to the term "Agreements" and the phrase "violation of an Agreement" as unduly burdensome, overbroad, vague, ambiguous, and assumes facts not in evidence. For the purpose of this response, Google interprets the Request to seek information regarding violation of Google's Do Not Cold Call Policy. Google further objects to the terms "contractor," "agent," and "agency" as vague and overbroad and to the extent it seeks information that is not currently in the possession, custody, or control of Google. Google further objects to this Interrogatory to the extent it seeks information regarding Google's employees, agents, contractors, and/or applicants for Google positions located outside of the United States as overbroad, unduly burdensome and outside the scope of information reasonably calculated to lead to the discovery of admissible evidence.

Subject to the foregoing objections, and without waiving them, and construing the Interrogatory (consistent with paragraph 10 above) as seeking information related to Google's Do Not Cold Call List regarding any Co-Defendant, Google responds as follows: In March 2007, Google determined that a sourcer (identified in Google's document production at GOOG00008476) had emailed an Apple employee in violation of Google's Do Not Cold Call List. After investigating the incident and confirming that the sourcer had violated Google's policy, Google terminated that sourcer, who was a temporary contractor.

GOOGLE'S RESPONSES TO SECOND SET OF INTERROGATORIES
MASTER DOCKET NO. 11-CV-2509-LHK

**INTERROGATORY NO. 21:**

If the Agreement between you and any other Co-Conspirator successfully allowed you to "make both rapid growth and joint innovation possible," as alleged in your White Paper, did these allegedly procompetitive effects occur because the Agreement prevented, hindered, or limited the hiring of one company's employees by the other?  If the answer to this question is "yes," state all facts which support your contention.  If the answer to this question is "no," please identify the mechanism or means by which the Agreement allegedly successfully allowed you to "make both rapid growth and joint innovation possible."

**RESPONSE TO INTERROGATORY NO. 21:**

Google incorporates by reference its general objections stated above.  Google further objects to the phrases "procompetitive effects" and "prevented, hindered, or limited the hiring of one company's employees by the other" as overbroad, vague and ambiguous, compound, and to the extent it seeks information not reasonably calculated to lead to the discovery of admissible evidence.  Google further objects to this Interrogatory to the extent it seeks information protected by the attorney-client privilege and/or work product doctrine, protected as confidential settlement communications, or otherwise protected from disclosure by any other privileges, laws, or rules. Google further objects to this Interrogatory to the extent it seeks information regarding Google's employees, applicants for Google positions, and or collaborations located outside of the United States as overbroad, unduly burdensome and outside the scope of information reasonably calculated to lead to the discovery of admissible evidence.  Google further objects to this Interrogatory to the extent it assumes the existence of "agreements" between Google and any other defendant [or person] or concludes that any set of factual circumstances is an "agreement" within the meaning of Section 1 of the Sherman Act.  Google further objects to the term "Agreement" as unduly burdensome, overbroad, vague and ambiguous.  Google further objects to the terms "one company" and "Co-Conspirators," on the grounds that the definition is overbroad, vague, ambiguous, assumes facts not in evidence, and calls for a legal conclusion. For purposes of its responses, Google interprets these terms as limited to Co-Defendants.

1

2

3

   Subject to the foregoing objections, and without waiving them, Google responds as
follows:  No.  See response to Interrogatory No. 15.

4

5

Dated:  April 6, 2012

MAYER BROWN LLP

By: _Lee H. Rubin_ /kn

6

Lee H. Rubin
Attorneys for Defendant Google Inc.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**PROOF OF SERVICE**

I, John Akamine, declare:

I am employed in Los Angeles, California.  I am over the age of eighteen years and not a party to the within-entitled action.  My business address is Mayer Brown LLP, 350 S. Grand Avenue, Los Angeles, California 90071.

On April 6, 2012, I served a copy of the within document(s):

**GOOGLE INC.'S RESPONSES TO PLAINTIFFS' SECOND SET OF INTERROGATORIES**

Joseph R. Saveri
Dean M. Harvey
Lieff, Cabraser, Heimann & Bernstein LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339

[X]    by placing the document(s) listed above in a sealed UPS envelope and affixing a pre-paid air bill, and causing the envelope to be delivered to a UPS agent for delivery.

I am readily familiar with the firm's practice of collection and processing correspondence for mailing.  Under that practice it would be deposited with the UPS Postal Service on that same day with postage thereon fully prepaid in the ordinary course of business.  I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

I declare under penalty of perjury under the laws of the United States of America that the above is true and correct.

Executed on April 6, 2012, at Los Angeles, California.

_____
                        John Akamine

**VERIFICATION**

I, Shona Brown, am the Senior Vice President for Google.org and am authorized to make this Verification on behalf of Google Inc.  I have read GOOGLE INC.'s RESPONSES TO PLAINTIFFS' FIRST SET OF INTERROGATORIES RE: IDENTIFICATION OF WITNESSES.  I verify that the matters stated therein are true and correct based on my personal knowledge, or, as to matters that are not within my personal knowledge, that I have made a reasonable inquiry and am informed and believe that those matters are true and correct.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on March 30 , 2012, in ___Mountain View___, California.

By: _____

Shona Brown

701384488

VERIFICATION FOR GOOGLE'S RESPONSES TO FIRST SET OF INTERROGATORIES.