# EXHIBIT 17

# WEATHERFORD DECLARATION IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

```
                    UNITED STATES DISTRICT COURT

                   NORTHERN DISTRICT OF CALIFORNIA

                          SAN JOSE DIVISION




     IN RE:  HIGH-TECH EMPLOYEE     )

     ANTITRUST LITIGATION           )

                                    )   No. 11-CV-2509-LHK

     THIS DOCUMENT RELATES TO:      )

     ALL ACTIONS.                   )

     _____)




                   VIDEO DEPOSITION OF ALAN MANNING


                        NOVEMBER 14, 2013


         Reported by:  Rosalie A. Kramm, CSR No. 5469, CRR
```

```
11:24:38   1  the Department of Justice looked at very closely, and
11:24:42   2  they didn't -- they didn't really like what they saw,
11:24:46   3  even though there were attempts, I believe, in the case
11:24:48   4  before the Department of Justice to -- to justify that
11:24:52   5  these agreements were not based on suppressing
11:24:54   6  compensation.
11:24:55   7  BY MR. MITTELSTAEDT:
11:24:55   8       Q.   Move to strike all of that as irrelevant --
11:24:57   9  non-responsive.
11:24:59  10            Do you agree it can be in a company's self
11:25:02  11  interest to agree with one other company not to poach
11:25:06  12  each other's employees, regardless of what other
11:25:08  13  companies in the industry are doing?
11:25:11  14       A.   I mean it is --
11:25:12  15            MR. GLACKIN:  Object to form.
11:25:14  16            THE WITNESS:  I mean it is hypothetically
11:25:15  17  possible.  One would have to ask the question, you know,
11:25:17  18  why -- why are they doing it?  What is the source of the
11:25:19  19  gain?
11:25:20  20  BY MR. MITTELSTAEDT:
11:25:20  21       Q.   And what -- what would be plausible reasons why
11:25:24  22  it would be in a company's self-interest to agree with
11:25:27  23  one other company not to poach each other, regardless of
11:25:30  24  what any other company in the industry was doing?
11:25:35  25       A.   Because --
```

```
11:25:36   1          MR. GLACKIN:  Object to the form.
11:25:38   2          THE WITNESS:  I mean one possible reason,
11:25:40   3   another reason I think in this case, is because they
11:25:42   4   think that they are competitors in the labor market, and
11:25:46   5   in the absence of such agreement, that competition will
11:25:50   6   result in increased compensation.
11:25:53   7   BY MR. MITTELSTAEDT:
11:25:53   8       Q.   Any other plausible reason why two companies
11:25:56   9   would agree to a no-poach without regard to what other
11:26:00  10   companies in the industry were doing?
11:26:04  11          MR. GLACKIN:  Object to form.
11:26:05  12          THE WITNESS:  I mean we're talking sort of
11:26:06  13   hypothetically here, and of course -- and, so, I --
11:26:11  14   conceivable there are other possible explanations.  I
11:26:14  15   mean --
11:26:14  16   BY MR. MITTELSTAEDT:
11:26:15  17       Q.   Like what?
11:26:16  18       A.   I don't know.  I was concerned here with what
11:26:18  19   do I think the effect was of the agreements in this case,
11:26:22  20   not hypothetical other agreements.  No matter --
11:26:27  21       Q.   But if you learned that two companies agreed
11:26:32  22   not to poach each other, would you think that that only
11:26:36  23   makes sense for them if everybody else in the industry
11:26:38  24   also agreed not to poach from everybody else in the
11:26:41  25   industry?
```

```
11:26:42   1         MR. GLACKIN:  Object to the form.
11:26:43   2         THE WITNESS:  I am not sure I fully understand
11:26:45   3   it, but, no, no, of course there can be benefit from two
11:26:49   4   firms doing this, and that benefit might be a suppression
11:26:52   5   of compensation, and that might have nothing to do with
11:26:56   6   other firms in the industry.
11:26:57   7   BY MR. MITTELSTAEDT:
11:26:58   8         Q.  It might also do with avoiding personal
11:27:00   9   embarrassment, as Bill Campbell testified, correct?
11:27:05  10         MR. GLACKIN:  Object to the form.
11:27:06  11   BY MR. MITTELSTAEDT:
11:27:06  12         Q.  That is plausible.  You disagree with it, but
11:27:09  13   it is plausible, right?
11:27:11  14         A.  You know, if the motivation is personal
11:27:14  15   embarrassment, but the consequence is reduced
11:27:18  16   compensation, as the estimates are in this case, I
11:27:20  17   actually think that's really quite inappropriate.  I
11:27:24  18   think if you felt embarrassment having to wear these two
11:27:29  19   hats, he didn't have to sit on this board.  He could have
11:27:32  20   resigned from the board.
11:27:33  21         Q.  Have you seen any evidence in this case that in
11:27:36  22   agreeing to a bilateral with one other company, one
11:27:40  23   company said, that's okay, because there are plenty of
11:27:44  24   other places we hire from?  Have you seen any evidence
11:27:49  25   like that?
```

```
11:27:50   1                MR. GLACKIN:  Object to the form.
11:27:51   2                THE WITNESS:  I don't recall any evidence to
11:27:53   3    that effect.
11:27:54   4    BY MR. MITTELSTAEDT:
11:27:54   5         Q.   Would that be material to your opinions?
11:27:56   6         A.   I would have to be shown the -- you know, the
11:27:59   7    documents, have time to review it, and to, then I
11:28:04   8    would -- I would give an opinion on it.
11:28:05   9         Q.   But if -- if a CEO said, I'm going to enter
11:28:10  10    into this agreement because we hire from lots of other
11:28:13  11    places, would that suggest to you that the CEO did not
11:28:17  12    think there was going to be a company-wide suppression of
11:28:20  13    compensation as a result of that bilateral with one other
11:28:25  14    company?
11:28:25  15                MR. GLACKIN:  Object to form.
11:28:28  16                THE WITNESS:  One would still have to ask the
11:28:29  17    question, well, sort of what's -- what's in it for them,
11:28:33  18    why is he doing it?  And the communications I have seen
11:28:37  19    have not generally contained any such statement.
11:28:47  20    BY MR. MITTELSTAEDT:
11:28:48  21         Q.   Well, would one reason for entering into a
11:28:53  22    no-poach agreement with one other company be to avoid
11:29:00  23    losing a couple of key people to that company, without
11:29:05  24    regard to an overall suppression of compensation?
11:29:10  25                MR. GLACKIN:  Object to form.
```

```
 1          I, Rosalie A. Kramm, Certified Shorthand
 2  Reporter licensed in the State of California, License No.
 3  5469, hereby certify that the deponent was by me first
 4  duly sworn and the foregoing testimony was reported by me
 5  and was thereafter transcribed with computer-aided
 6  transcription; that the foregoing is a full, complete,
 7  and true record of said proceedings.
 8          I further certify that I am not of counsel or
 9  attorney for either of any of the parties in the
10  foregoing proceeding and caption named or in any way
11  interested in the outcome of the cause in said caption.
12          The dismantling, unsealing, or unbinding of the
13  original transcript will render the reporter's
14  certificates null and void.
15          In witness whereof, I have hereunto set my hand
16  this day:    November 22, 2013.
17          ___X___  Reading and Signing was requested.
18          _____  Reading and Signing was waived.
19          _____  Reading and signing was not requested.
20
21                           _____
22                           ROSALIE A. KRAMM
23                           CSR 5469, RPR, CRR
24
25
```