Richard M. Heimann (State Bar No. 63607)
Kelly M. Dermody (State Bar No. 171716)
Eric B. Fastiff (State Bar No. 182260)
Brendan P. Glackin (State Bar No. 199643)
Dean M. Harvey (State Bar No. 250298)
Anne B. Shaver (State Bar No. 255928)
Lisa J. Cisneros (State Bar No. 251473)
LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA  94111-3339
Telephone:  (415) 956-1000
Facsimile:  (415) 956-1008

Joseph R. Saveri (State Bar No. 130064)
Lisa J. Leebove (State Bar No. 186705)
James D. Dallal (State Bar No. 277826)
JOSEPH SAVERI LAW FIRM, INC.
505 Montgomery Street, Suite 625
San Francisco, CA  94111
Telephone:  (415) 500-6800
Facsimile:  (415) 500-6803

*Co-Lead Class Counsel*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| IN RE: HIGH-TECH EMPLOYEE ANTITRUST LITIGATION<br><br>THIS DOCUMENT RELATES TO:<br><br>ALL ACTIONS | Master Docket No. 11-CV-2509-LHK<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION TO EXCLUDE EXPERT TESTIMONY PROFFERED BY DEFENDANTS AND MEMORANDUM OF LAW IN SUPPORT**<br><br>Date:       March 20 or 27, 2014<br>Time:       1:30 pm<br>Courtroom: Room 8, 4th Floor<br>Judge:      Honorable Lucy H. Koh |

1148324.3

MOTION TO EXCLUDE
MASTER DOCKET NO. 11-CV-2509-LHK

**TABLE OF CONTENTS**

**Page**

NOTICE OF MOTION AND MOTION .................................................................................... iv

STATEMENT OF ISSUES TO BE DECIDED ....................................................................... iv

MEMORANDUM OF POINTS AND AUTHORITIES ............................................................ 1

    I.    INTRODUCTION .................................................................................................. 1

    II.    LEGAL STANDARD ............................................................................................ 2

    III.    ARGUMENT .......................................................................................................... 3

        A.    Defendants' Expert Testimony Improperly Introduces Fact Testimony From Declarations and Other Documents Prepared by Defense Counsel ............................................................................................ 3

        B.    Defendants' Experts Proffer Irrelevant and Otherwise Objectionable Evidence, Including Statistics, That Have No Place in this Case ................................................................................................... 8

        C.    Dr. Murphy's Unreliable Weather and ACS Data "Analysis" .................. 10

    IV.    CONCLUSION .................................................................................................... 10

# TABLE OF AUTHORITIES
## (continued)

Page

**Cases**

*Abaxis, Inc. v. Cepheid*,
  2012 U.S. Dist. LEXIS 100530 (N.D. Cal. July 19, 2012) ............................................................ 2

*Bigelow v. RKO Radio Pictures*,
  327 U.S. 251 (1946) ..................................................................................................................... 8

*Daubert v. Merrell Dow Pharms., Inc.*,
  509 U.S. 579 (1993) ............................................................................................................. 1, 2, 9

*Elsayed Mukhtar v. Cal. State Univ., Hayward*,
  299 F.3d 1053 (9th Cir. 2002) ..................................................................................................... 2

*Fujitsu Ltd. v. Belkin Int'l, Inc.*,
  2012 U.S. Dist. LEXIS 164410 (N.D. Cal. Nov. 16, 2012) .......................................................... 2

*In re "Agent Orange" Products Liability Litig.*,
  611 F. Supp. 1223 (E.D.N.Y. 1985) ............................................................................................ 3

*In re High-Tech Employee Antitrust Litig.*,
  2013 U.S. Dist. LEXIS 153752 (N.D. Cal. Oct. 24, 2013) ....................................................... 6, 7

*In re High-Tech Employee Antitrust Litig.*,
  289 F.R.D. 555 (N.D. Cal. 2013) ................................................................................................. 6

*In re Linerboard Antitrust Litig.*,
  203 F.R.D. 197 (E.D. Pa. 2001) ................................................................................................... 9

*In re Titanium Dioxide Antitrust Litig.*,
  2013 U.S. Dist. LEXIS 62394 (D. Md. May 1, 2013) ................................................................. 2

*In re Vitamin C Antitrust Litig.*,
  2012 U.S. Dist. LEXIS 181158 (E.D.N.Y. Dec. 20, 2012) .......................................................... 9

*In re Wells Fargo Home Mortgage Overtime Pay Litig.*,
  527 F. Supp. 2d 1053 (N.D. Cal. 2007) ....................................................................................... 6

*In re Wholesale Grocery Prods. Antitrust Litig.*,
  2012 U.S. Dist. LEXIS 103215 (D. Minn. July 16, 2012) ........................................................... 9

*Kumho Tire Co. v. Carmichael*,
  526 U.S. 139 (1999) ..................................................................................................................... 2

*SMS Systems Maintenance Services, Inc. v. Digital Equipment Corp.*,
  188 F.3d 11 (1st Cir. 1999) .......................................................................................................... 7

*Therasense, Inc. v. Becton Dickinson and Co.*,
  No. 04-02123, 2008 WL 2323856 (N.D. Cal. May 22, 2008) ..................................................... 6

*United States v. Tran Trong Cuong*,
  18 F. 3d 1132 (4th Cir. 1994) ....................................................................................................... 2

**Rules**

Fed. R. Evid.
  401 ................................................................................................................................................ 9
  402 ......................................................................................................................................... 1, 8, 9
  403 ......................................................................................................................................... 1, 8, 9
  702 ......................................................................................................................................... 1, 2, 9
  703 ............................................................................................................................................ 1, 2

**TABLE OF AUTHORITIES**
**(continued)**

Page

**Treatises**

AMERICAN BAR ASSOCIATION, PROVING ANTITRUST DAMAGES: LEGAL AND ECONOMIC ISSUES 53-55 (2d ed. 2010) .................................................................................................. 9

WEINSTEIN'S FEDERAL EVIDENCE § 703.05 .................................................................................................................................. 3

# NOTICE OF MOTION AND MOTION

**TO THE PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on March 20 or 27, 2014, at 1:30 pm, before the Honorable Lucy H. Koh, in the above-entitled Court, individual and representative plaintiffs Michael Devine, Mark Fichtner, Siddharth Hariharan, and Daniel Stover ("Plaintiffs") will and hereby do move the Court for an order excluding certain testimony proffered by Defendants' expert witnesses under the Federal Rules of Evidence.

This motion is based upon this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the Declaration of Lisa Cisneros, and all exhibits and appendices to same, the pleadings and other documents on file in this consolidated action, and any argument that may be presented to the Court.  A proposed order is filed herewith.

## STATEMENT OF ISSUES TO BE DECIDED

The issues to be decided are:

1. Whether Defendants' experts may testify about the contents of lawyer-drafted hearsay documents such as employee declarations and interrogatory responses; and

2. Whether Defendants' experts, including Lauren Stiroh and Elizabeth Becker, may testify that average compensation and hiring rates went up, when those facts have no bearing on the effectiveness (or not) of Defendants' violation of the Sherman Act.

3. Whether Defense expert Kevin M. Murphy may testify regarding weather patterns or a dataset of nationwide compensation data collected by the United States Census Bureau.

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Plaintiffs respectfully move the Court to exclude certain aspects of the Defendants' proffered expert evidence, as identified herein and set forth in the proposed order filed herewith.

**First**, the Court should exclude any testimony by Defendants' expert witnesses about supposed "facts" that they "learned" by reading the lawyer-drafted declarations of Defendants' employees or the lawyer-drafted interrogatory responses of the Defendants, as well as any opinions based on them. It is apparent that Defendants intend to use their experts to bring in through the back-door hearsay that would never be admissible in court. Such lawyer-drafted documents do not provide adequate support for purported opinions under *Daubert* and Rule 703 because no economist would rely on them outside the litigation context. The declarations and interrogatory responses also do not meet the separate requirements for disclosure to the jury under Rule 703 because their probative value does not substantially outweigh their prejudicial effect. All expert testimony based on or about these documents should be excluded, whether characterized as "opinion," or "factual background," or otherwise.

**Second**, the Court should exclude proposed testimony by defense experts that hiring and wages increased—in absolute terms—during the conspiracy period. No economist engaged in antitrust analysis (out in the field or otherwise) would consider absolute price movements to the exclusion of relative price movements in performing an antitrust analysis such as does Dr. Stiroh. Dr. Stiroh herself cannot explain the relevance of these trends to her opinions other than to say that an economist should "look at the data." It is apparent that Defendants intend to impermissibly suggest to the jury that class members should not be compensated for their damages because overall their pay went up during the class period. This aspect of the testimony should be excluded not only under Rule 702, but also Rules 402 and 403.

**Third**, Dr. Murphy's expert opinions relying on information concerning weather patterns and a dataset of nationwide compensation data collected by the U.S. Census Bureau are inadmissible. These opinions presented by Dr. Murphy are unreliable due to various methodological flaws in the underlying data.

## II. <u>LEGAL STANDARD</u>

Rule 702 of the Federal Rules of Evidence allows admission of "scientific, technical, or other specialized knowledge" by a qualified expert where it will "help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702. *See generally Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993). *Daubert* and its progeny require "that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co. v. Carmichael*, 526 U.S. 139, 152 (1999). "The proponent of expert testimony bears the burden of production to come forward with evidence to support its contention that an expert's testimony would be both reliable and helpful." *In re Titanium Dioxide Antitrust Litig.*, 2013 U.S. Dist. LEXIS 62394, 9-12 (D. Md. May 1, 2013).

"When considering expert testimony offered pursuant to Federal Rule of Evidence 702, a district court acts as a 'gatekeeper' by 'making a preliminary determination that the expert's testimony is reliable.'" *Abaxis, Inc. v. Cepheid*, 2012 U.S. Dist. LEXIS 100530, *3 (N.D. Cal. July 19, 2012) (Koh, J.) (quoting *Elsayed Mukhtar v. Cal. State Univ., Hayward*, 299 F.3d 1053, 1063 (9th Cir. 2002)). While the Court retains "considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable," *Kumho Tire*, 526 U.S. at 152, expert testimony may be admitted only where it is "*both* relevant and reliable." *Fujitsu Ltd. v. Belkin Int'l, Inc.*, 2012 U.S. Dist. LEXIS 164410, at *4-6 (N.D. Cal. Nov. 16, 2012) (Koh, J.) (emphasis added) (citation omitted). Under Rule of Evidence 703, an expert may rely on inadmissible hearsay for her conclusions; but *only* "if experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject[.]" Fed. R. Evid. 703. Similarly, an expert may testify about the inadmissible facts to the jury "*only* if their probative value in helping the jury evaluate the opinion substantially outweighs their prejudicial effect." *Id.* (emphasis added).

Together, these requirements prevent parties from using experts as a back-door channel to use made-for-litigation "evidence" to sway the jury, whether characterized as "opinion" or as "fact." *See*, *e.g.*, *United States v. Tran Trong Cuong*, 18 F. 3d 1132, 1143 (4th Cir. 1994)

1  (holding that it was error to allow a medical doctor's expert testimony where the doctor relied on
2  a forensic opinion prepared at the prosecution's request for purposes of litigation, and as the
3  forensic report was not "of a type reasonably relied upon by experts in particular field in forming
4  opinions"). *Accord In re "Agent Orange" Products Liability Litig.*, 611 F. Supp. 1223, 1246
5  (E.D.N.Y. 1985) (self-serving and unverified client-created documents provide insufficient
6  foundation for expert testimony). *See generally* WEINSTEIN'S FEDERAL EVIDENCE, § 703.05.

### III.  ARGUMENT

#### A.  Defendants' Expert Testimony Improperly Introduces Fact Testimony From Declarations and Other Documents Prepared by Defense Counsel

The lawyer-drafted declarations and interrogatory responses upon which Defendants' experts rely are self-serving and inadmissible hearsay that do not provide a reliable basis for expert opinions in the field of economics.  Permitting this expert testimony would allow the presentation of executives' declaration testimony and attorneys' words without the burden of cross-examination.  There is no question that lawyers wrote the declarations:  Defendants invoked the *work product privilege* to cut-off cross-examination about how they were drafted.  *See e.g.*, Galy Dep., Tr. at 133:13-134:10,[1] attached hereto as Exh. 1 to Decl. of Lisa J. Cisneros ISO Pls.' Mot. to Exclude Expert Testimony Proffered by Defs. ("Cisneros Decl.").

Defendants' experts, however, rely heavily on them and re-state them at length.  With respect to Dr. Stiroh's proffered opinions, the "Background" section of her report sets forth

---

[1] Redacted 

1   testimony from numerous lawyer-crafted employee declarations. The declarations are frequently
2   the only support for various assertions. *See* Cisneros Decl., Exh. 2, Stiroh Report at 9-32, ¶¶ 19-
3   83, and text accompanying footnotes 33, 35-40, 49, 52, 53-54, 56, 58-59, 62- 64, 66-68, 75, 83-
4   88, 90, 93-95, 97-100, 102, 103, 105-107, 114, 117-118, 121, 127, 133-138, 140,-141, 149-157,
5   159-163, 165-167, 170-171 & 175. Dr. Stiroh stated in her deposition that she only intended to
6   testify as to the facts that she learned from the employee declarations if the declarant failed to
7   appear at trial—exactly when it would be most prejudicial for her to do so. Cisneros Decl.,
8   Exh. 3, Stiroh Dep., Tr. at 98:22-99:2. Dr. Stiroh also testified that she did not verify the
9   accuracy of the declarations upon which she relied, and it did not matter to her whether or not the
10  declarations were drafted by Defendants' attorneys. *Id.* at 99:13-22, 95:10-13. Finally, when
11  asked whether it is customary for economists to rely on statements by individuals drafted by
12  attorneys, she refused to answer affirmatively in connection with the general practice of
13  economists. *Id*. at 99:23-101:15 **Redact** [REDACTED]
14  [REDACTED]
15  [REDACTED]
16  [REDACTED]
17  [REDACTED]
18          Turning to Dr. Lewin's report, his testimony also relies on significant excerpts of the
19  declarations drafted by lawyers on behalf of Adobe. *See* Cisneros Decl., Exh. 4, Lewin Report at
20  16-18, 22-23, 41-43, 45, 51-54, ¶¶ 30-33, 38, 59, 62, 70-74, and text accompanying footnotes 9,
21  11, 13, 23, 25, 64, 66-67, 72-75, 82, 84, 89-90, 112-113, 115, 118. For example, Dr. Lewin
22  recites declaration testimony of Jeff Vijungco, Adobe's Director of Talent Acquisition. Lewin
23  Report at 16-18. Dr. Lewin presents this information to show that Adobe used a variety of
24  recruiting channels and sources other than cold-calling. Dr. Lewin's recitation of Donna Morris's
25  declaration regarding various aspects of Adobe's compensation system is similarly problematic.
26  There is no basis for finding that Dr. Lewin's packaging of this hearsay is helpful to the jury or
27  done in a manner acceptable in his field.
28

1         Like Dr. Stiroh and Dr. Lewin, Dr. Becker improperly relies on the declaration testimony
2    of Defendants' respective human resources managers absent any scientific methodology.  In
3    doing so, Dr. Becker challenges Plaintiffs' expert evidence regarding the propagation effect that
4    produced class-wide impact.  *See* Cisneros Decl., Exh. 5, Becker Report at 6-8, ¶ 26.  Dr. Becker
5    testified that, while she did not read the deposition testimony carefully and sometimes relied on
6    summaries prepared by staff, Dr. Becker [Redact]  Cisneros Decl.,
7    Exh. 6, Becker Dep. 152:11-153:20.  In preparation for her deposition, she did not review the
8    depositions but instead relied on the employee declarations.  *Id.* 224:21-225:18.

9         Dr. Murphy's expert opinions on behalf of Apple must likewise be excluded where they
10   merely parrot Defendants' self-serving responses to Plaintiffs' Interrogatories.  Dr. Murphy
11   opines that there is an [Redact] for the
12   challenged agreements between Apple and the remaining Defendants.  Cisneros Decl., Exh. 7,
13   Nov. 25, 2013 Expert Report of Kevin Murphy, ¶ 39.  Dr. Murphy's opinion, however, amounts
14   to nothing more than a lengthy recitation of Defendants' responses to Plaintiffs' interrogatories.
15   *See id.* ¶¶ 40-60 (citing liberally to Defendants' Resp. to Interrog. No. 15).  This recitation is the
16   entire sum and substance of his opinion.  Dr. Murphy cites Defendants' interrogatory responses as
17   his only authority for various factual assertions on 35 occasions.  *See* Nov. 25, 2013 Expert
18   Report of Kevin Murphy at fns. 25, 33, 34, 36-44, 46, 47, 50-52, 55, 64, 65, 68, 73, 74, 79-82, 91,
19   92, 95, 96, 98, 99, 102, and 103.[2]

20        Dr. Edward A. Snyder's expert report, on behalf of Intel, is based upon a review of only 9
21   business records and only 2 fact depositions.  Cisneros Decl., Exh. 8, Dec. 6, 2013 Amended
22   Snyder Report, Appendix C; Cisneros Decl., Exh. 9, Snyder Dep. 62:20-63:3.  That is, Dr. Snyder
23   conducted essentially no investigation of the facts.  Instead, Dr. Snyder relied on employee
24   declarations and interrogatory responses.  Snyder Report, p. 11-12 n.10; p. 17 n.13; p. 18 nn.15-

---

[2] Dr. Murphy's reliance on Defendants' interrogatory responses is particularly improper given his earlier admission that he is unqualified to review documents in the context of an expert analysis: "I got no particular advantage of reading documents. I'm probably worse at reading documents than most people." Cisneros Decl., Exh. 14, July 5, 2013 Murphy Dep. at 443:12-15.

1   17; p. 30 nn.42, 43; p. 33 nn.51-52; and p. 34 n.58.  The Court should not permit Dr. Snyder to
2   substitute attorney-drafted documents for legitimate expert analysis.
3        Dr. Eric Talley's expert opinions on behalf of Google likewise rely improperly on
4   Defendants' interrogatory responses.  *See* Cisneros Decl., Exh. 10, Talley Report, p. 14 nn.32, 34
5   and 35; p. 15 nn.45, 48; p. 16 nn.51 and 54; and p. 18 n.68.  In addition, Dr. Talley saw fit to cite
6   to a document produced by Intuit as though it were a contemporaneous business record: Redact
7   [redacted] Talley Report, p. 18 n.68 and p. 26
8   n.97.  In fact, the document Redact [redacted]
9   [redacted]
10  [redacted]
11  [redacted]
12  [redacted] INTUIT_005692.  Google should not be
13  allowed to use Dr. Talley as a vehicle to introduce attorney advocacy as evidence.  Defendants'
14  experts have thus undertaken exactly the kind of spoon-feeding which courts in this District have
15  prohibited.  *See Therasense, Inc. v. Becton Dickinson and Co.*, No. 04-02123, 2008 WL 2323856,
16  *1 (N.D. Cal. May 22, 2008), Docket No. 762 ("One of the worst abuses in civil litigation is the
17  attempted spoon-feeding of client-prepared and lawyer-orchestrated 'facts' to a hired expert who
18  then 'relies' on the information to express an opinion.").
19       Earlier in this case, the Court considered the issue of employee declarations supporting an
20  expert report.  The same declarations are at issue now, though the context is different—testimony
21  before a jury rather than submission of a report to the Court in connection with class certification.
22  The Court has already questioned the reliability of these declarations:  "the Court has already
23  recognized that these declarations were drafted for the specific purpose of opposing Plaintiffs'
24  class certification motion, and accordingly, the Court finds that these documents are of
25  diminished probative value."  *In re High-Tech Employee Antitrust Litig.*, 2013 U.S. Dist. LEXIS
26  153752, at *144 (N.D. Cal. Oct. 24, 2013).  The Court also recognized that the declarations
27  should be closely scrutinized "in light of 'glaring reliability concerns' caused by 'possible
28  pressure arising from ongoing employment relationships.'"  *In re High-Tech Employee Antitrust*

*Litig.*, 289 F.R.D. 555, 586 (N.D. Cal. 2013) (quoting *In re Wells Fargo Home Mortgage Overtime Pay Litig.*, 527 F. Supp. 2d 1053, 1060 (N.D. Cal. 2007)). The Court examined the declarations and found them to be unreliable and contradicted by Defendants' contemporary business records: "In light of these demonstrated inconsistencies, the Court is more persuaded by the internal documents Defendants created before and during the anti-solicitation agreements, . . . than the declarations Defendants created to oppose class certification and testimony that is litigation driven." *In re High-Tech Employee Antitrust Litig.*, 2013 U.S. Dist. LEXIS 153752, at *145 (N.D. Cal. Oct. 24, 2013).

Now that a jury will be hearing the evidence on the merits, the questionable foundation of the declarations deserves even closer scrutiny. Jurors do not have the training and sophistication of the Court to sift through unreliable expert information. Since "[e]xpert opinions . . . are no better than the data and methodology that undergird them," *SMS Systems Maintenance Services, Inc. v. Digital Equipment Corp.*, 188 F.3d 11, 254 (1st Cir. 1999), the expert reports by Drs. Elizabeth Becker, David Lewin, Kevin Murphy, Lauren Stiroh, Edward Snyder and Eric Talley should be excluded to the extent they rely on or summarize the hearsay declarations and interrogatory responses of the Defendants. Specifically the court should exclude testimony relying upon the following citations:

- **Stiroh Report:** p. 10 nn.32, 33, 35, 35; p. 11 nn.37-40; p. 12 nn.49, 52-54; p. 13 nn.56, 59; p. 14 nn.62-64; p. 15 nn.66-68, 70; p. 16 n.75; p. 17 nn.83, 84; p. 18 nn.86-88, 90; p. 19 nn.93, 94 99, 100; p. 20 nn.103-107; p. 22 nn.112, 114; p. 23 nn.117, 118, 121; p. 24 n.127; p. 25 nn.133, 134; p. 26 nn.135-138, 140, 141; p. 27 nn.148-150; p. 28 nn.151-156, 158, 159; p. 29 nn.160, 162, 163, 165-167, p. 30 nn.170, 171, 175; p. 36 n.189; p. 42 nn.206, 207; p. 43 n.211; and p. 65 n.275.

- **Lewin Report:** p. 16 n.9; p. 17 n.13; p. 22 n.23; p. 22-23 n.25; p. 41 nn.66, 67; p. 42 nn.72-75; p. 43 nn.82, 84; p.48 n.101; p.52 n.113; p. 53 n.115.

- **Becker Report:** p. 7 nn.14, 19; p. 17 nn.56, 57; p. 34 n.95; p. 40 nn.113, 116; and p. 41 nn.117, 121.

- **Murphy Report:** p.16 n.25; p.18 nn.33, 34, 36, 37; p. 19 nn. 38-43; p. 20 nn. 44, 46, 47, 50, 51; p. 21 n.52, 55; p. 23 nn.64, 65, 68; p. 24 nn.73, 74; p. 25 nn.79-82; p. 26 nn.86-91; p. 27 nn.92, 95, 96, 98; p. 28 nn.99, 101, 102; and p. 29 n.103.

- **Snyder Report:** p. 11-12 n.10; p. 17 n.13; p. 18 nn.15-17; p. 30 nn.42, 43; p. 33 nn.51-52; and p. 34 n.58.

- **Talley Report:** p. 14 nn.32, 34, 35; p.15 nn.45, 48; p. 16 nn.51, 54; p. 18 n.68; and p. 26 n.97.

B.  **Defendants' Experts Proffer Irrelevant and Otherwise Objectionable Evidence, Including Statistics, That Have No Place in this Case**

Pursuant to Rules 402 and 403 of the Federal Rules of Evidence, portions of Defendants' expert opinions are also inadmissible where they contain irrelevant and misleading statistics about the direction of compensation and hiring rates.

For instance, in the "Background" section of her report, Dr. Stiroh repeatedly states that hiring and wages trended upward—in absolute terms—during the conspiracy period. *See* Stiroh Report at 9-32, ¶¶ 20-21, 24, 26-30, 33-34, 36-38, 42, 44-45, 48-50, 53, 55-56, 58, 59-60, 63, 65, 67, 68-69, 72-75, 77, 79-80, and accompanying Exhibits III.1-53. Dr. Stiroh never says how she intends to use these simple facts or how they relate to her opinion, other than to say an expert must [Redact] Stiroh Dep. 110:8. However, it appears Defendants intend to suggest that because average compensation and hiring levels increased, the conspiracy failed to affect pay. According to Dr. Becker, for instance, a faster pace of compensation increases would be a [Redact] Becker Report at 22, ¶80. *See also id.*, Exh. A.12.

But as Defendants and their experts well know, whether hiring and wage levels actually increased or decreased does not support an inference one way or the other about the effect of the violation. Stiroh Dep. 106:19-24 [Redact] 110:23-111:24 [Redact] Rather, the antitrust question is whether and to what extent hiring and wage levels would have been higher than the actual levels in a competitive market free of conspiracy, i.e., what hiring and wages would have been "if the restraints had not been imposed." *Bigelow v. RKO Radio Pictures*, 327 U.S. 251, 263 (1946). A plaintiff's antitrust damages, therefore, are to be calculated "by comparison of . . . values as

1  affected by the conspiracy, with what they would have been in its absence under freely
2  competitive conditions." *Id.* at 264. "The inquiry involves a comparison of 'the plaintiff's actual
3  situation with the hypothetical situation that would have existed in the absence of the violation.'"
4  *Los Angeles Memorial Coliseum Comm'n v. National Football League*, 791 F.2d 1356, 1367 (9th
5  Cir. Cal. 1986) (citation omitted). *See generally* AMERICAN BAR ASSOCIATION, PROVING
6  ANTITRUST DAMAGES: LEGAL AND ECONOMIC ISSUES 53-55 (2d ed. 2010) (citing cases).
7        That actual prices trended one way or another is beside the point. *See*, *e.g.*, *In re*
8  *Linerboard Antitrust Litig.*, 203 F.R.D. 197, 220 (E.D. Pa. 2001) ("Although the prices for
9  corrugated sheets and boxes may have increased due to demand, because defendants allegedly
10 conspired to reduce production of linerboard, the price was higher than it would have been under
11 competitive conditions."); *In re Wholesale Grocery Prods. Antitrust Litig.*, 2012 U.S. Dist.
12 LEXIS 103215, at *39 (D. Minn. July 16, 2012) ("a price may be supra-competitive without
13 actually increasing if a competitive price would still be lower than the price charged").
14 Continually falling prices often motivate a cartel, as they did in many of the recent high-tech
15 component cases brought by the Department of Justice. The proffered statistics and
16 accompanying charts therefore invite an "apples and oranges comparison," *In re Vitamin C*
17 *Antitrust Litig.*, 2012 U.S. Dist. LEXIS 181158, at *10-15 (E.D.N.Y. Dec. 20, 2012), that
18 warrants exclusion under Rule 702.
19       Rules 402 and 403 provide additional reason to exclude the testimony. The statistics are
20 irrelevant for the jury; they have no "tendency to make a fact more or less probable," nor are
21 otherwise "of consequence in determining the action," within the meaning of Rule 401.
22 Moreover, any possible probative value of such testimony on hiring and compensation levels is
23 substantially outweighed by the danger of unfair prejudice, confusing the issues, misleading the
24 jury, undue delay, and wasting time, rendering such testimony inadmissible under Rule 403.
25 "Expert evidence can be both powerful and quite misleading because of the difficulty in
26 evaluating it. Because of this risk, the judge in weighing possible prejudice against probative
27 force under Rule 403 . . . exercises more control over experts than over lay witnesses." *Daubert*,
28 509 U.S. at 595 (citation omitted). The testimony should be excluded.

### C. Dr. Murphy's Unreliable Weather and ACS Data "Analysis"

In this case's second round of briefing on class certification, Dr. Murphy submitted testimony concerning weather patterns and a dataset of nationwide compensation data collected by the U.S. Census Bureau. Plaintiffs did not previously move the Court to strike it; he now reserves the right to testify about it. Dr. Murphy's opinions based on weather patterns are silly, nonsensical and inherently unreliable, and it would be prejudicial and wasteful of time to allow such testimony before a lay jury. Reliance on the Census Bureau data—the "American Community Survey" or "ACS" data—is unreliable because, among other methodological flaws, the survey methods employed to create these datasets create potentially serious response errors, improperly mix two years of data, and prevent accurate calculation of "current year" dollars. In his July 12, 2013 report, Dr. Leamer identified and discussed these flaws in methodology, and explained how the analyses that relied on these data were unreliable. Cisneros Decl., Exh. 13, Rebuttal Supplemental Expert Report of Edward E. Leamer, Ph.D., ¶¶ 53-60. Dr. Murphy has failed to respond to Dr. Leamer's criticisms or to correct these errors. Thus, Dr. Murphy's testimony in this regard is inadmissible and he should not be permitted to repeat these faulty opinions in front of the jury.

### IV. CONCLUSION

For the foregoing reasons, the motion should be granted.

| | | |
|---|---|---|
| 1 | | |
| 2 | Dated: January 9, 2014 | **LIEFF CABRASER HEIMANN & BERNSTEIN, LLP** |
| 3 | | By:  */s/ Brendan Glackin* |
| | | Richard M. Heimann (State Bar No. 63607) |
| 4 | | Kelly M. Dermody (State Bar No. 171716) |
| | | Eric B. Fastiff (State Bar No. 182260) |
| 5 | | Brendan P. Glackin (State Bar No. 199643) |
| | | Dean M. Harvey (State Bar No. 250298) |
| 6 | | Anne B. Shaver (State Bar No. 255928) |
| | | Lisa J. Cisneros (State Bar No. 251473) |
| 7 | | LIEFF CABRASER HEIMANN & BERNSTEIN, LLP |
| | | 275 Battery Street, 29th Floor |
| 8 | | San Francisco, CA  94111-3339 |
| | | Telephone:  (415) 956-1000 |
| | | Facsimile:  (415) 956-1008 |
| 9 | | |
| 10 | | **JOSEPH SAVERI LAW FIRM, INC.** |
| 11 | | By:  */s/ Joseph R. Saveri* |
| | | Joseph R. Saveri (State Bar No. 130064) |
| 12 | | Lisa J. Leebove (State Bar No. 186705) |
| | | James D. Dallal (State Bar No. 277826) |
| 13 | | JOSEPH SAVERI LAW FIRM, INC. |
| | | 505 Montgomery Street, Suite 625 |
| 14 | | San Francisco, CA  94111 |
| | | Telephone:  (415) 500-6800 |
| 15 | | Facsimile: (415) 500-6803 |
| 16 | | *Co-Lead Class Counsel* |