**EXHIBIT 9**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION


E:  HIGH-TECH EMPLOYEE      )

TRUST LITIGATION            )

                            )   No. 11-CV-2509-LHK

 DOCUMENT RELATES TO:       )

ACTIONS.                    )

_____



VIDEO DEPOSITION OF WILLIAM CAMPBELL

ATTORNEYS' EYES ONLY

February 5, 2013


Reported by:  Anne Torreano, CSR No. 10520

1  Intuit, and she said okay.

2      Q.  And can you place that either in time or

3  describe the circumstances surrounding that event?

4      A.  I -- there were some instances of Google

5  recruiters calling Intuit employees.  I was quite

6  embarrassed by that with my own company, that I was

7  there in such an intimate position helping Google and

8  Google was recruiting -- cold-calling our employees.

9  So I asked them if they would stop doing that.

10:07:30  10      Q.  Prior to that time, did you know of any other

11  companies that had such arrangements in the Valley?

12      A.  Yes.  I mean, yes theoretically.  I can't tell

13  you exactly what, but I -- you know, the idea of saying

14  somebody's on somebody else's board and we don't

10:07:56  15  recruit from that board member's companies, you know,

16  I've heard that a lot, but, I mean, I can't give you

17  that specifically.

18          But it seemed like that was a practice that

19  was being honored just out of respect for the board

10:08:14  20  member's time.

21          So that's what I did.

22      Q.  Okay.  Aside from the situation where there

23  were interlocking board relationships, did you know of

24  any other --

10:08:30  25      A.  I did not, no.

```
 1  could go and recruit a Google employee, but we had --
 2  our opportunities for success were better other places.
 3  BY MR. HEIMANN:
 4      Q.  So I'm going to come back to the question I
 5  asked.
 6          Did you have an understanding that as part
 7  of -- strike that.
 8          Was it part of the understanding that Intuit
 9  would not cold-call into Google the way you described
10  cold-calling?
11      A.  No, we never had a -- you know, what you
12  called a reciprocal agreement, no.
13      Q.  So in your mind, during this time frame,
14  Google was free to raid Intuit all it wanted?
15      A.  No.
16      Q.  Why is that not a no?
17          MR. MITTELSTAEDT:  I think you misspoke.
18          MR. HEIMANN:  Oh, did I?
19          THE WITNESS:  I think you said it --
20          MR. HEIMANN:  Other way around.  I'm sorry.
21  BY MR. HEIMANN:
22      Q.  So as far as you were concerned, Intuit was
23  free to raid Google employees as much as it wanted?
24      A.  Correct.  Not likely, but correct.
25      Q.  But correct.  And did you ever confirm that in
```

Timestamps: 10:11:43, 10:11:56, 10:12:02, 10:12:14

1        MR. HEIMANN: Okay. Fair enough.
2    BY MR. HEIMANN:
3        Q. And now, I'm sorry, I lost my train of
4    thought.
5        I think I was asking you whether or not you
6    have any recollection of talking with Mr. Schmidt about
7    the notion he expresses here, that if there was such a
8    policy, it should be as he describes it here.
9        A. I do not have -- I recall talking to
10   Mr. Schmidt about this, but not about this contractual
11   agreement, et cetera. But -- but the business
12   relationship part of it was something that both -- that
13   he felt strongly about, as did I.
14       Q. Can you explain what you mean by that?
15       A. Mr. Schmidt being on Apple's board or Art
16   Levinson being on Google's board, or me, you know,
17   being a consultant to Google. You know, there are
18   business relationships that -- that, for a matter of
19   almost embarrassment, that he felt -- I don't want to
20   speak for Eric Schmidt, but I felt, in consulting with
21   him, that were important things to maintain. Those
22   relationships were important and that we should not do
23   anything that would affect those relationships.
24       Q. And how if at all did that translate into the
25   conduct involving cold-calling into other companies'

~#In Re: HIGH-TECH EMPLOYEE ANTITRUST LITIGATION

## REPORTER'S CERTIFICATE

I, Anne Torreano, Certified Shorthand Reporter nsed in the State of California, License No. 10520, by certify that the deponent was by me first duly n, and the foregoing testimony was reported by me was thereafter transcribed with computer-aided scription; that the foregoing is a full, complete, true record of said proceedings.

I further certify that I am not of counsel or rney for either or any of the parties in the going proceeding and caption named or in any way rested in the outcome of the cause in said caption.

The dismantling, unsealing, or unbinding of original transcript will render the reporter's ificates null and void.

In witness whereof, I have subscribed my name 8th day of February, 2013.


[ ] Reading and Signing was requested.

[ ] Reading and Signing was waived.

[X] Reading and Signing was not requested.


*Anne*
ANNE M. TORREANO, CSR NO. 10520

Page: 187

GRAMM COURT REPORTING   CONFIDENTIAL - ATTORNEYS' EYES ONLY