**EXHIBIT 14**

```
 1              UNITED STATES DISTRICT COURT
 2      NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION
 3
 4   IN RE:  HIGH-TECH EMPLOYEE     No. 11-CV-2509-LHK
 5   ANTITRUST LITIGATION
 6   _____
 7
 8           CONFIDENTIAL PORTIONS DESIGNATED
 9
10      Continued Videotaped Deposition of EDWARD E.
11      LEAMER, PH.D., Volume 3, taken at the offices
12      of O'Melvey & Myers LLP, Two Embarcadero Center,
13      Suite 2800, San Francisco, California commencing
14      at 9:03 a.m., on Monday, November 18, 2013,
15      before Leslie Rockwood, RPR, CSR No. 3462.
16
17
18
19
20
21
22
23
24   JOB No. 1765129
25   PAGES 857 - 1169
```

Page 857

```
 1        Q.  And so when you constructed your model, you

 2   assumed a contract between Apple -- a no cold-call

 3   agreement between Apple and Intel?

 4        A.  No, I would not have done anything differently

 5   because I've got -- I still have got the chain.  If you      13:51:10

 6   break the chain, then maybe there's an issue.  As long as

 7   there's a chain of interlinked firms, then this thing is

 8   going to leak out to all the firms involved in that

 9   conspiracy.

10        Q.  So, for example, one could eliminate several of     13:51:26

11   the actual bilateral agreements, and in your view, the

12   impact would be the same --

13        A.  No.

14        Q.  -- of the class?

15        A.  No, the impact would be less because the            13:51:36

16   information flow is -- is not being -- it's being legally

17   reduced, not illegally reduced, according to your

18   hypothetical.

19        Q.  But if you, for example, were to eliminate the

20   agreement between Intel and Pixar, that would have no        13:51:58

21   impact on your damages analysis?

22        A.  Well, the damage analysis that I've made doesn't

23   refer at all to this bilateral relationships.  It treats

24   the conspiracy as a single overriding fact, and I'm just

25   making a presumption that that overriding fact requires      13:52:23
```

1    there to be linkages between all these firms.  And thus

2    to the extent that you eliminate enough of these linkages

3    so that some firm is standing off by itself or

4    disconnected from the other firms, then I could see there

5    might be a consideration.                                      13:52:41

6        Q.  But as long as it's connected by one link, it

7    doesn't matter whether it's one, two, or three links?

8        A.  We talked about that before.  I think it could

9    matter.  The number of linkages could matter.  And I

10   explored some ideas about how to embody that in my             13:52:53

11   regression analysis.

12       Q.  But your regression analysis doesn't take into

13   account how many links there are among the defendants?

14       A.  That's correct.

15       Q.  Did you carry out a sensitivity analysis on the        13:53:17

16   new version of your model in Exhibit 2 of your

17   October 28th report?

18       A.  Yes, in fact, much of it is -- some of it is

19   reported right here in this document.

20       Q.  And that would be which exhibits?                      13:53:34

21       A.  Exhibit 4, Exhibit 5, Exhibit 6.

22       Q.  Do you have your reply report available,

23   Dr. Leamer?

24       A.  Do you happen to have the date on that?  Because

25   I think I have two reply reports.                              13:54:10