EXHIBIT 37

Richard M. Heimann (State Bar No. 63607)
Kelly M. Dermody (State Bar No. 171716)
Eric B. Fastiff (State Bar No. 182260)
Brendan P. Glackin (State Bar No. 199643)
Dean M. Harvey (State Bar No. 250298)
Anne B. Shaver (State Bar No. 255928)
LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, California 94111-3339
Telephone: (415) 956-1000
Facsimile: (415) 956-1008

Joseph R. Saveri (State Bar No. 130064)
Lisa J. Leebove (State Bar No. 186705)
James G. Dallal (State Bar No. 277826)
JOSEPH SAVERI LAW FIRM
505 Montgomery Street, Suite 625
San Francisco, California 94111
Telephone: (415) 500-6800
Facsimile: (415) 500-6803

*Co-Lead Counsel for Plaintiff Class*

[Additional counsel listed on signature page]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| IN RE: HIGH-TECH EMPLOYEE ANTITRUST LITIGATION<br><br>THIS DOCUMENT RELATES TO: ALL ACTIONS, | Master Docket No. 11-CV-2509-LHK<br><br>**PLAINTIFFS' SUPPLEMENTAL ANSWERS AND OBJECTIONS TO DEFENDANTS' SECOND SET OF INTERROGATORIES** |

**PROPOUNDING PARTY:**   Defendants

**RESPONDING PARTY:**   Plaintiffs

**SET NUMBER:**   Second

Pursuant to Rule 33 of the Federal Rules of Civil Procedure and the Local Rules of the United States District Court for the Northern District of California, Plaintiffs respond to Defendants' Second Set Interrogatories, served on February 28, 2013, as follows:

**PRELIMINARY STATEMENT**

The Answers set forth below are limited by agreement between Plaintiffs' Counsel and Defendants' Counsel. In consideration of the fact that substantial discovery (including depositions and production of documents by Defendants) has taken place recently, and in light of the procedural posture of this case, the parties through their counsel have agreed that Plaintiffs at this time shall identify the alleged agreements at issue and certain information about them. The parties agreed Plaintiffs would supplement their initial response to Interrogatory No. 15 on May 24, 2013, and that Plaintiffs' response to Interrogatory No. 16 shall be provided to Defendants on June 7, 2013. Plaintiffs continue to reserve all of their rights to object and respond to any Interrogatories or portions of Interrogatories not addressed herein. Plaintiffs' investigation and discovery in this matter is not complete. Plaintiffs reserve the right to amend, alter, supplement, modify, or otherwise revise these Answers and Objections.

Plaintiffs further state that these Answers contain references to material that certain Defendants have designated as "CONFIDENTIAL - ATTORNEYS' EYES ONLY" under the Protective Order governing this case. Without conceding the validity of any such designations and reserving all rights to challenge them, Plaintiffs accordingly designate these Answers and Objections as "CONFIDENTIAL – ATTORNEYS' EYES ONLY."

**GENERAL OBJECTIONS**

The following General Objections apply to each and every applicable Interrogatory, and are incorporated by reference into each and every applicable Answer as if set forth in full in each Response.

1. Plaintiffs object to the Interrogatories to the extent they call for information protected by the attorney-client privilege, the work product doctrine, or any other common law privilege or protection that may attach to information requested by the interrogatory.

2. In responding to the Interrogatories, Plaintiffs do not adopt, embrace, or accept any term or definition employed by Defendants. These responses are made based upon Plaintiffs' interpretation of words contained in the Interrogatory, unless a specific definition or instruction has been agreed upon.

1   3.   Plaintiffs object to the Interrogatories to the extent they are premature contention
2  interrogatories.

3   Subject to, and without waiving, any of the foregoing objections, Plaintiffs respond as
4  follows:

## ANSWERS AND SPECIFIC OBJECTIONS

**INTERROGATORY NO. 15:**

Separately for each agreement (whether bilateral, multilateral or otherwise) that You contend any Defendant entered into and for which You seek damages in this case, describe in as much detail as possible the circumstances of the agreement including without limitation the time periods during which it was in effect, the names of the Persons who entered into it, the Persons who were parties to it, and its terms.

**ANSWER TO INTERROGATORY NO. 15:**

Plaintiffs object to Interrogatory No. 15 to the extent that it impermissibly seeks the premature disclosure of information that will be the subject of expert reports and testimony. Such expert opinion will be disclosed in accordance with the Orders of the Court and the applicable Rules of Civil Procedure. Plaintiffs further object that this is a premature contention interrogatory. Plaintiffs continue to reserve all rights to amend or supplement the answer accordingly as they analyze subsequently obtained evidence.

Subject to and without waiving any of the general or specific objections, Plaintiffs respond to Interrogatory No. 15 as follows:

Defendants Adobe Systems, Inc., Apple Inc., Google Inc., Intel Corp., Intuit Inc., Lucasfilm Ltd., and Pixar participated in a conscious scheme designed to achieve an unlawful objective (the "conspiracy"). This included, but is not limited to, a web of interconnected understandings, agreements, and mutual assurances between and among Defendants Adobe, Apple, Google, Intel, Intuit, Lucasfilm, and Pixar over a number of years, including 2005-2009, with the purpose and effect of restricting employee recruiting and hiring practices; reducing competition for employees and labor; diminishing employment opportunities and interfering in the price-setting mechanism that otherwise would have prevailed; and reducing, suppressing and

1  stabilizing wages and other compensation to the members of the Class.

2  Defendants' understandings, agreements, and mutual assurances included express
3  agreements not to compete for each other's employees ("anti-solicitation agreements"). The anti-
4  solicitation agreements prohibited recruitment of employees unless the employee first
5  affirmatively requested consideration. The anti-solicitation agreements often went substantially
6  further and became effectively no-hire agreements, or no-hire without permission. The
7  Defendants' understandings, agreements, and mutual assurances to restrict the recruitment and
8  hiring of each other's employees are evidenced by a series of explicit communications between
9  and among Defendants, had common (if not identical) material terms and features, and together
10 had a common economic impact to the detriment of Defendants' employees.

11 All of Defendants' employees were subject to Defendants' scheme, as the understandings,
12 agreements, and mutual assurances were unlimited in scope by geography, job, function, or time
13 period. The prohibitions also applied to all subsidiaries of Defendants. Defendants' agreements
14 were naked restraints of trade that were not tailored, necessary, or ancillary to any legitimate
15 cooperation or collaboration between or among the Defendants, and were without legitimate
16 procompetitive justification.

17 After entering into anti-solicitation agreements, Defendants' senior executives
18 implemented them throughout their respective companies (and third party recruiters working on
19 Defendants' behalf), and policed each other's adherence to them. Violations and suspected
20 violations were reported by Defendants' senior executives, who then took immediate steps to
21 address the violations or suspected violations and ensure that the violations would not be
22 repeated.

23 Further, the Defendant co-conspirators agreed to conceal the existence, nature, and scope
24 of their scheme and took affirmative steps to do so. The agreements continued at least until
25 Defendants received Civil Investigative Demands from the United States Department of Justice,
26 and continued no later than September 24, 2010, the date of the consent decree.

27 **Beginning of the Conspiracy: Lucasfilm and Pixar.**

28 The conspiracy began in the mid 1980's, shortly after Steve Jobs purchased the entity

1  from Lucasfilm that became Pixar.  George Lucas and Ed Catmull agreed that Lucasfilm and
2  Pixar would not compete for each other's employees.  Mr. Lucas and Mr. Catmull agreed that:
3  neither company would solicit the other's employees; the companies would take affirmative steps
4  to avoid bidding wars for employees that would result in increasing each other's pay structure
5  (this would later be formalized into an express agreement not to counter-offer above the other
6  companies' original offer); and the companies would notify the other in cases when an employee
7  actively sought to work for the other.  With respect to the notification provision, a candidate of
8  one company applying to the other company would be instructed to inform his or her current
9  manager that he or she was seeking employment with the other company.  The company
10 considering the other's employee as a job candidate was to call the candidate's present company
11 upon receipt of the candidate's application, and again in the event that it chose to extend a job
12 offer, even if the candidate applied for a job on his or her own initiative.  Mr. Lucas and Mr.
13 Catmull directed their respective and relevant senior executives to implement and enforce the
14 anti-solicitation agreement, including Lori McAdams, Sharon Coker, Jim Morris, and Micheline
15 Chau.

16 **Steve Jobs and Apple.**

17     The best evidence available shows that, no later than January 2004, the conspiracy
18 expanded to include Apple.  Pixar and Apple agreed not to solicit employees of the other
19 company, and, in any case, Pixar could not hire any Apple employee without Steve Jobs'
20 approval.  The agreement was subsequently re-affirmed by Lori McAdams and Danielle Lambert,
21 among others.  The anti-solicitation agreement between Pixar and Apple was expressly designed
22 to mimic the anti-solicitation agreement between Pixar and Lucasfilm.

23 **Conspiracy Expands to Include Google and Intel.**

24     In February 2005, an "irate" Steve Jobs called Sergey Brin of Google to demand that
25 Google and Apple agree not to compete for each other's employees, and to demand that Google
26 immediately withdraw pending offers of employment to Apple employees.  Steve Jobs threatened
27 that, if Google did not agree, there would be "war" between the companies.  Google agreed to
28 Steve Jobs' demands.  The individuals who participated in forming and approving the agreement

between Google and Apple included: Steve Jobs, members of Google's Executive Management Group (including Sergey Brin, Larry Page, Eric Schmidt, and others), and Bill Campbell.

Members of Google's Board of Directors, including Intel's CEO Paul Otellini, were informed of and approved Google's decision to enter into an anti-solicitation agreement with Apple. At the same time (February 2005), Google placed Intel on its Do Not Call List. In an email to Eric Schmidt in May 2006, Paul Otellini confirmed that a "no recruiting agreement" existed between Intel and Google, and sought to ensure that Google was enforcing it. In June 07, Eric Schmidt confirmed in an email to Paul Otellini that Intel had been on Google's "Do Not Call List since the policy was created" (February 2005). In September 2007, Paul Otellini referred to the agreement between the companies as a "handshake 'no recruit' between Eric [Schmidt] and myself. I would not like this broadly known." The individuals who participated in forming and approving the agreement between Google and Intel included Eric Schmidt and Paul Otellini.

**Adobe.**

Three months after Steve Jobs succeeded in reaching an anti-solicitation agreement with Google, he applied similar tactics with Adobe to induce it into entering into an identical agreement with Apple. By no later than May 27, 2005, Adobe and Apple agreed not to solicit any employees of the other. As implemented, the agreement also prevented the hiring of each other's employees. The agreement was made between Steve Jobs and Bruce Chizen, and was implemented by Shantanu Narayen, Danielle Lambert, Theresa Townsley, and Donna Morris, among others.

**Intuit.**

After participating in the formation and implementation of the anti-solicitation agreements among Apple, Google, and Intel, Bill Campbell insisted that Google and Intuit agree to an identical agreement. No later than June 2007, Google and Intuit agreed to an anti-solicitation agreement. The agreement was made among Bill Campbell, Eric Schmidt, and Shona Brown.

**INTERROGATORY NO. 16:**

Separately for each agreement identified in response to Interrogatory No. 15, state all facts that support Your contention that the agreement existed and was unlawful, including, without

1 limitation, identifying supporting Documents.

2 **ANSWER TO INTERROGATORY NO. 16:**

3     Plaintiffs object to Interrogatory No. 16 as a premature contention interrogatory.

4     Plaintiffs also object to this Interrogatory to the extent that it calls for information
5 protected by the attorney-client privilege and/or the work-product doctrine. Plaintiff further
6 objects to the extent the information requested will be the subject of expert reports and testimony.
7 Such expert opinion will be disclosed in accordance with the Orders of the Court and the
8 applicable Rules of Civil Procedure. Plaintiffs further object to the extent that such "facts" are in
9 Defendants' possession and have not yet been produced or otherwise discovered in this case.

10     Pursuant to discussions between Plaintiffs' counsel and Defendants' counsel, Plaintiffs
11 shall provide a response to this Interrogatory to Defendants by June 7, 2013.

| | | |
|---|---|---|
| 1 | Dated: May 24, 2013 | JOSEPH SAVERI LAW FIRM |
| 2 | | |
| 3 | | By: /s/ Joseph R. Saveri |
| 4 | | |
| 5 | | Joseph R. Saveri (State Bar No. 130064) |
| | | Lisa J. Leebove (State Bar No. 186705) |
| 6 | | James G. Dallal (State Bar No. 277826) |
| | | JOSEPH SAVERI LAW FIRM |
| 7 | | 505 Montgomery Street, Suite 625 |
| | | San Francisco, California 94111 |
| 8 | | Telephone: (415) 500-6800 |
| | | Facsimile: (415) 500-6803 |

Richard M. Heimann (State Bar No. 63607)
Kelly M. Dermody (State Bar No. 171716)
Eric B. Fastiff (State Bar No. 182260)
Brendan P. Glackin (State Bar No. 199643)
Dean M. Harvey (State Bar No. 250298)
Anne B. Shaver (State Bar No. 255928)
LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Telephone: (415) 956-1000
Facsimile: (415) 956-1008

*Co-Lead Counsel for Plaintiff Class*

Eric L. Cramer
Sarah R. Schalman-Bergen
BERGER & MONTAGUE, P.C.
22 Locust Street
Philadelphia, PA 19103
Telephone: (800) 424-6690
Facsimile: (215) 875-4604

Linda P. Nussbaum (pro hac vice)
Peter A. Barile III (pro hac vice)
GRANT & EISENHOFER P.A.
5 Lexington Avenue, 29th Floor
New York, NY 10017
Telephone: (646) 722-8500
Facsimile: (646) 722-8501

*Class Counsel*