# EXHIBIT 12

# BROWN DECLARATION IN SUPPORT OF MOTION TO EXCLUDE

```
 1              UNITED STATES DISTRICT COURT

 2            NORTHERN DISTRICT OF CALIFORNIA

 3                 SAN JOSE DIVISION

 4

 5   IN RE: HIGH-TECH EMPLOYEE       )

 6   ANTITRUST LITIGATION            )

 7                                   )  No.  11-CV-2509-LHK

 8   THIS DOCUMENT RELATES TO:       )

 9   ALL ACTIONS.                    )

10   _____ )

11

12              DEPOSITION OF RANNA PRAJAPATI

13             Thursday, February 21, 2013

14

15

16

17

18

19

20

21

22

23

24    Reported By:

25    KATHLEEN WILKINS, CSR #10068, RPR-RMR-CRR-CCRR-CLR
```

| | | |
|---|---|---|
| 11:13:21 | 1 | on joint projects) might happen |
| 11:13:23 | 2 | again." |
| 11:13:29 | 3 | Q.    Do you, in your own mind, as you sit |
| 11:13:31 | 4 | here today, recall seeing or receiving such a |
| 11:13:36 | 5 | communication? |
| 11:13:37 | 6 | MR. SHAH:  Objection.  Again, you're |
| 11:13:41 | 7 | quoting from a document which you haven't shown to |
| 11:13:43 | 8 | the witness, and so lacks foundation.  And also, |
| 11:13:49 | 9 | the document speaks for itself. |
| 11:13:53 | 10 | THE WITNESS:  May I refer to the |
| 11:13:54 | 11 | document? |
| 11:13:57 | 12 | BY MR. DALLAL: |
| 11:13:57 | 13 | Q.    You can refer to the document if you |
| 11:13:59 | 14 | like.  It's quoting the document.  But the |
| 11:14:01 | 15 | question is whether you recall seeing or receiving |
| 11:14:05 | 16 | such a communication. |
| 11:14:09 | 17 | MR. SHAH:  I have the same objection. |
| 11:14:11 | 18 | THE WITNESS:  Yes. |
| 11:14:12 | 19 | BY MR. DALLAL: |
| 11:14:19 | 20 | Q.    And when you recall seeing or receiving |
| 11:14:21 | 21 | such a communication, do you recall seeing or |
| 11:14:27 | 22 | receiving communication from the Pixar complainant |
| 11:14:33 | 23 | directly, or from an Intel employee reporting on a |
| 11:14:38 | 24 | conversation with a Pixar complainant? |
| 11:14:40 | 25 | MR. SHAH:  Objection.  Again, you're |

| | | |
|---|---|---|
| 11:14:44 | 1 | asking about a quote from a document that you |
| 11:14:47 | 2 | haven't shown to the witness, so lacks foundation. |
| 11:14:51 | 3 | And the document speaks for itself. |
| 11:14:59 | 4 | THE WITNESS:  Yes, I remember it. |
| 11:15:02 | 5 | BY MR. DALLAL: |
| 11:15:02 | 6 | Q.    Do you recall whether you saw a |
| 11:15:05 | 7 | communication from a Pixar complainant or from an |
| 11:15:10 | 8 | Intel employee reporting on a conversation with a |
| 11:15:12 | 9 | Pixar complainant, or do you not recall either |
| 11:15:17 | 10 | way? |
| 11:15:17 | 11 | MR. SHAH:  Same objection. |
| 11:15:19 | 12 | THE WITNESS:   I -- I recall on an Intel |
| 11:15:22 | 13 | employee. |
| 11:15:23 | 14 | BY MR. DALLAL: |
| 11:15:36 | 15 | Q.    So is it your understanding that if |
| 11:15:43 | 16 | Intel agreed not to employ cold calling in |
| 11:15:50 | 17 | attempts to recruit Pixar employees, that Intel |
| 11:15:55 | 18 | would have a better chance of collaborating |
| 11:16:00 | 19 | further or working further with Pixar? |
| 11:16:03 | 20 | MR. SHAH:  Objection.  Assumes facts not |
| 11:16:05 | 21 | in evidence.  Lacks foundation and calls for a |
| 11:16:11 | 22 | legal conclusion. |
| 11:16:19 | 23 | THE WITNESS:  So my goal was to preserve |
| 11:16:21 | 24 | the collaboration, or goals to preserve the |
| 11:16:25 | 25 | collaborative efforts and just maintain that. |

| | | |
|---|---|---|
| 11:16:28 | 1 | BY MR. DALLAL: |
| 11:16:29 | 2 | Q.    And was it your understanding that Intel |
| 11:16:34 | 3 | not using cold calling to recruit Pixar employees |
| 11:16:41 | 4 | would support the purpose of protecting the |
| 11:16:50 | 5 | collaboration? |
| 11:16:52 | 6 | MR. SHAH:  Objection.  Calls for a legal |
| 11:16:53 | 7 | conclusion.  Lacks foundation. |
| 11:16:58 | 8 | THE WITNESS:  Yes.  As it was focused on |
| 11:16:59 | 9 | a specific team, the RenderMan team. |
| 11:17:16 | 10 | BY MR. DALLAL: |
| 11:17:17 | 11 | Q.    So in what way would such a policy |
| 11:17:23 | 12 | support the purpose of preserving the |
| 11:17:26 | 13 | collaborative efforts between Intel and Pixar? |
| 11:17:32 | 14 | MR. SHAH:  Objection.  Vague and |
| 11:17:32 | 15 | ambiguous. |
| 11:17:37 | 16 | THE WITNESS:  Can you rephrase the |
| 11:17:38 | 17 | question?  What exactly are you -- I'm sorry.  I |
| 11:17:43 | 18 | didn't understand, like -- |
| 11:17:47 | 19 | BY MR. DALLAL: |
| 11:17:47 | 20 | Q.    That's okay.  I can rephrase. |
| 11:18:11 | 21 | Given your stated goal of preserving the |
| 11:18:15 | 22 | collaboration between Intel and Pixar, my question |
| 11:18:20 | 23 | is, how would a policy of not using cold calling |
| 11:18:27 | 24 | to recruit Pixar employees serve that purpose? |
| 11:18:33 | 25 | MR. SHAH:  Objection.  Vague and |

| | | |
|---|---|---|
| 11:18:34 | 1 | ambiguous.  Mischaracterizes previous testimony. |
| 11:18:41 | 2 | THE WITNESS:  It's helping to preserve |
| 11:18:44 | 3 | the relationship.  I mean, and it's not -- as I |
| 11:18:49 | 4 | mentioned before, it wasn't -- it was an ask by |
| 11:18:52 | 5 | them to not cold call, in particular, people from |
| 11:19:01 | 6 | a specific team that was small to begin with, and |
| 11:19:04 | 7 | people that we had been collaborating with on |
| 11:19:07 | 8 | getting feedback on Larrabee, for example.  It |
| 11:19:10 | 9 | just helps, you know, maintain the relationship |
| 11:19:13 | 10 | and continue the collaborative efforts versus just |
| 11:19:18 | 11 | stopping them. |
| 11:19:18 | 12 | BY MR. DALLAL: |
| 11:19:23 | 13 | Q.    And when you say "an ask," that refers |
| 11:19:27 | 14 | to a request? |
| 11:19:29 | 15 | A.    A request. |
| 11:19:30 | 16 | Q.    Okay.  So is it fair to say that you |
| 11:19:45 | 17 | thought that honoring their request would help |
| 11:19:49 | 18 | preserve the relationship? |
| 11:19:52 | 19 | MR. SHAH:  Objection.  Vague and |
| 11:19:54 | 20 | ambiguous. |
| 11:19:59 | 21 | THE WITNESS:  Yes.  Yes, I did. |
| 11:20:30 | 22 | MS. RICHARDSON:  I'm sorry to interrupt, |
| 11:20:30 | 23 | but could the witness just speak up a bit?  It's |
| 11:20:33 | 24 | hard to hear over the phone. |
| 11:20:35 | 25 | THE WITNESS:  Sure.  Can you hear me |

| | | |
|---|---|---|
| 02:17:52 | 1 | A.    No.  Just to be aware that there was |
| 02:17:54 | 2 | somebody within Intel who was going to give Greg |
| 02:17:59 | 3 | Brandeau a call and that I would like to know, you |
| 02:18:01 | 4 | know, the context of that call. |
| 02:18:03 | 5 | Q.    Okay.  Why was somebody going to give |
| 02:18:06 | 6 | Greg Brandeau a call? |
| 02:18:11 | 7 | MR. SHAH:  Object to the form of the |
| 02:18:11 | 8 | question. |
| 02:18:11 | 9 | Are you talking about this specific |
| 02:18:13 | 10 | e-mail? |
| 02:18:16 | 11 | MR. DALLAL:  Well, I'm talking about the |
| 02:18:19 | 12 | specific call that's contemplated, yes. |
| 02:18:21 | 13 | MR. SHAH:  In this e-mail? |
| 02:18:23 | 14 | MR. DALLAL:  Yes. |
| 02:18:23 | 15 | MR. SHAH:  Okay. |
| 02:18:29 | 16 | THE WITNESS:  So, I'm sorry, the |
| 02:18:30 | 17 | question was, did I know the specifics of this |
| 02:18:32 | 18 | call? |
| 02:18:34 | 19 | BY MR. DALLAL: |
| 02:18:34 | 20 | Q.    No. |
| 02:18:34 | 21 | The question is why was somebody |
| 02:18:40 | 22 | going -- somebody at Intel going to give Greg |
| 02:18:44 | 23 | Brandeau a call? |
| 02:18:47 | 24 | A.    To address his concerns about another |
| 02:18:51 | 25 | incident that had happened with regards to hiring. |

| | | |
|---|---|---|
| 02:18:59 | 1 | Q.    Okay.  Do you recall any specifics about |
| 02:19:03 | 2 | that incident? |
| 02:19:09 | 3 | MR. SHAH:  Object to form.  Vague and |
| 02:19:11 | 4 | ambiguous. |
| 02:19:15 | 5 | THE WITNESS:  Yes. |
| 02:19:16 | 6 | BY MR. DALLAL: |
| 02:19:16 | 7 | Q.    All right.  Please describe the incident |
| 02:19:18 | 8 | to which you're referring. |
| 02:19:23 | 9 | A.    I received a call from Greg Brandeau |
| 02:19:27 | 10 | citing concerns about Intel possibly hiring a few |
| 02:19:34 | 11 | of the folks from the RenderMan team. |
| 02:19:41 | 12 | Q.    Okay.  Was Intel at that time under any |
| 02:19:44 | 13 | obligation not to hire people from Pixar or the |
| 02:19:50 | 14 | RenderMan team? |
| 02:19:51 | 15 | MR. SHAH:  Objection.  Lacks foundation. |
| 02:19:54 | 16 | Vague and ambiguous. |
| 02:19:57 | 17 | THE WITNESS:  No. |
| 02:20:25 | 18 | BY MR. DALLAL: |
| 02:20:25 | 19 | Q.    So if Intel was not so obligated, why |
| 02:20:36 | 20 | did you want to call or have someone at Intel call |
| 02:20:40 | 21 | Greg Brandeau to address his concerns? |
| 02:20:44 | 22 | MR. SHAH:  Objection.  Mischaracterizes |
| 02:20:46 | 23 | previous testimony or assumes facts not in |
| 02:20:48 | 24 | evidence. |
| 02:20:57 | 25 | THE WITNESS:  I didn't have this |

| | | |
|---|---|---|
| 02:20:59 | 1 | gentleman, Jay Connelly, call him on my behalf. |
| 02:21:02 | 2 | He wanted to reach out to Greg and call on his |
| 02:21:05 | 3 | behalf.  So I don't know what motivated why, other |
| 02:21:08 | 4 | than for Greg not to reach out to our executives |
| 02:21:13 | 5 | directly before we had the full -- the facts on |
| 02:21:15 | 6 | what was going on. |
| 02:21:31 | 7 | BY MR. DALLAL: |
| 02:21:32 | 8 | Q.    So if you look at the top e-mail, which |
| 02:21:33 | 9 | appears to be Jay Connelly's forward to you, he |
| 02:21:43 | 10 | states: |
| 02:21:43 | 11 | "Ranna, I know Greg and would |
| 02:21:45 | 12 | like to give him a ring to diffuse |
| 02:21:47 | 13 | his concerns before he starts |
| 02:21:49 | 14 | calling Pat or Renee.  All the |
| 02:21:52 | 15 | ex-Pixar folks have come to my |
| 02:21:54 | 16 | group, so it makes sense.  Message |
| 02:21:56 | 17 | is that we have only hired two |
| 02:21:59 | 18 | Pixar heads, and in both cases |
| 02:22:00 | 19 | they came to us based on long-term |
| 02:22:03 | 20 | relationships with Matt and Craig. |
| 02:22:05 | 21 | Makes sense?" |
| 02:22:14 | 22 | So first of all, when you received this |
| 02:22:16 | 23 | e-mail -- well, all right, first of all, did you |
| 02:22:21 | 24 | receive this e-mail? |
| 02:22:23 | 25 | A.    Yes. |

| | | |
|---|---|---|
| 02:22:24 | 1 | Q.    Okay.  And then when you received this |
| 02:22:25 | 2 | e-mail, did you interpret Pat to mean Pat |
| 02:22:30 | 3 | Gelsinger? |
| 02:22:35 | 4 | A.    Yes. |
| 02:22:35 | 5 | Q.    And Renee to mean Renee James? |
| 02:22:38 | 6 | A.    Yes. |
| 02:22:42 | 7 | Q.    Okay.  So at the time, was Mr. Gelsinger |
| 02:22:57 | 8 | in your direct chain of command? |
| 02:23:02 | 9 | A.    No. |
| 02:23:16 | 10 | Q.    Do you recall if you responded to |
| 02:23:17 | 11 | Mr. Connelly? |
| 02:23:23 | 12 | A.    I don't remember.  If I -- either it was |
| 02:23:32 | 13 | via e-mail that I don't remember or via phone, I |
| 02:23:35 | 14 | picked up the phone and called him.  I don't |
| 02:23:37 | 15 | remember. |
| 02:23:38 | 16 | Q.    One way or the other? |
| 02:23:39 | 17 | A.    Yes. |
| 02:23:52 | 18 | MR. DALLAL:  Okay.  Set that aside. |
| 02:23:54 | 19 | Please mark the next one. |
| 02:23:55 | 20 | (Whereupon, Deposition Exhibit 994 was |
| 02:23:55 | 21 | marked for identification.) |
| 02:23:57 | 22 | BY MR. DALLAL: |
| 02:24:05 | 23 | Q.    Okay.  I've handed you Exhibit 994. |
| 02:24:07 | 24 | It's a two-page document beginning with |
| 02:24:10 | 25 | 76600DOC000051. |

| | | |
|---|---|---|
| 02:24:31 | 1 | A.    Okay. |
| 02:24:36 | 2 | Q.    So does this -- well, do you recognize |
| 02:24:39 | 3 | this document? |
| 02:24:40 | 4 | A.    I do. |
| 02:24:41 | 5 | Q.    Okay.  And it appears to be, in part, an |
| 02:24:47 | 6 | e-mail chain between you and Jay Connelly. |
| 02:24:52 | 7 | Did you send the e-mails that the |
| 02:24:56 | 8 | document indicates he was sending and receive the |
| 02:24:59 | 9 | ones that it indicates he was receiving? |
| 02:25:00 | 10 | A.    Yes. |
| 02:25:01 | 11 | Q.    Okay.  So does this refresh your |
| 02:25:11 | 12 | recollection as to whether or not you contacted -- |
| 02:25:14 | 13 | A.    Yes. |
| 02:25:14 | 14 | Q.    -- Jay Connelly? |
| 02:25:17 | 15 | Okay.  And so it appears there was some |
| 02:25:33 | 16 | confusion about the phone number. |
| 02:25:38 | 17 | A.    Yes. |
| 02:25:41 | 18 | Q.    So if you go to the second page, and |
| 02:25:44 | 19 | it's -- unfortunately, it's broken across the page |
| 02:25:47 | 20 | break. |
| 02:25:48 | 21 | A.    Mh-hmm. |
| 02:25:50 | 22 | Q.    So it's your -- the prior page indicates |
| 02:25:52 | 23 | it's an e-mail from you to Jay Connelly, and it |
| 02:25:55 | 24 | says, "Hi Jay." |
| 02:25:56 | 25 | And then you say: |

| | | |
|---|---|---|
| 02:25:57 | 1 | "Thank you so much for |
| 02:25:58 | 2 | reaching out to me and letting me |
| 02:26:00 | 3 | know you'd be willing to call him. |
| 02:26:03 | 4 | Yes, after Greg B. had informed he |
| 02:26:05 | 5 | was going to send an e-mail to |
| 02:26:07 | 6 | either Pat or Justin regarding why |
| 02:26:10 | 7 | was 'Intel recruiting from our |
| 02:26:14 | 8 | RenderMan team,' I wanted to |
| 02:26:17 | 9 | understand the details prior to |
| 02:26:19 | 10 | responding to this claim.  And if |
| 02:26:21 | 11 | these folks are in your group, I |
| 02:26:22 | 12 | think it would be better if the |
| 02:26:24 | 13 | messaging comes from you." |
| 02:26:27 | 14 | You provide a number.  You say, "Please |
| 02:26:29 | 15 | let me know how your conversation goes." |
| 02:26:45 | 16 | So when you said, "I wanted to |
| 02:26:48 | 17 | understand the details prior to responding to this |
| 02:26:51 | 18 | claim," what did you mean by "responding to this |
| 02:26:57 | 19 | claim"? |
| 02:27:02 | 20 | A.    In my phone conversation with Greg |
| 02:27:04 | 21 | Brandeau when he called me up to inform me or ask |
| 02:27:08 | 22 | me what was going on, it caught me off guard |
| 02:27:10 | 23 | because I didn't know this was going on within |
| 02:27:13 | 24 | Pixar. |
| 02:27:14 | 25 | I had no knowledge of -- prior knowledge |

| | | |
|---|---|---|
| 02:27:15 | 1 | of it, and I wanted to understand what group |
| 02:27:18 | 2 | within Intel was, you know -- that he was |
| 02:27:21 | 3 | referring to or who was hiring from Intel and what |
| 02:27:28 | 4 | group these people were going into and just -- |
| 02:27:32 | 5 | just background information, because I was caught |
| 02:27:35 | 6 | off guard. |
| 02:27:37 | 7 | Q.    Okay. |
| 02:27:39 | 8 | A.    So because the couple individuals that |
| 02:27:41 | 9 | Jay is referring to within this e-mail are within |
| 02:27:43 | 10 | his organization, that helped make a little more |
| 02:27:46 | 11 | sense.  But before responding back in any formal |
| 02:27:48 | 12 | manner to Greg, I wanted to make sure I had done |
| 02:27:51 | 13 | my homework and got the facts before saying |
| 02:27:54 | 14 | anything. |
| 02:27:57 | 15 | Q.    So when you say you were caught off |
| 02:28:00 | 16 | guard, were you surprised that Intel might be |
| 02:28:05 | 17 | hiring Pixar employees? |
| 02:28:10 | 18 | A.    I didn't know, so yes. |
| 02:28:20 | 19 | Q.    Did that worry you? |
| 02:28:28 | 20 | A.    Worry me how?  Worry just in general? |
| 02:28:31 | 21 | Worry about my account management or -- |
| 02:28:36 | 22 | Q.    About anything. |
| 02:28:41 | 23 | A.    A little bit, yes. |
| 02:28:43 | 24 | Q.    So in what way were you worried by |
| 02:28:47 | 25 | learning that Intel might be hiring Pixar |

| | | |
|---|---|---|
| 02:28:52 | 1 | employees? |
| 02:28:53 | 2 | A.    In that it might have an effect on the |
| 02:29:00 | 3 | various collaborative relationships, you know, we |
| 02:29:02 | 4 | have going on with Pixar from an engineering |
| 02:29:05 | 5 | standpoint and just preserving the relationship in |
| 02:29:11 | 6 | all. |
| 02:29:12 | 7 | And, you know, we get very valuable |
| 02:29:13 | 8 | feedback from them that we can, you know, put |
| 02:29:17 | 9 | towards our emerging technologies.  So that's what |
| 02:29:20 | 10 | I was worried about. |
| 02:29:22 | 11 | Q.    Did you regard Intel's hiring of Pixar |
| 02:29:26 | 12 | employees as inappropriate? |
| 02:29:30 | 13 | MR. SHAH:  Object to form. |
| 02:29:37 | 14 | THE WITNESS:  No. |
| 02:29:38 | 15 | BY MR. DALLAL: |
| 02:29:52 | 16 | Q.    So if you turn back to the first page, |
| 02:30:00 | 17 | there's another -- there's -- the last e-mail from |
| 02:30:03 | 18 | you, it's the second e-mail from the top of the |
| 02:30:06 | 19 | page, the one on Friday, October 10 at 11:08 a.m. |
| 02:30:12 | 20 | Do you see that? |
| 02:30:13 | 21 | A.    Mh-hmm. |
| 02:30:14 | 22 | Q.    And the second line of that says: |
| 02:30:16 | 23 | "FYI, I met with Greg this |
| 02:30:19 | 24 | morning and explained our position |
| 02:30:20 | 25 | on this matter and informed him |

| | | |
|---|---|---|
| 02:30:22 | 1 | you were going to call him.  He is |
| 02:30:25 | 2 | cool with everything, so we are |
| 02:30:26 | 3 | good." |
| 02:30:34 | 4 | Do you recall talking with Greg Brandeau |
| 02:30:36 | 5 | the morning of Friday, October 10th, 2008? |
| 02:30:41 | 6 | A.   Yes. |
| 02:30:43 | 7 | Q.   Do you recall how long you talked with |
| 02:30:44 | 8 | him? |
| 02:30:45 | 9 | A.   No. |
| 02:30:47 | 10 | Q.   Do you recall what you discussed with |
| 02:30:48 | 11 | him? |
| 02:30:54 | 12 | A.   Vaguely. |
| 02:30:56 | 13 | Q.   What was that? |
| 02:30:57 | 14 | A.   Just that Jay Connelly was going to go |
| 02:31:01 | 15 | ahead and give him a call, he understood the |
| 02:31:04 | 16 | situation, and the individuals that Greg was |
| 02:31:06 | 17 | referring to were within his organization.  So Jay |
| 02:31:09 | 18 | could provide a little bit more context around |
| 02:31:12 | 19 | what was going on.  And Greg was okay with that. |
| 02:31:24 | 20 | Q.   So is it fair to say that you thought |
| 02:31:31 | 21 | that it would be beneficial to have someone call |
| 02:31:37 | 22 | Greg Brandeau in addition to you about this |
| 02:31:40 | 23 | matter? |
| 02:31:42 | 24 | A.   Yes. |
| 02:31:43 | 25 | Q.   Okay.  You can put that aside. |

| | | |
|---|---|---|
| 02:31:48 | 1 | (Whereupon, Deposition Exhibit 995 was |
| 02:31:48 | 2 | marked for identification.) |
| 02:32:24 | 3 | BY MR. DALLAL: |
| 02:32:24 | 4 | Q.    I've just handed you Exhibit 995.  It's |
| 02:32:27 | 5 | a one-page document that begins with |
| 02:32:29 | 6 | 76600DOC000281 and ends with that number, for that |
| 02:32:37 | 7 | matter. |
| 02:32:39 | 8 | So please let me know when you've had -- |
| 02:32:45 | 9 | A.    Yeah. |
| 02:32:46 | 10 | Q.    -- a chance to read. |
| 02:32:48 | 11 | A.    Yes. |
| 02:32:49 | 12 | Q.    So if you look at the previous document |
| 02:33:03 | 13 | again, it appears that your message |
| 02:33:09 | 14 | asking -- strike that. |
| 02:33:15 | 15 | It appears that your message providing |
| 02:33:18 | 16 | the number for Greg Brandeau to Jay Connelly |
| 02:33:23 | 17 | which, in fact, wound up being the wrong number, |
| 02:33:28 | 18 | neither here nor there, was sent on Thursday, |
| 02:33:33 | 19 | October 9, at 5:35 p.m. |
| 02:33:42 | 20 | And then your e-mail to Mr. Connelly |
| 02:33:47 | 21 | saying that you'd spoken on the phone with Greg |
| 02:33:49 | 22 | was from 11:00 a.m. the following morning, Friday, |
| 02:33:54 | 23 | October 10th, 2008. |
| 02:34:02 | 24 | So turning back to Exhibit 995, first of |
| 02:34:05 | 25 | all, do you recognize this document? |

| | | |
|---|---|---|
| 02:34:07 | 1 | A.    Yes. |
| 02:34:08 | 2 | MR. SHAH:   I'm going to object to the |
| 02:34:11 | 3 | prelude to your question because I think you |
| 02:34:13 | 4 | mischaracterized the document or misstated what |
| 02:34:16 | 5 | was in the document. |
| 02:34:17 | 6 | MR. DALLAL:   How so? |
| 02:34:18 | 7 | MR. SHAH:   You said -- well, maybe I -- |
| 02:34:23 | 8 | you said that spoke on the phone with Greg |
| 02:34:26 | 9 | Brandeau, and it says I met with Greg Brandeau -- |
| 02:34:31 | 10 | Greg this morning.   So that's all. |
| 02:34:33 | 11 | MR. DALLAL:   Okay. |
| 02:34:43 | 12 | Q.    So Exhibit 995, did you receive this |
| 02:34:45 | 13 | e-mail?   Granted you were CC'd, but do you recall |
| 02:34:49 | 14 | receiving it? |
| 02:34:52 | 15 | A.    Yes. |
| 02:34:52 | 16 | Q.    Okay.   If you look at the time stamp, it |
| 02:35:02 | 17 | is -- it states 10/10/2008, 12:30 a.m.   So it |
| 02:35:08 | 18 | appears this was sent very late Thursday night. |
| 02:35:22 | 19 | Do you recall if you read this e-mail |
| 02:35:23 | 20 | prior to speaking with Mr. Brandeau on the morning |
| 02:35:32 | 21 | of Friday the 10th? |
| 02:35:33 | 22 | A.    Yes. |
| 02:35:34 | 23 | Q.    All right.   The e-mail reads -- and it's |
| 02:35:45 | 24 | addressed to Pat Gelsinger. |
| 02:35:48 | 25 | "Hi Pat, Over the past 6-9 |

| | | |
|---|---|---|
| 02:35:50 | 1 | months, Intel has made offers to 3 |
| 02:35:53 | 2 | engineers who work in our |
| 02:35:54 | 3 | RenderMan team.  Given that Pixar |
| 02:35:56 | 4 | and Intel do have a close |
| 02:35:59 | 5 | relationship, could you ask the |
| 02:36:00 | 6 | recruiters inside of Intel to |
| 02:36:02 | 7 | please stop recruiting our people. |
| 02:36:05 | 8 | I am not saying the crazy thing |
| 02:36:06 | 9 | people at Pixar shouldn't be |
| 02:36:08 | 10 | allowed to apply to job postings. |
| 02:36:11 | 11 | I am simply asking that you don't |
| 02:36:13 | 12 | cold call our people.  Especially |
| 02:36:14 | 13 | Dana's team which is only 15 |
| 02:36:18 | 14 | people in the first place! |
| 02:36:21 | 15 | Thanks!" |
| 02:36:47 | 16 |     So when you read the request, "could you |
| 02:36:51 | 17 | ask the recruiters inside of Intel to please stop |
| 02:36:53 | 18 | recruiting our people," or when you read that |
| 02:37:05 | 19 | request at the time, did you take it to apply to |
| 02:37:17 | 20 | all Pixar employees generally? |
| 02:37:18 | 21 |     MR. SHAH:  Objection.  Calls for |
| 02:37:19 | 22 | speculation. |
| 02:37:23 | 23 |     THE WITNESS:  No. |
| 02:37:28 | 24 | BY MR. DALLAL: |
| 02:37:28 | 25 |     Q.   So did you think the request was |

| | | |
|---|---|---|
| 02:37:31 | 1 | limited? |
| 02:37:33 | 2 | A.    Based on this e-mail, yes.  It was |
| 02:37:34 | 3 | limited. |
| 02:37:36 | 4 | Q.    In what way? |
| 02:37:37 | 5 | A.    My interpretation of it was limited |
| 02:37:42 | 6 | based on his reference to the RenderMan team. |
| 02:37:52 | 7 | Q.    So you're referring to in the prior |
| 02:37:54 | 8 | sentence? |
| 02:37:57 | 9 | A.    Yes.  Yes. |
| 02:38:14 | 10 | Q.    So to be clear, the first sentence says, |
| 02:38:17 | 11 | "Over the past 6-9 months, Intel has made offers |
| 02:38:19 | 12 | to 3 engineers who work in our RenderMan team." |
| 02:38:24 | 13 | And your testimony is that, based on |
| 02:38:30 | 14 | that intro and within that context, the following |
| 02:38:35 | 15 | sentence, "Given that Pixar and Intel do have a |
| 02:38:40 | 16 | close relationship, could you ask the recruiters |
| 02:38:41 | 17 | inside of Intel to please stop recruiting our |
| 02:38:45 | 18 | people" is limited to only the RenderMan team? |
| 02:38:48 | 19 | MR. SHAH:  Objection.  Asked and |
| 02:38:49 | 20 | answered. |
| 02:38:50 | 21 | THE WITNESS:  That is my interpretation, |
| 02:38:51 | 22 | yes. |
| 02:39:05 | 23 | BY MR. DALLAL: |
| 02:39:05 | 24 | Q.    What did you think of this request when |
| 02:39:08 | 25 | you read it? |

| | | |
|---|---|---|
| 02:39:16 | 1 | A.    I mean, if I were to interpret what he |
| 02:39:21 | 2 | was -- he was saying, I mean, I interpret it as |
| 02:39:24 | 3 | he's trying to preserve his team, he's trying to |
| 02:39:27 | 4 | preserve his talent, and, I mean, I understand |
| 02:39:30 | 5 | that.  It's a very specific skill set that the |
| 02:39:34 | 6 | folks in this group had.  And he's also trying to |
| 02:39:42 | 7 | preserve, you know, the working relationship or |
| 02:39:44 | 8 | partnership. |
| 02:39:51 | 9 | Q.    So is it fair to say you could see where |
| 02:39:53 | 10 | he was coming from? |
| 02:39:57 | 11 | A.    Yes. |
| 02:40:02 | 12 | Q.    So you regarded this request as |
| 02:40:05 | 13 | understandable? |
| 02:40:07 | 14 | MR. SHAH:  Objection.  Asked and |
| 02:40:07 | 15 | answered. |
| 02:40:10 | 16 | THE WITNESS:  What do you mean, |
| 02:40:10 | 17 | "understandable"?  I don't ... |
| 02:40:17 | 18 | BY MR. DALLAL: |
| 02:40:24 | 19 | Q.    I'll ask a different question. |
| 02:40:25 | 20 | Did you regard this request as improper |
| 02:40:27 | 21 | in any way? |
| 02:40:30 | 22 | MR. SHAH:  Objection.  Vague and |
| 02:40:31 | 23 | ambiguous. |
| 02:40:34 | 24 | THE WITNESS:  No. |
| 02:40:46 | 25 | BY MR. DALLAL: |

| | | |
|---|---|---|
| 02:40:46 | 1 | Q.    Did it upset you to receive this |
| 02:40:49 | 2 | request? |
| 02:41:01 | 3 | A.    It did upset me, because, once again, my |
| 02:41:04 | 4 | goal is to manage and preserve the account |
| 02:41:07 | 5 | relationship or the relationship between Intel and |
| 02:41:09 | 6 | Pixar. |
| 02:41:11 | 7 | And, you know, my job is to do what's in |
| 02:41:15 | 8 | the best interest of my customer, and if something |
| 02:41:18 | 9 | like this is upsetting them, then I want to do |
| 02:41:23 | 10 | whatever I can to ease that and, you know, make it |
| 02:41:25 | 11 | go away if possible.  Once again, you know, it's |
| 02:41:32 | 12 | in the spirit of trying to conserve all the |
| 02:41:34 | 13 | collaborative efforts that we have going on |
| 02:41:36 | 14 | between two companies. |
| 02:41:43 | 15 | Q.    Did this request strike you as unethical |
| 02:41:47 | 16 | in any way? |
| 02:41:48 | 17 | MR. SHAH:  Objection.  Vague and |
| 02:41:49 | 18 | ambiguous. |
| 02:41:54 | 19 | THE WITNESS:  No. |
| 02:41:56 | 20 | BY MR. DALLAL: |
| 02:41:59 | 21 | Q.    Okay.  And granted that you're not a |
| 02:42:01 | 22 | lawyer, and so I'm not entitled to try and box you |
| 02:42:09 | 23 | into a particular position, legal position, but |
| 02:42:12 | 24 | when you read this, did it strike you that this |
| 02:42:17 | 25 | request might violate the law in some way? |

| | | |
|---|---|---|
| 05:41:04 | 1 | MR. DALLAL:  Okay. |
| 05:41:05 | 2 | EXAMINATION BY MR. SHAH |
| 05:41:05 | 3 | BY MR. SHAH: |
| 05:41:06 | 4 | Q.    Could you turn to Exhibit 1004. |
| 05:41:21 | 5 | And my questions are about the e-mail |
| 05:41:24 | 6 | from Christina Dickenson where she refers to some |
| 05:41:29 | 7 | policies regarding recruiting from Pixar. |
| 05:41:31 | 8 | And I believe you testified earlier that |
| 05:41:38 | 9 | this was not -- the RenderMan team was not |
| 05:41:43 | 10 | mentioned in this e-mail, correct? |
| 05:41:46 | 11 | A.    Yes. |
| 05:41:49 | 12 | Q.    Did you think it was necessary to |
| 05:41:50 | 13 | specifically refer to the RenderMan team in |
| 05:41:52 | 14 | instructions like this? |
| 05:41:54 | 15 | A.    No. |
| 05:41:55 | 16 | Q.    Why not? |
| 05:41:58 | 17 | A.    Because the type of skill set that Intel |
| 05:42:01 | 18 | was looking for for possible folks was they were |
| 05:42:07 | 19 | located -- or they were part of the RenderMan |
| 05:42:09 | 20 | team. |
| 05:42:11 | 21 | Q.    Thank you. |
| 05:42:12 | 22 | Now, can you turn to Exhibit 1008? |
| 05:42:30 | 23 | A.    This one? |
| 05:42:32 | 24 | Q.    1008. |
| 05:42:35 | 25 | A.    Yes.  Got it. |

1          I, Kathleen A. Wilkins, Certified

2     Shorthand Reporter licensed in the State of

3     California, License No. 10068, hereby certify that

4     the deponent was by me first duly sworn and the

5     foregoing testimony was reported by me and was

6     thereafter transcribed with computer-aided

7     transcription; that the foregoing is a full,

8     complete and true record of said proceedings.

9          I further certify that I am not of

10    counsel or attorney for either of any of the

11    parties in the foregoing proceeding and caption

12    named or in any way interested in the outcome of

13    the cause in said caption.

14          The dismantling, unsealing, or unbinding

15    of the original transcript will render the

16    reporter's Certificates null and void.

17          In witness whereof, I have hereunto set

18    my hand this day:  March 4, 2013.

19          _____ Reading and Signing was requested.

20          _____ Reading and Signing was waived.

21          ___X___ Reading and signing was not requested.

22          _____

23    KATHLEEN A. WILKINS

24    CSR 10068, RPR-RMR-CRR-CCRR-CLR

25