GEORGE A. RILEY (Bar No. 118304)
griley@omm.com
MICHAEL F. TUBACH (Bar No. 145955)
mtubach@omm.com
CHRISTINA J. BROWN (Bar No. 242130)
cjbrown@omm.com
O'MELVENY & MYERS LLP
Two Embarcadero Center, 28th Floor
San Francisco, CA  94111-3823
Telephone:    (415) 984-8700
Facsimile:     (415) 984-8701

Attorneys for Defendant Apple Inc.

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN JOSE DIVISION

| | |
|---|---|
| IN RE HIGH-TECH EMPLOYEE ANTITRUST LITIGATION<br><br>THIS DOCUMENT RELATES TO:<br><br>ALL ACTIONS | Master Docket No. 11-CV-2509-LHK<br><br>**DECLARATION OF LAUREN J. STIROH, PH.D. IN SUPPORT OF DEFENDANTS' JOINT MOTION TO EXCLUDE THE EXPERT TESTIMONY OF EDWARD E. LEAMER, PH.D.**<br><br>Date:           March 20, 2014 and<br>                    March 27, 2014<br>Time:          1:30 p.m.<br>Courtroom: 8, 4th Floor<br>Judge:         The Honorable Lucy H. Koh |

I, Lauren J. Stiroh, Ph.D., declare as follows:

1.     I am an economist and Senior Vice President of NERA Economic Consulting. Defendants have retained me as an expert witness in this matter. I have reviewed the expert reports submitted by Plaintiffs' expert, Dr. Edward E. Leamer, the documents and data referenced therein, Dr. Leamer's deposition testimony, other expert and factual materials submitted in this case, and publicly available information. On November 25, 2013, I submitted an expert report addressing the issues of impact and damages and responding to Dr. Leamer's analyses and opinions ("Stiroh Report"). I submit this declaration in support of Defendants' Joint Motion to Exclude the Expert Testimony of Edward E. Leamer, Ph.D. I offer this declaration based on my own personal knowledge and expertise and information provided to me. If called as a witness, I could and would testify competently thereto.

2.     I received my Ph.D. in economics from Harvard University in 1996, my M.A. from the University of British Columbia in 1991, and my B.A. in economics from the University of Western Ontario in 1990. I have provided economic consulting services and testimony in a number of antitrust liability and damages cases and have testified at trial and in deposition regarding a variety of business practices. These include, for example, commercial disputes, business interference, breach of contract, allegations of monopolization, price predation, unlawful tie-ins, price discrimination, abuse of market power, and patent infringement. I have experience with damages issues in a range of industries including industrial chemicals, automotive services, consumer products, pharmaceuticals, biotechnology, medical devices, agricultural products, advertising and promotion, and semiconductors.

**Statistical Significance of Dr. Leamer's Regression Results**

3.     Dr. Leamer purports to analyze the alleged damages to Class members due to the alleged conspiracy using a regression model, which attempts to determine the amount by which total compensation was reduced during the years in which do-not-cold-call ("DNCC") agreements were in effect. [Stiroh Report, ¶ 146] To determine whether the results of a regression provide reliable evidence for a specific hypothesis, economists typically refer to standard errors and statistical significance. The standard error on a variable's coefficient estimate is used to

1   determine the statistical significance of the coefficient estimate, that is, whether the model
2   provides sufficient evidence that the true value of a coefficient is different from zero. [Stiroh
3   Report, ¶ 167] If a coefficient estimate is not statistically significant at the selected level of
4   significance, then the model has not found sufficient evidence to reject the "null hypothesis" that
5   the true impact of the relevant variable is zero. [Stiroh Report, ¶ 167] The term "null hypothesis"
6   refers to the default hypothesis that the model should be designed to reject. [Stiroh Report, ¶ 167,
7   Footnote 270] Rejecting the null hypothesis means that the model provides support for a
8   measurable impact of (in this case) the DNCC agreements on compensation. When impact must
9   be proven rather than assumed, it is appropriate to set the null hypothesis to zero (i.e., the default
10  supposition is that the agreements had no impact and it is the task of the econometrician to
11  establish otherwise). Here, the appropriate null hypothesis is the alleged DNCC agreements had
12  no impact on compensation, or zero damages.

13        4.      When the standard errors are correctly estimated in Dr. Leamer's model, the
14  coefficients on two of his four Class period variables (or what he calls the "conduct" variables)—
15  the un-interacted "conduct" variable, and the "conduct" variable interacted with the hiring rate
16  per Defendant firm— are not statistically significant at the 1%, 5%, or 10% significance levels.
17  [Stiroh Report, ¶¶ 166, 168] This means that Dr. Leamer's model has not been able to estimate
18  these coefficients precisely enough to conclude that their true values are not, in fact, zero. [Stiroh
19  Report, ¶ 168]

20        5.      In each of his reports, Dr. Leamer has indicated whether the coefficients in each of
21  his regression analyses are statistically significant at the 1%, 5%, or 10% levels (see, for example,
22  Exhibits 2 – 6 of his October 2013 Merits Report). These are the same significance thresholds I
23  adopted for my report, and they are consistent with standard economic practice. If an estimate is
24  statistically significant at a 5% level, for example, this indicates that there is no more than a 5%
25  probability of observing at least the same result by chance when the null hypothesis is in fact true.
26  A 5% significance level provides a standardly accepted threshold of willingness to mistakenly
27  interpret non-meaningful results as meaningful.

28        6.      In his December 2013 Reply Report, Dr. Leamer opines for the first time that a

1  result that is statistically significant at a 50% threshold is sufficiently accurate to establish impact
2  and damages. [Leamer December 2013 Reply Report, ¶ 86]  For a result to be statistically
3  significant at a 50% threshold means that there is no more than a 50% chance of observing results
4  at least as large simply by chance.  This is the same likelihood as one who makes the same
5  determination by flipping a coin.  Dr. Leamer's new 50% significance threshold is contrary to
6  standard practice for published and peer-reviewed economic literature.

7  7. Dr. Leamer also suggests that the appropriate hypothesis is not zero damages, and
8  instead proposed in deposition that a null hypothesis of 10% suppression of compensation was
9  appropriate.  If one sets the null hypothesis to be equal to the model outcome, the model will
10 never reject the null hypothesis.  But by setting the null hypothesis equal to the model outcome,
11 impact has been assumed rather than established.

**Dr. Leamer's "Total New Hires" Variable**

13 8. Dr. Leamer's regression model includes the total number of new hires per year by
14 all seven Defendants as an explanatory variable.  This "total new hires" variable is the sum of the
15 new hires by each Defendant firm in a given year and is, therefore, the same for every employee
16 in the data set in a given year and is restricted to have the same effect on compensation at every
17 firm, regardless of the number and relative importance of each firm's DNCC agreements to their
18 compensation structures. [Stiroh Report, ¶ 183]

19 9. As I described in more detail in my November 2013 report, Dr. Leamer aggregates
20 new hires across all Defendants despite the fact that his theory of harm suggests that the different
21 components of this variable should have different effects on employee compensation.  To see this,
22 the new hires variable can be broken down into four distinct categories:  (1) new hires at the
23 employee's own firm; (2) new hires at another firm with which the employee's firm did not have
24 a DNCC agreement; (3) new hires at another firm with which the employee's firm had a DNCC
25 agreement while that agreement was in effect; and (4) new hires at another firm with which the
26 employee's firm had a DNCC agreement while that agreement was not in effect. [Stiroh Report,
27 ¶ 184]

28 10. As a correction to the misspecification embodied by Dr. Leamer's total new hires

variable, I have estimated his regression model by splitting the variable into its component parts. The new hires in category (1) were already taken into account in Dr. Leamer's model, so I have replaced the total new hires variable with 3 new variables allowing me to estimate the differential impact from categories (2), (3), and (4). Splitting apart the new hires variable in this fashion allows the model to reflect variation across firms since each firm has its own unique set of firms with which it has a DNCC agreement(s) in each year in the alleged Class period. [Stiroh Report, ¶ 187] The alleged damages estimated by this specification of Dr. Leamer's model are approximately $543 million. [Stiroh Report, ¶ 188] I provided these results in Exhibits VI.7 and VI.8 to my November 2013 report, which are attached hereto. I have also estimated a version of this model in which the new hires from groups (2), (3), and (4) are scaled by the number of employees currently at the firm, and so represent the number of new hires from the various groups as a share of the firm's extant workforce. This mirrors the fashion in which Dr. Leamer included the new hires from group (1) in his original regression. The results of this model show *net overcompensation* by the Defendants during the Class period. [Stiroh Report, ¶ 189] I provided these results in Exhibits VI.11 and VI.12 to my November 2013 report, which are also attached as exhibits hereto.

11. In addition, Dr. Leamer's model estimates a negative coefficient on the total new hires variable. This implies that, all else equal, as Defendants are doing more hiring (demand increases), they pay their employees less (price decreases). This runs contrary to basic economic principles. [Stiroh Report, ¶ 163]

12. Dr. Leamer attempts to justify including the total new hires variable and its negative coefficient in his December 2013 reply report, stating that the variable is identifying periods of weak labor markets and not strong ones. [Leamer December 2013 Reply Report, ¶ 119] However, this explanation does not hold up. The spike in new hiring he identifies in 2005 followed by a decrease in hiring in 2006 and 2007 is driven by a single Defendant, Intel, and not the other Defendants. In Exhibit 114 used at Dr. Leamer's deposition, I disaggregated the Defendants' hiring to show the pattern seen in the total new hires variable mirrors Intel's pattern of hiring more closely than it does that of any other Defendant. This chart is also attached as an

exhibit hereto. While Intel experienced a spike in hiring in 2005, followed by a reduction in force that started in 2006, this does not indicate a larger pattern across all Defendants of decreased hiring. Google, for example, increased its hiring in 2006 and 2007.

**Dr. Leamer's Conduct Variable**

13.     Dr. Leamer's model imposes the condition that the alleged Class period, or "conduct," coefficients are the same for all Defendants. This restriction of his model makes his results overly sensitive to the actions of individual Defendants. Adjustments that theoretically would only impact one Defendant in fact affect them all. As discussed in my November 2013 report, I understand that Intel may not have entered into a DNCC agreement with Google until 2006, even though Dr. Leamer's model "turns on" the conduct variable for Intel for half of 2005 (by setting the conduct variable to 0.5 for 2005). I have re-estimated his model with the only alteration being that the conduct variable is turned on for Intel in 2006 (that is, the conduct variable is set to 0 for 2005 instead of 0.5). This change reduces the total alleged damages by $1 billion as compared to Dr. Leamer's estimates. And not only have the alleged damages estimated by the model been reduced for Intel, but all seven Defendants have lower alleged damages than Dr. Leamer posits. I attached these results to my November 2013 report as exhibits VI.3 and VI.4, and they are also attached hereto. [Stiroh Report, ¶¶ 179 – 180]

**The Inability of Dr. Leamer's Model to Account for Unchallenged Events**

14.     The Class period, or "conduct," variable that Dr. Leamer uses to measure damages is not tied to a reduction in cold calling, but rather to the time period in which the DNCC agreements at issue allegedly existed. The conduct variable is thus incapable of isolating any impact of the DNCC agreements on compensation from other concurrent events not explicitly controlled for in the model. In other words, Dr. Leamer's model does not allow one to evaluate whether the alleged undercompensation measured during the Class period is caused by a reduction in cold-calling from DNCC agreement(s) or from other factors not included in the model. [Stiroh Report, ¶¶ 155, 195]   Any economic events that occurred inside the Class period and not outside the Class period are being picked up by Dr. Leamer's conduct variables as well.

15.     One example of this is the 2008 – 2009 recession, which would have negatively

affected compensation for substantial portions of the Class during these years. [Stiroh Report, ¶ 196] In a preliminary analysis in Dr. Leamer's initial, October 2012 report, he addressed the recession by giving 2008 and 2009 zero values for the "estimated underpayment" each year, based on the idea that the weak economy would not have resulted in compensation increases in those years. [Leamer October 2012 Report, ¶ 140] I have applied this same technique to Dr. Leamer's regression model, zeroing out the contribution of the years 2008 and 2009 on the cumulative alleged damages. Doing so reduces Dr. Leamer's alleged damages estimate by more than half, to about $1.2 billion, which indicates that the recession years contribute to more than half of his total alleged damages estimate. [Stiroh Report, ¶ 201] Dr. Leamer's model is also unable to account for other economic events, such as how each Defendant responded to the recession when setting compensation. [Stiroh Report, ¶¶ 196, 201]

16. Dr. Leamer treats all of the DNCC agreements in the same fashion regardless of the importance of each firm with which a Defendant had a DNCC agreement to the flow of information to that Defendant's employees. Even if Dr. Leamer had established that DNCC agreements meaningfully affected information flow to the Class and did so in a uniform manner (which he has not), his regression model cannot distinguish between the DNCC agreements at issue and those that are not part of this case. Specifically, his model lacks any controls or means of identifying the DNCC agreements that are not part of this case and therefore cannot parse their effects from his overly inclusive "conduct" variable that simply points to years, and not specifically to any DNCC agreements. In his October 2012 report, Dr. Leamer points out that Defendants potentially entered into several other DNCC agreements during the Class period. [Leamer October 2012 Report, ¶ 22] Because these agreements were allegedly entered into during the Class period, the impact, if any, of these unchallenged agreements is conflated with the impact, if any, of the agreements challenged as unlawful in this action. [Stiroh Report, ¶ 210]

I declare under penalty of perjury under the laws of the United States that the above is true and correct.

Executed on January 9, 2014, in White Plains, New York.

By: [signature]
Lauren J. Stiroh, Ph.D.

**Dr. Leamer's Compensation Regression**
**Assuming Intel's Conduct Began in 2006**

| Variable (a) | Coefficient Estimate (b) | P-Value (c) |
|---|---|---|
| Conduct * (Log Age - Log(38)) | 1.28431 *** | 0.00559 |
| Conduct * (Log(Age)^2 - Log(38)^2) | -0.17425 *** | 0.00453 |
| Conduct * (Log(Number of New Hires In the Firm/Number of Employees(-1)) + 1.92) | -0.00962 | 0.74355 |
| Conduct | -0.03266 | 0.44611 |
| ADOBE * Log(Total Annual Compensation/CPI) (-1) | 0.66810 *** | 0.00000 |
| APPLE * Log(Total Annual Compensation/CPI) (-1) | 0.72617 *** | 0.00000 |
| GOOGLE * Log(Total Annual Compensation/CPI) (-1) | 0.43592 *** | 0.00000 |
| INTEL * Log(Total Annual Compensation/CPI) (-1) | 0.67316 *** | 0.00000 |
| INTUIT * Log(Total Annual Compensation/CPI) (-1) | 0.64622 *** | 0.00000 |
| LUCASFILM * Log(Total Annual Compensation/CPI) (-1) | 0.92762 *** | 0.00000 |
| PIXAR * Log(Total Annual Compensation/CPI) (-1) | 0.67091 *** | 0.00002 |
| ADOBE * Log(Total Annual Compensation/CPI) (-2) | 0.31164 *** | 0.00000 |
| APPLE * Log(Total Annual Compensation/CPI) (-2) | 0.24901 *** | 0.00000 |
| GOOGLE * Log(Total Annual Compensation/CPI) (-2) | 0.36574 *** | 0.00000 |
| INTEL * Log(Total Annual Compensation/CPI) (-2) | 0.29289 *** | 0.00000 |
| INTUIT * Log(Total Annual Compensation/CPI) (-2) | 0.30886 *** | 0.00000 |
| LUCASFILM * Log(Total Annual Compensation/CPI) (-2) | 0.04684 | 0.57935 |
| PIXAR * Log(Total Annual Compensation/CPI) (-2) | 0.09436 | 0.42308 |
| Log(Age) (Years) | -0.66259 *** | 0.00042 |
| Log(Age)^2 | 0.08010 *** | 0.00075 |
| Log(Company Tenure) (Months) | 0.01924 | 0.66581 |
| Log(Company Tenure)^2 | -0.00137 | 0.76649 |
| Male | 0.00553 ** | 0.02930 |
| DLog(Information Sector Employment in San-Jose) | 1.89412 *** | 0.00132 |
| Log(Total Number of Transfers Among Defendants) | 0.08596 ** | 0.02140 |
| Year (trend) | 0.00092 | 0.89724 |
| Log(Number of New Hires In the Firm/Number of Employees(-1)) | 0.01816 | 0.46395 |
| Log(Total Number of New Hires) | -0.31878 *** | 0.00029 |
| Log(Firm Revenue Per Employee/CPI) (-1) | -0.05930 | 0.41583 |
| DLog(Firm Revenue Per Employee/CPI) (-1) | 0.13494 * | 0.08747 |
| APPLE | 0.13180 | 0.61613 |
| GOOGLE | 1.37139 *** | 0.00257 |
| INTEL | 0.09495 | 0.72815 |
| INTUIT | 0.14360 | 0.51651 |
| LUCASFILM | 0.07172 | 0.80633 |
| PIXAR | 1.38869 *** | 0.00066 |
| Constant | 1.92871 | 0.89496 |
| State Fixed Effects | Yes | |
| $R^2$ | 0.8681 | |
| Number of Observations | 277,119 | |

Notes:
***=significant at 1% level; **=significant at 5% level; *=significant at 10% level.
Standard errors clustered by employer and year.
Regression run assuming Intel's conduct began in 2006.

Source:
Dr. Leamer's regression data.

NERA Economic Consulting

**Effect on Alleged Damages by Defendant and Year Implied by Dr. Leamer's Compensation Regression**
**Of Assuming Intel's Conduct Began in 2006**
**2005 to 2009**

| Year | Adobe | Apple | Google | Intel | Intuit | Lucasfilm | Pixar | Total |
|---|---|---|---|---|---|---|---|---|
| (a) | (b) | (c) | (d) | (e) | (f) | (g) | (h) | (i) |
| 2005 | $ 2,991,382 | $ 7,859,709 | $ 20,362,805 | $ - | $ - | $ 1,180,665 | $ 7,612,324 | $ 40,006,886 |
| 2006 | 15,302,878 | 33,895,909 | 52,673,137 | 111,286,643 | - | 2,959,072 | 11,393,004 | 227,510,643 |
| 2007 | 26,256,519 | 72,727,650 | 133,404,943 | 147,064,867 | 4,833,990 | 4,732,842 | 11,628,978 | 400,649,788 |
| 2008 | 37,005,525 | 101,203,672 | 122,101,527 | 245,286,269 | 18,369,109 | 5,873,161 | 12,730,374 | 542,569,638 |
| 2009 | 30,540,282 | 108,226,469 | 170,217,189 | 229,465,546 | 14,360,237 | 5,273,810 | 8,766,728 | 566,850,261 |
| **Total** | **$ 112,096,586** | **$ 323,913,409** | **$ 498,759,601** | **$ 733,103,325** | **$ 37,563,336** | **$ 20,019,550** | **$ 52,131,408** | **$ 1,777,587,214** |

Note:
 Regression run assuming Intel's conduct began in 2006.

Source:
 Dr. Leamer's regression data.

**Dr. Leamer's Compensation Regression**
**Splitting Total New Hire Variable**

| Variable | Coefficient Estimate | P-Value |
| --- | --- | --- |
| (a) | (b) | (c) |
| Conduct * (Log Age - Log(38)) | 0.84677 ** | 0.03502 |
| Conduct * (Log(Age)^2 - Log(38)^2) | -0.11620 ** | 0.02753 |
| Conduct * (Log(Number of New Hires In the Firm/Number of Employees(-1)) + 1.92) | 0.01284 | 0.71354 |
| Conduct | 0.53292 * | 0.06690 |
| Conduct * Log(Total Number of DNCC New Hires) | -0.07329 * | 0.08329 |
| ADOBE * Log(Total Annual Compensation/CPI) (-1) | 0.61627 *** | 0.00000 |
| APPLE * Log(Total Annual Compensation/CPI) (-1) | 0.73074 *** | 0.00000 |
| GOOGLE * Log(Total Annual Compensation/CPI) (-1) | 0.43256 *** | 0.00000 |
| INTEL * Log(Total Annual Compensation/CPI) (-1) | 0.66429 *** | 0.00000 |
| INTUIT * Log(Total Annual Compensation/CPI) (-1) | 0.62670 *** | 0.00000 |
| LUCASFILM * Log(Total Annual Compensation/CPI) (-1) | 0.87777 *** | 0.00000 |
| PIXAR * Log(Total Annual Compensation/CPI) (-1) | 0.67622 *** | 0.00002 |
| ADOBE * Log(Total Annual Compensation/CPI) (-2) | 0.36380 *** | 0.00000 |
| APPLE * Log(Total Annual Compensation/CPI) (-2) | 0.24269 *** | 0.00000 |
| GOOGLE * Log(Total Annual Compensation/CPI) (-2) | 0.35948 *** | 0.00000 |
| INTEL * Log(Total Annual Compensation/CPI) (-2) | 0.30115 *** | 0.00000 |
| INTUIT * Log(Total Annual Compensation/CPI) (-2) | 0.32185 *** | 0.00000 |
| LUCASFILM * Log(Total Annual Compensation/CPI) (-2) | 0.10830 | 0.47356 |
| PIXAR * Log(Total Annual Compensation/CPI) (-2) | 0.08953 | 0.44939 |
| Log(Age) (Years) | -0.53123 *** | 0.00554 |
| Log(Age)^2 | 0.06284 *** | 0.00956 |
| Log(Company Tenure) (Months) | -0.02564 | 0.56157 |
| Log(Company Tenure)^2 | 0.00350 | 0.44593 |
| Male | 0.00562 ** | 0.03394 |
| DLog(Information Sector Employment in San-Jose) | 1.39775 ** | 0.02657 |
| Log(Total Number of Transfers Among Defendants) | 0.07544 * | 0.06836 |
| Year (trend) | 0.00415 | 0.65601 |
| Log(Number of New Hires In the Firm/Number of Employees(-1)) | -0.06738 | 0.14399 |
| Log(Total Number of DNCC New Hires) | -0.05136 | 0.17061 |
| Log(Total Number of non-DNCC New Hires) | -0.13253 * | 0.05332 |
| Log(Firm Revenue Per Employee/CPI) (-1) | -0.16205 * | 0.06893 |
| DLog(Firm Revenue Per Employee/CPI) (-1) | 0.19195 ** | 0.04282 |
| APPLE | 0.25167 | 0.35865 |
| GOOGLE | 1.38572 ** | 0.01187 |
| INTEL | -0.01282 | 0.96505 |
| INTUIT | 0.20418 | 0.35923 |
| LUCASFILM | -0.05949 | 0.85206 |
| PIXAR | 1.34573 *** | 0.00047 |
| Constant | -6.05281 | 0.74656 |
| State Fixed Effects | Yes | |
| $R^2$ | 0.8678 | |
| Number of Observations | 277,119 | |

Notes:
***=significant at 1% level; **=significant at 5% level; *=significant at 10% level.
Standard errors clustered by employer and year.
This regression divides Dr. Leamer's total new hires variable into Log(Total Number of DNCC New Hires), Log(Total Number of non-DNCC New Hires), and Conduct * Log(Total Number of DNCC New Hires).

Source:
Dr. Leamer's regression data.

NERA Economic Consulting

**Effect on Alleged Damages by Defendant and Year Implied by Dr. Leamer's Compensation Regression**
**Of Splitting Total New Hire Variable**
**2005 to 2009**

| Year | Adobe | Apple | Google | Intel | Intuit | Lucasfilm | Pixar | Total |
|---|---|---|---|---|---|---|---|---|
| (a) | (b) | (c) | (d) | (e) | (f) | (g) | (h) | (i) |
| 2005 | $ (4,095,282) | $ (3,815) | $ 20,170,630 | $ (7,948,364) | $ - | $ (7,143,360) | $ (15,004,968) | $ (14,025,160) |
| 2006 | (23,126,211) | 12,538,021 | 26,054,312 | 66,690,173 | - | (14,482,164) | (19,377,056) | 48,297,076 |
| 2007 | (32,681,040) | 29,595,972 | 49,919,309 | 168,674,038 | 680,569 | (24,155,612) | (16,460,556) | 175,572,680 |
| 2008 | (40,265,473) | 29,475,155 | 78,634,709 | 165,949,262 | (1,787,738) | (29,409,923) | (14,983,178) | 187,612,814 |
| 2009 | (33,376,351) | 14,947,037 | 84,721,967 | 121,916,230 | (5,652,753) | (27,390,557) | (9,924,653) | 145,240,919 |
| Total | $ (133,544,358) | $ 86,552,372 | $ 259,500,926 | $ 515,281,339 | $ (6,759,923) | $ (102,581,616) | $ (75,750,411) | $ 542,698,330 |

Notes:
This regression divides Dr. Leamer's total new hires variable into Log(Total Number of DNCC New Hires), Log(Total Number of non-DNCC New Hires), and Conduct * Log(Total Number of DNCC New Hires).
Figures in parentheses indicate overcompensation and therefore no damages.

Source:
Dr. Leamer's regression data.

**Dr. Leamer's Compensation Regression**
**Splitting Total New Hire Variable into Shares**

| Variable | Coefficient Estimate | P-Value |
|---|---|---|
| (a) | (b) | (c) |
| Conduct * (Log Age - Log(38)) | 0.93803 ** | 0.03664 |
| Conduct * (Log(Age)^2 - Log(38)^2) | -0.12764 ** | 0.02994 |
| Conduct * (Log(Number of New Hires In the Firm/Number of Employees(-1)) + 1.92) | -0.03604 | 0.58670 |
| Conduct | 0.04447 | 0.38271 |
| Conduct * Log(Total Number of DNCC New Hires/Number of Employees) | 0.02002 | 0.55633 |
| ADOBE * Log(Total Annual Compensation/CPI) (-1) | 0.66738 *** | 0.00000 |
| APPLE * Log(Total Annual Compensation/CPI) (-1) | 0.71960 *** | 0.00000 |
| GOOGLE * Log(Total Annual Compensation/CPI) (-1) | 0.41920 *** | 0.00000 |
| INTEL * Log(Total Annual Compensation/CPI) (-1) | 0.67272 *** | 0.00000 |
| INTUIT * Log(Total Annual Compensation/CPI) (-1) | 0.67479 *** | 0.00000 |
| LUCASFILM * Log(Total Annual Compensation/CPI) (-1) | 0.99354 *** | 0.00000 |
| PIXAR * Log(Total Annual Compensation/CPI) (-1) | 0.69027 *** | 0.00001 |
| ADOBE * Log(Total Annual Compensation/CPI) (-2) | 0.31230 *** | 0.00000 |
| APPLE * Log(Total Annual Compensation/CPI) (-2) | 0.24760 *** | 0.00000 |
| GOOGLE * Log(Total Annual Compensation/CPI) (-2) | 0.37172 *** | 0.00000 |
| INTEL * Log(Total Annual Compensation/CPI) (-2) | 0.29128 *** | 0.00000 |
| INTUIT * Log(Total Annual Compensation/CPI) (-2) | 0.27586 *** | 0.00000 |
| LUCASFILM * Log(Total Annual Compensation/CPI) (-2) | -0.04245 | 0.68871 |
| PIXAR * Log(Total Annual Compensation/CPI) (-2) | 0.08382 | 0.44591 |
| Log(Age) (Years) | -0.53231 ** | 0.01506 |
| Log(Age)^2 | 0.06277 ** | 0.02421 |
| Log(Company Tenure) (Months) | -0.00083 | 0.98586 |
| Log(Company Tenure)^2 | 0.00091 | 0.85229 |
| Male | 0.00567 ** | 0.03444 |
| DLog(Information Sector Employment in San-Jose) | 0.31918 | 0.63629 |
| Log(Total Number of Transfers Among Defendants) | 0.02334 | 0.53577 |
| Year (trend) | 0.01084 | 0.19800 |
| Log(Number of New Hires In the Firm/Number of Employees(-1)) | -0.00281 | 0.95753 |
| Log(Total Number of DNCC New Hires/Number of Employees) | -0.03401 | 0.50338 |
| Log(Total Number of non-DNCC New Hires/Number of Employees) | -0.01403 | 0.78530 |
| Log(Firm Revenue Per Employee/CPI) (-1) | -0.06876 | 0.43570 |
| DLog(Firm Revenue Per Employee/CPI) (-1) | 0.10380 | 0.23029 |
| APPLE | 0.19025 | 0.48699 |
| GOOGLE | 1.43379 *** | 0.00655 |
| INTEL | -0.01742 | 0.95623 |
| INTUIT | 0.20088 | 0.36160 |
| LUCASFILM | 0.25148 | 0.47895 |
| PIXAR | 1.37718 *** | 0.00046 |
| Constant | -20.62578 | 0.21880 |
| State Fixed Effects | Yes | |
| | | |
| R$^2$ | 0.8645 | |
| Number of Observations | 277,119 | |

Notes:

\*\*\*=significant at 1% level; \*\*=significant at 5% level; \*=significant at 10% level.
Standard errors clustered by employer and year.
This regression divides Dr. Leamer's total new hires variable into Log(Total Number of DNCC New Hires/Number of Employees), Log(Total Number of non-DNCC New Hires/Number of Employees), and Conduct * Log(Total Number of DNCC New Hires/Number of Employees).

Source:
Dr. Leamer's regression data.

NERA Economic Consulting

**Effect on Alleged Damages by Defendant and Year Implied by Dr. Leamer's Compensation Regression**
**Of Splitting Total New Hire Variable into Shares**
**2005 to 2009**

| Year | Adobe | Apple | Google | Intel | Intuit | Lucasfilm | Pixar | Total |
|---|---|---|---|---|---|---|---|---|
| | | | | (Dollars) | | | | |
| (a) | (b) | (c) | (d) | (e) | (f) | (g) | (h) | (i) |
| 2005 | $ (2,615,711) | $ (1,541,440) | $ 7,999,145 | $ 26,980,657 | $ - | $ (852,906) | $ (9,510,185) | $ 20,459,561 |
| 2006 | (8,292,951) | (15,927,881) | 22,438,729 | (49,927,387) | - | 366,235 | (12,663,419) | (64,006,675) |
| 2007 | (19,203,395) | (26,419,534) | 52,489,907 | (200,883,985) | (1,975,376) | 1,666,889 | (16,858,224) | (211,183,717) |
| 2008 | (31,613,813) | (25,507,969) | 20,368,971 | (235,697,070) | (13,523,824) | 720,340 | (15,560,318) | (300,813,684) |
| 2009 | (30,363,876) | (23,946,936) | 23,028,471 | (264,847,389) | (12,480,942) | 109,740 | (11,204,102) | (319,705,032) |
| **Total** | **$ (92,089,745)** | **$ (93,343,759)** | **$ 126,325,222** | **$ (724,375,173)** | **$ (27,980,142)** | **$ 2,010,298** | **$ (65,796,247)** | **$ (875,249,546)** |

Notes:
This regression divides Dr. Leamer's total new hires variable into Log(Total Number of DNCC New Hires/Number of Employees), Log(Total Number of non-DNCC New Hires/Number of Employees), and Conduct * Log(Total Number of DNCC New Hires/Number of Employees).
Figures in parentheses indicate overcompensation and therefore no damages.

Source:
Dr. Leamer's regression data.

# EXHIBIT 114

# FILED UNDER SEAL WITH DEFENDANTS' JOINT ADMINISTRATIVE MOTION TO SEAL