1                    UNITED STATES DISTRICT COURT

2                   NORTHERN DISTRICT OF CALIFORNIA

3                         SAN JOSE DIVISION

4

5

        IN RE: HIGH-TECH EMPLOYEE          )  C-11-02509 LHK
6       ANTITRUST LITIGATION,              )
                                           )  SAN JOSE, CALIFORNIA
7       _____        )
                                           )  DECEMBER 16, 2013
8       THIS DOCUMENT RELATES TO:          )
        ALL ACTIONS                        )  PAGES 1-45
9       _____        )

10
                        TRANSCRIPT OF PROCEEDINGS
11                 BEFORE THE HONORABLE LUCY H. KOH
                      UNITED STATES DISTRICT JUDGE
12
        A P P E A R A N C E S:
13
        FOR THE PLAINTIFFS:    JOSEPH SAVERI LAW FIRM
14                             BY:   JOSEPH SAVERI
                                     JAMES G. DALLAL
15                             255 CALIFORNIA STREET, SUITE 450
                               SAN FRANCISCO, CALIFORNIA  94111
16

17                             LIEFF, CABRASER,
                               HEIMANN & BERNSTEIN
18                             BY:   KELLY M. DERMODY
                                     BRENDAN P. GLACKIN
19                                   DEAN M. HARVEY
                               275 BATTERY STREET, 30TH FLOOR
20                             SAN FRANCISCO, CALIFORNIA  94111

21
                    APPEARANCES CONTINUED ON NEXT PAGE
22

23      OFFICIAL COURT REPORTER:    LEE-ANNE SHORTRIDGE, CSR, CRR
                                    CERTIFICATE NUMBER 9595
24
                PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY
25                TRANSCRIPT PRODUCED WITH COMPUTER

```
 1      APPEARANCES (CONTINUED)

 2      FOR DEFENDANT              KEKER & VAN NEST
        GOOGLE:                   BY:  ROBERT A. VAN NEST
 3                                     JUSTINA K. SESSIONS
                                  633 BATTERY STREET
 4                                SAN FRANCISCO, CALIFORNIA  94111

 5                                MAYER BROWN
                                  BY:  DONALD M. FALK
 6                                TWO PALO ALTO SQUARE, SUITE 300
                                  PALO ALTO, CALIFORNIA  94306
 7
        FOR DEFENDANT             O'MELVENY & MYERS
 8      APPLE:                    BY:  GEORGE A. RILEY
                                       MICHAEL TUBACH
 9                                TWO EMBARCADERO CENTER
                                  28TH FLOOR
10                                SAN FRANCISCO, CALIFORNIA  94111

11      FOR DEFENDANTS            JONES DAY
        ADOBE:                    BY:  ROBERT A. MITTELSTAEDT
12                                     LIN W. KAHN
                                  555 CALIFORNIA STREET, 26TH FLOOR
13                                SAN FRANCISCO, CALIFORNIA  94104

14      FOR DEFENDANT             JONES DAY
        INTUIT:                   BY:  DAVID C. KIERNAN
15                                555 CALIFORNIA STREET, 26TH FLOOR
                                  SAN FRANCISCO, CALIFORNIA  94104
16

17      FOR DEFENDANT             MUNGER, TOLLES & OLSEN
        INTEL:                    BY:  GREGORY P. STONE
18                                355 SOUTH GRAND AVENUE, 35TH FLOOR
                                  LOS ANGELES, CALIFORNIA  90071
19

20      FOR DEFENDANT             COVINGTON & BURLING
        PIXAR:                    BY:  EMILY J. HENN
21                                333 TWIN DOLPHIN DRIVE, SUITE 700
                                  REDWOOD SHORES, CALIFORNIA  94065
22
                                  BY:  CHINUE TURNER RICHARDSON
23                                1201 PENNSYLVANIA AVENUE NW
                                  WASHINGTON, DC  20004
24

25
```

```
1    SAN JOSE, CALIFORNIA                    DECEMBER 18, 2013

2                    P R O C E E D I N G S

3        (COURT CONVENED AT 2:31 P.M.)

4            THE CLERK:  CALLING CASE NUMBER C-11-02509 LHK, IN

5    RE: HIGH-TECH EMPLOYEE ANTITRUST LITIGATION.

6            MR. SAVERI:  GOOD AFTERNOON, YOUR HONOR.

7    JOSEPH SAVERI ON BEHALF OF THE PLAINTIFFS.

8            MS. DERMODY:  GOOD AFTERNOON, YOUR HONOR.

9    KELLY DERMODY, LEIF, CABRASER.  WITH ME IS MY PARTNER,

10   DEAN HARVEY.

11        AND ALSO FROM THE SAVERI FIRM IS JAMES DALLAL.

12           THE COURT:  OKAY.  GOOD AFTERNOON.

13           MR. VAN NEST:  GOOD AFTERNOON, YOUR HONOR.

14   BOB VAN NEST FOR GOOGLE.  I'M HERE WITH TINA SESSIONS FROM KVN.

15           THE COURT:  THANK YOU.

16           MR. STONE:  GOOD AFTERNOON, YOUR HONOR.

17   GREGORY STONE ON BEHALF OF INTEL CORPORATION.

18           THE COURT:  OKAY.  GIVE ME JUST ONE SECOND TO FIND

19   YOU.

20        OKAY.  THANK YOU.

21           MR. MITTELSTAEDT:  GOOD AFTERNOON, YOUR HONOR.

22   BOB MITTELSTAEDT AND LIN KAHN FOR ADOBE.

23           THE COURT:  OKAY.  GIVE ME JUST ONE SECOND.  OKAY.

24   THANK YOU.

25           SOMEHOW MR. -- MR. VAN NEST, ARE YOU -- YOU'RE NOT
```

```
 1          REPRESENTING ALL OF THE DEFENDANTS, ARE YOU?

 2                    MR. VAN NEST:  I'M REPRESENTING GOOGLE, YOUR HONOR.

 3                    THE COURT:  OKAY.  ALL RIGHT.

 4                    MR. VAN NEST:  SOMETIMES SPEAKING ON BEHALF OF ALL OF

 5          THEM.

 6                    THE COURT:  I UNDERSTAND.  SO I JUST HAVE YOU LISTED

 7          UNDER EVERY DEFENDANT AND I'M GOING TO TAKE YOU OFF FOR

 8          EVERYONE EXCEPT GOOGLE.

 9              OKAY.

10                    MR. FALK:  GOOD AFTERNOON, YOUR HONOR.  DON FALK

11          REPRESENTING GOOGLE.

12                    THE COURT:  OKAY.  GOOD AFTERNOON.

13                    MR. KIERNAN:  GOOD AFTERNOON, YOUR HONOR.

14          DAVID KIERNAN ON BEHALF OF INTUIT.

15                    THE COURT:  OKAY.  GOOD AFTERNOON.

16                    MR. RILEY:  GOOD AFTERNOON, YOUR HONOR.  GEORGE RILEY

17          OF O'MELVENY & MYERS, WITH MY COLLEAGUE, MICHAEL TUBACH, FOR

18          APPLE.

19                    MS. RICHARDSON:  GOOD AFTERNOON, YOUR HONOR.

20          CHINUE RICHARDSON OF COVINGTON & BURLING ON BEHALF OF PIXAR AND

21          LUCASFILM, AND I'M HERE WITH MY COLLEAGUE, EMILY HENN.

22                    THE COURT:  OKAY.  GOOD AFTERNOON.  SO

23          MR. MITTELSTAEDT, YOU'RE HERE ONLY ON BEHALF OF ADOBE TODAY,

24          NOT INTUIT?

25                    MR. MITTELSTAEDT:  YES, YOUR HONOR.
```

```
1              THE COURT:  OKAY.  OKAY.  ANYONE ELSE?  NO?  OKAY.
2    ALL RIGHT.
3          MS. -- OKAY.  ALL RIGHT.
4              THE COURT:  OH, WE HAVE A JURY NOTE.  I'M SORRY, I
5    HAVE A JURY DELIBERATING RIGHT NOW.
6          (PAUSE IN PROCEEDINGS.)
7              THE COURT:  OKAY.  LET ME ASK, WITH REGARD TO THE
8    APPEAL OF THE CLASS CERT ORDER, WHEN DO YOU EXPECT A RULING
9    FROM THE CIRCUIT?
10             MS. DERMODY:  YOUR HONOR, I THINK IT'S HARD TO TELL.
11   THERE'S PROBABLY A LOT OF SPECULATION IN THE ROOM, BUT --
12             THE COURT:  SURE.
13             MS. DERMODY:  -- USUALLY IT'S FOUR TO SIX WEEKS HAS
14   BEEN OUR EXPERIENCE.  I DON'T KNOW IF ANYONE HAS HAD A
15   DIFFERENT EXPERIENCE.
16             MR. VAN NEST:  THAT SOUNDS RIGHT, YOUR HONOR.  I
17   MEAN, WE'RE SPECULATING.  THE BRIEFING IS DONE AND IN.
18             THE COURT:  AND THE BRIEFING WAS DONE BY
19   NOVEMBER 18TH?
20             MS. DERMODY:  BEFORE THANKSGIVING, YOUR HONOR.
21             THE COURT:  SO FOUR TO SIX WEEKS WOULD BE BY NOW.
22          OKAY.  SO YOU THINK IT'LL BE BEFORE THE END OF DECEMBER?
23             MS. DERMODY:  COULD BE, OR THE BEGINNING OF JANUARY.
24   IT SORT OF DEPENDS WHICH MOTIONS PANEL GRABBED THE APPEAL.
25   WE'RE NOT SURE.
```

1            THE COURT:  OKAY.

2            MR. VAN NEST:  YOUR HONOR, WE'RE ALL SPECULATING.

3   THERE'S NO DEADLINE, SO --

4            THE COURT:  SURE.

5            MR. VAN NEST:  OBVIOUSLY.

6            THE COURT:  OKAY.  NOW, ASSUMING THE CIRCUIT DECIDES

7   TO REVIEW THE ORDER, WILL YOU BE SEEKING A STAY OF THIS CASE?

8            MR. VAN NEST:  YES.

9            THE COURT:  OKAY.  AND WILL YOU JUST SEEK THAT

10  DIRECTLY FROM THE CIRCUIT?

11            MR. VAN NEST:  FROM YOU IN THE FIRST INSTANCE, AND

12  THEN --

13            THE COURT:  AND THEN IN THE CIRCUIT?

14            MR. VAN NEST:  -- FOLLOWING THAT IN THE CIRCUIT,

15  THAT'S RIGHT.

16            THE COURT:  IS THAT SOMETHING THAT THE PLAINTIFFS

17  WOULD STIPULATE TO, OR YOU'RE GOING TO OPPOSE A MOTION FOR

18  STAY?

19            MS. DERMODY:  I THINK WE'LL BE OPPOSING IT, YOUR

20  HONOR.

21            THE COURT:  OKAY.  IF THAT MOTION IS FILED, WHAT --

22  I'M JUST TRYING TO GET A SENSE OF PLANNING.  WHEN DO YOU THINK

23  THAT THAT WOULD BE FILED?  WHEN WOULD IT BE RIPE FOR REVIEW OR

24  HEARING OR --

25            MR. VAN NEST:  THE MOTION TO STAY?

1              THE COURT:  YES.

2              MR. VAN NEST:  WE'D FILE THAT IMMEDIATELY UPON THE,

3      THE --

4              THE COURT:  THE DECISION?

5              MR. VAN NEST:  -- GRANT OF REVIEW.  I MEAN, VERY

6      QUICKLY.

7              THE COURT:  SURE.

8              MR. VAN NEST:  AND WE WOULD FOLLOW WHATEVER SCHEDULE

9      YOUR HONOR WISHED.  I MEAN, I THINK BOTH PARTIES WOULD DO THAT.

10             THE COURT:  OKAY.  SO HOW QUICKLY -- I MEAN, WE MIGHT

11     AS WELL HAVE A SCHEDULE READY IN THE EVENT THAT THAT HAPPENS.

12     SO HOW QUICKLY COULD YOU RESPOND TO THAT?

13             MR. SAVERI:  A WEEK.

14             MS. DERMODY:  YEAH, WITHIN A WEEK, YOUR HONOR.

15             MR. VAN NEST:  WE CAN FILE WITHIN A WEEK OF RECEIVING

16     THE ORDER FROM THE CIRCUIT.

17             THE COURT:  SURE, OKAY.  SO YOU'LL FILE WITHIN A

18     WEEK, AND THEN THE PLAINTIFFS WOULD OPPOSE WITHIN A WEEK.

19             MR. SAVERI:  YES.

20             THE COURT:  OKAY.

21             MR. SAVERI:  IS THAT --

22             MS. DERMODY:  YEAH.

23             THE COURT:  AND I ASSUME WE'RE ALL TALKING SEVEN DAYS

24     HERE.

25             MR. VAN NEST:  YES.

1           MS. DERMODY:  YEAH.

2           THE COURT:  WILL YOU NEED A REPLY, OR NOT?

3           MR. VAN NEST:  BRIEF.

4           THE COURT:  OKAY.  AND THEN HOW MUCH TIME WOULD YOU

5    LIKE -- WE MIGHT AS WELL SET A SCHEDULE IN THE EVENT THAT THAT

6    HAPPENS.

7           MR. VAN NEST:  FOUR DAYS.

8           THE COURT:  OKAY.  I DOUBT THAT A HEARING WILL BE

9    NECESSARY, BUT IS THIS SOMETHING THAT YOU'LL WANT HEARD?

10          MR. VAN NEST:  I THINK THAT'S UP TO YOUR HONOR.  YOUR

11   HONOR SHOULD LOOK AT THE PAPERS AND DECIDE.

12          THE COURT:  OKAY.

13          MR. VAN NEST:  I DON'T THINK WE'D INSIST ON IT.  I

14   THINK IT'S STRAIGHTFORWARD.

15          THE COURT:  OKAY.  LET ME HEAR FROM THE PLAINTIFFS.

16   IS THAT SOMETHING THAT YOU'RE GOING TO INSIST ON A HEARING ON?

17          MS. DERMODY:  I THINK WE AGREE WITH DEFENDANTS, YOUR

18   HONOR.  I THINK YOUR HONOR MAY HAVE QUESTIONS, IN WHICH CASE

19   WE'D LIKE TO BE IN FRONT OF YOUR HONOR TO ANSWER THEM.  AND IF

20   YOU DON'T HAVE QUESTIONS, WE WOULD TRUST THE COURT TO MAKE A

21   DECISION THAT WAS THE RIGHT DECISION.

22          THE COURT:  OKAY.  SCHEDULING ANYTHING IN THIS CASE,

23   BECAUSE OF THE LARGE NUMBER OF ATTORNEYS, IS QUITE DIFFICULT.

24          MR. VAN NEST:  WE UNDERSTAND.  WE HAVE THE SAME

25   PROBLEM.

```
 1              THE COURT:  YEAH, I'M SURE.  SHOULD WE JUST -- I
 2     DON'T KNOW WHEN YOU'RE ALL COMING IN NEXT.  LET ME LOOK AT THE
 3     CASE SCHEDULE.
 4              MS. DERMODY:  NOT FOR A LONG TIME.
 5              MR. VAN NEST:  WE'RE COMING IN IN MARCH, YOUR HONOR,
 6     FOR HEARINGS ON DISPOSITIVE MOTIONS.
 7              THE COURT:  THAT'S RIGHT.
 8              MR. VAN NEST:  I DON'T BELIEVE THERE'S ANYTHING
 9     SCHEDULED UNTIL THEN.
10              MS. DERMODY:  THAT'S RIGHT.
11              MR. SAVERI:  UNLESS YOU WANTED TO DO SOMETHING, LIKE
12     SET SOMETHING, I DON'T KNOW, ARE YOU THINKING EARLY FEBRUARY
13     THEN?  AND THEN WE -- IF NECESSARY, WE COME IN.  IF NOT, WE'LL
14     JUST STICK TO THE SCHEDULE WE HAVE.
15          IT SOUNDS TO ME LIKE WE'RE TALKING ABOUT 18 DAYS BETWEEN
16     THE TIME OF THE RULING AND THE COMPLETION OF THE BRIEF IF I DID
17     THE MATH RIGHT.
18              MR. VAN NEST:  WE'RE ACTUALLY HERE, YOUR HONOR, I
19     HAVE FEBRUARY 27 FOR --
20              THE COURT:  I THINK YOU'RE HERE ON MARCH 20TH FOR --
21              MR. VAN NEST:  I'M SORRY.  IT'S MARCH 20 AND
22     MARCH 27TH.
23              THE COURT:  SURE, HEARING ON SUMMARY JUDGMENT MOTIONS
24     AND DAUBERT MOTIONS.
25          IN THE EVENT THAT THE CIRCUIT WANTS TO REVIEW THE CLASS
```

1     CERT ORDER, I'M WONDERING IF IT MAY BE BETTER TO HAVE A DATE

2     SOONER, AND IF NO HEARING IS NECESSARY, WE'LL JUST VACATE IT.

3          BUT IT MIGHT -- YOU KNOW, WITH THE DIFFICULTY IN

4     SCHEDULING SOMETHING IN THIS CASE, IT MAY BE WORTH JUST HAVING

5     A BACK-UP DATE.

6          MR. VAN NEST:  THAT'S FINE, YOUR HONOR.  I MEAN, WE

7     CAN ALWAYS CANCEL IF WE DON'T NEED IT.

8          THE COURT:  WE'LL CANCEL IT IF IT'S NOT NECESSARY.

9          MR. VAN NEST:  I WOULDN'T THINK YOU COULD -- WE HAVE

10    14 -- ALMOST 20 DAYS OF BRIEFING IN THERE, SO YOU COULD DO IT

11    LATE JANUARY OR EARLY FEBRUARY, MID-FEBRUARY.

12         THE COURT:  OKAY.  UNFORTUNATELY I WOULD NEED

13    MS. PARKER BROWN TO CHECK MY CALENDAR, SO LET'S -- LET'S --

14    I'LL JUST MAKE A NOTE THAT BEFORE WE LEAVE TODAY, THAT IT WOULD

15    BE NICE TO JUST SET A BACK-UP DATE IN THE EVENT THAT'S

16    NECESSARY.

17         MR. VAN NEST:  GOOD.

18      (DISCUSSION OFF THE RECORD BETWEEN THE COURT AND THE

19    CLERK.)

20         THE COURT:  OKAY.  ALL RIGHT.  MY UNDERSTANDING IS

21    THAT EVEN IF THE COURT OF APPEAL REVIEWS A CLASS CERT ORDER,

22    THAT WOULD NOT IMPACT THE SETTLEMENTS.  IS THAT RIGHT?

23         MR. SAVERI:  THAT WOULD BE OUR POSITION, YOUR HONOR.

24         THE COURT:  OKAY.  DO YOU HAVE A DIFFERING POSITION?

25         MR. VAN NEST:  I DON'T REPRESENT ANY OF THE SETTLING

1    PARTIES, YOUR HONOR, SO I DON'T --

2              THE COURT:  OKAY.  WELL, LET ME SEE.  THE SETTLING

3    PARTIES, MR. KIERNAN, MS. HENN, MS. TURNER RICHARDSON, DO YOU

4    HAVE A VIEW ON THAT?  ARE YOU STILL ON THE LINE?

5              MR. VAN NEST:  WELL, MR. KIERNAN IS RIGHT HERE, YOUR

6    HONOR.

7              MR. KIERNAN:  YES, FOR INTUIT.

8         YOUR HONOR, WE HAVEN'T THOUGHT THROUGH THAT PARTICULAR

9    ISSUE.  I THINK IT DEPENDS ON WHAT THE ORDER WAS.  AS SET FORTH

10   IN THE SETTLEMENT AND IN THE PREVIOUS STATEMENTS TO THE, TO

11   YOUR HONOR, MOST OF THE ELEMENTS ARE THE SAME FOR THE DECISION

12   ON CLASS, AND THE FINAL VOTE WILL BE AT ISSUE FOR THE FINAL

13   APPROVAL --

14             THE COURT:  UM-HUM.

15             MR. KIERNAN:  -- HEARING, FINAL APPROVAL FOR THE

16   SETTLEMENT.

17        SO I THINK MANY OF THE SAME ISSUES WILL BE DECIDED AT THE

18   FINAL APPROVAL STAGE FOR THE SETTLEMENT AS THERE WILL BE ON THE

19   CLASS.

20             THE COURT:  UM-HUM.  SO WHAT DOES THAT MEAN?  WHAT'S

21   THE CONSEQUENCE OF THAT STATEMENT?

22             MR. KIERNAN:  WELL, I THINK, SINCE SOME OF THE ISSUES

23   ARE THE SAME, IF THE -- IF THE PLAINTIFFS HAVE NOT MET THE

24   BURDEN ON SHOWING COMMON IMPACT ACROSS ALL OF THE CLASS

25   MEMBERS --

```
1            THE COURT:  YOU'RE NOT GOING TO GET AN ANSWER BY MAY,

2     OKAY.  MY OTHER APPEALS, THE CIRCUIT TAKES A MINIMUM OF 24

3     MONTHS.  I DON'T THINK WE'LL GET AN ANSWER -- I DON'T KNOW.  I

4     GUESS THEY COULD CHOOSE TO EXPEDITE THIS, BUT IF THINGS GO IN

5     THE ORDINARY COURSE, THERE'S NO WAY WE'D GET AN ANSWER BEFORE

6     THE FINAL APPROVAL HEARING.  WE'D GET AN ANSWER THAT THEY WANT

7     TO REVIEW IT.  I DON'T THINK WE'D GET A SUBSTANTIVE ANSWER ON

8     THE REVIEW.

9            MS. DERMODY:  THAT'S FOR SURE CORRECT, YOUR HONOR.

10     IT'LL TAKE A LONG TIME IF THEY GRANT THE 23(F).  I THINK IF THE

11     SETTLING PARTIES HAVE A DISAGREEMENT ABOUT THE IMPACT OF A

12     GRANT, THEN WE MIGHT WANT TO BRIEF THAT TO YOUR HONOR.

13            THE COURT:  OKAY.

14            MS. DERMODY:  BECAUSE THERE HAVE CERTAINLY BEEN

15     PLENTY OF CASES, INCLUDING CIRCUIT COURT CASES, WHERE THERE'S

16     BEEN A CLASS CERT DENIAL OF A LITIGATION CLASS AND A SUBSEQUENT

17     CERTIFICATION OF A SETTLEMENT CLASS, AND WE COULD BRING THAT

18     AUTHORITY FORWARD IF WE WERE IN THAT POSITION OF HAVING TO

19     ENFORCE THE SETTLEMENT AT THAT POINT.

20        I DON'T THINK WE'RE THERE YET.  I DON'T THINK MR. KIERNAN

21     IS SAYING THAT WE'RE THERE YET.  BUT IF WE --

22            MR. KIERNAN:  YEAH, IT'S SOMETHING THAT WE HAVE NOT

23     DISCUSSED WITH THE CLIENT AND HAVEN'T THOUGHT THROUGH.

24            THE COURT:  SURE.  OKAY.  ALL RIGHT.  WELL, I MEAN,

25     WHAT'S THE LIKELIHOOD THAT THIS WOULD BE AN EXPEDITED REVIEW?
```

1    I MEAN, THE AVERAGE NINTH CIRCUIT REVIEW PERIOD IS 23 MONTHS,

2    AND I THINK ON MY CASES, I'VE SEEN ROUGHLY 23, 27 MONTHS

3    GENERALLY.

4         SO WHAT, WHAT'S YOUR --

5              MR. SAVERI:  I HAVE NO REASON TO -- I JUST DON'T HAVE

6    ANY INFORMATION THAT I COULD RELY ON TO ANSWER.

7              THE COURT:  OKAY.

8              MR. SAVERI:  I JUST -- I MEAN, I HAVE TO BE HONEST

9    ABOUT THAT.  I DON'T SEE WHY THIS WOULD BE EXPEDITED.  I MEAN,

10   PERHAPS.  I JUST DON'T KNOW.

11             MS. DERMODY:  YEAH.  I DON'T SEE THAT, EITHER, YOUR

12   HONOR.  I DON'T THINK THAT'S GOING TO HAPPEN.

13             THE COURT:  OKAY.  ANY DEFENDANT WANT TO HAVE ANY

14   DIFFERENT VIEW EXPRESSED?  NO?  OKAY.

15        ALL RIGHT.  WELL, THEN I GUESS THE HEARING THAT WE SET FOR

16   A MOTION TO STAY THEN MAY ALSO NEED TO BE A HEARING TO ENFORCE

17   THE SETTLEMENT AS WELL.

18             MS. DERMODY:  SURE, YOUR HONOR, IF NEED BE.

19             THE COURT:  IF THAT'S NECESSARY.  I MEAN, ALL OF

20   THIS, WE'RE JUST MAKING CONTINGENCY PLANS.

21             MS. DERMODY:  RIGHT.

22             THE COURT:  SO THEN LET ME HEAR FROM MR. KIERNAN,

23   OR -- I DON'T KNOW, MS. HENN AND MS. TURNER RICHARDSON, ARE YOU

24   STILL ON THE LINE?

25             MS. TURNER RICHARDSON:  YES, YOUR HONOR, WE'RE HERE.

```
1              THE COURT:  OKAY.  DO YOU HAVE A DIFFERENT VIEW THAN

2    MR. KIERNAN AS TO WHETHER THE CIRCUIT AGREEING TO REVIEW THE

3    CLASS CERT ORDER IMPACTS YOUR SETTLEMENT?

4              MS. TURNER RICHARDSON:  NO, YOUR HONOR.  WE ARE IN

5    THE SAME POSITION.

6              THE COURT:  OKAY.  YOU HAVEN'T DECIDED YET?

7              MS. TURNER RICHARDSON:  THAT'S RIGHT, YOUR HONOR.

8              THE COURT:  OKAY.  ALL RIGHT.  SO IF THAT ISSUE --

9    WELL, WOULD THERE BE ANY -- I CAN UNDERSTAND WHY THERE'S A NEED

10   TO EXPEDITE ANY MOTION FOR STAY.  IS THERE ANY NEED TO EXPEDITE

11   A MOTION TO ENFORCE SETTLEMENT?

12             MS. DERMODY:  I THINK THE ONLY DATE THAT'S REALLY

13   IMPORTANT THERE, IS CRITICAL THERE, IS REALLY THE FINAL

14   APPROVAL DATE, AND IF THE DATE STAYS MAY 1ST, THEN THERE'S A

15   LOT OF TIME BETWEEN WHEN WE THINK WE MIGHT GET THE CIRCUIT

16   ORDER ON THE 23(F) AND THAT DATE, AND THAT ALLOWS FOR NORMAL

17   BRIEFING AND EVERYTHING ELSE I THINK.

18             THE COURT:  OKAY.

19             MR. SAVERI:  YEAH, I DON'T THINK WE SHOULD BE --

20             THE COURT:  OKAY.

21             MR. SAVERI:  I THINK WE HAVE A SCHEDULE AND I THINK

22   WE SHOULD TRY TO MARCH THROUGH IT UNLESS THERE'S A REASON TO --

23   UNLESS THERE'S SOME REASON TO CHANGE IT BECAUSE OF SOMETHING WE

24   CAN POINT -- SOMETHING WE CAN POINT TO FROM THE COURT OF

25   APPEAL.
```

1          THE COURT:  OKAY.  ALL RIGHT.  WELL, I'M NOT GOING TO

2     SET ANYTHING ELSE THEN.

3          LET ME ASK MS. PARKER BROWN IF YOU COULD FIND US A

4     POTENTIAL HEARING DATE, WHICH WE MAY NOT NEED BUT I JUST WANT

5     TO RESERVE IT JUST IN CASE, SOME TIME -- I THINK WE'RE PRETTY

6     FULL IN JANUARY AS IT IS.

7          THE CLERK:  I THINK SO, UNLESS YOU WANTED TO

8     SPECIALLY SET IT ON ANY OF THOSE DATES WHEN THE AGUILAR TRIAL

9     WENT AWAY.

10          THE COURT:  WELL --

11          MR. VAN NEST:  JANUARY DOESN'T MAKE A LOT OF SENSE,

12     YOUR HONOR.

13          THE COURT:  NO, BECAUSE THE BRIEFING PROBABLY WON'T

14     EVEN BE DONE UNTIL --

15          MR. VAN NEST:  MID-FEBRUARY IS MORE LOGICAL I THINK.

16          THE COURT:  OKAY.  LET ME SEE IF WE HAVE ANYTHING.

17          MR. SAVERI:  YEAH.  MY PROBLEM, FRANKLY, IS I'M GOING

18     TO BE ABROAD STARTING THE 19TH OF FEBRUARY.

19          THE COURT:  SO YOU NEED IT DONE BEFORE THEN?

20          MR. SAVERI:  YES, PLEASE.

21          MS. DERMODY:  IS THE 12TH A DATE THAT --

22          THE COURT:  I'D LIKE TO PUT IT ON A LAW AND MOTION

23     DATE IF POSSIBLE.

24          THE CLERK:  THE 13TH DOESN'T LOOK TOO BAD.

25          MS. DERMODY:  GREAT.

1          THE CLERK:  I DON'T KNOW WHAT'S HAPPENING WITH SILVA

2     VERSUS TEKSYSTEMS, THAT'S THE DATE FOR THEIR PRETRIAL; HEARING

3     ON CONDITIONAL CLASS ACTION CERTIFICATION ON BENEDICT VERSUS

4     HEWLETT-PACKARD; AND THEN THERE'S A MOTION BY MR. SEPEHRY-FARD.

5          THE COURT:  YOU'RE GOING TO BE HERE ANYWAY, RIGHT?

6          MS. DERMODY:  A TWO-FER.

7          THE COURT:  YEAH, ALTHOUGH THAT IS PROBABLY NOT GOING

8     TO WORK.

9          THE CLERK:  AND A MOTION BY SEPEHRY-FARD; AN ATTORNEY

10    FEE MOTION ON CALDWELL VERSUS WELLS FARGO; A CMC ON MOHEBBI

11    VERSUS KHAZEN AND A MOTION TO DISMISS; AND A MOTION TO DISMISS

12    ON A BANK CASE, BINGHAM VERSUS OCWEN LOAN SERVICING.

13         THE COURT:  IT'S BENEDICT AND THE PTC THAT BOTHER ME

14    THE MOST.  THE REST I THINK WE'D BE OKAY TO SET IT ON THAT

15    DATE.

16         THE CLERK:  THE 6TH IS --

17         THE COURT:  REALLY FULL?

18         THE CLERK:  -- BENEDICT MOTION FOR SANCTIONS, I DON'T

19    KNOW WHY THAT'S ON A DIFFERENT DATE; SOME MOTIONS TO DISMISS;

20    THE PLUMLEE VERSUS PFIZER MOTION FOR JUDGMENT ON THE PLEADINGS;

21    AND THE SKY CHEFS FINAL APPROVAL HEARING.

22         MS. DERMODY:  THE ONLY PROBLEM WITH THE 6TH, YOUR

23    HONOR, IS THAT CURRENTLY THAT'S A DATE FOR OPPOSITION BRIEFS TO

24    BE FILED ON DISPOSITIVE MOTIONS IN THIS CASE, AND I CAN IMAGINE

25    THAT THE VARIOUS TEAMS COULD BE VERY BUSY THAT DAY WITH THOSE

1      BRIEFS.

2             THE COURT:  THAT'S FINE.  ALL RIGHT.  WHAT DO WE HAVE

3      ON THE 20TH?

4             THE CLERK:  FROM WHAT I UNDERSTAND, MR. SAVERI IS

5      GONE.

6             MR. SAVERI:  I'M GOING TO BE IN EUROPE.

7             THE COURT:  YEAH, I KNOW, BUT I JUST WANTED TO CHECK

8      TO SEE IS HOW HEAVY THE LAW AND MOTION IS ON THE 20TH TO SEE IF

9      I COULD PUT THIS ON THE 19TH.

10            MR. SAVERI:  ALL RIGHT.

11            THE CLERK:  THE 20TH IS A MOTION ON, I BELIEVE IT'S

12     LIKE A -- IT'S A MOTION TO REDUCE CIVIL CONTEMPT FINES ON A

13     GOVERNMENT -- IT'S A TAX ONE, ONE OF THOSE.

14            THE COURT:  OKAY.

15            THE CLERK:  THAT SHOULDN'T BE MUCH.

16         CMC ON APPLE II; MOTION TO DISMISS ON KANE VERSUS CHOBANI;

17     SOME PARTIAL SUMMARY JUDGMENT ON NORTH COAST VERSUS HARTFORD;

18     CMC ON FERRANTI VERSUS H-P.

19            THE COURT:  MY CONCERN IS SOME OF THESE CMC'S ARE

20     LAST DAYS.  ARE THESE LAST DAYS FOR DISPOSITIVES?

21            THE CLERK:  NO, WE DON'T SHOW ANY LAST DATES SHOWING.

22            THE COURT:  OKAY.  THE REASON WHY WE SET SO MANY

23     CMC'S ON A THURSDAY, THAT SEEMS ODD, UNLESS IT'S A LAST DAY FOR

24     DISPOSITIVES.

25            THE CLERK:  I DON'T KNOW WHY.  I CAN CHECK THE DOCKET

1    ON THAT ONE.

2              THE COURT:  WELL, IT'S OKAY.  SO THAT'S ALL WE HAVE.

3              THE CLERK:  AND THEN THE PRETRIAL ON BAKHTIARI VERSUS

4    REGISTER TAPES.  I HAVE NO IDEA WHAT'S HAPPENING WITH THAT

5    CASE.  I DON'T THINK THEY'VE HAD DISPOSITIVE MOTIONS YET.

6              THE COURT:  WELL, WHY DON'T -- WE'LL GO AHEAD AND SET

7    IT ON FEBRUARY 19TH.

8         HOW LONG ARE YOU GONE, MR. SAVERI?

9              MR. SAVERI:  TWO WEEKS.

10             THE COURT:  WE COULD ALSO SET IT IN MARCH, ALTHOUGH

11   AT THAT POINT WE'RE STARTING TO RUN UP AGAINST ALL THE SUMMARY

12   JUDGMENT DATES.

13             MS. DERMODY:  RIGHT.

14             THE COURT:  ALL RIGHT.  WHY DON'T WE SET IT FOR

15   FEBRUARY 19TH IN THE EVENT THAT IT'S NECESSARY.

16             THE CLERK:  THAT'S ACTUALLY A FAIRLY GOOD CMC DATE.

17             THE COURT:  OKAY.  LET'S TRY NOT TO SET ANYTHING MORE

18   ON THAT DATE.  SO FEBRUARY 19TH, LET'S SAY 2:00 O'CLOCK PLEASE.

19        OKAY.  ALL RIGHT.  LET'S GO AHEAD AND SET THAT AS A

20   FURTHER CMC AS WELL.

21             MS. DERMODY:  THANK YOU, YOUR HONOR.

22             THE COURT:  ALL RIGHT.  WITH REGARD TO YOUR DISCOVERY

23   DISPUTE, HAVE YOU MADE ANY MORE PROGRESS ON THIS?  I PERSONALLY

24   THINK THAT DR. LEWIN SHOULD ANSWER THESE QUESTIONS, ALTHOUGH

25   WHAT BERKELEY RESEARCH GROUP'S OBJECTION WAS WAS NOT EXPLICITLY

1    CLEAR IN THE JOINT CASE MANAGEMENT STATEMENT.

2         BUT I THINK IT'S LEGITIMATE INFORMATION ABOUT WHAT ANY

3    POTENTIAL -- IT'S LEGITIMATE IMPEACHMENT WHAT POTENTIAL

4    FINANCIAL INTEREST HE MAY HAVE.

5         MR. MITTELSTAEDT:  YOUR HONOR, I THINK THE ONLY

6    QUESTION IS WHETHER THERE SHOULD BE A MEET AND CONFER BETWEEN

7    THE PLAINTIFFS AND BRG.

8         WE DID NOT INSTRUCT HIM NOT TO ANSWER.  HE DECLINED ON --

9    BASED ON THE ADVICE OF HIS GENERAL COUNSEL.  WE OFFERED TO LET

10   THEM MEET AND CONFER.

11        I DON'T THINK THIS IS, YOU KNOW, A CASE DISPOSITIVE ISSUE.

12        MR. SAVERI:  NO.  I THINK WE ARE ENTITLED TO THE

13   ANSWER TO THE QUESTION, THOUGH, AND I THINK THAT

14   MR. MITTELSTAEDT DOESN'T REALLY DISPUTE THAT.

15        MR. MITTELSTAEDT:  AND WE AGREED THAT HE COULD ANSWER

16   IT IN WRITING ON THE RECORD IF YOUR HONOR DIRECTED IT.

17        THE COURT:  OKAY.  YOU KNOW, HIS DEPOSITION WAS A

18   WEEK AGO ON DECEMBER 11TH.

19        MR. SAVERI:  IT WAS RIGHT BEFORE THE CMC WENT IN,

20   TOO, YOUR HONOR, SO --

21        THE COURT:  YEAH.  SO HE SHOULD JUST ANSWER THAT IN

22   WRITING.  OKAY?

23        MR. MITTELSTAEDT:  THANK YOU.

24        THE COURT:  WHEN CAN YOU DO THAT?

25        MR. MITTELSTAEDT:  WITHIN A WEEK.

```
 1                 THE COURT:  OKAY.  THANK YOU.

 2                 MR. MITTELSTAEDT:  THANK YOU, YOUR HONOR.

 3                 THE COURT:  NOW, A WEEK IS GOING TO BE CHRISTMAS DAY.

 4            (LAUGHTER.)

 5                 MS. DERMODY:  MERRY CHRISTMAS.

 6                 MR. MITTELSTAEDT:  HOW ABOUT BY THE END OF THE YEAR?

 7                 THE COURT:  I'M MEAN, BUT NOT THAT MEAN.

 8            (LAUGHTER.)

 9                 THE COURT:  YEAH.  SO WHY DON'T WE SAY --

10                 MR. SAVERI:  THE END OF THE YEAR IS FINE.

11                 THE COURT:  ALL RIGHT.  DO YOU WANT TO JUST SAY

12       DECEMBER 30TH?

13                 MR. MITTELSTAEDT:  THAT'S FINE, YOUR HONOR.

14                 MR. SAVERI:  THAT'S FINE WITH US.

15                 MR. MITTELSTAEDT:  THANK YOU.

16                 THE COURT:  ALL RIGHT.  SO THAT'S DONE.  THANK YOU.

17            OKAY.  IN THE JOINT CASE MANAGEMENT STATEMENT, THE

18       DEFENDANTS HAD NOT YET EXPRESSED THEIR VIEWS ON THE CHANGES TO

19       THE NOTICE AND THE OPT OUT FORM.  SO HAVE YOU HAD ANY FURTHER

20       DISCUSSIONS, OR NOT?

21                 MS. DERMODY:  YES, YOUR HONOR, IF I COULD UPDATE THE

22            COURT.

23            WE'VE HAD VERY PRODUCTIVE DISCUSSIONS WITH THE

24       NON-SETTLING DEFENDANTS.  MR. STONE HAS BEEN LEADING THE CHARGE

25            ON THEIR BEHALF.
```

1          IT'S BEEN VERY COLLABORATIVE, AND JUST BECAUSE OF THE,

2     THEIR SORT OF RECENT NUMBER OF EXCHANGES, WE AREN'T QUITE YET

3     IN A POSITION TO GIVE THE COURT A UNIFIED POSITION.  WE THINK

4     WE'LL BE VERY CLOSE TO DOING THAT, OR IF WE GIVE THE COURT

5     COMPETING VERSIONS, IT'LL BE ONLY A COUPLE OF SECTIONS THAT

6     MIGHT BE DIFFERENT.

7          THE ONE PART THAT I THINK WE WOULD LIKE SOME HELP FROM THE

8     COURT ABOUT --

9               THE COURT:  YES.

10              MS. DERMODY:  -- IS WHETHER TO INCLUDE AN OPT OUT

11    FORM.

12         AND AT THE TIME OF THE CMC STATEMENT, WE, ON THE

13    PLAINTIFFS' SIDE, HADN'T DONE ALL OF THE SORT OF RESEARCH

14    LOOKING IN THE NORTHERN DISTRICT PRACTICE AT OPT OUT FORMS.

15    WE'D HAD EXPERIENCE WITH COURTS ORDERING THEM HERE.

16         SINCE THAT TIME, WE HAVE FOUND SOME AUTHORITY FROM THIS

17    DISTRICT GIVING SOME GUIDANCE ON THIS TOPIC, AND THERE'S A

18    COUPLE CASES I WANTED TO BRING TO THE COURT'S ATTENTION WHICH

19    REALLY CONFIRMED WHAT WE SAID TO THE COURT DURING THE

20    PRELIMINARY APPROVAL HEARING ABOUT THE RISK OF CONFUSION CAUSED

21    BY AN OPT OUT FORM.

22         THE TWO CASES I WOULD BRING TO THE COURT'S ATTENTION ARE

23    KRZESNIAK, WHICH HAS AN ODD SPELLING, IT'S K-R-Z-E-S-N-I-A-K,

24    V. CENDANT CORP.  IT'S A LEXIS CITE, 2007 U.S. DISTRICT LEXIS

25    95145, AND AT PAGES 8 TO 9, IT HAS A HEADING ABOUT AN OPT OUT

1    FORM, IT DISCUSSES THE OPT OUT FORM CONCEPT, AND IT REJECTS THE

2    USE OF AN OPT OUT FORM.

3         THERE'S ALSO A CASE THAT'S QUITE AN EARLY CASE, WHICH I

4    THINK IS WHY WE DON'T SEE THESE OPT OUT FORMS HERE, AND IT'S A

5    CASE FROM 1988, ROBERTS V. HEIM, H-E-I-M, AND IT'S 130 F.R.D.

6    416 AT 423, AGAIN, WARNING ABOUT THE RISK OF CONFUSION OF

7    PEOPLE UNWITTINGLY OPTING OUT OF A CLASS IF YOU INCLUDE AN OPT

8    OUT FORM.

9         THERE HAVE BEEN A NUMBER OF OTHER RECENT CASES THAT ARE

10   OUT OF THE DISTRICT AND OUT OF THE CIRCUIT, AND I CAN GIVE THE

11   COURT THOSE CITES IF THE COURT WOULD LIKE, BUT OTHERWISE I

12   THOUGHT YOU MIGHT WANT TO JUST HAVE THE NORTHERN DISTRICT CITES

13   FOR NOW.

14             THE COURT:  THE KRZESNIAK WAS 2007 LEXIS 95145?

15             MS. DERMODY:  YES, CORRECT.

16             THE COURT:  OKAY.  WHAT WAS THE ROBERTS V. HEIM

17   AGAIN?

18             MS. DERMODY:  IT'S 130 F.R.D. 416 AT PAGE 423.

19             THE COURT:  OKAY.  CAN I ALSO JUST GIVE -- I MEAN, WE

20   HAVE SOME JUST NITS FROM WHAT YOU DID ATTACH TO THE JOINT CASE

21   MANAGEMENT STATEMENT, JUST, YOU KNOW, EXTRA COMMAS AND PERIODS.

22             MS. DERMODY:  GREAT.

23             THE COURT:  BUT WE CAN SAVE THAT FOR WHEN YOU SEND

24   YOUR NEW VERSION.

25        I WANTED TO MAKE JUST ANOTHER SUGGESTION IN THAT NOW THAT

1    WE HAVE A LITTLE BIT MORE COMPLEXITY BECAUSE OF THE SETTLING

2    DEFENDANTS AND THE NON-SETTLING DEFENDANTS AND THE CLASS CERT

3    AND THE NON-SETTLING DEFENDANTS CASE, I THOUGHT THAT IT MIGHT

4    BE HELPFUL, RIGHT AT THE BEGINNING, EVEN BEFORE THE "SUMMARY OF

5    YOUR LEGAL RIGHTS AND OPINIONS" CHART JUST TO HAVE A VERY BRIEF

6    COUPLE SENTENCES THAT JUST SAYS, YOU KNOW, FOR THE -- AND I

7    WOULD DIVIDE IT UP BECAUSE WHEN WE TALK ABOUT THE SETTLING

8    DEFENDANTS AND NON-SETTLING DEFENDANTS IN THE SAME PARAGRAPH, I

9    THINK IT'S KIND OF VERY CONFUSING FOR ANYONE.

10    BUT I WOULD DIVIDE IT UP AND SAY, YOU KNOW, "FOR THE

11    SETTLING DEFENDANTS AND THE SETTLEMENT CLASS, HERE ARE THE

12    PARTIES INVOLVED, THIS IS HOW YOU GET YOUR MONEY, THIS IS HOW

13    YOU OPT IN OR," YOU KNOW, "STAY IN, OR THIS IS HOW YOU OPT

14    OUT."

15    SO JUST A VERY BRIEF, BUT HOPEFULLY FAIRLY CLEAR,

16    INDICATION RIGHT FROM THE BEGINNING.

17    AND THEN FOR THE NON-SETTLING DEFENDANTS AND THE

18    LITIGATION CLASS, "THESE ARE THE PARTIES INVOLVED, THIS IS HOW

19    YOU REMAIN IN, THIS IS HOW YOU OPT OUT," AND JUST HAVE SEPARATE

20    PARAGRAPHS VERSUS CONSTANTLY MIXING THEM BECAUSE I THINK IT CAN

21    GET CONFUSING.

22    SO IF YOU WOULD HAVE THAT EVEN BEFORE THE CHART, A COUPLE

23    OF SENTENCES JUST VERY EASILY EXPLAINS THAT.

24    MS. DERMODY:  SURE, YOUR HONOR.  AND I THINK IN THE

25    JOINT NOTICE THAT WE'VE BEEN WORKING WITH THE NON-SETTLING

1      DEFENDANTS TO PREPARE, THERE'S A LOT MORE ATTENTION TO THE

2      CLARITY OF THE TWO DIFFERENT SORT OF OCCASIONS THAT ARE

3      HAPPENING.

4           THE COURT:  AND I HAD THOUGHT ABOUT IF WE EVEN WANT

5      TWO SEPARATE CHARTS, ONE FOR THE SETTLING DEFENDANTS AND ONE

6      FOR THE NON-SETTLING DEFENDANTS.  I DON'T KNOW IF THAT MAKES IT

7      MORE CONFUSING.  BUT JUST SOME CLEAR DEMARKATION THAT, YOU

8      KNOW, THERE ARE TWO DIFFERENT PROCESSES HAPPENING AND THIS

9      IS --

10           MR. STONE:  WE HAVE THAT.

11           THE COURT:  YOU HAVE IT NOW, PERFECT.  OKAY, GREAT.

12           MR. STONE:  CAN I HAND UP SORT OF -- IT'S OUR VERSION

13      AND IT DOESN'T REFLECT ALL OF THE PLAINTIFFS' DESIRES, BUT IT

14      GIVES YOU SOME SENSE OF THE STRUCTURE.  CAN I HAND THAT UP?

15      THAT MIGHT BE HELPFUL TO THE COURT.

16           THE COURT:  SURE.  THAT ACTUALLY WOULD BE GREAT.

17           MR. STONE:  IT'S NOT ALL AGREED ON, SO LET'S -- I

18      DON'T WANT TO -- BUT IT GIVES YOU A SENSE OF SORT OF HOW WE

19      HAVE AGREED ON SORT OF RESTRUCTURING IT.

20           MS. DERMODY:  AND WITH ALL CREDIT TO MR. STONE FOR

21      THE DIFFERENT CHARTS, THAT WAS HIS TEAM'S VISION.

22           THE COURT:  THAT'S HELPFUL, BECAUSE I WAS ALSO JUST

23      CONFUSED WHEN YOU FIRST READ IT.  YOU KNOW, I JUST WANT

24      SIMPLICITY HERE:  MONEY IN/OUT ON THE FIRST CASE; IN/OUT -- IS

25      THERE MONEY IN THE SECOND CASE?

```
 1            (LAUGHTER.)

 2            THE COURT:  JUST -- WHAT DO PEOPLE CARE ABOUT, RIGHT?

 3            MS. DERMODY:  RIGHT.

 4            THE COURT:  HOW DO I GET MY MONEY IF I OPT IN, OPT

 5   OUT?  JUST MAKE IT CLEAR.

 6        ALL RIGHT.  GOOD.  I LIKE -- BUT I STILL WOULD THINK IN

 7   CASE -- I MEAN, I HAVEN'T LOOKED AT THIS CLOSELY, BUT IT STILL

 8   MAY BE -- IN CASE FOLKS DON'T TAKE THE TIME TO GET THROUGH

 9   PAGES 2 THROUGH 4, IT STILL MIGHT BE WORTH JUST HAVING A VERY

10   QUICK PARAGRAPH, MAYBE EVEN ON THE FIRST PAGE, THAT JUST, IN A

11   COUPLE OF SENTENCES, GIVES THE BASICS.

12            MR. STONE:  THAT'S THE CHALLENGE, ISN'T IT?

13            THE COURT:  JUST SOMETHING TO THINK ABOUT.  I'M NOT

14   SAYING YOU NEED IT.

15        BUT I APPRECIATE THE CHANGES.  I THINK THIS IS GOING TO BE

16   MORE CLEAR.

17            MS. DERMODY:  GREAT.

18            THE COURT:  GO AHEAD.

19            MS. DERMODY:  I'M SORRY.  THERE'S ONE OTHER THING I

20   WANTED TO HIGHLIGHT, YOUR HONOR.  IT'S RELATED TO THE NOTICE,

21   BUT IT'S ALSO REALLY PART OF THE WHOLE CASE, AND THAT IS THAT

22   PLAINTIFFS WANTED TO BRING TO THE COURT'S ATTENTION THE VERY

23   REGRETTABLE NEWS THAT ONE OF THE NAMED PLAINTIFFS,

24   BRANDON MARSHALL, HAS DIED VERY UNEXPECTEDLY AND VERY SADLY.

25   OF COURSE WE'RE ALL VERY SAD ABOUT THE TRAGEDY THERE AND WE
```

1    WANTED TO LET THE COURT KNOW.

2        IT ALSO IMPACTS SOME OF THE LANGUAGE IN THE NOTICE AND A

3    DECISION TO MAKE, IN THE NOTICE, ABOUT SERVICE AWARDS RELATED

4    TO MR. MARSHALL'S ESTATE.

5        THE COURT:  OKAY.

6        MS. DERMODY:  SO WE WANTED TO TALK TO THE COURT ABOUT

7    THE COURT'S VIEWS ON THAT.

8        THE COURT:  NOW OR LATER?

9        MS. DERMODY:  I THINK NOW WOULD BE GREAT TO HAVE THE

10    COURT'S IMPACT.

11        THE COURT:  OKAY.

12        MS. DERMODY:  AND I SHOULD SAY THAT THIS HAS HAPPENED

13    SO SUDDENLY THAT WE AND THE SETTLING DEFENDANTS HAVE NOT HAD A

14    CHANCE TO REALLY VET THIS FULLY, AND I DON'T WANT TO GET OUT IN

15    FRONT OF THEM AND THEIR CLIENTS AND BE REALLY HONEST WITH THE

16    COURT, BUT THEY MAY HAVE A STRONG POSITION THAT THIS IS NOT THE

17    RIGHT THING TO DO.  THEY HAVEN'T EXPRESSED THAT, BUT I WANTED

18    TO LET THE COURT KNOW.  THIS IS ABOUT FEEDBACK ON THE COURT'S

19    PREFERENCES.

20        PLAINTIFFS' COUNSEL'S PREFERENCE WOULD BE THAT OF COURSE

21    WE WOULD REMOVE MR. MARSHALL'S NAME AS ONE OF THE CLASS

22    REPRESENTATIVES NOW SINCE HE WON'T BE GOING FORWARD TO

23    REPRESENT THE CLASS.

24        BUT IN THE SERVICE AWARD SECTION, WE WOULD CONTINUE TO

25    HAVE THE FORMER CLASS REPRESENTATIVE, BRANDON MARSHALL'S

1    ESTATE, BE ELIGIBLE FOR A SERVICE AWARD AND WANTED TO SEE IF --

2    JUST TAKE THE TEMPERATURE OF THE COURT WHETHER YOU WOULD HAVE A

3    VIEW ABOUT THAT.

4         THE COURT:  I THINK THAT'S FINE.  I DO THINK IT NEEDS

5    TO BE EXPLAINED SO THAT OTHER CLASS MEMBERS THINK -- DON'T

6    THINK, "WELL, WHY IS THIS PERSON GETTING MONEY?"  I THINK IT

7    SHOULD BE EXPLAINED THAT HE WAS A PLAINTIFF, AND HE DID X, Y,

8    Z, HE UNEXPECTEDLY PASSED AWAY ON THIS DATE, JUST WITH AN

9    EXPLANATION.

10         MR. SAVERI:  WELL, OF COURSE THAT'LL BE SUBJECT TO

11    THE FINAL APPROVAL PROCESS AND, YOU KNOW, WE'RE GOING TO

12    HAVE -- THE PUBLIC WILL HAVE AN OPPORTUNITY TO BE HEARD ON THE

13    INCENTIVE AWARDS AND EVERYTHING ELSE AND WE'LL HAVE A HEARING

14    IN MAY ON THAT.

15         THE COURT:  RIGHT.  SHE JUST ASKED TO TAKE THE

16    TEMPERATURE, SO I'M JUST SAYING IT SOUNDS FINE, BUT IT WILL

17    NEED TO BE VERY CLEARLY EXPLAINED AND JUSTIFIED.

18         MS. DERMODY:  YES, YOUR HONOR.  THANK YOU, YOUR

19    HONOR.  THAT'S HELPFUL.

20         THE COURT:  SO WHAT IS -- TELL ME THE NEW PROCESS

21    THAT YOU WANT OF WHEN YOU WANT TO SUBMIT A NEW NOTICE FORM AND

22    WHEN THE NEW MAILING NOTICE DEADLINE SHOULD BE.

23         MS. DERMODY:  SO THERE ARE A COUPLE OF MOVING PARTS,

24    YOUR HONOR.

25         THE COURT:  OKAY.

1               MS. DERMODY:  ONE IS THAT MOST OF THE DIFFERENCES

2       RIGHT NOW BETWEEN THE PARTIES ARE AROUND WHETHER OR NOT THERE

3       WOULD BE AN OPT OUT FORM.

4           MOST OF THE LANGUAGE THINGS THAT WE HAVE ARE THINGS THAT I

5       THINK WE CAN WORK OUT TOGETHER.

6           ONCE WE KNOW THE COURT'S VIEW ON THAT, THAT WOULD DIRECT

7       US IN A CERTAIN WAY.  IF THE COURT HASN'T DECIDED THAT, JUST

8       TO, I THINK, PREVIEW OF WHAT WE'LL BE HIGHLIGHTING IS TWO

9       DIFFERENT PROPOSED FORMS OF ORDER WHERE ONE ASSUMES AN OPT OUT

10      FORM AND ONE DOES NOT, AND WE WOULD SUBMIT THEM PROMPTLY,

11      HOPEFULLY IN THE NEXT DAY OR TWO.

12              THE COURT:  OKAY.  WELL, I'LL JUST SAY THAT I THINK

13      IT'S CONFUSING TO HAVE A SEPARATE OPT OUT FORM.  I THINK

14      THAT --

15              MR. STONE:  YOUR HONOR, CAN I --

16              THE COURT:  -- IT'S ALSO MORE CONFUSING BECAUSE THERE

17      ISN'T AN OPT OUT FORM FOR THE SETTLEMENT.

18          AND I DON'T AGREE WITH THE DEFENDANTS THAT THE FEDERAL

19      JUDICIAL CENTER RECOMMENDS A SEPARATE OPT OUT FORM.  THEY

20      SIMPLY SAY A SIMPLE AND CLEAR FORM FOR OPTING OUT IS OFTEN

21      INCLUDED WITH THE NOTICE.

22          THEY FURTHER SAY, "IN A COMBINED NOTICE OF CERTIFICATION

23      AND SETTLEMENT, THE OPT OUT FORM SHOULD BE DISTINGUISHED FROM A

24      CLAIMS FORM OR NOTICE OF APPEARANCE.  COLOR CODING OR SIMILAR

25      APPROACHES MAY BE APPROPRIATE."  AND THOSE ARE JUST QUOTES.

1          I THINK, ESPECIALLY BECAUSE THERE'S NO OPT OUT FORM FOR

2     THE SETTLEMENTS, IT WILL BE MORE CONFUSING.

3          I THINK IF THERE'S VERY CLEAR LANGUAGE OF "THIS IS HOW YOU

4     OPT OUT OF EITHER THE SETTLEMENT OR THE LITIGATION, THAT YOU

5     NEED TO SEND THEM A LETTER, THIS IS THE LANGUAGE" --

6          MR. STONE:  YOUR HONOR, CAN I SPEAK TO THAT BEFORE

7      YOU RESOLVE THE ISSUE?

8          THE COURT:  GO AHEAD.

9          MR. STONE:  THANK YOU VERY MUCH, YOUR HONOR.

10         CAN I FIRST BEGIN BY GIVING YOU A COPY OF THE OPT OUT FORM

11    WE PROPOSE SO YOU'LL KNOW WHAT IT IS THAT WE'RE TALKING ABOUT?

12         AND A COUPLE OF THINGS TO NOTE, I THINK, ABOUT THIS.  AND

13    NEWBERG MAKES PRETTY CLEAR IN NEWBERG THAT THEY ENCOURAGE THE

14    USE OF AN OPT OUT FORM, ESPECIALLY WHEN IT'S NOT A SETTLEMENT,

15    AS WE HAVE HERE.  THIS IS THE CONTINUING LITIGATION.

16         AND NEWBERG, FOR EXAMPLE, SAYS, "IN ADDITION TO THESE

17    CONSIDERATIONS, THE MANUAL" -- NOW, THEY READ THE MANUAL

18    SLIGHTLY DIFFERENT THAN YOU DO -- "ALSO SUGGESTIONS INCLUDING A

19    CLEARLY WRITTEN OPT OUT FORM EASILY DISTINGUISHED FROM ANY

20    PROOF OF CLAIM FORMS."

21         AND HERE, FOR PURPOSES OF THE CONTINUING LITIGATION,

22    THERE, OF COURSE, ARE NO CLAIM FORMS.  THERE'S ONLY A BINARY

23    DECISION OF WHETHER TO STAY IN THE CASE OR OPT OUT.

24         AND IN SIMILAR CASES RECENTLY, LIKE, FOR EXAMPLE, IN THE

25    CASE OF CHING VERSUS SIEMENS, IN A NOVEMBER 27TH, 2013 ORDER,

1     MAGISTRATE JUDGE JAMES RULED THAT THERE WOULD BE AN OPT OUT

2     FORM USED.   THAT IS AT WEST LAW CITE 2 -- 2013 WEST LAW

3     6200190.

4          AND THEN THERE'S THE DECISION IN EVANS VERSUS LINDEN

5     RESEARCH, OCTOBER 25TH OF 2013, MAGISTRATE JUDGE RYU -- I MAY

6     NOT BE PRONOUNCING THAT CORRECTLY AND I APOLOGIZE IF I

7     DIDN'T -- WHICH IS 2013 WEST LAW 5781284.   SO THOSE ARE RECENT

8     EXAMPLES OF OPT OUT FORMS BEING USED.

9          IT'S EASY TO GET OPT OUT FORMS EVEN OFF THE WEB, AND JUST

10    LOOKING UP CASES THAT ARE PENDING, LIKE THE EXPEDIA CASE, FOR

11    EXAMPLE, IS ONE WHERE THERE'S A SIMPLE OPT OUT FORM SIMILAR TO

12    THE ONE WE'VE PROPOSED.

13         BUT THE REAL QUESTION IS WHERE THE -- WHY DO YOU DO THAT?

14    AND DO YOU THAT FOR TWO REASONS:   YOU DO THAT BECAUSE THE

15    SUPREME COURT SAID YOU DO THAT IN SHUTTS, AND NOT EVERYBODY HAS

16    GONE BACK AND LOOKED AT THAT, AND OFTEN IN THE SETTLEMENT

17    CONTEXT, IT'S NEVER A CONTESTED ISSUE.

18         BUT THE SUPREME COURT IN SHUTTS SAID THE FOLLOWING:

19    "ADDITIONALLY, WE HOLD THAT DUE PROCESS REQUIRES, AT A MINIMUM,

20    THAT AN ABSENT PLAINTIFF BE PROVIDED WITH AN OPPORTUNITY TO

21    REMOVE HIMSELF FROM THE CLASS BY EXECUTING AND RETURNING AN OPT

22    OUT OR REQUEST FOR EXCLUSION FORM TO THE COURT."

23         AND IN THAT CASE, THEY WERE REFERRING TO IT AS AN

24    EXECUTING AND RETURNING, NOT HAVING TO WRITE A LETTER, AND IN

25    THAT CASE A FORM HAD BEEN PROVIDED, JUST AS WE PROPOSE,

1    ALONGSIDE THE NOTICE AND, IN MANY OF THESE CASES, IT'S ALSO

2    PROVIDED ON THE WEBSITE.

3         NOW, WHY WOULD YOU DO IT?

4         BECAUSE ULTIMATELY YOU WANT THIS TO BE NEUTRAL FOR THE

5    CLASS MEMBERS.  YOU WANT IT TO BE AS EASY AS YOU CAN TO EITHER

6    OPT OUT OR STAY IN.  YOU CAN'T MAKE IT PERFECTLY SYMMETRICAL

7    BECAUSE, DOING NOTHING, THEY STAY IN.

8         SO WHAT YOU WANT TO DO IS MAKE IT AS EASY AS POSSIBLE FOR

9    THEM TO OPT OUT IF THEY CHOOSE TO DO IT.  SAYING THAT THEY HAVE

10   TO WRITE A LETTER -- AND IN THIS CASE THE PLAINTIFFS SAY NOT

11   ONLY DO THEY HAVE TO WRITE A LETTER, THEY HAVE TO MAKE SURE

12   THEY DESCRIBE WHERE THEY WORKED, THE ADDRESS WHERE THEY WORKED,

13   AND THE DATES WHERE THEY WORKED, WHICH IS A BURDEN THAT IS

14   UNNECESSARY IN THIS CASE BECAUSE THE PLAINTIFFS' COUNSEL

15   ALREADY KNOW THAT FROM THE INFORMATION THEY'VE BEEN PROVIDED.

16        BUT HERE THEY HAVE TO WRITE A LETTER AND THEY HAVE TO USE

17   MAGIC WORDS BECAUSE THE PROPOSED NOTICE SAYS YOU HAVE TO USE

18   EXACTLY THESE WORDS.

19        WE SHOULD GIVE THEM AN OPT OUT FORM SO THAT THEY CAN

20   CLEARLY AND EASILY OPT OUT WITH THE LEAST POSSIBLE BURDEN.  IT

21   SHOULD BE INCLUDED WITH THE NOTICE.  IT SHOULD BE ON THE

22   WEBSITE THAT'S AVAILABLE.  SHUTTS SAYS YOU SHOULD DO IT FOR DUE

23   PROCESS PURPOSES.

24        AND I RECOGNIZE THAT SOME COURTS HAVE NOT REQUIRED IT.

25        BUT RECENTLY IN THIS DISTRICT, AND MANY DISTRICTS, YOU CAN

1    FIND INSTANCE AFTER INSTANCE, ESPECIALLY IN CASES THAT ARE

2    LITIGATED AND NOT SETTLED, WHERE THE COURTS HAVE SAID, "YOU

3    SHOULD GIVE THEM THE OPT OUT FORM."

4         THAT'S THE CLEAREST AND EASIEST WAY FOR THEM TO OPT OUT.

5    TO TELL THEM THEY HAVE TO WRITE A LETTER, USE MAGIC WORDS AND

6    PUT IN UNNECESSARY INFORMATION HEIGHTENS THE BURDEN TO THE

7    CLASS MEMBER WHO WANTS TO OPT OUT AND THAT'S NOT FAIR.

8         AND THE RISK OF CONFUSION HERE DOESN'T EXIST.  THE FORM

9    I'VE HANDED UP TO THE COURT IS NOT IN ANY WAY CONFUSING.  IT'S

10   NOT GOING TO BE CONFUSED WITH A CLAIMS FORM.

11        THE FACT THAT THE SETTLING DEFENDANTS CHOSE TO PROCEED

12   WITH THE CLAIMS FORM AND NO OPT OUT FORM SHOULDN'T BIND THE

13   NON-SETTLING DEFENDANTS BECAUSE WE'RE ENTITLED TO HAVE CLASS

14   MEMBERS MAKE AN UNBIASSED, NEUTRALLY-BASED CHOICE WHETHER TO

15   STAY IN THE CASE OR GET OUT, AND FOR THEM TO HAVE A FORM THEY

16   CAN FILL OUT, THEY SHOULD BE ABLE TO SUBMIT IT ON-LINE, THEY

17   SHOULD BE ABLE TO GET A COPY ON-LINE, AND THEY SHOULD BE ABLE

18   TO JUST TAKE A FORM, CHECK A BOX, AND SEND IT IN.

19        AND THAT'S VERY MUCH LIKE THE EXAMPLES OF FORMS THAT WERE

20   USED IN THREE OTHER CASES.  AND THERE'S NO MAGIC TO MY THREE

21   CASES.  I JUST WENT TO WEB AND PULLED THEM.  BUT I HAVE THE

22   EXPEDIA CASE, WHICH I BELIEVE WAS AN MDL CASE; I HAVE A CASE

23   AGAINST THE CITY OF NEW YORK; AND I HAVE A CASE THAT I KNOW IS

24   AN MDL CASE, WACHOVIA SECURITIES IN WHICH THE COTCHETT FIRM,

25   AMONG OTHERS, WAS THE PLAINTIFFS' LAWYERS.

1       AND I JUST WOULD LIKE TO HAND YOU THESE THREE EXAMPLES OF

2   OPT OUT FORMS THAT HAVE BEEN USED RECENTLY, I THINK IN EACH

3   INSTANCE SINCE EITHER OF THE TWO CASES, THE 1988 CASE AND THE

4   2007 CASE, THAT PLAINTIFFS HAVE CITED TO YOU.

5       SO WE HAVE 2013 AUTHORITY IN THIS DISTRICT; WE HAVE THE

6   SHUTTS CASE, THE SUPREME COURT'S DECISION, WHICH SAYS DUE

7   PROCESS REQUIRES IT; AND WE HAVE ALL THESE MAJOR CASES WHICH

8   WERE BEING LITIGATED, NOT NECESSARILY SETTLED CASES, WHERE THE

9   COURTS HAVE USED OPT OUT FORMS SIMILAR TO OURS.

10          THE COURT:  OKAY.  I HAVE A JURY WAITING AND I'M

11   SEEING THE LAWYERS IN THAT TRIAL COMING IN AND OUT.

12          MR. STONE:  I APOLOGIZE FOR GOING ON TOO LONG, YOUR

13   HONOR.

14          THE COURT:  SO I DO NEED TO HAVE THIS -- THEY ASKED

15   FOR READ BACK OVER HALF AN HOUR AGO.

16          MS. DERMODY:  YOUR HONOR, DO YOU WANT A RESPONSE ON

17   THAT ARGUMENT?  OR DOES IT NOT REQUIRE IT?

18          THE COURT:  I'LL GIVE YOU A MINUTE.

19          MS. DERMODY:  OKAY.  SO I THINK THAT THE IDEA OF THIS

20   EQUIVALENCY BETWEEN CLAIM FORMS AND OUT OPTS IS A FALSE ONE,

21   AND JUDGE JAMES ACTUALLY IN THE KRZESNIAK CASE HIGHLIGHTS THAT

22   IN THAT DECISION.

23          SHUTTS STANDS FOR THE PROPOSITION THAT PEOPLE NEED TO HAVE

24   THE RIGHT TO OPT OUT, AND THAT RIGHT IS GUARANTEED BY THE

25   PROCESS THAT WE HAVE PROVIDED.  THE ISSUE OF DUE PROCESS IS AN

1    ISSUE TO THE CLASS MEMBERS, NOT AN ISSUE TO THE DEFENDANTS, AND

2    BY HAVING AN OPT OUT FORM THAT CONFUSES THEM AND HARMS THEIR

3    RIGHTS, IT'S NOT IN THEIR INTERESTS.

4         I THINK IT'S ALSO SOMETHING THAT IS A CONCERN FOR US THAT

5    YOU OPT OUT OF A CASE BECAUSE YOU WANT TO PRESERVE LEGAL RIGHTS

6    AND BRING YOUR OWN LAWSUIT.  HERE, IF CLASS MEMBERS ARE BEING

7    ENCOURAGED TO OPT OUT OF THE CASE, THERE IS NO WAY THEY CAN

8    AFFORD TO BRING INDIVIDUAL ANTITRUST CLAIMS AGAINST THESE

9    DEFENDANTS, SO IT'S A FALSE CONCEPT IN THIS TYPE OF CASE THAT

10   CLASS MEMBERS SHOULD BE VERY CAREFULLY PROTECTED AND ENCOURAGED

11   TO OPT OUT BECAUSE OF THESE GREAT CLAIMS THAT THEY HAVE.

12        AS A PRACTICAL MATTER, THE EXPERT COSTS AND THE AMOUNT OF

13   WORK THAT THEY HAVE TO DO, NO INDIVIDUAL COULD PROTECT HIS OR

14   HER RIGHTS BY OPTING OUT.

15        SO YOU'RE NOT ACTUALLY PROTECTING ANYTHING BUT THE

16   DEFENDANTS' INTERESTS BY HAVING A FORM THAT ENCOURAGES OPT OUTS

17   WITH THIS FALSE EQUIVALENCY AND THAT CONFUSES PEOPLE,

18   PARTICULARLY THE PEOPLE THAT WANT TO PARTICIPATE IN THE

19   SETTLEMENT, AND THE OPT OUT FORM THAT MAKES THEM THINK, "I'VE

20   GOT TO FILL THIS OUT TOO IN ORDER TO GET SOME MONEY OUT OF THIS

21   CASE."

22        THE COURT:  WELL, I'M NOT GOING TO REQUIRE OPT OUTS.

23        THE ONLY QUESTION I DO HAVE IS, IF SOMEONE JUST SAYS THIS

24   LANGUAGE -- AND THIS IS IN ECF 543-1 AND THIS IS THE NOTICE

25   THAT WAS ATTACHED TO THE JOINT CASE MANAGEMENT STATEMENT.  IT

1    SAYS, "I WANT TO BE EXCLUDED FROM THE HIGH-TECH EMPLOYEE

2    ANTITRUST LITIGATION CLASS ACTION LAWSUIT."  IT'S NOT EVEN

3    REALLY CLEAR WHICH CASE THEY'RE TALKING ABOUT.  ARE THEY

4    TALKING ABOUT THE NON-SETTLING DEFENDANTS OR ARE THEY TALKING

5    ABOUT THE SETTLING DEFENDANTS?

6         MS. DERMODY:  WE'LL MAKE THAT CLEAR, YOUR HONOR.  I

7    THINK THAT'S A GOOD SUGGESTION.

8         THE COURT:  AND THIS ADDITIONAL SENTENCE, "I

9    UNDERSTAND THAT THIS MEANS I WILL NOT BE ABLE TO GET ANY FUTURE

10   MONEY OR BENEFITS FROM THE CASE."

11        THAT DOES SEEM UNDULY BURDENSOME AND ONEROUS.  IF SOMEONE

12   SENT IN A FORM THAT JUST SAYS, YOU KNOW, "I WANT OUT OF THE

13   ONGOING LAWSUIT IN THE HIGH-TECH CASE," I THINK THAT SHOULD

14   PROBABLY BE HONORED WHETHER THEY PUT THESE -- I THINK HAVING

15   THIS ADDITIONAL REQUIREMENT THAT SOMEONE NEEDS TO SAY, QUOTE,

16   "I UNDERSTAND THAT THIS MEANS I WILL NOT BE ABLE TO GET ANY

17   FUTURE MONEY OR BENEFITS FROM THIS CASE," I THINK THAT IS

18   UNDULY BURDENSOME AND I WOULD NOT WANT SOMEONE'S OPT OUT OR

19   EXCLUSION TO BE SET ASIDE BECAUSE THEY DIDN'T HAVE THAT, THAT

20   LANGUAGE IN THEIR LETTER.

21        MS. DERMODY:  OKAY, YOUR HONOR.

22        MR. STONE:  YOUR HONOR, I'D ALSO ASK -- I UNDERSTAND

23   THE COURT'S RULING.

24        THE COURT:  YEAH.

25        MR. STONE:  I'D ALSO ASK THAT YOU NOT REQUIRE THEY

```
 1      GIVE THE DATES OF THEIR EMPLOYMENT AND THE ADDRESSES AT WHICH

 2      THEY WORKED.  I THINK THAT'S UNNECESSARY GIVEN THAT THE LIST OF

 3      NAMES HAS ALREADY BEEN PROVIDED TO THE PLAINTIFFS AND THEY CAN

 4      CORRELATE THE NAME OF THE PERSON WHO RESPONDS WITH THE

 5      INFORMATION THAT CAUSED THEM TO SEND THEM THE NOTICE IN THE

 6      FIRST PLACE.

 7              THE COURT:  THAT DOES SEEM UNDULY BURDENSOME.  WHY DO

 8      THEY NEED TO DO THAT?

 9              MS. DERMODY:  THE ONLY THING, WE'D NEED TO HAVE

10      SOMETHING IDENTIFYING THEM SO IT WOULD BE CLEAR WHICH EMPLOYEE

11      IT WAS IF THEY HAD A COMMON LAST NAME, SMITH, LEE, JONES.

12              THE COURT:  OKAY.  WHAT ABOUT REQUIRING THEM TO

13      IDENTIFY THE COMPANY?  THAT SEEMS --

14              MR. STONE:  THAT SEEMS EASY.

15              THE COURT:  AND THEN IF THERE'S STILL AN IDENTITY

16      ISSUE, THE CLAIMS ADMINISTRATOR SHOULD FOLLOW UP WITH THAT

17      PERSON AND FIND OUT WHICH JOHN SMITH WE'RE TALKING ABOUT.

18              MS. DERMODY:  THAT MAKES SENSE, YOUR HONOR, YES.

19              THE COURT:  I DON'T WANT IT TO BE UNDULY BURDENSOME.

20      I AGREE WITH MR. STONE TO THE EXTENT THAT SOME MAGIC LANGUAGE

21      IS NOT REQUIRED, AND CERTAINLY NOT THIS ADDITIONAL SENTENCE.

22          I'M SORRY, BUT I'M NOT GOING TO REQUIRE A SEPARATE OPT OUT

23      FORM.  I THINK IT WOULD BE CONFUSING IN THIS CASE BECAUSE THERE

24      ISN'T AN OPT OUT FORM WITH THESE SETTLING DEFENDANTS, AND I

25      DON'T THINK IT'S REQUIRED EVEN BY THE FEDERAL JUDICIAL CENTER
```

```
 1          DOCUMENT OR NECESSARILY RECOMMENDED BY THEM.

 2               MR. STONE:  YOUR HONOR, ON THE FEDERAL JUDICIAL

 3          CENTER -- I KNOW THE COURT IS OUT OF TIME AND I APOLOGIZE --

 4          BUT IN THE SECTION OF THE FORMS, IT DISCUSSIONS NON-SETTLING

 5          CASE, WHICH IS THE LABOR CASE, THE WAGE AN HOUR CASE.

 6               THE EXAMPLE THERE, THEY DO INCLUDE THE SEPARATE OPT OUT

 7          FORM THAT WE HAVE.  SO IF YOU LOOK AT THE FEDERAL JUDICIAL

 8          CENTER FOR ONE THAT IS NOT IN THE CONTEXT OF A SETTLEMENT,

 9          YOU'LL SEE IT PROPOSES A FORM JUST AS WE'VE SUBMITTED TO THE

10          COURT.

11               MS. DERMODY:  THERE'S THREE EXAMPLES, YOUR HONOR.

12          TWO DON'T HAVE ANY OPT OUT FORM ATTACHED TO THEM.

13               MR. STONE:  AND THOSE ARE SETTLEMENT CASES, YOUR

14          HONOR, AND I THINK THERE'S A BIG DIFFERENCE WHEN YOU DON'T HAVE

15          A SETTLEMENT.

16               SO I REALLY DO THINK --

17               THE COURT:  BUT HERE WE DO HAVE A SETTLEMENT, AND THE

18          PROBLEM IS THE NOTICE IS GOING TO THE SAME INDIVIDUALS SO I

19          THINK SOME OF THE CONFUSION CONCERNS WOULD EXIST HERE.  IT'S

20          NOT A PURE SETTLEMENT, BUT IT IS ALSO NOT A NON-SETTLEMENT

21          CASE.  IT'S A HYBRID.

22               MR. STONE:  WE COULD DO SEPARATE NOTICES.  THEY COULD

23          GO IN THE SAME ENVELOPE -- WE'RE NOT TRYING TO INCREASE THE

24          COSTS -- BUT THEY COULD BE SEPARATE NOTICES TO MAKE THAT CLEAR.

25          THAT'S VERY EASY TO DO.  THAT'S WHAT WE HAD UNDERSTOOD WOULD
```

1       LIKELY HAPPEN UNTIL THEY PROPOSED THIS JOINTLY QUITE RECENTLY.

2           WE HAD EXPECTED THEM TO --

3               THE COURT:  NO.  I THINK IF YOU DO ONE, PEOPLE WILL

4       GET CONFUSED AND THEY'LL JUST OPEN ONE AND THEY WON'T EVEN OPEN

5       THE OTHER.

6           SO I THINK IT NEEDS TO BE ONE NOTICE, ONE MAILING, NO

7       SEPARATE OPT OUT FORM.

8           BUT I AGREE WITH YOU THAT IT SHOULD BE AS MINIMALLY

9       BURDENSOME AS POSSIBLE AND THEY SHOULD NOT HAVE TO GIVE THEIR

10      DATES OF EMPLOYMENT, THEY SHOULD NOT HAVE TO HAVE SPECIFIC

11      MAGIC WORDS, THEY DEFINITELY DON'T HAVE TO HAVE THE SECOND

12      SENTENCE THAT'S IN THE DRAFT NOTICE THAT WAS FILED AS ECF

13      DOCKET NUMBER 543-1.

14          OKAY.  ANYTHING ELSE?

15          OH, DEADLINE.  LET'S QUICKLY, QUICKLY DO THE DEADLINE.

16          DID WE GET ANOTHER JURY NOTE?

17              THE CLERK:  YES.

18              THE COURT:  WHAT DID THEY SAY?

19          (PAUSE IN PROCEEDINGS.)

20              THE COURT:  ALL RIGHT.  LET'S FIGURE THIS OUT.

21      UNDERSTANDING THAT THERE WILL NOT BE A REQUIREMENT FOR AN OPT

22      OUT FORM, HOW QUICKLY CAN YOU FILE THE REVISED NOTICE, TAKING

23      INTO ACCOUNT THE INPUT OF THE NON-SETTLING DEFENDANTS?  AND

24      WHAT DATE DO WE NEED FOR THE MAILING?  WHAT DEADLINE DO WE NEED

25      FOR THE MAILING OF THE NOTICE?

1            MS. DERMODY:  SO I THINK FRIDAY.  WE CAN DO FRIDAY IF

2     THAT WORKS FOR YOU, MR. STONE.

3            MR. STONE:  YOU KNOW, I WOULD RATHER DO IT, IF WE

4     COULD, ON TUESDAY.

5            MS. DERMODY:  CHRISTMAS EVE?

6            MR. STONE:  OH, MAYBE I'M MISREADING IT.  I'D RATHER

7     DO IT ON MONDAY, THE 23RD.  I DIDN'T WANT TO DO IT ON CHRISTMAS

8     EVE.

9            THE COURT:  HOW QUICKLY DO YOU NEED IT BACK?

10           MS. DERMODY:  HEFFLER, OUR CLAIMS ADMINISTRATOR,

11    NEEDS SOME TIME WITH THE NOTICE, AND IT'S THE HOLIDAYS SO IT'S

12    A LITTLE BIT SCREWY.

13           THE COURT:  SURE, UH-HUH.

14           MS. DERMODY:  I THINK THERE WAS AN ISSUE ALSO THAT

15    SOME OF THE DEFENDANTS, I'M TOLD --

16           MR. SAVERI:  ARE CLOSED.

17           MS. DERMODY:  -- WILL BE CLOSED OVER THE HOLIDAYS.

18    SO I THINK IF WE COULD DO SOMETHING THAT WOULD BE LATE

19    CHRISTMAS WEEK, GIVING OURSELVES AT LEAST TEN BUSINESS DAYS TO

20    GET NOTICE OUT BY THE 8TH, 9TH, 10TH OF JANUARY.

21           THE COURT:  HOW MUCH TIME DO YOU NEED?

22           MR. SAVERI:  I THINK IF WE GOT AN ORDER APPROVING THE

23    FORM OF NOTICE, FOR EXAMPLE, BY THE 27TH -- AND I DON'T KNOW

24    WHAT YOUR CALENDAR IS -- BUT IF WE HAD SOMETHING BY THE 27TH,

25    WE COULD GET IT OUT IN A TIMELY MANNER GIVEN THE HOLIDAYS.

1          MS. DERMODY:  IT WOULD HAVE TO BE AFTER THE 8TH, 8TH

2     OR 9TH EVEN.

3          THE COURT:  OKAY.  AND THAT WOULD BE IN TIME FOR -- I

4     KNOW YOU SAID THAT THIS HAS TO BE DONE BEFORE THE SUMMARY

5     JUDGMENT HEARING.

6          MR. SAVERI:  YES.

7          MS. DERMODY:  YES.  IT WOULD BE 70 -- 69, 70 DAYS.

8          THE COURT:  OKAY.  SO IF YOU MAIL IT OUT, LET'S SAY,

9     BY THE 10TH, IS THAT ENOUGH TIME?

10          MR. SAVERI:  YES.

11          MS. DERMODY:  YES.

12          THE COURT:  ALL RIGHT.  WHY DON'T WE SAY THEN YOU'LL

13     MAIL IT OUT BY THE 8TH, AND IF YOU -- SO WHEN --

14          MR. STONE:  YOUR HONOR, IF WE COULD SUBMIT ON THE

15     23RD WHATEVER REMAINS IN DISPUTE, IF ANYTHING, FOR YOUR

16     APPROVAL.

17          THE COURT:  OKAY.

18          MR. STONE:  THEN IF THAT WOULD GIVE YOU ENOUGH

19     TIME -- WE'RE CLOSE ON MUCH OF IT, AND YOUR RULING TODAY

20     SIMPLIFIES SOME OF THE ISSUES.

21          THE COURT:  OKAY.

22          MR. STONE:  SO IF WE COULD --

23          THE COURT:  SURE.

24          MR. STONE:  I JUST WAS HOPING WE COULD FILE, ON THE

25     23RD, A JOINT DOCUMENT WHICH WOULD HAVE PLAINTIFFS' VERSION AND

1    DEFENDANTS' VERSION, AND WHEREVER THERE'S A DISPUTE, YOU COULD

2    RESOLVE IT OR DRAFT YOUR OWN LANGUAGE.

3          THE COURT:  ALL RIGHT.  I MEAN, I WAS HOPING FOR

4    TOMORROW JUST BASED ON MY OWN SCHEDULE, BUT IF YOU NEED THE

5    TIME, THEN THE 23RD IS FINE.  AND IF I CAN, I'LL GET THIS OUT

6    ON THE 27TH.  NO GUARANTEES, THOUGH.

7          MS. DERMODY:  WOULD YOU LIKE IT IN THE MORNING OF THE

8    23RD, YOUR HONOR, OR BY NOON?  WOULD THAT --

9          THE COURT:  THAT WOULD HELP.

10          MR. STONE:  I THINK THAT'S DOABLE.

11          THE COURT:  BUT IF YOU'RE GOING TO FILE IT NEXT WEEK,

12    I'M PROBABLY NOT GOING TO LOOK AT UNTIL THE 27TH.

13          MS. DERMODY:  OKAY.

14          THE COURT:  I MEAN, TOMORROW WOULD BE BETTER.  I WILL

15    DEFINITELY BE ABLE TO LOOK AT IT TOMORROW.  BUT THAT DOESN'T

16    SOUND DOABLE.  IS THAT RIGHT?

17          MR. STONE:  I'M AFRAID NOT FOR ME IT'S NOT.

18          THE COURT:  THAT'S FINE.  OKAY.  FILE IT BY NOON ON

19    MONDAY, DECEMBER 23RD, AND WE'LL TRY TO GET THIS OUT ON THE

20    27TH, WHICH IS FRIDAY.

21          MS. DERMODY:  THAT WOULD BE GREAT, YOUR HONOR.

22          THE COURT:  IF WE CAN'T, IT MAY SLIP TO THE 30TH, OR

23    EVEN -- IF IT SLIPS TO THE 31ST, THOUGH, YOU COULD STILL GET IT

24    OUT BY, WHAT, THE 10TH?

25          MS. DERMODY:  I THINK THAT'S RIGHT, YOUR HONOR.  THE

1    HOLIDAYS ARE, FOR THE VENDOR, A CHALLENGE.

2              THE COURT:  ALL RIGHT.  WHY DON'T WE SAY THE DEADLINE

3    WILL BE THE 10TH.  IF YOU CAN GET IT OUT SOONER, THAT'S BETTER.

4              MS. DERMODY:  GREAT.

5              THE COURT:  WE'LL SAY THE 10TH AND WE'LL TRY TO GET

6    YOU THE RULING BY THE 27TH, OR IF NOT, THEN THE 30TH.

7              MS. DERMODY:  THANK YOU, YOUR HONOR.

8          MR. SAVERI:  SO --

9              THE COURT:  WHAT IS THE ABSOLUTE DEADLINE, DO YOU

10   KNOW, FOR HOW MUCH TIME YOU NEED FOR THE MAILING?  TEN DAYS?

11             MS. DERMODY:  REALLY IT'S LIKE -- IT'S TEN DAYS IN A

12   REGULAR CALENDAR.  OVER THE HOLIDAYS THINGS ARE A LITTLE BIT

13   DIFFERENT I'M TOLD, SO TEN BUSINESS DAYS SHOULD BE ENOUGH, TEN

14   REGULAR DAYS IN THE REST OF THE YEAR.

15             MR. SAVERI:  RIGHT.  THAT'S RIGHT.  I MEAN, WE'RE

16   HAVING THIS PROBLEM BECAUSE OF THE HOLIDAYS.

17             THE COURT:  OKAY.  WELL, I DON'T EVEN THINK THERE --

18   THERE'S NOT EVEN TEN BUSINESS DAYS BETWEEN DECEMBER 27TH AND

19   JANUARY 10TH.

20             MS. DERMODY:  I THINK THEY'RE VERY CLOSE.

21             THE COURT:  YOU WANT TO JUST SAY THE DEADLINE IS THE

22   13TH OR THE 14TH OR THE 15TH?  I DON'T KNOW IF THAT'S ENOUGH

23   TIME.  WHY DON'T YOU JUST INCLUDE IN WHAT YOU'RE GOING TO FILE

24   ON MONDAY, LET ME KNOW WHAT'S THE DEADLINE.

25             MS. DERMODY:  PERFECT, YOUR HONOR.  THANK YOU.  WE'LL

```
 1        DO THAT.

 2              THE COURT:  AND THEN PROPOSE THE MAILING NOTICE

 3        DEADLINE THAT WOULD ENABLE US TO MOVE FORWARD IN MARCH --

 4              MS. DERMODY:  YES.

 5              MR. SAVERI:  ALL RIGHT.

 6              THE COURT:  -- AND DO THE CALCULATIONS.

 7        OKAY.  WHAT ELSE?  ANYTHING ELSE?

 8              MS. DERMODY:  ONE LAST THING THAT WE HAD ON OUR LIST,

 9        YOUR HONOR, AND AGAIN WE'RE LOOKING FOR THE COURT'S FEEDBACK ON

10        SOMETHING.

11        SO AS THE COURT KNOWS, ON JANUARY THE 9TH WE HAVE MOTIONS

12        DUE, MOTIONS REGARDING EXPERTS AND A NUMBER OF OTHER THINGS IN

13        THE CASE.

14        AS IT STANDS FROM THE PLAINTIFFS' SIDE, IF THE COURT'S

15        VIEW IS THAT WE DON'T NEED TO MOVE NOW TO EXCLUDE EXPERT

16        TESTIMONY FOR TRIAL -- AND THIS IS ONLY ABOUT REALLY EXCLUDING

17        EXPERT TESTIMONY IN CONNECTION WITH SUMMARY JUDGMENT -- THEN WE

18        MIGHT WAIT TO FILE A NUMBER OF MOTIONS ABOUT EXPERTS UNTIL MUCH

19        LATER IN THE CASE DEALING WITH PARTS OF THEIR TESTIMONY THAT WE

20        THINK SHOULD BE EXCLUDED FOR TRIAL PURPOSES.

21        HOWEVER, IF THE COURT WANTS ALL OF THAT DONE NOW, THEN WE

22        WILL BE FILING THOSE MOTIONS NOW TO PRESERVE OUR ARGUMENTS

23        ABOUT TESTIMONY AT TRIAL.

24        SO JUST KNOWING WHAT THE COURT'S VIEW OF THIS TIMING IS

25        WOULD BE USEFUL TO US.
```

1           THE COURT:  WELL, I THOUGHT ALL DAUBERTS WOULD BE DUE

2      ACCORDING TO THE DAUBERT MOTIONS SCHEDULE.

3           I GUESS I'M NOT CLEAR.  IF YOU'RE TALKING ABOUT DEPO

4      DESIGNATION OBJECTIONS --

5           MS. DERMODY:  OBJECTIONS --

6           THE COURT:  -- THAT CAN WAIT UNTIL LATER.

7           MS. DERMODY:  -- TO PARTS OF TESTIMONY, YES, YOUR

8      HONOR.

9           THE COURT:  SO OTHERWISE, I MEAN, I THINK THE

10     DAUBERTS ARE DUE WHEN WE SET THE SCHEDULE FOR DAUBERTS.  IF YOU

11     ARE TRYING TO EXCLUDE ANY THEORY, ANY EXPERT --

12          MR. VAN NEST:  THAT'S WHAT WE ASSUMED ALSO, YOUR

13     HONOR.  THAT DATE IS JANUARY 9TH.  THAT'S WHAT WE WERE ASSUMING

14     WE WOULD NEED TO DO.

15          THE COURT:  YEAH.  SO, I MEAN, IF IT'S ON 702, 703

16     GROUNDS, I THINK THAT'S THE SCHEDULE.

17          MS. DERMODY:  OKAY.

18          MR. VAN NEST:  THANK YOU.

19          AND I DON'T THINK WE NEED ANYTHING ELSE, YOUR HONOR,

20     TODAY.

21          THE COURT:  OKAY.  THANK YOU.

22          MR. VAN NEST:  THANKS FOR YOUR PATIENCE.

23          THE COURT:  OKAY.  THANK YOU ALL.

24          MS. DERMODY:  THANK YOU, YOUR HONOR.

25          MR. SAVERI:  THANK YOU, YOUR HONOR.

1          MR. STONE:  THANK YOU, YOUR HONOR.

2          MR. MITTELSTAEDT:  THANK YOU.

3     (THE PROCEEDINGS WERE CONCLUDED AT 3:24 P.M.)

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

2

3                          <u>CERTIFICATE OF REPORTER</u>

4

5

6

7          I, THE UNDERSIGNED OFFICIAL COURT REPORTER OF THE UNITED

8    STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA,

9    280 SOUTH FIRST STREET, SAN JOSE, CALIFORNIA, DO HEREBY

10   CERTIFY:

11          THAT THE FOREGOING TRANSCRIPT, CERTIFICATE INCLUSIVE, IS

12   A CORRECT TRANSCRIPT FROM THE RECORD OF PROCEEDINGS IN THE

13   ABOVE-ENTITLED MATTER.

14

15

16                          _____

                            LEE-ANNE SHORTRIDGE, CSR, CRR
17                          CERTIFICATE NUMBER 9595

18                          DATED:  JANUARY 16, 2014

19

20

21

22

23

24

25