Richard M. Heimann (State Bar No. 63607)
Kelly M. Dermody (State Bar No. 171716)
Eric B. Fastiff (State Bar No. 182260)
Brendan P. Glackin (State Bar No. 199643)
Dean M. Harvey (State Bar No. 250298)
Anne B. Shaver (State Bar No. 255928)
Lisa J. Cisneros (State Car No. 251473)
LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, California 94111-3339
Telephone: 415.956.1000
Facsimile: 415.956.1008

Joseph R. Saveri (State Bar No. 130064)
James G. Dallal (State Bar No. 277826)
JOSEPH SAVERI LAW FIRM, INC.
255 California, Suite 450
San Francisco, California 94111
Telephone: 415.500.6800
Facsimile: 415.500.6803

*Co-Lead Class Counsel*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| IN RE: HIGH-TECH EMPLOYEE ANTITRUST LITIGATION<br><br>THIS DOCUMENT RELATES TO:<br><br>All Actions | Master Docket No. 11-CV-2509-LHK<br><br>**OPPOSITION TO MOTION TO STRIKE REPLY REPORT OF EDWARD LEAMER, PH.D.** |

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ............................................................................................................................ 1

PROCEDURAL BACKGROUND ................................................................................................... 1

ARGUMENT ................................................................................................................................... 3

    I.    Legal Standard ................................................................................................... 3

    II.    Dr. Leamer's Opinions on the 50% Significance Level and Type I and Type II Errors Are On the Exact Same Subject Matter Identified by Defendants' Expert .......................................................................................... 4

    III.    Dr. Leamer's Arguments in Support of the "Total New Hires" Variable and Use of Real Compensation Are Direct Rebuttal Testimony ................................. 6

    IV.    Defendants Are Not Entitled To A Sur-Rebuttal Report ........................................ 8

CONCLUSION ................................................................................................................................ 9

# TABLE OF AUTHORITIES

**Page**

### CASES

*Crowley v. Chait*,
　322 F. Supp. 2d 530 (D.N.J. 2004) .................................................................................... 4

*Daly v. Far E. Shipping Co. PLC*,
　238 F. Supp. 2d 1231 (W.D. Wash. 2003) .......................................................................... 8

*Ernst v. City of Chicago*,
　No. 08-C-4370, 2013 U.S. Dist. LEXIS 127993 (N.D. Ill. Sept. 9, 2013) ................................ 6

*Hellmann-Blumberg v. Univ. of the Pac.*,
　No. 12-cv-00286-TLN-DAD, 2013 U.S. Dist. LEXIS 94979
　(E.D. Cal. July 5, 2013) ...................................................................................................... 8

*Home Design Servs. v. Hibiscus Homes of Fla., Inc.*,
　No. 6:03-cv-1860-ORL-19KRS, 2005 U.S. Dist. LEXIS 41745
　(M.D. Fla. Oct. 6, 2005) ...................................................................................................... 8

*In re Genetically Modified Rice Litig.*,
　2010 U.S. Dist. LEXIS 116135 (E.D. Mo. Nov. 1, 2010) ............................................... 4, 6

*In re REMEC Inc. Securities Litigation*,
　702 F. Supp. 2d 1202 (S.D. Cal. 2010) .............................................................................. 6

*Kirola v. City & Cnty. of S.F.*,
　No. C-07-3685 SBA (EMC), 2010 U.S. Dist. LEXIS 7355
　(N.D. Cal. Jan. 29, 2010) ................................................................................................ 3, 4

*Larson v. Wis. Cent. Ltd.*,
　No. 10-C-446, 2012 U.S. Dist. LEXIS 13057
　(E.D. Wis. Feb. 3, 2012) .................................................................................................... 3

*Oracle Am., Inc. v. Google Inc.*,
　No. C 10-03561 WHA, 2011 U.S. Dist. LEXIS 131706
　(N.D. Cal. Nov. 15, 2011) .................................................................................................. 8

*Scientific Components Corp. v. Sirenza Microdevices, Inc.*,
　No. 03-CV-1851 (NGG) (RML), 2008 U.S. Dist. LEXIS 92703
　(E.D.N.Y. Nov. 13, 2008) .................................................................................................. 6

### STATUTES

Fed R. Civ. P. 26(a)(2)(D)(ii) .................................................................................................. 3

### TREATISES

Kruskal, Wm., "Significance, Tests of,"
　INTERNATIONAL ENCYCLOPEDIA OF STATISTICS (1978) ...................................................... 5

Leamer, Edward E., "Hypothesis-Testing Searches,"
　SPECIFICATION SEARCHES: AD HOC INFERENCE WITH NON-EXPERIMENTAL DATA (1978) ......... 5

**INTRODUCTION**

Defendants have now filed their second motion "to strike" the expert opinions of Plaintiffs' expert Edward E. Leamer, Ph.D. Dkt. 557. Defendants assert that Plaintiffs should somehow have known that they would change course in the middle of the case and take positions about statistical analysis they had never hinted at in 12 months of litigating class certification. According to Defendants, Dr. Leamer should have discussed Type I and Type II errors in his opening report, even though Defense expert Dr. Murphy previously disclaimed any requirement of point null hypothesis testing. Dr. Leamer should have explained the negative sign on his "total new hires" variable—just one of nearly 40 variables in the regression—even though Dr. Murphy never expressed the slightest qualm about it. Likewise, he should have very well known that Dr. Stiroh would take the incredible step of *refusing to account for inflation* in her regressions, when as a matter of basic economics the regression models "real" wages, not nominal wages.

In every aspect of his Reply Report, Dr. Leamer's opinions and conclusions, which are well-grounded in the scientific method and econometrics, address specific factual inaccuracies or failures raised by Dr. Stiroh in her expert report and are intended to serve as a direct response and rebuttal to the opinions expressed by Defendants' expert. Accordingly, the disclosure of Dr. Leamer's opinions is entirely appropriate pursuant to Federal Rule of Civil Procedure 26(e) as rebuttal testimony, and Defendants' Motion to Strike should be denied.

Moreover, Defendants' motion to file a sur-rebuttal report must also be denied, as they have suffered no prejudice or harm. No "new" theories are presented in Dr. Leamer's Reply Report. Also, Defendants were able to depose Dr. Leamer *after* he submitted the expert Reply Report at issue here, and question him regarding these rebuttal opinions. In any event, Defendants have not demonstrated that Dr. Stiroh's proposed additional report would contain any useful or admissible testimony.

**PROCEDURAL BACKGROUND**

On October 28, 2013, Plaintiffs served Professor Leamer's expert report disclosing his planned trial testimony. It included as exhibits all of his prior reports and Dr. Leamer advised that those prior reports and his deposition testimony stated the opinions to which he intended to

1   testify at trial, and their bases. Declaration of Dean M. Harvey (2/6/2014), Ex. 9 at ¶ 1. As the
2   Court knows, those reports and depositions also addressed the many criticisms of Dr. Murphy. In
3   his report, Dr. Leamer explained that the individual employee-level regression analysis outlined
4   in his October 1, 2012 report continues to be the best approach for estimating damages. *Id.* at
5   ¶¶ 20-31. He made only minor changes to the model, such as to reflect changes to the data and to
6   the composition of the class. *Id.* ¶ 32. Moreover, in order to avoid as much as possible the need
7   for rebuttal testimony, he reviewed questions in his prior depositions to try to anticipate additional
8   criticisms that had not made it into Dr. Murphy's prior work. Based on that review, he considered
9   and rejected possible modifications based on the geographic distribution of Intel's workforce and
10  the possible need for a hardware employment variable to reflect the fact that Intel makes
11  microprocessors. *Id.* at ¶¶ 33-38.
12      On November 25, 2013, Defendants served their expert reports. Surprisingly, Dr. Murphy
13  disclosed he had not read Dr. Leamer's trial damages report and would not be testifying about it.
14  Harvey Decl. 25, p. 3, n. 2 ("I have not been asked to review and comment on the October 28,
15  2013 expert report of Dr. Leamer or the October 27, 2913 [sic] report of Dr. Kevin F. Hallock.").
16  Instead, Defendants submitted a report authored by Dr. Lauren Stiroh. Harvey Decl. Ex. 27. Dr.
17  Stiroh has never held an academic appointment or published academic research in the fields of
18  economics or statistics; she has spent her entire career providing professional testimony on behalf
19  of clients of NERA Economic Consulting.
20      Dr. Stiroh's 425-page report contains 214 single-spaced text paragraphs followed by
21  approximately 325 pages of charts, graphs and tables. Dr. Stiroh repeated many of Dr. Murphy's
22  arguments—e.g., that the regression should be disaggregated. However, she also included several
23  brand new ideas, such as that the regression should not be adjusted for inflation; that the "total
24  new hires" variable should not be used; and that the regression result should be rejected because it
25  does not have a T-value with an absolute level greater than 1.96, indicating "statistical
26  significance" at a 95% level. Dr. Murphy never advanced any of these positions. Two other
27  defense experts also offered quantitative analyses: Professor Lewin and Becker.
28      In response to all three, Dr. Leamer submitted a report consisting of 134 paragraphs of

1  text and eleven separate tables of regression results.  Harvey Decl. Ex. 13 ("Leamer Reply").

2  Defendants now move to exclude Dr. Leamer's entire response to Dr. Stiroh's "statistical

3  significance" attack (Section V.D); six paragraphs responding to Dr. Stiroh's attack on the "total

4  new hires" variable (¶¶ 115-120); and three paragraphs responding to Dr. Stiroh's bizarre

5  preference to ignore inflation when modeling compensation (¶¶ 108-110).

## ARGUMENT

Dr. Leamer has properly rebutted criticisms that he could not possibly have foreseen when he filed his merits report—especially insofar as each is a brand new (and meritless) point never raised by Dr. Murphy in the class certification process.

**I.    Legal Standard**

A rebuttal report "cannot be used to advance new arguments or new evidence to support plaintiff's expert's initial opinions." *Larson v. Wis. Cent. Ltd.*, No. 10-C-446, 2012 U.S. Dist. LEXIS 13057, at *10 (E.D. Wis. Feb. 3, 2012).  The Rules, however, do not require a party to anticipate and address all arguments presented by the opposing party in its initial report; limiting rebuttal to only that evidence raised in the initial report "would impose an additional restriction on parties that is not included in the Rules." *TC Sys. Inc. v. Town of Colonie*, 213 F. Supp. 2d 171, 180 (N.D.N.Y. 2002).

Rule 26 expressly permits a rebuttal report to "contradict or rebut evidence on the same subject matter identified by another party" in its expert disclosure.  Fed. R. Civ. P. 26(a)(2)(D)(ii). "Rebuttal disclosure is not automatically excluded solely because it includes evidence that was absent in the original expert disclosure." *Kirola v. City & Cnty. of S.F.*, No. C-07-3685 SBA (EMC), 2010 U.S. Dist. LEXIS 7355, at *6 (N.D. Cal. Jan. 29, 2010).  Indeed, such a rule "would lead to the inclusion of vast amounts of arguably irrelevant material in an expert's report on the off chance that failing to include any information in anticipation of a particular criticism would forever bar the expert from later introducing the relevant material." *See Crowley v. Chait*, 322 F. Supp. 2d 530, 551 (D.N.J. 2004).  A rebuttal report may cite new evidence and data, as long as the rebuttal evidence "will explain, repel, counteract or disprove the evidence of the adverse party." *Id.* (citation and internal quotation marks omitted); *see also In re Genetically Modified*

1  *Rice Litig.*, 2010 U.S. Dist. LEXIS 116135, at *160 (E.D. Mo. Nov. 1, 2010) ("An expert may
2  introduce new methods of analysis in a rebuttal report if they are offered to contradict or rebut
3  another party's expert."). "As a general matter, courts have permitted additional data to be used
4  in a rebuttal report so long as it is of the same subject matter." *Kirola*, 2010 U.S. Dist. LEXIS
5  7355, at *6.

**II.    Dr. Leamer's Opinions on the 50% Significance Level and Type I and Type II Errors Are On the Exact Same Subject Matter Identified by Defendants' Expert**

Defendants first claim that that the "prohibition on submitting new material in a reply report" bars Dr. Leamer's discussion of a 50% threshold for statistical significance and his accompanying discussion of Type I and Type II errors. Dkt. 557 at 7. However, this testimony responds directly to Dr. Stiroh's assertion that a regression must be statistically significant at conventional levels to be reliable evidence—the opposite of the position taken by Dr. Murphy for the past year, which is presumably why he has been relieved of his duties vis-à-vis Dr. Leamer. *See* Pls.' Opp. to Defs.' Mot. to Exclude Dr. Leamer's Testimony at Part I.A. Dr. Leamer could not possibly have anticipated this reversal of course. Indeed, granting Defendants' motion would unfairly prejudice Plaintiffs. Dr. Stiroh is the first and only economist of the many who have testified in this case to say that the regression must meet a specific level of statistical significance in order to be reliable; now that the claim has been made, Defendants apparently seek to prevent Plaintiffs from rebutting it.[1]

The same applies to Dr. Leamer's discussion of Type I and Type II errors. Again, Dr. Leamer does not advocate point null hypothesis testing and would be happy not to testify about it. But if *Dr. Stiroh* wants to advocate such a test, then Dr. Leamer must be allowed to explain how she has done it incorrectly. Indeed, the literature cited in Plaintiffs' opposition to the *Daubert* motion shows that Dr. Stiroh had the obligation to correctly consider Type I and Type II error before proposing a level requirement of statistical significance; she was aware of this and simply

---

[1] Furthermore, Dr. Leamer did previously discuss the use of a 0.5 p value (equivalent to a 50% significance level) at ¶ 107 of his December 10, 2012, report, which was incorporated by reference. So even granting Defendants' motion as to his Reply would not bar him from testifying about it.

1 chose not to do so. As explained in the *International Encyclopedia of Statistics*:

> A fallacious argument is that power and error of the second kind (accepting the null hypothesis when it is false) need not be of concern, since the null hypothesis is never really accepted but is just not rejected. This is **arrant playing with words**, since a significance test is **fatuous** unless there is a question with at least two possible answers in the background. Hence, both kinds of probabilities of wrong answers are important to consider.

Kruskal, Wm., "Significance, Tests of," INT'L ENCYCLOPEDIA OF STATISTICS (1978), at 951 (emphasis added) (Harvey Decl. Ex. 20. Dr. Leamer himself has written extensively about Type I and Type II errors in his foundational book, *Specification Searches*.

Dr. Stiroh at deposition claimed she considered Type II error by choosing the conventional 5% level and by considering the specification of the regression, but this is circular and wrong. Declaration of Lisa J. Cisneros, Ex. JJJ ("Stiroh Dep.") at 197:13-25 ("In selecting a 95 percent threshold here, did you consider the type II error rate? A. Yes. Q. How did you consider the type II error rate? A. In a couple of different ways. First, when looking at significance at a 5 percent level, its fairly standard in economics . . . The other way to evaluate whether it is a type II error rate is to look at other specifications.") She apparently did not understand the correct way to consider Type II error, which is to consider the relative costs of the two kinds of errors. *Id.* at 202:4-8. ("Q. Is there a . . . statistical procedure that one undertakes to measure the relative costs of type I and type II error? A. There may be . . ."); *see* Leamer, Edward E., "Hypothesis-Testing Searches," SPECIFICATION SEARCHES: AD HOC INFERENCE WITH NON-EXPERIMENTAL DATA (1978), pp. 96-98 (discussing selection of significance level by either minimizing the maximum loss, or minimizing the expected loss) (Harvey Decl. Ex. 22).

As is the case here, when "the alleged confusion in the report in chief turns on a subtle scientific distinction that neither side's experts have previously discussed, it is not only permissible but also obligatory for the rebuttal expert report to provide technical background information adequate to illustrate the point." *Scientific Components Corp. v. Sirenza Microdevices, Inc.*, No. 03-CV-1851 (NGG) (RML), 2008 U.S. Dist. LEXIS 92703, at *7 (E.D.N.Y. Nov. 13, 2008). Barring Dr. Leamer's testimony on this point would be akin to allowing Dr. Stiroh to say she'd plotted a course from Auckland to Port Moresby without anyone

1    being able to point out she hadn't used a map.  *See Ernst v. City of Chicago*, No. 08-C-4370, 2013

2    U.S. Dist. LEXIS 127993, at *5 (N.D. Ill. Sept. 9, 2013) ("[When] offered to contradict or rebut

3    the other party's report, an expert may introduce new methods of analysis in a rebuttal report.");

4    *see also In re Genetically Modified Rice*, 2010 U.S. Dist. LEXIS 116135, at *160 ("An expert

5    may introduce new methods of analysis in a rebuttal report if they are offered to contradict or

6    rebut another party's expert.").  In other words, Dr. Stiroh failed to do basic work necessary to

7    reach her conclusion, and it would be unduly prejudicial to the Plaintiffs to prevent Dr. Leamer

8    from saying so, which is precisely why Defendants bring the motion.

9          The case of *In re REMEC Inc. Securities Litigation* is instructive on this point. 702 F.

10   Supp. 2d 1202, 1220 (S.D. Cal. 2010).  In that case, as here, the defendant sought to exclude the

11   plaintiffs' expert's rebuttal report on the grounds that it exceeded the scope of a proper rebuttal

12   because plaintiff's expert conducted "his own goodwill impairment analysis whereas

13   [d]efendants' expert . . . did not undertake that task." *Id.*  The district court nonetheless rejected

14   the defendants' objection, concluding that the plaintiffs' expert's new analysis "contradicts

15   [defendants' expert] on the same subject matter, specifically, whether [the defendants] used

16   assumptions, estimates, and forecasts to evaluate goodwill . . ." *Id.*  Similarly, here Dr. Leamer

17   may discuss the need to consider Type II error, precisely because Dr. Stiroh failed to do so.

18   **III.    Dr. Leamer's Arguments in Support of the "Total New Hires" Variable and Use of Real Compensation Are Direct Rebuttal Testimony**

19

20   Defendants cry out that "[i]n each of his five prior reports, Dr. Leamer failed to provide

21   any opinion or explanation as to why he believed real compensation rather than nominal

22   compensation was the appropriate metric." Dkt. 557 at 9.  Plaintiffs modestly submit that this

23   may be because in none of his prior reports did Dr. Murphy take the astounding position that a

24   regression modeling compensation *should not account for inflation*.  Dr. Leamer's reply on this is

25   fairly simple occupying three paragraphs and less than a page, ending with:

26   > [T]he complete absence of any CPI [consumer price index]
27   > variables in Dr. Stiroh's equation reported in Exhibit VI.1 is a huge
     > mistake.  Competitive models of the labor market set wages equal
     > to the value of the marginal product.  Equivalently real wages are
28   > equal to the marginal product.  The labor market is thus assumed to

> determine real wages, not nominal wages. It takes a macro economic model with money to determine the levels of wages and levels of prices separately. Thus Dr. Stiroh's equation is a huge departure from mainstream economics thinking because by completely excluding any price levels in her equation she is assuming the labor market determines nominal wages, not real wages.

Leamer Reply at ¶ 110. By making this bizarre modification, defendants wipe out nearly 40% of the damages—no wonder they do not want Dr. Leamer to be able to talk about it.

Defendants also claim that Paragraphs 115-117 of the Reply Report "presen[t] new arguments" in support of the "total new hires variable," specifically that is the "'most statistically significant variable' and omitting it would 'wreak havoc' on the other coefficients in his model." Dkt. 557 at 8. They also complain about Paragraphs 118-120 containing Dr. Leamer's economic explanation for the supposedly "wrong" sign. *Id.* Again, as Plaintiffs explained in their opposition to Defendants' motion to exclude Dr. Leamer's testimony, this variable has had the same negative sign since the beginning, with no prior complaint from Defendants. *See* Pls.' Opp. to Defs.' Mot. to Exclude Dr. Leamer's Testimony at Part III. As Plaintiffs further explained in their opposition, the new complaint has no merit because of the dynamic nature of the regression. *See id.* If nothing else, the brevity of Dr. Leamer's response demonstrates that he has not "sandbag[ged]", Dkt. 557 at 2, Defendants with brand new analysis but simply responded to their points. As for the point about the effect of omitting the variable with the highest t value, Dr. Leamer published his proof of this in 1975. *See* Leamer Reply ¶ 115. Dr. Stiroh was asked about it in deposition and admits she knew taking out the variable would have this effect. Stiroh Dep. at 240:4-7 ("So if a variable has a high T value and is explaining a lot of the variation, and if you omit it, then if there is nothing now explaining that variation, it may be disruptive."). Dr. Leamer is entitled to make this point.

In both instances, Dr. Leamer's opinions and conclusions address specific factual inaccuracies or failures raised by Dr. Stiroh in her expert report. Dr. Leamer's rebuttal "is narrowly tailored to the subject matter that it purports to refute," and therefore properly disclosed in the Reply Report. *See Hellmann-Blumberg v. Univ. of the Pac.*, No. 12-cv-00286-TLN-DAD, 2013 U.S. Dist. LEXIS 94979, at *7 (E.D. Cal. July 5, 2013).

### IV. Defendants Are Not Entitled To A Sur-Rebuttal Report

The Court should deny Defendants' request for a further report by Dr. Stiroh. Defendants' claims of prejudice are unsupported. As demonstrated above, Dr. Leamer's opinions concern the same subject matters raised by Dr. Stiroh and respond directly to the criticisms raised in her Rebuttal Expert Report. Because no "new" theories are presented in Dr. Leamer's Reply Report, Defendants are not prejudiced and there is no valid reason for Defendants to file a sur-reply. Moreover, unlike the cases Defendants rely upon (Dkt. 557 at 9), Defendants suffered no prejudice from the timing of Dr. Leamer's Reply Report, because Plaintiffs' expert report is timely under both Rule 26 and this Court's Case Management Order. *See* Dkt. 558, Ex. 2 at 19:6-9. *Cf. Home Design Servs. v. Hibiscus Homes of Fla., Inc.*, No. 6:03-cv-1860-ORL-19KRS, 2005 U.S. Dist. LEXIS 41745, at *16 (M.D. Fla. Oct. 6, 2005) (striking Plaintfiff's expert report that was "disclosed to opposing counsel seventy-seven (77) days after the deadline" in the case management order); *Daly v. Far E. Shipping Co. PLC*, 238 F. Supp. 2d 1231, 1241 (W.D. Wash. 2003) (finding Plaintiffs' "tardy disclosure" one week before trial unfairly prejudiced Defendants).

Furthermore, Defendants here have already had an opportunity to clarify the record and address Dr. Leamer's arguments. Defendants were able to depose Dr. Leamer for a fourth time subsequent to receiving his Reply Report and therefore had the opportunity to question him at length on his rebuttal opinions. Defendants' reliance on *Oracle America, Inc. v. Google Inc.*, No. C 10-03561 WHA, 2011 U.S. Dist. LEXIS 131706 (N.D. Cal. Nov. 15, 2011), is therefore misplaced and inapplicable to the circumstances of this case (*see* Dkt. 557 at 9). There, the court excluded testimony of a brand-new expert, who had not served an opening report, submitting instead multiple so-called "rebuttal" reports attacking defendants' experts. Here, there are no such unusual circumstances, Dr. Leamer has submitted prior reports, and has been deposed for a total of over 30 hours, and submitted a reply report in accordance with Rule 26 and the Court's scheduling order. In addition, Dr. Stiroh has already had an opportunity to discuss her opinions of Type I and Type II errors (Stiroh Dep. 195-202), the utility of the "total new hires" variable (*id.* at 243:18-252:5), and the use of nominal versus real compensation (*id.* at 223:5-230:18)

1   during her deposition.  Defendants are not now permitted a sur-rebuttal that would be only an
2   attempt to rehabilitate her testimony.

3   Lastly, Defendants have failed to show that a sur-rebuttal report by Dr. Stiroh would
4   contain any useful or admissible information.  Defendants have declined to submit their proposed
5   report, but Dr. Stiroh's declaration offers some clues.  For example, in her Declaration, Dr. Stiroh
6   critiques Dr. Leamer's 50% significance threshold stating that "Dr. Leamer's new 50%
7   significance threshold is contrary to standard practice for published and peer-reviewed economic
8   literature"—but fails to cite *any* peer-reviewed source, or in fact, *any* authority to support that
9   conclusory opinion. Dkt. 574 ¶ 6.  What is the point of allowing her to make this groundless and
10  thus inadmissible assertion, or others like it, in a new report?

11  Defendants apparently want a blank check to write whatever new report they want.
12  Plaintiffs reviewed a proposed new report by Dr. Stiroh back in December, and even then it
13  contained numerous new regressions, charts and tables.  Permitting such a report would
14  needlessly burden the parties and the Court before trial.  Dr. Stiroh would need to be deposed.
15  Plaintiffs would need another opportunity to brief a *Daubert* motion, in the event the new report
16  contained inadmissible material. And, to the extent the report contained yet more charts, tables,
17  and new statistical analysis, Plaintiffs might find themselves back before the Court seeking
18  permission to submit another report by Dr. Leamer.

19  Accordingly, Plaintiffs respectfully submit that a sur-rebuttal by Defendants' expert is not
20  warranted, and ask this Court to deny the Defendants' motion for leave to file a sur-rebuttal.

### CONCLUSION

22  For the foregoing reasons the motion should be denied.

Dated: February 6, 2014          Respectfully Submitted,


By:  */s/ Brendan Glackin*
     Brendan Glackin

Richard M. Heimann (State Bar No. 63607)
Kelly M. Dermody (State Bar No. 171716)
Eric B. Fastiff (State Bar No. 182260)
Brendan Glackin (State Bar No. 199643)
Dean Harvey (State Bar No. 250298)
Anne B. Shaver (State Bar No. 255928)
Lisa J. Cisneros (State Bar No. 251473)
LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, California  94111-3339
Telephone:  415.956.1000
Facsimile:  415.956.1008

Joseph R. Saveri
James G. Dallal
JOSEPH SAVERI LAW FIRM, INC.
255 California, Suite 450
San Francisco, CA  94111
Telephone:  (415) 500-6800
Facsimile: (415) 500-6803

*Co-Lead Class Counsel*


Eric L. Cramer
Sarah Schalman-Bergen
BERGER & MONTAGUE, P.C.
1622 Locust Street
Philadelphia, PA  19103
Telephone:  (800) 424-6690
Facsimile:  (215) 875-4604

Linda P. Nussbaum
Peter A. Barile III
GRANT & EISENHOFER P.A.
485 Lexington Avenue, 29th Floor
New York, NY  10017
Telephone:  (646) 722-8500
Facsimile:  (646) 722-8501

*Class Counsel*