Richard M. Heimann (State Bar No. 63607)
Kelly M. Dermody (State Bar No. 171716)
Eric B. Fastiff (State Bar No. 182260)
Brendan P. Glackin (State Bar No. 199643)
Dean M. Harvey (State Bar No. 250298)
Anne B. Shaver (State Bar No. 255928)
Lisa J. Cisneros (State Car No. 251473)
LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, California 94111-3339
Telephone: 415.956.1000
Facsimile: 415.956.1008

Joseph R. Saveri (State Bar No. 130064)
James G. Dallal (State Bar No. 277826)
JOSEPH SAVERI LAW FIRM, INC.
255 California, Suite 450
San Francisco, California 94111
Telephone: 415.500.6800
Facsimile: 415.500.6803

*Co-Lead Class Counsel*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| IN RE: HIGH-TECH EMPLOYEE ANTITRUST LITIGATION<br><br>THIS DOCUMENT RELATES TO:<br><br>ALL ACTIONS | Master Docket No. 11-CV-2509-LHK<br><br>**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' JOINT MOTION TO EXCLUDE THE EXPERT TESTIMONY OF MATTHEW MARX, PH.D.**<br><br>Date:     March 20 and 27, 2014<br>Time:     1:30 pm<br>Courtroom: 8, 4th Floor<br>Judge:    Honorable Lucy H. Koh |

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ................................................................................................................ 1

ANALYSIS .......................................................................................................................... 2

    I.    Dr. Marx's Opinions Do Not Usurp the Jury's Role ............................................... 2

    II.    Dr. Marx's Opinions Are Relevant and Admissible ................................................ 4

        A.    Dr. Marx's Testimony Directly Responds to Defendants' Arguments ........ 4

        B.    Dr. Marx's Opinions Are Consistent With Antitrust Law .......................... 6

        C.    Dr. Marx Need Not Be An Economist to Offer Admissible Expert Opinion ........................................................................................................ 8

CONCLUSION .................................................................................................................... 9

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Berlyn, Inc. v. Gazette Newspapers, Inc.*,
  214 F. Supp. 2d 530 (D. Md. 2002) .................................................................................... 9

*Flanagan v. Altria Group, Inc.*,
  423 F. Supp. 2d 697 (E.D. Mich. 2005) ............................................................................... 8

*Fleischman v. Albany Med. Ctr.*,
  728 F. Supp. 2d 130 (N.D.N.Y. 2010) ................................................................................. 3

*Gold v. Wolpert*,
  876 F.2d 1327 (7th Cir. 1989) .............................................................................................. 6

*Hangarter v. Provident Life and Accident Ins. Co.*,
  373 F.3d 998 (9th Cir. 2004) ....................................................................................... 2, 6, 8

*Holmes v. Elec. Document Processing, Inc.*,
  No. 12-CV-06193 LHK, 2013 U.S. Dist. LEXIS 116598 (N.D. Cal. Aug. 15, 2013) ............... 6

*In re Titanium Dioxide Antitrust Litig.*,
  No. 10-0318, 2013 U.S. Dist. LEXIS 62394 (D. Md. May 1, 2013) .......................................... 3

*In re Univ. Serv. Fund. Tel. Billing Prac. Litig.*,
  No. 02-MD-1468, 2008 U.S. Dist. LEXIS 74548 (D. Kan. Sept. 26, 2008) ............................. 2

*Mukhtar v. Cal. State Univ., Hayward*,
  299 F.3d 1053 (9th Cir. 2002), *overruled on other grounds by Estate of Barabin v.
  AstenJohnson, Inc.*, No. 10-36142, 2014 U.S. App. LEXIS 774 (9th Cir. Jan. 15, 2014) .......... 3

*NCAA v. Bd. of Regents*,
  468 U.S. 85 (1984) ................................................................................................................ 7

*Polk Bros., Inc. v. Forest City Enters, Inc.*,
  776 F.2d 185 (1985) ............................................................................................................. 8

*Thomas v. Newton Int'l. Enters*,
  42 F.3d 1266 (9th Cir. 1994); ............................................................................................ 8, 9

*Thornberry Oil Field Servs., Inc. v. Gulf Coast Pipeline Partners, L.P.*,
  No. H-03-1458, 2004 U.D. Dist. LEXIS 307, * 18-19 (S.D. Tex. Aug. 16, 2004) ..................... 8

*U.S. Info. Sys., Inc. v. IBEW Local Union No. 3*,
  313 F. Supp. 2d 213 (S.D.N.Y. 2004) ............................................................................... 2, 4

*United States v. Adobe Systems Inc., et al.;*
  No. 10-cv-1629-RBW (D.D.C. Sept. 24, 2010) .................................................................... 7

*United States v. Brown*,
  936 F.2d 1042 (9th Cir. 1991) .............................................................................................. 7

*United States v. Coop. Theaters of Ohio, Inc.*,
  845 F.2d 1367 (6th Cir. 1988) .............................................................................................. 7

**Other Authorities**

Fed. R. Evid. 702 ................................................................................................................. 8, 9

**Rules**

Matthew Marx, et al., *Mobility, Skills, and the Michigan Non-Compete Experiment*,
  55 Mgmt. Sci. 875 (2009) ..................................................................................................... 9

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

Matthew Marx, *The Firm Strikes Back: Non-Compete Agreements and the Mobility of Technical Professionals*,
76 Am. Soc. Rev. 695 (2011) ................................................................................................ 9

<3

**Table of Abbreviations**[1]

**I.   Defendants' Summary Judgment and *Daubert* Motions**

Defendants' Joint Notice of Motion and Motion for
Summary Judgment Based on Motion to Exclude Testimony
of Dr. Edward E. Leamer, Ph.D.; Memorandum of Points
and Authorities in Support Thereof ............................................................... Joint MSJ

Defendant Adobe's Motion for Summary Judgment .............................................. Adobe MSJ

Defendant Apple Inc.'s Notice of Motion and Motion for
Summary Judgment; Memorandum of Points and
Authorities in Support Thereof ............................................................................. Apple MSJ

Defendant Google Inc.'s Notice of Motion and Motion for
Summary Judgment; Memorandum of Points and
Authorities in Support Thereof ........................................................................... Google MSJ

Notice of Motion and Motion by Intel Corporation for
Summary Judgment Pursuant to Fed.R.Civ.Pro 56 ....................................... Intel MSJ

**II.   Depositions**

   **A.   Lay Witnesses**

Deposition of Mark Bentley (August 23, 2012) ............................................................. Bentley

Deposition of Sergey Brin (March 19, 2013) ...................................................................... Brin

Deposition of Shona Brown (January 30, 2013) ............................................................. Brown

Deposition Bruce Chizen (March 15, 2013) ................................................................... Chizen

Deposition Tim Cook (March 21, 2013) ............................................................................ Cook

Deposition of Brian Croll (March 22, 2013)

Deposition of William Campbell (February 5, 2013) .................................................. Campbell

Deposition of Ed Catmull (January 24, 2013) ............................................................... Catmull

Deposition of Alan Eustace (February 27, 2013) ........................................................... Eustace

Deposition of Patrick Flynn (April 3, 2013) ..................................................................... Flynn

Deposition of Arnnon Geshuri (August 17, 2012) ......................................................... Geshuri

---

[1] The depositions of witnesses who provided a report and a deposition are abbreviated as "[Last Name] Dep."; the deposition of witnesses who provided a deposition but not a report are abbreviated as "[Last Name]."  Deposition transcripts and exhibits are attached to the accompanying Declaration of Lisa J. Cisneros In Support of Plaintiffs' Opposition Briefs.  All other documents are attached to the accompanying Declaration of Dean M. Harvey In Support of Plaintiffs' Opposition Briefs.

| | |
|---|---|
| Deposition of Digby Horner (March 1, 2013) | Horner |
| Deposition of Danielle Lambert (October 2, 2012) | Lambert |
| Deposition of George Lucas (March 28, 2013) | Lucas |
| Deposition of Omid Kordestani (March 11, 2013) | Kordestani |
| Deposition of Lori McAdams (August 2, 2012) | McAdams |
| Deposition of Donna Morris (August 21, 2012) | Morris |
| Deposition of James Morris (August 3, 2012) | J. Morris |
| Deposition of Paul Otellini (January 29, 2013) | Otellini |
| Deposition of Jonathan Rosenberg (March 13, 2013) | Rosenberg |
| Deposition of Ron Okamoto (February 27, 2013) | Okamoto |
| Deposition Shantanu Narayen (April 5, 2013) | Narayen |
| Deposition of Eric Schmidt (February 20, 2013) | Schmidt |
| Deposition of Frank Wagner (March 7, 2013) | Wagner |
| Deposition of Pamela Zissimos (November 13, 2012) | Zissimos |

**B.** **Plaintiffs' Expert Witnesses**

| | |
|---|---|
| Deposition of Matthew Marx (November 15, 2013) | Marx Dep. |

**C.** **Defendants' Expert Witnesses**

| | |
|---|---|
| Deposition of Kevin Murphy (Vol. I., pp. 1-385, December 3, 2012, Vol. II, pp. 386-568, July 5, 2013 and Vol III. December 7, 2013 pp.569-901) | Murphy Dep. |
| Deposition of Edward Snyder (December 7, 2013) | Snyder Dep. |
| Deposition of Lauren Stiroh (December 9, 2013) | Stiroh Dep. |
| Deposition of Eric Talley (December 8, 2013) | Talley Dep. |

**III.** **Lay Witness Declarations**

| | |
|---|---|
| Declaration of Sheryl Sandberg | Sandberg Decl. |
| Declaration of Edward T. Colligan | Colligan Decl. |

**IV.** **Expert Reports**

**A.** **Plaintiffs' Experts**

| | |
|---|---|
| Merits Expert Report of Kevin Hallock (October 28, 2013) | Hallock ¶ |

1158534.2 -2- PL. OPP. TO DEFS' MOT. TO EXCLUDE THE EXPERT TESTIMONY OF DR. MARX MASTER DOCKET NO. 11-CV-2509-LHK

Merits Expert Report of Edward Leamer (October 28, 2013) ..........................Leamer Merits ¶ __

Merits Rebuttal Expert Report of Edward Leamer (December 11, 2013) ..... Leamer Rebuttal ¶ __

Expert Report of Edward E. Leamer, Ph.D. (October 10, 2012) ..............................Leamer I ¶ __

Reply Expert Report of Edward E. Leamer, Ph.D. (December 12, 2012) ................Leamer II ¶ __

Supplemental Expert Report of Edward E. Leamer, Ph.D. (May 10, 2013) .......... Leamer III ¶ __

Supplemental Reply Expert Report of Edward E. Leamer, Ph.D.
(July 12, 2013) ........................................................................................................Leamer IV ¶ __

Merits Expert Report of Alan Manning (October 28, 2013)......................................Manning ¶ __

Merits Expert Report of Matthew Marx (October 28, 2013)..........................................Marx ¶ __

Merits Rebuttal Expert Report of Matthew Marx (December 11, 2013)........... Marx Rebuttal ¶ __

**B.     Defendants' Experts**

Merits Expert Report of David Lewin (November 25, 2013)........................................ Lewin ¶ __

Merits Expert Report of Kevin Murphy (November 25, 2013) ...................................Murphy ¶ __

Merits Expert Report of Edward Snyder (December 6, 2013)...................................... Snyder ¶ __

Merits Expert Report of Lauren Stiroh (November 25, 2013)........................................Stiroh ¶ __

Merits Expert Report of Eric Talley (November 25, 2013).......................................... Talley ¶ __

**INTRODUCTION**

Plaintiffs respectfully submit this Memorandum in Opposition to Defendants' Motion to Exclude the Expert Testimony of Matthew Marx, Ph.D. (Dkt. 559) ("Mot."). Dr. Marx, an expert in business management and high-tech innovation, is the only expert in the case who has worked in the high-technology industry. Based on his expertise, professional experience, and his research on non-compete agreements, Dr. Marx offers opinions on the following: (1) whether agreements limiting competition for workers among the Defendants, such as the conspiracy alleged here, could be expected to reduce worker compensation; and (2) whether Defendants' conspiracy, including the express anti-solicitation agreements, were reasonably necessary to achieve the "collaborations" and other allegedly procompetitive goals identified in Defendants' interrogatory responses. *See* Marx ¶ 5.

Defendants seek to exclude Dr. Marx's entire reports. They argue first that Dr. Marx's detailed review of record evidence in support of his opinions constitutes "impermissible legal opinions." Mot. at 3 n. 2. Not so. Dr. Marx permissibly relies upon, and draws inferences from, record evidence through the lens of his directly relevant expertise.

Second, Defendants claim that Dr. Marx's opinion that Defendants' agreements were not "reasonably necessary" to certain business collaborations is inadmissible because Defendants do not actually contend the agreements were "reasonably necessary," but only that "such agreements further the efficiency and success of such collaborations." Mot. at 8. Defendants state the incorrect legal standard, but in any event this amounts to a semantic distinction and not a basis for excluding Dr. Marx's testimony.

Third, and finally, Defendants contend that Dr. Marx lacks expertise because he is not an economist. But Dr. Marx is more than qualified to opine that the agreements would be expected to limit compensation based on his directly relevant experience as a business school professor, who has published peer-reviewed original research on non-compete agreements, and as a former software engineer with management experience in the high-technology industry. Experts need not be economists to provide admissible testimony regarding compensation effects.

Defendants' motion should be denied.

# ANALYSIS

## I. Dr. Marx's Opinions Do Not Usurp the Jury's Role

Defendants first contend that Dr. Marx improperly comments on the plausibility of Defendants' justifications for the agreements, and also on their likely effect: suppressing compensation. *See* Mot. at 2-6. They appear to take issue with both the fact that he has summarized the evidence, and the fact that he has also commented on it based on his background and expertise. Both complaints are groundless.

Experts of all kinds may permissibly rely upon evidence in the record to form their opinions. *See U.S. Info. Sys., Inc. v. IBEW Local Union No. 3,* 313 F. Supp. 2d 213, 236 (S.D.N.Y. 2004); *In re Univ. Serv. Fund. Tel. Billing Prac. Litig.*, No. 02-MD-1468, 2008 U.S. Dist. LEXIS 74548, *412-13 (D. Kan. Sept. 26, 2008) (holding that experts may identify the factual bases and documentary evidence upon which they base their opinions). Indeed, Defendants' own experts engage in an extreme and impermissible version of this by relying on lawyer-crafted discovery responses and declarations, portions of which Plaintiffs have moved to exclude, Dkt. 565. *E.g.*, Murphy ¶¶ 40-60; *see also* Stiroh, "Background section" at 9-32; Snyder ¶¶ 65-70 (summarizing collaborations between Intel and Google). Rather than serving as a mere lawyer mouthpiece, as Defendants suggest, Dr. Marx appropriately marshals the record evidence to support his conclusions and refute the contrary narrative spun by Defendants' experts. For example, in Marx Report paragraphs 7 through 17, deemed "improper narrative" by Defendants, Dr. Marx analyzes the characteristics of the Agreements, in support of his conclusion that directors, CEOs, advisors and senior executives conspired to suppress cold-calling. Marx ¶¶ 6(a); 7-17. He sets forth the chronology of the Agreements in order to compare them to the non-compete agreements he has studied. In paragraphs 24 through 29, Dr. Marx summarizes the allegations in Defendants' interrogatory responses, uncritically adopted by Defendants' experts, to assess Defendants' asserted business justifications. *Id.* at ¶¶ 6(c); 24-29. No rule says an expert must deliver his opinion without reference to the facts. *See Hangarter v. Provident Life and Accident Ins. Co.*, 373 F.3d 998, 1017 (9th Cir. 2004) ("Indeed, a witness may properly be called upon to aid the jury in understanding the facts in evidence even though reference to those

1  facts is couched in legal terms.") (internal quote marks and citation omitted); *Fleischman v.*
2  *Albany Med. Ctr.*, 728 F. Supp. 2d 130, 151 (N.D.N.Y. 2010) (An expert may "opine that the
3  nature, frequency and scope with which Defendants shared information would make it easier for
4  Defendants to establish and maintain an agreement to reduce RN competition."); *In re Titanium*
5  *Dioxide Antitrust Litig.*, No. 10-0318, 2013 U.S. Dist. LEXIS 62394 (D. Md. May 1, 2013)
6  (permitting expert to provide his opinion based on his "evaluation of the discovery record," and
7  application of that record to his area of expertise).
8        As for Dr. Marx's opinions about the purpose and effect of the agreements, "[i]t is well-
9  established . . . that expert testimony concerning an ultimate issue is not *per se* improper."
10 *Mukhtar v. Cal. State Univ., Hayward*, 299 F.3d 1053, 1066 n.10 (9th Cir. 2002), *overruled on*
11 *other grounds by Estate of Barabin v. AstenJohnson, Inc.*, No. 10-36142, 2014 U.S. App. LEXIS
12 774 (9th Cir. Jan. 15, 2014).  Indeed, Rule of Evidence 704(a) provides that expert testimony that
13 is "otherwise admissible is not objectionable because it embraces an ultimate issue to be decided
14 by the trier of fact."  Furthermore, Dr. Marx brings to the case expertise about the technology
15 sector and non-compete agreements unmatched by any of Defendants' experts.  *Id.* ¶ 23; *see*
16 Plaintiffs' Consolidated Opposition to Defendants' Joint and Individual Motions for Summary
17 Judgment at pages 16-17 (summarizing Dr. Marx's qualifications).  Dr. Marx stated that
18 Defendants' agreements not to recruit any of each other's employees are highly unusual if not
19 unique.  Marx ¶ 23.  This directly responds to Defendants' unsupported expert testimony that
20 such agreements are common and indeed "best practices."  *See, e.g.,* Snyder Dep. 44:7-10 ("Q:
21 Have you ever seen any publications that discuss anti-cold call or no-cold call agreements as a
22 means to foster collaboration between corporations?  A: Not specifically, no.").  Dr. Marx also
23 draws upon his considerable expertise and experience in an analogous area, employee non-
24 compete agreements, as a reliable basis for his expert testimony regarding the effects on
25 compensation of the agreements at issue here.  Marx ¶¶ 1, 21-22.  None of Defendants' experts
26 has worked in the high-tech field, and none has published any academic works relating to the
27 proffered opinions regarding Defendants' purported business justifications.  *See, e.g.,* Snyder Dep.
28 50:5-13 ("Q: Have you done any empirical research outside the context of litigation relating to

1  employment, resources, or recruiting practices? A: No"); Snyder, App. A (CV); Murphy Dep.
2  878:7-16-880:8 (identifying publications regarding wage determination and wages generally as
3  relevant to his opinions); Murphy, App. A (CV);  Talley Dep. 55:2-59:3 (identifying publications
4  that have only tangential application to employee recruiting or non-competes generally); Talley,
5  App. A (CV).
6  Defendants further mischaracterize Dr. Marx as having opined on matters of truth and
7  credibility.  Mot. at 4.  Dr. Marx's conclusions regarding the likelihood of the existence of an
8  overarching conspiracy and the lack of procompetitive business justifications are based on his
9  application of his academic work and experience in the high-tech field to record evidence.
10  Dr. Marx's own background managing businesses and participating in technical collaborations in
11  the high-tech industry, along with his teaching and research experience on these issues, provides
12  him with specialized knowledge to opine on the business justifications and the conspiracy alleged
13  here.  *See* Marx Dep. 20:6-19; 23:15-26:18.  Dr. Marx applied his academic research, expertise,
14  and professional experience to the facts, and addressed the plausibility of Defendants'
15  explanations for their conduct, drawing inferences from the factual record based upon his
16  expertise, theory, and methods.  *See* Marx ¶¶ 7-17; 24-29.  In other words, Dr. Marx's testimony
17  does not consist of conclusions offered without the benefit of citation to research, studies, or other
18  generally accepted support for expert testimony.  Rather, his ultimate conclusions are based on
19  the application of standard economic methodology to the facts at hand.  *See U.S. Info. Sys.*, 313 F.
20  Supp. 2d at 237.

21  **II.    <u>Dr. Marx's Opinions Are Relevant and Admissible</u>**

22  Defendants next argue, in essence, that Dr. Marx ought to have given an opinion about the
23  ancillary-ness of the agreements rather than whether Defendants "needed" them to collaborate,
24  and thus should be excluded.  Defendants mistake both the record and the law.

25  **A.    <u>Dr. Marx's Testimony Directly Responds to Defendants' Arguments</u>**

26  First, regardless of how Defendants characterize the standard, Dr. Marx's testimony that
27  the agreements were not reasonably necessary to Defendants' collaborations is helpful to the trier
28  of fact, and Dr. Marx is qualified to offer such opinions.  Defendants claim that the agreements

1  "facilitated" collaborations, and have proffered the expert testimony of Professor Kevin M.
2  Murphy, Edward A. Snyder, Ph.D., and Professor Eric Talley in support. *See, e.g.,* Snyder ¶ 62
3  ("[N]o-cold calling agreements can facilitate procompetitive collaborations that—absent those
4  agreements—might not occur at all or would be conducted less efficiently[.]"); Murphy ¶ 32
5  ("To prevent the loss of talented employees, firms may restrict the ability of a partner to approach
6  and even hire the other firm's employees. Absent such commitments, firms could have reduced
7  incentives to collaborate."); Talley ¶ 33 ("While not eliminating the possibility of employee
8  departures, DNCCs are helpful for facilitating investments in employees, entrusting them with
9  confidential information, and deploying the most valuable employees to the collaborative
10 effort.").

11      Dr. Marx responds to Defendants' "facilitation" arguments by explaining that Defendants'
12 adoption of anti-solicitation agreements "hardly mirrors the behavior of a company whose
13 purpose in using Anti-Solicitation Agreements is to foster the success of technical
14 collaborations." Marx ¶¶ 25-29, 30-32. Dr. Marx's testimony directly refutes economic and
15 business-based arguments made by Defendants since they first moved to dismiss. *See* Marx ¶ 24;
16 Marx Rebuttal ¶ 13; *see also*, *e.g.*, Defendant Apple Inc., Am. Resp. to Plaintiffs' Second Set of
17 Interrogatories, 7:17-19, 11:25-26; Defendant Adobe Systems Incorporated's Am. Resp. to
18 Plaintiffs' Second Set of Interrogatories, 7:20-23; Snyder ¶ 62, n.8; Def. Reply ISO Mot. to
19 Dismiss, Dkt. 97 at 5-6.[2] If Defendants now want to withdraw these arguments, Plaintiffs will be
20 not be compelled to submit this aspect of Dr. Marx's testimony as rebuttal to these points. If not,
21 his testimony is admissible to the same extent as that of Defendants' experts and executives that
22 the agreements resulted from collaboration, and not collusion.[3]

---

[2] In any event, Plaintiffs reserve the right to move *in limine* to exclude all evidence regarding Defendants' purported pro-competitive justifications, including because there is no contemporaneous evidence that the unlawful anti-solicitation agreements had anything to do with any collaborations.

[3] Defendants take issue with Dr. Marx's reliance on the DOJ Consent Decree, but Defendants' own expert Dr. Lewin reviewed and relied on it so it will be coming in to the trial. Lewin, Ex. 2 (Materials Considered). Dr. Marx appropriately uses the DOJ Consent Decree to rebut Defendants' experts' opinions that the Agreements were not unnecessarily broad and were ancillary to legitimate collaborations. *See* Marx ¶ 30; Marx Rebuttal ¶¶ 8-34. Dr. Marx's opinions about the characteristics of the agreements are based on his review of the record, and do

*Footnote continued on next page*

### B.     Dr. Marx's Opinions Are Consistent With Antitrust Law

Defendants next argue that Dr. Marx's testimony is legally irrelevant, because he uses the words "reasonably necessary" rather than "ancillary," and then cite cases supposedly explaining that "ancillary" restraints are those that are "potentially pro-competitive" because they "contribute" to the success of a "cooperative venture." Mot. at 8. This is wrong.

As a preliminary matter, Dr. Marx does not merely say the agreements were not "reasonably necessary." As Dr. Marx explained at length in his reports and at his deposition: "It is clear from the evidence that the Anti-Solicitation agreements were established for the purpose of suppressing compensation." Marx ¶ 6.d; *see also id.* ¶¶ 7-17 (assessing evidence of common anticompetitive purpose); 18-22 (explaining how Defendants' anti-solicitation agreements likely suppressed Class compensation). Dr. Marx explains the agreements had "nothing to do" with their proffered justification of facilitating technical collaborations. *Id.* 23-32; Marx Rebuttal ¶¶ 8-43 (explaining why Defendants' experts fail to establish any legitimate justification for Defendants' misconduct); Marx Dep. 280:19-288:1 (explaining his bases for inferring anticompetitive purpose). Even if the case somehow turns on the concept of "ancillarity", Dr. Marx's testimony addresses that point.

Next, the correct mode of analysis—per se—is not in dispute, for two reasons. First, the Court already advised the Defendants that if they wanted to advocate for something other than the per se standard, they needed to raise the issue at summary judgment. They didn't.[4] May 15, 2013 Case Mgmt. Conf. Tr. 15:4-7 (Defendants' joint summary judgment brief "will be the rule of reason versus per se."). Second, in order to defend the case under the rule of reason, Defendants

---

*Footnote continued from previous page*
not depend on the terms of the DOJ Consent Decree. Moreover, Dr. Marx need not be a legal expert in order to provide these opinions. *See Hangarter*, 373 F.3d at 1016 (permitting expert testimony of insurance expert that the defendants departed from industry norms, which relied in part on his understanding of the requirements of state law). The admissibility and potential uses of the consent decree are larger issues that will be addressed by motions *in limine* and do not need to be resolved now.

[4] If Defendants elect to raise such arguments for the first time in their reply brief, such arguments will be untimely and should not be considered. *Holmes v. Elec. Document Processing, Inc.*, No. 12-CV-06193 LHK, 2013 U.S. Dist. LEXIS 116598, at *22-23 n.4 (N.D. Cal. Aug. 15, 2013) (Koh, J.)("'It is well settled that new arguments cannot be made for the first time in rely. This goes for new facts too.' Thus, the Court declines to consider these arguments.") (quoting *Gold v. Wolpert*, 876 F.2d 1327, 1331 n.6 (7th Cir. 1989)).

would have to prove that the anti-solicitation agreements resulted in "competitive benefits," and the jury would be instructed that "you *must* also consider whether the restraint was *reasonably necessary* to achieve the benefits." ABA Section of Antitrust Law, Model Jury Instructions in Civil Antitrust Cases (2005 ed.), at A-10 ("Jury Instructions"). If the restraints were not "reasonably necessary," then they "*cannot* be used to justify the restraint." *Id.* Defendants not only concede that their anti-solicitation agreements were not reasonably necessary to the competitive benefits they assert, Defendants mock the idea that it could be so as a "straw-man proposition[.]" Mot. at 6. Like the Department of Justice, Defendants appear to correctly understand that the facts here, if proven, will not support application of any standard other than per se illegality. *See* DOJ Competitive Impact Statement at 6, *United States v. Adobe Systems Inc., et al.*, No. 10-cv-1629-RBW (D.D.C. Sept. 24, 2010); *United States v. Brown*, 936 F.2d 1042, 1045 (9th Cir. 1991); *United States v. Coop. Theaters of Ohio, Inc.*, 845 F.2d 1367, 1373 (6th Cir. 1988).

The cases defendants selectively quote concern the question of when to apply the rule of reason to restraints associated with legitimate joint ventures, which would otherwise be per se illegal. These cases are irrelevant. First, whether the per se or rule of reason standard applies is a question of law for the Court—not a question of fact for expert testimony.[5] Second, to even open the door to this body of law, Defendants must establish a new product joint venture as to which "horizontal restraints on competition are *essential* if the product is to be available at all." *NCAA v. Bd. of Regents*, 468 U.S. 85, 101 (1984) (emphasis added). Once again the law gives a requirement of necessity that Defendants have expressly disavowed. As Defendants' own cases say,

> A court must distinguish between "naked" restraints, those in which the restriction on competition is unaccompanied by new production or products, and "ancillary" restraints, those that are part of a larger endeavor, whose success they promote. If two people meet one day

---

[5] *See Calif. ex rel. Harris v. Safeway, Inc.*, 651 F.3d 1118, 1124 (9th Cir. 2011) (holding that the selection of the proper mode of antitrust analysis is a question of law, to be reviewed de novo on appeal); *In re Terazosin Hydrochloride Antitrust Litig.*, 352 F. Supp. 2d 1279, 1310 (S.D. Fla. 2005) ("Although applying any particular method of analysis may involve fact questions, the selection of a mode of analysis is entirely a question of law for the Court to decide.").

>  and decide not to compete, the restraint is "naked"; it does nothing
>  but suppress competition.

*Polk Bros., Inc. v. Forest City Enters., Inc.*, 776 F.2d 185, 188-89 (1985).  Defendants have no hope of meeting this standard and do not even try.  Defendants are the seven companies who decided not to compete, and there is no contemporaneous evidence that their secret anti-solicitation agreements had anything to do with any legitimate collaboration.  But if Defendants ever tried to meet this standard, and it somehow became a question for the jury, Dr. Marx's opinion that the restraints on competition had "nothing to do" with any collaborative activity between the companies would obviously be relevant.  And even if Defendants could make this showing, the result is only that their conduct is subject to rule of reason analysis where, again, the jury would be required to "consider whether the restraint was ***reasonably necessary*** to achieve the benefits."  Jury Instructions at A-10 (emphasis added).  No matter how Defendants try to slice the law, if they succeed in putting at issue the question of the connection between the restraints and collaborative activity, Dr. Marx's testimony will be relevant and helpful to the jury.

### C. Dr. Marx Need Not Be An Economist to Offer Admissible Expert Opinion

Finally, Defendants argue that Dr. Marx may not offer his opinion that Defendants' Agreements would limit compensation because he is not an economist.  Dr. Marx, a professor in the M.I.T. business school, need not be an economist to offer this testimony.  Rule 702 permits expert opinion evidence on the basis of "specialized knowledge," as long as it "will assist the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702.  *See Thomas v. Newton Int'l. Enters*, 42 F.3d 1266, 1269 (9th Cir. 1994); *Hangarter*, 373 F.3d at 1015 ("Rule 702 is broadly phrased and intended to embrace more than a narrow definition of qualified expert'") (quoting *Thomas*, 42 F.3d at 1269).[6]  Dr. Marx has "specialized knowledge" regarding how non-compete agreements operate.  He properly bases his opinion on that knowledge and his

---

[6] *See also Flanagan v. Altria Group, Inc.*, 423 F. Supp. 2d 697 (E.D. Mich. 2005) (permitting expert testimony from expert who was not an economist with specialized expertise developed through his experience with the FTC's regulations and the significance of FTC actions); *Thornberry Oil Field Servs., Inc. v. Gulf Coast Pipeline Partners, L.P.*, No. H-03-1458, 2004 U.S. Dist. LEXIS 30750, * 18-19 (S.D. Tex. Aug. 16, 2004) (denying motion to exclude expert with over thirty years' experience in the oil and gas industry offering testimony over defendant's objection that he was not an expert in the field of antitrust economic damages).

1    analysis of the record evidence.  As Rule 702's disjunctive language makes clear, expert

2    witnesses may offer "scientific, technical, *or* other specialized knowledge," and may be qualified

3    "by knowledge, skill, experience, training, *or* education."  *Id.* (emphasis added); *Thomas*, 42 F.3d

4    at 1269 ("[A]n expert may be qualified either by "knowledge, skill, experience, training, or

5    education.").  Dr. Marx has acquired specialized knowledge about a complex issue—namely the

6    effects of non-compete agreements—analogous to the agreements at issue.  In the course of his

7    peer-reviewed fieldwork, Dr. Marx found that non-competes significantly reduce both inter-

8    organizational mobility and compensation of workers with technical skills.  *See* Marx ¶ 21(b).[7]

9    Dr. Marx compares and contrasts the non-compete agreements to the agreements at issue here,

10   concluding that he would "expect Agreements of this sort to reduce the compensation of class

11   members."  Marx, Section IV.  His understanding and academic research on these relevant issues

12   will be helpful to the jury in explaining the significance and the likely effect of Defendants'

13   agreements.

14          The cases Defendants cite do not warrant a different result.  Dr. Marx does not purport to

15   offer any specific econometric analysis of the issues in this case, and does not hold himself out as

16   an economist.  By contrast, in *Berlyn, Inc. v. Gazette Newspapers, Inc.*, 214 F. Supp. 2d 530

17   (D. Md. 2002), the court found that, while the expert with extensive experience in the business

18   side of the publishing industry was unqualified to offer opinions as to antitrust economics and

19   relevant market analysis, he was qualified to offer his opinions regarding predatory pricing and

20   lost profits based on his experience, training, and academic research.  *Id.* at 540-41.

21                                                  **CONCLUSION**

22          For the foregoing reasons, Plaintiffs respectfully request that the Court deny Defendants'

23   Motion.

24

---

25   [7] Dr. Marx's fieldwork included 52 in-depth interviews and a survey of more than 1,000 members of the Institute of Electrical and Electronics Engineers.  Marx ¶ 21(b)(ii); Marx Rebuttal ¶¶ 35-43;
26   Matthew Marx, *The Firm Strikes Back: Non-Compete Agreements and the Mobility of Technical Professionals*, 76 Am. Soc. Rev. 695, 700-702 (2011); Matthew Marx, et al., *Mobility, Skills, and*
27   *the Michigan Non-Compete Experiment*, 55 Mgmt. Sci. 875, 879-881 (2009).  None of Defendants' experts has conducted any similar studies that are analogous to the agreements at
28   issue here.

| | |
|---|---|
| Dated: February 6, 2014 | LIEFF CABRASER HEIMANN & BERNSTEIN, LLP |
| | By: _____/s/ Kelly M. Dermody_____ |
| | Richard M. Heimann (State Bar No. 63607)<br>Kelly M. Dermody (State Bar No. 171716)<br>Eric B. Fastiff (State Bar No. 182260)<br>Brendan P. Glackin (State Bar No. 199643)<br>Dean M. Harvey (State Bar No. 250298)<br>Anne B. Shaver (State Bar No. 255928)<br>Lisa J. Cisneros (State Bar No. 251473)<br>LIEFF CABRASER HEIMANN & BERNSTEIN, LLP<br>275 Battery Street, 29th Floor<br>San Francisco, California 94111-3339<br>Telephone: (415) 956-1000<br>Facsimile: (415) 956-1008 |
| | Joseph R. Saveri<br>James G. Dallal<br>JOSEPH SAVERI LAW FIRM, INC.<br>255 California, Suite 450<br>San Francisco, CA 94111<br>Telephone: (415) 500-6800<br>Facsimile: (415) 500-6803 |
| | *Co-Lead Class Counsel* |
| | Eric L. Cramer<br>Sarah Schalman-Bergen<br>BERGER & MONTAGUE, P.C.<br>1622 Locust Street<br>Philadelphia, PA 19103<br>Telephone: (800) 424-6690<br>Facsimile: (215) 875-4604 |
| | Linda P. Nussbaum<br>Peter A. Barile III<br>GRANT & EISENHOFER P.A.<br>485 Lexington Avenue, 29th Floor<br>New York, NY 10017<br>Telephone: (646) 722-8500<br>Facsimile: (646) 722-8501 |
| | *Class Counsel* |