# EXHIBIT 416
to the Declaration of
Lisa J. Cisneros in Support of
Plaintiffs' Opposition Briefs

**REDACTED VERSION**

Robert A. Mittelstaedt (State Bar No. 60359)
ramittelstaedt@jonesday.com
Craig A. Waldman (State Bar No. 229943)
cwaldman@jonesday.com
David C. Kiernan (State Bar No. 215335)
dkiernan@jonesday.com
JONES DAY
555 California Street, 26th Floor
San Francisco, CA 94104
Telephone: (415) 626-3939
Facsimile: (415) 875-5700

Attorneys for Defendant
Adobe Systems Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

IN RE: HIGH-TECH EMPLOYEE ANTITRUST LITIGATION

THIS DOCUMENT RELATES TO:

ALL ACTIONS

**Master Docket No. 11-CV-2509-LHK**

**DECLARATION OF DONNA MORRIS OF ADOBE SYSTEMS INC. IN SUPPORT OF DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

Date Consolidated Amended Compl. Filed: September 13, 2011

**ATTORNEYS EYES ONLY**

**EXHIBIT** 416
**Deponent** Murphy
**Date** 12-3-12
Gina V. Carbone, CSR

416.1

I, Donna Morris, declare as follows:

1. I am the Senior Vice President ("SVP") of Global Human Resources at Adobe Systems Inc. ("Adobe"). I have been employed by Adobe in the human resources ("HR") department for more than 10 years. I began working for Adobe in April 2002 as the Senior Director of Global Talent. In December 2005, I became the Vice President of Global Human Resource Operations. In March 2007, I was promoted to my current position.

2. I have personal knowledge of the matters stated in this declaration. I make the statements in this declaration based on information gained during my current and former positions within Adobe's HR department. I have been responsible for all HR operations, including the compensation, benefits, and recruiting teams since March 2007. As part of my duties, I have gained historical knowledge of Adobe's compensation practices before 2007 by reviewing Adobe's past training and presentation materials and by participating in meetings and discussions with other Adobe employees. The compensation policies and practices described herein apply to Adobe's salaried employees between January 1, 2005 and December 31, 2009 (the "Class Period").

3. The information in this declaration and the exhibits attached are confidential to Adobe. It is Adobe's practice to keep compensation policies and strategies confidential, for internal use only, and not to disclose them to the public. The public disclosure of this information would harm Adobe, including potentially impairing its competitive position in recruiting, hiring, and compensating employees. Adobe derives independent economic value from keeping this information confidential. Adobe has designated the information Attorneys Eyes Only under the Protective Order entered in this case.

4. During the Class Period, Adobe employed thousands of employees in more than 400 job categories, including executives, human resource managers, compensation analysts, benefits managers, payroll mangers, recruiters, attorneys, accountants, sales managers, product managers, various types of software developers, quality assurance analysts, IT employees, creative designers, web developers, facility managers, market research analysts, financial analysts, business analysts, internal auditors, and various other jobs. [redacted]

[redacted].

## I. ADOBE'S COMPENSATION GENERALLY

[redacted]

[redacted]

[redacted]

[redacted] As examples, attached hereto as Exhibits 1 through 5 are true and correct copies of internal Adobe manager training presentations during the Class Period discussing Adobe's compensation policy:

a. Exhibit 1 (ADOBE_015864), Adobe 2005 Performance, Salary & Stock Focal, February 2005 – "We fairly and regularly assess performance results and differentiate rewards based on performance";

b. Exhibit 2 (ADOBE_023747), 2007 Mini Performance Focal Manager Training, November & December 2006 – [redacted]

c. Exhibit 3 (ADOBE_015059) FY '07 Incentive Program Updates, February 15, 2007 – "differentiate rewards based on performance";

d. Exhibit 4 (ADOBE_009668) HR All Hands, September 11, 2008 – "Developing total reward programs that are differentiated based on performance"; "increasing focus on differentiation of rewards based on performance"; and

e. Exhibit 5 (ADOBE_009295) HR Strategic Plan 2010 – 2013, "Continue to evolve culture towards pay for performance."

## II. <u>HOW ADOBE SETS COMPENSATION FOR EXISTING EMPLOYEES</u>

9. Because of Adobe's strong emphasis on tying compensation to performance and differentiating compensation across employees, each employee's compensation was determined by that employee's manager who is in the best position to assess that employee's performance.

### A. BASE SALARY

#### 1. <u>Performance Evaluations</u>

[redacted]

[Page contents redacted]

[Page contents fully redacted]

[redacted]

[redacted] [redacted] Adobe's compensation team built the salary ranges for each job code for the coming year by setting the mid-point of the salary range at a certain percentile of the survey data, then setting a maximum and a minimum. The target midpoint has changed over the years and varied across job functions. For example, the 2005 target midpoint for various jobs is set forth in Exhibit 1 (ADOBE_015864), which is a true and correct copy of Adobe's 2005 Performance, Salary & Stock Focal. The maximum and minimum of the salary range was then calculated by applying a spread, which also varied over the years and across job levels. The spread varied between 50% to around 70% for different job levels during the Class Period. After the salary ranges were set, they were loaded onto the internal salary website for access by all managers in the company.

[redacted] [redacted]

//

//

3. **Budget**

22. Each year, Adobe determined a budget for managers to use for merit-based salary increases and promotions. The budget has varied over the years; for example, it was 5% for 2005 and 5.5% for 2008. See, for example, Exhibit 1, which is a true and correct copy of the 2005 Focal Review (ADOBE_015864). [REDACTED].

B. **BONUS AND EQUITY**

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

C. **TIMING OF ANNUAL COMPENSATION ADJUSTMENTS**

27. Generally, adjustments to employee compensation occurred during the focal

ATTORNEYS EYES ONLY

- 7 - 416.8

Morris Declaration
Master Docket No. 11-CV-2509-LHK

period described above. Prior to 2007, the annual base salary, bonus, and equity grant adjustments became effective June 1st. In 2007, Adobe shifted its model to align the review period with the end of the fiscal year, making the annual salary, bonus, and equity grant adjustments effective on February 1st.

[redacted]

III. NEW HIRE COMPENSATION

IV. INTERNAL EQUITY

[redacted]

## V. MERGERS AND ACQUISITIONS

35. In December of 2005, Adobe acquired San Francisco-based Macromedia, a leading software solutions company. The acquisition added approximately 1,200 employees to Adobe's headcount. The new employees had to be integrated into our company. [redacted]

36. After Macromedia, Adobe continued to make acquisitions, including the acquisition of Navisware in 2005; TTF, Pixmantec, Interakt, Amicima, Serious Magic, and Antepo in 2006; Scene7 and Virtual Ubiquity in 2007; Meer Meer and Yawah in 2008; and Business Catalyst and Omniture in 2009. The most significant of these acquisitions was the acquisition of Omniture, which added approximately 1,100 employees. [redacted]

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct. Executed this 9th day of November 2012 in San Jose, California.

By: Donna Morris

SFI-771543

4/16/11