# EXHIBIT BBB

# REDACTED PUBLIC VERSION

```
 1                UNITED STATES DISTRICT COURT

 2              NORTHERN DISTRICT OF CALIFORNIA

 3                     SAN JOSE DIVISION

 4

 5

 6   IN RE:  HIGH-TECH EMPLOYEE     )

 7   ANTITRUST LITIGATION           )

 8                                  )    No. 11-CV-2509-LHK

 9   THIS DOCUMENT RELATES TO:      )

10   ALL ACTIONS.                   )

11   _____)

12

13

14          CONFIDENTIAL - ATTORNEYS' EYES ONLY

15          VIDEO DEPOSITION OF PAMELA ZISSIMOS

16                   November 13, 2012

17

18

19

20   REPORTED BY:  GINA V. CARBONE, CSR NO. 8249, RPR, CCRR

21

22

23

24

25
```

| | | |
|---|---|---|
| 10:51:04 | 1 | THE WITNESS:  Define factors. |
| 10:51:08 | 2 | MR. HARVEY:  Q.  You can use a different |
| 10:51:09 | 3 | word if you want.  What I'm getting at is I'm trying |
| 10:51:12 | 4 | to understand what is discussed during those |
| 10:51:14 | 5 | conversations with the hiring managers; for example, |
| 10:51:17 | 6 | do they say well, our budget is lean this year, we |
| 10:51:22 | 7 | can only offer X, we can't go above Y?  Do they say |
| 10:51:26 | 8 | things like that? |
| 10:51:27 | 9 | A.  No. |
| 10:51:28 | 10 | MS. HENN:  Object to form. |
| 10:51:30 | 11 | MR. HARVEY:  Q.  No.  So if you could, in |
| 10:51:32 | 12 | as general terms as you like, explain -- I can say |
| 10:51:35 | 13 | categories instead of factors -- categories of |
| 10:51:38 | 14 | things that you talk about with the hiring manager |
| 10:51:41 | 15 | in these discussions you've had about what |
| 10:51:46 | 16 | compensation to offer candidates. |
| 10:51:48 | 17 | MS. HENN:  Objection.  Lack of foundation. |
| 10:51:51 | 18 | Vague. |
| 10:51:54 | 19 | THE WITNESS:  Typically when I meet with a |
| 10:51:56 | 20 | hiring manager, and we know that we want to move forward |
| 10:52:00 | 21 | with a candidate, we will discuss the person's |
| 10:52:03 | 22 | experience and -- years of experience and/or what |
| 10:52:16 | 23 | they've worked on.  And we will compare them internally |
| 10:52:26 | 24 | to who we feel internally they are comparable to |
| 10:52:30 | 25 | experience wise, and then we'll kind of base it from |

| | | |
|---|---|---|
| 10:52:32 | 1 | there. Talk about it from there. |
| 10:52:35 | 2 |     MR. HARVEY: Q. So you don't want to pay |
| 10:52:36 | 3 | someone out of whack with what other people who are |
| 10:52:39 | 4 | doing similar things are being paid, correct? |
| 10:52:41 | 5 |     MS. HENN: Objection. Lack of foundation. |
| 10:52:43 | 6 | Vague. |
| 10:52:53 | 7 |     THE WITNESS: Can I hear the question again. |
| 10:52:58 | 8 |     MR. HARVEY: Can you please read back the |
| 10:52:59 | 9 | question. |
| 10:53:05 | 10 |     (Record read as follows: So you don't want to |
| 10:53:05 | 11 |     pay someone out of whack with what other people |
| 10:53:05 | 12 |     who are doing similar things are being paid, |
| 10:53:05 | 13 |     correct?) |
| 10:53:07 | 14 |     MS. HENN: Objection. Lack of foundation and |
| 10:53:09 | 15 | vague. |
| 10:53:15 | 16 |     THE WITNESS: Yes. |
| 10:53:29 | 17 |     MR. HARVEY: Q. Do you participate in |
| 10:53:30 | 18 | compensation planning firmwide at Pixar? |
| 10:53:40 | 19 |     THE WITNESS: No. |
| 10:53:41 | 20 |     MS. HENN: And just belated objection for lack |
| 10:53:44 | 21 | of foundation. |
| 10:53:47 | 22 |     MR. HARVEY: And that's to my prior question? |
| 10:53:49 | 23 |     MS. HENN: Yes. |
| 10:53:54 | 24 |     MR. HARVEY: Q. Have you ever made |
| 10:53:55 | 25 | presentations or communicated with anyone on Pixar's |

| | | |
|---|---|---|
| 10:53:59 | 1 | compensation committee? |
| 10:54:00 | 2 | A.  No. |
| 10:54:02 | 3 | Q.  Do you participate in any committees at Pixar? |
| 10:54:06 | 4 | MS. HENN:  Objection.  Lack of foundation. |
| 10:54:10 | 5 | THE WITNESS:  Committees, no. |
| 10:54:15 | 6 | MR. HARVEY:  Q.  Do you report to anyone at |
| 10:54:17 | 7 | Disney? |
| 10:54:18 | 8 | A.  Do I? |
| 10:54:20 | 9 | Q.  Uh-huh. |
| 10:54:20 | 10 | A.  No. |
| 10:54:28 | 11 | Q.  When you reported directly to Lori McAdams, how |
| 10:54:30 | 12 | often would you communicate with her on a weekly basis? |
| 10:54:37 | 13 | A.  Once a week. |
| 10:54:38 | 14 | Q.  And were those one-on-ones? |
| 10:54:40 | 15 | A.  Uh-huh. |
| 10:54:40 | 16 | Q.  And that's when you and Lori McAdams would sit |
| 10:54:42 | 17 | down in person and have a conversation? |
| 10:54:44 | 18 | A.  Yes. |
| 10:54:45 | 19 | Q.  And did you communicate with her aside from |
| 10:54:47 | 20 | those one-on-ones, either by email or telephonically? |
| 10:54:52 | 21 | A.  Every once in a while. |
| 10:54:54 | 22 | Q.  And that was multiple times a week; is that |
| 10:54:55 | 23 | right? |
| 10:54:56 | 24 | A.  I can't recall. |
| 10:54:57 | 25 | Q.  And now moving away from when you directly |

| | | |
|---|---|---|
| 01:12:51 | 1 | preference that Pixar not hire folks directly out of |
| 01:12:55 | 2 | Apple corporate headquarters? |
| 01:12:57 | 3 |     A.  I had an understanding that we had a |
| 01:12:59 | 4 | no-poaching policy process that we did with Apple. |
| 01:13:03 | 5 |     Q.  But I'm asking about whether you know or you've |
| 01:13:06 | 6 | ever heard anybody talk about Steve Jobs' preference |
| 01:13:10 | 7 | that Pixar not hire folks directly out of Apple |
| 01:13:13 | 8 | corporate headquarters. |
| 01:13:14 | 9 |     A.  No, I can't speak for Steve Jobs' preference. |
| 01:13:17 | 10 |     Q.  I'm not asking you to speak for him.  I'm |
| 01:13:19 | 11 | asking you to reflect on your own memories and your own |
| 01:13:22 | 12 | personal experience.  Have you ever heard anybody say |
| 01:13:24 | 13 | this at Pixar, to the effect that Steve Jobs preferred |
| 01:13:29 | 14 | that Pixar not hire folks directly out of Apple |
| 01:13:32 | 15 | corporate headquarters? |
| 01:13:34 | 16 |     A.  No, I have not heard it like that.  No. |
| 01:13:38 | 17 |     Q.  And then Karen Chelini responds -- |
| 01:13:43 | 18 |     A.  Chelini. |
| 01:13:45 | 19 |     Q.  I'm sorry, Chelini.  I have a line through the |
| 01:13:46 | 20 | N. |
| 01:13:47 | 21 |     Who is Karen Chelini? |
| 01:13:49 | 22 |     A.  She was the talent manager at the time. |
| 01:13:52 | 23 |     Q.  Okay.  And she says, "I'm certain we'd have to |
| 01:13:55 | 24 | go through the same protocol as with any Apple |
| 01:13:59 | 25 | employee." |

```
01:13:59  1                  Do you know what protocol she's referring to?
01:14:02  2           A.   I don't know what she's referring to, no.
01:14:10  3           Q.   Do you have an understanding of what Pixar's
01:14:14  4    protocol was with respect to Apple employees prior to
01:14:16  5    the DOJ investigation?
01:14:23  6           A.   My understanding was in order for us to
01:14:26  7    consider an Apple employee as a candidate, we couldn't
01:14:34  8    make an offer without letting Steve Jobs know.  And
01:14:42  9    that, to me, my understanding is that got more loose
01:14:50 10    once Disney bought us.
01:14:51 11           Q.   Okay.  Why would Disney's purchase of Pixar
01:15:01 12    affect Pixar's recruitment of Apple?
01:15:09 13           A.   My understanding is that because Steve was more
01:15:19 14    on the Disney board, but still involved with Pixar, but
01:15:24 15    it -- because of -- because of him not being at Pixar as
01:15:29 16    regularly as he was, it just loosened the -- the
01:15:39 17    strictness that it was on -- that was on it.
01:15:42 18           Q.   How did the protocol change once Disney
01:15:45 19    purchased Pixar?
01:15:47 20           A.   I don't know it necessarily changed.  It was
01:15:49 21    just my acknowledgment that it seems not as --
01:15:55 22           Q.   That it wasn't enforced as strictly?  Is that
01:15:58 23    fair to say?
01:15:59 24           A.   Yes.
01:16:00 25           Q.   Okay.  And then if you go up one in time, Lori
```

| | | |
|---|---|---|
| 01:16:10 | 1 | McAdams responds and says, "I chatted with Greg, and he |
| 01:16:13 | 2 | and I agree that it should be okay for us to hire from |
| 01:16:16 | 3 | the retail outlets.  HOWEVER," in all caps, "we should |
| 01:16:22 | 4 | talk with Ed first to make sure he agrees and/or clears |
| 01:16:26 | 5 | it with Steve." |
| 01:16:29 | 6 | She's talking about Ed Catmull, correct? |
| 01:16:34 | 7 | A.   Yes. |
| 01:16:35 | 8 | Q.   And Steve here is Steve Jobs? |
| 01:16:37 | 9 | A.   I don't know. |
| 01:16:38 | 10 | Q.   Okay.  You can put that to the side. |
| 01:17:00 | 11 | This document is being introduced as |
| 01:17:02 | 12 | Plaintiffs' Exhibit 369 and it's Bates stamped |
| 01:17:04 | 13 | Pixar 3599. |
| 01:17:17 | 14 | (Whereupon, Exhibit 369 was marked for |
| 01:17:17 | 15 | identification.) |
| 01:17:19 | 16 | MR. HARVEY:   Q.   And as before, this was in |
| 01:17:20 | 17 | 2005 before you worked at Pixar. |
| 01:17:22 | 18 | A.   Okay. |
| 01:17:22 | 19 | Q.   But just let me know once you've had a chance |
| 01:17:24 | 20 | to look at it. |
| 01:17:26 | 21 | A.   Okay. |
| 01:18:15 | 22 | Okay. |
| 01:18:18 | 23 | Q.   Do you know who Howard Look is? |
| 01:18:20 | 24 | A.   Yes. |
| 01:18:21 | 25 | Q.   Who is he? |

```
01:18:22   1        A.   I'm sorry, I don't know his exact title.  I
01:18:25   2   don't know his exact title.
01:18:27   3        Q.   Do you know roughly what his job
01:18:28   4   responsibilities were?
01:18:29   5        A.   Kind of like a CIO at the time.
01:18:32   6        Q.   And that's chief information officer?
01:18:34   7        A.   Yeah.
01:18:36   8        Q.   Here he -- on October 21st, 2005, writes Ed
01:18:41   9   Catmull and he says, "I asked you a couple of months ago
01:18:45  10   about an Apple employee that would really like to work
01:18:47  11   at Pixar, but you indicated that there was just too much
01:18:50  12   craziness in getting that approved, and I let it go."
01:18:54  13             Have you ever spoken to anybody at Pixar
01:18:58  14   about -- or seen anywhere craziness in getting Apple to
01:19:05  15   approve the hiring of one of its employees?
01:19:16  16        A.   I guess I'm going to have to ask what you mean.
01:19:18  17        Q.   By what?
01:19:19  18        A.   Well, craziness is a loose term.
01:19:23  19        Q.   Sure.
01:19:23  20        A.   So I don't --
01:19:24  21        Q.   Sure.  That's fair.  Say difficulties.
01:19:31  22        A.   Uh-huh.
01:19:33  23        Q.   In your experience, have there been
01:19:35  24   difficulties getting Apple to approve an Apple -- or
01:19:37  25   hire from Apple?
```

| | | |
|---|---|---|
| 01:19:38 | 1 | A.  I have not experienced it. |
| 01:19:39 | 2 | Q.  Have you ever spoken to anybody at Pixar about |
| 01:19:41 | 3 | that or seen any evidence of that? |
| 01:19:44 | 4 | MS. HENN:  Objection.  Compound. |
| 01:19:45 | 5 | THE WITNESS:  I have not seen any evidence of |
| 01:19:46 | 6 | it, no. |
| 01:19:48 | 7 | MR. HARVEY:  Q.  Okay.  And then Ed Catmull |
| 01:19:58 | 8 | responds three days later on October 24th, "If I |
| 01:20:01 | 9 | talk to Steve, he will want the name of the guy.  My |
| 01:20:05 | 10 | guess is that Steve will approve it if he knows that |
| 01:20:07 | 11 | he is going to lose him, but we would have to go |
| 01:20:10 | 12 | through the step of Apple knowing what is |
| 01:20:13 | 13 | happening." |
| 01:20:14 | 14 | Is this consistent with your understanding of |
| 01:20:17 | 15 | how Pixar raised the issues of potential Apple hires |
| 01:20:21 | 16 | with Steve Jobs? |
| 01:20:23 | 17 | MS. HENN:  Objection.  Vague as to time. |
| 01:20:28 | 18 | MR. HARVEY:  Q.  Prior to Disney's |
| 01:20:30 | 19 | acquisition of Pixar. |
| 01:20:34 | 20 | A.  My understanding is that in order to make an |
| 01:20:36 | 21 | offer to an Apple employee, it would have to go through |
| 01:20:41 | 22 | Steve.  Yes. |
| 01:21:00 | 23 | MR. HARVEY:  This is introduced as Plaintiffs' |
| 01:21:01 | 24 | Exhibit 370, and it's Bates stamped Pixar 3481. |
| | 25 | |

```
01:21:14   1              (Whereupon, Exhibit 370 was marked for
01:21:14   2         identification.)
01:21:15   3              MR. HARVEY:  Q.  And this one does have you
01:21:16   4    on it, so please let me know when you've had a
01:21:20   5    chance --
01:21:21   6         A.   As Harbidge.
01:21:27   7         Q.   Yeah.
01:21:39   8         A.   Okay.
01:21:40   9         Q.   If you go back -- well, throughout this, is
01:21:43  10    this an email exchange that you participated in between
01:21:48  11    October 4th, 2006 and October 6th?
01:21:51  12         A.   Uh-huh.
01:21:51  13         Q.   Sorry.  That's a yes?
01:21:52  14         A.   Yes.  Sorry.  Yes.
01:21:54  15         Q.   And if you go to the first in time email, the
01:21:56  16    one you wrote October 4th you say that you have
01:21:59  17    scheduled a phone interview with ▮▮▮▮▮▮▮▮▮▮.  Do you
01:22:03  18    recall the application process of ▮▮▮▮▮▮▮▮▮▮?
01:22:10  19         A.   No.
01:22:11  20         Q.   We'll go through it and maybe your memory will
01:22:14  21    improve.
01:22:14  22         A.   Okay.
01:22:16  23         Q.   Let's see.  And then you wrote this to Allan
01:22:19  24    Poore.  Who is Allan Poore?
01:22:27  25         A.   Gosh.  I don't know his title either.  He was
```

1        I, Gina V. Carbone, Certified Shorthand
2   Reporter licensed in the State of California, License
3   No. 8249, hereby certify that the deponent was by me
4   first duly sworn and the foregoing testimony was
5   reported by me and was thereafter transcribed with
6   computer-aided transcription; that the foregoing is a
7   full, complete, and true record of said proceedings.
8        I further certify that I am not of counsel or
9   attorney for either of any of the parties in the
10  foregoing proceeding and caption named or in any way
11  interested in the outcome of the cause in said caption.
12       The dismantling, unsealing, or unbinding of
13  the original transcript will render the reporter's
14  certificates null and void.
15       In witness whereof, I have hereunto set my
16  hand this day:  November 26, 2012.
17            ___X___ Reading and Signing was requested.
18            _____ Reading and Signing was waived.
19            _____ Reading and signing was not requested.
20
21
22                        _____
23                        GINA  V. CARBONE
24                        CSR 8249, RPR, CCRR
25