# EXHIBIT 124 TO
# HARVEY DECLARATION
# REDACTED VERSION



# Compensation Handbook

## Table of Contents

Glossary of Terms ................................................................................................................................. 2

Company Bonus Plan ........................................................................................................................... 4

Stock Options ...................................................................................................................................... 6

Google Stock Units (GSUs) ................................................................................................................. 8

TSO Program ....................................................................................................................... 11

█████████████ ......................................................................................................... 22

Global Employee Tax Communication Website ................................................................................. 24

North American Relocation Plan Summaries ..................................................................................... 26

EMEA Relocation Plan Summaries .................................................................................................... 27

Asking the Right Questions… ............................................................................................................ 28

Calculating Comp Exercise ............................................................................................................... 31

Comping an Offer Process Flow ........................................................................................................ 32

CONFIDENTIAL ATTORNEY'S EYES ONLY                                     GOOG-HIGH-TECH-00233026

# Glossary of Terms

**Comp Philosophy**

- **Target Total Cash (TTC):** Base + Target Bonus + Sign-on Bonus + Other Bonus
- **Total Direct Pay:** Base + Target Bonus + Sign-on Bonus + Other Bonus + **Equity**

**Compensation Structure**

████████████████████████████████████████

- **Benchmarking:** The process of establishing Google's compensation relative to the market

████████████████████████████████████████

- **Market Reference Point (MRP):** Google's internal target pay rate for a given job.
- **Compa Ratio:** Comparison Ratio: The current salary as a percentage of the market reference point. This value is truncated to the nearest whole percentage (e.g., 119.3%, 119.5%, 119.9% = 119%)

**Bonus Programs**

████████████████████████████████████████

**Equity**

- **Stock Option**: A securities contract that gives the holder the right to purchase a set number of shares of the Company's Common Stock at a fixed price
- **GSU:** An award that entitles the holder to a share of Google stock when the unit vests. One GSU equals one share of Google Class A common stock.
- **TSO:** Google employee nonqualified stock options that, once vested, may be transferred ("sold") to financial institutions through an online auction.
- **Vesting:** Vesting is the defined time period during which equity become exercisable.
- **Exercise:** Your election to purchase the shares underlying the stock options.
- **Fair Market Value:** The Fair Market Value is the price at which shares of a company's common stock is selling on a stock exchange, such as the NASDAQ National Market.
- **Strike Price:** The option grant price is the price at which you can purchase your shares. The grant price (aka "exercise price" or "strike price") is the closing Fair Market Value ("FMV") on NASDAQ on the date the option is approved.
- **Intrinsic Value:** The appreciation or amount a stock price has increased from its strike price
- **Grant Date:** The date on which your options are approved by Google's Board of Directors.

CONFIDENTIAL ATTORNEY'S EYES ONLY                                        GOOG-HIGH-TECH-00233027

- **Cliff Date:** The date on which the first portion of your equity grant vests, or becomes exercisable
- **Cliff Percentage:** The percentage of your equity grant that vests on the cliff date
- **Fully Vested Date:** The date on which all of your equity grant will be eligible to exercise
- **Unvested Percentage:** The percentage of your equity grant still unvested
- **Hedging:** Hedging is a way of reducing some of the risk involved in holding an investment. One example is to sell short the stock of a competitor to the company whose stock you hold.
- **Sell short:** Method of profiting from a declining stock price by borrowing shares of the stock, selling them at the market price, and then repurchasing the same number of shares at a future date (and at a lower price, if you're lucky) to return them to the original lender.

████████████████████████████████████████

**Recognition Plans**



**Offer Process**

- **Exploding Offer:** A competing offer that has a deadline by which the candidate must make a decision
- **Offline Approval:** ████████████████████████████
████████████████████████████████████
- **Comp Genie:** A worksheet tool that helps a recruiter determine the comp package for a candidate (base salary, target bonus % and equity).
- **Comp Valuation Tool:** A worksheet tool that helps a recruiter determine a candidate's Total Direct Pay over 0-4 years based on varying salaries, levels and stock price growth rates. Also known as Comping Offers model or Comp Illustration.

**Performance Management**

████████████████████████████████████████

- **gComp:** Google's home-grown salary planning tool
- **Merit Increase:** A salary increase based on an employee's performance

CONFIDENTIAL ATTORNEY'S EYES ONLY          GOOG-HIGH-TECH-00233028

# Company Bonus Plan

**1. What is "The Company Bonus Plan"?**

The Company Bonus Plan is an annual cash incentive program designed to reward employees for individual achievements as well as to share in rewards for Company achievements.

**2. Who is eligible to participate?**

All employees who do not already participate in a sales commission incentive (OTE) program are eligible to participate. You must be an employee on the bonus payout date in order to be eligible to receive a bonus payment.

**3. How long must I work before I may receive a payout?**

**4. How often are bonuses paid?**

Bonuses will be paid on an annual basis, typically in late February or early March.

**5. How are awards determined?**

Bonuses will be calculated using the following formula:

CONFIDENTIAL ATTORNEY'S EYES ONLY                                          GOOG-HIGH-TECH-00233029

Company Bonus Plan Mechanics:

Calculation Detail:

Legend:
= Communicated up front    = Communicated after performance period

CONFIDENTIAL ATTORNEY'S EYES ONLY

GOOG-HIGH-TECH-00233030

# Stock Options

**1. What is a stock option?**
A stock option is a securities contract that gives the holder (the "Optionee") the right to purchase a set number of shares of the Company's Common Stock at a fixed price (the "Exercise Price"). This right may be exercised at certain times over a period of years, as stock options usually vest over time. The exercise price is based on the value of the stock on the day the option was granted. You don't own any stock until you exercise your Stock Options, which means that you have purchased the shares.

**2. What is a grant date?**
The grant date is the date on which your options are approved by Google's Board of Directors.

**3. What is the stock option grant price?**
The option grant price is the price at which you can purchase your shares.  The grant price (aka "exercise price" or "strike price") is the closing Fair Market Value ("FMV") on NASDAQ on the date the option is approved.

**4. What is the "Fair Market Value"?**
The Fair Market Value shall be equal to the closing selling price of Google common stock on the NASDAQ National Market.

**5. What does vesting mean?**
Vesting is the time period in which options become exercisable.

**6. What is the spread/gain?**
The spread/gain is the difference between the current fair market value and the grant price at the time of exercise.

**7. What is the term of my grant?**
The term of grant is the period of time you have to exercise your options. Google option grants typically have a term of ten years.

**8. What is an expiration date?**
The expiration date is the date that the right to exercise your options expires, as specified in your grant agreement. If this date falls on a weekend or holiday, you must exercise your options by the close of the market on the business day before the expiration date. If the stock option is not exercised by the expiration date, it is no longer exercisable. Expiration date may also change based on your employment status.

**9. What does the term "Exercise" mean?**
Your election to purchase the shares underlying the stock options.

**10. Can I exercise my options before they vest?**
Grants issued after August 18, 2004 are not eligible for early exercise.

**11. Must I buy the shares when they vest?**
No. As an option vests, each Optionee may choose to exercise the vested portion at any time before the option expires.

CONFIDENTIAL ATTORNEY'S EYES ONLY                                           GOOG-HIGH-TECH-00233031

**12. How do I exercise my vested stock options?**
Log onto www.benefitaccess.com to access your account. Select the grant and number of options you would like to exercise and/or sell. For an exercise and hold, select the type of payment. For a same-day-sale, select the manner in which you would like to be paid. Payment can be in the form of a check mailed to your home, a wire transfer to your personal bank account or directly deposited into your SB retail account. Follow all of the instructions and be sure to fully complete the transaction(s). If you experience difficulties with trades, contact Smith Barney directly at (866) 466-4785.

**13. What happens to my options when my employment with Google ends?**
a. Vested Options: You have three months from the date of your termination to exercise (purchase) and/or sell your vested options. If you do not exercise your options within that three month period, the options will expire and you have no further rights to the option(s).
b. Unvested Options: All unvested options will cancel as of the date of your termination.
c. Unvested Early Exercised Shares: All Unvested early exercised shares will be repurchased by the company pursuant to section 1 of the Terms of Restricted Stock Purchase.

**14. What is a Non-Statutory Stock Option (NSO)?**
A Non-Statutory Stock Option ("NSO") is the type of option which the Company currently grants to its employees. Upon the exercise of an NSO, you are taxed on the amount, if any, by which the Fair Market Value (FMV) of the stock on the exercise date exceeds the Exercise Price (the "Bargain Element").

**15. What taxes are due upon exercise of an NSO?**
With an NSO, the Optionee typically recognizes taxable income upon exercise. In general, the amount by which the fair market value of the stock on the date of purchase exceeds the exercise price (the "bargain element") is taxable income on the date of exercise. Under an NSO, this bargain element is treated as compensation and taxed as ordinary income. Employees that exercise NSOs will have their taxes withheld from their proceeds; in certain circumstances, you may also be required to pay additional taxes on your option exercise.

**16. What taxes are due upon the sale of an NSO?**
If the Optionee holds the shares received from the NSO exercise more than one year from the date of exercise, upon disposition of the shares, the difference between the FMV on the date of sale and the FMV on the date of exercise may be treated as either capital gain or loss. Capital gains benefit from a lower taxable rate than ordinary income; in addition, capital gains may also be fully offset by capital losses. If the Optionee does not hold the shares received from the NSO exercise for more than one year from the date of exercise, upon disposition of the shares, the amount by which the FMV on the date of sale exceeds the FMV on the date of exercise may be treated as ordinary income.

CONFIDENTIAL ATTORNEY'S EYES ONLY                                              GOOG-HIGH-TECH-00233032

# Google Stock Units (GSUs)

**What's a GSU?**
A GSU is an award that entitles the holder to a share of Google stock when the unit vests.  One GSU equals one share of Google Class A common stock.

**How exactly does a GSU differ from a regular option?**
The shares are granted **automatically** upon vest; no "exercise" by the holder is required.  Further, the stock price must go up for employee to realize a "gain" with a regular option, and the Googler's gain is equal to the future stock price minus the stock price at grant (and minus all applicable taxes). But with a GSU, no stock price movement is necessary for the Googlers to realize a "gain" – essentially, the gain is equal to the full price of the stock on the day of vest.

**Is a GSU the same as restricted stock?**
Similar, but different.  GSUs are not shares of stock, even though they convert to shares of stock upon vesting.  As long as units are unvested, holders are not entitled to voting rights or dividends, if any.

**What are the tax implications of holding GSUs?**
Clearly, the tax implications vary by country, so please make certain to consult your tax advisor.  And please remember that Google cannot offer you tax advice.

In broad terms, for US residents, the employee's gain (i.e., full share value, including appreciation/depreciation after the GSU grant) is taxed as ordinary income when the units vest and the Google stock is transferred to the GSU holder. The government calculates your tax obligations on the day your GSUs vest, just as they calculate your taxes when we issue you a paycheck. At that point, Google calculates your tax obligation as ordinary income, and then grants you your shares net of tax withholding.

Once your shares have vested and are deposited in your account, you are free to sell those shares at any time subject to Google's blackout restrictions, or to continue to hold them for as long as you choose. Upon the sale of these shares, any further appreciation after vesting is taxed at capital gains rates.

**Is there a cash outlay for employees who receive GSUs?**
No, there is no exercise required for a GSU, and therefore, there's no cash outlay.

**Do GSUs also have voting rights, the same as Class A Common Stock?**
No.  GSUs are not shares of stock; however, they do convert to shares of Google Class A common stock upon vesting.  At that time, holders will be entitled to all shareholder rights, including voting rights.

**Will GSUs pay dividends?**
No.  Since GSUs do not convert to shares of stock until they vest, they do not entitle the holder to dividends, as long as they are unvested.  When they do vest, they convert to shares of Google Class A common stock and entitle the holder to all shareholder rights, including rights to receive dividends, if any.

CONFIDENTIAL ATTORNEY'S EYES ONLY                                    GOOG-HIGH-TECH-00233033

**What's the vesting schedule for a new hire GSU?**
New hire GSUs vest at a target rate of 25% per year on each of the four grant-date anniversaries (there's no monthly vesting after the one-year cliff).  The actual number of GSUs that vest is based on individual performance and market considerations as defined herein.  And, of course, the GSU holder must still be employed by Google as of the vesting date.


**When you say GSUs are performance- and market-based, what does that mean? If I'm meeting objectives do I get my shares?**
Employees who meet expectations or better can expect GSUs to vest at 25% per year.  When we determine the initial grant size, our expectation is not that employees should vest in any more or fewer units than the number initially granted; however, sometimes adjustments are warranted.  We may make adjustments when an employee's performance does not reflect his or her grant size; we may also make adjustments when stock price movement has resulted in a material disparity in the employee's equity grant value relative to other employees hired at roughly the same time.



CONFIDENTIAL ATTORNEY'S EYES ONLY                              GOOG-HIGH-TECH-00233034



CONFIDENTIAL ATTORNEY'S EYES ONLY

# TSO Program

**What are Google Transferable Stock Options ("TSOs")?**
Google TSOs are Google employee nonqualified stock options that, once vested, may be transferred ("sold") to financial institutions through an online auction. Under our current stock option program, Google employees have a choice of either (1) exercising their vested stock options and then selling or holding the stock, or (2) continuing to hold the options to purchase shares at a later date. The TSO program offers a third alternative: selling vested stock options to financial institutions.

**How do these new stock options compare to regular stock options?**
Traditional stock options are not transferable (except in limited circumstances at death) -- they are only exercisable. TSOs can either be exercised like traditional options, or they can be transferred (sold). TSOs will be governed by the terms of Google's 2004 Stock Plan and the relevant option agreements, which will be amended as described below.

**Why did Google create this program?**
We want to permit Google employees to capture the "time value" of their options. Because the current option program does not allow the sale of employee stock options, employees are able to realize value from the options only by exercising them and then selling the stock at a price higher than the exercise price. With this program, employees will be able to realize not only the intrinsic value (the difference between grant price and market price for Google stock), but also the time value of their options. Financial institutions such as banks may be willing to pay a premium above the intrinsic value for many options because of the time value.

**What is time value?**
Time value is the value of the right to continue holding an option for potentially greater gains at a later date.

**Who can participate in this program?**
Only active Google employees who are not part of the Executive Management Group (EMG) can participate in this program.

**Which options are eligible?** (Revised 2/21/07)
Only vested nonqualified stock options granted since Google went public (post-IPO) are eligible for this program.

**Does the TSO program apply to Incentive Stock Options (ISOs)?** (New 2/21/07)
No, the TSO program applies only to non-qualified stock options (NSOs). We have granted only NSOs since our IPO.

**How many post-IPO options are still outstanding?**
As can be derived from Google's financial statements, as of September 30, 2006 there were approximately 6.6 million vested and unvested options outstanding that were granted since Google's IPO.

**Why did you exclude EMG?**
We believe that this position reflects the interests of our shareholders at this point.  We feel that our current compensatory programs provide adequate incentives for our Executive Management Group.

CONFIDENTIAL ATTORNEY'S EYES ONLY                                        GOOG-HIGH-TECH-00233036

**Why aren't options granted before Google went public (pre-IPO) eligible?**
We believe it is fair to exclude options granted before Google went public from eligibility since the purpose of the TSO program is not to create value for options that are already significantly in the money.  Realistically, even if we allowed pre-IPO options in the TSO program, bidders would be willing to pay little, if any, premium beyond the existing intrinsic value for the rights to those options.  For that matter, there are many post-IPO options for which investors may pay little, if any, premium.

**Are refresher option awards eligible to be sold in the TSO program?** (New 2/21/07)
Yes, so long as they were issued after Googles IPO to non-EMG employees.

**Can employees participate in the program after their employment with Google is terminated?**
Once employment is terminated, an employee will no longer be eligible to participate in the TSO program, even if their options are still exercisable under the traditional program.

**Are employees required to participate in the program?**
Participation in the TSO program is completely voluntary and employees may decide to participate or not to participate at any time.

**Can employees sell some of their options and exercise others?**
Employees are free to exercise their options or sell the options (or not) in any mix they choose.

**Will employees get a better price if they sell options through Google's TSO program than if they exercised and immediately sold their options?**
Generally yes.  The TSO auction system allows a sale to occur under the TSO program only if the winning bidder offers a price equal to or greater than the intrinsic "in-the-money" value.  Although there is no guarantee that the bidding financial institutions will pay a premium for an in-the-money option, historical market data suggests that they typically do.  However, this will not be true in all cases in the TSO program.  For example, for options that are very much in or out of the money (i.e., where the market price of Google common stock is much greater or much less than the grant price of the option), the time value could be so low as to be outweighed by the transaction costs of the TSO program.   In addition, options with a remaining term of less than six months cannot be sold in the TSO program because, upon transfer, the remaining life is rounded down to zero.

**Can you give me an example of what employee stock options would be worth under this program?** (Revised 2/21/07)
To get an idea of what bidders might offer Google employees for options with two-year lives at given strike prices, you can refer to what the market is paying for publicly traded 2-year "call options" today.

For example, as of the close of trading on December 11th, 2006, two-year public market options with a "strike price" (also called "grant price") of $500 were trading at approximately $105 each. Since Google's stock price closed at approximately $484 on that day, these options were "underwater" - meaning they had no intrinsic value. In other words, the entire $105 was attributed to the time value of the options. On the same date, two-year public market options with a strike price of $300 were trading at approximately $225 each. This means that the market was willing to pay not only the $184 for the value realizable by exercising and selling today, but also a $41 premium for the time value.

Another way to get an idea of what bidders might offer in the TSO program is to perform an option-pricing model analysis. For example, the Black-Scholes-Merton option pricing model is a widely-used model which you may find to be a reasonable proxy for public market option prices. However, the Black-Scholes-Merton model takes into account many variables, including the risk-free interest rate

CONFIDENTIAL ATTORNEY'S EYES ONLY                                    GOOG-HIGH-TECH-00233037

and volatility of the stock, which can make the calculation complex. You can find Black-Scholes calculators by searching online.

We caution employees not to place undue reliance on the value of publicly-traded options or any option-pricing model when attempting to determine the value of their options under the TSO program. Although Google's TSO program is intended to mirror the public market, it will not be as efficient because there will be fewer market participants and slightly higher transaction costs. In addition, the market price for options is highly volatile and may fluctuate drastically. We make no representations as to what "fair value" should be. Also, Google employees should be aware that as options become more in or out of the money (i.e., as the market price of Google common stock gets further from the grant price of the option), the time value of the option decreases and therefore the TSO program becomes less valuable. The only way to know for certain how much your options will be worth is to wait until the program has launched and see what the bidders are willing to pay.

### Will this program be available in all countries?
We intend to make this program available to employees in all countries where Google grants options except in places where, due to local legal and/or tax implications, it would not benefit employees or the program would be impractical. While we do believe that we will be able to offer the TSO program in most countries where we grant options, we are still working through local legal and regulatory requirements in each country so that we can implement this program in as many places as possible. We will provide employees in each country with updated specifics between now and April.

### When can employees start using this program?
We plan to launch the TSO program when the Q2 trading window opens in April 2007.  Google employees will be able to log in to create and view their TSO account through an online system that Morgan Stanley has created for Google shortly before the program launches.

### What is the beta test launch of the TSO program about? (New 2/21/07)
We are planning a beta test launch of the TSO program to occur at the end of February 2007. The test launch will include up to 20 employees, who were selected based on their involvement with the TSO program and ability to participate in the TSO beta launch. Each beta participant will be allowed to sell no more than 5 TSOs during the trial period. During the beta launch, Morgan Stanley will be the sole bidder. The purpose of the beta launch is to test the TSO system on a limited basis to help ensure a more successful company-wide launch, currently planned for April.

### Will there be periods when Google employees cannot sell their options in the TSO program? (Revised 2/21/07)
Yes. The TSO program will be available during regular trading hours for the Nasdaq Stock Market only when Googles trading window is open. In addition, Google may suspend the TSO program from time to time for a variety of reasons, including for maintenance and other technical reasons, and for periods when Google believes that it is in possession of material, non-public information until the information is no longer material or the second business day after the information has been made public. Google employees will likely not be given advance notice of these shutdowns. When the TSO program is not active, Google employees may not sell their options under the TSO program, even under a 10b5-1 plan. See also "Does the TSO program affect an employee's ability to exercise options and sell the underlying shares in the traditional way?" below.

### What is material, non-public information?
Information is material if a reasonable investor would consider it important in making a decision to buy, sell or hold Google securities, such a large acquisition or commercial deal.  Information is

CONFIDENTIAL ATTORNEY'S EYES ONLY                                    GOOG-HIGH-TECH-00233038

nonpublic until it has been widely disseminated to the public market and the public has had a chance to absorb and evaluate it.  Google employees may refer to Google's Policy Against Insider Trading for more information on what constitutes material, non-public information.

**Why will the TSO program be shut down when Google is in possession of material, non-public information?**
The registration statement Google is filing with the Securities and Exchange Commission (SEC) to permit the TSO program to operate may not be used when Google is in possession of material, non-public information.  Therefore, the TSO program must be suspended when Google is in possession of material, non-public information.  In practice, this means that Google employees will not be able to sell options using the TSO program in these periods.

**If the TSO program is shut down during a period in which Googles trading window would otherwise be open, does this mean that Google is in possession of material, non-public information?** (New 2/21/07)
Not necessarily. Google may shut down the TSO program for a variety of reasons, including for maintenance and other technical reasons. You should not infer anything if Google shuts down the TSO program.

**Does the TSO program affect an employee's ability to exercise options and sell the underlying shares in the traditional way?** (Revised 2/21/07)
Not generally. However, consistent with Googles current Policy Against Insider Trading, Google may from time to time black out one or more Google employees from selling shares (including shares issued upon exercise of options) if Google determines that these individuals are in possession of material, non-public information. Although there is no policy that all Google employees will be blacked out from selling shares during periods when the TSO program has been shut down, Google may impose blackouts on some or all Google employees in these cases. If Google were to do this, it would be to help ensure that sales of Google stock by Google employees do not violate insider-trading laws and Googles Policy Against Insider Trading. This restriction does not apply to sales of shares under a Rule 10b5-1 trading plan (but it does apply to sales of TSOs under a Rule 10b5-1 trading plan).

**A previous version of these questions and answers stated that Google would shut down the ability for Google employees to trade Google stock whenever the TSO program was shut down. What changed?** (New 2/21/07)
As we previously stated, the TSO program is a new program subject to change. We have reevaluated and modified this aspect of the program.

**Who will buy the options?**
Pre-qualified institutional investors will be bidding on all options that Google employees put up for auction.

**Can employees sell options outside of Google's TSO auction process?**
No, employees may not sell options outside of the TSO program.

**Can a Google employee make a gift or a donation of his or her TSOs?** (New 2/21/07)
No. Just as with traditional options, no gifts or donations are allowed.

**What are the tax consequences when employees sell TSOs?**
In the US, when employees sell TSOs, the amount they receive will be treated as compensation income to them in the year that they sell the TSOs.  This income is of the same character as the

CONFIDENTIAL ATTORNEY'S EYES ONLY                                              GOOG-HIGH-TECH-00233039

income they would have received if they had exercised their options and immediately sold the underlying shares rather than sold their options through this new program.  Google will withhold the same type of taxes on the compensation income they earn from the sale of TSOs as it would have if they had exercised their options and immediately sold the underlying shares rather than sold their options.  The discussion above does not constitute tax advice, nor does it address any tax consequences arising under the laws of any state, local or foreign jurisdiction.  Also, tax laws may change, possibly retroactively, so you should consult your tax advisor.

**Is the TSO program affected by section 409A of the Internal Revenue Code?** (Revised 2/21/07)
We don't think so, but the regulations are not finalized yet. (For those of you who are not familiar with section 409A, it generally subjects certain discounted options to tax at the time of vesting, regardless of whether they are exercised or sold. Normal income taxes, an additional 20% penalty tax and other taxes can apply.) With respect to options that Google grants after the TSO program begins, there will be no section 409A tax so long as we grant the options at fair market value, which is what we do. With respect to options already outstanding at the time the TSO program begins, the existing IRS guidance under section 409A specifically permits the changes we will make to the options in connection with the TSO program without the options being deemed regrants for tax purposes, and thus the options would not be deemed discounted options subject to section 409A. More specifically, the proposed section 409A regulations permit changes to allow for transferability of certain options. Although the IRS is not yet issuing rulings under section 409A, we have been careful in structuring the TSO program to ensure that its adoption and operation will not create any section 409A issues for Google employees. The final version of the TSO program will be designed in a way so as to ensure compliance with the final regulations under section 409A (which is expected to be released in the first half of 2007).

**How does the TSO program relate to the 409A election made Google employees with respect to their options? Can a Google employee sell his or her option through the TSO program with respect to which he or she made a 409A election?** (New 2/21/07)
Google employees were allowed to make 409A elections with respect to certain pre-IPO options. The TSO program is available for post-IPO options only. There is no overlap between the two; a Google employee cannot sell any options through the TSO program with respect to which he or she made a 409A election.

**What are the tax consequences for employees who work for a Google entity outside the U.S.?**
Since TSOs are a new concept in every country, the tax implications associated with this new program are not entirely certain.  We are working with outside tax counsel to identify the tax implications in every country that Google currently issues options; and in the countries where we do offer TSOs, we generally believe that the tax consequences will be similar to the tax consequences of exercising ordinary options.  However, this is subject to additional regulatory review.   For Google employees subject to US taxes outside of the US, Google will provide additional tax information at a later time.

**Which financial institutions are participating in this program?**
Morgan Stanley will serve as Google's TSO auction manager and will settle all transactions between Google employees and bidders. Smith Barney will serve as the employee stock option administrator. Google is working with multiple financial institutions to participate as bidders in the auctions.

**Do I have to open a Morgan Stanley or other brokerage account?**
No, you will create an online TSO account, but will not be required to open a Morgan Stanley or other brokerage account.

CONFIDENTIAL ATTORNEY'S EYES ONLY                                           GOOG-HIGH-TECH-00233040

**What if others want to participate? Are there any financial institutions that are not eligible to be a part of the auction?**
Google anticipates allowing additional financial institutions to participate in the TSO program.  All participants must be able to provide continuous, automated bids for all Google options in the TSO program, and must update their systems to interface with the TSO system. Admission will be at Google's sole discretion.

**How are bid prices for options determined?**
All participating bidders will be required to bid on all of the options offered for sale as a condition of participation in Google's TSO program so that all Google employees get the benefit of competitive pricing on their options, even if they are selling only one option. Institutional investors use their own proprietary option pricing models to determine the fair value of each option based on the option's strike price, term (which will be up to two years under Google's TSO program; all options with a duration of greater than two years will be shortened to two years), market interest rates, stock price volatility, and market conditions at the moment the bid is made. We expect that bid prices will change throughout the trading day just like bid prices for shares of stock on the NASDAQ change throughout the day to reflect changing valuation assumptions.

**Can an employee specify in advance the price at which they want to sell their options?**
Yes. If an employee wants to sell his/her options at a certain price, the employee can submit a limit order. The option will be sold at a minimum of that price as long as one of the bidders is willing to pay at least that much for the option(s). Limits can be set to expire at the end of the trading day or at the end of a trading window.  A market or limit order can be made at any time during an open trading window, although the trade cannot be effected unless the auction is open.  There is no guarantee that limit orders will be filled, and, as discussed above, the TSO program may shut down from time to time without prior notice.

**Can employees sell vested, "underwater" stock options in this program?**
Yes, financial institutions do place value on "underwater" stock options (i.e., those with strike prices above the current market price of the stock) and we expect them to bid on underwater options. However, if an option is significantly underwater and/or the option has only a limited remaining life (e.g., if the option is sold nine years and five months after grant), the bid price may be very low or even zero.

**How does the TSO program affect Rule 10b5-1 Trading Plans?**
A 10b5-1 plan may be used to sell options through the TSO program.  Google is modifying its form 10b5-1 plan to accommodate TSO sales, and will make this revised form available before the trading window opens on February 5, 2007.  Here are important points regarding 10b5-1 plans and the TSO program:

- Employees currently under a 10b5-1 plans who want to sell options under the TSO program must amend (or terminate) their 10b5-1 plan.  The employee may amend the 10b5-1 plan only during an open trading window (the next one is from February 5, 2007 through February 28, 2007) and at a time when the employee is not in possession of material, non-public information about Google.  In addition, the changes made in an employee's amendment to a 10b5-1 plan may not take effect for at least 60 days from the date of amendment.
- Unlike 10b5-1 plans for traditional exercises and sales, TSO sales under 10b5-1 plans may take place only when the TSO program is active.  As discussed above, the TSO program will be active only during Google's open trading windows and while Google is not in possession of material, non-public information.  These limitations apply for all TSO trades, regardless of

CONFIDENTIAL ATTORNEY'S EYES ONLY                                    GOOG-HIGH-TECH-00233041

whether the trade is initiated by the Google employee directly or through a 10b5-1 plan. It will be impossible to know in advance when the TSO program will be active because, even though the trading windows are predictable, it is impossible to know when Google will be in possession of material, non-public information. This means that employees cannot with certainty plan for a TSO sale to occur under a 10b5-1 plan. (An employee can always exercise their options and sell the underlying shares the traditional way under a 10b5-1 plan – there are no timing restrictions on that). Therefore, when entering into a 10b5-1 plan covering TSO sales, employees will need to specify what will happen if the TSO program is not active when the employee wishes to make a TSO sale; they can either (1) defer the sale until the TSO program becomes active again or (2) exercise the option and sell the shares the traditional way.

- Currently, the only broker that allows 10b5-1 plans for TSOs is Smith Barney.

**What is the benefit of a Rule 10b5-1 Trading Plan if Google will shut down the TSO program (including trading under a 10b5-1 plan) when Google in possession of material, non-public information?**
There are a couple reasons why a Google Employee may still wish to enter into a 10b5-1 Plan.

First, a 10b5-1 plan will still permit you to exercise and sell your options the traditional way regardless of whether we are in our ordinary quarterly blackout periods or in a special blackout period during which the TSO Program has been suspended. So

- Those employees who elect not to sell through the TSO Program will continue to enjoy the same benefits of a 10b5-1 plan as they do today.
- Those employees who wish to both (1) exercise and sell their options the traditional way during blackout periods and (2) sell options under the TSO program when the TSO program is open must do so under 10b5-1 plan. (Remember that Google does not allow a Google employee under a 10b5-1 plan to sell Google securities outside of his or her plan, so 10b5-1 trading plans must contemplate all sales of Google securities during the period covered by the plan, whether through the TSO Program or exercises and sales the traditional way).
- Those employees who wish to sell their options through the TSO program but also wish to assure liquidity in a given period may instruct their brokers under a 10b5-1 Plan to sell their options first through the TSO program if the TSO Program is then available, or, if the TSO Program is then shut down, to exercise and sell their options in the traditional way.

Second, as discussed above, Google will shut down the TSO program when Google is in possession of material, non-public information. However. determining whether an item is material is a difficult, fact intensive, subjective analysis that can be second-guessed in hindsight. So, Google may be in possession of information that it deems not to be material and will continue to let the TSO program operate, even though another person might determine the information is material, especially if applying hindsight. (That's why our insider trading policy says that Google employees cannot rely on Google's determination of whether an item is material when deciding to buy or sell any Google security; the ultimate decision of whether to do so rests with each Google employee.) For this reason, a 10b5-1 plan (even if it just contemplates sales under the TSO Program when the Program is active) could be helpful to a Google employee in rebutting a claim that he or she fraudulently sold his options under the TSO Program while in possession of material non-public information.

Please keep in mind that the decision as to whether to adopt a 10b5-1 plan (or not) is a complicated one, and depends on the each individual's particular circumstances, and also on any requirements imposed by each individual's plan broker. Google cannot give any Google employee advice on

CONFIDENTIAL ATTORNEY'S EYES ONLY                                        GOOG-HIGH-TECH-00233042

whether to enter into, amend or terminate a 10b5-1 plan.  We encourage you to consult your personal advisors and broker regarding the TSO program and 10b5-1 plans.

## ACCOUNTING, INVESTOR & OTHER FINANCE QUESTIONS

**Do the new stock options have any changes in their terms?** (Revised 2/21/07)
When the options are sold to a bidder under the TSO program, three changes occur:

1. The remaining life is shortened to two years unless the remaining life is less than two years. If the remaining life is less than two years, then the transferable life is further reduced from two years in six-month increments (e.g., 18 months, 12 months, six months) until the remaining transferable life is zero. For example, an option with a remaining life of 23 months will, upon sale in the TSO program, have an 18-month life. If an option has a remaining life of six months or less, it may not be sold in the TSO program.
2. The forfeiture provisions related to the employee's employment with Google are removed.
3. We anticipate the anti-dilution provisions will be changed to conform to market-standard provisions.

**Why did you reduce the length of the option life upon transfer?**
We shortened the term to adjust the time value of the transferred options so that they are, in our estimation, more closely aligned with our compensatory objectives when the option was originally granted.  Because the value of the option is in part determined by its term, a shorter option term would decrease the time value that can be realized through the TSO program.

It was not Google's intent to eliminate the benefits of employees holding options altogether.  Our intent was to give employee options more tangible value.  The TSO program is available to employees who are willing to forgo some of the potential future value in order to get some value today.

**How does the TSO program affect Google's accounting?** (Revised 2/21/07)

The TSO program does not change the way we will account for options, but it does increase the cost per option that we will recognize for accounting purposes because the fair value per option on the date of grant will be greater because the expected life of the option will be longer. The longer expected life results from the fact that upon transfer, the options are modified to have a two-year remaining life (generally) from the date of sale, whereas under the non-transferable option program options expire once they are exercised. Because we expect that options will be outstanding longer, they will have a greater fair value on the date of grant which will result in more stock-based compensation for accounting purposes.

We intend to modify all existing stock options granted to employees other than EMG after our IPO to permit their sale under the TSO program. As a result of this modification, we will take a stock-based compensation charge equal to the difference between the value of the modified stock options and their value immediately prior to modification. Accordingly, and as stated in our earnings release of January 31, 2007, we expect to incur a modification charge in accordance with GAAP of approximately $90 million in the second quarter of 2007 related to vested options as of the end of that quarter and a charge of approximately $160 million over their remaining vesting periods of up to approximately four years related to unvested options.

The market value of our stock used to compute the above forecasted modification charges was $494

CONFIDENTIAL ATTORNEY'S EYES ONLY                                                      GOOG-HIGH-TECH-00233043

per share (the closing price of our stock on January 30, 2007). The actual charge will be different to the extent the number of options outstanding at the time we launch the TSO program is different than our expectations, or to the extent the variables used to revalue these options, including the market value and volatility of our stock, are different.

**How has Google historically accounted for employee stock options?** (New 2/21/07)
Prior to the initial public offering, we typically granted stock options at exercise prices equal to or less than the values of the underlying stock as determined by our board of directors on the dates of option grant. For purposes of financial accounting, we applied hindsight within each year or quarter prior to our initial public offering to arrive at reassessed values for the shares underlying these options and recorded deferred stock-based compensation equal to the difference between these reassessed values and the exercise prices.

After the initial public offering, we have primarily granted options at exercise prices equal to the fair market value of the underlying stock on the dates of option grant. For options granted during the period between our initial public offering and December 31, 2005, we have recorded deferred stock-based compensation equal to any difference between the exercise prices and the fair market values of the underlying stock on the dates of grant.

Beginning January 1, 2006, (when the new stock-based compensation accounting rules became effective) we have recognized stock-based compensation for all new and unvested stock-based awards that are ultimately expected to vest as the requisite service is rendered (over the vesting period). Stock-based compensation is measured based on the fair values of all stock-based awards on the dates of grant using the Black-Scholes-Merton valuation method.

**Is this program related to new accounting rules for stock options?**
No, this program is not driven by accounting implications. Google is doing this to make equity compensation more efficient and understandable to employees. We expect our compensation costs per option to increase under this program to reflect the increase in expected life of each eligible option.

**Will this affect earnings?**
As discussed above, we will recognize more stock-based compensation per option than we would have otherwise for the foreseeable future after the program goes into effect.

**What is the incremental expected gain to employees for currently outstanding options under this new program?** (New 2/21/07)
We have not shared an estimate of what the incremental expected gain is to employees under the TSO program. However, we have announced the additional stock-based compensation we expect to incur as noted above.

**What is the impact on shareholders?** (Revised 2/21/07)
The TSO program increases the efficiency of our equity usage. Under the TSO program, we expect that every option that is granted will be more highly valued by employees, while at the same time the TSO program will retain the advantage of leverage that stock options offer over other forms of equity compensation. We also believe this program enhances our ability to compete effectively for the best talent in the marketplace and therefore sustain our competitive advantage.

CONFIDENTIAL ATTORNEY'S EYES ONLY      GOOG-HIGH-TECH-00233044

**Have you discussed this program with the SEC?**
We have discussed the TSO program with the SEC, and Google will ensure the program complies with applicable securities laws.

**What information will Google disclose publicly regarding the results of the TSO program?**
(New 2/21/07)
Every quarter, as part of its periodic reports it files publicly with the SEC, Google will summarize the activity of the TSO program from the prior quarter.

**What will the financial institutions do with the options they purchase in the TSO program?**
The financial institutions will not be allowed to further transfer the options they purchase in the TSO program to the public.  We believe that the financial institutions will enter into hedging transactions with respect to the options they purchase in the TSO program.  Specifically, the winning bidder in the TSO auction will likely hedge their position in the Google options by short selling Google shares, which is a typical way to hedge a position in an option.  By short selling, the winning bidder offsets the exposure it has in the purchased option.  The winning bidder will adjust this short position over the life of the option based on fluctuations in Google's stock price.  Through this hedging process, the winning bidder expects to make a profit.

**Will Google file a registration statement with the SEC in connection with the TSO program?**
Yes.  This registration statement will cover, among other things, the expected short-selling activities of the participating financial institutions after they have purchased TSOs.  (See "What will the financial institutions do with the options they purchase in the TSO program?" above.)  Google will not be a party to this short-selling activity.

**What advantage do these options have over restricted stock grants?**
Transferable stock options share some of the benefits of restricted stock by having immediate value at grant, but in addition have more upside potential since we typically grant options in higher amounts than we grant restricted stock.  In addition, based on current tax treatment in the U.S. and most other countries where Google grants options, options generally offer better tax planning flexibility to the option holder.  While taxes on GSUs are generally due at vesting, taxes on option proceeds are not generally due until the holder chooses to exercise/sell the options and claim the gain as income or capital gain, depending on the holding period after exercise.

<u>OTHER QUESTIONS</u>

**Has anyone done this before?**
No, the TSO program is the first of its kind.

**Isn't this what Microsoft and Comcast did? How is this program different?**
No, there are many differences between what Google is doing and what Microsoft and Comcast did.  For example, Microsoft and Comcast were one-time transactions to a single bidder.  In contrast, the TSO program is ongoing, and options will be sold competitively through an auction system involving multiple bidders. This program is the first of its kind.

**How is this different than what Cisco tried to do?**
This program is very different. Cisco proposed creating a security in an attempt to measure the market value of options issued to employees for accounting purposes.  The employee options themselves were unchanged and remained non-transferable.  The TSO program makes options themselves transferable for the benefit of employees.

CONFIDENTIAL ATTORNEY'S EYES ONLY                                        GOOG-HIGH-TECH-00233045

**Why did you choose Morgan Stanley?**
We chose Morgan Stanley based on their industry credentials, technology capabilities, and experience in building and operating Google's auction IPO system.

**Whom do I contact if I have more questions?**
Please send inquiries to TSOquestions@google.com.

CONFIDENTIAL ATTORNEY'S EYES ONLY                                      GOOG-HIGH-TECH-00233046

[REDACTED]

**What is the purpose of the program?**
Our primary objective is to reward employee performance with an additional stake in the company's future performance. We want to motivate high performers' contributions to Google's long-term growth rather than provide immediate value for contributions already made (our cash incentive plans do that). We also want to create an incentive for all employees to reach high performance levels on an ongoing basis.

**Who gets a grant?**

[REDACTED]

**When you say performance-based incentives, what does that mean? If I'm meeting objectives do I get an option grant? What if I'm exceeding expectations?**
It is by no means a given that every employee will receive refresher grants even if they are meeting expectations; however, everyone will be considered every year based, again, on performance. By the same token, not getting a grant does not necessarily mean that you are not meeting expectations. All grants are made at Google's sole discretion.

**What about those who aren't meeting expectations?**
Not meeting performance expectations is a serious matter, and Googlers in this situation should fully expect [REDACTED]

**Are employees in all countries eligible to receive grants?**
All employees in countries where Google can grant equity are currently eligible.

**Why do we use stock options in our [REDACTED] and not GSUs?**
The purpose of a [REDACTED] is to reward strong performance with an additional long-term stake in the company's future success. Considering that we can grant a greater number of stock options than GSUs for the same cost to the company, stock options provide a means for offering more shares in Google's future appreciation than do GSUs. In countries where we also offer the TSO (Transferable Stock Option) program, stock options should also have additional TSO value on top of any stock price appreciation.

**How big are the stock option grants?**

[REDACTED]

CONFIDENTIAL ATTORNEY'S EYES ONLY                                   GOOG-HIGH-TECH-00233047

It is important to note that our practice has always been to make grants that match the market or better at the time the grant is made, not to equalize actual stock option gains realized between employees hired at different times.

**Are we using a formula to determine grant size?**
Yes, we use an algorithm to identify potential award candidates;

**When will grants be made?**
We expect to make this year's grants

**What are the terms (e.g., grant price, vesting) of the awards?**

**Will Google make** every year?

**Whom can I contact for more information?**
You can contact the HR Business Partner for your department or Justin Meek, Compensation Program Manager, at jcm@google.com.

CONFIDENTIAL ATTORNEY'S EYES ONLY          GOOG-HIGH-TECH-00233048

# Global Employee Tax Communication Website

**What is it?**
The global employee communication site is a web-based tool created for Google employees. This site provides education on your country's specific tax effect on your Google stock options and/or GSUs. The site is designed to answer many questions pertaining to the tax impact on equity awards. It provides you with a broad understanding around the general tax issues you need to consider in your respective country.

**Who may access the site?**
Any Google employee may access the site either through the Google intranet or anywhere you may have internet access to the worldwide web.

**Why has Google implemented this site?**
The tax issues around equity compensation can be very complex. Stock Administration wanted to be able to communicate those tax implications to global employees in a user friendly and an easy-to-access way. Given the complexity of the tax rules in each country, we have partnered with PricewaterhouseCoopers LLP (PwC) to develop and host this website. PwC will update the site periodically and help keep you abreast with current changes surrounding these tax implications.

**What if I have questions?**
The 'Question and Answer' format we have designed does not answer personal tax questions or give tax advice. It is recommended that you read the tax issues applicable in your country of employment and subsequently consult with your personal tax and / or financial advisor for any specific personal tax advice. The website will however provide a mechanism for PwC to answer questions related to the information on the website.

Note that this site will not provide you with your award and/or Benefit Access account information. For information about your specific awards, please go to the Smith Barney Benefit Access Web site: www.benefitaccess.com.

**How do I access the site?**
You will need the user name and password in order to access the website. The user name and password may be found posted on Moma in the Stock Administration website under the Global Employee Tax Communication FAQs. For access to your internal Google Stock Administration site, click here http://www.corp.google.com/stockadmin/.

Once you have obtained the log in credentials, follow the steps below to access the website:

(1) Go to: www.pwcequityplanner.com

(2) In the middle of the page, you will see: 'Employee Communications' Current Subscribers > Log in

(3) Click on the word > Log in

(4) You will be prompted for the 'user name' and password'

(5) The 'user name' will always be 'Google EC'

(6) The password is **blogger**.

(7) On the upper left hand side of the screen you will see a white pull down menu of countries, select your country of employment.

CONFIDENTIAL ATTORNEY'S EYES ONLY                                        GOOG-HIGH-TECH-00233049

(8) On the upper left hand side you will also receive a choice of either 'Stock Option Plan' or 'GSU'

(9) Pick the type of award you have received and in the middle of the page you will see a host of questions that you may click on to find the applicable answer.

*Note that throughout the text of the site, if a word is* <u>*underlined*</u>*, you may click on it and the site will provide you with a definition for that word.*

**Who do I contact with Questions?**
When you first log on to the site, on the left hand side you will see a menu of choices. One of those choices will be 'Contact Us'. If you click on this choice, it provides you with a list of individual contacts.

CONFIDENTIAL ATTORNEY'S EYES ONLY                                              GOOG-HIGH-TECH-00233050

Google

**NORTH AMERICA RELOCATION SUMMARY**

| | Core Relocation Plan | Homeowner Relocation Plan | Executive Relocation Plan |
|---|---|---|---|
| Eligibility | | | |
| Lump Sum Amount | | | |
| House Hunting Trip (Noogler and spouse) | | | |
| Lease or Mortgage Cancellation (see policy for details and eligibility) | | | |
| Car Sale Allowance/ Shipment of Car(s) (Must be relocating more then 500 miles) | | | |
| Shipment of Goods | | | |
| In Transit Storage | | | |
| Final Transportation | | | |
| Temporary Living Expenses | | | |
| Home Sale | | | |
| Home Purchase | | | |

6/21/2007

Confidential

CONFIDENTIAL ATTORNEY'S EYES ONLY

GOOG-HIGH-TECH-00233051

| Item | Definition |
|---|---|
| Plan Design | How plans are defined and to whom they will apply by default. |
| Area Orientation | This is an orientation of the area where the candidate hopes to live to become familiar with neighborhoods and potential housing choices. |
| Family Support | Whether families will be explicitly supported in the packages. |
| Househunting Trip - Orientation Trip | A trip prior to relocation to start the area orientation and home finding process. The trip is usually for a duration of 4 days with 2 days of assistance from a local agent. |
| Car Sale Assistance | Assistance in providing fair market value for a candidate who must sell their car due to relocation. |
| | Reimbursement of expenses incurred as a result of exiting leases or contracts early due to relocation from the current place of residence. |
| Lease Cancellation | |
| Finder's fee | A fee that might required if a rental property is selected |
| Househunting Assistance / School Search | An agent that will work directly with the candidate to work with them on their housing search. For Dublin, this is in the form of a one day seminar for those on the Up and Away package. |
| Relocation Allowance | A lump sum bonus to assist with miscellaneous minor expenses associated with the relocation. |
| Movement, Storage and Transfer of Goods | Shipment of goods from current residence to new residence. |
| Final Travel | Reimbursement of costs incurred in final travel to new destination. |
| In Transit storage | Storage and insurance of household goods if goods have been moved and immediate possession of the new apartment cannot be gaines. |
| Temporary Housing | Housing in a furnished flat or B&B while the candidate secures more permanent housing. |
| Car Rental | Car rental for one automobile is offered in the event the personal vehicle is not available immediately |
| Tax Treatment | As some items of the relocation plan are deemed taxable in some countries, Google will gross up a candidate's income so that they are not liable for tax payments on these benefits in kind. |

GOOG-HIGH-TECH-00233052

# Asking the Right Questions…

When asking a candidate for compensation information it's imperative that a recruiter gather as much information as possible on both the candidate's current compensation and any competing offers.

**Why?**



**When?**
- When to ask a candidate for compensation information will vary by team and department.
- Some teams have an extremely large volume of candidates and prefer to get as much info as possible at the beginning of the process so that once a candidate is approved by Hiring Committee the recruiter can quickly create the offer.
- Some teams feel that asking for too much comp info too soon can be intrusive and unnecessary since such a small percentage of candidates move beyond the HC Review stage.
- **Please work with your lead to determine the best time to ask for detailed compensation information.**

CONFIDENTIAL ATTORNEY'S EYES ONLY                                                    GOOG-HIGH-TECH-00233053

**How?**
- How to ask for compensation information will vary by team and department
- Methods include emailed questionnaires and questions asked over the phone

**What?**



**CURRENT COMPENSATION**

1. **Salary**

2. **Bonuses**

3. **Stock Options**

CONFIDENTIAL ATTORNEY'S EYES ONLY                              GOOG-HIGH-TECH-00233054

**COMPETING COMPENSATION**

**1.  Salary**

**2.  Bonuses**

**3.  Stock Options**

CONFIDENTIAL ATTORNEY'S EYES ONLY                                    GOOG-HIGH-TECH-00233055

**Calculating Comp Exercise**

31

Google, Inc.

Compensation Basics Handouts

CONFIDENTIAL ATTORNEY'S EYES ONLY

GOOG-HIGH-TECH-00233056



Comp Process Flow

CONFIDENTIAL ATTORNEY'S EYES ONLY