# EXHIBIT 2030, PART 1 TO CISNEROS DECLARATION REDACTED VERSION

1  BINGHAM McCUTCHEN LLP
   DONN P. PICKETT (SBN 72257)
2  FRANK M. HINMAN (SBN 157402)
   SUJAL J. SHAH (SBN 215230)
3  FRANK BUSCH (SBN 258288)
   Three Embarcadero Center
4  San Francisco, CA  94111-4067
   Telephone:  415.393.2000
5  Facsimile:  415.393.2286
   donn.pickett@bingham.com
6  frank.hinman@bingham.com
   sujal.shah@bingham.com
7  frank.busch@bingham.com

8  Attorneys for Defendant
   Intel Corporation

9
                    UNITED STATES DISTRICT COURT
10
                  NORTHERN DISTRICT OF CALIFORNIA
11
                        SAN JOSE DIVISION
12

13  IN RE: HIGH-TECH EMPLOYEE              Master Docket No. 11-CV-2509-LHK
    ANTITRUST LITIGATION
14

15  THIS DOCUMENT RELATES TO:             **DECLARATION OF DANNY McKELL IN**
                                          **SUPPORT OF OPPOSITION TO CLASS**
16  ALL ACTIONS                           **CERTIFICATION**

17

18                                        Date Consolidated Amended Compl. Filed:
                                          September 13, 2011
19

20

21

22

23

24

25

26

27

28

ATTORNEYS' EYES ONLY                                      Master Docket No. ll-CV-2509-LHK

                       DECLARATION OF DANNY McKELL        2030.2

A/75213414.2

1    I, Danny McKell, declare:

2        1.    I am a Compensation and Benefits Specialist at Intel Corporation. I have personal

3    knowledge of the matters stated in this declaration.  I make this declaration in support of

4    Defendants' Opposition to Motion for Class Certification.  If called and sworn as a witness, I

5    could and would competently testify to the matters stated below.

6        2.    I have been employed by Intel for 13 years and have worked in the Compensation

7    and Benefits group for the last 9 years.  I understand that the Plaintiffs in this case have asserted

8    that Intel's compensation for most of its employees (apart from retail employees, corporate

9    officers, members of the board of directors, and senior executives) was suppressed below

10   competitive levels during the alleged class period of 2005-09.  In my role as a Compensation and

11   Benefits Specialist, I am generally familiar with the process by which Intel has compensated its

12   employees before, during, and after the alleged class period.  The statements below are

13   descriptive of Intel's compensation practices during the alleged class period, and generally

14   extend before and after that period except where noted.

15       3.    Attached as Exhibit A is a true and correct copy of Chapter 16 of the Intel "Total

16   Compensation Handbook," dated January 1, 2010 (76586DOC000445), which outlines the

17   components of Intel compensation:  base pay, employee (incentive) bonus, profit sharing bonus,

18   and various forms of equity grants (stock options and restricted stock units) (collectively, "total

19   compensation").  The same components comprised Intel compensation during the alleged class

20   period.

21       4.    Intel assigned each employee to a "grade" level and used a broad "total pay"

22   range for each grade.  The mix of compensation components differed across grade levels, with

23   the bonus component typically increasing with grade level.  I refer to base pay plus cash bonuses

24   as "total pay" because the two were often considered together in company-wide compensation

25   analysis, though the relative proportions of those components varied among individuals.

26       5.    Attached as Exhibit B is a true and correct copy of Intel's "Salary Ranges, Merit

27   Matrices, Promo Guidelines, and Budget" presentation, dated June 26, 2007

28   (76582DOC000783), describing the annual process by which Intel managers determined

ATTORNEYS' EYES ONLY                                  1                         Master Docket No. ll-CV-2509-LHK

DECLARATION OF DANNY McKell        2030.3

1  employee compensation.  The process for determining the annual budget took several steps

2  throughout the year. ████████████████████████████

██████████████████████████████████████

██████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████

██████████████████████████████

16       6.      Attached as Exhibit C is a true and correct copy of Intel's "Compensation 201

17  Instructor Guide," dated December 15, 2006 (76583DOC007683-7725), describing, among other

18  things, how Intel used market salary survey data in its compensation benchmarking process.  As

19  explained in the Instructor Guide, Intel learned about salaries paid by competitors primarily

20  through third party market salary surveys such as Radford and Towers Perrin.  The Intel

21  Compensation and Benefits group, with input from the business groups, selected peer companies

22  for comparison based on size, geographic location, and industry. ████████████

██████████████████████████████████████

████████████████

25       7.      Attached as Exhibit D is a true and correct copy of Intel's "Pre-Focal Analysis

26  2007" presentation, dated January 5, 2007 (76583DOC002007).  At page 16, the document lists

27  the 29 companies against which Intel benchmarked for the 2007 focal year.  Of the defendants in

28  this case, only █████████ were used in Intel's benchmarking.  The other 27 companies

1 ████████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

█████████████████████████████████ Salary information obtained by employees who were

5 "cold-called" was not a source of information and was not considered when analyzing market

6 compensation. ██████ was added to the list of peer companies for the first time in the 2006

7 focal year. Attached as Exhibit E is a true and correct copy of Intel's "2006 FSM Pre-Focal

8 Analysis Fab 17," dated December 9, 2005 (76583DOC007082), showing on page 24 that

9 ██████ was added to the 2006 list of benchmark companies.

10     8.     Once total pay ranges were set, Intel's managers throughout the company

11 conducted employee evaluations, and rated employees into five performance categories:

12 approximately ████ of employees were rated outstanding, ██% exceeded expectations, ████

13 succeeded, ████ were below expectations, and ████ required improvement. Because Intel's

14 compensation philosophy was to pay for performance, these ratings were used, subject to a

15 business unit manager's discretion, to determine base pay raises, bonus target increases and

16 grade level changes or promotions. Some exempt employees were also eligible for a geographic

17 total pay differential, an additional payment for employees in certain grades at Intel locations

18 where the market pay was substantially above the national average.

19     9.     Page 19 of Exhibit D shows the wide ranges of total pay available within each

20 grade. For example, total pay for Grade 3 employees varied by ██████ or ████ The ranges for

21 the other families are similar. The maximum ████████████████ —exceeded the

22 minimum ████████████████. For technical jobs, Grade 3 was assigned to employees

23 with a bachelor's degree and no experience. Grade 8 was assigned to employees with a

24 bachelor's degree and 6-8 years of experience. Thus, the ranges were broad enough to allow a

25 new employee to be paid more than one with significant experience. Total pay ranges and

26 overlaps during other years of the class period were similar.

27     10.     Intel's individual employee total pay determinations were not made company-

28 wide but were made by thousands of business unit managers, who had discretion with respect to

DECLARATION OF DANNY McKELL        2030.5

A/75251143.1

1    the amount and composition of each individual's compensation.  The Compensation and Benefits

2    group provided managers guidelines and a merit increase budget for determining merit increases

3    based on the rating the manager determined was appropriate for each of their employees.

4    Managers could and did adjust compensation up or down within a broad range for each

5    employee.

6         11.    Compensation increases generally occurred in connection with the annual focal

7    review process, and were rarely negotiated throughout the course of the year.  Intel did not have

8    a company-wide policy for responding to current employees who had received offers from other

9    companies.  Instead, any response was subject to the discretion of each individual employee's

10   manager.  I understand that Intel would make a counteroffer in hopes of retaining an employee

11   where the circumstances warranted.

12        12.    Because each business unit was given a budget for total pay, paying more to some

13   employees meant paying less to others.  For example, if a manager decided to give a larger raise

14   or a promotion to one employee, whether as a result of the merit based annual review process or

15   individual negotiation, he or she would likely have had to decrease the raises given to other

16   employees in his or her group or deny another employee a promotion.

17        13.    If an individual employee received greater compensation in response to an offer

18   from another company, it would not have affected compensation throughout the company, or

19   even within the employee's business unit, job family or grade level.  Rather, compensation was

20   determined by analysis of market compensation, company performance, individual performance

21   and other factors as described in Paragraph 5 above.

22        14.    Attached as Exhibit F is a true and correct copy of a custom compensation report

23   generated by Radford for Intel based upon June 2009 data (76582DOC023919).  It shows, on the

24   "Report Specs" tab, that Intel requested Radford's ▮▮▮▮▮▮▮▮▮▮▮▮▮ report, which includes

25   data on ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

26   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮  Although this report

27   included ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, they collectively comprise only 0.6% of the list.

28   Intel requested and used this benchmarking report because ▮▮▮▮▮▮▮▮▮▮▮▮▮

DECLARATION OF DANNY McKELL          2030.6

A/75251143.1

15.     In 2006, Intel instituted a change to its overall compensation philosophy.  Prior to 2006, employee base compensation was targeted to be less than the market average as compared to peer companies, while employee bonuses were targeted to be greater than the market average.  Beginning in 2006, Intel changed the targets such that employee base compensation would be equivalent to the market average as compared to peer companies, and employee bonuses would continue to be greater than the market average.  In February 2006, Intel temporarily halted new hiring while contemplating a hiring freeze.  In April 2006, Intel instituted a full hiring freeze.  Two months later, Intel laid off approximately 1,000 manager level employees worldwide.  In September 2006, Intel announced that it planned to lay off 10,500 employees by mid-2007, primarily in the marketing and IT departments.  In January 2009, Intel suspended promotions and instituted a worldwide salary freeze, in response to the recession and macro-economic environment.

16.     I declare under penalty of perjury that the foregoing is true and correct.  Executed in Rio Rancho, New Mexico, on November 12, 2012.

DANNY McKELL

2030.7

# Exhibit A

2030-8

## Chapter 16
## Cash

| Topic | Page |
|---|---|
| Overview | 16.1 |
| Base pay overview | 16.1 |
| Exempt Pay Ranges | 16.1 |
| Nonexempt Pay Ranges | 16.1 |
| Exempt and Nonexempt Pay Increases | 16.2 |
| Exempt and Nonexempt Pay Practices | 16.2 |
| Nonexempt Classification Compliance Guidelines | 16.8 |
| Exempt Classification Extra Pay Guidelines | 16.13 |
| Exempt and Nonexempt Temporary Shift Changes | 16.15 |
| Nonexempt Compressed Workweek Schedule Premium | 16.16 |
| Employee Bonus | 16.17 |
| Employee Cash Bonus Program | 16.19 |

2030.9

76586DOC000445
Attorneys' Eyes Only

Chapter 16
Cash



Cash 16.1
Jan. 1, 2010

2030.10                    76586DOC000446
Attorneys' Eyes Only



Cash 16.2
Jan. 1, 2010

2030.11

76586DOC000447
Attorneys' Eyes Only

Call-In Pay (U.S.)



Cash 16.3
Jan. 1, 2010

J 030. 12        76586DOC000448
Attorneys' Eyes Only



Cash 16.4
Jan. 1, 2010

2030.13

76586DOC000449
Attorneys' Eyes Only



Cash 16.5
Jan. 1, 2010

2030.14

76586DOC000450
Attorneys' Eyes Only



Cash 16.6
Jan. 1, 2010

2030. 15

76586DOC000451
Attorneys' Eyes Only



Cash 16.7
Jan. 1, 2010

2030.16

76586DOC000452
Attorneys' Eyes Only



Cash 16.8
Jan. 1, 2010

2030. 17

76586DOC000453
Attorneys' Eyes Only



Cash 16.9
Jan. 1, 2010

2030.18

76586DOC000454
Attorneys' Eyes Only



Cash 16.10
Jan. 1, 2010

2030.19

76586DOC000455
Attorneys' Eyes Only



Cash 16.11
Jan. 1, 2010

2030.20

76586DOC000456
Attorneys' Eyes Only



Cash 16.12
Jan. 1, 2010

2030.21

76586DOC000457
Attorneys' Eyes Only



Cash 16.13
Jan. 1, 2010

2030. 22

76586DOC000458
Attorneys' Eyes Only



Cash 16.14
Jan. 1, 2010

2030. 23

76586DOC000459
Attorneys' Eyes Only



Cash 16.15
Jan. 1, 2010

2030. 24

76586DOC000460
Attorneys' Eyes Only



Cash 16.16
Jan. 1, 2010

2030.25

76586DOC000461
Attorneys' Eyes Only



Cash 16.17
Jan. 1, 2010

2030.26

76586DOC000462
Attorneys' Eyes Only



Cash 16.18
Jan. 1, 2010

2030. 27

76586DOC000463
Attorneys' Eyes Only



Cash 16.19
Jan. 1, 2010

2030.28

76586DOC000464
Attorneys' Eyes Only



Cash 16.20
Jan, 1, 2010

2030. 29

76586DOC000465
Attorneys' Eyes Only



Cash 16.21
Jan. 1, 2010

2030.30

76586DOC000466
Attorneys' Eyes Only

Cash 16.22
Jan. 1, 2010

2030. 31

76586DOC000467
Attorneys' Eyes Only

**Example of ECBP Calculation**



Cash 16.23
Jan. 1, 2010

2 030.32

76586DOC000468
Attorneys' Eyes Only

# Exhibit B

2030. 33



2030.34
76582DOC000783
CONFIDENTIAL - ATTORNEYS' EYES ONLY

1

## Objective of Today

Provide an overview of the following processes:
• Creating and updating **salary ranges**
• Developing **merit matrices**
• Developing **promotion budget and guidelines**

Specific instructions and/or tools for Focal 08 will be provided later in the year.

(intel)

2030.35

2

76582DOC000783_000002
CONFIDENTIAL - ATTORNEYS' EYES ONLY

# Salary Ranges

A salary range is a set of established pay limits for a given set of jobs within which we compensate our employees.

Ranges should reflect the **market pay** levels and the **internal value** of the applicable jobs

A **structure** is a set of ranges for an employee category (e.g. technical nonexempt)

"**Salary Admin Plan**" = Geni's term for pay ranges

Intel Salary Ranges include **base plus Incentive Target** (EB or Sales Incentive)*

\* *The plan is to make Intel ranges base only*

(intel)

2030.36

3

76582DOC000783_000003
CONFIDENTIAL - ATTORNEYS' EYES ONLY



2030. 37

76582DOC000783_000004
CONFIDENTIAL - ATTORNEYS' EYES ONLY



Ref. Manual
Page 14

2030.38

76582DOC000783_000005
CONFIDENTIAL - ATTORNEYS' EYES ONLY

## Salary Range Objectives

Reflects market competitive pay levels for **all jobs** in the grade
  (but not for any job in particular)

Communication tool for managers and employees of market levels

Provide a framework for equitable pay based on job scope and
performance

Establish the foundation for merit matrices and offer guidelines

Use as a cost management tool

(intel)

2030.39

6



2030.40

76582DOC000783_000007
CONFIDENTIAL - ATTORNEYS' EYES ONLY

## Moving Salary Ranges

Once ranges are established, they usually must be "moved" to remain competitive with the market

We move the range midpoints by certain percentage increase, then recalculate the min and max

Ranges should be moved no more often than once a year, less often if appropriate

Preserve midpoint progression and range spreads as much as possible, if already market competitive

(intel)

2030.41

8

76582DOC000783_000008
CONFIDENTIAL - ATTORNEYS' EYES ONLY