# CISNEROS DECLARATION
# EXHIBIT I
# REDACTED VERSION

```
 1                 UNITED STATES DISTRICT COURT

 2               NORTHERN DISTRICT OF CALIFORNIA

 3                       SAN JOSE DIVISION

 4

 5   IN RE:  HIGH-TECH EMPLOYEE     )

 6   ANTITRUST LITIGATION           )

 7                                  )  No. 11-CV-2509-LHK

 8   THIS DOCUMENT RELATES TO:      )

 9   ALL ACTIONS.                   )

10   _____

11

12        VIDEO DEPOSITION OF ALVARO GONZALO ALVAREZ

13                    HIGHLY CONFIDENTIAL

14                      March 5, 2013

15

16      Reported by:  Anne Torreano, CSR No. 10520

17

18

19

20

21

22

23

24

25
```

|  |  |  |
|---|---|---|
| 1 | Q. | So for example, different types of engineer? |
| 2 | A. | Absolutely. |
| 3 | Q. | And with how many VPs do you do that |
| 4 | currently? | |
| 09:41:53  5 | A. | Today?  Two. |
| 6 | Q. | Who are the two? |
| 7 | A. | Johny Srouji. |
| 8 | Q. | Okay.  And? |
| 9 | A. | Mike Culbert. |
| 09:42:07 10 | Q. | And then who did you work with to decide what |
| 11 | job requisitions needed to be opened when you were | |
| 12 | recruiting manager in product operations? | |
| 13 | A. | In product operations it was Sabih Khan, Rita |
| 14 | Lane, Nick Florenza, Chip Hills, Tony Blevins, Dan | |
| 09:42:54 15 | Rosckes and Jeff Williams. | |
| 16 | Q. | And do you have any role -- strike that. |
| 17 | | Have you had any role as a recruiting manager |
| 18 | at Apple in determining what salaries would be | |
| 19 | associated with open job requisitions? | |
| 09:43:29 20 | A. | Yes. |
| 21 | Q. | In what way? |
| 22 | A. | Delivering a recommendation to the clients. |
| 23 | Q. | And by "clients," you mean the -- |
| 24 | A. | Like today would be hardware engineering. |
| 09:43:50 25 | Q. | So you refer to the people at Apple who are |

|  |  |
|---|---|
| 1 | asking you to fill job roles as "clients"? |
| 2 | A.  Yes, as the team I support. |
| 3 | Q.  Do you always make a recommendation on what |
| 4 | salaries should be associated with a job requisition |
| 09:44:17  5 | when it's opened? |
| 6 | A.  No.  Goes by candidate, not requisition. |
| 7 | Q.  So you recommend salaries that should be paid |
| 8 | once Apple's interested in hiring a candidate? |
| 9 | MR. TUBACH:  Vague and ambiguous. |
| 09:44:44 10 | THE WITNESS:  Once a candidate's been |
| 11 | identified, yes. |
| 12 | BY MR. DALLAL: |
| 13 | Q.  For purposes of making an offer? |
| 14 | A.  Correct. |
| 09:44:52 15 | Q.  So once a candidate has been identified for |
| 16 | employment in the areas for which you or your |
| 17 | organization within recruiting is responsible, do you |
| 18 | always make some type of salary recommendation? |
| 19 | A.  Can you rephrase that question? |
| 09:45:17 20 | Q.  Well, once Apple has identified a candidate |
| 21 | and is to the stage of putting together an offer for a |
| 22 | part of the company that you or your organization's |
| 23 | responsible for, do you always make a recommendation on |
| 24 | salary? |
| 09:45:46 25 | A.  Myself or my recruiters. |

```
 1        Q.   So someone from the recruiting organization
 2   always --
 3        A.   That is correct.
 4        Q.   How do you go about making those
 5   recommendations?
 6        A.   There's a lot of things that go into play.
 7        Q.   Like what, for example?
 8        A.   Internal equity is one, one of many.
 9        Q.   What do you mean by "internal equity"?
10        A.   What the population of -- let's say if a
11   candidate's coming in at a certain level, we look at
12   someone in that organization at that level to see what
13   everybody's making.  So who's the low, the average and
14   the high.  That's what internal equity is.
15             There's a lot of calibration to it, so there's
16   a lot of avenues that we take to come up with that
17   recommendation.
18        Q.   Do you ever look at competing offers that a
19   candidate might have?
20        A.   Yes.
21        Q.   Do you ever look at any survey data?
22             MR. TUBACH:  Vague and ambiguous.
23             THE WITNESS:  Can you clarify?
24   BY MR. DALLAL:
25        Q.   Are you familiar with, for example, the
```

|   |   |   |
|---|---|---|
| 1 |   | Radford survey? |
| 2 | A. | I'm familiar with the company, yes. |
| 3 | Q. | So do you ever look at any survey data from |
| 4 |   | Radford or similar companies? |
| 5 | A. | No. |
| 6 | Q. | Have you ever? |
| 7 | A. | Yes. |
| 8 | Q. | While you were at Apple? |
| 9 | A. | Not at Apple, no. |
| 10 | Q. | And how do you go about finding out what other |
| 11 |   | employees are making at Apple when you're trying to |
| 12 |   | make a recommendation consistent with internal equity? |
| 13 | A. | Asking the candidate directly. |
| 14 |   | MR. TUBACH: Why don't you ask your question |
| 15 |   | again. |
| 16 |   | MR. DALLAL: Yeah, could you just read back |
| 17 |   | the question, please? |
| 18 |   | RECORD READ AS FOLLOWS: |
| 19 |   | "Q. And how do you go about finding out what |
| 20 |   | other employees are making at Apple when |
| 21 |   | you're trying to make a recommendation |
| 22 |   | consistent with internal equity?" |
| 23 |   | THE WITNESS: Oh, Apple. Sorry. |
| 24 |   | So at Apple we have access -- again, looking |
| 25 |   | at internal equity, as a recruiting leader we have |

```
 1    switch the video.
 2          THE VIDEOGRAPHER:  We're going off record at
 3    4:43.  This is the end of video No. 3.
 4          (RECESS TAKEN.)
 5          THE VIDEOGRAPHER:  We're back on the record at
 6    4:48.  This is the beginning of video No. 4.
 7          (DEPOSITION EXHIBIT 1376 MARKED.)
 8    BY MR. DALLAL:
 9       Q.  Mr. Alvarez, I'm handing you what's been
10    marked as Exhibit 1376.  It is a multipage document.
11    It begins with 231APPLE039426.  It extends through
12    231APPLE039428.  Probably would have been nice if it
13    extended a few more pages due to there being a larger
14    font size, but that's not something I can do anything
15    about.
16          So if you would, please review this document,
17    and I'm going to ask you about some of the material
18    mainly on page 2, but please review as much of it as
19    you like, holding it as close as you need, given the
20    limitations here.
21       A.  I reviewed the document.
22       Q.  Do you recognize this document?
23       A.  Yes.
24       Q.  Can you tell me what it is?
25       A.  It's an e-mail exchange between at that time
```

1   my recruiter Felicia Albright and one of the hiring

2   managers, Rob York, and myself.

3       Q.   Did you receive all these e-mails?

4       A.   Yes.

04:54:32  5     Q.   I just want to direct your attention to the

6   e-mail toward the bottom of page 2, where it says, "On

7   December 17th, 2010 at 12:37, Rob York wrote."

8       A.   Mm-hmm, yes, I see it.

9       Q.   He says, "███████████████████████████████

04:55:11 10 ███████████████████████████████████"

11          So in setting salaries that would be

12  components of offers for candidates Apple was

13  interested in hiring, was what a candidate's peer group

14  was receiving an important consideration?

04:55:47 15     A.   That's what we call internal equity.

16      Q.   So as you understand internal equity, was

17  Mr. York's comment consistent with that principle?

18          MR. TUBACH:  Lacks foundation.

19          THE WITNESS:  Can you repeat the question.

04:56:08 20 BY MR. DALLAL:

21      Q.   Well, if you just look at what Mr. York says,

22  which is, "████████████████████████████████████

23  ██████████████████████," is that a statement that

24  you regard as being consistent with the principle of

04:56:19 25 internal equity?

|  |  |  |
|---|---|---|
| | 1 | A. Being consistent?  No. |
| | 2 | Q. Why not? |
| | 3 | A. I think it's a one-off remark from Rob York, |
| | 4 | saying he's just looking at -- saying we should |
| 04:56:31 | 5 | reconsider our offer recommendations based on internal |
| | 6 | equity. |
| | 7 | Q. So is it fair to say that it's not |
| | 8 | inconsistent with the principle of internal equity? |
| | 9 | A. Can you rephrase the question? |
| 04:56:45 | 10 | Q. Do you regard Mr. York's statement as somehow |
| | 11 | inconsistent with the principle of internal equity? |
| | 12 | A. Yes. |
| | 13 | Q. How so? |
| | 14 | A. Not all -- some of our offer -- most of our |
| 04:57:09 | 15 | recommendations that come from recruiting are compared |
| | 16 | internal equity.  We always compare that.  It's the |
| | 17 | first thing we do.  And we compare other areas as |
| | 18 | well. ███████████████████████████████████████ |
| | 19 | ███████████████████████████████████████ |
| 04:57:26 | 20 | ████████████████████████████ |
| | 21 | So that comment's typically not referred to us |
| | 22 | on a consistent base or a common base. |
| | 23 | Q. I have to admit I don't really understand your |
| | 24 | answer. |
| 04:57:49 | 25 | A. We don't get that -- we don't receive those |

1       REPORTER'S CERTIFICATE

2            I, Anne Torreano, Certified Shorthand Reporter

3       licensed in the State of California, License No. 10520,

4       hereby certify that the deponent was by me first duly

5       sworn, and the foregoing testimony was reported by me

6       and was thereafter transcribed with computer-aided

7       transcription; that the foregoing is a full, complete,

8       and true record of said proceedings.

9            I further certify that I am not of counsel or

10      attorney for either or any of the parties in the

11      foregoing proceeding and caption named or in any way

12      interested in the outcome of the cause in said caption.

13           The dismantling, unsealing, or unbinding of

14      the original transcript will render the reporter's

15      certificates null and void.

16           In witness whereof, I have subscribed my name

17      this 15th day of March, 2013.

18

19              [ ] Reading and Signing was requested.

20              [ ] Reading and Signing was waived.

21              [X] Reading and Signing was not requested.

22

23
                             _____
24                           ANNE M. TORREANO, CSR No. 10520

25