# CISNEROS DECLARATION

# EXHIBIT J

# REDACTED VERSION

1              UNITED STATES DISTRICT COURT

2              NORTHERN DISTRICT OF CALIFORNIA

3                   SAN JOSE DIVISION

4

5    IN RE: HIGH-TECH EMPLOYEE        )

6    ANTITRUST LITIGATION             )

7                                     )   No.   11-CV-2509-LHK

8    THIS DOCUMENT RELATES TO:        )

9    ALL ACTIONS.                     )

10   _____ )

11

12           VIDEOTAPED DEPOSITION OF DARRIN BAJA

13      HIGHLY CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER

14                  Friday, March 1, 2013

15

16

17

18

19

20

21

22

23

24      Reported By:

25      KATHLEEN WILKINS, CSR #10068, RPR-RMR-CRR-CCRR-CLR

| | | |
|---|---|---|
| 09:42:30 | 1 | don't know. |
| 09:42:30 | 2 | Q.    Was it more often than annually? |
| 09:42:36 | 3 | A.    Yes. |
| 09:42:36 | 4 | Q.    Was it more often than monthly? |
| 09:42:38 | 5 | A.    No. |
| 09:42:41 | 6 | Q.    Do you think it was roughly monthly that |
| 09:42:44 | 7 | you interacted with the compensation team? |
| 09:42:46 | 8 | A.    Yes. |
| 09:42:52 | 9 | Q.    And in what way did you interact with |
| 09:42:54 | 10 | the compensation team?  Way or ways. |
| 09:43:00 | 11 | A.    I would look to them for advice. |
| 09:43:08 | 12 | Q.    Advice about what? |
| 09:43:10 | 13 | A.    About -- about either a classification, |
| 09:43:21 | 14 | a salary range for particular candidates and where |
| 09:43:30 | 15 | they would fall, even if it was a geographical |
| 09:43:34 | 16 | location. |
| 09:43:49 | 17 | Q.    When you say "where they would fall," |
| 09:43:51 | 18 | what do you mean by that? |
| 09:43:55 | 19 | A.    I would hire individuals in -- in |
| 09:43:59 | 20 | multiple locations, be it within the U.S. and |
| 09:44:03 | 21 | sometimes outside of the U.S.  So I would look to |
| 09:44:05 | 22 | them for advice in regards to the types of job |
| 09:44:10 | 23 | classifications that they actually had per |
| 09:44:12 | 24 | location, because they were different. |
| 09:44:15 | 25 | Q.    By that you mean the job classifications |

| | | |
|---|---|---|
| 09:44:18 | 1 | were different in different locations -- |
| 09:44:21 | 2 | A.   Yes. |
| 09:44:21 | 3 | Q.   -- of Apple? |
| 09:44:23 | 4 | A.   Yes. |
| 09:44:24 | 5 | Q.   ████████████████████████ |
| 09:44:26 | 6 | ████████ |
| 09:44:28 | 7 | A.   ███ |
| 09:44:36 | 8 | Q.   And when you say "where they would |
| 09:44:37 | 9 | fall," do you mean what salary they should |
| 09:44:42 | 10 | receive? |
| 09:44:42 | 11 | A.   No.  I meant what location, geographic |
| 09:44:44 | 12 | location, they would fall. |
| 09:45:04 | 13 | Q.   So in establishing a salary for a new |
| 09:45:09 | 14 | hire at Apple -- |
| 09:45:11 | 15 | A.   Mh-hmm. |
| 09:45:11 | 16 | Q.   -- was the salary paid to similar |
| 09:45:23 | 17 | employees at Apple a consideration? |
| 09:45:30 | 18 | MR. TUBACH:  Vague and ambiguous. |
| 09:45:30 | 19 | THE WITNESS:  Just -- yeah, could you |
| 09:45:32 | 20 | repeat, please?  I didn't understand. |
| 09:45:34 | 21 | BY MR. DALLAL: |
| 09:45:34 | 22 | Q.   Sure. |
| 09:45:36 | 23 | In setting salary for a new hire at |
| 09:45:38 | 24 | Apple, was one of the things that went into the |
| 09:45:45 | 25 | ultimate decision a consideration of what similar |

| | | |
|---|---|---|
| 09:45:48 | 1 | employees already working at Apple were being |
| 09:45:50 | 2 | paid? |
| 09:45:51 | 3 | A.    Yes. |
| 09:46:01 | 4 | Q.    Have you ever heard the term "internal |
| 09:46:03 | 5 | equity"? |
| 09:46:03 | 6 | A.    Yes. |
| 09:46:04 | 7 | Q.    Was that a term that you used in your |
| 09:46:09 | 8 | interactions with the compensation team at Apple? |
| 09:46:11 | 9 | A.    Yes. |
| 09:46:12 | 10 | Q.    Was that a term that you used in |
| 09:46:19 | 11 | discussing compensation at Apple? |
| 09:46:23 | 12 | A.    Yes. |
| 09:46:24 | 13 | Q.    What do you take "internal equity" to |
| 09:46:26 | 14 | mean? |
| 09:46:28 | 15 | A.    If you have a particular manager that |
| 09:46:29 | 16 | has a team below them, the group of folks that are |
| 09:46:33 | 17 | below them and what they're -- what they're -- |
| 09:46:37 | 18 | what they are making is the internal equity. |
| 09:47:09 | 19 | Q.    When you say "what they are making is |
| 09:47:12 | 20 | the internal equity," do you take internal equity |
| 09:47:21 | 21 | in some sense to shape or govern the relationship |
| 09:47:27 | 22 | between the salaries of those different people? |
| 09:47:31 | 23 | MR. TUBACH:  Vague and ambiguous. |
| 09:47:32 | 24 | THE WITNESS:  I don't know what that |
| 09:47:32 | 25 | means. |

Deposition of Darrin Baja                    In Re: HIGH-TECH EMPLOYEE ANTITRUST LITIGATION

09:47:33  1      BY MR. DALLAL:

09:47:33  2          Q.    Okay.  Well, let me -- let me just ask a

09:47:42  3      more general question.

09:47:43  4                What do you mean by what they were

09:47:44  5      making in the internal equity?

09:47:45  6          A.    Oh, the salary of each individual.

09:47:56  7          Q.    So you're saying that the salary of each

09:47:58  8      individual is the internal equity?

09:48:00  9          A.    Within a manager's team.

09:48:08 10          Q.    How is the salary of each individual

09:48:10 11      within a manager's team the internal equity?

09:48:14 12          A.    It's an understanding of what the

09:48:16 13      individuals are making.  And if you want to hire

09:48:18 14      someone that -- that -- that is at a similar

09:48:22 15      level, we look at those salaries to understand

09:48:24 16      what the internal equity is.  It's a comparison.

09:48:35 17          Q.    So, for example, if you were hiring

09:48:37 18      somebody onto a team, and they were doing a job

09:48:44 19      function that was similar to what the other people

09:48:46 20      on the team were doing, you would look to what the

09:48:49 21      other people on the team were making for

09:48:53 22      comparative purposes in setting the salary of the

09:48:57 23      new hire?

09:48:59 24          A.    That is one thing we would do, yes.

09:49:01 25          Q.    What else would you do?

| | | |
|---|---|---|
| 09:49:03 | 1 | A.    We would understand what the candidate |
| 09:49:06 | 2 | was making currently.  We would -- we would talk |
| 09:49:20 | 3 | about what this individual could bring to the |
| 09:49:23 | 4 | company as a technical contributor. |
| 09:49:33 | 5 | Q.    In such considerations, was there ever |
| 09:49:37 | 6 | an analysis of competing offers? |
| 09:49:40 | 7 | MR. TUBACH:  Vague and ambiguous. |
| 09:49:44 | 8 | THE WITNESS:  Yes. |
| 09:49:44 | 9 | BY MR. DALLAL: |
| 09:50:05 | 10 | Q.    Did you ever make recommendations to the |
| 09:50:07 | 11 | compensation team? |
| 09:50:12 | 12 | A.    No. |
| 09:50:17 | 13 | Q.    Who was on the compensation team? |
| 09:50:24 | 14 | MR. TUBACH:  At what point in time? |
| 09:50:25 | 15 | BY MR. DALLAL: |
| 09:50:26 | 16 | Q.    During the period when you were a |
| 09:50:27 | 17 | recruiting manager, did the composition of the |
| 09:50:29 | 18 | compensation team change? |
| 09:50:33 | 19 | A.    Steve Burmeister was the director of |
| 09:50:35 | 20 | comp. |
| 09:50:36 | 21 | Q.    And he was the director throughout the |
| 09:50:38 | 22 | time you were recruiting manager? |
| 09:50:39 | 23 | A.    Yes. |
| 09:50:43 | 24 | Q.    Do you know the other members of the |
| 09:50:44 | 25 | compensation team? |

1                I, Kathleen A. Wilkins, Certified

2      Shorthand Reporter licensed in the State of

3      California, License No. 10068, hereby certify that

4      the deponent was by me first duly sworn and the

5      foregoing testimony was reported by me and was

6      thereafter transcribed with computer-aided

7      transcription; that the foregoing is a full,

8      complete and true record of said proceedings.

9                I further certify that I am not of

10     counsel or attorney for either of any of the

11     parties in the foregoing proceeding and caption

12     named or in any way interested in the outcome of

13     the cause in said caption.

14                The dismantling, unsealing, or unbinding

15     of the original transcript will render the

16     reporter's Certificates null and void.

17                In witness whereof, I have hereunto set

18     my hand this day:  March 11, 2013.

19          _____ Reading and Signing was requested.

20          _____ Reading and Signing was waived.

21          ___X___ Reading and Signing was not requested.

22          _____

23          KATHLEEN A. WILKINS

24          CSR 10068, RPR-RMR-CRR-CCRR-CLR

25