# EXHIBIT NN

to the Declaration of
Lisa J. Cisneros in Support of
Plaintiffs' Opposition Briefs

**REDACTED VERSION**

```
 1                UNITED STATES DISTRICT COURT

 2               NORTHERN DISTRICT OF CALIFORNIA

 3                      SAN JOSE DIVISION

 4

 5   IN RE:  HIGH-TECH EMPLOYEE    )

 6   ANTITRUST LITIGATION          )

 7                                 )  No. 11-CV-2509-LHK

 8   THIS DOCUMENT RELATES TO:     )

 9   ALL ACTIONS.                  )

10   _____  )

11

12      HIGHLY CONFIDENTIAL - FOR ATTORNEYS' EYES ONLY

13

14          VIDEO DEPOSITION OF MICHAEL McNEAL

15

16                   FEBRUARY 21 ,2013

17

18     Reported by:  Mary Ann Scanlan-Stone, CSR No. 8875,

19                      RPR, CCRR, CLR

20

21

22

23

24

25
```

```
11:54:57  1  BY MS. SHAVER:
11:54:58  2       Q.  How about in 2010?
11:55:00  3           MR. KIERNAN:  Objection.  Foundation.
11:55:01  4           THE WITNESS:  I don't recall if it was the
11:55:05  5  same process.  The time periods were the same.
11:55:13  6  BY MS. SHAVER:
11:55:24  7       Q.  ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇
          8  ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇
11:55:32  9           MR. KIERNAN:  Objection.  Compound.
11:55:33 10  BY MS. SHAVER:
11:55:33 11       Q.  Midyear?
11:55:35 12           MR. KIERNAN:  Objection.  Compound.  Vague.
11:55:36 13  Foundation.
11:55:39 14           THE WITNESS:  ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇
         15  ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇
         16  ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇
11:55:50 17           MS. SHAVER:  Okay.
11:55:50 18       Q.  ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇
         19  ▇▇▇▇▇▇▇▇▇▇▇
11:55:55 20           MR. KIERNAN:  Objection.  Foundation.  Vague
11:55:56 21  as to which managers.
11:56:03 22           THE WITNESS:  ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇
         23  ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇
         24  ▇▇▇▇▇▇▇▇
11:56:09 25           MS. SHAVER:  Okay.
```

```
11:56:10  1         Q.  Do you know who would know?
11:56:12  2         A.  Currently?
11:56:13  3         Q.  (Nods head.)
11:56:16  4         A.  In 2013, Mason Stubblefield.
11:56:29  5         Q.  Is there a compensation group at -- at Intuit?
11:56:32  6         A.  Yes.
11:56:33  7         Q.  What's it called?
11:56:36  8         A.  Rewards.
11:56:37  9         Q.  Rewards.
11:57:05 10             For your direct reports, do you make the final
11:57:07 11     determination of how much they're paid?
11:57:10 12         A.  Yes.
11:57:12 13         Q.  Are you given any guidelines as to how much
11:57:15 14     they should be paid?
11:57:17 15         A.  Yes.
11:57:17 16         Q.  Who gives you those guidelines?
11:57:20 17         A.  The rewards team.
11:57:24 18         Q.  Is it your understanding that the rewards team
11:57:27 19     gives guidelines to managers throughout Intuit on
11:57:30 20     compensation?
11:57:31 21             MR. KIERNAN:  Objection.  Foundation.
11:57:37 22             THE WITNESS:  Yes.
11:57:37 23     BY MS. SHAVER:
11:57:49 24         Q.  Is it your understanding that each employee's
11:57:52 25     manager or supervisor has the authority to make the
```

| | | |
|---|---|---|
| 11:57:57 | 1 | final determination on what their total compensation |
| 11:58:01 | 2 | will be? |
| 11:58:01 | 3 | MR. KIERNAN: Objection. Argumentative. |
| 11:58:04 | 4 | Foundation. |
| 11:58:04 | 5 | THE WITNESS: It's my expectation. I'm not |
| 11:58:10 | 6 | special, so I believe that would be the practice. |
| 11:58:18 | 7 | I would like to clarify that it -- it's a pay |
| 11:58:21 | 8 | for performance culture, so it's a recommendation that |
| 11:58:24 | 9 | the rewards team makes -- |
| 11:58:27 | 10 | Q. The guidelines? |
| 11:58:28 | 11 | A. -- the guidelines -- |
| 11:58:29 | 12 | Q. Are recommendations? |
| 11:58:30 | 13 | A. -- are recommendations. |
| 11:58:31 | 14 | Q. ▓▓▓▓▓▓▓▓▓▓ |
| | 15 | ▓▓▓▓▓▓▓▓▓▓ |
| 11:58:37 | 16 | A. ▓▓ ▓▓▓▓▓▓▓▓▓▓ |
| | 17 | ▓▓▓▓▓▓▓▓ |
| 11:58:47 | 18 | Q. Is that allocated to Sherry -- Sherry |
| 11:58:51 | 19 | Whiteley? |
| 11:58:52 | 20 | A. Yes. |
| 11:58:52 | 21 | Q. Does she tell you what -- strike that. |
| 11:58:57 | 22 | ▓▓▓▓▓▓▓▓▓▓ |
| 11:58:59 | 23 | A. ▓▓ |
| 11:59:06 | 24 | Q. Has Sherry Whiteley ever come back to you and |
| 11:59:09 | 25 | said the compensation that you're recommending for your |

```
12:19:39   1   happy in their job and performing well in their job?
12:19:42   2   Absolutely, but I focus on them being engaged, growing,
12:19:46   3   and it's not a compensation conversation.
12:19:49   4   BY MS. SHAVER:
12:19:53   5        Q.   Uh-hum.
12:19:53   6             Have you ever been instructed to take the risk
12:20:01   7   of losing your employees into consideration when you
12:20:02   8   determine their compensation?
12:20:06   9             MR. KIERNAN:  Objection.  Vague.
12:20:07  10             THE WITNESS:  No.
12:20:14  11        Q.   Have you ever had one of your employees get an
12:20:18  12   offer from another company?
12:20:19  13        A.   Yes.
12:20:19  14        Q.   Have you ever made a counteroffer to that
12:20:22  15   employee?
12:20:23  16        A.   In what time period?
12:20:25  17        Q.   Ever --
12:20:26  18        A.   Ever?
12:20:26  19        Q.   -- in your tenure at Intuit?
12:20:30  20        A.   Oh, at Intuit, no.
12:20:35  21        Q.   While you've worked at Intuit, are you aware
12:20:37  22   of any employees receiving counteroffers from the
12:20:40  23   company?
12:20:41  24        A.   I'm not aware of any.
12:20:48  25        Q.   Are you aware of a protocol for that situation
```

```
12:20:50  1   as to who would need to approve a counteroffer?
12:20:59  2         A.  I don't recall, no.
12:21:00  3         Q.  Do you know who would know?
12:21:01  4         A.  Sherry Whiteley.
12:21:30  5         Q.  Who is Sherry Whiteley?
12:21:32  6         A.  The senior vice president of human resources.
12:22:13  7             MS. SHAVER:  Can I have 21, please?
12:22:17  8             MS. CISNEROS:  (Complies.)
12:22:32  9             MS. SHAVER:  This will be Plaintiffs' Exhibit
12:22:33 10   912.
12:22:34 11             (Exhibit 912 marked for identification.)
12:22:39 12             MS. SHAVER:  Q.  INTUIT_040817.
12:23:15 13         A.  (Reviews document.)
12:23:16 14         Q.  Do you recognize this document?
12:23:17 15         A.  Yeah.  I was copied on an email.  Yes.
12:23:24 16         Q.  So the first email in this chain is sent from
12:23:37 17   Jim Grenier on May 12, 2008, and you're copied on it; is
12:23:42 18   that right?
12:23:42 19         A.  Yes.
12:23:43 20         Q.  And I think you testified to this earlier, so
12:23:44 21   I apologize for asking you to repeat yourself, but can
12:23:47 22   you say who Jim Grenier is?
12:23:49 23         A.  Jim Grenier was the vice president of rewards.
12:23:54 24         Q.  And he writes, "Hello, Everyone.  This is a
12:23:56 25   summary of our approach and the guidelines for this
```

```
12:23:58  1   year's compensation decisions."
12:24:05  2           Do you recall receiving these guidelines for
12:24:06  3   this year's compensation decisions?
12:24:09  4           MR. KIERNAN:  Objection as to time.
12:24:11  5           You mean --
12:24:12  6           MS. SHAVER:  On May 12, 2008.
12:24:14  7           THE WITNESS:  I don't recall, but it was sent
12:24:15  8   to me.
12:24:19  9   BY MS. SHAVER:
12:24:19 10       Q.  And if you look above that, there's a response
12:24:24 11   from Brad Smith, May 13, 2008.  He writes, Jim, thank
12:24:29 12   you for providing such thoughtful and informative
12:24:33 13   guidance in this communication.
12:24:36 14           Who's Brad Smith?
12:24:39 15       A.  The CEO of Intuit.
12:24:51 16       Q.  Will you turn to the second page, please.
12:24:57 17       A.  Starting with level of performance?
12:25:00 18       Q.  Yes.
12:25:01 19       A.  Okay.
12:25:01 20       Q.  Underneath that, number two, population
12:25:05 21   distributions, it states, besides performance ratings
12:25:10 22   for fiscal year -- I assume FY08 refers to fiscal year
12:25:15 23   2008 -- ███████████████████████████████████████████
         ████████████████████████████████████████████████
         ████████████████████████████████████████████████
```

```
12:25:24  1   ████████████████████████████████████████████████
          2   ████████████████████████████████████████
12:25:32  3         █████████████████████████████████████████
12:25:36  4              MR. KIERNAN:  Foundation.
12:25:42  5              THE WITNESS:  ██████████████████████
          6   ██████████████████████████████████████████
          7   ██████████████████████████████████████████████
          8   ████████  ████████████████████████████████████
          9   █████████████████████████████████████████████████
         10   ████████████████████████████████████████████████████
         11   ████████████   █████████████████████████████████████
         12   ██████████████████████████████████████████████████
         13   ████████
12:26:18 14   BY MS. SHAVER:
12:26:18 15       Q.  So was it your understanding that the
12:26:20 16   performance rating is used for cash compensation
12:26:23 17   decisions; the combination of the performance rating and
12:26:28 18   the forward-looking retention rating is used for the
12:26:31 19   allocation of equity?
12:26:33 20              MR. KIERNAN:  Objection.  Argumentative.
12:26:34 21   Foundation.
12:26:35 22              THE WITNESS:  My understanding of this was Jim
12:26:40 23   was trying to get people to understand what we called a
12:26:43 24   total compensation package instead of bits and pieces,
12:26:47 25   so it tried to understand what someone's entire
```

```
12:37:27  1         A.   Was it so -- I believe, I'm sorry.
12:37:30  2              I believe your question was, were these used
12:37:32  3    in the rating?
12:37:33  4         Q.   Yes.
12:37:34  5         A.   And I don't -- I don't know that they were
12:37:36  6    specifically used in the rating.
12:37:38  7         Q.   Okay.
12:37:38  8         A.   It was a recommendation in draft at the time.
12:37:41  9         Q.   Do you know who's the author of this
12:37:42 10    PowerPoint?
12:37:43 11         A.   I do not.
12:37:45 12         Q.   Was it likely Courtney Abernathy?
12:37:48 13         A.   She could have aggregated all the pieces of
12:37:51 14    it, yes.
12:37:56 15         Q.   Uh-huh.
12:37:57 16              And do you recall whether a final version of
12:38:00 17    this document exists?
12:38:05 18         A.   There would have been a final version, but I
12:38:07 19    don't recall.
12:38:11 20         Q.   Where would I find that final version, where
12:38:13 21    would it be stored?
12:38:15 22              MR. KIERNAN:  Objection.  Foundation.
12:38:16 23              THE WITNESS:  I don't know that it would have
12:38:17 24    been stored.  Each -- each year, actually, someone
12:38:20 25    different goes -- manages the process, so probably
```

| | | |
|---|---|---|
| 12:38:25 | 1 | someone different. |
| 12:38:26 | 2 | BY MS. SHAVER: |
| 12:38:29 | 3 | Q. In 2010, who managed the process? |
| 12:38:34 | 4 | MR. KIERNAN: Foundation. |
| 12:38:41 | 5 | THE WITNESS: I don't recall specifically who |
| 12:38:42 | 6 | it was. |
| 12:38:43 | 7 | BY MS. SHAVER: |
| 12:38:44 | 8 | Q. There -- similar to Exhibit 912, the |
| 12:38:50 | 9 | compensation guidelines that we looked at, does Intuit |
| 12:38:57 | 10 | circulate to its managers each year compensation |
| 12:39:01 | 11 | guidelines? |
| 12:39:02 | 12 | A. Yes. |
| 12:39:07 | 13 | Q. And do those guidelines include the factors to |
| 12:39:11 | 14 | be considered under performance rating and retention |
| 12:39:15 | 15 | rating? |
| 12:39:21 | 16 | A. Definitions of -- you know, the variables that |
| 12:39:29 | 17 | we usually use to make the decision are usually in |
| 12:39:32 | 18 | there, yes. |
| 12:39:33 | 19 | Q. Uh-hum. |
| 12:39:33 | 20 | And do you have any reason to think that this |
| 12:39:49 | 21 | box, ████████████████████████████████ |
| | 22 | ████████ in Exhibit 913, page 9 of the PowerPoint, was |
| 12:39:56 | 23 | not in the final draft? |
| 12:39:58 | 24 | A. I don't recall in 2010 if it was in the final |
| 12:40:05 | 25 | draft. |

| | | |
|---|---|---|
| 12:40:11 | 1 | Q.  If I wanted to know whether a final draft |
| 12:40:13 | 2 | exists of this document for 2010, who would I ask? |
| 12:40:20 | 3 | MR. KIERNAN:  Foundation. |
| 12:40:20 | 4 | THE WITNESS:  I don't know if -- like I said, |
| 12:40:21 | 5 | it was done differently and if anyone saved it. |
| 12:40:25 | 6 | BY MS. SHAVER: |
| 12:40:26 | 7 | Q.  Which group at Intuit had responsibility for |
| 12:40:29 | 8 | this process? |
| 12:40:31 | 9 | A.  Two groups, the talent development |
| 12:40:35 | 10 | organization and the rewards organization, collaborated. |
| 12:40:41 | 11 | Q.  Okay. |
| 12:40:42 | 12 | And in 2010, who was the head of the rewards |
| 12:40:45 | 13 | organization? |
| 12:40:55 | 14 | A.  I believe it was Jim Grenier. |
| 12:40:58 | 15 | Q.  And in 2010, who was the head of the talent |
| 12:41:01 | 16 | development organization? |
| 12:41:11 | 17 | A.  That, I believe, was Brooks Fisher. |
| 12:42:08 | 18 | MS. SHAVER:  Can I have 20, please? |
| 12:42:11 | 19 | MS. CISNEROS:  (Complies.) |
| 12:42:30 | 20 | MS. SHAVER:  I probably have another 15 to 20 |
| 12:42:32 | 21 | minutes in this line of questioning.  It's okay if you |
| 12:42:36 | 22 | want to stop for lunch now. |
| 12:42:38 | 23 | MR. KIERNAN:  How are you feeling? |
| 12:42:40 | 24 | THE WITNESS:  I'd like a new back if I can |
| 12:42:42 | 25 | have one but, other than that, I'm doing okay. |

```
13:33:36  1         Q.  When did he leave the company?
13:33:41  2         A.  I don't recall the specific time.
13:33:42  3         Q.  Do you recall approximately -- what year?
13:33:46  4         A.  Gosh, I want to say either 2009 or 2010.
13:33:54  5         Q.  Is Mason Stubblefield the replacement for Jim
13:33:58  6   Grenier?
13:33:59  7         A.  The role is a little different, but the
13:34:04  8   portion that Jim Grenier had around rewards is what
13:34:08  9   Mason has now in regard to rewards.  Jim also had
13:34:11 10   workplace, which has moved out of workplace.
13:34:13 11         Q.  What's workplace?
13:34:15 12         A.  Workplace is your buildings, your facilities,
13:34:18 13   your --
13:34:19 14         Q.  Thank you.  I understand.
13:34:20 15             Do you know where Jim Grenier works now?
13:34:23 16         A.  I do not.
13:34:27 17         Q.  Do you know if he's retired?
13:34:34 18         A.  I do not.  I'm hopeful.
13:34:44 19         Q.  Do you recognize this document?
13:34:48 20         A.  I do not.
13:35:01 21         Q.  The second page says, "Total Rewards, Key
13:35:05 22   Levers to Attract and Retain the Talent & Skills to
13:35:09 23   Deliver for our Customers."
13:35:15 24             And you'll see on the next page that this is
13:35:17 25   dated January 21, 2006.
```

| | | |
|---|---|---|
| 13:35:23 | 1 | A. So you're on slide three? |
| 13:35:24 | 2 | Q. Slide three, yeah, you'll see at the bottom |
| 13:35:26 | 3 | there. |
| 13:35:26 | 4 | A. I thought you said two. I'm sorry. |
| 13:35:28 | 5 | Q. I did read the title page off page 2 and then |
| 13:35:31 | 6 | I said that you'll find the date at the bottom of |
| 13:35:33 | 7 | page 3. |
| 13:35:34 | 8 | A. Gotcha. |
| 13:35:37 | 9 | Q. Okay. |
| 13:35:44 | 10 | So January 21, 2006, that was when you held |
| 13:35:48 | 11 | the role of director of talent acquisition; is that |
| 13:35:52 | 12 | right? |
| 13:35:52 | 13 | A. Correct. |
| 13:35:52 | 14 | Q. Okay. |
| 13:35:59 | 15 | So do you -- if -- this is something you would |
| 13:36:04 | 16 | expect Jim Grenier to have shared with your talent |
| 13:36:07 | 17 | acquisition organization? |
| 13:36:25 | 18 | A. I would expect it was shared with human |
| 13:36:27 | 19 | resources. |
| 13:36:27 | 20 | Q. And that would include? |
| 13:36:28 | 21 | A. That would include the talent acquisition |
| 13:36:31 | 22 | organization. |
| 13:36:31 | 23 | Q. Will you turn to page 15, please? |
| 13:36:38 | 24 | A. (Complies.) |
| 13:36:48 | 25 | Q. The top of the slide reads, Compensation |

```
13:36:50  1    Decision Process, fiscal year 2005.
13:36:54  2         A.   Uh-huh.
13:36:55  3         Q.   ████████████████████████████
          ████████████████████████████████████████████
          ████████████████████████████████████████████
          ████████████████████████████████████████████
          ████████████████████████████
                    ███████████████████████████████
          ██████████████████████████████████████████████
          ███████████████████████
          ███████████████
          █   █████████
          █   ████████████████████████████████████
          ████████████████████████████████████
          ████████████████████████
          █   █████████████████████████████  █████
          ████████████████████████████████
          █   █████████████████████████████
          ████████████████████████████████████
          █   █████
          █   █████████████
13:38:15 22         ████████████████████████████████
          ███████████████████████████████████████
          ███████████████████████████████████████
          █████████████████████████████████████████████
```

```
13:38:28  1    ▮▮▮▮▮▮▮
          2    ▮▮▮▮▮ ▮   ▮▮▮▮▮
          3    ▮▮▮▮▮ ▮   ▮ ▮▮
          4    ▮▮▮▮▮ ▮   ▮ ▮▮▮▮▮▮▮▮
          5    ▮▮▮▮▮ ▮   ▮▮▮▮▮▮▮▮▮▮
          6    ▮▮▮▮▮ ▮   ▮▮▮▮▮▮▮▮▮
          7    ▮▮▮▮▮ ▮   ▮▮▮▮▮▮
13:38:41  8              MR. KIERNAN:  Objection.  Form.
13:38:43  9              THE WITNESS:  ▮▮▮▮▮▮
         10    ▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮
         11    ▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮
         12    ▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮
         13    ▮▮▮▮▮ ▮▮▮▮ ▮▮▮▮▮
13:39:01 14    BY MS. SHAVER:
13:39:01 15         Q.  But the slide is entitled, Compensation
13:39:03 16    Decision Process, right?
13:39:04 17         A.  ▮▮▮▮ ▮▮▮▮▮▮▮▮▮
         18    ▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮
         19    ▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮
         20    ▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮
         21    ▮▮▮▮▮ ▮▮▮▮▮▮▮▮
         22    ▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮
         23    ▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮
         24    ▮▮▮▮▮ ▮▮▮▮
13:39:26 25         Q.  ▮▮▮▮▮▮▮▮▮▮
```

```
13:39:35   1   ████████████████████████████████████████
           
    ██████ 2   ████████████████████████████████████
    ██████ 3   ████  █████████████████  █████████
    ██████ 4   ████████████████████████████████████
    ██████ 5   █████████████████████

13:40:02   6              MS. SHAVER:  Can I have Tab 24, please?
13:40:08   7              MS. CISNEROS:  (Complies.)
13:40:15   8              MS. SHAVER:  Please mark this Plaintiffs'
13:40:16   9   Exhibit 915.
13:40:25  10          (Exhibit 915 marked for identification.)
13:40:26  11              MS. SHAVER:  This is INTUIT_039867.
13:40:52  12         Q.   Do you recognize this document?
13:40:53  13         A.   Yes.
13:41:00  14         Q.   Who is Phil Warden?
13:41:03  15         A.   Phil Warden works inside of the employee or
13:41:07  16   workforce data team.
13:41:13  17         Q.   What is the workforce data team responsible
13:41:15  18   for?
13:41:16  19         A.   Gathering data in regards to employees.
13:41:23  20         Q.   And he sent an email to you, among other
13:41:28  21   people, on July 14, 2011?
13:41:30  22         A.   Correct.
13:41:31  23         Q.   Is that right.
13:41:32  24              And you responded to him the same day, "Always
13:41:34  25   interesting.  Thank you."?
```

```
13:41:44   1         A.   Oh, yes.
13:41:45   2         Q.   Okay.
13:41:51   3              You see -- if you look at the third bullet
13:41:53   4   point in Mr. Warden's email, it's entitled or in bold,
13:41:59   5   High-Potential Employees.  Do you see that?
13:42:01   6         A.   Uh-huh.
13:42:02   7         Q.   "When a high potential employee leaves, the
13:42:05   8   organization loses up to three and a half times the high
13:42:08   9   potential employee's annual salary in investment.
13:42:13  10   Improved high potential employee development increases
13:42:17  11   all employees' organizational commitment."
13:42:24  12              Do you see that?
13:42:27  13         A.   I do.
13:42:35  14         Q.   Do you have any reason -- strike that.
13:42:54  15              Did you receive these kind of reports from
13:42:56  16   Phil Warden on a regular basis?
13:42:58  17         A.   No.
13:42:59  18         Q.   Do you know what the -- did you receive them
13:43:02  19   on a quarterly basis?
13:43:04  20              MR. KIERNAN:  Wait.
13:43:04  21              Objection.
13:43:05  22              You mean this specific quarterly news and
13:43:08  23   trend in CCL?
13:43:09  24              MS. SHAVER:  Yes.
13:43:10  25              MR. KIERNAN:  Or CLC, pardon me.
```

```
15:39:20   1            I, Mary Ann Scanlan-Stone, Certified Shorthand
15:39:20   2   Reporter licensed in the State of California, License
15:39:20   3   No. 8875, hereby certify that the deponent was by me
15:39:20   4   first duly sworn and the foregoing testimony was
15:39:20   5   reported by me and was thereafter transcribed with
15:39:20   6   computer-aided transcription; that the foregoing is a
15:39:20   7   full, complete, and true record of said proceedings.
15:39:20   8            I further certify that I am not of counsel or
15:39:20   9   attorney for either of any of the parties in the
15:39:20  10   foregoing proceeding and caption named or in any way
15:39:20  11   interested in the outcome of the cause in said caption.
15:39:20  12            The dismantling, unsealing, or unbinding of
15:39:20  13   the original transcript will render the reporter's
15:39:20  14   certificates null and void.
15:39:20  15            In witness whereof, I have hereunto set my
15:39:20  16   hand this day: March 2, 2013.
15:39:20  17            ___X____ Reading and Signing was requested.
15:39:22  18            _____ Reading and Signing was waived.
15:39:22  19            _____ Reading and signing was not requested.
15:39:22  20
15:39:22  21                                  _____
15:39:22  22                                  MARY ANN SCANLAN-STONE
15:39:22  23                                  CSR 8875, RPR, CCRR, CLR
           24
           25
```