GREGORY P. STONE (State Bar No. 78329)
gregory.stone@mto.com
BRADLEY S. PHILLIPS (State Bar No. 85263)
brad.phillips@mto.com
STEVEN M. PERRY (State Bar No. 106154)
steven.perry@mto.com
BETHANY W. KRISTOVICH (State Bar No. 241891)
bethany.kristovich@mto.com
MUNGER, TOLLES & OLSON LLP
355 South Grand Avenue, 35th Floor
Los Angeles, California 90071-1560
Telephone:    (213) 683-9100
Facsimile:    (213) 687-3702

Attorneys for Defendant
INTEL CORPORATION

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN JOSE DIVISION

| | |
|---|---|
| IN RE: HIGH-TECH EMPLOYEE ANTITRUST LITIGATION <br><br> THIS DOCUMENT RELATES TO: <br><br> ALL ACTIONS | Master Docket No. 11-CV-2509-LHK <br><br> **INTEL'S REPLY MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT PURSUANT TO FED.R.CIV.PRO. 56** <br><br> Date:    March 20, 2014 <br> Time:    1:30 p.m. <br> Courtroom of Hon. Lucy H. Koh <br> Courtroom 8, 4th Floor |

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ................................................... 1

II.    ARGUMENT............................................................ 1

    A.     Because There Is No Direct Evidence That Intel Joined The Alleged Overarching Conspiracy, Plaintiffs Must Present Evidence That Tends To Exclude The Possibility That Intel Acted Independently. ......................... 1

    B.     The Evidence Concerning Intel Is At Least As Consistent With Independent Action As With Conspiracy....................................... 2

        1.     It Is Undisputed That The Intel/Google Agreement Was In Intel's Independent Self-Interest. ........................................ 2

        2.     There Is No Circumstantial Evidence That Tends To Exclude The Possibility That Intel Acted Independently.................................. 3

III.   CONCLUSION ..................................................... 7

1

# TABLE OF AUTHORITIES

2

**Page(s)**

3

**FEDERAL CASES**

4

*AD/SAT, Inc. v. Associated Press, et al.,*
5   181 F.3d 216 (2d Cir. 1999) ..................................................................................... 1

6

*Anderson v. Liberty Lobby, Inc.,*
    477 U.S. 242 (1986) ................................................................................................. 7
7

*Bell Atl. Corp. v. Twombly,*
8   550 U.S. 544 (2007) ............................................................................................. 1, 2

9

*Flash Electronics, Inc. v. Universal Music & Video Distribution Corp.,*
    2009 WL 7266571 (E.D.N.Y., Oct. 19, 2009) ......................................................... 4
10

11  *In re Citric Acid Antitrust Litig.,*
    191 F.3d 1090 (9th Cir. 1999) .......................................................................... 1, 2, 6

12

13  *In re High-Tech Employee Antitrust Litig.,*
    2013 WL 5770992 (N.D.Cal., Oct. 24, 2013) ...................................................... 3, 4

14  *In re Ins. Brokerage Antitrust Litig.,*
    618 F.3d 300 (3d Cir. 2010) ..................................................................................... 2
15

16  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,*
    475 U.S. 574 (1986) ................................................................................................. 1

17

18  *United Steelworkers of America v. Phelps Dodge Corp.,*
    865 F.2d 1539 (9th Cir. 1989) .................................................................................. 6

19  *Wilcox v. First Interstate Bank of Oregon, N.A.,*
    815 F.2d 522 (9th Cir. 1987) ............................................................................... 2, 5
20

21

22

23

24

25

26

27

28

## I.     <u>INTRODUCTION</u>

Plaintiffs have submitted no separate opposition to Intel's summary judgment motion and provided no separate argument that Intel entered into the alleged "overarching conspiracy."  Instead, they lump all defendants together, ignoring the requirement that they show "each defendant conspired in violation of the antitrust laws."  *AD/SAT, Inc. v. Associated Press, et al.*, 181 F.3d 216, 234 (2d Cir. 1999); *see also In re Citric Acid Antitrust Litig.*, 191 F.3d 1090, 1106 (9th Cir. 1999) (affirming summary judgment as to one of numerous alleged co-conspirators).  If the Court looks beyond plaintiffs' conclusory assertions about "all" defendants and analyzes the evidence concerning *Intel in particular*, the Court will conclude that Intel is entitled to summary judgment because: (1) there is no direct evidence that Intel entered into the alleged overarching conspiracy to "fix and suppress the compensation" of all class members; (2) it is undisputed that the Intel/Google agreement was in Intel's self-interest regardless of other defendants' bilateral agreements or the alleged overarching conspiracy; and (3) there is no circumstantial evidence that tends to exclude the possibility that Intel entered into its agreement with Google independent of the alleged overarching conspiracy.

## II.    <u>ARGUMENT</u>

### A.     **Because There Is No Direct Evidence That Intel Joined The Alleged Overarching Conspiracy, Plaintiffs Must Present Evidence That Tends To Exclude The Possibility That Intel Acted Independently.**

As the Supreme Court has repeatedly explained, where, as here, plaintiffs rely solely on circumstantial evidence of conspiracy, they can avoid summary judgment only by presenting evidence that "tend[s] to rule out the possibility that the defendant was 'acting independently'."  *E.g.*, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 588 (1986); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554 (2007).  Plaintiffs, having no such evidence with respect to Intel, attempt to avoid this requirement in two ways.  As explained in more detail in Defendants' Joint Reply, both are meritless.

First, plaintiffs assert that they "rely on substantial direct evidence of unlawful agreements."  Opp. 3:24-4:1.  But the only direct evidence of any agreement by Intel is

1  evidence that it reached a single bilateral agreement about cold-calling with Google.

2  Plaintiffs point to no direct evidence that Intel also joined an alleged "overarching

3  conspiracy" to suppress class-wide compensation.  Amended Compl. ¶ 55.

4      Second, plaintiffs contend that the *Matsushita* rule does not apply here because the

5  defendants' bilateral agreements are "not the 'very essence of competition' but [are] per se

6  violations of the antitrust laws."  Opp. 4:1-4.  Even assuming *arguendo* that were true,

7  plaintiffs' contention fails because the *Matsushita* rule applies even where the defendant's

8  conduct from which the plaintiff asks the court to infer a conspiracy is allegedly unlawful

9  or anticompetitive.  *See* Intel's Opening Brief ("OB") at 7-9, citing *Twombly* and *In re Ins.*

10  *Brokerage Antitrust Litig.*, 618 F.3d 300 (3d Cir. 2010).[1]

11  **B.    The Evidence Concerning Intel Is At Least As Consistent With**
         **Independent Action As With Conspiracy.**

12

13          **1.    It Is Undisputed That The Intel/Google Agreement Was In Intel's**
                    **Independent Self-Interest.**

14      As Intel demonstrated in its opening brief, experts retained by Intel and by plaintiffs

15  agree that the Intel/Google no-cold-calling agreement was in Intel's self-interest regardless

16  of the existence of similar agreements or the alleged overarching conspiracy.  OB at 6:5-

17  7:5.  Plaintiffs have no contrary evidence, expert or otherwise.  The mere existence of the

18  Intel/Google agreement therefore cannot support an inference that Intel joined the alleged

19  overarching conspiracy.  *Twombly*, 550 U.S. at 554; *Wilcox v. First Interstate Bank of*

20  *Oregon, N.A.*, 815 F.2d 522, 528 (9th Cir. 1987); *see also In re Citric Acid Antitrust Litig.*,

21  191 F.3d at 1100 (conduct that could be "interpreted as a decision in [defendant's] own

22  independent self-interest" did not support inference of conspiracy).  Plaintiffs dispute this

23  legal proposition, Opp. 20:20-21:4, but, as explained in detail in Defendants' Joint Reply,

24  the few cases they cite in fact support Intel's position.

25  _____

26  [1] While the Court need not resolve the issue now, Intel does not concede that its bilateral
    agreement with Google was unlawful, per se or otherwise.  Intel will, if necessary, present

27  evidence at trial that the agreement was procompetitive because it furthered Intel's

28  legitimate, procompetitive business collaborations with Google.  See OB at 4 n.4.

1

## 2. There Is No Circumstantial Evidence That Tends To Exclude The Possibility That Intel Acted Independently.

2

3    Plaintiffs' opposition confirms that all the evidence shows with respect to Intel is its

4    single bilateral no-cold-calling agreement with Google. Plaintiffs cannot avoid summary

5    judgment merely by proving the existence of that agreement; rather, they must prove that

6    Intel entered into the alleged "overarching conspiracy." Indeed, plaintiffs' argument and

7    this Court's ruling that common issues predominate with respect to the existence of a

8    violation depend upon the fact that the violation plaintiffs seek to prove is an alleged

9    "overarching conspiracy," not merely individual bilateral agreements between pairs of

10   defendants, as to which common issues would *not* predominate. *In re High-Tech*

11   *Employee Antitrust Litig.*, 2013 WL 5770992 (N.D. Cal., Oct. 24, 2013) at \*\*27-28.

12   Plaintiffs make sweeping assertions about "all" defendants and "all" the

13   agreements, but they never connect the cited evidence to Intel. In fact, almost all of the

14   evidence cited by plaintiffs has nothing to do with Intel. The scant evidence that does

15   relate to Intel bears only on Intel's single agreement with Google. And plaintiffs

16   continually misrepresent the evidence concerning Intel CEO Paul Otellini in an effort to

17   make it appear that Intel was connected to conduct of the other defendants when it was not.

18   The following detailed analysis of each of plaintiffs' factual assertions about Intel

19   shows that plaintiffs' "facts," whether considered individually or collectively, do not tend

20   to exclude the possibility that Intel entered into the Intel/Google agreement independent of

21   any overarching conspiracy.

22   (a)   Plaintiffs assert repeatedly that Steve Jobs and/or Bill Campbell "either

23   personally entered into, or were involved with, all actual and attempted anti-solicitation

24   agreements at issue in this case." Opp. 34:19-20; *see also* Opp. 8:21-9:2 ("[E]very express

25   agreement at issue in this case involved Mr. Jobs directly, and/or involved Bill Campbell

26   ….."). But plaintiffs cite no evidence of communications between Intel and Mr. Jobs or

27   Mr. Campbell concerning the Intel/Google agreement, recruiting, or cold-calling. Plaintiffs'

28   description of the evidence that supposedly shows Mr. Jobs's involvement in "every"

1   agreement does not mention Intel at all.  Opp. 33:23-34:4.  And plaintiffs' effort to tie

2   Mr. Campbell to Intel through Mr. Campbell's testimony that he had a "very friendly"

3   relationship with Mr. Otellini, Opp. 34:13-14 (citing Campbell 111:6-13), says nothing

4   about any agreement between Intel and anyone else.  It is simply a "guilt-by-association"

5   argument.  Plaintiffs speculate that, because of their friendship, Mr. Campbell and

6   Mr. Otellini must have conspired with respect to class-wide (or other) recruiting restrictions.

7   But that speculation is belied by Mr. Campbell's testimony that immediately follows his

8   testimony about their friendship: "Q. Was it your understanding at this time [May 2006] that

9   there was an agreement between Google and Intel that the companies would not recruit

10  from each other?  A. I have no idea.  Q. Do you recall any discussions about that with

11  Mr. Otellini?  A. No.  Q. Or with anybody at Google?  A. No.  I mean it doesn't involve

12  Intuit.  No."  Campbell 111:23-112:6.  In short, the evidence shows only that Mr. Otellini

13  and Mr. Campbell were friends, which cannot support an inference of conspiracy.  *See*

14  *Flash Electronics, Inc. v. Universal Music & Video Distribution Corp.*, 2009 WL 7266571

15  (E.D.N.Y., Oct. 19, 2009) at *8 (holding that evidence of personal friendships among

16  alleged co-conspirators could not support an inference of conspiracy).[2]

17          (b)     Plaintiffs assert also that "Mr. Otellini knew what Google's senior executives

18  and Mr. Campbell knew, which was they were all joining an effort to eliminate competition

19  with Mr. Jobs, an individual who "loud[ly] expressed his view that 'you should not be

20  hiring each others' [sic], you know, technical people …."  Opp. 45:1-5 (citing Schmidt

21  169:12-22, Brin 112:21-24, Catmull 195:18-21).  But Mr. Schmidt said nothing whatsoever

22  suggesting that Mr. Otellini knew Mr. Jobs's views, and the cited Brin and Catmull

23  testimony does not even mention Mr. Otellini.  This is simply another improper attempt to

24  establish guilt by association—that is, implying that, merely because Mr. Otellini knew

25  _____

26  [2] The Court stated in its class certification order that an email exchange between
    Mr. Campbell and a Google executive about recruiting issues had been forwarded to Intel.

27  *In re High-Tech Employee Antitrust Litig.*, 2013 WL 5770992 at *17.  There is, in fact, no
    evidence that Mr. Campbell's email was forwarded to Intel, and plaintiffs do not assert that

28  it was.

1    Messrs. Schmidt and Brin he must have known whatever they knew.

2         (c)    Plaintiffs also contend that "Google's senior executives told Paul Otellini …

3    about Mr. Jobs' demand for an anti-solicitation agreement [between Apple and Google] and

4    Google's acceptance."  Opp. 10:22-25.  Plaintiffs' citations to deposition testimony in

5    support of this contention are misleading.  Mr. Schmidt's statement that "I'm sure I spoke

6    with Paul [Otellini] about this at some point" related to Google's policy with respect to

7    *Intel*, not to Mr. Jobs's demands to Google. Schmidt 125:21-126:11.  Similarly, Mr. Brin's

8    testimony that "we would have mentioned it to at least those board members" was in

9    reference to Google's decision not to cold call employees of Genentech and Intel because

10   Genentech and Intel executives were on Google's board.  Brin 74:10-17.  Mr. Brin further

11   clarified that he had no personal knowledge that any such conversation occurred.  Brin 77:4-

12   8 ("I'm not sure there – in whatever way it may have been relayed to those companies,

13   which maybe it wasn't at all, that wasn't – I did not do that.").  There is thus no evidence

14   that Mr. Otellini or anyone else at Intel knew of communications between Google and

15   Mr. Jobs about the Apple-Google agreement.  Even if there were evidence of such

16   knowledge, it would not support an inference that Intel entered into an overarching

17   conspiracy, because it would be in no way inconsistent with Intel's having acted in its

18   independent self-interest without regard to any Apple-Google agreement.  *See Wilcox*, 815

19   F.2d at 527 ("conscious parallel conduct" cannot support an inference of conspiracy unless

20   "it is also shown that each conspirator acted against its own self-interest").

21        (d)    Plaintiffs similarly assert that "Google's recruiting restrictions were discussed

22   at Google Board meetings, which Mr. Otellini and Mr. Campbell regularly attended."  Opp.

23   10:25-11:1.  Plaintiffs rely on speculation by Mr. Rosenberg of Google that Google's do-

24   not-call list "*may* have been" discussed at a meeting of Google's board of directors and his

25   testimony that "Mr. Campbell would often attend meetings of [the board]."  Rosenberg

26   85:15-24 (emphasis added).[3]  Plaintiffs cite no evidence that Mr. Otellini attended any board

27   _____

28   [3] Plaintiffs cite testimony by Intel's expert witness, Dr. Snyder, to the effect that he

1   meeting where Google's recruiting restrictions were discussed.  In fact, Mr. Schmidt,

2   Google's CEO, testified that it was "unlikely" that Google's policies with respect to cold

3   calling were presented at a board meeting. Schmidt 81:12-17.  Even if there had been a

4   board discussion in Mr. Otellini's presence, that would establish only that Mr. Otellini, as a

5   Google board member, became aware of Google's policy not to cold call employees of

6   certain companies.  That is not inconsistent with Intel's having acted independent of

7   bilateral agreements between other defendants.

8          (e)     Plaintiffs state that "Mr. Jobs and Mr. Otellini also communicated frequently."

9   Opp. 35:18-19 (citing Otellini 81:4-82:9).  That is true, but it does not show that Intel joined

10  any overarching conspiracy.  Apple is one of Intel's largest customers and, during the

11  relevant period, was changing to use Intel microprocessors in its computers.  *See* Harvey

12  Decl., Ex. 198 (Intel's Objections and Responses to Plaintiffs' Second Set of

13  Interrogatories), p.7; *id*., Ex. 195 (Defendant Apple Inc.'s Amended Responses to Plaintiffs'

14  Second Set of Interrogatories), p.9.  While Mr. Jobs and Mr. Otellini thus had much to

15  discuss, there is no evidence that they ever discussed recruiting restrictions.  Mr. Otellini

16  testified that they did not: "Q. During that period of time when you were speaking more

17  frequently with Mr. Jobs, did you discuss the subject of recruiting or soliciting each other's

18  employees?  A. No.  Q. The subject never came up?  A. No.  Q. Did he ever tell you at any

19  time that he had reached agreements with executives at other technology companies not to

20  recruit each other's employees?  A. No."  Otellini 82:10-20.[4]

21

22  "believe[s]" Mr. Otellini was aware of Google's other bilateral agreements because "[h]e
    was on the board."  Opp. 45:21-23 (citing Snyder 258:17-20).  Dr. Snyder's speculation in

23  this regard does not present any question of fact, since he is not in a position to provide

24  factual testimony at trial.  *In re Citric Acid Antitrust Litig*., 191 F.3d at 1102.

25  [4] Plaintiffs urge the Court to disregard Mr. Otellini's uncontradicted testimony because,
    they argue, the jury will find Mr. Otellini "not credible."  Opp. 45:9.  It is well settled,

26  however, that "[t]he possibility that the plaintiff may discredit the defendant's testimony at
    trial is not enough for the plaintiff to defeat [summary judgment]."  *United Steelworkers of*

27  *America v. Phelps Dodge Corp.*, 865 F.2d 1539, 1542 (9th Cir. 1989); *see also Anderson v.*

28  *Liberty Lobby*, *Inc.*, 477 U.S. 242, 256 (1986) (same).

1      (f)      Plaintiffs assert, based on two exhibits and testimony by Mr. Campbell, that

2   Mr. Otellini "participated in discussions with Mr. Campbell and others at Google about the

3   threat that Facebook posed, discussions that led to Mr. Campbell['s] instructing Google

4   executives to extend the conspiracy to Facebook."  Opp. 45:5-8, citing Exs. 471, 667;

5   Campbell 142:17-20.  Exhibit 471 is an email from April 2010, well after the end of the

6   alleged conspiracy, and indicates only that Mr. Otellini asked "how [Google's] *counter-*

7   *recruiting* was progressing" and that he was given an update.  (Emphasis added).  There is

8   no mention of any proposal, agreement, or discussion about Google's or Facebook's not

9   recruiting the other's employees.  Exhibit 667 is an email from Mr. Campbell to Mr.

10  Rosenberg and another Google employee which does not mention Mr. Otellini, and

11  Mr. Campbell's cited testimony similarly contains no mention of Mr. Otellini.  There is no

12  evidence whatsoever that Mr. Otellini participated in any way in any effort by Google

13  executives to reach a no-cold-calling agreement with Facebook.

14      (g)      Plaintiffs discuss the expert reports submitted by Drs. Hallock, Leamer,

15  Manning, and Marx but do not cite anything in those reports that ties Intel to any agreement

16  other than its bilateral agreement with Google or that shows that the Intel/Google agreement

17  was not in Intel's self-interest independent of any other agreements or the alleged

18  overarching conspiracy.  *See* Opp. 12:17-15:19.

19      The foregoing analysis demonstrates that plaintiffs have no evidence from which a

20  reasonable juror could find that Intel joined the alleged overarching conspiracy.  To the

21  contrary, all of plaintiffs' evidence is consistent with Intel's entering into the Intel/Google

22  agreement independent of the alleged overarching conspiracy.  Because the evidence does

23  not tend to exclude that possibility, Intel is entitled to summary judgment.

## III.   **CONCLUSION**

25      For all the foregoing reasons and those set forth in its opening brief, Intel respectfully

26  requests that summary judgment be entered in its favor.

1

Dated: February 27, 2014                    MUNGER, TOLLES & OLSON LLP

2

3                                            By:   _/s/ Gregory P. Stone_
                                                   Gregory P. Stone

4                                            Attorneys for Defendant
                                             INTEL CORPORATION
5
22929895.1
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-8-                                          Master Docket No. 11-CV-2509-LHK
INTEL'S REPLY BRIEF ISO MOTION FOR SUMMARY JUDGMENT