GREGORY P. STONE (State Bar No. 78329)
gregory.stone@mto.com
BRADLEY S. PHILLIPS (State Bar No. 85263)
brad.phillips@mto.com
STEVEN M. PERRY (State Bar No. 106154)
steven.perry@mto.com
BETHANY W. KRISTOVICH (State Bar No. 241891)
bethany.kristovich@mto.com
MUNGER, TOLLES & OLSON LLP
355 South Grand Avenue
Thirty-Fifth Floor
Los Angeles, California 90071-1560
Telephone:    (213) 683-9100
Facsimile:    (213) 687-3702

Attorneys for Defendant Intel Corporation

[Additional counsel listed on signature page]

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| IN RE: HIGH-TECH EMPLOYEE ANTITRUST LITIGATION<br><br>THIS DOCUMENT RELATES TO:<br><br>ALL ACTIONS | Master Docket No. 11-CV-2509-LHK<br><br>**DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF JOINT MOTION TO EXCLUDE THE EXPERT TESTIMONY OF MATTHEW MARX, PH.D.**<br><br>**ORAL ARGUMENT REQUESTED**<br><br>Judge:  Hon. Lucy H. Koh<br>Date:   March 20 and 27, 2014<br>Time:   1:30 p.m.<br>Crtrm:  8 |

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ........................................................................................................... 1

II. ARGUMENT .................................................................................................................. 1

    A. Plaintiffs Have Effectively Conceded That Dr. Marx's Proposed Opinions Are Inadmissible Because He Is Not An Economist ..................................................... 1

    B. Dr. Marx's Proposed Testimony Would Usurp The Role Of The Jury .................... 3

    C. Dr. Marx's Opinion Whether Defendants' Agreements Were "Reasonably Necessary" Or "Essential" To Collaborations Is Inadmissible ................................ 4

III. CONCLUSION ............................................................................................................... 5

# TABLE OF AUTHORITIES

**FEDERAL CASES**                                                      **PAGE(S)**

*Berlyn, Inc. v. Gazette Newspapers, Inc.*,
  214 F.Supp.2d 530 (D.Md. 2002) .................................................................................. 1

*Flanagan v. Altria Group, Inc.*,
  423 F.Supp.2d 697 (E.D. Mich. 2005) ....................................................................... 2, 3

*Fleischman v. Albany Medical Center*,
  728 F.Supp.2d 130 (N.D.N.Y. 2010) ........................................................................ 1, 2

*Gerlinger v. Amazon.com, Inc.*,
  311 F.Supp.2d 838 (N.D. Cal. 2004) ............................................................................. 5

*Hangarter v. Provident Life and Accident Ins. Co.*,
  373 F.3d 998 (9th Cir. 2004) ........................................................................................ 2

*In re Titanium Dioxide Antitrust Litig.*,
  2013 WL 1855980 (D.Md., May 1, 2013) ................................................................ 1, 5

*In re Universal Service Fund Telephone Billing Practices Litig.*,
  2008 WL 4382141 (D.Kan., Sept. 26, 2008) ............................................................ 2, 3

*Metrix Warehouse, Inc. v. Daimler-Benz Aktiengesellschaft*,
  555 F.Supp. 824 (D. Md. 1983) ................................................................................... 4

*Princo Corp. v. Int'l Trade Comm'n*,
  616 F.3d 1318 (Fed. Cir. 2010) .................................................................................... 5

*Thomas J. Kline, Inc. v. Lorillard, Inc.*,
  878 F.2d 791 (4th Cir. 1989) ........................................................................................ 1

*Thomas v. Newton Int'l Enters.*,
  42 F.3d 1266 (9th Cir. 1994) ........................................................................................ 2

*Thornberry Oil Field Servs., Inc. v. Gulf Coast Pipeline Partners, L.P.*,
  2004 WL 5503774 (S.D.Tex., Aug. 16, 2004) ............................................................. 2

*U.S. Info. Sys., Inc. v. IBEW Local Union No. 3*
  313 F.Supp.2d 213 (S.D.N.Y. 2004) ......................................................................... 2, 3

**FEDERAL STATUTES**

15 U.S.C. §§ 16(a) & (h) ....................................................................................................... 4

## I. INTRODUCTION

Plaintiffs acknowledge that Dr. Marx's opinions are purportedly based on the application of "economic methodology" to what he understands to be the facts of the case. Dr. Marx is not, however, qualified to offer such opinions, because it is undisputed that he has no training or expertise in economics. Further, Plaintiffs fail to rebut Defendants' showing that the bulk of Dr. Marx's testimony—in which he assesses credibility, draws inferences from the evidence, offers legal conclusions, and argues the case for Plaintiffs—would usurp the role of the jury. Finally, Plaintiffs fail to rebut Defendants' showing that Dr. Marx's opinion about the lack of necessity of the alleged no-cold-calling agreements to Defendants' collaborations is both irrelevant and inconsistent with the undisputed facts and the law. Dr. Marx's testimony should be excluded.

## II. ARGUMENT

### A. Plaintiffs Have Effectively Conceded That Dr. Marx's Proposed Opinions Are Inadmissible Because He Is Not An Economist

Plaintiffs have effectively conceded the inadmissibility of Dr. Marx's opinions. They state that "his ultimate conclusions are based on the application of *standard economic methodology* to the facts at hand." Opp. 4:18-19 (emphasis added). But Dr. Marx is not an economist: he does not have a degree in economics, has never studied antitrust economics, and has never taught a class in economics. Marx Depo. 10:20–11:17; *see also* Opp. 9:15-16 ("Dr. Marx … does not hold himself out as an economist.").[1] The cases cited by *both* Plaintiffs and Defendants demonstrate that Dr. Marx is therefore not qualified to offer opinions based on economic methodology. *See Thomas J. Kline, Inc. v. Lorillard, Inc.*, 878 F.2d 791, 799-800 (4th Cir. 1989) (excluding testimony of witness with general business education but no training in economics); *In re Titanium Dioxide Antitrust Litig.*, 2013 WL 1855980 (D.Md., May 1, 2013) at *6-18 (excluding testimony based on economic analysis from Yale professor of law and economics because he did not hold advanced degree in economics, while allowing similar testimony from Ph.D. economists); *Berlyn, Inc. v. Gazette Newspapers, Inc.*, 214 F.Supp.2d 530, 536-40 (D.Md. 2002) (excluding expert testimony of witness with general business experience but no training in antitrust economics); *cf. Fleischman v. Albany*

---

[1] All cited deposition excerpts are found in Ex. B to the Declaration of Greg Sergi [Dkt 559-2].

1  *Medical Center*, 728 F.Supp.2d 130, 139, 150-56 (N.D.N.Y. 2010) (allowing testimony based on

2  economic analysis from former Deputy Director for Antitrust in FTC's Bureau of Economics); *In re*

3  *Universal Service Fund Telephone Billing Practices Litig.*, 2008 WL 4382141 (D.Kan., Sept. 26,

4  2008) at *2-9 (allowing testimony based on economic analysis from Ph.D. economists)[2]; *U.S. Info.*

5  *Sys., Inc. v. IBEW Local Union No.* 3, 313 F.Supp.2d 213, 218, 227, 236-37 (S.D.N.Y. 2004)

6  (same)[3].

7        Plaintiffs' insistence that "Dr. Marx Need Not Be An Economist to Offer Admissible

8  Expert Opinion," Opp. 8:14–9:20, is not supported by the cases cited. In *Thomas v. Newton Int'l*

9  *Enters.*, 42 F.3d 1266, 1269-70 & n.3 (9th Cir. 1994), the court held that a longshore worker with

10  29 years' experience could testify as to the working conditions of longshore personnel,

11  emphasizing the "non-scientific" character of the testimony. Similarly, in *Hangarter v. Provident*

12  *Life and Accident Ins. Co.*, 373 F.3d 998, 1016-17 (9th Cir. 2004), the court held that a witness

13  with 25 years' experience in the insurance business could testify concerning industry practices and

14  standards, emphasizing again the "non-scientific" nature of the testimony. In *Thornberry Oil Field*

15  *Servs., Inc. v. Gulf Coast Pipeline Partners, L.P.*, 2004 WL 5503774 (S.D.Tex., Aug. 16, 2004) at

16  *7, the court held that a witness with over 30 years' experience valuing oil and gas properties, who

17  had acted as an expert on such valuations in approximately 150 transactions, could offer expert

18  testimony on the value of an oil and gas lease. None of these cases supports the admissibility of

19  Dr. Marx's testimony, which is based on the application of scientific methodology, *i.e.*, economic

20  analysis, *see U.S. Info Sys.*, 313 F.Supp.2d at 239 (antitrust economist uses "scientific methods"),

21  to the discovery record in this case, a task for which he has neither training nor experience.[4]

---

[2] *See* www.mhi.usc.edu/simon-wilkie-usc-professor-of-economics-communication-and-law (Dr. Wilkie is Chair of Department of Economics at USC); www.competitioneconomics.com/professionals (Dr. Williams has a Ph.D. in economics from University of Chicago).

[3] *See* www.competitionpolicyinternational.com/in-memory-of-dr-frederick-c-dunbar (Dr. Dunbar taught in Economics Departments of Tufts and Northeastern Universities).

[4] Plaintiffs cite *Flanagan v. Altria Group, Inc.*, 423 F.Supp.2d 697 (E.D. Mich. 2005) as "permitting expert testimony from [an] *expert who was not an economist* with specialized expertise developed through his experience." Opp. 8 n.6 (emphasis added). This is misleading. As

### B. Dr. Marx's Proposed Testimony Would Usurp The Role Of The Jury

Plaintiffs make no effort the distinguish the numerous cases cited by Defendants in which the courts excluded expert testimony similar to Dr. Marx's proposed testimony on the ground that it would usurp the role of the jury. *See* Mtn. 2-6 (citing cases). Moreover, the cases Plaintiffs do cite further demonstrate that Dr. Marx's testimony is not admissible.

In *U.S. Info. Sys., Inc.*, the expert, who was a Ph.D. economist, had applied economic principles to the facts, which the court determined could be of aid to the jurors. 313 F.Supp.2d at 236-37. The court distinguished that testimony from what Dr. Marx would do here: "rely[] 'almost exclusively on his interpretation of deposition testimony [and documents]'," thereby "not serv[ing] as an expert but, rather, seek[ing] to supplant the role of counsel in making argument at trial, and the role of the jury interpreting the evidence." *Id*. at 236. Moreover, the court, while permitting some of the expert economist's testimony, prohibited him from testifying—as Dr. Marx proposes to do here—"about whether a conspiracy existed or anticompetitive conduct actually occurred." *Id*. at 241. Similarly, in *In re Universal Service Fund, etc.*, the court distinguished the Ph.D. economists' application of economic principles to the facts from "parrot[ing] or recit[ing] factual evidence, without offering a valid expert opinion based on such evidence" or "attempt[ing] to lend credibility, as experts, to certain evidence relevant to disputed issues of fact." 2008 WL 4382141 at * 4.

Plaintiffs assert that "Defendants … mischaracterize Dr. Marx as having opined on matters of truth and credibility." Opp. 4:6-7. But there is no other way to characterize, for example, Dr. Marx's statements that "it 'strains credulity' that such identical agreements could have been reached in isolation"; that "[c]ertain co-conspirators used the pretext of 'embarrassment' as justification"; and that, contrary to the sworn testimony of Defendants' witnesses, "the Anti-Solicitation agreements did not have anything to do with these supposed collaborations." These are

---

the court's opinion recites, the expert in question had a Ph.D. in economics, had taught economics at the University of Virginia and the University of Chicago, and had served as the Director of the Bureau of Economics at the FTC. *Flanagan*, 423 F.Supp.2d at 698.

unquestionably opinions about truth and credibility. Counsel may be permitted to make arguments to this effect in closing, but they cannot be presented as purported "expert" testimony.[5]

### C. Dr. Marx's Opinion Whether Defendants' Agreements Were "Reasonably Necessary" Or "Essential" To Collaborations Is Inadmissible

Plaintiffs ignore Defendants' argument that one of the two criteria Dr. Marx considered in assessing whether anti-solicitation agreements are essential for successful technical collaboration—"whether the companies applied anti-solicitation agreements consistently in support of technical collaborations," Depo. 249:4-10—requires no special expertise. Defendants either consistently used no-cold-calling agreements in support of their collaborations or they did not. To the extent the issue is relevant, the jurors are perfectly capable of reaching their own conclusions about this factual question, and counsel may argue the point at trial. *See* Mtn. 6:9-15. Plaintiffs offer no response to this.

The only other criterion used by Dr. Marx to assess whether Defendants' bilateral agreements were "essential" or "reasonably necessary" for successful collaborations is "whether [the agreements] were consistent with the Department of Justice stipulations." Depo. 249:4-10. But, as explained in detail in Defendants' Joint Reply Brief in Support of Summary Judgment, the DOJ consent decree and competitive impact statement are inadmissible in this action, and any reference to them would be prejudicial to Defendants. *See* 15 U.S.C. §§ 16(a) & (h); *Metrix Warehouse, Inc. v. Daimler-Benz Aktiengesellschaft*, 555 F.Supp. 824, 825-26 (D. Md. 1983). For that reason alone, Dr. Marx's testimony based on those documents should be excluded.

In addition, as Defendants explained in their opening brief, the factual and legal premises of Dr. Marx's testimony are inaccurate. Plaintiffs do not claim, as Dr. Marx assumes they do, that a no-cold-calling agreement is essential to every technical collaboration. And, contrary to Dr. Marx's implicit assumption about the law, horizontal restraints that are ancillary to a collaboration can be

---

[5] Plaintiffs assert that Dr. Marx may "respond[] to Defendants' unsupported expert testimony that such agreements [not to recruit any of each other's employees] are common and indeed 'best practices'." Opp. 3:17-20. But Plaintiffs cite no testimony to that effect by Defendant's experts, only Dr. Snyder's testimony that he had not seen publications specifically discussing no-cold-call agreements. *Id.* (citing Snyder Depo. 44:7-10).

pro-competitive and therefore lawful. *See* Mtn. 8:7-18. A restraint is ancillary if it "appears capable of enhancing the [collaboration's] efficiency," *Princo Corp. v. Int'l Trade Comm'n*, 616 F.3d 1318, 1336 (Fed. Cir. 2010), or "may promote the success of a more extensive cooperation," *Gerlinger v. Amazon.com, Inc.*, 311 F.Supp.2d 838, 849 (N.D. Cal. 2004). Dr. Marx has conceded that anti-solicitation agreements can meet the criteria for ancillary horizontal restraints, even if they are not "essential" to a collaboration. *See* Depo. 93:9-18 ("An anti-solicitation agreement … by making a collaboration more successful than it otherwise would have been, can generate benefits for consumers even if that collaboration would have occurred in another form without the anti-solicitation agreement …."). Thus, even if it were otherwise admissible (which it is not), Dr. Marx's opinion that anti-solicitation agreements are not "essential" or "necessary" to collaborations is irrelevant.[6]

Plaintiffs argue that Dr. Marx's opinion whether Defendants' bilateral agreements were "essential" or "reasonably necessary" to their collaborations is admissible because it responds to opinions expressed by Defendants' expert economists and testimony by Defendants' executives. Opp. 4-5. But, as shown above, Dr. Marx has no expertise as an economist to offer the jury, and the fact that he purports to respond to others' opinions does not change that fact. *See In re Titanium Dioxide Antitrust Litig.*, 2013 WL 1855980 at *6-7 (testimony of Yale law and economics professor disallowed because "[his] proffered rebuttals of the defense experts' testimony" were "outside his competence"). Dr. Marx is doing nothing more than assessing credibility, opining about purpose and motive, and drawing non-expert inferences from the documentary and testimonial evidence, all of which usurps the role of the jury and is inadmissible. *See* Mtn. §III.A.

### III.    CONCLUSION

For all the foregoing reasons, Defendants respectfully submit that the proposed expert testimony of Dr. Marx should be excluded in its entirety.

---

[6] Defendants respond in their Joint Reply in Support of Summary Judgment to Plaintiffs' argument that Defendants have conceded that their bilateral agreements were per se unlawful.

Dated: February 27, 2014         By: */s/ Bradley S. Phillips*
                                         Bradley S. Phillips

GREGORY P. STONE (Bar No. 78329)
gregory.stone@mto.com
BRADLEY S. PHILLIPS (Bar No. 85263)
brad.phillips@mto.com
STEVEN M. PERRY (Bar No. 106154)
steven.perry@mto.com
BETHANY W. KRISTOVICH (Bar No. 241891)
bethany.kristovich@mto.com
MUNGER, TOLLES & OLSON LLP
355 South Grand Avenue. 35th Floor
Los Angeles, California 90071-1560
Telephone:       (213) 683-9100
Facsimile:       (213) 687-3702

Attorneys for Defendant Intel Corporation


By: */s/ George A. Riley*
        George A. Riley

GEORGE A. RILEY (Bar No. 118304)
griley@omm.com
MICHAEL F. TUBACH (Bar No. 145955)
mtubach@omm.com
CHRISTINA J. BROWN (Bar No. 242130)
cjbrown@omm.com
O'MELVENY & MYERS LLP
Two Embarcadero Center, 28th Floor
San Francisco, CA  94111-3823
Telephone:       (415) 984-8700
Facsimile:       (415) 984-8701

Attorneys for Defendant Apple Inc.


By: */s/ David C. Kiernan*
        David C. Kiernan

ROBERT A. MITTELSTAEDT (Bar No. 60359)
ramittelstaedt@jonesday.com
CRAIG A. WALDMAN (Bar No. 229943)
cwaldman@jonesday.com
DAVID C. KIERNAN (Bar No. 215335)
dkiernan@jonesday.com
JONES DAY
555 California Street, 26th Floor
San Francisco, CA 94104
Telephone:       (415) 626-3939
Facsimile:       (415) 875-5700

Attorneys for Defendant Adobe Systems, Inc.

By: */s/ Robert A. Van Nest*
    Robert A. Van Nest

ROBERT A. VAN NEST (Bar No. 84065)
rvannest@kvn.com
DANIEL PURCELL (Bar No. 191424)
dpurcell@kvn.com
EUGENE M. PAIGE (Bar No. 202849)
epaige@kvn.com
JUSTINA SESSIONS (Bar No. 270914)
jsessions@kvn.com
KEKER & VAN NEST LLP
633 Battery Street
San Francisco, CA 94111-1809
Telephone:    (415) 391-5400
Facsimile:    (415) 397-7188


By: */s/ Lee H. Rubin*
    Lee H. Rubin

EDWARD D. JOHNSON (Bar No. 189475)
wjohnson@mayerbrown.com
LEE H. RUBIN (Bar No. 141331)
lrubin@mayerbrown.com
DONALD M. FALK (Bar No. 150256)
dfalk@mayerbrown.com
MAYER BROWN LLP
Two Palo Alto Square, Suite 300
Palo Alto, CA  94306-2112
Telephone:    (650) 331-2000
Facsimile:    (650) 331-2060

Attorneys for Defendant Google Inc.

**ATTESTATION**:  Pursuant to Civil Local Rule 5-1(i)(3), the filer attests that concurrence in the filing of this document has been obtained from all signatories.

22929914.1