Richard M. Heimann (State Bar No. 63607)
Kelly M. Dermody (State Bar No. 171716)
Eric B. Fastiff (State Bar No. 182260)
Brendan P. Glackin (State Bar No. 199643)
Dean M. Harvey (State Bar No. 250298)
Anne B. Shaver (State Bar No. 255928)
Lisa J. Cisneros (State Bar No. 251473)
LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Telephone: (415) 956-1000
Facsimile: (415) 956-1008

Joseph R. Saveri (State Bar No. 130064)
James D. Dallal (State Bar No. 277826)
JOSEPH SAVERI LAW FIRM, INC.
505 Montgomery Street, Suite 625
San Francisco, CA 94111
Telephone: (415) 500-6800
Facsimile: (415) 500-6803

*Co-Lead Class Counsel*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

IN RE: HIGH-TECH EMPLOYEE ANTITRUST LITIGATION

THIS DOCUMENT RELATES TO:

ALL ACTIONS

Master Docket No. 11-CV-2509-LHK

**PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO EXCLUDE EXPERT TESTIMONY PROFFERED BY DEFENDANTS**

Date: March 20 or 27, 2014
Time: 1:30 pm
Courtroom: Room 8, 4th Floor
Judge: Honorable Lucy H. Koh

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ........................................ 1
ARGUMENT ........................................ 2
I. Defendants' Expert Testimony Lacks a Reliable Factual Foundation and Has Not Been "Test[ed] at Deposition" ........................................ 2
II. Defendants' Statistics on Compensation and Hiring Rates Will Unfairly Confuse and Mislead the Jury ........................................ 7
III. Dr. Murphy's Weather and Census Bureau "Analyses" are Unreliable and Irrelevant ........................................ 10
CONCLUSION ........................................ 11

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Apple, Inc. v. Samsung Elecs. Co.*, No. 11-CV-01846, 2013 U.S. Dist. LEXIS 160188 (N.D. Cal. Nov. 6, 2013)........................... 6

*Bigelow v. RKO Radio Pictures, Inc.*, 327 U.S. 251 (1946)........................................................................................ 8

*Champagne Metals v. Ken-Mac Metals, Inc.* 458 F.3d 1073 (10th Cir. 2006)............................................................................ 5

*Cont'l Ore Co. v. Union Carbide & Carbon Corp.*, 370 U.S. 690 (1962)........................................................................................ 6

*In re High-Tech Employee Antitrust Litig.*, No. 11-CV-02509, 2013 U.S. Dist. LEXIS 153752 (N.D. Cal. Oct. 24, 2013)........................... 4

*In re Live Concert Antitrust Litig.*, 247 F.R.D. 98 (C.D. Cal. 2007)............................................................................... 8

*In re Wholesale Grocery Prods. Antitrust Litig.*, No. 09-MD-2090, 2012 U.S. Dist. LEXIS 103215 (D. Minn. July 16, 2012)............................ 8

*IP Innovation L.L.C. v. Red Hat, Inc.*, 705 F. Supp. 2d 687 (E.D. Tex. 2010).................................................................... 4

*Loeffel Steel Prods. v. Delta Brands, Inc.*, 387 F. Supp. 2d 794 (N.D. Ill. 2005)..................................................................... 4

*Mooring Capital Fund, LLC v. Knight*, 388 Fed. Appx. 814 (10th Cir. 2010)..................................................................... 5

*Oracle Am., Inc. v. Google Inc.*, No. C 10-03561, 2011 U.S. Dist. LEXIS 136172 (N.D. Cal. Nov. 28, 2011)............................ 7

*Oracle USA, Inc. v. SAP AG*, No. C 07-1658, 2011 U.S. Dist. LEXIS 98816 (N.D. Cal. Sept. 1, 2011)................................. 5

*Padgett v. Southern R. Co.*, 396 F.2d 303 (6th Cir. 1968)............................................................ 6

*Therasense, Inc. v. Becton Dickinson and Co.*, Nos. C 04-02123, C 04-03327, C 04-03732, & C 05-03117, 2008 WL 2323856 (N.D. Cal. May 22, 2008)........................................................................................ 1, 3, 4

**Rules**

Fed. R. Civ. P. 26.................................................................................................... 7

Fed. R. Civ. P. 403.................................................................................................. 7, 9

Fed. R. Civ. P. 703.................................................................................................. 3, 4

**INTRODUCTION**

Defendants appear to intend to argue that their conspiracy had nothing to do with suppressing employee compensation and mobility. Defendants seek to support this defense with testimony from their experts, all of whom simply adopted as gospel Defendants' interrogatory responses and employee declarations. Such testimony should not be allowed because, as explained in Plaintiffs' Motion, such "spoon feeding" of facts to experts would impermissibly allow lawyer argument and unsupported hearsay to be admitted as expert testimony, thus confusing and misleading the jury as to what is evidence and what is not. *Therasense, Inc. v. Becton Dickinson and Co.*, Nos. C 04-02123, C 04-03327, C 04-03732, & C 05-03117, 2008 WL 2323856 (N.D. Cal. May 22, 2008). Defendants claim these declarations and responses have been "test[ed] at deposition." To the contrary, Defendants' experts relied on brand new "supplemental" and "amended" interrogatory answers disclosed near or on the close of merits discovery, and invoked attorney-client privilege to shield the declarations from scrutiny. Defendants also never address the discrepancies between the declarations and the record evidence already identified by the Court. This is in contrast to Dr. Marx, who examined the relevant evidence as a whole, and relied—properly—on contemporaneous business records and witness testimony.

With respect to damages, Defendants seek to argue to the jury that, because absolute compensation levels of the Class increased during the conspiracy, the conspiracy could not have had an anticompetitive effect. Such an argument is so improper as a matter of law and economics that even their own economists do not subscribe to it—as demonstrated by Defendants' opposition brief, which cites no such testimony by them. Defendants also offer no new defense of proposed testimony by Dr. Murphy regarding weather patterns and datasets that are unreliable and irrelevant.

The rules of evidence exist to prevent exactly these sorts of strategies. The Court should not allow Defendants to mislead the jury. Plaintiffs' motion should be granted.

## ARGUMENT

### I. Defendants' Expert Testimony Lacks a Reliable Factual Foundation and Has Not Been "Test[ed] at Deposition"

Defendants' experts should not be permitted to testify about facts they adopted from the declarations and interrogatory responses Defendants' counsel prepared. Contrary to their claims, such testimony would be inherently unreliable and has never been subject to "testing" through discovery.

**First**, Defendants here have engaged in exactly the kind of discovery abuse as the parties in *Therasense*. Defendants say they "disclosed the declarations and interrogatory responses during fact discovery—before expert discovery began—and plaintiffs deposed all the cited declarants." Defendants' Memorandum in Opp. ("Opp."), Dkt. 597 at 2. Therefore, they say, "the witnesses and facts relied on by defendants' experts were disclosed during fact discovery and tested at deposition." *Id.* at 3. Defendants omit some important facts. Fact discovery in this case closed March 29, 2013. Dkt. 362 at 1. The following are the interrogatory responses principally relied on by Defendants' experts, including the dates Defendants provided them to Plaintiffs:

- Defendant Apple Inc.'s Amended Responses to Plaintiffs' Second Set of Interrogatories, **March 29, 2013** (*See* Dkt. 607, Decl. of Dean M. Harvey ("Harvey Decl."), Ex. 195);
- Intel's Objections and Amended and Supplemented Responses to Plaintiffs' Second Set of Interrogatories, **March 12, 2013** (Harvey Decl. Ex. 198);
- Defendant Pixar's Supplemental Objections and Responses to Plaintiffs' Second Set of Interrogatories, **March 18, 2013** (Harvey Decl. Ex. 201);
- Defendant Adobe Systems Inc.'s Amended Response to Plaintiffs' Second Set of Interrogatories Directed to Defendant Adobe Systems Inc., **March 20, 2013** (Harvey Decl. Ex. 196);
- Defendant Lucasfilm Ltd.'s Supplemental Objections and Responses to Plaintiffs' Second Set of Interrogatories, **March 25, 2013** (Harvey Decl. Ex. 200); and
- Google Inc.'s Supplemental Responses to Plaintiffs' Second Set of Interrogatories **March 29, 2013** (Declaration of Brendan Glackin (2/27/2014) ("Glackin Decl.") Ex. 2).

These purported "amended" and "supplemental" responses were served, without permission, months after the due date for responding to the interrogatories. More importantly, however, by serving them right before or even on the discovery cut-off, Defendants foreclosed exactly the "test[ing] at deposition" they claim justifies their use. For example, as explained in Plaintiffs'

Motion, Dr. Murphy cites "interrogatory responses as his only basis for various factual assertions on 35 occasions[,]" including citations to Apple's "Amended Responses" and Google's "Supplemental Responses" to the interrogatories. Plaintiffs' Notice of Motion and Motion to Exclude Expert Testimony Proffered by Defendants And Memorandum of Law in Support, Dkt. 565 at 7, n. 23 ("Motion"). However, those "Amended" and "Supplemental" responses were served on March 29, 2013—*the last day of fact discovery*.[1] Defendants have acknowledged that the Court in *Therasense* correctly excluded expert testimony because "The entire foundational project was a secret clearly intended to thwart discovery into the foundation." Opp. at 2 (quoting *Therasense*, 2008 WL 2323856, at *3. The same is true here.

The same is also true with respect to the declarations. Here, Defendants completely ignore the fact that, as established in Plaintiffs' motion, they asserted the attorney-client privilege to foreclose cross-examination on them. Motion at 3, n. 1. For example, in the cited passage, defense counsel instructed the declarant to refuse to answer a question about whether the lawyer drafting the declaration had *omitted* from the declaration any additional factual matter communicated in any fashion to her. *Id*. Thus, the facts here are on all fours with those in *Therasense*: the experts here rely on testimony that Defendants concealed "from discovery during all phases of discovery under a claim of privilege." Opp. at 2 (quoting *Therasense*, 2008 WL 2323856, at *3).

**Second**, timeliness and abuse of the privilege are not the only improprieties. The Declarations upon which the experts rely are inherently unreliable and not the type of information upon which proper expert testimony may be based. Rule 703 requires that if an expert seeks to

[1] Defendants' interrogatory responses were inadequately disclosed during discovery in different ways. For example, Google's "Supplemental" responses and Intel's "Amended and Supplemented" responses in 2013 made substantive additions to the 2012 responses—so Plaintiffs could not ask questions about the new parts during discovery, even though Google verified the original 2012 responses. Glackin Decl. Exs. 3, 4 (redlines against original responses). Intel did not verify its 2012 responses, and neither did Apple, so Plaintiffs never even had witnesses to depose on these responses. Glackin Decl. ¶ 5. The fact that Apple and Intel waited over a year to find someone to verify the interrogatory responses reinforces their lawyer-crafted and unreliable nature.

Only one defense expert (Eric Talley) cites—*one time*—to an interrogatory response served in a timely fashion: Intuit's responses served April 5, 2012 (Harvey Decl. Ex. 199). Talley Report at 18, n. 68 (Harvey Decl. Ex. 28).

testify about inadmissible hearsay, the offering party must establish that "experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject[.]" *See Loeffel Steel Prods. v. Delta Brands, Inc.*, 387 F. Supp. 2d 794, 808 (N.D. Ill. 2005) ("[W]hile Rule 703 was intended to liberalize the rules relating to expert testimony, it was not intended to abolish the hearsay rule and to allow a witness, under the guise of giving expert testimony, to in effect become the mouthpiece of the witnesses on whose statements or opinions the expert purports to base his opinion."). Defendants make no such showing; they never even mention Rule 703 in their papers. Indeed, this Court has already identified this defect and deemed the factual foundation of the testimony at issue as having "diminished probative value" on the grounds that "many of the claims made in those declarations are inconsistent with the discovery Plaintiffs obtained from Defendants." *In re High-Tech Employee Antitrust Litig.*, No. 11-CV-02509, 2013 U.S. Dist. LEXIS 153752, at *144 (N.D. Cal. Oct. 24, 2013). Testimony about hearsay declarations inconsistent with contemporaneous business records, party admissions and other evidence should be excluded. *See, e.g.*, *IP Innovation L.L.C. v. Red Hat, Inc.*, 705 F. Supp. 2d 687, 690-91 (E.D. Tex. 2010) (excluding opinion founded on "blatant oversight" and assumptions contrary to record evidence).

Judge Alsup reached the same conclusion in *Therasense*, 2008 WL 2323856. Again, Defendants miss the point when they claim *Therasense* turned only on the untimeliness of the discovery. To the contrary, Judge Alsup made clear the heightened standard a designated expert must satisfy in relying on "client-prepared" materials, explaining: "The more central the 'fact' issue is in the overall opinion and overall trial and the more controverted the 'fact' is in the context of the case, the more due diligence an expert should exercise before merely taking a partisan's word." *Id.* at *4. Contrary to Defendants' mischaracterizations (*see* Opp. at 2-3), the court's identification of "[o]ne of the worst abuses in civil litigation"—"the attempted spoon-feeding of client-prepared and lawyer-orchestrated 'facts' to a hired expert who then 'relies' on the information to express an opinion"—occurred here. *Id.* at *1. As in *Therasense*, this Court should likewise exclude the Defendants' various experts' testimony where "lawyers [have] hire[d] experts to promulgate favorable hearsay to the jury." *Id*. at *2.

Additional federal authority supports *Therasense*. *See, e.g.*, *Mooring Capital Fund, LLC v. Knight*, 388 Fed. Appx. 814, 820 (10th Cir. 2010) (affirming the exclusion of testimony on the grounds that even the expert economist's "years of experience and other qualifications do not overcome the district court's concern about lack of independent investigation in this case"); *Oracle USA, Inc. v. SAP AG*, No. C 07-1658, 2011 U.S. Dist. LEXIS 98816, at *35 (N.D. Cal. Sept. 1, 2011) (overturning a jury verdict in Oracle's favor where Oracle's damages expert relied on evidence from "self-serving testimony from [Oracle's] executives. . . ."). Each case holds that an expert may not be used as a mouthpiece for lawyers' arguments or as a substitute for percipient witness testimony.

The jury will likely give special credence to the testimony of a witness identified by the Court as an expert. In its gatekeeper function, the Court must be attentive to witnesses offered to testify as to facts for which there is questionable—or absent—record evidence support. Such testimony will mislead and confuse the jury. *Champagne Metals v. Ken-Mac Metals, Inc.* 458 F.3d 1073 (10th Cir. 2006), is on point. There, the Tenth Circuit affirmed the exclusion of an economist's testimony at the summary judgment stage because the expert's "opinions lacked foundation because they were based on the self-serving statements of an interested party." *Id.* at 1080, n.4 (quotation and alteration marks omitted). Specifically, the court rejected the very argument that Defendants make here, namely, that the expert's testimony was merely assuming certain facts before they are affirmatively established at trial by witness testimony. *Id*. The court found that nowhere in the expert's report was it clear that these facts are merely "assumed," and that "[e]xpert testimony that fails to make clear that certain facts the expert describes as true are merely assumed for the purpose of an economic analysis may not assist the trier of fact at all and, instead, may simply result in confusion." *Id*. Likewise, here, permitting testimony to facts—largely untested or inconsistent with the record—adopted from Defendants' declarations and interrogatories would mislead and confuse the jury into believing these contested facts are already established.

This precedent is well-settled. In *Padgett v. Southern R. Co.*, the Sixth Circuit explained the logic underlying the exclusion of such testimony in the context of statements made to a

physician by the interested party. 396 F.2d 303, 308 (6th Cir. 1968). The *Padgett* court noted that exclusion of such testimony is warranted "based on the familiar hearsay doctrine and is designed, in practicality, to exclude the introduction of self-serving declarations of the patient under the guise of expert testimony." *Id.* Indeed, Defendants themselves have incorrectly attacked Plaintiffs' expert Dr. Matthew Marx and sought to exclude his testimony on these very grounds. *See* Joint Motion to Exclude the Expert Testimony of Matthew Marx at 2, Dkt. No. 559. This criticism is inaccurate and unfair. While Defendants' experts improperly rely on attorney-drafted employee declarations, Dr. Marx correctly relies on contemporaneous business records and witness admissions against interest to provide some of the factual support for his opinions—opinions that are also based on his expertise about managing technological collaborations.[2] *Compare*, *e.g.*, Nov. 25, 2013 Murphy Report fns. 25, 33, 34, 36-44, 46, 47, 50-52, 55, 64, 65, 68, 73, 74, 79-82, 91, 92, 95, 96, 98, 99, 102, and 103 (Harvey Decl. Ex. 25) (instances in which Dr. Murphy, an individual with no experience or expertise in managing technological collaborations, relies exclusively and uncritically on Defendants' interrogatory responses) *with* Oct. 28, 2013 Marx Report, Exs. 1 and 2 (Harvey Decl. Ex. 12) (Dr. Marx's relevant expertise, and the extensive contemporaneous business records and testimony on which his opinions are based).[3]

The two cases cited by Defendants are inapposite. They do not rehabilitate their experts' use of these attorney-drafted declarations and interrogatories. *See* Opp. at 2. Both cases involved experts relying on other expert testimony regarding *technical* facts of a type reasonably relied upon by experts. There was no issue about the tardy production of the underlying factual matter as here. And there was no indication, as is the case here, that these facts were inconsistent with the evidence. *See Apple, Inc. v. Samsung Elecs. Co.*, No. 11-CV-01846, 2013 U.S. Dist. LEXIS 160188, at *40 (N.D. Cal. Nov. 6, 2013) (relying on "Apple's technical experts"); *Oracle Am.*,

---

[2] In contrast, Defendants' experts have no actual expertise in the area of technological collaborations yet seek to offer an opinion—based on the improper material discussed above.

[3] Further, as explained in Plaintiffs' Consolidated Opposition to Defendants' Motions for Summary Judgment, none of Defendants' experts performed the legally required inquiry of evaluating Defendants' misconduct by examining the evidence as a whole, as Dr. Marx did. Motion Dkt. 603 at 24-32. Instead, Defendants and their experts look only to selective and self-serving evidence regarding each Defendant separately, improperly "wiping the slate clean after scrutiny of each." *Cont'l Ore Co. v. Union Carbide & Carbon Corp.*, 370 U.S. 690, 699 (1962).

*Inc. v. Google Inc.*, No. C 10-03561, 2011 U.S. Dist. LEXIS 136172, at *7 (N.D. Cal. Nov. 28, 2011) (finding reliance acceptable where based on "facts supplied by Google's engineers" and on "documentary evidence for the technical points").

**Third**, Defendants say they "intend to call witnesses and introduce documents at trial to establish the facts set forth in the declarations and interrogatory answers." Opp. at 2. This is a reason to *grant* the motion, not to deny it. Plaintiffs agree that if a witness testifies in court to a fact previously stated in a declaration on which the expert has relied, then the expert may discuss that *non-hearsay* trial testimony. However, if Defendants seek to proffer testimony from an expert on some new document that she did not cite in her report, then that makes the testimony *less* admissible—for failure to meet the disclosure requirements of Rule 26—not *more* admissible. To hold otherwise under Rule 26 would turn the trial into an ambush. Plaintiffs have relied on Rule 26 and had no notice to ask questions at deposition about a document that the expert did not cite. In fact, in most cases, Defendants' experts cited very few documents or depositions, relying primarily on material they adopted out of lawyer-crafted interrogatory responses and declarations.

## II. <u>Defendants' Statistics on Compensation and Hiring Rates Will Unfairly Confuse and Mislead the Jury</u>

Rule 403 of the Federal Rules of Evidence gives this Court discretion to exclude even relevant evidence if its probative value is substantially outweighed by its potential to confuse or mislead the jury. Here, testimony about the absolute upward movement of compensation and hiring trends during the class period, even if relevant within the extremely broad meaning usually given to that term, will not meaningfully assist the jury's understanding of the facts and issues in the case. In fact, Defendants' opposition makes fairly clear that obfuscation is the express purpose of this evidence.

It is well-established that Plaintiffs may establish antitrust impact and an estimate of damages through proof of the difference between actual hiring rates and wage levels with the rates "if the restraints had not been imposed." *Bigelow v. RKO Radio Pictures, Inc.*, 327 U.S. 251, 263 (1946). Dr. Leamer's regression models and testimony make this "but for" showing.

They provide the comparison between the anti-competitive compensation levels and what those levels would have been in a free market but for Defendants' conspiracy. To do so, he controls for differences between the periods—such as growth in the tech sector that formed part of the backdrop for the conspiracy.

On the other hand, Defendants seek to offer expert testimony as to absolute hiring rates and wage levels with no further explanation. This will be confusing and prejudicial. Indeed, such an inference—that absolute increases in hiring rates and wage levels indicate no anticompetitive effect—is contrary to settled antitrust law and principles of economics. In a case involving an agreement to raise prices, courts have long recognized that a decrease in prices, or other change in conditions favorable to the victim, does not disprove antitrust injury. *See, e.g.*, *In re Live Concert Antitrust Litig.*, 247 F.R.D. 98, 139 (C.D. Cal. 2007) (finding that "antitrust impact still exists so long as the price is above the competitive level" and "whether or not the price is set above or below the competitive level can only be determined through one of the methodologies proposed by Plaintiffs' expert (yardstick approach, before-and-after approach, or regression analysis)"); *see also In re Wholesale Grocery Prods. Antitrust Litig*., No. 09-MD-2090, 2012 U.S. Dist. LEXIS 103215, at *39 (D. Minn. July 16, 2012) (recognizing that "a price may be supra-competitive without actually increasing if a competitive price would still be lower than the price charged"). Defendants fail when they attempt to distinguish the Plaintiffs' cases on the grounds that these findings occurred at the class certification stage. The procedural posture of those cases does not affect their teachings about the misleading nature of absolute price movement in illustrating antitrust injury. In fact, they apply with greater force to evidence to be presented to a jury.

Defendants wrongly accuse Plaintiffs of seeking to exclude "probative" evidence that is simply unhelpful to Plaintiffs' case. Opp. at 4. Defendants claim that "Defendants' experts have shown in their reports, and explained in their depositions, that the upward compensation and hiring trends during the class period undermine plaintiffs' theory that compensation was suppressed." *Id.* Defendants point to no passages in their experts' reports that express this opinion—presumably because Defendants' experts, like Dr. Stiroh, know that it does not. See Opp. at 8 (quoting deposition of Lauren Stiroh, Ph.D.). Instead, Defendants' strategy appears to

be to have their experts present charts and tables about the upward trends in compensation and hiring and then through attorney argument (or insinuation) mislead the jury into concluding that there could be no damage if absolute compensation levels increased during the conspiracy period. This is impermissible under Rule 403.

Defendants claim that Plaintiffs "rely heavily" on this kind of testimony themselves, citing to the "illustrative" depiction of before-and-after data that Dr. Leamer described in his original October 1, 2012 report in support of class certification (Harvey Decl. Ex. 4). Opp. at 5. Defendants again mischaracterize the record. As Dr. Leamer explained to them repeatedly the whole point of the "informal" assessment of trends, i.e., by way of "snapshot" static reporting, was to explain the *need* for a regression analysis:

- "[T]his is the work that I'm relying on trying to just introduce you to the before and after kind of thinking." Glackin Decl. Ex. 1, Deposition of Edward Leamer (10/26/2012) ("Leamer Dep."), 378:24-379:1.
- "[T]hat question reveals that you understand why we need to go to regression, that you can't do damage analysis in this simple table." Leamer Dep. 380:10-13.
- "We're not doing damage analysis here." Leamer Dep. 380:20.

Or as Dr. Leamer explained with respect to the section of the October, 2012 report cited by the Defendants (Harvey Decl. Ex. 4):

> [Paragraphs] 137, 138 and 139 are – are a search for appropriate comparison periods. It's a casual informal search. And the goal is to make it clear to you that a casual informal search is not the way to go. We need to use a regression and control for the differences in the periods.

Leamer Dep. 382:8-15. In other words, the point of the "illustrative" look at the data is to explain the need for regression analysis, not to draw substantive inferences from it, as Defendants seem to suggest they will do. However, if Defendants think Plaintiffs are trying to have it both ways, they will be relieved to learn that Plaintiffs have no intent of introducing this "illustrative" work at trial, for the same reason: it is not probative of any relevant fact and would be wasteful and mislead the jury.[4]

---

[4] Defendants point to other places where Dr. Leamer has referred to compensation data. Opp. at 6. Of course Dr. Leamer references compensation data—it is central to the regression analysis. However he never purports to use it in the way Defendants suggest—namely, that by simply looking at a line showing an average over time one can draw conclusions about whether or not the conspiracy had impact.

Defendants' arguments about hiring trends similarly lack merit. Defendants' *lawyers* say that:

> If, however, hiring occurred during the class period at the same or higher rates than outside it, that would tend to show that any reduction in cold calling was replaced by other recruiting methods, thus eliminating or reducing any purported impact on recruiting (and, on plaintiffs' theory, compensation).

Opp. at 7. However, they cite no *expert* who says this because, as trained economists, their experts know it to be false. Defendants cite Dr. Stiroh's report for the proposition that "the actual hiring trends themselves tend to rebut plaintiffs' wage suppression claim, as a matter of basic supply/demand principles and plaintiffs' 'information' theory." *Id.* (citing Stiroh Rep. Nov. 25, 2013 at ¶¶ 95-102) (Harvey Decl. Ex. 27). But this part of Dr. Stiroh's report discusses the trend of inter-defendant hiring, not the generic trend of hiring at the Defendant companies; this is not one of the passages addressed by the instant motion. *See* Motion at 8 (citing Stiroh Report at 9-32, ¶¶ 20-21, 24, 26-30, 33-34, 36-38, 42, 44-45, 48-50, 53, 55-56, 58, 59-60, 63, 65, 67, 68-69, 72-75, 77, 79-80, and accompanying Exhibits III.1-53) (Harvey Decl. Ex. 27).

## III. Dr. Murphy's Weather and Census Bureau "Analyses" are Unreliable and Irrelevant

Dr. Murphy's testimony using daily weather patterns and national wage data from the U.S. Census Bureau to "illustrate" Dr. Leamer's regression model should be excluded. Dr. Leamer has fully set forth his criticisms of Dr. Murphy's analyses in his July 12, 2013 report, and Defendants' expert has failed to adequately address these weaknesses.

Defendants assert that Dr. Murphy is "substituting temperature for defendants' compensation data" in Dr. Leamer's regression model to "illustrate flaws" in the Plaintiffs' model. Opp. at 11. On the contrary, the only flaw revealed by Dr. Murphy's substitution of Chicago daily temperature for compensation data is the Defendants' failure to acknowledge the basic fact that the employee compensation levels at issue in this case were the result of a deliberate decision-making process by the Defendants. As Dr. Leamer explained, Dr. Murphy's use of daily weather patterns is "not connected to any factual evidence that describes how these

firms chose compensation levels." Rebuttal Supplemental Expert Report of Edward E. Leamer, Ph.D. at ¶¶ 14, 49 (Harvey Decl. Ex. 8).

Dr. Murphy's testimony relying on Census Bureau American Community Survey ("ACS") information should similarly be excluded as unreliable. Census information is not collected with the intention of accurately reporting individual wage data, but rather to provide the federal government with income statistics necessary to evaluate need for federal monies. Moreover, the methodology and the survey design of the ACS do not require respondents to independently verify their reported income information or verify the income information they report for others in their household, and improperly muddle two years of data in reporting income. The ACS information is so badly flawed for the purposes of tracking occupational wages over time that Dr. Murphy's opinions using these datasets should be excluded.

**CONCLUSION**

For the foregoing reasons, the Plaintiffs respectfully request that this Court grant their motion.

Dated: February 27, 2014

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP

By: */s/ Brendan P. Glackin*

Richard M. Heimann (State Bar No. 63607)
Kelly M. Dermody (State Bar No. 171716)
Eric B. Fastiff (State Bar No. 182260)
Brendan P. Glackin (State Bar No. 199643)
Dean M. Harvey (State Bar No. 250298)
Anne B. Shaver (State Bar No. 255928)
Lisa J. Cisneros (State Bar No. 251473)
LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Telephone: (415) 956-1000
Facsimile: (415) 956-1008

Darsana Srinivasan (*pro hac vice*)
LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
250 Hudson Street, 8th Floor
New York, New York 10013-1413
Telephone: (212) 355-9500
Facsimile: (212) 355-9592

Joseph R. Saveri (State Bar No. 130064)
James D. Dallal (State Bar No. 277826)
JOSEPH SAVERI LAW FIRM, INC.
505 Montgomery Street, Suite 625
San Francisco, CA 94111
Telephone: (415) 500-6800
Facsimile: (415) 500-6803

*Co-Lead Class Counsel*