# EXHIBIT 1

HIGHLY CONFIDENTIAL

1  UNITED STATES DISTRICT COURT
2  NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION
3
4  ---------------------------
5  IN RE: HIGH-TECH EMPLOYEE   )
6  ANTITRUST LITIGATION        ) No. 11-CV-2509-LHK
7  ---------------------------
8
9  HIGHLY CONFIDENTIAL
10
11  VIDEOTAPED DEPOSITION OF EDWARD LEAMER
12  San Francisco, California
13  Friday, October 26, 2012
14  Volume I
15
16
17
18
19
20  Reported by:
21  ASHLEY SOEVYN
22  CSR No. 12019
23  Job No. 1545691
24
25  PAGES 1 - 476

Page 1

HIGHLY CONFIDENTIAL

```
 1   of calculation that's implied by the conduct          16:54:25
 2   variables.                                            16:54:27
 3       Q.   Did you include one-time compensation        16:54:28
 4   events in your average?                               16:54:29
 5       A.   One time compensation events?                16:54:30
 6       Q.   Sign-up incentives you talk about in your    16:54:32
 7   report, for example?                                  16:54:34
 8       A.   I often have had the new employees           16:54:35
 9   excluded.                                             16:54:40
10       Q.   Did you?                                     16:54:42
11       A.   And in this data set, I'm not entirely       16:54:43
12   sure.                                                 16:54:48
13       Q.   Does it indicate you have excluded           16:54:49
14   employees, you have a number of employees on the      16:54:50
15   left-hand side?                                       16:54:51
16       A.   Well, I'd said -- you see note No. 1, it     16:54:56
17   says, "Changes in compensation measured only on       16:54:57
18   employees that did not switch jobs from previous      16:54:59
19   year."                                                16:55:01
20       Q.   You have an opinion that the years 2004 and  16:55:03
21   2011 are significant useful comparisons?              16:55:06
22       A.   Well, this is hypothetical.  So if you look  16:55:14
23   at this data set, you might think that 2011 was a     16:55:16
24   period of time of rapid expansion in the tech         16:55:25
25   sector, and 2004 was the aftermath of the tech        16:55:26
```

Page 377

| | | |
|---|---|---|
| 1 | downturn. And suppose then, you use them as | 16:55:29 |
| 2 | comparison years of before relevant -- before and | 16:55:33 |
| 3 | after years, that gives you an average increase in | 16:55:35 |
| 4 | compensation that's around 10 percent. | 16:55:40 |
| 5 | Q.   Why not use 2010 as your after period? | 16:55:43 |
| 6 | A.   Well, that's perfectly good, we can go with | 16:55:47 |
| 7 | that direction, but we have to talk about whether | 16:55:50 |
| 8 | which is the relevant comparison. And the thing is | 16:55:52 |
| 9 | that 2008 and '-9 were definitely recession periods. | 16:55:57 |
| 10 | 2010 was the beginning of the aftermath, maybe 2011 | 16:56:01 |
| 11 | was a more normal period. I'm not saying -- I'm not | 16:56:07 |
| 12 | saying yes. I'm not endorsing what I did, the | 16:56:09 |
| 13 | specifics of what I did. | 16:56:12 |
| 14 | The point is I'm trying to communicate how | 16:56:15 |
| 15 | the before and after calculation is done, where you | 16:56:17 |
| 16 | find a relevant before period, a relevant after | 16:56:20 |
| 17 | period, and you compute what would have happened had | 16:56:22 |
| 18 | the interim -- the period in which the agreement was | 16:56:25 |
| 19 | in place, what would have happened if it was more | 16:56:28 |
| 20 | like the before and after. | 16:56:31 |
| 21 | The regression has a much more | 16:56:33 |
| 22 | sophisticated way of identifying before and after. | 16:56:35 |
| 23 | Q.   Your -- (Cross-talking.) | 16:56:38 |
| 24 | A.   Please don't think that -- that this is the | 16:56:38 |
| 25 | work that I'm relying on trying to just introduce | 16:56:38 |

| | | |
|---|---|---|
| 1 | you to the before and after kind of thinking. | 16:56:42 |
| 2 | Q.   Under your Figure 18, both 2010 and 2011 | 16:56:46 |
| 3 | were periods of tepid recovery? | 16:56:48 |
| 4 |    A.   True. | 16:56:52 |
| 5 |    Q.   You don't distinguish between the two, do | 16:56:53 |
| 6 | you? | 16:56:55 |
| 7 |         MR. GLACKIN:  Objection, vague. | 16:56:55 |
| 8 |         THE WITNESS:  Well, like I said before, | 16:56:56 |
| 9 | this is an illustration.  This is meant to be a | 16:56:59 |
| 10 | warm-up to the regression analysis.  If you find it | 16:57:01 |
| 11 | confusing and you find regression analysis crystal | 16:57:10 |
| 12 | clear, then simply don't read this. | 16:57:15 |
| 13 | BY MR. PICKETT: | 16:57:18 |
| 14 |    Q.   If we use 2010 instead of 2011, you | 16:57:18 |
| 15 | wouldn't have an average 10 percent increase, would | 16:57:23 |
| 16 | you? | 16:57:25 |
| 17 |    A.   This was exactly my point is that you have | 16:57:25 |
| 18 | to have a relevant comparison period in order to do | 16:57:28 |
| 19 | the damage estimate.  And that's what the regression | 16:57:28 |
| 20 | does, exactly what it does. | 16:57:29 |
| 21 |    Q.   You put this in, sir, so I am entitled to | 16:57:31 |
| 22 | cross-examine you. | 16:57:36 |
| 23 |    A.   But I'm telling you your questions are | 16:57:38 |
| 24 | exactly what I want you to be asking, which is what | 16:57:39 |
| 25 | other relevant periods for making a comparison.  And | 16:57:41 |

HIGHLY CONFIDENTIAL

| | | |
|---|---|---|
| 1 | you're raising it -- you're making the step in the | 16:57:45 |
| 2 | right direction to get to regression, which is | 16:57:48 |
| 3 | answering this question in a more complex and more | 16:57:52 |
| 4 | appropriate way, rather than sort of this ad hoc | 16:57:54 |
| 5 | discussion about what is a comparison period and | 16:57:55 |
| 6 | what is not. | 16:57:59 |
| 7 |     Q.  Why did you use 2011 as your -- part of | 16:58:00 |
| 8 | your benchmark rather than 2010, because it's 3.2 | 16:58:03 |
| 9 | percent higher? | 16:58:07 |
| 10 |     A.  In order to encourage you to ask me why. | 16:58:08 |
| 11 | And that question reveals that you understand why we | 16:58:11 |
| 12 | need to go to regression, that you can't do damage | 16:58:14 |
| 13 | analysis in this simple table. | 16:58:17 |
| 14 |     Q.  Let me try it again.  Why did you use 2011 | 16:58:19 |
| 15 | rather than 2010 for part of your benchmark because | 16:58:21 |
| 16 | it's 3.2 percent lower? | 16:58:24 |
| 17 |         MR. GLACKIN:  Objection, asked and | 16:58:26 |
| 18 | answered. | 16:58:26 |
| 19 |         THE WITNESS:  There's no liquidation here. | 16:58:28 |
| 20 | We're not doing damage analysis here.  We're just | 16:58:29 |
| 21 | illustrating how the before and after works.  If you | 16:58:30 |
| 22 | find that confusing, then you don't have to look at | 16:58:32 |
| 23 | it. | 16:58:47 |
| 24 | BY MR. PICKETT: | 16:58:47 |
| 25 |     Q.  Okay.  I don't find it confusing.  I want | 16:58:47 |

| | | |
|---|---|---|
| 1 | to know why you used 2011 data rather than 2010 for | 16:58:50 |
| 2 | purposes of creating the benchmark based on Figure | 16:58:52 |
| 3 | 19? | 16:58:52 |
| 4 |       MR. GLACKIN: I'm going to object to | 16:58:53 |
| 5 | that -- that's the third time in a row you've asked | 16:58:53 |
| 6 | the exactly the same question, you've gotten an | 16:58:55 |
| 7 | answer and we're wasting time. | 16:58:56 |
| 8 |       THE WITNESS: I'd be happy if you suggest a | 16:58:59 |
| 9 | table to be revised, I would be happy to change that | 16:59:01 |
| 10 | to 2004, '10, '11, take that average and do the | 16:59:06 |
| 11 | damage analysis with respect to that. If you | 16:59:10 |
| 12 | think -- if that's your recommendation, then it's | 16:59:10 |
| 13 | pretty straightforward and make that calculation. | 16:59:10 |
| 14 | BY MR. PICKETT: | 16:59:19 |
| 15 |   Q. And you'd be fine with that? | 16:59:19 |
| 16 |   A. Well, I don't know that I would be fine. I | 16:59:21 |
| 17 | think we ought to use the regression analysis. The | 16:59:23 |
| 18 | whole point of it it's just that -- as a warm-up of | 16:59:26 |
| 19 | doing regression in order so you can sensibly think | 16:59:29 |
| 20 | about what the control variables are. And you're | 16:59:32 |
| 21 | completely misinterpreting this paragraph. | 16:59:34 |
| 22 |   Q. Don't you say in paragraph 136 that, "An | 16:59:37 |
| 23 | estimate of the effect of the Non-Compete Agreements | 16:59:39 |
| 24 | on employee compensation can be found by contrasting | 16:59:42 |
| 25 | compensation during the periods when the Agreements | 16:59:50 |

Page 381

```
 1   were in effect with compensation before and after        16:59:54
 2   the Non-Compete Agreements"?                             16:59:56
 3        A.   That's what the conduct variable does.  It    16:59:58
 4   turns on and off according to these periods.             17:00:00
 5        Q.   So Paragraphs 136, 137, 138, 139, Figure       17:00:05
 6   19, paragraph 140 and -- are irrelevant to your          17:00:08
 7   report?                                                  17:00:12
 8        A.   No, 136 is completely relevant.  It applies   17:00:13
 9   both to the regression analysis and to the table.        17:00:17
10   Table 137, 138, and 139 are -- are a search for          17:00:24
11   appropriate comparison periods.  It's a casual           17:00:27
12   informal search.  And the goal is to make it clear       17:00:31
13   to you that a casual informal search is not the way      17:00:40
14   to go.  We need to use a regression and control for      17:00:44
15   the differences in the periods.                          17:00:48
16        Q.   Did you engage in any other casual,            17:00:50
17   informal searches associated with any of the other       17:00:52
18   results reported in your report?                         17:00:55
19        A.   No, I did not.                                 17:00:57
20        Q.   Why did you use one here?                      17:00:58
21             MR. GLACKIN:  Objection, asked and             17:01:00
22   answered.  This would be the fourth or fifth time        17:01:01
23   for the same question.  We are wasting time.             17:01:02
24             THE WITNESS:  So my impression is, if you      17:01:06
25   look at Figure 20, you're going to find that pretty      17:01:10
```

Page 382

HIGHLY CONFIDENTIAL

| | | |
|---|---|---|
| 1 | off-putting.  It's a long regression equation, and | 17:01:14 |
| 2 | the logic -- the fundamental logic that underlies it | 17:01:16 |
| 3 | is what I am trying to get to with those sequence of | 17:01:23 |
| 4 | paragraphs that we're talking about. | 17:01:27 |
| 5 | I'm simply trying to make sure you | 17:01:28 |
| 6 | understand what that regression is all about. | 17:01:30 |
| 7 | BY MR. PICKETT: | 17:01:33 |
| 8 | Q.   You consider Figure 19 to be a preliminary | 17:01:33 |
| 9 | analysis? | 17:01:37 |
| 10 | A.   No, I don't consider it a preliminary | 17:01:37 |
| 11 | analysis.  I consider it an illustrative analysis. | 17:01:39 |
| 12 | The only extent to which you might consider it | 17:01:44 |
| 13 | preliminary, is the fact that you get that 12.9 | 17:01:50 |
| 14 | percent damages.  But I'm not standing by that.  I'm | 17:01:54 |
| 15 | telling that you got to do the regression analysis. | 17:01:58 |
| 16 | This is not how I'm doing damage analysis.  I'm just | 17:02:03 |
| 17 | saying how you do it is you compare the period in | 17:02:06 |
| 18 | which the agreements were in place with relevant | 17:02:09 |
| 19 | alternative periods. | 17:02:12 |
| 20 | And you got to think long and hard what | 17:02:13 |
| 21 | those relative alternative periods are, which is | 17:02:15 |
| 22 | what regression does. | 17:02:17 |
| 23 | Q.   One factor you used in your regression | 17:02:20 |
| 24 | analysis was firm revenue per employee, do you | 17:02:22 |
| 25 | recall that? | 17:02:26 |

```
 1        A.   Correct.                                      17:02:26
 2        Q.   And did you have that revenue data for        17:02:26
 3   Pixar?                                                  17:02:28
 4        A.   No, we do not have that for Pixar.            17:02:29
 5        Q.   What did you do to compensate, if             17:02:31
 6   anything?                                               17:02:34
 7        A.   There have to be some -- the earlier Pixar    17:02:36
 8   data must be available.  In fact, there are revenue    17:02:37
 9   data for Pixar earlier in the data set, otherwise       17:02:39
10   you couldn't have researched this equation.             17:02:55
11             So both Lucasfilm and Pixar have incomplete   17:02:56
12   record with regard to revenue.  We made a big effort   17:02:58
13   to fill in the revenue data as close as we can.         17:03:02
14        Q.   Did you estimate it for the gaps?             17:03:07
15        A.   No, we took it from the depositions from      17:03:11
16   the financial reports.                                  17:03:13
17        Q.   Is that work in your backup?                  17:03:14
18        A.   That's in a backup.  But I would add it's    17:03:15
19   fair to say, and you will find out, that the revenue    17:03:19
20   data is incomplete for both those firms, which means    17:03:22
21   that in those years in which the revenue is not         17:03:31
22   available, those firms played no role in that           17:03:33
23   regression.                                             17:03:35
24        Q.   If you look at Figure 22, estimated impact    17:03:36
25   on class total compensation?                            17:03:40
```

```
 1  STATE OF CALIFORNIA    ) ss:
 2  COUNTY OF MARIN        )
 3
 4      I, ASHLEY SOEVYN, CSR No. 12019, do hereby
 5  certify:
 6      That the foregoing deposition testimony was
 7  taken before me at the time and place therein set
 8  forth and at which time the witness was administered
 9  the oath;
10      That the testimony of the witness and all
11  objections made by counsel at the time of the
12  examination were recorded stenographically by me,
13  and were thereafter transcribed under my direction
14  and supervision, and that the foregoing pages
15  contain a full, true and accurate record of all
16  proceedings and testimony to the best of my skill
17  and ability.
18      I further certify that I am neither counsel for
19  any party to said action, nor am I related to any
20  party to said action, nor am I in any way interested
21  in the outcome thereof.
22      IN THE WITNESS WHEREOF, I have transcribed my
    name this 29th day of October, 2012.
23
24
                         _____
25                       ASHLEY SOEVYN, CSR No. 12019

                                              Page 476
```