# EXHIBIT G

# BROWN REPLY DECLARATION ISO APPLE'S MOTION FOR SUMMARY JUDGMENT

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| IN RE: HIGH-TECH EMPLOYEE ANTITRUST LITIGATION | ) ) ) |
| | )   No. 11-CV-2509-LHK |
| THIS DOCUMENT RELATES TO: | ) |
| ALL ACTIONS. | ) |
| _____ | ) |

CONFIDENTIAL - ATTORNEYS' EYES ONLY

VIDEO DEPOSITION OF BRIAN CROLL

March 22, 2013

Reported by:  Jennifer L. Furia, RPR, CSR No. 8394

| Time | # | |
|---|---|---|
| 10:13:20 | 1 | these types of relationships just work. |
| 10:13:31 | 2 | Q. And that's based on your general understanding |
| 10:13:41 | 3 | through the course of your career? |
| 10:13:43 | 4 | A. Yeah. I mean, I think this is the way --yeah, I |
| 10:13:48 | 5 | would say that when I've been involved in these kinds of |
| 10:13:51 | 6 | situations, when we're bringing the number one engineering |
| 10:13:54 | 7 | team, that, you know, our guys that are like laying the |
| 10:13:57 | 8 | golden eggs, if you will, and we're going to be putting |
| 10:14:01 | 9 | them in front of another company, we have to be |
| 10:14:04 | 10 | comfortable knowing that they aren't going to be |
| 10:14:08 | 11 | immediately recruited by that company. Because otherwise, |
| 10:14:10 | 12 | what you end up doing is you develop an intermediary layer |
| 10:14:15 | 13 | of support engineers and people who aren't as familiar |
| 10:14:18 | 14 | with the innerworkings of the technology. In that case, |
| 10:14:22 | 15 | the capacity to actually do anything innovative is |
| 10:14:27 | 16 | severely, severely hampered because the two principals are |
| 10:14:33 | 17 | never engaging. |
| 10:14:34 | 18 | So I think the basic practice of feeling |
| 10:14:37 | 19 | comfortable, that you can take your best players and have |
| 10:14:39 | 20 | them talk, is important for both sides of, you know, of |
| 10:14:44 | 21 | those kinds of relationships. |
| 10:14:47 | 22 | You know, and one thing you don't want to do is |
| 10:14:50 | 23 | recruit someone and that screws up the relationship and |
| 10:14:53 | 24 | especially where they're really important to the success |
| 10:14:57 | 25 | of the company. I think it's really important. |

| | | |
|---|---|---|
| 10:15:18 | 1 | Q.   With respect to Apple and Google, I believe you |
| 10:15:20 | 2 | testified that you weren't aware of any express agreement |
| 10:15:27 | 3 | that Apple wouldn't recruit Google people and that Google |
| 10:15:30 | 4 | wouldn't recruit Apple people, correct? |
| 10:15:33 | 5 | A.   I'm not aware of any -- any agreement. |
| 10:15:51 | 6 | Q.   Was it your understanding that Apple was able to |
| 10:15:59 | 7 | feel comfortable, I believe is how you put it, in |
| 10:16:04 | 8 | assigning its best engineers to collaborate with Google? |
| 10:16:09 | 9 | A.   I think we were comfortable, yes. |
| 10:16:13 | 10 | Q.   Why is that? |
| 10:16:15 | 11 | A.   Because as I said before, is when you enter into |
| 10:16:18 | 12 | these kinds of arrangements, I think the way the industry |
| 10:16:21 | 13 | works is it would really harm the relationship if you |
| 10:16:25 | 14 | started hiring people from the other side of the table. |
| 10:16:29 | 15 | You know, it's -- it would just be really poisonous to |
| 10:16:34 | 16 | that kind of an arrangement. |
| 10:16:35 | 17 | I mean, it's common sense, if you think about |
| 10:16:37 | 18 | it.  You know, if someone goes and hires your best |
| 10:16:44 | 19 | employee because you voluntarily brought them to this |
| 10:16:48 | 20 | meeting, you're not going to bring those employees |
| 10:16:52 | 21 | anymore. |
| 10:16:58 | 22 | Q.   So is the ability to feel comfortable based on |
| 10:17:01 | 23 | trust? |
| 10:17:04 | 24 | A.   There's a degree of trust, yeah. |
| 10:17:23 | 25 | Q.   Were you ever in contact with any Google |

Deposition of Brian Croll                In Re: HIGH-TECH EMPLOYEE ANTITRUST LITIGATION

```
10:17:26  1   engineers who were working on collaborative projects
10:17:29  2   between Apple and Google?
10:17:31  3          A.  Yes, I was.
10:17:33  4          Q.  Were any of those people that you thought might
10:17:37  5   be suitable for employment by Apple?
10:17:40  6          A.  I wouldn't have -- think in that domain because
10:17:42  7   I'm not an engineering manager.  The thought wouldn't have
10:17:47  8   crossed my mind.
10:17:55  9              MR. DALLAL:  We need to change the tape.
10:17:57 10              THE WITNESS:  Okay.
10:17:58 11              MR. DALLAL:  So let's go off the record.
10:18:00 12              THE WITNESS:  Can I take a quick break, then?
10:18:02 13              MR. DALLAL:  Yes.
10:18:03 14              THE VIDEOGRAPHER:  This marks the end of media
10:18:04 15   number 1 in the deposition of Brian Croll.  We are off the
10:18:08 16   record at 10:18 a.m.
10:23:30 17              (Recess taken from 10:18 to 10:23.)
10:23:32 18              THE VIDEOGRAPHER:  We are back on the record at
10:23:34 19   10:23 a.m., and this is the beginning of media number 2 in
10:23:40 20   the deposition of Brian Croll.
10:23:42 21              Please continue.
10:23:43 22   BY MR. DALLAL:
10:23:43 23          Q.  Welcome back, Mr. Croll.
10:23:46 24              We were talking about your understanding that
10:23:49 25   it's undesirable that collaborators would recruit key
```

Deposition of Brian Croll                    In Re: HIGH-TECH EMPLOYEE ANTITRUST LITIGATION

| | | |
|---|---|---|
| 10:45:32 | 1 | Q. Would you talk to him every day? |
| 10:45:34 | 2 | A. Probably not every day. |
| 10:45:39 | 3 | Q. Do you know who Patrice Gautier is? |
| 10:45:44 | 4 | A. Yes, I do. |
| 10:45:44 | 5 | Q. Am I pronouncing that more or less -- |
| 10:45:47 | 6 | A. Close enough. |
| 10:45:49 | 7 | Q. Okay. So what was his role at Apple? |
| 10:45:53 | 8 | A. I'm not a hundred percent clear, but Patrice has |
| 10:45:56 | 9 | been associated with the iTunes Store for a very long |
| 10:46:00 | 10 | time. So again, I don't know exactly what he was doing at |
| 10:46:06 | 11 | that point. |
| 10:46:06 | 12 | Q. Is he someone with whom you've worked regularly |
| 10:46:09 | 13 | during your time at Apple? |
| 10:46:10 | 14 | A. On and off. |
| 10:46:13 | 15 | Q. Is he still at Apple? |
| 10:46:16 | 16 | A. Yes, he is. |
| 10:46:20 | 17 | Q. So if you look at the top, there's a message |
| 10:46:25 | 18 | from you to Patrice Gautier; do you see that? |
| 10:46:30 | 19 | A. Yes. |
| 10:46:33 | 20 | Q. So I'm just curious; it looks like you're |
| 10:46:39 | 21 | forwarding a message. Do you see that? |
| 10:46:41 | 22 | A. Yes. |
| 10:46:42 | 23 | Q. But it looks like the forwarded message was from |
| 10:46:46 | 24 | Jeff Shardell to Patrice Gautier with some other people |
| 10:46:52 | 25 | cc'd, but I don't see your email address listed there. Do |

| | | |
|---|---|---|
| 10:46:56 | 1 | you see that? |
| 10:46:57 | 2 | A. Correct. |
| 10:46:58 | 3 | Q. So I suppose I'm just wondering if you have any |
| 10:47:02 | 4 | insight as to how the message you're forwarding came to |
| 10:47:09 | 5 | you? |
| 10:47:10 | 6 | A. Yeah, I don't know. |
| 10:47:17 | 7 | Q. Do you recall working with Jeff Shardell on |
| 10:47:19 | 8 | anything to do with iTunes? |
| 10:47:29 | 9 | A. No, I don't recall that. |
| 10:47:31 | 10 | Q. Did you work with him on the inclusion of the |
| 10:47:40 | 11 | Google Search Box in Safari? |
| 10:47:48 | 12 | A. Yes, I did. |
| 10:47:56 | 13 | Q. So who did the work to put the Google Search Box |
| 10:48:04 | 14 | in Safari? |
| 10:48:08 | 15 | A. A lot of different people. I -- for instance, I |
| 10:48:09 | 16 | did the original agreement with Jeff Shardell and my legal |
| 10:48:14 | 17 | team. The engineering team then worked out how the |
| 10:48:20 | 18 | protocols would work between the search field and the |
| 10:48:23 | 19 | Google service. Marketing team went through trying to |
| 10:48:28 | 20 | figure out, you know, what -- how we could go ahead and |
| 10:48:33 | 21 | put the Google search field -- it's actually the Safari |
| 10:48:39 | 22 | search field with Google Search -- in our advertising and |
| 10:48:43 | 23 | in our website and how we could market it, so it touched a |
| 10:48:46 | 24 | lot of different people within the organization. |
| 10:48:51 | 25 | Q. And, I'm sorry, did you say Safari search field |

| Time | # | |
|---|---|---|
| 10:48:53 | 1 | with Google Search? |
| 10:48:55 | 2 | A. Yeah, and it's because what we're talking about |
| 10:48:58 | 3 | is in the Safari product, there's a search field. Safari |
| 10:49:02 | 4 | was the first browser to put a search field in its UI. |
| 10:49:09 | 5 | Previous to that, you would have to navigate to a |
| 10:49:11 | 6 | particular search engine and then to your search, but now |
| 10:49:15 | 7 | it was always there no matter, you know, where you were on |
| 10:49:18 | 8 | the Internet, you could get to Search. So it elevated the |
| 10:49:21 | 9 | importance of Search, and it was the first browser to do |
| 10:49:24 | 10 | that. |
| 10:49:25 | 11 | And so, you know, that's why I was saying it was |
| 10:49:29 | 12 | the Safari search bar that went to the Google Search |
| 10:49:35 | 13 | service. |
| 10:49:39 | 14 | Q. And I'm actually going to have a number of other |
| 10:49:42 | 15 | questions about that, but it looks like we're coming up on |
| 10:49:44 | 16 | ten till, so let's -- |
| 10:49:45 | 17 | MR. RILEY: Before we break, we did investigate |
| 10:49:49 | 18 | Exhibit 2245, which starts at Apple Bates stamp |
| 10:49:53 | 19 | 231APPLE128120, and it is marked Privileged and |
| 10:49:58 | 20 | Confidential. It was inadvertently produced, and so we |
| 10:50:00 | 21 | would claw that back. |
| 10:50:03 | 22 | MR. DALLAL: Okay. |
| 10:50:07 | 23 | THE VIDEOGRAPHER: Okay. We are off the record |
| 10:50:08 | 24 | at 10:50 a.m. |
| 13:09:29 | 25 | (Lunch recess taken from 10:50 to 1:10.) |

Deposition of Brian Croll | In Re: HIGH-TECH EMPLOYEE ANTITRUST LITIGATION

1  I, Jennifer L. Furia, Certified Shorthand
2  Reporter licensed in the State of California, license
3  No. 8394, hereby certify that the deponent was by me first
4  duly sworn, and the foregoing testimony was reported by me
5  and was thereafter transcribed with computer-aided
6  transcription; that the foregoing is a full, complete and
7  true record of said proceeding.
8      I further certify that I am not of counsel or
9  attorney for either or any of the parties in the foregoing
10  proceeding and caption named or in any way interested in
11  the outcome of the cause in said caption.
12      The dismantling, unsealing, or unbinding of the
13  original transcript will render the reporter's
14  certificates null and void.
15      In witness whereof, I have hereunto set my hand
16  this day:   April 2, 2013
17      _____  Reading and signing was requested.
18
19      _____  Reading and signing was waived.
20   X
    _____  Reading and signing was not requested.
21
22
23
24      _____
        JENNIFER L. FURIA, RPR, CSR NO. 8394
25