KEKER & VAN NEST LLP
ROBERT A. VAN NEST - # 84065
rvannest@kvn.com
DANIEL PURCELL - # 191424
dpurcell@kvn.com
EUGENE M. PAIGE - # 202849
epaige@kvn.com
JUSTINA SESSIONS - # 270914
jsessions@kvn.com
633 Battery Street
San Francisco, CA 94111-1809
Telephone:   415 391 5400
Facsimile:    415 397 7188

Attorneys for Defendant
GOOGLE INC.

[Additional counsel listed on signature page]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| IN RE: HIGH-TECH EMPLOYEE ANTITRUST LITIGATION<br><br>THIS DOCUMENT RELATES TO:<br><br>ALL ACTIONS | Case No. 5:11-cv-2509-LHK<br><br>**DEFENDANTS' JOINT REPLY BRIEF IN SUPPORT OF DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT AND JOINT OBJECTIONS TO PLAINTIFFS' EVIDENCE SUBMITTED IN OPPOSITION TO SUMMARY JUDGMENT**<br><br>DATE:         March 20, 2104 and<br>                    March 27, 2014<br>TIME:         1:30 p.m.<br>COURTROOM: Courtroom 8, 4th Floor<br>JUDGE:       Hon. Lucy H. Koh |

This brief responds to issues raised in plaintiffs' opposition that are common to all defendants.  Each defendant is submitting a separate reply demonstrating that plaintiffs have failed to establish a material disputed issue that would warrant denial of summary judgment.

## I. PLAINTIFFS MUST PRESENT EVIDENCE THAT TENDS TO RULE OUT THE POSSIBILITY THAT EACH DEFENDANT ACTED INDEPENDENT OF THE ALLEGED OVERARCHING CONSPIRACY.

As demonstrated in defendants' individual briefs, plaintiffs have presented no direct evidence—"evidence that is explicit and requires no inferences to establish the proposition or conclusion being asserted," *In re Citric Acid Litig.*, 191 F.3d 1090, 1094 (9th Cir. 1999)—of an overarching conspiracy (as opposed to direct evidence merely of defendants' bilateral agreements).[1]  Where, as here, plaintiffs rely solely on circumstantial evidence of a conspiracy, they can avoid summary judgment only by presenting evidence that "tends to exclude the possibility that the alleged coconspirators acted independently."  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 588 (1986)(quoting *Monsanto Co. v. Spray-Rite Serv. Corp.*, 465 U.S. 752, 764 (1984)); *Citric Acid*, 191 F.3d at 1096; *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554 (2007) (applying same rule to sufficiency of complaint on motion to dismiss).[2]

Plaintiffs contend that the rule set forth in *Monsanto* and *Matsushita*, and reaffirmed in *Twombly* and *Citric Acid*, does not apply here because the defendants' bilateral agreements are "not the 'very essence of competition' but [are] per se violations of the antitrust laws."  Opp. 4:1-4.  Even assuming arguendo this were true, Plaintiffs' contention fails because the *Monsanto/Matsushita* rule applies even where the defendant's conduct from which the plaintiff

---

[1] Contrary to Plaintiffs' suggestion, the Court's discussion of plaintiffs' allegations in its decisions denying defendants' motion to dismiss and certifying the class do not preclude summary judgment because the Court did not address the merits of the plaintiffs' allegations or the sufficiency of plaintiffs' evidence.  *See* April 18, 2012 Order at 19 ("Whether Plaintiffs can adduce sufficient evidence in discovery to *prove* an overarching conspiracy is a question that is not before the Court today."); April 5, 2013 Order at 13 ("'[W]hether plaintiffs can prove that a conspiracy *existed* is not an issue that we consider on class certification ….'" (quoting *Reed v. Advocate Health Care*, 268 F.R.D. 573, 581 (N.D. Ill. 2009) (emphasis in *Reed*))).

[2] Plaintiffs claim that the Ninth Circuit replaced this rule with a balancing test in *In re Petroleum Products Antitrust Litig.*, 906 F.2d 432 (9th Cir. 1990).  Opp. at 17.  But the Ninth Circuit squarely rejected plaintiffs' view of *Petroleum Products* in *Citric Acid*.  191 F.3d at 1096 (noting that *Petroleum Products*' discussion of the standard was dicta and reaffirming that plaintiffs "must produce evidence tending to exclude the possibility that defendants acted independently").

1  asks the court to infer a conspiracy is allegedly unlawful or anticompetitive.

2  In *Twombly*—which plaintiffs do not even mention—the plaintiffs alleged that major
3  telecommunications providers had, in parallel, violated the Telecommunications Act of 1996 and
4  engaged in various types of anticompetitive conduct. 550 U.S. at 550, 566. The Supreme Court
5  held, assuming these allegations to be true, that "there is no reason to infer that the companies had
6  agreed among themselves," because each company's alleged conduct was, even if unlawful or
7  anticompetitive, in its independent self-interest regardless of what other companies were doing.
8  *Id*. at 566 ("[E]ven if the [defendants] flouted the 1996 Act in all the ways the plaintiffs allege,
9  there is no reason to infer that the companies had agreed among themselves to do what was only
10 natural anyway." (citation omitted)). *Twombly* thus unambiguously demonstrates that the
11 *Monsanto/Matsushita* rule applies even where the defendants' parallel conduct is alleged to be
12 anticompetitive or unlawful. Any contrary suggestion in pre-*Twombly* decisions (*see* Opp. 17:8-
13 15 & n.23) is irrelevant.

14 In *Insurance Brokerage*, the Third Circuit, applying the *Monsanto*/*Matsushita* rule post-
15 *Twombly*, held that, even assuming that each defendant-insurer's bilateral "exclusivity for
16 kickbacks" agreement with a broker was anticompetitive or unlawful, the parallel agreements
17 could not support an inference of an overarching conspiracy, because each agreement was in the
18 self-interest of the insurer regardless of the other insurers' conduct. *In re Ins. Brokerage Antitrust*
19 *Litig.*, 618 F.3d 300, 334-35 & n.31, 348-50 & n.53 (3d Cir. 2010). *See also In re Iowa Ready-*
20 *Mix Concrete Antitrust Litig.*, 768 F. Supp. 2d 961, 972-75 (N.D. Iowa 2011) (a series of bilateral
21 agreements that formed the basis for guilty pleas was insufficient to support an inference of an
22 overarching conspiracy among all defendants). Thus, plaintiffs cannot meet their burden of
23 proving an overarching conspiracy merely by purporting to show that the individual bilateral
24 agreements were anticompetitive or unlawful.

25 Plaintiffs attempt to bootstrap evidence of the defendants' bilateral agreements into
26 evidence of the alleged overarching conspiracy, arguing that "whether there is a single conspiracy
27 or separate ones is ordinarily an issue for the finder of fact." Opp. 18:21-22. But, under *Twombly*
28 and *Citric Acid*, that is true only if plaintiffs offer evidence that tends to exclude the possibility

that each defendant entered into its separate bilateral agreement independent of the alleged overarching conspiracy. If there is not such evidence, plaintiffs' claim fails as a matter of law.

None of the cases cited by plaintiffs is to the contrary. In *United States v. Bibbero*, 749 F.2d 581 (9th Cir. 1984), the Ninth Circuit found there was sufficient evidence that the defendant "embraced the common purpose of the overall conspiracy," including both *direct evidence* of meetings at which he knowingly joined the conspiracy and evidence that he knew any benefit to him depended upon the success of the overall conspiracy. *Id*. at 587-88. Similarly, in *Toledo Mack Sales & Serv., Inc. v. Mack Trucks, Inc.*, 530 F.3d 204 (3d Cir. 208), the court "conclude[d] that [plaintiff's] *direct evidence* is sufficient to allow a jury to conclude that a conspiracy not to compete existed among Mack dealers" not just separate bilateral agreements with Mack. *Id*. at 220 (emphasis added).[3] And in *United States v. Burns*, No. 98-50771, 2000 U.S. App. LEXIS 15801 (9th Cir. May 2, 2000), the Ninth Circuit explained, "the evidence must show that 'each defendant knew, or had reason to know, . . . that his benefits were probably dependent upon the success of the entire operation," *id*. at *4, *i.e.*, that, unlike here, they were *not* in each defendant's self-interest absent the overarching conspiracy. *See also United States v. Brown*, 912 F.2d 1040, 1043 (9th Cir. 1990) (reversing conspiracy conviction for lack of evidence that defendant knew benefit to him was dependent on the success of the entire venture).

Plaintiffs rely on *Blumenthal v. United States*, 332 U.S. 539 (1947), where the Court found a single overarching conspiracy rather than separate agreements, but they ignore *Kotteakos v. United States*, 328 U.S. 750 (1946), which the *Blumenthal* Court distinguished. In *Blumenthal*, the Court, in finding a single conspiracy, emphasized the "special circumstances" and "unique facts" of the case, where all defendants knew the plan's "essential features and broad scope" and the various bilateral agreements were "merely steps in the formation of the larger and ultimate more general conspiracy." 332 U.S. at 557-59. The Court distinguished *Kotteakos*, in which the Court had reversed a single-conspiracy finding, emphasizing that, although the *Kotteakos*

---

[3] Citing *Mack*, plaintiffs argue that they need not prove the "exact extent" of the conspiracy. Opp. at 19. But plaintiffs' claim fails, not for lack of evidence that defendants knew the full "extent" of the alleged conspiracy, but for lack of evidence that defendants entered into *any* conspiracy.

3
DEFENDANTS' JOINT REPLY BRIEF IN SUPPORT OF DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT
Case No. 5:11-cv-2509-LHK

defendants had entered into a series of illegal bilateral loan agreements with one common figure (Brown), the agreements were not interdependent and "[t]here was no drawing of all together in a single, over-all, comprehensive plan." *Id*. at 558. "[E]ach separate agreement had its own distinct, illegal end," and, "[e]xcept for Brown, the common figure, no conspirator was interested in whether any loan except his own went through." *Id.* As the *Kotteakos* Court put it, "the pattern was 'that of separate spokes meeting in a common center,' [but] without the rim of the wheel to enclose the spokes." 328 U.S. at 755. Thus, a showing that defendants entered into similar agreements with a common figure is insufficient—even if those agreements were illegal— to support an inference of an overarching conspiracy. *See United States v. Edwards*, No. 10-145-02. 2011 WL 816804 at *2 (E.D. Pa., Mar. 8, 2011) ("*Kotteakos* and *Blumenthal* together suggest a common relation with a hub is not sufficient to find a single conspiracy among disparate spokes").[4]

Plaintiffs urge that their evidence be viewed "as a whole." Opp. at 4. "But there can be no synergistic result" from a number of acts none of which tends to exclude independent action. *Cal. Computer Products v. Int'l Bus. Mach's*, 613 F.2d 727, 746 (9th Cir.1979); *Am. Floral Serv. v. Florists" Transworld Del.*, 633 F.Supp. 201, 215 n. 23 (N.D.Ill.1986) ("[Z]ero plus zero plus zero still equals zero[;] * * * [i]f no incident has probative value, all incidents taken together have no probative value.").[5]

---

[4] The issue in *Twin City Sportservice Inc. v. Charles O. Finley & Co.,* 676 F.2d 1291 (9th Cir. 1982), was not whether there was one or several conspiracies, but whether the "hub" of a rimless "wheel" could be held liable—in the *absence* of an overarching conspiracy among the spokes— for the aggregate effect of all its own bilateral agreements. *United States v. Bloch*, 696 F.2d 1213 (9th Cir. 1982), is similar. In the other cases plaintiffs cite as upholding a single-conspiracy finding (Opp. at 18 n.24) there was sufficient evidence, absent here, that the defendant knew about and entered into an overarching conspiracy.

[5] The Court should also afford no weight to statements from Lucasfilm's George Lucas and Pixar's Ed Catmull in deciding the instant motion. Far from supporting the existence of an overarching conspiracy, they demonstrate that the Lucasfilm/Pixar agreement concerned only the computer animation and digital effects industry. Declaration of Lin W. Kahn [Dkt. 562] Exh. D (Lucas Dep.) 206:4–19 ("Q. Okay. You said that you had a wish not to raid other digital companies. . . . Did you have that same wish with respect to five of the other defendants in this case, which are companies Apple, Intel, Google, Adobe, and Intuit? A. No. I was only worried about graphic artists and other visual effects industry . . . companies and animation companies.").

II. **BECAUSE DEFENDANTS' BILATERAL AGREEMENTS WERE IN THEIR INDIVIDUAL SELF-INTEREST REGARDLESS OF THE ALLEGED OVERARCHING CONSPIRACY, NO INFERENCE OF CONSPIRACY MAY BE DRAWN FROM THEM**

As defendants have demonstrated in separate briefs, each of the bilateral no-cold-calling agreements was in the independent self-interest of each party to the agreement regardless of the existence of the alleged conspiracy. Plaintiffs have presented no contrary evidence. In light of this undisputed fact, the mere existence of the bilateral agreements cannot support an inference that defendants formed the alleged overarching conspiracy. *Twombly*, 550 U.S. at 554; *Wilcox v. First Interstate Bank*, 815 F.2d 522, 528 (9th Cir. 1987).

Plaintiffs dispute this proposition, citing three decisions. Those cases do not, however, support plaintiffs' argument and are in any event not controlling. Two of the cases—*United States v. General Motors Corp.*, 384 U.S. 127 (1966), and *United States v. Masonite Corp.*, 316 U.S. 265 (1942)—pre-date not only *Twombly* but also *Matsushita* and *Monsanto*; and the third—*United States v. Apple Inc.*, 952 F. Supp. 2d 638 (S.D.N.Y. 2013)—is a district court decision from outside the Ninth Circuit. These cases and others cited by plaintiffs, including *Interstate Circuit* and *Toys 'R' Us*, contradict plaintiffs' argument and support defendants'. In all but one of the cases, the court based its finding of an overarching conspiracy, at least in part, on exactly the kind of evidence that plaintiffs lack here: evidence that the defendants' bilateral agreements were dependent upon each other—*i.e.*, that each was in the defendant's self-interest only because it was part of an overarching conspiracy.[6]

In *General Motors*, the defendant dealers and General Motors explicitly agreed that General Motors would persuade all dealers to participate in the overall plan and "[i]t was acknowledged from the beginning that *substantial unanimity would be essential* if the [individual] agreements were to be forthcoming." 384 U.S. 127, 144 (1966) (emphasis added). In *Interstate Circuit Inc. v. United States*, defendant motion-picture distributors had all entered into identical agreements with Interstate (an exhibitor). 306 U.S. 208, 222 (1939). The Court held that it was

---

[6] The defendants in *United States v. Masonite Corp.* argued that their overarching conspiracy itself—which was proven by direct evidence—was justified because it was done for business reasons and did not harm consumers. 316 U.S. 265, 275-76 (1942). That is not the argument made by defendants here.

5
DEFENDANTS' JOINT REPLY BRIEF IN SUPPORT OF DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT
Case No. 5:11-cv-2509-LHK

805955

permissible to infer an overarching conspiracy because each distributor knew that "without substantially unanimous action … there was a risk of a substantial loss of [] business and good will …, but that with it there was the prospect of increased profits." *Id.* In *Toys 'R' Us v. FTC,* the overarching conspiracy consisted of a network of agreements among Toys 'R' Us and manufacturers to restrict sales to low-priced warehouse stores.  221 F.3d 928, 930 (7th Cir. 2000). The court held an inference of conspiracy was permissible because "[the evidence] showed that each manufacturer was afraid to curb its sales to the warehouse clubs alone" and would do so only "if it could be sure its competitors were doing the same thing." *Id.* at 936. Finally, in *Apple*, the court, in addition to finding there was ample *direct* evidence of an overarching conspiracy, found that the publisher defendants had "all acted against their near-term financial interests" absent an overarching conspiracy among them. 952 F. Supp. 2d 638, 687-94 (S.D.N.Y. 2013). Here, in contrast, it is undisputed that each bilateral agreement was in each party's self-interest independent of the alleged overarching conspiracy.

### III. THE DOJ COMPLAINT, CONSENT DECREE, AND COMPETITIVE IMPACT STATEMENT ARE INADMISSIBLE.

Under Rule 56, a party may oppose summary judgment only with admissible evidence. Fed. R. Civ. P. 56. It is well-settled that a consent judgment between a federal agency and a corporation that is not the result of an actual adjudication of the issues is inadmissible in a subsequent private lawsuit. *See, e.g.*, *Lipsky v. Commonwealth United Corp.*, 551 F.2d 887, 893 (2d Cir. 1976).  The Clayton Act provides expressly that a consent decree entered before testimony has been taken in a government antitrust action may not be used as *prima facie* evidence of a violation, 15 U.S.C. § 16(a); and federal courts have consistently interpreted section 5(a) as barring evidence of both the terms of a consent decree and the fact of its entry. *Metrix Warehouse, Inc. v. Daimler-Benz Aktiengesellschaft*, 555 F. Supp. 824, 826 (D. Md. 1983) (citing cases).  Because unlitigated consent decrees are equivalent to pleas of nolo contendere—which are inadmissible under Federal Rule of Evidence 410—such decrees are not admissible to prove any violation of the law occurred. *Zenith Radio Corp. v. Matsushita Elec. Indus. Co.*, 505 F. Supp. 1125, 1181-82 (E.D. Pa. 1980) (citing cases); *see also City of Burbank v. Gen. Elec. Co.*,

329 F.2d 825, 834 (9th Cir. 1964) (analogizing consent decrees to nolo contendere pleas).

Nor is the DOJ competitive impact statement or complaint admissible. The Clayton Act provides that a competitive impact statement "shall not be admissible against any defendant in any action or proceeding brought by any other party against such defendant under the antitrust laws." 15 U.S.C. § 16(h); *see also United States v. Microsoft Corp.*, 215 F. Supp. 2d 1, 9 n.7 (D.D.C. 2002) (competitive impact statement inadmissible). The allegations of the DOJ complaint are hearsay and inadmissible to prove their truth and therefore not properly considered by the court here. *Rivera v. Metro. Transit Auth.*, 750 F. Supp. 2d 456, 461 (S.D.N.Y. 2010); *Stewart v. Wachowski*, 574 F. Supp. 2d 1074, 1087 n.55 (C.D. Cal. 2005).

## IV.    DEFENDANTS DID NOT "WAIVE" RULE-OF-REASON ANALYSIS.

Plaintiffs did not move for summary adjudication of the rule of reason/per se issue, but they argue that defendants have somehow "waived" any argument on the issue. Plaintiffs are wrong. There is no requirement that defendants brief the issue at summary judgment. Moreover, the rule of reason/per se issue is not relevant to defendants' motions for summary judgment. The question of which standard will be used to assess whether the alleged overarching conspiracy would have been anticompetitive is entirely separate from the question whether plaintiffs have produced evidence from which a jury could permissibly conclude that the alleged overarching conspiracy existed in the first place. The latter is the subject of defendants' motions.

## V.    SUMMARY JUDGMENT IS REQUIRED BECAUSE DR. LEAMER'S OPINIONS ARE INADMISSIBLE.

Plaintiffs' claim that defendants "ignore Dr. Leamer's analyses apart from his damages estimate," Opp. at 47, is both wrong and beside the point. Dr. Leamer's regression model is his only statistical evidence of either the fact of impact or the amount of damages. And plaintiffs have identified no purported proof of damages—to the entire class or individually—other than Dr. Leamer's model.

## VI.    CONCLUSION

Defendants' motions for summary judgment should be granted.

7
DEFENDANTS' JOINT REPLY BRIEF IN SUPPORT OF DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT
Case No. 5:11-cv-2509-LHK

805955

| | | |
|---|---|---|
| Dated:  February 27, 2014 | | KEKER & VAN NEST LLP |
| | By: | /s/ Robert A. Van Nest |
| | | Robert A. Van Nest |
| | | |
| | | Daniel Purcell |
| | | Eugene M. Paige |
| | | Justina Sessions |
| | | 633 Battery Street |
| | | San Francisco, CA  94111 |
| | | Telephone:  (415) 391-5400 |
| | | Facsimile:  (415) 397-7188 |
| | | |
| | | *Attorneys for Defendant GOOGLE INC.* |

| | | |
|---|---|---|
| Dated:  February 27, 2014 | | MAYER BROWN LLP |
| | By: | /s/ Lee H. Rubin |
| | | Lee H. Rubin |
| | | |
| | | Edward D. Johnson |
| | | Donald M. Falk |
| | | Two Palo Alto Square |
| | | 3000 El Camino Real, Suite 300 |
| | | Palo Alto, CA  94306-2112 |
| | | Telephone:  (650) 331-2057 |
| | | Facsimile:   (650) 331-4557 |
| | | |
| | | *Attorneys for Defendant GOOGLE INC.* |

| | | |
|---|---|---|
| Dated:  February 27, 2014 | | O'MELVENY & MYERS LLP |
| | By: | /s/ *Michael F. Tubach* |
| | | Michael F. Tubach |
| | | |
| | | George Riley |
| | | Christina J. Brown |
| | | Two Embarcadero Center, 28th Floor |
| | | San Francisco, CA  94111 |
| | | Telephone:  (415) 984-8700 |
| | | Facsimile:   (415) 984-8701 |
| | | |
| | | *Attorneys For Defendant APPLE INC.* |

Dated:  February 27, 2014          JONES DAY

By:   /s/ *David C. Kiernan*
David C. Kiernan

Robert A. Mittelstaedt
555 California Street, 26th Floor
San Francisco, CA  94104
Telephone:  (415) 626-3939
Facsimile:   (415) 875-5700

*Attorneys for Defendant ADOBE SYSTEMS, INC.*

Dated:  February 27, 2014          MUNGER TOLLES & OLSON LLP

By:   */s/ Gregory P. Stone*
Gregory P. Stone

355 South Grand Avenue, 35th Floor
Los Angles, CA  90071-1560
Telephone:  (213) 683-9100
Facsimile:   (213) 687-3702

*Attorneys for Defendant INTEL CORPORATION*

**ATTESTATION**: The filer attests that concurrence in the filing of this document has been obtained from all signatories.