| | |
|---|---|
| 1 | Robert A. Mittelstaedt (State Bar No. 60359) |
| | ramittelstaedt@jonesday.com |
| 2 | David C. Kiernan (State Bar No. 215335) |
| | dkiernan@jonesday.com |
| 3 | Lin W. Kahn (State Bar No. 261387) |
| | linkahn@jonesday.com |
| 4 | JONES DAY |
| | 555 California Street, 26th Floor |
| 5 | San Francisco, CA 94104 |
| | Telephone: (415) 626-3939 |
| 6 | Facsimile: (415) 875-5700 |

Attorneys for Defendant
Adobe Systems Inc.

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN JOSE DIVISION

| | |
|---|---|
| IN RE: HIGH-TECH EMPLOYEE ANTITRUST LITIGATION | Master Docket No. 11-CV-2509-LHK |
| THIS DOCUMENT RELATES TO: | **DEFENDANT ADOBE'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** |
| ALL ACTIONS | |
| | Date:        March 20, 2014 and |
| |              March 27, 2014 |
| | Time:       1:30 p.m. |
| | Courtroom: 8, 4th Floor |
| | Judge:      The Honorable Lucy H. Koh |

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ..................................................................................................................1

I.   LEGAL STANDARD ...............................................................................................1

II.  THE FACTS MATERIAL TO ADOBE'S MOTION ARE BEYOND DISPUTE
AND UNREBUTTED BY PLAINTIFFS. .................................................................2

CONCLUSION .....................................................................................................................7

Adobe's Reply ISO Mot. for Sum. Jgmt.
No. 11-CV-2509-LHK

i

**TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Blumenthal v. United States*,
   332 U.S. 539 (1947) ............................................................................................................2

*Kotteakos v. United States*,
   328 U.S. 750 (1946) .......................................................................................................2, 7

*Richards v. Neilsen Freight Lines*,
   810 F.2d 898 (9th Cir. 1987) ..............................................................................................6

*United States v. Bibbero*,
   749 F.2d 581 (9th Cir. 1984) ..............................................................................................1

*United States v. Burns*,
   2000 U.S. App. LEXIS 15801 (9th Cir. 2000) ..................................................................1

*United States v. Edwards*,
   No. 10-145-02, 2011 WL 816804 (E.D. Penn. March 8, 2011) ........................................2

*Wilcox v. First Interstate Bank of Or.*,
   815 F.2d 522 (9th Cir. 1987) ..............................................................................................3

**OTHER AUTHORITIES**

Black's Law Dictionary (9th ed. 2009) .........................................................................................6

Fed. Rules Civ. Proc, Rule 11 ........................................................................................................3

**INTRODUCTION**

Plaintiffs raise no genuine triable issue as to Adobe. Most of their evidence relates to other defendants' bilateral agreements that did not involve Adobe and of which Adobe had no knowledge. What matters for this motion is what Adobe knew and did.

Plaintiffs have offered no evidence to dispute Adobe's showing that it did not knowingly join the alleged conspiracy to enter into a "network" of bilateral agreements. Adobe had a separate, distinct bilateral agreement with Apple not to cold call each other's employees, unconnected to what any other party did or did not do. In making that agreement, Adobe did not know of, let alone take into account, any other party's agreements or anything about an alleged scheme to create a "network" of bilateral agreements.

Having no direct evidence, plaintiffs ask the Court to infer knowledge and participation because Adobe's agreement was similar to agreements that other defendants entered into with a common person, Steve Jobs. But as the cases cited by plaintiffs show, evidence that defendants entered into similar agreements with a common figure does not support an inference of conspiracy.[1]

**I.   LEGAL STANDARD**

The cases cited by plaintiffs (Opp. at 18-19) show why their case against Adobe fails. In each case finding a single conspiracy rather than multiple separate agreements, the defendant "embraced the common purpose of the overall conspiracy," which requires "knowledge of and dependency on the enterprise." *United States v. Bibbero*, 749 F.2d 581, 582-83, 587-88 (9th Cir. 1984) (finding defendant joined a single overall conspiracy because he met with other conspirators and knowingly joined the conspiracy by agreeing to be a supplier and dealer for the drug smuggling operation); *United States v. Burns*, 2000 U.S. App. LEXIS 15801, at *4 (9th Cir. 2000) ("the evidence must show that 'each defendant knew, or had reason to know, . . . that his benefits were probably dependent upon the success of the entire operation.'"). In other words, the

---

[1] If it were appropriate for plaintiffs to cite this Court's comments about the prospects of summary judgment, they should have included the Court's observation that "to be frank, some of you have better cases than others on your individual claim." Tr. 5/15/14 CMC, 15:10, 16:11-12.

Adobe's Reply ISO Mot. for Sum. Jgmt.
No. 11-CV-2509-LHK

1

relevant inquiry is whether the defendant knew of and consciously joined the overall scheme and whether its conduct made sense only if an overarching scheme existed.

In *Blumenthal v. United States*, 332 U.S. 539 (1947), in finding a single agreement rather than separate agreements, the Court focused on the knowledge of the defendants: all defendants "**knew** of and joined in the overriding scheme," "became parties to the larger common plan, joined together by their **knowledge** of its essential features and broad scope . . . and by their common single goal." *Id.* at 558 (emphasis added). While "each salesman aided in selling only his part," "he **knew** the lot to be sold was larger and thus that he was aiding in a larger plan." *Id.* at 559 (emphasis added).

The Court contrasted these facts to those in *Kotteakos v. United States*, 328 U.S. 750 (1946), a case cited in Adobe's motion (5:16-18) but ignored by plaintiffs. Its facts are much closer to this action. Numerous defendants entered separate transactions with one common figure, Brown, at about the same time and with similar illegal ends. *Id.* at 753-56. "But no connection was shown between [the defendants], other than that Brown had been the instrument in each instance for obtaining the loans." *Id.* at 754. Showing that "separate spokes meet[] at a common center" is insufficient as a matter of law to infer that the separate spokes (or agreements) were part of an overall scheme. *Kotteakos*, 328 U.S. 750 at 755. This is true even though the alleged agreements "all were alike in having similar illegal objects." *Id.*[2]

## II. THE FACTS MATERIAL TO ADOBE'S MOTION ARE BEYOND DISPUTE AND UNREBUTTED BY PLAINTIFFS.

Trying to fit into the "single conspiracy" cases, plaintiffs allege that Adobe joined the alleged conspiracy in May 2005 by entering into a bilateral agreement with Apple with knowledge of a larger plan to create a web of interconnected agreements. They do not contend

---

[2] *See also United States v. Edwards*, Crim. No. 10-145-02, 2011 WL 816804, at *2 (E.D. Penn. March 8, 2011) ("*Kotteakos* and *Blumenthal* together suggest a common relation with a hub is not sufficient to find a single conspiracy among disparate spokes; the spokes themselves must be interrelated and share a common purpose."). The other "single conspiracy" cases plaintiffs cite (Opp. at 18 n.24) also involved proof, absent here, that the defendant knew about and consciously joined the broader conspiracy.

Adobe's Reply ISO Mot. for Sum. Jgmt.
No. 11-CV-2509-LHK

2

that the previous Adobe/Apple bilateral agreements, in 1983 and the early 2000s, were part of that larger plan, illustrating that – even in plaintiffs' view – bilateral agreements can be separate, independent and not conspiratorial.[3]

The facts relating to the 2005 agreement are not in dispute. *See* Adobe MSJ 1-3. The cited emails and testimony show that Adobe's "no cold calling" agreement with Apple did not depend on what any other company did or did not do. For purposes of this motion, Adobe does not dispute plaintiffs' interpretation that the emails show that Mr. Jobs "persuaded" Adobe to enter into that agreement "by threatening" that Apple would solicit Adobe employees. Opp. 10:11-13. Thus, plaintiffs' argument (Opp. 25:26-26:4) that the explanations by "defendants" of their bilateral agreements are "pretextual" does not apply to Adobe.

The emails do not mention any other defendant or their past, present or future bilateral agreements. Nor do they even hint at a scheme by Apple or Mr. Jobs to create a web of bilateral agreements, interconnected or otherwise. Despite the millions of pages of e-mails and other documents produced in this case, plaintiffs have not offered any evidence to refute Adobe's showing that, when it agreed with Mr. Jobs in 2005, it did not know or consider whether any other defendant, including Apple, had similar agreements or what any other defendant was or wasn't doing with respect to cold calling or recruiting. Adobe MSJ 3:3-18. Nor do plaintiffs offer any evidence that the Adobe/Apple bilateral agreement was dependent on a larger scheme; *i.e.,* that it made sense only if other companies also entered into similar bilateral agreements. As shown by the undisputed facts—including the e-mails on which plaintiffs rely—the bilateral agreement made sense from Adobe's perspective without regard to whether any other bilateral agreements, much less an overarching conspiracy, existed. *See, e.g., Wilcox v. First Interstate*

---

[3] Unable to explain why the 2005 agreement was supposedly conspiratorial when the two previous agreements were not, plaintiffs attempt to deny the 1983 bilateral agreement. That denial, however, is not genuine or consistent with Rule 11, Fed. Rules Civ. Proc. Warnock testified, without contradiction, that he had an oral agreement with Jobs not to cold call each other's employees in 1983. Adobe MSJ 9:19-22, n.3. Plaintiffs cite their conspiraciologist Marx who apparently read only the part of Warnock's deposition where he said that the written collaboration agreement with Apple did not contain an express anti-solicitation provision. *See* Dkt. 607, Ex. 12 to Declaration of Dean M. Harvey, Expert Report of Matthew Marx October 28, 2013, ¶ 27.a.1, n.47. Plaintiffs do not deny the early 2000's bilateral agreement; they just ignore it.

Adobe's Reply ISO Mot. for Sum. Jgmt.
No. 11-CV-2509-LHK

3

*Bank of Or.*, 815 F.2d 522, 527 (9th Cir. 1987) ("conscious parallel conduct" cannot support an inference of conspiracy unless "it is also shown that each conspirator acted against its own self-interest"). [4]

In short, the separate Adobe/Apple agreement was not linked to, dependent on or part of any other defendant's agreements or a conspiracy. As discussed above, that Adobe entered into the bilateral agreement with Steve Jobs, the alleged hub of the overall conspiracy who had separate agreements with other parties, is insufficient as a matter of law even if the agreement had similar terms, had illegal ends, and were entered at the same time. There must be evidence that connects the other agreements together—*i.e.*, a rim that connects the spokes. Plaintiffs lack any such evidence as to Adobe, despite exhaustive discovery.

Unable to dispute the dispositive facts, plaintiffs resort to diversion and misstatements.

1. Plaintiffs assert that "[k]nowledge of the Adobe/Apple agreement spread to other Defendants as the conspiracy continued." Opp. 10:13-14, *see also* 39:16-17. This alleged fact is immaterial. To find that Adobe joined the conspiracy and thus is liable for what other defendants did, plaintiffs must point to evidence that *Adobe* knew of and participated in the alleged conspiracy. The September 2007 internal Google email between a Google employee and a former Apple recruiter who joined Google in February 2007 is not such evidence. At most, it shows that the former Apple employee told a Google employee about an Apple "hands-off" policy. Nowhere does it discuss Adobe's knowledge in 2005 or any other time.

Similarly irrelevant and misleading is plaintiffs' assertion that "[a]dditional direct evidence provides further support that the agreement between Adobe and Apple occurred as Plaintiffs allege." Opp. 10:19-20. The four emails and one deposition excerpt plaintiffs cite (Opp. 10, n.15) refer only to the bilateral agreement between Adobe and Apple. They do not show, or support an inference, that Adobe knew of any other defendant's bilateral agreements or

---

[4] Plaintiffs misstate Adobe's position, arguing (Opp. 18:6-7) that it is "no defense that Defendants' conspiracy consisted of a network of unlawful bilateral agreements." That formulation assumes the existence of a conspiracy and ignores the requirement of knowledge and joinder.

Adobe's Reply ISO Mot. for Sum. Jgmt.
No. 11-CV-2509-LHK

4

of any larger scheme or plan, much less the conspiracy alleged here. Instead, the evidence shows that Adobe's 2005 agreement with Apple did not depend on what any other defendant did or did not do. Adobe MSJ 3:3-18.

2. Plaintiffs concede (Opp. 39:23-40:9) that their assertion that defendants had overlapping board memberships does not apply to Adobe. But they argue (Opp. 34:13-14, 35:16-18) that Adobe had the opportunity to conspire because its former CEO Bruce Chizen was "friendly" with Campbell and communicated "continuously with Apple on a range of issues, from the 1980s to the present." In fact, the cited evidence shows that Chizen talked with Campbell once or twice a year, and communicated with Jobs on an undefined "regular" basis, not "continuously." Regardless, neither the degree of friendship nor the frequency of communications supports an inference that Chizen knew of any other defendants' separate agreements or was aware of any overall scheme. Being friends and talking regularly with someone does not support an inference that they must also have conspired, particularly given the clarity of the record that Adobe's bilateral agreement with Apple had nothing to do with Campbell and the obvious, non-conspiratorial reasons for companies collaborating on products to communicate. *See, e.g.,* Dkt. 562, Exhibit B to Declaration of Lin W. Kahn (Chizen Dep.) at 289:21-22; Exhibit J to Kahn Decl. (Warnock Dep.) at 80:24-81:10. This evidence does not support a reasonable inference that Adobe conspired, much less meet the higher standard in antitrust cases. Defs.' Joint Reply Brief 1-4.

Plaintiffs mischaracterize Chizen's testimony (Opp. 40:4-5), claiming that he testified he had "confidential communications" regarding "the heart of the illegal agreement." Chizen testified that he talked on a regular basis with Jobs, not surprisingly given the ongoing collaborations between their companies.[5] There is no testimony or evidence even suggesting that Chizen had communications with Jobs or anyone else about the alleged conspiracy.

---

[5] Plaintiffs assert (Opp. 26:5-8) that Adobe's compensation expert, UCLA's Dr. Lewin, did not opine on issues relevant to this motion. Whether Adobe knew of and joined the alleged conspiracy is not a matter for expert testimony, but one of fact which plaintiffs have failed to prove.

     3.  Contrary to plaintiffs' assertion (Opp. 35:19-21), a jury could not reasonably infer that Adobe conspired because one of its employees used a generic term—"gentleman's agreement"—to describe the Adobe/Apple bilateral agreement while some other defendants used the same term to describe their separate agreements with other companies. Far from being a secret code word as plaintiffs imply, it is a common term dating back to the 1880s that describes an unwritten agreement enforceable on a party's honor—like a "handshake deal." Black's Law Dictionary (9th ed. 2009). And it is clear from the email plaintiffs cite that the author was referring to the separate Adobe/Apple bilateral agreement. Use of that term does not support a conspiracy inference; at best, it "necessarily would be speculative." *Richards v. Neilsen Freight Lines,* 810 F.2d 898, 904 (9th Cir. 1987) (rejecting argument that use of "gentlemen's agreement" supported an inference of a single conspiracy).

     4.  Plaintiffs assert (Opp. 39:6-11) that knowledge and participation can be inferred because Adobe considered other defendants as competitors and benchmarked compensation with some of them. But competitors regularly survey each other's prices and compensation. That does not support an inference that Adobe conspired to join a scheme to enter a web of bilateral agreements to restrict cold-calling, which is the allegation here.[6]

     5.  Plaintiffs are incorrect in claiming (Opp. 8:10-20; 40:10-16) that just because Google witnesses said Jobs made his anti-solicitation views known to Google, it is a "reasonable inference" that he did so with Chizen. Jobs did make his view about Adobe recruiting Apple's employees known to Chizen, as reflected in the May 2005 email. But Jobs said nothing about any broader view, much less whether Apple had agreements with other companies or whether other defendants like Google and Intel had a bilateral agreement.[7]

---

[6] Challenged by Adobe's motion (7:20-26) to identify the "who, what, to whom, where, and when" of the alleged conspiracy, not just the 2005 bilateral agreement, plaintiffs simply quote the Court's observations that related to the bilateral agreement, not the alleged overall conspiracy. Opp. 39:19-23. Plaintiffs fail to identify who at Adobe joined or was even aware of the overall conspiracy and when and where that person joined it.

[7] The testimony cited by plaintiffs (Opp. 8:10-20) is inadmissible speculation in any event. As Schmidt testified in a passage not cited by plaintiffs, he did not know whether it is "fair to say that Mr. Jobs made his views that we've been talking about widely known within the Valley."

(cont'd)

Adobe's Reply ISO Mot. for Sum. Jgmt.
No. 11-CV-2509-LHK

6

6. Plaintiffs have no answer to Adobe's showing (Adobe MSJ 8:3-9:9) that plaintiffs misled the Court in alleging and arguing at the motion to dismiss stage that the timing and contents of the challenged Adobe/Apple and Pixar/Lucasfilm agreements were virtually identical. Nonetheless, plaintiffs continue to rely, inexcusably, on the Court's conclusion that there must have been "some communication or coordination" given the timing of the agreements. But even if they were entered at around the same time, had similar terms, and had the same object (prohibiting cold calls), that would be insufficient to get to the jury, as *Kotteakos* and the other cases discussed above make clear.  The reason for Adobe's decision to enter into the 2005 bilateral agreement is fully explained in the contemporaneous e-mails and deposition testimony, with no hint that it had anything to do with any other company's agreements, similar or not.  No conspiratorial "communication or coordination" is needed to explain it.

7. Contrary to plaintiffs' argument (Opp. 40:17-41:19), Adobe's knowledge of Macromedia's bilateral DNCC agreement with Apple (which Adobe learned as part of its December 2005 acquisition of Macromedia) did not inform Adobe of the "larger collusive activity" alleged here.  There is no claim or evidence that Macromedia was part of the alleged conspiracy, or that Adobe ever knew of any bilateral agreements *between any of the defendants* at any time.  Nor does learning of the Macromedia/Apple bilateral agreement mean that Adobe knowingly joined the alleged conspiracy for defendants to enter into bilateral agreements among themselves.

## CONCLUSION

Summary judgment should be granted in favor of Adobe.

Dated:  February 27, 2014                JONES DAY

By:  */s/ Robert A. Mittelstaedt*
Robert A. Mittelstaedt
Attorneys for Defendant
ADOBE SYSTEMS INC.

SFI-853947

---

See Dkt. 605, Ex. CC to Declaration of Lisa J. Cisneros (Schmidt Dep.) at 172:22-173:10.