# EXHIBIT D

# OMNIBUS BROWN DECLARATION

```
 1                  UNITED STATES DISTRICT COURT

 2                NORTHERN DISTRICT OF CALIFORNIA

 3                      SAN JOSE DIVISION

 4

 5

 6   IN RE:  HIGH-TECH EMPLOYEE      )

 7   ANTITRUST LITIGATION            )

 8                                   )   No. 11-CV-2509-LHK

 9   THIS DOCUMENT RELATES TO:       )

10   ALL ACTIONS.                    )

11   _____ )

12

13

14                    ATTORNEYS' EYES ONLY

15         VIDEO DEPOSITION OF LAUREN STIROH, Ph.D.

16                     December 9, 2013

17

18

19   REPORTED BY:  GINA V. CARBONE, CSR NO. 8249, RMR, CCRR

20

21

22

23

24

25
```

| | | |
|---|---|---|
| 10:04:36 | 1 | that I have in my report is that the -- that having a |
| 10:04:40 | 2 | conduct variable that turns off at the start time and |
| 10:04:42 | 3 | then turns off at the end time is going to sweep into it |
| 10:04:46 | 4 | anything that's not adequately controlled for elsewhere |
| 10:04:50 | 5 | in the report -- in the analysis. |
| 10:04:52 | 6 | And to the extent that there is an overlap in |
| 10:04:56 | 7 | the periods of the agreement, so even assuming that the |
| 10:04:59 | 8 | agreements have an impact, that the impact could be |
| 10:05:03 | 9 | measurable and the impact is to lead to |
| 10:05:05 | 10 | undercompensation of the class, if all of that is true, |
| 10:05:08 | 11 | and you have two agreements that have an overlap in |
| 10:05:11 | 12 | period, then there is nothing in the analysis that tells |
| 10:05:13 | 13 | you what of that measured undercompensation comes from |
| 10:05:17 | 14 | the one at issue versus one that was concurrent with the |
| 10:05:20 | 15 | one at issue, even if the concurrency was for a part but |
| 10:05:24 | 16 | not all of the time. |
| 10:05:26 | 17 | MR. GLACKIN:  Q.  When you say the |
| 10:05:27 | 18 | agreements have an overlap, are you saying this |
| 10:05:30 | 19 | problem arises if there is any overlap at all |
| 10:05:33 | 20 | between the time periods of the agreements? |
| 10:05:38 | 21 | A.  If the theory is correct, that there is an |
| 10:05:41 | 22 | impact on undercompensation from the nature of the |
| 10:05:45 | 23 | agreement, and there is a period of overlap, then the |
| 10:05:47 | 24 | model has no way to distinguish what part of that |
| 10:05:50 | 25 | undercompensation comes from the agreement that we're |

| | | |
|---|---|---|
| 10:05:52 | 1 | trying to measure the effect of, and what comes from the |
| 10:05:54 | 2 | agreement that we are not trying to measure the effect |
| 10:05:56 | 3 | of. |
| 10:05:57 | 4 |    Q.  So let's call -- I'm going to refer to those |
| 10:05:59 | 5 | agreements as the agreements were not trying to measure |
| 10:06:03 | 6 | the effect as lawful agreements. |
| 10:06:09 | 7 |       (Reporter clarification.) |
| 10:06:09 | 8 |       THE WITNESS:  Okay. |
| 10:06:09 | 9 |       MR. GLACKIN:  Q.  Suppose you had a lawful |
| 10:06:10 | 10 | agreement that began in 1995 and continued up to the |
| 10:06:13 | 11 | present day; why would the regression analysis, as |
| 10:06:19 | 12 | it is constructed, fail to control for the existence |
| 10:06:22 | 13 | of that agreement? |
| 10:06:24 | 14 |       MR. KIERNAN:  Object to form. |
| 10:06:32 | 15 |       THE WITNESS:  I think that -- I would want to |
| 10:06:37 | 16 | look a little bit further to see what the nature of the |
| 10:06:39 | 17 | agreement was specifically, and who the two parties were |
| 10:06:44 | 18 | to the agreement.  But just on the hypothetical, an |
| 10:06:47 | 19 | agreement that spans the entirety of the period, then if |
| 10:06:51 | 20 | there is an impact on undercompensation from the |
| 10:06:54 | 21 | agreement, it's not necessarily going to be uniform |
| 10:06:56 | 22 | throughout the entire period. |
| 10:06:58 | 23 |       And because there are not sufficient controls |
| 10:07:01 | 24 | during what we're calling the damage period, 2005 to |
| 10:07:07 | 25 | 2009, and there are events within that damage period, |

| | | |
|---|---|---|
| 10:07:11 | 1 | undercompensation that should be connected to the lawful |
| 10:07:14 | 2 | agreement can be wrapped up in undercompensation that is |
| 10:07:17 | 3 | coming from the -- from the recession or other |
| 10:07:21 | 4 | compensation events at the defendants that happened |
| 10:07:23 | 5 | inside the damage period and not under the -- outside |
| 10:07:25 | 6 | the damage period. |
| 10:07:27 | 7 |     They're being swept into compensation where it |
| 10:07:29 | 8 | should be that they are really attributed to different |
| 10:07:32 | 9 | causes.  And if one of those causes is a lawful |
| 10:07:35 | 10 | agreement, even if it spans the entirety of the period, |
| 10:07:38 | 11 | could still be swept into damages. |
| 10:07:40 | 12 |     MR. GLACKIN:  Q.  Is it your opinion that |
| 10:07:41 | 13 | that actually happened with respect to any of these |
| 10:07:44 | 14 | four lawful agreements that you've identified here? |
| 10:07:48 | 15 |     MR. KIERNAN:  Object to form. |
| 10:07:50 | 16 |     THE WITNESS:  As I sit here, I don't recall |
| 10:07:52 | 17 | what the dates were and whether they, all or any of |
| 10:07:54 | 18 | them, span 1995 through 2011, but it is my general |
| 10:07:58 | 19 | opinion that what is being picked up by Dr. Leamer's |
| 10:08:01 | 20 | conduct variable includes more events than certainly the |
| 10:08:04 | 21 | conduct that we're trying to measure at issue.  And I've |
| 10:08:06 | 22 | given you an example of how one of those agreements may |
| 10:08:08 | 23 | be infecting the analyses. |
| 10:08:11 | 24 |     MR. GLACKIN:  Q.  So what I'm asking is, is |
| 10:08:13 | 25 | it your affirmative opinion that any one of these |

```
10:08:19  1   four lawful agreements that you've listed here, in
10:08:23  2   fact, did cause undercompensation that was swept in,
10:08:27  3   as you've put it, into the damages calculation of
10:08:30  4   Dr. Leamer?
10:08:31  5           MR. KIERNAN:  Object to form.
10:08:32  6           THE WITNESS:  It is not.  My opinion is that
10:08:35  7   under the theories put forward by plaintiffs, that these
10:08:38  8   agreements, each one of them, regardless of terms,
10:08:41  9   length and the nature of the two parties affects
10:08:45 10   undercompensation, then it is a necessary thing
10:08:47 11   consistent with that theory to carve out the impact of
10:08:50 12   the lawful agreements from the alleged impact of the
10:08:52 13   challenged agreements.
10:08:54 14           MR. GLACKIN:  Q.  You understand that -- or
10:08:55 15   you believe that the terms of the agreements are
10:08:57 16   irrelevant to the plaintiffs' theory of impact?
10:09:03 17           MR. KIERNAN:  Object to form.
10:09:10 18           THE WITNESS:  I think that the question is
10:09:12 19   combining a couple of different things.  The terms of
10:09:15 20   the agreements are not necessarily irrelevant to the
10:09:18 21   plaintiffs' theory of impact.  I think they reference
10:09:21 22   the various terms of the agreement in the complaint.
10:09:23 23   Specifically, though, Dr. Leamer has not made any
10:09:27 24   adjustments for variation in terms, agreement to
10:09:29 25   agreement, he treats them identically.
```

```
 1            I, Gina V. Carbone, Certified Shorthand
 2   Reporter licensed in the State of California, License
 3   No. 8249, hereby certify that the deponent was by me
 4   first duly sworn and the foregoing testimony was
 5   reported by me and was thereafter transcribed with
 6   computer-aided transcription; that the foregoing is a
 7   full, complete, and true record of said proceedings.
 8            I further certify that I am not of counsel or
 9   attorney for either of any of the parties in the
10   foregoing proceeding and caption named or in any way
11   interested in the outcome of the cause in said caption.
12            The dismantling, unsealing, or unbinding of the
13   original transcript will render the reporter's
14   certificates null and void.
15            In witness whereof, I have hereunto set my hand
16   this day:  December 16, 2013.
17            ___X___ Reading and Signing was requested.
18            _____ Reading and Signing was waived.
19            _____ Reading and signing was not requested.
20
21
22                           _____
23                           GINA   V. CARBONE
24                           CSR 8249, RMR, CRR, CCRR
25
```