1  Richard M. Heimann (State Bar No. 63607)
   Kelly M. Dermody (State Bar No. 171716)
2  Eric B. Fastiff (State Bar No. 182260)
   Brendan P. Glackin (State Bar No. 199643)
3  Dean M. Harvey (State Bar No. 250298)
   Anne B. Shaver (State Bar No. 255928)
4  Lisa J. Cisneros (State Bar No. 251473)
   LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
5  275 Battery Street, 29th Floor
   San Francisco, CA  94111-3339
6  Telephone:  (415) 956-1000
   Facsimile:  (415) 956-1008
7
   Joseph R. Saveri (State Bar No. 130064)
8  James G. Dallal (State Bar No. 277826)
   JOSEPH SAVERI LAW FIRM, INC.
9  505 Montgomery Street, Suite 625
   San Francisco, CA  94111
10 Telephone:  (415) 500-6800
   Facsimile:  (415) 500-6803
11
   *Co-Lead Class Counsel*
12

13             UNITED STATES DISTRICT COURT

14           NORTHERN DISTRICT OF CALIFORNIA

15                  SAN JOSE DIVISION

16

17 IN RE: HIGH-TECH EMPLOYEE            Master Docket No. 11-CV-2509-LHK
   ANTITRUST LITIGATION
18                                      **NOTICE OF MOTION AND MOTION
                                        FOR ATTORNEYS' FEES,**
19 THIS DOCUMENT RELATES TO:            **REIMBURSEMENT OF EXPENSES, AND
                                        SERVICE AWARDS**
20 ALL ACTIONS
                                        Date:      May 1, 2014
21                                      Time:      1:30 pm
                                        Courtroom: Room 8, 4th Floor
22                                      Judge:     Honorable Lucy H. Koh

23

24

25

26

27

28

1

**TABLE OF CONTENTS**

2

Page

3      NOTICE OF MOTION AND MOTION ..................................................................................... 1

4      I.      INTRODUCTION ....................................................................................... 2

5      II.     CLASS COUNSEL ARE ENTITLED TO A REASONABLE FEE OF
               TWENTY-FIVE PERCENT OF THE SETTLEMENT FUNDS ......................... 3

6              A.     Class Counsel Obtained Excellent Results for the Class In Light of
                      the Burdens of the Litigation. ........................................................... 5

7              B.     Class Counsel Assumed Significant Risks In Light of the
                      Complexity of the Legal and Factual Issues in this Case........................... 8

8              C.     Awards in Similar Cases Demonstrate That Class Counsel Seek A
                      Modest Fee Award. ........................................................................... 8

9
               D.     Other Factors Support Approval of Class Counsels' Fee Request ........... 10

10                    1.     Counsel's Skill and Experience ................................................ 10

11                    2.     A Partial Lodestar Cross-Check Alone Supports the Fee
                             Request ........................................................................... 11

12
                      3.     Class Members Will Have the Opportunity to Review Class
13                           Counsel's Fee Request Prior to the Deadline for Objections........ 12

14     III.    CLASS COUNSEL ARE ENTITLED TO REIMBURSEMENT OF
               EXPENSES UNDER THE SETTLEMENT AGREEMENT. .............................. 12

15     IV.     THE REQUESTED SERVICE AWARDS ARE REASONABLE. ..................... 14

16             A.     The Class Representatives Have Taken Significant Steps to
                      Advance the Litigation and Have Expended Substantial Time and
                      Effort On Behalf of the Class.............................................................. 14

17             B.     The Class Representatives Assumed Significant Risks in Leading
18                    this Case. ....................................................................................... 15

19             C.     The Class Has Benefited Significantly Due To The Class
                      Representatives' Actions. .................................................................. 16

20             D.     The Service Awards Sought In This Case Are Modest Compared to
                      the Awards Granted in Other Complex Litigation.................................. 18

21     V.      CONCLUSION ....................................................................................... 20

22

23

24

25

26

27

28

MOT. FOR ATTORNEYS' FEES, REIMBURSEMENT
                                                                     OF EXPENSES, AND SERVICE AWARDS
                                                                     MASTER DOCKET NO. 11-CV-2509-LHK

# TABLE OF AUTHORITIES

**Page**

## CASES

*Alpine Pharmacy, Inc. v. Charles Pfizer & Co., Inc.*,
481 F.2d 1045 (2d Cir.), *cert. denied*,
414 U.S. 1092 (1973) ........................................................................ 4

*Amochaev v. Citigroup Global Markets, Inc.*,
No. 05-1298 PJH (N.D. Cal. Aug. 13, 2008) .......................................... 18

*Boeing Co. v. Van Gemert*,
444 U.S. 472 (1980) ........................................................................ 4

*Bradburn Parent Teacher Store, Inc. v. 3M*,
513 F. Supp. 2d 322 (E.D. Pa. 2007) .................................................. 19

*Brailsford v. Jackson Hewitt Inc.*,
2007 U.S. Dist. LEXIS 35509 (N.D. Cal.May 3, 2007) ............................ 9

*Buccellato v. AT&T Operations, Inc.*,
2011 U.S. Dist. LEXIS 111361 (N.D. Cal. June 30, 2011) ........................ 8

*Calibuso v. Bank of America Corp.*,
No. 10-1413 (E.D.N.Y Dec. 27, 2013) ............................................... 18

*Central R.R. & Banking Co. v. Pettus*,
113 U.S. 116 (1885) ........................................................................ 4

*City of Detroit v. Grinnell Corp.*,
495 F.2d 448 (2d Cir. 1974) ............................................................. 8

*Craft v. County of San Bernardino*,
624 F. Supp. 2d 1113 (C.D. Cal. 2008) ............................................... 11

*Fischel v. Equitable Life Assur. Soc'y*,
307 F.3d 997 (9th Cir. 2002) ........................................................... 4

*Frank v. Eastman Kodak Co.*,
228 F.R.D. 174 (W.D.N.Y. 2005) ......................................... 14, 15, 17

*Garner v. State Farm Ins.*,
2010 U.S. Dist. LEXIS 49482 (N.D. Cal. April 22, 2010) ......................... 9

*Guippone v. BH S&B Holdings, LLC*,
2011 U.S. Dist. LEXIS 126026
(S.D.N.Y. Oct. 28, 2011) ................................................................ 16

*Hawaii v. Standard Oil Co. of Cal.*,
405 U.S. 251 (1972) ........................................................................ 4

*Hernandez v. Kovacevich "5" Farms*,
2005 U.S. Dist. LEXIS 48605
(E.D. Cal. September 30, 2005) .......................................................... 9

*In re Activision Sec. Litig.*,
723 F. Supp. 1373 (N.D. Cal. 1989) ................................................... 9

*In re Cardizem CD Antitrust Litig.*,
218 F.R.D. 508 (E.D. Mich. 2003) ..................................................... 19

*In re Cont'l Ill. Sec. Litig.*,
962 F.2d 566 (7th Cir. 1992) ............................................................ 16

1

**TABLE OF AUTHORITIES**
(continued)

2

Page

3
*In re CV Therapeutics, Inc. Securities Litig.,*
2007 U.S. Dist. LEXIS 98244

4
(N.D. Cal. April 4, 2007) ............................................................................ 5, 9, 18

5
*In re Dynamic Random Access Memory (DRAM) Antitrust Litig.,*
2007 U.S. Dist. LEXIS 103027

6
(N.D. Cal. Aug. 16, 2007).................................................................................. 5, 8

*In re Heritage Bond Litig.,*
7
2005 U.S. Dist. LEXIS 13555
(C.D. Cal. June 10, 2005)................................................................................. 9, 10

8
*In re Mercury Interactive Corp. Sec. Litig.,*
9
618 F.3d 988 (9th Cir. 2010)................................................................................ 12

*In re Metoprolol Succinate Antitrust Litig.,*
10
No. 06-52, Docket No. 193 (D. Del, Feb, 21, 2012).............................................. 18

11
*In re Omnivision Techs.,*
559 F. Supp. 2d 1036 (N.D. Cal. 2007) ................................................................. 9

12
*In re Pac. Enters. Sec. Litig.,*
47 F.3d 373 (9th Cir. 1995)................................................................................... 9

13
*In re Revco Sec. Litig.,*
14
1992 U.S. Dist. LEXIS 7852
(N.D. Ohio May 6, 1992)..................................................................................... 19

15
*In re Rite Aid Corp. Sec. Litig.,*
396 F.3d 294 (3d Cir. 2005)................................................................................. 12

16
*In re Sorbates Direct Purchaser Antitrust Litig.,*
17
2002 U.S. Dist. LEXIS 23468
(N.D. Cal. Nov. 15, 2002).................................................................................. 5, 9

18
*In re Tricor Direct Purchaser Antitrust Litig.,*
No. 05-00340, Docket No. 543 (D. Del. Apr. 23, 2009) ......................................... 18

19
*In re Washington Pub. Power Supply Sys. Sec. Litig.,*
20
19 F.3d 1291 (9th Cir. 1994)................................................................................. 4

*In re: TFT-LCD (Flat Panel) Antitrust Litig.,*
21
No. 07-1827 (N.D. Cal. January 14, 2013) ................................................... 4, 8, 10

22
*In re: Titanium Dioxide Antitrust Litig.,*
No. 10-00318, Docket No. 556 (D. Md. Dec.13, 2013) .................................... 10, 18

23
*Lewis v. Wells Fargo & Co.,*
No. 08-2670, Docket No. 315 (N.D. Cal. April 29, 2011)....................................... 18

24
*Linney v. Cellular Alaska P'ship,*
25
997 U.S. Dist. LEXIS 24300
(N.D. Cal. Jul. 18, 1997)....................................................................................... 9

26
*McCoy v. Health Net, Inc.,*
569 F. Supp. 2d 448 (D.N.J. 2008) ...................................................................... 18

27
*Meijer v. Abbott Laboratories,*
28
No. 07-05985 (N.D. Cal. Aug. 11, 2011)................................................... 4, 8, 10, 18

- iii -

1

2

# TABLE OF AUTHORITIES
## (continued)

**Page**

3

*Meijer, Inc. v. Barr Pharms.*,
   No. 05-2195, Docket No. 210 (D.D.C. Apr. 20, 2009)............................................ 18

4

*Mills v. Elec. Auto-Lite Co.*,
   396 U.S. 375 (1970)..................................................................................................... 4

5

*Mitland Raleigh-Durham v. Myer*,
   840 F. Supp. 235 (S.D.N.Y.)..................................................................................... 13

6

7

*Parker v. Jekyll & Hyde Entm't Holdings, L.L.C.*,
   2010 U.S. Dist. LEXIS 12762 (S.D.N.Y. 2010)................................... 14, 15, 16, 17

8

*Paul, Johnson, Alston & Hunt v. Granulty*,
   886 F.2d 268 (9th Cir. 1989)........................................................................ 2, 5, 8, 9

9

*Perma Life Mufflers, Inc. v. Int'l Parts Corp.*,
   392 U.S. 134 (1968)..................................................................................................... 4

10

*Pillsbury Co. v. Conboy*,
   459 U.S. 248 (1983)..................................................................................................... 4

11

*Radcliffe v. Experian Info. Solutions*,
   715 F.3d 1157 (9th Cir. 2013).............................................................................. 14, 17

12

13

*Reiter v. Sonotone Corp.*,
   442 U.S. 330 (1979)..................................................................................................... 4

14

*Reyes v. Altmarea Group*,
   2011 U.S. Dist. LEXIS 115984
   (S.D.N.Y. Aug. 16, 2011)......................................................................................... 17

15

16

*Roberts v. Texaco, Inc.*,
   979 F. Supp. 185 (S.D.N.Y. 1997)...................................................................... 15, 19

17

*Rochester Drug Co-Operative, Inc. v. Braintree Laboratories, Inc.*,
   No. 07-142, Docket No. 243 (D. Del. May 31, 2012) ............................................. 18

18

*Rodriguez v. West Pub'g Corp.*,
   563 F.3d 948 (9th Cir. 2009)..................................................................................... 14

19

*Ross v. U.S. Bank Nat'l Ass'n*,
   2010 U.S. Dist. LEXIS 107857
   (N.D. Cal. Sept. 29, 2010).................................................................................... 5, 18

20

21

*Sewell v. Bovis Lend Lease LMB, Inc.*,
   2012 U.S. Dist. LEXIS 53556
   (S.D.N.Y. April 20, 2012)......................................................................................... 16

22

23

*Staton v. Boeing*,
   327 F.3d 938 (9th Cir. 2003)..................................................................................... 14

24

*Van Vranken v. ARCO*,
   901 F. Supp. 294 (N.D. Cal. 1995) ......................................................................... 5, 9

25

*Vedachalam v. Tata Consultancy Servs. Ltd.*,
   2013 U.S. Dist. LEXIS 100796
   (N.D. Cal. July 18, 2013)...................................................................................... 8, 18

26

27

*Velez v. Majik Cleaning Serv.*,
   2007 U.S. Dist. LEXIS 46223
   (S.D.N.Y June 22, 2007)........................................................................................... 17

28

- iv -

1

**TABLE OF AUTHORITIES**
(continued)

2

Page

3

*Vincent v. Hughes Air West, Inc.*,
    557 F.2d 759 (9th Cir. 1977).............................................................................. 13

4

*Vizcaino v. Microsoft Corp.*,
    290 F.3d 1043 (9th Cir. 2002)....................................................................... 2, 4, 5, 8

5

*Wininger v. SI Mgmt. L.P.*,
    301 F.3d 1115 (9th Cir. 2002)............................................................................ 4

6

7

**OTHER AUTHORITIES**

Brian T. Fitzpatrick, *An Empirical Study of Class Action Settlements and Their Fee
    Award*,

8

    7 J. Empirical Legal Stud. 811 (2010) .................................................................... 4

9

H. Newberg, ATTORNEY FEE AWARDS
    § 2.19 (1986)...................................................................................................... 13

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- v -

1

**NOTICE OF MOTION AND MOTION**

2

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

3

**PLEASE TAKE NOTICE THAT** on May 1, 2014 at 1:30 pm., or as soon thereafter as

4  this matter may be heard, before the Honorable Lucy H. Koh, United States District Court for the

5  Northern District of California, located in Courtroom 8, on the 4th Floor of the Robert F.

6  Peckham Federal Building, 280 South 1st Street, San Jose, California, Plaintiffs will, and hereby

7  do, move the Court pursuant to Federal Rule of Civil Procedure 23(h)(1) and 54(d)(2) for an order

8  awarding:

9      1.  Attorneys' fees to Class Counsel in the amount of $5,000,000, which is twenty-five

10         percent of the Settlement Funds totaling $20,000,000;

11     2.  $3,699,844.31 in expenses Class Counsel necessarily incurred in connection with the

12        prosecution of this action prior to October 30, 2013, the date of Preliminary Settlement

13        Approval; and

14     3.  Service awards amounting to a total of $20,000 for each of the five court-appointed Class

15        Representatives, to be paid pursuant to the Settlement Agreement with Lucasfilm Ltd.

16        And Pixar ("Lucasfilm/Pixar Settlement") and the Settlement Agreement with Intuit, Inc.

17        ("Intuit Settlement"), each of which provides for a separate award of $10,000 for each

18        Class Representative.

19         This motion is based on this Notice of Motion and the accompanying Memorandum of

20  Points and Authorities; the Declaration of Kelly M. Dermody ("Dermody Decl."); the Declaration

21  of Joseph Saveri; the Declaration of Linda P. Nussbaum, the Declaration of Eric Cramer; the

22  Declarations of Class Representatives Michael Devine, Mark Fichtner, Siddharth Hariharan and

23  Daniel Stover; the Declaration of Dean Harvey on behalf of deceased Class Representative

24  Brandon Marshall; argument by counsel at the hearing before this Court; any papers filed in

25  reply; and all papers and records in this matter.

26

27

28

- 1 -

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

Plaintiffs respectfully move this Court for an order granting: (1) attorneys' fees in the amount of $5,000,000, representing twenty-five percent (25%) of the overall $20 million amount that Defendants Intuit, Inc., Lucasfilm Ltd., and Pixar ("Settling Defendants") have agreed to pay to resolve the claims against them (hereinafter "Settlement Funds"); (2) reimbursement of $3,699,844.31 in out-of-pocket expenses that Class Counsel incurred in successfully prosecuting the claims in this action; and (3) service awards in the total amount of $20,000 each to Class Representatives Michael Devine, Mark Fichtner, Siddharth Hariharan and Daniel Stover, as well as to the estate of recently deceased Class Representative Brandon Marshall.[1]

A fee award of twenty-five percent is the "bench mark" fee award for common fund class settlements, like this one, in the Ninth Circuit. *Paul, Johnson*, *Alston & Hunt v. Granulty*, 886 F.2d 268, 272 (9th Cir. 1989). That "bench mark" is subject to adjustment—up or down—based on a number of factors all of which would apply here, were Plaintiffs' counsel to request such an adjustment. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048-50 (9th Cir. 2002). Nonetheless, Class Counsel do not make a request for such adjustment. Class Counsel have litigated this case tenaciously, fronting all costs and working on a contingency basis against the almost boundless resources of the seven Defendants. The two Settlements (against the smallest employers in the alleged conspiracy[2]) ensure that Class members will receive partial payments for their alleged losses. The Lucasfilm/Pixar Settlement creates an all-cash fund of $9,000,000 and the Intuit Settlement creates an all-cash fund of $11,000,000, for a total of $20,000,000 for the benefit of the Class. Importantly, the Settlements preserve Plaintiffs' claims against the four Non-Settling Defendants for the *entire* amount of Plaintiffs' damages based on joint and several liability under the antitrust laws.

---

[1] Both of the Settlements provide for a service award of $10,000 for each Class Representative, generating a total award of $20,000 for each Class Representative. Lucasfilm/Pixar Settlement § VI; Intuit Settlement § VI.

[2] As a point of reference, Intuit, Lucasfilm, and Pixar together account for less than 8% of Class members, and together account for approximately 5% of total Class compensation. *See* Oct. 1, 2012 Leamer Report at p.23; Dkt. 190.

- 2 -

1    This complex action entailed significant risks for Class Counsel and created exceedingly

2    high demands on their time and resources.  At every stage of this litigation, all seven Defendants

3    vigorously contested it.  Prior to Preliminary Settlement Approval, lawyers representing the

4    Plaintiffs expended thousands of hours prosecuting this case, including reviewing millions of

5    pages of documents; preparing for and taking or defending nearly 100 depositions; and preparing

6    and submitting voluminous filings in support of class certification, among other things.

7    Declaration of Kelly M. Dermody in Support of Plaintiffs' Motion for Attorneys' Fees,

8    Reimbursement of Expenses, and Service Awards ["Dermody Decl."], ¶ 9.  Class Counsel have

9    also incurred substantial out-of-pocket costs to advance this litigation, including for statistical,

10   compensation design, and labor market experts; deposition reporting and transcripts; mediation

11   services; and litigation support vendors.  *See id.*  Class Counsel's request for reimbursement of

12   $3,699,844.31 for expenses incurred as of October 30, 2013 (the date of Preliminary Settlement

13   Approval) is also fully supported by applicable law.  Finally, the $20,000 service awards

14   requested for the Class Representatives are reasonable in light of the benefit afforded to the Class,

15   the time and effort the Class Representatives expended in furtherance of the litigation, and the

16   risks they endured in order to vindicate not only their rights, but the rights of all absent Class

17   members.

18   For the reasons set forth below, Plaintiffs respectfully submit that the attorneys' fees,

19   expense reimbursements, and service awards to the Class Representatives are fair and reasonable

20   under the applicable legal standards, and should be granted by this Court.

21   **II.     CLASS COUNSEL ARE ENTITLED TO A REASONABLE FEE OF TWENTY-
           FIVE PERCENT OF THE SETTLEMENT FUNDS**

22

23   The firms of Lieff, Cabraser, Heimann & Bernstein, LLP ("LCHB"); the Joseph Saveri

24   Law Firm, Inc. ("JSLF"); Berger & Montague, P.C. ("Berger & Montague") and Grant &

25   Eisenhofer PA ("G&E") (collectively, "Class Counsel") are entitled to reasonable attorneys' fees

26   to compensate them for their work on behalf of the Class.  Class Members have been notified of

27   Class Counsel's intent to seek attorneys' fees.  *See* Court-Approved Revised Notice, Dkt. 553-1

28   ("Plaintiffs' Counsel will also ask the Court to approve payment of attorneys' fees of up to thirty

1  percent (or $6 million) of the Settlement Funds.").

2      It is well settled that "a lawyer who recovers a common fund for the benefit of persons

3  other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole."

4  *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *see also Mills v. Elec. Auto-Lite Co.*, 396

5  U.S. 375, 393 (1970); *Central R.R. & Banking Co. v. Pettus*, 113 U.S. 116, 123 (1885).  The

6  purpose of this doctrine is that "those who benefit from the creation of the fund should share the

7  wealth with the lawyers whose skill and effort helped create it."  *In re Washington Pub. Power*

8  *Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1300 (9th Cir. 1994) ("*WPPSS*").

9      These principles are particularly important in complex litigation, where private

10  enforcement is a necessary component of legal compliance.  *See, e.g.*, *Pillsbury Co. v. Conboy*,

11  459 U.S. 248, 262-63 (1983); *Reiter v. Sonotone Corp.*, 442 U.S. 330, 331 (1979); *Hawaii v.*

12  *Standard Oil Co. of Cal.*, 405 U.S. 251, 266 (1972); *Perma Life Mufflers, Inc. v. Int'l Parts*

13  *Corp.*, 392 U.S. 134, 139 (1968).  Fee awards in successful cases, such as this one, encourage

14  meritorious class actions, and thereby promote private enforcement of, and compliance with, the

15  antitrust laws.  As noted by the Second Circuit in *Alpine Pharmacy, Inc. v. Charles Pfizer & Co.,*

16  *Inc.*, "[i]n the absence of adequate attorneys' fee awards, many antitrust actions would not be

17  commenced . . . ." 481 F.2d 1045, 1050 (2d Cir.), *cert. denied*, 414 U.S. 1092 (1973).  Antitrust

18  law, in particular, "depends heavily on the notion of the private attorney general as a vindicator of

19  the public policy."  *Id.* (citing *Perma Life Mufflers*, 392 U.S. at 134).

20      In the Ninth Circuit, the district court has discretion in a common fund case to choose

21  either the "percentage-of-the-fund" or the "lodestar" method in calculating fees.  *Fischel v.*

22  *Equitable Life Assur. Soc'y*, 307 F.3d 997, 1006 (9th Cir. 2002); *Wininger v. SI Mgmt. L.P.*, 301

23  F.3d 1115, 1123-24 & n.9 (9th Cir. 2002); *Vizcaino*, 290 F.3d at 1047; *WPPSS*, 19 F.3d at 1296.

24  Modern courts exhibit a clear preference for the "percentage-of-the-fund" method,[3] and virtually

25  all of the major recent antitrust cases in this District have applied the percentage of the fund

26  approach.  *See, e.g.*, *In re: TFT-LCD (Flat Panel) Antitrust Litig.*, No. 07-1827 (N.D. Cal.

27

28  [3] *See* Brian T. Fitzpatrick, *An Empirical Study of Class Action Settlements and Their Fee Award*, 7 J. Empirical Legal Stud. 811, 832 (2010).

1   January 14, 2013)[4]; *Meijer v. Abbott Laboratories*, No. 07-05985 (N.D. Cal. Aug. 11, 2011); *Ross*

2   *v. U.S. Bank Nat'l Ass'n*, No. 07-02951, 2010 U.S. Dist. LEXIS 107857, at *4-5 (N.D. Cal.

3   Sept. 29, 2010); *In re CV Therapeutics, Inc. Securities Litig.*, No. 03-3709, 2007 U.S. Dist.

4   LEXIS 98244, at *2 (N.D. Cal. April 4, 2007); *In re Dynamic Random Access Memory (DRAM)*

5   *Antitrust Litig.*, No. M-02-1486, 2007 U.S. Dist. LEXIS 103027, at *1-2 (N.D. Cal. Aug. 16,

6   2007); *In re Sorbates Direct Purchaser Antitrust Litig.*, No. 98-4886, 2002 U.S. Dist. LEXIS

7   23468, at *9-10 (N.D. Cal. Nov. 15, 2002); *Van Vranken v. ARCO*, 901 F. Supp. 294, 298 (N.D.

8   Cal. 1995).

9          As described above, the Ninth Circuit has recognized twenty-five percent as the bench

10  mark percentage for the fee award, *see Paul, Johnson*, 886 F.2d at 272, and that is the amount

11  Plaintiffs seek here.  In *Vizcaino*, the Ninth Circuit established that a court may adjust a fee award

12  upward or downward from the twenty-five percent bench mark based on the following factors:

13          (1)   the exceptional results for the class;
14          (2)   the risk for its counsel;
            (3)   whether any individual non-monetary benefits were
15                obtained;
            (4)   whether the fee is at or below market rates; and
16          (5)   the burden on class counsel of prosecuting the case,
                  including whether the case was litigated on a contingency basis.
17

18  290 F.3d at 1048-50 (internal quotations omitted).

19          Each of the *Vizcaino* factors weigh in favor of granting approval of Plaintiffs' application

20  for a bench mark fee award and would, indeed, support a fee award in excess of that requested

21  here.

22     **A.      Class Counsel Obtained Excellent Results for the Class In Light of the
               Burdens of the Litigation.**
23

24          This case has been hotly contested by all Defendants.  Class Counsel have expended

25  extraordinary efforts to marshal the complex and voluminous statistical and documentary

26  evidence required for class certification and the merits.  Plaintiffs have been tested at every step

27  of the process.

28  ───────────────
[4] All unpublished orders cited herein are attached as Exhibits 9-17 to the Dermody Decl.

1    For example, as the Court well knows, Defendants mounted substantial challenges at the

2    outset, seeking to dismiss Plaintiffs' Consolidated Amended Complaint.  Dkts. 79 and 83.  The

3    Court denied both motions in substantial part.[5]  Dkt. 120 (Apr. 18, 2012 Order).

4    The parties completed broad, extensive, and thorough discovery related to both class

5    certification and the merits after the Court lifted a discovery stay in January 2012.  Prior to

6    October 30, 2013 (the date this Court preliminarily approved the Settlements), Plaintiffs served

7    seventy-five document requests, in response to which Defendants collectively produced over

8    325,000 documents (over 3.2 million pages).  Dermody Decl., ¶ 9.  Plaintiffs also took or

9    defended nearly 100 depositions, including those of 85 Defendant fact witnesses and all five

10   Class Representatives.  *Id.*  Defendants propounded document requests, in response to which

11   Plaintiffs produced over 31,000 pages.  *Id.*  With expert assistance, Plaintiffs' counsel analyzed

12   vast amounts of computerized employee compensation and recruiting data, including nearly 1,000

13   files of employment related data exceeding fifteen gigabytes.  *Id.*  The discovery process, which

14   is now complete, was comprehensive, and it required the parties to engage in numerous and

15   extensive meetings and conferences concerning the scope of discovery and the analysis regarding

16   the various electronic data, policy documents, and other files produced.  *Id.*

17   Plaintiffs filed a motion for class certification on October 1, 2012.  The motion required

18   intense marshaling of the documentary record, and also a lengthy report by Dr. Edward E.

19   Leamer of UCLA.  The report included a working model of damages.  Defendants opposed the

20   motion with their own declarations and expert report.  The parties deposed each other's experts.

21   Plaintiffs filed reply papers in December, 2012, and argued the motion in January, 2013.

22   On April 5, 2013, the Court issued its Order Granting in Part and Denying in Part

23   Plaintiffs' Motion for Class Certification.  Dkt. 382.  The Court requested further briefing on

24   whether the Rule 23(b)(3) predominance standard was met with respect to the common impact on

25   the proposed class.  *Id.* at 45.  The Court recognized that significant discovery had been

26   completed since Plaintiffs filed their initial Motion for Class Certification on October 1, 2012.  *Id.*

27

28   [5] The only exception was that Plaintiffs' UCL claim for restitution and disgorgement was
dismissed for failure to allege a vested interest. Dkt. 120 (Apr. 18, 2012 Order).

MOT. FOR ATTORNEYS' FEES, REIMBURSEMENT
OF EXPENSE, AND SERVICE AWARDS
MASTER DOCKET NO. 11-CV-2509-LHK

1    at 45 ("the Court believes that, with the benefit of discovery that has occurred since the hearing

2    on this motion, Plaintiffs may be able to offer further proof to demonstrate how common

3    evidence will be able to show class-wide impact to demonstrate why common issues predominate

4    over individual ones.").

5         Plaintiffs' Supplemental Motion for Class Certification marshaled additional documentary

6    evidence, testimony, and expert analyses.  *See* Dkt. 418-1 (Declaration of Dean M. Harvey); Dkt.

7    418-2 (Declaration of Lisa J. Cisneros); Dkt. 418-4 (Leamer Supplemental Report); Dkt. 418-3

8    (Hallock Report); Dkt. 456 (Declaration of Anne B. Shaver); Dkt. 457 (Declaration of Anne B.

9    Shaver).  Upon considering the additional, voluminous evidentiary record in support of class

10   certification, the Court granted Plaintiffs' motion on October 24, 2014, Dkt 531.[6]

11        In addition to the litigation efforts and success, Class Counsel have secured the

12   Settlements totaling $20 million for the benefit of the Class.  The Settlement Funds will be

13   available to Class members without the uncertainties and delays associated with Non-Settling

14   Defendants' pending motions for summary judgment and evidentiary challenges, as well as trial.

15   Furthermore, Settling Defendants have agreed to maintain confidentiality regarding whether and

16   how Class members respond to the Class notice.  Lucasfilm/Pixar Settlement § II.A and Ex. B at

17   10; Intuit Settlement § II.A and Ex. B and 10.  Notably, though Plaintiffs have settled their claims

18   with three of the Defendants, they will continue to pursue from Non-Settling Defendants

19   monetary recovery for the *entire* amount of Plaintiffs' damages based on joint and several

20   liability under the antitrust laws.  As additional non-monetary consideration, the Settling

21   Defendants have agreed to certain cooperation with Class Counsel in the further prosecution of

22   Plaintiffs' claims against the Non-Settling Defendants.  Lucasfilm/Pixar Settlement § III.B; Intuit

23   Settlement § III.B.

24        Taking account of the monetary and non-monetary aspects of the Settlements, as well as

25   the litigation achievements of Class Counsel, it is clear that Class Counsel have provided a

26

27   [6] Plaintiffs have continued litigating the case against the non-Settling Defendants, successfully
     defeating a Fed. R. Civ. Proc. 23(f) petition of the class certification order, opposing summary

28   judgment motions, moving to strike and opposing such motions with respect to certain expert
     testimony, and preparing for trial.

1  significant benefit to the Class especially when weighed against the burdens of this resource-

2  intensive case.

3      **B.      Class Counsel Assumed Significant Risks In Light of the Complexity of the**
        **Legal and Factual Issues in this Case.**

4

5      Uncertainty that an ultimate recovery will be obtained is highly relevant in determining

6  the reasonableness of an award.  *See Vizcaino*, 290 F.3d at 1048 ("Risk is a relevant

7  circumstance" in applying the percentage fund method); *see also City of Detroit v. Grinnell

8  Corp.,* 495 F.2d 448, 470-71 (2d Cir. 1974) ("[D]espite the most rigorous and competent of

9  efforts, success is never guaranteed.").

10     Large-scale antitrust and employment cases of this type are, by their very nature,

11 complicated and time-consuming.  Here, Class Counsel prosecuted this action without any

12 assurance of payment for their services, litigating this case on a wholly contingent basis in the

13 face of significant risk.  Dermody Decl., ¶¶ 10, 21.  In addition, Class Counsel overcame attacks

14 on the pleadings, discovery obstacles, and a rigorous class certification process that required two

15 full rounds of briefing and expert analysis.  There has been at all times the very real possibility of

16 an unsuccessful outcome and no fee of any kind, despite the significant costs advanced by Class

17 Counsel on behalf of the Class.  Plaintiffs amply satisfy this requirement.

18     **C.      Awards in Similar Cases Demonstrate That Class Counsel Seek A Modest Fee**
        **Award.**

19

20     As described above, Class Counsel's request for twenty-five percent of the Settlement

21 Funds adheres to the Ninth Circuit's established bench mark.  *Paul, Johnson*, 886 F.2d at 272.  In

22 fact, the request is modest compared with the percentages awarded plaintiffs' counsel in other

23 major antitrust or employment cases in this District.  *See*, *e.g.*, *Vedachalam v. Tata Consultancy

24 Servs. Ltd.*, No. 06-0963, 2013 U.S. Dist. LEXIS 100796, at *1-2 and 10 (N.D. Cal. July 18,

25 2013) (awarding 30% of $29,750,000 settlement fund in an employment class action); *In re: TFT-

26 LCD (Flat Panel) Antitrust Litig.*, No. 07-1827 (N.D. Cal. January 14, 2013) (30%); *Meijer v.

27 Abbott Laboratories*, No. 07-05985 (N.D. Cal. Aug. 11, 2011) (33 1/3%).  At most, the requested

28 amount here is equivalent to comparable cases.  *See Buccellato v. AT&T Operations, Inc.*, No. 10-

00463, 2011 U.S. Dist. LEXIS 111361 (N.D. Cal. June 30, 2011) (25 %); *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, No. M-02-1486, 2007 U.S. Dist. LEXIS 103027, at *1-2 (N.D. Cal. Aug. 16, 2007) (25%); *In re Sorbates Direct Purchaser Antitrust Litig.*, No. 98-4886, 2002 U.S. Dist. LEXIS 23468, at *9-10 (N.D. Cal. November 18, 2002) (25%); *Van Vranken v. ARCO*, 901 F. Supp. 294 (N.D. Cal. 1995) (25%).  As these precedents demonstrate, twenty-five percent, at a minimum, would be consistent with recognized "market rates" in this District.  *See Vizcaino*, 290 F.3d at 1050 (noting that "market rates" are a question of "lawyers' reasonable expectations, which are based on the circumstances of the case and the range of fee awards out of common funds of comparable size.").

Furthermore, since establishing the twenty-five percent bench mark in *Paul, Johnson*, 886 F.2d at 268, courts within the Ninth Circuit have routinely awarded fees above this bench mark in various types of complex litigation.  *See, e.g., In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 379 (9th Cir. 1995) (affirming fee award equal to 33% of fund); *Garner v. State Farm Ins.*, No. 08-1365, 2010 U.S. Dist. LEXIS 49482 (N.D. Cal. April 22, 2010) (awarding fee of 30% of the $15 million settlement fund); *In re CV Therapeutics, Inc. Sec. Litig.*, No. 03-3709, 2007 U.S. Dist. LEXIS 98244 (N.D. Cal. April 4, 2007) (30%); *In re Pac. Enters. Sec. Litig.*, 47 F.3d at 379 (affirming award equal to 33% of common fund); *Brailsford v. Jackson Hewitt Inc.*, No. 06-00700, 2007 U.S. Dist. LEXIS 35509 (N.D. Cal.May 3, 2007) (awarding fee equal to 30% of settlement fund); *In re Heritage Bond Litig.*, MDL No. 02-1475, 2005 U.S. Dist. LEXIS 13555, at *59, n.12 (C.D. Cal. June 10, 2005) (noting that more than 200 federal cases have awarded fees higher than 30%); *Hernandez v. Kovacevich "5" Farms*, No. 04-cv-5515, 2005 U.S. Dist. LEXIS 48605, at *25-31 (E.D. Cal. September 30, 2005) (33.3% of the $2.52 million settlement in an employment class action); *Linney v. Cellular Alaska P'ship*, No. 96-3008, 1997 U.S. Dist. LEXIS 24300, *20 (N.D. Cal. Jul. 18, 1997) (33.3% fee); *In re Activision Sec. Litig.*, 723 F. Supp. 1373, 1375 (N.D. Cal. 1989) (32.8% fee) (decided after *Paul, Johnson*).  Indeed, more than one court in this district has recognized that "in most common fund cases, the award exceeds [the twenty-five percent] benchmark."  *In re Omnivision Techs.*, 559 F. Supp. 2d 1036, 1047-48 (N.D. Cal. 2007) (referencing *Activision*, 723 F. Supp. at 1377-78, for conclusions that "nearly all common fund

awards range around 30% . . . [and that] absent extraordinary circumstances that suggest reasons to lower or increase the percentage, the rate should be set at 30%").

The awards granted in these complex cases demonstrate that a fee award at the Ninth Circuit bench mark is appropriate under these circumstances.

### D.     Other Factors Support Approval of Class Counsels' Fee Request

In addition to the *Vizcaino* factors, the Court may consider other factors including: counsel's skill and experience and counsel's lodestar.  *See*, *e.g.*, *In re Heritage Bond Litig.*, MDL 02-1475, 2005 U.S. Dist. LEXIS 13555, at *64-74 (C.D. Cal. June 10, 2005).

### 1.     Counsel's Skill and Experience

Class Counsel's skill and experience weigh in favor of granting the requested fees.  As detailed below, Class Counsel have substantial experience prosecuting large-scale complex class actions.

The LCHB attorneys principally charged with litigating this case have significant experience in successfully representing clients in complex class actions, as set forth in the LCHB firm resume.  *See* Dermody Decl., Ex. A.  Partner Richard M. Heimann is a highly-regarded trial lawyer, with extensive experience litigating plaintiff-side antitrust, securities, consumer, and personal injury cases.  *Id.*, ¶ 8.  He has tried over thirty civil jury trials, including the trial for the Direct-Purchaser Plaintiff Class in *In re: TFT-LCD (Flat Panel) Antitrust Litig.*, No. MDL 3:07-md-1827, before Judge Susan Illston.  *Id.*  Partner Kelly M. Dermody is Managing Partner of LCHB's San Francisco Office and chairs the firm's employment practice.  *Id.*  She has extensive experience litigating plaintiff-side employment and consumer matters and is one of four plaintiffs' lawyers nationally appointed to the Governing Council of the American Bar Association's Section of Labor and Employment Law.  *Id.*  Partner Brendan P. Glackin is a member of LCHB's antitrust practice group, with expertise in the telecommunications, computer, and high-tech industries.  *Id.*  Mr. Glackin has tried more than twenty criminal and civil matters. He served as a member of the *TFT-LCD* trial team, and served as co-trial counsel in the antitrust matter *Meijer v. Abbott Laboratories*, No. 07-5985, before Judge Claudia Wilken, and *In re: Titanium Dioxide Antitrust Litigation*, No. 10-00318 (RDB), in the District of Maryland.  *Id.*  In

2013, *the Recorder* recognized the firm's antitrust practice group as among the top three in California. *Id.*

The Court previously appointed Joseph Saveri as Interim Lead Counsel while he was a partner at the Lieff Cabraser firm. After opening his own firm, he was appointed to serve as Co-Lead Counsel with the Lieff Cabraser firm. Prior to opening his own law firm, Mr. Saveri served as the chair of LCHB's antitrust and intellectual property practice group. During his 25 year career, Mr. Saveri has represented plaintiffs in numerous antitrust and other cases, including most recently the direct purchaser price-fixing claims against the cartel of TFT-LCD manufacturers which produced over $400 million in settlements. Mr. Saveri has been recognized as a leader in the antitrust field and has served as a lead counsel in a number of significant and ground-breaking antitrust cases, class actions and other complex cases. *See* www.saverilawfirm.com.

Berger & Montague is a nationally recognized firm specializing in antitrust and securities litigation on behalf of plaintiffs. Berger & Montague has played leading roles in major class action cases for approximately forty years, resulting in recoveries totaling billions of dollars for the firm's clients and the classes it has represented. Eric L. Cramer is lead counsel in several antitrust cases and other litigation in a variety of industries and numerous courts across the country. He has been recognized as a leading attorney in the field of complex antitrust litigation. *See* www.bergermontague.com.

Grant & Eisenhofer is one of the largest plaintiffs' class action firms in the nation. Over the past five years alone, the firm has obtained recoveries totaling over $12.5 billion for plaintiffs in cases in which the firm served as lead or co-lead counsel. Linda P. Nussbaum, chair of the firm's antitrust practice, has served as lead or co-lead counsel in numerous complex antitrust class actions, in which she has obtained precedent-setting victories and achieved substantial recoveries for plaintiff classes. *See* www.gelaw.com.

Together, Class Counsel bring to this case the skills and experience necessary to successfully litigate an action of this size and complexity.

**2.      A Partial Lodestar Cross-Check Alone Supports the Fee Request**

"A lodestar cross-check is not required in this circuit, and in some cases is not a useful

1  reference point." *Craft v. County of San Bernardino*, 624 F. Supp. 2d 1113, 1122 (C.D. Cal.

2  2008).  Here, however, a cross-check of the lodestar of just one Co-Lead Counsel firm

3  demonstrates that the requested fee is reasonable.  For example, LCHB alone has invested

4  $8,413,346.50 in lodestar, based on 17,951.4 hours of work LCHB alone performed from

5  inception through Preliminary Settlement Approval.  *See* Dermody Decl., ¶ 15, Ex. 8; *see also In*

6  *re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 306-07 (3d Cir. 2005) ("[T]he lodestar cross-check

7  calculation need entail neither mathematical precision nor bean-counting.  The district courts may

8  rely on summaries submitted by the attorneys and need not review actual billing records.").  This

9  lodestar cross-check would be substantially higher if it included all Class Counsel firms.  It

10  demonstrates that Class Counsel's time and effort committed to this case far exceed their fee

11  request of $5,000,000.  On this basis alone, there is no doubt that the fees requested are

12  reasonable.  *See Vizcaino*, 290 F.3d at 1050 ("the lodestar calculation can be helpful in suggesting

13  a higher percentage when litigation has been protracted,").

14              **3.      Class Members Will Have the Opportunity to Review Class Counsel's
                           Fee Request Prior to the Deadline for Objections.**

15

16          The Class Notice informed Class members that Class Counsel would request up to thirty

17  percent (30%) of the fund, plus costs.  *See* Dkt. 553-1.  The amount now requested is thus lower

18  than what might have been requested pursuant to the Notice.  Nevertheless, to date no Class

19  Member has filed an objection to the amount of Class Counsel's fee and cost request.  Dermody

20  Decl., ¶ 19.  This brief and supporting documentation will also be posted on the websites of Co-

21  Lead Class Counsel as well as the website established for the Settlements.  *See In re Mercury*

22  *Interactive Corp. Sec. Litig.*, 618 F.3d 988, 994-95 (9th Cir. 2010).

23          In sum, taking account of these additional four considerations, along with the *Vizcaino*

24  factors, Plaintiffs' fee request is reasonable and should be approved.

25  **III.    CLASS COUNSEL ARE ENTITLED TO REIMBURSEMENT OF EXPENSES
            UNDER THE SETTLEMENT AGREEMENT.**

26

27          Class Counsel request reimbursement of expenses incurred as of October 30, 2013, in the

28  amount of $3,699,844.31 to be paid from the Settlement Funds.  Dermody Decl., ¶¶ 3,5; *see also*

*id.*, Ex. 3 (Saveri Decl.), at ¶ 5; *id.*, Ex. 4 (Cramer Decl.), at ¶ 5; *id.*, Ex.5 (Nussbaum Decl.)., at ¶ 5.  "Attorneys may be compensated for reasonable out-of-pocket expenses incurred and customarily charged to their clients, as long as they were 'incidental and necessary to the representation' of those clients."  *Mitland Raleigh-Durham v. Myer*, 840 F. Supp. 235, 239 (S.D.N.Y.) (citation omitted).  Under the common fund doctrine, Plaintiffs' Counsel are entitled to reimbursement of all reasonable out-of-pocket expenses and costs in prosecution of the claims and in obtaining a settlement.  *Vincent v. Hughes Air West, Inc.*, 557 F.2d 759, 769 (9th Cir. 1977).

The majority of the costs (over $2.5 million) were incurred to develop expert testimony from numerous expert economists and others.  Dermody Decl., ¶ 5, Ex. 2.  This included expert statistical review and analysis of Defendants' personnel and compensation databases and systems and the drafting of the five expert reports submitted in support of class certification (four by Dr. Leamer and one by Dr. Hallock).  This work included comprehensively analyzing compensation and other employee records from the seven Defendants.  The data did not all arrive in the same format; so it had to be processed so that it could all be incorporated in the same statistical analyses.  The expert work ultimately included estimation of damages through multivariate linear regression analysis; use of several correlation and regression analyses to assess the existence of a job-title level compensation structure; and a comprehensive review and analysis of Defendants' compensation systems.  Plaintiffs' experts and consultants also had to analyze and respond to many quantitative and other analyses submitted by defense experts Dr. Kevin Murphy and Dr. Kathryn Shaw.  Plaintiffs' experts and consultants also conducted extensive analysis to address a number of the affirmative defenses and other assertions Defendants have offered to explain or excuse their conduct.

In addition, there were substantial other expenses incurred to host and organize the mammoth production of electronically stored information and data produced by Defendants.  Other necessary costs included: court reporter and videographer fees for depositions; court and process server fees; postage and carrier fees; electronic research; mediator's fees; photocopies; and case-related travel.  Dermody Decl., ¶ 5, Ex. 2.  These are reasonable and standard expenses

1  of litigation.  *See* H. Newberg, ATTORNEY FEE AWARDS § 2.19 at 69 (1986).  Accordingly, the

2  Court should grant the expense reimbursement.

3  **IV.     THE REQUESTED SERVICE AWARDS ARE REASONABLE.**

4         The Ninth Circuit has recognized that named plaintiffs are eligible for reasonable service

5  awards.  *Staton v. Boeing*, 327 F.3d 938, 977 (9th Cir. 2003); *Rodriguez v. West Pub'g Corp.*,

6  563 F.3d 948, 958 (9th Cir. 2009) (service awards "are fairly typical in class action cases.").

7  Service awards are generally provided after a settlement or verdict has been achieved.  *Rodriguez*,

8  563 F.3d at 959.  Such awards are intended to compensate class representatives for work done on

9  behalf of the class, to make up for financial or reputational risk undertaken in bringing the action,

10  and to recognize their willingness to act as private attorneys general.  *Id.* at 958-959.

11         Under *Staton*, such awards should be evaluated using "relevant factors, includ[ing] the

12  actions the plaintiff has taken to protect the interests of the class, the degree to which the class has

13  benefited from those actions, . . . the amount of time and effort the plaintiff expended in pursuing

14  the litigation . . . and reasonabl[e] fear[s of workplace retaliation." *Staton*, 327 F.3d at 977

15  (internal quotation marks and citation omitted).  District courts are required to scrutinize "all

16  incentive awards to determine whether they destroy the adequacy of the class representatives."

17  *Radcliffe v. Experian Info. Solutions*, 715 F.3d 1157, 1164 (9th Cir. 2013).  Here, the Class

18  Representatives satisfy the Ninth Circuit's requirements for service awards.

19         **A.     The Class Representatives Have Taken Significant Steps to Advance the**
           **Litigation and Have Expended Substantial Time and Effort On Behalf of the**
20         **Class.**

21         The Court should grant the requested service awards based on the significant work that the

22  Class Representatives undertook on behalf of the class.

23         Courts recognize the important factual knowledge that plaintiffs bring to employment-

24  related class actions, including information about employer policies and practices.  *See Frank v.*

25  *Eastman Kodak Co.*, 228 F.R.D. 174, 187 (W.D.N.Y. 2005) (recognizing the important role that

26  plaintiffs play as the "primary source of information concerning the claims[,]" including by

27  responding to counsel's questions and reviewing documents); *Parker v. Jekyll & Hyde Entm't*

28  *Holdings, L.L.C.*, No. 08-7670, 2010 U.S. Dist. LEXIS 12762, at *4-5 (S.D.N.Y. 2010)

1  (recognizing efforts of plaintiffs including meeting with counsel, reviewing documents,

2  formulating the theory of the case, identifying and locating other class members to expand

3  settlement participants, and attending court proceedings).

4       Here, the Class Representatives have made important contributions to the prosecution and

5  fair resolution of this action on behalf of Class members.  They have each provided extensive

6  assistance to the case by meeting with Class Counsel regarding the initial investigation; preparing

7  and reviewing the complaint; reviewing drafts of pleadings and other documents; gathering

8  documents and other potential evidence about Defendants and their claims; assisting with various

9  aspects of written and other discovery; appearing for their depositions; discussing the strategy and

10  progress of all mediations in the case; and participating in regular conversations about the case, as

11  well as in regular email correspondence.  Devine Decl., ¶ 8; Fichtner Decl., ¶ 8, Hariharan

12  Decl., ¶ 8, Stover Decl., ¶ 8, Harvey Decl., ¶ 10.  Four of the Class Representatives will continue

13  their important role as the litigation advances with no guarantee of success going forward.[7]

14       The record amply demonstrates that the $20,000 in requested service awards ($10,000 per

15  settlement) for each of the Class Representatives is reasonable in light of their vigorous pursuit of

16  the class claims since the inception of this litigation.

17      **B.**    **The Class Representatives Assumed Significant Risks in Leading this Case.**

18       In assessing the reasonableness of service awards, courts consider the risks that the class

19  representatives assumed in serving the interests of the class.  *See Frank*, 228 F.R.D. at 187;

20  *Parker*, 2010 U.S. Dist. LEXIS 12762, at *4 ("Enhancement awards for class representatives

21  serve the dual functions of recognizing the risks incurred by named plaintiffs and compensating

22  them for their additional efforts.").  Service awards are particularly appropriate in class actions

23  against employers because "the plaintiff is frequently a present or past employee whose present

24  position or employment credentials or recommendation may be at risk by reason of having

25  prosecuted the suit, who therefore lends his or her name and efforts to the prosecution of litigation

26  at some personal peril."  *Roberts v. Texaco, Inc.*, 979 F. Supp. 185, 201 (S.D.N.Y. 1997)

27

28  [7] One of the original five Class Representatives, Brandon Marshall, died after the Settlements were reached.  The service award requested on his behalf will be provided to Mr. Marshall's estate.  *See* Harvey Decl., ¶ 3.

1    (approving individual service awards of $85,000 and $50,000 to plaintiffs who had initiated a

2    class action, and $25,000 to named plaintiffs who joined lawsuit after its commencement).  Even

3    where there is not a record of actual retaliation, Class Representatives deserve recognition for

4    assuming the risk of retaliation for the sake of absent class members.  *See*, *e.g.*, *Sewell v. Bovis*

5    *Lend Lease LMB, Inc.*, No. 09-6548, 2012 U.S. Dist. LEXIS 53556, at *41 (S.D.N.Y. April 20,

6    2012) ("Plaintiffs litigating cases in an employment context face the risk of subjecting themselves

7    to adverse actions by their employer."); *Guippone v. BH S&B Holdings, LLC*, No. 09 Civ. 1029,

8    2011 U.S. Dist. LEXIS 126026, at *20 (S.D.N.Y. Oct. 28, 2011) ("Even where there is not a

9    record of actual retaliation, notoriety, or personal difficulties, class representatives merit

10   recognition for assuming the risk of such for the sake of absent class members.").

11        Though the Class Representatives here were no longer employed by Defendants at the

12   time they joined the lawsuit, they risked retaliation from their current employers and put their

13   ability to secure future employment at risk as well.  Devine Decl., ¶ 9; Fichtner Decl., ¶ 9;

14   Hariharan Decl., ¶ 9; Stover Decl. ¶ 9; Harvey Decl., ¶ 10. *See also Sewell*, 2012 U.S. Dist.

15   LEXIS 53556, at *42 ("[F]ormer employees . . . fac[ed] [sic] potential risks of being blacklisted

16   as 'problem' employees."); *Guippone*, 2011 U.S. Dist. LEXIS 126026, at *20 ("Today, the fact

17   that a plaintiff has filed a federal lawsuit is searchable on the internet and may become known to

18   prospective employers when evaluating the person."); *Parker*, 2010 U.S. Dist. LEXIS 12762, at

19   *4 ("[F]ormer employees put in jeopardy their ability to depend on the employer for references in

20   connection with future employment.").

21   **C.**     **The Class Has Benefited Significantly Due To The Class Representatives'**
             **Actions**

22

23        The $20 million Settlement Fund provides a meaningful benefit to the class.  This

24   litigation would not have been possible without the Class Representatives' involvement.  *See In*

25   *re Cont'l Ill. Sec. Litig.*, 962 F.2d 566, 571 (7th Cir. 1992) ("Since without a named plaintiff there

26   can be no class action, such compensation as may be necessary to induce him to participate in the

27   suit could be thought the equivalent of the lawyers' nonlegal but essential case-specific expenses,

28   such as long-distance phone calls, which are reimbursable.").  Courts acknowledge that class

MOT. FOR ATTORNEYS' FEES, REIMBURSEMENT
OF EXPENSE, AND SERVICE AWARDS
MASTER DOCKET NO. 11-CV-2509-LHK

1  representatives play a crucial role in bringing justice to those who would otherwise be hidden

2  from judicial scrutiny.  Service awards "provide an incentive to seek enforcement of the law

3  despite these dangers." *Parker*, 2010 U.S. Dist. LEXIS 12762, at *4-5.  *See also Velez v. Majik*

4  *Cleaning Serv.*, No. 03-8698, 2007 U.S. Dist. LEXIS 46223, at *23 (S.D.N.Y June 22, 2007)

5  ("[I]n employment litigation, the plaintiff is often a former or current employee of the defendant,

6  and thus, by lending his name to the litigation, he has, for the benefit of the class as a whole,

7  undertaken the risk of adverse actions by the employer or co-workers.") (internal quotation marks

8  and citation omitted).

9         The circumstances in which these Class Representatives advanced this litigation comply

10  with the principles in *Radcliffe v. Experian Information Solutions, Inc.*, 715 F.3d 1157, 1165 (9th

11  Cir. 2013).  At no time was any Class Representative advised by Class Counsel that his

12  entitlement to a service award was conditioned in any way on that Class Representative's support

13  for the Settlement Agreement.  Dermody Decl., ¶ 20.  Likewise, the attorney representation

14  agreements for each of the Class Representatives preserved the right of each to separately and

15  independently support, object to or comment upon any settlement.  *Id.*

16         No Class members have objected to the requested service awards.  Dermody Decl., ¶ 19.

17  Furthermore, the requested service awards in this case do not give rise to a conflict that renders

18  the Class Representatives inadequate.  The requested service awards amount to 0.4 percent of the

19  total recovery, which is a reasonable percentage.  *See*, *e.g.*, *Parker*, 2010 U.S. Dist. LEXIS

20  12762, at *6 (finding that service awards totaling 11 percent of the total recovery are reasonable

21  "given the value of the representatives' participation and the likelihood that class members who

22  submit claims will still receive significant financial awards"); *Reyes v. Altmarea Group*, No. 10-

23  6451, 2011 U.S. Dist. LEXIS 115984, at *25 (S.D.N.Y. Aug. 16, 2011) (approving awards

24  representing approximately 16.6 percent of the settlement); *Frank*, 228 F.R.D. at 187 (approving

25  award of approximately 8.4 percent of the settlement).

26         Accordingly, this factor is satisfied.

27

28

1

**D.      The Service Awards Sought In This Case Are Modest Compared to the**
         **Awards Granted in Other Complex Litigation.**

2

3        In major antitrust and employment litigation, many courts have awarded substantially

4    larger service awards than those sought for Class Representatives in this case.  Service awards in

5    an amount greater than $20,000 are not uncommon.  *See, e.g.*, *Vedachalam v. Tata Consultancy*

6    *Servs.*, No. 06-0963, 2013 U.S. Dist. LEXIS 100799, at *7 (N.D. Cal. July 18, 2013) (approving

7    service awards of $25,000 and $35,000 for class representatives); *Meijer, Inc. v. Abbott Labs*, No.

8    07-5985, Docket No. 514 (N.D. Cal. Aug. 11, 2011) (granting award of $60,000 per class

9    representative on $52 million antitrust settlement); *Lewis v. Wells Fargo & Co.*, No. 08-2670,

10   Docket No. 315 (N.D. Cal. April 29, 2011) (approving services awards of $22,000 and $20,000

11   for named plaintiffs); *Ross v. US Bank Nat. Ass'n*, No. 07-02951, 2010 U.S. Dist. LEXIS 107857,

12   at *6 (N.D. Cal. Sept. 29, 2010); *Amochaev v. Citigroup Global Markets, Inc.*, No. 05-1298 PJH

13   (N.D. Cal. Aug. 13, 2008) (awarding individual service awards of $50,000 and $35,000 to

14   employees suing former employer in light of factors that included fear of workplace retaliation);

15   *In re CV Therapeutics*, No. 03-3709, 2007 U.S. Dist. LEXIS 98244, at *5 (N.D. Cal. April 4,

16   2007) (approving $26,000 award "for reimbursement of time and expenses incurred in

17   representing the class"); (approving $20,000 service award for each of four class representatives

18   in recognition of "substantial contributions to the case"); *see also Calibuso v. Bank of America*

19   *Corp.*, No. 10-1413 (E.D.N.Y Dec. 27, 2013) (approving service awards of $35,000 for each of

20   the four named plaintiffs); *In re: Titanium Dioxide Antitrust Litig.*, No. 10-00318, Docket No.

21   556 (D. Md. Dec.13, 2013) (approving service awards totaling $175,000, including $125,000 to

22   one class representative as part of a $163.5 million antitrust settlement); *Rochester Drug Co-*

23   *Operative, Inc. v. Braintree Laboratories, Inc.,* No. 07-142, Docket No. 243 (D. Del. May 31,

24   2012) (approving three class representatives awards of $60,000 each for $17.25 million antitrust

25   settlement); *In re Metoprolol Succinate Antitrust Litig.*, No. 06-52, Docket No. 193 (D. Del. Feb,

26   21, 2012) (approving three class representatives awards of $50,000 each for $20 million antitrust

27   settlement); *In re Tricor Direct Purchaser Antitrust Litig.*, No. 05-00340, Docket No. 543 (D.

28   Del. Apr. 23, 2009) ($50,000 service awards to each of three class representatives for $250

million antitrust settlement); *Meijer, Inc. v. Barr Pharms.*, No. 05-2195, Docket No. 210 (D.D.C. Apr. 20, 2009) (awarding $50,000 to each of five class representatives—a total of $250,000—for a $22 million antitrust settlement); *McCoy v. Health Net, Inc.*, 569 F. Supp. 2d 448, 479-80 (D.N.J. 2008) (approving awards of $60,000 each to the class representatives on $215 million settlement); *Bradburn Parent Teacher Store, Inc. v. 3M*, 513 F. Supp. 2d 322, 338-39 (E.D. Pa. 2007) (approving service award of $75,000 as part of a $39.75 million antitrust settlement); *In re Cardizem CD Antitrust Litig.,* 218 F.R.D. 508, 531 (E.D. Mich. 2003) ($75,000 awarded to two class representatives as part of a $80 million antitrust settlement); *In re Revco Sec. Litig.*, No. 851, 1992 U.S. Dist. LEXIS 7852, at *7 (N.D. Ohio May 6, 1992) (approving $200,000 service award as part of a $29.75 million settlement); *Roberts v. Texaco, Inc.*, 979 F. Supp. 185, 203-04 (S.D.N.Y. 1997) (awarding $85,000 to a class representative as part of a $115 million settlement).

The service awards of $20,000 requested here are reasonable and well within the range awarded by courts in this District and beyond.

1    **V.      CONCLUSION**

2          For the reasons set forth above, Plaintiffs respectfully request that the Court award

3    (1) attorneys' fees to Class Counsel in the amount of $5,000,000 (*i.e*,. twenty-five percent of the

4    $20,000,000 Settlement Funds); (2) reimbursement of $3,699,844.31 in expenses that Class

5    Counsel necessarily incurred in connection with the prosecution of this action up to Preliminary

6    Settlement Approval; and (3) service awards of $20,000 for each of the Court-appointed Class

7    Representatives and the Estate of recently-deceased Class Representative Brandon Marshall.

8

9                              Respectfully submitted,

10
      Dated:  March 5, 2014              **LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**
11
                                         By:___*/s/ Kelly M. Dermody*_____
12                                       Richard M. Heimann (State Bar No. 63607)
                                         Kelly M. Dermody (State Bar No. 171716)
13                                       Eric B. Fastiff (State Bar No. 182260)
                                         Brendan P. Glackin (State Bar No. 199643)
14                                       Dean M. Harvey (State Bar No. 250298)
                                         Anne B. Shaver (State Bar No. 255928)
15                                       Lisa J. Cisneros (State Bar No. 251473)
                                         LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
16                                       275 Battery Street, 29th Floor
                                         San Francisco, CA  94111-3339
17                                       Telephone:  (415) 956-1000
                                         Facsimile:  (415) 956-1008
18                                       **JOSEPH SAVERI LAW FIRM, INC.**

19                                       By:___*/s/ Joseph R. Saveri*_____
                                         Joseph R. Saveri (State Bar No. 130064)
20                                       James G. Dallal (State Bar No. 277826)
                                         JOSEPH SAVERI LAW FIRM, INC.
21                                       505 Montgomery Street, Suite 625
                                         San Francisco, CA  94111
22                                       Telephone:  (415) 500-6800
                                         Facsimile: (415) 500-6803
23
                                         ***Co-Lead Class Counsel***
24

25

26

27

28