Robert A. Mittelstaedt (State Bar No. 60359)
ramittelstaedt@jonesday.com
Craig A. Waldman (State Bar No. 229943)
cwaldman@jonesday.com
David C. Kiernan (State Bar No. 215335)
dkiernan@jonesday.com
Lin W. Kahn (State Bar No. 261387)
linkahn@jonesday.com
JONES DAY
555 California Street, 26th Floor
San Francisco, CA 94104
Telephone: (415) 626-3939
Facsimile: (415) 875-5700

Attorneys for Defendant
Adobe Systems Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

| | |
|---|---|
| IN RE: HIGH-TECH EMPLOYEE ANTITRUST LITIGATION<br><br>THIS DOCUMENT RELATES TO:<br><br>ALL ACTIONS | **Master Docket No. 11-CV-2509-LHK**<br><br>**EXHIBIT 5 TO DECLARATION OF CHRISTINA BROWN IN SUPPORT OF DEFENDANTS' OPPOSITION TO PLAINTIFFS' SUPPLEMENTAL MOTION FOR CLASS CERTIFICATION** |

```
 1              UNITED STATES DISTRICT COURT

 2     NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

 3

 4    --------------------------

 5    IN RE: HIGH-TECH EMPLOYEE )

 6    ANTITRUST LITIGATION      ) No. 11-CV-2509-LHK

 7    --------------------------

 8

 9

10

11

12        VIDEOTAPED DEPOSITION OF MARK FICHTNER

13               San Francisco, California

14              Monday, October 15, 2012

15                      Volume I

16

17

18

19

20    Reported by:

21    ASHLEY SOEVYN

22    CSR No. 12019

23    Job No. 1541278

24

25    PAGES 1 - 233


                                                    Page 1
```

| | | |
|---|---|---|
| 1 | Q.   Fair question.  Was your sense that sort of | 16:28:08 |
| 2 | the marketplace for contractor positions -- the | 16:28:11 |
| 3 | going rate, if you will, was somewhat lower than the | 16:28:16 |
| 4 | going rate for full-time jobs of sort of comparable | 16:28:19 |
| 5 | levels? | 16:28:25 |
| 6 | A.   I never multiplied out the numbers, but my | 16:28:26 |
| 7 | gut is since total compensation is a big number, | 16:28:29 |
| 8 | that seeing the hourly rates, I just don't think it | 16:28:37 |
| 9 | accounted for the bigger -- the bigger number that | 16:28:40 |
| 10 | you had when you were at salary.  But I didn't do | 16:28:42 |
| 11 | those calculations directly. | 16:28:50 |
| 12 | Q.   How many -- I guess the other thing I'm not | 16:28:54 |
| 13 | quite understanding is, I think you mentioned before | 16:28:58 |
| 14 | that sometimes a contractor that Intel brought on | 16:29:01 |
| 15 | would sort of mess up the curve.  Did -- have I got | 16:29:05 |
| 16 | that right? | 16:29:09 |
| 17 | A.   A contractor that was hired would be | 16:29:13 |
| 18 | outside of the curve, yes. | 16:29:15 |
| 19 | Q.   Oh, hired on for a full-time position -- | 16:29:16 |
| 20 | A.   Yes. | 16:29:18 |
| 21 | Q.   -- after their time was up.  That's what | 16:29:18 |
| 22 | you were referring to.  Okay. | 16:29:20 |
| 23 | A.   Not necessarily they were hired because of | 16:29:23 |
| 24 | a timeline, but they were hired -- so their contract | 16:29:25 |
| 25 | had ended and their full time began. | 16:29:28 |

| | | |
|---|---|---|
| 1 | Q.   Okay.  Right.  Okay.  When you went through | 16:29:38 |
| 2 | your various job changes that we talked about -- | 16:29:39 |
| 3 | when it came time -- well, strike that. | 16:29:42 |
| 4 | When you would apply for the new job or | 16:29:47 |
| 5 | during the discussions leading up to getting the new | 16:29:52 |
| 6 | job, did your prospective new employer ever ask you | 16:29:56 |
| 7 | what you were making at your existing one? | 16:30:00 |
| 8 | A.   Yes. | 16:30:03 |
| 9 | Q.   And would you -- would you give that | 16:30:03 |
| 10 | information? | 16:30:10 |
| 11 | A.   Yes. | 16:30:10 |
| 12 | Q.   And what was -- and so, I guess, given the | 16:30:11 |
| 13 | complexities that we talked about and some of the | 16:30:18 |
| 14 | aspects of compensation, at least at Intel with the | 16:30:20 |
| 15 | EB and the equity and stuff like that, how would | 16:30:23 |
| 16 | you -- how would you provide that information? | 16:30:26 |
| 17 | A.   The same way I provided it on the exhibit. | 16:30:30 |
| 18 | I would use later -- later years at Intel when they | 16:30:34 |
| 19 | printed out a pay sheet, they would multiply by | 16:30:40 |
| 20 | average numbers, and so I used that sheet. | 16:30:44 |
| 21 | Q.   Did you -- did any of your direct | 16:31:01 |
| 22 | reports -- so at the time you were managing at | 16:31:04 |
| 23 | Intel, did any of your direct reports ever come and | 16:31:07 |
| 24 | ask you to raise their salary in response to a cold | 16:31:11 |
| 25 | call? | 16:31:17 |

| | | |
|---|---|---|
| 1 | MS. SHAVER: Objection, foundation. Lack | 16:31:17 |
| 2 | of personal knowledge. | 16:31:33 |
| 3 | THE WITNESS: The second time I was a | 16:32:04 |
| 4 | manager, I don't believe so. The first time, I | 16:32:06 |
| 5 | can't recall. | 16:32:12 |
| 6 | BY MR. HINMAN: | 16:32:12 |
| 7 | Q.  Okay. And to your knowledge, did any of | 16:32:12 |
| 8 | your direct reports ever receive a raise as a result | 16:32:14 |
| 9 | of a cold call that somebody else got? | 16:32:17 |
| 10 | MS. SHAVER: Same objections. | 16:32:20 |
| 11 | THE WITNESS: No. My employees received | 16:32:40 |
| 12 | market adjustments. As to -- | 16:32:41 |
| 13 | BY MR. HINMAN: | 16:32:48 |
| 14 | Q.  As to what? | 16:32:48 |
| 15 | A.  As to why they came about, I don't know. | 16:32:50 |
| 16 | Q.  Okay. And I think you also testified | 16:32:56 |
| 17 | earlier that you yourself never negotiated for a | 16:32:57 |
| 18 | higher salary based on any information that you | 16:33:00 |
| 19 | received through a cold call. Have I got that part | 16:33:02 |
| 20 | right? | 16:33:06 |
| 21 | MS. SHAVER: Objection, misstates | 16:33:16 |
| 22 | testimony. | 16:33:17 |
| 23 | BY MR. HINMAN: | 16:33:19 |
| 24 | Q.  I can ask it again, if you would rather -- | 16:33:19 |
| 25 | A.  I believe the negotiations that we | 16:33:37 |

```
 1   discussed -- a cold call was not a factor.              16:33:40
 2       Q.   Okay.  And then did you ever negotiate a       16:33:45
 3   pay increase for yourself based on a cold call that     16:33:49
 4   somebody else received?                                 16:33:54
 5       A.   I did not directly negotiate.  I received      16:34:15
 6   market adjustments after people had left the            16:34:20
 7   company.  Again, not necessarily direct, one caused     16:34:26
 8   the other.  But in certain groups where we lost a       16:34:29
 9   senior person or very soon after a market adjustment    16:34:38
10   was applied to the group.  This was prior to being a    16:34:44
11   manager.                                                16:34:46
12       Q.   So -- okay.  So that was in response to        16:34:47
13   somebody leaving as opposed to somebody getting a       16:34:50
14   cold call and bringing that information back, right     16:34:54
15   so far?                                                 16:34:57
16       A.   I can't directly speak to the causality.  I    16:34:59
17   can speak to the events.                                16:35:03
18       Q.   Okay.  Where did those senior people go        16:35:04
19   that caused -- that may or may not have caused that     16:35:09
20   effect?                                                 16:35:12
21       A.   I believe both went to Microsoft.              16:35:13
22            MR. HINMAN:  Okay.  I think that's all the     16:35:24
23   questions.  Thanks very much for your time.             16:35:26
24            THE WITNESS:  Thank you.                       16:35:28
25            THE VIDEOGRAPHER:  This marks the end of       16:35:31
```

Page 230

| | | |
|---|---|---|
| 1 | disk number three of three and concludes today's | 16:35:32 |
| 2 | deposition of Mark Fichtner.  The time is 4:35 p.m. | 16:35:34 |
| 3 | and we are off the record. | 16:35:39 |
| 4 | (TIME NOTED: 4:35 P.M.) | |

Veritext National Deposition & Litigation Services
866 299-5127

```
 1            I declare under penalty of perjury under
 2   the laws of the State of California that the
 3   foregoing is true and correct.
 4
 5        Executed on _____, 2012,
 6   at_____,_____.
 7
 8
 9
10
11          _____
12                  MARK FICHTNER
13
14
15
16
17
18
19
20
21
22
23
24
25
```

Veritext National Deposition & Litigation Services
866 299-5127

```
 1   STATE OF CALIFORNIA    ) ss:
 2   COUNTY OF MARIN        )
 3
 4        I, ASHLEY SOEVYN, CSR No. 12019, do hereby
 5   certify:
 6        That the foregoing deposition testimony was
 7   taken before me at the time and place therein set
 8   forth and at which time the witness was administered
 9   the oath;
10        That the testimony of the witness and all
11   objections made by counsel at the time of the
12   examination were recorded stenographically by me,
13   and were thereafter transcribed under my direction
14   and supervision, and that the foregoing pages
15   contain a full, true and accurate record of all
16   proceedings and testimony to the best of my skill
17   and ability.
18        I further certify that I am neither counsel for
19   any party to said action, nor am I related to any
20   party to said action, nor am I in any way interested
21   in the outcome thereof.
22        IN THE WITNESS WHEREOF, I have transcribed my
23   name this 22nd day of October, 2012.
24
                              _____
25                            ASHLEY SOEVYN, CSR 12019
```

Page 233