```
 1  Robert A. Mittelstaedt (State Bar No. 60359)
    ramittelstaedt@jonesday.com
 2  Craig A. Waldman (State Bar No. 229943)
    cwaldman@jonesday.com
 3  David C. Kiernan (State Bar No. 215335)
    dkiernan@jonesday.com
 4  Lin W. Kahn (State Bar No. 261387)
    linkahn@jonesday.com
 5  JONES DAY
    555 California Street, 26th Floor
 6  San Francisco, CA 94104
    Telephone: (415) 626-3939
 7  Facsimile: (415) 875-5700

 8  Attorneys for Defendant
    Adobe Systems Inc.
 9
```

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

| IN RE: HIGH-TECH EMPLOYEE ANTITRUST LITIGATION | Master Docket No. 11-CV-2509-LHK |
|---|---|
| THIS DOCUMENT RELATES TO: ALL ACTIONS | **EXHIBIT 4 TO DECLARATION OF LIN W. KAHN IN SUPPORT OF DEFENDANTS' OPPOSITION TO PLAINTIFFS' SUPPLEMENTAL MOTION FOR CLASS CERTIFICATION**<br><br>**[REDACTED PUBLIC VERSION]** |

```
 1                    UNITED STATES DISTRICT COURT

 2                   NORTHERN DISTRICT OF CALIFORNIA

 3                          SAN JOSE DIVISION

 4

 5

 6    IN RE:  HIGH-TECH EMPLOYEE     )

 7    ANTITRUST LITIGATION           )

 8                                   )   No. 11-CV-2509-LHK

 9    THIS DOCUMENT RELATES TO:      )

10    ALL ACTIONS.                   )

11    _____ )

12

13

14                          CONFIDENTIAL

15         VIDEO DEPOSITION OF STEPHANIE SHEEHY

16                        March 5, 2013

17

18

19    REPORTED BY:  GINA V. CARBONE, CSR NO. 8249, RPR, CCRR

20

21

22

23

24

25
```

| | | |
|---|---|---|
| 11:54:16 | 1 | few salary planners who determined salary for the |
| 11:54:23 | 2 | technical development tools team, and he was the person |
| 11:54:29 | 3 | who oversaw the entire group.  And this is a summary of |
| 11:54:33 | 4 | what all of the salary planners did. |
| 11:54:46 | 5 |     Q.  What's a salary planner? |
| 11:54:48 | 6 |     A.  A salary planner, you could see column D.  A |
| 11:54:54 | 7 | salary planner is the person who was responsible for |
| 11:54:58 | 8 | determining the salary increases for certain |
| 11:55:01 | 9 | individuals. |
| 11:55:12 | 10 |     Q.  How does a salary planner decide what the |
| 11:55:16 | 11 | salary increase is for a specific individual? |
| 11:55:21 | 12 |     A.  I -- you would have to ask each of them |
| 11:55:24 | 13 | individually how they decided the increases for each of |
| 11:55:29 | 14 | these people. |
| 11:55:30 | 15 |     Q.  As the person in charge of compensation for the |
| 11:55:34 | 16 | HR department, what's your understanding of how the |
| 11:55:36 | 17 | salary planners decide the salary increases for |
| 11:55:40 | 18 | employees? |
| 11:55:47 | 19 |     A.  I'm sorry, say that again, please. |
| 11:55:50 | 20 |     Q.  As the person in charge of compensation for the |
| 11:55:52 | 21 | HR department, what's your understanding of how the |
| 11:55:55 | 22 | salary planners decide the salary increases for |
| 11:55:58 | 23 | employees? |
| 11:56:02 | 24 |     A.  They are given a salary pool, and they spend |
| 11:56:06 | 25 | that pool on their employees, how they see fit, with the |

```
11:56:19  1   guideline that a solid performing individual would
11:56:23  2   receive █ percent.  I think I wrote that on page 1.
11:56:34  3        (Reporter clarification.)
11:56:36  4        THE WITNESS:  Yes.  That's what it says on
11:56:36  5   page 1.
11:56:37  6        So the guideline I gave them, when I gave them
11:56:39  7   a salary pool, was that employees performing solidly and
11:56:45  8   well would receive a █ percent increase.  And then from
11:56:59  9   there, they determine on a person-by-person,
11:57:02 10   case-by-case basis.  But the guideline is a guideline.
11:57:12 11        MS. CISNEROS:  Q.  Generally, are the
11:57:14 12   salary increases within the guidelines?
11:57:18 13        MS. HENN:  Objection.  Vague.
11:57:27 14        THE WITNESS:  Could you be more specific,
11:57:28 15   please.
11:57:46 16        MS. CISNEROS:  Q.  You testified that the
11:57:48 17   guideline is that a solid performing individual
11:57:51 18   would receive █ percent.  Generally, is it true,
11:58:00 19   then, that most solid performing individuals would
11:58:02 20   receive a █ percent salary increase?
11:58:08 21        A.  Usually, yes.
11:58:25 22        Q.  What would happen if a salary planner wanted to
11:58:28 23   give a higher level salary increase?  How would that
11:58:34 24   planner go about doing so?
11:58:37 25        A.  They would put it into this spreadsheet.
```

| | | |
|---|---|---|
| 01:13:29 | 1 | Q. You testified that "we submit our data at |
| 01:13:32 | 2 | certain points during the year." |
| 01:13:34 | 3 | A. Yes. |
| 01:13:36 | 4 | Q. To whom? |
| 01:13:41 | 5 | A. To the Croner company and to the Radford |
| 01:13:43 | 6 | company. Actually, I think it's Aon is the Radford |
| 01:13:45 | 7 | company. The Croner company is the Croner survey, but I |
| 01:13:49 | 8 | think it's Aon is the company that does Radford. |
| 01:13:55 | 9 | Q. And you say you use the 10th percentile as the |
| 01:13:57 | 10 | minimum and the 90th percentile as the max. You mean |
| 01:14:03 | 11 | the 10th percentile of the survey that you are looking |
| 01:14:07 | 12 | at? |
| 01:14:07 | 13 | A. Yes. The data comes in different core tiles. |
| 01:14:11 | 14 | Not core tiles, because there are more than four, but |
| 01:14:15 | 15 | different percentiles. And we use the 10th percentile |
| 01:14:19 | 16 | as our min and the 90th percentile as our max. |
| 01:14:26 | 17 | Q. Are there any other factors that you consider |
| 01:14:29 | 18 | in setting the minimum or the maximum range besides the |
| 01:14:34 | 19 | survey data? |
| 01:14:38 | 20 | A. For the matchable jobs, we use that -- the min |
| 01:14:42 | 21 | and the max as our guideline. So with the external |
| 01:14:48 | 22 | data, that's mostly what we use to guide us in our |
| 01:14:53 | 23 | decision making. |
| 01:15:51 | 24 | Q. You testified that you look at where employees |
| 01:15:55 | 25 | presently are in their salaries with respect to landing |

| | | |
|---|---|---|
| 04:14:22 1 | A. | -- we call it a ranking system. |
| 04:14:23 2 | Q. | Okay. |
| 04:14:24 3 | A. | But it's much closer to the rating description |
| 04:14:26 4 | that you just described. | |
| 04:14:27 5 | Q. | Okay.  So again let's maybe try for 2007. |
| 04:14:37 6 | A. | Okay. |
| 04:14:37 7 | Q. | Maybe it's easier to remember that year. |
| 04:14:39 8 | A. | Okay. |
| 04:14:40 9 | Q. | How did it happen that year? |
| 04:14:41 10 | A. | I believe the APs went to the leadership of |
| 04:14:46 11 | each of their respective groups, collected rating | |
| 04:14:50 12 | information, and then we have a rating for each person. | |
| 04:14:55 13 | Q. | What was done with the rating for each person? |
| 04:15:00 14 | A. | Nothing specifically was done.  It was more |
| 04:15:03 15 | informational than anything.  Although those people who | |
| 04:15:07 16 | were struggling or were underperforming, we would go | |
| 04:15:14 17 | talk to their managers some more and figure out if they | |
| 04:15:18 18 | should be on a PIP or what we should do to help them no | |
| 04:15:25 19 | longer be struggling or underperforming. | |
| 04:15:36 20 | Q. | Did the ratings -- how did the ratings factor |
| 04:15:39 21 | into compensation, if at all? | |
| 04:15:44 22 | A. | They factored in a little, in that most of our |
| 04:15:51 23 | employees got the standard ▇ percent.  Those people who | |
| 04:15:58 24 | were at the high end, we would use some of our extra | |
| 04:16:01 25 | pool, the pool we set aside for those people.  And the | |

04:16:04  1   people who were struggling, we would probably not
04:16:08  2   necessarily give ▇ percent to, all the way down to
04:16:11  3   perhaps not giving any increase.
04:16:17  4        Q.  Was it a pre- -- excuse me.  Was it a
04:16:21  5   prerequisite to achieve a certain rating in order to
04:16:25  6   qualify to go above the standard 3 percent salary raise?
04:16:32  7        A.  No.
04:16:35  8        Q.  So did some salary planners rely on ratings to
04:16:43  9   make the determination of whether or not somebody would
04:16:48 10   get a surplus raise?
04:16:52 11        A.  I believe it informed to some degree, but I
04:16:58 12   believe there were many other factors taken into
04:17:01 13   account.
04:17:05 14        Q.  What other factors?
04:17:14 15        A.  If you had someone with a high rating who was
04:17:17 16   at the high end of the range that we defined during that
04:17:21 17   year from the survey data, then we might not give that
04:17:25 18   person more than ▇ percent because they were already
04:17:29 19   being compensated at the high end.  Our ranges are truly
04:17:34 20   guidelines.  But that would be a reason why we wouldn't
04:17:37 21   make that person -- give that person the surplus.
04:17:46 22        Q.  Are there any guidelines given to the raters to
04:17:51 23   help with their decision-making process?
04:17:56 24        A.  Not that I'm aware of, no.
04:18:00 25        Q.  Okay.  So there is the rating system, but HR

## INSTRUCTIONS FOR READING/CORRECTING YOUR DEPOSITION

To assist you in making corrections to your deposition testimony, please follow the directions below. If additional pages are necessary, please furnish them and attach the pages to the back of the errata sheet.

This is the final version of your deposition transcript.

Please read it carefully. If you find any errors or changes you wish to make, insert the corrections on the errata sheet beside the page and line numbers.

Do NOT change any of the questions.

After completing your review, please sign the last page of the errata sheet, above the designated "Signature" line and return the transcript to your attorney.

## ERRATA SHEET

Witness:   Stephanie Sheehy          Date of Deposition:   March 5, 2013

| Page | Line | | Change/Reason |
|------|------|---|---|
| 30 | 17 | Change: | "she leaves" to "her leave" |
| | | Reason: | correction |
| 31 | 20 | Change: | "Apple" to "employee" |
| | | Reason: | correction |
| 46 | 6 | Change: | "a" to "any" |
| | | Reason: | correction |
| 50 | 18 | Change: | "administer" to "administered" |
| | | Reason: | correction |
| 51 | 23 | Change: | "that" to "out" |
| | | Reason: | correction |
| 89 | 6 | Change: | Delete "it's" |
| | | Reason: | correction |
| 89 | 8 | Change: | Delete "it's" |
| | | Reason: | correction |

1

| | | | |
|---|---|---|---|
| 89 | 13 | Change: | core tiles to quartiles |
| | | Reason: | transcription error |
| 89 | 14 | Change: | core tiles to quartiles |
| | | Reason: | transcription error |
| 90 | 6 | Change: | "on" to "in" |
| | | Reason: | correction |
| 95 | 24 | Change: | Delete "more" |
| | | Reason: | correction |
| 99 | 24 | Change: | "is" to "are" |
| | | Reason: | correction |
| 100 | 20 | Change: | "is" to "was" |
| | | Reason: | correction |
| 106 | 8 | Change: | MENVE to MENV |
| | | Reason: | misspelling |
| 133 | 13 | Change: | "Lassiter" to "Lasseter" |
| | | Reason: | misspelling |
| 133 | 17 | Change: | "Lassiter" to "Lasseter" |
| | | Reason: | misspelling |
| 136 | 2 | Change: | "is" to "are" |
| | | Reason: | correction |
| 210 | 22 | Change: | Delete "that is" |
| | | Reason: | Correction |
| 210 | 24 | Change: | Delete "do" |
| | | Reason: | Correction |

✓ Subject to the above changes, I certify that the transcript is true and correct.

_____ No changes have been made. I certify that the transcript is true and correct.

*Stephanie Shedhy*
(signature)

4/11/2013
(date)

3

1   I, Gina V. Carbone, Certified Shorthand
2   Reporter licensed in the State of California, License
3   No. 8249, hereby certify that the deponent was by me
4   first duly sworn and the foregoing testimony was
5   reported by me and was thereafter transcribed with
6   computer-aided transcription; that the foregoing is a
7   full, complete, and true record of said proceedings.
8       I further certify that I am not of counsel or
9   attorney for either of any of the parties in the
10  foregoing proceeding and caption named or in any way
11  interested in the outcome of the cause in said caption.
12      The dismantling, unsealing, or unbinding of
13  the original transcript will render the reporter's
14  certificates null and void.
15      In witness whereof, I have hereunto set my
16  hand this day: March 15, 2013.
17      ___X___ Reading and Signing was requested.
18      _____ Reading and Signing was waived.
19      _____ Reading and signing was not requested.
20
21
22                    _____
23                    GINA  V. CARBONE
24                    CSR 8249, CRR, CCRR
25