1  Robert A. Mittelstaedt (State Bar No. 60359)
   ramittelstaedt@jonesday.com
2  Craig A. Waldman (State Bar No. 229943)
   cwaldman@jonesday.com
3  David C. Kiernan (State Bar No. 215335)
   dkiernan@jonesday.com
4  Lin W. Kahn (State Bar No. 261387)
   linkahn@jonesday.com
5  JONES DAY
   555 California Street, 26th Floor
6  San Francisco, CA 94104
   Telephone: (415) 626-3939
7  Facsimile: (415) 875-5700

8  Attorneys for Defendant
   Adobe Systems Inc.
9

10                    UNITED STATES DISTRICT COURT

11      NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

12

13 IN RE: HIGH-TECH EMPLOYEE            **Master Docket No. 11-CV-2509-LHK**
   ANTITRUST LITIGATION
14

15       THIS DOCUMENT RELATES TO:      **EXHIBIT 15 TO DECLARATION OF
                                        LIN W. KAHN IN SUPPORT OF
16       ALL ACTIONS                    DEFENDANTS' OPPOSITION TO
                                        PLAINTIFFS' SUPPLEMENTAL
17                                       MOTION FOR CLASS
                                        CERTIFICATION**

18

19

20

21

22

23

24

25

26

27

28

1               UNITED STATES DISTRICT COURT

2              NORTHERN DISTRICT OF CALIFORNIA

3                   SAN JOSE DIVISION

4

5    IN RE:  HIGH-TECH EMPLOYEE     )

6    ANTITRUST LITIGATION           )

7                                   )  No. 11-CV-2509-LHK

8    THIS DOCUMENT RELATES TO:      )

9    ALL ACTIONS.                   )

10   _____

11

12             VIDEO DEPOSITION OF LASZLO BOCK

13        HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

14                   March 27, 2013

15

16       Reported by:  Anne Torreano, CSR No. 10520

17

18

19

20

21

22

23

24

25

11:16:49  1    BY MS. SHAVER:

11:16:49  2        Q.   Was it in use at the time you joined the

11:16:51  3    company in 2006?

11:16:52  4        A.   It was.

11:16:52  5        Q.   Okay.  And you mentioned that you no longer

11:16:56  6    use that; right?

11:16:57  7        A.   Well, we no longer use what you described, and

11:17:00  8    I'm not sure we ever used what I thought I heard you

11:17:05  9    describing.

11:17:05 10             So what I specifically meant was we no longer

11:17:08 11    have a distinction between T jobs, which are technical

11:17:12 12    jobs; O jobs, which are ops jobs; E jobs -- sorry, S

11:17:16 13    jobs, which are sales jobs; and E jobs, which are

11:17:19 14    everything else.  We don't have that distinction

11:17:20 15    anymore.  We do still have, sort of, job grades, but

11:17:25 16    even those are not all used.

11:17:26 17        Q.   Okay.  Well, we'll circle back to this when we

11:17:28 18    get documents from counsel.

11:17:30 19             Are you familiar with the term "internal

11:17:48 20    equity" in the compensation context?

11:17:50 21        A.   Yes.

11:17:50 22        Q.   And can you tell me what you understand that

11:17:52 23    term to mean?

11:17:52 24        A.   In the Google context, the way we talk about

11:17:56 25    it is -- actually, we don't say "internal equity,"

| | | |
|---|---|---|
| 11:18:01 | 1 | really, much at Google. |
| 11:18:02 | 2 | In the compensation field, people talk about |
| 11:18:04 | 3 | internal equity, which generally means people -- you |
| 11:18:06 | 4 | know, pay should be fair across people. |
| 11:18:09 | 5 | In Google we don't actually talk about -- we |
| 11:18:12 | 6 | don't use the phrase "internal equity" much at all.  We |
| 11:18:15 | 7 | instead focus in compensation on making sure, as much |
| 11:18:18 | 8 | as possible, compensation is tied to individual |
| 11:18:20 | 9 | contributions. |
| 11:18:20 | 10 | Q.   And is it a principle of compensation in |
| 11:18:23 | 11 | Google that compensation should be fair? |
| 11:18:25 | 12 | MR. RUBIN:  Objection.  Form. |
| 11:18:26 | 13 | THE WITNESS:  I'm not sure what you mean by |
| 11:18:29 | 14 | "fair." |
| 11:18:30 | 15 | BY MS. SHAVER: |
| 11:18:30 | 16 | Q.   Well, you testified, "In the compensation |
| 11:18:35 | 17 | field, people talk about internal equity, which |
| 11:18:37 | 18 | generally means people -- pay should be fair across |
| 11:18:42 | 19 | people." |
| 11:18:42 | 20 | Is that true at Google as well? |
| 11:18:44 | 21 | A.   So this is why I draw the distinction between, |
| 11:18:46 | 22 | sort of, the general compensation -- the way |
| 11:18:48 | 23 | compensation people look at it and the way we think |
| 11:18:49 | 24 | about it at Google. |
| 11:18:50 | 25 | At Google our view is very much that pay can |

| | | |
|---|---|---|
| 11:18:54 | 1 | and should and does vary wildly across individuals who |
| 11:18:57 | 2 | are performing the same job, at the same job grade, |
| 11:19:01 | 3 | based on differences in their performance and |
| 11:19:03 | 4 | contribution. |
| 11:19:03 | 5 | And so at Google we actually -- and this is |
| 11:19:07 | 6 | why I asked about what do you mean by "fair."  You |
| 11:19:09 | 7 | know, fairness is commonly taken to mean, you know, |
| 11:19:12 | 8 | well, everything's equally distributed.  And when |
| 11:19:15 | 9 | people talk about internal equity outside of Google, |
| 11:19:17 | 10 | sometimes they'll say that. |
| 11:19:18 | 11 | Within Google we don't really care about it |
| 11:19:20 | 12 | being evenly distributed.  We care about the very best |
| 11:19:24 | 13 | people getting incredibly well compensated and the very |
| 11:19:29 | 14 | worst people not getting much at all and having an |
| 11:19:32 | 15 | incredibly wide distribution across that entire range. |
| 11:19:35 | 16 | So there's not an equal distribution if you |
| 11:19:37 | 17 | measure it on a per-capita basis, but if you compare it |
| 11:19:41 | 18 | to individual contribution, yeah, we try to make it |
| 11:19:44 | 19 | fair. |
| 11:19:44 | 20 | Q.   Would it be fair to say or accurate to say |
| 11:19:46 | 21 | that Google wants to reward equally performing people |
| 11:19:50 | 22 | equally -- |
| 11:19:51 | 23 | MR. RUBIN:  Objection.  Form. |
| 11:19:52 | 24 | BY MS. SHAVER: |
| 11:19:52 | 25 | Q.   -- or fairly? |

1          REPORTER'S CERTIFICATE

2          I, Anne Torreano, Certified Shorthand

3    Reporter licensed in the State of California, License

4    No. 10520, hereby certify that the deponent was by me

5    first duly sworn, and the foregoing testimony was

6    reported by me and was thereafter transcribed with

7    computer-aided transcription; that the foregoing is a

8    full, complete, and true record of said proceedings.

9          I further certify that I am not of counsel or

10   attorney for either or any of the parties in the

11   foregoing proceeding and caption named or in any way

12   interested in the outcome of the cause in said

13   caption.

14          The dismantling, unsealing, or unbinding of

15   the original transcript will render the reporter's

16   certificates null and void.

17          In witness whereof, I have subscribed my name

18   this 9th day of April, 2013.

19

20          [ ] Reading and Signing was requested.

21          [ ] Reading and Signing was waived.

22          [X] Reading and Signing was not requested.

23

24
         _____
25          ANNE M. TORREANO, CSR No. 10520