```
 1                UNITED STATES DISTRICT COURT

 2              NORTHERN DISTRICT OF CALIFORNIA

 3                     SAN JOSE DIVISION

 4

 5

 6    IN RE:  HIGH-TECH EMPLOYEE    )

 7    ANTITRUST LITIGATION          )

 8                                  )   No. 11-CV-2509-LHK

 9    THIS DOCUMENT RELATES TO:     )

10    ALL ACTIONS.                  )

11    _____)

12

13

14           CONFIDENTIAL - ATTORNEYS' EYES ONLY

15             VIDEO DEPOSITION OF MARK BENTLEY

16                    August 23, 2012

17

18

19

20    REPORTED BY:  GINA V. CARBONE, CSR NO. 8249, RPR, CCRR

21

22

23

24

25
```

| | | |
|---|---|---|
| 05:36:48 | 1 | purposes of determining or setting employee |
| 05:36:50 | 2 | compensation? |
| 05:36:51 | 3 |       MR. RILEY:  Objection.  Question is overbroad. |
| 05:36:53 | 4 | No foundation. |
| 05:37:01 | 5 |       THE WITNESS:  Do we set job levels for the |
| 05:37:04 | 6 | purposes of setting compensation? |
| 05:37:07 | 7 |       MR. SAVERI:  Q.  Yes. |
| 05:37:15 | 8 |    A.  I believe it is -- it's one vehicle that we use |
| 05:37:19 | 9 | to ultimately determine that. |
| 05:37:24 | 10 |    Q.  Now, as a general matter, were changes made for |
| 05:37:31 | 11 | employee compensation through changes in job categories |
| 05:37:35 | 12 | or job classifications? |
| 05:37:40 | 13 |    A.  Can you please repeat that question. |
| 05:37:41 | 14 |    Q.  As a general matter, were changes made to |
| 05:37:44 | 15 | compensation for Apple employees through changes to job |
| 05:37:47 | 16 | categories or job classifications? |
| 05:37:50 | 17 |       MR. RILEY:  Objection.  The question is vague. |
| 05:37:52 | 18 | No foundation. |
| 05:37:55 | 19 |       THE WITNESS:  I believe there may be |
| 05:37:56 | 20 | circumstances when that was the case.  But I don't know |
| 05:37:58 | 21 | if that was a general practice. |
| 05:38:01 | 22 |       MR. SAVERI:  Q.  Well, is it fair to say |
| 05:38:04 | 23 | that from time to time, persons move from one job |
| 05:38:09 | 24 | classification to another at Apple? |
| 05:38:17 | 25 |    A.  I'm not sure I follow your question. |

| | | |
|---|---|---|
| 05:38:18 | 1 | Q.  Well, when an employee came to Apple, were they |
| 05:38:22 | 2 | put in -- were they assigned a job classification or job |
| 05:38:27 | 3 | category? |
| 05:38:29 | 4 | A.  I believe that would be the case. |
| 05:38:31 | 5 | Q.  And was one way their salary was increased, or |
| 05:38:34 | 6 | the compensation was increased, to be moved from one job |
| 05:38:38 | 7 | level or job classification to another job level or job |
| 05:38:41 | 8 | classification? |
| 05:38:45 | 9 | A.  I would -- my understanding is that one |
| 05:38:48 | 10 | would -- my interpretation of that is it's done through |
| 05:38:54 | 11 | promotions and taking on more responsibility. |
| 05:38:58 | 12 | Q.  And when someone was promoted, would they be |
| 05:39:01 | 13 | promoted to a higher job classification or job category? |
| 05:39:06 | 14 | A.  I believe so. |
| 05:39:08 | 15 | Q.  And as a consequence of that, or in connection |
| 05:39:10 | 16 | with that, if they were promoted, they would generally |
| 05:39:14 | 17 | receive more compensation.  Is that fair? |
| 05:39:18 | 18 | A.  I believe that would be the case. |
| 05:39:22 | 19 | Q.  From time to time, did Apple raise the |
| 05:39:25 | 20 | compensation for a particular job category or job level? |
| 05:39:33 | 21 | MR. RILEY:  Objection.  Question is overbroad |
| 05:39:35 | 22 | and there is no foundation. |
| 05:39:43 | 23 | THE WITNESS:  I believe that that would be |
| 05:39:45 | 24 | taken -- I believe if and when that was done, it was |
| 05:39:48 | 25 | done on an annual basis during compensation planning. |

| | | |
|---|---|---|
| 05:39:53 | 1 | MR. SAVERI:  Q.  So, for example, were |
| 05:39:54 | 2 | there employees at Apple who received increases in |
| 05:39:58 | 3 | salary, although they didn't receive a promotion to |
| 05:40:01 | 4 | a different job category or job classification? |
| 05:40:06 | 5 | MR. RILEY:  Objection.  The question is |
| 05:40:08 | 6 | overbroad and there is no foundation. |
| 05:40:20 | 7 | THE WITNESS:  So I believe that that would |
| 05:40:22 | 8 | occur with what we would call merit -- the merit time, |
| 05:40:28 | 9 | or what other companies call focal period, which is done |
| 05:40:33 | 10 | on an annual basis to keep up with inflationary |
| 05:40:37 | 11 | conditions in the market.  And that's not to say that |
| 05:40:40 | 12 | all employees saw adjustments to their compensation. |
| 05:40:46 | 13 | MR. SAVERI:  Q.  Fair enough. |
| 05:40:53 | 14 | Do you know if the market survey information |
| 05:40:55 | 15 | was used in considering whether or not Apple should make |
| 05:40:58 | 16 | those changes to salary levels for particular job levels |
| 05:41:03 | 17 | or job classifications? |
| 05:41:06 | 18 | MR. RILEY:  Question is overbroad and there is |
| 05:41:08 | 19 | no foundation.  It's vague as to time. |
| 05:41:13 | 20 | THE WITNESS:  Again, I believe it's a vehicle |
| 05:41:15 | 21 | that was considered.  How it was weighted, I can't tell |
| 05:41:21 | 22 | you. |
| 05:41:25 | 23 | MR. SAVERI:  Q.  Going back to Exhibit 268, |
| 05:41:32 | 24 | you, in your email to yourself, attach an email from |
| 05:41:39 | 25 | Gilda Montesino to staffing.  Do you see that? |

```
05:57:59  1            MR. SAVERI:  Q.  Did Apple review the
05:58:04  2   compensation levels or the amount of compensation
05:58:07  3   for particular job titles or classifications on a
05:58:10  4   regular basis?
05:58:13  5            MR. RILEY:  Objection.  The question is vague
05:58:14  6   as to compensation.
05:58:22  7            THE WITNESS:  So as the interim HR head, my
05:58:25  8   specialty was recruiting.  It was never my experience
05:58:28  9   that we had issues with competing in the market with
05:58:35 10   getting great talent because of compensation.
05:58:39 11            MR. SAVERI:  Q.  Well, was there ever a
05:58:41 12   situation that you were aware of where Apple
05:58:44 13   believed it had to increase salaries for particular
05:58:47 14   job categories in order to stop or prevent attrition
05:58:50 15   or departure from Apple?
05:58:54 16            MR. RILEY:  Objection.  The question is
05:58:55 17   overbroad and there is no foundation.
05:59:00 18            THE WITNESS:  There may have been situations
05:59:02 19   where there were key employees that may have wanted to
05:59:05 20   leave.  And if -- depending on how important they were,
05:59:12 21   that might have been considered.
05:59:18 22            MR. SAVERI:  Q.  Did Apple employees
05:59:21 23   receive merit bonuses?
05:59:27 24            MR. RILEY:  Objection.  The question is vague.
05:59:30 25            THE WITNESS:  I don't understand your question.
```

| | | |
|---|---|---|
| 05:59:31 | 1 | MR. SAVERI:  Q.  Well, did -- were Apple |
| 05:59:37 | 2 | employees eligible to receive increased compensation |
| 05:59:41 | 3 | based on merit or performance? |
| 05:59:45 | 4 | MR. RILEY:  Same objection. |
| 05:59:46 | 5 | THE WITNESS:  Again, I think it depended on the |
| 05:59:51 | 6 | organization and the executive that was managing the |
| 05:59:56 | 7 | organization as it related to how he or she used their |
| 06:00:01 | 8 | discretion. |
| 06:00:02 | 9 | MR. SAVERI:  Q.  So is it fair to say that |
| 06:00:03 | 10 | those managers or persons that you identified had |
| 06:00:05 | 11 | discretion to award or provide bonuses or increased |
| 06:00:11 | 12 | compensation for merit or performance? |
| 06:00:13 | 13 | MR. RILEY:  Objection.  The question is overly |
| 06:00:14 | 14 | broad with regard to employee categories. |
| 06:00:21 | 15 | THE WITNESS:  So from my vantage point, as the |
| 06:00:26 | 16 | interim HR, merit -- annual merit eligibility and bonus |
| 06:00:31 | 17 | were two different -- two different conversations, if |
| 06:00:35 | 18 | you will.  And it depended on the executive -- the |
| 06:00:40 | 19 | executive's discretion. |
| 06:00:42 | 20 | MR. SAVERI:  Q.  Okay.  Let's break them |
| 06:00:44 | 21 | into pieces.  With respect to merit, who |
| 06:00:48 | 22 | determine -- well, can you describe the merit |
| 06:00:51 | 23 | process. |
| 06:00:56 | 24 | A.  The merit process is, I think, similar to many |
| 06:01:01 | 25 | companies. |

```
06:01:07  1   ██████████████████████████████████████████
06:01:14  2   ████████████████████████████████████████████
06:01:22  3      █████  ██████████████████████████████████
06:01:28  4   ██████████████████████████████████████.
06:01:34  5              MR. SAVERI:  Q.  How did the bonus portion
06:01:35  6   of compensation work?  What was the process,
06:01:37  7   generally, for determining that?
06:01:39  8              MR. RILEY:  Objection.  The question is overly
06:01:41  9   broad and vague.
06:01:42 10              THE WITNESS:  It's -- it varies greatly.
06:01:45 11              MR. SAVERI:  Q.  Okay.  Who had -- were the
06:01:47 12   particular persons or -- strike that.
06:01:50 13              Was the compensation committee responsible for
06:01:54 14   determining bonuses?
06:01:56 15              MR. RILEY:  Objection.  The question is overly
06:01:57 16   broad and vague.
06:02:01 17              THE WITNESS:  The compensation committee, I
06:02:03 18   believe, was responsible or had discretion over the
06:02:07 19   executive team bonuses.  But I do not know -- I don't
06:02:12 20   think they had -- they weren't -- they were involved in
06:02:16 21   approving a general framework, and that would then --
06:02:19 22   for the lower levels it was up to the actual individual
06:02:22 23   managers.
06:02:31 24              MR. SAVERI:  Q.  When a new employee is
06:02:33 25   hired by Apple, how is the job title and the level
```

```
06:02:38  1   of compensation for that individual generally
06:02:41  2   determined?
06:02:43  3           MR. RILEY:  Objection.  The question is overly
06:02:45  4   broad and there is no foundation.
06:02:47  5           THE WITNESS:  It depends on -- it depends on
06:02:49  6   the functional discipline.  Depends on the leveling, you
06:02:54  7   know, if we're talking about the -- if we're talking
06:02:57  8   about high volume recruiting, say, in retail or in our
06:03:01  9   call centers versus the exec search team.  It varied
06:03:03 10   greatly.
06:03:05 11           MR. SAVERI:  Q.  Was the assignment of
06:03:07 12   particular employees to job categories or job titles
06:03:12 13   something that the HR department did, or the
06:03:16 14   recruiting department?
06:03:17 15           Let me ask a better question.  What --
06:03:20 16   institutionally, who was responsible for assigning
06:03:24 17   particular employees to particular job classifications
06:03:29 18   or job categories?
06:03:31 19           MR. RILEY:  Objection.  The question is vague.
06:03:32 20           THE WITNESS:  I'm not sure I understand your
06:03:34 21   question specifically.  I would answer that question by
06:03:38 22   telling you that in many cases a requisition is created
06:03:46 23   by a hiring manager.  And it is at that time that that
06:03:52 24   goes through a process, and then that requisition is
06:03:55 25   then recruited against.
```

```
 1        I, Gina V. Carbone, Certified Shorthand
 2   Reporter licensed in the State of California, License
 3   No. 8249, hereby certify that the deponent was by me
 4   first duly sworn and the foregoing testimony was
 5   reported by me and was thereafter transcribed with
 6   computer-aided transcription; that the foregoing is a
 7   full, complete, and true record of said proceedings.
 8        I further certify that I am not of counsel or
 9   attorney for either of any of the parties in the
10   foregoing proceeding and caption named or in any way
11   interested in the outcome of the cause in said caption.
12        The dismantling, unsealing, or unbinding of
13   the original transcript will render the reporter's
14   certificates null and void.
15        In witness whereof, I have hereunto set my
16   hand this day:  July 6, 2012.
17        ___X___ Reading and Signing was requested.
18        _____ Reading and Signing was waived.
19        _____ Reading and signing was not requested.
20
21
22                  _____
23                       GINA  V. CARBONE
24                       CSR 8249, RPR, CCRR
25
```