# EXHIBIT 22

# FILED UNDER SEAL

711.1

EXHIBIT 711
Deponent Maupin
Date 2-12-13
Gina V. Carbone, CSR

KEKER & VAN NEST LLP
JOHN W. KEKER - # 49092
jkeker@kvn.com
DANIEL PURCELL - # 191424
dpurcell@kvn.com
EUGENE M. PAIGE - # 202849
epaige@kvn.com

633 Battery Street
San Francisco, CA 94111-1809
Telephone:    415 391 5400
Facsimile:    415 397 7188

Attorneys for Defendant
LUCASFILM LTD.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| IN RE: HIGH-TECH EMPLOYEE ANTITRUST LITIGATION | Case No. 3:11-cv-2509-LHK |
| | **DECLARATION OF MICHELLE MAUPIN IN SUPPORT OF DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION** |
| THIS DOCUMENT RELATES TO: | |
| ALL ACTIONS | |
| | Date:          January 17, 2013 |
| | Time:          1:30 p.m. |
| | Courtroom: 8, 4th Floor |
| | Judge:         Hon. Lucy H. Koh |
| | Date Consol. Amended Compl. Filed: Sept. 13, 2011 |
| | Trial Date: Nov. 12, 2013 |

711·2

I, Michelle Maupin, state and declare as follows:

1.      I am the Senior Manager, Compensation at Lucasfilm Ltd. (hereafter "Lucasfilm" or "the company"), one of the defendants in the above-captioned action.  I make this declaration in support of Defendants' Opposition to Plaintiffs' Motion for Class Certification.  Except where expressly stated, I have knowledge of the facts set forth herein, and if called to testify as a witness thereto, could do so competently under oath.  Except where expressly stated, the statements in this declaration relate only to Lucasfilm's salaried, non-union employees in the United States.

2.      I have been informed that the plaintiffs in this case seek to represent a class of plaintiffs that includes salaried United States employees at Lucasfilm from January 2005 through December 2009 (the "Class Period"), as well as an alternative class that includes technical, creative, and/or research and development employees at Lucasfilm during the Class Period.

3.      I have worked at Lucasfilm since April 2006.  In my position as Lucasfilm's Senior Manager, Compensation, I have become and am familiar with Lucasfilm's compensation policies, practices, and procedures.  I am an advisor to Lucasfilm's Compensation Committee, which sets all compensation policies, budgets, and ranges for Lucasfilm,[1] and I administer the compensation process.

**A.      Lucasfilm's dispersed corporate structure and diverse workforce**

4.      Lucasfilm employs a highly dispersed workforce with a diverse set of specialties and skills, as the company makes a wide variety of products and serves several distinct industries.

5.      The company is divided into five separate divisions, each of which creates distinct products and serves a distinct market:

i)      Lucasfilm ("LFL"), which produces live-action feature films and television programs;

ii)      Industrial Light & Magic, which provides photo-realistic visual effects for live-action films and television programs;

---

[1] Certain compensation policies and budgets are subject to final approval by the President and Board of Directors Compensation Committee.

711.3

iii)    Skywalker Sound, which provides sound engineering and sound effects;

iv)    LucasArts, which develops and publishes video games; and

v)    Lucasfilm Animation, which produces animated television programming.

6.    I have been informed that the other defendants in this case, apart from Lucasfilm, are Adobe Systems, Inc., Apple Inc., Google Inc., Intel Corp., Intuit Inc., and Pixar.  I am generally familiar with the business of the other defendants.  To my knowledge, until recently, none of the other defendants named in this case produces significant products in a market served by any Lucasfilm division.  To my knowledge, no other defendant named in this case produces live-action feature films, live action television, live-action visual effects, sound engineering and effects, video games, or animated television programming.  I understand that Lucasfilm does not consider any of the other defendants to be its competitors in terms of the products Lucasfilm produces.  Although Pixar does produce animated feature films, I understand that Lucasfilm considers animated feature films to be a different class of product from animated television programming, distinct both in terms of content and the skills required to produce that content.[2]  I understand that Lucasfilm has historically considered Pixar to be a partner, both by virtue of Lucasfilm's reliance on Pixar's RenderMan digital effects software in its visual effects work and the work of Skywalker Sound, Lucasfilm's sound engineering division, on Pixar's animated features.[3]

_____

[2]  I have been informed that Lucasfilm has provided animation for two full-length animated features. Lucasfilm Animation created The Clone Wars, which was released in 2008.  The Clone Wars is a full-length animated feature, but is in the two-dimensional television animation style of Lucasfilm Animation's popular television show of the same name, and is not similar in style to the three-dimensional full-length features that Pixar produces. Additionally, Industrial Light and Magic provided the visual effects animation for Rango, an animated feature in a three-dimensional style that was released by Paramount Pictures and Nickelodeon Movies in 2011.

[3]  I have been informed that the RenderMan software was developed by what is now Pixar at a time when Pixar was still a Lucasfilm division. When Pixar spun off from Lucasfilm and became an independent company, it took RenderMan with it, and Pixar now owns the software.  Pixar sells the RenderMan software and uses it to create visual effects for animated features, while Lucasfilm's Industrial Light and Magic division uses RenderMan to create visual effects for live-action features.  Unlike Pixar, Lucasfilm does not make its visual effects technology commercially available.  Instead, Lucasfilm uses its visual effects technology to create visual effects for live-action productions.

2

DECLARATION OF MICHELLE MAUPIN IN SUPPORT OF DEFENDANTS' OPPOSITION TO
PLAINTIFFS' MOTION FOR CLASS CERTIFICATION
Case No. 3:11-cv-2509-LHK

711.4

7.     Although Lucasfilm occasionally uses common job titles across divisions, the nature of the work performed and the skills used for a particular job title at one division may vary significantly from the work performed and skills used for the same job title at another division.

**B.     Lucasfilm's compensation philosophy**

8.     Lucasfilm is a privately-owned company and provides no equity compensation to employees.  For most United States salaried employees at Lucasfilm, the elements of cash compensation are base salary and, potentially though not always, an annual bonus.

9.     Lucasfilm has always competed for employees based more on the prestige associated with our brand, products (most obviously including the successful and world-famous *Star Wars* and *Indiana Jones* franchises), and work (which has been recognized with numerous Academy Awards, among other prizes), rather than entirely on salary and compensation.  This is partly a consequence of the fact that Lucasfilm is a private company, rather than publicly held, and partly because Lucasfilm is smaller in size, and thus has fewer financial resources, than our competitors.  Many of the other production studios, visual effects houses, and video-game developers and publishers with whom we compete for talent are larger (often significantly) than Lucasfilm or are affiliated with a larger corporate parent.  Because of constraints imposed by these market factors, we use the approach of hiring entry-level talent where possible.  Lucasfilm understands that those employees who are more interested in higher compensation may at some point choose to leave Lucasfilm for higher-paying positions elsewhere.  Lucasfilm is willing to accept such turnover, as the company has never had trouble attracting top-notch employees eager to work at Lucasfilm.  As a result of all these factors, Lucasfilm has generally paid its employees below market rates for total compensation (i.e. base compensation, bonuses, and long-term incentives such as equity compensation).  Lucasfilm's total compensation was below market before the DOJ investigation that gave rise to this lawsuit, and Lucasfilm has continued to pay below market rates for total compensation after the DOJ investigation.

10.     Lucasfilm determines its compensation levels primarily by analyzing the salaries paid for comparable positions in the external market.  Although Lucasfilm looks to comparable

711.5

external positions as a reference when setting compensation, Lucasfilm does not attempt to or wish to match the top-level compensation for comparable positions in the external market. Rather, we use external compensation data as a benchmark from which we set salaries, with the understanding that Lucasfilm's goal and practice will be paying cash compensation that is at the market median.

11.     Because Lucasfilm's different divisions each serve different specific industries, compensation within each Lucasfilm division is determined by analyzing the compensation data particular to the peer companies in that market who are competitors for potential employees. Because each Lucasfilm division competes in different product and labor markets, each division has its own collection of peer companies which are used to help determine compensation for that division. Accordingly, compensation for a particular job title is not necessarily equalized across Lucasfilm divisions; a job title that may be paid at one rate in one industry (*e.g.,* the video-game development and publishing industry served by LucasArts) may be paid at a different (higher or lower) rate than another industry (*e.g.,* the sound-engineering and –effects industry served by Skywalker Sound).

### 1.     Use of survey data by the various Lucasfilm divisions

12.     The various Lucasfilm divisions rely primarily on data from market surveys to set their compensation levels. Market survey data is the only formal research that Lucasfilm uses regarding competitors' compensation.

13.     Lucasfilm uses specific surveys for specific jobs. The relevance of a particular market survey differs depending on the particular industry (or Lucasfilm division) and position type. A summary of the different surveys upon which the different Lucasfilm divisions rely most significantly is set forth below:

i)     Radford survey. Lucasfilm uses Radford survey data for San Francisco Bay Area companies to determine compensation in the local labor market. The Radford survey data is the primary data source for compensation for Lucasfilm's administrative positions—its

DECLARATION OF MICHELLE MAUPIN IN SUPPORT OF DEFENDANTS' OPPOSITION TO
PLAINTIFFS' MOTION FOR CLASS CERTIFICATION
Case No. 3:11-cv-2509-LHK

711.6

executives, finance, and business systems employees, as well as its marketing, human resources, information technology, and facilities positions.

      ii)    Croner Animation and Visual Effects ("AVE") survey.  Lucasfilm uses nationwide data from the Croner AVE survey to determine compensation in the animation and visual effects industry.  The Croner AVE survey is the primary data source for determining compensation for artists, production, and technology positions at Lucasfilm Animation and Industrial Light and Magic.

      iii)    Croner Software Games ("Games") survey.  Lucasfilm uses nationwide data from the Croner Games survey to determine compensation in the video game industry.  The Croner Games survey is the primary data source for determining compensation for artists, production, and technology positions at LucasArts.

    14.    I have been informed that plaintiff Siddharth Hariharan worked at LucasArts as a software engineer from January 2007 through August 2008.  During this time, Lucasfilm used the Croner Games survey as the primary data source for determining compensation for software engineers at LucasArts.

    15.    I have reviewed the participants in the Croner Games surveys from 2005 to 2011. No other defendant named in this lawsuit participated in the Croner Games survey between 2005 and 2011. During each of these years, Lucasfilm considered the list of Croner Games survey participant companies to be relevant peer companies for compensation purposes.

      i)  An excerpt from the 2008 Croner Games survey results is attached as Exhibit A.  The pages bearing Bates numbers LUCAS00018799-LUCAS00018800 contain a list of the participants in the 2008 Croner Games survey.

### 2.    How Lucasfilm divisions set their salary ranges

    16.    Prior to 2006, each division of Lucasfilm separately used market survey data to set a unique pay range for every single position.  In other words, each position's pay range was set independent of the salaries of other positions, even those in the same department, and no position's salary depended on or was formally tied to the salary set for any other position.

711.7

17.     In 2005, in connection with the integration of Lucasfilm divisions, Lucasfilm engaged a compensation consultant to review and improve the company's compensation practices, including streamlining, and making more efficient and less time-consuming, Lucasfilm's practices for determining compensation for each position.

18.     As one result of the compensation practices review, during 2006 Lucasfilm introduced an overarching system of salary grades to be used to guide compensation decisions. At first, the salary structure was used in tandem with the existing process. The full transition to the salary structure system occurred during 2006 and 2007. For each year since 2006, Lucasfilm has used approximately 20-25 salary grades. Each salary grade has a minimum, midpoint, and maximum. The structure width, or differential between the minimum and maximum of the range for each grade is approximately 60% of the minimum.

19.     Since 2008, each position at Lucasfilm has been assigned a salary grade. The salary grade dictates the applicable salary range. During 2006 and 2007, salary grades were used in tandem with the prior practice of assigning a salary range for each position.

i)     A true and correct copy of Lucasfilm's 2008 salary structure is attached as Exhibit B. Lucasfilm had similar salary structures for the years 2006 through 2011.

20.     The breadth of the salary range for each grade means that actual salaries can vary significantly for employees of a particular job title within a particular division. For example, Exhibit B shows that the annual salary for a Grade 17 position could range anywhere from $117,200 to $187,500.

21.     When assessing compensation at each Lucasfilm division's peer companies, that Lucasfilm division considers those companies' base salary and bonuses. Lucasfilm generally does not consider any stock, stock options, or other equity compensation provided by peer companies when setting compensation levels. Lucasfilm has adopted this approach because we are not in a position to offer equity ourselves. As a result, Lucasfilm has always competed for workers on the strength of our brand, products, reputation for quality work, and the work experience we offer rather than entirely on compensation.

6

DECLARATION OF MICHELLE MAUPIN IN SUPPORT OF DEFENDANTS' OPPOSITION TO
PLAINTIFFS' MOTION FOR CLASS CERTIFICATION
Case No. 3:11-cv-2509-LHK

711.8

22.     Since 2006, Lucasfilm has generally matched the midpoint of the salary ranges to most of the market positions' base compensation ranges since the salary range is used in administering base compensation; in other words, Lucasfilm has set the midpoint of its salary ranges at the midpoint of the base (i.e. non-equity, non-bonus) compensation in the relevant market.[4]  The relevant market is determined using compensation surveys that are relevant to the specific industry and position, as more fully described in paragraphs 12 to 15 above.  Because many of Lucasfilm's peer companies do offer stock, stock options, or other equity as part of their compensation packages, Lucasfilm's decision not to consider the equity offered by peer companies means that Lucasfilm generally benchmarks its positions at a level below the median of the actual total compensation, including any equity, offered by peer companies.

23.     During approximately 2007 through 2008, Lucasfilm changed its compensation philosophy for creative and technical jobs and began benchmarking certain creative and technical jobs at the 65th percentile of cash compensation in the relevant market.  Lucasfilm made this change because it was having difficulty retaining some key creative and technical employees, due in part to expansion and aggressive recruiting by Electronic Arts, Inc. and the high tech industry. This change affected approximately 60% of Lucasfilm's workforce. This would be 60% of non-union employees since  union employees' pay was governed by union contract.  In 2009, as pressure from other companies eased and due to budget constraints, Lucasfilm returned to a policy of generally benchmarking creative and technical positions at the midpoint of the base compensation in the relevant market.  In other words, during a period where Plaintiffs are alleging that Lucasfilm was conspiring with other companies to lower wages,  Lucasfilm changed its compensation philosophy in a manner that *increased* base compensation targets for approximately 60% of its workforce.  Later, around the time Plaintiffs allege that the supposed conspiracy was ending, Lucasfilm reverted to its prior compensation philosophy, and *reduced* base compensation targets for the same sector of its workforce.  These changes in Lucasfilm's compensation

---

[4]  As discussed below, at times Lucasfilm has benchmarked the midpoint of a salary range at the 65th percentile of the relevant peer group for particular positions identified as highly competitive and/or essential to achieving critical or important business objectives.,

7

711.9

philosophy did not depend on any alleged agreements with other companies, including Lucasfilm's understanding with Pixar.

24.     Based on my understanding of the market data I have reviewed in my position as Lucasfilm's Senior Manager of Compensation and my work with the Lucasfilm Compensation Committee, I understand that the total compensation Lucasfilm offers to its employees is, on average, approximately 20% less than total compensation offered by peer companies for comparable positions. As discussed above, the relevant "peer companies" for purposes of the compensation comparison are different for each Lucasfilm division. For example, for LucasArts, which develops and publishes video games, peer companies would include other video-game developers and publishers such as Electronic Arts, Activision, Microsoft, and Nintendo.

**C.     How Lucasfilm sets compensation for new hires**

25.     When Lucasfilm creates a new position, the Compensation Committee will determine the appropriate salary grade for the position (among the 20-25 salary grades in use by the company at the time) based on (a) the relevant external survey data set forth above; and (b) a comparison with existing positions; (c) the particular skills needed for the position.

26.     If Lucasfilm is recruiting for an existing position, the Compensation Committee will use the existing range for the position in determining the salary of the new employee hired to fill that position.

27.     When setting salary ranges for requisitions, the Compensation Committee first tries to match the requisition to a position in the relevant market surveys. If there is no match, the Compensation Committee attempts to obtain information regarding the relevant market pay through other sources, including from recruiters. Recruiters may receive information about market compensation levels from candidates if candidates share their expectations about compensation or the market in general. The Compensation Committee also may receive information about other employers' pay practices from exit interviews, if departing employees choose to share with Lucasfilm information about the compensation at their new positions. Although the Compensation Committee may be aware of this information, the primary

DECLARATION OF MICHELLE MAUPIN IN SUPPORT OF DEFENDANTS' OPPOSITION TO
PLAINTIFFS' MOTION FOR CLASS CERTIFICATION
Case No. 3:11-cv-2509-LHK