**What are the Board's voting recommendations?**

The Board recommends that you vote your shares:

- "FOR" each of the nominees to the Board (Proposal No. 1);

- "FOR" amendments to the Company's 2003 Employee Stock Plan (Proposal No. 2);

- "FOR" amendments to the Company's 1997 Director Stock Option Plan (Proposal No. 3);

- "FOR" the proposal regarding an advisory vote on executive compensation (Proposal No. 4);

- "FOR" ratification of the appointment of Ernst & Young LLP as the Company's independent registered public accounting firm for 2010 (Proposal No. 5);

- "AGAINST" the shareholder proposal regarding a sustainability report (Proposal No. 6); and

- "AGAINST" the shareholder proposal to amend the Company's bylaws to establish a Board committee on sustainability (Proposal No. 7).

**Where are the Company's principal executive offices located and what is the Company's main telephone number?**

The Company's principal executive offices are located at 1 Infinite Loop, Cupertino, California 95014. The Company's main telephone number is (408) 996-1010.

**What is the Company's fiscal year?**

The Company's fiscal year is the 52 or 53-week period that ends on the last Saturday of September. Unless otherwise stated, all information presented in this Proxy Statement is based on the Company's fiscal calendar.

**Why did I receive a one-page notice in the mail regarding the Internet availability of proxy materials instead of a full set of proxy materials?**

Pursuant to rules adopted by the SEC, the Company has elected to provide access to its proxy materials over the Internet. Accordingly, the Company is sending a Notice of Internet Availability of Proxy Materials (the " *Notice* ") to the Company's shareholders. All shareholders will have the ability to access the proxy materials on the website referred to in the Notice or request to receive a printed set of the proxy materials. Instructions on how to access the proxy materials over the Internet or to request a printed copy may be found in the Notice. In addition, shareholders may request to receive proxy materials in printed form by mail or electronically by email on an ongoing basis. The Company encourages shareholders to take advantage of the availability of the proxy materials on the Internet to help reduce the environmental impact of the Annual Meeting.

**I share an address with another shareholder, and we received only one paper copy of the proxy materials. How may I obtain an additional copy of the proxy materials?**

The Company has adopted a procedure called "householding," which the SEC has approved. Under this procedure, the Company is delivering a single copy of the Notice and, if applicable, this Proxy Statement and the Annual Report to multiple shareholders who share the same address unless the Company has received contrary instructions from one or more of the shareholders. This procedure reduces the Company's printing costs, mailing costs and fees. Shareholders who participate in householding will continue to be able to access and receive separate proxy cards. Upon written or oral request, the Company will deliver promptly a separate copy of the Notice and, if applicable, this Proxy Statement and the Annual Report to any shareholder at a shared address to

2

1855.15

which the Company delivered a single copy of any of these documents. To receive a separate copy of the Notice and, if applicable, this Proxy Statement or the Annual Report, shareholders may write or call the Company at the following address and telephone number:

Apple Investor Relations
1 Infinite Loop MS: 301-4IR
Cupertino, California 95014
(408) 974-3123

Shareholders who hold shares in "street name" (as described below) may contact their brokerage firm, bank, broker-dealer or other similar organization to request information about householding.

### How can I get electronic access to the proxy materials?

The Notice will provide you with instructions regarding how to:

- View the Company's proxy materials for the Annual Meeting on the Internet; and

- Instruct the Company to send future proxy materials to you electronically by email.

The Company's proxy materials are also available on the Company's website at www.apple.com/investor.

Choosing to receive future proxy materials by email will save the Company the cost of printing and mailing documents to you and will reduce the impact of the Company's annual meetings on the environment. If you choose to receive future proxy materials by email, you will receive an email message next year with instructions containing a link to those materials and a link to the proxy voting website. Your election to receive proxy materials by email will remain in effect until you terminate it.

### Who may vote at the Annual Meeting?

Each share of the Company's common stock has one vote on each matter. Only shareholders of record as of the close of business on December 28, 2009 (the " *Record Date* ") are entitled to receive notice of, to attend, and to vote at the Annual Meeting. As of the Record Date, there were 906,386,266 shares of the Company's common stock issued and outstanding, held by 30,476 holders of record.

### What is the difference between a shareholder of record and a beneficial owner of shares held in street name?

*Shareholder of Record* . If your shares are registered directly in your name with the Company's transfer agent, Computershare Investor Services, LLC (" *Computershare* "), you are considered the shareholder of record with respect to those shares, and the Notice was sent directly to you by the Company. If you request printed copies of the proxy materials by mail, you will receive a proxy card.

*Beneficial Owner of Shares Held in Street Name* . If your shares are held in an account at a brokerage firm, bank, broker-dealer, or other similar organization, then you are the beneficial owner of shares held in "street name," and the Notice was forwarded to you by that organization. The organization holding your account is considered the shareholder of record for purposes of voting at the Annual Meeting. As a beneficial owner, you have the right to instruct that organization on how to vote the shares held in your account. If you request printed copies of the proxy materials by mail, you will receive a vote instruction form.

### If I am a shareholder of record of the Company's shares, how do I vote?

There are four ways to vote:

- *In person* . If you are a shareholder of record, you may vote in person at the Annual Meeting. The Company will give you a ballot when you arrive.

3

1855.14

- *Via the Internet* . You may vote by proxy via the Internet by following the instructions provided in the Notice.

- *By Telephone* . If you request printed copies of the proxy materials by mail, you may vote by proxy by calling the toll free number found on the proxy card.

- *By Mail* . If you request printed copies of the proxy materials by mail, you may vote by proxy by filling out the proxy card and sending it back in the envelope provided.

**If I am a beneficial owner of shares held in street name, how do I vote?**

There are four ways to vote:

- *In person* . If you are a beneficial owner of shares held in street name and you wish to vote in person at the Annual Meeting, you must obtain a legal proxy from the organization that holds your shares.

- *Via the Internet* . You may vote by proxy via the Internet by visiting www.proxyvote.com and entering the control number found in the Notice.

- *By Telephone* . If you request printed copies of the proxy materials by mail, you may vote by proxy by calling the toll free number found on the vote instruction form.

- *By Mail* . If you request printed copies of the proxy materials by mail, you may vote by proxy by filling out the vote instruction form and sending it back in the envelope provided.

**What is the quorum requirement for the Annual Meeting?**

The holders of a majority of the shares entitled to vote at the Annual Meeting must be present at the Annual Meeting for the transaction of business. This is called a quorum. Your shares will be counted for purposes of determining if there is a quorum, whether representing votes for, against or abstained, if you:

- Are present and vote in person at the Annual Meeting; or

- Have voted on the Internet, by telephone or by properly submitting a proxy card or vote instruction form by mail.

If a quorum is not present, the Annual Meeting will be adjourned until a quorum is obtained.

**How are proxies voted?**

All shares represented by valid proxies received prior to the Annual Meeting will be voted and, where a shareholder specifies by means of the proxy a choice with respect to any matter to be acted upon, the shares will be voted in accordance with the shareholder's instructions.

**What happens if I do not give specific voting instructions?**

*Shareholders of Record* . If you are a shareholder of record and you:

- Indicate when voting on the Internet or by telephone that you wish to vote as recommended by the Board, or

- Sign and return a proxy card without giving specific voting instructions,

then the proxy holders will vote your shares in the manner recommended by the Board on all matters presented in this Proxy Statement and as the proxy holders may determine in their discretion with respect to any other matters properly presented for a vote at the Annual Meeting. See the section entitled "Other Matters" below.

1855.17

*Beneficial Owners of Shares Held in Street Name* . If you are a beneficial owner of shares held in street name and do not provide the organization that holds your shares with specific voting instructions, under the rules of various national and regional securities exchanges, the organization that holds your shares may generally vote on routine matters but cannot vote on non-routine matters. If the organization that holds your shares does not receive instructions from you on how to vote your shares on a non-routine matter, the organization that holds your shares will inform the inspector of election that it does not have the authority to vote on this matter with respect to your shares. This is generally referred to as a "broker non-vote."

**Which ballot measures are considered "routine" or "non-routine"?**

The advisory vote on executive compensation (Proposal No. 4) and the ratification of the appointment of Ernst & Young LLP as the Company's independent registered public accounting firm for 2010 (Proposal No. 5) are matters considered routine under applicable rules. A broker or other nominee may generally vote on routine matters, and therefore no broker non-votes are expected to exist in connection with Proposals No. 4 and No. 5.

The election of directors (Proposal No. 1), the amendments to the Company's 2003 Employee Stock Plan (Proposal No. 2), the amendments to the Company's 1997 Director Stock Option Plan (Proposal No. 3) and the two shareholder proposals (Proposals No. 6 and No. 7) are matters considered non-routine under applicable rules. A broker or other nominee cannot vote without instructions on non-routine matters, and therefore there may be broker non-votes on Proposals No. 1, No. 2, No. 3, No. 6 and No. 7.

**What is the voting requirement to approve each of the proposals?**

For Proposal No. 1, the seven nominees receiving the highest number of affirmative votes of the shares entitled to be voted for them, up to the seven directors to be elected by those shares, will be elected as directors to serve until the next annual meeting of shareholders and until their successors are duly elected and qualified. Votes withheld shall have no legal effect.

Approval of Proposals No. 2, No. 3, No. 4, No. 5, No. 6 and No. 7 requires the affirmative vote of (i) a majority of the shares present or represented by proxy and voting at the Annual Meeting and (ii) a majority of the shares required to constitute the quorum.

**How are broker non-votes and abstentions treated?**

Broker non-votes and abstentions are counted for purposes of determining whether a quorum is present. Only "FOR" and "AGAINST" votes are counted for purposes of determining the votes received in connection with each proposal, and therefore broker non-votes and abstentions have no effect on the proposal relating to the election of directors. In the case of each of the other proposals, broker non-votes and abstentions have no effect on determining whether the affirmative vote constitutes a majority of the shares present or represented by proxy and voting at the Annual Meeting. Approval of these other proposals also requires the affirmative vote of a majority of the shares necessary to constitute a quorum, however, and therefore broker non-votes and abstentions could prevent the approval of these other proposals because they do not count as affirmative votes. In order to minimize the number of broker non-votes, the Company encourages you to provide voting instructions to the organization that holds your shares by carefully following the instructions provided in the Notice.

**Can I change my vote after I have voted?**

You may revoke your proxy and change your vote at any time before the final vote at the Annual Meeting. You may vote again on a later date via the Internet or by telephone (only your latest Internet or telephone proxy submitted prior to the Annual Meeting will be counted), by signing and returning a new proxy card or vote instruction form with a later date, or by attending the Annual Meeting and voting in person. However, your attendance at the Annual Meeting will not automatically revoke your proxy unless you vote again at the Annual

1855.18

Meeting or specifically request that your prior proxy be revoked by delivering to the Company's General Counsel at 1 Infinite Loop, Cupertino, California 95014, MS: 301-4GC a written notice of revocation prior to the Annual Meeting.

**Who will serve as the inspector of election?**

A representative from Computershare will serve as the inspector of election.

**Is my vote confidential?**

Proxy instructions, ballots and voting tabulations that identify individual shareholders are handled in a manner that protects your voting privacy. Your vote will not be disclosed either within the Company or to third parties, except:

- As necessary to meet applicable legal requirements;

- To allow for the tabulation and certification of votes; and

- To facilitate a successful proxy solicitation.

Occasionally, shareholders provide written comments on their proxy cards, which may be forwarded to the Company's management and the Board.

**Where can I find the voting results of the Annual Meeting?**

The preliminary voting results will be announced at the Annual Meeting. The final voting results will be tallied by the inspector of election and published in the Company's Quarterly Report on Form 10-Q for the quarter ending on March 27, 2010, which the Company is required to file with the SEC by May 6, 2010.

**Who is paying for the cost of this proxy solicitation?**

The Company is paying the costs of the solicitation of proxies. The Company has retained Georgeson Inc. to assist in obtaining proxies by mail, facsimile or email from brokers, bank nominees and other institutions for the Annual Meeting. The estimated cost of such services is $14,000 plus out-of-pocket expenses. Georgeson Inc. may be contacted at (800) 261-1052.

The Company must also pay brokerage firms and other persons representing beneficial owners of shares held in street name certain fees associated with:

- Forwarding the Notice to beneficial owners;

- Forwarding printed proxy materials by mail to beneficial owners who specifically request them; and

- Obtaining beneficial owners' voting instructions.

In addition to soliciting proxies by mail, certain of the Company's directors, officers and regular employees, without additional compensation, may solicit proxies personally or by telephone, facsimile or email on the Company's behalf.

**How can I attend the Annual Meeting?**

Attendance at the Annual Meeting is limited to shareholders. Admission to the Annual Meeting will be on a first-come, first-served basis. Registration will begin at 9:00 a.m. Pacific Standard Time, and each shareholder may be asked to present valid picture identification such as a driver's license or passport and proof of stock ownership as of the Record Date. The use of cell phones, smartphones, pagers, recording and photographic equipment and/or computers is not permitted in the meeting rooms at the Annual Meeting.

1855.19

**What is the deadline to propose actions for consideration or to nominate individuals to serve as directors at the 2011 annual meeting of shareholders?**

*Requirements for Shareholder Proposals to Be Considered for Inclusion in the Company's Proxy Materials* . Shareholder proposals to be considered for inclusion in the proxy statement and form of proxy relating to the 2011 annual meeting of shareholders must be received no later than September 14, 2010. In addition, all proposals will need to comply with Rule 14a-8 of the Securities Exchange Act of 1934 (the "*Exchange Act*"), which lists the requirements for the inclusion of shareholder proposals in company-sponsored proxy materials. Shareholder proposals must be delivered to the Company's General Counsel by mail at 1 Infinite Loop, Cupertino, California 95014, MS: 301-4GC or by facsimile at (408) 253-7457.

*Requirements for Shareholder Proposals to Be Brought Before the 2011 Annual Meeting of Shareholders* . Notice of any director nomination or other proposal that you intend to present at the 2011 annual meeting of shareholders, but do not intend to have included in the proxy statement and form of proxy relating to the 2011 annual meeting of shareholders, must be delivered to the Company's General Counsel by mail at 1 Infinite Loop, Cupertino, California 95014, MS: 301-4GC or by facsimile at (408) 253-7457 not earlier than the close of business on October 28, 2010 and not later than the close of business on November 27, 2010. In addition, your notice must set forth the information required by the Company's bylaws with respect to each director nomination or other proposal that you intend to present at the 2011 annual meeting of shareholders. The proxy solicited by the Company for the 2011 annual meeting of shareholders will confer discretionary authority on the Company's proxies to vote on any proposal presented by a shareholder at that meeting for which the Company has not been provided with notice on or prior to November 28, 2010.

7

1855.70

## DIRECTORS, EXECUTIVE OFFICERS AND CORPORATE GOVERNANCE

**Directors**

Listed below are the Company's seven directors, each of whom is nominated for re-election at the Annual Meeting. Each of the directors elected at the Annual Meeting will serve a one-year term expiring at the next annual meeting of shareholders. Eric E. Schmidt, Ph.D. resigned from the Board effective July 31, 2009, resulting in one vacancy on the Board. The Board has not nominated an individual to fill the vacancy. At the Annual Meeting, proxies cannot be voted for a greater number of individuals than the seven nominees named in this Proxy Statement.

| Name | Position With the Company | Age as of the Annual Meeting | Director Since |
|---|---|---|---|
| William V. Campbell | Director | 69 | 1997 |
| Millard S. Drexler | Director | 65 | 1999 |
| Albert A. Gore, Jr. | Director | 61 | 2003 |
| Steven P. Jobs | Director and Chief Executive Officer | 55 | 1997 |
| Andrea Jung | Co-lead Director | 51 | 2008 |
| Arthur D. Levinson, Ph.D. | Co-lead Director | 59 | 2000 |
| Jerome B. York | Director | 71 | 1997 |

**William V. Campbell** has been Chairman of Intuit Inc. ("*Intuit*") since August 1998 and a director of Intuit since May 1994. Mr. Campbell also is Chair of the Board of Trustees of Columbia University and a director of The National Football Foundation & College Hall of Fame, Inc.

**Millard S. Drexler** has been Chairman and Chief Executive Officer of J.Crew Group, Inc. since January 2003. Previously, Mr. Drexler was Chief Executive Officer of The Gap, Inc. ("*Gap*") from 1995 and President from 1987 to September 2002. Mr. Drexler also was a director of Gap from November 1983 to October 2002.

**Albert A. Gore, Jr.** has served as Chairman of Current TV since 2002, Chairman of Generation Investment Management since 2004 and a partner of Kleiner Perkins Caufield & Byers since 2007. Mr. Gore also is Chairman of the Alliance for Climate Protection.

**Steven P. Jobs** is one of the Company's co-founders and currently serves as its Chief Executive Officer. Mr. Jobs also has been a director of The Walt Disney Company ("*Disney*") since May 2006.

**Andrea Jung** joined Avon Products, Inc. ("*Avon*") in January 1994 and has been Chairman and Chief Executive Officer of Avon since September 2001, having previously served as Chief Executive Officer of Avon since November 1999 and as a director of Avon since January 1998. Since July 1998, Ms. Jung also has been a director of General Electric Company, where she serves on the Management Development and Compensation Committee and the Nominating and Corporate Governance Committee. She also is a member of the N.Y. Presbyterian Hospital Board of Trustees, a director of Catalyst, a nonprofit corporate membership research and advisory organization, and Chairman of the World Federation of Direct Selling Associations.

**Arthur D. Levinson, Ph.D.** has been Chairman of Genentech, Inc. ("*Genentech*") since September 1999. Previously, Dr. Levinson also served as Chief Executive Officer of Genentech from July 1995 to April 2009. Since May 2009, Dr. Levinson has served as an advisor to Genentech's Research and Early Development center and as a member of the Scientific Resource Board, Genentech's external advisory group. Dr. Levinson is a director of NGM Biopharmaceuticals, Inc. He also serves on the Board of Scientific Consultants of the Memorial Sloan-Kettering Cancer Center, on the Industrial Advisory Board of the California Institute for Quantitative Biomedical Research, on the Advisory Council for the Princeton University Department of Molecular Biology, on the Advisory Council for the Lewis-Sigler Institute for Integrative Genomics, and on the Executive Council of TechNet.

8

1855.21

**Jerome B. York** has been Chief Executive Officer of Harwinton Capital LLC (formerly Harwinton Capital Corporation), a private investment company that he controls, since September 2000. Mr. York also has been a director of Dana Holding Corporation since January 2008, where he serves on the Audit Committee and the Compensation Committee, and a director of Tyco International Ltd. since November 2002, where he serves on the Audit Committee. Mr. York also is a director of MyPublisher, Inc.

## Role of the Board; Corporate Governance Matters

The Board oversees the Company's Chief Executive Officer (the " *CEO* ") and other senior management in the competent and ethical operation of the Company on a day-to-day basis and assures that the long-term interests of the shareholders are being served. To satisfy its duties, directors are expected to take a proactive, focused approach to their position, and set standards to ensure that the Company is committed to business success through the maintenance of high standards of responsibility and ethics. The key practices and procedures of the Board are outlined in the Corporate Governance Guidelines available on the Company's website at www.apple.com/investor.

The Board met a total of four times during 2009. The Board has determined that all Board members, excluding Mr. Jobs, are independent under the applicable NASDAQ and SEC rules.

## Board Committees

The Board has a standing Audit and Finance Committee (the " *Audit Committee* "), Compensation Committee and Nominating and Corporate Governance Committee (the " *Nominating Committee* "). The Board has determined that the Chairs and all committee members are independent under the applicable NASDAQ and SEC rules. The members of the committees are identified in the table below.

| Director | Audit and Finance Committee | Compensation Committee | Nominating and Corporate Governance Committee |
|---|---|---|---|
| William V. Campbell | X | Chair | — |
| Millard S. Drexler | — | X | X |
| Albert A. Gore, Jr. | — | X | X |
| Steven P. Jobs | — | — | — |
| Andrea Jung | — | X | — |
| Arthur D. Levinson, Ph.D. | X | — | Chair |
| Jerome B. York | Chair | — | — |

The Audit Committee is responsible primarily for overseeing the services performed by the Company's independent registered public accounting firm and internal audit department, evaluating the Company's accounting policies and system of internal controls and reviewing significant financial transactions. The Audit Committee met a total of nine times during 2009.

The Compensation Committee is responsible primarily for reviewing the compensation arrangements for the Company's executive officers, including the CEO, administering the Company's equity compensation plans and reviewing the compensation of the Board. The Compensation Committee's authority to grant equity awards may not be delegated to the Company's management or others. The Compensation Committee met a total of four times during 2009. For a description of the Compensation Committee's processes and procedures, including the roles of the Company's executive officers and independent compensation consultants in the Compensation Committee's decision-making process, please see the section entitled "Compensation Discussion and Analysis" below.

The Nominating Committee assists the Board in identifying qualified individuals to become directors, makes recommendations to the Board concerning the size, structure and composition of the Board and its

1855.22

committees, monitors the process to assess the Board's effectiveness and is primarily responsible for oversight of corporate governance, including implementing the Company's Corporate Governance Guidelines. In evaluating potential nominees to the Board, the Nominating Committee considers, among other things, independence, character, ability to exercise sound judgment, diversity, age, demonstrated leadership, skills, including financial literacy, and experience in the context of the needs of the Board. The Nominating Committee considers candidates proposed by shareholders and evaluates them using the same criteria as for other candidates. The Nominating Committee is committed to actively seeking out highly qualified women and individuals from minority groups to include in the pool from which Board nominees are chosen. The Nominating Committee met a total of four times during 2009 and met after the end of the fiscal year to recommend to the full Board each of the nominees for election to the Board, as presented herein.

The Audit Committee, Compensation Committee and Nominating Committee operate under written charters adopted by the Board. These charters are available on the Company's website at www.apple.com/investor.

During 2009, each member of the Board attended or participated in 75% or more of the aggregate of (i) the total number of meetings of the Board (held during the period for which such person has been a director) and (ii) the total number of meetings held by all committees of the Board on which such person served (during the periods that such person served).

There are no family relationships among executive officers and directors of the Company.

## Audit Committee Financial Experts

The Board has determined that each member of the Audit Committee, Messrs. Campbell and York and Dr. Levinson, qualifies as an "audit committee financial expert" as defined by the SEC and also meets the additional criteria for independence of audit committee members set forth in Rule 10A-3(b)(l) under the Exchange Act.

## Code of Ethics

The Company has a code of ethics, "Business Conduct: The Way We Do Business Worldwide," that applies to all of the Company's employees, including its principal executive officer, principal financial officer and principal accounting officer, and the Board. A copy of this code is available on the Company's website at www.apple.com/investor. The Company intends to disclose any changes in or waivers from its code of ethics by posting such information on its website or by filing a Form 8-K.

## Compensation of Directors

The form and amount of director compensation are determined by the Board after its review of recommendations made by the Compensation Committee. The current practice of the Board is to base a substantial portion of a director's annual retainer on equity. Under the Company's 1997 Director Stock Option Plan (the " *Director Plan* "), members of the Board who are not also Company employees (" *Non-Employee Directors* ") are granted an option to acquire 30,000 shares of the Company's common stock upon their initial election or appointment to the Board (an " *Initial Option* "). Initial Options vest and become exercisable in equal installments on each of the first three anniversaries of the grant date. Starting on the fourth anniversary of a Non-Employee Director's initial election or appointment to the Board and on each subsequent anniversary thereafter during the director's tenure on the Board, the Non-Employee Director is granted an option to acquire 10,000 shares of the Company's common stock (an " *Annual Option* "). Annual Options are fully vested and immediately exercisable on the date of grant.

At the Annual Meeting, shareholders are being asked to approve certain amendments to the Director Plan that would, among other things, provide for annual grants to Non-Employee Directors to be made in the form of restricted stock units (" *RSUs* ") instead of options and to be made in connection with the Company's annual meeting of shareholders rather than on the anniversary of the date the Non-Employee Director joined the Board. Please see the proposed amendments to the Director Plan described in Proposal No. 3.

10

1855.23

Non-Employee Directors also receive a $50,000 annual retainer paid in quarterly installments, and the Chair of the Audit Committee receives an additional annual retainer of $25,000. Other than the Chair of the Audit Committee, directors do not receive any additional compensation for serving as a Chair or member of any other committee.

In addition, under the Company's Board of Directors Equipment Program, each Non-Employee Director is eligible to receive, upon request and free of charge, one of each new product introduced by the Company and is eligible to purchase additional equipment at a discount.

**Director Compensation—2009**

The following table presents information regarding the compensation paid during 2009 to Non-Employee Directors. The compensation paid to Mr. Jobs is presented below under "Executive Compensation" in the table entitled "Summary Compensation Table—2009, 2008 and 2007" and the related explanatory tables. Mr. Jobs does not receive any compensation for his services as a member of the Board.

| Name (a) | Fees Earned or Paid in Cash ($) (b) | Stock Awards ($)(1) (c) | Option Awards ($)(1) (d) | Non-Equity Incentive Plan Compensation ($) (e) | Change in Pension Value and Nonqualified Deferred Compensation Earnings ($) (f) | All Other Compensation ($) (g)(2) | Total ($) (h) |
|---|---|---|---|---|---|---|---|
| William V. Campbell | 50,000 | — | 929,000 | — | — | 2,099 | 981,099 |
| Millard S. Drexler | 50,000 | — | 706,950 | — | — | 9,389 | 766,339 |
| Albert A. Gore, Jr. | 50,000 | — | 382,100 | — | — | 4,272 | 436,372 |
| Andrea Jung | 50,000 | — | 651,812 | — | — | 5,246 | 707,058 |
| Arthur D. Levinson, Ph.D. | 50,000 | — | 938,300 | — | — | 6,302 | 994,602 |
| Eric E. Schmidt, Ph.D.(3) | — | — | — | — | — | — | — |
| Jerome B. York | 75,000 | — | 929,000 | — | — | 224 | 1,004,224 |

(1) The amounts reported in Column (d) of the table above reflect the aggregate dollar amounts for option awards granted to Non-Employee Directors that were recognized for financial statement reporting purposes with respect to 2009 (disregarding any estimate of forfeitures related to service-based vesting conditions). No stock awards or option awards granted to Non-Employee Directors were forfeited during 2009. For a discussion of the assumptions and methodologies used to calculate the amounts referred to above, please see the discussion of option awards contained in Part II, Item 8, "Financial Statements and Supplementary Data" of the Annual Report in Notes to Consolidated Financial Statements at Note 7, "Shareholders' Equity and Stock-Based Compensation."

The following table presents the number of outstanding and unexercised option awards held by each of the Non-Employee Directors as of September 26, 2009. None of the Non-Employee Directors held any outstanding restricted stock awards or RSUs as of that date.

| Director | Number of Shares Subject to Outstanding Options as of 9/26/09 |
|---|---|
| William V. Campbell | 70,000 |
| Millard S. Drexler | 90,000 |
| Albert A. Gore, Jr. | 89,000 |
| Andrea Jung | 30,000 |
| Arthur D. Levinson, Ph.D. | 130,000 |
| Eric E. Schmidt, Ph.D.(3) | — |
| Jerome B. York | 70,000 |

11

1855.24