# EXHIBIT B

**Deposition of:**

Page 1

```
 1              UNITED STATES DISTRICT COURT
 2             NORTHERN DISTRICT OF CALIFORNIA
 3                    SAN JOSE DIVISION
 4
 5   IN RE:  HIGH-TECH EMPLOYEE    )
 6   ANTITRUST LITIGATION          )
 7                                 )  No. 11-CV-2509-LHK
 8   THIS DOCUMENT RELATES TO:     )
 9   ALL ACTIONS.                  )
10   _____
11
12         VIDEO DEPOSITION OF WILLIAM CAMPBELL
13                ATTORNEYS' EYES ONLY
14                  February 5, 2013
15
16     Reported by:  Anne Torreano, CSR No. 10520
```

**Deposition of:**

Page 29

|   |   |   |
|---|---|---|
| 1 | Intuit, and she said okay. | |
| 2 | Q. And can you place that either in time or | |
| 3 | describe the circumstances surrounding that event? | |
| 4 | A. I -- there were some instances of Google | |
| 5 | recruiters calling Intuit employees. I was quite | 10:07:07 |
| 6 | embarrassed by that with my own company, that I was | |
| 7 | there in such an intimate position helping Google and | |
| 8 | Google was recruiting -- cold-calling our employees. | |
| 9 | So I asked them if they would stop doing that. | |
| 10 | Q. Prior to that time, did you know of any other | 10:07:30 |
| 11 | companies that had such arrangements in the Valley? | |
| 12 | A. Yes. I mean, yes theoretically. I can't tell | |
| 13 | you exactly what, but I -- you know, the idea of saying | |
| 14 | somebody's on somebody else's board and we don't | |
| 15 | recruit from that board member's companies, you know, | 10:07:56 |
| 16 | I've heard that a lot, but, I mean, I can't give you | |
| 17 | that specifically. | |
| 18 | But it seemed like that was a practice that | |
| 19 | was being honored just out of respect for the board | |
| 20 | member's time. | 10:08:14 |
| 21 | So that's what I did. | |
| 22 | Q. Okay. Aside from the situation where there | |
| 23 | were interlocking board relationships, did you know of | |
| 24 | any other -- | |
| 25 | A. I did not, no. | 10:08:30 |

**Deposition of:**

Page 30

|    |    |    |
|---|---|---|
| 1  | Q. When you asked Shona Brown not to recruit or | |
| 2  | not to allow Google to recruit from Intuit, is it your | |
| 3  | understanding that that was -- | |
| 4  | A. That isn't what I said. | |
| 5  | Q. Oh, I'm sorry. | 10:08:48 |
| 6  | A. I want to make sure you're clear and it's | |
| 7  | clear on that. | |
| 8  | I asked her to not cold-call using outside | |
| 9  | recruiters to cold-call the company. And, you know, | |
| 10 | it's a different situation, very, very different. The | 10:08:58 |
| 11 | cold-calling is what I was objecting to. | |
| 12 | Q. Okay. And what is cold-calling? | |
| 13 | A. Just, you know, having outside recruiters, | |
| 14 | contract recruiters or even in your own internal | |
| 15 | recruiters just randomly call names that came up on | 10:09:11 |
| 16 | sheets somewhere. I don't know where they would get | |
| 17 | their names but, you know, go down a list, you know, if | |
| 18 | they find a list of employees somewhere, and went A | |
| 19 | through Z and called everybody that was a mid-level | |
| 20 | engineer and above, just to see if they would -- if | 10:09:25 |
| 21 | they could entice them to come for an interview. And | |
| 22 | that was what I objected to. | |
| 23 | Q. All right. Was it your understanding that | |
| 24 | having made that request at the -- your understanding | |
| 25 | was reciprocal, that Intuit would not do that to Google | 10:09:38 |

**Deposition of:**

Page 31

| | | |
|---|---|---|
| 1 | if Google agreed not to do it to Intuit? | |
| 2 |     A.   No. | |
| 3 |     Q.   So it was your understanding that Intuit was | |
| 4 | free to do what you just described you didn't want | |
| 5 | Google doing; is that right? | 10:09:49 |
| 6 |     A.   The chances of -- you know, with the science | |
| 7 | factor that is so high at Google, there was literally | |
| 8 | no chance that Intuit was going to be able to take, you | |
| 9 | know -- the overlap was not -- was mostly one way. | |
| 10 | In other words, we might have some people that | 10:10:10 |
| 11 | interested them, but we really weren't going to be able | |
| 12 | to get people into our company when we had, you know, | |
| 13 | more traditional applications and not science stuff. | |
| 14 |     Q.   I'm not understanding this. | |
| 15 | If you had people within Intuit that Google | 10:10:27 |
| 16 | might be interested in, why would not Google have | |
| 17 | people that Intuit would be interested in? | |
| 18 | MR. MITTELSTAEDT:  Object.  Argumentative. | |
| 19 | THE WITNESS:  You know, the -- the -- Intuit | |
| 20 | is an old-style, traditional company that does | 10:10:43 |
| 21 | programming.  Some of it is -- we were pretty fast | |
| 22 | coming to the web, you know, using the cloud, et | |
| 23 | cetera, but Google is -- hires mostly computer science | |
| 24 | people. | |
| 25 | And, you know, there might be a chance that we | 10:11:14 |

**Deposition of:**

Page 187

1 REPORTER'S CERTIFICATE

2     I, Anne Torreano, Certified Shorthand Reporter
3 licensed in the State of California, License No. 10520,
4 hereby certify that the deponent was by me first duly
5 sworn, and the foregoing testimony was reported by me
6 and was thereafter transcribed with computer-aided
7 transcription; that the foregoing is a full, complete,
8 and true record of said proceedings.

9     I further certify that I am not of counsel or
10 attorney for either or any of the parties in the
11 foregoing proceeding and caption named or in any way
12 interested in the outcome of the cause in said caption.

13     The dismantling, unsealing, or unbinding of
14 the original transcript will render the reporter's
15 certificates null and void.

16     In witness whereof, I have subscribed my name
17 this 8th day of February, 2013.

18

19     [ ] Reading and Signing was requested.
20     [ ] Reading and Signing was waived.
21     [X] Reading and Signing was not requested.

22

23

    _____

24     ANNE M. TORREANO, CSR No. 10520

25