# EXHIBIT D

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

IN RE:  HIGH-TECH EMPLOYEE     )

ANTITRUST LITIGATION            )

                                ) No. 11-CV-2509-LHK

THIS DOCUMENT RELATES TO:       )

ALL ACTIONS.                    )

_____)

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

VIDEO DEPOSITION OF TONY FADELL

MARCH 20, 2013

Reported by:  Rosalie A. Kramm, CSR No. 5469, CRR

| | | |
|---|---|---|
| 10:50:03 | 1 | base salary for the people you supervised? |
| 10:50:08 | 2 | A. I was -- I would -- I would recommend -- well, |
| 10:50:11 | 3 | what would happen is typically, if it was a new employee |
| 10:50:14 | 4 | who was going to report to me, they -- I forget exactly |
| 10:50:19 | 5 | who I think it was recruiting -- would come to me and |
| 10:50:24 | 6 | say, we believe the right range for this would be in |
| 10:50:26 | 7 | here. What would you like to do? |
| 10:50:28 | 8 | Q. Okay. |
| 10:50:29 | 9 | A. How -- how important is this person to -- to |
| 10:50:32 | 10 | getting? Would it be to -- you know, how important it is |
| 10:50:35 | 11 | to -- to hire this person over maybe somebody else, how |
| 10:50:40 | 12 | much are you willing to go within your budget to -- to |
| 10:50:43 | 13 | stretch to get this person if they were really great. |
| 10:50:46 | 14 | Q. And once that person came to work for you, were |
| 10:50:50 | 15 | they reviewed on an annual basis with respect to |
| 10:50:52 | 16 | compensation? |
| 10:50:53 | 17 | A. Well, they -- so, first, when they were hired, |
| 10:50:57 | 18 | it wasn't just a salary range. There were all kind -- |
| 10:51:01 | 19 | like I said, those four other metrics. |
| 10:51:02 | 20 | Q. And I'm sorry. I was just talking about basis |
| 10:51:04 | 21 | and point of entry in the discussion. |
| 10:51:06 | 22 | A. Okay. Then on -- then there was a -- a -- a |
| 10:51:10 | 23 | natural review cycle. Sometimes people if they came too |
| 10:51:13 | 24 | soon to a review cycle, they would miss the review cycle. |
| 10:51:17 | 25 | But if they were there generally for about a year or six |

```
10:51:20  1   months, depending on what the dynamics were at the time,
10:51:25  2   we would then go through a review cycle of the entire
10:51:28  3   team, and certain people based on merit and performance
10:51:31  4   were then -- were then given a -- we would change the
10:51:36  5   compensation full package based on that personal, you
10:51:40  6   know, productivity.
10:51:42  7       Q.   So was one of the things that was looked at as
10:51:44  8   part of that cycle base salary?
10:51:52  9       A.   It was base salary, it was bonus, and it was
10:51:57 10   equity compensation, all three of those things combined.
10:52:01 11   Benefits were something that were typically not -- you
10:52:05 12   know, that was a company-wide thing.
10:52:07 13       Q.   And just in terms of your responsibility, did
10:52:10 14   you have input into each of those -- I guess there are
10:52:13 15   three elements of compensation with respect to your
10:52:16 16   reports; that is the base, the bonus, and the equity
10:52:21 17   comp.  Did you have input as part of that process?
10:52:25 18       A.   I had input to the individual, yes.
10:52:29 19       Q.   Okay.
10:52:32 20       A.   Not to the general overarching, you know, what
10:52:35 21   were the guidelines.
10:52:37 22       Q.   Fair enough.  And were the guidelines provided
10:52:39 23   to you by people within the HR function at Apple?  Let me
10:52:46 24   ask a better question.
10:52:46 25            Who provided you the -- the general information
```

| | |
|---|---|
| 10:52:50  1 | regarding the system?  As part of your -- that process, |
| 10:52:55  2 | where did you get that information? |
| 10:52:57  3 |     A.    It was a tool called ▮▮▮▮.  So there is an HR |
| 10:53:01  4 | and recruiting tool called ▮▮▮▮, and it would say, this |
| 10:53:04  5 | is the employee, this is the level, here are the salary |
| 10:53:06  6 | ranges, and through that tool we were then -- we |
| 10:53:09  7 | understood what the boundaries were.  And if we were to |
| 10:53:11  8 | go outside of that, then we would have to pull in a bunch |
| 10:53:14  9 | of people to then approve anything outside of that range. |
| 10:53:18 10 |     Q.    And in the case where there was some kind of |
| 10:53:20 11 | exception that you were advocating for, can you just tell |
| 10:53:25 12 | me generally organizationally who would have to be |
| 10:53:27 13 | involved in that discussion. |
| 10:53:28 14 |     A.    Well, it was different based on the different |
| 10:53:31 15 | time frames that I was employed.  Right?  So when I was |
| 10:53:37 16 | a -- when I started as a director, it was very different |
| 10:53:40 17 | who I would speak to than when I was the senior vice |
| 10:53:45 18 | president. |
| 10:53:45 19 |     Q.    So just generally could you tell me who you -- |
| 10:53:47 20 | who would have to be involved organizationally when you |
| 10:53:50 21 | were a director in -- in approving exceptions that you |
| 10:53:55 22 | were advocating for people you supervised. |
| 10:53:59 23 |     A.    I don't recall specifically.  I don't recall. |
| 10:54:02 24 | I just don't recall specifically. |
| 10:54:04 25 |     Q.    Were there people from the HR group that were |

| | | |
|---|---|---|
| 10:54:06 1 | | involved? |
| 10:54:09 2 | A. | Each was a case-by-case basis. |
| 10:54:11 3 | Q. | Was the CFO involved? |
| 10:54:13 4 | A. | I don't remember ever getting the CFO involved |
| 10:54:15 5 | in any of my -- | |
| 10:54:17 6 | Q. | Was Steve Jobs involved? |
| 10:54:19 7 | A. | No, he was not. |
| 10:54:20 8 | Q. | Okay. When -- so I think you said that there |
| 10:54:23 9 | was a point in time where things changed when you became | |
| 10:54:27 10 | a director? | |
| 10:54:27 11 | A. | Well, I -- I started as a director. |
| 10:54:29 12 | Q. | I'm sorry. And then in the next phase, were |
| 10:54:35 13 | there other people that -- or less people that were | |
| 10:54:39 14 | involved in approving exceptions that you advocated for | |
| 10:54:44 15 | with respect to the people you supervised? | |
| 10:54:46 16 | A. | There were all -- exceptions, there are always |
| 10:54:49 17 | other people involved. There was never, you know -- I | |
| 10:54:51 18 | was never -- I could never just accrete something. | |
| 10:54:55 19 | Q. | You didn't have carte blanche? |
| 10:54:57 20 | A. | I didn't have carte blanche, even as a senior |
| 10:55:00 21 | vice president. | |
| 10:55:00 22 | Q. | But when you were a senior vice president, when |
| 10:55:02 23 | you wanted to have exceptions approved, were there people | |
| 10:55:05 24 | from the HR organization that were involved in that | |
| 10:55:07 25 | discussion? | |

1    I, Rosalie A. Kramm, Certified Shorthand

2  Reporter licensed in the State of California, License No.

3  5469, hereby certify that the deponent was by me first

4  duly sworn and the foregoing testimony was reported by me

5  and was thereafter transcribed with computer-aided

6  transcription; that the foregoing is a full, complete,

7  and true record of said proceedings.

8    I further certify that I am not of counsel or

9  attorney for either of any of the parties in the

10 foregoing proceeding and caption named or in any way

11 interested in the outcome of the cause in said caption.

12   The dismantling, unsealing, or unbinding of the

13 original transcript will render the reporter's

14 certificates null and void.

15   In witness whereof, I have hereunto set my hand

16 this day:   April 2, 2013.

17     ___X___   Reading and Signing was requested.

18     _____   Reading and Signing was waived.

19     _____   Reading and signing was not requested.

20

21                          _____

22                          ROSALIE A. KRAMM

23                          CSR 5469, RPR, CRR

24

25