# EXHIBIT 9 TO THE DECLARATION OF CHRISTINA BROWN FILED IN SUPPORT OF DEFENDANTS' OPPOSITION TO SUPPLEMENTAL CLASS CERTIFICATION MOTION (ECF NO. 446)

# REDACTED

```
 1                IN THE UNITED STATES DISTRICT COURT

 2                  NORTHERN DISTRICT OF CALIFORNIA

 3                         SAN JOSE DIVISION

 4    IN RE:  HIGH-TECH EMPLOYEE ANTITRUST
      LITIGATION
 5
      THIS DOCUMENT RELATES TO:     NO:  Master Docket No.
 6    11-CV-2509-LHK

 7    ALL ACTIONS.

 8


 9


10           CONFIDENTIAL  -  ATTORNEYS' EYES ONLY

11


12


13         VIDEOTAPED DEPOSITION OF DANIEL ROBERT McKELL
                         March 20, 2013
14                         10:06 a.m.
                       Hyatt Regency Hotel
15                    330 Tijeras, Northwest
                     Albuquerque, New Mexico
16


17
                  PURSUANT TO THE FEDERAL RULES OF CIVIL
18    PROCEDURE, this deposition was:

19    TAKEN BY:   MR. SARAH R. SCHALMAN-BERGEN
                  Attorney for Plaintiffs
20
      REPORTED BY: Mary Abernathy Seal, RDR, CRR, NM CCR 69
21                 Bean & Associates, Inc.
                   Professional Court Reporting Service
22                 201 Third Street, Northwest, Suite 1630
                   Albuquerque, New Mexico 87102
23


24    (6941K) MAS

25
```

| | | |
|---|---|---|
| 03:42 | 1 | Google to the list of peer companies? |
| | 2 |     A.   Managers were asking, "Where is Google on |
| | 3 | the list?"  I don't -- I think Google started in |
| | 4 | 2004, maybe, something like that.  So it became -- |
| 03:42 | 5 | it was relevant to managers, and so if you would |
| | 6 | say, "Our pay is competitive and Google wasn't on |
| | 7 | the list," they would be less trusting of your data |
| | 8 | than by seeing that Google was included. |
| | 9 |     Q.   What's your understanding of why Google |
| 03:42 | 10 | was relevant to managers? |
| | 11 |     MR. SHAH:  Object to form. |
| | 12 |     A.   They're part of the technology industry |
| | 13 | that we participate in in terms of -- how do we |
| | 14 | describe it -- line 23 and 24, the blend of |
| 03:43 | 15 | semiconductor, software, networking, and diversified |
| | 16 | computer companies.  So they were big enough, I |
| | 17 | guess, at that point that we viewed them as a |
| | 18 | relevant competitor for talent and products to be |
| | 19 | included. |
| 03:43 | 20 |     Q.   And why was Apple included on the list of |
| | 21 | competitors? |
| | 22 |     MR. SHAH:  Object to form. |
| | 23 |     A.   Same reason.  We compete with them for |
| | 24 | products and for talent, so it's important to have |
| 03:43 | 25 | their data in the salary surveys that we participate |

| | | |
|---|---|---|
| 03:43 | 1 | in. |
| | 2 | Q. If you look through paragraph 8 -- do you |
| | 3 | see that? |
| | 4 | A. Yeah. |
| 03:44 | 5 | Q. Is paragraph 8, to the best of your |
| | 6 | knowledge, true and accurate? |
| | 7 | A. Yes. |
| | 8 | Q. Okay. And looking at the first sentence |
| | 9 | about employee evaluations, does that reflect or is |
| 03:44 | 10 | that consistent with the conversation we've had this |
| | 11 | morning about employee ratings? |
| | 12 | A. Yes, those are the guidelines or the |
| | 13 | expectations, the actual practices plus or minus |
| | 14 | those. |
| 03:45 | 15 | Q. And the expectations are that there are |
| | 16 | certain percentages of employees that are rated in |
| | 17 | each of the different categories? |
| | 18 | A. Yes. |
| | 19 | Q. The last sentence of paragraph 8 you talk |
| 03:45 | 20 | about a ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. Do you |
| | 21 | see that? |
| | 22 | A. Yes. |
| | 23 | Q. Can you briefly describe what you mean by |
| | 24 | that? |
| 03:45 | 25 | A. So companies -- or as a compensation |

```
03:45    1    practice, there's two main ways that you can deal
         2    with different job markets within the same country.
         3    You can establish separate market ranges for those
         4    locations, or you can apply a geographical
03:45    5    differential, a premium on top of salary ranges.
         6                  Intel prefers to ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
         7    ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
         8    ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
         9    ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
03:46   10    ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
        11    ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
        12    ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
        13    ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
        14         Q.   If you go to paragraph 9, do you see that?
03:46   15         A.   Uh-huh.  Yes.
        16         Q.   Fair to say in paragraph 9 you're talking
        17    about the wide ranges of total pay available within
        18    each grade?
        19         A.   Yes.
03:47   20         Q.   Is everything in this paragraph accurate?
        21         A.   I was looking at page 19 of Exhibit D.
        22    That's page 20.
        23         Q.   And for the record, we're looking at
        24    Exhibit D, and you have said that actually, the
03:47   25    salary ranges you were referring to are listed on
```

| | | |
|---|---|---|
| 03:47 | 1 | page 20 of that document? |
| | 2 | A. Right. |
| | 3 | Q. Besides the difference in page number -- |
| | 4 | A. But yeah, the other is right; correct. |
| 03:48 | 5 | Q. Looking at page 20 for a second, which is |
| | 6 | Bates number 76583DOC002007_000020, is this an |
| | 7 | accurate listing of the US salary ranges effective |
| | 8 | January 1, 2007, at Intel? |
| | 9 | MR. SHAH: Object to form. |
| 03:48 | 10 | A. I believe so. |
| | 11 | Q. And does this list all of the different |
| | 12 | grades? |
| | 13 | A. No, it does not. |
| | 14 | Q. So there are additional grades that are |
| 03:48 | 15 | not included in these salary ranges? |
| | 16 | A. That's correct. |
| | 17 | Q. Where are the salary ranges or the grades |
| | 18 | maintained within Intel? |
| | 19 | MR. SHAH: Object to form. |
| 03:48 | 20 | A. The salary ranges are housed in the system |
| | 21 | of records. GENI is the internal name. |
| | 22 | Q. And as we discussed earlier, all of the |
| | 23 | salary ranges are not available to employees who |
| | 24 | don't work in compensation or HR; is that accurate? |
| 03:49 | 25 | A. That's right. |

| | | |
|---|---|---|
| 04:24 | 1 | Q. Are you familiar with the first bullet |
| | 2 | point? |
| | 3 | A. I'm not. |
| | 4 | Q. Okay. Turn to page 26 of that exhibit. |
| 04:24 | 5 | It has a Bates stamp ending in 7712. |
| | 6 | A. Okay. |
| | 7 | Q. You see this slide is titled "focal budget |
| | 8 | strategy." Do you see that? |
| | 9 | A. Yes. |
| 04:24 | 10 | Q. And four bullets points down, it says, |
| | 11 | "Depending on current year position to market it may |
| | 12 | take a few years to reach the base pay goals." |
| | 13 | Do you see that? |
| | 14 | A. Yes. |
| 04:25 | 15 | Q. What does that mean? |
| | 16 | A. It means that just because we have a |
| | 17 | change in strategy doesn't mean we implement it |
| | 18 | immediately. |
| | 19 | Q. So the first bullet point says, "If behind |
| 04:25 | 20 | the goals, a few focal cycles, (e.g., two to three |
| | 21 | years) to catch the market, i.e., the three-year SMA |
| | 22 | strategy kicked off in 2006." |
| | 23 | Do you see that? |
| | 24 | A. Yes. |
| 04:25 | 25 | Q. And what was the SMA strategy kicked off |

04:25  1   in 2006?

2   A.   So that was the change in the base pay

3   strategy to be at market versus behind market.  So

4   when they decided to move base pay to market, the

04:25  5   decision was to do that over a three-year period,

6   not do it in a one-year move.

7   Q.   The next bullet point says, "However, hot

8   jobs may require an immediate fix to address market

9   position issues."

04:26  10       Do you see that?

11  A.   Yes.

12  Q.   And is that consistent with your

13  understanding of how SMAs would work?

14       MR. SHAH:  Object to form.

04:26  15  A.   Yeah.  A job where the market for that job

16  was moving faster than other jobs and so our market

17  position was deteriorating.  Those would be

18  candidates for SMA.

19  Q.   We talked about POM, or position of

04:26  20  market, earlier.

21  A.   Yes.

22  Q.   Can you define that?

23  A.   Position of market would be your -- you

24  take the -- let's say I was looking at it for grade

04:27  25  5s in the US.  I would take the average pay of Intel

04:27  1   grade 5s and divide it by the market median to get a
       2   position of market. So 100 percent would be our pay
       3   was at market with the midpoint.
       4       Q. You can put this document aside. Let's go
04:27  5   off the record for five minutes.
       6           (A discussion was held off the record.)
       7           (Recess from 4:27 p.m. to 4:40 p.m.)
       8       Q. Mr. McKell, is there any reason why you
       9   can't continue to give me your best testimony?
04:40  10      A. No.
       11      Q. Okay. You use the term "internal equity"
       12  at Intel?
       13      A. Yes.
       14      Q. What does it mean?
04:40  15          MR. SHAH: Object to form.
       16      A. Internal equity means fairness.
       17  Typically, when we talk about internal equity, it's
       18  how employees are paid relative to each other. It
       19  can also be part of that -- "egalitarian" is another
04:40  20  term that we would say -- so from an internal equity
       21  perspective, everybody participates in stock even
       22  though they have different grades. So it has
       23  multiple meanings depending on the specific context,
       24  but generally it means fairness.
04:41  25      Q. I hand you a document that has previously

```
 1              IN THE UNITED STATES DISTRICT COURT

 2               NORTHERN DISTRICT OF CALIFORNIA

 3                     SAN JOSE DIVISION

 4   IN RE:  HIGH-TECH EMPLOYEE ANTITRUST
     LITIGATION
 5

 6   THIS DOCUMENT RELATES TO:

 7   ALL ACTIONS.

 8

 9          NO:  Master Docket No. 11-CV-2509-LHK

10                  REPORTER'S CERTIFICATE

11          I, MARY ABERNATHY SEAL, New Mexico CCR
     #69, DO HEREBY CERTIFY that on March 20, 2013, the
12   Deposition of DANIEL ROBERT McKELL was taken before
     me at the request of, and sealed original thereof
13   retained by:

14              Attorney for the Plaintiffs
                Ms. Sarah R. Schalman-Bergen
15              BERGER & MONTAGUE, P.C.
                1622 Locust Street
16              Philadelphia, Pennsylvania 19103-6365
                (215) 875-3000
17
            I FURTHER CERTIFY that copies of this
18   Certificate have been mailed or delivered to all
     Counsel, and parties to the proceedings not
19   represented by counsel, appearing at the taking of
     the Deposition.
20
            I FURTHER CERTIFY that examination of this
21   transcript and signature of the witness was required
     by the witness and all parties present.
22   On_____ a letter was mailed or delivered to Mr.
     Sujal J. Shah regarding obtaining signature of the
23   witness, and corrections, if any, were appended to
     the original and each copy of the Deposition.
24

25
```

```
 1              I FURTHER CERTIFY that the recoverable
        cost of the original and one copy of the Deposition,
 2      including exhibits, to Mr. Sarah R. Schalman-Bergen
        is $_____.
 3
                I FURTHER CERTIFY that I did administer
 4      the oath to the witness herein prior to the taking
        of this Deposition; that I did thereafter report in
 5      stenographic shorthand the questions and answers set
        forth herein, and the foregoing is a true and
 6      correct transcript of the proceeding had upon the
        taking of this Deposition to the best of my ability.
 7
                I FURTHER CERTIFY that I am neither
 8      employed by nor related to nor contracted with
        (unless excepted by the rules) any of the parties or
 9      attorneys in this case, and that I have no interest
        whatsoever in the final disposition of this case in
10      any court.

11

12
                             _____
13                           Mary Abernathy Seal
                             BEAN & ASSOCIATES, INC.
14                           NM Certified Court Reporter #69
                             License Expires: 12/31/13
15
        (6941K) MAS
16      Date taken:  March 20, 2013
        Proofread by:  JB
17

18

19

20

21

22

23

24

25
```

```
 1   IN RE: HIGH-TECH EMPLOYEE ANTITRUST LITIGATION

 2            WITNESS SIGNATURE/CORRECTION PAGE

 3         If there are any typographical errors to
     your deposition, indicate them below:
 4

 5   PAGE   LINE

 6   _____   Change to _____

 7   _____   Change to _____

 8   _____   Change to _____

 9   _____   Change to _____

10         Any other changes to your deposition are
     to be listed below with a statement as to the reason
11   for such change.

12   PAGE   LINE   CORRECTION              REASON FOR CHANGE

13   _____

14   _____

15   _____

16   _____

17   _____

18   _____

19         I, DANIEL ROBERT McKELL, do hereby certify
     that I have read the foregoing pages of my testimony
20   as transcribed and that the same is a true and
     correct transcript of the testimony given by me in
21   this deposition on March 20, 2013, except for the
     changes made.
22
                     _____
23                        DANIEL ROBERT McKELL

24   (6941K) MAS Proofread by:  JB

25
```