# EXHIBIT 176 TO CISNEROS DECLARATION REDACTED VERSION

AMECURRENT 708603743.1 20-Feb-14 18:21

| | | |
|---|---|---|
| From: | Eric Schmidt | Sent: 11/5/2003 8:35 AM |
| To: [ - ] | Jonathan Rosenberg; Shona Brown ; Stacy Sullivan | |
| Cc: [ - ] | Omid Kordestani; Campbell, Bill | |
| Bcc: [ - ] | | |
| Subject: | RE: Proposal | |

From a purely selfish Google position our policy should be to have "no rule".

I'd be happy to have people at Google be "sensitive" or "careful" in this area as we want to maintain good relations with certain other companies but we shouldn't have a formal no hiring policy unless it is contractually mandated and mutual and business driven.

Thanks Eric

-----Original Message-----
From: Jonathan Rosenberg [mailto:jonathan@google.com]
Sent: Wednesday, November 05, 2003 8:27 AM
To: 'Shona Brown '; 'Stacy Sullivan'
Cc: 'Omid Kordestani'; 'Campbell, Bill'; eschmidt@google.com
Subject: RE: Proposal


Shona,

The only company I know that we ever had a non-poaching policy with was Yahoo and we dropped that policy recently. I agree that the way to handle this is for you to formalize a policy but I think Rule #2 is more appropriate for us. In the case of McKinsey, rule number one makes sense because there is such a clear client and consultative relationship between the parties and the entire business revolves around the trust inherent in that relationship so "absolutely no poaching" is really critical.

In our case, in the valley at least, there is likely to only be a handful of companies with whom we'll offer the courtesy of a "messy" rule number 2 of proactive informing at the offer stage. Good Technologies might be one of them given Danny's request and if Campbell twisted my arm and gave me half his season tickets to the Giants maybe I'd suggest adding Intuit (Not!!!). So my take is that we basically adopt Rule number 2 which is pretty close to the "No rules" since the list will be very, very limited. I do agree with your caveat that we never get into bidding wars as a result of Rule number 2.

Since Eric usually has an opinion on these things and likely often receives similar requests, I'll add him to the thread. I don't know what his position on this sort of thing is at all but I suspect he'll have one. I don't feel so strongly about this policy that I'm not prepared to be overruled by you or him..

Jonathan


-----Original Message-----
From: Shona Brown [mailto:shona@google.com]
Sent: Wednesday, November 05, 2003 7:27 AM
To: Stacy Sullivan
Cc: 'Jonathan Rosenberg'; Omid Kordestani; 'Campbell, Bill'; shona@google.com
Subject: Proposal


[Stacy- Do we have a current policy on anywhere we cannot recruit from?]

Jonathan/Omid/Bill/Stacy-
I think this is quite simple to resolve. Options are:

No Rules: We recruit anywhere. It's a tough world out there.

Rule#1: If there are a list of strategic partners with whom we simply do not wish to compete for talent, then we make a clear rule, easy to enforce, which says: We will not hire people directly from the following list of companies. Candidates interested in Google would have to resign from their current jobs at said companies, and then we would



CONFIDENTIAL ATTORNEYS EYES ONLY

GOOG-HIGH TECH-00000004

be willing to consider them; but not before. (This was McKinsey's policy with clients for example)

Rule#2: If there is a list of strategic partners with whom we will compete for talent, but we want to be as transparent about it as possible, then we make a different rule, which says: We will engage in interviews with these individuals. But we will inform them, ONCE they have a formal offer from Google, that their employer needs to be given an opportunity to counter. At that point, on an individual basis, we will determine with the candidate the best approach to informing their employer of the standing Google offer. SOME rules of the road. First, I think we must focus on the individual's privacy as the trump card here. Second, it is unrealistic to expect people to tell their current employer BEFORE their is a formal offer from Google, it is unfair and that puts them in an awkward position. Third, we should have a policy of no counter-counter offers -- I don't want to get in bidding wars for people.

My preference is to go with either 'No Rules' or Rule#1 (I think Rule#2 is messy and hard to enforce). I would have a better sense of which was more appropriate if I knew the potential list of 'strategic partners' we are talking about. (Jonathan/Omid/Stacy - who would be on that list?)

Shona

-----Original Message-----
From: Jonathan Rosenberg [mailto:jonathan@google.com]
Sent: Wednesday, November 05, 2003 6:54 AM
To: 'Danny Shader'; 'Omid Kordestani'
Cc: 'Bill Campbell (E-mail)'; Shona Brown
Subject: RE: Help?


Danny,

We have a new vp of business operations and hr. Her name is Shona Brown and I'll copy her. I'm confident we can establish some form of amicable agreement here that is fair to both of us and the employees.

Shona, we're all big fans of Good technologies at Google and have personal ties with their team and a strong connection with them as a another KPCB portfolio company. Can we establish some basic groundrules that don't preclude the outcome of employees migrating to the firm they wish to work for but also minimize sthe degree to which we're proactive with Good solicitations and establish a process that allows for some information exchange at a point that makes the employee comfortable and doesn't violate his/her interests?

Thanks

Jonathan

-----Original Message-----
From: Danny Shader [mailto:danny@good.com]
Sent: Tuesday, November 04, 2003 10:57 PM
To: Omid Kordestani (omid@google.com); Jonathan Rosenberg
Cc: Bill Campbell (E-mail)
Subject: Help?


Hi Omid and Jonathan,


Congratulations on your continuing amazing success at Google! I, like the rest of the Valley, am cheering for you guys!


I'm writing to ask a favor of you. Google recently recruited one of our key engineers, ███████, and also targeted another of our folks. I would appreciate it if you could ask your recruiting teams not to target Good employees. Also, if Good folks contact Google, we would appreciate it if you would not offer jobs to such folks until they first told us they were interviewing, so that we have the opportunity to address whatever concerns they might have. Of course, employees are free agents, and have the right to go where they want... but, we'd like not to be surprised if they're

(76.2

CONFIDENTIAL ATTORNEYS EYES ONLY                                          GOOG-HIGH TECH-00000005

interested in related companies.

Of course, we'll do the same in return.

What do you think?

Thanks

Danny


Danny Shader

CEO

Good Technology, Inc.

www.good.com

+1 408 400 4932

danny@good.com