1  Richard M. Heimann (State Bar No. 63607)
   Kelly M. Dermody (State Bar No. 171716)
2  Brendan Glackin (State Bar No. 199643)
   Dean Harvey (State Bar No. 250298)
3  Anne B. Shaver (State Bar No. 255928)
   Lisa J. Cisneros (State Bar No. 251473)
4  LIEFF CABRASER HEIMANN &
   BERNSTEIN, LLP
5  275 Battery Street, 29th Floor
   San Francisco, California  94111-3339
6  Telephone:  415.956.1000
   Facsimile:   415.956.1008
7
   Joseph R. Saveri (State Bar No. 130064)
8  James Dallal (State Bar No. 277826)
   JOSEPH SAVERI LAW FIRM, INC.
9  505 Montgomery, Suite 625
   San Francisco, CA 94111
10 Telephone: 415.500.6800
   Facsimile:  415.395.9940
11
   *Co-Lead Class Counsel*
12
   [Additional counsel listed on signature page]
13
                    UNITED STATES DISTRICT COURT
14
                  NORTHERN DISTRICT OF CALIFORNIA
15
                          SAN JOSE DIVISION
16

17 | IN RE: HIGH-TECH EMPLOYEE | Master Docket No. 11-CV-2509-LHK |
18 | ANTITRUST LITIGATION | |
   | | **CLASS ACTION** |
19 | THIS DOCUMENT RELATES TO: | |
   | | **NOTICE OF MOTION AND MOTION FOR** |
   | ALL ACTIONS | **FINAL APPROVAL OF CLASS ACTION** |
20 | | **SETTLEMENTS; MEMORANDUM OF** |
   | | **POINTS AND AUTHORITIES IN** |
21 | | **SUPPORT THEREOF** |
22 | | Judge:        Hon. Lucy H. Koh |
   | | Courtroom:  8, 4th Floor |
23 | | Date:         May 1, 2014 |
   | | Time:         1:30pm |
24
25
26
27
28

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION AND MOTION ................................................................. 1

MEMORANDUM OF POINTS AND AUTHORITIES ..................................... 2

    I.      INTRODUCTION ................................................................. 2

    II.     FACTUAL AND PROCEDURAL BACKGROUND ........................................... 3

    III.    TERMS OF THE SETTLEMENTS ................................................................. 5

        A.    The Class ................................................................. 5

        B.    Settlement Sums and Additional Consideration ......................................... 5

        C.    Monetary Relief To Class Members ............................................ 6

        D.    Release of All Claims Against the Settling Defendants and Reservation of Rights ................................................................. 7

    IV.    ARGUMENT ................................................................. 7

        A.    The Class Action Settlement Approval Process ........................................... 7

        B.    The Court-Approved Notice Program Meets Applicable Standards and Has Been Fully Implemented. ......................................... 8

        C.    Final Approval of the Settlements is Appropriate ................................... 10

            1.    The Settlements are the Products of Arm's-Length Negotiations Between the Parties and Follow Years of Hard-Fought Litigation and Plaintiffs' Thorough Investigation. ......................................... 11

            2.    The Settlements Are Fair, Reasonable, and Adequate. ................. 11

            3.    The Recommendation of Experienced Counsel Favors Approval. ......................................... 13

            4.    The Class Response Favors Final Approval. ............................... 13

    V.     CONCLUSION ................................................................. 15

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF AUTHORITIES

**Page**

### CASES

*Boyd v. Bechtel Corp.*,
    485 F. Supp. 610 (N.D. Cal. 1979) ...................................................................... 12

*Boyle v. Arnold-Williams*,
    No. 01-5687, 2006 U.S. Dist. LEXIS 91920 (W.D. Wash. Dec. 20, 2006) ......................... 13

*Browne v. Am. Honda Motor Co.*,
    No. 09-06750, 2010 U.S. Dist. LEXIS 145475 (C.D. Cal. July 29, 2010) ........................... 13

*Californians for Disability Rights, Inc. v. Cal. DOT*,
    No. 06-5125-SBA, 2010 U.S. Dist. LEXIS 62837 (N.D. Cal. June 2, 2010) ........................ 14

*Churchill Village, L.L.C. v. Gen. Elec.*,
    361 F.3d 566 (9th Cir. 2004) ............................................................................... 9

*Class Plaintiffs v. City of Seattle*,
    955 F.2d 1268 (9th Cir. 1992) ..................................................................... 9, 10, 12

*Ellis v. Naval Air Rework Facility*,
    87 F.R.D. 15 (N.D. Cal. 1980),
    *aff'd*, 661 F.2d 939 (9th Cir. 1981) ............................................................... 10, 12

*Ficalora v. Lockheed Cal. Co.*,
    751 F.2d 995 (9th Cir. 1985) ............................................................................. 10

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1988) ........................................................................ 9, 14

*In re Airline Ticket Comm'n Antitrust Litig.*,
    953 F. Supp. 280 (D. Minn. 1997) ...................................................................... 11

*In re Corrugated Container Antitrust Litig.*,
    No. M.D.L. 310, 1981 U.S. Dist. LEXIS 9687 (S.D. Tex. June 4, 1981) .................... 6, 11, 12

*In re Electrical Carbon Prods. Antitrust Litig.*,
    447 F. Supp. 2d 389 (D.N.J. 2006) ...................................................................... 11

*In re Mid-Atlantic Toyota Antitrust Litig.*,
    564 F. Supp. 1379 (D. Md. 1983) ....................................................................... 11

*In re Oracle Sec. Litig.*,
    No. 90-0931-VRW, 1994 U.S. Dist. LEXIS 21593 (N.D. Cal. June 18, 1994) ................... 11

*Linney v. Cellular Alaska P'Ship*,
    Nos. 96-3008-DLJ, 97-0203-DLJ, 97-0425-DLJ, & 97-0457-DLJ, 1997 U.S.
    Dist. LEXIS 24300 (N.D. Cal. July 18, 1997), *aff'd* 151 F.3d 1234 (9th Cir.
    1998) ........................................................................................................ 12

- ii -

1

**TABLE OF AUTHORITIES**
(continued)

2

**Page**

3

*M. Berenson Co., Inc. v. Faneuil Hall Marketplace, Inc.*,
   671 F. Supp. 819 (D. Mass. 1987) ........................................................... 10

4

*Marshall v. Holiday Magic, Inc.*,
   550 F.2d 1173 (9th Cir. 1977) ................................................................. 12

5

6

*National Rural Telecomm. Coop. v. DIRECTV, Inc.*,
   221 F.R.D. 523 (C.D. Cal. 2004) ............................................................. 12

7

*Officers for Justice v. Civil Serv. Comm'n*,
   688 F.2d 615 (9th Cir. 1982) ................................................................ 9, 10

8

9

*Torrisi v. Tucson Elec. Power Co.*,
   8 F.3d 1370 (9th Cir. 1993) ..................................................................... 10

10

*Utility Reform Project v. Bonneville Power Admin.*,
   869 F.2d 437 (9th Cir. 1989) ...................................................................... 9

11

12

*Van Bronkhorst v. Safeco Corp.*,
   529 F.2d 943 (9th Cir. 1976) ...................................................................... 9

13

*Wren v. RGIS Inventory Specialists*,
   No. 06-05778-JCS, 2011 U.S. Dist. LEXIS 38667 (N.D. Cal. Apr. 1, 2011) ....................... 13

14

15

**STATUTES**

16

Cartwright Act, Cal. Bus. & Prof. Code §§ 16720, *et seq.* ........................................... 2

Sherman Act, 15 U.S.C. § 1 ................................................................................. 2

17

18

**RULES**

Fed. R. Civ. P. 23(a) ........................................................................................... 3

19

Fed. R. Civ. P. 23(b)(3) ....................................................................................... 3

20

Fed. R. Civ. P. 23(c)(2)(B) ................................................................................... 7

21

Fed. R. Civ. P. 23(f) ........................................................................................... 4

22

**TREATISES**

23

*4 Newberg on Class Actions*,
   §§ 11.22, *et seq.* (4th ed. 2002) ......................................................... 6, 11

24

*Manual for Complex Litigation* (Fourth)
   §§ 21.632, *et seq.* (2004) ........................................................................ 6

25

26

27

28

**NOTICE OF MOTION AND MOTION**

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that at 1:30 p.m. on May 1, 2014, before the Honorable Lucy H. Koh, United States District Court for the Northern District of California, located in Courtroom 8, on the 4th Floor of the Robert F. Peckham Federal Building, 280 South 1st Street, San Jose, California, Plaintiffs will, and hereby do, respectfully move for an order finally approving the settlements with Defendants Intuit, Inc., Lucasfilm Ltd., and Pixar (collectively, the "Settling Defendants"), specifically:

1. finding that the settlements reached with: (a) Intuit, Inc. (the "Intuit Settlement") and (b) Lucasfilm Ltd. and Pixar (the "Lucasfim/Pixar Settlement") (together, the "Settlements"), are fair, reasonable, and adequate within the meaning of Rule 23(e) of the Federal Rules of Civil Procedure and directing its consummation pursuant to its terms;

2. finding that the notice provided to the Class constitutes due, adequate, and sufficient notice, and meets the requirements of due process and applicable law;

3. approving the method for allocating the Settlements;

4. directing that this action be dismissed with prejudice as against the Settling Defendants;

5. approving the release of claims as specified in the Settlements as binding and effective;

6. reserving exclusive and continuing jurisdiction over the Settlements; and

7. directing that final judgment of dismissal be entered as between Plaintiffs and the Settling Defendants.

This motion is brought pursuant to Federal Rule of Civil Procedure 23(e) and is based upon the supporting Memorandum of Points and Authorities filed concurrently with this Notice; the supporting Declaration of Anne B. Shaver, filed concurrently with this Notice; the records, pleadings, and papers filed in this action, and upon such argument as may be presented to the Court at the hearing on this motion.

- 1 -

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

### I.   INTRODUCTION

3       Plaintiffs submit this Memorandum in support of final approval of their class action

4   settlements with Defendants Intuit, Inc., Lucasfilm Ltd., and Pixar (collectively, the "Settling

5   Defendants").  The settlement with Intuit secured $11,000,000 for the benefit of the Class.  *See*

6   Declaration of Kelly M. Dermody in Support of Plaintiffs' Motion for Preliminary Approval of

7   Class Action Settlements (Dkt. 502) ("Dermody Decl."), Ex. 1 (Intuit Settlement Agreement).

8   The settlement with Lucasfilm and Pixar secured $9,000,000 for the benefit of the Class.  *See*

9   Declaration of Joseph R. Saveri in Support of Plaintiffs' Motion for Preliminary Approval of

10  Class Action Settlements (Dkt. 503) ("Saveri Decl."), Ex. 1 (Lucasfim/Pixar Settlement

11  Agreement).  Together, the Settlements create an all-cash fund of $20,000,000.  The Court should

12  grant final approval of the Settlements because they are fair, reasonable, and adequate.

13      The Court granted preliminary approval of the Settlements on October 30, 2013.  (Dkt.

14  540.)  In doing so, the Court found that the Settlements fell within the range of reasonableness,

15  and the factors relevant to final approval all weighed in favor of the Settlements (*id.* at 2); found

16  that the proposed Plan of Allocation was sufficiently fair, reasonable, and adequate (*id.* at 3);

17  certified the proposed Settlement Class (which is identical to the litigation class the Court

18  certified on October 24, 2013; Dkt. 531) (*id.* at 3-6); approved settlement notice to the Class and

19  found that the notice procedure is "the best practical means of providing notice of the Settlement

20  Agreements under the circumstances, and when completed, shall constitute due and sufficient

21  notice of the proposed Settlement Agreements and the Final Approval Hearing to all persons

22  affected by and/or entitled to participate in the Settlement Agreements, in full compliance with

23  the applicable requirements of Federal Rule of Civil Procedure 23 and due process" (*id.* at 7);

24  appointed a Claims Administrator (*id.* at 7); and ordered a process for dissemination of the

25  Settlement Notice, responses by Class members, and a Final Approval Hearing (*id.* at 7-13).

26      The parties have carried out the Court's orders and the Settlements should be finally

27  approved.

28

## II.     <u>FACTUAL AND PROCEDURAL BACKGROUND</u>

Plaintiffs challenge agreements among Defendants—all horizontal competitors for the services of Plaintiffs and members of the Class—to fix and suppress the compensation of their employees. (Complaint ¶¶ 55-107.)  Plaintiffs seek compensation for violations of Section 1 of the Sherman Act, 15 U.S.C. § 1, and the Cartwright Act, Cal. Bus. & Prof. Code §§ 16720, *et seq.* (*Id.* ¶¶ 119-164.)

After the Court consolidated the Plaintiffs' individual lawsuits, Plaintiffs filed their Consolidated Amended Complaint on September 13, 2011.  (Dkt. 65.)  Defendants challenged the pleadings.  All Defendants jointly and Lucasfilm separately moved to dismiss Plaintiffs' claims. (Dkts. 79 and 83.)  The Court denied both motions, with the exception that Plaintiffs' UCL claim for restitution and disgorgement was dismissed for failure to allege a vested interest.  (Apr. 18, 2012 Order; Dkt. 120.)

The parties completed broad, extensive, and thorough discovery related to both class certification and the merits after the Court lifted a discovery stay in January 2012.  Plaintiffs served 75 document requests, for which Defendants collectively produced over 325,000 documents (over 3.2 million pages), and took 91 depositions of Defendant witnesses.  (Dermody Decl. ¶ 6 (Dkt. 502).)  Defendants also propounded document requests, for which Plaintiffs produced over 31,000 pages, and took the depositions of all named Plaintiffs.  (*Id.*)  With expert assistance, Plaintiffs' counsel also analyzed vast amounts of computerized employee compensation and recruiting data, including nearly 1,000 files of employment related data exceeding 15 gigabytes.  (*Id.*)  Plaintiffs' counsel developed significant expert analysis and testimony—providing Plaintiffs a strong basis for understanding the range of potential damages suffered by the Class. (Saveri Decl. ¶ 10 (Dkt. 503).)  The discovery process was thorough, and it required the parties to engage in numerous and extensive meetings and conferences concerning the scope of discovery and the analysis regarding the various electronic data, policy documents, and other files produced.  (Dermody Decl., ¶ 6 (Dkt. 502).)

On April 5, 2013, the Court issued its Order Granting in Part and Denying in Part Plaintiffs' Motion for Class Certification.  (Dkt. 382.)  The Court found that Plaintiffs satisfied

1  Federal Rule of Civil Procedure 23(a), and satisfied Rule 23(b)(3) as to conspiracy and damages.

2  The Court found that "the adjudication of Defendants' alleged antitrust violation will turn on

3  overwhelmingly common legal and factual issues." (*Id.* at 13.)  Furthermore, after a detailed

4  inquiry, the Court held that a statistical regression analysis prepared by Plaintiffs' expert

5  "provides a plausible methodology for showing generalized harm to the Class as well as

6  estimating class-wide damages." (*Id.* at 43.)  The Court requested further briefing on whether the

7  Rule 23(b)(3) predominance standard was met with respect to the common impact on the

8  proposed class. (*Id.* at 45.)

9        On May 10, 2013, Plaintiffs filed a Supplemental Motion for Class Certification to

10  address the Court's request.  (Dkts. 418, 455.)  Plaintiffs marshaled additional documentary

11  evidence, testimony, and expert analyses.

12        Before the Court ruled on Plaintiffs' Supplemental Motion, Plaintiffs and the Settling

13  Defendants reached the Settlements under the supervision of experienced mediator David A.

14  Rotman.  After informal negotiations did not produce any settlements, Plaintiffs and all

15  Defendants conducted a day-long mediation supervised by Mr. Rotman on June 26, 2013.

16  (Dermody Decl. ¶ 8 (Dkt. 502).)  After several weeks of follow-up negotiations, Plaintiffs

17  reached a settlement in principle with both Lucasfilm and Pixar on July 12, 2013 (Dkt. 453), and

18  reached another settlement in principle with Intuit on July 30, 2013 (Dkt. 489).  (*Id.* ¶ 9.)  At all

19  times during the negotiation process, counsel for Plaintiffs and the Settling Defendants bargained

20  vigorously and at arm's length on behalf of their clients.  (*Id.* ¶ 10.)

21        On September 21, 2013, Plaintiffs moved to preliminarily approve the Settlements.  (Dkt.

22  501.)

23        On October 24, 2013, the Court granted the Supplemental Motion for Class Certification

24  and certified the proposed Technical Class in a detailed opinion.  (Dkt. 531.)

25        On October 30, 2013, the Court granted preliminary approval of the Settlements with the

26

27

28

1    three Settling Defendants.  (Dkt. 540.)[1]

2         On March 5, 2014, Plaintiffs moved for attorneys' fees, reimbursement of out-of-pocket

3    costs, and service awards for the Named Plaintiffs.  (Dkt. 718.)

4         On March 28, 2014, the Claims Administrator filed an affidavit of compliance.  *See*

5    Declaration of Ronald A. Bertino (Dkt. 772) ("Bertino Decl.").

6    **III.    TERMS OF THE SETTLEMENTS**

7         The Settlements resolve all claims of Plaintiffs and the Class against the Settling

8    Defendants.  The details are contained in the Settlement Agreements attached as Exhibit 1 to the

9    Dermody Declaration (Dkt. 502) and the Saveri Declaration (Dkt. 503). The key terms are

10   described below.

11       **A.    The Class**

12       The Settlements define the Settlement Class in the same way as the Settlement Class the

13   Court certified on October 30, 2013 (Dkt. 540), and the litigation Class the Court certified on

14   October 24, 2013 (Dkt. 531):

15              All natural persons who work in the technical, creative, and/or
16              research and development fields that were employed on a salaried
                basis in the United States by one or more of the following: (a)
17              Apple from March 2005 through December 2009; (b) Adobe from
                May 2005 through December 2009; (c) Google from March 2005
18              through December 2009; (d) Intel from March 2005 through
                December 2009; (e) Intuit from June 2007 through December 2009;
19              (f) Lucasfilm from January 2005 through December 2009; or (g)
                Pixar from January 2005 through December 2009.  Excluded from
20              the Class are: retail employees; corporate officers, members of the
                boards of directors, and senior executives of all Defendants.

21   (Lucas/Pixar Settlement § I.A (Dkt. 503); Intuit Settlement § I.A (Dkt. 502).)  Both Settlements

22   also attach a list of all job titles included in this Class.  (Lucas/Pixar Settlement, Ex. E (Dkt. 503);

23   Intuit Settlement, Ex. D (Dkt. 502).)

24       **B.    Settlement Sums and Additional Consideration**

25       Lucasfilm and Pixar will pay $9,000,000 and Intuit will pay $11,000,000 into an escrow

26   _____

27   [1] On November 7, 2013, the Non-Settling Defendants sought appellate review of the Court's
     Class Certification Order, pursuant to Rule 23(f).  On January 15, 2014, the Ninth Circuit
28   summarily denied the Non-Settling Defendants' request.  (Dkt. 594.)

1   account (the "Settlement Fund"), held and administered by the escrow agent (Citibank, N.A.).

2   The Settlement Fund will be used in accordance with the Settlement Agreements and applicable

3   orders of the Court, to make payments to Class members, as well as for notice and claims

4   administration costs, Named Plaintiff service awards (if granted), and Court-approved attorneys'

5   fees, costs, and litigation expenses.

6        As additional consideration, the Settling Defendants agreed to certain cooperation with

7   Class Counsel in the further prosecution of Plaintiffs' claims against the Non-Settling Defendants.

8   Specifically, the Settling Defendants have agreed, as needed, to authenticate documents and to

9   provide the last known contact information for current or former employees for notice or

10  subpoena purposes to the extent consistent with California law.  (Lucasfilm/Pixar Settlement §

11  III.B (Dkt. 503); Intuit Settlement § III.B (Dkt. 502).)

12       **C.   Monetary Relief To Class Members**

13       Each Class member who submitted a timely and valid claim form is eligible to receive a

14  share of the Settlement Fund, under the Plan of Allocation based on a formula using each

15  claimant's base salary paid while working in a Class position within the Class period as set forth

16  in the Class definition.  (Lucasfilm/Pixar Settlement, Ex. C (Dkt. 503); Intuit Settlement, Ex. C

17  (Dkt. 502).)  In other words, each Class member's share of the Settlement Fund is a fraction, with

18  the Claimant's base salary during the Class Period as the numerator and the total base salary

19  during the Class Period of all Claimants as the denominator:

$$\frac{\text{approved claimant's individual total base salary paid in class positions during the Class Period}}{\text{total of base salaries paid to all approved Claimants in class positions during the Class Period}}$$

24       The Claimant's fractional amount will be multiplied against the Settlement Fund net of all

25  reductions for costs and taxes, including court-approved costs, service awards, and attorneys'

26  fees.  (*Id.*)  There will be no reversion of unclaimed funds to any Settling Defendant.  (*Id.*)

27

28

**D.    Release of All Claims Against the Settling Defendants and Reservation of Rights**

In exchange for the Settling Defendants' monetary and non-monetary consideration, the Named Plaintiffs and Settlement Class members will release the Settling Defendants of all claims related to the alleged conduct giving rise to this litigation upon entry of a final judgment approving the proposed Settlements.  (Lucasfilm/Pixar Settlement § V (Dkt. 503); Intuit Settlement § V (Dkt. 502).)  The Settlements preserve Plaintiffs' right to litigate against the Non-Settling Defendants for the entire amount of Plaintiffs' damages based on joint and several liability under the antitrust laws.  *See*, *e.g.*, *In re Corrugated Container Antitrust Litig.*, Case No. M.D.L. 310, 1981 U.S. Dist. LEXIS 9687, at *49-50 (S.D. Tex. June 4, 1981).  Under the Settlements, the Non-Settling Defendants remain liable for the full amount of Class damages, including damages resulting from conduct by the Settling Defendants.

## IV.    ARGUMENT

**A.    The Class Action Settlement Approval Process**

Judicial proceedings under Federal Rule of Civil Procedure 23 have led to a defined three-step procedure for the approval of class action settlements:

(1)    Preliminary approval of the proposed settlement after submission to the court of a written motion for preliminary approval;

(2)    Dissemination of notice of the proposed settlement to the class; and

(3)    A formal fairness hearing, or final settlement approval hearing, at which class members may be heard regarding the settlement, and at which evidence and argument concerning the fairness, adequacy, and reasonableness of the settlement is presented.

*See* MANUAL FOR COMPLEX LITIGATION (Fourth) §§ 21.632, *et seq*. (2004).  This procedure safeguards class members' procedural due process rights and enables courts to fulfill their roles as guardians of class interests.  *See* 4 NEWBERG ON CLASS ACTIONS, §§ 11.22, *et seq.* (4th ed. 2002).

The Court here completed the first step in the settlement approval process when it granted preliminary approval to the Settlements.  (Dkt. 540.)  As discussed below, the second step has been completed as well: the Court-approved notice plan was fully implemented.  By this motion,

Plaintiffs request that the Court take the third and final step: holding a formal fairness hearing and granting final approval of the proposed Settlements.

**B.**    **The Court-Approved Notice Program Meets Applicable Standards and Has Been Fully Implemented.**

When a proposed class action settlement is presented for court approval, the Federal Rules of Civil Procedure require:

> the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice must clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B).

The notice plan approved by this Court is commonly used in class actions like this one and constitutes valid, due, and sufficient notice to class members, and constitutes the best notice practicable under the circumstances. The content of the notice complied with the requirements of Rule 23(c)(2)(B). The notice provided a clear description of who is a member of the Class and the binding effects of Class membership. (Bertino Decl., Ex. A at 2, 8 (Dkt. 772).) The notice explained how to file a claim and receive money from the Settlements, how to opt out of one or both of the Settlements, how to object to one or both of the Settlements, how to obtain copies of relevant papers filed in the case, and how to contact Class Counsel and the Claims Administrator. (*Id.* at 9-14, 16.)

The notice also explained that the Settlements themselves were filed publicly with the Court and available online at www.hightechemployeelawsuit.com. As a result, every provision of the Settlements was available to each Class member. In addition, other important documents were available at the same website, including: the Court's order certifying the litigation Class; the Court's order preliminarily approving the Settlements; the notice; the claim form; and Plaintiffs' motion for attorneys' fees, reimbursement of expenses, and service awards (and supporting

1  declarations of Class Counsel and the Class Representatives).  *See*

2  www.hightechemployeelawsuit.com/documents/.

3  　　　The Court approved the notice plan.  (Dkt. 540 at 7.)  The Court ordered all Defendants to

4  produce contact information to the Claims Administrator by November 25, 2013.  (Dkt. 540 at 8.)

5  Defendants did so.  (Bertino Decl., ¶ 5 (Dkt. 772).  The Court found that the notice "satisfies the

6  requirements of due process and of the Federal Rules of Civil Procedure and, accordingly, is

7  approved for dissemination to the Class."  (Dkt. 540 at 8.)  In order to also provide notice for

8  certification of the litigation class, the Court vacated the notice mailing deadline (Dkt. 728), and

9  the Court itself provided the parties with a revised notice (Dkt. 553-1), which the Claims

10  Administrator mailed to the Class on January 22, 2014.  (Bertino Decl., ¶ 7 (Dkt. 772).)  The

11  Claims Administrator also caused a "case-specific website to become operational with case

12  information, court documents relating to the Settlement[s], the Notice, and electronic claim filing

13  capability."  (Dkt. 540 at 9; Bertino Decl., ¶ 11 (Dkt. 772).)  Class members had a variety of

14  methods by which to file a claim or opt out of the Settlements and/or ongoing Class litigation,

15  including mail, telephone, and a case specific website.  (Bertino Decl., Ex. A at 13 (Dkt. 772).)[2]

16  The case specific website also had a contact form feature, permitting Class members to email the

17  Claims Administrator directly.  (Bertino Decl., ¶ 11 (Dkt. 772).)  Class members also contacted

18  Class Counsel, through both email and telephone, and Class Counsel provided the relevant

19  information to the Claims Administrator, who processed the requests.  (Declaration of Anne B.

20  Shaver In Support of Plaintiffs' Motion for Final Approval of Class Action Settlements ("Shaver

21  Decl."), ¶ 9.)

22  _____

23  [2] As previously raised by the parties, addressed by the Court, and resolved by the Claims
Administrator, the opt-out email address was not functioning for the first three weeks of the
24  notice period. During those three weeks, only one Class member indicated an issue with the opt-
out email address, and that Class member was able to opt out through one of the many other
25  means for communicating with the Claims Administrator. (Dkt. 727, at 4.) The error was
corrected and appropriately addressed.  In accordance with the Court's Order dated March 10,
26  2014, the Claims Administrator sent a reminder notice to Class members that informed them
again of critical dates for exercising their rights under the Settlements and explained the problem
27  with the opt-out email address and confirmed restored functionality.  (Dkt. 728; Bertino Decl., ¶
14 (Dkt. 772).)  There is no indication that any Class member wanted to opt out but was unable to
28  do so.

NOTICE OF MOTION AND
MOTION ISO FINAL SETTLEMENT APPROVAL
MASTER DOCKET NO. 11-CV-2509-LHK

1    The Court also approved dissemination of a reminder notice on March 10, 2014, and

2    extended all deadlines to respond to the notice to March 26, 2014.  (Dkt. 728.)  The Claims

3    Administrator mailed the reminder notice to the Class on the Court's deadline of March 13, 2014.

4    (Bertino Decl., ¶ 14 (Dkt. 772).)

5         **C.      Final Approval of the Settlements is Appropriate.**

6         The law favors the compromise and settlement of class action suits.  *See, e.g.*, *Officers for*

7    *Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 635 (9th Cir. 1982); *Churchill Vill., L.L.C. v. GE*,

8    361 F.3d 566, 576 (9th Cir. 2004); *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th

9    Cir. 1992).  "[T]he decision to approve or reject a settlement is committed to the sound discretion

10   of the trial judge because [she] is 'exposed to the litigants and their strategies, positions and

11   proof.'"  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1988) (quoting *Officers for*

12   *Justice*, 688 F.2d at 626).  In exercising such discretion, courts should give "proper deference to

13   the private consensual decision of the parties. . . .  [T]he court's intrusion upon what is otherwise

14   a private consensual agreement negotiated between the parties to a lawsuit must be limited to the

15   extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or

16   overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a

17   whole, is fair, reasonable and adequate to all concerned."  *Id.* at 1027 (citation and quotations

18   omitted).  All of the relevant factors support final approval of the Settlements here.

19        It is well established in the Ninth Circuit that "voluntary conciliation and settlement are

20   the preferred means of dispute resolution."  *Officers for Justice*, 688 F.2d at 625.  "[T]here is an

21   overriding public interest in settling and quieting litigation" and "[t]his is particularly true in class

22   action suits."  *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976); *see also Utility*

23   *Reform Project v. Bonneville Power Admin.*, 869 F.2d 437, 443 (9th Cir. 1989).  In evaluating a

24   proposed class action settlement, the Ninth Circuit has recognized that:

25        [T]he universally applied standard is whether the settlement is fundamentally fair,
          adequate and reasonable. The district court's ultimate determination will
26        necessarily involve a balancing of several factors which may include, among
          others, some or all of the following: the strength of plaintiffs' case; the risk, the
27        expense, complexity, and likely duration of further litigation; the risk of
          maintaining class action status throughout the trial; the amount offered in
28        settlement; the extent of discovery completed, and the stage of the proceedings; the

1   experience and views of counsel; the presence of a governmental participant; and
2   the reaction of the class members to the proposed settlement.

3   *Officers for Justice*, 688 F.2d at 625 (citations omitted); *accord Torrisi v. Tucson Elec. Power*

4   *Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993).  The Court is entitled to exercise its "sound discretion"

5   when deciding whether to grant final approval.  *Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15,

6   18 (N.D. Cal. 1980), *aff'd*, 661 F.2d 939 (9th Cir. 1981); *Torrisi*, 8 F.3d at l375.

7           **1.      The Settlements are the Products of Arm's-Length Negotiations**
                        **Between the Parties and Follow Years of Hard-Fought Litigation and**
8                       **Plaintiffs' Thorough Investigation.**

9           "'Before approving a class action settlement, the district court must reach a reasoned

10  judgment that the proposed agreement is not the product of fraud or overreaching by, or collusion

11  among, the negotiating parties'. . . ." *City of Seattle*, 955 F.2d at 1290 (quoting *Ficalora v.*

12  *Lockheed Cal. Co.*, 751 F.2d 995, 997 (9th Cir. 1985)).  "Where, as here, a proposed class

13  settlement has been reached after meaningful discovery, after arm's length negotiation, conducted

14  by capable counsel, it is presumptively fair." *M. Berenson Co., Inc. v. Faneuil Hall Marketplace,*

15  *Inc.*, 671 F. Supp. 819, 822 (D. Mass. 1987).

16          The proposed Settlements here are the product of arm's-length negotiations.  All parties

17  were represented throughout these negotiations by counsel experienced in the prosecution,

18  defense, and settlement of complex antitrust and employment class actions.  (*See* Dermody Decl.,

19  ¶¶ 3-4 (Dkt. 502); Saveri Decl., ¶ 2 (Dkt. 503).)

20          The Settlements were reached at a particularly advanced stage of this litigation –

21  occurring after the completion of discovery, after a full round of class certification briefing, after

22  the Court denied in part and granted in part Plaintiffs' initial class certification motion, and after

23  the second class certification round was underway.  By this time, the parties were well aware of

24  the strengths and weaknesses of their claims and the risks of ongoing litigation, which allowed for

25  informed decisions and fair settlements.

26          **2.      The Settlements Are Fair, Reasonable, and Adequate.**

27          Plaintiffs' proposed Settlements meet the standards for final approval.  As the Court found

28  in preliminarily approving the Settlements: "all of the relevant factors [for final approval] weigh

1  in favor of the Settlement[s] proposed here."  (Dkt. 540 at 2.)  "First, the settlements are entitled

2  to 'an initial presumption of fairness' because they are the result of arm's-length negotiations

3  among experienced counsel."  (*Id.*, quoting *Newberg* § 11.41.)  "Second, the consideration agreed

4  to—a total of $20 million ($9 million for Pixar and Lucasfilm and $11 million for Intuit)—is

5  substantial, particularly in light of the fact that the Settling Defendants collectively account for

6  less than 8% of Class members, and together account for approximately 5% of total Class

7  compensation."  (*Id*).  "Third, the Non-Settling Defendants remain jointly and severally liable for

8  all damages caused by the conspiracy, including damages from the Settling Defendants'

9  conduct."  (*Id.*, citing *In re Corrugated Container Antitrust Litig.*, 1981 U.S. Dist. LEXIS 9687,

10  at *51.)  "Fourth, the Settlements call for the Settling Defendants to cooperate with Plaintiffs in

11  terms of authenticating documents and providing the last known contact information for current

12  or former employee-witnesses for notice or subpoena purposes to the extent consistent with

13  California law."  (*Id.*, citing *In re Mid-Atlantic Toyota Antitrust Litig.*, 564 F. Supp. 1379, 1386

14  (D. Md. 1983).)

15       In addition, the Plan of Allocation will provide each claimant with a fractional share that

16  will be multiplied against the Settlement Fund net of all reductions for costs and taxes, including

17  court-approved costs, service awards, and attorneys' fees.  (*See* Dermody Decl., Ex. 1 at Ex. C;

18  Ex. 2 at Ex. C (Dkt. 502).)  There will be no reversion of unclaimed funds to any Settling

19  Defendant.  (*Id.*)  "A plan of allocation that reimburses class members based on the extent of

20  their injuries is generally reasonable."  *In re Oracle Sec. Litig.*, No. 90-0931-VRW, 1994 U.S.

21  Dist. LEXIS 21593, at *3 (N.D. Cal. June 16, 1994).  Here, as explained above, Plaintiffs propose

22  that the Settlement Fund be allocated based upon total base salary received during the conspiracy

23  period.  Such *pro rata* distributions are "cost-effective, simple, and fundamentally fair."  *In re

24  Airline Ticket Comm'n Antitrust Litig.*, 953 F. Supp. 280, 285 (D. Minn. 1997); *see also In re

25  Electrical Carbon Prods. Antitrust Litig.*, 447 F. Supp. 2d 389, 404 (D.N.J. 2006) (finding *pro

26  rata* distribution "eminently reasonable and fair to the class members.").

27       Further, Plaintiffs and the Settling Defendants entered into the Settlements after the Court

28  had largely denied Plaintiffs' Motion for Class Certification without prejudice, and before the

1   Court ruled on Plaintiffs' Supplemental Motion for Class Certification.  The risks of ongoing

2   litigation, particularly at the time the Settlements were reached, also weigh in favor of approving

3   the Settlements.

4        Finally, the Settlements preserve Plaintiffs' right to litigate against the Non-Settling

5   Defendants for the entire amount of Plaintiffs' damages based on joint and several liability under

6   the antitrust laws.  *See*, *e.g.*, *In re Corrugated Container Antitrust Litig.*, 1981 U.S. Dist. LEXIS

7   9687, at *49-50.  Under the Settlements, the Non-Settling Defendants remain liable for the full

8   amount of Class damages, including those resulting from the Settling Defendants' conduct.

9                **3.      The Recommendation of Experienced Counsel Favors Approval.**

10       The judgment of experienced counsel regarding the Settlements should be given

11   significant weight.  *See Linney v. Cellular Alaska P'Ship*, Nos. 96-3008-DLJ, 97-0203-DLJ, 97-

12   0425-DLJ, & 97-0457-DLJ, 1997 U.S. Dist. LEXIS 24300, at *16 (N.D. Cal. July 18, 1997), *aff'd*

13   151 F.3d 1234 (9th Cir. 1998); *Ellis*, 87 F.R.D. at 18; *Boyd v. Bechtel Corp.*, 485 F. Supp. 610,

14   622 (N.D. Cal. 1979) ("The recommendations of plaintiffs' counsel should be given a

15   presumption of reasonableness.").  Co-Lead Class Counsel endorse the Settlements as fair,

16   adequate, and reasonable.  (Dermody Decl., ¶ 11 (Dkt. 502); Saveri Decl., ¶ 10 (Dkt. 503).)

17       Plaintiffs' counsel have extensive experience litigating and settling antitrust and

18   employment class actions.  They have conducted an in-depth investigation into the factual and

19   legal issues raised in this action.  The fact that qualified and well-informed counsel endorse the

20   Settlements as being fair, reasonable, and adequate weighs in favor of the Court approving them.

21                **4.      The Class Response Favors Final Approval.**

22       A court may appropriately infer that a class settlement is fair, adequate, and reasonable

23   when few Class members object to it.  *See Marshall v. Holiday Magic, Inc.*, 550 F.2d 1173, 1178

24   (9th Cir. 1977); *Nat'l Rural Telecomm. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 529 (C.D. Cal.

25   2004) ("the absence of a large number of objections to a proposed class settlement action raises a

26   strong presumption that the terms of a proposed class action settlement are favorable to

27   the class members.").  Indeed, a court can approve a class action settlement over the objections of

28   a significant percentage of Class members.  *See City of Seattle*, 955 F.2d at 1291-96.

Out of 64,613 Class members, only five submitted objections.  (Shaver Decl., ¶ 2.)  None of them raises meritorious concerns.  *See Browne v. Am. Honda Motor Co.*, No. 09-06750, 2010 U.S. Dist. LEXIS 145475, at \*51 (C.D. Cal. July 29, 2010) ("The fact that there is opposition does not necessitate disapproval of the settlement.  Instead, the court must independently evaluate whether the objections being raised suggest serious reasons why the proposal might be unfair.") (quoting *Boyle v. Arnold-Williams*, No. 01-5687, 2006 U.S. Dist. LEXIS 91920, \*10-11 (W.D. Wash. Dec. 20, 2006) (quotations omitted)).

Class member Eric Grosse objected on the basis that "I do not consider the lawsuit well-founded."  (Shaver Decl., Ex. 1.)   This objection does not comment on any aspect of the Settlements and is therefore irrelevant at this juncture.  *Wren v. RGIS Inventory Specialists*, No. 06-05778-JCS, 2011 U.S. Dist. LEXIS 38667, at \*40-41 (N.D. Cal. Apr. 1, 2011) (overruling objections submitted without stating basis thereof, and objections that "do not go to the fairness of the settlement").  His interests also appear adverse to the Class.

Similarly, Class member Emma Merrell objected because she believes any settlement would harm current employees and not benefit the Class, and she disagrees that Defendants' conduct harmed the Class.  (Shaver Decl., Ex. 2.)  It appears that her concerns are not aimed at the type of settlement reached, but at the fact that there was a litigation and settlement that she believes were harmful.  Because it appears she would object to any settlement, she has an interest that is adverse to the Class and inconsistent with achieving a fair, adequate, and reasonable recovery.  *See Wren*, 2011 U.S. Dist. LEXIS 38667 at \*40-41.

On the opposite side of the spectrum, Class members Tom Sanocki and Jeffrey Brown objected because they believe the Settlements should be "much greater" in order to "avoid anticompetitive behavior in the future."  (Shaver Decl., Exs. 3 & 4.)  These two objections do not consider the fact that the Settlements preserve the Class's ability to seek the full amount of estimated damages from the remaining Non-Settling Defendants, including estimated damages resulting from the Settling Defendants' misconduct.  They overlook that the amounts of the Settlements are appropriate given the relative size of the population of Class members employed by the Settling Defendants and their relative amount of commerce in the case.  They also ignore

1   the benefits to Class members in securing a monetary recovery in light of the risks faced by

2   Plaintiffs in ongoing litigation, particularly at the time of the Settlements.

3          Finally, Class member Conrad Minshall objected because he did not believe the Class

4   could fairly evaluate the Settlements without the underlying salary data and that the settlement

5   amount should be based on impact to the entire high tech labor market and not just to Class

6   positions at the seven companies.  (Shaver Decl., Ex. 5.)  He argues that employees like him who

7   changed jobs during the class period should receive more than Class members who did not.  (*Id.*)

8   Plaintiffs disagree.  Each Class member knows his or her own salary data or can confirm such

9   from the Claims Administrator.  There is no basis to allow Class members access to all salary

10  data, which is highly confidential, but which has already been analyzed for the Court's benefit in

11  the Class certification papers, which are publicly available on the docket.  *See Californians for*

12  *Disability Rights, Inc. v. Cal. DOT*, No. 06-5125-SBA, 2010 U.S. Dist. LEXIS 62837, at *27

13  (N.D. Cal. June 2, 2010) (overruling class member objection to lack of public information on

14  defendant's overall budget because Plaintiffs and class counsel had considered the information

15  when negotiating settlement).  As to the market impact issue, this has no merit, as the claims of

16  employees outside of the Class positions (e.g., at other employers) are not in this case.  Finally,

17  his assertion that Class members who changed jobs during the Class period were "the most

18  impacted" is not supported by the record in this case.  *Id*. (rejecting class member objection based

19  on "unsupported" assertion); *see also Hanlon*, 150 F.3d at 1021(affirming final approval of

20  nationwide class action settlement where "[t]he objectors presented no evidence" to support their

21  arguments).

22         The low objection rate here confirms that the Settlements are fair, adequate, and

23  reasonable, and should be approved.  In addition, 10,634 Class members have filed Claim forms,

24  while only 167 have opted out of the Settlements.  (Shaver Decl., ¶ 8.)  The response from the

25  Class overwhelmingly favors Settlement approval.

26  **V.     CONCLUSION**

27         For the reasons set forth above, Plaintiffs respectfully request that the Court grant final

28  approval to the Settlements; approve the notice as being in compliance with Federal Rule of Civil

Procedure 23 and due process; approve the proposed Plan of Allocation as fair, reasonable, and adequate; and confirm the Settlement Class certification (identical to the litigation class the Court certified on October 24, 2013; Dkt. 531).

Respectfully submitted,

Dated:  April 10, 2014          LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP


By:      */s/ Kelly M. Dermody*
             Kelly M. Dermody

Richard M. Heimann (State Bar No. 63607)
Kelly M. Dermody (State Bar No. 171716)
Brendan Glackin (State Bar No. 199643)
Dean Harvey (State Bar No. 250298)
Anne B. Shaver (State Bar No. 255928)
Lisa J. Cisneros (State Bar No. 251473)
275 Battery Street, 29th Floor
San Francisco, California  94111-3339
Telephone:  415.956.1000
Facsimile:  415.956.1008

JOSEPH SAVERI LAW FIRM, INC.


By:      */s/ Joseph R. Saveri*
             Joseph R. Saveri

Joseph R. Saveri (State Bar No. 130064)
James Dallal (State Bar No. 277826)
JOSEPH SAVERI LAW FIRM, INC
505 Montgomery Street, Suite 625
San Francisco, CA 94111
Telephone:  415. 500.6800
Facsimile:   415. 395.9940

*Co-Lead Class Counsel*