# Exhibit 1855

## (Part 1 of 4)

Declaration of Lisa J. Cisneros in Support of Plaintiffs'
Opposition Briefs ("Cisneros"), February 6, 2014,
(Dkt. 605)

(Public - redacted under seal portions)

Declaration of Steven Burmeister in Support of

Defendants' Opposition to Plaintiffs' Motion for Class Certification

November 12, 2012

Exs. B and C

# EXHIBIT 16
# FILED UNDER SEAL

1855.1



EXHIBIT _1855_
Deponent _Burmeister_
Date _3-15-13_
Gina V. Carbone, CSR

1   GEORGE A. RILEY (Bar No. 118304)
    griley@omm.com
2   MICHAEL F. TUBACH (Bar No. 145955)
    mtubach@omm.com
3   CHRISTINA J. BROWN (Bar No. 242130)
    cjbrown@omm.com
4   O'MELVENY & MYERS LLP
    Two Embarcadero Center, 28th Floor
5   San Francisco, CA  94111-3823
    Telephone:    (415) 984-8700
6   Facsimile:    (415) 984-8701

7   Attorneys for Defendant Apple Inc.

8

9                   UNITED STATES DISTRICT COURT

10                 NORTHERN DISTRICT OF CALIFORNIA

11                       SAN JOSE DIVISION

12

13   IN RE HIGH-TECH EMPLOYEE          Master Docket No. 11-CV-2509-LHK
     ANTITRUST LITIGATION
14                                     DECLARATION OF STEVEN
                                       BURMEISTER IN SUPPORT OF
15   THIS DOCUMENT RELATES TO:         DEFENDANTS' OPPOSITION TO
                                       PLAINTIFFS' MOTION FOR CLASS
16   ALL ACTIONS                       CERTIFICATION

17                                     Date:      January 17, 2013
                                       Time:      1:30 p.m.
18                                     Courtroom: 8, 4th Floor
                                       Judge:     Honorable Lucy H. Koh
19

20

21

22

23

24

25

26

27

28

1855.2

1        I, Steven Burmeister, declare as follows:

2        1.      I am the Senior Director of Compensation at Apple Inc. ("Apple"). I submit this

3    declaration in support of Defendants' Opposition to Plaintiffs' Motion for Class Certification. I

4    have knowledge of the facts set forth herein, and if called as a witness, I could and would

5    competently testify to the matters stated below.

6        2.      I have been employed at Apple since March 2001. I have previously served as

7    Compensation Manager and as Compensation and HRIS and HR Marketing Senior Director. I

8    am currently Senior Director of Compensation. In this position, I attend and prepare materials for

9    meetings of Apple's Compensation Committee, and I am responsible for overseeing the design

10   and administration of Apple's compensation programs.  Through these roles I have become

11   familiar with Apple's employee compensation practices.

12       3.      During the time that I have been at Apple, Apple's general philosophy has been to

13   compensate its employees based on their individual contributions to the company and differences

14   in their job scope, responsibilities, and experience.  This is the case for all employees, from junior

15   software engineers to high-level managers.  While Apple sets overall compensation budgets and

16   ranges, managers are responsible for recommending the specific compensation awarded to each

17   of the employees they supervise, based on each employee's personal job performance, skills, and

18   other factors.  As a result, compensation can vary substantially among employees, even among

19   those within the same group or job category.  Employee compensation at Apple has consisted of a

20   number of components, including base salary, equity compensation (stock options and restricted

21   stock units), bonuses and incentive payments, and a variety of benefits.  Each of these

22   components varies among employees.

23       4.      Apple adjusts employee compensation budgets based on company performance

24   and external market trends and data. ████████████████████████████████

25   ████████████████████████████████████████████████████████████

26   ████████████████████████████████████████████████████████

27   ████████████████████████████████████████████████████████████

28   ████████████████████████████████████████████████

CONFIDENTIAL – ATTORNEYS' EYES ONLY      - 2 -

1855.3

1  ████████████████████████████████████████████████████████

2  ███████████████████.  Apple's list of peer companies varies each year and includes

3  approximately twenty other companies, which are identified in Apple's annual proxy statements.

4  Although these companies are described as peer companies for executive compensation in the

5  proxy statements, Apple uses the same list of companies to obtain market survey information for

6  its general employee compensation.  In 2009, for example, Apple identified the following as peer

7  companies for compensation purposes:  Amazon.com, Inc., AT&T Inc., Cisco Systems, Inc.,

8  Comcast Corporation, Dell Inc., DIRECTV, eBay Inc., EMC Corporation, Google Inc., Hewlett-

9  Packard Company, Intel Corporation, International Business Machines Corporation, Microsoft

10  Corporation, News Corporation, Oracle Corporation, QUALCOMM Incorporated, Texas

11  Instruments Incorporated, Time Warner Inc., Verizon Communications Inc., The Walt Disney

12  Company, and Yahoo! Inc.  Of these twenty-one  companies, only two (Google and Intel)  are

13  defendants in this case.  Attached hereto as Exhibit A is a copy of Apple's January 2010 proxy

14  statement, which lists its 2009 peer companies on page 25.

15       5.     Any information obtained by Apple employees in cold calls regarding potential

16  employment at other companies is not recorded or tracked by Apple in any way, and it is not used

17  by Apple's Compensation Committee in setting annual employee compensation.

18       6.     Apple's Compensation Committee uses the market data described above to

19  determine the overall budgets for employee merit salary increases, restricted stock units, and

20  bonuses.  Budget increases are then allocated across lines of business, and the executive in charge

21  of each determines how to further allocate the increase among the groups within that line of

22  business. ████████████████████████████████████████████

23  ████████████████████████████████████████████

24  ████████████████████████████████████████████

25  ████████████████████████████████████

26  ████████████████████████████████████████████

27  ████████████████████████████████████

28      ████████████████  The process of setting the overall compensation budgets and salary ranges

BURMEISTER DECLARATION IN SUPPORT OF
OPPOSITION TO CLASS CERTIFICATION
NO. 11-CV-2509-LHK

1855.4

1   currently begins each Spring and finishes around the end of each Apple fiscal year, in the

2   September timeframe.  Thus, the employee compensation budgets for fiscal year 2005 were in

3   place before the beginning of 2005.

4        7.     Once the budgets are set, Apple's managers determine promotions and distribute

5   salaries, bonuses, and stock awards among the individual employees they supervise on the basis

6   of performance reviews and other factors, such as an employee's skill set and importance to the

7   overall success of the group.  Employees that are deemed exceptional or significant contributors

8   receive the greatest increases in compensation.  Extraordinary achievements are often recognized

9   by larger bonuses and/or awards of restricted stock units.  Thus, employees not only receive

10  different total compensation, but the relative amounts of salary, bonus, and stock vary among

11  employees as well.  Apple has thousands of managers who take part in making these

12  compensation recommendations and determinations.  Employee performance and compensation

13  reviews currently take place annually in late September or early October.

14  

15  

16  

17       Apple takes an

18  entrepreneurial approach to compensation and gives its managers flexibility to allocate

19  compensation in a way that is right for their employees.

20  

21       Attached hereto as Exhibit C

22  (231APPLE095044) is a presentation that I created in September 2006, entitled "Total Rewards

23  Planning FY07," which describes this process.

24       8.

25  

26  

27  

28  

BURMEISTER DECLARATION IN SUPPORT OF
OPPOSITION TO CLASS CERTIFICATION
NO. 11-CV-2509-LHK

9. When a new position is created, Apple's compensation group determines an appropriate job level and grade based on the job's scope and level of responsibility, market research, and comparison to similar positions at Apple. When making an offer of employment, a manager will take into account the job level and grade of the position to be filled, along with the candidate's education, job experience, compensation at prior employers, and expectations, and the available salary budget. ████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████

10. In approximately 2005, Apple updated and streamlined its job levels and compensation structure. ████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████ These efforts were intended to create consistency among job titles and enhance Apple's ability to efficiently align jobs to external market data, while compensation among individual employees continued to vary greatly. ████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████

11. The information contained in this declaration and the attached Exhibits B and C is extremely sensitive, and Apple considers it to be, and treats it as, confidential, proprietary, and competitively sensitive. Public disclosure of this information would give Apple's competitors insight into its confidential and proprietary employee compensation practices and strategies, deprive Apple of its investment in developing these strategies, and put Apple at a significant disadvantage with respect to recruiting, hiring, and compensating its employees. Apple designates this information as Confidential–Attorneys' Eyes Only under the Stipulated Protective Order in this case.

BURMEISTER DECLARATION IN SUPPORT OF
OPPOSITION TO CLASS CERTIFICATION
NO. 11-CV-2509-LHK

1855.6

1    I declare under penalty of perjury under the laws of the United States that the above is true

2  and correct.

3    Executed on November 12, 2012, in Sunnyvale, California.

5  By: _Steven Burmeister_
       Steven Burmeister

# Exhibit A

1855.8

EDGAR Online

# APPLE INC

# FORM DEFR14A
(Revised Proxy Soliciting Materials (definitive))

## Filed 01/26/10

| | |
|---|---|
| Address | ONE INFINITE LOOP |
| | CUPERTINO, CA 95014 |
| Telephone | (408) 996-1010 |
| CIK | 0000320193 |
| Symbol | AAPL |
| SIC Code | 3571 - Electronic Computers |
| Industry | Computer Hardware |
| Sector | Technology |
| Fiscal Year | 09/30 |

Powered By EDGAR Online
http://www.edgar-online.com
© Copyright 2011, EDGAR Online, Inc. All Rights Reserved.
Distribution and use of this document restricted under EDGAR Online, Inc. Terms of Use.

1855.9

**UNITED STATES**
**SECURITIES AND EXCHANGE COMMISSION**
Washington, D.C. 20549

# SCHEDULE 14A

**Proxy Statement Pursuant to Section 14(a) of the Securities Exchange Act of 1934**
**(Amendment No. 1)**

Filed by the Registrant  ☒

Filed by a party other than the Registrant  ☐

Check the appropriate box:

☐   Preliminary Proxy Statement

☐   **Confidential, for Use of the Commission Only (as permitted by Rule 14a-6(e)(2))**

☒   Definitive Proxy Statement

☐   Definitive Additional Materials

☐   Soliciting Material under §240.14a-12

## Apple Inc.

(Name of Registrant as Specified In Its Charter)

(Name of Person(s) Filing Proxy Statement, if other than the Registrant)

Payment of Filing Fee (Check the appropriate box):

☒   No fee required.

☐   Fee computed on table below per Exchange Act Rules 14a-6(i)(1) and 0-11.

(1)   Title of each class of securities to which transaction applies:

(2)   Aggregate number of securities to which transaction applies:

(3)   Per unit price or other underlying value of transaction computed pursuant to Exchange Act Rule 0-11 (set forth the amount on which the filing fee is calculated and state how it was determined):

(4)   Proposed maximum aggregate value of transaction:

(5)   Total fee paid:

☐   Fee paid previously with preliminary materials.

☐   Check box if any part of the fee is offset as provided by Exchange Act Rule 0-11(a)(2) and identify the filing for which the offsetting fee was paid previously. Identify the previous filing by registration statement number, or the Form or Schedule and the date of its filing.

(1)   Amount Previously Paid:

1855.10

(2)   Form, Schedule or Registration Statement No.:

(3)   Filing Party:

(4)   Date Filed:

1855.11

**Explanatory Note**

Apple Inc. (the "Company") is filing this Amendment No. 1 to its Definitive Proxy Statement (the "Amended Filing") for the Company's 2010 Annual Meeting of Shareholders to be held on February 25, 2010 (its "2010 Annual Meeting") to amend its Definitive Proxy Statement (the "Original Filing") for its 2010 Annual Meeting, as filed with the Securities and Exchange Commission (the "SEC") on January 12, 2010.

This Amended Filing reflects the Company's retrospective adoption of the Financial Accounting Standards Board's amended accounting standards related to revenue recognition for arrangements with multiple deliverables and arrangements that include software elements ("new accounting principles"). The new accounting principles permit prospective or retrospective adoption, and the Company elected retrospective adoption. The Company adopted the new accounting principles during the first quarter of 2010, as reflected in the Company's financial statements included in its Quarterly Report on Form 10-Q for the quarter ended December 26, 2009, which was filed with the SEC on January 25, 2010. The retrospective adoption of the new accounting principles has also been reflected in the Company's Form 10-K/A for the fiscal year ended September 26, 2009, as filed with the SEC on January 25, 2010 (the "Form 10-K/A"). For more information on the retrospective adoption of the new accounting principles, please see the Explanatory Note in the Form 10-K/A.

For the convenience of the reader, this Amended Filing sets forth the Original Filing in its entirety, except to amend the following items solely to reflect the retrospective adoption of the new accounting principles:

- Page 19, Compensation Discussion and Analysis
- Page 35, Proposal No. 2, Approval of Amendments to the 2003 Employee Stock Plan
- Page 48, Proposal No. 4, Advisory Vote on Executive Compensation

The sections of the Original Filing that were not amended are unchanged and continue in full force and effect as originally filed. This Amended Filing speaks as of the date of the Original Filing and has not been updated to reflect events occurring subsequent to the Original Filing date other than those associated with the retrospective adoption of the new accounting principles.

1855.12



# APPLE INC.

**1 Infinite Loop**
**Cupertino, California 95014**

## NOTICE OF 2010 ANNUAL MEETING OF SHAREHOLDERS

**February 25, 2010**
**10:00 a.m. Pacific Standard Time**

To the shareholders of Apple Inc.:

Notice is hereby given that the 2010 annual meeting of shareholders (the " *Annual Meeting* ") of Apple Inc., a California corporation (the " *Company* "), will be held on Thursday, February 25, 2010 at 10:00 a.m. Pacific Standard Time, in Building 4 of the Company's principal executive offices located at the address shown above for the following purposes, as more fully described in the accompanying proxy statement (the " *Proxy Statement* "):

1.  To elect the Company's Board of Directors (the " *Board* "). The Board intends to present for election the following seven nominees, all of whom are current directors of the Company: William V. Campbell, Millard S. Drexler, Albert A. Gore, Jr., Steven P. Jobs, Andrea Jung, Arthur D. Levinson, Ph.D. and Jerome B. York;

2.  To approve amendments to the Company's 2003 Employee Stock Plan;

3.  To approve amendments to the Company's 1997 Director Stock Option Plan;

4.  To hold an advisory vote on executive compensation;

5.  To ratify the appointment of Ernst & Young LLP as the Company's independent registered public accounting firm for 2010;

6.  To consider two shareholder proposals, if properly presented at the Annual Meeting; and

7.  To transact such other business as may properly come before the Annual Meeting and any postponement(s) or adjournment(s) thereof.

Only shareholders of record as of the close of business on December 28, 2009 are entitled to receive notice of, to attend, and to vote at, the Annual Meeting.

The Company is pleased to continue to take advantage of the Securities and Exchange Commission (the " *SEC* ") rules that allow issuers to furnish proxy materials to their shareholders on the Internet. The Company believes these rules allow it to provide you with the information you need while lowering the costs of delivery and reducing the environmental impact of the Annual Meeting.

You are cordially invited to attend the Annual Meeting in person. However, to ensure that your vote is counted at the Annual Meeting, please vote as promptly as possible.

Sincerely,

/ s /   D. B RUCE S EWELL

D. Bruce Sewell
*Senior Vice President,*
*General Counsel and Secretary*

Cupertino, California
January 12, 2010

1855.13



## APPLE INC.

**1 Infinite Loop**
**Cupertino, California 95014**
**PROXY STATEMENT**
**FOR**
**2010 ANNUAL MEETING OF SHAREHOLDERS**
**GENERAL INFORMATION**

### Why am I receiving these materials?

The Company has made these materials available to you on the Internet or, upon your request, has delivered printed versions of these materials to you by mail, in connection with the Company's solicitation of proxies for use at the Annual Meeting, to be held on Thursday, February 25, 2010 at 10:00 a.m. Pacific Standard Time, and at any postponement(s) or adjournment(s) thereof. These materials were first sent or given to shareholders on January 12, 2010. You are invited to attend the Annual Meeting and are requested to vote on the proposals described in this Proxy Statement. The Annual Meeting will be held in Building 4 of the Company's principal executive offices located at the address shown above.

### What is included in these materials?

These materials include:

- This Proxy Statement for the Annual Meeting; and

- The Company's Annual Report on Form 10-K for the year ended September 26, 2009, as filed with the SEC on October 27, 2009 (the " *Annual Report* ").

If you requested printed versions of these materials by mail, these materials also include the proxy card or vote instruction form for the Annual Meeting.

### What items will be voted on at the Annual Meeting?

Shareholders will vote on seven items at the Annual Meeting:

- The election to the Board of the seven nominees named in this Proxy Statement (Proposal No. 1);

- Amendments to the Company's 2003 Employee Stock Plan (Proposal No. 2);

- Amendments to the Company's 1997 Director Stock Option Plan (Proposal No. 3);

- An advisory vote on executive compensation (Proposal No. 4);

- Ratification of the appointment of Ernst & Young LLP as the Company's independent registered public accounting firm for 2010 (Proposal No. 5);

- A shareholder proposal regarding a sustainability report (Proposal No. 6); and

- A shareholder proposal to amend the Company's bylaws to establish a Board committee on sustainability (Proposal No. 7).

18SS.M

**What are the Board's voting recommendations?**

The Board recommends that you vote your shares:

- "FOR" each of the nominees to the Board (Proposal No. 1);

- "FOR" amendments to the Company's 2003 Employee Stock Plan (Proposal No. 2);

- "FOR" amendments to the Company's 1997 Director Stock Option Plan (Proposal No. 3);

- "FOR" the proposal regarding an advisory vote on executive compensation (Proposal No. 4);

- "FOR" ratification of the appointment of Ernst & Young LLP as the Company's independent registered public accounting firm for 2010 (Proposal No. 5);

- "AGAINST" the shareholder proposal regarding a sustainability report (Proposal No. 6); and

- "AGAINST" the shareholder proposal to amend the Company's bylaws to establish a Board committee on sustainability (Proposal No. 7).

**Where are the Company's principal executive offices located and what is the Company's main telephone number?**

The Company's principal executive offices are located at 1 Infinite Loop, Cupertino, California 95014. The Company's main telephone number is (408) 996-1010.

**What is the Company's fiscal year?**

The Company's fiscal year is the 52 or 53-week period that ends on the last Saturday of September. Unless otherwise stated, all information presented in this Proxy Statement is based on the Company's fiscal calendar.

**Why did I receive a one-page notice in the mail regarding the Internet availability of proxy materials instead of a full set of proxy materials?**

Pursuant to rules adopted by the SEC, the Company has elected to provide access to its proxy materials over the Internet. Accordingly, the Company is sending a Notice of Internet Availability of Proxy Materials (the " *Notice* ") to the Company's shareholders. All shareholders will have the ability to access the proxy materials on the website referred to in the Notice or request to receive a printed set of the proxy materials. Instructions on how to access the proxy materials over the Internet or to request a printed copy may be found in the Notice. In addition, shareholders may request to receive proxy materials in printed form by mail or electronically by email on an ongoing basis. The Company encourages shareholders to take advantage of the availability of the proxy materials on the Internet to help reduce the environmental impact of the Annual Meeting.

**I share an address with another shareholder, and we received only one paper copy of the proxy materials. How may I obtain an additional copy of the proxy materials?**

The Company has adopted a procedure called "householding," which the SEC has approved. Under this procedure, the Company is delivering a single copy of the Notice and, if applicable, this Proxy Statement and the Annual Report to multiple shareholders who share the same address unless the Company has received contrary instructions from one or more of the shareholders. This procedure reduces the Company's printing costs, mailing costs and fees. Shareholders who participate in householding will continue to be able to access and receive separate proxy cards. Upon written or oral request, the Company will deliver promptly a separate copy of the Notice and, if applicable, this Proxy Statement and the Annual Report to any shareholder at a shared address to

2

1855.15

which the Company delivered a single copy of any of these documents. To receive a separate copy of the Notice and, if applicable, this Proxy Statement or the Annual Report, shareholders may write or call the Company at the following address and telephone number:

Apple Investor Relations
1 Infinite Loop MS: 301-4IR
Cupertino, California 95014
(408) 974-3123

Shareholders who hold shares in "street name" (as described below) may contact their brokerage firm, bank, broker-dealer or other similar organization to request information about householding.

### How can I get electronic access to the proxy materials?

The Notice will provide you with instructions regarding how to:

- View the Company's proxy materials for the Annual Meeting on the Internet; and

- Instruct the Company to send future proxy materials to you electronically by email.

The Company's proxy materials are also available on the Company's website at www.apple.com/investor.

Choosing to receive future proxy materials by email will save the Company the cost of printing and mailing documents to you and will reduce the impact of the Company's annual meetings on the environment. If you choose to receive future proxy materials by email, you will receive an email message next year with instructions containing a link to those materials and a link to the proxy voting website. Your election to receive proxy materials by email will remain in effect until you terminate it.

### Who may vote at the Annual Meeting?

Each share of the Company's common stock has one vote on each matter. Only shareholders of record as of the close of business on December 28, 2009 (the " *Record Date* ") are entitled to receive notice of, to attend, and to vote at the Annual Meeting. As of the Record Date, there were 906,386,266 shares of the Company's common stock issued and outstanding, held by 30,476 holders of record.

### What is the difference between a shareholder of record and a beneficial owner of shares held in street name?

*Shareholder of Record* . If your shares are registered directly in your name with the Company's transfer agent, Computershare Investor Services, LLC (" *Computershare* "), you are considered the shareholder of record with respect to those shares, and the Notice was sent directly to you by the Company. If you request printed copies of the proxy materials by mail, you will receive a proxy card.

*Beneficial Owner of Shares Held in Street Name* . If your shares are held in an account at a brokerage firm, bank, broker-dealer, or other similar organization, then you are the beneficial owner of shares held in "street name," and the Notice was forwarded to you by that organization. The organization holding your account is considered the shareholder of record for purposes of voting at the Annual Meeting. As a beneficial owner, you have the right to instruct that organization on how to vote the shares held in your account. If you request printed copies of the proxy materials by mail, you will receive a vote instruction form.

### If I am a shareholder of record of the Company's shares, how do I vote?

There are four ways to vote:

- *In person* . If you are a shareholder of record, you may vote in person at the Annual Meeting. The Company will give you a ballot when you arrive.

3

1 855.14

- *Via the Internet* . You may vote by proxy via the Internet by following the instructions provided in the Notice.

- *By Telephone* . If you request printed copies of the proxy materials by mail, you may vote by proxy by calling the toll free number found on the proxy card.

- *By Mail* . If you request printed copies of the proxy materials by mail, you may vote by proxy by filling out the proxy card and sending it back in the envelope provided.

## If I am a beneficial owner of shares held in street name, how do I vote?

There are four ways to vote:

- *In person* . If you are a beneficial owner of shares held in street name and you wish to vote in person at the Annual Meeting, you must obtain a legal proxy from the organization that holds your shares.

- *Via the Internet* . You may vote by proxy via the Internet by visiting www.proxyvote.com and entering the control number found in the Notice.

- *By Telephone* . If you request printed copies of the proxy materials by mail, you may vote by proxy by calling the toll free number found on the vote instruction form.

- *By Mail* . If you request printed copies of the proxy materials by mail, you may vote by proxy by filling out the vote instruction form and sending it back in the envelope provided.

## What is the quorum requirement for the Annual Meeting?

The holders of a majority of the shares entitled to vote at the Annual Meeting must be present at the Annual Meeting for the transaction of business. This is called a quorum. Your shares will be counted for purposes of determining if there is a quorum, whether representing votes for, against or abstained, if you:

- Are present and vote in person at the Annual Meeting; or

- Have voted on the Internet, by telephone or by properly submitting a proxy card or vote instruction form by mail.

If a quorum is not present, the Annual Meeting will be adjourned until a quorum is obtained.

## How are proxies voted?

All shares represented by valid proxies received prior to the Annual Meeting will be voted and, where a shareholder specifies by means of the proxy a choice with respect to any matter to be acted upon, the shares will be voted in accordance with the shareholder's instructions.

## What happens if I do not give specific voting instructions?

*Shareholders of Record* . If you are a shareholder of record and you:

- Indicate when voting on the Internet or by telephone that you wish to vote as recommended by the Board, or

- Sign and return a proxy card without giving specific voting instructions,

then the proxy holders will vote your shares in the manner recommended by the Board on all matters presented in this Proxy Statement and as the proxy holders may determine in their discretion with respect to any other matters properly presented for a vote at the Annual Meeting. See the section entitled "Other Matters" below.

1855.17

*Beneficial Owners of Shares Held in Street Name* . If you are a beneficial owner of shares held in street name and do not provide the organization that holds your shares with specific voting instructions, under the rules of various national and regional securities exchanges, the organization that holds your shares may generally vote on routine matters but cannot vote on non-routine matters. If the organization that holds your shares does not receive instructions from you on how to vote your shares on a non-routine matter, the organization that holds your shares will inform the inspector of election that it does not have the authority to vote on this matter with respect to your shares. This is generally referred to as a "broker non-vote."

### Which ballot measures are considered "routine" or "non-routine"?

The advisory vote on executive compensation (Proposal No. 4) and the ratification of the appointment of Ernst & Young LLP as the Company's independent registered public accounting firm for 2010 (Proposal No. 5) are matters considered routine under applicable rules. A broker or other nominee may generally vote on routine matters, and therefore no broker non-votes are expected to exist in connection with Proposals No. 4 and No. 5.

The election of directors (Proposal No. 1), the amendments to the Company's 2003 Employee Stock Plan (Proposal No. 2), the amendments to the Company's 1997 Director Stock Option Plan (Proposal No. 3) and the two shareholder proposals (Proposals No. 6 and No. 7) are matters considered non-routine under applicable rules. A broker or other nominee cannot vote without instructions on non-routine matters, and therefore there may be broker non-votes on Proposals No. 1, No. 2, No. 3, No. 6 and No. 7.

### What is the voting requirement to approve each of the proposals?

For Proposal No. 1, the seven nominees receiving the highest number of affirmative votes of the shares entitled to be voted for them, up to the seven directors to be elected by those shares, will be elected as directors to serve until the next annual meeting of shareholders and until their successors are duly elected and qualified. Votes withheld shall have no legal effect.

Approval of Proposals No. 2, No. 3, No. 4, No. 5, No. 6 and No. 7 requires the affirmative vote of (i) a majority of the shares present or represented by proxy and voting at the Annual Meeting and (ii) a majority of the shares required to constitute the quorum.

### How are broker non-votes and abstentions treated?

Broker non-votes and abstentions are counted for purposes of determining whether a quorum is present. Only "FOR" and "AGAINST" votes are counted for purposes of determining the votes received in connection with each proposal, and therefore broker non-votes and abstentions have no effect on the proposal relating to the election of directors. In the case of each of the other proposals, broker non-votes and abstentions have no effect on determining whether the affirmative vote constitutes a majority of the shares present or represented by proxy and voting at the Annual Meeting. Approval of these other proposals also requires the affirmative vote of a majority of the shares necessary to constitute a quorum, however, and therefore broker non-votes and abstentions could prevent the approval of these other proposals because they do not count as affirmative votes. In order to minimize the number of broker non-votes, the Company encourages you to provide voting instructions to the organization that holds your shares by carefully following the instructions provided in the Notice.

### Can I change my vote after I have voted?

You may revoke your proxy and change your vote at any time before the final vote at the Annual Meeting. You may vote again on a later date via the Internet or by telephone (only your latest Internet or telephone proxy submitted prior to the Annual Meeting will be counted), by signing and returning a new proxy card or vote instruction form with a later date, or by attending the Annual Meeting and voting in person. However, your attendance at the Annual Meeting will not automatically revoke your proxy unless you vote again at the Annual

1855.18

Meeting or specifically request that your prior proxy be revoked by delivering to the Company's General Counsel at 1 Infinite Loop, Cupertino, California 95014, MS: 301-4GC a written notice of revocation prior to the Annual Meeting.

**Who will serve as the inspector of election?**

A representative from Computershare will serve as the inspector of election.

**Is my vote confidential?**

Proxy instructions, ballots and voting tabulations that identify individual shareholders are handled in a manner that protects your voting privacy. Your vote will not be disclosed either within the Company or to third parties, except:

- As necessary to meet applicable legal requirements;

- To allow for the tabulation and certification of votes; and

- To facilitate a successful proxy solicitation.

Occasionally, shareholders provide written comments on their proxy cards, which may be forwarded to the Company's management and the Board.

**Where can I find the voting results of the Annual Meeting?**

The preliminary voting results will be announced at the Annual Meeting. The final voting results will be tallied by the inspector of election and published in the Company's Quarterly Report on Form 10-Q for the quarter ending on March 27, 2010, which the Company is required to file with the SEC by May 6, 2010.

**Who is paying for the cost of this proxy solicitation?**

The Company is paying the costs of the solicitation of proxies. The Company has retained Georgeson Inc. to assist in obtaining proxies by mail, facsimile or email from brokers, bank nominees and other institutions for the Annual Meeting. The estimated cost of such services is $14,000 plus out-of-pocket expenses. Georgeson Inc. may be contacted at (800) 261-1052.

The Company must also pay brokerage firms and other persons representing beneficial owners of shares held in street name certain fees associated with:

- Forwarding the Notice to beneficial owners;

- Forwarding printed proxy materials by mail to beneficial owners who specifically request them; and

- Obtaining beneficial owners' voting instructions.

In addition to soliciting proxies by mail, certain of the Company's directors, officers and regular employees, without additional compensation, may solicit proxies personally or by telephone, facsimile or email on the Company's behalf.

**How can I attend the Annual Meeting?**

Attendance at the Annual Meeting is limited to shareholders. Admission to the Annual Meeting will be on a first-come, first-served basis. Registration will begin at 9:00 a.m. Pacific Standard Time, and each shareholder may be asked to present valid picture identification such as a driver's license or passport and proof of stock ownership as of the Record Date. The use of cell phones, smartphones, pagers, recording and photographic equipment and/or computers is not permitted in the meeting rooms at the Annual Meeting.

1855.19

**What is the deadline to propose actions for consideration or to nominate individuals to serve as directors at the 2011 annual meeting of shareholders?**

*Requirements for Shareholder Proposals to Be Considered for Inclusion in the Company's Proxy Materials* . Shareholder proposals to be considered for inclusion in the proxy statement and form of proxy relating to the 2011 annual meeting of shareholders must be received no later than September 14, 2010. In addition, all proposals will need to comply with Rule 14a-8 of the Securities Exchange Act of 1934 (the " *Exchange Act* "), which lists the requirements for the inclusion of shareholder proposals in company-sponsored proxy materials. Shareholder proposals must be delivered to the Company's General Counsel by mail at 1 Infinite Loop, Cupertino, California 95014, MS: 301-4GC or by facsimile at (408) 253-7457.

*Requirements for Shareholder Proposals to Be Brought Before the 2011 Annual Meeting of Shareholders* . Notice of any director nomination or other proposal that you intend to present at the 2011 annual meeting of shareholders, but do not intend to have included in the proxy statement and form of proxy relating to the 2011 annual meeting of shareholders, must be delivered to the Company's General Counsel by mail at 1 Infinite Loop, Cupertino, California 95014, MS: 301-4GC or by facsimile at (408) 253-7457 not earlier than the close of business on October 28, 2010 and not later than the close of business on November 27, 2010. In addition, your notice must set forth the information required by the Company's bylaws with respect to each director nomination or other proposal that you intend to present at the 2011 annual meeting of shareholders. The proxy solicited by the Company for the 2011 annual meeting of shareholders will confer discretionary authority on the Company's proxies to vote on any proposal presented by a shareholder at that meeting for which the Company has not been provided with notice on or prior to November 28, 2010.

1 855. 20