# Exhibit 1855

## (Part 3 of 4)

Declaration of Lisa J. Cisneros in Support of Plaintiffs'
Opposition Briefs ("Cisneros"), February 6, 2014,
(Dkt. 605)

(Public - redacted under seal portions)

Declaration of Steven Burmeister in Support of

Defendants' Opposition to Plaintiffs' Motion for Class Certification

November 12, 2012

Exs. B and C

(s) "Fiscal Year" means the Company's fiscal year.

(t) "Grant Date" means the date on which the Committee makes the determination to grant an Award or such later date as the Committee may specify in making such determination.

(u) "Incentive Stock Option" or "ISO" means an incentive stock option described in Code Section 422.

(v) "Non-Employee Director" means a member of the Board who is not an Employee.

(w) "Nonstatutory Stock Option" or "NSO" means a stock option that is not an ISO.

(x) "Option" means an ISO or NSO granted under the Plan entitling the Participant to purchase Shares.

(y) "Parent" means any corporation or other entity that beneficially owns directly or indirectly a majority of the Company's outstanding voting stock or voting power. An entity that attains the status of a Parent on a date after the adoption of the Plan shall be considered a Parent commencing as of such date.

(z) "Participant" means an Employee or Consultant who has been selected by the Committee to receive an Award under the Plan or any individual, estate or other entity that holds an Award.

(aa) "Performance Goals" means one or more objective measurable performance goals established by the Committee with respect to a Performance Period based upon one or more of the following criteria: (i) operating income; (ii) earnings before interest, taxes, depreciation and amortization; (iii) earnings; (iv) cash flow; (v) market share; (vi) sales or revenue; (vii) expenses; (viii) cost of goods sold; (ix) profit/loss or profit margin; (x) working capital; (xi) return on equity or assets; (xii) earnings per share; (xiii) total shareholder return; (xiv) price/earnings ratio; (xv) debt or debt-to-equity; (xvi) accounts receivable; (xvii) writeoffs; (xviii) cash; (xix) assets; (xx) liquidity; (xxi) operations; (xxii) intellectual property (e.g., patents); (xxiii) product development; (xxiv) manufacturing, production or inventory; (xxv) mergers and acquisitions or divestitures; and/or (xxvi) individual performance objective. Any criteria used may be measured, as applicable, (a) in absolute terms, (b) in relative terms (including but not limited to, the passage of time and/or against other companies or financial metrics), (c) on a per share and/or share per capita basis, (d) against the performance of the Company as a whole or against particular entities, segments, operating units or products of the Company and /or (e) on a pre-tax or after tax basis. Awards issued to persons who are not Covered Employees may take into account any other factors deemed appropriate by the Committee.

(bb) "Performance Period" means any period not exceeding 60 months as determined by the Committee, in its sole discretion. The Committee may establish different Performance Periods for different Participants, and the Committee may establish concurrent or overlapping Performance Periods.

(cc) "Plan" means this Apple Inc. 2003 Employee Stock Plan as it may be amended from time to time.

(dd) "Re-Price" means that the Company has lowered or reduced the Exercise Price of outstanding Options and/or outstanding SARs for any Participant(s) whether through amendment, cancellation or replacement grants, or any other means.

(ee) "Restricted Stock Unit" means a bookkeeping entry representing the equivalent of one Share awarded under the Plan and represents an unfunded and unsecured obligation of the Company.

(ff) "Restricted Stock Unit Agreement" means the agreement described in Section 9 evidencing a Restricted Stock Unit Award.

(gg) "SAR Agreement" means the agreement described in Section 7 evidencing a Stock Appreciation Right.

1855.71

(hh) "SEC" means the Securities and Exchange Commission.

(ii) "Section 16 Persons" means those officers, directors or other persons who are subject to Section 16 of the Exchange Act.

(jj) "Securities Act" means the Securities Act of 1933, as amended.

(kk) "Share" means one share of Common Stock.

(ll) "Stock Appreciation Right" or "SAR" means a stock appreciation right awarded under the Plan.

(mm) "Stock Grant" means Shares awarded under the Plan pursuant to Section 8.

(nn) "Stock Grant Agreement" means the agreement described in Section 8 evidencing a Stock Grant.

(oo) "Stock Option Agreement" means the agreement described in Section 6 evidencing an Option.

(pp) "Subsidiary" means any corporation or other entity a majority of whose outstanding voting stock or voting power is beneficially owned directly or indirectly by the Company. An entity that attains the status of a Subsidiary on a date after the adoption of the Plan shall be considered a Subsidiary commencing as of such date.

(qq) "10-Percent Stockholder" means an individual who owns more than 10% of the total combined voting power of all classes of outstanding stock of the Company or of its parent corporation or subsidiary corporation (as defined in Sections 424(e) and (f) of the Code). In determining stock ownership, the attribution rules of Code Section 424(d) shall be applied.

(rr) "Termination of Service" means (i) in the case of an Employee, a cessation of the employee-employer relationship between the Employee and the Company and its Subsidiaries for any reason, including but not by way of limitation, a termination by resignation, discharge, death, disability, or retirement, but excluding any such termination where there is a simultaneous reemployment by the Company or a Subsidiary and excluding any bona fide and Company (or Subsidiary) approved leave of absence; and (ii) in the case of a Consultant, a cessation of the service relationship (as determined by the Committee in its sole discretion) between the Consultant and the Company and its Subsidiaries for any reason, including but not by way of limitation, a termination by resignation, discharge, death or disability, but excluding any such termination where there is a simultaneous re-engagement of the Consultant by the Company or a Subsidiary. For purposes of the Plan and any Award, if an entity ceases to be a Subsidiary of the Company, a Termination of Service shall be deemed to have occurred with respect to each Employee and Consultant in respect of such Subsidiary who does not continue as an Employee or Consultant in respect of the Company or another Subsidiary that continues as such after giving effect to the transaction or other event giving rise to the change in status.

## SECTION 3. *ADMINISTRATION.*

(a) Committee Composition. The Board or a Committee appointed by the Board shall administer the Plan. The Committee shall generally have membership composition which enables (i) Awards to Section 16 Persons to qualify as exempt from liability under Section 16(b) of the Exchange Act and (ii) Awards to Covered Employees to qualify as performance-based compensation as provided under Code Section 162(m). However, the Board may also appoint one or more separate Committees, each composed of one or more directors of the Company who need not qualify under Rule 16b-3 or Code Section 162(m), that may administer the Plan with respect to Participants who are not Section 16 Persons or Covered Employees, respectively, may grant Awards under the Plan to such Participants and may determine all terms of such Awards. Members of any such Committee shall serve for such period of time as the Board may determine and shall be subject to removal by the Board at any time. The Board may also at any time terminate the functions of any Committee and reassume all powers and authority previously delegated to the Committee.

The Board and any Committee appointed to administer the Plan is referred to herein as the "Committee."

A-4

1855.72

(b) Authority of the Committee. Subject to the provisions of the Plan, the Committee shall have the full authority, in its sole discretion, to take any actions it deems necessary or advisable for the administration of the Plan. Such actions shall include:

(i) selecting Participants who are to receive Awards under the Plan;

(ii) determining the Fair Market Value for purposes of any Award;

(iii) determining the type of and number of securities to be subject to each Award, and the Grant Date, vesting requirements and other features and conditions of such Awards;

(iv) approving the forms of Award Agreements to be used under the Plan;

(v) amending any outstanding Awards;

(vi) accelerating the vesting or extending the post-termination exercise term of Awards at any time and under such terms and conditions as it deems appropriate (including, without limitation, in connection with a termination of employment or services or other events of a personal nature) subject to any required consent under Section 15;

(vii) construing and interpreting the Plan and any agreements defining the rights and obligations of the Company, its Subsidiaries, and Participants under the Plan;

(viii) correcting any defect, supplying any omission or reconciling any inconsistency in the Plan or any Award Agreement;

(ix) adopting such rules or guidelines as it deems appropriate to implement the Plan;

(x) authorizing any person to execute on behalf of the Company any instrument required to effect the grant of an Award previously authorized by the Committee;

(xi) adjusting the number of shares of Common Stock subject to any Award, adjusting the price of any or all outstanding Awards or otherwise changing previously imposed terms and conditions, in such circumstances as the Committee may deem appropriate, in each case subject to Sections 5 and 15, and provided that in no case (except due to an adjustment contemplated by Section 11 or any Re-Pricing that may be approved by shareholders) shall such an adjustment constitute a Re-Pricing (by amendment, substitution, cancellation and regrant, exchange or other means) of the per share Exercise Price of any Option or SAR;

(xii) determining whether, and the extent to which, adjustments are required pursuant to Section 13 hereof and authorizing the termination, conversion, substitution or succession of Awards upon the occurrence of an event of the type described in Section 13;

(xiii) acquiring or settling (subject to Sections 13 and 15) rights under Awards in cash, stock of equivalent value, or other consideration, provided, however, that in no case without stockholder approval shall the Company effect a Re—Pricing of an Option or SAR granted under the Plan by purchasing the Option or SAR at a time when the Exercise Price of the Award is greater than the Fair Market Value of a share of Common Stock;

(xiv) making all other decisions relating to the operation of the Plan; and

(xv) adopting such plans or subplans as may be deemed necessary or appropriate to comply with the laws of other countries, allow for tax-preferred treatment of Awards or otherwise provide for the participation by Participants who reside outside of the U.S.

The Committee's determinations under the Plan shall be final and binding on all persons.

(c) Indemnification. To the maximum extent permitted by Applicable Laws, each member of the Committee shall be indemnified and held harmless by the Company against and from (i) any loss, cost, liability, or expense that may be imposed upon or reasonably incurred by him or her in connection with or resulting from any claim,

1 855.73

action, suit, or proceeding to which he or she may be a party or in which he or she may be involved by reason of any action taken or failure to act under the Plan or any Award Agreement, and (ii) from any and all amounts paid by him or her in settlement thereof, with the Company's approval, or paid by him or her in satisfaction of any judgment in any such claim, action, suit, or proceeding against him or her, provided he or she shall give the Company an opportunity, at its own expense, to handle and defend the same before he or she undertakes to handle and defend it on his or her own behalf. The foregoing right of indemnification shall not be exclusive of any other rights of indemnification to which such persons may be entitled under the Company's Articles of Incorporation or Bylaws, by contract, as a matter of law, or otherwise, or under any power that the Company may have to indemnify them or hold them harmless.

(d) Reliance on Experts. In making any determination or in taking or not taking any action under the Plan, the Committee may obtain and may rely upon the advice of experts, including employees and professional advisors to the Company. No director, officer or agent of the Company or any of its Subsidiaries shall be liable for any such action or determination taken or made or omitted in good faith.

## SECTION 4. *GENERAL.*

(a) General Eligibility. Only Employees and Consultants shall be eligible to participate in the Plan. Non-Employee Directors are not eligible for Award grants under the Plan.

(b) Incentive Stock Options. Only Participants who are Employees of the Company, a "parent corporation" of the Company (within the meaning of Section 424(e) of the Code) or a "subsidiary corporation" of the Company (within the meaning of Section 424(f) of the Code) shall be eligible for the grant of ISOs. In addition, a 10-Percent Stockholder shall not be eligible for the grant of an ISO unless the requirements set forth in Code Section 422(c)(5) are satisfied.

(c) Restrictions on Transfer.

(i) Unless otherwise expressly provided in (or pursuant to) this Section 4(c) or required by Applicable Law: (A) all Awards are non-transferable and shall not be subject in any manner to sale, transfer, anticipation, alienation, assignment, pledge, encumbrance or charge; (B) Awards shall be exercised only by the Participant; and (C) amounts payable or Shares issuable pursuant to any Award shall be delivered only to (or for the account of) the Participant.

(ii) The Committee may permit Awards to be exercised by and paid to, or otherwise transferred to, other persons or entities pursuant to such conditions and procedures, including limitations on subsequent transfers, as the Committee may, in its sole discretion, establish in writing. Any permitted transfer shall be subject to compliance with applicable federal and state securities laws and shall not be for value (other than nominal consideration, settlement of marital property rights, or for interests in an entity in which more than 50% of the voting interests are held by the Participant or by the Participant's family members).

(iii) The exercise and transfer restrictions in Section 4(c) shall not apply to:

(A)   transfers to the Company (for example, in connection with the expiration or termination of the Award),

(B)   the designation of a beneficiary to receive benefits in the event of the Participant's death or, if the Participant has died, transfers to or exercise by the Participant's beneficiary, or, in the absence of a validly designated beneficiary, transfers by will or the laws of descent and distribution,

(C)   subject to any applicable limitations on ISOs, transfers to a family member (or former family member) pursuant to a domestic relations order if approved or ratified by the Company,

(D)   if the Participant has suffered a disability, permitted transfers or exercises on behalf of the participant by his or her legal representative, or

1855.74

(E)   the authorization by the Committee of Cashless Exercise procedures with third parties who provide financing for the purpose of (or who otherwise facilitate) the exercise of Awards consistent with applicable laws and the express authorization of the Committee.

(d) Beneficiaries. If permitted by the Committee in the Award Agreement, a Participant under the Plan may name a beneficiary or beneficiaries to whom any vested but unpaid Award shall be paid in the event of the Participant's death. Each such designation shall revoke all prior beneficiary designations by the Participant and shall be effective only if given in a form and manner acceptable to the Committee. In the absence of any such designation, any vested benefits remaining unpaid at the Participant's death shall be paid to the Participant's estate and, subject to the terms of the Plan and of the applicable Award Agreement, any unexercised vested Award may be exercised by the administrator or executor of the Participant's estate.

(e) No Rights as a Stockholder. A Participant, or a transferee of a Participant, shall have no rights as a stockholder with respect to any Common Stock covered by an Award until such person has satisfied all of the terms and conditions to receive such Common Stock, has satisfied any applicable withholding or tax obligations relating to the Award and the Shares have been issued (as evidenced by an appropriate entry on the books of the Company or a duly authorized transfer agent of the Company).

(f) Termination of Service. The Committee shall establish the effect of a Termination of Service on the rights and benefits under each Award under the Plan and in so doing may make distinctions based upon, inter alia, the cause of termination and type of Award.

(g) Consideration. The purchase price for any Award granted under the Plan or the Common Stock to be delivered pursuant to an award, as applicable, may be paid by means of any lawful consideration as determined by the Committee.

## SECTION 5. *SHARES SUBJECT TO PLAN AND SHARE LIMITS.*

(a) Basic Limitation. The stock issuable under the Plan shall be authorized but unissued Shares. The aggregate number of Shares reserved for Awards under the Plan is 209,000,000, subject to adjustment pursuant to Section 11.

(b) Share Count. Shares issued pursuant to Awards other than Options or SARs will count against the Shares available for issuance under the Plan as two (2) Shares for every one (1) Share issued in connection with the Award. Shares issued pursuant to the exercise of Options or SARs will count against the Shares available for issuance under the Plan as one (1) Share for every one Share to which such exercise relates. For purposes of the preceding sentence, the total number of Shares subject to SARs that are settled in Shares shall be counted in full against the number of Shares available for issuance under the Plan, regardless of the number of Shares actually issued upon settlement of the SARs. If Awards are settled in cash, the Shares that would have been delivered had there been no cash settlement shall not be counted against the Shares available for issuance under the Plan. Except as provided in the next sentence, if Awards are forfeited or are terminated for any reason before vesting or being exercised, then the Shares underlying such Awards shall again become available for Awards under the Plan; provided that any one (1) Share issued pursuant to a Stock Grant or subject to a Restricted Stock Unit Award that is forfeited or terminated shall be credited as two (2) Shares when determining the number of Shares that shall again become available for Awards under the Plan if upon grant, the Shares underlying such forfeited or terminated Awards were counted as two (2) Shares against the Plan reserve. Shares that are exchanged by a Participant or withheld by the Company as full or partial payment in connection with any Award under the Plan, as well as any Shares exchanged by a Participant or withheld by the Company or one of its Subsidiaries to satisfy the tax withholding obligations related to any Award, shall not be available for subsequent Awards under the Plan. Refer to Section 15(i) for application of the foregoing share limits with respect to substituted awards.

A-7

1855.75

(c) Share Limits.

(i) Limits on Options and SARs. No Participant shall receive Options or SARs during any Fiscal Year covering, in the aggregate, in excess of 15,000,000 Shares, subject to adjustment pursuant to Section 11.

(ii) Limits on Stock Grants and Restricted Stock Units. No Participant shall receive Stock Grants or Restricted Stock Units during any Fiscal Year covering, in the aggregate, in excess of 5,000,000 Shares, subject to adjustment pursuant to Section 11.

(d) Reservation of Shares; No Fractional Shares. The Company shall at all times reserve a number of shares of Common Stock sufficient to cover the Company's obligations and contingent obligations to deliver Shares with respect to Awards then outstanding under the Plan (exclusive of any dividend equivalent obligations to the extent the Company has the right to settle such rights in cash). No fractional Shares shall be delivered under the Plan. The Committee may pay cash in lieu of any fractional Shares in settlements of Awards under the Plan.

## SECTION 6. *TERMS AND CONDITIONS OF OPTIONS.*

(a) Stock Option Agreement. Each Option granted under the Plan shall be evidenced and governed exclusively by a Stock Option Agreement between the Participant and the Company. Such Option shall be subject to all applicable terms and conditions of the Plan and may be subject to any other terms and conditions that are not inconsistent with the Plan and that the Committee deems appropriate for inclusion in a Stock Option Agreement. The provisions of the various Stock Option Agreements entered into under the Plan need not be identical. The Stock Option Agreement shall specify whether the Option is an ISO or an NSO.

(b) Number of Shares. Each Stock Option Agreement shall specify the number of Shares that are subject to the Option, which number is subject to adjustment in accordance with Section 11.

(c) Exercise Price. Each Stock Option Agreement shall specify the Option's Exercise Price which shall be established by the Committee and is subject to adjustment in accordance with Section 11. The Exercise Price of an Option shall not be less than 100% of the Fair Market Value (110% for an ISO granted to a 10-Percent Stockholder) on the Grant Date.

(d) Exercisability and Term. Each Stock Option Agreement shall specify the date when all or any installment of the Option is to become exercisable and/or any performance conditions or Performance Goals pursuant to Section 10 that must be satisfied before the Option may be exercised. The Stock Option Agreement shall also specify the maximum term of the Option; provided that the maximum term of an Option shall in no event exceed seven (7) years from the Grant Date. A Stock Option Agreement may provide for accelerated vesting in the event of the Participant's death, Disability or retirement and may provide for tolling of vesting in the event of a Participant's leave of absence. Notwithstanding any other provision of the Plan or the Stock Option Agreement, no Option can be exercised after the expiration date provided in the applicable Stock Option Agreement.

(e) Method of Exercise. An Option may be exercised, in whole or in part, by giving written notice of exercise to the Company or the Company's designee (or, subject to Applicable Laws and if the Company permits, by electronic or voice methods) of the number of Shares to be purchased. Such notice shall be accompanied by payment in full of the aggregate Exercise Price, plus any required withholdings (unless satisfactory arrangements have been made to satisfy such withholdings). The Company reserves the right to delay issuance of the Shares until the such payment obligations are fully satisfied.

(f) Payment for Option Shares. The Exercise Price of an Option shall be paid in cash at the time of exercise, except as follows and if so provided for in the applicable Stock Option Agreement:

(i) Cashless Exercise. Payment of all or a part of the Exercise Price may be made through Cashless Exercise.

A-8

1855.7ч

(ii) Other Forms of Payment. Payment may be made in any other form that is consistent with Applicable Laws, regulations and rules and approved by the Committee.

In the case of an ISO granted under the Plan, except to the extent permitted by Applicable Laws, payment shall be made only pursuant to the express provisions of the applicable Stock Option Agreement. In the case of an NSO granted under the Plan, the Committee may, in its discretion at any time, accept payment in any form(s) described in this Section 6(f).

## SECTION 7. *TERMS AND CONDITIONS OF STOCK APPRECIATION RIGHTS.*

(a) SAR Agreement. Each SAR granted under the Plan shall be evidenced by a SAR Agreement between the Participant and the Company. Such SAR shall be subject to all applicable terms of the Plan and may be subject to any other terms that are not inconsistent with the Plan. A SAR Agreement may provide for a maximum limit on the amount of any payout notwithstanding the Fair Market Value on the date of exercise of the SAR. The provisions of the various SAR Agreements entered into under the Plan need not be identical.

(b) Number of Shares. Each SAR Agreement shall specify the number of Shares to which the SAR pertains, which number is subject to adjustment in accordance with Section 11.

(c) Exercise Price. Each SAR Agreement shall specify the Exercise Price, which is subject to adjustment in accordance with Section 11. A SAR Agreement may specify an Exercise Price that varies in accordance with a predetermined formula while the SAR is outstanding, provided that in all cases the Exercise Price of a SAR shall not be less than 100% of the Fair Market Value on the Grant Date.

(d) Exercisability and Term. Each SAR Agreement shall specify the date when all or any installment of the SAR is to become exercisable and/or any performance conditions or Performance Goals pursuant to Section 10 that must be satisfied before the SAR is exercised. The SAR Agreement shall also specify the maximum term of the SAR which shall not exceed seven (7) years from the Grant Date. A SAR Agreement may provide for accelerated vesting in the event of the Participant's death, Disability or retirement and may provide for tolling of vesting in the event of a Participant's leave of absence. SARs may be awarded in combination with Options or Stock Grants, and such an Award shall provide that the SARs will not be exercisable unless the related Options or Stock Grants are forfeited. A SAR may be included in an ISO only at the time of grant but may be included in an NSO at the time of grant or at any subsequent time, but not later than six months before the expiration of such NSO. Notwithstanding any other provision of the Plan or the SAR Agreement, no SAR can be exercised after the expiration date provided in the applicable SAR Agreement.

(e) Exercise of SARs. Upon exercise of a SAR, the Participant (or any person having the right to exercise the SAR after Participant's death) shall receive from the Company (i) Shares, (ii) cash or (iii) any combination of Shares and cash, as the Committee shall determine at the time of grant of the SAR, in its sole discretion. The amount of cash and/or the Fair Market Value of Shares received upon exercise of SARs shall, in the aggregate, be equal to the amount by which the Fair Market Value (on the date of exercise) of the Shares subject to the SARs exceeds the Exercise Price of the Shares.

## SECTION 8. *TERMS AND CONDITIONS FOR STOCK GRANTS.*

(a) Time, Amount and Form of Awards. Awards under this Section 8 may be granted in the form of a Stock Grant. A Stock Grant may be awarded in combination with NSOs, and such an Award may provide that the Stock Grant will be forfeited in the event that the related NSOs are exercised.

(b) Stock Grant Agreement. Each Stock Grant awarded under the Plan shall be evidenced and governed exclusively by a Stock Grant Agreement between the Participant and the Company. Each Stock Grant shall be subject to all applicable terms and conditions of the Plan and may be subject to any other terms and conditions that are not inconsistent with the Plan that the Committee deems appropriate for inclusion in the applicable Stock Grant Agreement. The provisions of the Stock Grant Agreements entered into under the Plan need not be identical.

A-9

1855.77

(c) Number of Shares. Each Stock Grant Agreement shall specify the number of Shares to which the Stock Grant pertains, which number is subject to adjustment in accordance with Section 11.

(d) Vesting Conditions. The Committee shall determine the vesting schedule of each Stock Grant. Vesting shall occur, in full or in installments, upon satisfaction of the conditions specified in the Stock Grant Agreement which may include performance conditions or Performance Goals pursuant to Section 10. Except for any accelerated vesting required or permitted pursuant to Section 12 and except as otherwise provided in the following provisions of this Section 8(d), and subject to such additional vesting requirements or conditions as the Committee may establish with respect to the Award, each Stock Grant under this Plan shall be subject to the following minimum vesting requirements: (a) if the Stock Grant includes a performance-based vesting condition, the Stock Grant shall not vest earlier than the first anniversary of the Grant Date and vesting shall occur only if the Participant is an Employee or Consultant of the Company or one of its Subsidiaries on such vesting date; and (b) if the Stock Grant does not include a performance-based vesting condition, the Stock Grant shall not vest more rapidly than in monthly installments over the three-year period immediately following the Grant Date and vesting of any vesting installment of the Stock Grant shall occur only if the Participant is an Employee or Consultant of the Company or one of its Subsidiaries on the date such installment is scheduled to vest; provided that the Committee may accelerate or provide in the applicable Award Agreement for the accelerated vesting of any Stock Grant in connection with a change in control of the Participant's employer (or a parent thereof) or the termination of the Participant's employment due to the Participant's death, disability or retirement. The Committee may, however, accelerate or provide in the applicable Award Agreement for the accelerated vesting of any Stock Grant, and/or any Restricted Stock Unit Award as provided in Section 9(c), in circumstances not contemplated by the preceding sentence, and/or provide for a vesting schedule for such Stock Grant or Restricted Stock Unit Award that is shorter than the minimum schedule contemplated by the preceding sentence, in such circumstances as the Committee may deem appropriate; provided, however, that the total number of Shares subject to the portion of any such Stock Grant and any such Restricted Stock Unit Award that vests earlier than the minimum vesting dates that would be applicable pursuant to the minimum vesting requirements of the preceding sentence (or, as to any accelerated vesting, provides for accelerated vesting other than in the circumstances contemplated by the preceding sentence) shall not exceed five percent (5%) of the Plan's aggregate Share limit set forth in Section 5(a).

(e) Voting and Dividend Rights. The holder of a Stock Grant awarded under the Plan shall have the same voting, dividend and other rights as the Company's other stockholders, except as otherwise stated in the Stock Grant Agreement. A Stock Grant Agreement may require that the holder of such Stock Grant invest any cash dividends received in additional Shares subject to the Stock Grant. Such additional Shares and any Shares received as a dividend pursuant to the Stock Grant shall be subject to the same conditions and restrictions as the Stock Grant with respect to which the dividends were paid.

## SECTION 9. *TERMS AND CONDITIONS OF RESTRICTED STOCK UNITS.*

(a) Restricted Stock Unit Agreement. Each Restricted Stock Unit granted under the Plan shall be evidenced by a Restricted Stock Unit Agreement between the Participant and the Company. Such Restricted Stock Units shall be subject to all applicable terms of the Plan and may be subject to any other terms that are not inconsistent with the Plan. The provisions of the various Restricted Stock Unit Agreements entered into under the Plan need not be identical.

(b) Number of Shares. Each Restricted Stock Unit Agreement shall specify the number of Restricted Stock Units to which the Restricted Stock Unit Award pertains, which number is subject to adjustment in accordance with Section 11.

(c) Vesting Conditions. The Committee shall determine the vesting schedule of each Restricted Stock Unit Award. Vesting shall occur, in full or in installments, upon satisfaction of the conditions specified in the Restricted Stock Unit Agreement which may include performance conditions or Performance Goals pursuant to

A-10

1855.78

Section 10. Each Restricted Stock Unit Award shall be subject to the same minimum vesting provisions applicable to Stock Grants as set forth in Section 8(d), including (without limitation) the Committee's discretion under the last sentence of Section 8(d) to grant Awards that do not comply with such minimum vesting provisions, subject to the Share limit set forth in such sentence.

(d) Form and Time of Settlement of Restricted Stock Units. Settlement of vested Restricted Stock Units may be made in the form of (i) cash, (ii) Shares or (iii) any combination of both, as determined by the Committee at the time of the grant of the Restricted Stock Units, in its sole discretion. Vested Restricted Stock Units may be settled in a lump sum or in installments. The distribution may occur or commence when the vesting conditions applicable to the Restricted Stock Units have been satisfied or have lapsed, or, if the Committee so provides in the Restricted Stock Unit Agreement, it may be deferred, in accordance with Applicable Laws, to any later date. The amount of a deferred distribution may be increased by an interest factor or by dividend equivalents, as determined by the Committee and provided in the Restricted Stock Unit Agreement.

(e) Voting and Dividend Rights. The holders of Restricted Stock Units shall have no voting rights. Prior to settlement or forfeiture, any Restricted Stock Unit awarded under the Plan may, at the Committee's discretion, carry with it a right to dividend equivalents. Such right entitles the holder to be credited with an amount equal to all cash dividends paid on one Share while the Restricted Stock Unit is outstanding. Dividend equivalents may be converted into additional Restricted Stock Units and may be made subject to the same conditions and restrictions as the Restricted Stock Units to which they attach. Settlement of dividend equivalents may be made in the form of cash, in the form of Shares, or in a combination of both.

(f) Creditors' Rights. A holder of Restricted Stock Units shall have no rights other than those of a general creditor of the Company. Restricted Stock Units represent an unfunded and unsecured obligation of the Company, subject to the terms and conditions of the applicable Restricted Stock Unit Agreement.

**SECTION 10.** *PERFORMANCE-BASED AWARDS; CASH BONUS AWARDS.*

(a) General. The Committee may, in its discretion, include performance conditions in an Award. If performance conditions are included in Awards to Covered Employees and such Awards are intended to qualify as "performance-based compensation" under Code Section 162(m), then such Awards will be subject to the achievement of Performance Goals with respect to a Performance Period established by the Committee. Such Awards shall be granted and administered pursuant to the requirements of Code Section 162(m). Performance Goals shall be adjusted to mitigate the unbudgeted impact of material, unusual or nonrecurring gains and losses, accounting changes or other extraordinary events not foreseen at the time the targets were set unless the Committee provides otherwise at the time of establishing the targets. Before any Shares underlying an Award or any Award payments are released to a Covered Employee with respect to a Performance Period, the Committee shall certify in writing that the Performance Goals for such Performance Period have been satisfied. Awards with performance conditions that are granted to Participants who are not Covered Employees need not comply with the requirements of Code Section 162(m).

(b) Cash Bonus Awards. The Committee may, in its discretion, grant Cash Bonus Awards under the Plan to one or more Employees of the Company or any of its Subsidiaries. Cash Bonus Awards may be subject to performance conditions as described in Section 10(a) above and, to the extent such Cash Bonus Awards are granted to Covered Persons and intended to qualify as "performance-based compensation" under Section 162(m), shall be subject to the requirements of Section 162(m), including without limitation, the establishment of Performance Goals and certification of performance by the Committee as set forth above. In addition, the aggregate amount of compensation to be paid to any one participant in respect of all Cash Bonus Awards payable only in cash and not related to shares of Common Stock and granted to that participant in any one calendar year shall not exceed $5,000,000. Awards that are cancelled during the year shall be counted against this limit to the extent required by Section 162(m) of the Code.

A-11

1855.79

(c) Expiration of Grant Authority. As required pursuant to Section 162(m) of the Code and the regulations promulgated thereunder, the Committee's authority to grant new awards that are intended to qualify as performance-based compensation within the meaning of Section 162 (m) of the Code (other than Options and SARs with an Exercise Price that is not less than the Fair Market Value of a share of Common Stock on the Grant Date) shall terminate upon the first meeting of the Company's shareholders that occurs in 2015.

## SECTION 11. *PROTECTION AGAINST DILUTION.*

(a) Adjustments. Subject to Section 12, upon (or, as may be necessary to effect the adjustment, immediately prior to): any reclassification, recapitalization, stock split (including a stock split in the form of a stock dividend) or reverse stock split; any merger, combination, consolidation, or other reorganization; any spin-off, split-up, or similar extraordinary dividend distribution in respect of the Common Stock; or any exchange of Common Stock or other securities of the Company, or any similar, unusual or extraordinary corporate transaction in respect of the Common Stock; then the Committee shall equitably and proportionately adjust (1) the number and type of Shares of Common Stock (or other securities) that thereafter may be made the subject of Awards (including the specific Share limits, maximums and numbers of Shares set forth elsewhere in the Plan), (2) the number, amount and type of Shares of Common Stock (or other securities or property) subject to any outstanding Awards, (3) the grant, purchase, or Exercise Price of any outstanding Awards, and/or (4) the securities, cash or other property deliverable upon exercise or payment of any outstanding Awards, in each case to the extent necessary to preserve (but not increase) the level of incentives intended by the Plan and the then-outstanding Awards.

Unless otherwise expressly provided in the applicable Award Agreement, upon (or, as may be necessary to effect the adjustment, immediately prior to) any event or transaction described in the preceding paragraph or a sale of all or substantially all of the business or assets of the Company as an entirety, the Company shall equitably and proportionately adjust the Performance Goals applicable to any then-outstanding performance-based Awards to the extent necessary to preserve (but not increase) the level of incentives intended by the Plan and the then-outstanding performance-based Awards.

It is intended that, if possible, any adjustments contemplated by the preceding two paragraphs be made in a manner that satisfies applicable legal, tax (including, without limitation and as applicable in the circumstances, Section 424 of the Code, Section 409A of the Code and Section 162(m) of the Code) and accounting (so as to not trigger any charge to earnings with respect to such adjustment) requirements.

Without limiting the generality of Section 3, any good faith determination by the Committee as to whether an adjustment is required in the circumstances pursuant to this Section 11(a), and the extent and nature of any such adjustment, shall be conclusive and binding on all persons.

(b) Participant Rights. Except as provided in this Section 11, a Participant shall have no rights by reason of any issue by the Company of stock of any class or securities convertible into stock of any class, any subdivision or consolidation of shares of stock of any class, the payment of any stock dividend or any other increase or decrease in the number of shares of stock of any class. If by reason of an adjustment pursuant to this Section 11 a Participant's Award covers additional or different shares of stock or securities, then such additional or different shares and the Award in respect thereof shall be subject to all of the terms, conditions and restrictions which were applicable to the Award and the Shares subject to the Award prior to such adjustment.

## SECTION 12. *CORPORATE TRANSACTIONS.*

Upon the occurrence of any of the following: any merger, combination, consolidation, or other reorganization; any exchange of Common Stock or other securities of the Company; a sale of all or substantially all the business, stock or assets of the Company; a dissolution of the Company; or any other event in which the Company does not survive (or does not survive as a public company in respect of its Common Stock); then the Committee may make provision for a cash payment in settlement of, or for the assumption, substitution or exchange of any or all outstanding Share-based Awards or the cash, securities or property deliverable to the

A-12

holder of any or all outstanding Share-based Awards, based upon, to the extent relevant under the circumstances, the distribution or consideration payable to holders of the Common Stock upon or in respect of such event. Upon the occurrence of any event described in the preceding sentence, then, unless the Committee has made a provision for the substitution, assumption, exchange or other continuation or settlement of the Award or the Award would otherwise continue in accordance with its terms in the circumstances, each Award shall terminate upon the related event; provided that the holder of an Option or SAR shall be given reasonable advance notice of the impending termination and a reasonable opportunity to exercise his or her outstanding vested Options and SARs in accordance with their terms before the termination of such Award (except that in no case shall more than ten days' notice of the impending termination be required).

The Committee may adopt such valuation methodologies for outstanding Awards as it deems reasonable in the event of a cash or property settlement and, in the case of Options, SARs or similar rights, but without limitation on other methodologies, may base such settlement solely upon the excess if any of the per share amount payable upon or in respect of such event over the Exercise Price of the Award.

In any of the events referred to in this Section 12, the Committee may take such action contemplated by this Section 12 prior to such event (as opposed to on the occurrence of such event) to the extent that the Committee deems the action necessary to permit the Participant to realize the benefits intended to be conveyed with respect to the underlying Shares.

Without limiting the generality of Section 3, any good faith determination by the Committee pursuant to its authority under this Section 12 shall be conclusive and binding on all persons.

## SECTION 13. *LIMITATIONS ON RIGHTS.*

(a) Participant Rights. A Participant's rights, if any, in respect of or in connection with any Award are derived solely from the discretionary decision of the Company to permit the individual to participate in the Plan and to benefit from a discretionary Award. By accepting an Award under the Plan, a Participant expressly acknowledges that there is no obligation on the part of the Company to continue the Plan and/or grant any additional Awards. Any Award granted hereunder is not intended to be compensation of a continuing or recurring nature, or part of a Participant's normal or expected compensation, and in no way represents any portion of a Participant's salary, compensation, or other remuneration for purposes of pension benefits, severance, redundancy, resignation or any other purpose.

Neither the Plan nor any Award granted under the Plan shall be deemed to give any individual a right to remain an employee, consultant or director of the Company, a Parent, or any Subsidiary. The Company and its Parent and Subsidiaries reserve the right to terminate the service of any person at any time, and for any reason, subject to Applicable Laws, the Company's Articles of Incorporation and Bylaws and any applicable written employment agreement (if any), and such terminated person shall be deemed irrevocably to have waived any claim to damages or specific performance for breach of contract or dismissal, compensation for loss of office, tort or otherwise with respect to the Plan or any outstanding Award that is forfeited and/or is terminated by its terms or to any future Award.

(b) Shareholders' Rights. Except as provided in Section 9(f), a Participant shall have no dividend rights, voting rights or other rights as a shareholder with respect to any Shares covered by his or her Award prior to the issuance of such Shares (as evidenced by an appropriate entry on the books of the Company or a duly authorized transfer agent of the Company). No adjustment shall be made for cash dividends or other rights for which the record date is prior to the date when such Shares are issued, except as expressly provided in Sections 9(f) and 11.

(c) Regulatory Requirements. Any other provision of the Plan notwithstanding, the obligation of the Company to issue Shares or other securities under the Plan shall be subject to all Applicable Laws and such approval by any regulatory body as may be required. The Company reserves the right to restrict, in whole or in

1855. 81

part, the delivery of Shares or other securities pursuant to any Award prior to the satisfaction of all legal requirements relating to the issuance of such Shares or other securities, to their registration, qualification or listing or to an exemption from registration, qualification or listing. The person acquiring any securities under the Plan will, if requested by the Company or one of its Subsidiaries, provide such assurances and representations to the Company or one of its Subsidiaries as the Committee may deem necessary or desirable to assure compliance with all applicable legal and accounting requirements.

## SECTION 14. *WITHHOLDING TAXES.*

(a) General. A Participant shall make arrangements satisfactory to the Company for the satisfaction of any withholding tax obligations that arise in connection with his or her Award. The Company shall have the right to deduct from any amount payable under the Plan, including delivery of Shares to be made pursuant to an Award granted under the Plan, all federal, state, city, local or foreign taxes of any kind required by law to be withheld with respect to such payment and the Company may take any such actions as may be necessary in the opinion of the Company to satisfy all obligations for the payment of such taxes. The Company shall not be required to issue any Shares or make any cash payment under the Plan until such obligations are satisfied.

(b) Share Withholding. The Committee may (i) permit or require a Participant to satisfy all or part of his or her withholding or income tax obligations by having the Company withhold all or a portion of any Shares that otherwise would be issued to him or her, or (ii) permit a Participant to satisfy such obligations by Cashless Exercise or by surrendering all or a portion of any Shares that he or she previously acquired; provided that Shares withheld or previously owned Shares that are tendered shall not exceed the amount necessary to satisfy the Company's tax withholding obligations at the minimum statutory withholding rates, including, but not limited to, U.S. federal and state income taxes, payroll taxes and foreign taxes, if applicable, unless the previously owned Shares have been held for a minimum duration determined satisfactory as established by the Committee in its sole and absolute discretion. Any payment of taxes by assigning Shares to the Company may be subject to restrictions, including, but not limited to, any restrictions required by rules of the SEC. If any Shares are used to satisfy withholding taxes, such Shares shall be valued based on the Fair Market Value thereof on the date when the withholding for taxes is required to be made.

## SECTION 15. *DURATION AND AMENDMENTS; MISCELLANEOUS.*

(a) Term of the Plan. The Plan shall terminate on May 10, 2017 and may be terminated on any earlier date pursuant to this Section 15.

(b) Amendment or Termination of the Plan. The Board may, at any time, terminate or, from time to time, amend, modify or suspend the Plan, in whole or in part. No awards may be granted during any period that the Board suspends the Plan. To the extent then required by Applicable Laws or required under Sections 162, 422 or 424 of the Code to preserve the intended tax consequences of the Plan, or deemed necessary or advisable by the Board, any amendment to the Plan shall be subject to shareholder approval.

(c) Amendments to Awards. Without limiting any other express authority of the Committee under (but subject to) the express limits of the Plan, the Committee by agreement or resolution may waive conditions of or limitations on Awards to Participants that the Committee in the prior exercise of its discretion has imposed, without the consent of a Participant, and (subject to the requirements of Sections 3 and 15(d)) may make other changes to the terms and conditions of Awards. Any amendment or other action that would constitute a Re-Pricing of an Award is subject to the limitations set forth in Section 3(b).

(d) Limitations on Amendments to Plan and Awards. No amendment, suspension or termination of the Plan or amendment of any outstanding Award Agreement shall, without written consent of the Participant, affect in any manner materially adverse to the Participant any rights or benefits of the Participant or obligations of the Company under any Award granted under the Plan prior to the effective date of such change. Changes, settlements and other actions contemplated by Section 11 shall not be deemed to constitute changes or amendments for purposes of this Section 15.

A-14

1855.82

(e) Governing Law. The Plan shall be governed by, and construed in accordance with the laws of the State of California (except its choice-of-law provisions) and applicable U.S. Federal Laws.

(f) Severability. If a court of competent jurisdiction holds any provision invalid and unenforceable, the remaining provisions of the Plan shall continue in effect.

(g) Section Headings. Captions and headings are given to the sections and subsections of the Plan solely as a convenience to facilitate reference. Such headings shall not be deemed in any way material or relevant to the construction or interpretation of the Plan or any provision thereof.

(h) No Corporate Action Restriction. The existence of the Plan, the Award Agreements and the Awards granted hereunder shall not limit, affect or restrict in any way the right or power of the Board or the shareholders of the Company to make or authorize: (i) any adjustment, recapitalization, reorganization or other change in the capital structure or business of the Company or any Subsidiary, (ii) any merger, amalgamation, consolidation or change in the ownership of the Company or any Subsidiary, (iii) any issue of bonds, debentures, capital, preferred or prior preference stock ahead of or affecting the capital stock (or the rights thereof) of the Company or any Subsidiary, (iv) any dissolution or liquidation of the Company or any Subsidiary, (v) any sale or transfer of all or any part of the assets or business of the Company or any Subsidiary, or (vi) any other corporate act or proceeding by the Company or any Subsidiary. No Participant, beneficiary or any other person shall have any claim under any Award or Award agreement against any member of the Board or the Committee, or the Company or any employees, officers or agents of the Company or any Subsidiary, as a result of any such action.

(i) Stock-Based Awards in Substitution for Stock Options or Awards Granted by Other Company. Awards may be granted under the Plan in substitution for or in connection with an assumption of employee, director and/or consultant stock options, stock appreciation rights, restricted stock or other stock-based awards granted by other entities to persons who are or who will become Employees or Consultants in respect of the Company or one of its Subsidiaries in connection with a distribution, merger or other reorganization by or with the granting entity or an affiliated entity, or the acquisition by the Company or one of its Subsidiaries, directly or indirectly, of all or a substantial part of the stock or assets of the granting entity. The Awards so granted may reflect the original terms of the related award being assumed or substituted for and need not comply with other specific terms of the Plan, with Common Stock substituted for the securities covered by the original award and with the number of shares of Common Stock subject to such awards, as well as any exercise or purchase prices applicable to such awards, adjusted to account for differences in stock prices in connection with the transaction. Any shares that are delivered and any Awards that are granted by, or become obligations of, the Company, as a result of any such assumption or substitution in connection with any such transaction shall not be counted against the Share limit or other limits on the number of shares available for issuance under the Plan.

A-15

1855.83

. **ANNEX B**

## APPLE INC.

### 1997 DIRECTOR STOCK PLAN

On November 10, 2009, the Board adopted this amended and restated 1997 Director Stock Plan (formerly known as the 1997 Director Stock Option Plan and as renamed, the "Plan"), which shall govern all grants of Awards made after this amendment and restatement, and which shall become effective upon its approval by the Company's shareholders (the "Effective Date"). For the terms and conditions of the Plan applicable to Awards granted before the Effective Date, refer to the version of the Plan in effect as of the date such Award was granted.

1. *PURPOSES* . The purposes of the Plan are to retain the services of qualified individuals who are not employees of the Company to serve as members of the Board and to secure for the Company the benefits of the incentives inherent in increased Common Stock ownership by such individuals by granting such individuals Awards to purchase or acquire shares of Common Stock.

2. *ADMINISTRATION* . The Administrator will be responsible for administering the Plan. The Administrator will have authority to adopt such rules as it may deem appropriate to carry out the purposes of the Plan, and shall have authority to interpret and construe the provisions of the Plan and any agreements and notices under the Plan and to make determinations pursuant to any Plan provision. Each interpretation, determination or other action made or taken by the Administrator pursuant to the Plan shall be final and binding on all persons. The Administrator shall not be liable for any action or determination made in good faith, and shall be entitled to indemnification and reimbursement in the manner provided in the Company's Articles of Incorporation and Bylaws as such documents may be amended from time to time.

3. *SHARES AVAILABLE* .

(a) *SHARE LIMIT* . Subject to the provisions of Section 8 of the Plan, the maximum number of shares of Common Stock which may be issued under the Plan shall not exceed 1,600,000 shares (the "Share Limit"). Either authorized and unissued shares of Common Stock or treasury shares may be delivered pursuant to the Plan.

(b) *SHARE COUNT* . Shares issued pursuant to Restricted Stock Unit Awards will count against the Share Limit as two (2) shares for every one (1) share issued in connection with the Award. Shares issued pursuant to the exercise of Options will count against the Share Limit as one (1) share for every one (1) share to which such exercise relates. If Awards are settled in cash, the shares that would have been delivered had there been no cash settlement shall not be counted against the Share Limit. Except as provided in the next sentence, if Awards are forfeited or are terminated for any reason before vesting or being exercised, then the shares underlying such Awards shall again become available for Awards under the Plan; provided that any one (1) share subject to a Restricted Stock Unit Award that is forfeited or terminated shall be credited as two (2) shares when determining the number of shares that shall again become available for Awards under the Plan if upon grant, the shares underlying such forfeited or terminated Restricted Stock Unit Award were counted as two (2) shares against the Share Limit. Shares that are exchanged by a Non-Employee Director or withheld by the Company as full or partial payment in connection with any Award under the Plan, as well as any shares exchanged by a Non-Employee Director or withheld by the Company or one of its Subsidiaries to satisfy the tax withholding obligations related to any Award, shall not be available for subsequent Awards under the Plan.

4. *OPTIONS* . Options granted to Non-Employee Directors under the Plan shall be subject to the following provisions of this Section 4.

(a) *OPTION GRANTS* .

(i) *TRANSITION GRANTS* . On the date of the Annual Meeting following the Company's 2009 fiscal year, each Non-Employee Director who (1) has served as a member of the Board for at least three

B-1

1855.84

years as of the date of such Annual Meeting and (2) continues to serve as a member of the Board immediately following such Annual Meeting will be granted an Option (the date of grant of which shall be the date of such Annual Meeting) to purchase a number of shares of Common Stock determined by multiplying 10,000 by a fraction, the numerator of which shall be the number of days in the period commencing on the last anniversary of the date on which the Non-Employee Director was initially elected or appointed to the Board that occurs prior to the date of such Annual Meeting and ending on the date of such Annual Meeting and the denominator of which shall be 365. Each Non-Employee Director who (1) has served as a member of the Board for not more than three years as of the date of the Annual Meeting following the Company's 2009 fiscal year and (2) continues to serve as a member of the Board through and immediately following the date of the Annual Meeting following the third anniversary of the date on which the Non-Employee Director was initially appointed or elected to the Board (the "Third Anniversary") will be granted an Option (the date of grant of which shall be the date of the Annual Meeting following the Third Anniversary) to purchase a number of shares of Common Stock determined by multiplying 10,000 by a fraction, the numerator of which shall be the number of days in the period commencing on the last anniversary of the date on which the Non-Employee Director was initially appointed or elected to the Board that occurs prior to the date of the Annual Meeting following the Third Anniversary and ending on the date of such Annual Meeting and the denominator of which shall be 365.

(ii) *NO ADDITIONAL GRANTS* . Other than the Option grants contemplated by Section 4(a)(i), no Options shall be granted under the Plan unless and until the Board amends the Plan to provide for such Option grants in accordance with Section 10(b) below.

(b) *EXERCISE PRICE* . The per share exercise price of each Option shall be the Fair Market Value of a share of Common Stock as of the date of grant of the Option determined in accordance with the provisions of the Plan.

(c) *VESTING* . Options shall be fully vested and immediately exercisable on their date of grant.

(d) *TERM OF OPTIONS* .

(i) *TEN-YEAR TERM* . Each Option shall expire ten (10) years from its date of grant, subject to earlier termination as provided herein.

(ii) *EXERCISE FOLLOWING TERMINATION OF SERVICE DUE TO DEATH* . If a Non-Employee Director ceases to be a member of the Board by reason of such Non-Employee Director's death, the Options granted to such Non-Employee Director may be exercised by such Non-Employee Director's Beneficiary, but only to the extent the Option was exercisable at the time of the Non-Employee Director's death, at any time within three (3) years after the date of such termination of service, subject to the earlier expiration of such Options as provided for in Section 4(d)(i) above. At the end of such three-year period, the vested portion of the Option shall expire. The unvested portion of the Option shall expire on the date of the Non-Employee Director's death.

(iii) *TERMINATION OF OPTIONS IF A NON-EMPLOYEE DIRECTOR IS REMOVED FROM THE BOARD FOR CAUSE* . In the event a Non-Employee Director is removed from the Board for "cause," all Options granted to such Non-Employee Director (whether or not then vested and exercisable) shall immediately terminate and be of no further force and effect as of the effective date of such removal from the Board. Whether a Non- Employee Director is removed by the Board for "cause" shall be determined by the Board in accordance with the Bylaws of the Company.

(iv) *EXERCISE FOLLOWING OTHER TERMINATIONS OF SERVICE* . If a Non-Employee Director ceases to be a member of the Board for any reason other than death or removal from the Board for cause, the Options granted to such Non-Employee Director may be exercised by such Non-Employee Director, but only to the extent the Option was exercisable at the time of the Non-Employee Director's termination, at any time within ninety (90) days after the date of such

B-2

1855.85

termination of service, subject to the earlier expiration of such Options as provided for in Section 4(d)(i) above. At the end of such ninety-day period, the vested portion of the Option shall expire. The unvested portion of the Option shall expire on the date of the Non-Employee Director's termination of service with the Board.

(e) *TIME AND MANNER OF EXERCISE OF OPTIONS* .

(i) *NOTICE OF EXERCISE* . Subject to the other terms and conditions hereof, a Non-Employee Director may exercise any Option, to the extent such Option is vested, by giving written notice of exercise to the Company; PROVIDED, HOWEVER, that in no event shall an Option be exercisable for a fractional share. The date of exercise of an Option shall be the later of (A) the date on which the Company receives such written notice and (B) the date on which the conditions provided in Section 4(e)(ii) are satisfied.

(ii) *METHOD OF PAYMENT* . The consideration to be paid for the shares to be issued upon exercise of an Option may consist of (A) cash, (B) check, (C) other shares which have a Fair Market Value on the date of surrender equal to the aggregate exercise price of the shares as to which the Option shall be exercised, (D) delivery of a properly executed exercise notice together with irrevocable instructions to a broker to promptly deliver to the Company the amount of proceeds required to pay the exercise price, or (E) any combination of the foregoing methods of payment.

(iii) *SHAREHOLDER RIGHTS* . A Non-Employee Director shall have no rights as a shareholder with respect to any shares of Common Stock issuable upon exercise of an Option until a certificate evidencing such shares shall have been issued to the Non-Employee Director pursuant to Section 4(e)(iv), and no adjustment shall be made for dividends or distributions or other rights in respect of any share for which the record date is prior to the date upon which the Non-Employee Director shall become the holder of record thereof.

(iv) *ISSUANCE OF SHARES* . Subject to the foregoing conditions, as soon as is reasonably practicable after its receipt of a proper notice of exercise and payment of the exercise price of the Option for the number of shares with respect to which the Option is exercised, the Company shall deliver to the Non-Employee Director (or following the Non-Employee Director's death, the Beneficiary entitled to exercise the Option), at the principal office of the Company or at such other location as may be acceptable to the Company and the Non-Employee Director (or such Beneficiary), the appropriate number of shares of Common Stock issued in connection with such exercise (as evidenced by an appropriate entry on the books of the Company or a duly authorized transfer agent of the Company). Shares sold in connection with a "cashless exercise" described in clause D of Section 4(e)(ii) shall be delivered to the broker referred to therein in accordance with the procedures established by the Company from time to time.

5. *RESTRICTED STOCK UNITS* . Each Non-Employee Director shall receive grants of Restricted Stock Units under the Plan as follows:

(a) *ANNUAL GRANTS* . On the date of each Annual Meeting which occurs on or after the Effective Date and immediately following which a Non-Employee Director is serving on the Board, such Non-Employee Director shall be automatically granted (on the date of such Annual Meeting) an Award of a number of Restricted Stock Units determined by dividing (A) $200,000 by (B) the Fair Market Value of the Common Stock on the date of grant, such number to be rounded to the nearest whole number of Restricted Stock Units (each, an "Annual RSU Award"); provided, however, that a Non-Employee Director who is serving on the Board on the day prior to the Effective Date shall not be entitled to an Annual RSU Award on the date of a particular Annual Meeting unless the Non-Employee Director has served on the Board for at least three years as of the date of such Annual Meeting.

(b) *INITIAL GRANTS* . Each Non-Employee Director who first becomes a Non-Employee Director at any time after the Effective Date but other than on the date of an Annual Meeting shall be automatically granted, on the date he or she first becomes a Non-Employee Director, an Award of a number of Restricted

B-3

1855.86

Stock Units determined by multiplying (A) the quotient obtained by dividing $200,000 by the Fair Market Value of the Common Stock on the date of grant, by (B) a fraction, the numerator of which shall be the number of days remaining in the 365-day period following the most recent Annual Meeting, and the denominator of which shall be 365 (but in no event shall such fraction be greater than one (1)), such number to be rounded to the nearest whole number of Restricted Stock Units (each, an "Initial RSU Award"); provided, however, that a Non-Employee Director shall not be eligible to receive an Initial RSU Award if either (i) he or she was an employee of the Company or any of its Subsidiaries immediately prior to first becoming a Non-Employee Director, or (ii) he or she first becomes a Non-Employee Director at any time on or after February 1 following a particular fiscal year of the Company and prior to the date of the Annual Meeting following that fiscal year.

(c) *VESTING; TERMINATION OF SERVICE* . Each Annual RSU Award granted pursuant to Section 5(a) shall fully vest on the February 1 that occurs in the fiscal year of the Company following the fiscal year in which the Award was granted (the "Vesting Date"). Each Initial RSU Award granted pursuant to Section 5(b) shall fully vest on the Vesting Date established for the Annual RSU Awards granted in connection with the last Annual Meeting to occur prior to the grant date of such Initial RSU Award. If the Non-Employee Director ceases to serve as a member of the Board for any reason, the Non-Employee Director's Restricted Stock Units shall terminate to the extent such units have not become vested prior to the first date the Non-Employee Director is no longer a member of the Board, and the Non-Employee Director will have no rights with respect to, or in respect of, such terminated Restricted Stock Units.

(d) *PAYMENT OF RESTRICTED STOCK UNITS* . On or as soon as administratively practical following each vesting of Restricted Stock Units granted under the Plan (and in all events not later than two and one-half months after the applicable vesting date), the Company shall deliver to the Non-Employee Director a number of shares of Common Stock (as evidenced by an appropriate entry on the books of the Company or a duly authorized transfer agent of the Company) equal to the number of Restricted Stock Units that vest on the applicable vesting date, unless such Restricted Stock Units terminate prior to the given vesting date pursuant to Section 5(c). The Non-Employee Director shall have no further rights with respect to any Restricted Stock Units that are so paid.

(e) *SHAREHOLDER RIGHTS* . A Non-Employee Director shall have no rights as a shareholder of the Company, no dividend rights and no voting rights with respect to the Restricted Stock Units or any shares of Common Stock underlying or issuable in respect of such Restricted Stock Units until such shares of Common Stock have been issued to the Non-Employee Director pursuant to Section 5(d). No adjustment shall be made for dividends or distributions or other rights in respect of any share for which the record date is prior to the date upon which the Non-Employee Director shall become the holder of record thereof.

6. *RESTRICTIONS ON TRANSFER* . An Award may not be transferred, pledged, assigned, or otherwise disposed of, except by will or by the laws of descent and distribution; PROVIDED, HOWEVER, that an Award may be, with the approval of the Administrator, transferred to a Non-Employee Director's family members or to one or more trusts established in whole or in part for the benefit of one or more of such family members. An Option shall be exercisable, during the Non-Employee Director's lifetime, only by the Non-Employee Director or by the individual or entity to whom the Option has been transferred in accordance with the previous sentence. No assignment or transfer of an Award, or of the rights represented thereby, whether voluntary or involuntary, by operation of law or otherwise, except by will or the laws of descent and distribution, shall vest in the assignee or transferee any interest or right in the Award, but immediately upon any attempt to assign or transfer the Award the same shall terminate and be of no force or effect.

7. *DESIGNATION OF BENEFICIARY* .

(a) *BENEFICIARY DESIGNATIONS* . Each Non-Employee Director may designate a Beneficiary to exercise an Option or receive payment of an Award upon the Non-Employee Director's death by executing a Beneficiary Designation Form.

B-4

1855.87

(b) *CHANGE OF BENEFICIARY DESIGNATION* . A Non-Employee Director may change an earlier Beneficiary designation by executing a later Beneficiary Designation Form and delivering it to the Administrator. The execution of a Beneficiary Designation Form and its receipt by the Administrator will revoke and rescind any prior Beneficiary Designation Form.

## 8. *ADJUSTMENTS* .

(a) Subject to Section 9, upon (or, as may be necessary to effect the adjustment, immediately prior to): any reclassification, recapitalization, stock split (including a stock split in the form of a stock dividend) or reverse stock split; any merger, combination, consolidation, or other reorganization; any spin-off, split-up, or similar extraordinary dividend distribution in respect of the Common Stock; or any exchange of Common Stock or other securities of the Company, or any similar, unusual or extraordinary corporate transaction in respect of the Common Stock; then the Administrator shall equitably and proportionately adjust (1) the number and type of shares of Common Stock (or other securities) that thereafter may be made the subject of Awards (including the Share Limit), (2) the number, amount and type of shares of Common Stock (or other securities or property) subject to any outstanding Awards, (3) the exercise price of any outstanding Options, and/or (4) the securities, cash or other property deliverable upon exercise or payment of any outstanding Awards, in each case to the extent necessary to preserve (but not increase) the level of incentives intended by the Plan and the then-outstanding Awards. Any good faith determination by the Administrator as to whether an adjustment is required in the circumstances pursuant to this Section 8(a), and the extent and nature of any such adjustment, shall be conclusive and binding on all persons.

(b) It is intended that, if possible, any adjustments contemplated by Section 8(a) be made in a manner that satisfies applicable legal, tax (including, without limitation and as applicable in the circumstances, Section 409A of the Code) and accounting (so as to not trigger any charge to earnings with respect to such adjustment) requirements.

## 9. *CORPORATE TRANSACTIONS* .

(a) Upon the occurrence of any of the following: any merger, combination, consolidation, or other reorganization; any exchange of Common Stock or other securities of the Company; a sale of all or substantially all the business, stock or assets of the Company; a dissolution of the Company; or any other event in which the Company does not survive (or does not survive as a public company in respect of its Common Stock); then the Administrator may make provision for a cash payment in settlement of, or for the assumption, substitution or exchange of any or all outstanding Awards or the cash, securities or property deliverable to the holder of any or all outstanding Awards, based upon, to the extent relevant under the circumstances, the distribution or consideration payable to holders of the Common Stock upon or in respect of such event. Upon the occurrence of any event described in the preceding sentence, then, unless the Administrator has made a provision for the substitution, assumption, exchange or other continuation or settlement of the Award or the Award would otherwise continue in accordance with its terms in the circumstances, each Award shall terminate upon the related event; provided that the holders of outstanding Options shall be given reasonable advance notice of the impending termination and a reasonable opportunity to exercise their outstanding vested Options in accordance with their terms before the termination of such Options (except that in no case shall more than ten days' notice of the impending termination be required).

(b) The Administrator may adopt such valuation methodologies for outstanding Awards as it deems reasonable in the event of a cash or property settlement and, in the case of Options and without limitation on other methodologies, may base such settlement solely upon the excess (if any) of the per share amount payable upon or in respect of such event over the exercise price of the Option. In any of the events referred to in this Section 9, the Administrator may take such action contemplated by this Section 9 prior to such event (as opposed to on the occurrence of such event) to the extent that the Administrator deems the action necessary to permit the Non-Employee Director to realize the benefits intended to be conveyed with respect to the underlying shares. Without limiting the generality of Section 2, any good faith determination by the Administrator pursuant to its authority under this Section 9 shall be conclusive and binding on all persons.

B-5

1855. 8

10. *TERMINATION AND AMENDMENT OF THE PLAN* .

(a) *TERMINATION* . Unless earlier terminated by the Board, the Plan shall terminate on November 9, 2019. Following such date, no further grants of Awards shall be made pursuant to the Plan.

(b) *GENERAL POWER OF BOARD* . Notwithstanding anything herein to the contrary, the Board may at any time and from time to time terminate, modify, suspend or amend the Plan in whole or in part (including, without limitation, amend the Plan at any time and from time to time, without shareholder approval, to prospectively change the relative mixture of Options and Restricted Stock Units for the initial and annual Awards granted to Non-Employee Directors hereunder, the methodology for determining the number of shares of Common Stock to be subject to such Awards within the Plan's aggregate Share Limit pursuant to Section 3, and the other terms and conditions applicable to such Awards) or, subject to Sections 10(c) and 10(d), amend the terms of any outstanding Award; PROVIDED, HOWEVER, that no such termination, modification, suspension or amendment shall be effective without shareholder approval if such approval is required to comply with any applicable law or stock exchange rule; and PROVIDED FURTHER that the Board may not, without shareholder approval, increase the maximum number of shares issuable under the Plan except as provided in Section 8 above. For avoidance of doubt, the Board may, without shareholder approval, provide on a prospective basis for grants under the Plan to consist of Options only, Restricted Stock Unit Awards only, or a combination of Options and Restricted Stock Unit Awards on such terms and conditions, subject to the Share Limit of Section 3 and the other express limits of the Plan, as may be established by the Board.

(c) *WHEN NON-EMPLOYEE DIRECTORS' CONSENTS REQUIRED* . The Board may not alter, amend, suspend, or terminate the Plan or amend the terms of any outstanding Award without the consent of any Non-Employee Director to the extent that such action would adversely affect his or her rights with respect to Awards that have previously been granted.

(d) *NO REPRICING* . Notwithstanding any other provision herein or in any agreement evidencing any Option, in no case (except due to an adjustment contemplated by Section 8 or any repricing that may be approved by shareholders) shall any action be taken with respect to the Plan or any Option hereunder that would constitute a repricing (by amendment, substitution, cancellation and regrant, exchange or other means) of the per share exercise price of any Option.

11. *MISCELLANEOUS* .

(a) *NO RIGHT TO REELECTION* . Nothing in the Plan shall be deemed to create any obligation on the part of the Board to nominate any of its members for reelection by the Company's shareholders, nor confer upon any Non-Employee Director the right to remain a member of the Board for any period of time, or at any particular rate of compensation.

(b) *SECURITIES LAW RESTRICTIONS* . The Administrator may require each Non-Employee Director or any other person purchasing or acquiring shares of Common Stock pursuant to the Plan to agree with the Company in writing that such Non-Employee Director is acquiring the shares for investment and not with a view to the distribution thereof or provide such other assurances and representations to the Company as the Administrator may deem necessary or desirable to assure compliance with all applicable legal and accounting requirements. All certificates for shares of Common Stock delivered under the Plan shall be subject to such stock-transfer orders and other restrictions as the Administrator may deem advisable under the rules, regulations, and other requirements of the Securities and Exchange Commission or any exchange upon which the Common Stock is then listed, and any applicable federal or state securities law, and the Administrator may cause a legend or legends to be put on any such certificates to make appropriate reference to such restrictions. No shares of Common Stock shall be issued hereunder unless the Company shall have determined that such issuance is in compliance with, or pursuant to an exemption from, all applicable federal and state securities laws.

(c) *EXPENSES* . The costs and expenses of administering the Plan shall be borne by the Company.

B-6

1855.89

(d) *APPLICABLE LAW* . Except as to matters of federal law, the Plan and all actions taken thereunder shall be governed by and construed in accordance with the laws of the State of California without giving effect to conflicts of law principles.

(e) *AUTHORITY OF THE COMPANY AND SHAREHOLDERS* . The existence of the Plan shall not affect or restrict in any way the right or power of the Company or the shareholders of the Company to make or authorize any adjustment, recapitalization, reorganization or other change in the Company's capital structure or its business, any merger or consolidation of the Company, any issue of stock or of options, warrants or rights to purchase stock or of bonds, debentures, preferred or prior preference stocks whose rights are superior to or affect the Common Stock or the rights thereof or which are convertible into or exchangeable for Common Stock, or the dissolution or liquidation of the Company, or any sale or transfer of all or any part of its assets or business, or any other corporate act or proceeding, whether of a similar character or otherwise.

12. *DEFINITIONS* . Capitalized words not otherwise defined in the Plan have the meanings set forth below:

"ADMINISTRATOR" means the Board. The Board may delegate ministerial, non-discretionary functions to individuals who are officers or employees of the Company or any of its Subsidiaries or to third parties.

"ANNUAL MEETING" means the first annual meeting of the Company's shareholders at which members of the Board are elected following the applicable fiscal year of the Company or the applicable date, as the context may require. By way of example, the Annual Meeting following the Company's 2008 fiscal year occurred on February 25, 2009.

"ANNUAL RSU AWARD" means an Award of Restricted Stock Units granted to a Non-Employee Director pursuant to Section 5(a) of the Plan.

"AWARD" means an award of Options or Restricted Stock Units under the Plan.

"BENEFICIARY" or "BENEFICIARIES" means an individual or entity designated by a Non-Employee Director on a Beneficiary Designation Form to exercise Options or receive payment of Awards in the event of the Non-Employee Director's death; PROVIDED, HOWEVER, that, if no such individual or entity is designated or if no such designated individual is alive at the time of the Non-Employee Director's death, Beneficiary shall mean the Non-Employee Director's estate.

"BENEFICIARY DESIGNATION FORM" means a document, in a form approved by the Administrator to be used by Non-Employee Directors to name their respective Beneficiaries. No Beneficiary Designation Form shall be effective unless it is signed by the Non-Employee Director and received by the Administrator prior to the date of death of the Non-Employee Director.

"BOARD" means the Board of Directors of the Company.

"CODE" means the Internal Revenue Code of 1986, as amended, and the applicable rules and regulations promulgated thereunder.

"COMMON STOCK" means the common stock of the Company, no par value per share.

"COMPANY" means Apple Inc., a California corporation, or any successor to substantially all of its business.

"EFFECTIVE DATE" has the meaning given to such term in the preamble.

B-7

185590

"EXCHANGE ACT" means the Securities Exchange Act of 1934, as amended, and the applicable rules and regulations promulgated thereunder.

"FAIR MARKET VALUE" means, unless otherwise determined or provided by the Administrator in the circumstances, the last price (in regular trading) for a share of Common Stock as furnished by the National Association of Securities Dealers, Inc. (the "NASD") through the NASDAQ Global Market Reporting System (the "GLOBAL MARKET") for the date in question or, if no sales of Common Stock were reported by the NASD on the Global Market on that date, the last price (in regular trading) for a share of Common Stock as furnished by the NASD through the Global Market for the next preceding day on which sales of Common Stock were reported by the NASD. The Administrator may, however, provide with respect to one or more Awards that the Fair Market Value shall equal the last price for a share of Common Stock as furnished by the NASD through the Global Market on the last trading day preceding the date in question or the average of the high and low trading prices of a share of Common Stock as furnished by the NASD through the Global Market for the date in question or the most recent trading day. If the Common Stock is no longer listed or is no longer actively traded on the Global Market as of the applicable date, the Fair Market Value of the Common Stock shall be the value as reasonably determined by the Administrator for purposes of the Award in the circumstances. The Administrator also may adopt a different methodology for determining Fair Market Value with respect to one or more Awards if a different methodology is necessary or advisable to secure any intended favorable tax, legal or other treatment for the particular Award(s) (for example, and without limitation, the Administrator may provide that Fair Market Value for purposes of one or more Awards will be based on an average of closing prices (or the average of high and low daily trading prices) for a specified period preceding the relevant date).

"INITIAL RSU AWARD" means an Award of Restricted Stock Units granted to a Non-Employee Director pursuant to Section 5(b) of the Plan.

"NON-EMPLOYEE DIRECTOR" means a member of the Board who is not an employee of the Company or any of its Subsidiaries.

"OPTION" means an option to purchase shares of Common Stock awarded to a Non-Employee Director under the Plan.

"PLAN" has the meaning given to such term in the preamble.

"RESTRICTED STOCK UNIT" means the right to receive one share of Common Stock, subject to the terms and conditions hereof.

"SHARE LIMIT" shall have the meaning set forth in Section 3 of the Plan.

"SUBSIDIARY" means any corporation or other entity a majority of whose outstanding voting stock or voting power is beneficially owned directly or indirectly by the Company. An entity that attains the status of a Subsidiary on a date after the adoption of the Plan shall be considered a Subsidiary commencing as of such date.

"VESTING DATE" shall have the meaning set forth in Section 5(c) of the Plan.

1855.91

## Directions to the 2010 Annual Meeting of Shareholders



☆ = APPLE TOWN HALL

**FROM SAN JOSE:**
Take 280 northbound.
Take the De Anza Blvd. exit.
Make a left onto De Anza Blvd. (at signal).
Make a left onto Mariani Avenue.
Enter Infinite Loop Parking Lot at the end of Mariani Avenue.
Proceed to Building 4 (to Apple Town Hall).

**FROM SAN FRANCISCO:**
Take 280 southbound.
Take the De Anza Blvd. exit.
Make a right onto De Anza Blvd. (at signal).
Make a left onto Mariani Avenue.
Enter Infinite Loop Parking Lot at the end of Mariani Avenue.
Proceed to Building 4 (to Apple Town Hall).

Attendance at the 2010 Annual Meeting of Shareholders is limited to shareholders. Admission to the meeting will be on a first-come, first-served basis. In the interest of saving time and money, Apple Inc. has opted to provide the Annual Report on Form 10-K for the year ended September 26, 2009 in lieu of producing a glossy annual report.



# APPLE INC.





1855.92

**Apple Inc.**

**Admission Ticket**

C123456789

000004

MR A SAMPLE
DESIGNATION (IF ANY)
ADD 1
ADD 2
ADD 3
ADD 4
ADD 5
ADD 6

| 000000000.000000 ext | 000000000.000000 ext |
| 000000000.000000 ext | 000000000.000000 ext |
| 000000000.000000 ext | 000000000.000000 ext. |

**Electronic Voting Instructions**

**You can vote by Internet or telephone!**
**Available 24 hours a day, 7 days a week!**

Instead of mailing your proxy, you may choose one of the voting methods outlined below to vote your proxy.

VALIDATION DETAILS ARE LOCATED BELOW IN THE TITLE BAR.

Proxies submitted by the Internet or telephone must be received by 1:00 a.m., Central Time, on February 25, 2010.

**Vote by Internet**
• Log on to the Internet and go to www.investorvote.com/AAPL
• Follow the steps outlined on the secured website.

**Vote by telephone**
• Call toll free 1-800-652-VOTE (8683) within the USA, US territories & Canada any time on a touch tone telephone. There is **NO CHARGE** to you for the call.
• Follow the instructions provided by the recorded message.

Using a **black ink** pen, mark your votes with an **X** as shown in this example. Please do not write outside the designated areas.

[X]

---

**Annual Meeting Proxy Card**    123456    C0123456789    12345

▼ IF YOU HAVE NOT VOTED VIA THE INTERNET OR TELEPHONE, FOLD ALONG THE PERFORATION, DETACH AND RETURN THE BOTTOM PORTION IN THE ENCLOSED ENVELOPE. ▼

**A** Proposals — The Board of Directors recommends a vote FOR all the listed nominees and FOR Proposals 2, 3, 4 AND 5.

1. Election of Directors:

| | For | Withhold | | For | Withhold | | For | Withhold |
|---|---|---|---|---|---|---|---|---|
| 01 – William V. Campbell | ☐ | ☐ | 02 – Millard S. Drexler | ☐ | ☐ | 03 – Albert A. Gore, Jr. | ☐ | ☐ |
| 04 – Steven P. Jobs | ☐ | ☐ | 05 – Andrea Jung | ☐ | ☐ | 06 – Arthur D. Levinson, Ph.D. | ☐ | ☐ |
| 07 – Jerome B. York | ☐ | ☐ | | | | | | |

| | For | Against | Abstain | | For | Against | Abstain |
|---|---|---|---|---|---|---|---|
| 2. To approve amendments to the Apple Inc. 2003 Employee Stock Plan. | ☐ | ☐ | ☐ | 3. To approve amendments to the Apple Inc. 1997 Director Stock Option Plan. | ☐ | ☐ | ☐ |
| 4. To hold an advisory vote on executive compensation. | ☐ | ☐ | ☐ | 5. To ratify the appointment of Ernst & Young LLP as the Company's independent registered public accounting firm for fiscal year 2010. | ☐ | ☐ | ☐ |

**B** Shareholder Proposals — The Board of Directors recommends a vote AGAINST Proposals 6 and 7.

| | For | Against | Abstain | | For | Against | Abstain |
|---|---|---|---|---|---|---|---|
| 6. To consider a shareholder proposal entitled "Sustainability Report," if properly presented at the meeting. | ☐ | ☐ | ☐ | 7. To consider a shareholder proposal entitled "Amend Corporate Bylaws Establishing a Board Committee on Sustainability," if properly presented at the meeting. | ☐ | ☐ | ☐ |

**IF VOTING BY MAIL, YOU MUST COMPLETE SECTIONS A - D ON BOTH SIDES OF THIS CARD.**

C 1234567890    JNT

1UPX    0240761

MR A SAMPLE (THIS AREA IS SET UP TO ACCOMMODATE 140 CHARACTERS) MR A SAMPLE AND MR A SAMPLE AND MR A SAMPLE AND MR A SAMPLE AND MR A SAMPLE AND MR A SAMPLE AND MR A SAMPLE AND MR A SAMPLE AND

014NUB

1855.93



**Apple Inc.**
**2010 Annual Meeting of Shareholders**

**February 25, 2010**
**10:00 a.m. Pacific Standard Time**
**1 Infinite Loop, Building 4, Cupertino, California 95014**

**Upon arrival, please present this**
**admission ticket and photo identification**
**at the registration desk.**

## Directions:

**FROM SAN JOSE:**
Take 280 northbound.
Take the De Anza Blvd. exit.
Make a left onto De Anza Blvd. (at signal).
Make a left onto Mariani Avenue.
Enter Infinite Loop Parking Lot at the end
of Mariani Avenue.
Proceed to Building 4 (to Apple Town Hall).

**FROM SAN FRANCISCO:**
Take 280 southbound.
Take the De Anza Blvd. exit.
Make a right onto De Anza Blvd. (at signal).
Make a left onto Mariani Avenue.
Enter Infinite Loop Parking Lot at the end
of Mariani Avenue.
Proceed to Building 4 (to Apple Town Hall).



Attendance at the 2010 Annual Meeting of Shareholders is limited to
shareholders. Admission to the meeting will be on a first-come, first-served
basis. In the interest of saving time and money, Apple Inc. has opted to
provide the enclosed Annual Report on Form 10-K for the fiscal year ended
September 26, 2009 in lieu of producing a glossy annual report.

▼ IF YOU HAVE NOT VOTED VIA THE INTERNET OR TELEPHONE, FOLD ALONG THE PERFORATION, DETACH AND RETURN THE BOTTOM PORTION IN THE ENCLOSED ENVELOPE. ▼

**THIS PROXY IS SOLICITED ON BEHALF OF APPLE INC.**
**FOR THE 2010 ANNUAL MEETING OF SHAREHOLDERS TO BE HELD ON FEBRUARY 25, 2010**

The undersigned shareholder of Apple Inc., a California corporation, hereby acknowledges receipt of the Notice of 2010 Annual Meeting of Shareholders and Proxy Statement with respect to the 2010 Annual Meeting of Shareholders of Apple Inc. to be held at 1 Infinite Loop, Building 4, Cupertino, California 95014 on Thursday, February 25, 2010 at 10:00 a.m. Pacific Standard Time, and hereby appoints Peter Oppenheimer and Bruce Sewell, and each of them, proxies and attorneys-in-fact, each with power of substitution and revocation, and each with all powers that the undersigned would possess if personally present, to vote the Apple Inc. Common Stock of the undersigned at such meeting and any postponement(s) or adjournment(s) of such meeting, as set forth on the reverse side and in their discretion upon any other business that may properly come before the meeting (and any such postponement(s) or adjournment(s)).

**THIS PROXY WILL BE VOTED AS SPECIFIED OR, IF NO CHOICE IS SPECIFIED, FOR THE ELECTION OF THE NOMINEES, FOR PROPOSALS 2, 3, 4 AND 5, AND AGAINST PROPOSALS 6 AND 7, AND AS SAID PROXIES DEEM ADVISABLE ON SUCH OTHER MATTERS AS MAY PROPERLY COME BEFORE THE MEETING AND ANY POSTPONEMENT(S) OR ADJOURNMENT(S) THEREOF.**

PLEASE VOTE, SIGN, DATE AND RETURN THIS PROXY CARD PROMPTLY USING THE ENCLOSED ENVELOPE OR VOTE THROUGH THE TELEPHONE OR BY THE INTERNET.

If you vote by telephone or the Internet, please DO NOT mail back this proxy card. THANK YOU FOR YOUR VOTE.

**C** **Non-Voting Items**

Change of Address — Please print new address below.

I Consent

Until contrary notice to Apple Inc., I consent to access all
future notices of annual meetings, proxy statements and
annual reports issued by Apple Inc. over the Internet.

☐

**D** **Authorized Signatures — This section must be completed for your vote to be counted. — Date and Sign Below**

NOTE: Please sign your name(s) EXACTLY as your name(s) appear(s) on this proxy. All joint holders must sign. When signing as attorney, trustee, executor, administrator, guardian or corporate officer, please provide your FULL title.

Date (mm/dd/yyyy) — Please print date below.

Signature 1 — Please keep signature within the box.

Signature 2 — Please keep signature within the box.

/        /

**IF VOTING BY MAIL, YOU MUST COMPLETE SECTIONS A - D ON BOTH SIDES OF THIS CARD.**

# Exhibit B

1855.95



## Base Salary Structures



Apple Need to Know Confidential
Effective July 15, 2008

1855. 94

CONFIDENTIAL - ATTORNEYS' EYES ONLY

231APPLE00928



Apple Need to Know Confidential
Effective July 15, 2008

1855.97

CONFIDENTIAL - ATTORNEYS' EYES ONLY

231APPLE009283

# Exhibit C

1855.91

231APPLE095044

# Total Rewards Planning
# FY07

September 2006

L855.99

CONFIDENTIAL - ATTORNEYS' EYES ONLY

# Total Rewards Planning
## Agenda

- One

- Merit

- Below-Director Bonus

- Annual Stock Grant

- Total Compensation

- Employee Communication

Apple Confidential

Wednesday, June 13, 2012



CONFIDENTIAL - ATTORNEYS' EYES ONLY

231APPLE095045

# Total Rewards Planning
One

**One planning event, One point in time, One conversation**

CEO and ET requested total compensation be reviewed and communicated with performance reviews

· Base salary, bonuses, and long-term stock "hook" in a balanced approach

**Strategy is key**

Compensation provides market data, budgets, guidelines, deadlines, and assistance

**Execution is key**

Division HR plans and outlines approach with ET, execute strategy with Line Management
· Present organization's compensation overview, highlight potential areas for focus
· Review budgets, move and re-allocate as appropriate
· Determine who or which levels will plan for each compensation element
· Include actions such as promotions, market adjustments, and peer adjustments if applicable
· Validate allocation against budget and strategy
· Facilitate implementation and employee communication

Apple Confidential

Wednesday, June 13, 2012

CONFIDENTIAL - ATTORNEYS' EYES ONLY

231APPLE095046

# Total Rewards Planning
Target Participation



Types and levels of rewards send a strong message, both direct and indirect, plan well and know how it will be received / perceived

Apple Confidential

Wednesday, June 13, 2012

CONFIDENTIAL - ATTORNEYS' EYES ONLY

231APPLE095047

# Total Rewards Planning

There are various strategies that can be employed, depending on business objectives

Differentiate by performance level

- █████████████████████████████████████████████████████████
████████████████████
- █████████████████████████████████████████████████████████
- █████████████████████████

Differentiate strategy by reward type

- █████████████████████████████████████████████████████ ██
- █████████████████████████████████████████████████████████
- ██████████████████████████████████████████████
██████████████████████████████████████████████████

Apple Confidential

Wednesday, June 13, 2012

CONFIDENTIAL - ATTORNEYS' EYES ONLY

# Total Rewards Planning

Who's eligible for total rewards planning . . . all employees except:



Apple Confidential

Wednesday, June 13, 2012

CONFIDENTIAL - ATTORNEYS' EYES ONLY

# Total Rewards Planning
## Merit

Merit represents a salary increase with link between pay and performance, is also used to keep employees in line with cost of labor movement in each market
- Merit may not be primary differentiating tool

**Considerations**
- Link back to overall performance
- Make informed decisions based on peer placement
- Make informed decisions based on competitive market information
- Reward fairly and consistently

**Resources**
-
-
-
  -

Apple Confidential

Wednesday, June 13, 2012



CONFIDENTIAL - ATTORNEYS' EYES ONLY