KEKER & VAN NEST LLP
ROBERT A. VAN NEST - # 84065
rvannest@kvn.com
DANIEL PURCELL - # 191424
dpurcell@kvn.com
EUGENE M. PAIGE - # 202849
epaige@kvn.com
JUSTINA SESSIONS - # 270914
jsessions@kvn.com
CODY S. HARRIS - # 255302
charris@kvn.com
633 Battery Street
San Francisco, CA 94111-1809
Telephone:    415 391 5400
Facsimile:    415 397 7188

Attorneys for Defendant
GOOGLE Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE

| | |
|---|---|
| IN RE:  HIGH-TECH EMPLOYEE ANTITRUST LITIGATION<br><br>THIS DOCUMENT RELATES TO:<br><br>ALL ACTIONS | Case No. 5:11-cv-2509-LHK<br><br>**DECLARATION OF JUSTINA K. SESSIONS IN SUPPORT OF DEFENDANTS' JOINT MOTIONS IN LIMINE** |

815968.01

I, JUSTINA K. SESSIONS, declare and say that:

1.      I am an attorney licensed to practice law in the State of California and am an associate with the law firm of Keker & Van Nest LLP, located at 633 Battery Street, San Francisco, California 94111, counsel for Defendant Google Inc. in the above-captioned action.  I am duly admitted to practice law before this Court.

2.      Attached hereto as **Exhibit A** is a true and correct copy of the Order dated May 31, 2012 in *Apple Inc. v. Motorola Inc.* No. 11-cv-08540 (Dkt. 980) (N.D. Ill. May 31, 2012).

3.      Attached hereto as **Exhibit B** is a true and correct copy of an excerpt from the transcript of the May 24, 2012 hearing in *Apple Inc. v. Motorola Inc.* No. 11-cv-08540 (Dkt. 1048) (N.D. Ill. May 24, 2012)

4.      Attached hereto as **Exhibit C** is a true and correct copy of the Minute Order and Case Management Order dated July 19, 2012 in *Apple Inc. v. Samsung Elecs. Co.*, No. C-11-01846 LHK (Dkt. 1267) (N.D. Cal. July 19, 2012).

5.      Attached hereto as **Exhibit D** is a true and correct copy of an excerpt from the transcript of the July 18, 2012 hearing in *Apple Inc. v. Samsung Elecs. Co.*, No. C-11-01846 LHK (Dkt. 1272) (N.D. Cal. July 19, 2012).

6.      Attached hereto as **Exhibit E** is a true and correct copy of the Order on Parties' Motions in Limine dated May 7, 2008 in *KAAP Industries v. Burns & McDonnell Engineering Co.*, No. 06-cv-00417-LJO-GSA (Dkt. 64) (E.D. Cal. May 7, 2008).

7.      Attached hereto as **Exhibit F** is a true and correct copy of excerpts from the Deposition of Edward E. Leamer.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct and that this declaration was executed in San Francisco, California, on April 10, 2014.


                                    */s/ Justina K. Sessions*
                                    JUSTINA K. SESSIONS

1

815968.01

# EXHIBIT A

# UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

_____

| | | |
|---|---|---|
| APPLE INC. and NeXT SOFTWARE | ) | |
| INC. (f/k/a NeXT COMPUTER, INC.), | ) | |
| | ) | |
| _Plaintiffs_, | ) | No. 1:11-cv-08540 |
| | ) | |
| v. | ) | |
| | ) | Judge Richard A. Posner. |
| MOTOROLA, INC. and MOTOROLA | ) | |
| MOBILITY, INC., | ) | |
| | ) | |
| _Defendants_. | ) | |

## ORDER OF MAY 31, 2012

On May 15, the parties filed motions in limine related to the liability trials for Apple's patents ('002, '263, '647, '949) and Motorola's patents ('559 and '898). On May 21, the parties also submitted joint memoranda outlining their objections to those exhibits that will be included in the binders to be given to the jury in the two liability trials.

I will now rule on the motions in limine and jury binder exhibit objections related to the liability trial on Apple's patents. The parties shall remove exhibits from the binders in accordance with my rulings. Moreover, all exhibits with respect to which I sustain objections (whether they are my own sua sponte objections or the parties') will be stricken from the record unless the exhibit is admissible for another purpose. A similar ruling for the liability trial on Motorola's patents will be forthcoming.

## Motions in Limine
## Apple's motion in limine no. 1 to preclude argument or evidence not included in Motorola's expert reports or answers to interrogatories. [dkt 866]

Apple's motion is unobjectionable as a general principle, and granted as such. (This applies _mutatis mutandis_ to limit Apple's argument and evidence to argument and evidence properly disclosed beforehand as well). But the parties disagree about whether four particular Motorola arguments have been sufficiently disclosed to be allowed in.

No. 1:11-cv-08540                                                                                    2

First, regarding the '949, Motorola's expert Dezmelyk disclosed in the claim charts attached to his expert report all seven of the items of prior art whose combination Apple complains about. They will not be excluded.

Second, regarding the '647, Motorola may not refer to the Sidekick handbook (exhibit MX-50) as invalidating prior art. Motorola's expert Dr. Clark has not opined on whether the handbook discloses "linking actions to the detected structures" under the court's construction of the term, so Dr. Clark's opinion that the Sidekick handbook anticipates '647—an opinion premised on Apple's construction of the term, which I rejected, is irrelevant. Apple will not be permitted to broaden the interpretation of that term sufficiently to render Dr. Clark's validity opinion concerning the Sidekick handbook relevant. But Apple's expert Mowry states that "prior to the invention of the '647 Patent, the user would need to visually search in files or documents" and "upon finding a useful piece of information, the user still had to copy-and-paste this information into whatever field or application the user wished to in order to use the information." And Dr. Clark has offered the Sidekick in rebuttal as prior art that contradicts assertions of the novelty of the '647. Dr. Clark may refer to the Sidekick handbook to establish the state of the technology at the time of the '647 invention to rebut the quoted opinion of Apple's expert Mowry. Therefore, the handbook is not excluded, but may not be used in Motorola's invalidity case in chief.

Third, also regarding the '647 patent, Motorola may not deny that the Apple devices lack an "action processor," but may offer Dr. Clark's opinion on whether the processor in the Apple devices performs the "linked actions" described in claim 1 of the '647.

Fourth, regarding the '002 patent, Motorola may in rebuttal to Apple's infringement arguments direct the jury's attention to application programming windows created by various programs preloaded on the devices at issue, including the FM radio player specifically mentioned by Apple in this motion. I reject Apple's argument that the applications that Motorola may intend to use in rebuttal were insufficiently disclosed and would unfairly prejudice Apple. Apple's expert had access to the accused devices and has opined that *none* of the layers appearing above the notification panel are application programming windows, which implies that he had considered all applications preloaded on the accused devices (though this opinion appears in Snoeren's March 22, 2012 report, not his March 1, 2012 report).

No. 1:11-cv-08540                                                                          3

**Apple's motion in limine no. 2 concerning Motorola's incorrect analysis of the law of obviousness under 35 U.S.C. § 103 [dkt. 867]**

An invention cannot be patented "if the differences between the subject matter sought to be patented and the prior art are such that the subject matter *as a whole* would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains." 35 U.S.C. § 103(a) (emphasis added). Since obviousness precludes a claim from being patented only if the claim as a whole was obvious at the time of invention, a claim that includes elements well-known at the time of invention, or even a claim composed solely of such elements, is nonetheless patentable as long as the *combination* of those elements described by the claim was not obvious. Apple asks me to forbid Motorola to assert or imply the contrary. Certainly Motorola will not be permitted to assert or imply that. But Apple's motion misconstrues the arguments that Motorola apparently wants to make. As indicated by the deposition questions asked by Motorola that Apple quotes in its motion, and by Motorola's opposition to Apple's motion [dkt. 929], Motorola does not seek to argue that a claim is invalid as obvious merely because it includes elements that were not "inventive" taken alone. Rather, Motorola asked at deposition (and presumably will ask at trial) whether certain elements are or are not inventive because to show obviousness it must demonstrate that none of the elements taken alone is inventive *and* that their combination is not inventive. Establishing that a given individual element—such as for example the "tap for next item" heuristic in claim 1 of Apple's '949 patent—is not inventive is therefore directly relevant to Motorola's burden of proving obviousness.

**Apple's motion in limine no. 3 to exclude certain documents not disclosed in Motorola's notice of prior art [dkt 868]**

Apple's motion to exclude various Motorola exhibits as undisclosed prior art is denied. Several of the exhibits—MX-27, 29, 30, 62, and 69—relate to prior art references that Motorola has disclosed (VCOS and the Perspective system).  Contrary to Apple's contentions, these exhibits are not themselves prior art—the jury may not rely on them to invalidate Apple's patents; but they are nevertheless relevant to provide context for Motorola's disclosed prior art. Assuming that Motorola lays a proper foundation at trial, I will permit Motorola to introduce these documents.

Apple also challenges MX-1, 3, 4, 8, 83, 84, and 86 as improper prior art or alternatively as being irrelevant. Motorola counters that it's not introducing these exhibits as invalidating references, but rather to show the "state of the art" at time Apple's patents were invented. They are indeed admissible for this limited purpose. If they can't be

No. 1:11-cv-08540                                                                                           4

used to invalidate, then they're not prior art that Motorola needed to disclose; and they are relevant for background and context—to help the jury adopt the mindset of one skilled in the art at the time of invention.

Finally, Motorola's challenge to MX-14 and MX-65 is moot; Apple has voluntarily withdrawn those exhibits.

**Apple's motion in limine no. 4 to exclude certain declarations as hearsay or improper expert testimony. [dkt. 869]**

Apple's motion is denied in part and granted in part.

Motorola may introduce Dr. Cohen's deposition taken in the 710 ITC investigation (MX-34, MX-58) to refresh her memory. It is admissible as a recorded recollection, Fed. R. Evid. 803(5), and is subject to the limitations of that hearsay exception.

Motorola may not rely on testimony of Dr. Ellett, a librarian, to establish the date of public availability for the Koved prior art reference. Determining that date requires specialized knowledge, and Motorola should have submitted Dr. Ellett's declaration pursuant to the expert report schedule. Dr. Ellett's declaration (MX-35) is therefore excluded.

**Apple's motion in limine no. 5 to exclude under Fed. R. Evid. 403 all evidence concerning Jefferson Han and the Han demonstration. [dkt. 881]**

Apple's motion is denied. Since Motorola must establish that claim 1 as a whole was obvious, 35 U.S.C. § 103(a), and Han's February 2006 demonstration (MX-85) of a multi-touch computer interface is relevant to the obviousness of many elements in claim 1 even if it doesn't disclose any heuristics, the demonstration is probative of relevant issues in the case. Apple hasn't stipulated that all elements of claim 1 other than the heuristics were obvious at the time of invention. Therefore the Han demonstration and the exhibits related to it (MX-81, 82, 87, 88, 90, 94, 98, 104, 112–19) will not be excluded on this basis.

Apple's motion to exclude source code produced by Mr. Han (MX-91) is also denied. Han testified in his deposition (which I will consider since offered against Apple, despite Apple's improper interference with the deposition as described in my April 21 order) that the source code was used in Han's device as of January 2006, and an "equivalent" version was used in the device during the February 2006 demonstration; both events predate the claimed priority date of the '949 and are probative of the same obviousness questions addressed by the Han demonstration itself.

No. 1:11-cv-08540                                                                                5

**Apple's motion in limine no. 6 to exclude evidence of Apple's attempts to recruit Jefferson Han. [dkt. 870]**

Apple's motion is granted. Apple's attempts to recruit Han are not directly indicative of its copying Han's technology into its devices, and any circumstantial relevance is outweighed by the risk of juror confusion and unnecessary complication of the '949 validity issues. All mention of Apple's recruitment of Han must be eliminated from Motorola's exhibits (MX-82, 89, 92, 93, 95–97, 99, 100–03, 105, 106, 108–11) pursuant to Fed. R. Evid. 403.

Apple contends in its joint memorandum that MX-94 and MX-98 fall within this motion, but it has not explained how either email relates to Han's recruitment, and the relationship is not obvious from the face of either email. Motorola needn't modify or omit these exhibits to comply with my ruling.

**Apple's motion in limine no. 7 to exclude evidence concerning any alleged ability, cost, and effort to design around Apple's asserted patents [dkt 880]**

Apple asks me to preclude Motorola from introducing evidence at the liability trial concerning any alleged design-arounds to Apple's inventions. The ease or difficulty of designing around a patented invention is most obviously relevant to the issue of damages, which will be tried (if at all) in a separate trial after the liability trial. And I won't allow either party to allude to alleged design-arounds of the other party's patented inventions merely to imply to the jury that those inventions aren't particularly impressive; I won't let the parties turn the trials into popularity contests.

But it is possible that design-arounds could be relevant to liability. For instance, if Motorola argues that Apple's patents are invalid because obvious, and Apple responds by asserting so-called "secondary considerations" such as commercial success supposedly attributable to the patented invention or the failure of competitors to find a way of performing the functionality performed by the patented invention, then the availability of alternatives to the patented invention becomes relevant; and an invent-around is by definition an alternative.

If Motorola seeks to introduce irrelevant evidence on this point or any other, Apple may object at that time. But this motion of Apple's is too broad, and I deny it.

**Apple's motion in limine no. 8 to exclude evidence or argument regarding third-party applications not preinstalled in the accused products [dkt 871]**

Apple asks me to bar Motorola from introducing evidence of third-party application programs that when installed on its accused devices are capable of generating windows that partially obstruct the devices' notification window. The pertinence of all this to the litigation is that Apple's '002 patent claims a notification window (like the notification bar at the top or bottom of a computer screen, and roughly analogous to a car's dashboard), one important element of which is that it can't be partially obstructed by windows generated by application programs. Such partial obstruction might be irritating or inconvenient to users who want an unobstructed view of the system information displayed by the notification window. If Motorola's devices' notification window doesn't have this feature of not being partially obstructed by windows generated by application programs, then Apple cannot show that the notification window infringes its patent.

Apple's argument, derived from my April 13, 2012 order, is that Motorola cannot avoid a finding of infringement by showing that application programs, created by third parties, that consumers can add to its devices are able to generate windows that partially obstruct the notification window: if the device is infringing as shipped, then the existence of third-party modifications that remove the infringing feature (the "non-obstructability" feature) doesn't save the infringer.

Apple is correct. One feature of the patented invention is the non-obstructability feature. If the accused devices have that feature (a question that the jury will resolve), and if they meet every other element of the asserted claim, then they are infringing even if the patented feature can be deactivated, whether by the manufacturer, the user, or a third-party developer. In my April 13 order I gave the example of a car made and sold with an antilock brake system that is alleged to infringe a patent on brakes that don't lock up the vehicle's wheels when applied. Suppose that the vehicle is made and sold with the infringing brake system but also comes with a switch on the dashboard that allows the driver to turn off the feature. That switch does not render the car noninfringing; nor can Motorola avoid infringement by showing that it designed its devices so as to make it possible for third parties to deactivate the non-obstructability feature by writing programs that can partially obstruct the notification window.

Motorola points out, correctly, that my April 13 order merely denied summary judgment to Motorola; Apple had not even moved for summary judgment. But the question I resolved in that order—whether a device that includes a patented functionality can avoid a finding of infringement if it was designed so that the patented function-

ality can be turned off—was a pure question of law, and I will not permit Motorola to re-argue that question to the jury. So the third-party applications Apple wants me to bar Motorola from bringing up at trial could not be the basis for a decision on infringement—they're irrelevant to that issue. But they could prejudice Apple by confusing the jury, which might have difficulty in a two-week, four-patent trial keeping straight the distinction between third-party programs and programs preinstalled by Motorola and shipped on its devices. So I grant Apple's motion: on the '002 patent, Motorola may not bring in evidence or argument based on programs that don't ship on its products.

But I distinguish between those third-party programs and the program that was written by Motorola's expert witness Dr. Cooper for purposes of this litigation. Cooper was able to write an application program that generates windows that partially obstruct the notification window; Apple also wants me to bar Motorola from introducing testimony or argument related to that program. Like the third-party applications, Cooper's program is irrelevant to infringement. But Motorola, in its opposition to Apple's motion (dkt 935), disclaims any reliance on the program to show noninfringement. Rather it argues that the program might help to explain the issues for the jury. Motorola's description of how the program would be relevant for this purpose is far from pellucid, but it would be premature for me to rule on it at this point. If Motorola does introduce the program, or argument or testimony based on it, and if it is not relevant to the issues at trial, Apple may object at that time.

So Apple's motion is granted except as to Cooper's program.

### Apple's motion in limine no. 9 to exclude hearsay or evidence that cannot be authenticated [dkt 872]

Apple asks me to exclude various Motorola exhibits. The following Apple objections are granted:

**MX-81**: This blog post by David Pogue purports to quote Steve Jobs. The post is an out-of-court statement by Pogue that recounts yet another out-of-court statement by Jobs. It is hearsay within hearsay, and so Motorola must point to an exception for each layer of hearsay if it is to be admitted. Fed. R. Evid. 805. Jobs is a party opponent, so his statement is not actually hearsay. Fed. R. Evid. 801(d)(2). But Motorola hasn't pointed to an exception that permits admission of Pogue's out-of-court statement, which is being offered for the truth of the matter asserted: that he asked Jobs about Jefferson Han's work and this is how Jobs replied. The blog post is inadmissible hearsay.

**MX-82**: Apple's hearsay objection is granted. To the extent this blog post describes statements by Jefferson Han, it is inadmissible as hearsay. The author's reaction to the

No. 1:11-cv-08540                                                                    8

Steve Jobs demonstration is likewise inadmissible hearsay. It's being offered for the truth of the matter asserted—that when tech-savvy audience members saw Jobs demonstrating the iPhone at Macworld Expo, it reminded them of Han's multi-touch demonstration—and, because it includes "calculated narration." To explain, a statement doesn't qualify as a present-sense impression if the speaker had a chance to think about what to say before making the utterance, so that the statement doesn't have the (perceived) indicia of reliability that underlies the present-sense impression exception. The distinction is between "calculated interpretations of events [and] near simultaneous perceptions." *United States v. Woods*, 301 F.3d 556, 562 (7th Cir. 2002) ("The calculated narration consideration is based on the rule's requirement that the statement be 'made *while* the declarant was perceiving the event'. Fed. R. Evid. 803(1) (emphasis added). See *Cody v. Harris*, 409 F.3d 853, 860 (7th Cir. 2005).

**MX-117**: Apple's objection to this email chain between Jefferson Han and Bill Buxton is granted. Buxton's email asserts that Apple lawyers had called him, and their "intent was clearly to get information that would enable them to modify and tweak the claims of their provisional patent applications" for the '949. Motorola is offering this exhibit for the truth of what Buxton asserts—that Apple was worried about the '949 being anticipated by Han's multi-touch work. Motorola fails to point to a relevant hearsay exception, so this exhibit must be excluded.

**MX-296 and MX-298**: Motorola may not introduce Apple's claim construction brief or excerpts from the *Markman* hearing transcript. Attorney argument is not admissible evidence. The cases upon which Motorola relies do not involve an attorney's statements to the court. I grant Motorola's objections to these exhibits.

And the following objections are overruled:

**MX-11, 26, 28, and 31**: Apple's authentication and hearsay objections are overruled. Apple's authentication argument is belied by the parties' stipulation regarding third-party publications produced by the parties in discovery. I've already overruled its hearsay objections to the accuracy of the dates listed on the documents (in my order of May 25).

**MX-19 and MX-333**: Apple's hearsay objections are overruled. John Lynch and Thomas Bonura were designated as 30(b)(6) corporate representatives, so Lynch's ITC testimony and Bonura's ITC deposition are not hearsay. Fed. R. Evid. 801(d)(2)(C); cf. Fed. R. Civ. P. 32(a)(3).

**MX-285, 295, 308, and 309**: These exhibits are excerpts from expert reports or expert declarations. If introduced as direct evidence, they would be hearsay. But Motorola

No. 1:11-cv-08540                                                                           9

plans to use them for impeachment purposes only, which is permissible, and won't be submitting these exhibits to the jury. Apple's objections are overruled.

   Apple has voluntarily withdrawn **MX-68**.


**Apple's motion in limine no. 10 to exclude testimony and evidence on the next-item heuristic [dkt 873]**

   Apple asks me to forbid Motorola to present evidence or argument regarding the "tap for next item" heuristic of its '949 patent based on either the Westerman dissertation or the Han presentation at the 2006 TED conference in Monterey.

   According to my claims construction, Apple's patent covers only heuristics for performing the "next item" function—that is, moving from one item in a set on a computer to the next item, as when flipping through photographs in the iPhone's photo album application—that perform the function when the user taps on the right side of the screen; and it does not cover heuristics that perform the function by having the user tap directly on the next item itself (which is like clicking on an icon to open the associated program), even if that next item is located on the right side of the screen. Apple had argued that tapping directly on the next item to switch to it *is* covered, and Motorola's expert witness had pointed to the Westerman and Han references as prior art that contained the same heuristic under that interpretation. Since I've now rejected that interpretation, Apple wants me to forbid Motorola to bring up those references with regard to the "tap for next item" heuristic.

   Motorola acknowledges that the references do not disclose the patented heuristic as I've interpreted it, but argues that the references are still relevant because they show that the "next item" function is present in those references (though it's performed by a method different than the method claimed by Apple's '949 patent), and so they relate to obviousness by showing that one skilled in the art during the pertinent time-frame might have wanted to include a next-item function and so might have needed to come up with a heuristic for performing that function. (A "heuristic" in this context is a set of instructions for the computer to perform a given function, such as the next-item function, upon receiving certain input from the user, such as a tap on the right side of the screen or on the graphical representation of the next item itself.)

   Motorola's argument is persuasive. Apple's motion is denied.


**Apple's motion in limine no. 11 [dkt 874] was granted in my May 25, 2012 order.**

**Motorola's omnibus motion in limine [dkt 876]**

This motion contains several discrete and unrelated motions:

1. Motorola's motion to preclude reference to prior ITC litigations involving the '263 and '647 patents (and to which Motorola was not a party) is granted. The ITC's determinations are irrelevant and likely to prejudice the jury. It bears noting that in my May 25 order I granted Apple's motion in limine no. 11, which among other things sought to preclude Motorola from discussing related litigation involving Apple's '002 patent. In its own motion Apple referred to this unrelated litigation as an "irrelevant matter," yet here opposes Motorola's argument that the ITC litigation is irrelevant. Surely that cannot be.

2. Motorola's motion to preclude Apple from referring to '949 as "the Jobs patent" is granted in accordance with my May 25 order.

3. Motorola's motion to preclude documents relating to Apple's Zephr project—AX-116 and AX-117—is denied. Apple may introduce these documents in response to suggestions by Motorola that Apple copied Jefferson Han's demonstration. They are certainly relevant, and Motorola's argument that they are prejudicial is based on the premise that Apple will use them to try to argue for an earlier conception date for the '949 patent—a purpose that Apple has disclaimed.

4. Motorola's motion to exclude images from AX-27 of products that don't come pre-installed with Kindle Reader, as well as any evidence about such products, is moot per Apple's agreement.

5. Apple has voluntarily withdrawn AX-30, 31, 122, 123, and 127, and agreed to substitute the official public source code in place of the current AX-34 and AX-35, mooting Motorola's motion to preclude introduction of third-party technical documents regarding the '002 patent.

6. Motorola asks me to preclude introduction of screenshots (some with annotations) from its various expert reports. These photographs may be used as demonstrative exhibits, but not as direct evidence of infringement (and anyway they would be hearsay). AX-27, 115, and 136 are therefore excluded. AX-115, a summary of source code in diagram form prepared by Apple expert Dr. Mowry, is admissible under Fed. R. Evid. 1006 (summaries of voluminous writings used to prove their content).

No. 1:11-cv-08540                                                                                 11

**Motorola's motion in limine to preclude Apple's '263 expert from testifying about alleged functionality in Motorola's accused products not contained in his expert reports [dkt 877]**

I do not quarrel with Motorola's wanting to preclude Dr. Nathaniel Polish from testifying about matters not contained in his expert reports. Fed. R. Civ. P. 26(a)(2)(B)(i). That part of the motion is granted. But the motion seeks specifically to preclude Dr. Polish from offering testimony that Motorola's products contain a realtime API that communicates explicit response-time constraints to the realtime signal processing subsystem; Motorola argues that he failed to offer such an opinion in his expert reports. This matter has already been resolved in Apple's favor. As I said in my April 9 summary judgment order, "if either the playback clock or the video-processing constraints are communicated to the hardware accelerator via a realtime API, Apple has a plausible claim that Motorola's devices infringe the 'realtime signal processing subsystem' claim in the patent. Apple's expert Dr. Polish has identified 'OMX codec node' and the 'PVMF Node API' as realtime APIs that do that." At his deposition, Dr. Polish reiterated the point made in his report (and echoed in my order): "I identified flow control as the basic mechanism that the timing constraints are communicated….[T]he flow control is coming across that API." Motorola's motion is denied.

**Motorola's motion in limine to preclude evidence of alleged secondary considerations and/or copying [dkt 878]**

Motorola asks me to forbid Apple to introduce, as evidence relevant to the so-called secondary considerations of obviousness or copying by Motorola, media reports praising Apple's products, evidence of the products' general commercial success, and internal competitive analysis of those products by Motorola. I largely addressed this issue in my order of May 25, and I repeat the relevant language from that order here:

"Apple will not be permitted to present media articles or equivalent publicity praising features of the iPhone or iPad (or the Apple company, Steve Jobs, or Apple products in general) unless they mention (or can be shown to be referring to) claim elements that Apple alleges Motorola infringes or that Motorola argues were anticipated or obvious and that are actually in dispute. If the articles or other publicity do not praise an element in suit, they are irrelevant to any legal issue in the case, and can only confuse the jury. If Apple believes that any of its exhibits comply with this standard, it has until May 30 to re-submit these exhibits, with discussion of asserted claim elements highlighted.

No. 1:11-cv-08540                                                                                          12

More broadly, I forbid Apple to insinuate to the jury that this case is a popularity contest and that jurors should be predisposed to render a verdict for Apple if they like Apple products or the Apple company or admire Steve Jobs, or if they dislike Motorola or Google. The overall quality of the products involved in the litigation is irrelevant to the legal issues. This prohibition applies *mutatis mutandis* to Motorola, and in accordance with that prohibition I granted Apple's motion in limine number 11. I also grant Apple's motions in limine numbers 15 and 16."

In accordance with my May 25 order, I forbid Apple to introduce either press reports, evidence of commercial success, or Motorola's competitive analyses unless the reports or analyses bear directly on the value attributed (by the press or by Motorola) specifically to the asserted claims of Apple's patents, rather than to Apple's devices or particular features of them in general; nor may Apple's experts or attorneys make conclusory pronouncements that general praise or commercial success of Apple products shows the nonobviousness of particular patented inventions absent a direct and substantial connection between the evidence and the invention. Evidence not directed at the particular claims asserted is irrelevant to this litigation and can only confuse the jury.

On May 30, Apple re-submitted 17 exhibits that it contended are directly pertinent to asserted claim elements with the pertinent language highlighted. Favorable discussions of the iPhone generally, or of its fluid touchscreen interface and media and notification capabilities, especially if made far after the date of the patent (the relevant date for determining obviousness) are not enough. I therefore exclude Apple's resubmitted exhibits AX-61, 64, 65, 67, 68, 73, 80, 90, 129, 348, 349, 351, 354, 363, and 366. Exhibits AX-105 and AX-338, which discuss "data detectors," do have a plausible connection to the specific functionality of the '647 patent at issue in this litigation. I am sending copies of the exhibits to the parties, indicating which portions are to be redacted. I order them to do the redaction and return the redacted exhibits to me.

### Motorola's motion in limine to preclude Apple's '002 expert from supplementing his infringement positions by relying on opinions given only in Motorola's expert's rebuttal reports [dkt 879]

Motorola asks me to forbid Apple's expert witness on the '002 patent, Dr. Snoeren, to testify at direct examination on opinions not included in his own expert report but instead drawn from the rebuttal report of Motorola's expert, Dr. Cooper. The material at issue relates to the "permissions system" of the Android operating system on Motorola's devices; the permissions system governs whether windows opened by pro-

grams on the devices are opened on top of (that is, obstructing) or beneath (obstructed by) other windows.

Fed. R. Civ. P. 26(a)(2)(B)(i) required Snoeren to include in his report "a complete statement of all opinions the witness will express and the basis and reasons for them," and Rule 37(c)(1) provides that "If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." I don't find that Snoeren's failure was either substantially justified or harmless.

Motorola's motion is granted. On direct examination Snoeren's testimony will be limited to the material contained in his report, as required by Rules 26 and 37.

## Objections to Apple's Jury Binder Exhibits in the Apple Liability Trial

1. The parties have made several objections to exhibits based on foundation. Fed. R. Evid. 901. I cannot rule on these objections prior to trial, and they are preserved to the extent discussed in the joint memorandum documenting the parties objections submitted May 21.

2. I have just granted in this order Motorola's motion in limine [dkt 878] to preclude certain evidence of alleged secondary considerations and/or copying. Pursuant to that grant, all exhibits documenting praise of Apple's devices that do not mention the specific components at issue in the '002, '263, '647, and '949 patents are excluded. I therefore exclude exhibits AX-61, 65, 66, 67, 68, 71, 74, 75, 77, 78, 80, 129, 347, 349, 356, 360, 366, 367, and 371. These exhibits shall be removed from the binders given to the jury.

3. My ruling on Motorola's omnibus motion [dkt 876] affects various exhibits in Apple's jury binder. Pursuant to that ruling, AX-27 is excluded, and AX-116 is not excluded.

4. I resolve Motorola's other objections to Apple's jury binder exhibits as follows:

| AX 41–42: | Motorola's hearsay objection is sustained. These demonstratives relating to the Android system (prepared in the context of a parallel litigation) may not be offered for the truth of their assertions. |
|---|---|
| AX 43: | Motorola's hearsay objection is sustained. This Android power point presentation is not a "record" within the definition of the term under Fed. R. Evid. 803(6)(b). It may not be offered for the truth of its contents. |

No. 1:11-cv-08540                                                              14

AX 44:      Motorola's hearsay objection is sustained. Apple, having failed to respond
            to Motorola's hearsay objection, may not offer this exhibit for the truth of
            its assertions.

AX 45–46:   Motorola's hearsay objection is sustained. These email chains are not "re-
            cords" within the definition of the term under Fed. R. Evid. 803(6)(b), and
            may not be offered for the truth of their assertions.

AX 91:      Motorola's relevance objection to this Motorola document is overruled.

AX 121:     Motorola's hearsay objection to this Verizon press release relating to the
            Amazon Kindle application is overruled. The press release is admissible
            under the business records hearsay exception. Fed. R. Evid. 803(6)(b).

AX 124:     Apple's 1997 study of the "data detectors" feature in Mac OS 8 is inad-
            missible hearsay, and Apple hasn't provided sufficient justification to in-
            voke the residual exception. The document contains third-party praise of
            Data Detector 1.0, not the '647 invention itself, which is likely to confuse
            the jury.

AX 131:     Motorola's relevance and prejudice objections to this Motorola power-
            point document are overruled.

AX 135:     Motorola's hearsay objection is sustained. This email between Google
            employees is not a "business record," and it may not be offered for the
            truth of its contents.

AX 138:     I defer ruling on Motorola's hearsay objection to this NVIDIA document.
            Should Apple provide foundation to establish that it is admissible as a
            business record or adopted party admission I will allow it. Motorola is
            free to raise this objection if and when the exhibit is admitted.

AX 143:     Motorola's incompleteness and relevance objections to its interrogatory
            answer are overruled. Apple will submit an excerpted version containing
            no legal argument.

AX 301:     Motorola's relevance and prejudice objections to the reexamination his-
            tory of the '949 patent are overruled.

AX 321:     Motorola's hearsay objection is overruled. John Lynch's ('263 inventor)
            lab notebook is admissible as a business record which Lynch testified that
            he kept in the ordinary course of his job. Motorola's relevance objection is
            also overruled.

AX 380:     Motorola's hearsay objection to this screenshot of Apple's LiveDoc soft-
            ware is sustained. Apple may not offer the exhibit for the truth of its as-

sertions. Should Apple desire to submit it as a demonstrative to facilitate Mr. Bonura's testimony, it may do so.

AX 387:    Motorola's hearsay objection to this email to Mr. Bonura is sustained. Apple may not offer it for the truth of its assertions, though it may submit the email to corroborate Mr. Bonura's testimony if attacked by Motorola.

AX 403:    Motorola's relevancy objection to this exhibit is overruled.

AX 404:    Motorola's objection to this patent application as an unfair surprise outside the scope of Apple's expert reports is overruled.

## Objections to Motorola's Jury Binder Exhibits in the Apple Liability Trial

1. The parties have made several objections to exhibits based on foundation. Fed. R. Evid. 901. I cannot rule on these objections prior to trial, and they are preserved to the extent discussed in the joint memorandum documenting the parties objections submitted May 21.

2. I denied Apple's motion in limine no. 5 [dkt 881] to exclude all evidence concerning Jefferson Han and the Han demonstration. Apple objects to exhibits MX-87, 88, 113, and 117 solely on the basis of arguments it made in this motion in limine, and those objections are denied.

3. I granted Apple's motion in limine no. 6 [dkt 870] to exclude evidence of Apple's attempts to recruit Jefferson Han. All mention of Apple's recruitment of Han must be eliminated from MX-82, 89, 92, 93, 95–97, 99, 100–03, 105, 106, 108–11. Motorola exhibits MX-93, 95, 105, and 110 deal solely with Apple's recruitment of Han and must be dropped from the jury binder. MX-94 and MX- 98 are unaffected by this ruling.

4. Apple's other objections are disposed of as follows:

MX 11:       Apple's hearsay objection to this document is overruled.

MX 26:       Apple's hearsay objection to this document is overruled.

MX 40, 41, 45:  These documents are admissible over Apple's hearsay objections to support the dates of public availability of prior art, but limited to that purpose.

MX 50:       As discussed in my ruling on Apple's motion in limine no. 1 [dkt 866] above, the Sidekick Handbook is admissible to show the state of

the technology at the time of the '647 invention to rebut Apple's expert Mowry.

MX 73:      Apple's objections to the translation of the Nomura patent application are overruled.

MX 82:      This blog post is inadmissible hearsay and cannot be admitted for the truth of its contents, as discussed in my ruling on Apple's motion in limine no. 9 [dkt 872].

MX 94:      Apple's objection to this exhibit is overruled.

MX 98:      Apple's objection to this exhibit is overruled.

MX 329:     Apple's objection is moot based on the withdrawal of MX-63.

United States Circuit Judge

May 31, 2012

# EXHIBIT B

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

APPLE, INC., and NeXT SOFTWARE,       )   Docket No. 11 C 8540
INC. (F/k/a NeXT COMPUTER, INC.),     )
                                      )
                    Plaintiffs,       )
                                      )
          vs.                         )
                                      )   Chicago, Illinois
MOTOROLA, INC. And MOTOROLA           )   May 24, 2012
MOBILITY, INC.,                       )   12:30 o'clock p.m.
                                      )
                    Defendants.       )

TRANSCRIPT OF PROCEEDINGS - PRETRIAL CONFERENCE
BEFORE THE HONORABLE RICHARD A. POSNER

APPEARANCES:

For the Plaintiff:      TENSEGRITY LAW GROUP LLP
                        BY:  MR. MATTHEW D. POWERS
                        555 Twin Dolphin Drive, Suite 360
                        Redwood Shores, CA  94065
                        (650) 802-6010


                        WEIL, GOTSHAL & MANGES LLP
                        BY:  MR. BRIAN F. FERGUSON
                        1300 Eye Street NW, Suite 900
                        Washington, DC  20005
                        (202) 682-7516


                        COVINGTON & BURLING LLP
                        BY:  MR. ROBERT T. HASLAM
                             MR. STEPHEN SHAHIDA
                        333 Twin Dolphin Drive, Suite 700
                        Redwood Shores, CA  94065
                        (650) 632-4700


Court Reporter:         MS. CAROLYN R. COX, CSR, RPR, CRR, FCRR
                        Official Court Reporter
                        219 S. Dearborn Street, Suite 1854-B
                        Chicago, Illinois  60604
                        (312) 435-5639

1  APPEARANCES CONTINUED:

2

3  For the Plaintiff:     COVINGTON & BURLING LLP
                          BY:   MR. ROBERT D. FRAM
4                               MS. CHRISTINE SAUNDERS HASKETT
                                MR. WINSLOW BLODGETT TAUB
5                         One Front Street
                          San Francisco, CA  94111
6                         (415) 591-6000

7

8  For the Defendants:    QUINN EMANUEL URQUHART & SULLIVAN, LLP
                          BY:   MR. BRIAN CANNON
9                         555 Twin Dolphin Drive, 5th Floor
                          Redwood Shores, CA  94065
10                        (650) 801-5000

11
                          QUINN EMANUEL URQUHART & SULLIVAN, LLP
12                        BY:   MR. DAVE NELSON
                                MR. STEPHEN A. SWEDLOW
13                        500 West Madison Street, Suite 2450
                          Chicago, IL  60661
14                        (312) 705-7465

15
                          MOTOROLA MOBILITY
16                        BY:   MR. ROBERT G. PLUTA
                          600 N. U.S. Highway 45
17                        Libertyville, IL  60048
                          (847) 523-3667

18

19

20

21

22

23

24

25

| | | |
|---|---|---|
| 01:57:02 | 1 | make sense? |
| 01:57:02 | 2 | THE COURT:  Well, I will ask Mr. Nelson. |
| 01:57:04 | 3 | MR. NELSON:  They would be very straightforward, your |
| 01:57:08 | 4 | Honor. |
| 01:57:08 | 5 | THE COURT:  Tuesday? |
| 01:57:08 | 6 | MR. NELSON:  Sure. |
| 01:57:10 | 7 | THE COURT:  Okay. |
| 01:57:10 | 8 | MR. POWERS:  Thank you, your Honor. |
| 01:57:12 | 9 | THE COURT:  Let me just ask my law clerk. |
| 01:57:58 | 10 | Did I forget something?  I did want to talk about the |
| 01:58:02 | 11 | motions in limine.  I found them very difficult because |
| 01:58:06 | 12 | they're so broad.  I am not accustomed to that.  I usually |
| 01:58:08 | 13 | think of -- I was just saying I forgot to ask about motions in |
| 01:58:18 | 14 | limine.  I usually think of motions in limine as simply |
| 01:58:20 | 15 | objections to exhibits which are submitted before trial in |
| 01:58:26 | 16 | order to minimize the amount of time at trial ruling on them. |
| 01:58:30 | 17 | But these motions in limine are very broad, and I want to |
| 01:58:44 | 18 | discuss a few of them. |
| 01:58:46 | 19 | Let me give you this back, Mr. Swedlow.  This is |
| 01:58:50 | 20 | yours. |
| 01:59:08 | 21 | First, there is a motion -- I am going to rule on |
| 02:00:18 | 22 | most of the motions in limine in writing, but I will mention a |
| 02:00:20 | 23 | couple. |
| 02:00:20 | 24 | So Apple's motion No. 11, motion in limine No. 11, to |
| 02:00:26 | 25 | preclude Motorola from referring to irrelevant matters during |

Case 5:11-cv-02509-LHK Document 854-3 Filed 04/10/14 Page 24 of 53
Case 1:11-cv-08540-JSR Document # 1048 Filed 08/02/12 Page 55 of 629 PageID #: 96021

55

1 | trial.

2 | MR. SWEDLOW:  We will agree to that.  It just depends

3 | on what's irrelevant.

4 | THE COURT:  I want to grant this.  Apple asks that

5 | the Court prevent any reference to Isaacson's biography of

6 | Jobs.  Yes, we are not going to get Steve Jobs involved,

7 | unless you want to have a seance and try to question him on

8 | the other side.

9 | MR. NELSON:  Judge, just as a comment there.

10 | THE COURT:  Yes.

11 | MR. NELSON:  I assume that cuts both ways.

12 | THE COURT:  Yeah, we don't want any of that.

13 | MR. SWEDLOW:  We were both -- it was like a

14 | preventative arms race.  If that's called the Jobs patent and

15 | somehow becomes the gold standard for patents, then we'd want

16 | to say maybe Jobs isn't such a good guy.  So as long as he is

17 | out of the case.

18 | THE COURT:  We don't want to get involved with Jobs.

19 | And, similarly, press reports concerning Apple's tax

20 | payments to the U.S. government, the working conditions in its

21 | overseas third party, no, we are not going there at all.  So

22 | that's granted.

23 | And then there's another one involving request to

24 | substitute -- it says, Motorola should not be permitted to

25 | introduce testimony or argument regarding Apple's request to

02:02:18  1  substitute experts for the '898.  Again, it's too complicated,
02:02:24  2  and the jury isn't going to understand that.
02:02:26  3       And No. 16 was about Apple's retention of a
02:02:34  4  Dr. Williams.  Motorola may attempt to suggest that
02:02:42  5  Dr. Williams' retention by Covington (phonetic) and other
02:02:46  6  cases shows that you give greater weight to his opinions.  I
02:02:52  7  don't want to go there.
02:02:52  8       So, anyway, I will rule on the others.
02:02:54  9       Now, I did want to ask you, does my recent ruling on
02:02:58  10  damages, does it have any implications -- well, I have really
02:03:02  11  two questions.  Does it have any implications for the
02:03:04  12  liability trials?  That's number one.  Number two, maybe I
02:03:10  13  should put two first, is is there anything left of damages?  I
02:03:20  14  can't really tell because I was just going expert by expert.
02:03:28  15  I didn't know if you need experts for damages.  You wouldn't
02:03:34  16  in an ordinary case.  Patent infringement is different.  But
02:03:38  17  what is left of that?
02:03:42  18       MR. SWEDLOW:  Well, we have had discussion -- some
02:03:44  19  informal discussions with each other and then discussions
02:03:46  20  within our own groups on what could be possible now for either
02:03:50  21  party to demonstrate damages in the absence of an expert to
02:03:54  22  support a theory.
02:03:54  23       THE COURT:  Right.
02:03:56  24       MR. SWEDLOW:  And, admittedly, it's patent by patent
02:04:00  25  or side by side, so the question would be if the -- let's take

Case: 1:19-cv-02500-LHK   Document #: 2554   Filed: 04/10/24   Page 26 of 53
Case: 1:11-cv-08540   Document #: 1048   Filed: 08/02/12   Page 62 of 629 PageID #:96028

62

02:12:04   1            MR. SWEDLOW:  Yes.

02:12:06   2            THE COURT:  You want more time on damages, yeah,

02:12:08   3   that's fine.  Sure.  Is that it?

02:12:12   4            MR. POWERS:  Nothing further by us, your Honor.

02:12:14   5            THE COURT:  Okay.  Great.  Thanks very much.  We will

02:12:18   6   be in touch with everybody.  Thank you.

           7       (Which were all the proceedings had in the above-entitled

           8   cause on the day and date aforesaid.)

           9       I certify that the foregoing is a correct transcript from
               the record of proceedings in the above-entitled matter.
          10

          11   _____        _____
               Carolyn R. Cox                         Date
               Official Court Reporter
          12   Northern District of Illinois

          13   /s/Carolyn R. Cox, CSR, RPR, CRR, FCRR

          14

          15

          16

          17

          18

          19

          20

          21

          22

          23

          24

          25

# EXHIBIT C

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| APPLE INC., a California corporation, ) | Case No.: 11-CV-01846-LHK |
| ) | |
| Plaintiff, ) | MINUTE ORDER AND CASE |
| v. ) | MANAGEMENT ORDER |
| ) | |
| SAMSUNG ELECTRONICS CO., LTD., A ) | |
| Korean business entity; SAMSUNG ) | |
| ELECTRONICS AMERICA, INC., a New York ) | |
| corporation; SAMSUNG ) | |
| TELECOMMUNICATIONS AMERICA, LLC, ) | |
| a Delaware limited liability company, ) | |
| ) | |
| Defendants. ) | |
| ) | |
| _____ ) | |

Clerk:  Martha Parker Brown
Reporter:  Lee-Anne Shortridge
Length of hearing: 2 hrs 35 min

Plaintiff Attorneys: Harold McElhinny, Michael Jacobs, Mark Selwyn, and William Lee
Defense Attorneys: Charles Verhoeven, Victoria Maroulis, Kevin Johnson, Charlie Price, and Michael Zeller.

        A case management conference was held on July 18, 2012.  A pre-trial conference is set for July 24, 2012 at 1:30 p.m.  At the case management conference on July 18, 2012, the following rulings were made orally:

FINAL PRETRIAL CONFERENCE: The topics to be covered at the conference on July 24, 2012 will be the design patent claim construction, the verdict form, the jury instructions, and any issues regarding the parties' July 23, 2012 filings.

VERDICT FORM: The parties shall file a joint proposed verdict form by July 23, 2012 at noon.

JURY INSTRUCTIONS: The Court will file a proposed set of preliminary jury instructions by Monday, July 23, 2012 so that the parties may comment on, and finalize the instructions at the July 24, 2012 pretrial conference.

JURORS: The Court will empanel 10 jurors.  Each side may exercise up to 4 peremptory challenges.

VOIR DIRE: The Court will conduct voir dire.  The Court will allow 20 minutes of attorney voir dire for each side.

OPENING STATEMENT/CLOSING ARGUMENTS: The parties shall have 1.5 hours each for opening statements.  The parties shall have 2.0 hours each for closing arguments.

REPRESENTATIVE PRODUCTS: The parties shall meet and confer in an attempt to reach an agreement on the use of representative products so that the number of accused devices may be narrowed for trial.  The parties shall file a notice by Monday July 23, 2012 at noon, indicating whether they have been able to reach an agreement on these issues.

WITNESSES: The parties are required to submit revised witness lists by July 23, 2012 at noon. Each side must limit the number of witnesses on its list to 50 witnesses. Each side shall also limit the number of depositions designations to 45 witnesses and no more than 25 hours of deposition. Depositions conducted after the close of discovery without the authorization of Judge Grewal or stipulation of the parties is not admissible. When the witness is a party's employee, the Court prefers the presentation of live testimony. Rule 30(b)(6) witnesses and managing agent testimony may be presented by deposition.

EXHIBITS: The parties shall stipulate to a joint exhibit list of no more than 100 exhibits. Both parties must agree on the exhibits' admissibility for the exhibit to be added to the joint exhibit list. Each side may also have individual exhibit lists of no more than 200 exhibits each. The parties shall serve and file their new lists by Monday, July 23, 2012 at noon.

PROCEDURE FOR OBJECTIONS: The following procedure of notification regarding witnesses, exhibits, and demonstratives shall be employed at trial. The parties are required to give notice, by 7:00 p.m. two days before the trial day, of the witnesses, exhibits, and demonstratives it intends to use. By 2:00 p.m. the next day, the opposing party shall designate the exhibits it intends to use during cross-examination. Exhibits not disclosed by this procedure will not be allowed during the trial, unless the party seeking to use the un-disclosed exhibit shows good cause. Objections to witnesses, exhibits, or demonstratives shall be filed no later noon the day before the witness is to testify.

SAMSUNG'S ADDITIONAL EVIDENTIARY OBJECTIONS:
- Samsung's motion to exclude evidence that Michael Wagner's opinions were excluded in the Motorola case is GRANTED.
- Samsung's motion to exclude Apple's offer to license its declared-essential patents produced after the close of discovery is DENIED. Samsung is allowed to take no more than 2 hours of deposition regarding the late produced letter.
- Samsung's motion to exclude evidence related to the Galaxy S (i9000) and Galaxy Ace is DENIED.
- Samsung's motion to exclude reference to and testimony regarding irreparable harm to Apple is DENIED without prejudice. The Court will make a case-by-case determination regarding whether specific evidence is admissible.

THE FJC PATENT VIDEO: The Court will show the FJC Patent video to the jury. The parties shall meet and confer and craft a joint statement to be read to the jury that explains that design patents are entitled to the same presumptions and protections as utility patents. The parties shall file the statement by July 23, 2012 at noon.

TRANSLATIONS: The parties shall meet and confer and attempt to resolve any remaining issues regarding translations of documents. The parties must provide redlines to show word or phrase objections. The parties shall file a statement by Wednesday, July 25, 2012 at 10:00 a.m. if they are unable to resolve the dispute.

POST VERDICT PROCEEDINGS: The parties shall meet and confer and propose a schedule for post-verdict proceedings. The parties shall file a preliminary statement by August 1, 2012 proposing post-verdict proceedings.

MOTIONS IN LIMINE: After reviewing the parties' briefing, considering the parties' oral arguments and the record in this case, and balancing the considerations set forth in Federal Rule of Evidence 403 ("FRE 403"), the Court made the following rulings on the motions in limine on the record.

United States District Court
For the Northern District of California

1.  Apple's motion in limine #1, to exclude Apple design model 035, and photos of it, because it's not related to scope of D'889, is DENIED, for the reasons stated on the record.

2.  Apple's motion in limine #2, to exclude non-prior art Apple or Samsung design patents is GRANTED, for the reasons stated on the record.

3.  Apple's motion in limine #3, to exclude evidence or argument regarding claimed prior art devices that do not qualify as prior art, is GRANTED in part and DENIED in part, for the reasons stated on the record.  The motion is GRANTED in that the following may not be introduced as prior art references under 35 U.S.C. § 102: KR30-0452985; Sharp Softbank; KU990Viewty; LG KS20; and the internal Samsung documents; the LG Chocolate; and the F300.  The motion is DENIED in all other respects.  In other words, the LG KE 750 Prada may be admissible as a prior art reference under 35 U.S.C. § 102.  All the evidence identified in this paragraph is admissible for other purposes, including to rebut an allegation of copying.

4.  Apple's motion in limine #4, to exclude the use of partial or misleading views (i.e. a single two-dimensional view) of designs, or deposition testimony that involves the use of partial or misleading views, is DENIED, without prejudice, for the reasons stated on the record.

5.  Apple's motion in limine #5, to exclude evidence that Samsung received legal advice regarding the parties at issue in this case, is GRANTED, for the reasons stated on the record.

6.  Apple's motion in limine #6, to exclude evidence of how other courts or tribunals have construed or ruled on any Apple or Samsung patents, is GRANTED, for the reasons stated on the record.

7.  Apple's motion in limine #7, to exclude any evidence or arguments regarding statements made by Steve Jobs to Walter Isaacson in his biography, is GRANTED, for the reasons stated on the record.

8.  Apple's motion in limine #8, to exclude evidence or argument as to parties' corporate behavior or financial circumstances is DENIED, for the reasons stated on the record. While Samsung may reference the number of hours worked by individuals who manufactured Apple products, as this evidence is relevant to Apple's capability to meet demand, Samsung may not make reference to alleged working condition abuses.

9.  Apple's motion in limine #9, to exclude Samsung from offering profits calculations based on a tax agreement with the IRS is DENIED, for the reasons stated on the record.

10. Apple's motion in limine #10, to exclude evidence of Apple's acquisition of "Fingerworks," is GRANTED, for the reasons stated on the record.

11. Samsung's motion in limine #1, to exclude evidence or argument not tied to the specific IP rights claimed by Apple in this action, is GRANTED in part and DENIED in part, for the reasons stated on the record. The motion is GRANTED with respect to evidence related to Apple Brand, and evidence that Samsung shared confidential business information, but is DENIED with respect to evidence of media coverage of Apple

products and evidence of copying of Apple's designs. Evidence related to Steve Jobs will generally be excluded unless it is specifically relevant to the IP rights at issue in the case, although the Court will make that determination on a case-by-case basis.

12. Samsung's motion in limine #2, to exclude out-of-court third-party statements about purported similarities or purported confusion**,** is DENIED in part and GRANTED in part, for the reasons stated on the record. The consumer confusion surveys Samsung seeks to exclude show that Samsung was on notice of potential consumer confusion, which is relevant to knowledge, intent, and willfulness for Apple's trade dress and design infringement claims. The survey evidence is also admissible to establish consumer confusion, which is relevant to Apple's trade dress claims. Apple has established either that the statements are not hearsay or are admissible under a hearsay exception. Although this evidence is generally admissible, there is one survey that is not admissible for all purposes. Because the TV ad survey cited by Samsung relates to the Tab 7.0, a product no longer being asserted in the case, evidence of consumer confusion is not relevant to any of Apple's claims. However, this specific consumer confusion survey can be used to establish intent, willfulness, and knowledge.

13. Samsung's motion in limine #3, to exclude accused devices, contentions, theories, and witnesses not timely disclosed in infringement contentions or interrogatory responses is DENIED in part and GRANTED in part, for the reasons stated on the record. Samsung's motion to exclude Apple's utility patent infringement claims against the Epic 4G Touch, Skyrocket, Gravity Smart, and Galaxy S Showcase i500 is GRANTED. The motion is DENIED in all other respects.

14. Samsung's motion in limine #4, to exclude reference to findings or rulings in other proceedings not involving the patents at issue in this case, is GRANTED, for the reasons stated on the record.

15. Samsung's motion in limine #5, to exclude disputes and rulings in this action, including discovery disputes and the preliminary injunction ruling is GRANTED in part and DENIED in part. (1) With respect to this Court and the Federal Circuit's rulings on the preliminary injunction, the Court concludes that this evidence is of limited probative value, and the prejudicial effect to Samsung would greatly outweigh any relevance for the jury. On the one hand, the Federal Circuit in *In re Seagate* explained that "willful infringement in the main must find its basis in prelitigation conduct." 497 F.3d 1360, 1374 (Fed. Cir. 2007). Moreover, the Federal Circuit also recognized that "whether a willfulness claim based on conduct occurring solely after litigation began is sustainable will depend on the facts of each case." *Id*. While the Court agrees that the litigation conduct at issue could be somewhat probative of Samsung's willfulness, because "in the main" the basis of willful infringement must occur in prelitigation, the evidence is of limited value. On the other hand, there is a strong likelihood that the jury would give undue weight to the rulings of this Court and the Federal Circuit, when the jury is, in fact, the final arbiter of the factual questions in this case. Moreover, admitting these rulings into evidence would likely confuse the issues and waste time because it would likely devolve into a litigation within a litigation where the parties present evidence regarding what evidence was before which tribunal. The parties would also have to distinguish the different standards of proof in a preliminary injunction motion versus at trial. Accordingly, the evidence of the preliminary injunction rulings are excluded on the basis of FRE 403. (2) Similarly, the evidence that Samsung was sanctioned for withholding documents of relating to copying and consumer surveys, and source code is

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

also arguably probative of willfulness, but suffers from the same issues related to the preliminary injunction rulings. The discovery sanctions are litigation related conduct, which does not serve as the main basis for a willful infringement finding. In comparison to the limited probative value of the discovery sanctions, the unfair prejudice to Samsung and the risk of confusion of the issues for the jury is high. The jury may simply assume that Samsung is liable based on discovery misconduct, instead of based on the merits of the action. In light of this, the Court weighs the probative value of the evidence against the danger of unfair prejudice and determines that this evidence of discovery misconduct should be excluded under Federal Rule of Evidence 403. (3) Finally, evidence of Samsung's failures to disclose accurate financial data in discovery is relevant for Apple's damages claim. This evidence is relevant because it calls into doubt the veracity of the calculations and data relied upon by Samsung in its damages calculations. In weighing the evidence under FRE 403, the prejudicial effect of the disclosing to the jury discovery conduct is outweighed by the probative value of the evidence of the financial data errors. Therefore, evidence of Samsung's failures to disclose accurate financial data in discovery is admissible. These rulings have no bearing on the adverse inference jury instruction motion before Judge Grewal.

16.   Samsung's motion in limine #6, to exclude generalizations regarding the operation of accused Samsung products is DENIED, for the reasons stated on the record.

17.   Samsung's motion in limine #7, to exclude resized or altered photos of samsung products in side-by-side product comparisons is DENIED, without prejudice, for the reasons stated on the record.

18.   Samsung's motion in limine #8, to exclude any evidence of pre-filing notice other than identified in Apple's interrogatory response and provisionally exclude Mr. Musika's opinions on pre-filing damages unless and until Apple makes a *prima facie* showing of entitlement to such damages, is DENIED, for the reasons stated on the record.

19.   Samsung's motion in limine #9, to exclude evidence of Samsung's overall revenues, profits, wealth and value and evidence or argument that Samsung has paid lower taxes than it should have, is DENIED, for the reasons stated on the record. However, Samsung's motion is GRANTED to the extent Samsung seeks to exclude any argument that the tax arrangement with the United States government is a form of tax evasion.

20.   Samsung's motion in limine #10, to exclude evidence and argument that Apple is presently licensed to the declared essential patents-in-suit, is GRANTED, for the reasons stated on the record.

The following pretrial schedule remains as set:

| July 23, 2012 | File revised verdict forms, a statement regarding narrowed accused devices, revised witness lists, and revised joint and separate exhibit lists |
| July 24, 2012 at 1:30 p.m. | Final Pretrial Conference (Jury Instructions and Verdict Form) |
| July 25, 2012 | File and serve objections to counterdesignations of deposition testimony and file statement regarding status of translation disputes |

| July 27, 2012 | Deliver Jury Books to the Court |
| July 30, 2012 at 9:00 a.m. | Jury Trial |

**IT IS SO ORDERED.**

Dated: July 19, 2012

LUCY H. KOH
United States District Judge

# EXHIBIT D

1          UNITED STATES DISTRICT COURT

2          NORTHERN DISTRICT OF CALIFORNIA

3               SAN JOSE DIVISION

4


5

   APPLE INC., A CALIFORNIA    )  C-11-01846 LHK
6  CORPORATION,                )
                               )  SAN JOSE, CALIFORNIA
7               PLAINTIFF,     )
                               )  JULY 18, 2012
8          VS.                 )
                               )  PAGES 1-146
9  SAMSUNG ELECTRONICS CO.,    )
   LTD., A KOREAN BUSINESS     )
10 ENTITY; SAMSUNG             )
   ELECTRONICS AMERICA,        )
11 INC., A NEW YORK            )
   CORPORATION; SAMSUNG        )
12 TELECOMMUNICATIONS          )
   AMERICA, LLC, A DELAWARE    )
13 LIMITED LIABILITY           )
   COMPANY,                    )
14                             )
                DEFENDANTS.    )
15 _____

16           TRANSCRIPT OF PROCEEDINGS
        BEFORE THE HONORABLE LUCY H. KOH
17        UNITED STATES DISTRICT JUDGE

18

19

20         APPEARANCES ON NEXT PAGE

21

22

23

24 OFFICIAL COURT REPORTER: LEE-ANNE SHORTRIDGE, CSR, CRR
              CERTIFICATE NUMBER 9595
25

A P P E A R A N C E S:

FOR PLAINTIFF          MORRISON & FOERSTER
APPLE:                 BY:  HAROLD J. MCELHINNY,
                            MICHAEL A. JACOBS,
                            RACHEL KREVANS
                       425 MARKET STREET
                       SAN FRANCISCO, CALIFORNIA  94105


FOR COUNTERCLAIMANT WILMER, CUTLER, PICKERING,
APPLE:                 HALE AND DORR
                       BY:  WILLIAM F. LEE
                       60 STATE STREET
                       BOSTON, MASSACHUSETTS  02109

                       BY:  MARK D. SELWYN
                       950 PAGE MILL ROAD
                       PALO ALTO, CALIFORNIA  94304

FOR THE DEFENDANT:     QUINN, EMANUEL, URQUHART,
                       OLIVER & HEDGES
                       BY:  CHARLES K. VERHOEVEN
                       50 CALIFORNIA STREET, 22ND FLOOR
                       SAN FRANCISCO, CALIFORNIA  94111

                       BY:  VICTORIA F. MAROULIS,
                            KEVIN P.B. JOHNSON
                       555 TWIN DOLPHIN DRIVE
                       SUITE 560
                       REDWOOD SHORES, CALIFORNIA  94065

                       BY:  MICHAEL T. ZELLER,
                            WILLIAM C. PRICE
                       865 SOUTH FIGUEROA STREET
                       10TH FLOOR
                       LOS ANGELES, CALIFORNIA  90017

FOR INTERVENOR         RAM, OLSON,
REUTERS:               CEREGHINO & KOPCZYNSKI
                       BY:  KARL OLSON
                       555 MONTGOMERY STREET, SUITE 820
                       SAN FRANCISCO, CALIFORNIA  94111

```
1              THE COURT:  THERE'S NO DISPUTE, SO THAT

2    ONE IS GRANTED.

3              MOTION IN LIMINE NUMBER 6, IT'S KIND OF

4    THE FLIP SIDE OF SAMSUNG'S, THAT'S GRANTED, AND

5    THAT'S JUST EXCLUDING HOW OTHER COURTS AND

6    TRIBUNALS HAVE RULED AND CONSTRUED THE PATENTS.

7              NOW, WITH REGARD TO STEVE JOBS, IT'S THE

8    SAME THING.  I DON'T SEE HOW THIS IS RELEVANT.

9    UNDER A 403 ANALYSIS, I DON'T THINK IT COMES IN.  I

10   REALLY DON'T THINK THIS IS A TRIAL ABOUT STEVE JOBS

11   EITHER WAY.  ALL RIGHT?  SO THAT MOTION IS GRANTED.

12             WITH REGARD TO -- NOW, APPLE'S CORPORATE

13   BEHAVIOR OR FINANCIAL CIRCUMSTANCES, I THINK JUST

14   AS SAMSUNG'S FINANCES COME IN, SO DO APPLE'S, AND I

15   THINK BECAUSE THE CAPACITY OF APPLE TO MEET THE

16   DEMAND IS RELEVANT, WHAT THE EMPLOYEES ARE WORKING,

17   HOW MANY HOURS THEY'RE WORKING, I THINK THAT'S

18   RELEVANT.  IT COMES IN.

19             NOW, THERE IS ONE ASPECT OF THIS WHICH

20   MAY BE LIKE THE TAX EVASION ALLEGATION.  I MEAN, IF

21   THERE IS ANY ALLEGATION OF MISTREATMENT, IF APPLE'S

22   GOTTEN BAD PRESS ON THAT, I DON'T THINK THAT THAT'S

23   RELEVANT.

24             I'M NOT SURE IF THAT WAS -- SOME OF THESE

25   MOTIONS ARE VERY VAGUE, SO IT'S REALLY DIFFICULT TO
```

1      FIND OUT EXACTLY WHAT'S BEING ARGUED HERE.

2              BUT IF IT IS RELATED TO THE HOURS THAT

3      EMPLOYEES ARE WORKING AND, THUS, WHETHER THEY CAN

4      SUPPLY THE DEMAND, MEET THE DEMAND I SHOULD SAY,

5      THAT'S RELEVANT AND IT'S COMING IN.

6              BUT IF IT'S JUST, YOU KNOW, LIKE -- IF

7      IT'S MUD SMEARING LIKE TAX EVASION, IT'S NOT COMING

8      IN, SO IF IT'S SOME HUMAN RIGHTS CLAIM ABOUT HOW

9      APPLE TREATS ITS MANUFACTURING WORKERS.  OKAY?

10              SO THAT MOTION IS DENIED TO THE EXTENT

11      THAT APPLE OPENS THE DOOR IN ITS THEORY OF DAMAGES.

12              NOW, NUMBER 9 IS EXCLUDING SAMSUNG FROM

13      OFFERING PROFITS CALCULATIONS BASED ON A TAX

14      AGREEMENT WITH THE IRS.  THAT'S THE SAME THING AS

15      SAMSUNG'S MOTION IN LIMINE NUMBER 9.  THAT MOTION

16      IS DENIED.

17              WITH REGARD TO NUMBER 10, APPLE'S

18      ACQUISITION OF FINGERWORKS, THE MOTION IS UNOPPOSED

19      AND IT'S GRANTED.

20              OKAY.  ALL RIGHT.  ANYTHING ELSE WE HAVE

21      TO DO TODAY?

22              MR. MCELHINNY:  WELL, NOW I NEED ONE

23      CLARIFICATION.

24              THE COURT:  OKAY.

25              MR. MCELHINNY:  I UNDERSTAND THAT -- IT'S

1    ON THE STEVE JOBS ISSUE.

2              THE COURT:  YES.

3              MR. MCELHINNY:  I UNDERSTAND THAT YOUR

4    HONOR HAS GRANTED SPECIFIC MOTIONS TALKING ABOUT --

5    YOU DON'T WANT TO GLORIFY MR. JOBS AND YOU DON'T

6    WANT TO TALK ABOUT HOW DESIGN WAS IMPORTANT TO HIM.

7              THE COURT:  YES.

8              MR. MCELHINNY:  I DO NOT UNDERSTAND YOUR

9    HONOR TO HAVE SAID HIS NAME CAN'T BE MENTIONED IN

10   THE COURTROOM.  HE IS AN INVENTOR ON THESE PATENTS.

11   HE -- THERE WERE PRESS CONFERENCES HELD IN WHICH

12   THAT -- WE WANT TO PUT THAT -- THAT WAS THE

13   ANNOUNCEMENT.  THAT WAS THE FAME.  HIS NAME IS

14   MENTIONED IN THE NEWSPAPER ARTICLES.

15             THE COURT:  THAT'S FINE.  I'M NOT DOING A

16   COMPLETE PROHIBITION OF STEVE JOBS, BUT IT NEEDS TO

17   BE REALLY RELEVANT TO THE CASE.

18             MR. MCELHINNY:  I TAKE THAT.

19             THE COURT:  THIS IS NOT GOING TO BE A

20   CHARISMA CONTEST.  IT'S NOT GOING TO BE DO YOU LOVE

21   HIM OR HATE HIM.  IT'S ONLY IF IT'S EXACTLY

22   RELEVANT TO SOME ISSUE IN THIS CASE.

23             MR. MCELHINNY:  THANK YOU, YOUR HONOR.

24             MR. VERHOEVEN:  MY CONCERN, YOUR HONOR,

25   JUST REALLY BRIEFLY, IS I DON'T WANT TO SEE, IN

```
 1

 2

 3

 4                    CERTIFICATE OF REPORTER

 5

 6

 7

 8          I, THE UNDERSIGNED OFFICIAL COURT

 9    REPORTER OF THE UNITED STATES DISTRICT COURT FOR

10    THE NORTHERN DISTRICT OF CALIFORNIA, 280 SOUTH

11    FIRST STREET, SAN JOSE, CALIFORNIA, DO HEREBY

12    CERTIFY:

13            THAT THE FOREGOING TRANSCRIPT,

14    CERTIFICATE INCLUSIVE, CONSTITUTES A TRUE, FULL AND

15    CORRECT TRANSCRIPT OF MY SHORTHAND NOTES TAKEN AS

16    SUCH OFFICIAL COURT REPORTER OF THE PROCEEDINGS

17    HEREINBEFORE ENTITLED AND REDUCED BY COMPUTER-AIDED

18    TRANSCRIPTION TO THE BEST OF MY ABILITY.

19

20

21               /S/
                 _____
22               LEE-ANNE SHORTRIDGE, CSR, CRR
                 CERTIFICATE NUMBER 9595
23

24

25               DATED:  JULY 20, 2012
```

# EXHIBIT E

1

2

3

4

5              **IN THE UNITED STATES DISTRICT COURT**

6            **FOR THE EASTERN DISTRICT OF CALIFORNIA**

7

8    KAAP INDUSTRIES,                          CASE NO. CV F 06-0417  LJO GSA

9                    Plaintiff,               **ORDER ON PARTIES' MOTIONS
                                              IN LIMINE; HEARING VACATED**
10         vs.

11   BURNS & McDONNELL ENGINEERING
     COMPANY, INC.,
12
                    Defendant.
13   _____/

14

15         On April 25, 2008, Plaintiff KAAP Industries filed motions in limine.  Also on April 25, 2008,

16   Defendant Burns & McDonnell Engineering Company, Inc. filed its motions in limine.  On May 5, 2008,

17   the parties filed oppositions to the other parties' motions.  The Court found the motions in limine suitable

18   for decision without oral argument, pursuant to Local Rule 78-230(h), and vacated the hearing.  Having

19   considered the parties' motions and their oppositions, as well as the Court's file, the Court rules as

20   follows.

21   _____**PLAINTIFF'S MOTIONS IN LIMINE**_____

22         **Motion No. 1 - Motion to exclude reference to employment history of Richard Sherman**.

23   The defendant's opposition to the instant motion is convincing to show the relevancy and need for the

24   Sherman employment evidence, including but not limited to, credibility.  The motion is DENIED.

25         **Motion No. 2 - Motion to exclude witnesses from the courtroom.**  The motion is the same as

26   defendant's motion no. 3.  The motion is GRANTED.

27         **Motion No. 3 - Motion to preclude irrelevant testimony or facts to issues set forth in the**

28   **Pretrial Order.**  The motion is the same as defendant's motion no. 2.  The motion is GRANTED.

1   **Motion No. 4 - Motion to exclude undisclosed witnesses and unproduced documents in**

2   **discovery.**  The motion is the same as defendant's motion no. 4.  The motion is GRANTED, except as

3   to legitimate and true sur-rebuttal.

4   <u>**DEFENDANT'S MOTIONS IN LIMINE**</u>

5   **Motion No. 1 - Motion to preclude plaintiff from disproving any fact which is an**

6   **undisputed fact in the Pretrial Order.**  The motion is GRANTED.

7   **Motion No. 2 -  Motion to preclude irrelevant testimony or facts not in Court's Pretrial**

8   **Order**.  The motion is GRANTED.

9   **Motion No. 3 - Motion to exclude witnesses from the courtroom**.  The motion is GRANTED.

10   **Motion No. 4 - Motion to exclude undisclosed witnesses and unproduced documents.**  The

11   motion is GRANTED, except as to legitimate and true rebuttal.

12   **Motion No. 5 - Motion to exclude post dispute statements for purposes of interpreting the**

13   **terms of the contract.**   In this motion, defendant seeks to exclude the statement of defendant's

14   principal, Ms. Thompson, that "If it were up to her, she'd have paid plaintiff."  The motion is DENIED.

15   The statement may go to the issue of plaintiff's performance of the contract.  This ruling does not

16   preclude defendant from putting the statement in context, and/or explaining the statement's purpose or

17   denying the statement was made at all.

18   **Motion No. 6 - Motion to admit evidence of videotaped deposition of Wesley Miess**.  Mr.

19   Miess's deposition was noticed pursuant to Fed.R.Civ.P. 30(b)(3) and 32(a).  Mr. Miess resides in

20   Chicago, Illinois which is more than 100 miles from the place of trial.  The motion is GRANTED on

21   both procedural grounds and relevancy grounds (See the Court's ruling on Plaintiff's Motion No. 1).

22   **Motion No. 7 - Motion to exclude evidence regarding defendant's financial resources and**

23   **profit on the project.**  The motion, as it pertains to the defendant's financial resources in general, is

24   GRANTED.

25   /////

26   /////

27   /////

28   /////

2

1    The motion on the issue of profits on the instant project is DENIED, if defendant intends on

2  taking a position in trial that any amounts allegedly owed were unpaid and therefore a profit was not

3  realized.  Otherwise, the motion is GRANTED.  Defendant must file a declaration within three (3) Court

4  days of the date of this order indicating its intent in this regard.  Failure to comply will lead to a denial

5  of this motion.

6  IT IS SO ORDERED.

7  **Dated:    May 7, 2008**              /s/ Lawrence J. O'Neill
                                          UNITED STATES DISTRICT JUDGE

3

# EXHIBIT F

| | | |
|---|---|---|
| 1 | MR. GLACKIN:  Objection, vague, | 08:19:35 |
| 2 | mischaracterizes. | 08:19:37 |
| 3 | BY MR. PICKETT: | 08:19:38 |
| 4 | Q.   That's the second part of the analysis? | 08:19:38 |
| 5 | A.   I also don't accept their word of member, | 08:19:42 |
| 6 | that phrase should not be added.  I was asked to do | 08:19:45 |
| 7 | it to answer the question as it's phrased here. | 08:19:50 |
| 8 | Q.   Let's do this -- (Cross-talking.) | 08:19:53 |
| 9 | A.   With this question, if that's the -- if | 08:19:55 |
| 10 | that's what you're asking me, was I provided this | 08:19:58 |
| 11 | question, the answer is yes. | 08:20:01 |
| 12 | Q.   So let's go back.  It's a two-part analysis | 08:20:02 |
| 13 | as reflected in 10a and 10b of your report, | 08:20:05 |
| 14 | correct? | 08:20:09 |
| 15 | A.   That's correct. | 08:20:09 |
| 16 | Q.   And as to whether you were looking at | 08:20:10 |
| 17 | quantifying the amount of suppressed compensation | 08:20:14 |
| 18 | suffered by a particular group, you're saying you | 08:20:16 |
| 19 | only looked at whether each class -- you could | 08:20:20 |
| 20 | quantify the amount of suppressed compensation | 08:20:24 |
| 21 | suffered by each class, not each class member? | 08:20:27 |
| 22 | A.   That's correct. | 08:20:31 |
| 23 | Q.   So you haven't looked at whether there is a | 08:20:32 |
| 24 | class-wide method capable of quantifying the amount | 08:20:34 |
| 25 | of suppressed compensation suffered by each class | 08:20:38 |

Page 23

HIGHLY CONFIDENTIAL

```
1    member?                                                08:20:41

2            MR. GLACKIN:  Objection, vague.                08:20:41

3            THE WITNESS:  That was not my task.            08:20:44

4    BY MR. PICKETT:                                        08:20:47

5       Q.   So that would be, "Yes, I have not looked     08:20:47

6    at that"?                                              08:20:50

7       A.   That's correct.                                08:20:51

8       Q.   And when you looked at the method capable     08:20:56

9    of quantifying the amount of suppressed compensation  08:21:02

10   suffered by each class, is that reduction an           08:21:05

11   aggregate number for each class?                       08:21:14

12      A.   Well, I provided numbers defendant by         08:21:20

13   defendant.                                             08:21:25

14      Q.   Right.  Year by year a percentage --          08:21:25

15   (Cross-talking.)                                       08:21:27

16      A.   Year by year -- (Cross-talking.)              08:21:27

17      Q.   And that was year by year then, an            08:21:29

18   aggregate number for the whole class?                  08:21:31

19      A.   Defendant by defendant.                        08:21:35

20      Q.   And you haven't examined whether individual   08:21:40

21   class members, defendant by defendant, year by year,  08:21:45

22   were impacted equally?                                 08:21:50

23      A.   Well, in answering that question, I have      08:21:54

24   done a little bit of work on the -- on                 08:21:55

25   distinguishing members of the class, if you look at   08:22:01
```

Page 24

HIGHLY CONFIDENTIAL

| | | |
|---|---|---|
| 1 | damages varied with age, but instead to control for | 08:57:01 |
| 2 | any composition differences between the firms so | 08:57:05 |
| 3 | that you get as accurate as possible an estimate of | 08:57:08 |
| 4 | the firm by firm effect year by year. | 08:57:11 |
| 5 | Q.   But if you look at individual class | 08:57:14 |
| 6 | members, like this sous chef, your regression | 08:57:15 |
| 7 | analysis cannot tell whether there was any | 08:57:17 |
| 8 | suppression of wages for that individual, correct? | 08:57:23 |
| 9 | MR. GLACKIN:  Objection. | 08:57:25 |
| 10 | THE WITNESS:  That's correct.  That was not | 08:57:26 |
| 11 | part of the task that I was assigned. | 08:57:27 |
| 12 | BY MR. PICKETT: | 08:57:37 |
| 13 | Q.   In a competitive market, what does it imply | 08:57:37 |
| 14 | about two products or services if one is able to | 08:57:41 |
| 15 | command double of the price? | 08:57:44 |
| 16 | A.   Now, are you talking about facts now or | 08:57:46 |
| 17 | theory? | 08:57:48 |
| 18 | Q.   Theory. | 08:57:48 |
| 19 | A.   From a conceptual framework, so can you be | 08:57:48 |
| 20 | clear to me what the -- what the -- what do you mean | 08:57:52 |
| 21 | by a competitive model, you mean a simple supply and | 08:57:55 |
| 22 | demand model? | 08:57:58 |
| 23 | Q.   Sure. | 08:58:00 |
| 24 | A.   So can you repeat your question again? | 08:58:00 |
| 25 | Q.   In a competitive market, what does it imply | 08:58:01 |

Page 57

HIGHLY CONFIDENTIAL

```
1         Q.    The individual's --                      17:30:52

2         A.    -- depends on the number of new hires.  But  17:30:53

3    it's a very -- it's a model that describes an        17:30:56

4    individual, not the firm.  So you'd have to carry    17:30:59

5    out this exercise -- if you're interested in Adobe,  17:31:02

6    you'd have to carry out the exercise with regard to  17:31:03

7    all employees at Adobe, allowing for the different   17:31:05

8    ages, and tenure, and etc.                           17:31:08

9         Q.    To -- to find individual impact?          17:31:11

10        A.    I -- I think that that's a                17:31:14

11   misinterpretation.  It's rather -- you aggregate     17:31:15

12   that then to the level of the firm by summing up     17:31:18

13   over all Adobe employees, and that estimate is an    17:31:22

14   estimate that is corrected for the age competition   17:31:25

15   of an employee of the Adobe workforce.               17:31:28

16        Q.    And the only two variables within a company  17:31:30

17   that make a difference are age and number of new     17:31:33

18   hires?                                               17:31:38

19        A.    Correct.  Those are the only two that drive  17:31:38

20   the conduct variable.                                17:31:45

21        Q.    Now, this is an aggregated regression,    17:31:48

22   correct?  Not disaggregated by company?              17:31:50

23        A.    Well, this is individual data.            17:31:55

24        Q.    The analysis is not disaggregated, it's   17:31:57

25   aggregated, correct?                                 17:31:58
```

Veritext National Deposition & Litigation Services
866 299-5127

| | | |
|---|---|---|
| 1 | MR. GLACKIN:  Objection, vague, | 17:32:01 |
| 2 | mischaracterizes. | 17:32:02 |
| 3 | THE WITNESS:  Well, the data from all firms | 17:32:03 |
| 4 | are included in the estimation process. | 17:32:06 |
| 5 | BY MR. PICKETT: | 17:32:08 |
| 6 | Q.   All right.  Let me go back.  You did run a | 17:32:08 |
| 7 | disaggregation analysis, correct? | 17:32:09 |
| 8 | A.   Yeah, that's what I just said.  I mean, | 17:32:13 |
| 9 | maybe I ought to repeat what I said, which is this | 17:32:15 |
| 10 | regression is not disaggregated, in the sense that | 17:32:17 |
| 11 | includes observation from all firms. | 17:32:22 |
| 12 | Q.   Correct. | 17:32:26 |
| 13 | A.   Although, it does have variables that | 17:32:26 |
| 14 | describe differences among the firms. | 17:32:29 |
| 15 | Q.   It describes data from all firms, | 17:32:31 |
| 16 | correct? | 17:32:34 |
| 17 | A.   It uses the input data from all firms. | 17:32:34 |
| 18 | Q.   So it is not disaggregated firm by firm by | 17:32:37 |
| 19 | firm? | 17:32:39 |
| 20 | A.   If you use the word "disaggregation" to | 17:32:40 |
| 21 | refer to estimating the same equation on subsets of | 17:32:45 |
| 22 | the data on a firm-by-firm basis, that's not what | 17:32:47 |
| 23 | this is. | 17:32:49 |
| 24 | Q.   And the result you get is aggregated, | 17:32:52 |
| 25 | true? | 17:32:57 |

Page 399

1        Q.  But that's what your model produces.

2        A.  Well, my model produces an estimate of the

3    damages.  I didn't build a model that was intended to

4    disaggregate individual-by-individual.  So this is an

5    attempt to control for the differences in the age          11:16:37

6    distributions across firms, and when you -- when you do

7    this, it doesn't have a big impact on the -- on the

8    damages.

9        Q.  But you continue to maintain and use the age

10   conduct variables in your calculation of damages;          11:16:52

11   correct?

12       A.  Well, this is the data -- most -- among the

13   functional forms that we estimated, this is the one that

14   the data likes the most.  So if my job were to determine

15   the age profile of impact, I would have taken another      11:17:07

16   step.  But in terms of controlling for the differences

17   among firms and the differences over time as firms hire

18   or as their workforce changes, this seems to me to be an

19   adequate calculation.

20           It's inappropriate if my task were to determine    11:17:25

21   the age profile of damages.  It's completely appropriate

22   if my task is to correct for differences in age

23   composition of the workforces of these seven defendants.

24       Q.  But your result is inconsistent with your theory

25   about who is most likely to be cold-called.  Doesn't that  11:17:45

                                                   Page 954

1    number that I'm looking at here.

2        Q.   Right.  But based on this description, we're

3    following your model correctly; is that right?

4            MR. GLACKIN:  Object to the form.

5            THE WITNESS:  Well, you're misusing my model for        11:21:59

6    the reasons I already indicated.

7        Q.   BY MR. RILEY:  How are we misusing it?

8        A.   Because I said before that my intent was not to

9    produce an estimate of damages person-by-person,

10    age-by-age.  I wanted to estimate the collective damages        11:22:13

11    for each firm in every year.

12        Q.   So your model cannot be correctly applied to

13    determine the alleged damages for any individual?

14        A.   That's correct.  I think that I would use it in

15    a different way.  I would certainly be aware -- if you're        11:22:23

16    asking me to create a wage profile, an age profile of

17    damages, I would certainly have done this exercise in a

18    somewhat different way.

19        Q.   How would you have done it if you were asked to

20    compute damages for individuals?        11:22:41

21            MR. GLACKIN:  Object to the form.

22            THE WITNESS:  Well, I would look at the

23    distribution exactly.  In fact, I did.  I looked at that

24    curve, and it bothered me that it had that shape because

25    it wasn't consistent with my understanding of the impacts        11:22:52

                                        Page 957

```
 1        A.  I think that's --

 2            MR. GLACKIN:  Object to the form.

 3            THE WITNESS:  That's not fair at all.  Because

 4    the analysis that I've done has computed the percentage

 5    suppression of the Lucasfilm compensation, and this          13:34:36

 6    individual is impacted by that suppressed compensation

 7    whether he's honest or dishonest.

 8        Q.  BY MR. RILEY:  But the extent to which he has

 9    suffered any damages is not computed on the basis of

10    those percentages of suppression?                            13:34:54

11            MR. GLACKIN:  Object to the form.

12            THE WITNESS:  I don't understand that question.

13        Q.  BY MR. RILEY:  Earlier today you kept correcting

14    me that we couldn't compute damages just using those four

15    conduct variables correct?                                   13:35:06

16        A.  I said that the model that I've estimated, that

17    I've presented, is inappropriate for computing damages on

18    an individual-by-individual basis.  That's correct.

19        Q.  BY MR. RILEY:  Okay.  That's all I wanted.

20        A.  But this gentleman is in the damages.               13:35:24

21        Q.  He's in your damages model?

22        A.  He's in the damage number.

23        Q.  Right.

24        A.  But let's not think of the model as a way of

25    estimating his particular circumstances.                    13:35:35
```

                                                  Page 1019