# EXHIBIT DDD TO CISNEROS DECLARATION REDACTED VERSION

```
 1                UNITED STATES DISTRICT COURT

 2               NORTHERN DISTRICT OF CALIFORNIA

 3                     SAN JOSE DIVISION

 4

 5    IN RE:  HIGH-TECH EMPLOYEE      )

 6    ANTITRUST LITIGATION            )

 7                                    )   No. 11-CV-2509-LHK

 8    THIS DOCUMENT RELATES TO:       )

 9    ALL ACTIONS.                    )

10    _____

11

12        VIDEO DEPOSITION OF ELIZABETH BECKER, Ph.D.

13                   December 10, 2013

14

15    Reported by:  Anne Torreano, CSR No. 10520

16

17

18

19

20

21

22

23

24

25
```

```
09:48:59  1  guess, informative to some other people that were
09:49:01  2  designing recommendations.
09:49:02  3        So I would say that I wasn't the person
09:49:05  4  making the recommendations but the person doing some
09:49:08  5  number-crunching to assist in those who were
09:49:11  6  thinking about, you know, whether they would want to
09:49:18  7  change some of the processes that were in place
09:49:21  8  within their own structure.
09:49:22  9     Q.  Okay.  Any other assignments you can recall
09:49:30 10  in your career where you have been called on to make
09:49:35 11  recommendations about compensation in a company?
09:49:37 12     A.  So let me just be clear that I think what I
09:49:45 13  just said is that I wasn't called upon to make
09:49:47 14  recommendations in the cases that I've talked about
09:49:49 15  but was doing quantitative analysis to help other
09:49:52 16  people.
09:49:52 17        So I don't quite understand your
09:49:54 18  question --
09:49:54 19     Q.  Okay.
09:49:54 20     A.  -- because it sounds like you're asking are
09:49:55 21  there other places where I made recommendations, but
09:49:57 22  I didn't make recommendations in those circumstances
09:50:00 23  I've just been talking about.
09:50:01 24     Q.  Okay.  So just -- we may have just been
09:50:04 25  misunderstanding each other.  I misunderstood you,
```

| | | |
|---|---|---|
| 09:50:09 | 1 | not -- not the opposite. |
| 09:50:09 | 2 | So you have never in your career made |
| 09:50:12 | 3 | recommendations about compensation changes.  Your |
| 09:50:14 | 4 | role has been to do qualitative analysis, and other |
| 09:50:17 | 5 | people handle that recommendation part of it? |
| 09:50:20 | 6 | MR. KIERNAN:  Object to form. |
| 09:50:21 | 7 | THE WITNESS:  Yeah, I think my -- I think |
| 09:50:23 | 8 | that's a fair characterization.  My primary role is |
| 09:50:26 | 9 | to do qualitative analysis in order to help those |
| 09:50:30 | 10 | who have to make decisions ultimately about what's |
| 09:50:33 | 11 | happening within their own employee populations to |
| 09:50:37 | 12 | help them make decisions that may be better |
| 09:50:41 | 13 | informed, I hope, by the work that I do. |
| 09:50:44 | 14 | So I -- I'm not really the one that's |
| 09:50:47 | 15 | making the recommendations.  I'm the one that's |
| 09:50:49 | 16 | providing information that may -- you know, may or |
| 09:50:51 | 17 | may not have an influence on recommendations that |
| 09:50:54 | 18 | are made. |
| 09:50:54 | 19 | BY MS. DERMODY: |
| 09:50:54 | 20 | Q.  Okay.  In your prior work, have you studied |
| 09:50:59 | 21 | the relationship between bonus pay and base pay? |
| 09:51:11 | 22 | MR. KIERNAN:  Object to form. |
| 09:51:12 | 23 | THE WITNESS:  That's a pretty broad |
| 09:51:17 | 24 | question. |
| 09:51:19 | 25 | BY MS. DERMODY: |

| | | |
|---|---|---|
| 09:51:19 | 1 | Q. Have you studied whether bonus pay and base |
| 09:51:22 | 2 | pay are correlated in your other work? |
| 09:51:29 | 3 | A. I'm not sure I've ever done a study where |
| 09:51:37 | 4 | specifically I was evaluating correlation between |
| 09:51:39 | 5 | base and bonus. I've certainly looked at |
| 09:51:42 | 6 | compensation systems that had both base and bonus. |
| 09:51:45 | 7 | But specific correlation studies? No, I'm not |
| 09:51:49 | 8 | recalling that I've ever specifically evaluated |
| 09:51:51 | 9 | correlations between them. |
| 09:51:53 | 10 | Q. Okay. And same question for stock options |
| 09:51:58 | 11 | or equity compensation and base salary. |
| 09:52:00 | 12 | Have you ever done any study to see whether |
| 09:52:02 | 13 | they're correlated in any company? |
| 09:52:04 | 14 | A. I think the answer is the same, is that |
| 09:52:06 | 15 | I've certainly looked at companies that paid both in |
| 09:52:09 | 16 | the form of base salary and equity. I'm not |
| 09:52:16 | 17 | recalling any time where I specifically evaluated a |
| 09:52:19 | 18 | correlation between them. |
| 09:52:22 | 19 | Q. Okay. Over the past year, how much of your |
| 09:52:30 | 20 | income has been attributable to litigation matters |
| 09:52:33 | 21 | you're working on? |
| 09:52:34 | 22 | A. Well, that's not really how I'm -- I mean, |
| 09:52:47 | 23 | I don't -- it would be hard for me to figure that |
| 09:52:52 | 24 | out, I guess, the answer, because I'm not -- you |
| 09:52:57 | 25 | know, I work for a company, and I don't get paid in |

| | | |
|---|---|---|
| 09:53:04 | 1 | a way that makes it easy for me to answer that |
| 09:53:06 | 2 | question, I guess is the answer. |
| 09:53:09 | 3 | Q.  What's your best estimate of how much of |
| 09:53:15 | 4 | your income is attributable to litigation matters? |
| 09:53:18 | 5 | A.  Now we have to go back to multiplying and |
| 09:53:23 | 6 | dividing; right? |
| 09:53:25 | 7 | How much of my income is directly related |
| 09:53:28 | 8 | to work that I've done on litigation matters?  Like |
| 09:53:35 | 9 | incrementally related?  I don't even understand your |
| 09:53:38 | 10 | question exactly. |
| 09:53:39 | 11 | Q.  Do you get paid an income from your current |
| 09:53:42 | 12 | employer? |
| 09:53:42 | 13 | A.  I do get paid by my current employer, yes. |
| 09:53:45 | 14 | Q.  Okay.  And do you have a set base salary? |
| 09:53:48 | 15 | A.  I have a base salary, yes. |
| 09:53:49 | 16 | Q.  Okay.  What is your annual base salary? |
| 09:53:52 | 17 | A.  You know, I should -- it's 300,000. |
| 09:53:58 | 18 | Q.  Okay.  And do you get paid any type of |
| 09:54:02 | 19 | interest in the cases that you work on that are |
| 09:54:05 | 20 | billed by your company? |
| 09:54:07 | 21 | A.  I wouldn't -- |
| 09:54:08 | 22 | MR. KIERNAN:  Object to form. |
| 09:54:08 | 23 | THE WITNESS:  Yes, I wouldn't characterize |
| 09:54:11 | 24 | it as me being paid interest in my cases. |
| 09:54:13 | 25 | BY MS. DERMODY: |

```
09:54:13   1        Q.  Okay.  Do you get paid a bonus based on the
09:54:17   2   money you bring in from the cases that you work on?
09:54:20   3        A.  I get paid a bonus that has multiple
09:54:25   4   criteria that are considered.
09:54:30   5        Q.  Okay.
09:54:31   6        A.  So -- yeah, so, you know, there -- it's --
09:54:35   7   there's some qualitative elements to it.  There are
09:54:38   8   some -- you know, some other metrics that are used
09:54:43   9   in the determination of the bonus, but it's not --
09:54:46  10   it's not strictly formulaic, I guess is what I'm
09:54:50  11   trying to say.
09:54:50  12        Q.  Okay.  So why don't we take last year as an
09:54:53  13   example, because it's over.  So what was your
09:54:55  14   compensation package last year?
09:54:56  15        A.  What was the total amount I earned?
09:54:58  16        Q.  Well, let's start with the components of
09:55:00  17   it.  You had a base salary presumably?
09:55:02  18        A.  Right.
09:55:02  19        Q.  Okay.  What else?
09:55:03  20        A.  A bonus.
09:55:04  21        Q.  Bonus.  Okay.
09:55:09  22            Anything else?
09:55:10  23        A.  Well, I had expense reimbursements, but I
09:55:15  24   don't think we're counting that as income; right?
09:55:18  25        Q.  Right.
```

Deposition of Elizabeth Becker, Ph.D.                In Re:  HIGH-TECH EMPLOYEE ANTITRUST LITIGATION

```
02:20:31   1   he made no effort to support with facts or data, the
02:20:34   2   data show that bonus and equity are not fixed to
02:20:37   3   base salary and vary highly across employees, time
02:20:40   4   and defendants."
02:20:41   5           Do you see that?
02:20:41   6      A.   Yes.
02:20:42   7      Q.   I think we covered this earlier today, but
02:20:44   8   just if you can confirm for me, you performed no
02:20:48   9   correlation study to determine the relationship, if
02:20:50  10   any, between equity and base salary here; is that
02:20:52  11   correct?
02:20:53  12           MR. KIERNAN:  Object to form.
02:20:53  13           THE WITNESS:  No, that's not -- that's -- I
02:21:02  14   did examine the relationship between bonus and
02:21:08  15   salary and between equity and salary.  The reason I
02:21:10  16   have this as a summary of opinions is because I
02:21:12  17   believe that I have evidence that the bonus and
02:21:15  18   equity are not fixed to base salary in the way that
02:21:20  19   Dr. Hallock describes, and I have some, you know,
02:21:23  20   analyses in my report that support that empirically,
02:21:26  21   and I also, you know, having reviewed the -- you
02:21:30  22   know, the depositions and declarations we were
02:21:32  23   talking about earlier, also have an understanding
02:21:36  24   that bonus and in particular equity awards could
02:21:41  25   vary much more greatly than what base salary would
```

| | | |
|---|---|---|
| 02:21:44 | 1 | vary. |
| 02:21:44 | 2 | BY MS. DERMODY: |
| 02:21:44 | 3 |    Q.  Okay.  The statement here is about data, so |
| 02:21:46 | 4 | let's stick with your data support for this |
| 02:21:49 | 5 | statement.  You say the data show. |
| 02:21:50 | 6 |      What is the correlation study that you did |
| 02:21:53 | 7 | to examine the question of whether there was a |
| 02:21:56 | 8 | relationship between base salary and bonus at any of |
| 02:21:59 | 9 | the seven defendants? |
| 02:22:00 | 10 |      MR. KIERNAN:  Object to form. |
| 02:22:01 | 11 |      THE WITNESS:  Well, I think it's a -- it's |
| 02:22:06 | 12 | not a correlation study.  It's an -- I would call it |
| 02:22:11 | 13 | more of an anticorrelation study, which is that the |
| 02:22:16 | 14 | bonus is varying with -- it's varying in relation to |
| 02:22:22 | 15 | salary.  I mean, those are the studies that really |
| 02:22:25 | 16 | show how the base salary, bonus and equity vary in |
| 02:22:33 | 17 | relation to one another over time and how varied |
| 02:22:36 | 18 | they are across the different defendants. |
| 02:22:37 | 19 |      So I think that the -- |
| 02:22:43 | 20 | BY MS. DERMODY: |
| 02:22:43 | 21 |    Q.  So what your studies focused on is a |
| 02:22:46 | 22 | snapshot describing what is the mix -- |
| 02:22:48 | 23 |      MR. KIERNAN:  Hang on. |
| 02:22:49 | 24 | BY MS. DERMODY: |
| 02:22:49 | 25 |    Q.  -- of different -- |

| | | |
|---|---|---|
| 02:22:49 | 1 | MR. KIERNAN:  Were you finished with your |
| 02:22:50 | 2 | answer? |
| 02:22:50 | 3 | THE WITNESS:  No, I just wanted to point |
| 02:22:52 | 4 | out the exhibits that I think are the summaries of |
| 02:22:56 | 5 | those results are in -- you know, basically I would |
| 02:23:02 | 6 | say it was in -- you know, it's in the Exhibits B, |
| 02:23:06 | 7 | you know, B-3, B-4, B-5, B-6, you know, in those -- |
| 02:23:14 | 8 | B-7 and B-8.  Those are the summary -- you know, |
| 02:23:18 | 9 | those are the exhibits that summarize the data |
| 02:23:20 | 10 | analysis of how variable bonuses are. |
| 02:23:24 | 11 | And then the ones that follow that are the |
| 02:23:27 | 12 | analyses that describe the variability of equity |
| 02:23:32 | 13 | relative to base salary. |
| 02:23:34 | 14 | BY MS. DERMODY: |
| 02:23:34 | 15 | Q.  So this is showing that the mix of total |
| 02:23:39 | 16 | comp that is base versus bonus changes over time, |
| 02:23:45 | 17 | but it's not actually studying the relationship |
| 02:23:48 | 18 | between people of the same base salary and their |
| 02:23:52 | 19 | bonus across the same year in any given company. |
| 02:23:56 | 20 | MR. KIERNAN:  Object to form. |
| 02:23:57 | 21 | THE WITNESS:  Which one are you looking at? |
| 02:23:59 | 22 | BY MS. DERMODY: |
| 02:23:59 | 23 | Q.  Well, any of these.  These B-3s, whatever. |
| 02:24:01 | 24 | It's -- you don't even have to look at the chart. |
| 02:24:03 | 25 | It's just a question. |

| | | |
|---|---|---|
| 02:24:05 | 1 | MR. KIERNAN:  Same objection. |
| 02:24:06 | 2 | THE WITNESS:  No, I mean, what B-3 is |
| 02:24:09 | 3 | showing is that the ratio -- I mean, this one has to |
| 02:24:11 | 4 | do with equity.  You know, that type of an incentive |
| 02:24:15 | 5 | compensation.  That equity grants relative to base |
| 02:24:18 | 6 | salary, you know, cover an enormous range from, you |
| 02:24:22 | 7 | know, from some people getting zero to some people |
| 02:24:26 | 8 | getting two times or, in the case of Google, ▮▮▮▮▮▮ |
| 02:24:29 | 9 | ▮▮▮▮▮▮▮▮▮▮ |
| 02:24:30 | 10 | We even had to exclude some to make the |
| 02:24:33 | 11 | graph even being meaningful.  That there are some |
| 02:24:36 | 12 | people that have ratios that are greater than four |
| 02:24:38 | 13 | times, that their equity grants relative to their |
| 02:24:42 | 14 | base salary may be as much as four times their base |
| 02:24:45 | 15 | salary, while you have other people that didn't get |
| 02:24:48 | 16 | any.  Or some people that got 10 or 20 percent. |
| 02:24:51 | 17 | So there's a high variability in terms of |
| 02:24:53 | 18 | incentive awards across the people -- across base |
| 02:24:54 | 19 | salaries. |
| 02:24:54 | 20 | BY MS. DERMODY: |
| 02:24:54 | 21 | Q.  But you made no attempt to plot whether |
| 02:24:57 | 22 | there was a relationship between the base salary of |
| 02:24:59 | 23 | any individual or set of employees and the amount of |
| 02:25:02 | 24 | bonus or equity that that group was getting? |
| 02:25:05 | 25 | A.  These are summaries of individuals, so each |

| | | |
|---|---|---|
| 02:25:08 | 1 | of these little bars represents an accumulation of |
| 02:25:10 | 2 | all the individuals that are at that ratio of equity |
| 02:25:14 | 3 | grant to base salary.  So what we're saying is -- |
| 02:25:17 | 4 |     Q.  But you're not trying to do a plot of |
| 02:25:21 | 5 | everyone that is a, you know, Google T-4, relative |
| 02:25:25 | 6 | to their base salary, what is -- what is the |
| 02:25:29 | 7 | regression that shows the relationship between that |
| 02:25:32 | 8 | and the bonus that they got or the equity that they |
| 02:25:37 | 9 | got, or what is the correlation chart that shows |
| 02:25:39 | 10 | whether there is a relationship between a person's |
| 02:25:43 | 11 | base salary and the amount of the grant they got, |
| 02:25:46 | 12 | not every single grant that was given in the company |
| 02:25:48 | 13 | but within a same salary band? |
| 02:25:51 | 14 |     A.  Yeah -- |
| 02:25:51 | 15 |         MR. KIERNAN:  Object to form. |
| 02:25:52 | 16 |         THE WITNESS:  -- I think maybe you're just |
| 02:25:53 | 17 | not understanding.  Because this is actually -- |
| 02:25:55 | 18 | these are actually pictures of the ratio of the, you |
| 02:26:01 | 19 | know, equity grants to the base salary.  So in |
| 02:26:05 | 20 | that -- |
| 02:26:05 | 21 | BY MS. DERMODY: |
| 02:26:05 | 22 |     Q.  For every employee of every different |
| 02:26:07 | 23 | salary? |
| 02:26:08 | 24 |     A.  Yes.  Well, I mean, with the qualifications |
| 02:26:11 | 25 | that are listed down here is that -- for example, |

```
02:26:15  1   some of these we didn't report the really extremely
02:26:19  2   high values, just because then the picture gets a
02:26:21  3   little uninformative.  You know, if you've got to
02:26:23  4   pick some -- a number that's way out here, then all
02:26:25  5   of this sort of gets squished up.
02:26:28  6           But because these are ratios of equity
02:26:31  7   grants to base salary, effectively it's got a
02:26:34  8   control in it for the base salary.  I mean, it's
02:26:36  9   a -- it's a ratio relative to base salary, and so
02:26:41 10   it's telling you the variability in the equity
02:26:45 11   awards relative to the base.
02:26:47 12           That's exactly the exercise that was
02:26:50 13   undertaken here, is to understand the variability in
02:26:53 14   these awards relative to the base.
02:26:55 15           And as you can see, if it's ranging from
02:26:59 16   zero to four times base, I think I would say that
02:27:02 17   that shows an absence of a fixed relationship.
02:27:05 18       Q.  And there's no study between 2005 and 2009
02:27:08 19   of the relationship between base salary and bonus or
02:27:14 20   base salary and equity across that time.  There's no
02:27:19 21   correlation study that does that?
02:27:20 22       A.  Oh, no --
02:27:21 23           MR. KIERNAN:  Object to form.
02:27:22 24           THE WITNESS:  -- these -- these -- you
02:27:24 25   know, we've -- some of these that are portrayed here
```

| | | |
|---|---|---|
| 02:27:27 | 1 | as Exhibit B-3, so for Apple, Google and -- so we |
| 02:27:34 | 2 | did Adobe. |
| 02:27:35 | 3 | BY MS. DERMODY: |
| 02:27:35 | 4 |     Q.   This is 2006? |
| 02:27:36 | 5 |     A.   This is 2007, Exhibit B-3.  It's 2007. |
| 02:27:40 | 6 |     Q.   I'm sorry.  I'm looking at Appendix B-3. |
| 02:27:43 | 7 | What are you looking at?  Because I was looking |
| 02:27:43 | 8 | at -- |
| 02:27:43 | 9 |     A.   Oh, I'm looking at the exhibits. |
| 02:27:46 | 10 | But that's a good point.  That's exactly |
| 02:27:47 | 11 | what I was going to say, was that because a lot of |
| 02:27:50 | 12 | these analyses are done for different defendants and |
| 02:27:55 | 13 | we're doing things across time, a good deal of what |
| 02:27:59 | 14 | was pulled into the report in terms of exhibits was |
| 02:28:02 | 15 | more representative in order to explain the analyses |
| 02:28:06 | 16 | and looked at in more detail.  And then the more |
| 02:28:10 | 17 | comprehensive viewpoints is -- you know, is what's |
| 02:28:14 | 18 | reported back in the appendices. |
| 02:28:16 | 19 | And so Appendix B-3 then goes through |
| 02:28:21 | 20 | Intel, from -- you know, through all the years.  And |
| 02:28:22 | 21 | so it's -- I know it's a little bit much, but you do |
| 02:28:25 | 22 | have to like flip through from 2001, Intel, all the |
| 02:28:29 | 23 | way through 2011 at Intel. |
| 02:28:33 | 24 | But that's why the appendix is so |
| 02:28:35 | 25 | voluminous, because we did everything year by year |

```
02:28:37  1  so that you can see that these types of awards and
02:28:39  2  this type of variability was persistent throughout
02:28:42  3  the entire conduct period.
02:28:44  4       Q.  Dr. Becker, what's a correlation study?
02:28:53  5       A.  And I guess there are a variety of ways to
02:28:56  6  describe that.
02:28:56  7       Q.  What's the scientific way to describe
02:28:59  8  that?  If you're writing a report that's used a
02:29:02  9  correlation study, what would it be?
02:29:04 10            MR. KIERNAN:  Object to form.
02:29:04 11            THE WITNESS:  I mean, generally speaking,
02:29:04 12  with correlation you're talking about relationships
02:29:07 13  between variables.
02:29:08 14  BY MS. DERMODY:
02:29:08 15       Q.  And how do you study that?
02:29:08 16       A.  I mean, it's not that complex a concept, is
02:29:10 17  that you -- you know, you look at relationships
02:29:12 18  between variables.
02:29:13 19            I would say that's what this is.  This is a
02:29:15 20  relationship between equity awards and base salary.
02:29:21 21  In order to be able to evaluate what it looks like
02:29:23 22  for individuals, and we're talking about individuals
02:29:25 23  and we want to see individual variation as opposed
02:29:28 24  to just correlation at the mean, this exactly gives
02:29:31 25  you the picture of what that individual variation
```

| | | |
|---|---|---|
| 02:29:34 | 1 | looks like for all of the people at each of these |
| 02:29:37 | 2 | defendants in any one year. |
| 02:29:39 | 3 |     Q.  Is -- let's see. |
| 02:29:48 | 4 |       Is your assortitative mating study a |
| 02:29:52 | 5 | correlation study? |
| 02:29:55 | 6 |     A.  Well, you could -- you can call regression |
| 02:29:59 | 7 | correlation because it's, you know, a sort of a |
| 02:30:00 | 8 | sophisticated type of a correlation analysis, so I |
| 02:30:04 | 9 | guess you could use that phrase. |
| 02:30:07 | 10 |     We're evaluating relationships between |
| 02:30:09 | 11 | variables in that study.  That was without regard to |
| 02:30:13 | 12 | the question of how things looked individual by |
| 02:30:17 | 13 | individual, and I think, for purposes of |
| 02:30:20 | 14 | understanding and testing Dr. Hallock's propagation |
| 02:30:24 | 15 | mechanism, I think it's much more important to |
| 02:30:26 | 16 | understand the individual-to-individual variation |
| 02:30:31 | 17 | because he's talking about a propagation mechanism |
| 02:30:33 | 18 | that starts out with an individual or a small number |
| 02:30:36 | 19 | of individuals failing to get cold-calls that then |
| 02:30:41 | 20 | causes some suppressive effect to go to other |
| 02:30:44 | 21 | individuals. |
| 02:30:44 | 22 |     So you have to look at it on an individual |
| 02:30:48 | 23 | basis, I think, or it's valuable to look at it on an |
| 02:30:52 | 24 | individual basis when you're testing Dr. Hallock's |
| 02:30:54 | 25 | theories. |

```
 1
 2       I certify under penalty of perjury that the
 3  foregoing is true and correct.
 4
 5  Date _____   _____
 6                                    ELIZABETH BECKER, Ph.D.
 7
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

|    |                                                                          |
|----|--------------------------------------------------------------------------|
| 1  | REPORTER'S CERTIFICATE                                                   |
| 2  | I, Anne Torreano, Certified Shorthand                                    |
| 3  | Reporter licensed in the State of California,                            |
| 4  | License No. 10520, hereby certify that the deponent                      |
| 5  | was by me first duly sworn, and the foregoing                            |
| 6  | testimony was reported by me and was thereafter                          |
| 7  | transcribed with computer-aided transcription; that                      |
| 8  | the foregoing is a full, complete, and true record                       |
| 9  | of said proceedings.                                                     |
| 10 | I further certify that I am not of counsel                               |
| 11 | or attorney for either or any of the parties in the                      |
| 12 | foregoing proceeding and caption named or in any way                     |
| 13 | interested in the outcome of the cause in said                           |
| 14 | caption.                                                                 |
| 15 | The dismantling, unsealing, or unbinding of                              |
| 16 | the original transcript will render the reporter's                       |
| 17 | certificates null and void.                                              |
| 18 | In witness whereof, I have subscribed my                                 |
| 19 | name this 20th day of December, 2013.                                    |
| 20 | [ ] Reading and Signing was requested.                                   |
| 21 | [ ] Reading and Signing was waived.                                      |
| 22 | [X] Reading and Signing was not requested.                               |
| 23 |                                                                          |
| 24 |                                                                          |
| 25 | _____<br>ANNE M. TORREANO, CSR No. 10520        |