IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| IN RE: HIGH-TECH EMPLOYEE ANTITRUST LITIGATION<br><br>THIS DOCUMENT RELATES TO:<br><br>ALL ACTIONS | Master Docket No. 11-CV-2509-LHK<br><br>**ORDER GRANTING PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENTS WITH PIXAR, LUCASFILM, AND INTUIT** |

This matter is before the Court on Plaintiffs' motion for final approval of the proposed class action settlements (the "Settlements") between individual and representative Plaintiffs Michael Devine, Mark Fichtner, Siddharth Hariharan, and Daniel Stover ("Plaintiffs") and the Class they represent, and Intuit Inc., Lucasfilm, Ltd., and Pixar (collectively the "Settling Defendants").[1]  Having considered the Motion, the Settling Parties' Settlement Agreements, the pleadings and other papers filed in this Action, the statements of counsel and the parties, and all of the arguments and evidence presented at the Final Approval Hearing held on May 1, 2014, and for good cause shown, IT IS HEREBY ORDERED as follows:

---

[1] Representative Plaintiff Brandon Marshall died on December 10, 2013, while these Settlements were pending before this Court.  Mr. Marshall's estate shall receive the settlement share to which Mr. Marshall is entitled pursuant to the terms of the Settlements.

1. Unless otherwise defined herein, all terms that are capitalized herein shall have the meanings ascribed to those terms in the Settlement Agreements.

2. The Court has jurisdiction over the subject matter of the Settlement Agreements with respect to and over all parties to the Settlement Agreements, including all Class members and Settling Defendants Pixar, Lucasfilm, Ltd., and Intuit, Inc.

3. The Court confirms its October 30, 2013 Order granting conditional class certification to the Settlement Class.

## I.   The Settlement Is Fair, Adequate, and Reasonable

4. In evaluating a proposed class action settlement under Federal Rule of Civil Procedure 23(e), the standard is whether the settlement "is fundamentally fair, adequate, and reasonable." *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982); *accord Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993). A district court may consider some or all of the following factors when making this determination: "the strength of plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement." *Officers for Justice*, 688 F.2d at 625. The Court finds that the Settlements are fair, adequate, and reasonable in light of these factors.

5. First, the Settlements reflect the strength of Plaintiffs' case as well as the Settling Defendants' position. This Court has been "exposed to the litigants and their strategies, positions and proof," *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1988) (quotation marks and citation omitted), and finds that the judicial policy favoring the compromise and settlement of class action suits is applicable here. *See Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992). The Court is also satisfied that the Settlements were reached after arm's length negotiations by capable counsel, and were not a product of fraud, overreaching, or collusion among the parties. *Id.* at 1290.

6. Second, the risks, expense, complexity, and likely duration of further litigation also support the Court's final approval of the Settlements. Plaintiffs and the Settling Defendants entered into the Settlements in July 2013 after the Court had largely denied Plaintiffs' Class Certification Motion without prejudice, and before the Court ruled on Plaintiffs' Supplemental Class Certification Motion. At the time of the Settlements, there was no guarantee the Court would certify a Class or, if so, whether certification would survive Fed. R. Civ. Proc. 23(f) review. Furthermore, Plaintiffs faced substantial challenges to the admissibility and reliability of their expert opinions on antitrust impact and damages at the time these Settlements were reached. If the case had proceeded to trial, the issues would have been complex and significant. Through the Settlements, the parties reduced the scope of the ongoing litigation and lessened the expense and burden of summary judgment and trial.

7. Third, the extent of discovery completed and the stage of proceedings support approval. The factual investigation and legal analysis required in the three years of this litigation were very substantial. During the discovery process, Class Counsel reviewed over 3.2 million pages of documents, and took or defended nearly 100 depositions, including deposing 85 Defendant fact witnesses, taking or defending numerous expert depositions, and defending the five Class Representative depositions. Dermody Decl., ¶ 9. Defendants also propounded document requests, for which Plaintiffs produced over 31,000 pages. *Id.* With expert assistance, Class Counsel analyzed over 15 gigabytes of employment-related compensation and recruiting data, and studied all Defendants' compensation systems. *Id.* The discovery process, which is now complete, has been thorough.

8. Fourth, the Settlements provide for substantial consideration—a total of $20 million ($9 million from Pixar and Lucasfilm and $11 million from Intuit)— particularly in light of the fact that the Settling Defendants collectively account for less than 8% of Class members, and together account for approximately 5% of total Class compensation. The Settling Defendants also agreed to cooperate with Plaintiffs in terms of authenticating documents and providing the last known contact information for current or former employee-witnesses for notice or subpoena

purposes to the extent consistent with California law. *In re Mid-Atlantic Toyota Antitrust Litig.*, 564 F. Supp. 1379, 1386 (D. Md. 1983). In return, Plaintiffs have agreed to a reasonable and fair release of claims against the Settling Defendants. Moreover, at the time of the Settlements, the Settlements preserved Plaintiffs' ability to pursue all damages caused by the conspiracy, including damages from the Settling Defendants' conduct, from Adobe, Apple, Google, and Intel ("Remaining Defendants"), who remain jointly and severally liable. *In re Corrugated Container Antitrust Litig.*, No. M.D.L. 310, 1981 WL 2093, at *17 (S.D. Tex. June 4, 1981).

9. Fifth, the views of Plaintiffs' counsel, who are experienced in litigating and settling antitrust class actions, weigh in favor of final approval. *Linney v. Cellular Alaska P'Ship*, No. 96-3008-DJL, 1997 WL 450064, at *5 (N.D. Cal. July 18, 1997), *aff'd* 151 F.3d 1234 (9th Cir. 1998). Plaintiffs' counsel have conducted an extensive investigation into the factual and legal issues raised in this Action and endorse the Settlements as fair, adequate, and reasonable.

10. Finally, the reaction of the Class members supports the Court's final approval of the Settlements. Only 147 Class members have timely opted out of the Settlements, while 11,055 Class members have filed claim forms. Only five Class members have objected to the Settlements.[2]

    a. Mr. Sanocki and Mr. Brown object to the amount of the Settlement fund, stating that it should be greater in order to deter anticompetitive behavior in the future. However, these objections do not account for the fact that the Settlements do not constitute all of the relief to the Class. Nor do these objections account for the fact that, at the time of the Settlements, the Class remained able to seek the full amount of estimated damages from the Remaining Defendants, including estimated damages resulting from the Settling Defendants' alleged misconduct. Moreover, the Settlements are appropriate in light of the factors addressed above, including the amount recovered and the risks Plaintiffs faced in pursuing their claims.

---

[2] According to Plaintiffs' counsel, none of the objections or opt-outs were settlement specific. That is, all opt-outs and objections were to both the Intuit Settlement and the Lucasfilm/Pixar Settlement.

          b.        Ms. Merrell and Mr. Grosse appear to object not to the terms of these Settlements, but to the litigation itself and any possible settlement of the action.[3] The compelling documentary evidence and expert analyses suggests that this litigation was well-founded. Furthermore, these objections are inconsistent with the Class's interests and contradict the judicial policy favoring settlement of class actions. *City of Seattle*, 955 F.2d at 1276.

          c.        Finally, Mr. Minshall objected on the grounds that all employee salary information should have been made available so that he could evaluate it and that the settlements should have covered employees who worked for companies that are not defendants in this case because he believes that the agreements may have had broader market impact. On the first point, each Class member knows his or her own salary data or can confirm such from the Claims Administrator. There is no basis to allow Class members access to all salary data, which is highly confidential, but which has already been analyzed for the Court's benefit in the Class certification papers, which are publicly available on the docket. *See Californians for Disability Rights, Inc. v. Cal. DOT*, No. 06-5125-SBA, 2010 U.S. Dist. LEXIS 62837, at *27 (N.D. Cal. June 2, 2010) (overruling class member objection to lack of public information on defendant's overall budget because Plaintiffs and class counsel had considered the information when negotiating settlement). The Court notes that the class papers and supporting expert reports presented their experts' analysis of salary data, antitrust impact, and damages, which were publicly available at the time of settlement approval. As for his second ground, this has no merit, as the claims of employees outside of the Class positions (e.g., at other employers) are not the subject of this case and are not released by these Settlements. The litigation is limited to the seven companies named as defendants, and the Class includes only employees from those companies. In short, Mr. Minshall is seeking something that is not possible in this lawsuit. Therefore, the Court finds that the objections do not cast doubt on the fairness, adequacy, and reasonableness of the Settlements.

---

[3] Ms. Merrell's objections to the amount of attorneys' fees and costs requested by Class Counsel is discussed separately in this Court's order granting Class Counsel's requests for fees, costs, and service awards.

11. Accordingly, the Court finds that the Settlements are fair, adequate, and reasonable within the meaning of Rule 23(e) of the Federal Rules of Civil Procedure.

## II. The Notice Program Was Appropriate

12. Federal Rule of Civil Procedure 23(c)(2)(B) requires that the settling parties provide settlement class members with "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice must clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3)."

13. The Court finds that the notice program, approved by the Court on October 30, 2013, has been implemented and complies with Fed. R. Civ. P. 23(c)(2)(B). Notice was sent to all Class members by first class mail. The Notice, which was edited and approved by this Court, provided a clear description of who is a member of the Class and Class members' rights and options under the Settlements. The Notice explained how to file a claim and receive money from the Settlements, how to opt out of one or both of the Settlements, how to object to one or both of the Settlements, how to obtain copies of relevant papers filed in the case, and how to contact Class Counsel and the Claims Administrator.

14. In addition, the Court-approved Claims Administrator set up a telephone hotline and a case-specific website (the address of which was included in the notice) where Class members can access copies of the Settlement Agreements; the notice; the claim form; the Court's order certifying the litigation Class; the Court's order preliminarily approving the Settlements; and Plaintiffs' motion for attorneys' fees, reimbursement of expenses, and service awards (and supporting declarations of Class Counsel and the Class Representatives). Class members could file claims by mail or electronically on the website. Class members could opt out of or object to

- 6 -

the Settlements by mail or by email. Though the opt-out email address was not functioning for the first three weeks of the notice period, the problem was addressed by a reminder notice sent to Class members that explained the problem with the opt-out email address and its restored functionality, and informed them of extended dates for exercising their rights under the Settlements. There is no evidence that any Class member wanted to opt out but was unable to do so.

### III. The Plan of Allocation Is Fair, Reasonable, and Adequate

15. The Plan of Allocation is fair, reasonable, and adequate. It will provide each claimant with a fractional share based upon each claimant's total base salary received during the conspiracy period. *See In re Oracle Sec. Litig.*, No. 90-0931-VRW, 1994 U.S. Dist. LEXIS 21593, at *3 (N.D. Cal. June 18, 1994) ("A plan of allocation that reimburses class members based on the extent of their injuries is generally reasonable."). The Plan of Allocation here is a simple, efficient way to allocate the Settlement funds to claimants based on the extent of their injuries, which are proportional to their differing salaries. Such fractional shares are "cost-effective, simple, and fundamentally fair." *In re Airline Ticket Comm'n Antitrust Litig.*, 953 F. Supp. 280, 285 (D. Minn. 1997); *see also In re Electrical Carbon Prods. Antitrust Litig.*, 447 F. Supp. 2d 389, 404 (D.N.J. 2006) (finding pro rata distribution "eminently reasonable and fair to the class members."). The Court also notes that there will be no reversion of unclaimed funds to any Settling Defendant. Accordingly, the Plan of Allocation is approved.

### IV. Final Judgment And Dismissal

16. By means of this Final Approval Order, the Court hereby enters final judgment in this action as between Plaintiffs and the Class and Settling Defendants, as defined in Federal Rule of Civil Procedure 58(a)(1).

17. All Released Claims of Plaintiffs and the Class are hereby released as against Intuit, Lucasfilm, and Pixar and all other Released Parties as defined in the Settlements.

18. The Court finds that the Class members who have exercised their right to exclude themselves from this Action, by submitting timely requests for exclusion pursuant to the notice

mailed to the Class, are not included in or bound by this order and final judgment. The excluded Class members are listed in Exhibit A.

19. Without affecting the finality of the Court's judgment in any way, the Court retains jurisdiction over this matter for purposes of resolving issues relating to the interpretation, administration, implementation, effectuation, and enforcement of the Settlements.

20. The parties and the Claims Administrator are hereby ordered to comply with the terms of the Settlements.

21. This action is dismissed with prejudice as against the Settling Defendants, each side to bear its own costs and attorneys' fees except as provided by the Settlements and the Court's orders.

Dated: May 16, 2014

*Lucy H. Koh*

LUCY H. KOH
United States District Judge