1     Richard M. Heimann (State Bar No. 63607)
Kelly M. Dermody (State Bar No. 171716)
2     Brendan Glackin (State Bar No. 199643)
Dean Harvey (State Bar No. 250298)
3     Anne B. Shaver (State Bar No. 255928)
Lisa J. Cisneros (State Bar No. 251473)
4     LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP
5     275 Battery Street, 29th Floor
San Francisco, California 94111-3339
6     Telephone: 415.956.1000
Facsimile: 415.956.1008
7

8     Joseph R. Saveri (State Bar No. 130064)
James Dallal (State Bar No. 277826)
9     JOSEPH SAVERI LAW FIRM, INC.
505 Montgomery, Suite 625
10     San Francisco, CA 94111
Telephone: 415.500.6800
11     Facsimile: 415.395.9940

12     *Co-Lead Class Counsel*

13     [Additional counsel listed on signature page]

14

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| IN RE: HIGH-TECH EMPLOYEE ANTITRUST LITIGATION<br><br>THIS DOCUMENT RELATES TO:<br><br>ALL ACTIONS | Master Docket No. 11-CV-2509-LHK<br><br>**CLASS ACTION**<br><br>**NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Judge:     Hon. Lucy H. Koh<br>Courtroom: 8, 4th Floor<br>Date:      June 19, 2014<br>Time:      1:30 p.m. |

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION AND MOTION ........................................................................... 1

MEMORANDUM IN SUPPORT OF MOTION.............................................................. 1

    I.      INTRODUCTION ........................................................................... 1

    II.     PROCEDURAL HISTORY ............................................................ 2

    III.    SETTLEMENT NEGOTIATIONS ................................................ 6

    IV.    TERMS OF THE SETTLEMENT ................................................. 7

          A.    Settlement Sums and Additional Consideration ......................... 7

          B.    Monetary Relief to Class Members............................................ 8

          C.    Release of All Claims Against the Settling Defendants............... 9

          D.    Attorneys' Fees and Costs.......................................................... 9

          E.    Class Representative Service Payments....................................... 9

    V.     LEGAL ARGUMENT ................................................................. 13

          A.    Class Action Settlement Procedure........................................... 13

          B.    Standards for Preliminary Settlement Approval ....................... 14

          C.    The Proposed Settlement Is Within the Range of Reasonableness........... 15

          D.    Objections by a Class Representative Do Not Change the Court's
               Analysis.................................................................................... 17

    VI.    PROPOSED PLAN OF NOTICE ................................................ 20

    VII.   PROPOSED PLAN OF ALLOCATION ..................................... 21

    VIII.  THE COURT SHOULD SET A FINAL APPROVAL HEARING
          SCHEDULE............................................................................... 22

    IX.    CONCLUSION ........................................................................... 23

# TABLE OF AUTHORITIES

**Page**

## CASES

*Beck, et al. v. Boeing Co.*,
  Case No. 00-CV-0301-MJP, Dkt. 1067
  (W.D. Wash Oct. 8, 2004) ................................................................. 11

*Charron v. Pinnacle Group NY CLC*,
  874 F. Supp. 2d 179 (S.D.N.Y. 2012) ................................................. 19

*Churchill Village, LLC v. General Elec.*,
  361 F.3d 566 (9th Cir. 2004) .............................................................. 14

*Class Plaintiffs v. City of Seattle*,
  955 F.2d 1268 (9th Cir. 1992) ....................................................... 14, 15

*D'Amato v. Deutsche Bank*,
  236 F.3d 78 (2d Cir. 2001) ................................................................. 16

*Elliott v. Sperry Rand Corp.*,
  680 F.2d 1225 (8th Cir. 1982) ............................................................ 19

*Flinn v. FMC Corp.*,
  528 F.2d 1169 (4th Cir. 1975) ............................................................ 19

*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011 (9th Cir. 1988) ............................................................ 14

*Hawaii v. Standard Oil Co.*,
  405 U.S. 251 (1972) ........................................................................... 12

*In re Airline Ticket Comm'n Antitrust Litig.*,
  953 F. Supp. 280 (D. Minn. 1997) ..................................................... 22

*In re Austrian & German Bank Holocaust Litig.*,
  80 F. Supp. 2d 164 (S.D.N.Y. 2000) .................................................. 16

*In re Citric Acid Antitrust Litig.*,
  145 F. Supp. 2d 1152 (N.D. Cal. 2001) ............................................. 21

*In re High-Tech Emp. Antitrust Litig.*,
  289 F.R.D. 555 (N.D. Cal. 2013) ....................................................... 12

*In re Ivan F. Boesky Sec. Litig.*,
  948 F.2d 1358 (2d Cir. 1991) ............................................................ 18

*In re NASDAQ Market Makers Antitrust Litig.*,
  176 F.R.D. 99 (S.D.N.Y. 1997) ..................................................... 14, 16

*In re Oracle Sec. Litig.*,
  1994 U.S. Dist. LEXIS 21593
  (N.D. Cal. June 18, 1994) .................................................................. 21

*In re Pacific Enters. Sec. Litig.*,
  47 F.3d 373 (9th Cir. 1995) ............................................................... 14

1

**TABLE OF AUTHORITIES**
(continued)

2

Page

3

*In re Tableware Antitrust Litig.*,
  Case No. C-04-3514-VRW ........................................................................... 17

4

5

*In re Titanium Dioxide Antitrust Litig.*,
  2013 U.S. Dist. LEXIS 176099
  (D. Md. Dec. 13, 2013) ................................................................................. 12

6

*In re: TFT-LCD (Flat Panel) Antitrust Litig.*,
  Case No. M07-1827-SI ................................................................................. 16

7

8

*Ingram v. The Coca-Cola Co.*,
  200 F.R.D. 685 (N.D. Ga. 2001) .................................................................. 11

9

*Ivax Corp. v. Aztec Peroxides, LLC, et al.*,
  Case No. 1:02CV00593
  (D.D.C. Aug. 24, 2005) ................................................................................ 12

10

11

*Laskey v. International Union, UAW*,
  638 F.2d 954 (6th Cir. 1981) ........................................................................ 19

12

13

*Lazy Oil v. Witco Corporation*,
  166 F.3d 581 (3d Cir. 1999) ......................................................................... 18

14

*Marchbanks Truck Serv. v. Comdata Network, Inc.*,
  Case No. 07-CV-1078, Dkt. No. 705
  (E.D. Pa. Mar. 17, 2014) .............................................................................. 12

15

16

*Mendoza v. United States*,
  623 F.2d 1338 (9th Cir. 1980) ...................................................................... 21

17

*Officers for Justice v. Civil Serv. Comm'n*,
  688 F.2d 615 (9th Cir. 1982) ........................................................................ 14

18

19

*Olden v. LaFarge Corp.*,
  2007 U.S. Dist. LEXIS 5954 (E.D. Mich. Jan. 29, 2007) ............................ 19

20

*Parker v. Anderson*,
  667 F.2d 1204 (5th Cir. 1982) ...................................................................... 19

21

22

*Paul, Johnson*, *Alston & Hunt v. Granulty*,
  886 F.2d 268 (9th Cir. 1989) .......................................................................... 9

23

*Reiter v. Sonotone Corp.*,
  442 U.S. 330 (1979) ...................................................................................... 12

24

25

*Roberts v. Texaco, Inc.*,
  979 F. Supp. 185 (S.D.N.Y. 1997) .......................................................... 10, 11

26

*State of California v. eBay Inc.*,
  Case No. 12-CV-5874-EJD-PSG,
  Dkt. 55-5 (N.D. Cal. May 1, 2014) .......................................................... 15, 16

27

28

*Staton v. Boeing Co.*,
  327 F.3d 938 (9th Cir. 2003) ........................................................................ 10

**TABLE OF AUTHORITIES**
(continued)

Page

*Sullivan v. DB Invs., Inc.*,
   2008 U.S. Dist. LEXIS 81146
   (D.N.J. May 22, 2008) ................................................................. 12

*Sullivan v. DB Invs., Inc.*,
   667 F.3d 273 (3d Cir. 2011)....................................................... 9, 12

*Taylor v. Lindsley*,
   456 F.2d 896 (2d Cir. 1972)........................................................ 19

*United States v. eBay Inc.*,
   Case No. 12-CV-5869-EJD,
   Dkt. 36 (N.D. Cal. June 4, 2013) ............................................ 15, 16

*Van Bronkhorst v. Safeco Corp.*,
   529 F.2d 943 (9th Cir. 1976)....................................................... 14

*Velez v. Novartis Pharms. Corp.*,
   2010 U.S. Dist. LEXIS 125945
   (S.D.N.Y. Nov. 30, 2010) ...................................................... 11, 12

**STATUTES**

Cartwright Act, Cal. Bus. & Prof. Code §§ 16720, *et seq* ............................. 3

Sherman Act, 15 U.S.C. § 1 ............................................................... 3

**RULES**

Fed. R. Civ. P. 23(c)(2)(B)................................................................ 19

**OTHER AUTHORITIES**

4 *Newberg on Class Actions*
   §§ 11.22, *et seq.* (4th ed. 2002).......................................... 13, 14, 15, 19

Nantiya Ruan, *Bringing Sense to Incentives:*
   *An Examination of Incentive Payments to*
   *Named Plaintiffs in Employment Discrimination Class Actions*,
   10 Employment Rights and Employment
   Policy Journal 395, 396-397 (2006)............................................. 10

The *Manual for Complex Litigation (Fourth)* (2004) ................................ 14

1

**NOTICE OF MOTION AND MOTION**

2

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

3

PLEASE TAKE NOTICE that on June 19, 2013 at 1:30pm, or as soon thereafter as the

4

matter may be heard in Courtroom 8 of the above-entitled court, Plaintiffs Mark Fichtner,

5

Siddharth Hariharan, and Daniel Stover (collectively "Plaintiffs" or "Named Plaintiffs") hereby

6

move, pursuant to Federal Rule of Civil Procedure 23(e), for entry of an Order:

7

   1.  Preliminarily approving the settlement agreement reached with Adobe Systems,

8

Incorporated, Apple Inc., Google, Inc., and Intel Corporation (the "Settlement"), attached as

9

Exhibit 1 to the Declaration of Kelly M. Dermody in Support of Plaintiffs' Motion for

10

Preliminary Approval of Class Action Settlement ("Dermody Decl.").

11

   2.  Directing distribution of notice of the Settlement to the class;

12

   3.  Appointing Gilardi & Co., LLC as the Notice Administrator; and

13

   4.  Scheduling a hearing for final approval of the Settlement.

14

This motion is made on the grounds that the Settlement is the product of arm's-length,

15

good-faith negotiations; is fair, reasonable, and adequate to the Class; and should be preliminarily

16

approved, as discussed in the attached Memorandum.

17

This motion is based on this Notice of Motion and Unopposed Motion, the supporting

18

Memorandum of Points and Authorities (below), the accompanying Declaration of Kelly M.

19

Dermody and exhibits attached thereto, the Declaration of Mark Fichtner, the Declaration of

20

Siddharth Hariharan, the Declaration of Daniel Stover, the argument of counsel, and all papers

21

and records on file in this matter.

22

23

24

25

26

27

28

1

<u>**MEMORANDUM IN SUPPORT OF MOTION**</u>

2

**I.    <u>INTRODUCTION</u>**

3

Plaintiffs Mark Fichtner, Siddharth Harihanan, and Daniel Stover (collectively,

4

"Plaintiffs" or "Class Representatives")[1] respectfully request that the Court grant preliminary

5

approval of the Settlement reached with Adobe Systems, Incorporated, Apple Inc., Google, Inc.,

6

and Intel Corporation ("Settling Defendants"), attached as Exhibit 1 to the Declaration of Kelly

7

M. Dermody in Support of Plaintiffs' Motion for Preliminary Approval of Class Action

8

Settlement ("Dermody Decl.").  The Settlement will resolve all of the claims of the Class of

9

employees that the Court certified on October 24, 2013 (Dkt. 531) (the "Class").  The Settlement

10

creates an all-cash fund of $324,500,000.00 (the "Settlement Fund").

11

Plaintiffs and Settling Defendants reached the Settlement through hard-fought, arm's-

12

length negotiations after three years of litigation, including: substantial investigation by Class

13

Counsel; briefing, argument, and denial of Defendants' motions to dismiss (Apr. 18, 2012 Order;

14

Dkt. 119); the completion of extensive fact discovery, including the taking of 107 depositions, the

15

review of millions of pages of documents, and analysis of over 50 gigabytes of data consisting of

16

approximately 80,000 different files produced by Defendants (Dermody Decl. ¶ 5); two rounds of

17

class certification briefing and argument, including the exchange of eight expert reports by four

18

economists (Apr. 4, 2013 and Oct. 24, 2013 Orders; Dkt. 382 & 531); completion of expert merits

19

discovery (covering a total of 10 experts across the parties); and briefing, argument, and partial

20

denial of Defendants' motions for summary judgment and exclusion of expert testimony

21

(Mar. 28, 2014 and Apr. 4, 2014 Orders; Dkt. 771 & 788).  The proposed notice provides Class

22

members with the best notice practicable under the circumstances and will allow each Class

23

member a full and fair opportunity to evaluate the Settlement and decide whether to participate.

24

Settling Defendants do not oppose this motion and will cooperate in the settlement process.

25

26

—————————————

27

[1] Class Counsel do not submit this Motion on behalf of Plaintiff Michael Devine, who has indicated an objection to it.  Plaintiffs have concurrently filed a stipulation and proposed order regarding substitution of counsel for Mr. Devine.

28

By this motion, Plaintiffs request that the Court:  (1) preliminarily approve the Settlement; (2) approve the proposed plan of notice to the Class; (3) appoint Gilardi & Co., LLC as the Notice Administrator; (4) set a schedule for disseminating notice to Class members, as well as deadlines to comment on, object to, or opt out of, the Settlement, and (5) schedule a hearing pursuant to Rule 23(e) of the Federal Rules of Civil Procedure to determine whether the proposed Settlement is fair, reasonable, and adequate and should be finally approved.[2]

## II.   **PROCEDURAL HISTORY**

Plaintiffs Mark Fichtner, Siddharth Hariharan, and Daniel Stover are former technical employees of Defendants.  Like the Class they represent, each worked for a Defendant while that Defendant allegedly participated in at least one alleged unlawful agreement with another Defendant.  Plaintiffs challenge agreements among Defendants—all horizontal competitors for the services of Plaintiffs and Class members—to reduce employee compensation and mobility through eliminating competition for labor.[3]  The complaint alleges that Defendants entered into the following types of express agreements:  (1) illegal agreements not to recruit each other's employees; (2) illegal agreements to notify each other when making an offer to another's employee; and (3) illegal agreements that, when offering a position to another company's employee, neither company would counteroffer above the initial offer.  (Complaint ¶¶ 55-107.) Plaintiffs also allege that each Defendant entered into, implemented, and enforced each express agreement with knowledge of the other Defendants' participation, and with the intent of accomplishing the conspiracy's objective: to reduce employee compensation and mobility by

---

[2] Prior to final approval and the deadline for objections to the Settlement, Plaintiffs will also move for payment of litigation costs, attorneys' fees, and service awards for the Class Representatives.

[3] The litigation commenced on May 4, 2011 when Plaintiff Hariharan filed his complaint in Alameda County Superior Court.  On May 23, 2011, Defendants removed the *Hariharan* case to U.S. District Court for the Northern District of California.  (Dkt. 1.)  Four cases were later filed in Santa Clara County Superior Court, each of which Defendants subsequently removed.  On July 27, 2011, all five cases were related before Judge Armstrong.  (Dkt. 52.)  On August 4, 2011, Judge Armstrong transferred all five cases to the San Jose Division.  (Dkt. 58.)  Pursuant to Stipulated Pretrial Order No. 1 as Modified, the Court consolidated all five cases on September 12, 2011.  (Dkt. 64.)

1   eliminating competition for skilled labor.  (*Id.* ¶¶ 55, 108-110.)  Plaintiffs seek compensation for

2   violations of Section 1 of the Sherman Act, 15 U.S.C. § 1 and the Cartwright Act, Cal. Bus. &

3   Prof. Code §§ 16720, *et seq.*  (*Id.* ¶¶ 119-164.)

4        After the Court consolidated the Plaintiffs' individual lawsuits, Plaintiffs filed their

5   Consolidated Amended Complaint on September 13, 2011.  (Dkt. 65.)  Defendants challenged the

6   pleadings.  All Defendants jointly and Lucasfilm separately moved to dismiss Plaintiffs' claims.

7   (Dkts. 79 and 83.)  The Court denied both motions, with the exception that Plaintiffs' UCL claim

8   for restitution and disgorgement, was dismissed for failure to allege a vested interest.  (Apr. 18,

9   2012 Order; Dkt. 119.)

10       After adjustments to the case management schedule, Plaintiffs filed their first motion for

11  class certification on October 1, 2012.  (Pls.' Mot. For Class Cert.; Dkt. 187.)  Plaintiffs proposed

12  an "All-Employee Class," as well as an alternative class of salaried technical, creative, and

13  research and development employees: the "Technical Class."  (*Id.* at 1.)  After the Court took the

14  motion under submission, Plaintiffs continued discovery, conducting numerous depositions, and

15  collecting voluminous documents.  The Court required the parties to file discovery status reports

16  on an ongoing basis.  (Jan. 17, 2013 and Mar. 13, 2013 Case Management Orders; Dkts. 282 and

17  350.)

18       After the Court lifted a discovery stay in January 2012, the parties completed broad,

19  extensive, and thorough discovery related to both class certification and the merits.  Plaintiffs

20  served 75 document requests, for which Defendants collectively produced over 325,000

21  documents (over 3.2 million pages), and took 93 depositions of Defendant witnesses.  (Dermody

22  Decl. ¶ 4.)  Plaintiffs also served 28 subpoenas on third parties, negotiated with those third

23  parties, and received 8,809 pages of documents from them.  Defendants also propounded

24  document requests, in response to which Plaintiffs produced over 31,000 pages, and took the

25  depositions of the named Plaintiffs.  (*Id.*)  Defendants served 34 subpoenas on third parties,

26  including the then-current and former employers of the Named Plaintiffs.  (*Id.*)  Defendants'

27  subpoenas resulted in 1,834 pages of documents produced, which Plaintiffs' counsel also

28  reviewed.  (*Id.*)

With expert assistance, Plaintiffs' counsel analyzed vast amounts of computerized employee compensation and recruiting data, including approximately 80,000 files of employment-related data exceeding 50 gigabytes. (Dermody Decl. ¶ 5.) Plaintiffs' counsel retained four experts and numerous consultants to review and analyze this data, documents produced in the action, deposition testimony, and other relevant facts; apply their relevant expertise to those facts; and form opinions regarding a range of assigned tasks. (*Id.*) Those experts included Dr. Edward Leamer of the University of California, Los Angeles, who provided six expert reports consisting of 433 pages of analysis. (*Id.*) Defendants took four depositions of Dr. Leamer regarding his opinions. (*Id.*) Plaintiffs retained Dr. Kevin Hallock of Cornell University, who provided two expert reports consisting of 232 pages of analysis. Defendants took two depositions of Dr. Hallock. (*Id.*) Plaintiffs also retained Dr. Alan Manning of the London School of Economics, who provided one expert report, and Dr. Matthew Marx of the Sloan School of Management at the Massachusetts Institute of Technology, who provided two expert reports. Defendants also deposed, and Plaintiffs defended the depositions of, Dr. Manning and Dr. Marx. (*Id.*)

Plaintiffs' counsel and their experts also reviewed, deposed, and analyzed the expert analysis Defendants submitted. Defendants retained seven experts, who collectively submitted a total of 1,733 pages of expert reports, including detailed and extensive quantitative analysis. (Dermody Decl. ¶ 6.) Plaintiffs' experts assessed these reports and provided responses to them. (*Id.*) Plaintiffs' counsel took depositions of every defense expert, including multiple depositions for some witnesses. (*Id.*)

Fact and expert discovery, which is complete, has been thorough, and it required the parties to engage in numerous and extensive meetings and conferences concerning the scope of discovery and the analysis regarding the various electronic data, policy documents, and other files produced. (Dermody Decl. ¶ 7.)

On April 5, 2013, the Court issued its Order Granting in Part and Denying in Part Plaintiffs' Motion for Class Certification. (Dkt. 382.) The Court found that Plaintiffs satisfied Federal Rule of Civil Procedure 23(a), and satisfied Rule 23(b)(3) as to conspiracy and damages.

1   The Court found that "the adjudication of Defendants' alleged antitrust violation will turn on

2   overwhelmingly common legal and factual issues." (*Id.* at 13.)  Furthermore, after a detailed

3   inquiry, the Court held that a statistical regression analysis prepared by Plaintiffs' expert

4   "provides a plausible methodology for showing generalized harm to the class as well as

5   estimating class-wide damages." (*Id.* at 43.)

6       The Court requested further briefing on whether the Rule 23(b)(3) predominance standard

7   was met with respect to the common impact on the proposed class. (*Id.* at 45.)  Though the Court

8   did not find predominance satisfied as to common impact, the Court acknowledged that the

9   documentary evidence "weighs heavily in favor of finding that common issues predominate over

10  individual ones for the purpose of being able to prove antitrust impact." (*Id.* at 33.)  The Court

11  requested additional briefing to address this remaining concern: "the Court believes that, with the

12  benefit of discovery that has occurred since the hearing on this motion, Plaintiffs may be able to

13  offer further proof to demonstrate how common evidence will be able to show class-wide impact

14  to demonstrate why common issues predominate over individual ones." (*Id.* at 45.)

15      Plaintiffs filed a Supplemental Motion for Class Certification to address the Court's

16  request. (Dkts. 418, 455.)  Plaintiffs marshaled additional documentary evidence, testimony, and

17  expert analyses. (Decl. of Dean M. Harvey, Dkt. 418-1; Decl. of Lisa J. Cisneros, Dkt. 418-2;

18  Leamer Supp., Dkt. 418-4; Hallock Rpt., Dkt. 418-3; Decl. of Anne B. Shaver, Dkt. 456; and

19  Leamer Supp. Reply, Dkt. 457.)  Plaintiffs submitted additional evidence that the no-cold calling

20  agreements at issue in this case were designed substantially to disrupt recruiting of Technical

21  Class employees. Accordingly, Plaintiffs focused their supplemental briefing and analysis on

22  demonstrating impact to all or nearly all of the Technical Class.  The Court granted Plaintiffs'

23  Supplemental Motion on October 24, 2013.[4]  (Dkt. 531.)

24      Plaintiffs reached settlement agreements with Defendants Lucasfilm and Pixar, and with

25  Defendant Intuit, and presented those settlements to the Court on September 21, 2013.  (Dkt.

26

27  _____
    [4] The Ninth Circuit denied Defendants' Petition for review pursuant to Rule 23(f) on January 15,

28  2014.

1171258.8

1   501.)  On October 30, 2013, the Court granted preliminary approval of the settlements.  (Dkt.

2   540.)  Plaintiffs' Motions for Final Approval, Attorneys' Fees and Costs, and Service Awards

3   with respect to those settlements have been resolved, after a hearing on May 1, 2014.  (Dkt. 915.)

4        The Settling Defendants filed individually and collectively for summary judgment

5   (claiming that the Plaintiffs had not marshaled sufficient evidence that each of the defendants had

6   participated in an overarching conspiracy to suppress compensation), and for exclusion of the

7   testimony of two of Plaintiffs' experts, Dr. Edward Leamer and Dr. Matthew Marx , under

8   *Daubert*, and to strike portions of Dr. Leamer's reply report as improper rebuttal.  (Dkts. 554,

9   556, 557, 559, 560, 561, 564, & 570.)  The Court denied all motions for summary judgment.

10  (Dkts. 771 & 788.)  The Court granted in part and denied in part the motions to exclude Dr.

11  Leamer's testimony and strike portions of his reply report.  (Dkt. 788.)  Plaintiffs filed a motion

12  for application of the *per se* standard with supporting evidence (Dkt. 830), and Defendants

13  opposed it (Dkt. 887).  Defendants moved *in limine* to exclude various categories of evidence

14  (Dkt. 855), and Plaintiffs opposed their motions (Dkt. 882).  Plaintiffs also moved to compel

15  production of a document, the identity of which remains under seal (Dkt. 789-2), and Defendants

16  opposed it (Dkt. 878-1).  At the time of settlement, the following motions remained pending:

17  Defendants' motion to exclude Dr. Marx's testimony; Plaintiffs' motion for application of the per

18  se standard; Defendants' motions *in limine*; and Plaintiffs' motion to compel.  In addition,

19  Plaintiffs and Defendants engaged in the exchange of extensive pretrial disclosures and

20  conferences regarding trial exhibits, witnesses, the joint pretrial statement, and many other issues.

21  (Dermody Decl. ¶ 8.)  At the time of settlement, Plaintiffs had served numerous notices of

22  deposition on corporate witnesses to authenticate business records to which Defendants refused to

23  stipulate.  (*Id.*)

24        Plaintiffs' counsel also prepared extensively for trial, including by retaining a highly-

25  experienced jury consultant to assist with jury preparation and selection.  (Dermody Decl. ¶ 9.)

26  **III.   SETTLEMENT NEGOTIATIONS**

27        Plaintiffs and the Settling Defendants engaged in extensive mediated negotiations to

28  resolve the dispute.  Initially, mediation was conducted by David Rotman.  After a number of

NOTICE OF MOTION AND
MOTION ISO PRELIMINARY SETTLEMENT
APPROVAL; NO. 11-CV-2509-LHK

1    sessions, those efforts were unsuccessful.  Subsequently, the parties retained the services of

2    experienced mediator Hon. Layn Phillips (retired).  Plaintiffs and Settling Defendants conducted

3    a day-long mediation supervised by Judge Phillips on February 17, 2014.  (Dermody Decl. ¶ 10.)

4    After two months of negotiations facilitated by Judge Phillips, Plaintiffs executed a Memorandum

5    of Understanding with all Settling Defendants on April 24, 2014.  (*Id.*)  Afterward, Plaintiffs and

6    the Settling Defendants exchanged several drafts of the final Settlement Agreement and related

7    settlement documents before the parties came to final agreement as to each.  (*Id.*)  At all times

8    during the negotiation process, counsel for Plaintiffs and the Settling Defendants bargained

9    vigorously and at arm's length on behalf of their clients.  (*Id.* ¶ 11.)  Plaintiffs Mark Fichtner,

10   Siddharth Hariharan, and Daniel Stover support this settlement.  (Fichtner Decl. ¶¶ 4-6; Hariharan

11   Decl. ¶¶ 4-6; Stover Decl. ¶¶ 4-6.)

12   **IV.    TERMS OF THE SETTLEMENT**

13           The Settlement resolves all claims of Plaintiffs and the Class against the Settling

14   Defendants.  The details are contained in the attached Settlement Agreement.  (Dermody Decl.,

15   Ex. 1 ("Settlement Agreement").)  The key terms of the Settlement are described below.

16           **A.    Settlement Sums and Additional Consideration**

17           Settling Defendants will pay $324,500,000 to resolve the claims of Plaintiffs and the

18   Class.  Settling Defendants will deposit an initial sum of $1,000,000 from the Settlement amount

19   into an escrow account (the "Notice Fund"), held and administered by an escrow agent, within 10

20   days of preliminary settlement approval.  Class Counsel have selected Citibank, N.A. to be

21   appointed the escrow agent, with the consent of the Settling Defendants and subject to the

22   approval of the Court.  The Notice Fund will be utilized in accordance with applicable orders of

23   the Court for notice and administration costs.  (Settlement Agreement § III.A.)  Any money

24   remaining in the Notice Fund after payment of notice and administration costs will be distributed

25   with other Settlement funds.  (*Id.*)  If the Settlement is finally approved, Settling Defendants will

26   pay the remaining amount—$323,500,000—into the escrow account within the longer of 7

27

28

1  calendar days or 5 business days of the Effective Date.[5]  (*Id.*)  The Settlement Fund will be

2  utilized in accordance with applicable orders of the Court for payment of Class member

3  settlement shares, Class Representative service awards (if approved), and Court-approved

4  attorneys' fees, costs, and litigation expenses (if approved).

5         **B.**     **Monetary Relief to Class Members**

6         Each Class member will receive a share of the Settlement Fund.  No Class member will be

7  required to submit a claim to participate.  The Settlement Fund will be distributed based upon the

8  following plan of allocation.  (Settlement Agreement, Ex. B.)

9         Class Members who do not opt out will be eligible to receive a share of the Settlement

10  Fund net of all applicable reductions based on a formula using a Class Member's base salary paid

11  on the basis of employment in a "Class Position" within the "Class Period" as set forth in the

12  Class definition.  In other words, each Class Member's share of the Settlement Fund is a fraction,

13  with the Class Member's total base salary paid on the basis of employment in a Class Position

14  during the Class Period as the numerator and the total base salary paid to all Class Members on

15  the basis of employment in a Class Position during the Class Period as the denominator:

16

17           (Class Member's individual total base salary paid on the basis of
         employment in Class Positions during the Class Period) ÷ (Total of

18           base salaries of all Class Members paid on the basis of employment
         in Class Positions during the Class Period).

19

20         Each Class Member's fractional amount shall be multiplied against the Settlement Fund

21  net of court-approved costs, service awards, and attorneys' fees and expenses, and the Dispute

22  Fund.[6]

23

24

25

26  _____

27  [5] The Settlement Agreement defines the "Effective Date" in § II.F.
[6] There will be no reversion of Settlement funds to any Settling Defendant, unless more than 4%

28  of Class members opt out, and then only on a *pro rata* basis.  (Settlement Agreement, § VIII.T.)

1

**C.      Release of All Claims Against the Settling Defendants**

2      In exchange for the Settling Defendants' monetary consideration, upon entry of a final

3  judgment approving the proposed Settlement, Plaintiffs and the Class will release the Settling

4  Defendants and all Released Parties from all claims arising from or related to the facts, activities

5  or circumstances alleged in the Consolidated Amended Complaint (Dkt. 65) or any other

6  purported restriction on competition for employment or compensation of Class Representatives or

7  Class members, up to the Effective Date of the Settlement, whether or not alleged in the

8  Consolidated Amended Complaint, as described in the Settlement Agreement.  (Settlement

9  Agreement § V.)

10

**D.      Attorneys' Fees and Costs**

11      The Settlement recognizes that Class Counsel may seek attorneys' fees and

12  reimbursement of costs and expenses incurred in the prosecution of this action.  (Settlement

13  Agreement § VII.)  Pursuant to the Settlement, Class Counsel will look solely to the Settlement

14  Fund for satisfaction of such fees and costs.  (*Id.*)  Class Counsel intend to move for attorneys'

15  fees and costs separately and prior to the motion for final approval, with a request not to exceed

16  the Ninth Circuit benchmark of twenty-five percent, *Paul, Johnson*, *Alston & Hunt v. Granulty*, 886

17  F.2d 268, 272 (9th Cir. 1989), and incurred and unreimbursed costs of up to $1.2 million.  Dermody

18  Decl., ¶ 15.

19

**E.      Class Representative Service Payments**

20      At the same time as moving for attorneys' fees and costs, Class Counsel will also seek

21  reasonable service award payments of $80,000 for each of the Named Plaintiffs for their services

22  as Class Representatives, to be paid from the Settlement Fund at the time when the Fund is

23  distributed and claims are paid.[7]  These proposed service awards will be in addition to any

24  monetary recovery to the Class Representatives pursuant to the plan of allocation.

25

26  [7] For the sake of clarity, Class Counsel include Mr. Devine in this request in the event that the
Settlement is approved over his objection and a service award is available.  This is without

27  prejudice to Mr. Devine to seek his own award.  Class Counsel also include Brandon Marshall's
estate in this request.

28

- 9 -

1    "The purpose of these payments is to compensate named plaintiffs for the services they

2    provided and the risks they incurred during the course of class action litigation, and to reward the

3    public service of contributing to the enforcement of mandatory laws." *Sullivan v. DB Invs., Inc.*,

4    667 F.3d 273, 333 n.65 (3d Cir. 2011) (en banc) (affirming antitrust class action settlement with

5    common fund of $295 million, providing for service awards of $85,000 to each of two class

6    representatives) (quotation omitted), *cert. denied*, 132 S. Ct. 1876 (2012).  *See also Staton v.*

7    *Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003)  ("[N]amed plaintiffs . . . are eligible for

8    reasonable incentive payments").

9        The requested service awards are reasonable and appropriate here.  First, the Class

10   Representatives have expended substantial time and effort in assisting Class Counsel with the

11   prosecution of the Class's claims.[8]  They have responded to extensive document requests on their

12   lifetime employment history well beyond their experience with Defendants here and without

13   regard to time period (and across all variety of physical and electronic locations); produced over

14   31,000 pages of documents; responded to interrogatories; given full-day depositions; attended

15   hearings and mediations; and have otherwise devoted hundreds of hours consulting with Class

16   Counsel regarding fact development and strategy.  Dermody Decl. ¶ 14; Fichtner Decl. ¶¶ 7-8;

17   Hariharan Decl.  ¶¶ 7-8; Stover Decl. ¶¶ 7-8.

18       Second, the Class Representatives—all of whom worked in technical positions for

19   Defendants—incurred the substantial risks and costs of taking on leadership roles in this visible

20   litigation against seven of the most prominent technology firms in the world.  This case is unusual

21   in that it combines the risk of two types of class actions, employment and antitrust, that courts

22   have recognized pose heightened threats to class representatives.  When a class representative is a

23   "present or past employee" of a defendant, the class representative's "present position or

24   employment credentials or recommendation may be at risk by reason of having prosecuted the

25   suit, who therefore lends his or her name and efforts to the prosecution of litigation at some

26   ───────────────

[8] Although the Class Representatives received modest service awards in connection with the prior

27   partial settlements reached in July 2013 with Intuit, Lucasfilm, and Pixar, their service to the
     Class continued and was not fully recognized by the prior awards.

28

personal peril." *Roberts v. Texaco, Inc.*, 979 F. Supp. 185, 201 (S.D.N.Y. 1997).  *See also* Nantiya Ruan, *Bringing Sense to Incentives: An Examination of Incentive Payments to Named Plaintiffs in Employment Discrimination Class Actions*, 10 Employment Rights and Employment Policy Journal 395, 396-397 (2006) (In addition to assuming responsibilities related to the investigation and discovery of their case, "[e]mployees, former and current, take huge risks when they agree to be named plaintiffs in a class action bringing legal claims of unlawful bad acts by employers.  Retaliation, isolation, ostracism by co-workers, 'black listing' by future employers, emotional trauma, and fear of having to pay defendants' legal fees are among the most obvious.").  Accordingly, courts have approved service payments to current and former employee-class representatives of defendants that have exceeded the amount Plaintiffs request here. *Texaco*, 979 F. Supp. at 188 (authorizing incentive awards ranging up to $85,000 in nationwide employment discrimination class action from a common fund of $115 million); *Velez v. Novartis Pharms. Corp.*, 2010 U.S. Dist. LEXIS 125945, at *73 (S.D.N.Y. Nov. 30, 2010) (granting service payments of $125,000 to each of 26 named plaintiffs); *Ingram v. The Coca-Cola Co.*, 200 F.R.D. 685, 694 (N.D. Ga. 2001) (awarding $300,000 service payments to each of four representative plaintiffs); *Beck, et al. v. Boeing Co.*, Case No. 00-CV-0301-MJP, Dkt. 1067 at 4 (W.D. Wash Oct. 8, 2004) (awarding $100,000 service payments to each of the named plaintiffs)[9].  These concerns are particularly strong in this high-profile action, where the Class Representatives' roles are unusually visible and easily verified by current and potential employers with nothing more than a web search.

The Class Representatives faced additional risks because this is an antitrust case.  By definition, antitrust cases are brought against defendants with power in the markets in which plaintiffs were injured—here, the market for high-tech employment.  This is not a case challenging the employment practices of small and obscure companies.  Each Defendant here is a powerful employer of high-tech employees in its own right.  Collectively, the seven Defendants wield tremendous power and influence in the high-technology industry.  In addition, Defendants

---

[9] Dermody Decl., Ex. 2.

1171258.8

1    served subpoenas on 27 other high-technology companies, each of which employed a Class

2    Representative, seeking broad categories of information regarding each Class Representative's

3    job history, performance, and personnel files.  Plaintiffs' request is consistent with service

4    payments granted in other antitrust cases.  *See*, *e.g.*, *Marchbanks Truck Serv. v. Comdata*

5    *Network, Inc.*, Case No. 07-CV-1078, Dkt. No. 705 (E.D. Pa. Mar. 17, 2014) (preliminarily

6    approving class action settlement, including service payment of $150,000 to lead class

7    representative); *In re Titanium Dioxide Antitrust Litig.*, 2013 U.S. Dist. LEXIS 176099, at *8 (D.

8    Md. Dec. 13, 2013) (granting service award to lead class representative of $125,000); *Sullivan v.*

9    *DB Invs., Inc.*, 2008 U.S. Dist. LEXIS 81146, at *108 (D.N.J. May 22, 2008) (approving service

10    payments to class representatives, including $85,000 to two lead representatives of direct

11    purchaser class), *affirmed en banc*, *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 333 n.65 (3d Cir.

12    2011), *cert. denied*, 132 S. Ct. 1876 (2012); *Ivax Corp. v. Aztec Peroxides, LLC, et al.*, Case No.

13    1:02CV00593 (D.D.C. Aug. 24, 2005) (awarding service payments to each class representative of

14    $100,000 each).[10]

15          Third, the class representatives should be rewarded for their "public service of

16    contributing to the enforcement of mandatory laws."  *Sullivan*, 667 F.3d at 333 n.65.  Here, while

17    the DOJ obtained a stipulated judgment that eliminated the misconduct at issue going forward, the

18    DOJ did not obtain any fines from the Defendants, nor compensation for any of Defendants'

19    employees.  Without the Class Representatives' willingness to take the risks of filing class action

20    lawsuits, no recovery would have been possible.  Indeed, since the DOJ first exposed Defendants'

21    alleged wrongdoing in 2010, no civil cases have been filed against Defendants for these practices

22    aside from those filed by these Class Representatives.  As this Court explained, the "Supreme

23    Court has long recognized that class actions serve a valuable role in the enforcement of antitrust

24    laws."  *In re High-Tech Emp. Antitrust Litig.*, 289 F.R.D. 555, 563 (N.D. Cal. 2013) (citing *Reiter*

25    *v. Sonotone Corp.*, 442 U.S. 330, 344 (1979)); *Hawaii v. Standard Oil Co.*, 405 U.S. 251, 262

26    (1972)).  As a result of the Class Representatives coming forward here, the Defendants will pay a

27

28        [10] Dermody Decl., Ex. 3.

1    total of $324,500,000 (on top of the $20 million already secured) into a common fund for the

2    benefit of the Class.

3            Finally, the requested service awards are appropriate when compared to the substantial

4    recovery achieved.  Courts assessing the reasonableness of requests for service awards may

5    compare the request against the size of the settlement fund.  *See*, *e.g.*, *Novartis Pharms.*, 2010

6    U.S. Dist. LEXIS 125945, at *22-23 ("Plaintiffs seek, therefore, a total of $3,775,000.00 in

7    service award payments, which represents only approximately 2.4 percent of the entire monetary

8    award of $152.5 million (or approximately 2.1 percent of the entire value of the settlement of

9    $175 million).").  Plaintiffs' requested service awards here collectively represent only about

10   0.12% (*i.e.*, less than a quarter of 1%) of the proposed settlement fund.

11           The Court should preliminarily approve service payments to each Class Representative of

12   $80,000 to compensate them for their substantial time and effort, the significant risks they

13   undertook on behalf of the Class with no guarantee that they would receive anything in return,

14   and the valuable public service they provided to enforce the nation's antitrust laws.

15   **V.      LEGAL ARGUMENT**

16           **A.      Class Action Settlement Procedure**

17           A class action may not be dismissed, compromised, or settled without the approval of the

18   Court.  Judicial proceedings under Federal Rule of Civil Procedure 23 have led to a defined

19   procedure and specific criteria for approval of class action settlements.  The Rule 23(e) settlement

20   approval procedure describes three distinct steps where, as here, a class has already been

21   certified:

22           1.      Preliminary approval of the proposed settlement;

23           2.      Dissemination of notice of the settlement to all affected class members; and

24           3.      A formal fairness hearing, also called the final approval hearing, at which class

25   members may be heard regarding the settlement, and at which counsel may introduce evidence

26   and present argument concerning the fairness, adequacy, and reasonableness of the settlement.

27

28

1    This procedure safeguards class members' procedural due process rights and enables the

2    Court to fulfill its role as the guardian of class interests.  *See* 4 *Newberg on Class Actions*

3    §§ 11.22, *et seq.* (4th ed. 2002) ("*Newberg*") (describing class action settlement procedure).

4    By way of this Motion, the parties request that the Court take the first step in the

5    settlement approval process and preliminarily approve the proposed Settlement.

6        **B.**        **Standards for Preliminary Settlement Approval**

7    Rule 23(e) requires court approval of any settlement of claims brought on a class basis.

8    "[T]here is an overriding public interest in settling and quieting litigation . . . particularly . . . in

9    class action suits[.]"  *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976); *see also*

10    *Churchill Village, LLC v. General Elec.*, 361 F.3d 566, 576 (9th Cir. 2004); *In re Pacific Enters.*

11    *Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995); and *Class Plaintiffs v. City of Seattle*, 955 F.2d

12    1268, 1276 (9th Cir. 1992). Courts recognize that as a matter of sound policy, settlements of

13    disputed claims are encouraged and a settlement approval hearing should "not be turned into a

14    trial or rehearsal for trial on the merits."  *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d

15    615, 625 (9th Cir. 1982), *cert. denied sub nom. Byrd v. Civil Serv. Comm'n*, 459 U.S. 1217

16    (1983).  Furthermore, courts must give "proper deference" to the settlement agreement, because

17    "the court's intrusion upon what is otherwise a private consensual agreement negotiated between

18    the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that

19    the agreement is not the product of fraud or overreaching by, or collusion between, the

20    negotiating parties, and the settlement, taken as a whole, is fair, reasonable and adequate to all

21    concerned."  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998) (quotations omitted).

22    The purpose of the Court's preliminary evaluation of the proposed settlement is to

23    determine whether it is within "the range of reasonableness," and thus whether notice to the class

24    of the terms and conditions of the settlement, and the scheduling of a formal fairness hearing, are

25    worthwhile.  Preliminary approval should be granted where "the proposed settlement appears to

26    be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does

27    not improperly grant preferential treatment to class representatives or segments of the class and

28    falls within the range of possible approval."  *In re NASDAQ Market Makers Antitrust Litig.*,

1   176 F.R.D. 99, 102 (S.D.N.Y. 1997).  Application of these factors here support an order granting

2   the motion for preliminary approval.

3          To grant preliminary approval of the proposed Settlement, the Court need only find that it

4   falls within "the range of reasonableness."  *Newberg* § 11.25.  The *Manual for Complex*

5   *Litigation (Fourth)* (2004) ("*Manual*") characterizes the preliminary approval stage as an "initial

6   evaluation" of the fairness of the proposed settlement made by the court on the basis of written

7   submissions and informal presentation from the settling parties.  *Manual* § 21.632.  A proposed

8   settlement may be *finally* approved by the trial court if it is determined to be "fundamentally fair,

9   adequate, and reasonable."  *City of Seattle*, 955 F.2d at 1276.  While consideration of the

10  requirements for *final* approval is unnecessary at this stage, all of the relevant factors weigh in

11  favor of the Settlement proposed here.  As shown below, the proposed Settlement is fair,

12  reasonable and adequate.  Therefore, the Court should allow notice to be disseminated to the

13  Class.

14         C.      **The Proposed Settlement Is Within the Range of Reasonableness**

15         The parties' proposed Settlement meets the standards for preliminary approval.  First, the

16  Settlement is entitled to "an initial presumption of fairness" because it is the result of arm's-

17  length negotiations among experienced counsel.  *Newberg* § 11.41.  (Dermody Decl. ¶ 11.)

18         Second, the consideration—a total of $324.5 million—is substantial, particularly in light

19  of the very real risk that the jury could find no liability or award no damages.  When combined

20  with the $20 million received from Plaintiffs' previous settlements with Defendants Pixar,

21  Lucasfilm, and Intuit, the result for the Class in this litigation will total $344.5 million.  A

22  relevant point of comparison is with the outcomes achieved by the United States Department of

23  Justice ("DOJ") and the California Attorney General ("CA AG").  This action was preceded by a

24  DOJ investigation concerning the same alleged misconduct at issue in this case.  While the DOJ

25  had the ability to seek civil fines, the DOJ settled their investigation regarding Defendants'

26  alleged misconduct without any monetary penalty.  In addition, unlike Plaintiffs, the DOJ did not

27  allege a common conspiracy among all Defendants.

28

1171258.8                                            NOTICE OF MOTION AND
                                                     MOTION ISO PRELIMINARY SETTLEMENT
                                                     APPROVAL; NO. 11-CV-2509-LHK

1    In addition, the DOJ and the CA AG filed cases against eBay Inc. regarding an alleged

2    agreement between eBay and Intuit not to poach each other's employees, which later became a

3    no-hire agreement between the companies. *State of California v. eBay Inc.*, Case No. 12-CV-

4    5874-EJD-PSG, Dkt. 55-5, ¶¶ 25-42 (N.D. Cal. May 1, 2014) ("CA AG Case"); *United States v.*

5    *eBay Inc.*, Case No. 12-CV-5869-EJD, Dkt. 36, ¶¶ 14-25 (N.D. Cal. June 4, 2013) ("DOJ Case").

6    The alleged agreement there covers broader conduct than at issue in this case, and it lasted longer

7    –from 2006 through 2011 – than is alleged here.  (CA AG Case, Dkt. 55-5, ¶ 41.)  The DOJ and

8    the CA AG recently settled that case.  The proposed settlement with the DOJ is very similar to the

9    previous settlement between the DOJ and the Defendants here: while eBay agrees to modify its

10   behavior going forward, eBay was not required to pay any money, either in the form of penalties

11   or compensation to victims.  (DOJ Case, Dkt. 57 and 57-1).  The proposed settlement with the CA

12   AG includes a monetary component of $3.75 million, $2.375 of which will be distributed among

13   approximately 13,990 claimants.  The proposed settlement also includes a release of the proposed

14   class's claims.  (CA AG Case, Dkt. 55, at 6.)  By comparison, Plaintiffs here obtained a

15   substantially larger recovery, whether measured on an aggregate or per-Class-member basis.

16   Third, the Settlement does not grant preferential treatment to the Class Representatives or

17   to certain portions of the Class; the Plan of Allocation provides a neutral and fair way to

18   compensate Class members based on their salary and alleged injury.  *In re NASDAQ Market*

19   *Makers Antitrust Litig.*, 176 F.R.D. at 102.

20   Fourth, litigation through trial would be complex and costly, and would require a

21   significant amount of Court resources, which settlement avoids.  *In re Austrian & German Bank*

22   *Holocaust Litig.*, 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000), *aff'd sub. nom. D'Amato v. Deutsche*

23   *Bank*, 236 F.3d 78 (2d Cir. 2001).  While settlement provides the Class with a timely, certain, and

24   meaningful cash recovery, a trial—and any subsequent appeals—is highly uncertain, and in any

25   event would substantially delay any recovery achieved.

26   Indeed, the risks of trial were highlighted in the most recent antitrust class action tried to

27   verdict in the Northern District of California:  *In re: TFT-LCD (Flat Panel) Antitrust Litig.*, Case

28   No. M07-1827-SI.  In that trial, plaintiffs introduced evidence of a global price-fixing cartel that

NOTICE OF MOTION AND
MOTION ISO PRELIMINARY SETTLEMENT
APPROVAL; NO. 11-CV-2509-LHK

1    does not exist here, including concurrent criminal investigations that resulted in 14 guilty pleas

2    admitting U.S. antitrust violations.  (There were no guilty pleas here.)  Plaintiffs in *In re: TFT-*

3    *LCD*, asked the jury to find that Toshiba participated in the alleged price-fixing conspiracy, and to

4    award damages of $867 million.  While the jury found Toshiba liable, the jury awarded only $87

5    million, or about 10% of the damages requested.  Dermody Decl., Ex. 4 (completed special

6    verdict form).  When a later opt-out action filed by *In re: TFT-LCD* class member Best Buy went

7    to trial against HannStar Display Corp. and Toshiba on the same claims, the jury found HannStar

8    liable but not Toshiba, and awarded *less than 1%* of the damages Best Buy sought ($7.5 million

9    from a request of $770 million).  Dermody Decl., Ex. 5 (completed special verdict form).  Before

10   *LCDs*, the most recent antitrust class action tried to a verdict in the Northern District of California

11   was *In re Tableware Antitrust Litig.*, Case No. C-04-3514-VRW.  The jury in that case returned a

12   verdict for the defendants.  Dermody Decl., Ex. 6 (completed special verdict form).

13          Here, unlike in *LCDs* and *Tableware*, it was not clear that the alleged misconduct would

14   be considered under the *per se* standard of illegality, with important implications regarding how

15   the trial would proceed, Plaintiffs' burden of proof, and the evidence Defendants would be

16   permitted to introduce.  Defendants had successfully moved to exclude certain parts of Dr.

17   Leamer's expert testimony.  (Dkt. 788.)  Defendants' other *in limine* motions to exclude a variety

18   of evidence were pending.  (Dkt. 855.)  In addition, Defendants intended to vigorously contest the

19   existence of a common conspiracy among them, and the jury would be faced with many

20   complicated and contentious issues regarding impact and damages across the Class.  Even if

21   Plaintiffs succeeded in proving liability, they still faced the risk that the jury would award only a

22   fraction of the alleged damages—or not award damages altogether.  And, even if Plaintiffs were

23   successful at trial, Plaintiffs and the Class faced the risk of protracted appeals.

24          **D.      Objections by a Class Representative Do Not Change the Court's Analysis**

25          While Plaintiffs Mark Fichtner, Siddharth Hariharan, and Daniel Stover all support the

26   settlement, one Plaintiff, Michael Devine, has indicated he objects to it.  Fichtner Decl. ¶¶ 7-8;

27

28

1171258.8

1    Hariharan Decl. ¶¶ 7-8; Stover Decl. ¶¶ 7-8.[11]  Such objection does not render the settlement

2    unfair, nor does it require Class Counsel to disavow an agreement they believe in the interests of

3    the Class.

4           As the Ninth Circuit has explained, "class counsel ultimately owe their fiduciary

5    responsibility to the class as a whole and are therefore not bound by the views of the named

6    plaintiffs regarding any settlement."  *Staton v. Boeing Co.*, 327 F.3d 938, 960 (9th Cir. 2003).

7    *See also Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 618, 632 (9th Cir. 1982)

8    (affirming approval of settlement in employment discrimination class action over objection of

9    named plaintiff and class representative); *Marshall v. Holiday Magic, Inc.*, 550 F.2d 1173, 1177

10   (9th Cir. 1977) (affirming approval of settlement in securities and antitrust class action over

11   objection of cross-plaintiffs, noting that "they should not now be allowed to play the role of

12   spoilers for a class of more than 31,000 people when they could have chosen not to be bound by

13   the settlement"); *Adoma v. Univ. of Phoenix, Inc.*, 913 F. Supp. 2d 964, 979-81 (E.D. Cal. 2012)

14   (approving settlement over sole class representative's objection) (*quoting* Federal Judicial Center,

15   *Manual for Complex Litigation* § 21.642 (4th ed.) ("a class representative cannot alone veto a

16   settlement, especially one that has been presented to and approved by the court")); *White v.

17   Experian Info. Solutions, Inc.*, 803 F. Supp. 2d 1086, 1100 (C.D. Cal. 2011) ("Nor should a

18   settlement be rejected merely because certain named plaintiffs object. Rather, in order to block a

19   fairly negotiated settlement, the merits of the objections must be substantial.") (citations omitted),

20   *reversed on other grounds*, *Radcliffe v. Experian Info. Solutions, Inc.*, 2013 U.S. App. LEXIS

21   7932 (9th Cir. Apr. 22, 2013); *Golden v. Pacific Maritime Ass'n*, 1984 WL 8145, at *3 (C.D. Cal.

22   1984) ("A named plaintiff's objection does not invalidate a settlement if the court otherwise finds

23   the settlement fair, adequate and reasonable."); *Boyd v. Bechtel Corp.*, 485 F. Supp. 610 (N.D.

24

25

26   [11] In addition, on May 16, 2014, the Court filed three letters it received objecting to the proposed
     settlement.  (Dkt. 914.)  Two of the three (Akeem Mostamandy and Paul Forman) were written by
27   individuals who are not members of the Class and do not have standing to object.  Plaintiffs
     understand that the sole Class member who wrote to the Court may be withdrawing his objection.
28

- 18 -

Cal. 1979) (same; approving class settlement over objections of three of four named plaintiffs). This is in accord with other circuits.[12]

Here, Class Counsel believe this Settlement is in the best interests of the Class and is fully informed by Class Counsel's analysis of the evidence, case law, and risks at trial.  Dermody Decl., ¶ 13.  The proposed monetary recovery—which would be among the largest recoveries for employees in any class litigation in history (*id.*)—is particularly substantial given the continuing risks of litigation, including securing unanimous jury verdict on overarching conspiracy and impact, as well as on the amount of damages, and preserving such verdict and pre-trial rulings on appeal.

---

[12] *See Charron v. Wiener*, 731 F.3d 241, 254 (2d Cir. 2013) (affirming approval of RICO class action settlement over objection by all five remaining class representatives, finding "[a]s our sister circuits have noted, the assent of class representatives is not essential to the settlement, as long as the Rule 23 requirements are met"); *Lazy Oil Co. v. Witco Corp.*, 166 F.3d 581 (3d Cir. 1999) (affirming district court's approval of antitrust class action settlement over lead plaintiff's objections); *In re Ivan F. Boesky Sec. Litig.*, 948 F.2d 1358, 1366 (2d Cir. 1991) ("We are most disinclined to cabin the authority of lead counsel by requiring the explicit agreement of every lawyer for a named plaintiff or subclass to the proposed settlement.  To empower each representative of a named plaintiff or subclass to veto the very proposal of a settlement to the district court would generally not serve the purposes of Rule 23.  Such a power would encourage strategic behavior by representatives of named plaintiffs or classes, designed to maximize the value of the veto rather than the settlement value of their claims."); *Elliott v. Sperry Rand Corp.*, 680 F.2d 1225 (8th Cir. 1982) (affirming district court's approval of class action settlement over objections of both named plaintiffs); *Parker v. Anderson*, 667 F.2d 1204, 1211 (5th Cir. 1982) (affirming settlement approval of employment class action over objections of 10 of the 11 named plaintiffs, stating "agreement of the named plaintiffs is not essential to approval of a settlement which the trial court finds to be fair and reasonable."); *Laskey v. International Union, UAW*, 638 F.2d 954, 956 (6th Cir. 1981) ("That the class counsel proposed a settlement which the named representatives opposed does not prove that the interests of the class were not protected."); *Flinn v. FMC Corp.*, 528 F.2d 1169, 1174 n.19 (4th Cir. 1975) ("Appellants do not argue, nor may they under the authorities, that assent of the class plaintiffs is essential to the settlement, provided the trial court finds it fair and reasonable."); *Saylor v. Lindsley*, 456 F.2d 896, 899-900 (2d Cir. 1972) (setting forth principle that named plaintiff approval not necessary for settlement approval); *see also Charron v. Pinnacle Group NY LLC*, 874 F. Supp. 2d 179, 191 (S.D.N.Y. 2012) (confirming principle that approval by all named plaintiffs not required for settlement approval and noting in various Circuits "even *unanimous* disapproval" with a settlement by the named plaintiffs does not preclude approval) (emphasis added); *Olden v. LaFarge Corp.*, 2007 U.S. Dist. LEXIS 5954, at *40-41 (E.D. Mich. Jan. 29, 2007) (approving settlement without the support of any class representatives).

1171258.8

1 | **VI.    PROPOSED PLAN OF NOTICE**

2      Rule 23(e)(1) states that, "[t]he court must direct notice in a reasonable manner to all class

3 members who would be bound by a proposed settlement, voluntary dismissal, or compromise."

4 Notice of a proposed settlement must inform class members of the following:  (1) the nature of

5 the pending litigation; (2) the general terms of the proposed settlement; (3) that complete

6 information is available from the court files; and (4) that any class member may appear and be

7 heard at the fairness hearing.  *See Newberg* § 8.32.  The notice must also indicate an opportunity

8 to opt-out, that the judgment will bind all class members who do not opt-out, and that any

9 member who does not opt-out may appear through counsel.  Fed. R. Civ. P. 23(c)(2)(B).  The

10 form of notice is "adequate if it may be understood by the average class member."  *Newberg*

11 § 11.53.  Notice to the class must be "the best notice practicable under the circumstances,

12 including individual notice to all members who can be identified through reasonable effort."

13 *Amchem Prods. v. Windsor*, 521 U.S. 591, 617 (U.S. 1997)

14      Within 20 days after the Court grants preliminary approval, Class Counsel and the Settling

15 Defendants have agreed to direct the prior notice administrator, Heffler Claims Group, to deliver

16 in a highly secure manner to this Settlement's administrator,  Gilardi & Co., LLC ("Notice

17 Administrator"), the information Defendants previously produced in an electronic format from

18 their human resources databases, for the Class period, such as the full legal name, last known

19 physical address, dates of employment in that Defendant's Class job titles, and associated base

20 salary by date and relevant Class job title of each Class member who was employed by that

21 Defendant.  Defendants will separately provide the Notice Administrator with secure social

22 security numbers for tax purposes.  (Settlement Agreement § II.B.)

23      Within two weeks thereafter, the Notice Administrator shall cause the Settlement Notice

24 to be mailed by first-class mail, postage prepaid, to Class members pursuant to the procedures

25 described in the Settlement Agreement, and to any potential Class member who requests one;

26 and, in conjunction with Class Counsel, shall cause a case-specific internet website to become

27 operational with case information, court documents relating to the Settlement, and the Notice.

28 (Settlement Agreement § II.B.)  At least thirty days prior to the Final Approval Hearing, the

- 20 -

1   Notice Administrator will file with the Court an Affidavit of Compliance with Notice

2   Requirements.  (Settlement Agreement § II.E.)

3           Class members will have until forty-five days from the date the Notice period begins

4   (established by the first day upon which the Notice Administrator provides mail Notice to Class

5   Members ["Notice date"]) to opt-out (the "Opt-Out Deadline") of the proposed Settlement.

6   (Settlement Agreement § II.D.)  Any Class member who wishes to be excluded (opt out) from the

7   Class must send a written Request for Exclusion to the Notice Administrator on or before the

8   close of the Opt-Out Deadline.  (Settlement Agreement § II.D.)

9           Consistent with the prior notice disseminated to the Class in this action, the content of the

10  Proposed Class Notice fully complies with due process and Rule 23.  (Settlement Agreement, Ex.

11  A.)  As before, it provides the definition of the Class, describes the nature of the action, including

12  the class allegations, and explains the procedure for making comments and objections.  The Class

13  Notice describes the terms of the Settlement with the Settling Defendants, informs Class members

14  regarding the plan of allocation, and advises Class members that the funds will be distributed at a

15  future time to be determined.  The Class Notice specifies the date, time, and place of the final

16  approval hearing and informs Class members that they may enter an appearance through counsel.

17  The Class Notice also informs Class members how to exercise their rights and make informed

18  decisions regarding the proposed Settlement and tells them that if they do not opt out, the

19  judgment will be binding upon them.  The Class Notice further informs the Class that Class

20  Counsel will seek costs of up to $1.2 million, attorneys' fees of up to the benchmark 25% of the

21  Settlement fund, and service awards for the current Class Representatives of up to $80,000 each,

22  plus $80,000 to the estate of deceased Class Representative Brandon Marshall.  Courts have

23  approved class notices even when they only generally describe a settlement.  *See, e.g.*,

24  *Mendoza v. United States*, 623 F.2d 1338, 1351 (9th Cir. 1980) ("very general description of the

25  proposed settlement" satisfies standards).  This Notice exceeds the standard.

26  **VII.   PROPOSED PLAN OF ALLOCATION**

27          A plan of allocation of class settlement funds is subject to the "fair, reasonable and

28  adequate" standard that applies to approval of class settlements.  *In re Citric Acid Antitrust Litig.*,

NOTICE OF MOTION AND
MOTION ISO PRELIMINARY SETTLEMENT
APPROVAL; NO. 11-CV-2509-LHK

1   145 F. Supp. 2d 1152, 1154 (N.D. Cal. 2001).  "A plan of allocation that reimburses class

2   members based on the extent of their injuries is generally reasonable."  *In re Oracle Sec. Litig.*,

3   1994 U.S. Dist. LEXIS 21593, at *3 (N.D. Cal. June 18, 1994).  Here, as explained above,

4   Plaintiffs propose that the Settlement Fund be allocated based upon total base salary received

5   during the conspiracy period.  Such *pro rata* distributions are "cost-effective, simple and

6   fundamentally fair."  *In re Airline Ticket Comm'n Antitrust Litig.*, 953 F. Supp. 280, 285 (D.

7   Minn. 1997). This is the same plan of allocation the Court approved in connection with the prior

8   settlements with Lucasfilm, Pixar, and Intuit.  (Dkt. 915, at 7:7-18.)

9   **VIII.   THE COURT SHOULD SET A FINAL APPROVAL HEARING SCHEDULE**

10          The last step of the settlement approval process is the final approval hearing, at which the

11  Court may hear all evidence and argument necessary to evaluate the proposed settlement.  At that

12  hearing, proponents of the Settlement may explain and describe its terms and conditions and offer

13  argument in support of approval and members of the Class, or their counsel, may be heard in

14  support of or in opposition to the Settlement.  Plaintiffs propose the following schedule for final

15  approval of the Settlement:

| Event | Date |
| --- | --- |
| Notice of Class Action Settlement to Be Mailed and Posted on Internet | Within 14 days of receipt of Class member information from all Defendants |
| Class Counsel Motion for Costs, and Motion for Plaintiffs' Service Awards | To be completed 31 days from Notice Date |
| Opt-Out and Objection Deadline | 45 days from Notice Date |
| Notice Administrator Affidavit of Compliance with Notice Requirements | To be filed 30 days prior to the Final Approval Hearing |
| Motion for Final Approval | To be filed 70 days from the Notice Date and 21 days prior to the Final Approval Hearing |
| Replies in Support of Motions for Final Approval, Attorneys' Fees and Costs, and Service Awards to Be Filed by Class Counsel | To be filed 7 days prior to Final Approval Hearing |

16
17
18
19
20
21
22
23
24
25
26
27
28

- 22 -

| **Event** | **Date** |
|---|---|
| Final Approval Hearing | _____, 2014 |

## IX.   CONCLUSION

Based on the foregoing, Plaintiffs respectfully request that the Court:  (1) preliminarily approve the Settlement; (2) approve the proposed plan of notice to the Class; (3) appoint Gilardi & Co., LLC as the Notice Administrator; (4) set a schedule for disseminating notice to Class members, as well as deadlines to comment on, object to, or opt out of the Settlement; and (5) schedule a hearing pursuant to Rule 23(e) of the Federal Rules of Civil Procedure to determine whether the proposed Settlement is fair, reasonable, and adequate and should be finally approved.

Respectfully submitted,

Dated:  May 22, 2014          LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP

By:       */s/ Kelly M. Dermody*
                Kelly M. Dermody

Richard M. Heimann (State Bar No. 63607)
Kelly M. Dermody (State Bar No. 171716)
Brendan Glackin (State Bar No. 199643)
Dean Harvey (State Bar No. 250298)
Anne B. Shaver (State Bar No. 255928)
Lisa J. Cisneros (State Bar No. 251473)
275 Battery Street, 29th Floor
San Francisco, California  94111-3339
Telephone:  415.956.1000
Facsimile:  415.956.1008

JOSEPH SAVERI LAW FIRM, INC.

By:       */s/ Joseph R. Saveri*
                Joseph R. Saveri

Joseph R. Saveri (State Bar No. 130064)
James Dallal (State Bar No. 277826)
JOSEPH SAVERI LAW FIRM, INC
505 Montgomery, Suite 625
San Francisco, CA 94111
Telephone:  415.500.6800
Facsimile:  415.395.9940

*Co-Lead Counsel for Plaintiff Class*

NOTICE OF MOTION AND
MOTION ISO PRELIMINARY SETTLEMENT
APPROVAL; NO. 11-CV-2509-LHK