# EXHIBIT 5

1  Kelly M. Dermody (State Bar No. 171716)
   Heather H. Wong (State Bar No. 238546)
2  LIEFF, CABRASER, HEIMANN &
   BERNSTEIN, LLP
3  275 Battery Street, 30th Floor
   San Francisco, CA 94111-3339
4  Telephone: (415) 956-1000
   Facsimile: (415) 956-1008
5  Email: kdermody@lchb.com
   Email: hwong@lchb.com
6
   Elizabeth A. Alexander (pro hac vice)          Adam T. Klein (pro hac vice)
7  LIEFF, CABRASER, HEIMANN &                     Justin M. Swartz (pro hac vice)
   BERNSTEIN, LLP                                 Piper Hoffman (pro hac vice)
8  150 4th Avenue, N., Suite 1650                 OUTTEN & GOLDEN LLP
   Nashville, TN 37219-2423                       3 Park Avenue, 29th Floor
9  Telephone: (615) 313-9000                      New York, New York 10016
   Facsimile: (615) 313-9965                      Telephone: (212) 245-1000
10                                                Facsimile: (212) 977-4005
   Cyrus Mehri (pro hac vice)
11 Lisa M. Bornstein (pro hac vice)               James M. Finberg (State Bar No. 114850)
   Anna M. Pohl (pro hac vice)                    ALTSHULER BERZON
12 MEHRI & SKALET, PLLC                           177 Post Street, Ste. 300
   1250 Connecticut Ave, NW, Suite 300            San Francisco, CA 94108
13 Washington, DC 20036                           Telephone: (415) 421-7151
   Telephone: (202) 822-5100                      Facsimile: (415) 362-8064
14 Facsimile: (202) 822-4997

15 *Attorneys for Plaintiffs and the Proposed Class*

16

17                    UNITED STATES DISTRICT COURT

                   NORTHERN DISTRICT OF CALIFORNIA
18

19

20 RENEE FASSBENDER AMOCHAEV,            Case No. C-05-1298 PJH
   DEBORAH ORLANDO, KATHRYN N.
21 VARNER and IVY SO, on behalf of       CLASS ACTION
   themselves and all others similarly situated,
                                          [~~REVISED PROPOSED~~] ORDER
22          Plaintiffs,                   (1) PRELIMINARILY APPROVING
                                          CLASS ACTION SETTLEMENT,
23     v.                                 (2) PROVISIONALLY CERTIFYING
                                          SETTLEMENT CLASS, (3) DIRECTING
24 CITIGROUP GLOBAL MARKETS, INC.,        DISTRIBUTION OF NOTICE OF THE
   d/b/a SMITH BARNEY,                    SETTLEMENT, AND (4) SETTING A
25                                        SCHEDULE FOR THE FINAL
            Defendant.                    SETTLEMENT APPROVAL PROCESS
26

27

28

Having reviewed Plaintiffs' Notice of Motion and Motion for: (1) Preliminary Approval of Class Action Settlement; (2) Provisional Certification of Settlement Class; (3) Approval and Distribution of Notice of Settlement; and (4) Approval of a Schedule for the Final Settlement Approval Process, Plaintiffs' Memorandum of Points and Authorities in Support thereof, and the proposed Settlement Agreement; along with the files and records of this case, the Court now FINDS, CONCLUDES, and ORDERS as follows:

**I.      JURISDICTION**

This Court has jurisdiction over the subject matter of the litigation and over all parties to this litigation, including all members of the Settlement Class, as defined below.

**II.      NO DETERMINATION**

This Court hereby decrees that neither[1] the Settlement Agreement, nor this preliminary approval order, nor the fact of a settlement, are an admission or concession by the Defendant of any liability or wrongdoing whatsoever.

**III.      CERTIFICATION OF SETTLEMENT CLASS**

1.      For settlement purposes, the Parties have proposed conditional certification of the following Settlement Class under Fed. R. Civ. P. 23(a), (b)(2) and (b)(3):

All women employed as Financial Advisors in (i) the United States branches of Smith Barney's retail brokerage division at any time from August 30, 2003 through March 1, 2008 or (ii) the California branches of Smith Barney's retail brokerage division at any time from June 25, 2003 through March 1, 2008.

2.      The Settlement Class members allege claims for gender discrimination brought under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.* ("Title VII"), and, with respect to California Class Members, the California Fair Employment and Housing Act, Cal. Gov't Code § 12940 ("FEHA").

3.      The Court hereby FINDS and CONCLUDES that the Settlement Class set forth above satisfies all of the requirements for certification under Rule 23(a) and Rule 23(b)(2).  There

---

[1] Any references to the Settlement Agreement herein also refer to the Revised Settlement Agreement filed with the Court on April 28, 2008, and any changes to the Settlement Agreement by way of the Revised Settlement Agreement are incorporated therein.

[REVISED PROPOSED] ORDER (1) PRELIMINARILY
APPROVING CLASS ACTION SETTLEMENT
CASE NO. C-05-1298 PJH

1   are approximately 2500 Class Members and, thus, joinder is impracticable.  The Class Members

2   share common issues of fact and law regarding: (1) whether Smith Barney intentionally

3   discriminated against female Financial Advisors in compensation, business opportunities or other

4   terms and conditions of employment in violation of Title VII and FEHA; or (2) whether Smith

5   Barney's compensation policies caused an adverse impact in violation of Title VII and FEHA.

6   Plaintiffs' claims are typical of those of the classes they represent, since they arise out of the same

7   policies and practices and course of conduct complained of by all Class Members.  Plaintiffs are

8   adequate representatives of the classes they seek to represent, since their interests are co-

9   extensive with those of Class Members, and they have retained experienced counsel to represent

10  them.  Plaintiffs are seeking meaningful injunctive relief applicable to the class as a whole.

11  Accordingly, the Court hereby CERTIFIES the Settlement Class for purposes of injunctive relief

12  under Rule 23(a) and Rule 23(b)(2).

13          4.      The Court also hereby FINDS and CONCLUDES that the Settlement Class

14  described above satisfies all of the requirements for certification under Rule 23(a) and Rule

15  23(b)(3).  As discussed in Paragraph 3, above, the requirements of Rule 23(a) – numerosity,

16  commonality, typicality, and adequacy – were satisfied.  In addition, the Court finds and

17  concludes that the Settlement Class satisfies the requirements for certification under Rule

18  23(b)(3).  Questions of law or fact common to the Class predominate over individualized issues,

19  and a class action is superior to other available methods for the fair and efficient adjudication of

20  the controversy.  Because certification of the Class is proposed in the context of a settlement, the

21  Court need not inquire whether the case, if tried as a class action, would present intractable

22  management problems.  Accordingly, the Court CERTIFIES the Settlement Class for purposes of

23  monetary relief, under Rules 23(a) and 23(b)(3).

24  **IV.    APPOINTMENT OF CLASS REPRESENTATIVES AND CLASS COUNSEL**

25          1.      The Court finds that Class Representatives Renee Fassbender Amochaev, Deborah

26  Orlando, Kathryn N. Varner, and Ivy So have claims typical of Class Members and are adequate

27  representatives of Class Members.  The Court appoints them to serve as Class Representatives.

28          2.      The Court finds that Lieff, Cabraser, Heimann & Bernstein, LLP, Outten &

756996.3                             - 3 -

1   Golden LLP, Mehri & Skalet, PLLC and Altshuler Berzon LLP, have, separately and collectively,

2   extensive experience and expertise in prosecuting employment discrimination class action cases.

3   The Court appoints these firms as Class Counsel.  The Court further appoints Lieff Cabraser

4   Heimann & Bernstein LLP, Outten & Golden, LLP, and Mehri & Skalet, PLLC, as Lead Class

5   Counsel.

6   **V.      PRELIMINARY APPROVAL OF SETTLEMENT AGREEMENT**

7           The Court has reviewed the terms of the [Proposed] Settlement Agreement attached as

8   Exhibit 1, including specifically the injunctive relief provisions and the plan of allocation, and the

9   Plaintiffs' description of the settlement in the Motion papers.  The Court has also read and

10  considered the declarations of Kelly M. Dermody, Adam T. Klein, Cyrus Mehri and James M.

11  Finberg in support of preliminary approval.  Based on review of those papers, and the Court's

12  familiarity with this case, the Court concludes that the settlement and Settlement Agreement are

13  the result of extensive, arm's length negotiations between the Parties after they investigated the

14  class claims and became familiar with the strengths and weakness of Plaintiffs' case.  The

15  assistance of an experienced mediator in the settlement process confirms that the Settlement is

16  non-collusive.  Based on that review, and the Court's familiarity with the issues in the case, the

17  Court concludes that the proposed Settlement Agreement has no obvious defects and is within the

18  range of possible settlement approval, such that notice to the Class is appropriate.

19          IT IS THEREFORE ORDERED THAT:

20          1.      The [Proposed] Settlement Agreement and the Settlement it embodies are hereby

21  PRELIMINARILY APPROVED.  Final approval and entry of the Settlement Agreement is

22  subject to the hearing of any objections of members of the Settlement Class to the proposed

23  settlement embodied in the Settlement Agreement.

24          2.      Pending the determination of the fairness of the Settlement Agreement, all further

25  litigation of this action is hereby STAYED.

26  **VI.     CONFIDENTIALITY**

27          The Court hereby enjoins disclosure to third parties of the documents and information

28  discussed or exchanged during the parties' confidential settlement negotiations and mediation to

[REVISED PROPOSED] ORDER (1) PRELIMINARILY
APPROVING CLASS ACTION SETTLEMENT
CASE NO. C-05-1298 PJH

any third party not specified in the parties' confidentiality agreements.

## VII. OTHER CASES ENJOINED

Pending Final Approval, the Court hereby preliminarily enjoins each member of the Settlement Class, including any member who makes an irrevocable election to exclude herself from the Settlement Class, from commencing, prosecuting or maintaining in any court other than this Court any claim, action or other proceeding that challenges or seeks review of or relief from any order, judgment, act, decision or ruling of this Court in connection with the Settlement Agreement. The Court further enjoins any member of the Settlement Class who has not, by the deadline for opting out, made a timely, irrevocable election to exclude herself from the Settlement Class from commencing, prosecuting or maintaining, either directly, representatively or in any other capacity, any claim that is subsumed within the Settlement Agreement.

## VIII. APPROVAL OF THE FORM AND MANNER OF DISTRIBUTING CLASS NOTICE AND CLAIM FORM

The Parties have also submitted for this Court's approval a proposed Class Notice and a proposed Claim Form, which the Court has carefully reviewed. The Court finds and concludes as follows:

1. The proposed Class Notice is the best notice practical under the circumstances and allows Class Members a full and fair opportunity to consider the proposed Settlement. The proposed plan for distributing the Class Notice and Claim Form, which are attached as exhibits to the Settlement Agreement, likewise is a reasonable method calculated to reach all members of the Class who would be bound by the Settlement. Under this plan, the Claims Administrator will distribute the Class Notice and Claim Form to Settlement Class Members by first class U.S. Mail to their last known addresses. There is no additional method of distribution that would be reasonably likely to notify Class Members who may not receive notice pursuant to the proposed distribution plan.

2. The Class Notice fairly, plainly, accurately, and reasonably informs Class Members of: (1) appropriate information about the nature of this litigation, the Settlement Class, the identity of Class Counsel, and the essential terms of the Settlement Agreement, including

756996.3

[REVISED PROPOSED] ORDER (1) PRELIMINARILY
APPROVING CLASS ACTION SETTLEMENT
CASE NO. C-05-1298 PJH

injunctive relief and the plan of allocation; (2) appropriate information about Class Counsel's forthcoming application for attorneys' fees, the proposed service payments to the Class Representatives and other payments that will be deducted from the settlement fund; (3) appropriate information about how to participate in the Settlement; (4) appropriate information about this Court's procedures for final approval of the Settlement Agreement and Settlement, and about Class Members' right to appear through counsel if they desire; (5) appropriate information about how to challenge or opt out of the Settlement, if they wish to do so; and (6) appropriate instructions as to how to obtain additional information regarding this litigation or the Settlement Agreement.

3.      Similarly, the proposed Claim Form allows members of the Settlement Class a full and fair opportunity to submit a claim for proceeds in connection with the Settlement. Moreover, the Claim Form fairly, accurately, and reasonably informs Settlement Class Members that failure to complete and submit a Claim Form, in the manner and time specified, shall constitute a waiver of any right to obtain any share of the Settlement Payment.

4.      The Court finds and concludes that the proposed plan for distributing the Notice and Claim Form ("Notice Materials") will provide the best notice practicable, satisfies the notice requirements of Rule 23(e), and satisfies all other legal and due process requirements.

5.      Accordingly, the Court hereby ORDERS as follows:

A.      The form of the Notice Materials is approved.

B.      The manner of distributing the Notice Materials is approved.

C.      Promptly following the entry of this Order, the Claims Administrator shall prepare final versions of the Notice Materials, incorporating into the Notice the relevant dates and deadlines set forth in this Order.

D.      Within ten (10) days following entry of this Order, Smith Barney shall provide the Claims Administrator the name, social security number, and the last known address of each Class Member.  This information will be provided in a computer readable format acceptable to the Claims Administrator.  The Claims Administrator shall utilize Class Members' social security numbers only for the purpose of locating and

- 6 -

1   identifying Class Members and shall keep those social security numbers confidential.

2              E.      Prior to the mailing of the Notices, the Claims Administrator will

3   update any new address information for potential Class Members as may be available

4   through the National Change of Address ("NCOA") system.

5              F.      Within twenty (20) days after the entry of this Order, the Claims

6   Administrator shall mail the Notice and Claim Form to each all known potential

7   Settlement Class Members at their last known address or at the most recent address that

8   may have been obtained through the NCOA via first class postage.

9              G.      The Claims Administrator shall provide Lead Class Counsel a list

10  of those Class Members who have not been located and the Claims Administrator may

11  engage third party vendors in order to locate Class members.  The Claims Administrator

12  shall maintain a log of its activities undertaken in its efforts to locate Class Members.

13  The expense of the Claims Administrator shall be paid by the Settlement Fund as

14  described in the Settlement Agreement.

15             H.      The Claims Administrator shall take all other actions in

16  furtherance of claims administration as are specified in the Settlement Agreement.

17  **IX.    PROCEDURES FOR FINAL APPROVAL OF THE SETTLEMENT**

18        **A.    Fairness Hearing**

19       The Court hereby schedules a hearing to determine whether to grant final certification of

20  the Settlement Class, and final approval of the Settlement Agreement (including the proposed

21  plan of allocation, injunctive relief, payment of attorneys' fees and costs, and service payments to

22  the Class Representatives) (the "Fairness Hearing") for _____, 2008 at _____ am/pm.

    <u>August 13</u>                    <u>9:00 a.m.</u>

23        **B.    Deadline to Request Exclusion from the Settlement**

24       1.      Class Members may exclude themselves, or opt out, of the monetary relief

25  provisions of the class settlement.  Any request for exclusion must be in the form of a written,

26  signed "opt-out" statement.  A person wishing to opt out must sign a statement which includes the

27  following language:

28       I understand that I am requesting to be excluded from the Class Settlement and

1    that I will receive no money from the settlement fund created under the
Settlement Agreement entered into by Smith Barney. I understand that if I am

2    excluded from the Class Settlement, I may bring a separate legal action seeking
damages, but might receive nothing or less than what I would have received if I

3    had filed a claim under the class monetary settlement procedure in this case. I
also understand that I may not seek exclusion from the Class with respect to

4    injunctive relief and that I am bound by the injunctive provisions of the
Settlement Agreement entered into by Smith Barney.

5

6          2.       Any Class Member who wishes to opt out of the Settlement Class must mail a

7  written, signed statement that she is opting out of the Settlement Class to the Claims

8  Administrator at the following address:

9                    Amochaev, et al. v. Smith Barney Claims Administrator

10                         P.O. Box 10564
                    Tallahassee, FL 32302-2564

11                 Telephone: (866) 854-4175

12  To be effective, this opt-out statement must be postmarked on or before forty-five (45) days after

13  the date the Notice is to be mailed to Class Members. The Claims Administrator shall provide to

14  all counsel and file with the Court all opt-out statements that are timely received and not

15  rescinded. The Settlement Class will not include those individuals who file and serve a timely

16  opt-out statement, and individuals who opt-out are not entitled to any monetary award under the

17  Settlement Agreement. With respect to each such individual, the statute of limitations for her to

18  assert any claim for individual relief will resume running on the postmark date of her signed,

19  written statement that she is opting out of the Settlement Class. In the event that a Class Member

20  files both a Claim Form and an opt-out statement, the opt-out statement shall be deemed invalid.

21          3.       The Claims Administrator shall file copies of all timely requests for exclusion, not

22  timely rescinded, with the Court prior to the Fairness Hearing, redacting Social Security numbers

23  and home addresses.

24          4.       Class Members shall be permitted to withdraw or rescind their opt-out statements

25  by submitting a "rescission of opt-out" statement to the Class Counsel and counsel for Smith

26  Barney. The rescission of opt-out statement shall include the following language:

27    I previously submitted an opt-out statement seeking exclusion from the class
monetary settlement. I have reconsidered and wish to withdraw my opt-out

28    statement. I understand that by rescinding my opt-out statement I may be eligible to receive

an award from the claims settlement fund and may not bring a separate legal action against Smith Barney seeking damages with respect to the Released Claims.

To be effective, such rescissions must be in writing and sent to the Claims Administrator and must be postmarked on or before sixty (60) days from the date that the Notice is to be mailed to the Class. In the event that a Class Member files both a Claim Form and an opt-out statement, the opt-out statement shall be deemed invalid.

**C,   Defendant's Right to Rescind Agreement**

If the number of individuals who opt out of the Settlement Class in the manner provided in this Order exceeds the number filed with the Court under seal concurrently with the Settlement Agreement, then Smith Barney, at its sole option, shall have the right to void the Settlement, provided that Smith Barney exercises its right to void the Settlement not later than 20 days following the deadline for requests for exclusion. If Smith Barney exercises this option, all of Smith Barney's obligations under the Settlement Agreement shall cease to be of any force and effect, and the Settlement Agreement and any orders entered in connection therewith shall be vacated, rescinded, cancelled, and annulled, and the parties hall return to the status quo in the Civil Action as if the parties had not entered into the Settlement Agreement. In addition, in such event, the Settlement Agreement and all negotiations, court orders, and proceedings related thereto shall be without prejudice to the rights of any and all parties thereto, and evidence relating to the Settlement Agreement and all negotiations shall not be admissible or discoverable in the Civil Action or otherwise. In the alternative, if the number of individuals who opt out of the Settlement Class in the manner provided in this Order exceeds the number filed with the Court under seal concurrently with the Settlement Agreement, then Smith Barney, at its sole option, shall have the option of not withdrawing from this Settlement Agreement, and instead taking an opt-out credit, which shall be a pro rata share of the Settlement Fund based on the number of Class Members who have opted out in relation to the total number of Class Members.

756996.3

**D.     Deadline for Filing Objections to Settlement and [Proposed]
Settlement Agreement**

1.      Any Class Member who has not opted out of the Settlement Class and wishes to object to the fairness, reasonableness or adequacy of the Settlement Agreement or the Settlement must do so in writing.  Class Member objections to the Settlement Agreement must include a detailed description of the basis of the objection. To be effective, objections must be filed with the Court, with copies served on Lead Class Counsel and counsel for Smith Barney, within forty-five (45) days after the Notice is to be mailed to Class Members.  No one may appear at the Settlement Hearing for purposes of objecting to the Settlement Agreement without first having filed and served her objection(s) in writing within forty-five (45) days after the Notice was mailed to Class members.

2.      An objector who wishes to appear at the Fairness Hearing, either in person or through counsel hired by the objector, must state her intention to do so at the time the objector submits her written objections.  Objections raised at the Fairness Hearing will be limited to those previously submitted in writing.  Any Class Members who do not timely file and serve such a written objection shall not be permitted to raise such objection, except for good cause shown, and any member of the class who fails to object in the manner prescribed herein shall be deemed to have waived, and shall be foreclosed from raising, any such objection.

3.      Class Counsel shall file copies of all timely objections with the Court prior to the Fairness Hearing, redacting Social Security numbers and home addresses.

**E.     Deadline for Submitting Claims Forms**

1.      A Class Member who does not opt out will be eligible to a share of the settlement benefit.  To receive this share, such a Class Member must properly and timely complete and submit a Claim Form to the Claims Administrator in accordance with the terms of the Settlement Agreement.  To be effective, Class Members, including the Named Plaintiffs, must submit a Claim Form which must be postmarked no later than one hundred twenty (120) days after the initial mailing of the Class Notice to Class Members (the "Claim Filing Deadline").  Failure to postmark a completed Claim Form by the

- 10 -

Claim Filing Deadline shall bar the Class Member from receiving any monetary award pursuant to the Settlement Agreement. Class Members who do not file timely and valid Claim Forms shall nonetheless be bound by the judgment and release in this action as set forth in the Settlement Agreement, unless that Class Member timely opts out of the Settlement.

2. It shall be the sole responsibility of each Class Member who seeks a monetary award to notify the Claims Administrator if the Class Member changes her address. Failure of a Class Member to keep the Claims Administrator apprised of her address may result in the claim being denied or forfeited.

3. The Claims Administrator will provide counsel for Smith Barney and Smith Barney's payroll department with the names and social security numbers of all Class Members who submitted Claim Forms ("Claimants"). The identity of the Claimants will not be disclosed to anyone at Smith Barney other than its counsel and those employees necessary to retrieve the information to be provided to the Claims Administrator under the Settlement Agreement. The content of the Claims Form will be kept confidential.

4. After receiving the Claimant information discussed in the paragraph above, Smith Barney, through its counsel, will provide the Claims Administrator with the dates each Claimant was employed by Smith Barney as a Financial Advisor. The Claims Administrator will provide that information to each Claimant. To the extent there is any disagreement relating to the accuracy of the information provided to the Claimants, the disagreement shall be resolved by the Claims Administrator.

**F. Claims Administrator Authority to Determine Award Eligibility.**

1. Within a reasonable time period after the date specified for receipt of the Claim Forms, the Claims Administrator shall render a determination as to the monetary award, if any, that should be paid to each Claimant from the Settlement Fund. Class Members who submit a Claim Form will be eligible to receive monies based on the Claimant's length of tenure as a Financial Advisor at Smith Barney during the Class

- 11 -

period, as well as upon information (if supplied by the Class Member) regarding termination allegedly due to gender-based discrimination. The Claims Administrator's determination shall be final and not subject to review by, or appeal to, any court, mediator, arbitrator or other judicial body, including without limitation this Court. As will be reflected in the final order approving this Settlement, Smith Barney and Class Counsel shall have no responsibility, and may not be held liable, for any determination reached by the Claims Administrator.

2. The total amount of such awards shall not exceed the net amount of the Settlement Fund net after payment of notice and administration, Class Counsel's attorney's fees and costs, and the Named Plaintiff's service payments and non-class claims, as set forth in the Settlement Agreement.

3. The Claims Administrator shall send a Notice of Award to each eligible Claimant, along with a Named Plaintiff Release or a Class Member Release, whichever is applicable. Within a reasonable time period after receipt of an executed Named Plaintiff Release from a Named Plaintiff or an executed Class Member Release from a Class Member, the Claims Administrator shall send the Named Plaintiff or Class Member her award payment. Any Named Plaintiff who does not execute and timely deliver an executed Named Plaintiff Release, and any Class Member who does not execute and timely deliver an executed Class Member Release to the Claims Administrator within six (6) months of the date the Notice of Award was mailed to her shall be ineligible for, and forever barred from receiving, monetary relief under this Settlement Agreement, even if said Named Plaintiff or Class Member has not opted out. Any undistributed funds that remain after six (6) months from the mailing of the Notice of Award due to unsubmitted releases shall be distributed to 501(c)(3) organizations advancing career opportunities for women, including career opportunities in the financial services industry, as jointly selected by Lead Class Counsel and Smith Barney.

4. The Claims Administrator shall maintain the distribution plan and allocation list for a period of seven (7) years. Smith Barney shall have access to

- 12 -

1  individual allocation amounts only upon written notice to Class Counsel and a showing

2  of good cause (*e.g.*, actual or threatened litigation by a Claimant).  Any dispute as to

3  whether good cause exists for such a requested disclosure shall be resolved through the

4  Dispute Resolution process set forth in Section J of the Settlement Agreement.

5  **G.  Deadline for Submitting Motion Seeking Final Approval**

6  No later than twenty (20) days before the Fairness Hearing, Plaintiffs shall file a

7  Motion for Final Approval of the Settlement and Settlement Agreement.  Any opposition

8  must be filed no later than thirteen (13) days before the Fairness Hearing, with the

9  Parties' reply (if any) to be filed no later than seven (7) days before the Fairness Hearing.

10  **H.  Deadline for Petition for Attorneys' Fees**

11  Class Counsel shall file with this Court their petition for an award of attorneys'

12  fees and reimbursement of expenses no later than twenty (20̶) 28 days before the Fairness

13  Hearing.  Any opposition  must be filed no later than thirteen (13̶) 21 days before the

14  Fairness Hearing, with Class Counsel's reply (if any) to any opposition memorandum

15  filed by any objector no later than seven (7̶) 14 days before the Fairness Hearing.

16  **H.  Deadline for Petition for Approval of Service Payments**

17  Class Counsel shall file with this Court their petition for an award of service

18  payments to the Class Representatives no later than twenty (20) days before the Fairness

19  Hearing.  Any opposition  must be filed no later than thirteen (13) days before the

20  Fairness Hearing, with Class Counsel's reply (if any) to any opposition memorandum

21  filed by an objector no later than seven (7) days before the Fairness Hearing.

22  **X.  NAMED PLAINTIFFS' AND CLASS MEMBERS' RELEASE**

23  If, at the Fairness Hearing, this Court grants Final Approval to the Settlement and

24  Settlement Agreement, Named Plaintiffs and each individual Settlement Class Member

25  who does not timely opt out will release claims, as set forth in the Settlement Agreement,

26  by operation of this Court's entry of the Judgment and Final Approval, regardless of

27  whether she submits a Claim Form or receives any share of the Settlement Fund.

28

- 13 -

1   **XI.    APPOINTMENT OF CLAIMS ADMINISTRATOR**

2           Settlement Services, Inc. of Tallahassee, Florida is hereby appointed Claims

3   Administrator to carry out the duties set forth in this Order and the Settlement

4   Agreement.

5

6           IT IS SO ORDERED.

7

8

9           Dated: ___5/1/08_____

10

11

[REVISED PROPOSED] ORDER (1) PRELIMINARILY
APPROVING CLASS ACTION SETTLEMENT
CASE NO. C-05-1298 PJH

# Exhibit 1

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| RENEE FASSBENDER AMOCHAEV, DEBORAH ORLANDO, KATHRYN N. VARNER and IVY SO, on behalf of themselves and all others similarly situated, | Case No.  C- 05-1298 PJH |
|  | CLASS ACTION |
| Plaintiffs, |  |
| v. |  |
| CITIGROUP GLOBAL MARKETS, INC., d/b/a SMITH BARNEY, |  |
| Defendant. |  |

**<u>REVISED SETTLEMENT AGREEMENT</u>**

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ................................................................................. 1

II.     NATURE AND RESOLUTION OF THE CASE ................................. 1

    A.      The Parties Engaged in Substantial Discovery ......................... 2

    B.      Settlement Reached After Extended Negotiations..................... 3

III.    GENERAL TERMS OF THE SETTLEMENT AGREEMENT ........... 4

    A.      Definitions.................................................................................. 4

    B.      Duration of the Settlement ........................................................ 7

    C.      Cooperation ................................................................................ 7

    D.      Persons Covered by this Settlement Agreement........................ 7

        1.      Definition of "Settlement Class," "Class" or "Class
            Members." ....................................................................... 7

        2.      Certification ................................................................... 8

IV.     COURT APPROVAL/NOTICE AND FAIRNESS HEARING........................... 8

    A.      Jurisdiction and Venue............................................................... 8

    B.      Preliminary Approval................................................................. 8

    C.      Notice and Settlement Hearing ................................................. 9

V.      RELEASE/BAR OF CLAIMS ........................................................... 13

    A.      Class Member Release.............................................................. 13

    B.      Individual Claims of Named Plaintiffs .................................... 13

    C.      .................................................................................................. 14

    D.      .................................................................................................. 14

    E.      .................................................................................................. 14

    F.      .................................................................................................. 15

    G.      No Bar to Future Claims .......................................................... 15

VI.     NO ADMISSION, NO DETERMINATION...................................... 15

VII.    PROGRAMMATIC RELIEF ............................................................ 16

    A.      Communications ....................................................................... 16

    B.      Branch Management/Mobility .................................................. 17

    C.      Account Distribution................................................................. 19

# TABLE OF CONTENTS
## (continued)

**Page**

    1.      Power Rankings ........................................................... 19

    2.      Account Distribution Policies ...................................... 20

    3.      Disputes Concerning Account Distributions ............... 22

    4.      Financial Life Services and Bank-Based Advisors..................... 23

    5.      Up-front Bonuses ........................................................ 23

    6.      Retiring Financial Advisors ........................................ 24

    7.      Partnerships................................................................. 24

    8.      Leads, Call-ins, and Walk-ins .................................... 25

D.      Development Opportunities .................................................. 27

E.      Complaint Process and Training........................................... 28

F.      Appointments ...................................................................... 29

    1.      Diversity Monitor....................................................... 29

    2.      Industrial Psychologist............................................... 32

G.      General Non-Discrimination Provisions................................ 35

H.      Duration of the Settlement ................................................... 36

VIII.    MONITORING..................................................................................... 36

A.      Data Collection .................................................................... 36

B.      Monitoring System............................................................... 36

C.      Reports................................................................................. 37

D.      Meetings............................................................................... 37

IX.     MONETARY RELIEF ......................................................................... 37

A.      Settlement Fund. .................................................................. 37

B.      Administration by Trustee ................................................... 39

C.      Claims Filing Procedures for Settlement of Claims of Named
          Plaintiffs and Class Members ............................................. 39

D.      Claims Administrator Authority to Determine Award Eligibility. .......... 40

E.      Confidentiality Regarding Amount of Monetary Award........................ 41

F.      Non-Admissibility of Fact of Award (or Non-Award) ............................ 41

G.      Tax Treatment...................................................................... 42

# TABLE OF CONTENTS
### (continued)

Page

| | | |
|---|---|---|
| | 1. | Qualified Tax Status and Tax Responsibilities. .......................... 42 |
| | 2. | Payment of Federal, State and Local Taxes. ............................... 42 |
| H. | | Smith Barney Has No Further Obligation, Liability or Responsibility ........................................................................... 45 |
| X. | | ATTORNEYS' FEES, EXPENSES OF CLASS COUNSEL AND ADMINISTRATIVE EXPENSES ................................................. 45 |
| | A. | Class Counsel Fees and Costs ................................................. 45 |
| | B. | Smith Barney's Non-Opposition ............................................. 46 |
| | C. | Timing of Fee Payment .......................................................... 46 |
| | D. | Satisfaction of Fee and Cost Obligations under the Settlement. .............. 46 |
| | E. | Service Award ....................................................................... 46 |
| XI. | | TERMINATION OF THE SETTLEMENT AGREEMENT ............................ 47 |
| XII. | | CONFIDENTIALITY ................................................................. 47 |
| | A. | Documents and Information Produced by Smith Barney and Class Counsel. ............................................................................. 47 |
| | B. | Return or Disposal of Confidential Documents and Information ........... 48 |
| XIII. | | GOVERNING LAW .................................................................. 48 |
| XIV. | | OTHER CONDITIONS OF SETTLEMENT ....................................... 48 |
| | A. | Exhibits .............................................................................. 48 |
| | B. | Notices to Counsel ............................................................... 49 |
| | C. | Failure to Insist on Strict Compliance ..................................... 49 |
| | D. | Modifications to this Agreement ............................................ 49 |
| | E. | No Drafting Presumption ...................................................... 49 |
| | F. | Dispute As To Meaning of Agreement Terms........................... 49 |
| | G. | Interpretation of Terms ......................................................... 50 |
| | H. | Severability ......................................................................... 50 |
| | I. | Paragraph and Section Headings ............................................ 50 |
| | J. | Counterparts ........................................................................ 50 |
| | K. | Agreement Binding. .............................................................. 50 |
| | L. | Enforcement. ....................................................................... 51 |

## I.    <u>INTRODUCTION</u>

Subject to approval by the United States District Court for the Northern District of

California (the "Court"), this Settlement Agreement ("Settlement Agreement," "Settlement" or

"Agreement") sets forth the full and final terms by which Renee Fassbender Amochaev, Deborah

Orlando, Kathryn Varner and Ivy So (the "Named Plaintiffs"), on behalf of themselves and

members of the Class defined herein, and Defendant Citigroup Global Markets, Inc., d/b/a Smith

Barney ("Smith Barney," "Defendant," "Firm," or "Company") have settled and resolved all

claims that have been raised in the First Amended Complaint ("FAC") filed by the Named

Plaintiffs on November 29, 2006.  This Action and Settlement applies to female Financial

Advisors employed by Smith Barney at any time during the relevant time period.

## II.    <u>NATURE AND RESOLUTION OF THE CASE</u>

Plaintiffs filed a Class Action Complaint in the Northern District of California on March

31, 2005.  The Complaint, filed by four named plaintiffs,[1] asserted claims on behalf of a class of

all women employed as Financial Advisors in (i) the United States branches of Smith Barney's

retail brokerage division at any time from August 30, 2003 forward or (ii) the California

branches of Smith Barney's retail brokerage division at any time from June 25, 2003 forward.

The Complaint asserted claims for gender discrimination under Title VII of the Civil Rights Act

of 1964, 42 U.S.C. §§ 2000e, *et seq.*, and, with respect to California Class Members, the

California Fair Employment and Housing Act, Cal. Gov't Code § 12940 ("FEHA").  On

---

[1] The named plaintiffs at that time were Renee Fassbender Amochaev, Deborah Orlando, Kathryn Varner, and Judy Weil.  Pursuant to Stipulation, Judy Weil voluntarily withdrew as a representative plaintiff on September 15, 2006.  Subsequently, Ivy So was added as a named plaintiff on November 29, 2006.

November 29, 2006, pursuant to Stipulation, plaintiffs filed a First Amended Complaint ("FAC") that alleged substantially the same facts and legal claims.[2]

Smith Barney denies the allegations in the Complaint and the First Amended Complaint, including alleged liability under Title VII of the Civil Rights Act of 1964 or any other federal, state or local laws, and specifically denies that it unlawfully discriminated against Plaintiffs or Class Members on the basis of sex, or that Plaintiffs or Class Members are otherwise entitled to the relief requested.

### A.  The Parties Engaged in Substantial Discovery

The parties conducted broad, extensive, and thorough discovery related to class certification throughout 2006 and 2007. Altogether, the written class certification discovery conducted in this case included six sets of document requests and three sets of interrogatories propounded by plaintiffs, and two sets of document requests and interrogatories propounded by Smith Barney. Smith Barney has produced, and plaintiffs' counsel has reviewed, over 160,000 pages of documents. Plaintiffs' counsel also reviewed, and, with expert assistance, analyzed vast amounts of computerized data, including Smith Barney's client account data as well as personnel, compensation and payroll data for Financial Advisors. The discovery process has been thorough, and it required the parties to engage in numerous and extensive meetings and conferences concerning the scope of discovery and the analysis regarding the various electronic data, policy documents, and complaint files produced.

Deposition discovery was also extensive. Plaintiffs deposed 10 individuals, including 30(b)(6) deponents who testified on a variety of topics, including Smith Barney's compensation,

---

[2] The FAC added named plaintiffs Ivy So and Lisa Strange Weatherby. The FAC also asserted a non-class claim of race discrimination on behalf of Ms. So under Title VII, FEHA, and Section 1981 of the Civil Rights Act of 1866, 42 U.S.C. § 1981. On February 12, 2007, the Court entered an Order dismissing Lisa Strange Weatherby as a representative plaintiff.

account distribution, and partnership policies; organizational structure; EEO compliance; human resources functions; training; electronic data storage; retention of documents; and internal complaint and investigation procedures.  Smith Barney took the depositions of Ms. Amochaev, Ms. Orlando, Ms. Varner and Ms. So, each of which occurred over three days.

      **B.**    <u>**Settlement Reached After Extended Negotiations**</u>

Plaintiffs' Counsel and counsel for Smith Barney recognize the costs and risks of prosecuting this litigation through class certification, summary judgment, trial, and appeal. Plaintiffs' Counsel believe that it is in the interest of all members of the Settlement Class to resolve finally and completely the potential claims of the Class Members against Smith Barney. Plaintiffs' Counsel believe that the terms of the Settlement Agreement are in the best interests of the Class and are fair, reasonable, and adequate.  Smith Barney wishes to bring the litigation to a conclusion on the terms set forth in this Settlement Agreement.

This Settlement was reached under the supervision of experienced mediator Hunter Hughes, Esq.  Counsel for the parties are experienced class action lawyers who retained Mr. Hughes for his expertise in mediating many complex class actions, including those involving gender discrimination in employment.  Mr. Hughes conducted multiple mediation sessions between the parties in San Francisco and New York.  At least one of the named Plaintiffs attended each of the mediation sessions, and all were actively involved in shaping the monetary and injunctive relief set forth in the Settlement Agreement.  At all times during this process, counsel bargained vigorously and at arm's-length on behalf of their clients.

Without any admission or concession by Smith Barney of any liability or wrongdoing with respect to the allegations in the Complaint or the Amended Complaint, all released claims shall be finally and fully compromised, settled, and released subject to the terms and conditions

of this Settlement Agreement, which were the subject of extensive negotiation and ultimate agreement by the parties.

**III.    GENERAL TERMS OF THE SETTLEMENT AGREEMENT**

    **A.    Definitions.**

In addition to terms identified and defined elsewhere in this Settlement Agreement, and as used in this Settlement Agreement, the terms below shall have the following meanings:

1.    "Action" means the lawsuit filed in the Northern District of California, and described above and the allegations contained in the First Amended Complaint filed on November 29, 2006.

2.    "Amended Complaint" means the First Amended Complaint filed in this action on November 29, 2006.

3.    "Attorneys' Fees and Expenses" means the settlement amounts approved by the Court for payment to Plaintiffs' Counsel, including attorneys' fees, costs, and litigation expenses, plus accrued interest as of October 1, 2008, as described in Section X herein.

4.    "Claims Administrator" means Settlement Services, Inc. ("SSI") which has been jointly designated by counsel for the parties to administer the Settlement Fund pursuant to Section IX below and orders of the Court.

5.    "Claim Form" means the form agreed to by the parties and attached to the Notice. The Claim Form must be submitted by any eligible Class Member to the Claims Administrator as part of the claims process.

6.    "Claimant" means a Class Member who has submitted a timely Claim Form.

7.    "Class Counsel" means the law firms of Lieff Cabraser Heimann & Bernstein, LLP, Outten & Golden, LLP, Mehri & Skalet, PLLC, and Altshuler Berzon LLP.

8.      "Class Member" means any person who meets the criteria set forth in the definition of "Settlement Class" below.

9.      "Complaint" means the Complaint filed in this Action on March 31, 2005.

10.     "Court" means the United States District Court for the Northern District of California.

11.     "Defendant" or "Smith Barney" or "Firm" or "Company" means Citigroup Global Markets Inc., d/b/a Smith Barney and its predecessors in interest.

12.     "Defendant's Counsel" means the law firm of Paul, Weiss, Rifkind, Wharton & Garrison LLP.

13.     "Depository Bank" means Wells Fargo Bank or another bank jointly selected by counsel for the parties to receive, hold, invest, and disburse the Settlement Fund, subject to the direction of the Claims Administrator.

14.     "Diversity Monitor" means the jointly selected individual appointed by the parties to carry out the duties specified in Section VII.F.1 of this Agreement.

15.     "Effective Date" means the date on which all of the following have occurred: (1) the Court has finally approved this Settlement Agreement and has signed and entered an order so indicating; (2) the Court has entered an Order and Judgment dismissing the Action with prejudice, with continuing jurisdiction limited to enforcing this Settlement Agreement; and (3) the time for appeal has either run without an appeal being filed or any appeal (including any requests for rehearing *en banc*, petitions for certiorari or appellate review) has been finally resolved.

16.     "Final Approval" means the date on which the United States District Court grants final approval of the Settlement.

17.    "Financial Advisor" or "FA" or "Financial Consultant" or "FC" means a person employed by Smith Barney as a Financial Advisor, but does not include a person employed as a Financial Advisor Associate or a Financial Consultant Associate.

18.    "Lead Class Counsel" means Lieff Cabraser Heimann & Bernstein LLP, Outten & Golden, LLP, and Mehri & Skalet, PLLC.

19.    "Notice" means the Notice of Class Action, Proposed Settlement Agreement, and Settlement Hearing, which is to be mailed directly to Class Members, substantially in the form attached hereto as Exhibit B.

20.    "Notice of Award" means the letter sent to each eligible Claimant by the Claims Administrator specifying the amount of that Claimant's award, as determined by the Claims Administrator.

21.    "Plaintiffs" or "Named Plaintiffs" means Renee Amochaev, Deborah Orlando, Kathryn Varner and Ivy So.

22.    "Preliminary Approval" means the Order of the Court preliminarily certifying the Settlement Class and preliminarily approving this Settlement Agreement and the form of Notice to be sent to Class Members.

23.    "Settlement," "Agreement," and "Settlement Agreement" each mean the settlement agreed to by the parties as reflected in this Settlement Agreement.

24.    "Settlement Class" or "Class" means the class that the parties jointly seek to have certified, solely for the purposes of this Settlement Agreement, which is defined as all women employed as Financial Advisors in (i) the United States branches of Smith Barney's retail brokerage division at any time from August 30, 2003 through March 1, 2008 or (ii) the California branches of Smith Barney's retail brokerage division at any time from June 25, 2003

through March 1, 2008. The "Settlement Class" or "Class" does not include, for example, (i) brokers in Smith Barney's Financial Life Services (FLS) program, (ii) Smith Barney's bank-based advisors; or (iii) Financial Advisor Associates or Financial Consultant Associates.

      25.     "Settlement Fund" or "Fund" means the settlement monies transferred by Smith Barney to the Depository Bank, pursuant to this Settlement Agreement, including all interest earned thereon, to be held, invested, administered, and disbursed pursuant to this Settlement Agreement.

      26.     "Settlement Hearing" means the hearing at which the Court will consider final approval of this Settlement Agreement and related matters.

### B.     **Duration of the Settlement.**

      The programmatic relief embodied in this Settlement Agreement and the agreements incorporated in it shall remain binding on the parties and their agents and successors for a period of four years following the Effective Date.

### C.     **Cooperation.**

      The parties agree that they will cooperate to effectuate and implement all terms and conditions of this Settlement Agreement, and exercise good faith efforts to accomplish the terms and conditions of this Settlement Agreement. The parties agree to accept non-material and procedural changes to this Settlement Agreement if so required by the Court in connection with Final Approval of the Settlement, but are not obligated to accept any changes in the monetary amount of relief or the substantive programmatic relief provided for herein, or any other substantive change.

### D.    Persons Covered by this Settlement Agreement

#### 1.    Definition of "Settlement Class," "Class" or "Class Members."

Solely for purposes of settlement and judicial approval of this Settlement Agreement, the parties stipulate to the certification of the Settlement Class, defined as all women employed as Financial Advisors in (i) the United States branches of Smith Barney's retail brokerage division at any time from August 30, 2003 through March 1, 2008 or (ii) the California branches of Smith Barney's retail brokerage division at any time from June 25, 2003 through March 1, 2008 (the "Class Period"). The Settlement Class does not include, for example, (i) brokers in Smith Barney's Financial Life Services (FLS) program, (ii) Smith Barney's bank-based advisors; or (iii) Financial Advisor Associates or Financial Consultant Associates.

#### 2.    Certification.

The parties will propose to the Court that the Class be certified pursuant to Fed. R. Civ. P. 23(b)(2) and 23(b)(3).

### IV.    COURT APPROVAL/NOTICE AND FAIRNESS HEARING

#### A.    Jurisdiction and Venue

a.    The parties agree that the Court has jurisdiction over the parties and the subject matter of this Action and that venue is proper. The Court shall retain jurisdiction of this Action for four years from the Effective Date of the Settlement Agreement solely for the purpose of entering all orders and judgments authorized hereunder that may be necessary to implement and enforce the relief provided herein.

#### B.    Preliminary Approval

a.    Prior to execution of this Settlement Agreement, the parties agreed upon a form for written Notice of this Settlement Agreement to Class Members, attached as Exhibit B, subject to Court approval.

737223.6

        b.      By April 2, 2008, the parties shall petition the Court for the following orders:

        i.      preliminarily certifying the Settlement Class; preliminarily approving this Settlement Agreement; approving the Notice to be sent to Class Members describing the terms of the Settlement and informing them of their rights to submit objections and to opt out; and

        ii.      pending Final Approval, preliminarily enjoining each member of the Settlement Class, including any members who make an irrevocable election to exclude themselves from the monetary relief provisions of the Settlement, from commencing, prosecuting or maintaining in any court or forum other than this Court any claim, action or other proceeding that challenges or seeks review of or relief from any order, judgment, act, decision or ruling of the Court in connection with this Settlement Agreement or otherwise in connection with this Action.  Effective as of the date specified for Class Members to opt out of the Settlement, further enjoining any member of the Settlement Class who has not made an irrevocable election to exclude themselves from the monetary relief provisions of the Settlement from commencing, prosecuting or maintaining either directly, representatively or in any other capacity any claim that is subsumed within the Settlement Agreement.

        iii.      entering Administrative Order No. 1 relating to this Settlement Agreement to be proposed to the Court by the parties.

    **C.**    **Notice and Settlement Hearing**

        a.      Smith Barney shall identify all Class Members and will provide to the Claims Administrator, within ten (10) days after Preliminary Approval of this Settlement Agreement, the name, social security number, and last known address of each Class Member. The Claims Administrator shall utilize Class Members' social security numbers only for the

purpose of locating and identifying Class Members and shall keep those social security numbers confidential.

        b.      Within twenty (20) days after Preliminary Approval of the Settlement Agreement, the Claims Administrator will mail the Notice to each Class Member in the form agreed upon by the parties or such other form as approved by the Court. The parties intend to provide actual notice to each Class Member, to the extent practicable. The Claims Administrator shall mail a Claim Form to each Class Member at the same time the Notice is sent.

        c.      Within thirty-five (35) days after Preliminary Approval, the Claims Administrator shall provide to Lead Class Counsel a list of those Class Members who have not been located and the Claims Administrator may engage third-party vendors in order to locate Class Members. The Claims Administrator will maintain a log of its activities undertaken pursuant to this section. The expenses of the Claims Administrator shall be paid by the Settlement Fund described at Section IX below.

        d.      Class Member objections to this Settlement Agreement, if any, must be submitted in writing, and must include a detailed description of the basis of the objection. Objections must be filed with the Court, with copies served on Lead Class Counsel and counsel for Smith Barney, postmarked on or before forty-five (45) days after the Notice is mailed to Class Members. No one may appear at the Settlement Hearing for the purpose of objecting to the Settlement Agreement without first having filed and served her objection(s) in writing postmarked on or before forty-five (45) days after the Notice was mailed to Class Members.

        e.      Any Class Member who wishes to opt out of the Settlement Class must mail to the Claims Administrator a written, signed statement that she is opting out, as set forth below. The Claims Administrator shall provide to all counsel and file with the Court all opt-out statements that are timely received. The Settlement Class will not include those individuals who file and serve a timely opt-out statement, and individuals who opt out are not entitled to any monetary award under this Settlement Agreement. With respect to each such

individual, the statute of limitations for her to assert any claim for individual relief will resume running on the postmark date of her signed, written statement that she is opting out of the Settlement Class. Among other things, the Notice shall advise Class Members that:

- Any Class Member who wishes to opt out of the Settlement Class must mail a written, signed statement that she is opting out of the Settlement Class to the Claims Administrator at the address listed in the Notice.

- To be effective, this opt-out statement must be post-marked on or before forty-five (45) days after the date the Notice is mailed to Class Members.

- To be effective, the opt-out letter and statement must include a written statement confirming that the individual is aware that by opting out she will forego the opportunity to receive monetary benefits from this Settlement.

- Class Members who file opt-outs may rescind their opt-outs.

- To be effective, such rescissions must be in writing sent to the Claims Administrator and must be post-marked on or before sixty (60) days after the date the Notice is mailed to Class Members.

- In the event that a Class Member files a claim form and an opt out letter, the opt out letter shall be deemed invalid.

f.      If Preliminary Approval is granted, a briefing schedule and Settlement Hearing date will be set at the Court's convenience. The parties' Motion for Final Approval and for Certification of the Settlement Class will be due no earlier than fifteen (15) days following the close of the objection and opt-out period, and the Settlement Hearing will be held no earlier than one-hundred (100) days following the filing of this Agreement with the Court, and no earlier than thirty (30) days following the close of the objection and opt-out period.

g.      The time periods referenced in this Section IV.C. are guidelines; actual dates will be inserted in the Preliminary Approval Order by the Court.

h.      In the event that this Settlement Agreement does not become final and binding, no party shall be deemed to have waived any claims, objections, rights or defenses,

or legal arguments or positions, including, but not limited to, claims or objections to class certification, or claims or defenses on the merits. Neither this Settlement Agreement nor the Court's Preliminary or Final Approval thereof shall be admissible in any court regarding the propriety of class certification or regarding any other issue or subject (except for the purpose of enforcing this Settlement Agreement). Each party reserves the right to prosecute or defend this Action in the event that the Settlement Agreement does not become final and binding.

        i.      If Smith Barney exercises its option to withdraw from the Settlement or if this Settlement Agreement is not approved by the Court or for any other reason is terminated or fails to become effective in accordance with its terms (or, if following approval by this Court, such approval is reversed or substantively modified), the parties shall be restored to their respective positions that existed in this Action prior to entering into this Settlement Agreement; the terms and provisions of this Settlement Agreement shall have no force or effect and shall not be used in this Action or in any proceeding for any purpose; the Settlement Fund shall be returned to Smith Barney, including the interest earned by the Settlement Fund through the date of termination (after deducting all costs and expenses, including costs of providing Notice to Class Members, paid or incurred by the Claims Administrator as of the date of termination); any Judgment entered by the Court in accordance with the terms of this Settlement Agreement shall be treated as vacated, *nunc pro tunc*; and the litigation of the Action will resume as if there had been no Settlement Agreement, with no stipulated Class. The parties retain all rights, claims, and defenses as to class certification and otherwise as to any of the allegations asserted in this Action. This Settlement Agreement will not be considered an admission of liability by Smith Barney nor represent a cap on damages available to the Named Plaintiffs or the Class.

## V.     RELEASE/BAR OF CLAIMS

### A.     Class Member Release.

All Class Members, as a condition of receiving a monetary payment in conjunction with this Settlement Agreement, will be required to execute and deliver to the Claims Administrator a Class Member Release in the form agreed to by counsel for the parties and attached hereto as Exhibit A, a copy of which shall be provided to counsel for Smith Barney.  The Class Member Release will release all claims, known and unknown, existing through the date of preliminary approval, under any federal, state or local legal theory, for gender discrimination against Smith Barney, with the exception of claims for non-economic damages (such as emotional pain, distress, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-economic losses) that arise from sexual harassment (as that term is defined in 29 C.F.R. § 1604.11(a)) ("Class Member Release").  By way of example only, and without any intent to limit the scope of the preceding release, this settlement would bar a claim for loss of compensation of any type or description (including but not limited to commissions, salary, bonuses, deferred compensation and incentive awards) arising from or relating to any type of sex or gender discrimination (including but not limited to sexual harassment), but would not bar a claim of emotional distress, costs of medical treatment, or other such non-economic compensatory damages arising from or related to sexual harassment.

### B.     Individual Claims of Named Plaintiffs.

Each Class Representative will receive an additional payment for the release of her non-class claims, including race and age discrimination and non-economic losses that arise from sexual harassment, to be determined by the neutral Claims Administrator.  These decisions shall be based upon a review of the factual record and shall be non-appealable.  In no event will the

total of all such awards exceed $550,000. Each Class Representative will be required to execute and deliver to the Claims Administrator a Named Plaintiff Release in the form agreed to by counsel for the parties and attached hereto as Exhibit B, which shall entitle them to receive payments for the release of both their class and non-class claims. A copy of each executed Named Plaintiff Release shall be provided to counsel for Smith Barney. The Named Plaintiff Release is not a limited release of claims of gender discrimination but instead releases all claims of any nature against Smith Barney under federal, state or local laws for any period up through the date of preliminary approval.

      **C.**      The Claims Administrator shall provide all Class Members with the Class Member Release, and all Named Plaintiffs with the Named Plaintiff Release, at the time the Notice is provided to them.

      **D.**      The terms of the Releases, attached hereto as Exhibits A and B, are a material part of this Settlement Agreement and are hereby incorporated as if fully set forth in the Settlement Agreement; if these Releases, attached hereto as Exhibits A and B, are not finally approved by the Court, or the Settlement Agreement cannot become effective for any reason and the Settlement set forth in this Settlement Agreement shall terminate as provided in Section XI of this Settlement Agreement, then the Named Plaintiff Releases and Class Member Releases shall terminate *nunc pro tunc* and be of no force and effect.

      **E.**      In the event that any Class Member does not execute and timely deliver a Class Member Release, or if any Named Plaintiff does not execute and timely deliver a Named Plaintiff Release, she will be ineligible for, and forever barred from receiving, monetary relief under this Settlement Agreement, even if said Class Member or Named Plaintiff has not opted out.

737223.6

**F.**     Class Members who neither timely opt out nor timely file a Claim Form shall, upon the Effective Date, be ineligible to receive any monetary award pursuant to this Settlement Agreement and be deemed to have fully, finally and irrevocably waived, released and discharged Smith Barney from any and all claims of gender discrimination, to the same extent as specified in Section V.A. above, whether known or unknown, actual or potential, arising at any time on or before the Preliminary Approval Date.

**G.**     **No Bar to Future Claims.**

Nothing in the Settlement Agreement shall be construed to bar any claims of members of the Settlement Class or Plaintiffs that arise from conduct occurring after the Preliminary Approval Date.

## VI.     NO ADMISSION, NO DETERMINATION

1.     This Settlement Agreement does not, and is not intended to constitute, nor shall it be deemed to constitute, an admission by any party as to the merits, validity or accuracy of any of the allegations, claims or defenses of any party in this case.  The Class Members continue to assert the merits and validity of their claims under Title VII or parallel state and local laws prohibiting gender discrimination.  By entering into this Agreement, Smith Barney does not admit or concede, expressly or impliedly, but denies that it has in any way violated Title VII, parallel state and local laws prohibiting gender discrimination, the common law of any jurisdiction, or any other federal, state or local law, statute, ordinance, regulation, rule or executive order, or any obligation or duty at law or in equity.  Neither the Court nor any other court has made any findings or expressed any opinion concerning the merits, validity or accuracy of any of the allegations, claims or defenses in this case.

737223.6

2.      Nothing in this Settlement Agreement, nor any action taken in implementation thereof, nor any statements, discussions or communications, nor any materials prepared, exchanged, issued or used during the course of the mediation or negotiations leading to this Settlement Agreement, is intended by the parties to, nor shall any of the foregoing constitute, be introduced, be used or be admissible in any way in this case or any other judicial, arbitral, administrative, investigative or other proceeding of whatsoever kind or nature (including, without limitation, the results of the Claims Process established under this Settlement Agreement) as evidence of discrimination, retaliation or sexual harassment or as evidence of any violation of Title VII, parallel state and local laws prohibiting gender discrimination, the common law of any jurisdiction, or any other federal, state or local law, statute, ordinance, regulation, rule or executive order, or any obligation or duty at law or in equity.

Notwithstanding the foregoing, this Settlement Agreement may be used in any proceeding in the Court or in mediation or arbitration to enforce or implement any provision of this Settlement Agreement or implement any orders or judgments of the Court entered into in connection herewith.

## VII.    PROGRAMMATIC RELIEF

### A.    Communications.

Smith Barney shall distribute its Non-Discrimination, Anti-Harassment and Anti-Retaliation Policy to all employees upon hire (in hard copy or by electronic mail) and then on an annual basis via email from Smith Barney's CEO.  Employees shall be required to submit an acknowledgment of receipt.

737223.6

In addition, the CEO of Global Wealth Management shall issue a statement annually in support of the Policy and its underlying tenets.  The Policy will be available on the Firm's intranet site and will be incorporated into various other Firm policies including its Code of Conduct and its Internet and Electronic Communications Usage Policy.

The Non-Discrimination, Anti-Harassment and Anti-Retaliation Policies and the behaviors they seek to promote and prevent shall be the subject of mandatory training that all employees will be required to complete upon hire.

**B.      Branch Management/Mobility.**

All available branch management positions (including minimum requirements for qualification) will be posted to Financial Advisors who either:  (i) have successfully completed the branch management assessment program, or (ii) are already in branch management and request to be informed of new management job postings.  These positions currently are titled: National Development Officer; Divisional Development Officers; Regional Development Officers; Sales Manager; Branch Manager; and Assistant Branch Manager.  All positions will be posted for a minimum of five (5) business days.  Either the hiring manager or Human Resources will follow up with each applicant/candidate in a timely manner.  In addition, Smith Barney shall develop and implement a computerized system to generate an electronic mail notification of new management job postings to Financial Advisors who either: (i) have successfully completed the branch management assessment program, or (ii) are already in branch management and request to be informed of new management job postings.

Smith Barney shall post a written description of the branch management assessment program and the criteria for admission on the Firm's intranet site.

The Industrial Psychologist shall review Smith Barney's branch management assessment program and, if appropriate, make recommendations for increasing the participation of females in the branch manager assessment program (including review of the criteria for admission) and in branch management.  These recommendations shall be made in accordance with Section F.2 below.

Smith Barney shall provide all management personnel with diversity training no less than every other year.  The format of such training may vary from jurisdiction to jurisdiction depending on the relevant legal requirements.  However, all managers shall, at a minimum, be required to complete an interactive, customized, e-learning training program.  The positions to be trained are:  Divisional Directors; Regional Directors; Regional Administrative Officers; Branch Managers; Assistant Branch Managers; Sales Managers; and Operations Managers.

Branch Manager compensation shall have a diversity component designed to measure and reward efforts at diversifying representation rates in the Financial Advisor position, including the following areas as appropriate:  recruiting, mentoring, training, retaining and promoting female Financial Advisors.  Smith Barney agrees that it shall develop and implement a standardized annual process whereby Branch Managers shall be required to report on their efforts and results in promoting a diverse workforce (including, for example, their efforts to retain female Financial Advisors and their efforts to assist female Financial Advisors in, among other things, increasing their production, participating in partnerships in the branch, participating in the Franchise Protection Program, being added to the branch management bench, and obtaining promotions to branch management), and whereby senior Smith Barney management will review these efforts and take them into account when determining the diversity component of each Branch Manager's compensation.  These reports on diversity efforts by Branch

737223.6

Managers, as well as the recommendations regarding each Branch Manager's diversity component of compensation, shall be provided to the Diversity Monitor annually.

### C.  Account Distribution.

Under this Settlement, Smith Barney has agreed to make significant changes to its procedures for distributing accounts of departing Financial Advisors, including reducing reliance on historical factors, such as assets under management and length of service with Smith Barney, and more heavily weighting criteria that reflect recent performance.  Smith Barney has also agreed to automate the account distribution process based on a "Power Rankings" system and to limit the exceptions that can be made to the Power Rankings.  The Power Ranking factors are set forth in **Appendix 1** filed under seal along with this Settlement Agreement.

#### 1.  Power Rankings

a.  All Power Ranking factors that measure performance from the previous twelve-month period will be adjusted to encompass a 12-month period exclusive of absence for parental leave or short-term disability leave.  For example, if a Financial Advisor or Financial Advisor Associate ("FAA") was on a leave of absence for four of the preceding twelve months, the previous 12 months measure will instead count the last twelve months that the employee was active.

b.  The methodology for calculating the Power Rankings will be provided to each Financial Advisor and FAA, including the name of each factor, an explanation of each factor, and how each factor is weighted.  Upon hire, each Financial Advisor and FAA will be individually provided with the methodology of the objective measures utilized in the Power Ranking calculation and the manner in which calculations are completed and this will be available to all Financial Advisors and FAAs electronically.  Smith Barney agrees to provide

notice to Financial Advisors and FAAs regarding any modification to the Power Ranking methodology.

        c.     Smith Barney shall inform each Financial Advisor and FAA of her or his individual ranking at the time any distribution is made.  The actual distribution of a departing Financial Advisor's book will be made available to the Financial Advisors and FAAs in the Branch and such communication shall include the rankings and (without identification of any particular Financial Advisor or FAA by name) the number of accounts and the assets distributed to each ranked Financial Advisor and FAA.

        **2.**     **<u>Account Distribution Policies</u>**

        a.     Smith Barney senior management will issue a comprehensive account distribution policy statement, which shall include policies covering the distribution of the accounts of departing Financial Advisors, retiring Financial Advisors (other than accounts distributed through the Franchise Protection Program), departing partners, and leads, call-ins, and walk-ins.  The statement shall be issued via email to all field employees and shall be posted on Smith Barney's intranet site and shall include a prohibition on discrimination.  In addition, Smith Barney will train all current Branch Managers on account distribution policies and procedures at the time the settlement becomes effective, and will similarly train all new managers that are subsequently hired.

        b.     Branch Managers shall have discretion to disqualify a Financial Advisor from an account distribution for improper conduct, such as, for example, if a Financial Advisor is:  (1) currently on heightened supervision consistent with industry standards; (2) subject to any regulatory action reportable as a "yes" answer on Form U-4 questions 14C-G; (3) subject to discipline reported on Form RE-3 in the last 12 months; or (4) subject to any written

performance or workplace conduct warning in the last 90 days and to disqualify any FAA who is not meeting minimum performance standards; provided, however, that where such an exception to the Power Ranking process is made, it shall be documented by the Branch Manager or his/her designee in writing and included in the quarterly reports on exceptions provided to the Diversity Monitor. Financial Advisors and FAAs are not eligible for an account distribution if they: (1) have voluntarily opted-out of the distribution; (2) are not in the product specialty group to which the distributed accounts belong (e.g. IIG/IFG); or (3) are on parental or short-term disability leave at the time the account distribution is made.

        c.      Where an exception is made to the Power Ranking process because of, for example, a client relationship or client service needs, each individual exception shall be documented by the Branch Manager or his/her designee in writing, including the legitimate business reasons for the exception. Customer preference based on a bias against women cannot be used as a legitimate business reason for an exception, provided, however, that Smith Barney shall have no obligation to inquire as to or otherwise attempt to discover the reason for a customer preference for or against a Financial Advisor or FAA. Records of all exceptions shall be kept for purposes of monitoring policy compliance and regularly reviewed by the Regional Director and the Diversity Monitor. The Company shall provide the Diversity Monitor quarterly reports on exceptions being made in the branches including information on the identity of the branches, the branch managers who approved the exceptions and an explanation of the exceptions. If a Financial Advisor or FAA receives an account through an exception, that Financial Advisor or FAA will not receive another account in the same distribution until every eligible Financial Advisor and FAA has first received an account from those accounts that come next in the ranking of accounts in that distribution; provided, however, that if that Financial

Advisor or FAA is the only qualified broker in the branch to service a later account in the

distribution, that Financial Advisor or FAA shall receive that account even if not every eligible

Financial Advisor and FAA has already received an account in the distribution, and such

exception shall be documented in accordance with this paragraph C.2.b. An individual Financial

Advisor or FAA who does not receive a specific account as a result of an exception shall receive

the next available account in the same distribution that he/she is qualified to service. Branch

Managers who are determined to have distributed an account pursuant to any improper exception

shall receive an appropriate discipline, which can include a material reduction in their annual

bonus, and which discipline shall be reviewed by the Diversity Monitor in accordance with

Section F.1.b.

        d.     Smith Barney shall enhance its technology to allow its account

distribution process to be computer automated, subject to branch manager review to ensure

compliance with regulatory requirements and consideration of the best interests of the firm's

clients. Account distributions will be made through this automated process, subject to

exceptions described in paragraph C.2.b and c above. The results of all account distributions

shall be stored and readily retrievable for monitoring to ensure compliance with account

distribution policies.

        **3.**     **Disputes Concerning Account Distributions**

        The parties agree that if at any time during the term of this Settlement Agreement

a dispute shall arise between Smith Barney and a Financial Advisor concerning any account

distribution, such dispute shall—at the written request of the Financial Advisor—go through

Smith Barney's internal complaint process, which includes access to mediation. However,

nothing herein shall prevent any Class Member from individually pursuing any legal claim not

737223.6

released under this Settlement through any applicable governmental agency, arbitration forum or court of law if she is otherwise entitled to do so. If a Financial Advisor submits a gender-related complaint through Smith Barney's alternative dispute resolution system, that person shall receive a written description of the ADR process—and a written notice indicating that the statutes of limitations on her/his legal claims will be tolled for 120 days from the date of his/her submission of the ADR complaint.

### 4. Financial Life Services and Bank-Based Advisors

The parties agree that the changes to Smith Barney's procedures for distributing accounts of departing Financial Advisors described herein shall in no way apply to or affect: (i) Smith Barney's Financial Life Services (FLS) program or any accounts transferred, or identified for transfer, to or from FLS; or (ii) accounts serviced by Smith Barney's bank-based advisors.

### 5. Up-front Bonuses

a. The Industrial Psychologist shall review and, if appropriate, make recommendations for developing a standard and nationwide process for determining up-front bonuses, forgivable loans, and other transitional compensation packages given to lateral recruits. These recommendations shall be designed to promote gender equity in the receipt and amount of transitional compensation packages—after taking into consideration factors such as the lateral recruit's production start date, production, assets under management, return on assets, product mix and any non-discriminatory factors—and shall be made in accordance with Section F.2. below.

b. To the extent that Smith Barney does not already have such a system, with input from the Industrial Psychologist, Smith Barney shall develop and implement a system to keep records of all up-front bonuses, forgivable loans, and other transitional

737223.6

compensation packages given to lateral recruits, including the name, gender, production start date, production, assets under management, return on assets and product mix of those recruits. Smith Barney shall provide a summary of this information to the Diversity Monitor and Class Counsel. The summary information will include comparative data on gender, and information on geographic location, amount of up-front bonuses, methodology used to determine the up-front bonus amounts and any other factors taken into consideration in offering up-front bonuses, forgivable loans, and other transitional compensation to lateral recruits. The Diversity Monitor will review and report on these records to the Industrial Psychologist.

6.   **Retiring Financial Advisors**

a.   The book of business formerly serviced by a retiring Financial Advisor who is not participating in the Franchise Protection Program will be distributed through the Power Ranking system set forth in Sections C.1. and C.2. above.

b.   Smith Barney will consider the efforts made by branch management to increase participation by female Financial Advisors in the Franchise Protection Program in determining the diversity component of Branch Manager compensation.

c.   The Industrial Psychologist shall review and, if appropriate, make recommendations to promote equitable participation of female Financial Advisors in the firm's Franchise Protection Program, including participation as retiring and receiving brokers. These recommendations shall be made in accordance with Section F.2. below.

d.   The Diversity Monitor will review female FA participation in Franchise Protection Programs, both as retiring and receiving brokers, and will receive information from Smith Barney about the gender of persons receiving assets and the value of assets transferred.

737223.6

7.    **Partnerships**

a.    In the event that a Financial Advisor or FAA who is part of a team leaves Smith Barney, the team member(s) who remain at Smith Barney will presumptively retain the book of business formerly serviced by the departing Financial Advisor, provided that the remaining team member(s) is/are qualified to service those accounts.  The Diversity Monitor shall receive semi-annual reports from Smith Barney relating to redistributed accounts from partnerships, including number of accounts, FA revenue, asset value, and gender of receiving Financial Advisor.

b.    Smith Barney will consider the efforts made and results achieved by branch management to increase participation by female Financial Advisors in partnerships in the branch in determining the diversity component of Branch Manager compensation.

c.    The Industrial Psychologist shall review and, if appropriate, make recommendations to promote equitable participation of female Financial Advisors in partnerships and teams.  These recommendations shall be made in accordance with Section F.2. below.

d.    For purposes of a Financial Advisor's or FAA's Power Rankings, Smith Barney will count partnership assets under management based on the percentage of the commission split specified in the Joint Production Agreement.

e.    All Joint Production Agreements will include a plan for the distribution of partnership assets in the event of the partnership's or team's dissolution.

f.    The Diversity Monitor will review female FA participation in partnerships and will receive information from Smith Barney about partnership splits based on gender and the value of assets under each partnership based on gender. The Diversity Monitor will receive copies of any complaints made to Smith Barney management or its legal counsel by

737223.6

female Financial Advisors regarding any aspect of partnerships. The Diversity Monitor will be advised of any partnership dissolution involving a female Financial Advisor.

8.      **Leads, Call-ins, and Walk-ins**

a.      Each Branch Office shall implement a "Financial Advisor of the Day" program. Pursuant to this program, all client prospects who either walk in or telephone the branch and who are seeking a Financial Advisor shall be directed to the Financial Advisor serving as the Financial Advisor of the Day. The daily assignments shall be made alphabetically and announced on a monthly basis on or before the last day of the preceding month. The monthly roster shall be posted in a conspicuous location within the branch where all other Firm policies are posted. Participation among eligible Financial Advisors shall be voluntary each month.

b.      Each Financial Advisor of the Day shall complete a "Financial Advisor of the Day Activity Log," which will detail all telephone calls and walk-in prospects fielded by the Financial Advisor and the disposition of each. The logs shall be maintained within the branch in a Financial Advisor of the Day file for the duration of the Decree.

c.      If a prospect insists on speaking to the Branch Manager, the Branch Manager will direct the individual to the Financial Advisor of the Day. If the Branch Manager determines that the Financial Advisor of the Day is not qualified to handle the prospect's account based on legitimate business reasons, the Branch Manager shall direct the prospect to other qualified Financial Advisor(s), which decision shall be documented by the Branch Manager and available to the Diversity Monitor in accordance with the procedure described in paragraph 8.d. below. Customer preference based on bias against women shall not be a legitimate reason for a prospect to be directed away from the Financial Advisor of the Day,

provided, however, that Smith Barney shall have no obligation to inquire as to or otherwise attempt to discover the reason why a prospective client elects not to work with a particular Financial Advisor.

d.      If the Branch Manager determines that the Financial Advisor of the Day is not qualified to handle a walk-in or a call-in prospect, the Branch Manager shall complete an exception report specifying the reason why the Financial Advisor of the Day was not selected. The Diversity Monitor shall receive this exception report.

e.      All Financial Advisors who are in good standing shall be eligible to be Financial Advisor of the Day.  Producing Branch Managers may participate in the Financial Advisor of the Day program to the same extent as Financial Advisors, except they too must comply with the process described in this Section 8, including use of exception reports described in paragraph 8.d. above, and may receive leads, call-ins, and walk-ins only when they are the designated Financial Advisor of the Day.

f.      Unauthorized failure to perform Financial Advisor of the Day obligations as designated shall render a Financial Advisor ineligible to participate in the Program for a period of six (6) months.  The branch shall maintain a list of those Financial Advisors who elect not to participate or who otherwise were ineligible.

**D.      Development Opportunities.**

Smith Barney shall work with the Industrial Psychologist to develop workplace initiatives designed to retain women at Smith Barney as Financial Advisors, and to enhance their success, including targeted mentoring and training.  Training and mentoring may include, but is not limited to, training, conference calls, online courses, and in-person seminars.  The Industrial Psychologist, if appropriate, shall make recommendations to promote equitable participation of

737223.6

female Financial Advisors in development opportunities. These recommendations will be made in accordance with Section F.2. below.

Smith Barney additionally agrees to provide exit questionnaires to Financial Advisors who terminate voluntarily in order to gain a better understanding as to the reason for the departures. The exit questionnaires submitted by female Financial Advisors shall be available to the Industrial Psychologist and the Diversity Monitor, who shall report his or her findings to Human Resources.

Smith Barney agrees to maintain its commitment to its female broker networking meetings.

**E.    Complaint Process and Training.**

The complaint process, including Smith Barney's prohibition against retaliation, as provided in the Non-Discrimination and Anti-Harassment Policy, shall be communicated in writing to all Financial Advisors upon hire, and annually to all Financial Advisors. New hires shall be required to submit an acknowledgment of receipt of this communication.

Smith Barney will provide its Human Resources staff with appropriate training regarding compliance with state, federal, and local EEO laws; Smith Barney's anti-discrimination and harassment policies; and this Settlement Agreement.

Smith Barney will provide its Human Resources staff with appropriate training regarding best practices for complaint investigation and resolution. Human Resources will be trained to treat all complaints or inquiries as confidentially as possible and to carry out their duties in a manner consistent with the law. In addition, Human Resources will implement controls designed to ensure that only employees or managers with a need-to-know will be advised of a complaint or investigation. If Human Resources decides that it must inform any

employees or managers of the identity of the complainant, Human Resources will notify the

complainant in advance that her/his identity will be released and to whom it will be released. In

all instances, upon being informed of a complaint or investigation, the employees and managers

so informed will be reminded of Smith Barney's policy against retaliation.

Smith Barney will retain documents sufficient to show complaints of sex

discrimination, sex bias, and/or retaliation related to such complaints for the term of the

Settlement Agreement. This includes, but is not limited to, complaints made directly to in-house

or outside counsel. Smith Barney will provide copies of all sex discrimination, sex bias, and

retaliation complaints, as well as copies of the Complaint Log and Legal Complaint Log to the

Diversity Monitor on a quarterly basis.

**F.      Appointments.**

**1.      Diversity Monitor**

The parties shall jointly appoint a Diversity Monitor. The Diversity Monitor shall

be external to and independent of Smith Barney, but will report directly to the CEO of Global

Wealth Management. The Diversity Monitor shall monitor Smith Barney's efforts to carry out

the terms of the Settlement Agreement. This shall include the following:

a.      The Diversity Monitor will receive quarterly reports regarding

complaints of female Financial Advisors alleging sex discrimination, sex bias, or retaliation and

the resolution of investigations of such complaints through any Smith Barney ADR program.

b.      The Diversity Monitor will review reports by the Company on the

diversity-related annual assessment process for Branch Managers, including the self-assessments

completed by Branch Managers, and annual data and information provided by the Company

related to the diversity component of each Branch Managers' compensation.

737223.6

        c.      The Diversity Monitor shall review reports on exceptions to the account distribution system being made in the branches, including information on the identity of the branches, the branch managers who approved the exceptions and an explanation of the exceptions.

        d.      On an annual basis, the Diversity Monitor will review up-front bonuses, forgivable loans and other transitional compensation packages that Smith Barney provided to lateral recruits, and will report on these records to the Industrial Psychologist.   In addition, the Diversity Monitor will receive a copy of the summaries set forth in Section C.5.b above and in connection with management approval of any forgivable loan provided to a lateral recruit and may interview the appropriate branch manager about the rationale for any up-front bonuses, forgivable loans, or transitional compensation packages.

        e.      On an annual basis, the Diversity Monitor will review female FA participation in the Franchise Protection Program, both as retiring and receiving brokers, and will receive information from Smith Barney semi-annually about the gender of persons receiving assets and the value of assets transferred.

        f.      On a semi-annual basis, the Diversity Monitor will review reports relating to redistributed accounts from partnerships including number of accounts, FA revenue, asset value and gender of receiving Financial Advisor as well as female FA participation in partnerships and will receive information from Smith Barney about partnership splits based on gender and the value of assets under each partnership based on gender.

        g.      The Diversity Monitor will monitor bi-annual training of management on EEO policies, and policies against discrimination and retaliation, and ensure that the training agreed to was implemented.

    h.  The Diversity Monitor will review exception reports regarding the

Financial Advisor of the Day program.

    i.  The Diversity Monitor will review how Human Resources handles

investigations and the resolution process for inquiries and complaints.

    j.  The Diversity Monitor will review the exit questionnaires

completed by departing female Financial Advisors, as well as information regarding the retention

of female Financial Advisors annually, and report his/her findings to Human Resources.

    k.  If the Diversity Monitor identifies issues of potential non-

compliance, the Diversity Monitor will inform Smith Barney and Lead Class Counsel. In

consultation with Lead Class Counsel, Smith Barney will take appropriate corrective action to

address all instances of non-compliance with the provisions herein unless Smith Barney can

show that corrective action would be inconsistent with legitimate business and client needs and

objectives.  If Lead Class Counsel disagrees with Smith Barney's determination on the

implementation of corrective action, Lead Class Counsel may initiate a meet and confer session

with Smith Barney's counsel and, if necessary, seek mediation, pursuant to Section J herein.

Smith Barney shall inform the Diversity Monitor and Lead Class Counsel of any corrective

action taken pursuant to this paragraph.  Where potential non-compliance has been identified, the

Diversity Monitor shall have the right to audit the activities in a branch, by reviewing

documents, asking branch management to provide explanations and, if necessary, speaking to

Financial Advisors in the branch, and the right to receive relevant information from Smith

Barney headquarters upon reasonable request.  Nothing herein shall alter or restrict Lead Class

Counsel's right to enforce this Settlement Agreement under the Dispute Resolution provisions of

this Settlement Agreement, set forth in Section J below.

l.      The Diversity Monitor will provide reports to Lead Class Counsel and Smith Barney at least semi-annually regarding the items described in this Agreement to be monitored, including in Section F.1.a-k herein, and including the analysis of the account distribution system.  The Diversity Monitor may report incidents of potential material non-compliance with this Settlement Agreement to Lead Class Counsel and Smith Barney on a more frequent basis.

m.      The Diversity Monitor will maintain records for the term of this Settlement Agreement.

2.      **Industrial Psychologist**

a.      The parties shall jointly appoint an Industrial Psychologist, who shall work with Smith Barney and Class Counsel to develop innovative, meaningful, novel, state-of-the-art programs and, if appropriate, to make recommendations concerning:

i.      The production and earnings of female Financial Advisors, including policies and practices with respect to training, development, mentoring, and business-related allocations;

ii.      Participation of female Financial Advisors in the Franchise Protection Program, both as retiring Financial Advisors and as receiving Financial Advisors;

iii.      Participation of female Financial Advisors in partnerships and teams, including commission splits between male and female partners, and dissolution of partnerships and teams;

iv.      Up-front bonuses, forgivable loans, and other transitional compensation packages offered to lateral recruits;

737223.6

v.      Policies and practices with respect to training, development, and mentoring for female Financial Advisors. Training and development may include, but is not limited to, training, conference calls, online courses, and in-person seminars;

vi.      Participation of females in Smith Barney's branch management assessment program and in branch management; and

vii.      A mentoring program for all Financial Advisors.

b.      The Industrial Psychologist shall review the actual implementation of the programs, policies, and initiatives that Smith Barney is obligated to undertake by virtue of this Agreement and shall, on an annual basis, report the results of this review to the Diversity Monitor.  The Industrial Psychologist shall review on an annual basis the retention rates of women in the Financial Advisor position and shall report the results of this review to the Diversity Monitor.

c.      The Industrial Psychologist shall present any recommendations to the members of Senior Management at Smith Barney who are most appropriate to address each issue.  A copy of the recommendations will also be provided to Lead Class Counsel.  All recommendations of the Industrial Psychologist will be designed to advance the purposes of this Settlement Agreement consistent with Smith Barney's legitimate business needs and objectives. If Smith Barney does not agree with any such recommendations, but Lead Class Counsel still thinks they should be implemented notwithstanding Smith Barney's objections, the Industrial Psychologist, along with Lead Class Counsel, will have the opportunity to present the recommendations to Smith Barney's highest ranking officer overseeing FA compensation,

currently the Director of Field Management.  Smith Barney shall decide in good faith consistent with the purposes of this Settlement Agreement whether to implement such recommendations.

   d. The Industrial Psychologist shall provide to the parties statistical analyses on the Power Ranking criteria.  These analyses shall report on data at the 12, 20, 36 and 44 month intervals from the Effective Date.  With the analysis, the Industrial Psychologist shall determine whether female brokers have received less than their pro rata share of distributed accounts, and if so, whether the difference is statistically significant.  This determination shall be based on an aggregate comparison of (i) the value of the accounts distributed, based on their account value at the end of the month prior to their distribution; and (ii) the representation of men and women in the population of Financial Advisors in the retail brokerage division of Smith Barney, including only those brokers who were active within the time period being measured.

   e. The Power Rankings may be changed at any time upon agreement between Smith Barney and Lead Class Counsel following a meet and confer process.  If, following the meet and confer process, Lead Class Counsel do not agree to a change proposed by Smith Barney, Smith Barney may seek authority from Hunter R. Hughes, Esq. or another mutually selected mediator (the "Mediator") to implement the proposed change(s) to the Power Ranking system, which authority will not be unreasonably withheld.  To bring about such changes, Smith Barney must show to the satisfaction of the Mediator through the binding mediation outlined in paragraph c below that (a) the changes are necessary to comply with applicable law; or (b) each of the criteria they seek to change is having a significant adverse impact on Smith Barney's business and that the change(s) sought would not disadvantage female Financial Advisors or FAAs relative to the criteria being displaced.

737223.6

f.      If, following either the 20 or 44 month reports, the Industrial Psychologist determines that female brokers have received less than their pro rata share of distributed accounts, and that the difference is statistically significant, then Lead Class Counsel may initiate a meet and confer session with Smith Barney's counsel.  If, in the judgment of Lead Class Counsel, the meet and confer does not result in a satisfactory resolution, Lead Class Counsel may request a hearing before the Mediator solely for the purpose of resolving whether there should be any change to the Power Ranking factors or any adjustment to their weight. Such a process shall be completed within 4 months under a schedule and with written submissions in a form determined by the mediator, but allowing at least twenty-one days for a response by the responding party (unless the responding party seeks shortened time for its own submission).  Smith Barney shall pay the cost of such binding mediation.  The Mediator shall review each party's submissions and make a final, non-appealable determination regarding whether there should be any change to the Power Ranking factors or any adjustment to their weight.

g.      Subject to signing an appropriate confidentiality agreement, and upon reasonable advance notice, the Diversity Monitor and the Industrial Psychologist described in Sections F.1. and F.2. herein will have reasonable access to relevant documents, data, and Smith Barney employees.  The Diversity Monitor and the Industrial Psychologist will be compensated by Smith Barney.

h.      If it becomes necessary to replace the Diversity Monitor or the Industrial Psychologist, the parties shall select a replacement by mutual agreement.

737223.6

G.   **General Non-Discrimination Provisions.**

Pursuant to Smith Barney's Non-Discrimination and Anti-Harassment Policy, female Financial Advisors will enjoy terms and conditions of employment comparable to their male counterparts.

Smith Barney shall reaffirm its commitment to the following general policies using a method agreed to by the parties:

1.      Prohibition against discrimination on the basis of sex in compensation and business opportunity allocations.

2.      Prohibition against retaliation for reporting sex discrimination, participating in any Smith Barney ADR program, participating in this or any discrimination settlement, filing a lawsuit or complaint with any outside agency or entity alleging sex discrimination, or for refusing to participate in sex discrimination.

3.      Smith Barney will reaffirm that its policy is, and has been, to prohibit reimbursement of business expenses that are directly or indirectly related to male-only entertainment establishments.

4.      The parties agree that it shall be a violation of this Settlement Agreement for a Smith Barney supervisor to retaliate against any Class Member for her participation in the prosecution of the allegations contained in the charges underlying this Settlement or in the Settlement itself.  Nothing in this Settlement will prevent a Class Member from pursuing whatever legal rights or remedies she otherwise may have with respect to any individual claim not covered by the claims released through this Settlement.

H.  **Duration of the Settlement.**

The programmatic relief embodied in this Settlement Agreement and the agreements incorporated herein shall remain binding on the parties and their agents and successors for a four-year period following the Effective Date.

VIII.  **MONITORING**

A.  **Data Collection.**

Smith Barney will collect data which will include, but not be limited to:  (1) compensation of Financial Advisors; (2) partnerships between active Financial Advisors or partnerships between active and retiring Financial Advisors; (3) account distributions, defined to include all transfers of accounts from one Financial Advisor to another within Smith Barney such as those of retiring and deceased Financial Advisors, not just the distribution of the accounts of departing Financial Advisors; and (4) any other areas agreed upon by Smith Barney and Lead Class Counsel.  Smith Barney will include several variables in its collection of this data, including but not limited to, gender, production and length of experience.

B.  **Monitoring System.**

Smith Barney, with input from the Industrial Psychologists and consent from Lead Class Counsel, will create and implement a system of monitoring compliance with each policy described herein, including, without limitation, the account distribution policy using the Power Ranking methodology.

C.  **Reports.**

Lead Class Counsel will receive semi-annual reports from the Diversity Monitor.

- 37 -

737223.6

### D. Meetings.

Smith Barney and Lead Class Counsel will meet at least once every six (6) months, beginning six months after the Effective Date, regarding compliance, and may confer more frequently at their discretion or as dictated by information either side gathers.

## IX. MONETARY RELIEF

### A. Settlement Fund.

No later than ten (10) days after Preliminary Approval, Smith Barney shall pay by wire transfer to the Depository Bank, the sum of Thirty-three Million Dollars ($33,000,000) plus an amount equal to the daily LIBOR rate on that $33,000,000.00 calculated from December 14, 2007 to the date of deposit ("Settlement Sum"). The Settlement Sum will be placed in an interest-bearing account titled in the name of Smith Barney Financial Advisor Gender Discrimination Settlement Fund, a Qualified Settlement Fund organized and existing under the laws of the State of Florida, intended by the parties to be a "Qualified Settlement Fund" as described in Section 468B of the Internal Revenue Code of 1986, as amended, and Treas. Reg. Section 1.468B-1, *et seq.* This payment is made in order to satisfy the claims of the Named Plaintiffs and Class Members, as well as for other purposes identified in this paragraph. The monies so transferred, together with interest subsequently earned thereon, shall constitute the Settlement Fund. The Settlement Sum transferred into the Settlement Fund by Smith Barney shall, with the additional Employer Payroll Tax Payment described below, constitute the total settlement cash outlay by Smith Barney in connection with: (1) the resolution of this matter; (2) this Settlement Agreement (and attachments); and (3) the dismissal of this Action. Except as provided in Section IX.F.2. (*i.e.*, employment taxes), this sum is inclusive of payment for: (a) all amounts paid to Class Members, including the Named Plaintiffs, which are to be distributed pursuant to Section IX.D, below; (b) the non-class claims of the Named Plaintiffs in an amount

not to exceed $550,000; (c) all attorneys' fees and costs awarded by the Court, including those in connection with securing court approval of the Settlement, and the claims process and monitoring by Class Counsel of the Settlement Agreement other than fees and costs awarded in connection with any successful proceeding to enforce the terms of this Settlement Agreement; (d) all costs in connection with the Settlement Fund including, but not limited to, those related to notice, claims processing, independent legal advice obtained by the Fund Administrator relating to the establishment of the Qualified Settlement Fund and tax treatment and tax reporting of awards to claimants, and preparation of the Fund's tax returns (and the taxes associated with such tax returns as defined below); and (e) applicable federal, state and local income taxes, and all federal and state unemployment taxes required by law to be withheld and/or paid by Smith Barney. The Settlement Sum payment to the Settlement Fund does not include Smith Barney's share of taxes or contributions (*i.e.*, FICA, FUTA, SUTA and Medicare) which will be paid separately by Smith Barney to the Claims Administrator. Smith Barney shall, upon notice from the Claims Administrator as required in Section IX.F.2. below, remit any required tax payment to the Claims Administrator.

Nothing in the foregoing provisions of this Section, however, shall release Smith Barney from expending the resources required to fulfill its responsibilities under this Settlement Agreement.

### B. <u>Administration by Trustee.</u>

The Claims Administrator shall serve as Trustee of the Settlement Fund and shall act as a fiduciary with respect to the handling, management and distribution of the Settlement Fund. The Claims Administrator shall act in a manner necessary to qualify the Settlement Fund as a

"Qualified Settlement Fund" under Section 468B of the Internal Revenue Code of 1986, as amended, and Treas. Reg. Section 1.468B-1, *et seq.*, and to maintain that qualification.

### C. Claims Filing Procedures for Settlement of Claims of Named Plaintiffs and Class Members.

Class Members shall be entitled to submit their Claim Forms to the Claims Administrator in accordance with the procedures set forth on the Claim Form. Any Class Member who previously released claims which would otherwise be covered by this Settlement Agreement, or who obtained a final judicial determination concerning claims that would otherwise be covered by this Settlement Agreement, is not eligible to receive a monetary award for those claims.

In order to be eligible for an award from the Settlement Fund, Class Members, including the Named Plaintiffs, must submit a Claim Form postmarked by the date established by the Court. The Claim Form shall be completed in its entirety to the extent applicable.

The Claims Administrator will provide counsel for Smith Barney and Smith Barney's payroll department with the names and social security numbers of all Class Members who submitted Claim Forms ("Claimants"). The identity of the Claimants will not be disclosed to anyone at Smith Barney other than its counsel and those employees necessary to retrieve the information to be provided to the Claims Administrator under this Section. The content of the Claims Form will be kept confidential.

After receiving the Claimant information discussed in the paragraph above, Smith Barney, through its counsel, will provide the Claims Administrator with the dates each Claimant was employed by Smith Barney as a Financial Advisor. The Claims Administrator will provide that information to each Claimant. To the extent there is any disagreement relating to the accuracy of the information provided to the Claimants, the disagreement shall be resolved by the Claims Administrator.

737223.6

### D.     <u>Claims Administrator Authority to Determine Award Eligibility.</u>

Within a reasonable time period after the date specified for receipt of the Claim Forms, the Claims Administrator shall render a determination as to the monetary award, if any, that should be paid to each Claimant from the Settlement Fund. Class Members who submit a Claim Form will be eligible to receive monies based on the Claimant's length of tenure (e.g., weeks worked) at Smith Barney as a Financial Advisor, as well as upon information (if supplied by the Class Member) regarding termination because of gender-based discrimination. The Claims Administrator's determination shall be final and not subject to review by, or appeal to, any court, mediator, arbitrator or other judicial body, including without limitation this Court. As will be reflected in the final order approving this Settlement, Smith Barney and Class Counsel shall have no responsibility, and may not be held liable, for any determination reached by the Claims Administrator.

The total amount of such awards shall not exceed the net amount of the Settlement Fund after all costs and Class Counsel's attorney's fees, as discussed in Section IX.A. above, are considered.

Following his or her determination as to the monetary award, if any, that should be paid to each Claimant from the Settlement Fund, the Claims Administrator shall send a Notice of Award to each eligible Claimant, along with a Named Plaintiff Release or a Class Member Release, whichever is applicable. Within a reasonable time period after receipt of an executed Named Plaintiff Release from a Named Plaintiff or an executed Class Member Release from a Class Member, the Claims Administrator shall send the Named Plaintiff or Class Member her award payment. Any Named Plaintiff who does not execute and timely deliver an executed Named Plaintiff Release, and any Class Member who does not execute and timely deliver an executed Class Member Release to the Claims Administrator within six (6) months of the date

the Notice of Award was mailed to her shall be ineligible for, and forever barred from receiving, monetary relief under this Settlement Agreement, even if said Named Plaintiff or Class Member has not opted out. Any undistributed funds that remain after six (6) months from the mailing of the Notice of Award due to uncashed checks shall be distributed to 501(c)(3) organizations advancing career opportunities for women, including career opportunities in the financial services industry, as jointly selected by Lead Class Counsel and Smith Barney.

The Claims Administrator shall maintain the distribution plan and allocation list for a period of five (5) years. Smith Barney shall have access to individual allocation amounts only upon written notice to Class Counsel and a showing of good cause (*e.g.*, actual or threatened litigation by a Claimant). Any dispute as to whether good cause exists for such a requested disclosure shall be resolved through the Dispute Resolution process set forth in Section III.J of this Settlement Agreement.

### E. Confidentiality Regarding Amount of Monetary Award.

All Claimants receiving monetary awards will be required to keep the amount of their award confidential.

### F. Non-Admissibility of Fact of Award (or Non-Award).

Except to the extent that it would constitute a set off in an action for damages claimed for any period covered by this Settlement, neither the fact nor the amount of an award, nor the fact of any non-award, shall be admissible in any other proceeding for any purpose other than to enforce a Named Plaintiff Release or a Class Member Release executed in accordance with the claims process, nor shall it be deemed to be a finding as to the merits of any claim.

G.     **Tax Treatment**

1.     **Qualified Tax Status and Tax Responsibilities.**

The Settlement Fund shall be established as a Qualified Settlement Fund within the meaning of Section 468B of the Internal Revenue Code of 1986, as amended, and Treas. Reg. Section 1.468B-1, *et seq*., and shall be administered by the Claims Administrator under the Court's supervision.  Smith Barney shall hereby be deemed to have made an election under Section 468B of the Revenue Code to have the Fund treated as a "qualified settlement fund." Smith Barney shall timely furnish a statement to the Trustee that complies with Treasury Regulation § 1.468B-3(e) and shall attach a copy of the statement to its federal income tax return that is filed for the taxable year in which Smith Barney  makes the required payment(s) to the Settlement Fund.  The parties shall cooperate to ensure such treatment and shall not take a position in any filing or before any tax authority inconsistent with such treatment.

2.     **Payment of Federal, State and Local Taxes.**

The parties recognize that the awards to eligible Claimants will be subject to applicable tax withholding and reporting, which will be handled as follows: The Claims Administrator shall serve as trustee of the Settlement Fund and shall act as a fiduciary with respect to the handling, management, and distribution of the Settlement, including the handling of tax-related issues and payments.  Specifically, the Claims Administrator shall be responsible for withholding, remitting and reporting of the Claimant's share of the payroll taxes from the Settlement Fund, and Smith Barney shall be responsible for the employer's share of payroll taxes as set forth in this section.

The Claims Administrator will establish, for tax purposes, the allocation of the payments made to Claimants to wages, interest, compensatory damages, or such other tax character of such payout as the Claims Administrator may determine, based on the principles set forth in Treas.

Reg. §1.468B-4 by reference to the claims pursuant to which distributions are made and as if Smith Barney made such payments directly to Claimants.

The Claims Administrator shall inform Smith Barney in writing of the employer's share of all taxes or contributions (*i.e.*, FICA, FUTA, SUTA, and Medicare) required to be paid by Smith Barney. Smith Barney shall, within twenty (20) business days of such notice, remit all such payments (net of the credit for opt outs, if any, as provided for in Section IV.C.9. above) to the Claims Administrator for payment to appropriate taxing authorities ("Employer Payroll Tax Payment").

The Claims Administrator shall be responsible for the timely reporting and remitting of the Employer Payroll Tax Payment to the appropriate taxing authorities and shall indemnify Smith Barney for any penalty arising out of an incorrect calculation and/or interest with respect to late deposit of the same. Subject to the Claims Administrator's obligation to comply with applicable laws, the parties anticipate that any amounts designated as interest shall not be subject to withholding and shall be reported, if required, to the IRS and to the Claimants on Form 1099-INT. The amounts paid for emotional distress shall not be subject to withholding and shall be reported to the IRS and to the Claimants on Form 1099.

Except with respect to the Employer Payroll Tax Payment, the Claims Administrator shall be responsible to satisfy from the Settlement Fund any and all federal, state and local employment and withholding taxes, including, without limitation, federal and state income tax withholding, FICA, FUTA, SUTA, Medicare and any state employment taxes. The Claims Administrator shall satisfy all federal, state, local, and other reporting requirements (including any applicable reporting with respect to attorneys' fees and other costs subject to reporting), and

any and all taxes, penalties and other obligations with respect to the payments or distributions from the Settlement Fund not otherwise addressed herein.

The Claims Administrator shall be responsible for procuring an executed Named Plaintiff Release and Form W-4 and Form W-9, and any other required tax forms, from each Named Plaintiff prior to making any monetary allocations to such Named Plaintiff. The Claims Administrator shall be responsible for procuring an executed Class Member Release and Form W-4 and Form W-9, and any other required tax forms, from each Class Member prior to making any monetary allocations to such Class Member.

All (i) taxes (including any estimated taxes, interest or penalties) arising with respect to the income earned by the Settlement Fund, including any taxes or tax detriments that may be imposed on Smith Barney with respect to income earned for any period during which the Settlement Fund does not qualify as a "Qualified Settlement Fund" for federal and state income tax purposes (hereinafter "Settlement Fund Taxes"), and (ii) expenses and costs incurred in connection with the operation and implementation of this paragraph (including, without limitation, expenses of tax attorneys and/or accountants and mailing and distribution costs and expenses relating to filing (or failing to file) any returns described herein or otherwise required to be filed pursuant to applicable authorities) (hereinafter "Settlement Fund Tax Expenses"), shall be paid out of the Settlement Fund. Further, Settlement Fund Taxes and Settlement Fund Tax Expenses shall be treated as a cost of the administration of the Settlement Fund. The parties hereto agree to cooperate with the Claims Administrator, each other, and their tax attorneys and accountants to the extent reasonably necessary to carry out the provisions set forth in this paragraph.

**H.** **Smith Barney Has No Further Obligation, Liability or Responsibility.**

Other than Smith Barney's responsibility for the employer's share of payroll taxes as discussed in Section IX.G.2. above, Smith Barney shall have no withholding, reporting or any other tax reporting or payment responsibilities with regard to the Settlement Fund or its distribution to Class Members.  Moreover, Smith Barney shall have no liability, obligation, or responsibility for the administration of the Settlement Fund, the determination of any formulas for disbursement, or the disbursement of any monies from the Settlement Fund except for (1) its obligation to pay the Settlement Sum specified in Section IX.A. no later than ten (10) days after Preliminary Approval; (2) its obligation related to the Employer Payroll Tax Payment as set forth in Section IX.G.2.; and (3) its agreement to cooperate in providing information which is necessary for Settlement administration set forth herein.

**X.** **ATTORNEYS' FEES, EXPENSES OF CLASS COUNSEL AND ADMINISTRATIVE EXPENSES.**

**A.** **Class Counsel Fees and Costs.**

Class Counsel shall be entitled to apply to the Court for an award of attorneys' fees, costs and expenses in a total amount not to exceed $6.5 million plus accrued interest as of October 1, 2008 for attorneys' fees and an additional amount not to exceed $900,000 plus accrued interest as of October 1, 2008 for out of pocket costs and expenses, as well as $500,000 plus accrued interest as of October 1, 2008 for Class Counsel's future work implementing and monitoring the Settlement during the 4-year term of the Agreement according to the following schedule: $200,000 one year from the Court order for final approval, and $100,000 for each of the three years thereafter.

**B.    Smith Barney's Non-Opposition.**

Smith Barney and its attorneys agree not to oppose any applications for attorneys' fees, costs or expenses by Class Counsel as set forth in Section X.A.1. of this Settlement Agreement.

**C.    Timing of Fee Payment.**

Any attorneys' fees, costs or expenses payable to Class Counsel shall be distributed from the Settlement Fund pursuant to the Settlement Agreement by the Claims Administrator serving as Trustee of the Settlement Fund.  No distribution shall occur prior to the Effective Date.  Smith Barney shall have no liability or other responsibility for the allocation of such attorneys' fees among and between Class Counsel.

**D.    Satisfaction of Fee and Cost Obligations under the Settlement.**

Smith Barney's payment of Class Counsel's attorneys' fees, costs and expenses as described herein shall constitute full satisfaction of Smith Barney's obligation to pay any person, attorney or law firm for attorneys' fees, costs, and expenses incurred on behalf of the Settlement Class, and shall relieve Smith Barney from any other claims or liability to any other attorney or law firm or person for any attorneys' fees, expenses and costs to which any of them may claim to be entitled on behalf the Settlement Class that are in any way related to the Released Claims.

**E.    Service Award.**

Class Counsel will seek and Smith Barney will not oppose Court approval for Service Awards of $50,000 to Named Plaintiffs Renee Amochaev, Deborah Orlando, and Kathryn Varner, and $35,000 to Named Plaintiff Ivy So for their participation in the prosecution and settlement of this case. This participation included each Plaintiff preparing for and then being

deposed for 3 days, participating in responding to discovery requests, assisting counsel in developing strategy, and providing input into settlement discussions and the ultimate Settlement Agreement. Plaintiffs Amochaev, Orlando and Varner each joined the case at its inception (Plaintiff So joined one and one-half years later), participated in the initial press conference, and attended one or more mediation sessions with Smith Barney. All Plaintiffs reviewed the drafts of the Settlement Agreement and provided input, with several spending hours on line edits and substantive input. The proposed Service Awards will be in addition to Settlement Class benefits available to the Named Plaintiffs under the Agreement and are subject to Court approval.

## XI.    TERMINATION OF THE SETTLEMENT AGREEMENT

If the number of Class Members who have duly requested exclusion from the Settlement Class, in the manner provided in the Preliminary Approval Order, is equal to, or exceeds, the number in **Appendix 2** filed under seal along with this Settlement Agreement, then Smith Barney shall have the right, for 20 days following the date specified in the Preliminary Approval Order for Class Members to submit written requests for exclusion from the Settlement Class, either to withdraw from and fully terminate this Settlement Agreement by providing written notice to Class Counsel and the Court, *or* not to withdraw from this Settlement Agreement and take the opt-out credit described below. The opt-out credit shall be a pro rata share of the Settlement Fund based on the number of Class Members who have opted out in relation to the total number of Class Members.

## XII.   CONFIDENTIALITY

### A.    Documents and Information Produced by Smith Barney and Class Counsel.

All proprietary and confidential documents or information that have previously been provided to either Smith Barney or Lead Class Counsel as of the date this Settlement Agreement

is executed, or which are produced by Smith Barney or Lead Class Counsel pursuant to any provision of this Settlement Agreement shall, unless otherwise agreed, be treated as, and thereafter remain, confidential.  Said documents and information shall not be disclosed to anyone other than the mediator, arbitrator or the Court (pursuant to the protective order entered in this case) in connection with any proceeding to enforce any provision of this Settlement Agreement.

      **B.**    **Return or Disposal of Confidential Documents and Information.**

All proprietary and confidential documents or information that have previously been provided to Lead Class Counsel or to Smith Barney as of the date this Settlement Agreement is executed, or which are produced by Smith Barney or Lead Class Counsel pursuant to any provision of this Settlement Agreement, shall be destroyed or returned to counsel pursuant to the protective order entered in this case.

## XIII.  GOVERNING LAW

The parties agree that federal law shall govern the validity, construction and enforcement of this Settlement Agreement.  To the extent that it is determined that the validity, construction or enforcement of this Settlement Agreement is governed by state law, the law of the State of California shall apply.

This Settlement Agreement, including the Exhibits hereto, contains the entire agreement and understanding of the parties with respect to the Settlement.  This Settlement Agreement does not impose any obligations on the parties beyond the terms and conditions stated herein. Accordingly, this Settlement Agreement shall not prevent or preclude Smith Barney from revising its employment practices and policies or taking other personnel actions during the term of this Settlement Agreement so long as they are consistent with this Settlement Agreement.

737223.6

## XIV.   OTHER CONDITIONS OF SETTLEMENT

### A.   Exhibits.

The Exhibits to this Settlement Agreement are material and integral parts hereof and are fully incorporated herein by this reference.

### B.   Notices to Counsel.

All notices to counsel required or desired to be given under this Settlement Agreement shall be in writing and by overnight mail and e-mail to lead counsel for the respective parties. Specifically, such notices shall be mailed to Kelly M. Dermody of Lieff Cabraser Heimann & Bernstein, LLP, Adam T. Klein of Outten & Golden, LLP, Cyrus Mehri of Mehri & Skalet, PLLC, for the Plaintiffs, and Jay Cohen of Paul, Weiss, Rifkind, Wharton & Garrison, LLP for Smith Barney at their respective addresses set forth below (or to such other address as any such party or counsel may designate in a notice).

### C.   Failure to Insist on Strict Compliance.

The failure of any party to insist in any one or more instances on strict compliance with the terms and conditions hereof shall not be construed to be a waiver of remedies available with respect to any prior or subsequent breach.

### D.   Modifications to this Agreement.

No material modifications to this Agreement may be made without written agreement of all parties and prior Court approval.

737223.6

**E.    No Drafting Presumption.**

All parties hereto have participated, through their respective counsel, in the drafting of this Settlement Agreement and, therefore, this Settlement Agreement shall not be construed more strictly against one party than another.

**F.    Dispute As To Meaning of Agreement Terms.**

In the event of any dispute or disagreement with respect to the meaning, effect or interpretation of this Settlement Agreement or any Exhibit hereto, or in the event of a claimed breach of the Settlement Agreement, the parties agree that such dispute will be resolved and adjudicated only in accordance with the dispute resolution provisions of Section XIV.L. of this Settlement Agreement.

**G.    Interpretation of Terms.**

Whenever possible, each provision and term of this Settlement Agreement shall be interpreted in such a manner as to be valid and enforceable.

**H.    Severability**

If any portion of this Settlement Agreement is judged to be unenforceable, the remainder of the Agreement shall continue to be valid and enforceable.

**I.    Paragraph and Section Headings.**

Paragraph and section headings are for convenience of reference only and are not intended to create substantive rights or obligations.

**J.    Counterparts.**

This Settlement Agreement may be executed in counterparts. Each signed counterpart together with the others shall constitute the full Settlement Agreement.

737223.6

**K.**      <u>**Agreement Binding.**</u>

As of the date on which counsel for the parties execute this Settlement Agreement, this Settlement Agreement will be binding in all respects, unless it is terminated as set forth in Section XI, or unless the Court fails to approve this Settlement Agreement and the Settlement Agreement is thus vacated. This Settlement Agreement shall inure to the benefit of, and be binding upon, the parties hereto and their respective heirs, dependents, executors, administrators, trustees, legal representatives, personal representatives, agents, successors and assigns; provided, however, that this Settlement Agreement shall not inure to the benefit of any third party.

**L.**      <u>**Enforcement.**</u>

1.      Enforcement of this Settlement Agreement shall be prosecuted by Lead Class Counsel or counsel for Smith Barney only, not third parties. Lead Class Counsel shall meet and confer with counsel for Smith Barney prior to commencement of any enforcement proceedings.

2.      The parties will work diligently and in good faith to resolve all disputes that may arise during the term of this Settlement Agreement concerning the rights, obligations and duties of the parties to the Settlement Agreement. In the event the parties cannot agree, the parties will attempt to resolve the dispute with the facilitation of Hunter R. Hughes, Esq. or another mutually selected mediator whose services shall be paid for by Smith Barney.

3.      Any enforcement proceedings related to or arising out of this Settlement Agreement will be resolved and adjudicated only by the Honorable Phyllis J. Hamilton of the United States District Court for the Northern District of California, or by any other judge to whom this case subsequently may be assigned, unless otherwise provided in this Settlement Agreement.

737223.6

Dated:  April 2, 2008          LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP


                               By: _____
                                         Kelly M. Dermody

                               Kelly M. Dermody
                               Heather H. Wong
                               275 Battery Street, 30th Floor
                               San Francisco, CA  94111-3339
                               Telephone:  (415) 956-1000
                               Facsimile:  (415) 956-1008

                               Elizabeth A. Alexander
                               One Nashville Place
                               150 Fourth Avenue, N., Ste. 1650
                               Nashville, TN 37219-2423
                               Telephone: (615) 313-9000
                               Facsimile: (615) 313-9965

Dated:  April 2, 2008          OUTTEN & GOLDEN LLP


                               By: _____
                                         Adam T. Klein

                               Adam T. Klein
                               Piper Hoffman
                               Justin M. Swartz
                               3 Park Avenue, 29th Floor
                               New York, New York 10016
                               Telephone:  (212) 245-1000
                               Facsimile:  (212) 977-4005

Dated:  April 2, 2008          LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP

                               By:  _____
                                        Kelly M. Dermody

                               Kelly M. Dermody
                               Heather H. Wong
                               275 Battery Street, 30th Floor
                               San Francisco, CA  94111-3339
                               Telephone:  (415) 956-1000
                               Facsimile:  (415) 956-1008

                               Elizabeth A. Alexander
                               One Nashville Place
                               150 Fourth Avenue, N., Ste. 1650
                               Nashville, TN 37219-2423
                               Telephone: (615) 313-9000
                               Facsimile: (615) 313-9965

Dated:  April 2, 2008          OUTTEN & GOLDEN LLP

                               By:  _____
                                        Adam T. Klein

                               Adam T. Klein
                               Piper Hoffman
                               Justin M. Swartz
                               3 Park Avenue, 29th Floor
                               New York, New York 10016
                               Telephone:  (212) 245-1000
                               Facsimile:  (212) 977-4005

737223.6

Dated: April 2, 2008      MEHRI & SKALET, PLLC

By: _____
         Cyrus Mehri

Cyrus Mehri
Lisa M. Bornstein
Anna M. Pohl
1250 Connecticut Ave, NW, Suite 300
Washington, DC 20036
Telephone: (202) 822-5100
Facsimile: (202) 822-4997

Dated: April 2, 2008      ALTSHULER BERZON LLP


By: _____
         James M. Finberg

James M. Finberg
177 Post Street, Ste. 300
San Francisco, CA 94108
Telephone: (415) 421-7151
Facsimile: (415) 362-8064

***Attorneys for Plaintiffs and the Class***

Dated: April 2, 2008            MEHRI & SKALET, PLLC

                                By: _____
                                       Cyrus Mehri

                                Cyrus Mehri
                                Lisa M. Bornstein
                                Anna M. Pohl
                                1250 Connecticut Ave, NW, Suite 300
                                Washington, DC 20036
                                Telephone: (202) 822-5100
                                Facsimile: (202) 822-4997

Dated: April 2, 2008            ALTSHULER BERZON LLP

                                By: _____
                                       James M. Finberg

                                James M. Finberg
                                177 Post Street, Ste. 300
                                San Francisco, CA 94108
                                Telephone: (415) 421-7151
                                Facsimile: (415) 362-8064

                                *Attorneys for Plaintiffs and the Class*

Dated: April 2, 2008

PAUL, WEISS, RIFKIND, WHARTON
& GARRISON LLP

By: _____
    Jay Cohen

Jay Cohen
Brad S. Karp
Daniel J. Toal
1285 Avenue of the Americas
New York, NY 10019- 6064
Telephone: (212) 373-3000
Facsimile: (212) 757- 3990

Malcolm A. Heinicke (State Bar No. 194174)
MUNGER, TOLLES & OLSON LLP
560 Mission Street
27th Floor
San Francisco, California 94105
Telephone: 415 512-4000
Facsimile: 415 512-4077

***Attorneys for the Defendant***

# Exhibit A

**THIS IS A NOTICE OF A PROPOSED CLASS ACTION SETTLEMENT
FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA**


UNITED STATES DISTRICT COURT NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO / OAKLAND DIVISION


RENEE FASSBENDER AMOCHAEV, DEBORAH ORLANDO, KATHRYN N. VARNER and IVY SO, on behalf of themselves and all others similarly situated,

                Plaintiffs,

v.

CITIGROUP GLOBAL MARKETS, INC., d/b/a SMITH BARNEY,

                Defendant.

                Case No. C-05-1298 PJH


**NOTICE OF CLASS ACTION, PROPOSED SETTLEMENT AGREEMENT, AND
SETTLEMENT HEARING**


**IF YOU ARE FEMALE AND WERE EMPLOYED AS A FINANCIAL ADVISOR OR
FINANCIAL CONSULTANT WITH CITIGROUP GLOBAL MARKETS, INC., d/b/a SMITH
BARNEY OR ITS PREDECESSOR(S) IN THE UNITED STATES BRANCHES OF SMITH
BARNEY'S RETAIL BROKERAGE DIVISION AT ANY TIME FROM AUGUST 30, 2003
THROUGH MARCH 1, 2008 OR ARE A FEMALE AND WERE EMPLOYED AS A
FINANCIAL ADVISOR WITH CITIGROUP GLOBAL MARKETS, INC., d/b/a SMITH
BARNEY OR ITS PREDECESSOR(S) IN THE CALIFORNIA BRANCHES OF SMITH
BARNEY'S RETAIL BROKERAGE DIVISION FROM JUNE 25, 2003 THROUGH MARCH 1,
2008,  A PROPOSED CLASS ACTION SETTLEMENT MAY AFFECT YOUR RIGHTS.**

*A federal court has authorized this Notice. This is not a solicitation from a lawyer.*

Please read this Notice carefully and fully.  This Notice describes a proposed settlement and related matters, including the procedures for seeking monies from a Settlement Fund.

This Notice is intended to inform you about the terms of a proposed settlement (the "Settlement") of a pending legal action and your rights in connection with this Settlement. This Notice describes the steps you must take to be eligible to receive Settlement Fund monies if this Settlement is finally approved by the Court.  If you do not wish to be part of the class, this Notice details the steps you must take to be excluded from the class.

## General Overview

Renee Fassbender Amochaev, Deborah Orlando, Kathryn N. Varner and Ivy So ("Plaintiffs"), former Financial Advisors, on behalf of themselves and all other current and former Smith Barney female Financial Advisors, have sued Citigroup Global Markets, Inc. d/b/a Smith Barney ("Smith Barney" or "the Company") for gender discrimination. After extensive discussions, the Plaintiffs and the Company have agreed on the terms of a Settlement.

Smith Barney denies that it has done anything wrong, and the Court did not make a determination on that issue. However, the Company has agreed to be bound by the terms of this Settlement.

The Court has reviewed the Settlement and has given it preliminary approval. Before deciding whether to grant final approval to the Settlement, the Court wishes to inform you of the general terms of the Settlement, what actions you need to take to participate in the monetary provisions of the Settlement, and of your rights to opt-out of the monetary relief portion of the Settlement or to object to the Settlement, if you would like to do so.

• The Court has allowed the following Class to assert claims for monetary relief:

All women employed as Financial Advisors with Smith Barney in (i) the United States branches of Smith Barney's Retail Brokerage Division at any time from August 30, 2003 through March 1, 2008 or (ii) in the California branches of Smith Barney's Retail Brokerage Division at any time from June 25, 2003 through March 1, 2008  The Class does not include, among others:  (i) brokers in Smith Barney's Financial Life Services (FLS) program, (ii) Smith Barney's bank-based advisors; or (iii) Financial Advisor Associates.

If you fit one of the above definitions, then you are a Class Member. This Notice will explain the terms of the Settlement that will be presented to the Court for final approval.

If the Court grants final approval to the Settlement, the changes to be made to the Company's policies and practices, known as "programmatic relief," will apply to all women who are currently employed as Financial Advisors in the United States branches of Smith Barney's Retail Brokerage Division, including Class Members who opt-out of the Settlement. It is not possible to opt-out of the programmatic relief portion of the Settlement.

If, after reviewing the terms of the Settlement you would like to participate in the Settlement by making a claim for monetary relief, then you must fill out the attached Claim Form.

If you want to opt-out of the Settlement and not receive any monetary relief through this Settlement, or you want to object to the Settlement before the Court, this Notice will describe the procedures to do so.

The Court will hold a Settlement Hearing to consider whether the Settlement is fair, reasonable, and adequate, and to decide whether to give final approval to this Settlement. The hearing will be held at 9:00 a.m. on August 13, 2008, in the courtroom of the Honorable Phyllis Hamilton at the United States District Court for the Northern District of California, Courtroom 3, U.S. Courthouse, 450 Golden Gate Avenue, San Francisco, California 94102. If the Court grants final approval of the Settlement after the Settlement Hearing, the Court's judgment will be final and binding.

• You are not required to appear at the hearing. If you are a Class Member you will be represented by attorneys for the Class at no cost to you. If you wish to opt-out of the Settlement Class, you must submit a request to opt-out in writing by the July 7, 2008 deadline, but you do not need to appear at the hearing. If you wish to object to the Settlement, you must submit a written objection by the July 7, 2008 deadline. Those who wish to object to the Settlement may present their objection in writing only, or may, in addition to a written objection, appear and be heard by the Court, either by yourself or, at your own expense, with an attorney of your choice.

If you wish to remain a Class Member and to have an opportunity to receive a share of the monetary relief you must return the attached Claim Form postmarked no later than September 17, 2008.

If you wish to opt-out and exclude yourself from the Settlement, your opt-out request must be

received by July 7, 2008.

     If you wish to object to the Settlement, your objection must be received by July 7, 2008.

     For additional information, you may visit: http://www.genderlawsuitagainstsmithbarney.com.

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS LAWSUIT | |
|---|---|
| **Submit a Claim Form** | **The *only* way to be eligible to receive money from the Settlement.** |
| **Do Nothing** | **Stay in this lawsuit.  Receive no money from the Settlement.  Give up certain rights.** By doing nothing, you will not receive any money from the Settlement Fund, and you give up any right to pursue claims against Smith Barney separately about the gender discrimination claims covered by the Settlement. |
| **Ask to Be Excluded (Opt-Out)** | **Opt out of the Settlement Class (opt-out).  Receive no money from the Settlement Fund. Keep any rights you might have to pursue monetary claims against Smith Barney separately.** If you ask to be excluded from the Settlement Class, you will not be eligible to receive any money from the Settlement, but you will keep any rights you might have to pursue claims involving the same issues in this lawsuit against Smith Barney separately. |
| **Object** | **Write to the Court about why you don't think the settlement is fair to the class.** If you do not opt out, you may object to the Settlement whether or not you submit a Claim Form. |
| **Go to the Hearing** | **You may, but are not required to, ask to speak in Court about the fairness of the Settlement.** |

# WHAT THIS NOTICE CONTAINS

| | | |
|---|---|---|
| 1 | Purpose of this Notice................................................................................... | 4 |
| 2 | Background: About the Lawsuit ................................................................... | 4 |
| 3 | Class Definition—You are Part of the Class ................................................ | 5 |
| 4 | Summary Of Settlement Terms ..................................................................... | 6 |
| 5 | Settlement Hearing....................................................................................... | 14 |
| 6 | How to Proceed: Your Options..................................................................... | 15 |
| 7 | Release ........................................................................................................ | 18 |
| 8 | How Will My Settlement Award Be Calculated?.......................................... | 19 |
| 9 | The Lawyers Representing You And The Class............................................. | 20 |
| 10 | Payments to Named Plaintiffs…………. ..................................................... | 21 |
| 11 | Getting More Information............................................................................. | 22 |

## BASIC INFORMATION

### 1. Purpose of this Notice

The purpose of this Notice is to inform you about this litigation, the certification of a class (the "Class"), the terms of a proposed settlement (the "Settlement"), and your rights in connection with a hearing to be held before the Court on August 13, 2008, to consider the fairness, reasonableness, and adequacy of the Settlement and related matters. This Notice also describes the steps to be taken by those who wish to be excluded from the Class and, for those who remain Class Members, the steps necessary to seek a share in the distribution of the Settlement Fund in the event the Settlement is approved by the Court.

### 2. Background: About the Lawsuit

On March 31, 2005, Plaintiffs Renee Fassbender Amochaev, Deborah Orlando and Kathryn N. Varner filed a lawsuit in federal court in San Francisco. The Plaintiffs alleged, among other things, that they were subjected to gender discrimination. On November 29, 2006, Plaintiff Ivy So joined that complaint. Specifically, Plaintiffs allege discrimination by Smith Barney against female Financial Advisors (formerly referred to as "Financial Consultants") in compensation, account distributions, partnerships, acquisition of books of business of retiring Financial Advisors, and other business opportunities that were not afforded to female Financial Advisors in a manner equal to their male counterparts. Plaintiffs also claim that Smith Barney terminated them and denied them equal terms and conditions of employment.

Because these Plaintiffs brought this action on behalf of a group, or "class" of female Financial Advisors who have similar claims, they filed the case as a "class action," and are referred to as "Named Plaintiffs."

You can read all of the Plaintiffs' claims in the Plaintiffs' Amended Complaint, which can be found at http://www.genderlawsuitagainstsmithbarney.com.

Smith Barney denies that it discriminated against female Financial Advisors or that it otherwise did anything wrong. The Company maintains that female Financial Advisors were compensated pursuant to a production-based system that treats similarly situated male and female Financial Advisors equally. Smith Barney also maintains that female Financial Advisors were not terminated or denied equal terms and conditions of employment on the basis of their gender.  Smith Barney maintains that it does not allow or condone discrimination against female Financial Advisors and that it is an equal opportunity employer.  By entering into the proposed Settlement, Smith Barney does not admit any wrongdoing.

The Settlement resolves claims of gender discrimination in compensation and other terms and conditions of employment, including those brought under Title VII of the Civil Rights Act of 1964 and, with respect to California Class Members, the California Fair Employment and Housing Act, Cal. Gov't Code § 12940.  The Settlement also resolves any and all individual, non-class claims the Named Plaintiffs made or could have made in the First Amended Complaint or in their EEOC charges. The Court has not made and will not make any determination regarding whether or not Smith Barney discriminated against female Financial Advisors.  This Notice should not be regarded as an expression of any opinion by the Court on the merits of any claims or defenses of the Parties.  No trial has occurred. There has been no finding or determination by the Court that Smith Barney has violated any law or obligation, or that, in the event that the Settlement does not become effective, a recovery could or could not be made by the Named Plaintiffs or other members of the Class.  Because the Named Plaintiffs and the Company together came to the Court to ask that the Court approve the Settlement that the two sides agreed to, the Court will simply examine the Settlement Agreement to determine whether or not it is fair, adequate and reasonable.

The Court has reviewed the Settlement and has preliminarily approved it as being fair, adequate and reasonable. Before deciding whether to give the Settlement final approval, the Court wishes to inform you of the general terms of the Settlement and of your right to comment on the Settlement, if you so desire, as well as your right to opt-out, or be excluded, from participating in the Settlement.

## 3. **Class Definition—You are Part of the Class**

You are a member of the Class affected by the Settlement if you fit within this definition:

> All women employed as Financial Advisors in (i) the United States branches of Smith Barney's Retail Brokerage Division at any time from August 30, 2003 through March 1, 2008, or (ii) the California branches of Smith Barney's Retail Brokerage Division at any time from June 25, 2003 through March 1, 2008.  Excluded from the Class are, among others: (i) brokers in Smith Barney's Financial Life Services (FLS) program, (ii) Smith Barney's bank-based advisors; or (iii) Financial Advisor Associates.

If you received this Notice in a mailing addressed to you, then Smith Barney's records show that you were employed by Smith Barney as a Financial Advisor in the United States branches of Smith Barney's Retail Brokerage Division at some time from August 30, 2003 through March 1, 2008 or employed by Smith Barney as a Financial Advisor in the California branches of Smith Barney's Retail

Brokerage Division at any time from June 25, 2003 through March 1, 2008. Therefore, you are considered a Class Member. You have legal rights and options that you may exercise before the Court finally approves the Settlement.

**Do I Have to Be Part of this Lawsuit?**

You may exclude yourself from, or "opt-out" of, the Settlement. If you do so, you will not be required to give up any legal rights that you would otherwise have to sue Smith Barney individually for gender discrimination, and you will not be permitted to share in the monetary portion of the Settlement. Information about how to opt-out is included below. You may not exclude yourself from the programmatic relief provisions of the Settlement. If the Court approves the Settlement, you will be bound by the programmatic relief provisions of the Settlement even if you opt-out of the Settlement Class.

**4.    Summary Of Settlement Terms**

**What Are the Terms of the Settlement?**

The Settlement requires Smith Barney to establish a Settlement Fund and to implement changes to its policies and practices. The programmatic portions of the Settlement will last for four years.

**The Settlement Fund**

Following preliminary approval of the Settlement, Smith Barney will deposit Thirty-Three Million Dollars ($33,000,000) plus an amount equal to the daily LIBOR rate on that $33,000,000 calculated from December 14, 2007 to the date of deposit ("Settlement Sum"). The Settlement Fund will be deposited into an interest bearing account. The Settlement Fund is expected to accrue sufficient interest prior to distribution to the Class to cover all or virtually all of the payments to the Named Plaintiffs for service awards and non-class claims. In addition, a portion of the Settlement Fund will be used to reimburse costs and expenses of the litigation, pay Class Counsel's fees as awarded by the Court, and pay for the administration of the settlement process. The remainder of the Settlement Fund will be distributed to the eligible Named Plaintiffs and Class Members who submit Claim Forms to compensate them for the asserted claims.

**What Does Smith Barney Have to Do Under the Settlement?**

Smith Barney has agreed to implement various revisions to its policies and practices. These revisions are intended to further enhance opportunities for employment, earnings and advancement of female Financial Advisors, and to further promote a workplace that is fair for all employees. It is expected that these programs will benefit female Financial Advisors at Smith Barney and increase their earnings potential. These benefits are in addition to the Thirty-Three Million Dollars ($33,000,000) plus interest in the Settlement Fund.

Under the Settlement, Smith Barney will make the following revisions to its policies and practices, or perform the following tasks, during the four-year term of the Settlement Agreement:

      **Communications**

      A.     Smith Barney shall distribute its Non-Discrimination, Anti-Harassment and Anti-Retaliation Policies to all employees upon hire (in hard copy or by electronic mail) and then on an annual basis via email from Smith Barney's CEO.

B.   The CEO of Global Wealth Management shall issue a statement annually in support of the policy. The policy shall be available on the Firm's intranet site and will be incorporated into various other Firm policies, including its Code of Conduct and its Internet and Electronic Communications Usage Policy.

C.   The Non-Discrimination, Anti-Harassment and Anti-Retaliation Policies and the behaviors they seek to promote and prevent shall be the subject of mandatory training that all employees will be required to complete upon hire.

**Branch Management Mobility**

A.   All available branch management positions (including minimum requirements for qualification) will be posted for a minimum of five (5) business days for Financial Advisors who either: (i) have successfully completed the branch management assessment program, or (ii) are already in branch management and request to be informed of new management job postings.  Either the hiring manager or Human Resources will follow up with each applicant/candidate in a timely manner.

B.   Smith Barney shall develop and implement a computerized system to generate an electronic mail notification of new management job postings to Financial Advisors who either: (i) have successfully completed the branch management assessment program, or (ii) are already in branch management and request to be informed of new management job postings.  Smith Barney shall post a written description of the branch management assessment program and the criteria for admission on the Firm's intranet site.

C.   An Industrial Psychologist shall be jointly appointed.  The Industrial Psychologist shall review Smith Barney's branch management assessment program and, if appropriate, make recommendations for increasing the participation of females in the branch manager assessment program (including review of the criteria for admission) and in branch management.

D.   Smith Barney shall provide all management personnel with diversity training no less than every other year. The format of such training may vary from jurisdiction to jurisdiction depending on the relevant legal requirements.  However, all managers shall, at a minimum, be required to complete an interactive, customized, e-learning training program.

E.   Branch Manager compensation shall be revised to include a diversity component designed to measure and reward efforts at diversifying representation rates in the Financial Advisor position. Smith Barney shall develop and implement a standardized annual process whereby Branch Managers shall be required to report on their efforts and results in promoting a diverse workforce and whereby senior Smith Barney management will review these efforts and take them into account when determining the diversity component of each Branch Manager's compensation.

**Account Distribution**

A.   The Power Ranking system, which will be used to determine account distributions, will be provided to each Financial Advisor and Financial Advisor Associate ("FAA") upon hire and will be available to all Financial Advisors and FAAs electronically.  Smith Barney will provide notice to Financial Advisors and FAAs regarding any modification to the Power Ranking methodology.

B.   Smith Barney will also inform each Financial Advisor and FAA of her or his individual ranking

at the time any distribution is made. The actual distribution of a departing Financial Advisor's book will be made available to all Financial Advisors and FAAs in the Branch.

C.     All Power Ranking factors that measure performance from the previous twelve-month period will be adjusted to encompass a 12-month period exclusive of absence for parental leave or short-term disability leave.

D.     Smith Barney senior management will issue a comprehensive account distribution policy statement, which shall include policies covering the distribution of the accounts of departing Financial Advisors, retiring Financial Advisors (other than accounts distributed through the Franchise Protection Program), departing partners, and leads, call-ins, and walk-ins. This policy statement will be sent via email to all field employees. It will also be posted on Smith Barney's intranet site and shall include a prohibition on discrimination. In addition, Smith Barney will train all current Branch Managers on account distribution policies and procedures at the time the settlement becomes effective, and will similarly train all new managers that are subsequently hired.

E.     Branch Managers shall have discretion to disqualify a Financial Advisor from an account distribution for improper conduct; provided, however, that where such an exception to the Power Ranking process is made, it shall be documented by the Branch Manager or his/her designee in writing and included in the quarterly reports on exceptions provided to the Diversity Monitor. Financial Advisors and FAAs will not be eligible for an account distribution if they: (1) have voluntarily opted-out of the distribution; (2) are not in the product specialty group to which the distributed accounts belong (e.g. IIG/IFG); or (3) are on parental or short-term disability leave at the time the account distribution is made.

F.     Where an exception is made to the Power Ranking process for compliance purposes or to accommodate non-discriminatory client preferences, each individual exception shall be documented and kept for purposes of monitoring policy compliance and regularly reviewed by the Regional Director and the Diversity Monitor.

G.     If a Financial Advisor or FAA receives an account through an exception, that Financial Advisor or FAA will not receive another account in the same distribution until every eligible Financial Advisor and FAA has first received an account from those accounts that come next in the ranking of accounts in that distribution; provided, however, that if that Financial Advisor or FAA is the only qualified Financial Advisor in the branch to service a later account in the distribution, that Financial Advisor or FAA shall receive that account even if not every eligible Financial Advisor and FAA has already received an account in the distribution, and such exception shall be documented. An individual Financial Advisor or FAA who does not receive a specific account as a result of an exception shall receive the next available account in the same distribution that he/she is qualified to service.

H.     Smith Barney shall provide quarterly reports to the Diversity Monitor on exceptions being made in the branches. Branch Managers who are determined to have distributed an account pursuant to any improper exception shall receive an appropriate discipline.

I.     Smith Barney shall enhance its technology to allow its account distribution process to be computer automated. Account distributions will be made through this automated process subject to exceptions to ensure compliance with regulatory requirements and non-discriminatory client preferences. The results of all account distributions shall be stored and readily retrievable for monitoring to ensure compliance with account distribution policies.

J.  If at any time during the term of this Settlement Agreement a dispute arises between Smith Barney and a Financial Advisor concerning any account distribution, such dispute shall—at the written request of the Financial Advisor—go through Smith Barney's internal complaint process, which includes access to mediation.  However nothing in the Settlement Agreement shall prevent any Class Member or Named Plaintiff from individually pursuing any legal claim not released under the Settlement through any applicable governmental agency, arbitration forum or court of law if she is otherwise entitled to do so, including, but not limited to, claims for race discrimination, age discrimination or non-economic damages arising from sexual harassment.  If a Financial Advisor submits a gender-related complaint through Smith Barney's alternative dispute resolution system, that person shall receive a written description of the ADR process—and a written notice indicating that the statutes of limitations on her/his legal claims will be tolled for 120 days from the date of his/her submission of the ADR complaint.

K.  No changes to Smith Barney's procedures for distributing accounts of departing Financial Advisors described in the Settlement Agreement shall apply to or affect:  (i) Smith Barney's Financial Life Services (FLS) program or any accounts transferred, or identified for transfer, to or from FLS; or (ii) accounts serviced by Smith Barney's bank-based Financial Advisors.

L.  The Industrial Psychologist shall review and, if appropriate, make recommendations for developing a standard and nationwide process for determining up-front bonuses, forgivable loans, and other transitional compensation packages given to lateral recruits.  Any such recommendations shall be designed to promote equal opportunity in the receipt and amount of transitional compensation packages—after taking into consideration factors such as the lateral recruit's production start date, production, assets under management, return on assets, product mix and any other legitimate factors.

M.  To the extent that Smith Barney does not already have such a system, with input from the Industrial Psychologist, Smith Barney shall develop and implement a system to keep records of all up-front bonuses, forgivable loans, and other transitional compensation packages given to lateral Financial Advisor recruits.  Smith Barney shall provide a summary of this information to the Diversity Monitor and Class Counsel. The Diversity Monitor will review and report on these records to the Industrial Psychologist.

N.  The book of business formerly serviced by a retiring Financial Advisor who is not participating in the Franchise Protection Program will be distributed through the Power Ranking System. Smith Barney will consider the efforts made by branch management to increase participation by female Financial Advisors in the Franchise Protection Program in determining the diversity component of Branch Manager compensation.

O.  The Industrial Psychologist shall review and, if appropriate, make recommendations to promote participation of female Financial Advisors in the firm's Franchise Protection Program, including female Financial Advisors' participation as retiring Financial Advisors and receiving Financial Advisors in the Franchise Protection Program. The Diversity Monitor will review female Financial Advisor participation in Franchise Protection Programs, both as retiring Financial Advisors and as receiving Financial Advisors, and will receive information from Smith Barney about the gender of persons receiving assets and the value of assets transferred.

P.  Smith Barney shall collect data about the account distribution process and shall report such data to the Diversity Monitor, Industrial Psychologist and Class Counsel. As described below (under

Industrial Psychologist), after the 20- and 44- month periods and subject to certain conditions, Class Counsel may initiate a binding dispute resolution process before a neutral mediator if they believe the system should be changed and Smith Barney disagrees. The parties may initiate changes on a more frequent basis by agreement.

Q.    In the event that a Financial Advisor or FAA who is part of a team leaves Smith Barney, the team member(s) who remain at Smith Barney will presumptively retain the book of business formerly serviced by the departing Financial Advisor, provided that the remaining team member(s) is/are qualified to service those accounts. The Diversity Monitor shall receive semi-annual reports from Smith Barney relating to redistributed accounts from partnerships, including number of accounts, Financial Advisor revenue, asset value, and gender of receiving Financial Advisor.

R.    Smith Barney will consider the efforts made and results achieved by branch management to increase participation by female Financial Advisors in partnerships in the branch in determining the diversity component of Branch Manager compensation.

S.    The Industrial Psychologist shall review and, if appropriate, make recommendations to promote participation of female Financial Advisors in partnerships and teams.

T.    For purposes of a Financial Advisor's or FAA's Power Rankings, Smith Barney will count partnership assets under management based on the percentage of the commission split specified in the Joint Production Agreement.

U.    All Joint Production Agreements will include a plan for the distribution of partnership assets in the event of the partnership's or team's dissolution.

V.    The Diversity Monitor will review female Financial Advisor participation in partnerships and will receive information from Smith Barney about partnership splits based on gender and the value of assets under each partnership based on gender. The Diversity Monitor will receive copies of any complaints made to Smith Barney management or its legal counsel by female Financial Advisors regarding any aspect of partnerships.  The Diversity Monitor will be advised of any partnership dissolution involving a female Financial Advisor.

W.    Each Branch Office will implement a voluntary "Financial Advisor of the Day" program in which all client prospects who either walk in or telephone the branch and who are seeking a Financial Advisor shall be directed to the Financial Advisor serving as the Financial Advisor of the Day.

**Development Opportunities**

A.    Smith Barney shall work with the Industrial Psychologist to develop initiatives designed to attract and retain women at Smith Barney as Financial Advisors, and to enhance their success. The Industrial Psychologist shall make recommendations to promote participation of female Financial Advisors in development opportunities.

B.    Smith Barney will provide exit questionnaires to Financial Advisors who terminate their employment voluntarily in order to gain a better understanding of the reasons for each departure.  The exit questionnaires submitted by female Financial Advisors shall be available to the Industrial Psychologist and the Diversity Monitor, who shall report his or her findings to Human Resources.

C.    Smith Barney will maintain its commitment to its female Financial Advisor networking meetings.

**Complaint Process and Training**

A.    The complaint process will be communicated in writing to all Financial Advisors upon hire and annually.

B.    Smith Barney will provide its Human Resources staff with appropriate training regarding compliance with state, federal, and local EEO laws; Smith Barney's anti-discrimination and harassment policies; the Settlement Agreement; and the best practices for complaint investigation and resolution. Human Resources will be trained to treat all complaints or inquiries as confidentially as legally possible and to carry out their duties in a manner consistent with the law. In addition, Human Resources will implement controls designed to ensure that only non-complaining employees or managers with a need to know will be advised of a complaint or investigation. If Human Resources decides that it must inform any employees or managers of the identity of the complainant, Human Resources will notify the complainant in advance that her/his identity will be released and to whom it will be released. In all instances, upon being informed of a complaint or investigation, the employees and managers so informed will be reminded of Smith Barney's policy against retaliation.

C.    Smith Barney will retain documents sufficient to show complaints of sex discrimination, sex bias and/or retaliation related to such complaints for the term of the Settlement Agreement. This includes, but is not limited to, complaints made directly to in-house or outside counsel. Smith Barney will provide copies of all sex discrimination, sex bias, and retaliation complaints, as well as copies of the Complaint Log and Legal Complaint Log to the Diversity Monitor on a quarterly basis.

**Diversity Monitor**

A.    The parties will jointly appoint a Diversity Monitor who shall be external to and independent of Smith Barney, but will report directly to the CEO of Global Wealth Management.

B.    The Diversity Monitor shall monitor Smith Barney's efforts to carry out the terms of the Settlement Agreement. This shall include the following:

   1. receiving quarterly reports regarding complaints of female Financial Advisors alleging sex discrimination, sex bias, or retaliation and the resolution of investigations of such complaints through any Smith Barney ADR program.
   2. reviewing reports by Smith Barney on the diversity-related annual assessment process for Branch Managers, including the self-assessments completed by Branch Managers, and annual data and information provided by the Company related to the diversity component of each Branch Managers' compensation.
   3. reviewing reports on exceptions to the account distribution system being made in the branches, including information on the identity of the branches, the branch managers who approved the exceptions and an explanation of the exceptions.
   4. annually reviewing up-front bonuses, forgivable loans and other transitional compensation packages that Smith Barney provided to lateral recruits, and reporting on these records to the Industrial Psychologist.

5. receiving a copy of the summaries provided in connection with management approval of any forgivable loan provided to a lateral recruit and interviewing the appropriate branch manager about the rationale for any up-front bonuses, forgivable loans, or transitional compensation packages.

6. annually reviewing female Financial Advisor participation in Franchise Protection Programs, both as retiring Financial Advisors and as receiving Financial Advisors, and receiving information from Smith Barney semi-annually about the gender of persons receiving assets and the value of assets transferred.

7. semi-annually reviewing reports relating to redistributed accounts from partnerships, including the number of accounts, Financial Advisor revenue, asset value and gender of receiving Financial Advisor as well as female Financial Advisor participation in partnerships and receiving information from Smith Barney about partnership splits based on gender and the value of assets under each partnership based on gender.

8. monitoring bi-annual training of management on EEO policies, and policies against discrimination and retaliation, and ensuring that the training agreed to was implemented.

9. reviewing exception reports regarding the Financial Advisor of the Day program.

10. reviewing how Human Resources handles investigations and the resolution process for inquiries and complaints.

11. reviewing the exit questionnaires completed by departing female Financial Advisors, as well as information regarding the retention of female Financial Advisors annually, and reporting his/her findings to Human Resources.

12. identifying issues of potential non-compliance and reporting them to Smith Barney and Lead Class Counsel.

13. providing reports to Lead Class Counsel and Smith Barney at least semi-annually regarding the items described in this Agreement to be monitored.

14. maintaining records for the term of the Settlement Agreement.

C. If any instances of non-compliance with the provisions of the Settlement Agreement are identified by the Diversity Monitor, in consultation with Lead Class Counsel, Smith Barney will take appropriate corrective action to address them unless Smith Barney can show that corrective action would be inconsistent with legitimate business and client needs and objectives.

D. If Lead Class Counsel disagrees with Smith Barney's determination on the implementation of corrective action, Lead Class Counsel may initiate a meet and confer session with Smith Barney's counsel and, if necessary, seek mediation.

E. Smith Barney shall inform the Diversity Monitor and Lead Class Counsel of any corrective action taken. Where potential non-compliance has been identified, the Diversity Monitor shall have the right to audit the activities in a branch, by reviewing documents, asking branch management to provide explanations and, if necessary, speaking to Financial Advisors in the branch, and the right to receive relevant information from Smith Barney headquarters upon reasonable request.

**Industrial Psychologist**

A. The parties shall also jointly appoint an Industrial Psychologist, who shall work with Smith Barney and Class Counsel to develop innovative, meaningful, novel, state-of-the-art programs and, if appropriate, to make recommendations concerning:

1.  The production and earnings of female Financial Advisors, including policies and practices with respect to training, development, mentoring, and business-related allocations;
2.  The participation of female Financial Advisors in the Franchise Protection Program, both as retiring Financial Advisors and as receiving Financial Advisors;
3.  The participation of female Financial Advisors in partnerships and teams, including commission splits between male and female partners, and dissolution of partnerships and teams;
4.  Up-front bonuses, forgivable loans, and other transitional compensation packages offered to lateral recruits;
5.  Policies and practices with respect to training, development, and mentoring for female Financial Advisors. Training and development may include, but is not limited to, training, conference calls, online courses, and in-person seminars;
6.  The participation of females in Smith Barney's branch management assessment program and in branch management; and
7.  A mentoring program for all Financial Advisors.

B   The Industrial Psychologist shall review the actual implementation of the programs, policies, and initiatives that Smith Barney is obligated to undertake by virtue of the Settlement Agreement and shall, on an annual basis, report the results of this review to the Diversity Monitor. The Industrial Psychologist shall review on an annual basis the retention rates of women in the Financial Advisor position and shall report the results of this review to the Diversity Monitor.

C.  The Industrial Psychologist shall present any recommendations to the members of Senior Management at Smith Barney who are most appropriate to address each issue.  A copy of the recommendations will also be provided to Lead Class Counsel.  All recommendations of the Industrial Psychologist will be designed to advance the purposes of the Settlement Agreement consistent with Smith Barney's legitimate business needs and objectives.  If Smith Barney does not agree with any such recommendations, but Lead Class Counsel still thinks they should be implemented notwithstanding Smith Barney's objections, the Industrial Psychologist, along with Lead Class Counsel, will have the opportunity to present the recommendations to Smith Barney's highest ranking officer overseeing Financial Advisor compensation, currently the Director of Field Management.  Smith Barney shall decide in good faith consistent with the purposes of this Settlement Agreement whether to implement such recommendations.

D.  The Industrial Psychologist shall provide to the parties statistical analyses on the Power Ranking criteria. These analyses shall report on data at the 12, 20, 36 and 44 month intervals from the Effective Date.  With the analysis, the Industrial Psychologist shall determine whether female Financial Advisors have received less than their pro rata share of distributed accounts, and if so, whether the difference is statistically significant.  This determination shall be based on an aggregate comparison of (i) the value of the accounts distributed, based on their account value at the end of the month prior to their distribution; and (ii) the representation of men and women in the population of Financial Advisors in the retail brokerage division of Smith Barney, including only those Financial Advisors who were active within the time period being measured.

E.  The Power Rankings may be changed at any time upon agreement between Smith Barney and Lead Class Counsel following a meet and confer process.  If, following the meet and confer process, Lead Class Counsel do not agree to a change proposed by Smith Barney, Smith Barney may seek authority from Hunter R. Hughes, Esq. or another mutually selected mediator (the "Mediator") to implement the proposed change(s) to the Power Ranking systems, which

authority will not be unreasonably withheld. To bring about such changes, Smith Barney must show to the satisfaction of the Mediator through binding mediation that (a) the changes are necessary to comply with applicable law; or (b) each of the criteria they seek to change is having a significant adverse impact on Smith Barney's business and that the change(s) sought would not disadvantage female Financial Advisors or FAAs relative to the criteria being displaced.

F.      If, following either the 20 or 44 month reports, the Industrial Psychologist determines that female Financial Advisors have received less than their pro rata share of distributed accounts, and that the difference is statistically significant, then Lead Class Counsel may initiate a meet and confer session with Smith Barney's counsel. If, in the judgment of Lead Class Counsel, the meet and confer does not result in a satisfactory resolution, Lead Class Counsel may request a hearing before the Mediator solely for the purpose of resolving whether there should be any change to the Power Ranking factors or any adjustment to their weight. Such a process shall be completed within 4 months under a schedule and with written submissions in a form determined by the mediator, but allowing at least twenty-one days for a response by the responding party (unless the responding party seeks shortened time for its own submission). Smith Barney shall pay the cost of such binding mediation. The Mediator shall review each party's submissions and make a final, non-appealable determination regarding whether there should be any change to the Power Ranking factors or any adjustment to their weight.

G.      Subject to signing an appropriate confidentiality agreement, and upon reasonable advance notice, the Diversity Monitor and the Industrial Psychologist will have reasonable access to relevant documents, data, and Smith Barney employees. The Diversity Monitor and the Industrial Psychologist will be compensated by Smith Barney.

H.      If it becomes necessary to replace the Diversity Monitor or the Industrial Psychologist, the parties shall select a replacement by mutual agreement.

**General Non-Discrimination Provisions**

Pursuant to Smith Barney's Non-Discrimination and Anti-Harassment Policy, female Financial Advisors will enjoy terms and conditions of employment comparable to their male counterparts. Smith Barney shall reaffirm its commitment to the following general policies using a method agreed to by the parties:

1.  Prohibition against discrimination on the basis of sex in compensation and business opportunity allocations.
2.  Prohibition against retaliation for reporting sex discrimination, participating in any Smith Barney ADR program, participating in this or any discrimination settlement, filing a lawsuit or complaint with any outside agency or entity alleging sex discrimination, or for refusing to participate in sex discrimination.
3.  Prohibition against reimbursement of business expenses that are directly or indirectly related to male-only entertainment establishments.
4.  Prohibition against any Smith Barney supervisor retaliating against any Class Member for her participation in the prosecution of the allegations contained in the charges underlying this Settlement or in the Settlement itself.

## 5.      Settlement Hearing

The hearing will be held at 9:00 a.m. on August 13, 2008 , in the courtroom of the Honorable Phyllis J. Hamilton at the United States District Court for the Northern District of California, Courtroom 3, U.S. Courthouse, 450 Golden Gate Avenue, San Francisco, California 94102. At this hearing, the Court will determine whether the proposed Settlement is fair, reasonable, and adequate and whether it should be

approved. The Court will also consider whether the motion of the Plaintiffs' attorneys, or "Class Counsel," for an award of attorneys' fees and expenses should be approved, and whether, in accordance with the Settlement, an order and judgment should be entered bringing the litigation to a conclusion.

**Do I Have To Come To The Settlement Hearing?**

You are not required to appear at the hearing. Attorneys representing the Class will appear at the hearing on behalf of all Class Members at no cost to you. However, if you would like to comment on the terms of the Settlement, you may appear and be heard at the Settlement Hearing, either by yourself or, at your own expense, with an attorney of your choice. Information about how to comment on or object to the Settlement is included below. If the Court gives final approval to this Settlement, the Court's judgment will be final and binding on all Class Members who have not opted out.

**6.        How to Proceed: Your Options**

After reviewing the terms of the Settlement set forth in this Notice, you have three options. You must decide at this stage whether you want to (A) remain a Class Member and retain an opportunity to share in the distribution of the Settlement Fund; or (B) opt-out and exclude yourself from sharing in the monetary relief portion of the Settlement. You may also object to the Settlement but, you may only do so if you remain a Class Member. If you opt-out of the Settlement, you may not object to the Settlement.

**A. Remain a Class Member**

If you do not request to be excluded, you will remain a part of the Class. The Court will hold the Settlement Hearing and you, as a Class Member, will be represented by Class Counsel at no cost to you. In order to be eligible to receive a share of the Settlement Fund, you must fill out a Claim Form, Form W-4, Form W-9, and any other required tax forms, and return it to the Claims Administrator, Settlement Services Inc., postmarked by no later than September 17, 2008. If you are a Class Member and you file a timely Claim Form, you may be eligible to obtain money from this Settlement. The Claim Form asks for information about your employment with Smith Barney, and the share of money that you will receive, if any, if the Settlement is finalized, will be determined partly based on your answers to the questions on this Claim Form. After submitting a Claim Form, you will not have a right to present any further information concerning your particular situation; nor any right to challenge the final allocation and distribution determined by the Court Appointed Claims Administrator.

Each Class Member, including each Named Plaintiff, who is eligible to receive a monetary award from the Settlement will be required to sign a Release before receiving the settlement award. If you are a Class Member but have already signed a document that releases claims against Smith Barney, it is possible that you may have lost your right to recover any money under the Settlement for the claims you released.

Whether or not you submit a Claim Form, unless you opt out, all claims that you may have against Smith Barney up through April 30, 2008 that fall within the scope of claims released by this Settlement will be extinguished and barred. Unless you opt out, you remain eligible to object to the Settlement pursuant to Option C below, whether or not you submit a Claim Form.

**B. Opt-Out: How Do I Exclude Myself from the Settlement?**

You may request to opt-out, or be excluded, from the Settlement Class. If you opt-out, you will not be eligible for any monetary award as part of this Settlement. Any Class Member who wishes to opt-out

must mail a written, signed statement that she is opting out of the monetary portion of the Settlement to:

Kelly M. Dermody, Esq.
LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP
Embarcadero Center West
275 Battery Street, 30th Floor
San Francisco, CA 94111-3339

and


Jay Cohen, Esq.
PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, NY 11019-6064


You may not opt-out of the injunctive relief provisions of the Settlement.

To be effective, this opt-out statement must be postmarked on or before July 7, 2008, and must contain each of the following:

     (a)     your name, current address, social security number and telephone number;

     (b)     the name and number of this case (*Amochaev, et al. v. Citigroup Global Markets, Inc. d/b/a Smith Barney*, Case No. C-05-01298 (PJH)).

     (c)     a statement that you wish to be excluded from the Settlement, including the following language, which must be contained in your request:

> "I understand that I am requesting to be excluded from the Class Settlement and that I will receive no money from the settlement fund created under the Settlement Agreement entered into by Smith Barney. I understand that if I am excluded from the Class Settlement, I may bring a separate legal action seeking damages, but might receive nothing or less than what I would have received if I had filed a claim under the class monetary settlement procedure in this case. I also understand that I may not seek exclusion from the Class with respect to injunctive relief and that I am bound by the injunctive provisions of the Settlement Agreement entered into by Smith Barney."

Only those Class Members who request exclusion in the time and manner set forth herein shall be excluded from the Class. Pursuant to Federal Rules of Civil Procedure 23(b)(3) and (c)(2), the terms and provisions of the Settlement Agreement concerning monetary relief shall have no binding effect on any person who makes a timely request for exclusion in the manner required by this Order.

Please note that Class Members who submit timely and valid requests for exclusion will have no right to object to the Settlement in court and will no longer be represented by Class Counsel.

If you submit both a valid opt-out request and a valid claim form, your opt-out request will not be valid and your claim form will be processed.

If you choose to opt-out of the Settlement Class, and submit the necessary information to do so, but later decide to re-join the Class, you may rescind your opt-out request. To be effective, such a rescission must be in writing and signed, and must be postmarked on or before July 22, 2008 to the following:

Kelly M. Dermody, Esq.
LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP
Embarcadero Center West
275 Battery Street, 30th Floor
San Francisco, CA 94111-3339

and

Jay Cohen, Esq.
PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019

## C. Object to the Settlement

In determining whether to grant final approval to the Settlement, the Court must assess the overall fairness and reasonableness of the Settlement to the Class. Class Members who have not opted-out of the Settlement may object to the Settlement. If you opt-out of the Settlement, you may not object to the Settlement.

In order to speak at the Settlement Hearing, or have your objection to the Settlement considered by the Court, you must submit a written objection to the Settlement prior to the Settlement Hearing. This writing can be in the form of a letter and need not be a formal court document. You do not need to be represented by counsel to object to the Settlement. This statement must be signed, and must include the name and number of this case (*Amochaev, et al. v. Citigroup Global Markets, Inc. d/b/a Smith Barney*, Case No. C-05-01298-(PJH)) and a detailed description of the basis for the objection. This statement must be postmarked on or before July 7, 2008, and sent to:

Kelly M. Dermody, Esq.
LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP
Embarcadero Center West
275 Battery Street, 30th Floor
San Francisco, CA 94111-3339

and

Jay Cohen, Esq.
PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019

You need not appear at the Settlement Hearing for your written comments or objections to be considered by the Court, but you may appear if you so desire.

### 7. Release

If the Court grants final approval of the Settlement, then all Class Members who do not opt out will release Smith Barney for all claims certified by the Court in the lawsuit. When claims are "released," that means that a person covered by the release cannot sue Smith Barney for any of the claims that are covered by the release. Unless you opt out of the lawsuit, you will be covered by the release, even if you do not submit a Claim Form for money damages.

The exact terms of the Class Member Release are:

> The Class Members, excluding those who timely opt out, release all claims, known and unknown, existing through the date of preliminary approval, under any federal, state or local legal theory, for gender discrimination against Smith Barney, with the exception of claims for non-economic damages that arise from sexual harassment (as that term is defined by the Equal Employment Opportunity Commission). By way of example only, and without any intent to limit the scope of the preceding release, this settlement would bar a claim for loss of compensation of any type or description (including but not limited to commissions, salary, bonuses, deferred compensation and incentive awards) arising from or relating to any type of sex or gender discrimination, but would not bar a claim of emotional distress, costs of medical treatment, or other such non-economic compensatory damages arising from or related to sexual harassment.

Named Plaintiffs release all claims of any nature against Smith Barney under federal, state or local laws for any period up through the date of preliminary approval.

### 8. How Will My Settlement Award Be Calculated?

Each Class Member, including each Named Plaintiff, who files a timely Claim Form will have their claim reviewed by a Claims Administrator appointed by the Court. Class Members who submit a Claim Form will be eligible to receive monies based on length of tenure (e.g. weeks worked) at Smith Barney as a Financial Advisor. Class Members may also receive additional credit if they provide information in their Claim Form regarding termination or constructive discharge allegedly resulting from gender-based discrimination, though Class Members are not required to provide such information and may participate in the settlement based solely upon length of service.

The Claims Administrator will allocate points to each Class Member submitting a Claim Form. Each claimant will receive 1 point for each week worked as a Financial Advisor, either between August 30, 2003 and March 1, 2008, or between June 25, 2003 and March 1, 2008 if they worked as a Financial Advisor in California. Claimants will also be eligible to receive up to 50 additional points if they provide information on the Claim Form about their termination or constructive discharge from Smith Barney as the result of alleged gender-based discrimination.

For example, if a claimant worked for 2 years as a Financial Advisor, she would receive a total of 104 points (one point for each week worked). The Claims Administrator may also allocate 50 points to the claimant for information she provided on the Claim Form regarding her termination or constructive discharge as the result of alleged gender-based discrimination. The points will be provided based on the severity of harm (such as emotional or economic harm) you suffered. In this case, the claimant's final point total would be 154 (104 for each week worked plus 50 for Claim Form points for termination or constructive discharge). The claimant's share of the Class monetary award would thus be expressed as:

Claimant's 154 points divided by total points of all claimants.

The Claims Administrator will make all determinations regarding Claim Form points. You will not have a right to challenge the allocation and distribution determined by the Claims Administrator.

The total amount of awards made to the Named Plaintiffs and the Claimants shall not exceed the net amount of the Settlement Fund after deduction for notice and administration costs, Class Counsel's attorney's fees and costs, and Named Plaintiff service awards and non-class claims.

The Claims Administrator shall send a Notice of Award to each eligible Claimant disclosing her award payment, along with a Named Plaintiff Release or a Class Member Release, whichever is applicable. Within a reasonable time period after receipt of an executed Named Plaintiff Release from a Named Plaintiff or an executed Class Member Release from a Class Member, the Claims Administrator shall send the Named Plaintiff or Class Member her award payment. Any Named Plaintiff who does not execute and timely deliver an executed Named Plaintiff Release, and any Class Member who does not execute and timely deliver an executed Class Member Release to the Claims Administrator within six (6) months of the date the Notice of Award was mailed to her shall be ineligible for, and forever barred from receiving, monetary relief under this Settlement Agreement, even if said Named Plaintiff or Class Member has not opted out. Any undistributed funds that remain after six (6) months from the mailing of the Notice of Award due to uncashed checks shall be distributed to 501(c)(3) organizations which advance career opportunities for women, including career opportunities in the financial services industry, as jointly selected by Lead Class Counsel and Smith Barney.

The Claims Administrator shall maintain the distribution plan and allocation list for a period of seven (7) years. Smith Barney shall have access to individual allocation amounts only upon written notice to Class Counsel and a showing of good cause (*e.g.*, actual or threatened litigation by a Claimant). Any dispute as to whether good cause exists for such a requested disclosure shall be resolved through the Dispute Resolution process set forth in the Settlement Agreement.

The information provided on the Claim Form may be verified for accuracy against Smith Barney's computerized personnel, payroll, commission, or account data, or documents provided by claimants.

**Are There Tax Consequences For Any Money I Might Get?**

Any award you receive from the Settlement Fund will have tax consequences for you. The Claims Administrator will be responsible for withholding, remitting and reporting each Claimant's share of payroll taxes from the Settlement Fund. Smith Barney will be responsible to pay for the employer's share of taxes and costs, including FICA, FUTA, SUTA and Medicare. The Claims Administrator will withhold the employee's share of taxes and costs, including any applicable FICA, FUTA, SUTA and/or Medicare, from Claimants' awards and remit those amounts to the appropriate taxing authorities. Class Counsel are not tax advisors and cannot give you advice on any tax matters. Class Counsel urge you to consult your tax advisor for answers to any questions you may have about the tax implications of any potential award.

## 9. **The Lawyers Representing You And The Class**

As a Class Member, you are represented in this litigation by Class Counsel: Kelly M. Dermody of Lieff, Cabraser, Heimann & Bernstein, LLP; Cyrus Mehri of Mehri & Skalet, PLLC; Adam Klein of Outten & Golden, LLP; and James M. Finberg of Altshuler Berzon:

Kelly M. Dermody
LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP
275 Battery Street, 30th Floor
San Francisco, CA 94111-3339
Telephone: (415) 956-1000
Facsimile: (415) 956-1008

Adam Klein
OUTTEN & GOLDEN, LLP
3 Park Avenue, 29th Floor
New York, NY 10016
Telephone: (212) 245-1000
Facsimile: (212) 977-4005

James M. Finberg
ALTSHULER BERZON
177 Post Street, Ste. 300
San Francisco, CA 94108
Telephone: (415) 421-7151
Facsimile: (415) 362-8064

Cyrus Mehri
MEHRI & SKALET, PLLC
1250 Connecticut Avenue, NW, Ste 300
Washington, DC 20036
Telephone: (202) 822-5100
Facsimile: (202) 822-4997

Unless you elect to exclude yourself from the Settlement, you will continue to be represented by Class Counsel in connection with implementation and monitoring of the Settlement throughout the four-year duration of the terms of the Settlement at no cost to you. Although it is not necessary, you may, if you wish to do so, retain your own attorney at your own expense.

### How Will The Lawyers Be Paid?

Class Counsel have pursued these claims on behalf of Plaintiffs and the Class without receiving any compensation for their services or reimbursement of their incurred litigation expenses. Class Counsel have undertaken substantial risks in pursuing this matter. They have done so with the understanding that, if they obtained a recovery for the class, their expenses would be reimbursed and they would receive fees from the fund recovered.

In connection with the Settlement, the Court will award Class Counsel reasonable attorneys' fees and expenses out of the Settlement Fund. If you are a Class Member and receive an award from the Settlement Fund, you will not owe any fees or expenses to the lawyers who have represented you as part of the Class. The attorneys' fees and expenses of Class Counsel, as awarded by the Court, will be paid out of the Settlement Fund and only if and after the Settlement has been approved by the Court.

As is routine in class action cases, Class Counsel will file with the Court a motion for an award of attorneys' fees and litigation expenses already incurred as well as the fees and expenses that will be incurred during the four-year term of the Settlement. In its motion, Class Counsel will request that the Court award them the costs they have incurred not to exceed $900,000, plus attorneys' fees for the work performed and results achieved to date in the amount of $6.5 million, plus $500,000 in total for future work they will perform monitoring the Agreement over its four-year term.

Costs of providing notice to the Class will also be paid from the $33 million Settlement Fund.

### 10. Payments to Named Plaintiffs

The Named Plaintiffs may participate in the class monetary award by filing a claim form like any other Class member.

In addition, Class Counsel will ask the Court to grant service payments to Named Plaintiffs Renee Amochaev, Deborah Orlando, and Kathryn Varner in the amount of $50,000.00, and to Named Plaintiff Ivy So in the amount of $35,000.00. The proposed awards would recognize the extraordinary service that the Named Plaintiffs provided here, including for their participation in the prosecution and

20

settlement of this case.  This participation included each Named Plaintiff preparing for and then being deposed for three days, participating in responding to discovery requests, assisting counsel in developing strategy, and providing input into settlement discussions and the ultimate Settlement Agreement.  Named Plaintiffs Amochaev, Orlando and Varner each joined the case at its inception (Plaintiff So joined one and one-half years later), participated in the initial press conference, and attended one or more mediation sessions with Smith Barney.  All Named Plaintiffs reviewed the drafts of the Settlement Agreement and provided input.

Unlike other Class Members, each Named Plaintiff will execute a broader, general release of all potential claims against Smith Barney and will dismiss their administrative charges of discrimination. The Named Plaintiffs will also receive payment for their non-class claims, which they will be required to release in addition to releasing class claims under the Class Member Release. Plaintiffs' non-class claims include claims for race discrimination, age discrimination, and non-economic damages arising from sexual harassment.  The payment for these claims will be determined by the Claims Administrator based upon a review of the factual record. In no event will the total of all such non-class awards exceed $550,000.00.   These payments will come from the $33 million Settlement Fund, though it is expected that interest earned on the Settlement Fund will pay for all or virtually all of the non-class payments and service awards of the Named Plaintiffs.

## 11. **Getting More Information**

If you have further questions or are still not sure whether you are included, you can get free help at http://www.genderlawsuitagainstsmithbarney.com or by calling or writing to Class Counsel in this case at the contact numbers/address listed in paragraph 9.

This Notice contains only a summary of the terms of the Settlement, the provisions of the releases and related matters.  For further information, the Settlement Agreement (which includes the complete terms of the Settlement), the Claim Form, the Release, and numerous other documents connected with the Settlement are available for review and/or downloading on the web at: http://www.genderlawsuitagainstsmithbarney.com or can be viewed in hard copy in the Office of the Clerk of the United States District Court, Northern District of California, 450 Golden Gate Avenue, San Francisco, CA  94102. Other orders that the Court may issue from time to time regarding the administration of the Consent Decree will also be on file with the Court and some will be available on the web at http://www.genderlawsuitagainstsmithbarney.com.

**Again, the important deadlines are:**

> **Last Day To Submit A Claim Form: September 17, 2008**

> **Last Day To "Opt Out" Of The Settlement Class: July 7, 2008**

> **Last Day To Object To The Settlement: July 7, 2008**

PLEASE DO NOT CALL OR CONTACT THE COURT, THE OFFICE OF THE CLERK OF COURT, OR SMITH BARNEY WITH QUESTIONS REGARDING THIS NOTICE.

Dated: _____, 2008 _____

                              The Honorable Phyllis J. Hamilton
                              United States District Judge

## CLAIM FORM

### AMOCHAEV, ET AL. V. SMITH BARNEY

**IMPORTANT:**  Your Claim Form <u>MUST</u> be returned <u>POSTMARKED</u> by September 17, 2008. Enclosed is a self-addressed envelope for returning a claim form.

A.       INSTRUCTIONS.

1.       It is important to read and follow these instructions carefully, as well as those contained on the Explanation of Claims Procedure enclosed with this Claim Form.  Failure to follow these instructions may result in your losing benefits to which you might otherwise be entitled.

2.       If you do not return this Claim Form postmarked by September 17, 2008, your claim will be rejected and you will lose all rights to receive any money from this settlement.  You must mail the Claim Form to

**Amochaev, et al. v. Smith Barney Claims Administrator**
**P.O. Box 10564**
**Tallahassee, FL  32302-2564**

**Telephone: (866) 854-4175**

3.       If you are a woman who was employed as a Financial Advisor (formerly known as a Financial Consultant) in (i) the United States branches of Smith Barney's retail brokerage division at any time from August 30, 2003 through March 1, 2008 or (ii) the California branches of Smith Barney's retail brokerage division at any time from June 25, 2003 through March 1, 2008, you will qualify to participate in a monetary award if you complete and submit answers to Questions 1-12 in Section B below. The monetary award will be based on your weeks worked during the applicable time period set forth in this paragraph. If applicable, you may also submit a response to Section C for additional credit, though you are not required to respond to this Section to participate.

4.       You must sign, under penalty of perjury, and date the Claim Form.

5.       You may use an additional page or pages of paper to answer these questions, if necessary.

- 1 -

B.     PERSONAL INFORMATION (Required)

1.     _____

      Name  (First, Middle, Last)

2.     _____

      Street Address                 Apartment Number

3.     _____    _____  _____

      City                 State       Zip Code

4.     _____

      Social Security Number

5.     _____

            E-mail Address

6.     _____  _____

            Work Phone Number          Best Time to Call

7.     _____  _____

            Home Phone Number         Best Time to Call

8.     _____  _____

            Cell Phone Number          Best Time to Call

9.     _____

            Phone Number of Relative or Other Contact (Optional)

10.     _____

            Date of Birth

11.     Please list any other name you used while employed at Smith Barney and the dates when you used each name:

      _____  _____

      Name                       Date Range

      _____  _____

      Name                       Date Range

12.     I am:

      ____   Female

- 2 -

C.    OPTIONAL DESCRIPTION OF TERMINATION/CONSTRUCTIVE
      DISCHARGE CLAIM (If any)

1.    Termination/Constructive Discharge

a.    Were you terminated or forced to quit due to your gender?

☐    Yes              ☐    No

b.    If you answered yes to question 1a, please add any facts that you
      think support your answer:

_____

_____

_____

*If you answered yes to question 1a and provided supporting detail
in question 1b, you may receive up to 50 additional points for your
answers. The points will be provided based on the severity of
harm (such as emotional or economic harm) you suffered. Please
give examples. You may, but are not required to, provide
supporting documentation.*

D.    SIGNATURE OF CLAIMANT (Required)

I, _____, declare under penalty of perjury that the
information and facts I have stated in this Claim Form are true and accurate to the best of my
personal knowledge. I understand that making a knowingly false statement may subject me to
prosecution for perjury.

Date: _____         _____
                                       Signature of Claimant

Your Claim Form must be postmarked on or before _____.
A self-addressed envelope has been enclosed for returning the Claim Form. This Claim Form
must be mailed to:

Amochaev, et al. v. Smith Barney Claims Administrator

P.O. Box 10564
Tallahassee, FL  32302-2564

- 3 -

# Exhibit B

## REVISED RELEASE AND INDEMNIFICATION AGREEMENT
## (CLASS MEMBERS, EXCLUDING NAMED PLAINTIFFS)

        In consideration of my receipt of a court-approved monetary distribution from the Settlement Fund in *Amochaev, et al.* v. *Citigroup Global Markets, Inc. d/b/a Smith Barney*, Case No. C-05-1298, I hereby agree to be bound by the terms of this Release and Indemnification Agreement (the "Agreement"), as follows:

## I.      DEFINITIONS

        Unless otherwise specified in this Agreement, the terms used herein shall have the same meanings as those set forth in the Settlement Agreement.

## II.     LIMITED RELEASE OF CLAIMS

        I hereby waive, release and discharge Citigroup Global Markets Inc., d/b/a Smith Barney ("Smith Barney"), including its officers, directors, subsidiaries, affiliates, predecessors, successors, fiduciaries, insurers, employees, attorneys and agents ("Released Parties"), from any and all claims, known and unknown, that I have or may have arising at any time on or before the date of preliminary settlement approval, for gender discrimination against the Released Parties, with the exception of claims for non-economic damages (such as emotional pain, distress, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-economic losses) that arise from sexual harassment (as that term is defined in 29 C.F.R. § 1604.11(a)). By way of example only, and without any intent to limit the scope of the preceding release, this release would bar a claim for loss of compensation of any type or description (including but not limited to commissions, salary, bonuses, deferred compensation and incentive awards) arising from or relating to any type of sex or gender discrimination (including but not limited to sexual harassment), but would not bar a claim of emotional distress, costs of medical treatment, or other such non-economic compensatory damages arising from or related to sexual harassment. I understand that my release includes all related claims for monetary damages, injunctive, declaratory or equitable relief, and costs and attorneys' fees, whether arising under Title VII of the Civil Rights Act of 1964, as amended, or any other federal, state, local or common laws or regulations.

        I understand that my release does not include other claims of discrimination such as claims of race, age, or national origin discrimination, or claims arising under the Fair Labor Standards Act or the Employment Retirement Income Security Act.

## III.    INDEMNIFICATION

        I understand that I am responsible for payment of any and all federal, state or local taxes (excluding the employer share of employment taxes and unemployment taxes and excluding amounts properly withheld from the distributions) resulting from or attributable to the distributions that I receive. Accordingly, I agree to indemnify and hold harmless the Released Parties, Class Counsel, and the Depository Bank from any tax liability, including penalties and interest and costs of any proceedings. I further agree to

indemnify and hold harmless the Claims Administrator and Trustee of the Settlement Fund from any tax liability, including penalties and interests and costs of any proceedings, that is attributable to my own acts or omissions. In the event a tax liability arises with respect to my monetary award that is not attributable to my own acts or omissions, I agree to indemnify and hold harmless the Claims Administrator and Trustee of the Settlement Fund from any tax liability only to the extent of the taxes due and payable, but not with respect to penalties and interest, or the costs of any proceedings related to such tax liability.

## IV.    OTHER AGREEMENTS AND REPRESENTATIONS

A.    <u>Confidentiality</u>.  I agree to keep the amount of any and all distributions I receive from the Settlement Fund strictly confidential to the fullest extent permitted by law, except that I may disclose the same to my attorneys, tax advisors and immediate family members.

B.    <u>Ownership of Claims</u>.  I represent and warrant that I have not assigned or transferred any claim I am purporting to release, nor have I attempted to do so.

C.    <u>Entire Agreement</u>.  This Agreement may not be modified in any manner, except by a writing signed by both me and an authorized Smith Barney attorney.  I acknowledge that Smith Barney has made no representations or promises to me, other than those in or referred to by this Agreement and the Settlement Agreement.

D.    <u>Successors and Assigns</u>.  This release binds my heirs, administrators, representatives, executors, successors, and assigns.

E.    <u>Interpretation</u>.  This Agreement shall be construed as a whole according to its fair meaning.  Unless the context indicates otherwise, the term "or" shall be deemed to include the term "and" and the singular or plural number shall be deemed to include the other.  This Agreement shall be governed by the statutes and common law of the State of California (excluding any that mandate the use of another jurisdiction's laws).

F.    <u>Knowing and Voluntary Waiver and Release of Claims</u>.   I understand and agree that:

1.    I am entering into this Agreement knowingly and voluntarily;

2.    I understand the terms of this Agreement;

3.    I have been advised of my right to consult with an attorney prior to signing this Agreement; and

756274.3

4.      I have had a sufficient amount of time to consider this Agreement before signing it.


AGREED:

_____

[SIGNATURE]


_____

[PRINT NAME]


_____

DATE

Exhibit C

## REVISED GENERAL RELEASE AND INDEMNIFICATION AGREEMENT
### (NAMED PLAINTIFFS)

In consideration of my receipt of a court-approved monetary distribution from the Settlement Fund in *Amochaev, et al*. v. *Citigroup Global Markets, Inc. d/b/a Smith Barney*, Case No. C-05-1298 (the "Litigation"), I hereby agree to be bound by the terms of this General Release and Indemnification Agreement (the "Agreement"), as follows:

### I.     DEFINITIONS

Unless otherwise specified in this Agreement, the terms used herein shall have the same meanings as those set forth in the Settlement Agreement.

### II.     COMPLETE GENERAL RELEASE OF CLAIMS

I hereby waive, release, discharge, and covenant not to sue Citigroup Global Markets Inc., d/b/a Smith Barney ("Smith Barney"), including its officers, directors, subsidiaries, affiliates, predecessors, successors, fiduciaries, insurers, employees, attorneys and agents ("Released Parties"), from and with respect to any and all actions, causes of action, suits, liabilities, claims, and demands whatsoever, and each of them, whether known or unknown, from the beginning of time until the date of preliminary settlement approval.  I intend this release to be general and comprehensive in nature and to release all claims and potential claims against the Released Parties to the maximum extent permitted by law.  Claims I am releasing include specifically, by way of description, but not by way of limitation, any and all claims: (i) arising out of or relating in any way to the alleged facts, circumstances and occurrences underlying the allegations of violations of Title VII and similar state and local laws that were asserted or could have been asserted in the Litigation by me or on my behalf; (ii) arising out of or relating in any way to the alleged facts, circumstances and occurrences underlying the allegations of violations of Title VII and similar state and local laws that were asserted or could have been asserted by me or on my behalf in a charge of discrimination filed against the Released Parties with the EEOC and/or state agencies; (iii) relating to the termination of my employment (if applicable); (iv) arising out of or in any way related to any federal, state, or local law prohibiting discrimination on the basis of age, race, color; religion, disability, sex, national origin, or citizenship, including, without limitation, claims under Title VII, the Employee Retirement Income Security Act, the Age Discrimination in Employment Act, and the Americans With Disabilities Act or any other similar statutes whatever the country of enactment; and (v) arising out of or in any way related to any transactions, occurrences, acts, statements, disclosures, or omissions occurring prior to the date of preliminary settlement approval.   I understand that this release includes all related claims for monetary damages, injunctive, declaratory or equitable relief, and costs and attorneys' fees, whether arising under Title VII or any other federal, state, local or common laws or regulations.

## III. ADEA WAIVER.

I recognize that in addition to all other claims being released herein, I am releasing claims for age discrimination under the Age Discrimination in Employment Act. Accordingly, I have the right to reflect on this Agreement for a period of twenty-one (21) days before executing it, and I have an additional seven (7) days after executing it to revoke it under the terms of the Older Workers Benefit Protection Act. This Agreement will become effective and enforceable seven (7) days following the execution of this Agreement, unless it is revoked during the seven (7) day period, in which case this Agreement will be ineffective and unenforceable. By my signature below, I represent and warrant that I have been advised of these rights, that I have been advised that I have a right to consult with an attorney, and that I have discussed them with my attorney to the fullest extent I thought necessary. I intend this to be a fully binding and enforceable release of all claims, including claims under the Age Discrimination in Employment Act.

## IV. INDEMNIFICATION

I understand that I am responsible for payment of any and all federal, state or local taxes (excluding the employer share of employment taxes and unemployment taxes and excluding amounts properly withheld from the distributions) resulting from or attributable to the distributions that I receive. Accordingly, I agree to indemnify and hold harmless the Released Parties, Class Counsel, and the Depository Bank from any tax liability, including penalties and interest and costs of any proceedings. I further agree to indemnify and hold harmless the Claims Administrator and Trustee of the Settlement Fund from any tax liability, including penalties and interests and costs of any proceedings, that is attributable to my own acts or omissions. In the event a tax liability arises with respect to my monetary award that is not attributable to my own acts or omissions, I agree to indemnify and hold harmless the Claims Administrator and Trustee of the Settlement Fund from any tax liability only to the extent of the taxes due and payable, but not with respect to penalties and interest, or the costs of any proceedings related to such tax liability.

## V. OTHER AGREEMENTS AND REPRESENTATIONS

A.    Confidentiality. I agree to keep the amount of any and all distributions I receive from the Settlement Fund strictly confidential to the fullest extent permitted by law, except that I may disclose the same to my attorneys, tax advisors and immediate family members.

B.    Pursuit of Released Claims. Except for the Litigation, and any administrative charges filed with respect to the claims asserted therein, I represent and warrant that I have not filed or caused to be filed any lawsuit or complaint with respect to any claim that I am releasing herein, and I promise never to file or prosecute a lawsuit or complaint based on such claims. I promise never to seek any damages, remedies, or other relief for myself personally (any right to which I hereby waive) by filing or prosecuting a charge with any administrative agency with respect to any such claim.

756270.3

C.      <u>Ownership of Claims</u>.  I represent and warrant that I have not assigned or transferred any claim I am purporting to release, nor have I attempted to do so.

D.      <u>Entire Agreement</u>.  This Agreement may not be modified in any manner, except by a writing signed by both me and an authorized Smith Barney attorney. I acknowledge that Smith Barney has made no representations or promises to me, other than those in or referred to by this Agreement and the Settlement Agreement.

E.      <u>Successors and Assigns</u>.  This release binds my heirs, administrators, representatives, executors, successors, and assigns.

F.      <u>Interpretation</u>.  This Agreement shall be construed as a whole according to its fair meaning.  Unless the context indicates otherwise, the term "or" shall be deemed to include the term "and" and the singular or plural number shall be deemed to include the other.  This Agreement shall be governed by the statutes and common law of the State of California (excluding any that mandate the use of another jurisdiction's laws).

AGREED:

_____
[SIGNATURE]


_____
[PRINT NAME]


_____
DATE

756270.3