Daniel C. Girard (State Bar No. 114826)
Dena C. Sharp (State Bar No. 245869)
Elizabeth A. Kramer (State Bar No. 293129)
GIRARD GIBBS LLP
601 California Street, 14th Floor
San Francisco, California 94108
Telephone: (415) 981-4800
Facsimile: (415) 981-4846

*Counsel for Class Representative
Michael Devine*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| IN RE: HIGH-TECH EMPLOYEE ANTITRUST LITIGATION<br><br>THIS DOCUMENT RELATES TO:<br><br>ALL ACTIONS | Master Docket No. 11-CV-2509-LHK<br><br>**CLASS ACTION**<br><br>**CLASS REPRESENTATIVE MICHAEL DEVINE'S MEMORANDUM IN OPPOSITION TO MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Judge: Hon. Lucy H. Koh<br>Courtroom: 8, 4th Floor<br>Date: June 19, 2014<br>Time: 1:30 p.m. |

**TABLE OF CONTENTS**

I.   Introduction ........................................................................................................................ 1

II.  The Court Should Consider Mr. Devine's Opposition to the Proposed Settlement ............ 2

III. Mr. Devine Opposes the Proposed Settlement Because It Is Insufficient to Fairly Compensate Class Members and Deter Future Conspiracies to Illegally Fix Wages ......... 3

IV.  The Court Should Not Defer Close Scrutiny of the Proposed Settlement .......................... 7

V.   Conclusion ....................................................................................................................... 10

# TABLE OF AUTHORITIES

**Cases**

*Acosta v. Trans Union, LLC*
   243 F.R.D. 377 (C.D. Cal. 2007) .................................................................................................. 5

*Blair Foods, Inc. v. Ranchers Cotton Oil*
   610 F.2d 665 (9th Cir. 1980) ....................................................................................................... 4

*Charron v. Pinnacle Group N.Y. LLC*
   874 F. Supp. 2d 179 (S.D.N.Y. 2012)
   *aff'd sub nom Charron v. Weiner*, 731 F.3d 241 (2d Cir. 2013) ............................................... 2

*Custom LED, LLC v. eBay, Inc.*
   2013 WL 6114379 (N.D. Cal. Nov. 20, 2013) ............................................................................. 9

*Ficalora v. Lockheed Cal. Co.*
   751 F.2d 995 (9th Cir. 1985) ....................................................................................................... 2

*Fraley v. Facebook, Inc.*
   2012 WL 5838198 (N.D. Cal. Aug. 17, 2012) ............................................................................. 8

*Fraley v. Facebook, Inc.*
   2012 WL 6013427 (N.D. Cal. Dec. 3, 2012) ............................................................................... 9

*Illinois Brick Co. v. Illinois*
   431 U.S. 720 (1977) ..................................................................................................................... 6

*In re General Motors Corp. Pick–Up Truck Fuel Tank Products Liability Litig.*
   55 F.3d 768 (3d Cir. 1995) .......................................................................................................... 8

*In re High Fructose Corn Syrup Antitrust Litig.*
   295 F.3d 651 (7th Cir. 2002) ....................................................................................................... 4

*In re Motor Fuel Temperature Sales Practices Litig.*
   286 F.R.D. 488 (D. Kan. 2012) ................................................................................................... 9

*In re Nat'l Football League Players' Concussion Injury Litig.*
   961 F. Supp. 2d 708 (E.D. Pa. 2014) .......................................................................................... 9

*In re New Motor Vehicles Canadian Export Antitrust Litig.*
   236 F.R.D. 53 (D. Me. 2006) ...................................................................................................... 9

*In re Scrap Metal Antitrust Litig.*
   527 F.3d 517 (6th Cir. 2008) ....................................................................................................... 6

*In re TD Ameritrade Accountholder Litig.*
    266 F.R.D. 418 (N.D. Cal. 2009) .................................................................................... 3

*In re Urethane Antitrust Litig.*
    2013 WL 2097346 (D. Kan. May 15, 2013) ................................................................. 6

*In re Zoran Corp. Derivative Litig.*
    2008 WL 941897 (N.D. Cal. Apr. 7, 2008) ................................................................... 9

*Lane v. Facebook*
    696 F.3d 811 (9th Cir. 2012) ......................................................................................... 3

*Martin v. Cargill, Inc.*
    295 F.R.D. 380 (D. Minn. 2013) ................................................................................... 8

*Mayor and City Counsel of Baltimore, MD v. Citigroup, Inc.*
    709 F.3d 129 (2d Cir. 2013) .......................................................................................... 4

*Pfizer, Inc. v. Gov't of India*
    434 U.S. 308 (1978) ...................................................................................................... 6

*Protective Committee for Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson*
    390 U.S. 414 (1968) ...................................................................................................... 3

*Tijero v. Aaron Brothers, Inc.*
    2013 WL 6700102 (N.D. Cal. Dec. 19, 2013) .............................................................. 9

**Statutes**

15 U.S.C. § 15(a) .................................................................................................................. 3

**Other Authorities**

American Law Institute, Principles of the Law of Aggregate Litigation (2010) ........................ 7, 8

Federal Judicial Center, Managing Class Action Litigation:
    A Pocket Guide for Judges 25 (3d ed. 2010) ...................................................................... 8, 9

Manual for Complex Litigation (Fourth) (2004) ...................................................................... 2, 9

## I. Introduction

Michael Devine is one of five class representatives appointed by the Court in its class certification order. He submits this memorandum in opposition to the proposed settlement with Adobe, Apple, Google, and Intel for $324.5 million. Mr. Devine believes the proposed settlement is insufficient, considering the strength of the evidence and the defendants' ability to pay a much greater amount. He considers the recovery inadequate to compensate class members for their damages and deter similar conduct in the future, and urges the Court to reject the proposed settlement.

Mr. Devine recognizes that Class Counsel have capably litigated this matter and that settlement of complex disputes is generally favored. If this settlement is approved, however, the defendants will close the book on a four year course of conduct during which they colluded among themselves to restrain the salaries of tens of thousands of workers like Mr. Devine. The defendants went to great lengths to create and enforce explicit agreements not to recruit each other's technical employees, to notify each other when making an offer to another's employees, and to refrain from making counteroffers when one company made an offer to another's employee. The Court has repeatedly commented on the strength of evidence. Yet the settlement proponents propose to release class members' claims in exchange for a payment that represents an insignificant fraction of the cash available to the defendants and a small percentage of the damages plaintiffs have suffered.

These defendants are among the most powerful and influential corporations in the world. Class members, by their work during the time period at issue in this litigation, made it possible for the defendants' shareholders and corporate officers to enjoy extraordinary financial rewards. There is no dispute that the defendants colluded to limit competition in the market for the services provided by class members. This action represents the only means by which the defendants can be held accountable and class members compensated. To ensure that class members have their day in court or at least a chance at a greater recovery, Mr. Devine asks the Court to reject the proposed settlement.

**II. The Court Should Consider Mr. Devine's Opposition to the Proposed Settlement**

As a former senior computer scientist at Adobe, Mr. Devine was directly impacted by the defendants' conspiracy to fix the wages they paid their technical employees. He was appointed by the Court to serve as a class representative in this case. ECF No. 531 at 17-18. He has been actively involved in the litigation, and assisted his attorneys with the investigation, provided feedback on evidence, attended key hearings, and participated in mediation sessions. ECF No. 720. He is knowledgeable about the theory of the case, the applicable law, and the evidence, and he appreciates the risks and benefits of proceeding to trial. The Court should therefore consider his opposition as part of its review of the proposed settlement.[1]

The Manual for Complex Litigation recommends that courts hear from the named plaintiffs at preliminary approval, and advises that "[j]udges should be open to the views of those who may be affected by the settlement." Manual for Complex Litigation (Fourth) §§ 21.632 & 13.14 (2004) ("MCL"). While the fact that a class representative opposes a settlement does not require the court to withhold approval, the Court should consider his objection. *See Ficalora v. Lockheed Cal. Co.,* 751 F.2d 995, 996 (9th Cir. 1985) (remanding for the district court "to consider [the class representative's] objections in detail"); *see also* MCL § 21.642 (suggesting that "[t]he court should examine closely any opposition by class representatives to a proposed settlement"); *Charron v. Pinnacle Group N.Y. LLC*, 874 F. Supp. 2d 179, 190-91 (S.D.N.Y. 2012) (noting that while it was not required to disapprove a settlement because named plaintiffs opposed it, the court had "carefully considered their objections"), *aff'd sub nom Charron v. Weiner*, 731 F.3d 241 (2d Cir. 2013)).

---

[1] Before retaining his present counsel, Mr. Devine sent a letter to the Court dated May 11, 2014 expressing his concerns with the proposed settlement. Mr. Devine's position in regards to the settlement is as set forth in this memorandum in opposition to the proposed settlement, which supersedes his May 11, 2014 letter.

### III. Mr. Devine Opposes the Proposed Settlement Because It Is Insufficient to Fairly Compensate Class Members and Deter Future Conspiracies to Illegally Fix Wages

Mr. Devine opposes the proposed settlement because he believes the $324.5 million settlement fund, while a large number, is insufficient to fairly compensate class members and deter similar unlawful conduct in the future. His view is based on a comparison of the strength of the case relative to the risks of continued litigation. *See Lane v. Facebook*, 696 F.3d 811, 823 (9th Cir. 2012); *see also In re TD Ameritrade Accountholder Litig.*, 266 F.R.D. 418, 422 (N.D. Cal. 2009) ("Basic to [the process of deciding whether a proposed settlement is fair, reasonable and adequate] … is the need to compare the terms of the compromise with the likely rewards of litigation.") (alterations in original) (quoting *Protective Committee for Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424-25 (1968)).[2] Dr. Edward D. Leamer, plaintiffs' damages expert, calculates the class members' total damages as $3.05 billion. ECF No. 856-10. Were plaintiffs to prevail at trial, and the jury to accept their damage model, the recovery would be trebled to $9.15 billion. 15 U.S.C. § 15(a). After subtracting the $20 million received from the settlement with Lucasfilm, Pixar and Intuit, class members could therefore recover an average of $141,331 if plaintiffs prevail at trial.[3] The proposed $324.5 million settlement is slightly more than 10% of the damages plaintiffs could expect to receive at trial before trebling and 3.6% of class members' potential maximum recovery of $9.15 billion. Under the proposed settlement, after subtracting attorneys' fees, expenses, service awards, and

---

[2] The settling parties have not included the likely recoveries on a per plaintiff basis in the motion for preliminary approval. This district advises parties seeking preliminary approval of a proposed settlement to address "[t]he likely recovery per plaintiff under the terms of the settlement and the potential recovery if plaintiffs were to prevail on each of their claims." Procedural Guidance for Class Action Settlements, available at http://www.cand.uscourts.gov/ClassActionSettlementGuidance (last visited June 4, 2014).

[3] These figures are based on information from Dr. Leamer's December 11, 2013 report. He reports that there are 64,613 class members and that the total class damages are $3,050,602,267. ECF No. 856-10. Once trebled, the total possible recovery at trial is $9,151,806,801. After subtracting the $20 million settlement with Lucasfilm, Pixar and Intuit, the average recovery per class member is $141,331.

MEMORANDUM IN OPPOSITION TO MOTION
FOR PRELIMINARY APPROVAL OF CLASS
ACTION SETTLEMENT: NO. 11-CV-2509-LHK

administrative costs, class members will receive an average of $3,572, or 2.5% of the average amount they could recover if they won at trial.[4]

Mr. Devine believes the settlement discount on class members' potential recovery is excessive under the circumstances of this case. The Court has certified the class, denied motions for summary judgment and a motion to exclude the testimony of plaintiffs' expert, and the parties have completed extensive fact and expert discovery that has resulted in substantial evidence supporting plaintiffs' claims. *See* Motion at 3-6; ECF Nos. 531, 771, 788. The Court has already seen much of plaintiffs' evidence and found it persuasive. In granting plaintiffs' motion for class certification, the Court discussed the plaintiffs' evidence at length, described it as "voluminous," "comprehensive," "extensive," "copious," and "compelling," and observed that "[t]his Court could not identify a case at the class certification stage with the level of documentary evidence Plaintiffs have presented in the instant case." ECF No. 531 at 19 n. 7, 25, 32, 51, 65, 66, 68, 69, 70, 74, 75, 83, 84, quote at 69. The Court remarked that plaintiffs had presented "substantial evidence of Defendants' antitrust violations" in support of their motion. *Id.* at 25.

The Ninth Circuit has recognized that conspiracies, by their very nature, are "rarely susceptible of direct proof." *Blair Foods, Inc. v. Ranchers Cotton Oil*, 610 F.2d 665, 671 (9th Cir. 1980); *see also Mayor and City Counsel of Baltimore, MD v. Citigroup, Inc.*, 709 F.3d 129, 136 (2d Cir. 2013) ("smoking gun" evidence like "a recorded phone call in which two competitors agreed to fix prices at a certain level" "can be hard to come by"); *In re High Fructose Corn Syrup Antitrust Litig.*, 295 F.3d 651, 662 (7th Cir. 2002) ("most cases are constructed out of a tissue of [ambiguous] statements and other circumstantial evidence"). But in this case the defendants memorialized their unlawful agreements in email exchanges and "do not call" lists, and similarly documented their efforts to enforce the agreements. ECF No. 531 at 25-31. After analyzing this evidence in considering plaintiffs' motion for class certification, the Court

---

[4] The settlement amount per class member was calculated after subtracting the following from the total settlement amount: the attorneys' fees class counsel intend to seek ($81,125,000), class counsel's expenses ($1,200,000), the service awards to the class representatives ($400,000), and the estimated costs of notice and administration ($160,000).

concluded that "Defendants cannot rebut the voluminous documentary evidence from Defendants' internal files and the expert reports that rely on this documentary evidence." *Id.* at 65.

The Court also extensively analyzed and ultimately approved Dr. Leamer's methodology. ECF Nos. 382, 531.  In denying the defendants' motion to exclude Dr. Leamer's testimony, the Court found that Dr. Leamer's methodology was "'statistically robust,' supported by the economic literature, and 'capable of calculating classwide damages.'" ECF No. 788 at 47-48. The Court noted the "comprehensive documentary record [that] strongly supports the Plaintiffs' experts' theories" as well as the "extensive documentary evidence that supports Plaintiffs' theory of impact." ECF No. 531 at 10 n.7, 69.  On summary judgment, after another extensive review of the documentary evidence, the Court said that "Plaintiffs have satisfied their burden of providing 'specific evidence tending to show that [defendants were] not engaging in permissible competitive behavior.'" ECF No. 771 at 3.

Plaintiffs are now on the threshold of trial, armed with abundant evidence of liability and a tested damages model.  The question for the Court in evaluating whether this settlement warrants preliminary approval is therefore whether the 2.5% recovery appropriately quantifies plaintiffs' risk of losing at trial.  In other words, is there a 97.5% chance that plaintiffs will lose or recover less than $324.5 million at trial?  Class Counsel point out the jury verdict against Toshiba in *In re TFT-LCD (Flat Panel) Antitrust Litigation*, Case No. M07-1827-SI (N.D. Cal.), where the plaintiffs recovered 10% of their damages.  They are correct that there is always a possibility that, despite the strength of a case, the plaintiffs will lose at trial or recover only a small portion of their damages.  Mr. Devine's position is that trial is a risk worth taking when the evidence is strong and the amount the class could recover far exceeds the amount defendants have offered to pay in settlement.  *See Acosta v. Trans Union, LLC*, 243 F.R.D. 377, 391 (C.D. Cal. 2007) ("Were Plaintiffs' claims … grounded in such a tenuous basis that they were hopelessly doomed to fail in court, such a colossal discrepancy between their apparent litigation value and the value of the Settlement may be acceptable.  That is not true here.").

1  Verdicts in other antitrust class actions show that while jury trials are inherently
2  unpredictable, plaintiffs have prevailed in similarly complex cases.  In *In re Urethane Antitrust*
3  *Litigation*, the plaintiffs sought $497 million in damages and on February 20, 2013, the jury
4  returned a verdict for plaintiffs of $400 million, which the court trebled to $1.2 billion.  2013 WL
5  2097346, at *7 (D. Kan. May 15, 2013); *see also* No. 2:04-md-1616-JWL-JPO (D. Kan.), ECF
6  Nos. 2799, 2880.  In *In re Vitamin C Antitrust Litigation*, the plaintiffs sought $54.1 million in
7  damages, which the jury awarded in full; the court trebled the award to $162.3 million.  Case No.
8  1:06-md-1738-BMC-JP (E.D.N.Y.), ECF Nos. 507-1 at 15, 675, 676.  And in *In re Scrap Metal*
9  *Antitrust Litigation*, the plaintiffs sought $20.9 million in damages, and the jury returned a verdict
10 for the plaintiffs in the amount of $11.5 million, which the court trebled to $34.5 million.  527
11 F.3d 517, 524, 533 (6th Cir. 2008); *see also* No. 1:02-cv-00844-CAB (N.D. Ohio), ECF Nos.
12 636, 640.

13  Mr. Devine also believes that the proposed settlement will not sufficiently deter similar
14 unlawful conduct in the future.  The Supreme Court has said that private civil antitrust suits serve
15 two purposes:  to compensate the victims of antitrust violations and to "deter violators and
16 deprive them of 'the fruits of their illegality.'"  *Pfizer, Inc. v. Gov't of India*, 434 U.S. 308, 314
17 (1978) (quoting *Illinois Brick Co. v. Illinois*, 431 U.S. 720, 746 (1977)).  The proposed settlement
18 amounts to 0.14% of the settling defendants' combined cash on hand and 0.11% of their
19 combined 2013 revenues, according to their 2013 Form 10-K reports.  *See* Apple 2013 10-K at 24
20 (Oct. 30, 2013) ($146,761,000,000 in cash and marketable securities on hand; 2013 net sales of
21 $170,910,000,000); Google 2013 10-K at 24 (Feb. 12, 2014) ($58,717,000,000 in cash and
22 marketable securities on hand; 2013 revenue of $59,825,000,000); Adobe 2013 10-K at 34 (Jan.
23 21, 2014) ($3,173,752,000 in cash and marketable securities on hand; 2013 revenue of
24 $4,055,240,000); Intel 2013 10-K at 27, 40 (Feb. 14, 2014) ($20,087,000,000 in cash and
25 marketable securities on hand; 2013 revenue of $52,708,000,000).  The $324.5 million settlement
26 does not deprive these defendants "of the fruits of their illegality"—if anything, it may provide
27 comfort that further antitrust violations can be settled for a fraction of their value, even in the face
28 of compelling evidence of liability and damages.

Given the strength of the evidence, Mr. Devine submits that the amount the defendants have agreed to pay to settle this case is not enough. The New York Times called the proposed settlement "chump change," and asked, "Why settle now for any amount less than a fortune?"[5] Bloomberg Businessweek commented, "The first point that demands underscoring is that Jobs, Schmidt, et al did kind of get away with it" because "[t]he $324.5 million Apple, Google, Intel, and Adobe agreed to pay works out to about 0.4 percent of their combined total revenue for the most recent quarter."[6] While press accounts are no substitute for legal analysis, Mr. Devine is not alone in believing that the settlement does sufficiently reflect the strength of the evidence.

## IV. The Court Should Not Defer Close Scrutiny of the Proposed Settlement

Courts have historically taken a deferential approach to preliminary approval, postponing close scrutiny of proposed settlements until final approval, after notice has gone out and class members have had an opportunity to lodge objections. But this case involves some of the most prominent companies in America, who are accused of conspiring to fix the wages of the employees whose talent and efforts led to the development of transformative technological innovations. The evidence against them is comprehensive and compelling, and includes the kind of "smoking gun" evidence that is rarely uncovered in antitrust litigation. The case is also highly visible, and is being followed closely by local and trade publications as well as national media like the New York Times and CNN. It will undoubtedly impact the employment practices of other companies and become a benchmark reference for future settlements.

There is also a trend towards greater judicial involvement at the preliminary approval stage. The American Law Institute and other authorities recommend that courts take an active role in evaluating the merits of proposed settlements early in the process. *See* American Law Institute, Principles of the Law of Aggregate Litigation § 3.03 cmt. a (2010) ("The court should

---

[5] Available at http://www.nytimes.com/2014/04/25/technology/settlement-silicon-valley-antitrust-case.html?_r=0 (last visited June 4, 2014); http://www.nytimes.com/2014/05/12/technology/plaintiff-maligns-deal-in-silicon-valley-suit.html (last visited June 4, 2014).

[6] Available at http://www.businessweek.com/articles/2014-05-01/tech-hubris-the-silicon-valley-antitrust-hiring-conspiracy (last visited June 4, 2014).

1  articulate any misgivings that it identifies. … In many cases, the court will have had an active role
2  in the case before the proposed settlement and will be in a position to offer the parties meaningful
3  guidance concerning potential pitfalls in the proposal."). The Federal Judicial Center encourages
4  judges to "[b]ring an inquiring mind to the preliminary review hearing and … seek out the
5  information you need to decide whether the settlement is fair, reasonable, and adequate." Federal
6  Judicial Center, Managing Class Action Litigation: A Pocket Guide for Judges 25 (3d ed. 2010)).
7  Critical examination of a proposed settlement is also important because "the class itself typically
8  lacks the motivation, knowledge, and resources to protect its own interests, and because settling
9  counsel for both plaintiff and defendant have little or no incentive to offer information adverse to
10 the settlement." *Id.* at 12.

11         Courts and commentators recognize that by granting preliminary approval, courts can set
12 the case on an inevitable trajectory to final approval. The American Law Institute advises that
13 "[e]ven a preliminary decision favoring the agreement may, as a practical matter, give an
14 unwarranted presumption of correctness to a proposal that the court has not carefully considered,"
15 and "may make a court reluctant at the fairness hearing to reject the settlement, having already
16 given an initial endorsement to the settlement at the preliminary-approval stage." Principles of
17 the Law of Aggregate Litigation § 3.03 cmt. a. In other words, "the Court must be particularly
18 scrupulous because preliminary approval establishes 'an initial presumption of fairness.'" *Martin*
19 *v. Cargill, Inc.*, 295 F.R.D. 380, 383-84 (D. Minn. 2013) (quoting *In re General Motors Corp.*
20 *Pick–Up Truck Fuel Tank Products Liability Litig.*, 55 F.3d 768, 785 (3d Cir. 1995)).

21         Consistent with the guidance from the American Law Institute and Federal Judicial
22 Center, courts in this district and around the country have begun conducting a more rigorous
23 analysis of proposed settlements at preliminary approval. Among other things, these courts
24 consider whether the value of the settlement amount is sufficient when compared to class
25 members' potential recovery at trial and the risks of continued litigation. *See, e.g., Fraley v.*
26 *Facebook, Inc.*, No. C 11-1726 RS, 2012 WL 5838198, at *2-3 (N.D. Cal. Aug. 17, 2012)
27 (evaluating whether the amount of the cy pres payment was adequate and concluding that the
28 motion did not provide adequate support for the conclusion that the amount was a fair estimate of

1  the plaintiffs' potential recovery at trial less "discounts applied for the uncertainties, risks, and

2  costs of litigation"); *In re Zoran Corp. Derivative Litig.*, No. C 06-05503 WHA, 2008 WL

3  941897, at *5-11 (N.D. Cal. Apr. 7, 2008) (comparing the scope of recoverable damages with the

4  value of the proposed settlement to class members, analyzing the strength of the claims, and

5  denying preliminary approval because "the proposed settlement is far too modest"); *see also In re*

6  *Nat'l Football League Players' Concussion Injury Litig.*, 961 F. Supp. 2d 708, 714-15 (E.D. Pa.

7  2014) (denying preliminary approval of a $765 million settlement because of concerns that the

8  settlement amount was insufficient and "in light of my duty to protect the rights of all potential

9  class members"); *In re Motor Fuel Temperature Sales Practices Litig.*, 286 F.R.D. 488, 503-09

10 (D. Kan. 2012) (examining whether proposed settlements with several defendants provided

11 sufficient value to the class members to justify releasing their claims and finding that some did

12 but several did not).

13      By carefully analyzing the proposed settlement now, the Court can provide feedback to

14 the parties about its concerns before the parties incur the expense and delay of disseminating

15 notice. *See In re New Motor Vehicles Canadian Export Antitrust Litig.*, 236 F.R.D. 53, 55-56 (D.

16 Me. 2006) ("Before incurring the expense of widescale notice, it makes sense for a judge to say

17 that a particular settlement has no chance of approval."); *see also* Managing Class Action

18 Litigation 24 ("If you hold back your concerns and reject a settlement at the final fairness hearing,

19 the parties will most likely have to incur the considerable expense of sending new notices of any

20 revised settlement to the class."). The Court's feedback will give the parties "an opportunity to

21 resume negotiations in an effort to remove potential obstacles to court approval." MCL § 21.632;

22 *see also Tijero v. Aaron Brothers, Inc.*, No. C 10-01089-SBA, 2013 WL 6700102, at *1-2 (N.D.

23 Cal. Dec. 19, 2013) (granting preliminary approval to a proposed settlement that was revised by

24 the parties after the denied preliminary approval); *Fraley v. Facebook, Inc.*, No. CV-11-01726

25 RS, 2012 WL 6013427, at *1 (N.D. Cal. Dec. 3, 2012) (same); *Custom LED, LLC v. eBay, Inc.*,

26 No. 12-cv-00350-JST, 2013 WL 6114379, at *1 (N.D. Cal. Nov. 20, 2013) (same).

27

28

**V. Conclusion**

For the reasons set forth above, Class representative Michael Devine respectfully opposes the motion for preliminary approval of the proposed settlement.

Dated: June 5, 2014　　　　　　　　　　　**GIRARD GIBBS LLP**

By:　*/s/ Daniel C. Girard*
　　　　Daniel C. Girard

Daniel C. Girard (State Bar No. 114826)
Dena C. Sharp (State Bar No. 245869)
Elizabeth A. Kramer (State Bar No. 293129)
GIRARD GIBBS LLP
601 California Street, 14th Floor
San Francisco, CA 94108
Telephone: (415) 981-4800
Facsimile: (415) 981-4846

*Counsel for Class Representative Michael Devine*