# ATTACHMENT A

KEKER & VAN NEST LLP
ROBERT A. VAN NEST (SBN 84065)
rvannest@kvn.com
DANIEL PURCELL (SBN 191424)
dpurcell@kvn.com
EUGENE M. PAIGE (SBN 202849)
epaige@kvn.com
JUSTINA SESSIONS (SBN 270914)
jsessions@kvn.com
CODY S. HARRIS (SBN 255302)
charris@kvn.com
635 Battery Street
San Francisco, CA 94111-1809
Telephone:   (415) 391-5400
Facsimile:   (415) 397-7188

Attorneys for Defendant
GOOGLE INC.

[additional counsel listed on signature pages]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| IN RE: HIGH-TECH EMPLOYEE ANTITRUST LITIGATION<br><br>THIS DOCUMENT RELATES TO:<br><br>ALL ACTIONS | Master Docket No. 11-CV-2509-LHK<br><br>**DEFENDANTS' SUPPLEMENTAL BRIEF IN CONNECTION WITH PLAINTIFFS' MOTION FOR APPLICATION OF THE PER SE STANDARD**<br><br>ORAL ARGUMENT REQUESTED<br><br>Judge:   Hon. Lucy H. Koh<br>Date:    December 19, 2014<br>Time:    1:30 p.m.<br>Ctrm:    8 |

I.  **INTRODUCTION AND SUMMARY OF ARGUMENT**

The evidence at trial will demonstrate that the individual "do-not-cold-call" agreements challenged by plaintiffs were in furtherance of or ancillary to collaborations and collaborative relationships and were not anti-competitive in purpose or effect. Indeed, plaintiffs have acknowledged that they will, at trial, have to rebut Defendants' evidence "that they made the individual agreements to facilitate collaboration. . . and not to suppress compensation. . . ." Plaintiffs' Reply Memorandum in Support of Motion for Preliminary Approval of Class Action Settlement (ECF No. 938) at 16-17. Now, in a last-minute effort to avoid that challenge, plaintiffs ask this Court, prior to trial and without reviewing defendants' evidence, to exclude all evidence of defendants' collaborations and to hold that defendants' individual agreements were *per se* unlawful. Plaintiffs' Reply in Support of Motion for Application of the Per Se Standard (ECF No. 988) (hereinafter "Reply") at 10.

Plaintiffs seek to justify their request on the basis of statements made by this Court in its August 8, 2014 Order Denying Plaintiffs' Motion for Preliminary Approval of Settlements with Adobe, Apple, Google and Intel (ECF. No. 974) (hereinafter "Settlement Order") when commenting on the evidence that the Court had reviewed prior to the settlement. Plaintiffs contend that this Court supposedly "has now found" in its Settlement Order that there is *no* evidence linking the alleged do-not-cold-call agreements between the defendants to any collaborative activity. Reply at 10. But the Court could not make a conclusive determination that there "is no evidence" on that or any other issue, because the Court has not yet seen the full evidentiary record. Indeed, had the Court sought to make dispositive determinations on issues of fact in its Settlement Order, its ruling would have been in contravention of well-settled law, as the Ninth Circuit explained in *Officers for Justice v. Civil Service Commission of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982):

> ". . . the settlement or fairness hearing is not to be turned into a trial or rehearsal for trial on the merits. Neither the trial court nor this court is to reach any ultimate conclusions on the contested issues of fact and law which underlie the merits of the dispute. . . ."

Plaintiffs nonetheless ask the Court to find that it *has already decided* that defendants have no evidence that individual do-not-cold-call agreements were related to, or aided, collaborative activities between pairs of defendants.  Reply at 10.  As shown below, *Officers for Justice* prevents plaintiffs from relying on the cited statements in the Court's Settlement Order, which are, in any event, inaccurate and based on an incomplete record.

## II.  ARGUMENT

### A.  Plaintiffs May Not Rely On The Court's Conclusions In The Settlement Order Regarding Defendants' Collaborations And Their Relationship To Non-Solicitation Agreements

Near the close of the Court's Settlement Order, the Court addressed plaintiffs' explanation that the settlement amount was reasonable because, at trial, plaintiffs would "have to rebut Defendants' contentions that the anti-solicitation agreements aided collaborations and were therefore pro-competitive."  Settlement Order at 29.  *See also* Plaintiffs' Reply Memorandum in Support of Motion for Preliminary Approval of Class Action Settlement (ECF No. 938) at 16-17 (acknowledgment by plaintiffs that "Defendants' executives would have testified that they made the individual agreements to facilitate collaboration and membership on one another's board of directors, and not to suppress compensation. . . .  For instance, Adobe would likely argue that its only bilateral agreement was created to facilitate the close technical relationship between Adobe and Apple. . . .").  In response, the Court opined that "there is no documentary evidence that links the anti-solicitation agreements to any collaboration."  Settlement Order at 29:24-25.  The Court also stated that "none of the documents that memorialize broad anti-solicitation agreements mentions collaborations."  *Id*. at 29:27-30:1.  Finally, the Court stated that "Defendants' top executives themselves acknowledge the lack of any collaborative purpose."  *Id*. at 30:2-3.  As noted above, plaintiffs' Reply relies heavily on these statements.  Reply at 10.

Plaintiffs' reliance on the Settlement Order is misplaced.  Given the procedural setting of plaintiffs' motion for settlement approval, defendants had no reason to file evidentiary submissions supporting their positions on merits issues in connection with that motion, and they did not.  Rather, defendants will present their evidence on these issues *at trial*.  What is

more, *Officers for Justice* precludes plaintiffs from relying on the Court's statements in the Settlement Order as if they were "conclusions on the contested issues of fact and law." 688 F.2d at 625. At most, the Court's statements should be read as comments on the strength of plaintiffs' and defendants' respective cases as then perceived by the Court based on some of the limited evidence it had reviewed. In fact, as further demonstrated below, the statements that plaintiffs attempt to rely upon were not only based on an incomplete record, but were also incorrect.

### B. The Court's Statements Regarding The Absence Of Any Evidence Tying The Alleged Anti-Solicitation Agreements To Collaborations Between Defendants Were Inaccurate And Based On An Incomplete Record

If necessary, each of the defendants will prove at trial, through documentary evidence and testimony, that each alleged bilateral "do-not-cold-call" agreement "contribute[d] to the success of a cooperative venture" or was otherwise not anti-competitive. *Princo Corp. v. Int'l Trade Comm'n*, 616 F.3d 1318, 1336 (Fed. Cir. 2010) (*en banc*) ("*Princo*"). Much of the evidence on which defendants will rely has not yet been presented to the Court, in part because plaintiffs chose not to move for summary adjudication of this issue. And an illustrative sampling of evidence that is already part of the record, reviewed below, demonstrates the link between the alleged Google-Intel anti-solicitation agreement and the numerous collaborations between those two companies.[1]

---

[1] Additional evidence in the record ties the challenged do-not-cold-call agreements between other pairs of defendants to their collaborative projects and relationships, but will not be reviewed in detail here. *See, e.g.*, Adobe's Motion for Summary Judgment (ECF No. 560); Declaration of Lin W. Kahn and exhibits in support of that motion (ECF No. 562); Adobe's Reply in Support of its Motion for Summary Judgment (ECF No. 713); Apple's Motion for Summary Judgment (ECF No. 561); Declaration of Victoria L. Weatherford and exhibits in support of that motion (ECF No. 563); Apple's Reply in Support of its Motion for Summary Judgment (ECF No. 710); Declaration of Christina Brown and exhibits in support of that reply (ECF No. 711); Google's Motion for Summary Judgment (ECF No. 564); Declaration of Anne M. Selin and exhibits in support of that motion (ECF No. 569); Google's Reply in Support of its Motion for Summary Judgment (ECF No. 702); Declaration of Eric B. Evans and exhibits in support of that reply (ECF No. 703). In addition, each defendant's interrogatory responses describe their collaborative efforts with other defendants and the manner in which a defendant's decision not to cold-call its collaborators' employees fostered the procompetitive aspects of those collaborative efforts. The interrogatory responses are in the record as exhibits 195-201 to the Declaration of Dean Harvey, filed February 7, 2014 (ECF No. 607).

As described in Intel's motion for summary judgment, after Intel's Chief Operating Officer (and later CEO) Paul Otellini joined Google's Board of Directors in 2004, Intel and Google undertook a series of technical and business collaborations on projects such as data-center efficiency, search optimization, overseas site selection, software compilers and tools, data-transfer efficiency, Google TV, the Android operating system, the Chrome operating system, and the Chrome browser.  Intel's Motion For Summary Judgment (ECF No. 554) at 3. *See also* Corrected Declaration of Steven M. Perry in support of Intel Corporation's Motion for Summary Judgment (ECF No. 690-1) Ex. I (Otellini) at 82:21-87:9; 115:9-20; 182:17-25; 196:2-200:18; Ex. E (Eustace (Google)) at 114:24-115:24; and Ex. F (Kordestani (Google)) at 86:9-87:10.  While Intel began working with Google before Mr. Otellini joined Google's board, the evidence shows that the collaborations between Intel and Google expanded extensively, in scope and substance, starting in 2005, the same year that Google added Intel to its "do-not-call" list.  *Id*.  *See also* ECF No. 842, Ex. 5 (Dec. 6, 2013, Amended Expert Report of Edward A. Snyder).

The evidence presented to the jury will demonstrate that the overriding purpose of any Intel/Google anti-solicitation agreement was to facilitate collaborations between the two companies.  In spring 2006, for example, Google hired two Intel software engineers who were working on an Intel/Google collaboration involving software compilers.  Corrected Perry Decl. (ECF No. 690-1), Ex. I (Otellini) at 75:2-18.  Mr. Otellini asked Google CEO Eric Schmidt "to refrain from soliciting employees that Intel had assigned to work at Google on joint collaborative projects," and Mr. Schmidt said that "[i]t was a fair request."  (*Id*. 62:11-21).  Mr. Otellini later asked Mr. Schmidt to "[l]ive up to what he said" after Google actively recruited several Intel employees working on collaborations.  (*Id*. 73:13-74:22, 115:9-20.)

In one such instance, Intel sent its site selection specialist to help Google with a "large physical expansion" in China, and Google "liked that person so much, they recruited him."  (*Id*. 73:23-74:22.)  Otellini deposition exhibit 454 announces the departure of this long-time Intel employee who "has been a great asset to" Intel's "Global Site Selection and Development" efforts and who had managed at least five site selection teams in Asia.

Declaration of Steven M. Perry in Support of Defendants' Supplemental Brief in Connection with Plaintiffs' Motion for Application of the Per Se Standard (filed concurrently herewith), Ex. A (Dep. Ex. 454).[2]  Subsequent emails included within this exhibit reveal Intel's belief that Google had been so impressed by Intel's "presentation to Google on our site selection methods" that Google had "gone and hired our lead guy. . . ."  *Id.*  Mr. Otellini then complained to Eric Schmidt that it "[s]eems unkind to hire our guy after we helped you out by teaching you how we did site selection."  *Id.*  As Mr. Otellini explained at his deposition, "I wanted him to not disrupt kind of the joint efforts.  What would be my incentive to help Google if when I send people over there they recruit our best people."  (ECF No. 690-1, Ex. I, at 74:1-22.)  Thus, the contemporaneous documents support Mr. Otellini's testimony and link the alleged anti-solicitation agreement to collaborations.

The jury will learn at trial that the only other times that Mr. Otellini complained to Mr. Schmidt about Google's recruiting efforts involved two occasions when Google hired Intel software engineers who were working on joint, collaborative development projects involving Intel and Google.  In September 2007, for example, the Intel executive with responsibility for those projects, Renee James, complained to Mr. Otellini that Google was "selectively going after" her staff in Moscow, China and Santa Clara.  (Otellini Dep. Ex. 459, Shaver Decl. (ECF No. 291-48), Ex. 57.)  As Ms. James explained at her deposition, Google's efforts were "targeted at employees globally in multiple sites that were working on joint development projects with Google."  (Corrected Perry Decl. (ECF No. 690-1), Ex. J at 66:14-20.)  Ms. James believed at the time that "the only way Google would have known about these employees is because they were working on projects we assigned them to for the benefit of the two companies."  *Id.*  Ms. James also testified that Google's hiring efforts were

---

[2] This one email, Dep. Ex. 454 from Mr. Otellini's deposition, was not previously submitted to the Court and is included with this supplemental brief for completeness.  Importantly, as noted earlier, the evidence as yet submitted to the Court is only a fraction of the evidence that will be submitted at trial to demonstrate that the challenged agreements were in furtherance of or ancillary to collaborations and collaborative relationships and were not anti-competitive in purpose or effect.

"counterproductive to the objective of joint development" and "disruptive." *Id*. at 68:21-22; 128:18-22.[3]

In short, there *is* already in the record contemporaneous documentary evidence and sworn testimony by defendants' executives that demonstrate that the alleged do-not-cold-call agreements between defendants facilitated their close collaborations. At trial, even more evidence will be presented to prove that the individual do-not-cold call agreements were not anti-competitive and were instead in furtherance of collaborations and other procompetitive relationships. Plaintiffs therefore have no basis for their request that the Court determine, prior to trial, that the alleged anti-solicitation agreements have "'*manifestly* anticompetitive' effects and lack '*any* redeeming virtue,'" as required by the Supreme Court in order to justify the application of the *per se* standard. *Leegin Creative Leather Prods., Inc. v. PSKS, Inc.*, 551 U.S. 877, 886 (2007) (emphasis added) (citation omitted).

Plaintiffs fail to discuss the record evidence of procompetitive reasons for the bilateral agreements because that evidence reinforces the agreements' specific motivations and their narrow scope. Defendants' evidence of contemporaneous inter-defendant collaborations

---

[3] In addition to this testimony, Intel also submitted, in connection with its summary judgment motion, sworn testimony by plaintiffs' own expert, Matthew Marx, and by Intel's expert Edward Snyder, that the Intel/Google anti-solicitation agreement was in Intel's self interest in part because cold-calling can disrupt a collaborative relationship in substantial ways. Corrected Perry Decl. (ECF No. 690-1) Ex. D (Marx) at 85:20-25; 86:20-94:16); Ex. C (Snyder Decl.) ¶ 8. Plaintiffs ignore this testimony and instead quote Dr. Snyder as saying, "I happen to be a big believer in the per se rule. . . . I understand why the [DOJ] went down that path." (Reply at 1, quoting Snyder Depo. at 100:19 & 102:3-4.) Plaintiffs conveniently omitted this intervening question and answer: "Q. Do you agree that the Department of Justice appropriately applied the per se rule in [its case against these defendants]?" "A. I think that's a – maybe not my role to say whether it's applied correctly or not. … So *I don't really have an opinion about that*." (*Id*. at 101:2-12; emphasis added.) That is unsurprising since the *per se* rule is a rule of law, not economics. Dr. Snyder's expert *economic* opinions include these: (1) "[T]he six [do-not-cold-call] agreements … could not have had meaningful anticompetitive effects on class-wide compensation." (Snyder Report (ECF No. 842, Ex. 5) ¶ 20); and (2) "[T]he Google-Intel Agreement had a legitimate pro-competitive justification given their on-going collaborations." (*Id*. ¶ 24). Those opinions – which have not been contradicted by any antitrust economist – refute any notion that the *per se* rule should be applied here and would, alone or in conjunction with defendants' evidence linking their do-not-cold-call agreements to their collaborative activities, justify a jury verdict in defendants' favor under a rule of reason analysis. *See* ABA Section of Antitrust Law, Model Jury Instructions in Civil Antitrust Cases (2005) at A-4 (providing that the jury may find a restraint to be unlawful under a rule of reason analysis "*only if* you find that the competitive harm substantially outweighs the competitive benefit") (emphasis added).

makes clear that here, as in *California ex rel. Harris v. Safeway, Inc.*, 651 F.3d 1118, 1137 (9th Cir. 2011) (*en banc*), "the conduct at issue is not a garden-variety horizontal division of a market." *See also* Plaintiffs' Reply Memorandum in Support of Motion for Preliminary Approval of Class Action Settlement (ECF No. 938 at 16) (agreeing that "this was not a traditional cartel. . . ."). Sitting *en banc* in *Safeway* – and with the benefit of *Leegin* and other recent Supreme Court opinions – the Ninth Circuit rejected the same argument plaintiffs make here: that an agreement should be treated as a *per se* violation because it "mirrors" a market-allocation agreement. The court noted that the challenged agreement did not (1) prevent any defendant from actually making any sales to customers; (2) restrict any customer from patronizing any grocer; or (3) prevent grocers from selling any particular product or limit them to a particular set of customers. The overarching conspiracy alleged here is similar. It did not (1) prevent defendants from hiring one another's employees; (2) restrict any employee from applying to any defendant; or (3) prevent any defendant from publicly advertising jobs or accepting job applications.[4] Like the agreement in *Safeway*, plaintiffs' alleged conspiracy cannot be characterized as a *per se* illegal market-allocation agreement.

### C. Plaintiffs Cannot Transform Their Motion In Limine Into A Rule 56 Motion For Summary Adjudication And Present No Basis For Excluding Evidence Of The Agreements' Context

Defendants also object to plaintiffs' effort in their Reply to transform their "Motion for Application of the Per Se Standard" into a motion for summary adjudication under Rule 56(a). Plaintiffs ask the Court to hold that the individual, bilateral "do-not-cold-call" agreements between certain defendants are "condemned as per se illegal," and to exclude all evidence of collaborative activities, because defendants supposedly have not come forward with evidence linking the agreements to their collaborative activities. Reply (ECF No. 988) at 9-10.

There are three fundamental flaws in the approach taken by plaintiffs in their Reply. First, it is well settled that motions *in limine*, and trial briefs filed in connection with pre-trial conferences, cannot "serve as a substitute for summary judgment motions" under Rule 56.

---

[4] Plaintiffs acknowledge that, at most, the alleged restraints resulted in the "suppression of information flow." March 27, 2014 Hr'g Tr. at 46:16.

*Butler v. Homeservices Lending LLC*, 2013 WL 6196545 at *2 (S.D. Cal. Nov. 27, 2013). Motions in limine are also "an inappropriate means to resolve factual . . . disputes or weigh evidence." *Engman v. City of Ontario*, 2011 WL 2463178 at *9 (C.D. Cal. June 20, 2011). To the extent it is relevant to their overarching conspiracy claim, plaintiffs could have brought a motion for summary adjudication with respect to the legality of defendants' individual "do-not-cold-call" agreements, but chose not to do so. Consequently, they may not now belatedly bring "a motion for summary judgment . . . disguised as a motion in limine." *Guzik Technical Enterprises, Inc. v. Western Digital Corp.*, 2013 WL 6227626 at *8 (N.D. Cal. Nov. 22, 2013).

Second, *even if* this were a motion for summary adjudication, plaintiffs could not prevail because they, not defendants, bear the burden of production and persuasion on the issues they raise. Thus, plaintiffs could only prevail on a Rule 56 motion if they "produce[d] evidence that would conclusively support [their] right to a judgment after trial should the nonmovant fail to rebut the evidence."). 11 Moore's Federal Practice, § 56.40[1][c] (3d ed. 2014). As set out above, defendants' evidence on these issues, including the evidence not yet before the Court, would be more than sufficient to preclude summary adjudication.[5]

Finally, plaintiffs' request that the Court preclude defendants from presenting *any* evidence of their collaborations at trial ignores the clear relevance of such evidence to issues such as whether the individual agreements that plaintiffs claim were part of an overarching conspiracy arose separately, for independent reasons, and were in the individual self-interest

---

[5] The evidence not previously before the Court includes "documentary evidence that links the anti-solicitation agreements to [a] … collaboration." Settlement Order at 29:24-25. For example, in 2005, Google's Senior Director for Staffing and Human Resources explained that Google was not "target[ing] anyone from Genentech, Intel, AOL, or Apple at this time because of business relationships that we have with them at this time." Declaration of Lee H. Rubin (filed concurrently herewith) ("Rubin Decl."), Ex. A. In 2006, Google expressly removed companies from its "Do Not Call" list after Google's collaboration with those companies came to an end. *See, e.g.*, Rubin Decl., Ex. B. Google's contemporaneous evidence further shows that Google did not incorporate no-cold-calling provisions into its contracts with business partners (*see* Reply 10:7-11 (quoting Settlement Order 29-30)) because it relied on its Do Not Call list instead. After receiving an outside developer's request for an "anti-poaching agreement," Google's senior director of staffing explained: "Historically, we have not added anything to our contracts in regards to a non-solicit. Instead, we place the name of the firm (or individual employees) on our Do Not Call list and distribute that to the staffing team." Rubin Dec., Ex. C.

of each defendant. *See In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 348-50 and n.53 (3rd Cir. 2010) (holding that bilateral agreements, even if unlawful, that were in the self-interest of the defendant insurer would not support an inference that the defendant had joined an overarching conspiracy involving other insurers); *In re Citric Acid Antitrust Litig.*, 191 F.3d 1090, 1100 (9th Cir. 1999) (holding that conduct that could be "interpreted as a decision in [defendant's] own independent self-interest" did not support inference of conspiracy); *Wilcox v. First Interstate Bank of Oregon, N.A.*, 815 F.2d 522, 528 (9th Cir. 1987) (affirming grant of JNOV where "[t]he actions alleged to constitute a conspiracy are precisely those that could be motivated by independent self-interest"). Thus, even if the Court were to hold at trial that the alleged overarching conspiracy should be subject to *per se* treatment, evidence concerning the reasons each defendant entered into an individual bilateral agreement would still be relevant, and critical to rebut plaintiffs' contention that an overarching conspiracy existed – a necessary element of plaintiffs' theories of liability, impact, and damages.

### III.     CONCLUSION

Because "[t]he rule of reason is the presumptive or default standard" in antitrust cases, plaintiffs have the burden of demonstrating that the "immediately obvious" economic effect of the conduct they challenge would be "manifestly anticompetitive," and that it lacks "any redeeming virtue." *Safeway*, 651 F.3d at 1133. Plaintiffs have not met their burden. Their attempt in the Reply to shift the burden to defendants to present evidence showing their conduct to be pro-competitive is both untimely and improper. As briefly previewed in this brief, defendants will, if necessary, present that evidence at trial. Finally, plaintiffs' contention that this Court has already held that there is no evidence that the challenged conduct was procompetitive cannot be correct – the Court has not yet seen all the evidence – and is, moreover, inconsistent with the Ninth Circuit's holding in *Officers for Justice*. The presumptive rule of reason standard should govern the trial in this case, and the jury should be permitted to decide whether the challenged conduct is, in fact, unreasonable and anticompetitive.

DATED: September 18, 2014          KEKER & VAN NEST LLP

                                   By: */s/ Robert A. Van Nest*
                                       Robert A. Van Nest

                                       Daniel Purcell
                                       Eugene M. Paige
                                       Justina Sessions
                                       Cody S. Harris
                                       633 Battery Street
                                       San Francisco, CA  94111
                                       Telephone:  (415) 391-5400
                                       Facsimile:   (415) 397-7188

                                   Attorneys for Defendant
                                   GOOGLE INC.

DATED: September 18, 2014          MAYER BROWN LLP

                                   By: */s/ Lee H. Rubin*
                                       Lee H. Rubin

                                       Edward D. Johnson
                                       Donald M. Falk
                                       Two Palo Alto Square
                                       3000 E. Camino Real, Suite 300
                                       Palo Alto, CA  94306-2112
                                       Telephone:  (650) 331-2057
                                       Facsimile:   (650) 331-4557

                                   Attorneys for Defendant
                                   GOOGLE INC.

| | | |
|---|---|---|
| DATED: September 18, 2014 | | O'MELVENY & MYERS LLP |

By: */s/ Michael F. Tubach*
Michael F. Tubach

George A. Riley
Christina J. Brown
Two Embarcadero Center, 28th Floor
San Francisco, CA  94111
Telephone:  (415) 984-8700
Facsimile:   (415) 984-8701

Attorneys for Defendant
APPLE INC.

DATED: September 18, 2014            JONES DAY

By: */s/ David C. Kiernan*
David C. Kiernan

Robert A. Mittelstaedt
Lin W. Kahn
555 California Street, 26th Floor
San Francisco, CA  94114
Telephone:  (415) 626-3939
Facsimile:   (415) 875-5700

Attorneys for Defendant
ADOBE SYSTEMS, INC.

DATED: September 18, 2014            MUNGER, TOLLES & OLSON LLP

By: */s/ Gregory P. Stone*
Gregory P. Stone

Bradley S. Phillips
Steven M. Perry
Bethany W. Kristovich
355 South Grand Avenue, 35th Floor
Los Angeles, CA  90071-1560
Telephone:  (213) 683-9100
Facsimile:   (213) 687-3702

Attorneys for Defendant
INTEL CORPORATION

**ATTESTATION**: The filer attests that concurrence in the filing of this document has been obtained from all signatories.