Richard M. Heimann (State Bar No. 63607)
Kelly M. Dermody (State Bar No. 171716)
Brendan P. Glackin (State Bar No. 199643)
Dean M. Harvey (State Bar No. 250298)
Anne B. Shaver (State Bar No. 255928)
LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, California 94111-3339
Telephone: 415.956.1000
Facsimile: 415.956.1008

Joseph R. Saveri (State Bar No. 130064)
James Dallal (State Bar No. 277826)
JOSEPH SAVERI LAW FIRM, INC.
505 Montgomery, Suite 625
San Francisco, California 94111
Telephone: 415.500.6800
Facsimile: 415.500.6803

*Co-Lead Class Counsel*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| IN RE: HIGH-TECH EMPLOYEE ANTITRUST LITIGATION<br><br>THIS DOCUMENT RELATES TO:<br><br>ALL ACTIONS | Master Docket No. 11-CV-2509-LHK<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANTS' ADMINISTRATIVE MOTION FOR LEAVE TO FILE SUPPLEMENTAL BRIEF IN CONNECTION WITH PLAINTIFFS' MOTION FOR APPLICATION OF THE PER SE STANDARD** |

## I. INTRODUCTION

Defendants premise their administrative motion ("Defendants' Motion" or "Mot."; Dkt. 990), and their proposed sur-reply in connection with Plaintiffs' Motion for Application of the *Per Se* Standard ("Sur-Reply"; Dkt. 990-1), on the following fiction: that Plaintiffs first requested application of the *per se* standard on September 12, 2014, with their reply brief (Dkt. 988). Defendants argue that the Court should disregard this "last minute effort" because Defendants have had "no reason to file evidentiary submissions supporting their positions on merits issues[,] and they did not." (Sur-Reply at 1, 2.) They also suggest that they have only had a short time to respond to this apparently unforeseeable issue, and that the best they could do was to "briefly preview[]" the relevant evidence in an unauthorized Sur-Reply, and promise that what little evidence exists in the record thus far "is only a fraction of the evidence that will be submitted at trial[.]" (*Id.* at 9, 5 n.2.) Because the Court has never seen this hypothetical evidence, Defendants contend that it should therefore not decide the applicable legal standard, leaving it unresolved until at least the end of trial. (*Id.*)

The Court should reject these arguments out of hand. Plaintiffs have sought application of the *per se* standard since the outset, in the complaint. (Dkt. 65.) The issue has come up repeatedly, with Defendants urging the Court to delay its resolution, to the prejudice of Plaintiffs. Their instant request asks the Court to disregard the parties' briefing on the applicable legal standard and leave the issue unresolved for trial despite the fact that it was ***Defendants*** who requested this separate briefing schedule in the first place, and it was ***Defendants*** who urged the Court to do exactly what they now say would somehow violate the Federal Rules: "***But it can be done, as your honor suggests, as part of motions in limine. That's perfectly appropriate and we'll work with [Plaintiffs] on that and whatever other motions the parties may come up with.***" (Mar. 27, 2014 Hr. Tr. at 15:16-21; emphasis added.)

The Court should deny Defendants' Administrative Motion, rule on the briefing previously submitted that *per se* analysis will apply to Defendants' six alleged anti-solicitation agreements and to their alleged overarching conspiracy, and exclude evidence and references to purported pro-competitive justifications as irrelevant, prejudicial, and confusing to the jury.

## II. ARGUMENT

### A. Defendants Have Been on Notice of the *Per Se* Issue Since They Were First Served With the Complaint

Since the outset of this case in 2011, Plaintiffs have consistently sought application of the *per se* standard to Defendants' conspiracy and to each of their six alleged anti-solicitation agreements. The Court directed Defendants to brief the issue in their motions for summary judgment. (May 15, 2013 Case Mgmt. Conf. Tr., at 13:17-18 ("The rule of reason versus *per se*, that obviously should be briefed, and we haven't really done that yet."); 15:4-7 (Defendants' joint brief "will be the rule of reason versus *per se*."). However, Defendants ignored the Court's instruction and failed to address the issue in the scheduled briefing. (Dkts. 554, 556, 560, 561, and 564.) Nonetheless, Plaintiffs briefed the matter extensively in their summary judgment response, explaining that the *per se* standard should apply, and that the evidence demonstrated no connection between the anti-solicitation agreements at issue and Defendants' purported collaborative activity. (Dkt. 608-2, at 4-15, 24-46.)

Plaintiffs thus reasonably anticipated that the Court would resolve the *per se* issue at the March 27, 2014 hearing on the pending motions for summary judgment. (Mar. 27, 2014 Hr. Tr. at 15:9-11: "I thought, frankly, a long time ago we thought that today was going to be a day when we had the summary judgment on that issue.") Instead, Defendants asked the Court to set an additional briefing schedule on "the proper legal standard" "with respect to the rule of reason/*per se* issue." (*Id.* at 17:10-19.) The Court explained that the issue "has to be decided in advance of trial" and be "appropriately briefed[.]" (*Id.* at 15:3-5.) Defendants counsel responded: "***Your Honor, we don't disagree with that.*** But it can be done, as your honor suggests, as part of motions in limine. That's perfectly appropriate, and we'll work with them on that and whatever other motions the parties may come up with." (*Id.* at 15:16-21(emphasis added).) Plaintiffs asked the Court to resolve the matter in advance of trial. (*Id.* at 20:18-20 ("What I'm worried about is two or three days before trial, we don't know whether it's a rule of reason case or a *per se* case for trial.").) Defendants agreed: "***I agree . . . having clarity on that is important***." (*Id.* at 21:6-7 (emphasis added); *see also id.* at 21:1-2 ("Briefing it . . . makes a lot of sense and we'll do

that[.]").)

B. **<u>The Applicable Legal Standard For Defendants' Misconduct Is A Question of Law for the Court to Decide in Advance of Trial</u>**

It is hornbook law that the determination of the applicable legal standard for evaluating an antitrust defendant's misconduct is a question of law. Phillip Areeda & Herbert Hovenkamp, Antitrust Law ¶ 1909b at 308 (3d ed. 2011) ("While applying any one of antitrust's modes of analysis might involve many fact questions, the selection of a mode is entirely a question of law.")[1] The mode of analysis—*per se*, rule of reason—"are rules of substantive law. As such, they determine the open issues for jury decision[.]" Antitrust Law ¶ 305a at 60. "[B]oth principle and practice make clear that the judge rather than the jury decides what is *per se* unreasonable, even though that decision depends on factual assessments about the nature and likelihood of the harms and benefits at stake for competition[.]" *Id*., ¶ 306c at 74. This judicial determination establishes the nature of the trial, the order of proof, what evidence Defendants may offer in defense, and the instructions provided to the jury. *Compare*, *e.g.*, ABA Section of Antitrust Law, Model Jury Instructions in Civil Antitrust Cases, 2005 ed., at A-4 through A-12 (rule of reason), *with id*. at B-42 (*per se* application to a horizontal restraint). If the Court does not decide what legal standard to apply, Plaintiffs may "have no choice but to plead and prove a full rule of reason case," and the benefits of the *per se* rule for the parties, the Court, and the jury "become imaginary." Antitrust Law ¶ 305e at 71.

Defendants asked the Court for a separate briefing schedule devoted entirely to deciding the applicable legal standard in advance of trial. The Court agreed. The Court provided Defendants with ample opportunity to make their arguments and to submit whatever evidence they wanted. That briefing is complete, and the Court should decide the issue. The Defendants

---

[1] *See*, *e.g.*, *Ariz. v. Maricopa County Medical Soc*., 457 U.S. 332, 351 (1982) ("The respondents' principal argument is that the *per se* rule is inapplicable because their agreements are alleged to have procompetitive justifications. The argument indicates a misunderstanding of the *per se* concept. . . . Those claims of enhanced competition are so unlikely to prove significant in any particular case that ***we adhere to the rule of law*** that is justified in its general application.") (emphasis added); *United States v. Socony-Vacuum Oil Co.*, 310 U.S. 150, 226 n.59 (1940) ("Whatever economic justification particular price-fixing agreements may be thought to have, ***the law does not permit an inquiry into their reasonableness***. They are all banned because of their actual or potential threat to the central nervous system of the economy.") (emphasis added).

should not be permitted to game the system with supplemental briefing, new arguments or additional facts—all of which could have and should have been raised before when given the opportunity by the Court.

### C. Defendants Provide No Factual or Legal Basis For The Rule of Reason

As Plaintiffs have explained in prior filings, Defendants' six alleged anti-solicitation agreements, and their alleged conspiracy, were plainly anticompetitive and were not reasonably necessary to any legitimate collaborative activity.[2]

Defendants' Sur-Reply adds nothing new and does not change the clear record. Indeed the Sur-Reply recites the parties' prior detailed summary judgment submissions on the point. (Sur-Reply at 3 & n.1, 4, 5 & n.2, 6 & n.3.) Now, Intel attaches one additional document—that it claims provides "contemporaneous" evidence that the Google/Intel anti-solicitation agreement was necessary to pro-competitive collaborations. (Sur-Reply at 5.) Not so. The document is an email written in the summer of 2007, *two years after* the anti-solicitation agreement began. And, as well-established, the anti-solicitation agreement between the companies—as all others in the record—was not limited to employees engaged in any joint project, but extended to all employees throughout the world, without regard to job title, office location, responsibilities, or time period.

Google now attaches three additional documents. All three concern communications by Arnnon Geshuri, the former head of Google recruiting. But Google fails to inform the Court that Mr. Geshuri admitted without reservation that he had no idea why a company was added or removed from the Do Not Call List. He was never a member of Google's Executive Management Group ("EMG"). He was simply told about the EMG's decision and thereafter implemented it.[3]

---

[2] (*See*, *e.g.*, Dkts. 65 (Complaint); 92 (Plaintiffs' Opposition to Defendants' Motions to Dismiss); 603, 605, 607 (Plaintiffs' Opposition to Defendants' Motions for Summary Judgment); 830, 833, 988 (Plaintiffs' Motion for Application of the Per Se Standard).)

[3] (Decl. of Lisa J. Cisneros in Support of Plaintiffs' Opposition Briefs, Ex. Z (Geshuri Dep.) at 165:3-5 ("I didn't have visibility into their approval process, because it was in the EMG session, and so I didn't have visibility what their approvals were."); 172:6-8 ("Q: And who would tell you whether to put a company on or off the do-not-call list? A: It was usually an EMG member."); 256:25 ("I didn't really ask about the rationale"); 257:12-14 ("I don't know all the rationale, the reasons behind it. It -- it was not my responsibility to know that."); 258:2-3 ("So it wasn't really my responsibility, and it was noise to me anyway."); 260:13-14 ("That's – that's outside of my -- my responsibility, and I wasn't privy to that connection.")).

1  In any case, the documents do not favor Google.  When asked whether it was "necessary to

2  consult Legal to request removal" from the Do Not Call List, Mr. Geshuri responded: "***Legal does

3  not have to be involved***."  (Dkt. 990-3 at 5 (emphasis added).)  Google admits that its

4  collaboration contracts made no reference to the anti-solicitation agreements.  (Sur-Reply at 8

5  n.5.)  In addition, Plaintiffs' expert Dr. Matthew Marx explained, and as Google's own expert Dr.

6  Eric Talley admitted, the written contracts by their own terms constitute the entire agreements

7  between the parties concerning the collaborations.  (Dkt. 608-2 at 29 & n.29.)  The same is true

8  for all the collaboration agreements between Defendants.  (Dkt. 608-2 at 37-38 & n.33-34

9  (Apple), 38-42 & n.35-36 (Adobe), 44-46 & n.40-41 (Intel).)

10  Defendants' also continue to mischaracterize the law.  Defendants assert they "will prove

11  at trial" that each unlawful agreement "'contribute[d] to the success of a cooperative venture' or

12  was otherwise not anti-competitive."  (Dkt. 990-1 at 3 (quoting *Princo Corp. v. Int'l Trade

13  Comm'n*, 616 F.3d 1318, 1336 (Fed. Cir. 2010) (en banc)).  Defendants cited *Princo* in their filed

14  motion to exclude the testimony of Dr. Marx.  (Dkt. 559 at 8.)  Plaintiffs addressed *Princo* in their

15  opening brief on the *per se* standard and showed that *Princo* stands for the proposition that

16  restraints accompanying the integrated joint venture be "reasonably necessary to achieve the

17  efficiency-enhancing benefits of the joint venture."  (Dkt. 830 at 10 (quoting *Princo*, 776 F.2d at

18  190) (emphasis added in Dkt. 830)).  Defendants cannot meet this standard and have never even

19  tried.  (S*ee* Dkt. 830 at 11)  They do not need a "sur-reply" to rehash the same failed arguments.[4]

### III. CONCLUSION

For the aforementioned reasons, Plaintiffs respectfully request that the Court deny Defendants' Administrative Motion.

---

[4] Defendants' original brief on the *per se* standard (Dkt. 887) buried *Princo* at page 12, choosing to feature other case law that they have now retreated from.  Defendants also try again to fit their agreements into the holding of *California ex rel. Harris v. Safeway, Inc.*, 651 F.3d 1118, 1137 (9th Cir. 2011) (en banc).  (*Compare* Dkt. 990-1 at 7 *with* Dkt. 887 at 10-12.)  However, as Plaintiffs have already explained, and Defendants have already acknowledged, the agreement in *Safeway* was, among other things, temporary and limited, unlike any of the agreements at issue here.  (*See* Dkt. 887 at 11, Dkt. 988 at 8-9.)  Finally, Defendants say Plaintiffs rely on statements in the Court's settlement order.  (Sur-Reply at 2.)  This is incorrect.  Plaintiffs merely point to those statements as being consistent with the applicable law and the essentially uncontroverted records in the case, as shown in the summary judgment briefs and other submissions to the Court.

| | | |
|---|---|---|
| 1 | Dated: September 22, 2014 | Respectfully submitted, |
| 2 | | LIEFF CABRASER HEIMANN & BERNSTEIN, LLP |

By: <u>　/s/ Kelly M. Dermody　</u>
　　　Kelly M. Dermody

Richard M. Heimann (State Bar No. 63607)
Kelly M. Dermody (State Bar No. 171716)
Brendan P. Glackin (State Bar No. 199643)
Dean M. Harvey (State Bar No. 250298)
Anne B. Shaver (State Bar No. 255928)
LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, California 94111-3339
Telephone: 415.956.1000
Facsimile: 415.956.1008

Joseph R. Saveri (State Bar No. 130064)
James Dallal (State Bar No. 277826)
JOSEPH SAVERI LAW FIRM, INC.
505 Montgomery, Suite 625
San Francisco, California 94111
Telephone: 415.500.6800
Facsimile: 415.500.6803

*Co-Lead Class Counsel*