1  Richard M. Heimann (State Bar No. 63607)
   Kelly M. Dermody (State Bar No. 171716)
2  Brendan Glackin (State Bar No. 199643)
   Dean Harvey (State Bar No. 250298)
3  Anne B. Shaver (State Bar No. 255928)
   LIEFF CABRASER HEIMANN &
4  BERNSTEIN, LLP
   275 Battery Street, 29th Floor
5  San Francisco, California  94111-3339
   Telephone:  415.956.1000
6  Facsimile:   415.956.1008

7  Joseph R. Saveri (State Bar No. 130064)
   James Dallal (State Bar No. 277826)
8  JOSEPH SAVERI LAW FIRM, INC.
   505 Montgomery, Suite 625
9  San Francisco, CA 94111
   Telephone:  415.500.6800
10 Facsimile:   415.395.9940

11 *Co-Lead Class Counsel*

12 [Additional counsel listed on signature page]

13              UNITED STATES DISTRICT COURT

14              NORTHERN DISTRICT OF CALIFORNIA

15                    SAN JOSE DIVISION

16

17 IN RE: HIGH-TECH EMPLOYEE          Master Docket No. 11-CV-2509-LHK
   ANTITRUST LITIGATION
18                                    **CLASS ACTION**
   THIS DOCUMENT RELATES TO:
19                                    **NOTICE OF MOTION AND  MOTION FOR
   ALL ACTIONS                        PRELIMINARY APPROVAL OF CLASS
20                                    ACTION SETTLEMENT; MEMORANDUM
                                      OF POINTS AND AUTHORITIES IN
21                                    SUPPORT THEREOF**

22                                    Judge:      Hon. Lucy H. Koh
                                      Courtroom:  8, 4th Floor
23                                    Date:       March 19, 2015
                                      Time:       1:30 p.m.
24

25

26

27

28

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION AND MOTION ................................................................ 1

MEMORANDUM IN SUPPORT OF MOTION.............................................. 1

    I.       INTRODUCTION ................................................................ 1

    II.      PROCEDURAL HISTORY.................................................. 2

    III.     SETTLEMENT NEGOTIATIONS ...................................... 8

    IV.    TERMS OF THE SETTLEMENT........................................ 8

         A.    Settlement Sums and Additional Consideration ....................... 8

         B.    Monetary Relief to Class Members............................................ 9

         C.    Release of All Claims Against the Settling Defendants........... 10

         D.    Attorneys' Fees and Costs........................................................ 10

         E.    Class Representative Service Payments.................................... 10

    V.     LEGAL ARGUMENT ........................................................ 14

         A.    Class Action Settlement Procedure........................................... 14

         B.    Standards for Preliminary Settlement Approval ...................... 15

         C.    The Proposed Settlement Is Within the Range of Reasonableness........... 16

    VI.    PROPOSED PLAN OF NOTICE ........................................ 20

    VII.   PROPOSED PLAN OF ALLOCATION ............................. 22

    VIII.  THE COURT SHOULD SET A FINAL APPROVAL HEARING SCHEDULE................................................................ 22

    IX.    CONCLUSION ................................................................ 23

# TABLE OF AUTHORITIES

**Page**

## CASES

*Amchem Prods. v. Windsor,*
521 U.S. 591 (1997) .......................................................................................... 20

*Beck, et al. v. Boeing Co.,*
Case No. 00-CV-0301-MJP, Dkt. 1067 (W.D. Wash Oct. 8, 2004) ...................... 12

*Churchill Village, LLC v. General Elec.,*
361 F.3d 566 (9th Cir. 2004) .............................................................................. 15

*City P'shp. Co. v. Atl. Acquisition Ltd. P'shp.,*
100 F.3d 1041 (1st Cir. 1996) ............................................................................ 16

*Class Plaintiffs v. City of Seattle,*
955 F.2d 1268 (9th Cir. 1992) ...................................................................... 15, 16

*Create-A-Card, Inc. v. Intuit Inc.,*
No. CV-07-6452 WHA, 2009 U.S. Dist. LEXIS 93989
(N.D. Cal. Sept. 22, 2009) ................................................................................. 16

*Hanlon v. Chrysler Corp.,*
150 F.3d 1011 (9th Cir. 1988) ............................................................................ 15

*Hawaii v. Standard Oil Co.,*
405 U.S. 251 (1972) .......................................................................................... 14

*In re Airline Ticket Comm'n Antitrust Litig.,*
953 F. Supp. 280 (D. Minn. 1997) ...................................................................... 22

*In re Citric Acid Antitrust Litig.,*
145 F. Supp. 2d 1152 (N.D. Cal. 2001) .............................................................. 22

*In re High-Tech Emp. Antitrust Litig.,*
289 F.R.D. 555 (N.D. Cal. 2013) ........................................................................ 13

*In re NASDAQ Market Makers Antitrust Litig.,*
176 F.R.D. 99 (S.D.N.Y. 1997) ..................................................................... 16, 18

*In re Oracle Sec. Litig.,*
No. C-90-0931-VRW, 1994 U.S. Dist. LEXIS 21593 (N.D. Cal. June 18, 1994)
........................................................................................................................ 22

*In re Pacific Enters. Sec. Litig.,*
47 F.3d 373 (9th Cir. 1995) ................................................................................ 15

*In re Tableware Antitrust Litig.,*
Case No. C-04-3514-VRW ................................................................................. 19

*In re Titanium Dioxide Antitrust Litig.,*
No. 10-CV-00318 (RDB), 2013 U.S. Dist. LEXIS 176099 (D. Md. Dec. 13,
2013) ................................................................................................................. 13

*In re: TFT-LCD (Flat Panel) Antitrust Litig.,*
Case No. M07-1827-SI ....................................................................................... 18

*Ingram v. The Coca-Cola Co.,*
200 F.R.D. 685 (N.D. Ga. 2001) ........................................................................ 12

*Ivax Corp. v. Aztec Peroxides, LLC, et al.,*
Case No. 1:02CV00593 (D.D.C. Aug. 24, 2005) ................................................ 13

**TABLE OF AUTHORITIES**
(continued)

Page

*Linney v. Cellular Alaska P'shp*,
   No. C-96-3008 DLJ, 1997 U.S. Dist. LEXIS 24300 (N.D. Cal. July 18, 1997)................... 16

*Marchbanks Truck Serv. v. Comdata Network, Inc.*,
   Case No. 07-CV-1078, Dkt. No. 705 (E.D. Pa. Mar. 17, 2014) ........................... 13

*Mendoza v. United States*,
   623 F.2d 1338 (9th Cir. 1980)........................................................................... 22

*Officers for Justice v. Civil Serv. Comm'n*,
   688 F.2d 615 (9th Cir. 1982)............................................................................ 15

*Paul, Johnson*, *Alston & Hunt v. Granulty*,
   886 F.2d 268 (9th Cir. 1989).......................................................................... 10

*Reiter v. Sonotone Corp.*,
   442 U.S. 330 (1979)...................................................................................... 14

*Roberts v. Texaco, Inc.*,
   979 F. Supp. 185 (S.D.N.Y. 1997) .................................................................. 12

*State of California v. eBay Inc.*,
   Case No. 12-CV-5874-EJD-PSG, Dkt. 55-5 (N.D. Cal. May 1, 2014) ........................ 17, 18

*Staton v. Boeing Co.*,
   327 F.3d 938 (9th Cir. 2003)............................................................................ 11

*Sullivan v. DB Invs., Inc.*,
   667 F.3d 273 (3d Cir. 2011)......................................................................... 11, 13

*Sullivan v. DB Invs., Inc.*,
   No. 04-2819 (SRC), 2008 U.S. Dist. LEXIS 81146  (D.N.J. May 22, 2008)...................... 13

*United States v. eBay Inc.*,
   Case No. 12-CV-5869-EJD, Dkt. 36 (N.D. Cal. June 4, 2013) ........................... 17

*Van Bronkhorst v. Safeco Corp.*,
   529 F.2d 943 (9th Cir. 1976)........................................................................... 15

*Velez v. Novartis Pharms. Corp.*,
   No. 04 Civ. 09194 (CM), 2010 U.S. Dist. LEXIS 125945 (S.D.N.Y. Nov. 30,
   2010) ........................................................................................................ 12, 14

**STATUTES**

Cartwright Act, CAL. BUS. & PROF. CODE §§ 16720, *et seq*............................................... 3

Sherman Act, 15 U.S.C. § 1 ............................................................................. 3

**OTHER AUTHORITIES**

FED. R. CIV. P. 23(c)(2)(B)................................................................................ 20

**TREATISES**

4 NEWBERG ON CLASS ACTIONS
   §§ 11.22, *et seq.* (4th ed. 2002) .............................................................. 15, 16, 20

**TABLE OF AUTHORITIES**
(continued)

**Page**

Nantiya Ruan, *Bringing Sense to Incentives:*
    *An Examination of Incentive Payments to*
    *Named Plaintiffs in Employment Discrimination Class Actions,*
    10 Employment Rights and Employment
    Policy Journal 395, 396-397 (2006)...................................................................................... 12

The MANUAL FOR COMPLEX LITIGATION (FOURTH) (2004)........................................................ 16

**NOTICE OF MOTION AND MOTION**

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on March 19, 2015 at 1:30 p.m., or as soon as the matter may be heard in Courtroom 8 of the above-entitled court, Class Representatives Mark Fichtner, Siddharth Hariharan, and Daniel Stover hereby move, pursuant to Federal Rule of Civil Procedure 23(e), for entry of an Order:

1.      Preliminarily approving the settlement agreement reached with Adobe Systems, Incorporated, Apple Inc., Google Inc., and Intel Corporation (the "Settlement"), attached as Exhibit 1 to the Declaration of Kelly M. Dermody in Support of Plaintiffs' Motion for Preliminary Approval of Class Action Settlement ("Dermody Decl.").

2.      Directing distribution of notice of the Settlement to the class;

3.      Appointing Gilardi & Co., LLC as the Notice Administrator; and

4.      Scheduling a hearing for final approval of the Settlement.

This motion is made on the grounds that the Settlement is the product of arm's-length, good-faith negotiations; is fair, reasonable, and adequate to the Class; and should be preliminarily approved, as discussed in the  Memorandum in Support of the Motion (below).

This motion is based on this Notice of Motion and Motion, the supporting Memorandum in Support of the Motion, the accompanying Declaration of Kelly M. Dermody and exhibits attached thereto, the Declaration of Mark Fichtner, the Declaration of Siddharth Hariharan, the Declaration of Daniel Stover, the Joinder of Class Representative Michael Devine to Motion for Preliminary Approval of Class Action Settlement, the argument of counsel, and all papers and records on file in this matter.

1

<u>**MEMORANDUM IN SUPPORT OF MOTION**</u>

2

**I.**   <u>**INTRODUCTION**</u>

3   Plaintiffs and Class Representatives Mark Fichtner, Siddharth Hariharan, and Daniel Stover

4   respectfully request that the Court grant preliminary approval of the Settlement reached with

5   Adobe Systems, Incorporated, Apple Inc., Google Inc., and Intel Corporation ("Settling

6   Defendants"), attached as Exhibit 1 to the Declaration of Kelly M. Dermody in Support of

7   Plaintiffs' Motion for Preliminary Approval of Class Action Settlement ("Dermody Decl.").[1]   The

8   Settlement will resolve all of the claims of the Class of employees that the Court certified on

9   October 24, 2013 (Dkt. 531) (the "Class").  The Settlement creates an all-cash fund of

10   $415,000,000 (the "Settlement Fund").  The amount of this settlement is $90.5 million more than

11   the parties' prior settlement (*see* Dkt. 920) and $35 million more than the $380 million referenced

12   by the Court in its Order Denying Plaintiffs' Motion for Preliminary Approval of Settlements (Aug.

13   8, 2014 Order at 7, n. 8, Dkt. 974).  As Class Counsel are not seeking any additional fees or service

14   awards, all of this additional consideration (except any attorneys' fees awarded to Mr. Devine's

15   counsel and additional costs incurred) will go to the Class.

16   Plaintiffs and Settling Defendants reached the Settlement through hard-fought,

17   arm's-length negotiations after more than three years of litigation, including: substantial

18   investigation by Class Counsel; briefing, argument, and denial of Defendants' motions to dismiss

19   (Apr. 18, 2012 Order; Dkt. 119); the completion of extensive fact discovery, including the taking of

20   107 depositions, the review of millions of pages of documents, and analysis of over 50 gigabytes of

21   data consisting of approximately 80,000 different files produced by Defendants (Dermody Decl.

22   ¶ 5); two rounds of class certification briefing and argument, including the exchange of eight expert

23   reports by four economists (Apr. 4, 2013 and Oct. 24, 2013 Orders; Dkts. 382 & 531); completion

24   of expert merits discovery (covering a total of 10 experts across the parties); and briefing,

25   argument, and partial denial of Defendants' motions for summary judgment and exclusion of expert

26

---

27   [1] Plaintiff and Class Representative Michael Devine joins this Motion through his separate counsel
Daniel Girard.  *See* Joinder of Class Representative Michael Devine to Motion for Preliminary
28   Approval of Class Action Settlement ("Devine Joinder"), filed herewith.

1    testimony (Mar. 28, 2014 and Apr. 4, 2014 Orders; Dkts. 771 & 788).  In addition, at the time the

2    Settlement was reached, the parties had submitted a prior settlement for preliminary approval,

3    which was denied by the Court (Dkt. 974), completed briefing on Settling Defendants' Petition for

4    Writ of Mandamus, seeking an order from the United States Court of Appeals for the Ninth Circuit

5    reversing the Court's order denying preliminary approval of the prior proposed settlement, which

6    Petition had been set for oral argument on March 13, 2015.  (9th Cir. Case No. 14-72745, Dkts. 1, 4,

7    6, 10, & 19.)  The proposed notice provides Class members with the best notice practicable under

8    the circumstances and will allow each Class member a full and fair opportunity to evaluate the

9    Settlement and decide whether to participate.  Settling Defendants do not oppose this motion and

10   will cooperate in the settlement process.

11        By this motion, Plaintiffs request that the Court:  (1) preliminarily approve the Settlement;

12   (2) approve the proposed plan of notice to the Class; (3) appoint Gilardi & Co., LLC as the Notice

13   Administrator; (4) set a schedule for disseminating notice to Class members, as well as deadlines to

14   comment on, object to, or opt out of, the Settlement; and (5) schedule a hearing pursuant to Rule

15   23(e) of the Federal Rules of Civil Procedure to determine whether the proposed Settlement is fair,

16   reasonable, and adequate and should be finally approved.[2]

17   **II.    PROCEDURAL HISTORY**

18        Plaintiffs Mark Fichtner, Siddharth Hariharan, Daniel Stover, and Michael Devine

19   (collectively, "Plaintiffs" or "Class Representatives") are former technical employees of

20   Defendants.  Like the Class they represent, each worked for a Defendant while that Defendant

21   allegedly participated in at least one alleged unlawful agreement with another Defendant.  Plaintiffs

22   challenge agreements among Defendants—all horizontal competitors for the services of Plaintiffs

23   and Class members—to reduce employee compensation and mobility through eliminating

24   competition for labor.  The complaint alleges that Defendants entered into the following types of

25

26   [2] Prior to final approval and the deadline for objections to the Settlement, Plaintiffs will also move
     for payment of litigation costs, attorneys' fees, and service awards for the Class Representatives.
27   Counsel for Plaintiff Michael Devine may apply separately to the Court for attorneys' fees and
     reimbursement of expenses, which, if awarded, shall be paid out of the Settlement Fund separately
28   from the attorneys' fees and litigation costs to Class Counsel.

1   express agreements:  (1) illegal agreements not to recruit each other's employees; (2) illegal

2   agreements to notify each other when making an offer to another's employee; and (3) illegal

3   agreements that, when offering a position to another company's employee, neither company would

4   counteroffer above the initial offer.  (Complaint ¶¶ 55-107.)  Plaintiffs also allege that each

5   Defendant entered into, implemented, and enforced each express agreement with knowledge of the

6   other Defendants' participation, and with the intent of accomplishing the conspiracy's objective: to

7   reduce employee compensation and mobility by eliminating competition for skilled labor.  (*Id.*

8   ¶¶ 55, 108-110.)  Plaintiffs seek compensation for violations of Section 1 of the Sherman Act,

9   15 U.S.C. § 1, and the Cartwright Act, Cal. Bus. & Prof. Code §§ 16720, *et seq.*  (*Id.* ¶¶ 119-164.)

10          After the Court consolidated the Plaintiffs' individual lawsuits, Plaintiffs filed their

11   Consolidated Amended Complaint on September 13, 2011.  (Dkt. 65.)  Defendants challenged the

12   pleadings.  All Defendants jointly, and Lucasfilm separately, moved to dismiss Plaintiffs' claims.

13   (Dkts. 79 & 83.)  The Court denied both motions, with the exception that Plaintiffs' UCL claim for

14   restitution and disgorgement was dismissed for failure to allege a vested interest.  (Apr. 18, 2012

15   Order; Dkt. 119.)

16          After adjustments to the case management schedule, Plaintiffs filed their first motion for

17   class certification on October 1, 2012.  (Pls.' Mot. For Class Cert.; Dkt. 187.)  Plaintiffs proposed

18   an "All-Employee Class," as well as an alternative class of salaried technical, creative, and research

19   and development employees: the "Technical Class."  (*Id.* at 1.)  After the Court took the motion

20   under submission, Plaintiffs continued discovery, conducting numerous depositions, and collecting

21   voluminous documents.  The Court required the parties to file discovery status reports on an

22   ongoing basis.  (Jan. 17, 2013 and Mar. 13, 2013 Case Management Orders; Dkts. 282 & 350.)

23          After the Court lifted a discovery stay in January 2012, the parties completed broad,

24   extensive, and thorough discovery related to both class certification and the merits.  Plaintiffs

25   served 75 document requests, in response to which Defendants collectively produced over 325,000

26   documents (over 3.2 million pages), and took 93 depositions of Defendant witnesses.  (Dermody

27   Decl. ¶ 4.)  Plaintiffs also served 28 subpoenas on third parties, negotiated with those third parties,

28   and received 8,809 pages of documents from them.  Defendants also propounded document

1    requests, in response to which Plaintiffs produced over 31,000 pages, and took the depositions of

2    the Named Plaintiffs.  (*Id.*)  Defendants served 34 subpoenas on third parties, including the

3    then-current and former employers of the Named Plaintiffs.  (*Id.*)  Defendants' subpoenas resulted

4    in 1,834 pages of documents produced, which Plaintiffs' counsel also reviewed.  (*Id.*)

5            With expert assistance, Plaintiffs' counsel analyzed vast amounts of computerized

6    employee compensation and recruiting data, including approximately 80,000 files of

7    employment-related data exceeding 50 gigabytes.  (Dermody Decl. ¶ 5.)  Plaintiffs' counsel

8    retained four experts and numerous consultants to review and analyze this data, documents

9    produced in the action, deposition testimony, and other relevant facts; apply their relevant expertise

10   to those facts; and form opinions regarding a range of assigned tasks.  (*Id.*)  Those experts included

11   Dr. Edward Leamer of the University of California, Los Angeles, who provided six expert reports

12   consisting of 433 pages of analysis.  (*Id.*)  Defendants took four depositions of Dr. Leamer

13   regarding his opinions.  (*Id.*)  Plaintiffs retained Dr. Kevin Hallock of Cornell University, who

14   provided two expert reports consisting of 232 pages of analysis.  Defendants took two depositions

15   of Dr. Hallock.  (*Id.*)  Plaintiffs also retained Dr. Alan Manning of the London School of

16   Economics, who provided one expert report, and Dr. Matthew Marx of the Sloan School of

17   Management at the Massachusetts Institute of Technology, who provided two expert reports.

18   Defendants also deposed, and Plaintiffs defended the depositions of, Dr. Manning and Dr. Marx.

19   (*Id.*)

20           Plaintiffs' counsel and their experts also reviewed and analyzed the expert analysis

21   Defendants submitted.  Defendants retained seven experts, who collectively submitted a total of

22   1,733 pages of expert reports, including detailed and extensive quantitative analysis.  (Dermody

23   Decl. ¶ 6.)  Plaintiffs' experts assessed these reports and provided responses to them.  (*Id.*)

24   Plaintiffs' counsel deposed every defense expert, including multiple depositions for some expert

25   witnesses.  (*Id.*)

26           Fact and expert discovery, which is complete, has been thorough, and has required the

27   parties to engage in numerous and extensive meetings and conferences concerning the scope of

28

1   discovery and the analysis of the various electronic data, policy documents, and other files

2   produced.  (Dermody Decl. ¶ 7.)

3        On April 5, 2013, the Court issued its Order Granting in Part and Denying in Part Plaintiffs'

4   Motion for Class Certification.  (Dkt. 382.)  The Court found that Plaintiffs satisfied Federal Rule

5   of Civil Procedure 23(a), and satisfied Rule 23(b)(3) as to conspiracy and damages.  The Court

6   found that "the adjudication of Defendants' alleged antitrust violation will turn on overwhelmingly

7   common legal and factual issues."  (*Id.* at 13.)  Furthermore, after a detailed inquiry, the Court held

8   that a statistical regression analysis prepared by Plaintiffs' expert "provides a plausible

9   methodology for showing generalized harm to the class as well as estimating class-wide damages."

10  (*Id.* at 43.)

11       The Court requested further briefing on whether the Rule 23(b)(3) predominance standard

12  was met with respect to the common impact on the proposed class.  (*Id.* at 45.)  Though the Court

13  did not find predominance satisfied as to common impact, the Court acknowledged that the

14  documentary evidence "weighs heavily in favor of finding that common issues predominate over

15  individual ones for the purpose of being able to prove antitrust impact."  (*Id.* at 33.)  The Court

16  requested additional briefing to address this remaining concern: "the Court believes that, with the

17  benefit of discovery that has occurred since the hearing on this motion, Plaintiffs may be able to

18  offer further proof to demonstrate how common evidence will be able to show class-wide impact to

19  demonstrate why common issues predominate over individual ones."  (*Id.* at 45.)

20       Plaintiffs filed a Supplemental Motion for Class Certification to address the Court's

21  request.  (Dkts. 418 & 455.)  Plaintiffs marshaled additional documentary evidence, testimony, and

22  expert analyses.  (Decl. of Dean M. Harvey, Dkt. 418-1; Decl. of Lisa J. Cisneros, Dkt. 418-2;

23  Leamer Supp., Dkt. 418-4; Hallock Rpt., Dkt. 418-3; Decl. of Anne B. Shaver, Dkt. 456; and

24  Leamer Supp. Reply, Dkt. 457.)  Plaintiffs submitted additional evidence that the no-cold calling

25  agreements at issue in this case were designed substantially to disrupt recruiting of Technical Class

26  employees.  Accordingly, Plaintiffs focused their supplemental briefing and analysis on

27  demonstrating impact to all or nearly all of the Technical Class.  Defendants opposed the motion

28  and submitted supplemental briefing, expert reports, and documents in support of their opposition.

1   (Opp. to Supp. Mot. for Class Cert., Dkt. 439; Decl. of Christina Brown, Dkt. 445; Decl. of Lin

2   Kahn, Dkt. 446; Murphy Supp. Rpt., Dkt. 440; Shaw Rpt., Dkt. 442.)  The Court granted Plaintiffs'

3   Supplemental Motion on October 24, 2013.[3]  (Dkt. 531.)

4         Plaintiffs reached settlement agreements with Defendants Lucasfilm and Pixar, and with

5   Defendant Intuit, and presented those settlements to the Court on September 21, 2013.  (Dkt. 501.)

6   On October 30, 2013, the Court granted preliminary approval of the settlements.  (Dkt. 540.)

7   Plaintiffs' Motions for Final Approval, Attorneys' Fees and Costs, and Service Awards with

8   respect to those settlements have been resolved, after a hearing on May 1, 2014.  (Dkts. 915 & 916.)

9         The Settling Defendants filed individually and collectively for summary judgment (on the

10  grounds that Plaintiffs had not marshaled sufficient evidence that each of the defendants had

11  participated in an overarching conspiracy to suppress compensation), for exclusion of the

12  testimony of two of Plaintiffs' experts, Dr. Edward Leamer and Dr. Matthew Marx under *Daubert*,

13  and to strike portions of Dr. Leamer's reply report as improper rebuttal.  (Dkts. 554, 556, 557, 559,

14  560, 561, 564, & 570.)  The Court denied all motions for summary judgment.  (Dkts. 771 & 788.)

15  The Court granted in part and denied in part the motions to exclude Dr. Leamer's testimony and

16  strike portions of his reply report.  (Dkt. 788.)  Plaintiffs filed a motion for application of the *per se*

17  standard with supporting evidence (Dkt. 830), and Defendants opposed it (Dkt. 887).  Defendants

18  moved *in limine* to exclude various categories of evidence (Dkt. 855), and Plaintiffs opposed their

19  motions (Dkt. 882).  Plaintiffs also moved to compel production of a document, the identity of

20  which remains under seal (Dkt. 789-2), and Defendants opposed it (Dkt. 878-1).  Plaintiffs' counsel

21  also prepared extensively for trial, including by retaining a highly-experienced jury consultant to

22  assist with jury research and selection.  (Dermody Decl. ¶ 9.)

23        On May 22, 2014, Plaintiffs Mark Fichtner, Siddharth Hariharan, and Daniel Stover moved

24  the Court to preliminarily approve a settlement agreement with Settling Defendants providing for a

25  settlement fund of $324,500,000.  Plaintiff Michael Devine opposed the settlement.  The Court

26  denied preliminary approval on August 8, 2014.  (Dkt. 974.)  Thereafter, the parties resumed

27  ───────────────

28  [3] The Ninth Circuit denied Defendants' Petition for review pursuant to Rule 23(f) on January 15, 2014.

1    arm's-length negotiations with the assistance of mediator Hon. Layn Phillips (Ret.), while

2    continuing to litigate pre-trial matters. Plaintiffs filed a reply in support of their motion for

3    application of the *per se* standard (Dkt. 988), and Defendants requested leave to file a supplemental

4    opposition (Dkts. 990 & 990-1), which was granted (Dkt. 1023). Plaintiffs also filed a motion to

5    unseal all papers associated with their motion to compel (Dkt. 991), which Defendants opposed

6    (Dkt. 994; *see also* Dkt. 1029).

7        Meanwhile, on September 4, 2014, Defendants filed a Petition for a Writ of Mandamus with

8    the United States Court of Appeals for the Ninth Circuit, seeking an order vacating the Court's

9    denial of preliminary approval and directing the Court to preliminarily approve the $324,500,000

10   settlement. (9th Cir. Case No. 14-72745, Dkt. 1.) On September 22, 2014, the Ninth Circuit issued

11   an order stating that Defendants' "petition for a writ of mandamus raises issues that warrant a

12   response," ordered Plaintiffs to file a response, set a date for Defendants' reply, and ordered that

13   upon completion of briefing the matter be placed on the next available merits panel calendar for

14   oral argument. (9th Cir. Dkt. 2; Dkt. 993.) Plaintiffs (and Michael Devine separately) opposed

15   Defendants' petition (9th Cir. Dkts. 4 & 6), and Defendants filed a reply (9th Cir. Dkt. 10). Putative

16   amici curiae Chamber of Commerce of the United States of America, California Chamber of

17   Commerce, and economic scholars filed motions for leave to file amici curiae briefs in support of

18   the petition (9th Cir. Dkts. 8 & 9), which the Ninth Circuit referred to the panel to be assigned to

19   hear the merits of the petition (9th Cir. Dkt. 15). Plaintiffs (and Michael Devine separately)

20   opposed the motions for leave to file amici curiae briefs. (9th Cir. Dkts. 13 & 16.) The Ninth

21   Circuit scheduled oral argument on the petition for March 13, 2015. (9th Cir. Dkt. 19.)

22       At the time of the current Settlement, the following motions remained pending: Defendants'

23   motion to exclude Dr. Marx's testimony; Plaintiffs' motion to exclude Defendants' experts'

24   testimony; Plaintiffs' motion for application of the *per se* standard; Defendants' motions *in limine*;

25   and Plaintiffs' motion to compel. In addition, Plaintiffs and Defendants have continued to engage

26   in the exchange of extensive pretrial disclosures and conferences regarding trial exhibits, witnesses,

27   the joint pretrial statement, the authentication of business records and potential depositions related

28   thereto, and many other issues. (Dermody Decl. ¶ 12.)

1

### III.   SETTLEMENT NEGOTIATIONS

2

Plaintiffs and the Settling Defendants engaged in extensive mediated negotiations to

3

resolve the dispute.  Initially, mediation was conducted by David Rotman.  After a number of

4

sessions, those efforts were unsuccessful.  Subsequently, the parties retained the services of

5

experienced mediator Hon. Layn Phillips (retired).  Plaintiffs and Settling Defendants conducted a

6

day-long mediation supervised by Judge Phillips on February 17, 2014.  (Dermody Decl. ¶ 10.)

7

After two months of negotiations facilitated by Judge Phillips, Plaintiffs executed a Memorandum

8

of Understanding with all Settling Defendants on April 24, 2014.  (*Id.*)  After the Court denied

9

preliminary approval of that proposed settlement agreement on August 8, 2014, Judge Phillips

10

continued to facilitate negotiations between Plaintiffs, including Plaintiff Michael Devine, and

11

Settling Defendants, all of whom reached a new agreement on January 7, 2015.  (*Id.* ¶¶ 11-13.)

12

Plaintiffs and the Settling Defendants exchanged several drafts of the final Settlement

13

Agreement and related settlement documents before the parties came to final agreement as to each.

14

(*Id.* ¶ 13.)  At all times during the negotiation process, counsel for Plaintiffs and the Settling

15

Defendants bargained vigorously and at arm's length on behalf of their clients.  (*Id*. ¶ 15.)  All

16

Named Plaintiffs and Class Representatives support this Settlement.  (*See* Fichtner Decl. ¶¶ 4-6;

17

Hariharan Decl. ¶¶ 4-6; Stover Decl. ¶¶ 4-6; Devine Joinder.)

18

### IV.   TERMS OF THE SETTLEMENT

19

The Settlement resolves all claims of Plaintiffs and the Class against the Settling

20

Defendants.  The details are contained in the attached Settlement Agreement.  (Dermody Decl.,

21

Ex. 1 ("Settlement Agreement").)  The key terms of the Settlement are described below.

22

#### A.   Settlement Sums and Additional Consideration

23

Settling Defendants will pay $415,000,000 to resolve the claims of Plaintiffs and the Class.[4]

24

Settling Defendants will deposit an initial sum of $1,000,000 from the Settlement amount into an

25

---

26

[4] Settling Defendants will be entitled to a pro rata reduction of this amount in the event that 4% or more of Class members properly exclude themselves from the action.  (Settlement Agreement § VIII.T.)  It is very unlikely that Class member exclusions will reach this threshold.  By way of

27

example, only 147 Class members, or 0.23% of all Class members, excluded themselves from Plaintiffs' prior settlements with Intuit, Pixar, and Lucasfilm. Regardless, if such reduction occurs,

28

it will not affect the per capita recovery of the Class, as the Settlement Fund will decrease

*Footnote continued on next page*

1   escrow account (the "Notice Fund"), held and administered by an escrow agent, within 10 days of

2   preliminary settlement approval.  Class Counsel have selected Citibank, N.A. to be appointed the

3   escrow agent, with the consent of the Settling Defendants and subject to the approval of the Court.

4   The Notice Fund will be utilized in accordance with applicable orders of the Court for notice and

5   administration costs.  (Settlement Agreement § III.A.)  Any money remaining in the Notice Fund

6   after payment of notice and administration costs will be distributed with other Settlement funds.

7   (*Id*.)  If the Settlement is finally approved, Settling Defendants will pay the remaining

8   amount—$414,000,000, subject to any pro rata reduction, if applicable—into the escrow account

9   within the longer of 7 calendar days or 5 business days of the Effective Date.[5]  (*Id*.)  The Settlement

10  Fund will be utilized in accordance with applicable orders of the Court for payment of Class

11  member settlement shares, Class Representative service awards (if approved), and Court-approved

12  attorneys' fees, costs, and litigation expenses (if approved).

13  ### B.   Monetary Relief to Class Members

14          Each Class member will receive a share of the Settlement Fund.  No Class member will be

15  required to submit a claim to participate.  The Settlement Fund will be distributed based upon the

16  following plan of allocation (Settlement Agreement, Ex. B):

17          Class Members who do not opt out will be eligible to receive a share of the Settlement Fund

18  net of all applicable reductions based on a formula using a Class Member's base salary paid on the

19  basis of employment in a "Class Position" within the "Class Period" as set forth in the Class

20  definition.  In other words, each Class Member's share of the Settlement Fund is a fraction, with the

21  Class Member's total base salary paid on the basis of employment in a Class Position during the

22  Class Period as the numerator and the total base salary paid to all Class Members on the basis of

23  employment in a Class Position during the Class Period as the denominator:

24          (Class Member's individual total base salary paid on the basis of
        employment in Class Positions during the Class Period) ÷ (Total of
25      base salaries of all Class Members paid on the basis of employment
        in Class Positions during the Class Period).

26  ─────────────────
*Footnote continued from previous page*

27  consistent with the decrease in Class members, capped at 4% even if more than 4% exclude
themselves.

28  [5] The Settlement Agreement defines the "Effective Date" in § II.F.

Each Class Member's fraction shall be multiplied against the Settlement Fund net of court-approved costs, service awards, and attorneys' fees and expenses, and the Dispute Fund.

There will be no reversion of Settlement funds to any Settling Defendant.

### C.   Release of All Claims Against the Settling Defendants

In exchange for the Settling Defendants' monetary consideration, upon entry of a final judgment approving the proposed Settlement, Plaintiffs and the Class will release the Settling Defendants and all Released Parties from all claims arising from or related to the facts, activities or circumstances alleged in the Consolidated Amended Complaint (Dkt. 65) or any other purported restriction on competition for employment or compensation of Class Representatives or Class members, up to the Effective Date of the Settlement, whether or not alleged in the Consolidated Amended Complaint, as described in the Settlement Agreement.  (Settlement Agreement § V.)

### D.   Attorneys' Fees and Costs

The Settlement recognizes that Class Counsel may seek attorneys' fees and reimbursement of costs and expenses incurred in the prosecution of this action.  (Settlement Agreement § VII.) Pursuant to the Settlement, Class Counsel will look solely to the Settlement Fund for satisfaction of such fees and costs.  (*Id.*)  Class Counsel intend to move for attorneys' fees and costs separately and prior to the motion for final approval and the deadline for objections to the Settlement, with a request for reimbursement of costs not to exceed $1,200,000 and attorneys' fees not to exceed $81,125,000 (approximately 19.54%) of the total Settlement Fund, below the Ninth Circuit benchmark of twenty-five percent.  *See Paul, Johnson*, *Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989).  (Dermody Decl. ¶ 19.)

Counsel for Plaintiff Michael Devine will apply separately to the Court for attorneys' fees and reimbursement of expenses, which, if awarded, shall be paid out of the Settlement Fund separately from the Attorneys' Fees and Expenses to Class Counsel.  (Settlement Agreement § VII.)

### E.   Class Representative Service Payments

At the same time as moving for attorneys' fees and costs, Class Counsel will also seek reasonable service award payments of $80,000 for each of the Named Plaintiffs for their services as

1    Class Representatives, to be paid from the Settlement Fund at the time when the Fund is distributed

2    and claims are paid.[6]  These proposed service awards will be in addition to any monetary recovery

3    to the Class Representatives pursuant to the plan of allocation.

4        "The purpose of these payments is to compensate named plaintiffs for the services they

5    provided and the risks they incurred during the course of class action litigation, and to reward the

6    public service of contributing to the enforcement of mandatory laws."  *Sullivan v. DB Invs., Inc.*,

7    667 F.3d 273, 333 n.65 (3d Cir. 2011) (en banc) (affirming antitrust class action settlement with

8    common fund of $295 million, providing for service awards of $85,000 to each of two class

9    representatives) (quotation omitted), *cert. denied,* 132 S. Ct. 1876 (2012).  *See also Staton v.*

10   *Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003)  ("[N]amed plaintiffs . . . are eligible for reasonable

11   incentive payments").

12       The requested service awards are reasonable and appropriate here.  First, the Class

13   Representatives have expended substantial time and effort in assisting Class Counsel with the

14   prosecution of the Class's claims.[7]  They have responded to extensive document requests on their

15   lifetime employment history well beyond their experience with Defendants here and without regard

16   to time period (and across all variety of physical and electronic locations); produced over 31,000

17   pages of documents; responded to interrogatories; given full-day depositions; attended hearings

18   and mediations; and have otherwise devoted hundreds of hours consulting with Class Counsel

19   regarding fact development and strategy.  Dermody Decl. ¶ 18; Fichtner Decl. ¶¶ 7-8; Hariharan

20   Decl. ¶¶ 7-8; Stover Decl. ¶¶ 7-8.

21       Second, the Class Representatives—all of whom worked in technical positions for

22   Defendants—incurred the substantial risks and costs of taking on leadership roles in this visible

23   litigation against seven of the most prominent technology firms in the world.  This case is unusual

24   in that it combines the risk of two types of class actions, employment and antitrust, that courts have

25

26   [6] Class Counsel include Brandon Marshall's estate in this request, as well as Plaintiff Michael
     Devine unless he submits a separate request through his own counsel.

27   [7] Although the Class Representatives received modest service awards in connection with the prior
     partial settlements reached in July 2013 with Intuit, Lucasfilm, and Pixar, their service to the Class
28   was extensive, continued throughout these proceedings from beginning until now, and was not
     fully recognized by the prior awards.

1    recognized pose heightened threats to class representatives.  When a class representative is a

2    "present or past employee" of a defendant, the class representative's "present position or

3    employment credentials or recommendation may be at risk by reason of having prosecuted the suit,

4    who therefore lends his or her name and efforts to the prosecution of litigation at some personal

5    peril." *Roberts v. Texaco*, *Inc.*, 979 F. Supp. 185, 201 (S.D.N.Y. 1997).  *See also* Nantiya Ruan,

6    *Bringing Sense to Incentives: An Examination of Incentive Payments to Named Plaintiffs in*

7    *Employment Discrimination Class Actions*, 10 Employment Rights and Employment Policy

8    Journal 395, 396-397 (2006) (In addition to assuming responsibilities related to the investigation

9    and discovery of their case, "[e]mployees, former and current, take huge risks when they agree to

10   be named plaintiffs in a class action bringing legal claims of unlawful bad acts by employers.

11   Retaliation, isolation, ostracism by co-workers, 'black listing' by future employers, emotional

12   trauma, and fear of having to pay defendants' legal fees are among the most obvious.").

13   Accordingly, courts have approved service payments to current and former employee-class

14   representatives of defendants that have exceeded the amount Plaintiffs request here.  *Texaco*, 979 F.

15   Supp. at 188 (authorizing incentive awards ranging up to $85,000 in nationwide employment

16   discrimination class action from a common fund of $115 million); *Velez v. Novartis Pharms. Corp.*,

17   No. 04 Civ. 09194 (CM), 2010 U.S. Dist. LEXIS 125945, at *73 (S.D.N.Y. Nov. 30, 2010)

18   (granting service payments of $125,000 to each of 26 named plaintiffs); *Ingram v. The Coca-Cola*

19   *Co.*, 200 F.R.D. 685, 694 (N.D. Ga. 2001) (awarding $300,000 service payments to each of four

20   representative plaintiffs); *Beck, et al. v. Boeing Co.*, Case No. 00-CV-0301-MJP, Dkt. 1067 at 4

21   (W.D. Wash Oct. 8, 2004) (awarding $100,000 service payments to each of the named plaintiffs).[8]

22   These concerns are particularly strong in this high-profile action, where the Class Representatives'

23   roles are unusually visible and easily verified by current and potential employers with nothing more

24   than a web search.

25           The Class Representatives faced additional risks because this is an antitrust case.  By

26   definition, antitrust cases are brought against defendants with power in the markets in which

27   _____

28   [8] Dermody Decl., Ex. 2.

1    plaintiffs were injured—here, the market for high-tech employment.  This is not a case challenging

2    the employment practices of small and obscure companies.  Each Defendant here is a powerful

3    employer of high-tech employees in its own right.  Collectively, the seven Defendants wield

4    tremendous power and influence in the high-technology industry.  In addition, Defendants served

5    subpoenas on 27 other high-technology companies, each of which employed a Class

6    Representative, seeking broad categories of information regarding each Class Representative's job

7    history, performance, and personnel files.  Plaintiffs' request is consistent with service payments

8    granted in other antitrust cases.  *See*, *e.g.*, *Marchbanks Truck Serv. v. Comdata Network, Inc.*, Case

9    No. 07-CV-1078, Dkt. 713 at 8 (E.D. Pa. July 14, 2014) (approving class action settlement,

10   including service payment of $150,000 to lead class representative); *In re Titanium Dioxide*

11   *Antitrust Litig.*, No. 10-CV-00318 (RDB), 2013 U.S. Dist. LEXIS 176099, at *8 (D. Md. Dec. 13,

12   2013) (granting service award to lead class representative of $125,000); *Sullivan v. DB Invs., Inc.*,

13   Case No. 04-2819 (SRC), 2008 U.S. Dist. LEXIS 81146, at *108 (D.N.J. May 22, 2008) (approving

14   service payments to class representatives, including $85,000 to two lead representatives of direct

15   purchaser class), *affirmed en banc*, *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 333 n.65 (3d Cir.

16   2011), *cert. denied*, 132 S. Ct. 1876 (2012); *Ivax Corp. v. Aztec Peroxides, LLC, et al.*, Case No.

17   02-CV-00593 (D.D.C. Aug. 24, 2005) (awarding service payments to each class representative of

18   $100,000 each).[9]

19           Third, the class representatives should be rewarded for their "public service of contributing

20   to the enforcement of mandatory laws."  *Sullivan*, 667 F.3d at 333 n.65.  Here, while the DOJ

21   obtained a stipulated judgment that enjoined the misconduct at issue going forward, the DOJ did

22   not obtain any fines from the Defendants, nor compensation for any of Defendants' employees.

23   Without the Class Representatives' willingness to take the risks of filing class action lawsuits, no

24   recovery would have been possible.  As this Court explained, the "Supreme Court has long

25   recognized that class actions serve a valuable role in the enforcement of antitrust laws."  *In re*

26   *High-Tech Emp. Antitrust Litig.*, 289 F.R.D. 555, 563 (N.D. Cal. 2013) (citing *Reiter v. Sonotone*

27   _____

28   [9] Dermody Decl., Ex. 3.

1   *Corp.*, 442 U.S. 330, 344 (1979)); *Hawaii v. Standard Oil Co.*, 405 U.S. 251, 262 (1972)).  As a

2   result of the Class Representatives coming forward here, the Defendants will pay a total of

3   $415,000,000 (on top of the $20 million already secured) into a common fund for the benefit of the

4   Class.

5        Finally, the requested service awards are appropriate when compared to the substantial

6   recovery achieved.  Courts assessing the reasonableness of requests for service awards may

7   compare the request against the size of the settlement fund.  *See, e.g.*, *Novartis Pharms.*, No. 04

8   Civ. 09194 (CM), 2010 U.S. Dist. LEXIS 125945, at *22-23 ("Plaintiffs seek, therefore, a total of

9   $3,775,000.00 in service award payments, which represents only approximately 2.4 percent of the

10   entire monetary award of $152.5 million (or approximately 2.1 percent of the entire value of the

11   settlement of $175 million).").  Plaintiffs' requested service awards here collectively represent only

12   about 0.096% (*i.e.*, less than a tenth of 1%) of the proposed settlement fund.

13        The Court should preliminarily approve service payments to each Class Representative of

14   $80,000 to compensate them for their substantial time and effort, the significant risks they

15   undertook on behalf of the Class with no guarantee that they would receive anything in return, and

16   the valuable public service they provided to enforce the nation's antitrust laws.

17   **V.**    **LEGAL ARGUMENT**

18       **A.**    **Class Action Settlement Procedure**

19        A class action may not be dismissed, compromised, or settled without the approval of the

20   Court.  Judicial proceedings under Federal Rule of Civil Procedure 23 have led to a defined

21   procedure and specific criteria for approval of class action settlements.  The Rule 23(e) settlement

22   approval procedure describes three distinct steps where, as here, a class has already been certified:

23       1.    Preliminary approval of the proposed settlement;

24       2.    Dissemination of notice of the settlement to all affected class members; and

25       3.    A formal fairness hearing, also called the final approval hearing, at which class

26   members may be heard regarding the settlement, and at which counsel may introduce evidence and

27   present argument concerning the fairness, adequacy, and reasonableness of the settlement.

28

1    This procedure safeguards class members' procedural due process rights and enables the

2    Court to fulfill its role as the guardian of class interests.  *See* 4 *Newberg on Class Actions* §§ 11.22,

3    *et seq.* (4th ed. 2002) ("*Newberg*") (describing class action settlement procedure).

4    By way of this Motion, the parties request that the Court take the first step in the settlement

5    approval process and preliminarily approve the proposed Settlement.

6    ### B.    Standards for Preliminary Settlement Approval

7    Rule 23(e) requires court approval of any settlement of claims brought on a class basis.

8    "[T]here is an overriding public interest in settling and quieting litigation . . . particularly . . . in

9    class action suits[.]"  *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976); *see also*

10   *Churchill Village, LLC v. General Elec.*, 361 F.3d 566, 576 (9th Cir. 2004); *In re Pacific Enters.*

11   *Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995); and *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268,

12   1276 (9th Cir. 1992).  Courts recognize that as a matter of sound policy, settlements of disputed

13   claims are encouraged and a settlement approval hearing should "not . . . be turned into a trial or

14   rehearsal for trial on the merits."  *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th

15   Cir. 1982), *cert. denied sub nom. Byrd v. Civil Serv. Comm'n*, 459 U.S. 1217 (1983).  Furthermore,

16   courts must give "proper deference" to the settlement agreement, because "the court's intrusion

17   upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit

18   must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the

19   product of fraud or overreaching by, or collusion between, the negotiating parties, and that the

20   settlement, taken as a whole, is fair, reasonable and adequate to all concerned."  *Hanlon v. Chrysler*

21   *Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998) (quotation omitted).

22   The purpose of the Court's preliminary evaluation of the proposed settlement is to

23   determine whether it is within "the range of reasonableness," and thus whether notice to the class of

24   the terms and conditions of the settlement, and the scheduling of a formal fairness hearing, are

25   worthwhile.  Preliminary approval should be granted where "the proposed settlement appears to be

26   the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not

27   improperly grant preferential treatment to class representatives or segments of the class and falls

28   within the range of possible approval."  *In re NASDAQ Market Makers Antitrust Litig.*, 176 F.R.D.

99, 102 (S.D.N.Y. 1997). Application of these factors here support an order granting the motion for preliminary approval.

To grant preliminary approval of the proposed Settlement, the Court need only find that it falls within "the range of reasonableness." *Newberg* § 11.25. The Manual for Complex Litigation (Fourth) (2004) ("*Manual*") characterizes the preliminary approval stage as an "initial evaluation" of the fairness of the proposed settlement made by the court on the basis of written submissions and informal presentation from the settling parties. *Manual* § 21.632. A proposed settlement may be *finally* approved by the trial court if it is determined to be "fundamentally fair, adequate, and reasonable." *City of Seattle*, 955 F.2d at 1276 (quotation omitted). While consideration of the requirements for *final* approval is unnecessary at this stage, all of the relevant factors weigh in favor of the Settlement proposed here. As shown below, the proposed Settlement is fair, reasonable and adequate. Therefore, the Court should allow notice to be disseminated to the Class.

## C.     The Proposed Settlement Is Within the Range of Reasonableness

The parties' proposed Settlement meets the standards for preliminary approval. First, the Settlement is entitled to "an initial presumption of fairness" because it is the result of arm's-length negotiations among experienced counsel, facilitated by an experienced and respected mediator, occurring after the parties completed thorough fact and expert discovery. *Newberg* § 11.41; *City P'shp. Co. v. Atl. Acquisition Ltd. P'shp.*, 100 F.3d 1041, 1043 (1st Cir. 1996) ("When sufficient discovery has been provided and the parties have bargained at arms-length, there is a presumption in favor of the settlement."); *Create-A-Card, Inc. v. Intuit, Inc.*, No. CV-07-6452 WHA, 2009 U.S. Dist. LEXIS 93989, at *8-9 (N.D. Cal. Sept. 22, 2009) ("This Court begins its analysis with a presumption that a class settlement is fair and should be approved if it is the product of arm's-length negotiations conducted by capable counsel with extensive experience in complex class action litigation."); *Linney v. Cellular Alaska P'shp*, No. C-96-3008 DLJ, 1997 U.S. Dist. LEXIS 24300, at *16 (N.D. Cal. July 18, 1997) ("The involvement of experienced class action counsel and the fact that the settlement agreement was reached in arm's length negotiations, after relevant discovery had taken place create a presumption that the agreement is fair."), *aff'd*, 151 F.3d 1234 (9th Cir. 1998). (Dermody Decl. ¶ 15.)

1     Second, the consideration—a total of $415 million—is substantial, particularly in light of

2     the very real risk that the jury could find no liability or award no damages, and any jury verdict

3     would be subject to appellate review.  When combined with the $20 million received from

4     Plaintiffs' previous settlements with Defendants Pixar, Lucasfilm, and Intuit, the result for the

5     Class in this litigation will total $435 million.[10]  A relevant point of comparison is with the

6     outcomes achieved by the United States Department of Justice ("DOJ") and the California Attorney

7     General ("CA AG").  This action was preceded by a DOJ investigation concerning the same alleged

8     misconduct at issue in this case.  While the DOJ had the ability to seek civil fines, the DOJ settled

9     their investigation regarding Defendants' alleged misconduct without any monetary penalty.  In

10    addition, unlike Plaintiffs, the DOJ did not allege a common conspiracy among all Defendants.

11        In addition, the DOJ and the CA AG filed cases against eBay Inc. regarding an alleged

12    agreement between eBay and Intuit not to poach each other's employees, which later became a

13    no-hire agreement between the companies.  *State of California v. eBay Inc.*, Case No.

14    12-CV-5874-EJD-PSG, Dkt. 55-5, ¶¶ 25-42 (N.D. Cal. May 1, 2014) ("CA AG Case"); *United*

15    *States v. eBay Inc.*, Case No. 12-CV-5869-EJD, Dkt. 36, ¶¶ 14-25 (N.D. Cal. June 4, 2013) ("DOJ

16    Case").  The alleged agreement there covers broader conduct than at issue in this case, and it lasted

17    longer—from 2006 through 2011—than is alleged here.  (CA AG Case, Dkt. 55-5, ¶ 41.)  The DOJ

18    and the CA AG recently settled that case.  The proposed settlement with the DOJ is very similar to

19    the previous settlement between the DOJ and the Defendants here: while eBay agrees to modify its

20    behavior going forward, eBay was not required to pay any money, either in the form of penalties or

21    compensation to victims.  (DOJ Case, Dkt. 57 and 57-1.)  The proposed settlement with the CA AG

22    includes a monetary component of $3.75 million, $2.375 million of which will be distributed

23    among approximately 13,990 claimants.  The proposed settlement also includes a release of the

24

---

25    [10] In this Court's order denying preliminary approval, it used previous settlements as a benchmark
     and indicated a reasonable settlement amount for the remaining Defendants would be at least $380
26    million.  (Aug. 8, 2014 Order, Dkt. 974 at 7.)  Plaintiffs did not understand this Court to put in place
     any rigid formula.  That said, it bears noting that the new Settlement amount from the remaining
27    Defendants—$415 million—exceeds that benchmark by $35 million.  Plaintiffs believe this
     analysis confirms that the new Settlement amount is fair, reasonable and adequate, and that it is
28    well within the range of reasonableness required for preliminary approval.

1    proposed class's claims.  (CA AG Case, Dkt. 55, at 6.)  On August 29, 2014 Judge Davila

2    preliminarily approved the proposed settlement.  (CA AG Case, Dkt. 62.)  By comparison,

3    Plaintiffs here obtained a substantially larger recovery, whether measured on an aggregate or

4    per-Class-member basis ($6,437.50 per Class member here versus $268.05 per class member in the

5    case before Judge Davila).[1]

6           Third, the Settlement does not grant preferential treatment to the Class Representatives or to

7    certain portions of the Class; the Plan of Allocation provides a neutral and fair way to compensate

8    Class members based on their salary and alleged injury.  *In re NASDAQ Market Makers Antitrust*

9    *Litig.*, 176 F.R.D. at 102.

10          Fourth, while settlement provides the Class with a timely, certain, and meaningful cash

11   recovery, a trial—and any subsequent appeals—is highly uncertain, and in any event would

12   substantially delay any recovery achieved.

13          Indeed, the risks of trial were highlighted in *The Apple iPod iTunes Antitrust Litig.,* Case

14   No. 05-cv- 0037 (YGR) ("*iPod*"), the most recent antitrust class action tried to verdict in the

15   Northern District of California.  On December 16, 2014, a unanimous jury ruled in that case in

16   favor of Apple after 10 years of litigation and a 10-day trial.  (*See* Dermody Decl., Ex. 4 (verdict

17   form).)

18          Even closer to the claims in this case, the most recent antitrust conspiracy class action

19   seeking damages that was tried to verdict in this District is likewise illuminating.  *See In re:*

20   *TFT-LCD (Flat Panel) Antitrust Litig.*, Case No. M07-1827-SI (tried to successful liability verdict

21   in July 2012).  In that trial, plaintiffs introduced evidence of a global price-fixing cartel that does

22   not exist here, including concurrent criminal investigations that resulted in 14 guilty pleas

23   admitting U.S. antitrust violations.  (There were no criminal investigations or guilty pleas here.)

24   Plaintiffs in *In re: TFT-LCD* asked the jury to find that Toshiba participated in the alleged

25   price-fixing conspiracy, and to award damages of $867 million.  Unlike in *iPod*, the jury found

26

27   _____

     [1] Excluding deductions of proposed amounts for attorneys' fees and costs, plaintiff service awards,
     claims administrator costs, and the reserve fund, the per capita number is $5,077.72, compared to a
28   per capita net recovery in the eBay case of $169.76.

NOTICE OF MOTION AND
MOTION ISO PRELIMINARY SETTLEMENT
APPROVAL; NO. 11-CV-2509-LHK

1    Toshiba liable.  However, the jury awarded only $87 million, or about 10% of the damages

2    requested.  Dermody Decl., Ex. 5 (completed special verdict form).  When a later opt-out action

3    filed by *In re: TFT-LCD* class member Best Buy went to trial against HannStar Display Corp. and

4    Toshiba on the same claims, the jury found HannStar liable but not Toshiba, and awarded *less than*

5    *1%* of the damages Best Buy sought ($7.5 million from a request of $770 million).  (Dermody

6    Decl., Ex. 6 (completed special verdict form).)  Before *LCDs*, the most recent antitrust class action

7    for damages tried to a verdict in the Northern District of California was *In re Tableware Antitrust*

8    *Litig.*, Case No. C-04-3514-VRW.  The jury in that case returned a verdict for the defendants.

9    (Dermody Decl., Ex. 7 (completed special verdict form).)

10          Here, unlike in comparable antitrust conspiracy cases such as *LCDs* and *Tableware*, it was

11   not clear that the alleged misconduct would be considered under the *per se* standard of illegality,

12   with important implications regarding how the trial would proceed, Plaintiffs' burden of proof, and

13   the evidence Defendants would be permitted to introduce.  Defendants had successfully moved to

14   exclude certain parts of Dr. Leamer's expert testimony.  (Dkt. 788.)  Defendants' other *in limine*

15   motions to exclude a variety of evidence were pending.  (Dkt. 855.)  In addition, Defendants

16   intended to vigorously contest the existence of a common conspiracy among them, and the jury

17   would be faced with many complicated and contentious issues regarding impact and damages

18   across the Class.  Even if Plaintiffs succeeded in proving liability, they still faced the risk that the

19   jury would award only a fraction of the alleged damages—or refuse to award damages altogether.

20   And, even if Plaintiffs were successful at trial, Plaintiffs and the Class faced the risk of protracted

21   appeals, including an appeal of the Court's class certification order.  The substantial obstacles that

22   Plaintiffs would face in taking this case to trial are discussed in greater detail in Plaintiffs' prior

23   reply memorandum in support of preliminary approval.  (Dkt. 938 at 10-14.)

24          In addition, Defendants' petition for a writ of mandamus to the Ninth Circuit is still

25   pending.  The motions panel which initially reviewed the petition determined that it "raises issues

26   which warrant a response" and ordered that the matter be fully briefed and calendared for oral

27   argument.  (Dkt. 993.)  There is therefore a risk that the Ninth Circuit could overturn this Court's

28

NOTICE OF MOTION AND
MOTION ISO PRELIMINARY SETTLEMENT
APPROVAL; NO. 11-CV-2509-LHK

prior denial of preliminary approval and reduce the Class' potential recovery to a lesser settlement of $324,500,000.

## VI.    **PROPOSED PLAN OF NOTICE**

Rule 23(e)(1) states that, "[t]he court must direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise." Notice of a proposed settlement must inform class members of the following: (1) the nature of the pending litigation; (2) the general terms of the proposed settlement; (3) that complete information is available from the court files; and (4) that any class member may appear and be heard at the fairness hearing. *See Newberg* § 8.32. The notice must also indicate an opportunity to opt-out, that the judgment will bind all class members who do not opt-out, and that any member who does not opt-out may appear through counsel. Fed. R. Civ. P. 23(c)(2)(B). The form of notice is "adequate if it may be understood by the average class member." *Newberg* § 11.53. Notice to the class must be "the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." *Amchem Prods. v. Windsor*, 521 U.S. 591, 617 (1997) (quotation omitted).

Within 20 days after the Court grants preliminary approval, Class Counsel and the Settling Defendants have agreed to direct the prior notice administrator, Heffler Claims Group, to deliver in a highly secure manner to this Settlement's administrator, Gilardi & Co., LLC ("Notice Administrator"), the information Defendants previously produced in an electronic format from their human resources databases, for the Class period, such as the full legal name, last known physical address, dates of employment in that Defendant's Class job titles, and associated base salary by date and relevant Class job title of each Class member who was employed by that Defendant. Defendants will separately provide the Notice Administrator with secure social security numbers for tax purposes. (Settlement Agreement § II.B.)

Within two weeks thereafter, the Notice Administrator shall cause the Settlement Notice to be mailed by first-class mail, postage prepaid, to Class members pursuant to the procedures described in the Settlement Agreement, and to any potential Class member who requests one; and, in conjunction with Class Counsel, shall cause a case-specific internet website to become

1   operational with case information, court documents relating to the Settlement, and the Notice.

2   (Settlement Agreement § II.B.)  At least thirty days prior to the Final Approval Hearing, the Notice

3   Administrator will file with the Court an Affidavit of Compliance with Notice Requirements.

4   (Settlement Agreement § II.E.)

5           Class members will have until forty-five days from the date the Notice period begins

6   (established by the first day upon which the Notice Administrator provides mail Notice to Class

7   Members ("Notice date")) to opt-out (the "Opt-Out Deadline") of the proposed Settlement.

8   (Settlement Agreement § II.D.)  Any Class member who wishes to be excluded (opt out) from the

9   Class must send a written request for exclusion to the Notice Administrator on or before the close of

10  the Opt-Out Deadline.  (Settlement Agreement § II.D.)

11          Consistent with the prior notice disseminated to the Class in this action, the content of the

12  Proposed Class Notice fully complies with due process and Rule 23.  (Settlement Agreement, Ex.

13  A.)  As before, it provides the definition of the Class, describes the nature of the action, including

14  the class allegations, and explains the procedure for making comments and objections.  The Class

15  Notice describes the terms of the Settlement with the Settling Defendants, informs Class members

16  regarding the plan of allocation, and advises Class members that the funds will be distributed at a

17  future time to be determined.  The Class Notice specifies the date, time, and place of the final

18  approval hearing and informs Class members that they may enter an appearance through counsel.

19  The Class Notice also informs Class members how to exercise their rights and make informed

20  decisions regarding the proposed Settlement and tells them that if they do not opt out, the judgment

21  will be binding upon them.  The Class Notice further informs the Class that Class Counsel will seek

22  costs of up to $1.2 million, Class Counsel's attorneys' fees of approximately 19.54 percent

23  ($81,125,000) of the Settlement fund, Devine Counsel attorneys' fees and expenses of up to

24  approximately 1.09 percent ($4,525,000) of the Settlement Fund, and service awards for the current

25  Class Representatives of up to $80,000 each, plus $80,000 to the estate of deceased Class

26  Representative Brandon Marshall.  Courts have approved class notices even when they only

27  generally describe a settlement.  *See, e.g.*, *Mendoza v. United States*, 623 F.2d 1338, 1351 (9th Cir.

28

- 21 -

1    1980) ("very general description of the proposed settlement" satisfies standards).  This Notice

2    exceeds that standard.

3    **VII.    PROPOSED PLAN OF ALLOCATION**

4          A plan of allocation of class settlement funds is subject to the "fair, reasonable and

5    adequate" standard that applies to approval of class settlements.  *In re Citric Acid Antitrust Litig.*,

6    145 F. Supp. 2d 1152, 1154 (N.D. Cal. 2001).  "A plan of allocation that reimburses class members

7    based on the type and extent of their injuries is generally reasonable."  *In re Oracle Sec. Litig.*, No.

8    C-90-0931-VRW, 1994 U.S. Dist. LEXIS 21593, at *3 (N.D. Cal. June 16, 1994).  Here, as

9    explained above, Plaintiffs propose that the Settlement Fund be allocated based upon total base

10   salary received during the conspiracy period.  Such *pro rata* distributions are "cost-effective,

11   simple, and fundamentally fair."  *In re Airline Ticket Comm'n Antitrust Litig.*, 953 F. Supp. 280,

12   285 (D. Minn. 1997).  This is the same plan of allocation the Court approved in connection with the

13   prior settlements with Lucasfilm, Pixar, and Intuit, which are now final.  (Dkt. 915, at 7:7-18.)

14   **VIII.    THE COURT SHOULD SET A FINAL APPROVAL HEARING SCHEDULE**

15         The last step of the settlement approval process is the final approval hearing, at which the

16   Court may hear all evidence and argument necessary to evaluate the proposed settlement.  At that

17   hearing, proponents of the Settlement may explain and describe its terms and conditions and offer

18   argument in support of approval and members of the Class, or their counsel, may be heard in

19   support of or in opposition to the Settlement.  Plaintiffs propose the following schedule for final

20   approval of the Settlement:

| **Event** | **Date** |
|---|---|
| Notice of Class Action Settlement to Be Mailed and Posted on Internet | Within 14 days of receipt of Class member information for all Defendants |
| Class Counsel Motion for Attorneys' Fees and Costs, Motion for Named Plaintiffs' Service Awards, and Devine Counsel Motion for Attorneys' Fees and Expenses | To be completed 31 days from Notice Date |
| Opt-Out and Objection Deadline | 45 days from Notice Date |
| Notice Administrator Affidavit of Compliance with Notice Requirements | To be filed 30 days prior to the Final Approval Hearing |

| **Event** | **Date** |
|---|---|
| Motion for Final Approval | To be filed 70 days from the Notice Date and 21 days prior to the Final Approval Hearing |
| Replies in Support of Motions for Final Approval, Attorneys' Fees and Costs, and Named Plaintiffs' Service Awards to Be Filed by Class Counsel and Devine Counsel | To be filed 7 days prior to Final Approval Hearing |
| Final Approval Hearing | _____, 2015 |

## IX.   CONCLUSION

Based on the foregoing, Plaintiffs respectfully request that the Court:  (1) preliminarily approve the Settlement; (2) approve the proposed plan of notice to the Class; (3) appoint Gilardi & Co., LLC as the Notice Administrator; (4) set a schedule for disseminating notice to Class members, as well as deadlines to comment on, object to, or opt out of the Settlement; and (5) schedule a hearing pursuant to Rule 23(e) of the Federal Rules of Civil Procedure to determine whether the proposed Settlement is fair, reasonable, and adequate and should be finally approved.

Respectfully submitted,

Dated:  January 15, 2015          LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP

By:       */s/ Kelly M. Dermody*
Kelly M. Dermody

Richard M. Heimann (State Bar No. 63607)
Kelly M. Dermody (State Bar No. 171716)
Brendan Glackin (State Bar No. 199643)
Dean Harvey (State Bar No. 250298)
Anne B. Shaver (State Bar No. 255928)
275 Battery Street, 29th Floor
San Francisco, California  94111-3339
Telephone:  415.956.1000
Facsimile:  415.956.1008

1

JOSEPH SAVERI LAW FIRM, INC.

2

By:        */s/ Joseph R. Saveri*

3                        Joseph R. Saveri

4

Joseph R. Saveri (State Bar No. 130064)
James Dallal (State Bar No. 277826)

5

505 Montgomery, Suite 625
San Francisco, CA 94111

6

Telephone:  415. 500.6800
Facsimile:  415. 395.9940

7

*Co-Lead Class Counsel*

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 24 -