KEKER & VAN NEST LLP
ROBERT A. VAN NEST - # 84065
rvannest@kvn.com
DANIEL PURCELL - # 191424
dpurcell@kvn.com
EUGENE M. PAIGE - # 202849
epaige@kvn.com
JUSTINA SESSIONS - # 270914
jsessions@kvn.com
CODY S. HARRIS - # 255302
charris@kvn.com
633 Battery Street
San Francisco, CA 94111-1809
Telephone:     415 391 5400
Facsimile:      415 397 7188

Attorneys for Defendant
GOOGLE INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| IN RE:  HIGH-TECH EMPLOYEE ANTITRUST LITIGATION<br><br>THIS DOCUMENT RELATES TO:<br><br>ALL ACTIONS | Case No. 5:11-cv-2509-LHK<br><br>**DEFENDANTS' BRIEF IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Date:         March 19, 2015<br>Time:        1:30 p.m.<br>Courtroom: 8, 4th Floor<br>Judge:       Hon. Lucy H. Koh |

I.  INTRODUCTION

After many months of arm's-length negotiations conducted under the auspices of former federal judge Layn Phillips, Plaintiffs and Defendants Adobe Systems Incorporated, Apple Inc., Google Inc., and Intel Corporation (collectively, the "Settling Defendants") have reached an agreement to settle all claims in this case for a payment of $415,000,000 (the "Settlement"). As set forth in Plaintiffs' Memorandum in Support of Motion for Preliminary Approval of Class Action Settlement ("Motion"), the amount of the Settlement is $90.5 million more than the prior settlement reached by the parties. Motion at 1.[1] Virtually all of this additional amount will be available as compensation to the class, for Co-Lead Class Counsel have agreed not to seek any additional fee award beyond the roughly $81 million proposed in connection with the prior settlement. *Id*.

For the reasons set forth in this brief, the Settling Defendants join in Plaintiffs' request that the Court give preliminary approval to the Settlement pursuant to Federal Rule of Civil Procedure 23(e).

II.  ARGUMENT

   A.  **Legal Standard for Preliminary Approval**

The Ninth Circuit has repeatedly emphasized the "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008); *see also Officers for Justice v. Civil Serv. Comm'n of City & Cnty. of S.F.*, 688 F.2d 615, 625 (9th Cir. 1982) (holding that "voluntary conciliation and settlement are the preferred means of dispute resolution" and that this principle "is especially true in complex class action litigation").

Although the Ninth Circuit has never articulated the precise test a district court should apply when considering whether to grant *preliminary* approval to a class action settlement, numerous district courts have held that the standards for preliminary approval "are not as

---

[1] This Court had denied preliminary approval to the prior settlement in its August 8, 2014 Order Denying Plaintiffs' Motion for Preliminary Approval of Settlements with Adobe, Apple, Google, and Intel ("Aug. 8 Order") (Dkt. 974).

stringent as those applied for final approval." *In re Crocs, Inc. Sec. Litig.*, 2013 WL 4547404, at *3 (D. Colo. Aug. 28, 2013). This Court has held that in order to grant preliminary approval of proposed settlements under Rule 23(e), "the Court need only find that they fall within 'the range of reasonableness.'" *In re High-Tech Employee Antitrust Litig.*, 2013 WL 6328811, at *1 (N.D. Cal. Oct. 30, 2013) (*quoting* Conte et al., Newberg on Class Actions § 11.25 at 11-91 (4th ed. 2002)); *accord, State of California v. eBay, Inc.*, 2014 WL 4273888, at *5 (N.D. Cal. Aug. 29, 2014). A class action settlement "falls within the 'range of possible approval' if there is a conceivable basis for presuming that the standard applied for final approval – fairness, adequacy, and reasonableness – will be satisfied." *In re NFL Players' Concussion Injury Litig.*, 301 F.R.D. 191, 198 (E.D. Pa. 2014).

Many courts have also held that at the preliminary approval stage, settlements that "are the result of arm's-length negotiations among experienced counsel" are "entitled to 'an initial presumption of fairness.'" *In re High-Tech Employee Antitrust Litig.*, 2013 WL 6328811, at *1 (*quoting* Newberg, § 11.41); *see also Glaberson v. Comcast Corp.*, 2014 WL 7008539, at *4 (E.D. Pa. Dec. 12, 2014) ("At the preliminary approval stage, a settlement is presumed to be fair when the negotiations were at arms'-length, there was sufficient discovery, and the proponents of the settlement are experienced in similar litigation"); *In re NFL Players' Concussion Injury Litig.*, 301 F.R.D. at 198 (granting preliminary approval of class settlement and noting that "[w]hether a settlement arises from arms' length negotiations is a key factor in deciding whether to grant preliminary approval"); *In re Netflix Privacy Litig.*, 2013 WL 1120801, at *4 (N.D. Cal. Mar. 18, 2013) (same). This widely accepted approach makes sense given that "[t]he principal purpose of the Court's supervision of class action settlements is to ensure 'the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties.'" Aug. 8 Order at 5:8-11, *quoting Officers for Justice*, 688 F.2d at 625.

For the reasons that follow, as well as the reasons set forth in Plaintiffs' Motion, the settlement that the parties have reached here—one of the largest ever in an employee class action—clearly falls within the "range of reasonableness" or "range of possible approval," is

presumptively fair, and readily satisfies all requirements for preliminary approval under Fed. R. Civ. P. 23(e).

### B. The Settlement Is Within the Range of Reasonableness

As set forth in Plaintiffs' Motion and as noted above, the Settlement presently before the Court is entitled to a presumption of fairness because it is the product of arm's-length, non-collusive negotiations between informed and experienced counsel, reached over several months with the aid of a highly respected retired federal judge acting as a mediator.  Motion at 8, 16.  In addition to this presumption, several other factors support preliminary approval, including the risks Plaintiffs would face at trial given their claims and their damages strategy, and the size of the Settlement when measured against the previous settlements that have already received final approval from this Court.  These additional factors are addressed below.

#### 1. Plaintiffs Would Face Substantial Risks at Trial

Plaintiffs correctly point out in their Motion that any recovery at trial would be "highly uncertain."  Motion at 18.  Indeed, Plaintiffs have made no secret of the substantial risks they and the class would face if the case proceeded to trial.  During the June 19, 2014 hearing regarding preliminary approval of the prior settlement, Plaintiffs informed the Court that they had "done jury testing" to "find out what jurors think about this evidence, what jurors think about these class members, what jurors think about certain themes that are in this case." 6/19/14 Tr. 24:23-25:3 (Dkt. 948).  Plaintiffs' counsel described the results of that jury testing as "sober[ing]," and articulated "several" of the "very, very real risks" Plaintiffs faced:

- "There's a risk that a jury might find that there was no overarching conspiracy";
- "the jury might conclude that these workers are among the most desirable in the world and they had plenty of other opportunity to go other places besides these seven companies";
- jurors might not "like plaintiffs' damages model," or "think that it wasn't $3 billion," but "less than $1 billion," or "some small fraction";
- "a jury, hearing a whole bunch of different experts, even as we think we have the

3
DEFS.' BRIEF IN SUPPORT OF PLS.' MOT. FOR PRELIMINARY APPROVAL
OF CLASS ACTION SETTLEMENT
Case No. 5:11-cv-2509-LHK

best one, might come to a different perspective."

*Id.* at 25:4-28:1.

Plaintiffs have thus made clear that in light of these risks and their duties to the class, "[i]t is not without . . . great concern that we would ever take this case to trial." *Id.* at 64:2-3. This concern is borne out by other, recent class action cases in this District that resulted in a verdict of no liability, *see* Motion at 18 (discussing *Apple iPod iTunes Antitrust Litig.,* Case No. 05-cv-0037 (YGR) (N.D. Cal. 2014)), and antitrust conspiracy cases that included criminal guilty pleas yet resulted in far smaller damage awards than the plaintiffs in those cases sought, much less the amounts sought by Plaintiffs here. *Id.* (discussing *In re: TFT-LCD (Flat Panel) Antitrust Litig.*, Case No. M07-1827-SI (N.D. Cal. 2012)). These cases, among others, demonstrate that jury verdicts in cases like this are very difficult to predict.

Plaintiffs' concerns about the outcome of a trial in this case are well-founded. Plaintiffs' case rests on the counterintuitive theory that six separate, bilateral "do-not-call" agreements amounted to one overarching conspiracy among all of the Defendants to suppress compensation across a very large, diverse, nationwide group of highly-paid employees, none of whom lost more than three potential sources of cold calls among the hundreds of employers in the market. As Plaintiffs themselves acknowledged, this argument could be hard to sell to a jury.[2]

Moreover, Plaintiffs' damages theory, while resulting in a very large number, carries with it great risks. For example, Plaintiffs' expert, Dr. Leamer, admitted in his deposition that his damages model cannot be used to establish damages if the jury finds that *even one* of the defendants was not part of the alleged overarching conspiracy. Dkt. 564, at 13; Dkt. 938, at 11; Dkt. 569-14, at 1031:19-1032:14. In addition, even if Plaintiffs could convince a jury that there was an overarching conspiracy among all seven Defendants, Plaintiffs still ran the risk that the jury could reject their damages model for any number of reasons. First, at the most basic level,

---

[2] Plaintiffs have acknowledged that during a period when "many prospective jurors suffered job losses or stagnant wages, particularly after the economic crisis of 2008, average total compensation of the Class increased every year of available data, from $128,879.59 in 2001 to $217,298.70 in 2011." Dkt. 928, at 13, citing Dkt. 856-10 at 17.

4

DEFS.' BRIEF IN SUPPORT OF PLS.' MOT. FOR PRELIMINARY APPROVAL
OF CLASS ACTION SETTLEMENT
Case No. 5:11-cv-2509-LHK

896175.01

Dr. Leamer's model purports to show that compensation was suppressed during the alleged conspiracy period when, in fact, compensation was increasing faster during that period than before or after. Similarly, Dr. Leamer admitted that, because his model aggregates data for all seven companies, it cannot determine whether compensation at any single defendant company was actually lower during the alleged conspiracy period than it would have been in the absence of the alleged conspiracy. Declaration of Justina K. Sessions in Support of Defendants' Brief in Support of Pls.' Mot. for Preliminary Approval ("Sessions Decl.") Ex. 2 at 1009:23-1010:6, 1063:11-13, 1063:24-1064:3, 1064:13-18. Dr. Leamer conceded that even he could not explain what was driving the results of his model. Sessions Decl. Ex. 1 at 400:23-401:9, Ex. 2 at 939:12-14, 1105:7-9. A jury could easily reject a model that was so complicated that the expert could not explain it.

Dr. Leamer also conceded that there was a 50% likelihood that one would observe the results of his model merely by chance. *See generally* Defs.' Mot. to Exclude Testimony of Dr. Leamer at 4-10 (Dkt. 570). Indeed, Dr. Leamer's $3 billion-plus damages figure is not statistically significant at any generally accepted level used in econometrics.[3] And the 58% p-value of one "conduct" variable indicates the alleged damages from that variable are more likely the result of chance than what Dr. Leamer attributes to "conduct." Plaintiffs correctly worried that even if the jury found liability, it might be unwilling to award billions of dollars in damages based on a model that is as reliable as a coin flip.

As Plaintiffs' counsel has explained, the risk of zero damages is a meaningful one that Plaintiffs' counsel could not ignore in reaching the Settlement. *See* Dkt. 938 at 10:11-12 (acknowledgment by Plaintiffs' counsel that the class "faced a substantial risk of litigating the case to trial and receiving nothing."). In fact, in urging the Court to approve the prior settlement, Plaintiffs told the Court that "it would be *absolutely unethical*" and "malpractice" to reject the settlement "and go to trial knowing that there might be *a very strong risk that the class gets*

---

[3] The two "conduct" variables in his model that account for the vast majority of alleged damages have p-values of 22% and 58%, which are far above the 1%, 5%, and 10% significance levels Dr. Leamer reported and any levels accepted by courts. Sessions Decl. Ex. 3.

5
DEFS.' BRIEF IN SUPPORT OF PLS.' MOT. FOR PRELIMINARY APPROVAL
OF CLASS ACTION SETTLEMENT
Case No. 5:11-cv-2509-LHK

896175.01

*nothing*." 6/19/14 Tr. 22:23-25, 30:4-7 (emphases added). That remains the case today, albeit with even higher stakes: the current Settlement provides class members with nearly $90.5 million more than provided for in the prior agreement, and since class counsel has agreed to seek no increase in their fee award, nearly all of this new monetary consideration will go to the class members (reduced only by any fee award to Named Plaintiff Michael Devine's counsel).

Given the numerous uncertainties, contingencies, and party-specific considerations that go into negotiating a mutually acceptable settlement, the proper course—particularly at the preliminary approval stage—is to "put a good deal of stock in" the judgment of the parties themselves, *see Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009), especially when the settlement was arrived at after months of arm's-length discussions involving an experienced mediator. *In re Netflix Privacy Litig.*, 2013 WL 1120801, at *4. As these cases recognize, the parties, guided by an experienced mediator, are in the best position to weigh the costs of trial, their own risk tolerance, the effect of joint-and-several liability rules, and the likelihood of success on the merits.

Plaintiffs have previously submitted declarations to this Court averring that, based on their years of work litigating this case, a $324.5 million settlement was fair and reasonable to the class. Without question, then, the $415 million Settlement agreement before the Court falls within the range of reasonableness. Indeed, as set out in the Settlement Agreement, both class counsel and counsel for Mr. Devine agree that the Settlement is "beneficial to the Class," Agreement ¶ VIII.S, and that "the terms of the Settlement Agreement are in the best interests of the Class and are fair, reasonable, and adequate. *Id.*, p. 3. Taking those well-informed views into account, the Court should grant preliminary approval of the Settlement.

### C. The Settlement Is Also Fair, Reasonable, and Adequate When Compared to the Benchmark the Court Referenced in Its Prior Order

The reasonableness of the proposed Settlement is also supported by the fact that it far exceeds the "appropriate benchmark settlement" of $380 million that the Court posited in its previous Order. Aug. 8 Order at 8. The Court reached the $380 million figure by reasoning that

Plaintiffs' earlier settlements with Lucasfilm, Pixar, and Intuit, which totaled $20 million, accounted for only 5% of total class compensation at issue. Extrapolating from there, the Court reasoned that if 5% of class compensation was worth $20 million, the remaining 95% of class compensation would, algebraically speaking, be worth $380 million. *Id.* at 7 & n.8.

Settling Defendants disagree with the Court's "benchmark" approach and methodology and have sought writ relief from the Ninth Circuit.[4] Nonetheless, the new $415 million Settlement exceeds even the Court's stated benchmark amount by $35 million. Although that is a substantial increase in its own right, the increased economic benefit to the class from the Settlement is all the more striking when considered on a net basis. For the Lucasfilm, Pixar, and Intuit settlements, the Court accepted Plaintiffs' proposal to allocate $8.7 million (40% of the $20 million total) to fees and expenses, leaving only $11.3 million to be distributed to class members. Using this net figure as the starting point and applying the equation the Court referenced in its Order yields a benchmark recovery by class members of $212.8 million. By contrast, in the new Settlement, less than 20% of the total will be allocated for fees and expenses, leaving approximately $333.6 million to be distributed to the class members. *See* Motion at 10-11. Thus, when one applies the Court's benchmarking methodology on a net basis, the Settlement exceeds the relevant benchmark by at least $120 million.[5]

Because the Settlement greatly surpasses the benchmark suggested by the Court in its prior Order, and for all the other reasons set out in this brief, the Settlement is well within the

---

[4] Settling Defendants will not repeat here the reasons for their disagreement with the Court's prior approach, which are set forth in the briefing before the Ninth Circuit. *See* Ninth Cir. Case No. 14-72745, Dkt. 1-2, 10. The Ninth Circuit called for a response to the writ petition and then set the matter for oral argument in March 2015. *See* Dkt. 993. As Plaintiffs' Motion notes, the Ninth Circuit could overturn the Court's prior order and reduce the Class' recovery to $324.5 million. Motion at 19-20.

[5] In determining the appropriate benchmark amount, the Court "set up the simple equation: $5/95 = \$20,000,000/x$." Order at 7 n.8. When one replaces the *gross* $20 million figure with the *net* amount of $11.3 million and solves for x, the equation's result is $212.8 million. The Court's calculation was also meaningfully impacted by the use of rounding. Plaintiffs' damages model shows that 94.386% (not 95%) of the damages would be payable to the Settling Defendants' employees. Dkt. 964-5, at 380 Ex. V.3. Using 94.386% instead of 95% (but retaining gross figures) would have yielded a benchmark of $336.2 million. Using 94.386% and net figures would have yielded a benchmark of $118.3 million.

range of reasonableness. The Court should grant preliminary approval and order that the details of the Settlement be disseminated to class members for their consideration.

## III. CONCLUSION

Based on the foregoing, and for the reasons set forth in Plaintiffs' Motion for Preliminary Approval of Class Action Settlement, Defendants respectfully join Plaintiffs' request that the Court preliminarily approve the Settlement.

Dated: January 15, 2015                     KEKER & VAN NEST LLP

                                    By:     /s/ *Robert A. Van Nest*
                                            Robert A. Van Nest

                                            Daniel Purcell
                                            Eugene M. Paige
                                            Justina Sessions
                                            Cody S. Harris
                                            633 Battery Street
                                            San Francisco, CA  94111
                                            Telephone:    (415) 391-5400
                                            Facsimile:    (415) 397-7188

Dated: January 15, 2015                     MAYER BROWN LLP

                                    By:     */s/ Lee H. Rubin*
                                            Lee H. Rubin

                                            Edward D. Johnson
                                            Donald M. Falk
                                            Two Palo Alto Square
                                            3000 El Camino Real, Suite 300
                                            Palo Alto, CA  94306-2112
                                            Telephone:    (650) 331-2057
                                            Facsimile:    (650) 331-4557

                                            *Attorneys for Defendant GOOGLE INC.*

| | | |
|---|---|---|
| Dated: January 15, 2015 | | O'MELVENY & MYERS LLP |

By: /s/ *Michael F. Tubach*
Michael F. Tubach

George A, Riley
Christina J. Brown
Two Embarcadero Center, 28th Floor
San Francisco, CA  94111
Telephone:     (415) 984-8700
Facsimile:      (415) 984-8701

*Attorneys For Defendant APPLE INC.*

Dated: January 15, 2015                    JONES DAY

By: /s/ *David C. Kiernan*
David C. Kiernan

Robert A. Mittelstaedt
Craig A. Waldman
555 California Street, 26th Floor
San Francisco, CA  94104
Telephone:     (415) 626-3939
Facsimile:      (415) 875-5700

*Attorneys for Defendant ADOBE SYSTEMS INC.*

Dated: January 15, 2015                    MUNGER TOLLES & OLSON LLP

By: */s/ Gregory P. Stone*
Gregory P. Stone

355 South Grand Avenue, 35th Floor
Los Angeles, CA  90071-1560
Telephone:     (213) 683-9100
Facsimile:      (213) 687-3702

*Attorneys for Defendant INTEL CORPORATION*

**ATTESTATION**: Pursuant to Civil Local Rule 5-1(i)(3), the filer attests that concurrence in the filing of this document has been obtained from all signatories.