# Exhibit 2

```
 1              UNITED STATES DISTRICT COURT
 2      NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION
 3
 4    IN RE:  HIGH-TECH EMPLOYEE      No. 11-CV-2509-LHK
 5    ANTITRUST LITIGATION
 6    _____
 7
 8           CONFIDENTIAL PORTIONS DESIGNATED
 9
10       Continued Videotaped Deposition of EDWARD E.
11       LEAMER, PH.D., Volume 3, taken at the offices
12       of O'Melvey & Myers LLP, Two Embarcadero Center,
13       Suite 2800, San Francisco, California commencing
14       at 9:03 a.m., on Monday, November 18, 2013,
15       before Leslie Rockwood, RPR, CSR No. 3462.
16
17
18
19
20
21
22
23
24    JOB No. 1765129
25    PAGES 857 - 1169
```

Page 857

```
 1   APPEARANCES OF COUNSEL:
 2
 3   FOR THE PLAINTIFFS AND PROPOSED CLASS:
 4
 5       LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
 6       BY:  BRENDAN P. GLACKIN, ESQ.
 7       275 Battery Street, 29th Floor
 8       San Francisco, California 94111-3339
 9       (415) 956-1000
10       bglackin@lchb.com
11
12       JOSEPH SAVERI LAW FIRM
13       BY:  JOSEPH R. SAVERI, ESQ.
14       BY:  JAMES G.B. DALLAL, ESQ.
15       505 Montgomery Street, Suite 625
16       San Francisco, California 94111
17       (415) 500-6800
18       jsaveri@saverilawfirm.com
19       jdallal@saverilawfirm.com
20
21
22
23
24
25
```

Page 858

```
 1   APPEARANCES OF COUNSEL (Continued):
 2
 3   FOR THE DEFENDANT GOOGLE:
 4
 5        KEKER & VAN NEST LLP
 6        BY:   JUSTINA K. SESSIONS, ESQ.
 7        633 Battery Street
 8        San Francisco, California 94111-1809
 9        (415) 676-2293
10        jsessions@kvn.com
11
12   FOR THE DEFENDANTS ADOBE SYSTEMS AND INTUIT:
13
14        JONES DAY
15        BY:   ROBERT MITTELSTAEDT, ESQ.
16        BY:   DAVID C. KIERNAN, ESQ.
17        555 California Street, 26th Floor
18        San Francisco, California 94104
19        (415) 626-3939
20        rmittelstaedt@jonesday.com
21        dkiernan@jonesday.com
22
23
24
25
```

Veritext National Deposition & Litigation Services
877-955-3855

```
 1   APPEARANCES OF COUNSEL (Continued):
 2
 3   FOR THE DEFENDANT APPLE, INC.:
 4
 5       O'MELVENY & MYERS LLP
 6       BY:   GEORGE A. RILEY, ESQ.
 7       BY:   CHRISTINA BROWN, ESQ.
 8       BY:   MICHAEL R. TUBACH, ESQ.
 9       Two Embarcadero Center, 28th Floor
10       San Francisco, California 94111-3823
11       (415) 984-8700
12       griley@omm.com
13       cjbrown@omm.com
14       mtubach@omm.com
15
16   FOR THE DEFENDANT GOOGLE INC.:
17
18       MAYER BROWN LLP
19       BY:   DONALD M. FALK, ESQ.
20       Two Palo Alto Square, Suite 300
21       Palo Alto, California 94306-2112
22       (650) 331-2000
23       dfalk@mayerbrown.com
24
25
```

Page 860

```
 1    APPEARANCES OF COUNSEL (Continued):

 2

 3    FOR THE DEFENDANT INTEL CORPORATION:

 4

 5        MUNGER TOLLES & OLSON LLP

 6        BY:  BRADLEY S. PHILLIPS, ESQ.

 7        355 South Grand Avenue, 35th Floor

 8        Los Angeles, California 90071

 9        (213) 683-9262

10        Brad.Phillips@mto.com

11

12    Also Present:

13

14        Dawn E. Eash, M.S., Berkeley Research Group

15        Elizabeth H. Newton, Ph.D., NERA Economic Consulting

16        Alan Dias, Videographer

17        Sean McAleer, Videographer

18

19

20

21

22

23

24

25
```

```
 1    October 28th, 2013.
 2         A.  I'm sorry, which exhibit?
 3         Q.  Exhibit 2.
 4         A.  2.  Okay, yes.
 5         Q.  Exhibit 2 includes the compensation model that          10:53:40
 6    you used to compute damages in this case; correct?
 7         A.  That's correct.
 8         Q.  Let's look at variable 19, the log of age in
 9    years.  And this is, as you said on paragraph 19, what
10    this coefficient reflects is how age is related to             10:54:10
11    compensation absent the agreements; correct?
12         A.  I don't think that's completely correct because
13    I think you have to realize that coefficient is what's
14    called a partial coefficient or partial regression,
15    meaning that controlling for all the other variables in        10:54:32
16    the equation, that's the coefficient that age wants to
17    have.
18         Q.  Right.  So controlling for all the other
19    variables in the model, the variable for the log of age
20    for years is shown as a negative .6561; correct?              10:54:48
21         A.  That's correct.
22         Q.  And so this negative coefficient means that all
23    other things being equal, as the employee ages, the less
24    they are expected to be paid; correct?
25         A.  That's, I think, a bit misleading.  I understand    10:55:11
```

Page 938

```
 1    that data -- this is not an error in computing that
 2    coefficient.  This model is estimated from exactly the
 3    same models that you -- that you referred to a minute ago
 4    in which the coefficient on age is positive and the
 5    coefficient on age squared is negative, thus using              10:55:32
 6    exactly the same data, the data set embodies that shape
 7    that you imagine is there.  That's embodied in Exhibit 2.
 8           But the thing is, is that you've got a bunch of
 9    other variables in Exhibit 2 that you didn't have in
10    those simple year-by-year regressions that we saw              10:55:50
11    previously.
12           So you have to be extremely careful in
13    interpreting those coefficients because they're very
14    complex animals in this -- in this setting.
15       Q.  So you would agree with me that this shows a            10:56:03
16    negative coefficient which in your model would mean that
17    two employees at the same defendant with the same tenure,
18    everything else in the model being equal, the model
19    estimates that the older worker would be paid less;
20    correct?                                                        10:56:22
21           MR. GLACKIN:  Object to the form.
22           THE WITNESS:  That is not correct.
23       Q.  BY MR. RILEY:  Why is that not correct?
24       A.  Well, if you said -- if you formed the predicted
25    compensation using this model and then you looked at the       10:56:28
```

| | | |
|---|---|---|
| 1 | age compensation distribution, it's going to very closely | |
| 2 | reproduce the sample.  And the reason that this is | |
| 3 | confusing -- believe me, I was worried about this, too. | |
| 4 | And you need to know that this is very dependent on the | |
| 5 | lag structure that we have here. | 10:56:50 |
| 6 | So the age is going to be to some extent picked | |
| 7 | up by how much you earned the previous year.  Age is | |
| 8 | going to be picked up to some extent how much you earned | |
| 9 | by the year before that.  So age is entering into this | |
| 10 | calculation of very complex way through these lag effects | 10:57:08 |
| 11 | as well. | |
| 12 | Q.  So these variables are interdependent, then? | |
| 13 | MR. GLACKIN:  Object to the form. | |
| 14 | THE WITNESS:  I think the better way of saying | |
| 15 | it is the interpretation is interdependent.  It's a naive | 10:57:19 |
| 16 | interpretation is the one that you suggested, which is | |
| 17 | that this model would imply that the age earnings profile | |
| 18 | is upside down.  And trust me, the model overall doesn't | |
| 19 | have that. | |
| 20 | The peculiar feature is that that age | 10:57:35 |
| 21 | coefficient has that sign, and it has to do in this case | |
| 22 | with the dynamical model that's being estimated.  We | |
| 23 | know -- we know that if you didn't have the dynamics in | |
| 24 | there and you did it year by year, you'd get that upward | |
| 25 | sloping profile that you'd expect. | 10:57:52 |

Page 940

```
 1   science, but your intuition with regard to science is
 2   really about simple correlations, not partial
 3   correlations, which are what these coefficients are.
 4          So I decided to let this thing -- let the data
 5   speak, let it determine exactly what mixture of variables      13:19:56
 6   is the best one for explaining what -- what level of
 7   compensation would normally occur.
 8          So it's saying -- let me just be clear.  So it's
 9   saying that if you hold fixed the San Jose employment
10   sector, the number of transfers among defendants, the         13:20:15
11   number of new hires per number of employees, and all
12   these other variables in the equation, then, like you
13   said, holding everything constant, then this increment
14   is -- has the wrong science.
15          But that hypothetical is a nonsense hypothetical       13:20:31
16   because the real world doesn't behave that way.  These
17   things all move together in some complicated way.  So you
18   can't make that hypothetical.  It's not a sensible
19   hypothetical.
20       Q.  Would you expect an increase in hiring at Google      13:20:44
21   to have the same effect on Adobe's employees as on
22   Apple's employees?
23       A.  Would I expect?  You know, this again addresses
24   the question of how much can you squeeze out of this data
25   set.  And in principle, you need to do desegregation.         13:21:02
```

Page 1009

```
 1       You need to allow for the different firms to have

 2       different impacts, which is what you're making a

 3       reference to.

 4               And I completely agree that in an ideal world,

 5       we would desegregate and you would talk about a different      13:21:16

 6       data analysis for each of the defendants.

 7               But we're not in an ideal world.  We're in a

 8       world of ten observations or maybe fewer because of the

 9       dynamics in the model and way too many variables to allow

10       that to happen.                                                13:21:34

11          Q.  And the problem with aggregation is that you

12       have these effects, such as Google is hiring more people,

13       Adobe is flat or laying people off, and yet it's all

14       combined into one model, into one conduct variable?

15               MR. GLACKIN:  Object to the form.                      13:21:53

16          Q.  BY MR. RILEY:  Isn't that the problem?

17          A.  I wouldn't call it a problem.  That's the

18       assumption that lies behind this model.  And

19       alternatively, you haven't said explicitly, but it would

20       be to have the hiring for each one of the defendants in       13:22:04

21       this equation rather than their aggregate.  As I said

22       before, in an ideal world, that's exactly what you do.

23       You let the data speak about the differences that the

24       hiring rates for the certain defendants would have on

25       compensation overall, but we're not in the ideal world.       13:22:18
```

```
 1    mean that it's the truth.  It's a function of the
 2    specific way in which this model is estimated.
 3        Q.  And you don't question the accuracy of the
 4    estimates that are made here or the computation of
 5    undercompensation in Appendix 11C?                         14:49:07
 6        MR. GLACKIN:  Object to the form.  Sorry.
 7        THE WITNESS:  Well, I wouldn't use the blues.
 8    Like I said before, I think it's an implausible approach
 9    to rely on a data set that suggests that Adobe was harmed
10    and Adobe's employees were helped by these agreements.  I  14:49:29
11    think the same is true for Lucasfilm and Pixar.
12        So I think it's very important that you
13    understand that these are not the standard errors that
14    Dr. Murphy would have us compute.  These are the standard
15    errors that are too low.  So this particular display       14:49:44
16    understates the amount of uncertainty that applies to
17    these coefficients.
18        So if you saw the amount of uncertainty that
19    applies to each one of those coefficients, you might be
20    taken aback by what this disaggregation has done, and      14:49:59
21    allows wild estimates that have -- the symptom of the
22    overestimate -- over-parameterization are two, two
23    symptoms.  One is wild estimates; the other one is large
24    standard errors.
25        And you can see the wild estimates, and then the       14:50:16
```

Veritext National Deposition & Litigation Services
877-955-3855

```
 1   question is, all right, if you had the correct standard
 2   errors, what's the story there.
 3        Q.   BY MR. RILEY:  But isn't it an equally
 4   supportable inference that what this shows is that the
 5   basic model on which you have founded your conclusions is     14:50:28
 6   not reliable?
 7        A.   That's not true at all.
 8        Q.   Because once you disaggregate it, which you say
 9   is the ideal solution, it produces results which are
10   fundamentally inconsistent with your theory?                  14:50:43
11        A.   What's ideal is a data set that allows the
12   desegregation to occur.  That is a data set that doesn't
13   allow it.  You can always play this game of overwhelming
14   a regression by adding more variables.  And then you're
15   going to get nonsense results and you're going to get big     14:50:59
16   standard errors.
17             So the possibility that you could do that is
18   really irrelevant to the game here.  So the problem with
19   this regression is Dr. Murphy -- this case is not as bad
20   as the other one.  The other one is egregious in terms of    14:51:10
21   the number of additional variables they added into the
22   equation.  This, to my mind, is still too much
23   desegregation.
24             You're trying to estimate a separate
25   coefficient, a separate conduct coefficient for each of      14:51:23
```

1     the defendants, and the data, unfortunately, don't allow
2     that.  At least we haven't found a model that would allow
3     that to happen.
4          Q.  So in Exhibit 112, then, what you believe is
5     part of the problem here is that the standard errors are          14:51:35
6     too large.  Is that your -- is that your criticism?
7          A.  Well, so my comment is that when you ask a lot
8     of questions, you get pushback from a weak data set.  The
9     pushback is -- comes in the form of saying "I can't do
10    this."  The data set says "I cannot do this."  How does          14:51:58
11    it tell you that it can't do that?  It gives you wild
12    estimates and it gives you big standard errors.
13              So you're trying to find out -- and I agree with
14    your goal.  I mean, the ideal goal would be to have a
15    separate estimate that characterizes specific                    14:52:14
16    circumstances that Adobe was experiencing and focus in on
17    that very closely.  We don't have a data set that can do
18    that.
19              So I agree with your goal, but if you go down
20    that path without realization of what you're doing to the       14:52:26
21    inferences, namely, do you get wild conclusions and big
22    standard errors, that's inappropriate.  You have to have
23    some wisdom that allows some differences among the firms
24    but not as much as this.
25              So what I've done is I've tried to think what it      14:52:41

```
 1            THE WITNESS:  I don't consider it misleading.
 2    This is completely accurate.  The question is whether you
 3    understand what it means, and I worry that you don't.
 4            MR. MITTELSTAEDT:  Move to strike all of that.
 5       Q.   Econ 1 is the author of these notes, and you're      15:48:45
 6    the one who approved the notes; correct?
 7       A.   That's correct.
 8       Q.   Now if you look at line 27 and 28, those are two
 9    of the variables that Econ 1 used in this regression; is
10    that correct?                                                15:49:08
11       A.   At my request.
12       Q.   And why did you use both of those variables?
13       A.   They measure potentially different things.
14       Q.   Okay.  What does the first one measure?
15       A.   It's the rate of hiring, that is, new hires in a    15:49:27
16    firm relative to the employees in the previous year.
17       Q.   And the second one?
18       A.   It's the number of -- absolute number of new
19    hires.
20       Q.   Okay.  And your belief is that you need both of     15:49:38
21    them in there to have a reliable regression; is that
22    correct?
23       A.   Well, I think that those variables could both
24    play a role in setting of compensation.  In other words,
25    it could be that the -- it's the hiring rate that           15:49:53
```

Veritext National Deposition & Litigation Services
877-955-3855

```
 1    matters, or it could be the absolute number of hiring

 2    that really matters.

 3         Q.   And after running the regression, what

 4    conclusion did you come to about the importance of those

 5    variables?                                                        15:50:05

 6         A.   I didn't come to a conclusion with regard to

 7    those.  As I said before, these are partial regression

 8    coefficients, and it's very difficult to interpret the

 9    coefficients.

10              So my goal was not to produce an estimate that         15:50:18

11    had all the correct science with regard to the control

12    variables, but instead to let the data form the controls

13    that it sees as most appropriate.

14         Q.   Did you reach any conclusion about whether or

15    the extent to which those variables played a role in             15:50:40

16    setting compensation?

17         A.   Well --

18              MR. GLACKIN:  Object to the form.

19              THE WITNESS:  They do play a role.  I mean, I

20    don't know whether we're talking about whether the effect        15:50:57

21    is measurable or not, but they help control for the

22    circumstances -- and consequently impact the damage

23    estimate.

24         Q.   BY MR. MITTELSTAEDT:  Do they play a measurable

25    role?                                                            15:51:07
```

```
1        A.   They -- if you look at Exhibit 3, which is on
2    page -- the next page, you'll discover in the T column,
3    which measures measurability, it's the number of new
4    hires that's the most measurable effect, meaning that the
5    T value is the largest in absolute value for that              15:51:25
6    variable.
7        Q.   And the -- the variable line 27, is not
8    statistically significant; correct?
9        A.   Yeah, that's true.  Which means, by the way,
10   it's not going to matter much if you omit that variable.       15:51:40
11   It's the ones that have the higher T values that going to
12   have the bigger impact.
13       Q.   So you could omit variable at line 27 and add
14   another variable in its place without affecting the
15   robustness of this regression; is that right?                  15:51:55
16            MR. GLACKIN:  Object to the form.
17            THE WITNESS:  You'll have to tell me what you
18   mean by "robustness."
19       Q.   BY MR. MITTELSTAEDT:  The reliability.
20       A.   I'd have to see the regression that you're            15:52:03
21   proposing, but it's possible that there's a more reliable
22   model out there and -- but I'd have to see it to believe
23   it.
24       Q.   What does the variable at line 31 on Exhibit 2
25   measure?                                                       15:52:20
```

```
1    STATE OF CALIFORNIA    ) ss:
2    COUNTY OF MARIN        )
3
4         I, LESLIE ROCKWOOD, CSR NO. 3452, do hereby
5    certify:
6         That the foregoing deposition testimony was
7    taken before me at the time and place therein set forth
8    and at which time the witness was administered the oath;
9         That testimony of the witness and all objections
10   made by counsel at the time of the examination were
11   recorded stenographically by me, and were thereafter
12   transcribed under my direction and supervision, and that
13   the foregoing pages contain a full, true and accurate
14   record of all proceedings and testimony to the best of my
15   skill and ability.
16        I further certify that I am neither counsel for
17   any party to said action, nor am I related to any party
18   to said action, nor am I in any way interested in the
19   outcome thereof.
20        IN WITNESS WHEREOF, I have subscribed my name
21   this 20th day of November, 2013.
22
23
24                    [signature: Leslie Rockwood]
25                    LESLIE ROCKWOOD, RPR, CSR NO. 3462
```

Page 1169