KEKER & VAN NEST LLP
ROBERT A. VAN NEST - # 84065
rvannest@kvn.com
DANIEL PURCELL - # 191424
dpurcell@kvn.com
EUGENE M. PAIGE - # 202849
epaige@kvn.com
JUSTINA SESSIONS - # 270914
jsessions@kvn.com
CODY S. HARRIS - # 255302
charris@kvn.com
633 Battery Street
San Francisco, CA 94111-1809
Telephone:     415 391 5400
Facsimile:     415 397 7188

Attorneys for Defendant
GOOGLE INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| IN RE:  HIGH-TECH EMPLOYEE ANTITRUST LITIGATION<br><br>THIS DOCUMENT RELATES TO:<br><br>ALL ACTIONS | Case No. 5:11-cv-2509-LHK<br><br>**DECLARATION OF CODY S. HARRIS IN SUPPORT OF DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL** |

**[FILED UNDER SEAL]**

DECLARATION OF CODY S. HARRIS IN SUPPORT OF DEFENDANTS' OPPOSITION TO
PLAINTIFFS' MOTION TO COMPEL
Case No. 5:11-cv-2509-LHK

816335.01

I, Cody S. Harris, declare as follows:

1.      I am an attorney licensed to practice law in the State of California and am an associate of the law firm of Keker & Van Nest LLP ("KVN"), counsel for Defendant Google, Inc., in this matter.

2.      I have knowledge of the facts set forth herein, and if called upon as a witness, I could testify to them competently under oath.

3.      Attached hereto as **Exhibit A** is a true and correct copy of the Reply Memorandum in Support of Plaintiffs' Motion to Compel filed on February 20, 2002, in *In re Terazosin Hydrochloride Antitrust Litig.*, Case No. 99-1317 (S.D. Fla.) (Dkt. 662).

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and that this declaration was executed on April 15, 2014, in San Francisco, California.

*/s/ Cody S. Harris*
Cody S. Harris

---

1

DECLARATION OF CODY S. HARRIS IN SUPPORT OF DEFENDANTS' OPPOSITION TO
PLAINTIFFS' MOTION TO COMPEL
Case No. 5:11-cv-2509-LHK

816335.01

# EXHIBIT A
# [FILED UNDER SEAL]

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Southern Division

| | |
|---|---|
| IN RE: TERAZOSIN HYDROCHLORIDE ) | MASTER FILE NO. 99-MDL-1317 |
| ANTITRUST LITIGATION ) | MDL DOCKET NO. 1317 |
| ) | |
| ————————————————— ) | |
| ) | |
| THIS DOCUMENT RELATES TO: ) | Hon. Patricia A. Seitz |
| ) | Mag. Judge Barry L. Garber |
| ALL CASES ) | |
| ) | |
| ————————————————— ) | |

**REPLY MEMORANDUM IN SUPPORT
OF PLAINTIFFS' MOTION TO COMPEL
DISCOVERY OF JUDGMENT-SHARING AGREEMENT**

Defendants' response to our motion to compel puts one issue to rest: the judgment-sharing agreement between Abbott and Geneva exists. The remainder of the response is far less illuminating.[1] Relying primarily on 20-year-old Congressional testimony by Harold Kohn, a prominent but long-retired member of the plaintiffs' antitrust class action bar,[2] Defendants argue that the now-acknowledged agreement should be protected from discovery because judgment-sharing agreements are "commonplace" and "routinely accepted" in antitrust cases. These arguments deal with the next motion to be filed—not the current one. The current motion seeks merely to discover

---

[1]     There is an error on page 2 of Defendants' response (indicating that it was probably written by Abbott's lawyers). The amount of the settlement was $30.7 million, not $30.5 million, and that amount was to be paid only to the Sherman Act class Plaintiffs. Additional amounts were to be paid to the Individual Plaintiffs.

[2]     The firm founded by Mr. Kohn appears as additional counsel for Valley Drug Company on one of the two Sherman Act class Complaints. The firm has not played a substantive role in this case.

the agreement so that Plaintiffs and the Court can decide whether the agreement is valid and, if so, whether it can be disclosed to the jury at trial. Defendants' arguments only barely address the issue of discoverability and then do so inadequately.

## I.     COMMONPLACE AGREEMENTS ARE NOT PROTECTED FROM DISCOVERY.

The first section of Defendants' argument asserts that discovery of the JSA is not warranted "because judgment sharing agreements are commonly used and accepted as a means of allocating risks among defendants in antitrust cases." Def. mem. at 3. While Defendants greatly overstate the "commonness" of such agreements, their argument is a *non sequitur*. Commonly used and accepted agreements are not thereby protected from discovery. The *Manual for Complex Litigation*, which is cited repeatedly as authority in Defendants' response, explicitly states that judgment sharing agreements "should be discoverable." One of the reasons given by the *Manual* is that, once the agreement is known, "it may be possible to structure partial settlements to take its terms into account"[3]—a point that is completely independent of how common such agreements are or whether they should be rejected on public-policy grounds.[4]

Moreover, there are reasons to believe that the judgment-sharing agreement between Abbott and Geneva may not be typical. Most of the cases cited in Defendants' papers—such as the *Brand Name* case—were large conspiracy cases with 15 or more defendants, all of which were

---

[3]     MANUAL FOR COMPLEX LITIGATION (THIRD) § 23.23 at 181.

[4]     Rather than forcing Plaintiffs to *infer* the terms of the agreement from settlement conversations with Defendants' counsel, as Defendants seem to suggest, it seems far more sensible to allow Plaintiffs to verify those terms for themselves. In fact, an offer by Geneva to settle on particular terms does not necessarily mean that those terms comply with the judgment-sharing agreement; it could mean that the terms do not comply with the judgment-sharing agreement, but Geneva believes the agreement is to that extent unenforceable.

2

jointly and severally liable to each plaintiff for a single damage award. In such cases, judgment-sharing agreements are typically based on market share: a defendant with 3% of the market will be responsible for 3% of an unfavorable judgment. A plaintiff who wishes to settle with such a defendant would be required to reduce its claim against the non-settling defendants by 3% (rather than merely reducing its claim by the dollar amount of the settlement[5]). While such an arrangement discourages individual settlements, the penalty for settling is no more than is necessary to ensure that the agreed-upon allocation of financial responsibility among the defendants is not affected by the settlement.[6]

Very little of this applies to the situation involved in this case. (1) This is not a conspiracy case with 10 or 15 defendants; the only parties to the Abbott-Geneva conspiracy are Abbott and Geneva. (2) Any allocation between Abbott and Geneva cannot be based on the conspirators' market shares, since the essence of their antitrust violation was that Abbott would have a monopoly in the terazosin market and the other conspirators would have a 0% share—and the violation was successful. Therefore (3) any allocation specified in the judgment-sharing agreement is essentially arbitrary. (4) Assuming for purposes of illustration that Abbott and Geneva have arbitrarily agreed to a 60/40 split (with Abbott shouldering 60% of the responsibility and Geneva

---

[5]     When a plaintiff settles with one defendant and later obtains a judgment against the remaining defendants, the amount of the settlement is deducted from the judgment. This set-off occurs after trebling. *See* *Flintkote Co. v. Lysfjord*, 246 F.2d 368 (9th Cir. 1957).

[6]     This would not be the case if, for example, one defendant has agreed to pay everything over a specified *dollar* amount, but the claim-reduction provision requires a settling plaintiff to reduce its claim by a specified *percentage*. For example, if Abbott has agreed to pay everything over $50 million but a plaintiff who settles with Geneva is required to reduce its claim against Abbott by 40%, then the judgment-sharing agreement imposes a penalty for settling that is unrelated to the allocation of financial responsibility. Under such circumstances, Plaintiffs believe that the agreement should (and would) be held invalid.

40%), requiring a plaintiff who settles with Geneva to reduce its claim against the sole remaining defendant by 40% is a far more significant deterrent to settlement than requiring a plaintiff to reduce its claim against 14 remaining defendants by 3%. And, unlike the typical conspiracy cases described by Defendants, (5) neither Abbott nor Geneva played an "insignificant role" in the wrongdoing (Def. mem. at 4), and (6) there is no absolutely no danger of "sweetheart settlements" (*id.*).

There are other features of this case that make it an atypical case for a judgment-sharing agreement. Plaintiffs in the *Walgreen*, *CVS Meridian* and Indirect Purchaser cases have asserted monopolization claims against Abbott alone, to which the doctrine of joint and several liability does not apply. In order to settle with Geneva, are these Plaintiffs required to reduce their *section 2* claims against Abbott by some percentage? If so, such a requirement would be purely and simply a penalty against settling with Geneva alone, unrelated to joint and several liability or any other conceivable legal rationale. If the judgment-sharing agreement applies to Plaintiffs' monopolization claims, we believe that the holding and reasoning of the *In re San Juan Dupont Plaza Hotel Fire* case would require invalidation of the agreement, and we would likely ask the Court to follow that precedent.[7] Plaintiffs have a right to know whether such a motion can be filed.

II.    DEFENDANTS DO NOT RESPOND TO PLAINTIFFS' ARGUMENT THAT THE AGREEMENT IS RELEVANT TO GENEVA'S WILLINGNESS TO TAKE LITIGATION RISKS.

We demonstrated in our motion to compel that the judgment-sharing agreement is relevant to the issue of Geneva's willingness to subject itself to litigation risks. Defendants respond

---

[7]    There is nothing in the *San Juan Dupont Plaza* case to suggest that the court's invalidation of the agreement at issue in that case was based on the fact that the parties had a right of contribution. The basis for the ruling was that the agreement precluded individual settlements. *See In re San Juan Dupont Plaza Hotel Fire Litigation*, 1989 WL 996278, *3 (D.P.R. 1989).

4

to this argument in a single sentence, stating that courts have generally not admitted judgment-sharing agreements into evidence at trial. Def. mem. at 8. Putting aside the fact that this motion deals with *discoverability* rather than *admissibility*,[8] we are not aware of any prior antitrust cases in which a defendant's willingness to take litigation risks was an issue in the case.[9] It most assuredly is here. The centerpiece of Defendants' case is Geneva's alleged unwillingness to enter the market in mid-1998 because doing so might have required it to defend a substantial patent infringement claim. This defense puts at issue Geneva's aversion to litigation risk. If the judgment-sharing agreement between Abbott and Geneva is a "typical" judgment-sharing agreement, as Defendants imply, then Geneva has voluntarily undertaken the risk of sharing a multi-billion dollar judgment with Abbott rather than settling the Sherman Act case for a negotiated sum. Such conduct would conclusively refute Geneva's principal defense. On this basis alone, Plaintiffs' motion should be granted.

III.     THE JSA IS POTENTIALLY RELEVANT TO WITNESS CREDIBILITY.

Defendants' response to our argument regarding witness credibility is the assertion that "the JSA does not change the interests of Geneva, Abbott or any of their witnesses." Def. mem.

---

[8]     Obviously, in each case in which such an agreement has been offered into evidence at trial, whether successfully or unsuccessfully, the agreement was produced to the plaintiffs in discovery.

[9]     We were surprised to read Defendants' assertion that Judge Kocoras, in the *Brand Name* litigation, "refused to allow plaintiffs to introduce [a JSA] at trial for the purposes advanced by plaintiffs here." Def. mem. at 8. Defendants know perfectly well that the plaintiffs in *Brand Name* did not attempt to admit the defendants' judgment-sharing agreement to prove any defendant's willingness to take litigation risks. Similarly, the quotation from Mr. Kohn cited by Defendants states only that judgment-sharing agreements are not admissible "to reinforce charges of conspiracy or cartel." We have no reason to introduce the judgment-sharing agreement for this purpose, since the existence of a conspiracy between Abbott and Geneva is not in dispute.

5

at 9. The short answer to this assertion is that Plaintiffs are allowed to verify that assertion for themselves. If, for example, Abbott has agreed to *indemnify* Geneva for all liability above a specified dollar amount in return for the appearance and testimony of Geneva's witnesses, the agreement, regardless of its name, would in fact amount to an indemnity and cooperation agreement potentially worth hundreds of millions of dollars to Geneva. The jury should certainly be permitted to have that information in evaluating the credibility of Geneva's witnesses, just as it is permitted to know whether a party is paying a much smaller sum for the time or expenses of any witness. One need not postulate anything underhanded or inappropriate about the agreement to believe that its terms might be relevant to witness credibility.

## IV. THE JSA IS COVERED BY PRIOR DOCUMENT REQUESTS.

Finally, Defendants contend that the judgment-sharing agreement is not called for in Plaintiffs' prior document requests. They are mistaken.

The *Walgreen* Plaintiffs' initial document request was not served during "Phase I" discovery; it was served with the summons and Complaint. At that time, there was of course no order limiting the scope of permissible discovery in the *Walgreen* case. Supplementation of Defendants' response to that initial request is required by the clear terms of Rule 26(e)(2), which requires a party to supplement its response to a prior document request "to include information thereafter acquired . . . if the party learns that the response is in some material respect incomplete . . . and if the additional . . . information has not otherwise been made known to the other parties during the discovery process . . . ." Rule 26(e) imposes a continuing obligation on the responding party to provide documents and information that did not exist at the time of the initial response. *See Arthur v. Atkinson Freight Lines Corp.*, 164 F.R.D. 19, 20 (S.D.N.Y. 1995) (plaintiff had continuing

6

duty under Rule 26 to produce medical records that were generated after response to opponent's document request).

In any event, the issue is moot. Newly-joined Plaintiffs the States of Florida, Colorado and Kansas have recently served a document request asking Geneva to produce any judgment-sharing agreement relating to this case, and Geneva has objected to that request "for all the reasons stated in Defendants Abbott Laboratories' and Geneva Pharmaceuticals, Inc.'s Memorandum in Opposition to Plaintiffs' Motion to Compel Discovery of Judgment-Sharing Agreement, filed Monday, February 11, 2002." A copy of Geneva's response to the States' document request is attached as Exhibit 1. Since the issue has now been raised by means of a document request which unquestionably calls for production of the judgment-sharing agreement, any dispute about the coverage of prior document requests is entirely moot.

V.  CONCLUSION

For the reasons stated above and in our opening papers, Plaintiffs respectfully contend that their motion to compel discovery of Defendants' judgment-sharing agreement should be granted.

Respectfully submitted,

Richard Alan Arnold
Scott E. Perwin
KENNY NACHWALTER SEYMOUR ARNOLD
    CRITCHLOW & SPECTOR, P.A.
1100 Miami Center
201 South Biscayne Boulevard
Miami, Florida 33131-4327
Telephone: (305) 373-1000
Facsimile: (305) 372-1861

7

Douglas H. Patton
DEWSNUP, KING & OLSEN
2020 Beneficial Tower
36 South State Street
Salt Lake City, Utah 84111
Telephone: (801) 533-0400
Facsimile: (801) 363-4218
*Attorneys for Walgreen Plaintiffs, on behalf of all
Sherman Act Plaintiffs*

## Certificate of Service

I hereby certify that a true and correct copy of the foregoing was served by facsimile

and United States mail this February 19, 2002 on all attorneys identified on the attached service list.

_____
Scott E. Perwin

144554.1

## SERVICE LIST

Richard Drubel, Esq.
BOIES & SCHILLER
26 South Main Street
Hanover, NH 03755

Barry S. Taus, Esq.
GARWIN, BRONZAFT, GERSTEIN
   & FISHER, LLP
1501 Broadway, Suite 1416
New York, NY 10036

Scott E. Perwin, Esq.
KENNY NACHWALTER SEYMOUR ARNOLD
CRITCHLOW & SPECTOR, P.A.
1100 Miami Center
201 South Biscayne Boulevard
Miami, Florida 33131-4327

Jason L. Solotaroff, Esq.
STAMELL & SCHAGER, LLP
One Liberty Plaza, 35th Floor
New York, NY 10006-1404

Daniel A. Small, Esq.
COHEN, MILSTEIN, HAUSFELD & TOLL, P.L.L.C.
1100 New York Avenue, N.W.
Suite 500, West Tower
Washington, DC 20005

Jeffrey I. Weinberger, Esq.
MUNGER, TOLLES & OLSON LLP
355 South Grand Avenue, 35th Floor
Los Angeles, CA 90071

Gerson A. Zweifach, Esq.
WILLIAMS & CONNOLLY
725 12th Street, N.W.
Washington, D.C. 20005

Daniel Berger, Esq.
BERGER & MONTAGUE
1622 Locust Street
Philadelphia, PA 19103

Mitchell Berger, Esq.
BERGER DAVIS & SINGERMAN
350 East Las Olas Boulevard
Suite 1000
Ft. Lauderdale, FL 33301

Steve D. Shadowen, Esq.
SCHNADER HARRISON SEGAL & LEWIS LLP
30 North Third Street, Suite 700
Harrisburg, PA 17101-1713

ROBERT C. GILBERT, P.A.
220 Alhambra Circle
Commercebank Center, Suite 400
Coral Gables, FL 33134

Stephen Lowey, Esq.
LOWEY, DANNENBERG, BEMPORAD & SELINGER, P.C.
The Gateway, 11th Floor
One North Lexington Avenue
White Plains, NY 10601

Wayne A. Cross, Esq.
DEWEY BALLANTINE LLP
1301 Avenue of the Americas
New York, NY 10019

Barbara Smithers, Assistant Attorney General
Antitrust Section
OFFICE OF THE ATTORNEY GENERAL - FL
135 W. Central Boulevard
Suite 1000
Orlando, FL 32801

# EXHIBIT 1

KNSACS/RECEIVED.

Date 2/13/03   MM
File 2116/4
Copy to:
RAA        _____
SEP        _____
WJB        _____
LCR        _____

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

| | | |
|---|---|---|
| IN RE TERAZOSIN HYDROCHLORIDE ANTITRUST LITIGATION | : : : | NO. 99-MDL-1317 SEITZ/GARBER |
| THIS DOCUMENT RELATES TO: | : : : | |
| *All Cases* | : : : : | |

**RESPONSE AND OBJECTIONS OF DEFENDANT**
**GENEVA PHARMACEUTICALS, INC. TO PLAINTIFF STATES'**
**FIRST REQUEST FOR PRODUCTION OF DOCUMENTS**

Pursuant to Rule 34 of the Federal Rules of Civil Procedure and Rule 26.1 of the Local Rules for the Southern District of Florida, defendant Geneva Pharmaceuticals, Inc. ("Geneva") responds and objects to Plaintiff States' First Request for Production of Documents (the "Requests") as follows:

**GENERAL OBJECTIONS**

Geneva asserts the following general objections with respect to each and every Request, each instruction contained within the sections entitled "Scope and Procedure" and "Instruction on Documents As to Which a Claim of Privilege Is Asserted" ("Instructions"), and each definition contained within the section entitled "Definitions":

1.      Geneva objects to providing any information or producing any document that is protected from disclosure by the attorney-client privilege, the work

product doctrine or any other applicable privilege or immunity including, without limitation, any joint defense privilege.

2.  Geneva objects to each Instruction, Definition and Request to the extent that it purports to impose on Geneva obligations beyond those found in the Federal Rules of Civil Procedure and/or the Local Rules of the United States District Court for the Southern District of Florida.

3.  Geneva objects to producing confidential, trade-secret, or proprietary information except pursuant to the terms of the protective order entered by the Court on December 16, 1999.

4.  Geneva objects to Requests that seek documents protected from disclosure under a confidentiality order or stipulation entered into by Geneva in any past or present litigation or administrative proceeding.

5.  Geneva objects to each and every Instruction, Definition and Request to the extent that it seeks information regarding matters that are not relevant to the subject matter of the pending action or that are not reasonably calculated to lead to the discovery of admissible evidence.

6.  Geneva objects to each and every Instruction, Definition, and Request to the extent that it purports to seek, in violation of the Court's Second Amended Case Management Order of August 25, 2000, production to the Plaintiff States of information or documents duplicative of materials previously produced to any or all of the Indirect Purchaser Plaintiffs, Sherman Act Class Plaintiffs, and Sherman Act Individual Plaintiffs.

7.     Geneva objects to each and every Instruction, Definition and Request to the extent that it purports to impose a burden on Geneva to produce to the Plaintiff States information or documents produced to Geneva by any other party or by non-parties in this litigation.

8.     Geneva objects to each and every Instruction, Definition and Request to the extent that it is duplicative of any prior request for production of information or documents by any plaintiff (or plaintiffs) herein, as to which Geneva has responded or objected and as to which plaintiff(s) have not sought to compel.

9.     Geneva objects to each and every Instruction, Definition, and Request to the extent that it purports to impose a burden of ascertaining information that is not in Geneva's possession, custody, or control, or that cannot be found in the course of a reasonable search.

10.     Geneva objects to each and every Request, Instruction and Definition to the extent that it purports to require Geneva to locate and produce documents formerly in its possession, custody or control.

11.     Geneva reserves the right to assert additional objections to production of information or documents as appropriate and to supplement or change these objections and responses.  Geneva specifically reserves all objections as to the competency, materiality and admissibility of its documents or the subject matter thereof, all objections as to burden, vagueness, overbreadth and ambiguity, and all rights to object on any ground to the use of any document, or the subject matter thereof, in any subsequent proceeding, including without limitation, the trial of this, or any other, action.

12.     Geneva's decision to provide information or documents, notwithstanding the objectionable nature of any of the Definitions or Instructions, or the Requests themselves, should not be construed as: (a) a stipulation that the material is relevant; (b) a waiver of the general objections or the objections asserted in response to specific Requests; (c) an admission that any such documents or information exist; or (d) an agreement that requests for similar information will be treated in a similar manner.

## OBJECTIONS TO DEFINITIONS

1.     Geneva objects to the definition of "document" as overly broad and unreasonably burdensome.  Geneva also objects to the definition of "document" insofar as it purports to require the review of voluminous and usually duplicative computer files.  Geneva will review computer tapes, disks and other data stored in electronic media only in situations where it is likely that these sources contain information not otherwise available in a printed, hard copy form.  Geneva further objects to the definition of "document" to the extent that it requires Geneva to produce "originals"; such a request is overly broad and unduly burdensome.

2.     Geneva objects to the definitions of "relating to" as vague, ambiguous, and overly broad.

## OBJECTION TO INSTRUCTIONS

1.     Geneva objects to the "Instruction on Documents As to Which a Claim of Privilege Is Asserted" to the extent that it requests information beyond that required to establish the basis for the privilege or immunity upon which any withholding is based.  Geneva further objects to this Instruction to the extent that it purports to impose on Geneva obligations with respect to the production of privilege logs beyond the

obligations found in the Federal Rules of Civil Procedure and/or the Local Rules of the United States District Court for the Southern District of Florida.

## SPECIFIC RESPONSES AND OBJECTONS

Subject to, and without waiving the foregoing General Objections, Objections to Definitions, and Objection to Instructions (hereinafter referred to collectively as the "General Objections"), Geneva responds as follows:

**Request No. 1**

All documents previously produced by any party or by any third party in this litigation.

**Response to Request No. 1**

Geneva objects to this Request as vague and ambiguous. For example, insofar as it contains such undefined terms as "any party," "any third party," and "in this litigation," the Request provides Geneva no reasonably ascertainable standard by which to respond. In addition, Geneva objects to this Request as unreasonably burdensome and overly broad to the extent that it demands "all" documents produced. Geneva also objects to this Request as unduly burdensome and duplicative of prior discovery in that the documents demanded have been previously produced to other plaintiffs in this litigation. Geneva further objects to this request to the extent that it purports to impose upon Geneva an obligation to produce documents previously produced to Geneva by other parties or non-parties in this litigation: any such documents should be obtained by Plaintiff States from such parties or non-parties.

Geneva notes, however, that on January 24, 2002, Plaintiff States filed a "Notice of Intent to Comply With Court's Scheduling" wherein Plaintiff States stipulated

that no further merits discovery is required or contemplated, and thus Geneva

understands this Request to be moot.

## Request No. 2

All documents relating to sales of Hytrin or its generic equivalent to any
Plaintiff State or agency or subdivision thereof, including but not limited to agreements
relating to said sales, from January 1996 to December 2000.

## Response to Request No. 2

Geneva objects to this Request as vague and ambiguous. For example,

insofar as it contains such undefined terms as "generic equivalent," "agency or

subdivision," and "agreements," the Request provides Geneva no reasonably

ascertainable standard by which to respond. Geneva also objects to this Request as

unreasonably burdensome and overly broad to the extent that it demands "all" documents

produced. In addition, Geneva objects to this Request as unduly burdensome and

duplicative of prior discovery in that the documents demanded have been previously

produced to other plaintiffs in this litigation. Geneva further objects to the Request to the

extent that it purports to seek documents relating to the sale of Hytrin or generic terazosin

hydrochloride manufactured by persons other than Geneva: any such documents should

be produced by the respective manufacturers of those drugs.

Geneva notes, however, that on January 24, 2002, Plaintiff States filed a

"Notice of Intent to Comply With Court's Scheduling" wherein Plaintiff States stipulated

that no further merits discovery is required or contemplated, and thus Geneva

understands this Request to be moot.

**Request No. 3**

   All documents relating to sales of Hytrin or its generic equivalent to third-parties residing or doing business in the States of Florida and Kansas, from January 1996 to December 2000.

**Response to Request No. 3**

   Geneva objects to this Request as vague and ambiguous. For example, insofar as it contains such undefined terms as "sales," "generic equivalent," "third parties," "residing," and "doing business," the Request provides Geneva no reasonably ascertainable standard by which to respond. In addition, Geneva objects to this Request as unreasonably burdensome and overly broad to the extent that it demands "all" documents produced. Geneva also objects to this Request as unduly burdensome and duplicative of prior discovery in that the documents demanded have been previously produced to other plaintiffs in this litigation.

   Geneva notes, however, that on January 24, 2002, Plaintiff States filed a "Notice of Intent to Comply With Court's Scheduling" wherein Plaintiff States stipulated that no further merits discovery is required or contemplated, and thus Geneva understands this Request to be moot.

**Request No. 4**

   All documents embodying or relating to any judgment-sharing agreement, indemnification agreement or other agreement concerning the sharing, division or apportionment of monetary liability with respect to any of the claims asserted in this litigation.

**Response to Request No. 4**

   Geneva objects to this request as vague and ambiguous. For example, insofar as it contains such undefined terms as "judgment-sharing agreement,"

"indemnification agreement," "other agreement," "sharing, division or apportionment," "monetary liability," and "this litigation," the Request provides Geneva no reasonably ascertainable standard by which to respond. Geneva further objects to this Request as unreasonably burdensome and overly broad to the extent that it demands "all" documents within the categories listed. In addition, Geneva objects for all the reasons stated in Defendants Abbott Laboratories' and Geneva Pharmaceuticals, Inc.'s Memorandum in Opposition to Plaintiffs' Motion to Compel Discovery of Judgment-Sharing Agreement, filed Monday, February 11, 2002, and incorporates those objections herein by reference.

Dated: New York, NY
February 11, 2002

DEWEY BALLANTINE LLP

By:＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿
Wayne A. Cross, Esq.
Robert A. Milne, Esq.
Eamon O'Kelly, Esq.
Paul Olszowka, Esq.
1301 Avenue of the Americas
New York, New York 10019
Tel: (212) 259-8000
Fax: (212) 259-6333

*Attorneys for Geneva Pharmaceuticals, Inc.*

## CERTIFICATE OF SERVICE

I certify that on this 12 day of February, 2002, I have caused to be delivered to all persons on the attached service list true and correct copies of the foregoing by facsimile and overnight courier.

Paul Olszowka

# SERVICE LIST

## Case No. 99-MDL-1317-Seitz/Garber (All Cases)

Richard B. Drubel, Esq.
BOIES, SCHILLER & FLEXNER, L.L.P.
26 South Main Street
Hanover, NH 03755
Fax: (603) 643-9010

Barry S. Taus, Esq.
GARWIN, BRONZAFT, GERSTEIN
  & FISHER, L.L.P.
1501 Broadway, Suite 1416
New York, NY 10036
Fax: (212) 764-6620

Scott E. Perwin, Esq.
KENNY NACHWALTER SEYMOUR
  ARNOLD CRITCHLOW & SPECTOR, P.A.
1100 Miami Center
201 South Biscayne Boulevard
Miami, FL 33131-4327
Fax: (305) 372-1861

Jason L. Solotaroff, Esq.
STAMELL & SCHAGER, LLP
One Liberty Plaza
35th Floor
New York, NY 10006
Fax: (212) 566-4061

Sharon A. Snyder, Esq.
COHEN, MILSTEIN, HAUSFELD
  & TOLL, P.L.L.C.
1100 New York Avenue, N.W.
West Tower, Suite 500
Washington, DC 20005-3934
Fax: (202) 408-4699

Daniel Berger, Esq.
BERGER & MONTAGUE, P.C.
1622 Locust Street
Philadelphia, PA 19103
Fax: (215) 875-4671

Mitchell W. Berger, Esq.
BERGER & SINGERMAN, P.A.
350 East Las Olas Boulevard, Suite 1000
Fort Lauderdale, FL 33301
Fax: (954) 523-2872

Barbara B. Smithers, Esq.
OFFICE OF THE ATTORNEY
  GENERAL OF FLORIDA
135 W. Central Boulevard
Century Plaza
Orlando, Florida 23801
Fax: (407) 245-0365

Steve D. Shadowen, Esq.
SCHNADER HARRISON SEGAL
  & LEWIS, LLP
30 North Third Street, Suite 700
Harrisburg, PA 17101-1713
Fax: (717) 231-4012

Robert C. Gilbert, Esq.
ROBERT C. GILBERT, P.A.
Commerce Bank Center
220 Alhambra Circle, Suite 400
Coral Gables, FL 33134
Fax: (305) 529-1612

Stephen Lowey, Esq.
LOWEY DANNENBERG BEMPORAD
  & SELINGER, P.C.
The Gateway, 11th Floor
One North Lexington Avenue
White Plains, NY 10601
Fax: (914) 997-0035

Jeffrey I. Weinberger, Esq.
MUNGER, TOLLES & OLSON LLP
355 South Grand Avenue, 35th floor
Los Angeles, CA 90071
Fax: (213) 687-3702

Gerson A. Zweifach, Esq.
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, DC 20005-5901
Fax: (202) 434-5029