Daniel C. Girard (State Bar No. 114826)
Dena C. Sharp (State Bar No. 245869)
Elizabeth A. Kramer (State Bar No. 293129)
GIRARD GIBBS LLP
601 California Street, 14th Floor
San Francisco, California 94108
Telephone:     (415) 981-4800
Facsimile:      (415) 981-4846

*Counsel for Class Representative*
*Michael Devine*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| IN RE: HIGH-TECH EMPLOYEE ANTITRUST LITIGATION<br><br>THIS DOCUMENT RELATES TO:<br><br>ALL ACTIONS | Master Docket No. 11-CV-2509-LHK<br><br>**CLASS ACTION**<br><br>**CLASS REPRESENTATIVE MICHAEL DEVINE'S NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND SERVICE AWARD**<br><br>Judge:      Hon. Lucy H. Koh<br>Courtroom: 8, 4th Floor<br>Date:       July 9, 2015<br>Time:       1:30 p.m. |

## NOTICE OF MOTION AND MOTION

To all Parties and Their Counsel of Record:

PLEASE TAKE NOTICE that at 1:30 pm on July 9, 2015, or as soon thereafter as this matter may be heard, before the Honorable Lucy H. Koh, United States District Court for the Northern District of California, located in Courtroom 8, on the 4th Floor of the Robert F. Peckham Federal Building, 280 South 1st Street, San Jose, California, Plaintiffs will, and hereby do, move the Court pursuant to Federal Rule of Civil Procedure 23(h)(1) and 54(d)(2) for an order awarding:

1. Attorneys' fees and reimbursement of expenses to class representative Michael Devine's counsel in the amount of $4,523,500, which is five percent of the $90.5 million by which the settlement fund was increased as a result of Mr. Devine's objection and his counsel's role in negotiating an improved settlement; and

2. A service award in the amount of $160,000 for Mr. Devine's substantial contribution to this case and the negotiation of the $415 million settlement.

This motion is based upon this Notice of Motion and the accompanying Memorandum of Points and Authorities, the Declaration of Daniel C. Girard, the Declaration of Class Representative Michael Devine, the Expert Report of Professor Charles Silver, argument by counsel at the hearing before this Court, any papers filed in reply, and all papers and records in this matter.

# TABLE OF CONTENTS

I. Introduction ........................................................................................................................... 1

II. Factual and Procedural Background ................................................................................... 2

    A.    Mr. Devine Files a Complaint, Actively Participates in the Litigation, and Is Appointed by the Court to Serve as a Class Representative ................................................................ 2

    B.    Mr. Devine Opposes the Proposed $324.5 Million Settlement ................................. 3

    C.    The Court Denies Preliminary Approval and the Defendants File a Petition for a Writ of Mandamus ...................................................................................................................... 4

    D.    Mr. Devine Participates in Renewed Settlement Negotiations ................................. 5

III. Girard Gibbs Should Be Awarded a Fee of Five Percent of the $90.5 Million Its Efforts Added to  the Settlement Fund .......................................................................................................... 6

    A.    Girard Gibbs Is Entitled to an Award of Attorneys' Fees ....................................... 6

    B.    The Court Should Use the Percentage-of-the-Fund Method to Calculate Girard Gibbs's Attorneys' Fee Award ................................................................................................... 8

    C.    Girard Gibbs's Requested Fee of 5% of the $90.5 Additional Settlement Amount Is Reasonable and Appropriate Under the Circumstances ......................................... 12

        1.    Girard Gibbs achieved an exceptional result for the class ........................... 12

        2.    Girard Gibbs assumed significant risk ........................................................ 13

        3.    Representing Mr. Devine required skill and high quality work ..................... 14

        4.    Girard Gibbs represents Mr. Devine on a contingent basis ......................... 15

        5.    The requested fee is well below the market rate .......................................... 15

        6.    The requested fee is comparable to fees awarded in other cases ................. 16

    D.    Girard Gibbs's Lodestar Also Supports the Requested Fee ................................... 16

IV. Michael Devine's Requested Service Award Is Reasonable and Should Be Awarded ................. 19

    A.    Mr. Devine's Efforts on Behalf of the Class ......................................................... 19

    B.    The Risks Mr. Devine Assumed in Serving as a Class Representative .................. 20

i

C.      Opposing the $324.5 Million Settlement Required Substantial Additional Work and Increased the Risk Mr. Devine Assumed for the Benefit of the Class ................................. 21

D.      A Service Award of $160,000 Is Fair and Reasonable ........................................................ 22

V.   Conclusion .................................................................................................................................... 23

CLASS REPRESENTATIVE MICHAEL DEVINE'S NOTICE OF MOTION AND MOTION FOR
ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND SERVICE AWARD
Master Docket No. 11-CV-2509-LHK

**TABLE OF AUTHORITIES**

**Cases**

*Bell Atlantic Corp. v. Bolger*
2 F.3d 1304 (3d Cir. 1993)..................................................................................7

*Blum v. Stenson*
465 U.S. 886 (1984)........................................................................................15

*Boeing Co. v. Van Gemert*
444 U.S. 472 (1980)..........................................................................................6

*Bolton v. U.S. Nursing Corp.*
2013 WL 5700403 (N.D. Cal. Oct. 18, 2013)....................................................10

*Boyd v. Bank of America Corp.*
2014 WL 6473804 (C.D. Cal. Nov. 18, 2014)....................................................21

*Chu v. Wells Fargo Investments, LLC*
2011 WL 672645 (N.D. Cal. Feb. 16, 2011) .......................................................9

*Conley v. Sears, Roebuck & Co.*
222 B.R. 181 (Bankr. D. Mass. 1998) ...............................................................18

*Craft v. County of San Bernardino*
624 F. Supp. 2d 1113 (C.D. Cal. 2008) .............................................................16

*de Mira v. Heartland Employment Service, LLC*
2014 WL 1026282 (N.D. Cal. Mar. 13, 2014)....................................................12

*Espenscheid v. DirectSat USA, LLC*
688 F.3d 872 (7th Cir. 2012) ...........................................................................21

*Eubank v. Pella Corp.*
753 F.3d 718 (7th Cir. 2014) .........................................................................6, 7

*Garner v. State Farm Mutual Automobile Insurance Co.*
2010 WL 1687832 (N.D. Cal. Apr. 22, 2010) ....................................................20

*Glass v. UBS Financial Services, Inc.*
2007 WL 221862 (N.D. Cal. Jan. 26, 2007)
*aff'd*, 331 F. App'x 452 (9th Cir. 2009) ...........................................................20

*Glass v. UBS Financial Services, Inc.*
331 F. App'x 452 (9th Cir. 2009) ...........................................................6, 17, 20

CLASS REPRESENTATIVE MICHAEL DEVINE'S NOTICE OF MOTION AND MOTION FOR
ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND SERVICE AWARD
Master Docket No. 11-CV-2509-LHK

*Guippone v. BH S & B Holdings, LLC*
   2011 WL 5148650 (S.D.N.Y. Oct. 28, 2011) ................................................................21

*Hanlon v. Chrysler Corp.*
   150 F.3d 1011 (9th Cir. 1998) ........................................................................................9

*Hartless v. Clorox Co.*
   273 F.R.D. 630 (S.D. Cal. 2011)
   *aff'd*, 473 F. App'x 716 (9th Cir. 2012) .........................................................................22

*Hensley v. Eckerhart*
   461 U.S. 424 (1983) .......................................................................................................17

*Hopson v. Hanesbrands Inc.*
   2009 WL 928133 (N.D. Cal. Apr. 3, 2009) ...................................................................20

*In re Activision Securities Litig.*
   723 F. Supp. 1373 (N.D. Cal. 1989) ................................................................................9

*In re Bluetooth Headset Products Liability Litig.*
   654 F.3d 935 (9th Cir. 2011) ......................................................................................8, 17

*In re Coordinated Pretrial Proceedings in Petroleum Products Antitrust Litig.*
   109 F.3d 602 (9th Cir. 1997) ......................................................................................8, 12

*In re Dun & Bradstreet Credit Services Customer Litig.*
   130 F.R.D. 366 (S.D. Ohio 1990) ..................................................................................22

*In re Electric Carbon Products Antitrust Litig.*
   447 F. Supp. 2d 389 (D.N.J. 2006) ................................................................................20

*In re First Databank Antitrust Litig.*
   209 F. Supp. 2d 96 (D.D.C. 2002) .................................................................................16

*In re Omnivision Technologies, Inc.*
   559 F. Supp. 2d 1036 (N.D. Cal. 2008) ................................................................9, 12, 19

*In re Online DVD-Rental Antitrust Litig.*
   779 F.3d 934 (9th Cir. 2015) ....................................................................................19, 22

*In re Prudential Ins. Co. America Sales Practice Litig. Agent Actions*
   148 F.3d 283 (3d Cir. 1998) ...........................................................................................18

*In re Rite Aid Corp. Securities Litig.*
   362 F. Supp. 2d 587 (E.D. Pa. 2005) .............................................................................18

iii

*In re Rite Aid Corp. Securities Litig.*
   396 F.3d 294 (3d Cir. 2005) ........................................................................ 9

*In re Titanium Dioxide Antitrust Litig.*
   2013 WL 6577029 (D. Md. Dec. 13, 2013) ............................................... 22

*In re Trans Union Corp. Privacy Litig.*
   629 F.3d 741 (7th Cir. 2011) ..................................................................... 16

*Ingram v. Coca-Cola Co.*
   200 F.R.D. 685 (N.D. Ga. 2001) .......................................................... 20, 22

*Knight v. Red Door Salons, Inc.*
   2009 WL 248367 (N.D. Cal. Feb. 2, 2009) ........................................... 12, 19

*Laffitte v. Robert Half Int'l Inc.*
   231 Cal. App. 4th 860 (Cal. Ct. App. 2014) .............................................. 18

*Linney v. Cellular Alaska Partnership*
   1997 WL 450064 (N.D. Cal. July 18, 1997)
   *aff'd,* 151 F.3d 1234 (9th Cir. 1998) ........................................................ 16

*Lopez v. Youngblood*
   2011 WL 10483569 (E.D. Cal. Sept. 2, 2011) ........................................... 16

*Moore v. Verizon Communications Inc.*
   2014 WL 588035 (N.D. Cal. Feb. 14, 2014) .............................................. 17

*Moreno v. City of Sacramento*
   534 F.3d 1106 (9th Cir. 2008) ................................................................... 17

*Nwabueze v. AT&T, Inc.*
   2014 WL 324262 (N.D. Cal. Jan. 29, 2014) .............................................. 18

*Paul, Johnson, Alston & Hunt v. Graulty*
   886 F.2d 268 (9th Cir. 1989) ................................................................... 8, 12

*Reynolds v. Beneficial Nat'l Bank*
   288 F.3d 277 (7th Cir. 2002) ...................................................................... 7, 8

*Rodriguez v. Disner*
   688 F.3d 645 (9th Cir. 2012) ................................................................. 6, 7, 8

*Rodriguez v. West Publishing Corp.*
   563 F.3d 948 (9th Cir. 2009) ................................................................... 7, 19

CLASS REPRESENTATIVE MICHAEL DEVINE'S NOTICE OF MOTION AND MOTION FOR
ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND SERVICE AWARD
Master Docket No. 11-CV-2509-LHK

*Shaw v. Toshiba America Info. Systems, Inc.*
 91 F. Supp. 2d 942 (E.D. Tex. 2000) ...................................................................... 16

*Simon v. Toshiba America*
 2010 WL 1757956 (N.D. Cal. Apr. 30, 2010) ........................................................... 9

*Staton v. Boeing Co.*
 327 F.3d 938 (9th Cir. 2003) ....................................................................... 6, 19, 21

*Stop & Shop Supermarket Co. v. Smithkline Beecham Corp*.
 2005 U.S. Dist. LEXIS 9705 (E.D. Pa. May 20, 2005) ........................................... 18

*Swedish Hospital Corp. v. Shalala*
 1 F.3d 1261 (D.C. Cir. 1993) .................................................................... 10, 16

*Velez v. Novartis Pharmaceuticals Corp.*
 2010 WL 4877852 (S.D.N.Y. Nov. 30, 2010) ......................................................... 22

*Vincent v. Hughes Air West*
 557 F.2d 759 (9th Cir. 1977) ................................................................................. 19

*Vizcaino v. Microsoft Corp.*
 290 F.3d 1043 (9th Cir. 2002) ..................................................................... 8, 12, 15, 18

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*
 396 F.3d 96 (2d Cir. 2005) ................................................................................. 10

*Weeks v. Kellogg Co.*
 2013 WL 6531177 (C.D. Cal. Nov. 23, 2013) ......................................................... 22

*Wehlage v. Evergreen at Arvin, LLC*
 2012 WL 4755371 (N.D. Cal. Oct. 4, 2012) ........................................................... 18

*Weiss v. Mercedes–Benz of North America, Inc.*
 899 F. Supp. 1297 (D.N.J. 1995)
 *aff'd*, 66 F.3d 314 (3d Cir. 1995) ..................................................................... 18

*Zucker v. Occidental Petroleum Corp.*
 192 F.3d 1323 (9th Cir. 1999) ............................................................................. 6

**Other Authorities**

Alan Hirsch & Diane Sheehey, Awarding Attorneys' Fees and Managing Fee Litigation 73
 (Federal Judicial Center 2d ed. 2005) ................................................................ 10

CLASS REPRESENTATIVE MICHAEL DEVINE'S NOTICE OF MOTION AND MOTION FOR
ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND SERVICE AWARD
Master Docket No. 11-CV-2509-LHK

Alan B. Morrison, *Improving the Class Action Settlement Process: Little Things Mean a Lot*
  79 G. Wash. L. Rev. 428 (Feb. 2011) ............................................................ 14

Brian T. Fitzpatrick, *An Empirical Study of Class Action Settlements and Their Fee Awards*
  7 J. Empirical Legal Stud. 811 (2010) ............................................................ 11

Christopher R. Leslie, *The Significance of Silence: Collective Action Problems and Class Action Settlements*
  59 Fla. L. Rev. 71 (2007) ............................................................................ 13

Edward Brunet, *Class Action Objectors: Extortionist Free Riders or Fairness Guarantors*
  2003 U. Chi. Legal F. 403 (2003) ............................................................ 14, 15

Federal Judicial Center, Manual for Complex Litigation (Fourth) § 14.121 (2004) .............................. 11

Task Force on Contingent Fees, Tort Trial and Insurance Practice Section of the American Bar Association, *Report on Contingent Fees in Class Action Litigation*
  25 Rev. Litig. 459 (2006) ...................................................... 10, 11, 16

Theodore Eisenberg & Geoffrey P. Miller, *Attorneys' Fees and Expenses in Class Action Settlements: 1993-2008*
  7 J. Empirical Legal Stud. 248 (2010) ............................................................ 11

William B. Rubenstein, Newberg on Class Actions § 13:37 (5th ed. 2014) ............................................ 7

William B. Rubenstein, *The Fairness Hearing: Adversarial and Regulatory Approaches*
  53 UCLA L. Rev. 1435 (2006) ................................................................ 7, 14

William B. Rubenstein, *Why the Percentage Method?*, 2 Class Action Attorney Fee Digest 93
  (March 2008) ............................................................................................ 9

CLASS REPRESENTATIVE MICHAEL DEVINE'S NOTICE OF MOTION AND MOTION FOR
ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND SERVICE AWARD
Master Docket No. 11-CV-2509-LHK

I.       **Introduction**

Class representative Michael Devine and his law firm, Girard Gibbs LLP, successfully opposed a proposal to settle this case for $324.5 million and joined efforts with Class Counsel to negotiate a $90.5 million increase in the settlement fund.  Under Ninth Circuit law, if an objection to a class action settlement generates a monetary benefit for the class, the objector's counsel is entitled to an award of attorneys' fees on the same equitable principles as class counsel.  Girard Gibbs seeks an "all-in" award of attorneys' fee and expenses of 5% of the increase, one-fifth of the Ninth Circuit's benchmark rate in "common fund" cases.  While the requested fee would result in a multiplier at the upper end of the range in common fund cases, the fee is justified here because the request is modest in percentage terms, Girard Gibbs assumed considerable financial and reputational risk, and the firm's work led to a substantial increase in the recovery to class members.

Courts and commentators have consistently complained that class actions suffer from a lack of adversary process at the settlement stage.  Mr. Devine and Girard Gibbs provided adversary process here.  The results speak for themselves:  a 35% increase in the net payout to class members in comparison to the original settlement proposal.  The revised settlement exceeds by $35 million the $380 million the Court cited as the appropriate benchmark based on the prior settlements with Lucasfilm, Intuit and Pixar.  By limiting its request to 5% of the increase, Girard Gibbs has taken into account the relatively narrow role the firm played in this litigation.  The fee should be awarded in full as any further reduction would punish the firm for its efficiency and success.

Mr. Devine also requests that the Court approve a service award to compensate him for the work he performed on behalf of the class.  Mr. Devine was actively involved in the litigation, working closely with Class Counsel to develop the case, analyze the evidence, and participate in settlement discussions.  These efforts alone, along with the professional risk he assumed when he agreed to serve as a named plaintiff, support a substantial service award in this case.  But when he decided to oppose the proposed $324.5 million settlement with Adobe, Apple, Google and Intel, Mr. Devine went above and beyond the usual role of a class representative.  Mr. Devine's objection led to an additional $90.5 million recovery for the class.  Because of the substantial benefit he was able to obtain for the class and the heightened risk he took on, Mr. Devine has earned a service award in the amount of $160,000.

CLASS REPRESENTATIVE MICHAEL DEVINE'S NOTICE OF MOTION AND MOTION FOR
ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND SERVICE AWARD
Master Docket No. 11-CV-2509-LHK

## II.    Factual and Procedural Background

### A.    Mr. Devine Files a Complaint, Actively Participates in the Litigation, and Is Appointed by the Court to Serve as a Class Representative

Michael Devine worked for defendant Adobe Systems as a computer scientist /software developer from October 2006 to July 2008.  Devine Decl., ¶ 2.  In April 2011, he retained Lieff, Cabraser, Heimann & Bernstein LLP to represent him and in June 2011 filed one of the first class action cases alleging that Adobe, Apple, Google, Intel, Intuit, Lucasfilm, and Pixar entered into unlawful agreements to suppress their employees' compensation.  *Id.*, ¶ 5.  Mr. Devine knew that serving as a named plaintiff in a case like this one could impact his employment prospects in the future, but he believed that the defendants would not change their practices unless someone was willing to step forward as the face of the litigation.  *Id.*, ¶ 4.

Mr. Devine was an active participant in the litigation.  He assisted his counsel with investigating the case and preparing the complaint.  *Id.*, ¶ 8.  He reviewed drafts of pleadings before they were filed and provided comments.  *Id.*, ¶ 11.  He gathered evidence in paper and electronic form in response to the defendants' broad discovery requests and provided responses, including multiple updated responses, to the defendants' written discovery requests.  *Id.*, ¶ 9.  Mr. Devine was deposed by the defendants in October 2012.  *Id.*, ¶ 10.  He attended several hearings, including the hearing on plaintiffs' motion for class certification.  *Id.*, ¶ 11.

Mr. Devine also participated in two mediation sessions in San Francisco and discussed settlement strategy with his counsel.  *Id.*, ¶ 13.  He supported the settlements the plaintiffs reached with Lucasfilm, Pixar and Intuit for a total of $20 million.  He knew the amount was minimal when compared to the class members' potential recovery at trial, but recognized that the class would be able to leverage that settlement to seek greater damages from the remaining defendants.  In addition, the court had denied class certification once and the plaintiffs' supplemental motion to certify the class was pending.  Under these circumstances, he agreed with the other class representatives and Class Counsel that the settlement was in the best interests of the class.  *Id.*, ¶ 13.

The Court granted the plaintiffs' supplemental motion for class certification on October 24, 2013, and appointed Mr. Devine to serve as a class representative.  ECF No. 531.

CLASS REPRESENTATIVE MICHAEL DEVINE'S NOTICE OF MOTION AND MOTION FOR
ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND SERVICE AWARD
Master Docket No. 11-CV-2509-LHK

**B.      Mr. Devine Opposes the Proposed $324.5 Million Settlement**

Mr. Devine disagreed with Class Counsel about the proposed $324.5 million settlement with Adobe, Apple, Intel and Google.  He thought the amount was insufficient and decided to retain his own counsel to represent him in opposing the proposed settlement.  Devine Decl., ¶ 14.  He had a difficult time finding counsel with experience in class action litigation who could get up to speed quickly in a complex antitrust case and had the skill and credibility to continue to represent him as a class representative if the settlement was not approved and the litigation continued, and who was willing to advocate his position against a unified front of highly reputable firms and some of the most powerful technology companies in the world.  *Id.*, ¶¶ 15-16.

Ultimately, Mr. Devine met with Daniel Girard to discuss his concerns with the settlement and retained Girard Gibbs to present his opposition to the Court.  *Id.*, ¶ 17.  Girard Gibbs represents plaintiffs in class action cases involving shareholder rights, securities, antitrust, consumer, privacy, employment, and civil rights laws.  Girard Decl., ¶ 8.  Daniel Girard, the senior partner who managed the case and directed overall strategy, has nearly thirty years of experience litigating class action cases, served two terms on the United States Judicial Conference Advisory Committee on Civil Rules, and has been recognized by the United States Judicial Conference Standing Committee on the Rules of Practice and Procedure as an expert on class actions and complex litigation.  *Id.*, ¶ 6.

With the opposition deadline and preliminary approval hearing less than a month away, Girard Gibbs had a short time to prepare the opposition.  The firm undertook an evaluation of the proposed settlement in light of the case's procedural posture, the evidence in the record, and the case law, as well as settlements and verdicts in other antitrust cases.  *Id.*, ¶¶ 14-15.  Girard Gibbs filed an opposition to the settlement on June 5, 2014, presenting Mr. Devine's argument that the proposed settlement amount was not sufficient due to the abundant evidence of the defendants' liability, a tested damages model, and a potential $9 billion recovery at trial.  ECF No. 934.

The Court held a preliminary approval hearing on June 19, 2014, and questioned Class Counsel and defense counsel about the adequacy of the settlement fund.  Google's counsel argued that the proposed settlement compared favorably to the earlier settlements with Lucasfilm, Intuit and Pixar based on the companies' relative share of employees.  ECF No. 948 at 35:24-36:21.  Mr. Girard pointed out

CLASS REPRESENTATIVE MICHAEL DEVINE'S NOTICE OF MOTION AND MOTION FOR
ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND SERVICE AWARD
Master Docket No. 11-CV-2509-LHK

that the parties had justified the earlier settlements by reference to the percentage of the total salary paid by those settling defendants (5%), not the percentage of total employees (8%), and using that metric the value of a global resolution (including the $20 million already paid by Lucasfilm, Intuit and Pixar) would be $400 million.  *Id.* at 56:16-57:16.

## C.    The Court Denies Preliminary Approval and the Defendants File a Petition for a Writ of Mandamus

On August 8, 2014, the Court denied preliminary approval of the proposed settlement.  ECF No. 974.  The Court considered the amount of the prior settlement with Lucasfilm, Intuit and Pixar and the strengths and weaknesses of the plaintiffs' case and found that the amount of the settlement fund was below the range of reasonableness.  The Court observed that, as discussed at the hearing, the proposed settlement did not compare favorably to the prior settlements because Adobe, Apple, Google and Intel paid out 95% of the compensation to the class.  To settle at the same rate, the settlement fund would therefore have to be at least $380 million.  *Id.* at 7-10.  The Court also discussed at length the "compelling evidence" the plaintiffs had amassed against the defendants, concluding that in light of the evidence and the fact that plaintiffs had obtained class certification, defeated summary judgment motions, and successfully defended their expert's damages model, the defendants "should, at a minimum, pay their fair share as compared" to the earlier settling defendants.  *Id.* at 10-31.

The defendants filed a petition for writ of mandamus with the Ninth Circuit, seeking an order vacating the Court's denial of preliminary approval and directing the Court to preliminarily approve the $324.5 million settlement.  The defendants argued that the Court's comparison to the benchmark set by the earlier settlements imposed a rigid formula that is clearly erroneous under Ninth Circuit precedent.  They also argued that the Court's analysis of the strengths of the weaknesses of the plaintiffs' case was unfair and incomplete, and ignored the views of experienced counsel who negotiated the settlement.  *See In re Adobe Systems,* No. 14-72745 (9th Cir. Sept. 4, 2014), ECF No. 1.

In the settlement agreement, however, the parties had agreed that if the Court denied preliminary approval "the case will proceed as if no settlement had been attempted."  ECF No. 921-1 at 8 (Settlement Agreement § II.B.4).  Given this language, Girard Gibbs sent a letter on Mr. Devine's behalf requesting that the defendants withdraw their petition.  Girard Decl., ¶ 25.  Class Counsel sent a similar

CLASS REPRESENTATIVE MICHAEL DEVINE'S NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND SERVICE AWARD
Master Docket No. 11-CV-2509-LHK

1    letter to the defendants.  *In re Adobe*, ECF No. 4 at 24.  The defendants refused to withdraw their

2    petition, and took the position that Class Counsel was bound to support the petition because the

3    settlement agreement required the parties to "cooperate and work together in order to effectuate the

4    settlement."  *Id.* at 26-27.  The Ninth Circuit issued an order requesting responses to the defendants'

5    petition.  *In re Adobe*, ECF No. 2.  Girard Gibbs filed a response on Mr. Devine's behalf, arguing that

6    the petition should be dismissed because it was moot and that, in the alternative, the petition should be

7    denied because the approval or rejection of a class action settlement is committed to the sound discretion

8    of the district court and the Court properly considered whether the proposed settlement was within the

9    range of reasonableness.  *In re Adobe*, ECF No. 6.  Girard Gibbs also filed an opposition to the motions

10   for leave to file amicus briefs filed by a group of eight economists and the United States and California

11   Chambers of Commerce.  *In re Adobe*, ECF No. 13.  On December 29, 2014, the Ninth Circuit

12   scheduled oral argument on the defendants' writ petition for March 13, 2015.  *In re Adobe*, ECF No. 19.

13          **D.      Mr. Devine Participates in Renewed Settlement Negotiations**

14          With the denial of preliminary approval, and the defendants taking the position that the

15   Settlement Agreement remained binding until the Ninth Circuit ruled on the petition for preliminary

16   approval, Mr. Devine was in a unique position to participate in renewed settlement negotiations.  So that

17   he would be able to evaluate the merits of any future settlement proposal, Mr. Devine asked Girard

18   Gibbs to independently advise him about the risks of continued litigation and trial that Class Counsel

19   and the defendants had identified as justifying the proposed $324.5 million settlement.  Girard Decl.,

20   ¶ 20.  These projects included analyzing the merits of the pending pretrial motions, evaluating the

21   plaintiffs' damages model, and reviewing portions of the focus group and mock trial videos that Class

22   Counsel referenced to at the preliminary approval hearing.  *Id.*, ¶¶ 21-23.

23          The parties engaged in further settlement discussions through mediator Layn Phillips, with Mr.

24   Girard participating on Mr. Devine's behalf.  Throughout the five months of negotiations, Mr. Girard

25   communicated regularly with the mediator to explain Mr. Devine's viewpoints directly.  *Id.*, ¶ 32.  He

26   conferred extensively with Class Counsel to discuss strategy and coordinate positions to increase

27   leverage and bargaining power.  *Id.*, ¶ 33.  He also consulted frequently with Mr. Devine to apprise him

28   of developments and advise him about the merits of various proposals when weighed against the risks

5

CLASS REPRESENTATIVE MICHAEL DEVINE'S NOTICE OF MOTION AND MOTION FOR
ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND SERVICE AWARD
Master Docket No. 11-CV-2509-LHK

posed by continued litigation. *Id.*, ¶ 34.  The parties' negotiations culminated in the agreement to resolve the litigation for $415 million, $35 million more than the benchmark amount established by the prior settlements.

**III.     Girard Gibbs Should Be Awarded a Fee of Five Percent of the $90.5 Million Its Efforts Added to the Settlement Fund**

     **A.     Girard Gibbs Is Entitled to an Award of Attorneys' Fees**

It is well settled that "a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980).  The "common fund" doctrine "rests on the perception that persons who obtain the benefit of a lawsuit without contributing to its cost are unjustly enriched at the successful litigant's expense."  *Id.*  A court with jurisdiction over the fund can "prevent this inequity by assessing attorney's fees against the entire fund, thus spreading fees proportionately among those benefited by the suit." *Id.*  "Ninth Circuit jurisprudence … permits the application of common fund principles where—as in the present case—the class of beneficiaries is identifiable and the benefits can be traced in order to allocate the fees to the class." *Glass v. UBS Financial Services, Inc.*, 331 F. App'x 452, 457 (9th Cir. 2009).  In such cases, "the common fund doctrine ensures that each member of the winning party contributes proportionately to the payment of attorneys' fees." *Staton v. Boeing Co.*, 327 F.3d 938, 967 (9th Cir. 2003).

When "objections result in an increase to the common fund, the objectors may claim entitlement to fees on the same equitable principles as class counsel." *Rodriguez v. Disner*, 688 F.3d 645, 658 (9th Cir. 2012).  Courts have recognized that objectors can play a valuable role in class action settlements by creating an adversarial process at a time when both the plaintiffs and defendants advocate in favor of the settlement. *See Eubank v. Pella Corp.*, 753 F.3d 718, 720 (7th Cir. 2014) ("American judges are accustomed to presiding over adversary proceedings.  They expect the clash of the adversaries to generate the information that the judge needs to decide the case.  And so when a judge is being urged by both adversaries to approve the class-action settlement that they've negotiated, he's at a disadvantage in evaluating the fairness of the settlement to the class."); *Zucker v. Occidental Petroleum Corp.*, 192 F.3d 1323, 1329 (9th Cir. 1999) ("The contribution [an objector's] attorney made, by providing an adversarial

context in which the district court could evaluate the fairness of attorneys' fees, was substantial."); *Bell Atlantic Corp. v. Bolger*, 2 F.3d 1304, 1310 (3d Cir. 1993) ("The parties can be expected to spotlight the proposal's strengths and slight its defects. … In such circumstances, objectors play an important role by giving courts access to information on the settlement's merits."); *see also* William B. Rubenstein, *The Fairness Hearing: Adversarial and Regulatory Approaches*, 53 UCLA L. Rev. 1435, 1475 (2006) ("A judge will be most capable of making an accurate assessment of the value of the legal claims following an adversarial presentation of the merits of these claims.  This presentation must, by necessity, be abbreviated, but it nonetheless ought to be adversarial.  The settling parties lack the incentives—indeed, possess the opposite incentives—to make this presentation to a judge.  It must be made by third parties.").

When meritorious objections reveal weaknesses in a settlement and result in a tangible benefit to the class, courts award fees to objectors "that can be substantial."  *Eubank*, 753 F.3d at 720 ("Enter the objectors. … If their objections persuade the judge to disapprove [a settlement], and as a consequence a settlement more favorable to the class is negotiated and approved, the objectors will receive a cash award that can be substantial …."); *see also Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277, 288 (7th Cir. 2002) (recognizing the desirability of having "as broad a range of participants" as possible at a settlement hearing and that "[t]his participation is encouraged by permitting lawyers who contribute materially to the proceeding to obtain a fee").  The Ninth Circuit has held that it is clear error for a district court to deny objectors' counsel a fee when their efforts increased the settlement fund. *Rodriguez v. West Publishing Corp.*, 563 F.3d 948, 963 (9th Cir. 2009) (finding clearly erroneous the district court's refusal to award fees to objectors who first raised the issue of objectionable incentive agreements and added $325,000 to the settlement fund for the class); *see also* William B. Rubenstein, Newberg on Class Actions § 13:37 (5th ed. 2014) ("Thus, for example, if a class member objected to class counsel's fee and successfully trimmed that fee by, say, $100,000, that $100,000 would go back into the fund for the class's benefit; objector's counsel has therefore created a $100,000 benefit for the class and would be entitled to petition the court to award them some percentage of that amount.").

Because Mr. Devine's objection resulted in a substantial increase to the settlement fund, his counsel is entitled to an award of attorneys' fees.  *Disner*, 688 F.3d at 658.  Mr. Devine objected that the

CLASS REPRESENTATIVE MICHAEL DEVINE'S NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND SERVICE AWARD
Master Docket No. 11-CV-2509-LHK

amount of the proposed settlement was too low given the strength of the plaintiffs' evidence of liability and in comparison to the amount of the prior settlements, and the Court denied preliminary approval for those reasons. There were no other objections to the proposed settlement, so there can be no dispute that it was Mr. Devine and his counsel who achieved this benefit for the class. *Cf. id.* at 659 (affirming the denial of fees to objectors who "filed briefs capitalizing on arguments already made" by other objectors); *Reynolds*, 288 F.3d at 288-89 (noting that while it may be appropriate to deny an objector's counsel a fee if other objectors raised the same points, it is not appropriate for a judge to "den[y] a fee to the objectors … on the ground that he had already decided, without telling anybody, not to accept" the settlement because "objectors must decide whether to object without knowing what objections may be moot because they have already occurred to the judge"). The fact that Class Counsel is not seeking a fee on the additional $90.5 million confirms the critical role that Mr. Devine and Girard Gibbs played in improving the settlement.

## B. The Court Should Use the Percentage-of-the-Fund Method to Calculate Girard Gibbs's Attorneys' Fee Award

In the Ninth Circuit, district courts have discretion to choose either the "percentage-of-the-fund" or the "lodestar" method in calculating an attorneys' fee award in a common fund case. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002). The method a district court chooses to use, and its application of that method, must achieve a reasonable result. *See In re Bluetooth Headset Products Liability Litig.*, 654 F.3d 935, 942 (9th Cir. 2011) ("Though courts have discretion to choose which calculation method they use, their discretion must be exercised so as to achieve a reasonable result."); *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989). As the Ninth Circuit has instructed, "[r]easonableness is the goal, and mechanical or formulaic application of either method, where it yields an unreasonable result, can be an abuse of discretion." *In re Coordinated Pretrial Proceedings in Petroleum Products Antitrust Litig.*, 109 F.3d 602, 607 (9th Cir. 1997).

The Ninth Circuit and district courts in this Circuit have recognized that the percentage-of-the-fund method is the appropriate method for calculating fees when counsel's effort has created a common fund. *See, e.g., In re Bluetooth*, 654 F.3d at 942 ("Because the benefit to the class is easily quantified in common-fund settlements, we have allowed courts to award attorneys a percentage of the common fund

in lieu of the often more time-consuming task of calculating the lodestar."); *Chu v. Wells Fargo Investments, LLC*, Nos. C 05-4526 MHP, C 06-7924 MHP, 2011 WL 672645, at *4 (N.D. Cal. Feb. 16, 2011) (holding that the percentage-of-the-fund method is appropriate when the amount of the settlement is fixed and there is no reversionary payment to the defendant); *In re Omnivision Technologies, Inc.*, 559 F. Supp. 2d 1036, 1046 (N.D. Cal. 2008) (observing that "use of the percentage method in common fund cases appears to be dominant" and discussing its advantages over the lodestar method).  Courts generally use the lodestar method when the value of the class's recovery is difficult to determine.  *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998) (noting that courts use the lodestar method when "there is no way to gauge the net value of the settlement or any percentage thereof"); *Simon v. Toshiba America*, No. C 07-06202 MHP, 2010 WL 1757956, at *3 (N.D. Cal. Apr. 30, 2010) (using the lodestar method where the settlement allowed class members to choose between a voucher or a replacement product and the claims process had not yet concluded, making the value of the benefit to the class uncertain).

Courts and commentators have extolled the benefits of the percentage-of-the-fund method, particularly when compared to the inefficiencies created by the lodestar method.  As Judge Patel explained, "a number of salutary effects can be achieved by [using the percentage method], including removing the inducement to unnecessarily increase hours, prompting early settlement, reducing burdensome paperwork for counsel and the court and providing a degree of predictability to fee awards." *In re Activision Securities Litig.*, 723 F. Supp. 1373, 1376 (N.D. Cal. 1989).  The percentage method aligns lawyers' interest with the interest of class members, since it encourages lawyers to concentrate their efforts on achieving the highest possible recovery for the class, which in turn increases the fee award.  *See In re Rite Aid Corp. Securities Litig.*, 396 F.3d 294, 300 (3d Cir. 2005) (recognizing that the percentage method "is generally favored in common fund cases because it allows courts to award fees from the fund 'in a manner that rewards counsel for success and penalizes it for failure'" (citation omitted)); *see also* William B. Rubenstein, *Why the Percentage Method?*, 2 Class Action Attorney Fee Digest 93 (March 2008) ("[U]nder the percentage method, counsel has an interest in generating as large a recovery for the class as possible, as her fee increases with the class's take, while keeping her hours to the minimum necessary to do the job effectively."); Task Force on Contingent Fees, Tort Trial and

CLASS REPRESENTATIVE MICHAEL DEVINE'S NOTICE OF MOTION AND MOTION FOR
ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND SERVICE AWARD
Master Docket No. 11-CV-2509-LHK

Insurance Practice Section of the American Bar Association, *Report on Contingent Fees in Class Action Litigation*, 25 Rev. Litig. 459, 469 (2006) (noting that the percentage method "has numerous advantages over the lodestar method," including its simplicity, the disincentive for attorneys to "bill unnecessary hours or to use three lawyers when one would do," and the fact that it "ties the lawyers' fee directly to the success of the litigation").

The percentage method not only gives primary consideration to the results obtained for the class, it is also consistent with fee calculations in the private market.  *See* Alan Hirsch & Diane Sheehey, Awarding Attorneys' Fees and Managing Fee Litigation 73 (Federal Judicial Center 2d ed. 2005) (explaining that the percentage method "helps ensure that the fee award will simulate marketplace rates, since most common fund cases are the kinds of cases normally taken on a contingency fee basis, by which counsel is promised a percentage of any recovery").  As Professor Silver discusses in his report, non-class plaintiffs overwhelmingly use the percentage method in a variety of legal contexts.  Silver Report at 17-21.[1]  In addition, using the percentage method will advance the two objectives that courts, as guardians of the interests of class members, should have in mind when determining an appropriate fee award: "to fairly compensate lawyers for services that benefit class members and to motivate them to make class members better off."  *Id.* at 10-11.

The lodestar method, by contrast, has been criticized as encouraging lawyers to prolong the litigation and discourage early settlements that would benefit the class.  *See Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 121 (2d Cir. 2005) (noting that the lodestar method "create[s] an unanticipated disincentive to early settlements, tempt[s] lawyers to run up their hours, and compel[s] district courts to engage in a gimlet-eyed review of line-item fee audits" (alterations in original) (citation omitted)); *Bolton v. U.S. Nursing Corp.*, No. C 12-4466 LB, 2013 WL 5700403, at *5 (N.D. Cal. Oct. 18, 2013) ("In a common fund case, a lodestar method does not necessarily achieve the stated purposes of proportionality, predictability and protection of the class and can encourage unjustified work and protracting the litigation."); *see also See Swedish Hospital Corp. v. Shalala*, 1 F.3d 1261, 1268-69 (D.C. Cir. 1993) (explaining that "using the lodestar approach in common fund cases encourages significant elements of inefficiency," including incentivizing lawyers to spend as many hours as possible and avoid

---

[1] The Expert Report of Professor Charles Silver is attached as Exhibit 2 to the Girard Declaration.

early settlement, while "if a percentage-of the-fund calculation controls, inefficiently expended hours only serve to reduce the per hour compensation of the attorney expending them").

Given these views of the two methods, it is not surprising that studies of class action settlements have found that courts use the percentage-of-the-fund method far more often than the lodestar method. *See* Brian T. Fitzpatrick, *An Empirical Study of Class Action Settlements and Their Fee Awards*, 7 J. Empirical Legal Stud. 811, 832 (2010) (finding that judges used the percentage method in 69% of the 688 class action settlements in 2006 and 2007, used the lodestar method in 12% of settlements, and did not state the method or used some other method in 20% of settlements); Theodore Eisenberg & Geoffrey P. Miller, *Attorneys' Fees and Expenses in Class Action Settlements: 1993-2008*, 7 J. Empirical Legal Stud. 248, 267 (2010) (finding that the percentage-of-the-fund method was the "overwhelmingly dominant method of computing fees" from 1993 through 2008); Task Force on Contingent Fees, 25 Rev. Litig. 459, 472 ("Today, the percentage method of calculating fees is explicitly the dominant method for calculating fees," and "the clear trend is away from the lodestar and all of the problems that this method brings."); *see also* Federal Judicial Center, Manual for Complex Litigation (Fourth) § 14.121 at 187 (2004) ("After a period of experimentation with the lodestar method … the vast majority of courts of appeal now permit or direct district courts to use the percentage-fee method in common-fund cases.").

Use of the percentage-of-the-fund method is particularly appropriate for calculating Girard Gibbs's fee award.  While the firm's involvement in this case was not lengthy, Girard Gibbs was able to achieve a considerable benefit for the class in the period following the firm's retention in May 2014. Awarding a fee using the percentage method will encourage other experienced counsel to provide the adversarial context that is so essential to courts' evaluations of class settlements.  It will also motivate objectors' counsel to assume a constructive role in improving settlements that are rejected by courts rather than merely tossing a grenade into the process and expecting a fee.  Use of the lodestar method would have the opposite effect, dissuading skilled lawyers from stepping into the oft-criticized role of objectors' counsel.  As Professor Silver explains, "If a court rejects as settlement as insufficient, class members want objectors' counsel to extract the greatest possible amount of money from the defendants as quickly as possible.  They care about the results objectors' lawyers produce, not about the time it takes to get them."  Silver Report at 3.

CLASS REPRESENTATIVE MICHAEL DEVINE'S NOTICE OF MOTION AND MOTION FOR
ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND SERVICE AWARD
Master Docket No. 11-CV-2509-LHK

1
2

### C.      Girard Gibbs's Requested Fee of 5% of the $90.5 Additional Settlement Amount Is Reasonable and Appropriate Under the Circumstances

3       The Ninth Circuit has instructed that 25% is "a proper benchmark figure," with common fund

4    fees typically ranging from 20% to 30% of the fund.  *In re Coordinated Pretrial*, 109 F.3d at 607

5    (quoting *Graulty*, 886 F.2d at 270); *see also de Mira v. Heartland Employment Service, LLC*, No. 12-

6    CV-04092 LHK, 2014 WL 1026282, at *1 (N.D. Cal. Mar. 13, 2014) ("The Ninth Circuit has endorsed a

7    benchmark of 25% for attorneys' fee awards" and "[p]ercentage awards of between 20% and 30% are

8    common.").  The 25% benchmark is the starting point for the analysis, and the percentage may be

9    adjusted up or down based on the court's consideration of "all of the circumstances of the case."

10   *Vizcaino*, 290 F.3d at 1048.  The relevant circumstances include (1) the results achieved for the class,

11   (2) the risk counsel assumed, (3) the skill required and the quality of the work, (4) the contingent nature

12   of the fee, (5) whether the fee is above or below the market rate, and (6) awards in similar cases.  *Id.* at

13   1048-50; *see also de Mira*, 2014 WL 1026282, at *1.

14       Girard Gibbs has already taken the *Vizcaino* considerations into account in reducing its request

15   fivefold from the 25% benchmark to 5%, and in seeking a fee only on the $90.5 million that its efforts

16   added to the settlement fund.  Girard Gibbs's role in this case was different than the role of Class

17   Counsel, who developed the legal theories and skillfully litigated the case for four years to the eve of

18   trial.  At the same time, Girard Gibbs assumed significant risk in serving as Mr. Devine's counsel and

19   substantially increased the amount of the settlement fund.  As discussed below, consideration of the

20   *Vizcaino* factors favors awarding Girard Gibbs a fee of 5% of the $90.5 million its efforts added to the

21   settlement fund.

### 1.      Girard Gibbs achieved an exceptional result for the class

23       Courts recognize that "[t]he overall result and benefit to the class from the litigation is the most

24   critical factor in granting a fee award."  *Omnivision*, 559 F. Supp. 2d at 1046; *see also Knight v. Red*

25   *Door Salons, Inc.*, No. 08-01520 SC, 2009 WL 248367, at *5 (N.D. Cal. Feb. 2, 2009).  Girard Gibbs

26   achieved an exceptional result for the class.  *See Vizcaino*, 290 F.3d at 1048 ("Exceptional results are a

27   relevant circumstance.").  At a point when Class Counsel and the defendants had negotiated a hard-

28   fought $324.5 million settlement for the class, Mr. Devine's objection led the Court to deny preliminary

CLASS REPRESENTATIVE MICHAEL DEVINE'S NOTICE OF MOTION AND MOTION FOR
ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND SERVICE AWARD
Master Docket No. 11-CV-2509-LHK

approval and created the leverage necessary to extract an additional $90.5 million from the defendants. The $415 settlement is $35 million more than the $380 million the Court cited as the appropriate benchmark based on the prior settlements with Lucasfilm, Intuit and Pixar.  And even if the Court awards the fees and expenses that Class Counsel and Girard Gibbs are requesting, the class's recovery will be 35% more than it would have been if the prior settlement proposal had been approved.[2] Professor Silver, who has studied class actions and attorney fee awards for thirty years, calls the result "truly exceptional," adding that "[a]lthough there are other cases in which settlements increased in size following objections, they are few in number, and I know of no other instance in which an objector's law firm negotiated a similarly enormous increase in an existing mega-fund settlement offer."  Silver Report at 13.

### 2. Girard Gibbs assumed significant risk

Girard Gibbs assumed significant risks in agreeing to represent Mr. Devine.  Because courts approve settlements in the vast majority of cases in which there are objections, the chances of Mr. Devine's objection finding favor with the Court and resulting in a denial of preliminary approval were minimal.  *See* Christopher R. Leslie, *The Significance of Silence: Collective Action Problems and Class Action Settlements*, 59 Fla. L. Rev. 71, 105 (2007) ("Courts have approved proposed settlements in over 90% of the cases in which class members filed objections.").  Courts are particularly skeptical of objections to the amount of the settlement.  As Professor Leslie observed, "judges routinely ignore objections that the monetary benefits of a proposed settlement are too low."  *Id.*  The lawyers who negotiated the $324.5 settlement are all very skilled and experienced in class action litigation, and many courts would have deferred to their judgment in approving the proposed settlement.  Moreover, the fact that $324.5 million was "already on the table when the objection was made"—an amount that Professor Silver says "would have surely fallen into the top 1 percent to 2 percent of all recoveries"—made an objection to the amount of the settlement even less likely to succeed.  Silver Report at 14.

It was also far from certain that the objection would lead to a successful renegotiation, particularly after the defendants filed their writ petition and the Ninth Circuit requested responses.  If the

---

[2] The net recovery to class members will increase from $242,015,000 to $327,990,000, an increase of $85,975,000, or 35%.

CLASS REPRESENTATIVE MICHAEL DEVINE'S NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND SERVICE AWARD
Master Docket No. 11-CV-2509-LHK

Ninth Circuit reversed the Court's denial of preliminary approval or if the plaintiffs recovered less than the proposed settlement at trial or lost outright, Girard Gibbs would not be compensated for its work. *See* Rubenstein, *The Fairness Hearing*, 53 UCLA L. Rev. at 1450 ("If objectors tweak a settlement, they get a fee; but if they raise a fundamental concern about a settlement that forces the deal to fall apart, there is no money from which they can take a fee.  Objectors' financial incentives therefore encourage them to pursue the least problematic settlements and to do so gingerly."); Edward Brunet, *Class Action Objectors: Extortionist Free Riders or Fairness Guarantors*, 2003 U. Chi. Legal F. 403, 462 (2003) (noting that objectors are unlikely to be compensated for "major victories" in which they "defeat a proposed settlement so thoroughly that the settlement is never revived" because "[i]t is impossible to award attorney's fees when the trial court rejects a proposed settlement").

Girard Gibbs also put its reputation on the line.  As a firm that typically represents plaintiffs in class action cases, the firm's lawyers have spent years developing cooperative working relationships with other plaintiffs' firms, including the firms serving as Class Counsel in this case.  Girard Decl., ¶ 40. Representing an objector to a settlement, much less an objecting class representative, is anathema to many lawyers in this field, and often to courts as well.  *See* Brunet, 2003 U. Chi. Legal F. at 411, 471 (noting that "objectors may be the least popular litigation participants in the history of civil procedure" and "have a bad reputation"); Alan B. Morrison, *Improving the Class Action Settlement Process: Little Things Mean a Lot*, 79 G. Wash. L. Rev. 428, 428 (Feb. 2011) (recounting his experience of being "considered the proverbial skunk at the garden party" by "all the lawyers in every case, as well as virtually every district court judge" when objecting to class action settlements).  Had the plaintiffs lost at trial after the Court denied preliminary approval, Girard Gibbs would have undoubtedly been subject to severe criticism and its relationships with other plaintiffs' counsel put in jeopardy.

### 3.	Representing Mr. Devine required skill and high quality work

Despite the risks involved, Girard Gibbs agreed to represent Mr. Devine because he had a difficult time finding competent counsel and the firm was uniquely qualified to represent him both in presenting his position to the Court and in the course of ongoing litigation if the Court denied preliminary approval.  Because of the firm's broad experience in representing plaintiffs in class action litigation, Girard Gibbs was able, in a short time frame, to analyze the settlement documentation, the

1  pleadings and record in the case, and the Court's prior orders to develop an effective approach for

2  communicating Mr. Devine's concerns about the settlement to the Court.  *See* Brunet, 2003 U. Chi.

3  Legal F. at 448 (noting that objectors' counsel "have little time to collect their own information,

4  formulate a coherent position, and formally object to the court").

5      Girard Gibbs's work in this case also extended beyond the work of representing a typical

6  objector.  As a class representative, Mr. Devine remained a party to the litigation even though his

7  relationship with Class Counsel had ended.  Girard Gibbs assumed the responsibility and attendant

8  financial risk of representing Mr. Devine at trial.  Girard Gibbs also remained responsible for advising

9  Mr. Devine in regards to his ongoing role as a class representative in renewed settlement negotiations.

10 The firm's work allowed Mr. Devine to fulfill his role as a class representative and ultimately endorse

11 the improved settlement.

12           **4.       Girard Gibbs represents Mr. Devine on a contingent basis**

13     Girard Gibbs represents Mr. Devine on a fully contingent basis.  The firm has received no

14 payment for its work and has advanced all expenses.  In addition to assuming the risk that it might not

15 be paid for the time it devoted to representing Mr. Devine, Girard Gibbs was also precluded from

16 devoting resources to other cases or potential new cases.  Girard Decl., ¶ 39.  The Ninth Circuit has

17 recognized that attorneys who take on the risk of a contingency case should be compensated for having

18 to forgo other work.  *Vizcaino*, 290 F.3d at 1050.

19           **5.       The requested fee is well below the market rate**

20     A 5% fee is also well below the market rate.  The Ninth Circuit approved the district court's

21 consideration of the market rate in *Vizcaino*, but it also cautioned that market rates may not be useful in

22 class action cases where "no ascertainable 'market' exists."  290 F.3d at 1049.  Because the role Girard

23 Gibbs played in this case is unique—it is not the same as Class Counsel's role, or the role of a typical

24 objector's counsel since Mr. Devine is a class representative—the market rate provides a useful

25 consideration in evaluating the reasonableness of the fee request.  As Professor Silver explains,

26 sophisticated clients usually pay far more than 5% of the recovery in complex litigation.  Silver Report

27 at 17-24.  In fact, the market rate is typically one-third or more of the recovery.  *Id.*; *see also Blum v.*

28 *Stenson*, 465 U.S. 886, 902 n.19 (1984) ("In tort suits, an attorney might receive one-third of whatever

CLASS REPRESENTATIVE MICHAEL DEVINE'S NOTICE OF MOTION AND MOTION FOR
ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND SERVICE AWARD
Master Docket No. 11-CV-2509-LHK

1  amount the plaintiff recovers.").  In addition, plaintiffs typically agree to pay contingent fees of 33% to

2  40% in opt out cases, where lawyers represent class members who have decided to litigate individually

3  rather than participating in a class action.  Silver Report at 24-25.  And when Girard Gibbs represents

4  sophisticated clients on a contingency basis, it does so pursuant to agreements that contain fee

5  percentages higher than 5% of the recovery.  *See id*. at 22-23; Girard Decl., ¶ 44.

6       **6.      The requested fee is comparable to fees awarded in other cases**

7       Courts have awarded objectors' counsel significant fees when they create a substantial benefit

8  for the class.  *See In re Trans Union Corp. Privacy Litig.*, 629 F.3d 741, 747-48 (7th Cir. 2011) (holding

9  that an objector should be awarded attorneys' fees of $4.125 million, which equaled 5.9% of the $70

10  million by which the settlement fund was increased following her objection); *Shaw v. Toshiba America*

11  *Info. Systems, Inc.*, 91 F. Supp. 2d 942, 974 (E.D. Tex. 2000) (awarding $6 million to objectors who

12  improved the settlement by doubling the length of the coupon exemption date).  And in cases in which

13  lawyers have negotiated an increase to a settlement fund, courts have awarded the lawyers a percentage

14  of the increased amount.  *See Swedish Hospital*, 1 F.3d at 1272 (affirming a fee award of 20% of the $10

15  million increase in the fund created by counsel's efforts); *In re First Databank Antitrust Litig.*, 209 F.

16  Supp. 2d 96, 101 (D.D.C. 2002) (awarding counsel 30% of the $8 million increase in the settlement fund

17  attributable to their efforts); *Linney v. Cellular Alaska Partnership*, Nos. C-96-3008 DLJ, *et al*., 1997

18  WL 450064, at *4, 6-7 (N.D. Cal. July 18, 1997) (awarding a fee of one third of the settlement fund

19  negotiated by counsel who were retained by the plaintiffs after the court denied approval of a prior

20  settlement proposal), *aff'd*, 151 F.3d 1234 (9th Cir. 1998).

21       **D.      Girard Gibbs's Lodestar Also Supports the Requested Fee**

22       Courts in this circuit recognize that "[a] lodestar cross-check is not required in this circuit, and in

23  some cases is not a useful reference point."  *Craft v. County of San Bernardino*, 624 F. Supp. 2d 1113,

24  1122 (C.D. Cal. 2008); *see also Lopez v. Youngblood*, No. CV-F-07-0474 DLB, 2011 WL 10483569, at

25  *14 (E.D. Cal. Sept. 2, 2011) (same); Task Force on Contingent Fees, 25 Rev. Litig. at 471 ("The

26  lodestar cross-check re-introduces the problems of the lodestar method," since attorneys who "know that

27  their fee, when calculated as a percentage, will be 'crosschecked' by the lodestar, they have every

28  financial incentive to put as many hours into the file as possible.").  In fact, the Ninth Circuit recently

CLASS REPRESENTATIVE MICHAEL DEVINE'S NOTICE OF MOTION AND MOTION FOR
ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND SERVICE AWARD
Master Docket No. 11-CV-2509-LHK

1    affirmed a fee award of 25% of a settlement fund without a lodestar cross-check and despite "the

2    relatively low time-commitment by plaintiff's counsel" because "the district court did not abuse its

3    discretion in giving weight to other factors, such as the results achieved for the class and the favorable

4    timing of the settlement." *Glass*, 331 F. App'x at 456-57.

5          Nonetheless, Girard Gibbs's lodestar supports a fee of 5% of the $90.5 million the firm's efforts

6    added to the settlement fund. Using the lodestar method, an attorneys' fee award is calculated by

7    multiplying the number of hours reasonably spent on the litigation by a reasonable hourly rate. *Moreno*

8    *v. City of Sacramento*, 534 F.3d 1106, 1111 (9th Cir. 2008). The lodestar should include all time

9    "reasonably expended in pursuit of the ultimate result achieved in the same manner that an attorney

10   traditionally is compensated by a fee-paying client for all time reasonably expended on a matter."

11   *Hensley v. Eckerhart*, 461 U.S. 424, 431 (1983) (citation omitted). In addition, "the court should defer

12   to the winning lawyer's professional judgment as to how much time he was required to spend on the

13   case." *Moreno*, 534 F.3d at 1112. Once the lodestar is determined, the amount may be adjusted to

14   account for several factors, such as the benefit obtained for the class, the risk of nonpayment, the

15   complexity and novelty of the issues presented, and awards in similar cases. *See In re Bluetooth*, 654

16   F.3d at 942. "Foremost among these considerations, however, is the benefit obtained for the class." *Id.*

17         Girard Gibbs's lodestar is $518,919.50. Girard Decl., ¶ 45. The lodestar consists only of the

18   916.20 hours the firm devoted to securing the $90.5 million increase to the settlement fund for the

19   benefit of the class, includes preparing and presenting Mr. Devine's objection to the Court, opposing the

20   defendants' petition for writ of mandamus and the motions for leave to file amicus briefs in support of

21   the petition, assessing and advising Mr. Devine about the risks of continued litigation, and participating

22   in the successful settlement negotiations. Mr. Girard's declaration includes a detailed description of the

23   work the firm performed, and copies of the contemporaneously maintained billing records are attached

24   as Exhibit 3 to the declaration. Professor Silver has reviewed the billing records and found that the

25   hours were reasonable and necessary to effectively represent Mr. Devine in this matter. *See* Silver

26   Report at 35.

27         Girard Gibbs's rates are comparable to the rates charged by other attorneys with similar skill and

28   experience. *Id.* at 31-35; *see also Moore v. Verizon Communications Inc.*, No. C 09-1823 SBA, 2014

17

CLASS REPRESENTATIVE MICHAEL DEVINE'S NOTICE OF MOTION AND MOTION FOR
ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND SERVICE AWARD
Master Docket No. 11-CV-02509-LHK

WL 588035, at *14 (N.D. Cal. Feb. 14, 2014) (approving partner rates ranging from $550 to $825 as "reasonable given the geographic location and experience of counsel"); *Nwabueze v. AT&T, Inc.*, No. C 09-01529 SI, 2014 WL 324262, at *2, ECF No. 248 (N.D. Cal. Jan. 29, 2014) (finding that partner rates of $625 and $825, listed in ECF No. 248, were reasonable); *Wehlage v. Evergreen at Arvin, LLC*, No. 4:10-cv-05839-CW, 2012 WL 4755371, at *2 (N.D. Cal. Oct. 4, 2012) (approving hourly rates of $750 and $900 for senior partners, listed in ECF No. 127); *Laffitte v. Robert Half Int'l Inc.*, 231 Cal. App. 4th 860, 881 (Cal. Ct. App. 2014) (affirming the trial court's finding that "hourly rates approved by California courts rang[e] from $750 to $875" and that "surveys for 2009 showed hourly rates ranging from $775 to $950"). They are the same rates the firm charges clients for legal services performed on a non-contingent basis, and have been approved by courts in other cases in which the firm served as class counsel. Girard Decl., ¶¶ 47-48. They are also comparable to Lieff Cabraser's rates, which the Court found to be reasonable in awarding fees in connection with the earlier settlement with Pixar, Lucasfilm and Intuit. *See* ECF No. 719-8 at 2 (chart showing Lieff Cabraser's rates); ECF No. 910 at 11:21-13:19 (discussion at the final approval hearing about Lieff Cabraser's rates).

While a multiplier of 8.7 is on the high end of multipliers typically awarded by courts, it is far from unprecedented. *See Vizcaino*, 290 F.3d at 1051 n.6 (citing multipliers ranging from 0.6 to 19.6); *see also Stop & Shop Supermarket Co. v. Smithkline Beecham Corp.,* No. 03-4578, 2005 U.S. Dist. LEXIS 9705, at *60-61 (E.D. Pa. May 20, 2005) (awarding 20% of a $100 million fund, which was a 15.6 multiplier on counsel's lodestar); *In re Rite Aid Corp. Securities Litig.*, 362 F. Supp. 2d 587, 589-90 (E.D. Pa. 2005) (awarding 25% of the settlement fund, which was equal to an 8 multiplier on counsel's lodestar because of the "undeniably unique" result obtained);[3] *Weiss v. Mercedes–Benz of North America, Inc.,* 899 F. Supp. 1297, 1304 (D.N.J. 1995) (awarding 15% of a $75 million fund, which represented a 9.3 multiplier on counsel's lodestar),[4] *aff'd*, 66 F.3d 314 (3d Cir. 1995); *Conley v. Sears, Roebuck & Co.*, 222 B.R. 181, 182, 189 (Bankr. D. Mass. 1998) (awarding 20-25% of "the value added by plaintiffs' counsel above and beyond the amounts already on the table," which was equal to an 8.9

---

[3] *See* Appellant's Opening Brief, 2003 WL 24903293, at *59 (3d Cir. Dec. 22, 2013) (explaining that the awarded attorneys' fee was equal to a multiplier of 8).

[4] *See In re Prudential Ins. Co. America Sales Practice Litig. Agent Actions*, 148 F.3d 283, 340 (3d Cir. 1998) (noting that the multiplier in the *Weiss* case was 9.3).

1  multiplier on counsel's lodestar).  It is also justified in this case because of the substantial benefit that

2  Girard Gibbs was able to obtain for the class in a short amount of time and against significant odds.

3      Girard Gibbs also incurred $16,603.06 in expenses that were necessary to the firm's efforts in

4  securing the $90.5 million increase to the settlement fund.  Girard Decl., ¶¶ 50-51, Ex. 4.  Attorneys who

5  create a common fund are entitled to reimbursement of their out-of-pocket expenses so long as they are

6  reasonable, necessary and directly related to the work performed on behalf of the class.  *Vincent v.*

7  *Hughes Air West*, 557 F.2d 759, 769 (9th Cir. 1977); *Omnivision*, 559 F. Supp. 2d at 1048.  Girard

8  Gibbs's expenses are the types of expenses that "would typically be billed to paying clients in non-

9  contingency matters," including transcript fees, mailing, copying and telephone costs, online legal

10  research charges, and travel costs.  *Knight*, 2009 WL 248367, at *7; *see also Omnivision*, 559 F. Supp.

11  2d at 1048-49.  Girard Gibbs does not seek separate reimbursement for these disbursements and

12  proposes instead to include them in the requested attorneys' fee.

13  **IV.  Michael Devine's Requested Service Award Is Reasonable and Should Be Awarded**

14      Class representatives are eligible for reasonable service awards.  *Staton*, 327 F.3d at 977.  The

15  Ninth Circuit recently explained that service awards that are "intended to compensate class

16  representatives for work undertaken on behalf of a class 'are fairly typical in class action cases.'"  *In re*

17  *Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 943 (9th Cir. 2015) (quoting *West Publishing*, 563

18  F.3d at 958-59).  The awards recognize the effort class representatives expend and the financial or

19  reputational risk they undertake in bringing the case, and to recognize their willingness to act as private

20  attorneys general.  *West Publishing*, 563 F.3d at 958-59.  The factors courts consider in determining

21  whether to grant a service award include the class representative's actions to protect the interests of the

22  class, the degree to which the class has benefitted from those actions, the time and effort the class

23  representative expended in pursuing the litigation, and reasonable fears of workplace retaliation.  *Staton*,

24  327 F.3d at 977.

25      **A.    Mr. Devine's Efforts on Behalf of the Class**

26      Mr. Devine has submitted a declaration in support of this motion that details his dedicated

27  prosecution of this litigation for nearly four years on behalf of the class.  Mr. Devine assisted his

28  attorneys in the initial case investigation and with preparing and developing his complaint, activities that

CLASS REPRESENTATIVE MICHAEL DEVINE'S NOTICE OF MOTION AND MOTION FOR
ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND SERVICE AWARD
Master Docket No. 11-CV-2509-LHK

are important to establishing and supporting class-wide claims.  Devine Decl., ¶ 8; *Hopson v. Hanesbrands Inc.*, No. CV-08-0844 EDL, 2009 WL 928133, at *10 (N.D. Cal. Apr. 3, 2009) (service awards recognize that class representatives' contributions are "instrumental in counsel's understanding" of a case).  Mr. Devine also advanced the litigation by fulfilling considerable discovery obligations. Devine Decl., ¶¶ 9-10; *Garner v. State Farm Mutual Automobile Insurance Co.*, No. CV 08 1365 CW EMC, 2010 WL 1687832, at *17 (N.D. Cal. Apr. 22, 2010) (finding that a class representative's extensive participation in discovery "demonstrated a strong commitment to the class," justifying a service award); *In re Electric Carbon Products Antitrust Litig.*, 447 F. Supp. 2d 389, 412-13 (D.N.J. 2006) (noting that discovery efforts benefit all class members "while causing these class representatives to expend time, effort, and money not required of any other class members").  Mr. Devine remained active throughout the litigation, reviewing and providing input on important court filings, attending hearings and mediation sessions, and regularly communicating with his attorneys.  Devine Decl., ¶¶ 11-13, 20-26.  Mr. Devine helped to protect the interests of the class by spending over 280 hours contributing to and monitoring the effective prosecution of class claims.  *Id.,* ¶ 7; *see Ingram v. Coca-Cola Co.*, 200 F.R.D. 685, 694 (N.D. Ga. 2001) (awarding class representatives $300,000 each and noting that their direct participation in the litigation "vigorously asserted the interests of the class").

B.     **The Risks Mr. Devine Assumed in Serving as a Class Representative**

Mr. Devine was no longer employed by Adobe at the time he filed his complaint, but because of his skills and experience, he expects that he will continue working in the high-tech industry, where the defendants offer many of the most desirable jobs and exert power and influence over other companies in the industry.  Mr. Devine's involvement in this case can be readily discovered through a web search. Devine Decl., ¶ 29.  Since companies are often reluctant to hire someone who has been involved in a lawsuit, much less a high profile lawsuit against a former employer, Mr. Devine's role in this case is likely to limit his employability and earning potential in the future.  *Glass v. UBS Financial Services, Inc.*, No. C-06-4068 MMC, 2007 WL 221862, at *17 (N.D. Cal. Jan. 26, 2007) (granting a service award where the class representatives who worked in the securities industry risked "putting their names on a complaint against one of the largest brokerage houses in America"), *aff'd*, 331 F. App'x 452 (9th Cir. 2009).  Mr. Devine's reasonable concern that his job prospects are significantly impaired because of

his participation in this lawsuit supports his application for a service award.  *See Staton*, 327 F.3d at 977; *Boyd v. Bank of America Corp*., No. SACV 13-0561-DOC, 2014 WL 6473804, at *7 (C.D. Cal. Nov. 18, 2014) (finding that a service award was "particularly deserved" where a class representative "put his career at risk" by suing his former employer).

### C. Opposing the $324.5 Million Settlement Required Substantial Additional Work and Increased the Risk Mr. Devine Assumed for the Benefit of the Class

A service award is also justified because of the increased effort and risk Mr. Devine took on by opposing the proposed $324.5 million settlement.  He could have supported the proposed settlement and collected a service award of up to $80,000 with minimal involvement in the remainder of the case.  Instead he decided to risk recovering nothing and take on the challenge of pursuing a better result for the class.  Mr. Devine retained independent counsel and worked extensively with them to present his opposition to the Court.  Devine Decl., ¶¶ 17-20.  When the Court denied preliminary approval, Mr. Devine consulted with his attorneys to evaluate the risks of continued litigation identified by Class Counsel and the defendants, and advocated for the class during hard-fought negotiations that resulted in a $415 million settlement.  *Id.,* ¶¶ 21-26.  His service award should reflect the outstanding benefit he conferred on the class.  *See Espenscheid v. DirectSat USA, LLC*, 688 F.3d 872, 876 (7th Cir. 2012) ("An important motivating factor is that if the class action suit fails, no incentive award will be made, while if the suit succeeds, in part at least as a result of the representative's strenuous efforts, the award may be larger the larger the settlement or judgment is ....").

Mr. Devine's heightened visibility as an objector put his future employment prospects at even greater risk.  Devine Decl., ¶¶ 29-30; *see also Guippone v. BH S & B Holdings, LLC,* No. 09 CIV. 01029 CM, 2011 WL 5148650, at *7 (S.D.N.Y. Oct. 28, 2011) (recognizing that the possibility that prospective employers will learn of a candidate's role as class representative creates a legitimate "'fear of adverse consequences and lost opportunities'" (citation omitted)).  His decision to oppose the initial proposed settlement resulted in a significant amount of press attention.  Devine Decl., ¶ 29; *see also Guippone*, 2011 WL 5148650, at *7 ("Today, the fact that a plaintiff has filed a federal lawsuit is searchable on the internet and may become known to prospective employers when evaluating the person.").  In addition, opposing the settlement and continuing to participate in the case caused Mr.

21

CLASS REPRESENTATIVE MICHAEL DEVINE'S NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND SERVICE AWARD
Master Docket No. 11-CV-2509-LHK

1   Devine mental and physical hardship, particularly because of the stress that a better outcome for the

2   class might not be achieved.  Devine Decl., ¶ 31; *see also Weeks v. Kellogg Co.*, No. CV 09-08102

3   MMM RZX, 2013 WL 6531177, at *36 (C.D. Cal. Nov. 23, 2013) (in determining the amount of a

4   service award, courts may consider whether the class representative experienced personal difficulties).

5   The additional effort and risk Mr. Devine assumed to secure a substantially improved settlement merits a

6   service award of $160,000.[5]

7       **D.    A Service Award of $160,000 Is Fair and Reasonable**

8       A service award of $160,000 is supported by Mr. Devine's contribution of time and effort, the

9   sacrifices he has made, and the extraordinary result he achieved for the class.  The requested award is

10  reasonable considering "the number of class representatives, the average incentive award amount, and

11  the proportion of the total settlement that is spent on incentive awards."  *In re Online DVD-Rental*, 779

12  F.3d at 947.  If each of the five class representatives is awarded $160,000, the awards will total only

13  0.19 % of the total settlement fund.  *See id.* at 948 (affirming incentive awards that made up "a mere

14  0.17 % of the total settlement fund").  Even adding the $20,000 service award Mr. Devine received in

15  connection with the settlements with Lucasfilm, Pixar and Intuit, the requested service award is still

16  within the range of service awards granted in other complex litigation.  *See, e.g.*, *In re Titanium Dioxide*

17  *Antitrust Litig.,* No. 10-CV-00318 RDB, 2013 WL 6577029, at *1 (D. Md. Dec. 13, 2013) (granting a

18  $125,000 service award to a class representative); *Ingram*, 200 F.R.D. at 694 (awarding $300,000

19  service awards to each of four representative plaintiffs); *Velez v. Novartis Pharmaceuticals Corp*., No.

20  04 CIV 09194 CM, 2010 WL 4877852, at *8, 26 (S.D.N.Y. Nov. 30, 2010) (granting service awards of

21  up to $125,000 to named plaintiffs, and $150,000 to one named plaintiff).

22

23

24  [5] Mr. Devine takes no position as to the service awards to the other class representatives, but notes that
the Court is not required to award the same amount to each class representative.  *See e.g., In re Titanium*

25  *Dioxide*, 2013 WL 6577029, at *1 (awarding $125,000 to one class representative and $25,000 to the
other two class representatives); *Hartless v. Clorox Co.*, 273 F.R.D. 630, 646-47 (S.D. Cal. 2011)

26  (approving an award of $4,000 to one class representative and $2,000 to another), *aff'd*, 473 F. App'x

27  716 (9th Cir. 2012); *In re Dun & Bradstreet Credit Services Customer Litig.*, 130 F.R.D. 366, 374 (S.D.
Ohio 1990) (approving incentive awards ranging from $35,000 to $55,000 and noting "differentiation

28  among class representatives based upon the role each played may be proper in given circumstances").

CLASS REPRESENTATIVE MICHAEL DEVINE'S NOTICE OF MOTION AND MOTION FOR
ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND SERVICE AWARD
Master Docket No. 11-CV-2509-LHK

1

**V.      Conclusion**

2

          Class representative Michael Devine requests that the Court award Girard Gibbs attorneys' fees

3

and reimbursement of expenses in the amount of $4,523,500, which is five percent of the $90.5 million

4

by which the settlement fund was increased as a result of Mr. Devine's objection and Girard Gibbs's

5

subsequent participation in settlement negotiations, and approve a service award of $160,000 to him in

6

recognition of his contribution to the $415 million recovery for the class.

7

8

Dated:  May 7, 2015                          **GIRARD GIBBS LLP**

9

10                                           By:       */s/ Daniel C. Girard*
                                                       Daniel C. Girard

11

12                                           Daniel C. Girard (State Bar No. 114826)
                                             Dena C. Sharp (State Bar No. 245869)
13                                           Elizabeth A. Kramer (State Bar No. 293129)
                                             GIRARD GIBBS LLP
14                                           601 California Street, 14th Floor
                                             San Francisco, CA 94108
15                                           Telephone:  (415) 981-4800
                                             Facsimile:   (415) 981-4846
16

17                                           *Counsel for Class Representative Michael Devine*

18

19

20

21

22

23

24

25

26

27

28

CLASS REPRESENTATIVE MICHAEL DEVINE'S NOTICE OF MOTION AND MOTION FOR
ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND SERVICE AWARD
Master Docket No. 11-CV-2509-LHK

**CERTIFICATE OF SERVICE**

I hereby certify that on May 7, 2015, I caused the foregoing document to be filed electronically with the Clerk of Court through CM/ECF and that the filing was served by CM/ECF on all counsel of record.

*/s/ Daniel C. Girard*
Daniel C. Girard

CLASS REPRESENTATIVE MICHAEL DEVINE'S NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND SERVICE AWARD
Master Docket No. 11-CV-2509-LHK