Joseph R. Saveri (State Bar No. 130064)
James G. Dallal (State Bar No. 277826)
JOSEPH SAVERI LAW FIRM, INC.
505 Montgomery Street, Suite 625
San Francisco, CA  94111
Telephone:  (415) 500-6800
Facsimile:  (415) 500-6803

*Co-Lead Class Counsel*

[Additional Counsel on Signature Page]

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| IN RE: HIGH-TECH EMPLOYEE ANTITRUST LITIGATION<br><br>THIS DOCUMENT RELATES TO:<br>ALL ACTIONS | Master Docket No. 11-CV-2509-LHK<br><br>**CO-LEAD COUNSEL JOSEPH SAVERI LAW FIRM'S MOTION FOR ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND SERVICE AWARDS**<br><br>Date:          July 9, 2015<br>Time:          1:30 pm<br>Courtroom:   Room 8, 4th Floor<br>Judge:         Honorable Lucy H. Koh |

Case No. 11-CV-2509-LHK

JSLF's Motion for Attorneys' Fees, Reimbursement of Costs, and Award of Incentive Fees

**TABLE OF CONTENTS**

**Page(s)**

I.     INTRODUCTION ................................................................................................................. 1

II.    LEGAL STANDARD ........................................................................................................... 3

III.   CLASS COUNSEL ARE ENTITLED TO A REASONABLE FEE OF 19.54 PERCENT
       OF THE SETTLEMENT FUNDS ....................................................................................... 5

       A.    Class Counsel Obtained a Remarkable Result .................................................... 5

       B.    This Litigation Had Substantial Risk. ................................................................. 6

       C.    This Litigation Required Great Skill and Exceptional Work Product. ................ 7

       D.    The Award Sought by Class Counsel Is Reasonable By the Ninth Circuit
             Benchmark. ......................................................................................................... 8

       E.    JSLF Undertook a Significant Financial Burden in this Litigation. ................... 9

IV.    A LODESTAR CROSS-CHECK CONFIRMS THE FEES SOUGHT BY CLASS
       COUNSEL ARE RESONABLE. ......................................................................................... 11

V.     NO ADJUSTMENT SHOULD BE MADE DUE TO THE EARLIER REJECTED
       SETTLEMENT. .................................................................................................................. 12

VI.    JSLF SHOULD BE AWARDED ITS COSTS. .................................................................. 13

VII.   THE COURT SHOULD AWARD INCENTIVE FEES TO THE CLASS
       REPRESENTATIVES. ........................................................................................................ 14

VIII.  CONCLUSION .................................................................................................................... 14

# TABLE OF AUTHORITIES

**Page(s)**

<u>**Cases**</u>

*Allapattah Servs., Inc. v. Exxon Corp.*, 454 F. Supp. 2d 1185 (S.D. Fla. 2006) .......................................8

*Bellinghausen v. Tractor Supply Co.*, 2015 U.S. Dist. LEXIS 35266 (N.D. Cal. Mar. 19, 2015) .....................................................................................................................................3

*Boeing Co. v. Van Gemert*, 444 U.S. 472 (1980) ...........................................................................3

*Central R.R. & Banking Co. v. Pettus*, 113 U.S. 116 (1885) ........................................................3

*Craft v. County of San Bernardino*, 624 F. Supp. 2d 1113 (C.D. Cal. 2008) ...........................11

*de Mira v. Heartland Employment Serv., LLC*, No. 12-CV-04092 LHK, 2014 WL 1026282 (N.D. Cal. Mar. 13, 2014) .......................................................................................5

*Fischel v. Equitable Life Assur. Soc'y*, 307 F.3d 997 (9th Cir. 2002)...........................................3

*Grant v. Capital Mgmt. Servs., L.P.*, 2014 U.S. Dist. LEXIS 29836 (S.D. Cal. Mar. 5, 2014) .....................................................................................................................................12

*Hopkins v. Stryker Sales Corp.*, No. 11-CV-02786-LHK, 2013 WL 496358 (N.D. Cal. Feb. 6, 2013) ..............................................................................................................................5

*In re Arizona Escrow Fee Antitrust Litigation*, 1982 U.S. Dist. LEXIS 17079......................................11

*In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935 (9th Cir. 2011)..................................4

*In re Cardinal Health Inc. Sec. Litig.*, 528 F. Supp. 2d 752 (S.D. Ohio 2007)......................................12

*In re CV Therapeutics, Inc. Securities Litig.*, No. 03-3709, 2007 U.S. Dist. LEXIS 98244 (N.D. Cal. April 4, 2007) .........................................................................................................4

*In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, No. M-02-1486, 2007 U.S. Dist. LEXIS 103027 (N.D. Cal. Aug. 16, 2007)................................................................4

*In re Korean Air Lines Co., Antitrust Litig.*, 2013 U.S. Dist. LEXIS 186262 (C.D. Cal. Dec. 23, 2013).........................................................................................................................3

*In re Media Vision Tech. Sec. Litig.*, 913 F. Supp. 1362 (N.D. Cal. 1995) ...............................13

*In re Quantum Health Resources, Inc. Sec. Litig.*, 962 F. Supp. 1254 (C.D. Cal. 1997).........................3

*In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294 (3d Cir. 2005) ....................................................11

*In re Sorbates Direct Purchaser Antitrust Litig.*, No. 98-4886, 2002 U.S. Dist. LEXIS 23468 (N.D. Cal. Nov. 15, 2002) ...........................................................................................4

*In re TFT-LCD (Flat Panel) Antitrust Litig.*, 2013 U.S. Dist. LEXIS 49885 (N.D. Cal. Apr. 1, 2013) ...........................................................................................................................8

*In re Washington Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291 (9th Cir. 1994)...........................3, 6

**TABLE OF AUTHORITIES (cont.)**

*New England Carpenters Health Benefits Fund v. First Databank, Inc.*, 2009 U.S. Dist. LEXIS 68419 (D. Mass. Aug. 3, 2009)..................................................................8, 12

*Paul, Johnson, Alston & Hunt v. Granulty*, 886 F.2d 268 (9th Cir. 1989) ..............................................4, 8

*Ross v. U.S. Nat'l Ass'n,* No. 07-02951, 2010 U.S. Dist. LEXIS 107857 (N.D. Cal. Sept 29, 2010) ...................................................................................................................4

*Van Vranken v. ARCO*, 901 F. Supp. 294 (N.D. Cal. 1995) ...............................................................4, 12

*Vizcaino v. Microsoft Corp.*, 290 F.3d 1043 (9th Cir. 2002) ..........................................................4, 11, 12

*Wolph v. Acer Am. Corp.*, 2013 U.S. Dist. LEXIS 151180 (N.D. Cal. Oct. 21, 2013) ...........................13

**NOTICE OF MOTION AND MOTION**

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE THAT** on July 9, 2015 at 1:30 pm., or as soon thereafter as this matter may be heard, before the Honorable Lucy H. Koh, United States District Court for the Northern District of California, located in Courtroom 8, on the 4th Floor of the Robert F. Peckham Federal Building, 280 South 1st Street, San Jose, California, Plaintiffs will, and hereby do, move the Court pursuant to Federal Rule of Civil Procedure 23(h)(1) and 54(d)(2) for an order awarding:

1. Attorneys' fees to Class Counsel in the amount of $81,125,000.00, which is nineteen point five-five percent (19.54%) of the Settlement Funds totaling $415,000,000.00;

2. $590,221.32 in costs and expenses the Joseph Saveri Law Firm Inc. ("JSLF") necessarily incurred in connection with the prosecution of this action from October 31, 2013 to April 30, 2014; and

3. Service awards of up to $160,000 for each of the five court-appointed Class Representatives.

This motion is based on this Notice of Motion and the accompanying Memorandum of Points and Authorities; the Declaration of Joseph R. Saveri; the Declaration of Eric Cramer; the Declaration of Prof. William B. Rubenstein; argument by counsel at the hearing before this Court; any papers filed in reply; and all papers and records in this matter.

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.    INTRODUCTION

On behalf of Plaintiffs, the undersigned[1] submit this motion for attorneys' fees seeking approval of attorneys' fees in the amount of $81,125,000.00 to JSLF and the firms of Lieff, Cabraser, Heimann & Bernstein, LLP ("LCHB"); Berger & Montague, P.C. ("B&M") and Grant & Eisenhofer PA (collectively, "Class Counsel"). This award of attorneys' fees represents nineteen point five-four percent (19.54%) of the overall $415 million amount that Defendants Adobe Systems Incorporated, Apple Inc., Google Inc., and Intel Corporation ("Settling Defendants") have agreed to pay to resolve

---

[1] The Joseph Saveri Law Firm, Inc. ("JSLF") and Berger & Montague, P.C.

JSLF's Motion for Attorneys' Fees, Reimbursement of Costs, and Award of Incentive Fees

1   the claims against them. A full award of 19.54% is justified based on the quality of the results obtained;

2   the sophistication of the work done; the complexity of the subject matter; the significant risks

3   undertaken by all Class Counsel; and the extraordinary demands made on Class Counsel at all stages of

4   the litigation. Additionally, JSLF asks the Court to award $590,221.32 in costs incurred, and pay the

5   Service Awards sought to individual class representatives.

6     To opine on the reasonableness of the 19.54% fee award sought here for the four firms serving

7   as Class Counsel who achieved this result for the benefit of the Class, JSLF retained the Sidley Austin

8   Professor of Law at the Harvard Law School William B. Rubenstein, who is an expert in class action

9   law, and is the sole author of the recognized authoritative treatise on class action law in the United

10  States, *Newberg on Class Actions*. *See* Declaration of William B. Rubenstein ("Rubenstein Decl."),[2] ¶¶

11  2-3. Mr. Rubenstein has served as an expert in 50 class actions, for plaintiffs, defendants, and objectors.

12  *Id.*, ¶ 7. As noted in his curriculum vitae, numerous federal courts have relied on his opinions in

13  evaluating applications for attorneys' fees in class actions. *Id.*, Ex. A. Mr. Rubenstein opined that the

14  fee sought by Class Counsel is reasonable based on many different objective metrics, including that

15  percentage recovery sought is below average for common fund awards in this District (*id.*, ¶ 27); the

16  percentage recovery is within the middle of the range for "mega fund" settlements in excess of $250

17  million (*id.*); the average hourly rate sought (the "blended loadstar") is average for common fund

18  settlements (*id.* ¶ 30 & Graph 2); and that data demonstrates that Class Counsel worked efficiently to

19  obtain the result achieved, billing less than the average number of hours for a settlement this size (*id.* ¶

20  33).

21    The undersigned counsel has reviewed an advanced draft of Co-Lead Counsel LCHB's Motion

22  for Attorneys' Fees, Reimbursement of Expenses, and Service Awards ("LCHB Fee Motion"), and

23  wholly concurs in its ultimate conclusion that the full amount of attorneys' fees authorized by the

24  Settlement Agreement should be awarded. The undersigned counsel join in the discussion of the

25  extraordinary nature of the recovery Class Counsel cooperatively achieved. The undersigned submit

26

27

28

---

[2] Attached as Exhibit 1 to the Declaration of Joseph R. Saveri.

JSLF's Motion for Attorneys' Fees, Reimbursement of Costs, and Award of Incentive Fees

1    this separate motion to present the findings of Professor Rubenstein and provide additional details

2    regarding the joint contributions of all of Class Counsel, including Co-Lead Counsel JSLF.

3         No fees are being sought in connection the preparation of this motion and supporting materials.

4    **II.      LEGAL STANDARD**

5         "[A] lawyer who recovers a common fund for the benefit of persons other than himself or his

6    client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*,

7    444 U.S. 472, 478 (1980). This principal of compensating lawyers for providing value to a common

8    source of property is firmly established in the common law. *See Central R.R. & Banking Co. v. Pettus*,

9    113 U.S. 116, 123 (1885) ("where one or more of many parties having a common interest in a trust

10    fund takes, at his own expense, proper proceedings to save it from destruction and to restore it to the

11    purposes of the trust, he is entitled to reimbursement either out of the fund itself or by a proportional

12    contribution from those who accept the benefit of his efforts"). "The rationale behind awarding a

13    percentage of the fund to counsel in common fund cases is the same that justifies permitting

14    contingency fee arrangements in general. . . . The underlying premise is the existence of risk—the

15    contingent risk of non-payment." *In re Quantum Health Resources, Inc. Sec. Litig.*, 962 F. Supp. 1254,

16    1257 (C.D. Cal. 1997). Attorneys' fees are also awarded as a means of ensuring the beneficiaries of a

17    common fund share with those whose labors created the fund. *See In re Washington Pub. Power Supply*

18    *Sys. Sec. Litig.*, 19 F.3d 1291, 1300 (9th Cir. 1994) (*"WPPSS"*) ("those who benefit from the creation

19    of the fund should share the wealth with the lawyers whose skill and effort helped create it.").

20         District courts in the Ninth Circuit use either the "percentage-of-the-fund" or the "lodestar"

21    method in calculating fees in common fund settlements. *Fischel v. Equitable Life Assur. Soc'y*, 307 F.3d

22    997, 1006 (9th Cir. 2002) ("In a common fund case, the district court has discretion to apply either the

23    lodestar method or the percentage-of-the-fund method in calculating a fee award."). The percentage-of-

24    the-fund method is preferred. "The use of the percentage-of-the-fund method in common-fund cases is

25    the prevailing practice in the Ninth Circuit for awarding attorneys' fees and permits the Court to focus

26    on a showing that a fund conferring benefits on a class was created through the efforts of plaintiffs'

27    counsel." *In re Korean Air Lines Co., Antitrust Litig.*, 2013 U.S. Dist. LEXIS 186262, at *3 (C.D. Cal.

28    Dec. 23, 2013); *see also Bellinghausen v. Tractor Supply Co.*, 2015 U.S. Dist. LEXIS 35266, at *33

1 (N.D. Cal. Mar. 19, 2015) ("Because this case involves a *common settlement fund with an easily*

2 *quantifiable benefit to the class*, the Court will primarily determine attorneys' fees using the benchmark

3 method but will incorporate a lodestar cross-check to ensure the reasonableness of the award.")

4 (emphasis added).

5       Where, as here, there is an easily quantifiable benefit to the class—namely, the cash recovery

6 achieved through the settlement—the percentage of the fund approach should be used. *See In re*

7 *Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011) ("Because the benefit to the

8 class is easily quantified in common-fund settlements, we have allowed courts to award attorneys a

9 percentage of the common fund in lieu of the often more time-consuming task of calculating the

10 lodestar."). Here, the benefit to the class is easily calculated by dividing the common cash settlement

11 fund by the number of class members who file claims. *See* Rubenstein Decl., ¶ 48. Many recent

12 antitrust cases in this District have applied the percentage of the fund approach. *See*, *e.g.*, *Ross v. U.S.*

13 *Nat'l Ass'n,* No. 07-02951, 2010 U.S. Dist. LEXIS 107857, at *4-5 (N.D. Cal. Sept 29, 2010); *In re CV*

14 *Therapeutics, Inc. Securities Litig*., No. 03-3709, 2007 U.S. Dist. LEXIS 98244, at *2 (N.D. Cal. April

15 4, 2007); *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, No. M-02-1486, 2007 U.S.

16 Dist. LEXIS 103027, at *1-2 (N.D. Cal. Aug. 16, 2007); *In re Sorbates Direct Purchaser Antitrust*

17 *Litig*., No. 98-4886, 2002 U.S. Dist. LEXIS 23468, at *9-10 (N.D. Cal. Nov. 15, 2002); *Van Vranken v.*

18 *ARCO*, 901 F. Supp. 294, 298 (N.D. Cal. 1995).

19       Courts applying the "percentage of the fund" approach apply twenty-five percent as the bench

20 mark. *See Paul, Johnson, Alston & Hunt v. Granulty*, 886 F.2d 268, 272 (9th Cir. 1989). The twenty-

21 five percent benchmark is subject to adjustment based on the type of factors considered by the Ninth

22 Circuit in *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048-50 (9th Cir. 2002), which include (1) the

23 results for the class; (2) the risk for its counsel, including the novelty of the legal theory; (3) the

24 contingent nature of the fee, and the risk taken by counsel; (4) consideration of market rates, which are

25 "expectations" "based on the circumstances of the case and the range of fee awards out of common

26 funds of comparable size"; and (5) the burden on class counsel, including whether counsel had to

27 forego other work. *Id. See also* Docket No. 916 at 1 (approving fees sought in prior partial settlement

28 with Defendants Intuit Inc., Lucasfilm, Ltd. and Pixar based on "1) the result obtained for the class; 2)

1  the risk incurred by Class Counsel in prosecuting this complex case; 3) Class Counsel's skills and

2  experience; 4) the burden on Class Counsel of litigating this case on a contingency basis; and 5) the

3  modest size of the fee request as compared to the market rate for fees as a percentage of common funds

4  in other class settlements"). The *Vizcaino* criteria applied by the Court to the earlier settlements has

5  been applied by this Court in other cases and is the prevailing standard in this District. *See de Mira v.*

6  *Heartland Employment Serv., LLC*, No. 12-CV-04092 LHK, 2014 WL 1026282, at *1 (N.D. Cal. Mar.

7  13, 2014);[3] *see also Hopkins v. Stryker Sales Corp.*, No. 11-CV-02786-LHK, 2013 WL 496358, at *1

8  (N.D. Cal. Feb. 6, 2013) (same).

9  **III.    CLASS COUNSEL ARE ENTITLED TO A REASONABLE FEE OF 19.54 PERCENT OF THE SETTLEMENT FUNDS**

10

11      All of the factors applied by *Vizcaino* and its progeny favor approval of the 19.54% sought here.

12  Indeed, application of *Vizcaino* would counsel for an enhancement of the 25% benchmark. No such

13  enhancement is sought here. Because these factors would support adjustment of the fee here above the

14  25% benchmark, *a fortiori* the application of these factors do not support a downward departure from

15  the benchmark to an amount less than 19.54%.

16      **A.    Class Counsel Obtained a Remarkable Result**

17      This was a landmark settlement. After several years of litigation against well-funded

18  Defendants, who are among the largest and wealthiest companies in the United States, Class Counsel

19  obtained one of the largest monopsony wage settlements ever approved. Undersigned counsel is not

20  aware of a monopsony wage action resulting in a recovery of this size, either by judgment or

21  settlement. Indeed, "[t]his settlement is pathbreaking." Rubenstein Decl., ¶ 41.

22

23

24  [3] "Whether the Court awards the benchmark amount or some other rate, the award must be supported by findings that take into account all of the circumstances of the case. The Ninth Circuit has approved a number of factors which may be relevant to the district court's determination: (1) the results achieved;

25  (2) the risk of litigation; (3) the skill required and the quality of work; (4) the contingent nature of the fee and the financial burden carried by the plaintiffs; and (5) awards made in similar cases.  In addition,

26  district courts may also compare the proposed percentage award to the attorney's fee award that would

27  be granted were the district court to use the lodestar method to determine fees." *Id.* (internal quotations and citations omitted).

28

1    The work performed by Class Counsel was substantial. Class Counsel researched and prepared

2    two complaints; successfully opposed Defendants' responsive motions, including a motion to dismiss;

3    undertook significant discovery, including taking 93 depositions, defending 14 depositions, serving 28

4    subpoenas, and reviewing over three million pages of documents; retaining and preparing four experts,

5    who produced over a dozen reports; preparing two motions for class certifications, which resulted in an

6    82 page decision by the Court, and successfully defeating Defendants' interlocutory appeal; responding

7    to and defeating Defendants' motion for summary judgment; defeating Defendants' *Daubert* motions,

8    and other attempts to challenge the testimony of Plaintiffs' expert witnesses; preparing for trial,

9    including performing two full mock trials, drafting motions *in limine*, and identifying trial exhibits;

10   negotiating two settlements with Defendants and objectors, which included extensive mediation

11   sessions. Saveri Decl., ¶ 18.

12   Class counsel billed nearly 40,000 hours to this litigation, which is what one would reasonably

13   expect in a case of this magnitude. In fact, among settlements of a similar size, the hours billed in this

14   litigation are on the lower end of a sample of eight other settlements. Rubenstein Decl., ¶ 33 & Graph

15   3. This data suggests that Class Counsel worked efficiently and did not 'pad' their time. *Id.*

16   **B.      Class Counsel Took Substantial Risk In Prosecuting This Litigation.**

17   Whether litigation that is the subject of settlement has substantial risk considers the novelty of

18   the legal theories, and the difficulties faced by plaintiffs' counsel, including defeating dispositive

19   motions and appeals that would impact a class. *See WPPSS*, 19 F.3d at 1302 (when litigation is "fraught

20   with risk and recovery [is] far from certain" district court abused its discretion in denying a risk

21   multiplier to a lodestar).

22   All Class Counsel assumed risk in undertaking this representation. Plaintiffs pursued a novel

23   monopsony theory that, while rooted in sound antitrust principles, had little or no precedents in antitrust

24   or employment law:

25           There are relatively few reported cases involving collusion among buyers
             – as opposed, for example, to collusion among sellers in an ordinary
26           Section 1 cartel case. As such, it is neither a standard antitrust case nor a
             standard employment case. What that means is that almost everything
27           about the case required novel thinking by the lawyers pursuing the case,
             as well as novel arguments drawing on antitrust principles but applying
28           them in the labor/workforce setting.

1   Rubenstein Decl. ¶ 39. Plaintiffs also faced a challenge in showing that this action was appropriate for

2   class treatment, including establishing the commonality and predominance of class-wide injury. Saveri

3   Decl., ¶ 10. Indeed, Defendants filed an interlocutory appeal of the Court's 86-page decision granting

4   class certification (after an initial motion was denied). *Id.*, ¶ 11.

5       JSLF undertook unique financial risk in this litigation. JSLF split costs of litigation equally with

6   LCHB, despite the fact that LCHB is a larger firm in existence since the 1970s. Saveri Decl., ¶ 18.

7   Joseph R. Saveri made JSLF's contributions to the litigation fund from his own personal resources. *Id.*

8   In total these litigation costs came to $2,156,224.45.[4]

9       JSLF turned down other opportunities in order to focus on this litigation. Saveri Decl., ¶ 8.

10  Indeed, since its founding, this litigation is the largest commitment of resources the firm has made, and

11  the firm turned down many client inquiries in order to focus its efforts on obtaining the best possible

12  result for the Class. *Id.*

13      **C.     This Litigation Required Great Skill and Exceptional Work Product.**

14      Class Counsel drew on their decades of collective experience in several different disciplines,

15  including class actions, antitrust, and employment law. *See* Saveri Decl., ¶¶ 5-7; Cramer Decl., ¶¶ 7-8.

16  In order to succeed, Class Counsel relied on an innovative monopsony theory, which had scant support

17  in the jurisprudence at the time the case was initiated. Saveri Decl., ¶ 10. Showing that class treatment

18  for Defendants' collusion presented some challenges, including showing that the anti-poaching

19  agreements caused compensation to be reduced on a classwide basis. The skill and efficiency of Class

20  Counsel is demonstrated by the fact that Class Counsel had litigated these complex issues through

21  summary judgment in two and half years, a remarkably short period of time for a case of this

22  magnitude. Rubenstein Decl., ¶ 41.

23      In this litigation, Class Counsel challenged the employment practices of some of the wealthiest

24  companies in the United States, who hired the best counsel money could buy. Defendants included

25  three Bay Area companies in the Fortune 100 list of the largest publicly-held companies in the United

26

27  ───────────────

[4] The Court has previously approved reimbursement of JSLF costs amounting to $1,566,003.13 from

28  the prior settlements with Lucasfilm, Pixar, and Intuit. Dkt. 916 at 5. After deducting the amount of
costs reimbursed, the total JSLF unreimbursed costs equal $590,221.32. *See* Section VI, *infra*.

States (Apple Inc., Google Inc., and Intel Corporation), as well as prominent Bay Area companies

Adobe Systems and Lucasfilm, Ltd. and Pixar. Rubenstein Decl., ¶ 39. Defendants hired top notch law

firms, including several of the largest and most prestigious firms in the United States. Defense counsel

included Keker & Van Nest LLP; Mayer Brown LLP; Munger, Tolles & Olson LLP; Covington &

Burling LLP; Jones Day; O'Melveny & Myers LLP; and the now defunct law firm of Bingham

McCutchen LLP. *Id.* Collectively or individually, these companies are the largest employers in the Bay

Area, making selection of disinterested jurors very difficult.

**D.      The Award Sought by Class Counsel Is Reasonable By the Ninth Circuit Benchmark.**

The Court should award the full 19.54% authorized by the Settlement Agreement because it is

well within the Ninth Circuit benchmark. *See Paul, Johnson, Alston & Hunt v. Granulty*, 886 F.2d at

272. Indeed, the fee is in line with other "mega fund" settlements of several hundred million dollars.

*See In re TFT-LCD (Flat Panel) Antitrust Litig.*, 2013 U.S. Dist. LEXIS 49885, at * 74 (N.D. Cal. Apr.

1, 2013) (approving a 28% fee on a settlement of $1.08 billion); *New England Carpenters Health*

*Benefits Fund v. First Databank, Inc.*, 2009 U.S. Dist. LEXIS 68419, at *10 (D. Mass. Aug. 3, 2009)

(20% fee on a $350 million settlement); *see also Allapattah Servs., Inc. v. Exxon Corp.*, 454 F. Supp. 2d

1185 (S.D. Fla. 2006) (noting "federal district courts across the country have, in the class action

settlement context, routinely awarded class counsel fees in excess of the 25 percent 'benchmark,' even

in so-called 'mega-fund' cases" and awarding fees of 31 1/2% of settlement fund of $1.075 billion).

The size of the settlement is reasonable by several independent metrics:

- First, for common fund settlements between 1993 and 2008 in this District, the mean
  was 26%, and for the Ninth Circuit it was 25%. Rubenstein Decl., ¶ 27. A fee award of
  twenty-five percent is the "bench mark" fee award for common fund class settlements,
  like this one, in the Ninth Circuit.  *Paul, Johnson, Alston & Hunt v. Granulty*, 886 F.2d
  268, 272 (9th Cir. 1989).

- Second, even for large settlements, such as the $415 million fund created in this
  litigation, the 19.54% sought by Class Counsel is reasonable. Research shows that for

1   funds between $250 and $500 million the mean percentage recovery was 17.8% and the

2   median was 19.5%. Rubenstein Decl., ¶ 27.

3   • Third, the "blended loadstar" for Class Counsel, representing the mean billing rate

4   across all time keepers for the 39,124 hours billed to this litigation, was $533.21 an

5   hour, and this is squarely in the middle of the range for common fund settlements. *Id.*, ¶

6   30 & Graph 2.

7   • Fourth, Class Counsel worked efficiently, as demonstrated by an analysis showing that

8   the number of hours Class Counsel billed in order to obtain the result; the hours billed

9   by Class Counsel are standard for a case that results in a settlement of this size, which

10   shows Class Counsel did not 'pad' their bills and worked efficiently. *Id.*, ¶ 33.

11   **E.     JSLF Undertook a Significant Financial Burden in this Litigation.**

12   In addition to paying an equal share of the litigation costs with LCHB, JSLF invested a

13   significant amount of resources in this litigation. At the outset, Joseph R. Saveri was the leader of the

14   team of attorneys at LCHB that investigated and drafted what became the operative complaint in this

15   matter. Declaration of Joseph R. Saveri ("Saveri Decl."), ¶¶ 2-3. Mr. Saveri left LCHB and founded

16   JSLF in May 2012, before the production of most of the electronically stored information in this case,

17   and before depositions had begun. Saveri Decl., ¶ 20. After Mr. Saveri's departure, JSLF and LCHB

18   submitted a joint application be appointed Co-Lead Counsel, giving the Class the benefit of both firms'

19   substantive legal work and financial support. *See* Docket No. 147. From its inception, JSLF was

20   integral in devising and implementing the litigation strategy for this matter, and JSLF was appointed

21   Co-Lead Counsel less than a month after Mr. Saveri left LCHB. *Id.* This litigation has the imprimatur

22   of Mr. Saveri and the team of attorneys he assembled at JSLF, who have devoted significant time and

23   other resources to this litigation. *Id.*, ¶¶ 8, 12-13, 20-28.

24   The work performed by JSLF as Co-Lead Counsel was necessary to the success of this

25   litigation. The Court's June 2012 order amended the Court's earlier Pretrial Order designating Mr.

26   Saveri Lead Counsel, and gave JSLF the same powers that were initially given to Mr. Saveri himself as

27   Lead Counsel, including "making such work assignments as among themselves and other Plaintiffs'

28   counsel as they may deem appropriate." Docket No. 64 at 7. Indeed, "as recognized in the Court's

1    Order continuing Saveri's leadership as Co-Lead Counsel with his former law firm, the class's interests

2    appear to have been well served by having [JSLF] and Lieff Cabraser jointly lead this effort."

3    Rubenstein Decl., ¶ 35. JSLF attorneys billed 10,741.65 hours to this matter, representing an

4    investment of $6,504,024.05. Saveri Decl., ¶ 17. The billing entries submitted herewith are an accurate

5    and reliable record of the work performed by JSLF for the benefit of the class and to produce the results

6    obtained. *See* Saveri Decl. ¶ 14 & Exhibit 3.

7           The tasks performed by JSLF included the following:

8    - Case management and supervision of all work performed in the litigation. Saveri Decl.,
9      ¶ 21.

10   - Managing discovery, including drafting discovery responses; evaluating and analyzing
11     Defendants' discovery responses, including document productions; managing document
12     reviews; selecting and preparing Plaintiffs' expert witnesses and reports. Saveri Decl., ¶
13     23.

14   - Preparing for and taking 36 depositions in this matter, including the following critical
15     depositions: George Lucas, the founder of Defendant Lucasfilm; Paul Otellini, the CEO
16     of Defendant Intel, Inc. during most of the litigation; Bruce Chizen, the former CEO of
17     Defendant Adobe Systems; Danielle Lambert, Defendant Apple Inc.'s former Vice
18     President of Recruiting and Kevin Murphy, one of Defendants' key expert witnesses.
19     Saveri Decl., ¶ 22 & Exhibit 5.

20   - Preparing, editing, and otherwise contributing to critical motion practice in this matter,
21     including the motions for class certification, the brief opposing Defendants' petition for
22     leave to appeal the Court's order granting class certification, and opposing Defendants'
23     writ petition concerning the Court's denial of preliminary approval for the first
24     settlement. *Id.*, ¶¶ 24-25.

25   - Preparation for trial, including identifying potential exhibits, designating witnesses, and
26     organizing and participating in two full mock trials. *Id.*, ¶ 26.

27   - Communicating with class members, responding to inquiries concerning the status of the
28     case and settlement, and reaching out to objectors. *Id.*, ¶ 27.

- Leadership of settlement negotiations in this litigation, including creating and participating in a three-sided settlement negotiation with counsel for objecting class member Michael Devine. *Id.*, ¶ 28.

As the driving force of this litigation while at LCHB, the involvement of Mr. Saveri and his team of professionals following the founding of JSLF was critical to the success of the litigation, and the result achieved, as it can be disruptive to a litigation to lose leadership members during the course of the lawsuit. *See* Rubenstein Decl., ¶ 35. Accordingly, the work done by JSLF attorneys was essential to the success of this litigation.

The contributions by B&M were also significant. Eric Cramer, noted class action antitrust litigator, was involved in the litigation from responding to Defendants' pleading motions through settlement. Cramer Decl., ¶ 9. Among other contributions, B&M attorneys took depositions of eight of Defendants' fact witnesses, including Intel's expert witness, key Apple and Adobe employees, and 30(b)(6) representatives for Intel and Google; drafted opposition to one of Defendants' *Daubert* motions; was primarily responsible for drafting the successful opposition to Lucasfilm's motion to dismiss; and helped draft the motions for class certification. *Id.*

JSLF has reviewed an advanced draft of the LCHB Fee Motion and concurs regarding the contributions LCHB made as Co-Lead Counsel, and the contributions made by Grant & Eisenhofer.

## IV.   A LODESTAR CROSS-CHECK CONFIRMS THE FEES SOUGHT BY CLASS COUNSEL ARE RESONABLE.

A lodestar cross-check is used to ensure that class counsel has done the work necessary to justify the fee sought. *Vizcaino*, 290 F.3d at 1050; *see also In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 306-07 (3d Cir. 2005) ("[T]he lodestar cross-check calculation need entail neither mathematical precision nor bean-counting. The district courts may rely on summaries submitted by the attorneys and need not review actual billing records.").[5] The cumulative lodestar for Class Counsel is $20,864,652.80, representing JSLF's fees of $6,507,288.05, LCHB's fee of $11,544,628.50, Berger &

---

[5] "A lodestar cross-check is not required in this circuit, and in some cases is not a useful reference point." *Craft v. County of San Bernardino*, 624 F. Supp. 2d 1113, 1122 (C.D. Cal. 2008).

1   Montague's fees of $1,384,942.25, and Grant & Eisenhofer's fees of $1,427,794.[6] This fee amount is

2   based on Class Counsel's current rates, which is appropriate to account for the delay inherent in

3   contingent fee work, as well as the opportunity costs of pursuing such litigation. *See In re Arizona*

4   *Escrow Fee Antitrust Litigation*, 1982 U.S. Dist. LEXIS 17079, at *32 ("The modern trend among

5   federal courts in determining the applicable hourly rate for lodestar computations is to use attorneys'

6   current rates rather than their historical rates. This emerging judicial preference is based upon sound,

7   economic principles."); *see also Grant v. Capital Mgmt. Servs., L.P.*, 2014 U.S. Dist. LEXIS 29836, at

8   *17 (S.D. Cal. Mar. 5, 2014) (calculating lodestar using current rates).

9           Using the lodestar cross-check, the fees sought amount to 3.89 times the lodestar submitted by

10  Class Counsel. Rubenstein Decl., ¶¶ 36-37. In the Ninth Circuit, a lodestar multiplier of around 4 times

11  has frequently been awarded in common fund cases such as this. *See Vizcaino*, 290 F.3d at 1051

12  (multiplier of 3.65 "was within the range of multipliers applied in common fund cases"); *see also Van*

13  *Vraken v. Atlantic Richfield Co.*, 901 F. Supp. 294, 298 (N.D. Cal. 1995) ("Multipliers in the 3-4 range

14  are common in lodestar awards for lengthy and complex class action litigation."). Indeed, given the *sui*

15  *generis* nature of this settlement, a much higher multiplier would be appropriate here. *See In re*

16  *Cardinal Health Inc. Sec. Litig.*, 528 F. Supp. 2d 752, 768 (S.D. Ohio 2007) (applying a "lodestar

17  multiplier of six" in a $600 million settlement due to the complexity of the subject matter and the

18  "superb" nature of the representation); *New England Carpenters Health Benefits Fund v. First*

19  *Databank, Inc.*, 2009 U.S. Dist. LEXIS 68419, at *10 (D. Mass. Aug. 3, 2009) (applying a multiplier of

20  over 8 in a settlement of $350 million).

21  **V.    NO ADJUSTMENT SHOULD BE MADE DUE TO THE EARLIER REJECTED**
        **SETTLEMENT.**

22

23          This Court denied preliminary approval of a proposed settlement of $324.5 million, ruling that

24  the Defendants did not pay enough. Docket No. 974. As an initial matter, the Court's approach to

25  awarding fees should be no different given the rejection of the earlier settlement (*i.e.*, applying the 25%

26

27  [6] Prof. Rubenstein's figures are based on the last-reported lodestar figures from the respective firms one
    prior to filing. Since then, firms have made minor adjustments to their time.

28

1   presumption and lodestar cross-check). Rubenstein Decl., ¶ 44. This event is no different than any

2   setback that counsel encounter in prosecuting cases of this magnitude, where counsel rebound using the

3   work they have performed in the litigation and their professional expertise. In fact, all of the work that

4   Class Counsel did to expose Defendants' collusion was necessary in order to achieve the settlement for

5   $415 million. The Settlement is, in substance, identical to one the Court rejected in all important terms

6   but money. *See* Rubenstein Decl., ¶ 47 & Exhibit F. And in that latter respect, the settlement was

7   enhanced by$90.5 million.

8         In a sense, a discount is already reflected in Class Counsel's request for 19.54% in fees. Class

9   Counsel continued to protect the interests of the Class after the $324.5 million was deemed insufficient,

10  by continuing to prepare the case for trial, litigating unresolved issues, and actively participating in the

11  negotiations with objecting class member Michael Devine. Rubenstein Decl., ¶ 45; Saveri Decl., ¶ 28.

12  This Court has noted the contributions made by Class Counsel in this interim period, such as briefing

13  the *per se* standard issue, and Defendants' attempt to seal massive parts of the record. *See* Docket No.

14  1054 at 2-3. Notably, Class Counsel opposed Defendants' attempt to obtain a writ approving the $324.5

15  million settlement. *See* Saveri Decl., ¶ 25.

16        Finally, the previous settlement was not the result of collusion between Defendants and Class

17  Counsel or poor lawyering. Far from it, as the Court has previously noted that "Class counsel have been

18  zealous advocates for the Class and have funded this litigation themselves against extraordinarily well-

19  resourced adversaries." Docket No. 974 at 31; Rubenstein Decl. ¶ 49.

20  **VI.    JSLF SHOULD BE AWARDED ITS UNREIMBURSED COSTS.**

21        "Reasonable costs and expenses incurred by an attorney who creates or preserves a common

22  fund are reimbursed proportionately by those class members who benefit by the settlement." *In re*

23  *Media Vision Tech. Sec. Litig.*, 913 F. Supp. 1362, 1366 (N.D. Cal. 1995); *see also Wolph v. Acer Am.*

24  *Corp.*, 2013 U.S. Dist. LEXIS 151180, *19 (N.D. Cal. Oct. 21, 2013) ("Counsel are entitled to

25  reimbursement of their reasonable out-of-pocket expenses"). JSLF has incurred $2,156,224.45 in costs,

26  of which $1,566,003.13 was reimbursed in connection with the earlier settlements with Defendants

27  Intuit, Lucasfilm and Pixar. Accordingly, $590,221.32 in costs should be awarded.

28

1

## VII.   THE COURT SHOULD AWARD INCENTIVE FEES TO THE CLASS REPRESENTATIVES.

2

3       The requested service awards of up to $160,000 should be awarded here. As noted in the LCHB

4   fee motion, the Class Representatives devoted significant time and expense to assist in the prosecution

5   of the Class' claims by participating in discovery and consulting with Class Counsel during the course

6   of the litigation. JSLF concurs with the analysis presented by LCHB, and agrees that the personal

7   burdens borne by the Class Representatives justifies an award of $160,000 to each of them.

8   ## VIII.   CONCLUSION

9       For the reasons set forth above, JSLF requests that Class Counsel be awarded $81,125,000 in

10  attorneys' fees; that JSLF be awarded $590,221.32 in its unreimbursed costs; and that service awards of

11  up to $160,000 be awarded to each of the Class Representatives.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1    Respectfully submitted,

2

3    Dated: May 7, 2015                **JOSEPH SAVERI LAW FIRM, INC.**

4                                      By: */s/ Joseph R. Saveri*
                                       Joseph R. Saveri (State Bar No. 130064)
5                                      James G. Dallal (State Bar No. 277826)
                                       JOSEPH SAVERI LAW FIRM, INC.
6                                      505 Montgomery Street, Suite 625
                                       San Francisco, CA 94111
7                                      Telephone: (415) 500-6800
                                       Facsimile: (415) 500-6803
8

9                                      *Co-Lead Class Counsel*

10
                                       Eric L. Cramer
11                                     Sarah R. Schalman-Bergen
                                       BERGER & MONTAGUE, P.C.
12                                     1622 Locust Street
                                       Philadelphia, PA 19103
13                                     Telephone: (800) 424-6690
                                       Facsimile: (215) 875-4604
14

15                                     *Class Counsel*

16

17

18

19

20

21

22

23

24

25

26

27

28

Case No. 11-CV-2509-LHK                      15
JSLF's Motion for Attorneys' Fees, Reimbursement of Costs, and Award of Incentive Fees