Joseph R. Saveri (State Bar No. 130064)
James G. Dallal (State Bar No. 277826)
JOSEPH SAVERI LAW FIRM, INC.
505 Montgomery Street, Suite 625
San Francisco, California 94111
Telephone:  (415) 500-6800
Facsimile:    (415) 395-9940

*Co-Lead Class Counsel*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: HIGH-TECH EMPLOYEE ANTITRUST LITIGATION<br><br>THIS DOCUMENT RELATES TO:<br>ALL ACTIONS | Case No. 5:11-cv-2509-LHK<br><br>**DECLARATION OF JOSEPH R. SAVERI IN SUPPORT OF PLAINTIFFS' MOTION FOR ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND INCENTIVE AWARDS** |

1.      I am an attorney licensed in the State of California and admitted to practice in the Northern District of California.  I am the founder of Joseph Saveri Law Firm, Inc., Co-Lead Counsel for the Class Representatives and the proposed Settlement Class. I have personal knowledge of the facts set forth herein and could competently testify to them if called as a witness. I submit this declaration in support of the motion by all Plaintiffs' counsel for Attorneys' Fees, Reimbursement of Expenses, and Incentive Awards.

2.      I have worked intensively on this case since its inception, participating in all phases of the litigation. At the outset of this case, I was a partner at the law firm Lieff, Cabraser, Heimann &

DECLARATION OF JOSEPH R. SAVERI IN SUPPORT OF PLAINTIFFS' MOTION FOR
ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND INCENTIVE AWARDS

Bernstein, LLP ("LCHB") and chair of its Antitrust and Intellectual Property Practice Group. I performed the initial investigation of this case, supervised its filing, and organized the team of attorneys that worked on it in its earliest stages. The Consolidated Amended Complaint, which has remained the operative Complaint throughout this action, bears my signature, reflecting my personal contribution to that point in time. While still at LCHB, I was appointed as Interim Lead Counsel for the Proposed Class in this action (Dkt. 64).

3.      In May 2012, I left LCHB to establish my own law firm, the Joseph Saveri Law Firm, Inc. (the "Joseph Saveri Law Firm" or "JSLF"). Subsequently, the two firms filed an administrative motion in this case on June 3, 2012 requesting that the Court amend its prior Pretrial Order and appoint both firms to serve together as Co-Lead Counsel (Dkt. 144). The Court granted the request and appointed LCHB and Joseph Saveri Law Firm as Co-Lead Counsel the following day (Dkt. 147). Since that time I have served as Co-Lead Counsel and have continued my leadership position in the case, exercising day-to-day management and supervision over the litigation together with LCHB. I have also worked closely with Berger & Montague, P.C. and Grant & Eisenhofer, P.A., the other firms appointed to serve as Class Counsel.

4.      I submit this Declaration Support of Plaintiffs' Motion for Attorneys' Fees, Reimbursement of Expenses, and Incentive Awards. Because I led this case and performed significant work on it at LCHB prior to founding my own firm, the Declaration describes attorney services attributable to both firms, and I submit this Declaration in support of the fee request by all Class Counsel, as an appropriate award to the team of attorneys for the totality of work performed—as well as the risk all Class Counsel shared. Attached hereto as <u>Exhibit 1</u> is the Declaration of Prof. William B. Rubenstein. JSFL retained Prof. Rubenstein to submit an opinion concerning the settlement.

**Background and Experience**

5.      I have practiced antitrust law for 28 years. In 1992, after five years at the firm then known as McCutchen, Doyle, Brown & Enersen, I joined LCHB, where I founded the firm's antitrust and intellectual property practice. I chaired the LCHB Antitrust and Intellectual Property practice group until I left to form my own firm 20 years later. During my tenure at LCHB, I served as the Firm's Managing Partner and was a member of the Executive Committee. While at LCHB, I and the team I led

DECLARATION OF JOSEPH R. SAVERI IN SUPPORT OF PLAINTIFFS' MOTION FOR ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND INCENTIVE AWARDS

prosecuted groundbreaking antitrust litigation that reformed industry practices and advanced the law, including a class action lawsuit on behalf of consumers and others against Bayer for exclusionary drug pricing agreements involving the drug Cipro that has served as a seminal case with respect to litigation over so-called pay-for-delay agreements; and a major international direct purchaser class action against TFT-LCD manufacturers. It also included trial work in such cases as *SmithKline Beecham Corp. v. Abbott Labs.*, where my work produced a landmark decision holding that the Supreme Court's rule in *Batson v. Kentucky*, 106 S. Ct. 1712 (1986) applies in the civil trial context and forbids the exclusion of jurors based on sexual preference. *See* 740 F.3d 471 (9th Cir. 2014).

6.     In this case, the Class Counsel team comprises an exceptionally talented collection of attorneys, which include a number of leading practitioners in the areas of antitrust litigation, employment litigation, class actions and complex commercial litigation. Among Co-Lead Class Counsel, I was the attorney chiefly responsible for initiating the litigation, having worked on its since inception.  Of all the attorneys who worked in this case on behalf of the Class, I have the longest track record of service and experience leading and prosecuting complex antitrust matters, class actions and complex litigation.

7.     The Joseph Saveri Law Firm, Inc. has established itself as a law firm that specializes in complex, high-stakes class action litigation with a particular expertise in handling antitrust matters. Our team has already assembled an impressive track record that exceeds many firms that have been in operation for many more years. The recent firm resume describing the firm and its work on major antitrust litigation, including in leadership roles, is attached hereto as <u>Exhibit 2</u>. Recent appointments include appointment as interim lead class counsel on behalf of direct purchaser plaintiffs in *In re Capacitors Antitrust Litigation,* Master File No. 14-cv-03264-JD, in this District. The work of me and my firm has been reported by numerous journals and periodicals, including the New York Times, US News & World Report, Chambers USA, the Daily Journal, and the Recorder. *See* <u>Exhibit 2</u>.

8.     The instant litigation has required the devotion of considerable resources by the Joseph Saveri Law Firm, and from the time our firm opened for business until the parties began negotiating the terms of final settlement it was the chief focus of the firm's energies and endeavors.  To date, of all the cases the firm has handled since its founding, this case has required the largest amount of resources and

DECLARATION OF JOSEPH R. SAVERI IN SUPPORT OF PLAINTIFFS' MOTION FOR ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND INCENTIVE AWARDS

attorney hours. The complexity and hard-fought nature of the case required me and my staff to expend substantial time that could have been spent on other fee-generating matters, and commitment to achieving a favorable outcome in this case has required my firm to forego other representations. The Joseph Saveri Law Firm has regularly received inquiries from current and potential clients seeking representation and on numerous occasions during the pendency of this case. I have declined to take in new clients and matters so that I and my staff could devote the attention and resources required to this matter.

### Risks Taken and Investments Made for the Benefit of the Class

9.      At the time when I directed the antitrust team at LCHB in the investigation that resulted in this lawsuit, the viability of bringing antitrust claims for this type of conspiratorial conduct by buyers in a labor market was far from clear. The Department of Justice investigation and consent decree enjoining certain bilateral agreements at issue in the case did not require Defendants to pay any damages to their employees for the financial injury they caused. The consent decree, as the Defendants argued, had no preclusive effect with respect to the claims or issues in this case. In fact, while it is common in my experience for private civil litigation filings to follow regulatory or governmental filings or settlements, the conclusion of the DOJ case regarding the bilateral agreements produced little such activity. The only cases filed were filed at my direction while at LCHB. That so few lawyers and so few plaintiffs' firms took an interest demonstrates the risk we took on behalf of the Class in pursuing this case.

10.      Aside from the usual significant risk plaintiffs' lawyers take in initiating and prosecuting contingent actions before knowing if conducting the discovery process will produce evidence sufficient to prove the claims asserted, initiation of this case required confronting and overcoming several looming legal obstacles and challenges. First, at the time of filing, there was little jurisprudence directly on point where a class of plaintiff employees had successfully sued their employers for Sherman Act § 1 collusion in fixing wages. The nature of a labor market requires the pleading of monopsony rather than monopoly price fixing, a somewhat controversial theory of harm with limited support in extant case law at the time we filed suit. Moreover, the compensation paid to an employee turns on factors far more complex than those needed to establish the but-for price or competitive benchmark for the type of

fungible, substitutable commodity products that are usually the focus of cartel or other price-fixing litigation under Section 1. This presented challenges under Rule 23 with respect to establishing the commonality and predominance of class-wide injury. We appreciated these risks from outset, but chose to proceed, with the goal of obtaining redress for our clients and to advance the law in this area.

11.     The size, public profile, and political and market power of the Defendants in this case presented an additional challenge. The seven original Defendants are some of the wealthiest, best-capitalized technology companies—and in some cases the wealthiest, best-capitalized companies—in the history of the world. The executives involved in the dispute include some of the wealthiest individuals on the planet. They spared no expense in vigorously defending this litigation and rapidly secured the services of some of the nation's leading antitrust litigators and elite law firms. Defendants made clear that they would not succumb to Plaintiffs' demands without a fight, moving to dismiss the case, vigorously contesting our discovery efforts, opposing Plaintiffs' motion for class certification on two occasions, producing hundreds of pages of expert reports and statistical analyses attempting to undermine Plaintiffs' theory of the case, and appealing the Court's 86-page ruling granting Plaintiffs' second motion for class certification. Defendants made clear that they intended to rely on the considerable goodwill their companies enjoy with the public at large. Defendants also made it clear that they would seek to take advantage of the fact of the level of compensation earned by members of the Class, even as Plaintiffs provided the analysis showing that in the absence of Defendants' conspiracy that pay would have been higher. Defendants also sought to take advantage of their status as the leaders of a sophisticated, well-regarded industry, seeking to characterize their conduct as uniquely justifiable in the context of that industry. Defendants' Rule 23(f) appeal, petition for writ of mandate to the Ninth Circuit following the Court's denial of preliminary approval for the parties' first attempt at final settlement, and tactics in conducting the litigation gave Plaintiffs every indication that even if Plaintiffs prevailed at trial, Defendants would insist on all their procedural rights, which would tie up an ultimate resolution in years of appeals and subsequent proceedings. Such an approach would delay compensation to the Class for longer than the many years since the agreements were reached and presented a further risk that the Class might not recover anything at all.

DECLARATION OF JOSEPH R. SAVERI IN SUPPORT OF PLAINTIFFS' MOTION FOR ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND INCENTIVE AWARDS

12. The complexity of the proof of conspiracy, the potential legal obstacles described above, and the considerable skill and resources of Defense Counsel required that Class Counsel make a substantial investment of time and resources. At critical stages, the litigation consumed substantially all of my time and that of my associates Lisa Leebove and James Dallal, as well as of our team of lawyers and support staff. The fact that the firm focused its representation through the efforts of a small number of lawyers, paralegals and professional staff allowed the firm to realize a number of efficiencies. Among other things, the Joseph Saveri Law Firm work on the case was performed exclusively by a regularly-assigned team comprising a limited number of core attorneys and support staff already readily familiar with its facts and procedural posture on a day-to-day basis. There was little need for interoffice conferences or other occasions with the potential to introduce duplicative work. In many cases, firm personnel did work entirely on their own. Of course, consistent with my duties as Co-Lead Counsel, I personally supervised their efforts, and reviewed their work. Throughout the course of the litigation I have made every effort to work with my staff and my counterparts at the other firms serving as Class Counsel to ensure efficiency and to eliminate duplication of effort. At various stages throughout the litigation, the firms were in regular contact to divide responsibility and to integrate work performed by different firms or attorneys. On all major filings I or another Joseph Saveri Law Firm attorney, along with a senior attorney at LCHB, reviewed and approved the final draft filed with the Court.

13. The schedule attached hereto as <u>Exhibit 3</u> is a detailed summary indicating the amount of time spent by myself, other attorneys and other professional support staff of the Joseph Saveri Law Firm in connection with this litigation, and the lodestar calculation based on the firm's current billing rates. The billing rates are those the firm uses for its currently hourly work paid by its hourly clients as well as approved by courts in contingency fee maters. All the time expended was wholly contingent. Other than its share of the prior $5 million award to Class Counsel when the Court approved earlier settlements in May 2014, the Joseph Saveri Law Firm has not received any compensation or reimbursement for such time.

14. Consistent with the Court's Order (Dkt. 1055), the detailed billing records from which the Exhibit 3 schedule was prepared are attached hereto as <u>Exhibit 4</u>. This schedule was prepared from

DECLARATION OF JOSEPH R. SAVERI IN SUPPORT OF PLAINTIFFS' MOTION FOR
ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND INCENTIVE AWARDS

time records regularly prepared and maintained by my firm. Neither the schedule nor the detailed time records include any of the work that I or others performed while I was working at LCHB. Each only includes work performed by the Joseph Saveri Law Firm. Per a separate agreement between JSLF and LCHB, the limited number of time entries for JSLF counsel attorney Josh Davis that pre-date the founding of my firm are attributed to JSLF. It is the policy of my firm that daily time records are to be kept and maintained by time-keepers in connection with this matter. Periodically, these entries are entered into the firm's electronic time-keeping program, or timekeepers directly enter them into the firm's electronic system. Although practices of electronic entry vary by the time-keeper, all of the time entered reflects time entries from time-keepers. As the records show, time is entered on a per-task basis for time-keepers for particular days. I have edited these time entries to account for duplication of efforts; and to reduce the amount of time spent on certain tasks because I thought it was excessive; or to edit the entries to reflect the value I believed was created by the time entry. The entries have also been edited to avoid disclosure of attorney-client privilege, work product, settlement discussions, or other protected information, in the expectation that the records will be made available to the public. The foregoing time-keeping procedures are consistent with every other firm at which I submitted time, including firms where I was lead counsel, and was responsible for submitting fee motions and editing the time of attorneys that I managed. These practices are also used in preparing bills for the firm's hourly clients to whom we send bills for payment. In sum, the time sheets represent an accurate and reliable description of the work performed by the Joseph Saveri Law Firm for the benefit of the class and to produce the results obtained.

15.     The hourly rates for my time and that of the other attorneys and professional support staff in my firm included in Exhibit 3 are the same as the usual and customary hourly rates charged for their services in non-contingent billable matters. The same rates have been approved by other courts in other complex contingent class action and other litigation matters handled by Joseph Saveri Law Firm including recently the United States District Court for the District of Maryland in *In re: Titanium Dioxide Antitrust Litigation,* Case No. 1:10-CV-00318-RDB, and the Superior Court of California for the County of San Diego in *Cipro Cases I and II,* Case No. J.C.C.P. Nos. 4154 and 4220.

16.     I have personal knowledge of the hourly rates charged by other attorneys with comparable experience as well as the attorneys within Joseph Saveri Law Firm on this matter. I also have extensive experience recruiting, hiring, managing, and negotiating pay packages with attorneys in the San Francisco Bay Area, both during my time as the Managing Partner at LCHB and also more recently when I opened and staffed the Joseph Saveri Law Firm, where I have personally hired every employee. Based on that information and experience, I believe that these rates are fully consistent with the market rates in the San Francisco Bay Area for attorneys with comparable expertise, experience and qualifications, and that they are comparable to rates of attorneys specializing in antitrust cases, class actions and complex litigation around the country and by other counsel in this case. Based on that knowledge and experience, I believe that the hourly rates charged by the Joseph Saveri Law Firm are reasonable and appropriate fees for those with comparable expertise, experience and qualifications.

17.     The total number of hours expended on this litigation by my firm from inception to present is 10,741.65 hours. The total lodestar for my firm is $6,504,024.05. This calculation of lodestar is derived from the time devoted to the work multiplied by the firm's billing rates. I have supervised my staff in a review of our billing records and have removed duplicative and other erroneous entries to ensure the time reported reflects efficient and productive work on behalf of the Class. None of this amount reflects time for preparing this fee application and related materials.

18.     Prosecuting this litigation also required significant investments in the form of out-of-pocket costs and substantial expenses, including the cost of the talented economists and other experts Plaintiffs hired to work on the case, paid for out of the case litigation fund ("Litigation Fund"). Per the firms' agreement, LCHB and Joseph Saveri Law Firm bore equal financial risk and made equal out-of-pocket contributions accounting for the vast majority of the Litigation Fund. The other Class Counsel firms made contributions to the Litigation Fund as well. I paid the contributions the Joseph Saveri Law Firm made myself, out of my personal savings and other personal financial resources. Apart from the Litigation Fund the Joseph Saveri Law Firm also paid considerable out-of-pocket costs. Beyond the amounts the Court already awarded, the Joseph Saveri Law firm has paid $1,105,451.33 of additional out-of-pocket costs, including an additional $767,049.26 in contributions to the Litigation Fund. Of

these charges, $590,221.32 remains unreimbursed. A schedule of these contributions to the Litigation Fund and payments of out-of-pocket costs to advance this case are attached hereto as Exhibit 5.

19.     Class Counsel researched and prepared two complaints; successfully opposed Defendants' responsive motions, including a motion to dismiss; undertook significant discovery, including taking 93 depositions, defending 14 depositions, serving 28 subpoenas, and reviewing over three million pages of documents; retaining and preparing four experts, who produced over a dozen reports; preparing two motions for class certifications, which resulted in an 86-page decision by the Court, and successfully defeating Defendants' interlocutory appeal; responding to and defeating Defendants' motion for summary judgment; defeating Defendants' *Daubert* motions, and other attempts to challenge the testimony of Plaintiffs' expert witnesses; preparing for trial, including performing two full mock trials, drafting motions *in limine*, and identifying trial exhibits; negotiating the two settlements with Defendants, including extensive mediation sessions, the latter of which included negotiations with a class representative objector.

## Work Performed by the Joseph Saveri Law Firm

20.     I formed Joseph Saveri Law Firm in May 2012. At that time, the litigation was still in its initial stages. Other than arguments on the pleadings, significant work had yet to be done. Discovery was its beginning stages. Few documents had been produced and no depositions of Defendants' executives or managers had occurred. The Court had recently denied Defendants' Motion to Dismiss. In conjunction with my former colleagues at LCHB, I and my staff immediately began work developing the facts of the case, noticing and taking key depositions to preserve testimony and engaging Defendants on other discovery matters.

21.     Since the opening of the Joseph Saveri Law Firm, I have believed that it was important that this case was managed and supervised as it had been when I served as the sole lead counsel at LCHB. Following the appointment by the Court to continue to lead this litigation as Co-Lead Counsel, I supervised and reviewed the work of younger attorneys at my firm as well as other attorneys working on the case. I also spent considerable time conducting case management, as this case warranted close involvement of experienced counsel. Consistent with the needs of the case, I authorized the work of my own personnel as well as other of Class Counsel.

22.     Joseph Saveri Law Firm attorneys handled a very large share of the fact development work in the case. I and my staff took 36 depositions of Defendant witnesses, including of such key figures as Defendants' chief executive officers and expert witnesses. *See* Exhibit 6.

23.     Attorneys on my staff also did extensive work drafting discovery, meeting and conferring with Defendants regarding that discovery, and negotiating and preparing many joint filings, sometimes weekly, regarding the progress of discovery. At my direction, they mounted a targeted effort to ensure Defendants produced sufficient data to determine every salary range that applied to every job title within the Class definition for every year in the Class Period, information that provided crucial support for Plaintiffs' arguments in advocating for class certification. Other members of my firm were dedicated full-time to reviewing and analyzing the voluminous documents Defendants produced in the case, and helped in selecting documents for use at depositions and in law and motion practice. I and members of my staff also did extensive work identifying and vetting candidates to serve as expert witnesses, developing expert testimony and engaging in extensive expert discovery, working with professional economists to analyze economic information and employment and compensation data from Defendants, and providing guidance and oversight to assist with drafting of expert reports, as well as materials relevant to their opinions and for use as exhibits.

24.     Joseph Saveri Law Firm attorneys also frequently took the lead in motion practice and made significant contributions to every major filing on behalf of Plaintiffs in the case. These aspects of the case benefited particularly from the work of Joseph Saveri Law Firm counsel attorney Joshua Davis, who also serves as Professor of Law and Associate Dean for Academic Affairs at the University of San Francisco School of Law and is a frequently published authority on antitrust matters. As was I, Mr. Davis was formerly a partner at LCHB, and together we successfully handled a number of the firm's significant antitrust cases during that period. After the denial of the Motions to Dismiss, the next major case milestone was class certification. I assisted in coordinating and drafting Plaintiffs' briefing in support of its first Motion for Class Certification, which the Court granted in part and denied in part, from October through December 2012. Joseph Saveri Law Firm attorneys also played a central role in drafting Plaintiffs' second Motion for Class Certification, which the Court approved, including researching and drafting key sections establishing the predominance of questions common to the Class

DECLARATION OF JOSEPH R. SAVERI IN SUPPORT OF PLAINTIFFS' MOTION FOR
ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND INCENTIVE AWARDS

under Fed. R. Civ. P. 23(b)(3). My firm did the lion's share of the research and drafting of Plaintiffs' successful Opposition brief countering Defendants' Rule 23(f) Petition for Leave to Appeal the Court's Order granting Plaintiffs' second Motion for Class Certification—a petition the Ninth Circuit dismissed summarily without comment.

25.     Joseph Saveri Law Firm attorneys also did extensive research and drafting in conjunction with Plaintiffs' Opposition to Defendants' Motions for Summary Judgment. At my direction, my staff scoured thousands of pages of evidence and deposition testimony to identify key admissions isolating the conspiracy from Defendants' efforts to cast it as part and parcel of research collaboration standard in the high-tech industry, and I and the antitrust specialists on my staff conducted research and analysis to identify the flaws in Defendants' motions. Ultimately, the Court denied all of Defendants' Motions for Summary Judgment in an eight-page Order. The same team later took primary responsibility for researching and drafting the briefing for Plaintiffs' Application of the Per Se Standard, still pending at the time when the parties announced they had reached the settlement preliminarily approved by this Court in March of this year. At my direction, the Joseph Saveri Law Firm spearheaded the response to Defendants' Petition for Writ of Mandate filed in the Ninth Circuit challenging this Court's Order denying preliminary approval for the parties' first proposed final settlement.

26.     In coordination with LCHB, in the first part of 2014 I and my staff did significant work to prepare the case for trial. At my direction my staff devoted substantial time to reviewing testimony, identifying and preparing exhibits, reviewing the pleadings and developing a strategy. The two firms also engaged experienced jury consultants to assist with focus group research including the preparation of a full mock trial.

27.     The public face of Joseph Saveri Law Firm has also benefited the Class. After Notice went out to Class members following the Court's granting preliminary approval of the Pixar/Lucasfilm and Intuit settlements, my office received a steady flow of calls and emails from Class members and other concerned citizens regarding the case. I directed my staff to respond promptly to each and every inquiry from a Class member or potential Class member, and to provide full and candid answers wherever possible to questions seeking information about the case and the settlements. I also directed

my staff to reach out to Class members who objected to the settlements. Although none of the objectors formally withdrew their objections, several indicated that these conversations aided their understanding of the case and the settlements, and at least one who had stated an intention to speak against the settlements in the end chose not to do so. I have also received numerous communications expressing praise and gratitude for the firm's work on behalf of the Class and for our firm's efforts to provide Class members information in response to their inquiries. Periodically I have also engaged with members of the press, while protecting the Class's confidential information and litigation strategy, with the result that the public has received accurate and timely information about case developments. The public attention the case has received has also increased the deterrent value of the case in dissuading employers who might otherwise have considered similar collusion in the future.

28.     I also personally played a leading role in negotiating the settlements that the parties have presented to the Court in this case. I, along with my LCHB counterpart Kelly Dermody, participated in the mediations under the auspices of David Rotman and later, Layn Phillips. We negotiated the earlier $9 million settlement between Plaintiffs and Defendants Pixar and Lucasfilm, as well as the $11 million settlement shortly thereafter with Defendant Intuit, in July 2013. I and Ms. Dermody also negotiated the $324.5 million proposed settlement with the remaining four Defendants that the parties presented to the Court in April 2014. After the Court's denial of preliminary approval this past August, I spearheaded the efforts to achieve the enhanced proposed final settlement, including by affirmatively engaging counsel for objecting Class Representative Michael Devine and facilitating a dialogue that enabled the parties to align their interests and negotiate productively in a two-sided rather than three-sided negotiation. Class Counsel's efforts to pursue an enhanced settlement resulted in an increase to the proposed settlement amount of $90.5 million—an increase that will go almost entirely for enhanced settlement compensation to members of the Class—due to Class Counsel's decision not to seek any award beyond what it had sought in the parties' first attempt to achieve final settlement. Efforts to settle the instant case began early and continued episodically throughout the course of the litigation, and

//

//

//

DECLARATION OF JOSEPH R. SAVERI IN SUPPORT OF PLAINTIFFS' MOTION FOR
ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND INCENTIVE AWARDS

several times the parties met and sat for day-long mediation sessions. For most of the case, I was engaged in dialogue with at least one Defendant to discuss a possible resolution.

I declare under penalty of perjury under the laws of the United States and the State of California that the foregoing is true and correct to the best of my knowledge and that this declaration was executed in San Francisco, California on May 7, 2015.

Dated:  May 7, 2015

By:     */s/ Joseph R. Saveri*
Joseph R. Saveri

DECLARATION OF JOSEPH R. SAVERI IN SUPPORT OF PLAINTIFFS' MOTION FOR ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND INCENTIVE AWARDS