# Exhibit 1

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN JOSE DIVISION**

---

|  |  |
|---|---|
| IN RE:  HIGH-TECH EMPLOYEE ANTITRUST LITIGATION | : <br> : <br> : <br> :  Case No.11-CV-02509-LHK <br> : <br> : <br> : |
| THIS DOCUMENT RELATES TO: <br><br> **ALL ACTIONS** | : <br> : <br> : <br> : <br> : <br> : |

**EXPERT DECLARATION OF PROFESSOR WILLIAM B. RUBENSTEIN**

1.      I am the Sidley Austin Professor of Law at Harvard Law School and a leading national expert on class action law and practice.  Class Counsel[1] seek a fee of $81.125 million, constituting 19.54% of the $415 million common fund.  The Joseph Saveri Law Firm has retained me to provide my expert opinion as to whether this request is reasonable in the context of this litigation.  As this Court has articulated in several recent decisions,[2] Ninth Circuit law [1] embraces a percentage approach to common fund fee awards, with a 25% benchmark; [2] requires consideration of a number of other factors (such as the risks counsel took, the results

---

[1] The Settlement Agreement states that "'Class Counsel' means the law firms of Lieff Cabraser Heimann & Bernstein, LLP, the Joseph Saveri Law Firm, Inc., Berger & Montague, P.C., and Grant & Eisenhofer, P.A."  Settlement Agreement § I(A)(4), ECF No. 1033-1.

[2] *See, e.g.*, *de Mira v. Heartland Employment Serv.*, *LLC*, No. 12-CV-04092 LHK, 2014 WL 1026282, at *1 (N.D. Cal. Mar. 13, 2014); *Hopkins v. Stryker Sales Corp.*, No. 11-CV-02786-LHK, 2013 WL 496358, at *1 (N.D. Cal. Feb. 6, 2013).

they achieved, and awards in similar cases); and [3] permits consideration of a lodestar cross-check. After setting forth my qualifications to serve as an expert (Part I, *infra*), and briefly describing the underlying litigation (Part II, *infra*), I employ this Court's approach to reach the following conclusions:

- ***Class Counsel's requested fee fits easily within the Ninth Circuit's 25% benchmark*** (Section III(A), *infra*). In common fund cases, class counsel are entitled to a percentage of the fund that their efforts created for the class. In the Ninth Circuit, 25% is the benchmark for such awards. The requested fee is, standing alone, well below the benchmark, and even when combined with the proposed fee for Devine Counsel,[3] the total is nearly 20% below the 25% benchmark. The percentage sought is also commensurate with the median percentage courts award in cases of similar fund size.

- ***Class Counsel's lodestar reflects both a reasonable billing rate based on the market for attorneys in this community and a reasonable quantity of hours for the work undertaken in this matter*** (Section III(B), *infra*). For purposes of this Declaration, I compiled a database of all rates approved by courts in the Northern District in the past two years (270 rates from 26 cases). That empirical analysis found that the hourly rates Class Counsel employ are consistent with, albeit slightly higher than, those approved rates, while the blended hourly rate of all the timekeepers in this case is lower than the blended rates approved in recent Northern District cases. I undertook a similar empirical evaluation of the number of hours counsel bill in settlements of this magnitude (roughly $400 million). That analysis found that the total number of hours that all Class Counsel expended in this case is below the mean for cases of this size, supporting the conclusion that these Class Counsel engaged in no churning or lodestar padding. Simultaneously, the hours Class Counsel billed per day this case was pending was about 19% higher than the median hours/day in other $400 million settlements, showing that Class Counsel worked vigorously on the case without shirking. A qualitative assessment of the time spent also supports these conclusions: Class Counsel report that they devoted 39,124 hours of time to this case in about 4.25 years, or about 9,206 hours/year; this is the equivalent of four attorneys working full time (2,301 hours/year) on the case throughout those 4.25 years. In light of the complexity of the case, and the investigation, discovery, and adversarial litigation undertaken by Class Counsel, it is evident that the case could have consumed the full attention of four attorneys for 4.25 years. Both of the

---

[3] The Settlement Agreement defines "Devine Counsel" to mean "the law firm of Girard Gibbs LLP, counsel for Named Plaintiff Michael Devine." Settlement Agreement § I(A)(11).

components of Class Counsel's lodestar – the rates and hours – are therefore reasonable.

- ***Class Counsel are entitled to a fee enhancement because of the risk the firms undertook and the results they achieved for the class – and the multiplier sought is consistent with multipliers in similar cases*** (Part III(C), *infra*).  Class Counsel bore a significant risk by taking on a contingent case concerning a unique legal theory – an employment antitrust case involving allegations of buyer collusion – against well-funded adversaries that employed large and highly skilled law firms to vigorously contest the claims.  Class Counsel invested huge amounts of their own money pursuing the class's claims without any promise the investment would pay off.  While shouldering significant risk, Class Counsel secured enormous monetary relief for the class – more than $300 million through the first proposed settlement, $415 million with this settlement.  The risks taken and results achieved support the requested 3.89 multiplier.  That multiplier is also consistent with multipliers courts have awarded in similar cases.

- ***This Court's rejection of the initial settlement should not alter these conclusions*** (Part III(D), *infra*).  Everything about this fee petition is relatively unexceptional, but one fact about this settlement is relatively rare:  this Court rejected Class Counsel's initial settlement proposal, and the present settlement proposal came after further bargaining among the parties.  It is my opinion that this fact ought not alter Class Counsel's entitlement to a 19.54% fee for six independent reasons, discussed in depth below. These reasons include:  [1] there is no legal precedent suggesting any different *approach* to fees in these circumstances and indeed courts regularly approach fees in the same manner regardless of whether they have rejected initial complaints, class certification motions, or, as in this case, proposed settlements; [2] Class Counsel took this Court's decision in stride and continued to litigate vigorously on behalf of the class; [3] Class Counsel's litigation efforts created the value of the class members' claims, as the bulk of the work done since this Court's initial settlement rejection was further negotiation; indeed, [4] the new settlement is precisely the same in all regards but the size of the fund; [5] Class Counsel seek no extra fee for the extra money in the fund, hence arguably discounting their services 5.5% (or $22.625 million) by reducing their request from 25% to 19.54%; and, [6] perhaps most importantly, as this Court has acknowledged previously, there is no suggestion that the initial settlement was in any way collusive or the result of bad lawyering.

In sum:  the requested percentage award falls well below the Ninth Circuit's 25% benchmark; it is supported by a reasonable number of hours billed at a reasonable rate; it embodies a lodestar multiplier that, while higher than some, is characteristic of large fund settlements such as this

3

one; and nothing about the litigation history argues for a different outcome.  The requested fee is, as the law requires that it must be, "reasonable."[4]

# I.
## BACKGROUND AND QUALIFICATIONS[5]

2.      I am the Sidley Austin Professor of Law at Harvard Law School.  I graduated from Yale College, *magna cum laude*, in 1982 and from Harvard Law School, *magna cum laude*, in 1986.  I clerked for the Hon. Stanley Sporkin in the U.S. District Court for the District of Columbia following my graduation from law school.  Before joining the Harvard faculty as a tenured professor in 2007, I was a law professor at UCLA School of Law for a decade, and an adjunct faculty member at Harvard, Stanford, and Yale Law Schools while a litigator in private practice during the preceding decade.  I am admitted to practice law in the Commonwealth of Massachusetts, the State of California, the Commonwealth of Pennsylvania (inactive), the District of Columbia (inactive), the U.S. Supreme Court, five U.S. Courts of Appeals, and four U.S. District Courts.

3.      My principal area of scholarship is complex civil litigation, with a special emphasis on class action law.  I am the author, co-author, or editor of five books and more than a dozen scholarly articles, as well as many shorter publications (a fuller bibliography appears in my c.v., Exhibit A).  Much of this work concerns various aspects of class action law.  I am the sole author of the leading national treatise on class action law, *Newberg on Class Actions*.  For five years (2007-2011), I published a regular column entitled "Expert's Corner" in the

---

[4] Fed. R. Civ. P. 23(h) ("In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement.").

[5] My full c.v. is attached as Exhibit A.

publication *Class Action Attorney Fee Digest*.  My work has been excerpted in casebooks on complex litigation, as noted on my c.v.

4.    My expertise in complex litigation has been recognized by judges, scholars, and lawyers in private practice throughout the country for whom I regularly provide consulting advice and educational training programs.  For the present year and past five years, the Judicial Panel on Multidistrict Litigation has invited me to give a presentation on the current state of class action law at the annual MDL Transferee Judges Conference.  The Ninth Circuit invited me to moderate a panel on class action law at the 2015 Ninth Circuit/Federal Judicial Center Mid-Winter Workshop.  The American Law Institute selected me to serve as an Adviser on a Restatement-like project developing the *Principles of the Law of Aggregate Litigation*.  In 2007, I was the co-chair of the Class Action Subcommittee of the Mass Torts Committee of the ABA's Litigation Section.  I am on the Advisory Board of the publication *Class Action Law Monitor*.  I have often presented continuing legal education programs on class action law at law firms and conferences.

5.    My teaching focuses on procedure and complex litigation.  I regularly teach the basic civil procedure course to first-year law students, and I have taught a variety of advanced courses on complex litigation, remedies, and federal litigation.  I have received honors for my teaching activities, including: the Albert M. Sacks-Paul A. Freund Award for Teaching Excellence, as the best teacher at Harvard Law School during the 2011-2012 school year; the Rutter Award for Excellence in Teaching, as the best teacher at UCLA School of Law during the 2001-2002 school year; and the John Bingham Hurlbut Award for Excellence in Teaching, as the best teacher at Stanford Law School during the 1996-1997 school year.

6.      My academic work on class action law follows a significant career as a litigator. For nearly eight years, I worked as a staff attorney and project director at the national office of the American Civil Liberties Union in New York City.  In those capacities, I litigated dozens of cases on behalf of plaintiffs pursuing civil rights matters in state and federal courts throughout the United States; I also oversaw and coordinated hundreds of additional cases being litigated by ACLU affiliates and cooperating attorneys in courts around the country.  I therefore have personally initiated and pursued complex litigation, including class actions.

7.      I have been retained as an expert witness in roughly 50 class action cases and as an expert consultant in about another 20 cases.  These cases have been in state and federal courts throughout the United States, including many MDL proceedings.  I have been retained to testify as an expert witness on issues ranging from the propriety of class certification to the reasonableness of settlements and fees.  I have been retained by counsel for plaintiffs, for defendants, and for objectors.

8.      I have been retained in this case to provide an opinion concerning the issue set forth in the first paragraph above.  I am being compensated for providing this expert opinion.  I was paid a flat fee in advance of rendering my opinion, so my compensation was in no way contingent upon the content of my opinion.

9.      In analyzing these issues, I have discussed the case with the counsel who retained me.  I have also reviewed documents from this and related litigations, a list of which is attached as Exhibit B.  I have also reviewed the applicable case law and scholarship on the topics of this Declaration.

**II.**

**THIS LITIGATION**[6]

10.     This is an antitrust class action.

11.     Plaintiffs are present and former skilled technical, creative, and/or research and development employees of defendants.

12.     Generally, plaintiffs allege that the defendant companies agreed with one another not to hire technical employees from one another's organizations and, in doing so, reduced employee compensation and mobility by eliminating competition for labor in violation of state and federal antitrust laws.

13.     Between May 4, 2011 and July 19, 2011, the initial complaints in these actions were filed in the Superior Court of the State of California.

14.     Defendants removed the cases to the United States District Court for the Northern District of California, where the cases were related and ultimately transferred to this Court on August 4, 2011.

15.     This Court consolidated the actions, and plaintiffs filed a Consolidated Amended Complaint on September 13, 2011.

16.     Defendants initially moved to dismiss the complaint, and on April 18, 2012, this Court issued an order denying the motion, except as to plaintiffs' UCL claim for restitution and disgorgement.

17.     On October 1, 2012, plaintiffs initially moved for class certification.

---

[6] The facts in this section are culled from the documents listed in Exhibit B.

18.     On April 5, 2013, this Court issued an order granting in part and denying in part plaintiffs' motion for class certification; by that order, the Court requested further briefing on the predominance question. Plaintiffs supplemented their submissions, and this Court granted plaintiffs' supplemental motion for class certification on October 24, 2013.

19.     Throughout these stages of the case, the parties had engaged in extensive discovery. Class Counsel report that:

> The parties completed broad, extensive, and thorough discovery related to both class certification and the merits. The parties took 107 depositions. Plaintiffs took 93 depositions of Defendant witnesses, and served 75 document requests, for which Defendants collectively produced over 325,000 documents (over 3.2 million pages). Plaintiffs also served 28 subpoenas on third parties, negotiated with those third parties, and received 8,809 pages of documents from them. Defendants took the depositions of Named Plaintiffs, and propounded document requests, in response to which Plaintiffs produced over 31,000 pages. Defendants also served 34 subpoenas on third parties, including the then current and former employers of the Plaintiffs. Defendants' subpoenas resulted in 1,834 pages of documents produced, which Plaintiffs' counsel also reviewed.[7]

20.     Around that time, plaintiffs reached settlement agreements with several defendants totaling $20 million: (a) a $9 million settlement with Pixar and Lucasfilm; and (b) an $11 million settlement with Intuit. On September 21, 2013, plaintiffs sought preliminary approval of the settlements with these defendants. On October 30, 2013, this Court granted preliminary approval of those settlements and by order dated May 16, 2014, this Court granted final approval of them. Class Counsel sought fees from those settlements of $5 million, consistent with the 25% Ninth Circuit benchmark, via motion filed on March 5, 2014, which this Court granted, over but one objection, on May 16, 2014. The Court also awarded Counsel costs of their cost. The Court entered Final Judgment as to these defendants by order dated June 9,

---

[7] Decl. of Kelly M. Dermody in Support of Plaintiffs' Motion for Preliminary Approval of Class Action Settlement at 2-3 (Dkt. #1033).

2014, as amended by further order on June 20, 2014.   Those settlements are now final and distribution of the settlement proceeds to the Class has been made.

21.     In early 2014, the remaining defendants filed various motions for summary judgment and to exclude the testimony of one of the plaintiffs' key expert witnesses.   In orders dated March 28, 2014 and April 4, 2014, totaling more than 50 pages, this Court denied all defendants' motions for summary judgment.

22.     During this time period, the parties also engaged in significant mediation and settlement efforts, first before David Rotman and ultimately with the assistance of Layn Phillips. These two months of efforts culminated in a Memorandum of Understanding on April 24, 2014.

23.     On May 22, 2014, plaintiffs sought preliminary approval of a settlement with the remaining defendants providing for a settlement fund of $324,500,000.   One of the named class representatives, Michael Devine, opposed the settlement by motion dated June 5, 2014, challenging the amount of compensation that the settlement provided.   On August 8, 2014, this Court denied preliminary approval, solely on the grounds that the amount of the settlement was insufficient.   The defendants sought review of this decision via a petition for a writ of mandamus to the United States Court of Appeals for the Ninth Circuit.   Class Counsel and Devine Counsel submitted briefs opposing the petition.   That court ordered briefing and scheduled an oral argument on the petition for March 15, 2015.

24.     Meanwhile, after continued mediation and litigation, the parties reached the current settlement, filing a motion for preliminary approval on January 15, 2015.   This settlement tracks the settlement that the Court rejected in August 2014 in all regards, but for the fact that the settlement fund has been increased from $324,500,000 to $415,000,000.

9

**III.**

**THE REQUESTED FEE IS REASONABLE**

25.     This Court has recently articulated the legal standard for a fee petition as follows:

The Ninth Circuit has stated that, in common fund cases like the instant case, a court may award attorneys' fees as a percentage of the common fund. The Ninth Circuit has endorsed a benchmark of 25% for attorney's fees awards.  That percentage amount can then be adjusted upward or downward depending on the circumstances of the case. Indeed, 'in most common fund cases, the award exceeds the benchmark.'  Percentage awards of between 20% and 30% are common.   Whether the Court awards the benchmark amount or some other rate, the award must be supported 'by findings that take into account all of the circumstances of the case.' The Ninth Circuit has approved a number of factors which may be relevant to the district court's determination: (1) the results achieved; (2) the risk of litigation; (3) the skill required and the quality of work; (4) the contingent nature of the fee and the financial burden carried by the plaintiffs; and (5) awards made in similar cases.  In addition, district courts may also compare the proposed percentage award to the attorney's fee award that would be granted were the district court to use the lodestar method to determine fees.[8]

Following this Court's approach to the Ninth Circuit test, the following sections consider Class Counsel's requested percentage (Part III(A), *infra*); their hours and rates, or the lodestar cross-check (Part III(B), *infra*); their proposed multiplier, in quantitative and qualitative (risks and results) terms (Part III(C), *infra*); and I conclude by considering the relevance of this Court's initial settlement rejection to the requested fee (Part III(D), *infra*).

**(A)**
***The Requested Fee is Significantly Below The Ninth Circuit's 25% Benchmark***

26.     Class Counsel seek a fee constituting 19.55% of the common fund.[9]

---

[8] *de Mira*, 2014 WL 1026282, at *1 (quoting *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1047 (N.D. Cal. 2008); *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048 (9th Cir. 2002)) (citations omitted); *see also Hopkins*, 2013 WL 496358, at *1 (same).

[9] Devine Counsel seek a fee constituting 1.09% of the common fund.  Together, these counsel fees would total 20.64% of the fund.

While the settlements and fee award with the initial settling defendants are final, it is worth noting that Class Counsel's request over the course of the entire litigation amounts to

27.   Class Counsel's requested 19.55% is reasonable according to several indicia:

- In the Ninth Circuit, 25% is the benchmark, or normal, fee.[10]

- Empirical research shows that in common fund cases between 1993-2008, the mean percentage award was 26% in the Northern District of California specifically,[11] and 25% in the Ninth Circuit generally.[12]

- Empirical research shows that in common fund cases between 1993-2008, the mean percentage award in antitrust cases was 22%, and 27% in labor and employment cases;[13] while in federal class action settlements in 2006 and 2007, the mean percentage award in antitrust cases was 25.4%, and 28% in labor and employment cases.[14]

- Percentage awards tend to decrease as the size of the fund increases.[15]  The most fine-grained analysis of this phenomenon reports that in settlements of this size ($250 million to $500 million), the mean percentage award is 17.8% and the median 19.5%.[16]

---

19.8%, that is:  $86,125,000 fees granted or requested ($5 million in the earlier approved fee request and $81,125,000 here) divided by $435,000,000 in funds for the class ($20 million in the earlier settlements, $415,000,000 here).  As the earlier fee award is final, and as that 19.8% figure is negligibly different than the 19.55% sought in this petition, I simply use the latter number throughout.

[10] *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047-48 (9th Cir. 2002).

[11] *See* Theodore Eisenberg & Geoffrey P. Miller, *Attorney Fees and Expenses in Class Action Settlements: 1993-2008*, 7 J. EMPIRICAL LEGAL STUD. 248, 259 (2010) (Tbl. 3) [hereinafter "Eisenberg & Miller II"].

[12] *See id.* at 260 (Tbl. 4);  *see also* Brian T. Fitzpatrick, *An Empirical Study of Class Action Settlements and Their Fee Awards*, 7 J. EMPIRICAL LEGAL STUD. 811, 836 (2010)  (Tbl. 9) (finding 23.9% mean in Ninth Circuit cases in 2006-2007) [hereinafter "Fitzpatrick"].

[13] *See* Eisenberg & Miller II*, supra* note 11, at 262 (Tbl. 5).

[14] Fitzpatrick, *supra* note 12, at 835  (Tbl. 8).

[15] This is referred to as the "mega-fund" or "mega-case" concept.  *See* FEDERAL JUDICIAL CENTER, MANUAL FOR COMPLEX LITIGATION, FOURTH, § 14.121 (2004) (hereinafter "*Manual for Complex Litigation*").  I have criticized that concept.  *See* William B. Rubenstein, *The Puzzling Persistence of the "Mega-Fund" Concept,* 4 CLASS ACTION ATTORNEY FEE DIGEST 39 (February 2010).

[16] Fitzpatrick, *supra* note 12, at 839 (Tbl. 11).  The other leading study simply lumped together all awards over $175.5 million and found a 12% mean award. *See* Eisenberg & Miller II*, supra* note 11, at 265 (Tbl. 7).  Fitzpatrick breaks down these higher awards into five gradations,

All of these data points support the conclusion that Class Counsel's requested fee of 19.55% of the common fund is normal, reasonable, well below the Ninth Circuit benchmark, well below the actual awards in Northern District and Ninth Circuit cases, well below the percentages awarded in similar types of cases, and consistent with the percentages awarded in so-called mega-fund cases.[17]

**(B)**
***The Requested Lodestar Rates and Hours Are Reasonable***

<u>The Requested Rates Are Reasonable</u>

28.    The *Manual for Complex Litigation* states:

> What constitutes a reasonable hourly rate varies according to geographic area and the attorney's experience, reputation, practice, qualifications, and customary charge. The rate should reflect what the attorney would normally command in the relevant marketplace.[18]

Two sets of related data demonstrate the reasonableness of the requested rates:  a comparison of the rates sought to the rates approved by courts in the Northern District in the past two years (¶ 29, *infra*); a comparison of Class Counsel's blended lodestar to rates approved by courts in the Northern District in the past two years (¶ 30, *infra*).

29.    For purposes of this Declaration, I directed my research assistants to create a database of Northern California fee rates so as to provide a sound empirical basis by which to assess the reasonableness of Class Counsel's proposed rates.  We searched for reported Northern

---

demonstrating a decline from 23.7% (for settlements of $72.5 to $100 million) to 13.7% (for settlements of $1 to $6.6 billion).  Fitzpatrick, *supra* note 12, at 839 (Tbl. 11).

[17] That conclusion holds true even if this Court, in addition, awards Devine Counsel its requested 1.09% of the common fund.

[18] *Manual for Complex Litigation, supra* note 15, at § 14.122 (citing *Blum v. Stenson*, 465 U.S. 886, 895 (1984) ("'[R]easonable fees' . . . are to be calculated according to the prevailing market rates in the relevant community . . . ."); *Lindy Bros. Builders, Inc. of Phila. v. Am. Radiator & Standard Sanitary Corp.*, 487 F.2d 161, 167 (3d Cir. 1973)).

District of California decisions that approved specific fee rates in class action cases in the past two years.  These searches identified 26 such decisions, which are listed in Exhibit C.  These 26 decisions affirm 309 individual hourly rates, 270 of which I employ in my analysis.[19]  I adjusted all these rates to 2015 dollars using the American Institute for Economic Research's cost-of-living calculator.[20]  Once the dollars were set at 2015 levels, I plotted the rates on an x-y axis, with the x-axis representing the years since admission to the bar and the y-axis representing the hourly rate.  The resulting scatter plot, set forth in Graph 1, below, provides a graphic picture of recent fee rates in the Northern California area.  Onto that scatter plot, I then placed the rates sought by the time-keeping counsel in this case, represented as red circles.  As the table demonstrates, Class Counsel's proposed rates (represented by the red dots and red logarithmic trendline) are quite comparable to the court-approved rates (represented by the blue dots and the blue logarithmic trendline).  Roughly speaking, the red logarithmic line is about 10% above the blue logarithmic line, suggesting that these firms are charging rates slightly higher than the norm.  However, these firms are among the leading class action law firms in the Bay Area and the United States: the lawyers who worked on this case possess years of experience, have track records of success, and can be counted among the elite of the profession generally and this area of law specifically.  Accordingly, it is not surprising that their rates are slightly higher than those of the wide swath of firms represented in the sample.  As importantly, as noted in the succeeding paragraph, when Class Counsel's full lodestar is apprised, Class Counsel's blended billing rate

---

[19] I removed 39 rates that were approvals of the rates of the firms in this case as I did not want to double count these firms in the analysis.

[20] This can be found at: https://www.aier.org/cost-living-calculator.

for all professionals throughout the litigation falls below the norm in the Northern District; that means that Class Counsel appropriately delegated much work to lower-hourly-rate paralegals and lawyers and hence that their slightly-above-mean lawyer rates ended up not driving their total lodestar above the mean.

**GRAPH 1**
**PREVAILING HOURLY RATES IN NORTHERN CALIFORNIA**



30.    In addition to assessing the hourly rates of each lawyer, I also reviewed Class Counsel's "blended lodestar."  The blended lodestar is calculated by taking the total fee sought and dividing it by the total number of hours worked by all of the time-keepers (partners, associates, paralegals, etc.) in the case; it gives a snapshot of the lodestar level of the full litigation.  I reviewed the blended lodestar of all Class Counsel in this matter by comparing it to

14

the blended lodestars of the 84 firms[21] whose rates have been approved in the Northern District in the past two years.  The blended lodestar rate (again adjusted to 2015 dollars) in these cases ranges from a low of $199.32/hour to a high of $791.69/hour.  This is reflected in the following Graph 2, below, with the blended lodestar in this case highlighted in red.  As the Court can see, the blended lodestar in this case ($533.21) falls below the middle of the chart, coming in about 4% below the median blended rate.   Again, this demonstrates that although Class Counsel's lawyers' rates are slightly above the mean in the Northern District, in handling this litigation, Class Counsel appropriately delegated work among a range of paralegals, associates, and partners so as to bring the full costs of Counsel's services to the class in below the mean for the Northern District.

**GRAPH 2**
**BLENDED LODESTARS IN RECENT NORTHERN DISTRICT FEE APPROVALS**



---

[21] I removed five prior rates that were rates of the firms in this case as I did not want to double count these firms in the analysis.

<u>The Hours Expended Are Reasonable</u>

31.     Counsel are entitled to be compensated for reasonable time spent at all points in the litigation.   Courts are cautioned to avoid engaging in an "*ex post facto* determination of whether attorney hours were necessary to the relief obtained."[22]   The issue "is not whether hindsight vindicates an attorney's time expenditures, but whether, at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures."[23]

32.     I examined the hours that Class Counsel billed in two ways: *first*, by a quantitative comparison to the hours expended in similarly large cases (¶ 33, *infra*); and *second*, by a qualitative analysis of the tasks undertaken (¶ 34, *infra*).[24]

33.     *Quantitative Assessment.*  For purposes of this Declaration, I directed my research assistants to search for settlement funds measuring roughly $400 million, for which we could

---

[22] *Grant v. Martinez*, 973 F.2d 96, 99 (2d Cir. 1992).

[23] *Id.*; *accord League of Residential Neighborhood Advocates v. City of Los Angeles,* 633 F. Supp. 2d 1119, 1133 (C.D. Cal. 2009) (noting that litigant's brief quoted language from *Grant v. Martinez*, 973 F.2d 96, 99 (2d Cir. 1992), and approving time expended).

[24] Class Counsel did not provide me – nor did I ask to see – a breakdown of each hour expended, as I generally do not undertake such a fine-grained lodestar audit in assessing the reasonableness of a fee award.  *See Goldberger v. Integrated Res., Inc.,* 209 F.3d 43, 50 (2d Cir. 2000) ("[W]here used as a mere cross-check, the hours documented by counsel need not be exhaustively scrutinized by the district court."); *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions,* 148 F.3d 283, 342 (3d Cir. 1998) (affirming district court's reliance on time summaries when lodestar employed as cross-check); *Swedish Hosp. Corp. v. Shalala,* 1 F.3d 1261, 1269-70 (D.C. Cir. 1993) (noting that "it can be exceptionally difficult for a court to review attorney billing information over the life of a complex litigation and make a determination about whether the time devoted to the litigation was necessary or reasonable" and "reiterat[ing] the Supreme Court's warning that '[a] request for attorney's fees should not result in a second major litigation'" (second alteration in original) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983))).

also find lodestar data.  This search identified eight such cases, which are listed in Exhibit D.[25]

We then charted the total number of hours counsel billed in each of the nine cases in the $400

million cohort.  The resulting data, set forth in Graph 3, *infra*, provide a graphic picture of hours

in a $400 million settlement.   As the Court can readily see, Class Counsel's total hours

(represented by the red bar) fall on the lower range of these similar cases.   This dispels any

concerns that Class Counsel padded their lodestar and indeed suggests that they performed their

duties efficiently.

**GRAPH 3**
**TOTAL HOURS BILLED IN $400 MILLION COMMON FUND CASES**



---

[25] These cases are primarily securities cases, but despite that distinction, my review of them leads me to conclude that they generally conform to this one in terms of the scope of the litigation tasks undertaken. Using them as a comparison group for an ''hours'' analysis enables a sufficiently ''apples to apples'' comparison.  The securities cases differ in one regard in that, under the PSLRA, the lead plaintiff may negotiate an *ex ante* fee level with lead counsel.  This means that fees are arrived at in a distinct manner, but that distinction is unlikely to affect the hours counsel expend in pursuing the class's claims.

While Class Counsel's hours are at the lower end of this spectrum, it is also worth noting that this case was litigated more expeditiously than the other $400 million cases.  Thus, to normalize the comparison group, I also took the total hours in each case and divided it by the total number of days the case was pending, yielding a calculation of the hours counsel billed on each case per day it was pending.  The results are charted in Graph 4.

**GRAPH 4**
**HOURS/DAY CASE PENDING IN $400 MILLION COMMON FUND CASES**



As is evident, Class Counsel's hours/day in this case were *above* the median (about 19%) among the cohort group of $400 million cases.  Together these data demonstrate that there is no evidence that Class Counsel padded their lodestar with excess hours, given the far lower raw

number needed to produce this $415 million settlement,[26] yet Class Counsel hardly shirked, working more hours per/day than the median counsel in the comparison cases.  In short, the hours billed appear entirely reasonable.

34.    *Qualitative Assessment.*  Class Counsel initially filed these complaints in May 2011, four years ago.  Given the research that precedes the filing of that complaint, I estimate that the firms worked on this matter for about 4.25 years.  In that time, Class Counsel have cumulatively logged 39,124 hours of time, or 9,206 hours/year, or the equivalent of 4 lawyers billing 2,301 hours/year each year.  In other words, the total number of hours invested in the case works out to about four lawyers working full time[27] on nothing but this case for the 4.25 years in question.  A review of the various aspects of Class Counsel's work in this case supports the conclusion that these activities would have easily kept four lawyers busy full time for 4.25 years.  These activities included:

- Identifying the defendants' collusive pay agreement and undertaking all the factual investigation required before filing a detailed complaint in court;

- Linking that factual investigation to the proper legal claims by researching relevant legal precedents under California and federal law;

---

[26] In fact, the hours billed here actually produced $435 million in settlement value when the initial $20 million settlement is factored in.

[27] I refer to 2,301 hours/year as one lawyer working "full time."   Data support this reference.  The National Association for Law Placement (NALP)'s most recent data available online, published in February 2012, reflect the hours billed by firms in 2009 and 2010.  *Number of Associate Hours Worked Increases at Largest Firms*, NALP (Feb. 2012), http://www.nalp.org/billable_hours_feb2012. Those data show that, for lawyers at the largest firms (700+ lawyers), about 2/3 billed more than 2,200 hours/year, and the average number of hours billed in 2010 was 2,208.  These data are a good referent in that Class Counsel litigated this case against large law firms similar to those included in the NALP study.  To compete with firms equipped with such significant expertise and resources, Class Counsel likely billed at least the number of hours those firms did in defending this case.

- Meeting with the clients and securing retainer agreements with them;

- Preparing, filing, and serving the initial complaints to meet the pleading standards under Rule 8 and Rule 12 as interpreted by the Supreme Court in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007);

- Responding, successfully, to an initial motion to dismiss the case;

- Undertaking extensive discovery, including:

    - ✓ taking 93 depositions and defending 14 depositions;

    - ✓ serving 75 document requests; and

    - ✓ reviewing the resulting 325,000 documents (over 3.2 million pages);

    - ✓ serving 28 subpoenas on third parties, negotiating with those third parties, and receiving and reviewing 8,809 pages of documents from them;

    - ✓ responding to defendants' document requests, including producing over 31,000 pages of documents;

    - ✓ responding to 34 subpoenas defendants served on third parties, including the then current and former employers of plaintiffs, which resulted in 1,834 pages of documents produced, which Class Counsel also reviewed.[28]

- Undertaking the analysis of "vast amounts of computerized employee compensation and recruiting data, including approximately 80,000 files of employment-related data exceeding 50 gigabytes;"[29]

- Retaining "four experts and numerous consultants"[30] to assist with this data analysis process, who generated the following work:

    - ✓ expert Edward Leamer (UCLA) produced six expert reports consisting of 433 pages of analysis and defendants deposed him four times;

    - ✓ expert Kevin Hallock (Cornell) produced two expert reports consisting of 232 pages of analysis and defendant deposed him twice;

---

[28] Decl. of Kelly M. Dermody in Support of Plaintiffs' Motion for Preliminary Approval of Class Action Settlement at 2-3 (Dkt. #1033).

[29] *Id.* at 2.

[30] *Id.*

- ✓ expert Alan Manning (London School of Economics) produced one expert report and defendants deposed him once;

- ✓ expert Matthew Marx (MIT) produced two expert reports and defendants deposed him once.[31]

- Identifying these experts and working with them to produce expert reports in conjunction with the class certification motions, including taking and defending expert depositions;

- Researching, drafting, filing, and serving a consolidated amended complaint;

- Researching, drafting, filing, and litigating a motion for class certification;

- Defending the class representatives' depositions in conjunction with the class certification motion;

- Arguing the class certification motion before this Court;

- Undertaking supplemental briefing of the class certification motion;

- Opposing, successfully, a petition for leave to appeal class certification before the Ninth Circuit under Rule 23(f);

- Responding, successfully, to several motions for summary judgment;

- Responding, again successfully, to several voluminous motions concerning attempts to disqualify or limit testimony of plaintiffs' expert witness;

- Preparing the case for trial, including in *limine* motions, mock trials and focus group work;

- Settling with several defendants, presenting those initial settlements to the Court and shepherding them through the settlement approval process;

- Engaging in extensive settlement negotiations, including the full-day mediation sessions leading to settlement terms;

- Helping to memorialize and document the settlement terms in a final settlement agreement, including releases of liability, class action notices, and claim forms;

---

[31] *Id.*

- Shepherding the settlement agreement through a contested preliminary approval process;

- Following this Court's initial rejection of settlement approval, opposing the defendants' petition for writ of mandate seeking to reinstate the earlier settlement before the Ninth Circuit;

- Meeting and conferring with Devine Counsel about the case and the proposed settlement;

- Returning to mediation with all of the parties and ultimately proposing a second settlement;

- Obtaining preliminary, and seeking final, approval of the settlement.

This partial list substantiates the conclusion that Class Counsel's 39,124 hours of total time billed to this case is reasonable.

35.    Two other factors bolster the conclusion that 39,124 hours of total time billed is reasonable:

- *First*, this matter consists of several complaints and involves four significant plaintiffs' firms.  Thus, some of the total lodestar reflects work taken on independent complaints, later consolidated.  This is not worrisome double-billing, however, as the cases were quickly related and plaintiffs' leadership team was well-coordinated among a small set of well-established firms.  Additionally, the lead lawyer in this case, Joseph Saveri, was at the outset of this case, a senior lawyer at Lieff Cabraser supervising the firm's antitrust practice.[32]  In that capacity, he oversaw the team of lawyers at Lieff Cabraser that initiated the case and helped develop and implement the legal strategy.  Saveri then left Lieff Cabraser and founded the Joseph Saveri Law Firm early in these proceedings (before the production of most of the electronically stored information, and before depositions had begun).  After Saveri's departure, the Saveri firm and Lieff Cabraser served as Co-Lead Counsel, with the class having the benefit of both firms' substantive legal work and financial support.  The split between Saveri and Lieff Cabraser thus appears to have caused no disruption to the class's efforts to litigate this case.  And given my analysis of the total hours expended in reaching these settlements, there is also no evidence of a useless duplication of

---

[32] The facts in this, and the succeeding two sentences, are based on the Declaration of Joseph Saveri in support of this fee petition, a draft of which was shared with me during my preparation of this report.

efforts.  In short, as recognized in the Court's Order continuing Saveri's leadership as Co-Lead Counsel with his former law firm, the class's interests appear to have been well served by having Saveri and Lieff Cabraser jointly lead this effort.

- *Second*, it is also important to bear in mind that plaintiffs sued multiple defendants, many of which are among the largest corporations in the United States.  Each of these defendants had at least one (and sometimes multiple) large, established firms representing them throughout this hotly contested litigation.  While there is no way of obtaining this information, I think it fair to presume that the number of hours billed by Class Counsel in this matter likely is similar to, if not less than, the cumulative number of hours billed by all of the defendants' firms in the case.  Both of these facts further support the conclusion that the number of hours billed is reasonable.

**(C)**
*A Lodestar Enhancement is Appropriate and*
*the Requested Multiplier of 3.89 is Reasonable*

36      Courts often award class action attorneys a multiplied fee award to account for the contingent nature of their provision of legal services.  Class action attorneys serve a critical social function in pursuing legal claims worth less than the cost of litigation (so-called "negative value claims"),[33] a function captured by the title "private attorneys general."[34]  Fees are what incentivizes an attorney to set up an entire legal practice around the pursuit of such negative value claims.  Yet if the contingent fee attorney were only paid at her hourly rate, she would have no incentive to invest her time and money in a client's case – she would take the far less risky path of representing clients who could presently pay her on an hourly basis, as most defendants' counsel are paid.  The California Supreme Court has summarized the point by quoting two commentators:

---

[33] For a discussion, see William B. Rubenstein, *Why Enable Litigation?  A Positive Externalities Theory of the Small Claims Class Action*, 74 U.M.K.C. L. REV. 709 (2006).

[34] For a discussion, see William B. Rubenstein, *On What a "Private Attorney General" Is – And Why It Matters*, 57 VAND. L. REV. 2129 (2004).

A contingent fee must be higher than a fee for the same legal services paid as they are performed. The contingent fee compensates the lawyer not only for the legal services he renders but for the loan of those services. The implicit interest rate on such a loan is higher because the risk of default (the loss of the case, which cancels the debt of the client to the lawyer) is much higher than that of conventional loans.[35]

A lawyer who both bears the risk of not being paid and provides legal services is not receiving the fair market value of his work if he is paid only for the second of these functions. If he is paid no more, competent counsel will be reluctant to accept fee award cases.[36]

The Ninth Circuit has similarly embraced the multiplied fee, noting that:

'[C]ourts have routinely enhanced the lodestar to reflect the risk of non-payment in common fund cases.' This mirrors the established practice in the private legal market of rewarding attorneys for taking the risk of nonpayment by paying them a premium over their normal hourly rates for winning contingency cases. In common fund cases, 'attorneys whose compensation depends on their winning the case must make up in compensation in the cases they win for the lack of compensation in the cases they lose.'[37]

37. Class Counsel's requested multiplier of 3.89 times their lodestar is consistent with multipliers that courts approve in similar circumstances:

- The Ninth Circuit, in the case establishing 25% as the benchmark percentage fee, approved a multiplier of 3.65, writing that this number "was within the range of multipliers applied in common fund cases"[38] and appending a list of such cases to its decision.

---

[35] *Ketchum v. Moses* 17 P.3d 735, 742 (Cal. 2001) (quoting RICHARD A. POSNER, ECONOMIC ANALYSIS OF LAW 534, 567 (4th ed. 1992)).

[36] *Id.* (quoting John Leubsdorf, *The Contingency Factor in Attorney Fee Awards* 90 YALE L.J. 473, 480 (1981)).

[37] *Vizcaino*, 290 F.3d at 1051 (quoting *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1300–01 (9th Cir. 1994)) (internal citations omitted).

[38] *Id.* at 1051; *see also Dyer v. Wells Fargo Bank, N.A.*, 303 F.R.D. 326, 334 (N.D. Cal. 2014) ("A 2.83 multiplier falls within the Ninth Circuit's presumptively acceptable range of 1.0–4.0. Given the complexity and duration of this litigation, the results obtained for the class, and the risk counsel faced in bringing the litigation, the Court finds the 2.83 multiplier appropriate." (internal citation omitted))).

- The three leading empirical studies of class action attorney's fees found the mean multipliers in all cases to be 1.65,[39] 1.81,[40] and 4.97.[41]

- These studies also show that multipliers are higher in cases with larger returns, such as this case, with the mean multipliers rising (in cases with recoveries greater than \$175.5 million) to 3.18 in one study[42] and (in cases with recoveries greater than \$100 million) to 6.20 in another study.[43]

- Beyond these statistics, case reports demonstrate that, in appropriate cases, courts have often approved percentage awards embodying lodestar multipliers in the range sought here.  In Exhibit E, I provide a list of 54 cases with multipliers over 3.5, 50 of which have multipliers higher than the multiplier sought in this matter, 48 of which have multipliers of 4 or higher, and 31 of which have multipliers of 5 or more.  This list is not meant to be either exhaustive or representative of all multipliers.  Rather, it demonstrates that courts approve percentage awards that embody multipliers in the range of the multiplier sought here in appropriate circumstances.

The requested multiplier is therefore above the mean for *all* cases but consistent with the mean for *large* cases and within the range of approved multipliers in the Ninth Circuit and elsewhere – indeed, it is almost commensurate with the multiplier approved in the Ninth Circuit's seminal fee decision establishing its 25% benchmark.[44]

---

[39] Fitzpatrick, *supra* note 12, at 833-34.  These multiplier cases include those using percentage-of-fund method *with* a lodestar cross-check—*i.e.* no pure lodestar cases were included.

[40] *See* Eisenberg & Miller II, *supra* note 11, at 272.  This multiplier data set excludes those cases that report a multiplier of 1.  It is unclear if this data set includes only percentage-of-fund cases with a lodestar cross-check, or also pure lodestar cases.

[41] Stuart J. Logan, Beverly C. Moore & Jack Moshman, *Attorney Fee Awards in Common Fund Class Actions*, 24 CLASS ACTION REP. 167, 169 (2003) [hereinafter "Logan"]. This multiplier data set includes cases that only utilized a percentage-of-fund method for calculating fees. The authors of the study do not say how they calculated multipliers for these cases, as the study did not include cases that applied a mixed lodestar-percentage method.

[42] Eisenberg & Miller II*, supra* note 11, at 274 (reporting on 33 cases with recoveries greater than \$175.5 million).

[43] Logan, *supra* note 40, at 170 (reporting on 35 cases with recoveries of \$100 million or higher).

[44] *Vizcaino,* 290 F.3d at 1051.

38.     As courts will award a multiplier of 3.89 in appropriate circumstances, the sole question is whether Class Counsel's work in *this* case justifies this multiplier.  That inquiry turns on the risks Counsel took and the results they achieved for the class.[45]

<u>The Risks Counsel Undertook</u>

39.     Myriad points demonstrate the riskiness of this matter.

- ***Novel Legal Theory.***  This is a peculiar case.  It is an antitrust case about employment rights and allegations of collusion between and among buyers of employment services.  There are relatively few reported antitrust cases involving labor or labor markets.   There are relatively few reported cases involving collusion among buyers – as opposed, for example, to collusion among sellers in an ordinary Section 1 cartel case. As such, it is neither a standard antitrust case *nor* a standard employment case.  What that means is that almost everything about the case required novel thinking by the lawyers pursuing the case, as well as novel arguments  drawing  on  antitrust  principles  but  applying  them  in  the labor/workforce setting.   Special risks inhere in such a new pursuit:   there are fewer known precedents upon which to draw and Class Counsel shouldered the risk  that  courts  would  resist  application  of  antitrust  norms  in  the  employment setting.

- ***Novel Legal Pleadings***.    The novelty of the case not only engendered risks of legal failure, but it also required Class Counsel to invent a new wheel.  This point becomes more evident when this case is compared to a standard contingent fee case, even a complex class action matter.  Many contingent fee lawyers specialize in particular types of harms, a practice that enables them to significantly lower their investment in each new case.  An asbestos lawyer, for example, has litigated countless asbestos cases in the past; while the facts of an asbestos case may be difficult to learn the first time, these facts are generally the same for the hundredth or thousandth case, varied only by the particular client's specific situation.  Often, the lawyers can therefore re-use information, pleadings, parts of briefs, etc. from

---

[45] *See, e.g., In re Ferrero Litig* 583 Fed. Appx. 665, 668 (9th Cir. July 16, 2014) (identifying "multiplier factors" as the "contingent representation or quality of work"); *In re Bluetooth Prods. Liab. Litig.*, 654 F.3d 935, 941-42 (9th Cir. 2011) ("Though the lodestar figure is 'presumptively reasonable,' the court may adjust it upward or downward by an appropriate positive or negative multiplier reflecting a host of "reasonableness" factors, 'including the quality of representation, the benefit obtained for the class, the complexity and novelty of the issues presented, and the risk of nonpayment.'   Foremost among these considerations, however, is the benefit obtained for the class." (quoting *Cunningham v. Cnty. of Los Angeles*, 879 F.2d 481, 488 (9th Cir. 1988); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998))) (internal citations omitted).

prior actions.  These same attributes characterize the class action bar – most class actions involve single events or types of injuries, many lawyers specialize, and thus many cases, even those involving millions of claimants and hundreds of millions of dollars, can be handled relatively efficiently with some work product borrowed from earlier efforts.  Here, by contrast, given the novel nature of the case, Class Counsel were required to invent many of the strategies, tactics, details, pleadings, motions, etc., from scratch, with fewer opportunities to borrow from past cases.  This level of innovation raised the stakes of the case by requiring increased investments of both labor and out-of-pocket costs.

- ***One-off nature of case.***  As noted above, many class actions, like many normal contingent fee cases, have repetitive characteristics to them.  This case is rather unique in applying antitrust principles to the employment setting and to a case involving collusion among buyers, as opposed to sellers.  That meant, as noted above, that the lawyers had to re-invent the wheel and could not simply recycle work from earlier cases, thus increasing their investment and risk.  What is as interesting is that this investment by Class Counsel is unlikely to open a new avenue of business for them, enabling them to utilize the experience and work product here in future matters.  If their investment had such an effect, it would have tempered the risk because that risk could be spread across a new line of business.  But given the one-off nature of this case, Class Counsel's investment in it was effectively an investment solely in these clients, with no real hope for future repeat business arising out of it.

- ***Uncertainty of expert testimony.***  A large antitrust case of this type depends significantly on expert testimony, both at the class certification stage (to demonstrate that a damages model applies commonly across the class) and at trial in proving damages.  There are repeat-playing experts in the antitrust fields upon whom the parties regularly rely in such cases.  Again, the peculiar labor/employment nature of this case altered Class Counsel's ability to rely on these experts in this case, as the facts were quite different than those in typical market cases and the experts' testimony more uncertain at the case's inception.

- ***Uncertainty of settlement.***  Most litigation settles and most complex litigation does, as well.  While settlement in a class suit is fairly predictable if Class Counsel survives a motion to dismiss and/or a motion for class certification, neither milestone makes settlement as certain in a case in a novel setting.  There are fewer known anchors around which to frame such a settlement and the defendants may have more interest in testing the novelty of Class Counsel's theory in litigation than in pursuing settlement.  For example, some of Plaintiffs' experts had not testified in an antitrust case or class action before this case.

- ***Well-funded adversaries.***  In pursuing this case, Class Counsel took on some of the leading corporations in the United States.  Three of the defendants are Fortune

100 Companies: Apple is the 5th largest corporation in the United States, Google the 46th, and Intel the 53rd. Adobe falls just outside the Fortune 500, at 601, to boot. These companies had significant incentive to fight the allegations in the case vigorously and they retained the largest law firms in the United States to represent them in doing so. Plaintiffs' lawyers face a difficult battle going up against a large, well-funded, corporation in any class action lawsuit, but to take on a handful of the richest corporations in the world simultaneously presented a serious risk of loss and non-payment.

- **Well-lawyered adversaries**. As noted above, Class Counsel challenged some of the richest corporations in the world and these corporations retained some of the largest and best law firms in the world to represent them. These four plaintiffs firms (with two taking the leading oar) alone fought against at least 10 other law firms (who entered appearances for defendants herein) including firms with massive supplies of lawyers and resources: at least five of the adversarial firms employ more than 500 lawyers,[46] including Jones Day (1,700); Mayer Brown (1,450); Bingham McCutcheon (850); Covington & Burling (850); and O'Melveny & Myers (700), while two others are well-known and very successful, elite boutique firms (Munger Tolles and Keker & Van Nest). These firms have vast amount of resources, experience, and skill, such that litigating against any of them – much less *all of them* – poses risks far beyond the average lawsuit. Although Class Counsel count among their number some of the largest and most successful plaintiffs' firms in the country, it is not unfair to characterize the litigation as having a David and Goliath quality to it.

- **Huge monetary investment**. With so many sizeable and well-funded adversaries, Class Counsel had to be prepared to invest a substantial some of money into this litigation – and they did just that. Class Counsel report roughly 39,000 hours in this case, generating a lodestar of about $21 million. In addition to that, Class Counsel poured in out-of-pocket expenses amounting to more millions of dollars. What this means, quite simply, is that Class Counsel loaned the class between $20-30 million of their money. The firms risked losing all of that money on the outcome of this case and invested much of it when the case's outcome was uncertain.

- **Risk borne by small group of firms**. In most class action matters, particularly of this magnitude, the class is represented by a large collection of plaintiffs' firms.[47]

---

[46] These numbers are rough estimates gathered from the web.

[47] *See, e.g.*, *Manual for Complex Litigation*, *supra* note 15, at § 10.22 (discussing presence of multiple counsel in complex litigation and advising judges on how to manage); Judith Resnick et al., *Individuals Within the Aggregate: Relationships, Representation, and Fees*, 71 N.Y.U. L. REV. 296, 321 n.74 (1996) (describing a class action "in which some 60 firms are reportedly involved").

This means that the lawyers can spread the risk among the various firms.  Here, two firms (one, a new firm founded by the lawyer who helped originate and manage the case prior to his departure from the other firm) account for the vast bulk of the lodestar (about $18 million of the $21 million total).  These two firms shouldered the bulk of the risk in this complicated, novel, and expensive matter, and this small group of four firms took on all the risk themselves.

- **Preclusion of other paying work**.  Given the amount of time Class Counsel invested in this case, there is little doubt that they were precluded from working on other, simpler, matters during the course of this litigation.  The firms could have invested in other cases with easier returns.  Instead, they chose to invest their money in this risky class action involving novel legal theories and formidable opponents.

40.    These points demonstrate what seems incontestable:  Class Counsel took significant risk in undertaking this huge, important, unique, and uncertain case that required an investment of capital and labor in significant adversarial litigation without the promise of any easy return on that investment.  Like any investors who take large risks, these risks entitle the firms to a higher-than-average rate of return on their investment – but only if the risks they took paid off.  I will now turn to that analysis.

<u>The Results Counsel Achieved</u>

41.    Under Rule 23, the most important factor in determining a fee award is the result counsel achieved, the value they produced for their clients.[48]  A number of components of this case's outcome speak to the results Class Counsel obtained in this matter:

- **Counsel obtained significant monetary relief for the class**.  Class Counsel initially proposed a settlement worth $324,500,000, obtained solely through their efforts; following this Court's initial review, the settlement was renegotiated to $415,000,000.  All of the value of the initially proposed settlement and most of the value of the ultimate settlement is attributable solely to the work of Class Counsel.  All of this comes on the heels of a $20 million settlement with the initial settling defendants.  This is an enormous amount of money made available

---

[48] *In re Bluetooth*, 654 F.3d at 942 (characterizing "the benefit obtained for the class" as the "foremost" consideration in the multiplier analysis).

to the class.  Moreover, the size of each class member's recovery is substantial and represents a significant percentage of the losses he or she experienced as a result of the defendants' allegedly wrongful actions.

- ***The claiming process is straightforward***.  This is an extraordinary settlement in that class members are required to do nothing to get compensation from the settlement fund.  There are no claims forms.  There is no claiming process.  This is not a claims made settlement.  Checks will simply be mailed to the class members following final approval.  It is rare that the claiming process in a class action case is so straightforward, simple, and class-member friendly.

- ***The relief is widespread.***  Each and every class member will receive a *pro rata* portion of the settlement fund in relation to factors related to his or her underlying employment and compensation.  No portion of the class was disfavored or excluded from the settlement.

- ***The relief was achieved in a short time frame***.  Given the size, novelty, and complexity of this matter, and the strength and depth of Class Counsel's adversaries, the action was resolved relatively expeditiously: even though the case required approximately 100 depositions, review of hundreds of thousands of pages of documents, extensive law and motion practice and trial preparation, an initial settlement was proposed about 2.5 years after complaint-filing, and this larger settlement was initially proposed about 3 years after complaint-filing (and finally proposed 3.5 years after complaint-filing).  The efficiency with which this case was prosecuted benefitted the class by ensuring real relief in a time frame as contemporaneous to the harm as possible and without the delay of prolonged litigation and appeals.

- ***The relief required significant, contested adversarial litigation against strong opposition.***  Although this case followed a Department of Justice ("DOJ") investigation of the defendants' practices, it was anything but a "clean up" action.  As noted above, the well-funded defendants retained some of the largest and best law firms in the world to fight every aspect of this case, and fight they did – contesting the complaint through motions to dismiss, opposing class certification, pursuing motions for summary judgment, challenging expert witnesses, and engaging in numerous discovery disputes.  Defendants asserted that their resolution of claims by the DOJ had no preclusive effect as to any fact or claim in this case.  Class Counsel fought to keep the case alive and thereby secured aggregate resolution of the controversy.

- ***The relief obtained compares favorably to results achieved in similar cases.***  The relief in this case – nearly half a billion dollars – is one of the largest settlements in American history and surely one of, if not the, largest *employment-related* class action settlements ever.  Most of the mega-fund class settlements involve either

securities cases, business antitrust cases, or mass tort cases.  Employment cases are typically far more modest in scope and relief.  This settlement is path-breaking.

42.    These factors demonstrate the strength of the settlement, generally, and the particularly important contributions of Class Counsel, specifically, to the result achieved for the class in this matter.

**(D)**
***This Court's rejection of the initial proposed settlement***
***does not alter the reasonableness analysis***

43.    A somewhat unusual feature of this proposed settlement is that this Court preliminarily rejected a similar settlement that Class Counsel proposed, based solely on the amount of money secured by that initial settlement.  Following that decision, the original settling parties – and Devine counsel – renegotiated the present settlement to a price about 25% higher than the initial settlement fund.  This history poses the question of whether any of the methodology or conclusions reached above ought to be altered, and Class Counsel's fee reduced. While such a conclusion might be justified in certain circumstances, it is my expert opinion that under the present circumstances, no downward fee adjustment is warranted.    I reach that conclusion for six interrelated reasons.

44.    *First*, I am not familiar with any reported decision of any court, much less one in the Ninth Circuit, holding that a court's *approach* to fees – here, the 25% benchmark, the lodestar cross-check, and the factor-driven adjustments – should be displaced or altered when a settlement is the second proposed settlement rather than the first.  All of the basic aspects of the fee – the size of the common fund, the hours counsel invested, the monies it forwarded on behalf of the class, the results it achieved, etc. – are unaltered by this particular fact about the litigation

history.   In many ways it is no different than other standard litigation events, such as a requirement that class counsel file an amended complaint, or that class counsel amend a motion for class certification – such events are regular parts of litigation of this complexity and nuance and they are not considered lapses requiring fee adjustments.   Of course, if the rejected settlement embodied a sell-out of the class's claims and/or poor lawyering – two topics I address below – those factors would be relevant, as they are in any fee analysis.   But consideration of those factors would simply be a particular application of the usual fee analysis, suggesting again that courts employ the same fee *analysis* regardless of whether they are reviewing the first or fifth proposed settlement.

45.     *Second*, and importantly, Class Counsel took this Court's decision in stride, ensured that plaintiffs did not present fractured or contradictory positions, invited Devine Counsel to join their efforts, went back to the bargaining table, and secured a better recovery for the Class.   As they did following this Court's decision on the motion to dismiss (requiring an amended complaint), as well as this Court's decision on class certification (requiring additional pleading), Class Counsel demonstrated remarkable commitment to the class's claims, as well as resilience and skill in overcoming obstacles to achieve those ends.

46.     *Third*, there is little doubt that the present settlement would not exist but for Class Counsel's many years of hard-fought litigation.   The first settlement proposal arose in the midst of trial preparations and after the achievement of virtually all pretrial milestones.   Thus, it is Class Counsel's litigation efforts that are responsible for generating the value of the class

members' claims, litigation efforts that this Court characterized as "zealous" and as having been

undertaken against "extraordinarily well-resourced adversaries."[49]

47.     Indeed, *fourth*, the settlement now proposed is precisely the same in every single

term save one – the amount of money to be paid by defendants for the benefit of the class.  I

downloaded the two settlement agreements, transformed them to Word documents, then

compared them to one another; that "compare" view showed that the only changes in the new

settlement concerned the amount of money available and folding the Devine plaintiff and his

counsel into the settlement.  (This compare document is appended as Exhibit F.)  What that

means is that all of the other facets of the settlement were produced by Class Counsel and put in

place at the time of the first proposed settlement.  This isolates the size of the fund as the only

moving part that is different between these two settlements.

48.     *Fifth*, Class Counsel do not seek any additional fee for the larger size of the final

settlement nor for the work expended in producing that larger size – indeed, by keeping the

whole number of their fee request constant, Class Counsel have lowered the percentage sought

(given the larger size of the fund) from 25% to 19.55%.  In this sense, the fee sought here

*already embodies a discount*.  Had Class Counsel continued to seek 25%, their fee request would

be about $22.6 million higher than the current request.  This is not to say that Class Counsel

would necessarily have been entitled to, nor that this Court would have awarded, a full 25% of

the present fund; it is simply to note the reasonableness of Class Counsel's present fee request in

seeking none of the additional settlement funds although their further efforts largely (if not

entirely) produced that total value.  Another way of appreciating the importance of this point is

---

[49] Order Denying Plaintiffs' Motion for Preliminary Approval of Settlements with Adobe, Apple,
Google, and Intel at 31 (Dkt. #974).

that under the initial settlement, the total fund (net of fees and expenses) divided by the total number of class members yielded a mean award of about $3,750/member,[50] while under this settlement, each class member earns $5,082:  the mean class member recovery is therefore about 35.5% greater, even though only 28% was added to the common fund, solely because the *attorney's fees* per class member are reduced from a 25% level to a (roughly) 20% level.[51]

49.    *Sixth,* and perhaps most critically:  my opinion that Class Counsel should not be penalized for the initially proposed settlement turns greatly on the fact that no one has suggested that that settlement was in any way collusive or an attempt to sell the class's claims on the cheap in return for a large fee.  Indeed, in rejecting that settlement, this Court held that "Class counsel have been zealous advocates for the Class and have funded this litigation themselves against extraordinarily well-resourced adversaries."[52]  Similarly, the Devine Counsel has not questioned the amount of time and effort Class Counsel has put into this case over its many years and they have not suggested that Class Counsel were somehow colluding with the defendants to sell out the class.  In the papers opposing the original settlement, Devine stated that he "recognizes that Class Counsel have capably litigated this matter. . ."[53]  These parties differed over the value of the class's claims, not over the value of Class Counsel's legal services.  This petition concerns

---

[50] *Id.* at 6.

[51] It is worth noting that the time invested over the past year is part of Class Counsel's lodestar, and hence it does have the effect of lowering their multiplier (as it results in dividing the percentage award by a higher number of hours).  However, given the length of this case and the quantity of time Class Counsel has invested, the effect on the multiplier of these extra hours over the past years is negligible.

[52] Order Denying Plaintiffs' Motion for Preliminary Approval of Settlements with Adobe, Apple, Google, and Intel at 31 (Dkt. #974).

[53] Memorandum in Opposition to Motion for Preliminary Approval of Class Action Settlement at 1 (Dkt. #934).

the latter, not the former.  This fact is important as it speaks most directly to the way in which the initial settlement's rejection might affect the fee award:  specifically, one of the factors the Ninth Circuit employs in considering an adjustment to the proposed fee is "the skill required and the quality of work."  My review of the litigation supports my conclusion in this paragraph that this Court's rejection of the initially proposed settlement was not attributable to either a lack of skill or poor quality of work by Class Counsel, but rather represented the Court's judgment about the ultimate value of the class's claims discounted by the risk of pursuing them.  And it is fair to note, in this regard, that this Court's decision about the initial settlement immediately impacted the risk of pursuing the class's claims by enhancing their value, and thus contributed significantly to the ultimate settlement amount; defendants' pursuit of an interlocutory appeal of that decision evinces its importance in altering the value of the class's claims.  In that sense, Class Counsel's initial sense of the value of the class's claims discounted by the risks of pursuing them *without the Court's initial decision* was likely not far off the mark.

50.     Thus, while it is fair to consider whether this single fact about the long history of this litigation ought to have an effect on Class Counsel's fee request, my conclusion is that no adjustment is necessary in the circumstances of this case. In any event, the fee request already embodies a far lower percentage request.

* * *

51.    I have testified that the fee Class Counsel seek here is reasonable for four independent reasons:

- The fee represents a reasonable percentage of the fund that Class Counsel's work created for the class.

- When cross-checked, the fee is based on a reasonable lodestar – the hourly rates are standard, if slightly above the norm, and the hours billed to the case reflect no unnecessary churning or padding.

- The fee encompasses a reasonable multiplier (less than 4), recognizing the significant risks that Class Counsel took here and the superb results they achieved for the class.

- This Court's rejection of the initial proposed settlement does not disturb these conclusions.

In sum, it is my expert opinion that the Court should approve Class Counsel's request for fees in the amount of 19.54% of the settlement fund.

Executed this 6th day of May, 2015, in Cambridge, Massachusetts.

_____
William B. Rubenstein

# EXHIBIT A

# PROFESSOR WILLIAM B. RUBENSTEIN

Harvard Law School - AR323                                              (617) 496-7320
1545 Massachusetts Avenue                                    rubenstein@law.harvard.edu
Cambridge, MA 02138

## ACADEMIC EMPLOYMENT

HARVARD LAW SCHOOL, CAMBRIDGE MA
    Sidley Austin Professor of Law                                              2011-
    Professor of Law                                                        2007-2011
    Bruce Bromley Visiting Professor of Law                                 2006-2007
    Visiting Professor of Law                                  2003-2004, 2005-2006
    Lecturer in Law                                                         1990-1996
        *Courses*:        Civil Procedure; Class Action Law; Remedies
        *Awards*:         2012 Albert M. Sacks-Paul A. Freund Award for Teaching Excellence

UCLA SCHOOL OF LAW, LOS ANGELES CA
    Professor of Law                                                        2002-2007
    Acting Professor of Law                                                 1997-2002
        *Courses*:        Civil Procedure; Complex Litigation; Remedies
        *Awards*:         2002 Rutter Award for Excellence in Teaching
                          Top 20 California Lawyers Under 40, *Calif. Law Business* (2000)

STANFORD LAW SCHOOL, STANFORD CA
    Acting Associate Professor of Law                                       1995-1997
        *Courses*:        Civil Procedure; Federal Litigation
        *Awards*:         1997 John Bingham Hurlbut Award for Excellence in Teaching

YALE LAW SCHOOL, NEW HAVEN CT
    Lecturer in Law                                                         1994, 1995

BENJAMIN N. CARDOZO SCHOOL OF LAW, NEW YORK NY
    Visiting Professor                                                    Summer 2005

## LITIGATION-RELATED EMPLOYMENT

AMERICAN CIVIL LIBERTIES UNION, NATIONAL OFFICE, NEW YORK NY
    Project Director and Staff Counsel                                      1987-1995

    Litigated impact cases in federal and state courts throughout the US.  Supervised a staff of
    attorneys at the national office, oversaw work of ACLU attorneys around the country, and
    coordinated work with private cooperating counsel nationwide.  Significant experience in
    complex litigation practice and procedural issues; appellate litigation; litigation coordination,
    planning and oversight.

HON. STANLEY SPORKIN, U.S. DISTRICT COURT, WASHINGTON DC
    Law Clerk                                                              1986-87

PUBLIC CITIZEN LITIGATION GROUP,  WASHINGTON DC
    Intern                                                               Summer 1985

EDUCATION

HARVARD LAW SCHOOL, CAMBRIDGE MA
J.D., 1986, *magna cum laude*

YALE COLLEGE, NEW HAVEN CT
B.A., 1982, *magna cum laude*
Editor-in-Chief, YALE DAILY NEWS

SELECTED COMPLEX LITIGATION EXPERIENCE

*Professional Service and Highlighted Activities*

◇  *Sole Author,* NEWBERG ON CLASS ACTIONS (4th ed. updates since 2008 and 5th ed. (2011-2015))

◇  *Invited Speaker,* Judicial Panel on Multidistrict Litigation, Multidistrict Litigation (MDL) Transferee Judges Conference, Palm Beach, Florida (invited to present to MDL judges on recent developments in class action law (2010-2014))

◇  *Adviser,* American Law Institute, *Project on the Principles of the Law of Aggregate Litigation,* Philadelphia, Pennsylvania

◇  *Author, Amicus* brief filed in the United States Supreme Court on behalf of civil procedure and complex litigation law professors concerning the importance of the class action lawsuit (*AT&T Mobility v. Concepcion,* No. 09-893, 131 S. Ct. 1740 (2011))

◇  *"Expert's Corner" (Monthly Column), Class Action Attorney Fee Digest,* 2007-2011

◇  *Advisory Board, Class Action Law Monitor* (Strafford Publications), 2008-

◇  *Co-Chair,* ABA Litigation Section, Mass Torts Committee, Class Action Sub-Committee, 2007

◇  *Planning Committee,* American Bar Association, Annual National Institute on Class Actions Conference, 2006, 2007

*Expert Witness*

◇  Submitted an expert witness declaration concerning reasonableness of proposed class action settlement, settlement class certification, attorney's fees and incentive awards (*Fitzgerald Farms, LLC v. Chespeake Operating, L.L.C.,* Case No. CJ-2010-38, Dist. Ct., Beaver County, Oklahoma (2015))

◇  Submitted an expert witness declaration concerning reasonableness of attorney's fee request (*Asghari v. Volkswagen Group of America, Inc.,* No. CV13-02529, U.S. Dist. Ct., C.D. Cal. (2015))

◇  Submitted an expert witness declaration concerning propriety of severing individual cases from class action and resulting statute of repose ramifications (*In re: American International Group, Inc. 2008*

    *Securities Litigation,* 08-CV-4772-LTS-DCF, U.S. Dist. Ct., S.D.N.Y. (2015))

◇    Retained by Fortune Global 100 corporation as expert witness on fee matter that settled before testimony.

◇    Submitted an expert witness declaration concerning reasonableness of attorney's fee request (*In re: Hyundai and Kia Fuel Economy Litigation,* MDL 13-02424, U.S. Dist. Ct., C.D. Cal. (2014))

◇    Submitted an expert witness declaration concerning reasonableness of attorney fee request (*Ammari Electronics v. Pacific Bell Directory*, Case No. RG0522096, California Superior Court, Alameda County (2014))

◇    Submitted an expert witness declaration concerning plaintiff class action practices under the Private Securities Litigation Reform Act of 1995 (PSLRA), as related to statute of limitations question (*Federal Home Loan Bank of San Francisco v. Deutsche Bank Securities, Inc.,* Case No. CGC-10-497839, California Superior Court, San Francisco County (2014))

◇    Submitted an expert witness declaration concerning plaintiff class action practices under the Private Securities Litigation Reform Act of 1995 (PSLRA), as related to statute of limitations question (*Federal Home Loan Bank of San Francisco v. Credit Suisse Securities (USA) LLC,* Case No. CGC-10-497840, California Superior Court, San Francisco County (2014))

◇    Retained as expert witness on proper level of common benefit fee in MDL (*In re Neurontin Marketing and Sales Practice Litigation,* Civil Action No. 04-10981, MDL 1629, U.S. Dist. Ct., D. Mass. (2014))

◇    Submitted an expert witness declaration concerning proper approach to attorney's fees under California law in a statutory fee-shifting case (*Perrin v. Nabors Well Services Co.,* Case No. 1220037974, Judicial Arbitration and Mediation Services (JAMS) (2013))

◇    Submitted an expert witness declaration concerning fairness and adequacy of proposed nationwide class action settlement (*Verdejo v. Vanguard Piping Systems,* Case No. BC448383, California Superior Court, Los Angeles County (2013))

◇    Retained as an expert witness regarding fairness, adequacy, and reasonableness of proposed nationwide consumer class action settlement (*Herke v. Merck,* No. 2:09-cv-07218, MDL Docket No. 1657 (*In re Vioxx Products Liability Litigation*), U.S. Dist. Ct., E. D. La. (2013))

◇    Retained as an expert witness concerning ascertainability requirement for class certification and related issues (*Henderson v. Acxiom Risk Mitigation, Inc.,* Case No. 3:12-cv-00589-REP, U.S. Dist. Ct., E.D. Va. (2013))

◇    Submitted an expert witness declaration concerning Rule 23(g) selection of competing counsel (*White v. Experian Information Solutions, Inc.,* Case No. 05-CV-1070, U.S. Dist. Ct., C.D. Cal. (2013))

◇    Submitted an expert witness declaration concerning reasonableness of class action settlement and performing analysis of "net expected value" of settlement benefits (*In re Navistar Diesel Engine Products Liability Litigation,* Case No. 11 C 2496, U.S. Dist. Ct., N.D. Ill. (2013))

**A-3**

◇    Submitted an expert witness declaration concerning reasonableness of class action settlement and attorney's fee request (*Commonwealth Care Alliance and Crenshaw v. Astrazeneca Pharm. LLP, et al.,* Civil Action No. 05-0269 BLS2, Massachusetts Superior Court, Suffolk County (2013))

◇    Submitted an expert witness declaration concerning propriety of preliminary settlement approval in nationwide consumer class action settlement (*Anaya v. Quicktrim, LLC,* Case No. CIVVS 120177, California Superior Court, San Bernardino County (2012))

◇    Submitted expert witness affidavit concerning fee issues in common fund class action (*Tuttle v. New Hampshire Med. Malpractice Joint Underwriting Assoc.,* Case No. 217-2010-CV-00294, New Hampshire Superior Court, Merrimack County (2012))

◇    Submitted expert witness declaration and deposed concerning class certification issues in nationwide fraud class action (*Lauriello v. Caremark,* Case No. 03-CV-03-6630, Circuit Court for Jefferson County, Alabama (2012))

◇    Submitted expert witness declaration in securities class action concerning value of proxy disclosures achieved through settlement and appropriate level for fee award (*Rational Strategies Fund v. Jhung,* Case No. BC 460783, California Superior Court, Los Angeles County (2012))

◇    Submitted an expert witness report and deposed concerning legal malpractice in the defense of a class action lawsuit (*KB Home v. K&L Gates, LLP,* Case No. BC484090, California Superior Court, Los Angeles County (2011))

◇    Retained as expert witness on choice of law issues implicated by proposed nationwide class certification (*Simon v. Metropolitan Property and Cas. Co.,* Case No. CIV-2008-1008-W, U.S. Dist. Ct., W.D. Ok. (2011))

◇    Retained, deposed, and testified in court as expert witness in fee-related dispute (*Blue, et al. v. Hill,* Case No. 3:10-CV-02269-O-BK, U.S. Dist. Ct., N.D. Tex. (2011))

◇    Retained as an expert witness in fee-related dispute (*Furth v. Furth,* Case No. C11-00071-DMR, U.S. Dist. Ct., N.D. Cal. (2011))

◇    Submitted expert witness declaration concerning interim fee application in complex environmental class action (*DeLeo v. Bouchard Transportation,* Civil Action No. PLCV2004-01166-B, Massachusetts Superior Court (2010))

◇    Retained as an expert witness on common benefit fee issues in MDL proceeding in federal court (*In re Vioxx Products Liability Litigation,* MDL Docket No. 1657, U.S. Dist. Ct., E.D. La. (2010))

◇    Submitted expert witness declaration concerning fee application in securities case (*In re Amicas Inc. Shareholder Litigation,* Civil Action No. 10-412BLS2, Massachusetts Superior Court (2010))

◇    Submitted an expert witness declaration concerning fee entitlement and enhancement in non-common fund class action settlement (*Parkinson v. Hyundai Motor America, Inc.,* Case No. 06-cv-00345, U.S. Dist. Ct., C.D. Cal. (2010), *relied upon in Parkinson v. Hyundai Motor America,* 796 F.Supp.2d 1160 (C.D. Cal. 2010))

◇     Submitted an expert witness declaration concerning class action fee allocation among attorneys (*Salvas v. Wal-Mart*, Civil Action No. 01-03645, Massachusetts Superior Court (2010))

◇     Submitted an expert witness declaration concerning settlement approval and fee application in wage and hour class action settlement (*Salvas v. Wal-Mart*, Civil Action No. 01-03645, Massachusetts Superior Court (2010))

◇     Submitted an expert witness declaration concerning objectors' entitlement to attorney's fees (*Rodriguez v. West Publishing Corp.,* Case No. CV-05-3222, U.S. Dist. Ct., C.D. Cal. (2010))

◇     Submitted an expert witness declaration concerning fairness of settlement provisions and processes (*White v. Experian Information Solutions, Inc.,* Case No. 05-CV-1070, U.S. Dist. Ct., C.D. Cal. (2010), *relied upon in Radcliffe v. Experian Information Solutions Inc.*, 715 F.3d 1157, 1166 (9th Cir. 2013))

◇     Submitted an expert witness declaration concerning attorney's fees in class action fee dispute (*Elihu v. Toshiba America Information Systems, Inc.,* Case No. BC328566, California Superior Court, Los Angeles County (2009), *discussed in Ellis v. Toshiba America Information Systems, Inc.*, 218 Cal. App. 4th 853, 160 Cal. Rptr. 3d 557 (2d Dist. 2013))

◇     Submitted an expert witness declaration concerning common benefit fee in MDL proceeding in federal court (*In re Genetically Modified Rice Litigation*, MDL Docket No. 1811, U.S. Dist. Ct., E.D. Mo. (2009))

◇     Submitted an expert witness declaration concerning settlement approval and fee application in national MDL class action proceeding (*In re Wal-Mart Wage and Hour Employment Practices Litigation*, MDL Docket No. 1735, U.S. Dist. Ct., D. Nev. (2009))

◇     Submitted an expert witness declaration concerning fee application in national MDL class action proceeding (*In re Dept. of Veterans Affairs (VA) Data Theft Litigation*, MDL Docket No. 1796, U.S. Dist. Ct., D. D.C. (2009))

◇     Submitted an expert witness declaration concerning common benefit fee in mass tort MDL proceeding in federal court (*In re Kugel Mesh Products Liability Litigation*, MDL Docket No. 1842, U.S. Dist. Ct., D. R.I. (2009))

◇     Submitted an expert witness declaration and supplemental declaration concerning common benefit fee in consolidated mass tort proceedings in state court (*In re All Kugel Mesh Individual Cases*, Master Docket No. PC-2008-9999, Superior Court, State of Rhode Island (2009))

◇     Submitted an expert witness declaration concerning fee application in wage and hour class action (*Warner v. Experian Information Solutions, Inc.*, Case No. BC362599, California Superior Court, Los Angeles County (2009))

◇     Submitted an expert witness declaration concerning process for selecting lead counsel in complex MDL antitrust class action (*In re Rail Freight Fuel Surcharge Antitrust Litigation*, MDL Docket No. 1869, U.S. Dist. Ct., D. D.C. (2008))

◇     Retained, deposed, and testified in court as expert witness on procedural issues in complex class

action (*Hoffman v. American Express*, Case No. 2001-022881, California Superior Court, Alameda County (2008))

◇ Submitted an expert witness declaration concerning fee application in wage and hour class action (*Salsgiver v. Yahoo! Inc.*, Case No. BC367430, California Superior Court, Los Angeles County (2008))

◇ Submitted an expert witness declaration concerning fee application in wage and hour class action (*Voight v. Cisco Systems, Inc.*, Case No. 106CV075705, California Superior Court, Santa Clara County (2008))

◇ Retained and deposed as expert witness on fee issues in attorney fee dispute (*Stock v. Hafif,* Case No. KC034700, California Superior Court, Los Angeles County (2008))

◇ Submitted an expert witness declaration concerning fee application in consumer class action (*Nicholas v. Progressive Direct*, Civil Action No. 06-141-DLB, U.S. Dist. Ct., E.D. Ky. (2008))

◇ Submitted expert witness declaration concerning procedural aspects of national class action arbitration  (*Johnson v. Gruma Corp.,* JAMS Arbitration No. 1220026252 (2007))

◇ Submitted expert witness declaration concerning fee application in securities case (*Drulias v. ADE Corp.,* Civil Action No. 06-11033 PBS, U.S. Dist. Court, D. Mass. (2007))

◇ Submitted expert witness declaration concerning use of expert witness on complex litigation matters in criminal trial (*U.S. v. Gallion, et al.*, No. 07-39 (WOB) U.S. Dist. Court, E. D. Ky. (2007))

◇ Retained as expert witness on fees matters (*Heger v. Attorneys' Title Guaranty Fund, Inc.,* No. 03-L-398, Illinois Circuit Court, Lake County, IL (2007))

◇ Retained as expert witness on certification in statewide insurance class action (*Wagner v. Travelers Property Casualty of America*, No. 06CV338, Colorado District Court, Boulder County, CO (2007))

◇ Testified as expert witness concerning fee application in common fund shareholder derivative case (*In Re Tenet Health Care Corporate Derivative Litigation*, Case No. 01098905, California Superior Court, Santa Barbara Cty, CA (2006))

◇ Submitted expert witness declaration concerning fee application in common fund shareholder derivative case (*In Re Tenet Health Care Corp. Corporate Derivative Litigation*, Case No. CV-03-11 RSWL, U.S. Dist. Court, C.D. Cal. (2006))

◇ Retained as expert witness as to certification of class action (*Canova v. Imperial Irrigation District*, Case No. L-01273, California Superior Court, Imperial Cty, CA (2005))

◇ Retained as expert witness as to certification of nationwide class action (*Enriquez v. Edward D. Jones & Co.,* Missouri Circuit Court, St. Louis, MO (2005))

◇ Submitted expert witness declaration on procedural aspects of international contract litigation filed in court in Korea (*Estate of Wakefield v. Bishop Han & Jooan Methodist Church* (2002))

**A-6**

◇ Submitted expert witness declaration as to contested factual matters in case involving access to a public forum (*Cimarron Alliance Foundation v. The City of Oklahoma City,* Case No. Civ. 2001-1827-C, U.S. Dist. Ct., W.D. Ok. (2002))

◇ Submitted expert witness declaration concerning reasonableness of class certification, settlement, and fees (*Baird v. Thomson Elec. Co.*, Case No. 00-L-000761, Cir. Ct., Mad. Cty, IL (2001))

*Expert Consultant*

◇ Retained as an expert consultant on class certification issues (*In re: Facebook, Inc., IPO Securities and Derivative Litigation*, No. 1:12-md-2389, U.S. Dist. Ct., S.D.N.Y. (2015))

◇ Retained as an expert consultant on class certification issues by a Fortune 100 Company

◇ Retained as an expert consultant on class action and procedure related issues (*Lange et al v. WPX Energy Rocky Mountain LLC*, Case No. #: 2:13-cv-00074-ABJ, U.S. Dist. Ct., D. Wy. (2013))

◇ Retained as an expert consultant on class action and procedure related issues (*Flo & Eddie, Inc., v. Sirius XM Radio, Inc.*, Case No. CV 13-5693, U.S. Dist. Court, C.D. Cal. (2013))

◇ Served as an expert consultant on substantive and procedural issues in challenge to legality of credit card late and over-time fees (*In Re Late Fee and Over-Limit Fee Litigation*, 528 F.Supp.2d 953 (N.D. Cal. 2007), *aff'd*, 741 F.3d 1022 (9th Cir. 2014))

◇ Retained as an expert on Class Action Fairness Act (CAFA) removal issues and successfully briefed and argued remand motion based on local controversy exception (*Trevino, et al. v. Cummins, et al.*,No. 2:13-cv-00192-JAK-MRW, U.S. Dist. Ct., C. D. Cal. (2013))

◇ Retained as an expert consultant on class action related issues by consortium of business groups (*In re Oil Spill by the Oil Rig Deepwater Horizon in the Gulf of Mexico on April 20, 2010*, MDL No. 2179, U.S. Dist. Court, E.D. La. (2012))

◇ Provided presentation on class certification issues in nationwide medical monitoring classes (*In re: National Football League Players' Concussion Injury Litigation,* MDL No. 2323, Case No. 2:12-md-02323-AB, U.S. Dist. Ct., E.D. Pa. (2012))

◇ Retained as an expert consultant on class action related issues in mutli-state MDL consumer class action (*In re Sony Corp. SXRD Rear Projection Television Marketing, Sales Practices & Prod. Liability Litig.*, MDL No. 2102, U.S. Dist. Court, S.D. N.Y. (2009))

◇ Retained as an expert consultant on class action certification, manageability, and related issues in mutli-state MDL consumer class action (*In re Teflon Prod. Liability Litig.*, MDL No. 1733, U.S. Dist. Court, S.D. Iowa (2008))

◇ Retained as an expert consultant/co-counsel on certification, manageability, and related issues in nationwide anti-trust class action (*Brantley v. NBC Universal*, No.- CV07-06101 CAS (VBKx), U.S. Dist. Court, C.D. Cal. (2008))

◇ Retained as an expert consultant on class action issues in complex multi-jurisdictional construction

dispute (*Antenucci, et al., v. Washington Assoc. Residential Partner, LLP, et al.,* Civil No. 08-04194, U.S. Dist. Court, E.D. Pa. (2008))

◇    Retained as an expert consultant on complex litigation issues in multi-jurisdictional class action litigation (*McGreevey v. Montana Power Company*, No. 08-35137, U.S. Court of Appeals for the Ninth Circuit)

◇    Retained as an expert consultant on class action and attorney fee issues in nationwide consumer class action (*Figueroa v. Sharper Image*, 517 F.Supp.2d 1292 (S.D. Fla. 2007))

◇    Retained as an expert consultant on attorney's fees issue in complex class action case (*Natural Gas Anti-Trust Cases Coordinated Proceedings*, D049206, California Court of Appeals, Fourth District (2007))

◇    Retained as an expert consultant on remedies and procedural matters in complex class action (*Sunscreen Cases*, JCCP No. 4352, California Superior Court, Los Angeles County (2006))

◇    Retained as an expert consultant on complex preclusion questions in petition for review to California Supreme Court (*Mooney v. Caspari,* Supreme Court of California (2006))

◇    Retained as an expert consultant on attorney fee issues in complex common fund case (*In Re Diet Drugs (Phen/Fen) Products Liability Litigation*, U.S. Dist. Court, E. D. Pa. (2006))

◇    Retained as an expert consultant on procedural matters in series of complex construction lien cases (*In re Venetian Lien Litigation*, Supreme Court of the State of Nevada (2005-2006))

◇    Served as an expert consultant on class certification issues in countywide class action (*Beauchamp v. Los Angeles Cty. Metropolitan Transp. Authority*, Case No. CV-98-00402-CBM, U.S. Dist. Ct., C.D. Cal.)

◇    Served as an expert consultant on class certification issues in state-wide class action (*Williams v. State of California*, Case No. 312-236, Cal. Superior Court, San Francisco)

◇    Served as an exert consultant on procedural aspects of complex welfare litigation (*Allen v. Anderson*, U.S. Dist. Ct., C.D. Cal., *appeal dism. as moot*, 199 F.3d 1331 (9th Cir. 1999))

## Ethics Opinions

◇    Provided expert opinion on issues of professional ethics in complex litigation matter (*In re Professional Responsibility Inquiries* (20013))

◇    Provided expert opinion on issues of professional ethics in complex litigation matter (*In re Professional Responsibility Inquiries* (20011))

◇    Provided expert opinion on issues of professional ethics in implicated by nationwide class action practice (*In re Professional Responsibility Inquiries* (2010))

◇    Provided expert opinion on issues of professional ethics implicated by complex litigation matter (*In re Professional Responsibility Inquiries* (2010))

◊     Provided expert opinion on issues of professional ethics in complex litigation matter (*In re Professional Responsibility Inquiries* (2007))

*Publications on Class Actions & Procedure*

◊     Newberg on Class Actions (sole author of supplements to 4th edition since 2008 and of 5th ed (2011-2015))

◊     *Profit for Costs*, 63 DePaul L. Rev. 587 (2014) (with Morris A. Ratner)

◊     *Procedure and Society: An Essay for Steve Yeazell,* 61 U.C.L.A. Rev. Disc. 136 (2013)

◊     *Supreme Court Round-Up – Part II*, 5 Class Action Attorney Fee Digest 331 (September 2011)

◊     *Supreme Court Round-Up – Part I*, 5 Class Action Attorney Fee Digest 263 (July-August 2011)

◊     *Class Action Fee Award* Procedures, 5 Class Action Attorney Fee Digest 3 (January 2011)

◊     *The Benefits of Class Action Lawsuits*, 4 Class Action Attorney Fee Digest 423 (November 2010)

◊     *Contingent Fees for Representing the Government: Developments in California Law*, 4 Class Action Attorney Fee Digest 335 (September 2010)

◊     *Supreme Court Roundup*, 4 Class Action Attorney Fee Digest 251 (July 2010)

◊     *SCOTUS Okays Performance Enhancements in Federal Fee Shifting Cases – At Least In Principle*, 4 Class Action Attorney Fee Digest 135 (April 2010)

◊     *The Puzzling Persistence of the "Mega-Fund" Concept*, 4 Class Action Attorney Fee Digest 39 (February 2010)

◊     *2009: Class Action Fee Awards Go Out With A Bang, Not A Whimper*, 3 Class Action Attorney Fee Digest 483  (December 2009)

◊     *Privatizing Government Litigation: Do Campaign Contributors Have An Inside Track?*, 3 Class Action Attorney Fee Digest 407  (October 2009)

◊     *Supreme Court Preview*, 3 Class Action Attorney Fee Digest 307  (August 2009)

◊     *Supreme Court Roundup*, 3 Class Action Attorney Fee Digest 259  (July 2009)

◊     *What We Now Know About How Lead Plaintiffs Select Lead Counsel (And Hence Who Gets Attorneys Fees!) in Securities Cases*, 3 Class Action Attorney Fee Digest 219 (June 2009)

◊     *Beware Of Ex Ante Incentive Award Agreements*, 3 Class Action Attorney Fee Digest 175 (May 2009)

◊     *On What a "Common Benefit Fee" Is, Is Not, and Should Be*, 3 Class Action Attorney Fee

DIGEST 87 (March 2009)

◇   *2009: Emerging Issues in Class Action Fee Awards*, 3 CLASS ACTION ATTORNEY FEE DIGEST 3 (January 2009)

◇   *2008: The Year in Class Action Fee Awards*, 2 CLASS ACTION ATTORNEY FEE DIGEST 465 (December 2008)

◇   *The Largest Fee Award – Ever!*, 2 CLASS ACTION ATTORNEY FEE DIGEST 337 (September 2008)

◇   *Why Are Fee Reductions Always 50%?: On The Imprecision of Sanctions for Imprecise Fee Submissions*, 2 CLASS ACTION ATTORNEY FEE DIGEST 295 (August 2008)

◇   *Supreme Court Round-Up*, 2 CLASS ACTION ATTORNEY FEE DIGEST 257 (July 2008)

◇   *Fee-Shifting For Wrongful Removals: A Developing Trend?*, 2 CLASS ACTION ATTORNEY FEE DIGEST 177 (May 2008)

◇   *You Cut, I Choose: (Two Recent Decisions About) Allocating Fees Among Class Counsel*, 2 CLASS ACTION ATTORNEY FEE DIGEST 137 (April 2008)

◇   *Why The Percentage Method?*, 2 CLASS ACTION ATTORNEY FEE DIGEST 93 (March 2008)

◇   *Reasonable Rates: Time To Reload The (*Laffey*) Matrix*, 2 CLASS ACTION ATTORNEY FEE DIGEST 47 (February 2008)

◇   *The "Lodestar Percentage:" A New Concept For Fee Decisions?*, 2 CLASS ACTION ATTORNEY FEE DIGEST 3 (January 2008)

◇   *Class Action Practice Today: An Overview, in* ABA SECTION OF LITIGATION, CLASS ACTIONS TODAY 4 (2008)

◇   *Shedding Light on Outcomes in Class Actions, in* CONFIDENTIALITY, TRANSPARENCY, AND THE U.S. CIVIL JUSTICE SYSTEM 20-59 (Joseph W. Doherty, Robert T. Reville, and Laura Zakaras eds. 2008) (with Nicholas M. Pace)

◇   *Finality in Class Action Litigation: Lessons From Habeas*, 82 N.Y.U. L. REV. 791 (2007)

◇   *The American Law Institute's New Approach to Class Action Objectors' Attorneys Fees*, 1 CLASS ACTION ATTORNEY FEE DIGEST 347 (November 2007)

◇   *The American Law Institute's New Approach to Class Action Attorneys Fees*, 1 CLASS ACTION ATTORNEY FEE DIGEST 307 (October 2007)

◇   *"The Lawyers Got More Than The Class Did!": Is It Necessarily Problematic When Attorneys Fees Exceed Class Compensation?*, 1 CLASS ACTION ATTORNEY FEE DIGEST 233 (August 2007)

◇   *Supreme Court Round-Up*, 1 CLASS ACTION ATTORNEY FEE DIGEST 201 (July 2007)

◇　　*On The Difference Between Winning and Getting Fees,* 1 CLASS ACTION ATTORNEY FEE DIGEST 163 (June 2007)

◇　　*Divvying Up The Pot: Who Divides Aggregate Fee Awards, How, and How Publicly?,* 1 CLASS ACTION ATTORNEY FEE DIGEST 127 (May 2007)

◇　　*On Plaintiff Incentive Payments,* 1 CLASS ACTION ATTORNEY FEE DIGEST 95 (April 2007)

◇　　*Percentage of What?,* 1 CLASS ACTION ATTORNEY FEE DIGEST 63 (March 2007)

◇　　*Lodestar v. Percentage: The Partial Success Wrinkle,* 1 CLASS ACTION ATTORNEY FEE DIGEST 31 (February 2007)(with Hirsh)

◇　　*The Fairness Hearing:  Adversarial and Regulatory Approaches*, 53 U.C.L.A. L. REV. 1435 (2006) (excerpted in THE LAW OF CLASS ACTIONS AND OTHER AGGREGATE LITIGATION 447-449 (Richard A. Nagareda ed., 2009))

◇　　*Why Enable Litigation?  A Positive Externalities Theory of the Small Claims Class Action*, 74 U.M.K.C. L. REV. 709 (2006)

◇　　*On What a "Private Attorney General" Is – And Why It Matters,* 57 VAND. L. REV. 2129(2004) (excerpted in COMPLEX LITIGATION 63-72 (Kevin R. Johnson, Catherine A. Rogers & John Valery White eds., 2009)).

◇　　*The Concept of Equality in Civil Procedure*, 23 CARDOZO L. REV. 1865 (2002) (selected for the Stanford/Yale Junior Faculty Forum, June 2001)

◇　　*A Transactional Model of Adjudication*, 89 GEORGETOWN L.J. 371 (2000)

◇　　*The Myth of Superiority*, 16 CONSTITUTIONAL COMMENTARY 599 (1999)

◇　　*Divided We Litigate:  Addressing Disputes Among Clients and Lawyers in Civil Rights Campaigns*, 106 YALE L. J. 1623 (1997) *(*excerpted in COMPLEX LITIGATION 120-123 (1998))

## Selected Presentations

◇　　*Recent Developments in Class Action Law,* MDL Transferee Judges Conference, Palm Beach, Florida, October 28, 2015 (forthcoming)

◇　　*Class Action Law,* 2015 Ninth Circuit/Federal Judicial Center Mid-Winter Workshop, Tucson, Arizona, January 26, 2015

◇　　*Recent Developments in Class Action Law,* MDL Transferee Judges Conference, Palm Beach, Florida, October 29, 2014

◇　　*Recent Developments in Class Action Law,* MDL Transferee Judges Conference, Palm Beach, Florida, October 29, 2013

◇　　*Class Action Remedies,* ABA 2013 National Institute on Class Actions, Boston, Massachusetts,

October 23, 2013

◇      *The Public Life of the Private Law: The Logic and Experience of Mass Litigation – Conference in Honor of Richard Nagareda,* Vanderbilt Law School, Nashville, Tennessee, September 27-28, 2013

◇      *Brave New World: The Changing Face of Litigation and Law Firm Finance,* Clifford Symposium 2013, DePaul University College of Law, Chicago, Illinois, April 18-19, 2013

◇      *Twenty-First Century Litigation: Pathologies and Possibilities: A Symposium in Honor of Stephen Yeazell,* UCLA Law Review, UCLA School of Law, Los Angeles, California, January 24-25, 2013

◇      *Litigation's Mirror: The Procedural Consequences of Social Relationships,* Sidley Austin Professor of Law Chair Talk, Harvard Law School, Cambridge, Massachusetts, October 17, 2012

◇      *Alternative Litigation Funding (ALF) in the Class Action Context – Some Initial Thoughts,* Alternative Litigation Funding: A Roundtable Discussion Among Experts, George Washington University Law School, Washington, D.C., May 2, 2012

◇      *The Operation of Preclusion in Multidistrict Litigation (MDL) Cases,* Brooklyn Law School Faculty Workshop, Brooklyn, New York, April 2, 2012

◇      *The Operation of Preclusion in Multidistrict Litigation (MDL) Cases,* Loyola Law School Faculty Workshop, Los Angeles, California, February 2, 2012

◇      *Recent Developments in Class Action Law and Impact on MDL Cases,* MDL Transferee Judges Conference, Palm Beach, Florida, November 2, 2011

◇      *Recent Developments in Class Action Law,* MDL Transferee Judges Conference, Palm Beach, Florida, October 26, 2010

◇      *A General Theory of the Class Suit,* University of Houston Law Center Colloquium, Houston, Texas, February 3, 2010

◇      *Unpacking The "Rigorous Analysis" Standard,* ALI-ABA 12th Annual National Institute on Class Actions, New York, New York, November 7, 2008

◇      *The Public Role in Private Law Enforcement: Visions from CAFA,* University of California (Boalt Hall) School of Law Civil Justice Workshop, Berkeley, California, February 28, 2008

◇      *The Public Role in Private Law Enforcement: Visions from CAFA,* University of Pennsylvania Law Review Symposium, Philadelphia, Pennsylvania, Dec. 1, 2007

◇      *Current CAFA Consequences: Has Class Action Practice Changed?,* ALI-ABA 11th Annual National Institute on Class Actions, Chicago, Illinois, October 17, 2007

◇      *Using Law Professors as Expert Witnesses in Class Action Lawsuits,* ALI-ABA 10th Annual National Institute on Class Actions, San Diego, California, October 6, 2006

◇      *Three Models for Transnational Class Actions,* Globalization of Class Action Panel, International

Law Association 2006 Conference, Toronto, Canada, June 6, 2006

◇   *Why Create Litigation?:  A Positive Externalities Theory of the Small Claims Class Action*, UMKC Law Review Symposium, Kansas City, Missouri, April 7, 2006

◇   *Marks, Bonds, and Labels:  Three New Proposals for Private Oversight of Class Action Settlements*, UCLA Law Review Symposium, Los Angeles, California, January 26, 2006

◇   Class Action Fairness Act, Arnold & Porter, Los Angeles, California, December 6, 2005

◇   ALI-ABA 9th Annual National Institute on Class Actions, Chicago, Illinois, September 23, 2005

◇   Class Action Fairness Act, UCLA Alumni Assoc., Los Angeles, California, September 9, 2005

◇   Class Action Fairness Act, Thelen Reid & Priest, Los Angeles, California, May 12, 2005

◇   Class Action Fairness Act, Sidley Austin, Los Angeles, California, May 10, 2005

◇   Class Action Fairness Act, Munger, Tolles & Olson, Los Angeles, California, April 28, 2005

◇   Class Action Fairness Act, Akin Gump Strauss Hauer Feld, Century City, CA, April 20, 2005

SELECTED OTHER LITIGATION EXPERIENCE

*United States Supreme Court*

◇   Co-counsel on petition for writ of certiorari concerning application of the voluntary cessation doctrine to government defendants (*Rosebrock v. Hoffman*, __ S. Ct. __ (2015))

◇   Authored *amicus* brief filed on behalf of civil procedure and complex litigation law professors concerning the importance of the class action lawsuit (*AT&T Mobility v. Concepcion,* No. 09-893, 131 S. Ct. 1740 (2011))

◇   Co-counsel in constitutional challenge to display of Christian cross on federal land in California's Mojave preserve (*Salazar v. Buono*, 130 S. Ct. 1803 (2010))

◇   Co-authored *amicus* brief filed on behalf of constitutional law professors arguing against constitutionality of Texas criminal law (*Lawrence v. Texas*, 539 U.S. 558 (2003))

◇   Co-authored *amicus* brief on scope of *Miranda* (*Illinois v. Perkins*, 496 U.S. 292 (1990))

*Consumer Class Action*

◇   Co-counsel in challenge to antenna-related design defect in Apple's iPhone4 (*Dydyk v. Apple Inc.,* 5:10-cv-02897-HRL, U.S. Dist. Court, N.D. Cal.) (complaint filed June 30, 2010)

◇   Co-class counsel in $8.5 million nationwide class action settlement challenging privacy concerns raised by Google's Buzz social networking program (*In re Google Buzz Privacy Litigation,* 5:10-cv-00672-JW, U.S. Dist. Court, N.D. Cal.) (amended final judgment June 2, 2011)

*Disability*

◊         Co-counsel in successful ADA challenge ($500,000 jury verdict) to the denial of health care in
          emergency room (*Howe v. Hull*, 874 F. Supp. 779, 873 F. Supp 72 (N.D. Ohio 1994))

*Employment*

◊         Co-counsel in challenges to scope of family benefit programs (*Ross v. Denver Dept. of Health*, 883
          P.2d 516 (Colo. App. 1994)); (*Phillips v. Wisc. Personnel Com'n*, 482 N.W.2d 121 (Wisc. 1992))

*Equal Protection*

◊         Co-counsel in (state court phases of) successful challenge to constitutionality of a Colorado ballot
          initiative, Amendment 2 (*Evans v. Romer*, 882 P.2d 1335 (Colo. 1994))

◊         Co-counsel (and *amici*) in challenges to rules barring military service by gay people (*Able v. United
          States*, 44 F.3d 128 (2d Cir. 1995); *Steffan v. Perry*, 41 F.3d 677 (D.C. Cir. 1994) (en banc))

◊         Co-counsel in challenge to the constitutionality of the Attorney General of Georgia's firing of staff
          attorney (*Shahar v. Bowers*, 120 F.3d 211 (11th Cir. 1997))

*Fair Housing*

◊         Co-counsel in successful Fair Housing Act case on behalf of group home (*Hogar Agua y Vida En el
          Desierto v. Suarez-Medina*, 36 F.3d 177 (1st Cir. 1994))

*Family Law*

◊         Co-counsel in challenge to constitutionality of Florida law limiting adoption (*Cox v. Florida Dept.
          of Health and Rehab. Srvcs.*, 656 So.2d 902 (Fla. 1995))

◊         Co-authored *amicus* brief in successful challenge to Hawaii ban on same-sex marriages (*Baehr v.
          Lewin*, 852 P.2d 44 (Haw. 1993))

*First Amendment*

◊         Co-counsel in successful challenge to constitutionality of Alabama law barring state funding for
          university student groups (*GLBA v. Sessions*, 930 F.Supp. 1492 (M.D. Ala. 1996))

◊         Co-counsel in successful challenge to content restrictions on grants for AIDS education materials
          (*Gay Men's Health Crisis v. Sullivan*, 792 F.Supp. 278 (S.D.N.Y. 1992))

*Landlord / Tenant*

◊         Lead counsel in successful challenge to rent control regulation (*Braschi v. Stahl Associates Co.*, 544
          N.E.2d 49 (N.Y. 1989))

*Police*

◊         Co-counsel in case challenging DEA brutality (*Anderson v. Branen*, 27 F.3d 29 (2nd Cir. 1994))

**A-14**

### *Racial Equality*

◊      Co-authored *amicus* brief for constitutional law professors challenging constitutionality of Proposition 209 *(Coalition for Economic Equity v. Wilson*, 110 F.3d 1431 (9th Cir. 1997))

### SELECTED OTHER PUBLICATIONS

### *Editorials*

◊      *Follow the Leaders*, NEW YORK TIMES, March 15, 2005
◊      *Play It Straight*, NEW YORK TIMES, October 16, 2004
◊      *Hiding Behind The Constitution*,  NEW YORK TIMES, March 20, 2004
◊      *Toward More Perfect Unions,* NEW YORK TIMES, November 20, 2003 (with Brad Sears)
◊      *Don't Ask, Don't Tell. Don't Believe It*, NEW YORK TIMES, July 20, 1993
◊      *AIDS: Illness and Injustice*, WASH. POST, July 26, 1992 (with Nan D. Hunter)

### BAR ADMISSIONS

◊      Massachusetts (2008)
◊      California (2004)
◊      District of Columbia (1987) (inactive)
◊      Pennsylvania (1986) (inactive)
◊      U.S. Supreme Court (1993)
◊      U.S. Court of Appeals for the First Circuit (2010)
◊      U.S. Court of Appeals for the Fifth Circuit (1989)
◊      U.S. Court of Appeals for the Ninth Circuit (2004)
◊      U.S. Court of Appeals for the Eleventh Circuit (1993)
◊      U.S. Court of Appeals for the D.C. Circuit (1993)
◊      U.S. District Courts for the Central District of California (2004)
◊      U.S. District Court for the District of the District of Columbia (1989)
◊      U.S. District Court for the District of Massachusetts (2010)
◊      U.S. District Court for the Northern District of California (2010)

# EXHIBIT B

*In re:  High-Tech Employee Antitrust Litigation*
Case No. 11-CV-02509-LHK
Expert Declaration of William B. Rubenstein

**EXHIBIT B**

Partial List of Documents Reviewed by Professor Rubenstein
(other than case law and scholarship on the relevant issues)

1.  PACER Docket (as of May 5, 2015)
2.  Joint Notice of Removal of Action From State Court Pursuant to 28 U.S.C. §§ 1331, 1332, 1441, 1446 &1453 (May 23, 2011) (Dkt. #1)
3.  Declaration of Cody Harris in Support of Notice of Removal of Action from State Court Pursuant to 28 U.S.C. §§ 1331, 1332, 1441, 1446 &1453 (May 4, 2011) (Dkt. #2)
4.  Consolidated Amended Complaint (Sept. 13, 2011) (Dkt. #65)
5.  Defendants' Notice of Motion, Joint Motion to Dismiss the Consolidated Amended Complaint, and Memorandum of Points and Authorities in Support Thereof (Oct. 13, 2011) (Dkt. #79)
6.  Order Granting in Part and Denying in Part Defendants' Joint Motion to Dismiss; Denying Lucasfilm Ltd.'s Motion to Dismiss (Apr. 18 2012) (Dkt. #119)
7.  Plaintiffs' Notice of Motion and Motion for Class Certification, and Memorandum of Law in Support (Oct. 1, 2012) (Dkt. #187)
8.  Opposition to Plaintiffs' Motion for Class Certification (Nov. 12, 2012) (Dkt. #209)
9.  Order Granting in Part Denying in Part Motion for Class Certification (Apr. 5, 2013) (Dkt. #382)
10. Notice of Motion and Motion for Preliminary Approval of Class Action Settlements; Memorandum of Points and Authorities in Support Thereof (Sept. 21, 2013) (Dkt. #501)
11. [Proposed] Order Granting Plaintiffs' Motion for Conditional Class Certification and Preliminary Approval of Partial Class Action Settlements with Defendants Intuit Inc., Lucasfilm, Ltd., and Pixar, Approving Form and Manner of Notice, and Scheduling Final Approval Hearing (Sept. 21, 2013) (Dkt. #501-1)
12. Declaration of Joseph R. Saveri in Support of Plaintiffs' Motion for Preliminary Approval of Class Action Settlement (Sept. 21, 2013) (Dkt. #503)
13. Order Granting Plaintiffs' Supplemental Motion for Class Certification (Oct. 24, 2013) (Dkt. #531)
14. Order Granting Plaintiffs' Motion for Conditional Class Certification and Preliminary Approval of Partial Class Action Settlements with Defendants Intuit Inc., Lucasfilm, Ltd., and Pixar, Approving Form and Manner of Notice, and Scheduling Final Approval Hearing (Oct. 30, 2013) (Dkt. #540)
15. Notice of Motion and Motion by Intel Corporation for Summary Judgment Pursuant to Fed.R.Civ.Pro. 56 (Jan. 9, 2014) (Dkt. #554)
16. Defendants' Joint Notice of Motion and Motion for Summary Judgment Based on Motion to Exclude Testimony of Dr. Edward E. Leamer, Ph.D.; Memorandum of Points and Authorities in Support Thereof (Jan. 9, 2014) (Dkt. #556)
17. Notice of Motion and Motion for Attorneys' Fees, Reimbursement of Expenses, and Service Awards (March 5, 2014) (Dkt. #718)

18. [Proposed] Order Granting Plaintiffs' Motion for Attorneys' Fees, Reimbursement of Expenses, and Service Awards (March 5, 2014) (Dkt. #718-1)

19. Declaration of Kelly M. Dermody in Support of Plaintiffs' Motion for Attorneys' Fees, Reimbursement of Expenses and Service Awards (March 5, 2014) (Dkt. #719)

20. Exhibit 8 (March 5, 2014) (Dkt. #719-8)

21. Order Denying Defendants' Individual Motions for Summary Judgment (March 28, 2014) (Dkt. #771)

22. Order Re: Defendants' Motions Regarding Dr. Leamer and Defendants' Joint Motion for Summary Judgment Based on Motion to Exclude Testimony of Dr. Leamer (Apr. 4, 2014) (Dkt. #788)

23. [Proposed] Order Granting Plaintiffs' Motion for Final Approval of Class Action Settlements (Apr. 10, 2014) (Dkt. #812)

24. Order Granting Plaintiffs' Motion for Final Approval of Class Action Settlements with Pixar, Lucasfilm, and Intuit (May 16, 2014) (Dkt. #915)

25. Order Granting Plaintiffs' Motion for Attorneys' Fees, Reimbursement of Expenses, and Service Awards (May 16, 2014) (Dkt. #916)

26. Notice of Motion and Motion for Preliminary Approval of Class Action Settlement; Memorandum of Points and Authorities in Support Thereof (May 22, 2014) (Dkt. #920)

27. [Proposed] Order Granting Plaintiffs' Motion for Preliminary Approval of Class Action Settlement with Defendants Adobe Systems Incorporated, Apple Inc., Google Inc., and Intel Corporation, Approving Form and Manner of Notice, and Scheduling Final Approval Hearing (May 22, 2014) (Dkt. #920-1)

28. Declaration of Kelly M. Dermody in Support of Plaintiffs' Motion for Preliminary Approval of Class Action Settlement (May 22, 2014) (Dkt. #921)

29. Exhibit 1 (May 22, 2014) (Dkt. #921-1)

30. Exhibit 2 (May 22, 2014) (Dkt. #921-2)

31. Exhibit 3 (May 22, 2014) (Dkt. #921-3)

32. Exhibit 4 (May 22, 2014) (Dkt. #921-4)

33. Exhibit 5 (May 22, 2014) (Dkt. #921-5)

34. Exhibit 6 (May 22, 2014) (Dkt. #921-6)

35. Class Representative Michael Devine's Memorandum in Opposition to Motion for Preliminary Approval of Class Action Settlement (June 5, 2014) (Dkt. #934)

36. ~~[Proposed]~~ Final Judgment (June 9, 2014) (Dkt. #936)

37. Reply Memorandum of Points and Authorities in Support of Motion for Preliminary Approval of Class Action Settlement (June 12, 2014) (Dkt. #938)

38. Exhibit A (June 12, 2014) (Dkt. #938-1)

39. ~~[Proposed]~~ Amended Final Judgment (June 20, 2014) (Dkt. #947)

40. LHK Notice of Motion to Intervene (July 7, 2014) (Dkt. #952)

41. Order Denying Plaintiffs' Motion for Preliminary Approval of Settlements with Adobe, Apple, Google, and Intel (Aug. 8, 2014) (Dkt. #974)

42. Notice of Motion and Motion for Preliminary Approval of Class Action Settlement; Memorandum of Points and Authorities in Support Thereof (Jan. 15, 2015) (Dkt. #1032)

43. [Proposed] Order Granting Plaintiffs' Motion for Preliminary Approval of Class Action Settlement with Defendants Adobe Systems Incorporated, Apple Inc., Google Inc., and Intel Corporation, Approving Form and Manner of Notice, and Scheduling Final Approval Hearing (Jan. 15. 2015) (Dkt. #1032-1)

44. Declaration of Kelly M. Dermody in Support of Plaintiffs' Motion for Preliminary Approval of Class Action Settlement (Jan. 15, 2015) (Dkt. #1033)
45. Exhibit 1 (Jan. 15, 2015) (Dkt. #1033-1)
46. Exhibit 2 (Jan. 15, 2015) (Dkt. #1033-2)
47. Exhibit 3 (Jan. 15, 2015) (Dkt. #1033-3)
48. Exhibit 4 (Jan. 15, 2015) (Dkt. #1033-4)
49. Exhibit 5 (Jan. 15, 2015) (Dkt. #1033-5)
50. Exhibit 6 (Jan. 15, 2015) (Dkt. #1033-6)
51. Exhibit 7 (Jan. 15, 2015) (Dkt. #1033-7)
52. Declaration of Mark Fichtner (Jan 15, 2015) (Dkt. #1034)
53. Defendants' Brief in Support of Plaintiffs' Motion for Preliminary Approval of Class Action Settlement (Jan. 15, 2015) (Dkt. #1039)
54. Joinder of Class Representative Michael Devine to Motion for Preliminary Approval of Class Action Settlement and Request for Modification of Settlement Notice (Jan. 16, 2015) (Dkt. #1041)
55. Declaration of Michael Devine (Jan. 16, 2015) (Dkt. #1041-1)
56. Order Granting Plaintiffs' Motion for Preliminary Approval of Class Action Settlement with Defendants Adobe Systems Incorporated, Apple Inc., Google Inc., and Intel Corporation, Approving Form and Manner of Notice, and Scheduling Final Approval Hearing (March 3, 2015) (Dkt. #1054)
57. Order Re Motions for Attorney's Fees and Costs (March 3, 2015) (Dkt. #1055)

# EXHIBIT C

*In re High-Tech Employee Antitrust Litigation*
*No. 11-CV-02509-LHK*
*Expert Declaration of William B. Rubenstein*

**EXHIBIT C**
List of Northern District of California Cases
Affirming Class Action Fee Awards
In Past 2 Years

1.   *Barnes v. The Equinox Group, Inc.*, 2013 WL 3988804 (N.D. Cal. Aug. 2, 2013)

2.   *Bellinghausen v. Tractor Supply Company*, 2015 WL 1289342 (N.D. Cal. Mar. 20, 2015)

3.   *Burden v. SelectQuote Insurance Services*, 2013 WL 3988771 (N.D. Cal. Aug. 2, 2013)

4.   *Chao v. Aurora Loan Services, LLC*, 2015 WL 294823 (N.D. Cal. Jan. 21, 2015)

5.   *Ching v. Siemens Industry, Inc.*, 2014 WL 2926210 (N.D. Cal. June 27, 2014)

6.   *Cordy v. USS-POSCO Industries*, 2014 WL 1724311 (N.D. Cal. Apr. 28, 2014)

7.   *Cruz v. Sky Chefs, Inc.*, 2014 WL 7247065 (N.D. Cal. Dec. 19, 2014)

8.   *Custom LED, LLC v. eBay, Inc*, 2014 WL 2916871 (N.D. Cal. June 24, 2014)

9.   *de Mira v. Heartland Employment Service, LLC*, 2014 WL 1026282 (N.D. Cal. Mar. 13, 2014)

10.  *Dyer v. Wells Fargo Bank, N.A.*, 2014 WL 5369395 (N.D. Cal. 2014)

11.  *In re Apple iPhone/iPod Warranty Litigation*, 2014 WL 1478707 (N.D. Cal. Apr. 14, 2014)

12.  *In re Google Referrer Header Privacy Litigation*, 2015 WL 1520475 (N.D. Cal. Mar. 31, 2015)

13.  *Jordan v. Paul Financial, LLC*, 2013 WL 6086037 (N.D. Cal. Nov. 19, 2013)

14.  *Larsen v. Trader Joe's Company*, 2014 WL 3404531 (N.D. Cal. July 11, 2014)

15.  *Miller v. Ghirardelli Chocolate Company*, 2015 WL 758094 (N.D. Cal. 2015)

16.  *Moore v. Verizon Communications Inc.*, 2014 WL 588035 (N.D. Cal. Feb. 14, 2014)

17.  *Nwabueze v. AT&T Inc.*, 2014 WL 324262 (N.D. Cal. Jan. 29, 2014)

18.  *Pierce v. Rosetta Stone, Ltd.*, 2013 WL 5402120 (N.D. Cal. Sept. 26, 2013)

19.  *Pokorny v. Quixtar, Inc.*, 2013 WL 3790896 (N.D. Cal. July 18, 2013)

20.  *Ralston v. Mortgage Investors Group, Inc.*, 2013 WL 5290240 (N.D. Cal. Sept. 19, 2013)

21.  *Rieckborn v. Velti PLC*, 2015 WL 468329 (N.D. Cal. Feb. 3, 2015)

22.  *Rose v. Bank of America Corporation*, 2014 WL 4273358 (N.D. Cal. Aug. 29, 2014)

23.  *Smith v. Qwest Communications Co., LLC*, 2013 WL 3200592 (N.D. Cal. June 24, 2013)

24.  *Vedachalam v. Tata Consultancy Services, Ltd*, 2013 WL 3941319 (N.D. Cal. July 18, 2013)

25.  *Walsh v. Kindred Healthcare*, 2013 WL 6623224 (N.D. Cal. Dec. 16, 2013)

26.  *Williams v. SuperShuttle International, Inc.*, 2015 WL 685994 (N.D. Cal. Feb. 12, 2015)

# EXHIBIT D

*In re High-Tech Employee Antitrust Litigation*
*No. 11-CV-02509-LHK*
*Expert Declaration of William B. Rubenstein*

## **EXHIBIT D**

List of Cases with Settlements in the $400 Million Rrange

1.    *In re Adelphia Comms. Corp. Sec. & Deriv. Litig.*, 2006 WL 3378705 (S.D.N.Y. Nov. 16, 2006)

2.    *In re BankAmerica Corp. Sec. Litig.*, 210 F.R.D. 694 (E.D. Mo. 2002)

3.    *In re Currency Conversion Fee Antitrust Litig.*, 263 F.R.D. 110 (S.D.N.Y. 2009)

4.    *In re Dynegy, Inc. Sec. Litig.*, No. H-02-1571 Document 677 (S.D. Tex. July 8, 2005)

5.    *In re Lucent Techs., Inc. Sec Litig.*, 327 F. Supp. 2d 426 (D.N.J. 2004)

6.    *In re Qwest Commc'ns. Int'l, Inc. Sec. Litig.*, 2006 U.S. Dist. LEXIS 71267 (D. Colo. Sept. 28, 2006)

7.    *In re Raytheon Co. Sec. Litig.*, No. 99-12142-PBS Document 626 (D. Mass. 2004)

8.    *In re Waste Management, Inc. Sec. Litig.*, No. H-99-2183 Document 254 (S.D. Tex. May 10, 2002)

# EXHIBIT E

## SETTLEMENT AGREEMENT

THIS SETTLEMENT AGREEMENT (the "Settlement Agreement" or "Settlement") is made and entered into on ~~May 22, 2014~~ January 7, 2015, by and between: (a) Mark Fichtner, Siddharth Hariharan, ~~and~~ Daniel Stover, and Michael Devine (collectively, the "~~Moving~~Named Plaintiffs") individually and the Class of individuals they represent ("Plaintiffs" or the "Class," defined below), on the one hand; and (b) Defendants Adobe Systems Incorporated, Apple Inc., Google Inc., and Intel Corporation (collectively, the "Settling Defendants~~")~~")," on the other hand.

**WHEREAS,** Mark Fichtner, Siddharth Hariharan, Daniel Stover, and Michael Devine (collectively, "Named Plaintiffs" or "Class Representatives") are Court-appointed Class Representatives for the certified Class in the action captioned *In re High-Tech Employee Antitrust Litigation*, Case No. 11-CV-02509 LHK (the "Action") pending against Adobe Systems Incorporated, Apple Inc., Google Inc., Intel Corporation, Intuit Inc., Lucasfilm Ltd., and Pixar (collectively, the "Defendants") in the United States District Court for the Northern District of California (the "Court");

**WHEREAS,** on September 13, 2011, the Named Plaintiffs filed a Consolidated Amended Complaint (Dkt. 65) that alleges, among other things, that Defendants entered into agreements with each other not to recruit or cold call each other's employees in violation of federal and state antitrust and unfair competition laws;

**WHEREAS,** the Consolidated Amended Complaint further alleges, among other things, that, as a result of the agreements, Defendants undercompensated the Named Plaintiffs and the Class (collectively referred to as "Plaintiffs");

WHEREAS, the Consolidated Amended Complaint asserts claims under federal and state antitrust and unfair competition laws and seeks recovery of, among other things, unpaid compensation, interest, treble damages, costs and attorneys' fees;

WHEREAS, Intuit Inc., Lucasfilm Ltd., and Pixar previously reached settlements with Plaintiffs;

WHEREAS, the Settling Defendants have continued to vigorously defend the litigation;

WHEREAS, Plaintiffs and the Settling Defendants (collectively the "Settling Parties") have engaged in substantial arm's-length negotiations in an effort to resolve all claims that have been, or could have been, asserted in the Action, including through confidential mediation discussions with David A. Rotman of the firm of Gregorio, Haldeman & Rotman, and with Hon. Layn Phillips (Ret.) of the firm Irell & Manella, which negotiations resulted in the Settlement Agreement;

WHEREAS, on May 22, 2014, Class Counsel moved for preliminary approval of a proposed $324.5 million settlement with the Settling Defendants;

WHEREAS, Michael Devine, through his counsel, opposed the proposed $324.5 million settlement and presented his opposition to the Court through a written submission in opposition to Plaintiffs' motion for preliminary approval and orally at the preliminary approval hearing held June 19, 2014;

WHEREAS, the Court denied preliminary approval of the proposed $324.5 million settlement by order dated August 8, 2014;

**WHEREAS**, the Settling Defendants thereafter filed a petition for a writ of mandamus with the United States Court of Appeals for the Ninth Circuit, which subsequently ordered briefing and has set argument on the writ petition for March 2015;

**WHEREAS**, the Settling Parties, having reviewed the August 8 order and having considered the risks associated with the petition for writ of mandamus, subsequently negotiated the $415 million settlement embodied in this Settlement Agreement;

**WHEREAS**, the Settling Defendants have denied and continue to deny that they engaged in any wrongdoing of any kind, or that they violated or breached any law, regulation, or duty owed to the Plaintiffs, and they further deny that they have liability as a result of any and all allegations made in the Consolidated Amended Complaint or as part of the Action. The Settling Defendants are entering into the Settlement Agreement to eliminate the burdens, distractions, expense, and uncertainty of further litigation; and

**WHEREAS,** based on their analysis of the merits of the claims and the benefits provided to the Class by the Settlement Agreement, including an evaluation of a number of factors including the substantial risks of continued litigation and the possibility that the litigation if not settled now might not result in any recovery whatsoever for the Class or might result in a recovery that is less favorable to the Class, Class Counsel and Devine Counsel believe that it is in the interest of all members of the Class to resolve finally and completely their claims against the Settling Defendants and that the terms of the Settlement Agreement are in the best interests of the Class and are fair, reasonable, and adequate;.

**NOW, THEREFORE,** in consideration of the promises, agreements, covenants, representations, and warranties set forth herein, and other good and valuable consideration provided for herein, the Settling Parties agree to a full, final and complete settlement of the Action on the following terms and conditions:

provided for herein, the Settling Parties agree to a full, final and complete settlement of the Action on the following terms and conditions:

## I.   GENERAL TERMS OF THE SETTLEMENT AGREEMENT

### A.   Definitions

In addition to terms identified and defined elsewhere in this Settlement Agreement, and as used herein, the terms below shall have the following meanings:

1.     "Action" means the lawsuits pending in the United States District Court for the Northern District of California, that were consolidated in the matter captioned, *In re High-Tech Employee Antitrust Litigation*, 11-CV-02509 LHK.

2.     "Attorneys' Fees and Expenses" means the amounts approved by the Court for payment to Class Counsel, including attorneys' fees, costs, and litigation expenses, as described in Section VII.A herein.

3.     "Class" means the class certified by the Court on October 24, 2013 (Dkt. 531): "All natural persons who work in the technical, creative, and/or research and development fields that were employed on a salaried basis in the United States by one or more of the following: (a) Apple from March 2005 through December 2009; (b) Adobe from May 2005 through December 2009; (c) Google from March 2005 through December 2009; (c) Google from March 2005 through December 2009; (2009; (d) Intel from March 2005 through  December 2009; (e) Intuit from June 2007 through December 2009; (f) Lucasfilm from January 2005 through December 2009; or (g) Pixar from January 2005 through December 2009" (collectively, the "Class Period"). Excluded from the Class are: retail employees, corporate officers, members of the boards of directors, and senior executives of all Defendants.  The exact titles included in the Class ("Class Positions") are identified in Exhibit C to this Agreement.

4.     "Class Counsel" means the law firms of Lieff Cabraser Heimann &

Bernstein, LLP, the Joseph Saveri Law Firm, Inc., Berger & Montague, P.C., and Grant & Eisenhofer, P.A.

5.    "Class Member" means any person who meets the "Class" definition above.

6.    "Co-Lead Class Counsel" means the law firms Lieff Cabraser Heimann & Bernstein, LLP and the Joseph Saveri Law Firm, Inc.

7.    "Consolidated Amended Complaint" means the Consolidated Amended Complaint filed in the Action on September 13, 2011 (Dkt. 65).

8.    "Court" means the United States District Court for the Northern District of California.

9.    "Defendants" means Adobe Systems Incorporated, Apple Inc., Google Inc., Intel Corporation, Intuit Inc., Lucasfilm, Ltd., and Pixar.

10.    "Devine Counsel" means the law firm of Girard Gibbs LLP, counsel for Named Plaintiff Michael Devine.

11.    "Devine Counsel Fees" means any amount approved by the Court for payment to Devine Counsel, including attorneys' fees, costs, and litigation expenses, as described in Section VII.A herein.

12 Corporation, Intuit Inc., Lucasfilm, Ltd., and Pixar.

10.    "Effective Date" is the effective date of the Settlement Agreement, as defined in Section II.F herein.

11 13.    "Escrow Agent" means Citibank, N.A., which, assuming it agrees to do so, shall enter into an Escrow Agreement to carry out the tasks more fully detailed in that agreement, including to receive, hold, invest, and disburse the Settlement Fund, subject to the direction of the Notice Administrator. The Settling Parties may replace Citibank, N.A. with another mutually agreeable financial institution.

12 14.    "Final Approval" means the order of the Court granting final approval of the

Settlement Agreement pursuant to Federal Rule of Civil Procedure 23(e).

~~13~~15. "Final Approval Hearing" or "Fairness Hearing" means the hearing at which the Court will consider Plaintiffs' motion for judgment and final approval of the Settlement.

~~14.     "Moving Plaintiffs" means Mark Fichtner, Siddharth Hariharan, and Daniel Stover.~~

~~15~~16. "Named Plaintiffs" and "Class Representatives" mean Michael Devine, Mark Fichtner, Siddharth Hariharan, and Daniel Stover. ~~Fichtner, Siddharth Hariharan, and Daniel Stover.~~

~~16~~17. "Notice" means the Notice of Proposed Settlement of Class Action Lawsuit and

Fairness Hearing, attached as Exhibit A , which is to be mailed directly to Class Members.

~~17~~18. "Notice Administrator" means the entity which has been designated to provide notice to the Class and administer the Settlement Fund pursuant to Section II.A below and by order of the Court.

~~18~~19. "Order and Final Judgment of Dismissal" means the Order which shall be submitted to the Court as described in Section II.E herein and entered by the Court as described in Section II.F herein.

~~19~~20. "Plaintiffs" means the Named Plaintiffs and the Class, collectively.

~~20.~~   21.     "Plan of Allocation" means the formula by which the Settlement Fund will be distributed to Class Members as well as the timing and other aspects of the distribution attached as Exhibit B.

~~21~~   22.     "Plan of Notice" means the plan for distributing the Notice to Class Members.

2223.   "Preliminary Approval" means the Court's Order preliminarily approving the Settlement, the Plan of Notice, the form of Notice, the Plan of Allocation, and other related matters.

2324.   "Protective Order" means the Stipulated Protective Order filed in the Action (Dkt.

95).

2425.   "Released Claims" means those claims specified in Section V.A. *infra*.

2526.   "Released Parties" means Adobe, Apple, Google and Intel, and their officers, directors, affiliates and employees, and the related entities specified in Section V.A *infra*.

26.   27.   "Settlement," "Agreement," and "Settlement Agreement" each mean the instant settlement terms agreed to by the Settling Parties as reflected in this Settlement Agreement and attachments hereto, including Attachment 1 and the Plan of Allocation.

2728.   "Settling Defendants" means Adobe Systems Incorporated, Apple Inc., Google Inc., and Intel Corporation.

2829.   "Settling Defendants' Counsel" means the law firms of Jones Day; Keker & Van Nest LLP; Mayer Brown LLP; Munger, Tolles, & Olson LLP; and O'Melveny & Myers LLP.

2930.   "Settlement Fund" means the threefour hundred twenty-fourfifteen million five hundred thousand dollars ($324,500415,000,000.00).) subject to the operation of Section VIII.T, if applicable, that the Settling Defendants shall pay as described in Section III.A to be held, invested, administered, and disbursed pursuant to this Settlement Agreement.

### B. Best Efforts to Effectuate the Settlement

Named Plaintiffs and the Settling Defendants agree to cooperate and work together in order to effectuate the Settlement, including after it has received Final Approval, as set forth in Section II.E. The Settling Defendants shall have no obligation to support any motion for Preliminary or Final Approval of the Settlement, except to confirm representations set forth in Section VIII.S, if so requested by Plaintiffs.

## II. COURT APPROVAL OF SETTLEMENT AND CLASS NOTICE

### A. Retention of Notice Administrator

Plaintiffs shall retain a Notice Administrator, which shall be responsible for the notice administration process, calculation of payments to the Class based on the Plan of Allocation approved by the court, distribution to Class Members, withholding and paying applicable taxes, and other duties as provided herein. Plaintiffs shall obtain approval by the Court of the choice of

Notice Administrator. The Notice Administrator shall sign and be bound by the Protective Order entered in the Action and be required to agree in writing in a form approved by the Settling Defendants, such approval not to be unreasonably withheld, to treat information it receives or generates as part of the notice administration process as confidential and to use such information solely for the purposes of notice administration, administering the Settlement Fund, including withholding taxes, and functions necessarily associated therewith or by this Agreement, and shall keep the information confidential, including from Class Counsel. and Devine Counsel. The fees and expenses of the Notice Administrator shall be paid exclusively out of the Settlement Fund. Prior to the Effective Date, expenses incurred by the Notice Administrator relating to this Settlement and approved by the Court shall be paid solely from the Settlement Notice Fund, as set forth in Section III.A.1, upon invoice to Co-Lead Class Counsel and Settling Defendants' Counsel. In no event shall the Settling Defendants be separately responsible for fees or

expenses of the Notice Administrator.

Defendants' Counsel.  In no event shall the Settling Defendants be separately responsible for fees or expenses of the Notice Administrator.

    **B.**    **Preliminary Approval and Notice of Settlement**

    1.    Mark Fichtner, Siddharth Hariharan, and Daniel Stover Plaintiffs, by and through Co-Lead Class Counsel, shall file with the Court, promptly after the execution of this Settlement Agreement and no later than May 22, 2014 or such other date set by the Court, a motion for Preliminary Approval of the Settlement and Exhibits to the Settlement Agreement, which will include a Proposed Preliminary Approval Order, a proposed Notice of Proposed Settlement of Class Action Lawsuits and Fairness Hearing ("Notice"), and a Plan of Allocation.  Michael Devine, through Devine Counsel, shall join in and otherwise support the motion for Preliminary Approval.  The Settling Defendants will then provide timely notice of such submission pursuant to the Class Action Fairness Act, 28 U.S.C. § 1715(b). § 1715(b).

    2.    Co-Lead Class Counsel shall provide the Settling Defendants and Devine Counsel with the draft motion for preliminary approval, proposed order, and supporting documents at least 5 days, waivable by Settling Defendants and Devine Counsel, prior to the date such motion is filed.

    3.    In the event that the Court preliminarily approves the Settlement, Co-Lead Class Counsel shall, in accordance with Rule 23(c)(2) of the Federal Rules of Civil Procedure, direct the Notice Administrator approved by the Court to provide the Class with Notice as ordered by the Court.

    4.    If the Court denies without leave to re-file the motion for Preliminary Approval without leave to file a revised motion for Preliminary Approval, and appellate review is not sought or is denied, the case will proceed as if no settlement had been attempted, and the Settling Parties shall be returned to their respective procedural

postures, i.e., *status quo* as of ~~April 24, 2014~~January 7, 2015, so that the Settling Parties

may take such litigation steps that Plaintiffs or

the Settling Defendants otherwise would have been able to take absent the pendency of this

Settlement Agreement.  ~~—~~In the event the Settlement does not receive Preliminary

Approval and appellate review is not sought or is denied, the Settling Parties will

negotiate and submit for Court approval a modified case schedule.

     5.   ~~Within~~No later than twenty (20) days after the date of the Preliminary Approval

Order:

     ~~(a)~~.   Co-Lead Class Counsel shall direct Heffler Claims Group, subject

to and consistent with the extant Protective Order and all existing confidentiality and

non-disclosure agreements, to transmit to Class Counsel, the Defendants, and the

Notice Administrator the employee ID numbers and/or hashed social security

numbers for all employees to whom Heffler Claims Group sent notices in

connection with the certification of the litigation class in the Action (the "Prior

Notice Recipients").  For the avoidance of doubt, "Prior Notice Recipients" shall

include any employee that a Defendant or Heffler Claims Group has identified as

a Class Member and shall not include persons who have been determined not to be

Class Members.  Specifically with respect to Google, "Prior Notice Recipients"

shall mean those current and former Google employees to whom reminder notices

were sent on or about March 13, 2014, as well as the other current and former

Google employees who were subsequently informed by Heffler Claims Group

that they were Class Members.  Heffler Claims Group shall transmit such

information in a secure manner that has received the prior approval of Co-Lead

Class Counsel and the Settling Defendants.

     ~~(b)~~.   Heffler Claims Group shall transmit to the Notice Administrator,

subject to and consistent with the extant Protective Order and all existing confidentiality

and non-disclosure agreements the full legal name, last known physical address (including the best information concerning each address, as determined using the national change of address database, information provided by Class Members, and other sources), and the compensation data and dates of employment in job titles identified in Exhibit C for the Prior Notice Recipients.  Heffler Claims Group shall transmit such information in a secure manner that has received the prior approval of Co-Lead Class Counsel and the Settling Defendants;

(c).  Each Defendant shall, at its option, either transmit the social security numbers for the Prior Notice Recipients employed by that Defendant to the Notice Administrator or request that Heffler Claims Group do so.  In either case, the information shall be transmitted pursuant to and in a manner consistent with the extant Protective Order and all existing confidentiality and non-disclosure agreements.[JKS1]

6.     The Settling Parties intend that the Notice Administrator provide actual notice to each Class Member, to the extent practicable.  Notice shall be mailed to all Class Members identified using the data provided to the Notice Administrator at approximately the same time.  The Notice Administrator shall ensure that the Notice is mailed and posted on the internet within

14 days of receipt of all Defendants' Class Member data.  Settling Defendants shall be provided with the form of notice to be distributed as well as the content of any website relating to administration of the Settlement no later than three business days before the Notice is distributed.

### C.     **Objections**

Unless the Court provides otherwise, objections to the Settlement, if any, must be submitted in writing, and must include a detailed description of the basis of the objection. Objections must be filed with the Court, with copies served on Co-Lead Class Counsel and Settling Defendants' Counsel, postmarked on or before a date certain to be specified on the

Notice, which will be forty-five (45) days after the Notice was initially mailed to Class Members.  No one may appear at the Final Approval Hearing for the purpose of objecting to the Settlement without first having filed and served his or her objection(s) in writing postmarked on or before forty-five (45) days after the Notice was mailed to Class Members.

       **D.**       **Class Member Opt-Out**

       1.       Any Class Member may request exclusion from the Class by "opting out." This procedure is in addition to the opt out opportunities provided to the Class in January through March 2014.  Class Members who wish to opt out of the Class must complete and timely submit to the Notice Administrator a request for exclusion.  To be effective, such requests for exclusion must state the Class Member's full legal name and address, and the approximate dates of his or her employment with one or more of the Defendants.  All requests for exclusion must be signed and dated by the Class Member or his or her legal representative, and must be (1) mailed to the Notice Administrator via First Class United States Mail and postmarked by a date certain to be specified on the Notice, which will be

       45 calendar days after the Notice Administrator makes the initial mailing of the Notice or (2) received by the Notice Administrator by that date, provided, however, that if a Class Member mails the Opt-Out Statement pursuant to option (1), it will be effective only if received by the Notice Administrator on or before 10 calendar days after the end of the Opt-Out Period.  The end of the "Opt-Out Period" shall be 45 calendar days after the Notice Administrator makes the initial mailing.  Within eleven calendar days after the end of the Opt-Out Period, the Notice Administrator shall provide to all counsel for the Settling Parties all opt-out statements that are timely received and shall prepare a summary of the opt outs to be filed with the Court, which shall include the total number of Class Members who have opted out.  Individuals who opt out are not entitled to any monetary award under the Settlement.

2.      Class Counsel, Settling Defendants, ~~and~~ Settling Defendants' Counsel and Devine Counsel shall not solicit or encourage any Class Member to opt out of the Class or object to the Settlement.

**E.      Final Approval**

1.      The Final Approval Hearing shall be noticed for no earlier than 95 days from the date of the motion for preliminary approval to allow the Settling Defendants sufficient time to complete their obligations under the Class Action Fairness Act.

2.      Prior to the Final Approval Hearing, on the date set by the Court, the Named Plaintiffs, through Co-Lead Class Counsel, shall submit a motion for final approval by the Court of the Settlement between the Settling Parties and Class Members (who are not properly excluded as provided herein) and the entry of an Order granting Final Approval of the Settlement that:

a.      finds the Settlement and its terms to be fair, reasonable and adequate within the meaning of Rule 23(e) of the Federal Rules of Civil Procedure and directing its consummation pursuant to its terms;

b.      finds that the Notice given constitutes due, adequate and sufficient notice, and meets the requirements of due process and any applicable laws;

c.      provides for service payments from the Settlement Fund (as defined in Section VI herein) to the Named Plaintiffs in addition to whatever monies each will receive from the Settlement Fund pursuant to the Court-approved Plan of Allocation;

d.      provides for payment of Attorneys' Fees and Expenses from the Settlement Fund (as provided in Section VII.A herein);

e.      provides for payment of Devine Counsel Fees from the Settlement Fund (as provided in Section VII.A herein);

f.      sets forth the method for allocating the Settlement Fund (set forth in the Plan of Allocation attached as Exhibit B);

fg.     directs that the Action be dismissed with prejudice as against Adobe, Apple, Google, and Intel, without costs to the Settling Parties;

g

h.     approves the release of claims specified herein as binding and effective as to all Class Members (who are not otherwise properly excluded as provided herein) permanently barring and enjoining all Class Members (who are not otherwise properly excluded as provided herein) from asserting any Released Claims (as defined in Section V.A herein);

hi.     reserves exclusive and continuing jurisdiction over the Settlement, including the Settlement Fund (as defined in Section III.A herein) and the administration, consummation and interpretation of this Settlement Agreement; and

ij.     directs that an Order and Final Judgment of Dismissal be entered as between the Settling Parties in the Action.

3.     ~~Co-Lead Class~~Michael Devine, through Devine Counsel, shall ~~provide~~join in and otherwise support the ~~Settling Defendants with the draft~~ motion for ~~final approval and supporting documents at least 5 days prior to the date such motion is filed~~Final Approval.

4.     Co-Lead Class Counsel shall provide the Settling Defendants and Devine Counsel with the draft motion for final approval and supporting documents at least 5 days, waivable by Settling Defendants and Devine Counsel, prior to the date such motion is filed.

5.     If so required by the Court in connection with approval of the Settlement, the Settling Parties agree to accept non-material or procedural changes to this Settlement Agreement.

However, the Settling Parties are not obligated to accept any changes in the monetary amount of relief or any other substantive change to their respective obligations.

56.     The Notice Administrator's affidavit of compliance with Notice requirements must be filed 30 days prior to the Final Approval Hearing.

**F.      Effective Date of the Settlement**

The Settlement shall become final and effective upon the occurrence of all of the following ("Effective Date"):("Effective Date"):

1.      The Settlement receives Final Approval by the Court as required by Rule 23(e) of the Federal Rules of Civil Procedure;

2.      As provided for in Section II.E herein, entry is made of the Order and Final Judgment of Dismissal; and

3.      Completion of any appeal(s) from the Court's Order and Final Judgment of Dismissal and/or Order Granting Final Approval of the Settlement (including any such order on remand from a decision of an appeals court), provided, however, that a modification or reversal on appeal of any amount of the fees and expenses awarded by the Court from the Settlement Fund, or the amount of any service awards to the Plaintiffs shall not by itself prevent this Settlement from becoming final and effective if all other aspects of the final judgment have been affirmed.  If no appeal is filed from the Court's order finally approving the Settlement under Rule 23(e) of the Federal Rules of Civil Procedure, the Effective Date shall be the date on which the time for any such appeals has lapsed.

**III.      CONSIDERATION FOR SETTLEMENT**

**A.      Monetary Settlement Fund**

1.      Subject to the provisions hereof, and in full, complete and final settlement and release of all Released Claims against the Settling Defendants and the Released Parties in the Action, any claim for Attorneys' Fees and Expenses, Devine Counsel Fees, administrative costs, and any and all amounts to be paid to Class Members, within ten (10) days from the date of the Court's Order granting Preliminary Approval of the Settlement, the Settling Defendants shall deposit or cause to be deposited by wire transfer to the Escrow Agent approved by the court $1,000,000.00 (the "Settlement Notice Fund") payable in lawful money of the United

States. Within seven (7) calendar days or five (5) business days, whichever is longer, from the Effective Date, Settling Defendants shall deposit or cause to be deposited by wire transfer to the Escrow Agent the remaining $~~323,500~~414,000.~~00.~~000 payable in lawful money of the United States, subject to the operation of Section VIII.T, if applicable. Under no circumstances shall the Settling Defendants or Released Parties be required to pay more than the total of $~~324,500~~415,000.~~00.~~,000. The Settlement Fund is the maximum amount that the Settling Defendants shall be required to pay for settlement of the Action. The Settlement Fund will cover compensation to the Class, additional service awards to the Named Plaintiffs, the fees and costs of the Escrow Agent and Notice Administrator, the employer's and employee's shares of payroll taxes associated with the Settlement, ~~and~~ Attorneys' Fees and Expenses to Class Counsel, and Devine Counsel Fees. No portion of the Settlement Fund will revert to the Settling Defendants unless the Settlement is terminated, as described in Section VIII.A, or is not finally approved or does not become effective for any reason.

2. The Escrow Agent will place the Settlement Fund in an interest-bearing account (the "Account") created by order of the Court intended to constitute a "qualified settlement fund" ("QSF") within the meaning of Section 1.468B-1 of the Treasury Regulations ("Treasury Regulations") promulgated under the U.S. Internal Revenue Code of 1986, as amended (the "Code"). Settling Defendants shall be the "transferor" to the QSF within the meaning of Section

1.468B-1(d)~~()~~ (1) of the Treasury Regulations with respect to the Settlement Fund or any other amount transferred to the QSF pursuant to this Settlement Agreement. The Notice Administrator shall be the "administrator" of the QSF within the meaning of Section 1.468B-2(k)(3) of the Treasury Regulations, responsible for causing the filing of all tax returns required to be filed by or with respect to the QSF, paying from the QSF any taxes owed by or with respect to the QSF, and complying with any applicable information

reporting or tax withholding requirements imposed by Section 1.468B-2(*l*)(2) of the Treasury Regulations or any other applicable law on or with respect to the QSF. Settling Defendants and the Notice Administrator shall reasonably cooperate in providing any statements or making any elections or filings necessary or required by applicable law for satisfying the requirements for qualification as a QSF, including any relation-back election within the meaning of Section 1.468B-1(j) of the Treasury Regulations.

3.      The Settling Defendants, Settling Defendants' Counsel, and Released Parties shall have no liability, obligation or responsibility with respect to the investment, disbursement, or other administration or oversight of the Settlement Fund or QSF and shall have no liability, obligation or responsibility with respect to any liability, obligation or responsibility of the Escrow Agent or Notice Administrator, including but not limited to, liabilities, obligations or responsibilities arising in connection with the investment, disbursement or other administration of the Settlement Fund and QSF.

4.      The Settlement Fund shall constitute a special award to the Class and to any Class Members receiving a payment and no portion shall be considered as a payment of overtime, salary, wages, and/or compensation under the terms of any company benefits plan or for any purpose except for tax purposes to the extent contemplated by Section IV.B. Any of the Settlement Fund's taxes due as a result of income earned or payments made by the Settlement Fund will be imposed upon and paid from the Settlement Fund. Interest earned by the Settlement Fund (less any tax imposed upon such interest) shall be for the benefit of the Class, less reasonable Attorneys' Fees and Expenses approved by the Court, any Devine Counsel Fees approved by the Court, any Court-approved service award to the Named Plaintiffs, and payment of any and all administrative or other Court-approved expenses associated with the Action or Settlement. The Settling Defendants, Settling Defendants' Counsel, and Released Parties shall have no liability, obligation or responsibility for any such taxes, Attorneys' Fees and Expenses, Devine Counsel Fees,

interest, service awards or administrative or other expenses or for any reporting requirements relating thereto.

5.    The Settling Defendants' transfer of the Settlement Fund to the Escrow Agent shall constitute full and complete satisfaction of their obligations under this Section III and any and all Released Claims.  Following the Settling Defendants' transfer of the Settlement Fund, no Settling Defendant nor any Released Party shall have any liabilities, obligations or responsibilities with respect to the payment, disbursement, disposition or distribution of the Settlement Fund.  Class Members shall look solely to the Settlement Fund for settlement and satisfaction against any Settling Defendant and any Released Party of all claims that are released herein, all Attorneys' Fees and Expenses, all Devine Counsel Fees, all service awards to Named Plaintiffs, and all administrative or other costs and expenses arising out of or related to the Action or the Settlement.  Class Members shall not under any circumstances be entitled to any further payment from any Settling Defendant or any Released Party with respect to the Released Claims, the Action or the Settlement.  In the event that the Settlement Agreement becomes final and effective, payment of the Settlement Fund will fully satisfy any and all Released Claims.  Except as provided by Order of the Court, no Class Member shall have any interest in the Settlement Fund or any portion thereof.

6.    Notwithstanding any effort, or failure, of the Notice Administrator or the Parties to treat the Account as a QSF, any tax liability, together with any interest or penalties imposed thereon, incurred by any Settling Defendant or any Released Party resulting from income earned on the Settlement Fund or the Account or payments made from the Account (or the receipt of any payment under this paragraph) shall be reimbursed from the Account in the amount of such tax liability, interest or penalties promptly upon and in no event later than five (5) days after any Settling Defendant's or any Released Party's written request to the Notice Administrator.

## IV.   DISTRIBUTION OF SETTLEMENT FUND

### A.   Eligibility

1.   Any Class Member who does not opt out pursuant to Section II.D will be deemed eligible for a payment hereunder.

2.   Any Class Member who does not opt out pursuant to Section II.D is subject to and bound by the releases set forth in Section V.

3.   Payments to Named Plaintiffs and Class Members shall not be considered as a payment of overtime, salary, wages and/or compensation under the terms of any company benefit plan or for any purpose except for tax purposes as provided under Section IV.B.  The receipt of settlement payments shall not affect the amount of any contribution to or level of benefits under any company benefit plan.

4.   Within a reasonable time period after the Effective Date, the Notice Administrator shall render a determination as to the monetary award that should be paid to each eligible Class Member from the Settlement Fund based on the methodology set forth in the Plan of Allocation as approved by the Court.

5.   The Notice Administrator's determination as to the monetary award that should be paid to each Class Member shall be final and not subject to review by, or appeal to, any court, mediator, arbitrator or other judicial body, including without limitation this Court.  As will be reflected in the Final Approval Order, Class Counsel, Devine Counsel and the Released Parties shall have no responsibility, and may not be held liable, for any determination reached by the Notice Administrator. responsibility, and may not be held liable, for any determination reached by the Notice Administrator.

6.   The Notice Administrator shall reserve $250,000.00 from the Settlement Fund to resolve any Class Member disputes or payment issues ("Dispute Fund") that arise within 180 days of the first date on which distribution of the Settlement Fund is made to Class Members.

7.     The total amount of all monetary awards paid to Class Members, as determined by the Notice Administrator, shall not exceed the net amount of the Settlement Fund after all costs, expenses, service awards, Attorneys' Fees and Expenses, Devine Counsel Fees, and taxes have been paid, and the Dispute Fund has been reserved or fully utilized.

8.     In the event monies remain as residue in the Settlement Fund following all distribution efforts approved by the Court and payment of all costs, expenses, service awards, Attorneys' Fees and Expenses, Devine Counsel Fees, and taxes (including, for example, residue resulting from Class Members' failure to negotiate checks or the Dispute Fund not having been fully utilized) ("Residue"), the Settling Parties shall jointly move the Court for an order disposing of all such funds by *cy pres* distribution to charitable and/or non-profit organizations whose principal purpose is the education, development, or advancement of workers as approved by the Court or by further distribution to the Class.

B.     **Settlement Fund Distribution Procedures**

1.     **Allocation**

Without admitting liability, the Settling Parties agree that one-sixth of the payments to Class Members is allocable to wages, one-sixth of such payments is allocable to lost mobility and career opportunities, and two-thirds of such payments is allocable to statutory multiplier damages.  The ~~parties~~Settling Parties agree that no portion of the Settlement Fund is attributable to government penalties or fines.  ~~—~~Class Counsel, ~~Moving~~Devine Counsel, Named Plaintiffs, and the Class represent and agree that they have not received and/or relied upon any advice and/or representations from Settling Defendants and/or Settling Defendants' Counsel as to taxes, including as to the allocation of payments for tax purposes, the necessity for withholding, and/or the taxability of the consideration paid pursuant to this Agreement, whether pursuant to federal, state or local income tax statutes or otherwise.  Co-Lead Class Counsel represents that neither Named

Plaintiffs nor Class Co-Lead Class Counsel represents that neither Moving Plaintiffs nor Class Devine Counsel has provided any advice as to the taxability of payments received pursuant to this Agreement.

**2.** **Payment of Federal, State and Local Taxes**

a. Payments to eligible Named Plaintiffs and other Class Members from the Account will be subject to applicable tax withholding and reporting requirements pursuant to the allocation set out in Section IV.B.1, and shall be made net of all applicable employment taxes, including, without limitation, federal, state and local income tax withholding and applicable FICA taxes.

b. The Notice Administrator, as administrator of the QSF, and on behalf of the QSF, is expected to and shall carry out all the duties and obligations of the QSF in accordance with the Code and Treasury Regulations and all other applicable law, including in respect of all withholding and employment taxes and all information reporting requirements with respect thereto.

c. The Notice Administrator, as administrator of the QSF, shall report that portion of the Settlement Fund payments made by the QSF allocable to wages and lost mobility and career opportunities to each eligible Class Member and to the United States Internal Revenue Service ("IRS") and to other appropriate taxing authorities (each of the IRS and any such other taxing authority, a "Taxing Authority," and collectively, "Taxing Authorities") on an IRS Form W-2, or any other applicable form for the reporting of amounts treated as wages for tax purposes. Such amounts shall be subject to applicable employment taxes and withholding taxes, including without limitation FICA, FUTA, Medicare and any state and local taxes, including without limitation SUTA. without limitation FICA, FUTA, Medicare and any state and local taxes, including without limitation SUTA.

d. The Notice Administrator shall pay from the QSF the employee's

and employer's shares of all U.S. federal, state, and local employment taxes, including without limitation the employer's share of FICA, FUTA, Medicare and any state and local taxes, including without limitation SUTA, required to be paid by an employee or employer on amounts as allocable to wages and lost mobility and career opportunities (all such U.S. federal, state and local taxes, collectively the "Payroll Taxes"). Neither ~~Moving~~Named Plaintiffs, their counsel, Class Members nor the Notice Administrator shall seek payment for Payroll Taxes from the Settling Defendants or any Released Party.

e.     The Notice Administrator, as administrator of the QSF, shall report that portion of the Settlement Fund payments made by the QSF allocable to statutory multiplier damages to each eligible Class Member and all applicable Taxing Authorities, to the extent required by law, under the Class Member's name and U.S. federal taxpayer identification number on IRS Forms 1099, or other applicable forms, and such payments shall be made without deduction for taxes and withholdings, except as required by law, as determined by the Notice Administrator, as administrator of the QSF making such payments.

f.     The Notice Administrator shall be responsible to satisfy from the Settlement Fund any and all federal, state and local employment and withholding taxes, including, without limitation, federal, state and local income tax withholding, and any U.S. federal taxes including without limitation FICA, FUTA, and Medicare and any state employment taxes including without limitation SUTA.  The Notice Administrator shall promptly provide to any Settling Defendant the information and documentation (including copies of applicable IRS and state forms) reasonably requested by the Settling Defendant with respect to the payment or remittance of such employment and withholding taxes. The Notice Administrator shall satisfy all federal, state, local, and other reporting requirements (including without limitation any applicable reporting with respect to attorneys' fees and

other costs subject to reporting), and any and all taxes, together with interest and penalties imposed thereon, and other obligations with respect to the payments or distributions from the Settlement Fund not otherwise addressed herein.

g.     The Notice Administrator shall be responsible for procuring any required tax forms from the Class Members prior to making any such payments or distributions.

h.     For avoidance of doubt, neither the Settling Defendants nor any Released Party nor Class Counsel nor Devine Counsel shall have any liability, obligation or responsibility whatsoever for tax obligations arising from payments to any Class Member, or based on the activities and income of the QSF. In addition, neither the Settling Defendants nor any Released Party shall have any liability, obligation or responsibility whatsoever for tax obligations arising from payments to Class Counsel or Devine Counsel. The QSF will be solely responsible for its tax obligations. Each Class Member will be solely responsible for his/her tax obligations. Each Class Counsel and Devine Counsel attorney or firm will be solely responsible for his/her/its tax obligations.

## V.     **RELEASES**

### A.     **Release And Covenant Not To Sue**

1.     Upon the Effective Date, each Named Plaintiff and Class Member (who is not otherwise properly excluded as provided herein) (the "Releasors") shall release, forever discharge and covenant not to sue the Settling Defendants, their past or present parents, subsidiaries, divisions, affiliates, stockholders, officers, directors, insurers, employees, agents, attorneys, and any of their legal representatives (and the predecessors, heirs, executors, administrators, successors, purchasers, and assigns of each of the foregoing) (the "Released Parties") from all claims, whether federal or state, known or unknown, asserted or unasserted, regardless of legal theory, arising from or related to the facts, activities or circumstances

alleged in the Consolidated Amended Complaint (Dkt. 65) or any other purported restriction on competition for employment or compensation of Named Plaintiffs or Class Members (collectively, the "Released Claims"). _Released Claims shall be released up to the Effective Date of the Settlement whether or not alleged in the Consolidated Amended Complaint and whether or not any Class Member objects to the Settlement. _For the avoidance of doubt, this Agreement shall not be construed to release any local, state or federal claim arising out of allegations of any product defect, discrimination, or personal or bodily injury, and shall not be construed to release any local, state or federal claim arising out of allegations of unlawful overtime or violations of ERISA or similar statutes that are unrelated to the facts, activities, or circumstances alleged in the Consolidated Amended Complaint or to the payments or distributions made pursuant to this Settlement.

2. Each Releasor expressly agrees that, upon the Effective Date, he, she, or it waives and forever releases with respect to the Released Claims any and all provisions, rights and benefits conferred by either (a) § 1542 of the California Civil Code, which reads:

> Section 1542.  General release; extent.  A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.

or (b) any law of any state or territory of the United States, or principle of common law, which is similar, comparable or equivalent to § 1542 of the California Civil Code.

3. Upon the Effective Date, Class Members shall be bound by the dismissal with prejudice of the Action and the release of the Released Claims set forth in this Section V.

## VI.    PLAINTIFF SERVICE AWARDS

At the Fairness Hearing, Co-Lead Class Counsel will seek Court approval for service awards to each of the Named Plaintiffs for their participation in the Action. Devine

Counsel may file papers in support of a service award to Named Plaintiff Michael Devine.

The proposed service awards will be in addition to any monetary award to the Named Plaintiffs under the Plan of Allocation, and are subject to Court approval. Such service awards shall be paid by the Notice Administrator solely out of the Settlement Fund upon Court approval. Settling Defendants will take no position on the application for such service awards for requests that are $25,000.00 or less per Named Plaintiff including Devine (exclusive of previous service awards received in connection with other settlements). The amount requested will be consistent with class action jurisprudence in this District.

These service payments shall constitute a special award to Named Plaintiffs receiving such payments and shall not be considered as a payment of overtime, salary, wages and/or compensation under the terms of any company benefit plan or for any other purpose except to the extent required for tax purposes. The receipt of service payments shall not affect the amount of any contribution to or level of benefits under any company benefit plan. ~~any contribution to or level of benefits under any company benefit plan.~~

## VII. ATTORNEYS' FEES AND EXPENSES AND ADMINISTRATIVE EXPENSES

### A. Attorneys' Fees and Expenses

1. Prior to the deadline for objections to the Settlement pursuant to Section II.C, Co-Lead Class Counsel may apply to the Court for an award of Attorneys' Fees and Expenses incurred on behalf of the Plaintiffs. All Attorneys' Fees and Expenses and any interest due any counsel (to the extent any interest is awarded) shall be payable solely out of the Settlement Fund in such amounts as the Court orders. No Settling Defendant nor any Released Party has any liability or responsibility for fees, costs, expenses, or interest, including without limitation attorneys' fees, costs, expenses, expert fees and costs or administrative fees or costs.

~~2~~2.    Devine Counsel may apply separately to the Court for attorneys' fees and reimbursement of expenses (Devine Counsel Fees).  If awarded, all Devine Counsel Fees and any interest due thereon shall be payable solely out of the Settlement Fund separately from the Attorneys' Fees and Expenses to Class Counsel.  No Settling Defendant, no Class Counsel, nor any Released Party has any liability or responsibility for any Devine Counsel Fees or interest.

3.    Upon the Effective Date, Class Counsel, Devine Counsel and ~~Moving~~Named Plaintiffs, individually and on behalf of the Class and each individual Class Member, hereby irrevocably and unconditionally release, acquit, and forever discharge any claim that they may have against the Settling Defendants or any Released Party for Attorneys' Fees and Expenses, Devine Counsel Fees or costs associated with this Action or Class Counsel's or Devine Counsel's representation of Named Plaintiffs and/or the Class.

~~3~~4.    All Attorneys' Fees and Expenses, Devine Counsel Fees, and any interest due any counsel (to the extent any interest is awarded) for the Plaintiffs shall be payable solely out of the Settlement Fund and may be deducted from the Settlement Fund prior to the distribution to Class Members, but only on or after entry of an order by the Court approving any Attorneys' Fees and Expenses or Devine Counsel Fees and only on or after the Effective Date.  The undersigned Co-Lead Class Counsel may withdraw from the ~~Account and allocate amongst counsel for the Plaintiffs the Attorneys Fees and Expenses so awarded.~~ Account and allocate amongst counsel for the Plaintiffs the Attorneys' Fees and Expenses so awarded.

5.    Settling Defendants will not comment on or oppose Class Counsel's request for Attorneys' Fees so long as the request for fees is no greater than ~~twenty-five percent (25%) of the Settlement Fund, a figure that the Settling Parties acknowledge has been recognized by courts as a reasonable benchmark in various class actions~~$81,125,000

(approximately 19.54%) of the $415 million Settlement Fund.

      6.    Devine Counsel will request Devine Counsel Fees in an amount not to exceed $4,525,000 (approximately 1.09%) of the $415 million Settlement Fund. Settling Defendants and Class Counsel retain the right to comment on or oppose any application for Devine Counsel Fees.

    **B.**    **Costs of Notice and Administration**

    All costs of notice and administration shall be paid for solely from the Settlement Fund. Under no circumstances shall Settling Defendants or any Released Party be otherwise obligated to pay for costs of Notice or any costs to administer the Settlement.

**VIII.**    **OTHER CONDITIONS**

    **A.**    **Settlement Does Not Become Effective**

    In the event that the Settlement Agreement is terminated, is not finally approved (following the exhaustion of any appellate review) or does not become effective for any reason, judgment is not entered in accordance with this Agreement, or such judgment does not become final, then (a) this Settlement Agreement shall be null and void and of no force and effect, (b) any payments of the Settlement Fund, including the $1,000,000.00 Settlement Notice Fund transferred by Settling Defendants 10 days from Preliminary Approval and any and all interest earned thereon less monies expended toward settlement administration, shall be returned to the Settling Defendants within ten (10) business days from the date the Settlement Agreement becomes null and void, and (c) any release pursuant to Section V herein shall be of no force or effect. In such event, the case will proceed as if no settlement has been attempted, and the Settling Parties shall be returned to their respective procedural postures, i.e., *status quo* as of ~~April 24, 2014~~January 7, 2015, so that the Settling Parties may take such litigation steps that Plaintiffs or the Settling Defendants otherwise would have been able to take absent the pendency of this

Settlement.  ~~However,~~ any reversal, vacating, or modification on appeal of (1) any amount of the fees and expenses awarded by the Court to Class Counsel or Devine Counsel, or (2) any determination by the Court to award less than the amount requested in Attorneys' Fees and Expenses ~~or,~~ service awards to Named Plaintiffs, or Devine Counsel Fees shall not give rise to any right of termination or otherwise serve as a basis for termination of this Settlement Agreement.

In the event the Settlement does not become effective, the Settling Parties will negotiate and submit for Court approval a case schedule.

**B.** **Preservation of Rights**

The Settling Parties expressly reserve all of their rights, contentions and defenses if this Settlement does not become final and effective in accordance with the terms of this Settlement Agreement.  The Settling Parties further agree that this Settlement Agreement, whether or not it shall become effective pursuant to Section II.F herein, and any and all negotiations, documents and discussions associated with it shall be without prejudice to the rights of any party, shall not be deemed or construed to be an admission or evidence of any violation of any statute or law, of any liability or wrongdoing by any Settling Defendant, any Released Party, or any other Defendant, and shall not be deemed or construed to be an admission or evidence of the truth of any of the claims or allegations made in the Action, whether in this case or any other action or proceeding.  The Settling Parties further acknowledge and agree that the negotiations and discussions that led to this Settlement are fully protected from disclosure by Federal Rule of Evidence 408 and California Evidence Code Sections 1119 and 1152.

**C.** **Authority to Settle**

The undersigned represent and warrant each has authority to enter into this ~~Settlement~~

Settlement Agreement on behalf of the party indicated below his or her name.

**D.** **No Assignment**

Class Counsel and ~~Moving~~ Named Plaintiffs represent and warrant that they have not assigned or transferred, or purported to assign or transfer, to any person or entity, any claim or any portion thereof or interest therein, including, but not limited to, any interest in the Action or any related action, and they further represent and warrant that they know of no such assignments or transfers on the part of any Class Member.

### E. **Binding Effect**

This Settlement Agreement shall be binding upon, and inure to the benefit of, the successors and assigns of the Settling Parties and the Released Parties. Without limiting the generality of the foregoing, each and every covenant and agreement herein by the ~~Moving~~ Named Plaintiffs and Class Counsel shall be binding upon all Class Members.

### F. **Mistake**

In entering and making this Agreement, the Settling Parties assume the risk of any mistake of fact or law. If the Settling Parties, or any of them, should later discover that any fact they relied upon in entering into this Agreement is not true, or that their understanding of the facts or law was incorrect, the Settling Parties shall not be entitled to seek rescission of this Agreement, or otherwise attack the validity of the Agreement, based on any such mistake. This Agreement is intended to be final and binding upon the Settling Parties regardless of any mistake of fact or law.

### G. **Advice of Counsel**

Except as set forth in this Agreement, the Settling Parties represent and warrant that they have not relied upon or been induced by any representation, statement or disclosure of the other Settling Parties or their attorneys or agents, but have relied upon their own knowledge and judgment and upon the advice and representation of their own counsel in entering into this Agreement. Each Settling Party warrants to the other Settling Parties that it has carefully read this Agreement, knows its contents, and has freely executed it. Each

Settling Party, by execution of this Agreement, represents that it has been represented by independent counsel of its choice throughout all negotiations preceding the execution of this Agreement.

      **H.**      **Integrated Agreement**

This Settlement Agreement, including exhibits, contain the entire, complete, and integrated statement of each and every term and provision of the Settlement Agreement agreed to by and among the Settling Parties.  This Settlement Agreement shall not be modified in any respect except by a writing executed by the undersigned in the representative capacities specified, or others who are authorized to act in such representative capacities.

      **I.**      **Headings**

The headings used in this Settlement Agreement are intended for the convenience of the reader only and shall not affect the meaning or interpretation of this Settlement Agreement.

      **J.**      **No Drafting Presumption**

All counsel to all Settling Parties hereto have materially participated in the drafting of this

Settlement Agreement.  No party hereto shall be considered to be the drafter of this Settlement

Agreement or any provision hereof for the purpose of any statute, case law or rule of interpretation or construction that would or might cause any provision to be construed against the drafter hereof.

      **K.**      **Choice of Law**

All terms of this Settlement Agreement shall be governed by and interpreted according to the substantive laws of the State of California without regard to its choice of law or conflict of laws principles.

**L.      Consent to Jurisdiction and Choice of Exclusive Forum**

Any and all disputes arising from or related to the Settlement, the Settlement Agreement, or distribution of the Settlement Fund, including Attorneys' Fees and Expenses or Devine Counsel Fees, must be brought by a Settling Defendant, a Released Party, Plaintiffs, and/or each member of the Class, exclusively in the Court.  Settling Defendants, Plaintiffs and each member of the Class hereby irrevocably submit to the exclusive and continuing jurisdiction of the Court for any suit, action, proceeding or dispute arising out of or relating to this Settlement Agreement or the applicability or interpretation of this Settlement Agreement, including, without limitation, any suit, action, proceeding or dispute relating to the release provisions herein, except that (a) this paragraph shall not prohibit any Released Party from asserting in the forum in which a claim is brought that the release herein is a defense, in whole or in part, to such claim, and (b) in the event that such a defense is asserted in that forum and this Court determines that it cannot bar the claim, this paragraph shall not prohibit the determination of the merits of the defense in that forum.

**M.      Enforcement of Settlement**

Nothing in this Settlement Agreement prevents Settling Defendants or any Released Party from enforcing or asserting any release herein, subject to the provisions of Section V herein.  Notwithstanding any other provision of this Settlement Agreement, this Settlement Agreement and the releases contained herein may be pleaded as a full and complete defense to any action, suit or other proceeding that has been or may be instituted, prosecuted or attempted by any Moving Named Plaintiff or Class Member (who is not otherwise properly excluded as provided herein) with respect to any Released Claims and may be filed, offered and received into evidence and otherwise used for such defense.

**N.      Severability**

In the event any one or more of the provisions of this Settlement Agreement shall

for any reason be held to be illegal, invalid or unenforceable in any respect, such illegality, invalidity or unenforceability shall not affect any other provision if Settling Defendants' Counsel, Class Counsel and Class Devine Counsel mutually agree to proceed as if such illegal, invalid, or unenforceable provision had never been included in the Settlement Agreement.

**O.    No Admission**

This Settlement shall not be deemed an admission of liability or wrongdoing on the part of any of the Settling Defendants, who have denied, and continue to deny that they engaged in any wrongdoing of any kind, or violated any law or regulation, or breached any duty owed to the Named Plaintiffs or the Class Members.  Settling Defendants further deny that they are liable to or owe any form of compensation or damages to, anyone with respect to the alleged facts or causes of action asserted in the Action.  Settling Defendants do not, by entering into this Settlement Agreement, admit that any or all of them have caused any damage or injury to any Class member as a result of the facts alleged or asserted in the Action and do not admit that Plaintiffs' calculations or methods of calculations of alleged damages are accurate or appropriate.

**P.    Execution in Counterparts**

This Settlement Agreement may be executed in counterparts.  Facsimile or PDF signatures shall be considered as valid signatures as of the date they bear.

signatures shall be considered as valid signatures as of the date they bear.

**Q.    Appeals**

The proposed order and final judgment shall provide that any Class Member that wishes to appeal the Court's Final Approval Order and Final Judgment, which appeal will delay the distribution of the Settlement Fund to the Class, shall post a bond with this Court in an amount to be determined by the Court as a condition of prosecuting such appeal.

**R.    Calculation of Time**

To the extent that any timeframe set out in this Settlement Agreement is ambiguous, said ambiguity shall be resolved by applying the conventions contained in Rule 6 of the Federal Rules of Civil Procedure.

**S.**      <u>**Representations to the Court About Settlement Negotiations**</u>

The Settling Parties confirm, and will so represent to the Court, that these settlement negotiations were arm's-length and facilitated through the aid of the mediators described above, that there was no discussion of attorneys' fees prior to negotiating the Settlement, and that there are no commitments between the Settling Parties beyond what is in the Settlement. Class Counsel, Devine Counsel and Settling Defendants' Counsel agree this Settlement is beneficial to the Class and will not represent otherwise to the Court.

**T.**      <u>**Opt Out Credit**</u>

Settling Defendants shall be entitled to a pro rata reduction in the contribution to the Settlement Fund in the event that 4% or more of Class Members properly exclude themselves from this Action pursuant to the terms approved by the Court and described in the class notice.