Richard M. Heimann (State Bar No. 63607)
Kelly M. Dermody (State Bar No. 171716)
Brendan Glackin (State Bar No. 199643)
Dean Harvey (State Bar No. 250298)
Anne B. Shaver (State Bar No. 255928)
LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, California 94111-3339
Telephone: 415.956.1000
Facsimile: 415.956.1008

*Co-Lead Class Counsel*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| IN RE: HIGH-TECH EMPLOYEE ANTITRUST LITIGATION<br><br>THIS DOCUMENT RELATES TO:<br><br>ALL ACTIONS | Master Docket No. 11-CV-2509-LHK<br><br>**CLASS ACTION**<br><br>**DECLARATION OF KELLY M. DERMODY IN SUPPORT OF PLAINTIFFS' MOTION FOR ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES AND SERVICE AWARDS** |

I, Kelly M. Dermody, declare:

1. I am an attorney licensed to practice in the Northern District of California. I am a partner at the firm of Lieff Cabraser Heimann & Bernstein, LLP ("LCHB"), Co-Lead Counsel for the Class Representatives and the Class. I have personal knowledge of the facts set forth herein and could competently testify to them if called as a witness.

2. I am a member in good standing of the bar of the State of California; the United States District Court for the Northern District of California; the United States District Court for the Central District of California; the United States District Court for the District of Colorado; the United States Courts of Appeals for the First, Second, Third, Fourth, Sixth, Seventh, and Ninth Circuits; and the United States Supreme Court.

**LCHB Staffing in this Case**

3. As the partner managing this case at LCHB from May 2012 onward, I paid considerable attention to ensuring that each LCHB partner on the file had specific areas of focus; that there was not duplication of efforts, especially among higher billers; and that projects were assigned to experienced lawyers with depth in the field who could effectively and efficiently execute the phenomenal amount of work this case demanded, as follows:

4. I asked partner Richard Heimann, LCHB's foremost trial lawyer, to lead our trial efforts as trial first chair. In the course of discovery, Richard then selected key senior executives who we anticipated would undoubtedly be on our trial witness list for depositions he would first chair. Our LCHB lawyer team was cognizant of the need to provide Mr. Heimann with hot documents and key evidence for him to construct a trial plan. Mr. Heimann has spent much of his professional career in front of a jury, beginning as a public defender and then becoming an assistant district attorney, before joining LCHB. Mr. Heimann has successfully tried over 50 civil jury cases, highlighted most recently in this District in *Gutierrez v. Wells Fargo Bank*, No. C 07-05923 WHA (N.D. Cal.) ($203 million verdict), and *In re TFT-LCD (Flat Panel) Antitrust Litigation*, MDL No. 1827 (N.D. Cal.) (trial verdict against one defendant of $87 million and settlements totaling over $470 million). Mr. Heimann received a *California Lawyer* Attorney of the Year ("CLAY") award for his efforts in both cases.

5. I asked partner Brendan Glackin, as LCHB's senior most subject matter expert in antitrust law on the case, to run point on the antitrust conspiracy and impact work, including the expert work of Dr. Edward Leamer, and the development of the motion for class certification, which relied heavily on a mastery of antitrust law and statistical proof. Mr. Glackin was the central lawyer in the middle of all counsel or expert statistical work, first chairing all related expert depositions, and managing all briefing related to expert statistical opinions. He first chaired the argument at both class certification hearings. Prior to joining LCHB in 2008, Mr. Glackin worked as an associate at Boies, Schiller & Flexner focusing on antitrust matters, and also worked as a Deputy Public Defender for Contra Costa County where he tried over twenty cases to juries. At LCHB, he is a key member of our Antitrust Practice Group where his most recent work includes serving on the trial team in the *In re TFT-LCD (Flat Panel)* antitrust litigation and representing the Charles Schwab family of funds and companies in the *In re LIBOR* rate manipulation case. Mr. Glackin leads LCHB's day-to-day work in the *In re Lithium Ion Batteries* antitrust litigation, as he did in *TFT-LCD*. In addition to working on numerous other antitrust matters, Mr. Glackin is Co-Chair of the Executive Committee of the Antitrust Section of the Bar Association of San Francisco; he also teaches trial advocacy for the National Institute of Trial Advocacy ("NITA") and the Practicing Law Institute (PLI). He is a frequent speaker and panelist on antitrust issues.

6. As the senior most subject matter expert on employment issues and compensation structures, I ran point on developing compensation system evidence. This included identifying key documents in discovery, developing common deposition questions for compensation and human resources witnesses, identifying deponents, taking fact depositions on compensation issues, working with Mr. Glackin on the development of statistical evidence from compensation and recruiting databases (common to employment class actions), and identifying, retaining, and running point on the expert work of compensation expert Kevin Hallock and his defense expert counterparts. I also led settlement efforts for LCHB and was involved in all major briefs and filings of any kind with the Court. My relevant background includes over 20 years of employment class action experience at LCHB, where I have also led or co-led at least 15 class

1 actions challenging compensation for, or hiring of, employees. I serve as Managing Partner of
2 LCHB's San Francisco office and chair LCHB's Employment Practice Group, which recently
3 was named a "2015 Litigation Department of the Year" from *The Recorder*. I am a member of
4 the ABA Labor and Employment Section governing Council, and have served as co-chair of the
5 Section's Annual Conference, Committee on Diversity in the Legal Profession, and Equal
6 Employment Opportunity Committee. I was President of the Bar Association of San Francisco in
7 2011-2012.

8       7.     I assigned partner Dean Harvey, an antitrust litigation specialist, to run point on
9 working with our clients on all aspects of the case, day-to-day discovery issues, and developing
10 the plan and drafting (in conjunction with others) major briefs. Mr. Harvey was involved in
11 virtually every aspect of the case, and first or second chaired almost every one of the vast number
12 of discovery meet and confers. Mr. Harvey was frequently Plaintiffs' main point of contact with
13 Defendants' counsel regarding discovery issues and joint filings (such as the many joint discovery
14 reports and joint case management conference statements). Mr. Harvey first chaired several key
15 depositions, defended two depositions of the class representatives, participated in the preparation,
16 defending or taking of several expert depositions, and second chaired the depositions of the most
17 critical fact witnesses, including Sergei Brin, Bill Campbell, Ed Catmull, Tim Cook, George
18 Lucas, Larry Page, and Eric Schmidt. Mr. Harvey was the "front lines" person for assembling
19 and marshalling the enormous factual and expert record presented in support of class certification
20 and opposing summary judgment. Mr. Harvey also shared responsibility with Ms. Shaver for the
21 document review projects of all class counsel firms. Prior to my time on the file, it is my
22 understanding that Mr. Harvey was the initial point of contact for the clients, ran the pre-filing
23 investigation of the case, and drafted the initial complaints. As part of this work, he investigated
24 and interviewed a wide number of potential labor market experts and worked with Defendants on
25 the plan for initial disclosures and early discovery responses. Prior to LCHB, Mr. Harvey was an
26 associate at Boies, Schiller & Flexner, LLP, where he focused on antitrust and class action
27 litigation, a law clerk for the Honorable James V. Selna of the Central District of California, and a
28 law clerk for the Antitrust Division of the United States Department of Justice. Mr. Harvey

1  publishes and speaks frequently on antitrust and class action issues, including the antitrust
2  treatment of employee poaching, the Class Action Fairness Act, concurrent antitrust criminal and
3  civil proceedings, arbitration provisions, standard setting organizations, California class action
4  practice and procedures, and recent developments in antitrust law. Mr. Harvey's 2006 article,
5  "Anticompetitive Social Norms as Antitrust Violations," published in the *California Law Review*,
6  received the William E. Swope Antitrust Writing Prize. In 2013, *The Recorder* recognized Mr.
7  Harvey as one of 50 attorneys in California "whose early accomplishments indicate they will be
8  tomorrow's top lawyers and leaders." He is currently Vice-Chair of the American Bar
9  Association Section of Antitrust Law Business Torts & Civil RICO Committee.

10         8.       I assigned partner Anne Shaver, while she was still a senior associate, to run point
11  on document review for our voluminous class certification record and trial, as well as to manage
12  the deposition defense work of our named plaintiffs. Ms. Shaver (or when she was not available,
13  Mr. Harvey) chaired weekly meetings with attorneys across the co-counsel firms who were
14  responsible for reviewing documents to ensure that key evidence was efficiently gathered, that
15  important new information (e.g., jargon or witnesses) was broadly shared with reviewers, and that
16  there was a mechanism of quality control through communication and feedback. Given her
17  extensive work with employee clients and employee depositions, Ms. Shaver trained all attorneys
18  scheduled to prepare and defend named plaintiffs' depositions on the likely areas of questioning
19  and hot spots for examination. She also first chaired four fact witness depositions, and second
20  chaired several others. Prior to LCHB, Ms. Shaver served as law clerk to the Honorable Betty B.
21  Fletcher of the United States Ninth Circuit Court of Appeals, and served as a death penalty law
22  clerk in the Contra Costa County Public Defender's Office. She is currently a member of the
23  coordinating committee of the ABA's Equal Employment Opportunity Committee. She has been
24  recognized as a "Rising Star for Northern California" by Super Lawyers for each of the past three
25  years.

**Out-Of-Pocket Costs Incurred By Class Counsel**

9.  To advance this litigation, Class Counsel incurred costs totaling $4,884,655.29 from inception to date. Due to reimbursements of costs totaling $3,699,844.31 through the earlier settlement with LucasFilm, Pixar, and Intuit, the remaining unreimbursed costs for the case up through May 1, 2015 are $1,184,810.98. Those costs consisted of expenses submitted to the joint litigation fund of Class Counsel (the "Litigation Fund", which Class Counsel supported through periodic contributions) as well as costs paid separately by LCHB, as set forth below, and by the other Class Counsel firms as set forth in their declarations.

10. The Litigation Fund was designed to pay common external costs, such as expert fees, court reporting and videographer expenses for depositions, and vendor fees for our electronic platform for review and storage of documents produced in the course of discovery. LCHB has maintained records and accounting for the Litigation Fund since it was established early in the case.

11. In total, LCHB contributed $1,998,386.67 to the Litigation Fund. In addition, LCHB paid an additional $399,142.79 for certain expenses that were not paid for by the Litigation Fund, including certain expert, database, and other common costs incurred prior to the establishment of the Litigation Fund, as well as LCHB-specific costs such as electronic computer research, document printing and copying, faxing and mailing charges, telephone service, case-related travel for Plaintiffs, experts, and witnesses, and other necessary expenses. These expenses are summarized in a chart provided in **Exhibit 1**. The expenses incurred by the Litigation Fund are summarized in a chart provided in **Exhibit 2**.

12. The detail of LCHB-specific costs are provided in **Exhibit 3**.

13. Invoices are provided as follows. **Exhibit 4** collects invoices from experts and economic consultants. **Exhibit 5** collects invoices from mediators. **Exhibit 6** collects invoices regarding depositions (reporters, videographers, and transcripts). **Exhibit 7** collects invoices regarding Class Counsel's document review platform. **Exhibit 8** collects remaining invoices and receipts, such as computer research, printing costs, and travel expenses.

1    14.    LCHB incurred the costs described herein on behalf of Plaintiffs on a contingent
2  basis. To date, $1,775,147.98 has been reimbursed through prior settlements. These costs are
3  reflected in LCHB's books and records.

4    15.    I have reviewed the expenses reported by LCHB in this case that are included in
5  the Motion for Attorneys' Fees, Reimbursement of Expenses, and Service Awards, and I affirm
6  that they are true and accurate. In addition, at my direction, my partner Dean Harvey reviewed
7  the back-up materials for the billed costs to confirm they are reliable. At my direction, Mr.
8  Harvey has redacted from the back-up materials financial information (such as a credit card
9  number) or unrelated billings (such as line items from a credit card statement) that do not pertain
10 to this case.

11   16.    A review of the cost detail reveals two things: (1) this was an expensive and high-
12 risk case from the standpoint of the needed expert, deposition, and other cost investments; and (2)
13 LCHB managed costs frugally, as evidenced by the employee receipts for late night filings
14 supported by meals from places like Subway and rides home after 10 p.m. provided by regular
15 taxi service. Examples of such receipts are found at **Exhibit 9** (attorney Joseph Forderer taking
16 taxis of $13.10-14.70 over 5 nights of working late, and having one meal for $5.97); and **Exhibit
17 10** (paralegal Terence Desouza working late for a 10:00 p.m. filing with Dean Harvey and
18 expensing a meal at Subway for $5.27).

19                          **The Time Invested By LCHB**

20   17.    The separate Declaration of Brendan P. Glackin sets forth in detail the work
21 contributed by LCHB in this case. Below I describe our firm's timekeeping and what we have
22 submitted to the Court.

23   18.    As of May 7, 2015, my firm had expended 23,458.20 hours on this matter, with
24 work still continuing. This time excludes timekeepers who billed less than 10 hours to this case,
25 thereby excluding time billed to the file by senior partners Elizabeth J. Cabraser, Steven E.
26 Fineman, Robert J. Nelson, and Jonathan D. Selbin, among others.

27   19.    Attached hereto as **Exhibit 11** is a true and correct summary by individual of the
28 hours, billing rate, and lodestar for each biller's work on this matter through May 4, 2015. The

- 6 -    DECLARATION OF KELLY M. DERMODY ISO CLASS
         COUNSELS' APPLICATION FOR ATTORNEYS' FEES
         CASE NO. 11-CV-2509-LHK
1253263.3

firm's total lodestar for these hours amounts to $11,476,957.50. This reflects time recorded contemporaneously for work completed, consistent with LCHB's *Firm Policy Manual* "Time-Keeping Policy" that requires timekeepers to keep time sheets on a daily basis, and to submit them by the close of each business week. LCHB's accounting department runs a regular time report that lists timekeepers without time in the system for any given week. I am provided that report and personally follow up with tardy attorney timekeepers, and instruct staff managers to follow up with any tardy attorney staff. The firm does not abide late timekeeping, and we advise employees, "Failure to comply with the Firm's timekeeping policy may be taken into account in connection with promotions, raises, and bonuses, and may subject the delinquent timekeeper to discipline, up to and including termination."

20. Attached hereto as **Exhibit 12** is the complete detail time for the work performed in this case. Redactions have been made where necessary to protect attorney-client privilege, the names of class members, documents or filings that are confidential and under seal, or undisclosed work product (such as consultation with a non-testifying expert).

21. The rates set forth in **Exhibit 11** are my firm's current billing rates and are supported by the extensive and specialized experience in these types of cases and recognized expertise described. Our rate structure has been paid to our firm by hourly-paying clients. In addition, our rate structure has been approved by numerous Courts. *See*, *e.g.*, *Brazil v. Dell Inc.*, 2012 U.S. Dist. LEXIS 47986 (N.D. Cal. Apr. 4, 2012); *In re Bank of America Credit Protection Marketing & Sales Practices Litig.*, No. 11-md-2269 THE (Dkt. 96) (N.D. Cal. Jan. 16, 2013); *Fleming v. Kemper Nat. Services, Inc.*, 373 F. Supp. 2d 1000, 1012 (N.D. Cal. 2005); *Grays Harbor Adventist Church Sch. v. Carrier Corp.*, 2008 WL 1901988, at *3 (W.D. Wash. Apr. 24, 2008); *Pelletz v. Weyerhaeuser Co.*, 2009 U.S. Dist. LEXIS 1803, at *7 (W.D. Wash. Jan. 9, 2009); *Berger v. Property ID Corporation*, CV 05-5373-GHK (Cwx) (C.D. Cal.); *White v. Experian*; *Information Solutions, Inc.*, 2011 WL 2971957, * 3 (C.D. Cal. Jul. 15, 2011); *Lonardo v. Travelers Indem. Co.*, -- F. Supp. 2d --, 2010 WL 1416698, at *22-23 (N.D. Ohio Mar. 31, 2010); *In re Diet Drugs (Phentermine, Fenfluramine, Dexfenfluramine) Prods. Liab. Litig.*, No. Civ.A. 99-20593, MDL No. 1203, 2003 WL 21641958, at *9 (E.D. Pa. May 15, 2003).

22. I have personal knowledge of the hourly rates charged by other attorneys with comparable experience as well as the attorneys within the firm who worked on this matter. Based on that information, I believe that these rates are fully consistent with the market rate in the San Francisco Bay Area for attorneys with comparable expertise, experience and qualifications, and that they are comparable to rates of attorneys specializing in complex litigation around the country. Based on the information I have, I believe that the rates charged by LCHB are reasonable and appropriate fees for those with comparable expertise, experience, and qualifications.

**LCHB's Work For The Class Will Continue**

23. After this fee submission is completed, the case work will not be over. LCHB will continue to invest time and incur costs over the next several months as class counsel prepares the motion for final settlement approval, communicates with Class members regarding the settlement, prepares for and attends the hearing on settlement approval, and monitors the implementation of the settlement. Thus, the final lodestar and cost amounts will be higher than reported in this declaration.

**The Risk and Complexity Involved in the Litigation**

24. Class Counsel prosecuted this action without any assurance of payment for their services, litigating this case on a wholly contingent basis in the face of significant risk. Large-scale antitrust and employment cases of this type are, by their very nature, complicated and time-consuming. Any lawyer representing large numbers of affected employees in such actions inevitably must be prepared to make a tremendous investment of time, energy, and resources.

25. The facts and circumstances of this case presented numerous and substantial hurdles to a successful recovery. All seven Defendants challenged the pleadings with a motion to dismiss, have consistently denied the existence of a conspiracy, and vigorously contested class certification. Obtaining class certification in a case of this nature is extremely difficult and resource-intensive.

//

1  I declare under penalty of perjury under the laws of the United States and the State of
2  California that the foregoing is true and correct to the best of my knowledge and that this
3  declaration was executed in San Francisco, California on May 7, 2015.

 */s/ Kelly M. Dermody*
Kelly M. Dermody