Joseph R. Saveri (State Bar No. 130064)
James G. Dallal (State Bar No. 277826)
JOSEPH SAVERI LAW FIRM, INC.
505 Montgomery Street, Suite 625
San Francisco, California 94111
Telephone:  (415) 500-6800
Facsimile:   (415) 395-9940

*Co-Lead Class Counsel*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: HIGH-TECH EMPLOYEE ANTITRUST LITIGATION<br><br>THIS DOCUMENT RELATES TO:<br>ALL ACTIONS | Case No. 5:11-cv-2509<br><br>**SUPPLEMENTAL DECLARATION OF JOSEPH R. SAVERI IN SUPPORT OF PLAINTIFFS' MOTION FOR ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND INCENTIVE AWARDS** |

1. I am an attorney licensed in the State of California and admitted to practice in the Northern District of California. I am the founder of Joseph Saveri Law Firm, Inc. ("JSLF"), Co-Lead Counsel for the Class Representatives and the proposed Settlement Class. I have personal knowledge of the facts set forth herein and could competently testify to them if called as a witness.

2. I submit this Supplemental Declaration in support of Plaintiffs' Motion for Attorneys' Fees, Reimbursement of Expenses, and Incentive Awards, and to clarify certain issues with the time that I submitted in the fee application submitted on May 7, 2015. Docket No. 1073. In the time since my declaration was filed, I and my staff working under my direction reviewed my firm's time records in the case. As a result of that review, I have determined that certain changes are appropriate. The purpose of this Declaration is, out of an abundance of caution and in the spirit of disclosure, to bring those matters to the Court.

3.	This Supplemental Declaration provides additional details concerning my time-keeping practices and further explanation of certain tasks described in my prior Declaration at Docket No. 1073, which was accurate and truthful as supplemented here. I believe my firm's time-keeping practices identify the general subject matters of time expenditure consistent with Ninth Circuit standards.

4.	With respect to my personal practices in recording time, most of the daily time records were prepared as follows. Virtually all of the daily entries were created by hand by recording the task performed and the date and duration of each task by the tenth of an hour. Some of the entries were entered directly into the firm's electronic billing system and there is no hand-written record. The great majority of the hand written entries was created on the day the tasks were done or within two weeks of when the work was done. To the extent a hand-written time record was created a week or more after the work was done, I used contemporaneous records created by me or another time-keeper at my firm to confirm the tasks that I had completed that day, such as personal calendar entries; emails; hand-written notes of phone calls or meetings; litigation documents (for example, deposition transcripts, hearing transcripts, draft court filings) and documents that had been edited or saved on JSLF's internal document-management system. Periodically, these hand-written entries were typed into an electronic billing system. Other time-keepers at JSLF followed a similar procedure, and the majority of the daily time records submitted to the Court were created in this way. I believe these practices are consistent with established practices in this Circuit.

5.	In recording time spent on a case, there is of course always the possibility of error. Since filing my Declaration at Docket No. 1073, I have removed certain time entries, and JSLF is replacing Exhibit 4 filed with my Declaration at Docket No. 1073, with the **Exhibit 1** attached hereto. Specifically, entries totaling 17.7 hours have been removed, reflecting work that was entered in my firm's billing database at or around the time the work was done in 2012 and 2013 but not posted until the preparation of the final report, attached to my Declaration at Docket No. 1073. These entries reflect block-billed entries that were separated at the time of the preparation of the final bill. Specifically, I have identified ten days for which there was an attempt to correct certain JSLF time entries to eliminate block billing. Due to entry errors after the corrections were made, some duplicate time was entered for the tasks when they were separated and entered into my firm's billing system. This amounts to less than

ten hours of attorney time. I have been able to confirm from contemporaneous records that work described in these entries was done, but have deleted these entries to address any concerns as to their accuracy. Out of caution, I removed even successful corrections for block billing, reflected in a chart attached as **Exhibit 2** hereto. In addition, I have examined my firm's time entries related to class certification and experts. There were 108.23 hours of JSLF billed time entries on these subjects in the Exhibit 3 attached to my prior Declaration at Docket No. 1073 which are removed from the attached replacement at **Exhibit 1** hereto. These entries are summarized in the **Exhibit 2** chart. The purpose of these adjustments is to be as conservative as possible. In addition, in reviewing the time entries, we identified a time entry for a JSLF time-keeper for August 29, 2012 indicating 120 hours for the day. This entry has been deleted in its entirety from the revised fee application. Reducing JSLF time by the 17.7 hours, the 108.23 additional hours, and the entry for 120 hours amounts to a total reduction of 245.93 hours or $189,204.80 in billed time. The reduction results in a revised total lodestar for JSLF of $6,314,819.25. With this adjustment, the aggregate lodestar for all plaintiffs' counsel equals $20,594,097.75, and the multiplier sought by Plaintiffs' counsel equals 3.9392, rather than 3.89 as previously set forth in the JSLF brief in support of the fee application.[1]

6. As the senior and founding attorney of JSLF, I have personal knowledge of the billing and time-keeping practices of the other professionals at my firm. Other time-keepers in this and other cases at JSLF entered their daily time entries into the electronic database maintained by my firm directly. Most of these entries were entered into the database within a month from the time the work was done. To the extent the entries were for work done on a date prior to entry, the entries were made by time-keepers based on their recollection, as refreshed by contemporaneously-created documents such as such as personal calendar entries; emails; hand-written notes of phone calls or meetings; litigation documents (for example, deposition transcripts, hearing transcripts, draft court filings) and documents that had been edited or saved on JSLF's internal document-management system.

---

[1] The spreadsheet previously attached as Exhibit 3 (Docket No. 1073) and references to it in the Saveri Declaration include an incorrect aggregate total of the number of hours. The number of hours for each time-keeper and total lodestar calculation set forth in the previous Exhibit 3 are correct, as was the lodestar calculation throughout the fee application.

7. During the course of this litigation and pursuant to this Court's Case Management Orders at Document Nos. 64, 144, and 147, JSLF exchanged time summary reports with LCHB. These time summary reports were based on the entry into an electronic data base of the daily time records described above. These summary reports were labelled as "Pre-Bills" and were not intended to represent a final bill for legal services, as I understand that term to be used in the context of lawyers who have hourly fee agreements with clients. They were intended to inform Co-Lead Counsel generally about the nature of the work performed. Over time, some of the time reported was written down (either deleted entirely or the time reduced) or edited. In other situations, when it was determined that time was mistakenly entered in other open litigation matters, the time entries were reclassified and entered in the correct matter. This occurred with respect to time entered incorrectly in this matter as well as with respect to other matters.

8. From time to time, there were time entries that were entered into the electronic database weeks or even months after the date at which the work was done. Often, this delay was due to the lag in time between when the time was hand-written on time sheets or notepads, and when it was entered into the database. During periods of peak activity in this case, attorneys worked 7 days per week and 10 hours per day. In such periods, time entries lagged the performance of work more than in quieter periods. Sometimes time entries were delayed by weeks and, in some situations, a couple of months. In my experience as someone who regularly works 80-100 hour work weeks, this is not unusual. At some point, time-keepers caught up and became current with their time entries. On some occasions, the persons charged with physically entering time into the billing systems could not decipher or could not read the handwritten entries and had to follow up with the time-keepers to clarify handwriting before entries were made into the system.

9. As part of finalizing the time summaries that JSLF maintained in the regular course of business, I reviewed the records to make sure that all of the tasks that I had performed were entered. There were a few entries of my time that were made based on these reviews that were created a substantial time after the work was done, to reflect time spent at a meeting, court hearing, or other event that I had attended, but for which I had not previously recorded time. For these entries, I used records such as transcripts, notes, and billing entries of other JSLF time-keepers to refresh my

Case No. 5:11-cv-2509

4

SUPPLEMENTAL DECLARATION OF JOSEPH R. SAVERI IN SUPPORT OF PLAINTIFFS' MOTION FOR ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND INCENTIVE AWARDS

recollection of having performed the task, and made a conservative estimate of the time spent in performance based on the records available to me. For example, in reviewing the time records for the May 7 submission I created two entries—one for a case management conference I attended in this Court on April 8, 2013, and one for a call I had with counsel for Plaintiff Devine on May 15, 2014; I used transcripts of the conference and my own notes (as confirmed by the time entries for Devine's counsel) to create these entries. If I could not accurately estimate the time for such event, or could not recall particular participation, I did not enter a time record, and no such entries were presented to the Court. I am confident that the time submitted by JSLF in this matter is reliable and accurate.

10. This supplemental declaration also provides greater detail regarding the work done in this case by JSLF related to (i) experts, (ii) briefing in the case, and (iii) our efforts to spearhead the settlement.

11. With respect to our work related to expert witnesses, my Declaration at Docket No. 1073 ¶ 23 is supplemented as follows. I supervised on behalf of my firm the work done with respect to experts. This included the decision to employ certain experts for purposes of class certification and trial. It included the review, analysis and comment on expert reports and participation in telephone conferences with the experts themselves or with counsel regarding those experts. I participated in the preparation of witnesses for depositions, including Matthew Marx. With respect to the experts retained by Defendants, it included the analysis of the expert reports, and the review of deposition transcripts. Members of my firm synthesized the factual records and gather documents and deposition testimony, as did members of Lieff Cabraser, for the benefit of the experts. I took the deposition of Defendants' expert Kevin Murphy for one day and I took the deposition of Defendants' expert David Lewin. I analyzed and reviewed the transcripts of depositions taken by others. Such analysis informed my work in other phases of the litigation, including class certification, settlement, appeals and trial preparation.

12. With respect to briefing, my Declaration at Docket No. 1073 ¶¶ 24, 25 is supplemented as follows. I analyzed the issues to be addressed on class certification. At my direction, my staff coordinated with Lieff Cabraser. This included analysis of the issues to be briefed as well as issues to be addressed in reply to Defendants' opposition. Much of the original authorship of the briefs was performed by Lieff Cabraser. My office also participated in original drafting. I and members of my

firm commented on drafts. In addition, my firm gathered factual information from the discovery record for citation in the briefs. Brendan Glackin and I agreed that Mr. Glackin would handle the oral argument on class certification and I would handle the argument on the summary judgment motions. Pursuant to that agreement, Mr. Glackin handled the class certification argument. To my mind, he did an admirable job and plaintiffs prevailed on the motion as a result. With respect to summary judgment, much of the original authorship of the briefs was performed by Lieff Cabraser. My office also participated in original drafting. I and members of my firm commented on drafts. In addition, my firm gathered factual information from the discovery record for citation in the briefs.

13.     With respect to settlement efforts, my Declaration at Docket No. 1073 ¶ 28 is supplemented as follows: Kelly Dermody and I participated equally in the settlement efforts. From time to time, Ms. Dermody and I had separate conversations with lawyers for Defendants or mediators. I did not intend to suggest in my earlier declaration that Kelly Dermody and Lieff Cabraser were not equally involved in spearheading settlement efforts. I view the settlements as the direct result of the joint hard work, perseverance and expertise of Ms. Dermody and myself.

14.     Attached hereto as **Exhibit 3** are correct copies of invoices supporting JSLF's cost request. In the time since my declaration was filed, I and my staff working under my direction reviewed my firm's receipts underlying the cost submission. We have not been able to locate transactional level receipts for all charges recorded in the firm ledgers. In an abundance of caution, JSLF is reducing the amount of costs for reimbursement from the $590,221.32 originally reported to $589,194.94. A revised chart reflecting JSLF's unreimbursed costs is attached as **Exhibit 4**. For the Court's convenience, I submit a chart at **Exhibit 5** summarizing the unreimbursed costs sought by Class Counsel. The total unreimbursed costs equal $1,231,276.66. Class Counsel seek the full $1.2 million in costs authorized

Case No. 5:11-cv-2509

6

SUPPLEMENTAL DECLARATION OF JOSEPH R. SAVERI IN SUPPORT OF PLAINTIFFS' MOTION FOR ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND INCENTIVE AWARDS

1  as provided in the notice to the class. Class Counsel do not seek reimbursement of any costs beyond the
2  $1.2 million provided in the notice to the class.
3      I declare under penalty of perjury under the laws of the United States and the State of California
4  that the foregoing is true and correct to the best of my knowledge and that this declaration was
5  executed in San Francisco, California on May 21, 2015.
6  Dated: May 21, 2015

By:    */s/Joseph R. Saveri*
      Joseph R. Saveri