1  Richard M. Heimann (State Bar No. 63607)
   Kelly M. Dermody (State Bar No. 171716)
2  Brendan P. Glackin (State Bar No. 199643)
   Dean M. Harvey (State Bar No. 250298)
3  Anne B. Shaver (State Bar No. 255928)
   LIEFF CABRASER HEIMANN &
4  BERNSTEIN, LLP
   275 Battery Street, 29th Floor
5  San Francisco, CA 94111-3339
   Telephone: (415) 956-1000
6  Facsimile: (415) 956-1008

7  Joseph R. Saveri (State Bar No. 130064)
   James Dallal (State Bar No. 277826)
8  JOSEPH SAVERI LAW FIRM, INC.
   505 Montgomery, Suite 625
9  San Francisco, CA 94111
   Telephone: 415.500.6800
10 Facsimile: 415.395.9940

11 *Co-Lead Class Counsel*

12                    UNITED STATES DISTRICT COURT

13                  NORTHERN DISTRICT OF CALIFORNIA

14                        SAN JOSE DIVISION

15

16 IN RE: HIGH-TECH EMPLOYEE               Master Docket No. 11-CV-2509-LHK
   ANTITRUST LITIGATION
17
   THIS DOCUMENT RELATES TO:               **NOTICE OF MOTION AND MOTION FOR**
18                                         **FINAL APPROVAL OF CLASS ACTION**
   ALL ACTIONS                             **SETTLEMENT; MEMORANDUM OF**
19                                         **POINTS AND AUTHORITIES IN**
                                           **SUPPORT THEREOF**
20
                                           Date:        July 9, 2015
21                                         Time:        1:30 pm
                                           Courtroom:   Room 8, 4th Floor
22                                         Judge:       Honorable Lucy H. Koh

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION AND MOTION ................................................................................. v

MEMORANDUM OF POINTS AND AUTHORITIES ...................................................... 1

I.      INTRODUCTION ................................................................................. 1

II.     FACTUAL AND PROCEDURAL BACKGROUND............................................ 2

III.    TERMS OF THE SETTLEMENT.................................................................... 8

      A.     Settlement Consideration ...................................................... 8

      B.     Monetary Relief to Class Members............................................ 8

      C.     Release of All Claims Against the Defendants ........................... 9

      D.     Attorneys' Fees, Costs, and Class Representative Service Payments......... 9

IV.    ARGUMENT .................................................................................... 10

      A.     The Class Action Settlement Approval Process........................... 10

      B.     The Court-Approved Notice Program Meets Applicable Standards and Has Been Fully Implemented. .............................. 11

      C.     Final Approval of the Settlement is Appropriate. .................... 12

            1.     The Settlement Is the Product of Arm's-Length Negotiations Between the Parties and Follows Years of Hard-Fought Litigation and Plaintiffs' Thorough Investigation................................................................ 13

            2.     The Settlement is Fair, Reasonable, and Adequate...................... 16

            3.     The Recommendation of Experienced Counsel Favors Approval.................................................................. 17

            4.     The Class Response Favors Final Approval. ............................... 18

                 a.     Objections based on Size of Monetary Fund ................... 19

                 b.     Objection to Case Itself.................................................... 22

                 c.     Objection to Any Settlement Short of A Trial Verdict............................................................................ 23

                 d.     Objection Based on Misunderstanding of this Settlement Compared to the Earlier Settlements With Intuit, Lucasfilm, and Pixar........................ 23

                 e.     Objection Based on Plan of Allocation............................ 23

                 f.     Objections Based on Insufficient Notice of Individual Award Allocations ........................................... 24

V.     CONCLUSION ................................................................................. 25

1

# TABLE OF AUTHORITIES

2

**Page**

3

## CASES

4  *Boyd v. Bechtel Corp.*,
    485 F. Supp. 610 (N.D. Cal. 1979) ................................................................. 17, 18

5

   *Boyle v. Arnold-Williams*,
6     No. 01-5687, 2006 U.S. Dist. LEXIS 91920 (W.D. Wash. Dec. 20, 2006) .................. 19, 21

7  *Browne v. Am. Honda Motor Co.*,
      No. 09-06750, 2010 U.S. Dist. LEXIS 145475 (C.D. Cal. July 29, 2010) ..................... 19, 21

8
   *Churchill Vill., L.L.C. v. GE*,
9     361 F.3d 566 (9th Cir. 2004) ................................................................. 12

10 *Churchill Village, LLC v. General Electric*,
      361 F.3d 566 (9th Cir. 2004) ................................................................. 19

11
   *City P'shp. Co. v. Atl. Acquisition Ltd. P'shp.*,
12    100 F.3d 1041 (1st Cir. 1996) ............................................................... 14

13 *Class Plaintiffs v. City of Seattle*,
      955 F.2d 1268 (9th Cir. 1992) ..................................................... 12, 13, 18

14
   *Create-A-Card, Inc. v. Intuit Inc.*,
15    No. CV-07-6452 WHA, 2009 U.S. Dist. LEXIS 93989
      (N.D. Cal. Sept. 22, 2009) ................................................................... 14

16
   *Ellis v. Naval Air Rework Facility*,
17    87 F.R.D. 15 (N.D. Cal. 1980) ............................................................... 17

18 *Ficalora v. Lockheed Cal. Co.*,
      751 F.2d 995 (9th Cir. 1985) ................................................................. 13

19
   *Hanlon v. Chrysler Corp.*,
20    150 F.3d 1011 (9th Cir. 1988) .......................................................... 12, 13

21 *Hughes v. Microsoft Corp.*,
      2001 U.S. Dist. LEXIS 5976 (W.D. Wash. Mar. 21, 2001) ................................. 19

22
   *In re Airline Ticket Comm'n Antitrust Litig.*,
23    953 F. Supp. 280 (D. Minn. 1997) ......................................................... 17

24 *In re Austrian & German Bank Holocaust Litig.*,
      80 F. Supp. 2d 164 (S.D.N.Y. 2000), *aff'd sub. nom.*
25    *D'Amato v. Deutsche Bank*,
      236 F.3d 78 (2d Cir. 2001) .................................................................. 16

26
   *In re Elec. Carbon Prods. Antitrust Litig.*,
27    447 F. Supp. 2d 389 (D.N.J. 2006) ........................................................ 17

28

**TABLE OF AUTHORITIES**
(continued)

Page

*In re LDK Solar Secs. Litig.*,
No. C 07-5182 WHA, 2010 U.S. Dist. LEXIS 73530 (N.D. Cal. Jun. 21, 2010)................... 21

*In re Linerboard Antitrust Litig.*,
296 F. Supp. 2d 568 (E.D. Pa. 2003) ..................................................................................... 21

*In re NASDAQ Mkt.-Makers Antitrust Litig.*,
176 F.R.D. 99 (S.D.N.Y. 1997) ............................................................................................. 16

*In re Nucoa Real Margarine Litig.*,
Case No. CV 10-00927 MMM (AJWx), 2012 U.S. Dist. LEXIS 189901
(C.D. Cal. June 12, 2012).......................................................................................................20

*In re Oracle Sec. Litig.*,
No. 90-0931-VRW, 1994 U.S. Dist. LEXIS 21593 (N.D. Cal. June 16, 1994) .............. 17, 24

*In re Toys "R" Us-Del., Inc. Fair & Accurate Credit Transactions Act (FACTA)
Litig.*,
295 F.R.D. 438 (C.D. Cal. 2014) ........................................................................................... 21

*Linney v. Cellular Alaska P'shp*,
No. C-96-3008 DLJ, 1997 U.S. Dist. LEXIS 24300 (N.D. Cal. July 18, 1997),
*aff'd*, 151 F.3d 1234 (9th Cir. 1998) ........................................................................... 14, 17, 20

*M. Berenson Co., Inc. v. Faneuil Hall Marketplace, Inc.*,
671 F. Supp. 819 (D. Mass. 1987) ......................................................................................... 14

*Marshall v. Holiday Magic, Inc.*,
550 F.2d 1173 (9th Cir. 1977)................................................................................................ 18

*Nat'l Rural Telecomm. Coop. v. DIRECTV, Inc.*,
221 F.R.D. 523 (C.D. Cal. 2004) ........................................................................................... 18

*Officers for Justice v. Civil Serv. Comm'n*,
688 F.2d 615 (9th Cir. 1982)................................................................................. 12, 13, 20, 23

*Reed v. 1-800 Contacts, Inc.*,
No. 12-cv-02359 JM (BGS), 2014 U.S. Dist. LEXIS 255
(S.D. Cal. Jan. 2, 2014) .......................................................................................................... 21

*Sugarman v. Ducati N. Am., Inc.*,
2012 U.S. Dist. LEXIS 3961 (N.D. Cal. Jan. 12, 2012) ........................................................ 19

*Torrisi v. Tucson Elec. Power Co.*,
8 F.3d 1370 (9th Cir. 1993).................................................................................................... 13

*United States v. State of New Jersey*,
1995 U.S. Dist. LEXIS 22645 (D.N.J. Mar. 14, 1995)........................................................... 22

*Utility Reform Project v. Bonneville Power Admin.*,
869 F.2d 437 (9th Cir. 1989)................................................................................................... 13

1260357.3

**TABLE OF AUTHORITIES**
**(continued)**

Page

*Van Bronkhorst v. Safeco Corp.*,
    529 F.2d 943 (9th Cir. 1976).................................................................................. 13

*Wren v. RGIS Inventory Specialists*,
    No. 06-05778-JCS, 2011 U.S. Dist. LEXIS 38667 (N.D. Cal. Apr. 1, 2011) ........................ 22

**RULES**

Fed. R. Civ. P. 23(c)(2)(B)........................................................................................ 11

**TREATISES**

4 NEWBERG ON CLASS ACTIONS,
    §§ 11.22, *et seq.* (4th ed. 2002).............................................................................. 10

MANUAL FOR COMPLEX LITIGATION (Fourth)
    §§ 21.632, *et seq.* (2004)........................................................................................ 10

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## NOTICE OF MOTION AND MOTION

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on July 9, 2015 at 1:30 p.m., or as soon as the matter may be heard in Courtroom 8 of the above-entitled court, Class Representatives Mark Fichtner, Siddharth Hariharan, and Daniel Stover ("Plaintiffs") hereby move, pursuant to Federal Rule of Civil Procedure 23(e), for entry of an order finally approving the Settlement with Defendants Adobe Systems, Incorporated, Apple Inc., Google Inc., and Intel Corporation (collectively, "Defendants"), specifically:

1. finding that the Settlement is fair, reasonable, and adequate within the meaning of Rule 23(e) of the Federal Rules of Civil Procedure and directing its consummation pursuant to its terms;

2. finding that the notice provided to the Class constitutes due, adequate, and sufficient notice, and meets the requirements of due process and applicable law;

3. approving the method for allocating the Settlement;

4. directing that this action be dismissed with prejudice as against Defendants;

5. approving the release of claims as specified in the Settlement as binding and effective;

6. reserving exclusive and continuing jurisdiction over the Settlement; and

7. directing that final judgment of dismissal be entered as between Plaintiffs and Defendants.

This motion is brought pursuant to Federal Rule of Civil Procedure 23(e) and is based upon the supporting Memorandum of Points and Authorities filed concurrently with this Notice; the supporting Declarations of Dean M. Harvey and Kenneth Jue, filed concurrently with this Notice; the records, pleadings, and papers filed in this action, and upon such argument as may be presented to the Court at the hearing on this motion.

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

I. <u>**INTRODUCTION**</u>

Plaintiffs submit this Memorandum in support of final approval of their class action Settlement with Defendants Adobe Systems, Incorporated, Apple Inc., Google Inc., and Intel Corporation.[1]

The Court should grant final approval of the Settlement because it is fair, reasonable, and adequate. The Settlement will resolve all of the claims of the Class of employees that the Court certified on October 24, 2013 (Dkt. 531) (the "Class"). The Settlement creates an all-cash fund of $415,000,000 (the "Settlement Fund"). The amount of this Settlement is $90.5 million more than the parties' prior settlement (*see* Dkt. 920), $35 million more than the $380 million referenced by the Court in its Order Denying Plaintiffs' Motion for Preliminary Approval of Settlements (Aug. 8, 2014 Order at 7, n.8, Dkt. 974), and in addition to the $20 million previously secured in settlements with Intuit, Inc., Lucasfilm Ltd., and Pixar. The Settlement is, by far, the largest amount ever recovered in a class action asserting antitrust claims by employees against their employers, either on an aggregate or per-class-member basis. (*See* Dkt. 1075, Ex. A.) This result is particularly impressive in light of the fact that the Antitrust Division of the United States Department of Justice resolved its investigation into the same alleged misconduct without seeking any penalties or restitution whatsoever.

The Court granted preliminary approval of the Settlement on March 3, 2015. ("Preliminary Approval Order"; Dkt. 1054.) In doing so, the Court found that the Settlement fell within the range of reasonableness, and the factors relevant to final approval all weighed in favor of the Settlement (*id.* at 2); found that the proposed Plan of Allocation was sufficiently fair, reasonable, and adequate (*id.* at 4); approved settlement notice to the Class and found that the notice procedure is "the best practical means of providing notice of the Settlement Agreement under the circumstances, and when completed, shall constitute due and sufficient notice of the

---

[1] Plaintiff and Class Representative Michael Devine joins this Motion through his separate counsel Daniel Girard. *See* Joinder of Class Representative Michael Devine to Motion for Final Approval of Class Action Settlement ("Devine Joinder"), filed herewith.

1  proposed Settlement Agreement and the Final Approval Hearing to all persons affected by and/or

2  entitled to participate in the Settlement Agreement, in full compliance with the applicable

3  requirements of Federal Rule of Civil Procedure 23 and due process" (*id.* at 5); appointed a

4  Notice Administrator (*id.* at 6); and ordered a process for dissemination of the Settlement Notice,

5  responses by Class members, and a Final Approval Hearing (*id.* at 8-13).  In addition, the reaction

6  of the Class has been overwhelmingly positive, with only 56 requests for exclusion and 11

7  objections to the Settlement, from the over 64,466 Notices disseminated to Class members.

8       The parties have carried out the Court's Order and the Settlement should be finally

9  approved.

10  **II.    FACTUAL AND PROCEDURAL BACKGROUND**

11      Plaintiffs are former technical employees of Defendants.  Like the Class they represent,

12  each worked for a Defendant while that Defendant allegedly participated in at least one alleged

13  unlawful agreement with another Defendant.  Plaintiffs challenge agreements among

14  Defendants—all horizontal competitors for the services of Plaintiffs and Class members—to

15  reduce employee compensation and mobility through eliminating competition for labor.  The

16  complaint alleges that Defendants entered into the following types of express agreements:

17  (1) illegal agreements not to recruit each other's employees; (2) illegal agreements to notify each

18  other when making an offer to another's employee; and (3) illegal agreements that, when offering

19  a position to another company's employee, neither company would counteroffer above the initial

20  offer.  (Complaint ¶¶ 55-107; Dkt. 65.)  Plaintiffs also allege that each Defendant entered into,

21  implemented, and enforced each express agreement with knowledge of the other Defendants'

22  participation, and with the intent of accomplishing the conspiracy's objective: to reduce employee

23  compensation and mobility by eliminating competition for skilled labor.  (*Id.* ¶¶ 55, 108-110.)

24  Plaintiffs seek compensation for violations of Section 1 of the Sherman Act, 15 U.S.C. § 1, and

25  the Cartwright Act, Cal. Bus. & Prof. Code §§ 16720, *et seq.*  (*Id.* ¶¶ 119-164.)

26      After the Court consolidated the Plaintiffs' individual lawsuits, Plaintiffs filed their

27  Consolidated Amended Complaint on September 13, 2011.  (Dkt. 65.)  Defendants challenged the

28  pleadings.  All Defendants jointly, and Lucasfilm separately, moved to dismiss Plaintiffs' claims.

1   (Dkts. 79 & 83.) The Court denied both motions, with the exception that Plaintiffs' UCL claim

2   for restitution and disgorgement was dismissed for failure to allege a vested interest. (Apr. 18,

3   2012 Order; Dkt. 119.)

4         After the Court lifted a discovery stay in January 2012, the parties completed broad,

5   extensive, and thorough discovery related to both class certification and the merits. Plaintiffs

6   served 75 document requests, in response to which Defendants collectively produced over

7   325,000 documents (over 3.2 million pages), and took 93 depositions of Defendant witnesses.

8   (Decl. of Kelly M. Dermody ¶ 4 ("Dermody Decl."), Dkt. 1033.) Plaintiffs also served 28

9   subpoenas on third parties, negotiated with those third parties, and received 8,809 pages of

10  documents from them. Defendants also propounded document requests, in response to which

11  Plaintiffs produced over 31,000 pages, and took the depositions of the Named Plaintiffs. (*Id.*)

12  Defendants served 34 subpoenas on third parties, including the then-current and former

13  employers of the Named Plaintiffs. (*Id.*) Defendants' subpoenas resulted in 1,834 pages of

14  documents produced, which Plaintiffs' counsel also reviewed. (*Id.*)

15        After adjustments to the case management schedule, Plaintiffs filed their first motion for

16  class certification on October 1, 2012. (Pls.' Mot. For Class Cert.; Dkt. 187.) Plaintiffs proposed

17  an "All-Employee Class," as well as an alternative class of salaried technical, creative, and

18  research and development employees: the "Technical Class." (*Id.* at 1.) After the Court took the

19  motion under submission, Plaintiffs continued discovery, conducting numerous depositions and

20  receiving and reviewing voluminous documents. The Court required the parties to file discovery

21  status reports on an ongoing basis. (Jan. 17, 2013 and Mar. 13, 2013 Case Management Orders;

22  Dkts. 282 & 350.)

23        With expert assistance, Plaintiffs' counsel analyzed vast amounts of computerized

24  employee compensation and recruiting data, including approximately 80,000 files of

25  employment-related data exceeding 50 gigabytes. (Dermody Decl. ¶ 5, Dkt. 1033.) Plaintiffs'

26  counsel retained four experts and numerous consultants to review and analyze this data,

27  documents produced in the action, deposition testimony, and other relevant facts; apply their

28  relevant expertise to those facts; and form opinions regarding a range of assigned tasks. (*Id.*)

1  Those experts included Dr. Edward Leamer of the University of California, Los Angeles, who

2  provided six expert reports consisting of 433 pages of analysis.  (*Id.*)  Defendants took four

3  depositions of Dr. Leamer regarding his opinions.  (*Id.*)  Plaintiffs retained Dr. Kevin Hallock of

4  Cornell University, who provided two expert reports consisting of 232 pages of analysis.

5  Defendants took two depositions of Dr. Hallock.  (*Id.*)  Plaintiffs also retained Dr. Alan Manning

6  of the London School of Economics, who provided one expert report, and Dr. Matthew Marx of

7  the Sloan School of Management at the Massachusetts Institute of Technology, who provided two

8  expert reports.  Defendants also deposed, and Plaintiffs defended the depositions of, Dr. Manning

9  and Dr. Marx.  (*Id.*)

10          Plaintiffs' counsel and their experts also reviewed and analyzed the expert analysis

11  Defendants submitted.  Defendants retained seven experts, who collectively submitted a total of

12  1,733 pages of expert reports, including detailed and extensive quantitative analysis.  (Dermody

13  Decl. ¶ 6, Dkt. 1033.)  Plaintiffs' experts assessed these reports and provided responses to them.

14  (*Id.*)  Plaintiffs' counsel deposed every defense expert, including multiple depositions for some

15  expert witnesses.  (*Id.*)

16          Fact and expert discovery, which is complete, has been thorough, and has required the

17  parties to engage in numerous and extensive meetings and conferences concerning the scope of

18  discovery and the analysis of the various electronic data, policy documents, and other files

19  produced.  (Dermody Decl. ¶ 7, Dkt. 1033.)

20          On April 5, 2013, the Court issued its Order Granting in Part and Denying in Part

21  Plaintiffs' Motion for Class Certification.  (Dkt. 382.)  The Court found that Plaintiffs satisfied

22  Federal Rule of Civil Procedure 23(a), and satisfied Rule 23(b)(3) as to conspiracy and damages.

23  The Court found that "the adjudication of Defendants' alleged antitrust violation will turn on

24  overwhelmingly common legal and factual issues."  (*Id.* at 13.)  Furthermore, after a detailed

25  inquiry, the Court held that a statistical regression analysis prepared by Plaintiffs' expert

26  "provides a plausible methodology for showing generalized harm to the class as well as

27  estimating class-wide damages."  (*Id.* at 43.)

28          The Court requested further briefing on whether the Rule 23(b)(3) predominance standard

1260357.3

1   was met with respect to the common impact on the proposed class. (Dkt. 382, at 45.) Though the

2   Court did not find predominance satisfied as to common impact, the Court acknowledged that the

3   documentary evidence "weighs heavily in favor of finding that common issues predominate over

4   individual ones for the purpose of being able to prove antitrust impact." (*Id.* at 33.) The Court

5   requested additional briefing to address this remaining concern: "the Court believes that, with the

6   benefit of discovery that has occurred since the hearing on this motion, Plaintiffs may be able to

7   offer further proof to demonstrate how common evidence will be able to show class-wide impact

8   to demonstrate why common issues predominate over individual ones." (*Id.* at 45.)

9        Plaintiffs filed a Supplemental Motion for Class Certification to address the Court's

10  request. (Dkts. 418 & 455.) Plaintiffs marshaled additional documentary evidence, testimony,

11  and expert analyses. (Decl. of Dean M. Harvey, Dkt. 418-1; Decl. of Lisa J. Cisneros, Dkt. 418-

12  2; Leamer Supp., Dkt. 418-4; Hallock Rpt., Dkt. 418-3; Decl. of Anne B. Shaver, Dkt. 456; and

13  Leamer Supp. Reply, Dkt. 457.) Plaintiffs submitted additional evidence that the no-cold calling

14  agreements at issue in this case were designed substantially to disrupt recruiting of Technical

15  Class employees. Accordingly, Plaintiffs focused their supplemental briefing and analysis on

16  demonstrating impact to all or nearly all of the Technical Class. Defendants opposed the motion

17  and submitted supplemental briefing, expert reports, and documents in support of their

18  opposition. (Opp. to Supp. Mot. for Class Cert., Dkt. 439; Decl. of Christina Brown, Dkt. 445;

19  Decl. of Lin Kahn, Dkt. 446; Murphy Supp. Rpt., Dkt. 440; Shaw Rpt., Dkt. 442.) The Court

20  granted Plaintiffs' Supplemental Motion on October 24, 2013.[3] (Dkt. 531.)

21       Plaintiffs reached settlement agreements with Defendants Lucasfilm and Pixar, and with

22  Defendant Intuit, and presented those settlements to the Court on September 21, 2013.

23  (Dkt. 501.) On October 30, 2013, the Court granted preliminary approval of the settlements.

24  (Dkt. 540.) Plaintiffs' Motions for Final Approval, Attorneys' Fees and Costs, and Service

25  Awards with respect to those settlements have been resolved, after a hearing on May 1, 2014.

26  (Dkts. 915 & 916.)

27  [3] The Ninth Circuit denied Defendants' Petition for review pursuant to Rule 23(f) on January 14,
    2014.

28

1260357.3

1    Defendants filed individually and collectively for summary judgment (on the grounds that

2    Plaintiffs had not marshaled sufficient evidence that each of the Defendants had participated in an

3    overarching conspiracy to suppress compensation), for exclusion of the testimony of two of

4    Plaintiffs' experts, Dr. Edward Leamer and Dr. Matthew Marx under *Daubert*, and to strike

5    portions of Dr. Leamer's reply report as improper rebuttal.  (Dkts. 554, 556, 557, 559, 560, 561,

6    564, & 570.)  The Court denied all motions for summary judgment.  (Dkts. 771 & 788.)  The

7    Court granted in part and denied in part the motions to exclude Dr. Leamer's testimony and strike

8    portions of his reply report.  (Dkt. 788.)  Plaintiffs filed a motion for application of the *per se*

9    standard with supporting evidence (Dkt. 830), and Defendants opposed it (Dkt. 887).  Defendants

10   moved *in limine* to exclude various categories of evidence (Dkt. 855), and Plaintiffs opposed their

11   motions (Dkt. 882).  Plaintiffs also moved to compel production of a document, the identity of

12   which remains under seal (Dkt. 789-2), and Defendants opposed it (Dkt. 878-1).  Plaintiffs'

13   counsel also prepared extensively for trial, including by retaining a highly-experienced jury

14   consultant to assist with jury research and selection.  (Dermody Decl. ¶ 9, Dkt. 1033.)

15   On May 22, 2014, Plaintiffs Mark Fichtner, Siddharth Hariharan, and Daniel Stover

16   moved the Court to preliminarily approve a settlement agreement with Defendants providing for a

17   settlement fund of $324,500,000.  (Dkts. 922-924.)  Plaintiff Michael Devine opposed the

18   settlement.  The Court denied preliminary approval on August 8, 2014.  (Dkt. 974.)  Thereafter,

19   the parties resumed arm's-length negotiations with the assistance of mediator Hon. Layn Phillips

20   (Ret.), while continuing to litigate pre-trial matters.  Plaintiffs filed a reply in support of their

21   motion for application of the *per se* standard (Dkt. 988), and Defendants requested leave to file a

22   supplemental opposition (Dkts. 990 & 990-1), which was granted (Dkt. 1023).  Plaintiffs also

23   filed a motion to unseal all papers associated with their motion to compel (Dkt. 991), which

24   Defendants opposed (Dkt. 994; *see also* Dkt. 1029), and the Court granted in part and denied in

25   part (Dkt. 1047).

26   Meanwhile, on September 4, 2014, Defendants filed a Petition for a Writ of Mandamus

27   with the United States Court of Appeals for the Ninth Circuit, seeking an order vacating the

28   Court's denial of preliminary approval and directing the Court to preliminarily approve the

1260357.3

1  $324,500,000 settlement.  (9th Cir. Case No. 14-72745, Dkt. 1-2.)  On September 22, 2014, the

2  Ninth Circuit issued an order stating that Defendants' "petition for a writ of mandamus raises

3  issues that warrant a response," ordered Plaintiffs to file a response, set a date for Defendants'

4  reply, and ordered that upon completion of briefing the matter be placed on the next available

5  merits panel calendar for oral argument.  (9th Cir. Dkt. 2; Dkt. 993.)  Plaintiffs (and Michael

6  Devine separately) opposed Defendants' petition (9th Cir. Dkts. 4 & 6), and Defendants filed a

7  reply (9th Cir. Dkt. 10).  Putative amici curiae Chamber of Commerce of the United States of

8  America, California Chamber of Commerce, and economic scholars filed motions for leave to file

9  amici curiae briefs in support of the petition (9th Cir. Dkts. 8 & 9), which the Ninth Circuit

10  referred to the panel to be assigned to hear the merits of the petition (9th Cir. Dkt. 15).  Plaintiffs

11  (and Michael Devine separately) opposed the motions for leave to file amici curiae briefs.  (9th

12  Cir. Dkts. 13 & 16.)  The Ninth Circuit scheduled oral argument on the petition for March 13,

13  2015.  (9th Cir. Dkt. 19.)

14        At the time of the current Settlement, the following motions remained pending:

15  Defendants' motion to exclude Dr. Marx's testimony; Plaintiffs' motion to exclude Defendants'

16  experts' testimony; Plaintiffs' motion for application of the *per se* standard; Defendants' motions

17  *in limine*; and Plaintiffs' motion to compel.  In addition, Plaintiffs and Defendants have continued

18  to engage in the exchange of extensive pretrial disclosures and conferences regarding trial

19  exhibits, witnesses, the joint pretrial statement, the authentication of business records and

20  potential depositions related thereto, and many other issues.  (Dermody Decl. ¶¶ 12 and 14, Dkt.

21  1033.)

22        On January 15, 2015, Plaintiffs moved for preliminary approval of the Settlement.  (Dkt.

23  1032.)  Plaintiff Michael Devine and Defendants joined separately (Dkts. 1041 & 1039).  All

24  Named Plaintiffs and Class Representatives support the Settlement.  (*See* Fichtner Decl. ¶¶ 4-6,

25  Dkt. 1034; Hariharan Decl. ¶¶ 4-6, Dkt. 1035; Stover Decl. ¶¶ 4-6, Dkt. 1036; Devine Joinder,

26  Dkt. 1041).

27        On March 3, 2015, the Court granted Plaintiffs' motion for preliminary approval of the

28  Settlement, approved the form and manner of notice to the Class, and scheduled a final approval

- 7 -

1    hearing.  (Dkt. 1054.)

2         On May 7, 2015, Plaintiffs moved for attorneys' fees, reimbursement of out-of-pocket

3    costs, and service awards for the Named Plaintiffs.  (Dkt. 1075.)

4         On June 5, 2015, the Notice Administrator filed an affidavit of compliance with the

5    Court-approved notice requirements.  (*See* Decl. of Kenneth Jue, Dkt. 1086 ("Jue Decl.")).

6    **III.    TERMS OF THE SETTLEMENT**

7         The Settlement resolves all claims of Plaintiffs and the Class against Defendants.  The

8    details are contained in the Settlement Agreement attached as Exhibit 1 to the Dermody

9    Declaration.  (Dkt. 1033-1.)  The key terms of the Settlement are described below.

10        **A.    Settlement Consideration**

11        Defendants will pay $415,000,000 to resolve the claims of Plaintiffs and the Class.[4]

12   Defendants deposited an initial sum of $1,000,000 into an escrow account (the "Notice Fund"),

13   held and administered by the escrow agent, within 10 days of preliminary settlement approval.

14   The Notice Fund has been, and will continue to be, used in accordance with applicable orders of

15   the Court for notice and administration costs.  (Preliminary Approval Order at 6; Settlement

16   Agreement § III.A.)  Any money remaining in the Notice Fund after payment of notice and

17   administration costs will be distributed with other Settlement funds.  (*Id*.)  If the Settlement is

18   finally approved, Defendants will pay the remaining amount—$414,000,000—into the escrow

19   account within the longer of 7 calendar days or 5 business days of the Effective Date.[5]  (*Id*.)  The

20   Settlement Fund will be utilized in accordance with applicable orders of the Court for payment of

21   Class member settlement shares, Class Representative service awards (if approved), and Court-

22   approved attorneys' fees, costs, and litigation expenses (if approved).

23        **B.    Monetary Relief to Class Members**

24        Each Class member will receive a share of the Settlement Fund.  No Class member will be

---

25   [4] Defendants were potentially entitled to a pro rata reduction of this amount in the event that 4%
     or more of Class members (that is, at least 2,579 Class members) properly excluded themselves
26   from the action.  (Settlement Agreement § VIII.T.)  In fact, only 56 Class members, or only about
     .09%, excluded themselves.  (*See* Jue Decl., ¶ 2, filed herewith.)  Accordingly, Defendants will
27   not be entitled to any pro rata reduction.
     [5] The Settlement Agreement defines the "Effective Date" in § II.F.

28

required to submit a claim to participate.  The Settlement Fund will be distributed based upon the following plan of allocation (Settlement Agreement, Ex. B):

Class Members who have not opted out will be eligible to receive a share of the Settlement Fund net of all applicable reductions based on a formula using a Class Member's base salary paid on the basis of employment in a "Class Position" within the "Class Period" as set forth in the Class definition.  In other words, each Class Member's share of the Settlement Fund is a fraction, with the Class Member's total base salary paid on the basis of employment in a Class Position during the Class Period as the numerator and the total base salary paid to all Class Members on the basis of employment in a Class Position during the Class Period as the denominator:

> (Class Member's individual total base salary paid on the basis of employment in Class Positions during the Class Period) ÷ (Total of base salaries of all Class Members paid on the basis of employment in Class Positions during the Class Period).

Each Class Member's fraction shall be multiplied against the Settlement Fund net of court-approved costs, service awards, and attorneys' fees and expenses, and the Dispute Fund.

There will be no reversion of Settlement funds to any Defendant.

**C.     Release of All Claims Against the Defendants**

In exchange for the Defendants' monetary consideration, upon entry of a final judgment approving the Settlement, Plaintiffs and the Class will release the Defendants and all Released Parties from all claims arising from or related to the facts, activities or circumstances alleged in the Consolidated Amended Complaint (Dkt. 65) or any other purported restriction on competition for employment or compensation of Class Representatives or Class members, up to the Effective Date of the Settlement, whether or not alleged in the Consolidated Amended Complaint, as described in the Settlement Agreement.  (Settlement Agreement § V.)

**D.     Attorneys' Fees, Costs, and Class Representative Service Payments**

The Settlement recognizes that Class Counsel may seek attorneys' fees and reimbursement of costs and expenses incurred in the prosecution of this action.  (Settlement Agreement § VII.)  Pursuant to the Settlement, Class Counsel look solely to the Settlement Fund

1   for satisfaction of such fees and costs. (*Id.*)

2       On May 7, 2015, Class Counsel moved for attorneys' fees, reimbursement of out-of-

3   pocket costs, and service awards for the Named Plaintiffs. (Dkt. 1075.) Class Counsel seek

4   $81,125,000 (approximately 19.5 percent) of the Settlement Fund in attorneys' fees, below the

5   Ninth Circuit benchmark of 25 percent; $1,200,000 in unreimbursed expenses Class Counsel

6   necessarily incurred in connection with the prosecution of this action after accounting for partial

7   reimbursement of expenses through the preceding settlements with Intuit, Inc., Lucasfilm Ltd.,

8   and Pixar; and service awards of up to $160,0000 for each of the five Court-appointed Class

9   Representatives.

10      Also on May 7, 2015, Counsel for Plaintiff Michael Devine applied separately to the

11  Court for attorneys' fees and reimbursement of expenses, which, if awarded, shall be paid out of

12  the Settlement Fund separately from the Attorneys' Fees and Expenses to Class Counsel. (Dkt.

13  1068; Settlement Agreement § VII.)

14  **IV.    ARGUMENT**

15      **A.    The Class Action Settlement Approval Process**

16      Judicial proceedings under Federal Rule of Civil Procedure 23 have led to a defined three-

17  step procedure for the approval of class action settlements:

18      (1)   Preliminary approval of the proposed settlement after submission to the
              court of a written motion for preliminary approval;
19

20      (2)   Dissemination of notice of the proposed settlement to the class; and

21      (3)   A formal fairness hearing, or final settlement approval hearing, at which
              class members may be heard regarding the settlement, and at which
              evidence and argument concerning the fairness, adequacy, and
22            reasonableness of the settlement is presented.

23  *See* MANUAL FOR COMPLEX LITIGATION (Fourth) §§ 21.632, *et seq.* (2004). This procedure

24  safeguards class members' procedural due process rights and enables courts to fulfill their roles as

25  guardians of class interests. *See* 4 NEWBERG ON CLASS ACTIONS, §§ 11.22, *et seq.* (4th ed. 2002).

26      The Court here completed the first step in the settlement approval process when it granted

27  preliminary approval to the Settlements. (Dkt. 1054.) As discussed below, the second step has

28  been completed as well: the Court-approved notice plan was fully implemented. By this motion,

1    Plaintiffs request that the Court take the third and final step: granting final approval of the

2    Settlement.

3          **B.      The Court-Approved Notice Program Meets Applicable Standards and Has
               Been Fully Implemented.**

4

5          When a proposed class action settlement is presented for court approval, the Federal Rules

6    of Civil Procedure require:

7          the best notice that is practicable under the circumstances, including individual
           notice to all members who can be identified through reasonable effort.  The notice
8          must clearly and concisely state in plain, easily understood language:  (i) the
           nature of the action; (ii) the definition of the class certified; (iii) the class claims,
9          issues, or defenses; (iv) that a class member may enter an appearance through an
           attorney if the member so desires; (v) that the court will exclude from the class any
10         member who requests exclusion; (vi) the time and manner for requesting
           exclusion; and (vii) the binding effect of a class judgment on members under
11         Rule 23(c)(3).

12   Fed. R. Civ. P. 23(c)(2)(B).

13         The notice plan approved by this Court is commonly used in class actions like this one,

14   provided valid, due, and sufficient notice to class members, and constitutes the best notice

15   practicable under the circumstances.  The content of the notice complied with the requirements of

16   Rule 23(c)(2)(B).  The notice provided a clear description of who is a member of the Class and

17   the binding effects of Class membership.  (Jue Decl., Ex. A (Dkt. 1086-1).)  The notice explained

18   how to receive money from the Settlement, how to opt out of the Settlement, how to object to the

19   Settlement, how to obtain copies of papers filed in the case, and how to contact Class Counsel and

20   the Notice Administrator with any further questions or requests.  (*Id.*)

21         The notice also explained that the Settlement itself was filed publicly with the Court and

22   available online at www.hightechemployeelawsuit.com.  As a result, every provision of the

23   Settlement was available to each Class member.  In addition, other settlement documents were

24   available at the same website.  *See* http://www.hightechemployeelawsuit.com/case-

25   documents.aspx.

26         The Court approved this notice plan.  (Dkt. 1054 at 5.)  The Court ordered Heffler Claims

27   Group (the claims administrator previously appointed regarding the prior settlements with Intuit,

28   Inc., Lucasfilm Ltd., and Pixar) to transmit Class Member information in a secure manner to

                                              - 11 -

1   Gilardi & Co., LLC (the notice administrator appointed to administer the instant Settlement;

2   "Notice Administrator").  (*Id.* at 6-7.)  Heffler did so.  (Jue Decl., ¶ 2, Dkt. 1086.)  The Court

3   ordered that the Notice Administrator shall, by April 6, 2015, "cause the Settlement Notice to be

4   mailed by first-class mail, postage prepaid, to Class Members pursuant to the procedures

5   described in the Settlement, and to any Class Member who requests one; and, in conjunction with

6   Class Counsel, shall maintain the case-specific website providing case information, court

7   documents relating to the Settlement and the Notice."  The Notice Administrator did so.  (Jue

8   Decl., ¶¶ 3-7, Dkt. 1086.)  The Court found that this notice "satisfies the requirements of the

9   Federal Rules of Civil Procedure and of due process and, accordingly, is approved for

10  dissemination to the Class."  (Dkt. 1054 at 8.)

11          Class Members had a variety of methods by which to view relevant documents, contact

12  the Notice Administrator or Class Counsel, opt out of the Settlement, or object to the Settlement.

13  These methods included mail, telephone, a case-specific website, and email.  (Jue Decl., ¶¶ 3-7

14  and Ex. A, Dkt. 1086-1.)  For instance, the Notice Administrator received 780 calls to its toll-free

15  telephone number.  (*Id.* ¶ 6.)  The Notice Administrator received 56 requests for mailed copies of

16  the Notice over the phone, by email, and by mail.  (*Id.* ¶ 7.)  The Notice Administrator sent a

17  copy of the Notice whenever one was requested.  (*Id.*)  Class Members also contacted Class

18  Counsel, through both email and telephone, with questions and requests.  (Decl. of Dean M.

19  Harvey in Support of Plaintiffs' Motion for Final Approval of Class Action Settlement ("Harvey

20  Decl."), ¶ 2, filed herewith.)  Class Counsel answered Class Member questions and responded to

21  requests.  (*Id.*)

22          **C.      Final Approval of the Settlement is Appropriate.**

23          The law favors the compromise and settlement of class action suits.  *See*, *e.g.*, *Officers for

24  Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 635 (9th Cir. 1982); *Churchill Vill., L.L.C. v. GE*,

25  361 F.3d 566, 576 (9th Cir. 2004); *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th

26  Cir. 1992).  "[T]he decision to approve or reject a settlement is committed to the sound discretion

27  of the trial judge because [she] is 'exposed to the litigants and their strategies, positions and

28  proof.'"  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1988) (quoting *Officers for*

- 12 -

1  *Justice*, 688 F.2d at 626).  In exercising such discretion, courts should give "proper deference to

2  the private consensual decision of the parties. . . .  [T]he court's intrusion upon what is otherwise

3  a private consensual agreement negotiated between the parties to a lawsuit must be limited to the

4  extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or

5  overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a

6  whole, is fair, reasonable and adequate to all concerned."  *Id.* at 1027 (citation and quotations

7  omitted).  All of the relevant factors support final approval of the Settlements here.

8          "[V]oluntary conciliation and settlement are the preferred means of dispute resolution."

9  *Officers for Justice*, 688 F.2d at 625.  "[T]here is an overriding public interest in settling and

10  quieting litigation" and "[t]his is particularly true in class action suits."  *Van Bronkhorst v. Safeco

11  Corp.*, 529 F.2d 943, 950 (9th Cir. 1976); *see also Utility Reform Project v. Bonneville Power

12  Admin.*, 869 F.2d 437, 443 (9th Cir. 1989).  In evaluating a proposed class action settlement, the

13  Ninth Circuit has recognized that:

14          [T]he universally applied standard is whether the settlement is fundamentally fair,
            adequate and reasonable. The district court's ultimate determination will
15          necessarily involve a balancing of several factors which may include, among
            others, some or all of the following: the strength of plaintiffs' case; the risk,
16          expense, complexity, and likely duration of further litigation; the risk of
            maintaining class action status throughout the trial; the amount offered in
17          settlement; the extent of discovery completed, and the stage of the proceedings; the
            experience and views of counsel; the presence of a governmental participant; and
18          the reaction of the class members to the proposed settlement.

19  *Officers for Justice*, 688 F.2d at 625 (citations omitted); *accord Torrisi v. Tucson Elec. Power

20  Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993).

21          **1.      The Settlement Is the Product of Arm's-Length Negotiations Between
                      the Parties and Follows Years of Hard-Fought Litigation and**
22                   **Plaintiffs' Thorough Investigation.**

23          "'Before approving a class action settlement, the district court must reach a reasoned

24  judgment that the proposed agreement is not the product of fraud or overreaching by, or collusion

25  among, the negotiating parties'. . . ."  *City of Seattle*, 955 F.2d at 1290 (quoting *Ficalora v.

26  Lockheed Cal. Co.*, 751 F.2d 995, 997 (9th Cir. 1985)).  "Where, as here, a proposed class

27  settlement has been reached after meaningful discovery, after arm's length negotiation, conducted

28  by capable counsel, it is presumptively fair."  *M. Berenson Co., Inc. v. Faneuil Hall Marketplace,*

- 13 -

1   *Inc.*, 671 F. Supp. 819, 822 (D. Mass. 1987).  *See also City P'shp. Co. v. Atl. Acquisition Ltd.*

2   *P'shp.*, 100 F.3d 1041, 1043 (1st Cir. 1996) ("When sufficient discovery has been provided and

3   the parties have bargained at arms-length, there is a presumption in favor of the settlement.");

4   *Create-A-Card, Inc. v. Intuit Inc.*, No. CV-07-6452 WHA, 2009 U.S. Dist. LEXIS 93989, at *8-9

5   (N.D. Cal. Sept. 22, 2009) ("This Court begins its analysis with a presumption that a class

6   settlement is fair and should be approved if it is the product of arm's-length negotiations

7   conducted by capable counsel with extensive experience in complex class action litigation.");

8   *Linney v. Cellular Alaska P'shp*, No. C-96-3008 DLJ, 1997 U.S. Dist. LEXIS 24300, at *16

9   (N.D. Cal. July 18, 1997) ("The involvement of experienced class action counsel and the fact that

10  the settlement agreement was reached in arm's length negotiations, after relevant discovery had

11  taken place create a presumption that the agreement is fair."), *aff'd*, 151 F.3d 1234 (9th Cir.

12  1998).

13          The Settlement here is the product of extensive arm's-length negotiations.  All parties

14  were represented throughout these negotiations by counsel experienced in the prosecution,

15  defense, and settlement of complex antitrust and employment class actions.  (*See* Dermody Decl.,

16  ¶¶ 10-15. Dkt. 1033.)  The Settlement here occurred at a particularly advanced stage of this

17  litigation, after: substantial investigation by Class Counsel; briefing, argument, and denial of

18  Defendants' motions to dismiss (Apr. 18, 2012 Order; Dkt. 119); the completion of extensive fact

19  discovery, including the taking of 107 depositions, the review of millions of pages of documents,

20  and analysis of over 50 gigabytes of data consisting of approximately 80,000 different files

21  produced by Defendants (Dermody Decl. ¶¶ 4-5, Dkt. 1033); two rounds of class certification

22  briefing and argument, including the exchange of eight expert reports by four economists (Apr. 4,

23  2013 and Oct. 24, 2013 Orders; Dkts. 382 & 531); completion of expert merits discovery

24  (covering a total of 10 experts across the parties); and briefing, argument, and partial denial of

25  Defendants' motions for summary judgment and exclusion of expert testimony (Mar. 28, 2014

26  and Apr. 4, 2014 Orders; Dkts. 771 & 788).

27          The conduct of the parties in zealously representing their clients' interests reveals that the

28  Settlement is the result of arm's-length discussions with able counsel.  Following the Court's

1   August 8, 2014 denial of preliminary approval of an earlier attempt to settle this case, the parties

2   resumed vigorous litigation of pretrial matters.  Plaintiffs filed a reply in support of their motion

3   for application of the *per se* standard (Dkt. 988), and Defendants requested leave to file a

4   supplemental opposition (Dkts. 990 & 990-1), which Plaintiffs opposed (Dkt. 992).  Plaintiffs

5   also filed a motion to unseal all papers associated with their motion to compel (Dkt. 991), which

6   Defendants opposed (Dkt. 994; *see also* Dkt. 1029).

7        Meanwhile, on September 4, 2014, Defendants filed a Petition for a Writ of Mandamus

8   with the United States Court of Appeals for the Ninth Circuit, seeking an order vacating the

9   Court's denial of preliminary approval and directing the Court to preliminarily approve the

10  $324,500,000 settlement. (9th Cir. Case No. 14-72745, Dkt. 1.)  On September 22, 2014, the

11  Ninth Circuit issued an order stating that Defendants' "petition for a writ of mandamus raises

12  issues that warrant a response," ordered Plaintiffs to file a response, set a date for Defendants'

13  reply, and ordered that upon completion of briefing the matter be placed on the next available

14  merits panel calendar for oral argument.  (9th Cir. Dkt. 2; Dkt. 993.)  Plaintiffs (and Michael

15  Devine separately) opposed Defendants' petition (9th Cir. Dkts. 4 & 6), and Defendants filed a

16  reply (9th Cir. Dkt. 10).  Putative amici curiae Chamber of Commerce of the United States of

17  America, California Chamber of Commerce, and economic scholars filed motions for leave to file

18  amici curiae briefs in support of the petition (9th Cir. Dkts. 8 & 9), which the Ninth Circuit

19  referred to the panel to be assigned to hear the merits of the petition (9th Cir. Dkt. 15).  Plaintiffs

20  (and Michael Devine separately) opposed the motions for leave to file amici curiae briefs. (9th

21  Cir. Dkts. 13 & 16.)  The Ninth Circuit scheduled oral argument on the petition for March 13,

22  2015.  (9th Cir. Dkt. 19.)

23       The renewed struggle over pretrial matters, including locking horns over seeking

24  reinstatement of the prior settlement (in which Defendants accused Plaintiffs of breaching their

25  contractual commitments in opposing Defendants' writ petition; 9th Cir. Dkt. 10), reveal parties

26  fundamentally at odds and counsel vigorously litigating on behalf of their clients' interests.  The

27  record is the opposite of what would be expected were counsel to have shared an interest in

28  settling the case as expeditiously as possible.  Only very late in 2014, after months of additional

- 15 -

1    offers and counterproposals against a backdrop of preparing the case for trial, did the parties

2    eventually reach an agreement on a Settlement amount, and even then an announcement of their

3    agreement to settle waited additional weeks as they contested and ironed out every detail.

4                    **2.      The Settlement is Fair, Reasonable, and Adequate.**

5            The Settlement meets the standard for final approval.  As the Court found in preliminarily

6    approving the Settlement: "all of the relevant factors [for final approval] weigh in favor of

7    approving the Settlement proposed here."  (Dkt. 1054 at 2.)  "First, the Settlement appears to be

8    the result of arm's-length negotiations among experienced counsel."  (*Id.*)  "Second, the

9    consideration—a total of $415 million—is substantial, particularly in light of the risk that the jury

10   could find no liability or award no damages."  (*Id.* at 4.)  "Third, the Settlement's Plan of

11   Allocation provides a neutral and fair way to compensate Class members based on their salary

12   and alleged injury."  (*Id.*, citing *In re NASDAQ Mkt.-Makers Antitrust Litig.*, 176 F.R.D. 99, 102

13   (S.D.N.Y. 1997).)  "Fourth, litigation through trial would be complex and costly, which

14   settlement avoids."  (*Id.*, citing *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d

15   164, 174 (S.D.N.Y. 2000), *aff'd sub. nom. D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir.

16   2001).)  "While settlement provides the Class with a timely, certain, and meaningful cash

17   recovery, a trial—and any subsequent appeals—is highly uncertain, and in any event would

18   substantially delay any recovery achieved."  (*Id.*)  "Fifth, the Settling Parties agreed to settle at a

19   particularly advanced stage of the proceedings—after class certification and the completion of

20   discovery and dispositive motions."  (*Id.*)

21           In rejecting the earlier attempt to settle claims against Defendants for $324.5 million, the

22   Court noted: "If Remaining Defendants were to settle at the same (or higher) rate as [Lucasfilm,

23   Pixar, and Intuit], Remaining Defendants' settlement fund would need to total at least $380

24   million." (Dkt. 974 at 7.)  The Settlement under submission provides for a payment of $415

25   million, an amount that exceeds that suggested benchmark by $35 million.  Plaintiffs were

26   unwilling to resolve this case at the minimum of what the Court indicated, and continued

27   litigating the case vigorously in preparation for trial.  Whereas the Court's suggested benchmark

28   represented an enhancement to the previous proposed settlement of $55.5 million, the $415

1    million settlement amount reflects an enhancement of $90.5 million, exceeding the increase

2    required to satisfy the benchmark by roughly 63%.[1]  Further, Class Counsel capped their previous

3    fee request representing 25% of the previous settlement, ensuring that the Class would also

4    receive 100% of the additional upside secured, including the potentially $22,625,000 in additional

5    fees that Class Counsel might have requested if adhering to the Ninth Circuit's 25 percent

6    benchmark.[2]

7        Again, the record demonstrates arm's-length and antagonistic counsel zealously

8    advocating for their clients, resulting in an historic Settlement that the Court should approve.

9        In addition, the Plan of Allocation will provide each claimant with a fractional share that

10   will be multiplied against the net Settlement Fund, taking into account Court-approved costs,

11   service awards, and attorneys' fees.  (*See* Dermody Decl., Ex. 1 at Ex. B, Dkt. 1033-1.)  There

12   will be no reversion of unclaimed funds to any Defendant.  "A plan of allocation that reimburses

13   class members based on the extent of their injuries is generally reasonable."  *In re Oracle Sec.*

14   *Litig.*, No. 90-0931-VRW, 1994 U.S. Dist. LEXIS 21593, at *3 (N.D. Cal. June 16, 1994).  Here,

15   as explained above, Plaintiffs propose that the Settlement Fund be allocated based upon total base

16   salary received during the conspiracy period.  Such *pro rata* distributions are "cost-effective,

17   simple, and fundamentally fair."  *In re Airline Ticket Comm'n Antitrust Litig.*, 953 F. Supp. 280,

18   285 (D. Minn. 1997); *see also In re Elec. Carbon Prods. Antitrust Litig.*, 447 F. Supp. 2d 389,

19   404 (D.N.J. 2006) (finding *pro rata* distribution "eminently reasonable and fair to the class

20   members.").

21           **3.    The Recommendation of Experienced Counsel Favors Approval.**

22       The judgment of experienced counsel regarding the Settlement should be given significant

23   weight.  *See Linney v. Cellular Alaska P'Ship*, Nos. 96-3008-DLJ, 97-0203-DLJ, 97-0425-DLJ,

24   & 97-0457-DLJ, 1997 U.S. Dist. LEXIS 24300, at *16 (N.D. Cal. July 18, 1997), *aff'd* 151 F.3d

25   1234 (9th Cir. 1998); *Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980); *Boyd*

26   *v. Bechtel Corp.*, 485 F. Supp. 610, 622 (N.D. Cal. 1979) ("The recommendations of plaintiffs'

27   [1] $90.5 million / $55.5 million = ~1.63.

28   [2] $90.5 million * .25 = $22,625,000.

NOTICE OF MOTION AND
MOTION ISO FINAL SETTLEMENT APPROVAL
MASTER DOCKET NO. 11-CV-2509-LHK

1   counsel should be given a presumption of reasonableness.").  Class Counsel have extensive

2   experience litigating, trying, and settling antitrust and employment class actions.  They have

3   conducted an in-depth investigation into the factual and legal issues raised in this action, and have

4   litigated the case relentlessly for years.  The fact that qualified and well-informed counsel endorse

5   the Settlement as being fair, reasonable, and adequate weighs in favor of the Court approving it.

6                           **4.       The Class Response Favors Final Approval.**

7           A court may appropriately infer that a class settlement is fair, reasonable, and adequate

8   when few Class members object to it.  *See Marshall v. Holiday Magic, Inc.*, 550 F.2d 1173, 1178

9   (9th Cir. 1977); *Nat'l Rural Telecomm. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 529 (C.D. Cal.

10  2004) ("the absence of a large number of objections to a proposed class settlement action raises a

11  strong presumption that the terms of a proposed class action settlement are favorable to

12  the class members.").  Indeed, a court can approve a class action settlement over the objections of

13  a significant percentage of Class members.  *See Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 624

14  (N.D. Cal. 1979) ("A settlement is not unfair simply because a large number or a certain

15  percentage of class members oppose it, as long as it is otherwise fair, adequate, and reasonable");

16  *City of Seattle*, 955 F.2d at 1291-96.

17          Out of 64,466 Class Members, only 11 submitted objections (about .017 percent of the

18  Class, or about one in every 5,860 Class Members).[3]  (Jue Supp. Decl, ¶ 3.)  In addition, only 56

19  Class Members have opted out of the Settlement (less than .09 percent of the Class).[4]  (*Id.*, ¶ 2.)

20  This number of opt-outs is only about one-third the number of Class Members who opted-out of

21  the prior approved settlements with Intuit, Lucasfilm, and Pixar.  (*See* Dkt. 915-1.)  This number

22  of opt-outs is also substantially below the 2,579 opt-outs (a rate of 4%) that was required to

23  provide Defendants with a pro rata reduction in the Settlement amount.  Thus Defendants will pay

24  the full $415 million.  The low rates of objections and opt-outs are "indicia of approval of the

_____

[3] Three of these Class Members—Mr. Hsu, Dr. Veach, and Mr. Zavislak—also objected to the
request for attorneys' fees or the request for Class Representative service awards, which will be
addressed separately in the Reply brief on Class Counsel's Motion for Attorneys' Fees,
Reimbursement of Expenses, and Service Awards.

[4] One of these opt-out requests was submitted one day late.  Class Counsel take the position that it
should be considered timely.

1  class." *Hughes v. Microsoft Corp.*, 2001 U.S. Dist. LEXIS 5976, *24 (W.D. Wash. Mar. 21,

2  2001) (finding indicia of approval when nine class members out of 37,155, or just over .02%,

3  who received notice submitted objections, and "less than 1%" opted out); *Sugarman v. Ducati N.*

4  *Am., Inc.*, 2012 U.S. Dist. LEXIS 3961, *8 (N.D. Cal. Jan. 12, 2012) (objections from 42 of

5  38,774 class members—more than .1 percent, or more than five times the rate of objection as

6  here—is a "positive response"); *Churchill Village, LLC v. General Electric*, 361 F.3d 566, 577

7  (9th Cir. 2004) (affirming district court's approval of settlement where forty-five of 90,000 class

8  members objected to the settlement (.05 percent), and 500 class members opted out (about .56

9  percent)).

10      No objection here raises meritorious concerns.  *See Browne v. Am. Honda Motor Co.*, No.

11  09-06750, 2010 U.S. Dist. LEXIS 145475, at *51 (C.D. Cal. July 29, 2010) ("The fact that there

12  is opposition does not necessitate disapproval of the settlement.  Instead, the court must

13  independently evaluate whether the objections being raised suggest serious reasons why the

14  proposal might be unfair.") (quoting *Boyle v. Arnold-Williams*, No. 01-5687, 2006 U.S. Dist.

15  LEXIS 91920, *10-11 (W.D. Wash. Dec. 20, 2006) (quotations omitted)).  This positive response

16  from the Class strongly favors Settlement approval.

17                    a.    **Objections based on Size of Monetary Fund**

18      Six Class Members out of 64,466 object on the basis (in whole or in part) that the

19  Settlement should be rejected because it should be larger: Shash Basavaraju (aka Shash

20  Schaekar), David Hsu, Loren Kohnfelder, Dimitrios Loulourgas, Devesh Parekh, and Delia Terra.

21  (Jue Supp. Decl., Exs. C, D, F-I, and K.)

22      • **Mr. Basavaraju** contends that he was underpaid at Intel beginning in 2004, a time
          period that predates Intel's participation in the alleged misconduct at issue.  He
23          then appears to have discussed job opportunities with recruiters from Apple and
          Google in 2007 (during the alleged conspiracy period), and applied to other
24          companies that are not alleged to be part of the misconduct at issue (AMD, IBM,
          and Honeywell).  He asserts that, in the last 9 years, he has lost approximately
25          $400,000 in compensation, and lost other personal opportunities.
26
27      • **Mr. Hsu** believes his pay was suppressed by "at least $10,000 per year" because
          the United States Department of Energy offered him a salary that was $2,000 less
28          than his ending salary at Intel.  He objects to any settlement that would pay him

- 19 -

less than the full amount of his own estimate of his damages.

- **Mr. Kohnfelder** asserts that the Court should reject the Settlement as too low because it would encourage similar misconduct in the future.

- **Mr. Loulourgas** objects to the size of the settlement because, according to his estimate, it translates to approximately 63% of his estimated damages, should reflect the potential for "punitive damages," and should take into account the "miniscule" probability of a loss at trial.

- **Mr. Parekh** objects because damages to the Class are likely larger than what the Class will receive from the Settlement, and he prefers a trial to a settlement.

- **Ms. Terra** objects to the size of the settlement because, according to her estimate, it translates to approximately 55% of her full estimated damages, should reflect the potential for "punitive damages," and should take into account the "small" probability of a loss at trial.

In objecting to the size of the Settlement, none of these Class Members adequately take into account the risks and delays involved in proceeding to trial. They ignore that the Settlement provides the Class with a timely, certain, and meaningful cash recovery, while a trial—and any subsequent appeal—is highly uncertain, would entail significant additional costs, and in any event would substantially delay any recovery achieved. "'[T]he very essence of a settlement is compromise, a yielding of absolutes and an abandoning of highest hopes.'" *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998) (quoting *Officers for Justice*, 688 F.2d at 624) (affirming settlement approval). "Estimates of what constitutes a fair settlement figure are tempered by factors such as the risk of losing at trial, the expense of litigating the case, and the expected delay in recovery (often measured in years)." *In re Nucoa Real Margarine Litig.*, Case No. CV 10-00927 MMM (AJWx), 2012 U.S. Dist. LEXIS 189901, at *46 (C.D. Cal. June 12, 2012). Thus, "[t]he fact that a proposed settlement may only amount to a fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is grossly inadequate and should be disapproved." *Linney*, 151 F.3d at 1242 (internal quotation omitted).

The $415 million Settlement (in addition to the $20 million previously achieved) is—by a substantial margin—an historic achievement (Dkt. 1075, Ex. A), and followed a DOJ investigation into the same misconduct in which the DOJ closed its investigation without seeking

1260357.3

1   a penny in penalties or restitution.  The reasonableness of the Settlement is also confirmed by

2   comparing it to Plaintiffs' single damages estimate.  The total settlements achieved in this action

3   exceed 14 percent of Plaintiffs' proposed damages estimate,[5] a damages estimate Defendants

4   were prepared to vigorously contest.  District courts in the Ninth Circuit routinely approve

5   settlements with much larger differences between the settlement amount and estimated damages.[6]

6   The substantial risks Plaintiffs faced in proceeding to trial are discussed in Plaintiffs' prior reply

7   memorandum in support of preliminary approval.  (Dkt. 938 at 10-14.  *See also* Dkt. 1032 at 18-

8   20.)

9            That certain Class Members evaluate the risks differently, or would prefer to go to trial

10  despite those risks, do not prevent the Court from granting final approval to the Settlement.  *See*

11  *Browne v. Am. Honda Motor Co.*, No. 09-06750, 2010 U.S. Dist. LEXIS 145475, at *51 (C.D.

12  Cal. July 29, 2010) ("The fact that there is opposition does not necessitate disapproval of the

13  settlement. Instead, the court must independently evaluate whether the objections being raised

14  suggest serious reasons why the proposal might be unfair.") (quoting *Boyle v. Arnold-Williams*,

15  No. 01-5687, 2006 U.S. Dist. LEXIS 91920, *10-11 (W.D. Wash. Dec. 20, 2006) (quotation

16  omitted)).

17           Class Members Mr. Hsu, Mr. Kohnfelder, Mr. Loulourgas, Mr. Mills, and Ms. Terra offer

18  details of their individual employment histories to suggest that the amounts they will receive

19  under the Settlement are insufficient to compensate them in full for the amount of wage

20  suppression they would attribute to the alleged conspiracy.  Such assessments, even were

21  individual employees able to calculate with precision what their individual salaries would have

22  [5] $435,000,000 / $3,065,184,307 (Dkt. 856-8, at 21) = ~ 14.2 percent.

23  [6] *See, e.g., In re Toys "R" Us-Del., Inc. Fair & Accurate Credit Transactions Act (FACTA) Litig.*,
    295 F.R.D. 438 (C.D. Cal. 2014) (granting final approval of a settlement providing for

24  consideration to class members reflecting 3% of possible recovery ($391.5 million value
    compared to exposure up to $13.05 billion)); *Reed v. 1-800 Contacts, Inc.*, No. 12-cv-02359 JM

25  (BGS), 2014 U.S. Dist. LEXIS 255 (S.D. Cal. Jan. 2, 2014) (granting final approval where
    settlement represented 1.7% of possible recovery (net settlement fund of $8,288,719.16, resolving

26  claims worth potentially $499,420,000)); *In re LDK Solar Secs. Litig.*, No. C 07-5182 WHA,
    2010 U.S. Dist. LEXIS 73530, at *6 (N.D. Cal. Jun. 21, 2010) (granting final approval where

27  settlement was 5% of estimated damages); *In re Linerboard Antitrust Litig.*, 296 F. Supp. 2d 568,
    581 & n.5 (E.D. Pa. 2003) (gathering cases where courts approved settlements achieving single-
    digit percentages of potential recoveries).

28

1    been absent collusion, do not take into account the risk, delay, and further costs associated with

2    trial and subsequent appeals.

3          Lastly, Class Members Mr. Parekh, Mr. Schaekar, Mr. Smith, and Ms. Terra state that the

4    Settlement is not enough to punish the Defendants for their wrongdoing.  These objections are at

5    odds with the historic nature of the recovery in this monopsony case.  (Rubenstein Decl. ¶ 41;

6    Dkt. 1073-1.)  An unprecedented, record-setting $415 million settlement sends a strong message.

7    A settlement does not need to provide for all possible recoverable damages to deter wrongdoing.

8    *See*, *e.g.*, *United States v. State of New Jersey*, 1995 U.S. Dist. LEXIS 22645, *39 (D.N.J. Mar.

9    14, 1995) ("The $7.125 million settlement amount satisfies the United States' desire to provide a

10   reasonable amount of compensation to identifiable victims of alleged discrimination and sends a

11   strong message to deter discrimination by other employers").[7]

12                          **b.      Objection to Case Itself**

13         Taking the opposite view of the impact of Defendants' alleged misconduct, Class member

14   Kenneth Caviasca objects on the basis that "the case makes no sense," specifically that "Cross

15   hiring among companies that pay at a similar pay range would have no significant impact on the

16   company expenses or have even have [sic] a long term benefit for the moving employees."  (Jue

17   Supp. Decl., Ex. B.)  This objection does not comment on any aspect of the Settlement, but rather

18   opposes the claims alleged as being entirely baseless.  Because this objection appears to support

19   no recovery for the Class, it appears Mr. Caviasca's interests are adverse to the Class and the

20   objection should be overruled.  *Wren v. RGIS Inventory Specialists*, No. 06-05778-JCS, 2011

21   U.S. Dist. LEXIS 38667, at *40-41 (N.D. Cal. Apr. 1, 2011) (overruling objections submitted that

22   "do not go to the fairness of the settlement").

23

24   _____

[7] An additional Class Member submitted an anonymous comment, stating that the "settlement is
25   too low."  (Jue Supp. Decl., Ex. O.)  This anonymous comment fails to comply with the
     requirements for objecting to the Settlement.  (*See* Notice at 11, Dkt. 1033-1.)  Nevertheless, this
26   Class Member's comment should be rejected for the same reasons as the six identified Class
     Member objectors described above.  In addition, Nelson Minar submitted a comment with his
27   opt-out request, stating: "I do not feel that the settlement is sufficient."  (Jue Supp. Decl., Ex. P.)
     The Court should reject this statement for the same reasons as explained above regarding Class
28   Members who objected on the basis that the Settlement should be larger.  *See* Part IV.4.a, *supra*.

1

c.      <u>**Objection to Any Settlement Short of A Trial Verdict**</u>

2        Class member Albert Smith objects because he prefers to have the case proceed to trial,

3   regardless of ***any*** settlement amount or potential recovery at trial: "If the jury finds that these

4   corporations did nothing, the defendants deserve to be completely exonerated in public.  If the

5   jury finds that they violated the law, I do not care what the jury decides to award the class; I care

6   only that the companies are found guilty."  (Jue Supp. Decl., Ex. J.)  Mr. Smith's desire for a trial,

7   regardless of the probability of success or amount of recovery for the Class, is adverse to the

8   interests of the Class, and inconsistent with the well-established principle that "voluntary

9   conciliation and settlement are the preferred means of dispute resolution."  *Officers for Justice*,

10  688 F.2d at 625.

11

d.      <u>**Objection Based on Misunderstanding of this Settlement**</u>
<u>**Compared to the Earlier Settlements With Intuit, Lucasfilm,**</u>

12

<u>**and Pixar**</u>

13       Class member Prabhakar Kotla objects because he incorrectly estimates that each Class

14  member will receive an average of only 1 percent of what each Class member received from the

15  earlier settlements with Intuit, Lucasfilm, and Pixar.  (Jue Supp. Decl., Ex. F.)  In fact, the

16  average Class Member will receive about ***thirty times*** more from this Settlement than what the

17  average Class Member received from the earlier settlements with Intuit, Lucasfilm, and Pixar.

18  (An average net Class Member recovery of approximately $5,072 here, compared with an average

19  net Class Member recovery from the earlier settlements of approximately $172.)

20

e.      <u>**Objection Based on Plan of Allocation**</u>

21       Class member Davesh Parekh objects to the formula for allocating the Settlement.  (Jue

22  Supp. Decl., Exs. G and H.)  He argues that the plan of allocation should take equity

23  compensation into account.  The plan of allocation is based upon each Class member's relative

24  share of base salary paid on the basis of employment in Class position during the Class period.

25  (Settlement Agreement, Ex. B.)  While each Defendant used a different balance of base salary,

26  bonuses, and equity compensation, all Defendants used base salary structures in a consistent and

27  uniform manner, linked by systems of internal equity (as confirmed by the expert reports of Dr.

28  Kevin Hallock) that caused the salary structures to move together.  Thus, base salary provides a

- 23 -

1    neutral and uniform metric by which to allocate the Settlement, consistent with Plaintiffs' expert

2    opinions. "A plan of allocation that reimburses class members based on the extent of their

3    injuries is generally reasonable." *In re Oracle Sec. Litig*., No. 90-0931-VRW, 1994 U.S. Dist.

4    LEXIS 21593, at *3 (N.D. Cal. June 16, 1994). The Settlement's plan of allocation does exactly

5    that.

6                              **f.    Objections Based on Insufficient Notice of Individual Award
                                       Allocations**

7

8            Class members Mr. Hsu, Eric Veach and Mark Zavislak argue that each Class Member

9    should have been provided their individual allocation amounts. (Jue Supp. Decl., Exs. C, L-N.)

10   But a precise award estimate for each Class Member cannot be computed until the Notice

11   Administrator confirms and processes all timely opt-outs (taking into account opt-outs who will

12   thereby receive nothing and reallocating their shares of the Settlement fund to the remaining

13   Class Members); takes into account the Court's pending determinations on attorneys' fees,

14   unreimbursed out-of-pocket costs, Named Plaintiff service awards, and Settlement administration

15   costs; and processes Defendants' Class Member data and resolves all data questions.

16   Nevertheless, general estimates can be made from documents in the record. The Notice provided

17   the Settlement's plan of allocation, apprising Class Members of how the Settlement would be

18   divided. (Jue Decl., Ex. A at 6: "How much money can I get from the Settlement?", Dkt. 1086-

19   1.) The Notice also provided the gross Settlement amount, as well as proposed deductions for

20   attorneys' fees, unreimbursed out-of-pocket costs, Class Representative service awards, and costs

21   of administering the Settlement. (*Id.* at 6, 8.) The Notice also provided contact information for

22   Class Counsel. Hundreds of Class Members contacted Class Counsel directly, through email or

23   telephone, to ask questions. (Harvey Decl., ¶ 2.) When Class Members asked questions

24   regarding their individual allocation from the Settlement, Class Members were informed about

25   how the Settlement's plan of allocation worked, the likely average net recovery (approximately

26   $5,072), and why a more precise allocation estimate would not be possible until further

27   information became available. (*Id.*, ¶ 2.)

28

**V.     CONCLUSION**

For the reasons set forth above, Plaintiffs respectfully request that the Court grant final approval to the Settlement; approve the Notice as being in compliance with Federal Rule of Civil Procedure 23 and due process; and approve the proposed Plan of Allocation as fair, reasonable, and adequate.

Respectfully submitted,

Dated:  June 15, 2015          LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP

By:      */s/ Kelly M. Dermody*
         Kelly M. Dermody

Richard M. Heimann (State Bar No. 63607)
Kelly M. Dermody (State Bar No. 171716)
Brendan Glackin (State Bar No. 199643)
Dean Harvey (State Bar No. 250298)
Anne B. Shaver (State Bar No. 255928)
275 Battery Street, 29th Floor
San Francisco, California  94111-3339
Telephone:  415.956.1000
Facsimile:  415.956.1008

JOSEPH SAVERI LAW FIRM, INC.

By:      */s/ Joseph R. Saveri*
         Joseph R. Saveri

Joseph R. Saveri (State Bar No. 130064)
James Dallal (State Bar No. 277826)
JOSEPH SAVERI LAW FIRM, INC
505 Montgomery Street, Suite 625
San Francisco, CA 94111
Telephone:  415. 500.6800
Facsimile:   415. 395.9940

*Co-Lead Class Counsel*

- 25 -