Richard M. Heimann (State Bar No. 63607)
Kelly M. Dermody (State Bar No. 171716)
Brendan P. Glackin (State Bar No. 199643)
Dean M. Harvey (State Bar No. 250298)
Anne B. Shaver (State Bar No. 255928)
LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Telephone: (415) 956-1000
Facsimile: (415) 956-1008

Joseph R. Saveri (State Bar No. 130064)
James Dallal (State Bar No. 277826)
JOSEPH SAVERI LAW FIRM, INC.
505 Montgomery, Suite 625
San Francisco, CA 94111
Telephone: 415.500.6800
Facsimile: 415.395.9940

*Co-Lead Class Counsel*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| IN RE: HIGH-TECH EMPLOYEE ANTITRUST LITIGATION<br><br>THIS DOCUMENT RELATES TO:<br><br>ALL ACTIONS | Master Docket No. 11-CV-2509-LHK<br><br>**CLASS COUNSEL'S REPLY MEMORANDUM IN SUPPORT OF MOTION FOR ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND SERVICE AWARDS**<br><br>Date:        July 9, 2015<br>Time:        1:30 pm<br>Courtroom: Room 8, 4th Floor<br>Judge:       Honorable Lucy H. Koh |

**TABLE OF CONTENTS**

Page

I. INTRODUCTION ............................................................................................................. 1

II. ARGUMENT .................................................................................................................... 1

    A. The Fee Request Meets All Standards for Approval ............................................. 1

    B. The Objections Regarding the Reasonableness of Class Counsel's Fee Should Be Overruled .................................................................................................. 3

    C. The Objections Regarding Notice of Class Counsel's Fee Request Should Be Overruled ....................................................................................................... 10

    D. The Objections Regarding Defendants' Agreement Not to Comment on or Oppose Class Counsel's Fee Request Should Be Overruled ............................... 12

    E. The Objection Asking the Court to Examine the Accuracy of Class Counsel's Time Records Should Be Overruled ...................................................... 13

    F. The Objection to Providing Named Plaintiffs with Service Awards Should Be Overruled ....................................................................................................... 13

III. CONCLUSION ............................................................................................................... 14

# TABLE OF AUTHORITIES

**Page**

### CASES

*Barrera, et al. v. The Home Depot U.S.A., Inc.*,
  Case No. 12-CV-5199-LHK, 2015 WL 2437897 (N.D. Cal. May 20, 2015) ............................ 2

*Beckman v. KeyBank, N.A.*,
  293 F.R.D. 467 (S.D.N.Y. 2013) ........................................................................................... 6

*Blum v. Stenson*,
  465 U.S. 886 (1984) ......................................................................................................... 1, 3

*Boeing Co. v. Van Gemert*,
  444 U.S. 472 (1980) ............................................................................................................ 1

*Buccellato, et al. v. AT&T Operations, Inc.*,
  Case No. 10-463-LHK, 2011 WL 3348055 (N.D. Cal. June 30, 2011) ............................... 2, 6

*de Mira v. Heartland Employment Serv., LLC, et al.*,
  Case No. 12-CV-4092-LHK, 2014 WL 1026282 (N.D. Cal. Mar. 13, 2014) .......................... 2

*Gunter v. Ridgewood Energy Corp.*,
  223 F.3d 190 (3d Cir. 2000) ................................................................................................. 3

*Hernandez v. Children's Creative Learning Ctrs., et al.*,
  Case No. 13-022460-LHK, 2014 U.S. Dist. Lexis 171713 (N.D. Cal. Dec. 11, 2014) ............ 2

*Hopkins, et al. v. Stryker Sales Corp., et al.*,
  Case No. 11-CV-2786-LHK, 2013 WL 496358 (N.D. Cal. Feb. 6, 2013) .............................. 2

*In re Easysaver Rewards Litig.*,
  921 F. Supp. 2d 1040 (S.D. Cal. 2013) ................................................................................ 13

*In re High-Tech Employee Antitrust Litig.*,
  Case No. 11-CV-2509-LHK, Dkt. 916 (N.D. Cal. May 16, 2014) .......................................... 2

*In re Ins. Brokerage Antitrust Litig.*,
  282 F.R.D. 92 (D.N.J. 2012) ................................................................................................ 3

*In re Mercury Interactive Corp.*,
  618 F.3d 988 (9th Cir. 2010) .............................................................................................. 10

*In re Online DVD-Rental Antitr. Litig.*,
  779 F.3d 934 (9th Cir. 2015) .............................................................................................. 10

*In re Southwestern Milk Antitr. Litig.*,
  2013 U.S. Dist. LEXIS 70167 (E.D. Tenn. 2013) ................................................................. 9

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
  Case No. 7-md-1827-SI, Dkt. 7504 (N.D. Cal. Jan. 14, 2013) ............................... 5, 10, 11, 12

*In re Wash. Pub. Power Supply System Sec. Litig.*,
  19 F.3d 1291, 1300 (9th Cir. 1994) ................................................................................... 1, 6

*Johnson, et al. v. Sky Chefs, Inc.*,
  Case No. 11-CV-5619-LHK, Dkt. 155 (N.D. Cal. Feb. 6, 2014) ........................................... 2

*Li, et al. v. A Perfect Day Franchise, Inc., et al.*,
  Case No. 10-CV-1189-LHK, 2012 U.S. Dist. LEXIS 72781 (N.D. Cal. May 24, 2012) .......... 2

*Lobatz v. U.S. West Cellular of California, Inc.*,
  222 F.3d 1142 (9th Cir. 2000) .............................................................................................. 9

# TABLE OF AUTHORITIES
### (continued)

**Page**

*Milliron v. T-Mobile USA, Inc.*,
  Case No. 8-4149-JLL, 2009 U.S. Dist. LEXIS 101201 (D.N.J. Sept. 10, 2009) ......................... 3

*Morganstein v. Esber*,
  768 F. Supp. 725 (C.D. Cal. 1991) ......................................................................................... 2

*Paul, Johnson, Alston & Hunt v. Graulty*,
  886 F.2d 268 (9th Cir. 1989) ............................................................................................... 2, 3

*Reiter v. Sonotone Corp.*,
  442 U.S. 330 (1979) ............................................................................................................... 8

*Rodriguez v. West Publ'g Corp.*,
  563 F.3d 948 (9th Cir. 2009) ............................................................................................... 12

*Six Mexican Workers v. Ariz. Citrus Growers*,
  904 F.2d 1301 (9th Cir. 1990) ........................................................................................ 1, 2, 3

*Staton v. Boeing Co.*,
  327 F.3d 938 (9th Cir. 2003) .............................................................................................. 1, 3

*Vizcaino v. Microsoft Corp.*,
  290 F.3d 1043 (9th Cir. 2002) ........................................................................................ passim

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
  396 F.3d 96 (2d Cir. 2005) .................................................................................................... 9

*Zenith Radio Corp. v. Hazeltine Research, Inc.*,
  395 U. S. 100 (1969) ............................................................................................................. 8

## OTHER AUTHORITIES

Fed. Judicial Ctr., *Awarding Attorneys' Fees & Managing Fee Litig.* (2005) ............................... 1

1262554.5                                       - iii -                         REPLY MEMO. ISO MOT. FOR ATTYS' FEES,
                                                                                REIMBURSEMENT OF EXP., AND SVC. AWARDS
                                                                                MASTER DOCKET NO. 11-CV-2509-LHK

## I. INTRODUCTION

Out of approximately 64,466 Class Members, three objected to Class Counsel's request for fees (about .005 percent of the Class, or about one in every 21,489 Class Members), one objected to Class Counsel's request for Named Plaintiff service awards (about .002 percent of the Class), and none objected to Class Counsel's request for reimbursement of expenses. Respectfully, these three Class Member objectors do not raise meritorious concerns. The Court should overrule their objections and grant Plaintiffs' Motion for Attorneys' Fees, Reimbursement of Expenses, and Service Awards (Dkt. 1075).

## II. ARGUMENT

### A. The Fee Request Meets All Standards for Approval

Class Counsel request attorneys' fees of approximately 19.5 percent of the $415 million common fund: $81,125,000. Under the Ninth Circuit's common fund doctrine, Class Counsel have an equitable right to be compensated for their successful efforts in creating the common fund. *Staton v. Boeing Co.*, 327 F.3d 938, 967-68 (9th Cir. 2003). *See also Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) ("a litigant or a lawyer who recovers a common fund . . . is entitled to a reasonable attorney's fee from the fund as a whole"); *In re Wash. Pub. Power Supply System Sec. Litig.*, 19 F.3d 1291, 1300 (9th Cir. 1994) ("*WPPSS*") (same).

The most appropriate way to calculate a reasonable fee where, as here, contingency fee litigation has produced a common fund, is the percentage-of-the-fund method. *Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984); *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002); *Six Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990) (common fund fee is generally "calculated as a percentage of the recovery"). The percentage method comports with the legal marketplace in comparable contingency cases, where counsel's fee is typically based upon a percentage of any recovery. *See* Fed. Judicial Ctr., *Awarding Attorneys' Fees & Managing Fee Litig.*, at 73 (2005) (percentage method "helps ensure that the fee award will simulate marketplace rates, since most common fund cases are the kinds of cases normally taken on a contingency fee basis, by which counsel is promised a percentage of any recovery"). (*See also* Fitzpatrick Decl., Dkt. 1079, at ¶¶ 3, 8-9 (referencing empirical study where percentage

1262554.5                                                - 1 -                REPLY MEMO. ISO MOT. FOR ATTYS' FEES,
                                                                                          REIMBURSEMENT OF EXP., AND SVC. AWARDS
                                                                                          MASTER DOCKET NO. 11-CV-2509-LHK

1  of the fund recovery used as basis for fees in 88% of 688 settlements reviewed).)  "Courts in this
2  Circuit have held that a 'benchmark' of 25% constitutes a reasonable percentage of a common
3  fund for purposes of fee calculation."  *Hernandez v. Children's Creative Learning Ctrs., et al.*,
4  Case No. 13-022460-LHK, 2014 U.S. Dist. Lexis 171713, at *10 (N.D. Cal. Dec. 11, 2014)
5  (citing *Vizcaino*, 290 F.3d at 1047; *Six Mexican Workers*, 904 F.2d at 1311; *Paul, Johnson,*
6  *Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989); *Morganstein v. Esber*, 768 F. Supp.
7  725, 728 (C.D. Cal. 1991).)

8        This Court has consistently applied the percentage-of-the-fund method to requests for
9  attorneys' fees in common fund cases.  *See Barrera, et al. v. The Home Depot U.S.A., Inc.,* Case
10  No. 12-CV-5199-LHK, 2015 WL 2437897, at *1 (N.D. Cal. May 20, 2015) (awarding fee of 25
11  percent of common fund); *Hernandez*, 2014 U.S. Dist. Lexis 171713, at *11 ("at 24.1% of the
12  common fund, the requested fee is both below the 25% benchmark and well within the range of
13  percentages awarded in similar cases in this Circuit.") (citing to eight Ninth Circuit cases in
14  which the fee awards ranged from 28 percent of the common fund to 33.3 percent); *In re High-*
15  *Tech Employee Antitrust Litig.*, Case No. 11-CV-2509-LHK, Dkt. 916 at 5-6 (N.D. Cal. May 16,
16  2014) (awarding fee of 25 percent of common fund); *de Mira v. Heartland Employment Serv.,*
17  *LLC, et al.*, Case No. 12-CV-4092-LHK, 2014 WL 1026282, at *4 (N.D. Cal. Mar. 13, 2014)
18  (awarding fee of 28 percent of common fund); *Johnson, et al. v. Sky Chefs, Inc.*, Case No. 11-CV-
19  5619-LHK, Dkt. 155 (N.D. Cal. Feb. 6, 2014) (awarding fee of 33 percent of the "Maximum
20  Settlement Amount"); *Hopkins, et al. v. Stryker Sales Corp., et al.*, Case No. 11-CV-2786-LHK,
21  2013 WL 496358, at *1 and 6 (N.D. Cal. Feb. 6, 2013) (awarding fee of 30 percent of common
22  fund, noting that "in most common fund cases, the award exceeds the [25 percent] benchmark,"
23  and "nearly all common fund awards range around 30% even after thorough application of either
24  the lodestar or twelve-factor method") (quotations and edit omitted); *Li, et al. v. A Perfect Day*
25  *Franchise, Inc., et al.*, Case No. 10-CV-1189-LHK, 2012 U.S. Dist. LEXIS 72781, at *6 (N.D.
26  Cal. May 24, 2012) (awarding fee of 25 percent of settlement fund); *Buccellato, et al. v. AT&T*
27  *Operations, Inc.*, Case No. 10-463-LHK, 2011 WL 3348055, at *1 (N.D. Cal. June 30, 2011)
28  (awarding 25 percent of common fund, noting cases in which approved percentage-of-the-fund

fee awards resulted in multipliers of over 9).

Class Counsel's fee request of approximately 19.5 percent of the common fund is modest in light of the Ninth Circuit's 25 percent benchmark, and well-supported by the facts of this case.

### B. The Objections Regarding the Reasonableness of Class Counsel's Fee Should Be Overruled

Only two Class Members objected to the amount of Class Counsel's fee request: David Hsu and Eric Veach.[1]  (Jue Supp. Decl., Dkt. 1089, Exs. C and L-M.)

Mr. Hsu says only that the "attorneys receive too much of the settlement."  (Jue Supp. Decl., Dkt. 1089, Ex. C.)  He provides no rationale for his position.  He does not acknowledge that Class Counsel have an equitable right to be compensated for their efforts in creating the Settlement's common fund of $415 million.  *Staton*, 327 F.3d at 967.  He does not recognize that the appropriate way to compensate Class Counsel is the percentage-of-the-fund method where, as here, contingency fee litigation has produced a common fund.  *See Blum*, 465 U.S. at 900 n.16 (under the common fund doctrine, "a reasonable fee is based on a percentage of the fund bestowed on the class"); *Vizcaino*, 290 F.3d at 1047-48 (the benchmark fee award in common fund cases is 25 percent of the recovery obtained, and rejecting the "increase-decrease rule" whereby the fee percentage decreases as the amount of the common fund increases); *Six Mexican Workers*, 904 F.2d at 1311 (common fund fee is generally "calculated as a percentage of the recovery"); *Johnson*, 886 F.2d at 272-73 (requiring district court to apply percentage-of-the-fund method, and requiring that any departure from the 25 percent benchmark "be accompanied by a reasonable explanation of why the benchmark is unreasonable under the circumstances").

---

[1] That only two Class Members out of approximately 64,446 object to the amount of attorneys' fees requested further supports a conclusion that the request is reasonable.  *See Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 195 n.1 (3d Cir. 2000) (considering "the presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel" as a factor in approving a settlement); *In re Ins. Brokerage Antitrust Litig.*, 282 F.R.D. 92, 121 (D.N.J. 2012) ("The absence of substantial objections by Settlement Class members to the fees requested by Class Counsel strongly supports approval."); *Milliron v. T-Mobile USA, Inc.*, Case No. 8-4149-JLL, 2009 U.S. Dist. LEXIS 101201, at *30 (D.N.J. Sept. 10, 2009) (there "is strong evidence that the requested fee is reasonable" where "[o]nly five Class Members lodged objections to the amount of attorneys' fees requested").

1  Mr. Hsu does not consider that application of the Ninth Circuit's benchmark of 25 percent would
2  result in a fee award to Class Counsel of $103,750,000, nor does he consider that Class Counsel's
3  request for $81,125,000 is substantially less than the benchmark amount.

4  Mr. Hsu does not examine any of the considerations relevant to determining whether a
5  further downward departure from the Ninth Circuit's 25 percent benchmark is appropriate, such
6  as the result achieved, the risks of contingency representation, the complexities of the case and
7  skill and effort required of counsel, awards in similar cases; and whether counsel devoted
8  substantial time requiring counsel to forgo other work.  *Vizcaino*, 290 F.3d at 1048-50.  As Class
9  Counsel previously explained, consideration of these factors here confirms that a benchmark fee
10 of 25 percent would be appropriate, or indeed that an upward departure from 25 percent would be
11 well-supported.  (Dkt. 1075 at 16-19.)  The Court should overrule Mr. Hsu's objection.

12 Dr. Veach argues that Class Counsel's fee request of approximately 19.5 percent of the
13 common fund of $415 million is unreasonable, and suggests that the Court award less than half
14 this amount: only about 9.6 percent of the common fund.  (Jue Supp. Decl., Dkt. 1089, Ex. L at 2-
15 4 and Ex. M.)  Dr. Veach's first argument is that a request of 19.5 percent of the common fund is
16 unreasonable when compared to the 25 percent of the common fund Class Counsel received in
17 connection with the previously-approved settlements of $20 million with Intuit, Inc., Lucasfilm
18 Ltd., and Pixar.  (*Id.*, Ex. L at 2-3.)  It seems that this is a misunderstanding of the ratios across
19 settlements.  In fact, on a pro-rata basis, the recovery achieved here for the Class is greater and
20 the fee requested here is substantially *less* than in the previous settlements totaling $20 million.
21 While the $415 million Settlement is about 21 times the size of the earlier settlements of $20
22 million, the average net per Class Member recovery will be over 29 times larger (approximately
23 $5,071.53 compared with approximately $173.73).[2]  Class Counsel seek approximately 19.5
24 percent of the common fund here, rather than the benchmark 25 percent that the Court awarded

---

[2] This is due from both the lower percentage Class Counsel sought as fees and the smaller amount of unreimbursed costs (on both an absolute and proportional basis).  While about 18.5 percent of the earlier settlements went to reimburse costs ($3,699,844.31 of the $20 million common fund), here about 0.3 percent of the Settlement would be used to reimburse costs ($1,200,000 of the $415 million common fund).

1 previously (Dkt. 916 at 1-2).     Thus, on a proportional basis, Class Counsel would receive

2 substantially less, while Class Members would receive substantially more.  Dr. Veach also argues

3 that the Court should consider fees paid to Class Counsel in the previous Settlements.  (Jue Supp.

4 Decl., Dkt. 1089, Ex. M at 1-2.)  But this would make almost no difference to the percentage

5 requested (it would increase the percentage from about 19.5 to about 19.8[3]), and accordingly is

6 not material to the analysis.[4]

7      Dr. Veach criticizes what he contends would be the effective hourly rate resulting from

8 the requested fees, and asks the Court to reduce Class Counsel's fees in light of what he views to

9 be an appropriate multiplier.  (Jue Supp. Decl., Dkt. 1089, Ex. M at 2-3.)  Dr. Veach

10 misunderstands the purpose of a lodestar cross-check, however, where the critical measure is

11 what was achieved for the Class in a case taken purely on contingency.  "The lodestar method is

12 merely a cross-check on the reasonableness of a percentage figure, and it is widely recognized

13 that the lodestar method creates incentives for counsel to expend more hours than may be

14 necessary on litigating a case so as to recover a reasonable fee[.]"  *Vizcaino*, 290 F.3d at 1050 n.5.

15 (*See also* Fitzpatrick Decl., ¶¶ 11 and 21 n.4.)  Dr. Veach's calculation of the effective hourly rate

16 is also incorrect.  For instance, Dr. Veach contends that the fee request equates to $3,055 per

17 hour.  (Jue Supp. Decl., Dkt. 1089, Ex. M at 2.)  In fact, even when comparing to the partial

18 cross-check provided by Class Counsel (Dkt. 1075 at 20), the effective hourly rate (incorporating

19 the multiplier) would be $2,877.62.[5]  The resulting partial multiplier of 5.68 is justified under the

---

[3] *Compare* ($81,125,000 / $415,000,000 = about 19.5 percent) *with* ($86,125,000 / $435,000,000 = about 19.8 percent). Although not required, a further calculation that incorporates the prior fee paid would only increase the total multiplier from 5.68 to 6.03. *Compare* ($81,125,000 / $14,279,278.50 = about 5.68) *with* ($86,125,000 / $14,279,278.50 = about 6.03). Of course, any multiplier here would be less if the Court includes the separately-submitted JSLF time. (Dkt. Nos. 1072, 1073, and 1085.)

[4] District courts examine the particular common fund at issue when assessing a fee request, including cases in which class counsel make a series of fee requests regarding different common funds generated by separate settlement agreements. *See*, *e.g.*, *In re TFT-LCD (Flat Panel) Antitrust Litig.*, Case No. 7-md-1827-SI, Dkt. 7504 (N.D. Cal. Jan. 14, 2013) (granting attorney's fees of 30% of $68,000,000 common fund, ); *id.*, Dkt. 4436 (granting attorney's fees of 30% of separate $405,022,242 common fund in same case).

[5] Total fee request ($81,125,000) / Total hours reported by LCHB, B&M, and G&E (28,191.70) =

circumstances here.  *See Buccellato*, 2011 WL 3348055, at *2 (collecting cases, including three with total multipliers in excess of the partial multiplier here); *Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 481 (S.D.N.Y. 2013) ("Courts regularly award lodestar multipliers of up to eight times the lodestar, and in some cases, even higher multipliers.").  (*See also* Dkt. 1075 at 21-22 (collecting cases); Fitzpatrick Decl., Dkt. 1079 at ¶ 22 (same).)  Reducing Class Counsel's fees because of their lodestar would have the perverse effect of punishing Class Counsel for efficiently prosecuting the action.  *Vizcaino*, 290 F.3d at 1050 n.5.  (*See also* Fitzpatrick Decl., Dkt. 1079 at ¶¶ 8-11.)  It also ignores the purpose of percentage-of-the-fund recoveries, especially in such costly, uncertain, and difficult litigation.

Dr. Veach also argues that the percentage-of-the-fund method is inappropriate when common funds are "large," relying on *WPPSS*, 19 F.3d 1291.  (Jue Supp. Decl., Dkt. 1089, Ex. L at 3-4.)  Respectfully, Dr. Veach misreads the case.  *WPPSS* only reaffirmed the rule in the Ninth Circuit that district courts have discretion to apply either the lodestar/multiplier approach or the percentage-of-the-fund method, depending on the circumstances of each case.[6]  *Id.* at 1295-96. The lodestar/multiplier approach was appropriate in that case (involving a common fund of nearly $700 million) in large part because class counsel themselves based their fee request on their lodestar enhanced by a blended multiplier.  *Id.* at 1297-98.  Class counsel only referenced a percentage as a cross-check on their lodestar/multiplier approach.  *Id.*  Here, by contrast, Class Counsel base their fee request on the Ninth Circuit benchmark of 25 percent of the previously-rejected settlement of $324.5 million.  Class Counsel provided their lodestar as a cross-check on the requested percentage.

In addition, the Ninth Circuit has since clarified that *WPPSS* did not hold that the fee award percentage should decrease as the size of the common fund increases, and has reaffirmed that the 25 percent benchmark rate is the starting point for the analysis.  *Vizcaino*, 290 F.3d at

---

$2,877.62.  This hourly rate (incorporating a multiplier) would be less if the Court includes the JSLF time.

[6] In addition, Dr. Veach does not mention that *WPPSS* vacated the district court's fee award, holding that the district court abused its discretion in denying a risk multiplier.  19 F.3d at 1299-1302.

1047-48 (rejecting the so-called "increase-decrease rule," and affirming a fee award of 28 percent of the common fund). The size of the common fund is a circumstance to be considered, along with other factors such as the result achieved, the risks to class counsel in contingency representation, market rates for contingency representation, fee awards out of common funds of comparable size, and the amount of work and costs class counsel provided on a contingent basis on behalf of the class to create the common fund. *Id.* at 1047-50. In *Vizcaino* the Ninth Circuit overruled objectors who simply advocated a lower percentage—without reference to the particulars of the case—because this approach is arbitrary: "Selection of the benchmark or any other rate must be supported by findings that take into account all of the circumstances of the case," and arbitrarily seeking a lower fee amount "flies in the face of this reasoning." *Id.* As Class Counsel have previously explained, these factors all weigh strongly in favor of applying at least the 25 percent benchmark rate, and certainly support Class Counsel's request of approximately 19.5 percent of the common fund. (Dkt. 1075 at 14-19.)

The requested rate is well within Ninth Circuit practice, with the vast majority of fee awards being between 25-35 percent of the fund (*see* Decl. of Brian T. Fitzpatrick, Dkt. 1079, ¶ 19), and approximately 80 percent of fee awards constituting over 20% of the fund (*id.*, at ¶ 20). In cases involving similarly-sized common fund settlements, the median award was 19.5 percent, essentially Class Counsel's request here. (*Id.*, at ¶ 21.) *See Vizcaino*, 290 F.3d at 1050 ("to the extent that a market analogy is on point, in most cases it may be more appropriate to examine lawyers' reasonable expectations, which are based on the circumstances of the case and the range of fee awards out of common funds of comparable size.").

Dr. Veach further contends that fees to Class Counsel and fees to counsel for Mr. Devine should be considered together, and that the additional $90.5 million in this Settlement should go entirely to Class Members. (Jue Supp. Decl., Dkt. 1089, Ex. M at 1-2.) But Class Counsel's fee request locks-in Class Counsel's previous request of 25 percent of the previous settlement of $324.5 million. Class Counsel are not seeking another penny in compensation over what Class Counsel sought in connection with the earlier settlement, despite the substantial additional work Class Counsel contributed to make the larger settlement possible. (*See* Dkt. 1075 at 11-12.)

Mr. Devine's counsel played no role in the creation of the earlier $324.5 million common fund, and Mr. Devine's counsel properly acknowledge that they have no claim to any portion of it.[7] (Dkt. 1068.) Class Counsel and Mr. Devine's counsel took very different risks, made substantially different investments, and made significantly different contributions to the prosecution of the action. Mr. Devine can speak for his own contribution, but the Court should rule on the requests separately, and should conduct a separate analysis for each.

Finally, Dr. Veach argues that cutting Class Counsel's fee request by more than half would "not create a disincentive to pursue similar actions." (Jue Supp. Decl., Dkt. 1089, Ex. M at 3.) He is mistaken. Here, after the United States Department of Justice announced its findings regarding Defendants' alleged violations of the Sherman Act, no firm other than those in this case filed a civil action. This was true despite a reasonable expectation of 25 percent of any common fund recovery. Arbitrarily limiting Class Counsel's compensation to less than 10 percent of the common fund for a case they alone investigated, prosecuted, funded, and resolved, and at the expense of taking on different work, would discourage complex and risky private antitrust actions like this one, which serve "the high purpose of enforcing the antitrust laws," (Order Granting Plaintiffs' Supp. Mot. for Class Certification, Dkt. 531 at 13, quoting *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 395 U. S. 100, 130-31 (1969)), and "provide a significant supplement to the limited resources available to the Department of Justice for enforcing the antitrust laws and deterring violations," (*id.*, quoting *Reiter v. Sonotone Corp.*, 442 U.S. 330, 344 (1979)).

Class action lawyering is a tough business. It is enormously expensive and risky to go toe-to-toe with the most well-financed companies in the world, relying on some of the most difficult caselaw for plaintiffs, requiring ever more rigorous and costly evidentiary proof at every stage of litigation. It is assumed, erroneously, by objectors that every class action lawyer wins every case, and each fee paid above lodestar is but a windfall for lawyers catching nothing but paydays. That is not how contingent litigation works. A contingent fee recognizes the risk that there are cases that do not get paid, even while overheads and payrolls are never relenting. "In

---

[7] Instead, Mr. Devine's counsel seeks a fee award of 5 percent of the additional $90.5 million. (Dkt. 1068.)

common fund cases, attorneys whose compensation depends on their winning the case must make up in compensation in the cases they win for the lack of compensation in the cases they lose." *Vizcaino*, 290 F.3d at 1051 (internal edit and quotation omitted).  In order to stay in business, lawyers must consider the risk that they will not only receive no pay for years of work, but that they will also be out of pocket millions in hard costs and employee salaries for their efforts.  If the trend is to reimburse class action contingent lawyers as if the result achieved was just like any in a guaranteed hourly billing practice, the risks are far too high to sustain the necessary investment.  Lawyers will tend to move toward safer opportunities and reduced expenditures.  The important public benefits of contingent fee class litigation—undertaking potentially meritorious but risky cases for those who do not possess resources to fund them and private enforcement of antitrust and other important laws—would be undercut.  Many cases like this one might never be filed.

Further, awarding lower fee percentages as the size of the settlement increases creates a disincentive to Class Counsel to push for the largest possible settlement and misaligns the interests of Class Counsel with the interests of the Class.  (*See* Fitzpatrick Decl., Dkt. 1079, ¶ 21 n.4.)  *See also Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 122 (2d Cir. 2005) (percentage method "directly aligns the interests of the class and its counsel") (citation omitted).  The percentage method also encourages efficiency and discourages waste.[8]

Class Counsel's fee request is reasonable and well below the Ninth Circuit's benchmark fee of 25 percent.  The Court should overrule Mr. Hsu's and Dr. Veach's objections.

---

[8] Similarly, Dr. Veach objects that the additional fees sought are a "windfall" because Class Counsel has already received $5 million in fees. (Jue Supp. Dec., Dkt. 1089, Ex. L at 2 and Ex. M at 1-2.)  It is routine in antitrust cases with multiple defendants—as here—that there are several settlements subject to separate approval procedures.  Total work provided by Class Counsel from the inception of the case make each settlement possible, and thus it would be incorrect to base fee awards in subsequent settlements only on work done after reaching earlier settlements.  *See In re Southwestern Milk Antitr. Litig.*, 2013 U.S. Dist. LEXIS 70167, *26-27 (E.D. Tenn. 2013) ("[I]f an award of fees for a successive settlement were limited and calculated only on the basis of time and expenses incurred since the preceding settlement, counsel would have little or no incentive to vigorously or efficiently pursue litigation or settlement of claims with non-settling defendants, or to seek non-monetary relief, even though the remaining defendants might be equally as culpable or have greater culpability."); *Lobatz v. U.S. West Cellular of California, Inc.*, 222 F.3d 1142, 1149 (9th Cir. 2000) (affirming that counsel should be awarded fees based on work on entire litigation, not time since the first settlement).

### C. The Objections Regarding Notice of Class Counsel's Fee Request Should Be Overruled

Dr. Veach and Mr. Zavislak contend that additional notice procedures should have been implemented to apprise Class members of Class Counsel's fee requests and supporting papers. (Jue Supp. Decl., Dkt. 1089, Ex. L at 1-2 and Ex. N at 2-3 and 5-6.)  They rely on *In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988 (9th Cir. 2010), which held that class counsel's fee motion must be filed before the Class's objection deadline.  But this is exactly what occurred here.  *See*, *e.g.*, *In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. 07-md-1827-SI, 2011 U.S. Dist. LEXIS 154288, at *4-6 (N.D. Cal. Dec. 27, 2011) (overruling objection that fee requests should have been posted to the case-specific website: "Nothing in the *Mercury Interactive* decision requires a motion for attorneys' fees to be posted on a class action website.").  *See also In re Online DVD-Rental Antitr. Litig.*, 779 F.3d 934, 954 (9th Cir. 2015) (notice satisfied Rule 23(h) where the notice informed class members that class counsel would be seeking 25 percent of the common fund, and the Court set the deadline for filing the motion for fees about two weeks in advance of the class member objection deadline).

Consistent with *Mercury Interactive* and *Online DVD-Rental*, the Court set a deadline for Class Counsel to submit fee requests by May 7, 2015, two weeks before the deadline for Class Members to opt-out, object, or provide notice of intent to appear at the final approval hearing.[9] (Dkt. 1054 at 11-12.)  Class Counsel's fee requests were available on the public docket, just as all other publicly-available documents filed in this case.  Class Members had two weeks to examine and oppose the requests, satisfying the full-and-fair-opportunity requirement under Federal Rule of Civil Procedure 23(h).  *See TFT-LCD*, 2011 U.S. Dist. LEXIS 154288, at *5 ("[l]ike all Class Members, [objector] has access to the public docket . . . [the objector] therefore cannot demonstrate any prejudice by the posting of the Fee Motion on the Court's public docket alone, rather than in conjunction with the class action website.").

---

[9] The Court's Order Granting Preliminary Approval (setting the deadline for Class Counsel's fee requests) was also posted to the case-specific website.  *See* http://www.hightechemployeelawsuit.com/media/264422/prelim_approval_order.pdf.

1   Mr. Zavislak complains that the Court's electronic PACER system charges access fees.[10]
2   (Jue Supp. Decl., Dkt. 1089, Ex. N. at 2, 6.)  But Mr. Zavislak ignores that the Court-approved
3   Notice (mailed to all Class Members and posted on the case-specific website[11]) included a variety
4   of means to ask for assistance.  Class Members were notified that they could "call, write, fax, or
5   email the Notice Administrator with your questions[.]"  (Notice, Dkt. 1086-1, at 12: "How do I
6   get more information?")  This included a toll-free telephone number.  As of June 5, 2015, the
7   Notice Administrator had received 56 requests for a copy of the Notice over the phone, by email,
8   and by mail.  (Jue Decl., Dkt. 1086, ¶ 7.)  The Notice Administrator sent a copy of the Notice
9   whenever one was requested.  (*Id.*)  No Class Member asked the Notice Administrator for a copy
10  of Class Counsel's fee requests.  (Jue Second Supp. Decl., ¶ 2, filed herewith.)  Had any Class
11  Member requested a copy of Class Counsel's fee requests, the Notice Administrator would have
12  provided it.  (*Id.*)  In addition, the Notice provided contact information for Class Counsel,
13  including their mailing addresses, phone numbers, and email addresses.  (Dkt. 1086-1 at 8.)
14  Hundreds of Class Members contacted Class Counsel with questions.  (Harvey Supp. Decl., ¶ 2,
15  filed herewith.)  None asked for Class Counsel's fee papers.  (*Id.*, ¶ 3.)  Had any Class Members
16  requested a copy, Class Counsel would have provided it.  (*Id.*)  *See TFT-LCD*, 2011 U.S. Dist.
17  LEXIS 154288, at *5 ("Class Members had multiple avenues in addition to the Court's docket
18  and the class action website to obtain information about the proposed settlements and the Fee
19  Motion.").
20      Neither Dr. Veach nor Mr. Zavislak requested a copy of Class Counsel's fee request
21  before submitting their objection.  (Jue Second Supp. Decl., ¶ 2; Harvey Supp. Decl., ¶ 3.)  These
22  objections were the first (and only) indication Class Counsel or the Notice Administrator had that
23  any Class Member had difficulty reviewing Class Counsel's fee requests.  (Jue Second Supp.

---

[10] Notably, Mr. Zavislak is a California-licensed attorney who, according to his LinkedIn profile, currently works as a lawyer for Google. (*See* Harvey Supp. Decl., ¶ 8 and Ex. G; http://members.calbar.ca.gov/fal/Member/Detail/271755.)  Presumably if Mr. Zavislak wanted to see Class Counsel's filing for free, he could have also sought it from his colleagues in Google's legal department, including those defending this case.

[11] *See* http://www.hightechemployeelawsuit.com/media/266091/v3_htea1_notice_032714_final.pdf.

1  Decl., ¶ 2; Harvey Supp. Decl., ¶ 3.)  Immediately upon reviewing the objections, Class Counsel
2  emailed their fee requests and supporting declarations directly to Dr. Veach on May 21, 2015 and
3  to Mr. Zavislak (also, in an abundance of caution, to Mr. Hsu) on May 22, 2015.  (Harvey Supp.
4  Decl., ¶¶ 5-7, Exs. A, D, and F.)  Class Counsel also uploaded the documents to the case-specific
5  website.[12]  (Jue Second Supp. Decl., ¶ 3; Harvey Supp. Decl., ¶ 4.)  Class Counsel informed
6  Dr. Veach and Mr. Zavislak that Class Counsel would not oppose an extension for them to review
7  and comment on the materials.  (Harvey Supp. Decl., ¶¶ 5-7, Exs. A and D.)  Dr. Veach accepted
8  Class Counsel's invitation and submitted a supplemental objection on June 1, which Class
9  Counsel included among the timely objections received and do not oppose on the basis that it
10 arrived after the objection deadline.  (Jue Supp. Decl., Ex. M.)  Mr. Zavislak declined to
11 supplement his comments, even though he received the same invitation.  (Harvey Supp. Decl.,
12 Ex. E.)  Thus, neither Dr. Veach nor Mr. Zavislak can demonstrate any prejudice for failing to
13 review the fee papers prior to the objection deadline.  *TFT-LCD*, 2011 U.S. Dist. LEXIS 154288,
14 at *5.

15       Dr. Veach's and Mr. Zavislak's objections should be overruled.

16 **D.    The Objections Regarding Defendants' Agreement Not to Comment on or Oppose Class Counsel's Fee Request Should Be Overruled**
17

18       Dr. Veach and Mr. Zavislak object to the Settlement Agreement because the Defendants
19 agreed to a so-called "clear sailing" provision: not to comment on or oppose Class Counsel's fee
20 request "so long as the request for fees is no greater than $81,125,000 (approximately 19.54%) of
21 the $415 million Settlement Fund."  (Dkt. 1033-1 at 28.)  (*See* Jue Supp. Decl., Dkt. 1089, Ex. L
22 at 4 and Ex. N at 5.)

23       However, as the Ninth Circuit has explained, a "clear sailing" provision "does not signal
24 the possibility of collusion" where, as here, Class Counsel's fee will be awarded by the Court
25 from the same common fund as the recovery to the Class.  *Rodriguez v. West Publ'g Corp.*, 563
26 F.3d 948, 961 n.5 (9th Cir. 2009).  Indeed, the settlement achieved here was the product of hard-
27
28 ---
   [12] *See* http://www.hightechemployeelawsuit.com/case-documents.aspx.

fought, adversarial negotiation, supervised and facilitated by the Hon. Layn Phillips, an experienced mediator and former United States District Court Judge. (Dkt. 1087 at 13-16.) Class Counsel did not negotiate fees separate and apart from Class funds, nor did Class Counsel agree that any portion of the $415 million common fund could revert back to Defendants. *See*, *e.g.*, *In re Easysaver Rewards Litig.*, 921 F. Supp. 2d 1040, 1054 (S.D. Cal. 2013) (overruling objection to "clear sailing" provision where the settlement was the result of arms-length negotiations, funds for attorney fees were not held separate from class funds, and no settlement funds would revert back to defendants). Given that Defendants have merely agreed not to object to Class Counsel staying within a legal benchmark articulated by the Ninth Circuit, it is hardly a sign that the Defendants gave up something special in trade.

Dr. Veach's and Mr. Zavislak's objections should be overruled.

### E. The Objection Asking the Court to Examine the Accuracy of Class Counsel's Time Records Should Be Overruled

Dr. Veach objects to time records submitted by Class Counsel "until they have been carefully examined by the Court." (Jue Supp. Decl., Dkt. 1089, Ex. L at 4.) Class Counsel do not disagree and fully expect that the Court will review the materials the Court ordered be submitted in support of Class Counsel's fee requests.

### F. The Objection to Providing Named Plaintiffs with Service Awards Should Be Overruled

Finally, Google's lawyer, Mr. Zavislak, asks the Court to disallow Class Representative service awards "in their entirety." (Jue Supp. Decl., Dkt. 1089, Ex. N at 7.) He contends that the requested amounts are excessive, and argues that the fact that Class Counsel seek the same service award for each Class Representative somehow demonstrates improper collusion among the Class Representatives, akin to Defendants' alleged collusion at issue in this case. Mr. Zavislak's arguments are without merit.

First, as Class Counsel previously explained, the requested services awards are appropriate to compensate the Class Representatives for the critical services they provided, the substantial risks they incurred during the course of the litigation, and to reward their public

service of contributing to the enforcement of the nation's antitrust laws. (Dkt. 1032 at 10-14; Dkt. 1075 at 22-25.) No Class Representative was promised any amount of money to serve as a Class Representative, or in connection with their approval of this Settlement or any prior settlement in this action. (Fichtner Decl., Dkt. 1077, ¶ 4; Hariharan Decl., Dkt. 1076, ¶ 4; Harvey Decl., Dkt. 1082, ¶ 7; Stover Decl., Dkt. 1078, ¶ 4.) Their support for the Settlement was based on their views, in light of the record and the risks, that the Settlement is in the best interests of the Class.[13] (*Id.*)

Second, Mr. Zavislak's suggestion of improper collusion among the Class Representatives is wrong. Class Counsel worked extensively with all five named Plaintiffs throughout this litigation and know well the effort and professional sacrifice they made to bring this result to the Class. Upon reviewing their respective contributions, Class Counsel submitted a request on behalf of the three Named Plaintiffs (Mr. Fichtner, Mr. Hariharan, and Mr. Stover) they currently represent, as well as for the estate of deceased named Plaintiff Brandon Marshall. These requests were made in consideration of the applicable caselaw and the supporting evidence. Mr. Devine's counsel made a separate request, supported by his counsel's review of his separate contribution. That Class Counsel cannot distinguish among the five in terms of contribution does not make the requests collusive.

Mr. Zavislak's objection should be overruled.

### III.  CONCLUSION

For the aforementioned reasons, Plaintiffs respectfully request that the Court overrule the objections and grant Class Counsel's Motion for Attorneys' Fees, Reimbursement of Expenses, and Service Awards to the Named Plaintiffs.

---

[13] Class Counsel initially requested service awards of $80,000 for each Class Representative. However, if the Court awards the higher amount requested by Plaintiff Michael Devine for himself, the other Class Representatives should not be treated less favorably for their similar time, risk, attention, and independent judgment. Awarding different amounts when the only difference among them is whether any of them rejected the prior settlement would create perverse incentives for future class representatives. (Dkt. 1075 at 23 n.14.) The Court-approved Notice included this request. (Dkt. 1086-1 at 8.)

|   |   |
|---|---|
|   | Respectfully submitted, |
| Dated:  June 29, 2015 | LIEFF CABRASER HEIMANN & BERNSTEIN, LLP |
|   | By:  */s/ Kelly M. Dermody* <br> Kelly M. Dermody |

Richard M. Heimann (State Bar No. 63607)
Kelly M. Dermody (State Bar No. 171716)
Brendan P. Glackin (State Bar No. 199643)
Dean M. Harvey (State Bar No. 250298)
Anne B. Shaver (State Bar No. 255928)
275 Battery Street, 29th Floor
San Francisco, CA  94111-3339
Telephone:  (415) 956-1000
Facsimile:  (415) 956-1008

JOSEPH SAVERI LAW FIRM, INC.

By:  */s/ Joseph R. Saveri*
         Joseph R. Saveri

Joseph R. Saveri (State Bar No. 130064)
James Dallal (State Bar No. 277826)
JOSEPH SAVERI LAW FIRM, INC
505 Montgomery Street, Suite 625
San Francisco, CA 94111
Telephone: 415. 500.6800
Facsimile: 415. 395.9940

*Co-Lead Class Counsel*