1

2

3

4

5

6

7

8

9

10

11

12                        UNITED STATES DISTRICT COURT

13                      NORTHERN DISTRICT OF CALIFORNIA

14                              SAN JOSE DIVISION

15

16   IN RE: HIGH-TECH EMPLOYEE            Master Docket No. 11-CV-2509-LHK
     ANTITRUST LITIGATION
17                                        **[PROPOSED] ORDER GRANTING
     THIS DOCUMENT RELATES TO:            PLAINTIFFS' MOTION FOR
18                                        ATTORNEYS' FEES, REIMBURSEMENT
                                          OF EXPENSES, AND SERVICE AWARDS**
19   ALL ACTIONS

20

21

22

23

24

25

26

27

28

1      On July 9, 2015, this Court held a hearing on Plaintiffs' Motion for Attorneys' Fees,

2  Reimbursement of Expenses, and Service Awards.  Based on the papers filed with the Court and

3  presentations made to the Court at the hearing, the Court hereby grants Class Counsel's request.

4  **I.       The Requested Award of Attorneys' Fees is Appropriate**

5      The Motion seeks an award of attorneys' fees of $81,125,000 which is approximately 19.5

6  percent of the $415,000,000 common Settlement Fund.

7      Under the common fund doctrine, "'a litigant or a lawyer who recovers a common fund

8  for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee

9  from the fund as a whole.'"  *In re Immune Response Sec. Litig.,* 497 F. Supp. 2d 1166, 1175 (S.D.

10  Cal. 2007) (quoting *Staton v. Boeing Co.,* 327 F.3d 938, 967 (9th Cir. 2003)); *Boeing Co. v. Van*

11  *Gemert,* 444 U.S. 472, 478 (1980).  Where, as here, the parties establish a common fund to settle

12  a class action, courts have discretion to choose either the "percentage" method or the

13  "lodestar/multiplier" method to determine a reasonable attorneys' fee.  *See Hanlon v. Chrysler*

14  *Corp.*, 150 F. 3d 1011, 1029 (9th Cir. 1998); *In re Coordinated Pretrial Proceedings in*

15  *Petroleum Prods. Antitrust Litig.,* 109 F.3d 602, 607 (9th Cir. 1997).  The Ninth Circuit has held

16  that "we require only that fee awards in common fund cases be reasonable under the

17  circumstances."  *Florida v. Dunne,* 915 F.2d 542, 545 (9th Cir. 1990)).  *See also Staton,* 327 F.3d

18  at 963.

19      Under the percentage method, Plaintiffs' request for attorneys' fees in the amount of

20  approximately 19.5 percent of the Settlement Funds is below the 25 percent benchmark in this

21  Circuit.  *Paul, Johnson*, *Alston & Hunt v. Granulty*, 886 F.2d 268, 272 (9th Cir. 1989).  The Court

22  finds that it is reasonable to award Class Counsel approximately 19.5 percent of the Settlement

23  Funds based on the following factors: 1) the result obtained for the class; 2) the risk incurred by

24  Class Counsel in prosecuting this complex case; 3) Class Counsel's skills and experience; 4) the

25  burden on Class Counsel of litigating this case on a contingency basis; and 5) the size of the fee

26  request as compared to the market rate for fees as a percentage of common funds in other class

27  settlements.  *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048-50 (9th Cir. 2002); *In re*

28  *Heritage Bond Litig.*, 2005 U.S. Dist. LEXIS 13555, at *64-74 (C.D. Cal. June 10, 2005).

1    Class Counsel have submitted their detailed billing records in this litigation through May

2    4, 2015.  The Court has reviewed these records along with Class Counsel's other submissions.

3    The Court finds that the lodestar crosscheck on Class Counsel's fee request, and the resulting

4    multiplier, confirm the reasonableness of the requested fee, particularly in light of the result

5    obtained for the Class; the risk incurred by Class Counsel in prosecuting this complex case

6    through two rounds of motions to dismiss, two attempts at Ninth Circuit intervention, summary

7    judgment, and briefing a variety of pretrial issues; Class Counsel's skill and experience; the

8    burdens on Class Counsel of litigating this case on a purely contingency basis; and the size of the

9    fee request as compared to the market rate for fees as a percentage of common funds in other

10    class settlements.  *See Vizcaino*, 290 F.3d at 1052-54 (noting district court cases in the Ninth

11    Circuit approving multipliers up to 6.2); *Buccellato, et al. v. AT&T Operations, Inc.*, Case No. 10-

12    463-LHK, 2011 WL 3348055, at *1 (N.D. Cal. June 30, 2011) (noting cases in which approved

13    percentage-of-the-fund fee awards resulted in multipliers of over 9); *Beckman v. KeyBank, N.A.*,

14    293 F.R.D. 467, 481 (S.D.N.Y. 2013) ("Courts regularly award lodestar multipliers of up to eight

15    times the lodestar, and in some cases, even higher multipliers.").

16    Accordingly, having considered the record in this case and the response of the Class, this

17    Court finds Class Counsel's request for fees is reasonable.

18   **II.    Class Counsel's Request for Reimbursement of Litigation Expenses is Reasonable.**

19    Class Counsel submitted declarations and invoices reflecting the nearly $5 million in out-

20    of-pocket costs they incurred in this action, including over $1,200,000 in unreimbursed expenses.

21    However, Class Counsel limit their request for reimbursement of expenses to the $1,200,000

22    provided in the Notice.  (Dkt. 1086-1 at 8.)  These costs include: (1) expert witness fees; (2)

23    mediators' fees; (3) a document vendor to host the over 3 million pages of documents produced;

24    (4) court reporting and videographer services for nearly 100 depositions taken by Plaintiffs in this

25    case; (5) electronic research; (6) copying, mailing, and serving documents; and (7) case-related

26    travel for Plaintiffs, witnesses, experts, and counsel.  Class Counsel incurred these out-of-pocket

27    costs without assurance that they would be repaid.  These litigation expenses were necessary to

28    secure the resolution of this litigation.  No Class Member has objected to the amount of these

1   costs, or to Class Counsel being reimbursed for them.

2          The Court finds that Class Counsel's request for reimbursement of litigation expenses is

3   reasonable.

4   **III.    The Service Award Payments to the Class Representatives are Fair and Reasonable.**

5          Plaintiffs request approval of service awards to the Class Representatives in the amount of

6   up to $160,000 each.  The Court finds that service awards to each of the Class Representatives of

7   $160,000 are fair and reasonable under the *Staton* factors.  *Staton*, 327 F.3d at 977 (quoting *Cook*

8   *v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998)).

9          First, the Class Representatives have expended substantial time and effort in pursuing this

10  litigation, and in so doing have protected the interests of the Class.  Class Representatives

11  Michael Devine, Mark Fichtner, Daniel Stover, and Siddharth Hariharan submitted detailed

12  declarations describing their contribution to the prosecution and settlement of this case, as well as

13  the amount of time expended thereon.  Class Counsel have submitted a similar declaration from

14  attorney Dean M. Harvey on behalf of the estate of recently deceased Class Representative

15  Brandon Marshall, describing Mr. Marshall's service to the Class before his death.  The Class

16  Representatives have described numerous efforts they undertook in this litigation, including

17  providing assistance to Class Counsel regarding the initial investigation; preparing and reviewing

18  the complaint; reviewing drafts of pleadings and other documents; gathering documents and other

19  potential evidence about Defendants and their claims; assisting with various aspects of written

20  and other discovery; discussing the strategy and progress of all mediations in the case; appearing

21  for deposition; and participating in regular communications about the case.  These efforts

22  protected the interests of the Class by furthering Class Counsel's prosecution of the case.

23         Second, the Class has benefitted from the efforts of the Class Representatives.  This

24  litigation, and the resulting settlements, would not have been possible without the Class

25  Representatives' willingness to serve in the role.  Courts recognize that Class Representatives

26  face risk of retaliation, particularly in the employment context.  *See Staton*, 327 F.3d at 977;

27  *Parker v. Jekyll & Hyde Entm't Holdings, L.L.C.*, 2010 U.S. Dist. LEXIS 12762, *4 (S.D.N.Y.

28  February 9, 2010) ("[F]ormer employees put in jeopardy their ability to depend on the employer

1    for references in connection with future employment.").  Importantly, in sworn statements, the

2    Class Representatives described the risks they took in filing such a case against companies of

3    such "prominence and power" in the "close-knit" high-technology industry.

4            In this case, Defendants served subpoenas for employment records from the Class

5    Representatives' current and former employers, reinforcing the taint of this litigation against the

6    Class Representatives across their professional networks.  Each Class Representative expressed a

7    fear that other technology companies or clients might not want to work with them in the future

8    due to their role in this case.  As each Class Representative stated, "That risk will continue

9    throughout my career."  Accordingly, absent Class members are able to participate in the

10   settlement without the risks that the Class Representatives faced.

11           In addition, the service awards here do not raise any prospect of improper coercion.

12   Unlike in *Radcliffe v. Experian Info. Solutions*, 715 F.3d 1157, 1164 (9th Cir. 2013), each of these

13   Class Representatives (and Mr. Marshall, before his death) preserved the right to separately and

14   independently support, object to or comment upon any settlement.  At no time was any Class

15   Representative advised by Class Counsel that his entitlement to a service award was conditioned

16   on that Class Representative's support for the settlements.  Nor do the service awards requested in

17   this case, which amount to just 0.2 percent of the total recovery, create a conflict or potential

18   conflict between the Class Representatives and the Class, as in *Staton*, 327 F.3d at 975-78 or

19   *Rodriguez v. W. Pub. Corp*., 563 F.3d 948 (9th Cir. 2009).

20           In light of the record described above, the Court finds that the Class Representatives have

21   expended substantial time and effort in pursuing this litigation and have protected the interests of

22   the Class; and the Class has benefitted from the Class Representatives' actions with a monetary

23   settlement of $415 million.  The requested service awards are therefore reasonable and fair.

24   **IV.    Class Member Objections**

25           **A.    Objections Concerning the Amount of Attorneys' Fees**

26           Only two Class Members out of approximately 64,466 objected to the amount of Class

27   Counsel's fee request: David Hsu and Eric Veach.

28           Mr. Hsu says only that the "attorneys receive too much of the settlement."  He provides no

- 4 -

1  rationale for his position.  He does not acknowledge that Class Counsel have an equitable right to

2  be compensated for their efforts in creating the Settlement's common fund of $415 million.

3  *Staton*, 327 F.3d at 967.  He does not recognize that the appropriate way to compensate Class

4  Counsel is the percentage-of-the-fund method where, as here, contingency fee litigation has

5  produced a common fund.  *See Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984) (under the

6  common fund doctrine, "a reasonable fee is based on a percentage of the fund bestowed on the

7  class"); *Vizcaino*, 290 F.3d at 1047-48 (the benchmark fee award in common fund cases is 25

8  percent of the recovery obtained, and rejecting the "increase-decrease rule" whereby the fee

9  percentage decreases as the amount of the common fund increases); *Six Mexican Workers v.*

10 *Arizona Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990) (common fund fee is generally

11 "calculated as a percentage of the recovery"); *Johnson*, 886 F.2d at 272-73 (requiring district

12 court to apply percentage-of-the-fund method, and requiring that any departure from the 25

13 percent benchmark "be accompanied by a reasonable explanation of why the benchmark is

14 unreasonable under the circumstances").  Mr. Hsu does not consider that application of the Ninth

15 Circuit's benchmark of 25 percent would result in a fee award to Class Counsel of $103,750,000,

16 nor does he consider that Class Counsel's request for $81,125,000 is substantially less than the

17 benchmark amount.

18      Mr. Hsu does not examine any of the considerations relevant to determining whether a

19 further downward departure from the Ninth Circuit's 25 percent benchmark is appropriate, such

20 as the result achieved, the risks of contingency representation, the complexities of the case and

21 skill and effort required of counsel, awards in similar cases; and whether counsel devoted

22 substantial time requiring counsel to forgo other work.  *Vizcaino*, 290 F.3d at 1048-50.  Mr. Hsu's

23 objection is hereby overruled.

24      Dr. Veach argues that Class Counsel's fee request of approximately 19.5 percent of the

25 common fund of $415 million is unreasonable, and suggests that the Court award less than half this

26 amount: only about 9.6 percent of the common fund.  Dr. Veach's first argument is that a request of

27 19.5 percent of the common fund is unreasonable when compared to the 25 percent of the common

28 fund Class Counsel received in connection with the previously-approved settlements of $20

1   million with Intuit, Inc., Lucasfilm Ltd., and Pixar.  It seems that this is a misunderstanding of the

2   ratios across settlements.  In fact, on a pro-rata basis, the recovery achieved here for the Class is

3   greater and the fee requested here is substantially *less* than in the previous settlements totaling

4   $20 million.  While the $415 million Settlement is about 21 times the size of the earlier

5   settlements of $20 million, the average net per Class Member recovery will be over 29 times

6   larger (approximately $5,071.53 compared with approximately $173.73).[1]  Class Counsel seek

7   approximately 19.5 percent of the common fund here, rather than the benchmark 25 percent that

8   the Court awarded previously (Dkt. 916 at 1-2).  Thus, on a proportional basis, Class Counsel will

9   receive substantially less, while Class Members will receive substantially more.  Dr. Veach also

10  argues that the Court should consider fees paid to Class Counsel in the previous Settlements.  But

11  this would make almost no difference to the percentage requested (it would increase the

12  percentage from about 19.5 to about 19.8[2]), and accordingly is not material to the analysis.[3]

13          Dr. Veach criticizes what he contends would be the effective hourly rate resulting from

14  the requested fees, and asks the Court to reduce Class Counsel's fees in light of what he views to

15  be an appropriate multiplier.  Dr. Veach misunderstands the purpose of a lodestar cross-check,

16  however, where the critical measure is what was achieved for the Class in a case taken purely on

17  contingency.  "The lodestar method is merely a cross-check on the reasonableness of a percentage

18  figure, and it is widely recognized that the lodestar method creates incentives for counsel to

19  expend more hours than may be necessary on litigating a case so as to recover a reasonable fee[.]"

20  *Vizcaino*, 290 F.3d at 1050 n.5.  The partial cross-check provided (Dkt. 1075, at 20) is well-

21  _____

22  [1] This is due from both the lower percentage Class Counsel seek in fees and the smaller amount
    of unreimbursed costs (on both an absolute and proportional basis).  While about 18.5 percent of

23  the earlier settlements went to reimburse costs ($3,699,844.31 of the $20 million common fund),
    here about .3 percent of the Settlement will go to reimburse costs ($1,200,000 of the $415 million

24  common fund).

    [2] *Compare* ($81,125,000 / $415,000,000 = about 19.5 percent) *with* ($86,125,000 / $435,000,000

25  = about 19.8 percent).

    [3] It is proper to examine the particular common fund at issue when assessing a fee request,

26  including when multiple settlements result in a series of fee requests regarding different common
    funds generated by separate settlement agreements.  *See, e.g.*, *In re TFT-LCD (Flat Panel)*

27  *Antitrust Litig.*, Case No. 7-md-1827-SI, Dkt. 7504 (N.D. Cal. Jan. 14, 2013) (granting attorney's
    fees of 30% of $68,000,000 common fund, ); *id.*, Dkt. 4436 (granting attorney's fees of 30% of

28  separate $405,022,242 common fund in same case).

justified under the circumstances here.[4]  *See Vizcaino*, 290 F.3d at 1052 (noting multipliers up to 19.6); *Buccellato, et al. v. AT&T Operations, Inc.*, Case No. 10-463-LHK, 2011 WL 3348055, at *2 (N.D. Cal. June 30, 2011) (collecting cases, including three with total multipliers in excess of the partial multiplier here); *Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 481 (S.D.N.Y. 2013) ("Courts regularly award lodestar multipliers of up to eight times the lodestar, and in some cases, even higher multipliers.").  Reducing Class Counsel's fees because of their lodestar would have the perverse effect of punishing Class Counsel for efficiently prosecuting the action.  *Vizcaino*, 290 F.3d at 1050 n.5.  It also ignores the purpose of percentage-of-the-fund recoveries, especially in such costly, uncertain, and difficult litigation.

Dr. Veach also argues that the percentage-of-the-fund method is inappropriate when common funds are "large," relying on *In re Washington Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291 (9th Cir. 1994).  Respectfully, Dr. Veach misreads the case.  *Washington Public Power* only reaffirmed the rule in the Ninth Circuit that district courts have discretion over whether to apply the loadstar/multiplier approach or the percentage-of-the-fund method, insofar as the choice reflects the circumstances of each case.[5]  *Id.* at 1295-96.  The lodestar/multiplier approach was appropriate in that case (involving a common fund of nearly $700 million) in large part because class counsel themselves based their fee request on their lodestar enhanced by a blended multiplier.  *Id.* at 1297-98.  Class counsel only referenced a percentage as a cross-check on their lodestar/multiplier approach.  *Id.*  Here, by contrast, Class Counsel base their fee request on the Ninth Circuit benchmark of 25 percent of the previously-rejected settlement of $324.5 million.  Class Counsel provided their lodestar as a cross-check on the requested percentage.

In addition, the Ninth Circuit has since clarified that *Washington Public Power* did not hold that the fee award percentage should decrease as the size of the common fund increases, and has reaffirmed that the 25 percent benchmark rate is the starting point for the analysis.  *Vizcaino*,

---

[4] Of course, any multiplier here would be less if the Court includes the separately-submitted JSLF time.  (Dkt. Nos. 1072, 1073, and 1085.)

[5] In addition, Dr. Veach does not mention that *Washington Public Power* vacated the district court's fee award, holding that the district court abused its discretion in denying a risk multiplier. 19 F.3d at 1299-1302.

1   290 F.3d at 1047-48 (rejecting the so-called "increase-decrease rule," and affirming a fee award

2   of 28 percent of the common fund).  The size of the common fund is a circumstance to be

3   considered, along with other factors such as the result achieved, the risks to class counsel in

4   contingency representation, market rates for contingency representation, fee awards out of

5   common funds of comparable size, and the amount of work and costs class counsel provided on a

6   contingent basis on behalf of the class to create the common fund.  *Id.* at 1047-50.  These factors

7   all weigh strongly in favor of applying the 25 percent benchmark rate, and certainly support Class

8   Counsel's request of approximately 19.5 percent of the common fund.

9        The requested rate is well within Ninth Circuit practice, with the vast majority of fee

10  awards being between 25-35 percent of the fund (*see* Decl. of Brian T. Fitzpatrick, Dkt. 1079, ¶

11  19), and approximately 80 percent of fee awards constituting over 20% of the fund (*id.*, at ¶ 20).

12  In cases involving similarly sized common fund settlements, the median award was 19.5 percent,

13  essentially Class Counsel's request here.  (*Id.*, at ¶ 21.)  *See Vizcaino*, 290 F.3d at 1050 ("to the

14  extent that a market analogy is on point, in most cases it may be more appropriate to examine

15  lawyers' reasonable expectations, which are based on the circumstances of the case and the range

16  of fee awards out of common funds of comparable size.").

17       Dr. Veach further contends that fees to Class Counsel and fees to counsel for Mr. Devine

18  should be considered together, and that the additional $90.5 million in this Settlement should go

19  entirely to Class Members.  But Class Counsel's fee request locks-in Class Counsel's previous

20  request of 25 percent of the previous settlement of $324.5 million.  Class Counsel are not seeking

21  another penny in compensation over what Class Counsel sought in connection with the earlier

22  settlement, despite the substantial additional work Class Counsel contributed to make the larger

23  settlement possible.  Mr. Devine's counsel played no role in the creation of the earlier $324.5

24  million common fund, and Mr. Devine's counsel properly acknowledge that they have no claim

25  to any portion of it.  Class Counsel and Mr. Devine's counsel took very different risks, made

26  substantially different investments, and made significantly different contributions to the

27  prosecution of the action.  The Court will assess the fee request of Mr. Devine's counsel

28  separately.

1    Finally, Dr. Veach argues that cutting Class Counsel's fee request by more than half

2    would "not create a disincentive to pursue similar actions."  He is mistaken.  Here, after the

3    United States Department of Justice announced its findings regarding Defendants' alleged

4    violations of the Sherman Act, no firm other than those in this case filed a civil action.  This was

5    true despite a benchmark expectation of 25 percent of any common fund recovery.  Arbitrarily

6    limiting Class Counsel's compensation to less than 10 percent of the common fund for a case

7    Class Counsel alone investigated, prosecuted, funded, and resolved, and at the expense of taking

8    on different work, would discourage complex and risky private antitrust actions like this one,

9    which serve "the high purpose of enforcing the antitrust laws," *Zenith Radio Corp. v. Hazeltine*

10   *Research, Inc.*, 395 U. S. 100, 130-31 (1969), and "provide a significant supplement to the

11   limited resources available to the Department of Justice for enforcing the antitrust laws and

12   deterring violations," *Reiter v. Sonotone Corp.*, 442 U.S. 330, 344 (1979).

13   Such a dramatic downward departure from the Ninth Circuit benchmark rate of 25 percent

14   would also inject substantial uncertainty and add additional risks to the decision of qualified

15   counsel to accept contingency representation in large, complex cases.  When deciding whether to

16   file ambitious and precedent-setting cases like this, counsel must weigh the extraordinary costs

17   (including millions of dollars in out-of-pocket expenses and tens of thousands of hours of

18   attorney time over several years) against the possibility of failing to find the evidence necessary

19   to certify a class, prove damages, or survive summary judgment, much less win at trial and on

20   appeal.  These risks were particularly apparent here, where the DOJ closed its investigation

21   without pursuing any penalties or restitution from the Defendants, where no cases were filed

22   (other than those filed by Class Counsel) following public disclosure of the alleged misconduct,

23   and where the class of alleged victims included approximately 64,466 employees across seven

24   companies.  If counsel cannot expect to be compensated pursuant to the Ninth Circuit's 25

25   percent benchmark (or here, just 19.5 percent) in the event of a common fund recovery for the

26   Class, the quality of representation available to future classes of victims may suffer.

27   A contingent fee recognizes the risk that there are cases that do not get paid, even while

28   overheads and payrolls for Class Counsel continue.  "In common fund cases, attorneys whose

1    compensation depends on their winning the case must make up in compensation in the cases they

2    win for the lack of compensation in the cases they lose." *Vizcaino*, 290 F.3d at 1051 (internal edit

3    and quotation omitted).

4        Further, awarding lower fee percentages as the size of the settlement increases misaligns

5    the incentive to Class Counsel to push for the largest possible settlement consistent with the

6    interests of the Class.  *See Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 122 (2d Cir.

7    2005) (percentage method "directly aligns the interests of the class and its counsel") (citation

8    omitted).  The percentage method also encourages efficiency and discourages waste.

9        Class Counsel's fee request is reasonable and well below the Ninth Circuit's benchmark

10   fee of 25 percent.  Mr. Hsu's and Dr. Veach's objections are hereby overruled.

11        **B.    Objections Regarding Notice of Class Counsel's Fee Request**

12       Dr. Veach and Mark Zavislak contend that additional notice procedures should have been

13   implemented to apprise Class members of Class Counsel's fee requests and supporting papers.

14   They rely on *In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988 (9th Cir. 2010), which

15   held that class counsel's fee motion must be filed before the Class's objection deadline.  But this

16   is exactly what occurred here.  *See, e.g.*, *In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. 07-md-

17   1827-SI, 2011 U.S. Dist. LEXIS 154288, at *4-6 (N.D. Cal. Dec. 27, 2011) (overruling objection

18   that fee requests should have been posted to the case-specific website: "Nothing in the *Mercury*

19   *Interactive* decision requires a motion for attorneys' fees to be posted on a class action website.").

20       Consistent with *Mercury Interactive*, the Court set a deadline for Class Counsel to submit

21   fee requests by May 7, 2015, two weeks before the deadline for Class Members to opt-out, object,

22   or provide notice of intent to appear at the final approval hearing.[6]  (Dkt. 1054 at 11-12.)  Class

23   Counsel's fee requests were available on the public docket, just as all other publicly-available

24   documents filed in this case.  Class Members had two weeks to examine and oppose the requests,

25   satisfying the full-and-fair-opportunity requirement under Federal Rule of Civil Procedure 23(h).

26   *See TFT-LCD*, 2011 U.S. Dist. LEXIS 154288, at *5 ("[the objector] therefore cannot

27

28   ──────────────
     [6] The Court's Order Granting Preliminary Approval (setting the deadline for Class Counsel's fee
     requests) was also posted to the case-specific website.

1263256.2

1  demonstrate any prejudice by the posting of the Fee Motion on the Court's public docket alone,

2  rather than in conjunction with the class action website.").

3      Mr. Zavislak complains that the Court's electronic PACER system charges access fees.[7]

4  But Mr. Zavislak ignores that the Court-approved Notice (mailed to all Class Members and

5  posted on the case-specific website) included a variety of means to ask for assistance.  Class

6  Members were notified that they could "call, write, fax, or email the Notice Administrator with

7  your questions[.]"  (Notice, Dkt. 1086-1, at 12: "How do I get more information?".)  This

8  included a toll-free telephone number.  As of June 5, 2015, the Notice Administrator had received

9  56 requests for a copy of the Notice over the phone, by email, and by mail.  The Notice

10  Administrator sent a copy of the Notice whenever one was requested.  No Class Member asked

11  the Notice Administrator for a copy of Class Counsel's fee requests.  Had any Class Member

12  requested a copy of Class Counsel's fee requests, the Notice Administrator has testified that it

13  would have provided it.  In addition, the Notice provided contact information for Class Counsel,

14  including their mailing addresses, phone numbers, and email addresses.  (Dkt. 1086-1 at 8.)

15  Hundreds of Class Members contacted Class Counsel with questions.  None asked for Class

16  Counsel's fee papers.  Had any Class Members requested a copy, Class Counsel have stated that

17  they would have provided it.  *See TFT-LCD*, 2011 U.S. Dist. LEXIS 154288, at *5 ("Class

18  Members had multiple avenues in addition to the Court's docket and the class action website to

19  obtain information about the proposed settlements and the Fee Motion.").

20      Neither Dr. Veach nor Mr. Zavislak requested a copy of Class Counsel's fee request

21  before submitting their objections.  These objections were the first (and only) indication Class

22  Counsel or the Notice Administrator had that any Class Member had difficulty reviewing Class

23  Counsel's fee requests.  Immediately upon reviewing the objections, Class Counsel emailed their

24  fee requests and supporting declarations directly to Dr. Veach on May 21, 2015, and to Mr.

25  Zavislak (also, in an abundance of caution, to Mr. Hsu) on May 22, 2015.  Class Counsel also

26  uploaded the documents to the case-specific website.  Class Counsel informed Dr. Veach and Mr.

27  Zavislak that Class Counsel would not oppose an extension for them to review the materials.  Dr.

28

[7] Mr. Zavislak is a California-licensed attorney who appears to work as a lawyer for Google.

1    Veach accepted Class Counsel's invitation and submitted a supplemental objection on June 1,

2    which Class Counsel included among the timely objections received and do not oppose on the

3    basis that it arrived after the objection deadline.  The Court has reviewed and considered Dr.

4    Veach's supplemental objection.  Mr. Zavislak declined to supplement his comments, even

5    though he received the same invitation.  Thus, neither Dr. Veach nor Mr. Zavislak can

6    demonstrate any prejudice for failing to review the fee papers prior to the objection deadline.

7    *TFT-LCD*, 2011 U.S. Dist. LEXIS 154288, at *5.

8           Dr. Veach's and Mr. Zavislak's objections regarding Notice are hereby overruled.

9    **C.      Objections Regarding Defendants' Agreement Not to Comment on or Oppose**
          **Class Counsel's Fee Request**
10

11          Dr. Veach and Mr. Zavislak object because the Defendants agreed to a so-called "clear

12   sailing" provision: not to comment on or oppose Class Counsel's fee request "so long as the

13   request for fees is no greater than $81,125,000 (approximately 19.54%) of the $415 million

14   Settlement Fund."  (Dkt. 1033-1 at 28.)

15          However, as the Ninth Circuit has explained, a "clear sailing" provision "does not signal

16   the possibility of collusion" where, as here, Class Counsel's fee will be awarded by the Court

17   from the same common fund as the recovery to the Class.  *Rodriguez*, 563 F.3d at 961 n.5.

18   Indeed, there is substantial evidence that the settlement achieved here was the product of hard-

19   fought, adversarial negotiation, supervised and facilitated by the Hon. Layn Phillips, an

20   experienced mediator and former United States District Court Judge.  Class Counsel did not

21   negotiate fees separate and apart from Class funds, nor did Class Counsel agree that any portion

22   of the $415 million common fund could revert back to Defendants.  *See, e.g.*, *In re Easysaver*

23   *Rewards Litig.*, 921 F. Supp. 2d 1040, 1054 (S.D. Cal. 2013) (overruling objection to "clear

24   sailing" provision where the settlement was the result of arms-length negotiations, funds for

25   attorney fees were not held separate from class funds, and no settlement funds would revert back

26   to defendants).  Given that Defendants have merely agreed not to object to Class Counsel staying

27   within a legal benchmark articulated by the Ninth Circuit, it is hardly a sign that the Defendants

28   gave up something special in trade.

1    Dr. Veach's and Mr. Zavislak's objections regarding "clear sailing" language are hereby

2    overruled.

3    **D.**      **Objection Asking the Court to Examine the Accuracy of Class Counsel's**
             **Time**
4

5    Dr. Veach objects to time records submitted by Class Counsel "until they have been

6    carefully examined by the Court." (Jue Supp. Decl., Dkt. 1089, Ex. L at 4.) The Court has

7    performed this review. Dr. Veach's objection is accordingly moot and hereby overruled.

8    **E.**      **Objection to Providing Named Plaintiffs with Service Awards**

9

10   Finally, Mr. Zavislak, asks the Court to disallow Class Representative service awards "in

     their entirety." He contends that the requested amounts are excessive, and argues that the fact
11
     that Class Counsel seek the same service award for each Class Representative somehow
12
     demonstrates improper collusion among the Class Representatives, akin to Defendants' alleged
13
     collusion at issue in this case. Mr. Zavislak's arguments are without merit.
14
          First, as Class Counsel previously explained, the requested services awards are
15
     appropriate to compensate the Class Representatives for the critical services they provided, the
16
     substantial risks they incurred during the course of the litigation, and to reward their public
17
     service of contributing to the enforcement of the nation's antitrust laws. No Class Representative
18
     was promised any amount of money to serve as a Class Representative, or in connection with
19
     their approval of this Settlement or any prior settlement in this action. Their support for the
20
     Settlement was based on their views, in light of the record and the risks, that the Settlement is in
21
     the best interests of the Class.[8]
22
          Second, Mr. Zavislak's suggestion of improper collusion among the Class Representatives
23
     is wrong. Class Counsel worked extensively with all five named Plaintiffs throughout this
24

25   _____

26   [8] Class Counsel previously explained that they initially requested service awards of up to $80,000
     for each Class Representative. However, as the Court indicated it would consider the higher
27   amount requested by Plaintiff Michael Devine for himself, Class Counsel requested that the other
     Class Representatives not be treated less favorably for their similar time, risk, attention, and
28   independent judgment about supporting settlements in this action lest service awards incentivize
     objections over service and risk. The Court-approved Notice reflected this request.

1263256.2

litigation and know well the effort and professional sacrifice they made to bring this result to the Class.  Upon reviewing their respective contributions, Class Counsel submitted a request on behalf of the three Named Plaintiffs (Mr. Fichtner, Mr. Hariharan, and Mr. Stover) they currently represent, as well as for the estate of deceased named Plaintiff Brandon Marshall.  These requests were made in consideration of the applicable caselaw and the supporting evidence.  Mr. Devine's counsel made a separate request, supported by his counsel's review of his separate contribution.

Mr. Zavislak's objection is hereby overruled.

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED that:**

1.      This Court hereby finds and concludes that due and adequate notice was directed to all persons and entities who are Class Members, advising them of Class Counsel's intent to seek attorneys' fees and expenses, and service awards for the Class Representatives, and of their right to object thereto.

2.      A full and fair opportunity was accorded to all such persons and entities to be heard.

3.      Only three Class Members objected to Class Counsel's request for attorneys' fees or expenses, and only one objected to Class Counsel's requests for Named Plaintiff service awards, and those objections are overruled.

4.      The Court hereby grants Plaintiffs' request for attorneys' fees of approximately 19.5 percent of the Settlement Funds ($81,125,000), plus reimbursement of $1,200,000 in litigation expenses, for a combined total of $82,325,000.  In addition, the Court hereby grants Class Counsel's request for service awards in the amount of $160,000 each to Class Representatives Michael Devine, Mark Fichtner, Siddharth Hariharan and Daniel Stover, as well as to the estate of deceased Class Representative Brandon Marshall.  The awarded attorneys' fees and costs and service awards shall be paid pursuant to the terms of the Settlement Agreement.

Dated: _____        _____
                                                               LUCY H. KOH
                                                               United States District Judge

- 14 -