1              IN THE UNITED STATES DISTRICT COURT

2            FOR THE NORTHERN DIVISION OF CALIFORNIA

3                      SAN JOSE DIVISION

4

5   IN RE:  HIGH-TECH EMPLOYEE ANTI-TRUST )   5-11-CV02509-LHK
        LITIGTION,                        )
6                                         )   SAN JOSE, CA
                                          )
7                                         )   JULY 9, 2015
                                          )
8                                         )   PAGES 1-76
                                          )
9                                         )

10

11

                    TRANSCRIPT OF PROCEEDINGS
12            BEFORE THE HONORABLE LUCY H. KOH
                 UNITED STATES DISTRICT JUDGE
13

14   A P P E A R A N C E S:

15   FOR THE PLAINTIFFS,   LEIFF, CABRASER, HEIMANN & BERNSTEIN, LLP
     MARSHALL, STOVER,     BY:  KELLY M. DERMODY, ESQ.
16   FICHTNER, HARIHARAN  ALSO BY:  BRENDAN PATRIC GLACKIN, ESQ.
     AND DEVINE:          ALSO BY:  DEAN MICHAEL HARVEY, ESQ.
17                        ALSO BY:  ANNE BRACKETT SHAVER, ESQ.
                          275 BATTERY ST.  29TH FL.
18                        SAN FRANCISCO, CA 94111-3339
                          415-956-1000
19
     FOR THE PLAINTIFF,   GIRARD GIBBS, LLP
20   DEVINE:              BY DANIEL C. GIRARD, ESQ.
                          601 CALIFORNIA ST., 14TH FL.
21                        SAN FRANCISCO, CA 94108
                          415-981-4800
22

23              APPEARANCES CONTINUED ON NEXT PAGE

24

25   PRO-TEM COURT REPORTER:       KIM THORPE, CSR
                                   CERTIFICATE NUMBER 9318
26
                 PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY
27                   TRANSCRIPT PRODUCED WITH COMPUTER

28

                                                              1

```
 1 │  FOR THE PLAINTIFFS,   JOSEPH SAVERI LAW FIRM
   │  MARSHALL, STOVER,     BY:   JOSEPH SAVERI, ESQ.
 2 │  FICHTNER, HARIHARAN   ALSO BY: JAMES GIRARD BEEBE DALLAL
   │  AND DEVINE:           505 MONTGOMERY ST. STE. 625
 3 │                        SAN FRANCISCO, CA  94111
   │                        415-500-6800
 4 │
   │  FOR THE DEFENDANT,    MUNGER, TOLLES & OLSEN, LLP
 5 │  INTEL:                BY:   GREGORY P. STONE, ESQ.
   │                        355 SOUTH GRAND AVE. 35TH FL.
 6 │                        LOS ANGELES, CA 90071-1560
   │                        213-683-9100
 7 │
   │  FOR THE DEFENDANT,    O'MELVENY MYERS, LLP
 8 │  APPLE:                BY: GEORGE RILEY, ESQ.
   │                        ALSO BY:  CHRISTINA JOANNE BROWN, ESQ.
 9 │                        TWO EMBARCADERO CENTER 28TH FL.
   │                        SAN FRANCISCO, CA 94111-3823
10 │                        415-984-8741
   │
11 │  FOR THE DEFENDANT,    MAYER BROWN LLP
   │  GOOGLE:               BY:   LEE H. RUBIN, ESQ.
12 │                        TWO PALO ALTO SQUARE, STE. 300
   │                        PALO ALTO, CA 94306-2112
13 │                        650-331-2000
   │
14 │  ALSO FOR THE DFT,     KEKER & VAN NEST, LLP
   │  GOOGLE:               BY:   ROBERT ADDY VAN NEST, ESQ.
15 │                        ALSO BY:  JUSTINA KAHN SESSIONS, ESQ.
   │                        633 BATTERY ST.
16 │                        SAN FRANCISCO, CA  94111-1809
   │                        415-391-5400
17 │
   │  FOR THE DEFENDANT,    JONES DAY
18 │  ADOBE:                BY:  DAVID CRAIG KIERNAN, ESQ.
   │                        555 CALIFORNIA ST., 26TH FL.
19 │                        SAN FRANCISCO, CA  94104
   │                        415-626-3939
20 │
   │
21 │
   │
22 │
   │
23 │
   │
24 │
   │
25 │
   │
26 │
   │
27 │
   │
28 │
```

```
1   SAN JOSE, CALIFORNIA                         JULY 9, 2015
2                    P R O C E E D I N G S
3            (WHEREUPON, COURT CONVENED AND THE FOLLOWING
4   PROCEEDINGS WERE HELD:)
5
6            THE CLERK:  CALLING CASE 11CV02509, IN RE: HIGH-TECH
7   EMPLOYEE ANTITRUST LITIGATION.  IF THE PARTIES WOULD PLEASE
8   COME FORWARD AND STATE THEIR APPEARANCES.
9            MR. SAVERI:  JOSEPH SAVERI ON BEHALF OF THE
10  PLAINTIFFS.
11           MS. DERMODY:  KELLY DERMODY FROM LEIFF, CABRASER,
12  HEIMANN & BERNSTEIN.  WITH ME ARE MY PARTNERS, BRENDAN GLACKIN
13  DEAN HARVEY AND ANN SHAVER.
14           MR. GIRARD:  DAN GIRARD ON BEHALF OF MR. MICHAEL
15  DEVINE WHO IS HERE TODAY.
16           MR. VAN NEST:  GOOD AFTERNOON.  BOB VAN NEST HERE
17  WITH JUSTINA SESSIONS FOR GOOGLE.  GOOD AFTERNOON.
18           MR. RILEY:  GEORGE RILEY OF O'MELVENY & MEYER FOR
19  APPLE.  I AM JOINED BY MY COLLEAGUE, CHRISTINA BROWN.
20           MR. STONE:  GREGORY STONE FROM MUNGER, TOLLES &
21  OLSON ON BEHALF OF INTEL CORPORATION.
22           MR. KIERNAN:  DAVE KIERNAN FROM JONES DAY ON BEHALF
23  OF ADOBE.
24           MR. RUBIN:  GOOD AFTERNOON, LEE RUBIN FOR MAYER
25  BROWN ON BEHALF OF GOOGLE, AS WELL.
26           THE COURT:  GOOD AFTERNOON.  DO WE HAVE EVERYONE'S
27  APPEARANCES?  OKAY.  ALL RIGHT.  WELCOME.
28               DO WE HAVE ANY ADDITIONAL ITEM OF DOUBTS OR
```

1   OBJECTIONS OR ANY UPDATES FROM THE BRIEFING?

2             MR. SAVERI:  NO, YOUR HONOR.  YOU HAVE EVERYTHING

3   THAT WE ARE AWARE OF THAT HAS BEEN SUBMITTED IN THE RECORD TO

4   THE CLAIMS ADMINISTRATOR AND TO US.

5             THE COURT:  ALL RIGHT.  IS THERE AN AGREEMENT TO

6   DELAY THE OPT OUT AS TIMELY?

7             MR. SAVERI:  YES, YOUR HONOR.

8             MR. VAN NEST:  YES, YOUR HONOR.  THERE IS.

9             THE COURT:  ALL RIGHT.  SO THAT INDIVIDUAL -- AND

10  FOR THE RECORD THAT -- DO WE NEED TO PUT THAT NAME ON THE

11  RECORD?  NO.

12            NOW, IS THERE ANY OBJECTION TO GIVING OBJECTOR, MARK

13  ZAVISLAK, MORE TIME TO DECIDE WHETHER HE WISHES TO OPT OUT OR

14  NOT?

15            MS. DERMODY:  NONE FROM US.

16            MR. SAVERI:  ABSOLUTELY NOT.

17            THE COURT:  WHAT ABOUT FOR THE DEFENDANTS?

18            MR. VAN NEST:  I WASN'T AWARE OF THAT REQUEST, YOUR

19  HONOR, BUT I'M NOT SURE WHY HE WOULD NEED ADDITIONAL TIME TO

20  OPT OUT.  THE OPT OUT DATE IS COMING UP.

21            THE COURT:  OKAY.  WELL, HE JUST PUT IN HIS

22  OBJECTION THAT BECAUSE THE ATTORNEY'S FEES MOTION AND

23  SUPPORTING DECLARATIONS AND DOCUMENTS WERE NOT PUT ON THE

24  WEBSITE UNTIL SO LATE, THAT HE DIDN'T HAVE ADEQUATE TIME TO GO

25  THROUGH IT, SO HE REQUESTS EITHER AN OBJECTION OF FINAL

26  APPROVAL -- OR IN THE ALTERNATIVE, MORE TIME TO PREPARE.

27            HE SPECIFICALLY REQUESTS EITHER A DENIAL OF FINAL

28  APPROVAL OR ALTERNATIVELY, THE COURT SHOULD PERMIT THE

1  UNDERSIGNED TO HAVE ADDITIONAL TIME TO DECIDE WHETHER

2  EXCLUDING HIM FROM THE PROPOSED SETTLEMENT ONCE ALL OF THE

3  ABOVE OBJECTIONS HAVE BEEN RESOLVED.

4        THIS IS DATED MAY 21 OF 2015, SO IT HAS BEEN ALMOST

5  TWO MONTHS BUT --

6        MR. VAN NEST:  I REALLY DON'T SEE A NEED FOR THAT,

7  YOUR HONOR.  I DON'T BELIEVE THE MATERIALS WERE THAT LATE.

8  THERE HAS BEEN AMPLE TIME FOR ALL CLASS MEMBERS TO OBJECT OR

9  OPT OUT, AND I DON'T SEE ANY REASON TO MOVE THAT DATE.

10        MS. DERMODY:  FOR PLAINTIFFS, WE COULD SAY IF HE WAS

11  TO OPT OUT TODAY, WE WOULD HAVE NO OBJECTION, BUT MR. VAN NEST

12  IS CORRECT.  THERE HAS BEEN AMPLE TIME, AND MR. ZAVISLAK'S

13  SITUATION -- OUR FIRM WHEN WE GOT THE OBJECTION, EVEN TOW FOE

14  WE WERE INTERACTIVE ALL WE ARE TO DO IS FILE THE FEE PAPERS.

15  TWO WEEKS BEFORE THE OBJECTION DEADLINE, WHEN WE SAW THAT HE

16  WAS CONCERNED ABOUT THE COST OF DOWNLOADING, WE REACHED OUT TO

17  HIM INDIVIDUALLY.

18        WE SENT HIM ALL THE MATERIALS INDIVIDUALLY.  WE ALSO

19  MADE SURE THEY WERE ALL POSTED AND AVAILABLE PUBLICLY FOR ANY

20  OTHER CLASS MEMBER WHO MIGHT HAVE THAT CONCERN, AND WE INVITED

21  MR. ZAVISLAK TO SUPPLEMENT HIS OBJECTION AND/OR TO GIVE

22  FURTHER COMMENT ABOUT ALL THE MATERIALS THAT HE HAD THEM

23  INDIVIDUALLY.  HE DECLINED TO DO THAT.  IN HIS COMPARABLE

24  CASE, A DR. ERIC BEECH WHO WAS AN OBJECTOR ALSO WAS CONCERNED

25  HE WASN'T ABLE TO GET THE MATERIALS.

26        WE INDIVIDUALLY GAVE HIM ALL OF THE MATERIALS AND

27  TRIED HIM TO SUPPLEMENT HIS OBJECTION WHICH HE DID WHICH WE

28  INCLUDED WITHIN WITH THE OBJECTIONS IF AS IF IT WERE FILED

1  TIMELY, SO WE THINK IF MR. ZAVISLAK WANTED TO PROVIDE FURTHER

2  COMMENTARY TO THE COURT, HE HAS HAD A FULL RECORD AND HAS HAD

3  PLENTY OF TIME TO DO THAT.

4          AGAIN, IF HE JUST WANTS TO OPT OUT TODAY, WE HAVE NO

5  OBJECTION, BUT WE THINK THE TIME FOR HIM TO ACTUALLY COMMENT

6  AND APPEAR HAS COME AND GONE.

7          THE COURT:  TWO OBJECTORS SAID THEY INTENDED TO

8  APPEAR TODAY:  MR. KOPLA AND MR. PAERKH.  ARE THEY HERE TODAY?

9  OKAY.  AND DOES SOME OF THE OTHER OBJECTORS DIDN'T STATE

10  WHETHER THEY INTENDED TO APPEAR OR NOT.  ARE THERE ANY OTHER

11  OBJECTORS WHO FILED DOCUMENTS WHO WISH TO SPEAK?

12          THE WITNESS:  YES, YOUR HONOR.  DEVESH PAREKH.  MY

13  OBJECTION -- I INDICATED IN MY OBJECTION THAT I DID WISH TO

14  SPEAK.

15          THE COURT:  OKAY.  ALL RIGHT.  WHY DON'T I HEAR FROM

16  THE OBJECTORS FIRST AND MAYBE, MR. ZAVISLAK, YOU CAN CLARIFY

17  WHETHER YOU STILL ARE CONSIDERING REQUESTING MORE TIME TO OPT

18  OUT OR NOT.  WELL, OKAY.  LET'S START WITH IS MR. DEVESH

19  PAREKH.

20          THE CLERK:  IF YOU WOULD PLEASE COME FORWARD AND

21  STATE AND SPELL YOUR NAME FOR THE RECORD.

22          THE WITNESS:  MY NAME IS DEVESH, D-E-V-E-S-H.  LAST

23  NAME P-A-R-E-K-H.

24          THE CLERK:  THANK YOU.

25          THE COURT:  OKAY.  AND DID I PRONOUNCE YOUR LAST

26  NAME CORRECTLY?

27          THE WITNESS:  YES.  THAT IS CORRECT.

28          THE COURT:  GO AHEAD.

1              THE WITNESS:  YES.  SO I HAVE TWO OBJECTIONS.  TO

2    SIZE OF SETTLEMENT, AND ONE OBJECTION TO DISTRIBUTION OF

3    SETTLEMENT, SO THE FIRST OBJECTION TO THE SIZE OF THE

4    SETTLEMENT IS THAT THERE ARE FEW VERY LARGE EMPLOYERS OF

5    ENGINEERS, YOU KNOW, OF ENGINEERS THAT HAVE GRADUATED FROM TOP

6    SCHOOLS, AND COLLEGES ARE NEEDED FOR, YOU KNOW, SOLVING SORT

7    OF ADVANCED PROBLEMS IN THE BAY AREA, AND OF THOSE, MOST OF

8    THEM ARE HIGHER UP IN THE DEFENDANTS, SO BECAUSE OF THAT, YOU

9    KNOW, THE CHOICES OF WHERE TO WORK FOR THOSE SORT OF ENGINEERS

10   ARE LIMITED IF THEY HAVE SOME OBLIGATIONS TO STAY IN THE AREA,

11   SO IF THEY HAVE FAMILY OR ANY OF THAT SORT OF THING, IF THEY

12   NEED TO STAY IN THE BAY AREA, THEIR FIELD OF OPPORTUNITIES IN

13   THAT RESPECT, SO THEY CAN'T JUST SWITCH TO, FOR EXAMPLE,

14   HUNDREDS OF STARTUPS IN THE AREA IF THEY WANT TO -- IF THEY

15   WANT TO HAVE SOME STEADY SALARY AT A LARGE CORPORATION THAT

16   CAN OFFER THIS TO THEM, SO THAT IS THE FIRST OBJECTION TO THE

17   SIZE OF THE SETTLEMENT, SO FOR THOSE PEOPLE WHO ARE, YOU KNOW,

18   BECAUSE THEIR EMPLOYMENT OPPORTUNITIES HAVE BEEN SORT OF

19   LIMITED TO, YOU KNOW, ESSENTIALLY WHOEVER THEY ARE WORKING FOR

20   ETERNITY, THEIR INCOME IS ALSO BEING COMMITTED POTENTIALLY,

21   AND I DON'T THINK THAT WAS DISCUSSED IN ANY OF THE ARGUMENTS

22   RAISED BY THE PLAINTIFFS.

23        THE SECOND REASON I OBJECTED TO THE SIZE OF THE

24   SETTLEMENT IS THAT, FOR EXAMPLE, SO I WORKED IN GOOGLE ON

25   GOOGLE CALENDARING ON ANDROID DURING THE CLASS PERIOD, SO

26   CALENDAR, YOU KNOW, I DON'T THINK ANY OF THE OTHER COMPANIES

27   ARE REALLY THAT INTERESTED IN MY WORK ON CALENDAR.

28              YOU KNOW, APPLE HAD DONE SOME WORK ON MOBILE.  GOOGLE

1   DIDN'T SEEM LIKE THEY WEREN'T THAT DISAPPOINTED THEY DIDN'T

2   SUCCEED AS THEY HOPED, WHEREAS FOR ANDROID SPECIFICALLY, STEVE

3   JOBS HAD SAID IT WAS VERY BIG DEAL THAT HE WAS WORKING ON

4   ANDROID -- THAT IT WAS CAUSING A LOT OF PROBLEM FOR THEIR

5   IPHONE PRODUCT SPECIFICALLY, AND THAT BECAUSE OF THAT, YOU

6   KNOW, HE HAD -- APPLE HAD, YOU KNOW, SPENT A LOT OF MONEY ON

7   LITIGATION FOR PATENTS AND SO ON, BUT THEY DID NOT APPROACH

8   ANY ANDROID ENGINEERS TO TRY TO APPROACH THEM OR ANYTHING, AND

9   THIS WOULD HAVE BEEN PROBABLY CHEAPER TO DO AT THE TIME DURING

10  THE CLASS PERIOD.

11       THERE WERE NOT THAT MANY ENGINEERS WORKING ON ANDROID,

12  AND, YOU KNOW, WHILE I WAS WORKING AT GOOGLE I DIDN'T THINK

13  MYSELF THAT I COULD JUST GO APPLY FOR APPLE OR ANYTHING.  IT

14  DIDN'T OCCUR TO ME -- ALTHOUGH IF APPLE APPROACHED ME AND MADE

15  AN OFFER, THAT WOULD HAVE POTENTIALLY CHANGED MY -- CHANGED

16  MY, YOU KNOW, POTENTIALLY INCREASING MY INCOME DURING THAT

17  PERIOD, AND SO, YOU KNOW, BECAUSE, YOU KNOW, BECAUSE THIS WAS

18  A NESCIENT MARKET WHERE THE MOBILE SPACE IN PARTICULAR WAS

19  JUST STARTING TO EXPLODE IN THAT TIME FRAME AND ANY SORT OF

20  EARLY -- ANY EARLY CLEARANCE AT THAT TIME WHEN STOOD TO GAIN A

21  LOT IF THEY GREW A LOT OF MARKETS' SHARE.

22       I THINK THAT IT WOULD HAVE MADE A LOT OF SENSE FOR APPLE

23  TO START APPROACHING ANDROID ENGINEERS IN PARTICULAR, BUT IT

24  DIDN'T HAPPEN, SO THAT IS MY SECOND OBJECTION TO THE SIZE OF

25  THE SETTLEMENT.

26       NOW, MY OBJECTION TO THE WAY THAT THE SETTLEMENT IS

27  DISTRIBUTED IS THAT THE SETTLEMENT -- THE PORTION OF THE

28  SETTLEMENT THAT IS GIVEN TO EACH OF THE MEMBERS OF THE CLASSES

1    BASED ON THEIR SALARY DURING THE CLASS PERIOD, SO THE PROBLEM

2    WITH THAT IS THAT THE DIFFERENT COMPANIES HAD DIFFERENT WAYS

3    OF STRUCTURING THEIR COMPENSATION.

4         GOOGLE IN PARTICULAR HAD A FIXED FIFTEEN PERCENT BONUS

5    THAT WASN'T CONSIDERED PART OF THE SALARY, AND IT WAS

6    ESSENTIALLY GUARANTEED OR IT WAS ACTUALLY GUARANTEED, SO IT

7    COULD BE CONSIDERED, YOU KNOW, SALARY, AND THEN THEY HAD SOME

8    MULTIPLIER ON TOP OF THAT, SO THAT FIXED FIFTEEN PERCENT IN

9    ADDITION TO THE BASE SALARY IS NOT CONSIDERED AN ACCOMODATION

10   OF THE DISBURSEMENT, AND THAT IS -- THOSE ARE ALL THREE OF MY

11   OBJECTIONS.  THANK YOU.

12        THE COURT:  OKAY.  THANK YOU.  LET ME HEAR FROM THE

13   PARTIES.  IS IT CORRECT THAT GOOGLE'S BONUS IS NOT INCLUDED IN

14   A BASE SALARY OF THE INDIVIDUAL CLASS MEMBERS FROM WHICH THE

15   FUND ALLOCATIONS ARE DECIDED?

16        MR. SAVERI:  YOUR HONOR, WE BASED THE WAY WE DO THE

17   MATH BASED ON BASE OF COMPENSATION.

18        THE COURT:  SO THAT IS YES?

19        MR. SAVERI:  YES.  AND, YOUR HONOR, THAT IS

20   CONSISTENT WITH -- THAT METHODOLOGY IS CONSISTENT WITH THE

21   EVIDENCE IN THE CASE.  THE EVIDENCE IN THE CASE WAS THAT

22   DEFENDANTS USE A BALANCE OF BASE SALARY, OTHER METHODOLOGIES,

23   BUT THE AGREEMENTS IN LARGE MEASURE AFFECTED THE BASE

24   COMPENSATION, AND SO WHEN IT COMES TIME TO TRY TO FIGURE OUT A

25   RATIONAL BASIS FOR ALLOCATING SETTLEMENT PROCEEDS ACROSS THE

26   CLASS, THIS IS A REASONABLE WAY OF DOING IT CONSISTENT WITH

27   THE EVIDENCE IN THE CASE.

28        THE COURT:  WHAT IS THE MULTIPLIER ON TOP OF

1    GUARANTEED BONUS IN THE BASE SALARY?

2           THE WITNESS:  SORRY.  I HAVE MY OFFER AND OFFER

3    SPREAD SHEET THAT WAS GIVEN TO ME BY A RECRUITER WHEN I JOINED

4    GOOGLE, SO THERE LISTS OUT THIS FIFTEEN PERCENT ANNUAL BONUS

5    AS PART OF THE COMPENSATION THAT IS ESSENTIALLY GUARANTEED,

6    AND SO THE MULTIPLIER WASN'T CONSIDERED IN THE SPREAD SHEET,

7    SO I HAVE IT WITH ME.  SO THE MULTIPLIER -- THERE WOULD BE TWO

8    MULTI-LAYERS.

9           ONE BASED ON PERFORMANCE OF THE COMPANY AND ONE

10   BASED ON THE PERFORMANCE OF THE EMPLOYEE, AND NEITHER OF THOSE

11   WERE CONSIDERED IN THIS OFFER ANALYSIS SPREAD SHEET, SO IT WAS

12   -- SO WHEN HE MADE THE COMPARISON OF THIS OFFER VERSUS ANOTHER

13   COMPANY'S OFFER, THAT FIFTEEN PERCENT WAS BACKED INTO THAT

14   COMPARISON.

15          THE COURT:  SO YOU ARE SAYING YOUR MULTIPLIER WAS

16   NOT IN YOUR OFFER LETTER?

17          THE WITNESS:  RIGHT.

18          THE COURT:  ONLY YOUR GUARANTEED FIFTEEN PERCENT

19   BONUS PLUS YOUR BASE?

20          THE WITNESS:  RIGHT.

21          THE COURT:  AND THEN THE MULTIPLIER WAS JUST

22   DETERMINED ON THE YEARLY BASIS?

23          THE WITNESS:  RIGHT.  THE MULTIPLIER IS DETERMINED

24   YEARLY.

25          THE COURT:  OKAY.  ANYONE ELSE WANT TO RESPOND TO

26   MR. PARKAH'S STATEMENT?

27          MR. VAN NEST:  JUST BRIEFLY, YOUR HONOR.  IT IS MY

28   -- ON BEHALF OF GOOGLE, IT IS NOT MY UNDERSTANDING THAT ANY OF

1    THE BONUS MONEY IS GUARANTEED.  IT IS DISCRETIONARY YEAR AFTER

2    YEAR.  I WOULD SAY ALSO THAT THE PARTIES DID DISCUSS THIS

3    ISSUE EXTENSIVELY, AND IT TURNS OUT THAT ALL OF THE COMPANIES

4    HAVE DIFFERENT WAYS OF CALCULATING BONUS, AND THEY HAVE

5    DIFFERENT SYSTEMS AND DIFFERENT MODES OF DOING IT, AND

6    THEREFORE, BOTH IN THIS SETTLEMENT AND THE PRIOR SETTLEMENT ON

7    BASE SALARY WAS DETERMINED TO BE THE FAIREST AND SIMPLEST AND

8    REALLY MOST EQUITABLE WAY TO CALCULATE THE DISTRIBUTION, AND

9    THAT IS WHAT WAS DONE IN THE EARLIER SETTLEMENT AND THAT IS

10   WHAT WE'RE DOING IN THIS SETTLEMENT, AS WELL.

11             THE COURT:  OKAY.

12             MS. DERMODY:  WELL, KELLY DERMODY.  I WOULD JUST

13   ELABORATE ON WHAT MR. SAVERI SAID ABOUT THE HISTORY OF THE

14   CASE.  AS YOUR HONOR WOULD RECALL THAT WHEN WE WERE

15   CHALLENGING THESE COMPENSATION STRUCTURES, WE WERE LOOKING AT

16   THE WAY IN WHICH THEY MOVED TOGETHER, SO JOBS WERE TIED IN JOB

17   FAMILIES WHICH WERE PAID WITH BASE SALARIES.  THE COMPANY'S

18   ALL USED MARKET SURVEYS TO LOOK AT WHAT THE COMPETITORS OUT IN

19   THE MARKETPLACE WERE PAYING IN BASE SALARIES.

20             THE BASE SALARY WAS THE WAY IN WHICH EQUITY ISSUES

21   WOULD PLAY OUT TO SPREAD WIDELY ACROSS THE COMPENSATION

22   STRUCTURE, SO CONSISTENT WITH OUR THEORY OF THE CASE WHEN YOU

23   AFFECT THE BASE SALARY OF AN EMPLOYEE IN ONE AREA, YOU SPREAD

24   IT OUT TO THE EMPLOYEES IN THE OTHER AREAS.  THE TRICK FOR

25   DISTRIBUTING A SETTLEMENT, WHEN YOU START THINKING ABOUT THE

26   UNIQUE CIRCUMSTANCES OF PEOPLE THAT RECEIVED EQUITY COMP OR

27   BONUS COMP IS WHETHER WHAT YOU ARE YOU ARE REALLY DOING IS

28   OVER-REWARDING PEOPLE WHO ALREADY RECEIVED RETENTION-TYPE

1    COMPENSATION, PEOPLE WHO WERE BEING SORT OF OFFSET

2    INDIVIDUALLY IN A SUPPRESSED SYSTEM, SO IF YOU INCLUDE THOSE

3    TYPES OF COMP, YOU MIGHT ACTUALLY END UP WITH THE ABSOLUTE

4    REVERSE OF A GENERALLY FAIR SYSTEM TO THE CLASS, AND A SYSTEM

5    THAT INSTEAD REWARDS THOSE MEMBERS OF THE CLASS WHO

6    ALREADY WERE BEING TAKEN CARE OF IN A SUPPRESSED SYSTEM

7    DISPROPORTIONATELY.

8         WE THINK BASE SALARY IS THE BEST WAY TO APPROACH

9    VARIOUS SITUATIONS THAT CLASS MEMBERS HAD IN A WAY THAT IS NOT

10   LIKELY TO BE UNFAIR TO THE VAST MAJORITY OF THEM.  THIS BE

11   INDIVIDUALS THAT INDIVIDUALLY MAYBE IF THEY WERE TRYING THIS

12   CASE AS AN INDIVIDUAL OPT OUT MIGHT DO BETTER THAN WHAT THEY

13   WOULD DO IN A SETTLEMENT.  ABSOLUTELY.  TRUE OF EVERY CLASS

14   ACTION, BUT THE ALLOCATION PROCESS I THINK IS THE FAIREST WAY

15   TO TREAT ALL CLASS MEMBERS EQUALLY.

16        THE COURT:  I WILL GIVE YOU THE LAST WORD.

17        THE WITNESS:  JUST TO -- I THINK THERE IS SOME SORT

18   OF CONFUSION JUST BECAUSE IT WAS CALLED A BONUS ON THEIR

19   SPREAD SHEET, THE BONUS IS ACTUALLY -- SO THERE IS A SET FIXED

20   AMOUNT THAT IS ADDED ON TO OUR COMPENSATION EVERY YEAR AT THE

21   BONUS TIME, BUT THAT FIFTEEN PERCENT IS GUARANTEED.  THERE IS

22   A MULTIPLIER BETWEEN ONE AND ESSENTIALLY SORT OF I THINK TWO

23   IS THE HIGHEST, AND BECAUSE THAT MULTIPLIER CAN'T FALL BELOW

24   ONE, THAT GUARANTEED BONUS DURING THE BONUS PERIOD SHOULD

25   PROBABLY BE ACCOUNTED FOR AS PART OF BASE SALARY IN TERMS OF

26   DISBURSEMENT.

27        THE COURT:  AND YOU ARE REFERRING TO THE FIFTEEN

28   PERCENT BONUS AND NOT ONE TO TWO MULTIPLIER?

1          THE WITNESS:  RIGHT.  NOT REFERRING TO THE

2   MULTIPLIER.

3          THE COURT:  FOR THE GUARANTEED BONUS, IS THAT ALL OF

4   IT ANYWAY?

5          THE WITNESS:  YEAH.

6          THE COURT:  THERE IS SOME MINIMAL LEVEL OF

7   PERFORMANCE IS A NECESSARY TO GET THAT.

8          THE WITNESS:  I THINK THE ONLY MINIMAL LEVEL OF

9   PERFORMANCE IS TO NOT BE FIRED BEFORE JANUARY 1 WHEN THE

10  BONUSES ARE PAID OUT, SO THE ONLY DIFFERENCE BETWEEN THE BONUS

11  AND ACTUAL SALARY IS THAT THE BONUS COMES IN ONE PAYCHECK AND

12  AT THE END OF THE YEAR, AND THEN THERE ARE SOME MULTIPLIERS ON

13  TOP OF THE BONUS BUT NOT ON TOP OF THE FULL SALARY.

14         THE COURT:  AND THE MULTIPLIER IS CALCULATED

15  INCLUDING THE FIFTEEN PERCENT?

16         THE WITNESS:  RIGHT.

17         THE COURT:  THAT MULTIPLIER ON THE BASE SALARY?

18         THE WITNESS:  SO THE MULTIPLIER IS ON TOP OF THE

19  BONUS.

20         THE COURT:  WHAT ARE YOU MULTIPLYING?  ARE YOU

21  MULTIPLYING IT WITH THE BASE SALARY OR ARE YOU MULTIPLYING THE

22  BASE SALARY PLUS FIFTEEN PERCENT?

23         THE WITNESS:  HYPOTHETICALLY IF THERE IS AN ENGINEER

24  MAKING A SALARY OF A HUNDRED THOUSAND, THEN YOU WOULD HAVE A

25  --

26         THE COURT:  FIFTEEN THOUSAND DOLLAR --

27         THE WITNESS:  -- FIFTEEN THOUSAND DOLLAR THAT IS

28  ADDED IN THERE TO FIRST IN THEIR CHECK, YOU KNOW, IN THE BONUS

1   PERIOD.

2           THE COURT:  EVERY YEAR?

3           THE WITNESS:  EVERY YEAR.  NOW THAT FIFTEEN THOUSAND

4   COULD BE MULTIPLIED BY A COMPANY PERFORMANCE MULTIPLIER AND A

5   INDIVIDUAL CONTRIBUTOR MULTIPLIER, SO IF THE COMPANY DOES

6   WELL, THEN THAT FIFTEEN THOUSAND TWO MULTIPLIED BY TWO HUNDRED

7   THIRTY THOUSAND, AND IF THE EMPLOYEE DOES WELL, THEN THAT

8   THIRTY THOUSAND WOULD BE MULTIPLIED.

9           THE COURT:  SO YOU GET TWO MULTIPLIERS:  A COMPANY

10  ONE AND INDIVIDUAL ONE?

11          THE WITNESS:  RIGHT, AND NEITHER OF THOSE

12  MULTIPLIERS WILL FALL BELOW ONE UNDER ANY CIRCUMSTANCE THAT I

13  HAVE EVER SEEN.

14          THE COURT:  SO YOU WOULD GET THE BASE PLUS FIFTEEN

15  PERCENT.  THEN PLUS FIFTEEN PERCENT FOR THE PERFORMANCE OF A

16  COMPANY OR FIFTEEN THOUSAND.  THEN FIFTEEN THOUSAND FOR

17  INDIVIDUAL EMPLOYEE MULTIPLIER -- ASSUMING YOUR BASE SALARY OF

18  A HUNDRED THOUSAND, SO YOU WILL GET A HUNDRED FORTY FIVE

19  THOUSAND DOLLARS; IS THAT RIGHT?

20          THE WITNESS:  YES.

21          THE COURT:  SO MULTIPLIERS OFF OF THE BONUS?

22          THE WITNESS:  RIGHT, BUT THAT BONUS IS -- SO THERE

23  IS -- I THINK THAT THE NAMING OF THE BONUS IS -- ARE SORT OF

24  STRANGE IN THIS CASE BECAUSE THERE IS FIFTEEN THOUSAND THAT IS

25  SORT OF GUARANTEED FOR THAT EMPLOYEE, AND THEN THERE IS, YOU

26  KNOW, THE ACTUAL BONUS THAT ANOTHER COMPANY MIGHT CONSIDER A

27  BONUS IS WHATEVER MULTIPLIER THAT GETS APPLIED.

28          THE COURT:  I SEE.  I MUST HAVE MISUNDERSTOOD.  I

1    THOUGHT THE MULTIPLIER WAS MULTIPLIED WITH THE BASE SALARY,

2    BUT IT WAS JUST MULTIPLE LIKE THE BONUS.

3              THE WITNESS:  RIGHT.

4              THE COURT:  I SEE.  OKAY.  ALL RIGHT.  THANK YOU.

5    IS THERE ANYTHING MORE YOU WOULD LIKE TO SAY?

6              THE WITNESS:  NO.  THAT IS ALL.  THANK YOU.

7              THE COURT:  IF SOMETHING COMES UP LATER, YOU JUST

8    LET ME KNOW.

9              THE WITNESS:  OKAY.  THANKS.

10             THE COURT:  I UNDERSTAND THAT WE ALSO HAVE -- WHO

11   WANTS TO GO NEXT?  MR. ZAVISLAK.  WOULD YOU LIKE TO GO NEXT?

12   AND IF YOU COULD CLARIFY, WOULD YOU LIKE MORE TIME TO OPT OUT

13   OR I DIDN'T KNOW -- SINCE THAT WAS A MAY 21ST DATED DOCUMENT,

14   I DON'T KNOW IF YOU WOULD STILL LIKE ADDITIONAL TIME.

15             THE WITNESS:  MARK ZAVISLAK, Z-A-V-I-S-L-A-K.

16             THE CLERK:  THANK YOU.

17             THE WITNESS:  SO TO CLARIFY ABOUT THE MORE TIME TO

18   OPT-OUT ISSUE, I THINK THERE WERE TWO REASONS WHY I REQUESTED

19   MORE TIME.  ONE WAS BECAUSE OF THE ACCESS ISSUES TO THE FEE

20   MOTION MATERIALS, BUT THE SECOND HAD TO DO WITH ADEQUATE

21   NOTICE OF THE PROPOSED SETTLEMENT AMOUNT, AND I MADE AN

22   OBJECTION THAT I SHARED WITH -- OR THAT DR. BEECH ALSO MADE

23   THE SAME OBJECTION TO WHICH WAS THAT WHEREAS THE SETTLEMENT

24   FORMULA WAS FULLY DISCLOSED IN A SENSE THAT YOU TAKE THE TOTAL

25   SETTLEMENT POT AND DIVIDE THAT BY THE TOTAL OF ALL BASE

26   SALARIES DURING THE RELEVANT CLASS PERIOD, THAT THAT WOULD BE

27   SORT OF THE RATIO AND MULTIPLIER THAT WE WOULD BE ABLE TO

28   DETERMINE SORT OF WHAT OUR INDIVIDUAL COMPENSATION WOULD BE AS

1    A RESULT OF THE SETTLEMENT.

2              THAT SECOND VALUE THE DENOMINATOR -- THE TOTAL OF

3    ALL BASE SALARIES -- WAS NOT DISCLOSED IN THE NOTICE AND WAS

4    ALSO NOT DISCLOSED TO ME SINCE THEN, SO WHEREAS I WOULD SAY

5    THE FEE MOTION ISSUE HAS SORT OF BEEN RESOLVED BECAUSE IT HAS

6    ALMOST BEEN TWO MONTHS, AND I DON'T FOLLOW UP WITH ADDITIONAL

7    -- LET'S SAY COMMENTS ON THE FEE MOTION THEMSELVES -- ALTHOUGH

8    I JOINED DR. BEECH'S SORT OF COMMENTS IN FULL LIKE HE DID A

9    VERY NICE ANALYSIS.

10             THE COURT:  DO YOU SUPPORT HIS NUMBER?  HE SAYS

11   FORTY MILLION.

12             THE WITNESS:  YES, I DO SUPPORT HIS NUMBER.

13             THE COURT:  OKAY.  AND DOES THAT INCLUDE DEVINE

14   LAWYERS OR THE OTHER LAWYERS?

15             THE WITNESS:  I THINK IT IS CORRECT TO VIEW THE

16   CLASS COUNSEL AS A WHOLE.  THAT THEIR JOB IS TO REPRESENT THE

17   CLASS, AND THAT ALTHOUGH THEY ACHIEVED IT THROUGH DIFFERENT

18   MEANS AND DIFFERENT LAWYERS AND DIFFERENT TIMES, I GUESS

19   DIFFERENT VIEWPOINTS, THAT WAS ULTIMATELY THEIR GOAL WAS TO

20   REPRESENT THE CLASS, AND SO IT MAKES SENSE TO VIEW IT THAT

21   WAY.

22             THE COURT:  SO LET ME ASK, SO YOU'RE FINE WITH THE

23   INDIVIDUAL TOTAL BASE SALARY PAY DURING CLASS PERIOD NOT BEING

24   PROVIDED.  YOU ARE JUST CONCERNED THAT THE TOTAL CLASS MEMBERS

25   TO THE BASE SALARY PAY DURING CLASS PERIOD WAS NOT PROVIDED TO

26   THE CLASS MEMBERS.

27             THE WITNESS:  CORRECT.  THE REASON FOR THAT IS THAT

28   I CAN PROBABLY COMPUTE WHAT I MADE.  I CAN LOOK AT MY RECORDS

1    AND FIGURE OUT WHAT MY EARNINGS WERE, BUT I DON'T KNOW WHAT

2    EVERYONE ELSE MADE, SO THEREFORE, I CANNOT ESTIMATE WHAT MY

3    SETTLEMENT AWARD IS GOING TO BE.

4            THE COURT:  YOU KNOW, I HAVE A QUESTION FOR THE

5    PARTIES ON THIS.  I AM WONDERING IF PERHAPS THE REASON THAT

6    NUMBERS ARE NOT GIVEN BECAUSE WE DON'T KNOW WHO IS IN THE

7    CLASS UNTIL YOU GET ALL THE OPT OUTS, AND SO IT'S A FLUID

8    NUMBER, SO WE SHOULD KNOW THAT NOW BECAUSE NOW WE KNOW THERE

9    ARE FIFTY SIX OPT OUTS.

10           MR. SAVERI:  MAY I, YOUR HONOR?

11           THE COURT:  YEAH.

12           MR. SAVERI:  YOU ARE CORRECT.  THERE ARE A COUPLE OF

13   REASONS.  ONE IS THE TOTAL AMOUNT OF THAT COMPENSATION IS AN

14   ISSUE AROUND WHICH THE DEFENDANTS HAVE SOME SENSITIVITY, AND

15   WE'VE BEEN VERY AWARE OF SENSITIVITIES THROUGHOUT THE CASE.

16           PUTTING THAT ASIDE, YOU ARE EXACTLY RIGHT, YOUR

17   HONOR, THAT JUST LIKE IN MANY ANTI-TRUST SETTLEMENTS, WE DON'T

18   REALLY KNOW HOW THE MATH IS GOING TO WORK OUT UNTIL WE HAVE

19   ALL THE INPUTS INTO THE EQUATIONS, AND AS YOU SAY, IT'S A

20   FLUID SITUATION.  WE DON'T KNOW UNTIL TODAY -- UNTIL THIS

21   HEARING -- THE TOTAL NUMBER OF CLASS MEMBERS WHO ARE GOING TO

22   OPT OUT.

23           WE ARE NOT GOING TO KNOW THE TOTAL NUMBER OF FUNDS

24   AVAILABLE FOR THE SETTLEMENT CLASS WHICH INCLUDES THE 415

25   MINUS THE COST AND EXPENSES.

26           THE COURT:  BUT THAT DOESN'T AFFECT THE BOTTOM

27   DENOMINATOR.  THE BOTTOM DENOMINATOR IS VERY RESTRICTIVE OF

28   ATTORNEY'S FEES, COSTS, SERVICE AWARDS -- WHATNOT.  THAT IS

1    JUST A STRAIGHT --

2           MR. SAVERI:  CORRECT, AND WE CALCULATE A RATIO BASE

3    ON THAT AND WE APPLY THAT TO WHATEVER CORPUS IS LEFT AFTER WE

4    DO THE MATH.

5           THE COURT:  LET ME ASK MR. ZAVISLAK.

6           MR. SAVERI:  EXCUSE ME, YOUR HONOR, I WOULD SAY THAT

7    WE CONFRONT THE SITUATION IN MANY ANTITRUST CASES, AND THE WAY

8    COURTS HAVE HANDLED IT IS WE DESCRIBE THE METHODOLOGY AS BEST

9    WE CAN.  THERE IS ALWAYS SOME UNCERTAINTY BECAUSE YOU DON'T

10   KNOW WHAT THAT TOTAL NUMBER IS UNTIL THE INPUTS ARE MADE, AND

11   THAT IS ORDINARILY SUFFICIENT AND IT IS -- COURTS HAVE

12   ROUTINELY FOUND THOSE SORTS OF DESCRIPTIONS OF THE WAY THE

13   SETTLEMENT DISTRIBUTION IS GOING TO WORK IN TERMS OF A

14   METHODOLOGY IS SUFFICIENT.

15          THE COURT:  OKAY.  SO LET ME ASK MR. ZAVISLAK, SO

16   YOU KNOW, UNTIL ALL THE OPT OUTS ARE DETERMINED, IT IS NOT

17   CLEAR HOW BIG THE CLASS IS AND WHO IS IN THE CLASS, BUT NOW WE

18   SHOULD HAVE THAT NUMBER.

19          IF YOU WERE GIVEN THAT NUMBER, WOULD YOU BE ABLE TO

20   MAKE A DECISION?  ARE YOU ASKING FOR ADDITIONAL TIME TO OPT

21   OUT OR ARE YOU WANTING TO REMAIN IN THE CLASS BUT JUST STATE

22   ALL OF YOUR CONCERNS ABOUT HOW THE NOTICE WAS GIVEN AND THE

23   LACK OF INFORMATION THAT WOULD HAVE BEEN HELPFUL TO YOU?

24          THE WITNESS:  YEAH.  I WANT TO CLARIFY ONE POINT IS

25   THAT UNLIKE MANY CLASS ACTIONS, THE CLASS MEMBERS DON'T HAVE

26   TO FILE CLAIMS IN ORDER TO RECEIVE PAYMENT IN THIS, SO INSTEAD

27   OF WHERE LIKE THE CLASS IS VERY FLUID WHEN YOU HAVE

28   CIRCUMSTANCES WHERE YOU'VE DONE THE RATIO OF PEOPLE SUBMITTING

1    CLAIMS HERE, THIS REALLY OPT OUTS, AND WE KNOW PROBABLY

2    HISTORICALLY THAT OPT OUTS ARE VERY, VERY TINY MINUSCULE

3    PORTION OF THE TOTAL AMOUNT TYPICALLY, SO THERE WAS NOTHING

4    PREVENTING THE NOTICE FROM SAYING THIS IS THE TOTAL OF ALL

5    BASE SALARIES.

6            OF COURSE WE HAVE TO SUBTRACT IT BY ANY OPT OUTS,

7    BUT THE CLASS MEMBERS THEMSELVES CAN JUDGE HOWEVER MUCH THEY

8    FEEL MIGHT OPT OUT, AND THEY CAN ARRIVE AT SOME ESTIMATE THAT

9    THEY CAN USE TO DETERMINE WHETHER THEY SHOULD OPT OUT AND

10   PROCEED ALONE TO TRY TO RECOVER PERHAPS MORE THAN THEY WOULD

11   BE GIVEN IN SETTLEMENT, SO FOR ME -- SO FOR ME PERSONALLY IF I

12   HAD THE NUMBER TODAY, I COULD GIVE A DECISION BY MONDAY IF I

13   WANTED TO BASICALLY OPT OUT OR NOT BECAUSE THAT IS THE

14   CRITICAL NUMBER I WANT TO KNOW.

15           IF I STAY IN, ROUGHLY WHAT AM I GOING TO GET, AND

16   THAT IS SOMETHING I THINK I NEED TO KNOW IN ORDER TO MAKE THAT

17   DECISION EFFECTIVELY, BUT SPEAKING AS SORT OF AN UNNAMED

18   REPRESENTATIVE OF THE CLASS, I THINK BECAUSE THIS ISSUE WAS

19   ALSO SHARED BY DR. BEECH, YOU PROBABLY IMAGINE THERE IS

20   HUNDREDS OR MAYBE THOUSANDS OF OTHER CLASS MEMBERS WHO WOULD

21   HAVE LIKED TO KNOW THIS INFORMATION BUT NEVER REALLY GOT

22   AROUND TO FILING A FORMAL OBJECTION, AND I KIND OF FEEL THAT

23   THEY SHOULD HAVE BEEN GIVEN A CHANCE TO KNOW KIND OF WHAT THE

24   PREDICTED SETTLEMENT AMOUNT IS OR ESTIMATED AMOUNT IS, AND BE

25   ABLE TO DECIDE IS THAT FAIR AND SHOULD I STAY IN, AS WELL AS

26   THE CLASS COUNSEL IF THE FEE QUESTION IS FAIR GIVEN WHAT THEY

27   ENDED UP GETTING ON BEHALF OF THE CLASS.

28           MR. SAVERI:  EXCUSE ME, YOUR HONOR, BUT THE PROBLEM

1    WITH THAT IS YOU HAVE KIND OF A CASCADING SERIES OF PEOPLE

2    OPTING OUT OF THE CLASS, AND AT SOME POINT YOU NEED TO BRING

3    THAT NUMBER TO CLOSE AND HAVE FINALITY.

4              I DON'T HAVE ANY PARTICULAR OBJECTION IF WE WAIT A

5    COUPLE OF DAYS TO FIGURE THIS OUT, BUT WE CERTAINLY SHOULDN'T

6    RE-OPEN THE PROCEEDING BECAUSE THEN THERE'S ANOTHER ROUND OF

7    OPT OUTS.  THEN THE MATH WOULD HAVE TO BE REDONE, AND IT PUTS

8    IN MOTION THE CYCLE.

9              THE COURT:  IF I GAVE AN EXTENSION, IT WOULD

10   ACTUALLY ONLY BE TO MR. ZAVISLAK BECAUSE HE'S THE ONLY ONE

11   REQUESTING THAT DEADLINE, IS THERE ANY PROBLEM DOING THAT --

12   MAKING A SINGLE OBJECTION VERSUS THE ENTIRE SIXTY FOUR

13   THOUSAND DOLLARS?

14             MS. DERMODY:  YOUR HONOR, JUST TO CONFIRM YOUR

15   JUDGEMENT ON THAT, I THINK THERE IS TWO SORTS OF AMELIORATING

16   FACTS.  ONE IS THAT WITHIN THE SETTLEMENT RECORD -- THAT IS

17   WITHIN THE PLAINTIFF'S MOTION FOR ATTORNEY'S FEES, I THINK

18   PAGE 1 AND PAGE 13, THE CLASS COUNSEL GIVE ESTIMATES JUST

19   ESTIMATE KIND OF GROSS PER CAPITA WHAT WOULD CLASS MEMBERS GET

20   ON AVERAGE WHICH GIVES CLASS MEMBERS SOME BALLPARK TO WHAT

21   MR. ZAVISLAK WAS TALKING ABOUT, BUT IF EVERYTHING THAT WE ARE

22   ASSUMING IN THE NOTICE HAPPENS, THIS IS THE AVERAGE NUMBER.

23     THE OTHER NUMBER IS IN THE CLASS RECORD IS THE EXPERT

24   REPORTS OF DR. LEMER WHICH TALK ABOUT WHAT THE LOSS IS ON

25   AVERAGE ACROSS THE CLASS IN TERMS OF, YOU KNOW, THE TOTAL

26   DAMAGES AND WHAT IS THE SORT OF TOTAL COMP AVERAGE LOSS, AND

27   THEN WE HAVE IN THE PAPERS TALKING ABOUT THE SINGLE DAMAGES

28   PERCENTAGE RECOVERY, AND THESE ARE SENSITIVE,

1    TECHNICALLY-INCLINED PEOPLE THAT WITHIN THE RECORD PEOPLE CAN

2    DEDUCE THAT THERE IS A PERCENTAGE OF THE LEMER TOTAL COMP LOSS

3    THAT HAD BEEN RECOVERABLE ON AVERAGE TO CLASS MEMBERS, AND WE

4    ARE TALKING ABOUT, YOU KNOW, LOW SINGLE DIGITS OF RECOVERY OF

5    COMP THAT WAS LOST.

6         PEOPLE CAN THEN LOOK AT THEIR OWN COMP AND SAY OKAY,

7    THAT IS, YOU KNOW, MY BALLPARK FOR THIS CASE.  YOUR HONOR IS A

8    HUNDRED PERCENT CORRECT THAT IF WE PUT INTO THE NOTICE THESE

9    NUMBERS -- NOT KNOWING IF WE MIGHT HAVE TWO THOUSAND OR FOUR

10   THOUSAND OR TEN THOUSAND OPT OUTS, WE MIGHT HAVE HAD A VERY

11   MISLEADING CLASSIFICATION NOTICE ESPECIALLY IF THAT CLASS SET

12   KICKED IN WITH FOUR PERCENT OF THE CLASS OPTING OUT, THEN WE

13   WOULD HAVE HAD LESS MONEY TO DISTRIBUTE AND WE WOULD BE IN A

14   WHOLE DIFFERENT BALL PARK.

15        ALL THOSE THINGS DIDN'T HAPPEN, BUT NEVERTHELESS I

16   THINK WHAT THE CLASS WAS TOLD WAS SUFFICIENT TO ADVISE THE

17   CLASS HERE ARE SOME BALLPARK FIGURES, AND IF THE CLASS WANTED

18   TO FOLLOW UP AS MR. ZAVISLAK HAS DONE, PEOPLE GET INDIVIDUAL

19   INFORMATION AND WE HAVE NO OBJECTION TO ALLOWING AN EXTENSION

20   FOR HIM ALONE TO HAVE THAT DENOMINATOR.

21        I THINK HE CAN FIGURE IT OUT FROM THE LEMER PAPERS

22   AND THE SETTLEMENT PAPERS WHAT THAT NUMBER LOOKS LIKE, BUT WE

23   CAN FIND OUT FROM THE CLAIMS ADMINISTRATOR OVER THE WEEKEND

24   AND GIVE IT TO HIM.

25        THE COURT:  WERE YOU ABLE TO GET THE ROUGH AVERAGE

26   NUMBER THAT THE PLAINTIFF'S COUNSEL HAS SORT OF PUT FORTH AS

27   WHAT THEY EXPECT THE AMOUNT TO BE?

28        THE WITNESS:  RIGHT.  THEY -- I SAW THIS IN THE

1    PAPERS WHICH I RECEIVED LATER THAT I THINK THEY ESTIMATE SORT

2    SOMEWHAT NORTH OF FIVE THOUSAND DOLLARS.  FOR INSTANCE, I WAS

3    AN EMPLOYEE FOR PRETTY MUCH --

4              THE COURT:  THE ENTIRE CLASS, PERIOD?

5              THE WITNESS:  -- FROM JULY 2005, AND THEN THROUGH

6    THE END OF THE CLASS PERIOD, SO IN OTHER WORDS, PEOPLE --

7    OTHER PEOPLE MIGHT BE LATER COMING ON AND I DON'T KNOW WHAT

8    THEY WERE DOING AND WHAT THEIR CIRCUMSTANCES ARE, SO IT IS

9    HARD FOR ME TO JUDGE.

10             THE COURT:  LET ME HEAR FROM MR. VAN NEST, SO IF WE

11   WERE TO -- I WOULD NOT BE RE-OPENING OPT OUTS FOR EVERYBODY.

12   IT WOULD JUST BE MR. ZAVISLAK WHO MADE A SPECIFIC REQUEST FOR

13   SPECIFIC INFORMATION AND REQUESTED ADDITIONAL TIME, AND I

14   COULD PUT A TIGHTER TIME FRAME.  I MEAN HOW QUICKLY CAN YOU

15   COME UP WITH HIS NUMBER?

16             MS. DERMODY:  I THINK WE COULD COME UP WITH

17   SOMETHING ROUGH PRETTY QUICKLY IF WHAT HE WANTS IS THE TOTAL

18   BASE COMPENSATION THAT SHOULD BE SOMETHING THAT GILLARTY, THE

19   CLAIMS ADMINISTRATOR, COULD RUN FAIRLY QUICKLY.  I WOULD JUST

20   ALERT YOUR HONOR -- MAYBE YOU'RE AWARE OF THIS, THAT THERE

21   WERE TWO OTHER CLASS MEMBERS.  HE MENTIONED DR. BEECH RAISES

22   ISSUE BUT ALSO MR. HSU, AND IF WE WERE TO PROVIDE THIS BENEFIT

23   TO MR. ZAVISLAK, I WOULD THINK WE SHOULD DO THAT FOR THE OTHER

24   TWO CLASS MEMBERS WHO RAISE THIS QUESTION, SO WE CAN RAISE THE

25   ANSWER TO THAT QUESTION FOR THE THREE PEOPLE WE KNOW HAD THE

26   QUESTION IF THAT IS ACCEPTABLE TO DEFENDANTS.

27             THE COURT:  WELL, I AGREE WITH YOU THAT DR. HSU

28   DEFINITELY SAID THE SAME ACTUALLY.  CORNFELDER, (PHONETIC,)

1    ALSO SAID SHE DIDN'T KNOW HOW MUCH MONEY SHE WAS GOING TO

2    RECEIVE.  I DON'T RECALL DR. BEECH ACTUALLY -- I MEAN HE DID

3    SAY INFORMATION WAS UNCLEAR AND NOT PROVIDED AND THE CLASS

4    DIDN'T KNOW, BUT I DON'T RECALL HIM ACTUALLY SAYING HE NEEDED

5    THAT NUMBER TO MAKE A DECISION.

6            MS. DERMODY:  I MAY BE READING IT DIFFERENTLY, YOUR

7    HONOR.  IT IS PAGE 6 OF SIX.

8            THE COURT:  OF HIS NUMBER ONE OR TWO?

9            MS. DERMODY:  IT IS DOCUMENT 1089-12, AND HE SAYS

10   THAT CLASS COUNSEL HAS WITHHELD ON A CRUCIAL PIECE OF

11   INFORMATION FROM THE CLASS MEMBERS MAINLY ESTIMATE OF THE

12   DENOMINATOR IN THE PROPOSED ALLOCATION FORMULA WHICH I THINK

13   IS MR. ZAVISLAK'S REQUEST.

14           THE COURT:  ALL RIGHT.  LET ME HEAR FROM MR. VAN

15   NEST.

16           MR. VAN NEST:  YOUR HONOR, I REALLY THINK THAT THIS

17   IS A BAD IDEA.  I'M NOT AWARE OF ANY PRECEDENT FOR IT.  THE

18   QUESTION IS DID WE FAIRLY DISCLOSE IN THE NOTICE WHAT WAS

19   GOING TO HAPPEN, AND WE DID.  WE DISCLOSED -- MADE THE SAME

20   DISCLOSURE HERE THAT WE MADE IN THE EARLIER SETTLEMENT.

21           MR. ZAVISLAK WAS A CLASS MEMBER IN THE EARLIER

22   SETTLEMENT.  THIS IS VERY SIMPLE MATH FORMULA THAT CAN TELL

23   HIM THIS SETTLEMENT IS SIGNIFICANTLY GREATER THAN THE EARLIER

24   SETTLEMENT.  ON A NET BASIS THAT IS PARTICULARLY TRUE, AND SO

25   I DON'T SEE ANY BASIS FOR CREATING AN EXCEPTION FOR ANY CLASS

26   MEMBER.

27           HE HAD FULL OPPORTUNITY TO EXPLORE THIS WITH CLASS

28   COUNSEL -- APPARENTLY TOOK ADVANTAGE OF THAT.  HE WAS A MEMBER

1    OF THE PREVIOUS CLASS.  WE MADE A VERY FULL AND FAIR

2    DISCLOSURE OF THE ALLOCATION FORMULA, AND I THINK IT IS -- I

3    OBJECT TO IT ON BEHALF OF ALL THE DEFENDANTS OPENING --

4    RE-OPENING THE OPT-OUT DEADLINE FOR ANYONE UNLESS SOMEONE CAN

5    SHOW US THAT SOMEHOW THE DISCLOSURE WE MADE WAS UNFAIR OR

6    INSUFFICIENT.

7            AS COUNSEL POINTED OUT, THIS IS SOMEWHAT COMPLICATED

8    TO GET TO A CORRECT NUMBER, AND I AM SURE IF WE PUT SOME

9    ESTIMATE IN THERE, WE WOULD HAVE PEOPLE COMPLAINING IN THAT

10   THEY ARE GOING TO FALL ABOVE OR BELOW THE ESTIMATE.

11           WE FAIRLY DISCLOSED WHAT THE ALLOCATION FORMULA IS.

12           IT IS GOING TO BE HANDLED IN THE SAME WAY AS THE

13   PREVIOUS ONE WAS, BUT PERHAPS THIS ONE IS PERHAPS MORE FAIR

14   BECAUSE YOU DON'T HAVE TO SUBMIT A CLAIM.  YOU ARE GOING TO BE

15   PAID IF YOU ARE A CLASS MEMBER.

16           I THINK IT IS A BAD PRECEDENT.  I DON'T THINK THERE

17   IS A BASIS FOR IT.  MR. ZAVISLAK'S DOESN'T SHOW THAT THE

18   DISCLOSURE AND THE NOTICE WAS UNFAIR OR INSUFFICIENT.  I'M

19   SURE THERE ARE MANY THINGS THAT CLASS MEMBERS WOULD LIKE TO

20   KNOW ABOUT, BUT AS LONG AS THE NOTICE IS FULL AND COMPLETE AND

21   FAIR -- WHICH IT WAS, AND AS LONG AS THE ALLOCATION NOTICE IS

22   FAIR -- WHICH IT IS, I THINK THE OPT-OUT DEADLINE IS PAST, AND

23   NOT ONLY MR. ZAVISLAK'S BUT THE REST OF THE CLASS MEMBERS HAD

24   FULL OPPORTUNITY TO MAKE THAT CHOICE AS FIFTY SIX OTHER PEOPLE

25   HAVE DONE AND OPTED OUT WITHIN THE DEADLINE, SO WE OBJECT TO

26   ANY EXTENSION FOR EITHER MR. ZAVISLAK OR ANY OTHER CLASS

27   MEMBER.

28           THE COURT:  COUNSEL, YOU ALL HAVE MORE EXPERIENCE

1    WITH THIS THAN I DO.  HAVE YOU EVER SEEN ANYONE GIVE AN

2    EXTENSION OF AN OPT-OUT DEADLINE FOR A PARTICULAR OBJECTOR OR

3    WOULD THIS BE IT?

4            MR. SAVERI:  YOUR HONOR, I HAVEN'T HAD ANY

5    EXPERIENCE ON ANY OF MY CASES.

6            THE COURT:  ARE YOU AWARE OF ANY?

7            MR. SAVERI:  I AM AWARE OF THEM.

8            MS. DERMODY:  IT HAS HAPPENED IN SEVERAL CASES OF

9    MINE WHERE THE COURT HAS ACCEPTED AN OPT-OUT DATE FOR ONE OR

10   ANOTHER.  THIS PARTICULAR REASON IS NOT FOR JURISDICTION

11   CAUSATION, BUT I THINK THE COURT HAS DISCRETION TO RESPOND TO

12   ISSUES TO PROTECT THE APPELLATE RECORD TO DO WHAT THE COURT

13   THINKS IS APPROPRIATE TO THE CLASS AT THE CLASS HEARING.  IT

14   IS YOUR HONOR'S CALL.

15           MR. SAVERI:  I AGREE.

16           THE COURT:  SORRY TO INTERRUPT YOU.  IN YOUR

17   EXPERIENCE, WERE THOSE EXTENSIONS JUST FOR INDIVIDUAL

18   OBJECTORS OR WERE THEY BROADER EXTENSIONS?  IS THERE ANY

19   PROBLEM FOR DOING IT FOR A SPECIFIC INDIVIDUAL?  DOES THAT

20   CREATE MORE TERMS OF PREFERENTIAL TREATMENT TO A CLASS MEMBER

21   OR --

22           MS. DERMODY:  I CAN'T RECALL, YOUR HONOR.  I CAN'T

23   RECALL SPECIFICALLY WHAT THE DECISION WAS OF THE COURT.  I

24   KNOW INDIVIDUALS WERE ONLY AFFECTED IN EACH OF THOSE CASES AND

25   I BELIEVE THAT THE REASON IT HAPPENED WAS THAT INDIVIDUALS HAD

26   INDIVIDUAL CONCERNS FOR ONE REASON OR ANOTHER, AND THE COURT

27   ALLOWED THEIR INDIVIDUAL CIRCUMSTANCES TO BE USED TO EXTEND

28   THE OPT-OUT DEADLINE WITH THOSE INDIVIDUALS.

1          I MEAN I DON'T THINK THERE WAS ANY DUE PROCESS ISSUE

2     WITH THE COURT DOING THAT IF INDIVIDUALS RAISED QUESTIONS, AND

3     THE COURT ALLOWS THEM ANSWERS BEFORE ALLOWING THEM TO OPT OUT.

4          THE COURT:  ALL RIGHT.  SO YOU THINK THAT IF I

5     ALLOWED IT, WHICH I'M NOT -- WELL, LET ME NOT SAY ANYTHING

6     UNTIL I HEAR FROM THE LAST OBJECTOR.  I THINK THERE IS ONE

7     MORE PERSON, ALL RIGHT.  MR. ZAVISLAK, IS THERE ANYTHING MORE

8     THAT YOU WOULD LIKE TO STATE?

9          THE WITNESS:  WITH REGARDS TO THAT ISSUE, NO, I DO

10    WANT TO SAY THE ONE OTHER -- I WOULD SAY NOTICE ISSUE THAT

11    COULD HAVE CAUSED TROUBLE WAS THE LACK OF POSTING OF THE

12    FEE -- OF THE FEE MOTION UNTIL I THINK BOTH DR. BEECH AND I,

13    WHEN WE FILED OUR OBJECTIONS ON MAY 21ST, COUNSEL POSTED THEN

14    TO THE WEB SITE THE FOLLOWING DAY.

15         THE REASON WHY I READ THAT OBJECTION IS OTHER THAN THE

16    RULE 23H ISSUE WHICH IS THAT CLASS COUNSEL WAS RESPONSIBLE FOR

17    PROVIDING REASONABLE NOTICE TO CLASS OF THEIR FEE MOTION, IS

18    THAT THE NOTICE ITSELF THAT WAS SENT OUT DID BASICALLY PROMISE

19    TO KEEP -- PROVIDE THE CASE DOCUMENTS ON WEBSITE.

20         I'M REFERRING TO PAGE 11 OF THE NOTICE WHERE IT SAYS

21    THAT MORE INFORMATION ON THE CLASS ACTION LAWSUIT INCLUDE

22    COPIES OF THE ORDER, THE COMPLAINT, DEFENSE ANSWERS AND OTHER

23    CASE DOCUMENTS TO BE VIEWED ON THE WEBSITE, AND THEN ON PAGE 7

24    CLASS MEMBERS ARE TOLD THAT UPDATES REGARDING THE SETTLEMENT

25    WILL BE POSTED ON THE SETTLEMENT WEBSITE, SO IT IS KIND OF I

26    THINK CLASS MEMBERS HAD A FAIR READING THAT THEY WOULD BE ABLE

27    TO RECEIVE ALL RELEVANT MATERIALS TO MAKING AN OBJECTION ON

28    THE WEB SITE, AND THAT THOSE MATERIALS WERE NOT PROVIDED IN

1    TIME FOR THEM TO PROVIDE THEIR OBJECTIONS.

2              THE COURT:  ALL RIGHT.  WELL, THANK YOU FOR YOUR

3    COMMENTS OR DID YOU HAVE ANOTHER ONE?

4              THE WITNESS:  I DO HAVE -- THERE ARE -- I THINK I

5    HAVE TWO OTHER CATEGORIES WHICH IS THE INCENTIVE AWARDS.

6              THE COURT:  GO AHEAD.

7              THE WITNESS:  I WAS SURPRISED AT THE SIZE OF THE

8    INCENTIVE AWARDS.  THEY WERE -- THE CLASS, THAT ALL THEY

9    FORMALLY REQUESTED WAS A HUNDRED SIXTY THOUSAND DOLLARS PER

10   PERSON FROM THE FUND, AND LIKE IN SUPPORT OF THAT, THEY

11   DECIDED TO, I THINK, LIMIT THE DB RENDERED IN COMPARING SAYING

12   THAT WELL, LIKE A DB-RENDERED MULTIPLIER WAS FROM -- I THINK

13   SOME FOUR HUNDRED, AND A FOUR MULTIPLIER IS FOUR TIMES THE

14   CLASS AVERAGE WAS FIVE THOUSAND DOLLARS PER PERSON, AND THE

15   CLASS REPRESENTATIVES REQUESTING ONE HUNDRED SIXTY THOUSAND

16   DOLLARS AS APPROXIMATELY A THIRTY-YEAR RATIO, AND AS

17   MR. DEVINE SUGGESTED THAT THAT WAS SMALLER AND POSSIBLY

18   UNREASONABLE, BUT I WOULD LIKE TO POINT THE COURT TO STAPON V.

19   BOEING WHICH WAS CITED IN RE:  MDV SILICON TRUST CORPORATION,

20   WHERE JUST LIKE STAPON, I THINK STAPON HAD A TOTAL DAMAGE OF

21   NINETY THOUSAND DOLLARS OF INCENTIVE AWARD WHERE HERE IT IS A

22   HUNDRED THOUSAND.  STAPON DISAPPROVED THE RIGHT TO INCENTIVE

23   AWARD AS TOO HIGH.

24        THE PLAINTIFFS IN STAPON REQUESTED THIRTY THOUSAND A

25   PERSON.  HERE, THEY'RE REQUESTING A HUNDRED SIXTY FOUR DOLLARS

26   -- WELL ABOVE, AND LASTLY, THE MULTIPLIERS ACTUALLY MATCH.

27   BECAUSE IN STAPON I THINK THE AVERAGE RECOVERY WAS ONE

28   THOUSAND DOLLARS, WHEREAS THE CLASS PLAINTIFFS REQUESTED THREE

1   THOUSAND DOLLARS FOR THE "X" CLASS MULTIPLIER, AND THEN IN THE

2   STAPON COURT REJECTED BY SAYING THAT WAS NOT A FAIR THING TO

3   DO FOR THE REST OF THE CLASS, SO I JUST --

4   　　　　　THE COURT:  CAN I ASK YOU WHAT DO YOU THINK IS AN

5   APPROPRIATE INCENTIVE AWARD FOR THE DEVINE CLAIMS?

6   　　　　　THE WITNESS:  I THINK IT IS CLEAR THAT MR. DEVINE IS

7   OWED A LARGER AWARD THAN THE REST OF THE CLASS BASED UPON HIS

8   WILLINGNESS TO REACH OUT AND TO TRY TO NEGOTIATE A MORE FAIR

9   SETTLEMENT I THINK.

10  　　　　　THE COURT:  HOW MUCH DO YOU THINK HE SHOULD GET?

11  MORE THAN THE OTHERS?

12  　　　　　THE WITNESS:  YOU KNOW, I THINK A -- IT IS HARD TO

13  SAY -- TWICE AS MUCH OR SOMETHING LIKE THAT.  KIND OF 2X

14  MULTIPLIER BECAUSE HE SET HIMSELF OUT FROM THE REST AND TOOK

15  INDIVIDUAL ACTION, AND THE CLASS TREMENDOUSLY BENEFITED FROM

16  THAT.

17  　　　　　THE COURT:  OKAY.  WELL, AND I AM NOT REQUIRING YOU

18  TO, BUT DO YOU HAVE A VIEW ON WHAT YOU THINK IS APPROPRIATE AT

19  WHAT THE AMOUNT SHOULD BE?  WHAT DID YOU THINK ABOUT THE

20  ORIGINAL REQUEST WHICH WAS EIGHTY THOUSAND?  DID YOU THINK

21  THAT WAS TOO HIGH?

22  　　　　　THE WITNESS:  I THINK EIGHTY THOUSAND WAS ALSO HIGH

23  BECAUSE IT STARTS TO LOOK MORE LIKE THEY DON'T HAVE A -- THAT

24  IT DWARFS THEIR ACTUAL AWARD, AND SO IT STARTS TO LOOK MORE

25  LIKE THEY DON'T HAVE AN INCENTIVE, FOR INSTANCE, TO CHALLENGE

26  AN ATTORNEY FEE AWARD OR TO DO IT LIKE TO SORT OF CHALLENGE AS

27  HIGH OF A SETTLEMENT BECAUSE OF WHAT THEY ARE GETTING IS WELL

28  IN EXCESS -- WHAT THEY ARE GETTING AS AN AWARD IS WELL IN

1  EXCESS OF WHAT THEY ARE GETTING AS A RESULT OF BEING A CLASS

2  MEMBER.

3      I THINK GETTING HERE -- ALTHOUGH LIKE I THINK THIRTY

4  THOUSAND DOLLARS WAS APPROVED BY THEM, I THINK THIRTY THOUSAND

5  DOLLARS MAY BE A FAIR AWARD IN THIS CASE AS SORT OF AN AWARD

6  ON THE TIME THAT THEY SPENT ON PAPERWORK AND PREPARING FOR THE

7  CASE AND DOING WHAT ACTIONS THEY TOOK.

8          THE COURT:  WHAT DO YOU THINK ABOUT THEIR ARGUMENT

9  THAT NOW THAT THEY ARE OUT HERE AS SORT OF THE TROUBLE MAKERS,

10  THAT THIS AFFECTS THEIR SORT OF LONG-TERM OPPORTUNITIES?

11          THE WITNESS:  I MEAN I'M IN THE SAME BOAT, RIGHT?

12  I'M UP HERE NOW OBJECTING TO THIS SORT OF LARGE SETTLEMENT,

13  AND I THINK UNLIKE THEM, I HAVE THE DUBIOUS HONOR OF HAVING MY

14  LINKEDIN PROFILE BEING MADE A PUBLIC RECORD WHERE IT'S

15  CLASSIFIED IN ONE OF THEIR EXHIBITS, SO I THINK TO ME

16  PERSONALLY, I DON'T THINK THAT THEY ARE IN ANY SPECIAL BOAT IN

17  ANY SPECIAL CATEGORY THAT'S DIFFERENT THAN, FOR INSTANCE, ME,

18  WHO HAS ALSO SPOKEN OUT, AND LIKE PERHAPS MYSELF MADE A TARGET

19  AS WELL, SO I THINK THAT'S THE RESONANCE OF THE ISSUE.

20      I DON'T THINK, FOR INSTANCE, I DON'T THINK IT WOULD BE

21  PRUDENT FOR COMPANIES TO REFUSE TO HIRE BECAUSE THEY

22  PARTICIPATED IN AN ANTITRUST ACTION.  THAT IS NOT IN

23  ACCORDANCE WITH PROPER EMPLOYMENT, SO TO SUM UP A CONCERN, BUT

24  I DON'T THINK IT IS A CONCERN THAT MERITS SUCH A LARGE AWARD

25  IN COMPARISON TO THE AVERAGE RECOVERY OF THE REST OF THE

26  CLASS.

27          THE COURT:  OKAY.  DO YOU HAVE ANY MORE STATEMENTS?

28          THE WITNESS:  BASICALLY LIKE I JOINED DR. BEECH ON

1   HIS ANALYSIS OF THE CLASS COUNSEL FEE AWARD.  AS YOUR HONOR

2   ASKED, I THOUGHT HIS ANALYSIS WHERE HE PROPOSED FORTY MILLION

3   WAS MORE APPROPRIATE, AND I DO WANT TO -- I THINK THE ONE

4   TAKE-AWAY THAT YOUR HONOR HAS THE DISCRETION TO CHOOSE BETWEEN

5   THE LOAN STAR FUND APPROACH AND A PERCENTAGE OF THE COMMON

6   FUND APPROACH, AND I REALLY ENCOURAGE YOUR HONOR TO CHOOSE THE

7   LOAN STAR FUND APPROACH BECAUSE A FUND THIS LARGE, IT LOOKS

8   LIKE MUCH MORE LIKE CASES WHERE THE COURTS AWARD LOAN STAR AS

9   A BETTER FIT, SO I WOULD LIKE YOUR HONOR TO LOOK AT FACTORS

10  AND LOOK AT PERFORMANCE, THE SIZE OF THE SETTLEMENT FUND, FIND

11  WHETHER THE RISK THEY TOOK AND WHETHER OR NOT ACHIEVED

12  EXCEPTIONAL RESULTS.

13       I THINK DR. BEECH'S STRONGEST -- I WOULD SAY, SORT OF

14  ARGUMENT WAS THAT -- I THINK HE SAID THAT CLASS COUNSEL WANTS

15  TO RECOVER SIX HUNDRED PERCENT OF THEIR USUAL FEES, BUT FOR

16  THE CLASS THEY ONLY RECOVERED ELEVEN PERCENT OF THEIR DAMAGES,

17  SO IT WAS KIND OF A MISMATCH BETWEEN WHAT CLASS COUNSEL THINKS

18  ABOUT THEIR PERFORMANCE VERSUS HOW -- WHAT RECOVERY THEY MADE

19  FOR THE CLASS, AND SO I URGE THE COURT TO CONSIDER ALL OF

20  THOSE FACTORS, AND TO TAKE THE LOAN STAR MULTIPLIER APPROACH

21  TO JUDGE HOW MUCH CLASS COUNSEL SHOULD BE COMPENSATED.

22            THE COURT:  THANK YOU.

23            MS. DERMODY:  YOUR HONOR, CAN YOU HEAR FROM CLASS

24  COUNSEL IN RESPONSE TO EITHER THE INCENTIVE AWARD POINT OR THE

25  COMMON FUND PERCENTAGE VERSUS THE LOAN STAR METHOD?

26            THE COURT:  I DON'T NEED TO HEAR ON THE SECOND

27  ISSUE.  ON THE FIRST ISSUE MY UNDERSTANDING -- YOU KNOW, ONE

28  OF THE COMMENTS THAT WAS MADE IN THE OBJECTIONS WAS THAT FOR

1    THE OTHER PLAYERS OTHER THAN MR. DEVINE, THE REQUEST WENT OUT

2    FROM 80 TO 160.  MY UNDERSTANDING FROM THE FOOTNOTE IN YOUR

3    BRIEF IS THAT YOU BELIEVE THAT THEY HAVE DONE THE SAME AS

4    MR. DEVINE, AND THAT HE SHOULD NOT BE TREATED MORE FAIRLY AND

5    THAT ALL OF THE CLAIMANTS SHOULD BE TREATED THE SAME.  I THINK

6    THAT IS THE ARGUMENT.

7              MS. DERMODY:  YEAH.  AS A FACTUAL MATTER, YOUR

8    HONOR, ALL OF THE PLAINTIFFS SIGNED ON TO THE SETTLEMENT

9    INCLUDING MR. DEVINE.  THE SETTLEMENT AGREEMENT THAT WAS

10   SIGNED BY ALL THE PARTIES SUPPORTING THE SETTLEMENT WHICH IT

11   HAD A PROVISION OF THE EIGHTY THOUSAND DOLLAR INCENTIVE AWARD.

12             SUBSEQUENT TO THAT AGREEMENT, MR. DEVINE RAISED HIS

13   QUESTION ABOUT HAVING A LARGER AWARD, AND WHILE WE TAKE NO

14   POSITION OPPOSING WHAT HE IS TRYING TO DO, WE VALUE HIS

15   CONTRIBUTION TO THE CASE IN GENERAL, AND HERE SPECIFICALLY WE

16   DO THINK THAT IT IS A TERRIBLE PRECEDENT TO INCENTIVIZE ONLY A

17   NAMED PLAINTIFF WHO OBJECTS AT THE EXPENSE OF LOOKING AT THE

18   STAPON FACTORS WHICH REALLY TALK ABOUT THE SERVICE TO THE

19   CLASS, THE COMMITMENT TO THE CASE, THE RISKS THAT WERE TAKEN,

20   AND THE FACT THAT ONE PLAINTIFF MIGHT DISAGREE WITH A

21   SETTLEMENT DOESN'T MEAN THAT PLAINTIFF IS PROVIDING MORE

22   VALUABLE SERVICE.

23             IT MAY TURN OUT THAT THE COURT AGREES THAT

24   PLAINTIFF -- IT MAY TURN OUT THAT THE COURT THINKS THAT

25   PLAINTIFF IS ABSOLUTELY UNCONSTRUCTIVE, BUT IN THIS CASE ALL

26   THE PLAINTIFFS INDEPENDENTLY LOOKED AT THE FACTS ON THE

27   GROUNDS AND THEY CAME TO DIFFERENT CONCLUSIONS ABOUT THE

28   ORIGINAL SETTLEMENT THAT WE AGREED TO.

1          THE COURT:  SORRY TO INTERRUPT YOU, BUT WOULD YOU

2     AGREE THAT MR. DEVINE DID PUT IN MORE TIME THAN THE OTHERS AND

3     DID EXPOSE HIMSELF TO MORE RISK THAN THE OTHERS?

4          MS. DERMODY:  WELL, IT DEPENDS HOW YOU LOOK AT IT.

5     AGAIN, I'M NOT GOING TO DO ANYTHING TO DISPARGE MR. DEVINE.  I

6     THINK HE SHOULD GET WHAT HE REQUESTED.

7          I WOULD SAY WITH RESPECT TO CLIENTS THAT WE STILL

8     REPRESENT, THAT THEY TOOK THE RISK THAT BY SUPPORTING A

9     SETTLEMENT THAT WAS POPULAR TO DISAGREE WITH -- IT WAS POPULAR

10    TO DUMP ON, AND THEY STOOD UP TO IT AND SAID WE HAVE LOOKED AT

11    THE EVIDENCE.  WE LOOKED AT THE RISK.  WE LOOKED AT THE TAPES.

12     WE KNOW WHAT IS COMING, AND WE THINK IT IS BETTER TO

13    SETTLE HERE, AND THEY STOOD OUT, AND I MEAN EVEN WITH ALL THAT

14    PRESSURE HAPPENING FROM PEOPLE THAT THOUGHT IT WAS EASY.  JUST

15    GO AND WIN THIS CASE -- WHICH WE WOULD HIGHLY DISAGREE WITH.

16    THAT WAS THEIR INDEPENDENT JUDGMENT, SO I THINK THAT THERE ARE

17    A SERIES OF VERY INTELLIGENT, VERY COMMITTED PEOPLE WHO PUT

18    THEIR CAREERS ON THE LINE, AND ON THIS ONE PARTICULAR ISSUE

19    CAME TO A DIFFERENT JUDGMENT ABOUT IT, BUT NOT -- I DON'T

20    THINK THEY SHOULD BE REWARDED DIFFERENTLY BASED ON IN

21    HINDSIGHT ONE OF THEIR JUDGMENTS GOT VALIDATED.

22          IF WE HAD TAKEN THIS CASE TO TRIAL, THERE HAD NOT

23    BEEN A SUBSEQUENT SETTLEMENT -- TOOK IT TO TRIAL, AND DESPITE

24    THE BEST EFFORTS OF MR. DEVINE, WOULD NOT GET A JURY VERDICT,

25    WOULD IN RETROSPECT LOOK BACK AT MR. DEVINE AND SAY WOW, THAT

26    IS TERRIBLE WHAT HE DID IN THE CASE.

27          I DON'T THINK THAT IS THE ROLE HE PLAYED.  I THINK

28    HE RAISED A REASONABLE QUESTION FOR THE COURT.  I THINK THE

1    COURT ALREADY HAD ITS OWN QUESTIONS INDEPENDENT OF ANY CLASS

2    REACTION, AND I THINK THAT ALL THE PLAINTIFFS SHOULD BE

3    RECOGNIZED FOR THE VALUE THEY PROVIDED, AND AGAIN, I'M NOT

4    DISAGREEING WITH MR. DEVINE'S DESIRE TO GET MORE MONEY.

5              I HOPE HE DOES, BUT IF MR. DEVINE IS TREATED BETTER

6    THAN THE ORIGINAL REQUEST, I THINK THAT SHOULD BE EXTENDED TO

7    ALL THE PARTIES.

8              THE COURT:  OKAY.  LET ME ASK:  I HAD AN ISSUE COME

9    UP.  BRANDON MARSHALL WHO IS A DECEASED PLAINTIFF IS SUING THE

10   COUNTY OF SANTA CLARA, THE SHERIFF'S DEPARTMENT, WHAT NOT, AND

11   I HAVE THAT CASE, AND AN ISSUE CAME UP WHERE MR. MARSHALL'S

12   ESTATE WAS NOT COMPLYING WITH PROTECTIVE ORDERS IN THIS CASE.

13   I THINK THE LAWYERS IN THAT CASE WERE MCMAHON, FAULKNER &

14   COLE, AND MR. DEAN HARVEY -- WE'RE JUST TOLD -- WE DON'T

15   KNOW -- HAS THAT BEEN INVOLVED?

16             I WAS VERY UNHAPPY WHEN I HEARD THAT BECAUSE WHEN WE

17   COME TO FINAL APPROVAL, EVERYONE GOES ON AND ON ABOUT HOW HE

18   HAS DONE SO MUCH WORK IN THIS CASE.  WHY THEY ARE ENTITLED TO

19   MONEY.  HERE I HAVE A MAN GOING OUT FILING HIS OWN LAWSUIT AND

20   DOESN'T DELIVER WITH A PROTECTIVE ORDER IN THE CASE KNOWING

21   HE'S GOING TO SHOW UP A MONTH LATER AND ASK FOR A HUNDRED

22   SIXTY THOUSAND DOLLARS.

23             I WAS REALLY UNHAPPY.  DOES THE PROTECTIVE ORDER

24   OBLIGATIONS NEED TO EXTEND TO OTHER CASES AS PROVIDED FOR IN

25   THE PROTECTIVE ORDER AND IS NOT JUST LIMITED -- LIKE WE ONLY

26   LOOK AT HIS SERVICE IN THIS PARTICULAR CASE, AND WE WILL, YOU

27   KNOW, I WAS REALLY NOT HAPPY AS YOU CAN IMAGINE WHEN I HEARD

28   MR. HARVEY WAS TOO BUSY TO FIND OUT WHAT THE PROTECTIVE ORDER

1    OBLIGATIONS WERE, AND THE DEFENDANT IN THAT CASE WAS JUST TOLD

2    HEY, YOU GO FIGURE OUT WHAT YOU ARE ENTITLED TO, SO HAS THAT

3    BEEN RESOLVED NOW OR NOT?

4            MS. DERMODY:  YOUR HONOR, WE CAN'T BELIEVE HOW HAPPY

5    WE ARE THAT YOU ASKED THE QUESTION BECAUSE WE WOULD LIKE

6    NOTHING MORE THAN TO SHARE THE HISTORY SO YOUR HONOR IS

7    ASSURED OF WHAT HAPPENED.  I WOULD LIKE MR. HARVEY TO TELL THE

8    COURT THE HISTORY OF THE PROCEEDINGS WITH THE LAWYERS.

9            THE COURT:  I WANT TO KNOW WHAT HAPPENED AFTER MY

10   CASE MANAGEMENT CONFERENCE.  HAD YOU SUBMITTED -- NOTICE WAS

11   SUPPOSED TO BE GIVEN TO THE COMPANIES WHO DESIGNATED ANY OF

12   THE INFORMATION IN BRANDON MARSHALL'S DEPOSITION THAT THERE

13   MIGHT BE CONFIDENTIAL INFORMATION IN THAT DOCUMENT, AND THEY

14   NEED TO FILE A MOTION TO PROTECT THEIR INFORMATION.  HAS THAT

15   BEEN DONE?

16           MR. HARVEY:  YES, IT HAS.

17           THE COURT:  DID THEY FILE A MOTION?

18           MR. HARVEY:  THEY DID NOT.  THERE'S A DOCUMENT FILED

19   IN THE BASS, (PHONETIC,) CASE AT DOCKET NUMBER EIGHTY IN WHICH

20   BOTH THE PLAINTIFFS AND DEFENSE IN THAT CASE WITHDREW THE

21   DISCOVERY DISPUTE AND THEY RECITED EXACTLY WHAT HAPPENED

22   FOLLOWING THE CMC.

23           THE COURT:  OKAY.  WELL, I PRETTY MUCH LET THEM KNOW

24   THESE WERE PRETTY FRIVOLOUS DISPUTES AND THEY NEED TO RESOLVE

25   THEM BECAUSE THEY FILED FOUR OR FIVE MOTIONS WITH JUDGE LLOYD,

26   BUT GOING FORWARD, I REALLY WILL BE UPSET IF I FIND OUT THAT

27   ANY OF THE PLAINTIFFS IN HIS CASE ARE NOT COMPLYING WITH THE

28   PROTECTIVE ORDER WHICH REQUIRES THAT ON AN ONGOING BASIS OF

1   ANY OTHER LAW FIRM REQUESTS INFORMATION THAT YOU ALL HAD AN

2   OBLIGATION TO INFORM THE OTHER PARTIES, LET THEM KNOW THAT

3   THEY MAY NEED TO FILE SOME PROTECTIVE ORDER IF THEY WANT TO

4   KEEP THAT INFORMATION SEALED.

5           MR. HARVEY:  YOUR HONOR, MAY I PLEASE CORRECT THE

6   RECORD ON THAT ISSUE?

7           THE COURT:  NO.  THAT IS OKAY.  THE ORDER -- THE

8   MOTION WAS -- ANYWAY -- THAT IS FINE.  I WANT TO MAKE SURE

9   THAT THE PROTECTIVE ORDER OBLIGATIONS ARE GOING TO BE COMPLIED

10  WITH GOING FORWARD.  DO I HAVE THAT ASSURANCE?

11          MR. HARVEY:  YOU DO, YOUR HONOR, AND I READ THE

12  TRANSCRIPT FROM THAT HEARING, AND I BELIEVE THE COURT WAS LEFT

13  WITH A MISIMPRESSION OF FACTS AND HISTORY OF THAT, AND I WOULD

14  LIKE THE OPPORTUNITY TO CORRECT THAT.  OF COURSE IF YOU DON'T

15  WANT ME TO, I WON'T.

16          THE COURT:  LET ME ASK YOU AT THE TIME OF THAT

17  HEARING, HAD YOU NOTIFIED THE PARTIES THAT MR. BRANDON

18  MARSHALL'S DEPOSITION HAD BEEN REQUESTED BY THE DEFENDANTS IN

19  THAT CASE?  HAVE YOU NOTIFIED THESE PARTIES AT THAT TIME?  YES

20  OR NO?

21          MR. HARVEY:  I HAD NOT BECAUSE THE DEFENDANTS HAD

22  NEVER REQUESTED THAT AND I WASN'T AWARE.

23          THE COURT:  SO CHRISTINE PEEK SAID SHE CALLED YOU --

24  THE ATTORNEY WITH MCMANIS FAULKNER, SAID SHE CALLED AND SPOKE

25  WITH MR. HARVEY.

26          MR. HARVEY:  OUR INITIAL CONVERSATION WAS IN THE

27  SUMMER OF 2014, SO SHE CALLED ME IN THE SUMMER OF 2014 TO HAVE

28  A CONVERSATION ABOUT THE DISCOVERY THAT OCCURRED IN THIS CASE

1    CONCERNING BRANDON MARSHALL, AND SHE REQUESTED THAT I PROVIDE

2    THE TRANSCRIPT TO HER.  I PROVIDED THE TRANSCRIPT TO HER IN

3    SEPTEMBER OF 2014.

4            THE COURT:  SO WHEN WAS NOTICE GIVEN TO ANY PARTIES

5    WHO HAD ANY CONFIDENTIAL INFORMATION IN THAT TRANSCRIPT THAT

6    THEY NEEDED TO TAKE ANY ACTION IF THEY WANTED TO KEEP THAT

7    INFORMATION SEALED IN MR. BRANDON MARSHALL'S ESTATE CASE

8    AGAINST THE COUNTY?

9            MR. HARVEY:  THE SAME DAY I BECAME AWARE THAT THE

10   DEFENDANTS REQUESTED IT WHICH WAS THE DAY OF THE CMC.

11           THE COURT:  WELL, I REALLY WANT TO MAKE SURE THAT

12   GOING FORWARD, THAT IS NOT AN ISSUE IN ANY CASE FOR ANY

13   PLAINTIFFS.

14           MR. HARVEY:  ABSOLUTELY, YOUR HONOR.

15           THE COURT:   ALL RIGHT.

16           MR. GIRARD:  NOW, IS THIS A TIME THAT I COULD BE

17   HEARD ON BEHALF OF PLAINTIFF DEVINE, YOUR HONOR?

18           THE COURT:  NO.  NOT RIGHT NOW.  I HAVE MORE

19   QUESTIONS.

20           SO THERE APPEAR TO BE TWO -- WELL, THERE ARE THREE

21   DIFFERENT ATTORNEY'S FEES MOTIONS -- ONE FILED BY GIRARD &

22   GIBBS AND THEN ONE FILED BY MR. SAVERI'S LAW FIRM AND ONE

23   FILED BY LEIFF, CABRASER AND ON BEHALF OF --

24           MR. VAN NEST:  EXCUSE ME, YOUR HONOR, I THINK THERE

25   WAS ONE MORE OBJECTOR THAT HAD ASKED TO BE HEARD.

26           THE COURT:  SORRY.

27           MR. VAN NEST:  I THOUGHT -- JUST TO BE SURE, WAS

28   THERE A THIRD?

1    I STAND CORRECTED.

2         THE COURT:  MR. COPLA SAID HE WOULD APPEAR, BUT I

3    DON'T THINK HE IS HERE.  HE DIDN'T EARLIER IDENTIFY HIMSELF.

4         THE CLERK:  DO YOU WANT ME TO LOOK OUTSIDE AND SEE

5    IF THERE IS ANYONE IN THE HALL?

6         THE COURT:  YOU CAN, BUT WHEN I SAID HIS NAME

7    EARLIER, NOBODY WAVED THEIR HAND AND STOOD UP.  IS MR. COPLA

8    HERE?  I'M ASSUMING FROM WHAT WAS WRITTEN, IT WAS A MR. PRAVA

9    COPLA.  OKAY.  NOT PRESENT.  OKAY.  SO I WAS JUST UNCLEAR ON

10   WHY -- I MEAN THE TWO MOTIONS.  ONE EXCLUDES THE SAVERI LAW

11   FIRM.  THE OTHER ONE INCLUDES IT.  WHY DOES CLASS COUNSEL'S

12   MOTION EXCLUDE THE SAVERI LAW FIRM'S LOAN STAR CALCULATIONS

13   VERSUS THE SAVERI LAW FIRM MOTION WHICH INCLUDES CLASS COUNSEL

14   TOGETHER?

15        MS. DERMODY:  YES, YOUR HONOR.  WHEN WE FILED THE

16   MOTION ON MAY 7TH, WE, THE LEIFF, CABRASER FIRM AND GRANT &

17   EISENHOFER ON OUR PLEADING, WE WERE CONCERNED ABOUT THE

18   TIME-KEEPING AT SAVERI'S FIRM AND WE FELT WE WERE NOT ABLE, WE

19   FELT, TO INCLUDE THAT TIME TO THE COURT FOR THE LOAN STAR

20   CROSS-CHECK BECAUSE WE THOUGHT IT MIGHT BE MISREPRESENTING TO

21   THE COURT THE RELIABILITY OF THAT TIME TO OUR BENEFIT, SO WE

22   DIDN'T INCLUDE IT, AND WE DON'T THINK IT IS NECESSARY TO BE

23   INCLUDED AS PART OF THE LOAN STAR CROSS-CHECK, SO SUBSEQUENT

24   TO THAT TIME, MR. SAVERI SUBMITTED A SUPPLEMENTAL DECLARATION

25   WHICH MADE MORE DISCLOSURES TO THE COURT ABOUT THE TIME AND ON

26   SOME TIME ENTRIES DELETED, SOME TIME THAT WAS IN THE TIME

27   RECORDS.

28        AT THIS POINT WE STILL DO NOT ASK THE COURT TO

1   CONSIDER THAT LOAN STAR AS PART OF THE LOAN STAR CROSS-CHECK

2   OR FOR SOME OF THE SAME REASONS THAT ARE DISCLOSED IN THE

3   DECLARATION, AND BECAUSE WE THINK THAT THE TIME AFFORDED IN

4   THAT LOAN STAR IS INCONSISTENT WITH THE GLACKIN DECLARATION

5   DESCRIBING THE WORK IN THE CASE, AND FRANKLY BECAUSE WE'RE

6   CONCERNED ABOUT THE APPELLATE ISSUE, SO WE THINK THE BEST

7   THING FROM A LOAN STAR CROSS-CHECK PERSPECTIVE FROM THIS

8   RECORD IS TO USE THE LOAN STAR OF THE THREE FIRMS AS DESCRIBED

9   IN THE MOTION FILED ON MAY 7TH.

10          THERE IS ONE MOTION FOR ALL CLASS COUNSEL.  IT IS

11  NOT THAT THERE ARE MULTIPLE DIFFERENT REQUESTS FOR DIFFERENT

12  CLASS COUNSEL GOING ON.  THIS IS A REQUEST FOR --

13          THE COURT:  SORRY, BUT THAT ONE DOESN'T INCLUDE THE

14  SAVERI LAW FIRM, SO THE LOAN STAR IS 14,279,278.50.

15          MS. DERMODY:  THAT IS CORRECT, YOUR HONOR.  THAT IS

16  THE PARTIAL LOAN STAR OF THE THREE FIRMS.

17          THE COURT:  OKAY.  SO I'M REALLY CONFUSED.  NOW ARE

18  YOU ASKING ME THEN TO DISREGARD MR. SAVERI'S MOTION?

19          MS. DERMODY:  FOR PURPOSES OF THE LOAN STAR

20  CROSS-CHECK, WE ARE NOT ASKING YOU TO RELY ON MR. SAVERI'S

21  FIRM'S TIME.

22          THE COURT:  EVEN WITH THE AMENDMENTS HE MADE?  HE

23  MADE SOME REDUCTIONS ON MAY 21.

24          MS. DERMODY:  YES.  CORRECT, YOUR HONOR.

25          THE COURT:  EVEN WITH THOSE YOU THINK STILL THEY ARE

26  NOT RELIABLE?

27          MS. DERMODY:  CORRECT.

28          THE COURT:  OKAY.  LET ME HEAR FROM MR. SAVERI.  DO

1    YOU AGREE WITH THAT?

2            MR. SAVERI:  A COUPLE POINTS, YOUR HONOR.  WE

3    SUBMITTED -- FIRST OF ALL, WE HAVE SUBMITTED A FEE APPLICATION

4    THAT SUPPORTS THE SAME TOTAL AWARD -- THE 81.125 MILLION

5    DOLLARS.

6            THE COURT:  OKAY.

7            MR. SAVERI:  THE BASIS OF THAT AWARD IS THE TIME

8    THAT WAS SUBMITTED IN THE CASE.  WITH RESPECT TO MY FIRM'S

9    TIME, YOUR HONOR, THE TIME THAT I HAVE SUBMITTED WHICH I AM IN

10   THE BEST PLACE TO VOUCH FOR AND ATTEST TO IS A RELIABLE AND

11   ACCURATE RECORD OF THE WORK THAT WAS DONE BY MY FIRM IN THIS

12   CASE.  THOSE RECORDS ARE ACCURATE AND BASED ON THE

13   CONTEMPORANEOUS RECORDS THAT MY FIRM KEEPS.

14           THE COURT:  AS AMENDED ON MAY 21?

15           MR. SAVERI:  ABSOLUTELY, YOUR HONOR, AND WE MADE A

16   TIMELY APPLICATION, AND THEN SUBSEQUENT TO THAT, WE WANTED TO

17   MAKE SURE THAT THE RECORD WAS ACCURATE AND WE MADE CERTAIN

18   CORRECTIONS -- YOU WILL NOTE THAT THE CORRECTIONS WE MADE

19   AMOUNTED TO THE --

20           THE COURT:  ARE YOU TALKING ABOUT THE MAY 21

21   CORRECTIONS?

22           MR. SAVERI:  YES.

23           THE COURT:  OKAY.

24           MR. SAVERI:  ARE REDUCED ABOUT TWO HUNDRED HOURS

25   FROM THE TOTAL AMOUNT OF TIME THAT WAS SUBMITTED, AND YOU WILL

26   NOTE THAT IF YOU LOOK AT THE PAPERS, THERE WERE SOME ENTRIES

27   THAT WERE CLEARLY IN ERROR THAT WAS -- FOR EXAMPLE, ONE DAY

28   WHERE WE RECORDED A HUNDRED TWENTY HOURS FOR ONE TIMEKEEPER,

1   THAT WAS CLEARLY WRONG.  WE TOOK IT OUT OF THE RECORD.  WE

2   WANTED TO MAKE SURE THAT THE RECORD WAS ACCURATE.

3        MY TIME-KEEPING PRACTICES ARE DESCRIBED IN MY

4   SUPPLEMENTAL DECLARATION, AND AGAIN, THEY PROVIDE A RELIABLE

5   AND ACCURATE RECORD OF THE WORK THAT WAS DONE IN THE CASE.  WE

6   ARE TALKING HERE OF COURSE ABOUT THE LOAN STAR CROSS-CHECK.

7        THE COURT:  CAN I ASK YOU A QUESTION?  SO YOU ARE

8   SAYING ONLY YOUR INDIVIDUAL TIME AND NOT INCLUDE ANYONE ELSE

9   IN YOUR LAW FIRM'S TIME IN THE LOAN STAR -- I GUESS I'M

10  CONFUSED.  I THOUGHT THAT MS. DERMODY JUST SAID DO NOT INCLUDE

11  ANY TIME OF YOUR LAW FIRM IN THE LOAN STAR CALCULATION.

12       MR. SAVERI:  AND WHAT MY MOTION SAYS IS THAT THE FEE

13  THAT SHOULD BE AWARDED SHOULD HAVE BEEN BASED ON A PERCENTAGE

14  OF RECOVERY UNDER THE APPLICABLE NINTH CIRCUIT STANDARD.

15  WE'RE ASKING FOR A DOWNWARD DEPARTURE FOR EVERYBODY THAT

16  AMOUNTS TO ABOUT NINETEEN PERCENT.  IN THAT CASE WE CITED THE

17  AUTHORITY TO YOU.  THE COURT DOES NOT HAVE TO PERFORM A LOAN

18  STAR CROSS-CHECK.

19       THE COURT:  I KNOW, BUT I'M GOING TO.  SO HAVE YOU

20  GIVEN ME THE DATA TO DO THAT OR NOT?

21       MR. SAVERI:  YES, ABSOLUTELY, YOUR HONOR.

22       THE COURT:  I AM REALLY CONFUSED NOW.  WHAT IS YOUR

23  POSITION?  MS. DERMODY JUST SAID DO NOT INCLUDE ANY AMOUNT

24  FROM THE SAVERI LAW FIRM IN THE LOAN STAR CALCULATIONS, AND I

25  HEARD YOU SAYING INCLUDE MY INDIVIDUAL TIME, BUT I DIDN'T HEAR

26  YOU SAY INCLUDE EVERY OTHER LAWYER IN MY FIRM OR STAFF.

27       MR. SAVERI:  LET ME BE CLEAR.  YOU SHOULD INCLUDE

28  ALL THE TIME THAT IS SUBMITTED IN THE CASE.  THERE WERE FOUR

1   FIRMS THAT SUBMITTED TIME IN THE CASE:  LEIFF, CABRASER,

2   HEIMANN & BERNSTEIN AND MY FIRM, SAVERI, GRANT, EISENHOFER AND

3   BERGER & MONTAGUE.

4           THE COURT:  SO THEN YOU DISAGREE WITH WHAT MS.

5   DERMODY JUST SAID WHICH IS NOT TO INCLUDE YOUR LAW FIRM?

6           THE WITNESS:  I THINK THE CORRECT WAY TO DO THE LOAN

7   STAR CALCULATIONS IN THE CASE IS TO INCLUDE ALL THE TIME THAT

8   HAS BEEN SUBMITTED IN THE CASE TO YOUR HONOR IN THE MOTIONS

9   THAT WERE FILED WITH THE COURT.  THAT INCLUDES THE FOUR FIRMS.

10  IT INCLUDES LEIFF, CABRASER, HEIMANN & BERNSTEIN, INCLUDES MY

11  FIRM, INCLUDES BERGER & MONTAGUE, AND INCLUDES GRANT &

12  EISENHOFER.

13      WHEN YOU DO THAT, YOU INCLUDE ALL OF THAT TIME BECAUSE

14  THOSE ARE RELIABLE AND ACCURATE RECORDS OF THE WORK THAT WAS

15  DONE IN THE CASE.  YOU END UP WITH A MULTIPLIER SIGNIFICANTLY

16  BELOW FOUR:  3.93.

17      WHEN WE ORIGINALLY DID THE MOTION, IT WAS 3.89.  WHEN WE

18  REDUCED OUR TIME TO TAKE OUT THE TWO HUNDRED HOURS THAT WERE

19  IN THE ORIGINAL SUBMISSION, THE LOAN STAR MULTIPLIER OF COURSE

20  GOES UP TO 3.93, SO AGAIN, YOUR HONOR --

21          THE COURT: SO YOU DISAGREE WITH MS. DERMODY?

22          MR. SAVERI:  YES, I DO DISAGREE, AND I THINK THE

23  LOAN STAR CALCULATIONS SHOULD INCLUDE THE TIME OF ALL THE

24  FIRMS THAT SUBMITTED FEE INFORMATION TO THE COURT IN THE TWO

25  -- WHICH INCLUDES BOTH MOTIONS.

26          THE COURT:  SO WHAT AM I SUPPOSED TO DO WITH THE

27  FACT THAT YOUR CO-LEAD COUNSEL DOESN'T BELIEVE THAT YOUR LOAN

28  STAR CALCULATIONS IS TRUSTWORTHY?

1          MR. SAVERI:  WELL, YOUR HONOR, I THINK YOU SHOULD

2    ASK WHATEVER QUESTIONS YOU WANT TO OF ME ABOUT MY TIME-KEEPING

3    AND SATISFY YOURSELF THAT IT IS A RELIABLE AND ACCURATE RECORD

4    OF THE WORK THAT WAS DONE IN THE CASE.  IN ORDER TO DO THE

5    LOAN STAR CROSS-CHECK, YOU MAY RELY ON SUMMARIES.  YOU CAN

6    RELY ON ATTORNEY DECLARATIONS.  YOU CAN RELY ON THE DAILY TIME

7    RECORDS THAT ARE SUBMITTED.

8          I HAVE DESCRIBED MY TIME-KEEPING PRACTICES.  I HAVE

9    DESCRIBED THE FACT THAT UNDER ANY PLAUSIBLE DEFINITION OF

10   CONTEMPORANEOUSNESS, THAT THE TIME RECORDS ARE KEPT AND

11   MAINTAINED IN A CONTEMPORANEOUS FASHION.  THEY ARE RECORDED

12   WITHIN DAYS OR WEEKS OR PERHAPS MONTHS OF THE -- MONTH OF THE

13   TIME WHEN IT WAS INCURRED, AND TO THE EXTENT IT IS NOT TRUE,

14   YOUR HONOR, THEY'RE BASED ON CONTEMPORANEOUS RECORDS LIKE

15   ATTORNEY NOTES, CALENDARS AND THINGS OF THAT TYPE.

16          THE COURT:  OKAY.  WHY DID YOU NEED TO MAKE THE

17   AMENDMENTS YOU MADE ON MAY 21?

18          MR. SAVERI:  BECAUSE THE ORIGINAL SUBMISSION HAD

19   ABOUT TWO HUNDRED HOURS IN TIME THAT I WANTED TO ELIMINATE

20   FROM THE ORIGINAL SUBMISSION.  THERE WERE -- AS I HAVE

21   INDICATED, THERE WERE SOME ENTRIES THAT WERE MISTAKEN.  THERE

22   WAS ONE EXAMPLE WHERE WE ENTERED ONE TIMEKEEPER FOR A HUNDRED

23   TWENTY HOURS IN A DAY.  THAT WAS CLEARLY WRONG.  WE TOOK THAT

24   OUT.  THERE WERE ANOTHER SET OF INSTANCES WHERE I --

25          THE COURT:  AND WHY DIDN'T THAT COME TO YOUR

26   ATTENTION BEFORE YOU SUBMITTED THE FEES MOTION?  EVERYONE HAS

27   BEEN KNOWING THAT THIS FEE MOTION IS COMING, SO WHY WASN'T

28   THERE A QUALITY CHECK?

1       MR. SAVERI:  THERE WAS A QUALITY CHECK, YOUR HONOR,

2  BUT THAT FRANKLY SLIPPED THROUGH THE CRACKS, AND IN

3  RETROSPECT, THAT WAS A MISTAKE, YOUR HONOR, BUT IT WOULD HAVE

4  BEEN FAR WORSE IF I HAD LET THAT SLIDE AND NOT ADDRESSED IT

5  WHEN I FOUND OUT.

6       IT DOESN'T CHANGE THE RELIABILITY OF THE RECORDS.

7       IN FACT, I THINK WHAT IT SHOWS IS THAT I WENT BACK

8  THROUGH AGAIN AND MADE SURE THAT I CAUGHT ANY ADDITIONAL

9  PROBLEMS, AND I DID.  ONE OF THE OTHER SITUATIONS WAS I TRIED

10  TO GO THROUGH MY TIME AND ELIMINATE --

11       THE COURT:  DID SOMEONE RAISE THAT WITH YOU?  HOW

12  DID IT COME TO YOUR ATTENTION?

13       MR. SAVERI:  I CAUGHT THAT ERROR IN GOING BACK

14  THROUGH ALL THE TIME BECAUSE I WANTED TO MAKE SURE IT WAS

15  RIGHT.  I HAD DISCUSSIONS WITH LEIFF, CABRASER ABOUT THE TIME,

16  AND ONE OF THE THINGS I WANTED TO DO WAS MAKE SURE THAT THE

17  TIME WAS ACCURATE, SO I WENT BACK THROUGH IT AGAIN AND I

18  IDENTIFIED THAT AS A PROBLEM.

19       THERE WERE ALSO INSTANCES WHERE I TRIED TO ELIMINATE

20  BLOCKED BILLING FROM MY TIME, AND WHEN I DID THAT, CERTAIN OF

21  THOSE ENTRIES WERE INCORRECTLY CORRECTED, AND WHEN I FOUND IT,

22  I JUST TOOK THE TIME OUT, AND AGAIN, YOUR HONOR, ONCE I

23  DISCOVERED THESE ERRORS, IT SEEMED TO ME IT WAS INCUMBENT ON

24  ME TO MAKE SURE THAT WHAT WAS BEFORE YOU WAS CORRECT.

25       NOW THAT DOESN'T CHANGE WHETHER OR NOT THE TIME IS A

26  RELIABLE AND ACCURATE RECORD OF THE WORK THAT MY FIRM HAS DONE

27  SINCE THE BEGINNING OF THE CASE, AND THAT IS DISCUSSED IN MY

28  DECLARATION AND THEN AS MODIFIED IN MY SUPPLEMENTAL

1   DECLARATION.

2           THE COURT:  OKAY.  LET ME HEAR FROM MS. DERMODY.

3   WHAT ARE THE CONCERNS YOU HAD ABOUT THE RELIABILITY OF

4   MR. SAVERI'S LAW FIRM'S BILLING RECORDS?

5           MS. DERMODY:  YOUR HONOR, LET ME CONTEXTUALIZE THIS

6   BECAUSE I WORRY ABOUT SORT OF THE ASPECT OF A SHINY OBJECT

7   HERE.  I WANT TO BE VERY CLEAR THAT MR. SAVERI'S FIRM DID

8   VALUABLE WORK FOR THE CLASS IN THIS CASE, AND WE DON'T NEED TO

9   SUGGEST OTHERWISE THAT THIS IS REALLY ABOUT MAKING SURE THAT

10  CLASS COUNSEL COLLECTIVELY, ALL FOUR FIRMS, DON'T BENEFIT FROM

11  BEING OBSCURE OR UNCLEAR OR EVEN MISLEADING TO THE COURT.

12          WE WANT TO NOT DO THAT, AND SO WE WANT THE RECORD TO BE

13  PRISTINE FOR THE COURT AND THE COURT CAN FEEL COMPETENT THAT

14  WHEN THE COURT ISSUES WHATEVER ORDER IT ISSUES, THAT WHATEVER

15  MULTIPLIER IT USES IS ABSOLUTELY CREDIBLE, AND THAT'S OUR ONLY

16  CONCERN HERE IS HONESTY TO THE TRIBUNAL.

17          IN RESPECT TO OUR SPECIFIC QUESTIONS, THERE IS QUITE A

18  LONG HISTORY, YOUR HONOR, AND IF YOUR HONOR REALLY WANTS

19  SOMEBODY TO DOT INTO THAT HISTORY, MAYBE A SPECIAL MASTER

20  APPOINTMENT IS THE RIGHT THING TO DO.  WE DON'T WANT TO

21  OVERSTAY OUR WELCOME IN FRONT OF YOUR HONOR.

22          I WOULD SAY THAT WE HAD A CHALLENGING TIME GETTING TIME

23  IN THIS CASE.  WE COULD NOT GET CONTEMPORANEOUS TIME IN THIS

24  CASE, AND WE RAISED SOME QUESTIONS ALONG THE WAY ABOUT TIME

25  AND TIME-KEEPING, THAT THINGS THAT WE THOUGHT WOULD GET FIXED

26  DIDN'T GET FIXED, AND WE DID NOT HAVE THE COMPLETE, DETAILED

27  TIME RECORDS UNTIL THE END OF APRIL OF 2015.

28          THERE HAD BEEN ONE PREVIOUS TRACHEAE OF DETAILED TIME

1   RECORDS PROVIDED TO US IN JUNE OF 2014, AND WE HAD BEEN -- WE

2   RAISED QUESTIONS IN THAT TIME BETWEEN END OF APRIL --

3          THE COURT:  CAN I INTERRUPT YOU?  SO NONE OF THE

4   FIRMS DID CONTEMPORANEOUS TIME-KEEPING?

5          MS. DERMODY:  EVERY SINGLE DAY WE KEEP TIME, AND WE

6   HAVE NO REASON TO THINK THAT WAS TRUE OF GRANT, EISENHOFER AND

7   BERGER, MONTAGUE.  WE HAD NO ISSUES GETTING TIME FROM THEM,

8   BUT WE HAD HISTORY OF GETTING TIME -- THIS WOULD NOT EVEN BE

9   RAISED WITH YOUR HONOR IF THE TIME THAT CAME IN HAD SO MANY

10  ENTRIES THAT WITHOUT DOING ANY TYPE OF AUDIT, HAD PROBLEMS.

11  WE JUST LOOK AT THEM, INSPECT THEM AND WE WERE CONCERNED ABOUT

12  THEIR CREDIBILITY.

13     WE APPRECIATED MR. SAVERI'S WILLINGNESS, FRANKLY, AFTER

14  MAY 7TH, 2010, TO SUBMIT A SUPPLEMENTAL DECLARATION TO THE

15  COURT AT LEAST DESCRIBING IN SOME FASHION THE WAY IN WHICH THE

16  TIME WAS NOT KEPT PROXIMATE TO THE TASK, AND THAT WE FELT THAT

17  AT LEAST THAT TIME DISCLOSURE PUT THE COURT ON NOTICE A BIT

18  ABOUT SOME OF THE TIME ISSUES THAT WE HAVE MAINTAINED

19  CONSISTENCY THROUGH THE FEE FILING PROCESS -- THAT THE ONLY

20  CREDIBLE TIME THAT THE COURT SHOULD CONSIDER FOR THE

21  MULTIPLIER CROSS-CHECK ARE THE THREE FIRMS -- THE PROPOSED FEE

22  ORDER WE SUBMITTED IN CONNECTION WITH OUR REPLY BRIEF -- THAT

23  ALL FOUR FIRMS SUBMITTED ONLY RELIED ON THE TIME FROM THREE

24  FIRMS.

25     AGAIN WE THINK THAT THAT IS THE MOST PRUDENT COURSE.  IT

26  AVOIDS APPELLATE ISSUES AND TAKES US OUT OF THE MORASS OF

27  TRYING TO FIGURE OUT WHAT IS GOING ON WITH THAT TIME.  WE PUT

28  IT TO THE SIDE.  WE KNOW THAT MR. SAVERI AND HIS FIRM DID

1    VALUABLE WORK IN THE CASE.  THIS IS NOT ABOUT THAT, BUT IT IS

2    ABOUT WHAT TIME THE COURT RELIES ON IN THIS RECORD TO SUPPORT

3    WHATEVER FEE THE COURT WANTS TO AWARD, AND WE THINK EVEN WITH

4    THE THREE FIRMS, THE SIZABLE AMOUNT OF LOAN STAR, AND THAT THE

5    FEE REQUEST THAT WE HAVE REQUESTED COLLECTIVELY FOR THE FOUR

6    FIRMS -- EVEN WITH JUST THREE OF THEM IN THE RECORD, IT'S A

7    5.6 MULTIPLIER WHICH IS ALMOST IDENTICAL TO THE MULTIPLIER

8    THAT THE JUDGE ALSOP ORDERED LEIFF, CABRASER IN THE PTA VERSUS

9    LOS BANOS CASE THAT WAS FIVE POINT FIVE MULTIPLIER, SO WE'RE

10   IN A BALLPARK IN THIS DISTRICT AND IN THIS CIRCUIT.  IT'S

11   REASONABLE AND HAS BEEN APPROVED WITH OTHER JUDGES EVEN WITH A

12   PARTIAL LOAN STAR CROSS-CHECK.

13            THE COURT:  UNFORTUNATELY IF I JUST ADDED UP THE

14   LOAN STARS OF THE THREE FIRMS, I GET 14,357,364.00, BUT THEN

15   YOUR REQUEST SAYS THE LOAN STAR OF THOSE THREE FIRMS IS 14,

16   279,270.50, SO WHY IS THERE A DIFFERENCE BETWEEN THE BREAKDOWN

17   BY INDIVIDUAL FIRMS AND A TOTAL REQUESTED?  IT LOOKS LIKE IT

18   IS OFF BY $70,086.00.

19            MS. DERMODY:  I HAVE NO IDEA, YOUR HONOR, THAT IS

20   UPSETTING TO HEAR.  I WILL TRY TO FIND OUT.

21            THE COURT:  SO I HAVE LEIFF, CABRASER AT

22   $11,544,628.50.

23            MS. DERMODY:  THAT IS -- I THINK WHERE THE MISTAKE

24   IS, YOUR HONOR, I THINK MY DECLARATION WITH OUR FEE MOTION ON

25   MAY 7TH HAS 11,476,957.50.  SOUNDS LIKE THAT REFLECTS SOME

26   SORT OF AUDIT FOR EFFICIENCY WHEN WE WERE GOING THROUGH THE

27   DETAIL.

28            THE COURT:  SO YOU ARE SAYING THE 11,544,628.50 IS

1   THE WRONG NUMBER?

2         MS. DERMODY:  I AM NOT SURE WHERE THAT COMES FROM.

3   MAYBE IT WAS THE APPROVE --

4         THE COURT:  ECF 1085 IS WHERE IT COMES FROM.  THAT

5   IS YOUR MOTION I THINK.  MAYBE THAT'S YOUR DECLARATION THAT IS

6   SUPPLEMENTAL DECLARATION OF JOSEPH SAVERI IN SUPPORT OF

7   PLAINTIFF'S MOTION FOR FEES, REIMBURSEMENT OF EXPENSES AND

8   INCENTIVE AWARDS.

9         MS. DERMODY:  YEAH.  SORRY.  I AM LOOKING AT ECF

10   DOCUMENT 1083-20 AND PAGE 3 WHICH IS THE BOTTOM LINE NUMBER OF

11   THE LEIFF, CABRASER FEE.  I'M SORRY IF THERE IS SOMETHING ELSE

12   IN THE RECORD THAT IS INCONSISTENT WITH THAT.  THAT IS THE

13   NUMBER.

14         THE COURT:  SO THERE MIGHT BE OTHER VARIATIONS, AS

15   WELL, IT SOUNDS LIKE, BECAUSE I DID HAVE A QUESTION ABOUT THE

16   COSTS.  THERE IS ALSO A DIFFERENCE IN COST.  IF I LOOK AT ECF

17   1085 WHICH IS MR. SAVERI'S DECLARATION AND EXHIBIT 6 TO THAT

18   DOCUMENT, SO THAT ECF 1085-6, I GET THE COST AT $1,231,276.66,

19   BUT IF I LOOK AT THE KELLY DERMODY DECLARATION WHICH IS ECF

20   NUMBER 1083, IT SAYS THE COST IS 1,184,810.98 CENTS.

21         MR. DERMODY:  SO THIS IS THE PROBLEM WITH THE RECORD

22   ON THAT, YOUR HONOR.  WE APOLOGIZE, SO WHEN LEIFF, CABRASER

23   FILED THE MOTION FOR REIMBURSEMENT OF FEES AND COSTS FOR ALL

24   CLASS COUNSEL, WE HAD THE FINAL NUMBERS FROM THREE OF THE FOUR

25   FIRMS.  WE WERE NOT ABLE UPON REQUEST TO GET THE COST NUMBER

26   FROM THE SAVERI FIRM, SO WE PUT IN FOR THE SAVERI FIRM THE

27   SAME NUMBER WE HAD BEEN GIVEN FROM THEM DURING PRELIMINARY

28   APPROVAL.

1     AS HAPPENS IN CASES, IT APPEARS THAT THE SAVERI FIRM

2    REALIZED IT HAS MORE COSTS THAN HAD BEEN PREVIOUSLY REPORTED

3    OUT, SO MR. SAVERI IN HIS DECLARATION REPORTS OUT THEIR FINAL

4    COST NUMBER WHICH WAS DIFFERENT THAN WE HAD BEEN EXPECTING.

5     THE UPSHOT OF ALL OF IT THOUGH IS THAT WE NOTICED THE

6    CLASS FOR REIMBURSEMENT OF ONE POINT TWO MILLION.  WE'RE NOT

7    ASKING FOR ANYTHING MORE THAN ONE POINT TWO MILLION.  IT IS

8    JUST THAT INSTEAD OF IT BEING LESS THAN ONE POINT TWO MILLION

9    AS WE THOUGHT IT WAS, WE FELT WOULD IT END UP BEING IN EXCESS

10   OF THAT IN WHICH WE WON'T RECOUP.

11     THE COURT:  LOOKS LIKE THE DIFFERENCE OF $46,465.70

12   IN COST.  WAS THAT INCURRED SINCE THE PRELIMINARY OF APPROVAL

13   IN MARCH?

14     WHAT ACCOUNTS FOR THAT MUCH COST BETWEEN PRELIMINARY

15   APPROVAL AND FINAL APPROVAL?

16     MR. SAVERI:  THOSE ARE ADDITIONAL COSTS THAT HAD

17   BEEN INCURRED ALONG THE WAY IN THE CASE.  SOME OF WHICH WERE

18   POST-PRELIMINARY APPROVAL, BUT SOME OF WHICH WERE JUST NOT

19   ACCOUNTED FOR.  AS MS. DERMODY SAYS, THE NOTICE TO THE CLASS

20   IS WHAT CONTROLS.  TO THE EXTENT THERE ARE ADDITIONAL COSTS

21   THAT ARE ABOVE THE NOTICED NUMBER, THEY'RE NOT RECOVERABLE.

22     WE WANTED TO MAKE SURE THAT OUR TIME AND EXPENSE

23   REPORT WAS ACCURATE AND COMPLETE, SO I THINK, YOUR HONOR, WHAT

24   YOU SHOULD DO IS AWARD THE FULL AMOUNT OF NOTICE COST WHICH IS

25   THE 1.2 MILLION.

26     TO THE EXTENT THERE IS ANY OVERAGE, AS IN ANY CASE,

27   THE PLAINTIFF'S ATTORNEYS HAVE TO BEAR THAT COST.  IT HAPPENS

28   IN EVERY CASE.

1          THE COURT:  SO MS. DERMODY, DO YOU HAVE ANY

2    QUESTIONS ABOUT THE RELIABILITY OF THE 1.266 NUMBER?

3          MS. DERMODY:  I HAVE NO REASON TO DISPUTE THAT NOW,

4    YOUR HONOR.  I HAVEN'T INDEPENDENTLY AUDITED THE RECEIPTS THAT

5    HE GAVE YOUR HONOR.  I AM SURE IF THEY SUPPORT THAT NUMBER,

6    THAT THEY ARE ACCURATE.  I JUST HAVE NO REASON TO DOUBT THAT.

7          THE COURT:  I ASSUME THE DEFENDANTS DON'T WANT TO BE

8    HEARD ON THIS?

9          MR. VAN NEST:  THAT'S RIGHT, YOUR HONOR.  WE DON'T.

10          THE COURT:  ALL RIGHT.  YOU HAVEN'T SEEN ANY

11    INVOICES SUBSTANTIATING THE DIFFERENT NUMBER?  NOT SAYING THEY

12    DON'T EXIST.  I'M JUST SAYING YOUR LAW FIRM HASN'T REVIEWED?

13          MS. DERMODY:  I HAVEN'T, AND I HAVEN'T ASKED FOR IT.

14    I HAVE NOT INDEPENDENTLY VERIFIED THEM.

15          MR. SAVERI:  YOUR HONOR, WE SUBMITTED THE MATERIALS

16    IN THE BILLING RECORDS TO SUPPORT THOSE COSTS IN FULL.

17          THE COURT:  WELL, I'M REALLY PUZZLED.  I DIDN'T

18    REALIZE THAT THERE WAS THIS BIG OF AN ISSUE ON THE MOTION FOR

19    FEES.  WHAT ABOUT THE OTHER TWO LAW FIRMS, GRANT & EISENHOFER

20    AND BERGER & MONTAGUE?

21          MR. SAVERI:  GRANT & EISENHOFER AND BERGER &

22    MONTAGUE JOINED ME IN MY MOTION, BUT FROM MY PERSPECTIVE, YOUR

23    HONOR, I DON'T HAVE ANY REASON TO CHALLENGE OR QUESTION ANY OF

24    THE LOAN STAR SUBMISSION IN THE CASE.  I THINK IT SHOULD BE

25    VALUED IN FULL.

26          OBVIOUSLY I DON'T THINK IT SHOULD COME AS ANY

27    SURPRISE TO YOU, YOUR HONOR, THAT I QUARREL WITH A LOT OF WHAT

28    MS. DERMODY SAID ABOUT MY TIME.

1          I HAVE SUBMITTED THE RECORDS TO YOU AND A

2    DESCRIPTION OF MY TIME WHICH INDICATES THAT THEY'RE RELIABLE

3    AND ACCURATE RECORD OF THE WORK THAT WAS DONE.  I DESCRIBED MY

4    PROCESSES FOR RECORDING TIME, AND FRANKLY, YOUR HONOR, IT IS

5    CONSISTENT WITH THE PRACTICES THAT I HAVE BEEN FOLLOWING FOR

6    TWENTY FIVE YEARS, AND I KNOW THAT MANY, MANY OTHER LAWYERS

7    FOLLOW.

8          I DON'T THINK THERE IS ANY BASIS TO CONCLUDE THAT MY

9    TIME IS NOT CONTEMPORANEOUSLY KEPT BY ANY PLAUSIBLE DEFINITION

10   OF THAT WORD.  CERTAINLY MY TIME IS NOT KEPT -- I DON'T MAKE

11   SIMULTANEOUS RECORDS IN MY TIME SHEETS WHEN WORK IS DONE.

12   THAT IS NOT THE REQUIREMENT, AND THAT IS NOT WHAT PEOPLE DO.

13          THE COURT:  SO WHAT IS YOUR DEFINITION OF

14   CONTEMPORANEOUS TIME?  WITHIN A WEEK?  WITHIN A MONTH?  WITHIN

15   A COUPLE OF DAYS?

16          MR. SAVERI:  WHAT I BELIEVE CONTEMPORANEOUS MEANS --

17   AND, OF COURSE, THIS WAS NOT IN ANY ORDER OF THE COURT --

18          THE COURT:  YEAH, I DIDN'T ORDER YOU ALL TO KEEP

19   CONTEMPORANEOUS TIME?

20          MR. SAVERI:  NO, YOUR HONOR.  THE ORIGINAL ORDER IN

21   THE COURT --

22          THE COURT:  DO YOU AGREE WITH THAT?

23          MS. DERMODY:  WELL, YOUR HONOR --

24          THE COURT:  BECAUSE I NORMALLY DO -- IF I DIDN'T,

25   THAT WAS A MISTAKE -- NORMALLY I REQUIRE IN ALL OF MY CLASS

26   ACTIONS.  I THINK IT IS FAIR TO CLASSIFY JUST LIKE A PAYING

27   CLIENT BECAUSE THEY ARE PAYING, RIGHT, THEY ARE PAYING OUT OF

28   A SETTLEMENT FUND, SO WHY SHOULDN'T THEY GET THE SAME SERVICE

1    AS A PAYING CLIENT?

2              MR. SAVERI:  YOU INDICATED AT A HEARING FOR THE

3    FIRST TIME WHEN WE WERE GOING TO SUBMIT OUR SUPPORT FOR THIS

4    FOR ANY ADDITIONAL SETTLEMENTS THAT YOU WOULD REQUEST

5    CONTEMPORANEOUS TIME RECORDS.

6              THE COURT:  WELL, I THINK I WOULD HAVE REQUESTED

7    THAT DURING THE FIRST SETTLEMENT WITH PIXAR, AND I DID ASK YOU

8    TO FILE IT.

9              MR. SAVERI:  WHEN YOU FIRST USED THE WORD

10   CONTEMPORANEOUS, AGAIN, YOUR HONOR, IT WAS NOT EVER AN ORDER

11   OF THE COURT.  THE FIRST TIME IT CAME UP IS WHEN YOU USED THE

12   WORDS FROM THE BENCH BEFORE THAT HEARING.

13             THE COURT:  SO THAT WOULD HAVE BEEN WHAT LIKE AUGUST

14   OF --

15             MS. DERMODY:  MAY 1ST, 2014.

16             MR. SAVERI:  AND, YOUR HONOR, WHAT I TOOK THAT TO

17   MEAN IS THE KIND OF RECORD KEEPING THAT I HAVE DONE MY ENTIRE

18   CAREER AND WHEN -- AND HOW I AM FAMILIAR WITH VIRTUALLY EVERY

19   FIRM DOES IT, THERE IS ALWAYS SOME DELAY BETWEEN A TIME A TASK

20   IS DONE AND THERE IS A RECORD MADE OF IT.

21             THAT IS JUST A REASONABLE WAY THAT LAWYERS PROCEED.

22   THE GREAT MAJORITY OF THE TIME THAT I HAVE SUBMITTED IN THIS

23   CASE WAS RECORDED IN SOME FASHION EITHER IN THE COMPUTERIZED

24   RECORD-KEEPING, TIME-KEEPING SYSTEM AT MY FIRM OR ON -- EXCUSE

25   ME -- ON TIME SHEETS OR PIECES OF PAPER WITHIN DAYS OR WEEKS

26   OF THE TIME THAT IT WAS REPORTED.

27             THERE WERE CERTAINLY SITUATIONS, YOUR HONOR, WHERE

28   THE DELAY WAS GREATER.  IT HAPPENED TO BE A MONTH OR TWO.  IN

1  ALL THOSE SITUATIONS, YOUR HONOR, THAT TIME-KEEPING WAS BASED

2  ON CONTEMPORANEOUS RECORDS:  THINGS LIKE ATTORNEY NOTES,

3  CALENDARS, E-MAILS -- ALL OF THOSE SORTS OF THINGS.  IT IS MY

4  EXPERIENCE, YOUR HONOR, THAT THOSE KINDS OF RECORDS AND THAT

5  KIND OF PRACTICE IS ENTIRELY CONSISTENT WITH ORDINARY BILLING

6  PRACTICES OF LAW FIRMS THROUGHOUT THIS AREA AND ACROSS THE

7  COUNTRY BOTH IN CLASS ACTIONS AND WITH RESPECT TO HOURLY

8  CLIENTS, SO I'M HERE TO ANSWER WHATEVER QUESTIONS YOU WANT TO

9  ASK ABOUT MY TIME.  I HAVE EXPLAINED MY METHODOLOGY.  I HAVE

10  GOT NOTHING TO HIDE.

11        THE COURT:  AND EVERYONE IN YOUR FIRM HAD YOUR SAME

12  BILLING PRACTICES?

13        MR. SAVERI:  AS I JUST GENERALLY DESCRIBED THEM,

14  YES.  CERTAINLY THERE ARE TIME-KEEPERS WHO, FOR EXAMPLE,

15  RECORD TIME DIRECTLY INTO OUR COMPUTERIZED TIME-KEEPING

16  SYSTEM.  I WRITE IT DOWN ON A PIECE OF PAPER, AND IT IS

17  ENTERED SUBSEQUENTLY BY SECRETARIES, AND THAT IS WHAT HAPPENS,

18  YOUR HONOR.

19        THAT IS CONSISTENT WITH THE WAY FIRMS RECORD TIME.  AS I

20  SAID, IT IS -- I DON'T MEAN TO IMPLY THAT THE TIME THAT MY

21  FIRM IS SUBMITTED IS PERFECTLY CONTEMPORANEOUS.

22        IT IS NOT PREPARED EVERY DAY.  IT IS NOT PREPARED WHEN

23  THE TASK WAS PREPARED, BUT AGAIN, IT IS BASED ON RECORDS AND

24  ON PERSONAL KNOWLEDGE THAT MAKE IT A RELIABLE AND ACCURATE

25  RECORD OF THE WORK THAT WAS DONE IN THIS CASE, AND THAT IS

26  CONSISTENT WITH WHAT I UNDERSTAND AND WHAT I THINK ANY

27  PLAUSIBLE UNDERSTANDING OF CONTEMPORANEOUS IS.

28        THE COURT:  LET ME ASK YOU SOMETHING.  CAN YOU TELL

1    ME HOW MUCH YOU BILLED TWO MONTHS AGO ON MAY 14TH?  THAT WOULD

2    BE IMPOSSIBLE, RIGHT?  EVEN IF YOU HAD IN YOUR NOTES THAT YOU

3    READ A DEPOSITION TRANSCRIPT AND YOU PREPARED A MOTION OR YOU

4    LOOKED ON YOUR CALENDAR AND SAID, OKAY, I HAD A MEETING THAT

5    DAY.  I MEAN IT WOULD BE REALLY DIFFICULT TO DO.

6                MR. SAVERI:  I DON'T THINK IT IS, YOUR HONOR.  I

7    THINK THERE IS A LOT OF WAYS OF DOING THAT.  YOU CAN LOOK AT

8    DOCUMENTS.  YOU CAN LOOK AT E-MAILS.  YOU CAN BASED ON YOUR

9    RECOLLECTION, AND FRANKLY, YOUR HONOR, MY EXPERIENCE HAS BEEN

10   THAT WHEN TIME -- WHEN A SUBSTANTIAL PERIOD OF TIME ELAPSES

11   BETWEEN THE TIME THAT THE TASK WAS PERFORMED AND THE TIME IT

12   WAS ENTERED, FRANKLY TIME IS LOST, AND SO THAT TIME-KEEPING

13   TENDS TO BE -- TENDS TO RECORD LESS TIME.

14               THE COURT:  SO LET ME ASK, MS. SAKAMOTO JUST HANDED

15   ME THE TRANSCRIPT OF MAY 7TH, 2014, WHICH AS I ASSUME IS THE

16   PRELIMINARY APPROVAL HEARING; IS THAT CORRECT?

17               MR. SAVERI:  NO.  I BELIEVE THAT IS THE FINAL

18   APPROVAL HEARING.  I DON'T KNOW WHICH ONE SHE'S PULLED UP.  I

19   THINK THAT IS THE FINAL APPROVAL HEARING AT THE PRIOR

20   SETTLEMENT.

21               THE COURT:  OKAY.  WELL, THIS IS PRETTY EXPLICIT

22   ABOUT REQUIRING CONTEMPORANEOUS BILLING, SO IF AFTER THAT

23   POINT YOU DO THE SAME TYPE OF TWO-MONTH DELAY BUSINESS ON

24   NOTES AND CALENDARS OR WAS IT --

25               MR. SAVERI:  THE GREAT MAJORITY OF MY TIME --

26               THE COURT:  -- MORE CONTEMPORANEOUS?

27               MR. SAVERI:  -- THE GREAT MAJORITY OF MY TIME, YOUR

28   HONOR, WAS MORE CONTEMPORANEOUS AND CLOSER TO THE TIME THAT

1    THE TASKS WERE PERFORMED.

2           THE COURT:  BUT YOUR DEFINITION OF CONTEMPORANEOUS

3    IS A ONE- OR TWO-MONTH DELAY SOMETIMES?

4           MR. SAVERI:  NO, YOUR HONOR.  I'M NOT SAYING THAT.

5    WHAT I'M SAYING IS WHAT I DEFINE CONTEMPORANEOUS, WHAT I MEAN

6    THERE IS AN ENTRY IN A TIME SHEET WHICH TIES THAT PARTICULAR

7    TIME TO A PARTICULAR EVENT AND TASK.  THERE IS NO -- THIS

8    ISN'T -- AND THIS TIME WAS KEPT AS WE WENT ALONG, YOUR HONOR.

9           THIS ISN'T A SITUATION WHERE WE GOT TO THE END OF THE

10   CASE AND WE WENT BACK THROUGH ALL OF OUR E-MAIL OR PLEADINGS

11   AND RECONSTRUCTED TIME.

12          THE COURT:  SO LET ME ASK MS. DERMODY.  WHEN DID YOU

13   FIRST GET THE SAVERI LAW FIRM RECORDS?  YOU SAID THE END OF

14   APRIL OF THIS YEAR OR LAST YEAR?

15          MS. DERMODY:  SO THE FIRST DETAIL WE RECEIVED WAS IN

16   JUNE OF 2014.  I THINK IT WAS AFTER WE WERE AT THE HEARING FOR

17   THE PIXAR LUCAS AND WE NEVER SEEN THE DATES.  WE DIDN'T KNOW

18   -- WE WEREN'T AWARE THAT THE DETAILED TIME WAS AVAILABLE AND

19   WE HAVE BEEN ASKING FOR IT, SO WE ASKED MR. SAVERI IF WE COULD

20   HAVE IT, SO WE GET IT THEN.

21          THE COURT:  HOW LONG HAD YOU BEEN ASKING FOR IT?

22          MS. DERMODY:  WE STARTED IN I THINK AUGUST OF 2012.

23          MR. SAVERI:  AND WE HAD DISCUSSIONS, YOUR HONOR,

24   ABOUT WHAT'S THE RIGHT TIME TO DO THAT, AND CONSISTENT WITH

25   THE COURT'S PRE-TRIAL ORDER, WE HAD THOSE CONVERSATIONS AND

26   HADN'T REACHED AN AGREEMENT ON IT.  ONCE WE DID, WE EXCHANGED

27   THE TIME.

28          MS. DERMODY:  TO BE COMPLETELY ACCURATE, LEIFF,

1    CABRASER WERE PREPARED TO GIVE THE TIME ON ANY DAY OF ANY

2    MONTH OF ANY YEAR, AND WE ASKED -- I THINK DOZENS OF TIMES IN

3    WRITING.

4          MR. SAVERI:  AND THAT -- YOUR HONOR, THAT IS -- I AM

5    SORRY, BUT IT IS INCORRECT TO SAY THAT THERE WERE DOZENS OF

6    REQUESTS FOR OUR TIME AND THAT THE TIME WAS AVAILABLE AT ANY

7    MOMENT.  CERTAINLY MY TIME WAS AVAILABLE.  PURSUANT TO THE

8    COURT'S ORDER, WE HAD TO REACH AN AGREEMENT ON WHEN THAT WAS

9    GOING TO BE EXCHANGED, AND THAT WHEN WE DID, WE EXCHANGED IT,

10   AND WE DID IT SINCE THEN.

11         MR. GLACKIN:  BRANDON GLACKIN FROM LEIFF CABRASER.

12   I JUST WANT TO NOTE THAT I DISAGREE WITH THAT RECOUNTING OF

13   THE FACTS.  MR. SAVERI AND I PERSONALLY AGREED TO EXCHANGE

14   TIME ON A BI-MONTHLY BASIS IN THE AUTUMN OF 2012.

15         I PROVIDED MY OFFICE WITH, I THINK, FIFTY FIVE ITEMS

16   OF CORRESPONDENCE, AND MANY OF WHICH WERE REQUESTING THAT HE

17   PROVIDE US EVEN WITH A SUMMARY OF HIS TIME, AND WE VERY RARELY

18   GOT IT.  WE RECEIVED THREE SUMMARIES OF HIS TIME PRIOR TO JUNE

19   OF 2014 WHEN WE FIRST RECEIVED DETAIL.

20         MR. SAVERI:  SO AS I SAID, YOUR HONOR, WE HAD AN

21   ONGOING DIALOGUE AND THAT WE EXCHANGED TIME PURSUANT TO THAT

22   AGREEMENT.

23         MR. GLACKIN:  I WANT TO POINT OUT THAT THE PROPOSED

24   ORDER ABANDONING INTERVENING COUNSEL THAT WE SUBMITTED WITH

25   THE CLASSIFICATION MOTION REFLECTED THE FACT THAT WE AGREED TO

26   EXCHANGE TIME ON A BI-MONTHLY BASIS, AND THAT WAS BACK IN

27   OCTOBER OF 2012.

28         MR. SAVERI:  I DIRECT YOUR ATTENTION TO CMO.  I

```
 1    THINK IT IS DOCKET 67.  THAT IS THE CMO CASE.
 2              THE COURT:  ALL RIGHT.  SO THE SAVERI LAW FIRM
 3    PROVIDED ITS DETAILED TIME IN JUNE OF 2014, AND WHAT HAPPENED?
 4              MR. SAVERI:  AND THEN WE -- THERE WAS -- WE
 5    SUBSEQUENTLY EXCHANGED TIME.  I THINK THE LAST TIME THAT WE
 6    SUBMITTED THE TIME WAS SHORTLY BEFORE THE FEE APPLICATION.  I
 7    SUBMITTED MY TIME.  I PROVIDED MY TIME ELECTRONICALLY TO THE
 8    LEIFF, CABRASER FIRM.  THEY DIDN'T AGREE TO AN EXCHANGE.
 9              THE COURT:  FOR WHICH APPLICATION?
10              MR. SAVERI:  THIS WAS --
11              THE COURT:  IN THIS CASE OR THE OTHER CASE?
12              MR. SAVERI:  -- FOR THIS APPLICATION, YOUR HONOR.
13              THE COURT:  OH, THIS ONE.  OKAY, AND WHEN WAS THAT?
14              MR. SAVERI:  IT WAS SHORTLY BEFORE THE PAPERS WERE
15    DRAFTED.  I PROVIDED MINE TO THEM.
16              THE COURT:  MAY 7TH THEY WERE DUE.  IS THAT RIGHT?
17              MR. SAVERI:  RIGHT, AND AFTER THAT, IT TOOK A COUPLE
18    OF DAYS AND I GOT THEIRS FROM THEM.
19              THE COURT:  SO WHEN WOULD THAT BE?  END OF APRIL OF
20    2015?
21              MR. SAVERI:  YES.
22              THE COURT:  AND THEN WHAT HAPPENED AFTER THAT?
23              MR. SAVERI:  SORRY, YOUR HONOR?
24              THE COURT:  WHAT HAPPENED AFTER THAT?
25              MR. SAVERI:  THEN WE EACH HAD EACH OTHER'S TIME, AND
26    WE HAD A DISAGREEMENT ABOUT WHETHER THE TIME -- ABOUT WHAT WAS
27    GOING TO BE INCLUDED IN THE MOTIONS, AND I AND BERGER,
28    MONTAGUE FILED THE MOTION OF SUPPORTING THE 81.125 MILLION
```

1    DOLLAR FEE APPLICATION ON BEHALF OF EACH OF THE FOUR FIRMS.

2          THEN LEIFF, CABRASER FILED A MOTION ON BEHALF OF THE

3    THREE FIRMS SIGNED BY THE THREE FIRMS SHORTLY THEREAFTER, AND

4    THAT IS WHY WE HAVE TWO SEPARATE SETS OF MOTIONS, AND THEN

5    SUBSEQUENTLY, YOUR HONOR, AFTER SOME DIALOGUE WITH THE

6    ATTORNEYS OF LEIFF, CABRASER, SUBMITTED A SUPPLEMENTAL

7    DECLARATION THAT CORRECTED SOME OF THE ERRORS IN MY TIME SHEET

8    AND PROVIDED A FULL AND COMPLETE DESCRIPTION OF MY

9    TIME-KEEPING PRACTICES.

10         THE COURT:  MR. VAN NEST, HAVE YOU EVER SEEN THIS

11   BEFORE?

12         MR. VAN NEST:  DISPUTE OVER FEES?

13         THE COURT:  YES.

14         MR. VAN NEST:  CERTAINLY, BUT I HAVEN'T SEEN

15   ANYTHING QUITE LIKE THIS.

16         THE COURT:  HAVE YOU EVER SEEN TWO SEPARATE

17   COMPETING MOTIONS FOR ATTORNEY'S FEES?

18         MR. VAN NEST:  SURE.

19         THE COURT:  OKAY.

20         MR. SAVERI:  AND I --

21         THE COURT:  AND HOW DID THOSE GET RESOLVED?

22         MR. VAN NEST:  WELL, BY THE COURT AFTER REVIEWING

23   THE EVIDENCE.

24         THE COURT:  I WAS HOPING -- COULD YOU HELP ME OUT

25   HERE OF JUST LIKE SCROLLING THROUGH ALL OF THOSE BILLING

26   RECORDS.

27         MR. VAN NEST:  WE HAVEN'T DONE THAT.  WE HAVEN'T

28   BEEN INVOLVED IN ANYTHING LIKE THAT, YOUR HONOR.

```
 1              THE COURT:  I UNDERSTAND, AND I UNDERSTAND YOUR
 2   POSITION THAT YOU CAN'T IN THIS CASE, BUT I'M JUST SAYING IN
 3   YOUR EXPERIENCE IN OTHER CASES, HAVE YOU SEEN A CASE WHERE
 4   THERE HAVE BEEN DISPUTES OVER THE RELIABILITY OF A
 5   CO-COUNSEL'S TIMING IN BILLING?
 6              MR. VAN NEST:  NO, I HAVEN'T.
 7              MR. SAVERI:  I WOULD SAY TWO THINGS, YOUR HONOR.
 8   ONE, I CERTAINLY HAVE BEEN IN SITUATIONS ANALOGOUS TO THIS
 9   WHERE PLAINTIFF'S COUNSEL HAD DISAGREEMENTS ABOUT FEE
10   APPLICATIONS AND SUBMITTED THEIR OWN.
11              THE COURT:  OKAY.
12              MR. SAVERI:  I HAVE, AND SO THIS IS NOT
13   UNPRECEDENTED FOR ME.  I WOULD SAY WHAT IS UNPRECEDENTED IS
14   THE FIRST TIME IN MY CAREER THAT I HAVE HAD ANYBODY CHALLENGE
15   MY TIME-KEEPING PRACTICES.
16              THE COURT:  YOU WERE AT LEIFF, CABRASER.  IS THAT
17   THE WAY YOU USED TO KEEP TIME THERE?
18              MR. SAVERI:  ABSOLUTELY, YOUR HONOR.  AS I SAID TO
19   YOU A FEW MINUTES AGO, WHAT I DESCRIBED AS MY TIME-KEEPING
20   PRACTICES ARE THE TIME-KEEPING PRACTICES THAT I FOLLOWED AT
21   MCCUTCHEON, DOYLE, ANDERSON IN THE EIGHTIES WHEN I STARTED AND
22   THEN LEIFF CABRASER IN '92, AND I KEPT THEM AND FOLLOWED THOSE
23   TIME-KEEPING PRACTICES SINCE THEN, AND SO AGAIN, YOUR HONOR,
24   WHEN YOU SAID CONTEMPORANEOUS TIME RECORDS, I FOLLOWED MY
25   PRACTICE AND I DESCRIBED WHAT MY PRACTICE IS AND --
26              THE COURT:  DID LEIFF, CABRASER HAVE ANY PROBLEMS
27   WITH YOUR BILLING PRACTICES AND YOUR ATTORNEY'S FEES REQUESTS
28   WHILE YOU WERE A PARTNER AT LEIFF, CABRASER?
```

1     MR. SAVERI:  NOT THAT I'M AWARE OF, YOUR HONOR, AND

2  THE FIRM EARNED AND RECOVERED MILLIONS OF DOLLARS.

3     THE COURT:  DID THEY EVER REJECT ANY OF THE

4  ATTORNEY'S FEES BECAUSE YOUR BILLING WAS UNRELIABLE?

5     MR. SAVERI:  ABSOLUTELY NOT, YOUR HONOR, AND I WAS

6  CERTAINLY IN DISPUTES WITH OTHER LAW FIRMS IN ANALOGOUS

7  SITUATIONS WHERE SUPERIOR COURT IN SAN FRANCISCO LOOKED AT OUR

8  TIME AND FOUND NOTHING WRONG WITH MY TIME-KEEPING.

9     THE COURT:  SO WHAT IS GOING ON HERE?  ARE YOU

10  FIGHTING OVER THE FEES OR WHAT IS --

11     MR. SAVERI:  WE HAVE NO AGREEMENT ON ALLOCATION,

12  YOUR HONOR, RIGHT NOW, YOUR HONOR.

13     THE COURT:  OH.  I FIGURED THERE WAS SOME

14  BOTTOM-LINE ISSUE.

15     MR. SAVERI:  AND, YOUR HONOR, I GUESS I DO WANT TO

16  SAY THIS --

17     THE COURT:  SO WHEN YOU LEFT LEIFF, CABRASER, IS

18  THAT HOW WOULD YOU SPLIT UP FEES?

19     MR. SAVERI:  NO.  I HAD A PARTNERSHIP AGREEMENT.

20     THE COURT:  THAT GOVERNS THIS CASE?

21     MR. SAVERI:  NO, ABSOLUTELY NOT.  IT HAD TO DO WITH

22  THE WORK THAT -- WHO WAS DOING WHAT WORK GOING FORWARD, AND

23  WHO WAS GOING TO DO WHAT WORK.  I HAVE TO SAY, YOUR HONOR,

24  THAT DESPITE THIS, I ACTUALLY THINK THE TWO FIRMS HAVE WORKED

25  REALLY WELL TOGETHER AND ACHIEVED AN HISTORIC RESULT, AND I

26  REALLY REGRET THAT THIS IS COMING UP IN A WAY THAT ON THIS

27  DATE BECAUSE I THINK WE ARE BOTH SO PROUD OF WHAT WE WERE ABLE

28  TO ACHIEVE, BUT NONETHELESS, WE ARE HERE, AND THIS HAS BEEN

1    RAISED.

2              THE COURT:  SO YOU HAVE NO ALLOCATION BETWEEN LEIFF,

3    CABRASER, GRANT & EISENHOFER AND --

4              MR. SAVERI:  BERGER & MONTAGUE.

5              THE COURT:  AND YOUR FIRM, THERE IS NO AGREEMENT

6    ABOUT ALLOCATION OF THE FEES?

7              MR. SAVERI:  CORRECT,

8              THE COURT:  THIS WILL CONVENIENTLY CUT YOU OUT?

9              MS. DERMODY:  THERE IS NO MODIFICATION HERE, YOUR

10   HONOR, TO DO ANYTHING TO THE SAVERI LAW FIRM.  WE ACTUALLY --

11             THE COURT:  WHY DIDN'T YOU OBJECT TO HIS FEES WITH

12   THE LUCAS AND PIXAR SETTLEMENT HE SUBMITTED HIS FEES TO?

13             MS. DERMODY:  WE SUBMITTED OUR DETAILED FEES ONLY TO

14   YOUR HONOR TO SUPPORT THAT SETTLEMENT.  THAT IS ALL WE

15   SUBMITTED TO YOUR HONOR.

16             THE COURT:  RIGHT, BUT IF YOU HAD CONCERNS WITH HIS

17   BILLINGS SINCE AUGUST OF 2012, CERTAINLY YOU WOULD HAVE

18   OBJECTED TO THE SAME UNRELIABLE BILLING FOR A SETTLEMENT THAT

19   WAS PRELIMINARY APPROVED AUGUST, 2014 AND FINAL WAS MAY OF

20   2014.

21             MR. SAVERI:  YES, YOUR HONOR.

22             THE COURT:  I DON'T UNDERSTAND.  IF THERE HAS BEEN

23   ONGOING KNOWLEDGE OF UNRELIABILITY OF THE SAVERI LAW FIRM'S

24   FEES SINCE AUGUST OF 2012, WHY WOULD YOU NOT BRING IT TO MY

25   ATTENTION WHEN THE PIXAR SETTLEMENT -- WHEN I APPROVED THE

26   FIVE MILLION DOLLARS IN ATTORNEY'S FEES?

27             MR. SAVERI:  I QUARREL WITH THE WORD UNRELIABILITY,

28   BUT I EXPLAINED HOW I KEEP MY TIME.

1          MS. DERMODY:  SO THERE IS TWO ISSUES HERE.  ONE IS

2    WHEN DID WE HAVE A CONCERN ABOUT GETTING TIME FROM THE FIRM,

3    AND WHEN DO WE ACTUALLY HAVE THE TIME AND DID IT RAISE

4    QUESTIONS FOR US AND --

5          THE COURT:  I REQUIRED THE DETAILED BILLING FOR THE

6    APPROVAL OF FEES IN THE LUCAS PIXAR CASE.

7          MR. SAVERI:  YOUR HONOR, WHAT WAS SUBMITTED WERE

8    SUMMARIES OF TIME SUMMARY OF HOURS, AND THE COLLOQUY THAT CAME

9    UP AT THAT HEARING WAS EXACTLY BECAUSE AT THAT TIME WE HAD NOT

10   SUBMITTED DETAILED BILLING RECORDS, AND YOU SAID TO US AT THAT

11   HEARING, AND THAT IS WHY YOU SAID WHAT YOU SAID:  NEXT TIME WE

12   ARE GOING TO SUBMIT THE -- I DON'T HAVE IT IN FRONT OF ME, BUT

13   I THINK YOU SAID I REQUIRE CONTEMPORANEOUS TIME RECORDS.  THAT

14   WAS THE CONTEXT OF THAT DISCUSSION.

15         THE COURT:  I SEE.

16         MS. DERMODY:  AND, YOUR HONOR, THIS IS WHAT WE

17   THOUGHT WAS THE WAY WE WERE SUPPOSED TO GO AND WHAT WAS OUR

18   OBLIGATIONS TO THE COURT THAT UNTIL WE WERE SERVED BECAUSE WE

19   HAD THE INFORMATION, THAT THERE WAS A PROBLEM, WE WERE

20   SUPPOSED TO WORK IT OUT WITH MR. SAVERI WHICH IS WHAT WE TRIED

21   TO DO, AND WE HAD MANY CONVERSATIONS THAT WE WERE ASSURED BY

22   MR. SAVERI THAT THE TIME ISSUES WE SEE IN THE SUMMARIES WOULD

23   BE ADDRESSED, AND WE BELIEVED UP UNTIL MAY 7TH OF THIS YEAR

24   THAT THEY WOULD BE ADDRESSED, AND WE KNEW ON MAY 7TH FINALLY

25   THAT THEY WERE NOT GOING TO BE ADDRESSED, AND THAT THEY WERE

26   GOING TO BE SHARED WITH THE COURT, AND THAT WAS THE POINT AT

27   WHICH WE SAID MR. SAVERI, THERE HAS TO BE A CORRECTIVE

28   DISCLOSURE.  THERE HAS TO BE.  OTHERWISE WE ARE ASKING THE

1    COURT TO RELY ON INFORMATION THAT WE HAVE A GOOD FAITH VIEW OF

2    THAT IS NOT APPROPRIATE FOR THE COURT TO RELY ON.

3           AT THAT POINT IT WAS A CHOICE EITHER COME TO THE

4    COURT AND SHARE OUR CONCERNS OR ASK MR. SAVERI TO DO A FURTHER

5    DISCLOSURE WHICH IS WHAT HE DID, AND WE THOUGHT THAT WITH THAT

6    AT LEAST THE COURT WOULD HAVE A RECORD TO UNDERSTAND WHY THE

7    REQUEST WAS BEING MADE ONLY TO RELY ON THREE OF THE FOUR

8    FIRMS' LOAN STAR.

9           THIS IS NOT FOR PURPOSES OF ALLOCATION.  THIS IS

10   PURELY TO EXECUTE OUR ETHICAL OBLIGATION TO THE TRIBUNAL AND

11   SAY, YOUR HONOR, HERE IS WHAT YOU CAN RELY ON.  THIS IS

12   APPROPRIATE FOR THE CROSS-CHECK AND TO CREATE THAT RECORD THAT

13   SERVES THE CLASS AND THE CLASS SETTLEMENT PROCESS, AND IN

14   TERMS OF THE FEE ALLOCATION, I FEEL THAT WAS A LITTLE BIT OF A

15   TRICKY TRICKSTER KIND OF RESTITUTION OF THE HISTORY BECAUSE WE

16   HAD MANY CONVERSATIONS WITH MR. SAVERI ABOUT AN ALLOCATION.

17          WE SAID NONE OF OUR CONCERNS ABOUT HONESTY TO THE

18   TRIBUNAL HAD ANYTHING TO DO WITH ALLOCATION.  WE'RE HAPPY TO

19   HAVE AN ALLOCATION SPLIT WITH YOU THAT IS VERY GENEROUS TO

20   YOU.  MR. SAVERI ACCEPTED THAT SPLIT, AND WE HAD ALL OF THESE

21   ISSUES GOING ON.  EVEN WITH ALL THE ISSUES, WE SAID WE STILL

22   WILL HONOR THAT SPLIT.

23          WE ARE NOT COMING TO COURT TO TRY TO HARM YOU.  WE

24   WILL HONOR THE SPLIT.  ON TUESDAY OF THIS WEEK MR. SAVERI SAID

25   NO, THERE IS NO DEAL, SO WE WALK INTO COURT TODAY NOT HAVING A

26   DEAL -- NOT BECAUSE WE DON'T WANT TO OFFER ONE -- NOT BECAUSE

27   WE DON'T WANT TO PROTECT THE RECORD, BUT BECAUSE MR. SAVERI

28   DOESN'T WANT ONE, AND I DON'T KNOW WHY HE DOESN'T WANT ONE.

1        OUR ONLY GOAL HERE TODAY IS TO BE HONEST TO THE

2   COURT.  WE JUST DON'T WANT TO BENEFIT FROM THE COURT MAKING A

3   LOAN STAR MULTIPLIER DECISION THAT HAS US, LYING TO THE COURT

4   IN OUR VIEW, SO IF IT HURTS US AND WE KNOW THAT THIS IS NOT IN

5   OUR SELF-INTEREST TO HAVE RAISED THIS, WE THINK IT IS OUR

6   DUTIES AS OFFICERS OF THIS COURT TO BE HONEST WITH YOUR HONOR,

7   AND TO CREATE THAT RECORD SO YOUR HONOR CAN MAKE A DECISION

8   THAT BENEFITS THIS SETTLEMENT AND HELPS THIS CLASS AND SAVES

9   US ALL IN THE APPELLATE RECORD.

10       WE ARE FULL OF REGRET THAT THIS IS WHERE WE ARE

11  TODAY.  WE DID NOTHING BUT TRY TO PREVENT THIS DAY FROM

12  HAPPENING FOR YEARS IN THIS CASE -- THROUGH MANY

13  CONVERSATIONS, THROUGH MANY WRITINGS, THROUGH MANY EFFORTS --

14  I CAN ASSURE YOU THROUGH MEDIATION, WE HAVE TRIED EVERYTHING

15  TO TRY TO AVOID THIS MOMENT BEFORE YOUR HONOR, AND I'M VERY

16  SORRY -- VERY, VERY SORRY THAT WE'RE TALKING ABOUT THIS AT

17  THIS STAGE OF THE CASE.

18       MR. SAVERI IS COMPLETELY CORRECT.  WE ARE SO PROUD

19  OF THE SETTLEMENT.  WE DID WORK WELL TOGETHER.  THIS IS AN

20  EXCELLENT RESULT FOR THE CLASS, AND I COULD NOT BE MORE PROUD

21  OF MY TEAM BACK AT THE FIRM.  IT IS TERRIBLE TO SPEND THE LAST

22  MINUTES OF THE CASE AS LAWYERS TALKING ABOUT THE FEES.  IT IS

23  JUST OBNOXIOUS, AND I HATE TO BE ONE OF THEM DOING IT.

24       THE ONLY GOAL HERE TODAY IS TO MAKE SURE THAT THE

25  COURT'S RECORD IS BASED ON RELIABLE INFORMATION.  I HAVE NO

26  FURTHER GOAL THAN THAT.  I AM NOT TRYING TO HURT MR. SAVERI.

27       MR. SAVERI:  THERE IS A LOT I AGREE WITH.  TO THE

28  EXTENT THERE WAS QUESTIONS THAT COULD HAVE BEEN RESOLVED, WE

```
 1    HAD THE OPPORTUNITY TO DO IT.  I FRANKLY FEEL THIS WAS LEFT
 2    UNTIL THE END.  EVEN THOUGH THERE WAS KNOWLEDGE AND A
 3    DISCUSSION ABOUT THIS, THERE IS NO AGREEMENT ON ALLOCATION.
 4    THERE HAVE BEEN DISCUSSIONS, BUT, YOU KNOW, FRANKLY, YOUR
 5    HONOR, WHEN THIS CAME UP, I THOUGHT IT WAS THE MOST IMPORTANT
 6    THING TO DO WOULD BE TO COME INTO COURT AND EXPLAIN WHAT I
 7    HAVE DONE, AND THAT IS WHERE WE ARE, AND I DON'T HAVE ANYTHING
 8    ELSE TO ADD TO THAT.
 9              THE COURT:  ALL RIGHT.  WELL, I HAVE FORGOTTEN TO
10    GIVE OUR COURT REPORTER A BREAK.  I NEED TO REGAIN
11    CONSCIOUSNESS.
12              CAN WE TAKE A TEN-MINUTE BREAK AND WE WILL COME
13    BACK?
14              (WHEREUPON, WAS A BREAK IN PROCEEDINGS.)
15              THE COURT:  WELCOME BACK.  I WANT TO SAY FOR THE
16    RECORD WHEN I SAID I WANTED TO REGAIN CONSCIOUSNESS, THAT WAS
17    OBVIOUSLY A JOKE.  IN THIS WHOLE HEARING I HAVE BEEN PAYING
18    ATTENTION.
19              I DIDN'T WANT ANYBODY IN THE COURT TO THINK I WAS
20    ACTUALLY IN A COMA DURING THIS HEARING.  LET ME ASK IF ANY OF
21    OUR OBJECTORS WANT TO BE HEARD AFTER EVERYTHING THAT HAS BEEN
22    SAID TODAY OR HAVE THEY ALL LEFT?  WHO ARE YOU, SIR?
23              THE WITNESS:  MY NAME IS JOHNNY.  I WASN'T
24    OBJECTING, BUT ONLY BE ALLOWED TO SPEAK FOR ONE MOMENT.  THAT
25    IS ALL.
26              THE COURT:  ARE YOU A CLASS MEMBER?
27              THE WITNESS:  YES.
28              THE COURT:  IS THERE ANY OBJECTION FROM THE PARTIES?
```

1   I MEAN NORMALLY YOU HAVE TO GIVE NOTICE THAT YOU WISH TO

2   OBJECT AND APPEAR.

3           THE WITNESS:  I AM GOING TO OBJECT ON THE OFFER

4   INTEL BETWEEN 2005 AND 2008.  I AM SETTLEMENT --

5           THE CLERK:  WE NEED TO SWEAR HIM IN FOR THE RECORD.

6           THE COURT:  YOU HAVE A QUESTION FOR THE CLAIMS

7   ADMINISTRATOR?

8           THE CLERK:  CAN WE GET HIS NAME FOR THE RECORD?

9           THE COURT:  SIR, CAN YOU STATE YOUR NAME FOR THE

10  RECORD AND SPELL IT?

11          THE WITNESS:  MY NAME IS N-K-W-U-S -- N-K-W-U-O.

12          THE COURT:  AND FIRST NAME WAS JOHN?

13          THE WITNESS:  J-O-H-N.  YES.  I'M A CLASS MEMBER.

14  WORKED FOR INTEL BETWEEN 2005 AND 2008, SO I DIDN'T FIND OUT

15  ABOUT THE CLASS ACTION UNTIL THE SOMETIME BETWEEN THE FIRST

16  SETTLEMENT, SO I DON'T KNOW IF THAT CHECKS.  I DON'T KNOW IF

17  I'M QUALIFIED TO GET A CHECK, BUT I'M BEING A MEMBER OF A

18  CLASS.  I WANT TO KNOW HOW DID THAT HAPPEN?

19          THE COURT:  OKAY.  I'M GOING TO ASK MR. HARVEY TO

20  PLEASE FOLLOW UP WITH YOU TO SEE IF YOU ARE A CLASS MEMBER OR

21  NOT, AND IF YOU ARE ENTITLED TO ANY FUNDS OR NOT.

22          THE WITNESS:  THANK YOU.

23          THE COURT:  THANK YOU.

24          THE WITNESS:  YES.

25          THE COURT:  AND ACTUALLY, MR. HARVEY, I WILL LET YOU

26  EXPLAIN -- IT SOUNDS LIKE MS. PEEK THREW YOU UNDER A BUS AT MY

27  CASE MANAGEMENT CONFERENCE.

28          MR. HARVEY:  I WON'T COMMENT, BUT I WILL END WITH

1  WHAT I SAID EARLIER.

2          THE COURT:  SO YOU WERE NOT REQUESTED TO GIVE THE

3  DEPOSITION TRANSCRIPTS TO THE DEFENDANTS IN THAT CASE UNTIL

4  AFTER THE CMC IT SOUNDS LIKE?

5          MR. HARVEY:  CORRECT.

6          THE COURT:  OKAY.

7          MR. HARVEY:  AND THEN I CONTACTED THE DEFENDANTS TO

8  BE INFORMED.

9          THE COURT:  ALL RIGHT.  THIS IS WHAT I WOULD LIKE TO

10  DO.  WHAT I WOULD LIKE TO DO IS HAVE THE -- THIS DOES NOT

11  AFFECT THE TOTAL AMOUNT YOU REQUESTED THE EIGHTY ONE MILLION.

12  THAT IS NO DIFFERENT THAN ANY MEMBERS OF THE CLASS HAVE BEEN

13  NOTIFIED OF THE REQUEST OF THE FULL AMOUNT.

14          MR. SAVERI:  YES, YOUR HONOR.

15          THE COURT:  WHAT I WOULD LIKE THE PARTIES -- ALL THE

16  PLAINTIFFS TO DO IS I WOULD LIKE YOU TO MEET AND CONFER AND GO

17  THROUGH ALL OF THE SAVERI LAW FIRM TIME RECORDS, AND I WANT

18  YOU TO POINT OUT WHERE THERE IS AGREEMENT, WHAT IS ACCURATE

19  AND WHERE YOU THINK IT IS INACCURATE.

20          I WANT A REASON AND EXPLANATION OF WHAT IS

21  UNRELIABLE, UNTRUSTWORTHY, INCORRECT ABOUT THAT ENTRY, AND

22  ONCE I HAVE YOUR STATEMENTS AS TO WHY IT IS OR IS NOT

23  ACCURATE, THEN I CAN MAKE MY OWN ASSESSMENT AFTER THAT, BUT I

24  CAN'T JUST SEND AN ABSTRACT OF THESE BIG NUMBERS:  SIX MILLION

25  DOLLARS.  IT IS ONE WAY OR THE OTHER.

26          MR. SAVERI:  THAT'S PERFECTLY ACCEPTABLE TO ME.  I

27  WILL GO THROUGH WHATEVER PROCESS THE COURT WOULD LIKE TO

28  UNDERTAKE TO GET SATISFIED ABOUT THE RELIABILITY OF MY

1    TIMELINE.  I WOULD GO TO A SPECIAL MASTER TOO.  I AM HAPPY TO

2    GO THROUGH THE PROCESS THAT YOU JUST DESCRIBED.  I WANT TO GET

3    THIS CLARIFIED.  IT IS COMPLETELY UP TO YOU FROM MY

4    PERSPECTIVE, YOUR HONOR.

5              THE COURT:  WELL, ALL OF THIS IS GOING TO DELAY THE

6    FINAL SETTLEMENT.  WE CAN GO THROUGH A SPECIAL MASTER, BUT I

7    AM SURE THAT WILL INCREASE TIME.

8              MR. SAVERI:  WE CAN TRY TO DO IT QUICKLY, BUT I

9    THINK YOU ARE RIGHT.  IF WE HAVE SOME OTHER THIRD PARTY

10   INVOLVED, IT MAY TAKE SOME ADDITIONAL TIME, BUT WE MAY ABLE TO

11   SIT DOWN IN A ROOM AND GET IT DONE BECAUSE TO ME, YOUR HONOR,

12   I THINK WHAT WE ARE TALKING ABOUT IS THE LOAN STAR CROSS-CHECK

13   AND WHAT THE UNDERLYING SUPPORT OF THAT IS, SO WHATEVER WE CAN

14   DO QUICKLY AND EXPEDITIOUSLY I AM FINE WITH.

15             THE COURT:  OKAY.  WELL, I WAS GOING TO GIVE YOU ONE

16   WEEK.

17             MR. SAVERI:  OKAY.

18             THE COURT:  TO SIT DOWN IN A ROOM WITH THREE BINDERS

19   OF ENTRIES.  IS THAT RIGHT ROUGHLY?

20             MR. SAVERI:  IT DEPENDS HOW BIG THE BINDER IS.

21             THE COURT:  OKAY.  I THINK YOU CAN DO IT.  I THINK

22   YOU CAN GO THROUGH ENTRY BY ENTRY AND WRITE WHERE YOU AGREE.

23   WHERE YOU DISAGREE.  WHAT THE BASIS OF THE DISAGREEMENT IS,

24   AND IF YOU NEED TO MAKE ANY ADJUSTMENTS BASED ON THAT PROCESS,

25   PLEASE DO IT.

26             MR. SAVERI:  I'M PERFECTLY COMFORTABLE WITH THAT,

27   YOUR HONOR.

28             THE COURT:  CAN YOU GET THAT DONE BY JULY 16?

1     MR. SAVERI:  YES.

2     MS. DERMODY:  YES, ON OUR SIDE.

3     THE COURT:  OKAY.  SO I WOULD LIKE IT TO BE ONE

4  JOINT DOCUMENT JUST NOTIFYING ME WHERE YOU AGREE AND WHERE YOU

5  DISAGREE AND WHY YOU WERE DISAGREEING.

6     MS. DERMODY:  YES, YOUR HONOR.

7     THE COURT:  OKAY.  NOW, DOES ANYONE BELIEVE THAT WE

8  NEED TO RE-OPEN UP THE DOT DOT PERIOD BASED ON THIS DISPUTE?

9  I DON'T THINK WE DO, BUT I WOULD LIKE TO HEAR FROM THE

10  PARTIES.  I MEAN ALL OF THE CLASS -- I MEAN THIS IS ONLY

11  ASSUMING I'M GOING TO APPROVE THE SETTLEMENT WHICH I'M NOT

12  COMMITTING TO AT THIS MOMENT, BUT THE CLASS WAS TOLD AND THE

13  REQUEST WOULD BE EIGHTY ONE --

14     MR. SAVERI:  81.125.

15     THE COURT:  81.125.  THEY HAVE SEEN THE REQUEST THAT

16  HAVE BEEN MADE.  I OBVIOUSLY WOULD URGE YOU TO UPLOAD YOUR

17  JULY 16TH FILING ON THE HIGH TECH WEBSITE ON THE SAME DAY.  I

18  AM GOING TO ASK YOU TO BOTH FILE IT AND POST IT ON THE WEBSITE

19  SO NOBODY HAS TO PAY PACER FEES TO ACCESS IT.  WHAT DO YOU

20  THINK, MR. VAN NEST?

21     MR. VAN NEST:  NO, YOUR HONOR, I DON'T THINK THERE

22  IS ANY CAUSE TO RE-OPEN THE OPT-OUT PERIOD.  AGAIN THE NOTICE

23  WAS CLEAR.  THE MAXIMUM AMOUNT OF FEES REQUESTED BY CLASS

24  COUNSEL WAS SET FORTH.  THE AMOUNT REWARDED IS CERTAINLY NOT

25  GOING TO EXCEED THAT.  THEREFORE, I SEE NO REASON TO RE-OPEN

26  THE OPT-OUT PERIOD.  THERE HAVE BEEN VERY FEW OPT-OUTS AND

27  VERY FEW OBJECTORS FOR A CLASS OF SIXTY FIVE THOUSAND PEOPLE,

28  SO WE DON'T THINK THERE IS ANY REASON TO RE-OPEN THE OPT-OUT

1    PERIOD.

2             THE COURT:  OKAY.  ALL RIGHT.  WHAT ELSE DID WE HAVE

3    TO RESOLVE?  WOULD THIS TAKE CARE OF IT -- THIS JOINT FILING

4    ON THE SAVERI LAW FEES?

5             MR. SAVERI:  I AM COMFORTABLE WITH IT, YOUR HONOR.

6    I HOPE YOU ARE BECAUSE I BELIEVE IT WILL.

7             MS. DERMODY:  ONE THING THAT WE TALKED ABOUT

8    EARLIER, I WANT TO MAKE SURE THAT WE CLARIFIED SOMETHING.

9    YOUR HONOR HAD ASKED ABOUT THE LEIFF, CABRASER FEE BEING

10   ELEVEN POINT FIVE SOMETHING.  I THINK WE FERRETED OUT WHERE

11   THAT CAME FROM.  WE LOOKED AT MR. SAVERI'S OWN FEE DECLARATION

12   WHICH IS DOCKET 1072, AND WE THINK THAT THAT IS WHERE THAT

13   NUMBER CAME FROM, BUT MY FEE DECLARATION REPORTS A DIFFERENT

14   NUMBER WHICH IS DOCKET 1083, SO I THINK IF YOU LOOK AT MY FEE

15   DECLARATION DESCRIBING LEIFF, CABRASER'S TIME, YOU WILL GET

16   THE ACTUAL LEIFF, CABRASER TIME, AND THE SAVERI DECLARATION

17   HAS A DIFFERENT NUMBER.

18            THE COURT:  THIS IS WHAT I WANT.  WHEN YOU FILE YOUR

19   JOINT FILING ON THE 16TH, I WOULD LIKE YOU TO ALL EITHER COME

20   TO AGREEMENT OR COME TO A DISAGREEMENT ON EVERYONE'S FEES AND

21   EVERYONE'S COSTS.

22            MR. SAVERI:  THE LOAN STAR?

23            THE COURT:  YES.

24            MS. DERMODY:  OKAY.

25            THE COURT:  YES.  EVERYTHING -- I DON'T WANT THESE

26   COMPETING NUMBERS WHERE IT IS DIFFICULT TO FIGURE OUT WHAT IS

27   BEING INCLUDED, WHAT IS NOT BEING INCLUDED IN THE OTHER

28   NUMBER, SO WHATEVER YOU'RE ASKING FOR FOR COMPENSATION, I

1    WOULD LIKE IT IN THIS DOCUMENT AND TO HAVE ANY DISCREPANCIES

2    EXPLAINED.

3            MS. DERMODY:  UNDERSTOOD.

4            THE COURT:  OKAY.  I HAVE READ EVERYTHING THAT HAS

5    BEEN SUBMITTED, SO I DON'T THINK ANY ADDITIONAL ARGUMENT IS

6    NECESSARY ON ANY OTHER ISSUES.  IF SOMEONE IS DYING TO SAY

7    SOMETHING, I MIGHT GIVE YOU HALF A SECOND, BUT I HAVE READ

8    EVERYTHING SO --

9            MR. GIRARD:  I'M DAN GIRARD ON BEHALF OF MR. DEVINE.

10   I DON'T NEED TO PRESENT ARGUMENT.  I WANTED TO MAKE CLEAR I AM

11   HERE IF YOU HAVE ANYTHING RELATING TO OUR FEE APPLICATION AND

12   MR. DEVINE'S APPLICATION FOR INCENTIVE AWARD, AND IF YOU WANT

13   TO HEAR FROM ME, I CERTAINLY DON'T WANT TO TAKE ANY OF THE

14   COURT'S TIME, BUT I AM HERE AND I AM PREPARED TO RESPOND.

15            I WAS IN PART CONCERNED ABOUT SOME OF THE STATEMENTS

16   THAT WERE MADE ABOUT MR. DEVINE AND HIS INCENTIVE AWARD, AND

17   I'M PREPARED TO ADDRESS THOSE, BUT IF YOU DON'T NEED TO HEAR

18   FROM ME AGAIN, I DON'T NEED TO TAKE THE COURT'S TIME ON THAT.

19            THE COURT:  LET ME ASK:  DO ANY PLAINTIFF'S COUNSEL

20   HAVE ANY OBJECTIONS TO MR. GIRARD'S LAW FIRM'S BILLING?  YOU

21   FIND THOSE ARE UNRELIABLE?

22            MR. SAVERI:  I DO NOT, YOUR HONOR.

23            MS. DERMODY:  NO.  THE BILLING RECORDS WE HAVE NO

24   OBJECTION TO.

25            THE COURT:  OKAY.  ALL RIGHT.  IF YOU WANT TO SAY

26   HALF A SECOND ON MR. DEVINE'S SERVICES.

27            MR. GIRARD:  YEAH.  JUST HALF A SECOND.  I HAVE

28   REPRESENTED CLASS REPRESENTATIVES IN CLASS LITIGATION FOR OVER

1    25 YEARS.  I HAVE NEVER SEEN A CLASS REPRESENTATIVE DO WHAT

2    MR. DEVINE DID HERE, AND I KNOW THAT THE RESULTS SPEAKS FOR

3    ITSELF IN TERMS OF THE NINETY MILLION THAT HE ADDED TO THE

4    SETTLEMENT.

5            WHAT DOESN'T COME THROUGH I THINK IS THE LEVEL OF

6    INSIGHT THAT HE BROUGHT TO THE PROCESS, THE PERSONAL

7    COMMITMENT, AND I KNOW FROM WORKING WITH HIM, THE AMOUNT OF

8    STRESS THAT HE EXPERIENCED AS A RESULT OF THIS WHICH I THINK

9    REALLY WAS TREMENDOUS.  HE I THINK OWNED THIS, AND THE

10   CONTRIBUTIONS THAT HE MADE ARE TRULY BEYOND WHAT IS REALLY

11   EVER EXPECTED OF A CLASS REPRESENTATIVE, AND IT IS NOT

12   DEROGATION OF ANY OF THE CONTRIBUTIONS BY ANY OF THE OTHER

13   CLASS REPRESENTATIVES, BUT I THINK EVERYBODY RECOGNIZES THAT

14   HE HAS MADE A SPECIAL CONTRIBUTION HERE.

15           WE CITED AUTHORITY TO THIS COURT FROM SOME OF THE OTHER

16   CASES IN WHERE CLASS REPRESENTATIVES HAVE INCURRED THE RISK OF

17   FUTURE PROFESSIONAL CONSEQUENCES, AND IN THOSE CASES THESE

18   TYPES OF AWARDS HAVE BEEN MADE A NUMBER OF TIMES.  THOSE

19   INCLUDE THE INGRAM CASE AND NAVAREZ PHARMACEUTICALS AND

20   TITANIUM DIOXIDE.  I THINK HE'S WITHIN THE RANGE OF THOSE

21   TYPES OF INCENTIVE AWARDS.

22           I DON'T THINK ANYONE WOULD SERIOUSLY QUESTION THAT HE

23   WILL SUFFER PROFESSIONAL CONSEQUENCES.  IF YOU PULL HIS NAME

24   UP RIGHT AWAY, YOU DETERMINE THE ROLE HE PLAYED IN THIS

25   LITIGATION, AND GIVEN THE NATURE OF THIS INDUSTRY, I THINK IT

26   IS SOMETHING THAT HE'S REASONABLY FEARFUL OF AND THE INCENTIVE

27   AWARD HE'S REQUESTING IS REALLY AT MOST THE MOST -- WILL BRING

28   HIM BACK TO EVEN ONE OF THE THINGS HE TOLD ME WAS HE REALLY

1  DOESN'T WANT TO END UP WORSE OFF FOR HAVING TAKEN THIS ON, SO

2  THANK YOU FOR HEARING THOSE COMMENTS, AND I WANTED TO

3  EMPHASIZE FROM MY OWN PERSPECTIVE HAVING WORKED WITH HIM THAT

4  I THINK HE MADE A TREMENDOUS CONTRIBUTION TOWARDS THE

5  ADDITIONAL AMOUNT THAT WAS BROUGHT TO BEAR HERE IN RESOLVING

6  THIS CASE, SO THANKS AGAIN, YOUR HONOR.

7          THE COURT:  OKAY.  MR. VAN NEST?

8          MR. VAN NEST:  OUR ONLY COMMENT IS WITH RESPECT TO

9  MR. GIRARD'S FEE REQUEST.  WE URGE THE COURT TO TAKE A CLOSE

10 LOOK.  FROM OUR STANDPOINT, IT IS NOT SUBJECT TO OUR AGREEMENT

11 WITH CLASS COUNSEL, AND AT THIS POINT WE ARE LOOKING TO SEE AS

12 MANY DOLLARS AS POSSIBLE GOING TO THE CLASS, AND THAT IS ALL I

13 WILL SAY ABOUT THAT.

14         THERE HAS BEEN NO DISCUSSION ABOUT IT TODAY AND WE

15 HAVEN'T FILED AN OBJECTION TO IT, BUT WE URGE THE COURT TO

16 GIVE THE SAME LEVEL OF SCRUTINY TO THAT APPLICATION WHICH IS

17 APART FROM CLASS COUNSEL.

18         THE COURT:  LET ME ASK YOU, OTHER THAN FILING AN

19 OBJECTION FOR THE PRELIMINARY APPROVAL HEARING, RIGHT, FILING

20 A RESPONSE ON THE WRIT PETITION TO THE NINTH CIRCUIT, WHAT HAS

21 BEEN THE VISIBILITY OF HIM PARTICIPATING IN MEDIATION WITH

22 JUDGE PHILLIPS?

23         MR. VAN NEST:  OF MR. DEVINE'S COUNSEL?

24         THE COURT:  YES.

25         MR. VAN NEST:  VERY LIMITED.  WE DID NOT DIRECTLY

26 COMMUNICATE WITH MR. DEVINE'S COUNSEL.  DURING THE MEDIATION

27 PROCESS WE COMMUNICATED WITH CLASS COUNSEL ONLY.

28         THE COURT:  AND SO HE WASN'T AT THE MEDIATIONS?

```
1    WERE THESE PHYSICAL OR --
2              MR. VAN NEST:  THEY WERE OVER THE PHONE.  SUBSEQUENT
3    TO THE ORIGINAL SETTLEMENT, YOUR HONOR, THEY WERE OVER THE
4    PHONE AND IN SMALLER GROUPS, BUT WE DIDN'T HAVE ANY DIRECT
5    CONTACT WITH MR. GIRARD.
6              THE COURT:  AND THAT IS TRUE OF ALL DEFENSE COUNSEL?
7              MR. VAN NEST:  IT IS.
8              MR. GIRARD:  THE WAY IT WORKED, YOUR HONOR, IF I CAN
9    OFFER OUR PERSPECTIVE IS THAT AFTER YOU REJECTED THE ORIGINAL
10   THREE HUNDRED TWENTY FIVE MILLION DOLLAR SETTLEMENT, WE SPOKE
11   DIRECTLY WITH THE MEDIATOR, LAYNE PHILLIPS, AND THEN WE SPOKE
12   WITH HIM IN CONJUNCTION WITH CLASS COUNSEL.
13             THERE WOULD HAVE BEEN NO REASON FOR US TO DEAL
14   DIRECTLY WITH MR. VAN NEST.  HE HAD THE OPPORTUNITY TO MAKE A
15   FORMAL OBJECTION TO OUR FEE.  WE DID NOT NEGOTIATE FOR ANY
16   TYPE OF CLEAR-SAILING AGREEMENT WITH HIM, AND WE DID NOT
17   RECEIVE ONE.
18             OBVIOUSLY FROM OUR PERSPECTIVE HE'S THE LAST PERSON
19   TO COMMENT ON OUR FEE APPLICATION BECAUSE WE'RE THE PEOPLE WHO
20   CAUSED HIS CLIENTS TO HAVE TO PAY ANOTHER NINETY MILLION
21   DOLLARS, SO I WOULD ASK THAT YOU KEEP IN MIND WHATEVER HE'S
22   SAYING IN TERMS OF THE PERSPECTIVE.
23             THE COURT:  YOU THINK THE COURT HAD NO INVOLVEMENT
24   WITH THAT?  I HAD NO INVOLVEMENT WITH ALL THIS, MR. DEVINE,
25   AND I --
26             MR. GIRARD:  OBVIOUSLY, YOUR HONOR, IT WAS YOUR
27   RULING.
28             THE COURT:  I HAVE HEARD ENOUGH.  I WANT TO GIVE
```

```
1    PERSPECTIVE.  HE KNOWS DEFENSE COUNSEL'S PERSPECTIVE.  HE

2    KNOWS WHO HE HAS DEALT WITH, AND I THINK THAT IS A FAIR

3    QUESTION.  HE IS NOT COMMENTING ON YOUR BILLING RECORDS, BUT I

4    THINK IT IS A FAIR QUESTION:  WHO HAS HE DEALT WITH, OKAY, SO

5    HAVE YOU HAD ANY DEALINGS WITH MR. DEVINE'S COUNSEL OTHER THAN

6    AT THE HEARING ON THE PRELIMINARY APPROVAL -- I GUESS THE TWO

7    PRELIMINARY APPROVAL HEARINGS IN THIS CASE, AND TODAY'S FINAL

8    HEARING?

9             MR. VAN NEST:  NO, YOUR HONOR.  NONE.

10            MR. GIRARD:  YOUR HONOR, WE OBVIOUSLY UNDERSTAND IT

11   WAS THIS COURT'S RULING.  OF COURSE THAT REQUIRED THE

12   DEFENDANTS TO COME BACK TO THE TABLE.  ALL WE'RE POINTING OUT

13   IS THAT WHEN WE APPEARED, NO ONE ELSE WAS ARGUING AN

14   OPPOSITION TO PRELIMINARY APPROVAL, AND THE RECORD STANDS FOR

15   WHAT IT IS.

16            I JUST THINK IT IS IMPORTANT TO KEEP IN MIND THAT

17   THE CONTRIBUTIONS THAT WE MADE TO THE SETTLEMENT IN THIS CASE

18   ARE NOT IN ANY WAY TIED TO WHAT DEALINGS WE HAVE WITH MR. VAN

19   NEST OR ANY OTHER DEFENSE COUNSEL.

20            I THINK THEY'RE CLEAR FROM THE RECORD AND THEY ARE

21   SET FORTH IN OUR PAPERS.

22            THE COURT:  SO FROM DEFENSE COUNSEL'S PERSPECTIVE,

23   YOUR INTERACTION WAS RECEIVING THE OBJECTIONS ON THE

24   PRELIMINARY APPROVAL, THE RESPONSE TO THE WRIT PETITION AND

25   THEN HAVING THESE COURT HEARINGS?

26            MR. VAN NEST:  THAT IS RIGHT, YOUR HONOR.

27            THE COURT:  NO WRITTEN CORRESPONDENCE?

28            MR. VAN NEST:  NO.
```

1     MR. GIRARD:  THAT IS NOT CORRECT, YOUR HONOR.  WE

2  WROTE THEM A LETTER THAT I BELIEVE IS IN THE RECORD IN THE

3  COURSE OF THE -- AT THE POINT WHERE THE PETITION FOR WRIT OF

4  MANDAMUS HAD BEEN FILED, IT WAS OUR POSITION THAT THAT WRIT

5  PETITION WAS MOOTED BY THE FACT THAT THE SETTLEMENT AGREEMENT

6  IN THIS CASE HAD A PROVISION IN IT THAT SAID THAT IF THE COURT

7  DENIED PRELIMINARY APPROVAL, THE SETTLEMENT WOULD EXPIRE

8  AND --

9     THE COURT:  DID YOU RECEIVE THAT LETTER?

10    MR. VAN NEST:  I'M SURE WE DID, YOUR HONOR.

11    THE COURT:  BUT YOU DIDN'T RESPOND TO THAT LETTER?

12    MR. VAN NEST:  I WOULD HAVE TO CHECK THE DOCKET TO

13 SEE IF WE DID.  WE MAY HAVE RESPONDED TO IT.

14    MR. GIRARD:  HE DID RESPOND, AND HE DISAGREED.

15    THE COURT:  THAT IS THE ONLY CORRESPONDENCE IS THE

16 ONE LETTER AND THE RESPONSE?

17    MR. VAN NEST:  EXCUSE ME, YOUR HONOR?

18    THE COURT:  THAT IS THE ONLY CORRESPONDENCE WITH

19 MR. DEVINE'S COUNSEL IS THE LETTER IN THE RESPONSE?

20    MR. VAN NEST:  I BELIEVE SO.

21    THE COURT:  AND I UNDERSTAND DEFENSE COUNSEL WILL

22 NOT KNOW EVERYTHING THAT YOU HAVE DONE, BUT I AM CURIOUS TO

23 KNOW WHAT THEIR INTERACTION --

24    MR. GIRARD:  YOUR HONOR, COMMENTS I WAS GOING TO

25 MAKE IT IS UNFORTUNATE THAT THIS CAME OUT BECAUSE WHAT I WAS

26 GOING TO SAY IS THAT WHEN MR. DEVINE APPROACHED US, HE NEEDED

27 COUNSEL, AND WHAT WE AGREED TO WAS TO PRESENT HIS POSITION TO

28 THE COURT.

1      WHAT HE DID WAS EXTRAORDINARY I THOUGHT.  IN THE

2  SENSE OF RETAINING INDEPENDENT COUNSEL, AND I THOUGHT WHAT

3  THIS COURT DID WAS EXTRAORDINARY IN THE SENSE OF CONSIDERING

4  THE ARGUMENTS THAT WE PRESENTED AT THE PRELIM APPROVAL HEARING

5  ON THE THREE HUNDRED TWENTY FIVE MILLION DOLLAR SETTLEMENT.

6      THE COURT:  SO YOU THINK THE COURT ONLY USED YOUR

7  ARGUMENTS AND ONLY GOT YOUR ARGUMENT.  GO AHEAD AND SAY

8  WHATEVER YOU WOULD LIKE.  GO AHEAD.  I WILL GIVE YOU THE LAST

9  WORD.  GO AHEAD.

10      MR. GIRARD:  I'M NOT TRYING TO GET THE LAST WORD.

11  WHAT I WAS TRYING TO CONCLUDE BY SAYING IS I THINK THE COURT'S

12  WILLINGNESS TO CONSIDER THE ARGUMENTS WE MADE AND THE COURT'S

13  DEDICATION TO THE CASE IS WHAT LED TO THE RESOLVE HERE.  WE

14  ARE PROUD OF THE CONTRIBUTIONS WE MADE.  WE THINK THE RECORD

15  STANDS ON ITS OWN AND I THINK THE COURT WILL AWARD AN

16  APPROPRIATE FEE.

17      MR. VAN NEST:  THANK YOU, YOUR HONOR.

18      THE COURT:  THANK YOU ALL.

19      (MATTER ADJOURNED.)

20

21

22

23

24

25

26

27

28

1

2                           CERTIFICATE OF REPORTER

3

4

5

6           I, THE UNDERSIGNED PRO-TEM COURT REPORTER OF THE

7    UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF

8    CALIFORNIA, 450 GOLDEN GATE AVENUE, SAN FRANCISCO, CALIFORNIA,

9    DO HEREBY CERTIFY:

10          THAT THE FOREGOING TRANSCRIPT, CERTIFICATE

11   INCLUSIVE, CONSTITUTES A TRUE, FULL AND CORRECT TRANSCRIPT OF

12   MY SHORTHAND NOTES TAKEN AS SUCH OFFICIAL COURT REPORTER OF

13   THE PROCEEDINGS HEREINBEFORE ENTITLED AND REDUCED BY

14   COMPUTER-AIDED TRANSCRIPTION TO THE BEST OF MY ABILITY.

15

16

17

18

19

20   _____
     KIM THORPE, CSR
21   CERTIFICATE NUMBER 9318                    DATED: 7/12/15

22

23

24

25

26

27

28