UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| IN RE: HIGH-TECH EMPLOYEE ANTITRUST LITIGATION<br><br>THIS DOCUMENT RELATES TO:<br><br>**ALL ACTIONS** | Case No. 11-CV-02509-LHK<br><br>**ORDER GRANTING PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT WITH DEFENDANTS ADOBE SYSTEMS INCORPORATED, APPLE INC., GOOGLE INC., AND INTEL CORPORATION** |

This matter is before the Court on Plaintiffs' motion for final approval of the proposed class action settlement ("Settlement") between individual and representative Plaintiffs Michael Devine, Mark Fichtner, Siddharth Hariharan, and Daniel Stover, and the Class they represent (collectively, "Plaintiffs"), and Adobe Systems, Incorporated, Apple Inc., Google Inc., and Intel Corporation (collectively, "Defendants").[1]  Having considered the Motion, the Settling Parties' Settlement Agreement, the pleadings, and other papers filed in this Action, the statements of

---

[1] Representative Plaintiff Brandon Marshall died on December 10, 2013. Mr. Marshall's estate shall receive the settlement share to which Mr. Marshall is entitled pursuant to the terms of the Settlement.

1
Case No. 11-CV-02509-LHK
ORDER GRANTING PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT WITH DEFENDANTS ADOBE SYSTEMS INCORPORATED, APPLE INC., GOOGLE INC., AND INTEL CORPORATION

counsel and the parties, and all of the arguments and evidence presented at the Final Approval Hearing held on July 9, 2015, and for good cause shown, IT IS HEREBY ORDERED as follows:

Unless otherwise defined herein, all terms that are capitalized herein shall have the meanings ascribed to those terms in the Settlement Agreement.

The Court has jurisdiction over the subject matter of the Settlement Agreement with respect to and over all parties to the Settlement Agreement, including all Class Members and Defendants.

**I.       The Settlement Is Fair, Adequate, and Reasonable**

In evaluating a proposed class action settlement under Federal Rule of Civil Procedure 23(e), the standard is whether the settlement "is fundamentally fair, adequate, and reasonable." *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982); *accord Torrisi v. Tucson Elec. Power Co*., 8 F.3d 1370, 1375 (9th Cir. 1993). A district court may consider some or all of the following factors when making this determination: "the strength of plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement." *Officers for Justice*, 688 F.2d at 625. The Court finds that the Settlement is fair, adequate, and reasonable in light of these factors.

First, the Settlement reflects the strength of Plaintiffs' case as well as the Defendants' position. This Court has been "exposed to the litigants and their strategies, positions and proof," *Hanlon v. Chrysler Corp*., 150 F.3d 1011, 1026 (9th Cir. 1988) (quoting *Officers for Justice*, 688 F.2d at 626), and finds that the judicial policy favoring the compromise and settlement of class action suits is applicable here. *See Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992). The Court is also satisfied that the Settlement was reached after arm's length

2
Case No. 11-CV-02509-LHK
ORDER GRANTING PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT WITH DEFENDANTS ADOBE SYSTEMS INCORPORATED, APPLE INC., GOOGLE INC., AND INTEL CORPORATION

negotiations by capable counsel, and was not a product of fraud, overreaching, or collusion among the parties. *Id*. at 1290-91.

Second, the risks, expense, complexity, and likely duration of further litigation also support the Court's final approval of the Settlement. Following the Court's August 8, 2014 denial of preliminary approval of an earlier attempt to settle this case, ECF No. 974,[2] the parties resumed litigation of pretrial matters. Plaintiffs filed a reply in support of their motion for application of the *per se* standard, ECF No. 988, and Defendants requested leave to file a supplemental opposition, ECF Nos. 990, 990-1, which Plaintiffs opposed, ECF No. 992. Plaintiffs also filed a motion to unseal all papers associated with their motion to compel, ECF No. 991, which Defendants opposed, ECF No. 994; *see also* ECF No. 1029.

Meanwhile, on September 4, 2014, Defendants filed a Petition for a Writ of Mandamus with the United States Court of Appeals for the Ninth Circuit, seeking an order vacating the Court's denial of preliminary approval and directing the Court to preliminarily approve the $324,500,000 settlement. 9th Cir. Case No. 14-72745, Dkt. ("9th Cir. Dkt.") 1. On September 22, 2014, the Ninth Circuit issued an order stating that Defendants' "petition for a writ of mandamus raises issues that warrant a response," ordered Plaintiffs to file a response, set a date for Defendants' reply, and ordered that upon completion of briefing the matter be placed on the next available merits panel calendar for oral argument. 9th Cir. Dkt. 2; ECF No. 993. Plaintiffs (and Michael Devine separately) opposed Defendants' petition, 9th Cir. Dkts. 4, 6, and Defendants filed a reply, 9th Cir. Dkt. 10. Putative amici curiae Chamber of Commerce of the United States of America, California Chamber of Commerce, and economic scholars filed motions for leave to file amici curiae briefs in support of the petition, 9th Cir. Dkts. 8, 9, which the Ninth Circuit referred to the panel to be assigned to hear the merits of the petition, 9th Cir. Dkt. 15. Plaintiffs

---

[2] All "ECF" references are to the docket of Case No. 11-CV-02509-LHK in the Northern District of California.

3
Case No. 11-CV-02509-LHK
ORDER GRANTING PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT WITH DEFENDANTS ADOBE SYSTEMS INCORPORATED, APPLE INC., GOOGLE INC., AND INTEL CORPORATION

(and Michael Devine separately) opposed the motions for leave to file amici curiae briefs. 9th Cir. Dkts. 13, 16. The Ninth Circuit scheduled oral argument on the petition for March 13, 2015. 9th Cir. Dkt. 19. In light of the Settlement with Plaintiffs, Defendants filed an unopposed motion to dismiss the mandamus petition on January 30, 2015. 9th Cir. Dkt. 23. The Ninth Circuit granted the motion to dismiss on February 2, 2015. 9th Cir. Dkt. 24.

At the time of the current Settlement, the following motions remained pending: Defendants' motion to exclude Dr. Matthew Marx's testimony; Plaintiffs' motion to exclude Defendants' experts' testimony; Plaintiffs' motion for application of the *per se* standard; and Defendants' motions *in limine*. In addition, Plaintiffs and Defendants continued to engage in the exchange of pretrial disclosures and conferences regarding trial exhibits, witnesses, the joint pretrial statement, the authentication of business records and potential depositions related thereto, and many other issues. ECF No. 1033, Declaration of Kelly M. Dermody in Support of Preliminary Approval ("Dermody Decl.") ¶¶ 12, 14. The outcome at trial was uncertain, providing additional risks to both sides. In addition, any trial outcome would be subject to potential appeals, which would have (at best) substantially delayed any potential recovery achieved for the Class at trial.

Third, the extent of discovery completed and the stage of proceedings support approval. The factual investigation and legal analysis in the four years of this litigation were substantial. During the discovery process, Class Counsel reviewed over 3.2 million pages of documents, and took or defended nearly 100 depositions, including deposing Defendant fact witnesses, taking or defending numerous expert depositions, and defending the five Class Representative depositions. Dermody Decl. ¶ 4. Defendants also propounded document requests, for which Plaintiffs produced over 31,000 pages. *Id.* With expert assistance, Class Counsel analyzed over 15 gigabytes of employment-related compensation and recruiting data, and studied all Defendants'

compensation systems. *Id.* ¶ 5. The discovery process, which is now complete, has been thorough.

Fourth, the Settlement provides for substantial consideration—a total of $415 million (in addition to the $20 million secured earlier through settlements with Intuit, Inc., Lucasfilm Ltd., and Pixar).

Fifth, the views of Plaintiffs' counsel, who are experienced in litigating and settling antitrust and employment class actions, weigh in favor of final approval. *See Linney v. Cellular Alaska P'Ship*, No. 96-3008-DJL, 1997 WL 450064, at *5 (N.D. Cal. July 18, 1997), *aff'd* 151 F.3d 1234 (9th Cir. 1998). Plaintiffs' counsel endorse the Settlement as fair, adequate, and reasonable.

Finally, the reaction of the Class Members supports the Court's final approval of the Settlement. Out of 64,466 Class Members, only 11 submitted objections (about .017 percent of the Class, or about one in every 5,860 Class Members). ECF No. 1089, Supplemental Declaration of Kenneth Jue ("Jue Supp. Decl.") ¶ 3. In addition, only 56 Class Members have opted out of the Settlement (less than .09 percent of the Class). *Id.* ¶ 2. This number of opt-outs is only about one-third the number of Class Members who opted-out of the prior approved settlements with Intuit, Lucasfilm, and Pixar. *See* ECF No. 915-1. This number of opt-outs is also substantially below the 2,579 opt-outs (a rate of 4%) that was required to provide Defendants with a pro rata reduction in the Settlement amount. Thus, Defendants will pay the full $415 million. Such low rates of objections and opt-outs are "indicia of the approval of the class." *Hughes v. Microsoft Corp.*, No. C93-0178C, 2001 WL 34089697, at *8 (W.D. Wash. Mar. 26, 2001) (finding indicia of approval when nine class members out of 37,155, or just over .02%, who received notice submitted objections, and "less than 1%" opted out); *see Sugarman v. Ducati N. Am., Inc.*, No. 5:10-CV-05246-JF, 2012 WL 113361, at *3 (N.D. Cal. Jan. 12, 2012) (objections from 42 of 38,774 class members—more than 0.1 percent, or more than five times the rate of objection as here—is a

5

Case No. 11-CV-02509-LHK
ORDER GRANTING PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT WITH DEFENDANTS ADOBE SYSTEMS INCORPORATED, APPLE INC., GOOGLE INC., AND INTEL CORPORATION

"positive response"); *see also Churchill Vill., LLC v. Gen. Elec.*, 361 F.3d 566, 577 (9th Cir. 2004) (affirming district court's approval of settlement where forty-five of 90,000 class members objected to the settlement (.05 percent), and 500 class members opted out (about .56 percent)).

None of the objections here warranted rejection of the Settlement. *See Browne v. Am. Honda Motor Co.*, No. CV 09-06750 MMM DTBX, 2010 WL 9499072, at *15 (C.D. Cal. July 29, 2010) ("The fact that there is opposition does not necessitate disapproval of the settlement. Instead, the court must independently evaluate whether the objections being raised suggest serious reasons why the proposal might be unfair." (brackets and internal quotation marks omitted)). Overall, the positive response from the Class favors Settlement approval.[3]

Six Class Members out of 64,466 object on the basis (in whole or in part) that the Settlement should be rejected because it should be larger: Shash Basavaraju (aka Shash Schaekar), David Hsu, Loren Kohnfelder, Dimitrios Loulourgas, Devesh Parekh, and Delia Terra. Jue Supp. Decl., Exs. C, D, F, G, H, I, K.

- **Mr. Basavaraju** contends that he was underpaid at Intel beginning in 2004. Jue Supp. Decl., Ex. I. He then says he discussed job opportunities with recruiters from Apple and Google in 2007, and applied to other companies that are not alleged to be part of the misconduct at issue (AMD, IBM, and Honeywell). *Id.* Mr. Basavaraju asserts that, in the last 9 years, he has lost approximately $400,000 in compensation, and lost other personal opportunities. *Id.*

- **Dr. Hsu** believes his pay was suppressed by "at least $10,000 per year" due to Defendants' actions. Jue Supp. Decl., Ex. C. In support of his claim, Dr. Hsu notes that the U.S. Department of Energy offered him a salary that was only $2,000 less than his ending salary at Intel. *Id.* Dr. Hsu objects to any settlement that would pay him less than the full amount of his own estimate of his damages: $40,000. *Id.*

---

[3] Class Members Dr. Hsu, Dr. Veach, and Mr. Zavislak also objected to the request for attorney's fees or the request for Class Representative service awards, which will be addressed separately in the Court's order granting in part and denying in part Class Counsel's requests for fees, costs, and service awards.

6
Case No. 11-CV-02509-LHK
ORDER GRANTING PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT WITH DEFENDANTS ADOBE SYSTEMS INCORPORATED, APPLE INC., GOOGLE INC., AND INTEL CORPORATION

- **Mr. Kohnfelder** asserts that the Court should reject the Settlement "as far too low" because it will not discourage similar misconduct in the future. Jue Supp. Decl., Ex. D. He also believes that each Class Member should be notified by letter of "their approximate compensation" before they have to decide whether to object. *Id.* "The lump sum," says Mr. Kohnfelder, "is not so useful." *Id.*

- **Mr. Loulourgas** objects to the Settlement because it is too low to compensate for his estimate of his damages, should reflect the potential for "punitive damages," and should take into account the "miniscule" probability of a loss at trial. Jue Supp. Decl., Ex. F.

- **Mr. Parekh** objects because damages to the Class are likely larger than what the Class will receive from the Settlement, and he prefers a trial to a settlement. Jue Supp. Decl., Ex. G. Mr. Parekh also objects to the formula for allocating the Settlement, which he says does not adequately redress Google employees whose compensation structure consisted of a relatively low base salary plus a relatively high target bonus. *Id.*, Ex. H.

- **Ms. Terra** objects to the Settlement because it is too low to compensate for her estimate of his damages, should reflect the potential for "punitive damages," and should take into account the "small" probability of a loss at trial. Jue Supp. Decl., Ex. K.

In objecting to the size of the Settlement, none of these Class Members adequately take into account the risks and delays involved in proceeding to trial. They ignore that the Settlement provides the Class with a timely, certain, and meaningful cash recovery, while a trial—and any subsequent appeal—is uncertain, would entail significant additional costs, and in any event would substantially delay any recovery achieved. "'[T]he very essence of a settlement is compromise, a yielding of absolutes and an abandoning of highest hopes.'" *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998) (quoting *Officers for Justice*, 688 F.2d at 624) (affirming settlement approval). "Estimates of what constitutes a fair settlement figure are tempered by factors such as the risk of losing at trial, the expense of litigating the case, and the expected delay in recovery (often measured in years)." *Browne*, 2010 WL 9499072, at *12. Thus, "[t]he fact that a proposed settlement may only amount to a fraction of the potential recovery does not, in and of

7
Case No. 11-CV-02509-LHK
ORDER GRANTING PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT WITH DEFENDANTS ADOBE SYSTEMS INCORPORATED, APPLE INC., GOOGLE INC., AND INTEL CORPORATION

1  itself, mean that the proposed settlement is grossly inadequate and should be disapproved."

2  *Linney*, 151 F.3d at 1242 (internal quotation marks omitted).

3        The reasonableness of the Settlement is also confirmed by comparing it to Plaintiffs'

4  damages estimate. The total settlements achieved in this action exceed 14 percent of Plaintiffs'

5  proposed single damages estimate,[4] a damages estimate Defendants were prepared to vigorously

6  contest. District courts in the Ninth Circuit routinely approve settlements with much larger

7  differences between the settlement amount and estimated damages.[5] The risks Plaintiffs faced in

8  proceeding to trial are discussed in Plaintiffs' prior reply memorandum in support of preliminary

9  approval. *See* ECF No. 938 at 10-14; *see also* ECF No. 1032 at 18-20.

10       That certain Class Members evaluate the risks differently, or would prefer to go to trial

11 despite those risks, does not prevent the Court from granting final approval to the Settlement. *See*

12 *Browne*, 2010 WL 9499072, at *15 ("The fact that there is opposition does not necessitate

13 disapproval of the settlement. Instead, the court must independently evaluate whether the

14 objections being raised suggest serious reasons why the proposal might be unfair." (brackets and

15 internal quotation marks omitted)).

16       Class Members Dr. Hsu, Mr. Kohnfelder, Mr. Loulourgas, Mr. Mills, and Ms. Terra offer

17 details of their individual employment histories to suggest that the amounts they will receive under

18 the Settlement are insufficient to compensate them in full for the amount of wage suppression they

---

[4] $435,000,000 ÷ $3,065,184,307 (ECF No. 856-8, at 21) = ~14.2 percent.

[5] *See, e.g.*, *In re Toys R Us-Del., Inc.–Fair & Accurate Credit Transactions Act (FACTA) Litig.*, 295 F.R.D. 438, 453-54 (C.D. Cal. 2014) (granting final approval of a settlement providing for consideration reflecting 3% of possible recovery ($391.5 million value on exposure up to $13.05 billion)); *Reed v. 1-800 Contacts, Inc.*, No. 12-CV-02359 JM BGS, 2014 WL 29011, at *6 (S.D. Cal. Jan. 2, 2014) (granting final approval where settlement represented 1.7% of possible recovery (net settlement fund of $8,288,719.16, resolving claims worth potentially $499,420,000)); *In re LDK Solar Sec. Litig.*, No. C 07-5182 WHA, 2010 WL 3001384, at *2 (N.D. Cal. July 29, 2010) (granting final approval where settlement was 5% of estimated damages); *In re Linerboard Antitrust Litig.*, 296 F. Supp. 2d 568, 581 & n.5 (E.D. Pa. 2003) (gathering cases where courts approved settlements achieving single-digit percentages of potential recoveries).

would attribute to the alleged conspiracy. Even if individual employees were able to calculate with precision what their individual salaries would have been absent the alleged collusion, such assessments do not take into account the risk, delay, and further costs associated with trial and subsequent appeals.

Lastly, Class Members Mr. Parekh, Mr. Basavaraju, Mr. Smith, and Ms. Terra state that the Settlement is not enough to punish the Defendants for their wrongdoing. These objections fail to account for the gravity of the $415 million settlement, which should send a strong message to Defendants. ECF No. 1073-1, Declaration of Prof. William B. Rubenstein ¶ 41. A settlement does not need to provide for all possible recoverable damages to deter wrongdoing. *See, e.g.*, *United States v. New Jersey*, No. CIV. 87-2331 (HAA), 1995 WL 1943013, at *14 (D.N.J. Mar. 14, 1995) ("The $7.125 million settlement amount satisfies the United States' desire to provide a reasonable amount of compensation to identifiable victims of alleged discrimination and sends a strong message to deter discrimination by other employers.").[6]

Class Member Kenneth Caviasca objects on the basis that "the case makes no sense," specifically that "[c]ross hiring among companies that pay at a similar pay range would have no significant impact on the company expenses or have even have [sic] a long term benefit for the moving employees." Jue Supp. Decl., Ex. B. This objection does not comment on any aspect of the Settlement, but rather opposes Plaintiffs' alleged claims as being entirely baseless. *See id.* (urging "all benefactors to donate 100% of proceeds to non-profit charity cause"). Because this objection supports no recovery for the Class, it appears Mr. Caviasca's interests are adverse to the

---

[6] An additional Class Member submitted an anonymous comment, stating that the "settlement is too low." Jue Supp. Decl., Ex. O. This anonymous comment fails to comply with the requirements for objecting to the Settlement. *See* ECF No. 1086-1 ("Notice") at 10. In addition, Nelson Minar submitted a comment with his opt-out request, stating: "I do not feel that the settlement is sufficient." Jue Supp. Decl., Ex. P. The Court concludes that these comments lack merit for the same reasons explained above regarding Class Members who objected on the basis that the Settlement should be larger.

Class, and the objection should therefore be overruled. *See Wren v. RGIS Inventory Specialists*, No. C-06-05778 JCS, 2011 WL 1230826, at *13 (N.D. Cal. Apr. 1, 2011) (overruling objections submitted that "do not go to the fairness of the settlement").

Class Member Albert Smith objects because he prefers to have the case proceed to trial, regardless of *any* settlement amount or potential recovery at trial. "If the jury finds that these corporations did nothing, the defendants deserve to be completely exonerated in public. If the jury finds that they violated the law, I do not care what the jury decides to award the class; I care only that the companies are found guilty." Jue Supp. Decl., Ex. J. Mr. Smith's desire for a trial, regardless of the probability of success or amount of recovery for the Class, is arguably adverse to the interests of the Class, and inconsistent with the well-established principle that "voluntary conciliation and settlement are the preferred means of dispute resolution." *Officers for Justice*, 688 F.2d at 625.

Class Member Prabhakar Kotla objects because he incorrectly estimates that each Class Member will receive an average of only "1%" of what each Class Member received from the earlier settlements with Intuit, Lucasfilm, and Pixar. Jue Supp. Decl., Ex. E. Mr. Kotla erroneously believed that Class Members in the earlier settlements received $140,000 per person. *Id.* In fact, the average Class Member will receive roughly *thirty-three times* more from this Settlement than what the average Class Member received from the earlier settlements with Intuit, Lucasfilm, and Pixar: approximately $5,770 here compared to approximately $173.73 there.

Class Member Davesh Parekh objects to the formula for allocating the Settlement, which he says does not adequately redress Google employees whose compensation structure consisted of a relatively low base salary plus a relatively high target bonus. Jue Supp. Decl., Ex. H. The plan of allocation is based upon each Class Member's relative share of base salary paid on the basis of their employment during the Class period. Settlement Agreement, Ex. B. While each Defendant used a different balance of base salary, bonuses, and equity compensation, all Defendants used

base salary structures in a consistent and uniform manner, linked by systems of internal equity (as confirmed by the expert reports of Dr. Kevin Hallock) that caused the salary structures to move together.  Thus, the formula's reliance on base salary provides a neutral and uniform metric by which to allocate the Settlement, consistent with Plaintiffs' expert opinions.  "A plan of allocation that reimburses class members based on the extent of their injuries is generally reasonable." *In re Oracle Sec. Litig.*, No. C-90-0931-VRW, 1994 WL 502054, at *1 (N.D. Cal. June 18, 1994).  The Settlement's plan of allocation is appropriate.

Class Members Dr. Hsu, Mr. Kohnfelder, Eric Veach, and Mark Zavislak argue that each Class Member should have been provided with estimates of their individual allocation amounts.  Jue Supp. Decl., Exs. C, L, N.  However, a precise award estimate for each Class Member cannot be computed until the Notice Administrator confirms and processes all opt-outs (taking into account opt-outs who thereby will receive nothing and reallocating their shares of the Settlement fund to the remaining Class Members); considers the Court's determination of the requests for attorney's fees, unreimbursed out-of-pocket costs, Named Plaintiff service awards, and Settlement administration costs; processes Defendants' Class Member data; and resolves all data questions.  The Notice provided the Settlement's plan of allocation, apprising Class Members of how the Settlement would be divided.  *See* Notice at 6 ("How much money can I get from the Settlement?").  The Notice also provided the gross Settlement amount, as well as proposed deductions for attorney's fees, unreimbursed out-of-pocket costs, Class Representative service awards, and costs of administering the Settlement.  *Id.* at 6, 8.  Additionally, the Notice provided contact information for Class Counsel.  Hundreds of Class Members contacted Class Counsel directly, through email or telephone, to ask questions.  ECF No. 1090, Declaration of Dean M. Harvey in Support of Final Approval ("Harvey Decl.") ¶ 2.  When Class Members asked questions regarding their individual allocation from the Settlement, Class Members were informed about

how the Settlement's plan of allocation worked, the likely average net recovery, and why a more precise allocation estimate would not be possible until further information became available.[7] *Id.*

Even if an estimate of individual allocation amounts were not provided, Dr. Veach and Mr. Zavislak argue that the Notice should have contained the tools to allow Class Members to estimate their individual fractions of recovery.  In particular, Dr. Veach and Mr. Zavislak object to the Notice's failure to include the "Total of base salaries of all Class Members paid on the basis of employment in Class Positions during the Class Period," which is the denominator in the proposed allocation formula.  *Id.*, Exs. L, N.  The denominator, however, is a fluid number, which will change depending not only on how many potential Class Members opt out, but also on the individual salaries of those who opt out.  That number also could not be calculated with precision at the time the Notice was approved because Defendants were entitled to a pro rata reduction if the number of opt-outs reached 4% of the potential Class.  *See* ECF No. 1033-1, Settlement Agreement, Part VIII.T.  The Notice's failure to include the allocation formula's denominator, which could not have been calculated with precision at the time the Notice was approved, was therefore not error.

Accordingly, the Court finds that the Settlement is fair, adequate, and reasonable within the meaning of Rule 23(e) of the Federal Rules of Civil Procedure.

## II.   The Notice Program Was Appropriate

Federal Rule of Civil Procedure 23(c)(2)(B) requires that the settling parties provide settlement Class Members with "the best notice that is practicable under the circumstances,

---

[7] The Court notes that subsequent to the July 9, 2015 hearing on final approval, Class Counsel consulted with the Settlement Administrator and created individual allocation estimates for Dr. Hsu, Mr. Kohnfelder, Dr. Veach, and Mr. Zavislak. ECF No. 1106. Class Counsel provided those estimates to the four objectors on July 16, 2015, and asked whether, after receiving this information, any would request a late opt-out of the pending Settlement if given the option. *Id.* All four objectors declined to seek a late opt-out upon receiving estimates of their individual allocations. ECF No. 1109.

including individual notice to all members who can be identified through reasonable effort.  The notice must clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3)."

The Court finds that the notice program, previously approved by the Court, ECF No. 1054 at 5, has been implemented and complies with Rule 23(c)(2)(B).  Notice was sent to all Class Members by first class mail.  The Notice, which was reviewed and approved by this Court, provided a clear description of who is a member of the Class, Class Members' rights, and options under the Settlement.  The Notice explained how to receive money from the Settlement, how to opt out of the Settlement, how to object to the Settlement, how to obtain copies of relevant papers filed in the case, and how to contact Class Counsel and the Notice Administrator.

The Court ordered Heffler Claims Group (the claims administrator previously appointed regarding the prior settlements with Intuit, Inc., Lucasfilm Ltd., and Pixar) to transmit Class Member information in a secure manner to Gilardi & Co., LLC (the notice administrator appointed to administer the instant Settlement; "Notice Administrator").  ECF No. 1054 at 6-7.  Heffler did so.  ECF No. 1086, Declaration of Kenneth Jue ("Jue Decl.") ¶ 2.  The Court ordered that the Notice Administrator shall, by April 6, 2015, "cause the Settlement Notice to be mailed by first-class mail, postage prepaid, to Class Members pursuant to the procedures described in the Settlement, and to any Class Member who requests one; and, in conjunction with Class Counsel, shall maintain the case-specific website providing case information, court documents relating to the Settlement and the Notice."  The Notice Administrator did so.  *Id.* ¶¶ 3-7.  The Court found

that this notice "satisfies the requirements of the Federal Rules of Civil Procedure and of due process and, accordingly, is approved for dissemination to the Class." ECF No. 1054 at 5.

Class Members had a variety of methods by which to view relevant documents, contact the Notice Administrator or Class Counsel, opt out of the Settlement, or object to the Settlement. These methods included mail, telephone, a case-specific website, and email. Jue Decl. ¶¶ 3-7. For instance, the Notice Administrator received 780 calls to its toll-free telephone number. *Id.* ¶ 6. The Notice Administrator received 56 requests for mailed copies of the Notice over the phone, by email, and by mail. *Id.* ¶ 7. The Notice Administrator sent a copy of the Notice whenever one was requested. *Id.* Class Members also contacted Class Counsel, through both email and telephone, with questions and requests. Harvey Decl. ¶ 2. Class Counsel answered Class Member questions and responded to requests. *Id.*

## III. The Plan of Allocation Is Fair, Reasonable, and Adequate

The Plan of Allocation is fair, reasonable, and adequate. It will provide each Class Member with a fractional share based upon each Class Member's total base salary received during the alleged conspiracy period. *See In re Oracle Sec. Litig.*, 1994 WL 502054, at *1 ("A plan of allocation that reimburses class members based on the extent of their injuries is generally reasonable."). The Plan of Allocation here is a simple, efficient way to allocate the Settlement funds to Class Members based on the extent of their injuries, which are proportional to their differing salaries. Such fractional shares are "cost-effective, simple, and fundamentally fair." *In re Airline Ticket Comm'n Antitrust Litig.*, 953 F. Supp. 280, 285 (D. Minn. 1997); *see also In re Elec. Carbon Prods. Antitrust Litig.*, 447 F. Supp. 2d 389, 404 (D.N.J. 2006) (finding pro rata distribution "eminently reasonable and fair to the class members."). The Court also notes that there will be no reversion of unclaimed funds to any Defendant. Accordingly, the Plan of Allocation is approved.

**IT IS SO ORDERED.**

Dated: September 2, 2015

_____
LUCY H. KOH
United States District Judge