United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| IN RE: HIGH-TECH EMPLOYEE ANTITRUST LITIGATION<br><br>THIS DOCUMENT RELATES TO:<br><br>**ALL ACTIONS** | Case No. 11-CV-02509-LHK<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTIONS FOR ATTORNEY'S FEES, REIMBURSEMENT OF EXPENSES, AND SERVICE AWARDS** |

Before the Court are motions for attorney's fees, reimbursement of expenses, and service awards arising out of the class action settlement between individual and representative plaintiffs Michael Devine, Mark Fichtner, Siddharth Hariharan, and Daniel Stover, and the Class they represent (collectively, "Plaintiffs"), and Adobe Systems, Incorporated, Apple Inc., Google Inc., and Intel Corporation (collectively, "Defendants").  One motion is brought on behalf of the law firms Lieff, Cabraser, Heimann & Bernstein, LLP ("LCHB"), the Joseph R. Saveri Law Firm, Inc. ("JSLF"), Berger & Montague, P.C. ("B&M"), and Grant & Eisenhofer PA ("G&E")

1   (collectively, "Class Counsel").  ECF No. 1075[1] ("Class Counsel Mot.").  Another motion is

2   brought by JSLF and joined by B&M.  ECF No. 1072 ("JSLF Mot.").  A third motion requesting

3   attorney's fees separately from Class Counsel is brought by counsel for plaintiff Michael Devine,

4   Girard Gibbs LLP ("GG" or "Devine Counsel").  ECF No. 1068 ("Devine Counsel Mot.").

5          Having considered the submissions of the parties, the arguments made at the July 9, 2015

6   final approval hearing, the relevant law, and the record in this case, the Court hereby GRANTS in

7   part and DENIES in part the motions for attorney's fees, reimbursement of expenses, and service

8   awards.

9   **I.      BACKGROUND**

10         From 2009 to 2010, the U.S. Department of Justice's ("DOJ") Antitrust Division

11  investigated the employment and recruitment practices of various Silicon Valley technology

12  companies, including Defendants.  *See In re High-Tech Emp. Litig.*, 856 F. Supp. 2d 1103, 1109

13  (N.D. Cal. 2012).  DOJ filed its complaint against Defendants on September 24, 2010.  *Id.*

14  Defendants stipulated to proposed final judgments in which they agreed that DOJ's complaint had

15  stated claims under federal antitrust law and agreed to be "enjoined from attempting to enter into,

16  maintaining or enforcing any agreement with any other person . . . to refrain from soliciting, cold

17  calling, recruiting, or otherwise competing for employees of the other person."  *Id.* at 1109-10.

18  The D.C. District Court entered the stipulated proposed final judgments on March 17, 2011.  *Id.* at

19  1110.

20         On May 4, 2011, LCHB filed a class action in Alameda County Superior Court on behalf

21  of individual and representative plaintiff Siddharth Hariharan.  ECF No. 2, Ex. A ("Compl.").  The

22  complaint, which was removed to federal court on May 23, 2011, *see* ECF No. 1, charged that the

23  alleged bilateral agreements were part of a common understanding among Defendants to fix and

24  suppress employee compensation and to restrict employee mobility, *see* Compl. ¶¶ 48-85.  Upon

25

26         [1] All "ECF" references are to the docket of Case No. 11-CV-02509-LHK in the Northern
    District of California.

27                                                          2

28  Case No. 11-CV-02509-LHK
    ORDER GRANTING IN PART AND DENYING IN PART MOTIONS FOR ATTORNEY'S FEES,
    REIMBURSEMENT OF EXPENSES, AND SERVICE AWARDS

investigating the similar claims of Mark Fichtner, Daniel Stover, Brandon Marshall, and Michael Devine, LCHB filed four additional cases, and invited B&M and G&E to participate in the case on behalf of Plaintiffs.  These cases were reassigned to the undersigned judge on August 5, 2011, ECF No. 60, and consolidated on September 12, 2011, ECF No. 64.  The following day, Plaintiffs, with LCHB as interim lead counsel, filed a Consolidated Amended Complaint.  ECF No. 65. After Mr. Saveri departed LCHB and founded JSLF, JSLF joined the case as co-lead counsel in May 2012.  ECF No. 136.

On October 13, 2011, Defendants jointly moved to dismiss Plaintiffs' Consolidated Amended Complaint.  ECF No. 79.  In addition, defendant Lucasfilm filed a separate motion to dismiss on October 17, 2011.  ECF No. 83.  On April 18, 2012, the Court granted in part and denied in part the joint motion to dismiss and denied Lucasfilm's separate motion to dismiss.  ECF No. 119.

On October 1, 2012, Plaintiffs filed a motion for class certification.  ECF No. 187.  The motion sought certification of a class of all of Defendants' salaried employees or, in the alternative, a narrower class of Defendants' technical employees.  *Id.* at 1.  On April 5, 2013, after full briefing and a hearing, the Court denied class certification with leave to amend.  ECF No. 382. On May 10, 2013, Plaintiffs filed their amended class certification motion, seeking to certify only the narrower class of technical employees.  ECF No. 418.

On July 12 and 30, 2013, while the amended class certification motion was pending, Plaintiffs settled with Pixar, Lucasfilm, and Intuit for $20 million.  ECF Nos. 453, 489.  The Court granted Plaintiffs' motion for preliminary approval of those settlements on October 30, 2013. ECF No. 540.  The Court held a fairness hearing on May 1, 2014, ECF No. 913, and granted final approval of the settlements with Pixar, Lucasfilm, and Intuit as well as the accompanying requests for attorneys' fees, expenses, and service awards over five objections on May 16, 2014, ECF Nos. 915, 916.  The Court awarded Class Counsel $5 million (or 25%) in attorney's fees and $3,699,844.31 in expenses.  ECF No. 916 at 5.  The class members received approximately

3

1    $173.73 per person as a result of the settlements with Pixar, Lucasfilm, and Intuit.  Judgment was

2    entered as to Pixar, Lucasfilm, and Intuit on June 20, 2014.  ECF No. 947.

3            After Pixar, Lucasfilm, and Intuit had settled, the Court certified a class of technical

4    employees on October 24, 2013.  ECF No. 531.  Defendants petitioned the Ninth Circuit to review

5    that order under Rule 23(f) of the Federal Rules of Civil Procedure.  After full briefing, including

6    the filing of an amicus brief by the U.S. and California Chambers of Commerce and the National

7    Association of Manufacturing urging the Ninth Circuit to grant review, the Ninth Circuit denied

8    review on January 14, 2014.  ECF No. 594.

9            While the Rule 23(f) appeal was pending, Defendants filed a total of five motions for

10   summary judgment, ECF Nos. 554, 556, 560, 561, 564, and filed motions to strike and to exclude

11   the testimony of Plaintiffs' principal expert on antitrust impact and damages, Dr. Edward Leamer,

12   who had opined that the total damages to the class exceeded $3 billion in wages class members

13   would have earned in the absence of the anti-solicitation agreements, ECF Nos. 557, 570.  The

14   Court denied four of the summary judgment motions on March 28, 2014, ECF No. 771, and on

15   April 4, 2014, denied the fifth summary judgment motion, denied the motion to exclude Dr.

16   Leamer, and denied in large part the motion to strike Dr. Leamer's testimony, ECF No. 788.

17           On April 24, 2014, counsel for Plaintiffs and counsel for Defendants sent a joint letter to

18   the Court indicating that the parties had reached a settlement.  ECF No. 900.  This settlement, in

19   the amount of $324.5 million, was reached two weeks before the final pretrial conference and one

20   month before the trial was set to commence.  *See* ECF No. 904.  On May 22, 2014, in accordance

21   with the schedule set by the Court, Plaintiffs filed their motion for preliminary approval.  ECF No.

22   920.  Class Counsel sought up to $81,125,000 (or 25% of the settlement) in attorney's fees.  *Id.* at

23   21.  Plaintiff Michael Devine ("Mr. Devine") objected that the settlement was too low and,

24   represented by GG, filed an opposition to preliminary approval on June 5, 2014.  ECF No. 934.

25   The other named plaintiffs filed a reply on June 12, 2014.  ECF No. 938.  The Court held a

26   hearing on June 19, 2014, ECF No. 940, and denied preliminary approval on August 8, 2014, ECF

27                                                                   4

28   Case No. 11-CV-02509-LHK
     ORDER GRANTING IN PART AND DENYING IN PART MOTIONS FOR ATTORNEY'S FEES,
     REIMBURSEMENT OF EXPENSES, AND SERVICE AWARDS

United States District Court
Northern District of California

No. 974.

As a result, the parties resumed litigation of pretrial matters.  Plaintiffs filed a reply in support of their motion for application of the per se standard, ECF No. 988, and Defendants requested leave to file a supplemental opposition, ECF Nos. 990, 990-1, which Plaintiffs opposed, ECF No. 992.  Plaintiffs also filed a motion to unseal all papers associated with their motion to compel, ECF No. 991, which Defendants opposed, ECF No. 994; *see also* ECF No. 1029.

Meanwhile, on September 4, 2014, Defendants filed a petition for a writ of mandamus with the Ninth Circuit, seeking an order vacating the Court's denial of preliminary approval and directing the Court to preliminarily approve the $324.5 million settlement.  9th Cir. Case No. 14-72745, Dkt. ("9th Cir. Dkt.") 1.  On September 22, 2014, the Ninth Circuit issued an order stating that Defendants' "petition for a writ of mandamus raises issues that warrant a response," ordered Plaintiffs to file a response, set a date for Defendants' reply, and ordered that upon completion of briefing the matter be placed on the next available merits panel calendar for oral argument.  9th Cir. Dkt. 2; ECF No. 993.  Plaintiffs (and Mr. Devine separately) opposed Defendants' petition, 9th Cir. Dkts. 4, 6, and Defendants filed a reply, 9th Cir. Dkt. 10.  Putative amici curiae U.S. and California Chambers of Commerce and economic scholars filed motions for leave to file amicus briefs in support of the petition, 9th Cir. Dkts. 8, 9, which the Ninth Circuit referred to the panel to be assigned to hear the merits of the petition, 9th Cir. Dkt. 15.  Plaintiffs (and Mr. Devine separately) opposed the motions for leave to file amicus briefs.  9th Cir. Dkts. 13, 16.  The Ninth Circuit scheduled oral argument on the petition for March 13, 2015.  9th Cir. Dkt. 19.

On January 15, 2015, Plaintiffs filed a second motion for preliminary approval, this time asking the Court to approve a settlement with Defendants in the amount of $415 million.  ECF No. 1032.  Mr. Devine joined in the motion.  ECF No. 1041.  In light of the settlement with Plaintiffs, Defendants filed an unopposed motion to dismiss the mandamus petition on January 30, 2015.  9th Cir. Dkt. 23.  The Ninth Circuit granted the motion to dismiss on February 2, 2015.  9th Cir. Dkt. 24.

Case No. 11-CV-02509-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTIONS FOR ATTORNEY'S FEES,
REIMBURSEMENT OF EXPENSES, AND SERVICE AWARDS

United States District Court
Northern District of California

At the time the current settlement was reached, the following motions remained pending: Defendants' motion to exclude Dr. Matthew Marx's testimony; Plaintiffs' motion to exclude Defendants' experts' testimony; Plaintiffs' motion for application of the per se standard; and Defendants' motions in limine.  In addition, Plaintiffs and Defendants continued to exchange pretrial disclosures and hold discussions regarding trial exhibits, witnesses, the joint pretrial statement, the authentication of business records, and potential depositions related thereto.  *See* ECF No. 1033 ¶¶ 12, 14.

A hearing was held on March 2, 2015, ECF No. 1051, and the Court granted preliminary approval of the $415 million settlement on March 3, 2015, ECF No. 1054.  The Court-approved Notice, which was mailed to class members on April 6, 2015, indicated that Class Counsel would "ask the Court to approve at the Fairness Hearing payment from the Settlement Fund of out-of-pocket costs not to exceed $1,200,000"; that Class Counsel would "ask the Court to approve payment of attorneys' fees of up to approximately 19.54% percent (or $81,125,000) of the Settlement Fund"; that "the law firm of Girard Gibbs LLP, counsel for Class Representative Michael Devine, [would] seek a fee of up to approximately 1.09% of the Settlement Fund (or $4,523,500) for its participation in the settlement approval process and the negotiation of the $415 million settlement"; and that Class Counsel would "ask the Court to approve at the Fairness Hearing payments of up to $160,000 to each of the individual Class Representatives, as well as a payment of up to $160,000 to the estate of former Class Representative Brandon Marshall," who passed away in December 2013.  ECF No. 1086-1 at 8.

On May 7, 2015, the instant motions for attorney's fees, reimbursement of expenses, and service awards were filed.  *See* Class Counsel Mot.; JSLF Mot.; Devine Counsel Mot.  Class Counsel requested the same $81,125,000 that had been requested in connection with the rejected settlement but that now amounts to about 19.5% of the settlement fund.  Class Counsel Mot. at 1. Class Counsel also requested $1,184,810.98 in unreimbursed expenses and up to $160,000 in service awards for each of the class representatives, including the estate of Brandon Marshall.  *Id.*

6

United States District Court
Northern District of California

at 2.  JSLF filed a separate motion indicating its support for Class Counsel's request for fees and service awards.  JSLF Mot. at 1-2.  JSLF asked separately for its unreimbursed expenses.  *Id.* at 13.  Devine Counsel, for its part, requested $4,523,500 in attorney's fees, equal to roughly 5% of the $90.5 million increase between the rejected settlement and the current settlement.  Devine Counsel Mot. at 23.  Devine Counsel also sought a service award of $160,000 for Mr. Devine.  *Id.* Devine Counsel did not seek to recover $16,603.06 in expenses on top of its fee request.  *Id.* at 19.

On May 21, 2015, Mr. Saveri submitted a supplemental declaration in support of JSLF's motion for attorney's fees, reimbursement of expenses, and service awards.  ECF No. 1085, Supplemental Declaration of Joseph R. Saveri ("Saveri Supp. Decl.").  The declaration explained JSLF's timekeeping practices and revised JSLF's lodestar amount and request for unreimbursed expenses.  *Id.* ¶¶ 5-14.  Specifically, JSLF deleted 245.93 hours in incorrectly billed time and thus reduced JSLF's lodestar by $189,204.80.  *Id.* ¶ 5.  JSLF also urged the Court to award to Class Counsel the full $1,200,000 in unreimbursed expenses listed in the Notice, $589,194.94 of which would be for JSLF's expenses.  *Id.* ¶ 14.

On June 15, 2015, Plaintiffs filed their motion for final approval, ECF No. 1087, which Mr. Devine joined, ECF No. 1091.  Plaintiffs' supporting documentation indicated that of the 64,466 class members, 56 of them had opted out of the settlement, while eleven had objected to the settlement.  ECF No. 1089, Supplemental Declaration of Kenneth Jue ("Jue Supp. Decl.") ¶¶ 2-3.  Of the eleven objectors, three lodged objections regarding the requests for attorney's fees or service awards: David D. Hsu, Eric Veach, and Mark Zavislak ("Mr. Zavislak").  *Id.*, Exs. C, L-N.

On June 29, 2015, Devine Counsel filed a reply in support of its motion for attorney's fees, reimbursement of expenses, and service awards.  ECF No. 1092.  Class Counsel did so as well. ECF No. 1093 ("Class Counsel Reply").

On July 9, 2015, the Court held a fairness hearing on Plaintiffs' motion for final approval of the $415 million settlement with Defendants.  ECF No. 1096.  Of the three class members who

Case No. 11-CV-02509-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTIONS FOR ATTORNEY'S FEES,
REIMBURSEMENT OF EXPENSES, AND SERVICE AWARDS

United States District Court
Northern District of California

objected on the basis of attorney's fees or service awards, only Mr. Zavislak attended the hearing. Mr. Zavislak stated his objections in open court, and the Court entertained responses to those objections from the parties. ECF No. 1101, Final Approval Hearing Transcript ("Final Approval Tr.") at 15:10-30:21. The Court also heard argument from Class Counsel and Devine Counsel in support of their respective motions for attorney's fees, reimbursement of expenses, and service awards.

At the July 9 hearing, the Court became aware for the first time of the nature of the dispute between LCHB and JSLF—co-lead Plaintiffs' counsel—regarding Class Counsel's lodestar amount. LCHB's motion, purportedly brought on behalf of Class Counsel, had asked the Court to use a lodestar of $14,279,278.50, *see* Class Counsel Mot. at 20, while JSLF had asked for a Class Counsel lodestar of $20,594,097.75, *see* Saveri Supp. Decl. ¶ 5. The reason for this discrepancy, the Court was informed at the hearing, was because LCHB and G&E were concerned about the reliability of JSLF's timekeeping practices and, therefore, the accuracy of JSLF's billing records. Final Approval Tr. at 37:15-38:27. Consequently, the lodestar LCHB had submitted on behalf of Class Counsel did not include the lodestar of JSLF. *Id.* at 38:13-16. Mr. Saveri, speaking on behalf of JSLF, disputed LCHB's allegations and vouched for the reliability of his firm's timekeeping practices. *Id.* at 39:7-13.

In light of this discrepancy,[2] the Court ordered co-lead Plaintiffs' counsel to meet and confer regarding JSLF's timekeeping records. In particular, the Court ordered co-lead Plaintiffs' counsel to go through JSLF's billing records, entry by entry, and indicate to the Court in a joint filing which entries LCHB disputed and why. Final Approval Tr. at 66:15-25. Based on that joint filing, due by July 16, 2015, *id.* at 67:28-68:5, the Court would be able to identify an appropriate lodestar for Class Counsel, taking into account the contributions of all four firms that comprise

---

[2] As suggested above, there was another discrepancy in Class Counsel's filings with the Court. Namely, LCHB requested $1,184,810.98 in unreimbursed expenses for Class Counsel, *see* Class Counsel Mot. at 2, while JSLF requested $1,200,000 for the same, *see* Saveri Supp. Decl. ¶ 14.

8

United States District Court
Northern District of California

Class Counsel in this case.

Following a brief extension requested by co-lead Plaintiffs' counsel, ECF No. 1104, co-lead Plaintiffs' counsel submitted a joint filing on July 20, 2015, indicating their agreement on a total lodestar amount for Class Counsel, ECF No. 1105.  To arrive at the agreed-upon figure, co-lead Plaintiffs' counsel decided that JSLF's lodestar, as reported in Mr. Saveri's supplemental declaration of May 21, 2015, should be further reduced by $2,338,000 (from $6,314,819.25 to $3,976,819.25[3]).  ECF No. 1105 ¶ 10.  That reduction was based on "the following adjustments: (i) disregard all time reported and billed by Mr. Saveri ($2,059,344), and (ii) reduce of [sic] the remainder of JSLF reported time by a total of $278,656."  *Id.*  In addition, although Class Counsel's total unreimbursed expenses exceed the $1,200,000 figure stated in the Notice by $31,276.66, co-lead Plaintiffs' counsel agreed to "seek only the $1,200,000 in costs reflected in the Notice provided to the Class."  *Id.* ¶ 12.

After reviewing co-lead Plaintiffs' counsel joint statement, the Court found that it still lacked "an adequate basis for calculating JSLF's lodestar."  ECF No. 1107 at 2.  This was so, the Court explained, because co-lead Plaintiffs' counsel had not provided the Court with JSLF's revised billing records indicating "the total number of hours spent by JSLF attorneys on this litigation, the JSLF attorneys' individual billing rates, and justifications for such rates."  *Id.*  Accordingly, the Court ordered co-lead Plaintiffs' counsel to provide that information to the Court "no later than July 24, 2015."  *Id.*

On July 24, 2015, Mr. Saveri filed a second supplemental declaration providing the Court with the requested information.  ECF No. 1108, Second Supplemental Declaration of Joseph R. Saveri ("Saveri Second Supp. Decl.").  In so doing, JSLF, with no objection from LCHB, *id.* ¶ 3, further reduced its lodestar by $54,310.25 due to "a calculation error," *id.* ¶ 5 n.1.  JSLF's revised

---

[3] It appears co-lead Plaintiffs' counsel incorrectly listed JSLF's revised lodestar as "$3,979,819.25," ECF No. 1105 ¶ 10, which would represent a reduction of only $2,335,000 from JSLF's previous lodestar of $6,314,819.25.

9

United States District Court
Northern District of California

1   lodestar, factoring in the further deduction of attorney time, is $3,922,509.  *Id.* ¶¶ 5-6.  Class

2   Counsel's final revised lodestar, which is the sum of the lodestars for each of the four firms, is

3   $18,201,787.50.[4]  *Id.* ¶ 6, Ex. 2.

4        The Court granted final approval of the $415 million settlement with Defendants on

5   September 2, 2015.  ECF No. 1111.

6   **II.     DISCUSSION**

7        The instant motions contain specific requests for attorney's fees, reimbursement of

8   expenses, and service awards.  The Court addresses each in turn.

9       **A.  Attorney's Fees**

10      **1.  The Appropriate Method: Lodestar v. Percentage-of-Recovery**

11       Under Ninth Circuit law, "the choice between lodestar and percentage calculation depends

12  on the circumstances, but . . . 'either method may . . . have its place in determining what would be

13  reasonable compensation for creating a common fund.'"  *Six Mexican Workers v. Ariz. Citrus*

14  *Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990) (second ellipsis in original) (quoting *Paul, Johnson,*

15  *Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989)).  "Where," as here, "a settlement

16  produces a common fund for the benefit of the entire class, courts have discretion to employ either

17  the lodestar method or the percentage-of-recovery method."  *In re Bluetooth Headset Prods. Liab.*

18  *Litig.*, 654 F.3d 935, 942 (9th Cir. 2011).  To guard against an unreasonable result, the Ninth

19  Circuit encourages district courts to "cross-check[] their calculations against a second method."

20  *Id.* at 944; *see also Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1050-51 (9th Cir. 2002) (applying

21  a lodestar cross-check to ensure the percentage-of-recovery method yielded a reasonable result).

22       Where the percentage-of-recovery method is employed, it is well established that 25% of a

23  common fund is a presumptively reasonable amount of attorney's fees.  *See, e.g.*, *In re Bluetooth*,

24

25  _____

26      [4] Broken down by law firm, the lodestars are: $11,476,957.50 (LCHB); $3,922,509.00
    (JSLF); $1,429,225.50 (G&E); $1,373,095.50 (B&M).  ECF No. 1105 ¶ 10; Saveri Second Supp.

27  Decl. ¶ 6, Ex. 2.

                          10

28  Case No. 11-CV-02509-LHK
    ORDER GRANTING IN PART AND DENYING IN PART MOTIONS FOR ATTORNEY'S FEES,
    REIMBURSEMENT OF EXPENSES, AND SERVICE AWARDS

United States District Court
Northern District of California

1   654 F.3d at 942 ("[C]ourts typically calculate 25% of the fund as the 'benchmark' for a reasonable

2   fee award, providing adequate explanation in the record of any 'special circumstances' justifying a

3   departure."); *Six Mexican Workers*, 904 F.2d at 1311 ("[W]e established 25 percent of the fund as

4   the 'benchmark' award that should be given in common fund cases."). That said, "[t]he 25%

5   benchmark rate, although a starting point for analysis, may be inappropriate in some cases."

6   *Vizcaino*, 290 F.3d at 1048. For instance, "where awarding 25% of a 'megafund' would yield

7   windfall profits for class counsel in light of the hours spent on the case, courts should adjust the

8   benchmark percentage or employ the lodestar method instead." *In re Bluetooth*, 654 F.3d at 942.

9   Whatever decision a court reaches, that decision "must be supported by findings that take into

10  account all of the circumstances of the case." *Vizcaino*, 290 F.3d at 1048.

11      Here, Class Counsel and Devine Counsel advocate applying the percentage-of-recovery

12  method. Specifically, Class Counsel ask for 19.5% of the $415 million settlement (i.e.,

13  $81,125,000). *See* Class Counsel Mot. at 1. Devine Counsel, on the other hand, asks for 5% of

14  the $90.5 million (i.e., $4,523,500) difference between the rejected settlement and the instant

15  settlement. *See* Devine Counsel Mot. at 23. Combining the two requests, counsel for Plaintiffs in

16  this case seek a total of 20.6% of the $415 million settlement (i.e., $85,648,500) in attorney's fees.

17  Adding the $5 million in attorney's fees already awarded to Class Counsel in the earlier

18  settlements with Pixar, Lucasfilm, and Intuit, counsel for Plaintiffs in this case would be seeking a

19  total of 20.8% of the $435 million settlements (i.e., $90,648,500) in attorney's fees.

20      "The most appropriate way," Class Counsel contend, "to calculate a reasonable fee where,

21  as here, contingency fee litigation has produced a common fund, is the percentage-of-the-fund

22  method." Class Counsel Mot. at 14 (citing *Vizcaino* and *Six Mexican Workers*). According to

23  Class Counsel, the percentage-of-recovery method "comports with the legal marketplace in other

24  contingency fee cases, where counsel's fee is typically based upon a percentage of any recovery,"

25  and it best "aligns class counsel's interests with those of the class," incentivizing counsel "to push

26  for the best result that can be achieved for the class." *Id.* In contrast, Class Counsel argue, the

27                                                              11

28  Case No. 11-CV-02509-LHK
    ORDER GRANTING IN PART AND DENYING IN PART MOTIONS FOR ATTORNEY'S FEES,
    REIMBURSEMENT OF EXPENSES, AND SERVICE AWARDS

United States District Court
Northern District of California

1    lodestar method "encourages counsel to bill time and to create opportunities to bill time." *Id.* at

2    14-15; *see* ECF No. 1079, Declaration of Prof. Brian T. Fitzpatrick ("Fitzpatrick Decl.") ¶¶ 8-10.

3    Applying the percentage-of-recovery method, according to Class Counsel, "rewards class counsel

4    for assuming the risks of this case and efficiently prosecuting it."  Class Counsel Mot. at 15.

5         Nonetheless, the Ninth Circuit has made clear that in "megafund" cases, such as this one,

6    courts may "employ the lodestar method instead" if rote application of the 25% benchmark

7    "would yield windfall profits for class counsel in light of the hours spent on the case." *In re*

8    *Bluetooth*, 654 F.3d at 942.  For example, in *In re Washington Public Power Supply System*

9    *Securities Litigation* ("*WPPSS*"), 19 F.3d 1291, 1297-98 (9th Cir. 1994), the Ninth Circuit held

10   that the district court "acted well within the bounds of its discretion" in applying the lodestar

11   method, rather than the percentage-of-recovery method, to an attorney's fees request arising out of

12   a $687 million settlement fund.  Class counsel in *WPPSS* had asked the district court for 13.6% of

13   the fund, well below the "circuit's 25 percent benchmark figure," but the district court found that

14   request to be "arbitrary" because class counsel "could just as easily have requested 3.6 percent or

15   36.1 percent." *Id.* (internal quotation marks omitted).  In upholding the district court's decision,

16   the Ninth Circuit explained: "With a fund this large, picking a percentage without reference to all

17   the circumstances of the case, including the size of the fund, would be like picking a number out

18   of the air." *Id.*  "Because a court must consider the fund's size in light of the circumstances of the

19   particular case," the Ninth Circuit continued, "we agree with the district court that the 25 percent

20   'benchmark' is of little assistance in a case such as this." *Id.*  Just as there was "nothing inherently

21   reasonable about an award of 13.6 percent of a [$687 million] fund" in *WPPSS*, *id.* at 1298, the

22   Court finds nothing inherently reasonable in Plaintiffs' counsel's total request here for 20.6% of

23   the $415 million settlement (or 20.8% of $435 million if the settlements with Pixar, Lucasfilm,

24   and Intuit are included).  *See also Gutierrez v. Wells Fargo Bank, N.A.*, No. C 07-05923 WHA,

25   2015 WL 2438274, at *4 (N.D. Cal. May 21, 2015) (rejecting class counsel's request to apply the

26   percentage-of-recovery method to a $203 million restitution award and opting for the lodestar

27                                                    12

28   Case No. 11-CV-02509-LHK
     ORDER GRANTING IN PART AND DENYING IN PART MOTIONS FOR ATTORNEY'S FEES,
     REIMBURSEMENT OF EXPENSES, AND SERVICE AWARDS

United States District Court
Northern District of California

1   method instead because "blindly adopting the 25-percent benchmark . . . would result in a windfall

2   to class counsel").

3          Having overseen this case for four years, the Court finds that justice would be best served

4   by applying the lodestar method—i.e., tying the fee awards for Class Counsel and Devine Counsel

5   to the actual hours they reasonably expended on this litigation and then selecting a multiplier.  The

6   Court so concludes for several reasons.  First, even though Class Counsel's proposed percentage

7   recovery of 19.5% is below the Ninth Circuit's 25% benchmark, an award of 19.5% (or

8   $81,125,000) in attorney's fees would yield a lodestar multiplier of 4.46.  Saveri Second Supp.

9   Decl. ¶ 6.  Factoring in the $5 million in attorney's fees already awarded to Class Counsel in the

10  settlements with Pixar, Lucasfilm, and Intuit, Class Counsel's multiplier would increase to 4.73.[5]

11  Devine Counsel's lodestar multiplier is even higher: 8.7.  Devine Counsel Mot. at 18.  Combining

12  Class Counsel's lodestar with Devine Counsel's, and taking the prior $5 million fees award into

13  account, the total multiplier Plaintiffs' counsel ask for in this case is 4.8.  These multipliers, in the

14  Court's judgment, are simply too high for a settlement of this size and would result in "windfall

15  profits for class counsel in light of the hours spent on the case."  *In re Bluetooth*, 654 F.3d at 942;

16  *see also Allen v. Bedolla*, 787 F.3d 1218, 1224 n.4 (9th Cir. 2015) (cautioning that district courts

17  "should not calculate fees using a mechanical or formulaic approach that results in an

18  unreasonable reward" (internal quotation marks omitted)).  The following chart summarizes the

19  instant attorney's fees requests of Plaintiffs' counsel and does not include the $5 million in

20  attorney's fees already requested and awarded in the settlements with Pixar, Lucasfilm, and Intuit:

21
| Firms | Hours | Rate | Lodestar | Multiplier | Fees Request | Pct. |
|---|---|---|---|---|---|---|
| Class Counsel | 36,215.00 | $502.60 | $18,201,787.50 | 4.46 | $81,125,000.00 | 19.5% |
| Devine Counsel | 916.20 | $566.38 | $518,919.50 | 8.72 | $4,523,500.00 | 1.09% |

23          Class Counsel argue that "[a] multiplier in that range is well-justified under the

24  circumstances here."  Class Counsel Mot. at 21.  In support of their argument, Class Counsel

26          [5] (81,125,000 + 5,000,000) ÷ 18,201,787.50 = 4.73

27                                                      13

include in their motion a table of settlements with multipliers ranging between 6.0 and 19.6. *Id.* Of the seven settlement amounts listed, however, only one involved a settlement greater than or equal to $415 million. *See In re Cardinal Health Inc. Sec. Litig.*, 528 F. Supp. 2d 752, 768 (S.D. Ohio 2007) (allowing an 18% attorney's fees recovery on a $600 million settlement, even though that award resulted in a "lodestar multiplier of six"). Only one other involved a settlement greater than $127 million. *See New England Carpenters Health Benefits Fund v. First Databank, Inc.*, No. CIV.A. 05-11148PBS, 2009 WL 2408560, at *2 (D. Mass. Aug. 3, 2009) (allowing a 20% attorney's fees recovery on a $350 million settlement, even though that award resulted in "a multiplier of about 8.3 times lodestar"). The remaining five of the seven settlement amounts listed in Class Counsel's motion were for $4.9 million, $25.4 million, $72.5 million, $100 million, and $127 million, *see* Class Counsel Mot. at 21-22, all significantly less than the $415 million settlement amount at issue here. In fact, three of the settlement amounts were less than the amount of attorney's fees requested by Class Counsel in their instant motion.

Although Class Counsel can point to some "megafund" cases allowing large multipliers, that is far from the norm. In *Vizcaino*, the Ninth Circuit conducted a survey of attorney's fees awards in common fund cases ranging from $50-200 million between 1996 and 2001. *See* 290 F.3d at 1052-54. In the vast majority of cases (20 of 24, or 83%), the multiplier ranged from 1.0-4.0. *Id.* at 1051 n.6. In a "bare majority" of cases (13 of 24, or 54%), the multiplier was in the 1.5-3.0 range.[6] *Id.* Thus, allowing a multiplier of 4.46 would be unusual for a $415 million settlement. Even more unusual would be a multiplier of 4.8, which is what the combined Class Counsel and Devine Counsel multiplier would be when factoring in the $5 million in attorney's fees already awarded to Class Counsel in the settlements with Pixar, Lucasfilm, and Intuit. These facts counsel against rigid reliance on the percentage-of-recovery approach.

---

[6] The survey actually included 34 settlements, but multipliers are not listed for 10 of them. *See Vizcaino*, 290 F.3d at 1052-54.

14

Case No. 11-CV-02509-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTIONS FOR ATTORNEY'S FEES,
REIMBURSEMENT OF EXPENSES, AND SERVICE AWARDS

United States District Court
Northern District of California

United States District Court
Northern District of California

1    A second reason to use the lodestar method is because doing so would allow the Court to

2  examine Class Counsel's and Devine Counsel's "presumptively reasonable" lodestar figures, and

3  if suitable, adjust them "by an appropriate . . . multiplier reflecting a host of reasonableness

4  factors, including the quality of representation, the benefit obtained for the class, the complexity

5  and novelty of the issues presented, and the risk of nonpayment."  *In re Bluetooth*, 654 F.3d at

6  941-42 (citations and internal quotation marks omitted).  In a case with such a large settlement

7  fund and such a great disparity between the fees requested and the average recovery of individual

8  class members, the Court finds the lodestar method preferable to blind acceptance of percentages

9  that seem largely untethered to the results achieved in this litigation.  *See WPPSS*, 19 F.3d at

10  1297-98.  Indeed, if the Court were to accept Plaintiffs' counsel's requests for more than $85

11  million in total fees (which does not even take into account the $5 million in fees already awarded

12  to Class Counsel in the Pixar, Lucasfilm, and Intuit settlements), class members would on average

13  recover about $5,071.53 per person, *see* Class Counsel Reply at 4, which is roughly 11% of their

14  average per person estimated damages.[7]  *See also Gutierrez*, 2015 WL 2438274, at *4 (finding

15  class counsel's high multiplier under the percentage-of-recovery method unjustified "especially

16  since counsel estimate that their full fee award would reduce the average class member's

17  restitution from approximately $179 to $134").  As such, the Court concludes that using the

18  lodestar method with a percentage-of-recovery cross-check would achieve the fairest and most

19  reasonable result in this case.

20    **2.  Lodestar Method**

21    Under the lodestar method, a "lodestar figure is calculated by multiplying the number of

22  hours the prevailing party reasonably expended on the litigation (as supported by adequate

23  documentation) by a reasonable hourly rate for the region and for the experience of the lawyer."

24  *In re Bluetooth*, 654 F.3d at 941 (citing *Staton v. Boeing Co.*, 327 F.3d 938, 965 (9th Cir. 2003)).

25

26  _____

27  [7] $(5,071.53 \div (3,065,184,307 \div (64,466 - 56))) \times 100 = 10.65\%$

15

28  Case No. 11-CV-02509-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTIONS FOR ATTORNEY'S FEES,
REIMBURSEMENT OF EXPENSES, AND SERVICE AWARDS

1   Although "the lodestar figure is 'presumptively reasonable,' the court may adjust it upward or

2   downward by an appropriate positive or negative multiplier reflecting a host of reasonableness

3   factors." *Id.* at 941-42 (citations and internal quotation marks omitted).

4        **a.   Billing Rates**

5        Having reviewed the billing rates for the attorneys, paralegals, and litigation support staff

6   at each of the firms representing Plaintiffs in this case, the Court finds that these rates are

7   reasonable in light of prevailing market rates in this district and that counsel for Plaintiffs have

8   submitted adequate documentation justifying those rates. *See, e.g.*, *Gutierrez*, 2015 WL 2438274,

9   at *5 (approving the same ranges of rates for LCHB); *see also* ECF No. 1073-1, Declaration of

10  Prof. William B. Rubenstein ("Rubenstein Decl.") ¶¶ 29-30 (graphs showing rates charged by

11  Class Counsel here are similar to prevailing market rates from fee awards in this district).

12       In addition, the billing rates submitted vary appropriately based on experience.

13  Specifically, the billing rates for partners range from about $490 to $975. *See* ECF No. 1069,

14  Declaration of Daniel C. Girard ("Girard Decl.") ¶ 45 (GG partner rates); ECF No. 1074,

15  Declaration of Eric L. Cramer ("Cramer Decl.") ¶ 13 (B&M partner rates); ECF No. 1081,

16  Declaration of James J. Sabella ("Sabella Decl."), Ex. 2 (G&E partner rates); ECF No. 1083,

17  Declaration of Kelly M. Dermody ("Dermody Decl."), Ex. 11 (LCHB partner rates). The billing

18  rates for non-partner attorneys, including senior counsel, counsel, senior associates, associates, and

19  staff attorneys, range from about $310 to $800, with most under $500. *See* Girard Decl. ¶ 45 (GG

20  non-partner attorney rates); Cramer Decl. ¶ 13 (B&M non-partner attorney rates); Sabella Decl.,

21  Ex. 2 (G&E non-partner attorney rates); Dermody Decl., Ex. 11 (LCHB non-partner attorney

22  rates); Saveri Second Supp. Decl., Ex. 3 (JSLF non-partner attorney rates). The billing rates for

23  paralegals, law clerks, and litigation support staff range from about $190 to $430, with most in the

24  $300 range. *See* Girard Decl. ¶ 45 (GG paralegal and staff rates); Cramer Decl. ¶ 13 (B&M

25  paralegal and staff rates); Sabella Decl., Ex. 2 (G&E paralegal and staff rates); Dermody Decl.,

26  Ex. 11 (LCHB paralegal and staff rates); Saveri Second Supp. Decl., Ex. 3 (JSLF paralegal and

27  16

28  Case No. 11-CV-02509-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTIONS FOR ATTORNEY'S FEES,
REIMBURSEMENT OF EXPENSES, AND SERVICE AWARDS

United States District Court
Northern District of California

staff rates).

### b. Hours

Having reviewed the billing records for the attorneys, paralegals, and litigation support staff at each of the firms representing Plaintiffs in this case, the Court finds that these records adequately reflect the amount of time reasonably spent on this litigation. *See* Rubenstein Decl. ¶ 33 (graphs showing hours spent by Class Counsel here are comparable to those logged in other "megafund" cases).

The final billing records Class Counsel submitted to the Court reflect a total of 36,215 hours spent on this litigation. Broken down by law firm: LCHB spent 23,458.20 hours on this litigation, *see* Dermody Decl., Ex. 11; JSLF spent 8,023.30 hours on this litigation, *see* Saveri Second Supp. Decl., Ex. 3; G&E spent 2,488.70 hours on this litigation, *see* Sabella Decl., Ex. 2; and B&M spent 2,244.80 hours on this litigation, *see* Cramer Decl. ¶ 13. In light of the subsequent hour reductions submitted by JSLF, *see* Saveri Supp. Decl. ¶ 5; Saveri Second Supp. Decl. ¶¶ 5-6, Class Counsel's final figure of 36,215 hours is nearly 3,000 hours less than the 39,124 figure Prof. Rubenstein found to be reasonable compared to other "megafund" cases, *see* Rubenstein Decl. ¶¶ 33-34. Accordingly, JSLF's subsequent reductions only support the Court's ultimate finding of reasonableness.

Furthermore, the Court finds that 36,215 hours is a reasonable amount of time for Class Counsel to have spent on this litigation. In the more than four years that this case has been pending, Class Counsel (1) identified the alleged conspiracy to fix and suppress employee compensation in the tech industry; (2) met with their clients and secured retainer agreements; (3) prepared and filed multiple complaints against Defendants; (4) survived two motions to dismiss; (5) undertook considerable discovery, including taking 93 depositions and defending 14 others, serving 75 document requests, reviewing the resulting 325,000 documents (over 3.2 million pages), serving 28 subpoenas on third parties, reviewing 8,809 pages of documents from those third parties, producing over 31,000 pages of documents in response to Defendants' document

17

United States District Court
Northern District of California

requests, and responding to and reviewing 34 subpoenas served by Defendants on third parties; (6)

retained four experts to assist in analyzing over 15 gigabytes of employment-related compensation

and recruiting data; (7) worked with the experts to produce multiple expert reports; (8) filed a

consolidated class action complaint; (9) litigated two rounds of class certification; (10) opposed a

Rule 23(f) appeal to the Ninth Circuit; (11) survived five summary judgment motions; (12)

prepared for trial; (13) negotiated three settlements; and (14) opposed mandamus in the Ninth

Circuit.  *See* Rubenstein Decl. ¶ 34 (listing Class Counsel's efforts in this litigation).  Having

presided over this case for four years, and having examined the voluminous billing records of each

of the four firms comprising Class Counsel, the Court concludes that those records reflect the

work performed in this case and that 36,215 hours is a reasonable amount of time to have spent on

this litigation.

Devine Counsel, for its part, claims to have spent 916.20 hours on this litigation.  Girard

Decl. ¶ 45.  Having carefully examined Devine Counsel's billing records, the Court finds this

amount of time to be high but not unreasonable.  Devine Counsel entered this litigation on May

13, 2014, when Devine Counsel first met with Mr. Devine to discuss Mr. Devine's opposition to

the proposed $324.5 million settlement with Defendants.  *See* Girard Decl., Ex. 3.  In representing

Mr. Devine from May 13, 2014, to March 2, 2015—less than ten months in total—Devine

Counsel has performed the following work: (1) filed an opposition to the $324.5 million proposed

settlement; (2) attended the June 19, 2014 preliminary approval hearing; (3) reviewed pending

pretrial motions after the Court rejected the proposed settlement and conferred with Mr. Devine on

how best to proceed; (4) opposed Defendants' mandamus petition in the Ninth Circuit; (5)

opposed two motions for leave to file amicus briefs in support of Defendants' mandamus petition;

(6) conferred regularly with Class Counsel and Mr. Devine while settlement negotiations were

pending; and (7) attended the March 2, 2015 preliminary approval hearing.  Girard Decl. ¶¶ 14-37;

*see also id.*, Ex. 3.  At the July 9, 2015 final approval hearing, Devine Counsel admitted that

Devine Counsel did not directly participate in the settlement negotiations with Defendants.  Final

Case No. 11-CV-02509-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTIONS FOR ATTORNEY'S FEES,
REIMBURSEMENT OF EXPENSES, AND SERVICE AWARDS

United States District Court
Northern District of California

Approval Tr. at 73:8-17.  Nonetheless, the Court finds the 916.20 hours reported by Devine Counsel to be adequately supported by the documentation submitted.  *See* Girard Decl., Ex. 3.

For the foregoing reasons, the Court concludes that there is no cause in this case to disturb the "presumptively reasonable" lodestar figures submitted by counsel for Plaintiffs.  *In re Bluetooth*, 654 F.3d at 941.  Accordingly, the Court accepts the following lodestar figures: $18,201,787.50 for Class Counsel and $518,919.50 for Devine Counsel.

### c.  Multipliers

As indicated above, the Court may "adjust" the lodestar figures "upward or downward by an appropriate positive or negative multiplier reflecting a host of 'reasonableness' factors, 'including the quality of representation, the benefit obtained for the class, the complexity and novelty of the issues presented, and the risk of nonpayment.'"  *In re Bluetooth*, 654 F.3d at 941-42 (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998)).  "Foremost among these considerations, however, is the benefit obtained for the class."  *Id.* at 942.  For the reasons stated below, the Court concludes that a positive multiplier of 2.2 is appropriate for Class Counsel, and that a positive multiplier of 1.5 is appropriate for Devine Counsel.

As for Class Counsel, the Court recognizes that Class Counsel engaged in years of litigation against well-financed, large technology companies.  The issues presented in the case were sufficiently complex and novel that Class Counsel assumed a risk of nonpayment.  Class Counsel achieved significant benefits for the class, namely survival of two motions to dismiss, five motions for summary judgment, multiple *Daubert* challenges as well as certification of the class, an earlier $20 million settlement, and now a $415 million settlement.  Moreover, as indicated previously, Class Counsel devoted considerable time and effort litigating this case over a period of four years.  In particular, Class Counsel (1) identified the alleged conspiracy to fix and suppress employee compensation in the tech industry; (2) met with their clients and secured retainer agreements; (3) prepared and filed multiple complaints against Defendants; (4) survived two motions to dismiss; (5) undertook considerable discovery, including taking 93 depositions and

19

United States District Court
Northern District of California

1    defending 14 others, serving 75 document requests, reviewing the resulting 325,000 documents

2    (over 3.2 million pages), serving 28 subpoenas on third parties, reviewing 8,809 pages of

3    documents from those third parties, producing over 31,000 pages of documents in response to

4    Defendants' document requests, and responding to and reviewing 34 subpoenas served by

5    Defendants on third parties; (6) retained four experts to assist in analyzing over 15 gigabytes of

6    employment-related compensation and recruiting data; (7) worked with the experts to produce

7    multiple expert reports; (8) filed a consolidated class action complaint; (9) litigated two rounds of

8    class certification; (10) opposed a Rule 23(f) appeal to the Ninth Circuit; (11) survived five

9    summary judgment motions; (12) prepared for trial; (13) negotiated three settlements; and (14)

10   opposed mandamus in the Ninth Circuit. *See* Rubenstein Decl. ¶ 34. Class Counsel did all of

11   these things, the Court notes, on a purely contingent basis. *See* Class Counsel Mot. at 17. In so

12   doing, Class Counsel litigated this action without pay for several years, even though recovery was

13   uncertain. Class Counsel also advanced millions of dollars in out-of-pocket expenses, including

14   expert fees, in order to prosecute this action. For these reasons, the Court finds it appropriate to

15   adjust Class Counsel's lodestar with a positive multiplier.

16          Considering all the facts and circumstances of this case, the Court finds further that a

17   multiplier of 2.2 is appropriate for Class Counsel. As stated above, the Ninth Circuit in *Vizcaino*

18   conducted a survey of attorney's fees awards in megafund cases. *See* 290 F.3d at 1052-54. This

19   survey involved common fund cases ranging from $50-200 million between 1996 and 2001. *See*

20   *id.* In 83% of the settlements (20 of 24), the multiplier ranged from 1.0-4.0, and in 54% of the

21   settlements (13 of 24), the multiplier was in the 1.5-3.0 range. *Id.* at 1051 n.6. A multiplier of 2.2

22   would therefore be in line with the vast majority of megafund settlements such as this one and

23   would adequately reward Class Counsel for the work performed in this litigation. As a result, the

24   Court multiplies Class Counsel's lodestar by 2.2 and awards Class Counsel $40,043,932.50 in

25   attorney's fees.

26          Factoring in the $5 million in attorney's fees Class Counsel has already received from the

27                                                          20

United States District Court
Northern District of California

1    settlements with Pixar, Lucasfilm, and Intuit, Class Counsel's multiplier jumps to 2.5,[8] which is

2    right in the middle of the 1.0-4.0 range encompassing 83% of the settlements surveyed in

3    *Vizcaino*.  *See* 290 F.3d at 1051 n.6.  Specifically, the Ninth Circuit in *Vizcaino* listed 24

4    settlements with the following multipliers: 4.5-8.5, 1.4, 19.6, 2.0, 1.8, 3.0, 2.5, 2.4, 2.5, 3.3, 2.5-

5    4.0, 2.1, 0.6, 3.0, 3.6, 2.5, 3.6, 2.1, 6.2, 1.7, 2.3, 1.0, 1.4, and 1.2.  *Id.* at 1052-54.  It is clear, then,

6    that a total multiplier of 2.5 for Class Counsel is wholly consistent with the megafund multipliers

7    cited by the Ninth Circuit.

8           As for Devine Counsel, the Court recognizes that Devine Counsel's representation of Mr.

9    Devine contributed to securing an additional $90.5 million for the class.  Mr. Devine assumed

10   personal risk by objecting to the proposed settlement, and Devine Counsel presented cogent

11   arguments to this Court and to the Ninth Circuit on Mr. Devine's behalf.  In particular, Devine

12   Counsel (1) filed an opposition to the $324.5 million proposed settlement; (2) attended the June

13   19, 2014 preliminary approval hearing; (3) reviewed pending pretrial motions after the Court

14   rejected the proposed settlement and conferred with Mr. Devine on how best to proceed; (4)

15   opposed Defendants' mandamus petition in the Ninth Circuit; (5) opposed two motions for leave

16   to file amicus briefs in support of Defendants' mandamus petition; (6) conferred regularly with

17   Class Counsel and Mr. Devine while settlement negotiations were pending; and (7) attended the

18   March 2, 2015 preliminary approval hearing.  Girard Decl. ¶¶ 14-37; *see also id.*, Ex. 3.  Devine

19   Counsel also represented Mr. Devine on contingency.  Girard Decl. ¶ 40.  For these reasons, the

20   Court finds it appropriate to adjust Devine Counsel's lodestar with a positive multiplier.

21           Considering all the facts and circumstances of this case, the Court finds that a multiplier of

22   1.5 is appropriate for Devine Counsel.  In the Court's judgment, this multiplier adequately rewards

23   Devine Counsel for the work performed in this case from May 13, 2014, to March 2, 2015.  Girard

24   Decl., Ex.3.  The Court awards Devine Counsel a smaller multiplier than Class Counsel for several

25

26   _____

27        [8] $(40,043,932.50 + 5,000,000) \div 18,201,787.50 = 2.47$

21

28   Case No. 11-CV-02509-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTIONS FOR ATTORNEY'S FEES,
REIMBURSEMENT OF EXPENSES, AND SERVICE AWARDS

United States District Court
Northern District of California

1   reasons.  First, Devine Counsel joined this case in May 2014, which was after discovery had

2   concluded, a class had been certified, the Ninth Circuit had declined review of class certification,

3   and the Court had denied five summary judgment motions and multiple *Daubert* motions.  Devine

4   Counsel thus had no involvement in taking 93 depositions, defending 14 depositions, serving 75

5   document requests, serving 28 subpoenas on third parties, producing over 31,000 pages of

6   documents, retaining four experts to assist in analyzing over 15 gigabytes of employment-related

7   compensation and recruiting data, and working with the experts to produce multiple expert reports.

8   Devine Counsel also had no involvement in the two motions to dismiss, the two motions for class

9   certification, the five motions for summary judgment, the myriad *Daubert* motions, and Plaintiffs'

10  settlements with Pixar, Lucasfilm, and Intuit.  As far as motion practice, Devine Counsel filed

11  three opposition briefs: one opposing preliminary approval, a second opposing mandamus, and a

12  third opposing leave to file two amicus briefs in support of mandamus.  Devine Counsel also

13  attended two preliminary approval hearings.  The issues presented in Devine Counsel's three

14  opposition briefs and at the preliminary approval hearings were much less complex and novel than

15  the issues faced by Class Counsel in the two motions to dismiss, two rounds of class certification,

16  five summary judgment motions, and multiple *Daubert* motions.

17          Second, unlike Class Counsel, Devine Counsel did not advance any of the millions of

18  dollars in expenses, including expert fees, in this litigation.  Nor did Devine Counsel assume the

19  same risk of nonpayment as Class Counsel, which had been litigating this case for several years

20  with no certainty of payment.  Indeed, by the time Devine Counsel entered the case, Pixar,

21  Lucasfilm, and Intuit had already settled with Plaintiffs for $20 million and the remaining

22  Defendants had already settled for $324.5 million.

23          Lastly, Devine Counsel did not directly participate in the negotiations with Defendants that

24  resulted in the class obtaining the additional $90.5 million.  In fact, Defendants' counsel

25  communicated with only Class Counsel during the mediation process that resulted in the

26  additional $90.5 million.  *See* Final Approval Tr. at 72:25-27.  As a result, the Court multiplies

27                                                          22

28  Case No. 11-CV-02509-LHK
    ORDER GRANTING IN PART AND DENYING IN PART MOTIONS FOR ATTORNEY'S FEES,
    REIMBURSEMENT OF EXPENSES, AND SERVICE AWARDS

United States District Court
Northern District of California

Devine Counsel's lodestar by 1.5 and awards Devine Counsel $778,379.25 in attorney's fees.

Combining the $40,043,932.50 award for Class Counsel and the $778,379.25 award for Devine Counsel, the Court awards a total of $40,822,311.75 in attorney's fees.  When added to the $5 million in attorney's fees the Court already awarded Class Counsel for the settlements with Pixar, Lucasfilm, and Intuit, counsel for Plaintiffs will receive a grand total of $45,822,311.75 for litigating this case.  Furthermore, the Court notes that by awarding a total of $40,822,311.75 in attorney's fees in connection with the instant $415 million settlement, rather than the requested total of $85,648,500, the average recovery for the 64,410 class members who did not opt out should increase from roughly $5,071.53 per person to roughly $5,770 per person,[9] a difference of about $700 per class member.

### 3.  Percentage-of-Recovery Cross-Check

The reasonableness of the Court's fee awards under the lodestar method is supported by cross-checking those awards with the percentage-of-recovery method.  *See In re Bluetooth*, 654 F.3d at 944 (encouraging courts to "cross-check[] their calculations against a second method").  Combining the awards for Class Counsel and Devine Counsel, the total amount of attorney's fees is about 9.8%[10] of the $415 million settlement.  Adding the $5 million in attorney's fees the Court already awarded for the settlements with Pixar, Lucasfilm, and Intuit, the percentage increases to

---

[9] The Court arrived at this figure through the following calculations.  First, the Court had to calculate the remainder based on the requests for attorney's fees, reimbursement of expenses, and service awards submitted by Plaintiffs' counsel and the estimated per class member recovery provided by Plaintiffs' counsel: Remainder = 415,000,000 - ((5,071.53 × (64,466 - 56)) + 81,125,000 + 4,523,500 + 1,200,000 + (160,000 × 5)) = $694,252.70.  The Court then subtracted this remainder, along with the Court's awards for attorney's fees, expenses, and service awards, from the $415 million settlement to arrive at the total amount of the settlement that would go to the class: Amount to Class = 415,000,000 - 40,822,311.75 - 1,200,000 - 120,000 - (80,000 × 4) - 694,252.70 = $371,843,435.55.  The Court then divided this figure by the 64,410 class members who did not opt out of the settlement to arrive at an estimate for the average recovery per class member: Amount Per Class Member = $371,843,435.55 ÷ (64,466 - 56) = $5,773.07.

[10] $(40,822,311.75 ÷ 415,000,000) \times 100 = 9.84\%$

23

Case No. 11-CV-02509-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTIONS FOR ATTORNEY'S FEES,
REIMBURSEMENT OF EXPENSES, AND SERVICE AWARDS

United States District Court
Northern District of California

10.5%.[11]  Although the benchmark in the Ninth Circuit for common fund cases is 25%, a

percentage recovery of 9.8% or 10.5% is far from unreasonable for a settlement of this size.

Indeed, Class Counsel's own attorney's fees expert, Prof. Brian Fitzpatrick, explained that

federal courts typically "award[] lower percentages in cases where settlements were larger."

Fitzpatrick Decl. ¶ 21.  In Prof. Fitzpatrick's empirical study, which analyzed the largest federal

class action settlements from 2006 to 2007, Prof. Fitzpatrick found "that settlement size had a

statistically significant but inverse relationship with the fee percentages awarded by federal

courts."  *Id.* (citing Brian T. Fitzpatrick, *An Empirical Study of Class Action Settlements and Their

Fee Awards*, 7 J. Empirical Legal Stud. 811, 838, 842-44 (2010)).  In addition, Prof. Fitzpatrick's

study showed that "the mean and median fee percentages awarded in the eight percentage-of-the-

fund settlements in my dataset between $250 million and $500 million were 17.8% and 19.5%,

respectively."  *Id.* (citing Fitzpatrick, *Empirical Study*, *supra*, at 839 tbl.11).  These empirical

findings are consistent with the Ninth Circuit's statement that, in "megafund" cases, courts may

apply the percentage-of-recovery method while "adjust[ing] the benchmark percentage"

downward to a more appropriate figure where failing to do so "would yield windfall profits for

class counsel."  *In re Bluetooth*, 654 F.3d at 942.

Furthermore, in Prof. Rubenstein's declaration, prepared at the request of JSLF, he

indicates in a footnote that "[t]he other leading study," which reviewed large common fund

settlements between 1993 and 2008, "found a 12% mean award."  Rubenstein Decl. ¶ 27 n.16

(citing Theodore Eisenberg & Geoffrey P. Miller, *Attorney Fees and Expenses in Class Action

Settlements: 1993-2008*, 7 J. Empirical Legal Stud. 248, 265 tbl.7 (2010)).  In addition to the 12%

mean, Eisenberg & Miller found that the median award was only 10.2%.  *See* Eisenberg & Miller,

*Attorney Fees*, *supra*, at 265 tbl.7; *see also Silverman v. Motorola Solutions, Inc.*, 739 F.3d 956,

958 (7th Cir. 2013) (describing Eisenberg & Miller's findings); *Craftwood Lumber Co. v. Interline*

---

[11] $((40,822,311.75 + 5,000,000) \div 435,000,000) \times 100 = 10.53\%$

United States District Court
Northern District of California

United States District Court
Northern District of California

1    *Brands, Inc.*, No. 11-CV-4462, 2015 WL 1399367, at *3 (N.D. Ill. Mar. 23, 2015) (explaining that

2    for "settlements greater than $175.5 million," the Eisenberg & Miller study found "the median

3    attorney's fee dropped all the way to 10.2% and the mean to 12%").

4         The Court finds the Eisenberg & Miller study more persuasive than the Fitzpatrick study

5    for at least two reasons.  First, the Eisenberg & Miller study spanned 16 years, from 1993 to 2008,

6    while the Fitzpatrick study spanned just two years, 2006 to 2007.  Second, and relatedly, the

7    sample size of settlements in the Eisenberg & Miller study is 68, while the sample size in the

8    Fitzpatrick study is only eight.  Although the Eisenberg & Miller study did lump all settlements

9    higher than $175.5 million into one category, while the Fitzpatrick study considered settlements

10   within a more precise range (i.e., between $250 and $500 million), the length and large sample

11   size of the Eisenberg & Miller study suggest that its results are entitled to greater weight.  *See In*

12   *re Vioxx Prods. Liab. Litig.*, 760 F. Supp. 2d 640, 652 (E.D. La. 2010) (finding that "[t]he

13   Eisenberg and Miller studies are helpful for providing concrete evidence for the relationship

14   between the amount recovered and the attorneys' fee award").  Thus, accepting that the median

15   attorney's fees award in a sample of 68 "megafund" class action settlements over a 16-year period

16   was 10.2%, an award here of 9.8% is reasonable.

17        This percentage is all the more reasonable when one considers that Class Counsel was

18   already awarded the 25% benchmark in attorney's fees for the $20 million settlements with Pixar,

19   Lucasfilm, and Intuit.  ECF No. 916 at 5.  Class Counsel received 25%—or $5 million—in the

20   earlier settlements even though class members there recovered only about $173.73 per person.  *See*

21   Class Counsel Reply at 4.  Factoring in the $5 million fees award from the settlements with Pixar,

22   Lucasfilm, and Intuit, counsel for Plaintiffs in this case will ultimately obtain 10.5% of the

23   combined $435 million from all settlements.  Again, compared to the 10.2% median figure in

24   "megafund" cases over a 16-year period, the percentage award in this case is reasonable.

25

26

27                                                         25

28   Case No. 11-CV-02509-LHK
     ORDER GRANTING IN PART AND DENYING IN PART MOTIONS FOR ATTORNEY'S FEES,
     REIMBURSEMENT OF EXPENSES, AND SERVICE AWARDS

1    For these reasons, the Court is satisfied that a percentage-of-recovery cross-check reveals

2    that fee awards of $40,043,932.50 to Class Counsel and $778,379.25 to Devine Counsel are fair

3    and reasonable in this case.

4        **4. Objections**

5    Three class members objected to the attorney's fees sought by Class Counsel and Devine

6    Counsel in this case: David D. Hsu ("Dr. Hsu"), Eric Veach ("Dr. Veach"), and Mr. Zavislak.  Jue

7    Supp. Decl., Exs. C, L-N.  Of those three, only Mr. Zavislak attended the final approval hearing on

8    July 9, 2015.  *See* Final Approval Tr. at 15:10-30:21.

9    To begin, the Court's decision to reduce Class Counsel's attorney's fees request by more

10   than half (from $81,125,000 to $40,043,932.50) and Devine Counsel's attorney's fees request by

11   more than 80% (from $4,523,500 to $778,379.25) adequately addresses the objectors' concerns

12   regarding the total amount of attorney's fees.  For example, Dr. Hsu's only objection to the

13   attorney's fees requests was that the "attorneys receive too much of the settlement."  Jue Supp.

14   Decl., Ex. C.  Dr. Veach, for his part, said that "[i]f the Class Counsel fees were reduced modestly,

15   for example to $40 million (plus the $5 million already paid, for a total of $45 million), the gap

16   [between counsel's recovery and that of class members] would be considerably reduced."  *Id.*, Ex.

17   M at 2.  Mr. Zavislak, who labeled the requested fees "astronomical," *id.*, Ex. N at 2, agreed at the

18   July 9, 2015 hearing on final approval that an attorney's fees award of around $40 million would

19   be reasonable in this case, *see* Final Approval Tr. at 16:10-12.  By reducing the attorney's fees to a

20   total of $40,822,311.75, the Court's decision satisfies these concerns.  In addition, this amount, as

21   explained above, is below the 25% benchmark typically awarded in the Ninth Circuit but is

22   consistent with fee awards for megafund settlements.  The Court's decision to award a total of

23   $40,822,311.75 in attorney's fees in connection with the instant $415 million settlement, rather

24   than the requested total of $85,648,500, should also increase the average class member recovery

25   by about $700 per person (from roughly $5,071.53 per person to roughly $5,770 per person).

26

27                                          26

United States District Court
Northern District of California

United States District Court
Northern District of California

In adopting the lodestar method with a percentage-of-recovery cross-check, the Court also addresses Dr. Veach's objection that the percentage-of-recovery method is "inappropriate for large common funds."  Jue Supp. Decl., Ex. L ¶¶ 4-5 (citing *WPPSS*, 19 F.3d at 1297).  Further, by combining Class Counsel's and Devine Counsel's awards for purposes of the percentage-of-recovery cross-check, the Court addresses Dr. Veach's objection to treating Plaintiffs' counsel separately for percentage purposes.  *Id.*, Ex. M at 1.

In addition, Dr. Veach and Mr. Zavislak object because Defendants agreed to a so-called "clear sailing" provision in the settlement—i.e., Defendants agreed not to comment on or oppose Class Counsel's fee request "so long as the request for fees is no greater than $81,125,000 (approximately 19.54%) of the $415 million Settlement Fund."  *See* ECF No. 1033-1, Settlement Agreement, Part VII.A.5.  As the Ninth Circuit has explained, however, a "clear sailing" provision "does not signal the possibility of collusion" where, as here, Class Counsel's fee will be awarded by the Court from the same common fund as the recovery to the class.  *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 961 n.5 (9th Cir. 2009).  Indeed, Class Counsel did not negotiate fees separate and apart from class funds, nor did Class Counsel agree that any portion of the $415 million common fund could revert back to Defendants.  *See, e.g.*, *In re Easysaver Rewards Litig.*, 921 F. Supp. 2d 1040, 1054 (S.D. Cal. 2013) (overruling objection to "clear sailing" provision where the settlement was the result of arms-length negotiations, funds for attorney's fees were not held separate from class funds, and no settlement funds would revert back to defendants).  This objection is therefore overruled.

Lastly, the Court overrules the objection by Dr. Veach and Mr. Zavislak that the class had inadequate notice under Rule 23(h) of the Federal Rules of Civil Procedure because the motions for attorney's fees were not posted on the lawsuit's website, even though the motions were all publicly filed, in a timely manner, on the case's public electronic docket.  Jue Supp. Decl., Ex. M at 3; *id.*, Ex. N at 3-6.  The case relied on by the objectors says only that a class counsel's fee motion must be filed *before* the objection deadline.  *See In re Mercury Interactive Corp. Sec.*

27

1   *Litig.*, 618 F.3d 988, 992-93 (9th Cir. 2010).  This is precisely what happened here: the objection

2   deadline was May 21, 2015, and the attorney's fees motions were all timely filed on the public

3   docket on May 7, two weeks prior to that deadline.[12]

4           Moreover, Judge Illston has overruled the very same objection in a prior case.  *See In re*

5   *TFT-LCD (Flat Panel) Antitrust Litig.*, No. MDL 3:07-MD-1827 SI, 2011 WL 7575004, at *2

6   (N.D. Cal. Dec. 27, 2011).  Relying on *In re Mercury Interactive*, Judge Illston explained that

7   "[t]he Ninth Circuit grants wide discretion to each district court to determine how far in advance

8   Class Counsel must file the fee motion," so long as the deadline for objections is "on a date *after*

9   the motion and documents supporting it have been filed."  *Id.* (quoting *In re Mercury Interactive*,

10  618 F.3d at 993).  "Nothing in the *Mercury Interactive* decision," concluded Judge Illston,

11  "requires a motion for attorneys' fees to be posted on a class action website."  *Id.*  The Court

12  agrees.

13          Furthermore, even if having plaintiffs' lawyers upload their attorney's fees motions to the

14  case website is a good idea going forward, neither Dr. Veach nor Mr. Zavislak can show prejudice

15  in this instance.  Immediately upon reviewing the objections, Class Counsel emailed their fee

16  requests and supporting declarations directly to Dr. Veach on May 21, 2015, and to Mr. Zavislak

17  (and also, out of an abundance of caution, to Dr. Hsu) on May 22, 2015.  *See* ECF No. 1094,

18  Supplemental Declaration of Dean M. Harvey ("Harvey Supp. Decl.") ¶¶ 5-7.  Class Counsel

19  informed Dr. Veach and Mr. Zavislak that Class Counsel would not oppose an extension for them

20

21          [12] Although the motions themselves were timely filed, several of Class Counsel's
    supporting declarations were, as Mr. Zavislak points out, filed after midnight on May 8, 2015.  Jue

22  Supp. Decl., Ex. N at 3 n.4.  Nonetheless, these declarations were all filed well in advance of the
    May 21, 2015 deadline to object and thus comply with *In re Mercury Interactive*.

23          It is also true that Mr. Saveri's supplemental declaration was filed on May 21, 2015, the
    date of the objection deadline.  *See* Saveri Supp. Decl.  However, the Court finds no prejudice to

24  the class because Mr. Saveri's supplemental declaration did not change Class Counsel's total
    request for $81,125,000 in attorney's fees.  Rather, the declaration merely informed the Court that

25  JSLF's lodestar was *lower* than what had been previously represented.  *See id.* ¶ 5.  The same is
    true for Mr. Saveri's second supplemental declaration filed on July 24, 2015, which reduced

26  JSLF's lodestar even further.  *See* Saveri Second Supp. Decl. ¶¶ 5-6.

27                                                                28

28  Case No. 11-CV-02509-LHK
    ORDER GRANTING IN PART AND DENYING IN PART MOTIONS FOR ATTORNEY'S FEES,
    REIMBURSEMENT OF EXPENSES, AND SERVICE AWARDS

United States District Court
Northern District of California

to review and comment on the materials. *Id.* Dr. Veach accepted Class Counsel's invitation and submitted a supplemental objection on June 1, which Class Counsel included among the timely objections received. *See* Jue Supp. Decl., Ex. M. Mr. Zavislak, on the other hand, declined to supplement his comments in writing, even though he received the same invitation. *See* Harvey Supp. Decl., Ex. E. What's more, the Court notes that neither Dr. Veach nor Mr. Zavislak ever actually requested to view the attorney's fees motions prior to the objection deadline, even though the Notice provided contact information for Class Counsel to answer any questions class members may have had. *Id.* ¶ 3. Indeed, hundreds of class members contacted Class Counsel with questions, and Class Counsel responded accordingly. *Id.* ¶ 2.

As a result, none of the above objections requires the Court to modify its attorney's fees awards to Class Counsel or Devine Counsel.

### 5. Conclusion: Attorney's Fees Award

In sum, the Court awards $40,043,932.50 in attorney's fees to Class Counsel and $778,379.25 in attorney's fees to Devine Counsel, for a total attorney's fees award of $40,822,311.75 (or 9.8%) arising out of the instant $415 million settlement. Taking into account the $5 million in attorney's fees already awarded to Class Counsel in the settlements with Pixar, Lucasfilm, and Intuit, counsel for Plaintiffs in this action will receive a grand total of $45,822,311.75 (or 10.5%) of the $435 million combined settlements.

### B. Expenses

In common fund cases, the Ninth Circuit has stated that the reasonable expenses of acquiring the fund can be reimbursed to counsel who has incurred the expense. *See Vincent v. Hughes Air W., Inc.*, 557 F.2d 759, 769 (9th Cir. 1977); *accord Wininger v. SI Mgmt. L.P.*, 301 F.3d 1115, 1121 (9th Cir. 2002).

Having reviewed the submissions of Class Counsel, the Court finds that their requests for unreimbursed expenses are reasonable. Class Counsel submitted declarations and invoices reflecting the nearly $5 million in out-of-pocket costs they incurred in this action, including

29

United States District Court
Northern District of California

$1,231,276.66 in unreimbursed expenses.  *See* Cramer Decl., Ex. C (B&M expenses); Sabella

Decl., Ex. 4 (G&E expenses); Dermody Decl., Ex. 3 (LCHB expenses); Saveri Supp. Decl., Ex. 3

(JSLF expenses).  $1,231,276.66 of Class Counsel's nearly $5 million in expenses remain

unreimbursed to this point because the Court previously awarded $3,699,844.31 in expenses to

Class Counsel in connection with the settlements with Pixar, Lucasfilm, and Intuit.  ECF No. 916

at 5.  However, Class Counsel limit their instant request for reimbursement of expenses to the

$1,200,000 provided in the Notice to class members.  ECF No. 1105 ¶ 12.  These costs include:

(1) expert witness fees; (2) mediators' fees; (3) a document vendor to host the over 3.2 million

pages of documents produced; (4) court reporting and videographer services for the 93 depositions

taken by Plaintiffs in this case; (5) electronic research; (6) copying, mailing, and serving

documents; and (7) case-related travel for Plaintiffs, witnesses, experts, and counsel.  No class

member has objected to the amount of these expenses or to Class Counsel being reimbursed for

these expenses.  Accordingly, the Court awards Class Counsel $1,200,000 in unreimbursed

expenses.

Devine Counsel did not seek reimbursement for expenses.  *See* Devine Counsel Mot. at 19.

As a result, the Notice did not inform the class that Devine Counsel would seek reimbursement of

costs.  The Court therefore does not award Devine Counsel any costs for Devine Counsel's

$16,603.06 in expenses.  *See* Girard Decl., Ex. 4 (GG expenses).

**C.  Service Awards**

In evaluating whether class representatives are entitled to reasonable service awards,[13]

district courts "must evaluate their awards individually, using 'relevant factors including the

actions the plaintiff has taken to protect the interests of the class, the degree to which the class has

benefitted from those actions, . . . the amount of time and effort the plaintiff expended in pursuing

the litigation . . . and reasonabl[e] fear[s of] workplace retaliation.'"  *Staton*, 327 F.3d at 977

---

[13] Service awards are known alternatively as "incentive awards" or "incentive payments."

Case No. 11-CV-02509-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTIONS FOR ATTORNEY'S FEES,
REIMBURSEMENT OF EXPENSES, AND SERVICE AWARDS

(alterations in original) (quoting *Cook v. Niedert*, 142 F.3d 1004 (7th Cir. 1998)).  Here, there are

five class representatives: Mr. Devine, Siddharth Hariharan ("Mr. Hariharan"), Mark Fichtner

("Mr. Fichtner"), Daniel Stover ("Mr. Stover"), and the Estate of Brandon Marshall ("Mr.

Marshall's Estate").  The class representatives have each filed declarations with the Court in

support of their service award requests.  ECF No. 1070 ("Devine Decl."); ECF No. 1076

("Hariharan Decl."); ECF No. 1077 ("Fichtner Decl."); ECF No. 1078 ("Stover Decl."); ECF No.

1082 ("Marshall Estate Decl.").

　　　In connection with the settlements with Pixar, Lucasfilm, and Intuit, each class

representative received a $20,000 service award.  ECF No. 916 at 5.  In the instant settlement,

Devine Counsel seeks $160,000 for Mr. Devine.  Devine Counsel Mot. at 22.  In their preliminary

approval motion, Class Counsel sought $80,000 for each of the remaining named plaintiffs.  ECF

No. 1032 at 10.  At the hearing on preliminary approval, however, Class Counsel sought the

Court's permission to seek up to $160,000 per class representative.  ECF No. 1059, Preliminary

Approval Hearing Transcript ("Preliminary Approval Tr.") at 11:13-22.  The Court granted

permission, *see id.* at 25:19-22, and Class Counsel now seek up to $160,000 per class

representative, *see* Class Counsel Mot. at 23 & n.14.

　　　Importantly, a court need not award all named plaintiffs the same incentive payment.  *See,*

*e.g.*, *In re Titanium Dioxide Antitrust Litig.*, No. 10-CV-00318 RDB, 2013 WL 6577029, at *1 (D.

Md. Dec. 13, 2013) (awarding $125,000 to one class representative and $25,000 to the other two

class representatives); *see also Slipchenko v. Brunel Energy, Inc.*, No. CIV.A. H-11-1465, 2015

WL 338358, at *15 (S.D. Tex. Jan. 23, 2015) ("Courts recognize that a differentiation among class

representatives based upon the role that each played may be proper in given circumstances."

(brackets and internal quotation marks omitted)).

　　　In light of the class representatives' declarations, and considering the factors outlined in

*Staton*, the Court finds the following service awards reasonable in this case:

Case No. 11-CV-02509-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTIONS FOR ATTORNEY'S FEES,
REIMBURSEMENT OF EXPENSES, AND SERVICE AWARDS

| Class Representative | Service Award |
|---|---|
| Mr. Devine | $120,000 |
| Mr. Hariharan | $80,000 |
| Mr. Fichtner | $80,000 |
| Mr. Stover | $80,000 |
| Mr. Marshall's Estate | $80,000 |

Factoring in the $20,000 service awards each class representative has already received as part of the settlements with Pixar, Lucasfilm, and Intuit, Mr. Hariharan, Mr. Fichtner, Mr. Stover, and Mr. Marshall's Estate will each receive a total of $100,000 in service awards. Mr. Devine will receive a total of $140,000 in service awards.

In arriving at these amounts, the Court notes that each of the class representatives has taken actions to protect the interests of the class. Specifically, each of the named Plaintiffs states that he has been actively involved in the litigation by maintaining close contact with Class Counsel and providing advice regarding the settlements. *See* Devine Decl. ¶¶ 8-27; Hariharan Decl. ¶¶ 7-8; Fichtner Decl. ¶¶ 7-8; Stover Decl. ¶¶ 7-8; Marshall Estate Decl. ¶¶ 8-9. Moreover, each class representative has spent hundreds of hours working on this case over the past four years, including meeting with counsel, preparing the complaint, reviewing drafts of documents, gathering documents for discovery, preparing interrogatory responses, reviewing Defendants' documents, reviewing expert work, sitting for a deposition, preparing for the deposition, reviewing deposition transcripts, discussing strategy, and communicating with counsel. As a result of these actions, the class has received a substantial benefit in the form of a $415 million settlement. Lastly, each of the class representatives risked significant workplace retaliation by serving as a named plaintiff in this high-profile lawsuit. *See* Devine Decl. ¶¶ 29-30; Hariharan Decl. ¶ 9; Fichtner Decl. ¶ 9; Stover Decl. ¶ 9; Marshall Estate Decl. ¶ 10. At the very least, it is likely that Plaintiffs, except for Mr. Marshall who is deceased, may be viewed as "troublemakers" within the tech industry. *See Cook*, 142 F.3d at 1016 (approving $25,000 service award where class representative "reasonably feared workplace retaliation").

32

1        Mr. Devine's concern, as an objector to the prior settlement, is particularly acute in this

2    regard.  Mr. Devine's objection received considerable media coverage, with his picture appearing

3    in the *New York Times*.  *See* David Streitfeld, *Plaintiff Maligns Deal in Silicon Valley Suit*, N.Y.

4    Times, May 12, 2014, at B1.  As a result, Mr. Devine will likely have an even more difficult time

5    becoming employed in the tech industry again.  *See* Devine Decl. ¶¶ 29-30.  Accordingly, the

6    Court finds that Mr. Devine is entitled to a heightened award in this case.

7        Moreover, service awards of $120,000 and $80,000 are in line with awards in other

8    "megafund" cases.  *See, e.g.*, *Marchbanks Truck Serv. v. Comdata Network, Inc.*, Case No. 07-

9    CV-1078, Dkt. 713 at 2, 8 (E.D. Pa. July 14, 2014) (approving $130 million class action

10   settlement, including service award of $150,000 to one class representative and service awards of

11   $75,000 to two other class representatives); *In re Titanium Dioxide*, 2013 WL 6577029, at *1

12   (awarding $125,000 to lead class representative out of $163.5 million settlement); *Velez v.

13   Novartis Pharm. Corp.*, No. 04 CIV 09194 CM, 2010 WL 4877852, at *4, *8, *28 (S.D.N.Y. Nov.

14   30, 2010) (awarding $125,000 to named plaintiffs from $175 million settlement).

15       Nor is the ratio between the service awards and the average class member recovery

16   unreasonable.  The Ninth Circuit has cautioned that where there is a "very large differential in the

17   amount of damage awards between the named and unnamed class members," that differential must

18   be justified by the record.  *Staton*, 327 F.3d at 978.  Taking into account the Court's reductions of

19   the amounts requested for attorney's fees and service awards, the average class member recovery

20   from the instant settlement should increase from roughly $5,071.53 per person to roughly $5,770

21   per person.  The resulting ratio between service awards and class member recovery is about 21 for

22   Mr. Devine and 14 for the remaining class representatives.  These ratios are justified by the record

23   detailed above, including the "hundreds of hours" each class representative spent on this high-

24   profile litigation and their reasonable fears of "workplace retaliation."  *Cook*, 142 F.3d at 1016.

25   The ratios are also within the range of reasonableness.  *Compare Staton*, 327 F.3d at 948, 975-78

26   (rejecting settlement where 29 class representatives could receive up to $50,000 compared to

27                                              33

United States District Court
Northern District of California

$1,000 for unnamed class members); *Wallace v. Countrywide Home Loans, Inc.*, No. 8:08-1463-JLS MLGX, 2014 WL 5819870, at *4 (C.D. Cal. Apr. 14, 2014) (rejecting settlement where service awards were "33 times greater than *the maximum* possible recovery of other individual class members" (emphasis added)); *Kaufman v. Am. Exp. Travel Related Servs. Co.*, 264 F.R.D. 438, 448 (N.D. Ill. 2009) (disapproving $2,500 service awards because they were "125 times greater than the $20 maximum that any similar Class member could recover"), *with In re Capital One Tel. Consumer Prot. Act Litig.*, — F. Supp. 3d —, 2015 WL 605203, at *19 (N.D. Ill. Feb. 12, 2015) (approving $5,000 service awards where class members who made timely claims were entitled to "at least $39.66"); *Lemus v. H&R Block Enters. LLC*, No. C 09-3179 SI, 2012 WL 3638550, at *5-6 (N.D. Cal. Aug. 22, 2012) (approving $15,000 service awards where the average class recovery was about $1,200).

There was one objection to the requested service awards by Mr. Zavislak.  Jue Supp. Decl., Ex. N at 6-7.  He contends that the requested amounts are excessive, and argues that the fact that Class Counsel seek the same service award for each class representative somehow demonstrates improper collusion among the class representatives.  *Id.* at 7.  He also objects to the increase in the requested service awards from $80,000 in Class Counsel's preliminary approval motion to $160,000 in Class Counsel's instant motion for attorney's fees, reimbursement of expenses, and service awards.  *Id.* at 6.  As to the latter objection, the Court notes that Devine Counsel has sought $160,000 for Mr. Devine from the beginning, *see* ECF No. 1041 at 2, and that the Court gave Class Counsel permission at the preliminary approval hearing to seek up to $160,000 for each of the other class representatives, *see* Preliminary Approval Tr. at 25:19-22.  In addition, the Court's decision to award $80,000 to Mr. Hariharan, Mr. Fichtner, Mr. Stover, and Mr. Marshall's Estate renders that objection moot.  Moreover, Mr. Zavislak is incorrect to suggest that awarding identical amounts to class representatives establishes improper collusion.  Doing so is standard practice in class action settlements, and each of the class representatives who will receive an award of $80,000 declared that he was not promised any amount of money to serve as a class

34

representative, or in connection with his approval of this settlement or any prior settlement in this action. *See* Hariharan Decl. ¶ 4; Fichtner Decl. ¶ 4; Stover Decl. ¶ 4; Marshall Estate Decl. ¶ 7; *see also Radcliffe v. Experian Info. Solutions Inc.*, 715 F.3d 1157, 1164 (9th Cir. 2013) (rejecting settlement that "explicitly condition[ed] the incentive awards on the class representatives' support for the settlement").

## III.    CONCLUSION

For the foregoing reasons, the Court hereby GRANTS in part and DENIES in part the motions for attorney's fees, reimbursement of expenses, and service awards.  The Court awards as follows:

- $40,043,932.50 in attorney's fees to Class Counsel;
- $778,379.25 in attorney's fees to Devine Counsel;
- $1,200,000 in unreimbursed expenses to Class Counsel;
- $120,000 service award to Mr. Devine; and
- $80,000 service awards each to Mr. Hariharan, Mr. Fichtner, Mr. Stover, and Mr. Marshall's Estate.

**IT IS SO ORDERED.**


Dated: September 2, 2015

_____
LUCY H. KOH
United States District Judge

Case No. 11-CV-02509-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTIONS FOR ATTORNEY'S FEES,
REIMBURSEMENT OF EXPENSES, AND SERVICE AWARDS