```
 1                   UNITED STATES DISTRICT COURT
                FOR THE NORTHERN DISTRICT OF CALIFORNIA
 2                        SAN JOSE DIVISION


 3

       ROBERT A. NITSCH, JR., ET AL.,
 4
                  PLAINTIFFS,            CASE NO.  CV-14-04062-LHK
 5
          VS.                           SAN JOSE, CALIFORNIA
 6
       DREAMWORKS ANIMATION SKG INC.,    JUNE 23, 2016
 7     ET AL.,
                                         PAGES 1 - 38
 8                  DEFENDANTS.

 9


10                   TRANSCRIPT OF PROCEEDINGS
                  BEFORE THE HONORABLE LUCY H. KOH
11                  UNITED STATES DISTRICT JUDGE

12

                      A-P-P-E-A-R-A-N-C-E-S
13

14     FOR THE PLAINTIFFS:   COHEN, MILSTEIN, SELLERS & TOLL PLLC
                             BY:   BRENT W. JOHNSON
15                           1100 NEW YORK AVENUE, NW
                             SUITE 500 WEST TOWER
16                           WASHINGTON, D.C. 20005

17                           SUSMAN GODFREY LLP
                             BY:  MATTHEW ROBERT BERRY
18                           1201 THIRD AVENUE, SUITE 3800
                             SEATTLE, WASHINGTON 98101
19
                             HAGENS, BERMAN, SOBOL, SHAPIRO LLP
20                           BY:  JEFF D. FRIEDMAN
                             715 HEARST AVENUE, SUITE 202
21                           BERKELEY, CALIFORNIA 94710

22          (APPEARANCES CONTINUED ON THE NEXT PAGE.)

23     OFFICIAL COURT REPORTER:   IRENE L. RODRIGUEZ, CSR, RMR, CRR
                                  CERTIFICATE NUMBER 8074
24
            PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY,
25     TRANSCRIPT PRODUCED WITH COMPUTER.
```

```
1    A P P E A R A N C E S:  (CONT'D)

2

     FOR THE DEFENDANTS:      JONES DAY
3                             BY:   DAVID C. KIERNAN
                                    SARAH CONWAY
4                             555 CALIFORNIA STREET, 26TH FLOOR
                              SAN FRANCISCO, CALIFORNIA 94104
5
                              WILLIAMS & CONNOLLY LLP
6                             BY:  JONATHAN B. PITT
                              725 TWELFTH STREET, N.W.
7                             WASHINGTON, D.C. 20005

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1     SAN JOSE, CALIFORNIA                      JUNE 23, 2016

 2                    P R O C E E D I N G S

 3          (COURT CONVENED.)

 4              THE CLERK:  CALLING CASE 14-CV-04062, IN RE:

 5     ANIMATION.

 6          IF THE PARTIES WOULD PLEASE STATE THEIR APPEARANCES FOR

 7     THE RECORD.

 8              MR. JOHNSON:  BRENT JOHNSON OF COHEN MILSTEIN FOR

 9     THE PLAINTIFFS, YOUR HONOR.

10              THE COURT:  OKAY.  GIVE ME JUST ONE SECOND, PLEASE.

11     THANK YOU.

12              MR. FRIEDMAN:  JEFF FRIEDMAN FROM HAGENS, BERMAN,

13     SOBOL & SHAPIRO, YOUR HONOR.  GOOD AFTERNOON.

14              THE COURT:  GOOD AFTERNOON.

15              MR. BERRY:  MATT BERRY FROM SUSAN GODFREY FOR THE

16     PLAINTIFFS.

17              THE COURT:  GOOD AFTERNOON.

18              MR. PITT:  GOOD AFTERNOON, YOUR HONOR.

19     JONATHAN PITT FROM WILLIAMS & CONNOLLY FOR BLUE SKY STUDIOS.

20              THE COURT:  OKAY.  GIVE ME ONE SECOND, PLEASE.

21              MR. PITT:  SURE.

22              THE COURT:  OKAY.  THANK YOU.

23              MR. KIERNAN:  GOOD AFTERNOON, YOUR HONOR.

24     DAVID KIERNAN WITH JONES DAY ON BEHALF OF SONY PICTURES

25     ANIMATION AND SONY PICTURES IMAGEWORKS AND WITH ME IS
```

```
 1      SARAH CONWAY ALSO WITH JONES DAY.
 2              THE COURT:  OKAY.  IF YOU WOULD GIVE ME ONE SECOND,
 3      PLEASE.  I HAD ORRICK HERRINGTON AS COUNSEL FOR SONY.
 4              THE CLERK:  HE WAS HERE ON THE LAST APPEARANCE.
 5              THE COURT:  SO MR. KIERNAN WITH JONES DAY.  AND I
 6      APOLOGIZE, WHO IS HERE WITH YOU TODAY?
 7              MR. KIERNAN:  SARAH CONWAY ALSO WITH JONES DAY.
 8              THE COURT:  OKAY.  THANK YOU.  OKAY.  THANK YOU.
 9        OKAY.  SO EVERYONE IS HERE.  OKAY.  GREAT.  THANK YOU.
10      AND THANK YOU FOR YOUR PATIENCE.  LET ME ASK, SHOULD WE TAKE A
11      BREAK?
12        WHAT DO YOU EXPECT THE ADMINISTRATIVE COSTS TO BE?
13              MR. JOHNSON:  YOUR HONOR, IF WE DO -- MAYBE I SHOULD
14      JUST SAY ONE THING UPFRONT.
15              THE COURT:  OKAY.
16              MR. JOHNSON:  AND YOU MAY HAVE HEARD THIS FROM
17      MS. SAKAMOTO BECAUSE I JUST SENT AN E-MAIL.  PLAINTIFFS DO NOT
18      INTEND TO AMEND THEIR COMPLAINT.
19              THE COURT:  OKAY.
20              MR. JOHNSON:  AND THAT HAS AN EFFECT ON WHAT WE'RE
21      DOING HERE TODAY.
22        IF WE HAD INTENDED TO AMEND AND THEN PRESUMABLY TO SEEK
23      AND EXPAND A CLASS DEFINITION, WE WOULD HAVE JUST ASKED YOU TO
24      APPROVE THE NOTICES FOR THE TWO SETTLEMENTS NOW.
25              THE COURT:  OKAY.
```

1        MR. JOHNSON:  BUT SINCE WE'RE NOT GOING TO DO THAT,

2    WE THINK IT'S APPROPRIATE AND EFFICIENT TO ASK YOU TO APPROVE A

3    NOTICE THAT INCLUDES NOT ONLY THE TWO SETTLEMENTS BUT ALSO THE

4    LITIGATION CLASS NOTICE.

5        WE HAVE NOT PUT THAT BEFORE YOU, YOUR HONOR.  WE HAVE JUST

6    RECENTLY MADE THE DECISION NOT TO AMEND.  I APOLOGIZE THAT IT'S

7    NOT BEFORE YOU, BUT WE THINK WE CAN DO THAT PRETTY QUICKLY AND

8    CAN CONSULT WITH THE DEFENDANTS AND GET THAT TO YOU PROBABLY

9    MID NEXT WEEK, MAYBE WEDNESDAY IF THAT SOUNDS OKAY.

10        THE COURT:  OKAY.  YOUR DEADLINE TO AMEND THE

11    COMPLAINT WAS LIKE TOMORROW, RIGHT, OR THE 25TH?  WHEN WAS

12    THAT?

13        MR. JOHNSON:  THE DEADLINE TO AMEND THE COMPLAINT?

14    I DON'T KNOW THAT WE HAD A DEADLINE, YOUR HONOR.

15        THE COURT:  YES, I THINK IT WAS 30 DAYS FROM THE

16    ORDER WHICH WOULD HAVE BEEN MAY 25TH.

17        MR. JOHNSON:  BUT NEVERTHELESS, WE DON'T INTEND TO

18    AMEND.

19        THE COURT:  YOU DON'T INTEND TO AMEND.

20        OKAY.  I GUESS I HAVE TO SEE WHAT THE NOTICE LOOKS LIKE.

21    I MEAN, THERE ARE TWO DIFFERENT CLASS DEFINITIONS SO IT MIGHT

22    BE A LITTLE BIT CONFUSING, RIGHT?  I MEAN, THE SETTLEMENT

23    NOTICE WILL GO TO ALL OF THE CLASS MEMBERS OF ALL OF THE

24    DEFENDANTS; CORRECT?

25        MR. JOHNSON:  IT WOULD BUT SINCE THE LITIGATION

1    CLASS THAT YOU CERTIFIED IS A SUBSET OF THE SETTLEMENT CLASS,

2    WE COULD COMBINE THEM.  IT OBVIOUSLY SAVES MONEY, AND IT SAVES

3    TIME.  YOU KNOW, YOU CAN ARGUE ONE WAY OR THE OTHER WHETHER OR

4    NOT IT WOULD BE MORE OR LESS CONFUSING TO GET TWO NOTICES

5    INSTEAD OF ONE, BUT WE THINK IT'S BEST ON BALANCE TO DO ONE.

6         THE COURT:  OKAY.  AND YOU WILL VERY CLEARLY EXPLAIN

7    SO FOLKS RECEIVING THAT NOTICE DON'T GET CONFUSED.

8         MR. JOHNSON:  WE WILL DO OUR VERY BEST, YOUR HONOR.

9         THE COURT:  OKAY.  WELL, LET ME JUST RESERVE

10   JUDGMENT UNTIL I SEE WHAT YOU'RE GOING TO DO.

11        MR. JOHNSON:  SURE.

12        THE COURT:  WHEN DO YOU THINK YOU COULD DO THAT AND

13   THEN MAYBE I CAN TELL YOU SOME ISSUES I HAVE WITH THE NOTICE

14   AND YOU CAN INCORPORATE WITH THAT?

15        MR. JOHNSON:  WE THOUGHT IT WOULD BE HELPFUL TO SEE

16   WHAT ISSUES YOU HAD WITH THE SETTLEMENT CLASS NOTICE NOW AND

17   THEN WE'LL INCORPORATE THEM WITH THE LITIGATION CLASS NOTICE,

18   INCORPORATE THOSE CHANGES.

19      WE THINK WE CAN DO IT BY WEDNESDAY AND WE CAN PROBABLY GET

20   IT TO THE DEFENDANTS HOPEFULLY TOMORROW AND THEN HOPEFULLY HEAR

21   THEIR FEEDBACK, BOTH SETTLING AND NON-SETTLING, AND GET IT TO

22   YOU BY WEDNESDAY.

23        THE COURT:  OKAY.  THAT WOULD BE JUNE 29TH.

24        MR. JOHNSON:  THAT SOUNDS RIGHT TO ME.

25        THE COURT:  OKAY.  ALL RIGHT.  WELL, LET'S -- YOU

1    KNOW, I MEAN, I CAN CERTAINLY SEE THE COST SAVINGS AND IT MAY

2    BE EASIER FOR THE CLASS BUT YOU MAY WANT TO MAKE SURE IT

3    DOESN'T GET CONFUSING SINCE THE DEFINITIONS ARE DIFFERENT.

4          MR. JOHNSON:  I UNDERSTAND THAT.  I WILL MENTION

5    THAT OBVIOUSLY YOU DIDN'T HAVE THE ISSUE OF THE TWO DIFFERENT

6    CLASS DEFINITIONS BUT IN HIGH-TECH, IF YOU REMEMBER, A COUPLE

7    YEARS AGO YOU APPROVED THE SETTLEMENT, THE INITIAL SETTLEMENTS

8    THERE AND THEN YOU CERTIFIED THE LITIGATION CLASS A WEEK LATER.

9    PLAINTIFFS CAME BACK TO YOU AND SENT YOU A LETTER WITH AN

10   AMENDED NOTICE AND DOING EXACTLY THAT SAME THING AND SO THE

11   NOTICE AND LITIGATION CLASS NOTICE IN ONE.

12         THE COURT:  OKAY.  OKAY.  ALL RIGHT.

13         MR. JOHNSON:  I CAN ANSWER YOUR INITIAL QUESTION IF

14   YOU WOULD LIKE.

15         THE COURT:  THE ADMINISTRATIVE COSTS?

16         MR. JOHNSON:  YEAH.

17         THE COURT:  YES, LET'S GET TO THAT.

18         MR. JOHNSON:  SO WE DON'T THINK IT WILL BE ANYTHING

19   MORE THAN 150,000 AND PROBABLY SIGNIFICANTLY LESS THAN THAT.

20         THE COURT:  OKAY.

21         MR. JOHNSON:  THAT WOULD INCLUDE THE COST OF SENDING

22   E-MAIL NOTICE UP TO 10,000 OR A LITTLE OVER 10,000 CLASS

23   MEMBERS AND MAILING A 36 PAGE OR SO, WHATEVER IT TURNS OUT TO

24   BE IN THE END, NOTICE TO ANY NUMBER OF CLASS MEMBERS THAT WE

25   CAN'T REACH BY E-MAIL THAT WILL INCLUDE ADDRESS SEARCHES AND

1     E-MAILS FOR UNDELIVERABLE MAIL, PHONE SUPPORT AND WEBSITE AND

2     DATA INTAKE AND DISTRIBUTION IN DEALING WITH THE TAX REPORTING

3     AND COSTS FOR A MEDIA CAMPAIGN THAT WILL BE INTERNET, MEDIA,

4     SOCIAL MEDIA AND DISPLAY, BANNER ADS TO FOLLOW UP WITH CLASS

5     MEMBERS.

6          SO YOU'LL HAVE DIRECT NOTICE BY E-MAIL AND DIRECT NOTICE

7     BY MAIL FOR ANYBODY WE DON'T HAVE AN E-MAIL FOR AND THEN KIND

8     OF BELT AND SUSPENDERS KIND OF AN INTERNET CAMPAIGN.

9               THE COURT:  OKAY.  AND WHAT IS YOUR LODESTAR SO FAR?

10               MR. JOHNSON:  OUR LODESTAR IS I THINK IT'S JUST

11     SHORT OF 7.5 MILLION, YOUR HONOR.

12               THE COURT:  OKAY.  AND HOW ARE YOU GOING TO -- I

13     THINK THE WAY IT WAS DONE IN HIGH-TECH IS THAT I DON'T RECALL

14     THERE BEING ANY FEES FOR THAT SETTLEMENT.  I THINK BASICALLY

15     EVERYTHING WENT TO COSTS, AND I THINK THE EXPERT IN THAT CASE.

16     IS THAT HOW YOU'RE PLANNING TO DO THIS ONE AS WELL?

17               MR. JOHNSON:  I THINK, YOUR HONOR, THEY ASKED FOR

18     25 PERCENT OF THOSE INITIAL THREE SETTLEMENTS, AND I BELIEVE

19     THAT'S WHAT YOU AWARDED AND WE --

20               THE COURT:  NO, I'M TALKING ABOUT THE FIRST 20

21     MILLION.

22               MR. JOHNSON:  YES.

23               THE COURT:  I RECALL, I THINK, THAT EXPERT FEES WERE

24     AROUND 4 AND SO THEY ASKED FOR A TOTAL OF 5 MILLION BUT THE

25     VAST MAJORITY OF THAT MONEY WENT TO PAY FOR THEIR EXPERT,

```
1      MR. LEEMER.
2              MR. JOHNSON:  I'M ALMOST SURE THAT YOU AWARDED
3      25 PERCENT ON THE INITIAL SET OF SETTLEMENTS.  SOME OF MY
4      COUNSEL WHO WERE INVOLVED IN HIGH-TECH MIGHT REMEMBER THAT.
5              THE COURT:  OKAY.
6              MR. JOHNSON:  I MIGHT HAVE YOUR HIGH-TECH ORDER.
7              THE COURT:  IT'S OKAY.  IT'S NOT IMPORTANT.
8              MR. JOHNSON:  BECAUSE YOU REMEMBER IN THE FINAL FEES
9      DECISION, YOU BLENDED THAT 25 PERCENT AND THEN THERE WAS FOR
10     THE MUCH LARGER SETTLEMENT I THINK YOU GAVE THEM 9.8 PERCENT.
11     THE BLEND TURNED OUT TO BE 10.5.  SO THERE HAD TO BE SOME
12     NUMBER THAT YOU WERE AVERAGING WITH THE ONE THAT YOU DID WITH
13     THE BIGGER SETTLEMENT.
14             THE COURT:  UH-HUH.  WELL, HOW ARE YOU GOING TO
15     DIVIDE UP -- I MEAN, I ASSUME THE LODESTAR IS FOR THE ENTIRE
16     CASE FOR ALL DEFENDANTS?
17             MR. JOHNSON:  THAT'S RIGHT, YOUR HONOR.
18             THE COURT:  IT'S NOT JUST YOUR LODESTAR FOR THESE
19     TWO DEFENDANTS, RIGHT?  THAT'S THE WHOLE CASE?
20             MR. JOHNSON:  THAT'S CORRECT.  THAT'S THE WHOLE
21     CASE.  WE NEVER REALLY BREAK IT DOWN BY DEFENDANT.  WE WOULD
22     ANTICIPATE ASKING FOR THIS AS OUR CURRENT, YOU KNOW, CURRENT
23     POSITION.  I DON'T KNOW IF IT'S COMPLETELY CONFIRMED AMONG US,
24     BUT THE EXPECTATION NOW IS THAT WE WOULD ASK FOR 25 PERCENT IN
25     FEES AND THEN WE HAVE I THINK 1.35 MILLION IN EXPENSES RIGHT
```

1    NOW.

2              THE COURT:  OH, THAT'S IT?

3              MR. JOHNSON:  IT'S SIGNIFICANTLY LESS, YOUR HONOR.

4              THE COURT:  WOW, DR. ASHENFELTER WAS A LOT CHEAPER.

5              MR. JOHNSON:  I DON'T KNOW IF THAT'S THE CASE.

6              THE COURT:  HE DIDN'T DO TWO ROUNDS.  HE DIDN'T DO

7    TWO ROUNDS OF REPORTS EITHER.

8              MR. JOHNSON:  THAT MIGHT BE RIGHT, YOUR HONOR.  I

9    WOULDN'T CALL DR. ASHENFELTER CHEAP.

10             THE COURT:  NO, I'M SURE HE'S NOT BUT, I MEAN, I'M

11   JUST SAYING RELATIVELY THOSE EXPENSES ARE --

12             MR. JOHNSON:  IT HAS TO BE A FUNCTION OF THE AMOUNT

13   OF WORK THAT HAD BEEN DONE IN HIGH-TECH.  I FORGET EXACTLY WHAT

14   THEY WERE.

15             THE COURT:  SURE.  SURE.  AND THEY WENT THROUGH TWO

16   ROUNDS OF CLASS CERT, TWO ROUNDS OF EXPERT DISCOVERY.  I MEAN,

17   IT WAS -- AND YOU ALL HAD THE BENEFIT OF THAT WORK AND PROBABLY

18   DR. ASHENFELTER DIDN'T HAVE TO POTENTIALLY DO EVERYTHING THAT

19   DR. LEEMER DID.  ANYWAY, IT DOESN'T MATTER.  I'M DIGRESSING.

20   THAT'S FINE.

21        OKAY.  I WASN'T SURE -- IT'S UNCLEAR HERE LIKE WHAT IS THE

22   NUMBER OF CLASS MEMBERS, WHAT IS THE EXPECTED DISTRIBUTION TO

23   THIS CLASS?  DO YOU EVEN HAVE THAT INFORMATION?

24             MR. JOHNSON:  SURE, I DO.

25             THE COURT:  OKAY.  SO WHAT'S THE -- LET'S BREAK IT

1    DOWN BLUE SKY VERSUS SONY?

2              MR. JOHNSON:  LET ME GET MY SHEET OPEN WITH THOSE

3    NUMBERS, YOUR HONOR.

4        SO THE SETTLEMENT CLASS, WHICH IS THE SAME THING AS THE

5    CLASS WE PROPOSED TO YOU INITIALLY ON CLASS CERTIFICATION, THE

6    2001 TO 2010 CLASS HAS 10,042 MEMBERS.

7              THE COURT:  SO THAT NUMBER HAS NOT CHANGED SINCE THE

8    CLASS CERT HEARING.  THAT WAS THE SAME NUMBER.

9              MR. JOHNSON:  CORRECT.  SO 2,038 OF THOSE CLASS

10   MEMBERS HAVE WORKED AT SONY.

11             THE COURT:  OKAY.

12             MR. JOHNSON:  BUT REMEMBER THAT MEMBERS OF OUR CLASS

13   MAY HAVE WORKED FOR MULTIPLE DEFENDANTS.

14             THE COURT:  RIGHT.

15             MR. JOHNSON:  578 OF THEM HAVE WORKED AT BLUE SKY.

16             THE COURT:  OKAY.

17             MR. JOHNSON:  AND THEN FOR RECOVERY, YOUR HONOR, WE

18   THINK THE AVERAGE, IF YOU ASSUME IN $18.95 MILLION FUND BETWEEN

19   THE TWO SETTLEMENTS, IF IT YOU WERE TO AWARD A 25 PERCENT FEE,

20   I THINK I HAVE 1.5 MILLION IN EXPENSES AND IT'S ACTUALLY A HAIR

21   LESS THAN THAT, AND $100,000 IN ADMINISTRATION COSTS, YOU WOULD

22   HAVE A $12.6 MILLION NET SETTLEMENT FUND --

23             THE COURT:  OKAY.  WAIT.  I'M SORRY.  I'M TRYING TO

24   KEEP UP WITH YOU.

25             MR. JOHNSON:  SURE.

1      THE COURT:  SO THAT'S ADMINISTRATIVE COSTS, AND

2   1.3 MILLION IN EXPENSES.  OKAY.  WHAT DOES THAT WORK OUT TO?

3      MR. JOHNSON:  SO I THINK THE NET SETTLEMENT FUND

4   WOULD BE SOMETHING AROUND 12.6 MILLION.

5      THE COURT:  OKAY.

6      MR. JOHNSON:  THE ESTIMATED RECOVERY, THE AVERAGE

7   WOULD BE 1,256.  THE MEDIAN RECOVERY, YOUR HONOR, WOULD BE 649.

8   AND, YOU KNOW, FOR EXAMPLE, JUST TO GIVE YOU AN IDEA OF WHAT

9   THE RECOVERY WOULD BE FOR SOME FOLKS, IF YOU HAD AN EMPLOYEE

10  WHO WORKED AT MORE THAN ONE OF THE DEFENDANTS IN THE CLASS IN

11  ONE OF THE POSITIONS IN THE CLASS DEFINITION, THEY WORKED THERE

12  FOR TWO YEARS AND MADE 75,000, THEY WOULD GET 376.  AND IF YOU

13  HAD AN EMPLOYEE THAT WORKED AT ONE OF THE DEFENDANTS' OR MORE

14  OF THEM FOR FIVE YEARS AND MADE AN AVERAGE OF $150,000 A YEAR,

15  THEY WOULD RECEIVE A PAYOUT OF 1,880 TO GIVE YOU JUST AN IDEA

16  OF WHAT THE RECOVERY WOULD BE FOR SOME CLASS MEMBERS.

17     THE COURT:  UH-HUH.  THE LITIGATION EXPENSES WERE

18  3.699,834.91.

19     MR. JOHNSON:  THAT'S FROM HIGH-TECH, YOUR HONOR?

20     THE COURT:  YES.  THERE WERE ACTUALLY TWO

21  SETTLEMENTS.

22     THE CLERK:  THAT WAS THE FIRST ONE.  DO YOU WANT ME

23  TO FIND THE SECOND ONE?

24     THE COURT:  NO, THAT'S OKAY.  WELL, MY RECOLLECTION

25  WAS THAT IT WAS FOUR, BUT IT'S FINE.

```
1              MR. KIERNAN:  YOUR HONOR, I THINK IT WAS -- I'M JUST

2     LOOKING AT THE PREVIOUS HEARING, I THINK IT WAS 3.7 -- WHAT YOU

3     HAD 3.699,844?

4              THE COURT:  YES, THAT LOOKS LIKE IT WAS RIGHT.  AND

5     PLAINTIFFS' COUNSEL IS RIGHT, THERE WAS A $5 MILLION ATTORNEY'S

6     FEES PLUS REIMBURSEMENT OF THE 3.7 FOR A COMBINED TOTAL OF

7     8.699,844 IN ADDITION TO ALL OF THE SERVICE AWARDS.

8         OKAY.  SO TELL ME HOW YOUR ESCHEATMENT IS GOING TO WORK.

9     WHEN ARE YOU GOING TO DETERMINE WHETHER TO TRY A FURTHER

10    DISBURSEMENT TO THE CLASS AND IS YOUR ESCHEATMENT THE SAME AS

11    THE PREVIOUS PRELIMINARY APPROVAL WHERE IT GOES TO SOME STATE

12    FUND TO BE HELD FOR THE RECIPIENT OR DOES IT GO TO JUST SOME

13    OTHER STATE AGENCY?  HOW DOES THAT WORK?

14             MR. JOHNSON:  YOUR HONOR, WE WOULD DO A FIRST

15    DISTRIBUTION.  IF THERE WAS REMAINING FUNDS, WE WOULD MAKE A

16    JUDGMENT CALL THEN I THINK AS TO WHAT TO DO.  IF IT MADE SENSE

17    TO DO AN ADDITIONAL DISTRIBUTION, WE WOULD.

18        AND THE ESCHEATMENT WORKS, I THINK, IN THE SAME WAY AS YOU

19    HEARD IN THE OTHER CASE JUST THAT YOU HEARD JUST EARLIER.

20             THE COURT:  OKAY.

21             MR. JOHNSON:  FOLKS HAVE A, DEPENDING ON STATE LAW,

22    AN OPPORTUNITY TO CLAIM THOSE FUNDS.

23             THE COURT:  OKAY.  YOU KNOW, IN THE $20 MILLION

24    SETTLEMENT, THE SERVICE AWARDS WERE 20,000.  I WAS JUST

25    WONDERING WHY THE SERVICE AWARDS HERE ARE 10,000.
```

1      MR. JOHNSON:  I DON'T KNOW THAT WE HAD ANY HUGE

2  RATIONALE BEHIND THAT, YOUR HONOR.  IF YOU WANTED TO AWARD

3  20,000 NOW, I THINK THAT'S FINE WITH THE PLAINTIFFS.  WE DON'T

4  ANTICIPATE THIS BEING NECESSARILY THE LAST INCENTIVE PAYMENT

5  THAT WE MIGHT ASK FOR IF THE CASE GOES WELL.

6      THE COURT:  WELL, I WAS JUST WONDERING BECAUSE THAT

7  WAS THE INITIAL LUCAS FILM, PIXAR, INTUIT SETTLEMENT, AND I WAS

8  JUST CURIOUS.

9      OKAY.  I'M LOOKING AT -- THE ADDITIONAL EXPENSES ARE 1.2

10  SO IT WORKED OUT TO BE 4.9 TOTAL IN HIGH-TECH.

11      THANK YOU, MS. SAKAMOTO.

12      OKAY.  IN THE BLUE SKY MOTION IT SAYS THAT BLUE SKY WILL

13  TAKE NO CONDITION ON THE PLAINTIFFS' ATTORNEY'S FEES, EXPENSES.

14  BUT IT DOESN'T LOOK LIKE -- AND THERE WAS A SECTION THAT IS

15  CITED, BUT THAT SECTION DOESN'T HAVE IT.

16      PARAGRAPH 3 IS WHAT IS CITED.  I GUESS YOU'LL HAVE TO WORK

17  THAT OUT AMONGST YOURSELVES.

18      MR. JOHNSON:  SO IT REFERS TO PARAGRAPH 3 OF THE

19  SETTLEMENT AGREEMENT, YOUR HONOR.

20      THE COURT:  UH-HUH, SECTION 6(A).

21      MR. JOHNSON:  THAT MIGHT BE JUST A TYPO, YOUR HONOR.

22  I THINK THAT CLAUSE IS IN HERE IN THE BLUE SKY SETTLEMENT

23  AGREEMENT SOMEWHERE.

24      THE COURT:  IT'S JUST IN A DIFFERENT SECTION.

25  THAT'S FINE.  YOU KNOW, THAT'S UP TO YOU ALL HOW YOU DEAL WITH

1      THAT.  THAT WOULDN'T BE A BASIS TO AFFECT OWNER APPROVAL.  AND

2      IF THERE'S AN EQUIVALENT PROVISION IN THE SONY AGREEMENT,

3      YOU'LL HAVE TO LOOK FOR THAT.

4           IT SOUNDS LIKE YOU'RE GOING TO BE REQUESTING A PERCENTAGE

5      OF THE FUND; RIGHT?

6                MR. JOHNSON:  THAT'S OUR CURRENT POSITION, YOUR

7      HONOR.

8                THE COURT:  OKAY.  AND HAVE DISNEY AND DREAMWORKS

9      GIVEN YOU THE CLASS MEMBER CONTACT INFORMATION SO THAT YOU CAN

10     SEND THIS COMBINED OR SEPARATE NOTICE OUT?

11                MR. JOHNSON:  SO ALL OF THE DEFENDANTS HAVE TO GIVE

12     US OR GIVE DIRECTLY TO THE CLAIMS ADMINISTRATOR DATA SO WE CAN

13     SEND THE NOTICE OUT.

14                THE COURT:  OKAY.

15                MR. JOHNSON:  THE DEADLINE IN THE ORDER IS 20 DAYS

16     AFTER YOU PRELIMINARILY APPROVE THE SETTLEMENTS SO THAT'S WHEN

17     THEY WOULD DO THAT.

18                THE COURT:  ALL RIGHT.  WELL, LET'S GO THROUGH SOME

19     OF THE DOCUMENTS.

20          YOU HEARD WHAT I SAID TO THE PREVIOUS PARTIES.  I DON'T

21     SEE WHY OBJECTIONS NEED TO BE SIGNED UNDER PENALTY OF PERJURY.

22     I DON'T KNOW IF IT'S ONLY BECAUSE YOU'RE REQUESTING THAT IF YOU

23     GET A PROFESSIONAL OBJECTOR THEY IDENTIFY ALL OF THE OBJECTIONS

24     THAT THEY HAVE ASSERTED IN THE LAST FIVE YEARS.

25          IS THAT WHAT --

1        MR. JOHNSON:  IT MAY HAVE BEEN GEARED TOWARDS THAT,

2    YOUR HONOR, BUT WE HAVE NO PARTICULAR DOG IN THE HUNT ABOUT

3    THAT CLAUSE.  WE CAN STRIKE IT.

4        THE COURT:  OKAY.  THANK YOU.  I WOULD LIKE YOU TO

5    DO THAT.  AND THAT WOULD HAVE TO BE BOTH IN THE SETTLEMENT AND

6    IN THE NOTICE.

7        I ALSO, AS YOU HEARD WITH THE COATES CASE THAT CAME BEFORE

8    YOU THIS AFTERNOON, I DON'T REQUIRE OBJECTIONS BE FILED AND

9    SERVED.  IF YOU WANT TO USE A SIMILAR LANGUAGE THAT I PROPOSED

10   TO THE PREVIOUS PRELIMINARY APPROVAL MOTION THIS AFTERNOON, YOU

11   CAN HAVE THEM MAIL THEIR WRITTEN OBJECTION TO MY CASE SYSTEM

12   ADMINISTRATOR WHO CAN THEN FILE IT AND PLACE IT ON ECF SO WE'LL

13   ALL GET NOTICE AT THE SAME TIME.

14       MR. JOHNSON:  YOUR HONOR, I THINK THAT'S WHAT WE

15   HAVE NOW.  IF YOU LOOK AT, I THINK, IT'S AT THE NOTICE THAT WE

16   FILED WITH SONY AT THE BOTTOM OF WHAT IS PAGE 37 ACCORDING TO

17   ECF WE HAVE CLASS ACTION CLERK INSTEAD OF CASE ADMINISTRATOR.

18       THE COURT:  WELL, BUT -- YES, IT'S A LITTLE BIT

19   CONFUSING IN YOUR SETTLEMENT AGREEMENTS.  LET ME GO TO PAGE 7

20   OF YOUR BLUE SKY AGREEMENT.

21       MR. JOHNSON:  OKAY.

22       THE COURT:  IT SAYS OBJECTIONS MUST BE FILED WITH

23   THE COURT WITH COPIES SERVED ON CLASS COUNSEL AND BLUE SKY'S

24   COUNSEL ON OR ABOUT 45 DAYS AFTER THE NOTICE WAS INITIALLY

25   MAILED TO CLASS MEMBERS.

```
1          SO, I MEAN, THE LANGUAGE SAYS FILED SO I DON'T KNOW IF WE

2     CAN READ FILE LOOSELY TO MEAN THAT YOU JUST MAIL IT IN AND THE

3     CLERK'S OFFICE FILES IT BUT WHEN YOU USE LANGUAGE LIKE FILED

4     AND SERVED, IT DOES HAVE SPECIFIC LEGAL MEANING.

5               MR. JOHNSON:  PLAINTIFFS HAVE NO OBJECTION TO DOING

6     IT HOW WE ACTUALLY HAVE IT IN THE NOTICE.  I WAS UNAWARE THAT

7     WE HAD DONE THAT IN THE SETTLEMENT.

8               THE COURT:  AND IT'S THE SAME THING IN THE SONY

9     AGREEMENT ON PAGE 7.

10              MR. JOHNSON:  OKAY.

11              THE COURT:  BUT YOU HAVE -- AT LEAST IN THE SONY

12    AGREEMENT YOU SAY THAT UNLESS THE COURT PROVIDES OTHERWISE,

13    OBJECTIONS MUST BE FILED WITH THE COURT WITH COPIES SERVED ON

14    CLASS COUNSEL, SONY PICTURES' COUNSEL, AND POSTMARKED ON OR

15    BEFORE 45 DAYS AFTER THE NOTICE OF THE INITIALLY MAILED CLASS

16    MEMBERS.

17         SO WITH THE SONY AGREEMENT, I THINK WE CAN CHANGE OR AT

18    LEAST CLARIFY HOW THE OBJECTIONS HAVE TO BE SUBMITTED TO THE

19    COURT.

20         I DON'T KNOW WHAT THE BLUE SKY AGREEMENT DOESN'T HAVE THAT

21    UNLESS OTHERWISE ORDERED BY THE COURT SO THAT --

22              MR. JOHNSON:  WE CAN JUST FIX THAT, UNLESS THERE'S

23    AN OBJECTION.

24              THE COURT:  YOU CAN HAVE A CLAIM CONSTRUCTION ON

25    FILE THAT IT MEANS THAT YOU MAIL IT IN.
```

```
1              MR. PITT:  THAT'S FINE WITH US, YOUR HONOR.  WE
2    DON'T HAVE ANY PARTICULAR PREFERENCE AND THERE'S NO MAGIC TO
3    THAT LANGUAGE IN THERE.  SO I THINK WE'RE HAPPY TO DEAL WITH IT
4    IN WHATEVER WAY YOUR HONOR WANTS.
5         THE ONE THING IS THAT I WOULD HOPE THAT IT WOULDN'T BE A
6    CHANGE TO THE AGREEMENT THAT WOULD NECESSITATE AN ADDITIONAL
7    ROUND OF CAFA NOTICES.  THAT WOULD BE GOOD.  BUT OTHER THAN
8    THAT, WE'RE PERFECTLY WILLING TO FILE A NOTICE OF CONSTRUCTION
9    OR WHATEVER YOU WOULD LIKE TO DO.
10             MR. JOHNSON:  YOUR HONOR, I THINK IT'S IMPLICIT THAT
11   THE COURT ORDERS KIND OF SUPERCEDE THAT.  SO WE CAN PUT THAT IN
12   THE PROPOSED ORDER TO YOU, YOUR HONOR, THAT WE WOULD SUBMIT
13   WITH THE AMENDED NOTICE ON WEDNESDAY.  THERE'S JUST A COUPLE OF
14   CHANGES TO THE PROPOSED ORDER THAT WE SUBMITTED THAT WOULD NEED
15   TO BE -- WE WOULD NEED TO DO IT IN LIGHT OF COMBINING THE
16   LITIGATION NOTICE WITH THE SETTLEMENT NOTICES.
17             THE COURT:  SURE.  OKAY.  SO LET'S JUST GO THROUGH
18   SOME SMALL NITS ON -- WELL, WHICH DOCUMENT IS ACTUALLY GOING TO
19   BE SENT IN THE E-MAIL AND WHAT IS GOING TO BE SENT BY MAIL?
20        IS IT THE POSTCARD ONE THAT IS GOING TO BE SENT IN THE
21   MAIL AND THEN THE LONG ONE IS GOING TO BE E-MAILED OR VICE
22   VERSA OR WHAT?
23             MR. JOHNSON:  I DON'T KNOW THAT WE'RE -- I DON'T
24   KNOW THAT WE'RE GOING TO USE THE POSTCARD, YOUR HONOR.  WE'RE
25   GOING TO E-MAIL THE LONG FORM, AND WE'RE GOING TO MAIL THE LONG
```

```
1    FORM.
2         IF WE NEED THE POSTCARD TO DO SOME SORT OF INTERNET
3    ADVERTISING, WE WOULD LIKE TO HAVE IT THERE.
4         BUT THE LONG FORM NOTICE IS WHAT WE SHOULD FOCUS ON.
5              THE COURT:  OKAY.  SO YOU MAY NOT DO THE SHORT ONE,
6    THE POSTCARD ONE?
7              MR. JOHNSON:  I DON'T CURRENTLY ANTICIPATE THAT WE
8    ARE GOING TO USE IT.
9              THE COURT:  OKAY.  BUT THE LONG FORM WILL BE
10   E-MAILED AND SNAIL MAILED?
11             MR. JOHNSON:  SNAIL MAILED TO THE FOLKS THAT WE
12   DON'T HAVE AN E-MAIL FOR.
13             THE COURT:  OKAY.  GOT IT.  OKAY.  WELL, LET'S DO
14   THE POSTCARD JUST IN CASE YOU HAVE ANY.
15             MR. JOHNSON:  OKAY.  I THINK WE SHOULD LOOK AT THE
16   NOTICES THAT ARE ATTACHED TO THE SONY MOTION SINCE THEY WERE
17   SUBSEQUENT, YOU KNOW, THEY COMBINED THE SETTLEMENT NOTICES AND
18   WITH POSTCARD AND LONG FORM.
19             THE COURT:  OKAY.  IS THAT 273-3?
20             MR. JOHNSON:  YES.
21             THE COURT:  OKAY.  GOOD.  THAT'S WHAT I'M LOOKING
22   AT, TOO.
23             MR. JOHNSON:  OKAY.  GREAT.
24             THE COURT:  AND LET'S DO THE POSTCARD FIRST.
25             MR. JOHNSON:  OKAY.
```

```
1              THE COURT:  I HAD JUST A COUPLE OF COMMENTS.  I

2    THOUGHT IT WAS KIND OF CONFUSING WHEN WE TALKED ABOUT YOUR

3    RIGHT TO PURSUE A LATER LAWSUIT AGAINST BLUE SKY, SONY PICTURES

4    OR ANY RELATED ENTITIES.

5         MY CONCERN IS THAT WHEN I THOUGHT OF ANY RELATED ENTITIES,

6    I THOUGHT OF ANY OTHER NON-SETTLING DEFENDANTS.

7         AND I THINK THAT'S KIND OF CONFUSING.

8              MR. JOHNSON:  OKAY.

9              THE COURT:  IT WOULD BE CLEARER IF YOU INTEND TO

10   MEAN FOX ENTERTAINMENT GROUP FOR BLUE SKY, THEN I WOULD RATHER

11   PUT THAT IN, BLUE SKY, ITS PARENT COMPANY FOX ENTERTAINMENT

12   COMPANY, LLC, AND SONY PICTURES BECAUSE LATER ON IN THE

13   DOCUMENT YOU THEN INCLUDE IN THE DEFINITION OF THOSE ENTITIES,

14   YOU KNOW, SONY AND BLUE SKY, THEIR PARENTS, THEIR DIRECTORS.

15        DO YOU SEE WHAT I'M SAYING?

16             MR. JOHNSON:  YEAH, I SEE WHAT YOU'RE SAYING.  MAYBE

17   IF WE SAID SONY RELATED ENTITIES AND BLUE SKY RELATED ENTITIES?

18   WOULD THAT MAKE IT MORE SPECIFIC ENOUGH?  I GUESS I WANT TO

19   ENCOMPASS THE RELEASED PARTIES A LITTLE BIT MORE THAN JUST

20   MENTIONING THE OTHER SPECIFIC ENTITIES.  IT'S DIFFICULT IN A

21   POSTCARD, YOUR HONOR.

22             THE COURT:  THAT'S FINE.  THAT'S FINE.  JUST AS LONG

23   AS IT DOESN'T GET CONFUSING.  I IMMEDIATELY THOUGHT OF THE

24   OTHER DEFENDANTS.

25        OKAY.  THAT'S FINE.  I MEAN, THE THING IS THAT THE LONG
```

1    FORM, WHEN IT DEFINES THE BLUE SKY STUDIO RELEASE AND DEFINES

2    THE SONY PICTURES RELEASE, THAT'S WHERE IT LISTS EVERYBODY.

3              MR. JOHNSON:  RIGHT.

4              THE COURT:  SO YOU KIND OF ALREADY HAVE IT IN THE

5    LONG FORM AND THAT'S WHY I DON'T KNOW IF YOU REALLY --

6              MR. JOHNSON:  THEORETICALLY SOMEONE WHO SEES A

7    POSTCARD, I THINK THIS WOULD BE VERY FEW, IF ANY, FOLKS THAT

8    WOULD SEE THE POSTCARD, EVEN IF WE ARE GOING TO USE IT AND THEN

9    THEY WOULDN'T BE GIVEN DIRECT NOTICE, I MEAN --

10             THE COURT:  THAT'S FINE.  IF YOU WANT TO PUT

11   BLUE SKY, BLUE SKY RELATED ENTITIES, SONY PICTURES AND SONY

12   RELATED ENTITIES, THAT'S FINE.

13             MR. JOHNSON:  YEAH, WE'LL DO THAT.

14             THE COURT:  AND JUST GO AHEAD AND DO THAT.

15       YOU'RE GOING TO CLARIFY THIS SAYS ALL COMMENTS AND

16   OBJECTIONS MUST BE FILED WITH THE COURT OR POSTMARKED.  YOU'LL

17   CLARIFY THAT; RIGHT?

18             MR. JOHNSON:  YES.

19             THE COURT:  OKAY.  AND I FOUND THE PARTIAL

20   SETTLEMENT VERY CONFUSING BECAUSE IT'S ALMOST ASSUMING THAT THE

21   REMAINING DEFENDANTS ARE GOING TO SETTLE WHICH, YOU KNOW, WE

22   DON'T KNOW THAT.

23       AND I KNOW YOU DEFINE PARTIAL SETTLEMENT IN THE LONG FORM.

24   BUT AS YOU SAID, SOMEONE MIGHT JUST READ THIS POSTCARD, AND I'M

25   LOOKING AT YOU DON'T HAVE TO PAY CLASS COUNSEL TO PARTICIPATE.

1    THEY WILL ASK THE COURT TO AWARD FEES AND COSTS TO BE PAID OUT

2    OF THE PARTIAL SETTLEMENT WHICH WHEN I FIRST READ IT, I READ

3    THE POSTCARD BEFORE I READ THE LONG FORM.  I THOUGHT, OH,

4    THEY'RE ONLY GOING TO BE ASKING ATTORNEY'S FEES FOR ONLY A PART

5    OF THE SETTLEMENT FUND.  THAT'S HOW I INTERPRETED IT.

6         AND AS YOU SAID, PEOPLE WHO READ THE POSTCARD ARE NOT

7    NECESSARILY GOING TO GO AND READ THE DEFINITION OF A PARTIAL

8    SETTLEMENT IN THE LONG FORM SO I FOUND THAT CONFUSING.

9              MR. JOHNSON:  SO TRY TO WORK ON THAT SENTENCE?

10             THE COURT:  YES.  AND I DON'T THINK IT'S REALLY TRUE

11   THAT THEY'RE NOT GOING TO PAY FOR THEIR COUNSEL.  THEY ARE.

12   THEY'RE JUST PAYING IT INDIRECTLY TO THE SETTLEMENT FUND SO IF

13   THERE'S ANOTHER WAY THAT YOU CAN PHRASE THAT.

14             MR. JOHNSON:  I THINK WE CAN STRIKE -- YEAH, STRIKE

15   THE SENTENCE THAT YOU DON'T HAVE TO PAY CLASS COUNSEL TO

16   PARTICIPATE, SURE.

17             THE COURT:  YES.  YOU CAN JUST SAY, YOU KNOW, CLASS

18   COUNSEL WILL REQUEST TO BE REIMBURSED FOR ITS FEES AND COSTS

19   FOR THE SETTLEMENT FUND OR JUST SOMETHING LIKE THAT.  OKAY.

20             MR. JOHNSON:  OKAY.

21             THE COURT:  SO THAT WAS IT FOR THE POSTCARD.  LET'S

22   GO TO THE LONG FORM.  AND THIS IS PROBABLY -- AND THESE ARE

23   REALLY SMALL NIT PICKS, BUT I WASN'T SURE WHEN WE SAY IF YOU DO

24   NOTHING, YOU'LL WAIVE ANY RIGHTS TO PURSUE A LATER LAWSUIT OF

25   YOUR OWN.

1        I JUST WASN'T SURE WHAT THE LATER IS MEANING.  I WOULD

2    JUST SAY TO PURSUE A LAWSUIT ON YOUR OWN.

3              MR. JOHNSON:  OKAY.  YOU'RE ON PAGE 30, YOUR HONOR?

4              THE COURT:  YES, 30 OF 44.  I WOULD TAKE THE "LATER"

5    OUT.

6              MR. JOHNSON:  STRIKE THE "LATER" IN THE FIRST BOX

7    THERE?

8              THE COURT:  YES.  I WOULD ALSO TAKE IT OUT, GOING

9    BACK TO THE POSTCARD, IT IS IN THE SECOND SENTENCE OF WHAT ARE

10   MY OPTIONS, IT SAYS IF YOU DO NOTHING, YOU WILL WAIVE ANY RIGHT

11   TO PURSUE A LAWSUIT AGAINST BLUE SKY AND THEIR ENTITIES, ET

12   CETERA.

13        OKAY.  AND THEN YOU'RE GOING TO TAKE OUT UNDER PENALTY OF

14   PERJURY ON PAGE 30 OR 44?

15             MR. JOHNSON:  YEP.

16             THE COURT:  AND I DON'T KNOW, I WOULD JUST ASK YOU

17   TO THINK ABOUT THIS PARTIAL SETTLEMENT.  I MEAN, THE

18   EXPLANATION IS CLEAR IN PARAGRAPHS 4 AND 5 ON PAGE 32 OF 44 BUT

19   ON THE POSTCARD IT DOESN'T MAKE A LOT OF SENSE BECAUSE THERE'S

20   NO EXPLANATION AS TO WHY IT'S PARTIAL.  ANYWAY, I WOULD JUST

21   ASK YOU TO CONSIDER THAT.

22             MR. JOHNSON:  OKAY.

23             THE COURT:  NOW, I NOTICE THAT CLASS COUNSEL YOU

24   DIDN'T GIVE ANY PHONE NUMBERS.  AND, YOU KNOW, WHILE THIS CLASS

25   PROBABLY INCLUDES PEOPLE WHO HAVE E-MAILS AND E-MAIL ACCOUNTS,

1       THERE'S JUST NO PHONE NUMBER.

2           AND WHAT CONCERNS ME IS ON THE LAST PAGE, PAGE 39 OF 44

3       AND PARAGRAPH 28, GETTING MORE INFORMATION, IT SAYS, WELL, IF

4       YOU HAVE MORE INFORMATION, YOU CAN CONTACT CLASS COUNSEL, SEE

5       QUESTION 17 FOR CONTACT INFORMATION.

6           BUT VISIT THE OFFICE OF THE CLERK OF THE COURT FOR THE

7       U.S. DISTRICT COURT FOR THE NORTHERN DISTRICT CALIFORNIA, 280

8       SOUTH FIRST STREET, SAN JOSE, CALIFORNIA BETWEEN 9:00 TO 4:00

9       P.M. MONDAYS THROUGH FRIDAY, AND INCLUDING COURT HOLIDAYS.

10      IT'S LIKE YOU'RE REALLY ENCOURAGING THEM TO COME TO THE CLERK'S

11      OFFICE AND YOU'RE UNWILLING TO GIVE YOUR OWN CLASS COUNSEL'S

12      PHONE NUMBER.

13          IT'S LIKE, HUH-UH, I DO NOT WANT 50 PEOPLE COMING TO OUR

14      CLERK'S OFFICE ASKING ABOUT THIS SETTLEMENT AGREEMENT SO

15      I --YOU KNOW, FIRST OF ALL, I WOULD GIVE PHONE NUMBERS.  OKAY?

16              MR. JOHNSON:  OKAY.

17              THE COURT:  ON PARAGRAPH 17.  I WOULD GIVE PHONE

18      NUMBERS BECAUSE NOT EVERYONE WILL HAVE AN E-MAIL OR SOME PEOPLE

19      MAY NEED TO HAVE A DISCUSSION WHICH WOULD BE EASIER TO HAVE

20      REALTIME.

21          SO I WOULD INCLUDE PHONE NUMBERS.  AND THEN I WOULD REPEAT

22      THAT CLASS COUNSEL INFORMATION IN PARAGRAPH 28.  SO IT'S CLEAR

23      THAT YOUR NUMBER 1 SOURCE IS NOT THE CLERK'S OFFICE OF THE

24      COURTHOUSE, IT'S CLASS COUNSEL.  AND HERE IT'S VERY EASY FOR

25      YOU TO FIND HOW TO CONTACT THEM IF YOU HAVE ANY QUESTIONS.

```
1              MR. JOHNSON:  WE'LL DO, YOUR HONOR.

2              THE COURT:  SO WHAT DO YOU EXPECT PEOPLE TO GET WHEN

3       THEY VISIT THE CLERK'S OFFICE?  DO YOU WANT THEM TO BE --

4       BECAUSE OUR INTAKE FOLKS ARE NOT GOING TO BE ABLE TO GIVE CLASS

5       MEMBERS ANY -- I MEAN, OTHER THAN -- I MEAN, I GUESS IF

6       SOMEBODY WANTS TO REQUEST A FILE, BUT NONE OF IT IS EVEN HARD

7       COPY, IT'S ALL ON ECF.  SO WHAT IS IT THAT YOU'RE INTENDING

8       THEM TO GET FROM A POOR INTAKE PERSON ON THE SECOND FLOOR ABOUT

9       THIS SETTLEMENT?

10             MR. JOHNSON:  YOUR HONOR, I DON'T KNOW WHY WE

11      PROPOSED THAT, AND WE CAN STRIKE IT, THE ENTIRE GOING TO THE

12      CLERK OF COURT.  I THINK WE CAN INVITE THEM TO CONTACT CLASS

13      COUNSEL AND CONSULT THE DOCKET AND LEAVE IT RIGHT THERE.

14             THE COURT:  OKAY.  THAT'S GOOD.  THANK YOU.

15          (PAUSE IN PROCEEDINGS.)

16             THE COURT:  ALL RIGHT.  WELL, MS. SAKAMOTO SAYS THAT

17      YOU CAN GET FREE ACCESS TO THE DOCKET IF YOU GO TO THE CLERK'S

18      OFFICE.

19             MR. JOHNSON:  I DIDN'T EVEN KNOW THAT, YOUR HONOR.

20             THE COURT:  SO THIS SAYS, YOU KNOW, YOU CAN GO TO

21      THE WEBSITE.  AND HOPEFULLY MOST PEOPLE GO TO THE WEBSITE.

22             MR. JOHNSON:  YEP.

23             THE COURT:  NUMBER 2.  YOU CAN CONTACT CLASS

24      COUNSEL.  AND YOU ARE GOING TO PUT IN CLASS COUNSEL'S NAME,

25      CONTACT INFORMATION INCLUDING A PHONE NUMBER.
```

1          3.  YOU CAN ACCESS THE COURT DOCKET BY GOING THROUGH

2     PACER.

3          AND THEN -- BUT LET ME ASK MS. SAKAMOTO, I REALLY DON'T --

4     I MEAN, FIRST OF ALL, I DON'T THINK MANY PEOPLE WILL COME IN

5     PERSON, BUT I ALSO CAN'T IMAGINE OUR INTAKE PERSON APPRECIATING

6     GETTING A BUNCH OF COMMENTS ABOUT THE SETTLEMENT AGREEMENT OR

7     QUESTIONS OR --

8               THE CLERK:  CORRECT.

9               THE COURT:  AND THERE'S REALLY NO -- IT'S NOT LIKE

10    SUPERIOR COURT WHERE THEY ARE ACTUALLY HARD COPY FILED THAT

11    SOMEONE CAN REQUEST AND PHOTOCOPY.  EVERYTHING IS ONLINE HERE

12    SO IT'S NOT LIKE THEY WILL BE ABLE TO REQUEST A HARD COPY FILE.

13         SO I WOULD SAY TAKE IT OUT.  ALL RIGHT.  LET'S TAKE IT

14    OUT.

15              MR. JOHNSON:  AND, YOUR HONOR, I DON'T KNOW WHY WE

16    DON'T HAVE THE CLAIMS ADMINISTRATOR LISTED THERE AND THEIR

17    CONTACT INFORMATION.  WE'LL ADD THAT.

18              THE COURT:  YES, THAT TOO.  WELL, I'M HOPING THAT

19    WWW.ANIMATIONLAWSUIT.COM HAS ALL OF THE MAJOR ORDERS.

20              MR. JOHNSON:  IT WILL, AND WE'LL KEEP THAT AS THE

21    FIRST STOP.  BUT WE'LL ADD THAT OTHER OPTION.

22              THE COURT:  YES, BECAUSE, FRANKLY, SCROLLING THROUGH

23    THE DOCKET IS NOT AN EASY THING AND TRYING TO FIND INFORMATION

24    IS NOT AN EASY THING.

25              MR. JOHNSON:  TRUE.

1              THE COURT:  SO I DON'T THINK A LOT OF FOLKS WILL BE

2     GOING THROUGH PACER.

3          ALL RIGHT.  SO YOU'RE GOING TO ADD CLAIMS ADMINISTRATOR.

4          IS THIS IN THE AGREEMENT PLAINTIFFS' COUNSEL WILL NOT

5     RECEIVE ANY PORTION OF THEIR FEES AT LEAST UNTIL THE INITIAL

6     DISTRIBUTION OF PAYMENTS AND CLASS MEMBERS HAVE BEEN APPROVED

7     BY THE COURT?

8              MR. JOHNSON:  I DON'T REMEMBER WHETHER THAT'S IN THE

9     AGREEMENT OR NOT, BUT WE'RE FINE MAKING THAT COMMITMENT.

10             THE COURT:  OKAY.  WELL, I MEAN, IF YOU'RE

11    REPRESENTING IT IN THE NOTICE AND YOU DON'T DO IT, YOU'RE

12    PROBABLY GOING TO GET SUED SO YOU MIGHT AS WELL MAKE IT

13    OFFICIAL AND PUT IT IN.

14             MR. JOHNSON:  THERE'S DETERRENCE LESS THAN THAT THAT

15    WOULD KEEP US FROM VIOLATING THAT.

16             THE COURT:  OKAY.  WELL, I WOULD -- IF YOU'RE GOING

17    TO DO A LITTLE -- WELL, I DON'T KNOW HOW YOU WANT TO DEAL WITH

18    THAT.  I DEFER TO YOU ON THAT.

19             MR. JOHNSON:  OKAY.

20             THE COURT:  AND SO THEN ON PAGE 37 OF 44 YOU'RE

21    GOING TO TAKE OUT THE PENALTY OF PERJURY.

22         YOU'RE GOING TO CLARIFY THERE IS NO CLASS ACTION CLERK SO

23    NOBODY WILL KNOW WHO THAT IS AND NOBODY WILL DEAL WITH THAT.

24         SO IF YOU WOULD PLEASE SAY JUDGE KOH'S CASE SYSTEM

25    ADMINISTRATOR.

```
1              MR. JOHNSON:  CASE SYSTEM ADMINISTRATOR.

2              THE COURT:  CASE SYSTEM ADMINISTRATOR, THREE

3     SEPARATE WORDS.  THAT IS AN OFFICIAL TITLE IN THE CLERK'S

4     OFFICE SO THAT WILL GO TO A SPECIFIC PERSON WHO IS ASSIGNED TO

5     ME AND HAS THE RESPONSIBILITY FOR TAKING CARE OF THAT.

6              MR. JOHNSON: GOT IT.

7              THE COURT:  OKAY.  NOW, I JUST NOTE FOR THE

8     INTENTION TO COME TO THE FAIRNESS HEARING, I THINK PREVIOUSLY

9     YOU JUST HAD IT BEING MAILED BUT HERE YOU'RE HAVING IT FAXED

10    AND E-MAILED IN PARAGRAPH 25.  I DON'T KNOW IF THAT'S YOUR

11    INTENTION BUT --

12             MR. JOHNSON:  HOLD ON.

13             THE COURT:  BUT I THINK IN THE SETTLEMENT AGREEMENT

14    IT DOESN'T TALK ABOUT FAXING OR E-MAIL.  YOU CAN DECIDE HOW YOU

15    WANT TO DEAL WITH THAT.

16             MR. JOHNSON:  I THINK THERE WE SHOULD JUST PULL THE

17    WORDS FAXED OR E-MAILED BECAUSE IT ONLY GIVES THEM AN OPTION TO

18    MAIL.

19             THE COURT:  OKAY.  SO THAT YOU CAN JUST TAKE THAT

20    OUT.

21             MR. JOHNSON:  YEAH, WE'LL CUT THAT OUT.

22             THE COURT:  NOW, I, YOU KNOW -- I REALLY WOULD BE

23    RELUCTANT TO RESCHEDULE A FAIRNESS HEARING SINCE THAT'S WHEN

24    EVERYONE HAS GOTTEN NOTICE TO COME.

25             MR. JOHNSON:  RIGHT.
```

```
 1              THE COURT:  NOW, YOU KNOW, OBVIOUSLY THERE COULD --

 2    YOU KNOW, I HOPE I DON'T HAVE A HEART ATTACK OR SOMETHING WHICH

 3    I WOULD HAVE TO RESCHEDULE IT, BUT I WOULD GENERALLY NOT

 4    RESCHEDULE IT.  AND SO I DON'T KNOW IF WE NEED TO TELL THEM

 5    THAT I COULD CHANGE ANY OF THE DEADLINES AT LEAST THIS DOESN'T

 6    SAY WITHOUT NOTICE.

 7         I MEAN, OBVIOUSLY IF WE CHANGED ANY OF THE DATES, I WOULD

 8    WANT TO GIVE THEM NOTICE AND WHICH WOULD BE VERY EXPENSIVE, AND

 9    THAT'S WHY I DON'T WANT TO CHANGE ANYTHING BUT --

10              MR. JOHNSON:  YOU'RE REFERRING, YOUR HONOR, TO THE

11    LINE --

12              THE COURT:  THE COURT MAY RESCHEDULE THE FAIRNESS

13    HEARING OR CHANGE ANY OF THE DEADLINES, AND BE SURE TO CHECK

14    THE WEBSITE FOR NEWS OF ANY SUCH CHANGES.

15         I WOULDN'T UNILATERALLY JUST CHANGE THE DATE IF I COULD

16    AVOID IT WHICH I REALLY HOPE TO?

17              MR. JOHNSON:  IF YOU'RE OF THAT STRONG OF A

18    CONVICTION, WE CAN STRIKE THE TWO LINES.

19              THE COURT:  YES, LET'S -- I MEAN, IF YOU WANT TO

20    JUST HAVE -- I MEAN, YEAH, I DON'T -- I WOULD BE OKAY WITH

21    TAKING OUT THIS SECOND SENTENCE, TOO.

22         OKAY.  SO THAT WAS IT ON THE -- OKAY.  ON THE ATTORNEY'S

23    FEES, PLEASE SUBMIT YOUR BILLING RECORDS.

24              MR. JOHNSON:  WE'LL DO, YOUR HONOR.

25              THE COURT:  AND WHEN YOU ULTIMATELY MAKE YOUR
```

1     REQUEST.

2          AND THEN LET'S SEE WHAT ELSE WAS ON MY LIST.

3               MR. JOHNSON:  BY BILLING RECORDS YOU MEAN THE TIME

4     NARRATIVES, YOUR HONOR?

5               THE COURT:  YES.

6               MR. JOHNSON:  OKAY.

7               THE COURT:  AND I SEE THERE'S A TYPO IN THE MIDDLE

8     OF PARAGRAPH 22.  LET ME SEE ONE SECOND.

9          (PAUSE IN PROCEEDINGS.)

10         OKAY.  SO IN PARAGRAPH 22 THAT'S PARAGRAPH 37 OF 44 IT

11    SAYS, "IN ADDITION IF YOU EXCLUDE YOURSELF THE SETTLEMENTS --"

12    JUST ADD A "FROM" THERE, PLEASE.

13              MR. JOHNSON:  I'M SORRY, YOUR HONOR.  WHERE WAS

14    THAT?

15              THE COURT:  SO PARAGRAPH 22 ON PAGE 37, "IN

16    ADDITION, IF YOU EXCLUDE YOURSELF THE SETTLEMENTS --"

17              MR. JOHNSON:  OH, THAT'S A TYPO.

18              THE COURT:  YEAH, JUST ADD A "FROM" THERE.

19              MR. JOHNSON:  OKAY.  THANK YOU.  YOUR HONOR, WITH

20    REGARDS TO THE BILLING RECORDS, WE WOULD SUBMIT THE ACTUAL

21    NARRATIVES IN CAMERA THAT CONTAIN, YOU KNOW, ATTORNEY-CLIENT

22    PRIVILEGE MATERIAL.

23         IS THAT A FINE PROCEDURE FOR YOU?

24              THE COURT:  WELL, WHAT, IN CASE THERE'S ANY

25    OBJECTIONS, WHAT -- WOULD YOU BE OKAY IN JUST DOING JUST THE

```
 1      GENERAL OVERALL CATEGORIES AND NAMES AND BILLING RATES

 2      PUBLICLY?

 3                  MR. JOHNSON:  OH, SURE.  IT'S JUST THE NARRATIVES

 4      THEMSELVES SOMETIMES CONTAIN, YOU KNOW, THOUGHTS ABOUT STRATEGY

 5      AND VERY CLEARLY PRIVILEGED INFORMATION.

 6          WE'RE FINE WITH SUBMITTING THEM TO YOUR HONOR, BUT WE JUST

 7      WANT TO DO THEM IN CAMERA.

 8                  THE COURT:  YES.  THAT SHOULD BE OKAY AS LONG AS YOU

 9      HAVE A PUBLIC ONE THAT GIVES ENOUGH INFORMATION SUCH THAT

10      ANYONE WHO WANTS TO OBJECT CAN OBJECT.

11          SO THAT ONE SHOULD HAVE THE -- YOU SHOULD AT LEAST HAVE

12      THE CATEGORIES OF ACTIVITIES THAT ARE RELATED, THE HOURLY

13      BILLING RATE, HOW MUCH TIME EACH LAWYER OR PARALEGAL OR

14      ASSISTANT SPENT ON THE VARIOUS CATEGORIES OF ACTIVITIES.  THAT

15      CAN BE AN INSERT IN A SUMMARY CHART FORM.

16          BUT THAT SHOULD BE DETAILED ENOUGH THAT SOMEONE CAN OBJECT

17      IF THEY WANT TO.

18                  MR. JOHNSON:  WE WILL, YOUR HONOR.  THAT'S OUR

19      NORMAL PRACTICE.

20                  THE COURT:  OKAY.  OKAY.  YOU KNOW, SOMETIMES WHEN

21      YOU HAVE THE WEBSITE, YOU UNDERLINE IT, AND SOMETIMES YOU

22      DON'T.  THIS IS JUST A NITPICKY THING BUT YOU MIGHT AS WELL

23      JUST HAVE THEM ALL BE THE SAME.

24                  MR. JOHNSON:  WE'LL DO.

25                  THE COURT:  OKAY.  AND IN THE POSTCARD BUT --
```

```
1              MR. JOHNSON:  AND, YOUR HONOR, WHEN WE SUBMIT THE

2     AMENDED NOTICE ON WEDNESDAY, WOULD IT BE HELPFUL FOR YOU TO

3     E-MAIL A WORD VERSION TO MS. SAKAMOTO?

4              THE COURT:  YES, PLEASE, PLEASE, IF YOU WOULD.

5              MR. JOHNSON:  WE'LL DO THAT.

6              THE COURT:  OKAY.  LET ME JUST CHECK MY NOTES.  I

7     THINK I'M DONE.

8         ALL RIGHT.  I THINK THAT WAS IT.  ALL RIGHT.  SO SUBMIT

9     YOUR REVISED NOTICE, AND WHATEVER ELSE YOU NEED TO DO TO JUST

10    MAKE THAT SMALL CHANGE TO HAVE THE -- TO NOT REQUIRE FILING AND

11    SERVICE.

12        NOW, WHAT ABOUT THE DATES?

13             MR. JOHNSON:  I THINK THE DATES ALL WORK EXCEPT FOR,

14    EXCEPT FOR THE DEADLINE FOR NOTICE TO GO OUT.

15        RIGHT NOW THAT WAS 30 DAYS AFTER A CLASS CERTIFICATION

16    RULING.  THAT GOT A LITTLE TOPSY-TURVY BECAUSE OF THE CLASS

17    CERTIFICATION AND THE MOTION TO AMEND PROCESS.

18        WHAT WE WOULD PROPOSE IS 20 DAYS AFTER THE DEFENSE PRODUCE

19    THEIR DATA.  SO THAT WOULD BE 40 DAYS AFTER YOU PRELIMINARILY

20    APPROVE, AND WE WOULD PUT THAT IN THE PROPOSED ORDER.

21             THE COURT:  YES.  CAN YOU JUST PUT WHATEVER YOU

22    THINK THE NEW PROPOSED SCHEDULE SHOULD BE AND FILE THAT ON

23    WEDNESDAY AND IT GIVE YOU A DATE OFF OF THAT.

24             MR. JOHNSON:  YES.  YOU'LL GET THE AMENDED NOTICE

25    AND THE AMENDED PROPOSED ORDER.
```

```
1              THE COURT:  OKAY.  I'M ASSUMING PROBABLY SOME TIME
2      IN NOVEMBER.  IS THAT NOT RIGHT?
3              MR. JOHNSON:  FOR A FAIRNESS HEARING?
4              THE COURT:  YES.
5              MR. JOHNSON:  THAT SOUNDS RIGHT OFF THE TOP OF MY
6      HEAD.
7              THE COURT:  OKAY.
8              MR. JOHNSON:  WE COULD PROPOSE A DATE.  I HAVEN'T
9      DONE THE -- I HAVEN'T WALKED IT OUT IN MY HEAD.
10             THE COURT:  OKAY.  WELL, WHEN YOU FILE YOUR
11     DOCUMENTS ON WEDNESDAY, JUST GIVE ME THE NEW TIMELINE, OKAY,
12     AND IF WE CAN ACCOMMODATE A HEARING CLOSE TO WHATEVER DATE YOU
13     WANT, WE'LL DO IT.
14             MR. JOHNSON:  OKAY.
15             THE COURT:  ALL RIGHT.  I THINK THAT WAS IT FOR ME.
16         DID YOU HAVE ANYTHING ELSE?  YOU'RE GOING TO MAKE THOSE
17     CHANGES.
18             MR. FRIEDMAN:  YOUR HONOR, JEFF FRIEDMAN FOR
19     PLAINTIFFS.
20             THE COURT:  YES.
21             MR. FRIEDMAN:  CAN I INDULGE WITH YOU AND REVISIT
22     FOR A MINUTE STRIKING THE LANGUAGE IN TERMS OF THE NOTICE IN
23     WHICH THE COURT CAN CHANGE THE DATE OF THE FINAL APPROVAL
24     HEARING AND YOUR SUGGESTION THAT WE STRIKE IT?
25             THE COURT:  YES.
```

```
 1                MR. FRIEDMAN:  AND I ONLY OFFER IT TO LOOK AT IT

 2      THIS WAY, WHICH IS HAVING IT IN THERE DOES PROVIDE, I THINK,

 3      EVERYONE A DEGREE OF PROTECTION WHICH PUTS -- WE'RE FOCUSSED IN

 4      ON LIKELY THIS APPLYING TO AN OBJECTOR WHO WOULD LIKE TO SHOW

 5      UP.  99 PERCENT OF THE TIME THE ONLY CLASS MEMBER THAT SHOWS UP

 6      IS AN OBJECTOR.

 7                THE COURT:  YES.

 8                MR. FRIEDMAN:  THE OBJECTOR, SOMETIMES THERE'S BONA

 9      FIDE OBJECTIONS BUT IN OUR EXPERIENCE YOU HAVE PROFESSIONAL

10      OBJECTORS WHO ARE LOOKING FOR GROUNDS TO THEN APPEAL WHATEVER

11      THE COURT'S DECISION IS ON THE OBJECTION.

12                THE COURT:  OKAY.

13                MR. FRIEDMAN:  AND SO IT IS PROPHYLACTIC FOR

14      EVERYONE, BECAUSE THE COURT IS RIGHT, THAT IT IS CERTAINLY

15      BETTER TO PUT THE OBJECTOR ON NOTICE OF THAT POSSIBILITY AND

16      THE OBJECTOR THEN GOING AND LOOKING TO SEE IF THE COURT ON ECF

17      HAS CHANGED THE DATE, IF GOD FORBID FOR SOME REASON IT REQUIRES

18      IT, THEN IT IS THE ALTERNATIVE WHICH IS THE OBJECTOR THEN HAS

19      GROUNDS TO OBJECT IF HE OR SHE DID NOT HAVE THE OPPORTUNITY OR

20      SUFFICIENT NOTICE TO BE PRESENT AT THE HEARING.

21           AND SO WE HOPE IT NEVER GETS USED, AND WE AGREE WITH YOU

22      THAT WE WOULD LIKE TO KEEP THAT DATE, BUT WE THINK THERE'S MORE

23      DANGER IN NOT HAVING THAT POTENTIAL NOTICE AND THE COURT CAN

24      OBVIOUSLY, BASED ON UNFORESEEN CIRCUMSTANCES, IF NEED BE, ORDER

25      SOME TYPE OF A NOTICE TO GO OUT TO THE SPECIFIC OBJECTOR OR
```

1    OBJECTORS ONCE WE FIND OUT IF THERE ARE ANY.

2              THE COURT:  UH-HUH.

3              MR. FRIEDMAN:  SO I JUST THINK IT'S SOMETHING THAT

4    IF IT NEVER GETS USED, GREAT, BUT IT IS A BELT AND SUSPENDER

5    PROTECTION FOR THE COURT AND FOR ALL PARTIES TO TRY TO LIMIT

6    COSTS IF THAT EVENT OCCURRED.

7              THE COURT:  OKAY.  BUT, I MEAN, DO FINAL APPROVAL

8    HEARINGS GET CHANGED WITHOUT NOTICE TO THE CLASS?  HAS THAT

9    HAPPENED?

10             MR. FRIEDMAN:  WELL, I HAVE TO TELL YOU I'VE NEVER

11   HAD A FINAL APPROVAL HEARING CHANGED.

12             THE COURT:  YES.

13             MR. FRIEDMAN:  SO I'M ONLY SAYING --

14             THE COURT:  BUT IF IT WERE TO HAPPEN, WHICH REALLY,

15   I'VE NEVER DONE THAT, WOULD YOU GIVE NOTICE TO THE CLASS, OR

16   NOT, ABOUT THE NEW DATE?

17             MR. FRIEDMAN:  YOU WOULD VIS-A-VIS THE ECF.

18             THE COURT:  YES.

19             MR. FRIEDMAN:  THAT'S HOW YOU WOULD DO IT THROUGH

20   ECF, NOT THROUGH RE-NOTICING AND SENDING OUT HUNDREDS OF

21   THOUSANDS OF E-MAILS OR IN THIS CASE 10,000 E-MAILS AND THE

22   WEBSITE AND EVERYTHING.

23       SO THIS ALLOWS THE COURT TO GIVE NOTICE THROUGH ECF.  AND,

24   AGAIN, AT THAT POINT, YOUR HONOR, MOST LIKELY IT'S THE OBJECTOR

25   WHO IS SHOWING UP AT THE HEARING, NOT CLASS MEMBERS WHO ARE NOT

1    OBJECTING TO THE SETTLEMENT.  SO THAT'S REALLY THE ISSUE IS FOR

2    THOSE OBJECTORS WHO HAVE A RIGHT TO AT THE HEARING TO NOT

3    PROVIDE FURTHER GROUNDS TO THE OBJECTOR FOR APPEAL AND, IN

4    FACT, IN FAIRNESS, GIVE THAT OBJECTOR THE RIGHT AND NOTICE TO

5    COME --

6         THE COURT:  BUT, YOU KNOW, WHAT IS YOUR CONCERN,

7    THAT YOU MIGHT WANT TO COMBINE IT WITH OTHER -- IN CASE THERE

8    ARE OTHER SETTLEMENTS YOU MIGHT WANT TO COMBINE IT?  OR WHAT IS

9    YOUR CONCERN?  JUST IN THE EVENT THAT THROUGH FORCE MAJEURE, OR

10   WHATEVER THAT IS CALLED, THAT SUDDENLY WE WON'T BE ABLE TO HAVE

11   THE FINAL APPROVAL HEARING?

12        MR. FRIEDMAN:  ON THE DATE THAT IS IN THE OFFICIAL

13   NOTICE, YOUR HONOR, CORRECT.  THAT'S THE ONLY CONCERN.

14        THE COURT:  ALL RIGHT.  WELL, WHAT IF WE DID THIS:

15   YOU'LL HAVE TO WORK OUT THE LANGUAGE, BUT YOU COULD HAVE

16   SOMETHING LIKE, YOU KNOW, THE FAIRNESS HEARING IS RARELY

17   RESCHEDULED, BUT IN THE EVENT OF UNFORESEEN CIRCUMSTANCES IT

18   HAS TO BE, YOU KNOW, YOU SHOULD CHECK THE WEBSITE, YOU KNOW,

19   FOR ANY NEWS OF ANY SUCH CHANGES.  SUCH CHANGE WILL ALSO BE

20   FILED ON ECF, YOU KNOW, WHATEVER ELSE NOTICE YOU ALL CAN

21   PROVIDE.

22        I MEAN, WHAT WOULD BE THE COST OF REGIVING NOTICE?  I

23   MEAN, IF YOU HAVE E-MAIL ADDRESSES FOR MOST OF THESE CLASS

24   MEMBERS, YOU WOULD OBVIOUSLY E-MAIL IT, TOO, RIGHT?

25        MR. FRIEDMAN:  WE WOULD.  AGAIN, YOUR HONOR, I THINK

```
 1        WE NEGOTIATE --

 2               THE COURT:  THE ADMINISTRATOR WOULD HAVE TO DO THAT

 3        AND THEY WOULD CHARGE YOU.

 4               MR. FRIEDMAN:  THEY WOULD, YOUR HONOR.  AND I'M JUST

 5        TRYING TO AVOID DIMES COMING OUT OF THE POCKETS OF PEOPLE THAT

 6        AND --

 7               THE COURT:  WELL, YOU COULD REDUCE YOUR ATTORNEY'S

 8        FEES COSTS.

 9               MR. FRIEDMAN:  UNDERSTOOD.  TRYING TO AVOID

10        TRANSACTIONAL COSTS ALL THE WAY AROUND, YOUR HONOR.

11               THE COURT:  LET ME SEE THE LANGUAGE YOU PROPOSE.  AS

12        LONG AS IT'S SOMETHING THAT SAYS WE HAVE EVERY INTENTION OF

13        KEEPING THIS FAIRNESS HEARING DATE, AND YOU CAN SAY THE JUDGE

14        HAS NOT RESCHEDULED ANY HEARING DATES IN THE LAST SIX YEARS,

15        HOWEVER, IN THE EVENT OF UNFORESEEN CIRCUMSTANCES IT BECOMES

16        NECESSARY, WE WILL PROVIDE NOTICE IN THE FOLLOWING WAYS:

17        PLEASE CHECK THIS, THIS, AND THIS TO MAKE SURE.

18               MR. FRIEDMAN:  I THINK THE REPRESENTATION THAT WE

19        WILL POST IT ON THE WEBSITE AND AT THE VERY LEAST X AMOUNT OF

20        DAYS BEFORE THE HEARING AND SOMETHING ALONG THOSE LINES.

21               THE COURT:  BUT, YOU KNOW, IF IT'S AN UNFORESEEN

22        CIRCUMSTANCE, WE'RE PROBABLY NOT GOING TO GET TWO WEEKS NOTICE

23        SO.

24               MR. FRIEDMAN:  UNDERSTOOD.  UNDERSTOOD.  WE'LL WORK

25        ON THE LANGUAGE AND PROPOSE SOMETHING.
```

1          THE COURT:  YOU CAN PROPOSE SOMETHING AS LONG AS

2    IT'S CLEAR THAT WE'RE NOT GOING TO DO THIS WILLY NILLY; THAT WE

3    WANT THE CLASS TO KNOW WHEN WE'RE GOING TO COME BACK AND WE

4    HAVE EVERY INTENTION OF HOLDING THAT DATE.

5          MR. FRIEDMAN:  UNDERSTOOD.

6          THE COURT:  I'LL TAKE A LOOK AT WHAT YOU FILE.

7      OKAY.  WHAT ELSE?  ANYTHING ELSE?

8          MR. FRIEDMAN:  NO.  THANK YOU, YOUR HONOR.

9          MR. JOHNSON:  NO, YOUR HONOR.  THAT'S IT.

10          THE COURT:  IS THAT IT?  MR. PITT, MR. KIERNAN?

11          MR. KIERNAN:  NOTHING ELSE.

12          THE COURT:  MS. CONWAY?

13          MR. PITT:  NOTHING ELSE, YOUR HONOR.

14          THE COURT:  OKAY.  THANK YOU.

15          MR. FRIEDMAN:  THANK YOU, YOUR HONOR.

16      (COURT CONCLUDED AT 3:46 P.M.)

17

18

19

20

21

22

23

24

25

1

2

3                    CERTIFICATE OF REPORTER

4

5

6

7          I, THE UNDERSIGNED OFFICIAL COURT REPORTER OF THE UNITED

8     STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA,

9     280 SOUTH FIRST STREET, SAN JOSE, CALIFORNIA, DO HEREBY

10    CERTIFY:

11         THAT THE FOREGOING TRANSCRIPT, CERTIFICATE INCLUSIVE, IS

12    A CORRECT TRANSCRIPT FROM THE RECORD OF PROCEEDINGS IN THE

13    ABOVE-ENTITLED MATTER.

14

15

16         _____
           IRENE RODRIGUEZ, CSR, RMR, CRR
17         CERTIFICATE NUMBER 8074

18

19                   DATED:  SEPTEMBER 14, 2016

20

21

22

23

24

25